IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-md-02036-JLK

| | | |
|---|---|---|
| MELANIE L. GARCIA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | |
| | ) | |
| WACHOVIA BANK, N.A. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff, MELANIE L. GARCIA, by undersigned counsel, hereby files this response in opposition to Defendant, WACHOVIA BANK, N.A.'s ("Wachovia") motion to dismiss Plaintiff's complaint, pursuant to Fed.R.Civ.P. 12(b)(6).  [D.E. 9].  For the reasons detailed herein, Wachovia's motion to dismiss should be denied.

## INTRODUCTION

In its motion to dismiss, Wachovia seeks to impose insufficient funds charges ("overdraft fees") on Plaintiff's account with total impunity.  Wachovia uses its computer software to grossly manipulate, aggregate, and otherwise rearrange the posting of transactions in order to impose overdraft fees on its customers *even if the customer has sufficient funds* to cover transactions at the time the transaction occurs and to maximize the number of overdraft transactions and the number of overdraft fees.  Wachovia asserts that these practices are within its contractual discretionary rights, are not unconscionable, and do not violate any laws.  Wachovia is wrong.  Wachovia's motion to dismiss inaccurately narrows the scope and nature of Plaintiff's claims by in order to

1

allege that these actions are within its contractual powers.  This case is about more than mere reordering of transactions and disclosures; this case concerns Wachovia's unilateral discretion and unfettered conduct that maximizes the number of overdraft charges on those customers least able to afford them.

Plaintiff has brought this action against Wachovia asserting that Wachovia's practice of posting charges to customers' checking accounts in a method calculated to deliberately deplete Plaintiff's account is deceptive, unconscionable, and unlawful. Plaintiff has asserted causes of action against Wachovia alleging breach of contract, abuse of rights, unconscionability, trover and conversion, unjust enrichment, and usury. For the reasons detailed herein, Wachovia's motion to dismiss should be denied.

## **FACTUAL BACKGROUND**

1.      This case arises from the unfair, deceptive, unconscionable, and bad faith assessment and collection of excessive and improper overdraft charges by Wachovia through the bank's use of a system which intentionally, deliberately, and purposefully re-orders customer debits and credits so as to impose the highest number of overdraft charges possible, even when not all of the debits would have created an overdraft in the account at the time the debit was transacted.  Compl. ¶ 11.  Wachovia furthers this scheme by promoting the use of electronic banking for all customer debits and credits and approving debit transactions it knows will cause overdraft fees. Compl. ¶¶ 11-12.  It also furthers this scheme by manipulating electronic balance information given to the customer.  Compl. ¶ 12.

2.      Plaintiff filed her complaint on September 5, 2008.  [D.E. 1].  Wachovia filed this motion to dismiss on May 1, 2009.  [D.E. 9].  This case had been pending

before the Honorable Marcia G. Cooke, but has been transferred to this Court pursuant to the Order of MDL No. 2036.  [D.E. 16].

3.     In opening her accounts with Wachovia, Wachovia unilaterally imposed contracts and agreements upon Plaintiff that were drafted by Wachovia, and were not subject to any negotiation with Plaintiff.  Compl. ¶ 10.  Plaintiff alleges that Wachovia breached its agreements with Plaintiff, or in the alternative improperly went beyond the scope of conduct that may have been allowed by their terms.  Compl. ¶ 11.

4.     Plaintiff reasonably relies on Wachovia to provide her with accurate account balance information.  Compl. ¶ 12.  Instead, Wachovia provides inaccurate balance information to Plaintiff through its electronic network.  Compl. ¶ 12.  Because of the inaccurate balance information, Plaintiff is lead to believe she has a positive account balance even though Wachovia has knowledge of outstanding debits and transactions.  Compl. ¶ 12.  Moreover, rather than decline subsequent debit card purchases and other electronic transactions for which funds are unavailable, Wachovia approves these purchases in order to charge Plaintiff additional overdraft fees.  Compl. ¶ 12.

5.     As one example of Wachovia's improper conduct, on July 24, 2008, Plaintiff's account balance was $603.01.  Compl. ¶ 14.  Over the next three days, up to and including July 27, 2008, four transactions occurred.  Those transaction were not processed as they occurred but rather were held and not processed until July 28, 2008.  Compl. ¶ 14.  Wachovia processed the largest transaction first depleting Plaintiff's balance.  Compl. ¶ 14.  When there was only a balance of $87.51, with one outstanding debit card transaction of $44.90 and one outstanding  ATM transaction of $100.00 remaining to be processed, Wachovia could have cleared the $44.90 debit card

transaction first and then cleared the $100.00 ATM transaction, resulting in only one overdraft fee to Plaintiff.  Compl. ¶ 14.  Instead, Wachovia processed the $100.00 transaction first, creating two overdrafts where only one was appropriate and resulting in a negative balance of $57.39.  Compl. ¶ 14.  This manipulative process resulted in overdraft fees totaling $88.00.  Compl. ¶ 14.

6.      In another example, on July 31, 2008, Plaintiff had a balance of $56.42. Compl. ¶ 15.  Plaintiff made two electronic purchases on August 1, 2008 that totaled $34.97.  Compl. ¶ 15.  Instead of clearing those two transactions first, they were held until August 4, 2008 when a scheduled monthly electronic payment of $102.63 was due to process.  Compl. ¶ 15.  The $102.63 transaction was processed first, creating a negative balance, and then the other two transactions were processed.  Compl. ¶ 15. The two electronic purchases totaling $34.97 would not have overdrawn the account on their own had they been posted when they occurred.  Compl. ¶ 15.  Thus, Wachovia charged Plaintiff three overdraft fees totaling $105.00.  Compl. ¶ 15.  The next day, August 5, 2008, with full knowledge that Plaintiff had a negative balance and that it had already charged Plaintiff substantial overdraft fees, Wachovia allowed a $200.00 transaction to be paid, creating another overdraft fee of $35.00.  Compl. ¶ 16.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### I.      Defendant Fails to Meet the 12(b)(6) Standard.

When considering a Rule 12(b)(6) motion to dismiss, the court must accept all of the allegations of fact as true.  *Jackson v. Okaloosa County*, 21 F.3d 1532, 1534 (11th Cir. 1994).  This factual material can be either direct or inferential.  *Roe v. Aware Woman Ctr. For Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2007).  In addition, a court

4

must favor the claimant with all reasonable inferences from the allegations.  *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1572, 1573 (11th Cir. 1990).

The plaintiff's allegations "must be enough to raise a right to relief above the speculative level."  *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295 (11 Cir. 2007).  To raise a right to relief beyond the speculative level, a complaint must contain "enough factual matter (taken as true) to suggest" each material element of a claim.  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (internal quotation marks omitted).  This requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the elements of the claims at issue.  *Id.*  Thus, a complaint must state factual allegations that plausibly suggest the elements.  *Twombly*, 550 U.S. at 557.  Plaintiff Garcia has stated factual allegations that plausibly support the allegations of her Complaint, and therefore the Court should deny Defendant's Motion to Dismiss.

> **II.    Plaintiff's Claims for Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing State a Claim Upon Which Relief Can Be Granted.**

Wachovia argues that Plaintiff has pled no facts that suggest the party reasonably expected Wachovia to exercise its discretion in the manner Plaintiff contend is appropriate.   "With the implied covenant, one party cannot capriciously exercise discretion accorded it under a contract so as to thwart the contracting parties' reasonable expectations."  *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001).  Plaintiff's Complaint specifically alleges that Plaintiff's reasonable expectations were that Wachovia would safeguard Plaintiff's funds and deal with her fairly, which includes posting transactions in a reasonable order and providing accurate

account balance information.    Wachovia's discretionary actions are capriciously thwarting these expectations.    Although Florida and federal law may permit discretionary provisions regarding the order of posting transactions, Wachovia's unilateral discretion is still confined within the reasonable expectations of the Plaintiff and Wachovia's other consumers.

Moreover, Wachovia asserts that Plaintiff's claim for breach of contract and breach of the duty of good faith and fair dealing must fail at the outset, since the Plaintiff has not alleged an express breach of contract.  Wachovia first points to *Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 896 So. 2d 787 (Fla. 2d DCA 2005).   In *Snow*, the court held that the implied duty of good faith and fair dealing is not an independent term within a parties' contract and thus, cannot override an express provision of a contract.  *Id.*

However, Wachovia's attempt to rely on the holding in *Snow* is misguided and must necessarily fail.  Every Florida contract contains an implied duty of good faith and fair dealing.  *Id.*  The purpose of the covenant of good faith and fair dealing is to "protect 'the reasonable expectations of the contracting parties in light of their express agreement.'"  *Insurance Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. 4th DCA 2001).  "Rather than serving as an independent term within a contract, the implied covenant 'attaches . . . to the performance of a specific contractual obligation.'"  *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1291 (11th Cir. 2001) (quoting *Johnson Enters. Of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1314 (11th Cir. 1998).  In *Snow*, the plaintiff failed to link the implied duty to a breach of an express contractual provision within her employment contract and therefore the court

held that she failed to state a cause of action for which the implied covenant of good faith could be provided.   *Snow*, 896 So. 2d at 792.   The facts in *Snow* are clearly distinguishable from the facts in this case because the Plaintiff in this case has linked an express provision within the contract to Wachovia's breach of duty of good faith and fair dealing.   The express provisions at issue in this case are those listed in the Deposit Agreement and Disclosures for Personal Accounts which grant Wachovia's unfettered discretion to choose whether to impose overdraft charges by posting transactions in any order Wachovia wishes and by unilaterally deciding whether to honor requested transactions when consumers have insufficient funds.

In addition, when an agreement between parties divests one party with substantial discretion to advance that party's self-interest, the implied duty to act in good faith and fair dealing "limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party."   *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999).   Wachovia has the unilateral discretion to determine the occurrence, amount, and frequency of overdraft charges on its consumers' bank accounts.   Because Wachovia has been given the discretion to make such determinations, Wachovia has an obligation to impose the overdraft charges in good faith.   Even though Wachovia was given the authority to determine the occurrence, amount, and frequency of overdraft fees, Wachovia's performance of such provisions were done in bad faith.   By intentionally delaying and rearranging the posting of transactions to accounts and manipulating account balance information in order to maximize the amount of overdraft charges, Wachovia has abused its discretion and breached its duty to act in good faith.

Wachovia contends that Plaintiff is asking this Court to remove a contractual provision and replace it with the requirement that Wachovia apply transactions in chronological order, which cannot be done.  First, this is facially wrong because that is not what Plaintiff has asked this court to do in its Complaint.   Plaintiffs are not requesting this Court to replace any contractual provisions or add any provisions. Wachovia is misstating the Plaintiff's position.  The Plaintiff seeks to compel Wachovia to act in accordance with the provisions in the contract, not to alter the contract.  The complaint merely alleges Wachovia's violation of its duty and abuse of its rights to its customers and in no way is requesting this Court alter the provisions therein.

Moreover, in support of its argument, Wachovia relies on *Southern Internet Sys., Inc. ex rel. Menotte v. Pritula*, 856 So. 2d 1125 (Fla. 4th DCA 2003).  However, in *Pritula* there was no enforceable contract and the plaintiff did not attach the duty of good faith to an express provision within the contract.  Thus, Wachovia is mischaracterizing the holding in *Pritula*.  Only when there are no express terms or provisions in the contract to attach the implied duty of good faith and fair dealing does the *Pritula* rule apply. Plaintiff's claim is based on an express provision within the Deposit Agreement. Wachovia's deceptive and unfair manipulation of this express provision was performed in bad faith.  Because Plaintiff has attached the duty of good faith to particular express provisions, Wachovia's reliance on *Pritula* is inapplicable.  For these reasons, Plaintiff has stated a cause of action for breach of contract under Count One.

### III.    Plaintiff States a Claim for Usury.

Wachovia asserts that case law holds that Plaintiff's usury claim is barred, and thus should be dismissed.  However, the case law that exists on the subject is not

precisely on point to the particular usury claim of Plaintiff and thus cannot serve as an automatic bar to Plaintiff's claim.  Wachovia relies primarily on *Video Trax, Inc. v. Nationsbank, N.A.*, 205 F.3d 1358 (11th Cir. 1998).  *Video Trax* was a *per curiam* affirmance of a Southern District of Florida case, and specifically limited itself to the trial court's findings related to a business customer's dispute as to overdraft fees it incurred as a result of its paper checks being honored by the bank when there were insufficient funds in its checking account.  *Id.* (citing 33 F. Supp. 2d 1041, 1047-55 (S.D. Fla. 1998)).  The trial court found that the charges complained of were for "contingent" "default" events when the plaintiff wrote checks on funds it did not have.  *See* 33 F. Supp. 2d at 1050.  The facts and circumstances of the dispute in *Video Trax* stand in stark contrast to the facts and circumstances at issue here.

In *Video Trax* the court stated that:

> [O]nly where the charge is required for a loan, and not where it is **contingent on the happening of an uncertain event**, will the charges be considered interest. . . .  The logic behind this distinction is clear.  If charges and fees **within the depositor's control**, such as the overdraft fees in dispute, are deemed "interest," banks could not possibly know whether the ultimate rate on any given account would exceed the interest ceiling provided by law.  The depositor could, therefore, render this account usurious, and hence unlawful, by simply maintaining insufficient funds in the account, thereby incurring an amount of fees equal to the usurious rate.

33 F. Supp. 2d at 1055 (emphasis supplied).  The plain language of the court's reasoning demonstrates precisely why Plaintiff's claim is not contemplated by the *Video Trax* holding.  Unlike the customer writing checks outside Wachovia's control, there is no contingent "uncertain event" here triggering the charges.  Wachovia is fully aware of the customer's use of her debit card each time a transaction occurs, and is fully in

9

control of its authorization of debit card transactions.  The customer is *not* in control of bank fees she has no idea she is incurring when Wachovia is authorizing transactions and either directly or indirectly providing misleading balance information.  Wachovia is also fully aware in advance of the transaction how much interest it is charging relative to the amount borrowed through the debit card because: it sets the dollar limit the customer can borrow; it sets the amount of the fees and the number of fees it will charge; and it knows the amount of the specific individual charges it is authorizing that will incur the overdraft fee.  It is not the customer who is rendering her account usurious, it is Wachovia.  Thus, the *Video Trax* holding that overdraft fees related to the customer's issuance of paper checks created outside the control of Wachovia are not interest is inapposite here.

Wachovia's reliance on *Armstrong v. Colonial Bank, N.A.* is similarly misplaced. *Armstrong*, like *Video Trax*, was solely concerned with paper check transactions.  No. 06-cv-38, 2007 WL 1747385 at *1 (M.D. Fla. June 18, 2007).  Thus, none of the cases cited by Wachovia as expressly barring Plaintiff's claim have reached or analyzed Plaintiff's claim regarding electronic debit transaction and cannot serve as a reason for dismissal.

Wachovia attempts to persuade this Court that there is no substantive difference between *Video Trax* and the case at hand, and thus the cited cases must apply.  If this is not a fallacy on its face, Plaintiff again requests that she be allowed discovery to prove that there is nothing contingent about Wachovia's authorization of continued debit card transactions to extract exorbitant fees for the use of its money.

10

Moreover, in *Video Trax, Inc. v. NationsBank, N.A.*, this Court held that overdraft fees charged as a result of bad paper checks were not connected to a credit transaction, and thus, were not considered interest under the Act. 33 F. Supp. 2d 1041, 1050 (S.D. Fla. 1998). The term "interest" relates to credit card transactions. *Id.* Credit card transactions are said to include loans or credit card services. *Id.* Plaintiff's Complaint stems not from the use of paper check transactions (controlled by the customer), but rather debit card transactions (controlled by Wachovia). When using debit cards, customers are given the option to use their cards as either credit or debit transactions. Thus, a customer may use her debit card as a credit card for any transaction. The customer is required to sign a receipt after using her debit card as a credit card. The signature requirement is the same procedure as if the customer used an actual credit card. Whether the customer opts to use the card as a debit card or credit card, Wachovia processes the transactions at its own discretion. Since the customer is offered the option of using the card as a credit card, this constitutes a credit card transaction and would fall under the definition of interest for purposes of the National Bank Act § 7.4001(a).

Wachovia alleges that overdraft fees do not constitute interest according to the ruling in *Video Trax* (citing to 12 C.F.R. § 7.4001(a) (1997)). However, the world of consumer banking was vastly different in the 1990s than it is today. Plaintiff intends to prove that the explosive proliferation of debit cards, spurred on by the banking industry's incessant marketing campaign to eradicate paper checks from the system, is a recent phenomenon. It is a phenomenon that has not yet been fully analyzed, and Plaintiff

believes that overdraft fees presently being charged by national banks would or should

be given different consideration since they are more akin to credit transactions.

At the time 12 C.F.R. § 7.4001 was amended, the Office of the Comptroller of the

Currency's ("OCC") comments point to its reliance on a different consumer banking

environment that the one today:

> The inclusion of "NSF fees" in the [former] definition of "interest" was intended to codify a position the OCC took [that] concluded that charged imposed by a credit card bank on its customers who paid their accounts with checks drawn on insufficient funds were "interest" within the meaning of section 85. . . .  The term, however, is also commonly used to refer to fees imposed by a bank on its checking account customers *whenever a customer writes a check against insufficient funds*. . . .
>
> . . . We also invited comment on whether the term "NSF fees" as used in § 7.4001(a) should include at least some portion of the [overdraft] fee imposed by a national bank in the more common scenario when it pays a check . . . .  Commentators raised a number of complex and fact-specific concerns related to inclusion of any portion of a charge imposed in connection with paying an overdraft constitutes "interest" for purposes of section 85.  *Accordingly, we have not amended § 7.4001(a) to address this issue.*

66 Fed. Reg. at 34784, 34784 (July 2, 2001).  The OCC referred to the "confusion" over

fees related to the *writing of paper checks* that overdrew deposit accounts.  And it chose

not to fully address whether such charges would ever be termed interest because of the

complex issues and facts raised at the time.  The wording of the regulation itself, even

after its amendment, left the door open to additional definitions, as it expressly states

that "interest" "includes, *among other things*, the following fees. . . ."  12 C.F.R. §

7.4001(a).

Therefore, Plaintiff asserts that the C.F.R. regulation and ruling in *Video Trax* is out of date and was not formed to address debit card transaction overdraft fees, and that overdraft fees related to Wachovia's systematic lending of money through its debit card transactions should be included "among other things."   A court's analysis of a regulatory authority's interpretation of a statute is permissible where the statute, as here, contains an undefined term.  *Cf.  NationsBank of North Carolina, N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 257 (1995).

Further, Plaintiff's use of her bank card as a debit card is completely processed according to Wachovia's terms.  Wachovia knowingly and systematically advances monies to Plaintiff for use in her deposit account and knowingly charges and collects fees for the advances.  Wachovia's advancement of monies to Plaintiff are loan transactions, made without any loan agreement.  A loan is defined as the act of lending; a grant of something for temporary use. BLACK'S LAW DICTIONARY (8th ed. 2008).  Thus, whether Plaintiff uses her bank card as a debit or credit transaction, Wachovia's control over the card transactions make it subject to the National Bank Act.

Finally, the advancement of funds for debit transactions equates to loans where there are no loan agreements, thus deceptively avoiding consumer protection laws and acting egregiously high, usurious, and unreasonable.  When no contract for a loan exists, interest rates for loans and advancements of money are set pursuant to Florida Statute § 55.03 and set by the Chief Financial Officer of the State.  Florida Statute § 687.01 (2008).  Currently, the maximum rate is 11% per annum.  Plaintiff and Wachovia never entered in a contract that stipulates an interest rate for advancing monies.  Because no contract exists, Wachovia's interest must fall within the statutory maximum

13

of 11%; Wachovia's fee routinely exceeds 11%.  Its egregiously high rates and unreasonable practices provide a sufficient foundation for the usury claim Plaintiff has set forth in the Complaint.

> ### IV.  Federal Law Neither Authorizes Wachovia's Practices Nor Preempts Plaintiff's Remaining State Law Claims.

Federal law does not authorize Wachovia to reorder transactions or impose overdraft fees when customers have sufficient funds to cover transactions.  Even if 12 C.F.R. § 7.4002 allows national banks to:

> establish[] non-interest charges and fees in accordance with safe and sound banking principles **_if_** the bank employs a decision-making process through which it considers the following factors, among others:
>
> (i)  the cost incurred by the bank in providing the service;
> (ii)  the deterrence of misuse by customers of banking services;
> (iii) the enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy;
> (iv) the maintenance of the safety and soundness of the institution.

 (emphasis added), the decision to implement Wachovia's system of reordering transactions and imposing overdraft fees despite accounts having sufficient funds to pay transactions was clearly made with utter disregard to at least factors (i) and (ii) above. *Id.*  Wachovia imposes overdraft fees with total disregard to the often minimal costs incurred by the bank in providing the service.[1]  Further, reordering transactions and charging unjustified overdraft fees do little to deter the misuse by customers of banking services.  If Wachovia accurately and timely posted transactions, customers would have

---

[1].      Plaintiff intends to prove during the discovery process that the Wachovia's system encourages the consumer behavior and the exponentially rising figure of fees shows there is no deterrence.  These fees charged by Wachovia are now a source of income, rather than a deterrence.

14

a greater opportunity to correct deficiencies before further charges accrue.   And by changing customer overdraft fees, even when those customers have sufficient funds to cover transactions, Wachovia is punishing those who maintain sufficient funds in their accounts.

12 C.F.R. § 7.4007 does not authorize Wachovia's practice either. If Wachovia were to order its transactions chronologically, honor transactions when accounts have sufficient funds, and generally impose overdraft fees on accounts in good faith, Wachovia would still be able to fully exercise its federally authorized deposit-taking powers.   Moreover, as noted in the OCC Interpretive Letter, Wachovia's authority to impose overdraft fees must be exercised "in a manner that is consistent with safe and sound banking practices," including consideration of the cost incurred by the bank in honoring these transactions.   OCC, Interpretive Letter No. 916, 2001 WL 1285359 (May 22, 2001).   Finally, the OCC Interpretive Letter provided by Wachovia also cites the California Code Commentary, which states,

> The only restraint on the discretion given to the payor bank under subsection (b) [of § 4303] is that the bank act in good faith.   For example, the bank could not properly follow an established practice of maximizing the number of returned checks for the sole purpose of increasing the amount of returned check fees charged to the consumer.

*Id.* at p. 2.   Thus, even the OCC acknowledges that banks must act in good faith in exercising their discretion to set fees.

Even if federal law authorized Wachovia's practices, it does not preempt Plaintiff's remaining state law claims.   The method by which the scope of preemption is generally determined was addressed by the United States Supreme Court in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 523 (1992).   *Cipollone* established that this Court

"must fairly but–in light of the strong presumption against preemption–narrowly construe the precise language of [the preemptive statute or regulation], and look to each of [the plaintiffs' state] law claims to determine whether it is in fact preempted."  *Id.* at 523-24. As to each state law claim, the essential inquiry is whether the legal duty that is the predicate of the claims constitutes a requirement or prohibition of the sort that federal law expressly preempts.  *Id.* at 524.

Under the *Cipollone* approach, Plaintiff's remaining state law claims are not preempted.  Plaintiff's state law claims are predicated, first and foremost, on the duty of every business to refrain from engaging in unfair, deceptive business practices and to not unjustly enrich itself.  Crucially, Wachovia entirely fails to demonstrate that the deceptive conduct Plaintiff complains of is an element of lending regulation for national banks.  Wachovia's preemption argument fails accordingly.

In addition, in *Michalowski v. Flagstar Bank*, 2002 WL 113905, at *5 (N.D. Ill. 2002), the court held that 12 C.F.R. § 560.2 did not preempt the plaintiff's state law claims because, as here, Plaintiff's "state law claims are not brought under state laws that 'regulating lending.'  All of the state law claims allege fraudulent or tortuous conduct by Flagstar." 2002 WL 113905, at *5 (N.D. Ill. 2002).  Similarly, in *Binetti v. Washington Mutual Bank*, 446 F. Supp. 2d 217, 218-19 (S.D. N.Y. 2006), a federal district court denied a bank's motion to dismiss a borrower's state law-based challenge to a bank's charging of post-closing interest payments, rejecting the bank's argument that the plaintiff's claims were preempted.  446 F. Supp 2d 217, 218-19 (S.D. N.Y. 2006).  The *Binetti* court specifically rejected the preemption argument as to claims for breach of contract, unjust enrichment, and violation of the New York consumer protection statute,

noting that – pursuant to 12 C.F.R. § 560.2I – "the question is whether any impact on lending operations is incidental to *the statute's* primary purpose not whether the impact of the statute on the bank's lending operation is 'incidental' . . ." *Id.* at 221 (emphasis in original).

The same result should be reached here.  Plaintiff's allegations are not based on any state law purporting to "regulate or otherwise affect" the credit or deposit activities of federal banks.  In this case, Plaintiff's state law claims are based on the deceptive, unjust, and unfair conduct of Wachovia in intentionally rearranging transactions in order to maximize overdraft charges and failing to disclose that such purchases would result in the overdraft accounts even if the Plaintiff's account had sufficient funds to cover the transactions.  As set forth above, under these state law causes of action, neither a bank nor any other business is permitted to engage in these types of manifestly unfair business practices.  As such, there is no preemption of Plaintiff's state law claims.

## V.    Defendant has abused its rights.

Wachovia alleges that the "abuse of rights" doctrine is inapplicable because it is a Louisiana doctrine.   However, this Court, in *Berg v. Al Copeland Enters. Inc.*, specifically applied the doctrine to a franchisor/franchisee case.  1991 U.S. Dist. Lexis 21028, *16-18 (S.D. Fla. 1991).  This Court noted that the doctrine does not apply when there is a legitimate business interest.  *Id.* at *16.  Yet, the doctrine does apply "when a party has no legitimate interest in the enforcement of the contract rights he seeks to enforce."   *Id.*  Through the Deposit Agreements, Wachovia is given the unilateral discretion to post transactions in any order.  Although Wachovia does have an interest in charging overdraft fees for *a* transaction when there are insufficient funds, there is no

17

legitimate interest in "rearranging transactions in order to maximize overdraft fees" when there are sufficient funds to cover all but one transaction.  Compl. ¶ 36.  Because of this manipulation of transaction processing, Wachovia is abusing its rights and wrongfully depriving Plaintiff and consumers of their property.  Thus, Plaintiff has stated a proper cause of action for abuse of rights.

### VI.   Plaintiff Has Stated a Claim for Unconscionability.

Wachovia contends that Florida does not recognize unconscionability as an independent cause of action.  Florida courts have specifically defined the requirements needed to bring a ***claim*** for unconscionability thereby supporting the notion that it is sufficient as an independent cause of action.  *Shotts v. OP Winter Haven, Inc.*, 988 So. 2d 639, 641 (Fla. 2d DCA 2008); *Bland v. Healthcare & Retirement Corp. of Am.*, 927 So. 2d 252, 256 (Fla. 2d DCA 2006).  Successful unconscionability claims require substantive and procedural unconscionability.  *Id.*  Procedural unconscionability refers to the manner the contract is made, consideration issues such as bargaining power, and the contracting party's ability to comprehend and understand contract terms.  *Id.* According to this definition, Plaintiff's arguments regarding the disparity of bargaining power, incomprehensibility of the language in the contract, lack of meaningful choice, unreasonableness, purpose, and effect of contract terms, and the allocation of risks provide a sufficient basis for procedural unconscionability.  For example, Wachovia's allegation that Plaintiff "can obtain similar services from another company" is unfounded because all other banking institutions use the same manipulative language within the contract and include the same unilateral discretionary practices.  By all national banking institutions implementing the same procedures, Plaintiff's bargaining power is

diminished and Plaintiff lacks the meaningful choice of declining Wachovia's "take it or leave it" contract. Further, the terms within the Deposit Agreement are entirely those of Wachovia, and are not the subject of any bargaining process whatsoever. Plaintiff maintains that she will show in the course of proceedings that bank customers lack any real choice in the marketplace or any bargaining power and Wachovia's provisions are similar if not identical to every other bank.

Aside from procedural requirements, substantive unconscionability must also be pled. Substantive unconscionability requires a showing that the contract terms are so outrageous that they "shock the conscience." *Id.* Plaintiff's contention is that the services and benefits offered by Wachovia are miniscule in comparison to the unilateral discretion that Wachovia is given through the contractual provisions. Furthermore, the contract provisions favoring Wachovia significantly outweigh any possible benefits Wachovia is alleging the Plaintiff enjoys when Wachovia single handedly maintains discretion over the entire account. Thus, Plaintiff has met both procedural and substantive requirements necessary for an unconscionability claim.

### VII. Plaintiff Has Stated a Viable Claim for Trover and Conversion.

A claim for conversion requires "an 1) act of dominion wrongfully asserted; 2) over another's property; and 3) inconsistent with [plaintiff's] ownership therein." *Compania de Elaborados de I v. Cardinal Capital Management, Inc.*, 401 F. Supp. 2d 1270 (S.D. Fla. 2003). Thus, conversion is the exercise of wrongful "control over property to the detriment of the rights of the actual owner." *Seymour v. Adams*, 638 So. 2d 1044, 1046-47 (Fla. 5th Dist. Ct. App. 1994).

Wachovia's first argument in support of its motion to dismiss Plaintiff's claim for trover and conversion is that by opening their accounts with Wachovia, and accepting the Deposit Agreements drafted by the bank, the Plaintiff authorized Wachovia to charge overdraft fees at Wachovia's discretion.  However, this argument ignores the relevant analysis on a motion to dismiss and Wachovia's reliance on *Gasparini v. Pordomingo*, 972 So. 2d 1053 (Fla. 3d DCA 2008), is misplaced.  In *Gasparini*, the court stated that the existence of a contract does not insinuate that a claim for conversion can never exist.  *Id.* at 1055.  When a contractual relationship exists, a claim for conversion must be independent from a breach within the terms of the contract.  *Id.*  Wachovia has, without any authorization, exercised the right of ownership and control over Plaintiff's property.  Plaintiff had title to funds in her specified and identifiable checking accounts and Wachovia wrongfully and intentionally dispossessed Plaintiff of her property.  Wachovia, through its abusive and unfair practices, has imposed overdraft fees on Plaintiff's account when the account was not actually overdrawn.  This conversion is independent from the contract.  Plaintiff is not alleging conversion based on the contractual provisions, but rather on Wachovia charging overdraft fees when there were sufficient funds in Plaintiff's account and no overdraft in fact existed.

Moreover, Wachovia's argument has already been rejected in the substantially similar case of *White v. Wachovia*, 2008 U.S. Dist. LEXIS 88112 (N.D. Ga. July 2, 2008).  There, the court rejected the defendant's argument that such fees were authorized by the deposit agreements, and held that the practice of charging overdraft fees where no overdraft existed was a sufficient allegation to sustain the plaintiff's conversion claim.  2008 U.S. Dist. LEXIS 88112 at *36-37.  For example, Plaintiff made

20

two electronic purchases when there were sufficient funds in her account to cover the costs.   Rather than process the two electronic transactions, Wachovia held the transactions for several days.   Through Wachovia's fraudulent, unfair, and deceptive manipulation, it charged Plaintiff two overdraft charges when in fact Plaintiff had the funds available in her account.

Furthermore, Florida law does permit a claim for the conversion of money when the funds are specific and identifiable.  *Florida Desk, Inc. v. Mitchell Int'l, Inc.*, 817 So. 2d 1059, 1061 (Fla. 5th DCA 2002); *Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. 4th DCA 2006) (establishing that "withdrawal of funds from a bank account may form the basis of an action for conversion 'if the specified money in question can be identified'"). It is not necessary that each bill be earmarked, but the funds must be kept intact so that the money can be identified.   *Joseph*, 940 So. 2d 486.   Money is capable of being identified when wrongful possession of such property is obtained.  *Id.*

Plaintiff opened a specific and readily identifiable checking account with Wachovia.  All funds deposited in the account are to be held for Plaintiff to use at her discretion.   It is not necessary that the money deposited into Plaintiff's account be earmarked, but rather that each deposit made into an account be kept intact so it is capable of being indentified.  For example, a deposit made by Plaintiff or on behalf of Plaintiff is to be kept by Wachovia to use at Plaintiff's discretion.   Further, the improperly assessed overdraft fees represent specific amounts of money from specific identifiable funds.  Wachovia charged Plaintiff overdraft fees when there were sufficient funds in Plaintiff's account to cover the transactions.   The overdraft fees are a specific amount of money and come from specific funds within Plaintiff's account.   Thus,

because Plaintiff did have sufficient funds in her account to cover the transactions, Wachovia was in wrongful possession of Plaintiff's specific and identifiable monies from her personal account.

Wachovia's reliance on *Florida Desk, Inc.* is misplaced because such case involved a complex relationship between numerous parties.  In *Florida Desk, Inc.*, there was an intermediary who was dealing with the buyer and seller individually.   The intermediary/defendant entered into the first agreement with a hospital to purchase office supplies for the hospital.  The defendant then entered into a separate agreement with the plaintiff to purchase the office supplies.  The plaintiff never received payment and claimed that defendant had converted the funds given to it by the hospital.  The court held that there was no possible way to identify the funds because:  (1) there was no proof that the money given to the defendant by the hospital was to be held by defendant for plaintiff's benefit; and (2) the money had been placed into defendant's general operating account and was not possible to decipher that the money was intended for plaintiff.  Thus, there was no valid claim for conversion.

Unlike *Florida Desk, Inc.* where there was no proof that the money was to be held for the benefit of the plaintiff, Plaintiff deposited money into her own personal checking account with Wachovia for the benefit of Plaintiff.  Plaintiff opened an account with Wachovia under the expectation that Wachovia would safeguard all monetary funds deposited in her own account.  All money deposited into the account was to be held for the benefit of Plaintiff to be paid out at Plaintiff's discretion.  Further, the relationship between Wachovia and Plaintiff was direct and thus, all money deposited into Plaintiff's account was intended for Plaintiff to use at her discretion.  Unlike the

remote relationships between the parties in *Florida Desk, Inc.*, the relationship between Plaintiff and Wachovia here was a direct relationship and not far removed.  Because Plaintiff uses Wachovia's banking services, it is evident that funds deposited into Plaintiff's account are intended to be kept and held for Plaintiff.  Thus, Plaintiff has stated a claim for trover and conversion.

### VIII.    Plaintiff Has Stated a Viable Claim for Unjust Enrichment.

Wachovia next argues that the Plaintiff's claim for unjust enrichment must be dismissed for failure to state a claim upon which relief can be granted since there is an express contract, i.e., deposit agreements, in place, which Wachovia asserts, define the parties' relationship relative to this litigation.    However, Wachovia's argument misconstrues the relevant legal analysis.

Plaintiff's Complaint clearly alleges a valid cause of action for unjust enrichment, which has been pled in the alternative consistent with Fed. R. Civ. P. 8(a).  To state a claim for unjust enrichment, a Plaintiff must establish that the 1) plaintiff conferred a benefit on the defendant; 2) the defendant has knowledge of the benefit; 3) the defendant voluntary accepts the benefit without payment; and 4) the circumstances that exist are such that it would be inequitable for the defendant to keep the benefit without any payment.  *Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997).

Here, the Complaint alleges sufficient facts to state a claim for unjust enrichment. Wachovia falsely indicates to its customers, including Plaintiff, a positive balance in their accounts when there is a negative balance.  This false and misleading conduct encourages and allows Plaintiffs to continue to use their debit cards, when in fact they

are incurring charges for overdraft fees.  Once the Plaintiff is misled into using their debit cards, Wachovia rearranges those transactions in order to maximize the number and amount of overdraft charges it can asses.  With knowledge of the benefit it would confer, Wachovia purposely rearranges the transactions in order to increase its revenue and profits.  By providing false and misleading balance information and then rearranging transactions to create fees paid from Plaintiff's property, Wachovia has voluntary conferred a benefit.  The retention of this benefit at Plaintiff's expense, without providing Plaintiff any payment for the benefit received is inequitable.  A jury could certainly find that Wachovia has been unjustly enriched by the fees it has improperly assessed on the Plaintiff.  Accepting all factual allegations in the Complaint as true and taking them in the light most favorable to Plaintiff, the Complaint does not fail to state a cause of action for unjust enrichment, and that count of the Complaint should not be dismissed.

## CONCLUSION

For the foregoing reasons, Wachovia's Motion to Dismiss Plaintiff's Complaint should be denied.

Dated:  July 1, 2009                        Respectfully Submitted,

ALTERS BOLDT BROWN RASH & CULMO, P.A.

/s/ Kimberly L. Boldt
Kimberly L. Boldt, Esquire
Florida Bar No. 957399
Bruce S. Rogow, Esquire
(Special Counsel to the firm)
Florida Bar No. 067999

4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

<u>**CERTIFICATE OF SERVICE**</u>

**THIS IS TO CERTIFY** that on July 1, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

**Barry R. Davidson, Esquire**
Email:  bdavidson@hunton.com
Hunton & Williams, LLP
1111 Brickell Avenue
Suite 2100
Miami, Florida 33131
Telephone:  305-810-2500
Facsimile:  305-810-2460
Attorneys for Defendant

<u>/s/ Kimberly L. Boldt</u>
Kimberly L. Boldt, Esquire