## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

———————————————————————————— )
                                                                      )
IN RE: CHECKING ACCOUNT                          )
OVERDRAFT LITIGATION                             )
                                                                      )
MDL No. 2036                                            )
————————————————————————————)

———————————————————————————— )
                                                                      )
THIS DOCUMENT RELATES TO:                    )
                                                                      )
*Garcia, et al. v. Wachovia Bank, N.A.*               )
S.D. Fla. Case No. 08-22463-JLK                    )
                                                                      )
*Poulin, et al. v. Wachovia Bank, N.A.*               )
S.D. Fla. Case No. 09-21863                          )
————————————————————————————)

### AMENDED CONSOLIDATED CLASS ACTION COMPLAINT[1]

Plaintiffs, through undersigned counsel, on behalf of themselves and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

———————————————

[1] All Plaintiffs, other than Melanie Garcia, named in this Amended Consolidated Class Action Complaint will voluntarily dismiss other actions they filed and which were previously transferred to this Court upon the written stipulation of Wachovia to the filing of this Amended Consolidated Class Action Complaint or, in the absence of such stipulation, upon entry of an Order Granting Leave to File this Amended Consolidated Class Action Complaint. Upon such stipulation or Order, all Plaintiffs joining in this Amended Consolidated Class Action Complaint waive their rights under 14 U.S.C. § 1407 and *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), to later seek remand to the transferor districts in which each Plaintiff filed his or her original Complaints.

## INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution and injunctive relief from Defendant Wachovia Bank, N.A. ("Wachovia" or "the Bank"), arising from its unfair and unconscionable assessment and collection of excessive overdraft fees.

2.      In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Wachovia.  For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers.  Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance.  A recent FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.  Nonetheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.      In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks are estimated to bring in between $27 billion to $38.5 billion in overdraft charges alone.*  As the one of the largest retail banks in the country, Wachovia is among the largest beneficiaries of these staggering charges.

4.      Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a

domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5. Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing. Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear. For example, if a customer wrote a check to purchase groceries, the grocery store would only know whether the check cleared *after* the groceries had been purchased.

6. The same considerations are not present when customers use debit cards. Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions. Retail and service transactions could still be executed if consumers presented an alternative form of payment. ATM transactions could still proceed if banks provided a warning that an overdraft fee would be incurred, and customers chose to proceed nevertheless. In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7. Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Wachovia routinely processes such transactions and then charges its customers an overdraft fee of $22 (for the first occurrence) or $35 (for each additional occurrence)—even when the transaction is for only a few dollars. This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Wachovia. Additionally, as part of its

inequitable motive to generate obscene profits gained through the imposition of unconscionable overdraft fees, Wachovia fails to adequately disclose to its customers that they may elect to opt out of overdraft protection.

8.      In many instances, these overdraft fees cost Wachovia account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars. Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

9.      Thus, it is through manipulation and alteration of customers' transaction records that Wachovia maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one Plaintiff is a resident of a different state than Wachovia.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Wachovia is subject to personal jurisdiction here and regularly conducts business in the Southern District of Florida, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in this district.

## THE PARTIES

12.     Plaintiff Melanie Garcia is a citizen of the State of Florida.

13.     Plaintiff Anthony Scott Poulin is a citizen of the State of New Jersey.

14.     Plaintiff Treshala L. Rose is a citizen of the State of Texas.

15.     Plaintiff Frances Knight Triggs Pinckney is a citizen of the State of Georgia.

16.     Plaintiffs Charles Jones and Betty Jones are citizens of the State of Texas.

17.     Plaintiff Angela S. Gonzalez is a citizen of the State of Florida.

18.     Plaintiff Robert L Thornton, Jr. is a citizen of the State of Mississippi.

19.     Wachovia Bank, N.A. maintains its principal place of business in Charlotte, North Carolina.   Wachovia regularly and systematically conducts business throughout the State of Florida, including in this district.   Among other things, Wachovia is engaged in the business of providing retail banking services to millions of consumers, including Plaintiffs and members of the putative Classes, which include the issuance of debit cards for use by its customers in conjunction with their checking accounts.

20.     Wachovia is a national bank, subject to the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

## CLASS ALLEGATIONS

21.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

22.     The proposed classes are defined as:

> All Wachovia customers in the United States (except for California) who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Wachovia's practice of re-sequencing debit card transactions from highest to lowest (the "National Class").

> All Wachovia customers having accounts at branches in the States of Connecticut, Illinois, Kansas, New Jersey, New York, and North Carolina for the purpose of asserting claims under their respective state consumer protection statutes (the "State Subclasses") (*see* Fifth Claim for Relief, *infra*).

> The National Class and the State Subclasses are collectively referred to as the "Classes."

23.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

24.     Excluded from the Classes are Wachovia, its parents, subsidiaries, affiliates, officers and directors, any entity in which Wachovia has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

25.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Wachovia's records.

26.     The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members, were charged overdraft fees by Wachovia as a result of its practice of re-sequencing debit card transactions from highest to lowest.  The representative Plaintiffs, like all Class members, have been damaged by Wachovia's misconduct in that they incurred and/or will continue to incur unfair and unconscionable overdraft charges.  Furthermore, the factual basis of Wachovia's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

27.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

28.     Among the questions of law and fact common to the Classes are whether Wachovia:

        a.     Does not clearly disclose and/or refuses to allow its customers to opt out of its overdraft protection program;

b.      Does not obtain affirmative consent from its customers prior to processing transactions that will result in overdraft fees;

c.      Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

d.      Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

e.      Manipulates and reorders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

f.      Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

g.      Fails to provide customers with accurate balance information;

h.      Delays posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

i.      Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

j.      Breaches its covenant of good faith and fair dealing with Plaintiffs and the other members of the Classes through its overdraft policies and practices;

k.      Converts moneys belonging to Plaintiffs and the other members of the Classes through its overdraft policies and practices;

l.      Requires its customers to enter into standardized account agreements which include unconscionable provisions;

m.      Is unjustly enriched through its overdraft policies and practices;

       n.     Violates the consumer protection acts of certain states through its overdraft policies and practices; and

       o.     Continues to commit wrongdoing through its overdraft policies and practices.

29.    Other questions of law and fact common to the Classes include:

       a.     The proper method or methods by which to measure damages, and

       b.     The injunctive relief to which the Classes are entitled.

30.    Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Wachovia's account agreements and other related documents.  Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

31.    Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

32.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Wachovia, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Wachovia's misconduct will proceed without remedy.

33.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.     Wachovia

34.     According to its website, Wachovia is the fourth largest bank holding company in the United States, holding $808 billion in assets.  Wachovia operates 3,300 branches and more than 5,300 ATMs in 21 states and the District of Columbia.

35.     Wachovia is in the business of providing its customers with a variety of banking services.  One of the services provided by Wachovia for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATM machines, the transaction is processed electronically.  As a result, Wachovia is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

36.     Wachovia employs sophisticated software to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

37.     As a result of Wachovia's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer, whose account had a $50 balance at the time the Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer.  Conversely, if the $100 transaction were debited last—consistent with the actual order of transactions—only one overdraft fee would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

**B.      Wachovia's Relevant Customer Documents Regarding Overdrafts**

38.     Plaintiffs and all members of the Classes maintain or maintained a checking account with Wachovia.   The terms of Wachovia's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by Wachovia, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.  A representative copy of the "Deposit Agreement and Disclosures for Personal Accounts" (the "Deposit Agreement"), covering "all personal deposit accounts established with any Wachovia Bank," which is 18 pages long, single-spaced and in small print, is attached as Exhibit A.

39.     The Deposit Agreement states:

**Insufficient Funds/Overdrafts**.  We may determine whether or not your account contains sufficient funds to pay a check or other item, authorize a point-of-sale transaction, in person withdrawal, ATM withdrawal, or process any other electronic transaction at any time between the time we receive the check or other item, point-of-sale transaction authorization request, in person withdrawal, ATM withdrawal, or other electronic transaction and our return deadline, and only one determination of the account balance is required.  If that determination reveals insufficient available funds to pay the check or other item, or in person withdrawal, authorize the point-of-sale transaction, or process the ATM withdrawal, or other electronic transaction you agree to pay a service charge, and we are not required to honor the check or other item, or in person withdrawal, authorize the point-of-sale transaction, or ATM withdrawal, or process the other electronic transaction and may return and/or decline it. Alternatively, we may honor the check, other item, or in person withdrawal, authorize the point-of-sale transaction, or ATM withdrawal, or process the other electronic transaction and create an overdraft and impose a service charge for paying the overdraft (p. 10).

40.     The Deposit Agreement also states:  "We may pay checks or other items drawn upon your account (including those payable to us or on which we may be liable) in any order determined by us, even if (1) paying a particular check or item results in an insufficient balance in your account to pay one or more other checks or other items that otherwise could have been paid out of your account; or (2) using a particular order results in the payment of fewer checks or other items or the imposition of additional fees.  Although we generally pay larger items first, we are not obligated to do so and, without prior notice to you, we may change the order in which we generally pay items."  *Id*.

41.     The Deposit Agreement further states:  "You are responsible for the full amount of any overdraft and the related service charges. . . .  You agree to deposit sufficient funds to cover the overdraft and the related service charge immediately upon notice of the overdraft and to reimburse us for any costs we incur in collecting the overdraft from you including, without limitation, reasonable attorneys' fees and the costs of litigation to the extent permitted by law.

- 11 -

However, the honoring of one or more overdrafts does not obligate us to honor any future overdrafts, and you should not rely on us to honor an overdraft even if we have done so in the past.  Moreover, we are not required to send you prior notice on checks returned for insufficient funds." *Id*.

42.      In addition, the Deposit Agreement states that "[i]f a check, ATM or Check Card transaction is involved and is not paid because there are not sufficient funds in your account or through overdraft protection, you will be charged the applicable insufficient funds fee." *Id*.

43.      The Deposit Agreement does not set forth the dollar amount of fees that will be charged for purported overdrafts.

44.      Instead, a separate document, the "Schedule of Fees and Funds Availability" ("Schedule of Fees"), lists the dollar amount of fees that will be charged for purported overdrafts, in a chart entitled "Other Services/Fees."  In small print, the chart states:

> Insufficient Funds/Unavailable Funds/Overdrafts[9]
>> These per item charges apply to: checks, in-person withdrawals, ATM withdrawals, point-of-sale transactions, or other paper or electronic transactions.
>> First Occurrence ………………………….. $22.00 per item
>> Additional Occurrences ...………………… $35.00 per item

The footnote appears in extremely small print:  "[9]*The charge amount will be determined by the number of occurrences during the current month and preceding 12 months.  An occurrence is a business day with at least one insufficient funds/unavailable funds/overdraft item*."  A representative copy of the Schedule of Fees is attached as Exhibit B.

45.      The Deposit Agreement and related documents, including the Schedule of Fees, fail to disclose to customers that they have the option to "opt out" from the Bank's overdraft scheme, although it is possible for them to opt out upon request.

C.     **Wachovia's Re-Ordering of Checking Account Transactions**

46.     In an effort to maximize overdraft revenue, Wachovia manipulates and reorders debits from highest to lowest during given periods of time.  Wachovia reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge.  This practice violates numerous consumer protection laws and the covenant of good faith and fair dealing in the Bank's Deposit Agreement.

47.     In addition, Wachovia misleads its customers regarding its reordering practices. Instead of unequivocally telling its customers that it will reorder debits from highest to lowest, the Bank states in its contract that "we *generally* pay larger items first" but that it may process debits in "*any* order determined by us."  These statements are deceptive and/or unfair because it is, in fact, the Bank's practice to always reorder debits from highest to lowest, and because the Bank groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank's Deposit Agreement and its customers' reasonable expectations.  The Bank's practices thus violate the covenant of good faith and fair dealing implied in the Deposit Agreement as well as the consumer protection laws of numerous States.

48.     Transactions involving debit cards used by Wachovia customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed electronically.  As a result, Wachovia is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

49.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Wachovia's posting system, it fails to post charges in the order in which they are incurred or received.  Wachovia developed a policy and employs a practice whereby account

charges and debits are posted to its customers' accounts out of chronological order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

50. Instead of processing such transactions in chronological order, Wachovia processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

51. Wachovia refrains from immediately posting charges to a customer's account as it receives them—sometimes for multiple business days. By holding charges rather than posting them immediately to an account, Wachovia is able to amass a number of charges on the account. Subsequently, Wachovia posts all of the amassed charges on a single date. When the group of charges is eventually posted to the customer's account, Wachovia posts them in order of largest to smallest—not in the order in which they were received or in the order in which they were charged. This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed. The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

52. Wachovia's policy and practice of posting charges from largest to smallest, rather than chronologically, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

53. Wachovia enforces an unconscionable policy whereby charges incurred are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees. Wachovia's processing practices substantially increase the likelihood that customers'

smaller charges will result in multiple overdraft fees.  The practices provide Wachovia with substantially higher service fee revenues than it would otherwise achieve absent these practices.

54.     As a result, Plaintiffs and members of the Classes have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

### D.     Wachovia's Cloaking of Accurate Balance Information

55.     Wachovia actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information.  When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

56.     Wachovia provides inaccurate balance information to its customers through its electronic network.  In certain cases, Wachovia informs its customers that they have a positive balance when, in reality, they have a negative balance, despite Wachovia's actual knowledge of outstanding debits and transactions.

57.     Even when Wachovia has actual knowledge of outstanding transactions which have already created a negative balance in a customers' account, it encourages the customer to incur more overdraft charges by approving—rather than prudently declining—subsequent debit card purchases and other electronic transactions.

58.     Wachovia also assesses overdraft fees at times when actual funds in the customer account are sufficient to cover all debits that have been submitted to the Bank for payment.  It does this by placing a "hold" on actual funds in the customer's account.  In doing so, Wachovia charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

**E.     Wachovia's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out**

59.     At the time its debit cards are used in POS transactions or at ATMs, Wachovia is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Wachovia could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not do so because it seeks to maximize the amount of revenue generated through its assessment of overdraft fees.

60.     Notwithstanding its technological capabilities and actual knowledge, Wachovia fails to provide notice to Plaintiffs and the Classes that a particular debit card transaction will result in an overdraft and, hence, an overdraft fee.  Because Wachovia's customers are not notified of the potential overdraft, and are not given the option of declining the debit card transaction or providing another form of payment, the customers incur monetary damages in the form of overdraft fees.

61.     Wachovia fails to make Plaintiffs and Class members aware that they can opt out of its overdraft scheme upon request, thereby avoiding any overdraft fees from being incurred.

**F.     Wachovia's Overdraft Policies and Practices are Contrary to Best Practices**

62.     By engaging in the conduct described herein, Wachovia has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union

Administration (collectively, the "Agencies").   A copy of the Joint Guidance is attached as Exhibit C.   These "best practice" recommendations include: "Provide election or opt-out of service.   Obtain affirmative consent of consumers to receive overdraft protection.   Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."   70 F.R. 9127-01, 9132.

63.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . .   This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."   73 F.R. 28904-01, 28929 (May 19, 2008).

64.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.   When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."   70 F.R. 9127, 9132.   The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."   *Id.*

65.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.   A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit D.

66.    Wachovia's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies "is not reasonably avoidable" by the consumer.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

67.    On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion:  Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached as Exhibit E, finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee."  The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

68.     A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



**G.     Wachovia's Unconscionable Provisions and Policies**

69.     Wachovia's overdraft policies and practices are unconscionable in the following respects, among others:

        a.      The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before incurring an overdraft fee;

d.      The Deposit Agreement and related documents are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety; and

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, the Schedule of Fees, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though the Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

70.     The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Wachovia *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

71.     The Deposit Agreement also contains an arbitration clause and a class action waiver which states:

> **Arbitration of Disputes/Waiver of Jury Trial and Participation in Class Actions**.  If either you or we request, any dispute or claim concerning your account or your relationship to us will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA), and Title 9 of the US Code. . . .
>
> The arbitration or trial will be brought individually and not as part of a class action.  If it is bought as a class action, it must proceed on an individual (non-class, non-representative) basis.  YOU UNDERSTAND AND KNOWINGLY AND VOLUNTARILY AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN ANY CLASS ACTION LAWSUIT.

Deposit Agreement, p. 12.

72.     The above cited provisions are unconscionable because the Deposit Agreement and related documents, to the extent they are deemed contracts, are unenforceable contracts of adhesion and the arbitration provision itself is substantively unconscionable.

**H.     Recently Announced Changes in Wachovia's Overdraft Policies and Practices Do Not Offer Any Remedial Benefits to Customers**

73.     On September 23, 2009, Wachovia announced plans to overhaul its overdraft policies on a going-forward basis.  The changes do nothing to remedy the past wrongs to Plaintiffs and the Classes.  They do not retroactively reverse the charges wrongly debited from their accounts, nor do they prevent Wachovia from continuing its unfair and unconscionable methods of business.

**I.     Wachovia's Overdraft Practices Harmed Plaintiffs**

74.     In connection with their accounts, the Bank issued debit cards to its customers.  A debit card allows customers to access their checking account funds by using the card to execute a

transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

75.     Plaintiff Melanie Garcia is a current checking account customer of Wachovia.

76.     Wachovia charged Ms. Garcia multiple overdraft fees.  For example, based on information and belief, Ms. Garcia was charged three overdraft fees on August 4, 2008, in the amount of $35.00 each, for a total of $105.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Wachovia Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | **Beginning Balance on 8/4/08:** |  |  | **$ 56.42** |
| **Date Posted** | **Debit Description** |  |  |  |
| 8/4/08 | Educational Comp Payment | 102.63 |  | -46.21 |
| 8/4/08 | Metrocard 08/01 | 20.00 |  | -66.21 |
| 8/4/08 | Netflix  08/01 | 14.97 |  | -81.18 |
| 8/4/08 | Overdraft Items Fee |  | 105.00 |  |
|  |  | **Total Fees:** | **$105.00** |  |

77.     If Wachovia had not manipulated and reordered Ms. Garcia's transactions from highest to lowest, she would not have incurred three overdraft fees.

78.     For instance, if Wachovia had posted the transactions from lowest to highest, Ms. Garcia would have only incurred one overdraft fee instead of three:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 8/4/08: | | | $56.42 |
| Date Posted | Debit Description | | | |
| 8/4/08 | Netflix 08/01 | 14.97 | | 41.45 |
| 8/4/08 | Metrocard 08/01 | 20.00 | | 21.45 |
| 8/4/08 | Educational Comp Payment | 102.63 | | -81.18 |
| 8/4/08 | Overdraft Items Fee | | 35.00 | |
| | | Total Fees: | $35.00 | |

79.     Likewise, if Wachovia had posted the transactions in chronological order, Ms. Garcia would have only incurred one overdraft fee instead of three:

Balance Sheet if Debits Were Processed in Chronological Order[2]

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 7/24/08: | | | $56.42 |
| Date of Transaction | Debit Description | | | |
| 8/1/08 | Metrocard 08/01 | 20.00 | | 36.42 |
| 8/1/08 | Netflix 08/01 | 14.97 | | 21.45 |
| 8/4/08 | Educational Comp Payment | 102.63 | | -81.18 |
| 8/4/08 | Overdraft Items Fee | | 35.00 | |
| | | Total Fees: | $35.00 | |

80.     Plaintiff Anthony Scott Poulin is a current checking account customer of Wachovia.

81.     Wachovia charged Mr. Poulin multiple overdraft fees.  For example, based on information and belief, Mr. Poulin was charged four overdraft fees on  May 11, 2009, in the

---

[2] For each chart that lists the transactions in chronological order, the transactions are shown as listed in the Bank's statements, re-sorted only by date.  Because the statements do not indicate the hour and minute of each transaction, Plaintiffs have listed the transactions for each particular day in the same order in which they are listed in the statements, sorting only from earlier dates to later dates.  Thus, if the Bank's statements list transactions that occurred on one particular day in some order other than chronological—sorting from highest to lowest transaction, for example—Plaintiffs have not changed that order.  As a result, the chronological charts in this Complaint may reflect even more overdraft fees than Plaintiffs would have incurred had the Bank posted the transactions in strict chronological order.

amount of $35.00 each, for a total of $140.00.  Based on information and belief, the overdraft

fees were based on the following ordering of transactions:

**Balance Sheet per Wachovia Reordering Scheme**
### (Debits Processed from Highest to Lowest)

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 05/11/2009: | | | $  68.66 |
| Date Posted | Debit Description | | | |
| 05/11/2009 | Purchase A&P | 44.79 | | 23.87 |
| 05/11/2009 | Purchase A&P | 27.26 | | -  3.39 |
| 05/11/2009 | Purchase South MTA Vending Machine | 20.00 | | -  23.39 |
| 05/11/2009 | Purchase Stage Door Deli | 8.35 | | -  31.74 |
| 05/11/2009 | Purchase Subway | 5.42 | | -  37.16 |
| 05/11/2009 | Overdraft Items Fee | | 140.00 | - 177.16 |
| | | Total Fees: | $140.00 | |

82.     If Wachovia had not manipulated and reordered Mr. Poulin's transactions from

highest to lowest, he would not have incurred four overdraft fees.

83.     For instance, if Wachovia had posted the transactions from lowest to highest, Mr.

Poulin would have only incurred one overdraft fee instead of four:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 05/11/2009: | | | $  68.66 |
| Date Posted | Debit Description | | | |
| 05/11/2009 | Purchase Subway | 5.42 | | 63.24 |
| 05/11/2009 | Purchase Stage Door Deli | 8.35 | | 54.89 |
| 05/11/2009 | Purchase South MTA Vending Machine | 20.00 | | 34.89 |
| 05/11/2009 | Purchase A&P | 27.26 | | 7.63 |
| 05/11/2009 | Purchase A&P | 44.79 | | -37.16 |
| 05/11/2009 | Overdraft Item Fee | | 35.00 | -72.16 |
| | | Total Fees: | $35.00 | |

84.     Likewise, if Wachovia had posted the transactions in chronological order, Mr.

Poulin would have only incurred one overdraft fees instead of four:

**Balance Sheet if Debits Were Processed in Chronological Order**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 05/11/2009: | | | $ 68.66 |
| Date of Transaction | Debit Description | | | |
| 5/06/2009 | Purchase Stage Door Deli | 8.35 | | 60.31 |
| 5/07/2009 | Purchase Subway | 5.42 | | 54.89 |
| 5/08/2009 | Purchase South MTA Vending Machine | 20.00 | | 34.89 |
| 5/09/2009 | Purchase A&P | 27.26 | | 7.63 |
| 5/10/2009 | Purchase A&P | 44.79 | | - 37.16 |
| 5/11/2009 | Overdraft Item Fee | | 35.00 | - 72.16 |
| | | Total Fees: | $ 35.00 | |

85.     Plaintiff Treshala L. Rose is a current checking account customer of Wachovia.

86.     Wachovia charged Ms. Rose multiple overdraft fees.  For example, based on information and belief, Ms. Rose was charged four overdraft fees on March  23, 2009, in the amount of $35.00 each, for a total of $140.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Wachovia Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 03/23/2009: | | | $ 596.11 |
| Date Posted | Debit Description | | | |
| 03/23/2009 | Withdrawal Regions Bank | 403.00 | | 193.11 |
| 03/23/2009 | Withdrawal Southside Bank | 132.50 | | 60.61 |
| 03/23/2009 | Purchase CNAC | 52.16 | | 8.45 |
| 03/23/2009 | Purchase Southern Classic | 27.91 | | - 19.46 |
| 03/23/2009 | Purchase CIC* Credit Report | 26.51 | | - 45.97 |
| 03/23/2009 | Purchase Chevron | 25.67 | | - 71.64 |
| 03/23/2009 | Purchase Sou Kids Footlocker | 12.00 | | - 83.64 |
| 03/23/2009 | Overdraft Items Fee | | 140.00 | -223.64 |
| | | Total Fees: | $140.00 | |

87.     If Wachovia had not manipulated and reordered Ms. Rose's transactions from highest to lowest, she would not have incurred four overdraft fees.

88.    For instance, if Wachovia had posted the transactions from lowest to highest, Ms.

Rose would have only incurred one overdraft fee instead of four:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | **Beginning Balance on 03/23/2009:** |  |  | **$ 596.11** |
| **Date Posted** | **Debit Description** |  |  |  |
| 03/23/2009 | Purchase Sou Kids Footlocker | 12.00 |  | 584.11 |
| 03/23/2009 | Purchase Chevron | 25.67 |  | 558.44 |
| 03/23/2009 | Purchase CIC* Credit Report | 26.51 |  | 531.93 |
| 03/23/2009 | Purchase Southern Classic | 27.91 |  | 504.02 |
| 03/23/2009 | Purchase CNAC | 52.16 |  | 451.86 |
| 03/23/2009 | Withdrawal Southside Bank | 132.50 |  | 319.36 |
| 03/23/2009 | Withdrawal Regions Bank | 403.00 |  | - 83.64 |
| 03/23/2009 | Overdraft Item Fee |  | 35.00 | -118.64 |
|  |  | **Total Fees:** | **$35.00** |  |

89.    Likewise, if Wachovia had posted the transactions in chronological order, Ms.

Rose would have only incurred one overdraft fee instead of four:

**Balance Sheet if Debits Were Processed in Chronological Order**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | **Beginning Balance on 03/23/2009:** |  |  | **$ 596.11** |
| **Date of Transaction** | **Debit Description** |  |  |  |
| 03/20/2009 | Purchase Sou Kids Footlocker | 12.00 |  | 584.11 |
| 03/20/2009 | Purchase Chevron | 25.67 |  | 558.44 |
| 03/20/2009 | Purchase Southern Classic | 27.91 |  | 530.53 |
| 3/20/2009 | Purchase CNAC | 52.16 |  | 478.37 |
| 03/20/2009 | Withdrawal Regions Bank | 403.00 |  | 75.37 |
| 03/21/2009 | Purchase CIC* Credit Report | 26.51 |  | 48.86 |
| 03/21/2009 | Withdrawal Southside Bank | 132.50 |  | - 83.64 |
| 03/23/2009 | Overdraft Item Fee |  | 35.00 | -118.64 |
|  |  | **Total Fees:** | **$ 35.00** |  |

90.    Plaintiff Frances Knight Triggs Pinckney is a current checking account customer

of Wachovia.

91.     Wachovia charged Mr. Pinckney multiple overdraft fees.  For example, based on information and belief, Mr. Pinckney was charged five overdraft fees on January 14, 2008, in the amount of $35.00 each, for a total of $175.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Wachovia Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 1/14/08: | | | $ 310.46 |
| Date Posted | Debit Description | | | |
| 1/14/08 | Americredit Payment | 496.20 | | -185.74 |
| 1/14/08 | Snapping Shoals | 141.73 | | -327.47 |
| 1/14/08 | Withdrawal | 102.00 | | -429.47 |
| 1/14/08 | Chevron | 20.20 | | -449.67 |
| 1/14/08 | Western Union Payment | 7.50 | | -457.17 |
| 1/14/08 | Overdraft Items Fee | | 175.00 | |
| | | Total Fees: | $175.00 | |

92.     If Wachovia had not manipulated and reordered Mr. Pinckney's transactions from highest to lowest, he would not have incurred five overdraft fees.

93.     For instance, if Wachovia had posted the transactions from lowest to highest, Mr. Pinckney would have only incurred one overdraft fee instead of five:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 1/14/08: | | | $ 310.46 |
| Date Posted | Debit Description | | | |
| 1/14/08 | Western Union Payment | 7.50 | | 302.96 |
| 1/14/08 | Chevron | 20.20 | | 282.76 |
| 1/14/08 | Withdrawal | 102.00 | | 180.76 |
| 1/14/08 | Snapping Shoals | 141.73 | | 39.03 |
| 1/14/08 | Ameri-credit Payment | 496.20 | | -457.17 |
| 1/14/08 | Overdraft Item Fee | | 35.00 | |
| | | Total Fees: | $35.00 | |

94.     Likewise, if Wachovia had posted the transactions in chronological order, Mr. Pinckney would have only incurred two overdraft fees instead of five:

**Balance Sheet if Debits Were Processed in Chronological Order**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 1/14/08: | | | $310.46 |
| Date of Transaction | Debit Description | | | |
| 1/11/08 | Chevron | 20.20 | | 290.26 |
| 1/12/08 | Snapping Shoals | 141.73 | | 148.53 |
| 1/13/08 | Withdrawal | 102.00 | | 46.53 |
| 1/14/08 | Ameri-credit Payment | 496.20 | | -449.67 |
| 1/14/08 | Western Union Payment | 7.50 | | -457.17 |
| 1/14/08 | Overdraft Items Fee | | 70.00 | |
| | | Total Fees: | $70.00 | |

95.     Plaintiffs Charles Jones and Betty Jones are former checking account customers of Wachovia.

96.     Wachovia charged Mr. & Mrs. Jones multiple overdraft fees.  For example, based on information and belief, Mr. & Mrs. Jones were charged four overdraft fees on November 5, 2007, in the amount of $35.00 each, for a total of $105.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Wachovia Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 11/05/07: | | | $ 129.05 |
| Date Posted | Debit Description | | | |
| 11/05/07 | Purchase Kroger 11/04 | 53.64 | | 75.41 |
| 11/05/07 | Check #0105 | 45.00 | | 30.41 |
| 11/05/07 | Withdrawal 11/03 | 40.00 | | -  9.59 |
| 11/05/07 | Purchase Kroger 11/03 | 23.60 | | - 33.19 |
| 11/05/07 | Purchase Ralston 11/02 | 15.69 | | - 48.88 |
| 11/05/07 | Purchase Exxonmobile 11/03 | 5.03 | | - 53.91 |
| 11/05/07 | Counter Deposit **$20.00** | | | - 33.91 |
| 11/05/07 | Overdraft/Unavailable Funds Fee | | 105.00 | - 138.91 |
| | | Total Fees: | $105.00 | |

97.     If Wachovia had not manipulated and reordered Mr. & Mrs. Jones' transactions from highest to lowest, they would not have incurred four overdraft fees.

98.     For instance, if Wachovia had posted the transactions from lowest to highest, Mr. & Mrs. Jones would have only incurred two overdraft fees instead of four:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 11/05/07: | | | $ 129.05 |
| Date Posted | Debit Description | | | |
| 11/05/07 | Purchase Exxonmobile 11/03 | 5.03 | | 124.02 |
| 11/05/07 | Purchase Ralston 11/02 | 15.69 | | 108.33 |
| 11/05/07 | Purchase Kroger 11/03 | 23.60 | | 84.73 |
| 11/05/07 | Withdrawal 11/03 | 40.00 | | 44.73 |
| 11/05/07 | Check #0105 | 45.00 | | -   .27 |
| 11/05/07 | Purchase Kroger 11/04 | 53.64 | | - 53.91 |
| 11/05/07 | Counter Deposit **$20.00** | | | - 33.91 |
| 11/05/07 | Overdraft/Unavailable Funds Fee | | 70.00 | -138.91 |
| | | **Total Fees:** | **$ 70.00** | |

99.     Likewise, if Wachovia had posted the transactions in chronological order, Mr. & Mrs. Jones would have only incurred two overdraft fees instead of four:

**Balance Sheet if Debits Were Processed in Chronological Order**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 11/05/07: | | | $ 129.05 |
| Date of Transaction | Debit Description | | | |
| 11/05/07 | Purchase Ralston 11/02 | 15.69 | | 113.36 |
| 11/05/07 | Purchase Exxonmobile 11/03 | 5.03 | | 108.33 |
| 11/05/07 | Purchase Kroger 11/03 | 23.60 | | 84.73 |
| 11/05/07 | Withdrawal 11/03 | 40.00 | | 44.73 |
| 11/05/07 | Purchase Kroger 11/04 | 53.64 | | -   8.91 |
| 11/05/07 | Check #0105 | 45.00 | | - 53.91 |
| 11/05/07 | Counter Deposit **$20.00** | | | - 33.91 |
| 11/05/07 | Overdraft/Unavailable Funds Fee | | 70.00 | -138.91 |
| | | **Total Fees:** | **$ 70.00** | |

100.    Plaintiff Angela S. Gonzalez is a former checking account customer of Wachovia.

101.    Wachovia charged Mrs. Gonzalez multiple overdraft fees.  For example, based on information and belief, Mrs. Gonzalez was charged two overdraft fees on January 29, 2007, in the amount of $35.00 each, for a total of $70.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Wachovia Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| Date Posted | Debit Description | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 1/26/07: | | | $ 66.90 |
| 1/26/07 | Albertsons | 10.39 | | 56.51 |
| 1/29/07 | Albertsons | 23.63 | | 32.88 |
| 1/29/07 | Exxon Mobil | 15.02 | | 17.86 |
| 1/29/07 | Albertsons | 10.00 | | 7.86 |
| 1/29/07 | Burger King | 7.86 | | 0.00 |
| 1/29/07 | Volcanos Coffee | 7.25 | | - 7.25 |
| 1/29/07 | Sams Gas | 5.51 | | -12.76 |
| 1/29/09 | Overdraft Items Fee | | 70.00 | |
| | | Total Fees: | $70.00 | |

102.    If Wachovia had not manipulated and reordered Ms. Gonzalez's transactions from highest to lowest, she would not have incurred two overdraft fees.

103.    For instance, if Wachovia had posted the transactions from lowest to highest, Ms. Gonzalez would have only incurred one overdraft fee instead of two:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 1/26/07: | | | $ 66.90 |
| Date Posted | Debit Description | | | |
| 1/26/07 | Albertsons | 10.39 | | 56.51 |
| 1/29/07 | Sams Gas | 5.51 | | 51.00 |
| 1/29/07 | Volcanos Coffee | 7.25 | | 43.75 |
| 1/29/07 | Burger King | 7.86 | | 35.89 |
| 1/29/07 | Albertsons | 10.00 | | 25.89 |
| 1/29/07 | Exxon Mobil | 15.02 | | 10.87 |
| 1/29/07 | Albertsons | 23.63 | | -12.76 |
| 1/29/09 | Overdraft Items Fee | | 35.00 | |
| | | Total Fees: | $35.00 | |

104.    Likewise, if Wachovia had posted the transactions in chronological order, Ms. Gonzalez would have only incurred one overdraft fee instead of two:

**Balance Sheet if Debits Were Processed in Chronological Order**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 1/26/07: | | | $66.90 |
| Date of Transaction | Debit Description | | | |
| 1/25/07 | Albertsons | 10.39 | | 56.51 |
| 1/25/07 | Sams Gas | 5.51 | | 51.00 |
| 1/25/07 | Volcanos Coffee | 7.25 | | 43.75 |
| 1/25/07 | Burger King | 7.86 | | 35.89 |
| 1/26/07 | Albertsons | 10.00 | | 25.89 |
| 1/27/07 | Exxon Mobil | 15.02 | | 10.87 |
| 1/29/07 | Albertsons | 23.63 | | -12.76 |
| 1/29/09 | Overdraft Items Fee | | 35.00 | |
| | | Total Fees: | $35.00 | |

105.    Plaintiff Robert L Thornton, Jr. is a current checking account customer of Wachovia.

106.    Wachovia charged Mr. Thornton multiple overdraft fees.  For example, based on information and belief, Mr. Thornton  was charged three overdraft fees on October 22, 2008, in

the amount of $35.00 each, for a total of $105.00.  Based on information and belief, the overdraft

fees were based on the following ordering of transactions:

**Balance Sheet per Wachovia Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 10/22/2008: | | | $ 306.57 |
| Date Posted | Debit Description | | | |
| 10/22/2008 | Purchase PayPal *Sat Oasis | 177.41 | | 129.16 |
| 10/22/2008 | Purchase PayPal *Sat Oasis | 143.82 | | - 14.66 |
| 10/22/2008 | Purchase Wal-Mart | 64.11 | | - 78.77 |
| 10/22/2008 | Purchase Radio Shack | 35.30 | | -114.07 |
| 10/22/2008 | Overdraft Items Fee | | 105.00 | -219.07 |
| | | Total Fees: | $105.00 | |

107.    If Wachovia had not manipulated and reordered Mr. Thornton's transactions from

highest to lowest, he would not have incurred three overdraft fees.

108.    For instance, if Wachovia had posted the transactions from lowest to highest, Mr.

Thornton would have only incurred one overdraft fee instead of three:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 10/22/2008: | | | $ 306.57 |
| Date Posted | Debit Description | | | |
| 10/22/2008 | Purchase Radio Shack | 35.30 | | 271.27 |
| 10/22/2008 | Purchase Wal-Mart | 64.11 | | 207.16 |
| 10/22/2008 | Purchase PayPal *Sat Oasis | 143.82 | | 63.34 |
| 10/22/2008 | Purchase PayPal *Sat Oasis | 177.41 | | - 114.07 |
| 10/22/2008 | Overdraft Item Fee | | 35.00 | - 149.37 |
| | | Total Fees: | $35.00 | |

109.    Likewise, if Wachovia had posted the transactions in chronological order, Mr.

Thornton would have only incurred one overdraft fees instead of three:

**Balance Sheet if Debits Were Processed in Chronological Order**

|  | | Debits | Fees | Balance |
|---|---|---|---|---|
|  | Beginning Balance on 10/22/2008: | | | $ 306.57 |
| Date of Transaction | Debit Description | | | |
| 10/21/2008 | Purchase Radio Shack | 35.30 | | 271.27 |
| 10/21/2008 | Purchase Wal-Mart | 64.11 | | 207.16 |
| 10/21/2008 | Purchase PayPal *Sat Oasis | 143.82 | | 63.34 |
| 10/21/2008 | Purchase PayPal *Sat Oasis | 177.41 | | - 114.07 |
| 10/22/2008 | Overdraft Item Fee | | 35.00 | - 149.07 |
|  | | Total Fees: | $ 35.00 | |

110.    Wachovia failed to notify any of these Plaintiffs that they could incur overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, Wachovia never notified these Plaintiffs, at the time they executed the purported insufficient funds transactions described above, that their checking account were overdrawn or that they would be charged an overdraft fee as a result of the transactions.  Furthermore, Wachovia paid, rather than returned, all of the debit card charges described above, even though Plaintiffs' accounts purportedly lacked sufficient funds to cover the transactions.

111.    Based on information and belief, the overdraft charges incurred by Plaintiffs are representative of hundreds of millions of dollars of overdraft fees that Wachovia wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

**B.    The Damages Sustained by Plaintiffs and the Classes**

112.    As shown by these examples, Wachovia's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account.  In fact, the Agencies have stated that "injury" resulting from such policies "is not

reasonably avoidable" by consumers.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." *Id.*

113.   According to rules proposed by the Agencies, "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

114.   Thus, as a consequence of Wachovia's overdraft policies and practices, Plaintiffs and the Classes have been wrongfully forced to pay overdraft fees.  Wachovia has improperly deprived Plaintiffs and the Classes of significant funds, causing ascertainable monetary losses and damages.

115.   As a consequence of Wachovia's improper overdraft fees, Wachovia has wrongfully deprived Plaintiffs and the Classes of funds to which it had no legitimate claim.

116.   Plaintiffs and members of the Classes had sufficient funds in their accounts to cover at least some of the transactions for which they were charged overdraft fees.  Plaintiffs and members of the Classes either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Wachovia could impose these wrongful charges.  In many instances,

Wachovia's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiffs and Class members.

117.    All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

## FIRST CLAIM FOR RELIEF

### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing[3]
### (On Behalf of the National Class)

118.    Plaintiffs repeat paragraphs 1 through 117 above.

119.    Plaintiffs and Wachovia have contracted for bank account deposit, checking, ATM and debit card services, as embodied in Wachovia's Deposit Agreement and related documentation.

120.    Good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

121.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of

---

[3] Florida, New York and certain other states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.  For the sake of convenience in this multi-district litigation, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

122.    Since at least 2003, Wachovia has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

123.    Plaintiffs and members of the National Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

124.    Plaintiffs and members of the National Class have sustained damages as a result of Wachovia's breach of the covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF

### Unconscionability
### (On Behalf of the National Class)

125.    Plaintiffs repeat paragraphs 1 through 117 above.

126.    Wachovia's overdraft policies and practices are substantively and procedurally unconscionable in the following respects, among others:

a.      The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Deposit Agreement and related documents, including the Schedule of Fees, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety; and

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a separate document, the Schedule of Fees, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Wachovia *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

127.    Considering the great business acumen and experience of Wachovia in relation to Plaintiffs and the National Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

128.    The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $35 charge on an overdraft of less than $35) is itself unconscionable.  Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

129.    Plaintiffs and members of the National Class have sustained damages as a result of Wachovia's unconscionable policies and practices as alleged herein.

### THIRD CLAIM FOR RELIEF

#### Conversion
#### (On Behalf of the National Class)

130.    Plaintiffs repeat paragraphs 1 through 117 above.

131.    Wachovia had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

132.    Wachovia has wrongfully collected overdraft fees from Plaintiffs and the members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

133.    Wachovia has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Class, without legal justification.

134.    Wachovia continues to retain these funds unlawfully without the consent of Plaintiffs or members of the National Class.

135.    Wachovia intends to permanently deprive Plaintiffs and the members of the National Class of these funds.

136.    These funds are properly owned by Plaintiffs and the members of the National Class, not Wachovia, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the National Class.

137.    Plaintiffs and the members of the National Class are entitled to the immediate possession of these funds.

138.    Wachovia has wrongfully converted these specific and readily identifiable funds in violation of law.

139.    Wachovia's wrongful conduct is continuing.

140.    As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Class have suffered and continue to suffer damages.

141.    By reason of the foregoing, Plaintiffs and the members of the National Class are entitled to recover from Wachovia all damages and costs permitted by law, including all amounts that Wachovia has wrongfully converted.

### FOURTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of the National Class)

142.    Plaintiffs repeat paragraphs 1 through 117 above.

143.    Plaintiffs, on behalf of themselves and the National Class, assert a common law claim for unjust enrichment.

144.    By means of Wachovia's wrongful conduct alleged herein, Wachovia knowingly provides banking services to Plaintiffs and members of the National Class that are unfair, unconscionable, and oppressive.

145.    Wachovia knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National Class.  In so doing, Wachovia acted with conscious disregard for the rights of Plaintiffs and members of the National Class.

146.    As a result of Wachovia's wrongful conduct as alleged herein, Wachovia has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National Class.

147.    Wachovia's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

148.    Under the common law doctrine of unjust enrichment, it is inequitable for Wachovia to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiffs and members of the National Class in an unfair, unconscionable, and oppressive manner.  Wachovia's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

149.    The financial benefits derived by Wachovia rightfully belong to Plaintiffs and members of the National Class.  Wachovia should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the National Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Wachovia traceable to Plaintiffs and the members of the National Class.

150.    Plaintiffs and members of the National Class have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF

### Violations of State Unfair Trade Practice Laws
**(On Behalf of the State Subclasses)**

151.    Plaintiffs repeat paragraphs 1 through 117 above.  This claim is asserted on behalf of the members of each State Subclass under their respective consumer protection statutes.

152.    Wachovia engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.*

153.     Wachovia engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*

154.     Wachovia engages in unconscionable business practices relating to the imposition of overdraft fees on consumers, in violation of the Kansas Consumer Protection Act, Kan. Stat. §§ 50-623, *et seq.*

155.     Wachovia engages in unconscionable business practices relating to the imposition of overdraft fees on consumers, in violation of N.J. Stat. §§ 56:8-1, *et seq.*

156.     Wachovia engages in deceptive and misleading business practices relating to the imposition of overdraft fees on consumers, in violation of New York General Business Law § 349.

157.     Wachovia engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of N.C. Gen. Stat. §§ 75-1.1, *et seq.*

158.     As redress for Wachovia's repeated and ongoing violations of these consumer protection statutes, Plaintiffs and the Classes are entitled to, *inter alia*, damages, declaratory relief, and injunctive relief requiring Wachovia to immediately cease the practices alleged in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes they seeks to represent, demand a jury trial on all claims so triable, and demand judgment as follows:

1.     Injunctive relief enjoining Wachovia from charging overdraft fees under its current policies and from engaging in the wrongful, unfair, and unconscionable practices alleged herein.

2.      Restitution of all overdraft fees paid to Wachovia by Plaintiffs and the Classes, as a result of the wrongs alleged herein, within the applicable statutes of limitations, in an amount to be determined at trial;

3.      Disgorgement of the ill-gotten gains derived by Wachovia from its misconduct;

4.      Actual damages in an amount according to proof;

5.      Punitive and exemplary damages;

6.      Pre-judgment interest at the maximum rate permitted by applicable law;

7.      Costs and disbursements incurred by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.      Such other relief as this Court deems just and proper.

9.

Dated:      October 16, 2009

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@abbrclaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@abbrclaw.com
ALTERS BOLDT BROWN
 RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Lead Counsel for Plaintiffs*

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
GOLUMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Barry R. Himmelstein
Barry R. Himmelstein, Esquire
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esquire
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E 58th street
34th Floor
New york, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webbllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 09-MD-02036-JLK

| | |
|---|---|
| | ) |
| IN RE: CHECKING ACCOUNT | ) |
| OVERDRAFT LITIGATION | ) |
| | ) |
| MDL No. 2036 | ) |
| | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of October, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Florida Bar No. 561861
ALTERS BOLDT BROWN
RASH & CULMO, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@abbrclaw.com

- 44 -