# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

| |
|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION |
| MDL No. 2036 |

| |
|---|
| THIS DOCUMENT RELATES TO: |
| *Luquetta, et al. v. JP Morgan Chase Bank, N.A.*<br>S.D. Fla. Case No. 1:09-cv-23432-JLK<br>C.D. Cal. Case No. 2:09-cv-06967-GHK-FFM |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO JPMORGAN CHASE BANK, N.A.'S SUPPLEMENTAL MOTION TO DISMISS THE *LUQUETTA* COMPLAINT**

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.    The Terms of Chase's Assumption Agreement Dictate Chase Is Liable for
      Washington Mutual's Overdraft Fee Misconduct................................................. 2

II.   FIRREA Does Not Apply Because Plaintiff Is Suing Chase, Not
      Washington Mutual, and Chase Assumed the Liabilities ..................................... 3

III.  The Claims Against Chase Are Not Preempted by HOLA.................................... 6

IV.   Chase's Standing Argument Fails........................................................................ 12

      A.    Plaintiff Luquetta Was Damaged When Her 8/17/09 Bill Pay
            Transaction Was Posted Ahead of Her 8/15/09 and 8/16/09 Debit
            Card Transactions .................................................................................. 12

      B.    Should the Court Determine That Plaintiff Luquetta Lacks
            Standing, Leave to Substitute a New Class Representative Should
            Be Granted .............................................................................................. 14

CONCLUSION.............................................................................................................. 15

# TABLE OF AUTHORITIES

Page

**Cases**

*Arriaga v. Florida Pac. Farms, L.L.C.*,
305 F.3d 1228 (11th Cir. 2002) ........................................................................... 2

*Bank of America v. City and County of San Francisco*,
309 F.3d 551 (9th Cir. 2002) ........................................................................... 11

*Bates v. Dow Agrosciences LLC*,
544 U.S. 431 (2005) ......................................................................................... 11

*Binetti v. Washington Mutual Bank*,
446 F. Supp. 2d 217 (S.D.N.Y. 2006) ............................................................... 8

*Birdville Indep. Sch. Dist. v. Hurst Assoc.*,
806 F. Supp. 122 (N.D. Tex. 1992) .................................................................... 5

*Birmingham Steel Corp. v. Tennessee Valley Authority*,
353 F.3d 1331 (11th Cir. 2003) ........................................................................ 15

*Branch v. F.D.I.C.*,
825 F. Supp. 384 (D. Mass. 1993) ..................................................................... 5

*Brown v. Brown & Williamson Tobacco Corp.*,
26 F. Supp. 2d 74 (D.D.C. 1998) ....................................................................... 2

*Bud Antle, Inc. v. Eastern Foods, Inc.*,
758 F.2d 1451 (11th Cir. 1985) .......................................................................... 2

*Clanton v. Inter.Net Global, L.L.C.*,
435 F.3d 1319 (11th Cir. 2006) .......................................................................... 5

*Cuomo v. Clearing House Ass'n, L.L.C.*,
-- U.S. --, 129 S.Ct. 2710 (2009) ................................................................. 6, 10

*English v. General Elec. Co.*,
496 U.S. 72 (1990) ............................................................................................. 6

*Fenning v. Glenfed, Inc.*,
40 Cal. App. 4th 1285 (Cal. Ct. App. 1995) ..................................................... 10

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963) ........................................................................................... 6

*Gibson v. World Savings & Loan Association*,
103 Cal. App. 4th 1291 (Cal. Ct. App. 2002) ............................................... 9, 10

*Guadagno v. E*Trade Bank*,
592 F. Supp. 2d 1263 (C.D. Cal. 2008) ............................................................ 11

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Hussey-Head v. World Sav. and Loan Ass'n,*
111 Cal. App. 4th 773 (Cal. Ct. App. 2003) ............................................................... 10

*Lipcon v. Sprint Corp.,*
962 F. Supp. 1490 (S.D. Fla. 1997) ....................................................................... 10

*Lopez v. Washington Mutual Bank, FA,*
302 F.3d 900 (9th Cir. 2002) ............................................................................. 11

*Michalowski v. Flagstar Bank, FSB,*
2002 WL 113905 (N.D. Ill. Jan. 25, 2002) ............................................................... 10

*Morse v. Mutual Federal Sav. & Loan Ass'n of Whitman,*
536 F. Supp. 1271 (D. Mass. 1982) ....................................................................... 10

*National State Bank, Elizabeth, N.J. v. Long,*
630 F.2d 981 (3d Cir. 1980) ............................................................................. 11

*Palmer v. City of E. Brewton,*
2010 WL 231513 (S.D. Ala. Jan. 14, 2010) ............................................................... 3

*Price v. Time, Inc.,*
416 F.3d 1327 (11th Cir. 2005) ........................................................................... 5

*Village of Oakwood v. State Bank and Trust Co.,*
539 F.3d 373 (6th Cir. 2008) ........................................................................... 4, 5

*Waddell v. Holiday Isle, LLC,*
2009 WL 4898356 (S.D. Ala. Dec. 10, 2009) ............................................................... 3

*Weissman v. National Ass'n of Sec. Dealers, Inc.,*
500 F.3d 1293 (11th Cir. 2007) ........................................................................... 3

*Wolpin v. Philip Morris, Inc.,*
974 F. Supp. 1465 (S.D. Fla. 1997) ....................................................................... 9

*Wyeth v. Levine,*
129 S.Ct. 1187 (2009) ................................................................................... 6

**Statutes**

12 C.F.R. § 557.11 ....................................................................................... 7

12 C.F.R. § 557.11(b) ................................................................................... 6

12 C.F.R. § 557.12 ....................................................................................... 7

12 C.F.R. § 557.13 ....................................................................................... 7

12 U.S.C. § 1461, *et seq.* ............................................................................. 1

12 U.S.C. § 1821(d)(13)(D) ............................................................................... 4

**TABLE OF AUTHORITIES**
**(continued)**

Page

12 U.S.C. § 1821(d)(6)(A)(i) ........................................................................................ 4

**Other Authorities**

OTS Interp. Letter No. P-96-14,
   1996 WL 767462 (Dec. 24, 1996) ........................................................................ 11

**Treatises**

1 *Newberg on Class Actions*,
   § 3:19 (4th ed. 2002) .............................................................................................. 15

3 *Newberg on Class Actions*,
   § 7.47 (4th ed. 2002) .............................................................................................. 15

Manual for Complex Litigation, Fourth
   § 21.36 (Federal Judicial Center 2004) .................................................................. 15

Martin Lipton and Erica H. Steinberger,
   Takeovers and Freezeouts, vol. 1A, ch. 11, § 11.01[7][a] (2009) ......................... 2

## <u>INTRODUCTION</u>

Chase's supplemental motion to dismiss [DE 222] overlooks the basis for its liability for wrongful overdraft fee practices, as alleged in paragraphs 33-34 of the *Luquetta* complaint: Chase assumed the liabilities of Washington Mutual in a contract and Chase held plaintiff Luquetta's deposits during the relevant period of August 2009.[1] Chase fails to respond to, or even mention, these allegations. And Chase ignores the fact that the exhaustion procedure in Financial Institutions Reform Recovery and Enforcement Act of 1989, Pub. L. No. 101-73 ("FIRREA") does not apply where, as here, the successor bank has expressly assumed the failed bank's liabilities pursuant to contract and the plaintiff has asserted claims for relief against the successor bank only. As a result, the FIRREA argument fails.

The argument that the Home Owners Loan Act ("HOLA"), 12 U.S.C. § 1461, *et seq.* preempts the claims against Chase based on Washington Mutual's misconduct similarly lacks merit. As many courts – and the OTS itself – have concluded, neither HOLA nor its enforcement regulations preempt claims asserted under state laws of general application. Such laws do not impose specific duties on savings and loan associations and, consequently, affect such institutions no more than incidentally.

Chase's standing argument also fails, as plaintiff Luquetta was injured by the practice specifically alleged in her complaint: the posting of her transactions in non-chronological order. Should the Court nevertheless determine that Ms. Luquetta somehow lacks standing to recover for the injuries she has alleged, the proper course is to permit her substitution with a new class representative, not to dismiss the complaint. Accordingly, the motion should be denied.

---

[1] We refer to this action and the operative complaint consistent with the terminology used in plaintiffs' memorandum in opposition to the omnibus motion, namely, *Luquetta*, FAC.

## ARGUMENT

I.     **The Terms of Chase's Assumption Agreement Dictate Chase Is Liable for Washington Mutual's Overdraft Fee Misconduct**

Chase's opposition discusses various federal statutes, but completely ignores the basis set forth in the complaint for its liability for the damages caused by Washington Mutual's wrongful overdraft fee practices. Chase's liability results from its own contract and cannot be disclaimed now. "Pursuant to its acquisition agreement with Washington Mutual, Chase assumed the liabilities of Washington Mutual to its depositors. Therefore, Chase is liable for harm caused by the practices described herein, and is obligated by law to compensate Plaintiff and class members who were injured by Washington Mutual's overdraft fee practices." *Luquetta*, FAC ¶ 34.

The Eleventh Circuit has directed courts to "hold the buying corporation liable for the seller's debts if . . . the buyer expressly or impliedly agreed to assume such debts." *Bud Antle, Inc. v. Eastern Foods, Inc*., 758 F.2d 1451, 1456 (11th Cir. 1985). Such an agreement, as here, "may be evidenced from the written purchase agreement itself[.]" *Brown v. Brown & Williamson Tobacco Corp*., 26 F. Supp. 2d 74, 77 (D.D.C. 1998); *see Arriaga v. Florida Pac. Farms, L.L.C*., 305 F.3d 1228, 1248 (11th Cir. 2002) (the "intent of the parties" to a contract, reflected in its terms, is the "end-all of every problem of contractual interpretation.").

As alleged in the complaint, Chase is liable for the unlawful damages caused by Washington Mutual under the terms of the acquisition agreement. *Luquetta*, FAC ¶ 34. Chase's assumption of Washington Mutual's liabilities is recognized in a leading treatise on the law of mergers and acquisitions: when a bank is declared insolvent, one possible arrangement is "for another bank to purchase all or part of the failed bank and to *assume its liabilities* . . . as occurred in the majority of the 2008 bank failures, *including Washington Mutual Bank*." MARTIN LIPTON AND ERICA H. STEINBERGER, TAKEOVERS AND FREEZEOUTS, vol. 1A, ch. 11, § 11.01[7][a] (2009)

(emphasis added).

Chase does not dispute the complaint's allegation that it expressly assumed the liabilities of Washington Mutual in the acquisition agreement.[2]  Even if there were such a dispute, attempting to resolve it at this juncture would not be appropriate.  On this motion the Court is obligated to accept the allegations in the complaint as true, drawing all inferences in plaintiff's favor.  *Weissman v. National Ass'n of Sec. Dealers, Inc.*, 500 F.3d 1293, 1295 (11th Cir. 2007).  The bottom line is that Chase cannot avoid the legal effect of contractual provisions to which it agreed.

## II.     FIRREA Does Not Apply Because Plaintiff Is Suing Chase, Not Washington Mutual, and Chase Assumed the Liabilities

Chase's argument based on FIRREA lacks merit.  FIRREA provides that a party seeking to vindicate its rights against a bank in federal receivership must exhaust its remedies with the Federal Deposit Insurance Corporation ("FDIC") before it can pursue a claim in court.  The fatal flaw in Chase's argument is that plaintiff has not sued the bank in receivership, Washington Mutual.  Instead, plaintiff has sued Chase, which assumed Washington Mutual's liabilities pursuant to contract.[3]  Only Chase is listed on the caption.  Only Chase is mentioned in the claims for relief.  FIRREA has nothing to say about claims against a successor bank like Chase.

---

[2] In its reply, Chase is not permitted to raise any arguments with respect to the complaint's allegations regarding its assumption of Washington Mutual's liabilities in the acquisition agreement.  Despite the clear allegations, Chase failed to respond to them in its supplemental motion to dismiss.  *See, e.g.*, *Palmer v. City of E. Brewton*, 2010 WL 231513, at *7 (S.D. Ala. Jan. 14, 2010) (noting it is "improper to assert new arguments in a reply brief" and declining to consider a new argument raised in a reply brief in support of a motion to dismiss where the import of the complaint's allegations was not "hidden"); *Waddell v. Holiday Isle, LLC*, 2009 WL 4898356, at *3 & n.5 (S.D. Ala. Dec. 10, 2009) ("Whether the omission is intentional or merely careless, courts do not address arguments untimely raised in a reply brief.") (citing cases).

[3] For the sake of clarity, Chase's FIRREA argument relates solely to the claims based on Washington Mutual's unlawful overdraft fee practices.  Chase does not suggest, nor could it, that FIRREA applies to the claims based on its own unlawful overdraft fee practices.

By its terms, FIRREA does not apply to this situation.

Chase is right that FIRREA establishes a procedure for the resolution of "any claim against a depository institution for which the Corporation is receiver." 12 U.S.C. § 1821(d)(6)(A)(i). Chase is also right that the statute divests courts of jurisdiction over "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver." *Id*. § 1821(d)(13)(D).

Chase is wrong, however, in claiming these provisions affect the claims against Chase. It is undisputed that Chase is not a failed depository institution. Nevertheless, the terms of the statute apply only to claims against such institutions. Therefore, the statute has no effect on these claims.

Chase contends that it "makes no difference" that plaintiff has sued Chase rather than Washington Mutual. Chase Suppl. Mot. at 6. In fact, it makes all the difference because Chase expressly assumed the liabilities of Washington Mutual and FIRREA does not, and cannot, abrogate a party's contractual obligations. Chase's sole citation in support of its novel argument, *Village of Oakwood v. State Bank and Trust Co*., 539 F.3d 373 (6th Cir. 2008), is unhelpful because the successor bank in *Village of Oakwood*, unlike Chase, did not contractually assume its predecessor's liabilities for conduct in violation of law. The claims of the uninsured depositors in *Village of Oakwood* were "all . . . directly related to acts or omissions of the FDIC" – the FDIC was alleged to have breached its fiduciary duty to the depositors and to have overlooked almost $60 million worth of deposits with the failed bank. *Id*. at 376, 386. Thus, the successor bank had filed a third-party complaint against the FDIC seeking indemnification. *Id*.

at 377.  Plaintiff does not allege any breach of duty on the part of the FDIC.  The holding of *Village of Oakwood* was reached to effectuate the "goal of FIRREA" of "providing funds from public and private sources to deal expeditiously with faltering and failed savings and loans[.]" *Id.* at 386 (internal quotation marks and citation omitted).  Plaintiff's claims have no bearing on this statutory objective.  Plaintiff does not lay claim to the assets of a failed bank in federal receivership, and Chase is hardly a "faltering and failed" institution.

At common law, an acquiring company can be sued for the liabilities of the acquired company if "there is an express or implied agreement to assume the other company's debts and obligations."  *Clanton v. Inter.Net Global, L.L.C.*, 435 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted).  Chase's interpretation of FIRREA is in derogation of this common law rule and, consequently, is disfavored.  *See, e.g.*, *Branch v. F.D.I.C.*, 825 F. Supp. 384, 404-05 (D. Mass. 1993) (holding that FIRREA "does not alter the settled rule that shareholders of failed national banks may assert derivative claims," because "where a common-law principle is well established, . . . the courts may take it as a given that Congress has legislated with an expectation that the principle will apply except 'when a statutory purpose to the contrary is evident.'") (quoting *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991)); *see also Birdville Indep. Sch. Dist. v. Hurst Assoc.*, 806 F. Supp. 122, 129 (N.D. Tex. 1992) (the "basic priority rule" for tax liens prevailed over the argument that, under FIRREA, a plaintiff could not foreclose on a property ahead of the federal agency acting as receiver); *see generally Price v. Time, Inc.*, 416 F.3d 1327, 1342-43 (11th Cir. 2005) ("Where there is any doubt about the meaning of statutes in derogation of the common law," courts should "interpret the statute to make the least, rather than the most, change in the common law.").

The Court, however, need not even consider this canon.  The terms of FIRREA do not

extend to a situation where a successor bank contractually assumed the liabilities of its predecessor and only the successor is sued.

### III.      The Claims Against Chase Are Not Preempted by HOLA

Chase next argues that plaintiff's claims are preempted by HOLA.  Chase's HOLA preemption argument fails for the same reasons its National Bank Act preemption argument, addressed in plaintiffs' memorandum in opposition to the omnibus motion, fails.  Plaintiffs' memorandum at 13 – 33.

Chase focuses on the Office of Thrift Supervision ("OTS") regulation which states that the OTS "occupies the entire field of federal savings associations' deposit-related regulations." Mot. at 8 (citing 12 C.F.R. § 557.11(b)).  What Chase neglects to mention is that, if the "field which Congress is said to have pre-empted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be clear and manifest." *English v. General Elec. Co*., 496 U.S. 72, 79 (1990) (internal quotation marks and citations omitted); *see also Wyeth v. Levine*, 129 S.Ct. 1187, 1194-95 (2009) (holding that "[i]n all pre-emption cases . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (internal quotation marks and citations omitted).  Laws designed to prevent businesses from taking advantage of consumers rest within the states' historic police powers.  *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146 (1963).

Chase fails to demonstrate Congressional intent to preempt the general state contract, tort, and consumer protection laws in the complaint.  There is no such intent.  The Supreme Court recently made clear that the banking system is a "mixed state/federal regime[]" that reflects "Congress's decision not to pre-empt substantive state law."  *Cuomo v. Clearing House Ass'n, L.L.C.*, -- U.S. --, 129 S.Ct. 2710, 2718 (2009).

-6-

> [S]tates retain some power to regulate national banks in areas such as *contracts*, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and *tort law*. Application of these laws to national banks and their implementation by state authorities typically does *not* affect the content or extent of the Federally-authorized business of banking[.]

*Id.* at 2718-19 (citations omitted) (emphasis added).

The OTS regulations weigh strongly against preemption of the claims against Chase. The key regulation provides that the OTS can preempt state law when such preemption is necessary to "facilitate the safe and sound operations of federal savings associations" or to "[e]nable federal savings associations to operate according to the best thrift institutions practices in the United States." 12 C.F.R. § 557.11.

Plaintiff's complaint alleges that Chase has failed to comply with the federal government's own guidelines for safe and sound overdraft fee practices. *See Luquetta*, FAC ¶¶ 79-81. For example, Chase does not inform consumers of their right to opt out of overdraft protection, or alert consumers before a debit transaction triggers a fee. *See id.* ¶¶ 77-78, 86. Given these allegations, dismissing the claims on preemption grounds would not facilitate sound operations or enable Chase to operate according to best practices. To the contrary, it would have the perverse effect of shielding *unsound* practices from scrutiny, under the guise of a regulation meant to deter such practices.

The OTS regulations include a list of types of state laws which are generally preempted because they "purport to impose requirements" upon the deposit-related activities of federal savings banks. 12 C.F.R. § 557.12. The regulations then provide a list of types of state laws which generally are *not* preempted. *See* 12 C.F.R. § 557.13.[4] The contract, tort, and consumer

---

[4] "**What state laws affecting deposits are not preempted?**   *(footnote continued on next page)*

protection laws in plaintiff's complaint against Chase fit in the latter category.  Plaintiff does not contend that these laws affirmatively require any overdraft fee practice in particular.  Instead, plaintiff and the class seek redress from past injuries sustained as a result of numerous overdraft fee practices that, taken together, violated generally applicable state laws.

Courts have long recognized that state laws of general application are not preempted by federal banking laws, including HOLA.  A prime example is *Binetti v. Washington Mutual Bank*, 446 F. Supp. 2d 217 (S.D.N.Y. 2006), where, the court held that HOLA did not preempt the plaintiff's breach of contract, unjust enrichment or consumer protection claims.  The court recognized that, while the OTS "occupies the entire field of lending regulation for federal savings associations," it does not preempt state contract, tort and other laws which "only incidentally" affect lending operations or which further a vital state interest.  *Id*. at 219.  The court held that the state laws of general application at issue were not directed at the defendant's lending operations and, as a result, could not affect the operations more than incidentally.  *See id.* at 219-21.  The court found it "persuasive that, in the absence of an analogous federal cause of action, the Bank would be completely insulated from liability for its breach if the Court were to find plaintiff's claim preempted."  *Id.* at 219.

---

(a)  The OTS has not preempted the following types of state law, to the extent that the law only incidentally affects your deposit-related activities or is otherwise consistent with the purposes of § 557.11:

> (1)  Contract and commercial law;

> (2)  Tort law; and

> (3)  Criminal law.

(b)  The OTS will not preempt any other state law if the OTS, upon review, finds that the law:

> (1)  Furthers a vital state interest; and

> (2)  Either only incidentally affects your deposit-related activities or is not otherwise contrary to the purposes expressed in § 557.11."

12 C.F.R. § 557.13.

Here, too, a finding of preemption would leave plaintiff and the proposed class without a remedy. Moreover, the state laws in question are not directed at Chase's operations, but apply to all businesses. These laws do not, and cannot, affect Chase's operations more than incidentally.

This conclusion is confirmed by *Gibson v. World Savings & Loan Association*, 103 Cal. App. 4th 1291 (Cal. Ct. App. 2002), where the defendant argued that HOLA preempted a state consumer protection claim grounded in allegations of an improper service fee. The court rejected the argument, explaining the plaintiffs sought to enforce "a general proscription of unfair business practices" that was "not designed to regulate lending" but was "part of the legal infrastructure that undergird[s] all contractual commercial transactions." *Id*. at 1303-04. The court reasoned that "the legal duty that is the predicate" of the state claim did not impose "a requirement or prohibition of the sort that federal law expressly preempts." *Id*. at 1301 (citing *Cipollone v. Liggett Group, Inc*. 505 U.S. 504, 524 (1992)); *accord*, *Wolpin v. Philip Morris, Inc*., 974 F. Supp. 1465, 1467 (S.D. Fla. 1997) (King, J.). The plaintiffs' claim was "predicated on the duties of a contracting party to comply with its contractual obligations" and "to refrain from unfair or deceptive business practices." *Gibson*, 103 Cal. App. 4th at 1301. "The plaintiffs' principal complaint concerns the violation of contractual duties," the court found. *Id*. at 1302. "A stated intent to preempt requirements or prohibitions imposed by state law does not reasonably extend to those voluntarily assumed in a contract." *Id*.

> Moreover, none of the predicate duties are directed toward federal savings associations. Instead, the duties on which the plaintiffs' claims are predicated govern, not simply the lending business, but anyone engaged in any business and anyone contracting with anyone else. On their face, they do not purport to regulate federal savings associations and are not specifically directed toward them. Nor is there any evidence that they were designed to regulate federal savings associations more than any other type of business, or that in practice they have a disproportionate impact on lending institutions. Any effect they have on the lending activities of a federal savings association is incidental rather than material.

*Id.*

The complaint against Chase, similarly, focuses on its violation of the contractual duty to act in good faith. This duty applies to all businesses. It does not conflict with HOLA. Indeed, nothing in any federal law preempts it.

Courts routinely find that HOLA does not preempt state laws that do not target banks specifically. *See*, *e.g.*, *Hussey-Head v. World Sav. and Loan Ass'n*, 111 Cal. App. 4th 773, 782 (Cal. Ct. App. 2003) (declining to find HOLA preemption of state laws that did "not purport to regulate federal savings associations and [were] not specifically directed toward them.") (citation omitted); *Michalowski v. Flagstar Bank, FSB*, 2002 WL 113905, at *5 (N.D. Ill. Jan. 25, 2002) (declining to find HOLA preemption because the plaintiffs alleged the defendant bank engaged in "tortious conduct" and "knowingly overcharged" fees, and the claims were not brought "under state laws that 'regulate lending'"); *Fenning v. Glenfed, Inc.*, 40 Cal. App. 4th 1285, 1299 (Cal. Ct. App. 1995) (declining to find HOLA preemption; "the state cannot dictate to the Bank how it can or cannot operate, but it can insist that, however the Bank chooses to operate, it do so free from fraud and other deceptive practices.").[5]

The OTS itself is on record that its HOLA regulations do not preempt state laws of general application. In a 1996 letter, the OTS advised a federally-charted bank that HOLA did

---

[5] *See also Lipcon v. Sprint Corp.*, 962 F. Supp. 1490, 1494 (S.D. Fla. 1997) (King, J.) (refusing to dismiss claims on preemption grounds where "plaintiffs seek to hold defendant to the same standards as they would any other business"); *Morse v. Mutual Federal Sav. & Loan Ass'n of Whitman*, 536 F. Supp. 1271, 1280-81 (D. Mass. 1982) (holding that federal savings and loan associations are subject to a general Massachusetts statute prohibiting unfair business conduct; they "should comply with the business usages and ethics required of others engaged in similar businesses within the state unless such usages and ethics actually conflict or interfere with federal purposes or unless Congress or the federal regulatory body unmistakably indicates otherwise"); *Cuomo*, 129 S.Ct. at 2718 (finding that the application of general state contract, tort, and other laws to nationally regulated banks "typically does not affect the content or extent of the Federally-authorized business of banking").

not preempt an Indiana consumer protection law that was "not directly aimed at lenders," but instead applied to all businesses.  OTS Interp. Letter No. P-96-14, 1996 WL 767462 (Dec. 24, 1996).  The letter explained that the OTS "does not intend to preempt state laws that establish the basic norms that undergird commercial transactions," *i.e.*, the type of laws under which plaintiff sues Chase.  *Id.*

> [T]he impact on lending appears to be only incidental to the primary purpose of the statute – the regulation of the ethical practices of all businesses engaged in commerce in Indiana.  There is no indication that the law is aimed at any state objective in conflict with the safe and sound regulation of federal savings associations, the best practices of thrift institutions in the United States, or any other federal objective[.]

*Id.*

The decisions cited by Chase are inapposite.  Suppl. Mot. at 8 – 10.  *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005), did not involve any federal banking statute, but rather the Federal Insecticide, Fungicide, and Rodenticide Act.  *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 556 (9th Cir. 2002), did not involve state laws of general application, but rather a municipal ordinance prohibiting federally-chartered banks from charging ATM fees to non-depositors in San Francisco.   The state law held preempted in *Lopez v. Washington Mutual Bank, FA*, 302 F.3d 900, 906-07 (9th Cir. 2002), was a law directed specifically at banks that exempted Social Security benefits in "deposit accounts" from enforcement actions.  Likewise, the state law held preempted by the Home Mortgage Disclosure Act in *National State Bank, Elizabeth, N.J. v. Long*, 630 F.2d 981, 982-83, 986 (3d Cir. 1980), imposed mortgage disclosure requirements on federally-charted banks.

Chase's reliance on *Guadagno v. E\*Trade Bank*, 592 F. Supp. 2d 1263 (C.D. Cal. 2008), another inapposite decision, shows why its preemption argument fails.  Suppl. Mot. at 9.  The plaintiff there sought an injunction that would have prohibited the defendant bank from

-11-

withdrawing funds from a customer's account, waiting three or more days, and disbursing the funds to the customer's creditor without applying the interest accrued during the intervening time to the account. *Id*. at 1266, 1273-74. Ms. Luquetta neither seeks an injunction nor contends that the laws in question impose any specific requirement. Rather, on behalf of herself and a class of similarly situated persons, she seeks redress for past injuries under laws of general application. Her claims under these laws are not preempted.

### IV.    Chase's Standing Argument Fails

#### A.    Plaintiff Luquetta Was Damaged When Her 8/17/09 Bill Pay Transaction Was Posted Ahead of Her 8/15/09 and 8/16/09 Debit Card Transactions

As Chase itself observes, "Luquetta may argue that if her 'automatic bill pay' had been posted after her debit card transactions on August 17, 2009, she would have incurred fewer overdraft fees." In fact, that is what Ms. Luquetta has been arguing all along. She expressly alleges that:

> Chase . . . chose to process the automatic bill payment before processing six of the seven charges made between August 15, 2009 and August 17, 2009. Through this re-sequencing of transactions, Plaintiff Luquetta was charged seven overdraft fees totaling $231 on August 18, 2009. Plaintiff Luquetta's account went from what should have been a positive $755.71 to a negative $1,233.29.
>
> *   *   *
>
> [E]ven if it was proper for Chase to deduct the $1,725.00 on August 17th, that transaction should not have been processed until all of Plaintiff Luquetta's transactions from August 15th and August 16th were processed. As the table above reflects, Plaintiff Luquetta should have had a balance of $755.71 and therefore should only, at most, been assessed one overdraft charge.

*Luquetta*, FAC ¶¶ 93, 96.[6]

---

[6] *See also Luquetta*, FAC ¶ 58 ("Chase developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order for

Although the tables presented in paragraphs 94 and 95 of the *Luquetta* complaint identify the seven listed debit card transactions as having been authorized "between [Friday] 8/15/2009 and [Monday] 8/17/2009," plaintiff Luquetta has subsequently been able to determine that each of these transactions occurred between 8/13/2009 and 8/16/2009 – *i.e.*, *prior* to the 8/17/2009 date that funds were supposed to be withdrawn from her account for her bill pay transaction.  *See* Suppl. Mot. at 14 n.4 (explaining that "[t]he Online Agreement specifies that the day on which funds would be withdrawn from Luquetta's account for a "Bill Pay Scheduled for 8/22/2009' would be August 17.").  Accordingly, pursuant to Rule 15, Ms. Luquetta respectfully requests leave to amend paragraphs 94 and 95 of her complaint to read as follows:

> 94.    The following table illustrates the transactions explained above as Chase *processed* them:

| | | Debits (-) | Running Balance |
|---|---|---|---|
| | **Beginning Balance on August 14, 2009** | | **$1,180.03** |
| **Date Posted** | **Debit Description** | | |
| 8/17/2009 | Debit made on 8/15/2009 or 8/16/2009 | $28.52 | $1,151.51 |
| 8/17/2009 | Bill pay scheduled for 8/22/2009 | $1,725.00 | ($573.49) |
| 8/17/2009 | Debit made on 8/15/2009 or 8/16/2009 | $107.50 | ($680.99) |
| 8/17/2009 | Debit made on 8/15/2009 | $87.46 | ($768.45) |
| 8/17/2009 | Debit made on 8/15/2009 or 8/16/2009 | $32.92 | ($801.37) |
| 8/17/2009 | Debit made on 8/15/2009 | $100.00 | ($901.37) |
| 8/17/2009 | Debit made between 8/13/2009 and 8/16/2009 | $10.92 | ($912.29) |
| 8/17/2009 | Debit made between 8/13/2009 and 8/16/2009 | $90.00 | ($1,002.29) |
| | | | |
| | | | **Total Fees: $231.00[1]** |

---

the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers."), ¶ 62 ("Chase enforces an unconscionable policy whereby charges incurred are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.").

95.     The following table illustrates the transactions explained above as Chase *should have* processed them:

| | | Debits (-) | **Running Balance** |
|---|---|---|---|
| | **Beginning Balance on August 14, 2009** | | **$1,180.03** |
| **Date Posted** | **Debit Description** | | |
| 8/17/2009 | Debit made between 8/13/2009 and 8/16/2009 | $90.00 | $1,090.03 |
| 8/17/2009 | Debit made between 8/13/2009 and 8/16/2009 | $10.92 | $1,079.11 |
| 8/17/2009 | Debit made on 8/15/2009 | $100.00 | $979.11 |
| 8/17/2009 | Debit made on 8/15/2009 | $87.46 | $891.65 |
| 8/17/2009 | Debit made on 8/15/2009 or 8/16/2009 | $107.50 | $784.15 |
| 8/17/2009 | Debit made on 8/15/2009 or 8/16/2009 | $32.92 | $751.23 |
| 8/17/2009 | Debit made on 8/15/2009 or 8/16/2009 | $28.52 | $722.71 |
| 8/17/2009 | Bill pay scheduled for 8/22/2009 | $1,725.00 | ($1,002.29) |
| | | | |
| | | **Total Fees: $33.00**[2] | |

[2] Note: Plaintiff Luquetta's August statement reflects a $33 overdraft refund which "posted" on 8/17/2009.  However that refund was requested by the Plaintiff on 8/19/2009 and was later back-posted by Chase, making it irrelevant to the sequencing above.

As the foregoing chronology makes clear, plaintiff Luquetta was charged *seven* overdraft fees, instead of only *one* overdraft fee, because Washington Mutual posted her 8/17/2009 bill pay transaction *ahead* of her 8/15/2009 and 8/16/2009 debit card transactions, *i.e.*, out of chronological order.  Because plaintiff Luquetta was harmed in the manner and by the practices specifically alleged in her complaint, her allegations are sufficient to establish standing.

> **B.     Should the Court Determine That Plaintiff Luquetta Lacks Standing, Leave to Substitute a New Class Representative Should Be Granted**

Should the Court determine that plaintiff Luquetta lacks standing, the proper course of action is not to dismiss the complaint, but rather to grant leave to substitute a new class representative for Ms. Luquetta.  Indeed, a leading treatise, *Newberg on Class Actions,* notes that if a class representative is found to lack standing to represent a proposed class, courts should

permit additional class representatives to be added in order to cure the lack of standing. 3 *Newberg on Class Actions*, § 7.47 (4th ed. 2002); *see also* 1 *Newberg on Class Actions,* § 3:19 (4th ed. 2002) ("an alternative representative may be appointed for the issues on which the plaintiff lacks standing.").  As the authoritative *Manual for Complex Litigation, Fourth* (Federal Judicial Center 2004) states, "courts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative who meets the Rule 23(a) requirements."  *Id.* § 21.36.

On this issue, *Birmingham Steel Corp. v. Tennessee Valley Authority*, 353 F.3d 1331 (11th Cir. 2003), is particularly instructive.  There, the Eleventh Circuit reversed and remanded the district court's decertification of a class of plaintiffs where the named plaintiff had lost standing by filing for bankruptcy because the class definition specifically excluded entities that had filed for bankruptcy.  *Id.*  The court found that "while a loss of standing might justify dismissal of the named plaintiff as a representative, it did not necessarily call for the simultaneous dismissal of the class action.  Rather . . . under the circumstances before it, the district court erred in dismissing the case without first giving an opportunity for intervention of a newly named plaintiff who would have standing to pursue."  *Id.* at 1336.

Suitable substitute class representatives whose transactions do not present the issues raised by Chase in its motion to dismiss have already contacted counsel for plaintiffs. Accordingly, should the Court find that Ms. Luquetta lacks standing, the proper approach is to permit her substitution by a member of the proposed class.

## CONCLUSION

For the foregoing reasons, the Court should deny Chase's supplemental motion to dismiss the *Luquetta* complaint.

Dated:     February 5, 2010

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@abbrclaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@abbrclaw.com
ALTERS BOLDT BROWN
  RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Lead Counsel for Plaintiff*

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
GOLUMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Barry R. Himmelstein
Barry R. Himmelstein, Esquire
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esquire
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webbllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February, 2009, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record or pro se parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Florida Bar No. 561861
ALTERS BOLDT BROWN
RASH & CULMO, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@abbrclaw.com

-18-