# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Lopez, et al  v. J.P. Morgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-CV-23127-JLK

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO JPMORGAN CHASE BANK, N.A.'S SUPPLEMENTAL MOTION TO DISMISS THE *LOPEZ* COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.     Chase's Arguments Under FIRREA and HOLA Concerning Washington Mutual's Unlawful Conduct Are Without Merit.................................................................................. 1

II.    The *Lopez* Complaint States Claims Against Chase in Its Own Right .............................. 2

     A.    The Typographical Error Regarding Mr. Reed's Account Does Not Present Grounds to Dismiss the Complaint. ............................................................... 4

     B.    Mr. Stone Effectively Pled His Claims for Relief ..................................................... 6

     C.    Ms. McDaniel Effectively Pled Her Claims for Relief............................................. 8

     D.    Ms. Lopez Effectively Pled Her Claims for Relief................................................... 9

III.   Chase's Arguments for Dismissal of the Statutory Claims Are Without Merit ................ 9

     A.    Plaintiffs Have Standing to Plead State Unfair Trade Practices Claims.................... 9

     B.    Even if the Court Were to Find That Any Plaintiffs Lack Standing to Assert the Consumer Protection Claims, the Court Should Allow Time for Other Plaintiffs to Be Located and Added ........................................................ 11

CONCLUSION.......................................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## Cases

*Ashcroft v. Iqbal*
  129 S. Ct. 1937 (2009) ............................................................................... 4

*Birmingham Steel Corp. v. Tenn. Valley Authority*
  353 F.3d 1331 (11th Cir. 2003) .............................................................. 11

*Foman v. Davis*
  371 U.S. 178 (1962) ................................................................................... 9

*Hernandez v. Meadows*
  209 F.R.D. 665 (S.D. Fla. 2002) ...................................................... 10, 11

*In re Pharm. Indus. Average Wholesale Price Litig.*
  252 F.R.D. 83 (D. Mass. 2008) ............................................................... 10

*Marsh v. Butler County, Ala.*
  268 F.3d 1014 (11th Cir. 2001) ................................................................ 2

## Other Authorities

1 *Newberg on Class Actions* § 3:19 (4th ed. 2002) .................................. 11

1 *Newberg on Class Actions* § 3:29 (4th ed. 2002) .................................. 11

3 *Newberg on Class Actions* § 7.47 (4th ed. 2002) .................................. 11

*Manual for Complex Litigation* § 22.634 (4th ed. 2004) ........................ 10

## Rules

Federal Rules of Civil Procedure
  Rule 8(a)(2) ............................................................................................... 4

## INTRODUCTION

Chase's supplemental motion to dismiss the *Lopez* complaint should be denied.[1] [DE 225.]  As discussed in plaintiffs' memorandum in opposition to Chase's supplemental motion to dismiss the *Luquetta* complaint, since Chase contractually assumed the liabilities of Washington Mutual, FIRREA has no application because plaintiffs have sued Chase, not Washington Mutual. Nor does HOLA preempt claims, such as these, which are asserted under state laws of general application.  Furthermore, contrary to what Chase would have this Court believe, plaintiffs all suffered injury and have standing to assert their claims.  The complaint clearly alleges how and why plaintiffs were injured as a consequence of Chase's and/or Washington Mutual's wrongful overdraft fee practices.  Chase's attempt to seek dismissal based on a narrow reading of the allegations of the complaint should be rejected.

## ARGUMENT

### I.      CHASE'S ARGUMENTS UNDER FIRREA AND HOLA CONCERNING WASHINGTON MUTUAL'S UNLAWFUL CONDUCT ARE WITHOUT MERIT

Chase's motion incorporates by reference the FIRREA and HOLA arguments it advances in its supplemental motion to dismiss the *Luquetta* complaint.  Those arguments fail for the reasons explained in plaintiffs' memorandum in opposition to that motion. Plaintiffs' memorandum, pp. 13 – 33.  For the sake of brevity, we incorporate by reference the argument directed to this issue in plaintiff's memorandum in opposition to Chase's supplemental motion to dismiss the *Luquetta* complaint, being filed contemporaneously herewith.

---

[1] We refer to this action as *Lopez* and the related action against Chase as *Luquetta*, consistent with the terminology used in Chase's supplemental motions and the defendants' omnibus motion.

## II.     THE *LOPEZ* COMPLAINT STATES CLAIMS AGAINST CHASE IN ITS OWN RIGHT

Contrary to Chase's claim that the *Lopez* complaint should be dismissed for the reasons set forth in the omnibus motion, plaintiffs have effectively pled several claims for relief against Chase.   Therefore, plaintiffs incorporate by reference the arguments set forth in their memorandum in opposition to the omnibus motion, being filed contemporaneously herewith. Plaintiffs' memorandum, pp. 34 – 98.

Chase's supplemental grounds for dismissal are based on a narrow reading of the complaint and should be rejected.  The Eleventh Circuit recognizes that a motion to dismiss must be decided in view of all the facts pleaded, not a subset.  *See Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1055 (11th Cir. 2001) (court must not consider any portion of the complaint "in isolation," but must "accept all alleged facts as true and then draw from those facts as many inferences favorable to the plaintiff as possible.").  Contrary to this principle, Chase isolates *exemplars* of transactions inserted into the complaint for purposes of *illustrating* the underpinning of plaintiffs' claims, and treats those exemplars as though they are the sole operative factual allegations.  The totality of plaintiffs' allegations in their 176 page complaint must be read together with the exemplar references, and together they more than sufficiently state claims for relief. [2]

Chase claims that "[t]he Complaint identifies specific transactions on Plaintiffs' Chase accounts that form the basis for each individual plaintiff's alleged claims."  Suppl. Mot. at 3.[3]

_____

[2] We refer to the operative complaint in this action consistent with the terminology used in plaintiffs' memorandum in opposition to the omnibus motion, namely, *Lopez*, C.

[3] Chase attempts to give this misstatement veracity by sheer repetition.  *See, e.g.*, Suppl. Mot. at 5 ("The transactions identified as the basis of McDaniel's claim against Chase are, according to ¶ 120 of the Complaint, as follows."); Suppl. Mot. at 6 ("The transactions identified as the basis of Reed's claim against Chase are, according to ¶ 114 of the Complaint, as follows."); Suppl. Mot.

Not true.  As the complaint makes clear, the transactions described in the tables upon which Chase bases its argument are merely examples of some of the abusive conduct about which plaintiffs complain.  *See*, *e.g.*, *Lopez*, C ¶¶ 95-96, 102-103, 108-109 and 114-115 (explicitly stating, "For example," then providing a table to illustrate one specific instance of Chase's misconduct).  The examples were not even necessary for the pleading, but were provided to illustrate the conduct about which plaintiffs complain. The allegations in the complaint stand alone without the tables, as plaintiffs clearly and fully plead the facts of their case.

The examples provided in the complaint are not intended to illustrate *all* of Chase's wrongdoing at issue, including its intentional cloaking of accurate balance information, its failure to notify customers of overdrafts or advise customers of their right to opt out of overdraft protection, and its unconscionable provisions and policies.  Focusing solely on those tables, however, Chase seeks to dismiss these individuals' claims because their complaint offered illustrative examples which, in some cases, were not effectively presented (McDaniel) and, in other cases, included a mere typographical error (Reed).  As the complaint makes clear, this case is not about four isolated reordering events.

Moreover, as discussed in greater detail in plaintiffs' memorandum in opposition to the omnibus motion, the case is hardly limited to Chase's unlawful practice of reordering debit card transactions from highest to lowest.  Rather, plaintiffs allege that despite its technological capabilities and actual knowledge, Chase fails to provide notice to its customers that particular debit card transactions will cause overdrafts and, hence, result in overdraft fees.  *Lopez*, C ¶ 79.

at 7 ("The transactions identified as the basis of Stone's claim against Chase are, according to ¶ 108 of the Complaint, as follows."); Suppl. Mot. at 9 ("The transactions identified as the basis of Lopez's claim against Chase are, according to ¶ 95 of the Complaint, and consist of 7 debit card transactions.").  Chase's selective citation to four isolated paragraphs does not accurately reflect the wrongdoing alleged throughout the entire complaint.

Chase does not give customers the option to decline to complete the debit transactions or provide other forms of payment because Chase seeks to maximize the amount of fees generated through overdrafts. *Id.* ¶ 78. In addition, as part of its inequitable motive to generate profits through the imposition of unconscionable fees, Chase fails to adequately disclose to its customers that they can opt out of overdraft "protection" altogether, thereby avoiding any overdrafts whatsoever. *Id.* ¶¶ 8, 80.

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court has clarified that Rule 8 "does not require detailed factual allegations" of the type that Chase seems to seek here. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks and citation omitted). The allegations here are more than sufficient to state claims that Chase acted unlawfully.

### A.   The Typographical Error Regarding Mr. Reed's Account Does Not Present Grounds to Dismiss the Complaint

First, with respect to Charles Reed, Jr., Chase argues for dismissal based on nothing more than a typographical error. An exemplar table in the complaint misstates the posting date of one transaction by one day – it states that a $50 check was posted on 9/01/09, when in fact it was posted on 9/02/09. *Lopez*, C ¶ 117. With or without this error, this table supports plaintiffs' claim that "if Chase had posted the transactions in chronological order, Mr. Reed would have incurred only one overdraft fee instead of three." *Lopez*, C ¶ 117. In an effort to obscure this fact, Chase fails to cite to any date of any transaction in any of the tables it recreated, because showing such dates would reveal Chase's misconduct. *See* Suppl. Mot. at 5, 6, 8 (recreating six tables, but showing transaction dates on none of them).

-4-

More specifically, and as clearly shown by Exhibit A to Chase's supplemental motion, Mr. Reed's check number 208 for $50 was posted by Chase on September 2, 2009, the same day the bank posted three debit card transactions in largest to smallest order:

**Balance Sheet per JP Morgan Chase Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 9/01/09: | | | $ 81.77 |
| Date Posted | Debit Description | | | |
| 9/02/09 | Check No. 208 | 50.00 | | 31.77 |
| 9/02/09 | ATM Withdrawal 09/01 | 40.00 | | - 8.23 |
| 9/02/09 | Card Purchase 09/01 Walgreen | 9.05 | | - 17.28 |
| 9/02/09 | Card Purchase 09/01 Walgreen | 5.23 | | - 22.51 |
| 9/03/09 | Insufficient Funds Fee | | -105.00 | |
| | | Total Fees: | $105.00 | |

*Lopez*, C ¶ 114.

As plaintiffs assert, if Chase had posted the transactions in another order, Mr. Reed would have incurred fewer overdraft fees. For example, if the transactions were processed chronologically, Mr. Reed would have incurred only one overdraft fee instead of three:

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 7/15/09: | | | $ 81.77 |
| Date of Transaction | Debit Description | | | |
| 9/01/09 | ATM Withdrawal 09/01 | 40.00 | | 41.77 |
| 9/01/09 | Card Purchase 09/01 Walgreen | 9.05 | | 32.72 |
| 9/01/09 | Card Purchase 09/01 Walgreen | 5.23 | | 27.49 |
| 9/01/09 [sic] | Check No. 208 | 50.00 | | - 22.51 |
| 9/03/09 | Insufficient Funds Fee | | -35.00 | |
| | | Total Fees: | $ 35.00 | |

*Lopez*, C ¶ 117. Plaintiffs concede this table contains a typographical error as it states that the $50 check was posted on 9/01/09 when, in fact, it was posted on 9/02/09. *See* Suppl. Mot. at Ex. A (showing posting date).

As pointed out in the complaint and reiterated in Chase's supplemental motion, Chase's contract provides that "[i]tems will be posted to your Account in highest to lowest dollar amount each business day (Monday through Friday, federal holidays not included)." *Lopez*, C ¶ 47; Suppl. Mot. at 2. This table, however, demonstrates that Chase breached the plain language of its own contract, as it failed to post the items by business day, but instead batched all transactions which occurred over two business days – on 9/1/09 (a Tuesday) and on 9/2/09 (a Wednesday) – and then reordered those transactions across days so as to maximize the amount of overdraft fees it assessed. This confirms plaintiffs' allegation that "Chase reorders transactions from different days for its own benefit, to consumer detriment." *Lopez*, C ¶ 64.

This table further confirms plaintiffs' allegation that the fees charged are egregiously disproportionate to the transaction – for example, it shows a $35 fee charged on a $5.23 overdraft and a $35 fee on a $9.05 overdraft. This illustrates plaintiffs' allegation that the imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $32 charge on an overdraft of less than $32) is unconscionable. *Lopez*, C ¶ 143.

In sum, even with the typographical error corrected, this table provides an effective example of some of the abusive conduct which forms the basis of plaintiffs' complaint. Chase's contention that the inclusion of a non-debit card transaction in the example is somehow improper rests upon Chase's unduly narrow – and incorrect – reading of the complaint, as discussed above. Mr. Reed's complaint should not be dismissed on the basis of Chase's selective reading of the complaint.

### B. Mr. Stone Effectively Pled His Claims for Relief

John C. Stone alleges that Chase charged him multiple overdraft fees. *Lopez*, C ¶ 108. For example, Mr. Stone was charged three overdraft fees on July 7, 2009, in the amount of $32 each, for a total of $96:

**Balance Sheet per J.P. Morgan Chase Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

|  |  | Debits | Fees | Balance |
|---|---|---|---|---|
|  | Beginning Balance on 7/6/09: |  |  | $ 598.33 |
| Date Posted | Debit Description |  |  |  |
| 7/6/09 | Check #176 | 450.00 |  | 148.33 |
| 7/6/09 | ATM Withdrawal | 100.00 |  | 48.33 |
| 7/6/09 | Card Purchase- Kroger | 94.31 |  | -45.98 |
| 7/6/09 | Card Purchase – Famex Pharmacy | 90.00 |  | -135.98 |
| 7/6/09 | Card Purchase – Tobacco Mart | 25.45 |  | -161.43 |
| 7/7/09 | Insufficient Funds Fee |  | 96.00 |  |
|  |  | Total Fees: | $96.00 |  |

*Lopez*, C ¶ 108.  If Chase had posted the transactions in chronological order, Mr. Stone would have incurred only one overdraft fee instead of three:

|  |  | Debits | Fees | Balance |
|---|---|---|---|---|
|  | Beginning Balance on 7/6/09: |  |  | $598.33 |
| Date of Transaction | Debit Description |  |  |  |
| 7/3/09 | Card Purchase- Kroger | 94.31 |  | 504.02 |
| 7/3/09 | Card Purchase – Famex Pharmacy | 90.00 |  | 414.02 |
| 7/4/09 | Card Purchase – Tobacco Mart | 25.45 |  | 388.57 |
| 7/6/09 | ATM Withdrawal | 100.00 |  | 288.57 |
| 7/6/09 | Check #176 | 450.00 |  | -161.43 |
| 7/7/09 | Insufficient Funds Fee |  | 32.00 |  |
|  |  | Total Fees: | $ 32.00 |  |

*Lopez*, C ¶ 111.  This table illustrates plaintiffs' claim that Chase should order transactions based on the date they are executed, since the Bank receives notice of the transactions instantaneously. *See*, *e.g.*, *Lopez*, C ¶ 66.

Again taking an unreasonably narrow reading of the complaint, Chase argues that the order of the debit card transactions is not substantially different in paragraphs 111 and 114 [sic; Chase likely intended to cite paragraphs 108 and 111], and the different order for those transactions would not have resulted in any fewer overdrafts.  Suppl. Mot. at 8.  Chase can reach

this conclusion only by ignoring the posting of one of the transactions – check number 176 for $450. There is no basis for Chase's decision to ignore one of the posted transactions. In fact, and as illustrated by the table in paragraph 111 of the complaint, Chase posted that $450 transaction to Mr. Stone's account before it posted lower-dollar transactions made three days earlier (7/3/09 for $94.31 and 7/3/09 for $90) and a lower-dollar transaction made two days earlier (7/4/09 for $25.45). This batching and reordering of transactions over multiple days exemplifies the type of unfair conduct that plaintiffs describe. *See*, *e.g.*, *Lopez*, C ¶ 64.

Chase attempts to distract from the discretion it unilaterally grants to itself in its contracts to post items "each business day," *Lopez*, C ¶ 47, Suppl. Mot. at 2, as opposed to batched over multiple days, by suggesting that Mr. Stone violated the contract by attempting unsuccessfully to post-date a check by two days. *See* Suppl. Mot. at Ex. B (check was dated 7/8/08 but posted on 7/6/09). If Chase is suggesting that Mr. Stone somehow deserved excessive fees for putting the wrong date on his check, there is no basis in the contract to support such a *quid pro quo*. At all events, this certainly does not constitute grounds for dismissal.

### C.     Ms. McDaniel Effectively Pled Her Claims for Relief

Chase next contends that Linda McDaniel "pleads that her transactions were in fact posted in the 'chronological' order she deems proper, not 'resequenced.'" Suppl. Mot. at 5. To the contrary, plaintiffs' complaint makes clear that the "chronological" tables are necessarily limited by the information provided by Chase:

> For each chart that lists the transactions in chronological order, the transactions are shown as listed in the Banks' statements, re-sorted only by date. Because the statements do not indicate the hour and minute of each transaction, Plaintiffs have listed the transactions for each particular day in the same order in which they are listed in the statements, sorting only from earlier dates to later dates. Thus, if the Banks' statements list transactions that occurred on one particular day in some order other than chronological—sorting from highest to lowest transaction, for example—Plaintiffs have

> not changed that order.  As a result, the chronological charts in this
> Complaint may reflect even more overdraft fees than Plaintiffs
> would have incurred had the Banks posted the transactions in strict
> chronological order.

*Lopez*, C ¶ 32 n.3.  The example provided for Ms. McDaniel demonstrates the strict limits on the information made available to plaintiffs.  It does not eviscerate allegations set forth extensively elsewhere in the complaint.  As stated above, these tables are intended to provide *examples* of the conduct that injured plaintiffs; whether or not one table does so effectively should not prompt dismissal of the case.  Plaintiffs have other examples of Chase's manipulation of Ms. McDaniel's transactions that can be alleged, and if this Court deems that necessary, plaintiffs respectfully seek leave to amend.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasizing that leave to amend be "freely given").

### D.      Ms. Lopez Effectively Pled Her Claims for Relief

Chase does *not* challenge the reordering example provided in connection with Ms. Lopez's account.  This example shows that, had Chase posted the transactions in chronological order instead of highest-to-lowest, Ms. Lopez would have incurred two overdraft fees instead of six, for a difference of $136 for transactions posted on one day alone.  *Compare Lopez*, C ¶ 95 *with* ¶ 99.

## III.    CHASE'S ARGUMENTS FOR DISMISSAL OF THE STATUTORY CLAIMS ARE WITHOUT MERIT

### A.      Plaintiffs Have Standing to Plead State Unfair Trade Practices Claims

With respect to all four named plaintiffs, Chase contends that their fifth claim for relief (under various states' consumer protection laws) should be dismissed because the statute from the state in which each plaintiff resides was not pled.  Nevertheless, plaintiffs are all bank customers injured by Chase's conduct.  They assert claims under various states' consumer protection statutes on behalf of absent class members who reside *in those states*.  Plaintiffs have

standing to act in a representative capacity for those who reside in other states because they suffered the same injuries, as a result of the same policies and practices, as those unnamed class members from other states.

As explained in greater detail in plaintiffs' memorandum in opposition to the omnibus motion, Plaintiffs' memorandum at 74 – 79, the consumer protection claims pled in the complaints are substantially similar to each other, such that a representative from one state is adequate to represent class members from other states. *See Manual for Complex Litigation* § 22.634 (4th ed. 2004) ("*Manual 4th*") ("If the choice-of-law and subsequent analysis show little relevant difference in the governing law, or that the law of only a few jurisdictions applies, the court might address these differences by creating subclasses or by other appropriate grouping of claims."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 104 (D. Mass. 2008) ("In a multi-state class, the case law does not create a *per se* rule that the Court must appoint a separate representative for each state or even each group.  There is no substantial conflict of interest between the three state groupings which would necessitate a class representative from each group.") (internal citations omitted).

It is axiomatic that standing, the adequacy of the class representatives and whether a class can be certified under multiple states' laws, are not issues for determination on a motion to dismiss, and are typically addressed at the class certification stage.  *See Hernandez v. Meadows*, 209 F.R.D. 665, 667 (S.D. Fla. 2002) ("It is well-established that 'prior to certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named representative has Article III standing to raise each class claim.'") (citations omitted).  This issue does not warrant dismissal of plaintiffs' statutory claims at this juncture.

      B.        **Even if the Court Were to Find That Any Plaintiffs Lack Standing to Assert the Consumer Protection Claims, the Court Should Allow Time for Other Plaintiffs to Be Located and Added**

If the Court were to conclude that plaintiffs lack standing to assert the statutory consumer protection statutes pled, plaintiffs should be permitted additional time to add other class representatives who can adequately represent the proposed classes with respect to those statutory claims.  It is "settled that the named plaintiff need not demonstrate a probability of success on the merits or show in advance that he or she suffered damages in order to serve as the class representative." 1 *Newberg on Class Actions* § 3:29 (4th ed. 2002).  As *Newberg* notes, if a class representative is found to lack standing to represent a proposed class, even after certification of that class, courts often permit additional class representatives to be added to cure the lack of standing.  3 *Newberg* § 7.47; *see also* 1 *Newberg* § 3:19 ("an alternative representative may be appointed for the issues on which the plaintiff lacks standing.").  Likewise, the *Manual 4th* observes that "courts generally allow class counsel time to make reasonable efforts to recruit and identify a new representative who meets the Rule 23(a) requirements."  *Manual 4th* § 21.36.  Further, "[t]he court may permit intervention by a new representative or may simply designate that person as a representative in the order granting class certification."  *Id.*  Thus, a finding at this point that plaintiffs lack standing to represent each proposed class pled does not suggest those actions should be dismissed.  *See Hernandez*, 209 F.R.D. at 667; *see also Birmingham Steel Corp. v. Tenn. Valley Authority*, 353 F.3d 1331 (11th Cir. 2003) (finding "district court erred in dismissing the case without first giving an opportunity for intervention of a newly named plaintiff who would have standing to pursue the action).

Under the reasoning of *Birmingham Steel* and the weight of authority on this issue generally, the proper approach is to permit the current proposed class representatives to represent

the proposed classes at this stage of the litigation, and to allow later amendments to the complaints to add additional class representatives, or their intervention, as necessary to meet the requirements of Rule 23.

## CONCLUSION

For the foregoing reasons, the Court should deny Chase's supplemental motion to dismiss the *Lopez* complaint.

Dated:       February 5, 2010

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@abbrclaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@abbrclaw.com
ALTERS BOLDT BROWN
  RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Lead Counsel for Plaintiffs*

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Barry R. Himmelstein
Barry R. Himmelstein, Esquire
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esquire
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
GOLUMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

### CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of February, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Florida Bar No. 561861
ALTERS BOLDT BROWN
RASH & CULMO, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@abbrclaw.com

-14-