**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Ralph Tornes v. Bank of America, N.A.,*
S.D. FL 08-23323-CIV-KING/BANDSTRA

**THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs, through undersigned counsel, on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

**INTRODUCTION**

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant Bank of America, N.A. ("Bank of America"), arising from its unfair and unconscionable assessment and collection of excessive overdraft fees.

2.      In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Bank of America.  For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers.  Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance.  A recent FDIC report estimated

that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.  Nevertheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.      In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks are estimated to bring in between $27 billion to $38.5 billion in overdraft charges alone.*  As the largest retail bank in the country, Bank of America is among the largest beneficiaries of these staggering charges.

4.      Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.      Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries, the

grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.      The same considerations are not present when customers use debit cards.  Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.      Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Bank of America routinely processes such transactions and then charges its customers an overdraft fee of $25 (for the first such charge in any calendar year) or $35 (for all subsequent charges)—even when the transaction is for only a few dollars.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Bank of America.  Additionally, as part of its inequitable motive to generate obscene profits gained through the imposition of unconscionable overdraft fees, Bank of America fails to adequately disclose to its customers that they may elect to opt out of overdraft protection.

8.      In many instances, these overdraft fees cost Bank of America account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

9.      Thus, it is through manipulation and alteration of customers' transaction records that Bank of America maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the Plaintiffs is a resident of a different state than Bank of America.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Bank of America is subject to personal jurisdiction here and regularly conducts business in the Southern District of Florida, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in this district.

## THE PARTIES

12.     Plaintiff Richard Blair is a resident of the State of New Mexico.

13.     Plaintiff Jonathan Bylin is a resident of the State of New Jersey.

14.     Plaintiff Marco Chelo is a resident of the State of New York.

15.     Plaintiff Robert Conroy is a resident of the State of New Jersey.

16.     Plaintiff Joshua Di Frances is a resident of the State of Massachusetts.

17.     Plaintiff Carolyn Gipson is a resident of the State of Texas.

18.     Plaintiff David Hanny is a resident of the State of Illinois.

19.     Plaintiff Haneef Haqq is a resident of the State of Georgia.

20.     Plaintiff Joi Holloway is a resident of the State of New Jersey.

21.     Plaintiffs Esther and Stephen James are residents of the State of Texas.

22.     Plaintiffs John and Anya (Williams) Kopp are residents of the State of Minnesota.

23.     Plaintiffs Deborah and Therese Marshall are residents of the State of Connecticut.

24.     Plaintiff Jason Molitor is a resident of the State of Illinois.

25.     Plaintiffs Bruce and Maria Mosley are residents of the State of Florida.

26.     Plaintiff Nelson Norman is a resident of the State of Texas.

27.     Plaintiff Alvin Richardson is a resident of the State of Texas.

28.     Plaintiffs Dawyn and Ronald Palmer are residents of the State of North Carolina.

29.     Plaintiff William W. Powell, Jr. is a resident of the State of Georgia.

30.     Plaintiff Caroline Sherman is a resident of Massachusetts.

31.     Plaintiff Ralph Tornes is a resident of the State of Florida.

32.     Plaintiff Elona Wagner is a resident of the State of Florida.

33.     Plaintiff Kelly Weatherspoon is a resident of the State of Illinois.

34.     Plaintiff William Werking is a citizen of the State of Florida.

35.     Bank of America is a national bank incorporated in the State of Delaware which maintains its principal place of business in Charlotte, North Carolina.  Bank of America regularly and systematically conducts business throughout the State of Florida, including in this district. Among other things, Bank of America is engaged in the business of providing retail banking services to millions of consumers, including Plaintiffs and members of the putative Classes, which include the issuance of debit cards for use by its customers in conjunction with their checking accounts.  Bank of America boasts the country's most extensive branch network, with more than 6,100 locations covering over 30 states and the District of Columbia.

36.     Bank of America is a national bank, subject to the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

## CLASS ALLEGATIONS

37.     Plaintiffs bring this action on behalf of themselves and all others similarly situated

pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality,

adequacy, predominance and superiority requirements of Rule 23.

38.     The proposed classes are defined as:

> All Bank of America customers in the United States (except for California) who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Bank of America's practice of re-sequencing debit card transactions from highest to lowest (the "National Class").

> All Bank of America customers having accounts at branches in the states of Connecticut, Illinois, Minnesota, New Jersey, New Mexico, New York and North Carolina for the purpose of asserting claims under their respective state consumer protection statutes (the "State Subclasses") (*see* Fifth Claim for Relief, *infra*).

> The National Class and the State Subclasses are collectively referred to as the "Classes."

39.     Plaintiffs reserve the right to modify or amend the definition of the proposed

Classes before the Court determines whether certification is appropriate.

40.     Excluded from the Classes are Bank of America, its parents, subsidiaries,

affiliates, officers and directors, any entity in which Bank of America has a controlling interest,

all customers who make a timely election to be excluded, governmental entities, and all judges

assigned to hear any aspect of this litigation, as well as their immediate family members.

41.     The members of the Classes are so numerous that joinder is impractical.  The

Classes consist of thousands of members, the identity of whom is within the knowledge of and

can be ascertained only by resort to Bank of America's records.

42.     The claims of the representative Plaintiffs are typical of the claims of the Classes

in that the representative Plaintiffs, like all Class members, were charged overdraft fees by Bank

of America as a result of its practice of re-sequencing debit card transactions from highest to lowest. The representative Plaintiffs, like all Class members, have been damaged by Bank of America's misconduct in that they have been assessed and/or will continue to be assessed unfair and unconscionable overdraft charges. Furthermore, the factual basis of Bank of America's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

43.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

44.     Among the questions of law and fact common to the Classes are whether Bank of America:

a.     Does not clearly disclose and/or refuses to allow its customers to opt out of its overdraft protection program;

b.     Does not obtain affirmative consent from its customers prior to processing transactions that will result in overdraft fees;

c.     Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

d.     Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

e.     Manipulates and reorders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

f.     Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

g.     Fails to provide customers with accurate balance information;

     h.     Delays posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

     i.     Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

     j.     Breaches its covenant of good faith and fair dealing with Plaintiffs and other members of the Classes through its overdraft policies and practices;

     k.     Requires its customers to enter into standardized account agreements which include unconscionable provisions;

     l.     Converts moneys belonging to Plaintiffs and other members of the Classes through its overdraft policies and practices;

     m.     Is unjustly enriched through its overdraft policies and practices; and

     n.     Violates the consumer protection acts of certain states through its overdraft policies and practices.

45.     Other questions of law and fact common to the Classes include:

     a.     The proper method or methods by which to measure damages, and

     b.     The declaratory relief to which the Classes are entitled.

46.     Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Bank of America's account agreements and other related documents.  Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

47.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

48.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Bank of America, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Bank of America's misconduct will proceed without remedy.

49.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.     Bank of America

50.     According to its website, Bank of America is one of this country's largest consumer banking companies, with more than 59 million consumer and small business relationships, over 6,100 retail banking offices, in excess of 18,000 ATMs, and online banking with nearly 24 million active users covering more than 30 states and the District of Columbia.

51.     Bank of America is in the business of providing its customers with a variety of banking services.  One of the services provided by Bank of America for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATM machines, the transaction is processed electronically.  As a result, Bank of America is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

52.     Bank of America employs sophisticated software to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

53.     As a result of Bank of America's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer, whose account has a $50 balance at the time Bank of America processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer.  Conversely, if the $100 transaction were debited last—consistent with the actual order of transactions—only one overdraft fee would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

**B.** **Bank of America's Relevant Customer Documents Regarding Overdrafts**

54.     Plaintiffs and all members of the Classes maintain or maintained a checking account with Bank of America.   The terms of Bank of America's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by Bank of America, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.   A representative copy of the "Deposit Agreement and Disclosures" (the "Deposit Agreement"), covering customers maintaining accounts in 27 states and the District of Columbia, which is over 40 pages long, single-spaced and in small font, is attached as Exhibit A.

55.     The Deposit Agreement states that "[i]n *most* states we process and post items within each category from highest to lowest dollar amount" (p. 18, emphasis added).   It further states that the "high-to-low posting order *may* result in more insufficient funds items and more fees" even though it *will almost always* result in more fees.   *Id.* (emphasis added); *see also* pp. 20-21.

56.     The Deposit Agreement also states that Bank of America "may charge you a fee for each insufficient funds item whether we pay, permit, return, decline or reject the item."   *Id.* at 20.

57.     Bank of America also publishes a pamphlet that is available to customers at its branches entitled a "Personal Schedule of Fees" (the "Fee Schedule").   Substantially similar Fee Schedules are available for customers in each state in which the Bank conducts business.   A representative copy of the Fee Schedule is attached as Exhibit B.   The Fee Schedule provides "Overdraft Item Fee and NSF:  Returned Item Fee – For the first day your account has an occurrence, fee for each overdraft item and for each returned item" is "25.00 each item" effective April 18, 2008.  Fee Schedule, p. 9.   The Fee Schedule further provides:  "For the second and

subsequent days your account has an occurrence, fee for each overdraft item and for each returned" is "35.00 each item." An "occurrence" is defined as "a day with at least one overdraft item or one returned item." *Id.*

58.     The Bank also publishes "Important Information About Your Card Agreement and Disclosure" (the "Card Agreement"), a representative copy of which is attached as Exhibit C.  The Card Agreement "supplements the Deposit Agreement and the related Fee Schedule (collectively, the 'Deposit Agreement') that apply to each Bank of America deposit account that you link to your card."  Card Agreement, p. 1.

59.     The Deposit Agreement and related documents, including the Fee Schedule and Card Agreement, fail to disclose to customers that they have the option to "opt out" from the Bank's overdraft scheme, although it is possible for them to opt out upon request.

### C.     Bank of America's Re-Ordering of Checking Account Transactions

60.     In an effort to maximize overdraft revenue, Bank of America manipulates and reorders debits from highest to lowest during given periods of time.  Bank of America reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge.  This practice violates numerous consumer protection laws and the covenant of good faith and fair dealing in the Bank's Deposit Agreement.

61.     In addition, Bank of America misleads its customers regarding its reordering practices.  Instead of unequivocally telling its customers that it will reorder debits from highest to lowest, the Bank states in its contract that "[w]e *may* determine in our discretion the order of processing and posting deposits, fees, charges, checks, debits and other items to your account. We *may* credit, accept, pay, certify or return deposits, fees, charges, checks, debits and other items arriving to your account on the *same day* in any order at our option."  This statement is deceptive and/or unfair because it is, in fact, the Bank's practice to *always* reorder debits from

highest to lowest, and because the Bank groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank Deposit Agreement and its customers' reasonable expectations. The Bank's practices thus violate the covenant of good faith and fair dealing implied in the Bank Deposit Agreement as well as the consumer protection laws of numerous states.

62. Transactions involving debit cards used by Bank of America customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed electronically. As a result, Bank of America is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

63. Notwithstanding the instantaneous nature of these electronic debit card transactions, under Bank of America's posting system, it fails to post charges in the order in which they are assessed or received. Bank of America developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

64. Instead of processing such transactions in chronological order, Bank of America processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

65. Bank of America refrains from immediately posting charges to a customer's account as it receives them—sometimes for multiple business days. By holding charges rather

than posting them immediately to an account, Bank of America is able to amass a number of charges on the account.  Subsequently, Bank of America posts all of the amassed charges on a single date.  When the group of charges is eventually posted to the customer's account, Bank of America posts them in order of largest to smallest—not in the order in which they were received or in the order in which they were charged.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.  The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

66.    Bank of America's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

67.    Bank of America enforces an unconscionable policy whereby charges assessed are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.  Bank of America's processing practices substantially increase the likelihood that customers' smaller charges will result in multiple overdraft fees.  The practices provide Bank of America with substantially higher service fee revenues than it would otherwise achieve absent these practices.

68.    As a result, Plaintiffs and members of the Classes have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

### D.    Bank of America's Cloaking of Accurate Balance Information

69.    Bank of America actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information.  When

customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

70.     Bank of America provides inaccurate balance information to its customers through its electronic network.  In certain cases, Bank of America informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual knowledge of outstanding debits and transactions.

71.     Even when Bank of America has actual knowledge of outstanding transactions which have already created a negative balance in a customers' account, it encourages the customer to incur more overdraft charges by approving—rather than prudently declining—subsequent debit card purchases and other electronic transactions.

72.     Bank of America also assesses overdraft fees at times when actual funds in the customer account are sufficient to cover all debits that have been submitted to the Bank for payment.  It does this by placing a "hold" on actual funds in the customer's account.  In doing so, Bank of America charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

> **E.     Bank of America's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out**

73.     At the time its debit cards are used in POS transactions or at ATMs, Bank of America is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Bank of America could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it

does not do so because it seeks to maximize the amount of revenue generated through its assessment of overdraft fees.

74.     Notwithstanding its technological capabilities and actual knowledge, Bank of America fails to provide notice to Plaintiffs and the Classes that a particular debit card transaction will result in an overdraft and, hence, an overdraft fee.  Because Bank of America's customers are not notified of the potential overdraft, and are not given the option of declining the debit card transaction or providing another form of payment, the customers are assessed monetary damages in the form of overdraft fees.

75.     Bank of America fails to make Plaintiffs and Class members aware that they can opt out of its overdraft scheme upon request, thereby avoiding any overdraft fees from being charged.

**F.**     **Bank of America's Overdraft Policies and Practices Are Contrary to Best Practices**

76.     By engaging in the conduct described herein, Bank of America has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies").  A copy of the Joint Guidance is attached as Exhibit D.  These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection.  Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

- 16 -

77.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . .  This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

78.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.  When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."  70 F.R.D. 9127, 9132.  The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id*.

79.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.  A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit E.

80.     Bank of America's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer. 73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of

their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

81.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion:  Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit F, finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee."  The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

82.     A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



G.      **Bank of America's Unconscionable Provisions and Policies**

83.     Bank of America's overdraft policies and practices are unconscionable in the following respects, among others:

a.      The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Deposit Agreement and related documents, including the Fee Schedule and Card Agreement, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, the Fee Schedule, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Bank of America *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

84.     The Deposit Agreement also contains an arbitration clause and a class action waiver which states:  "YOU AND WE ARE BOTH GIVING UP THE RIGHT TO TRIAL BY JURY," and "THIS SECTION PRECLUDES YOU AND US FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION OR JOINING

OR CONSOLIDATING THE CLAIMS OF OTHER PERSONS (HEREINAFTER REFERRED TO AS THE 'CLASS ACTION WAIVER')."  Deposit Agreement, p. 40.

85.     Bank of America recently announced that it would no longer enforce mandatory arbitration in its disputes with customers.  A copy of the announcement posted on the Bank's website is attached as Exhibit G.

86.     Should Bank of America contend that its recent announcement about no longer enforcing mandatory arbitration was not intended to apply to this action, the above cited provisions are nevertheless unconscionable because the Deposit Agreement and related documents, to the extent they are deemed contracts, are unenforceable contracts of adhesion  and the arbitration provision itself is substantively unconscionable.

### H.     Recently Announced Changes in Bank of America's Overdraft Policies and Practices Do Not Offer Any Remedial Benefits to Customers

87.     On September 21, 2009, Bank of America announced plans to overhaul its overdraft policies on a going-forward basis.  Thus far the bank has refused to correct several of the unfair practices described herein, such as the reordering of debits to increase overdraft fees. In addition, the changes do nothing to remedy the past wrongs to Plaintiffs and the Classes. They do not retroactively reverse the charges wrongly debited from their accounts, nor do they prevent Bank of America from resuming its previous unfair and unconscionable methods of business in the future.

### I.     Bank of America's Overdraft Practices Harmed Plaintiffs

88.     Bank of America's wrongful overdraft policies and practices described above harmed Plaintiffs and members of the Classes.  The following allegations regarding certain of the named plaintiffs are made for purposes of illustrating the harm and damage sustained by

Plaintiffs and members of the Classes as a result of Bank of America's wrongful overdraft policies and practices.

89.     Plaintiff Ralph Tornes is a current or former checking account customer of Bank of America.

90.     In connection with his account, the Bank issued a debit card to Mr. Tornes.  A debit card allows customers to access their checking account funds by using the card to execute a transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

91.     Bank of America wrongfully charged Mr. Tornes overdraft fees on multiple occasions.  By way of illustration, Mr. Tornes was charged five overdraft fees on June 23, 2008, in the amount of $35.00 each, for a total of $170.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 6/20/08:** | | | **$ 361.68** |
| **Date Posted** | **Debit Description** | | | |
| 6/23/08 | CheckCard 0620 Transit Lounge | 89.00 | | 272.68 |
| 6/23/08 | CheckCard 0621 Segafredo Zanett | 69.09 | | 203.59 |
| 6/23/08 | Bird Road Offi 06/21 | 63.00 | | 140.59 |
| 6/23/08 | CheckCard 0621 | 54.75 | | 85.84 |
| 6/23/08 | Publix 0621 | 42.19 | | 43.65 |
| 6/23/08 | Westar 06/21 | 25.00 | | 18.65 |
| 6/23/08 | Bk of America ATM 06/23 | 20.00 | | - 1.35 |
| 6/23/08 | CheckCard 0621 Chevron | 6.78 | | - 8.13 |
| 6/23/08 | CheckCard 0620 Burger King | 5.73 | | -13.86 |
| 6/23/08 | CheckCard 0620 Diana's Café | 5.55 | | -19.41 |
| 6/23/08 | Westar 06/22 | 5.02 | | -24.43 |
| 6/23/08 | Bird Road Offi 6/21 | 2.00 | | -26.43 |
| 6/23/08 | Overdraft Item Fee | | 35.00 | |
| 6/23/08 | Overdraft Item Fee | | 35.00 | |
| 6/23/08 | Overdraft Item Fee | | 35.00 | |

| | | | | |
|---|---|---|---|---|
| 6/23/08 | Overdraft Item Fee | | 35.00 | |
| 6/23/08 | Overdraft Item Fee | | 35.00 | |
| | | **Total Fees:** | **$ 175.00** | |

92.     If Bank of America had not manipulated and reordered Mr. Tornes transactions from highest to lowest, he would not have been assessed five overdraft fees.

93.     For instance, if Bank of America had posted the transactions from lowest to highest, Mr. Tornes would have been assessed only one overdraft fee instead of five:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 6/20/08:** | | | **$ 361.68** |
| **Date Posted** | **Debit Description** | | | |
| 6/23/08 | Bird Road Office 6/21 | 2.00 | | 359.68 |
| 6/23/08 | Weststar 06/22 | 5.02 | | 354.66 |
| 6/23/08 | CheckCard 0620 Diana's Café | 5.55 | | 349.11 |
| 6/23/08 | CheckCard 0620 Burger King | 5.73 | | 343.38 |
| 6/23/08 | CheckCard 0621 Chevron | 6.78 | | 336.60 |
| 6/23/08 | Bk of America ATM 06/23 | 20.00 | | 316.60 |
| 6/23/08 | Weststar 06/21 | 25.00 | | 291.60 |
| 6/23/08 | Publix 06/21 | 42.19 | | 249.41 |
| 6/23/08 | CheckCard 06/21 | 54.75 | | 194.66 |
| 6/23/08 | Bird Road Offi 6/21 | 63.00 | | 131.66 |
| 6/23/08 | CheckCard 0621 Segafredo Zanetti | 69.09 | | 62.57 |
| 6/23/08 | Checkcard 0620 Transit Lounge | 89.00 | | - 26.43 |
| 6/24/08 | Overdraft Item Fee for Activity of 06-23 | | 35.00 | |
| | | **Total Fees:** | **$ 35.00** | |

94.     Likewise, if Bank of America had posted the transactions in chronological order, Mr. Tornes would have been assessed only three overdraft fees instead of five:

**Balance Sheet if Debits Were Processed in Chronological Order**[1]

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 6/20/08: | | | $ 361.68 |
| **Date of Transaction** | **Debit Description** | | | |
| 6/20/08 | CheckCard 0620 Diana's Café | 5.55 | | 356.13 |
| 6/20/08 | CheckCard 0620 Burger King | 5.73 | | 35.04 |
| 6/20/08 | CheckCard 0620 Transit Lounge | 89.00 | | 261.40 |
| 6/21/08 | CheckCard 0621 Chevron | 6.78 | | 254.62 |
| 6/21/08 | Weststar 06/21 | 25.00 | | 229.62 |
| 6/21/08 | Publix 0621 | 42.19 | | 187.43 |
| 6/21/08 | CheckCard 0621 | 54.75 | | 132.68 |
| 6/21/08 | Bird Road Offi 06/21 | 2.00 | | 130.68 |
| 6/21/08 | Bird Road Offi 06/21 | 63.00 | | 67.68 |
| 6/21/08 | CheckCard 0621 Segafredo Zanett | 69.09 | | - 1.41 |
| 6/22/08 | Westar 06/22 | 5.02 | | - 6.43 |
| 6/23/08 | Bk of America ATM 06/23 | 20.00 | | - 26.43 |
| 6/24/08 | Overdraft Item Fee for Activity of 06-21 | | 35.00 | |
| 6/24/08 | Overdraft Fee Item for Activity of 06-21 | | 35.00 | |
| 6/24/08 | Overdraft Fee Item for Activity of 06-21 | | 35.00 | |
| | | **Total Fees:** | **$ 105.00** | |

95.     Plaintiff Jonathan Bylin is a current checking account customer of Bank of America.

96.     In connection with his account, the Bank issued a debit card to Mr. Bylin.

---

[1] For each chart that lists the transactions in chronological order, the transactions are shown as listed in the Bank's statements, re-sorted only by date. Because the statements do not indicate the hour and minute of each transaction, Plaintiffs have listed the transactions for each particular day in the same order in which they are listed in the statements, sorting only from earlier dates to later dates. Thus, if the Bank's statements list transactions that occurred on one particular day in some order other than chronological—sorting from highest to lowest transaction, for example— Plaintiffs have not changed that order. As a result, the chronological charts in this Complaint may reflect even more overdraft fees than Plaintiffs would have been assessed had the Bank posted the transactions in strict chronological order.

97.    Bank of America wrongfully charged Mr. Bylin overdraft fees on multiple occasions.  By way of illustration, Mr. Bylin was charged five overdraft fees on March 31, 2009, in the amount of $25.00 each, for a total of $125.00.   Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 3/30/09:** | | | **$7,286.33** |
| **Date Posted** | **Debit Description** | | | |
| 3/30/09 | Investors Savings Bank Bill Payment | 6,594.29 | | 692.04 |
| 3/30/09 | American Express Bill Payment | 2,432.14 | | -1,740.10 |
| 3/30/09 | Bk of America ATM 03/28 Withdrwl | 200.00 | | -1,940.10 |
| 3/30/09 | Bk of America ATM 03/28 Withdrwl | 200.00 | | -2,140.10 |
| 3/30/09 | Sou The Sports 03/29 | 126.22 | | -2,266.32 |
| 3/30/09 | CheckCard 0327 Peter J. Haigney, DC | 65.00 | | -2,331.32 |
| 3/30/09 | CheckCard 0327 Alexis Diner | 22.15 | | -2,353.47 |
| 3/30/09 | CheckCard 0327 American Royal Hardwr | 14.72 | | -2,368.19 |
| 3/30/09 | Quick Chek Foo 03/27 | 11.58 | | -2,379.77 |
| 3/31/09 | Overdraft Fee - Activity of 03/30 | | 25.00 | |
| 3/31/09 | Overdraft Fee - Activity of 03/30 | | 25.00 | |
| 3/31/09 | Overdraft Fee - Activity of 03/30 | | 25.00 | |
| 3/31/09 | Overdraft Fee - Activity of 03/30 | | 25.00 | |
| 3/31/09 | Overdraft Fee - Activity of 03/30 | | 25.00 | |
| | | **Total Fees:** | **$125.00** | |

98.    If Bank of America had not manipulated and reordered Mr. Bylin's transactions from highest to lowest, he would not have been assessed five overdraft fees.

99.     For instance, if Bank of America had posted the transactions from lowest to highest, Mr. Bylin would have been assessed only one overdraft fee instead of five:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 3/30/09: | | | $7,286.33 |
| Date Posted | Debit Description | | | |
| 3/30/09 | Quick Chek Foo 03/27 | 11.58 | | 7,274.75 |
| 3/30/09 | CheckCard 0327 American Royal Hardwr | 14.72 | | 7,260.03 |
| 3/30/09 | CheckCard 0327 Alexis Diner | 22.15 | | 7,237.88 |
| 3/30/09 | CheckCard 0327 Peter J. Haigney, DC | 65.00 | | 7,172.88 |
| 3/30/09 | Sou The Sports 03/29 | 126.22 | | 7,046.66 |
| 3/30/09 | Bk of America ATM 03/28 Withdrwl | 200.00 | | 6,846.66 |
| 3/30/09 | Bk of America ATM 03/28 Withdrwl | 200.00 | | 6,646.66 |
| 3/30/09 | American Express Bill Payment | 2,432.14 | | 4,214.52 |
| 3/30/09 | Investors Savings Bank Bill Payment | 6,594.29 | | -2,379.77 |
| 3/31/09 | Overdraft Fee – Activity of 03/30 | | 25.00 | |
| | | Total Fees: | $25.00 | |

100.     Likewise, if Bank of America had posted the transactions in chronological order, Mr. Bylin would have been assessed only one overdraft fee instead of five:

### Balance Sheet if Debits Were Processed in Chronological Order

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 3/30/09: | | | $7,286.33 |
| Date of Transaction | Debit Description | | | |
| 3/27/09 | Quick Chek Foo 03/27 | 11.58 | | 7,274.75 |
| 3/27/09 | CheckCard 0327 American Royal Hardwr | 14.72 | | 7,260.03 |
| 3/27/09 | CheckCard 0327 Alexis Diner | 22.15 | | 7,237.88 |
| 3/27/09 | CheckCard 0327 Peter J. Haigney, DC | 65.00 | | 7,172.88 |
| 3/28/09 | Bk of America ATM 03/28 Withdrwl | 200.00 | | 6,972.88 |
| 3/28/09 | Bk of America ATM 03/28 Withdrwl | 200.00 | | 6,772.88 |
| 3/29/09 | Sou The Sports 03/29 | 126.22 | | 6.646.66 |
| 3/30/09 | American Express Bill Payment | 2,432.14 | | 4,214.52 |
| 3/30/09 | Investors Savings Bank Bill Payment | 6,594.29 | | -2,379.77 |
| 3/31/09 | Overdraft Item Fee | | 25.00 | |
| | | Total Fees: | $ 25.00 | |

101.    Plaintiff Joshua Di Frances is a former checking account customer of Bank of America.

102.    In connection with his account, the Bank issued a debit card to Mr. Di Frances.

103.    Bank of America wrongfully charged Mr. Di Frances overdraft fees on multiple occasions.  By way of illustration, Mr. Di Frances was charged four overdraft fees on July 17, 2009, in the amount of $35.00 each, for a total of $140.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 7/15/09: | | | $ 87.19 |
| Date Posted | Debit Description | | | |
| 7/16/09 | Check 1026 | 300.00 | | -212.81 |
| 7/16/09 | CheckCard 0715 Star Market | 20.69 | | -233.50 |
| 7/16/09 | CheckCard 0715 Sebastians | 10.92 | | -244.42 |
| 7/16/09 | CheckCard 0714 Dunkin | 2.29 | | -246.71 |
| 7/17/09 | Overdraft Fee – Activity of 07- | | 35.00 | |
| 7/17/09 | Overdraft Fee – Activity of 07- | | 35.00 | |
| 7/17/09 | Overdraft Fee – Activity of 07- | | 35.00 | |
| 7/17/09 | Overdraft Fee – Activity of 07- | | 35.00 | |
| | | Total Fees: | $140.00 | |

104.    If Bank of America had not manipulated and reordered Mr. Di Frances's transactions from highest to lowest, he would not have been assessed four overdraft fees.

- 27 -

105.    For instance, if Bank of America had posted the transactions from lowest to highest, Mr. Di Frances would have been assessed only one overdraft fee instead of four:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| Date Posted | Debit Description | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 07/15/09: | | | $ 87.19 |
| 7/16/09 | CheckCard 0714 Dunkin | 2.29 | | 84.90 |
| 7/16/09 | CheckCard 0715 Sebastians | 10.92 | | 73.98 |
| 7/16/09 | CheckCard 0715 Star Market | 20.69 | | 53.29 |
| 7/16/09 | Check 1026 | 300.00 | | - 246.71 |
| 7/16/09 | Overdraft Fee – Activity of 07-16 | | 35.00 | |
| | | Total Fees: | $ 35.00 | |

106.    Likewise, if Bank of America had posted the transactions in chronological order, Mr. Di Frances would have been assessed only one overdraft fee instead of four:

### Balance Sheet if Debits Were Processed in Chronological Order

| Date Posted | Debit Description | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 07/15/09: | | | $ 87.19 |
| 7/16/09 | CheckCard 0714 Dunkin | 2.29 | | 84.90 |
| 7/16/09 | CheckCard 0715 Sebastians | 10.92 | | 73.98 |
| 7/16/09 | CheckCard 0715 Star Market | 20.69 | | 53.29 |
| 7/16/09 | Check 1026 | 300.00 | | - 246.71 |
| 7/16/09 | Overdraft Fee – Activity of 07-16 | | 35.00 | |
| | | Total Fees: | $ 35.00 | |

107.    Plaintiff David Hanny is a current checking account customer of Bank of America.

108.    In connection with his account, the Bank issued a debit card to Mr. Hanny.

109.    Bank of America wrongfully charged Mr. Hanny overdraft fees on multiple occasions.  By way of illustration, Mr. Hanny was charged four overdraft fees on June 17, 2008, in the amount of $25.00 each, for a total of $100.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 6/13/08:** | | | **$498.41** |
| **Date Posted** | **Debit Description** | | | |
| 6/16/08 | Costco Whse #0 06/16 | 143.92 | | 354.49 |
| 6/16/08 | Check #6107 | 138.00 | | 216.49 |
| 6/16/08 | CheckCard 0617 Price Chopr | 69.46 | | 147.03 |
| 6/16/08 | Wal-Mart #0577 06/15 | 50.36 | | 96.67 |
| 6/16/08 | Costco Gas #00 06/16 | 28.02 | | 68.65 |
| 6/16/08 | Hen House #31 06/16 | 24.61 | | 44.04 |
| 6/16/08 | CheckCard 0614 Great Mall | 21.26 | | 22.78 |
| 6/16/08 | CheckCard 0614 Great Mall | 18.50 | | 4.28 |
| 6/16/08 | CheckCard 0613 Qt 212 | 11.58 | | - 7.30 |
| 6/16/08 | Sou Guitar Cen 06/14 | 10.70 | | -18.00 |
| 6/16/08 | Keep the Change Transfer Canceled-Low Acct Balance | | | -18.00 |
| 6/17/08 | Overdraft Fee – Activity of 06/16 | | 25.00 | |
| 6/17/08 | Overdraft Fee – Activity of 06/16 | | 25.00 | |
| 6/17/08 | Overdraft Fee – Activity of 06/16 | | 25.00 | |
| 6/17/08 | Overdraft Fee – Activity of 06/16 | | 25.00 | |
| | | **Total Fees:** | **$100.00** | |

110.    If Bank of America had not manipulated and reordered Mr. Hanny's transactions from highest to lowest, he would not have been assessed four overdraft fees.

111.     For instance, if Bank of America had posted the transactions from lowest to highest, Mr. Hanny would have been assessed only one overdraft fee instead of four:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | Beginning Balance on 06/13/08: |  |  | **$498.41** |
| **Date Posted** | **Debit Description** |  |  |  |
| 6/16/08 | Sou Guitar Cen 06/14 | 10.70 |  | 487.71 |
| 6/16/08 | CheckCard 0613 Qt 212 | 11.58 |  | 476.13 |
| 6/16/08 | CheckCard 0614 Great Mall | 18.50 |  | 457.63 |
| 6/16/08 | CheckCard 0614 Great Mall | 21.26 |  | 436.37 |
| 6/16/08 | Hen House #31 06/16 | 24.61 |  | 411.76 |
| 6/16/08 | Costco Gas #00 06/16 | 28.02 |  | 383.74 |
| 6/16/08 | Wal-Mart #0577 06/15 | 50.36 |  | 333.38 |
| 6/16/08 | CheckCard 0613 | 69.46 |  | 263.92 |
| 6/16/08 | Check 6107 | 138.00 |  | 125.92 |
| 6/16/08 | Costco Whse #0 06/16 | 143.92 |  | -18.00 |
| 6/17/08 | Overdraft Fee |  | 25.00 |  |
|  |  | **Total Fees:** | **$25.00** |  |

112.     Likewise, if Bank of America had posted the transactions in chronological order, Mr. Hanny would have been assessed only one overdraft fee instead of four:

**Balance Sheet if Debits Were Processed in Chronological Order**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | Beginning Balance on 6/13/08: |  |  | **$498.41** |
| **Date of Transaction** | **Debit Description** |  |  |  |
| 6/13/08 | CheckCard 0613 Price Chopr | 69.46 |  | 428.95 |
| 6/13/08 | CheckCard 0613 Qt 212 | 11.58 |  | 417.37 |
| 6/14/08 | CheckCard 0614 Great Mall | 21.26 |  | 396.11 |
| 6/14/08 | CheckCard 0614 Great Mall | 18.50 |  | 377.61 |
| 6/14/08 | Sou Guitar Center 0614 | 10.70 |  | 366.91 |
| 6/15/08 | Wal-Mart #0577 06/15 | 50.36 |  | 316.55 |
| 6/16/08 | Costco Whse #0616 | 143.92 |  | 172.63 |
| 6/16/08 | Check 6107 | 138.00 |  | 34.63 |
| 6/16/08 | Costco Gas #00 06/16 | 28.02 |  | 6.61 |
| 6/16/08 | Hen House #31 06/16 | 24.61 |  | -18.00 |
| 6/17/08 | Overdraft Fee |  | 25.00 |  |
|  |  | **Total Fees:** | **$25.00** |  |

- 30 -

113.    Plaintiffs Esther and Stephen James are current or former checking account customers of Bank of America; they maintain or maintained a joint account.

114.    In connection with their account, the James were issued a debit card by the Bank.

115.    Bank of America wrongfully charged the James overdraft fees on multiple occasions.  By way of illustration, the James were charged three overdraft fees on July 28, 2008, in the amount of $35.00 each, for a total of $105.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 7/25/08: | | | $ 150.44 |
| Date Posted | Debit Description | | | |
| 7/28/08 | Online Banking transfer from Chk **$40.00** | | | 190.44 |
| 7/28/08 | Online Banking transfer from Sav **$20.47** | | | 210.91 |
| 7/28/08 | CheckCard 0727 Wal-Mart | 115.79 | | 95.12 |
| 7/28/08 | Txu Energy | 37.83 | | 57.29 |
| 7/28/08 | CheckCard 0725 Walgreen | 37.19 | | 20.10 |
| 7/28/08 | Prepaid Legal | 17.00 | | 3.10 |
| 7/28/08 | CheckCard 0725 Walgreens | 16.11 | | -  13.01 |
| 7/28/08 | Prepaid Legal | 9.95 | | -  22.96 |
| 7/28/08 | CheckCard 0724 Wendy's | 4.29 | | -  27.25 |
| 7/28/08 | Overdraft Item Fee – Activity of 7/28 | | 35.00 | |
| 7/28/08 | Overdraft Item Fee – Activity of 7/28 | | 35.00 | |
| 7/28/08 | Overdraft Item Fee – Activity of 7/28 | | 35.00 | |
| | | **Total Fees:** | **$105.00** | |

116.    If Bank of America had not manipulated and reordered the James' transactions from highest to lowest, they would not have been assessed three overdraft fees.

117.    For instance, if Bank of America had posted the transactions from lowest to highest, the James would have been assessed only one overdraft fee instead of three:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 7/25/08: | | | $ 150.44 |
| Date Posted | Debit Description | | | |
| 7/28/08 | Online Banking transfer from Chk **$40.00** | | | 190.44 |
| 7/28/08 | Online Banking transfer from Sav **$20.47** | | | 210.91 |
| 7/28/08 | CheckCard 0724 Wendy's | 4.29 | | 206.62 |
| 7/28/08 | Prepaid Legal | 9.95 | | 196.67 |
| 7/28/08 | CheckCard 0725 Walgreens | 16.11 | | 180.56 |
| 7/28/08 | Prepaid Legal | 17.00 | | 163.56 |
| 7/28/08 | CheckCard 0725 Walgreen | 37.19 | | 126.37 |
| 7/28/08 | Txu Energy | 37.83 | | 88.54 |
| 7/28/08 | CheckCard 0727 Wal-Mart | 115.79 | | - 27.25 |
| 7/28/08 | Overdraft Item Fee – Activity of 7/28 | | 35.00 | |
| | | **Total Fees:** | **$ 35.00** | |

118.    Likewise, if Bank of America had posted the transactions in chronological order, the James would have been assessed only one overdraft fee instead of three:

**Balance Sheet if Debits Were Processed in Chronological Order**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 7/25/08: | | | $ 150.44 |
| Date of Transaction | Debit Description | | | |
| 7/28/08 | Online Banking transfer from Chk **$40.00** | | | 190.44 |
| 7/28/08 | Online Banking transfer from Sav **$20.47** | | | 210.91 |
| 7/24/08 | CheckCard 0724 Wendy's | 4.29 | | 206.62 |
| 7/25/08 | CheckCard 0725 Walgreens | 16.11 | | 190.51 |
| 7/25/08 | CheckCard 0725 Walgreen | 37.19 | | 153.32 |
| 7/27/08 | CheckCard 0727 Wal-Mart | 115.79 | | 37.53 |
| 7/28/08 | Prepaid Legal | 9.95 | | 27.58 |
| 7/28/08 | Prepaid Legal | 17.00 | | 10.58 |
| 7/28/08 | Txu Energy | 37.83 | | - 27.25 |
| 7/28/08 | Overdraft Item Fee – Activity of 7/28 | | 35.00 | |
| | | **Total Fees:** | **$ 35.00** | |

119.    Plaintiff Nelson Norman is a former checking account customer of Bank of America.

120.    In connection with his account, the Bank issued a debit card to Mr. Norman.

- 32 -

121.    Bank of America wrongfully charged Mr. Norman overdraft fees on multiple occasions.  By way of illustration, Mr. Norman was charged five overdraft fees on October 15, 2008, in the amount of $35.00 each, for a total of $175.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 10/14/08: | | | $ 272.80 |
| Date Posted | Debit Description | | | |
| 10/14/08 | Hsbc Credit | 300.00 | | - 27.20 |
| 10/14/08 | Bk of America ATM 10/13 | 100.00 | | - 127.20 |
| 10/14/08 | Bk of America ATM 10/12 | 60.00 | | - 187.20 |
| 10/14/08 | Bk of America ATM 10/13 | 60.00 | | - 247.20 |
| 10/14/08 | BK of America ATM 10/13 | 40.00 | | - 287.20 |
| 10/15/08 | Overdraft Fee – Activity of 10/14 | | 35.00 | |
| 10/15/08 | Overdraft Fee – Activity of 10/14 | | 35.00 | |
| 10/15/08 | Overdraft Fee - Activity of 10/14 | | 35.00 | |
| 10/15/08 | Overdraft Fee - Activity of 10/14 | | 35.00 | |
| 10/15/08 | Overdraft Fee - Activity of 10/14 | | 35.00 | |
| | | Total Fees: | $175.00 | |

122.    If Bank of America had not manipulated and reordered Mr. Norman's transactions from highest to lowest, he would not have been assessed five overdraft fees.

123.    For instance, if Bank of America had posted the transactions from lowest to highest, Mr. Norman would have been assessed only one overdraft fee instead of five:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 10/14/08: | | | **$ 272.80** |
| **Date Posted** | **Debit Description** | | | |
| 10/14/08 | BK of America ATM 10/13 | 40.00 | | 232.80 |
| 10/14/08 | Bk of America ATM 10/13 | 60.00 | | 172.80 |
| 10/14/08 | Bk of America ATM 10/12 | 60.00 | | 112.80 |
| 10/14/08 | Bk of America ATM 10/13 | 100.00 | | 12.80 |
| 10/14/08 | Hsbc Credit | 300.00 | | - 287.20 |
| 10/15/08 | Overdraft Fee | | 35.00 | |
| | | **Total Fees:** | **$ 35.00** | |

124.    Likewise, if Bank of America had posted the transactions in chronological order, Mr. Norman would have been assessed only one overdraft fee instead of five:

**Balance Sheet if Debits Were Processed in Chronological Order**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 10/14/08: | | | **$ 272.80** |
| **Date of Transaction** | **Debit Description** | | | |
| 10/12/08 | Bk of America ATM 10/12 | 60.00 | | 212.80 |
| 10/13/08 | BK of America ATM 10/13 | 40.00 | | 172.80 |
| 10/13/08 | Bk of America ATM 10/13 | 60.00 | | 112.80 |
| 10/13/08 | Bk of America ATM 10/13 | 100.00 | | 12.80 |
| 10/14/08 | Hsbc Credit | 300.00 | | - 287.20 |
| 10/15/08 | Overdraft Fee | | 35.00 | |
| | | **Total Fees:** | **$ 35.00** | |

125.    Plaintiff Carolyn Gipson is a current or former checking account customer of Bank of America.

126.    In connection with her account, the Bank issued a debit card to Ms. Gipson. Bank of America wrongfully charged Ms. Gipson overdraft fees on multiple occasions. By way of illustration, Ms. Gipson was charged thirteen overdraft fees on June 16 and 17, 2009, in the

amount of $35.00 each, for a total of $455.00.  Based on information and belief, the overdraft

fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | **Beginning Balance on 6/15/09:** | | | **$1,007.65** |
| **Date Posted** | **Debit Description** | | | |
| 6/15/09 | Check 6774 | 425.00 | | 582.65 |
| 6/15/09 | Check 6740 | 300.00 | | 282.65 |
| 6/15/09 | 21 Century Spdy | 174.02 | | 108.63 |
| 6/15/09 | Alltel | 115.34 | | -6.71 |
| 6/15/09 | Corner Market (6/13) | 41.95 | | -48.66 |
| 6/15/09 | Exxon Mobil (6/13) | 10.14 | | -58.80 |
| 6/15/09 | Taco Bell (6/13) | 9.25 | | -68.05 |
| 6/15/09 | Exxon Mobil(6/14) | 7.73 | | -75.78 |
| 6/15/09 | Raceway (6/11) | 5.73 | | -81.51 |
| 6/15/09 | Exxon Mobil (6/12) | 5.40 | | -86.91 |
| 6/15/09 | Subway (6/11) | 5.29 | | -92.20 |
| 6/15/09 | Church's (6/12) | 5.19 | | -97.39 |
| 6/15/09 | 21 Century Spdy | 3.25 | | -100.64 |
| 6/15/09 | Corner Market (6/13) | 2.00 | | -102.64 |
| 6/16/09 | Deposit $250.00 | | | 147.36 |
| 6/16/09 | Overdraft Fee | | 35.00 | 112.36 |
| 6/16/09 | Overdraft Fee | | 35.00 | 77.36 |
| 6/16/09 | Overdraft Fee | | 35.00 | 42.36 |
| 6/16/09 | Overdraft Fee | | 35.00 | 7.36 |
| 6/16/09 | Overdraft Fee | | 35.00 | -27.64 |
| 6/16/09 | Overdraft Fee | | 35.00 | -62.64 |
| 6/16/09 | Overdraft Fee | | 35.00 | -97.64 |
| 6/16/09 | Overdraft Fee | | 35.00 | -132.64 |
| 6/16/09 | Overdraft Fee | | 35.00 | -167.64 |
| 6/16/09 | Overdraft Fee | | 35.00 | -202.64 |
| 6/16/09 | Check 6775 | 68.90 | | -271.54 |
| 6/16/09 | Check 6777 | 21.95 | | -293.49 |
| 6/16/09 | CVS (6/15) | 4.86 | | -298.35 |
| 6/17/09 | Overdraft Fee | | 35.00 | -333.35 |
| 6/17/09 | Overdraft Fee | | 35.00 | -368.35 |
| 6/17/09 | Overdraft Fee | | 35.00 | -403.45 |
| 6/18/09 | Deposit (Tyler Pipe Company) $1,178.82 | | | 775.47 |
| | | | **Total Fees:** | **$455.00** |

127.    If Bank of America had not manipulated and reordered Ms. Gipson's transactions from highest to lowest, she would not have been assessed thirteen overdraft fees.

128.    For instance, if Bank of America had posted the transactions from lowest to highest, Ms. Gipson would have been assessed only one overdraft fee instead of thirteen:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 6/15/09:** | | | **$1,007.65** |
| **Date Posted** | **Debit Description** | | | |
| 6/15/09 | Corner Market (6/13) | 2.00 | | 1005.65 |
| 6/15/09 | 21 Century Spdy | 3.25 | | 1002.40 |
| 6/15/09 | Church's (6/12) | 5.19 | | 997.21 |
| 6/15/09 | Subway (6/11) | 5.29 | | 991.92 |
| 6/15/09 | Exxon Mobil (6/12) | 5.40 | | 986.52 |
| 6/15/09 | Raceway (6/11) | 5.73 | | 980.79 |
| 6/15/09 | Exxon Mobil(6/14) | 7.73 | | 973.06 |
| 6/15/09 | Taco Bell (6/13) | 9.25 | | 963.81 |
| 6/15/09 | Exxon Mobil (6/13) | 10.14 | | 953.67 |
| 6/15/09 | Corner Market (6/13) | 41.95 | | 911.72 |
| 6/15/09 | Alltel | 115.34 | | 796.38 |
| 6/15/09 | 21 Century Spdy | 174.02 | | 622.36 |
| 6/15/09 | Check 6740 | 300.00 | | 322.36 |
| 6/15/09 | Check 6774 | 425.00 | | **-102.64** |
| 6/16/09 | Deposit $250.00 | | | 147.36 |
| 6/16/09 | Overdraft Fee | | 35.00 | 112.36 |
| 6/16/09 | CVS (6/15) | 4.86 | | 107.50 |
| 6/16/09 | Check 6777 | 21.95 | | 85.55 |
| 6/16/09 | Check 6775 | 68.90 | | 16.65 |
| 6/18/09 | Deposit (Tyler Pipe Company) $1,178.82 | | | 1,195.47 |
| | | **Total Fees:** | **$  35.00** | |

129.     Likewise, if Bank of America had posted the transactions in chronological order,

Ms. Gipson would have been assessed only five overdraft fees instead of thirteen:

### Balance Sheet if Debits Were Processed in Chronological Order

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 06/15/09: | | | $1,007.65 |
| Date of Transaction | Debit Description | | | |
| 6/11/09 | Raceway | 5.73 | | 1001.92 |
| 6/11/09 | Subway | 5.29 | | 996.63 |
| 6/12/09 | Exxon Mobil | 5.40 | | 991.23 |
| 6/12/09 | Church's | 5.19 | | 986.04 |
| 6/13/09 | Corner Market | 2.00 | | 984.04 |
| 6/13/09 | Exxon Mobil | 10.14 | | 973.39 |
| 6/13/09 | Taco Bell | 9.25 | | 964.65 |
| 6/13/09 | Corner Market | 41.95 | | 922.70 |
| 6/14/09 | Exxon Mobil | 7.73 | | 914.97 |
| 6/15/09 | Check 6774 | 425.00 | | 489.97 |
| 6/15/09 | Check 6740 | 300.00 | | 189.97 |
| 6/15/09 | 21 Century Spdy | 174.02 | | 15.95 |
| 6/15/09 | Alltel | 115.34 | | -99.39 |
| 6/15/09 | 21 Century Spdy | 3.25 | | -102.64 |
| 6/15/09 | CVS | 4.86 | | -107.50 |
| 6/16/09 | Deposit $250.00 | | | 142.50 |
| 6/16/09 | Overdraft Fee | | 35.00 | 107.50 |
| 6/16/09 | Overdraft Fee | | 35.00 | 72.50 |
| 6/16/09 | Overdraft Fee | | 35.00 | 37.50 |
| 6/16/09 | Check 6775 | 68.90 | | -31.40 |
| 6/16/09 | Check 6777 | 21.95 | | -53.35 |
| 6/17/09 | Overdraft Fee | | 35.00 | -88.35 |
| 6/17/09 | Overdraft Fee | | 35.00 | -123.35 |
| 6/18/09 | Deposit (Tyler Pipe Company) $1,178.82 | | | 1055.47 |
| | | Total Fees: | $175.00 | |

130.     Plaintiff Alvin Richardson is a current checking account customer of Bank of

America.

131.     In connection with his account, the Bank issued a debit card to Mr. Richardson.

132.   Bank of America wrongfully charged Mr. Richardson overdraft fees on multiple occasions.  By way of illustration, Mr. Richardson was charged two overdraft fees on January 14, 2009, in the amount of $35.00 each, for a total of $70.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | **Beginning Balance on 1/12/09:** |  |  | **$ 203.77** |
| **Date Posted** | **Debit Description** |  |  |  |
| 1/13/09 | Check 2820 | 258.00 |  | - 54.23 |
| 1/13/09 | Bk of America ATM 01/13 Withdrwl | 50.00 |  | -104.23 |
| 1/14/09 | Overdraft Fee – Activity of 1/13 |  | 35.00 |  |
| 1/14/09 | Overdraft Fee – Activity of 1/13 |  | 35.00 |  |
|  |  | **Total Fees:** | **$ 70.00** |  |

133.   If Bank of America had not manipulated and reordered Mr. Richardson's transactions from highest to lowest, he would not have been assessed two overdraft fees.

134.   For instance, if Bank of America had posted the transactions from lowest to highest, Mr. Richardson would have been assessed only one overdraft fee instead of two:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | **Beginning Balance on 1/12/09:** |  |  | **$ 203.77** |
| **Date Posted** | **Debit Description** |  |  |  |
| 1/13/09 | Bk of America ATM 01/13 Withdrwl | 50.00 |  | 153.77 |
| 1/13/09 | Check 2820 | 258.00 |  | -104.23 |
| 1/13/09 | Overdraft Fee |  | 35.00 |  |
|  |  | **Total Fees:** | **$ 35.00** |  |

135.    Likewise, if Bank of America had posted the transactions in chronological order, Mr. Richardson would have been assessed only one overdraft fee instead of two:

### Balance Sheet if Debits Were Processed in Chronological Order

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 1/12/09: | | | $ 203.77 |
| Date of Transaction | Debit Description | | | |
| 1/13/09 | Bk of America ATM 01/13 Withdrwl | 50.00 | | 153.77 |
| 1/13/09 | Check 2820 | 258.00 | | -104.23 |
| 1/13/09 | Overdraft Fee | | 35.00 | |
| | | Total Fees: | $35.00 | |

136.    Plaintiff Kelly Weatherspoon is a current checking account customer of Bank of America.

137.    In connection with her account, the Bank issued a debit card to Ms. Weatherspoon.

138.    Bank of America wrongfully charged Ms. Weatherspoon overdraft fees on multiple occasions.  By way of illustration, Ms. Weatherspoon was charged five overdraft fees on January 5 and 6, 2009, consisting of one overdraft protection transfer fee of $10.00 and four overdraft fees of $35.00, for a total of $150.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

### Balance Sheet per Bank of America Reordering Scheme
### (Debits Processed from Highest to Lowest)

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 1/02/09:** | | | **$ 635.53** |
| **Date Posted** | **Debit Description** | | | |
| 1/05/09 | Overdraft Protection From (deposit **$50.82**) | | | 686.35 |
| 1/05/09 | Triad Pymt | 394.00 | | 292.35 |
| 1/05/09 | Speedpay-Triad - | 5.00 | | 287.35 |
| 1/05/09 | CheckCard 01/02 | 272.21 | | 15.14 |
| 1/05/09 | Pep Boys 01/04 | 42.45 | | - 27.31 |
| 1/05/09 | CheckCard 0102 Overstock.Com | 40.99 | | - 68.30 |
| 1/05/09 | CheckCard 0101 Cal City | 25.14 | | - 93.44 |
| 1/05/09 | Walgreen Company | 9.09 | | -102.53 |
| 1/05/09 | Gg Fish South 01/03 | 6.66 | | -109.19 |
| 1/05/09 | Walgreen Compa 01/05 | 3.11 | | -112.30 |
| 1/05/09 | Overdraft Protection Transfer Fee | | 10.00 | -122.30 |
| 1/06/09 | NSF: Returned Item Fee – Activity of 1/05 | | 35.00 | |
| 1/06/09 | Overdraft Item Fee – Activity of 1/05 | | 35.00 | |
| 1/06/09 | Overdraft Item Fee – Activity of 1/05 | | 35.00 | |
| 1/06/09 | Overdraft Item Fee – Activity of 1/05 | | 35.00 | |
| | | **Total Fees:** | **$150.00** | |

139.    If Bank of America had not manipulated and reordered Ms. Weatherspoon's transactions from highest to lowest, she would not have been assessed five overdraft fees.

- 40 -

140.   For instance, if Bank of America had posted the transactions from lowest to highest, Ms. Weatherspoon would have been assessed only two overdraft fees, including the smaller overdraft protection transfer fee, instead of five fees:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 1/02/09: | | | $ 635.53 |
| Date Posted | Debit Description | | | |
| 1/05/09 | Overdraft Protection From (deposit **$50.82**) | | | 686.35 |
| 1/05/09 | Walgreen Compa 01/05 | 3.11 | | 683.24 |
| 1/05/09 | Speedpay-Triad - | 5.00 | | 678.24 |
| 1/05/09 | Gg Fish South 01/03 | 6.66 | | 671.58 |
| 1/05/09 | Walgreen Company 1/05 | 9.09 | | 662.49 |
| 1/05/09 | CheckCard 0101 Cal City | 25.14 | | 637.35 |
| 1/05/09 | CheckCard 0102 Overstock.Com | 40.99 | | 596.36 |
| 1/05/09 | Pep Boys 01/04 | 42.45 | | 553.91 |
| 1/05/09 | CheckCard 01/02 | 272.21 | | 281.70 |
| 1/05/09 | Triad Pymt | 394.00 | | -112.30 |
| 1/05/09 | Overdraft Protection Transfer Fee | | 10.00 | -122.30 |
| 1/06/09 | Overdraft Item Fee – Activity of 1/05 | | 35.00 | |
| | | **Total Fees:** | **$ 45.00** | |

141. Likewise, if Bank of America had posted the transactions in chronological order, Ms. Weatherspoon would have been assessed only three overdraft fees, including the smaller overdraft protection transfer fee, instead of five fees:

**Balance Sheet if Debits Were Processed in Chronological Order**

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 1/02/09:** | | | **$ 635.53** |
| **Date of Transaction** | **Debit Description** | | | |
| 1/05/09 | Overdraft Protection From (deposit **$50.82**) | | | 686.35 |
| 1/01/09 | CheckCard 0101 Cal City | 25.14 | | 661.21 |
| 1/02/09 | CheckCard 0102 Overstock.Com | 40.99 | | 620.22 |
| 1/02/09 | CheckCard 01/02 | 272.21 | | 348.01 |
| 1/03/09 | Gg Fish South 01/03 | 6.66 | | 341.35 |
| 1/04/09 | Pep Boys 01/04 | 42.45 | | 298.90 |
| 1/05/09 | Walgreen Compa 01/05 | 3.11 | | 295.79 |
| 1/05/09 | Walgreen Company 1/05 | 9.09 | | 286.70 |
| 1/05/09 | Triad Pymt | 394.00 | | -107.30 |
| 1/05/09 | Speedpay-Triad - | 5.00 | | -112.30 |
| 1/05/09 | Overdraft Protection Transfer Fee | | 10.00 | -122.30 |
| 1/06/09 | Overdraft Item Fee – Activity of 1/05 | | 35.00 | |
| 1/06/09 | Overdraft Item Fee – Activity of 1/05 | | 35.00 | |
| | | **Total Fees:** | **$ 80.00** | |

142. Plaintiff Haneef Haqq is a former checking account customer of Bank of America.

143. In connection with his account, the Bank issued a debit card to Mr. Haqq.

144.    Bank of America wrongfully charged Mr. Haqq overdraft fees on multiple occasions.  By way of illustration, Mr. Haqq was charged eight overdraft fees on June 22 and 23, 2009, consisting of one overdraft protection transfer fee of $10.00 and seven overdraft fees of $35.00, for a total of $255.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

### Balance Sheet per Bank of America Reordering Scheme
### (Debits Processed from Highest to Lowest)

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 6/22/09: | | | $ 572.90 |
| Date Posted | Debit Description | | | |
| 6/22/09 | Check 5017 | 200.00 | | 372.90 |
| 6/22/09 | Geico | 113.12 | | 259.78 |
| 6/22/09 | Wal-Mart #3709 06/21 | 80.00 | | 179.78 |
| 6/22/09 | Cardtronics CC 06/19 | 61.50 | | 118.28 |
| 6/22/09 | CheckCard 0619 | 49.51 | | 68.77 |
| 6/22/09 | Sou Blockbuster 06/21 | 40.61 | | 28.16 |
| 6/22/09 | L.A. Fitness | 34.99 | | - 6.83 |
| 6/22/09 | Fidelity Bank 06/20 | 22.00 | | - 28.83 |
| 6/22/09 | CheckCard 0620 Wendys | 8.40 | | - 37.23 |
| 6/22/09 | CheckCard 0620 Moes | 7.73 | | - 44.96 |
| 6/22/09 | CheckCard 0618 | 6.87 | | - 51.83 |
| 6/22/09 | CheckCard 0619 Quiznos | 6.24 | | - 58.07 |
| 6/22/09 | CheckCard 0619 Quiznos | 4.56 | | - 62.63 |
| 6/22/09 | CheckCard 0618 Quiznos | 4.22 | | - 66.85 |
| 6/22/09 | Overdraft Protection Transfer Fee | | 10.00 | - 76.85 |
| 6/22/09 | Cardtronics CC 06/19 | 2.00 | | - 78.85 |
| 6/22/09 | Fidelity Bank 06/20 | 2.00 | | - 80.85 |
| 6/23/09 | Overdraft Item Fee for Activity of 06/22 | | 35.00 | |
| 6/23/09 | Overdraft Item Fee for Activity of 06/22 | | 35.00 | |
| 6/23/09 | Overdraft Item Fee for Activity of 06/22 | | 35.00 | |
| 6/23/09 | Overdraft Item Fee for Activity of 06/22 | | 35.00 | |
| 6/23/09 | Overdraft Item Fee for Activity of 06/22 | | 35.00 | |
| 6/23/09 | Overdraft Item Fee for Activity of 06/22 | | 35.00 | |
| 6/23/09 | Overdraft Item Fee for Activity of 06/22 | | 35.00 | |
| | Total Fees: | $255.00 | | |

- 43 -

145.    If Bank of America had not manipulated and reordered Mr. Haqq's transactions from highest to lowest, he would not have been assessed eight overdraft fees.

146.    For instance, if Bank of America had posted the transactions from lowest to highest, Mr. Haqq would have been assessed only two overdraft fees, including the smaller overdraft protection transfer fee, instead of eight fees:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 6/22/09: | | | $ 572.90 |
| Date Posted | Debit Description | | | |
| 6/22/09 | Fidelity Bank 06/20 | 2.00 | | 570.90 |
| 6/22/09 | Cardtronics CC 06/19 | 2.00 | | 568.90 |
| 6/22/09 | CheckCard 0618 Quiznos | 4.22 | | 564.68 |
| 6/22/09 | CheckCard 0619 Quiznos | 4.56 | | 560.12 |
| 6/22/09 | CheckCard 0619 Quiznos | 6.24 | | 553.88 |
| 6/22/09 | CheckCard 0618 | 6.87 | | 547.01 |
| 6/22/09 | CheckCard 0620 Moes | 7.73 | | 539.28 |
| 6/22/09 | CheckCard 0620 Wendys | 8.40 | | 530.88 |
| 6/22/09 | Fidelity Bank 06/20 | 22.00 | | 508.88 |
| 6/22/09 | L.A. Fitness | 34.99 | | 473.89 |
| 6/22/09 | Sou Blockbuster 06/21 | 40.61 | | 433.28 |
| 6/22/09 | CheckCard 0619 | 49.51 | | 383.77 |
| 6/22/09 | Cardtronics CC 06/19 | 61.50 | | 322.27 |
| 6/22/09 | Wal-Mart #3709 06/21 | 80.00 | | 242.27 |
| 6/22/09 | Geico | 113.12 | | 129.15 |
| 6/22/09 | Check 5017 | 200.00 | | - 70.85 |
| 6/22/09 | Overdraft Protection Transfer Fee | | 10.00 | - 80.85 |
| 6/23/09 | Overdraft Item Fee | | 35.00 | |
| | | Total Fees: | $ 45.00 | |

147.     Likewise, if Bank of America had posted the transactions in chronological order,

Mr. Haqq would have been assessed only three overdraft fees, including the smaller overdraft

protection transfer fee, instead of eight fees:

**Balance Sheet if Debits Were Processed in Chronological Order**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 6/22/09: | | | **$ 572.90** |
| Date of Transaction | Debit Description | | | |
| 6/22/09 | CheckCard 0618 | 6.87 | | 566.03 |
| 6/22/09 | CheckCard 0618 Quiznos | 4.22 | | 561.81 |
| 6/22/09 | Cardtronics CC 06/19 | 61.50 | | 500.31 |
| 6/22/09 | CheckCard 0619 | 49.51 | | 450.80 |
| 6/22/09 | CheckCard 0619 Quiznos | 6.24 | | 444.56 |
| 6/22/09 | CheckCard 0619 Quiznos | 4.56 | | 440.00 |
| 6/22/09 | Cardtronics CC 06/19 | 2.00 | | 438.00 |
| 6/22/09 | Fidelity Bank 06/20 | 22.00 | | 416.00 |
| 6/22/09 | CheckCard 0620 Wendys | 8.40 | | 407.60 |
| 6/22/09 | CheckCard 0620 Moes | 7.73 | | 399.87 |
| 6/22/09 | Fidelity Bank 06/20 | 2.00 | | 397.87 |
| 6/22/09 | Wal-Mart #3709 06/21 | 80.00 | | 317.87 |
| 6/22/09 | Sou Blockbuster 06/21 | 40.61 | | 277.26 |
| 6/22/09 | Check 5017 | 200.00 | | 77.26 |
| 6/22/09 | Geico | 113.12 | | - 35.86 |
| 6/22/09 | L.A. Fitness | 34.99 | | - 70.85 |
| 6/22/09 | Overdraft Protection Transfer Fee | | 10.00 | - 80.85 |
| 6/23/09 | Overdraft Item Fee | | 35.00 | |
| 6/23/09 | Overdraft Item Fee | | 35.00 | |
| | | **Total Fees:** | **$ 80.00** | |

148.     Plaintiffs Dawyn and Ronald Palmer are former checking account customers of

Bank of America; they maintain a joint account.

149.     In connection with their account, the Palmers were issued a debit card by the

Bank.

- 45 -

150.    Bank of America wrongfully charged the Palmers overdraft fees on multiple occasions.  By way of illustration, the Palmers were charged two overdraft fees on March 12, 2008, in the amount of $35.00 each, for a total of $70.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

### Balance Sheet per Bank of America Reordering Scheme
### (Debits Processed from Highest to Lowest)

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | Beginning Balance on 3/10/08: |  |  | **$ 172.49** |
| **Date Posted** | **Debit Description** |  |  |  |
| 3/11/08 | Check #8308 | 156.00 |  | 16.49 |
| 3/11/08 | CheckCard 0308 Don Pedro Mexican Rest | 6.98 |  | 9.51 |
| 3/11/08 | Wal-Mart 03/11 | 6.03 |  | 3.48 |
| 3/11/08 | CheckCard 0310 McDonald's | 5.80 |  | - 2.32 |
| 3/11/08 | CheckCard 0309 Hardees | 3.25 |  | - 5.57 |
| 3/12/08 | Overdraft Item Fee – Activity of 03/11 |  | 35.00 |  |
| 3/12/08 | Overdraft Item Fee – Activity of 03/11 |  | 35.00 |  |
|  |  | **Total Fees:** | **$70.00** |  |

151.    If Bank of America had not manipulated and reordered the Palmers' transactions from highest to lowest, they would not have been assessed two overdraft fees.

152.    For instance, if Bank of America had posted the transactions from lowest to highest, the Palmers would have been assessed only one overdraft fee instead of two:

### Balance Sheet if Debits Were Processed from Lowest to Highest

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | Beginning Balance on 3/10/08: |  |  | **$ 172.49** |
| **Date Posted** | **Debit Description** |  |  |  |
| 3/11/08 | CheckCard 0309 Hardees | 3.25 |  | 169.24 |
| 3/11/08 | CheckCard 0310 McDonald's | 5.80 |  | 163.44 |
| 3/11/08 | Wal-Mart 03/11 | 6.03 |  | 157.41 |
| 3/11/08 | CheckCard 0308 Don Pedro Mexican Rest | 6.98 |  | 150.43 |
| 3/11/08 | Check #8308 | 156.00 |  | - 5.57 |
| 3/12/08 | Overdraft Item Fee – Activity of 03/11 |  | 35.00 |  |
|  |  | **Total Fees:** | **$ 35.00** |  |

153.    Likewise, if Bank of America had posted the transactions in chronological order, the Palmers would have been assessed only one overdraft fee instead of two:

**Balance Sheet if Debits Were Processed in Chronological Order**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | **Beginning Balance on 3/10/08:** |  |  | **$ 172.49** |
| **Date of Transaction** | **Debit Description** |  |  |  |
| 3/08/08 | CheckCard 0308 Don Pedro Mexican Rest | 6.98 |  | 165.51 |
| 3/09/08 | CheckCard 0309 Hardees | 3.25 |  | 162.26 |
| 3/10/08 | CheckCard 0310 McDonald's | 5.80 |  | 156.46 |
| 3/11/08 | Wal-Mart 03/11 | 6.03 |  | 150.43 |
| 3/11/08 | Check #8308 | 156.00 |  | - 5.57 |
| 3/12/08 | Overdraft Item Fee – Activity of 03/11 |  | 35.00 |  |
|  |  | **Total Fees:** | **$ 35.00** |  |

154.    Plaintiff William W. Powell, Jr. is a current or former checking account customer of Bank of America.

155.    In connection with his account, the Bank issued a debit card to Mr. Powell.

156.     Bank of America wrongfully charged Mr. Powell overdraft fees on multiple occasions.  By way of illustration, Mr. Powell was charged three overdraft fees on March 18, 2008, in the amount of $35.00 each, for a total of $105.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 3/14/08: | | | $ 383.96 |
| Date Posted | Debit Description | | | |
| 3/17/08 | CheckCard 0312 Tire Depo | 192.68 | | 191.28 |
| 3/17/08 | Wal-Mart 03/15 | 64.82 | | 126.46 |
| 3/17/08 | Sou The Home D 03/16 | 52.60 | | 73.86 |
| 3/17/08 | Publix 03/16 | 24.31 | | 49.55 |
| 3/17/08 | Exxonmobil POS 03/17 | 20.00 | | 29.55 |
| 3/17/08 | CheckCard 0314 Taqueria Del Sol | 17.56 | | 11.99 |
| 3/17/08 | CheckCard 0315 Fitness | 12.00 | | - 0.01 |
| 3/17/08 | CheckCard 0316 Ultra Car Wash | 3.99 | | - 4.00 |
| 3/18/08 | Overdraft Item Fee – Activity of 03/17 | | 35.00 | |
| 3/18/08 | Overdraft Item Fee – Activity of 03/17 | | 35.00 | |
| 3/18/08 | Overdraft Item Fee – Activity of 03/17 | | 35.00 | |
| | | Total Fees: | $105.00 | |

157.     If Bank of America had not manipulated and reordered Mr. Powell's transactions from highest to lowest, he would not have been assessed three overdraft fees.

158.    For instance, if Bank of America had posted the transactions from lowest to highest, Mr. Powell would have been assessed only one overdraft fee instead of three:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 3/14/08: | | | $ 383.96 |
| Date Posted | Debit Description | | | |
| 3/17/08 | CheckCard 0316 Ultra Car Wash | 3.99 | | 379.97 |
| 3/17/08 | CheckCard 0315 Fitness | 12.00 | | 367.97 |
| 3/17/08 | CheckCard 0314 Taqueria Del Sol | 17.56 | | 350.41 |
| 3/17/08 | Exxonmobil POS 03/17 | 20.00 | | 330.41 |
| 3/17/08 | Publix 03/16 | 24.31 | | 306.10 |
| 3/17/08 | Sou The Home D 03/16 | 52.60 | | 253.50 |
| 3/17/08 | Wal-Mart 03/15 | 64.82 | | 188.68 |
| 3/17/08 | CheckCard 0312 Tire Depo | 192.68 | | -   4.00 |
| 3/18/08 | Overdraft Item Fee | | 35.00 | |
| | | Total Fees: | $ 35.00 | |

159.    Likewise, if Bank of America had posted the transactions in chronological order, Mr. Powell would have been assessed only one overdraft fee instead of three:

### Balance Sheet if Debits Were Processed in Chronological Order

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 3/14/08: | | | $ 383.96 |
| Date of Transaction | Debit Description | | | |
| 3/12/08 | CheckCard 0312 Tire Depo | 192.68 | | 191.28 |
| 3/14/08 | CheckCard 0314 Taqueria Del Sol | 17.56 | | 173.72 |
| 3/15/08 | CheckCard 0315 Fitness | 12.00 | | 161.72 |
| 3/15/08 | Wal-Mart 03/15 | 64.82 | | 96.90 |
| 3/16/08 | CheckCard 0316 Ultra Car Wash | 3.99 | | 92.91 |
| 3/16/08 | Publix 03/16 | 24.31 | | 68.60 |
| 3/16/08 | Sou The Home D 03/16 | 52.60 | | 16.00 |
| 3/17/08 | Exxonmobil POS 03/17 | 20.00 | | -   4.00 |
| 3/18/08 | Overdraft Item Fee | | 35.00 | |
| | | Total Fees: | $ 35.00 | |

160.    Plaintiff Elona Wagner is a current or former checking account customer of Bank of America.

161.    In connection with her account, the Bank issued a debit card to Ms. Wagner.

162.    Bank of America wrongfully charged Ms. Wagner overdraft fees on multiple occasions.  By way of illustration, Ms. Wagner was charged three overdraft fees on February 2, 2009, in the amount of $35.00 each, for a total of $105.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 2/02/09: | | | **$ 51.04** |
| **Date Posted** | **Debit Description** | | | |
| 2/02/09 | FPL Direct Debit – Elec Pymt | 203.85 | | -152.81 |
| 2/02/09 | CheckCard 0130 Ives Dairy Animal Clnc | 15.00 | | -167.81 |
| 2/02/09 | CheckCard 0130 Mario The Baker | 10.00 | | -177.81 |
| 2/02/09 | Overdraft Fee – Activity of 02/02 | | 35.00 | |
| 2/02/09 | Overdraft Fee – Activity of 02/02 | | 35.00 | |
| 2/02/09 | Overdraft Fee – Activity of 02/02 | | 35.00 | |
| | | **Total Fees:** | **$105.00** | |

163.    If Bank of America had not manipulated and reordered Ms. Wagner's transactions from highest to lowest, she would not have been assessed three overdraft fees.

164.    For instance, if Bank of America had posted the transactions from lowest to highest, Ms. Wagner would have been assessed only one overdraft fee instead of three:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 02/02/09: | | | $ 51.04 |
| Date Posted | Debit Description | | | |
| 2/02/09 | CheckCard 0130 Mario The Baker | 10.00 | | 41.04 |
| 2/02/09 | CheckCard 0130 Ives Dairy Animal Clnc | 15.00 | | 26.04 |
| 2/02/09 | FPL Direct Debit – Elec Pymt | 203.85 | | -177.81 |
| 2/02/09 | Overdraft Fee – Activity of 02/02 | | 35.00 | |
| | | Total Fees: | $ 35.00 | |

165.    Likewise, if Bank of America had posted the transactions in chronological order, Ms. Wagner would have been assessed only one overdraft fee instead of three:

**Balance Sheet if Debits Were Processed in Chronological Order**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 2/02/09: | | | $ 51.04 |
| Date of Transaction | Debit Description | | | |
| 1/30/09 | CheckCard 0130 Ives Dairy Animal Clnc | 15.00 | | 36.04 |
| 1/30/09 | CheckCard 0130 Mario The Baker | 10.00 | | 26.04 |
| 2/02/09 | FPL Direct Debit – Elec Pymt | 203.85 | | -177.81 |
| 2/02/09 | Overdraft Fees | | 35.00 | |
| | | Total Fees: | $35.00 | |

166.    Plaintiff William Werking is a current checking account customer of Bank of America.

167.    In connection with his account, the Bank issued a debit card to Mr. Werking.

168.    Bank of America wrongfully charged Mr. Werking overdraft fees on multiple occasions.  By way of illustration, Mr. Werking was charged five overdraft fees on February 12, 2008, in the amount of $35.00 each, for a total of $175.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Bank of America Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | **Beginning Balance on 02/08/08:** | | | **$ 62.26** |
| **Date Posted** | **Debit Description** | | | |
| 2/11/08 | Check #330 | 200.00 | | -137.74 |
| 2/11/08 | Ultron, Inc. 2/11 | 122.00 | | -259.74 |
| 2/11/08 | Bk of America ATM 2/11 | 100.00 | | -359.74 |
| 2/11/08 | BK of America ATM 2/09 | 50.00 | | -409.74 |
| 2/11/08 | Ultron, Inc. 2/11 | 22.00 | | -431.74 |
| 2/11/08 | CheckCard 0208 | 5.95 | | -437.69 |
| 2/11/08 | Online Banking Transfer from Chk 6649 **$250 +** | | | -187.69 |
| 2/11/08 | Ultron, Inc. 02/11 withdrwl | | 2.00 | -189.69 |
| 2/11/08 | Ultron, Inc. 02/11 withdrwl | | 2.00 | -191.69 |
| 2/12/08 | Overdraft Fee for Activity of 02/11 | | 35.00 | |
| 2/12/08 | Overdraft Fee – Activity of 02/11 | | 35.00 | |
| 2/12/08 | Overdraft Fee – Activity of 02/11 | | 35.00 | |
| 2/12/08 | Overdraft Fee – Activity of 02/11 | | 35.00 | |
| 2/12/08 | Overdraft Fee – Activity of 02/11 | | 35.00 | |
| | **Total Overdraft Fees:** | | **$175.00** | |

169.    If Bank of America had not manipulated and reordered Mr. Werking's transactions from highest to lowest, he would not have been assessed five overdraft fees.

170.   For instance, if Bank of America had posted the transactions from lowest to highest, Mr. Werking would have been assessed only one overdraft fee instead of five:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 02/08/08:** | | | **$ 62.26** |
| **Date Posted** | **Debit Description** | | | |
| 2/11/08 | Deposit $250.00 | | | 312.26 |
| 2/11/08 | CheckCard 0208 | 5.95 | | 306.31 |
| 2/11/08 | Ultron, Inc. 2/11 | 22.00 | | 284.31 |
| 2/11/08 | Ultron, Inc. 02/11 Withdrwl Fee | 2.00 | | 282.31 |
| 2/11/08 | BK of America ATM 2/09 | 50.00 | | 232.31 |
| 2/11/08 | Bk of America ATM 2/11 | 100.00 | | 132.31 |
| 2/11/08 | Ultron, Inc. 2/11 | 122.00 | | 10.31 |
| 2/11/08 | Ultron, Inc. 02/11 Withdrwl Fee | 2.00 | | 8.31 |
| 2/11/08 | Check #330 | 200.00 | | -191.69 |
| 2/11/08 | Overdraft Fee | | -35.00 | |
| | | **Total Fees:** | **$35.00** | |

171.   Likewise, if Bank of America had posted the transactions in chronological order, Mr. Werking would have been assessed only one overdraft fee instead of five:

### Balance Sheet if Debits Were Processed in Chronological Order

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 02/08/08:** | | | **$ 62.26** |
| **Date of Transaction** | **Debit Description** | | | |
| 2/11/08 | Online Banking Transfer from Chk 6649 **$250 +** | | | 312.26 |
| 2/08/08 | CheckCard 0208 | 5.95 | | 306.31 |
| 2/09/08 | BK of America ATM 2/09 | 50.00 | | 256.31 |
| 2/11/08 | Ultron, Inc. 2/11 | 22.00 | | 234.31 |
| 2/11/08 | Ultron, Inc. 02/11 Withdrwl Fee | 2.00 | | 232.31 |
| 2/11/08 | Bk of America ATM 2/11 | 100.00 | | 132.31 |
| 2/11/08 | Ultron, Inc. 2/11 | 122.00 | | 10.31 |
| 2/11/08 | Ultron, Inc. 02/11 Withdrwl Fee | 2.00 | | 8.31 |
| 2/11/08 | Check #330 | 200.00 | | -191.69 |
| 2/12/08 | Overdraft Fee – Activity of 02/11 | | 35.00 | |
| | | **Total Fees:** | **$ 35.00** | |

172.    Additionally, Plaintiffs Richard Blair, Marco Chelo, Robert Conroy, Joi Holloway, John and Anya (Williams) Kopp, Deborah and Therese Marshall, Jason Molitor, Bruce and Maria Mosely, and Caroline Sherman are all current and/or former checking account customers of Bank of America.

173.    In connection with their accounts, the Bank issued debit cards to Mr. Blair, Mr. Chelo, Mr. Conroy, Ms. Holloway, and Mr. and Mrs. Kopp, Mrs. and Miss Marshall, Mr. Molitor, Mr. and Mrs. Mosely, and Ms. Sherman.

174.    Bank of America also wrongfully charged Mr. Blair, Mr. Chelo, Mr. Conroy, Ms. Holloway, Mr. and Mrs. Kopp, Mrs. and Miss Marshall, Mr. Molitor, Mr. and Mrs. Mosely, and Ms. Sherman overdraft fees on multiple occasions.  These wrongful overdraft fees occurred as a result of the Bank's manipulation and re-ordering of these plaintiffs' debit card transactions.

175.    Bank of America failed to notify any of these Plaintiffs that they could be assessed overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, Bank of America never notified these Plaintiffs, at the time they executed the purported insufficient funds transactions described above, that their checking account were overdrawn or that they would be charged an overdraft fee as a result of the transactions.  Furthermore, Bank of America paid, rather than returned, all of the debit card charges described above, even though Plaintiffs' accounts purportedly lacked sufficient funds to cover the transactions.

176.    The overdraft charges assesed by Plaintiffs are representative of hundreds of millions of dollars of overdraft fees that Bank of America wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially egregious considering the

fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

### J.    The Damages Sustained by Plaintiffs and the Classes

177.    As shown by these examples, Bank of America's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account.  In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."  *Id*.

178.    According to rules proposed by the Agencies, "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

179.    Thus, as a consequence of Bank of America's overdraft policies and practices, Plaintiffs and the Classes have been wrongfully forced to pay overdraft fees.  Bank of America has improperly deprived Plaintiffs and the Classes of significant funds, causing ascertainable monetary losses and damages.

180.   As a consequence of Bank of America's improper overdraft fees, Bank of America has wrongfully deprived Plaintiffs and the Classes of funds to which it had no legitimate claim.

181.   Plaintiffs had sufficient funds to cover at least some of the transactions for which they and the Classes were charged overdraft fees.  Plaintiffs and members of the Classes either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Bank of America could impose these wrongful charges.  In many instances, Bank of America's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiffs and Class members.

182.   All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

### FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing[2]
### (On Behalf of the National Class)

183.   Plaintiffs repeat paragraphs 1 through 182 above.

184.   Plaintiffs and Bank of America have contracted for bank account deposit, checking, ATM and debit card services, as embodied in Bank of America's Deposit Agreement and related documentation.

185.   Under the laws of the states where Bank of America does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common

---

[2]  Florida and certain other states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.  For the sake of convenience in this multi-district litigation, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

186.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

187.   Since at least 2003, Bank of America has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

188.   Plaintiffs and the National Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

189.   Plaintiffs and members of the National Class have sustained damages as a result of Bank of America's breach of the covenant of good faith and fair dealing.

**SECOND CLAIM FOR RELIEF**
**Unconscionability**
**(On Behalf of the National Class)**

190.   Plaintiffs repeat paragraphs 1 through 182 above.

191.   Bank of America's overdraft policies and practices are substantively and procedurally unconscionable in the following respects, among others:

a.      The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Deposit Agreement and related documents, including the Fee Schedule and Card Agreement, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, the Fee Schedule, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Bank of America *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

192.    Considering the great business acumen and experience of Bank of America in relation to Plaintiffs and the National Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the

oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

193.    The imposition of overdraft charges which exceed the amount overdrawn (*e.g*., the imposition of a $35 charge on an overdraft of less than $35) is itself unconscionable.  Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

194.    Plaintiffs and members of the National Class have sustained damages as a result of Bank of America's unconscionable policies and practices as alleged herein.

### THIRD CLAIM FOR RELIEF
### Conversion
### (On Behalf of the National Class)

195.    Plaintiffs repeat paragraphs 1 through 182 above.

196.    Bank of America had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its  own wrongful acts.

197.    Bank of America has wrongfully collected overdraft fees from Plaintiffs and the members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

198.    Bank of America has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Class, without legal justification.

199.    Bank of America continues to retain these funds unlawfully without the consent of Plaintiffs or members of the National Class.

200.    Bank of America intends to permanently deprive Plaintiffs and the members of the National Class of these funds.

201.    These funds are properly owned by Plaintiffs and the members of the National Class, not Bank of America, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the National Class.

202.    Plaintiffs and the members of the National Class are entitled to the immediate possession of these funds.

203.    Bank of America has wrongfully converted these specific and readily identifiable funds.

204.    Bank of America's wrongful conduct is continuing.

205.    As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Class have suffered and continue to suffer damages.

206.    By reason of the foregoing, Plaintiff and the members of the National Class are entitled to recover from Bank of America all damages and costs permitted by law, including all amounts that Bank of America has wrongfully converted.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the National Class)**

207.    Plaintiffs repeat paragraphs 1 through 182 above.

208.    Plaintiffs, on behalf of themselves and the National Class, assert a common law claim for unjust enrichment.

209.    By means of Bank of America's wrongful conduct alleged herein, Bank of America knowingly provides banking services to Plaintiffs and members of the National Class that are unfair, unconscionable, and oppressive.

210.    Bank of America knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National Class.  In so doing, Bank of America acted with conscious disregard for the rights of Plaintiffs and members of the National Class.

211.    As a result of Bank of America's wrongful conduct as alleged herein, Bank of America has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National Class.

212.    Bank of America's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

213.    Under the common law doctrine of unjust enrichment, it is inequitable for Bank of America to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiffs and members of the National Class in an unfair, unconscionable, and oppressive manner.  Bank of America's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

214.    The financial benefits derived by Bank of America rightfully belong to Plaintiffs and members of the National Class.  Bank of America should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the National Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Bank of America traceable to Plaintiffs and the members of the National Class.

215.    Plaintiffs and members of the National Class have no adequate remedy at law.

**FIFTH CLAIM FOR RELIEF**
**Violations of State Unfair Trade Practice Laws**
**(On Behalf of the State Subclasses)**

216.    Plaintiffs repeat paragraphs 1 through 182 above.  This claim is asserted on behalf of the members of each State Subclass under their respective consumer protection statutes.

- 61 -

217.    Bank of America engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.*

218.    Bank of America engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.*

219.    Bank of America engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of Minn. Stat. § 8.31.

220.    Bank of America engages in unconscionable business practices relating to the imposition of overdraft fees on consumers, in violation of N.J. Stat. §§ 56:8-1, *et seq.*

221.    Bank of America engages in unfair and unconscionable business practices relating to the imposition of overdraft fees on consumers, in violation of the New Mexico Unfair Practices Act, N.M. Stat. §§ 57-12-1, *et seq.*

222.    Bank of America's business practices relating to the imposition of overdraft fees on consumers violate New York General Business Law § 349.

223.    Bank of America engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of N.C. Gen. Stat. §§ 75-1.1, *et seq.*

224.    As redress for Bank of America's repeated and ongoing violations of these consumer protection statutes, Plaintiffs and the Classes are entitled to, *inter alia*, damages and declaratory relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.      Declaring Bank of America's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.      Restitution of all overdraft fees paid to Bank of America by Plaintiffs and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.      Disgorgement of the ill-gotten gains derived by Bank of America from its misconduct;

4.      Actual damages in an amount according to proof;

5.      Punitive and exemplary damages;

6.      Pre-judgment interest at the maximum rate permitted by applicable law;

7.      Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.      Such other relief as this Court deems just and proper.

Dated:     April 12, 2010.

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@abbrclaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@abbrclaw.com
ALTERS BOLDT BROWN
  RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Lead Counsel for Plaintiffs*

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
GOLUMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Barry R. Himmelstein
Barry R. Himmelstein, Esquire
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Jordan S. Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esquire
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webbllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No.  0188015
mhutts@baronbudd.com
Renee M. Melancon, Esquire
Texas Bar No. 2403573
rmelancon@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Ave. – Suite 1100
Dallas, TX 75219
Tel: 214-521-3605/ Fax: 214-520-1181

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 12, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS BOLDT BROWN
RASH & CULMO, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@abbrclaw.com

- 66 -