**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Spears-Haymond, et al. v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 09-21680-JLK
N.D. Cal. Case No. 08-4610

**THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiff, through undersigned counsel, on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

**INTRODUCTION**

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant Wachovia Bank, N.A. ("Wachovia" or "the Bank"), arising from its unfair and unconscionable assessment and collection of excessive overdraft fees.

2.      In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Wachovia.  For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers.  Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for

customers and charge them in each instance.  A recent FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.  Nonetheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.       In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks are estimated to bring in between $27 billion to $38.5 billion in overdraft charges alone.*  As the one of the largest retail banks in the country, Wachovia is among the largest beneficiaries of these staggering charges.

4.       Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.       Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries, the

grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.    The same considerations are not present when customers use debit cards.  Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be incurred, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.    Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Wachovia routinely processes such transactions and then charges its customers an overdraft fee of $25 or $30—even when the transaction is for only a few dollars.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Wachovia. Additionally, as part of its inequitable motive to generate obscene profits gained through the imposition of unconscionable overdraft fees, Wachovia fails to adequately disclose to its customers that they may elect to opt out of overdraft protection.

8.    In many instances, these overdraft fees cost Wachovia account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars. Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

9.    Thus, it is through manipulation and alteration of customers' transaction records that Wachovia maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and Plaintiff is a resident of a different state than Wachovia.

11.     Venue is proper in the Northern District of California, the district in which this complaint was originally filed, pursuant to 28 U.S.C. § 1391(b) and California Code of Civil Procedure § 395, because the Bank has numerous branches in San Francisco County and has imposed substantial overdraft fees on consumers who hold accounts in San Francisco County.

## THE PARTIES

12.     Plaintiff Celia Spears-Haymond is a resident of the State of California.

13.     Wachovia Bank, N.A. maintains its principal place of business in Charlotte, North Carolina.  Wachovia regularly and systematically conducts business throughout the State of California.  Among other things, Wachovia is engaged in the business of providing retail banking services to millions of consumers, including Plaintiff and members of the putative class, which include the issuance of debit cards for use by its customers in conjunction with their checking accounts.

14.     Wachovia is a national bank, subject to the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

## CLASS ALLEGATIONS

15.     Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

16.     The proposed class is defined as:

> All Wachovia customers in California who, from October 3, 2004, to the date of class certification, incurred overdraft fees on debit card transactions as a result of Wachovia's practice of re-sequencing transactions from highest to lowest (the "Class").

17.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

18.     Excluded from the Class are Wachovia, its parents, subsidiaries, affiliates, officers and directors, any entity in which Wachovia has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

19.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Wachovia's records.

20.     The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, like all Class members, was charged overdraft fees by Wachovia as a result of its practice of re-sequencing debit card transactions from highest to lowest.  The representative Plaintiff, like all Class members, has been damaged by Wachovia's misconduct in that she incurred and/or will continue to incur unfair and unconscionable overdraft charges. Furthermore, the factual basis of Wachovia's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

21.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

22.     Among the questions of law and fact common to the Class are whether Wachovia:

a.      Does not clearly disclose and/or refuses to allow its customers to opt out of its overdraft protection program;

b.      Does not obtain affirmative consent from its customers prior to processing transactions that will result in overdraft fees;

c.      Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

d.      Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

e.      Manipulates and reorders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

f.      Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

g.      Fails to provide customers with accurate balance information;

h.      Delays posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

i.      Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

j.      Breaches its covenant of good faith and fair dealing with Plaintiff and the other members of the Class through its overdraft policies and practices;

k.      Requires its customers to enter into standardized account agreements which include unconscionable provisions;

- 6 -

l.      Converts moneys belonging to Plaintiff and the other members of the Class through its overdraft policies and practices;

m.      Is unjustly enriched through its overdraft policies and practices; and

n.      Violates the consumer protection laws of California through its overdraft policies and practices.

23.    Other questions of law and fact common to the Class include:

a.      The proper method or methods by which to measure damages, and

b.      The declaratory relief to which the Class is entitled.

24.    Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Wachovia's account agreements and other related documents.  Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

25.    Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

26.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Wachovia, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Wachovia's misconduct will proceed without remedy.

27.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

<strong><u>COMMON FACTUAL ALLEGATIONS</u></strong>

**A.      <u>Wachovia</u>**

28.     According to its website, Wachovia is the fourth largest bank holding company in the United States, holding $808 billion in assets.  Wachovia operates 3,300 branches and more than 5,300 ATMs in 21 states and the District of Columbia.

29.     Wachovia is in the business of providing its customers with a variety of banking services.  One of the services provided by Wachovia for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATM machines, the transaction is processed electronically.  As a result, Wachovia is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

30.     Wachovia employs sophisticated software to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

31.     As a result of Wachovia's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer, whose account had a $50 balance at the time the Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer.  Conversely, if the $100 transaction were debited last—consistent with the actual order of transactions—only one overdraft fee would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

**B.     Wachovia's Relevant Customer Documents Regarding Overdrafts**

32.     Plaintiff and all members of the Class maintain or maintained a checking account with Wachovia.  The terms of Wachovia's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by Wachovia, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.  A representative copy of the "Deposit Agreement and Disclosures for Personal Accounts" (the "Deposit Agreement"), covering "all personal deposit accounts established with any Wachovia Bank," which is 18 pages long, single-spaced and in small print, is attached as Exhibit A.

33.     The Deposit Agreement states:

**Insufficient Funds/Overdrafts**.  We may determine whether or not your account contains sufficient funds to pay a check or other item, authorize a POS transaction, in person withdrawal, ATM withdrawal, or process any other electronic transaction at any time between the time we receive the check or other item, POS transaction authorization request, in person withdrawal, ATM withdrawal, or other electronic transaction and our return deadline, and only one determination of the account balance is required.  If that determination reveals insufficient available funds to pay the check or other item, or in person withdrawal, authorize the POS transaction, or process the ATM withdrawal, or other electronic transaction you agree to pay a service charge, and we are not required to honor the check or other item, or in person withdrawal, authorize the POS transaction, or ATM withdrawal, or process the other electronic transaction and may return and/or decline it.  Alternatively, we may honor the check, other item, or in person withdrawal, authorize the POS transaction, or ATM withdrawal, or process the other electronic transaction and create an overdraft and impose a service charge for paying the overdraft (p. 10).

34.     The Deposit Agreement also states:  "We may pay checks or other items drawn upon your account (including those payable to us or on which we may be liable) in any order determined by us, even if (1) paying a particular check or item results in an insufficient balance in your account to pay one or more other checks or other items that otherwise could have been paid out of your account; or (2) using a particular order results in the payment of fewer checks or other items or the imposition of additional fees.  Although we generally pay larger items first, we are not obligated to do so and, without prior notice to you, we may change the order in which we generally pay items."  *Id*.

35.     The Deposit Agreement further states:  "You are responsible for the full amount of any overdraft and the related service charges. . . . You agree to deposit sufficient funds to cover the overdraft and the related service charge immediately upon notice of the overdraft and to reimburse us for any costs we incur in collecting the overdraft from you including, without limitation, reasonable attorneys' fees and the costs of litigation to the extent permitted by law. However, the honoring of one or more overdrafts does not obligate us to honor any future

overdrafts, and you should not rely on us to honor an overdraft even if we have done so in the past.  Moreover, we are not required to send you prior notice on checks returned for insufficient funds." *Id*.

36.    In addition, the Deposit Agreement states that "[i]f a check, ATM or Check Card transaction is involved and is not paid because there are not sufficient funds in your account or through overdraft protection, you will be charged the applicable insufficient funds fee." *Id*.

37.    The Deposit Agreement does not set forth the dollar amount of fees that will be charged for purported overdrafts.

38.    Instead, a separate document, the "Schedule of Fees and Funds Availability" ("Schedule of Fees") (attached as Exhibit B), lists the dollar amount of fees that will be charged for purported overdrafts, in a chart entitled "Other Services/Fees."   In small print, the chart states:

> Insufficient Funds/Unavailable Funds/Overdrafts[10]
> > These per item charges apply to: checks, in-person withdrawals, ATM withdrawals, POS transactions, or other paper or electronic transactions.
> > First – Third Occurrence ……………………….. $25.00 per item
> > Fourth (or more Occurrence) ...………………… $30.00 per item

The footnote appears in extremely small print:  "[10]The charge amount will be determined by the number of occurrences during the current month and preceding 12 months.  An occurrence is a business day with at least one insufficient funds/unavailable funds/overdraft item."

39.    The Deposit Agreement and related documents, including the Schedule of Fees, fail to disclose to customers that they have the option to "opt out" from the Bank's overdraft scheme, although it is possible for them to opt out upon request.

C.   **Wachovia's Re-Ordering of Checking Account Transactions**

40.     In an effort to maximize overdraft revenue, Wachovia manipulates and reorders debits from highest to lowest during given periods of time.  Wachovia reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge.  This practice violates numerous consumer protection laws and the covenant of good faith and fair dealing in the Bank's Deposit Agreement.

41.     In addition, Wachovia misleads its customers regarding its reordering practices. Instead of unequivocally telling its customers that it will reorder debits from highest to lowest, the Bank states in its contract that "we *generally* pay larger items first" but that it may process debits in "*any* order determined by us."  These statements are deceptive and/or unfair because it is, in fact, the Bank's practice to always reorder debits from highest to lowest, and because the Bank groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank's Deposit Agreement and its customers' reasonable expectations.  The Bank's practices thus violate the covenant of good faith and fair dealing implied in the Deposit Agreement as well as the consumer protection laws of California.

42.     Transactions involving debit cards used by Wachovia customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed electronically.  As a result, Wachovia is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

43.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Wachovia's posting system, it fails to post charges in the order in which they are incurred or received.  Wachovia developed a policy and employs a practice whereby account

charges and debits are posted to its customers' accounts out of chronological order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

44.     Instead of processing such transactions in chronological order, Wachovia processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

45.     Wachovia refrains from immediately posting charges to a customer's account as it receives them—sometimes for multiple business days.  By holding charges rather than posting them immediately to an account, Wachovia is able to amass a number of charges on the account. Subsequently, Wachovia posts all of the amassed charges on a single date.  When the group of charges is eventually posted to the customer's account, Wachovia posts them in order of largest to smallest—not in the order in which they were received or in the order in which they were charged.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.   The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

46.     Wachovia's policy and practice of posting charges from largest to smallest, rather than chronologically, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

47.     Wachovia enforces an unconscionable policy whereby charges incurred are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.  Wachovia's processing practices substantially increase the likelihood that customers'

smaller charges will result in multiple overdraft fees.  The practices provide Wachovia with substantially higher service fee revenues than it would otherwise achieve absent these practices.

48.     As a result, Plaintiff and members of the Class have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

### D.     Wachovia's Cloaking of Accurate Balance Information

49.     Wachovia actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information.  When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

50.     Wachovia provides inaccurate balance information to its customers through its electronic network.  In certain cases, Wachovia informs its customers that they have a positive balance when, in reality, they have a negative balance, despite Wachovia's actual knowledge of outstanding debits and transactions.

51.     Even when Wachovia has actual knowledge of outstanding transactions which have already created a negative balance in a customers' account, it encourages the customer to incur more overdraft charges by approving—rather than prudently declining—subsequent debit card purchases and other electronic transactions.

52.     Wachovia also assesses overdraft fees at times when actual funds in the customer account are sufficient to cover all debits that have been submitted to the Bank for payment.  It does this by placing a "hold" on actual funds in the customer's account.  In doing so, Wachovia charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

**E.    Wachovia's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out**

53.    At the time its debit cards are used in POS transactions or at ATMs, Wachovia is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Wachovia could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not do so because it seeks to maximize the amount of revenue generated through its assessment of overdraft fees.

54.    Notwithstanding its technological capabilities and actual knowledge, Wachovia fails to provide notice to Plaintiff and the Class that a particular debit card transaction will result in an overdraft and, hence, an overdraft fee.  Because Wachovia's customers are not notified of the potential overdraft, and are not given the option of declining the debit card transaction or providing another form of payment, the customers incur monetary damages in the form of overdraft fees.

55.    Wachovia fails to make Plaintiff and Class members aware that they can opt out of its overdraft scheme upon request, thereby avoiding any overdraft fees from being incurred.

**F.    Wachovia's Overdraft Policies and Practices are Contrary to Best Practices**

56.    By engaging in the conduct described herein, Wachovia has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union

Administration (collectively, the "Agencies").  A copy of the Joint Guidance is attached as Exhibit C.  These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection.  Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

57.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . .  This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

58.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.  When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."  70 F.R. 9127, 9132.  The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id*.

59.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.  A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit D.

60.     Wachovia's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies "is not reasonably avoidable" by the consumer.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

61.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion:  Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit E, finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee."  The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

62.     A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



**G.**    <u>**Wachovia's Unconscionable Provisions and Policies**</u>

63.    Wachovia's overdraft policies and practices are unconscionable in the following respects, among others:

a.    The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.    The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

- 18 -

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee; and

d.      The Deposit Agreement and related documents are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety.

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, the Schedule of Fees, which is not signed by the depositor; and

64.     The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Wachovia *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

65.     The Deposit Agreement also contains an arbitration clause and a class action waiver which states:

> **Arbitration of Disputes/Waiver of Jury Trial and Participation in Class Actions**.   If either you or we request, any dispute or claim concerning your account or your relationship to us will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association (AAA), and Title 9 of the US Code. . . .
>
> The arbitration or trial will be brought individually and not as part of a class action.  If it is bought as a class action, it must proceed on an individual (non-class, non-representative) basis.  YOU UNDERSTAND AND KNOWINGLY AND VOLUNTARILY AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN ANY CLASS ACTION LAWSUIT.

Deposit Agreement, p. 12.

66.     The above cited provisions are unconscionable because the Deposit Agreement
and related documents, to the extent they are deemed contracts, are unenforceable contracts of
adhesion and the arbitration provision itself is substantively unconscionable.

**H.      Recently Announced Changes in Wachovia's Overdraft Policies and
          Practices Do Not Offer Any Remedial Benefits to Customers**

67.     On September 23, 2009, Wachovia announced plans to overhaul its overdraft
policies on a going-forward basis.  The changes do nothing to remedy the past wrongs to the
Plaintiff and the Class.  They do not retroactively reverse the charges wrongly debited from their
accounts, nor do they prevent Wachovia from continuing its unfair and unconscionable methods
of business.

**I.      Wachovia's Overdraft Practices Harmed Plaintiff**

68.     Plaintiff Celia Spears-Haymond is a current checking account customer of
Wachovia.

69.     In connection with her account, the Bank issued a debit card to Ms. Spears-
Haymond.  A debit card allows customers to access their checking account funds by using the
card to execute a transaction.  The charge is processed electronically, and the Bank has the
option to accept or decline the transaction at the point of sale.

70.     Wachovia wrongfully charged Ms. Spears-Haymond overdraft fees on multiple
occasions.  By way of illustration, in 2007, Plaintiff used her debit card to make multiple
transactions over a three-day period.  Based on information and belief, Plaintiff had a positive
balance in her account at the time of most of these transactions.

71.     If Wachovia had not manipulated and reordered Ms. Spears-Haymond's transactions from highest to lowest, she would not have incurred several overdraft charges because she had sufficient funds in her account at the time she executed the transactions.

72.     Wachovia failed to notify Ms. Spears-Haymond that she could incur overdraft fees on transactions even though there were sufficient funds in her checking account to cover the transaction at the time the transaction was executed.  In addition, Wachovia never notified Ms. Spears-Haymond at the time she made check card transactions that her checking account was overdrawn or that she would be charged an overdraft fee as a result of the transaction. Furthermore, Wachovia never declined to pay any of Ms. Spears-Haymond's check card charges even though her account was overdrawn or she had insufficient funds in her account to cover the transaction.

73.     Since opening her account in or around June 2007, Ms. Spears-Haymond has incurred at least $745.00 in overdraft fees.

74.     The overdraft charges incurred by Plaintiff are representative of hundreds of millions of dollars of overdraft fees that the Bank wrongfully assessed and deducted from Wachovia customer accounts.  These wrongful takings are especially egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

**J.      The Damages Sustained by Plaintiff and the Class**

75.     As shown by this example, Wachovia's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account.  In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft

service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." *Id.*

76.     According to rules proposed by the Agencies, "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

77.     Thus, as a consequence of Wachovia's overdraft policies and practices, Plaintiff and the Class have been wrongfully forced to pay overdraft fees.  Wachovia has improperly deprived Plaintiff and the Class of significant funds, causing ascertainable monetary losses and damages.

78.     As a consequence of Wachovia's improper overdraft fees, Wachovia has wrongfully deprived Plaintiff and the Class of funds to which it had no legitimate claim.

79.     Plaintiff had sufficient funds to cover at least some of the transactions for which she and the Class were charged overdraft fees.  Plaintiff and members of the Class either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Wachovia could impose these wrongful charges.  In many instances, Wachovia's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiff and Class members.

80.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

## FIRST CLAIM FOR RELIEF

### Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing

81.     Plaintiff repeats paragraphs 1 through 80 above.

82.     Plaintiff and Wachovia contracted in California for bank account deposit, checking, ATM and debit card services, as embodied in Wachovia's Deposit Agreement and related documentation.

83.     Under California law, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

84.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

85.     Since at least October 3, 2004, Wachovia has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

86.     Plaintiff and the Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

87.     Plaintiff and members of the Class have sustained damages as a result of Wachovia's breach of the covenant of good faith and fair dealing.

**SECOND CLAIM FOR RELIEF**

**Unconscionability in Violation of Cal. Civ. Code § 1670.5**

88.     Plaintiff repeats paragraphs 1 through 80 above.

89.     Wachovia's overdraft policies and practices are substantively and procedurally unconscionable, in violation of Section 1670.5 of the California Civil Code, in the following respects, among others:

a.     The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.     The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.     The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.     The Deposit Agreement and related documents, including the Schedule of Fees, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a separate document, the Schedule of Fees, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Wachovia *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

90.     Considering the great business acumen and experience of Wachovia in relation to Plaintiff and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

91.     The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $30 charge on an overdraft of less than $30) is itself unconscionable.  Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

92.     Plaintiff and members of the Class have sustained damages as a result of Wachovia's unconscionable policies and practices as alleged herein.

## THIRD CLAIM FOR RELIEF

### Conversion

93.     Plaintiff repeats paragraphs 1 through 80 above.

94.     Wachovia had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

95.     Wachovia has wrongfully collected overdraft fees from Plaintiff and the members of the Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

96.     Wachovia has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the Class, without legal justification.

97.     Wachovia continues to retain these funds unlawfully without the consent of Plaintiff or members of the Class.

98.     Wachovia intends to permanently deprive Plaintiff and the members of the Class of these funds.

99.     These funds are properly owned by Plaintiff and the members of the Class, not Wachovia, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the Class.

100.    Plaintiff and the members of the Class are entitled to the immediate possession of these funds.

101.    Wachovia has wrongfully converted these specific and readily identifiable funds in violation of California law.

102.    Wachovia's wrongful conduct is continuing.

103.    As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the Class have suffered and continue to suffer damages.

104.    By reason of the foregoing, Plaintiff and the members of the Class are entitled to recover from Wachovia all damages and costs permitted by law, including all amounts that Wachovia has wrongfully converted.

## FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

105.    Plaintiff repeats paragraphs 1 through 80 above.

106.    Plaintiff, on behalf of herself and the Class, asserts a claim for unjust enrichment under the common law of California.

107.    By means of Wachovia's wrongful conduct alleged herein, Wachovia knowingly provides banking services to Plaintiff and members of the Class that are unfair, unconscionable, and oppressive.

108.    Wachovia knowingly received and retained wrongful benefits and funds from Plaintiff and members of the Class.  In so doing, Wachovia acted with conscious disregard for the rights of Plaintiff and members of the Class.

109.    As a result of Wachovia's wrongful conduct as alleged herein, Wachovia has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

110.    Wachovia's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

111.    Under the common law doctrine of unjust enrichment, it is inequitable for Wachovia to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiff and members of the Class in an unfair, unconscionable and oppressive manner.  Wachovia's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

112.    The financial benefits derived by Wachovia rightfully belong to Plaintiff and members of the Class.  Wachovia should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Wachovia traceable to Plaintiff and the members of the Class.

113.    Plaintiff and members of the Class have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200

114.    Plaintiff repeats paragraphs 1 through 80 above.

115.    Wachovia's conduct described herein violates the Unfair Competition Law (the "UCL"), codified at California Business and Professions Code section 17200, in the following respects, among others:

a.      Wachovia's practices relating to the imposition of overdraft fees are unconscionable, in violation of California Civil Code section 1770(a)(19), and, as a result, constitute an unlawful business act or practice within the meaning of the UCL;

b.      Wachovia's practices relating to the imposition of overdraft fees violate California Civil Code sections 1770(a)(5), (14) and (19), and, as a result, constitute unlawful business acts or practices within the meaning of the UCL; and

c.      Wachovia's practices relating to the imposition of overdraft fees constitute unfair business acts or practices within the meaning of the UCL.

116.    The harm to Plaintiff and the Class arising from Wachovia's unlawful and unfair practices relating to the imposition of overdraft fees outweighs the utility, if any, of those practices.

117.    Wachovia's unlawful and unfair business practices relating to the imposition of overdraft fees are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and members of the Class.

118.    As a result of Wachovia's violations of the UCL, Plaintiff and members of the Class have paid, and/or will continue to pay, unreasonably excessive amounts of money for banking services and thereby suffered and will continue to suffer actual damages.

119.    Pursuant to California Business and Professions Code section 17203, Plaintiff and the Class are therefore entitled to *inter alia*:

a.      an order requiring Wachovia to cease the unlawful and unfair acts alleged herein;

b.      full restitution of all overdraft fees paid to Wachovia on check card transactions, including POS and ATM transactions, pursuant to California Code of Civil Procedure section 384;

c.      pre-judgment interest at the highest rate allowable by law; and

d.      payment of their attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure section 1021.5.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment as follows:

1.      Declaring Wachovia's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.      Restitution of all overdraft fees paid to Wachovia by Plaintiff and the Class, as a result of the wrongs alleged herein, within the applicable statutes of limitations, in an amount to be determined at trial;

3.     Disgorgement of the ill-gotten gains derived by Wachovia from its misconduct;

4.     Actual damages in an amount according to proof;

5.     Punitive and exemplary damages;

6.     Pre-judgment interest at the maximum rate permitted by applicable law;

7.     Costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.     Such other relief as this Court deems just and proper.

Dated:     April 12, 2010.

<u>/s/ Bruce S. Rogow</u>
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@abbrclaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@abbrclaw.com
ALTERS BOLDT BROWN
  RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Lead Counsel for Plaintiff*

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
GOLUMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Barry R. Himmelstein
Barry R. Himmelstein, Esquire
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esquire
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webbllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No. 0188015
mhutts@baronbudd.com
Renee M. Melancon, Esquire
Texas Bar No. 2403573
rmelancon@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Ave. – Suite 1100
Dallas, TX 75219
Tel: 214-521-3605/ Fax: 214-520-1181

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I hereby certify that on this April 12, 2010, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being

served this day on all counsel of record or pro se parties identified on the attached Service List in

the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
        ALTERS BOLDT BROWN
RASH & CULMO, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@abbrclaw.com