# Exhibit 1

**Agreements and Disclosures**

# Information for Zip: 98101



To print a copy of this disclosure, select "File" in the top menu bar, and from the drop down list, select the "Print" option. **Note:** Disclosures vary in size and may require several minutes or many pages to print.

## Deposit Account Agreement and Funds Availability Policy

**Effective December 14, 2009**
**KeyBank National Association**
**Member FDIC**



### TABLE OF CONTENTS

| PART I - DEPOSIT ACCOUNT AGREEMENT | |
|---|---|
| 1. This Agreement | 19. Our Right of Set-off |
| 2. Opening Your Account | 20. Adverse Claims; Interpleader; Legal Process |
| 3. Deposits to Accounts | 21. Assignment; Pledge |
| 4. Collection of Items Deposited | 22. Waiver of Notices |
| 5. Withdrawals | 23. Check Cashing |
| 6. Payment of Items; Overdrafts; Substitute Checks | 24. Addresses; Notices |
| 7. Stopping Payment | 25. Arbitration Provision |
| 8. Account Disclosure and Fees | 26. Applicable Law |
| 9. Signature Card and Resolutions; No Two Signer Accounts | 27. Amendments; Non-Waiver; Severability |
| | 28. Credit Reports |
| 10. Account Statements; Limitation On Time to Report Unauthorized Transactions, Forgeries and Errors | 29. Disclosure of Account Information |
| | 30. Electronic Authentication of Signature; Electronic Records |
| 11. Time Account Certificates | 31. Enforceability of Electronic Records and Signed Documents |
| 12. Joint Personal Accounts; Survivorship Accounts | |
| 13. Payable on Death Accounts | **PART II - FUNDS AVAILABILITY POLICY** |
| 14. Fiduciary and Custody Accounts | |
| 15. Powers of Attorney | |
| 16. Closing Accounts | |
| 17. Inactive Accounts/Unclaimed Funds | |
| 18. Death/Incompetence | |

### PART I - DEPOSIT ACCOUNT AGREEMENT

This Agreement governs all Accounts you maintain with us. As used in this Agreement, "we," "us," "our," and similar terms mean KeyBank National Association, Cleveland, Ohio, its respective parents, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors. "You," "your," and similar terms mean each person listed on our records as the owner of the Account and any person you authorize to sign or act on your behalf.

**1. This Agreement.** This Agreement is the contract between you and us that governs all Personal and Business Accounts. You agree to its terms by opening an Account. You should read this Agreement carefully and keep a copy for your records. From time to time we may offer new types of Accounts and may cease offering some types of Accounts. This Agreement governs all of these new types of Accounts, and continues to govern any Accounts you may have that we no longer offer. As used in this Agreement:
- **Account** means all Checking, Savings and Time Deposit Accounts. "Personal Accounts" means Accounts we classify from time to time as personal and offer primarily to consumers for personal, family or household purposes. "Business Accounts" means all other Accounts and includes Accounts we offer from time to time primarily to businesses, organizations, public entities, commercial and non-profit enterprises, corporations, partnerships, limited liability companies, sole proprietors and associations.
- **Checking Accounts** means all Accounts we designate from time to time as Checking Accounts.
- **Savings Accounts** means all Accounts we designate from time to time as Savings Accounts.
- **Time Accounts** means all Accounts that you deposit with us for a specified period of time and we

specify from time to time as the time deposit.

Additional terms apply to Time Accounts, retirement Accounts and to some other types of Accounts. You receive a copy of these other terms when you open your Account, and you agree to comply with them. Some Accounts, such as retirement Accounts and uniform gifts or transfers to minors custodial Accounts, are also subject to the terms and conditions imposed by specific laws governing such types of Accounts.

Interest bearing Checking Accounts may be opened and maintained only by individuals and certain eligible associations and business entities, such as non-profit corporations, or associations, and sole proprietors. We may close your Checking Account or convert it to a non-interest bearing Checking Account if you are not an eligible association or business entity.

**2. Opening Your Account.** To open and maintain your Account you must complete the proper forms and provide us with any other documents, information or items that we may require to establish and maintain an Account with us. These requirements include acceptable forms of identification including but not limited to a thumbprint in certain states, any required minimum deposit, and your Taxpayer Identification Number. If these items are not provided within a reasonable period of time, we may close your Account as described in Section 16. If you open a non-personal Account with us, you must certify the adoption of resolutions acceptable to us that authorize us to transact business with your designated representative(s).

If you open a fiduciary Account, other documents required depend on the type of Account being opened. For example, if you open an estate Account you need certified court appointment papers naming you as executor or administrator of the estate. If you are a trustee under a written trust agreement, you must show us a copy of the trust agreement specifying the beneficiary, the trustee, the trust property, and verifying the trustee's authority to open the Account. Federal tax laws require us to obtain from each Account owner a certification of the owner's Taxpayer Identification Number and whether the owner is subject to backup withholding. You must notify us if your Taxpayer Identification Number is incorrect or if you become subject to backup withholding. We must withhold some of the interest payable on your Account if you fail to give us a correct Taxpayer Identification Number or otherwise become subject to backup withholding. It is our policy not to open an Account unless you certify your Taxpayer Identification Number or have applied for a Taxpayer Identification Number. If you fail to provide an appropriate Taxpayer Identification Number, we may close your Account.

**3. Deposits to Accounts.** All deposits you make are subject to "proof" by us. This means we reserve the right to review the cash, checks or other items deposited to confirm the amount of the deposit and that all checks and other items are properly payable. We can correct any errors we find. For example, if you made an error in adding up the amount of your deposit, we can correct your Account records to reflect the actual amount deposited. We can correct errors even if we gave you a receipt for the incorrect amount or already posted the incorrect amount to your Account. We can supply your endorsement if it is missing from any check or other item you deposit. If a check or other item was not properly payable, we can decline to credit your Account for the amount of the check or other item.

We reserve the right to refuse to accept any check or other item to be deposited. In particular, we will not accept deposits of any checks or other instruments that cannot be mechanically processed by our check/item processing hardware and software, or otherwise be processed and paid in accordance with our standard practices or with standard check/item collection practices of banks in general (e.g. checks in the amount of $100 million or greater).

When we credit your Account for a check or other non-cash item you deposit, the credit is conditional. This means we can revoke the credit if the check or other item is dishonored or not paid for any reason, even if we are unable to return, or there is any delay in returning, the unpaid check or other item to you. We can also revoke a credit for any other reason if permitted under applicable law. You agree to waive the requirements of any law limiting the time within which we must revoke a credit or requiring us to notify you of nonpayment, dishonor or the revocation of a credit.

Some of our branches have established "cut-off" times (e.g. 2:00 p.m.). Deposits received, withdrawals made and other transactions occurring prior to the cut-off time each business day will be posted to Accounts as of that day. Deposits received, withdrawals made and other transactions occurring after the cut-off time will be posted to Accounts as of the next business day. Deposits received, withdrawals made and other transactions occurring on any non-business day will be posted as of the next business day.

Deposits containing 500 or more checks may be subject to a branch specific cut-off time. If a cut-off time applies it will be posted at the branch. Deposits of 500 or more checks made at a branch before the posted cut-off time will be considered received that business day. Deposits of 500 or more checks made at the branch after the posted cut-off time will be considered a next-business day deposit and processed accordingly. Cash is not subject to the cut-off time and will be verified and credited the same-day. The cut-off time may vary by location but will not be earlier than 2:00 p.m. local time.

Items sent to us in the mail for deposit are not considered to have been received by us until delivered to us by the U.S. Postal Service. Items placed in one of our night depository boxes or similar boxes at our facilities are not considered received until we remove them (which usually occurs by 9:00 a.m. on business days). Items delivered to us electronically are not considered to have been received by us until accepted by us. Until we receive them, you bear the risk that deposits will be lost, stolen or destroyed.

We make the funds you deposit available for withdrawal in accordance with our Funds Availability Policy, which accompanies this Agreement. Until the funds become available, you cannot withdraw them or write checks against them and we can refuse to permit withdrawals or pay checks if the funds to do so are not yet available.

**Restriction on Deposit of Substitute Checks.** You are prohibited from depositing or cashing any substitute check with us that was not previously created by a financial institution and then transferred to you, unless you

Case 1:10-cv-21176-JLK   Document 1-1   Entered on FLSD Docket 02/16/2010   Page 4 of 20

have any questions about your agreement with us or to arrange to meet with a Business Banking Officer to discuss these services for business customers in greater detail. In the event you deposit a substitute check without our prior authorization and we subsequently process the substitute check, you assume all risk of losses, damages, liabilities and other obligations that may arise as a result of your action, and you agree to indemnify and save us harmless in the manner described in the section titled **Adverse Claims; Interpleader; Legal Process** from all losses, damages, liabilities, obligations, expenses and costs that we incur as a result of your action. Substitute checks created by us or another financial institution that are returned to a customer unpaid (i.e. a substitute check of a deposited item returned unpaid) may be redeposited in accordance with applicable rules, regulations and laws.

**IMPORTANT NOTICE TO BUSINESS CUSTOMERS REGARDING INTERNET GAMBLING.**

The Unlawful Internet Gambling Enforcement Act (UIGEA) prohibits any person or other entity from making or accepting a Restricted Transaction as defined in UIGEA and Regulation GG. All Restricted Transactions at KeyBank are prohibited. We have established certain policies and procedures designed to identify and block, or prevent payment of, any Restricted Transaction involving your Account(s) with us. Also we may at our sole discretion block or prevent payment of all Internet gambling transactions without notice to you. You hereby acknowledge and agree that we shall have no obligation or liability of any kind for blocking, or failing to block, any Restricted Transaction or other Internet gambling transaction.

**4. Collection of Items Deposited.** When you deposit or ask us to pay a check or other item that is not drawn on us, we act as your collecting agent to obtain payment for you. We may forward these items directly or indirectly to any other bank, including the bank on which the item is drawn. Items and their proceeds may be handled by any Federal Reserve Bank in accordance with applicable Federal Reserve rules, by clearinghouses in accordance with their rules, and by other banks in accordance with common bank practices. You agree that all rules, regulations and practices of Federal Reserve Banks and clearinghouses also apply to the payment and collection of the checks and items you give us. When we act as your collecting agent, we assume no duties or responsibilities (other than to use ordinary care), and we are not responsible for the actions of any Federal Reserve Bank or other bank or clearinghouse that handles the check or item during the collection process. You agree to reimburse us for any loss we may sustain (or damages we must pay another person for their loss) resulting from the condition of any check or item you deposit. This includes illegible and missing signatures, numbers or other information, instructions and disclaimers on the front or back of the check or item, and use of the space on the back of checks reserved for endorsement by banks that handle the check for collection.

**5. Withdrawals.** Federal law requires us to impose special rules limiting withdrawals from some Accounts. The rules differ depending on the type of Account.

- **Checking Accounts.** Checking Accounts consist of two subaccounts: a checking subaccount and a savings subaccount. All of the provisions of this Agreement and all of the terms and conditions governing your Checking Account apply to the Account as a whole without reference to the subaccounts, except as provided in this section. If your Checking Account earns interest, the interest rate will apply to both subaccounts. If your Checking Account does not earn interest, no interest will be paid on either subaccount.

  We transfer funds in the checking subaccount to the savings subaccount when such funds are not needed to pay checks, debits, or other items drawn on your Checking Account. We may sweep the entire balance into the savings subaccount during the weekend when no items will post to your Checking Account. We may also establish a threshold balance in the checking subaccount and transfer any funds in excess of the threshold balance to the savings subaccount. All checks, debits and other items will be paid from balances credited to the checking subaccount. All deposits and credits will be credited to the checking subaccount. We periodically reallocate the balances between the subaccounts to make funds available in the checking subaccount to pay checks, debits and other items drawn on your Checking Account. These transfers will be the only transactions on the savings subaccount. We will not allow more than six transfers per monthly statement period from the savings subaccount and, if a sixth such transfer is made, all funds in the savings subaccount will be transferred to the checking subaccount for the remainder of the monthly statement period.

  In accordance with federal law, we reserve the right to require seven days' prior notice of any transfer from an interest bearing Checking Account. Subject to these limitations, you can make an unlimited number of withdrawals in person or by check and arrange for preauthorized transfers and withdrawals, including telephone transfers.

- **Savings Accounts.** Savings Accounts have no check-writing privileges unless we specifically tell you that you may write checks on your Account. On Savings Accounts, you may withdraw money in person at our branches, arrange for preauthorized transfers and withdrawals and, if your Savings Account has check-writing privileges, write checks, subject to the following limitation: during any monthly statement period, you are permitted or authorized to make no more than six transfers and withdrawals to another KeyBank account of yours (including a transaction account) or to a third party by means of a preauthorized or automatic transfer, or telephonic (including data transmission) agreement, order or instruction, or by check, draft, debit card or similar order payable to third parties, including transfers to third parties made through an automated teller machine or telephone and point of sale transactions posted to your Account. You can make an unlimited number of withdrawals in person at an ATM or at any of our branches. You can also make an unlimited number of transfers through an ATM from one Checking or Savings Account to another Checking or Savings Account. We reserve the right to require seven (7) days prior written notice of any intended withdrawal (whether made in person, by check, by telephone or by preauthorized transfer or withdrawal).

- **Time Accounts.** When you open a Time Account, you are agreeing to keep your funds on deposit with

is that Account until the maturity date. We are not required to allow you to withdraw any of the funds in the Account until the maturity date. If we do allow a withdrawal, we may require you to withdraw the full balance in the Account and pay an early withdrawal penalty. Unless the disclosures given when you open a Time Account provide otherwise, you cannot change the terms of this Account, make additional deposits or partial withdrawals either during the term or during any grace period after maturity.

- **Retirement Accounts.** Most of the restrictions on withdrawals described above will apply to Accounts that are retirement Accounts. Certain other restrictions will also apply. Refer to the documents governing your retirement Accounts for a complete description of these restrictions.

For Accounts on which we have reserved the right to require prior notice of withdrawal, if we exercise that right we can refuse to allow any withdrawal for which proper notice was not given. This means, for example, that we can refuse to pay checks written against the Account. If we take these actions, we are not liable to you for wrongful dishonor, for failure to release your funds or for any other reason.

For Savings Accounts, if you exceed any of the limits on transactions, withdrawals, or checks, we may close your Account or convert your Savings Account to a Checking Account. If we convert your Account, you agree to pay all fees we charge on Checking Accounts and comply with all other terms and restrictions applicable to Checking Accounts.

You authorize us to transfer money from one Checking Account or Savings Account to another Checking Account or Savings Account, or to a third party, when we receive instructions to do so from you over the telephone. You agree that we may record any of your telephone calls to us when making a telephone transfer.

If we ask, you must provide us with identification or other documents or information acceptable to us in order to withdraw funds from your Account. If we ask, you also must sign a document acknowledging that you received the funds withdrawn.

You must use only the forms made available through us, or other forms approved by us, when making deposits to, withdrawals from, or writing checks on, your Account. All forms of checks must be standard size, bear your name and address, our name and address, and the appropriate routing/transit and Account numbers, and be capable of being processed by our MICR check/item processing hardware and software.

**6. Payment of Items; Overdrafts; Substitute Checks.** Withdrawals by check are permitted only on Checking Accounts and on Savings Accounts with check-writing privileges. You agree that, when a check or other item drawn on or payable from your Account is presented for payment, we can disregard any legends on the check (such as "void after 60 days", "paid in full" or "void over $100"), any restrictive endorsements or other information, instructions and disclaimers that would limit or tend to limit the negotiability of the check or other item. We may process items in any order that we choose. Currently we process items from highest dollar amount to the lowest dollar amount within certain categories. We may establish different priorities or categories for items including items initiated by us such as service charges. These priorities or categories may be based on the date and/or time a transaction was initiated such as transactions made by you after normal business hours or items initiated by us including service charges. For example, transactions that you make on a Saturday or Sunday may be posted prior to a transaction you make during normal business hours on the next business day. The priorities or categories established may depend on your Account type. We may change the processing order at any time without notice to you. In our discretion, we may process or decline to process any check more than six months old. We can also pay photocopies of checks accompanied by a representation that the original was lost or destroyed. You also agree that we can pay checks before the date set forth on the check (i.e. "post dated checks"). We have this right even if you give us notice that you wrote a post dated check. In order to prevent a post dated check from being paid, you must give us a valid stop payment order.

We may debit your Account on the day an item is presented by electronic or other means, or at an earlier time based on notification received by us that an item drawn on your Account has been deposited for collection in another financial institution. We pay checks or other items from the funds that we determine, in our discretion, are "available" for withdrawal from your Account. Some or all of the funds in your Account may not be "available." For example, for point-of-sale transactions the funds in your Account that are "available" may be reduced by the amount of any transaction for which the merchant/payee receives authorization from us, whether or not the transaction has been presented for payment. We may consider such pending transaction for the purpose of determining the amount of funds in your Account to be used to pay other items presented against your Account. In addition, funds you deposit may not be immediately available under our Funds Availability Policy. Likewise, we may have placed a "hold" on some or all of the funds in your Account because, for example, we reasonably believe a court order has restrained us from releasing funds to you. We will not be liable to you for damages, wrongful dishonor, or additional fees incurred if we dishonor or decline to pay a check or other item drawn on or payable from your Account if the Account has insufficient available funds to pay the check or other item. We do not have to check the balance in your Account more than once to determine if there are available funds. If an item is presented for payment against your Account and is returned for any reason more than twice, we reserve the right to cease any further negotiation of the item.

In our discretion, however, we may decide to pay/process a check, ATM withdrawal, debit card transaction, preauthorized automatic debit, telephone-initiated transfer, electronic transfer or other item as a service to you even if the Account on which it was drawn/debited does not contain sufficient available funds. When we do so the payment may create an "overdraft" in your Account. Overdrafts can also result from other circumstances, such as when a check deposited by you is returned to us unpaid. You agree to pay us the full amount of any overdraft on your Account immediately upon demand, together with any additional fee we may charge. *If you do not want us to pay/process items as a service to you when the Account on which it was drawn/debited does not contain sufficient available funds, please contact your KeyCenter or your Financial Advisor.* On joint Accounts, each of you is jointly and severally liable for overdrafts. This means we can collect the full amount of the overdraft, plus any fees, from either of you, even if you did not create the overdraft, or collect from all of you.

Case 1:10-cv-21176-JLK   Document 1-1   Entered on FLSD Docket 02/16/2010   Page 6 of 20

If you make a check or other item payable to the order of more than a single payee and the check or item is presented to us for payment without the endorsement of one or more payees, you authorize us to pay the item and charge your Account. In such event, we will assist you, to the extent we deem practicable, in obtaining any such missing endorsement(s), or any reimbursement to which you may be entitled.

### What is a substitute check?

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you, as a consumer, have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your Account. However, you have rights under other law with respect to those transactions.

### THE FOLLOWING APPLIES TO CONSUMER ACCOUNTS ONLY

### What are your rights as a consumer regarding substitute checks?

In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your Account (for example, if you think that we withdrew the wrong amount from your Account or that we withdrew money from your Account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your Account and fees that were charged as a result of the withdrawal (for example, bounced check fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your Account is an interest-bearing Account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your Account earns interest) within 10 business days after we received your claim and the remainder of your refund (plus interest if your Account earns interest) not later than 45 calendar days after we received your claim.

We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your Account.

### THE FOLLOWING APPLIES TO CONSUMER ACCOUNTS ONLY

### How should you as a consumer make a claim for a refund?

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your Account, please contact us by calling 1-800-KEY2YOU (1-800-539-2968) (TDD 1-800-762-4833), or write: KeyBank, Customer Disputes, P.O. Box 1803, Dayton, Ohio 45401-1803. You must contact us within 40 calendar days of the date that we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the Account statement showing that the substitute check was posted to your Account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

Your claim must include-

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- A copy of the substitute check and the following information to help us identify the substitute check: (identifying information, for example the check number, the Account number, your name, the name of the person to whom you wrote the check, the amount of the check and the posting date the check appears on your statement).

If you tell us orally, we may require that you send us your request for a refund in writing by the 10th business day after the banking day on which the bank received your oral notice. We will tell you the results of our investigation within 10 business days after we hear from you. If we need more time, however we may take up to 45 calendar days to investigate your claim. If we ask you to put your request for a refund in writing and we do not receive it within 10 business days, we may not credit your Account. We will tell you the results no later than the business day after the banking day we complete our investigation. If we decide your claim is not valid, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**7. Stopping Payment.** You can ask us to stop payment on a check drawn on your Account. In order to place a stop payment request, you must inform us of the exact amount of the item, the number of the check, the date of the check, the Account number, and any other information we may request. A stop payment confirmation will be mailed to you. You must review the specific details on the confirmation for accuracy, and call us immediately if any of the information is not accurate. A stop payment request is effective for only six (6) months, unless you specifically request the stop payment be effective for 12 months. You may renew a stop payment prior to its expiration. Refer to the Deposit Account Fees and Disclosures for stop payment fee details. We are not liable for payment of a check or other item if a stop payment request has expired and not been renewed. In some states and under certain limited circumstances, you may stop payment on official checks and on certified checks.

We are not liable for failing to stop payment if you give us insufficient information or if your stop payment request comes too late for us to act on it. We are entitled to a reasonable period of time after we receive your stop payment request to notify our employees and take other action needed to stop payment. You agree that "reasonable time" depends on the circumstances but that we will have acted within a reasonable time if we make your stop payment request effective by the end of the next business day following the business day on which we receive your stop payment request. If we stop payment, you agree to defend and pay any claims raised against us as a result of our refusal to pay the check or other item on which you stopped payment.

If we recredit your Account after we have paid a check or other item over a valid and timely stop order, you agree to sign a statement describing the dispute you have with the person to whom the check or item was made payable. You also agree to transfer to us all of your rights against the payee and any other holder, endorser or prior transferee of the check or item and to cooperate with us in any legal action taken to collect against the other person(s).

If we are liable for inadvertently paying your check over a stop payment order, you must establish the amount of your loss caused by our payment of the check. We will pay you only the amount of the loss, up to the face amount of the check.

You may request us to stop payment of electronic funds transfers from your Account. You must refer to other agreements and disclosures for information regarding stopping payment on electronic funds transfers.

**8. Account Disclosure and Fees.** When you opened your Account, we gave you disclosures containing additional terms and conditions relating to your Account and listing fees that may be payable to us. You agree to comply with the terms and conditions disclosed and to pay us the fees and charges imposed by us on your Account. We can deduct any or all these fees and charges from your Account. We are not liable for dishonoring or declining to pay a check or other item drawn on or payable from your Account if your Account does not contain sufficient "available" funds as a result of our deducting fees and charges from your Account. We can change these fees at any time. We will give you prior notice of the change if we are required to do so under applicable law.

All fees are "deposit account service charges" under Title 12, Code of Federal Regulations, Section 7.4002 (12 C.F.R. section 7.4002). These fees are assessed for the inconvenience and additional administrative resources that we incur or require to provide the associated services. All fees charged in connection with an overdraft are designed to deter you from overdrawing your account and/or allowing such overdrafts to continue and thus to maintain the safety and soundness of our operations. No loan or extension of credit is or is intended to be established by our honoring of an overdraft. On certain Accounts, an overdraft line of credit is available. Please contact us for additional information if you are interested in an overdraft line of credit.

**9. Signature Cards and Resolutions; No Two Signer Accounts.** We are entitled to rely upon and treat as genuine the names, titles and signatures shown on any Account signature cards and Account Express Plan, or other written documentation acceptable to us, delivered by you or your officers, employees or agents on your behalf, unless you notify us otherwise in writing. If we require you to deliver certified copies of resolutions or sign our depository resolutions to open an Account, we are entitled to rely upon such resolutions and certifications, without investigation by us, unless you or your authorized representative notify us otherwise in writing.

You agree that we can pay checks drawn on your Account and made payable to any of your officers, partners, employees or agents and we may cash and pay such checks without inquiring about the authority of the payee or person who signed the check on your behalf. Subject to the statement review provisions contained in Section 10 below, if the signature cards or resolutions related to your Account are unavailable for any reason, you agree that we can rely upon the titling contained in your most recent Account Statement for purposes of determining the ownership of the Account.

We do not offer Accounts on which two signatures are required for a check or other withdrawal. Notwithstanding any provisions to the contrary on any signature card or other agreement you have with us, you agree that if any Account purports to require two or more signers on items drawn on the Account, such provision is solely for your internal control purposes and is not binding on us. If more than one person is authorized to write checks or draw items on your Account, you agree that we can honor checks signed by any authorized signer, even if there are two or more lines on the items for your signature and two signatures are required.

**10. Account Statements; Limitation on Time to Report Unauthorized Transactions, Forgeries and Errors.** You should review and balance your Account statements promptly after you receive them or, if we are holding them for you, promptly after we make them available to you. If you don't receive an Account statement by the date when you usually receive it, call us at once. You must review your statements to make sure that there are no errors in the Account information. You agree that if you give out your Account number to a third party, such act authorizes the recipient of the information to initiate debits to your Account, whether or not you have authorized the particular debit.

On Accounts with check-writing privileges, you must review your statement and any canceled checks we send you and report unauthorized transactions including forgeries, alterations, missing signatures, amounts differing from your records, or other information which might lead you to conclude that a transaction was not authorized or a check was forged or that, when we paid the check, the proper amount was not paid to the proper person. You have this duty even if we do not return checks to you or we return only an image of the check. You should notify us as soon as possible if you think there is a problem.

If we are holding your Account statements for you at your request, the statements become "available" on the day they are available for you to pick up. This means, for example, that the period in which you must report any problem with an Account begins on the day we make the statement available, even if you do not pick up the statement until later.

Because of the high volume of items we must process and the large fluctuations in the volume of items processing, you agree that we will not be considered to have failed to exercise ordinary care if we do not manually examine all items. All checks, withdrawal forms, and deposit slips must be on forms obtained through us or which we approve in advance. You are responsible for verifying the accuracy of all information on such forms. Our liability, if any, for any printing errors on forms obtained through us is limited to the cost of replacement of such forms. We are not responsible for errors or losses you may incur due to improper printing on forms not obtained through us or approved by us in advance.

If you choose to use a facsimile signature device, you agree that we are not liable for honoring checks bearing facsimile signatures or facsimile endorsements. This means we will not recredit your Account if your facsimile signature is forged or use of the facsimile device was unauthorized.

If you have made arrangements with us to review electronic information about checks presented for payment, we are not liable for any errors or problems with checks you authorize us to pay. You agree that we will not be considered negligent in paying checks presented to us electronically through normal banking channels prior to receiving the actual check or paying checks even if we do not check the signature on the checks we pay.

If you assert against us a claim that a transaction was not authorized or an item was not properly payable because, for example, the item was forged or an endorsement was forged, you must cooperate with us and assist us in seeking criminal and civil penalties against the person responsible. You must file reports and complaints with the appropriate law enforcement authorities and promptly provide us with copies of such reports and complaints. You must also give us a statement, under oath, about the facts and circumstances relating to your claim. If you fail or refuse to do these things, we will consider that you have ratified the defect in the item and agree that we can charge the full amount of the item to your Account.

**You must notify us as soon as possible after receiving your Account statement if you believe there is an error or irregularity of any kind, including any unauthorized transaction or signature, lack of signature or alteration. You agree that thirty (30) days after we mailed a statement (or otherwise made it available to you) is a reasonable amount of time for you to review your Account statement and report any errors or other irregularities. In addition, by law we may be relieved of any potential liability for multiple unauthorized signatures or alterations by the same wrongdoer if you do not notify us in writing within thirty (30) days after your statement containing the first such irregularity was mailed or otherwise made available to you. Similarly, by law we may be relieved of any potential liability for losses arising due to your negligence. You agree that failure to report any error or irregularity in writing within thirty (30) days after we mailed your statement (or otherwise made it available to you) shall preclude you from recovering any amounts from us. No legal proceeding or action shall be brought by you against us to recover any amount alleged to have been improperly paid out of the Account (as well as related losses) due to an unauthorized transaction or signature, alteration or other defect unless (1) you have given the written notice provided above, and (2) such action shall have been commenced within the time required by applicable law. Transactions involving electronic funds transfers may be governed by the Electronic Fund Transfer Act and may be subject to KeyBank's Terms and Conditions for Electronic Fund Transfer Transactions.**

You may not deposit remotely created checks (items not bearing the maker's signature, but purporting to be authorized by the maker) to an account with us without our prior, express written consent. If you deposit remotely created checks with us, you agree that we may withhold a portion of the proceeds of such drafts or other funds in your Accounts in a reserve account, in an amount that we reasonably believe may be needed to cover future chargebacks, returned items, and/or claims that such drafts were unauthorized. You grant us a security interest in the reserve account. Unless we agree otherwise in writing with you, reserve funds shall not bear interest. Our rights to charge your Account for returned remotely created checks will not be limited by the balance or existence of any reserve. Our rights with respect to the reserve, as well as the security interest granted to us, shall survive the termination of this Agreement. We may discontinue accepting remotely created checks at any time without cause or prior notice.

Upon your authorization, or to the extent permitted by law, we may at our option send or otherwise make available your statements in an electronic medium, rather than mailing you a paper-based statement.

**11. Time Account Certificates.** All of the Time Accounts we currently offer are "book entry" Accounts, which means that the Time Account is owned by the person(s) shown on our records, and no certificate is issued by us on the Account. All Time Accounts are non-negotiable and non-transferable. We formerly issued certificates on some Time Accounts and, if we issued a certificate on your Time Account, you must present the certificate in order to make a withdrawal or close the Account. You should notify us at once if your certificate is lost or stolen. At our option, you must give us a bond from a surety company satisfactory to us in an amount not exceeding the balance in the Account, or other satisfactory indemnity, if you close a certificate Account without giving us the certificate.

**12. Joint Personal Accounts; Survivorship Accounts.** For Personal Accounts, if there are more than one of you, your Accounts are "joint Accounts." All deposits in joint Accounts are the property of each owner as joint tenants with rights of survivorship. While all owners are alive, we can honor checks or orders drawn by any owner, honor requests for withdrawals from any owner, release the entire amount on deposit in the joint Account to any owner, allow any owner to close the joint Account, and allow any owner to take all actions that a sole owner could take. Any owner can pledge the joint Account as security or grant a power of attorney to appoint an attorney-in-fact. However, we reserve the right to require the consent and signatures of all joint Account owners to take these actions. Each of you appoints all of the other owners as your true and lawful agents and attorneys-in-fact to conduct any and all banking business relating to your joint Accounts. Each of you also agrees that any other joint owner may endorse your name on any check made payable to you for all purposes, including depositing the check in your joint Account, or cashing the check.

You agree that we can follow the directions given, and take action requested, by any owner, even if the directions or actions to be taken are inconsistent with directions or instructions to act given by another owner. We are not liable for continuing to honor checks or other orders drawn on the joint Account by any owner or withdrawals made by any owner even after receiving notice from another owner not to do so. If we do receive notice, we may, but are not obligated to, refuse to honor any checks, orders or withdrawals from the joint Account unless all owners agree in writing. You agree that we can place a hold on funds in your joint Account or pay funds from your joint Account if we receive a garnishment, levy or other governmental order directed against any owner, even if the funds in the joint Account were not deposited by the owner against whom the order is directed.

For joint Accounts "with rights of survivorship" while all owners are living, each joint owner has the rights described above for joint Accounts. When any owner dies, the amounts on deposit in the joint Account pass to the surviving owners. The right of any survivor to obtain his or her share of the deceased owner's funds in a joint Account is subject to our right of set-off and the rights of any person (including us) that holds a security interest in or has any claim to funds in the joint Account.

On all joint Accounts, whether or not "with rights of survivorship," we may honor checks, orders, or requests for withdrawals from the surviving owners after the death of an owner. On joint Accounts without rights of survivorship, we may also honor checks, orders, or requests for withdrawals from the personal representative or legal successor of the deceased owner.

**13. Payable on Death Accounts.** In some states we offer Personal Accounts that are payable on death ("POD"). POD Accounts permit you to designate one or more beneficiaries to receive the funds on deposit in an Account after your death. Until your death, you are the owner of the Account and the beneficiary has no present, vested interest in the Account. You can change a beneficiary at any time. The beneficiary's right to receive the funds in the Account after your death is subject to our right of set-off and to the rights of any person (including us) that holds a security interest in or has any claim to the funds in your Account. On joint POD Accounts, the beneficiary's right to receive the deceased owner's share is subordinate to the surviving owners' rights and the beneficiary will not receive any funds unless all Account owners are deceased. In order to designate a beneficiary, a designation of beneficiary form must be completed and signed by you. If no beneficiary form is available, we will presume that no designation of POD exists.

**14. Fiduciary and Custody Accounts.** Trust Accounts and custody Accounts are fiduciary Accounts in which funds are held by a trustee or custodian for the benefit of another person. We offer a variety of these types of Accounts where permitted by applicable law.

An "in trust for" Account is an Account in which you name yourself as trustee in trust for one or more persons without otherwise establishing a written trust agreement. As with POD Accounts, you are the owner of the Account and the persons you name are considered beneficiaries and have no right to receive funds in the Account until all owners are deceased. The beneficiary's right to receive funds in the Account is subordinate to the rights of any other person (including us) that holds a security interest in or has a claim to the funds in the Account.

A Uniform Gift to Minors Act/Uniform Transfers to Minors Act ("UGMA/UTMA") Account is an Account established under a state law governing gifts or transfers to minors. In general, state law treats the minor as the owner of the Account and the custodian or trustee must hold funds in the Account solely for the benefit of the minor. State laws may restrict the trustee's or custodian's rights to use or withdraw the funds, regulate the appointment of a successor trustee/custodian and require the distribution of funds to the minor when the minor reaches a certain age. You must comply with all of these rules in order to maintain a UGMA/UTMA Account.

Some states have specific laws governing other specific types of fiduciary Accounts, such as Lawyer Trust Accounts. If you establish one of these types of Accounts you agree to comply with all of the laws applicable to such types of Accounts.

With all fiduciary and custody Accounts, the owners and beneficiaries of the Account agree that we will not be liable if the trustee or custodian commits a breach of trust or breach of fiduciary duty, or fails to comply with the terms of a written trust agreement or comply with applicable law. We are not responsible for enforcing the terms of any written trust agreement or applicable law against the trustee or custodian and can rely on the genuineness of any document delivered to us, and the truthfulness of any statement made to us, by a trustee or custodian.

**15. Powers of Attorney.** A power of attorney gives a person you designate as your "attorney-in-fact" the power to handle your affairs on your behalf while you are alive. For joint Accounts, we may require the consent and signatures of all Account owners in order to appoint an attorney-in-fact. All owners of the Account will be bound by any actions taken by the attorney-in-fact in connection with the Account. We do not honor powers of attorney on Business Accounts or Accounts owned by corporations, associations, partnerships, limited liability companies or on Accounts owned by fiduciaries. On other Accounts, we reserve the right not to honor powers of attorney. We will not honor a power of attorney unless it is in a form acceptable to us. We will not honor powers of attorney that do not survive your disability or declared incompetence, or that have limits on the time the power of attorney is in effect. We also will not honor any general power of attorney that does not specifically include detailed provisions granting the power to conduct all banking business on your behalf. If we decide to honor a power of attorney, we can later decide not to honor it any longer. Any attorney-in-fact appointed by you is subject to this Agreement.

**16. Closing Accounts.** We reserve the right to close any or all of your Accounts at any time for any reason whatsoever, including, but not limited to, because you have an excessive number or amount of overdrafts or your account is overdrawn for more than 10 days. If we do so, we will return the balance in the Account (less any amounts owed to us) to you by mailing a check to you at the address listed on our records. Subject to our right to require prior notice of withdrawal on some Accounts as described above, you may close any or all of your Checking Accounts or Savings Accounts at any time for any reason whatsoever.

If your Account is closed, you remain responsible for all fees incurred prior to the time the Account is closed. You also remain liable for all checks and electronic funds transfers drawn on the Account that have not been presented to us for payment and deducted from the Account prior to the time the Account is closed. We are not required to pay you interest that has accrued but not been credited to your Account prior to the date the Account is closed.

**17. Inactive Accounts/Unclaimed Funds.** We will consider a Checking Account or Savings Account to be inactive if there are no deposits or withdrawals for a period of one (1) year. If your Checking Account or Savings Account is inactive we may, in our discretion, decide not to pay checks or honor other requests for withdrawals on the Account until we receive proof that you have signed the checks or authorized the withdrawal.

For Time Accounts that are auto-renewing, the applicable period according to state law for determining whether there has been activity commences at the expiration of its initial term. The start of a new term does not constitute activity in the absence of other activity.

State law requires us to transfer the balance in all Accounts to a state agency after a certain period of no withdrawals, deposits or other activity on the Account and no contact with the Account owner.

If this happens to your Account, you must file a claim with the state agency to recover the funds. We are not liable for funds transferred to the state agency.

**18. Death/Incompetence.** Your death, or a declaration that you are legally incompetent to handle your affairs, does not end our authority to pay checks signed by you, to accept deposits or to collect items deposited until we receive written notice of your death or declared incompetence. Even after we receive notice, we can pay checks drawn by you before your death or declared incompetence for up to ten (10) days or any longer period permitted under applicable law.

On joint Accounts, your death or declared incompetence does not affect the rights of any other owner of the Account to make deposits, make withdrawals or, if applicable, write checks. We may require the surviving owners and any POD beneficiary to provide reasonable proof of your death or incompetence and, in some states, provide any tax releases or other documents or consents needed from government authorities before we pay any checks drawn on your joint Account or allow the surviving owners or your beneficiary to withdraw any funds from the Account. Each of you is responsible for notifying us when any other joint owner of an Account dies.

Checks or other items made payable to a deceased joint Account holder (e.g. Social Security checks or electronic deposits) must be returned to the issuer and may not be used, cashed or disposed of in any other way by the surviving Account holders. If such items are used, cashed or disposed of by any one or all of the surviving Account holders each Account holder remains liable for the amount of the item and any charges incurred as a result of the improper use of the item. In our discretion, we can charge your Account for the amount of these items and remit payment to the issuer of the item.

**19. Our Right of Set-off.** We reserve the right to withdraw at any time some or all of the funds that may now or later be on deposit in any or all of your Accounts and apply them to the payment of any debts (other than amounts you may owe us on a personal credit card account with us) you may now or later owe us. We also have the right to set-off against any direct deposit from the federal government to which you are not entitled to. We have this right even if the Account(s) we withdraw money from is a joint Account and the debt we apply it to is owed by only one of you. Likewise, we could withdraw money from an Account owned by only one person and apply it to reduce the joint debt of that person and another person. Our rights under this section are in addition to any right of set-off we may have under applicable law. You agree that our right of set-off is not conditioned on, or limited by, the complete mutuality of the parties obligated on the debt and owners on your Account, the maturity of the debt, the giving of notice to you, or the availability of any collateral securing the debt.

We also have the right to place a hold on funds in your Accounts if we have a claim against you or pending exercise of our right of set-off. If we place a hold on your Account, you may not withdraw funds from the Account and we can refuse to pay checks drawn on the Account.

**20. Adverse Claims; Interpleader; Legal Process.** We need not honor any claim against or involving an Account unless we are required to do so by order of a court or governmental agency that has jurisdiction over us. This rule applies to any person asserting any rights or interest regarding an Account, including you and other persons who are authorized to make withdrawals or write checks or who present a power of attorney signed by you.

If we receive notice of any claim or dispute or of any legal proceeding we reasonably believe involves you or any of your Accounts, in our discretion we may suspend transactions on any Account which we believe to be affected until final determination of the claim or proceeding. We may place a hold on any funds in the Account and suspend transactions whether the affected Account is in your name alone or is a joint Account. Suspension of transactions may, in our discretion, involve placing a hold on any funds in the affected Account or transferring funds from the affected Account to a separate suspension account throughout the pendency of the claim, dispute, or legal proceeding. An Account may be suspended even though the suspension may have been due to inadvertence, error because of similarity of the names of depositors, or other mistake. We also may act upon any notice of garnishment, levy, restraining order, injunction, subpoena or other legal process we reasonably believe to be valid, without independent verification by us. You agree that we are not liable for any damages or losses (including claims based on the return or dishonor of checks) to you caused by the suspension of your Account or action taken in response to legal process, as long as we acted in good faith.

You agree to indemnify us against all losses, costs, attorneys' fees, and any other liabilities that we incur by reason of responding to or initiating any legal action, including any interpleader action we commence, involving you or your Account. As part of that indemnity, in the event we incur liability to a creditor of yours as a result of

your creditor and to reimburse us for any expense, attorneys' fees, or other costs we may incur in collecting that amount from you.

We may, in our sole discretion and without any liability to you, initiate an action in interpleader to determine the rights of persons making adverse claims to your Account. We may exercise this right regardless of whether the persons making the adverse claims have complied with all statutory requirements pertaining to adverse claims, such as posting a bond or giving other surety. Upon initiation of an interpleader action, we will be relieved and discharged of all further duties and obligations. You agree that any costs associated with the action in interpleader will be charged against any Accounts you maintain with us.

**21. Assignment; Pledge.** You cannot assign or transfer your Account, or pledge your Account as collateral for a loan, without our written consent. We can withhold our consent for any reason. With our consent, any joint owner can pledge the entire Account as collateral for a loan. If we permit you or a joint owner to pledge your Account as collateral for a loan from us, you agree that if the person who pledged the Account dies we can apply the balance in the Account to pay off the loan. You agree that we have this right even if your Account is a joint Account with rights of survivorship or if you have a POD or an "in trust for" Account and have named a beneficiary or beneficiaries to receive your Account balance upon your death.

**22. Waiver of Notices.** We send periodic statements to you on most Checking Accounts and Savings Accounts to show activity on your Account, including any returned items or other credit and debit entries. You agree that these statements are sufficient notice to you and you waive any right to receive any other notice that may be required under clearinghouse rules, the Uniform Commercial Code or other state or federal laws (other than the federal Electronic Funds Transfer Act and the federal Truth in Savings Act).

**23. Check Cashing.** You may be required to provide positive identification when you present a check for payment. We may also limit the dollar amount of checks cashed. We provide check cashing privileges only to our customers. We reserve the right to charge a fee to a non customer if we decide to cash a check for the non customer, even if the check is drawn on us. You agree that the charging of such fee is not considered wrongful dishonor. Positive identification for a non customer shall include the non customer's thumbprint in most states.

**24. Addresses; Notices.** You agree that if we need to contact you or send you any written (paper-based) information (such as notices, Account statements, checks payable to you, or other communications), we can do so by mail addressed to any of you at the Postal Service address in our records or, at our option, by electronic communication(s) either authorized by you or permitted by law and transmitted by us to your e-mail address in our records. Unless the communication states another effective date, any paper-based communication we send you is effective when mailed to your Postal Service address by delivery to the mail service provider, and any electronic communication we send you is effective when transmitted by us to your e-mail service provider. You must notify us promptly in writing, or by e-mail with written confirmation mailed within five (5) days, if you change your Postal Service or e-mail address or if your e-mail service provider is no longer providing e-mail service for you. In no event shall we have any responsibility, and you hereby release us from all claims and liabilities, for any actions or omissions by you or your e-mail service provider in handling e-mail to or from you, or for any failure in computer hardware, software, or communications lines not maintained by us or under our control.

**25. Arbitration Provision.** This Arbitration Provision sets forth the circumstances and procedures under which a Claim or Claims (as defined below) may be arbitrated instead of litigated in court. This Arbitration Provision supersedes and replaces any existing arbitration provision between you and us. ==This Arbitration Provision will apply to your Account(s) unless you notify us in writing that you reject the Arbitration Provision within 60 days of opening your Account(s). Send your rejection notice to KeyBank National Association, P.O. Box 93752, Cleveland, Ohio 44101-5752.== Your notice must include your name, the names of any joint account holders and your Account number(s) and must be signed by you and all joint account holders. Your rejection notice should not include any other correspondence. Calling us to reject the Arbitration Provision or providing notice by any other manner or format than as described above will not operate as a rejection of this Arbitration Provision and consequently this Arbitration Provision will become part of this Agreement. ==Rejection of this Arbitration Provision does not serve as rejection of any other term or condition of your Agreement with us governing your Account(s).==

As used in this Arbitration Provision, the word "Claim" or "Claims" means any claim, dispute, or controversy between you and us arising from or relating to this Agreement or your Account(s), including, without limitation, the validity, enforceability, or scope of this Arbitration Provision or this Deposit Account Agreement. "Claim" or "Claims" includes claims of every kind and nature, whether pre-existing, present, or future, including, without limitation, initial claims, counterclaims, cross-claims, and third-party claims, and claims based upon contract, tort, fraud and other intentional torts, constitutions, statute, regulation, common law, and equity (including, without limitation, any claim for injunctive or declaratory relief). The word "Claim" or "Claims" is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute, or controversy that arises from or relates to (a) any Account subject to the terms of this Agreement (b) any electronic funds transfer from or to any account, (c) advertisements, promotions, or oral or written statements related to this Agreement or your Account, (d) your application for any Account, and (e) the collection of amounts owed by you to us.

This Arbitration Provision will not apply to Claims previously asserted, or which are later asserted, in lawsuits filed before the effective date of this Arbitration Provision or any prior arbitration provision between you and us, whichever is earlier. However, this Arbitration Provision will apply to all other Claims, even if the facts and circumstances giving rise to the Claims existed before the effective date of this Arbitration Provision.

Any Claim shall be resolved, upon the election of you or us, by binding arbitration pursuant to this Arbitration Provision and the applicable rules of either the American Arbitration Association or J.A.M.S/Endispute in effect at the time the Claim is filed (the "Arbitration Rules"). You may select one of these organizations to serve as the arbitration administrator if you initiate an arbitration against us or if either you or we compel arbitration of a Claim that the other party has brought in court. In addition, if we intend to initiate an arbitration against you, we will notify you in writing and give you twenty (20) days to select one of these organizations to serve as the

arbitration administrator. If you fail to select an administrator within that twenty (20)-day period, we will select one. In all cases, the arbitrator(s) should be a lawyer with more than ten (10) years of experience or a retired judge. If for any reason the selected organization is unable or unwilling or ceases to serve as the arbitration administrator, you will have twenty (20) days to select a different administrator from the above list; if you fail to select a different administrator within the twenty (20)-day period, we will select one. In all cases, a party who has asserted a Claim in a lawsuit in court may elect arbitration with respect to any Claim(s) subsequently asserted in that lawsuit by any other party or parties.

**IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE APPLICABLE ARBITRATION RULES. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU UNDERSTAND THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. THE FEES CHARGED BY THE ARBITRATION ADMINISTRATOR MAY BE GREATER THAN THE FEES CHARGED BY A COURT.**

There shall be no authority for any Claims to be arbitrated on a class action or private attorney general basis. Furthermore, arbitration can only decide your or our Claim(s) and may not consolidate or join the claims of other persons that may have similar claims. There shall be no pre-arbitration discovery except as provided for in the applicable Arbitration Rules. Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. At your written request, we will pay all fees up to $100.00 charged by the arbitration administrator for any Claim(s) asserted by you in the arbitration, after you have paid an amount equivalent to the fee, if any, for filing such Claim(s) in state or federal court (whichever is less) in the judicial district in which you reside. (If you have already paid a filing fee for asserting the Claim(s) in court, you will not be required to pay that amount again.) If you are required to pay any fees in excess of $100.00 to the arbitration administrator ("additional fees"), we will consider a request by you to pay all or part of the additional fees. To the extent that we do not approve your request, the arbitrator will decide whether we or you will be responsible for paying any such additional fees. If the arbitrator issues an award in our favor, you will not be required to reimburse us for any of the fees we have previously paid to the administrator or for which we are responsible. Each party shall bear the expense of that party's attorneys', experts', and witness fees, regardless of which party prevails in the arbitration, unless applicable law and/or this Agreement gives a party the right to recover any of those fees from the other party.

This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1 et seq. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of any party, shall provide a brief written explanation of the basis for the award. In conducting the arbitration proceeding, the arbitrator shall not apply the federal or any state rules of civil procedure or rules of evidence. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA and except that, if the amount in controversy exceeds $10,000.00, any party can appeal the award to a three-arbitrator panel administered by the arbitration administrator which shall reconsider de novo (i.e., without regard to the original arbitrator's findings) any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. The costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal. You and we shall keep confidential any decision of an arbitrator made with respect to any Claim(s) arbitrated under this Arbitration Provision and, with the exception of disclosure to your or our attorneys, accountants, auditors, and other legal or financial advisors, shall not disclose such decision to any other person.

This Arbitration Provision shall survive termination of all of your Accounts subject to this Agreement. If any portion of this Arbitration Provision is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Arbitration Provision or the Agreement. In the event of a conflict or inconsistency between the applicable Arbitration Rules and this Arbitration Provision, this Arbitration Provision shall govern.

**Contacting Arbitration Administrators**

If you have a question about the arbitration administrators mentioned in this Arbitration Provision or would like to obtain a copy of their Arbitration Rules or fee schedules, you can contact them as follows: **American Arbitration Association,** 1633 Broadway, 10th Floor, New York, New York 10019, www.adr.org, (800) 778-7879, Commercial or Consumer Rules, **J.A.M.S/Endispute,** 222 South Riverside Plaza, Suite 1850, Chicago, IL 60606, www.jams-endispute.com, (800) 352-5267, Financial Services Arbitration Rules and Procedures.

**26. Applicable Law.** This Agreement and all Accounts shall be governed by the laws of the State of Ohio (without regard for conflict of law rules) and applicable federal law, but with respect to all fees and charges related to your Account, federal law alone shall control.

**27. Amendments; Non-Waiver; Severability.** We reserve the right to change or add to the terms and conditions of this Agreement or change the terms of your Account at any time. We will give you such notice of the change as we determine is appropriate, such as by statement message or enclosure, letter, or as posted in the branch, and as required under applicable law. Where applicable law permits, we can notify you of the changes by posting a new version of this Agreement, or a notice of change to Accounts, in our branches.

We may decide not to enforce this Agreement or delay enforcing it in some circumstances or at some times. If we do so, you agree that we can still enforce this Agreement in the same circumstances at another time, in other

circumstances, or (c) other circumstances. If any provision of this Agreement is deemed invalid or unenforceable, the remaining provisions of this Agreement shall be enforced and construed as if the invalid provisions were not contained in this Agreement.

**28. Credit Reports.** You authorize us to obtain information about you, including a credit report, from third parties. If you ask, you will be told whether a credit report was requested and, if so, the name and address of the credit reporting agency that furnished the report.

**29. Disclosure of Account Information.** We may share information within the KeyCorp family of companies as well as with unaffiliated third parties external to Key as described in our Privacy Policy. **You specifically consent to us sharing information within the KeyCorp family of companies and with external unaffiliated third parties.**
**Note:** You may elect to opt out of information sharing, or may be automatically opted-out under your state law, as described in our Privacy Policy. If you are opted out, that election will override this consent to share, except for those instances in which we are otherwise permitted to share by law without your consent.

**30. Electronic Authentication or Signature; Electronic Records.** At our option we may adopt or accept commercially reasonable authentication procedures and/or electronic signatures to: (a) verify the identity of a sender of Electronic Records, (b) determine the Electronic Record has not been altered during electronic transmission or storage, and (c) authenticate the sender's Electronic Signature and attribute the Electronic Record to such sender. Each party hereto may adopt as its signature an electronic identification consisting of symbol(s) or codes(s) (**"Electronic Signatures"**), which may be affixed to or contained in electronic agreements, records or data (**"Electronic Records"**) transmitted by you or us to the other party. Such Electronic Signature so affixed to or contained in any Electronic Record shall be sufficient to verify the originating party and to evidence such party's acceptance of and agreement to be bound by the terms and conditions of such Electronic Record. Neither party shall disclose to any unauthorized person the confidential Electronic Signature of the other party.

**31. Enforceability of Electronic Records and Signed Documents.** The terms and conditions of any Electronic Record properly transmitted by you or us to the other party shall be considered in connection with any contemplated transaction to be a "writing" or "in writing" and shall be considered as authenticated by an Electronic Signature. Any Electronic Record containing an Electronic Signature (**"Signed Documents"**) shall be deemed for all purposes (a) to have been "signed" and (b) to constitute an "original" when printed from Electronic Records established and maintained by us or our authorized agents in the normal course of business. You agree not to contest the authorization for, or validity or enforceability of, Electronic Records and Signed Documents, or the admissibility of copies thereof, under any applicable law relating to whether certain agreements, files or Electronic Records are to be in writing (documentary form) or signed by the party to be bound thereby. Electronic Records and Signed Documents, if introduced as evidence on paper in any judicial or other proceeding will be admissible to the same extent and under the same conditions as other documentary business records.

Upon our written request, you agree to manually sign or place your signature on any paper original of any Electronic Record or Signed Document we provide to you containing your purported Electronic Signature. You irrevocably authorize and appoint us as your lawful attorney-in-fact with full power and authority to sign, in your name and on your behalf, any such original of any Electronic Record or Signed Document, if you fail or are unable, for any reason, to sign such original no later than ten days after our request to you to do so.

## PART II - FUNDS AVAILABILITY POLICY

Our Funds Availability Policy for deposits to all Personal deposit account and specified Business deposit account types described in section 4. below is to make funds from your cash and all local and non-local check deposits available to you on the first business day after the day we receive your deposit. Our Funds Availability Policy for deposits to all other Business deposit account types as stated in section 5. below is to make funds from your cash and most local check deposits available to you on the first business day after the day we receive your deposit. Some local check deposits will not be available until the second business day after the day we receive your deposit. Deposits of non-local checks will be available to you no later than the third business day after the day of your deposit. This policy applies to all deposit channels.

The sum of cash, checks, and other items which have been on deposit long enough to be available for withdrawal under this section is called your Available Balance. We make funds from your deposits available to you as explained below. Until funds are available, you will not be able to use them for certain transactions. For example, you will not be able to withdraw the funds in cash, nor will you be able to have checks certified against them. For certain other uses, we may make funds available during this delay period; however we may charge you for this service. Refer to the Deposit Account Fees and Disclosures for details about any fees that may be assessed.

**1. Determining the Availability of a Deposit.** The length of the delay is counted in business days beginning with the business day following the day of your deposit. Every day is a business day except Saturdays, Sundays, and legal holidays. Deposits made after 7:00 p.m. local time on any business day at an automated teller machine ("ATM") owned and operated by us will be considered received by us on the next business day. You can identify ATMs owned and operated by us by the initial screen message. Deposits made at an ATM not owned and operated by us will be available for withdrawal within five (5) business days.

Some of our branches have "cutoff" times. If you make a deposit at one of these branches before the cutoff time on a business day we are open we will consider that day to be the day of your deposit. However, if you make a deposit after the cutoff time or on a day we are not open, we will consider that the deposit was made on the next business day we are open. The cutoff time may vary by location but will not be earlier than 2:00 p.m. If the cutoff time is earlier than the branch closing time, the cutoff time will be posted in the branch. The length of the delay

varies depending on the type of deposit and is explained below.

Deposits containing 500 or more checks may be subject to a branch specific cut-off time. If a cut-off time applies it will be posted at the branch. Deposits of 500 or more checks made at a branch before the posted cut-off time will be considered received that business day. Deposits of 500 or more checks made at the branch after the posted cut-off time will be considered a next-business day deposit and processed accordingly. Cash is not subject to the cut-off time and will be verified and credited the same-day. The cut-off time may vary by location but will not be earlier than 2:00 p.m. local time.

**2. Same-Day Availability.** Direct deposits of electronic payments, such as Social Security benefits and payroll direct deposits are available on the business day that the funds are due to you.

The first $100 of your total deposits made on a business day will be available to you on that same business day.

**3. Next-Day Availability.** Funds from the following types of deposits and check deposits as described in the new section number 4. below are available on the first business day after the day of your deposit.

- U.S. Treasury checks that are payable to you.
- Wire Transfers.
- All checks drawn on KeyBank National Association. (In some instances funds may be available on the same business day of deposit.)
- If you make the deposit in person to one of our employees at one of our branches, funds from the following deposits are also available on the first business day after the day of your deposit:
  - Cash
  - State and local government checks deposited in that state into KeyBank accounts that are payable to you, if you use a special deposit slip which can be obtained at the teller window.
  - Cashier's, certified, and teller's checks that are payable to you, if you use a special deposit slip which can be obtained at the teller window.
  - Federal Reserve Bank checks, Federal Home Loan Bank checks, and postal money orders, if these items are payable to you.

If you do not make your deposit in person to one of our employees at one of our branches (for example, if you mail the deposit) funds from these deposits may not be available until the second business day after the day we receive your deposit.

**4. Other Check Deposits to any type of Personal deposit account and the following types of Business deposit accounts: Key Business Free Checking, Key Business Reward Checking, Key Business Basics Checking, Key Business Money Market Checking, Key Business Checking, Key Business Sweep Checking, IOLTA/IOLA/IOTA/RAHF/IORTA, Key Business Saver, Key Business Silver Money Market Savings, Key Business Signature Money Market Savings, Key Business Gold Money Market Savings.** Funds from deposits of local and non-local checks will be available on the first business day after the day of your deposit.

**5. Other Check Deposits to all other types of Business deposit accounts not listed above in section number 4.** The delay for other check deposits depends on whether the check is a local check or a non-local check. To determine whether a check is a local check or a non-local check, look at the routing number on the check. Once you have determined the first four digits of the routing number (1234 in the examples), refer to the chart below.



If you are depositing a check(s) at a KeyBank branch located in a state and county (where applicable) listed in the chart and the first four digits of the routing number on the check are listed in the Local Check Routing/Transit Number column for that state/county name, then the check is a local check. Funds from deposits of local checks will be available on the first business day after the day of your deposit unless the routing number listed in the Local Check Routing/Transit number column for that state/county name is denoted with an asterisk (*). If the routing number in the Local Routing/Transit Number column for that state/county name is denoted with an (*), the funds will be available on the second business day after the day of your deposit.

If the first four digits of the routing number on the check are not included next to the state /county name where the deposit is being made, the check is a non-local check. Funds from deposits of non-local checks will be available no later than the third business day after the day of your deposit.

| State | County | Local Check First Four Digits from Routing Numbers |
|---|---|---|
| Ohio, Kentucky, Michigan, Indiana | | 0110*, 0111*, 0112*, 0113*, 0114*, 0115*, 0116*, 0117*, 0118*, 0119*, 0210*, 0211*, 0212*, 0213*, 0214*, 0215*, 0216* 0219*, 0220, 0223*, 0260*, 0280*, 0310*, 0311*, 0312*, 0313*, 0319*, 0360*, 0410, 0412, 0420, 0421, 0422, 0423, 0430*, 0432*, 0433*, 0434*, 0440, 0441, 0442, 0510*, 0514*, 0515*, 0519*, 0520*, 0521*, 0522*, 0540*, 0550*, 0560*, 0570*, 0710, 0711*, 0712, 0719, 0720, 0724, 0730*, 0739*, 0740, 0749, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, |

Case 1:10-cv-21176-JLK   Document 1-110   Entered on FLSD Docket 02/18/2010   Page 15 of 20

| | | |
|---|---|---|
| | | 1131*, 1140*, 1149*, 1163*, 1210*, 1211*, 1212*, 1213*, 1220*, 1221*, 1222*, 1223*, 1224*, 1230*, 1231*, 1232*, 1233*, 1240*, 1241*, 1242*, 1243*, 1250*, 1251*, 1252*, 2110*, 2111*, 2112*, 2113*, 2114*, 2115*, 2116*, 2117*, 2118*, 2119*, 2210*, 2211*, 2212*, 2213*, 2214*, 2215*, 2216*, 2219*, 2220, 2223*, 2260*, 2280*, 2310*, 2311*, 2312*, 2313*, 2319*, 2360*, 2410, 2412, 2420, 2421, 2422, 2423, 2430*, 2432*, 2433*, 2434*, 2440, 2441, 2442, 2510*, 2514* 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2710, 2711*, 2712, 2719, 2720, 2724, 2730*, 2739*, 2740, 2749, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, 3019*, 3020*, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210*, 3211*, 3212*, 3213*, 3220*, 3223*, 3224*, 3230*, 3231*, 3232*, 3233*, 3240*, 3241*, 3242*, 3243*, 3250*, 3251*, 3252* |
| | Florida | 0530, 0531, 0532, 0539, 0610, 0611, 0612, 0613, 0620, 0621, 0622, 0630, 0631, 0632, 0640, 0641, 0642, 0650, 0651, 0652, 0653, 0654, 0655, 0660, 0670, 0810, 0812, 0815, 0819, 0820, 0829, 0840, 0841, 0842, 0843, 0865, 2530, 2531, 2532, 2539, 2610, 2611, 2612, 2613, 2620, 2621, 2622, 2630, 2631, 2632, 2640, 2641, 2642, 2650, 2651, 2652, 2653, 2654, 2655, 2660, 2670, 2810, 2812, 2815, 2819, 2820, 2829, 2840, 2841, 2842, 2843, 2865 |
| | Connecticut | 0110, 0111, 0112*, 0113*, 0114*, 0115*, 0116*, 0117*, 0118*, 0119, 0210, 0211, 0212, 0213, 0214, 0215*, 0216* 0219, 0220*, 0223*, 0260, 0280, 0310, 0311*, 0312*, 0313*, 0319*, 0360, 0410*, 0412*, 0420*, 0421*, 0422*, 0423*, 0430*, 0432*, 0433*, 0434*, 0440*, 0441*, 0442*, 0510*, 0514*, 0515*, 0519*, 0520*, 0521*, 0522*, 0540*, 0550*, 0560*, 0570*, 0710*, 0711*, 0712*, 0719*, 0720*, 0724*, 0730*, 0739*, 0740*, 0749*, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, 1070*, 1110*, 1111*, 1113*, 1119*, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210*, 1211*, 1212*, 1213*, 1220*, 1221*, 1222*, 1223*, 1224*, 1230*, 1231*, 1232*, 1233*, 1240*, 1241*, 1242*, 1243*, 1250*, 1251*, 1252*, 2110, 2111, 2112*, 2113*, 2114*, 2115*, 2116*, 2117*, 2118*, 2119*, 2210, 2211, 2212, 2213, 2214, 2215*, 2216*, 2219, 2220*, 2223*, 2260, 2280, 2310, 2311*, 2312*, 2313*, 2319*, 2360, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, 2440*, 2441*, 2442*, 2510*, 2514*, 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2710*, 2711*, 2712*, 2719*, 2720*, 2724*, 2730*, 2739*, 2740*, 2749*, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, 3019*, 3020*, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210*, 3211*, 3212*, 3213*, 3220*, 3223*, 3224*, 3230*, 3231*, 3232*, 3233*, 3240*, 3241*, 3242*, 3243*, 3250*, 3251*, 3252* |
| | Maine | 0110, 0111*, 0112, 0113*, 0114*, 0115*, 0116*, 0117*, 0118*, 0119*, 0210, 0211*, 0212*, 0213*, 0214*, 0215*, 0216* 0219*, 0220*, 0223*, 0260, 0280, 0310, 0311*, 0312*, 0313*, 0319*, 0360, 0410*, 0412*, 0420*, 0421*, 0422*, 0423*, 0430*, 0432*, 0433*, 0434*, 0440*, 0441*, 0442*, 0510*, 0514*, 0515*, 0519*, 0520*, 0521*, 0522*, 0540*, 0550*, 0560*, 0570*, 0710*, 0711*, 0712*, 0719*, 0720*, 0724*, 0730*, 0739*, 0740*, 0749*, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, 1070*, 1110*, 1111*, 1113*, 1119*, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210*, 1211*, 1212*, 1213*, 1220*, 1221*, 1222*, 1223*, 1224*, 1230*, 1231*, 1232*, 1233*, 1240*, 1241*, 1242*, 1243*, 1250*, 1251*, 1252*, 2110, 2111*, 2112, 2113*, 2114*, 2115*, 2116*, 2117*, 2118*, 2119*, 2210, 2211*, 2212*, 2213*, 2214*, 2215*, 2216*, 2219, 2220*, 2223*, 2260, 2280, 2310, 2311*, 2312*, 2313*, 2319*, 2360, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, 2440*, 2441*, 2510*, 2514*, 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2710*, 2711*, 2712*, 2719*, 2720*, 2724*, 2730*, 2739*, 2740*, 2749*, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, |

| | | |
|---|---|---|
| | | 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210*, 3211*, 3212*, 3213*, 3220*, 3223*, 3224*, 3230*, 3231*, 3232*, 3233*, 3240*, 3241*, 3242*, 3243*, 3250*, 3251*, 3252* |
| New York | Albany, Bronx, Broome, Cayuga, Chemung, Chenango, Clinton, Columbia, Cortland, Delaware, Dutchess, Essex, Franklin, Fulton, Greene, Hamilton, Herkimer, Jefferson, Kings, Lewis, Madison, Montgomery, Nassau, New York, Oneida, Onondaga, Orange, Oswego, Otsego, Putnam, Queens, Rensselaer, Richmond, Rockland, Saratoga, Schenectady, Schoharie, Schuyler, Seneca, St. Lawrence, Suffolk, Sullivan, Tioga, Tompkins, Ulster, Warren, Washington, Westchester | 0110, 0111, 0112*, 0113*, 0114*, 0115*, 0116, 0117, 0118, 0119, 0210, 0211, 0212, 0213, 0214, 0215*, 0216*, 0219, 0220, 0223, 0260, 0280, 0310, 0311*, 0312*, 0313*, 0319*, 0360, 0410*, 0412*, 0420*, 0421*, 0422*, 0423*, 0430*, 0432*, 0433*, 0434*, 0440*, 0441*, 0442*, 0510*, 0514*, 0515*, 0519*, 0520*, 0521*, 0522*, 0540*, 0550*, 0560*, 0570*, 0710, 0711*, 0712*, 0719*, 0720*, 0724*, 0730*, 0739*, 0740*, 0749*, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, 1070*, 1110*, 1111*, 1113*, 1119*, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210*, 1211*, 1212*, 1213*, 1220*, 1221*, 1222*, 1223*, 1224*, 1230*, 1231*, 1232*, 1233*, 1240*, 1241*, 1242*, 1243*, 1250*, 1251*, 1252*, 2110, 2111, 2112*, 2113*, 2114*, 2115*, 2116, 2117, 2118, 2119, 2210, 2211, 2212, 2213, 2214, 2215*, 2216*, 2219, 2220, 2223, 2260, 2280, 2310, 2311*, 2312*, 2313*, 2319*, 2360, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, 2440*, 2441*, 2510*, 2514*, 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2710*, 2711*, , 2712*, 2719*, 2720*, 2724*, 2730*, 2739*, 2740*, 2749*, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, 3019*, 3020*, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210*, 3211*, 3212*, 3213*, 3220*, 3223*, 3224*, 3230*, 3231*, 3232*, 3233*, 3240*, 3241*, 3242*, 3243*, 3250*, 3251*, 3252* |
| | Allegany, Cattaraugus, Chautauqua, Erie, Genesee, Livingston, Monroe, Niagara, Ontario, Orleans, Steuben, Wayne, Wyoming, Yates | 0110*, 0111*, 0112*, 0113*, 0114*, 0115*, 0116*, 0117*, 0118*, 0119*, 0210*, 0211*, 0212*, 0213, 0214*, 0215*, 0216* 0219*, 0220, 0223, 0260*, 0280*, 0310*, 0311*, 0312*, 0313*, 0319*, 0360*, 0410, 0412, 0420, 0421, 0422, 0423, 0430*, 0432*, 0433*, 0434*, 0440, 0441, 0442, 0510*, 0514*, 0515*, 0519*, 0520*, 0521*, 0522*, 0540*, 0550*, 0560*, 0570*, 0710, 0711*, 0712, 0719, 0720, 0724, 0730*, 0739*, 0740, 0749, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, 1070*, 1110*, 1111*, 1113*, 1119*, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210*, 1211*, 1212*, 1213*, 1220*, 1221*, 1222*, 1223*, 1224*, 1230*, 1231*, 1232*, 1233*, 1240*, 1241*, 1242*, 1243*, 1250*, 1251*, 1252*, 2110*, 2111*, 2112*, 2113*, 2114*, 2115*, 2116*, 2117*, 2118*, 2119*, 2210*, 2211*, 2212*, 2213, 2214*, 2215*, 2216*, 2219*, 2220, 2223, 2260*, 2280*, 2310*, 2311*, 2312*, 2313*, 2319*, 2360, 2410, 2412, 2420, 2421, 2422, 2423, 2430*, 2432*, 2433*, 2434*, 2440, 2441, 2442, 2510*, 2514* 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2710, 2711*, 2712, 2719, 2720, 2724, 2730*, 2739*, 2740, 2749, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, 3019*, 3020*, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210*, 3211*, 3212*, 3213*, 3220*, 3223*, 3224*, 3230*, |

| | | |
|---|---|---|
| | Vermont | 0110, 0111, 0112*, 0113*, 0114*, 0115*, 0116, 0117, 0118, 0119, 0210, 0211, 0212, 0213, 0214, 0215*, 0216*, 0219, 0220*, 0223*, 0260, 0280, 0310, 0311*, 0312*, 0313*, 0319*, 0360, 0410*, 0412*, 0420*, 0421*, 0422*, 0423*, 0430*, 0432*, 0433*, 0434*, 0440*, 0441*, 0442*, 0510*, 0514*, 0515*, 0519*, 0520*, 0521*, 0522*, 0540*, 0550*, 0560*, 0570*, 0710*, 0711*, 0712*, 0719*, 0720*, 0724*, 0730*, 0739*, 0740*, 0749*, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, 1070*, 1110*, 1111*, 1113*, 1119, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210*, 1211*, 1212*, 1213*, 1220*, 1221*, 1222*, 1223*, 1224*, 1230*, 1231*, 1232*, 1233*, 1240*, 1241*, 1242*, 1243*, 1250*, 1251*, 1252*, 2110, 2111, 2112*, 2113*, 2114*, 2115*, 2116, 2117, 2118, 2119, 2210, 2211, 2212, 2213, 2214, 2215*, 2216*, 2219, 2220*, 2223*, 2260, 2280, 2310, 2311*, 2312*, 2313*, 2319*, 2360, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, 2440*, 2441*, 2510*, 2514*, 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2710*, 2711*, , 2712*, 2719*, 2720*, 2724*, 2730*, 2739*, 2740*, 2749*, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, 3019*, 3020*, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210*, 3211*, 3212*, 3213*, 3220*, 3223*, 3224*, 3230*, 3231*, 3232*, 3233*, 3240*, 3241*, 3242*, 3243*, 3250*, 3251*, 3252* |
| | Colorado | 0110*, 0111*, 0112*, 0113*, 0114*, 0115*, 0116*, 0117*, 0118*, 0119*, 0210*, 0211*, 0212*, 0213*, 0214*, 0215*, 0216* 0219*, 0220*, 0223*, 0260*, 0280*, 0310*, 0311*, 0312*, 0313*, 0319*, 0360*, 0410*, 0412*, 0420*, 0421*, 0422*, 0423*, 0430*, 0432*, 0433*, 0434*, 0440*, 0441*, 0442*, 0510*, 0514*, 0515*, 0519*, 0520*, 0521*, 0522*, 0540*, 0550*, 0560*, 0570*, 0710*, 0711*, 0712*, 0719*, 0720*, 0724*, 0730*, 0739*, 0740*, 0749*, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010, 1011*, 1012*, 1019*, 1020, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, 1070, 1110*, 1111*, 1113*, 1119*, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210*, 1211*, 1212*, 1213*, 1220*, 1221*, 1222*, 1223*, 1224*, 1230*, 1231*, 1232*, 1233*, 1240*, 1241*, 1242*, 1243*, 1250*, 1251*, 1252*, 2110*, 2111*, 2112*, 2113*, 2114*, 2115*, 2116*, 2117*, 2118*, 2119*, 2210*, 2211*, 2212*, 2213*, 2214*, 2215*, 2216*, 2219*, 2220*, 2223*, 2260*, 2280*, 2310*, 2311*, 2312*, 2313*, 2319*, 2360*, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, 2440*, 2441*, 2442*, 2510*, 2514*, 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2710*, 2711*, 2712*, 2719*, 2720*, 2724*, 2730*, 2739*, 2740*, 2749*, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010, 3011*, 3012*, 3019*, 3020, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210*, 3211*, 3212*, 3213*, 3220*, 3223*, 3224*, 3230*, 3231*, 3232*, 3233*, 3240*, 3241*, 3242*, 3243*, 3250*, 3251*, 3252* |
| | Idaho, Utah | 0110*, 0111*, 0112*, 0113*, 0114*, 0115*, 0116*, 0117*, 0118*, 0119*, 0210*, 0211*, 0212*, 0213*, 0214*, 0215*, 0216* 0219*, 0220*, 0223*, 0260*, 0280*, 0310*, 0311*, 0312*, 0313*, 0319*, 0360*, 0410*, 0412*, 0420*, 0421*, 0422*, 0423*, 0430*, 0432*, 0433*, 0434*, 0440*, 0441*, 0442*, 0510*, 0514*, 0515*, 0519*, 0520*, 0521*, 0522*, 0540*, 0550*, 0560*, 0570*, 0710*, 0711*, 0712*, 0719*, 0720*, 0724*, 0730*, 0739*, 0740*, 0749*, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, 1070*, 1110*, 1111*, 1113*, 1119*, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210, 1211*, 1212*, 1213*, 1220, 1221*, 1222*, 1223, 1224*, 1230, 1231*, 1232*, 1233*, 1240, 1241, 1242, 1243, 1250*, 1251*, 1252*, 2110*, 2111*, 2112*, 2113*, 2114*, 2115*, 2116*, 2117*, 2118*, 2119*, 2210*, 2211*, 2212*, 2213*, 2214*, 2215*, 2216*, 2219*, 2220*, 2223*, 2260, 2280, 2310, 2311*, 2312*, 2313*, 2319*, 2360, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, |

| | | |
|---|---|---|
| | | 2522*, 2540*, 2550*, 2560*, 2570*, 2710*, 2711*, 2712*, 2719*, 2720*, 2724*, 2730*, 2739*, 2740*, 2749*, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, 3019*, 3020*, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210, 3211*, 3212*, 3213*, 3220, 3221*, 3222*, 3223, 3224*, 3230, 3231*, 3232*, 3233*, 3240, 3241, 3242, 3243, 3250*, 3251*, 3252* |
| Alaska | | 0110*, 0111*, 0112*, 0113*, 0114*, 0115*, 0116*, 0117*, 0118*, 0119*, 0210*, 0211*, 0212*, 0213*, 0214*, 0215*, 0216* 0219*, 0220*, 0223*, 0260*, 0280*, 0310*, 0311*, 0312*, 0313*, 0319*, 0360*, 0410*, 0412*, 0420*, 0421*, 0422*, 0423*, 0430*, 0432*, 0433*, 0434*, 0440*, 0441*, 0442*, 0510*, 0514*, 0515*, 0519*, 0710*, 0711*, 0712*, 0719*, 0720*, 0724*, 0730*, 0739*, 0740*, 0749*, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, 1070*, 1110*, 1111*, 1113*, 1119*, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210*, 1211*, 1212*, 1213*, 1220*, 1221*, 1222*, 1223*, 1224*, 1230, 1231*, 1232*, 1233*, 1240*, 1241*, 1242*, 1243*, 1250, 1251*, 1252*, 2110*, 2111*, 2112*, 2113*, 2114*, 2115*, 2116*, 2117*, 2118*, 2119*, 2210*, 2211*, 2212*, 2213*, 2214*, 2215*, 2216*, 2219*, 2220*, 2223*, 2260*, 2280*, 2310*, 2311*, 2312*, 2313*, 2319*, 2360*, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, 2440*, 2441*, 2442*, 2510*, 2514*, 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2710*, 2711*, 2712*, 2719*, 2720*, 2724*, 2730*, 2739*, 2740*, 2749*, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, 3019*, 3020*, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210*, 3211*, 3212*, 3213*, 3220*, 3221*, 3222*, 3223*, 3224*, 3230, 3231*, 3232*, 3233*, 3240*, 3241*, 3242*, 3243*, 3250, 3251*, 3252* |
| Oregon | | 0110*, 0111*, 0112*, 0113*, 0114*, 0115*, 0116*, 0117*, 0118*, 0119*, 0210*, 0211*, 0212*, 0213*, 0214*, 0215*, 0216* 0219*, 0220*, 0223*, 0260*, 0280*, 0310*, 0311*, 0312*, 0313*, 0319*, 0360*, 0410*, 0412*, 0420*, 0421*, 0422*, 0423*, 0430*, 0432*, 0433*, 0434*, 0440*, 0441*, 0442*, 0510*, 0514*, 0515*, 0519*, 0710*, 0711*, 0712*, 0719*, 0720*, 0724*, 0730*, 0739*, 0740, 0749, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, 1030*, 1031*, 1039*, 1040*, 1041*, 1049*, 1070*, 1110*, 1111*, 1113*, 1119*, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210, 1211*, 1212*, 1213*, 1220, 1221*, 1222*, 1223, 1224*, 1230, 1231, 1232, 1233, 1240, 1241*, 1242*, 1243*, 1250, 1251*, 1252*, 2110*, 2111*, 2112*, 2113*, 2114*, 2115*, 2116*, 2117*, 2118*, 2119*, 2210*, 2211*, 2212*, 2213*, 2214*, 2215*, 2216*, 2219, 2220*, 2223*, 2260*, 2280*, 2310*, 2311*, 2312*, 2313*, 2319*, 2360*, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, 2440*, 2441*, 2442*, 2510*, 2514*, 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2220*, 2223*, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, 2440*, 2441*, 2442*, 2515*, 2519*, 2710*, 2711*, 2712*, 2719*, 2720*, 2724*, 2730*, 2739*, 2740*, 2749*, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, 3019*, 3020*, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, , 3210, 3211*, 3212*, 3213*, 3220, 3221*, 3222*, 3223, 3224*, 3230, 3231, 3232, 3233, 3240, 3241*, 3242*, 3243*, 3250, 3251*, 3252* |
| Washington | | 0110*, 0111*, 0112*, 0113*, 0114*, 0115*, 0116*, 0117*, 0118*, 0119*, 0210*, 0211*, 0212*, 0213*, 0214*, 0215*, 0216* 0219*, 0220*, 0223*, 0260*, 0280*, 0310*, 0311*, 0312*, 0313*, 0319*, 0360*, 0410*, 0412*, 0420*, 0421*, 0422*, 0423*, 0430*, 0432*, 0433*, 0434*, 0440*, 0441*, 0442*, 0510*, 0514*, 0515*, 0519*, 0710*, 0711*, 0712*, 0719*, 0720*, 0724*, 0730*, 0739*, 0740*, 0749*, 0750*, 0759*, 0813*, 0830*, 0839*, 0863*, 0910*, 0911*, 0912*, 0913*, 0914*, 0915*, 0918*, 0919*, 0920*, 0921*, 0929*, 0960*, 1010*, 1011*, 1012*, 1019*, 1020*, 1021*, 1022*, 1023*, |

Case 1:10-cv-21176-JLK   Document 30-1   Entered on FLSD Docket 02/18/2010   Page 19 of 20

|  |
|---|
| 1113*, 1119*, 1120*, 1122*, 1123*, 1130*, 1131*, 1140*, 1149*, 1163*, 1210, 1211*, 1212*, 1213*, 1220, 1221*, 1222*, 1223, 1224*, 1230, 1231, 1232, 1233, 1240*, 1241*, 1242*, 1243*, 1250, 1251, 1252, 2110*, 2111*, 2112*, 2113*, 2114*, 2115*, 2116*, 2117*, 2118*, 2119*, 2210*, 2211*, 2212*, 2213*, 2214*, 2215*, 2216*, 2219*, 2220*, 2223*, 2260*, 2280*, 2310*, 2311*, 2312*, 2313*, 2319*, 2360*, 2410*, 2412*, 2420*, 2421*, 2422*, 2423*, 2430*, 2432*, 2433*, 2434*, 2440*, 2441*, 2442*, 2515*, 2519*, 2520*, 2521*, 2522*, 2540*, 2550*, 2560*, 2570*, 2710*, 2711*, 2712*, 2719*, 2720*, 2724*, 2730*, 2739*, 2740*, 2749*, 2750*, 2759*, 2813*, 2830*, 2839*, 2863*, 2910*, 2911*, 2912*, 2913*, 2914*, 2915*, 2918*, 2919*, 2920*, 2921*, 2929*, 2960*, 3010*, 3011*, 3012*, 3019*, 3020*, 3021*, 3022*, 3023*, 3030*, 3031*, 3039*, 3040*, 3041*, 3049*, 3070*, 3110*, 3111*, 3113*, 3119*, 3120*, 3122*, 3123*, 3130*, 3131*, 3140*, 3149*, 3163*, 3210, 3211*, 3212*, 3213*, 3220, 3221*, 3222*, 3223, 3224*, 3230, 3231, 3232, 3233, 3240*, 3241*, 3242*, 3243*, 3250, 3251, 3252 |

**Checks Subject to Special Rules.** Some checks are marked "payable through" and have a four- or nine- digit number nearby. For these checks, use this four-digit number (or the first four digits of the nine-digit number), not the routing number on the bottom of the check, to determine if these checks are local or non-local.

**6. Longer Delays May Apply.** In some cases, we will not make all of the funds that you deposit by check available at the times shown above. Depending on the type of check that you deposit, funds may not be available until the fifth business day after the day of your deposit. However, the first $100 of your total deposits made on a business day will be available to you on that same business day.

If we are not going to make all funds from your deposit available at the times shown above, we will notify you at the time you make your deposit. We will also tell you when the funds will be available. If your deposit is not made directly to a bank employee at a branch, or if we decide to take this action after you have left the premises, we will mail you the notice not later than the close of the business day following the banking day you made your deposit, or on the business day we learn of the reason requiring delay.

If you need the funds from a deposit right away, you should ask us when the funds will be available.

In addition, funds you deposit by check may be delayed for a longer period under the following circumstances:
- We believe a check you deposit will not be paid.
- You deposit checks totaling more than $5,000 on any one day.
- You redeposit a check that has been returned unpaid.
- You have overdrawn your account repeatedly in the last six months.
- There is an emergency, such as failure of computer or communications equipment or other conditions beyond our control.

We will notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available for withdrawal no later than the eleventh business day after the day of your deposit. In case of emergency conditions, a notification of any delay in your ability to withdraw funds will be provided within a reasonable time and in a reasonable manner given the emergency circumstances unless funds subject to this delay are made available before such notification must be provided.

**7. Special Rules for New Accounts.** If you are a new customer, the following special rules may apply, at our discretion, during the first 30 days your account is open instead of the rules described above.

Funds from electronic direct deposits to your account will be available on the business day that the funds are due to you. Funds from deposits of cash, wire transfers, and the first $5,000 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you (and you may have to use a special deposit slip). The excess over $5,000 will be available no later than the ninth business day after the day of your deposit. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $5,000 will not be available until the second business day after the day of your deposit.

Funds held from all other check deposits will be available on the ninth business day after the day of your deposit.

**8. Hold on Other Funds.** If we cash a check for you that is drawn on another bank, we may withhold the availability of a corresponding amount of funds that are already in your account. Those funds in your account will be available 2 business days after the day the check is cashed for a local check and 5 business days after the day the check is cashed for a non-local check. Local and Non-local checks are described in the funds availability schedule.

[ CLOSE ]                                                                                                          [ ◀ BACK ]

For help, call us at 1-800-KEY2YOU® (1-800-539-2968).
Member FDIC