# Composite Exhibit 2



Page 1

Slip Copy, 2008 WL 4358554 (Ohio App. 8 Dist.), 2008 -Ohio- 4875
**(Cite as: 2008 WL 4358554 (Ohio App. 8 Dist.))**

**C**

CHECK OHIO SUPREME COURT RULES FOR
REPORTING OF OPINIONS AND WEIGHT OF
LEGAL AUTHORITY.

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.
Terese WEBB, Plaintiff-Appellant,
v.
ALC OF WEST CLEVELAND, INC., et al., De-
fendants-Appellees.
No. 90843.

Decided Sept. 25, 2008.

**Background:** Buyer of car brought suit against
seller and creditor, arising out of dispute over sale
of car, which buyer tendered back to seller after she
was able to find co-signer for loan, after which
creditor refused to take buyer off sales contract, as-
serting numerous claims, including breach of con-
tract and deceptive acts. Defendants filed motion to
stay proceedings pending arbitration. The Court of
Common Pleas, Cuyahoga County, Case No. CV-
635395, granted motion without conducting an
evidentiary hearing. Buyer appealed.

**Holding:** The Court of Appeals, Kenneth A. Rocco,
J. held that trial court was required to conduct evid-
entiary hearing on defendants' motion to stay pro-
ceedings pending arbitration.

Vacated and remanded.

West Headnotes

**[1] Alternative Dispute Resolution 25T ⏵⏵211**

25T Alternative Dispute Resolution
 25TII Arbitration
  25TII(D) Performance, Breach, Enforcement,
and Contest
   25Tk204 Remedies and Proceedings for
Enforcement in General
    25Tk211 k. Trial or Hearing. Most
Cited Cases

**Alternative Dispute Resolution 25T ⏵⏵213(6)**

25T Alternative Dispute Resolution
 25TII Arbitration
  25TII(D) Performance, Breach, Enforcement,
and Contest
   25Tk204 Remedies and Proceedings for
Enforcement in General
    25Tk213 Review
     25Tk213(6) k. Determination and
Disposition. Most Cited Cases
Trial court was required to conduct evidentiary
hearing regarding seller's alleged repudiation of
contract with buyer for sale of car, whether this re-
pudiation waived seller's right to demand arbitra-
tion with buyer, and effect of credit company's rati-
fication of contract after alleged repudiation, as
seller's alleged waiver of right to arbitrate occurred
before suit was filed, and, thus, trial court's order
staying case pending arbitration would be vacated.
R.C. § 2711.02.

**[2] Alternative Dispute Resolution 25T ⏵⏵196**

25T Alternative Dispute Resolution
 25TII Arbitration
  25TII(D) Performance, Breach, Enforcement,
and Contest
   25Tk190 Stay of Proceedings Pending Ar-
bitration
    25Tk196 k. Particular Cases. Most
Cited Cases
Buyer's contention that contract with seller for sale
of car was fraudulently induced was not sufficient
to defeat a motion for a stay pending arbitration.

**[3] Alternative Dispute Resolution 25T ⏵⏵
134(6)**

25T Alternative Dispute Resolution
 25TII Arbitration

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 4358554 (Ohio App. 8 Dist.), 2008 -Ohio- 4875
**(Cite as: 2008 WL 4358554 (Ohio App. 8 Dist.))**

25TH(B) Agreements to Arbitrate
    25Tk131 Requisites and Validity
       25Tk134 Validity
           25Tk134(6)  k.  Unconscionability.
Most Cited Cases
Arbitration clause in contract between buyer and seller for sale of car was not unconscionable, as the contract gave buyer the right to reject the arbitration clause.

Civil Appeal from the Cuyahoga County, Court of Common Pleas, Case No. CV-635395.Michael L. Fine, Zipkin Whiting Co., L.P.A., Beachwood, OH, for appellant.

Robert A. Poklar, Tina Rhodes, Robert A. Poklar & Associates, Inc ., Brecksville, OH, for appellee ALC of West Cleveland, Inc.

Martin C. Bryce, Jr., Alan S. Kaplinski, Ballard Spahr Andrews & Ingersoll, Philadelphia, PA, William J. Hubbard, Thompson Hine LLC, Cleveland, OH, Thomas J. Kirkwood, Thompson Hine LLC, Cincinnati, OH, for appellee Credit Acceptance Corp.

Before: ROCCO, J., GALLAGHER, P.J., and BOYLE, J.

KENNETH A. ROCCO, J.

**\*1 {¶ 1}** Plaintiff-appellant, Terese Webb, appeals from common pleas court orders granting the defendants-appellees' motions to stay proceedings pending arbitration. She contends that the court abused its discretion by denying her request for an evidentiary hearing regarding the enforceability of the arbitration clause. She further argues that the court erred by failing to find that (a) the arbitration clause was inapplicable to her claims; (b) appellees waived their right to enforce the arbitration clause; (c) she was fraudulently induced to agree to the arbitration clause; (d) the arbitration clause was unconscionable and therefore unenforceable, and (e) the arbitration clause was unenforceable because it

violated public policy. We find that, under the particular circumstances of this case, the trial court abused its discretion by failing to conduct an evidentiary hearing regarding the factual question whether the defendants-appellees waived their right to enforce the arbitration clause. Accordingly, we vacate and remand for further proceedings.

**{¶ 2}** The complaint in this case was originally filed on September 12, 2007, and was amended on September 21, 2007 to include an exhibit inadvertently excluded from the original. It alleges that, on February 16, 2007, appellant arranged to purchase a Chrysler Sebring for $9,499 from appellee, ALC of West Cleveland, Inc., doing business as Banc Auto Liquidators. She claims ALC rushed her through financing paperwork and she executed a retail installment sales agreement which included, inter alia, an arbitration clause. She was not informed that any additional approval or authorization was necessary. She paid a $1,700 downpayment and left with the vehicle and a temporary license tag.

**{¶ 3}** On February 24, 2007, the salesman called her and told her that she needed a co-signer and if she did not find one, she would have to return the car. She was unable to find a co-signer, and tendered the vehicle back to the salesman on March 14, 2007. Nonetheless, the financing company, Credit Acceptance Corporation, informed her that her financing had been approved between March 15 and March 21, 2007, that it had not been informed that appellant had returned the vehicle, and that it was not willing to "take [her] off the sales contract." Credit Acceptance Corporation repossessed the vehicle and sold it at auction.

**{¶ 4}** Appellant's complaint includes some twenty-six claims for relief and a request for treble damages. These claims assert, among other things, that (1) ALC breached its contract with appellant by failing to provide the vehicle on the agreed upon terms and demanding its return; (2) defendants intentionally caused appellant to suffer emotional distress; (3) defendants wrongly accused appellant of theft, presented false evidence in connection with

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 4358554 (Ohio App. 8 Dist.), 2008 -Ohio- 4875
**(Cite as: 2008 WL 4358554 (Ohio App. 8 Dist.))**

the investigation, and used this accusation as leverage in a civil dispute with appellant; (4) defendants engaged in deceptive acts by failing to include all terms in the contract and by providing faulty notice of repossession and of disposition of the vehicle; (5) defendants unlawfully used a notary seal; (6) defendants engaged in deceptive acts or practices by representing that the vehicle was available to appellant based on financing terms that did not exist; (7) various parts of the agreement were unconscionable, including the arbitration agreement, defendants' failure to return appellant's downpayment, and the excessive price; (8) fraud; and (9) civil conspiracy.

*2 {¶ 5} ALC filed a motion to stay proceedings pending arbitration of this matter; Credit Acceptance Corporation filed a motion to dismiss this action or to stay proceedings pending arbitration. Appellant responded to both motions. The court granted both motions and stayed proceedings pending arbitration. Appellant now appeals from these rulings.

{¶ 6} The "Retail Installment Contract" executed by appellant on February 16, 2007 contains an "Agreement to Arbitrate" which states, in pertinent part:

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "we" and "us" mean Seller and/or Seller's Assignee, Credit Acceptance Corporation, or their employees, agents or assignees or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and us. "You" means the Buyer(s). A "Dispute" is any dispute, controversy or claim between You and us arising out of or in any way related to this Contract, or any default under this Contract, or the collection of amounts due under this Con-

tract, or the purchase, sale, delivery, set-up quality of the Vehicle, or any product or service included in this Contract. "Dispute" includes contract claims, and claims based on tort or any other legal theories. Either You or we may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes brought later in the lawsuit. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. The arbitrator shall decide whether a particular Dispute is subject to arbitration and any question as to the enforceability of all or part of this Arbitration Clause. * * * *

[1] {¶ 7} In her first assignment of error, appellant urges that the court should have held an evidentiary hearing on the enforceability of the arbitration clause. Appellant recognizes that, unlike the statute governing actions to compel arbitration, the statute governing motions for a stay of proceedings pending arbitration (R.C. 2711.02), does not require an evidentiary hearing. *Maestle v. Best Buy Co.,* 100 Ohio St.3d 330, 800 N.E.2d 7, 2003-Ohio-6465 . While the Ohio Supreme Court in *Maestle* intimated that the court might have discretion to hold a hearing in such cases, it concluded that "it is not appropriate to read an implicit requirement into the statute." *Id.* at ¶ 19, 800 N.E.2d 7.

{¶ 8} Under R.C. 2711.02, the court must satisfy itself that the issue is referable to arbitration pursuant to a written agreement to arbitrate before it may stay proceedings pending arbitration. Appellant here concedes that at least some of the claims in her complaint relate to the failed purchase contract. These claims are clearly referable to arbitration pursuant to the contract. The question whether other claims may fall within the arbitration clause is a matter which the parties have left to the arbitrator, not the court, to decide, when they agreed that "the arbitrator shall decide whether a particular Dispute is subject to arbitration." FN1 See, e.g., *AT & T Technologies, Inc. v. Communication Workers of*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2008 WL 4358554 (Ohio App. 8 Dist.), 2008 -Ohio- 4875
**(Cite as: 2008 WL 4358554 (Ohio App. 8 Dist.))**

*America* (1986), 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648.

> FN1. For this reason, we decline to address appellant's second assignment of error. The question whether the arbitration clause is applicable to some of her claims is a matter for the arbitrator, not an issue for this court to decide.

**\*3 {¶ 9}** Our analysis does not end here, however. Appellant argues that appellees waived the right to enforce the arbitration clause by repudiating the contract. This is a mixed question of law and fact. *Snider v. S. Forty Homes, Inc.,* Muskingum App. No. CT2007-0027, 2008-Ohio-385, ¶ 8. Because Ohio public policy favors arbitration, the party asserting waiver bears the burden of proving it. "A party asserting waiver must establish (1) the waiving party knew of the existing right to arbitrate; and (2) the totality of the circumstances demonstrate the party acted inconsistently with the known right." *Id.,* ¶ 10, citing *Atkinson v. Dick Masheter Leasing II, Inc.,* Franklin App. No. 01AP-1016, 2002-Ohio-4299.

**{¶ 10}** Most cases discussing waiver of the right to arbitrate are focused on conduct in litigation. Such conduct will be apparent from the record; no evidence is necessary to prove it. However, where, as here, the alleged waiver occurs before the case is filed, the party seeking to prove waiver must be given an opportunity to develop an evidentiary record, at least when they have requested an evidentiary hearing. The trial court here abused its discretion by failing to conduct an evidentiary hearing regarding the defendants' alleged repudiation of the contract, whether this repudiation waived the right to demand arbitration, and the effect of Credit Acceptance Corporation's ratification of the contract after the alleged repudiation. Therefore, we sustain the first assignment of error, vacate the trial court's order staying the case pending arbitration and remand for hearing on the question whether defendants waived the right to arbitrate.

**[2][3] {¶ 11}** We find no merit to any of appellant's other arguments against enforcing the arbitration clause. Appellant's contention that the contract was fraudulently induced was not sufficient to defeat a motion for stay pending arbitration. *ABM Farms, Inc. v. Woods,* 81 Ohio St.3d 498, 502, 692 N.E.2d 574, 1998-Ohio-612. Appellant also could not demonstrate that the arbitration clause was unconscionable because the contract gave her the right to reject the arbitration clause. *Circuit City Stores v. Ahmed* (9th Cir.2002), 283 F.3d 1198, 1199. Accordingly, we overrule appellant's remaining assignments of error.

Vacated and remanded for further proceedings consistent with this opinion.

It is ordered that appellant recover of appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, P.J., and MARY J. BOYLE, J., concur.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct. Prac.R. II, Section 2(A)(1).

Ohio App. 8 Dist.,2008.
Webb v. ALC of W. Cleveland, Inc.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

Slip Copy, 2008 WL 4358554 (Ohio App. 8 Dist.), 2008 -Ohio- 4875
**(Cite as: 2008 WL 4358554 (Ohio App. 8 Dist.))**

Slip Copy, 2008 WL 4358554 (Ohio App. 8 Dist.),
2008 -Ohio- 4875

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Not Reported in F.Supp.2d, 2007 WL 2778664 (N.D.Ohio)
**(Cite as: 2007 WL 2778664 (N.D.Ohio))**

Page 1

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Ohio,
Eastern Division.
Marilyn **HOWARD**, Plaintiff,
v.
**WELLS FARGO** MINNESOTA, NA, as Trustee,
Defendant.
**No. 1:06CV2821.**

Sept. 21, 2007.

Mark I. Wachter, Mays, Karberg & Wachter, Neil S. Sarkar, Kurant Wachter, Cleveland, OH, for Plaintiff.

Barbara Friedman Yaksic, McGlinchey Stafford, Beachwood, OH, Defendant.


OPINION AND ORDER

CHRISTOPHER A. BOYKO, J.

*1 This matter comes before the Court upon the Motion of Defendant, Wells Fargo Bank, N.A., as Trustee ("Wells Fargo Bank"), improperly named in the Complaint as Wells Fargo Minnesota, N.A., to Stay Court Proceedings and to Dismiss Class Action Claims. (ECF DKT # 3). For the following reasons, the motion is granted, all court proceedings are stayed, and the class action claims are dismissed.


*I. FACTUAL BACKGROUND*

On April 11, 2000, Plaintiff Marilyn Howard ("Howard") obtained a residential mortgage loan from Delta Funding Corporation ("Delta"), evidenced by a Note and Mortgage on property located at 13004 Rexwood, Garfield Heights, Ohio 44105. On November 4, 2003, the Loan was assigned to Wells Fargo Bank.

At the same time she executed the Note and Mortgage, Howard also executed a separate Arbitration Agreement, setting forth "the circumstances and procedures under which claims (as defined below) may be arbitrated instead of litigated in court." The Arbitration Agreement defines **"Claims"** as follows:

> any claim, dispute or controversy between you and us (except for any Excluded Claims, as defined below) arising from or relating to the [Loan] or the relationships resulting from the [Loan] ... The term "Claim" is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute or controversy that arises under or relates to the Truth in Lending Act, the Homeowners and Equity Protection Act and Regulation Z (including any purported election to rescind the Credit Transaction); the Equal Credit Opportunity Act and Regulation B; the Real Estate Settlement Procedures Act and Regulation X; the Fair Credit Reporting Act; the Fair Debt Collection Practices Act, state insurance and usury lending laws; fraud or misrepresentation, including claims for failing to disclose material facts; other federal or state consumer protection statutes or regulations; any party's execution of this Agreement and/or willingness to be bound by the terms of this Agreement; or any dispute about soliciting, originating, making, closing, servicing, collecting or enforcing the [Loan].

"Excluded Claims", among others, are: "(a) any action to effect a ... foreclosure or to establish a deficiency judgment; (b) any action arising out of unlawful detainer; (c) eviction ...; [and] (e) any action to quiet title."

In a separate paragraph, the Agreement further provides in pertinent part: "There shall be no right

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2007 WL 2778664 (N.D.Ohio)
**(Cite as: 2007 WL 2778664 (N.D.Ohio))**

or authority for any Claims to be arbitrated on a *class action* or class-wide basis. There shall be no right to arbitrate a claim as a representative of others or in a private attorney general capacity."

Directly above Howard's signature was the following *Acknowledgment:* "By signing below, you acknowledge that you understand and agree that if arbitration of any Claim is elected, you will be giving up your right to a court or jury trial and the right to be part of a class action, and that you give up those rights knowingly and voluntarily. You further understand and agree that other rights that you would have if you went to court will also not be available in arbitration."

*2 In the captioned Complaint, **Howard** alleges **Wells Fargo** failed to record a satisfaction of mortgage with the County Recorder of Cuyahoga County within ninety days of the date the mortgage was paid in full, as required by Ohio Revised Code § 5301.36(B). Howard seeks to represent a putative class of all persons who, since January 3, 2000, paid in full a residential mortgage loan with respect to which Wells Fargo Bank was the mortgagee; and the satisfaction was not filed in the appropriate County Recorder's Office within ninety days after such payment in full. The Complaint seeks statutory damages in the amount of Two Hundred Fifty Dollars, interest, litigation costs, and expenses.

The instant case was removed to federal court on November 21, 2006 under the Class Action Fairness Act. The proposed class includes more than one hundred members and the alleged damages exceed Five Million Dollars. Wells Fargo Bank submits a declaration that it held as Trustee more than thirty thousand Ohio residential mortgage loans which were paid off from January 3, 2000 to the present. At the statutory minimum damage figure of Two Hundred Fifty Dollars per unfiled mortgage loan satisfaction, the damages exceed the amount required by the Class Action Fairness Act.

Wells Fargo Bank has moved to stay the court proceedings and to dismiss the class action claims,

based upon the operation of the Arbitration Agreement executed at the same time as Howard's Note and Mortgage. Howard asserts, though she agreed to arbitrate certain disputes, this Complaint is not a "Claim" under the Arbitration Agreement. Moreover, this action arose three months after the parties' credit transaction relationship ended, and constitutes an "Excluded Claim." Further, Plaintiff insists she retains her right to pursue a class action claim; because the class action waiver in the Agreement is unconscionable and frustrates the purpose of R.C. § 5301.36.

## II. LAW AND ANALYSIS

### Standard of Review

The Federal Arbitration Act ("FAA")

By its terms, the Arbitration Agreement, executed by Plaintiff Marilyn Howard, is governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.* The FAA provides that an arbitration clause in a "transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2003). If the Court determines that an issue brought before it is referable to arbitration under a written arbitration agreement, it shall, on the application of one of the parties, stay the proceedings until arbitration is completed. 9 U.S.C. § 3 (2003). The FAA mandates when the Court is "satisfied that the making of the agreement for arbitration ... is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4 (2003). The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. *See Fazio v. Lehman Bros., Inc.,* 340 F.3d 386, 392 (6th Cir.2003). The FAA requires courts to "rigorously enforce" arbitration agreements. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2778664 (N.D.Ohio)
**(Cite as: 2007 WL 2778664 (N.D.Ohio))**

221 (1985). Yet, arbitration clauses are subject to the same defenses or bars as other contract provisions. 9 U.S.C. § 4 (2003). The Court must ascertain whether the parties agreed to arbitrate the dispute at issue. See *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 626 (1985). A party cannot be required to arbitrate any dispute if the party has not agreed to do so. *Steelworkers v. Warrior & Gulf Co.,* 363 U.S. 574, 582 (1960). The FAA does not confer an absolute right to compel arbitration, but only a right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University,* 489 U.S. 468, 469 (1989).

*3 The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Financial Corp.Alabama v. Randolph,* 531 U.S. 79, 91 (2000); *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991).

Plaintiff Howard argues her cause of action is beyond the ambit of the Arbitration Agreement. A "Claim", under the Agreement, is defined as arising out of the Credit Transaction or Loan; and Howard's Credit Transaction or Loan terminated when she paid her Loan in full on January 3, 2006. Howard insists Defendant's statutory duty under R.C. § 5301.36(D), to record the satisfaction of the mortgage necessarily arises *after* the loan is paid.

Yet, the Arbitration Agreement expressly survives full payment of the Loan. Under the caption, "Survival, Severability, Primacy" the document states: "This Agreement shall survive voluntary payment of the loan in full by you ..." "Moreover, the United States Supreme Court has held a dispute, "although arising after the expiration of the collective-bargaining contract, clearly arises under that contract." *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO,* 430 U.S. 243, 249 (1977). **Howard** and **Wells Fargo** Bank's predecessor-in-interest, Delta, not

only failed to exclude from arbitrability contract disputes arising after termination, but specifically contracted for post-termination arbitration of disputes.

Howard also contends the recording of a mortgage satisfaction is not an integral part of the lending process, since it occurs after the debt and the extension of credit are extinguished. Wells Fargo counters, and the Court agrees, Howard's claim *does* implicate the obligations of both **Wells Fargo** Bank and **Howard** under the Loan, as well as the mortgagee-mortgagor relationship between them; and the claim cannot be maintained without reference to her loan. *But for* the Loan and the mortgagor-mortgagee relationship, there would be no obligation placed on the bank to record a satisfaction upon full payment. The Court is not persuaded by Howard's citation to *Pinchot v. Charter One Bank, F.S.B.,* 99 Ohio St.3d 390 (2003), which concerns the issue of federal preemption-a different and quite distinguishable analysis from a determination of arbitrability. With the Agreement's definition, calling for the "broadest possible meaning" of "claim", and since R.C. § 5301.36 would not be implicated unless there were satisfaction of the Note obligation, this Court finds arbitration applies.

Howard additionally argues her Complaint constitutes an action to quiet title under subsection (e), "Excluded Claims", in the Arbitration Agreement. Because Howard believes an action under R.C. § 5301.36 serves to prevent clouds on title to realty, she insists the parties intended a court, not an arbitrator, to adjudicate a claim regarding the recording of a mortgage satisfaction. Nevertheless, as **Wells Fargo** Bank points out, **Howard's** Complaint makes no reference to the quiet title statute, R.C. § 5303.01, and seeks only monetary damages, not reformation or correction of the title. Further, assuming Plaintiff Howard's interpretation to be true, she lacks standing to bring a quiet title action. Ohio law permits only a party in possession to sue to quiet title. It is undisputed that Plaintiff Howard conveyed her interest in the property on December 16,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in F.Supp.2d, 2007 WL 2778664 (N.D.Ohio)
**(Cite as: 2007 WL 2778664 (N.D.Ohio))**

2005. Thus, she has no legitimate interest to protect through a quiet title action.

*4 Howard also insists that "[n]owhere is R.C. 5301.36 mentioned under the definition of "Claim" under the Arbitration Agreement despite the delineation of other included causes of action." (Plaintiff's Brief in Opposition, ECF DKT # 8 at pp. 8-9). Wells Fargo Bank correctly points to the generally inclusive nature of the definition of "Claim" in the Arbitration Agreement, which does encompass "federal or state consumer protection statutes or regulations." The Court finds it would be unjust to require contracting parties to identify every conceivable claim, statute or cause of action contemplated, or potentially implicated, by their relationship.

*Class Action Waiver*

Plaintiff asserts the class action waiver in the Arbitration Agreement is unconscionable and unenforceable. In her Affidavit (ECF DKT # 9), she avers the Arbitration Agreement, with the class action waiver, was prepared by Delta in small, hard-to-read, boilerplate language. Further, she states she was given no opportunity to negotiate or change its terms. She was not represented by legal counsel when she signed the Agreement on April 11, 2000.

Under Ohio law, unequal bargaining power alone does not establish unconscionability. See *ABM Farms v. Woods,* 81 Ohio St.3d 498 (1998). By their very nature, most mortgage arrangements involve unsophisticated consumers and large corporate lenders; so, the parties would rarely be on the same footing. Yet, this Court declines to make the sweeping determination that every mortgage contract with an arbitration clause is voidable. In those types of contracts, valid consideration is exchanged as property owners receive the benefits of loan money, and lending institutions receive security interests in realty.

Although Plaintiff Howard states she was not rep-

resented by legal counsel when she executed the Arbitration Agreement, she never says that she was denied the time or opportunity to consult an attorney. Significantly, she signed her name below a conspicuous Acknowledgment, verifying her knowing and voluntary acceptance of the terms of the Agreement and waiver.

At paragraph # 9 of her Affidavit, Howard states: "... I therefore believed that Delta would not have loaned the money to me unless and until I first signed the Arbitration Agreement." She provides no evidence, aside from speculation, that a loan would not be available to her. Nor did she investigate other lenders to ascertain whether loans would be offered without the strict arbitration and waiver provisions. She cannot show that she was deprived of a meaningful choice. Howard's Affidavit does not satisfy her burden of showing the arbitration arrangement was so unfair or one-sided as to be adhesive and unconscionable. *Stout v. J.D. Byrider,* 228 F.3d 709, 716 (6th Cir.2000).

Howard puts forth the argument that the class action waiver in the Arbitration Agreement is unenforceable since it frustrates the remedial purpose of R.C. § 5301.36. It is true that remedial laws must be "liberally construed in order to promote their object and assist the parties in obtaining justice." R.C. § 1.11. Nevertheless, Howard incorrectly suggests she is deprived of her remedies; when in fact, she is only limited to the forum in which she may establish her right to relief. Though not in the context of this particular statute, but rather the remedial federal Truth-in-Lending Act, the Sixth Circuit commented as to "statutory class action rights, *it is Plaintiffs' burden to show that Congress intended such rights to be nonwaivable ...*" (Emphasis added). *Burden v. Check into Cash of Kentucky, LLC,* 267 F.3d 483, 492 (6th Cir.2001), *cert. denied,* 535 U.S. 970 (2002), citing *Randolph v. Green Tree Fin. Corp.-Alabama,* 244 F.3d 814 at 818 (11th Cir.2001). In the instant matter, Howard is unable to meet this burden.

*5 Since the statute provides for only Two Hundred

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2778664 (N.D.Ohio)
**(Cite as: 2007 WL 2778664 (N.D.Ohio))**

Fifty Dollars in damages for a mortgage satisfaction which goes unrecorded, Howard contends potential litigants and their lawyers would be discouraged from pursuing their statutory rights individually because their costs would exceed the remedy. Wells Fargo Bank suggests an aggrieved plaintiff may bring an inexpensive small claims action, which would not be barred by the Arbitration Agreement, and which would necessitate no attorney's fees. Unlike complicated and costly anti-trust actions, in which courts are disinclined to enforce class action waivers, small claims lawsuits are a viable option for enforcing a lender's obligation to record a satisfaction of mortgage under R.C. § 5301.36(B). The crucial consideration for enforceability of the class action waiver is whether a plaintiff like Howard can vindicate her rights, not whether her counsel can recover their fees.

### III. CONCLUSION

The Court finds a binding, valid and enforceable Arbitration Agreement exists between Plaintiff Marilyn **Howard** and Defendant **Wells Fargo** Bank. For all the foregoing reasons, Defendant's Motion to Stay Court Proceedings and Dismiss Class Action Claims is granted. All court proceedings are stayed, and the class action claims are dismissed. The parties shall file a joint status report every ninety (90) days, informing the Court of the status of the arbitration proceedings.

**IT IS SO ORDERED.**

N.D.Ohio,2007.
Howard v. Wells Fargo Minnesota, NA
Not Reported in F.Supp.2d, 2007 WL 2778664 (N.D.Ohio)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.


Westlaw.

Not Reported in N.E.2d, 2006 WL 2243649 (Ohio App. 8 Dist.), 2006 -Ohio- 3353
**(Cite as: 2006 WL 2243649 (Ohio App. 8 Dist.))**

▷
CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.
Edward SCHWARTZ, Plaintiff-Appellee
v.
ALLTEL CORPORATION, Defendant-Appellant.
No. 86810.

Decided June 29, 2006.

**Background:** Wireless phone customer brought class action against wireless phone service provider, alleging breach of contract, violation of Consumer Sales Practice Act (CSPA) and fraudulent inducement, following receipt of notification of provider's rate increase. Service provider filed a motion to stay the litigation pending binding arbitration. The Court of Common Pleas, Cuyahoga County, No. CV-453730, denied the motion to stay. Service provider appealed.

**Holdings:** The Court of Appeals, Mary Eileen Kilbane, J., held that:
(1) arbitration clause in wireless phone service agreement was substantively unconscionable;
(2) arbitration clause in wireless phone service agreement was procedurally unconscionable; and
(3) the unconscionability of the arbitration clause in wireless phone service agreement warranted striking the overall agreement.

Affirmed.

West Headnotes

**[1] Alternative Dispute Resolution 25T ⬤⬤ 134(6)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk131 Requisites and Validity
                25Tk134 Validity
                    25Tk134(6)   k.   Unconscionability.
Most Cited Cases
Arbitration clause in wireless phone service agreement which eliminated customer's right to proceed through class action in pursuing potential claims against service provider, and which precluded any award of attorney fees, was substantively unconscionable, and thus, unenforceable as against customer's class action that asserted claims under the Consumer Sales Practice Act (CSPA); the prohibition of class actions directly hindered the consumer protection purposes of the CSPA, and the CSPA specifically authorized attorney fees. R.C. § 1345.09(F)(2).

**[2] Alternative Dispute Resolution 25T ⬤⬤ 134(6)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk131 Requisites and Validity
                25Tk134 Validity
                    25Tk134(6)   k.   Unconscionability.
Most Cited Cases
Evidence was sufficient to support a finding that arbitration clause in wireless phone service agreement was procedurally unconscionable; there was an inherent bargaining disparity between the service provider and the customer, the clause's print was small and hard to read, and was placed at the bottom of the back side of the service agreement, no attention was called to the provision, and the agreement was presented on a take-it-or-leave-it basis.

**[3] Alternative Dispute Resolution 25T ⬤⬤140**

25T Alternative Dispute Resolution
    25TII Arbitration

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2006 WL 2243649 (Ohio App. 8 Dist.), 2006 -Ohio- 3353
**(Cite as: 2006 WL 2243649 (Ohio App. 8 Dist.))**

25TII(B) Agreements to Arbitrate
    25Tk140 k. Severability. Most Cited Cases
The procedural and substantive unconscionability of the arbitration clause in wireless phone service agreement warranted striking the overall agreement, despite the presence of a severability provision purporting to allow all but the invalid provisions to remain in force; the unenforceable portions of the arbitration clause were so overwhelming as to taint the rest of the agreement.

**[4] Alternative Dispute Resolution 25T** 🔑 **213(4)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(D) Performance, Breach, Enforcement, and Contest
            25Tk204 Remedies and Proceedings for Enforcement in General
            25Tk213 Review
                25Tk213(4) k. Presentation and Reservation of Grounds for Review. Most Cited Cases
Wireless phone service provider failed to preserve for appellate review its claim that the trial court erred by ignoring federal law in denying provider's motion to stay proceedings pending binding arbitration, where provider failed to implicate the applicability of a specific federal law when before the trial court.

Civil appeal from Common Pleas Court, Case No. CV-453730.Gregory R. Farkas, M. Neal Rains, Daniel A. Ward, Frantz Ward, L.L.P., Cleveland, OH, for defendant-appellant.

Daniel R. Karon, Goldman Scarlato & Karon, P.C, Cleveland, OH, Scott E. Poynter, Emerson Poynter, L.L.P., Little Rock, AR, Dennis E. Murray, Margaret M. Murray, Murray & Murray Co., L.P.A., Sandusky, OH, for plaintiff-appellee.

MARY EILEEN KILBANE, J.

*1 {¶ 1} Alltel Corporation ("Alltel") appeals the decision of the trial court denying its motion to stay litigation pending arbitration. Alltel argues the trial court erred in finding that the parties did not enter into an agreement to arbitrate, that the agreement was procedurally and substantively unconscionable, that any offending provisions should have been severed and that federal law governed the arbitration provision. For the following reasons, we affirm the decision of the trial court.

{¶ 2} On August 24, 2000, Edward Schwartz ("Schwartz") read an Alltel advertisement in his *Cleveland Plain Dealer*. Alltel advertised cellular phone service for "Unlimited Anytime Minutes only $49.99 for life." Alltel's advertisement did not limit the service plan's duration but informed readers that additional roaming charges may apply.

{¶ 3} In September 2000, Schwartz visited his local Alltel store to inquire about the advertised service plan. Alltel employees presented Schwartz with Alltel's standard form contract, which Alltel had prepared in advance. Schwartz signed up for an Alltel plan for the contracted rate of $49.95 per month with a roaming fee of $.59 per minute. However, in the Notes/Special Situation section of the contract was the following handwritten passage:

"$49.95 unlimited local air time for life as long as customer remains on rate plan with Alltel."

{¶ 4} The handwritten terms in the Notes/Special Situation section of Schwartz's service contract identically matched Alltel's *Cleveland Plain Dealer* advertisement, which Schwartz read on August 24, 2000.

{¶ 5} The service agreement contained the following provision in small print on the reverse side of the document:

"Any dispute arising out of this Agreement or relating to the Services and Equipment must be settled by arbitration administered by the American Arbitration Association. Each party will bear the cost of preparing and prosecuting its case. We

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2006 WL 2243649 (Ohio App. 8 Dist.), 2006 -Ohio- 3353
**(Cite as: 2006 WL 2243649 (Ohio App. 8 Dist.))**

will reimburse you for any filing or hearing fees to the extent they exceed what your court costs would have been if your claim had been resolved in state court having jurisdiction. The arbitrator has no power or authority to alter or modify these Terms and Conditions, including the foregoing Limitation of Liability section. All claims must be arbitrated individually, and there will be no consolidation or class treatment of any claims. This provision is subject to the United States Arbitration Act."

{¶ 6} The service agreement also contained a provision limiting the liability of Alltel, which read:

"Our liability regarding your use of the services or equipment, or the failure of or inability to use the services or equipment is limited to the charges you incur for services or equipment during the affected period. This means we are not liable for any incidental or consequential damages (such as lost profits or lost business opportunities), punitive damages or exemplary damages, such as attorney fees."

*2 {¶ 7} Alltel placed the arbitration provision of the agreement on the back page of a one-page, legal-size agreement, in a light-gray small font, at the very end of the page. Alltel also placed the limitation of liability provision on the back of the agreement in the same light-gray small font but this time in capital letters. Alltel placed both provisions among other boilerplate, contractual language.

{¶ 8} Additionally, above the signature line, Alltel placed an explicit acknowledgment that the consumer understands and accepts the "terms and conditions on both sides" of the agreement. Finally, Alltel also included a "Notes/Special Situations" section that allows parties to write in additional terms. At the time of the agreement, this section contained the above-quoted handwritten phrase, "$49.95 unlimited local air time for life as long as customer remains on rate plan with Alltel." Schwartz signed the agreement without writing in any new additional terms.

{¶ 9} In January 2001, some four months later, Alltel sent Schwartz a letter informing him that Alltel would be raising his rates from the contracted rate of $49.95 per month to $59.95 per month for unlimited local calling, due to the "increased cost of doing business." The letter also informed Schwartz that Alltel raised Schwartz's roaming rate from $.59 per minute to $.99 per minute. On November 20, 2001, Schwartz filed the instant class action lawsuit against Alltel alleging breach of contract, violation of the Ohio Consumer Sales Practices Act ("CSPA") and fraudulent inducement.

{¶ 10} In response to the lawsuit, Alltel filed a motion to stay litigation pending binding arbitration. Schwartz filed a brief in opposition raising the argument that the arbitration provision of the agreement was unconscionable. Before the trial court rendered a decision, Alltel and Schwartz filed several motions, including motions for leave to file reply and sur-reply briefs and motions to strike. After negotiating, the parties agreed that the trial court would decide the arbitration issue solely based on Alltel's motion to stay, Schwartz's brief in opposition, and Alltel's reply brief. The trial court heard oral arguments on November 22, 2002.

{¶ 11} On July 21, 2005, the trial court issued its written opinion denying Alltel's motion to stay litigation pending binding arbitration.[FN1] In its decision, the trial court found Alltel's arbitration provision procedurally and substantively unconscionable.

> FN1. An order granting or denying a stay of an action pending arbitration is a final appealable order pursuant to R.C. 2711.02(C).

{¶ 12} Alltel appeals, raising the five assignments of error contained in the appendix to this opinion.

{¶ 13} In its first assignment of error, Alltel argues: "The Trial Court Erred in Finding there was no Agreement to Arbitrate." This assignment of error lacks merit.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2006 WL 2243649 (Ohio App. 8 Dist.), 2006 -Ohio- 3353
**(Cite as: 2006 WL 2243649 (Ohio App. 8 Dist.))**

{¶ 14} This assigned error is unusual in that Alltel argues that *if* the trial court based its decision to deny arbitration on the finding that there was no agreement to arbitrate, the trial court erred. In making this argument, Alltel quotes the following sentence from the trial court's opinion: "[the] agreement to arbitrate was not voluntary in a real and genuine sense."

*3 {¶ 15} This court has reviewed the trial court's opinion and order and finds that the trial court based its decision to deny arbitration on a finding of procedural and substantive unconscionability, on public policy grounds and on the basis that the contract was adhesive in nature. The trial court did not base its decision on the conclusion that the agreement to arbitrate did not exist.

{¶ 16} Accordingly, Alltel's first assignment of error is overruled.

{¶ 17} In its second and third assignments of error, Alltel argues that the trial court erred in concluding that the arbitration agreement was procedurally and substantively unconscionable. Because these assignments of error utilize identical standards of review, this court will address them contemporaneously.

{¶ 18} When addressing whether a trial court has properly granted a motion to stay litigation pending arbitration, this court applies an abuse of discretion standard. *Carter Steel & Fabricating Co. v. Danis Bldg. Constr. Co.* (1998), 126 Ohio App.3d 251, 254-55, 710 N.E.2d 299. An abuse of discretion connotes more than an error of law or judgment. Instead, it implies the trial court's judgment was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Absent an abuse of that discretion, an appellate court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.,* 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 1993-Ohio-122.

{¶ 19} However, when an appellate court is presented with purely legal questions, it applies a de novo standard of review. *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.* (1992), 81 Ohio App.3d 591, 602, 611 N.E.2d 955. Under a de novo standard of review, an appellate court does not give deference to a trial court's decision. *Akron v. Frazier* (2001), 142 Ohio App.3d 718, 721, 756 N.E.2d 1258.

{¶ 20} In the instant case, Schwartz challenges the enforceability of the arbitration clause in this contract, asserting that it is unconscionable.

{¶ 21} The issue of unconscionability is a question of law. *Ins. Co. of North America v. Automatic Sprinkler Corp.* (1981), 67 Ohio St.2d 91, 98, 423 N.E.2d 151. Accordingly, this court must conduct a factual inquiry into the particular circumstances of the transaction in question. *Id.* Such a determination requires a case-by-case review of the facts and circumstances surrounding the agreement. *Vincent v. Neyer* (2000), 139 Ohio App.3d 848, 854-56, 745 N.E.2d 1127. Because this case involves legal questions, we will apply a de novo standard of review.

{¶ 22} Initially we note that arbitration is encouraged as a method of dispute resolution, and a presumption favoring arbitration arises when the claim in dispute falls within the arbitration provision. *Williams v. Aetna Fin. Co.,* 83 Ohio St.3d 464, 471, 700 N.E.2d 859, 1998-Ohio-294. R.C. 2711.01(A) sets forth Ohio's public policy favoring arbitration and provides as follows:

"A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2006 WL 2243649 (Ohio App. 8 Dist.), 2006 -Ohio- 3353
**(Cite as: 2006 WL 2243649 (Ohio App. 8 Dist.))**

grounds that exist at law or in equity for the revocation of any contract."

**\*4** {¶ 23} An arbitration clause may be legally unenforceable if the clause is not applicable to the matter at hand, if the parties did not agree to the clause in question, or if the arbitration clause is found to be unconscionable. *Ida May Fortune v. Castle Nursing Home*, Holmes App. No. 05 CA 1, 2005 Ohio-6195.

"Unconscionability refers to the absence of a meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to one party [Citation omitted.] Accordingly, unconscionability consists of two separate concepts: (1) substantive unconscionability, which refers to the commercial reasonableness of the contract terms themselves, and (2) procedural unconscionability, which refers to the bargaining positions of the parties. [Citation omitted.]

" * * *

"Substantive unconscionability involves those factors which relate to the contract terms themselves and whether they are commercially reasonable. Because the determination of commercial reasonableness varies with the content of the contract terms at issue in any given case, no generally accepted list of factors has been developed for this category of unconscionability. However, courts examining whether a particular limitations clause is substantively unconscionable have considered the following factors: the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. [Citations omitted]"

* * *

"Procedural unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, e.g., 'age, education,

intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. [Citation omitted.]"

*Fortuna*, supra.

{¶ 24} In order to negate an arbitration clause, a party must establish a quantum of both substantive and procedural unconscionability. *Small v. HCF of Perrysburg, Inc.*, 159 Ohio App.3d 66, 823 N.E.2d 19, 2004-Ohio-5757.

[1] {¶ 25} In concluding that the arbitration agreement was substantively unconscionable, the trial court found the contractual language was unconscionable because it limited the rights of consumers to file as a class, it did not put a consumer on notice as to his rights regarding future liability and it prohibited any award of attorney fees. We agree with the trial court's conclusions.

{¶ 26} By eliminating a consumer's right to proceed through a class action, the arbitration clause directly hinders the consumer protection purposes of the CSPA. *Eagle v. Fred Martin Motor Co., et al.*, 157 Ohio App.3d 150, 809 N.E.2d 1161, 2004-Ohio-829. The United States Supreme Court has expressed the importance of class actions:

**\*5** "The use of the class-action procedure for litigation of individual claims may offer substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise. * * * The financial incentive that class actions offer * * * is a natural outgrowth of the increasing reliance on the 'private attorney general' for vindication of legal rights[.]" *Deposit Guaranty Natl. Bank v. Roper* (1980), 445 U.S. 326, 338, 100 S.Ct. 1166, 63 L.Ed.2d 427.

{¶ 27} Additionally, R.C. 1345.09(F)(2) grants at-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2006 WL 2243649 (Ohio App. 8 Dist.), 2006 -Ohio- 3353
**(Cite as: 2006 WL 2243649 (Ohio App. 8 Dist.))**

torney fees for any violation of Ohio's CSPA; and yet Alltel's limitation of liability section expressly forbids an award of attorney fees.

{¶ 28} In response to this argument, Alltel argues that the agreement provides for reimbursement of fees to the extent that they exceed what court costs would have been if the claim had been resolved in a state court having jurisdiction. Moreover, Alltel claims that even though the limitation of liability provision of the agreement prohibits an award of attorney fees, an arbitrator could still award statutory attorney fees. These arguments are without merit.

{¶ 29} By prohibiting its customers from filing suit as a class, Alltel prevents the cost effective use of class action litigation that can end abusive practices by large corporations in those instances in which individual claims are ineffective. Additionally, the arbitration provision specifically strips an arbitrator of any authority to alter or modify the terms of the arbitration provision or the limitation of liability section.

{¶ 30} Because Alltel's arbitration provision eliminates the right to proceed through a class action and prohibits an award of attorney fees that are statutorily authorized, the arbitration clause invades the policy considerations of the CSPA. See R.C. 1345.09(F)(2). This limitation of consumer rights found within the arbitration provision establishes a quantum of substantive unconscionability.

[2] {¶ 31} We must now determine whether the arbitration agreement is procedurally unconscionable. When concluding that the agreement to arbitrate was procedurally unconscionable, the trial court made the following findings: the agreement was adhesive; Alltel drafted the contract; Alltel never explained the terms to Schwartz; and the experience of Schwartz in similar situations was less than that of Alltel. We agree with the trial court's conclusion.

{¶ 32} As stated above, the factors to consider are the "bargaining position of the contracting parties, including age, education, intelligence, business acu-

men, experience in similar transactions, whether the terms were explained to the weaker party and who drafted the contract." *Eagle,* supra.

{¶ 33} Alltel argues that Schwartz has failed to present any evidence of procedural unconscionability. Alltel claims that the only evidence of any alleged procedural unconscionability was Schwartz's affidavit, which counsel withdrew. Though Schwartz's counsel did withdraw the affidavit, the record contains other evidence of procedural unconscionability.

*6 {¶ 34} Primarily we note the inherent disparity of the bargaining position of Schwartz and Alltel. Schwartz, a consumer, contracted with Alltel, a multi-billion dollar corporation, for the purchase of a cellular telephone and service. Though we are unaware of how often Schwartz engaged in contracts of this nature, it is clear that for Alltel, this was a common occurrence. Additionally, when Schwartz expressed interest in the advertised deal, an Alltel employee presented him with Alltel's pre-printed form. The form itself contained small, hard-to-read print and contained margin-to-margin boilerplate, contractual language. As stated above, Alltel placed the arbitration provision at the very bottom of the back side of the agreement, without calling any attention to the provision.

{¶ 35} Moreover, the agreement for service was adhesive in nature. Alltel presented the agreement to Schwartz on a take-it-or-leave-it basis. To receive the advertised offer, Schwartz had to sign Alltel's pre-printed form contract, which contained the arbitration provision. Finally, Schwartz was not represented by counsel when he signed the agreement.

{¶ 36} Accordingly, we find that sufficient evidence of procedural unconscionability existed at the time Schwartz signed the agreement with Alltel. We further find that the trial court did not err when it determined that the agreement was substantively and procedurally unconscionable.

{¶ 37} Alltel's second and third assignments of er-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2006 WL 2243649 (Ohio App. 8 Dist.), 2006 -Ohio- 3353
**(Cite as: 2006 WL 2243649 (Ohio App. 8 Dist.))**

ror are overruled.

{¶ 38} In its fourth assignment of error, Alltel argues that the trial court erred in ignoring the agreement's severability provision.[FN2] We disagree.

> FN2. **"No Waiver; Severability:** If we do not enforce any right or remedy available under this Agreement, that failure is not a waiver. If any part of this Agreement is held invalid or unenforceable, the remainder of this Agreement will remain in force."

[3] {¶ 39} Though Alltel's service agreement contained a severability provision, when the cumulative effect of multiple illegal provisions "taints" the overall agreement and prevents a court from enforcing that agreement, severability is improper. *Scovill v. WSYX/ABC,* 425 F.3d 1012 (C.A.6, 2005). See, also, *Alexander v. Anthony Internatl. L. P.,* 341 F.3d 256, 261 (C.A.3, 2003) ("The cumulative effect of so much illegality prevents us from enforcing the arbitration agreement. Because the sickness has infected the trunk, we must cut down the entire tree.").

{¶ 40} Schwartz presented enough evidence to show that the agreement in this case contained unenforceable provisions so overwhelming as to "taint" the rest of the agreement. Schwartz has shown both substantive and procedural unconscionability through improper limitation of consumer rights and remedies, the adhesive nature of the service agreement, and the circumstances surrounding his signature of the agreement.

{¶ 41} Accordingly, we find that the trial court did not err in striking the entire arbitration agreement.

{¶ 42} Alltel's fourth assignment of error is overruled.

{¶ 43} In its fifth and final assignment of error, Alltel argues that the trial court erred in ignoring controlling federal law governing the arbitration provision. This assignment of error lacks merit.

*7 {¶ 44} Alltel bases this argument on the trial court's lack of citations to federal cases and the Federal Arbitration Agreement ("FAA"). However, the trial court did cite to federal authority in its opinion. Additionally, we have previously found that the trial court properly determined that the arbitration provision of the agreement was unconscionable. That the trial court did not reference the FAA in its opinion, does not mean that the trial court did not consider the act in making its proper decision. When Alltel referenced the FAA several times throughout this initial discovery process, it placed the trial court on notice of its reliance on the act. Finally, Alltel provides this court with no authority to support its proposition that because the trial court did not reference sufficient federal case law and the FAA, its decision to deny the motion to stay pending arbitration was improper.

[4] {¶ 45} Alltel also argues in this assigned error that the trial court erred in not applying the Federal Communication Act of 1934 ("FCA"). However, Alltel raises this issue for the first time on appeal and has thus waived all but plain error. *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 679 N.E.2d 1099, 1997-Ohio-401. In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process and thereby challenges the legitimacy of the underlying judicial process itself. *Id.* at syllabus. In response to the waiver argument, Alltel claims that it did make this argument in the trial court below, that it specifically argued "federal substantive law of arbitration" governed Schwartz's claims and required arbitration. This argument is unpersuasive. If Alltel wanted to argue the applicability of the FCA on appeal, it was Alltel's duty to raise this argument below, not merely reference any federal law of arbitration. Accordingly, Alltel waives all but plain error and we decline to find plain error in this case.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in N.E.2d, 2006 WL 2243649 (Ohio App. 8 Dist.), 2006 -Ohio- 3353
**(Cite as: 2006 WL 2243649 (Ohio App. 8 Dist.))**

{¶ 46} Alltel's fifth assignment of error is over- ruled.

{¶ 47} The judgment of the trial court is affirmed.

It is ordered that appellee shall recover of appellant costs herein taxed.

The court finds that there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

JAMES J. SWEENEY, P.J., and DIANE KARPIN-SKI, J., concur.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R.22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E), unless a motion for reconsideration with supporting brief, per App.R. 26(A) is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).

## Appendix

**Assignments of Error:**

*8 "I. The trial court erred in finding there was no agreement to arbitrate.

II. The trial court erred in finding the agreement was procedurally unconscionable.

III. The trial court erred in finding the agreement was substantively unconscionable.

IV. The trial court erred in ignoring the agreement's severability provision.

V. The trial court erred in ignoring controlling federal law governing the arbitration provision."

Ohio App. 8 Dist.,2006.
Schwartz v. Alltel Corp.
Not Reported in N.E.2d, 2006 WL 2243649 (Ohio App. 8 Dist.), 2006 -Ohio- 3353

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2009 WL 2963770 (Ohio App. 8 Dist.), 2009 -Ohio- 4873
**(Cite as: 2009 WL 2963770 (Ohio App. 8 Dist.))**

**H**

CHECK OHIO SUPREME COURT RULES FOR REPORTING OF OPINIONS AND WEIGHT OF LEGAL AUTHORITY.

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.
Lillie ALEXANDER, Plaintiff-Appellant
v.
WELLS FARGO FINANCIAL OHIO 1, INC., Defendant-Appellee.
No. 89277.

Decided Sept. 17, 2009.

**Background:** Mortgagor brought class action against mortgagee for failure to file entry of satisfaction of mortgage within 90 days of satisfaction. The Court of Common Pleas, Cuyahoga County, No. CV-590622, granted mortgagee's motion to compel arbitration, and mortgagor appealed. The Court of Appeals, 2008 WL 803044, reversed and remanded. Mortgagee appealed. The Supreme Court, 122 Ohio St.3d 341, 911 N.E.2d 286, reversed and remanded.

**Holdings:** On remand, the Court of Appeals, Mary Eileen Kilbane, P.J., held that:
(1) arbitration clause was not procedurally unconscionable;
(2) arbitration clause was not substantively unconscionable; and
(3) arbitration clause did not violate public policy.

Affirmed.

West Headnotes

**[1] Alternative Dispute Resolution 25T ☞210**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(D) Performance, Breach, Enforcement, and Contest
      25Tk204 Remedies and Proceedings for Enforcement in General
        25Tk210 k. Evidence. Most Cited
When a claim falls within the scope of an arbitration provision, there is a presumption in favor of arbitration.

**[2] Alternative Dispute Resolution 25T ☞134(6)**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(B) Agreements to Arbitrate
      25Tk131 Requisites and Validity
        25Tk134 Validity
          25Tk134(6) k. Unconscionability.
Most Cited Cases
Arbitration clause signed in conjunction with mortgage transaction was not procedurally unconscionable, even though it was drafted only by mortgagee and was presented on a take-it-or-leave-it basis, where terms of clause were explicitly laid out to mortgagor, the clause itself was one full page in length and contained a place at the bottom for the signature, and not simply the initials of mortgagor, the clause was printed in normal size type, the portion discussing the limitations of the mortgagor's rights pursuant to the clause were specifically listed directly above the signature line, in all upper case bold print type, there was no evidence to indicate mortgagor's age, education level, or intelligence, and mortgagor did not demonstrate that she had no choice but to contract with that particular mortgagee.

**[3] Alternative Dispute Resolution 25T ☞134(6)**

25T Alternative Dispute Resolution
  25TII Arbitration
    25TII(B) Agreements to Arbitrate
      25Tk131 Requisites and Validity

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2963770 (Ohio App. 8 Dist.), 2009 -Ohio- 4873
**(Cite as: 2009 WL 2963770 (Ohio App. 8 Dist.))**

25Tk134 Validity
    25Tk134(6) k. Unconscionability.
Most Cited Cases
Arbitration clause signed in conjunction with mort-
gage transaction was not substantially unconscion-
able, even though it blocked mortgagor's right to a
class action against mortgagee for failure to file
entry of satisfaction of mortgage within 90 days of
satisfaction. R.C. 5301.36.

**[4] Alternative Dispute Resolution 25T ☞
134(1)**

25T Alternative Dispute Resolution
    25TII Arbitration
        25TII(B) Agreements to Arbitrate
            25Tk131 Requisites and Validity
                25Tk134 Validity
                    25Tk134(1) k. In General. Most
Cited Cases
Arbitration clause signed in conjunction with mort-
gage transaction did not violate public policy, even
though it blocked mortgagor's right to a class action
against mortgagee for failure to file entry of satis-
faction of mortgage within 90 days of satisfaction.
R.C. 5301.36.

Civil Appeal from the Cuyahoga County Court of
Common Pleas, Case No. CV-590622.Brian G.
Ruschel, Cleveland, OH, Patrick J. Perotti,
Dworken & Bernstein Co., L.P.A., Painesville, OH,
for appellant.

Chad D. Cooper, Scott A. King, Terry W. Posey, Jr.
, Thompson Hine, LLP, Dayton, OH, William C.
Wilkinson, Thompson Hine, LLP, Columbus, OH,
for appellee.

Before: KILBANE, P.J., STEWART, J., and DYKE
, J.

MARY EILEEN KILBANE, P.J.

*1 N.B. This entry is an announcement of the
court's decision. See App.R. 22(B) and 26(A);

Loc.App.R. 22. This decision will be journalized
and will become the judgment and order of the
court pursuant to App.R. 22(C) unless a motion for
reconsideration with supporting brief, per App.R.
26(A), is filed within ten (10) days of the an-
nouncement of the court's decision. The time period
for review by the Supreme Court of Ohio shall be-
gin to run upon the journalization of this court's an-
nouncement of decision by the clerk per App.R.
22(C). See, also, S.Ct. Prac.R. II, Section 2(A)(1).

{¶ 1} This appeal arises out of a remand from the
Ohio Supreme Court, regarding a disputed arbitra-
tion clause. The sole issue remaining for this court's
determination is whether the arbitration clause is
unconscionable. See *Alexander v. Wells Fargo Fin-
ancial Ohio 1, Inc.,* 122 Ohio St.3d 341,
2009-Ohio-2962, 911 N.E.2d 286; *Alexander v.
Wells Fargo Financial Ohio 1, Inc.,* Cuyahoga
App. No. 89277, 2008-Ohio-1402.

{¶ 2} On May 2, 2006, appellant, Lillie Alexander
("Alexander"), initiated a class action suit against
appellee, Wells Fargo Financial Ohio 1, Inc.
("Wells Fargo"), alleging that it violated R.C.
5301.36, which requires mortgage lenders to file an
entry of satisfaction with the county recorder's of-
fice within 90 days of the mortgage being satisfied.
On June 5, 2006, Wells Fargo filed a motion to
compel arbitration, which was granted by the trial
court on December 22, 2006. The trial court specifi-
cally concluded that the arbitration clause did
apply to the current dispute, and that the arbitration
clause was neither procedurally or substantively un-
conscionable.

{¶ 3} On January 10, 2007, Alexander appealed to
this court arguing that the trial court erred when it
granted Wells Fargo's motion to compel arbitration.
Specifically, Alexander argued that the arbitration
clause did not apply, and if it did apply, it was both
procedurally and substantively unconscionable. In a
decision released on March 27, 2008, the majority
opinion addressed the first issue and held that the
arbitration clause only applied to the mortgage
transaction, and because Wells Fargo's statutory

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2963770 (Ohio App. 8 Dist.), 2009 -Ohio- 4873
**(Cite as: 2009 WL 2963770 (Ohio App. 8 Dist.))**

duty to file the entry did not arise until after the mortgage was fully satisfied, the arbitration clause was inapplicable to the R.C. 5301.36 dispute. Finding the arbitration clause to be inapplicable, the majority opinion did not address Alexander's arguments raising the un con scion ability of the clause.

{¶ 4} On May 15, 2008, Wells Fargo appealed this court's decision to the Supreme Court. On September 12, 2008, the Supreme Court accepted this case for review. On July 16, 2009, the Supreme Court reversed and remanded the matter, concluding that the arbitration clause in fact encompassed disputes arising between the parties, even after the loan had been satisfied. As the arbitration clause was found to apply, this case has been remanded for a determination as to whether the arbitration clause is unconscionable.

*2 {¶ 5} Appellant raised one assignment of error for our review.

" **The trial court erred in granting defendant's motion to stay or dismiss pending arbitration.**"

{¶ 6} The only arguments left to address are whether the arbitration clause is unconscionable or against public policy.

{¶ 7} This court had previously been split as to whether a trial court's decision to stay an action pending arbitration should be reviewed under a de novo standard or abuse of discretion. *Shumaker v. Saks, Inc.*, Cuyahoga App. No. 86098, 163 Ohio App.3d 173, 175, 2005-Ohio-4391, 837 N.E.2d 393 . In *Taylor Bldg. Corp. of America v. Benfield*, 117 Ohio St.3d 352, 884 N.E.2d 12, 2008-Ohio-938, the Supreme Court held that when determining the alleged un con scion ability of an arbitration clause, the reviewing court must conduct a de novo review.

{¶ 8} When reviewing a matter de novo, this court revisits the issue as if it were the trial court, and does not afford deference to the trial court's interpretation. *Brewer v. Cleveland Bd. of Edn.* (1997), Cuyahoga App. No. 71283, 122 Ohio App.3d 378,

383, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal Co.* (1980), 64 Ohio St.2d 116, 413 N.E.2d 1187. However, even under a de novo review, this court must afford significant deference to any factual findings made by the trial court. *Taylor* at ¶ 37.

[1] {¶ 9} This court notes that the case law strongly supports the arbitration of disputes. *Williams v. Aetna Finance Co.*, 83 Ohio St.3d 464, 471, 1998-Ohio-294, 700 N.E.2d 859. When a claim falls within the scope of an arbitration provision, there is a presumption in favor of arbitration. *Id.* In this case, the Supreme Court has already concluded appellant's claims fall within the scope of the agreement; therefore, there is a presumption in favor of arbitration here.

{¶ 10} The general principles of contract law govern the applicability of arbitration clauses. *M & M Precision System Corp. v. Interactive Group Inc.* (March 10, 2000), Montgomery App. No. 18008, at ¶ 14. "An arbitration agreement is enforceable unless grounds exist at law or in equity for revoking the agreement." *Hayes v. The Oakridge Home*, 122 Ohio St.3d 63, 908 N.E.2d 408, 2009-Ohio2054, at ¶ 19. Un con scion ability is a defense to enforcement of a contract. *Doctor's Assoc. v. Casarotto* (1996), 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902, citing *Allied-Bruce Term inix Co., Inc. v. Dobson* (1995), 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753. The party challenging the application of the arbitration clause bears the burden of establishing both procedural and substantive un cons cionability. *Taylor* at ¶ 52, citing *Ball v. Ohio State Home Servs., Inc.*, 168 Ohio App.3d 622, 2006-Ohio-4464, 861 N.E.2d 553, at ¶ 6.

{¶ 11} Procedural un con scion ability considers all of the circumstances surrounding the contract of the parties, including the ages of the parties, intelligence, business experience, education, the author of the contract, whether it was possible to alter the contract, and whether the party consenting to the contract had another means of securing the desired goods or services. *Collins v. Click Camera and Video, Inc.* (1993), Montgomery App. No. 13571,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Slip Copy, 2009 WL 2963770 (Ohio App. 8 Dist.), 2009 -Ohio- 4873
(Cite as: 2009 WL 2963770 (Ohio App. 8 Dist.))

86 Ohio App.3d 826, 834, 621 N.E.2d 1294, quoting *Johnson v. Mobil Oil Corp. (E.D. Mich.1976),* 415 F.Supp. 264, 268.

*3 [2] {¶ 12} Alexander argues that the arbitration provision was procedurally unconscionable because it was drafted by only one party and was presented on a "take-it-or-leave-it" basis. This is not sufficient to demonstrate procedural un con scion ability. The Supreme Court has previously held, a "showing that a contract is preprinted and that the arbitration clause is a required term, without more, fails to demonstrate the un con scion ability of the arbitration clause." *Taylor* at ¶ 45.

{¶ 13} A review of the arbitration clause at issue reveals its terms were explicitly laid out to Alexander. The clause itself is one full page in length and contains a place at the bottom for the signature, and not simply the initials of the borrower. The clause printed is in normal size type, and the portion discussing the limitations of the borrower's rights pursuant to the clause are specifically listed directly above the signature line, in all upper case bold print type.

{¶ 14} Alexander provided no evidence in the record to indicate her age, education level, intelligence, or any other factors that may render an arbitration clause procedurally unconscionable. Further, Alexander did not demonstrate that this was the only lender in the Cleveland area from which she could secure a mortgage, and therefore, had no choice but to contract with Wells Fargo.

[3] {¶ 15} Determining the record to be completely lacking in any evidence to support a finding of procedural un con scion ability, this court does not need to analyze whether the arbitration clause was substantively unconscionable. However, a review of the applicable case law indicates the arbitration is not substantively unconscionable either.

{¶ 16} "Substantive unconscionability involves those factors which relate to the contract terms themselves, and whether they are commercially reasonable." *Schwartz v. Alltel Corp.,* Cuyahoga App. No. 86810, 2006-Ohio3353, at ¶ 23, citing *Fortune v. Castle Nursing Home,* Holmes App. No. 05 CA 1, 2005-Ohio-6195.

{¶ 17} Alexander urges this court to adopt the reasoning of the Ninth District in *Eagle v. Fred Martin Motor Co.,* Summit App. No. 21522, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, which Alexander argues held an arbitration clause is substantively unconscionable when it blocks an individual's right to a class action. However, *Eagle* specifically addressed class actions in respect to the Consumer Sales and Practices Act ("CSPA"). The court held that an arbitration clause that contained both a confidentiality clause and a prohibition against class actions violated the underlying purpose of the CSPA, under which Eagle filed her suit. *Id.* at 175. *Eagle* is merely persuasive, and further, addresses a narrow issue that is not presented by the facts in the instant case.

{¶ 18} Similarly, Alexander cites *Schwartz,* supra, for the proposition that eliminating the ability to pursue a class action renders an arbitration clause substantively unconscionable. However, *Schwartz* is distinguishable from the instant case in several respects. Schwartz, as in *Eagle,* filed his claims under the CSPA. In *Schwartz,* this court reasoned "the arbitration clause invades the policy considerations of the CSPA." *Schwartz* at ¶ 30. To follow Alexander's reasoning that all arbitration clauses which eliminate the right to participate in a class action are invalid, arbitration clauses would never apply, as all class actions are litigated in court. Further, *Schwartz* presented considerable evidence before the trial court to establish procedural un con scion ability, which we do not have here, by demonstrating that Alltel never explained the agreement to him, and he was the less experienced party in the transaction. *Id.* at ¶ 31.

*4 [4] {¶ 19} Finally, Alexander argues that the arbitration clause should not be enforced because it violates public policy. The court may refuse to enforce a contract when it violates public policy.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 2963770 (Ohio App. 8 Dist.), 2009 -Ohio- 4873
**(Cite as: 2009 WL 2963770 (Ohio App. 8 Dist.))**

*Marsh v. Lampert* (Sept. 8, 1998), Butler App. No. CA98-04-071, 129 Ohio App.3d 685, 687, 718 N.E.2d 997, citing *Garretson v. S.D. Myers, Inc.* (Mar. 6, 1991), Summit App. No. 14762, 72 Ohio App.3d 785, 788, 596 N.E.2d 512. The *Eagle* court specifically stated:

**"A refusal to enforce a contract on the grounds of public policy may be distinguished from a finding of un con scion ability. Rather than focus on the relationship between the parties and the effect of the agreement upon them, public policy analysis requires the court to consider the impact of such arrangements upon society as a whole."** *Eagle* at ¶ 63.

{¶ 20} In support of her public policy argument, Alexander relies on *In re Consol. Mtge. Satisfaction Cases,* 97 Ohio St.3d 465, 2002-Ohio-6720, 780 N.E.2d 556, for the proposition that cases brought pursuant to R.C. 5301.36, as is the case here, are best brought as class actions. However, in *Consolidated Mortgage,* there were no arbitration provisions at issue. The lower court had numerous filings pursuant to R.C. 5301.36, and decided for the purpose of judicial economy that the cases should be consolidated. Once consolidated, the mortgagors moved the court to certify the case as a class action, which the trial court did. Motions to certify a class are reviewed by appellate courts under an abuse of discretion standard. Consequently, if there was any basis for the trial court's decision, it must be affirmed. In *Consolidated Mortgage,* the Supreme Court affirmed and allowed the matter to proceed as a class action.

{¶ 21} *Consolidated Mortgage* presented neither the same factual or legal considerations as the instant case. The Supreme Court reasoned that because all of the consolidated cases were brought pursuant to R.C. 5301.36, and therefore, had common questions of law and fact, the trial court had a reasonable basis for determining they were best litigated as a class action.

{¶ 22} We conclude that Alexander failed to establish that the arbitration agreement was either unconscionable or against public policy. Therefore, her sole assignment of error is overruled.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MELODY J. STEWART, J., and ANN DYKE, J., concur.
Ohio App. 8 Dist.,2009.
Alexander v. Wells Fargo Fin. Ohio 1, Inc.
Slip Copy, 2009 WL 2963770 (Ohio App. 8 Dist.), 2009 -Ohio- 4873

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.