**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-MD-02036-JLK**

| | |
|---|---|
| **IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION** <br><br> **MDL NO. 2036** | )<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| **THIS DOCUMENT RELATES TO:** <br><br> *Lopez v. JPMorgan Chase Bank, N.A.* <br> **S.D. Fla. Case No. 1:09-cv-23127-JLK** <br><br> *Luquetta v. JPMorgan Chase Bank, N.A.* <br> **S.D. Fla. Case No. 1:09-cv-23432-JLK** <br> **C.D. Cal. Case No. CV09-6967-GHK** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY BRIEF IN SUPPORT OF THE MOTION OF JPMORGAN CHASE BANK, N.A.
FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b), OF THE
COURT'S ORDER REGARDING THE *LOPEZ* AND *LUQUETTA* COMPLAINTS**

**TABLE OF CONTENTS**

**ARGUMENT** ...................................................................................................................1

**I.   THE COURT SHOULD RECONSIDER ITS ORDER AND DISMISS
       PLAINTIFFS' CLAIMS AGAINST CHASE** ....................................................1

   A.   Plaintiffs' "Good Faith And Fair Dealing" Claims Should Be Dismissed
       As A Matter Of Law ...........................................................................................1

      1.   Plaintiffs Have No Claim Against Chase Under The Law Of Good Faith
            And Fair Dealing Because Their Agreements With Chase Categorically
            Provide That Items "Will" Be Posted In High To Low Order ...........................1

      2.   Plaintiffs' Good Faith And Fair Dealing Claim Against Chase Is Preempted ..................5

   B.   Plaintiffs' "Unconscionability" Claims Should Be Dismissed As A Matter Of Law..........5

      1.   Plaintiffs Concede That They Have No Claim Regarding The Amount
            Of Overdraft Fees ..........................................................................................5

      2.   Plaintiffs' Unconsionability Claims Are Preempted Because They Invoke
            State Law To Prohibit Banking Terms Admittedly Authorized By The
            National Bank Act ..........................................................................................6

   C.   Plaintiffs' Remaining Claims Also Fail ..............................................................8

**II.  IF THE COURT DETERMINES NOT TO DISMISS THE CLAIMS
       AGAINST CHASE, IT SHOULD CERTIFY ITS ORDER FOR
       INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(B)** .............9

**CONCLUSION** ............................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Alexander Manufacturing, Inc. Employee Stock Ownership & Trust v. Illinois Union Insurance Co.*,
666 F. Supp. 2d 1185 (D. Or. 2009) ....................................................................................1

*Balfour, Gutrie & Co. v. Gourmet Farms*,
108 Cal. App. 3d 181 (Cal. Ct. App. 1980) .......................................................................4

*Barnes v. Diamond Aircraft Industries, Inc.*,
499 F. Supp. 2d 1311 (S.D. Fla. 2007) ..............................................................................2

*Barnett Bank of Marion County, N.A. v. Nelson*,
517 U.S. 25 (1996)..............................................................................................................6

*Burger King Corp. v. C.R. Weaver*,
169 F.3d 1310 (11th Cir. 1999) .........................................................................................2

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
826 P.2d 710 (Cal. 1992) ...................................................................................................2

*Centurion Air Cargo, Inc. v. United Parcel Service Co.*,
420 F.3d 1146 (11th Cir. 2005) .........................................................................................1

*Cliff v. Payco General American Credits, Inc.*,
363 F.3d 1113 (11th Cir. 2004) .........................................................................................7

*Fidelity Federal Savings & Loan Association v. de la Cuesta*,
458 U.S. 141 (1982).............................................................................................................8

*Gutierrez v. Wells Fargo Bank N.A.*,
622 F. Supp. 2d 946 (N.D. Cal. 2009) ...............................................................................3

*Gutierrez v. Wells Fargo Bank N.A.*,
No. C 07-05923, 2008 WL 4279550 (N.D. Cal. Sept. 11, 2008) ......................................3

*Hassler v. Sovereign Bank*,
No. 09-2982, 2010 WL 893134 (3d Cir. Mar. 15, 2010).....................................................9

*Mount Sinai Medical Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*,
329 F. Supp. 2d 1309 (S.D. Fla. 2004), *aff'd*, 188 F. App'x 966 (11th Cir. 2006) ..................1

*Resolution Trust Corp. v. Holtzman*,
618 N.E.2d 418 (Ill. App. Ct. 1993) ..................................................................................4

*Shukla v. BP Exploration & Oil, Inc.*,
    115 F.3d 849 (11th Cir. 1997) ..................................................................................2

*Video Trax, Inc. v. NationsBank, N.A.*,
    33 F. Supp. 2d 1041 (S.D. Fla. 1998) ......................................................................8

*White v. Wachovia Bank, N.A.*,
    563 F. Supp. 2d 1358 (N.D. Ga. 2008) ....................................................................9

## STATUTES

12 C.F.R. § 7.4007(b)(1).................................................................................................8

## OTHER AUTHORITIES

H.R. Rep. No. 103-651 (1984) (Conf. Rep.), *as reprinted in* 1994 U.S.C.C.A.N. 2068 ...............7

OCC Interpretive Letter No. 997, 70 F.R. 9127-01 (Feb. 24, 2005) ..............................................6

**ARGUMENT**

I.    **THE COURT SHOULD RECONSIDER ITS ORDER AND DISMISS PLAINTIFFS' CLAIMS AGAINST CHASE**

    A.    **Plaintiffs' "Good Faith And Fair Dealing" Claims Should Be Dismissed As A Matter Of Law**

        1.    **Plaintiffs Have No Claim Against Chase Under The Law Of Good Faith And Fair Dealing Because Their Agreements With Chase Categorically Provide That Items "Will" Be Posted In High To Low Order**

The terms of plaintiffs' contracts with Chase preclude the "good faith and fair dealing" claim that plaintiffs are advancing about the posting order of debit-card transactions.  Chase's contracts, differently from other banks' contracts, specified categorically that "[i]tems *will* be posted to your Account in highest to lowest dollar amount" (emphasis added).

First.  What the implied covenant of good faith and fair dealing requires is that Chase "perform its obligations under the contract . . . in a way that will effectuate the objectively reasonable expectations of the parties."  March 11 Order ("Order") at 19 (quoting *Alexander Mfg., Inc. Employee Stock Ownership & Trust v. Illinois Union Ins. Co.*, 666 F. Supp. 2d 1185, 1206 (D. Or. 2009)); *see also Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (the covenant "require[s] that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable, contractual expectations").  The gravamen of a good faith and fair dealing claim is that one party has "fail[ed] or refus[ed] to discharge contractual responsibilities . . . , which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party[,] thereby depriving that party of the benefits of the agreement."  *Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*, 329 F. Supp. 2d 1309, 1313 (S.D. Fla. 2004), *aff'd*, 188 F. App'x 966 (11th Cir. 2006).

- 1 -

Under plaintiffs' contracts with Chase, which prescribe explicitly that transactions "will be posted in highest to lowest dollar order," customers could not have had an "objectively reasonable expectation" that Chase would post items in an order different from high-to-low. High-to-low posting was specified as being as the parties' deal, and it could not have been expressed more plainly that Chase would do so. The implied covenant, as the Court's March 11 Order recognized, cannot "seek to vary the language of the contract." Order at 19. And, as this Court has ruled, a party cannot be deemed in breach of the implied covenant of good faith and fair dealing when it acts as "the agreement specifically provided" regarding the exact matter addressed in the contract. *Barnes v. Diamond Aircraft Indus., Inc*., 499 F. Supp. 2d 1311, 1317 (S.D. Fla. 2007) (King, J.) (citing *Shukla v. BP Exploration & Oil, Inc.*, 115 F.3d 849 (11th Cir. 1997)); *see also Burger King Corp. v. C.R. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) ("[T]he implied obligation of good faith cannot be used to vary the terms of an express contract") (internal citation omitted). As explained by the California Supreme Court, whose views should directly control this Court's ruling on the *Luquetta* complaint here because its claim is under California law:

> We are aware of no reported case in which a court has held the covenant of good faith may be read to prohibit a party from doing that which is expressly permitted by an agreement. On the contrary, as a general matter, implied terms should never be read to vary express terms. . . .  [T]he parties may, by express provisions of the contract, grant the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing.

*Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc*., 826 P.2d 710, 728 (Cal. 1992).

Second. Because plaintiffs' contracts with Chase said that Chase "will" post high-to-low, Chase does not rely on any invocation of discretion to justify posting in that order. Most banks' customer agreements do not specify that debits "will" be posted in high-to-low order, but instead say that the bank "may" exercise its discretion to decide to post in such an order. The March 11 Order

- 2 -

concluded that "[t]here are a number of cases supporting the proposition that when one party is given discretion to act under a contract, said discretion must be exercised in good faith." Order at 19. The Court concluded that a bank's choice of its posting order as an exercise of such discretion required application of the implied covenant. Order at 18-19. But that analysis neither addressed nor applied to Chase's contracts, under which posting in high-to-low order  was  not a matter of mere discretion, but was specified by the contract terms providing that transactions "will" be posted in that order.

The March 11 Order relied on Judge Alsup's decision in *Gutierrez* with respect to this point regarding discretion. *See, e.g.*, Order at 22 (citing *Gutierrez v. Wells Fargo Bank N.A.*, 622 F. Supp. 2d 946, 954 (N.D. Cal. 2009)). But the *Gutierrez* court itself made *Chase*'s point—distinguishing a contract that says items "may" be posted high-to-low from contracts that say items "will" be posted that way. The *Gutierrez* court specifically rested its good faith/discretion analysis on the point that the bank contract in issue there (*not* Chase's contract with *its* customers) "only says the bank *might* post items presented against the account in any order the bank chooses . . . . It uses the word 'may' rather than 'will,' leading the customers to believe, in the context of the statement, that reordering is not automatic but merely an exception . . . ." *Gutierrez v. Wells Fargo Bank N.A.*, No. C 07-05923, 2008 WL 4279550, at *10 (N.D. Cal. Sept. 11, 2008) (emphasis in original). Indeed, this point was so central that Judge Alsup reiterated it in a second opinion. *See Gutierrez*, 622 F. Supp. 2d at 954-955. The *Gutierrez* court said that a disclosure that the bank "may" post in high-to-low order "does nothing more than give discretion to the bank" that "must be exercised subject to good faith and fair dealing"—and distinguished the case in which a bank's contract says that the bank "will" post in high-to-low order, as Chase's does.

Third.    Plaintiffs are wrong in arguing that the language in the contract by which Chase "reserves the right to change this [high-to-low] posting order without notice" supports their position.   That language does not change the fact that the contract itself chooses posting

high-to-low as the parties' agreed term, and thus precludes any notion that it is outside the reasonable expectation of Chase's customers or requires some justification outside the express contractual terms. Moreover, Plaintiffs cannot claim that this reserved *right* constituted any kind of *obligation* on Chase to change the posting order. No legal authority reads the implied covenant of good faith and fair dealing to change rights into obligations in any such way. The law is to the contrary. *See, e.g.*, *Balfour, Gutrie & Co. v. Gourmet Farms*, 108 Cal. App. 3d 181, 190-91 (Cal. Ct. App. 1980) (implied covenant of good faith and fair dealing did not transform right into a duty). To be sure, *if* Chase were to act on its reserved right, and changed the posting order to something other than high-to-low, then *that change* might be a matter of discretion that could subject *that change* to good faith/fair dealing scrutiny. But Plaintiffs do not claim there was any such change here.

        Fourth. Plaintiffs note that their contracts provide that Chase "may" *charge a fee* for overdrafts, and from this they attempt to argue that the *posting order* was uncertain. But that is a *non sequitur*. Chase's contract does not say that Chase "may" post in high-to-low order: it says Chase "will" do so. Moreover, there is no basis in law for plaintiffs to argue—and they really do not even try—that a provision saying that the bank may charge a fee can be rationally interpreted to mean that the bank has a legal obligation not to charge a fee even though it has been earned under the specific terms of the contract. No authority is cited to support any such idea. *See, e.g., Balfour*, 108 Cal. App. 3d at 190-91 (implied covenant of good faith and fair dealing did not require firm to lower the price allowed under the contract terms); *Resolution Trust Corp. v. Holtzman*, 618 N.E.2d 418, 424-25 (Ill. App. Ct. 1993) ("Plaintiff could have allowed its mortgage to be subordinated to the condominium declaration, could have provided for partial releases, and could have had a greater understanding for defendants' economic problems. However, nothing in the mortgage documents requires a lender to soften its position or its heart."). Plaintiffs do not contend that for Chase to levy

its overdraft fee when an account is overdrawn would contravene any "objectively reasonable expectation."

Plaintiffs' brief does not discuss any of these issues, but simply cites the Court's April 14 Order [MDL Dkt. No. 361] concerning M&T Bank.  With respect, the considerations raised here by Chase were neither raised, nor dealt with by the Court's Order, in connection with M&T.  Nor are the Maryland authorities relied on in that Order applicable to *Luquetta* or *Lopez*,

For these reasons, under the specific terms of Chase's contracts specifying that items "will" be posted in high-to-low order, there is no legally viable claim of violation of the implied covenant of good faith and fair dealing.  Even if the Court has reached a different conclusion with respect to the good faith and fair dealing claims arising under other banks' contractual arrangements, Chase presents a different question because of the terms of its contracts.  Since the matter is a question of law, based on specific and unambiguous contract terms that are for the Court to interpret, Chase submits that the good faith and fair dealing claims against it should be dismissed at this juncture.

> **2.      Plaintiffs' Good Faith And Fair Dealing Claim Against Chase Is Preempted**

Chase's motion showed that, because plaintiffs' contracts with Chase categorically prescribed high-to-low posting, and national banks are authorized by the National Bank Act to contract for such banking terms, any invocation of the State-law implied covenant of good faith and fair dealing to override such agreed-upon banking terms would be preempted.  Plaintiffs' opposition brief, while arguing against National Bank Act preemption generally (which we address more fully below in connection with plaintiffs' unconscionability claim), does not even attempt to address this specific point with regard to good faith and fair dealing.

> **B.      Plaintiffs' "Unconscionability" Claims Should Be Dismissed As A Matter Of Law**

> **1.      Plaintiffs Concede That They Have No Claim Regarding The Amount Of Overdraft Fees**

- 5 -

On page 7 of their Opposition, plaintiffs expressly concede that they "are not challenging the amount of the fee Defendants charged for legitimate overdraft items" but are now only challenging the posting order.  Accordingly, the Court should dismiss the claims set forth in the *Luquetta* Complaint (¶ 118), and the *Lopez* Complaint (¶ 143), which purport to state a claim solely based on the *amount* of Chase's overdraft fees.

2. **Plaintiffs' Unconscionability Claims Are Preempted Because They Invoke State Law To Prohibit Banking Terms Admittedly Authorized By The National Bank Act**[1]

There is no basis to dispute—and plaintiffs do not dispute it—that the posting of debits on a high-to-low basis is within the federally-authorized power of a national bank such as Chase, by virtue of 12 U.S.C. § 24 (Seventh).  *See* Order at 14 (national banks' setting of "'fees based on a given order of check posting falls within the Banks' authority to set fees pursuant to section [2]4 (Seventh) and [12 C.F.R.] § 7.4002(b)'" (quoting OCC Interpretive Letter No. 997, 70 FR 9127-01 (Feb. 24, 2005))).

Plaintiffs principally argue that, notwithstanding this federal authorization, State law prohibiting or substantively restricting such terms is not preempted, principally because "banks could comply with both the NBA, OCC regulations and state laws if they refrained from engaging in the criticized posting procedures."  *See* Order at 16.  But that line of argument—the contention that a State prohibition on an otherwise authorized national banking practice is binding so long as it remains possible for the national bank to comply with both Federal and State law—is not the law.  As the Supreme Court has repeatedly stated, the question is not whether there is an "irreconcilable conflict," but instead whether the State restriction "stan[ds] as an obstacle" to the bank's full enjoyment of its Federally-granted powers.  *Barnett Bank of*

---

[1]     For the reasons stated in Chase's opening brief, all of plaintiffs' claims are preempted. This reply brief focuses on plaintiffs' unconscionability claim in light of plaintiffs' arguments in opposition.

*Marion County, N.A. v. Nelson*, 517 U.S. 25, 31 (1996).  Indeed, the very authorities cited in plaintiff's Opposition to Chase's preemption argument make this point, and they uniformly state the direct opposite of the argument that plaintiffs are trying to support.

For example, plaintiffs cite *Cliff v. Payco General American Credits, Inc*., 363 F.3d 1113 (11th Cir. 2004), as purportedly making it "clear that preemption does not exist unless 'it is impossible to comply with both federal and state law.'"  Opp. at 25 (quoting *Cliff*, 363 F.3d at 1122).  But in fact the *Cliff* opinion is unmistakably explicit, in the very passage cited by plaintiffs, that "even if Congress has neither expressly preempted state law nor occupied the field" State law is preempted *either* in the case of a conflict *or*, as the OCC's regulation on deposit-taking states, "when state law stands as an obstacle to achieving the objectives of the federal law."  *Cliff*, 363 F.3d at 1122.  That is the case here: the invocation of State law to invalidate the substantive terms on which Chase engages in banking pursuant to its Federal charter is an obstacle to the bank's full exercise of its federal license.

Similarly, House Conference Report No. 103-651, cited by plaintiffs at page 24, does *not* say that the National Bank Act does not preempt State consumer-protection laws.  On the contrary, the report *specifically* says that the Interstate Banking and Branching Efficiency Act of 1994 does not change anything about preemption under the National Bank Act; that State law may not be applied to a national bank's activities "when Federal law preempts application of the State laws to a national bank"; and, further, that such State laws are preempted whenever "the State law stands as an obstacle to the accomplishment of the full purposes and objectives of the Federal law."  H.R. Rep. No. 103-651 (1984) (Conf. Rep.), *as reprinted in* 1994 U.S.C.C.A.N. 2068, 2074.

Likewise, plaintiffs invoke *Video Trax, Inc. v. NationsBank, N.A.*, 33 F. Supp. 2d 1041 (S.D. Fla. 1998).  But that case *rejected a challenge to a national banks' overdraft fees*, and so far as preemption is concerned it held only that the usury provision of the National Bank Act, 12 U.S.C. § 85, which is not involved here, did not pertain to overdraft fees.  It did not, and did not have any reason to, consider whether any purported State limits on overdraft fees were preempted, because the plaintiffs did not assert that State law limited such fees.

The regulations of the OCC, which themselves have preemptive force over State law, *see Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153-54 (1982), prescribe that "state laws that obstruct, impair, or condition a national bank's ability to *fully exercise* its Federally authorized deposit-taking powers are not applicable to national banks."  12 C.F.R. § 7.4007(b)(1) (emphasis added).  Plaintiffs reject this, Opp. at 24, but it is established law. Plaintiffs' theory that a State restriction on national bank activities is preempted only in the case of an irreconcilable conflict is not supported by any case or other authority, and it is categorically wrong.

### C.    Plaintiffs' Remaining Claims Also Fail

If, as Chase submits, plaintiffs' claims fail under the rubrics of good faith and fair dealing and unconscionability, then their claims for conversion and unjust enrichment also fail as a consequence.  The conversion claim fails because, if the bank's fees were not impermissible, it was proper for the bank to deduct them from the account balance.  The unjust enrichment claim fails because contractually-permissible fees are, as a matter of law, not "unjust".  *See* Omnibus Motion to Dismiss and/or for Judgment on the Pleadings and Incorporated Memorandum of Law ("MTD") [Dkt. No. 217] at 64-67.

Plaintiffs' statutory claims fail as well.  The statutory claims in the *Lopez* Complaint were already dismissed under the Court's March 11 Order because none of the plaintiffs is a resident

of the States whose statutory claims were invoked.  The statutory claims set forth in the *Luquetta* Complaint fail because the substance of the claims is expressly based on plaintiffs' good faith and fair dealing and unconscionability theories.  *See* MTD at 73.

## II.    IF THE COURT DETERMINES NOT TO DISMISS THE CLAIMS AGAINST CHASE, IT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. §1292(B)

If the Court does not dismiss the claims against Chase, then Chase respectfully requests a § 1292(b) certification, as stated in Part III of its motion.  The issues addressed here are fundamental and controlling questions of law.  They are also matters on which there is substantial ground for difference of opinion.  The Court's March 11 Order is, for example contrary to the resolution of preemption issues by other courts, *see* the defendants' joint "Reply In Support Of Defendants' Motion For Certification Under 28 U.S.C. § 1292(b)" being filed today.  The Court's Order is also contrary to the resolution of good faith and fair dealing contractual issues by the Third Circuit in *Hassler v. Sovereign Bank*, No. 09-2982, 2010 WL 893134 (3d Cir. Mar. 15, 2010).[2]  In addition, *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008), on which plaintiffs rely so heavily, does not support their argument about preemption of their unconscionability claim: *White* dismissed the unconscionability claim as a matter of law.  *Id.* at 1370-71.  And, with respect, Chase submits that its discussion of all of the issues above identifies substantial grounds for decision contrary to the Court's prior Order.

---

[2]     Plaintiffs contend (Opp. at 6 n.4) that the Third Circuit's decision in *Hassler* "should never even have been cited" because it is non-precedential.  Plaintiffs are perhaps unaware of Federal Rule of Appellate Procedure 32.1, which provides that **"**[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been designated . . . 'nonprecedential' . . . or the like."  In any event, the point here is not that *Hassler* binds this Court, which Chase does not claim; the point is rather that the fact the unanimous Third Circuit panel reached a conclusion of law opposite to this Court's Order is evidence that the matter meets the § 1292(b) requirement of "substantial ground for difference of opinion."

Resolution of these matters would materially advance the ultimate termination of the lawsuit because, under Chase's view of the applicable law, the suit would be dismissed; even if Chase's positions are upheld only in part, the issues would be very substantially narrowed, facilitating and speeding pretrial proceedings and the ultimate resolution of the case.

## CONCLUSION

The Court should reconsider its March 11 Order, and dismiss plaintiffs' claims against Chase, or in the alternative certify its Order for interlocutory review pursuant to 28 USC § 1292(b).

Dated:  May 3, 2010

Respectfully submitted,

WILMER CUTLER PICKERING HALE
  AND DORR LLP

s/ Christopher R. Lipsett
Christopher R. Lipsett
(chris.lipsett@wilmerhale.com)
David S. Lesser
(david.lesser@wilmerhale.com)
Alan E. Schoenfeld
(alan.schoenfeld@wilmerhale.com)
399 Park Avenue
New York, New York  10022
tel: (212) 230-8851
fax: (212) 230-8888

A. Stephen Hut, Jr.
(stephen.hut@wilmerhale.com)
1875 Pennsylvania Avenue NW
Washington, DC  20006
tel: (202) 663-6000
fax: (202) 663-6363

*Attorneys for defendant JPMorgan Chase Bank, N.A.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-MD-02036-JLK**

**IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

**THIS DOCUMENT RELATES TO:**                    )
                                                 )
                                                 )
*Lopez v. JPMorgan Chase Bank, N.A.*             )
**S.D. Fla. Case No. 1:09-cv-23127-JLK**         )
                                                 )
*Luquetta v. J.P. Morgan Chase Bank, N.A.*       )
**S.D. Fla. Case No. 1:09-cv-23432-JLK**         )
**C.D. Cal. Case No. CV09-6967-GHK**             )
                                                 )
                                                 )

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 3, 2010, I electronically filed the following document with

the Clerk of the Court using CM/ECF:

- REPLY BRIEF IN SUPPORT OF THE MOTION OF JPMORGAN CHASE
  BANK, N.A. FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
  CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b), OF THE
  COURT'S ORDER REGARDING THE *LOPEZ* AND *LUQUETTA*
  COMPLAINTS

I also certify that this document is being served this day on all counsel of record and/or

parties in the above-captioned cases via transmission of Notices of Electronic Filing generated

by CM/ECF or in some other agreed-upon manner for those counsel or parties who are not

authorized to receive electronically Notices of Electronic Filing.


/s/ Christopher R. Lipsett
CHRISTOPHER R. LIPSETT

*(pro hac vice)*
christopher.lipsett@wilmerhale.com
WILMER CUTLER PICKERING HALE
  AND DORR LLP
399 Park Avenue
New York, New York  10022
tel: (212) 230-8851
fax: (212) 230-8888