UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:

*Dwyer v. Toronto-Dominion Bank*
S.D. FL Case No. 10-20855-JLK
D.Mass. Case No. 09-cv-12118

*Kimenker v. TD Bank, N.A.*
S.D. FL Case No. 10-21175-JLK
D.N.J. Case No. 10-cv-00136

*Mascaro v. TD Bank, Inc.*
S.D. FL Case No. 10-21117-JLK
D.D.C. Case No. 10-cv-0040

*Mosser v. TD Bank, N.A.*
S.D. Fl. Case No. 10-21386-JLK
E.D. Pa. Case No. 10-cv-00731

---

**DEFENDANTS TD BANK, N.A.'s AND THE TORONTO-DOMINION
BANK'S MOTION TO DISMISS AND/OR FOR JUDGMENT ON THE PLEADINGS
AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PLAINTIFFS' COMPLAINTS ............................................................................................1

ARGUMENT.........................................................................................................................2

    I.    The *Kimenker* and *Mosser* Complaints Should Be Dismissed Pursuant To
        The Third Circuit's Recent *Hassler* Decision.........................................................2

        A.    *Hassler* Affirmed The Dismissal Of Claims Against Sovereign
            Bank Based On The Fact That The Deposit Agreement Clearly Put
            The Customer On Notice That The Bank Might Reorder Charges. ........... 3

        B.    Kimenker's and Mosser's Deposit Agreements Are Materially
            Identical To The Sovereign Bank Agreement At Issue In *Hassler*. ........... 4

            1.    Kimenker's Deposit Agreement ...................................................... 5

            2.    Mosser's Deposit Agreement........................................................... 6

            3.    The Foregoing Agreements At Issue In *Kimenker* And
                *Mosser* Are Materially Identical To The Agreement Before
                The Court In *Hassler*. ..................................................................... 8

        C.    The *Hassler* Decision Should Indeed Control This Court's Ruling
            On Kimenker's Claims Against TD Bank Under New Jersey Law............ 9

        D.    The *Hassler* Decision Should Also Control This Court's Ruling On
            Mosser's Claims Against TD Bank Under Pennsylvania Law................. 11

    II.    The *Mascaro* and *Dwyer* Complaints Should Also Be Dismissed Pursuant
         To The Rationale Articulated By The *Hassler* Court. ...........................................11

    III.    The *Dwyer* Complaint Should Be Dismissed For The Additional Reason
          That Dwyer Has No Relationship With Toronto-Dominion.................................12

CONCLUSION....................................................................................................................13

## TABLE OF AUTHORITIES

**CASES**

*Akshayraj, Inc. v. Getty Petroleum Marketing, Inc.*,
    2009 WL 961442 (D.N.J. Apr. 8, 2009) ......................................................................... 11

*Factors Etc., Inc. v. Pro Arts, Inc.*,
    652 F.2d 278 (2d Cir. 1981) .......................................................................................... 9

*Forzley v. AVCO Corp. Elec. Div.*,
    826 F.2d 974 (11th Cir. 1987) ..................................................................................... 10

*Hassler v. Sovereign Bank*,
    No. 09-2982, 2010 WL 893134 (3d Cir. Mar. 15, 2010) ................................ 2, 3, 4, 10, 11

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*,
    421 F.3d 1162 (11th Cir. 2005) ................................................................................... 12

*Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*,
    944 F.2d 940 (D.C. Cir. 1991) ....................................................................................... 9

*Instructional Sys., Inc. v. Computer Curriculum Corp.*,
    614 A.2d 124 (N.J. 1992) ............................................................................................ 10

*Internet Solutions Corp. v. Marshall*,
    557 F.3d 1293 (11th Cir. 2009) ................................................................................... 12

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) .................................................................................................... 10

*La Grasta v. First Union Sec., Inc.*,
    358 F.3d 840 (11th Cir. 2004) ....................................................................................... 5

*Maxcess, Inc. v. Lucent Tech., Inc.*,
    433 F.3d 1337 (11th Cir. 2005) ..................................................................................... 5

*Mellon Bank, N.A. v. Ternisky*,
    999 F.2d 791 (4th Cir. 1993) ......................................................................................... 9

*Murphy v. F.D.I.C.*,
    208 F.3d 959 (11th Cir. 2000) ..................................................................................... 10

*Reese v. JPMorgan Chase & Co.*,
    No. 09-20912, 2009 WL 3346783 (S.D. Fla. Oct. 15, 2009) (King, J.) ........................... 5

*Rubenstein v. Dovenmuehle Mortgage, Inc.*,
    2009 WL 3467769 (E.D. Pa. Oct. 28, 2009) ................................................................ 11

**STATUTES**

N.J. Stat. Ann. § 56:8-2 .................................................................................................................. 10

Defendant TD Bank, N.A. ("TD Bank") hereby moves, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c), for dismissal or judgment on the pleadings on each of the three complaints against it in this Multidistrict Litigation ("MDL") proceeding. Independently, The Toronto-Dominion Bank ("Toronto-Dominion") hereby moves pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) for dismissal of the one complaint pending against it. In support of this motion, TD Bank and Toronto-Dominion adopt and join in the arguments set forth in the Omnibus Motion to Dismiss and/or for Judgment on the Pleadings and Incorporated Memorandum of Law ("Omnibus Motion") (DE # 217) and the Reply in Support of the Omnibus Motion (DE # 291).[1] In addition, TD Bank and Toronto-Dominion provide the below supplemental arguments specific to the lawsuits against them.[2]

## PLAINTIFFS' COMPLAINTS

TD Bank is a defendant in three lawsuits that have been coordinated in this MDL proceeding:

- *Kimenker v. TD Bank, N.A.*, No. 10-21175-JLK ("*Kimenker*");
- *Mosser v. TD Bank, N.A.,* No. 10-21386-JLK ("*Mosser*"); and
- *Mascaro v. TD Bank, Inc.* No. 10-21117-JLK ("*Mascaro*").[3]

Toronto-Dominion is a defendant in one such lawsuit:

- *Dwyer v. Toronto-Dominion Bank,* No. 10-20855-JLK ("*Dwyer*").

---

[1] TD Bank and Toronto-Dominion also adopt and join in the substantive arguments set forth in the Motion to Clarify Court's March 11, 2010 Order Ruling on Omnibus Motion to Dismiss and/or for Judgment on the Pleadings and Incorporated Memorandum of Law (DE # 325) and Defendants' Motion for Certification Under 28 U.S.C. § 1292(b) and Incorporated Memorandum of Law (DE # 326).

[2] On April 16, 2010, this Court entered an order requiring TD Bank and three other newly added defendant banks to file all defensive motions they wish to file within fifteen (15) days from the date of the Order, which is May 3, 2010. (DE # 365.) TD Bank and Toronto Dominion have previously filed two motions seeking relief from that deadline (DE # 399, DE # 417), and file this motion only because the Court has yet to rule on those motions. TD Bank and Toronto Dominion continue to request the relief sought by their prior motions.

[3] TD Bank assumes that by naming "TD Bank, Inc.," plaintiff Mascaro meant to name TD Bank, N.A.

{

Each of these lawsuits originated outside of this District and was transferred here pursuant to an order of the Judicial Panel on Multidistrict Litigation. The individual complaints were filed by plaintiffs residing in New Jersey (*Kimenker*), Pennsylvania (*Mosser*), New York (*Mascaro*) and Massachusetts (*Dwyer*), each announcing an intention to seek at some point an order allowing the named plaintiff to represent a nationwide class, together with (in some cases) subclasses limited to residents of particular states.

The complaints in these four cases vary somewhat in the causes of action asserted, but all of the complaints other than the *Dwyer* complaint allege causes of action for breach of contract and/or for breach of an implied covenant of good faith and fair dealing. Other causes of action asserted within the complaints include conversion, unconscionability, fraud and unjust enrichment. Certain of the plaintiffs also allege causes of action based on the consumer protection laws of various states.

## ARGUMENT

I.  **The *Kimenker* and *Mosser* Complaints Should Be Dismissed Pursuant To The Third Circuit's Recent *Hassler* Decision.**

On March 15, 2010, four days after this Court issued its Order on the Omnibus Motion, a unanimous Third Circuit panel affirmed the New Jersey federal district court's dismissal of plaintiff's claims that Sovereign Bank's policy of processing consumer debit transactions in descending dollar amount violated New Jersey's Consumer Fraud Act, breached the bank's contractual duty of good faith and fair dealing, and unjustly enriched the bank. *See Hassler v. Sovereign Bank*, No. 09-2982, 2010 WL 893134 (3d Cir. Mar. 15, 2010), *aff'g*, 644 F.Supp.2d 509 (D.N.J. 2009). The circuit court's decision rested on application of the terms of Sovereign Bank's agreement governing its customers' checking accounts and use of their debit cards to New Jersey law. As explained below, the terms of Kimenker's and Mosser's agreements with

TD Bank are materially identical to the Sovereign Bank agreement in that each agreement "clearly explains that [the bank] may reorder charges." *Id.* at *4. Accordingly, the views of the Third Circuit in the *Hassler* case should control this Court's ruling on Kimenker's claims under New Jersey law, as well as Mosser's claims under Pennsylvania law.

      **A.**    ***Hassler* Affirmed The Dismissal Of Claims Against Sovereign Bank Based On The Fact That The Deposit Agreement Clearly Put The Customer On Notice That The Bank Might Reorder Charges.**

In *Hassler*, the Third Circuit focused its decision on the basic notion that where the deposit agreement clearly puts a customer on notice that the bank might reorder debit charges in any order, including by descending order of amount, the customer could have no reasonable expectation that the bank would not decide to post charges in descending order by amount. *See Hassler*, 2010 WL 893134, at *4. ("[T]he Account Agreement clearly explains that Sovereign may reorder charges. Hassler cannot ignore this language and argue that he could not have expected Sovereign's rearrangement of the charges and his incurrence of overdraft fees in the manner described.").

The Court's analysis in *Hassler* focused on two sections of Sovereign Bank's deposit agreement. The first section explicitly granted the bank wide discretion concerning the ordering of debits to a customer's account, including authorizing the ordering of debits in descending dollar amount:

> We reserve the right to pay the withdrawals you make from your Account regardless of the method of withdrawal in any order we determine. This includes withdrawals made at an ATM or by computer, POS purchases, checks, pre-authorized payments and any other means we make available to you. The order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day. Generally, we post your payment transactions each business day in descending order, starting with the largest payment order that is presented for payment. This means, for example, that your $900 mortgage payment will be paid before the $100 purchase you made

> at the supermarket. The order in which we post your transactions may affect whether you incur fees for insufficient or unavailable funds.

*Id.* at *1.

The second pertinent section made clear that attempting to charge an account beyond its available balance will not necessarily result in the charge being denied, and authorizes Sovereign Bank to charge overdraft fees:

> If you write a check or other order or otherwise request a withdrawal from your Account, such as by using an ATM or making a purchase using a Visa CheckCard or ATM Card, for more money than you have available for withdrawal from your Account, we may either permit you to withdraw the funds by complying with the payment order or we may refuse to honor the payment order. You may incur a fee for each payment order that is presented against your account when you do not have sufficient available funds.
>
> We will not be liable to you if we choose to honor such a payment order. If we honor your payment order, you agree to pay us the amount of the overdraft immediately.

*Id.*

### B.   Kimenker's and Mosser's Deposit Agreements Are Materially Identical To The Sovereign Bank Agreement At Issue In *Hassler*.

Plaintiffs' accounts with TD Bank are governed by the terms and conditions in TD Bank's Personal Deposit Account Agreement. The various plaintiffs' deposit agreements relevant to their respective claims are substantially similar, but there are some differences stemming from the fact that TD Bank's standard deposit agreement changed over time. Despite these differences, all of the plaintiffs' deposit agreements are materially identical to the Sovereign Bank agreement at issue in *Hassler*. Kimenker's and Hassler's deposit agreements are described below.[4]

---

[4] In addition to considering "well-pleaded factual allegations," the Court may consider, without converting the motion into one for summary judgment, "documents central to or referenced in the complaint, and matters judicially noticed." *Reese v. JPMorgan Chase & Co.*, No. 09-20912, 2009 WL 3346783, at *2 (S.D. Fla. Oct. 15, 2009)

- 4 -

### 1. Kimenker's Deposit Agreement

Like Sovereign Bank's agreement, Kimenker's deposit agreement explicitly authorizes TD Bank to post debits to any account in any order it chooses, including the order of high-to-low dollar amount:

> PAYMENT OF CHECKS AND ITEM PROCESSING ORDERS
>
> We may accept, pay, or charge to the appropriate Account checks and other items in any order we choose.[5]
>
> We may establish different processing orders for checks and other items. We may establish categories for checks and other items. We may establish a processing priority for each category. For example we may treat ATM withdrawals and loan payments as one category and checks as another category and then process ATM withdrawals and loan payments before checks. *Within each category, we may process checks and other items in any order we choose. Methods available to the Bank for processing checks and other items for payment include, but are not limited to, by dollar amount from highest to lowest, by number or by date.* We may in our sale discretion change our priorities, categories, or orders at any time without notice to you. Even if we provisionally post checks and other items to your Account during any Business Day, we may treat them as if we received all of them at the end of that Business Day and process them in any order we choose.

(Deposit Agreement dated August 10, 2009, attached hereto as Exhibit 1, at 14-15 (emphasis added).)[6]

The agreement explicitly states TD Bank's overdraft policy, and authorizes the bank to charge overdraft fees:

> OVERDRAFTS
>
> An overdraft is an advance of funds greater than the amount that has become available in accordance with the Bank's Funds Availability Policy, made by us to you, at our sole discretion. Overdrafts include advances to cover a check, in-

---

(King, J.) (quoting *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)); *see also, e.g.*, *Maxcess, Inc. v. Lucent Tech., Inc.*, 433 F.3d 1337, 1340 n. 3 (11th Cir. 2005) (court may consider, on motion to dismiss, a contract that was central to plaintiff's claims).

[5] The deposit agreement defines "item" as including "a check, . . . ATM withdrawal or transfer, point-of-sale transaction, preauthorized payment, automatic transfer, telephone-initiated transfer, ACH transactions, online banking transfer or bill payment instruction . . . ."

[6] The allegations within Kimenker's complaint rest on his transactions with the bank in 2009. (*See Kimenker* complaint ¶ 29.)

> person withdrawal, ATM withdrawal, or a withdrawal by other electronic means from your Account.  We may demand immediate repayment of any overdraft and charge you an overdraft fee (see Fee Schedule).
>
> You agree to pay us, when we ask you, all of our costs of collecting an overdraft, to the fullest extent permitted by applicable law.  These costs include, but are not limited to, our legal fees and expenses.  If more than one of you owns an Account, each of you will be responsible for paying us the entire amount of all overdrafts and obligations resulting from the overdrafts.

(Exhibit 1 at 16.)  Kimenker's deposit agreement also states unambiguously that the debit processing order chosen by the bank may impact the imposition of overdraft fees:

> When you do not have enough funds in your Account to cover all of the checks and other items presented that Business Day, some processing orders may result in more insufficient funds items and more fees than others. We may choose our processing orders in our sole discretion and without notice to you, regardless of whether additional fees may result.

(Exhibit 1 at 15.)

### 2.  Mosser's Deposit Agreement

Mosser's deposit agreement is substantially similar to Kimenker's in that it explicitly authorizes TD Bank to post debits to any account in any order it chooses, including the order of high-to-low dollar amount:

> Payment of Checks and Item Processing Orders
>
> We may accept, pay, or charge to the appropriate Account checks and other items in any order we choose.
>
> We may establish different processing orders for checks and other items. We may establish categories for checks and other items. We may establish a processing priority for each category. For example, we may treat ATM withdrawals and loan payments as one category and checks as another category and then process ATM withdrawals and loan payments before checks. *Within each category, we may process checks and other items in any order we choose.  Methods available to the Bank for processing checks and other items for payment include, but are not limited to, by dollar amount from highest to lowest, by number or by date.* We may in our sale discretion change our priorities, categories, or orders at any time without notice to you.  Even if we provisionally post checks and other items to your Account during any Business Day, we may treat them as if we received all of

- 6 -

> them at the end of that Business Day and process them in any order we choose. We do not process transactions in the order in which they occurred.

(Deposit Agreement dated April 29, 2008, attached hereto as Exhibit 2, at 15 (emphasis added).)[7]

Mosser's agreement in fact provides that the bank "typically" processes debits in descending dollar amount, and that this posting order may impact the imposition of overdraft fees:

> When you do not have enough funds in your account to cover all of the checks and other items presented that Business Day, some processing orders may result in more insufficient funds items and more fees than others. We may choose our processing orders in our sole discretion and without notice to you, regardless of whether additional fees may result.
>
> We currently process checks and other items according to certain categories and priorities. Within each, *we typically process checks and other items from the highest to lowest dollar amount.* If there are not enough funds to cover all of the checks and other items processed on any given Business Day, these categories, priorities and high-to-low processing orders may result in more insufficient funds items and more fees than may have resulted if we had used another processing order.

(Exhibit 2 at 16 (emphasis added).)

The agreement also explicitly states TD Bank's overdraft policy, and authorizes the bank to charge overdraft fees:

> Overdrafts
>
> An overdraft is an advance of funds made by us to you, at our sale discretion, to cover a check, in-person withdrawal, ATM withdrawal, or a withdrawal by other electronic means from your Account. We may demand immediate repayment of any overdraft and charge you an overdraft fee (see Fee Schedule).  You agree to pay us, when we ask you, all of our costs of collecting an overdraft, to the fullest extent permitted by applicable law. These costs include, but are not limited to, our legal fees and expenses. If more than one of you owns an Account, each of you will be responsible for paying us the entire amount of all overdrafts and obligations resulting from the overdrafts.
>
> We do not have to allow you to make an overdraft.  Intentionally withdrawing funds from an Account when there are not enough funds in the Account to cover

---

[7] The allegations within Mosser's complaint rest on his transactions with the bank in July 2008. (*See Mosser* complaint ¶ 80.)

- 7 -

the withdrawal or when the funds are not yet available for withdrawal may be a crime.

(Exhibit 2 at 17.)

### 3. The Foregoing Agreements At Issue In *Kimenker* And *Mosser* Are Materially Identical To The Agreement Before The Court In *Hassler*.

There exists no material difference between the Sovereign Bank agreement at issue in *Hassler* and the provisions of TD Bank's deposit agreements with Kimenker and Mosser. In each instance the agreement: (1) unambiguously explains the bank's right to permit or refuse overdrafts; (2) unambiguously informs the customer that the bank retains the right in its discretion to post customer payment transactions daily in any order; (3) expressly explains that one such order that it may, but need not use, is that of descending dollar amount; and (4) expressly discloses that such processing order might impact the imposition of overdraft fees. The only difference is that the Sovereign Bank agreement states that the bank "generally" does in fact post high to low, but need not do so; while the TD Bank agreement with Kimenker lists high to low as a method that it may use, and Mosser's agreement provides that TD Bank "typically" posts debits from the highest to lowest dollar amount. In either event, no consumer could be said to expect that the bank would not post high to low.

In its ruling on the Omnibus Motion, this Court found the express retention of discretion to post charges in any order that the bank should decide upon as, in effect, an assumption of a duty to decide upon a posting order "in good faith." *See* Order Ruling on Omnibus Motion to Dismiss at 18-23 (DE # 305). This Court further reasoned that selecting an order expressly identified in the agreement could be said to be in bad faith, thereby effectively precluding a bank from selecting the posting order expressly identified in the agreement. *Id.* The Third Circuit reasoned very differently, finding that when a bank expressly identifies a possible posting order

- 8 -

that it might well use in its sole discretion, using such an order could hardly be said to breach the contract between the parties. If the Third Circuit's reasoning is applied here, then the result should be the same as in *Hassler*.

      **C.**    **The *Hassler* Decision Should Indeed Control This Court's Ruling On Kimenker's Claims Against TD Bank Under New Jersey Law.**

The law is well established that where a circuit court of appeals makes a determination concerning the laws of a state within that circuit, "the federal courts of other circuits should defer to that holding, perhaps always, and at least in all situations except the rare instance when it can be said with conviction that the pertinent court of appeals has disregarded clear signals emanating from the state's highest court pointing toward a different rule." *Factors Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278, 282-83 (2d Cir. 1981) (determining that Second Circuit should defer to the views of the Sixth Circuit concerning Tennessee law unless it could point to a clear basis in Tennessee law for predicting that the Tennessee courts, when confronted with a similar case, would conclude that the Sixth Circuit's prediction was incorrect); *see also Indep. Petrochem. Corp. v. Aetna Cas. & Sur. Co.*, 944 F.2d 940, 944-45 (D.C. Cir. 1991) ("The potential for forum-shopping within the federal judicial system caused by intercircuit conflicts over the meaning of state law, and the assumption of expertise on the part of the home circuit, have led us to conclude that a home circuit's view of state law is entitled to deference."); *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 796 (4th Cir. 1993) (deferring to Third Circuit's interpretation of Pennsylvania law).[8]

---

[8] On a practical level, the *Hassler* district court opinion authored by Judge Simandle could be said to be even more noteworthy as a reliable guide for New Jersey law than the Third Circuit's decision. *See Hassler v. Sovereign Bank*, 644 F.Supp.2d 509 (D.N.J. 2009); *see also Peacock v. Retail Credit Co.*, 429 F.2d 31, 31 (5th Cir. 1970) ("We . . . give great weight to the determination of state law by the Trial Judge sitting in the state and familiar with local law and its trends.")

Given this legal precedent, the similarities between the deposit agreement with Kimenker and the Sovereign Bank agreement at issue in *Hassler* should lead this Court to dismiss all of Kimenker's claims against TD Bank.[9] Certainly those causes of action dismissed in *Hassler*—*i.e*, breach of the covenant of good faith and fair dealing, unjust enrichment and violation of the New Jersey Consumer Fraud Act—must fail. In addition, although the *Hassler* Court did not expressly address the common law claim of fraud that has been raised against TD Bank by Kimenker, if, as TD Bank submits, Kimenker's claims under New Jersey law concerning good faith and fair dealing, unjust enrichment and consumer protection fail under *Hassler*, then his fraud claim also fails as a consequence. Indeed, in ruling that posting debits in an order explicitly provided for in the deposit agreement did not violate the New Jersey Consumer Fraud Act, the *Hassler* Court determined that such posting did not amount to "unlawful conduct," which is defined by New Jersey statute to include "any unconscionable commercial practice, deception . . . [or] fraud . . . ." *Hassler*, 2010 WL 89314, at *2-3 (citing N.J. Stat. Ann. § 56:8-2).

---

[9] When considering choice of law, a court sitting in diversity must look to the laws of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Forzley v. AVCO Corp. Elec. Div.*, 826 F.2d 974, 978 (11th Cir. 1987). In multidistrict litigation, the forum state is that in which the transferor district court sits. *Murphy v. F.D.I.C.*, 208 F.3d 959, 965 (11th Cir. 2000). The *Kimenker* complaint was filed in New Jersey by a New Jersey resident. Kimenker's deposit agreement contains a choice-of-law provision that provides as follows:

> Governing Law: This Agreement is governed by the laws of the state or commonwealth in which the Bank office where you opened your Account is located, except where applicable federal law is controlling.

(Exhibit 1 at 25.) Under New Jersey law, the parties' contractual choice of law controls. *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992) ("[W]hen parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy."). Accordingly, Kimenker is bound by his deposit agreement to be governed by the laws of the State of New Jersey.

### D. The *Hassler* Decision Should Also Control This Court's Ruling On Mosser's Claims Against TD Bank Under Pennsylvania Law.

Mosser's complaint arises under Pennsylvania law, and, following trial, would also be subject to final review in the Third Circuit. On the points at issue, there is no material difference between the common law of New Jersey and that of Pennsylvania such as might lead one to the conclusion that the Third Circuit would reach a decision in *Mosser* different than it reached in *Hassler*. *See, e.g., Akshayraj, Inc. v. Getty Petroleum Marketing, Inc.*, 2009 WL 961442, at *1 n.1 (D.N.J. Apr. 8, 2009) (noting that Pennsylvania's law regarding good faith and fair dealing is actually narrower than New Jersey's law); *Rubenstein v. Dovenmuehle Mortgage, Inc.*, 2009 WL 3467769, at *10 (E.D. Pa. Oct. 28, 2009) ("[W]e find the laws of New Jersey and Pennsylvania the same with regard to unjust enrichment.").[10]

### II. The *Mascaro* and *Dwyer* Complaints Should Also Be Dismissed Pursuant To The Rationale Articulated By The *Hassler* Court.

TD Bank and Toronto-Dominion also assert that the rationale and holding in *Hassler* should be applied in actions arising under the law of states outside the Third Circuit. TD Bank and Toronto-Dominion understand, though, that this Court has in a general sense addressed the underlying issues, without reference to the Third Circuit's decision in *Hassler*, in its ruling on the Omnibus Motion, and does not seek re-argument of the same points raised in the Omnibus Motion other than by reference and adoption.[11]

---

[10] The *Mosser* complaint alleges unconscionability and conversion, claims not expressly decided in *Hassler*. The *Hassler* Court, however, effectively ruled on unconsionability in determining that Sovereign Bank's posting order practices did not amount to an "unconscionable commercial practice." *Hassler*, 2010 WL 893134, at *2-3. Similarly, any conversion claims must fail under the *Hassler* holding because, if the bank's fees were not impermissible, it was proper for the bank to deduct them from the account balance. *See* Omnibus Motion at 64-67 (DE # 217).

[11] TD Bank and Toronto Dominion note that the Court did cite the district court's decision in *Hassler* in its Order on the Omnibus Motion, but it appears the Court distinguished it from the present lawsuits on the ground that it dealt with paper checks. *See* Order Ruling on Omnibus Motion to Dismiss at 20-21 (DE # 305). The district court's decision in *Hassler*, however, makes clear that the case dealt with electronic debits, not checks. *See Hassler*, 644

### III. The *Dwyer* Complaint Should Be Dismissed For The Additional Reason That Dwyer Has No Relationship With Toronto-Dominion.

The *Dwyer* complaint involves claims brought by a Massachusetts plaintiff (Dwyer) relating to overdraft fees charged to her checking account by her retail bank, TD Bank. Dwyer's factual allegations relate solely to her interactions with TD Bank pursuant to her deposit agreement with the bank, which she attaches as Exhibit C to her complaint. Notwithstanding that all of her allegations relate to her relationship with TD Bank, Dwyer failed to name TD Bank, N.A. as a defendant, electing (perhaps mistakenly) to sue an indirectly related corporate entity, The Toronto-Dominion Bank, a Canadian-chartered bank with which Dwyer does not assert any relationship, nor any grounds for asserting personal jurisdiction.

There being no factual basis, or even allegations in Dwyer's complaint, upon which to find that Toronto-Dominion has any type of relationship with Dwyer, the *Dwyer* complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

The Dwyer complaint can also be dismissed for the additional reason that Dwyer asserts no basis for establishing that personal jurisdiction over Toronto Dominion exists in Massachusetts. The only activity of any bank mentioned in the complaint is the activity of a bank under Exhibit C to the complaint, which is the agreement with TD Bank, not Toronto-Dominion. It appears that Dwyer has simply assumed, without explanation, that TD Bank, with whom she has her agreement, and Toronto-Dominion are somehow one and the same. Toronto Dominion, therefore, also respectfully moves to dismiss the *Dwyer* complaint based upon a lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). *See Internet Solutions Corp. v. Marshall*, 557 F.3d 1293, 1295-96 (11th Cir. 2009); *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005).

---

F.Supp.2d at 511 ("In this putative class action, Plaintiff . . . seeks to challenge a practice of Defendant Sovereign Bank . . . relating to the bank's processing of its customers' electronic debit transactions.")

## CONCLUSION

For all the foregoing reasons, the Court should dismiss the three complaints against TD Bank and the one complaint (Dwyer) against Toronto-Dominion in their entirety.

Dated: May 3, 2010

                                    Respectfully Submitted,

                                    /s/ William J. Kayatta, Jr.
                                    William J. Kayatta, Jr.
(*pro hac vice*)
wkayatta@pierceatwood.com
Lucus A. Ritchie
(*pro hac vice*)
lritchie@pierceatwood.com
PIERCE ATWOOD LLP
One Monument Square
Portland, ME  04101
Tel: (207) 791-1100 Fax: (207) 791-1350

*Attorneys for Defendants TD Bank, N.A. and The Toronto-Dominion Bank*

- 13 -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

      I hereby certify that on May 3, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      /s/ Lucus A. Ritchie
Lucus A. Ritchie
lritchie@pierceatwood.com
PIERCE ATWOOD LLP
One Monument Square
Portland, ME  04101
Tel: (207) 791-1100 Fax: (207) 791-1350