UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION,

MDL No. 2036

_____/

THIS DOCUMENT RELATES TO:

*Powell-Perry et al. v. Branch Banking & Trust Company*
S.D. Fla. Case No. 10-cv-20820-JLK
M.D. N.C. Case No. 09-cv-00619

*Barras v. Branch Banking & Trust Company*
S.D. Fla. Case No. 10-cv-20813-JLK
M.D. N.C. Case No. 09-00678

*Givens v. M&T Bank Corporation*
S.D. Fla. Case No. 10-cv-20478-JLK
Md. Case No. 09-cv-02207

*Hough et al. v. Regions Financial Corporation et al.*
S.D. Fla. Case No. 10-cv-20476-JLK
N.D. Ga. Case No. 09-02545

*Buffington, et al. v. SunTrust Banks, Inc.*
S.D. Fla. Case No. 09-cv-23632-JLK
N.D. Ga. Case No. 09-01558

_____/

## ORDER DENYING MOTIONS TO COMPEL ARBITRATION

This CAUSE comes before the Court upon the Defendant Banks' five (5) Motions to

Compel Arbitration currently pending before this Court.[1]  Coordinated Oral Argument on all

---

[1] Defendant Branch Banking and Trust's ("BB&T") Motion to Enforce Arbitration
Agreement filed in *Powell-Perry et al. v. Branch Banking & Trust Company*, 10-cv-20820-JLK
("*Powell-Perry*"); Defendant BB&T's Motion to Enforce Arbitration Agreement filed in *Barras*

Motions to Compel Arbitration was held on April 20, 2010.[2]

## I. BACKGROUND

Defendants petition this Court under Section 4 of the Federal Arbitration Act ("FAA") for an order compelling Plaintiffs to move these proceedings to arbitration in the manner provided for in the parties' agreements.[3]  9 U.S.C. § 4.  Plaintiffs concede that their agreements all contain mandatory arbitration provisions, but contend that the deficiencies in these agreements, when read as a whole, make the arbitration provisions unenforceable.  The Court agrees and Defendants' Motions to Compel Arbitration are therefore denied.

## II. DISCUSSION

The FAA embodies a strong policy in favor of enforcing valid arbitration agreements. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000).  Under the FAA, a written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate

---

*v. Branch Banking & Trust Company*, 10-cv-20813-JLK ("*Barras*"); M&T Bank Corporation's ("M&T") Motion to Compel Arbitration filed in *Givens v. M&T Bank Corporation*, 10-cv-20478-JLK ("*Givens*"); Regions Financial Corporation and Regions Bank's ("Regions") Motion to Compel Arbitration filed in *Hough et al. v. Regions Financial Corporation et al.*; 10-cv-20476-JLK ("*Hough*"); and SunTrust Banks, Inc.'s ("SunTrust") Motion to Compel Arbitration filed in *Buffington, et al. v. SunTrust Banks, Inc.*, 09-cv-23632-JLK ("*Buffington*").

[2]  Argument was also held on Defendants Huntington Bancshares Incorporated and Huntington National Bank's Motion to Compel Arbitration filed in *Gulley v. Huntington Bancshares Incorporated, et al.*; 10-cv-23514-JLK.  The Court addressed this Motion by separate Order.

[3]  For efficiency, the Court refers to each bank's variation of a deposit agreement as "Agreement."

arbitration agreements without contravening § 2." *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996). State law may be applied to determine the validity of an arbitration agreement if the law at issue governs contracts generally and not arbitration agreements specifically. *Id.* at 687.

Here, Plaintiffs generally assert that, under applicable state law, the arbitration clauses in these agreements are both procedurally and substantively unconscionable.[4] Regarding substantive unconscionability, Plaintiffs assert that the class action waiver contained in each of the Agreement's arbitration provisions[5] makes the arbitration provisions substantively unconscionable. If forced to abide by the class action waiver, Plaintiffs must proceed on an individual basis. Plaintiffs allege that they would not be able to find legal representation and would be unable to bear all the costs and fees associated with the action themselves. As none of these class action waivers can be severed from the arbitration clauses,[6] Plaintiffs argue that the arbitration provisions in their entirety are rendered unenforceable.

---

[4] Plaintiffs make numerous other arguments, such as the unavailability of an arbitral forum and that the arbitration clause impairs a litigant's right to a jury. Because the Court finds the arbitration clauses unconscionable, the Court does not address Plaintiffs' other contentions.

[5] For example, BB&T's class action waiver states: "If a party elects to arbitrate a Claim, the arbitration will be conducted as an individual action only. This means that even if a demand for class arbitration, class action lawsuit or other representative action, including a private attorney general action, is filed, any Claim related to the issue of such lawsuits will be subject to individual arbitration." (Agreement, *Barras* Compl. Ex. D, at 1).

[6] For example, BB&T's non-severability clause states: "If any portion of this arbitration provision is deemed invalid or unenforceable it shall not invalidate the remaining portions of this arbitration provision or agreement; provided, however, if the limitations on class actions are struck in a proceeding brought on a class, representative or private attorney general basis, without impairing the right to appeal such decision, this entire arbitration provision (other than this proviso) shall be null and void in such proceeding." (Agreement, *Barras* Compl. Ex. D, at 2).

3

Accordingly, the Court addresses the applicable state's interpretation of unconscionability and the specific facts of each case in the following order: (A) Defendant BB&T's Motion in *Powell-Perry* governed by North Carolina law; (B) Defendant BB&T's Motion in *Barras* governed by South Carolina law; (C) Defendant M&T's Motion in *Givens* governed by Maryland law; (D) Defendant Regions' Motion in *Hough* governed by Georgia law; and (E) Defendant SunTrust's Motion in *Buffington* governed by Georgia law.

## A.     BB&T's Motion in *Powell-Perry* under North Carolina Law

In *Powell-Perry*, the parties agree that North Carolina law governs this issue. In North Carolina, "[a] party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability." *Tillman v. Commer. Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008) (citing *Martin v. Sheffer*, 403 S.E.2d 555, 557 (N.C. 1991)). Moreover, the unconscionability analysis is fact-intensive, and must be undertaken on a case-by-case basis. *See Bradford v. Rockwell Semiconductor Sys.*, 238 F.3d 549, 556 (4th Cir. 2001) ("We believe that the appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis."). With this principle in mind, the Court will address procedural unconscionability first, followed by substantive unconscionability.

"[P]rocedural unconscionability involves 'bargaining naughtiness' in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power." *Tillman*, 655 S.E.2d at 370. Although this is a case-by-case inquiry, the North Carolina Supreme Court has identified several factors that are integral to the analysis, including the fact that i) there was no mention of the disputed provision at the time of signing the contract; ii) the agreement was presented on a

4

take-it-or-leave-it basis–that is, the bank would have refused to enter the agreement rather than negotiate the terms of the arbitration provision; iii) there was a disparity in bargaining power and sophistication between the parties; and iv) the agreement was drafted by the bank and contained mostly boilerplate terms. *Id.*

Here, all of those factors weigh in favor of finding that the arbitration provision is procedurally unconscionable. There is no indication in the record that the arbitration provision was pointed out to Plaintiff before she signed the Agreement. The Agreement was presented on a take-it-or-leave-it basis and Plaintiff had no opportunity to negotiate the terms of the arbitration provision. Moreover, there is an obvious disparity in bargaining power and sophistication between Plaintiff and BB&T: This Agreement did not involve two corporations negotiating the terms of a deal; rather, Plaintiff had neither the knowledge nor the power to understand that she was waiving her right to a judicial forum or to articulate an objection to such a waiver. Finally, the Agreement was drafted by the bank and contained thirty-two pages of single-spaced, small print, boilerplate language. While the first paragraph of the arbitration provision is in bold and all capital letters, the other six paragraphs, which contain the details of the provision, are in standard type. Taking all of these factors together, the Court determines that Plaintiff has sufficiently demonstrated procedural unconscionability.

"Substantive unconscionability . . . refers to harsh, one-sided, and oppressive contract terms." *Tillman*, 655 S.E.2d at 370. There is no specific formula for analyzing substantive unconscionability; rather, it is "a determination to be made in light of a variety of factors." *Id.* (quotations and citations omitted). Furthermore, "while the presence of both procedural and substantive problems is necessary for an ultimate finding of unconscionability, such a finding

5

may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa." *Id.* In short, an arbitration provision is unenforceable if it precludes plaintiffs from "'effectively vindicating [their] . . . rights in the arbitral forum.'" *Id.* at 371 (quoting *Green Tree Fin.*, 531 U.S. at 90, brackets and ellipses in original). To make this determination, the North Carolina Supreme Court has identified several factors that should be analyzed, including i) the existence of a class action waiver; ii) the costs of arbitration, including the costs of appeal; iii) the amount of a plaintiff's likely damages; iv) the general one-sidedness of the provision; and v) the overall deterrent effect that the combination of these factors has on an attorney who might otherwise take a plaintiff's case. *See Tillman*, 655 S.E.2d at 371-73.

Here, an analysis of these factors yields the conclusion that the arbitration provision is substantively unconscionable. First, although class action waivers are not per se unconscionable, they may operate in tandem with other factors to cause the arbitration provision to be substantively unconscionable. With regard to the next two factors, *Tillman* instructs courts to balance the costs of arbitration with any potential recovery to determine the deterrent effect the arbitration provision has on a plaintiff bringing a claim, or the plaintiff's ability to retain an attorney to represent her in the matter. Here, the Complaint alleges that Plaintiff was charged "well over $1,000 in overdraft fees," but does not specify the amount of overdraft fees that were improperly charged. (*Powell-Perry* Compl. ¶ 44). Thus, the amount of Plaintiff's damages is unclear. Despite this, it is clear that Plaintiff's potential recovery is relatively small, as it involves overdraft fees that range from $20-$40 per overdraft. Even assuming, moreover, that Plaintiff's damages amount to several thousand dollars, the damages would still not be large

6

enough to convince an attorney to take this complicated case on a contingency fee basis. Indeed, the *Tillman* court, adopting the trial court's findings, described a possible damage award of $4,500 as "so low," noting that it was "unlikely that any attorneys would be willing to accept the risks attendant to pursuing" the claims. *Tillman*, 655 S.E.2d at 371.

Furthermore, the fact that the arbitration provision allows for the arbitrator to award attorney's fees does not guarantee attorney's fees in this instance. The North Carolina statute upon which Plaintiff's statutory claim is based allows the presiding judge to award attorney's fees in his or her discretion if the violation at issue was willful. *See* N.C. Gen. Stat. § 75-16.1. The mere possibility of winning attorney's fees at the end of the case does not provide an adequate incentive for an attorney to take the case. *See, e.g., Dale v. Comcast Corp.*, 498 F.3d 1216, 1223 (11th Cir. 2007) ("[T]he potential recovery of attorney's fees and litigation costs under O.C.G.A. § 13-6-11 does not provide the same incentive for an attorney to represent an individual plaintiff as the automatic, or likely, award of fees and costs available to a prevailing plaintiff [in other actions]."). Conversely, in *Snowden v. Checkpoint Check Cashing,* a case on which BB&T relies, the attorney's fees available under the Truth in Lending Act were mandatory, rather than permissive, providing a greater incentive to a possible attorney. 290 F.3d 631, 639 (4th Cir. 2002); 15 U.S.C. § 1640(a)(3). Thus, the mere possibility of attorney's fees here, as in *Dale*, does not save an otherwise unconscionable arbitration provision.

In terms of arbitration costs, BB&T asserts that, under new procedures promulgated by the American Arbitration Association ("AAA"), Plaintiff's costs would be limited to $125. The Court cannot rely on this assertion for several reasons. First, it is unclear whether these new procedures will apply to the arbitration of this claim, and indeed it appears that the AAA has the

7

discretion to decide whether or not to apply them.  Moreover, Plaintiff contends that the costs of

arbitration will actually be much higher, and that the purported $125 limit does not include other

costs, such as fees for hearing room rentals.  Finally, the arbitration provision itself further

complicates matters.  It states: "All fees and costs are allocated pursuant to the rules of the AAA.

The arbitrator may award fees, costs, and expenses including attorney's fees, as permitted by the

administrator's rules." (Agreement, *Powell-Perry* Compl. Ex. D, at 2).  Further, the Agreement

also has a general costs and damages provision that favors BB&T.[7]  That is, the provision

requires the customer to pay BB&T's costs and fees, but it does not require BB&T to pay the

customer's costs and fees.  Reliance on the AAA's purported new procedures is further

unwarranted because the arbitration provision states that "[i]f there is a conflict between the rules

and procedures of the administrator and any term in this arbitration provision, the terms of this

arbitration provision shall prevail." *Id.* at 2.  Thus, there is a possibility that Plaintiff will have to

pay BB&T's costs and fees in addition to her own.[8]  Regarding appellate costs, the Agreement

provides that "the appealing party will pay the cost of appeal, regardless of its outcome." *Id.*

Finally, *Tillman* instructs courts to examine the general one-sidedness of the arbitration

---

[7] "You agree to be liable to the Bank for any loss, costs or expenses, including, without limitation, reasonable attorney's fees, the costs of litigation, and the costs to prepare or respond to subpoenas, depositions, child support enforcement matters, or other discovery that the Bank incurs as a result of any dispute involving your account, and you authorize the Bank to deduct any such loss, costs or expenses from your account without prior notice to you." (Agreement, *Powell-Perry* Ex. D, at 14.)

[8] BB&T's offer to pay any costs necessary to make the provision enforceable is unavailing because, as *Tillman* noted, it is inappropriate for the Court to rewrite an unconscionable contract to make it enforceable. *See Tillman*, 655 S.E.2d at 372.  To do so would not effectuate the purpose of the unconscionability analysis; namely, to determine "whether individuals, upon reading an arbitration agreement, will be deterred from bringing a claim." *Id.*

provision. 655 S.E.2d at 372. Here, as in *Tillman*, the provision does not specifically favor

BB&T by carving out exceptions for only the bank. However, as *Tillman* noted, practically

speaking, a class action waiver always favors the bank, because the bank has no need for the

cost-sharing benefits that class actions bring. *Id.* at 373. Conversely, the waiver serves as a

deterrent against customers bringing claims "because it deters potential plaintiffs from bringing

and attorneys from taking cases with low damage amounts in the face of large costs that cannot

be shared with other plaintiffs." *Id.* This one-sidedness contributes to the overall conclusion that

the provision is substantively unconscionable. *See also Gordon v. Branch Banking & Trust Co.*,

666 F. Supp. 2d 1347, 1351-52 (N.D. Ga. 2009) (finding BB&T's substantially similar

arbitration provision unconscionable under Georgia law).

Accordingly, after a careful weighing of all the relevant factors, the Court determines that

the arbitration provision is both procedurally and substantively unconscionable, and therefore

unenforceable. Thus, BB&T's Motion to Compel Arbitration in *Powell-Perry* is denied.

**B.      BB&T's Motion in *Barras* under South Carolina Law**

BB&T has also filed a separate Motion to Compel Arbitration in *Barras*. In *Barras*,

unlike *Powell-Perry*, the parties do not agree on which state's law applies. Therefore, the Court

must undertake a choice of law analysis. The Court applies the choice of law rules of the state

where the case is filed, which in this case is North Carolina. *See Colgan Air, Inc. v. Raytheon

Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). In North Carolina, "the parties' choice of law is

generally binding on the interpreting court as long as they had a reasonable basis for their choice

and the law of the chosen State does not violate a fundamental policy of the state of otherwise

applicable law." *Cable Tel Servs. v. Overland Contr.*, 574 S.E.2d 31, 34 (N.C. Ct. App. 2002).

9

Here, the Agreement between Plaintiff and BB&T contains a choice of law provision stating: "Your account is governed by . . . the laws of the state in which the branch office where you opened your account is located." (Agreement, *Barras* Compl. Ex. A, at 13). The provision continues that if the account was opened over the internet and the customer resides in a state where BB&T has a branch office, then the account is governed by "the laws of the state where the branch office is located." *Id.* The Complaint alleges that Plaintiff resides in South Carolina and that BB&T operates a branch office in South Carolina. (*Barras* Compl. ¶¶ 1-2). Accordingly, BB&T contends that South Carolina law governs this issue.

Plaintiff counters that North Carolina law should apply, but offers no argument for why the Court should ignore the parties' choice of law clause. That is, the Court must apply South Carolina law–the law dictated by the choice of law provision–unless doing so would violate a fundamental policy of the state of otherwise applicable law. *See Cable Tel. Servs.*, 574 S.E.2d at 34. Here, Plaintiff has not identified any such policy that precludes the Court from applying South Carolina law, and the Court likewise has found none. Therefore, the Court will give effect to the parties' choice of law provision and apply South Carolina law.

The South Carolina Supreme Court has succinctly set forth the law with regard to the unconscionability of arbitration agreements:

> In South Carolina, unconscionability is defined as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them. *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 554, 606 S.E.2d 752, 757 (2004). If a court as a matter of law finds any clause of a contract to have been unconscionable at the time it was made, the court may refuse to enforce the unconscionable clause, or so limit its application so as to

10

> avoid any unconscionable result. S.C. Code Ann. § 36-2-302(1) (2003). In analyzing claims of unconscionability in the context of arbitration agreements, the Fourth Circuit has instructed courts to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker. *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999). It is under this general rubric that we determine whether a contract provision is unconscionable due to both an absence of meaningful choice and oppressive, one-sided terms.

*Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 668-69 (S.C. 2007). Moreover, "[a] determination whether a contract is unconscionable depends upon all the facts and circumstances of a particular case." *Holler v. Holler*, 612 S.E.2d 469, 476 (S.C. Ct. App. 2005) (quotations and citations omitted). When analyzing these facts and circumstances, "courts should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause." *Simpson*, 644 S.E.2d at 669. Finally, South Carolina courts have recognized that "an adhesion contract is not per se unconscionable." *Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 365 (S.C. 2001).

In analyzing whether the Plaintiff had a meaningful choice in agreeing to arbitration, the Court notes that nearly all the factors that led the *Simpson* court to conclude that no meaningful choice existed are present in the instant case. The first factor is the importance of the good or service that the consumer was receiving under the contract; in *Simpson* it was a contract to purchase a vehicle, which the court noted was "critically important in modern day society." *Simpson*, 644 S.E.2d at 670. Similarly, a checking account is critically important in modern day society, as no one can be expected to conduct everyday financial transactions without a bank

11

account. Moreover, the *Simpson* court noted that the plaintiff did not "possess the business judgment necessary to make her aware of the implications of the arbitration agreement, and that she did not have a lawyer present to provide assistance in the matter." *Id.* The same concerns are present here: BB&T's business judgment is vastly superior to Plaintiff's, and Plaintiff was not represented at the time she entered into the Agreement. The *Simpson* court also noted that the arbitration provision was written in standard small print, drafted by the superior party, and required the customer to waive her right to a jury trial. *Id.* at 670. The same considerations are present in the instant case. Thus, as in *Simpson*, the Court concludes that Plaintiff had no meaningful choice in agreeing to arbitrate her claim.

The second half of the analysis is to determine whether the contract contains oppressive, one-sided terms. As noted above, a class action waiver is inherently one-sided because it only benefits BB&T. Operating in tandem with other factors, the waiver deters potential plaintiffs from bringing, and attorneys from taking, cases with low damage amounts in the face of large costs that cannot be shared with other plaintiffs.[9]

In sum, although neither an adhesion contract nor inequality of bargaining power alone will invalidate an arbitration agreement, *Munoz*, 542 S.E.2d at 365, more than that is present in the instant case. Because the Court finds that Plaintiff had no meaningful choice in agreeing to arbitrate and that the provision contains oppressive one-sided terms, the Court determines that the arbitration provision is unconscionable and therefore unenforceable. Therefore, BB&T's Motion to Compel Arbitration in *Barras* is denied.

---

[9] The arbitration provision in *Barras* is the same one at issue in *Powell-Perry*. Thus, the same concerns exist in this case.

C.    **M&T's Motion in *Givens* under Maryland Law**

The parties do not dispute that Maryland law applies to this issue.  Under Maryland law, a contract must be both procedurally and substantively unconscionable.  *See Walther v. Sovereign Bank*, 872 A.2d 735, 743 (Md. 2005).  "Substantive unconscionability involves those one-sided terms of a contract from which a party seeks relief . . . while procedural unconscionability deals with the process of making a contract - 'bargaining naughtiness' . . . ."  *Id.* at 744 (*citing Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989)).  The Court addresses each in turn.

In *Walther,* the Court held that the agreement to arbitrate was valid, finding it was conspicuously distinct from the other provisions in the mortgage agreement and it directly preceded plaintiff's signature.  *Walther*, 872 A.2d at 745.  The court also found that the fact that the agreement was contained in a contract of adhesion did not make it or any of its terms invalid or unenforceable.  *Id.* at 746.  Finally, the court found that the agreement was not unfair or one-sided.  *Id.*

Although Defendant urges the same result here, the arbitration provision in M&T's Agreement is not conspicuous; while it may be written in all capital letters, it is found on pages eighteen and nineteen of a forty-five page Agreement and is written in size six font.  (Agreement, *Givens* Compl. Ex. 4, at 18-20).  Moreover, the provision is not anywhere near where Plaintiff signed her name as it was in *Walther*, nor did Plaintiff have to initial next to the provision to signify acknowledgment.  In fact, Plaintiff did not even receive the arbitration provision at issue here until after she opened her account with M&T.  On these facts, the Court finds the Agreement procedurally unconscionable.

13

Turning to substantive unconscionability, an agreement is substantively unconscionable where it unreasonably favors the more powerful party. *Walther*, 872 A.2d at 744. A clause will be enforced unless its terms "are so one-sided as to oppress or unfairly surprise an innocent party," or if "there exists an egregious imbalance in the obligations and rights imposed by the arbitration clause." *Id.* at 745. "Numerous courts, both federal and state, have rigorously enforced no-class action provisions in arbitration agreements and found them to be valid provisions of such agreements and not unconscionable." *Id.* at 750.

Defendant, relying on *Snowden v. Checkpoint Check Cashing*, argues that Plaintiff's arguments do not meet Maryland's stringent standard for finding an arbitration provision substantively unconscionable. *Snowden*, 290 F.3d at 638. In enforcing the agreement to arbitrate, the *Snowden* court relied heavily on two factors: i) the prevailing plaintiff's entitlement to attorney's fees under two of the statues that formed the basis of plaintiffs' claims; and ii) the arbitration provision provided for each party to bear its own arbitration costs and contained further language that helped consumers recover their fees and costs if they prevailed. *Id.* The court held that a class action waiver in and of itself was not sufficient to make the agreement unconscionable, finding that the plaintiffs would have incentives to bring the case individually. *Id.*

Unlike in *Snowden* where a plaintiff would never have to pay a defendant's attorney's fees, here, Plaintiff will have to pay Defendant's attorney's fees if she loses.[10] Thus, the incentives to bring individual actions that were present in *Snowden* are not present here. Further,

---

[10] The prevailing party "shall [be] award[ed] ... all of its costs and fees. 'Costs and fees' means all reasonable pre-and post-award expenses of arbitration, including attorney's fees, arbitrator's fees, administrative fees, travel expenses, out-of-pocket expenses (for example, copying and telephone), court costs and witness fees. (Agreement, *Givens* Compl. Ex. 4, at 19.)

it is undisputed that each overdraft fee assessed against Plaintiff was $37. In total, Plaintiff only suffered $370 in damages. Compared to the potential recovery, the costs of engaging in arbitration or litigation on an individual basis is too great to justify individual actions by consumers. Not only would Plaintiff stand to gain very little, Plaintiff could have to pay a lot of money just to have her grievance heard. Plaintiff will also have difficulty finding an attorney to accept this case because the damages recoverable would not justify his or her fee. M&T argues that because of the availability of attorney's fees pursuant to the arbitration provision's prevailing party clause, attorneys would have an incentive to represent customers in these suits. However, the Court does not find that the language in the arbitration provision provides attorneys with any additional incentive to represent a Plaintiff. Similar to the court's holding in *Gordon*, the risk that Plaintiff may have to pay M&T's attorney's fees if M&T is successful is a significant deterrent. *See Gordon*, 666 F. Supp. 2d at 1352.

In sum, although Maryland law sets a high standard for finding an agreement to arbitrate unconscionable, the instant case presents facts which meet that threshold. Not only was Plaintiff not aware of the arbitration provision until after she signed the Agreement with M&T, the uncertainty as to whether Plaintiff can recover any attorney's fees under the statute and risk that she may have to repay M&T's arbitration costs make it unlikely that Plaintiff could proceed with this case individually or find an attorney to represent her. The Court determines that the agreement to arbitrate is unconscionable and therefore unenforceable. M&T's Motion to Compel Arbitration in *Givens* is denied.

**D.    Regions' Motion in *Hough* under Georgia Law**

The parties agree that Georgia law governs this issue. Under Georgia law, a court looks

to "whether, in the light of the general commercial background and the commercial needs of the

particular trade or case, the clauses involved are so one-sided as to be unconscionable under the

circumstances existing at the time of the making of the contract." *NEC Techs., Inc. v. Nelson*,

478 S.E.2d 769, 771 (Ga. 1996) (quoting U.C.C. § 2-302 cmt. 1). Courts recognize both

procedural and substantive unconscionability. *Dale*, 498 F.2d at 1220, n.5. "Procedural

unconscionability addresses the process of making [a] contract, while substantive

unconscionability looks to the contractual terms themselves." *NEC*, 478 S.E.2d at 771.

Substantive unconscionability addresses "matters such as the commercial reasonableness of the

contract terms, the purpose and effect of the terms, the allocation of the risks between the parties,

and similar public policy concerns." *Id.* at 772.

The most recent Eleventh Circuit case to address a class action waiver in an arbitration

agreement, *Dale v. Comcast*, found that, under Georgia law, the waiver was substantively

unconscionable.[11] 498 F.3d at 1222. The *Dale* court found that because plaintiffs estimated that

Comcast charged each subscriber only $10.56 in excess fees, "the cost of vindicating an

individual subscriber's claim, when compared to his or her potential recovery, is too great." *Id.*

The *Dale* court distinguished three previous Eleventh Circuit decisions, *Caley v. Gulfstream

Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005), *Jenkins v. First American Cash Advance of

Ga.*, 400 F.3d 868 (11th Cir. 2005), and *Randolph v. Green Tree Financial Corp. Ala.*, 244 F.3d

814 (11th Cir. 2001), which found class action waivers (and therefore the arbitration provisions)

---

[11] In *Dale*, the Eleventh Circuit found that substantive unconscionability was enough to
find a clause unenforceable under Georgia law. 498 F.3d at 1220, n.5.

to be valid. The Eleventh Circuit explained that, unlike the facts in the previous cases, in *Dale* the subscribers were not likely to recover attorney's fees or other costs under any of the counts. *Id.* at 1222. The court found that, while under Georgia law a plaintiff may recover damages if a jury finds the defendant has acted in bad faith, "the potential recovery of attorney's fees and litigation costs . . . does not provide the same incentive for an attorney to represent an individual plaintiff as the automatic, or likely, award of fees and costs available to a prevailing plaintiff for the claims asserted in *Caley*, *Jenkins*, and *Randolph*." *Id.* at 1223.

Based on the facts presented, the *Dale* court found that the class action waiver would "allow Comcast to engage in unchecked market behavior that may be unlawful." *Id.* The court concluded that the enforceability of a particular class action waiver is a case-by-case determination, and outlined the relevant factors to consider: "the fairness of the provisions, the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorney's fees and other costs and thus obtain legal representation to prosecute the underlying claim, the practical affect [sic] the waiver will have on a company's ability to engage in unchecked market behavior, and related public policy concerns." *Id.* at 1224.

The Northern District of Georgia recently applied *Dale* to a deposit agreement's arbitration clause and found that the provision was invalid. *See Gordon*, 666 F. Supp.2d at 1352. Applying *Dale*, the court found that "when compared to the potential recovery, the cost of engaging in arbitration or litigation on an individual basis to recover overdraft fees is simply too great to justify the instigation of an action by the individual consumer." *Id.* The court further held that an attorney was necessary to effectively arbitrate or litigate a dispute and found that "no

17

attorney would have the incentive to represent a customer in a dispute over the overdraft fees because the damages recoverable would not justify his or her fees." *Id.*

This Court agrees with *Gordon.* Looking to the factors outlined in *Dale*, the Court finds that the class action waiver and therefore the arbitration clause in Regions' Agreement is substantively unconscionable and invalid.[12] The class action provisions, coupled with the other factors present here, will preclude Plaintiffs from bringing a claim against Regions.

First, the costs of proceeding as an individual in arbitration, as required by the class action waiver, far outweigh any benefit of bringing a suit to the Plaintiffs. Plaintiffs' claims discuss the allegedly improper imposition of $35 overdraft fees. Yet, to bring a suit under the Agreement, Plaintiffs are required to reimburse Regions for their costs and expenses in connection with *any* legal proceeding, including reasonable attorney's fees.[13] (Agreement, Mot. to Compel Ex. 6, at ¶ 36). Regions is not even required to formally bill Plaintiffs for these costs; rather, Regions is permitted to seize the money directly from Plaintiffs' bank account. Nor will

---

[12] Plaintiffs also allege that the arbitration provision is procedurally unconscionable. Although *Dale* finds substantive unconscionability sufficient, the Georgia Supreme Court in *NEC* suggests that there must be a little bit of both procedural and substantive unconscionability. 478 S.E.2d at 773. The Court finds that here there is a degree of procedural unconscionability. This was a form contract, drafted by the bank and given to Plaintiffs on a take-it-or-leave-it basis with no opt-out provision. The provision was not conspicuous: it was buried on the twenty-first page of a forty-three page, single-spaced document. Although parts of the arbitration agreement were capitalized and in bold, it was still hidden in a maze of fine print and was therefore unlikely to be noticed. Further, the provision is not noted with any importance earlier in the Agreement or otherwise highlighted to draw Plaintiffs' attention to the provision.

[13] "Costs and Attorney's Fees. You agree to reimburse us for our costs and expenses (including reasonable attorney's fees) in connection with (I) any legal process affecting your account . . . ." (Agreement, Mot. to Compel Ex. 6, at ¶ 36.) Defendant Regions alleges that it has never invoked this subparagraph of the Agreement. Nevertheless, the question before this Court is whether a consumer would be inclined to bring an individual action under the terms of the Agreement. The mere fact that the Plaintiffs *could* be charged all of Defendant's fees under the Agreement is a sufficient deterrent.

Plaintiffs be able to obtain legal representation to prosecute the underlying claim. As in *Dale*, none of the statutes under which Plaintiffs are suing provides for attorney's fees and costs. Under Georgia law, fees and costs may be awarded in extraordinary circumstances, but, as the court explained in *Dale*, the possibility of fees is not a sufficient incentive for an attorney to expend resources to pursue a company like Regions. *See Dale*, 498 F.3d at 1223. Moreover, a provision which requires only the consumer to pay the attorney's fees and costs is unfair. Under this set of facts, no plaintiff would bring a claim against Regions.

Defendant attempts to distinguish *Dale*, alleging that Plaintiffs' accrued damages are sufficient to pursue an individual action and that Plaintiffs' straightforward claims do not require an attorney's representation or the retention of expert witnesses. No lawyer or individual, however, would pursue an individual action because, as discussed above, the Agreement requires Plaintiffs to reimburse Regions for costs and expenses in connection with any legal proceeding, including attorney's fees. Defendants assert that Plaintiffs were charged over $2,800 in overdraft fees, but, even assuming a 40% contingency fee, the possible pay out to an attorney and award to the individual would be dwarfed by the cost of the arbitration and all of Defendant's attorney's fees and expenses.[14]

Moreover, Plaintiffs' Complaint, based on the bank's alleged practice of reordering debit transactions, requires attorney representation. Claims that are not obvious to the typical consumer require a lawyer, both to recognize the claims and to successfully argue those claims in court or arbitration. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 268 (Ill. 2006). Plaintiffs

---

[14] The Agreement states that Plaintiffs' arbitration fees will be capped at $125, but that is only if the AAA supplemental procedures apply and their applicability is uncertain. This provision of the Agreement also conflicts with the provision entitled "Costs and Attorney's Fees" which states that Plaintiffs are responsible for all of Defendant's costs.

here are not making straightforward claims that are easily recognizable, such as a claim that the bank charged them for a product that was not received, or even that the bank lacked the right to charge them overdraft fees. *See id.* Instead, they are asserting that the manner in which the bank is enforcing this Agreement and charging them overdraft fees is unlawful. This is a complex argument that requires an attorney to both successfully recognize and argue. Looking at factors substantially similar to those before this Court, the *Gordon* court found that "to effectively arbitrate or litigate a dispute, a customer would need to retain an attorney." *Gordon*, 666 F.Supp. 2d at 1352. Thus, while the Agreement allows Plaintiffs to pursue their claims in small claims court without a lawyer, that is not sufficient to save the provision. The Court concludes that a plaintiff could not adequately enforce his or her rights without an attorney in arbitration or small claims court. The arbitration provision is therefore unconscionable and unenforceable and Regions' Motion to Compel is denied.

E.     **SunTrust's Motion in *Buffington* under Georgia Law**

The parties agree that Georgia law governs this issue. Applying Georgia law, the Court finds that the class action waiver in SunTrust's Agreement, viewed in conjunction with the factors present in this case, is also substantively unconscionable.[15]

The cost to an individual plaintiff of vindicating the claim when compared to the potential recovery will keep Plaintiffs from pursuing a claim if not allowed to bring a class action. If successful, Plaintiffs only stand to recover a small amount in damages. Yet, if

_____

[15] The Court finds that this provision is also sufficiently procedurally unconscionable. Again, this was a form contract, drafted by the bank and given to Plaintiffs on a take-it-or-leave-it basis with no opt-out provision. Similarly, this provision was not conspicuous. It was buried on the twenty-second page of a forty page, single-spaced, fine print document. Further, the provision is not noted with any importance earlier in the Agreement except for being capitalized in the small font sized, single spaced table of contents, which was unlikely to be noticed.

unsuccessful, Plaintiffs risk having to pay Defendant SunTrust's legal fees.  Under the SunTrust Agreement "the prevailing party shall be entitled to an award for the costs and expenses of the arbitration including an award of reasonable attorney's fees for any Claim(s) in which the party has prevailed . . . ." (Agreement, Aff. of Rufus Triplett Ex. C, at 24).  Defendant asserts that Plaintiffs have alleged over $4,000 in overdraft fees, but even that amount is not sufficient for a plaintiff to risk paying all costs of arbitration and a bank's potentially massive legal bills.

Moreover, Plaintiffs would not be able to obtain legal representation.  As in *Hough*, Plaintiffs are not guaranteed attorney's fees for any of the specific violations alleged and the possibility of fees under Georgia law is not sufficient incentive for an attorney to expend resources to pursue SunTrust.  SunTrust's Agreement does entitle the prevailing party to attorney's fees.  Unlike a claim brought under the Georgia Fair Business Practices Act, however, which guarantees attorney's fees to the prevailing *plaintiff*, this provision guarantees attorney's fees to the prevailing *party*.  Thus, under the Agreement, Plaintiffs will be required to reimburse SunTrust for its expenses and attorney's fees if they do not prevail.  When considering this same question in *Gordon*, the court held that "such a provision could actually act as a deterrent to an attorney taking such a case because it opens the door for the arbitrator to require the customer to pay BB&T's attorney's fees if the customer is unsuccessful." *Gordon*, 666 F.Supp. 2d at 1352. The Court agrees with *Gordon* in that no attorneys would take this case if they knew they could be charged for all of Defendant's legal expenses.

Defendant attempts to compare this case to *Honig v. Comcast of Georgia I, LLC*, where the court granted the defendant's motion to compel arbitration.  537 F.Supp. 2d 1277 (N.D. Ga. 2008).  The court in *Honig*, however, found the arbitration provision valid because the plaintiff

21

was guaranteed attorney's fees on her central claim if she prevailed (*id.* at 1288); the defendant

agreed to advance the costs of arbitration and could only ask for reimbursement up to the amount

needed to file a state court claim (*id.* at 1288-89); the plaintiff brought a claim under a statute

that, by its very terms, prohibits class actions (*id.* at 1289); and the plaintiff could have opted out

of the arbitration provision without any adverse consequences, but did not (*id.*).  None of these

factors is true here: no statute guarantees attorney's fees to a prevailing plaintiff; if the bank

prevails it can recover all attorney's fees and other costs; none of the statutes prohibits class

actions; and plaintiffs did not have the right to opt out of the arbitration clause at the time they

signed the Agreement.  Therefore, the Court finds the arbitration provision to be unconscionable

and unenforceable and SunTrust's Motion to Compel Arbitration is denied.

### III. CONCLUSION

In sum, these arbitration provisions will have the practical effect of precluding consumers

from bringing an action against the banks.  The arbitration agreements are therefore

unenforceable and Defendants' Motions to Compel/Enforce Arbitration are **DENIED**.

Accordingly, after a careful review of the record, and the Court being otherwise fully

advised, it is ORDERED, ADJUDGED and DECREED that

1.      BB&T's Motion to Enforce Arbitration Agreement in *Powell-Perry* be, and the

same is hereby, **DENIED**;

2.      BB&T's Motion to Enforce Arbitration Agreement in *Barras* be, and the same is

hereby, **DENIED**;

3.      M&T's Motion to Compel Arbitration in *Givens* be, and the same is hereby,

**DENIED**;

4.   Regions' Motion to Compel Arbitration in *Hough* be, and the same is hereby,

**DENIED**; and

5.   SunTrust's Motion to Compel Arbitration in *Buffington* be, and the same is

hereby, **DENIED**.

DONE and ORDERED in chambers at the James Lawrence King Federal Courthouse in

Miami, Florida, this 10th day of May, 2010.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:   All Counsel of Record

23