IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT )
OVERDRAFT LITIGATION )
)
MDL NO. 2036 )
)

THIS DOCUMENT RELATES TO: )
)
*Lopez v. JPMorgan Chase Bank, N.A.* )
S.D. Fla. Case No. 1:09-cv-23127-JLK )
)

## DECLARATION OF RHONDA PETTIT

I, Rhonda Pettit, declare and state as follows:

1. My name is Rhonda Pettit. I am over the age of 21 years, and have personal knowledge of the facts stated herein and am competent to testify to the same.

2. I am a Project Manager III at JPMorgan Chase Bank, N.A. ("Chase"), the defendant in this lawsuit.

3. In my capacity as Project Manager, I have personal knowledge of the business affairs of Chase discussed in this declaration.

4. In preparing this declaration, I have relied on information contained in the records of Chase. The documents attached as exhibits are business records, made at or near the time by, or from information transmitted by, a person with knowledge and kept in the ordinary course of the regularly conducted business activity of Chase.

- 2 -

5. Chase consumer checking accounts are governed by a Deposit Account Agreement ("Chase Agreement"), which is typically conveyed to customers along with other information in a document styled Account Rules and Regulations. The Chase Agreement may be amended from time to time, so that for any individual customer, their original terms may not be the same as their current terms; in addition, an individual may become a Chase customer as a result of Chase's acquisition of his or her account from another institution, in which case the individual's original terms with the prior institution will change after his or her account is transitioned to Chase. Once such updates and transitions are accomplished, customers have individual contracts with Chase governing their individual accounts, but all follow the Chase Agreement standardized form.

6. I have been advised that the named plaintiffs Thomas Larsen, Brent Lowe, Jennifer and Martin Palacios, and Angela Walsh-Duffy in this litigation have alleged that they are Chase customers and that their accounts are governed by a standardized Chase Agreement which is incorporated in Exhibit A to the Amended Class Action Complaint dated April 12, 2010. A true and correct copy of that document is appended as Exhibit A to this Declaration.

7. Exhibit A to the Amended Class Action Complaint, and Exhibit A hereto, includes a section titled "Arbitration." which states:

> PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES, WITH THE SPECIFIC EXCEPTION STATED BELOW, THAT ANY DISPUTE MUST BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR TO BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND THE BANK MIGHT

OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS). EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS THE RIGHT TO APPEAL AND TO CERTAIN TYPES OF DISCOVERY, MAY BE MORE LIMITED OR MAY ALSO BE WAIVED.

Either you or the Bank may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy raised by either you or the Bank against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, heirs, agents or assigns of the other, arising from or relating in any way to this Agreement, any prior account agreement between you and the Bank, or the advertising, the application for, or the approval of your Account (the "Claim" or "Claims"). All Claims originating from or relating to this Agreement are subject to arbitration, no matter what theory they are based on or what remedy they seek, whether legal or equitable. This includes Claims based on contract, tort (including intentional tort), fraud, agency, negligence, statutory or regulatory provisions, or any other sources of law, or any request for equitable relief.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and any party to a proceeding in court may elect arbitration with respect to any Claims advanced in the lawsuit by any party or parties.

As an exception to this arbitration provision, you retain the right to pursue in a small claims court, any Claim that is within that court's jurisdiction and proceed on an individual basis.

If you or the Bank elects to arbitrate a Claim, the arbitration will be conducted as an individual action. Neither you nor the Bank consents or agrees to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed with any arbitration on a class or representative basis. This arbitration provision applies to and includes any Claims made and remedies sought as part of any class action, private attorney general or other representative action, which Claims hereby are made subject to arbitration on an individual (non-class, non-representative) basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between you and the Bank related to this Agreement raised in such lawsuits will be subject to an individual arbitration Claim if either you or the Bank so elects.

The party filing a Claim in arbitration must select either one of two national arbitration administrators: the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA"). The arbitration organization that is selected will apply its code or procedures in effect at the time the arbitration claim is filed, unless any portion of that code or those procedures is inconsistent with any specific terms of this arbitration provision and/or this Agreement, in which case this arbitration provision and this Agreement shall prevail. The arbitration will be conducted before a single arbitrator. The arbitrator will apply

applicable substantive law, including but not limited to the applicable Uniform Commercial Code, consistent with the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") and the applicable statute of limitations or condition precedent to suit, and will honor claims of privilege recognized at law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against or for the benefit of any person who is not a party to the proceeding. The arbitrator's authority is limited solely to the Claim(s) between you and the Bank alone. The arbitration may not be consolidated with any other arbitration proceeding. You and the Bank do not agree to any arbitration on any basis to which any party other than you and the Bank, the related parties enumerated above such as heirs, successors and assigns, or any other person obligated on the Account, is involved.

Any decision rendered in such arbitration proceeding will be final and binding on the parties, unless a party appeals in writing to the arbitration organization within 30 days of issuance of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration organization. The panel will reconsider all factual and legal issues anew, follow the same rules and laws that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500. If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing. All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law. If you prevail in the arbitration of any Claim against us, we will reimburse you for any fees you paid to the arbitration organization in connection with the arbitration. All other fees, including attorneys' fees, will be allocated in keeping with the rules of the arbitration administrator. Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered in a court of competent jurisdiction. Rules and forms may be obtained from, and Claims may be filed with, either of the two organizations, as follows: the NAF at P.O. Box 50191, Minneapolis, Minnesota 55405, web site at *www.arb-forum.com;* or the AAA at 335 Madison Avenue, Floor 10, New York, New York 10017, web site at *www.adr.org.* Any arbitration hearing at which you wish to appear will take place at a location within the federal judicial district that includes your address at the time the Claim is filed.

This arbitration provision is part of and constitutes a trans action involving interstate commerce, and shall be governed by the FAA.

This arbitration provision applies to all Claims relating to your Account that arose in the past, which may presently be in existence, or which may arise in the future. This arbitration provision shall survive termination of your Account as well as voluntary payment of any outstanding indebtedness in full by you, or any bankruptcy by you. If we assign your Account to any unaffiliated third party, this arbitration provision will apply to any Claim between you and that third party if

you or that third party chooses arbitration, or to any Claim between you and the Bank which occurred prior to such assignment or arises from such assignment.

Ex. A at 19-20.

8. I have confirmed from Chase's records that the foregoing passage is an accurate statement of the terms set forth in the Chase Agreement applicable to the account of each of the foregoing individuals. Certain other terms of the accounts have been amended since Exhibit A was issued, but none of the amended terms are included in the section titled "Arbitration" and none of those amended terms refer to (or are referred to within) the "Arbitration" section of the Chase Agreement.

**Thomas Larsen**

9. On or about July 21, 2005, Thomas Larsen opened a checking account with Washington Mutual Bank, FA ("WaMu"), with an account number ending in 9506.

10. I have been advised that the foregoing individual plaintiffs alleged in paragraph 36 of their Amended Class Action Complaint that in September 2008, Chase acquired all deposits of WaMu. It is a matter of public record that in September 2008 Chase acquired WaMu's deposit accounts, pursuant to a transaction with the FDIC, whose terms can be found at http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf. I have confirmed from Chase's records that Mr. Larsen's WaMu account with a number ending 9506 was acquired by Chase.

11. Mr. Larsen continues to hold this account with Chase.

12. As part of the transition of WaMu accounts, Chase amended WaMu account terms to Chase terms by sending a conversion booklet to each and every current WaMu consumer deposit account customer with a then-open account. I have confirmed from the records of Chase that, based on Chase's mailing schedule, as a former WaMu customer and resident of Washington

with an account opened prior to May 22, 2009, Mr. Larsen would have been mailed a conversion booklet on or about April 1, 2009, entitled "Special Personal Account Updates: Idaho, Oregon, Washington" that incorporated the current Chase Agreement ("Special Update"). A true and correct copy of the Special Update is attached hereto as Exhibit B.

13. Page 9 of the Special Update states that "by ... maintaining a checking ... account with us, you accept and agree to be bound by the terms and conditions of this Agreement." Similarly, page 31 of the Special Update states, "By maintaining your Account after the effective date of any change, you agree to be bound by the changes."

14. The text of the arbitration agreement in the Chase Agreement appears on pages 32 and 33 of the Special Update.

15. The Special Update also references the arbitration agreement on page 3:

> **Arbitration:**
> • Our arbitration agreement differs from the one in your current deposit agreement. Please see page 32 for the new provision.

16. The arbitration section quoted above in the Chase Agreement has not been amended between the issuance of the Special Update and the filing of the Amended Complaint in *Lopez v. JPMorgan Chase Bank, N.A.*

17. Mr. Larsen continued to use his account after receiving the Special Update. A true and correct copy of an account statement covering the period February 23, 2010 to March 19, 2010 showing his recent account activity is attached hereto as Exhibit C.

### Brent Lowe

18. On or about January 27, 1998, Brent Lowe opened a checking account with First Chicago Bank, with an account number ending in 6284.

19. It is a matter of public record that in 1998, First Chicago Bank merged with Bank One, and that Bank One merged with Chase in 2004. I have confirmed from Chase's records that Mr. Lowe's Bank One account with a number ending 6284 was acquired by Chase.

20. Mr. Lowe continues to hold this account with Chase.

21. After Bank One's merger with Chase, former Bank One customers continued to be subject to their Bank One agreements, as they were amended from time to time. I have confirmed from the records of Chase that, based on Chase's mailing schedule, as a former Bank One customer and resident of Illinois, Mr. Lowe would have been mailed a revised copy of the full Chase deposit account agreement on or about April 2006 ("2006 Agreement"). A true and correct copy of the 2006 Agreement is attached hereto as Exhibit D.

22. Page 6 of the 2006 Agreement states that "By maintaining your Account after the effective date of any change, you agree to be bound by the changes."

23. The text of the arbitration agreement in the Chase Agreement appears on page 7 of the 2006 Agreement.

24. The arbitration section quoted above in the Chase Agreement has not been amended between the issuance of the 2006 Agreement and the filing of the Amended Complaint in *Lopez v. JPMorgan Chase Bank, N.A.*

25. Mr. Lowe continued to use his accounts after receiving the 2006 Agreement. A true and correct copy of an account statement covering the period February 26, 2010 to March 24, 2010 showing his recent activity in account 6284 is attached as Exhibit E.

26. On or about February 29, 2008, Mr. Lowe opened a deposit account as custodian for Julian Lowe with WaMu, with an account number ending in 5030.

27. As described in ¶ 10 above, it is a matter of public record that in September 2008 Chase acquired WaMu's deposit accounts, pursuant to a transaction with the FDIC. I have confirmed from Chase's records that Mr. Lowe's WaMu account number ending in 5030 was acquired by Chase.

28. Mr. Lowe continues to hold this account with Chase.

29. I have confirmed from the records of Chase that, based on Chase's mailing schedule, as a former WaMu customer and resident of Illinois with an account opened prior to July 24, 2009, Mr. Lowe would have been mailed a conversion booklet on or about May 26, 2009, entitled "Special Personal Account Updates: Illinois and Texas" that incorporated the current Chase Agreement ("Illinois Special Update"). A true and correct copy of the Illinois Special Update is attached hereto as Exhibit F.

30. Page 9 of the Illinois Special Update states that "by ... maintaining a checking, savings, or certificate of deposit ... account with us, you accept and agree to be bound by the terms and conditions of this Agreement." Similarly, page 31 of the Illinois Special Update states, "By maintaining your Account after the effective date of any change, you agree to be bound by the changes."

31. The text of the arbitration agreement in the Chase Agreement appears on pages 32 and 33 of the Illinois Special Update.

32. The Illinois Special Update also references the arbitration agreement on page 4:

**Arbitration:**
- Our arbitration agreement differs from the one in your current deposit agreement. Please see page 32 for the new provision.

33. The arbitration section quoted above in the Chase Agreement has not been amended between the issuance of the Illinois Special Update and the filing of the Amended Complaint in *Lopez v. JPMorgan Chase Bank, N.A.*

34. Mr. Lowe continued to use the account after receiving the Illinois Special Update. A true and correct copy of an account statement covering the period February 27, 2010 to March 31, 2010 showing his recent activity in account 5030 is attached as Exhibit G.

**Jennifer and Martin Palacios**

35. On or about July 17, 2007, Jennifer and Martin Palacios opened a checking account, with account number ending in 9744, and a savings account, with account number ending in 4724, with WaMu.

36. As described in ¶ 10 above, it is a matter of public record that in September 2008 Chase acquired WaMu's deposit accounts, pursuant to a transaction with the FDIC. I have confirmed from Chase's records that Mr. and Mrs. Palacios' WaMu accounts with numbers ending in 4724 and 9744 were acquired by Chase.

37. Mr. and Mrs. Palacios continue to hold both of these accounts with Chase.

38. I have confirmed from the records of Chase that, based on Chase's mailing schedule, as former WaMu customers and residents of Washington with accounts opened prior to May 22, 2009, Mr. and Mrs. Palacios would have been mailed a copy of Exhibit B on or about April 1, 2009, as described in ¶¶ 12-16 above.

39. Mr. and Mrs. Palacios continued to use their accounts after receiving the Special Update. A true and correct copy of an account statement covering the period March 19, 2010 to April 20, 2010 showing their recent account activity in account 9744 is attached hereto as

Exhibit H. True and correct copies of account statements showing their recent account activity in account 4724 are attached hereto as Exhibit I.

**Angela Walsh-Duffy**

40. On or about December 31, 2002, Angela Walsh-Duffy opened a checking account with Chase, with an account number ending in 0265.

41. Ms. Walsh-Duffy continues to hold this account with Chase.

42. I have confirmed from the records of Chase that, based on Chase's mailing schedule, as a Chase customer, Ms. Walsh-Duffy would have been mailed a notice with her monthly statement amending her account agreement to include an arbitration provision sometime between April 30, 2005 and May 30, 2005 (the "2005 Amendment"). A true and correct copy of the 2005 Amendment is attached hereto as Exhibit J.

43. The text of the arbitration agreement in the Chase Agreement appears on pages 1 through 4 of the 2005 Amendment.

44. As a Chase customer and upstate New York resident, Ms. Walsh-Duffy also would have been mailed a conversion booklet for upstate New York accounts in or about July 2006, entitled "What's New for You at Chase: A Special Account Update including Account Rules and Regulations" ("2006 Update"). A true and correct copy of the 2006 Update is attached hereto as Exhibit K.

45. Page 8 of the 2006 Update states that "by ... maintaining a checking ... account with us, you accept and agree to be bound by the terms and conditions of this Agreement." Similarly, page 32 of the 2006 Update states, "By maintaining your Account after the effective date of any change, you agree to be bound by the changes."

46. The text of the arbitration agreement in the Chase Agreement appears on pages 32 through 34 of the 2006 Update.

47. The arbitration section quoted above in the Chase Agreement has not been amended between the issuance of the 2006 Update and the filing of the Amended Complaint in *Lopez v. JPMorgan Chase Bank, N.A.*

48. Ms. Walsh-Duffy continued to use the account after receiving the 2006 Update. A true and correct copy of an account statement covering the period March 23, 2010 to April 22, 2010 showing her recent activity in account 0265 is attached as Exhibit L.

49. On or about May 18, 2007, Ms. Walsh-Duffy opened a savings account with Chase, with an account number ending 4790.

50. Ms. Walsh-Duffy continues to hold this account with Chase.

51. I have confirmed from the records of Chase that as a Chase customer, Ms. Walsh-Duffy would have been provided a copy of Chase's "Account Rules and Regulations (Upstate New York Market)," effective September 15, 2006 ("2006 Chase Agreement"). A true and correct copy of the 2006 Chase Agreement is attached hereto as Exhibit M.

52. Page 2 of the 2006 Chase Agreement states that "by … maintaining a checking, savings or certificate of deposit … account with us, you accept and agree to be bound by the terms and conditions of this Agreement." Similarly, page 31 of the 2006 Chase Agreement states, "By maintaining your Account after the effective date of any change, you agree to be bound by the changes."

53. The text of the arbitration agreement in the Chase Agreement appears on pages 32 and 33 of the 2006 Chase Agreement.

- 12 -

54. Ms. Walsh-Duffy continued to use her account after receiving the 2006 Chase Agreement. Her recent activity in account 4790 is included in the account statement attached as Exhibit L.

55. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed the 21 day of May, 2010 in Columbus, Ohio.

*Rhonda Pettit*
Rhonda Pettit