UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

_____

CASE NO. 1:09-MD-02036-JLK

_____

| | | |
|---|---|---|
| IN RE: CHECKING ACCOUNT | : | |
| OVERDRAFT LITIGATION | : | |
| _____ | : | |
| **This Document Relates To:** | : | |
| | : | |
| MICHELLE GULLEY v. HUNTINGTON | : | CASE NO. 1:09-CV-23514-JLK |
| BANCSHARES INCORPORATED, | : | |
| HUNTINGTON NATIONAL BANK | : | |

_____

**RESPONSE OF HUNTINGTON BANCSHARES INCORPORATED
AND THE HUNTINGTON NATIONAL BANK TO PLAINTIFF'S SUR-REPLY AND IN
FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY
ALL PROCEEDINGS**

_____

Alan S. Kaplinsky
Martin C. Bryce, Jr.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Telephone: 215.864.8238
Facsimile: 215.865.9511

Attorneys for Defendants The Huntington
National Bank and Huntington Bancshares,
Incorporated

Dated:  May 24, 2010

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 3

    A. Gulley Has Not And Cannot Demonstrate The Arbitration Agreement Is Unconscionable Under Ohio Law............................................................................ 3

        1. Gulley's Arguments As To Procedural Unconscionability Are Barred By The Prima Paint Rule ............................................................. 3

        2. Gulley Has Otherwise Failed To Establish Procedural Unconscionability. ..................................................................................... 4

    B. Gulley Has Not, And Cannot, Establish That The Arbitration Agreement And Its Class Action Waiver Are Substantively Unconscionable. ......................... 6

    C. Gulley's Attempt To Distinguish The Supreme Court's Decision In Stolt-Nielsen Is Unavailing............................................................................................... 9

III. CONCLUSION............................................................................................................. 10

Pursuant to the Court's May 24, 2010 Order, Defendants Huntington Bancshares Incorporated ("Huntington Bancshares") and The Huntington National Bank ("Huntington Bank") (collectively, "Huntington") submit this Response to Plaintiff's Sur-Reply and in Further Support of their Motion to Compel Arbitration and Stay All Proceedings Against Them.

I.  INTRODUCTION

The Court's May 5, 2010 Order required Plaintiff Michelle Gulley ("Gulley") to address whether the parties' Arbitration Agreement contained in the "Agreement and Disclosure of Account Terms and Rules and Regulations for Consumer Checking Accounts" (the "Rules and Regulations") is unconscionable under Ohio law.[1]  Gulley now offers for the first time her Declaration (the "Gulley Declaration") although not expressly permitted to do so by the Court's May 5 Order and although she previously failed to support her Opposition with any declaration. She also makes a number of arguments that Huntington has not had the opportunity to address.

Foremost, Gulley's Declaration cuts the ground out from under her contention that she needs "limited discovery" in order to determine whether there is in fact an Arbitration Agreement.  Gulley admits in her Declaration, just as Huntington demonstrated in its Motion to Compel Arbitration, that she opened her account over the internet and filled in information and clicked boxes as directed by the Huntington Bank website.  See Gulley Declaration at ¶ 3.  As previously explained in the Zabloudil Declaration, one of the boxes that Gulley must have clicked to open her account was the box expressing her agreement to the Rules and Regulations. Although Gulley now professes not to recall whether she read any arbitration agreement, such a contention is wholly insufficient under the law to call into question the existence of the

---

[1]  A true and correct copy of the Rules and Regulations is attached to the Declaration of Robert Zabloudil (the "Zabloudil Declaration") as Exhibit B.  The Zabloudil Declaration was filed with Defendants' Motion to Compel Arbitration [docket #203].

1

Arbitration Agreement. See, e.g., Tinder v. Pinkerton Security, 305 F.3d 728, 735 (7th Cir. 2002) (enforcing an arbitration agreement against an employee who claimed that she did not recall receiving it and that it had been imposed unilaterally); DeOrnellas v. Aspen Square Management, Inc., 295 F. Supp.2d 753, 763 (E.D. Mich. 2003) (arbitration agreement enforceable despite the plaintiff's affidavit which stated that "I do not specifically recall signing an Employment Arbitration Agreement'"); Fisher v. GE Medical Sys., 276 F. Supp.2d 891, 895 (M.D. Tenn. 2003) ("That [the plaintiff] 'does not recall' receiving a copy of [the arbitration agreement] does not invalidate the agreement."); Emeronye v. CACI Int'l., 141 F. Supp.2d 82, 86 (D.D.C. 2001) ("The fact that plaintiff does not recall signing the agreement . . . or that the arbitration provision was not explained to her is insufficient to render the contract unenforceable."); Meyers v. Univest Home Loan, Inc., No. C-93-1783 MHP, 1993 U.S. Dist. LEXIS 11333, at *3 (N.D. Cal. Aug. 4, 1993) (consumers who obtained home loans were bound by arbitration clause even though they could not recall reading or hearing about the arbitration agreement and were not aware of arbitration as a method of dispute resolution).

Gulley's attempts to demonstrate that the Arbitration Agreement is unconscionable under Ohio law are also wholly unavailing. She ignores the plain language of the Arbitration Agreement, recent and controlling Ohio law, and the applicable rules of the arbitration administrator governing the cost of arbitration. Plainly, she has not and cannot demonstrate that the Arbitration Agreement is unconscionable under Ohio law.

## II.   ARGUMENT

### A.   Gulley Has Not And Cannot Demonstrate The Arbitration Agreement Is Unconscionable Under Ohio Law.

#### 1.   Gulley's Arguments As To Procedural Unconscionability Are Barred By The Prima Paint Rule

Gulley primarily attempts to demonstrate procedural unconscionability by pointing to the circumstances under which she entered into the Rules and Regulations contending, among other things, that it was presented to her on-line on a "take-it-or-leave it basis." Sur-Reply at 2-3. This argument, which is not directed solely to the Arbitration Agreement, is barred by the Prima Paint rule.

The United States Supreme Court has specifically held that a court may only consider challenges directed specifically and solely to the arbitration agreement. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 448-49 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). Thus, an arbitration agreement must be upheld and enforced by the courts even though the rest of the contract may later be held invalid by the arbitrator. Prima Paint, 388 U.S. at 404; ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 501, 692 N.E.2d 574, 577 (1998). As the Ohio Supreme Court explained, "claims of unconscionability that relate to the contract generally, rather than the arbitration clause specifically, are properly left to the arbitrator in the first instance." Taylor Bldg. Corp. v. Benfield, 117 Ohio St.3d 352, 361, 884 N.E.2d 12, 22 (2008) (contract provisions that do not appear in the arbitration agreement could not form basis for invalidating arbitration agreement).

Numerous courts have rejected arguments identical to those advanced by Plaintiff, ruling that unconscionability arguments premised upon the circumstances surrounding the parties' entry into their underlying transaction as a whole are for the arbitrator. See, e.g., Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868, 876 (11th Cir. 2005) (allegations that

3

consumer could not negotiate agreement as a whole for arbitrator under Prima Paint); JLM Indus. v. Stolt-Nielsen SA, 387 F.3d 163, 169, 170 (2d Cir. 2004) ("an assertion that the [lease contract] itself, and not merely the arbitration clause included therein, has been forced upon [the plaintiffs]" barred by Prima Paint as "[c]laims of unconscionability and adhesion contracts are similarly included within the Prima Paint rule."); Burden v. Check into Cash of Ky., 267 F.3d 483, 492 (6th Cir. 2001) ("an additional claim of Plaintiffs, that the arbitration agreements are unenforceable because they were contained in contracts of adhesion, also does not concern the making of the arbitration agreements because the claim does not attack the arbitration clause, separate from the underlying loan agreements"), cert. denied, 535 U.S. 970 (2002); Primerica Life Ins. Co. v. Brown, 304 F.3d 469 (5th Cir. 2002) (allegations of plaintiff's illiteracy directed to a contract containing an arbitration clause are for the arbitrator, not a court, to determine); Rojas v. TK Communications, Inc., 87 F.3d 745, 749 (5th Cir. 1996) ("claim that the employment agreement is an unconscionable contract of adhesion is an attack on the formation of the contract generally, not an attack on the arbitration clause itself" and, thus, is for the arbitrator to decide); Anderson v. Delta Funding Corp., 316 F. Supp.2d 554, 566 n.8 (N.D. Ohio 2004) ("complaints about the loan transaction itself to support . . . claim of procedural unconscionability" barred by Prima Paint).

### 2. Gulley Has Otherwise Failed To Establish Procedural Unconscionability.

"[U]nder Ohio law, in order for an arbitration provision to be unconscionable, it must be one-sided, deny the less advantaged party meaningful choice in accepting the terms of the contract, and involve a situation such that the less advantaged party cannot obtain their desired product or services except by acquiescing to the form contract." Stout v. J.D. Byrider, 228 F.3d 709, 716 (6th Cir. 2000). Accord Hayes v. Oakridge Home, 122 Ohio St.3d 63, ¶ 20,

4

908 N.E.2d 408 (2009); O'Donoghue v. Smythe, Cramer Co., No. 80453, 2002 WL 1454074, *4 (Ohio. App. 8th Dist. 2002). Where the "record is bereft of [Plaintiff's] absence of meaningful choice," an arbitration agreement is simply not unconscionable. Harper v. J.D. Byrider of Canton, 148 Ohio App.3d 122, 124, 772 N.E.2d 190, 192 (9th Dist. 2002).

In other words, Gulley must establish that she would not have been able to obtain a checking account other than by agreeing to arbitration. Harper, 148 Ohio App.3d at 124, 772 N.E.2d at 192; Stout, 228 F.3d at 716. However, Gulley has failed to present one iota of evidence (even in her declaration) that she even considered other banks, or that all other banks at that time required mandatory arbitration. See Alexander v. Wells Fargo Fin. Ohio 1, Inc., No. 89277, 2009 WL 2963770, at *3, 2009-Ohio-4873 (Ohio App. 8th Dist. Sept. 17, 2009) (plaintiff failed to establish procedural unconscionability because she failed to establish that she had no choice but to obtain loan from the defendant which required an arbitration agreement). Gulley has not even remotely attempted to address this salient requirement of procedural unconscionability under Ohio law.

Finally, Gulley's complaint that the Arbitration Agreement was printed "in small print on the ninth page" of the Rules and Regulations is simply off-base. Gulley ignores that on its very first page, the Rules and Regulations contains a box providing in bold face print:

### NOTICE OF ARBITRATION PROVISION

**The Account Documents are subject to an arbitration provision that is part of these Rules and Regulations. You should read the arbitration provision. It will affect the way in which you or we resolve any claim that we have against each other in connection with your account.**

(Bold face in original). She also ignores the fact that the Arbitration Agreement appears in the same size print as the remainder of the Rule and Regulations.

5

Consequently, the Arbitration Agreement cannot be found procedurally unconscionable.

**B.  Gulley Has Not, And Cannot, Establish That The Arbitration Agreement And Its Class Action Waiver Are Substantively Unconscionable.**

Ignoring for the moment Gulley's failure to establish procedural unconscionability under Ohio law, she also fails to establish that the Arbitration Agreement is substantively unconscionable. In attempting to establish the same, Gulley ignores the plain language of the Arbitration Agreement, the plain language of the arbitration administrator's rules and several very recent Ohio cases enforcing class action waivers.

In support of her arguments, Gulley relies upon two older cases that are wholly distinguishable. See Sur-Reply at 3-5. Both Eagle v. Fred Martin Motor Co., 157 Ohio App.3d 150, 809 N.E.2d 1161 (9th Dist. 2004) and Schwartz v. Alltell Corp., No. 86810, 2006 WL 2243649 (Ohio App. 8th Dist. June 29, 2006) involved claims brought under the Ohio Consumer Sales Practices Act ("CSPA"), a claim which Gulley has not asserted in this case and could not assert as she acknowledges. See Sur-Reply at 6. Furthermore, Eagle turned largely on the fact that the arbitration agreement in that case contained an onerous confidentiality provision and would have required the plaintiff to pay as much as $6,000 in previously undisclosed arbitration fees. See Credit Acceptance Corp. v. Davisson, 644 F. Supp.2d 948, 958 (N.D. Ohio 2009) (declining to follow Eagle and enforcing arbitration agreement with class action waiver). The arbitration agreement at issue in Schwartz also prohibited the award of attorneys' fees to the successful consumer. There are no such provisions or contentions at issue in this case.

In an attempt to make Eagle and Schwartz applicable to this case, Gulley misconstrues the parties' Arbitration Agreement. First, she contends that the Arbitration Agreement's provision that Huntington will pay the first $1,000 cost of the arbitration only

6

applies if Huntington initiates the arbitration. See Sur-Reply at 7. That is patently incorrect. The Arbitration Agreement expressly provides: "If we require a Claim to be arbitrated, we will pay or reimburse you for up to $1,000 in fees that would otherwise be charged to you by the administrator." Rules and Regulations at page 10, ¶ (g). By its plain terms, the Arbitration Agreement does not state that Huntington pays the first $1,000 only if it initiates the arbitration. Rather, it pays if it "requires" Gulley's claim to be arbitrated. Plainly that is what Huntington is doing through the instant motion.

Second, Gulley ignores the "Consumer Arbitration Costs Rules" for the American Arbitration Association ("AAA"), a copy of which was attached to Huntington's Reply Brief as Exhibit A [docket #283]. In short, AAA provides that if the consumer's claim is for less than $10,000, the consumer "is responsible for one-half the arbitrator's fees up to a maximum of $125." Thus, there can be no doubt that Gulley's arbitration fees would be capped at $125.[2]

Gulley also ignores that the Michigan Consumer Protection Act ("MCPA"), under which she has brought a claim, does <u>not</u> contain any provision prohibiting a consumer from waiving his ability to bring a class action. See Adler v. Dell, Inc., No. 08-13170, 2008 WL 5351042, at *4 (E.D. Mich. Dec. 18, 2008) (enforcing contractual choice-of-law provision and upholding class action waiver in arbitration provision under Texas law after concluding that MCPA did not prohibit consumer from waiving ability to bring class action). Indeed, Michigan courts have permitted consumers to waive other provisions of the MCPA. See id. ("courts have allowed waivers of MCPA provisions outside of the arbitration context") (citing Dean v. Haman,

---

[2] The plain language of the Arbitration Agreement and the AAA Cost Rules distinguish this case from Morrison v. Circuit City Stores, Inc., 317 F.3d 646 (6th Cir. 2003), relied upon by Gulley. In the present case, unlike in Morrison, by reading the Arbitration Provision and the AAA Cost Rules Gulley or any other litigant could be certain that if they commenced an arbitration their costs would be capped at $125.

7

No. 259120, 2006 WL 1330325 (Mich. App. May 16, 2006)). Gulley has not and cannot argue that the MCPA precludes a consumer's ability to waive the right to bring a class action.

Finally, Gulley ignores the very recent Ohio authority enforcing arbitration agreements with class action waivers. In Alexander, the Ohio Court of Appeal enforced a class action waiver rejecting arguments that the class action waiver precluded the plaintiff from vindicating her individual rights. 2009 WL 2963770, at *3. The Court of Appeal explained that to adopt the plaintiff's reasoning "that all arbitration clauses which eliminate the right to participate in a class action are invalid, arbitration clauses would never apply, as all class actions are litigated in court." Id.

In Hawkins v. O'Brien, No. 22490, 2009 WL 50616, at *4, 2009-Ohio-60 (Ohio App. 2nd Dist. Jan. 9, 2009), the plaintiff filed suit concerning a $543.75 payday loan. The Ohio Court of Appeal enforced the class action waiver because "nothing in the arbitration clause denies Hawkins any of the substantive rights conferred on him by [Ohio consumer protection statute at issue] and the Federal Fair Debt Collection Practices Act ('FDCPA') which his claims for relief invoke. Neither do those statutory provisions preclude or limit arbitration of claims brought in an action pursuant to them." 2009 WL 50616, at *6. The Court of Appeal further held that:

> The private attorney general and class action provisions of R.C. 1345.09(D) are procedural mechanisms that aid consumers in their prosecution of CSPA violations. They confer no additional substantive rights. The arbitration clause in the present case preserves the statutory substantive rights and remedies Hawkins sought in the action he commenced.

Id. at *7.

Accordingly, Gulley has not established substantive unconscionability under Ohio law.

8

### C.  Gulley's Attempt To Distinguish The Supreme Court's Decision In Stolt-Nielsen Is Unavailing.

Gulley attempts to dismiss the Supreme Court's decision in Stolt-Nielsen SA v. Animal Feeds Internat'l Corp., __ S. Ct. __, 2010 WL 1655826 (April 27, 2010) because the arbitration agreement in that case neither expressly permitted nor precluded class arbitration. See Sur-Reply at 10.  Gulley misses the point.

Stolt-Nielsen constitutes a ringing endorsement by the Supreme Court of "the central or 'primary' purpose of the [Federal Arbitration Act ("FAA")] … to ensure that 'private agreements to arbitrate are enforced according to their terms.'"  2010 WL 1655826, at *11.  It recognizes that "[w]hile the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a mater of consent, not coercion.'" Id. (citation omitted).  Stolt-Nielsen concluded that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." Id. at *13 (emphasis in original).  The Supreme Court explained that requiring class arbitration as a matter of policy "is fundamentally at war with the foundational FAA principle that arbitration is a matter of consent." Id.  Moreover, it adopts a central argument made by defendants seeking to enforce arbitration agreements with bans on class action arbitration:  "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." Id.

The parties' Arbitration Agreement by its express terms precludes class arbitration.  Under Stolt-Nielsen that should end the matter.  See Am. Express Co. v. Italian Colors Restaurant, __ S. Ct. __, 2010 WL 1740528 (May 3, 2010) (vacating decision of the Second Circuit invalidating arbitration agreement with class waiver in light of Stolt-Nielsen).

9

Any argument that an arbitration agreement must permit class arbitration in order to be valid ignores <u>Stolt-Nielsen's</u> holding that "the basic precept that arbitration 'is a mater of consent, not coercion'" and "is fundamentally at war with the foundational FAA principle that arbitration is a matter of consent."

### III. CONCLUSION

Defendants' Motion to Compel Arbitration should be granted and the claims asserted against them should be stayed pending the completion of arbitration. Further, Plaintiff should be ordered to proceed with arbitration on an individual basis.

Respectfully submitted,

Dated: May 24, 2010

/s/     Martin C. Bryce, Jr.
Alan S. Kaplinsky
Martin C. Bryce, Jr.
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Telephone: 215.864.8238
Facsimile: 215.865.9511

Attorneys for Defendants The Huntington National Bank and Huntington Bancshares Incorporated

## **CERTIFICATE OF SERVICE**

        I, Martin C. Bryce, Jr., hereby certify that on this 24th day of May, 2010, I caused a true and correct copy of the Response of Huntington Bancshares Incorporated and The Huntington National Bank to Plaintiff's Sur-Reply and in Further Support of Their Motion to Compel Arbitration and Stay All Proceedings to be served via ECF submission on all counsel of record.

        /s/    Martin C. Bryce, Jr.
                Martin C. Bryce, Jr.