UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION,

MDL No. 2036

_____/

THIS DOCUMENT RELATES TO:

*Gulley v. Huntington Bancshares Incorporated, et al.*;
S.D. Fla. Case No. 10-cv-23514-JLK
W.D. Mich. Case No. 09-cv-00880

_____/

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

THIS CAUSE comes before the Court upon Huntington Bancshares Incorporated and Huntington National Bank's (collectively "Huntington") Motion to Compel Arbitration (DE # 202) filed December 15, 2009. On February 5, 2010, Plaintiff Responded (DE # 272) and on February 24, 2010, Defendant Replied (DE # 293). Coordinated Oral Argument was held on this, and the five similarly filed Motions to Compel Arbitration, on April 20, 2010. On May 5, 2010, the Court entered an Order (DE # 434), directing Plaintiff to file a Sur-Reply addressing the unconscionability of Huntington's arbitration clause under Ohio law. Plaintiff filed its Sur-Reply (DE # 478) on May 18, 2010. The Court granted Defendant's Motion for Leave to File a Response to Sur-Reply (DE # 512) on May 24, 2010 and Defendant filed its Response (DE # 513) that same day.

In the interim, the Court ruled on the other five pending Motions to Compel Arbitration and entered an Order Denying the Motions (DE # 447) on May 10, 2010. This Court's May 10th

1

Order Denying Motions to Compel Arbitration is incorporated into this Order by reference. All parties are bound by this Court's previous Order and the Court will therefore not restate the factual background or what has already been previously explained. In this Order the Court addresses: (A) the applicable law under the Agreement; (B) whether the arbitration provision and its un-severable class action waiver are unconscionable; and (C) the availability of an arbitration administrator under the Agreement.

**A.     Choice of Law Analysis**

The parties disagree on which state's law applies: Defendant contends Ohio law applies and Plaintiff asserts Michigan law controls. Therefore, the Court must undertake a choice of law analysis. The Court applies the choice of law rules of the state where the case is filed, in this case, Michigan. *See Johnson v. Ventra Group, Inc.*, 191 F.3d 732, 738 (6th Cir. 1999). Michigan follows the Restatement (Second) of Conflict of Laws. *Id.* Thus, under Michigan law, a contractual choice of law provision is binding unless either:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflicts of Laws § 187(2).

Under the parties' Agreement, Plaintiff's account and the bank services are "governed by the law of the state where [the] account is maintained as determined . . . under 'Where Your Account [is] maintained.'" (Agreement, Ex. B to Dec. of Robert Zahloudil, at 8.) The provision

2

under "Where Your Account is Maintained" explains that if an account is opened remotely through the internet, it "will be maintained in Columbus, Ohio, unless we assign your account to a banking office in another state." (*Id.* at 4.) Plaintiff does not dispute that she opened her account through the Internet and in the Declaration of Robert Zabloudil[1] he states under oath that Plaintiff's account has been maintained in Columbus, Ohio since it was opened and was never assigned to a banking office in another state. (Dec. of Zabloudil at 5.) Thus, under the Agreement, the account and the bank's services are governed by Ohio law.

The Court now must consider whether either of the exceptions stated in the Reinstatement apply. The first exception does not apply. Ohio has a substantial connection to the parties because Plaintiff's bank account is being maintained in the state of Ohio and the Defendant bank is located and headquartered in Ohio. The second exception, though similarly inapplicable, is more complex. The Court must determine whether the arbitration provision (and its class action waiver) violates a fundamental policy of Michigan law.

Generally, Michigan courts have permitted consumers to waive their right to a class action. *See e.g., Moffat v. Communications Inc.*, No. 06-13107, 2010 WL 451033, at *2 (E.D. Mich. Feb. 5, 2010) ("[T]he right to bring a class action is not a statutory right, and even if it were, Plaintiff has not demonstrated that arbitration is so unfair that it prevents her from vindicating her statutory rights."). Nevertheless, Michigan courts have found class action waivers for claims brought under the Michigan Consumer Protection Act ("MCPA"), the Act as issue in the instant case, to violate Michigan law. *See Lazado v. Dale Baker Oldsmobile*, 91

---

[1] Robert Zabloudil is the Assistant Vice President and Senior Product Manager of Huntington.

3

F.Supp.2d 1087 (W.D. Mich. 2000). For example, applying Michigan law, the *Lazado* court found a class action waiver unconscionable because under the MCPA "the availability of class recovery is explicitly provided for and encouraged by statute. . . . Because the arbitration agreement prohibits the pursuit of class relief, it impermissibly waives a state statutory remedy." *Id.* at 1105 (citing *Rembert v. Ryan's Family Steakhouses, Inc.*, 596 N.W.2d 208, 230 (Mich. Ct. App. 1999)). No Michigan court, however, has found that Michigan has a "fundamental policy interest" in allowing consumers to bring class actions under the MCPA. When addressing this exact question in a choice of law analysis under Michigan law, the court in *Adler v. Dell* found that Michigan did not have a "'fundamental policy interest' in barring class waiver provisions in the context of MCPA claims." No. 08-13170, 2008 WL 5351042, at *4 (E.D. Mich. Dec. 18, 2008). The *Adler* court found that Defendant failed "to cite to any Michigan case law finding that the MCPA prohibits consumers from waiving their ability to bring a MCPA claim on a class wide basis. . . . [C]ourts have allowed waivers of MCPA provisions outside the arbitration context." *Id.* The Court agrees with the reasoning in *Adler* and finds that the application of Ohio law–the law dictated by the choice of law provision– does not violate a fundamental policy of Michigan law. The Court will therefore give effect to the parties' choice of law provision and apply Ohio law.

B.  **Unconscionability**

Under Ohio law, "[u]nconscionability includes both 'an absence of meaningful choice on the part of one of the parties together with the contract terms which are unreasonably favorable to the other party.'" *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009) (quoting *Lake Ridge Academy v. Carney*, 613 N.E.2d 183 (Ohio 1993)) . A party asserting unconscionability

4

under Ohio law must prove that the agreement is both procedurally and substantively unconscionable. *Id.* The Court addresses each in turn below.

### i. Procedural Unconscionability

"With respect to procedural unconscionability, a court will consider factors bearing on the relative bargaining position of the contracting parties, including age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract." *Eagle v. Fred Martin Motor Co.*, 809 N.E.2d 1161, 1171 (Ohio App. 2004) (citing *Collins v. Click Camera & Video, Inc.*, 621 N.E.2d 1294 (Ohio App. 1993)). The court also considers whether the party alleging unconscionability was represented by a lawyer at the time the contract was executed. *Id.*

Here, the Court finds that Plaintiff did not have a meaningful choice in agreeing to arbitrate. The Agreement is a contract of adhesion, a "standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that consumer[s] cannot obtain desired product[s] or services except by acquiescing [to the] form contract." *Id.* (citation omitted). By Defendant's own submission, the Agreement was presented to Plaintiff on a take-it-or-leave-it basis. In his Declaration, Mr. Zabloudil states that "if Ms. Gulley failed to check any one of the three boxes and then attempted to click on the "Next Step" button, Ms. Gulley would have received a pop-up message requiring her to read the appropriate disclosure rather than proceeding to the next step in the application process." (Dec. of Zabloudil at 3.) Mr. Zabloudil further explains that the Arbitration provision and class action waiver were located under "Account Disclosures," one of the boxes that Plaintiff was required to check to move

forward. (*Id.*) Thus, this was a form contract that Plaintiff was precluded from negotiating, making this a contract of adhesion.

This form arbitration provision was also not conspicuous. According to Mr. Zabloudil's Declaration, in order to read the arbitration provision, Plaintiff would have had to first, click on "Account Disclosures"; second, be brought to "New Account Disclosures"; third, find "Agreement and Disclosure of Account Terms and Rules and Regulations for Consumer Checking Accounts" among a list of different sections (the Declaration notes that it was under the "Free Checking" section") and then click on the "Rules and Regulations" section and scroll down to the arbitration provision. (*Id.*) Once Plaintiff clicked through to the "Rules and Regulations" there was a noticeable "Notice of Arbitration Provision" on the first page, but Plaintiff had to undergo so many steps to get there that the Arbitration provision could hardly be deemed noticeable. In fact, it appears from Mr. Zabouldil's Declaration that Plaintiff could have missed the arbitration provision altogether because Plaintiff was not required to click on the "Rules and Regulations" section before moving on. Finally, Plaintiff was not represented by a lawyer at the time she entered into the Agreement. The Court therefore finds the agreement procedurally unconscionable.

Defendant asserts that adhesion contracts are not unconscionable per se. *See e.g., Taylor Bldg. Corp. v. Benfield*, 884 N.E.2d 14, 24 (Ohio 2008). However, this contract is not procedurally per se unconscionable because it was a contract of adhesion; rather, the fact that the Agreement was a contract of adhesion, the language was inconspicuous and the Agreement was signed without a lawyer make it procedurally unconscionable. The Court now turns to substantive unconscionability.

### ii.     Substantive Unconscionability

"An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable." *Hayes*, 908 N.E.2d at 414. The Court determines substantive unconscionability on a case-by-case basis. *Eagle*, 809 N.E.2d at 1175 (citing *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). "Potential litigants must be given an opportunity, prior to arbitration on the merits, to demonstrate that the potential costs of arbitration are great enough to deter them and similarly situated individuals from seeking to vindicate their federal statutory rights in the arbitral forum." *Id.* (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663 (6th Cir. 2003)). In *Eagle*, the court compared the cost to the plaintiff to undergo arbitration to the cost of litigation and found the cost of arbitration prohibitive. *Id.* The *Eagle* court explained that the arbitration clause left the consumer caught between being potentially unable to obtain meaningful relief under arbitration and yet unable to proceed to the courts. *Id.*

The facts in the instant action differ from those addressed in this Court's previous Order Denying Motions to Compel Arbitration. Under the facts in this case, the Court finds that the potential costs of arbitrating a claim would not deter potential plaintiffs from seeking to vindicate their rights in an arbitral forum. Unlike in *Eagle*, under this Agreement, Defendant will reimburse Plaintiff for at least up to $1000 in arbitration fees. Specifically, the Agreement provides:

> If we require a claim to be arbitrated, we will pay or reimburse you for up to $1,000 in fees that would otherwise be charged to you by the administrator. However, if either we or you require a Claim to be arbitrated, you may tell us in writing that you can't afford to pay the fees charged by the administrator or that you believe those fees are

7

> too high. If you do so, we will pay or reimburse you for up to all of the fees that would otherwise be charged to you by the administrator if your request is reasonable and in good faith. We will always pay the fees if applicable law requires us to. We will not ask you to pay or reimburse us for any fees we pay the administrator. Each party must pay the expense of that party's attorneys, experts and witnesses, regardless of which party prevails in the arbitration, unless applicable law and/or this Arbitration Provision and/or any agreements governing the deposit account give a party the right to recover any of those fees from the other party.

(Agreement at 10). Defendant asserts that under the procedures of the American Arbitration Association ("AAA"), the arbitration administrator specified in the Agreement, Plaintiff's arbitration fees would be limited to $125. Thus, Defendant's $1,000 offer of payment would cover all administrator costs. Even if these rules do not apply (as discussed in this Court's previous Order), Defendant's promise of $1,000 will likely make a Plaintiff feel comfortable bringing an individual claim under arbitration. That is a plaintiff will not be precluded from bringing a claim because she is worried about paying the arbitration fees out of pocket. Moreover, if the arbitration fees exceed the $1,000 limit and Plaintiff cannot pay the excess fees, Plaintiff can petition Defendant for the extra funds.

Plaintiff contends that this provision of the Agreement would not apply here because, according to Defendant's Reply brief, the Plaintiff would be required to "initiate an arbitration with AAA if she wishes to pursue her claims." (Reply to Mot. to Compel Arb. at 19.) The provision at issue, however, does not state that the provision only applies if the Defendant *initiates* an arbitration; rather, the provision states that Defendant will reimburse Plaintiff if the Defendant *requires* arbitration. This issue is before the Court upon Defendant's Motion to Compel Arbitration. Thus, even if Defendant is not initiating the arbitration, Defendant is

certainly requiring arbitration. This provision would therefore apply to Plaintiff in this instance.

Further, while the Arbitration provision explicitly states that Plaintiff will be responsible for the expense of its own attorneys, experts and witnesses, Plaintiff's claim under the MCPA provides for attorney's fees if Plaintiff prevails. The Act states: "Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees." M.C.L.A. §445.911(2). Plaintiff asserts that because she is bringing the claim as a class action she would not be entitled to attorney's fees under the MCPA. The class action waiver, however, forbids Plaintiff from bringing a claim as a class under the MCPA. If this provision is not deemed unenforceable, Plaintiff would be forced to bring the action individually and would therefore be entitled to attorney's fees. Thus, unlike the plaintiffs in the Court's Order Denying Motions to Compel Arbitration, Plaintiff would not be denied the possibility of attorney's fees if she brought the claim individually and would therefore be able to find an attorney to represent her. Also, the MCPA only grants fees to a prevailing *plaintiff*, not a prevailing *party*. In other words, if Plaintiff loses her claim she will not be obligated to pay Defendant's attorney's fees. Moreover, under these facts, the only cost to the Plaintiff to undergo arbitration will be witness and other miscellaneous fees such as xeroxing, the same as the costs of litigation. Further, the arbitrator may award those costs to Plaintiff if she prevails. *See* Fed. R. Civ. Pro. 54(d); 28 U.S.C. § 1920.

The Court notes that Plaintiff filed a sworn Declaration stating that if "forced to take this matter through arbitration, it will present an enormous financial hardship. . . . I certainly could never pay arbitration costs and attorneys fees and I am aware that an attorney is unlikely to represent me on a contingency fee basis in an individual arbitration." (Dec. of Michelle Rae

Gully, Ex. A to Sur-Reply at 4.) Nevertheless, as the Court has found that Plaintiff would not be required to pay attorney's fees if she prevails under the MCPA and would only be required to pay her arbitration costs in excess of $1000, the financial hardship outlined in her declaration is not relevant here. Thus, unlike the facts previously before this Court, the cost of arbitration here would not preclude a plaintiff from bringing an individual claim under the MCPA pursuant to this Agreement.

Finally, Plaintiff contends that the class action waiver is substantively unconscionable because the MCPA explicitly provides for class actions and the waiver of that right would impermissibly waive a state statutory remedy. Plaintiff cites to the *Lazado* court, which, as discussed above, found that because the MCPA "explicitly provided for and encouraged" class recovery under the statute, a prohibition of that recovery impermissibly waives a state statutory remedy. *Lazado*, 91 F.Supp.2d at 1105. According to the Court of Appeals of Ohio, a right to a class action, conferred by statute, is a procedural right that aids consumers. *Hawkins v. O'Brien*, No. 22490, 2009 WL 50616, at *6 (Ohio Jan. 9, 2009). In other words, a class action mechanism does not confer any additional substantive rights and therefore a waiver of those rights does not make the arbitration provision substantively unconscionable. *Id.*

The result is the same under Michigan law. *See e.g.*, *Adler*, 2008 WL 5351042. Relying on *Lazado*, the court in *Wong v. T-Mobile USA, Inc.* found a class action waiver invalid because "whether the right to a class action is a substantive or a procedural one, it is certainly necessary for the effective vindication of statutory rights, at least under the facts of this case." No. 05-73922, 2006 WL 2042512, at *5 (E.D. Mich. July 20, 2006). The *Wong* court further explained that because "Plaintiff's damages are a paltry $19.74, hardly enough to make arbitration

worthwhile, . . . The MCPA's class action mechanism is essential to the effective vindication [of] its statutory cause of action." *Id.* Analyzing *Wong*, the court in *Adler* explained that it agreed with the findings in *Wong*, specifically "where the amount in dispute is so small that it becomes impractical to bring a claim in the first instance, the right to bring a class action becomes more akin to a substantive right than to a mere procedural right." 2008 WL 5351042, at *7. Thus, under Michigan law a class action waiver is substantively unconscionable if the waiver makes it impractical to bring an individual claim. As this Court has already found that under the facts of this case it is not impractical to bring an individual claim under the MCPA, the class action ban does not prevent the vindication of statutory rights here.

### C. Arbitration Agency

Finally, Plaintiff submits that because the National Arbitration Forum ("NAF") and the AAA, the only specified arbitrators, will no longer accept arbitrations of this type, this Arbitration provision is unenforceable. Section (c) of the parties' arbitration provision specifies that either AAA or NAF must be chosen to provide an arbitration administrator. (Agreement §(c) at 9.) The Agreement further provides that:

> If for any reason the chosen arbitration agency is unable or unwilling or ceases to serve as the administrator, or does not qualify or ceases to qualify as an administrator under the terms of this Arbitration Provision, the party requiring arbitration will have 20 days to choose a different administrator, consistent with the requirements of this Arbitration Provision, from among the above-named arbitration agencies. If none of the above-named arbitration agencies qualifies to be an administrator under the terms of this Arbitration Provision, the parties shall, within 20 days after learning of such disqualification, agree on another arbitration agency that does qualify under the terms of this Arbitration Provision. In the absence of such agreement, either party may apply to a court of competent jurisdiction for the court to appoint an administrator that does qualify under the terms of this Arbitration Provision.

11

(*Id.*) Plaintiff contends that due to allegations that the NAF and AAA had extensive ties to those pursuing arbitrations before it, both arbitration administers have stopped taking cases of this nature. The Court does not need to address the legitimacy of these statements, however, because even if these allegations are true, the Agreement provides a mechanism to deal with this situation. Namely, the parties may agree on another arbitration agency or apply to a court of competent jurisdiction for the court to appoint an administrator. (*See id.*) Thus, even if Plaintiff's allegations are correct, they do not render the Arbitration provision unenforceable.

In sum, based on the facts before this Court, this arbitration provision will not have the practical effect of precluding consumers from bringing an action against Huntington.

Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is ORDERED, ADJUDGED and DECREED that Huntington's Motion to Compel Arbitration (**DE # 202**) be, and the same is hereby, **GRANTED**. The Clerk of the Court shall **CLOSE** this case.

DONE and ORDERED in chambers at the James Lawrence King Federal Courthouse in Miami, Florida, this 25th day of May, 2010.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: All Counsel of Record