**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

---

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**

*Jessica Duval v. Citizen Financial Group, Inc.*
N.D. Ill. Case No. 1:10-cv-00533
S.D. Fla Case No. 1:10-cv-21080-JLK

*Eric Daniels  v. Citizens Financial Group, Inc.*
D. Ma. Case No. 10-cv-10386
SD Fla. Case No. _____

---

**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, through undersigned counsel, on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

**INTRODUCTION**

1.       This is a civil action seeking monetary damages, restitution and declaratory relief from Defendants Citizens Financial Group, Inc., RBS Citizens, N.A., Citizens Bank of Pennsylvania, and Charter One (collectively, "Citizens Bank," the "Bank," or "Defendants"), arising from their unfair and unconscionable assessment and collection of excessive overdraft fees.

2.        In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Citizens Bank. For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers. Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance. A recent FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States. A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*. Nevertheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.        In 2007, banks collected more than $17 billion in overdraft fees. That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances. In 2009, banks are estimated to bring in between $27 billion to $38.5 billion in overdraft charges alone.

4.        Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances. Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base. Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

- 2 -

5.        Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries, the grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.        The same considerations are not present when customers use debit cards. Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.        Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Citizens Bank routinely processes such transactions and then charges its customers an overdraft fee of $39 in most cases - even when the transaction is for only a few dollars.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Citizens Bank.  Additionally, as part of its inequitable motive to generate profits gained through the imposition of unconscionable overdraft fees, Citizens Bank fails to give customers the option to "opt out" of overdraft protection.

8.      In many instances, these overdraft fees cost Citizens Bank account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

9.      Thus, it is through manipulation and alteration of customers' transaction records that Citizens Bank maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the Plaintiffs is a resident of a different state than Citizens Bank.

11.      Venue in the District Court of Massachusetts is proper pursuant to 28 U.S.C. § 1391 because Citizens Bank is subject to personal jurisdiction there and regularly conducts business in the District of Massachusetts through its many branches in the state.

## THE PARTIES

12.      Plaintiff Eric Daniels is a resident of the Commonwealth of Massachusetts and is a customer of Citizens Bank.

13.      Plaintiff Kathleen Dwyer is a resident of the Commonwealth of Massachusetts and is a customer of Citizens Bank.

14.      Plaintiff Marcea Taylor is a resident of the Commonwealth of Massachusetts and is a customer of Citizens Bank.

15.      Plaintiff Gale Hercula is a resident of the State of Michigan and is a customer of Citizens Bank through its Charter One brand.

- 4 -

16.     Plaintiff Jessica Duval is a resident of the State of New Hampshire and is a customer of Citizens Bank.

17.     Plaintiff Jaclyn Curtis is a resident of the State of New York and is a customer of Citizens Bank.

18.     Plaintiff Annie Mullen is a resident of the Commonwealth of Pennsylvania and is a customer of Citizens Bank.

19.     Plaintiff Greg Murphy is a resident of the Commonwealth of Pennsylvania and is a customer of Citizens Bank.

20.     Plaintiff Jill Giordano is a resident of the State of Rhode Island and is a customer of Citizens Bank.

21.     Plaintiff Sheryl Wood is a resident of the State of Vermont and is a customer of Citizens Bank.

22.     Upon information and belief, the corporate relationship between the various defendant entities is as follows:

> **Citizens Financial Group, Inc.** is a $148 billion commercial bank holding company.  It is headquartered in Providence, R.I.  Its two bank subsidiaries are **RBS Citizens, N.A.** and **Citizens Bank of Pennsylvania**. They operate a 12-state branch network under the Citizens Bank brand in Connecticut, Delaware, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island and Vermont, and the **Charter One** brand in Illinois, Michigan and Ohio.[1]

23.     Defendant Citizens Bank is headquartered at One Citizens Plaza, Providence, Rhode Island 02903.  At all times relevant hereto, Citizens Bank was and is doing business within the District of Massachusetts.

---

[1] http://www.charterone.com/about-us/

24.      According to its website, Citizens Bank has more than 1,500 branches, approximately 3,500 ATMs and approximately 22,600 employees.[2]

25.      Citizens Bank is a national bank, subject to the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

## CLASS ALLEGATIONS

26.      Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

27.      The proposed classes are defined as:

> All Citizens Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Citizens Bank's practice of re-sequencing debit card transactions from highest to lowest (the "National Class").

> All Citizens Bank customers having accounts at branches in the states of Massachusetts, New York, Pennsylvania and Vermont for the purpose of asserting claims under their respective state consumer protection statutes (the "State Subclasses") (*see* Fifth Claim for Relief, *infra*).

> The National Class and the State Subclasses are collectively referred to as the "Classes."

28.      Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

29.      Excluded from the Classes are Citizens Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Citizens Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

---

[2] http://www.citizensbank.com/about-us/

30.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Citizens Bank's records.

31.     The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members, were charged overdraft fees by Citizens Bank as a result of its practice of re-sequencing debit card transactions from highest to lowest.  The representative Plaintiffs, like all Class members, have been damaged by Citizens Bank's misconduct in that they have been assessed and/or will continue to be assessed unfair and unconscionable overdraft charges.  Furthermore, the factual basis of Citizens Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

32.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

33.     Among the questions of law and fact common to the Classes are whether Citizens Bank:

    a.     Does not clearly disclose and/or refuses to allow its customers to opt out of its overdraft protection program;

    b.     Does not obtain affirmative consent from its customers prior to processing transactions that will result in overdraft fees;

    c.     Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

d.      Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

e.      Manipulates and reorders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

f.      Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

g.      Fails to provide customers with accurate balance information;

h.      Delays posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

i.      Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

j.      Breaches its covenant of good faith and fair dealing with Plaintiffs and other members of the Classes through its overdraft policies and practices;

k.      Requires its customers to enter into standardized account agreements which include unconscionable provisions;

l.      Converts moneys belonging to Plaintiffs and other members of the Classes through its overdraft policies and practices;

m.      Is unjustly enriched through its overdraft policies and practices; and

n.      Violates the consumer protection acts of certain states through its overdraft policies and practices.

34.      Other questions of law and fact common to the Classes include:

a.      The proper method or methods by which to measure damages, and

      b.     The declaratory relief to which the Classes are entitled.

35.     Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Citizens Bank's account agreements and other related documents.  Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

36.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Citizens Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Citizens Bank's misconduct will proceed without remedy.

38.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual

lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.      Citizens Bank

39.       Citizens Financial Group, Inc. is a $148 billion commercial bank holding company. It is headquartered in Providence, R.I.  Its two bank subsidiaries are RBS Citizens, N.A. and Citizens Bank of Pennsylvania. Together they operate a 12-state branch network under the Citizens Bank brand in Connecticut, Delaware, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, Rhode Island and Vermont, and the Charter One brand in Illinois, Michigan and Ohio.

40.       Citizens Bank is in the business of providing its customers with a variety of banking services.  One of the services provided by Citizens Bank for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATM machines, the transaction is processed electronically.  As a result, Citizens Bank is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

41.       Citizens Bank employs sophisticated software to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

42.       As a result of Citizens Bank's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft

fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer whose account has a $50 balance at the time Citizens Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer.  Conversely, if the $100 transaction were debited last—consistent with the actual order of transactions—only one overdraft fee would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

### B.    Citizens Bank's Relevant Customer Documents Regarding Overdrafts

43.    Plaintiffs and all members of the Classes maintain or maintained a checking account with Citizens Bank.  The terms of Citizens Bank's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by Citizens Bank, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.  A representative copy of the Personal Deposit Account Agreement (the "Deposit Agreement"), which is 36 pages long, single-spaced and in small font, is attached as Exhibit A.

44.    The Deposit Agreement contains the following inconsistent provisions:

**6. Withdrawals**.  We will not permit withdrawals from your account unless there are sufficient funds available in your account.

****

**12. Payment of Checks and Other Transactions.**  We may pay checks, in-person withdrawals, ATM withdrawals, point-of-sale transactions, or any other paper or electronic transactions (Transactions) in any order determined by us, even if (a) paying a particular Transaction results in an insufficient balance in your account to pay one or more Transaction that otherwise could have been paid

out of your account, or (b) using a particular order results in the payment of fewer Transactions or the imposition of additional fees.

**13.  Overdrafts/Insufficient Funds.**  We determine from time to time during each business day whether or not your account contains sufficient available funds to pay a Transaction (e.g., a check, in-person withdrawal, ATM withdrawal, point-of-sale Transaction, or any other paper or electronic Transaction).  If we determine that your account has insufficient available funds to pay a Transaction, you agree to pay an overdraft/insufficient funds fee, and we are not required to honor the Transaction and may return or decline it.

45.     The provisions in the Deposit Agreement conflict with each other and are in contrast to Defendants' actual practice and policy of automatically and in every case permitting transactions to occur despite inadequate funds.

46.     The "Withdrawals" disclosure comes six sections before any mention of possible Overdraft Fees.  It directly states that account holders will not be able to withdraw cash or make a debit card purchase if there are not sufficient funds in the account.  Contrary to the terms of the Deposit Agreement provisions, Plaintiffs were allowed to make POS purchases when the Bank claims they had insufficient funds to do so.[3]

47.     Further, paragraph 12 of the Deposit Agreement indicates that reordering could result in "an insufficient balance to pay one or more other Transactions that otherwise could have been paid out of your account" or "the payment of fewer Transactions," and implies that, therefore, the Bank would not pay for a Transaction for which there were insufficient funds in the account.

48.     Paragraph 13 of the Deposit Agreement, however, provides that "Alternatively, we may honor the Transaction and create an overdraft in your account and

---

[3] Citizens Bank charged Plaintiff Duval an Overdraft Fee of $22 when a withdrawal was supposedly paid with insufficient funds.  Such an Overdraft Fee contradicts the provision of the Deposit Agreement, which states that "[w]e will not permit withdrawals from your account unless there are sufficient funds available in your account[.]"

impose an overdraft/insufficient available funds fee for paying the overdraft," thereby contradicting other terms of the Deposit Agreement.

49.     The clauses in the "Overdrafts/Insufficient Funds" section are both unconscionable and misleading, as they fail to accurately describe the procedure Citizens Bank uses to determine whether an Overdraft Fee is charged, as discussed *infra*.  The term "available funds" is nowhere defined.  Further, the consumer has no idea what "from time to time" can mean.

50.     Citizens Bank also publishes a pamphlet that is available to customers at its branches entitled Personal Accounts Fees and Features Guide ("Fee Schedules," attached hereto as Exhibit B). Substantially similar Fee Schedules are available for customers in each state in which the Bank conducts business.  If Citizens Bank allows a POS or debit transaction to proceed on an account with insufficient funds, it charges an overdraft fee for each separate overdraft (the "overdraft fee") in accordance with the following schedule:

| Number of Days | Per Item Fee |
|---|---|
| 1 Overdraft Day ……………………………$22 / item | |
| 2 Overdraft Days …………………………..$37 / item | |
| 3 or more Overdraft Days ……………………$39 / item | |

51.     The Deposit Agreement and related documents, including the Fee Schedule, fail to disclose to customers that they have the option to "opt out" from the Bank's overdraft scheme.

### C.     Citizens Bank's Re-Ordering of Checking Account Transactions

52.     In an effort to maximize overdraft revenue, Citizens Bank manipulates and reorders debits from highest to lowest during given periods of time.  Citizens Bank reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can

charge.  This practice violates numerous consumer protection laws and the covenant of good faith and fair dealing in the Bank's Deposit Agreement.

53.     In addition, Citizens Bank misleads its customers regarding its reordering practices.  Instead of unequivocally telling its customers that it will reorder debits from highest to lowest, the Bank states in the Deposit Agreement that it "may pay . . . in any order determined by us."

54.     This statement is deceptive and/or unfair because it is, in fact, the Bank's practice to *always* reorder debits from highest to lowest, and because the Bank groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Deposit Agreement and its customers' reasonable expectations.  The Bank's practices thus violate the covenant of good faith and fair dealing implied in the Deposit Agreement as well as the consumer protection laws of numerous states.

55.     Transactions involving debit cards used by Citizens Bank customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed electronically.  As a result, Citizens Bank is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

56.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Citizens Bank's posting system, it fails to post charges in the order in which they are assessed or received.  Citizens Bank developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order for

the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

57.     Instead of processing such transactions in chronological order, Citizens Bank processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

58.     Citizens Bank refrains from immediately posting charges to a customer's account as it receives them—sometimes for multiple business days.  By holding charges rather than posting them immediately to an account, Citizens Bank is able to amass a number of charges on the account.  Subsequently, Citizens Bank posts all of the amassed charges on a single date.  When the group of charges is eventually posted to the customer's account, Citizens Bank posts them in order of largest to smallest—not in the order in which they were received or in the order in which they were charged.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.  The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

59.     Citizens Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

60.     Citizens Bank enforces an unconscionable policy whereby charges assessed are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.  Citizens Bank's processing practices substantially increase the likelihood

that customers' smaller charges will result in multiple overdraft fees.  The practices provide Citizens Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

61.      As a result, Plaintiffs and members of the Classes have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

### D.      Citizens Bank's Cloaking of Accurate Balance Information

62.      Citizens Bank actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information.  When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

63.      Citizens Bank provides inaccurate balance information to its customers through its electronic network.  In certain cases, Citizens Bank informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual knowledge of outstanding debits and transactions.

64.      Even when Citizens Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customers' account, it encourages the customer to incur more overdraft charges by approving—rather than prudently declining—subsequent debit card purchases and other electronic transactions.

65.      Citizens Bank also assesses overdraft fees at times when actual funds in the customer account are sufficient to cover all debits that have been submitted to the Bank for payment.  It does this by placing a "hold" on actual funds in the customer's account.  In doing so, Citizens Bank charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below

- 16 -

66.     A debit card can be used to make a purchase in two ways:  (1) an Automated Clearing House ("ACH") transaction in which a customer enters his/her PIN number at the point of sale; or (2) an "offline signature" transaction, in which the debit card is treated like a credit card and the customer usually is required to sign a receipt.  In the former, the money is debited from the account instantaneously.  In the latter, the "offline signature" transaction occurs in two parts:  first, authorization for the purchase amount is obtained by the merchant.  Second, the transaction is not actually "settled" (that is, money between the bank and the merchant does not change hands) until the merchant submits the transaction to the bank sometime after the customer's purchase.  Before settlement, "authorization holds" are placed on the customer's account, preventing access to money so held.

### E.     Citizens Bank's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out

67.     At the time its debit cards are used in POS transactions or at ATMs, Citizens Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Citizens Bank could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not do so because it seeks to maximize the amount of revenue generated through its assessment of overdraft fees.

68.     Notwithstanding its technological capabilities and actual knowledge, Citizens Bank fails to provide notice to Plaintiffs and the Classes that a particular debit card transaction will result in an overdraft and, hence, an overdraft fee.  Because Citizens Bank's customers are

not notified of the potential overdraft, and are not given the option of declining the debit card transaction or providing another form of payment, the customers are assessed monetary damages in the form of overdraft fees.

69.     Upon information and belief, at no time did Bank's online account information warn Plaintiff that they had overdrawn, or were going to overdraw, their checking accounts with further purchases.

**F.     Citizens Bank's Overdraft Policies and Practices Are Contrary to Best Practices**

70.     By engaging in the conduct described herein, Citizens Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies").  A copy of the Joint Guidance is attached as Exhibit C.  These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection.  Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

71.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . .  This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

72.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.  When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."  70 F.R.D. 9127, 9132. The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id.*

73.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.  A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit D.

74.     Citizens Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

75.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion:  Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit E, finds that it is now "standard procedure to automatically

enroll checking account customers in their most expensive overdraft loan program." The report finds that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee." The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

76.     A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



G.      **Citizens Bank's Unconscionable Provisions and Policies**

77.      Citizens Bank's overdraft policies and practices are unconscionable in the following respects, among others:

a.      The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a debit card transaction that will overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Deposit Agreement and related documents, including the Fee Schedule, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, the Fee Schedule, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Citizens Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

H.      **Citizens Bank's Overdraft Practices Harmed Plaintiffs**

78.     Citizens Bank's wrongful overdraft policies and practices described above harmed Plaintiffs and members of the Classes.  The following allegations regarding certain of the named plaintiffs are made for purposes of illustrating the harm and damage sustained by Plaintiffs and members of the Classes as a result of Citizens Bank's wrongful overdraft policies and practices.

79.     Plaintiff Jessica Duval is a current checking account customer of Citizens Bank.

80.     In connection with her account, Citizens Bank issued a debit card to Ms. Duval.  A debit card allows customers to access their checking account funds by using the card to execute a transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

81.      Citizens Bank wrongfully charged Ms. Duval overdraft fees on multiple occasions.  For example, Ms. Duval was charged two overdraft fees on August 28, 2009, in the amount of $39.00 each, for a total of $78.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Citizens Bank Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on August 27, 2009** | | | **$229.68** |
| **Date Posted** | **Debit Description** | | | |
| 8/27/2009 | JCS Fashion | $178.20 | | $51.48 |
| 8/27/2009 | Ebays Half.com | $118.49 | | -$67.01 |
| 8/27/2009 | Stop & Shop | $20.56 | | -$87.57 |
| 8/28/2009 | Overdraft Fee | | $39.00 | |

| | | | | |
|---|---|---|---:|---|
| 8/28/2009 | Overdraft Fee | | $39.00 | |
| | | **Total Fees:** | **$78.00** | |

82.　　If Citizens Bank had not manipulated and reordered Ms. Duval's transactions from highest to lowest, she would not have incurred two overdraft fees.

83.　　For instance, if Citizens Bank had posted the transactions from lowest to highest, Ms. Duval would have incurred only one overdraft fee instead of two:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| | | Debits | Fees | Balance |
|---|---|---:|---:|---:|
| | **Beginning Balance on August 27, 2009** | | | **$229.68** |
| **Date Posted** | **Debit Description** | | | |
| 8/27/2009 | Stop & Shop | $20.56 | | $209.12 |
| 8/27/2009 | Ebays Half.com | $118.49 | | $90.63 |
| 8/27/2009 | JCS Fashion | $178.20 | | -$87.57 |
| 8/28/2009 | Overdraft Fee | | $39.00 | |
| | | **Total Fees:** | **$39.00** | |

84.　　Likewise, if Citizens Bank had posted the transactions in chronological order, Ms. Duval would have been assessed only one overdraft fee instead of two:

### Balance Sheet if Debits Were Processed in Chronological Order

| | | Debits | Fees | Balance |
|---|---|---:|---:|---:|
| | **Beginning Balance on August 27, 2009** | | | **$229.68** |
| **Date of Transaction** | **Debit Description** | | | |
| 8/25/2009 | Ebays Half.com | $118.49 | | $111.19 |
| 8/25/2009 | Stop & Shop | $20.56 | | $90.63 |
| 8/25/2009 | JCS Fashion | $178.20 | | -$87.57 |
| 8/28/2009 | Overdraft Fee | | $39.00 | |
| | | **Total Fees:** | **$39.00** | |

85.     Plaintiffs Daniels, Murphy, Mullen, Wood, Taylor, Dwyer, Giordano, Curtis and Hercula are all current and/or former checking account customers of Citizens Bank.

86.     In connection with their accounts, the Bank issued debit cards to Plaintiffs Daniels, Murphy, Mullen, Wood, Taylor, Dwyer, Giordano, Curtis and Hercula.

87.     Citizens Bank wrongfully charged Plaintiffs Daniels, Murphy, Mullen, Wood, Taylor, Dwyer, Giordano, Curtis and Hercula overdraft fees on multiple occasions. These wrongful overdraft fees occurred as a result of the Bank's manipulation and re-ordering of these plaintiffs' debit card transactions.

88.     Citizens Bank failed to notify any of these Plaintiffs that they could be assessed overdraft fees on transactions even though there were sufficient funds in the checking accounts to cover the transaction at the time the transaction was executed.  In addition, Citizens Bank never notified these Plaintiffs, at the time they executed the purported insufficient funds transactions described above, that their checking accounts were overdrawn or that they would be charged an overdraft fee as a result of the transactions.  Furthermore, Citizens Bank paid, rather than returned, all of the debit card charges described above, even though Plaintiffs' accounts purportedly lacked sufficient funds to cover the transactions.

89.     The overdraft charges assessed by Plaintiffs are representative of hundreds of millions of dollars of overdraft fees that Citizens Bank wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

## I.      The Damages Sustained by Plaintiffs and the Classes

90.      As shown by these examples, Citizens Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account.  In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."  *Id.*

91.      According to rules proposed by the Agencies, "[i]njury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

92.      Thus, as a consequence of Citizens Bank's overdraft policies and practices, Plaintiffs and the Classes have been wrongfully forced to pay overdraft fees.  Citizens Bank has improperly deprived Plaintiffs and the Classes of significant funds, causing ascertainable monetary losses and damages.

93.      As a consequence of Citizens Bank's improper overdraft fees, Citizens Bank has wrongfully deprived Plaintiffs and the Classes of funds to which it had no legitimate claim.

94.      Plaintiffs had sufficient funds to cover at least some of the transactions for which they and the Classes were charged overdraft fees.  Plaintiffs and members of the Classes

- 25 -

either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Citizens Bank could impose these wrongful charges.  In many instances, Citizens Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiffs and Class members.

95.      All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**[4]
**(On Behalf of the National Class)**

96.      Plaintiffs repeat paragraphs 1 through 95 above.

97.      Plaintiffs and Citizens Bank have contracted for bank account deposit, checking, ATM and debit card services, as embodied in Citizens Bank's Deposit Agreement and related documentation.

98.      Under the laws of the states where Citizens Bank does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

---

[4] Certain states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.  For the sake of convenience in this multi-district litigation, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

99.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

100.    Citizens Bank has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

101.    Plaintiffs and the National Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

102.    Plaintiffs and members of the National Class have sustained damages as a result of Citizens Bank's breach of the covenant of good faith and fair dealing.

<u>SECOND CLAIM FOR RELIEF</u>
<u>Unconscionability</u>
**(On Behalf of the National Class)**

103.    Plaintiffs repeat paragraphs 1 through 95 above.

104.    Citizens Bank's overdraft policies and practices are substantively and procedurally unconscionable in the following respects, among others:

a.      The Bank does not disclose or reasonably disclose to customers that they have the option to "opt out" of the Bank's overdraft scheme;

b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that will overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Deposit Agreement and related documents, including the Fee Schedule, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, the Fee Schedule, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Citizens Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

105.      Considering the great business acumen and experience of Citizens Bank in relation to Plaintiffs and the National Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

106.      The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $39 charge on an overdraft of less than $39) is itself unconscionable. Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

107.     Plaintiffs and members of the National Class have sustained damages as a result of Citizens Bank's unconscionable policies and practices as alleged herein.

### THIRD CLAIM FOR RELIEF
#### Conversion
#### (On Behalf of the National Class)

108.     Plaintiffs repeat paragraphs 1 through 95 above.

109.     Citizens Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

110.     Citizens Bank has wrongfully collected overdraft fees from Plaintiffs and the members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

111.     Citizens Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Class, without legal justification.

112.     Citizens Bank continues to retain these funds unlawfully without the consent of Plaintiffs or members of the National Class.

113.     Citizens Bank intends to permanently deprive Plaintiffs and the members of the National Class of these funds.

114.     These funds are properly owned by Plaintiffs and the members of the National Class, not Citizens Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the National Class.

115.     Plaintiffs and the members of the National Class are entitled to the immediate possession of these funds.

116.     Citizens Bank has wrongfully converted these specific and readily identifiable funds.

117.    Citizens Bank's wrongful conduct is continuing.

118.    As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Class have suffered and continue to suffer damages.

119.    By reason of the foregoing, Plaintiffs and the members of the National Class are entitled to recover from Citizens Bank all damages and costs permitted by law, including all amounts that Citizens Bank has wrongfully converted.

### FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the National Class)

120.    Plaintiffs repeat paragraphs 1 through 95 above.

121.    Plaintiffs, on behalf of themselves and the National Class, assert a common law claim for unjust enrichment.

122.    By means of Citizens Bank's wrongful conduct alleged herein, Citizens Bank knowingly provides banking services to Plaintiffs and members of the National Class that are unfair, unconscionable, and oppressive.

123.    Citizens Bank knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National Class.  In so doing, Citizens Bank acted with conscious disregard for the rights of Plaintiffs and members of the National Class.

124.    As a result of Citizens Bank's wrongful conduct as alleged herein, Citizens Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National Class.

125.    Citizens Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

126.     Under the common law doctrine of unjust enrichment, it is inequitable for Citizens Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiffs and members of the National Class in an unfair, unconscionable, and oppressive manner.  Citizens Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

127.     The financial benefits derived by Citizens Bank rightfully belong to Plaintiffs and members of the National Class.  Citizens Bank should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the National Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Citizens Bank traceable to Plaintiffs and the members of the National Class.

128.     Plaintiffs and members of the National Class have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### Violations of State Unfair Trade Practice Laws
### (On Behalf of the State Subclasses)

129.      Plaintiffs repeat paragraphs 1 through 95 above.  This claim is asserted on behalf of the members of each State Subclass under their respective consumer protection statutes.

130.     Citizens Bank's business practices relating to the imposition of overdraft fees on consumers violate Massachusetts General Laws Chapter 93A §§ 2 and 9.

131.     Plaintiffs have met their notice obligation pursuant to M.G.L. c. 93A, § 9(3) to provide notice to Citizens Bank.  On behalf of Eric Daniels and the entire class, at least thirty days prior to the filing of this action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, was mailed or delivered to Citizens Bank.

132.     Citizens Bank's business practices relating to the imposition of overdraft fees on consumers violate New York Gen. Bus. Law §§ 349.

133.     Citizens Bank engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*

134.     Citizens Bank's business practices relating to the imposition of overdraft fees on consumers violate Rhode Island's Deceptive Trade Practices Laws, R.I. Gen. Laws § 6-13.1, *et seq.*

135.     Citizens Bank engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of Vermont Stat. Ann. tit. 9, §§ 2451 *et seq.*

136.     As redress for Citizens Bank's repeated and ongoing violations of these consumer protection statutes, Plaintiffs and the State Subclasses are entitled to, *inter alia*, damages and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.     Declaring Citizens Bank's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.     Restitution of all overdraft fees paid to Citizens Bank by Plaintiffs and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.     Disgorgement of the ill-gotten gains derived by Citizens Bank from its misconduct;

4.     Actual damages in an amount according to proof;

5.     Punitive and exemplary damages;

- 32 -

6.      Pre-judgment interest at the maximum rate permitted by applicable law;

7.      Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.      Such other relief as this Court deems just and proper.

Dated:      June 7, 2010.

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@abbrclaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@abbrclaw.com
ALTERS BOLDT BROWN
  RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Plaintiffs' Lead Counsel*

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Barry R. Himmelstein
Barry R. Himmelstein, Esquire
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Jordan S. Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esquire
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webbllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No. 0188015
mhutts@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Ave. – Suite 1100
Dallas, TX 75219
Tel: 214-521-3605/ Fax: 214-520-1181

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on June 7, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/ Robert C. Gilbert</u>
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS BOLDT BROWN
RASH & CULMO, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@abbrclaw.com