IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-MD-02036-JLK

|  |  |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION<br><br>MDL NO. 2036 | )<br>)<br>)<br>)<br>)<br>)<br>) |

|  |  |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>*Lopez v. JPMorgan Chase Bank, N.A.*<br>S.D. Fla. Case No. 1:09-cv-23127-JLK | )<br>)<br>)<br>)<br>)<br>)<br>) |

### JPMORGAN CHASE BANK, N.A.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO STAY PROCEEDINGS RELATING TO CLAIMS OF PLAINTIFFS LARSEN, LOWE, PALACIOS, PALACIOS, AND WALSH-DUFFY

*Plaintiffs misperceive the nature of Chase's motion and the relief it seeks.* Chase has moved the Court to stay proceedings, in favor of arbitration, only as to the individual claims of the five New Plaintiffs added to this case for the first time on April 12, 2010 (Larsen, Lowe, Palacios, Palacios, and Walsh-Duffy). Such a stay is required by Section 3 of the Federal Arbitration Act ("FAA") whenever the District Court has before it a claim for litigation that is subject to an enforceable arbitration contract, and a party requests such a stay. Chase is *not* asking this court to stay proceedings as to the individual claims of the Original Plaintiffs (Lopez, Stone, Reed, and McDaniel), and the case will presumably go forward as to those Original Plaintiffs. The law is very clear—and plaintiffs do not cite any contrary authority—that Chase is entitled to elect arbitration with respect to some plaintiffs and forego arbitration with respect to others.

*Waiver*.  Plaintiffs' contention that Chase somehow waived its rights respecting arbitration by not filing its motion to stay the New Plaintiffs' claims in this Court last December is wholly misconceived.  The New Plaintiffs *did not have any claims pending* in this Court last December, so there was no basis for Chase to file any request to stay any such claims, by them, at that time.  Chase promptly filed its motion to stay the claims of the New Plaintiffs as soon as any response was due to their complaint, and before engaging in any substantive litigation proceedings with respect to them.

*Unconscionability*.  The New Plaintiffs' arguments that their arbitration contracts are unenforceable under the FAA are incorrect.  The asserted ground for their claim is that they will have to arbitrate on an individual—not class—basis.  But the cases they cite do not support the argument that individual treatment would be unconscionable in this instance:  They have *not* submitted any affidavit or other proof (as some others have, in other cases) that they would be unable to afford to arbitrate their claims on an individual basis, or otherwise be unable to vindicate their rights in arbitration.  Indeed, they recognize that Chase will pay the arbitration costs, if requested.  There is no viable theory of unconscionability.  As this Court stated in its Order enforcing the arbitration agreements of Huntington Bank, "[u]nder the facts of this case . . . the potential costs of arbitrating a claim would not deter potential plaintiffs from seeking to vindicate their rights in an arbitral forum."  Order Granting Motion to Compel Arbitration, *Gulley v. Huntington Bancshares Incorp., et al.* ("*Gulley* Order") [Dkt. No. 514] at 7.  No legal authority, State or Federal, supports the contention that the New Plaintiffs can say "no" to their arbitration contracts simply because they would now prefer to litigate instead in order to bring a class action.  And even if State law purported to so provide, it would be preempted by the FAA. Plaintiffs' brief does not even try to respond to the clear authority, presented by Chase, holding

that the FAA's Federal command to arbitrate would preempt any State law purporting to invalidate the written arbitration contracts here.

## ARGUMENT

### I. Chase Has Not Foresworn Enforcement Of Its Arbitration Agreements

Plaintiffs' brief opens with a pure red herring:  They are flatly wrong in arguing that JPMorgan Chase Bank, N.A., the defendant here, has ever said that it would stop invoking its arbitration contracts.  Plaintiffs' Opposition ("Opp.") [Dkt. No. 557] at 3-6.  The bank has never said so, and plaintiffs advance no evidence that it has.

Plaintiffs say that a sister bank, located in a different State, and whose business is limited to credit cards—which are not involved in this case—has stopped seeking to enforce *its* arbitration agreements with respect to *its credit-card* accounts, and so it has.  But that is a different bank, not a party here, whose business is not a subject of this lawsuit—as plaintiffs ultimately acknowledge.

Nor is JPMorgan Chase Bank, N.A. a party to the *Ross* case that plaintiffs cite, which involves the *credit-card bank*.  And it is obvious—both because JPMorgan Chase Bank, N.A. is not a party to the litigation at all, and because it nowhere appears on the document itself, *see* Opp., Exh. A—that the bank is not covered by the settlement in that case.  Nor has any of the plaintiffs provided evidence (by affidavit or otherwise) that they have ever received any communication from the bank defendant here saying it has stopped seeking to enforce its arbitration contracts with deposit customers.  Nor does anything in Chase's deposit agreement, which is the contract that establishes the arbitration terms, provide in any way that the actions of the credit-card bank relieve plaintiffs from their obligations to arbitrate deposit-account claims.

## II. Chase Has Not Waived Its Right To Arbitrate The Claims Of Plaintiffs Larsen, Lowe, Palacios, Palacios, And Walsh-Duffy

Plaintiffs next argue that Chase waived its right to invoke the arbitration contracts with the New Plaintiffs—Larsen, Lowe, Palacios, Palacios, and Walsh-Duffy—because Chase did not file its motion to stay their claims herein at the time it moved against the original *Lopez* complaint, in December 2009. The argument makes no sense: Chase *could not have filed* a motion to stay the claims of any of these individuals at that time, *because none of these individuals had a pending claim in this Court at that time.* It is difficult to imagine the motion that plaintiffs say Chase should have filed in this Court in December with respect to these then-non-parties and their then-non-existent claims.[1]

Chase could have filed a motion in December to stay the claims of the *original Lopez* named plaintiffs. But Chase is not now seeking, and did not then seek, to require those Original Plaintiffs—Lopez, Stone, Reed, and McDaniel—to proceed by arbitration. Chase will litigate (rather than arbitrate) the claims of the Original Plaintiffs, and this case will presumably proceed as to them while the claims of the New Plaintiffs are stayed for arbitration. But Chase does not agree to litigate with the New Plaintiffs, which is why it has invoked its arbitration contracts *with them*. Chase's decision to litigate with Lopez, Stone, Reed, and McDaniel does not constitute any waiver of Chase's right to invoke arbitration with respect to Larsen, Lowe, Palacios, Palacios, and Walsh-Duffy, who are entirely distinct customers, with separate accounts, who are asserting *personal* claims arising out of those separate accounts. It is clear law that Chase may invoke its arbitration contracts with some customers, even if it has not elected to arbitrate similar

---

[1] Moreover, there was no reason in December 2009 to imagine that the New Plaintiffs would be added to the complaint: At that time, these proceedings were controlled by the Court's order of November 6, 2009 [Dkt. No. 134], which precluded filing "any new or amended complaint on behalf of any plaintiff against JPMorgan Chase Bank, N.A. concerning the subject matter covered in this proceeding . . . [after] November 9, 2009." Nov. 6, 2009 Order ¶ 5.

disputes with other, unrelated customers. *See, e.g.*, *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 132 (2d Cir. 1997); *Bischoff v. DirecTV, Inc.*, 180 F. Supp. 2d 1097, 1113 (C.D. Cal. 2002) ("[T]o hold that defendant can no longer assert its right to compel arbitration simply because it did not assert that right in another case is absurd. . . ."). This case law applies with full force in the context of class actions. *See In re Onstar Contract Litig.*, MDL No. 1867, 2009 WL 3270577, at *5 (E.D. Mich. Oct. 2, 2009) (finding no waiver of an arbitration provision as to claims asserted by new named plaintiffs in class action); *McGinnis v. T-Mobile USA, Inc.*, No. C08-106Z, 2009 WL 4824002, at *3 (W.D. Wash. Dec. 9, 2009) (same); *Lawrence v. Household Bank (SB), N.A.*, 343 F. Supp. 2d 1101, 1113 (M.D. Ala. 2004) (finding no waiver of an arbitration provision as to pending claims in a separate lawsuit filed by potential class members, where defendant previously entered into settlement in related class action).[2] Plaintiffs do not argue to the contrary; much less advance contrary legal authority.[3]

"[A]ny party arguing waiver of arbitration bears a heavy burden of proof." *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990), and the New Plaintiffs do not meet that burden here. A waiver only occurs "when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate *and this participation results in*

---

[2] That the case is styled as a class action makes no difference to the principle that Chase may litigate with some customers, and invoke its arbitration contracts with others. Moreover, class treatment has not been certified (or even sought, at this point) and the New Plaintiffs are seeking to litigate as named parties rather than absent class members.

[3] Plaintiffs assert that the New Plaintiffs "did not allege any new facts or causes of action against Chase" (Opp. at 6), but that is wrong. First, the New Plaintiffs allege claims of liability *personal to them*, *based on the facts of their own accounts*, which are new. Second, the New Plaintiffs allege *new types of claims* that previously did not exist in this case—specifically, they allege liability under the State unfair trade practice laws of Illinois, New York, Washington. *See* Am. Cplt. [Dkt. No. 347] ¶¶ 135-137. The Original Plaintiffs had no standing to advance claims under these statutes, and this Court had no jurisdiction over any such claims under the prior complaint, as this Court held in its March 10, 2010, decision. *In re Checking Account Overdraft Litig.*, No. 09 MD 2036, 2010 WL 841305, at *18 (S.D. Fla. Mar. 11, 2010).

*prejudice to the opposing party.*"  *Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1366 (11th Cir. 1995) (emphasis added).  New Plaintiffs Larsen, Lowe, Palacios, Palacios, and Walsh-Duffy—the "opposing part[ies]" for these purposes—added themselves to the complaint only on April 12, and Chase promptly invoked their arbitration obligations, without engaging in any litigation activities against the New Plaintiffs or causing prejudice to them.

      Plaintiffs' advance a fallback "waiver" argument, but it is also incorrect.  They contend that Chase waived its right to invoke their arbitration obligations because it did not participate in the Court's hearing on Tuesday, April 20, 2010, at which the Court heard argument on then-pending arbitration motions in six cases involving banks other than Chase.  By its Order Scheduling Oral Argument On All Pending Motions To Compel Arbitration, entered April 14, 2010 [Dkt. No. 360], the Court invited all parties to participate in the hearing.  But Chase did not have any pending arbitration motion.  Moreover, the New Plaintiffs had been added to the complaint addressed herein only forty-eight hours before.  At that time, Chase had not been able even to identify the accounts of the New Plaintiffs, nor examine what arbitration terms might apply to them.  And based on the information it had at hand, Chase did not then expect it would invoke arbitration with respect to the New Plaintiffs.  Accordingly, Chase advised the Court immediately, on April 16, 2010, that, "not having had an opportunity to examine the particulars with respect to the accounts of these individuals, nor to examine any arbitration terms that may apply to their accounts, Chase wishes to reserve its rights with respect to the claims of [the New Plaintiffs], until it is otherwise due to respond to the new complaints."  Response of JPMorgan Chase Bank, N.A. to Order of the Court dated April 14, 2010 Regarding Arbitration ("Chase Response") [Dkt. No. 367] at 2.  In the ensuing month, Chase had an opportunity to examine the

- 6 -

New Plaintiffs' claims, and it determined to invoke their arbitration obligations. It has taken no action in the interim that would prejudice the New Plaintiffs, and accordingly should not be deemed to have waived its otherwise-existing right to invoke arbitration.

Plaintiffs advance a further fallback waiver argument, but it is also wrong. They appear to argue at page 9 of their brief that Chase should have filed its motion to stay at some (unspecified) date, before Chase was due to answer the amended complaint under Rule 12 (if an answer were to be filed). They cite no authority for this proposition, and it finds no support in the logic of Rule 12 or otherwise. Plaintiffs have advanced no reason and no authority to support any conclusion that the New Plaintiffs have been prejudiced by any delay on Chase's part, when Chase has invoked its arbitration rights promptly after they added themselves to the complaint, as soon as any response of any kind was due, and without engaging in any litigation activities against them in the interim.

### III. The New Plaintiffs' Arbitration Agreements Are Not Unenforceable On Unconscionability Grounds

#### A. Enforcement Of The Arbitration Contracts Would Not Be Unconscionable

Plaintiffs argue that it would be unconscionable to enforce their agreements to arbitrate on an *individual* basis, because they would now like to proceed on a *class* basis. But § 2 of the FAA is explicit that an arbitration agreement is binding even though it was entered into before any dispute arises, when the parties do not know what forum or procedures they might later find more advantageous. Moreover, Chase's opening brief reviewed the cases dealing with claims of unconscionability in such instances, and showed why plaintiffs' arguments, even on their own terms, are wrong. Plaintiffs' brief struggles mightily, and unsuccessfully, to get around the fact that the New York Appellate Division has specifically rejected their unconscionability argument in *Tsadilas v. Providian National Bank*, 13 A.D. 3d 190 (N.Y. App. Div. 1st Dep't 2004)—as

have other New York decisions. Nor do they come to grips with the phalanx of cases, under Illinois law, routinely enforcing arbitration contract that are indistinguishable from Chase's. *See, e.g.*, Chase Opening Br. at 13-16 (collecting cases).

The core problem with plaintiffs' unconscionability argument is more fundamental. When courts have declined to enforce arbitration provisions on "no-class arbitration" grounds, they have reached that conclusion because the opponent to arbitration has shown that he or she could not vindicate his or her legal rights if required to proceed individually. In this case, however, the New Plaintiffs do not advance any evidence that they would be unable to vindicate their claims through an individual arbitration. Unlike in some other cases, they do not submit affidavits so demonstrating, or even establishing that the costs of arbitration bar their way. They have that burden, and they have not met it. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *In re Managed Care Litig.*, No. 00 MD 1334, 2009 WL 856321, at *3 (S.D. Fla. Mar. 30, 2009) ("It is the burden of the party challenging a facially valid arbitration agreement to demonstrate that the agreement is in fact unconscionable."). The reason is quite plain: Chase pays for the arbitration process, the individual customer does not (as Chase explained in its opening brief at pages 3-4, 13)—a fact that plaintiffs do not even attempt to dispute.[4]

The situation presented here is like the one addressed in the Court's Order enforcing the arbitration contracts of Huntington Bank. Here, as there, "[u]nder the facts in this case, the Court

---

[4] In addition, plaintiffs' argument about procedural unconscionability respecting New Plaintiffs Larsen, Palacios, and Palacios is based in part on a misstatement at page 18 of their opposition, about the account terms and disclosures they received when their account terms transitioned from WaMu term to Chase terms. *See* JPMorgan Chase Bank, N.A.'s Reply Brief in Support of Its Motion to Stay Proceedings Relating to Claims of Plaintiffs Williams, Biss, Ruiz, Ruiz, Kirkland, and Miller, at 3 n.2.

finds that the potential costs of arbitrating a claim would not deter potential plaintiffs from seeking to vindicate their rights in an arbitral forum." *Gulley* Order at 7.

### B.     The FAA Precludes Invalidation On Unconscionability Grounds Here

Even if  Illinois, New York, or Washington State law would require Chase to arbitrate on a class basis as a condition of having an enforceable arbitration provision—which is not correct—the FAA would preclude application of any such State-law doctrine.  As the Supreme Court and the Eleventh Circuit have recognized, the FAA is "pre-emptive of state laws hostile to arbitration."  *Circuit City v. Adams*, 532 U.S. 105, 119 (2001); *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331 n.3 (11th Cir. 2005).  In its recent decision in *Stolt-Nielsen*, the Supreme Court held that, under the FAA, arbitration agreements presumptively do not allow for class arbitration.  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1774-75 (2010) ("Underscoring the consensual nature of private dispute resolution," and finding that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator").  To the extent that Illinois, New York, or Washington State law deems an arbitration agreement unconscionable unless it does provide for class arbitration, that State law is contrary to the FAA itself as definitively interpreted by the Supreme Court in *Stolt-Nielson*.  *Stolt-Nielson* held that it is up to the parties—not State law—to decide the "rules under which any arbitration will proceed" and "with whom they choose to arbitrate their disputes." *Id.* at 1774.  Contrary State law is preempted.  *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996) (deeming State law preempted by § 2 of the FAA because "[t]he 'goals and policies' of the FAA, this Court's precedent indicates, are antithetical to threshold limitations placed specifically and solely on arbitration provisions"); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005).  Indeed, it is clear that any "state-law principle that takes its meaning

precisely from the fact that a contract to arbitrate is at issue does not comport with [the FAA]." *Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). *See generally* Chase Opening Br. at 7-10, 18-19.

### C. There Is Nothing Wrong With The AAA

Plaintiffs' final argument is that the AAA is incompetent to arbitrate their claims. Plaintiffs identify no evidentiary basis for the assertion, and there is none. There has been no finding by any Court (nor any other authority) that AAA arbitration of claims is biased or unfair.[5] Nor do they advance any evidence that there has been any statement by the AAA that it will decline to handle arbitrations initiated by consumers against businesses. *See* Chase Opening Br. at 4 n.6. The Court's Order in the Huntington Bank case specifically envisioned AAA arbitration. *Gulley* Order at 8, 12. Moreover, the Supreme Court has made clear that "challenges to the adequacy of arbitration procedures are insufficient to preclude arbitration," and that the court must not "indulge [the plaintiff's] speculation that the parties and the arbitral body will not retain competent, conscientious, and impartial arbitrators." *Gilmer*, 500 U.S. at 30-31; *see also Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 687 (S.D. Fla. 2001) (under the FAA, review "of an arbitrator's qualifications or alleged bias . . . are confined under the statute to judicial decisions to confirm, modify, or vacate an arbitration award *after* a final arbitration decision has been made").

### CONCLUSION

The claims of the New Plaintiffs should be stayed in favor of arbitration.

---

[5] The opposite is true. *See, e.g.*, *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 981 (2d Cir. 1996) ("Defendants have failed to present any credible evidence indicating bias on the part of the AAA—or its arbitrators—in favor of DAI in this case, particularly because Defendants' claims have not yet gone to arbitration.").

Dated:  June 14, 2010

        WILMER CUTLER PICKERING HALE
         AND DORR LLP

        s/ Christopher R. Lipsett
        Christopher R. Lipsett
        (chris.lipsett@wilmerhale.com)
        David S. Lesser
        (david.lesser@wilmerhale.com)
        Alan E. Schoenfeld
        (alan.schoenfeld@wilmerhale.com)
        399 Park Avenue
        New York, New York 10022
        tel: (212) 230-8851
        fax: (212) 230-8888

        *Attorneys for defendant JPMorgan Chase Bank, N.A.*