**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT )
OVERDRAFT LITIGATION )**

**THIS DOCUMENT RELATES TO: )
DAVID M. JOHNSON v. KEYBANK )
NATIONAL ASSOCIATION )
W. D. Wa. Case No. 2:10-304 )**

**~~[PROPOSED]~~ ORDER GRANTING KEYBANK'S
MOTION TO SUBSTITUTE REDACTED EXHIBIT**

THIS CAUSE having come before the Court on KeyBank's Motion to Substitute Redacted Exhibit "A" to KeyBank's Reply in Support of Motion to Compel Arbitration, and the Court having considered the Motion and other pertinent portions of the record, and good cause being shown as required by Federal Rule of Civil Procedure 5.2(e), it is hereby

ORDERED AND ADJUDGED that the Clerk shall substitute the attached redacted Exhibit "A" to KeyBank's Reply in Support of Motion to Compel Arbitration and Stay All Proceedings [DE 530-1] in the Court file.

DONE AND ORDERED at the James Lawrence King Federal Justice Building in Miami, Florida this 17 day of June 2010.

James Lawrence King
Honorable James Lawrence King
United States District Judge

Copies furnished to Counsel of Record
Attached: Redacted Version of Exhibit A

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**THIS DOCUMENT RELATES TO:**
**DAVID M. JOHNSON v. KEYBANK NATIONAL ASSOCIATION**
**W. D. Wa. Case No. 2:10-304**

**DECLARATION OF RAY FREAS**

BEFORE ME, the undersigned authority, personally appeared RAY FREAS who, being first duly sworn upon oath, deposes and says that:

1. My name is Ray Freas and I am over the age of eighteen years and am competent to make the following declaration.

2. I have been employed with KeyBank National Association ("KeyBank") since September 28, 1998. I am the National Manager of Print and Statement Rendering, and have been employed in this position since January 2002. I am authorized to make this declaration on behalf of KeyBank. I declare under penalty of perjury that the statements herein are true and correct. I make this declaration based upon my personal knowledge including knowledge I derived from my review of the relevant account records of David M. Johnson maintained by KeyBank in the ordinary course of business.

3. In my position as National Manager of Print and Statement Rendering, I have responsibility for the printing and mailing of all KeyBank deposit account statements, including

inserts and attachments that from time to time are sent via United States mail to account owners with their account statements.

4. My review of the KeyBank accounts of David M. Johnson ("Johnson") reveal that on November 27, 1991, Johnson opened a KeyBank deposit account having an account number ending in -9235. On October 11, 2001, that deposit account was replaced with a joint checking account in the names of David M. Johnson and Anna G. Copley ("Copley"), as joint owners of the account. That joint checking account remains open at this time at KeyBank with the same account number ending in -9235.

5. On October 11, 2001, Johnson and Copley both signed a new signature card for the account number ending in -9235, replacing the deposit account with a joint checking account. Each co-owner, by signing the signature card, acknowledged that their joint checking account was subject to KeyBank's Deposit Account Agreement ("Agreement"), and each co-owner acknowledged their receipt of a copy of the Agreement. A true and correct copy of the signature card for the joint checking account ending in -9235, and which is the subject of Johnson's Complaint, is attached hereto as Exhibit 1.

6. Since 1991, David M. Johnson has opened no less than six (6) additional bank accounts at KeyBank. In chronological order, using the date the account was opened, these accounts are:

| Last Four Digits of Account No. | Date Account was opened | Type of Account | Current Status of Account |
|---|---|---|---|
| -9979 | June 14, 2003 | Joint Savings Acct. (Johnson and Copley) | Closed on 3/3/05 |

| | | | |
|---|---|---|---|
| -9995 | Aug. 14, 2003 | Custodial Savings Acct. (David M. Johnson for minor Gabriella Johnson) | Open |
| -2610 | June 4, 2004 | Interest Bearing Checking Acct. (Johnson and Copley) | Open |
| -6040 | June 9, 2005 | Custodial Savings Acct. (David M. Johnson for minor Olivia A. Johnson) | Open |
| -4464 | April 3, 2007 | Business Checking Acct. (David M. Johnson for OLLA, LLC) | Open |
| -2145 | Dec. 23, 2008 | Business Checking Acct. (David M. Johnson for OLLA, LLC) | Open |

7. The KeyBank signature card, signed by Johnson on October 11, 2001 for the joint account ending in -9235 (and on subsequent dates for other accounts) is a document entitled "Account Express Plan," and contains the following statements:

- "The [Account Express] Plan is the signature card for all accounts opened under this Plan."
- "I understand that all accounts opened under this Plan are subject to the Deposit Account Agreement."

- "I acknowledge receiving a copy of the agreement, and a written disclosure of the interest rate, annual percentage yield, fees and other terms and disclosures relating to the account opened at the time the Plan was signed."

[See, Exhibit 1 attached hereto].

8. As the National Manager of Print and Statement Rendering at KeyBank in the year 2004, I can attest to the fact that David M. Johnson was sent, via U.S. mail, the "Arbitration Statement Message," attached hereto as Exhibit 2, on his **June 30, 2004** Account Statement for the joint checking account ending with account number –9235 (the account that is the subject of this lawsuit). The Arbitration Statement Message informs the account owner that effective October 1, 2004, the Deposit Account Agreement and Funds Availability Policy will be amended to include an Arbitration Provision, encloses the wording of the newly added Arbitration Provision in a pamphlet [Exhibit 3 hereto], and informs the account owner it will apply to the account unless it is rejected in writing by **November 1, 2004**. [See Exhibit 2].

9. Johnson's June 30, 2004 Account Statement for the joint checking account ending in -9235 included the Arbitration Provision insert, which was a pamphlet enclosed with the account statement, a true and correct copy of which is attached hereto as Exhibit 3.

10. Johnson was also sent, via U.S. mail, his **June 30, 2004** Key Saver Statement for his account ending in -9979. This June 30, 2004 account statement also contained the Arbitration Statement Message (a true and correct copy of which is attached hereto as Exhibit 2) informing Johnson that an Arbitration Provision was being added to his Deposit Account Agreement and Funds Availability Policy, and would become effective October 1, 2004, unless rejected in writing by **November 1, 2004**.

11. Johnson's June 30, 2004 Key Saver Statement for his account ending in -9979 included the Arbitration Provision insert, which was a pamphlet enclosed with the account statement, a true and correct copy of which is attached hereto as Exhibit 3.

12. Johnson was also sent, via U.S. mail, his quarterly DinoSaver Statement dated **August 15, 2004** for his account ending in -9995. This August 15, 2004 account statement also contained the Arbitration Statement Message (a true and correct copy of which is attached hereto as Exhibit 2) informing Johnson that an Arbitration Provision was being added to his Deposit Account Agreement and Funds Availability Agreement, and would become effective October 1, 2004, unless rejected in writing by **November 1, 2004**.

13. Johnson's August 15, 2004 DinoSaver Statement for his account ending in -9995 included the Arbitration Provision insert, which was a pamphlet enclosed with the account statement, a true and correct copy of which is attached hereto as Exhibit 3.

14. The accounts opened by Johnson on June 4, 2004, June 9, 2005, April 3, 2007, and December 23, 2008, (listed above in paragraph 6 of my declaration), were opened subject to a Deposit Account Agreement and Funds Availability Policy that contained the Arbitration Provision, including a 60-day period allowing the account owner to reject the Arbitration Provision by providing written notice within 60 days of opening their account. Therefore, for these accounts, there was no need for mailing out a notice of amendment.

I declare under penalty of perjury that the foregoing is true and correct. Executed on MAY 28TH, 2010.

[signature] MAY 28, 2010
Ray Freas Date

9042380.1

**NOTARY CERTIFICATION**

Before me, a Notary Public in and for the State of Ohio, came Ray Freas of Cleveland, Ohio, and affixed his signature of his own free will attesting that the information in this Affidavit is true and correct.

Hope Castro May 28, 2010
Notary Public Date

NOTARIAL SEAL STATE OF OHIO

HOPE L. CASTRO
Notary Public
State of Ohio
My Commission Expires
August 3, 2013

# Exhibit 1

2/2

10/01/01 Supercedes All Previous

KeyBank

**Account Express℠ Plan** ☐ New ☒ Replacement

Former UDA#

| Primary Account # | Primary Product Code | Ownership | Open Date |
|---|---|---|---|
| | | JOINT | 11/27/1991 |

| | | | |
|---|---|---|---|
| C1 DAVID M JOHNSON | | | |
| C2 ANNA G COPLEY | | | |
| C3 | | | |
| C4 | | | |

| Statement Mailing Address | Legal Mailing Address (if different from statement) |
|---|---|
| PO BOX 4331<br>SEATTLE, WA 98104-0331 | |

| ID/Comments | Mother's Maiden Name |
|---|---|
| | |

| Check Systems | Verified By: | Waived By: | Place of Employment |
|---|---|---|---|
| C1<br>C2<br>C3 | | | |

| Residence Phone | Employment Phone | Primary Identification Type | Secondary Identification Type |
|---|---|---|---|
| C1<br>C2<br>C3 | | | |

| Opened by: | Officer Code: | KeyCenter #: | KeyCenter Phone |
|---|---|---|---|
| HARTLEY, DINAH CAROLINE | DCH0J | 00168 | |

This Account Express Plan ("Plan") authorizes KeyBank National Association (the "Bank"), at its discretion, to open one or more personal deposit accounts (including checking accounts, savings accounts, certificates of deposit but excluding passbook savings accounts) upon the receipt of electronic, written or oral instructions from the [illegible] signs below, upon the receipt of electronic, written or oral instructions from any one of us without obtaining a signature [illegible] understand that all deposit accounts opened by me will be owned by me (or by us, if more than one person signs below) in the same capacity. (For example, if we open a joint account, all other accounts opened by us under this Plan will be jointly owned by us. Any other account ownership will require a separate Plan.) I understand that the accounts will be opened when the funds are received at the Bank. This Plan is the signature card for all accounts opened under this Plan.

I authorize the Bank, at its discretion (i) to act upon instructions from any of us to deposit, withdraw or transfer funds to or from any other accounts (except passbook savings) at the Bank when opening new accounts (ii) to recognize and honor the signature of any of us on checks (if withdrawal by check is permitted) and withdrawal slips and honor any other electronic, written or oral requests for withdrawals or transfers of funds, including transfers to the Bank or to third parties and (iii) to act upon instructions from any of us for the transaction of any business on any accounts covered by this Plan. I agree that the Bank may receive instructions from any of us via any means including electronic [illegible] computer, telephone, US mail or in person at the Bank.

I understand that all accounts opened under this Plan are subject to the Deposit Account Agreement. I acknowledge receipt of a copy of the agreement, and a written disclosure of the interest rate, annual percentage yield, fees and other terms and disclosures relating to the account opened at the time this Plan was signed.

Attention New Customers: The information you are providing to open your new KeyBank account is subject to review and verification. KeyBank reserves the right to close your account in the event we are unable to verify, to our satisfaction, the information you provided.

*I understand the following tax certification applies to all accounts opened under this Plan.*

*Under penalties of perjury, I certify that: 1) the number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and 2) I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service that I am subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and 3) I am a U.S. person (including a U.S. resident alien).*

*You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax returns.*

*If you are a foreign person, cross out* [illegible] *U.S. person on the line next to your signature* [illegible] *Complete the appropriate Form W-8.*

The Internal Revenue Service does not require your consent to any provisions of this document other than the certifications required to avoid backup withholding.

| Signature of U.S. Person 1 | TIN | Date |
|---|---|---|
| [signature] | | 10/11/01 |
| **Signature of U.S. Person 2** | | **Date** |
| Anna G. Copley | | 10/11/01 |
| **Signature of U.S. Person 3** | TIN | **Date** |
| | | |

New Account Information

| New Account No. | | New Acct Type: ☐ DDA ☐ CDA |
|---|---|---|
| TIN | Sub Prod. Code | Source of Funds |

| New Account No. | | New Acct Type: ☐ DDA ☐ CDA |
|---|---|---|
| TIN | Sub Prod. Code | Source of Funds |

| New Account No. | | New Acct Type: ☐ DDA ☐ CDA |
|---|---|---|
| TIN | Sub Prod. Code | Source of Funds |

| New Account No. | | New Acct Type: ☐ DDA ☐ CDA |
|---|---|---|
| TIN | Sub Prod. Code | Source of Funds |

# Exhibit 2

**KEYBANK NATIONAL ASSOCIATION**

**ARBITRATION STATEMENT MESSAGE**

**NOTICE OF AMENDMENT TO DEPOSIT ACCOUNT AGREEMENT AND FUNDS AVAILABILITY POLICY**

This notice informs you of changes to the Deposit Account Agreement and Funds Availability Policy ("Agreement") that will be effective and will apply to your Account as of October 1, 2004. This Arbitration Provision replaces any existing arbitration provision in your Agreement. You have the right to reject the changes to the Agreement as explained below. Please note that if you do not receive a paper statement, you will receive the new Arbitration Provision under separate cover.

The enclosed Arbitration Provision will apply to your Account(s) unless you notify us in writing by November 1, 2004 that you reject the Arbitration Provision. Send your rejection notice to KeyBank National Association, P.O. Box 93752, Cleveland, Ohio 44101-5752 Your notice must include your name, the names of any joint account holders and your Account number(s) and must be signed by you and all joint account holders. Your rejection notice should not include any other correspondence. Calling us to reject the Arbitration Provision or providing notice by any other manner or format than as described above will not operate as a rejection of this Arbitration Provision and consequently this Arbitration Provision will become part of this Agreement. Rejection of this Arbitration Provision does not serve as rejection of any other term or condition of your Agreement with us governing your Account(s). Your continued use of your Account(s) is deemed to be your acceptance of this amendment, unless you opt-out as described above.

You may request the above message and all referenced enclosures, if any, by calling the customer service phone number on your account statement.

# Exhibit 3

**ARBITRATION PROVISION**

KeyBank

Arbitration Provision

[illegible]

**Arbitration Provision.** This Arbitration Provision sets forth the circumstances and procedures under which a Claim or Claims (as defined below) may be arbitrated instead of litigated in court. This Arbitration Provision supersedes and replaces any existing arbitration provision between you and us.

As used in this Arbitration Provision, the word "Claim" or "Claims" means any claim, dispute, or controversy between you and us arising from or relating to the Agreement or your Account(s), including, without limitation, the validity, enforceability, or scope of this Arbitration Provision or the Deposit Account Agreement. "Claim" or "Claims" includes claims of every kind and nature, whether pre-existing, present, or future, including, without limitation, initial claims, counterclaims, cross-claims, and third-party claims, and claims based upon contract, tort, fraud and other intentional torts, constitutions, statute, regulation, common law, and equity (including, without limitation, any claim for injunctive or declaratory relief). The word "Claim" or "Claims" is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute, or controversy that arises from or relates to (a) any Account subject to the terms of the Agreement (b) any electronic funds transfer from or to any account, (c) advertisements, promotions, or oral or written statements related to this Agreement or your Account, (d) your application for any Account, and (e) the collection of amounts owed by you to us.

The Arbitration Provision will not apply to Claims previously asserted, or which are later asserted, in lawsuits filed before the effective date of this Arbitration Provision or any prior arbitration provision between you and us, whichever is earlier. However, this Arbitration Provision will apply to all other Claims, even if the facts and circumstances giving rise to the Claims existed before the effective date of this Arbitration Provision.

Any Claim shall be resolved, upon the election of you or us, by binding arbitration pursuant to this Arbitration Provision and the applicable rules of either J.A.M.S./Endispute or the National Arbitration Forum in effect at the time the Claim is filed (the "Arbitration Rules"). You may select one of these organizations to serve as the arbitration administrator if you initiate an arbitration against us or if either you or we compel arbitration of a Claim that the other party has brought in court. In addition, if we intend to initiate an arbitration against you, we will notify you in writing and give you twenty (20) days to select one of these organizations to serve as the arbitration administrator. If you fail to select an administrator within that twenty (20) day period, we will select one. In all cases, the arbitrator(s) should be a lawyer with more than ten (10) years of experience or a retired judge. If for any reason the selected organization is unable or unwilling or ceases to serve as the arbitration administrator, you will have twenty (20) days to select a different administrator from the above list. If you fail to select a different administrator within the twenty (20) day period, we will select one. In all cases, a party who has asserted a Claim in a lawsuit in court may elect arbitration with respect to any Claim(s) subsequently asserted in that lawsuit by any other party or parties.

IF ARBITRATION IS CHOSEN BY ANY PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE APPLICABLE ARBITRATION RULES. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. YOU UNDERSTAND THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. THE FEES CHARGED BY THE ARBITRATION ADMINISTRATOR MAY BE GREATER THAN THE FEES CHARGED BY A COURT.

There shall be no authority for any Claims to be arbitrated on a class action or private attorney general basis. Furthermore, arbitration can only decide your or our Claim(s) and may not consolidate or join the claims of other persons that may have similar claims. There shall be no pre-arbitration discovery except as provided for in the applicable Arbitration Rules. Any arbitration hearing that you attend shall take place in the federal judicial district of your residence. At your written request, we will pay all fees up to $100.00 charged by the arbitration administrator for any Claim(s) asserted by you in the arbitration, after you have paid an amount equivalent to the fee, if any, for filing such Claim(s) in state or federal court (whichever is less) in the judicial district in which you reside. (If you have already paid a filing fee for asserting the Claim(s) in court, you will not be required to pay that amount again.) If you are required to pay any fees in excess of $100.00 to the arbitration administrator ("additional fees"), we will consider a request by you to pay all or part of the additional fees. To the extent that we do not approve your request, the arbitrator will decide whether we or you will be responsible for paying any such additional fees. If the arbitrator issues an award in our favor, you will not be required to reimburse us for any of the fees we have previously paid to the administrator or for which we are responsible. Each party shall bear the expense of that party's attorneys', experts', and witness fees, regardless of which party prevails in the arbitration, unless applicable law and/or the Agreement gives a party the right to recover any of those fees from the other party.

This Arbitration Provision is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1 et seq. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall honor claims of privilege recognized at law and, at the timely request of any party, shall provide a brief written explanation of the basis for the award. In conducting the arbitration proceeding, the arbitrator shall not apply the federal or any state rules of civil procedure or rules of evidence. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA and except that, if the amount in controversy exceeds $10,000.00, any party can appeal the award to a three-arbitrator panel administered by the arbitration administrator which shall reconsider de novo (i.e., without regard to the original arbitrator's findings) any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. The costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal. You and we shall keep confidential any decision of an arbitrator made with respect to any Claim(s) arbitrated under the Arbitration Provision and, with the exception of disclosure to your or our attorneys, accountants, auditors, and other legal or financial advisors, shall not disclose such decision to any other person.

This Arbitration Provision shall survive termination of all of your Accounts subject to this Agreement. If any portion of this Arbitration Provision is deemed invalid or unenforceable under any law or statute consistent with the FAA, it shall not invalidate the remaining portions of this Arbitration Provision or the Agreement. In the event of a conflict or inconsistency between the applicable Arbitration Rules and this Arbitration Provision, the Arbitration Provision shall govern.

**Contacting Arbitration Administrators**

If you have a question about the arbitration administrators mentioned in this Arbitration Provision or would like to obtain a copy of their Arbitration Rules or fee schedules, you can contact them as follows: J.A.M.S./Endispute, 222 South Riverside Plaza, Suite 1850, Chicago, IL 60606, www.jams-endispute.com (800) 352-5267; Financial Services Arbitration Rules and Procedures, National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, www.arbitration-forum.com, (800) 474-2371, Code of Procedure.