# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 1:09-MD-02036-JLK

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**

*Tornes, et al. v. Bank of America, N.A.*
S.D. Fla. Case No. 1:08-cv-23323-JLK

*Yourke, et al. v. Bank of America, N.A.*
S.D. Fla. Case No. 1:09-cv-21963-JLK
N.D. Cal. Case No. 3:09-2186

*Amrhein v. Citibank, N.A.*
S.D. Fla. Case No. 1:09-cv-21681-JLK
N.D. Cal. Case No. 4:08-cv-05101-SBA

*Lopez, et al. v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23127-JLK

*Luquetta v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23432-JLK
C.D. Cal. Case No. CV09-6967-GHK

*Speers v. U.S. Bank, N.A.*
S.D. Fla. Case No. 1:09-23126-JLK

*Waters, et al. v. U.S. Bank, N.A.*
S.D. Fla. Case No. 1:09-23034-JLK
N.D. Cal. Case No. 3:09-cv-2071

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

*Garcia, et al. v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:08-cv-22463-JLK

*Spears-Haymond v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-21680-JLK
N.D. Cal. Case No. 3:08-cv-4610

**PLAINTIFFS' OMNIBUS MOTION TO COMPEL PRODUCTION OF DOCUMENTS
AND RESPONSES TO PLAINTIFFS' DISCOVERY REQUESTS**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

III.    ARGUMENT .......................................................................................................... 7

    A.   Legal Standard ........................................................................................... 7

    B.   The Banks Have Failed to Comply with Their Discovery
        Obligations by Refusing to Produce Responsive Documents and
        Information .................................................................................................. 8

          1.   The Banks' Internal Policies and Procedures About Debit
              Transactions or Overdraft Fees ...................................................... 9

          2.   The Banks' Policies and Procedures About Debit
              Transactions or Overdraft Fees Disseminated Outside the
              Banks.............................................................................................. 10

          3.   The Banks' Decision Making Processes as to Overdraft
              Fees and the Re-sequencing of Debit Card Transactions ........... 12

          4.   The Banks' Motives for Adopting the Challenged Practices....... 13

          5.   The Nature and Structure of the Banks' Transactional
              Databases ....................................................................................... 15

          6.   The Named Plaintiffs .................................................................... 16

          7.   Miscellaneous ............................................................................... 17

    C.   The Banks' Objections to Producing Documents From Before the
        Class Period and Documents Unrelated to Re-sequencing Should
        Be Overruled ............................................................................................. 17

    D.   Entry of the Proposed Stipulated Protective Order Moots
        Defendants' Objection in This Area, and Their ESI Objection Fails ...... 20

IV.     CONCLUSION..................................................................................................... 20

V.      LOCAL RULE CERTIFICATION..................................................................... 21

**TABLE OF AUTHORITIES**

<strong>Page</strong>

**CASES**

*Action Nissan, Inc. v. Hyundai Motor Am.*,
  2008 WL 1113071 (M.D. Fla. Jan. 8, 2008)..........................................................................11

*Adams v. Austal, U.S.A., L.L.C.*,
  2010 WL 2496396 (S.D. Ala. June 16, 2010) .......................................................................15

*Bell v. Lockheed Martin Corp.*, -- F.R.D. --,
  2010 WL 2696455 (D.N.J. June 23, 2010)............................................................................18

*Bradway v. Am. Nat. Red Cross*,
  132 F.R.D. 78 (N.D. Ga. 1990)..............................................................................................10

*Brody v. Zix Corp.*,
  2007 WL 1544638 (N.D. Tex. May 25, 2007) .......................................................................18

*Buycks-Roberson v. Citibank Federal Sav. Bank*,
  162 F.R.D. 338 (N.D. Ill. 1995).............................................................................................10

*Codrington v. Anheuser-Busch, Inc.*,
  1999 WL 1043861 (M.D. Fla. Oct. 15, 1999) .......................................................................16

*Coker v. Duke & Co.*,
  177 F.R.D. 682 (M.D. Ala. 1998).....................................................................................7, 17

*Cutrale Citrus Juices USA, Inc. v. Zurich Am. Ins. Group*,
  2005 WL 5177325 (M.D. Fla. June 8, 2005).........................................................................19

*Djowharzadeh v. City Nat. Bank & Trust Co.*,
  646 P.2d 616 (Okla. Ct. App. 1982) ......................................................................................14

*Donovan v. Lynn's Food Stores, Inc.*,
  1981 WL 2436 (S.D. Ga. Dec. 21, 1981) ................................................................................8

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F.3d 571 (9th Cir. 2010) .................................................................................................10

*Fernandez v. Bankers Nat'l Life Ins.*,
  906 F.2d 559 (11th Cir. 1990) .................................................................................................8

*Financial Bldg. Consultants, Inc. v. American Druggists Ins. Co.*,
  91 F.R.D. 59 (N.D. Ga. 1981)................................................................................11, 16, 19

*Global Satellite Communication Co. v. Starmill U.K. Ltd.*,
  2005 WL 5960933 (S.D. Fla. Nov. 17, 2005) .........................................................................2

*In re Checking Account Overdraft Litig.*,
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) .................................................................................19

*In re Domestic Air Transp. Antitrust Litig.*,
  141 F.R.D. 556 (N.D. Ga. 1992)............................................................................................19

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Seagate Technology II Sec. Litig*.,
1993 WL 293008 (N.D. Cal. June 10, 1993) .......................................................................... 18

*Jacques v. First Nat'l Bank of Md.*,
515 A.2d 756 (Md. 1986) ....................................................................................................... 14

*Koosharem Corp. v. Spec Personnel, LLC*,
2008 WL 4832597 (D.S.C. Oct. 31, 2008) ............................................................................ 15

*L.M.P. ex rel. E.P. v. School Bd. of Broward County, Fla.*,
2009 WL 2578987 (S.D. Fla. Aug. 18, 2009) .......................................................................... 8

*Lang v. Intrado, Inc*.,
2007 WL 3407366 (D. Colo. Nov. 13, 2007) ........................................................................ 13

*Lexington Ins. Co. v. Commonwealth Ins. Co*.,
1999 WL 33292943 (N.D. Cal. Sept. 17, 1999) .................................................................... 14

*Luna v. Del Monte Fresh Produce (Southeast), Inc*.,
2007 WL 1500269 (N.D. Ga. May 18, 2007) ........................................................................ 11

*Milinazzo v. State Farm Ins. Co*.,
247 F.R.D. 691 (S.D. Fla. 2007) ....................................................................................... 8, 17

*Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS*,
2007 WL 152642 (W.D.N.Y. May 23, 2007) ........................................................................ 11

*Morales-Arcadio v. Shannon Produce Farms, Inc*.,
2007 WL 5703959 (S.D. Ga. Mar. 27, 2007) ........................................................................ 15

*Nowak v. Lexington Ins. Co*.,
2006 WL 3613764 (S.D. Fla. June 12, 2006) ........................................................................ 10

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ....................................................................................................... 8, 17, 18

*Parker v. Kroger Co., Inc*.,
1977 WL 90 (N.D. Ga. Mar. 18, 1977) ................................................................................. 10

*Plan Pros, Inc. v. Zych*,
2009 WL 2020787 (D. Neb. July 8, 2009) ............................................................................ 11

*Simon v. Pronat'l Ins. Co*.,
2007 WL 4893477 (S.D. Fla. Nov. 1, 2007) ........................................................................... 8

*Smith v. Ford Motor Co*.,
1981 WL 380687 (N.D. Ga. Apr. 2, 1981) ......................................................................... 7, 12

*Southeast Hide Co. v. Goldston*,
127 F.R.D. 481 (N.D. Tex. 1989) .......................................................................................... 18

*Taylor v. Florida Atl. Univ*.,
132 F.R.D. 304 (S.D. Fla. 1990) ........................................................................................... 16

*United States v. Stenzel*,
2006 WL 3196500 (M.D. Fla. Sept. 15, 2006) ...................................................................... 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Ward v. Estaleiro Itajai S/A*,
   541 F. Supp. 2d 1344 (S.D. Fla. 2008) ..................................................................... 7
*Willis v. Mullins*,
   2006 WL 894922 (E.D. Cal. Apr. 4, 2006) ............................................................. 19

**RULES**

Federal Rules of Civil Procedure
   Rule 26 ................................................................................................................... 1
   Rule 26(b)(1) ......................................................................................................... 7
   Rule 30(b)(6) ......................................................................................................... 9
   Rule 33 ................................................................................................................... 1
   Rule 34 ................................................................................................................... 1
   Rule 36 ................................................................................................................... 1
   Rule 37 ................................................................................................................... 1


Local Rules of the United States District Court for the Southern District of Florida
   Rule 7 ..................................................................................................................... 1
   Rule 7.1(A)(3) ................................................................................................... 4, 20
   Rule 26.1 ............................................................................................................... 1
   Rule 26.1(H)(1) ..................................................................................................... 2

Pursuant to Rules 26, 33, 34, 36 and 37 of the Federal Rules of Civil Procedure and Rules 7 and 26.1 of the Local Rules of the United States District Court for the Southern District of Florida, Plaintiffs file this motion to compel against Bank of America, N.A., Wachovia Bank, N.A., Union Bank, N.A., U.S. Bank, N.A., and JPMorgan Chase Bank, N.A. (collectively, "Defendants" or the "Banks") seeking the production of documents and information responsive to Plaintiffs' discovery requests served on May 13, 2010.

## I.   INTRODUCTION

Over two months after receiving identical discovery requests, Defendants have failed to produce the overwhelming bulk of relevant documents and information responsive to Plaintiffs' written discovery.  Several Banks have refused to indicate when responsive documents will be produced.  Several Banks have not even begun collecting responsive documents for production. Others, while tentatively committing to start producing documents soon, intend to withhold entire categories of documents based on unsupported boilerplate objections.  Defendants' responses to Plaintiffs' interrogatories and requests for admission are similarly inadequate.

Defendants assert layer upon layer of blanket objections that lack substantiation or merit, and should be summarily overruled.  Defendants' objections too narrowly restrict the nature of information pertinent to these cases.  For example, as this Court's prior Orders contemplate, discovery in these actions should not be limited to the issue of high-to-low reordering, but should encompass all overdraft fee policies and procedures.  **[DE # 305]**.  Similarly, documents and information relating to those topics should be produced irrespective of their date of origin.  Yet, Defendants repeatedly object to discovery beyond high-to-low reordering or predating the class period.

-1-

Especially because of the fast-approaching deadline for Plaintiffs' motion for class certification (September 20, 2010), Plaintiffs respectfully request that the Court overrule Defendants' unfounded objections and order the production of responsive materials forthwith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

As this Court will recall, discovery in these actions was stayed – at Defendants' request – pending resolution of their Omnibus Motion to Dismiss and/or for Judgment on the Pleadings. **[DE # 148]**. On May 13, 2010, the Court lifted the stay of discovery and entered a comprehensive scheduling order.  [**DE # 463**].  The very same day, Plaintiffs served ***identical*** written discovery requests on each Bank, seeking documents and information in its possession that are relevant, probative and likely to lead to admissible evidence.  Each request seeks documents or information relating to the subject matter of this litigation, and falling into one (or more) of seven categories: (1) each Bank's policies and procedures about debit card transactions or overdraft fees that *were not* disseminated to customers or the public; (2) each Bank's policies and procedures about debit card transactions or overdraft fees that *were* disseminated to customers and/or others; (3) each Bank's decision-making processes regarding overdraft fees and the re-sequencing of debit transactions from highest to lowest dollar amount; (4) each Bank's motives for adopting the unlawful practices alleged; (5) the nature and structure of each Bank's databases for processing and recording debit transactions; (6) the named plaintiffs' accounts and transactions; and (7) miscellaneous materials relating to the subject matter of this litigation.

Defendants assert layers of blanket, boilerplate objections to Plaintiffs' requests.[1]  Such responses are inadequate under the Federal Rules of Civil Procedure because they fail to indicate

---

[1] This motion is filed within 30 days after Defendants served their responses in compliance with Local Rule 26.1(H)(1).  *See Global Satellite Communication Co. v. Starmill U.K. Ltd*., 2005 WL 5960933, at *2 (S.D. Fla. Nov. 17, 2005).  Plaintiffs reserve the right to file supplemental discovery motions, if necessary, once Defendants have actually begun their productions.

what, if any, documents or information Defendants will produce or withhold, and on what specific grounds.[2] For example, Plaintiffs requested "documents created, received or sent at any time, including prior to January 1, 2002, regarding the advantages, disadvantages or ramifications of posting electronic debit transactions in the order of highest to lowest dollar amount, as compared with any other order or method of posting electronic debit transactions." After studying Wachovia's response, Plaintiffs cannot decipher what, if any, responsive documents it will produce:

> Defendant hereby incorporates its General Objections. Defendant objects to this request to the extent it seeks information protected from disclosure under the attorney-client privilege, the work-product doctrine or any other applicable privilege or evidentiary principle. Defendant further objects to this request as overbroad and unduly burdensome. Defendant further objects on the grounds that the request seeks information that is not relevant nor reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects to this request on the ground that the phrases "advantages, disadvantages or ramifications" and "order or method" render it vague, ambiguous, and unduly burdensome. Defendant further objects to this request to the extent it seeks information concerning "all documents created, received or sent at any time" on the ground that it is overly broad and the effort required to respond to it is so great as to render the request unduly burdensome. Defendant further objects to this request on the ground that it seeks confidential and proprietary information, and a protective order has not been entered in this case.

> Subject to and without waiving its general and specific objections, and subject to entry of an appropriate protective order and agreement on document production protocols, Wachovia will produce responsive, non-privileged documents in its possession, custody, or control, if any, other than those withheld on the basis of the foregoing objections.

---

[2] For the Court's convenience, Plaintiffs have prepared consolidated documents listing each discovery request and each Bank's objections and/or responses to each request. *See* Declaration of Robert C. Gilbert in Support of Plaintiffs' Omnibus Motion to Compel Production of Documents and Responses to Plaintiffs' Discovery Requests, attached as Exhibit 1, ¶ 3. Exhibit A to the Gilbert Declaration contains Plaintiffs' First Requests for Production of Documents ("RFPs") and Defendants' Objections and/or Responses; Exhibit B contains Plaintiffs' First Requests for Admission ("RFAs") and Defendants' Objections and/or Responses; and Exhibit C contains Plaintiffs' First Set of Interrogatories ("Rogs") and Defendants' Objections and/or Responses. These documents are intended to assist the Court by avoiding the necessity of reviewing separate discovery papers for each Bank. The three documents fully transcribe the requests and responses and, as such, comply with Local Rule 26.1(c). Plaintiffs will file the actual discovery materials should the Court request it.

Gilbert Decl., Ex. A (RFP No. 40).  Wachovia made no particularized showing to justify any of these "kitchen-sink" objections.[3]

Believing that Defendants would clarify their inscrutable responses and explain what they plan to produce and when, Plaintiffs conferred with each Bank as required by Local Rule 7.1(A)(3).  The conferences produced varying results.  Three of the Banks (Bank of America, Wachovia and Union Bank) indicated they had done little or nothing to search for responsive documents, refusing even to specify which categories of documents they would produce or when.  Unlike the first group of Banks, U.S. Bank and Chase stated that they had located and will produce certain responsive documents on specific dates.[4]  We provide summaries of the discovery conferences, based on the declarations being filed with this motion:

---

[3] The other Banks also raised numerous stock objections.  By way of illustration:

**Bank of America.**  Plaintiffs requested documents "created, received or sent at any time, including prior to January 1, 2002, regarding estimates or projections of what your revenue derived from overdraft fees would have been, or would be, if you were to change any aspect of your policies, practices or procedures involved in assessing overdraft fees."  Bank of America objected, *without substantiation*, that this request "exceeds the scope of the putative class and is overbroad and seeks information not reasonably calculated to lead to the discovery of admissible evidence as it seeks documents unrelated to posting electronic debit transactions in the order of highest to lowest dollar amount."  Gilbert Decl., Ex. A (RFP No. 43).

**Union Bank.**  Plaintiffs requested "exemplar copies of all advertisements and other marketing materials you have used to promote the use of debit cards."  Union Bank objected, *without substantiation*, that this request was "overbroad in scope, burdensome and oppressive."  Gilbert Decl., Ex. A (RFP No. 56).

**U.S. Bank.**  Plaintiffs requested documents "created, received or sent at any time, including prior to January 1, 2002, reflecting communications between or among any of your directors, officers or employees regarding the purpose and/or practice of posting of transactions in an order different from the order in which the customer initiated transactions."  U.S. Bank objected, *without substantiation*, that this request "seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence."  Gilbert Decl., Ex. A (RFP No. 14).

**Chase.**  Plaintiffs requested documents "reflecting the specific criteria and dollar amounts upon which you determined whether or not transactions would be approved where such approval would cause an overdraft."  Chase objected, *without substantiation*, that the phrases "specific criteria and dollar amounts" were "vague and ambiguous."  Gilbert Decl., Ex. A (RFP No. 8).

[4] Plaintiffs do not seek relief against Wells Fargo, at this time, for three reasons.  First, as a result of the recent *Gutierrez v. Wells Fargo* trial in the Northern District of California, counsel for Plaintiffs and Wells Fargo are familiar with many or most of the documents that relate to Wells Fargo's conduct with regard to the imposition of overdraft fees for debit card transactions.

- **Bank of America.**  It has only produced deposit account agreements, fee
  schedules, certain advertisements it produced in a prior lawsuit and some, but not
  all, account statements of the named plaintiffs.  Declaration of Nicholas A. Carlin
  in Support of Motion to Compel, attached as Exhibit 3, ¶ 4.  At the conference,
  Bank of America's counsel stated that it is refusing to produce any further
  documents, including non-confidential documents, until after this Court enters a
  suitable protective order.  Carlin Decl., ¶ 7.  While counsel represented that they
  were creating summaries to respond to certain discovery requests, they were
  unable to say how soon after entry of a protective order Bank of America would
  produce the responsive documents themselves.  Carlin Decl., ¶ 7.  While Bank of
  America's counsel indicated they had begun an electronic data search using
  search terms of their choosing, counsel declined to run electronic searches of
  Bank of America's records using Plaintiffs' additional search terms, and could not
  explain what steps they had taken to search for responsive documents in hard
  copy.  Carlin Decl., ¶ 10.  Also, they refused to produce wide-ranging categories
  of documents created before January 1, 2003, or any documents that do not
  specifically relate to Bank of America's practice of reordering debit transactions
  from highest to lowest dollar amount.  Carlin Decl., ¶¶ 8-9.  Plaintiffs were also
  informed that Bank of America does not intend to produce documents showing its
  ethical standards.  Carlin Decl., ¶ 11.

- **Wachovia.**  It has only produced account agreements and named plaintiffs' bank
  statements.  *See* Declaration of Ari Brown in Support of Motion to Compel,
  attached as Exhibit 4, ¶ 4.  Counsel for Wachovia did not know what other
  documents would be produced or when.  Brown Decl., ¶¶ 6-8.  Wachovia's
  counsel stated that Wachovia would not produce any further documents until after
  the Court enters a suitable protective order.  Brown Decl., ¶ 6.  She could not say
  how soon after entry of a protective order Wachovia would begin its production.
  Brown Decl., ¶ 6.  Nor could she say which categories of documents have been
  gathered.  Brown Decl., ¶ 8.  She could not even say by what date she would find
  out the answers to these questions.  Brown Decl., ¶¶ 6-8, 11, 13.

- **Union Bank.**  It has produced slightly over 1,000 pages of documents, mostly
  consisting of deposit account agreements and account statements for named

---

Second, counsel have worked out a tentative agreement whereby documents previously produced
in *Gutierrez, Zankich, et al. v. Wells Fargo Bank, N.A.,* and *McMillan et al v. Wells Fargo Bank,
N.A.,* will be deemed produced in this multi-district litigation.  To the extent these documents
relate only to Wells Fargo's conduct in California and Washington and there are analogous
documents relating to its conduct in other states, Wells Fargo has tentatively agreed to produce
such other documents.  Third, unlike the other Banks, Wells Fargo's discovery responses
describe the documents and information it intends to produce in greater detail.  Indeed, a
comparison of Wells Fargo's responses to the other Banks' responses demonstrates the
inadequacy of the other Banks' responses.  *See* Declaration of Richard D. McCune in Support of
Motion to Compel Regarding Wells Fargo ("McCune Wells Fargo Decl."), attached as Exhibit 2,
¶¶ 6-7.  Plaintiffs reserve their right to file a motion to compel against Wells Fargo in the event it
fails to produce additional documents consistent with this agreement, or withholds responsive
material based on unfounded objections.

Plaintiffs. *See* Declaration of Todd D. Carpenter in Support of Motion to Compel, attached as Exhibit 5, ¶ 4.  Counsel for Union Bank indicated that his client had done little to start its search for responsive documents.  Carpenter Decl., ¶¶ 6, 9.  He could not identify specific categories of documents Union Bank will produce, nor those it is withholding, nor explain when any responsive documents will be produced.  Carpenter Decl., ¶ 6.

- **U.S. Bank.**  It has only produced around 500 pages of documents, all account agreements or bank statements.  Declaration of Rachel L. Jensen in Support of Motion to Compel, attached as Exhibit 6, ¶ 3.  While U.S. Bank's counsel stated they would finally begin to produce more documents on July 21, 2010, they also stated their intent to withhold customer complaints about overdraft fees, documents relating to U.S. Bank's "shadow-line" algorithm for optimizing risk, documents relating to the costs associated with its overdraft fee programs, and all documents created before April 17, 2003.  Jensen Decl., ¶¶ 5, 6, 7, 8, 9.

- **Chase.**  It has agreed to produce 200 boxes of responsive documents by July 23, 2010.  Declaration of Kenneth J. Grunfeld, Esq., attached as Exhibit 7, ¶ 8.  Chase's counsel also provided Plaintiffs with a list of electronic record custodians and search terms it proposes to use for ESI discovery.  Grunfeld Decl., ¶ 9.

- **Citibank.**[5]  Counsel participated in two discovery conferences since July 13, 2010, and subsequent communications.  Declaration of Richard D. McCune ("McCune Citibank Decl."), attached as Exhibit 8, ¶ 4-8.  The parties have been able to narrow many of their differences.  McCune Citibank Decl., ¶ 7-8.  Citibank has agreed to provide an early witness on the issue of its practices relating to grouping and sorting of electronic debit card transactions, likely during the first week in August, and will make a good faith effort to provide corresponding documents to plaintiffs prior to said deposition.  McCune Citibank Decl., ¶ 6. It has also agreed to produce all documents already gathered, and not previously produced, within two days following entry of the stipulated protective order, and to cooperate in providing additional documents and electronically stored information.

  In addition to these bank-specific discovery conferences, Plaintiffs have also engaged in negotiations with Defendants concerning entry of (i) a stipulated protective order, (ii) stipulated protocols regarding the assertion of privilege, and (iii) a stipulated discovery plan for electronically stored information ("ESI").  Gilbert Decl., ¶ 8.  After four months of negotiations,

---

[5] Plaintiffs do not seek relief against Citibank, at this time, based on its commitment to cooperate as described herein, and its agreement that the time for Plaintiffs to seek relief shall be tolled while the parties attempt to resolve these issues.

the parties resolved their differences and filed a Stipulated Protective Order on July 15, 2010. **[DE # 687 & 688]**.  To date, however, the parties have been unable agree on stipulated protocols regarding the assertion of privilege or ESI discovery.  Gilbert Decl., ¶ 10.

Given the fast-approaching class certification deadline and the need to conduct discovery to support their claims, Plaintiffs are left with no recourse but to seek assistance from the Court.

## III.    ARGUMENT

### A.    Legal Standard

The Federal Rules are "aimed at the broad and liberal discovery of all relevant facts to bring everything to light before the trier of fact."  *Ward v. Estaleiro Itajai S/A*, 541 F. Supp. 2d 1344, 1355 (S.D. Fla. 2008).  "The deposition-discovery regime set out by the Federal Rules of Civil Procedure is an extremely permissive one to which courts have long accorded a broad and liberal treatment to effectuate their purpose that civil trials in the federal courts need not be carried on in the dark."  *Id*. (citation omitted).

In furtherance of this policy, Rule 26 establishes a broad scope for civil discovery.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").  "Relevancy in this context does not have the same meaning as in the law of evidence.  Rather, to be relevant in a discovery sense, the information requested need only be germane [or] *conceivably* helpful to plaintiff[.]"  *Smith v. Ford Motor Co*., 1981 WL 380687, at *3 (N.D. Ga. Apr. 2, 1981) (emphasis added).  Relevancy is thus "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Coker v. Duke & Co*., 177 F.R.D. 682, 685 (M.D. Ala. 1998) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Documents "need only be relevant to the subject matter of a lawsuit, and not to the precise issues raised by the pleadings, to be discoverable.  Such documents are considered

relevant if there is *any* possibility that they may be relevant to the subject matter of the suit."

*Donovan v. Lynn's Food Stores, Inc*., 1981 WL 2436, at \*2 (S.D. Ga. Dec. 21, 1981) (emphasis

added) (internal quotations and citations omitted).

 An objection to a discovery request must be overruled unless the objecting party clearly

establishes "that the requested discovery has no possible bearing on the claims and defenses[.]"

*Milinazzo v. State Farm Ins. Co*., 247 F.R.D. 691, 695 (S.D. Fla. 2007).

> The objecting party must do more than simply intone the familiar litany that the
> [discovery requests] are burdensome, oppressive or overly broad.  Instead, the
> objecting party must show specifically how, despite the broad and liberal
> construction afforded the federal discovery rules, each [request] is overly broad,
> burdensome or oppressive by submitting affidavits or offering evidence revealing
> the nature of the burden.

*L.M.P. ex rel. E.P. v. School Bd. of Broward County, Fla*., 2009 WL 2578987, at \*4 (S.D. Fla.

Aug. 18, 2009) (internal quotations, citations, and alterations omitted).  *Accord*, *Milinazzo*, 247

F.R.D. at 695 ("Objections which state that a discovery request is 'vague, overly broad, or

unduly burdensome' are, by themselves, meaningless").  In addition, "[t]he mere fact that

producing documents would be burdensome and expensive and would interfere with the party's

normal operations is not inherently a reason to refuse an otherwise legitimate discovery request."

*Simon v. Pronat'l Ins. Co*., 2007 WL 4893477, at \*2 (S.D. Fla. Nov. 1, 2007) (citation omitted).

 **B.** **The Banks Have Failed to Comply with Their Discovery Obligations by
Refusing to Produce Responsive Documents and Information**

 Plaintiffs need the responsive documents now.  Many of them directly bear on Plaintiffs'

motions for class certification, due in just over two months.  Plaintiffs are entitled to full

discovery before the Court can fairly rule on significant motions, including motions for class

certification.  *See Fernandez v. Bankers Nat'l Life Ins.*, 906 F.2d 559, 570-71 (11th Cir. 1990).

 Documents showing the Banks' internal deliberations and decisions on reordering debit

transactions and maximizing overdraft fees constitute relevant evidence that will be used to

prove Plaintiffs' claims.  Such evidence is common to the proposed Class.  Plaintiffs urgently need these documents – so they can understand each Bank's motives and conduct, and so they can take fully informed Rule 30(b)(6) depositions of each Bank's witnesses for purposes of preparing their class certification motions.  Without the responsive documents, and without deposition testimony elicited based on such documents, Plaintiffs will be operating at a marked disadvantage in moving for class certification.  The Court can and should prevent that outcome by granting this motion and keeping this litigation on track.

For these reasons, and as explained in greater detail below, the Court should order each Bank to **immediately** produce responsive documents and information within the scope of the seven categories of relevant materials Plaintiffs seek, and to substantially complete all such production by August 13, 2010 – 90 days after receiving Plaintiffs' written discovery.

### 1.    The Banks' Internal Policies and Procedures About Debit Transactions or Overdraft Fees

Defendants' overdraft fee programs lie at the heart of this case.  Plaintiffs requested documents and information relating to the details of how each Bank conceived, implemented and maintained the programs.[6]  These requests seek, among other things, Defendants' policies and procedures for processing debit transactions and determining when to impose overdrafts fees, policies and procedures for handling customer complaints about overdraft fees, and policies and procedures for reversing overdraft fees.

Although these materials are indisputably discoverable, none of the Defendants has produced them to date.  The majority of Defendants are unable to say when, or even whether, they will produce these materials.  The Court should order their **immediate** production.  See, e.g., Bradway v. Am. Nat. Red Cross, 132 F.R.D. 78, 79 (N.D. Ga. 1990) (compelling production of

---

[6] See Gilbert Decl., Ex. A (RFP Nos. 9, 13, 14, 15, 18, 19, 20, 21, 22, 24, 46, 47, 63, 72, 73); Gilbert Decl., Ex. B (RFA Nos. 1, 7, 10, 11, 20, 21, 22); Gilbert Decl, Ex. C (Rog Nos. 4, 5, 6).

"business records that reveal internal, non-public Red Cross policies and procedures"); *Parker v. Kroger Co., Inc.*, 1977 WL 90, at *3 (N.D. Ga. Mar. 18, 1977) (compelling production of "historical information as to defendant's internal employment policies and practices").[7]

Defendants cannot reasonably withhold documents showing their internal policies and procedures for overdraft fees, given that this litigation arises from injuries sustained as a result of those very policies and procedures. Significantly, the policies and procedures will also be central to the upcoming class certification inquiry. *See*, *e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 612 (9th Cir. 2010) (*en banc*) (affirming class certification order based on the plaintiffs' submission of "substantial evidence of Wal-Mart's centralized firm-wide culture and policies."). Plaintiffs expect that each Bank's centralized policies will demonstrate the common nature of the evidence supporting Plaintiffs' claims. We will not be able to submit such evidence – or deposition testimony based on it – unless the Court orders each Bank to produce it forthwith.

## 2. The Banks' Policies and Procedures About Debit Transactions or Overdraft Fees Disseminated Outside the Banks

The extent to which Plaintiffs and the proposed classes were informed of Defendants' policies and procedures surrounding debit overdraft fees is another important issue. Plaintiffs requested documents and information relating to each Bank's overdraft fee policies that were made available to customers.[8] Among other things, Plaintiffs sought documents and information relating to communications with customers, deposit account agreements, fee schedules, advertisements and other disclosures such as information displayed on ATMs or on the internet.

---

[7] *See also Nowak v. Lexington Ins. Co.*, 2006 WL 3613764, at *3 (S.D. Fla. June 12, 2006) (compelling defendant to respond to interrogatories that were "not overbroad because [the defendant's] general investigative policies and procedures during a period before during and after Plaintiff's claim are directly relevant"); *Buycks-Roberson v. Citibank Federal Sav. Bank*, 162 F.R.D. 338, 343 (N.D. Ill. 1995) (class action where Citibank was ordered to provide a Rule 30(b)(6) witness with knowledge of its underwriting policies and practices).

[8] *See* Gilbert Decl., Ex. A (RFP Nos. 4, 5, 6, 11, 12, 17, 26, 27, 44, 48, 55, 56, 57, 58, 62, 72, 75); Gilbert Decl., Ex. B (RFA Nos. 3, 4, 6, 8, 9, 14); Gilbert Decl, Ex. C (Rog Nos. 7, 8).

To date, most of these documents and information have not been provided to Plaintiffs and the majority of the Banks have not promised they will ever be. Because disclosures to customers are directly pertinent to the claims and defenses here, the Court should mandate their **immediate** production. *See Financial Bldg. Consultants, Inc. v. American Druggists Ins. Co*., 91 F.R.D. 59, 61 (N.D. Ga. 1981) (granting motion to compel documents "directly pertinent to a material issue of fact in the case"); *Luna v. Del Monte Fresh Produce (Southeast), Inc*., 2007 WL 1500269, at *8 (N.D. Ga. May 18, 2007) ("Interrogatories may properly ask for the principal or material facts which support an allegation or defense") (citation, internal quotations, and alteration omitted).[9]

The parties have already presented clashing interpretations of Defendants' disclosures. In their omnibus motion, Defendants asserted that their account agreements gave Plaintiffs notice of their debit reordering scheme. [**DE # 217**, at 46]. Defendants thus argued before – and will surely try to argue again – that the discretionary terms in their agreements somehow immunize them from the consequences of their unfair and deceptive conduct. Nevertheless, Plaintiffs believe these agreements are unconscionable contracts of adhesion whose equivocal language, at a minimum, cannot afford a valid defense. Furthermore, Plaintiffs plan to study each Bank's advertisements to determine whether they ever suggested, incorrectly, that a customer would *not* be able to make a purchase with her debit card if her account lacked sufficient funds.

These issues will not go away. To decide them properly, the Court will require access to all relevant materials each Bank provided to Plaintiffs and the putative classes, including all marketing materials relating to overdraft fees.

---

[9] *See also Action Nissan, Inc. v. Hyundai Motor Am*., 2008 WL 111307, at *1 (M.D. Fla. Jan. 8, 2008) (ordering production of advertisements over the defendant's objections); *Plan Pros, Inc. v. Zych*, 2009 WL 2020787, at *1 (D. Neb. July 8, 2009); *Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS*, 2007 WL 152642, at *2 (W.D.N.Y. May 23, 2007).

3.    **The Banks' Decision Making Processes as to Overdraft Fees and the Re-sequencing of Debit Card Transactions**

Two evidentiary areas of overriding significance in these actions will be ***when*** and ***how*** Defendants ***began*** to assess overdraft fees for debit card transactions, and ***when*** and ***how*** they ***began*** to hold debit card transactions and reorder them to assess the highest possible number of individual overdraft fee charges against consumers.  To develop their case in these critical areas, Plaintiffs requested documents showing when and how each Bank began approving, rather than rejecting, insufficient funds transactions attempted with debit cards, and when and how each Bank adopted the reordering scheme described in the complaints.[10]

To date, Defendants have not produced any responsive documents in these areas. Documents shedding light on each Bank's decisions to implement the practices that give rise to this litigation are highly relevant to Plaintiffs' claims and, therefore, subject to production.  *See United States v. Stenzel*, 2006 WL 3196500, at *1 (M.D. Fla. Sept. 15, 2006); *Smith*, 1981 WL 380687, at *4 (granting plaintiffs' motion to compel "because were the court to do otherwise, it would be possible for a defendant . . . to evade and frustrate discovery with great ease").

Some of the Banks admit that they receive instantaneous notice of attempted debit transactions and can (and do) decline certain transactions on the spot.  *See* Gilbert Decl., Ex. C (Rog No. 9).  But the details of each Bank's internal processes remain sketchy, and many other questions remain unanswered.  For example, when did each Bank change its policies to approve a debit transaction and impose an overdraft fee even when a checking account lacks sufficient funds to cover the transaction?  Has the fee always been disproportionately large as compared with small, everyday purchases?  When did each Bank start reordering debits to increase profits?  How and when did the reordering scheme change over time?  Did each Bank hold, reorder and

---

[10] *See* Gilbert Decl., Ex. A (RFPs Nos. 37, 49, 71).

post debit transactions in the same pool as non-debit transactions resulting from paper checks or ACH automated withdrawals – or before or after those other transactions in separate batches? Only robust discovery can yield the answers.

### 4.      The Banks' Motives for Adopting the Challenged Practices

Equally important, Plaintiffs need to know *why* Defendants chose to implement the wrongful practices at issue.  According to the operative complaints previously upheld by this Court, Defendants acted out of an "inequitable motive to generate obscene profits" at the expense of consumers.  Tornes Compl. ¶ 7 [**DE # 344**].  To prove the Banks acted in bad faith, Plaintiffs sought information relating to why each Bank made the decisions to approve, rather than decline, insufficient funds transactions, to bypass obtaining consent from consumers, and to process debit transactions out of chronological order in batches, sometimes days after the transactions themselves.[11]   The requested documents include letters, e-mails, memoranda, PowerPoint presentations, spreadsheets and financial forecasts, as well as communications with third party consultants about the revenue each Bank stood to gain from the reordering scheme.

Defendants have not complied with these requests.  The Court should order them to comply – in accord with decisions requiring defendants to open their records so the reasons behind challenged corporate decisions can be ascertained.  *See*, *e.g.*, *Lang v. Intrado, Inc*., 2007 WL 3407366, at *3 (D. Colo. Nov. 13, 2007) (granting motion to compel interrogatory responses concerning the defendant's "motive or intent," which were "at issue" in the case); *Lexington Ins. Co. v. Commonwealth Ins. Co*., 1999 WL 33292943, at *6 (N.D. Cal. Sept. 17, 1999) (granting motion to compel production of the defendant's policies and underwriting documents from before the time period in question, because they "may be relevant to the intent of the parties").

---

[11] *See* Gilbert Decl., Ex. A (RFP Nos. 23, 25, 28, 29, 30, 34, 35, 36, 38, 39, 40, 41, 42, 43, 53, 54, 59, 64, 65, 67); Gilbert Decl., Ex. B (RFA Nos. 12, 15, 16, 17, 18, 19); Gilbert Decl, Ex. C (Rog Nos. 11, 12, 14).

Here, numerous questions remain.  Did any executives hold the view that the Banks' customers should be allowed to make their own decisions about their money?  Did executives recommend against implementing the reordering scheme unless it was fully disclosed to the customers against whom the fees would be charged?  Did executives recommend alerting consumers at the point of sale to give *them* the choice of executing a transaction and incurring an overdraft fee, as opposed to using cash or another card?  Further, did executives ever question whether the reordering scheme departed from fair and responsible banking?  How much surplus revenue did the Banks anticipate gaining from the *post hoc* reordering?

Instead of producing responsive documents that provide the answers to these questions, the Banks contradict themselves in garbled responses.[12]  For example, Plaintiffs requested that Defendants admit they conducted or commissioned analyses "to project the increase in revenue [they] could expect to derive from overdraft fees by resequencing transactions from largest to smallest dollar amount."  After several unsupported objections, Chase proceeded both to admit and deny the request for admission in the very same sentence: "Chase *denies* the Request, and states that . . . Chase or someone acting on Chase's behalf *has attempted to assess the effect on revenue* of various posting orders."  Gilbert Decl., Ex. B (RFA No. 16) (emphasis added).  The Court should not permit this type of gamesmanship.

---

[12] Alone among the Banks, Union Bank conceded that "payment of larger items first tends to increase the fee income earned by the bank for the payment of overdraft items" and "that a projected increase in revenue to be derived from overdraft fees was a factor that caused Union Bank to institute a practice of posting debit transactions from largest to smallest dollar amount." Gilbert Decl., Ex. C (Rog No. 4); Ex. B (RFA No. 16).  Despite these admissions, Union Bank has failed to produce documents relating to its motives, and affirmatively stated that it is *refusing* to produce any documents relating to whether it considered ethical standards before adopting the reordering scheme – on the grounds that "*internal ethical standards are not relevant*[.]"  Gilbert Decl., Ex. A (RFP No. 73) (emphasis added).  That will come as a shock to Union Bank's customers, for banks "are invested with enormous public trust" and must be "held to a high degree of integrity and responsiveness to their public calling."  *Djowharzadeh v. City Nat. Bank & Trust Co*., 646 P.2d 616, 619 (Okla. Ct. App. 1982); *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 763 (Md. 1986).

5.      **The Nature and Structure of the Banks' Transactional Databases**

Plaintiffs anticipate presenting a common methodology for calculating damages that will rely on the Banks' own records of debit transactions and overdraft fees.  To develop and refine this methodology, Plaintiffs requested information showing how each Bank's computer databases operate and the nature of the transactional data stored.[13]

Defendants have not provided this information.  They should be ordered to do so without delay.  Civil defendants are frequently required to describe their computer systems in detail and allow plaintiffs to inspect them.  For example, one court ordered a defendant to provide plaintiffs with its "databases from 1999 to the present, and instructions for the system including a glossary of all codes necessary to understand the entries."  *Adams v. Austal, U.S.A., L.L.C.*, 2010 WL 2496396, at *1 (S.D. Ala. June 16, 2010).[14]

The plaintiffs' expert witness in the recent *Gutierrez v. Wells Fargo* trial employed a common methodology for determining class-wide injury and damages, based on his extensive examination of Wells Fargo's transactional database which contains records of every overdraft fee imposed and the precise time at which every debit transaction was authorized.  Plaintiffs' witness, an expert in advanced computer technology, testified at trial as to the precise number and total dollar value of overdraft fees that would have been imposed had Wells Fargo processed debit transactions chronologically, consistent with consumers' reasonable expectations, rather than from high to low.  To calculate the damages owed to the California class based on this analysis, the expert simply subtracted the total fees in the but-for world of chronological posting

---

[13] *See* Gilbert Decl., Ex. B (RFA Nos. 2, 5, 13); Gilbert Decl, Ex. C (Rog Nos. 9, 10, 13).

[14] *See also Morales-Arcadio v. Shannon Produce Farms, Inc.*, 2007 WL 5703959, at *1 (S.D. Ga. Mar. 27, 2007) (court ordered the defendants to allow the plaintiffs to inspect the defendants' computer systems); *Koosharem Corp. v. Spec Personnel, LLC*, 2008 WL 4832597, at *3 (D.S.C. Oct. 31, 2008) (court granted "the plaintiffs' motion to compel defendants to produce their computers for imaging and inspection.").

from the total overdraft fees Wells Fargo imposed in the actual world, where it posted transactions only after reordering debits from high to low.  McCune Wells Fargo Decl., ¶ 10.

In this litigation, Plaintiffs plan to conduct a similar damages analysis for each of the Banks.  Before such an analysis can be undertaken, however, Plaintiffs must first have knowledge of, and access to, each Bank's computer systems.  The Court should require the Banks to provide this information and access *immediately*.  *See Financial Bldg. Consultants*, 91 F.R.D. at 61 (compelling production of materials "relevant to the issue of damages claimed").

### 6.    The Named Plaintiffs

While the details of the named plaintiffs' transactional histories are undeniably relevant, Defendants have not yet produced documents in response to Plaintiffs' requests for detailed records of their account histories.[15]  An order compelling the *immediate* production of these materials is warranted.  Defendants in a class action must produce all relevant documents they possess relating to the named plaintiffs.  *See Taylor v. Florida Atl. Univ*., 132 F.R.D. 304, 305 (S.D. Fla. 1990) (ordering the defendant to comply with a request for "all notes, charts, records, correspondence, memoranda, etc. pertaining to" the named plaintiffs); *Codrington v. Anheuser-Busch, Inc*., 1999 WL 1043861, at *3 (M.D. Fla. Oct. 15, 1999).

---

[15] For example, with regard to each transaction that was the basis for an overdraft fee assessed against a named plaintiff, Plaintiffs requested documents from Defendants sufficient to show: (1) the date and time the named plaintiff initiated the transaction; (2) the date and time the bank authorized the transaction; (3) the date and time the bank first received notice of the dollar amount of the transaction; (4) the amount of available funds in the named plaintiff's account when he initiated the transaction; (5) the amount of available funds in the account when the bank first received notice of the dollar amount of the transaction; (6) the amount of available funds in the account when the bank authorized the transaction; and (7) the date and/or time when the bank imposed an overdraft fee based on the transaction.  Gilbert Decl., Ex. A (RFP No. 7).  *See also* Gilbert Decl., Ex. A (RFP Nos. 1, 2, 3, 7, 8); Gilbert Decl, Ex. C (Rog Nos. 2, 3).

### 7.   Miscellaneous

Finally, Plaintiffs seek documents and information in a handful of other areas, all of which are clearly relevant to this litigation.[16]   For example, Plaintiffs requested the records of customers' grievances and communications with each Bank relating to overdraft fees.   *See* Gilbert Decl., Ex. A (RFP Nos. 16, 45).   Defendants have not produced and/or refuse to produce the requested materials in these areas.   *See*, *e.g.*, Jensen Decl., ¶ 8 (U.S. Bank).

All of the discovery sought by Plaintiffs is relevant because it "bears on, or . . . reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Coker*, 177 F.R.D. at 685 (quoting *Oppenheimer*, 437 U.S. at 351).   As to Plaintiffs' discovery requests in the above seven areas, Defendants cannot "show either that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure." *Milinazzo*, 247 F.R.D. at 695.   Therefore, Plaintiffs' motion to compel should be granted and Defendants ordered to comply with their obligations.

### C.   The Banks' Objections to Producing Documents From Before the Class Period and Documents Unrelated to Re-sequencing Should Be Overruled

Irrespective of when they were created or whether they specifically concern the high-to-low reordering, responsive documents must be produced if they relate to the subject matter of this litigation: the Banks' policies and procedures for their checking account overdraft fee programs.   This Court should make it clear that nothing in the Federal Rules authorizes or condones the temporal or substantive limits on relevant discovery that Defendants seek to

---

[16] *See* Gilbert Decl., Ex. A (RFP Nos. 10, 16, 31, 32, 33, 45, 50, 51, 52, 60, 61, 66, 68, 69, 70, 74, 76, 77, 78); Gilbert Decl., Ex. B (RFA Nos. 23, 24, 25, 26, 27); Gilbert Decl, Ex. C (Rog No. 1).

impose unilaterally.[17]  These objections should be overruled because under the Federal Rules'
liberal regime, discovery sweeps broadly to allow Plaintiffs to develop their case.

Discovery in a class action (as in other civil litigation) is **not** strictly limited to the
proposed class period or limitations period, or to the subject matter underlying the class
members' alleged injury and damages.  "The proposed class period does **not** determine the
period of relevancy for discovery purposes."  *Brody v. Zix Corp.*, 2007 WL 1544638, at *2 (N.D.
Tex. May 25, 2007) (emphasis added).  Courts routinely order class action defendants to produce
relevant documents created prior to the class period.  For example, one court rejected a
defendants' "attempt to confine discovery to a narrow period beginning three months before the
start of the class period and ending three weeks after the class period closes" as "artificial,
arbitrary and designed to avoid the production of relevant documents."  *In re Seagate
Technology II Sec. Litig.*, 1993 WL 293008, at *1 (N.D. Cal. June 10, 1993).  "Discovery is not
to be arbitrarily limited because it is intended to help clarify the issues," the court explained.  *Id.*
"Thus, for purposes of discovery, relevancy is to be interpreted 'very broadly.'"  *Id.* (quoting
*Oppenheimer*, 437 U.S. at 351 n.12, and citing *Southeast Hide Co. v. Goldston*, 127 F.R.D. 481,
483 (N.D. Tex. 1989) (requiring discovery into event occurring after complaint was filed)).[18]

---

[17] Responding to Plaintiffs' request for documents "regarding estimates or projections of what
your revenue derived from overdraft fees would have been, or would be, if you were to change
any aspect" of the overdraft programs, Bank of America objected "to producing any documents
created before January 1, 2003, except for documents related to BANA's adoption of the practice
of posting transactions in the order of highest to lowest dollar amount, on the ground that such
information is not likely to lead to the discovery of admissible evidence as it exceeds the scope
of the putative class."  Gilbert Decl., Ex. A (RFP No. 43).  Bank of America is standing on this
objection.  Carlin Decl. ¶¶ 8-9.  Likewise, Union Bank is standing on its objection to producing
documents (1) created since July 16, 2005, (2) that relate to its high-to-low reordering scheme.
Carpenter Decl., ¶¶ 9-10.  *See also* Jensen Decl., ¶ 6.  These objections should be overruled.

[18] In a recent class action, the court refused to allow the defendant to limit the substantive or
temporal scope of discovery.  *Bell v. Lockheed Martin Corp.*, -- F.R.D. --, 2010 WL 2696455, at
*5-7 (D.N.J. June 23, 2010) ("Courts have recognized the relevance of a defendant's conduct in
the years prior to the event in question and have 'commonly extended the scope of discovery to a
reasonable number of years prior to the defendant's alleged illegal action.'") (citation omitted).

-18-

This Court should likewise reject Defendants' attempt to place artificial and unreasonable limitations on Plaintiffs' access to relevant evidence.[19]  To the extent that Defendants, like Wells Fargo, made some or all of the key decisions on the policies or procedures for their checking account overdraft fee programs *before* 2003, the documents and information still must be turned over.  Evidence admitted in the recent *Gutierrez v. Wells Fargo* trial established that Wells Fargo implemented its reordering scheme in California in a series of steps in *2001 and 2002*.  McCune Wells Fargo Decl., ¶ 9.  Plaintiffs anticipate discovery directed to each of the other Banks will disclose similar facts.

The Court should also reject the Banks' renewed attempt to limit these cases to high-to-low reordering.  In denying the Banks' omnibus motion, the Court described factual allegations other than those concerning the reordering of debit transactions, and observed that Plaintiffs allege injury on the grounds that they were "forced to pay overdraft fees as a consequence of the Banks' wrongful overdraft *policies and practices* . . . ." *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1309-10 (S.D. Fla. 2010) (emphasis added).  Moreover, the Federal Rules do not limit discovery to the substantive allegations in the pleadings.  *Financial Bldg. Consultants*, 91 F.R.D. at 61.  *See*, *e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 556, 565 (N.D. Ga. 1992) (granting the plaintiffs' discovery motion in a nationwide antitrust class action, rejecting the argument that discovery had to be limited to the airports and hubs mentioned in the complaint).

---

[19] Defendants suggest that complying with their discovery obligations may be expensive.  That does not excuse their failure to comply, as "the mere fact that production would be difficult or expensive is not inherently a reason to refuse an otherwise legitimate discovery request." *Cutrale Citrus Juices USA, Inc. v. Zurich Am. Ins. Group*, 2005 WL 5177325, at *1 (M.D. Fla. June 8, 2005).  *See also Willis v. Mullins*, 2006 WL 894922, at *2 (E.D. Cal. Apr. 4, 2006) ("'Undue' burden requires parties to show *more* than expense or difficulty.") (emphasis added).

**D.      Entry of the Proposed Stipulated Protective Order Moots the Banks'
         Objection in This Area, and Their ESI Objection Fails**

Defendants have objected to producing most of the responsive materials until after the
Court enters a protective order.  As noted above, the parties finally agreed on the terms of a
Stipulated Protective Order and submitted it to the Court on July 15, 2010. **[DE # 687]**.  Earlier
today, the Court entered Stipulated Protective Order **[DE # 688]**, thus resolving the Banks'
objections to producing documents absent such an order.

Some of the Banks erroneously object to producing responsive documents and
information absent an ESI stipulation.  In early June, the Banks represented to Plaintiffs that
individual Banks would separately propose search terms to Plaintiffs.  Gilbert Decl., ¶ 10.  To
date, only Bank of America has proposed search terms.  Gilbert Decl., ¶ 11.  The other Banks'
delay and failure to propose search terms refute their self-contradictory objection based on the
absence of an ESI agreement.  In fact, nothing in the Federal Rules requires an ESI agreement as
a condition precedent to compliance with discovery obligations.  Accordingly, Defendants' ESI
objection should be overruled.

**IV.     CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court grant Plaintiffs'
motion to compel against Bank of America, N.A., Wachovia Bank, N.A., Union Bank, N.A.,
U.S. Bank, N.A., and JPMorgan Chase Bank, N.A., overruling all objections other than those
based on privilege, and ordering the Banks to begin producing all responsive documents and
information immediately and to substantially complete such production by August 13, 2010,
ninety days following service of Plaintiffs' written discovery.

## V.     LOCAL RULE CERTIFICATION

In accordance with Local Rule 7.1(A)(3), the undersigned certifies that Plaintiffs' counsel have conferred with the Banks' counsel in a good faith effort to resolve the issues raised in this motion, but that such efforts have not resolved the issues raised.

Dated:  July 16, 2010.

Respectfully Submitted,

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@alterslaw.com
ALTERS BOLDT BROWN
  RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Plaintiffs' Lead Counsel*

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No.  0188015
mhutts@baronbudd.com
Mazin A. Sbaiti
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Barry R. Himmelstein
Barry R. Himmelstein, Esquire
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esquire
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webbllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th Street, 34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2010, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served

this day on all counsel of record or pro se parties identified on the attached Service List in the

manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF

or in some other authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS BOLDT BROWN
RASH & CULMO, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@alterslaw.com