# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-2036-JLK

| | |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION<br><br>MDL No. 2036<br><br>THIS DOCUMENT RELATES TO:<br><br>*Tornes v. Bank of America, N.A.*<br>S.D. Fla. Case No. 1:08-cv-23323-JLK<br><br>*Yourke, et al. v. Bank of America, N.A.*<br>S.D. Fla. Case No. 1:09-cv-21963-JLK<br>N.D. Cal. Case No. 3:09-cv-02186-WHA | DECLARATION OF NICHOLAS A. CARLIN IN SUPPORT OF MOTION TO COMPEL |

I, Nicholas A. Carlin, declare as follows:

1. I am a partner in the law firm of Phillips, Erlewine & Given LLP. I am one of the attorneys representing Plaintiffs in the above-entitled action. I have personal knowledge of the matters stated herein and, if called upon, could competently testify thereto.

2. On July 12, 2010, and again on July 13, 2010, I participated in a conference call in which counsel discussed the adequacy of Defendant Bank of America, N.A. ("Defendant" or "BANA")'s responses to Plaintiffs' First Set of Interrogatories, First Set of Requests for Production of Documents, and First Set of Requests for Admissions. Christopher Tarbell and Sharon Mayo, both of Arnold & Porter LLP, and Jill Griset of McGuire Woods LLP, represented Defendant during both calls. Barry Himmelstein, of Lieff Cabraser Heimann & Bernstein, LLP, and I represented the Plaintiffs, and were joined by Phillips, Erlewine & Given attorneys Kara Wolke and Cari Cohorn for the first and second calls respectively.

3. I originally e-mailed BANA's counsel on July 2, 2010, asking to have the meet and confer the following week, but they were not available until July 12, 2010.

4.  Plaintiffs served Interrogatories, Requests for Production of Documents, and Requests for Admissions on May 13, 2010. To date, Plaintiffs have received a total of 12,010 pages from BANA, which were produced as part of its FRCP Rule 26 initial disclosures. These documents consisted of various versions of deposit agreements, fee schedules, debit card agreements, account statements for some of the named plaintiffs for certain months during the class period, and certain advertising material previously produced by BANA in a California state court action, *Closson v. Bank of America*, Case No. CGC 04436877.

5.  During the course of these conferences, I informed BANA's counsel that we considered a number of the responses to the Interrogatories and Requests for Admissions to be inadequate, and that all of the responses to the Requests for Production were inadequate, as no responsive documents have been produced aside from the above referenced initial disclosures, which remain incomplete.

6.  BANA responded to all of Plaintiffs' discovery requests with boilerplate general objections, including assertions of, *inter alia*, the attorney-client privilege, the attorney work product doctrine, trade secret protection, the Federal Bank Regulator Privilege and the Office of the Comptroller of the Currency ("OCC") confidentiality. With respect to documents withheld on the grounds of attorney-client privilege and the work product doctrine, BANA said it would produce a privilege log identifying documents withheld on these grounds. BANA did not specify, however, when Plaintiffs could expect to receive such a privilege log. With respect to documents and information withheld based on assertions of the Federal Bank Regulator Privilege or OCC confidentiality, and/or any other assertions of privilege or confidentiality, I requested that BANA similarly log these documents so that Plaintiffs may fairly assess the applicability of the claimed privilege. BANA's counsel stated that they were unsure of the volume of documents withheld pursuant to such objections. They further stated that the OCC might conclude that a log would disclose too much information, and so would not commit to producing such a log, but promised to take the request under advisement and said they would "get back to us." BANA's counsel would not commit to a time-frame for doing so. I noted the upcoming deadlines in this

case and asked that they inform us quickly. As of the date of this filing, however, BANA's counsel has not informed us as to whether they intend to produce this requested log.

7. While BANA's responses state that it "will" produce certain documents ("subject to" its various objections) BANA's counsel advised us that BANA would not produce *any* documents at all (beyond those previously produced), even those that are *not* confidential, unless and until a protective order is in place. I asked that BANA immediately produce those documents which are not confidential, but BANA's counsel said it would not do so until after entry of a protective order. Since BANA was refusing to produce *any* additional documents until after a protective order was in place, I asked that BANA at least commit to producing its documents immediately upon entry of a protective order so as to avoid any unnecessary delay. BANA's counsel, however, would not commit to producing any actual documents within any specific time frame following entry of a protective order. In contrast, BANA's counsel did agree that "summaries," which BANA's counsel stated had been prepared in response to Interrogatory Nos. 2 and 3, pertaining to named plaintiffs' overdraft transactions, would be produced within "one or two days" following entry of a protective order. BANA's counsel also agreed to produce certain other prepared "summaries" and "general descriptions" (*e.g.*, in response to Interrogatory Nos. 4, 5, 6, 9, 10, 11, 12, and 13) "not more than two weeks" following entry of a protective order. While these BANA-prepared "summaries" have been (or will be) presumably created by attorneys based upon BANA's underlying documents, BANA would not agree to produce those underlying documents within the same time frame as the summaries.

8. With respect to requests in which Plaintiffs had sought documents and information from before January 1, 2002, BANA objected that documents created prior to January 1, 2003 – which BANA's counsel contended was the beginning of the applicable class period – were not relevant or discoverable in this litigation. After discussion, BANA's counsel advised that they would go back to their client to discuss this further, but that as of now they were still standing on this objection.

9. With respect to requests in which Plaintiffs had sought documents and information from before January 1, 2002, and with respect to certain other requests, BANA objected to producing documents unless they "related to BANA's adoption of the practice of posting transactions in the order of highest to lowest dollar amount." I explained that this limitation was unreasonable because the general documents pertaining to BANA's overdraft and debit card policies are relevant. I explained that not only documents relating to the decision to posting debits high-to-low should be produced, but *all* documents relating in *any* way to debit cards, overdrafts or posting order (including, for example, documents that relate to chronological or low-to-high posting order) should be produced, dating back to the time period before the decision to post high-to-low was implemented. BANA's counsel indicated that they would take this under advisement, but that for now they are standing on this objection.

10. In response to most of the document requests, BANA stated that it would only produce responsive documents which it discovered through a search of some (but not all) of its electronic databases using certain search terms that it had created. When I asked whether BANA would run searches based on additional search terms proposed by Plaintiffs, BANA's counsel said it would not do so because the search had already commenced. I sought reassurance that BANA was taking appropriate steps to ensure that hard copy documents are searched, located and produced, as well. While BANA's counsel confirmed verbally that in some cases BANA had undertaken to search for hard copy documents in addition to its electronic search results, BANA's counsel would not agree to revise its written responses to so indicate, and could not describe in detail the processes by which hard copy searches were being performed. BANA's counsel repeatedly assured us that its electronic database search would produce "a lot" of documents and that we should review them first before asking them to perform other searches.

11. BANA refused to produce any documents in response to Document Request No. 72, which seeks documents disclosing BANA's internal ethical standards. After discussion, BANA stood on its objections, but counsel indicated they would discuss with their client.

- 4 -

12. Numerous of Plaintiffs' discovery requests concern the policies, practices and procedures regarding the sequence in which BANA posts items to customers' accounts, as well as the assessment of overdraft items and fees. In response to such requests, BANA re-defined the term "item" to refer only to a debit or credit in a "consumer deposit account for which a debit card was issued." In so doing, BANA has inappropriately limited the scope of its responses. I explained to BANA's counsel that accounts other than those for which a debit card has been issued may be relevant to the subject matter of this case: for example, a customer's savings account may be affected by overdraft activity in his checking account. While BANA's counsel acknowledged Plaintiffs' position and agreed that their responses were not necessarily limited *solely* to debit card accounts, counsel would not agree to amend BANA's written responses and objections to so indicate and, thus, Plaintiffs have no way to assess whether BANA's responses are sufficient.

13. With regard to Interrogatories requesting "policies, practices and procedures," BANA limited its responses to only "policies." When Plaintiffs' counsel questioned whether this was an intentional limitation or an oversight, BANA's counsel conveyed their belief that Plaintiffs would be satisfied (when BANA finally produces its substantive responses) that all of "policies, practices and procedures" would be included. As of today, however, BANA's substantive responses have not been received, and, thus, Plaintiffs have not been able to evaluate whether, in light of this self-imposed limitation, BANA's responses are sufficient.

14. Interrogatory Nos. 7 and 8 concern BANA's efforts to inform its customers of posting order policies, practices and procedures, and how it defined the term "overdraft" to its customers. BANA's responses to these Interrogatories are inadequate. They lack specificity and merely point to examples of documents that previously have been produced. BANA's counsel could neither confirm whether the identified documents constituted all responsive documents produced to date, nor whether BANA would supplement its responses as additional documents are produced. I reminded BANA's counsel of the obligations to answer with particularity and, if

BANA chooses to answer these Interrogatories by identifying documents, to identify *all* responsive documents. BANA's counsel disagreed that any further response was required.

15. We pointed out that BANA's responses to Interrogatory Nos. 11 and 14 are incomplete. While BANA's counsel agreed to consider supplementing these responses, they would not commit to a date by which BANA would supplement, nor would they commit to a date by which they would tell us which, if any, responses would supplement. As of the date of this filing, Plaintiffs have not received any such supplemental responses.

16. BANA's counsel told us repeatedly they were standing on all of their objections.

17. With respect to the Requests for Admissions, the responses made the same general objections as in the responses to the Interrogatories and Document Requests; BANA continued to stand on all those objections. With respect to specific Requests for Admissions, I pointed out that many of the partial admissions were evasive and appeared to be responding to questions as reframed by BANA, rather than the questions posed by Plaintiffs. BANA's counsel agreed to reconsider some of the responses (1, 2, 4, 7, 8 and 11), but stood by all the rest of the responses.

18. BANA also made numerous objections on the grounds of vagueness and ambiguity to the use of many commonly understood words, such as "consistently," "policy," "practice," "procedure," "received," "notice," "dollar amount," "never," "initiated," "authorized" and so on. I pointed out that these are all commonly understood words, but BANA's counsel stated that BANA would stand on those objections.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 14th day of July, 2010, in San Francisco, California.

Nicholas A. Carlin