# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:

*Jessica Duval v. Citizen Financial Group, Inc.*
N.D. Ill. Case No. 1:10-cv-00533
S.D. Fla. Case No. 1:10-cv-21080-JLK

*Eric Daniels v. Citizens Financial Group, Inc.*
D. Ma. Case No. 10-cv-10386
S.D. Fla. Case No. 1:10-cv-22013-JLK

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT CITIZENS BANK OF PENNSYLVANIA'S**
**MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

*Page*

I.      INTRODUCTION. ...................................................................................................1

II.     FACTS ALLEGED IN THE COMPLAINT ......................................................2

III.    ARGUMENT ..........................................................................................................3

        A.      *Hassler* Is Not Controlling. ......................................................................... 3

        B.      Plaintiffs State A Valid Claim For Breach Of Contract.................................5

        C.      Plaintiffs State A Valid Claim For Unconscionability..................................9

                1.      The CBP contract is procedurally unconscionable. ........................10

                2.      The CBP agreement is substantively unconscionable.....................11

        D.      Plaintiffs' Alternative Claims For Unjust Enrichment Should Proceed At
                This Stage of the Proceedings ……………………………………………….13

        E.      Plaintiffs Properly State A Conversion Claim Under Pennsylvania Law....14

                1.      CBP's conduct was wrongful because it improperly imposed
                        overdraft fees and took Plaintiffs' account funds without proper
                        consent................................................................................................15

                2.      Pennsylvania's "gist of the action" doctrine does not require
                        dismissal of Plaintiffs' conversion claim. .......................................16

        F.      Plaintiffs Have Properly Alleged A Violation Of The Pennsylvania Unfair
                Trade Practices and Consumer Protection Law ...........................................17

IV.     CONCLUSION …………………………………………………………….. 20

# TABLE OF AUTHORITIES

*Page*

## Federal Cases

*Abels v. JPMorgan Chase Bank, N.A.*
  No. 09-21123, 2009 WL 5342768 (S.D. Fla. Nov. 23, 2009) .......................................11, 12, 14

*Ashcroft v. Iqbal*
  129 S. Ct. 1937 (2009)........................................................................................... 17

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007)......................................................................................... 17 - 18

*Berger & Montague, P.C. v. Scott & Scott, LLC*
  153 F. Supp. 2d 750 (E.D. Pa. 2001) ....................................................................16

*Bullick v. Sterling, Inc.*
  No. 03-6395, 2004 WL 2381544 (E.D. Pa. Oct. 21, 2004) ....................................12

*Cleveland v. Policy Mgmt. Sys. Corp.*
  526 U.S. 795 (1999)...................................................................................13, 16

*Gutierrez v. Wells Fargo & Co.*
  622 F. Supp. 2d 946 (N.D. Cal. 2009) .....................................................................7

*Harris v. Green Tree Fin. Corp.*
  183 F.3d 173 (3d 1999)...................................................................................10

*Hassler v. Sovereign Bank*
  No. 09-2982, 2010 WL 893134 (3d Cir. Mar. 15, 2010)................................... *passim*

*Hecht v. Malvern Preparatory Sch.*
  No. 10-1374, 2010 WL 2135626 (E.D. Pa. May 26, 2010)....................................13

*In re Checking Account Overdraft Litig.*
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) ........................................................... *passim*

*Jamison v. Klem*
  544 F.3d 266 (3d Cir. 2008) ................................................................................ 4

*Johnson v. State Farm Life Ins. Co.*
  695 F. Supp. 2d 201 (W.D. Pa. 2010)....................................................................17

*Martinez v. Trainor*
  556 F.2d 818 (7th Cir. 1977) ............................................................................. 20

*Martrano v. Quizno's Franchise Co., LLC*
No. 08-0932, 2009 WL 1704469 (W.D. Pa. June 15, 2009) ................................................5, 6

*Masterson v. Federal Express Corp.*
No. 07-CV-2241, 2008 U.S. Dist. LEXIS 76054 (M.D. Pa. Sept. 26, 2008) ......................... 14

*Onal v. BP Amoco Corp.*
275 F. Supp. 2d 650 (E.D. Pa. 2003), *aff'd*, 134 Fed. Appx. 515 (3rd. Cir. 2005) ...................9

*Ostroff v. Alterra Healthcare Corp.*
433 F. Supp. 2d 538 (E.D. Pa. 2006) .....................................................................................10

*Parilla v. IAP Worldwide Servs., VI, Inc.*
368 F.3d 269 (3d Cir. 2004) ..................................................................................................10

*Partners Coffee Co., LLC v. Oceana Servs. and Prods. Co.*
No. 09-236, 2009 WL 4572911 (W.D. Pa. Dec. 4, 2009) .......................................................16

*Phillips v. County of Allegheny*
515 F.3d 224 (3d Cir. 2008) ..................................................................................................18

*Rahemtulla v. Hassam*
539 F. Supp. 2d 755 (M.D. Pa. 2008) ....................................................................................17

*S & C Rest. Corp. v. Sofia's Diner Rest., Inc.*
No. 98-5972, 1999 WL 627914 (E.D. Pa. Aug. 18, 1999) ........................................................9

*Seldon v. Home Loan Servs., Inc.*
647 F. Supp. 2d 451 (E.D. Pa. 2009) ...............................................................................18, 19

*Thompson v. U.S. Airways, Inc.*
No. 09-cv-870, 2010 WL 2384986 (E.D. Pa. June 15, 2010)...................................................13

*Tricome v. Ebay, Inc.*
No. 09-2492, 2009 WL 3365873 (E.D. Pa. Oct. 19, 2009) .....................................................12

*United States v. 64.88 Acres of Land*
25 F.R.D. 88 (W.D. Pa. 1960) ............................................................................................... 20

*U.S. Small Bus. Admin. v. Progress Bank*
No. 03-3461, 2004 WL 2980412 (E.D. Pa. Dec. 22, 2004)....................................................5, 6

*White v. Wachovia Bank, N.A.*
563 F. Supp. 2d 1358 (N.D. Ga. 2008) ..............................................................................8, 15

*Zimmer v. CooperNeff Advisors, Inc.*
523 F.3d 224 (3d Cir. 2008) ..................................................................................................10

**State Cases**

*Academy Indus., Inc. v. PNC Bank, N.A.*
No. 2383, 2002 WL 1472342 (Pa. Com. Pl. May 20, 2002) ......................................................5

*Aronson v. GreenMountain.com*
809 A.2d 399 (Pa. Super. 2002)...........................................................................................20

*Bank of Landisburg v. Burruss*
524 A.2d 896 (Pa. Super. 1987)...........................................................................................15

*Commonwealth v. Percudani*
825 A.2d 743 (Pa. Cmwlth. 2003) ........................................................................................19

*Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.*
560 A.2d 151 (Pa. Super. 1989)............................................................................................5

*Department of Transp. v. Pennsylvania Indus. for Blind and Handicapped*
886 A.2d 706 (Pa. Cmwlth. 2005) ........................................................................................6

*eToll, Inc. v. Elias/Savion Adver., Inc.*
811 A.2d 10 (Pa. Super. 2002)........................................................................................16, 17

*Gabriel v. O'Hara*
534 A.2d 488 (Pa. Super. 1987)...........................................................................................19

*Gemini Bakery Equip. v. Baktek*
No. 3204, 2005 WL 957635 (Pa. Com. Pl. Apr. 11, 2005) ....................................................17

*Germantown Mfg. Co. v. Rawlinson*
491 A.2d 138 (Pa. Super. Ct. 1985).......................................................................................11

*Giant Food Stores, LLC v. THF Silver Spring Dev.*
959 A.2d 438 (Pa. Super. 2008)............................................................................................5

*In re Estate of Harris*
245 A.2d 647 (Pa. 1968) ....................................................................................................20

*Liazis v. Kosta, Inc.*
618 A.2d 450 (Pa. Super. Ct. 1992).......................................................................................5

*LeBourgeois v. Firstrust Sav. Bank*
No. 3378, 1991 WL 1011026 (Pa. Com. Pl. Apr. 12, 1991) ...................................................19

*Pearl Assurance Co. v. National Ins. Agency*
30 A.2d 333 (Pa. Super. 1943)............................................................................................15

*Pennsylvania Dep't of Banking v. NCAS of Del., LLC*
995 A.2d 422 (Pa. Commw. Ct. 2010) ..................................................................................19

*Philadelphia Plaza-Phase II  v. Bank of Am. Nat'l Trust and Sav. Ass'n*
    No. 3745, 2002 WL 1472337 (Pa. Com. Pl. June 21, 2002) ....................................................5

*Salley v. Option One Mortg. Corp.*
    925 A.2d 115 (2007) ........................................................................................................10

*Shonberger v. Oswell*
    530 A.2d 112 (Pa. Super. 1987) ......................................................................................15

*Solarz v. DaimlerChrysler Corp.*
    No. 2033, 2002 WL 452218 (Pa. Com. Pl. Mar. 13, 2002) ..............................................19

*Somers v. Somers*
    613 A.2d 1211 (Pa. Super. 1992) ...................................................................................5, 9

*Stevenson v. Economy Bank of Ambridge*
    197 A.2d 721 (Pa. 1964) .................................................................................................15

*Wilson Area Sch. Dist. v. Skepton*
    895 A.2d 1250 (Pa. 2006) ...............................................................................................14


**Federal Rules**

73 Fed. Reg. 28,904-01, 28,929 ..........................................................................................8

Fed. Rule Civ. P. 7(b)(1)(B).................................................................................................20

Fed. Rule Civ. P. 8(d) ....................................................................................................13, 16

Fed. Rule Civ. P. 8(e)(2) .....................................................................................................16

Third Circuit LAR, App. I, IOP 5.7 .......................................................................................3

**State Statutes**

73. P.S. § 201-2(4) .............................................................................................................17

73 P.S. § 201-2(4)(xiv) .......................................................................................................19

73 P.S. § 201-2(4)(xxi) .......................................................................................................18

## I.     INTRODUCTION

Plaintiffs seek to recover overdraft fees generated and retained by the Citizens Bank of Pennsylvania ("CBP"), RBS Citizens, N.A. ("RBS"), and Charter One as a result of their unlawful practices.[1]   CBP and RBS both operate under the name "Citizens Bank," but CBP operates only in New Jersey and Pennsylvania.  (CBP's Memorandum of Law in Support of Its Motion to Dismiss ("Def.'s Mem.") at 1).  Plaintiffs assert claims against CBP, RBS and Charter One for breach of contract and the covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, and violation of the consumer protection statutes of Massachusetts, New York, Pennsylvania, Rhode Island and Vermont, where Plaintiffs reside.

CBP seeks dismissal of all claims in the Consolidated Amended Class Action Complaint ("CAC") based on arguments this Court previously rejected in its Order Denying Omnibus Motion to Dismiss and/or for Judgment on the Pleadings, *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010) (the "*Overdraft Order*"), and in its June 30, 2010 Order Denying JPMorgan Chase Bank, N.A's Motion for Reconsideration or, in the Alternative, Certification Pursuant to 28 U.S.C. § 1292(b).[2]   CBP's motion is based principally on Pennsylvania law, which is similar to the law applied by this Court in the *Overdraft Order*, and the unpublished and readily distinguishable decision of the Third Circuit in *Hassler v. Sovereign Bank*, No. 09-2982, 2010 WL 893134 (3d Cir. Mar. 15, 2010).  As demonstrated below and in

---

[1] If discovery confirms CBP's contentions that Charter One is merely a "brand name" for RBS Citizens, N.A. (Def.'s Mem. at 2 n.1), Plaintiffs will be amenable to dismissing Charter One as a defendant by stipulation, as was done in the case of Citizens Financial Group, Inc.  **[DE # 656]**.

[2] Defendant RBS filed a Joinder in Citizens Bank of Pennsylvania's Motion to Dismiss the Consolidated Amended Class Action Complaint ("RBS Joinder"), setting forth facts particular to it without raising any legal arguments.  **[DE # 668]**.  Given that RBS has not raised any legal arguments of its own and admits that the terms of its account agreement are virtually identical to the account agreement of CBP (RBS Joinder at 2), the arguments made in this memorandum in opposition to those asserted in Def.'s Mem. should be deemed equally applicable to RBS.

Plaintiffs' Memorandum in Opposition to the Defendants' Omnibus Motion to Dismiss and/or for Judgment on the Pleadings filed February 5, 2010 ("Plaintiffs' Omnibus Motion Response") **[DE # 265]**, CBP's arguments are without merit and its motion to dismiss should be denied.[3]  In order to avoid unnecessary repetition and burden for the Court, Plaintiffs incorporate Plaintiffs' Omnibus Motion Response as though set forth fully herein.

## II.    FACTS ALLEGED IN THE COMPLAINT

Plaintiffs Annie Mullen and Greg Murphy are residents of Pennsylvania and have accounts at CBP.  (CAC ¶¶ 18, 19; Def.'s Mem. at 2.)  The other Plaintiffs named in the CAC are residents of Massachusetts, Michigan, New Hampshire, New York, Rhode Island and Vermont and have accounts with RBS.  (CAC ¶¶ 12-17, 20-21; RBS Joinder at 2.)

CBP engages in numerous practices in connection with overdrafts that are being challenged in this litigation, including:

(a)     manipulating and altering customers' transaction records causing funds in a customer's account to be depleted more rapidly, more overdraft fees to be charged, and overdraft fees to be charged despite sufficient funds in the account.  (CAC ¶¶ 42, 61, 65.)

(b)     incorporating deceptive and misleading language in paragraph 6 of Section C of the Personal Deposit Account Agreement (the "Deposit Agreement") stating "[w]e will not permit withdrawals from your account unless there are sufficient funds in your account, and you provide us with identification" which contradicts other language in the Deposit Agreement and

---

[3] CBP reserves the right to argue later that Plaintiffs' claims are preempted by federal law. (Def.'s Mem. at 2 n.4.)  Consequently, Plaintiffs will not address preemption other than to note that this Court has already held that the state law claims in which "Plaintiffs attack the allegedly unlawful manner in which the banks operate their overdraft programs to maximize fees at the expense of consumers" are not preempted.  *Overdraft Order*, 694 F. Supp. 2d at 1313-14.

CBP's practice of allowing purchases when CBP claims there are insufficient funds.[4] (CAC ¶¶ 44-49, 64.)

(c)    manipulating and reordering debits from highest to lowest for the sole reason of increasing the number of exorbitant overdraft fees. (CAC ¶¶ 52, 56-57, 59.)

(d)    misleading customers regarding CBP's reordering practices, including by not informing them that it is CBP's practice to always reorder. (CAC ¶¶ 53-54.)

(e)    delaying the posting of transactions and then batching them over multiple days. (CAC ¶¶ 58, 60.)

(f)    providing inaccurate balance information to its customers. (CAC ¶ 63.)

(g)    failing to notify customers of overdrafts or advise them of their right to decline the transaction or provide another form of payment. (CAC ¶¶ 67-69.)

(h)    failing to follow "best practices," including by not allowing customers to "opt-out" of the overdraft program. (CAC ¶¶ 70-76.)

## III.    ARGUMENT

### A.    *Hassler* Is Not Controlling

CBP relies extensively on the unpublished decision of *Hassler v. Sovereign Bank*, No. 09-2982, 2010 WL 893134 (3d Cir. Mar. 15, 2010). However, the unpublished decision is not binding precedent, even in the Third Circuit. *See* 3d Cir. Internal Operating P. 5.7. There is no justification for applying *Hassler* here when, even in the Third Circuit, courts are directed not to

---

[4] The 2007 version of the deposit agreement attached to Def.'s Mem. as Exhibit A is a different version than that attached to the CAC, which was revised May 2009. Although there are no material differences between the two versions regarding the challenged provisions, the numbering of the paragraphs differs. Since the CAC utilizes the paragraph numbering of the May 2009 version, for the Court's convenience and reference, Plaintiffs attached a copy of the May 2009 version as Exhibit A and the term "Deposit Agreement" will refer to the 2009 version.

consider that decision as authoritative.  *See, e.g.*, *Jamison v. Klem*, 544 F.3d 266, 278 n.11 (3d Cir. 2008).

*Hassler* also can be factually and legally distinguished on multiple grounds and, thus, does not provide support for CBP's motion to dismiss.  First, the Deposit Agreement here differs significantly from the one at issue in *Hassler*.  The *Hassler* court (construing New Jersey law) based its decision regarding plaintiff's claims against Sovereign Bank on the express terms of the deposit account agreement, a copy of which is attached as Exhibit B.  The *Hassler* court's finding that Sovereign Bank's agreement "clearly explained the actions that Sovereign eventually undertook" was the linchpin for the Third Circuit's decision affirming the dismissal. *Hassler*, 2010 WL 893134, at *3.  That clarity is not present in the Deposit Agreement and, in fact, there are numerous, material differences between the two agreements, including the following: (a) the Sovereign Agreement refers to posting transactions in "descending order" (Exhibit B at 5), whereas the Deposit Agreement does not even mention or explain descending or high-to-low reordering in the context of overdrafts even though it was CBP's policy to *always* reorder transactions in this manner to maximize overdrafts and overdraft fee revenues for itself at consumers' expense (CAC ¶¶ 54, 77(f), 104(f)); (b) the operative language in the Sovereign Bank agreement was in bold print on page 4 of the 29 page document, whereas the Deposit Agreement language is on pages 10 and 13-14 of a 36 page document (or on pages 16 and 20-21 of a 50 page document if CBP's 2007 deposit agreement attached to Def.'s Mem. as Exhibit A is referenced), in normal typeface and far smaller print that is very difficult to read; (c) unlike the Sovereign Bank agreement, the Deposit Agreement is fraught with inconsistencies concerning CBP's overdraft policies, such as provisions which lead customers to believe that CBP definitively will not allow them to withdraw money if there are insufficient funds in their

accounts (*see* Section II above); and (d) the Sovereign Bank agreement, unlike the Deposit Agreement, gives a clear example of its processing order, an inclusion found to be significant by the *Hassler* Court. *Hassler*, 2010 WL 893134, at *3. Thus, in contrast to the Sovereign Bank agreement, the Deposit Agreement is designed not to be read and understood by its customers, as shown from its sheer length, small font, and complex and contradictory language, further negating any basis for giving weight to the unpublished decision.

Second, the claims here are far broader than those of the simple reordering at issue in *Hassler*. The wrongful practices attacked by Plaintiffs here, summarized above in Section II, clearly distinguish this action from *Hassler*.

### B.    Plaintiffs State A Valid Claim For Breach Of Contract

The duty of good faith and fair dealing is imposed by every contract "in the performance and the enforcement of the contract." *Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 447-48 (Pa. Super. Ct. 2008); *Somers v. Somers,* 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992); *Liazis v. Kosta, Inc.*, 618 A.2d 450 (Pa. Super. Ct. 1992).[5]  "Good faith" in this context means "consistency with the justified expectations of the other party." *U.S. Small Bus. Admin. v. Progress Bank*, No. 03-3461, 2004 WL 2980412, at *4 (E.D. Pa. Dec. 22, 2004). The good faith and fair dealing "doctrine is intended to simplify arrangements between contracting

---

[5] CBP relies on *Creeger Brick & Building Supply Inc. v. Mid-State Bank & Trust Co.*, 560 A.2d 151 (Pa. Super. Ct. 1989), for the proposition that the duty of good faith and fair dealing applies "in limited situations." (Def.'s Mem. at 8.) Cases since *Creeger*, however, reject any such limitation. The "limited holding [of *Creeger*] does not justify the conclusion that the covenant of good faith is inherent in some contracts, but absent from others." *Philadelphia Plaza - Phase II v. Bank of Am. Nat'l Trust & Sav. Ass'n*, No. 3745, 2002 WL 1472337, at *5 (Pa. C.P. Ct. June 21, 2002) (finding courts relying on *Creeger* to limit the application of the covenant of good faith "misunderstand and overstate" the holding). Even when parties to a contract "do not have a 'special relationship,'" the parties still "owe each other a contractual obligation of good faith." *Academy Indus., Inc. v. PNC Bank, N.A.*, No. 2383, 2002 WL 1472342, at *8 (Pa. C.P. Ct. May 20, 2002); *see also Martrano v. Quizno's Franchise Co., LLC*, No. 08-0932, 2009 WL 1704469, at *18 (W.D. Pa. June 15, 2009).

parties by prohibiting one party from acting solely for his own benefit and to the detriment of the entire agreement . . . and prohibit opportunistic behavior not specifically addressed in the contract." *Martrano v. Quizno's Franchise Co., LLC*, No. 08-0932, 2009 WL 1704469, at *18 (W.D. Pa. June 15, 2009). When a party is granted discretion under the terms of a contract, "[o]rdinary contract principles require that . . . the discretion must be exercised reasonably, subject to the implied duty of good faith and fair dealing." *Department of Transp. v. Pennsylvania Indus. for Blind & Handicapped*, 886 A.2d 706, 716 (Pa. Commw. Ct. 2005); *see also Progress Bank*, 2004 WL 2980412, at *4. Thus, Pennsylvania case law is consistent with that cited in Plaintiffs' Omnibus Motion Response at pages 35-41.

CBP's motion to dismiss the breach of contract claim is predicated entirely on the assertion that the Deposit Agreement contains express terms permitting the reordering of debits. According to CBP, because the Deposit Agreement purportedly permits it to pay transactions in any order it chooses, CBP can change the order of transactions regardless of the method or rationale for doing so. The same argument was rejected by this Court in its *Overdraft Order*. 694 F. Supp. 2d at 1314-17.

CBP's assertion should be similarly rejected. First, CBP ignores the conflicting provision in the Deposit Agreement that expressly provides that CBP "will not permit withdrawals from your account unless there are sufficient available funds in your account." (Exhibit A at 10.) Second, CBP ignores that the reordering of debits is *discretionary* and, as such, imposes upon CBP the obligation to act in good faith. The Deposit Agreement uses discretionary language such as that in Section C, Paragraph 12, which provides that "[w]e *may* pay checks, in-person withdrawals, point-of-sale transactions, or any other paper or electronic transactions (Transactions) in any order determined by us" and "we *may* change the order in which we pay

Transactions without prior notice to you" (emphasis supplied).[6]   Third, CBP's argument overlooks the fact that nothing in the agreement permits CBP to manipulate the reordering of debits *solely* to create overdrafts that would not otherwise exist, to charge overdraft fees when sufficient funds are in the account, to reorder the debits over several days irrespective of when the transaction occurred, or to commit any of the other practices challenged in this litigation.

As in this Court's *Overdraft Order*, "Plaintiffs do not ask the Court to tell the [bank] *how* to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing."  694 F. Supp. 2d at 1315, 1317 (refusing to dismiss the breach of contract claim despite the argument that the conduct at issue was permitted by contract terms, and finding that "Plaintiffs' allegations state a plausible claim for breach of contract, based on the implied covenant of good faith").  That holding mandates denial of CBP's motion.

Courts, including this one, have found claims similar to those pled by Plaintiffs to be valid and have found acts similar to those alleged against CBP to violate the duty of good faith and fair dealing.  In *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009), the plaintiffs brought claims similar to those asserted here concerning the improper manipulation of debit transactions.  Denying summary judgment to Wells Fargo, U.S. District Judge William Alsup stated:

> *Perdue* [*v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923, 702 P.2d 503 (1985)] held that "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise the discretion in good faith and in accordance with fair dealing."  38 Cal. 3d at 923.  Applying that rule here, even if the bank-depositor contract confers discretion on the bank as to the sequence of honoring presentments, *the bank must exercise its discretion in accordance with fair dealing and cannot exercise its discretion to enrich itself by gouging the consumer.*  Put differently, even if the bank-depositor contract purports to allow the bank to post in any order it wishes, such discretion remains subject to the bank's duty of good faith and fair dealing.  There is a duty of good faith and fair

---

[6] This same language appears in the RBS deposit agreement, quoted in the RBS Joinder at 3.

> dealing to honor checks in such a way as to be fair to the consumer and that discretionary power cannot be exercised so as to pile on ever greater penalties on the depositor, which is exactly what Wells Fargo seems to be doing, or so a reasonable jury could conclude.

*Id*. at 952-53 (emphasis added).

Similarly, in *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008), Wachovia argued that the covenant of good faith and fair dealing did not apply because the provisions of the contract expressly permitted Wachovia to reorder and impose overdraft fees. *Id*. at 1363. That argument was rejected:

> Plaintiffs' allegations state a plausible claim for breach of the implied covenant of good faith . . . The court cannot find as a matter of law that the Deposit Agreement's statement that Wachovia "may" post items "in any order" (Deposit Agreement ¶ I.D.12) expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, and maximize overdraft fees in the ways the Complaint alleges.

*Id*. at 1364. The court also found that the language of the Wachovia deposit agreement did not confer "*absolute* or *uncontrolled* discretion so as to obviate the good faith requirement." *Id*. at 1365.

CBP's attempt to "blame the victim" by claiming it was "Plaintiffs' own conduct [that] resulted in the imposition of overdraft fees" is misplaced and, quite frankly, insulting to the millions injured by CBP's wrongful acts. (Def.'s Mem. at 10.) CBP ignores its own wrongful conduct in imposing the overdraft fees and ignores the determination of various federal agencies including the United States Treasury and the Office of the Comptroller of the Currency that injury from bank overdraft policies "is not reasonably avoidable by the consumer." 73 Fed. Reg. 28,904-01, 28,929.

As its sole authority for dismissal of the breach of contract claim, CBP relies on the *Hassler* decision which, as set forth above, is not even controlling in the Third Circuit, let alone here. (*See* discussion of *Hassler* in Subsection A above.) In any event, the court in *Hassler* did

- 8 -

not discuss the requirement of good faith and fair dealing where, as here, the agreement contains conflicting provisions regarding withdrawal policies and where the bank allegedly imposed overdraft/insufficient available funds fees despite there being sufficient funds in the account. The court also did not address good faith and fair dealing in the context of reordering transactions occurring over multiple days.

Further, contrary to CBP's arguments, Pennsylvania law does not require a specific allegation of "improper motive" to underpin a claim for breach of the duty of good faith and fair dealing.  (Def.'s Mem. at 4.)   As the Superior Court of Pennsylvania held:

> The obligation to act in good faith in the performance of contractual duties varies somewhat with the context and a complete catalogue of types of bad faith is impossible, but it is possible to recognize certain strains of bad faith which include: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992).

Moreover, under Pennsylvania law, as in other jurisdictions, "[w]hether the Defendants' conduct . . . amounts to bad faith sufficient to constitute a breach of the implied duty of good faith and fair dealing is a question of fact."  *S & C Rest. Corp. v. Sofia's Diner Rest., Inc.*, No. 98-5972, 1999 WL 627914, at *6 (E.D. Pa. Aug. 18, 1999); *see also Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 660 (E.D. Pa. 2003), *aff'd*, 134 F. App'x 515 (3d. Cir. 2005) (whether party made good faith effort to comply with duty of good faith and fair dealing is question of fact properly left to jury).   Thus, when "there is any question about the facts, or how [CBP] operate[s], these are matters to be developed through discovery."  *Overdraft Order*, 694 F. Supp. 2d at 1317.   There is no basis for dismissing Plaintiffs' claims for breach of contract and violation of the duty of good faith and fair dealing.

### C.      Plaintiffs State A Valid Claim For Unconscionability

In Pennsylvania, "a contract or term is unconscionable and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it." *Salley v. Option One Mortgage Corp.*, 925 A.2d 115, 119 (Pa. 2007).  The two aspects of unconscionability are referred to as procedural and substantively unconscionability, respectively.  *Id.*  Although "the ultimate determination of unconscionability is for the courts, . . . where material facts are disputed . . . fact finding may be necessary."  *Id.* at 120 (internal citation omitted).  CBP's contentions notwithstanding, Plaintiffs have sufficiently alleged the existence of both aspects of unconscionability, and these allegations are more than sufficient to survive a motion to dismiss, as this court found in upholding similar claims in the Court's *Overdraft Order*, 694 F. Supp. 2d at 1317-22.

### 1.       The CBP contract is procedurally unconscionable

Factors to be considered in determining procedural unconscionability include "the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language."  *Zimmer v. CooperNeff Advisors, Inc.*, 523 F.3d 224 (3d Cir. 2008).  "Procedural unconscionability is generally found where the agreement is a contract of adhesion."  *Ostroff v. Alterra Healthcare Corp.*, 433 F. Supp. 2d 538, 543 (E.D. Pa. 2006) (internal citation omitted).  When a contract is "prepared by a party with excessive bargaining power and presented to the other party on a 'take it or leave it' basis," it is a contract of adhesion.  *Ostroff*, 433 F. Supp. 2d at 543 (citing *Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 276 (3d Cir. 2004)).  A claim of procedural unconscionability is supported when contract terms are "inconspicuous or unclear" in a situation where the parties "have unequal bargaining power."  *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 182 (3d Cir. 1999).

This Court found in its *Overdraft Order* that procedural unconscionability was sufficiently alleged where, as here, "the disparity in sophistication and bargaining power between Plaintiffs and Defendants is obvious.  The terms at issue were contained in voluminous boilerplate language drafted by the bank.  If Plaintiffs disagreed with the terms, there was no meaningful opportunity to negotiate with the bank."  694 F. Supp. 2d at 1319.  That decision is controlling here.

CBP completely ignores the fact that the Deposit Agreement is a contract of adhesion. Moreover, because the agreements provided by other banks all contain similar language, customers lack the ability to "shop around" for more favorable terms.  CBP's agreement does not even advise customers of their right to opt-out of its overdraft program.  The sophistication and bargaining power of CBP dwarfs that of Plaintiffs.  CBP's Deposit Agreement, drafted and offered on a take-it-or-leave-it basis, is a voluminous boilerplate contract, printed in small type over dozens of pages.  In keeping with this Court's *Overdraft Order* and the decision in *Abels v. JPMorgan Chase Bank, N.A.*, No. 09-21123, 2009 WL 5342768, at *4 (S.D. Fla. Nov. 23, 2009) ("[p]rocedural unconscionability is satisfied here because of the disparity in bargaining power between Plaintiffs and Defendant"), Plaintiffs have sufficiently alleged procedural unconscionability under the law of Pennsylvania.

## 2.    The CBP agreement is substantively unconscionable

Pennsylvania has standards for finding substantive unconscionability that mirror those discussed in this Court's *Overdraft Order*.   694 F. Supp. 2d at 1320.   For substantive unconscionability, Pennsylvania courts examine the contract terms to determine whether they are "unreasonably favorable to the other party."  *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 145 (Pa. Super. Ct. 1985) (omitting internal quotation).   A contract term is substantively

unconscionable if it "shock[s] the conscience." *Tricome v. Ebay, Inc.*, No. 09-2492, 2009 WL 3365873, at *3 (E.D. Pa. Oct. 19, 2009). Given that the reasonableness determination varies in context of each contract, "no generally accepted list of factors has been developed for this category of unconscionability." *Bullick v. Sterling, Inc.*, No. 03-6395, 2004 WL 2381544, at *9 (E.D. Pa. Oct. 21, 2004). Most importantly here, the substantive unconscionability inquiry is a factual one that cannot support dismissal at this stage. *Abels*, 2009 WL 5342768, at *4; *see also Overdraft Order*, 694 F. Supp. 2d at 1320 (finding plaintiffs had sufficiently pled substantive unconscionability).

In the *Overdraft Order*, the Court found that allegations by the plaintiffs that "no reasonable person would have agreed to allow the banks to post debits in a manner designed solely to maximize the number of overdraft fees" and that "the amount of overdraft fees is unconscionably excessive because the fees are not reasonably related to the costs or risks associated with providing overdraft protection" sufficiently pled substantive unconscionability. 694 F. Supp. 2d at 1320. These same allegations are made in the CAC. As discussed above, CBP relies on the unconscionable overdraft terms to manipulate transactions so as to wrongfully multiply fees – fees that customers *cannot* reasonably avoid, even when exercising due diligence to monitor their account balances and to maintain sufficient funds. No reasonable person would ever have agreed to grant CBP the unfettered power to manipulate checking account transactions for the sole purpose of maximizing its profits at consumer expense. Further, as alleged, there is an unreasonable disparity between the cost and the value of the service rendered on the one hand, and, on the other, its price. CBP imposes uniform $39 overdraft fees on transactions in which a customer has overdrawn his account – even if the overdraft is for a $1 pack of gum. Yet, the cost to CBP to provide this "service" has *no reasonable relation* to the amount of the overdraft, nor to

- 12 -

the actual cost of paying it.  (CAC ¶ 106.)  Thus, the overdraft fee provisions in the Deposit Agreement are unreasonably favorable to CBP and unconscionable.

### D. Plaintiffs' Alternative Claims For Unjust Enrichment Should Proceed At This Stage Of The Proceedings

Federal Rule of Civil Procedure 8(d) permits plaintiffs to plead alternative claims, even if the alternative claims are inconsistent.  *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999).  "[W]hile the law does not permit a party to simultaneously prevail on an unjust enrichment theory and a contractual theory, it does not require the dismissal (at the motion to dismiss stage) of an unjust enrichment claim merely because an express contract exists that arguably governs the conduct complained of."  *Overdraft Order,* 694 F. Supp. 2d at 1321. Plaintiffs have pled claims for unjust enrichment in the alternative and, as a result, have properly pled the claim under Rule 8(d).  *Cleveland*, 526 U.S. at 805.

Under Pennsylvania law, as with the law of other jurisdictions, unjust enrichment has three elements: "(1) benefits have been conferred on one party by another; (2) the recipient has appreciated the benefits; and (3) the recipient has accepted and retained the benefits under such circumstances that it would be inequitable or unjust for the recipient to retain the benefits without payment of value."  *Thompson v. U.S. Airways, Inc.*, No. 09-cv-870, 2010 WL 2384986, at *8 (E.D. Pa. June 15, 2010).  An unjust enrichment analysis "depends on the particular factual circumstances of the case at issue."  *Hecht v. Malvern Preparatory Sch.*, No. 10-1374, 2010 WL 2135626, at *7 (E.D. Pa. May 26, 2010) (omitting internal quotations).  The Court should focus "not on the intention of the parties, but rather on whether the defendant has been unjustly enriched."  *Id.* (omitting internal quotations).

CBP argues that the existence of a written agreement mandates dismissal of the unjust enrichment claims.  (Def.'s Mem. at 12.)  This Court recently rejected the *identical argument* in the *Overdraft Order*:

> Plaintiffs have alleged sufficient facts--that, among other things, Defendants manipulated the posting order of debit transactions in bad faith so as to maximize the number of overdraft fees incurred--which could lead a reasonable factfinder to conclude that it would be unjust to retain the benefit of those fees.  Thus, the Court cannot dismiss the unjust enrichment count on this ground.

694 F. Supp. 2d at 1322.  Similarly, this Court rejected the same argument in *Abels*, 2009 WL 5342768, at *4.

CBP's continued reliance on *Hassler* to support dismissal of the unjust enrichment claim is misplaced.  *Hassler* recognized that unjust enrichment was proper where the defendant unjustly enriched itself beyond its contractual rights at the expense of another.  2010 WL 893134, at *4.  That is exactly what has been alleged here.  Additionally, unlike *Wilson Area School District v. Skepton*, 895 A.2d 1250 (Pa. 2006) (cited at Def.'s Mem. at 12), where the unjust enrichment claim was dismissed following a bench trial, this case is at the pleadings stage and discovery has not even taken place.  As this Court held in the *Overdraft Order* and *Abels*, it would be premature to dismiss the unjust enrichment cause of action at this juncture.  Pennsylvania courts hold similarly.  *See, e.g.*, *Masterson v. Federal Express Corp.*, No. 07-CV-2241, 2008 U.S. Dist. LEXIS 76054, at *17-18 (M.D. Pa. Sept. 26, 2008).

### E.    Plaintiffs Properly State A Conversion Claim Under Pennsylvania Law

Plaintiffs have adequately alleged conversion against CBP.  First, this Court has previously considered and rejected CBP's argument that it did not convert Plaintiffs' funds because its account agreement purportedly provides it with the unfettered right to assess overdraft fees after it reorders transactions.  Second, CBP's reliance on Pennsylvania's "gist of the action" doctrine as a rationale for dismissal of the conversion claim is misplaced.  Plaintiffs

should be permitted to proceed with alternative claims at this stage in the proceedings, pursuant to Federal Rule 8.

    1.  **CBP's conduct was wrongful because it improperly imposed overdraft fees and took Plaintiffs' account funds without proper consent.**

   Under Pennsylvania law, conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *Stevenson v. Economy Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964).  The party claiming conversion must have had an immediate right to possession of the property at the time it was allegedly converted.  *Bank of Landisburg v. Burruss*, 524 A.2d 896, 898 (Pa. Super. Ct. 1987) (internal citation omitted).  Money may be the subject of a conversion.  *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. Ct. 1987) (citing *Pearl Assurance Co. v. National Ins. Agency*, 30 A.2d 333, 337 (Pa. Super. Ct. 1943)).

   Once again, CBP cites to *Hassler* and asserts that because the account agreement purportedly allows it to reorder transactions, its assessment of overdraft fees was not a wrongful taking of property because it purportedly had a "contractual right to the overdraft fees it assessed."  (Def.'s Mem. at 13.)  CBP does not address the allegation that it assesses overdraft fees despite the fact that the actual funds in customer accounts are sufficient to cover the debits. (CAC ¶ 65.)  Nor does CPB address the numerous differences between its own Deposit Agreement and Sovereign Banks' deposit agreement in *Hassler*, as discussed at length above.  In any event, in the *Overdraft Order* this Court addressed the same argument, that the taking of their depositors' funds by the defendant banks was not wrongful under their respective depositor agreements, and sustained the conversion claim.  694 F. Supp. 2d at 1323.

   Similarly, in *White*, the court refused to dismiss the plaintiffs' conversion claim, rejecting Wachovia's reliance on its deposit agreement.  563 F. Supp. 2d at 1371.  In finding that the

elements of conversion had been satisfied, including the wrongful act element, the court pointed to Wachovia's practice of "impos[ing] Overdraft Fees when there was in fact no overdraft." *Id.* By alleging that CBP assessed overdraft fees to accounts that contained sufficient funds on deposit to cover the debits, Plaintiffs have alleged sufficient facts to show CBP's wrongful conversion.

### 2. Pennsylvania's "gist of the action" doctrine does not require dismissal of Plaintiffs' conversion claim

The gist of the action doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10, 14 (Pa. Super. Ct. 2002). The doctrine seeks to uphold the conceptual difference between breach of contract claims and tort claims, in that "tort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Id.* (internal citation omitted). As discussed above, Federal Rule 8(d) allows plaintiffs to plead alternative claims, even if the alternative claims are inconsistent. *See Cleveland*, 526 U.S. at 805. Likewise, the "gist of the action" doctrine does not prevent a plaintiff "from proceeding simultaneously on breach of contract and conversion claims . . . as alternative theories of liability." *Berger & Montague, P.C. v. Scott & Scott, LLC*, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001) (denying motion to dismiss conversion claim). Thus, it is prudent for a court to "be cautious when determining that a claim should be dismissed under the gist of the action doctrine, due in part to the fact that Fed. R. Civ. P. 8(e)(2) allows parties to plead multiple claims as alternative theories of liability." *Partners Coffee Co. v. Oceana Servs. & Prods. Co.*, No. 09-236, 2009 WL 4572911, at *4 (W.D. Pa. Dec. 4, 2009).

Additionally, when the agreement is at issue in a case, as it is here, the Court should not dismiss the alternative tort claim for conversion at the motion to dismiss stage of the proceeding. *See Gemini Bakery Equip. v. Baktek*, No. 3204, 2005 WL 957635 (Pa. C.P. Ct. Apr. 11, 2005) (denying motion to dismiss conversion claim); *Johnson v. State Farm Life Ins. Co.*, 695 F. Supp. 2d 201 (W.D. Pa. 2010) (finding conversion claim required inquiry into the facts and was not precluded by gist of action doctrine).  This distinguishes this case from CBP's cited authority of *Rahemtulla v. Hassam*, 539 F. Supp. 2d 755, 777 (M.D. Pa. 2008), wherein the plaintiffs' rights to the disputed money were defined by an agreement, "which has been determined to be an enforceable contract."  Thus, because this Court could determine that the challenged overdraft fee provisions are unconscionable CBP's taking of depositor funds would then be a breach of duties "imposed by law as a matter of social policy" rather than "the breaches of duties imposed by mutual consensus agreements between particular individuals."  *eToll, Inc.*, 811 A.2d at 14. Accordingly, Plaintiffs' conversion claim is not barred by the "gist of the action" doctrine.

### F.    Plaintiffs Have Properly Alleged A Violation Of The Pennsylvania Unfair Trade Practices And Consumer Protection Law

CBP claims that Plaintiffs have failed to allege adequately that it violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL").   That argument fails for the reasons discussed below.

First, CBP claims that the 35 page CAC does not provide it with "fair notice" of Plaintiffs' grounds because the CAC does not include a specific citation to one of the defined types of unlawful conduct enumerated in the statute (73 Pa. Cons. Stat. § 201-2(4) (2010)) as a category of "unfair method[] of competition" or "unfair or deceptive acts or practices."  (Def.'s Mem. at 14.)  CBP cites no authority for this argument, instead referencing cases that speak to the general federal pleading standards – *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and *Bell*

- 17 -

*Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) (*cited in Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008)) – rather than any case which even hints that a specific reference to a defined species of conduct proscribed under the UTPCPL is mandatory to properly allege a violation of the act.  To the contrary, the UTPCPL "provides a *non-exhaustive* list of specific forbidden acts." *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 465 (E.D. Pa. 2009) (internal citations omitted) (emphasis added).  In light of the detailed, substantive allegations of CAC as well as this Court's prior rulings, CBP's argument is meritless.[7]

Second, CBP argues, again relying solely on *Hassler*, that Plaintiffs' UTPCPL claim must be dismissed because CBP's policy of manipulating and reordering debit transactions was "disclosed in unmistakable terms in the Agreement" and, thus, cannot be deceptive or unfair. (Def.'s Mem. at 14.)  As addressed above in Section II, the Deposit Agreement here is misleading and provides no clear disclosure of CBP's practices.  Further, CBP ignores its practice of assessing overdraft fees at times when the actual funds in customer accounts are sufficient to cover all debits that have been submitted for payment.  (CAC ¶ 65.)  Nor does CBP address the numerous differences between its own Deposit Agreement and Sovereign Bank's deposit agreement at issue in *Hassler*.  Indeed, CBP completely ignores the provision of its deposit agreement wherein it *promised* Plaintiffs that it *would not overdraw their accounts* and then did so.

CBP also claims that Plaintiffs' UTPCPL claim fails because there is no explicit allegation of justifiable reliance on CBP's deceptive conduct in reordering transactions to increase overdraft charges.  (Def.'s Mem. at 15.)  However, justifiable reliance is not required for

---

[7] At a minimum, Plaintiffs' claim falls under the so-called "catch-all" provision of the UTPCPL, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Cons. Stat. § 201-2(4)(xxi) (2010).

all UTPCPL claims, including those applicable here.[8]  The UTPCPL makes it unlawful to "[f]ail[ ] to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made[.]"  73 Pa. Cons. Stat. § 201-2(4)(xiv) (2010).  CBP specifically warranted to Plaintiffs in the Deposit Agreement that "[w]e will not permit withdrawals from your account unless there are sufficient funds in your account, and you provide us with identification."  (Exhibit A at 10.)  In breach of that warranty, it is alleged (indeed, it is conceded) that CBP allowed withdrawals from Plaintiffs' accounts where there were not sufficient funds in the account.  Plaintiffs need allege nothing else to satisfy Section 201-2(4)(xiv) of the UTPCPL.  *See Solarz v. DaimlerChrysler Corp.*, No. 2033, 2002 WL 452218, at *13 (Pa. C.P. Ct. Mar. 13, 2002) ("[P]laintiffs here have specifically alleged an improper performance of a contractual obligation under the express warranty.  Therefore, this court holds that the plaintiffs have sufficiently alleged misfeasance for purposes of the UTPCPL."); *LeBourgeois v. Firstrust Sav. Bank*, No. 3378, 1991 WL 1011026, at *238-39 (Pa. C.P. Ct. Apr. 12, 1991) ("A claim pursuant to Section 201-2(4)(xiv) is akin to a claim for breach of an express warranty . . . and would require only a showing of the breach of the contractual provision at issue.  Accordingly, neither fraud nor the element of reliance must be proven in order to pursue claims under [this] section[]." (citing *Gabriel v. O'Hara*, 534 A.2d 488, 494-95 (Pa. Super. Ct. 1987)).

Moreover, even if Plaintiffs were limited to a claim under the UTPCPL's catch-all provision, Plaintiffs' justifiable reliance would be presumed because a material

---

[8] Several Pennsylvania courts have held that reliance is not a required element of the statute as a result of the 1996 amendment which added the words "or deceptive" to the catch-all provision. *See, e.g.*, *Pennsylvania Dep't of Banking v. NCAS of Del., LLC*, 995 A.2d 422, 443 (Pa. Commw. Ct. 2010); *Commonwealth v. Percudani*, 825 A.2d 743, 746-47 (Pa. Commw. Ct. 2003); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009).

misrepresentation can be proven and there is privity of contract with the CBP.  *Aronson v. GreenMountain.com*, 809 A.2d 399, 404-05 (Pa. Super. 2002) (internal citation omitted).  As held by the Supreme Court of Pennsylvania, "[w]hen a claimant has proved that material misrepresentations were made it is presumed that the contract was entered into in reliance upon these misrepresentations, and the burden to prove otherwise is upon the [other party]."  *In re Estate of Harris*, 245 A.2d 647, 650 (Pa. 1968).  Here, the Deposit Agreement contains a manifestly material misrepresentation that "[w]e will not permit withdrawals from your account unless there are sufficient funds in your account."  (Exhibit A at 10.)  Plaintiffs' reliance on that misrepresentation is, accordingly, presumed.

## IV.    CONCLUSION[9]

For the reasons set forth above, CBP's motion to dismiss should be denied.  Should the Court determine that any of Plaintiffs' claims are subject to dismissal, Plaintiffs respectfully request leave to replead such claims pursuant to Rule 15.

---

[9] CBP asks the Court to dismiss any of Plaintiffs' claims that may be barred by the applicable Pennsylvania statute of limitation.  (Def.'s Mem. at 16 n.9.)  However, CBP does not give any basis for its request.  Accordingly, with respect to CBP's vague statute of limitations argument, the motion fails to "state with particularity the grounds for seeking the order" and thus fails to comply with Rule 7(b)(1)(B) of the Federal Rules of Civil Procedure.  *See, e.g.*, *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977) (motion to vacate judgment properly denied by trial court pursuant to Fed. R. Civ. P. 7(b)(1)(B) where motion failed to state even a single ground for granting the motion); *United States v. 64.88 Acres of Land*, 25 F.R.D. 88, 90 (W.D. Pa. 1960) (motion for new trial would be denied where plaintiff provided only brief, general reasons for the necessity of a new trial).  Further, this issue is more appropriately determined at the time of class certification.

Dated:  August 9, 2010.

Respectfully Submitted,

/s/ Bruce S. Rogow
Bruce S. Rogow, Esq.
Florida Bar No. 067999
brogow@rogowlaw.com
Robert C. Gilbert, Esq.
Florida Bar No. 561861
bobby@alterslaw.com
ALTERS BOLDT BROWN
  RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  305-571-8550
Fax:  305-571-8558

*Plaintiffs' Lead Counsel*

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth Grunfeld, Esq.
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel:  215-985-9177
Fax: 215-985-4169

/s/ Barry R. Himmelstein
Barry R. Himmelstein, Esq.
California Bar No. 157736
bhimmelstein@lchb.com
Michael W. Sobol, Esq.
California Bar No. 194857
msobol@lchb.com
Jordan Elias, Esq.
California Bar No. 228731
jelias@lchb.com
Mikaela Bernstein, Esq.
California Bar No. 261301
mbernstein@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel:  415-956-1000
Fax: 415-956-1008

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esq.
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esq.
Florida Bar No. 503800
vdiaz@podhurst.com
Peter Prieto, Esq.
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esq.
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel:  305-358-2800
Fax: 305-358-2382

/s/ Ted E. Trief
Ted E. Trief, Esq.
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esq.
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E 58th Street, 34th Floor
New York, NY 10155
Tel:  212-486-6060
Fax: 212-317-2946

/s/ Edward Adam Webb
Edward Adam Webb, Esq.
Georgia Bar No. 743910
adam@webbllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webbllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE
Suite 480
Atlanta, GA 30339
Tel:  770-444-9325
Fax: 770-444-0271

/s/ Russell W. Budd
Russell W. Budd, Esq.
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esq.
*Texas Bar No. 00785039*
bsteckler@baronbudd.com
Melissa K. Hutts, Esq.
Texas Bar No.  0188015
mhutts@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Ave.
Suite 1100
Dallas, TX 75219
Tel:  214-521-3605
Fax: 214-520-1181

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Florida Bar No. 561861
ALTERS BOLDT BROWN
RASH & CULMO, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, Florida 33137
bobby@alterslaw.com

- 23 -