UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036
_____/

THIS DOCUMENT RELATES TO:

*Michael Dasher v. RBC Bank (USA)*
**S.D. Fla. Case No. 1:10-CV-22190-JLK**
_____/


**DEFENDANT, RBC BANK (USA)'S, REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**

Defendant, RBC BANK (USA) d/b/a RBC BANK ("RBC"), submits this Reply in support of its Motion to Compel Arbitration and Stay All Proceedings, and states:

**I.   Recent Decisions Of The United States Supreme Court Indicate A Proper Trend Of Enforcing Arbitration Clauses According To Their Terms, Even In The Consumer Context.**

In his Opposition, Dasher asks this Court to follow its May 10, 2010 Order, which ruling was issued only days after the United States Supreme Court's decision in *Stolt-Nielson S.A. v. AnimalFeeds International Corp.*, 130 S. Ct. 1758 (2010), and *American Express Co. v. Italian Colors Restaurant*, 130 S. Ct. 2401 (May 3, 2010), and before *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010), were decided. Each of these cases demonstrates the Supreme Court's view that arbitration clauses should be enforced as they are written. In addition, the landscape of arbitration and the Federal Arbitration Act ("FAA") continues to evolve quickly, with the Supreme Court having recently granted certiorari to review the precise question of the

{O1567251;6}

propriety of an arbitration provision in a consumer contract. *See Laster v. AT&T Mobility LLC*, 584 F.3d 849 (9th Cir. 2009), sub nom *AT&T Mobility LLC v. Concepcion, Vincent, et ux.*, 130 S. Ct. 3322, 3322 (May 24, 2010) (granting certiorari to review case involving whether consumer contract's arbitration clause is unconscionable, and whether FAA preempts state law invalidating arbitration clauses); *see also American Express*, 130 S. Ct. at 2401 (granting petition for writ of certiorari in Second Circuit Court of Appeals case involving arbitration clause in credit card acceptance agreement and remanding for further consideration in light of *Stolt-Nielson*).

Ignoring the swiftly-evolving case law in this area, Dasher simply filed a "me too" response to RBC's demand for arbitration, arguing that because this Court previously denied arbitration to other banks in this multidistrict litigation, this Court should deny RBC's request for arbitration as well. However, in light of recent and continuing Supreme Court jurisprudence, and because there is no consumer exception to the FAA, this Court should consider the merits of RBC's motion independent of its prior ruling, review the instant arbitration clause individually, and grant RBC's request that the clause be enforced.

**II.**     *Tillman* **Is Distinguishable From The Present Case.**

In his Opposition, Dasher relies heavily on *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362 (N.C. 2008). The *Tillman* case, however, is factually distinguishable. First, in *Tillman*, the plaintiffs obtained loans, as opposed to checking accounts. 655 S.E.2d at 365. Because most, if not all, loan agreements contain arbitration clauses, the *Tillman* plaintiffs had little alternative. In contrast, Dasher has presented absolutely no evidence that he had no alternative to continuing his bank account with RBC. Second, the *Tillman* arbitration clause contained a cost-shifting provision for appeals, which RBC's provision lacks. *Id.* at 368. Third, the *Tillman* arbitration clause was much more one-sided than RBC's arbitration provision due to

the number of actions the defendants had brought against consumers. *Id.* at 372-73. Because the North Carolina Supreme Court based its holding that the *Tillman* arbitration clause was unconscionable "on the facts and circumstances of th[at] case," *id.* at 373, and because the facts and circumstances of Dasher's case are quite different from those in *Tillman*, the holding in *Tillman* does not apply here.

### III.   Dasher And RBC Have Agreed To Arbitrate Dasher's Claims. [1]

Dasher argues that he did not agree to RBC's revised Agreement or to the arbitration provision contained within it. To support this assertion, Dasher claims that: (1) he does not remember receiving the revised Agreement, or any RBC Agreement for that matter; (2) he does not have any records pertaining to the opening of his account at Triangle Bank, a North Carolina bank that was acquired by RBC; and (3) RBC has failed to provide information about the opening of his account at Triangle Bank, including the account agreement in place at that time. These matters, however, are merely red herrings meant to distract this Court from the facts that RBC has established via affidavit in support of its Motion to Compel Arbitration.

First, it is not legally sufficient for Dasher to avoid arbitration simply by claiming that he does not remember receiving the Revised Agreement. As demonstrated by the Affidavit of Sonia Bauer, RBC, as a business practice, sent the revised Agreement to every then-existing customer, including Dasher. Bauer Aff., ¶¶ 6-7. Because RBC sent the revised Agreement to Dasher, federal law presumes that he received it, *see, e.g., Konst v. Fla. E. Coast Ry.*, 71 F.3d 850, 851 (11th Cir. 1996) ("The law recognizes a rebuttable presumption that an item properly

---

[1] RBC agrees that pursuant to United States Supreme Court jurisprudence, whether the parties entered into a contract at all is a question for the court in this instance, not the arbitrator. *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 130 S.Ct. 2847, 2855-56 (2010) ("It is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide."). The arbitration clause at issue does not provide that the arbitrator is to decide this gateway issue.

mailed was received by the addressee."); *Taylor v. First N. Am. Nat'l Bank*, 325 F. Supp. 2d 1304, 1311 (M.D. Ala. 2004) (same), and he has presented no evidence to rebut this presumption.  His inability to remember anything is simply not sufficient to raise a factual issue.

Second, Dasher's claims that he "does not possess records pertaining to the opening of his account" and that "RBC provided nothing in the way of documentation to explain how Mr. Dasher opened his account with Triangle Bank or the account opening documents that were used at the time" are of no legal significance.  Opp., p.5.  For purposes of the instant Motion to Compel Arbitration, it is irrelevant how Dasher's Triangle Bank account was first opened, because any account agreement in place at that time has been superseded by RBC's Agreement upon acquisition of Triangle Bank.  What is relevant here is any fact pertaining to Dasher's acceptance of the revised Agreement.  The key facts are: (1) Dasher has a checking account at RBC; (2) when the Agreement was revised to include the arbitration provision at issue, RBC sent a copy of same to Dasher, a then-existing customer of RBC; and (3) after RBC sent the revised Agreement to Dasher, he agreed to it by continuing to use the account.  As a result, Dasher and RBC agreed to arbitrate disputes, like the instant one, regarding his RBC checking account.

**IV.   The Arbitration Clause At Issue Is Enforceable Because It Is Not Procedurally Or Substantively Unconscionable.**

Dasher argues that, even if the parties agreed to the arbitration provision, the provision is unenforceable because it is both procedurally and substantively unconscionable under North Carolina law.  As an initial matter, in order for an arbitration provision to be invalidated by this Court on unconscionability grounds, North Carolina law requires Dasher to prove both procedural and substantive unconscionability. *See Tillman*, 655 S.E.2d at 370.  Unquestionably, Dasher has not proven either one.

### A.     Dasher Has Failed To Prove That The Arbitration Clause Is Procedurally Unconscionable.

Dasher has failed to prove procedural unconscionability. Dasher, in his "Declaration," complains that there is no evidence that he signed any agreement with RBC when his previous bank was acquired by RBC, or that he saw any RBC Agreement that included an arbitration clause. Importantly, Dasher's Declaration, which is attached to his Opposition as Exhibit "A," is inadequate to support his assertions in this matter because it was not made under penalty of perjury as required by law. 28 U.S.C. § 1746 (stating that unsworn declaration may have same force and effect as sworn declaration if it states substantially: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)"). Consequently, the "Declaration" should not be given any weight.

Additionally, as explained *supra*, the evidence before this Court shows that RBC sent the revised Agreement to Dasher and, thereafter, he continued to use his RBC account.[2] RBC's arbitration right cannot be thwarted because Dasher either chose not to read it or forgot that he did so. *Ambrose v. Comcast Corp.*, 2010 WL 1270712, *3-4 (E.D. Tenn. Mar. 31, 2010) (holding that arbitration clause not unconscionable, stating: "This is an ordinary case, where the plaintiff did not read the arbitration provision and is now trying to escape his responsibilities."); *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) ("A contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome.") (citations omitted).

---

[2] *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 173-74 (5th Cir. 2004) ("The notice of the change in terms can be understood as an invitation to enter into a relationship governed by the new terms. The customer then accepts the new terms by continuing to use the service.") (citing *Bank of La. v. Berry*, 648 So. 2d 991, 993 (La. Ct. App. 1994)).

Dasher also claims that it was procedurally unconscionable for RBC to notify him of the revised Agreement via a mail insert in his monthly account statement. Contrary to Dasher's position, the use of a mail insert is not itself unconscionable. *Freedman v. Comcast Corp.,* 988 A.2d 68, 85-89 (Md. Ct. Spec. App. 2010) (holding arbitration clause distributed to subscribers via bill insert was not unconscionable). Upon receipt of the revised Agreement, Dasher did not have to continue banking with RBC. He could have closed his RBC account and obtained a checking account elsewhere, possibly with a financial institution that had no arbitration provision in its account agreement. Though the arbitration provision at issue limits Dasher's access to the forum of his choice, he agreed to it for the privilege of continuing his banking relationship with RBC. As a result, Dasher has failed to prove procedural unconscionability.

### B.     Dasher Has Failed To Establish Substantive Unconscionability.

Dasher has also failed to prove substantive unconscionability. Dasher's main complaint is that his damages have a low dollar amount, thereby preventing him from obtaining an attorney if he is compelled to go to arbitration. Specifically, Dasher argues that his potential recovery is "relatively small since the claim involves fees of $35.00 per overdraft" and, consequently, no attorney will represent him individually in arbitration. Opp., p.13. As an initial matter, Dasher bears the burden of proving that his costs to proceed in arbitration are prohibitively expensive compared to his litigation costs. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Significantly, Dasher has presented no *evidence* to show that proceeding in arbitration will be prohibitively expensive as compared to proceeding in litigation. Although Dasher tries to bolster his cost-effective argument with the Declaration of Lawrence M. Kopelman, Esquire, this attempt is to no avail. First, like Dasher's Declaration, Mr. Kopelman's Declaration is facially

defective because Mr. Kopelman has not sworn his declaration under penalty of perjury as required by 28 U.S.C. § 1746. Consequently, it is not evidence that this Court should consider.

Second, Mr. Kopelman only claims that he is "experienced with contingent fee-based and class action *litigation*," and completely fails to elaborate on any arbitration experience, or experience concerning the costs of arbitration versus litigation, he may have. Opp., p.14, and Ex. E, ¶ 2 (his "practice is focused on complex commercial and consumer rights litigation, including class actions commonly taken on a contingency fee basis"). Consequently, should this Court consider Mr. Kopelman's Declaration at all, then his opinions should be given minimal to no weight. *See Arguelles-Romero v. Superior Court*, 109 Cal. Rptr. 3d 289, 297-98 (Cal. Ct. App. May 13, 2010) (giving minimal weight to three attorneys' declarations asserting that no attorney would take claim on individual basis because it was not economically feasible to do so, because declarations only discussed high costs of litigating, not arbitrating, cases).

Additionally, even assuming that Dasher's damages are considered "small-dollar," various courts have held that the inability to obtain counsel to arbitrate a case on an individual basis is insufficient to render an arbitration clause invalid. *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 638-39 (4th Cir. 2002) (rejecting argument that plaintiff would be unable to obtain counsel if forced to arbitrate because statutory attorneys' fees were available); *J.C. Taylor v. Citibank USA, N.A.*, 292 F. Supp. 2d 1333, 1341-42 (M.D. Ala. 2003) (credit card holder's high attorneys' fees relative to potential recovery insufficient to avoid arbitration). Moreover, Dasher has the ability to recover attorneys' fees if he prevails on his statutory unfair trade practices claim against RBC. *See* N.C. Gen. Stat. § 75-16.1 (2009) ("[T]he presiding judge may, in his discretion, allow a reasonable attorney fee to the duly licensed attorney representing the prevailing party" upon a finding that the "party charged with the violation has willfully

engaged in the act or practice, and there was an unwarranted refusal by such party to fully resolve the matter").

Dasher's remaining substantive unconscionability argument is that the arbitration provision at issue is improperly one-sided in RBC's favor because it shortens the statute of limitations on Dasher's claims and limits discovery on same. This argument, like Dasher's other arguments, is unavailing. First, Dasher cites to no case supporting his proposition that shortening the statute of limitations renders an arbitration provision unconscionable. In fact, the cases to which Dasher cites actually upheld contractual clauses shortening statutes of limitations to a year or less. *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 288 (4th Cir. 2007) (one year); *Badgett v. Federal Express Corp.*, 378 F. Supp. 2d 613, 625-26 (M.D. N.C. 2005) (six months). Additionally, Dasher should know within days of receiving a statement whether an improper overdraft fee was charged by RBC; therefore, a one-year limitations period is reasonable. Second, the arbitration provision's discovery limits are not one-sided. In fact, they prevent both parties from needlessly wasting each other's resources on abusive discovery. Such measures promote the efficiency that arbitration is supposed to provide the parties. In any event, if this Court finds that the shortening of the statute limitations or the restrictions on discovery to be unenforceable, then the revised Agreement's severability clause allows these requirements to be severed. *See Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1024 (Fla. 4th DCA 2005) (severing provision in arbitration clause prohibiting award of attorneys' fees in derogation of Florida's Deceptive and Unfair Trade Practices Act because contract contained severability clause).[3] As a result, the arbitration clause at issue is not substantively unconscionable.

---

[3] The *Tillman* court found that provisions in the arbitration clause at issue in that case could not be severed from the rest of the arbitration clause because it "would require the Court to rewrite the entire clause." 655 S.E.2d at 373. Such is not the case here. The one-year statute of

## V.     Dasher's Arbitration-Specific Arguments Violate The FAA Because They Improperly Single Out Arbitration Clauses.

Dasher's substantive unconscionability arguments, which are arbitration-specific, violate the FAA.  Section 2 of the FAA " 'declare[s] a national policy favoring arbitration' of claims that parties contract to settle in that manner.' " *Preston v. Ferrer*, 552 U.S. 346, 352 (2008) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984)).  The FAA embodies an overarching federal policy "to ensure that private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen*, 130 S. Ct. at 1773 (quotations and citations omitted).  Any effort to avoid arbitration that is based on a "state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue" violates Section 2.  *Perry v. Thomas*, 482 U.S. 483, 492 (1987); *see also Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996) (invalidating state statute conditioning enforceability of arbitration agreements on compliance with special notice requirement because it "places arbitration agreements in a class apart from 'any contract' and singularly limits their validity" and holding that such statute is preempted by the FAA) .  The FAA does not permit analyzing the underlying dispute to make a preliminary determination that the issues involved are substantively "too difficult and small" for an arbitral forum, as this shows hostility towards arbitration.

If the Court adopts Dasher's arbitration-specific arguments, then every arbitration agreement will be subject to attack—not on grounds related to the agreement to arbitrate, but on the size and complexity of the underlying dispute and the availability of counsel willing to undertake the representation.  This is not what Congress intended.  To subject arbitration agreements to such a case-specific standard for enforceability, one not generally applicable to

---

limitations and discovery clauses are more similar to the attorneys' fee clause in *Fonte* that was severed by the court.

other types of contracts, violates the FAA. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983) (every presumption must be made in favor of arbitration). Courts must accept the FAA's policy of favoring arbitration, even if the arbitral forum is not favored by the general population of plaintiffs' counsel, because "the fact that certain litigation devices may not be available in an arbitration is part and parcel of arbitration's ability to offer 'simplicity, informality, and expedition.' " *Iberia Credit Bureau*, 379 F.3d at 174 (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991)). Because Dasher's argument improperly draws an arbitrary line between claims that are, in his opinion, simple yet substantial "enough" to merit individual arbitration and claims that are too complex and small-dollar to justify individual arbitration, his position disfavors arbitration; this is forbidden by the FAA. Consequently, this Court should give no credence to Dasher's arbitration-specific substantive unconscionability arguments.[4]

## CONCLUSION

For all the above-stated reasons, RBC's Motion to Compel Arbitration and Stay All Proceedings should be granted, and this case should be stayed pending the completion of arbitration.

---

[4] RBC's Motion to Compel Arbitration is straightforward, yet Dasher insists that he needs an opportunity to obtain discovery from RBC and "present all material that is pertinent to the motion." Opp., p.3. Importantly, Dasher has not proposed what additional discovery is needed concerning the enforceability of the arbitration provision. Discovery is not necessary because this Court already has all of the relevant information that it needs to resolve RBC's Motion to Compel Arbitration. As established by the pleadings, the Affidavit of Sonia Bauer, and the arbitration provision at issue, the pertinent facts are: (1) RBC sent Dasher the revised Agreement, which contained the arbitration provision at issue; and (2) Dasher agreed to the revised Agreement, including the arbitration provision, by continuing to use his RBC checking account thereafter. Here, the filing fees for arbitration are clearly delineated in the American Arbitration Association's procedures, and Dasher has already stated that he believes these filing fees make his claims cost-prohibitive. Consequently, discovery would only serve to delay these proceedings and subject both Dasher and RBC to unnecessary litigation expenses.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 19th, 2010, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Virginia Townes
Virginia B. Townes, Esq.
Florida Bar Number:  361879
virginia.townes@akerman.com
**AKERMAN SENTERFITT**
420 South Orange Avenue
Post Office Box 231
Orlando, FL  32802-0231
Phone:  (407) 423-4000
Fax:  (407) 843-6610

Christopher S. Carver, Esq.
Florida Bar Number: 993580
christopher.carver@akerman.com
**AKERMAN SENTERFITT**
One S.E. Third Avenue – Suite 2500
Miami, FL 33131-1714
Phone:  (305) 374-5600
Fax:  (305) 374-5095

Attorneys for Defendant, RBC Bank (USA)

**SERVICE LIST**
**Michael Dasher v. RBC BANK (USA)**
**Case No. 1:10-cv-22190-JLK**
**United States District Court, Southern District of Florida**

Jeffrey M. Ostrow
ostrow@kolawyers.com
David L. Ferguson
ferguson@kolawyers.com
Kopelowitz Ostrow Ferguson
   Weiselberg Keechl
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, Florida 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*Counsel for Plaintiff and the Proposed Class*
Served via CM/ECF

Darren T. Kaplan
dkaplan@chitwoodlaw.com
Chitwood Harley Harnes, LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476
*Co-counsel for Plaintiff and the Proposed Class*
Served via U.S. Mail

{O1567251;6}            12