**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-MD-02036-JLK**

| | |
|---|---|
| **IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION** | ) <br> ) <br> ) <br> ) |
| **MDL NO. 2036** | ) <br> ) <br> ) |

| | |
|---|---|
| **THIS DOCUMENT RELATES TO:** | ) <br> ) <br> ) |
| *Townsend v. Wells Fargo Bank & Co., et al.* <br> **S.D. Fla. Case No. 1:10-cv-21834-JLK** <br> **C.D. Cal. Case No. CV 10-550 ODW** | ) <br> ) <br> ) <br> ) |

**MOTION OF JPMORGAN CHASE BANK, NA. AND JPMORGAN CHASE & CO.
TO STAY PROCEEDINGS IN FAVOR OF ARBITRATION,
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ..................................................................... ii

**FACTUAL AND PROCEDURAL BACKGROUND** ....................................1

**ARGUMENT** ...............................................................................................4

**I.    Townsend's Claims Against Chase And Its Parent Should Be Stayed
        In Favor Of Arbitration** ...............................................................4

    A.    Townsend Entered Into Binding Arbitration Agreements With Chase .............................4

    B.    Townsend Is Required To Arbitrate His Alleged Claim Against
              JPMorgan Chase & Co., The Parent Company, As Well As
              His Claim Against The Bank ................................................6

    C.    Townsend's Claims Against Chase Should Be Stayed In Favor
              Of Arbitration Regardless Of Whether His Wells Fargo Claims
              Proceed To Litigation ..........................................................7

**II.   No Ground Exists For Townsend To Avoid Arbitration With Chase** ..............................7

    A.    The Agreements Are Not Procedurally Unconscionable .......................................8

    B.    The Agreements Are Not Substantively Unconscionable .....................................11

    C.    The Arbitration Agreements Are Not Invalid On Account Of Their
              Designation Of The American Arbitration Association ..................................14

    D.    That The Agreements Provide For Individual Arbitration Procedures
              —Not Class Arbitration—Does Not Provide A Ground For Their
              Avoidance In Townsend's Case...........................................15

**CONCLUSION** .........................................................................................18

**CERTIFICATE OF GOOD FAITH COMPLIANCE**.................................18

# TABLE OF AUTHORITIES

## CASES

*Allied-Bruce Terminix Companies v. Dobson*,
  513 U.S. 265 (1995)............................................................................................11

*American Heritage Life Insurance Co. v. Orr*,
  294 F.3d 702 (5th Cir. 2002) ............................................................................12

*Arguelles-Romero v. Superior Court*,
  184 Cal. App. 4th 825 (2010) ......................................................................11, 12

*Bess v. Check Express*,
  294 F.3d 1298 (11th Cir. 2002) ..........................................................................7

*Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*,
  203 F.R.D. 677 (S.D. Fla. 2001), *appeal dismissed in relevant part*, 312 F.3d 1349
  (11th Cir. 2002)..................................................................................................15

*Brown v. ITT Consumer Finance Corp.*,
  211 F.3d 1217 (11th Cir. 2000) ........................................................................14

*Brown v. Wells Fargo Bank, N.A.*,
  168 Cal. App. 4th 938 (2008) ............................................................................11

*California Grocers Association v. Bank of America*,
  22 Cal. App. 4th 205 (1994) ........................................................................11, 12

*Cappuccitti v. DirecTV, Inc.*,
  No. 09-141-7, 2010 WL 2803093 (11th Cir. July 19, 2010) ...............................2

*Davis v. O'Melveny & Myers*,
  485 F.3d 1066 (9th Cir. 2007) ............................................................................7

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)..............................................................................................8

*Discover Bank v. Superior Court*,
  113 P.3d 1100 (Cal. 2005) ................................................................................10

*Doctor's Associates, Inc. v. Casarotto*,
  517 U.S. 681 (1996)............................................................................................16

*Doctor's Associates, Inc. v. Stuart*,
  85 F.3d 975 (2d Cir. 1996)................................................................................15

*Engalla v. Permanente Medical Group, Inc.*,
    938 P.2d 903 (Cal. 1997) ............................................................................................11

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ..........................................................................................5, 15, 16

*Green Tree Finance Corp. v. Randolph*,
    531 U.S. 79 (2000) ......................................................................................................4

*Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir. 1982), *overruled on other grounds*,
    *Langley v. FDIC*, 484 U.S. 86 (1987) ........................................................................9

*Hall St. Associates, L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008) ..................................................................................................16

*In re Managed Care Litigation*,
    No. 00-1334-MD, 2009 WL 856321 (S.D. Fla. Mar. 30, 2009) ..................................7

*Jackson v. Payday Loan Store of Illinois, Inc.*,
    No. 09 C 4189, 2010 WL 1031590 (N.D. Ill. Mar. 17, 2010) ..................................14

*Jenkins v. First America Cash Advance of Ga., LLC*,
    400 F.3d 868 (11th Cir. 2005) ....................................................................................5

*Klay v. All Defendants*,
    389 F.3d 1191 (11th Cir. 2004) ...............................................................................4, 7

*Ledford v. Peeples*,
    605 F.3d 871 (11th Cir. 2010) ....................................................................................2

*Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*,
    473 U.S. 614 (1985) ..........................................................................................5, 12, 16

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983) .....................................................................................................5, 7

*Oldroyd v. Elmira Savings Bank, FSB*,
    134 F.3d 72 (2d Cir. 1998) ..........................................................................................5

*Perry v. Thomas*,
    482 U.S. 483 (1987) ............................................................................................16, 17

*Pokorny v. Quixtar, Inc.*,
    601 F.3d 987 (9th Cir. 2010) ...........................................................................8, 10, 13

*Rent-A-Center, West, Inc. v. Jackson*,
    130 S. Ct. 2772 (2010) ...................................................................................................13

*Richardson v. Palm Harbor Homes, Inc.*,
    254 F.3d 1321 (11th Cir. 2001) .......................................................................................4

*Sanchez v. Western Pizza Enterprises, Inc.*,
    172 Cal. App. 4th 154 (2009) .........................................................................................10

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ........................................................................................................16

*Southland Corp. v. Keating*,
    465 U.S. 1 (1984) ............................................................................................................16

*Spiegel v. Siegel*,
    No. 06-61848-CIV, 2007 WL 2051005 (S.D. Fla. July 17, 2007) ...................................7

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
    130 S. Ct. 1758 (2010) ....................................................................................................17

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
    10 F.3d 753 (11th Cir. 1993) ...........................................................................................6

*United Steelworkers of America v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ........................................................................................................17

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*,
    489 U.S. 468 (1989) ........................................................................................................17

## STATUTES

9 U.S.C. § 1 .............................................................................................................................1

9 U.S.C. § 2 .......................................................................................................................4, 16

9 U.S.C. § 3 .............................................................................................................................4

9 U.S.C. § 5 ...........................................................................................................................14

12 U.S.C. § 1332(c)(1)............................................................................................................2

# OTHER AUTHORITIES

American Arbitration Association, *AAA Announces Moratorium on Consumer Debt Collection Arbitration Cases* (July 27, 2009), *available at* http://www.adr.org/sp.asp?id=36432 ....................................................................................14

Bank Holding Company Performance Report December 31, 2009 for JPMorgan Chase & Co., *available at* http://www.ffiec.gov/nicpubweb/nicweb/FinancialReport.aspx ?parID_RSSD=1039502&parDT=20091231&parRptType=BHCPR&redirectPage=Fi nancialReport.aspx. ..........................................................................................................6

*JPMorgan Chase & Co.*, 90 Fed. Res. Bull. 352 (Sept. 2004) ......................................................6

Defendants JPMorgan Chase Bank, N.A. ("Chase") and JPMorgan Chase & Co. respectfully move to stay this action (insofar as it asserts claims against the Chase entities) in favor of arbitration.

*Unlike all the other arbitration motions in this MDL proceeding, this case is not a class action. The case is brought by a single plaintiff who does not purport to represent a class. Accordingly, the class action litigation grounds addressed in the Court's prior decisions about arbitration in this MDL are not apposite in this instance.*

The existence and terms of the arbitration agreements between Townsend and Chase are undisputed. It is also undisputed that the Townsend/Chase arbitration agreements cover the claims alleged in this case. Townsend has not identified any ground entitling him to avoid arbitration. In particular, since Townsend has not alleged a class action, the fact that arbitration must proceed on an individual basis is no problem here. Townsend's claims should therefore be stayed, in favor of arbitration, pursuant to the terms of his agreements and the Federal Arbitration Act, 9 U.S.C. § 1, *et seq*.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Procedural Status

This is a *pro se* individual action, originally filed in the Central District of California, against JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co.,[1] challenging certain overdraft

---

[1]    JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. are mistakenly referred to in the *Townsend* complaint as Chase Bank USA, N.A. and J.P. Morgan Chase, respectively.

practices.[2]  The Judicial Panel on Multidistrict Litigation transferred the case to this district as

part of MDL 2036.  [Dkt. No. 16].  No answer has been filed; there has been no discovery; and

there has been no substantive motion practice.[3]

On July 7, Townsend moved for partial summary judgment, seeking a declaration that his

Chase arbitration agreements could not be enforced.  [MDL Dkt. No. 661.]  On July 13, this

Court, *sua sponte*, denied Townsend's motion as premature, without prejudice to renewal upon

Chase's invocation of its right to arbitrate Townsend's claims.  [MDL Dkt. No. 676.]

In addition to Townsend's claims against Chase, the complaint alleges certain claims

against Wells Fargo entities, relating to bank accounts that Townsend has with Wells Fargo.  The

complaint does not allege any joint liability or any relationship between Chase and Wells Fargo,

---

[2]     Although *pro se*, Townsend is no stranger to federal court litigation.  *See, e.g.*, *Townsend v. Cal. Highway Patrol, et al.*, No. 10 Civ. 27 (C.D. Cal.); *Townsend v. Skype Inc., et al.*, No. 10 Civ. 161 (C.D. Cal.); *Townsend v. Brother Int'l Corp., et al.*, No. 10 Civ. 162 (C.D. Cal.); *Townsend v. Nat'l Arb. Forum, et al.*, No. 10 Civ. 2263 (D. Minn.); *Townsend v. Bank of Am., N.A., et al.*, No. 10 Civ. 372 (C.D. Cal.); *Townsend v. Pinnacle Fin. Grp., Inc., et al.*, No. 10 Civ. 526 (C.D. Cal.); *Townsend v. Chase Bank USA, N.A.*, No. 08 Civ. 527 (C.D. Cal.); *Townsend v. Mann-Bracken LLC, et al.*, No. 08 Civ. 983 (C.D. Cal.); *Townsend v. Cavalry Portfolio Svs. LLC, et al.*, No. 08 Civ. 996 (C.D. Cal.); *Townsend v. First Nat'l Bank of S. Dakota, et al.*, No. 08 Civ. 6384 (C.D. Cal.).

[3]     In keeping with this Court's ruling in *Dasher v. RBC Bank (USA)*, No. 10 Civ. 22190 [MDL Dkt. No. 763], and in order to forestall any possible claim of waiver, Chase is submitting the instant motion notwithstanding that subject-matter jurisdiction appears absent.  No federal-question jurisdiction is evident:  Townsend's complaint cites 18 U.S.C. § 1346, but that provision is merely the definitional provision of the criminal mail- and wire-fraud statute, and does not give rise to any federal claim on which relief can be granted.  *See Ledford v. Peeples*, 605 F.3d 871, 902 (11th Cir. 2010) (federal subject-matter jurisdiction is defeated where the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous").  No diversity jurisdiction appears to exist pursuant to 12 U.S.C. § 1332(a) because Townsend is a resident of California and has named as a defendant Wells Fargo & Co., a corporation whose principal place of business is in California, *see* 12 U.S.C. § 1332(c)(1), and there is no apparent basis in the complaint or otherwise for a damages claim of $75,000.  Townsend alleges diversity jurisdiction by virtue of 12 U.S.C. § 1332(d), but that provision is inapplicable because this case is not a class action.  In *Dasher*, this Court entertained and ruled upon the defendant bank's motion to compel arbitration even though the Court lacked subject-matter jurisdiction under the rule of *Cappuccitti v. DirecTV, Inc.*, No. 09-14107, 2010 WL 2803093 (11th Cir. July 19, 2010).

and it does not seek to hold Chase responsible for anything having to do with Townsend's Wells Fargo accounts (or vice versa). Townsend has apparently sued Chase and Wells Fargo simultaneously, in a single complaint, as a matter of convenience. The instant motion concerns only Townsend's obligation to arbitrate his claims against Chase, pursuant to his arbitration agreements with Chase.

## II.    Facts Relating To Chase's Request For A Stay In Favor Of Arbitration

Townsend is a checking account customer, with two accounts—a personal checking account and a business checking account—at a Chase branch in California. Townsend originally opened the accounts at Washington Mutual Bank, F.A. ("WaMu") in 2006. Chase acquired the two accounts when, after WaMu was closed by the government, Chase purchased most of WaMu's branch banking business from the FDIC in September 2008.

The Townsend/Chase account relationships are governed by written contracts. Compl. ¶ 32. Each includes an arbitration provision. Each of the accounts involves interstate commerce, and the arbitration terms are governed by the Federal Arbitration Act. Compl., Ex. F at 30.[4]

The arbitration provisions authorize either Chase or Townsend to elect binding arbitration of:

> any claim, dispute or controversy raised by either you or the Bank against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, heirs, agents or assigns of the other, arising from or relating in any way to this Agreement, any prior account agreement between you and the Bank, or the advertising, the application for, or the approval of your Account. . . .

---

[4]    For convenience, references in this motion will be to the Agreement attached as Exhibit F to the complaint, an additional copy of which is appended as Exhibit A to the Declaration of Rhonda Pettit filed in support of this motion ("Pettit Decl."). Further detail and documentation is set forth in the Pettit Declaration.

*Id.* at 31.[5]  Extensive detail in the arbitration provisions governs the mechanics and procedures

for arbitration.  None of these terms is disputed.  Chase notified Townsend in June of this year

that it was electing arbitration of the disputes alleged in his complaint, and that it will pay the

arbitration costs.  *See* Ex. 1 (attached hereto).


## ARGUMENT

**I.**     **Townsend's Claims Against Chase And Its Parent Should Be Stayed In Favor Of Arbitration**

   **A.**     **Townsend Entered Into Binding Arbitration Agreements With Chase**

   The Federal Arbitration Act ("FAA") provides, as a matter of federal law, for the

enforcement of written arbitration agreements.  Section 2 of the FAA provides that "[a] written

provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a

controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable,

and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

contract."  9 U.S.C. § 2.  Section 3 of the FAA provides that a federal court shall stay any

litigation upon the application of a party, if the suit was brought "upon any issue referable to

arbitration under an agreement in writing for such arbitration . . . ."  9 U.S.C. § 3.  When such a

showing is made, a stay is mandatory.  *See Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th

Cir. 2004) ("[T]he language of Section 3 indicates that the stay is mandatory.").

   Townsend bears the burden of proof if he seeks to avoid arbitration.  *See Richardson v.

Palm Harbor Homes, Inc.*, 254 F.3d 1321, 1324 (11th Cir. 2001); *see also Green Tree Fin. Corp.

v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of

---

[5]     The Agreement provides a limited exception for claims pursued in small claims court.
Compl., Ex. F at 31.

proving that the claims at issue are unsuitable for arbitration.").  Moreover, in determining whether a dispute is subject to arbitration, the Supreme Court has said that courts are to vindicate the "liberal federal policy favoring arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24-25.

Generally, a court must enforce an arbitration agreement, by staying its hand in favor of arbitration, whenever it finds that (1) the parties agreed to arbitrate, and (2) the dispute falls within the scope of that agreement.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 75-76 (2d Cir. 1998).  Both requirements are met in this case:

*First*, there is no doubt as to the existence of the arbitration contracts between Townsend and Chase.  The complaint pleads both the existence and specific terms of the arbitration contracts.  Compl. ¶¶ 32-34, 39; *see also* Pettit Decl. ¶¶ 6-9, 15-18.

*Second*, the claims pleaded in the complaint against Chase are within the terms of the arbitration agreements.  The arbitration provision applies to all claims "arising from or relating in any way to" the Agreement or any prior agreements governing the account.  Compl., Ex. F at 31. Each of the claims in Townsend's complaint concerns accounts governed by the Agreement and Chase's actions pursuant to the Agreement—easily falling into the category of claims "arising from or relating in any way to" the Agreement.  *Id.*

**B.     Townsend Is Required To Arbitrate His Alleged Claim Against JPMorgan Chase & Co., The Parent Company, As Well As His Claim Against The Bank**

Townsend has sued JPMorgan Chase & Co., the ultimate parent corporation, as well as the bank itself.  The complaint does not allege that the corporate parent has had any relationship with him or engaged in any transactions with him; nor does the complaint identify any wrongdoing by the corporate parent.  But the complaint nevertheless identifies the parent as a defendant.[6]  Any liability on the part of the parent is evidently derived solely from its status as owner of Chase.  *See* Compl. ¶¶ 14, 27.

The arbitration agreement between Townsend and the bank, by its terms, allows Chase to elect arbitration of any dispute against itself and its "parents," and Chase has so elected in this case.  *See* Ex. 1 (electing arbitration on behalf of JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co.).  Accordingly, Townsend is bound to proceed by arbitration with respect to his claims against the parent as well.  Even if the contract were not specific on the point, Townsend is required under established law to arbitrate his claims against the parent when they derive entirely out of his relationship with the bank, in light of his agreement to arbitrate with the bank.  *See, e.g.*, *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-57 (11th Cir. 1993) (where claims against a parent company and its subsidiary are based on the same facts and are

---

[6]     Paragraph 14 of the complaint refers to JPMorgan Chase & Co. as "a financial holding company organized under Delaware law," and alternatively as "a national bank, subject to the National Bank Act."  Only one can be true, of course, and it is the former.  Pettit Decl. ¶ 5.  The matter is also reflected in publicly-available government records that are suitable subjects of judicial notice. *See JPMorgan Chase & Co.*, 90 Fed. Res. Bull. 352 (Sept. 2004); *see also* Bank Holding Company Performance Report December 31, 2009 for JPMorgan Chase & Co., *available at* http://www.ffiec.gov/nicpubweb/nicweb/FinancialReport.aspx ?parID_RSSD=1039502&parDT=20091231&parRptType=BHCPR&redirectPage=FinancialRep ort.aspx.  The Court may also take judicial notice that it was Chase, not its parent, that acquired WaMu's accounts.  *See* http://www.fdic.gov/about/freedom/Washington_Mutual_P_and_A.pdf.; *see also* Pettit Decl. ¶ 13.

"inherently inseparable," court may compel parent to arbitrate even though parent did not sign

arbitration agreement).

### C. Townsend's Claims Against Chase Should Be Stayed In Favor Of Arbitration Regardless Of Whether His Wells Fargo Claims Proceed To Litigation

The instant motion concerns only arbitration of Townsend's claims regarding his Chase

accounts. Chase understands that Townsend may also have an agreement with Wells Fargo to

arbitrate disputes with that bank, and that Wells Fargo may file a motion to enforce such

obligation. Regardless of what happens with regard to Townsend's claims against Wells Fargo,

his Chase claims should be stayed pursuant to his Chase arbitration agreement. Townsend's

claims against Wells Fargo and Chase (and its parent) are based on unrelated accounts at

unrelated banks, and the claims arise out of unrelated transactions. Townsend's decision to file a

complaint against both Chase and Wells Fargo does not entitle him to avoid his Chase arbitration

obligation. As both the Supreme Court and the Eleventh Circuit have recognized, "proper

enforcement of FAA might yield piecemeal litigation." *Klay*, 389 F.3d at 1204 (citing *Dean*

*Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985); *Moses H. Cone*, 460 U.S. at 20); *see*

*also Spiegel v. Siegel*, No. 06-61848-CIV, 2007 WL 2051005, at *4 n.2 (S.D. Fla. July 17, 2007)

(noting that the FAA "actually requires such piecemeal litigation when necessary to give effect

to an arbitration agreement").

## II. No Ground Exists For Townsend To Avoid Arbitration With Chase

If Townsend seeks to avoid arbitration, he bears the burden of establishing that his

arbitration agreements are unconscionable. *See, e.g.*, *Bess v. Check Express*, 294 F.3d 1298,

1307 (11th Cir. 2002) (placing burden on party asserting unconscionability); *In re Managed*

*Care Litig.*, No. 00-1334-MD, 2009 WL 856321, at *3 (S.D. Fla. Mar. 30, 2009) ("It is the

burden of the party challenging a facially valid arbitration agreement to demonstrate that the

agreement is in fact unconscionable.").  Moreover, under California law about unconscionability,

Townsend would have to establish *both* procedural unconscionability *and* substantive

unconscionability.  *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007).

There is no basis in this case for finding unconscionability under these standards.

Significantly, the principal grounds on which other plaintiffs have asserted unconscionability of

arbitration agreements in other cases in this MDL proceeding—the unavailability of class-action

procedures in arbitration—do not apply to Townsend's claims, which are asserted individually

and not on a class-action basis.  In his failed motion initially challenging arbitration herein,

Townsend therefore relied principally on a case, *Pokorny v. Quixtar, Inc*., 601 F.3d 987, 996 (9th

Cir. 2010), that did not involve class claims—but (as we discuss below), none of the problems

with the defective arbitration agreement in *Pokorny* has anything to do with Townsend's

arbitration agreement with Chase.

## A.    The Agreements Are Not Procedurally Unconscionable

Townsend does not allege in his complaint, and has not otherwise established, any

circumstances constituting procedural unconscionability in the formation of his agreement with

Chase.  The pertinent facts are laid out in the Pettit Declaration, which shows that Townsend's

account terms were established, in writing, in a business-like way that was aboveboard in every

respect.  *See* Pettit Decl. ¶¶ 6, 10-15.

Townsend's bank (WaMu) failed, and its accounts were taken over by the government.

The government thereafter sold the WaMu accounts, including Townsend's, to Chase.  Chase in

due course converted Townsend's account to its own systems and terms.  Townsend's accounts

could have been unilaterally terminated instead of being converted to Chase terms, but it is

unlikely (and he does not claim) that that would have been his preference.  He has not claimed,

and there would be no basis for claiming, that this conversion—rather than unilateral closure of his accounts—constituted procedural unconscionability on Chase's part.  On the contrary, such conversions are universally considered to be preferable to unilaterally shutting down customers' accounts.  *See Gunter v. Hutcheson*, 674 F.2d 862, 865 (11th Cir. 1982), *overruled on other grounds, Langley v. FDIC*, 484 U.S. 86 (1987).  In any event, Townsend was free, if he did not like Chase or its terms, to move his banking business to any of the *other* hundreds of banks in California.  He has not chosen to do so.

When Chase applied its terms to Townsend's accounts, it proceeded in a business-like, orderly, and transparent way.  It sent Townsend a complete new set of account terms, laid out in detail, with appropriate disclosures, for both accounts.  Townsend has not contended that he failed to receive them (indeed, he attached one of the sets to his complaint), that they were incomplete in any pertinent way, or that he was unable to understand them.  The terms were commonplace in the banking industry, and have been accepted by millions of other Chase customers.  With respect to arbitration in particular—because that is the issue here—the matter is treated in great detail, laying out the applicability and standards for arbitration in ten paragraphs. The arbitration discussion is highlighted so that it will not be missed: The first paragraph about arbitration is all in capital letters to attract attention, and the communication transmitting the agreement to Townsend specially called out, on page 4, that it included an arbitration provision that was different from Townsend's old WaMu account terms.  Pettit Decl. ¶¶ 17-18. Townsend's complaint does not allege that, after receiving and reviewing these terms, he determined that he was unsatisfied and sought different terms.

Nothing in Chase's process of establishing and communicating Townsend's account terms, including his arbitration terms, was procedurally inappropriate, or otherwise improper or

unconscionable.  It is of course true that the terms Chase offered to Townsend were the same that other people got.  But there is no principle of unconscionability, or other law, that required Chase to make a special contract to do business with Townsend on hand-crafted terms different from other people, and he did not ask Chase to do so.

Under California law of unconscionability, the use of standard terms in this fashion does not invalidate a contract.  Being a standard form contract does not invalidate an agreement; otherwise, every mortgage, note, medical form, insurance contract, employment agreement, or the like would be invalid in California.  Rather, under California law, procedural unconscionability in all but the most substantively egregious cases depends on whether the conditions of contract formation involve oppression or unfair surprise.  *See Discover Bank v. Superior Court*, 113 P.3d 1100, 1109 (Cal. 2005).  "Oppression results from unequal bargaining power when a contracting party has no meaningful choice but to accept the contract terms. . . . Unfair surprise results from misleading bargaining conduct or other circumstances indicating that a party's consent was not an informed choice."  *Sanchez v. Western Pizza Enters., Inc*., 172 Cal. App. 4th 154, 173 (2009).  No such oppression or unfair surprise was present here.

Chase acknowledges that, under *Pokorny*, a contract that *is highly unconscionable in a substantive way* can meet the minimum requirement for "procedural unconscionability" in California "if it is a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Pokorny*, 601 F.3d at 996 (internal quotation marks and citation omitted).  But there is, and could be, no contention here that there was anything procedurally *wrong* with the formation of Chase's account agreements with Townsend.  What *Pokorny* says is not that standardized contracts are invalid, or even suspect; rather it says that when a standardized contract's terms are highly

unconscionable in substantive terms, they may be held invalid without any showing of particular oppression or bargaining impropriety.  We discuss substantive unconscionability issues below, and show that the Chase agreements were *not* substantively unconscionable in any such way.

### B.     The Agreements Are Not Substantively Unconscionable

Under California law, substantive unconscionability considers whether contract terms "are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms."  *See Arguelles-Romero v. Superior Court*, 184 Cal. App. 4th 825, 844 (2010) (internal citation omitted).  Under California law, a contract is only unconscionable if a person would have to be "under delusion" to accept it.  *California Grocers Ass'n v. Bank of Am.*, 22 Cal. App. 4th 205, 214-15 (1994).  Moreover, assessment of such one-sidedness requires consideration of the totality of a contract's terms, not a half-blind evaluation of just the terms that one side agrees to in order to obtain the other side's goods and services.  *See, e.g.*, *Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 955-57 (2008) (considering nature of arbitration process provided for in agreement and other circumstances in concluding that arbitration clause was not unconscionable).

Even if the focus here were narrowed to the arbitration provisions alone, there is nothing substantively unconscionable in adopting arbitration here.  The law of California favors arbitration, including arbitration involving individuals versus business entities.  *See Engalla v. Permanente Med. Group, Inc.*, 938 P.2d 903, 915 (Cal. 1997) ("California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability."); *see also Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 280 (1995) ("Congress . . . had the needs of consumers, as well as others, in mind," in formulating the FAA's liberal policy favoring arbitration agreements.).

Moreover, arbitration in the context of everyday bank account agreements involves mutual trade-offs, and benefits to both sides—*particularly including benefits to depositors like Townsend*.  With respect to the everyday snafus that are the material focus of any account dispute-resolution process, the bank gives up any opportunity to protect itself behind the high cost of initiating court proceedings—agreeing to give customers a simple, inexpensive, quick adjudication of problems, by a neutral arbitrator who has power to bind Chase and make a customer whole.  Nothing about this is "so one-sided" that it "shock[s] the conscience," or to appeal only to the "delusion[al]," *Arguelles-Romero*, 184 Cal. App. 4th at 844, *California Grocers*, 22 Cal. App. 4th at 214-215, even if one party in retrospect might wish to change its deal.  Quite the contrary, the ubiquity of similar terms, in consumer contracts of all kinds, demonstrates that such trade-offs are commonly accepted by millions of Americans on an everyday basis.

Townsend has objected that the agreement's arbitration provision requires him to "waive . . . jury trial."[7]  But the unavailability of a jury is inherent in arbitration, and the cases have resoundingly rejected any argument that a jury's unavailability constitutes grounds for invalidating an agreement to arbitrate.  *American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711 (5th Cir. 2002) ("The Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum.").  As the Supreme Court has long recognized, "[b]y agreeing to arbitrate . . . , [a party] trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 626 (1985).

---

[7]     Townsend's Motion for Partial Summary Judgment ("MSJ") [MDL Dkt. No. 661] at 4.

The *Pokorny* decision, on which Townsend has principally relied, found that the particular arbitration agreement in that case was invalid because of five specific problems:

- It required the plaintiffs, but not the defendant, to submit their grievances to informal conciliation before they could invoke arbitration, *Pokorny*, 601 F.3d at 998;

- The plaintiffs' claims were subject to a reduced statute of limitations, and defendants' claims were not, *id.* at 1001;

- The plaintiffs were required to keep their claims and details about their arbitration proceedings confidential, and defendants were not, *id.*;

- The plaintiffs had to submit their claims to arbitration before arbitrators trained by the defendant, *id.* at 1002-04;

- The agreements included a "fee-shifting clause that unfairly exposes [plaintiffs] to a greater financial risk in arbitrating," *id.* at 1004.

But Chase's agreements contain none of these features, nor any similarly oppressive features. It requires arbitration of either side's claims; it does not reduce the statute of limitations; it does not require one-way confidentiality;[8] it provides for neutral arbitrators; and Townsend is not required to pay Chase's arbitration expenses in any circumstances. Townsend's arbitration agreements with Chase do not have any of the *Pokorny* defects; nor does Townsend identify any other similar problem.[9]

---

[8]     Townsend has mistakenly contended that his agreement with Chase "dictate[s] that the nature and results of the arbitration proceedings be confidential whether the consumer likes it or not." MSJ 5. In fact, Chase's agreements with Townsend do not include any such provision.

[9]     Townsend has suggested that Chase's arbitration agreement delegates to the arbitrator the threshold determination whether the dispute is arbitrable. But that is simply wrong; the agreement contains no such provision. Even if it did, that would be no defect: The Supreme Court has made clear that "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010) (internal citations omitted).

**C.      The Arbitration Agreements Are Not Invalid On Account Of Their Designation Of The American Arbitration Association**

Townsend has argued that his arbitration agreements are unenforceable because they provide for arbitration before the American Arbitration Association ("AAA") when, he asserts, that organization is not available for arbitration of "consumer credit card disputes."[10]   It is correct that the agreements provide for AAA arbitration.  But there is no basis for the assertion that the AAA is unable to arbitrate the claims advanced in this case.  To begin with, this matter does not involve "consumer credit card disputes."  Moreover, while the AAA suspended in July 2009 arbitration of certain types of disputes initiated by businesses to collect debts, it plainly stated at the same time that "[t]he AAA will continue to administer all demands for arbitration filed by consumers against businesses."  *See* American Arbitration Association, *AAA Announces Moratorium on Consumer Debt Collection Arbitration Cases* (July 27, 2009), *available at* http://www.adr.org/sp.asp?id=36432.  This Court's Order in the Huntington Bank case specifically envisioned AAA arbitration of the kinds of disputes presented in this MDL.  *See* Order Granting Motion to Compel Arbitration, *Gulley v. Huntington Bancshares Inc.* [MDL Dkt. No. 514] at 8, 12.

Even if the AAA were unavailable, section 5 of the Federal Arbitration Act provides for enforcement of the arbitration agreements, and appointment of an alternative.  9 U.S.C. § 5; *see Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) ("Where the chosen forum is unavailable, however, or has failed for some reason, § 5 applies and a substitute arbitrator may be named."); *see also Jackson v. Payday Loan Store of Ill., Inc.*, No. 09 C 4189, 2010 WL 1031590, at *2, *4 (N.D. Ill. Mar. 17, 2010) (rejecting argument that AAA moratorium

---

[10]      MSJ 6.  The arbitration agreements alternatively provide for arbitration before the National Arbitration Forum, but that entity has ceased arbitrating matters such as this.

- 14 -

applied to the consumer-initiated dispute at issue, and stating that even if the organizations

identified in the contract could not hear the dispute, section 5 of the FAA provides a mechanism

for appointing a substitute).[11]

> **D.**   **That The Agreements Provide For Individual Arbitration Procedures—Not Class Arbitration—Does Not Provide A Ground For Their Avoidance In Townsend's Case**

Townsend does not bring this case as a class action.  It is therefore not pertinent that his

arbitration agreements with Chase provide for individual arbitration procedures rather than "class

arbitration" procedures.  In this respect, Townsend's opposition to arbitration is different from

the arbitration issues raised in this MDL by other plaintiffs who *were* seeking to sue on a class

basis.  Townsend is not disadvantaged by the fact that his arbitration agreements do not provide

for class-action procedures, since he is not advancing a class-action complaint (and, as a *pro se*

plaintiff who is not admitted to the bar, would not be equipped to proceed on a class basis even if

he sought to).  Moreover, Townsend would hardly be in a position to contend that his arbitration

agreement "shocks the conscience" or is unduly "oppressive" as to him (to use unconscionability

terms), in not providing for class procedures, when his own complaint is advanced on a non-class

---

[11]      It appears that Townsend has lost confidence in the capability of AAA.  But that organization has long been respected as the leading provider of arbitration services in this country.  There has been no finding by any Court (nor any other authority) that AAA arbitration of claims is presumptively biased or unfair.  The opposite is true.  *See, e.g.*, *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 981 (2d Cir. 1996) ("Defendants have failed to present any credible evidence indicating bias on the part of the AAA—or its arbitrators—in favor of DAI in this case, particularly because Defendants' claims have not yet gone to arbitration.").  Moreover, the Supreme Court has made clear that "challenges to the adequacy of arbitration procedures are insufficient to preclude arbitration," and that the court must not "indulge [the plaintiff's] speculation that the parties and the arbitral body will not retain competent, conscientious, and impartial arbitrators."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30-31 (1991); *see also Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 203 F.R.D. 677, 687 (S.D. Fla. 2001) (under the FAA, review "of an arbitrator's qualifications or alleged bias . . . are confined under the statute to judicial decisions to confirm, modify, or vacate an arbitration award *after* a final arbitration decision has been made"), *appeal dismissed in relevant part*, 312 F.3d 1349 (11th Cir. 2002).

basis.  California law does not provide that an arbitration agreement is inherently unlawful if it does not provide for "class arbitration" procedures.

Moreover, even if California *did* embrace a State law rule that "class arbitrations" must be provided for in every arbitration agreement, such a rule would not preclude the enforcement of Townsend's arbitration agreements here because it would be preempted by the FAA.  The Supreme Court has made it explicitly clear that the FAA makes *federally enforceable* a written contractual agreement to forego "the procedures and opportunity for review of the courtroom" and to select instead non-judicial procedures to resolve disputes in arbitration with different procedures.  *Gilmer*, 500 U.S. at 31 (1991) (quoting *Mitsubishi Motors*, 473 U.S. at 628); *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 586 (2008); *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974) ("An agreement to arbitrate . . . is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute.").  State law or policy may be contrary to the federal preference for simplified arbitration procedures, and might favor class action and other procedures that are provided by judicial forums operating under procedures that apply in courts—but the very point of the FAA is that it is a federal command that preempts such State law, and it makes arbitration agreements enforceable even though they do not provide for court procedures.  *Southland Corp. v. Keating*, 465 U.S. 1, 15-16 (1984) (holding that the FAA preempts arbitration procedures required by California law).[12]  Under the FAA, parties "may limit by contract the issues which

---

[12]     The FAA does not dictate enforcement of an arbitration contract if the basic State-law legal standards for creation of "*any* contract" are violated. *See* 9 U.S.C. § 2 (emphasis added). Thus, "*generally applicable* contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without violating § 2" of the FAA. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (emphasis added).  But, as the Supreme Court has made equally clear, "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2." *Perry*

they will arbitrate, . . . so too may they specify by contract the rules under which that arbitration will be conducted." *Volt Info. Sci., Inc. v. Board of Trs. of Leland Stanford Junior Univ*., 489 U.S. 468, 479 (1989).  Indeed, the Supreme Court specifically reiterated this year, in the "class arbitration" context, the fundamental FAA principle that "parties may agree to limit the issues they choose to arbitrate . . . and may agree on the *rules under which any arbitration will proceed*. . . .  We think it is also clear from our precedents and the contractual nature of arbitration that parties may *specify with whom they choose to arbitrate* their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1774 (2010) (emphasis added).  Moreover, under the FAA, an arbitrator "'has no general charter to administer justice for a community which transcends the parties.'" *Id*. (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960)).

In *Stolt-Nielsen*, the Supreme Court specifically held that, under the FAA, arbitration agreements *presumptively do not allow for class arbitration*.  *Stolt-Nielsen*, 130 S. Ct. at 1774-1775 ("Underscoring the consensual nature of private dispute resolution," and finding that "class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.").  Instead, *Stolt-Nielsen* held, it is up to the parties—not State law or State policy—to decide the "rules under which any arbitration will proceed" and "with whom they choose to arbitrate their disputes." *Id.* at 1774.  Any attempt to impose State-law "class arbitration"

---

*v. Thomas*, 482 U.S. 483, 492 n.9 (1987).  If California law embodies a policy or doctrine to specially require class action procedures in arbitration, it would *not* constitute such a general principle of contract formation applicable to "any contract" as allowed by section 2 of the FAA. There is no serious argument that the Chase/Townsend arbitration contracts—formed exactly as they were formed here—would be substantively impermissible if they *did* provide for class arbitration procedures.  The "class arbitration" objection is thus not about general principles of contract, but instead "takes its meaning precisely from the fact that it a contract to arbitrate is at issue." *Perry*, 482 U.S. at 492 n.9.

requirements would thus contravene the FAA: Such requirements would override the parties' contracted-for limitation that arbitrations would involve only the parties to the particular contract; they would override the parties' contracted-for limitations on arbitration scope and procedures; and they would invest the arbitrator with a general authority to decide matters on a community basis beyond the individual parties to the arbitration agreement. Because any such State law would contravene the FAA, it would be preempted.

## CONCLUSION

Townsend's claims against JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. should be stayed in favor of arbitration.

## CERTIFICATE OF GOOD FAITH COMPLIANCE

Chase certifies that it conferred with plaintiff in a good-faith effort to resolve this issue, but the parties were unable to do so.

Dated:  September 1, 2010

WILMER CUTLER PICKERING HALE
 AND DORR LLP
s/ Christopher R. Lipsett
Christopher R. Lipsett
(chris.lipsett@wilmerhale.com)
David S. Lesser
(david.lesser@wilmerhale.com)
Alan E. Schoenfeld
(alan.schoenfeld@wilmerhale.com)
399 Park Avenue
New York, New York 10022
tel: (212) 230-8851
fax: (212) 230-8888

*Attorneys for defendants JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co.*