IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-MD-02036-JLK

|  |  |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION<br><br>MDL NO. 2036 | )<br>)<br>)<br>)<br>)<br>) |

|  |  |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>*Townsend v. Wells Fargo Bank & Co., et al.*<br>S.D. Fla. Case No. 1:10-cv-21834-JLK<br>C.D. Cal. Case No. CV 10-550 ODW | )<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF RHONDA PETTIT

I, Rhonda Pettit, declare and state as follows:

1. My name is Rhonda Pettit. I am over the age of 21 years, and have personal knowledge of the facts stated herein and am competent to testify to the same.

2. I am a Project Manager III at JPMorgan Chase Bank, N.A. ("Chase"), a defendant in this lawsuit.

3. In my capacity as Project Manager, I have personal knowledge of the business affairs of Chase discussed in this declaration.

4. In preparing this declaration, I have relied on information contained in the records of Chase. The documents attached as exhibits are business records, made at or near the time by, or from information transmitted by, a person with knowledge and kept in the ordinary course of the regularly conducted business activity of Chase.

5. JPMorgan Chase & Co. is a financial holding company. JPMorgan Chase Bank, N.A. is a wholly owned subsidiary of JPMorgan Chase & Co.

6. Chase checking accounts are governed by a Deposit Account Agreement ("Chase Agreement"), which is typically conveyed to customers along with other information in a document styled Account Rules and Regulations. The Chase Agreement may be amended from time to time, so that for any individual customer, their original terms may not be the same as their current terms; in addition, an individual may become a Chase customer as a result of Chase's acquisition of his or her account from another institution, in which case the individual's original terms with the prior institution will change after his or her account is transitioned to Chase. Once such updates and transitions are accomplished, customers have individual contracts with Chase governing their individual accounts, but all follow the Chase Agreement standardized form.

7. I have been advised that plaintiff Robert Townsend has alleged that he is a Chase customer and that his accounts are governed by Chase Agreements. I have been advised that Townsend incorporated, as Exhibit F to his Complaint, a representative copy of Chase's Account Rules & Regulations, which are contained in a document that Chase would have mailed to Townsend on or about July 24, 2009. *See infra* ¶ 15. A true and correct copy of that document is appended as Exhibit A to this Declaration.

8. Exhibit F to the Complaint, and Exhibit A hereto, includes a section titled "Arbitration," which states:

> PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES, WITH THE SPECIFIC EXCEPTION STATED BELOW, THAT ANY DISPUTE MUST BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN

ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION.  YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR TO BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION.  IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND THE BANK MIGHT OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS).  EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED.  OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS THE RIGHT TO APPEAL AND TO CERTAIN TYPES OF DISCOVERY, MAY BE MORE LIMITED OR MAY ALSO BE WAIVED.

Either you or the Bank may, without the other's consent, elect mandatory, binding arbitration of any claim, dispute or controversy raised by either you or the Bank against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, heirs, agents or assigns of the other, arising from or relating in any way to this Agreement, any prior account agreement between you and the Bank, or the advertising, the application for, or the approval of your Account (the "Claim" or "Claims").  All Claims originating from or relating to this Agreement are subject to arbitration, no matter what theory they are based on or what remedy they seek, whether legal or equitable.  This includes Claims based on contract, tort (including intentional tort), fraud, agency, negligence, statutory or regulatory provisions, or any other sources of law, or any request for equitable relief.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and any party to a proceeding in court may elect arbitration with respect to any Claims advanced in the lawsuit by any party or parties.

As an exception to this arbitration provision, you retain the right to pursue in a small claims court, any Claim that is within that court's jurisdiction and proceed on an individual basis.

If you or the Bank elects to arbitrate a Claim, the arbitration will be conducted as an individual action.  Neither you nor the Bank consents or agrees to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed with any arbitration on a class or representative basis.  This arbitration provision applies to and includes any Claims made and remedies sought as part of any class action, private attorney general or other representative action, which Claims hereby are made subject to arbitration on an individual (non-class, non-representative) basis.  This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between you and the Bank related to this Agreement raised in such lawsuits will be subject to an individual arbitration Claim if either you or the Bank so elects.

The party filing a Claim in arbitration must select either one of two national arbitration administrators: the National Arbitration Forum ("NAF") or

- 3 -

the American Arbitration Association ("AAA").  The arbitration organization that is selected will apply its code or procedures in effect at the time the arbitration claim is filed, unless any portion of that code or those procedures is inconsistent with any specific terms of this arbitration provision and/or this Agreement, in which case this arbitration provision and this Agreement shall prevail.  The arbitration will be conducted before a single arbitrator.  The arbitrator will apply applicable substantive law, including but not limited to the applicable Uniform Commercial Code, consistent with the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") and the applicable statute of limitations or condition precedent to suit, and will honor claims of privilege recognized at law.  The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against or for the benefit of any person who is not a party to the proceeding.  The arbitrator's authority is limited solely to the Claim(s) between you and the Bank alone.  The arbitration may not be consolidated with any other arbitration proceeding.  You and the Bank do not agree to any arbitration on any basis to which any party other than you and the Bank, the related parties enumerated above such as heirs, successors and assigns, or any other person obligated on the Account, is involved.

Any decision rendered in such arbitration proceeding will be final and binding on the parties, unless a party appeals in writing to the arbitration organization within 30 days of issuance of the award.  The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration organization.  The panel will reconsider all factual and legal issues anew, follow the same rules and laws that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority.  An award in arbitration will be enforceable as provided by the FAA or other applicable law by any court having jurisdiction.

We will reimburse you for the initial arbitration filing fee paid by you up to the amount of $500.  If there is a hearing, we will pay any fees of the arbitrator and arbitration administrator for the first two days of that hearing.  All other fees will be allocated in keeping with the rules of the arbitration administrator and applicable law.  If you prevail in the arbitration of any Claim against us, we will reimburse you for any fees you paid to the arbitration organization in connection with the arbitration.  All other fees, including attorneys' fees, will be allocated in keeping with the rules of the arbitration administrator.  Any decision rendered in such arbitration proceedings will be final and binding on the parties, and judgment may be entered in a court of competent jurisdiction.  Rules and forms may be obtained from, and Claims may be filed with, either of the two organizations, as follows: the NAF at P.O. Box 50191, Minneapolis, Minnesota 55405, web site at *www.arb-forum.com;* or the AAA at 335 Madison Avenue, Floor 10, New York, New York 10017, web site at *www.adr.org.*  Any arbitration hearing at which you wish to appear will take place at a location within the federal judicial district that includes your address at the time the Claim is filed.

This arbitration provision is part of and constitutes a transaction involving interstate commerce, and shall be governed by the FAA.

>This arbitration provision applies to all Claims relating to your Account that arose in the past, which may presently be in existence, or which may arise in the future. This arbitration provision shall survive termination of your Account as well as voluntary payment of any outstanding indebtedness in full by you, or any bankruptcy by you.  If we assign your Account to any unaffiliated third party, this arbitration provision will apply to any Claim between you and that third party if you or that third party chooses arbitration, or to any Claim between you and the Bank which occurred prior to such assignment or arises from such assignment.

Ex. A at 31-32.

9.  I have confirmed from Chase's records that the foregoing passage is an accurate statement of the terms set forth in the Chase Agreement applicable to Townsend's accounts. Certain other terms of the accounts have been amended since Exhibit A was issued, but none of the amended terms is included in the section titled "Arbitration" and none of those amended terms refers to (or is referred to within) the "Arbitration" section of the Chase Agreement.

10. On or about June 14, 2006, Townsend opened a personal checking account with Washington Mutual Bank, FA ("WaMu"), with an account number ending in 4121.

11. On or about December 13, 2006, Townsend opened a business checking account with WaMu, with an account number ending in 9497.

12. I have been advised that Townsend alleged in paragraph 27 of the Complaint that in September 2008, Chase acquired all deposits of WaMu.

13. It is a matter of public record that in September 2008, JPMorgan Chase Bank, N.A. acquired WaMu's deposit accounts, pursuant to a transaction with the FDIC.  *See* http://www.fdic.gov/about/freedom/ Washington_Mutual_P_and_A.pdf.  I have confirmed from Chase's records that Townsend's WaMu accounts with numbers ending 4121 and 9497 were acquired by Chase.

14. Townsend continues to hold both of these accounts with Chase.

15. As part of the transition of WaMu accounts, Chase amended WaMu account terms to Chase terms by sending a conversion booklet to each and every current WaMu consumer and business deposit account customer with a then-open account. I have confirmed from the records of Chase that, based on Chase's mailing schedule, as a former WaMu customer and resident of California with a still-open account, Townsend would have been mailed conversion booklets for his personal and business accounts on or about July 24, 2009 (the "Special Updates") concerning the transition of his account terms to Chase terms effective October 23, 2009. True and correct copies of the Special Updates are attached hereto as Exhibit B (personal) and Exhibit C (business).

16. The Special Updates both state that "by … maintaining a checking … account with us, you accept and agree to be bound by the terms and conditions of this Agreement." Exh. B at 9; Exh. C at 8. Similarly, the Special Updates state, "By maintaining your Account after the effective date of any change, you agree to be bound by the changes." Exh. B at 31; Exh. C at 30.

17. The text of the arbitration provision in the Chase Agreement, quoted above in paragraph 8, appears in the Special Updates. Exh. B at 32-33; Exh. C at 31-32.

18. Under a bold, italicized subheading called "*Arbitration*," the Special Updates also state that Chase's "arbitration agreement differs from the one in your current deposit agreement," and refer the accountholder to the page where the text of the arbitration provision is provided in the Special Update. Exh. B at 4; Exh. C at 4.

19. The arbitration provision quoted above in the Chase Agreement has not been amended between the issuance of the Special Updates and the filing of the Complaint.

- 7 -

20. Townsend continued to use his personal and business accounts after receiving the Special Updates. True and correct copies of his account statements showing recent account activity are attached hereto as Exhibit D.

21. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of August, 2010 in Columbus, Ohio.

_Rhonda Pettit_
Rhonda Pettit