Robert Townsend
P.O. Box 3330
Dana Point, CA 92629
(949)495-0089
Fax (949)495-0580
townsend@runbox.com

Plaintiff *Pro Se*

FILED

REC'D by _____ D.C.

SEP 2 8 2010

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. – MIAMI

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

ROBERT TOWNSEND,

    Plaintiff,

    vs.

WELLS FARGO BANK & COMPANY.,
WELLS FARGO BANK, NA., J.P
MORGAN CHASE, CHASE BANK USA,
N.A., AND AS SUCCESSOR'S IN
INTEREST TO WASHINGTON MUTUAL
BANK FA., Does 1-10

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

MDL Case **No. 10-2136**

Southern District of Florida Case No.
**10-CV-21834-JLK**

Central District of California Case No:
**CV10-00550 ODW(MLGx)**

**NOTICE OF, AND PLAINTIFF'S SECOND
MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST DEFENDANTS WELLS
FARGO BANK, N.A., WELLS FARGO BANK &
CO., CHASE BANK USA, N.A., J.P. MORGAN
CHASE**

TO LISTED DEFENDANTS AND THEIR COUNSEL OF RECORD:

    COMES NOW Plaintiff Robert Townsend (hereinafter "Townsend"), and hereby

files this, his Second Motion for Partial Summary Judgment against Defendants Wells

Fargo Bank, N.A., Wells Fargo Bank & Co. ("Wells Fargo"), and Chase Bank, N.A., JP

Morgan Chase (collectively "Chase") for the following reason: the mandatory binding

arbitration clauses contained within in the Defendants' checking account deposit

contracts are unconscionable and unenforceable.

## **BACKGROUND**

1. Townsend filed a similar motion for partial summary judgment prior to this one, on July 8, 2010. On July 12, 2010, this Court denied that motion for summary judgment without prejudice, stating that Townsend's MSJ on his claims related to the arbitration clauses was premature, because neither Wells Fargo nor Chase had moved to compel him to arbitration. However, Wells Fargo and Chase have now proceeded to file simultaneous motions (late August 2010) to stay Townsend's lawsuit in favor of arbitration. The timing of Chase's and Wells Fargo's sudden interest in arbitration should give this Court pause, because neither bank attempted to invoke the arbitration clauses in Townsend's checking account agreements until *after* one of the banks suffered a serious defeat in a similar overdraft fee case in California.

2. Townsend filed the instant lawsuit in January 2010, nearly eight months ago, in the Central District of California. Chase unsuccessfully attempted to block the MDL panel from transferring Townsend's case to this Court, but at no point before _or_ after removal to this Court did either Wells Fargo or Chase attempt to force Townsend into arbitration – until now. Why now? The answer is clear: On August 10, 2010, Wells Fargo was soundly defeated in an overdraft fees case virtually identical to the instant lawsuit, and was ordered to pay $203,000,000 to the class action plaintiffs (*Gutierrez v. Wells Fargo*, 07-05923, U.S. District Court, Northern District of California (San Francisco). (Townsend asks that the Court take judicial notice of the California trial court's Findings of Fact and Conclusions of Law after Bench Trial, Document No. 476. ) Given this recent decisive setback in substantially similar overdraft fee litigation, Wells Fargo's and Chase's twin motions to stay Townsend's lawsuit in favor of arbitration must be adjudged for what they are – a tactical ploy, in light of the *Gutierrez* decision, to avoid defeat in this Court by means of an arbitration Hail Mary pass. This Court has denied, nearly without

exception, every other banks' attempts to force other consumer plaintiffs into arbitration, and for good reason. This most recent arbitration stunt by Chase and Wells Fargo only underscores the unconscionable nature of the arbitration clauses of the banks' checking account deposit agreements, because the banks are simply trying to use these arbitration clauses as an escape hatch to bail out of a hostile civil litigation environment.

3. **Standard** -- The summary judgment standard is well-established. Summary judgment should be granted if the evidence, viewed in the light most favorable to the nonmoving party, indicates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See, for example, *Bailey v. United States Postal Service*, 208 F.3d 652, 654 (8th Cir. 2000).

4. **INTRODUCTION** – As alleged in Townsend's lawsuit, Townsend has or did have checking accounts with Washington Mutual (acquired in 2009 by Chase), and Wells Fargo. Each of the deposit agreements governing use of these checking accounts contained mandatory, binding arbitration clauses. In fact, all consumer deposit agreements with these banks contain such clauses. These clauses have required Townsend, or any other consumer who wished to use checking accounts provided by these banks, to agree to submit to binding arbitration in the event of a dispute between the consumers and the banks regarding their checking accounts, including the unfair levying of overdraft fees as described in Townsend's complaint. Consumers who refused to consent to this clause were and are unable to obtain or use checking accounts with these banks. Townsend has brought claims against these banks which arise simply from the existence of these unconscionable, unenforceable arbitration clauses: Townsend's Sixth Cause of Action (violations of the California Bus. & Prof. Code 17200 *et seq.*), which allows for relief from any unlawful, unfair, fraudulent business act or practice; and Townsend's Third Cause of Action, for relief from the unconscionable nature of Chase and Wells Fargo's checking account deposit agreements.

5. Townsend therefore seeks the following from this Court, each as allowed by the California Bus. & Prof. Code §17200 *et seq.*:

   a. declaratory judgment stating that these mandatory, binding arbitration clauses are procedurally and substantially unconscionable, and thus unenforceable;

   b. an order from this Court striking these arbitration clauses from all California checking account deposit agreements, and permanently enjoining Chase and Wells Fargo from inserting and/or enforcing these arbitration clauses in their checking account deposit agreements with California consumers; and

6. Townsend also seeks judgment for damages attributable to these arbitration clauses in his checking account deposit agreements with Chase and Wells Fargo, as well as for his costs in prosecuting this action.

7. **INDEX OF MATERIAL FACTS / EVIDENCE**

| MATERIAL FACT | EVIDENCE |
|---|---|
| 1. Townsend was a party to checking account deposit agreements with Washington Mutual (now Chase), and Wells Fargo. | Declaration of Robert Townsend, included herein. |
| 2. These checking account deposit agreements contain mandatory binding arbitration clauses. | Declaration of Robert Townsend; Chase and Wells Fargo deposit agreements governing Townsend's checking accounts (attached). |
| 3. The 9th Circuit has declared that mandatory, binding arbitration clauses are both procedurally and substantively unconscionable, and therefore unenforceable. | *Pokorny v. Quixtar, Inc.* (Apr. 20, 2010, No. 08-15880) ___ F.3d ___, 2010 [WL 1542508 (C.A.9 (Cal.)); "under California law, an arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively |

| | |
|---|---|
| | unconscionable." (*Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007).) |
| 4. The mandatory, binding arbitration clauses contained in Chase's and Wells Fargo's checking account deposit agreements are procedurally and substantively similar to the mandatory binding arbitration clauses which the 9th Circuit found unconscionable and unenforceable in *Pokorny v. Quixtar, Inc.* | *Pokorny v. Quixtar, Inc.* (Apr. 20, 2010, No. 08-15880) ___ F.3d ___, 2010 [WL 1542508]; Quixtar's contract as discussed and attached to *Pokorny v. Quixtar, Inc.*; Chase and Wells Fargo checking account deposit agreements (attached). |

6.  As explained by the 9th Circuit in *Quixtar,* under California law, an arbitration agreement, like any other contractual clause, is unenforceable if it is both procedurally and substantively unconscionable. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007). California courts apply a "sliding scale" analysis in making this determination: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id. (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.,* 6 P.3d 669, 690 (Cal. 2000)). Thus, although both procedural and substantive unconscionability must be present for the contract to be declared unenforceable, they need not be present to the same degree. *Harper v. Ultimo,* 7 Cal. Rptr. 3d 418, 422 (Ct. App. 2003). Furthermore, an agreement or any portion thereof is procedurally unconscionable if "the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation." *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862, 867 (Ct. App. 2002).

7.  The lessons of the *Quixtar* case are straightforward and applicable to the two checking account deposit agreements at issue in the instant matter. The terms of any deposit agreement requiring mandatory binding arbitration should not be unilaterally dictated

by the superior party, in this case the banks.  It is unconscionable for the superior party to force consumers, as in the instant matter, to waive substantive legal rights such as the right to jury trial, the right to act as a private attorney general in the enforcement of California consumer legal remedy statutes, or the right to participate in class actions, waivers that are required by Wells Fargo's and Chase's checking account deposit agreements. These agreements also:  permit the bank to freeze the consumer's account and deprive him/her of access to his/her rightfully owed monies in the event of a claim brought by the consumer; dictate that the nature and results of the arbitration proceedings be confidential whether the consumer likes it or not; and requires that the arbitration provisions *even survive the deposit agreement itself*, should the costumer close his/her account, which would otherwise terminate the agreement.  Furthermore, the arbitration provision should not be presented as a "take-it-or-leave it" provision to consumers, particularly if it is drafted by the party with the superior bargaining power, as these banks' arbitration clauses were and are.  Here, the terms of the each checking account deposit agreement is contained in a standardized contract, drafted by the party of superior bargaining strength (in this case, two large corporations, i.e., Chase and Wells Fargo, with the consumers having no meaningful opportunity for negotiation. In essence, if any consumer -- including Townsend -- objects to the terms of his/her deposit agreement – including the arbitration provisions – the consumer is simply "invited" by the agreement to close his/her account.  This is hardly mutual and fair.  In the instant matter, the bank Defendants' arbitration clauses are not only procedurally and substantively similar to Quixtar's arbitration clause ruled unenforceable by the 9th Circuit, but the banks' arbitration clauses are procedurally and substantively similar *to one another*.  Simply put, the bank names may change, but the arbitration clause game was the same no matter the bank who issued the checking account.

8. Lastly, Chase and Wells Fargo dictate that in the event of arbitration, the parties must arbitrate before the National Arbitration Forum ("NAF") and/or the American

Arbitration Forum ("AAA").   The assertion in Chase's and Wells Fargo's deposit agreements that these arbitration forums are "neutral" and "impartial" is simply false given that the NAF has been the subject of multiple lawsuits for ruling against consumers at a nearly 99% rate in California, for example, in consumer credit card arbitration proceedings.   In July 2009, the Minnesota Attorney General brought suit against the NAF exposing its bias and non-neutral connection to banks, and debt collectors.   Within a week of that lawsuit, the NAF agreed to stop arbitrating consumer credit card cases.   (See *State of Minnesota v. National Arbitration Forum, et al.,* Court File No. 27-CV-09-18550 in the Minnesota Fourth Judicial District.)   Congressional hearings ensued.   Then, on July 21, 2009 the AAA announced it would <u>also</u> stop arbitrating consumer credit card disputes.   AAA's president, Richard Naimark, announced this decision before a Congressional hearing on July 22, 2009: *Arbitration or 'Arbitrary': The Misuse of Mandatory Arbitration to Collect Consumer Debts,* Hearing Before the House Subcommittee on Domestic Policy, Committee on Oversight and Government Reform, 111th Congress (July 22, 2009).   Mr. Naimark stated at the hearing that "a series of important fairness and due process concerns must be addressed and resolved before [AAA] will proceed with the administration of any future debt collection arbitrations."   Townsend asks the Court to take judicial notice of the relevant portion of this Congressional hearing as referenced above.   The AAA announced on July 21, 2009 that (following the NAF's settlement with the Minnesota AG to cease all credit card arbitrations) the AAA would <u>also</u> stop arbitrating consumer credit card disputes.   It is undisputed that both Chase and Wells Fargo used these rigged, anti-consumer arbitrators (Chase, the NAF; Wells Fargo, the AAA) prior to the summer of 2009.   But even now, a year later, Wells Fargo and Chase *continue* to use these corrupt, non-neutral arbitration forums as a weapon against their checking account consumers.   This alone should render the checking account arbitration clauses unenforceable because of unconscionability.

9. Compounding the unconscionability of forcing consumers into arbitration rigged against the consumer is the fact that both Wells Fargo's and Chase's deposit agreements require that consumers agree that in the event of a dispute about arbitrability, an *arbitrator* – chosen by the banks, naturally – will decide the threshold issue of arbitrability.  This creates a feedback loop where, in essence, the fox guarding the henhouse gets to decide a legal challenge as to whether the fox gets to guard the henhouse.  This clearly disfavors consumers, particularly in light of the questionable neutrality of the AAA and NAF as discussed above.

10. That the banks' motions for arbitration were filed nearly immediately after the *Gutierrez* decision speaks volumes about the inherent unfairness of the arbitration clauses.  Both banks could have moved to compel Townsend to arbitration at any time after he commenced his lawsuit in January 2010.  They did not; in fact, Chase actively participated in the civil litigation by opposing the MDL transfer of Townsend's case to this Court.  Now, only after Wells Fargo suffered a defeat in the *Gutierrez* case, do the two banks' enthusiasm for arbitration magically appear.  The primary purpose of arbitration is to streamline proceedings and expedite results.  *Preston v. Ferrer*, 552 U.S. 346, 128 S.Ct. 978, 986, 169 L.Ed.2d 917 (2008).  Unless Wells Fargo and Chase are prepared to concede that the *Gutierrez* decision makes their defeat likely in each overdraft case pending before this Court, including Townsend's, and that their interest in arbitration is simply to hasten additional judgments against them, then their motions to compel Townsend to arbitration -- eight months after he brought the litigation -- can in no way be viewed as likely to streamline proceedings and expedite results, particularly given this Court is by now very familiar with the legal and factual issues regarding these many overdraft cases indeed, this was the purpose of the MDL panel transferring numerous overdraft fee cases to this Court. The belated commencement of arbitration proceedings at this stage would require, in essence, starting over and re-

inventing a wheel that has already in motion in this Court. This sort of miscarriage of justice cannot be what Congress intended by the Federal Arbitration Act.

11. In conclusion, Wells Fargo and Chase's arbitration clauses in their checking account deposit agreements are unconscionable from multiple standpoints, and thus unenforceable. There is no genuine issue of material fact precluding judgment on the claims and matters raised herein.

12. Summary judgment is appropriate even where there is a genuine issue as to the amount of damages [or restitution]. *See* F.R.C.P. 56(d)(2). Townsend requests a hearing on damages/restitution as appropriate.

**PRAYER**

Wherefore, premises considered, Plaintiff Robert Townsend respectfully prays that the Court :

a. Issue declaratory judgment stating that the Defendant banks' mandatory, binding arbitration clauses within their checking account deposit agreements are procedurally and substantially unconscionable, and thus unenforceable, as allowed by the California Bus. & Prof. Code §17200 *et seq*;

b. Issue an order from this Court striking these arbitration clauses from all California checking account deposit agreements issued by the Defendant banks named herein, and permanently enjoining Chase and Wells Fargo from inserting and/or enforcing arbitration clauses in their checking account deposit agreements with California consumers that are inconsistent with the guidelines set forth by the Ninth Circuit Court of Appeals in *Pokorny v. Quixtar, Inc.*

c. Award judgment to Townsend for restitution of his economic losses due to the banks' tortious behavior as described herein, and an appropriate disgorgement of the banks' ill-gotten gains, as allowed by the California Bus. & Prof. Code §17200 *et seq.*

d.  Schedule an evidentiary hearing before the Court on the amount and nature of damages and restitution to be awarded Townsend.

DATED: September 13, 2010

Respectfully Submitted:

Robert Townsend
P.O. Box 3330
Dana Point, CA 92629
(949)495-0089
Fax (949)495-0580
townsend@runbox.com
Plaintiff *Pro Se*

**DECLARATION OF ROBERT TOWNSEND IN SUPPORT OF HIS AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CHASE and WELLS FARGO**

I, ROBERT TOWNSEND, declare,

1.    I am the Plaintiff in the above-entitled action.  I have personal knowledge of the facts contained in this declaration and if called as a witness, could testify competently to these facts.

2.    I had checking accounts with each of the bank Defendants against whom I seek partial summary judgment in this Motion (account number ending in 119497 and 264121 and with Chase; account numbers ending in 09-500875 with Wells Fargo).

3.    Neither Chase nor Wells Fargo ever mailed me a copy of my checking account deposit agreements after they began the procedure of re-sequencing deposits to maximize overdrafts, as alleged in my lawsuit.  However, I was able to obtain copies of the applicable Chase and Wells Fargo deposit agreements from the Federal Reserve.  They are attached herein: for Chase, Exhibit "A"; for Wells Fargo, Exhibit "B".

4.    These checking account deposit agreements, governing my checking accounts with Chase and Wells Fargo, contain mandatory, binding arbitration clauses.

    I declare under penalty of perjury that the foregoing is true and correct. Executed at Dana Point, California on September 13, 2010.



    Plaintiff Robert Townsend

1

**CERTIFICATE OF SERVICE**

2

3      In keeping with Rule 5a of the Federal Rules of Civil Procedure, I hereby certify that a

4      true and correct copy of the forging instrument has been served upon all relevant

5      parties:

6      **BY U.S. MAIL**

7

8

9                                                                    Respectfully submitted,

10     By:

11                                                              ROBERT TOWNSEND,

12                                                                     P.O. Box 3330

13                                                              Dana Point, CA 92629
                                                                     (949)495-0089

14                                                                 Fax (949)495-0580

15                                                               townsend@runbox.com
                                                                    Plaintiff *Pro Se*

16

17                                                    DATED:  September 17, 2010

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

| Chase Business Select High Yield Savings℠/ Chase Business High Yield Savings℠ (for Public Funds) | |
|---|---|
| NO MONTHLY SERVICE/ MAINTENANCE FEE IN ANY STATEMENT PERIOD IN WHICH YOU HAVE | • An average ledger balance of $10,000 or more in this account; or<br>• A linked qualifying business checking account[4]<br>Otherwise $15 |
| TRANSACTION FEES PER MONTH | 0 – 30 deposited items – free<br>31+ $.20/each |
| INTEREST | Savings Withdrawal Limit Fee: $12/transfer over limit[5]<br>Variable, based on daily collected balance |
| CASH DEPOSIT PROCESSING FEE | No Cash Deposit Processing Fee for the first $5,000 per month.<br>(See Business Deposit Express for additional fees) |
| OTHER | Limited check writing available[5] |

in respect of your obligations hereunder to the extent permitted by applicable law. Without limiting the generality of the foregoing, you agree that such waivers shall have the fullest extent permitted under the Foreign Sovereign Immunities Act of 1976 of the United States and are intended to be irrevocable for purpose of such act.

**Arbitration:**

PLEASE READ THIS PROVISION CAREFULLY. IT PROVIDES, WITH THE SPECIFIC EXCEPTION STATED BELOW, THAT ANY DISPUTE MUST BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT. YOU WILL NOT BE ABLE TO BRING A CLASS ACTION OR OTHER REPRESENTATIVE ACTION IN COURT, NOR WILL YOU BE ABLE TO BRING ANY CLAIM IN ARBITRATION AS A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. YOU WILL NOT BE ABLE TO BE PART OF ANY CLASS ACTION OR OTHER REPRESENTATIVE ACTION BROUGHT BY ANYONE ELSE, OR TO BE REPRESENTED IN A CLASS ACTION OR OTHER REPRESENTATIVE ACTION. IN THE ABSENCE OF THIS ARBITRATION AGREEMENT, YOU AND THE BANK MIGHT OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO BRING CLAIMS IN A COURT, BEFORE A JUDGE OR JURY, AND/OR TO PARTICIPATE OR BE REPRESENTED IN A CASE FILED IN COURT BY OTHERS (INCLUDING CLASS ACTIONS). EXCEPT AS OTHERWISE PROVIDED BELOW, THOSE RIGHTS ARE WAIVED. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT, SUCH AS THE RIGHT TO APPEAL AND TO CERTAIN TYPES OF DISCOVERY, MAY BE MORE LIMITED OR MAY ALSO BE WAIVED.

Either you or the Bank may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute or controversy raised by either you or the Bank against the other, or against the employees, parents, subsidiaries, affiliates, beneficiaries, heirs, agents or assigns of the other, arising from or relating in any way to this Agreement, any prior account agreement between you and the Bank, or the advertising, the application for, or the approval of your Account (the "Claim" or "Claims"). All Claims originating from or relating to this Agreement are subject to arbitration, no matter what theory they are based on or what remedy they seek, whether legal or equitable. This includes Claims based on contract, tort (including intentional tort), fraud, agency, negligence, statutory or regulatory provisions, or any other sources of law, or any request for equitable relief.

Claims subject to arbitration include Claims that are made as counterclaims, cross claims, third party claims, interpleaders or otherwise, and any party to a proceeding in court may elect arbitration with respect to any Claims advanced in the lawsuit by any party or parties.

As an exception to this arbitration provision, you retain the right to pursue in a small claims court, any Claim that is within that court's jurisdiction and proceed on an individual basis.

If you or the Bank elects to arbitrate a Claim, the arbitration will be conducted as an individual action. Neither you nor the Bank consents or agrees to any arbitration on a class or representative basis, and the arbitrator shall have no authority to proceed with any arbitration on a class or representative basis. This arbitration provision applies to and includes any Claims made and remedies sought as part of any class action, private attorney general or other representative action, which Claims hereby are made subject to arbitration on an individual (non-class, non-representative) basis. This means that even if a class action lawsuit or other representative action, such as that in the form of a private attorney general action, is filed, any Claim between you and the Bank related to this Agreement raised in such lawsuits will be subject to an individual arbitration claim if either you or the Bank so elects.

The party filing a Claim in arbitration must select either one of two national arbitration administrators: the National Arbitration Forum ("NAF") or the American Arbitration Association ("AAA"). The arbitration organization that is selected will apply its code or procedures in effect at the time the arbitration claim is filed, unless any portion of that code or those procedures is inconsistent with any specific terms of this arbitration provision and/or this Agreement, in which case this arbitration provision and this Agreement shall prevail. The arbitration will be conducted before a single arbitrator. The arbitrator will apply applicable substantive law, including but not limited to the applicable Uniform Commercial Code, consistent with the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") and the applicable statute of limitations or condition precedent to suit, and will honor claims of privilege recognized at law. The arbitrator will have the power to award to a party any damages or other relief provided for under applicable law, and will not have the power to award relief to, against or for the benefit of any person who is not a party to the proceeding. The arbitrator's authority is limited solely to the Claim(s) between you and the Bank alone. The arbitration may not be consolidated with any other arbitration proceeding. You and the Bank do not agree to any arbitration on any basis to which any party other than you and the Bank, or the related parties enumerated above such as heirs, successors and assigns, or any other person obligated on the Account, is involved.

Any decision rendered in such arbitration proceeding will be final and binding on the parties, unless a party appeals in writing to the arbitration organization within 30 days of issuance of the award. The appeal must

31

14

LCCW002CA

## Change in Account Agreement:

We may change the terms of this Agreement, including any fees or features of your Account, upon notice sent to you via ordinary U.S. mail at least 30 calendar days prior to the effective date of the change; provided however, for automatically renewable CDs, no such change shall be effective prior to the renewal date, and such notice may be provided with ten days written notice prior to the renewal date. You agree that such notice may be provided to any joint account owner. By maintaining your Account after the effective date of any change, you agree to be bound by the changes. No notice is required for changes in the interest rate and corresponding changes in the annual percentage yield for variable rate accounts or in fees for document printing.

## Rules Governing Your Account:

Your Account is governed by all rules and regulations of applicable federal law and the laws of your State (to the extent they are not considered to have been preempted by federal law), including those that may modify the terms of this Agreement. All deposits, items transmitted for collection, and any other transactions concerning your Account are subject to applicable clearinghouse rules and Federal Reserve rules and regulations.

Notwithstanding any other provision herein, this Agreement and any section of this Agreement may be changed or terminated without notice to the extent necessary to comply with any law or regulation of any appropriate federal or state authority.

If a conflict exists between any provision of this Agreement and any statements made by any employee of ours or our affiliates, this Agreement and the applicable sections will control.

## Liability:

You agree that we shall be relieved of any and all liability for acting upon your instructions or failing to act on your instructions when we reasonably believe that to do so would cause us to be exposed to civil or criminal liability, or conflict with customary banking practices. YOU AGREE THAT WE SHALL NOT BE LIABLE FOR INDIRECT, SPECIAL, OR CONSEQUENTIAL DAMAGES REGARDLESS OF THE FORM OF ACTION AND EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

IF WE FAIL TO STOP PAYMENT ON AN ITEM, OR PAY AN ITEM BEARING AN UNAUTHORIZED SIGNATURE, FORGED DRAWER'S SIGNATURE OR FORGED ENDORSEMENT OR ALTERATION, OUR LIABILITY, IF ANY, SHALL BE LIMITED TO THE FACE AMOUNT OF THE ITEM.

## Research and Legal Process:

If any legal process, including without limitation any subpoena, writ of garnishment, execution or any levy, is served on us relating to you or your Account, we are authorized to comply with the legal process, and are not required to determine whether the court issuing the legal process had jurisdiction over you or over the account or otherwise had the authority to issue the legal process. To the extent not prohibited by applicable law, you will be charged for research, reproduction and production of documents for our compliance with legal process and any other expenses incurred by us in connection with our compliance, including but not limited to attorneys' fees.

If any action, including administrative proceedings, garnishment, tax levies, restraining orders or other action is brought against you or your account, you agree to indemnify, defend and hold us harmless from all actions, claims, liabilities, losses, costs and damages (including attorneys' fees) associated with our compliance with any legal process.

## Location of All Legal Proceedings:

If you file any lawsuit or other legal proceeding against us that is connected in any way to your Accounts or services, you must do so in an appropriate court in the state and county where you opened the account. If you relocate your Account to another branch, you must file any lawsuit or proceeding in the state and county where that branch is located. In addition, if we file any lawsuit or legal proceeding that is connected in any way to your Accounts or services, you consent to jurisdiction and venue in an appropriate court in the location described in this paragraph. If either party chooses to have disputes determined under the section entitled Arbitration, that section rather than this section governs the process and location of the arbitration proceedings.

If you reside in a U.S. state where we have branch offices, any account you open by mail, internet, or other remote means will be assigned to a branch in the state where you reside, and for purposes of this section your account will be considered to be opened at that branch. If you do not reside in a U.S. state where we have branch offices, any account you open by mail, internet, or other remote means will be considered to be opened in Franklin County, Ohio.

## Waiver of Immunity:

To the extent that you have or hereafter may acquire any immunity from jurisdiction of any court or from any legal process (whether through service or notice, attachment prior to judgment, attachment in aid of execution, or otherwise) with respect to itself or its property, you hereby irrevocably waive such immunity

# Business CD Accounts

| Chase Certificate of Deposit |
|---|

**INTEREST**

Fixed

Earn higher interest rates on your CDs when linked to a qualifying* Chase business checking account.

**STATEMENT PERIOD**

Summary of linked CDs appears on monthly checking account statement.

# FOOTNOTES

1  Qualifying Chase personal checking accounts are Chase Premier Checking,℠ Chase Premier Platinum Checking℠ and Chase Premier Platinum Asset Management Account℠ (available in certain markets only).

2  An Active Chase Business Credit Card in good standing is a card that carries an outstanding balance greater than zero at least one day during the checking statement cycle and that is not delinquent, closed, charged off, or revoked.

3  Transactions are all checks paid, other debits, deposits made, other credits and items deposited.

4  Qualifying Chase Business checking accounts are Chase Business Classic Checking, Chase BusinessClassic Checking with Interest, Advanced Business Checking, Advanced Business Checking with Interest, BusinessPlus® Extra Checking, Commercial Checking or Commercial Checking with Interest.

5  Federal law limits the number of transactions to six per month on any savings account. See the Withdrawal Limitations on Your Savings Account and Withdrawal Procedures and Limitations sections of the Account Rules and Regulations booklet for details.

LCCWBSCA

# EXHIBIT B

Except as stated in "No Waiver of Self-Help or Provisional Remedies" below, you and the Bank agree, at your or the Bank's request, to submit to binding arbitration all claims, disputes, and controversies between or among you and the Bank (and their respective employees, officers, directors, attorneys, and other agents), whether in tort, contract or otherwise arising out of or relating in any way to your Account(s) and/or Service(s), and their negotiation, execution, administration, modification, substitution, formation, inducement, enforcement, default, or termination (each, a "Dispute").

Any arbitration proceeding will:

*   Proceed in a location selected by the American Arbitration Association ("AAA") in the state whose laws govern your Account

*   Be governed by the Federal Arbitration Act (Title 9 of the United States Code), notwithstanding any conflicting choice of law provision in any of the documents between you and the bank; and

*   Be conducted by the AAA, or such other administrator as you and the Bank will mutually agree upon, in accordance with the AAA's commercial dispute resolution procedures, unless the claim or counterclaim is at least $1,000,000.00 exclusive of claimed interest, arbitration fees and costs in which case the arbitration will be conducted in accordance with the AAA's optional procedures for large, complex commercial disputes (the commercial dispute resolution procedures or the optional procedures for large, complex commercial disputes to be referred to, as applicable, as the "Rules")

If there is any inconsistency between the terms hereof and any such Rules, the terms and procedures set forth herein will control. Any party who fails or refuses to submit to arbitration following a lawful demand by any other party will bear all costs and expenses incurred by such other party in compelling arbitration of any Dispute. Nothing contained herein will be deemed to be a waiver by the Bank of the protections afforded to it under 12 U.S.C. Section 91 or any similar applicable state law.

This arbitration requirement does not limit the right of either party to:

1.  Exercise self-help remedies, including setoff; or

2.  Obtain provisional or ancillary remedies such as injunctive relief or attachment, before, during, or after the pendency of any arbitration proceeding

This exclusion does not constitute a waiver of the right or obligation of either party to submit any Dispute to arbitration or reference hereunder, including those arising from the exercise of the actions detailed in (1) and (2) of this subsection.

An *Overdraft* is any event that results in a negative balance in your Account.

A *Paper Item* is an *Item* that is in paper form.

A *Service* is any Service the Bank provides to you including without limitation any Treasury Management Service.

An *Unauthorized Transaction* is an erroneous or unauthorized debit, a missing signature, an unauthorized signature, or an alteration, or otherwise a transaction that was not authorized by you.

Any Dispute in which the amount in controversy is $5,000,000.00 or less will be decided by a single arbitrator selected according to the Rules, and who will not render an award of greater than $5,000,000.00. Any Dispute in which the amount in controversy exceeds $5,000,000.00 will be decided by majority vote of a panel of three arbitrators; provided however, that all three arbitrators must actively participate in all hearings and deliberations. Each arbitrator will be a neutral attorney licensed in the state whose laws govern your Account, or a neutral, retired judge in such state, in either case with a minimum of 10 years experience in the substantive law applicable to the subject matter of the Dispute to be arbitrated. The arbitrator(s) will determine whether or not an issue is arbitrable and will give effect to the statutes of limitation in determining any claim. In any arbitration proceeding the arbitrator(s) will decide (by documents only or with a hearing at the discretion of the arbitrator(s)) any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication. The arbitrator(s) will resolve all Disputes in accordance with the substantive law of the state whose laws govern your Account and may grant any remedy or relief that a court of such state could order or grant within the scope hereof and such ancillary relief as is necessary to make effective any award. The arbitrator(s) will also have the power to award recovery of all costs and fees, to impose sanctions, and to take such other action as deemed necessary to the same extent a judge could pursuant to the Federal Rules of Civil Procedure, the state rules of civil procedure for the state whose laws govern your Account, or other applicable law. Judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction. The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy will not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests such action for judicial relief.

In any arbitration proceeding, discovery will be permitted in accordance with the Rules. All discovery will be expressly limited to matters directly relevant to the Dispute being arbitrated and must be completed no later than 20 days before the hearing date. Any requests for an extension of the discovery periods, or any discovery Disputes, will be subject to final determination by the arbitrator upon a showing that the request for discovery is essential for the party's presentation and that no alternative means for obtaining information is available.

You and the Bank agree that the resolution of any Dispute arising pursuant to the terms of this Agreement will be resolved by a separate arbitration proceeding and will not be consolidated with other Disputes or treated as a class. Neither you nor the Bank will be entitled to join or consolidate Disputes by or against others in any arbitration, or to include in any arbitration any Dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity.

The arbitrator will award all costs and expenses of the arbitration proceeding.

To the maximum extent practicable, the AAA, the arbitrator(s), you and the Bank will take all action required to conclude any arbitration proceeding within 180 days of the filing of the Dispute with the AAA. The arbitrator(s), you, or the Bank may not disclose the existence, content, or results thereof, except for disclosures of information by you or the Bank required in the ordinary course of business, by applicable law or regulation, or to the extent necessary to exercise any judicial review rights set forth herein. If more than one agreement for arbitration by or between you and the Bank potentially applies to a Dispute, the Arbitration Agreement most directly related to your Account or the subject matter of the Dispute will control. This Arbitration Agreement will survive the closing of your Account or termination of any Service or the relationship between you and the Bank.

Notwithstanding anything to the contrary, you and the Bank each retain the right to pursue in Small Claims Court any dispute within that court's jurisdiction. Further, this Arbitration Agreement will apply only to disputes in which either party seeks to recover an amount of money (excluding attorneys' fees and costs) that exceeds the jurisdictional limit of the Small Claims Court.

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 32545 "B" Golden Lantern, Dana Point, Ca 92629

On September 13, 2010 I served the foregoing document described, **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS WELLS FARGO BANK, N.A., WELLS FARGO BANK & CO., CHASE BANK USA, N.A., J.P. MORGAN CHASE AND DECLARATION IN SUPPORT THEREOF, AND PROPOSED ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS WELLS FARGO BANK, N.A., WELLS FARGO BANK & CO., CHASE BANK USA, N.A., J.P. MORGAN CHASE,  PLAINTIFF ROBERT TOWNSEND'S F.R.C.P. Rule 55(a) REQUEST FOR CLERK'S ENTRY OF DEFAULT AGAINST DEFENDANTS WELLS FARGO BANK, N.A., WELLS FARGO BANK & CO., CHASE BANK USA, N.A., J.P. MORGAN CHASE**

### SEE ATTACHED MDL No. 2036 - Panel Service List (CTO-13)

On all interested parties in this action to and by:
    _X___ BY placing _X _a true copy thereof enclosed in sealed envelopes
            addressed as stated on the attached mailing list.

X____**BY MAIL OR E-MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U. S. Postal Service on the same day with postage thereon fully prepaid at Tustin, California, in the ordinary course of business. I am aware that on motion of the party served, service *is* presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

        **BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee.

        **BY FACSIMILE TRANSMISSION:** From Fax No. 949-495-0580 to the facsimile numbers listed on the attached mailing list. The facsimile machine I used complied with Rule 2003(3), and the machine reported no error.

        **BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

LA/632899v1

1
2
3          I declare that I am employed in the office of a member of
4    the Bar of this Court, at whose direction the service was made.
5
     EXECUTED on September 13, 2010 at Dana Point, Ca 92629
6
7
8    
                                    (Mike Lee)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

PANEL SERVICE LIST

Robert Townsend v. Wells Fargo Bank & Co • et al • C.D. California,
C.A. No. 2:10-550 (Judge Otis D. Wright. II)

Richard D. McCune. Jr • Esq.
Mccune Wright LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374

David C. Marcus, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles. CA 90071

Lisa Marie Simonetti, Esq.
Stroock & Stroock & Lavan LLP
2029 Century Park East, Suite 1600
Los Angeles. CA 90067-3086

Jeffiey D. Kaliel, Esq.
Tycko & Zavareei LLP
2000 L. Street, N.W., Suite 808
Washington, DC 20036

Barry R. Davidson, Esq.
Hunton & Williams LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 2500
Miami, FL 33131-3136

Laurence J. Hutt, Esq.
Arnold & Porter LLP
777 South Figueroa Street. 44th Floor
Los Angeles, CA 90017-2S13

Robert C. Gilbert. Esq.
Alters Boldt Brown Rash & Culmo PA
4141 N.B. 2nd Avenue, Suite 201
Miami, FL 33137

Ben Bamow, Esq. Bamow
& Associates PC
One North LaSalle Street. Suite 4600
Chicago, IL 60602

Roger A Lewis. Esq.
Goldberg Kohn LTD
55 East Monroe Street, Suite 3300
Chicago, IL 60603

MDL No. 2036 - Panel Service List (Continued)
Page 2

Leonard A. Frisoli, Esq.
Frisoli & Associates
43 Thorndike Street
Cambridge, MA 02141

Drew M. Hicks, Esq.
Keating Muething & Klekamp LLP
One East 4th Street, Suite 1400
Cincinnati, OH 45202

Patrick J. Sheehan, Esq.
Wbadey Drake & Kallas LLC
60 State Street, Seventh Floor
Boston, MA 02109

David James Worley
Page Perry LLC
1040 Crown Pointe Pkwy. Suite 1050
Atlanta, GA 30338

James B. Preston, Esq.
Preston &. Associates
P.O. Box 844 .
25020 Highway 145
Dolores, CO 81323-0844

Lisa J. Rodriguez, Esq.
Trujillo Rodriguez & Richards LLC
258 Kings Highway East Haddonfield,
NJ 08033

Erin Lind Shencopp, Esq.
Jones Day
77 West Wacker Drive, Suite 3S00
Chicago, IL 60601

Hassan A. Zavarcci
Tycko & Zavareei LLP
2000 L. Street, N. W., Suite 808
Washington, DC 20036