IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 09-MD-02036-JLK

|  |  |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION<br><br>MDL NO. 2036<br><br>FIRST TRANCHE | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

|  |  |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>*Lopez v. JPMorgan Chase Bank, N.A.*<br>S.D. Fla. Case No. 1:09-cv-23127-JLK<br><br>*Luquetta v. J.P. Morgan Chase Bank, N.A.*<br>S.D. Fla. Case No. 1:09-cv-23432-JLK<br>C.D. Cal. Case No. CV09-6967-GHK | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MOTION OF JPMORGAN CHASE BANK, N.A. TO COMPEL
PLAINTIFFS ESTELLA LOPEZ, LINDA MCDANIEL,
CHARLES REED, JR., JOHN STONE, AND ANDREA LUQUETTA
TO PRODUCE DOCUMENTS AND TO ANSWER INTERROGATORIES
<u>AND INCORPORATED MEMORANDUM OF LAW</u>**

# TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................................... 1

**STATEMENT OF THE CASE** .................................................................................................. 3
I.   Procedural History Relating to Discovery Requests ......................................................... 3
II.  Plaintiffs' Documents ........................................................................................................ 4

**ARGUMENT** .............................................................................................................................. 5
I.   Each Of Chase's Requests For The Production Of Documents To Which
     This Motion Is Directed Seeks Relevant And Necessary Information
     And Is Not Burdensome .................................................................................................... 6
     A.   Plaintiffs' Alternative Accounts And Credit ........................................................... 6
     B.   Communications With Financial Advisors Or Other Third Parties ....................... 8
     C.   Engagement Letters And Cost-Sharing And Other Agreements Concerning
          The Prosecution Of The Litigation .......................................................................... 9
     D.   Complaints In Prior Litigation And Other Proceedings ........................................ 10
II.  Each Of Chase's Interrogatories To Which This Motion Is Directed
     Seeks Relevant And Necessary Information About Plaintiffs' Claims
     And Is Not Burdensome .................................................................................................. 11

**CONCLUSION** ........................................................................................................................ 14

**LOCAL RULE 7.1(a)(3) CERTIFICATION OF GOOD FAITH COMPLIANCE** ............. 14

Defendant JPMorgan Chase Bank, N.A. ("Chase") moves, pursuant to Rules 26, 33, 34, and 37 of the Federal Rules of Civil Procedure and Local Rules 7 and 26.1, to compel plaintiffs Estella Lopez, Linda McDaniel, Charles Reed, Jr., John Stone, and Andrea Luquetta[1/] (collectively, "Plaintiffs") to produce documents and to answer interrogatories requested and propounded by Chase on May 14, 2010.

## INTRODUCTION

Plaintiff Andrea Luquetta is a practicing attorney in California, with extensive professional experience in the area of consumer financial services. Despite her legal and financial familiarity, she overdrew her Chase checking account *every single month*. (She closed the account before initiating her suit herein, more than $1000 overdrawn, leaving Chase holding her debt.) She knew that she was doing this: The few personal records she has produced include copies of the letters Chase sent her when she was overdrawn. Chase's order of posting was *not* what caused her to overdraw her account, as her account records show. Indeed, as these records show, her transactions were *not* posted by Chase based on a high-to-low sequencing rule. Just before closing her account, she wrote a letter to Chase threatening to sue the bank if it did not refund $792 in overdraft fees—based on overdrafts that were *not* posted based on a high-to-low sequencing rule, and her demand was *not* based on a theory that the overdrafts should have been posted (as her briefs in this case have claimed) in chronological order.

Through discovery, Chase is trying to find out Luquetta's "facts," and what Luquetta's real claims are, but she has objected to Chase's reasonable requests. She has produced only copies of account statements and correspondence she had with Chase—materials Chase has already seen. She has *refused* to provide information about her other accounts to which she was

---

[1/]   Chase did not serve discovery with respect to plaintiffs as to whom Chase has invoked its right to arbitrate.

transferring money from her Chase account, even though that information is clearly relevant to her claims. She has even refused to disclose what overdraft fees she is suing about in this case: For example, is it the overdraft fees identified in her threat-to-sue letter, or fees that her complaint alleges were based on high-to-low posting (and, if so, what transactions she *claims* were posted high-to-low)? There is no legal basis for Luquetta's refusal to provide this information, which is demonstrably relevant to the claims she is asserting against Chase.

In addition to being a lawyer, Luquetta is also an experienced plaintiffs' class representative. Based on her knowledge as a practicing California attorney, and her experience serving as a class plaintiff in other litigation, Luquetta undoubtedly recognizes the significance of the terms of engagement of class counsel. Chase has sought discovery to obtain non-privileged information about her role as class representative and relationship to putative class counsel—but again Luquetta has objected. This is so, even though the law is clear that this is an important issue to class certification, and Chase is entitled to non-privileged information.

Because Luquetta has refused to provide the information that Chase is entitled to in discovery, Chase is filing this motion against her. Chase is also seeking the same kind of discovery with respect to the other Plaintiffs, who have also refused to produce relevant documents or answer relevant interrogatories. Although the circumstances of the other Plaintiffs may not be so dramatic as Luquetta's (based on the little Chase has seen to date), the principles are the same, the kind of information sought and its relevance are the same, and the refusal to provide responsive information is the same.

**STATEMENT OF THE CASE**

In their amended complaints, Plaintiffs allege that they incurred overdraft fees on their checking accounts with Chase "as a result of [Chase's] practice of re-sequencing debit card transactions from highest to lowest." *Lopez* Compl. ¶ 27; *Luquetta* Compl. ¶ 26.[2/]

**I.  Procedural History Relating to Discovery Requests**

On May 14, 2010, Chase served requests for the production of documents and interrogatories on Plaintiffs. As is pertinent to this motion, Chase sought documents concerning Plaintiffs' other deposit accounts and available credit (Chase's Document Request Nos. 5, 6, 8, 9, 15, 16-19), efforts to monitor account balances (No. 22), communications regarding debit card transactions or fees (No. 27), arrangements with counsel relating to their participation as class representative (Nos. 28-31), and prior-filed complaints in other litigation or proceedings (No. 35). Chase's interrogatories asked Plaintiffs to identify allegedly improper overdraft fees and the basis for asserting that such fees were improper (Interrogatory Nos. 2, 3, 5). Chase also asked Plaintiffs to identify communications and/or documents that they relied upon in forming their understanding of Chase's authorization and debit transaction processing practices (Interrogatory Nos. 6, 9, 12, 17).

Plaintiffs served objections and responses by U.S. mail and e-mail on June 14, 15, and 16, 2010. To resolve objections where possible, two of the undersigned counsel for Chase traveled to Dallas on July 12, 2010, where the parties met and conferred regarding both sides' discovery requests over some four hours at offices for Plaintiffs' counsel; they resumed such discussions again by telephone on July 15 and by e-mail on July 16. The parties could not resolve Plaintiffs' objections to Chase's above-mentioned requests for documents and

---

[2/]   "*Lopez* Compl." means the Amended Class Action Complaint filed April 12, 2010. [MDL Dkt. No. 347.]  "*Luquetta* Compl." means the Second Amended Class Action Complaint filed April 12, 2010.  [MDL Dkt. No. 348.]

interrogatories, and on July 19, 2010, Chase filed a motion to compel Plaintiffs to produce such information. [MDL Dkt. No. 693.]

Following the resumption of proceedings after the Eleventh Circuit vacated its *Cappuccitti* decision,[3/] the parties met and conferred on November 3, 2010, in Miami. Although Plaintiffs stated that they intended to stand on their objections, the parties agreed to suspend their respective motions to compel pending further discussions. At the November 4, 2010 status conference the Court therefore denied Chase's pending motion to compel as moot without prejudice to Chase's ability move to compel at a later time. [MDL Dkt. No. 876]. The parties met and conferred again on November 12, 2010, in Washington D.C., and Plaintiffs reiterated their refusal to produce the information that is the subject of this motion.

## II.     Plaintiffs' Documents

Chase received Plaintiffs' sole production of documents on November 5, 2010. Many of these documents demonstrate the existence—and relevance—of the additional information Chase seeks by this motion.

For example, certain documents Plaintiffs have produced reveal that they had other alternative funding sources (*e.g.*, Chase account statements showing payments to non-Chase credit card accounts), but Plaintiffs refuse to produce any other information regarding those other accounts. The documents concerning Plaintiffs' non-Chase deposit accounts are relevant, among other things, to their acquiescence to overdraft charges and lack of mitigation of any injuries they

---

[3/]     On July 19, 2010, the same day as Chase filed its original motion to compel [MDL Dkt. No. 693], the Eleventh Circuit issued its decision in *Cappuccitti v. DirecTV, Inc.*, 611 F.3d 1252 (11th Cir. 2010), *vacated on rehearing*, 2010 WL 4027719 (11th Cir. Oct. 15, 2010). After granting a joint request for an extension of time [MDL Dkt. No. 728], the Court ultimately suspended briefing on Chase's motion to compel pending further review of the *Cappuccitti* decision by the Eleventh Circuit. [MDL Dkt. No. 737; *see also* MDL Dkt. No. 790 (suspending class certification schedule).] On October 15, 2010, the Eleventh Circuit vacated its prior decision in *Cappuccitti* and replaced it with an opinion that did not cast doubt on the subject matter jurisdiction of this Court.

- 4 -

claim because they might have used these alternative sources to settle transactions in place of their Chase-issued debit cards, thus avoiding overdraft fees.

As another example, Plaintiffs have produced various communications with Chase—such as account rules and regulations, insufficient fund notices, and fee change notices in their possession—but they refuse to answer interrogatories asking whether they have relied on such documents to form an understanding of Chase's practices or obligations.

Perhaps most troubling, Plaintiffs have steadfastly refused to identify the basis of their claims and to disclose which fees they are suing about, yet plaintiff Andrea Luquetta's production included a letter she sent to Chase dated August 19, 2009—just weeks before she filed her initial complaint—demanding that Chase return $792.00 in allegedly improper overdraft fees, and enclosing a schedule identifying each fee she (a lawyer) had determined to be allegedly improper, by date charged.  But Ms. Luquetta refuses to say if these are now the fees she is suing about, or whether she is suing about different fees instead.  There is no basis for their refusal.

In sum, Plaintiffs' first production demonstrates that Plaintiffs can and should be compelled to answer the interrogatories and produce the documents that are the subject of this motion.

**ARGUMENT**

In response to Plaintiffs' vast discovery requests on Chase, Chase has already produced hundreds of thousand pages of documents, with many more on the way.  By contrast, Plaintiffs have produced virtually nothing, and have resisted the most basic requests for plainly relevant information on grounds of "relevance," "burden," and assorted other meritless objections.  As set forth below, Plaintiffs should be compelled to produce documents and answer interrogatories concerning the facts of their claims and Chase's defenses.

I. **Each Of Chase's Requests For The Production Of Documents To Which This Motion Is Directed Seeks Relevant And Necessary Information And Is Not Burdensome**

A. **Plaintiffs' Alternative Accounts And Credit**

Chase asserts, as affirmative defenses that (1) "Plaintiffs acquiesced in Chase's interpretation, application and implementation of the contractual terms," (2) that Plaintiffs "knew or should have known they had entered into a contract the terms of which provided for Chase to post debits in the order followed by Chase," but nevertheless initiated transactions that resulted in overdraft fees, and (3) that Plaintiffs failed to mitigate their damages.[4/]  To establish these affirmative defenses and others, Chase seeks to discover whether, when, and how each Plaintiff learned about overdraft fees charged to his or her account and/or Chase's alleged practice of posting debits from highest-to-lowest dollar amount; whether such Plaintiff continued to use Chase deposit-account services, with or without complaint, after discovering such fees or practices; and whether such Plaintiff could have completed the transactions entered without overdrawing his or her account (*e.g.*, by using a credit card or by drawing on other funds available to Plaintiff), but instead voluntarily incurred overdraft charges, knowing how they are imposed.  Chase's Document Request Nos. 5, 6, 8, 9, 15, 16-19, and 22 are directly relevant to these affirmative defenses.

Plaintiffs' account records reveal that Plaintiffs possess documents that are plainly relevant to these defenses and responsive to Chase's requests.  For example, Chase's Document Request No. 16 seeks "[a]ll documents constituting or concerning any credit card account on which you have been an obligor or authorized user."  *See also* Document Request Nos. 17-19.  Account statements for plaintiff Andrea Luquetta indicate that she had at least one credit card account (with a different institution) that she could have used in place of her Chase-issued debit

---

[4/]  *See* Answer to Amended Class Action Complaint as to Plaintiffs Lopez, Stone, Reed, and McDaniel [MDL Dkt. No. 501] (affirmative defenses); Answer to Second Amended Class Action Complaint as to Plaintiff Luquetta [MDL Dkt. No. 502] (affirmative defenses).

- 6 -

card, thereby avoiding overdraft fees. Ms. Luquetta, like other Plaintiffs, has produced numerous notices of insufficient funds that she received from Chase—she overdrew her account on hundreds of occasions—and was therefore very much aware that she was overdrawing her account on a regular basis.[5/] Using Ms. Luquetta's credit card statements, Chase expects to be able to show that Luquetta could have drawn on her credit card or cards to settle her transactions, but that she consciously used her Chase-issued debit card instead, knowingly or recklessly disregarding that the transaction would incur an overdraft fee. This is just one example: Chase is entitled to discovery concerning all Plaintiffs' other credit lines and accounts in order to establish its affirmative defenses, including whether Plaintiffs failed to mitigate their damages or knew or should have known that using their debit cards as they did would result in the number of overdraft fees charged. *See* Chase's Document Request Nos. 5, 6, 8, 9, 15, 16-19, and 22.

Plaintiffs' unsubstantiated objection that these requests are unduly burdensome is implausible. The number of accounts and lines of credit to which each of the individual Plaintiffs had access is surely limited to a manageable number and implicates a small set of documents. No Plaintiff has, as required by local practice, provided particularized, evidentiary support for their bald assertion of undue burden. *See, e.g.*, *Bank of Mongolia v. M&P Global Financial Services, Inc.*, 258 F.R.D. 514, 519 (S.D. Fla. 2009) ("[C]laims of undue burden should be supported by a statement (generally an affidavit) with specific information demonstrating how the request is overly burdensome[.]"); *Benfatto v. Wachovia Bank, N.A.*, No. 08-60646, 2008 WL 4938418 (S.D. Fla. Nov. 19, 2008) (objection should be "adequately supported with specific information demonstrating how the request creates an undue burden").

---

[5/]   Plaintiffs John Stone and Linda McDaniel also produced notices from Chase reflecting that they had overdrawn their accounts, although far fewer than they likely received. Estella Lopez and Charles Reed, Jr. did not produce any such notices. These Plaintiffs presumably discarded their insufficient funds notices before this litigation began or was anticipated.

### B.     Communications With Financial Advisors Or Other Third Parties

Plaintiffs' communications with accountants, financial advisors, or other third parties concerning their accounts, Chase debit cards, or overdraft fees would bear on each Plaintiff's understanding of his or her deposit agreement and, accordingly, whether each Plaintiff knowingly incurred overdraft fees.  Andrea Luquetta again illustrates the point.  Publicly-available government records and websites indicate that Ms. Luquetta is a full-time attorney, admitted to practice in California on August 31, 2007.  She has a long history of interest in consumer banking, and involvement in proceedings that deal with regulation of banks, and apparently has sophisticated knowledge of bank practices far exceeding that possessed by the average consumer.[6]  At the same time, she knowingly incurred hundreds of overdraft fees (including when she had other payment resources), but her claims in this case assert that Chase's charges to her were contrary to her contractual expectations.  In this context, whether she was advised to incur such fees by advisors, or otherwise learned about Chase's alleged practices from industry participants or academics is plainly relevant.  Such evidence would establish that Ms. Luquetta knowingly and voluntarily incurred all of the overdraft fees that she was charged, or at a minimum, that she learned about the alleged practices but continued to incur overdraft fees nevertheless.  Chase is entitled to determine whether other Plaintiffs from whom discovery is sought have comparable experience.

Plaintiffs' objection that Chase's request for this information (Document Request No. 27) is unduly burdensome is, here again, baseless and not supported by required particularized proof of the alleged burden:  Collecting these documents would require only a simple search of any

---

[6]     Just to name a few items that appear online:  In 2000, Ms. Luquetta addressed the Federal Reserve Board on the topic of bank lending practices, *see* http://www.federalreserve.gov/events/publichearings/20000804/20000804pm.htm; she has led campaigns to secure bank investment in minority communities, *see* http://www.cityprojectca.org/blog/archives/313; and she has co-authored an article that compared bank regulations to insurance regulations, *see* http://www.nhi.org/online/issues/120/LuquettaGoldberg.html.

computer files, and any such files as a Plaintiff may have containing hard-copy correspondence or communications.

### C. Engagement Letters And Cost-Sharing And Other Agreements Concerning The Prosecution Of The Litigation

By seeking appointment as a representative of the class, each Plaintiff has put at issue his or her adequacy to serve in a fiduciary capacity. *See, e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1254-55 (11th Cir. 2003) (noting "fiduciary role of class representative" and reversing order certifying a class where relationship between proposed class representative and counsel created a present and potential conflict of interest (internal quotation marks omitted)). "The requirement for a stringent examination of the adequacy of the class representative is especially great when, as in this case, the attorney's fees will far exceed the class representative's recovery." *Id.* at 1254 (internal quotation marks and brackets omitted).

Plaintiffs' agreements with counsel, including any engagement letters, agreements as to who will pay fees and costs incurred in connection with this action, and any documents received from any law firm or attorney seeking Plaintiffs' participation in this action (Document Request Nos. 28-31) are directly relevant to facts bearing on this issue, including whether any of the Plaintiffs have a motive for bringing this lawsuit that could undermine, or give the appearance of undermining, sound judgment; a relationship with counsel that could create an appearance that the party is not exercising independent judgment; or a fee arrangement that could put a Plaintiff's interests in conflict with the interests of other Plaintiffs or members of the putative class.

Plaintiffs object only that requested documents are in all respects protected across-the-board by the attorney-client privilege, but they are incorrect. As the Eleventh Circuit has ruled, "the law in this circuit is that matters involving the receipt of fees from a client are not generally privileged." *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982); *see also Armor Screen Corp.*

*v. Storm Catcher, Inc.*, No. 07-81091, 2009 WL 2767664, at *1 (S.D. Fla. Aug. 31, 2009) ("[T]he communication of factual information, such as reports containing a litigation's status, fee agreements, and retainer agreements are generally not protected by the attorney-client privilege."). Plaintiffs have not in discussions cited any case to the contrary; they have failed to show how any of the documents at issue would involve facts disclosed to counsel to facilitate the rendering of legal advice, or such legal advice; and they have failed to establish that any particular requested document would disclose privileged information, or any other reason to depart from the general rule set forth in the cases. "The party invoking the attorney-client privilege has the burden of proving that an attorney-client relationship existed and that the particular communications were confidential," *Bogle v. McClure*, 332 F.3d 1347, 1358 (11th Cir. 2003), and Plaintiffs cannot carry their burden. Moreover, any legitimately privileged information can be redacted, a privilege log provided (as required by the applicable rules), and the remainder of the document produced.

### D. Complaints In Prior Litigation And Other Proceedings

Any complaints or petitions filed previously by any Plaintiff in state or federal court lawsuits, bankruptcy proceedings, arbitrations, and administrative proceedings (Document Request No. 35) are also relevant to the adequacy-of-representation issue. Chase seeks to determine whether, among other things, each Plaintiff is a serial litigant, has a history of bad-faith or other improper conduct in litigation that would undermine his or her ability to represent an alleged class of millions, or has an undisclosed motive that could create a conflict or appearance of conflict between Plaintiff and the putative class members.

For example, Chase's review of public documents has revealed that Ms. Luquetta served as the sole named plaintiff and class representative in *Luquetta v. The Regents of the University of California*, No. CGC-05-443007 (Cal. Sup. Ct.). *See* http://www.ucfeesclassaction.com

(follow "*Luquetta*" links).  She is also apparently participating as an intervenor in *Sander v. State Bar of California*, CPF-08-508880 (Cal. Sup. Ct.).  But whether she, or any other of the Plaintiffs, has participated in other litigation is presently unknown to Chase.  Chase is entitled to this information to explore whether any of these Plaintiffs can adequately represent the class in this action.

Plaintiffs' objection that this request is unduly burdensome is untenable.  Chase has requested only the "complaints" from all proceedings in which each individual was a plaintiff, petitioner, or claimant (Document Request No. 35)[7/]—and if the number of complaints is very large, then that only proves the point.

Plaintiffs' objection that producing such documents would disclose sensitive or personal information is not a grounds for objection at all.  The complaints in question are presumptively public documents (though in which court files is unknown to Chase)[8/]; and should any confidential material be implicated in the documents as to which discovery is sought, Plaintiffs may seek confidential treatment pursuant to the protective order entered by this Court.

**II.    Each Of Chase's Interrogatories To Which This Motion Is Directed Seeks Relevant And Necessary Information About Plaintiffs' Claims And Is Not Burdensome**

Chase's interrogatories seek basic information about each Plaintiff's claims.  Chase asked Plaintiffs:

---

[7/]    Chase initially also sought production of testimonial materials from any such litigations, including trial and deposition transcripts and affidavits (Request No. 36).  Chase is not moving for such materials at this time, but if further discovery about Plaintiffs' litigation history suggests that there is a need to probe such materials and they cannot otherwise be easily obtained, Chase reserves the right to pursue such requests later.

[8/]    The requested documents are presumably *not* confidential, because most judicial and administrative proceedings are a matter of public record, but this does not mean that Plaintiffs should not bear the burden of producing them.  The burden of searching *all* courts and tribunals for such complaints, if even possible, far outweighs the *de minimis* burden on Plaintiffs of producing this presumably small collection of documents.

- 11 -

- to identify each fee charged that was "improper because of the practice of 're-sequencing debt card transactions from highest to lowest,'" Interrogatory No. 2;

- to identify "each individual fee for which [Plaintiff] seek[s] recovery in this lawsuit for any reason *other than* 're-sequencing debit card transactions from highest to lowest,'" Interrogatory No. 3;

- to state, for each transaction that resulted in a fee, "every material detail of the order or sequence in which Chase was at that time required by law, or by any obligation to [Plaintiff], to post debit and credit transactions to [Plaintiff's] account," Interrogatory No. 5; and

- to identify each document or communication by Chase concerning Plaintiffs' alleged expectations about and/or understanding of Chase's alleged practices, Interrogatory Nos. 6, 9, 12 and 17.

This information plainly relates to the claims and defenses in this case; indeed, without it, Chase cannot adequately prepare its defenses. For instance, although they assert a claim for breach of contract and the implied covenant of good faith and fair dealing, Plaintiffs refuse to state their interpretation of the deposit agreement or why Chase's conduct amounted to a breach of its implied obligations of good faith, *see* Response to Interrogatory No. 3 (refusing to state whether any basis for their claims other than "re-sequencing" exists); Response to Interrogatory No. 5 (refusing to state the order or sequence in which Chase was required to post debit and credit transactions to Plaintiffs' accounts), let alone explain why any particular interpretation is justified under the deposit agreement. Consistent with their failure to articulate Chase's obligations, Plaintiffs do not know, or else flatly refuse to say whether, when, or how—through which specific transactions and with precisely what harmful consequences—Chase allegedly breached such obligations. *See* Response to Interrogatory No. 2 (refusing to identify any particular improper fees and stating only that "Chase improperly charged one or more [unlawful fees]").

Plaintiffs' position that they cannot identify *any* allegedly improper overdraft fees without the benefit of discovery and expert analysis is refuted by documents that Ms. Luquetta delivered to Chase only weeks before she commenced her civil action in the U.S. District Court

- 12 -

for the Central District of California. Specifically, on August 19, 2009, Ms. Luquetta sent a letter to Chase demanding the return of $792.00 in overdraft fees, and enclosing a schedule *purportedly identifying each allegedly improper overdraft fee* by date charged. Plaintiffs are obviously capable of identifying allegedly improper fees, as demonstrated in part by Ms. Luquetta's threat-to-sue letter. *Cf. also Lopez* Compl. ¶¶ 81-84 (alleging that plaintiff Estella Lopez incurred additional fees in connection with listed transactions on specified dates because of high-to-low posting order); *Luquetta* Compl. ¶¶ 83-85 (plaintiff Luquetta). All Plaintiffs should be required to answer Chase's interrogatories concerning overdraft fees, including the identification of each allegedly improper fee, and the basis for asserting that it was improper under the deposit agreements and/or applicable law.[9/]

Finally, though unable or unwilling to identify allegedly improper fees or say what the deposit agreement requires or allows, Plaintiffs nevertheless allege that Chase should *not* have posted transactions in order from highest-to-lowest dollar amount each business day. *See, e.g.*, *Lopez* Compl. ¶ 50; *Luquetta* Compl. ¶ 49. Plaintiffs further allege that Chase should *not* have authorized certain debit transactions, *see Lopez* Compl. ¶ 62; *Luquetta* Compl. ¶ 60, although they do not say which ones or how or whether the allegation relates to any of their claims. But Plaintiffs are unable—or refuse—to identify any document or communication that supports these allegations. *See* Responses to Interrogatory Nos. 6, 9, 12, 17. It is no answer to say, as Plaintiffs do, that they need documents and records in the possession of Chase before they are able to provide this basic information about their claims and asserted harms. Each Plaintiff is required to have had a basis for the claims of wrongdoing and harm before he or she filed the complaints

---

[9/]   Plaintiffs' objection that Chase has not produced all documents or information necessary for them to identify transactions and fees sought by Chase's interrogatories is now at least partly moot as well as invalid, insofar as Chase has produced a substantial number of requested documents, including all of Plaintiffs' bank statements in Chase's possession. In any event, Plaintiffs' position cannot be that they will wait until Chase has completed all of its productions before they even attempt to answer Chase's interrogatories.

herein. *See* Fed. R. Civ. P. 11. And if it turns out that they filed claims without this information, they should be required to say that.

## CONCLUSION

For the reasons stated above, Plaintiffs should be compelled to produce documents in response to Chase's Document Request Nos. 5, 6, 8, 9, 15, 16-19, 22, 27, 28-31, and 35, and should be compelled to answer Chase's Interrogatory Nos. 2, 3, 5, 6, 9, 12, and 17.

## LOCAL RULE 7.1(a)(3) CERTIFICATION OF GOOD FAITH COMPLIANCE

Pursuant to Local Rule 7.1(a)(3), Chase certifies that it conferred with Plaintiffs' Counsel in person in Dallas, Texas, on July 12; by telephone on July 15 and by e-mail on July 16; in person in Miami, Florida, on November 3; and in person in Washington, D.C. on November 12, 2010, in a good-faith effort to resolve or narrow differences over Plaintiffs' objections and responses to Chase's discovery requests.

The parties were able to reach agreement on certain issues and thereby avoid the necessity of the Court's involvement. As to alternative sources of funds (Document Request Nos. 5, 6, 8, 9, 15, 16-19, and 22), Plaintiffs agreed to produce all documents related to Plaintiffs' debit/checking account(s) at Chase. Chase accordingly does not move to compel such documents at this time. As to Chase Document Request No. 35, Plaintiffs agreed to produce the complaints, sworn statements, and judgment decrees of any litigations involving bank overdraft fees, and agreed to produce the class certification order, sworn statements, and final decrees or settlements related to their clients' service as lead plaintiffs in other cases. Chase accordingly does not move to compel such documents at this time. As to Chase Document Request No. 39, Plaintiffs clarified that they do not by their objections mean to state that they intend to withhold documents. Chase accordingly does not move to compel as to Document Request No. 39 at this

- 14 -

time.  The parties were unable to resolve their differences by agreement as to the separate issues raised herein concerning Document Request Nos. 5, 6, 8, 9, 15, 16-19, 22, 27, 28-31, and 35; and Interrogatory Nos. 2, 3, 5, 6, 9, 12, and 17.

Dated:  November 17, 2010

> Respectfully submitted,
>
> WILMER CUTLER PICKERING
>   HALE AND DORR LLP
>
> /s/ Christopher R. Lipsett
> Christopher R. Lipsett
> (chris.lipsett@wilmerhale.com)
> David S. Lesser
> (david.lesser@wilmerhale.com)
> Alan E. Schoenfeld
> (alan.schoenfeld@wilmerhale.com)
> 399 Park Avenue
> New York, New York  10022
> Tel: (212) 230-8851
> Fax: (212) 230-8888
>
> A. Stephen Hut, Jr.
> (stephen.hut@wilmerhale.com)
> 1875 Pennsylvania Avenue NW
> Washington, DC  20006
> Tel: (202) 663-6000
> Fax: (202) 663-6363
>
> HOMER BONNER, P.A.
>
> Peter W. Homer
> (phomer@homerbonner.com)
> Gregory J. Trask
> (gtrask@homerbonner.com)
> 1411 Brickell Avenue, Suite 1200
> Miami, Florida 33131
> tel.: (305) 350-5139
> fax: (305) 372-2738
>
> *Attorneys for defendant JPMorgan Chase Bank, N.A.*