## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

MDL No. 2036

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

THIS DOCUMENT RELATES TO:

*Luquetta v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23432-JLK

*Lopez v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23127-JLK

### PLAINTIFFS' BRIEF IN OPPOSITION TO
### JPMORGAN CHASE BANK, N.A.'S MOTION TO COMPEL DISCOVERY

Plaintiffs respectfully submit this Brief in Opposition to JPMorgan Chase Bank, N.A.'s Motion To Compel Discovery. For the reasons set forth below, Chase's Motion should be denied in its entirety.

### POSITION SUMMARY

Defendant JPMorgan Chase Bank, N.A. ("Chase"), in its Brief in Support of its Motion to Compel ("Chase Br." or "Motion") **[DE # 930]**, asks this Court to compel discovery from Plaintiffs Andrea Luquetta, Estella Lopez, Linda McDaniel, Charles Reed, Jr. and John Stone, that (i) is highly sensitive or privileged; (ii) is either irrelevant or is far removed from the subject of this action; or (iii) cannot presently be provided. Chase's overzealous pursuit of this information seeks to burden people who have already been the victims of Chase's overdraft fee chicanery. Try as it might to paint plaintiffs as irresponsible people with bad motives who deserve the punishment Chase inflicted on them, nothing in Chase's arsenal of superficial discovery tricks can detract from the inescapable reality that, ***but for Chase's reordering policy, plaintiffs would have incurred fewer overdraft fees.***

Moreover, this Court should deny Chase's Motion because:

*First*, Chase takes the alarming step of misrepresenting Ms. Luquetta's case – Chase Claims that its "order of posting was *not* what caused her to overdraw her account,

as her account records show.  Indeed, as these records show, her transactions were *not* posted by Chase based on a high-low sequencing rule."  Chase Br. at 1 (italics in original).  However, the very "records" that Chase averts to – but did not include in its brief to the court – dispels this myth.  There are several occasions on which Ms. Luquetta was charged more overdraft fees than there were transactions that actually overdrew the account.  Chase's disturbing misrepresentations in the hopes of poisoning the Court's sentiments about Ms. Luquetta's case – and without submitting so much as a declaration or a document – highlights how desperate Chase is to shift the focus away from itself, indict and bully the underdogs in this case, and escape liability for its wrong-doing.

*Second*, Chase dubiously contends that it has the right to perform an exhaustive financial audit of each plaintiff for the past ten years in order to ferret out why each overdraft occurred and whether it could have been avoided.  *See* Chase Br. at 5-7.  However, the law in this circuit is clear that there must be a compelling reason to order disclosure of personal financial information that is not itself at issue in the case.  What Chase really seeks to do is "blame the victims" and put their financial status and spending choices on trial.  But this case is about *Chase's* actions manipulating transactions' order and timing which increased the number of overdraft fees.  Chase's premise that plaintiffs acquiesced to being charged *extra fees* for overdrafting their accounts because they did not use a different credit or debit card is absurd on its face.  Moreover, Plaintiffs' position is, and has always been, that Chase's reordering caused transactions that would not have otherwise overdrawn the account, to become overdrafts.  Logically, this means that when these transactions were entered into, there were (or appeared to plaintiff that there were) sufficient funds to cover these transactions.  Thus, it simply does not matter whether a plaintiff had another source of funding at the time they entered into one of these transactions.

*Third*, Chase inexplicably demands that plaintiffs identify *every* transaction that led to a challenged overdraft fee.  Plaintiffs have never refused to answer such interrogatories – they have simply objected that they first need information from Chase.  *See* Supp. Declaration of Kenneth Grunfeld, ¶ 4(b) ("Grunfeld Decl.").  For example, as mentioned above, Ms. Luquetta was charged more overdraft fees than there are transactions reflecting insufficient funds (once they are ordered either chronologically or

low to high).  So, how is she supposed to identify which "fee" she is challenging when she has no way of knowing which transaction triggered which fee?  Logically, she needs the above-described data first, only then can she make that determination and answer Chase's interrogatories.  That information is in Chase's *sole* custody and has not been produced yet.  Every plaintiff faces the same challenge.  Thus, the several interrogatories in this category are premature.

*Fourth*, Chase seeks discovery of retainer agreements to challenge the adequacy of each plaintiff to serve as a named class representative.  Chase contends it needs the retainer agreements because certain pieces of information that *might* be contained in those documents – such as advancement of costs and contingency fee percentages – are not privileged.  Plaintiffs objected under the attorney-client privilege and offered less invasive means of getting the same information, such as the ability to question plaintiffs at deposition.  Moreover, court after court has held that retainer agreements are not discoverable where, as here, the specific information sought is available through less burdensome means that does not risk invading the attorney-client relationship.  Chase, while citing no contrary authority, insists it has a *right* to the retainer agreements.  But that is not so – Chase has a right to non-privileged information.  It does not have a right to any particular means of getting that information.

*Fifth*, Chase also seeks all documents related to plaintiffs' prior litigations.  Plaintiffs have agreed to produce documents related to prior litigation if they are relevant: i.e., if they involved a class action or bank overdraft fees.  Chase again claims that certain pieces of information *might* be relevant, such as if a plaintiff has been sanctioned for discovery abuses or cited for perjury.  However, all such information can be obtained through other, less intrusive and less burdensome means: for example, specific questions during deposition or pointed interrogatories or requests for admission.  Production of *all* plaintiffs' documents related to prior litigation, including things like adoptions, personal injury actions, and divorces, are irrelevant and unduly burden plaintiffs' privacy rights, as well as placing an undue burden on non-parties to this litigation, such as plaintiffs' prior law firms who would be the ones to find and produce the documents which could be very voluminous.

*Lastly*, Chase asks – via *interrogatory* no less – for a separate identification of "*every* communication" between each plaintiff and Chase. Chase defines "communication" so broadly that it literally encompasses every single interaction that ever occurred: every time a plaintiff went to the ATM; visited a branch; logged onto Chase.com; received a statement, email alert, or letter; or viewed a print or TV advertisement. In today's society, contact with one's bank is far too ubiquitous to allow for such a blanket request. Plaintiffs have agreed to produce all documents related to their Chase debit accounts – anything further is unduly burdensome.

For these reasons, Chase's motion to compel should be denied.

## ARGUMENT AND AUTHORITIES

**I.      Chase's Misrepresentations And Unsubstantiated Accusations About Andrea Luquetta Highlight Chase's True Intentions In This Case To Harass and Put Plaintiffs To Impossible Burdens**

Chase makes two false claims about Ms. Luquetta: (1) that Ms. Luquetta sought a refund of her overdraft fees and cited reasons other than the reordering as grounds for the refund; and (2) that Ms. Luquetta has no overdraft fees that were due to its reordering scheme. Chase Br. at 1. Both are patently false.

*First*, perhaps the only true state Chase makes is that Ms. Luquetta sent a letter to Chase demanding that it reverse some $792.00 in overdraft fees and did not cite Chase's high-to-low posting order as a reason. *See* Chase Br. at 1. But Chase's *interpretation* of her letter – i.e., that she cited reasons other than the high to low ordering – is completely wrong:

> Dear Branch Manager Habtu:
>
> This letter is demand [sic] the return fo $792.00 to my checking account ending [redacted].
>
> The enclosed balance sheet highlights the wrongly charged overdraft fees since December 2008. A telephone banker reversed one of these charges on August 17, 2009. The remaining amount due to me $792.00.
>
> Please credit my account the $792.00 by end of business Friday, August 21, 2009 to avoid litigation in this matter.

*See* Grunfeld Decl. at ¶ 5 (Ex. A).   Thus, there is no basis for Chase to argue that Ms. Luquetta, prior to becoming involved in this lawsuit, had divergent theories of why she was charged extra overdraft fees.  Notably, the amount she claims, $792.00 is the *total* amount she believed she was charged in overdraft fees and that she wanted refunded. She did not express any grounds for believing that she ought to be refunded the moneys.

Chase then ridiculously contends that it is *confused* as to what Ms. Luquetta is challenging – i.e., whether it the fees in her letter or the fees described in her complaint that she is challenging.  Of course, the current complaint governs: Plaintiffs respectfully refer Chase to the allegations in the Amended Class Action Complaint **[DE # 348]**.

*Second*, Chase references a document that Ms. Luquetta attached with her letter. *See* Chase Br. at 1.  The attached chart she referenced listed the transactions on her Chase debit account from December 22, 2008 through August 18, 2009.  There are several instances where Ms. Luquetta was charged multiple overdrafts in a day and there is no way of telling why or what the overdrafts were for:

*See* Chase/Luquetta000156.[1]   Thus, on its face, it is clear that Chase charged Ms. Luquetta one more overdraft fee than there were transactions that ostensibly were

| | | | |
|---|---|---|---|
| 12/30/08 | MC-THREE RIVERS RESORT FORKS WA | $26.20 | $100.10 | |
| 12/30/08 | DREW UNIVERSITY-NDSL 93 | $61.71 | $38.39 | |
| 12/30/08 | POS VZWRLSS DEBI VZWRLSS DEBIT MA VISW WARREN NJ | $147.24 | ($106.85) | |
| 12/31/08 | PAYPRO USA, INC. NET PAY 0027 | | $1,843.76 | $1,734.91 |
| 12/31/08 | Overdraft Charge | | $33.00 | $1,701.91 |
| 12/31/08 | Overdraft Charge | | $33.00 | $1,668.91 | $33.00 |
| 12/31/08 | MC-SAFEWAY STORE00014926 PORT ANGELES WA | | $42.87 | $1,626.04 |

overdrafts.  However, here is how Chase's statements from that period listed the transactions:

---

[1] The highlighted line is one that Ms. Luquetta challenged the fee for.  As one can see, it is obvious that there is one more fee than there were overdrafted transactions.  But nowhere does it show which transaction that fee was linked to.

| | | |
|---|---|---|
| 12/30 | DREW UNIVERSITY-NDSL 93 | $61.71 |
| 12/30 | POS VZWRLSS DEBI VZWRLSS DEBITMA VISW WARREN NJ | $147.24 |
| 12/30 | MC-THREE RIVERS RESORT FORKS WA | $26.20 |
| 12/31 | Overdraft Charge | $33.00 |
| 12/31 | Overdraft Charge | $33.00 |

| Date | Description | Withdrawals (-) | Deposits (+) |
|---|---|---|---|
| 12/31 | PAYPRO USA, INC. NET PAY 0027 | | $1,843.76 |
| 12/31 | MC-SAFEWAY STORE00014928 PORT ANGELES WA | $42.87 | |

*See* MDL_CH_002356-002357.

Notably, were the transactions to be ordered from highest to lowest in total, there would have been *three* overdrafts, not just two. In other words there are *two* transactions on 12/30 that could have possibly triggered the other overdraft fee that was charged on 12/31. It would be impossible for Ms. Luquetta to identify which one Chase charged the extra fee against because:

- Chase's bank statements do not necessarily reflect the order in which they posted the transactions;

- Ms. Luquetta's chart on Chase/Luquetta000156 et seq. shows her calculation of the running balance – but because we do not know how or when Chase posted or cleared transactions, it is impossible to know what her actual running balance really was at any given time;

- One of the amounts that appears to have been posted on 12/30 could have merely been pending on that day but actually cleared on 12/31 or later;

- Chase could have delayed posting a deposit until after the overdraft fees which resulted in an additional fee;

- Chase could have simply declined to charge an additional overdraft fee for some mysterious reason;

- There could have been a pending charge even from a day *prior* to 12/30 that cleared when Chase saw Ms. Luquetta's deposit on 12/31 for $1843.76 but which caused the overdraft fee.

There are a myriad of other possible reasons that plaintiffs probably cannot even fathom at this time. But the above illustrates the impossibility of meeting Chase's demand that

plaintiffs identify the specific transactions that they are challenging the fees for, and to do so without the data from Chase.  For Chase to suggest to the Court that Plaintiffs should at least take their "best guess" is ridiculous.

The above also raises the very pertinent question: why does it matter at all which transaction led to which fee and which one Ms. Luquetta is challenging?  All that is important is that the reordering ended up in an additional fee!

Moreover, Ms. Luquetta's circumstances show why Chase's desire for documents related to "alternate sources of funding" are wholly irrelevant.  She entered into four transactions on April 8, 2010, at least one of which *would not have triggered an overdraft fee* because there were enough funds to cover it at the time they were entered into. Logically, that means that Ms. Luquetta's possible alternate sources of funding are irrelevant since there were enough funds in the first place.  While it is true, plaintiffs cannot at this time identify which transaction that was (because Chase's information reflects that), it does not put Ms. Luquetta's financial situation at issue in the least.

**II.**      **Chase Does Not Have The Right To Discovery That Amounts To A Complete Financial Audit Of Each Plaintiff**

Chase seeks a litany of documents related to plaintiffs' credit card accounts, savings accounts, liquid financial assets, and debit accounts held at institutions other than Chase.  *See* Chase Br., Ex. A (Doc. Requests Nos. 5, 6, 8, 9, 15, 16-19, and 22) **[DE # 693-1]**.  Chase argues that it has the right to discover "Plaintiffs' Alternate Funds and Credit" because it is relevant to their affirmative defenses of "acquiescence, knowledge or constructive knowledge, and failure to mitigate."  Chase Br. at 6-8.  Chase's argument belies its true intention which is to harass plaintiffs by requiring them to produce irrelevant, unduly burdensome, and highly personal financial information.

The documents that Chase seeks are overly broad and irrelevant because the requests operate under a faulty premise – namely, that plaintiffs are challenging the imposition of overdraft fees.  That is not the case.  Plaintiffs are challenging Chase's systemic policy of manipulating transactions in order to maximize the number of overdraft fees it charges.  *See generally* Second Consolidated Amended Complaint (never once contending that overdraft fees are always improper).  **[DE # 348]**.  This complex scheme was imposed by Chase and then was inadequately disclosed by Chase.  Plaintiffs'

claims are limited to Chase's wrongful conduct and, therefore, the discovery of documents relating to plaintiffs "alternate sources of funds" at other institutions has no probative value.

Furthermore, Chase's argument that the availability of alternate sources of funds (or lack thereof) supports their mitigation and acquiescence defenses misses the point. Again, plaintiffs are not challenging all overdrafts, just those that are the result of Chase's manipulations. These challenged overdraft fees are imposed on transactions despite the fact that:

      ☐     The fees were imposed on transactions that only overdrafted the account *after* and *due to* Chase's reordering; and

      ☐     At the time the transaction was entered into, there would have been sufficient funds to cover that particular transaction.

In other words, overdrafts are imposed for transactions that, absent Chase's manipulation, would not have overdrawn the accounts at the time that they were made. Given the fact that Chase's alleged conduct caused overdraft fees even when plaintiffs had sufficient funds at the time they entered into those transactions, mitigation is wholly irrelevant, and the idea that plaintiffs thereby *acquiesced* to the extra overdraft fees is a nonstarter.

Additionally, given the complexity of the manipulation and Chase's lack of disclosure, plaintiffs could not have mitigated the damages even if they had wanted to. This is precisely what the U.S. Senate has found with regards to this scheme. *See* Unfair or Deceptive Acts or Practices, 73 Fed. Reg. 28,904-01, 28,929 (May 19, 2008) (stating that injury from bank overdraft policies is not reasonably avoidable by the consumer, even with careful tracking of their transactions, because "consumers often lack sufficient information about key aspects of their account"). The court in *Gutierrez v. Wells Fargo Bank, N.A.*, No. C07-05923 WHA, 2010 WL 3155934, at *37 (N.D. Cal. Aug. 10, 2010) also found as a matter of fact that "a Customer who faithfully uses a register to track items . . . could not reasonably be expected to know that the bank would manipulate the order of her transactions so as to deplete her account balance faster than shown in her

register, triggering not one but as many as ten overdraft penalties, all due to the bank's high-to-low bookkeeping scheme".

Chase's brief is conspicuously silent as to how information about a customer's alternate funds and credit is relevant to their ability to mitigate their damages. In fact, during the parties' meet and confer, counsel for Chase were unable to articulate how the existence of alternative payment options strengthened or weakened their affirmative defenses of acquiescence, knowledge, and failure to mitigate. *See* Grunfeld Decl., ¶ 4(a). Chase's alternative funds and credit argument extends ad infinitum. Will Chase next be demanding an accounting of plaintiffs' cash in their pocket, or their mothers' bank account balances to determine whether "alternative funds and credit" might have been available?

Accordingly, Chase's propounded document requests fall dramatically short of being relevant to *any* of its affirmative defenses:

- ☐ Plaintiffs' credit card, savings, or debit card accounts *whether held at Chase or at a bank other than Chase*, in no way prove or disprove that plaintiffs "acquiesced" to *Chase* charging them multiple overdraft fees when, under different ordering or posting protocols, they would have been charged fewer or no overdraft fees;

- ☐ Plaintiffs' credit card, savings, or debit card accounts *whether held at Chase or at a bank other than Chase*, in no way prove or disprove that plaintiffs knew or should have known that *Chase* was going to charge them excessive overdraft fees when, under a different ordering or posting protocols, they would have been charged fewer or no overdraft fees; and

- ☐ Plaintiffs' credit card, savings, or debit card accounts *whether held at Chase or at a bank other than Chase*, in no way prove or disprove that plaintiffs failed to mitigate their damages, because it does not bear on the amount of money in their *Chase* debit account *at the time* the transactions were entered into.

Even if this information were theoretically relevant to Chase's defenses, the discovery is overbroad and unduly burdensome; its production should not be required. Chase seeks *all* documents "concerning" credit cards, savings accounts, other liquid accounts, and debit cards held at other banks. This includes not only account numbers,

but also statements, receipts from purchases, transaction slips, letters, notices, contracts, and correspondence that involve any and all of these accounts going back many years. Chase has also asked for any communications with CPAs and financial advisors regarding these accounts. The discovery is over-inclusive and unduly burdensome, particularly given its lack of probative value.

Chase cites several opinions from this court for the proposition that plaintiffs have to provide a declaration *proving* that the production is unduly burdensome. Chase Br. at 7. However, Chase's cases addressed objections – which in *Bank of Mong* the court deemed were already waived – to burden for discovery that was responsive to otherwise *reasonable* requests.[2]  Whereas here, the requests are not reasonable: they are overbroad and unduly burdensome on their face. Plaintiffs are objecting to (i) the burden imposed by the sensitivity of the subject matter and (ii) the burden imposed by the scope.

There can be no doubt that Chase wants to conduct an invasive audit of all of plaintiffs' financial transactions, a scheme intended to embarrass and harass plaintiffs into submission. Chase hopes to divert attention from its own wrongful actions by characterizing plaintiffs as deadbeats who *deserve* to be punished with excessive overdrafts charges. Chase's improper strategy is clearly demonstrated by its rejection of plaintiffs' offer, made in the spirit of avoiding this dispute, to produce documents in plaintiffs' possession related to *debit card accounts* held at *other financial institutions*, if any, in exchange for Chase withdrawing its other requests on this topic. *See* Grunfeld Decl., ¶ 4(a).[3]  Chase wants *everything* – as its motion so tersely communicates.

Accordingly, Chase's discovery requests are unduly burdensome, overly broad, and not reasonably calculated to lead to the discovery of admissible evidence.

---

[2] *See Bank of Mong. v. M&P Global Fin. Servs.*, 258 F.R.D. 514, 520 (S.D. Fla. 2009) ("The M&P Defendants similarly did not provide an affidavit or other specific evidence regarding the scope of the rest of Defendants' search for responsive documents, and counsel was not able to articulate what Defendants had done in order to search for responsive documents."); *Benfatto v. Wachovia Bank, N.A.*, No. 08-60646, 2008 U.S. Dist. LEXIS 95952 *12 (S.D. Fla., Nov. 19, 2008) (request for bank statements from defendant not unreasonable and not duplicative); *Convertino v. U.S. Dept. of Justice,* 565 F. Supp. 2d 10, 14 (D.D.C. 2008) (request for documents not unreasonable just because they seek documents in the possession of another attorney which is in "control" of plaintiff – insufficient to object to burden without affidavit to show why such documents are accessible or burdensome to obtain).

[3] Plaintiffs made this offer in the spirit of compromise as a way to avoid the need for motion practice. Plaintiffs do not concede this information is properly discoverable.

III.      **Plaintiffs' Communications With Accountants, Financial Advisors, Or CPAs Are Not Relevant To Chase's Defense That Plaintiffs Knew About Overdraft Fees Unless The Communications Were About Overdraft Fees**

Chase next takes the stance that communications between plaintiffs and their accountants, financial advisors, CPAs, or other third parties, that have nothing to do with overdraft fees, are somehow relevant to plaintiffs' understanding of overdraft fees. Plaintiffs are dumbfounded at the very suggestion.

Notably, plaintiffs have agreed to produce any such communications "that expressly refer to overdraft fees." Chase's response to this offer, while verbose, fails to articulate how anything beyond that is required by the Federal Rules. *See* Chase Br. at 3. This is simply another ploy by Chase to delve into plaintiffs' personal and financial matters and attack them personally. However, the courts of the Eleventh Circuit have repeatedly refused to require such discovery. *See Lafarge N. Am., Inc. v. Matraco-Colorado, Inc.*, 2008 WL 2474638, *5 (S.D. Fla. 2008) (holding that email chains containing information irrelevant to the issues of the case were not discoverable).

> In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied . . . . Likewise, discovery should be denied when a party's aim is to delay bringing a case to trial, or embarrass or harass the person from whom he seeks discovery.

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978). Accordingly, the motion should be denied as to all non-overdraft related communications.

Moreover, in Florida and Georgia, where Plaintiffs Lopez and McDaniel are resident, respectively, communications between an accountant and a client are specifically privileged. *See* Fl. Stat. Ann. § 90.5055(2); *Choice Restaurant Acquisition, Ltd. v. Whitley, Inc.*, 816 So.2d 1165, 1167 (Fla. App. 2002) ("Although the information may be relevant, it does not follow that relevancy trumps the accountant/client privilege"); O.C.G.A. § 43-3-32(b); *General Motors Acceptance Corp. v. Bowen Motors, Inc.*, 306 S.E.2d 675, 680 (Ga. App. 1983) (finding client/accountant privilege).

Accordingly, this Court should decline to entertain Chase's prurient desire to peer into the communications with plaintiffs' accountants – communications that have nothing to do with this case.

**IV.      Plaintiffs' Engagement Letters, Cost-Sharing Agreements, And Other Agreements Concerning The Prosecution Of The Litigation Are Privileged**

Contrary to defendants' contentions, the issue here is <u>not</u> whether plaintiffs' retainer agreements that might disclose cost-sharing arrangements should be produced. The issue is whether the data and information defendants are seeking can be obtained elsewhere from a less burdensome source and without risking the attorney-client relationship. They can.

The majority of courts addressing this very issue have ruled against disclosure where there are other, less burdensome means to obtain the same information. For example, the court in *In re Front Loading Washing Machine Class Action Litigation*, 2010 WL 3025141, *4 (D.N.J. 2010), found that "[e]ven assuming *arguendo* that the retainer agreements are relevant and may lead to admissible evidence, this Court nonetheless finds that disclosure is unwarranted, as Defendant can obtain the discovery by alternative means, such as through the depositions of individual Plaintiffs." The court found that production of fee agreements was irrelevant to address potential claims for attorneys' fees and to determine the adequacy of a class plaintiff's representation. *Id.* Regarding assessment of attorney's fees, the retainer agreements were not necessary because the courts address the reasonableness of attorney's fees once a judgment has been entered. *Id.* And regarding the adequacy of a class plaintiff's ability to represent the entire class, the court found that defendants have alternative avenues to obtain that information, by deposition for example. *Id.*

Likewise, *Piazza v. First American Title Insurance Co.*, 2007 WL 4287469, *2 (D. Conn. 2007), found that the myriad reasons posited for disclosure, which were related to plaintiff's adequacy and independence, were unpersuasive justifications to order disclosure of the retainer agreement. "The defendant also points to evidence that the plaintiff has had limited contact with her attorneys and may not fully understand the litigation. Though this evidence may be relevant to class certification, it does not make the fee-sharing agreement any more relevant." *Id.*

Chase neither cites these authorities to the Court – as its duty of candor requires it to – nor does it even attempt to distinguish them.  Chase instead relies on *In re Slaughter*, 694 F.2d 1258 (11th Cir. 1982) for the proposition that retainer agreements can never be privileged.  But that case recognized, as expounded in *In re Grand Jury Matter No. 91-01386*, 969 F.2d 995 (11th Cir. 1992), that a retainer agreement is privileged if "details of the fee arrangement would reveal fee information which is tantamount to a confidential professional communication." *Id.* at 996 (citing *In re Slaughter*, 694 F.2d at 1260).

Indeed, numerous courts have held that while portions of fee agreements may be relevant to the award of attorneys' fees, fee agreements are not discoverable if disclosure would reveal the mental impressions and opinions of counsel – which disclosure of the entire agreement inevitably would.  *See Finol v. Finol*, 869 So.2d 666, 666 (Fla. App. 4th Dist. 2004); *HCA Health Servs. of Fla., Inc. v. Hillman*, 870 So.2d 104, 106 (Fla. App. 2d Dist. 2003).  This case does not present a situation, such as a fee dispute, where the retainer agreement would obviously be discoverable under Florida law.  As such, the majority rule of non-discoverability should be applied.

Although some courts have required disclosure of retainer agreements, a higher standard of relevance than is present here was required in those cases.  Courts have found that fee agreements are only relevant to adequacy when: (1) there are specific facts which demonstrate that there may be a conflict of interest, or (2) the ability to adequately fund the litigation has been called into question.  *See, e.g., Porter v. Nationscredit Consumer Discount Co.*, 2004 WL 1753255, *2 (E.D. Pa. 2004) ("Fee agreements may be relevant to a plaintiff's ability to protect the interests of potential class members by adequately funding the suit"); *also Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 322 (N.D. Ohio 2009) (noting that courts have allowed discovery where "the information contained therein is clearly relevant to potential conflicts with absent class members").  Neither issue has been raised by Chase.

Furthermore, whether plaintiffs were directly financing the litigation has consistently been held <u>irrelevant</u> if the attorney has agreed to advance the costs.  *See, e.g., Roseman Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108, 113 (M.D. Fla. 1996) (finding tax and other financial information irrelevant to class certification where the attorney agreed to advance costs of litigation); *see also* Federal Judicial Center,

*Manual for Complex Litigation* § 21.141 (4th Ed. 2004) ("Precertification inquiries into the named parties' finances or the financial arrangements between the class representatives and their counsel are rarely appropriate, except to obtain information necessary to determine whether the parties and their counsel have the resources to represent the class adequately"). Plaintiffs readily concede that the costs of this litigation are being advanced by counsel as is permitted by the Florida Bar's rules and those of the ABA's Model Rules. *See* Florida Bar Rule 4-1.8(e) (2010); Model Rule of Prof. Conduct 1.8(e) (2010). Chase raises no concern that counsel for plaintiffs – an assemblage of several well-established law firms from around the country – cannot afford to vigorously prosecute this matter. There is no possible remaining basis to order disclosure of the retainer agreements.

**IV.    Plaintiffs' Involvement in Prior Litigation that Is Neither a Class Action Nor an Action Involving Overdraft Fees Is Irrelevant**

Chase's intention of putting the character of plaintiffs on trial is never more evident than in its request to stockpile all documents relating to previous litigations. Chase contends that it has a right to any and all legal documents – even if they relate to plaintiffs' divorces, car wrecks, traffic tickets, adoptions, or medical malpractice claims. *See* Chase Br. at 5.[4] Plaintiffs agree to produce and identify documents where (i) plaintiff previously served as a named plaintiff in a class action, and (ii) plaintiff was a party to a case involving overdraft fees. *See* Grunfeld Decl., ¶ 4(d). Plaintiffs agreed to produce the complaints and any testimony or sworn statements from plaintiffs in those cases, as well as any decree or settlement documents. *Id.* In short, Plaintiffs have agreed to produce all of the documentation which is potentially relevant to this litigation. But Chase wants more.

Not only are the disputed legal documents patently irrelevant, they also contain highly sensitive, personal, and potentially embarrassing information. Chase cannot and does not articulate a cogent justification for seeking such a broad scope of documents given its own stated intention of discovering whether "plaintiff is a serial litigant, has a history of bad-faith or other improper conduct in litigation" or "has an undisclosed

---

[4] In footnote 7, Chase disclaims the need to move to compel discovery of all documents in plaintiffs' various litigations and arbitrarily only seeks "the Complaints." However, Chase reserves its right to seek additional documents once it learns about plaintiffs' litigations. Plaintiffs dispute Chase's reservation of rights given that this District's Local Rule 26.1(h)(i) requires that any motion to compel be made within 30 days of the events giving rise to the claim for such a motion.

motive that would create a conflict or appearance of conflict." Chase Br. at 5.  Plaintiffs have offered this information through other means, but Chase insists on the documents. *See* Grunfeld Decl., ¶ 4(d).  Chase thereby essentially admits that the only reason it seeks this information is to disparage the character of plaintiffs and attack them personally. These are not valid grounds for an intrusive fishing expedition into very personal matters.

Chase's tactics here are not novel; defendants in other class actions have sought similar information and have been consistently rejected by courts throughout the country.  In *Robin v. Doctors Officenters Corp.*, 1986 U.S. Dist. LEXIS 24125 (N.D. Ill., June 16, 1986), for example, plaintiffs objected to interrogatories seeking the caption, docket number, and court of any action in which the plaintiffs were a plaintiff or defendant within the last ten years, excluding traffic, domestic, or personal injury actions.  The plaintiffs, however, disclosed the fact that they had never acted as plaintiffs in a class action, any other securities fraud case, or been members of a certified class. The court, in determining that this disclosure was sufficient, explained that "[b]y disclosing this information, plaintiffs have provided all information relevant to their personal adequacy as class representatives; involvement in other unrelated proceedings cannot disqualify them here." *Id.* at *2.  Chase has not even excluded from its discovery demands traffic, domestic, or personal injury actions as did the defendant in *Robin*, further demonstrating the outrageous nature of Chase's demands.

Similarly, in *Kamens v. Horizon Corp.*, 81 F.R.D. 444 (S.D.N.Y. 1979), a class action litigation, the court rejected the defendants' claim that they required discovery regarding the plaintiff's participation in other law suits.  The plaintiff in *Kamens* had agreed to disclose whether she had ever been rejected as a class representative.  The court found that various purported rationales for requiring the discovery, including ascertaining whether the plaintiff was a "professional plaintiff," were legally insufficient:

> Finally, defendants maintain that they are entitled to inquire into plaintiff's participation in other law suits.  This argument was rejected by Chief Judge Mishler in *Lewis v. Black*, 74 F.R.D. 1 (E.D.N.Y. 1975).  There, defendants moved to compel plaintiff to answer certain deposition questions and to produce certain documents relating to their contention that plaintiff was a "professional plaintiff" and, therefore, unable to fairly and adequately represent the class.  In denying the motion, the court

concluded that "(instigation) of many other securities laws lawsuits cannot, of itself, disqualify plaintiff from bringing the present suit or acting as class representative therein, and so is not an area of relevant inquiry." *Id.* at 3.

81 F.R.D. at 447.

Indeed, Chase's attempt to dredge up whether each plaintiff is a serial litigant, has a history of bad faith or other improper conduct in litigation, or has an undisclosed motive in acting as class representative is predicated upon a misunderstanding of the relevant inquiry regarding an adequate class representative. Courts have repeatedly rejected these factors as having any probative value on class certification motions. *See, e.g., Schaffer v. Timberland Co.*, 1996 U.S. Dist. LEXIS 5372, *25 (D.N.H. March 19, 1996) (finding that most courts have "soundly rejected" as irrelevant "assertions about the plaintiff's litigiousness or unrelated transactions as irrelevant factors"); *also Koenig v. Benson*, 117 F.R.D. 330, 336 (E.D.N.Y. 1987) (determining plaintiff's "litigious nature" to be an insufficient ground to deny class certification and the claim that the plaintiff had participated in unethical fee arrangements with attorneys was not an area of relevant inquiry); *Weinberger v. Kwiker*, 1986 U.S. Dist. LEXIS 22470, *21 (C.D. Cal. July 21, 1986) (concluding that "[t]he mere fact that the plaintiff is a professional litigant does not make him an unfit class representative"); *Markewich v. Adikes*, 76 F.R.D. 68, 75 (E.D.N.Y. 1977) (rejecting defendants' contention that the plaintiff's status as a "professional plaintiff" precluded him from qualifying as a class representative); *Denny v. Carey*, 73 F.R.D. 654, 657 (E.D. Pa. 1977) (rejecting defendants' challenge to plaintiff's motives and holding that "[n]either the personality nor motives of the plaintiffs is determinative of whether they will provide vigorous advocacy for the members of the class" (internal quotation omitted)).   Therefore, Chase's attempt to obtain highly sensitive, personal, and irrelevant documentation from the class representatives with its concomitant effect of intimidating the representatives must be denied.

Moreover, to the extent that Chase seeks relevant information regarding plaintiffs' adequacy as class representatives (e.g., whether they were ever previously disqualified as a class representative), plaintiffs have agreed to provide information about any such cases. *See* Grunfeld Decl., ¶ 4(d). This information can be elicited through simple questioning of plaintiffs, either via a request for admission or interrogatory or during

deposition. *Id.* This type of inquiry gets directly to the heart of what Chase can properly seek, and how Chase may seek it without needlessly implicating reams of paper and plaintiffs' most intimate affairs. Chase should engage in that simpler task, at least initially, rather than compelling plaintiffs to reveal sensitive, potentially embarrassing, and irrelevant documents regarding **all** prior legal matters.

Chase wholly fails to address the second prong of plaintiffs' objections, described and explained during the meet and confer, that production of all documents would unduly burden non-parties to this litigation – namely, plaintiffs' attorneys in the prior litigations. *See* Grunfeld Decl., ¶ 4(d). Why put them through the rigmarole of potentially massive productions for nothing? Chase insists on it.

Chase argues that the documents "are *presumptively* public documents," as if that would support production of the irrelevant, burdensome, and personal documents it seeks. Chase Br. at 6. There is no legal basis for Chase's implicit argument. Various jurisdictions restrict access to complaints regarding matters such as those dealing with custody, adoption, civil commitments, and other similar matters, thereby acknowledging privacy concerns. *See, e.g.*, State of Washington's Media Guide, p. 29 (attached hereto as Exh. A); Wisconsin Circuit Court Access Guide (found at http://wcca.wicourts.gov/index.xsl). In addition, the *other* documents at issue are not public documents – transcripts, depositions, and the like – and are housed and kept private and confidential to protect plaintiffs' recognized rights to privacy. Additionally, law firms that are not involved in this litigation have these documents, and Chase's discovery requests would essentially place the onus on plaintiffs and these other law firms to produce their files – at great time, expense, and risk of the exposure of privileged communication – for something that has no possibility of being relevant.

Therefore, Chase's motion seeking documents from prior litigation other than those that plaintiffs have agreed to produce must be denied.

## V.      Chase's Interrogatories Are Premature

Plaintiffs have adequately responded to Chase's Interrogatories 2, 3, 5, 6, 9, 12 and 17. Plaintiffs expressly adopt by reference the injuries set forth and described in the complaints and the documents produced, and state that they will answer these

interrogatories further once Chase has produced the relevant and necessary documents and information that plaintiffs absolutely need in order to provide the requested answers.

Chase's Interrogatories 2, 3, and 5 seek and/or turn on the identification of the specific transactions that led to overdraft fees (*i.e.*, the specific instances of Chase's assessment of overdraft fees) that plaintiffs are challenging. While plaintiffs believe in good faith that one or more of their overdrafts resulted from Chase's unlawful policies and practices at issue, as demonstrated in Section I above's Luquetta illustration, the identification of which specific overdraft fees resulted from such unlawful policies and practices requires both: (a) data and other information that Chase controls and that is not currently in plaintiffs' possession, custody, or control; and (b) the analysis of an expert. *See* Pls' Resp. to Interrog. Nos. 2, 3, 5 (objecting that plaintiffs cannot provide the answers requested without receiving the necessary documents and data from Chase and without the proper expert analysis).

Specifically, plaintiffs simply cannot answer these interrogatories until Chase has produced the following necessary documents and information: Chase's policies and procedures related to its assessment of overdraft fees during the relevant time period; Chase's policies and procedures related to its posting of debits and credits to its customers' accounts during the relevant time period; and Chase's documents and data reflecting the specific timing and amount of plaintiffs' transactions, the posting of their debits and credits/deposits, the sequencing of their debits, and the overdraft fees assessed, etc.

Moreover, once Chase produces the relevant documents and data, an expert analysis of these records will be required in order for plaintiffs to identify exactly which overdraft fees were imposed based on which transactions and exactly which fees would not have been charged but for Chase's challenged policies and practices. As Chase itself has admitted, the interaction of its policies and procedures concerning overdraft fees is highly complex.

By moving to compel answers to these interrogatories at this time, Chase wants plaintiffs to conduct an analysis of Chase's transaction processing system and policies, and the data specific to each of their transactions, without actually having *any* of that information to analyze. Chase's demand for these answers is plainly premature, and

plaintiffs' response – *i.e.*, that they will provide the answers when they have the information and analysis necessary to do so – is completely appropriate. *See* Fed. R. Civ. P. 33(a)(2) (the "court may order that the interrogatory need not be answered until designated discovery is complete"); *Apsley v. Boeing Co.*, 2007 WL 3120712, *3 (D. Kan. Oct. 24, 2007) (denying as premature motion to compel response to interrogatories which required responding party to review information not yet produced); *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, *2 (N.D. Cal. Dec. 11, 2008) ("Indeed, if Malone were to respond now, his answers likely would be materially incomplete as soon as eBay begins its document production."); *cf. Nestle Foods Corp. v. Aetna Cas. and Sur. Co.*, 135 F.R.D. 101, 110-11 (D.N.J. 1990) (finding party appropriately deferred responding to contention interrogatories where discovery had just begun); *Florer v. Johnson-Bales*, 2010 WL 2402895, *5 (W.D. Wash. June 10, 2010) (denying motion to compel an analysis that responding party did not have).

Chase's interpolation that their interrogatories seek the *original* bases for plaintiffs' complaints is belied by the fact that the interrogatories seek "every" transaction that is being challenged, and by the fact that the interrogatories never specifically ask for "the factual grounds" for plaintiffs' complaints. Notably, Chase has already filed, and lost, a motion to dismiss this case, yet never once raised the issue that one or more plaintiffs failed to sufficiently allege that they incurred excessive overdraft fees as result of Chase's challenged conduct.

Chase's Interrogatories 6, 9, 12 and 17 ask plaintiffs to identify documents that are not in plaintiffs' possession, custody, or control. Once Chase produces the communications it made to plaintiffs, plaintiffs will be able to – and will – identify the specific documents that Chase is asking for. Until then, there is simply no way for plaintiffs to identify documents that they do not have.

Chase's premature motion reflects an impatience that is completely inappropriate given the stage of discovery and the admitted complexity of Chase's systems for assessing overdraft fees.

## VI.   Chase's Final Interrogatory Is Overbroad and Unduly Burdensome

Lastly, interrogatory number 17 asks plaintiffs to identify "*each communication*" that plaintiffs "have *ever* had with Chase, or involving Chase, relating to any depository

account at Chase, including any document received from Chase relating to any such account." (emphasis added).[5]  First, since Chase is in possession of all responsive written communications and records reflecting all responsive electronic communications, this information is within Chase's possession, custody, or control, and, pursuant to Federal Rule 33(d), plaintiffs are therefore not required to engage in the arduous process that would be required to even begin to collect the information requested.

This interrogatory, which has no temporal scope or meaningful substantive limitations, is patently unreasonable on its face.  As plaintiffs' objections to this interrogatory original set out, Chase's definition of "communication" is so broad that, in the context of this interrogatory, it literally encompasses every interaction between plaintiffs and Chase, including: *Every stop at the ATM; Every branch visit; Every time plaintiffs logged onto Chase's online site; Every time Chase sent an email or a letter; Every time plaintiffs made a call – for any reason – to Chase; Every time Chase sent a monthly statement; Every time Chase sent a brochure or advertisement; and Every time Chase customer service called a plaintiff.*

Worse yet, Chase asks plaintiffs to "separately identify" and describe the details of each such "communication."  Chase's motion fails to even address plaintiffs' objections, much less overcome them.  In this case, most of these "communications" are wholly irrelevant to the issues in this case.  Accordingly, this interrogatory is unduly burdensome and overbroad, and should be denied on its face. *See Goodbys Creek, LLC v. Arch Ins. Co.*, 2008 WL 4279693, *2 (M.D. Fla. Sept. 15, 2008) ("Plaintiff makes no attempt to tailor the subject matter of the request, and has not explained how all communications between Arch and Auchter are relevant to this litigation"); *also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. 2008) (affirming denial of request for "all communications" as overbroad and unduly burdensome.

## CONCLUSION

As described above, several of Chase's discovery requests are either improper or cannot be answered at this time.  Plaintiffs request that their reasonable positions be adopted by the Court and that Chase's Motion to Compel be **DENIED**.

---

[5]   Chase does not address this issue in its brief directly, but lists the interrogatory as being relevant to several of its subject areas, and also included the interrogatory in its Appendix A Local Rule 26.1(h)(2) statement.  Accordingly, plaintiffs address it directly in an abundance of caution.

November 22, 2010.                      Respectfully submitted,

                                        /s/ Bruce S. Rogow
                                        Bruce S. Rogow, Esquire
                                        Florida Bar No. 067999
                                        bruce@alterslaw.com
                                        Robert C. Gilbert, Esquire
                                        Florida Bar No. 561861
                                        bobby@alterslaw.com
                                        ALTERS LAW FIRM, P.A.
                                        4141 N.E. 2nd Avenue, Suite 201
                                        Miami, Florida 33137
                                        Tel:  (305) 571-8550
                                        Fax:  (305) 571-8558

                                        *Lead Counsel for Plaintiffs*


/s/ Robert C. Josefsberg               /s/ Michael W. Sobol
Robert C. Josefsberg, Esquire          Michael W. Sobol, Esquire
Florida Bar No. 40856                  California Bar No. 194857
rjosefsberg@podhurst.com               msobol@lchb.com
Victor M. Diaz, Jr., Esquire           Roger N. Heller
Florida Bar No. 503800                 California Bar No. 215348
vdiaz@podhurst.com                     rheller@lchb.com
Peter Prieto, Esquire                  Jordan Elias, Esquire
Florida Bar No. 501492                 California Bar No. 228731
pprieto@podhurst.com                   jelias@lchb.com
John Gravante, III, Esquire            LIEFF CABRASER HEIMANN &
Florida Bar No. 617113                    BERNSTEIN LLP
jgravante@podhurst.com                 Embarcadero Center West
PODHURST ORSECK, P. A.                 275 Battery Street, 30th Floor
City National Bank Building            San Francisco, CA 94111-3339
25 W Flagler Street - Suite 800        Tel: 415-956-1000
Miami, FL 33130-1780                   Fax: 415-956-1008
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E 58th street
34th Floor
New york, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No. 0188015
mhutts@baronbudd.com
Mazin A. Sbaiti
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

*Plaintiffs' Executive Committee*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

### CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, Florida 33137
bobby@alterslaw.com