UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685
D. Or. Case No. 3:09-cv-01239-ST

**REPLY MEMORANDUM IN SUPPORT OF MOTION OF WELLS FARGO BANK, N.A.
TO COMPEL DISCOVERY FROM THE *MARTINEZ* AND *D. GUTIERREZ*
PLAINTIFFS**

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") submits this reply in support of its motion to compel discovery from plaintiffs Marc Martinez, Ivy Graham, Dolores Gutierrez, Karen and Edward Wickman, and Michael Dehn (collectively, "plaintiffs").

## INTRODUCTION

The core premise of plaintiffs' Opposition to this motion is that they are not required to *plead* any facts beyond what is in their complaints, and that they are therefore not required to *disclose* any additional facts in discovery. This, of course, turns federal procedure on its head. A suit may be initiated through notice pleading. But thereafter a defendant is entitled to full discovery of all facts and documents in the possession of each plaintiff concerning the claims at issue. And a plaintiff cannot resist discovery of what he currently knows in the hopes that his counsel might later learn more facts through discovery from the defendant. Rather, when presented with discovery requests seeking disclosure of facts about his own claims, a plaintiff must respond "to the best of [his] ability based on information [he] currently knows." *Hendricks v. Mirabilis Ventures, Inc.*, 2008 WL 423566, at *2 (M.D. Fla. Feb. 13, 2008).

Plaintiffs do not contest the relevance of most of the interrogatories that they have refused to answer and documents they have refused to produce. Nor do they dispute that each plaintiff has the ability to answer these interrogatories. Instead, they argue that their current knowledge of the facts does not permit them to answer as fully as they hope they may be able to do after their counsel reviews Wells Fargo's document production and crafts new theories. That is no excuse for a refusal to provide the actual facts currently known to plaintiffs, including facts about each plaintiff's own personal experience. Full development of the facts in this litigation requires the participation of *all* parties, and plaintiffs should be compelled to produce all the information and documents Wells Fargo has reasonably sought.

## ARGUMENT

I.  **Plaintiffs Should Be Compelled to Provide All Information Each Currently Has About Challenged Representations and Omissions.**

Wells Fargo's Interrogatory No. 6 (Appendix A to Motion to Compel ("Appendix A") at 4) asks each plaintiff to identify and provide basic information about the allegedly misleading representations they purport to challenge. Plaintiffs do not dispute the core relevance of this information. Rather, plaintiffs instead argue that they should not be required to identify now every representation that they may eventually seek to challenge on behalf of a future putative class. But this begs the question presented here. Wells Fargo is clearly entitled to information about the specific representations (if any) that each of *these* individual plaintiffs saw and believe they have reason to challenge.

Plaintiffs contend that they are not required to "'plead … that [they] relied on particular advertisements or statements.'" Opp. at 3 (quoting *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009)). This argument, whether correct or not, is beside the point. The issue here is not one of pleading, nor does it address what must be proven at trial.[1] The scope of discovery is not limited by either consideration; the test is rather whether the facts sought are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiffs do not – and cannot – dispute that the information sought in this interrogatory is highly relevant.

Plaintiffs next argue that it is unreasonable to expect them to remember all of the specific statements and advertisements they allegedly saw. Opp. at 3. But this begs the question

---

[1] Thus, plaintiffs' repeated (and often inaccurate) assertions about what happened at trial in the *Gutierrez* case are irrelevant to the issue presented on this motion. Plaintiffs do not, and could not, show that the *Gutierrez* plaintiffs were excused from providing full discovery of the facts bearing on their own personal experiences with the conduct they sought to challenge. The ultimate legal significance of those facts is a matter for another day.

2

of what, if any, pertinent statements each plaintiff *can* recall.[2] If, as the Opposition implies, not a single one of them can actually remember a single representation that misled him or her, that is itself highly relevant – not just to the ultimate issues at trial but also to these individuals' adequacy as class representatives. *See* Mot. at 6-7. (The *In re Tobacco II* decision on which plaintiffs rely confirmed that the named plaintiffs had to demonstrate that they had seen and relied on challenged misrepresentations. 207 P.3d at 38-40.) Thus, if the truthful answer for a particular plaintiff to this interrogatory is "none," that is the answer that must be given.

Nor is it any answer for plaintiffs to claim that they have described the general nature of the alleged misrepresentations in their complaints. Opp. at 3-4. Interrogatory responses that merely incorporate by reference "outside material, such as pleadings" are "improper and unresponsive." *Equal Rights Center v. Post Props., Inc.*, 246 F.R.D. 29, 35 (D.D.C. 2007). Moreover, the complaints do not address any plaintiff's actual knowledge of or reliance on any specific representations. Indeed, the facts alleged in the complaints about the individual plaintiffs are utterly silent on this subject. *See, e.g.*, *Martinez* SAC ¶¶ 76-88.

Finally, plaintiffs claim that they cannot describe the representations Wells Fargo allegedly should have made beyond their statement in the complaints that the bank should have disclosed "an accurate picture of its overdraft fee practices." Opp. at 4-5. But that is not what

---

[2] Plaintiffs fail in their effort (Opp. at 8 n.2) to distinguish the rule, recognized in *Hendricks*, that they must provide whatever responsive information they currently possess (and then to supplement later if they find that their answer was incomplete). If anything, the fact that these are class actions makes it more, not less, important for plaintiffs to disclose fully the facts bearing on their claims. And a plaintiff may not avoid disclosing his personal knowledge of the facts solely by speculating that the defendant might be able to infer the answers from information obtained elsewhere. The cases cited by plaintiffs do not contradict *Hendricks*. In *Florer v. Johnson-Bales*, 2010 WL 2402895, at *5 (W.D. Wash. June 10, 2010), the responding party had already responded with all "information within her knowledge and control." In *Skinner v. O'Mara*, 2001 WL 821535, at *2 (D.N.H. July 18, 2001), the interrogatory at issue was outside the limited scope of discovery established by the court.

their interrogatory responses say. If a particular plaintiff really cannot identify any material information the bank failed to give him or her, it should be a simple matter to supply a verified interrogatory answer that says so.

## II. Plaintiffs Have Provided No Sound Reason For Their Failure to Provide Information About Their Personal Expectations About Posting Order.

The relevance of interrogatories seeking information about each plaintiff's personal expectations surrounding Wells Fargo's posting order (Interrogatory Nos. 7 and 12 (Appendix A at 5, 8-9)) cannot be doubted, given the complaints' explicit allegations concerning Wells Fargo's failure to meet plaintiffs' supposed "expectations" about posting order. *See, e.g.*, *Martinez* SAC ¶ 46. Strangely, plaintiffs' Opposition implies that the named plaintiffs either had no expectations about posting order at all, or had expectations that were not representative of consumers generally. *See* Opp. at 5-6. Any such information is clearly relevant on multiple grounds, including on the issue of these plaintiffs' suitability as class representatives.

Alternatively, plaintiffs claim that their expectations can be inferred from their complaints and that they cannot be expected to remember the basis of those expectations. Again, pleading is not discovery, and an allegation in a complaint does not absolve a plaintiff from the need to answer interrogatories about the underlying facts. *See Equal Rights Center*, 246 F.R.D. at 35. If plaintiffs cannot remember the basis for their expectations, they can say so.

Moreover, this information is not in fact supplied in the complaints. Plaintiffs' interrogatory responses cite one complaint paragraph, which alleges that the bank posted certain debits "before lower debits that *occurred* on earlier days." *E.g.*, Jolley Dec. Ex. C at 11-12 (citing *Martinez* SAC ¶ 46) (emphasis added). Yet elsewhere, those same complaints complain that the bank does not "post charges in the order in which they are incurred *or received*." *E.g.*, *Martinez* SAC ¶ 48 (emphasis added). To confuse matters further, plaintiffs' Opposition asserts

4

that the bank should have used "either a chronological or low-to-high method" to post items. Opp. at 6 n.1. But none of the interrogatory answers says that. More significantly, none of these paragraphs of the complaints purports to identify what any particular plaintiff *expected* the bank's posting order to be and why.

Plaintiffs further argue that they should be excused from responding to Interrogatory No. 7 because Wells Fargo can ask them about the subject at deposition. Opp. at 6. Plaintiffs fail to explain why they could provide information at depositions that they cannot provide in response to an interrogatory. In any event, in this district a party is normally entitled to receive responses to interrogatories like these *before* taking depositions. *Donahay v. Palm Beach Tours & Transp., Inc.*, 242 F.R.D. 685, 688 (S.D. Fla. 2007).[3]

Finally, plaintiffs' only response to Wells Fargo's motion as to Interrogatory No. 12 (Mot. at 11-12) is to say that they will amend their responses to state that the bank should have used "either a chronological or low-to-high method" of posting transactions. Opp. at 6 n.1. This does not dispose of the issue, as the interrogatory asks for the *facts* that support any alternative posting order plaintiffs identify.

### III. If Plaintiffs Cannot Remember Ever Checking Their Account Balances or Receiving Inaccurate Balance Information, They Should Say So.

Plaintiffs complain that they should not be required to "compile an exhaustive list" of the occasions on which they allegedly received inaccurate balance information in response to Interrogatory Nos. 8 and 9 (Appendix A at 6-7). Opp. at 7. But the interrogatories

---

[3]  Plaintiffs' authorities are readily distinguishable. In *Pendlebury v. Starbucks Coffee Co.*, the court did not require plaintiffs to produce their tax returns because they were "highly sensitive documents" and the defendant could obtain the needed information by deposition. 2005 WL 2105024, at *2 (S.D. Fla. Aug. 29, 2005) (citation omitted). *Meranus v. Gangel*, 1991 WL 120484, at *2-3 (S. D. N.Y. June 26, 1991), presented a similar situation.

only require each plaintiff to describe each such occasion of which he or she is currently aware. Mot. at 9. So far, not a *single* plaintiff has managed to identify even a *single* instance in which he or she checked an account balance, much less received supposedly inaccurate information about it. *See* Jolley Dec. Exs. C at 12-14, D at 13-14. Once again, plaintiffs would prefer to avoid any response until they have reviewed Wells Fargo's documents. *See* Opp. at 7. But a plaintiff's personal knowledge of the facts of his or her personal experience cannot be gleaned from the bank's records. If a plaintiff has no facts to offer in support of claims about inaccurate account balances, he or she should say so.

### IV. Plaintiffs Do Not Contest the Relevance of Interrogatories Seeking Information About the Challenged Overdraft Fees, and Wells Fargo is Entitled to That Information.

Plaintiffs spend several pages explaining why they cannot further respond to Interrogatory Nos. 2 and 3 (Appendix A at 1-2), which request basic information about the transactions and fees plaintiffs challenge. Plaintiffs do not contest the relevance of this information. Rather, they represent that in citing in their responses only the transactions and fees identified in the complaints, they "have answered the interrogatory [sic] to the best of their ability at this time." Opp. at 8. If their interrogatory responses had actually stated that they have no information about any other transactions or fees, plaintiffs could have stopped there. But that is not what the responses say. Instead, here again plaintiffs simply *refused* to respond as to anything beyond what is in the complaints. If each plaintiff (even plaintiff Michael Dehn, as to whom the complaint does not identify *any* transactions or fees) truly has no other information beyond that contained in the complaints then he or she should be required to so state – not in a brief from counsel opposing a motion to compel, but in a verified interrogatory answer. *See Equal Rights Center*, 246 F.R.D. at 35; *see also Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.").

6

## V. Plaintiffs Have Offered No Reason That They Should Not Provide All Information They Currently Possess About Any Actual Impacts the Challenged Practices Had on Them.

There can be no dispute about the relevance of Interrogatory No. 5 (Appendix A at 3-4), which asks each plaintiff to provide information about the particular practices that he or she believes caused him or her harm. The complaints purport to challenge a wide variety of banking practices. There is a real question about whether each plaintiff is challenging each practice on the laundry list set out in the complaints, especially because neither the complaints nor plaintiffs' responses to other interrogatories identifies a single instance in which any plaintiff was affected by any of the listed practices other than posting order. The complaint does not even identify any specific instance in which plaintiff Michael Dehn incurred an allegedly wrongful fee at all. Such information is of clear relevance to a variety of issues, including the scope, commonality, and typicality of plaintiffs' claims. *See* Mot. at 9-10. Wells Fargo is clearly entitled to this information, without which it cannot even begin to prepare for class certification proceedings or to develop its defenses.

In responding to the bank's argument that they should provide information about the injury they allege in response to Interrogatory No. 11 (Appendix A at 7-8), plaintiffs once again seek to justify their non-response by alluding to information that is nowhere to be found in the interrogatory responses themselves. They seem now to admit that the only harm incurred is the amount of each overdraft fee that was wrongfully assessed (although, of course, they refuse to identify which fees those were or the circumstances under which they were allegedly incurred). *See* Opp. at 10. Even if this is the case, plaintiffs must still amend their interrogatory responses to set out the pertinent facts known to each plaintiff about each such alleged injury.

Contrary to plaintiffs' contention, Wells Fargo has *not* suggested that plaintiffs "engage in an imperfect preliminary damage calculation." Opp. at 11. Plaintiffs are simply

7

required to state the full extent of their current knowledge about the injury they believe they have suffered. If plaintiffs cannot identify a single overdraft fee they challenge other than those identified in the complaints – and if no plaintiff was harmed by any of the practices (other than posting order) that are described in the complaints only in general terms – then they should be required to say so. *See Titre v. S.W. Bach & Co.*, 2005 WL 1692508, at *1 (S.D. Fla. July 20, 2005) (granting motion to compel where party should have responded to contention interrogatory to the extent of its current knowledge and supplemented its response as needed, instead of "simply refusing to provide a substantive answer").

The cases cited by plaintiffs do not support their position. For example, in *Shannon v. New York Transit Auth.*, 2001 WL 286727, at *3 (S.D.N.Y. Mar. 22, 2001), the court found that contention interrogatory premature because a local rule permitted such interrogatories only after all other discovery was complete. The Southern District of Florida has no analogous local rule, and contention interrogatories are routinely approved in this district.[4]

## VI. Materials Relating to Accounts at Other Banks Are of Obvious Relevance, and a Stipulated Protective Order Is Already in Place.

Plaintiffs offer nothing but conclusory assertions in resisting production of information and documents relating to their accounts at other banks. They offer no concrete response to Wells Fargo's showing that such materials (sought in Interrogatory No. 10 (Appendix A at 7) and Document Request Nos. 11-17 (Appendix A at 9-11)) are relevant in multiple ways. For example, records of other bank accounts could demonstrate prior familiarity

---

[4] *See, e.g.*, *Suncast Techs., L.L.C. v. Patrician Prods., Inc.*, 2008 WL 179648, at *10 (S.D. Fla. Jan. 17, 2008); *Titre*, 2005 WL 1692508, at *1; *Dunkin' Donuts Inc. v. Mary's Donuts, Inc.*, 206 F.R.D. 518, 520-21 (S.D. Fla. 2002). *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*,135 F.R.D. 101, 110-11 (D.N.J. 1990), cited by plaintiffs, is also inapposite. There, the court relied on a presumption that contention interrogatories should be served at the end of discovery. No such presumption is applied in this district. *See Titre*, 2005 WL 1692508, at *1.

with the bank practices plaintiffs now challenge. They do not dispute this. Such documents may provide information relevant to plaintiffs' expectations about banking practices; they do not dispute this either. Such documents could establish that plaintiffs were able to successfully avoid overdraft fees, calling into question their professed "lack of awareness" of bank practices. *See* Opp. at 13. Plaintiffs offer no response to this either. And information about accounts held after plaintiffs left Wells Fargo could establish, for example, that plaintiffs continued to overdraft, undermining any claim that Wells Fargo's practices caused the challenged fees. Plaintiffs have not explained why such information is not relevant; nor could they do so.

Nor have plaintiffs shown that the protective order already entered by the Court in this litigation is insufficient to protect the confidentiality of this material. Courts regularly require production of confidential financial information where a protective order is in place.[5] None of the cases cited by plaintiffs permitted a party to avoid production of highly relevant information in such a situation.[6]

Finally, plaintiffs' suggestion that the information Wells Fargo seeks could be elicited at deposition is curious, given that elsewhere they repeatedly protest that they cannot be expected to remember any details about account transactions or bank practices until Wells Fargo

---

[5]  *See, e.g.*, *DataCom Sys., Inc. v. JDL Digital Sys., Inc.*, 2009 WL 3837213, at *4 (W.D. Ark. Nov. 13, 2009) (compelling production of checking account statements); *First Nat'l Bank of Okla. v. Bank of America, N.A.*, 2009 WL 2997048, at *8 (W.D. Okla. Sept. 15, 2009) (compelling production of financial records); *Hollinger Int'l Inc. v. Hollinger Inc.*, 2005 WL 3177880, at *3-4 (N.D. Ill. Jan. 19, 2005) (requiring production of bank records).

[6]  *See In re Intel Corp. Microprocessor Antitrust Litig.*, 526 F. Supp. 2d 461, 464 (D. Del. 2007) (inquiry into finances was for sole purpose of determining adequacy to represent class); *Hunt v. SEC*, 520 F. Supp. 580, 601 (N.D. Tex. 1981) (noting that records contained "sensitive" information); *Compton v. West Volusia Hosp. Auth.*, 727 So.2d 379, 381 (Fla. Dist. Ct. App. 1999) (finding plaintiff's financial status not relevant merely because she claimed damages, but still relevant to other issues). As discussed above, *Pendlebury* is also clearly distinguishable.

has completed its document production. *See, e.g.*, Opp. at 3, 6, 8. Documents related to other bank accounts will likely reveal the type of information that, by their own admission, plaintiffs are unlikely to be able to remember independently.

VII. **Communications From Attorneys Seeking Participation in These Suits Are Not Privileged, and Plaintiffs Cite No Authority to the Contrary.**

In attempting to justify their refusal to produce documents in response to Document Request No. 25 (Appendix A at 11), plaintiffs have once again ignored the fact that the request seeks only *non-privileged* communications plaintiffs received from attorneys. Yet plaintiffs refuse to produce documents that the attorney-client privilege does not protect. For example, solicitation communications sent by attorneys to prospective clients are not privileged. It is black letter law that a communication is not privileged unless it is made in the course of an attorney-client relationship.[7] The authorities cited by plaintiffs addressed two-sided *discussions* between prospective clients and attorneys that the prospective client initiated for the purpose of determining whether to employ the attorney. *See* Opp. at 13-15. In contrast, a person who receives a unilateral solicitation from an attorney has no reasonable expectation that the communication will be protected from disclosure.

## CONCLUSION

Wells Fargo's motion to compel discovery should be granted.

DATED: November 24, 2010                COVINGTON & BURLING LLP

By:  /s/

---

[7] *See, e.g.*, *Soter v. Cowles Publ'g Co.*, 174 P.3d 60, 75-76 (Wash. 2007); *Santa Fe Pac. Gold Corp. v. United Nuclear Corp.*, 175 P.3d 309, 318 (N.M. Ct. App. 2007); *State v. Bilton*, 585 P.2d 50, 51 (Or. Ct. App. 1978).

Sonya D. Winner (*pro hac vice*)
(swinner@cov.com)
David M. Jolley (*pro hac vice*)
(djolley@cov.com)
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Emily Johnson Henn (*pro hac vice*)
(ehenn@cov.com)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-7400
Facsimile: (650) 632-4800


Barry R. Davidson
(bdavidson@hunton.com)
Florida Bar No. 107678
Jamie Zysk Isani
(jisani@hunton.com)
Florida Bar No. 728861
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2010, I served the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the forgoing document is being served this day either by Notice of Electronic filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

/s/
David M. Jolley (*pro hac vice*)
(djolley@cov.com)
One Front Street, 35th Floor
San Francisco, CA, 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091