**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

---

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**

*Harris v. Associated Bank, N.A.*
W.D. WI Case No. 3:10-cv-00812
S.D. FL Case No. 1:10-cv-22948-JLK

---

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, through undersigned counsel, on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

**INTRODUCTION**

1.       This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Associated Bank, N.A. ("Associated Bank" or the "Bank"), arising from its unfair and unconscionable assessment and collection of excessive overdraft fees.

2.       In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Associated Bank.  For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers.  Since the early 1990's, however, banks have devised methods to provide

overdraft "protection" for customers and charge them in each instance.  A recent FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.  Nevertheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.      In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks brought in $37.1 billion in overdraft charges alone.*  Serving over one million customers through nearly 300 banking locations, Associated Bank benefits greatly from these staggering charges.

4.      Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.      Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries,

the grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.      The same considerations are not present when customers use debit cards. Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.   Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.      Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Associated Bank routinely processes such transactions and then charges its customers an overdraft fee of $35 for each charge – even when the transaction is for only a few dollars.  Further, Associated Bank charges an additional $7 per business day if a customer's account is overdrawn for more than five consecutive days.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Associated Bank. Additionally, as part of its inequitable motive to generate obscene profits gained through the imposition of unconscionable overdraft fees, Associated Bank failed to adequately disclose to its customers that they could elect to opt out of overdraft protection.

8.      In many instances, these overdraft fees cost Associated Bank account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transactions.

9.      Thus, it is through manipulation and alteration of customers' transaction records that Associated Bank maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the Plaintiffs is a resident of a different state than Associated Bank.

11.      Venue is proper in this district under 28 U.S.C. § 1407(a).  Venue was proper in the Western District of Missouri, the district in which this action was originally filed, pursuant to 28 U.S.C. § 1391 because Associated Bank is subject to personal jurisdiction there and regularly conducts business in that district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## THE PARTIES

12.      Plaintiff, Pamela Harris, is a resident of the state of Wisconsin.

13.      Plaintiff, Edith Whitehead, is a resident of the state of Illinois.

14.      Plaintiffs, Robert W. Selvig and Charlene Selvig, are residents of the state of Minnesota.

15.      Associated Bank is a commercial bank, which maintains its principal place of business in Green Bay, Wisconsin.  Among other things, Associated Bank is engaged in the business of providing retail banking services to over one million consumers, including Plaintiffs and members of the putative Classes, which include the issuance of debit cards for use by its customers in conjunction with their checking accounts.  Associated Bank serves its customers through nearly 300 banking locations in approximately 160 communities in Illinois, Minnesota,

- 4 -

and Wisconsin.  According to its website, Associated Bank has more than $23 billion in assets

and more than 4,800 employees and is serving more than one million customers.

16.     Associated Bank is a national bank, subject to the National Bank Act, 12

U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the

Currency.

## CLASS ALLEGATIONS

17.     Plaintiffs bring this action on behalf of themselves and all others similarly

situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality,

typicality, adequacy, predominance and superiority requirements of Rule 23.

18.     The proposed classes are defined as:

> All Associated Bank customers in the United States who, within the applicable
> statute of limitations preceding the filing of this action to the date of class
> certification, incurred an overdraft fee as a result of Associated Bank's practice of
> re-sequencing debit card transactions from highest to lowest dollar amount (the
> "National Class").

> All Associated Bank customers having accounts at branches in the states of
> Illinois, Minnesota, and Wisconsin, for the purpose of asserting claims under their
> respective state consumer protection statute (the "State Subclasses") (*see* Fifth
> Claim for Relief, *infra*).

> The National Class and the State Subclasses are collectively referred to as the
> "Classes."

19.     Plaintiffs reserve the right to modify or amend the definition of the proposed

Classes before the Court determines whether certification is appropriate.

20.     Excluded from the Classes are Associated Bank, its parents, subsidiaries,

affiliates, officers and directors, any entity in which Associated Bank has a controlling interest,

all customers who make a timely election to be excluded, governmental entities, and all judges

assigned to hear any aspect of this litigation, as well as their immediate family members.

21.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Associated Bank's records.

22.     The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members, were charged overdraft fees by Associated Bank as a result of its practice of re-sequencing debit card transactions from highest to lowest.  The representative Plaintiffs, like all Class members, have been damaged by Associated Bank's misconduct in that they have been assessed and/or will continue to be assessed unfair and unconscionable overdraft charges.  Furthermore, the factual basis of Associated Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

23.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

24.     Among the questions of law and fact common to the Classes are whether Associated Bank:

        a.      Did not clearly disclose and/or refused to allow its customers to opt out of its overdraft protection program;

        b.      Did not obtain affirmative consent from its customers prior to processing transactions that would result in overdraft fees;

        c.      Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

        d.        Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

        e.        Manipulates and reorders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

        f.        Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the accounts;

        g.        Fails to provide customers with accurate balance information;

        h.        Delays posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

        i.        Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

        j.        Breaches its covenant of good faith and fair dealing with Plaintiffs and other members of the Classes through its overdraft policies and practices;

        k.        Requires its customers to enter into standardized account agreements which include unconscionable provisions;

        l.        Converts moneys belonging to Plaintiffs and other members of the Classes through its overdraft policies and practices;

        m.        Is unjustly enriched through its overdraft policies and practices; and

        n.        Violates the consumer protection acts of certain states through its overdraft policies and practices.

    25.        Other questions of law and fact common to the Classes include:

a.        The proper method or methods by which to measure damages, and

b.        The declaratory relief to which the Classes are entitled.

26.      Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Associated Bank's account agreements and other related documents.  Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

27.      Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

28.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Associated Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Associated Bank's misconduct will proceed without remedy.

29.      Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual

lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.        Associated Bank

30.        According to its website, Associated Bank is the second largest bank in Wisconsin with a growing presence in the Minneapolis and Chicago Markets.  The Bank serves more than one million customers through nearly 300 banking locations in approximately 160 communities in Illinois, Minnesota, and Wisconsin.

31.        Associated Bank is in the business of providing its customers with a variety of banking services.  One of the services provided by Associated Bank for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATMs, the transaction is processed electronically.  As a result, Associated Bank is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

32.        Associated Bank employs sophisticated software to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

33.        As a result of Associated Bank's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the

account and no overdraft would occur.  For example, if a customer, whose account has a $50 balance at the time Associated Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing five overdraft fees on the customer.  Conversely, if the $100 transaction was debited last—consistent with the actual order of transactions—only one overdraft fee would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

### B.        Associated Bank's Relevant Customer Documents Regarding Overdrafts

34.        Plaintiffs and all members of the Classes maintain or maintained a checking account with Associated Bank.  The terms of Associated Bank's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by Associated Bank, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.  A representative copy of Associated Bank's "Deposit Account Information" (the "Deposit Agreement"), covering all Associated Bank customers, which is more than 30 pages long, single-spaced and in small font, is attached as Exhibit A.

35.        The Deposit Agreement contains a section entitled "Unpaid Items and Overdrafts," which is reproduced in its entirety below and states:

> If an item is presented for payment against your deposit account and if either the account balance or available balance is not sufficient to pay the item, or if there is a freeze or hold on the account, we may either pay or return the item. Available balance means the account balance minus any holds for deposited or cashed checks (see Funds Availability section in this booklet), memo posts and/or any holds for legal process.
>
> We may choose, without notice to you, to refuse to pay any item if it would create an overdraft or you are drawing against unavailable funds, even though we may have previously established a pattern of honoring such items. If we return or pay any debit items drawn on your deposit account, when the account balance lacks

sufficient funds as described above, we will charge your account an overdraft or unavailable funds fee.  An overdraft may be created by payment of an item, in-person withdrawal, ATM withdrawal, or other electronic debit transaction. You must make a deposit immediately to eliminate the overdraft.  Interest will not be paid on deposited checks which are returned unpaid.

One of the Bank's overdraft protection plans may help you avoid overdraft or unavailable funds fees and dishonored checks, subject to credit approval.

*Id.* at 18.

36.     The Deposit Agreement *wholly* fails to include language regarding the Bank's policy and practice of re-sequencing debit transactions from largest to smallest instead of posting such transactions in chronological order.

37.     Associated Bank's website directs customers to refer to the Bank's current rate sheet and "Consumer Deposit Account Fee Schedule" ("Fee Schedule") for additional details about deposit accounts.

38.     The Deposit Agreement and related documents including, upon information and belief, the Fee Schedule, failed to disclose to customers that they had the option to "opt out" from the Bank's overdraft scheme, although it was possible for them to opt out upon request.

### C.     Associated Bank's Re-Ordering of Checking Account Transactions

39.     In an effort to maximize overdraft revenue, Associated Bank manipulates and reorders debits from highest to lowest during given periods of time.  Associated Bank reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge.  This practice violates the consumer protection laws of certain states and the covenant of good faith and fair dealing in the Bank's Deposit Agreement.

40.     In addition, Associated Bank misleads its customers regarding its reordering practices because it fails to disclose to customers that the Bank will reorder debit card transactions from highest to lowest dollar value.  The Bank's failure to include language

- 11 -

regarding its reordering scheme is deceptive and/or unfair because it is, in fact, the Bank's practice to *always* reorder debits from highest to lowest, and because the Bank groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank Deposit Agreement and its customers' reasonable expectations. The Bank's practices thus violate the covenant of good faith and fair dealing implied in the Bank Deposit Agreement as well as the consumer protection laws of numerous states.

41.     Associated Bank's website states that in order to avoid overdrafting their accounts, customers can "[v]erify [their] account balance 24/7 by using online banking." Contrary to the above representation, the online account features are not a means by which consumers can gain control of their finances or effectively manage their accounts. In fact, the inaccurate and unreliable information displayed in the online account information on the Bank's website dupes consumers into generating overdraft fees for Associated Bank.

42.     Transactions involving debit cards used by Associated Bank customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed electronically. As a result, Associated Bank is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

43.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Associated Bank's posting system, it fails to post charges in the order in which they are assessed or received. Associated Bank developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological

order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

44.     Instead of processing such transactions in chronological order, Associated Bank processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

45.     Associated Bank refrains from immediately posting charges to a customer's account as it receives them—sometimes for multiple business days.  By holding charges rather than posting them immediately to an account, Associated Bank is able to amass a number of charges on the account.  Subsequently, Associated Bank posts all of the amassed charges on a single date.  When the group of charges is eventually posted to the customer's account, Associated Bank posts them in order of largest to smallest—not in the order in which they were received or in the order in which they were charged.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.  The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

46.     Associated Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

47.     Associated Bank enforces an unconscionable policy whereby charges assessed are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.  Associated Bank's processing practices substantially increase the

likelihood that customers' smaller charges will result in multiple overdraft fees. The practices provide Associated Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

48.     As a result, Plaintiffs and members of the Classes have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

>        **D.**     **Associated Bank's Cloaking of Accurate Balance Information**

49.     Associated Bank actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information. When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

50.     Associated Bank claims that online banking "provides current balance information about your account." But in reality, Associated Bank's computers are set up not to process transactions in the order received, but in order from highest to lowest dollar amount so as to ensure that the maximum number of overdraft charges are imposed on customers' accounts.

51.     Associated Bank provides inaccurate balance information to its customers through its electronic network. In certain cases, Associated Bank informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual knowledge of outstanding debits and transactions.

52.     Even when Associated Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customer's account, it encourages the customer to incur more overdraft charges by approving—rather than prudently declining—subsequent debit card purchases and other electronic transactions.

53.     Associated Bank also assesses overdraft fees at times when actual funds in the customer's account are sufficient to cover all debits that have been submitted to the Bank for payment.  It does this by placing a "hold" on actual funds in the customer's account.  In doing so, Associated Bank charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

54.     A debit card can be used to make a purchase in two ways:  (1) an Automated Clearing House ("ACH") transaction in which a customer enters his/her PIN number at the point of sale; or (2) an "offline signature" transaction, in which the debit card is treated like a credit card and the customer usually is required to sign a receipt.  In the former, the money is debited from the account instantaneously.  In the latter, the "offline signature" transaction occurs in two parts: first, authorization for the purchase amount is obtained by the merchant.  Second, the transaction is not actually "settled" (that is, money between the bank and the merchant does not change hands) until the merchant submits the transaction to the bank sometime after the customer's purchase.  Before settlement, "authorization holds" are placed on the customer's account, preventing access to money so held.  For some transactions, the authorization hold is for an amount larger than the purchase actually made by the customer.  Associated Bank charges an overdraft fee when the authorization hold amount—not the purchase price—pushes an account balance into negative territory.

55.     Such "authorization hold" policies, and the extent to which they are used by Associated Bank to charge overdraft fees, are inconsistent with Associated Bank's Deposit Agreement.

56.     The terms of the Deposit Agreement fail to alert customers that they must often keep a large cushion of funds in their account in order to guard against an overdraft fee

even when customers do not spend more than the funds in their account, and are materially deceptive. Accordingly, Associated Bank charges customers overdraft fees even when there are sufficient funds in customers' accounts to cover transactions.

57.     Charging an overdraft fee when in fact an account has never been over-drafted is materially deceptive. By charging overdraft fees when in fact the customer's account has not been over-drafted, Associated Bank breached its contract with Plaintiffs.

      **E.**     **Associated Bank's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out**

58.     At the time its debit cards are used in POS transactions or at ATMs, Associated Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction. The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft. Prior to the effective date of the opt in/opt requirements of Regulation E (the "Effective Date"), Associated Bank could have given customers the option to decline the transaction to avoid incurring the overdraft fee, but it did not do so because it sought to maximize the amount of revenue generated through its assessment of overdraft fees.

59.     Notwithstanding its technological capabilities and actual knowledge, Associated Bank failed to provide notice to Plaintiffs and the Classes that a particular debit card transaction would result in an overdraft and, hence, an overdraft fee. Because Associated Bank's customers were not notified of the potential overdraft, and were not given the option of declining the debit card transaction or providing another form of payment, the customers were assessed monetary damages in the form of overdraft fees.

60.      Prior to the Effective Date, Associated Bank failed to make Plaintiffs and Class members aware that they could opt out of its overdraft scheme upon request, thereby avoiding any overdraft fees from being charged.

**F.      Associated Bank's Overdraft Policies and Practices Are Contrary to Best Practices**

61.      By engaging in the conduct described herein, Associated Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies").  A copy of the Joint Guidance is attached as Exhibit B.  These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection.  Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

62.      According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . .  This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

63.      The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.  When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where

feasible, that completing the withdrawal may trigger the overdraft fees." 70 F.R.D. 9127, 9132. The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice." *Id*.

64.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee. A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit C.

65.     Associated Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account. In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

66.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion:  Bank Fees for Overdrafts Increase 35% in Two Years." The report, attached hereto as Exhibit D found that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program." The report found that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could

easily be denied for no fee." The report also found that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

67.     A chart from the research company Moebs Services shows that, in every year since 1992, banks gained increased revenues from overdraft fees:



G.       **Associated Bank's Unconscionable Provisions and Policies**

68.       Associated Bank's overdraft policies and practices are or were unconscionable in the following respects, among others:

      a.       Prior to the Effective Date, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

      b.       Prior to the Effective Date, the Bank did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

      c.       The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

      d.       The Deposit Agreement and related documents, including the Fee Schedule, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

      e.       The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, the Fee Schedule, which is not signed by the depositor; and

      f.       The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not include *any* language regarding the re-sequencing of debit transactions, including that the Bank reorders debits from high to low, even though Associated Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

- 20 -

H.        **Associated Bank's Overdraft Practices Harmed Plaintiffs**

69.        Associated Bank's wrongful overdraft policies and practices described above harmed Plaintiffs and members of the Classes.  The following allegations regarding the named Plaintiffs are made for purposes of illustrating the harm and damage sustained by Plaintiffs and members of the Classes as a result of Associated Bank's wrongful overdraft policies and practices.

70.        Plaintiff, Pamela Harris, is a former checking account customer of Associated Bank.

71.        In connection with her account, Associated Bank issued a debit card or cards to Ms. Harris.  A debit card allows customers to access their checking account funds by using the card to execute a transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

72.        Associated Bank wrongfully charged Ms. Harris multiple overdraft fees.  For example, based on information and belief, Ms. Harris was charged eight overdraft fees on November 10, 2009, in the amount of $35.00 each, for a total of $280.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Associated Bank Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 11/9/2009** | | | 602.81 |
| **Date Posted** | **Debit Description** | | | |
| 11/9/2009 | FSB-HILLSBORO LOAN PMT | 500.00 | | 102.81 |
| 11/9/2009 | DDA PUR OREILLY AU 902 NORTH MAIN STR VIROQUA WI | 89.46 | | 13.35 |
| 11/9/2009 | DDA PUR WI DEPT OF 608-2661466 WI | 86.00 | | -72.65 |
| 11/9/2009 | DDA PUR MARY'S QUI 726 N MAIN ST VIROQUA WI | 74.24 | | -146.89 |
| 11/9/2009 | DDA PUR CASEYS #00 110 S 5TH STREET ADAIR IA | 56.85 | | -203.74 |
| 11/9/2009 | ATM W/D ICE HOUSE 10900 EMMET ST OMAHA NE | 43.00 | | -246.74 |
| 11/9/2009 | DDA PUR CASEYS #00 1625 E BROAD ST STORY CITY IA | 37.73 | | -284.47 |
| 11/9/2009 | DDA PUR UWEX COOPE 877-9477827 WI | 30.48 | | -314.95 |

- 21 -

| 11/9/2009 | DDA PUR WAL WAL-MA 0971 WAL-SAMS VIROQUA WI | 25.24 | | -340.19 |
|---|---|---|---|---|
| 11/9/2009 | DDA PUR 0129 YANKE OMAHA NE | 25.12 | | -365.31 |
| 11/9/2009 | ATM W/D THE PARK B 1504 SUPERIOR AVE TOMAH WI | 20.00 | | -385.31 |
| 11/9/2009 | DDA PUR OREILLY AU 902 NORTH MAIN STR VIROQUA WI | 15.78 | | -401.09 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI | 14.67 | | -415.76 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI | 10.99 | | -426.75 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI | 8.21 | | -434.96 |
| 11/9/2009 | DDA PUR WAL-MART S 0971 WAL-SAMS VIROQUA WI | 7.26 | | -442.22 |
| 11/9/2009 | DDA PUR EYOTA MARK 501 GLEN STREET EYOTA MN | 6.88 | | -449.10 |
| 11/9/2009 | DDA PUR HOT TOPIC OMAHA NE | 5.34 | | -454.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -489.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -524.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -559.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -594.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -629.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -664.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -699.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -734.44 |
| | | **Total Fees** | **$280.00** | |

73.     If Associated Bank had not manipulated and reordered Ms. Harris'
transactions from highest to lowest, she would not have incurred eight overdraft fees.

74.     For instance, if Associated Bank had posted the transactions from lowest to
highest, Ms. Harris would have incurred only one overdraft fee instead of eight:

## Balance Sheet if Debits Were Processed from Lowest to Highest

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | **Beginning Balance on 11/9/2009** | | | $602.81 |
| **Date Posted** | **Debit Description** | | | |
| 11/9/2009 | DDA PUR HOT TOPIC OMAHA NE | 5.34 | | 597.47 |
| 11/9/2009 | DDA PUR EYOTA MARK 501 GLEN STREET EYOTA MN | 6.88 | | 590.59 |
| 11/9/2009 | DDA PUR WAL-MART S 0971 WAL-SAMS VIROQUA WI | 7.26 | | 583.33 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI | 8.21 | | 575.12 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI | 10.99 | | 564.13 |
| 11/9/2009 | DDA PUR KWIK TRIP 520 N. MAIN ST. VIROQUA WI | 14.67 | | 549.46 |
| 11/9/2009 | DDA PUR OREILLY AU 902 NORTH MAIN STR VIROQUA WI | 15.78 | | 533.68 |
| 11/9/2009 | ATM W/D THE PARK B 1504 SUPERIOR AVE TOMAH WI | 20.00 | | 513.68 |
| 11/9/2009 | DDA PUR 0129 YANKE OMAHA NE | 25.12 | | 488.56 |
| 11/9/2009 | DDA PUR WAL WAL-MA 0971 WAL-SAMS VIROQUA WI | 25.24 | | 463.32 |
| 11/9/2009 | DDA PUR UWEX COOPE 877-9477827 WI | 30.48 | | 432.84 |
| 11/9/2009 | DDA PUR CASEYS #00 1625 E BROAD ST STORY CITY IA | 37.73 | | 395.11 |
| 11/9/2009 | ATM W/D ICE HOUSE 10900 EMMET ST OMAHA NE | 43.00 | | 352.11 |

| | | | | |
|---|---|---|---|---|
| 11/9/2009 | DDA PUR CASEYS #00 110 S 5TH STREET ADAIR IA | 56.85 | | 295.26 |
| 11/9/2009 | DDA PUR MARY'S QUI 726 N MAIN ST VIROQUA WI | 74.24 | | 221.02 |
| 11/9/2009 | DDA PUR WI DEPT OF 608-2661466 | 86.00 | | 135.02 |
| 11/9/2009 | DDA PUR OREILLY AU 902 NORTH MAIN STR VIROQUA WI | 89.46 | | 45.56 |
| 11/9/2009 | FSB-HILLSBORO LOAN PMT | 500.00 | | -454.44 |
| 11/10/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -489.44 |
| | | **Total Fees** | **$35.00** | |

75.     Plaintiff, Edith Whitehead, is a current checking account customer of Associated Bank.

76.     In connection with her account, Associated Bank issued a debit card or cards to Ms. Whitehead.

77.     Associated Bank wrongfully charged Ms. Whitehead multiple overdraft fees. For example, Ms. Whitehead was charged four overdraft fees on December 15, 2009, in the amount of $35.00 each, for a total of $140.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

### Balance Sheet per Associated Bank Reordering Scheme
### (Debits Processed from Highest to Lowest)

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 12/14/2009** | | | $94.76 |
| **Date Posted** | **Debit Description** | | | |
| 12/14/2009 | CHECK | 54.05 | | 40.71 |
| 12/14/2009 | DDA PUR SOC N CHIC NORTH CHICAG IL 934503429813 | 34.77 | | 5.94 |
| 12/14/2009 | DDA PUR WANE'S P1 GRAYSLAKE IL 934603561083 | 15.66 | | -9.72 |
| 12/14/2009 | DDA PUR LOWES #018 GURNEE IL 934701036130 | 9.76 | | -19.48 |
| 12/14/2009 | DDA PUR AMERICAN C VERNON HILL IL 934400383063 | 4.82 | | -24.30 |
| 12/14/2009 | DDA PUR AMERICAN C VERNON HILL IL 934400383064 | 2.35 | | -26.65 |
| 12/15/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -61.65 |
| 12/15/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -96.65 |
| 12/15/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -131.65 |
| 12/15/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -166.65 |
| | | **Total Fees** | **$140.00** | |

78.      If Associated Bank had not manipulated and reordered Ms. Whitehead's transactions from highest to lowest, she would not have incurred four overdraft fees.

79.      For instance, if Associated Bank had posted the transactions from lowest to highest, Ms. Whitehead would have incurred only one overdraft fee instead of four:

### Balance Sheet if Debits Were Processed from Lowest to Highest

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | Beginning Balance on 12/14/2009 | | | $94.76 |
| **Date Posted** | **Debit Description** | | | |
| 12/14/2009 | DDA PUR AMERICAN C VERNON HILL IL 934400383064 | 2.35 | | 92.41 |
| 12/14/2009 | DDA PUR AMERICAN C VERNON HILL IL 934400383063 | 4.82 | | 87.59 |
| 12/14/2009 | DDA PUR LOWES #018 GURNEE IL 934701036130 | 9.76 | | 77.83 |
| 12/14/2009 | DDA PUR WANE'S P1 GRAYSLAKE IL 934603561083 | 15.66 | | 62.17 |
| 12/14/2009 | DDA PUR SOC N CHIC NORTH CHICAG IL 934503429813 | 34.77 | | 27.40 |
| 12/14/2009 | CHECK | 54.05 | | -26.65 |
| 12/15/2009 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -61.65 |
| | | **Total Fees** | **$35.00** | |

80.      Plaintiffs, Robert W. Selvig, and Charlene Selvig, are also current checking account customers of Associated Bank.

81.      In connection with their account, the Bank issued debit cards to Mr. and Mrs. Selvig.

82.      Associated Bank wrongfully charged Mr. and Mrs. Selvig multiple overdraft fees.  For example, based on information and belief, Mr. and Mrs. Selvig were charged four overdraft fees on April 20, 2010, in the amount of $35.00 each, for a total of $140.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

### Balance Sheet per Associated Bank Reordering Scheme
### (Debits Processed from Highest to Lowest)

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | Beginning Balance on 04/19/2010 | | | $138.57 |
| **Date Posted** | **Debit Description** | | | |
| 04/19/2010 | DDA PUR PORT OF CA LAKE CITY MN 010700937120 | 44.99 | | 93.58 |

| | | | | |
|---|---|---|---|---|
| 04/19/2010 | ATM W/D KWIK TRIP 994 LYON LAKE CITY MN 000000007579 | 40.00 | | 53.58 |
| 04/19/2010 | DDA PUR PORT SIDE LAKE CITY MN 010501123719 | 31.92 | | 21.66 |
| 04/19/2010 | DDA PUR FIESTA FOO 310 S LAKE SHARE D LAKE CITY MN | 19.60 | | 2.06 |
| 04/19/2010 | DDA PUR KWIK TRIP 994 LYON LAKE MN 000000709611 | 9.63 | | -7.57 |
| 04/19/2010 | DDA PUR PORT OF CA LAKE CITY MN 010700937119 | 8.00 | | -15.57 |
| 04/19/2010 | DDA PUR SUBWAY LAKE CITY MN 010603142614 | 2.67 | | -18.24 |
| 04/19/2010 | DDA PUR WISE ACE H LAKE CITY MN 010700596128 | 1.59 | | -19.83 |
| 04/20/2010 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -54.83 |
| 04/20/2010 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -89.83 |
| 04/20/2010 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -124.83 |
| 04/20/2010 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -159.83 |
| | | **Total Fees** | **$140.00** | |

83.     If Associated Bank had not manipulated and reordered Mr. and Mrs. Selvig's transactions from highest to lowest, they would not have incurred four overdraft fees.

84.     For instance, if Associated Bank had posted the transactions from lowest to highest, Mr. and Mrs. Selvig would have incurred only one overdraft fee instead of four:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
| | **Beginning Balance on 04/19/2010** | | | $138.57 |
| **Date Posted** | **Debit Description** | | | |
| 04/19/2010 | DDA PUR WISE ACE H LAKE CITY MN 010700596128 | 1.59 | | 136.98 |
| 04/19/2010 | DDA PUR SUBWAY LAKE CITY MN 010603142614 | 2.67 | | 134.31 |
| 04/19/2010 | DDA PUR PORT OF CA LAKE CITY MN 010700937119 | 8.00 | | 126.31 |
| 04/19/2010 | DDA PUR KWIK TRIP 994 LYON LAKE MN 000000709611 | 9.63 | | 116.68 |
| 04/19/2010 | DDA PUR FIESTA FOO 310 S LAKE SHARE D LAKE CITY MN | 19.60 | | 97.08 |
| 04/19/2010 | DDA PUR PORT SIDE LAKE CITY MN 010501123719 | 31.92 | | 65.16 |
| 04/19/2010 | ATM W/D KWIK TRIP 994 LYON LAKE CITY MN 000000007579 | 40.00 | | 25.16 |
| 04/19/2010 | DDA PUR PORT OF CA LAKE CITY MN 010700937120 | 44.99 | | -19.83 |
| 04/20/2010 | OVD FEE-ITEM PAID OVERDRAFT | | 35.00 | -54.83 |
| | | **Total Fees** | **$35.00** | |

85.     These wrongful overdraft fees occurred as a result of the Bank's manipulation and re-ordering of these Plaintiffs' debit card transactions.

- 25 -

86.     Associated Bank failed to notify these Plaintiffs that they could be assessed overdraft fees on transactions even though there were sufficient funds in the checking accounts to cover the transaction at the time the transaction was executed.  In addition, Associated Bank never notified these Plaintiffs, at the time they executed the purported insufficient funds transactions described above, that their checking accounts were or would be overdrawn or that they would be charged an overdraft fee as a result of the transactions.  Furthermore, Associated Bank paid, rather than returned, all the debit card charges described above, even though Plaintiffs' accounts purportedly lacked sufficient funds to cover the transactions.

87.     Based on information and belief, the overdraft charges incurred by Plaintiffs are representative of millions of dollars of overdraft fees that Associated Bank wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

### I.       The Damages Sustained by Plaintiffs and the Classes

88.     As shown by these examples, Associated Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account.  In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." *Id*.

89.     According to rules proposed by the Agencies, "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

90.     Thus, as a consequence of Associated Bank's overdraft policies and practices, Plaintiffs and the Classes have been wrongfully forced to pay overdraft fees.  Associated Bank has improperly deprived Plaintiffs and the Classes of significant funds, causing ascertainable monetary losses and damages.

91.     As a consequence of Associated Bank's improper overdraft fees, Associated Bank has wrongfully deprived Plaintiffs and the Classes of funds to which it had no legitimate claim.

92.     Plaintiffs and the Classes had sufficient funds to cover at least some of the transactions for which they and the Classes were charged overdraft fees.  Plaintiffs and members of the Classes either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Associated Bank could impose these wrongful charges.  In many instances, Associated Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiffs and Class members.

93.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

# FIRST CLAIM FOR RELIEF
## Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing[1]
### (On Behalf of the National Class)

94.      Plaintiffs repeat paragraphs 1 through 93 above.

95.      Plaintiffs and Associated Bank have contracted for bank account deposit, checking, ATM and debit card services, as embodied in Associated Bank's Deposit Agreement and related documentation.

96.      Under the laws of the states where Associated Bank does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

97.      Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

---

[1]  Wisconsin and certain other states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.  For the sake of convenience in this multi-district litigation, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

98.     Associated Bank has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

99.     Plaintiffs and the National Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

100.    Plaintiffs and members of the National Class have sustained damages as a result of Associated Bank's breach of the covenant of good faith and fair dealing.

<u>**SECOND CLAIM FOR RELIEF**</u>
<u>**Unconscionability**</u>
**(On Behalf of the National Class)**

101.    Plaintiffs repeat paragraphs 1 through 93 above.

102.    Associated Bank's overdraft policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

a.      Prior to the Effective Date, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.      Prior to the Effective Date, the Bank did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Deposit Agreement and related documents, including the Fee Schedule, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

      e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, the Fee Schedule, which is not signed by the depositor; and

      f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not include *any* language regarding the re-sequencing of debit transactions, including that the Bank reorders debits from high to low, even though Associated Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

103.      Considering the great business acumen and experience of Associated Bank in relation to Plaintiffs and the National Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

104.      The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $35 charge on an overdraft of less than $35) is itself unconscionable. Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

105.      Plaintiffs and members of the National Class have sustained damages as a result of Associated Bank's unconscionable policies and practices alleged herein.

### THIRD CLAIM FOR RELIEF
### Conversion
### (On Behalf of the National Class)

106.     Plaintiffs repeat paragraphs 1 through 93 above.

107.     Associated Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

108.     Associated Bank has wrongfully collected overdraft fees from Plaintiffs and the members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

109.     Associated Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Class, without legal justification.

110.     Associated Bank continues to retain these funds unlawfully without the consent of Plaintiffs or members of the National Class.

111.     Associated Bank intends to permanently deprive Plaintiffs and the members of the National Class of these funds.

112.     These funds are properly owned by Plaintiffs and the members of the National Class, not Associated Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the National Class.

113.     Plaintiffs and the members of the National Class are entitled to the immediate possession of these funds.

114.     Associated Bank has wrongfully converted these specific and readily identifiable funds.

115.     Associated Bank's wrongful conduct is continuing.

116.     As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Class have suffered and continue to suffer damages.

117.     By reason of the foregoing, Plaintiffs and the members of the National Class are entitled to recover from Associated Bank all damages and costs permitted by law, including all amounts that Associated Bank has wrongfully converted.

## FOURTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On Behalf of the National Class)

118.     Plaintiffs repeat paragraphs 1 through 93 above.

119.     Plaintiffs, on behalf of themselves and the National Class, assert a common law claim for unjust enrichment.

120.     By means of Associated Bank's wrongful conduct alleged herein, Associated Bank knowingly provides banking services to Plaintiffs and members of the National Class that are unfair, unconscionable, and oppressive.

121.     Associated Bank knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National Class.  In so doing, Associated Bank acted with conscious disregard for the rights of Plaintiffs and members of the National Class.

122.     As a result of Associated Bank's wrongful conduct as alleged herein, Associated Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National Class.

123.     Associated Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

124.     Under the common law doctrine of unjust enrichment, it is inequitable for Associated Bank to be permitted to retain the benefits it received, and is still receiving, without

justification, from the imposition of overdraft fees on Plaintiffs and members of the National

Class in an unfair, unconscionable, and oppressive manner.  Associated Bank's retention of such

funds under circumstances making it inequitable to do so constitutes unjust enrichment.

125.    The financial benefits derived by Associated Bank rightfully belong to

Plaintiffs and members of the National Class.  Associated Bank should be compelled to disgorge

in a common fund for the benefit of Plaintiffs and members of the National Class all wrongful or

inequitable proceeds received by the Bank.  A constructive trust should be imposed upon all

wrongful or inequitable sums received by Associated Bank traceable to Plaintiffs and the

members of the National Class.

126.    Plaintiffs and members of the National Class have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### Violations of State Unfair Trade Practice Laws
### (On Behalf of the State Subclasses)

127.     Plaintiffs repeat paragraphs 1 through 93 above.

128.    This claim is asserted on behalf of the members of each State Subclass under

their respective consumer protection statute.

129.    Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS

505/1, *et seq.*, prohibits "unfair or deceptive acts or practices" including the use of any

"misrepresentation or the concealment, suppression or omission of any material fact, with intent

that others rely upon the concealment, suppression or omission of such material fact."

130.    Associated Bank violated 815 ILCS 505/2 by the conduct alleged above

including, but not limited to, employing an unfair and deceptive policy and practice of re-

sequencing debit purchases from largest to smallest, and misrepresenting and failing to disclose

its policy and practice of re-sequencing debit purchases from largest to smallest in its Deposit

Agreement and related documents.  Associated Bank misrepresented, concealed, suppressed, or

otherwise omitted such material facts with intent that its customers rely upon their concealment, suppression, or omission.

131.     Minnesota Statutes § 325F.69, *et seq.*, prohibits the use of any "misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise."   Pursuant to § 325F.68, the term "merchandise" includes services.

132.     Associated Bank violated § 325F.69(1) by the conduct alleged above including, but not limited to, employing an unfair and deceptive policy and practice of re-sequencing debit purchases from largest to smallest, and misrepresenting and failing to disclose its policy and practice of re-sequencing debit purchases from largest to smallest in its Deposit Agreement and related documents.  Associated Bank misrepresented its policy and practice of re-sequencing debit purchases with intent that its customers rely upon its misleading and deceptive practice.

133.     Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*, prohibits any "statement or representation [that] contains any assertion, representation or statement of fact which is untrue, deceptive, or misleading."

134.     Associated Bank violated § 100.18(1) by the conduct alleged above including, but not limited to, employing an unfair and deceptive policy and practice of re-sequencing debit purchases from largest to smallest, and misrepresenting and failing to disclose its policy and practice of re-sequencing debit purchases from largest to smallest in its Deposit Agreement and related documents.

135.     Plaintiffs and the State Subclasses have been actually injured by Associated Bank's unlawful, unfair, and deceptive business acts and practices, as described above.

136.     As redress for Associated Bank's repeated and ongoing violations of these consumer protection statutes, Plaintiffs and the State Subclasses are entitled to, *inter alia*, damages and declaratory relief.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.     Declaring Associated Bank's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.     Restitution of all overdraft fees paid to Associated Bank by Plaintiffs and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.     Disgorgement of the ill-gotten gains derived by Associated Bank from its misconduct;

4.     Actual damages in an amount according to proof;

5.     Punitive and exemplary damages;

6.     Pre-judgment interest at the maximum rate permitted by applicable law;

7.     Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.      Such other relief as this Court deems just and proper.

Dated:     December 6, 2010.

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Plaintiffs' Lead Counsel*

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street
Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

- 36 -

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street - 34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No.  0188015
mhutts@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

---

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 6, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@alterslaw.com