**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Simmons v Comerica Incorporated*
N.D. Tex. Case No. 10-cv-326
S.D. Fla. Case No. 1:10-cv-22958

**AMENDED CLASS ACTION COMPLAINT**[1]

Plaintiffs, through undersigned counsel, on behalf of themselves and all persons similarly

situated, allege the following based on personal knowledge as to allegations regarding the

Plaintiffs and on information and belief as to other allegations.

**INTRODUCTION**

1.        This is a civil action seeking monetary damages, restitution and declaratory

relief from Defendants Comerica, Inc. and Comerica Bank, N.A. (collectively, "Comerica Bank"

or the "Bank"), arising from their unfair and unconscionable assessment and collection of

excessive overdraft fees.

---

[1] By filing this Amended Complaint, Plaintiff consolidates her previously-filed Complaint with *In Re: Checking Account Overdraft Litigation*, MDL No. 2036 for all purposes, including trial. "[A]n amended complaint asserting venue in the transferee district" filed in the MDL court gives the transferee court the authority "to resolve the multidistrict litigation through trial while remaining faithful to the *Lexecon* limitations." *See* Manual for Complex Litig. Fourth § 20.132 at 224-25 (*citing Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998)).

2.      In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Comerica Bank.  For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers.  Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance.  A recent FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.  Nevertheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.      In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks are estimated to bring in between $27 billion to $38.5 billion in overdraft charges alone.*  As of the end of 2008, Comerica had total assets of approximately $67.5 billion, and recorded net income of $213 million during that year.

4.      Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.      Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries, the grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.      The same considerations are not present when customers use debit cards. Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.      Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Comerica Bank routinely processes such transactions and then charges its customers an overdraft fee of $37 for each charge even when the transaction is for only a few dollars.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Comerica Bank.  Additionally, as part of its inequitable motive to generate obscene profits gained through the imposition of unconscionable overdraft fees, Comerica Bank fails to adequately disclose to its customers that they may elect to opt out of overdraft protection.

8.       In many instances, these overdraft fees cost Comerica Bank account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

9.       Thus, it is through manipulation and alteration of customers' transaction records that Comerica Bank maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and the Plaintiffs are residents of a different state than Comerica Bank.

11.      Venue is proper in this district pursuant to 28 U.S.C. § 1407(a).  Venue was proper in the Northern District of Texas, the district in which this action was originally filed, pursuant to 28 U.S.C. § 1391 because Comerica is subject to personal jurisdiction there and regularly conducts business in that district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## THE PARTIES

12.      Plaintiff Delphia Simmons is a resident of Detroit, Michigan.  Simmons maintains a checking account with Comerica, and has been injured as a result of Comerica's deceptive practices alleged herein.

13.      Plaintiff Patricia Mattlage is a resident of Addison, Texas.  Mattlage maintains a checking account with Comerica, and has been injured as a result of Comerica's deceptive practices alleged herein.

14.     The members of the Class are those individuals that have been charged overdraft fees as a result of Comerica Bank's use of a non-chronological and/or largest-to-smallest re-ordering system and policy when posting debits to customer accounts.   Upon information and belief, members of the Class number in the thousands.

15.     Defendant Comerica is an entity incorporated under the laws of Delaware, with a principal place of business located at Comerica Bank Tower, 1717 Main Street, MC 6404, Dallas, Texas 75201.

16.     Comerica is a financial services company that serves thousands of customers nationwide.   Comerica issues stock that is publicly traded on the New York Stock Exchange under the ticker symbol "CMA."   According to its most recent Form 10-K filed with the Securities and Exchange Commission, "[a]s of December 31, 2008, [Comerica] was among the 20 largest commercial bank holding companies in the United States."

17.     Comerica Bank offers a broad array of retail, small business, and commercial banking products and services to millions of customers through its extensive network of retail locations throughout the country.

18.     Comerica Bank is a national bank, subject to the National Bank Act, 12 U.S.C. § 1, *et seq.*, and regulations promulgated by the Office of the Comptroller of the Currency.

## CLASS ALLEGATIONS

19.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

20.     The proposed class is defined as:

> All Comerica Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Comerica Bank's practice of re-sequencing debit card transactions from highest to lowest (the "National Class").

21.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

22.     Excluded from the Class are Comerica Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Comerica Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

23.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Comerica Bank's records.

24.     The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, were charged overdraft fees by Comerica Bank as a result of its practice of re-sequencing debit card transactions from highest to lowest.  The representative Plaintiffs, like all Class members, have been damaged by Comerica Bank's misconduct in that they have been assessed and/or will continue to be assessed unfair and unconscionable overdraft charges.   Furthermore, the factual basis of Comerica Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

25.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

26.     Among the questions of law and fact common to the Class are whether Comerica Bank:

   a.  Did not clearly disclose and/or refused to allow customers to opt out of their overdraft protection programs;

   b.  Did not obtain affirmative consent from customers prior to processing transactions that resulted in overdraft fees;

   c.  Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

   d.  Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

   e.  Manipulates and reorders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

   f.  Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

   g.  Fails to provide customers with accurate balance information;

   h.  Delays posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

   i.  Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

   j.  Breaches its covenant of good faith and fair dealing with Plaintiffs and other members of the Class through its overdraft policies and practices;

   k.  Requires its customers to enter into standardized account agreements which include unconscionable provisions;

l.      Converts moneys belonging to Plaintiffs and other members of the Class through its overdraft policies and practices;

m.     Is unjustly enriched through its overdraft policies and practices; and

n.     Violates the consumer protection acts of certain states through its overdraft policies and practices.

27.      Other questions of law and fact common to the Class include:

a.      The proper method or methods by which to measure damages, and

b.      The declaratory relief to which the Class is entitled.

28.      Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Comerica Bank's account agreements and other related documents.  Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

29.      Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

30.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Comerica Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Comerica Bank's misconduct will proceed without remedy.

31.      Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.      Comerica Bank

32.      Comerica is a financial services company that serves thousands of customers nationwide.  Comerica issues stock that is publicly traded on the New York Stock Exchange under the ticker symbol "CMA."  According to its most recent Form 10-K filed with the Securities and Exchange Commission, "[a]s of December 31, 2008, [Comerica] was among the 20 largest commercial bank holding companies in the United States."

33.      Comerica Bank is in the business of providing its customers with a variety of banking services.  One of the services provided by Comerica Bank for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATM machines, the transaction is processed electronically.  As a result, Comerica Bank is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

34.     Comerica Bank employs sophisticated software to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

35.     As a result of Comerica Bank's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer, whose account has a $50 balance at the time Comerica Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing five overdraft fees on the customer.  Conversely, if the $100 transaction were debited last—consistent with the actual order of transactions—only one overdraft fee would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

**B.     Comerica Bank's Relevant Customer Documents Regarding Overdrafts**

36.     Plaintiffs and all members of the Class maintain or maintained a checking account with Comerica Bank.  The terms of Comerica Bank's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by Comerica Bank, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.  A representative copy of the Business and Personal Deposit Account Contract (the "Account Contract"), which is more than 19 pages long, single-spaced and in small font, is attached as Exhibit A.

37.     Section 2.20 of the Account Contract, entitled "Withdrawals," relates to the re-ordering of transactions.  In pertinent part, it provides as follows:

> In our sole discretion, we determine what order checks, transfers or other orders of withdrawal will be paid from the funds in your Account. Generally, we will pay highest to lowest dollar amount after assessing any fees, charges, or other obligations due the Bank.

38.     The Account Contract and, upon information and belief, related account documents, failed to give customers the option to "opt out" from the Bank's overdraft scheme.

39.     This "Withdrawals" provision does not disclose Comerica's deceptive re-ordering practices described herein. Among other things, the above language refers to the order in which the bank pays these transactions to third parties, not the order in which the transactions are deducted from (or posted to) one's account. Moreover, this language creates the appearance that Comerica will sometimes re-order debit transactions from highest to lowest, when, upon information and belief, its actual practice is to always do so for the sole purpose of maximizing its overdraft fee revenue at the expense of consumers.  Nowhere in the "Withdrawal" section of the Account Contract (or anywhere else in the contract) does Comerica disclose its deceptive practice of always re-ordering the posting of debit transactions in non-chronological order.

40.     Additionally, in an attempt to avoid liability, Defendant's Account Contract includes, among other things, limitations on damages (¶3.06), a jury trial waiver (¶3.10), and an attempt to impose an artificial one year statute of limitations on consumers' claims against the bank (¶3.08).   These provisions are procedurally and substantively unconscionable and, therefore, are unenforceable

C.     **Comerica Bank's Re-Ordering of Checking Account Transactions**

41.     In an effort to maximize overdraft revenue, Comerica Bank manipulates and reorders debits from highest to lowest during given periods of time. Comerica Bank reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can

charge.  This practice violates numerous consumer protection laws and the covenant of good faith and fair dealing in the Bank's Account Contract.

42.      In addition, Comerica Bank misleads its customers regarding its reordering practices.  Instead of unequivocally telling its customers that it will always reorder debits from highest to lowest, the Bank states in its Account Contract that it generally will pay highest to lowest amount.  This statement is deceptive and/or unfair because it is, in fact, the Bank's practice to *always* reorder debits from highest to lowest, and because the Bank groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank Account Contract and its customers' reasonable expectations.  The Bank's practices thus violate the covenant of good faith and fair dealing implied in the Account Contract as well as the consumer protection laws of numerous states.

43.      Comerica Bank's website has multiple deceptive representations.  For example, Comerica Bank's website states that its Online Banking Services website allows customers to "view Comerica Check Card transactions immediately," "view Comerica account balances," and "view and manage all payment activity in one central location."

44.      Contrary to Comerica Bank's advertisements and representations, the Online Banking Services website is not a means by which consumers can effectively manage their payment activity.  In fact, the inaccurate and unreliable information displayed on the Bank's website dupes consumers into generating overdraft fees for Comerica Bank.

45.      Transactions involving debit cards used by Comerica Bank customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are

processed electronically.  As a result, Comerica Bank is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

46.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Comerica Bank's posting system, it fails to post charges in the order in which they are assessed or received.  Comerica Bank developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

47.     Instead of processing such transactions in chronological order, Comerica Bank processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

48.     Comerica Bank refrains from immediately posting charges to a customer's account as it receives them—sometimes for multiple business days.  By holding charges rather than posting them immediately to an account, Comerica Bank is able to amass a number of charges on the account.  Subsequently, Comerica Bank posts all of the amassed charges on a single date.  When the group of charges is eventually posted to the customer's account, Comerica Bank posts them in order of largest to smallest—not in the order in which they were received or in the order in which they were charged.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.  The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

49.     Comerica Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, is specifically designed to

- 13 -

maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

50.　　　Comerica Bank enforces an unconscionable policy whereby charges assessed are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.　Comerica Bank's processing practices substantially increase the likelihood that customers' smaller charges will result in multiple overdraft fees.　The practices provide Comerica Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

51.　　　As a result, Plaintiffs and all members of the Class have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

### D.　　Comerica Bank's Cloaking of Accurate Balance Information

52.　　　Comerica Bank actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information.　When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

53.　　　 Online advertisements claim that Comerica Bank's Online Banking Services permit customers to "view Comerica Check Card transactions immediately," "view Comerica account balances," and "view and manage all payment activity in one central location."　But in reality, Comerica Bank's computers are set up not to process transactions in the order received in real time, but in order from highest to lowest dollar amount so as to ensure the maximum number of overdraft charges are imposed on customers' accounts.

54.      Comerica Bank provides inaccurate balance information to its customers through its electronic network.  In certain cases, Comerica Bank informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual knowledge of outstanding debits and transactions.

55.      Even when Comerica Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customers' account, it encourages the customer to incur more overdraft charges by approving—rather than prudently declining—subsequent debit card purchases and other electronic transactions.

56.      Comerica Bank also assesses overdraft fees at times when actual funds in the customer account are sufficient to cover all debits that have been submitted to the Bank for payment.  It does this by placing a "hold" on actual funds in the customer's account.  In doing so, Comerica Bank charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

57.      A debit card can be used to make a purchase in two ways:  (1) an Automated Clearing House ("ACH") transaction in which a customer enters his/her PIN number at the point of sale; or (2) an "offline signature" transaction, in which the debit card is treated like a credit card and the customer usually is required to sign a receipt.  In the former, the money is debited from the account instantaneously.  In the latter, the "offline signature" transaction occurs in two parts: first, authorization for the purchase amount is obtained by the merchant.  Second, the transaction is not actually "settled" (that is, money between the bank and the merchant does not change hands) until the merchant submits the transaction to the bank sometime after the customer's purchase.  Before settlement, "authorization holds" are placed on the customer's account, preventing access to money so held.  For some transactions, including taxi fare

purchases, the authorization hold is for an amount larger than the purchase actually made by the customer.  Comerica Bank charges an Overdraft Fee when the authorization hold amount—not the purchase price—pushes an account balance into negative territory.

58.      Such "authorization hold" policies, and the extent to which they are used by Comerica Bank to charge overdraft fees, are inconsistent with Comerica Bank's Account Agreement.   Section 2.20.14 of the Account Contract, entitled "Insufficient Funds and Overdrafts," relates to the re-ordering of transactions.  In pertinent part, it provides as follows:

> To determine your Available Balance for overdraft purposes, we will include not only the deposits and withdrawals posted that day to your Account, but also all pending Card or other electronic transactions, including merchant payment authorizations, for which we have received notice, even if those transactions have not been presented to us for payment.

59.      The terms of the Account Agreement fail to sufficiently alert the customer that he/she must keep a large cushion of funds in her account in order to guard against an overdraft fee even when the customer does not spend more than the funds in the account, and are materially deceptive.  Accordingly, Comerica charges customers Overdraft Fees even when there are sufficient funds in customers' accounts to cover transactions.

60.      For certain charges where the authorization hold is for an amount larger than the purchase actually made by the customer, disclosure is made neither on periodic statements nor on terminal receipts.   Not only does the transaction receipt make no mention of an authorization hold in an amount, but the receipt also makes no mention of the resulting Overdraft Fees—which are revealed for the first time only on the periodic statements issued by Comerica Bank.

61.     Charging an Overdraft Fee when in fact an account has never been over-drafted is materially deceptive. By charging Overdraft Fees when in fact the customer's account has not been over-drafted, Comerica Bank breached its contract with Plaintiffs.

**E.     Comerica Bank's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out**

62.     At the time its debit cards are used in POS transactions or at ATMs, Comerica Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Prior to the effective date of the opt in/opt out requirements of Regulation E (the "Effective Date"), Comerica Bank could have given customers the option to decline the transaction to avoid incurring overdraft fees, but it failed to do so because it sought to maximize the amount of revenue generated through its assessment of overdraft fees.

63.     Notwithstanding its technological capabilities and actual knowledge, Comerica Bank failed to provide notice to Plaintiffs and the Class that a particular debit card transaction would result in an overdraft and, hence, an overdraft fee.  Because Comerica Bank's customers were not notified of the potential overdraft, and were not given the option of declining the debit card transaction or providing another form of payment, the customers were assessed monetary damages in the form of overdraft fees.

64.     Prior to the Effective Date, Comerica Bank failed to allow Plaintiffs and Class members to opt out of its overdraft scheme, thereby preventing them from ensuring that they avoided any overdraft fees from being charged.

**F.  Comerica Bank's Overdraft Policies and Practices Are Contrary to Best Practices**

65.      By engaging in the conduct described herein, Comerica Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies").  A copy of the Joint Guidance is attached as Exhibit B.  These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection.  Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

66.      According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . .  This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

67.      The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.  When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."  70 F.R.D. 9127, 9132.  The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id.*

68.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.  A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit C.

69.     Comerica Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

70.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion:  Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit D finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee."  The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

71.     A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



**G.     Comerica Bank's Unconscionable Provisions and Policies**

72.     Comerica Bank's overdraft policies and practices are unconscionable in the following respects, among others:

a.     Prior to the Effective Date, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.      Prior to the Effective Date, the Bank did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee to the account;

d.      The Account Contract and related documents, including the Personal Services and Charges Brochure, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Account Contract, but rather in a different and separate document, the Personal Services and Charges Brochure, which is not signed by the depositor; and

f.      The Account Contract provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Comerica Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

73.     The Account Contract (¶3.10) also contains a jury trial waiver clause, which states:

> [Except for Accounts subject to California law] you and the Bank each waive all right to trial by jury in any dispute regarding your Account and related services. . . .

74.     The above cited provisions are unconscionable because the Account Contract and related documents, to the extent they are deemed contracts, are unenforceable contracts of adhesion and the waiver provision itself is substantively unconscionable.

**H.     Comerica Bank's Overdraft Practices Harmed Plaintiffs**

75.     Comerica Bank's wrongful overdraft policies and practices described above harmed Plaintiffs and members of the Class.  The following allegations are made for purposes of illustrating the harm and damage sustained by Plaintiffs and members of the Class as a result of Comerica Bank's wrongful overdraft policies and practices.

76.      Plaintiff Delphia Simmons is and was at all relevant times a checking account customer of Comerica Bank.

77.     In connection with her account, Comerica Bank issued a debit card to Ms. Simmons.  A debit card allows customers to access their checking account funds by using the card to execute a transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

78.     Comerica Bank wrongfully charged Ms. Simmons multiple overdraft fees. For example, based on information and belief, Ms. Simmons was charged two overdraft fees on July 24 2009, in the amount of $37.00 each, for a total of $74.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**July 2009 Balance Sheet per Comerica Bank Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | **Beginning Balance on 07/24/09:** | | | **$36.07** |
| **Date of Transaction** | **Debit Description** | | | |
| 7/24/2009 | Indian Village Store | $23.52 | | $12.55 |
| 7/24/2009 | CVS | $20.93 | | -$8.38 |

| | | | | |
|---|---|---|---|---|
| 7/24/2009 | Starbucks | $6.04 | | -$14.42 |
| 7/24/2009 | Overdraft Items Fee | | $74.00 | |
| | | **Total Fees:** | **$74.00** | |

79.     If Comerica Bank had not manipulated and reordered Ms. Simmons's transactions chronologically, she would not have incurred two overdraft fees.

80.     For instance, if Comerica Bank had posted the transactions chronologically, Ms. Simmons would have incurred only one overdraft fee instead of two:

#### July 2009 Balance Sheet if Debits Were Processed in Chronological Order

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | **Beginning Balance on 07/24/09:** | | | **36.07** |
| **Date of Transaction** | **Debit Description** | | | |
| 7/24/2009 | Starbucks | $6.04 | | 30.03 |
| 7/24/2009 | Indian Village Store | $23.52 | | 6.51 |
| 7/24/2009 | CVS | $20.93 | | -14.42 |
| 7/24/2009 | Overdraft Items Fee | | $37.00 | |
| | | **Total Fees:** | **$37.00** | |

81.     Additionally, if Comerica Bank had posted the transactions from lowest to highest, Ms. Simmons would have also incurred only one overdraft fee instead of two:

#### July 2009 Balance Sheet if Debits Were Processed from Lowest to Highest

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | **Beginning Balance on 07/24/09:** | | | **36.07** |
| **Date of Transaction** | **Debit Description** | | | |
| 7/24/2009 | Starbucks | $6.04 | | 30.03 |
| 7/24/2009 | CVS | $20.93 | | 9.10 |
| 7/24/2009 | Indian Village Store | $23.52 | | -14.42 |
| 7/24/2009 | Overdraft Items Fee | | $37.00 | |
| | | **Total Fees:** | **$37.00** | |

82.     As another example, based on information and belief, Ms. Simmons was charged three overdraft fees on September 21, 2009, in the amount of $37.00 each, for a total of $111.00.   Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**September 2009 Balance Sheet per Comerica Bank Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | **Beginning Balance on 09/21/09:** |  |  | **$35.42** |
| **Date of Transaction** | **Debit Description** |  |  |  |
| 9/21/2009 | Haggerty Store | $38.66 |  | -$3.24 |
| 9/21/2009 | Starbucks | $6.36 |  | -$9.60 |
| 9/21/2009 | Victor Center | $6.21 |  | -15.81 |
| 9/21/2009 | Overdraft Items Fee |  | $111.00 |  |
|  |  | **Total Fees:** | **$111.00** |  |

83.     If Comerica Bank had not manipulated and reordered Ms. Simmons's transactions chronologically, she would not have incurred three overdraft fees.

84.     For instance, if Comerica Bank had posted the transactions chronologically, Ms. Simmons would have incurred only two overdraft fees instead of three:

**September 2009 Balance Sheet if Debits Were Processed in Chronological Order**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | **Beginning Balance on 09/21/09:** |  |  | **35.42** |
| **Date of Transaction** | **Debit Description** |  |  |  |
| 9/21/2009 | Victor Center | $6.21 |  | 29.21 |
| 9/21/2009 | Haggerty Store | $38.66 |  | -9.45 |
| 9/21/2009 | Starbucks | $6.36 |  | -15.81 |
| 9/21/2009 | Overdraft Items Fee |  | $74.00 |  |
|  |  | **Total Fees:** | **$74.00** |  |

85.     Additionally, if Comerica Bank had posted the transactions from lowest to highest, Ms. Simmons would have incurred only one overdraft fees instead of three:

**September 2009 Balance Sheet if Debits Were Processed from Lowest to Highest**

|  |  | **Debits** | **Fees** | **Balance** |
|---|---|---|---|---|
|  | **Beginning Balance on 09/21/09:** |  |  | **35.42** |
| **Date of Transaction** | **Debit Description** |  |  |  |
| 9/21/2009 | Victor Center | $6.21 |  | 29.21 |
| 9/21/2009 | Starbucks | $6.36 |  | 22.85 |
| 9/21/2009 | Haggerty Store | $38.66 |  | -15.81 |
| 9/21/2009 | Overdraft Items Fee |  | $37.00 |  |
|  |  | **Total Fees:** | **$37.00** |  |

86.     Comerica failed to notify Ms. Simmons that she could incur overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, Comerica never notified Ms. Simmons, at the time she executed the purported insufficient funds transactions described above, that her checking account was overdrawn or that she would be charged an overdraft fee as a result of the transactions.  Furthermore, Comerica paid, rather than returned, all of the debit card charges described above, even though Plaintiff's account purportedly lacked sufficient funds to cover the transactions.

87.     Based on information and belief, the overdraft charges incurred by Plaintiff are representative of hundreds of millions of dollars of overdraft fees that the Banks wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially egregious considering the fact that the Banks approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

88.      Plaintiff Patricia Mattlage is and was at all relevant times a checking account customer of Comerica Bank.

89.      In connection with her account, Comerica Bank issued a debit card to Ms. Mattlage.  A debit card allows customers to access their checking account funds by using the card to execute a transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

90.      Comerica Bank wrongfully charged Ms. Mattlage multiple overdraft fees.  For example, based on information and belief, Ms. Mattlage was charged seven overdraft fees on June 15 2010, in the amount of $37.00 each, for a total of $259.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

### June 2010 Balance Sheet per Comerica Bank Reordering Scheme
#### (Debits Processed from Highest to Lowest)

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 06/14/10: | | | $155.35 |
| Date of Transaction | Debit Description | | | |
| 6/14/2010 | Wal-Mart | $64.52 | | $90.83 |
| 6/14/2010 | Fuddrucker's | $22.72 | | $68.11 |
| 6/14/2010 | KFC | $21.30 | | $46.81 |
| 6/14/2010 | Racetrac | $18.09 | | $28.72 |
| 6/14/2010 | Racetrac | $17.02 | | $11.70 |
| 6/14/2010 | Whataburger | $16.82 | $37.00 | -$5.12 |
| 6/14/2010 | Racetrac | $15.01 | $37.00 | -$20.13 |
| 6/14/2010 | Family Dollar | $8.93 | $37.00 | -$29.06 |
| 6/14/2010 | Dickeys | $8.74 | $37.00 | -$37.8 |
| 6/14/2010 | Racetrac | $5.40 | $37.00 | -$43.20 |
| 6/14/2010 | Dickeys | $5.17 | $37.00 | -$48.37 |

| 6/14/2010 | Sonic | $3.34 | $37.00 | -$51.71 |
| | | **Total Fees:** | **$259.00** | |

91.     If Comerica Bank had not manipulated and reordered Ms. Mattlage's transactions from their original chronological order, she would not have incurred seven overdraft fees.

92.     For instance, if Comerica Bank had posted the transactions chronologically, Ms. Mattlage would have incurred only two overdraft fees instead of seven:

<u>**June 2010 Balance Sheet if Debits Were Processed in Chronological Order**</u>

| | | <u>**Debits**</u> | <u>**Fees**</u> | <u>**Balance**</u> |
|---|---|---|---|---|
| | **Beginning Balance on 06/11/10:** | | | **$155.35** |
| <u>**Date of Transaction**</u> | <u>**Debit Description**</u> | | | |
| 6/11/2010 | Dickeys | $5.17 | | $150.18 |
| 6/11/2010 | Dickeys | $8.74 | | $141.44 |
| 6/11/2010 | Fuddrucker's | $22.72 | | $118.72 |
| 6/11/2010 | Racetrac | $17.02 | | $101.70 |
| 6/11/2010 | Racetrac | $5.40 | | $96.30 |
| 6/12/2010 | KFC | $21.30 | | $75.00 |
| 6/12/2010 | Sonic | $3.34 | | $71.66 |
| 6/12/2010 | Whataburger | $16.82 | | $54.84 |
| 6/13/2010 | Racetrac | $15.01 | | $39.83 |
| 6/13/2010 | Family Dollar | $8.93 | | $30.90 |
| 6/14/2010 | Racetrac | $18.09 | | $12.81 |
| 6/14/2010 | Wal-Mart | $64.52 | **$37.00** | -$51.71 |
| | | **Total Fees:** | **$37.00** | |

93.     Additionally, if Comerica Bank had posted the transactions from lowest to highest, Ms. Mattlage would have incurred only one overdraft fee instead of seven:

**June 2010 Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | Beginning Balance on 06/11/10: | | | $155.35 |
| Date of Transaction | Debit Description | | | |
| 6/12/2010 | Sonic | $3.34 | | $152.01 |
| 6/11/2010 | Dickeys | $5.17 | | $146.84 |
| 6/11/2010 | Racetrac | $5.40 | | $141.44 |
| 6/11/2010 | Dickeys | $8.74 | | $132.70 |
| 6/13/2010 | Family Dollar | $8.93 | | $123.77 |
| 6/13/2010 | Racetrac | $15.01 | | $108.76 |
| 6/12/2010 | Whataburger | $16.82 | | $91.94 |
| 6/11/2010 | Racetrac | $17.02 | | $74.92 |
| 6/14/2010 | Racetrac | $18.09 | | $56.83 |
| 6/12/2010 | KFC | $21.30 | | $35.53 |
| 6/11/2010 | Fuddrucker's | $22.72 | | $12.81 |
| 6/14/2010 | Wal-Mart | $64.52 | $37.00 | -$51.71 |
| | | Total Fees: | $37.00 | |

94.     Comerica failed to notify Ms. Mattlage that she could incur overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, Comerica never notified Ms. Mattlage, at the time she executed the purported insufficient funds transactions described above, that her checking account was overdrawn or that she would be charged an overdraft fee as a result of the transactions.  Furthermore, Comerica paid, rather than returned, all of the debit card

charges described above, even though Plaintiff's account purportedly lacked sufficient funds to cover the transactions.

95.     Based on information and belief, the overdraft charges incurred by Plaintiff are representative of hundreds of millions of dollars of overdraft fees that the Banks wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially egregious considering the fact that the Banks approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

**I.      The Damages Sustained by Plaintiffs and the Class**

96.     As shown by these examples, Comerica Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account.  In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." *Id*.

97.     According to rules proposed by the Agencies, "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

98.     Thus, as a consequence of Comerica Bank's overdraft policies and practices, Plaintiffs and the Class have been wrongfully forced to pay overdraft fees.  Comerica Bank has improperly deprived Plaintiffs and the Class of significant funds, causing ascertainable monetary losses and damages.

99.     As a consequence of Comerica Bank's improper overdraft fees, Comerica Bank has wrongfully deprived Plaintiffs and the Class of funds to which it had no legitimate claim.

100.    Plaintiffs had sufficient funds to cover at least some of the transactions for which they and the Class were charged overdraft fees.  Plaintiffs and members of the Class either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Comerica Bank could impose these wrongful charges.  In many instances, Comerica Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiffs and Class members.

101.    All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

### FIRST CLAIM FOR RELIEF
### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing[2]
### (On Behalf of the National Class)

102.    Plaintiffs repeat paragraphs 1 through 101 above.

---

[2]  Florida and certain states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.  For the sake of convenience in this multi-district litigation, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

103.     Plaintiffs and Comerica Bank have contracted for bank account deposit, checking, ATM and debit card services, as embodied in Comerica Bank's Account Contract and related documentation.

104.     Under the laws of the states where Comerica Bank does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

105.     Comerica's duty of good faith and fair dealing to Plaintiffs and Class members also arises from § 4.303 of the Uniform Commercial Code.  TEX. BUS. & COM. CODE ANN. § 4.303.  The 2002 Comments added by the State Bar Committee provide as follows:

> Although the discretion given a bank by subsection (b) is great, the bank must continue to act in good faith in establishing its policies and procedures in this area.  For example, a procedure designed to maximize the number of returned checks solely to increase returned check fees charged to customers would not be appropriate.

*Id.* (emphasis supplied).

106.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

107.     Comerica Bank has breached the covenant of good faith and fair dealing in the Account Contract through its overdraft policies and practices as alleged herein.

108.     Plaintiffs and the National Class have performed all, or substantially all, of the obligations imposed on them under the Account Contract.

109.     Plaintiffs and members of the National Class have sustained damages as a result of Comerica Bank's breach of the covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF
### Unconscionability
**(On Behalf of the National Class)**

110.     Plaintiffs repeat paragraphs 1 through 101 above.

111.     Comerica Bank's overdraft policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

a.     Prior to the Effective Date, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.     Prior to the Effective Date, the Bank did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c.     The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.     The Account Contract and related documents, including the Personal Services and Charges Brochure, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Account Contract, but rather in a different and separate document, the Personal Services and Charges Brochure, which is not signed by the depositor; and

f.      The Account Contract provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Comerica Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

112.    Considering the great business acumen and experience of Comerica Bank in relation to Plaintiffs and the National Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

113.    The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $37 charge on an overdraft of less than $37) is itself unconscionable. Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

114.    Plaintiffs and members of the National Class have sustained damages as a result of Comerica Bank's unconscionable policies and practices as alleged herein.

### THIRD CLAIM FOR RELIEF
### Conversion
### (On Behalf of the National Class)

115.    Plaintiffs repeat paragraphs 1 through 101 above.

- 33 -

116.    Comerica Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

117.    Comerica Bank has wrongfully collected overdraft fees from Plaintiffs and the members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

118.    Comerica Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Class, without legal justification.

119.    Comerica Bank continues to retain these funds unlawfully without the consent of Plaintiffs or members of the National Class.

120.    Comerica Bank intends to permanently deprive Plaintiffs and the members of the National Class of these funds.

121.    These funds are properly owned by Plaintiffs and the members of the National Class, not Comerica Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the National Class.

122.    Plaintiffs and the members of the National Class are entitled to the immediate possession of these funds.

123.    Comerica Bank has wrongfully converted these specific and readily identifiable funds.

124.    Comerica Bank's wrongful conduct is continuing.

125.    As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Class have suffered and continue to suffer damages.

126.     By reason of the foregoing, Plaintiffs and the members of the National Class are entitled to recover from Comerica Bank all damages and costs permitted by law, including all amounts that Comerica Bank has wrongfully converted.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the National Class)**

127.     Plaintiffs repeat paragraphs 1 through 101 above.

128.     Plaintiffs, on behalf of herself and the National Class, assert a common law claim for unjust enrichment.

129.     By means of Comerica Bank's wrongful conduct alleged herein, Comerica Bank knowingly provides banking services to Plaintiffs and members of the National Class that are unfair, unconscionable, and oppressive.

130.     Comerica Bank knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National Class.  In so doing, Comerica Bank acted with conscious disregard for the rights of Plaintiffs and members of the National Class.

131.     As a result of Comerica Bank's wrongful conduct as alleged herein, Comerica Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National Class.

132.     Comerica Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

133.     Under the common law doctrine of unjust enrichment, it is inequitable for Comerica Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiffs and members of the National

Class in an unfair, unconscionable, and oppressive manner.  Comerica Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

134.     The financial benefits derived by Comerica Bank rightfully belong to Plaintiffs and members of the National Class.  Comerica Bank should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the National Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Comerica Bank traceable to Plaintiffs and the members of the National Class.

135.     Plaintiffs and members of the National Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

1.     Declaring Comerica Bank's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.     Restitution of all overdraft fees paid to Comerica Bank by Plaintiffs and the Class, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.     Disgorgement of the ill-gotten gains derived by Comerica Bank from its misconduct;

4.     Actual damages in an amount according to proof;

5.     Punitive and exemplary damages;

6.     Pre-judgment interest at the maximum rate permitted by applicable law;

7.     Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.     Such other relief as this Court deems just and proper.

Dated:   December 6, 2010.

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Plaintiffs' Lead Counsel*

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W Flagler Street - Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th street - 34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No. 0188015
mhutts@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 6, 2010, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record or pro se parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@alterslaw.com

- 39 -