UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Eno v. M & I Marshall & Ilsley Bank*
M.D. FL Case No. 2:10-376
S.D. FL Case No. 1:10-cv-22730-JLK

**REPLY MEMORANDUM IN SUPPORT OF M&I MARSHALL & ILSLEY BANK'S
MOTION TO COMPEL ARBITRATION AND STAY ALL PROCEEDINGS**

Howard A. Pollack
Michael B. Apfeld
John L. Kirtley
Andrew S. Oettinger
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI  53202-3590
Phone:  414-273-3500
Fax:  414-273-5198
hpollack@gklaw.com
mapfeld@gklaw.com
jkirtley@gklaw.com
aoettinger@gklaw.com

Edward M. Waller
FOWLER WHITE BOGGS
P.O. Box 1438
Tampa, FL  33601
Phone:  813-222-1137
Email: ewaller@fowlerwhite.com

Attorneys for Defendant, M&I Marshall &
Ilsley Bank d/b/a M&I Bank

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 1

    I.    Under Wisconsin Law, Plaintiffs Received And Are Bound By M&I's Rules. ................. 1

    II.    The Only Question Presently Facing The Court Is Who Decides Plaintiffs'
Challenge To The Arbitration Clause As A Whole. ............................................................ 3

    III.    Plaintiffs' Ostensible Challenges To The Delegation Clause Are Not Specific
To That Clause. ................................................................................................................... 4

    IV.    Nor Can Any Colorable Challenge Specific To The Delegation Clause
Otherwise Be Extracted From Plaintiffs' Submissions. ...................................................... 5

    V.    There Is No Reason To Take Discovery On The Supposed Unconscionability
Of The Delegation Clause ................................................................................................... 9

    VI.    If, Despite The Foregoing, The Court Believes That Discovery Is Necessary
To Determine The Enforceability Of The Delegation Clause, Then The
Validity Of The Arbitration Clause As A Whole Is Certainly Not Ripe For
Decision. ............................................................................................................................ 10

    VII.    M&I's Request For A Stay Is Not Dilatory. .................................................................... 10

CONCLUSION ................................................................................................................... 10

CERTIFICATE OF SERVICE .......................................................................................... 12

SERVICE LIST ................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) .................................................................................................................. 5

*Am. Family Mut. Ins. Co. v. Golke*,
    2009 WI 81, 319 Wis. 2d 397, 768 N.W.2d 729 ...................................................................... 2

*Bruesewitz v. Wolpoff & Abramson, LLP*,
    No. 05-C-542-S, 2005 WL 3002609 (W.D. Wis. Nov. 8, 2005) ............................................... 2

*Carbajal v. H&R Block Tax Servs., Inc.*,
    372 F.3d 903 (7th Cir. 2004) .................................................................................................... 5

*Carnival Cruise Lines, Inc. v. Shute*,
    499 U.S. 585 (1991) .................................................................................................................. 6

*Coady v. Cross Country Bank*,
    2007 WI App 26, 299 Wis. 2d 420, 729 N.W.2d 732 .............................................................. 4

*Cottonwood Fin. Ltd. v. Estes*,
    2010 WI App 75, 325 Wis. 2d 749, 784 N.W.2d 726 .............................................................. 4

*Deminsky v. Arlington Plastics Mach.*,
    2003 WI 15, 259 Wis. 2d 587, 657 N.W.2d 411 ................................................................. 7, 8

*Discount Fabric House of Racine, Inc. v. Wis. Tel. Co.*,
    117 Wis. 2d 587, 345 N.W.2d 417 (1984) ............................................................................... 7

*Hawkins v. Aid Ass'n for Lutherans*,
    338 F.3d 801 (7th Cir. 2003) .................................................................................................... 2

*Northwestern Nat'l Ins. Co. v. Donovan*,
    916 F.2d 372 (7th Cir. 1990) ............................................................................................... 7, 8

*Rent-A-Center, West, Inc. v. Jackson*,
    ___ U.S. ___, 130 S. Ct. 2772 (2010) ............................................................................. *passim*

*State ex rel. Flores v. State*,
    183 Wis. 2d 587, 516 N.W.2d 362 (1994) ............................................................................... 2

*Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*,
    ___ U.S. ___, 130 S. Ct. 1758 (2010) ...................................................................................... 5

*Tickanen v. Harris & Harris, Ltd.*,
    461 F. Supp. 2d 863 (E.D. Wis. 2006) ..................................................................................... 3

*Tinder v. Pinkerton Sec.*,
  305 F.3d 728 (7th Cir. 2002) ................................................................................................ 3

*Wisconsin Auto Title Loans, Inc. v. Jones*,
  2006 WI 53, 290 Wis. 2d 514, 714 N.W.2d 155 ................................................................ 4, 9

**Statutes**

9 U.S.C. § 3 ........................................................................................................................... 1

9 U.S.C. § 4 ........................................................................................................................... 1

**Rules**

Fed. R. Civ. P. 12(b)(3) ........................................................................................................ 1

Fed. R. Civ. P. 12(b)(6) ........................................................................................................ 1

Fed. R. Civ. P. 56 .................................................................................................................. 1

## INTRODUCTION

The question now facing this Court is not whether the class action waiver, or the jury trial waiver, or the arbitration agreement as a whole is unconscionable. It is, rather, who will determine whether they are. M&I's "delegation clause" says it should be the arbitrator, and the United States Supreme Court says such clauses must be enforced. The only exception is a valid challenge specific to the delegation clause itself. Plaintiffs have raised no such challenge; their objections go to other aspects of the arbitration agreement. That being so, the Court should order them to arbitrate those objections.

## ARGUMENT

**I.      Under Wisconsin Law, Plaintiffs Received And Are Bound By M&I's Rules.**

It is important to note at the outset that there is no genuine question that plaintiffs agreed to arbitrate their disputes with the Bank. Plaintiffs attempt to create the impression of uncertainty, asserting (a) their professed inability to remember whether or not they received the Bank's rules, and (b) M&I's reliance on its business records to prove delivery.[1] Under Wisconsin law, however, neither of these is sufficient to create any issue.

Under Wisconsin law, ". . . evidence of mailing a letter raises a rebuttable presumption that the addressee received the letter. . . . Once the presumption of mailing has been established, the burden shifts to the party challenging receipt to present credible evidence of non-receipt. . . . The presumption may not be overcome without a denial of receipt. . . . Mere non-remembrance of receipt is not enough [to create a credibility issue]; the presumption of receipt cannot be

---

[1] In connection with this argument, plaintiffs also suggest that M&I's motion to compel is governed by FED. R. CIV. P. 56. *See* Response at 3, n.4. Although we do not think that the point is ultimately material, the suggestion simply is not correct. This motion was not brought under either Rule 56 or 12(b)(6) (which can under certain circumstances be converted to a Rule 56 motion); it was brought under Rule 12(b)(3) and 9 U.S.C. §§ 3 and 4.

1

overcome without denial. . . ." *Am. Family Mut. Ins. Co. v. Golke*, 2009 WI 81, ¶ 36, 319 Wis. 2d 397, 768 N.W.2d 729 (internal citations omitted).

Nor does Wisconsin require greater proof of mailing than M&I presented. "Evidence that a given letter was mailed does not necessarily require specific recollection by the sender as to that particular letter." *State ex rel. Flores v. State*, 183 Wis. 2d 587, 612, 516 N.W.2d 362, 370 (1994). Rather, "[a]n office . . . may show that it is the ordinary course of business or office practice to mail the item in question." *Ibid.* And evidence that it was a company's routine habit and practice to mail items is not rebutted by a recipient's inability to recall having received them; "[n]on-remembrance . . . does not constitute denial, and does not rebut the presumption of receipt." *Golke*, ¶¶ 48, 50.

Here, plaintiffs have done nothing to rebut the presumption. Moreover, as noted in M&I's opening submissions and nowhere disputed by plaintiffs, at the time they opened the joint account in question both Mr. Eno and Ms. Cox executed a signature card pursuant to which they "agree[d] to be governed by [the Rules] and any amendment to them." *See* Wendelberger Decl., Ex. B [Dkt. 917-4]. Having done so, there is no question that, under Wisconsin law, M&I's amendments containing the arbitration agreement became part of the agreement between plaintiffs and the Bank. *See, e.g., Bruesewitz v. Wolpoff & Abramson, LLP*, No. 05-C-542-S, 2005 WL 3002609, at *3 (W.D. Wis. Nov. 8, 2005) (under Wisconsin law, consumer who signed credit agreement providing that lender could amend the agreement through subsequent notification was bound by arbitration clause contained in later mailing); *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 806 (7th Cir. 2003) (under Wisconsin law, members of fraternal benefits society were bound by arbitration provisions in bylaws amended after members purchased their insurance policies, where policies to which members originally agreed explicitly

bound them to subsequent changes in society's bylaws). *Cf. Tickanen v. Harris & Harris, Ltd.*, 461 F. Supp. 2d 863, 867 (E.D. Wis. 2006) (under Wisconsin law, consumers who entered into credit card agreement were bound by arbitration clause contained in subsequent notice where notice provided that changes therein would become effective unless consumer notified the card issuer by a certain date; "plaintiffs accepted the agreement by their failure to take affirmative action to not accept the agreement"); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 731 (7th Cir. 2002) (under Wisconsin law, employee was bound by arbitration agreement contained in subsequent edition of employee handbook which provided that "[b]y remaining employed . . . you are agreeing to be covered by the [arbitration] program and you waive your right to a court trial").

In short, under Wisconsin law, the arbitration provision and the delegation clause contained in it became part of the agreement between plaintiffs and the Bank.

**II.     The Only Question Presently Facing The Court Is <u>Who</u> <u>Decides</u> Plaintiffs' Challenge To The Arbitration Clause As A Whole.**

As explained in M&I's Opening Memorandum [Dkt. 917-1] at 8-9, a "delegation clause," *i.e.*, a clause that authorizes the arbitrator to determine challenges to the validity of the arbitration clause, is severable from the remainder of the arbitration agreement in which it is contained. For that reason, any challenge to the arbitration agreement as a whole must be submitted to the arbitrator and may not be considered by the Court unless there are grounds on which to challenge the delegation clause independent of any challenge to the arbitration agreement as a whole. *Rent-A-Center, West, Inc. v. Jackson*, ___ U.S. ___, 130 S. Ct. 2772, 2778-80 (2010). In effect, *Rent-A-Center* means that, where the arbitration provision contains a delegation clause, judicial review is confined to the validity of that clause unless and until it is determined to be invalid.[2]

---

[2] M&I has never suggested that *Rent-A-Center* shields the delegation clause itself from judicial review, as plaintiffs suggest. *See* Dkt. 983 at 10.

3

Since the agreement between plaintiffs and M&I contains just such a delegation clause, the only question currently facing the Court is whether plaintiffs have set forth any legitimate challenge "specific to the delegation provision" itself. 130 S. Ct. at 2780. As the following discussion will show, they have not.

### III. Plaintiffs' Ostensible Challenges To The Delegation Clause Are Not Specific To That Clause.

Despite paying lip service to *Rent-A-Center*, plaintiffs' ostensible challenges to the delegation clause are essentially indistinguishable from those directed at invalidating the arbitration agreement as a whole. Indeed, whole swaths of text are merely repeated verbatim. *Compare* Plaintiffs' Response [Dkt. 983] at 12-15 with 15-18. Plaintiffs admit as much, proclaiming that "the same arguments that apply to this separately severable delegation provision also apply to the arbitration provision as a whole." *Id.* at 16. This alone is tantamount to a concession that they have not met the standard of *Rent-A-Center*.

Nor do any of the cases cited by plaintiffs establish any basis for a challenge "specific to the delegation provision" itself. In fact, none of the cases cited by plaintiffs save *Rent-A-Center* itself—including this Court's own decisions in this MDL proceeding [Dkt. Nos. 447, 514, 592, 594, 763]—even deals with such a challenge.[3]

---

[3] In one instance this Court recognized the issue but left it in the hands of the Eleventh Circuit [Dkt. 739]. Moreover, the arbitration clause in *Wisconsin Auto Title Loans, Inc. v. Jones*, 2006 WI 53, 290 Wis. 2d 514, 714 N.W.2d 155, contained what we now call a "delegation provision." However, the case was decided years before *Rent-A-Center*, and the lender in *Wisconsin Auto Title Loans* did not argue that the validity of the arbitration provision had to be decided by the arbitrator. 2006 WI 53, ¶ 5.

There is, moreover, another reason why *Wisconsin Auto Title Loans* and the two other principal Wisconsin decisions on which plaintiffs rely are not relevant to the current inquiry. All three were based in whole or in part on a perceived conflict between the arbitration clause in question and the Wisconsin Consumer Act. *See, e.g., Cottonwood Fin. Ltd. v. Estes*, 2010 WI App 75, 325 Wis. 2d 749, 784 N.W.2d 726 (petition for review held in abeyance) (concluding arbitration agreement was substantively unconscionable because it contravened debtor's right to bring a class action under the Act)); *Coady v. Cross Country Bank*, 2007 WI App 26, 299 Wis. 2d 420, 729 N.W.2d 732 (concluding that arbitration clause was substantively unconscionable because, by specifying that Delaware law would apply, it deprived the plaintiff of its rights to seek remedies under the Act); *Wisconsin Auto Title Loans, Inc. v. Jones* (basing determination of substantive unconscionability on proposition that arbitration would not provide injunctive relief available under the Act). Plaintiffs, however, have disclaimed any notion that

4

Instead, plaintiffs' arguments relate to the nature of the proceedings that will follow *if* the delegation clause is upheld and the arbitrator then upholds the rest of the arbitration agreement. In particular, they object to resolution of their claims (1) on an individual basis (*i.e.*, without the leverage afforded by a class action) and (2) without a jury. Whether such challenges will ultimately prevail is doubtful.[4] But whatever their chances of success, these arguments go to the enforceability of the arbitration agreement as a whole, and not to the delegation clause itself. And no claim that a delegation clause is unconscionable need even be considered if the challenge is not "specific to the delegation provision." *Rent-A-Center*, 130 S. Ct. at 2780.

## IV.     Nor Can Any Colorable Challenge Specific To The Delegation Clause Otherwise Be Extracted From Plaintiffs' Submissions.

The particulars of plaintiffs' argument only confirm the absence of any credible challenge specific to the delegation clause. For example, while plaintiffs label the clause "draconian" and call its mere existence "prima facie unconscionable," *see* Plaintiffs' Response at 1-2, the United States Supreme Court did not bat its figurative eye at such a provision in *Rent-A-Center*. Nor is there any material distinction between the delegation clause upheld by the Supreme Court in *Rent-A-Center* and that contained in M&I's rule, as plaintiffs suggest. *See* Plaintiffs' Response [Dkt. 983] at 11, n.8. Agreeing to arbitrate "any claim, dispute or controversy arising from or relating to . . . the validity, enforceability or scope of this arbitration provision" (M&I's

---

their opposition to M&I's motion is based on the provisions of the Act. *See* Plaintiffs' Response [Dkt. 983] at 18-19. If that is so, it is difficult to see how any of these cases support plaintiffs' challenge to M&I's arbitration agreement, much less its delegation clause.

[4] The Supreme Court has made it clear that class arbitration itself is prohibited absent some affirmative agreement on the part of all parties to allow it, *see Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, ___ U.S. ___, 130 S. Ct. 1758 (2010). It can hardly be "unconscionable" to explicitly agree to what the Supreme Court views as the presumptive intent of the parties. And proceeding without a jury is the very essence of arbitration; an attack on that characteristic constitutes an attack on the Federal Arbitration Act itself. As the Seventh Circuit aptly observed, "[t]he cry of 'unconscionable!' just repackages the tired assertion that arbitration should be disparaged as second-class adjudication. It is precisely to still such cries that the Federal Arbitration Act equates arbitration with other contractual terms." *Carbajal v. H&R Block Tax Servs., Inc.*, 372 F.3d 903, 906 (7th Cir. 2004), *citing Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270-71 (1995).

language) is the functional equivalent of agreeing to arbitrate "any dispute relating to the . . . enforceability or formation of this Agreement . . ." (*Rent-A-Center*, 130 S. Ct. at 2775). Nor do plaintiffs explain why it makes a difference that "the delegation provision in *Rent-A-Center* is mandatory while M&I Bank's delegation provision is elective." *See* Plaintiffs' Response at 11, n.8. Not only is this "election" (and, hence, plaintiff's objection) applicable to the arbitration agreement as a whole and not just the delegation clause, but it, too, is functionally identical to the provision in *Rent-A-Center*.[5]

Plaintiffs' attempt to apply the two-part test of unconscionability to the delegation clause does not disclose any credible challenge specific to that clause, either. For example, plaintiffs argue that the delegation clause was *procedurally* unconscionable for essentially two reasons: first, because it was a contract of adhesion, *i.e.*, because plaintiffs "lacked any bargaining power or meaningful choice, and were not given any opportunity to negotiate its terms"; and, second, because the delegation clause was hidden and/or confusing. Dkt. 983 at 12-13. Neither is specific to the delegation clause; neither is persuasive, either.[6]

For example, there is utterly nothing about plaintiffs' "contract of adhesion" argument that is specific to the delegation clause. Nor is the challenge credible. A choice-of-forum clause (of which an arbitration agreement is one species) is not unconscionable simply because it was not the subject of bargaining. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991) (upholding clause in form ticket contract). As the Seventh Circuit (which includes Wisconsin, where both plaintiffs and defendant reside) has observed, "mere inequality of bargaining power

---

[5] Under M&I's language, any dispute will be arbitrated if *either* party *elects* arbitration. Under the language in *Rent-A-Center*, any dispute will be arbitrated without need for election. However, because any agreement can be modified by mutual assent, if neither party wanted to arbitrate, the result would be the same as M&I's language.

[6] Plaintiffs also suggest that the delegation clause is procedurally unconscionable because they can't remember receiving a copy of M&I's Rules. The futility of that argument has been discussed above.

6

does not of itself make every term of the contract unconscionable. . . . Ours is not a bazaar economy in which the terms of every transaction, or even of most transactions, are individually dickered . . . ." *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 377 (7th Cir. 1990). Thus, as the very authority cited by plaintiffs shows, a "take-it-or-leave-it" contract is not unconscionable if competing products are available. *Compare Discount Fabric House of Racine, Inc. v. Wis. Tel. Co.*, 117 Wis. 2d 587, 601, 345 N.W.2d 417, 424 (1984) (exculpatory clause in contract for yellow pages listing was against public policy where phone company held a monopoly on service provided) *with Deminsky v. Arlington Plastics Mach.*, 2003 WI 15, ¶ 31, 259 Wis. 2d 587, 612, 657 N.W.2d 411, 423-24 (upholding indemnity agreement contained in contract of sale where the party alleging unconscionability could have bought the product from someone else). Indeed, as the *Deminsky* court explained:

> Customers make choices such as these every day. That [the customer] did not like the other options available does not create a contract of adhesion or make the terms of this contract substantively unconscionable. This is not like the *Discount Fabric* case in which the customer had only one viable option for reaching people through an ad in the telephone book.

*Ibid.* The record in these MDL proceedings amply demonstrates that there are many banks whose arbitration clauses do not contain delegation provisions or, indeed, whose terms and conditions do not contain arbitration clauses at all. If plaintiffs did not like M&I's Rules, they were (and are) free to go elsewhere.

Nor is there anything hidden or confusing about the delegation clause. The existence of an arbitration agreement is plainly and prominently noted on the first page of M&I's Rules. The delegation clause is an aspect of the very first sentence of the arbitration agreement; it defines the scope of the arbitrator's authority. *Could* the delegation clause itself have been highlighted? Perhaps. But doing so "would throw the other clauses into shadow—inviting litigation over *their* validity." *Northwestern Nat'l*, 916 F.2d at 377 (emphasis in original). Nor is there is anything

7

"confusing" about its terms of the delegation clause, which provide that "any claim, dispute or controversy arising from or relating to . . . the validity, enforceability or scope of this arbitration provision . . . shall be resolved . . . by binding arbitration . . . ." These words can readily be understood by any minimally competent adult who reads them. And that, in fact, is the real source of plaintiffs' apparent dismay—they never read the Bank's Rules. But, as the Wisconsin Supreme Court has observed, "[f]ailure to read a contract . . . is not an excuse that relieves a person from the obligations of the contract." *Deminsky*, 259 Wis. 2d at 611, ¶ 30, 657 N.W.2d at 423. Indeed, plaintiffs' refusal to comply with the agreement on that basis may constitute bad faith. *See Northwestern Nat'l*, 916 F.2d at 378.

Plaintiffs' ostensible challenge to the *substantive* unconscionability of the delegation provision does not withstand scrutiny, either. For example, plaintiffs first argue that "the costs of arbitrating are a deterrent to bringing an arbitration solely to challenge the delegation provision." Response at 14. But this misstates the issue. Plaintiffs don't have to arbitrate *the delegation clause*; they can (and do) challenge it in court. Moreover, challenging the delegation clause is not an end unto itself. The delegation clause simply presents a threshold inquiry. Plaintiffs have advanced no reason to believe that the necessity of undertaking this inquiry itself would present any obstacle to obtaining representation that would be available in its absence. Tellingly, the supposed disincentives or economic hardships described in the Eno, Cox, and Blankman Declarations [Dkt. Nos. 983-1 through 3] assume that their challenge to the class action waiver will be rejected. Thus, the supposed economic disincentives of which plaintiffs complain do not have anything to do with the delegation clause itself; they arise from other attributes of arbitration. And those attributes are outside the inquiry permitted by *Rent-A-Center*.

8

The second aspect of the arbitration clause alleged by plaintiffs to be substantively unconscionable—that "the class action waiver is inherently one-sided"—only confirms the irrelevance of plaintiffs' objections to the current issue. *See* Response at 15. The class action waiver is not now at issue. The delegation clause is, and the delegation clause itself is quite balanced. If the delegation clause is enforced, each party will have the opportunity to convince the arbitrator of the validity or invalidity of that waiver or other aspects of the arbitration agreement, just as they would do were the matter being litigated in court.[7] Not a word in the plaintiffs' response suggests any reason why an arbitrator would be any less capable of fairly deciding these issues than a judge. Moreover, each party will be bound by the arbitrator's decision.[8] Nothing about the process of getting to that decision—in other words, nothing about *the delegation provision itself*—is imbalanced or provides a disincentive to attorneys who might otherwise represent the plaintiffs.

**V.   There Is No Reason To Take Discovery On The Supposed Unconscionability Of The Delegation Clause.**

Given the foregoing, there is no reason to take any discovery on the supposed unconscionability *of the delegation clause itself*; the supposed hardships and economic disincentives created by the class action waiver is irrelevant to determining the validity of that clause.[9] To the extent that any discovery is necessary to determine the validity of that waiver or

---

[7] Whether a contract is unconscionable is a question of law, not fact, *see Wisconsin Auto Title Loan* at ¶ 25, and, hence, not one on which plaintiffs would be entitled to a jury in any event.

[8] Indeed, if there is any imbalance in this respect, it favors plaintiffs. While it is true that a decision by the arbitrator upholding the arbitration clause as a whole will effectively bind the plaintiffs (but no other bank customers), a decision concluding it is unconscionable will bind M&I not only in its dispute with these plaintiffs but effectively with all other members of the class.

[9] There is no little irony in plaintiffs' emphasis on the "fact-intensive" and "case-by-case" nature of the unconscionability inquiry. *See* Response at 2, 3. If true, it bodes ill for class certification. But that is an issue for another day.

any aspect of the arbitration agreement other than the delegation clause, such discovery may be had in arbitration, under the direction and control of the arbitrator.

VI. **If, Despite The Foregoing, The Court Believes That Discovery Is Necessary To Determine The Enforceability Of The Delegation Clause, Then The Validity Of The Arbitration Clause As A Whole Is Certainly Not Ripe For Decision.**

Plaintiffs devote a substantial portion of their brief to challenging the validity of the arbitration clause as a whole. *See* Response at 15-18. M&I will not be drawn into that fight. The delegation clause gives M&I the right to have that issue determined by the arbitrator. And if this Court concludes that it cannot determine the validity of the delegation clause without allowing plaintiff more discovery, then the record is certainly not adequate to permit adjudication of the validity of the arbitration clause as a whole, either.

VII. **M&I's Request For A Stay Is Not Dilatory.**

Ignoring the fact that their own refusal to adhere to the delegation clause is the real obstacle to the prompt resolution of their challenge to the other aspects of the arbitration clause and, ultimately, their overall claim—and rather cavalierly dismissing the potential relevance of *Concepcion*—plaintiffs accuse M&I of "attempt[ing] to indefinitely delay litigation." Response at 19. M&I is doing no such thing; it merely wants to ensure that it does not have to litigate the merits of plaintiffs' claims in court unless and until its motion to compel arbitration has been finally and authoritatively decided—a risk against which the pending Fourth Tranche Interim Scheduling Order [Dkt. 877, starting with second deadline] does not unambiguously protect.

## CONCLUSION

For the foregoing reasons, this Court should grant M&I's Motion to Compel Arbitration and Stay the Proceedings.

Dated:  December 9, 2010.

**s/Andrew S. Oettinger**
Howard A. Pollack
Michael B. Apfeld
John L. Kirtley
Andrew S. Oettinger
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, WI  53202-3590
Phone:  414-273-3500
Fax:  414-273-5198
hpollack@gklaw.com
mapfeld@gklaw.com
jkirtley@gklaw.com
aoettinger@gklaw.com

Edward M. Waller
FOWLER WHITE BOGGS
P.O. Box 1438
Tampa, FL  33601
Phone:  813-222-1137
Email: ewaller@fowlerwhite.com

Attorneys for Defendant, M&I Marshall & Ilsley Bank d/b/a M&I Bank

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of December, 2010, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Dated:  December 9, 2010.              s/Andrew S. Oettinger
                                       Howard A. Pollack
                                       Michael B. Apfeld
                                       John L. Kirtley
                                       Andrew S. Oettinger
                                       GODFREY & KAHN, S.C.
                                       780 North Water Street
                                       Milwaukee, WI  53202-3590
                                       Phone:  414-273-3500
                                       Fax:  414-273-5198
                                       hpollack@gklaw.com
                                       mapfeld@gklaw.com
                                       jkirtley@gklaw.com
                                       aoettinger@gklaw.com

                                       Edward M. Waller
                                       FOWLER WHITE BOGGS
                                       P.O. Box 1438
                                       Tampa, FL  33601
                                       Phone:  813-222-1137
                                       Email: ewaller@fowlerwhite.com

                                       Attorneys for Defendant, M&I Marshall & Ilsley
                                       Bank d/b/a M&I Bank

## SERVICE LIST

Bruce S. Rogow
BRUCE S. ROGOW PA
500 East Broward Blvd., Ste. 1930
Fort Lauderdale, FL 33394
(954) 767-8909
Fax: (954) 467-2210
guntherc@rogowlaw.com
*Plaintiffs' Lead Counsel*

Robert Cecil Gilbert
ALTERS BOLDT BROWN RASH & CULMO
4141 NE 2nd Avenue, Ste. 201
Miami, FL 33137
(305) 571-8550
Fax: (305) 571-8558
bobby@abbrclaw.com
*Plaintiffs' Lead Counsel*

Michael A. Caddell
Cynthia B. Chapman
Cory S. Fein
CADDELL & CHAPMAN
1331 Lamar Street, Ste. 1070
Houston, TX 77010
(713) 751-0400
Fax: (713) 751-0906
mac@caddellchapman.com
cbc@caddellchapman.com
csf@caddellchapman.com
*Counsel for Delphia Simmons*

Matthew D. Schelkopf
Joseph G. Sauder
Benjamin F. Johns
CHIMICLES & TIKELLIS
One Haverford Center
361 West Lancaster Avenue
Harverford, PA 19041
(610) 642-8500
Fax: (610) 642-3633
matthewschelkopf@chimicles.com
*Counsel for Delphia Simmons*

Christopher G. Hayes
LAW OFFICE OF CHRISTOPHER G. HAYES
225 South Church Street
Westchester, PA 19382
(610) 431-9505
Fax: (610) 431-1269
chris@chayeslaw.com
*Counsel for Delphia Simmons*

Barry R. Davidson
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Ste. 2500
Miami, FL 33131-3136
(305) 810-2539
Fax: (305) 810-2462
bdavidson@hunton.com
*Temporary Liaison Counsel*

David Lawrence Ferguson
The Kopelowitz & Ostrow Firm PA
200 S.W. 1st Avenue
12th Floor
Fort Lauderdale, FL 33301-4216
954-525-4100
Fax: 525-4300
Email: ferguson@kolawyers.com

Jeffrey Miles Ostrow
The Kopelowitz & Ostrow Firm PA
200 S.W. 1st Avenue
12th Floor
Fort Lauderdale, FL 33301-4216
954-525-4100
Fax: 525-4300
Email: ostrow@kolawyers.com

5728718_1