UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION,

MDL No. 2036

_____/

## OPINION SETTING STANDARDS FOR RESOLUTION OF DISCOVERY INTERROGATORIES AND PRODUCTION OF DOCUMENTS

Six Defendant Banks[1] have moved to compel discovery in several of the pending cases[2] in this multi-district litigation proceeding. Coordinated oral argument on the Motions to Compel were held December 8, 2010.[3] Counsels' proposal for the Court to set standards for counsel to follow during discovery interrogatory and production process

---

[1] Bank of America, N.A. ("Bank of America") (DE # 901); JPMorgan Chase Bank, N.A. ("Chase") (DE # 930); Union Bank, N.A. ("Union") (DE # 896); U.S. Bank, N.A. ("U.S. Bank") (DE # 955); Wachovia Bank, N.A. ("Wachovia") (DE # 907); and Wells Fargo Bank, N.A. ("Wells Fargo") (DE # 909).

[2] *Luquetta v. JPMorgan Chase Bank*, N.A., No. 1:09-cv-23432-JLK (*"Luquetta"*); *Lopez v. JPMorgan Chase Bank*, N.A., No. 1:08-cv-23323-JLK (*"Lopez"*); *Spears-Haymond v. Wachovia Bank*, N.A., No. 1:09-cv-21680-JLK (*"Spears-Haymond"*); *Garcia v. Wachovia Bank*, N.A., No. 1:08-cv-22463-JLK (*"Garcia"*); *Waters v. U.S. Bank*, N.A., No. 1:09-cv-23034-JLK (*"Waters"*); *Speers v. U.S. Bank*, N.A., No. 1:09-cv-23126-JLK (*"Speers"*) *Yourke v. Bank of America*, N.A., No. 1:09-cv-21963-JKL (*"Yourke"*); *Tornes v. Bank of America*, N.A., No. 1:08-cv-23323-JKL (*"Tornes"*); *Dolores Gutierrez v. Wells Fargo Bank*, N.A., No. 1:09-cv-23685-JLK (*"Gutierrez"*); *Martinez v. Wells Fargo Bank*, N.A., No. 1:09-cv-23834-JLK (*"Martinez"*); and *Larsen v. Union Bank*, N.A., No. 1:09-23225-JLK (*"Larsen"*).

[3] U.S. Bank's Motion was not ripe on December 8th, 2010, when the Court heard from the other Defendant Banks and therefore oral argument was not heard on their motion. Based on the arguments presented however, the Court has sufficient information on which to consider U.S. Bank's Motion, obviating the need to schedule oral argument at a future date.

by the parties to the above-styled multi-district litigation case was approved by the Court.

Counsel agreed, after determination of seven broad categories of legal issues presented by the respective motions to compel answers and production in the above-styled case, to meet and agree if possible to the application of the Court's decision to all pending motions on discovery (argued at said hearing) and (applying the standards) develop a proposed draft order for the Court's signature implementing the standards by either sustaining or overruling the raised objections. The seven broad categories (standards) are delineated below.

## I. BACKGROUND

On June 10, 2009 the United States Judicial Panel on Multidistrict Litigation transferred five actions to this Court for coordinated pre-trial proceedings, establishing this multi-district litigation proceeding known as *In re Checking Account Overdraft Litigation*, MDL No. 2036. New actions continue to be filed against these, and other, Banks alleging basically the same cause of action. Plaintiffs, are current or former checking account customers of the Defendant federally chartered banks who seek to recover (for themselves and all other customers similarly situated) alleged excessive overdraft fees for charges made to their accounts on debit card transactions. The alleged common nucleus of specific facts pled assert a common practice by Defendants, to enter charges debiting Plaintiffs' accounts from the "largest to the smallest" thus maximizing the overdraft fee revenue for themselves. In addition to the allegations about posting

order, the Complaints set forth a number of other alleged agreements, policies and practices, contended by Plaintiffs to unlawfully damage them.

Before addressing specific standards, it is advisable to articulate some of the generalizations the Court considered in the process of deciding the matters presented by Defendants' motions. There is no doubt that a district court has broad powers over its docket. Indeed, the Supreme Court has long recognized this authority:

> The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials. *Schlagenhauf v. Holder*; *Hickman v. Taylor*. But the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they "be construed to secure the just, *speedy*, and *inexpensive* determination of every action." (Emphasis added.) To this end, the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Rule 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process.

*Herbert v. Lando*, 441 U.S. 153, 177 (1979) (citations omitted).

For our purposes, the relevant inquiry for any discovery request necessarily centers on its *materiality*. In this regard, the Fifth Circuit has perhaps provided the most appropriate definition: "Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. . . . There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the [propounding party] significantly to alter the quantum of proof in his favor." *United*

*States v. Ross*, 511 F.2d 757, 762-63 (5th Cir. 1975).[1] Whether the discovery sought is material must therefore be the central question not only in a litigant's decision to seek such discovery, but in the court's determination as to whether such discovery should be permitted. Where discovery requests are aimed at obtaining discovery that is material, those discovery requests are proper. Where, however, parties pose discovery requests on facts immaterial to any relevant issue and/or inadmissable at trial, district courts act within their authority when they restrict such requests.

Next, is the increasing use of contention interrogatories. Civil discovery practice in this District has become plagued with the overuse and sometimes misuse of "contention interrogatories." Such interrogatories, which "ask[] for an opinion or contention that relates to fact or the application of law to fact," are permitted by the Federal Rules of Civil Procedure and, "when used correctly . . . can be most useful in narrowing and sharpening the issues." *Hendricks v. Mirabilis Ventures, Inc.*, No. 07-cv-661-T-17EAJ, 2008 WL 423566 *1 (M.D. Fla. Feb. 13, 2008); Fed. R. Civ. P. 33(b). However, contention interrogatories propounded early in the discovery process are often unproductive, expensive and overly burdensome. This is particularly true where the propounding party has in its position or, readily available, the identical material. This raises the logical question: "Is the requesting party simply trying to inundate an opponent for an improper purpose of forcing abandonment of the cause?" Twenty-five years ago,

---

[1] Of course, in *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all Fifth Circuit law decided prior to October 1, 1981.

United States Magistrate Judge Wayne D. Brazil for the District Court for the Northern District of California addressed this issue in an opinion that is directly on point with the issues now before the Court. *See In re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328 (N.D. Cal. 1985).

Addressing concerns that "good faith and common sense" were giving way to "the pervasiveness of gaming" and the "use of discovery for the purpose of flexing economic muscle," Judge Brazil set out standards for the use of contention interrogatories. *Id.* at 332. He first noted that Rule 33 allows contention interrogatories, but does not provide any absolute right to their use. *Id.* at 333. Accordingly, the key to determining whether contention interrogatories are appropriate is balance. Where a party could use a different discovery tool to obtain the same information while imposing less of a burden, "a court would be constrained to rule that a contention interrogatory need not be answered." *Id.*

Furthermore, the Rule provides that "the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." Rule 33(a)(2); *see also Waters Edge Living, LLC v. RSUI Indem. Co.*, No. 06cv334-RH/WCS, 2008 WL 4539463 *5 (N.D. Fla. April 22, 2008) ("Contention interrogatories are not objectionable unless further discovery is needed."). Frequently a party will not be able to provide useful answers to contention interrogatories until all discovery is completed. *In re Convergent Tech. Litig.*, 108 F.R.D. at 334. Compelling parties to respond partially to such interrogatories early in the litigation when

they will likely simply be asked to respond again, upon completion of document review or other phases of discovery, lacks finality and compounds the time, effort and cost of the litigation. *See id.* at 334, 335 ("Contention interrogatories are too often used at the outset of a litigation to harass the opposition knowing that the responses at that stage will produce little useful information."). This is particularly wasteful where, as here, many of the interrogatories are directed to the proponents' own statements and conduct. *Id.* ("Plaintiffs argue that because defendants know what their own behavior was and what the law requires, they have no real need for early answers to their contention interrogatories.").

Judge Brazil addressed this issue and crafted a procedure reflecting a "burden of justification" of the proponent of contention interrogatories, filed before most other discovery had been completed:

> The propounding party must craft specific, limited (in number) questions. The responding party must examine such questions in good faith and, where it appears that answering them would materially contribute to any of the goals [of the Federal Rules of Civil Procedure], must answer the interrogatories. . . . Where the responding party feels, in good faith, that providing early answers would not contribute enough to justify the effort involved, that party should [contact] opposing counsel to explain the basis for his position. If opposing counsel continues to press for early answers, the responding party should enter objections. . . . Thereafter, the burden would fall on the propounding party to seek an order compelling answers.

*Id.* at 339–40.

Implementation of such a procedure here would properly focus discovery on the exchange of facts and the generation of "real world data" rather than "examining the parties' contentions about the legal implications of that data." *Id.* at 338. The legal implications are better tested through motions under Federal Rule of Civil Procedure 12. *Id.* With the forgoing in mind, the Court now turns to standards which it envisions will guide the parties on not just the instant motions, but on consideration of similar discovery motions yet to be filed in a case of this magnitude.

## II. STANDARDS FOR RESOLUTION OF DISCOVERY

### A. Plaintiffs' Alternative Accounts and Credit

Defendants seek to discover whether, when, and how, each Plaintiff learned about overdraft fees charged to his or her account and/or the Bank's alleged practice of posting debits from highest-to-lowest dollar amount; whether such Plaintiff continued to use deposit-account services, with or without complaint, after discovering such fees or practices. Defendants already have this information in their own bank records, making it duplicitous to request the same from Plaintiffs. Defendants also seek to discover whether Plaintiffs could have completed the transactions entered without overdrawing his or her account (e.g., by using a credit card or by drawing on other funds available to Plaintiff), but instead voluntarily incurred overdraft charges, knowing how they are imposed.

The Court agrees with the Plaintiffs' objections and denies the Defendant Banks' Motion to Compel information regarding the alternative forms of payment the Plaintiffs'

could have used when they overdrafted their accounts. The Court finds that it is irrelevant and unduly burdensome on Plaintiffs to have to produce such sensitive information regarding their finances on accounts that are not at issue in this litigation.

### B. Communications With Financial Advisors Or Other Third Parties

Defendant Banks seek all of Plaintiffs' communications with accountants, financial advisors, or other third parties concerning their accounts, debit cards, or overdraft fees that would bear on each Plaintiff's understanding of his or her deposit agreement and, accordingly, whether each Plaintiff knowingly incurred overdraft fees.

The Court finds that discovery on this subject is not only unduly burdensome but also duplicitous. The banks seek documents issued by them to the Plaintiffs in the promotion of their banking services. It follows then that the banks have access to this information and their request is unnecessarily duplicative. To the extent that Defendant Banks seek details of conversations with Plaintiffs' employees, i.e., lawyers, accountants or advisors, it is work product. The Motion to Compel is denied.

### C. Engagement Letters And Cost-Sharing And Other Agreements Concerning The Prosecution Of The Litigation

Defendant Banks seek from Plaintiffs agreements with counsel, including any engagement letters, agreements as to who will pay fees and costs incurred in connection with this action, and any documents received from any law firm or attorney seeking Plaintiffs' participation in this action.

The Court finds that these documents are protected by attorney-client privilege. The cases Defendant Banks cite in support of their Motion to Compel involve an existing conflict of interest, between the class representative and retained counsel, giving rise to the need for discovery on engagement letters and cost-sharing agreements. On these facts, none has been alleged, and the Court finds there is no need to discover information traditionally protected by the privilege of confidential communications between an attorney and his client. The Motion to Compel these documents is denied.

### D.   Complaints In Prior Litigation And Other Proceedings

Defendants seek complaints or petitions filed previously by any Plaintiff in state or federal court lawsuits, bankruptcy proceedings, arbitrations, and administrative proceedings.

The Court finds that these documents are highly sensitive and personal in nature and are not narrowly tailored to lead to the discovery of admissible information. Nor is the prior litigation history of Plaintiffs material, even for the purpose of impeachment. Discovery of prior litigation would only serve to prejudice the factfinder (jury). What difference does it make whether Plaintiff filed ten (10) cases or twenty (20) cases previously? Defendant Banks have not persuaded the Court that these records are at all relevant to the resolution of the issues at stake in this litigation. As the Court previously mentioned, the consideration of materiality is central to the standards it propounds in this

Order. Therefore, Plaintiffs objection is well-taken and Defendants' Motion to Compel is denied.

### E. Identification (By Plaintiffs) Of Each Allegedly Improper Fee, And The Basis For Asserting Impropriety

The complaints allege that Plaintiffs "were charged overdraft fees by the Bank as a result of its practices of re-sequencing debit card transactions from highest to lowest. Defendant Banks seek from Plaintiffs identification of all alleged improper overdraft fees that resulted from re-sequencing debit card transactions from highest to lowest; to identify alleged improper overdraft fees that resulted for some reason other than re-sequencing debit card transactions from highest to lowest; and to state how Defendant Banks should have posted the transactions under the deposit agreement. The Court finds that this request is duplicitous, and that it is irrelevant and immaterial to ask the Plaintiffs how the bank could, or should have reordered their transactions. The relevant issue is did the Defendants' posting policies violate the law and damage the Plaintiffs; not how the banks could have processed (changed) their policies in order to not cause injury or violate the law. The best source of that information is found within records the banks already possess. Therefore, the Banks' Motion to Compel the identification of each alleged improper fee is denied.

### F. Identification Of Documents

The Defendant Banks seek from Plaintiffs identification of each document or communication by Defendant Banks that formed the basis for their understanding and/or

expectations regarding Defendant Banks posting practices. The Court finds that discovery on this subject is not only duplicitous but immaterial. The banks seek documents issued by them to the Plaintiffs in the promotion of their banking services. It follows then that the banks have access to this information and their request is unnecessary. Moreover, "expectations" are entirely immaterial. Controlling in this litigation is what the parties agreed to in their contracts. Not whether Plaintiff expected to get a free account or a pair of dishes when they signed on the dotted line. The Motion to Compel is denied.

### G. Discovery Related To The Purpose Of, And The Use Of Funds From, Plaintiffs' Transactions Resulting In Overdraft Fees

The Defendant Banks seek documents and information regarding the purpose and use of the transactions on which overdraft fees were assessed. The Banks argue that this information is relevant to the Banks' defense that high-to-low posting benefits customers by giving settlement priority to more important transactions, but they do not persuade the Court that the purpose for which Plaintiffs swiped their debit cards, or wrote their checks, is at all relevant to the matters at stake in this litigation. The Court finds that these requests are clearly immaterial, overboard, and unduly burdensome on Plaintiffs. Whether Plaintiff was paying her rent, purchasing a hamburger, or paying hospital bills is completely irrelevant to the ultimate determination of whether Defendant banks violated the law. Bringing in clearly irrelevant evidence will only serve to obfuscate the issues. Therefore, the Court agrees with the Plaintiffs' argument and denies the Banks' Motion to

Compel information aimed at discovering the purpose for which each Plaintiff conducted the transactions resulting in overdraft fees.

**DONE AND ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 15th day of December, 2010.

                                                JAMES LAWRENCE KING
                                                UNITED STATES DISTRICT JUDGE
                                                SOUTHERN DISTRICT OF FLORIDA

cc:    All Counsel of Record