# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS

*Garcia, et al v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 08-22463-JLK

*Spears-Haymond, et al. v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 09-21680-JLK;
N.D. Cal. Case No. 08-4610

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685-JLK
D. Or. Case No. 3:09-cv-01239-ST

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Zankich, et al. v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

---

## PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Plaintiffs, pursuant to Rules 26, 33, 34, 36 and 37 of the Federal Rules of Civil Procedure

and Rules 7 and 26.1 of the Local Rules of the United States District Court for the Southern

District of Florida, file this motion to compel against Wachovia Bank, N.A. ("Wachovia") and

Wells Fargo Bank, N.A. ("Wells Fargo") (collectively, "Defendants") seeking the production of

documents and information responsive to Plaintiffs' discovery requests.[1]

## I.    INTRODUCTION

Defendants assert blanket objections that lack substantiation or merit, and should be

summarily overruled.   Defendants' objections too narrowly restrict the nature of information

pertinent to these cases.   For instance, as this Court's prior Orders contemplate, discovery in

these actions should not be limited to the issue of high-to-low reordering, but should encompass

all overdraft fee policies and procedures.   **[DE # 305]**.   Similarly, documents and information

relating to those topics should be produced irrespective of their date of origin.   Yet, Wells Fargo

and Wachovia object to discovery beyond high-to-low reordering or predating the class period.

Their responses improperly limit the production of material, non-privileged documents:[2]

- *First*, Defendants insist they will only produce documents dated between January 1, 2002

and December 31, 2009, even though Plaintiffs seek documents before and after those dates to

---

[1] This motion is filed against Wachovia Bank, N.A. and Wells Fargo Bank, N.A., notwithstanding defense counsel's unilateral substitution of the name Wells Fargo for Wachovia in recent filings.   Wachovia continued to file pleadings and serve discovery responses in the name of Wachovia Bank, N.A., even after its 2009 merger with Wells Fargo.   Wachovia joined in the omnibus motion to dismiss **[DE # 217]**, answered the amended complaints **[DE # 503, 504]**, and served initial responses to Plaintiffs' first discovery requests.   Beginning in July 2010, however, Wachovia's new counsel unilaterally began filing papers – without this Court's permission – in which it referred to Wachovia as Wells Fargo Bank, N.A.   Although Plaintiffs requested that Defendants move to substitute a party under Rule 25, intervene under Rule 24, join a real-party-in-interest under Rule 17, or follow any other recognized procedure, opposing counsel have thus far refused to do so.   On January 6, 2010, Plaintiffs filed a motion to add Wells Fargo Bank, N.A. as an additional defendant in *Garcia* and *Spears-Haymond*. **[DE # 1030].**

[2] Wachovia and Wells Fargo, through their common counsel, take virtually identical positions on the disputed issues.   Accordingly, in the interest of economy and for the Court's benefit, Plaintiffs combine the issues into a single motion and file it, in compliance with Local Rule 26.1(H)(1), within 30 days of a known impasse regarding discovery.   *See Global Satellite Communication Co. v. Starmill U.K. Ltd.*, 2005 WL 5960933, at *2 (S.D. Fla. Nov. 17, 2005). As explained below, Defendants' Supplemental Responses to Requests for Production, dated December 9, 2010, clearly demonstrated the parties to be at an impasse.

obtain highly relevant documents concerning, *inter alia*, Defendants' decision-making processes surrounding the improper reordering of consumers' debit card transactions.

- *Second*, in response to requests concerning "electronic transactions," Defendants state they intend to restrict their production to documents pertaining solely to the subset of "debit card transactions" – despite the fact that the consequences of high-to-low ordering upon debit transactions can be discovered only through an analysis of all checking account transactions.

- *Third*, Defendants unilaterally and impermissibly revise discovery requests to narrow their scope and to shield important documents from discovery. For example, while Plaintiffs request materials relating to Defendants' overdraft fee policies and practices, Defendants respond that they will produce documents relating only to the reordering of transactions. Similarly, while Plaintiffs request all documents relating to contracts, agreements *and communications* with third parties in connection with overdraft policies, Defendants agree to produce "agreements and contracts" – but not the more salient communications.

- *Fourth*, several responses indicate that Defendants intend to withhold production of highly relevant *internal* documents describing their overdraft policies, limiting production to documents they made available to customers and the public.

- *Fifth*, Defendants refuse to provide information concerning the total overdraft fees they assessed throughout the United States. Instead, they limit their response to States in which class representatives reside, even though the nationwide data directly relate to claims asserted on behalf of the putative nationwide classes.

The Court's Revised Scheduling Order **[DE # 878]** directs Plaintiffs to move for class certification by April 25, 2011. With this deadline fast approaching, Plaintiffs respectfully

request that the Court overrule Defendants' objections and order a fully responsive production by January 31, 2011.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiffs' Discovery Requests

On May 13, 2010, the date on which discovery opened, Plaintiffs served ***identical*** written discovery requests on Wachovia and Wells Fargo.  *See* Declaration of Ari Brown in Support of Plaintiffs' Motion to Compel ("Brown Decl.") attached as Exhibit 1A; Declaration of Richard D. McCune in Support of Plaintiffs' Motion to Compel ("McCune Decl.") attached as Exhibit 2A. Each request is specific, and narrowly tailored to produce documents and information material to Plaintiffs' claims.  The requests fall into six general categories:

(1)     Defendants' *internal records* of policies and procedures concerning processing and posting of checking account transactions and overdraft fee assessments;[3]

(2)     Defendants' *public disseminations* of information concerning policies and procedures relating to checking account transactions and overdraft fees;[4]

(3)     Defendants' decision-making processes concerning overdraft fees and checking account posting practices;[5]

(4)     Defendants' motives for adopting the practices alleged to be wrongful;[6]

(5)     Information from which Plaintiffs can identify each transaction that was the basis for an overdraft fee, and the databases Defendants used to process and record transactions;[7] and

(6)     Information relating to the named Plaintiffs' checking accounts and transactions.[8]

---

[3] *See* RFP Nos. 9, 13, 14, 15, 18, 19, 20, 21, 22, 24, 46, 47, 63, 72, 73.
[4] *See* RFP Nos. 4, 5, 6, 11, 12, 17, 26, 27, 44, 48, 55-58, 62, 72, 75.
[5] *See* RFP Nos. 37, 49, 71.
[6] *See* RFP Nos. 23, 25, 28, 29, 30, 34, 35, 36, 38-43, 53, 54, 59, 64, 65, 67.
[7] *See* RFP Nos. 7, 18, 19, 20, 41, 63; Int. Nos. 2, 3.
[8] *See* RFP Nos. 1, 2, 3, 7, 8.

**B.     Wachovia's Responses to Plaintiffs' Discovery**

On June 24, 2010, Wachovia, then represented by Morrison Foerster, LLP, provided incomplete, boilerplate responses to Plaintiffs' requests for production of documents and interrogatories.  *See* Brown Decl., Exh. 1A. Plaintiffs conferred with Wachovia's counsel several times in an attempt to resolve ambiguities and obtain Wachovia's commitment to make a full production.  When counsel for Wachovia asserted that Plaintiffs' discovery requests were vague or ambiguous, Plaintiffs provided clarification, and agreed to limit the scope of other requests that Wachovia claimed were overbroad or unduly burdensome.  Brown Decl., Exh. 1A ¶ 5.

For several months, Wachovia refused to produce any materials or engage in any discovery until the Eleventh Circuit resolved the jurisdictional issue raised by *Cappuccitti v. DirecTV*.[9]  Wachovia's counsel, however, represented that several attorneys were using that time to amass responsive documents, identify privileged documents, and prepare documents for immediate production following resolution of *Cappuccitti*.  Brown Decl., Exh. 1D. While counsel repeatedly stated that Wachovia would produce all responsive documents, it soon became apparent that Wachovia intended to withhold large numbers of documents on relevance grounds.

On October 20, 2010, Wachovia's new counsel, Covington & Burling, LLP, served "Supplemental Responses to Plaintiffs' Requests for Production."  These responses further restricted the already-restricted scope of documents Wachovia had committed to produce, making far more limited commitments. *See* Brown Decl., Exh. 1B.

At a subsequent meet-and-confer session, Defendants' counsel (representing both Wachovia and Wells Fargo) stated that Defendants would maintain the asserted temporal limits

---

[9]  The informal stay occasioned by *Cappuccitti* lasted from July 19 until October 16, 2010.

on production of all documents, but agreed to reconsider whether Defendants would agree to produce documents other than those regarding debit card transactions.  On December 9, 2010, Wachovia served its second supplemental responses to Plaintiffs' requests for production.  *See* Brown Decl., Exh. 1A ¶ 7.  These additional responses indicated Defendants would stand on all their objections, creating the impasse that necessitated this motion.

**C.      Wells Fargo's Responses to Plaintiffs' Discovery**

In response to Plaintiffs' discovery requests, Wells Fargo similarly asserted a number of improper objections and limitations.  *See* McCune Decl., Exh. 2A.  Plaintiffs conferred with Wells Fargo's counsel several times in an effort to resolve the disputed responses.  *See* McCune Decl., Exh. 2A ¶ 5.  After the informal stay resulting from *Cappucitti* was lifted and following additional meet-and-confers, Wells Fargo, on December 9, 2010, served supplemental responses that were identical to Wachovia's.

**D.      Unresolved Disputed Issues Relating to Defendants' Responses**

The parties resolved some issues relating to Defendants' discovery responses.  However, the parties were not able to resolve several outstanding issues, described briefly below.

**1.      Defendants' Unilateral Time Limitations.**

In response to many of Plaintiffs' document requests, Defendants unilaterally impose a temporal limitation, stating they will only produce documents created between January 1, 2002 and December 31, 2009.[10]  Plaintiffs request that Defendants be ordered to produce all responsive documents – without temporal limitation – as these documents are relevant and material.

---

[10] The disputed responses are to RFP Nos. 9, 11, 13, 14-24, 28-30, 38-54 and 63-67.  *See* Brown Decl., Exh. 1A; McCune Decl., Exh. 2A.

**2.      Defendants' Unilateral Limitation to Debit Card Transactions.**

Plaintiffs seek documents on a number of topics relating to electronic transactions, a term used in the banking industry and used specifically by Wells Fargo in its Account Agreement.  Wells Fargo in the agreement defines "electronic transactions" as comprising ACH, ATM and POS transactions.[11]  Even so, Defendants unilaterally limit their production to documents relating to "debit card transactions."[12]  Plaintiffs request that Defendants be ordered to produce all responsive documents, not merely those relating to debit card transactions, because documents relating to all electronic transactions are plainly relevant to key issues in these cases.

**3.      Defendants' Unilateral Narrowing of Plaintiffs' Requests.**

In many responses Defendants state they will provide responsive documents, yet, in the process, they unilaterally narrow this commitment by repeating back only portions of the requests.  For example, in RFP Nos. 9, 17 and 19, Plaintiffs seek materials pertaining to various aspects of Defendants' overdraft practices.   Defendants restrict their responses to those documents relating to the reordering of transactions.  *See* Brown Decl., Exh. 1B.  Thus, Defendants will not disclose the same type of records that happen to relate to other troublesome bank practices that Plaintiffs believe contributed to their injuries.  Likewise, RFP No. 23 seeks documents "reflecting all contracts, agreements, or communications" with third parties, including banking consultants, about the bank's overdraft practices.  *See id*.  In response, Defendants say only that they will produce "contracts and agreements," signaling an intent to

---

[11]  ACH transactions are automated clearinghouse transactions, such as online bill payments. ATM transactions are transactions executed at automated teller machines, including cash withdrawals, bill payments and funds transfers.  POS transactions are point-of-sale transactions, which are generally debit card transactions.

[12]  The disputed responses are to RFP Nos. 13, 14, 15, 17-26, 31, 35, 39-42, 44-49, 57 and 58. *See* Brown Decl., Exh 1A; McCune Decl., Exh. 2A.

withhold the communications and other documents regarding these third-party consulting arrangements. The Court should establish a standard that precludes the unilateral recasting of Plaintiffs' requests, requiring Defendants to respond to discovery requests as written.

**4.      Defendants' Refusal to Produce Internal Documents.**

In RFP No. 12, Plaintiffs request that Defendants "[p]roduce all documents in which you define, describe or otherwise use the terms 'Overdraft' and/or 'Overdraft fees.'" Defendants agree only to produce "general documents Wachovia *made available to customers* that define or describe the terms 'overdraft' and/or 'overdraft fees' . . . ." Brown Decl., Exh. 1A; McCune Decl., Exh. 2A (emphasis added). Plaintiffs request that Defendants be ordered to produce all responsive documents. The Banks' internal documents concerning overdraft fees touch upon core issues in this litigation.

**5.      Defendants' Refusal to Provide Complete Overdraft Fee Information.**

In Interrogatory No. 11, Plaintiffs seek state-by-state aggregate overdraft fee information for each year since 2002. The requested information includes the total amount of overdraft fees assessed and the number of accounts that were assessed multiple overdraft fees. Defendants refuse to provide the information for all States in which they conduct business in the United States, except for those States where the named class representatives maintained accounts. Wells Fargo also refuses to provide archived information. McCune Decl., Exh. 2C.[13] Plaintiffs ask that Defendants be ordered to respond to the interrogatory in full because the information is directly relevant and material to the issues here.

---

[13] Exhibit 2C is not attached to this Motion because it contains information designated by Wells Fargo as "Highly Confidential" under the Stipulated Protective Order entered July 16, 2010. **[DE # 688]**. Plaintiffs have today filed an Unopposed Motion to File Exhibit 2C to Plaintiffs' Motion to Compel Under Seal, in accord with S.D. Fla. L.R. 5.4.

## III.   ARGUMENT

### A.   Legal Standard

Rule 26 establishes a broad scope for civil discovery.  "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  As this Court recently observed, the liberal discovery rules under which a party must produce all relevant information are tempered by the requirement that the inquiry be material to the claims for relief.  *See* Order Setting Standards for Resolution of Discovery Interrogatories and Production of Documents, at 3 **[DE # 1016].**

### B.   Plaintiffs' Discovery Requests Seek Information Material to the Claims and Defenses in These Actions

Plaintiffs' document requests are precisely worded to obtain information that is material – indeed critical – to proving the elements of their claims.  Plaintiffs intend to establish that Defendants (1) conceived and implemented a high-to-low debit posting order in bad faith, for the exclusive purpose of increasing their profits exorbitantly, (2) with the full knowledge that their fee revenues would increase the most if customers did not fully understand how Defendants were posting and processing transactions; and therefore (3) engaged in deceptive practices to maximize the revenues gained from the wrongful reordering, all of which (4) violated their customers' reasonable and justified expectations.  As explained below, each of the five categories of documents or information sought in this motion bears on one or more of these factors, or on the calculation of class-wide damages.

1.    **The Court Should Require Defendants to Produce Relevant Documents Irrespective of Their Date of Origin**

Defendants' refusal to produce any documents created before January 1, 2002, or after December 31, 2009, cannot stand.  Regardless of when they were created, responsive documents must be produced if they relate to the subject matter of this litigation: the Banks' policies and procedures surrounding their checking account overdraft fee programs.  This Court should make it clear that nothing in the Federal Rules authorizes or condones the temporal limits on relevant discovery that Defendants seek unilaterally to impose.  These objections should be overruled because under the Federal Rules' liberal regime, discovery sweeps broadly to allow Plaintiffs to develop their case.

Moreover, discovery is not limited to the proposed class period or limitations period. "The proposed class period does not determine the period of relevancy for discovery purposes." *Brody v. Zix Corp.*, 2007 WL 1544638, at *2 (N.D. Tex. May 25, 2007).  Thus, courts routinely order defendants to produce relevant documents created prior to the class period.  For example, one court rejected a defendant's "attempt to confine discovery to a narrow period beginning three months before the start of the class period and ending three weeks after the class period closes" as "artificial, arbitrary and designed to avoid the production of relevant documents." *In re Seagate Tech. II Sec. Litig.*, 1993 WL 293008, at *1 (N.D. Cal. June 10, 1993).[14]

Plaintiffs carefully designated which of their RFPs sought documents predating the class period and which can be temporally limited.  While it is appropriate to limit discovery of

---

[14] *See also Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 199 n. 10 (N.D. Cal. 2004) (explaining that even though events that occurred before the class period were not independently actionable, the evidence still may be admitted as relevant background evidence supporting the claims); *Grider v. Keystone Health Plan Central, Inc.*, 2007 WL 2874423, at *9 (E.D. Pa. Sept. 27, 2007) (reasoning that it was unlikely the alleged RICO activity suddenly began and ended on the dates bounding the class period, noting that "Plaintiffs are entitled to discovery on how and when those practices began, who knew about them, how much harm was inflicted on the class by them and other information without time limits sought to be imposed by Defendants.").

information such as account statements or interactions with named Plaintiffs to the class period, it is *not* appropriate to apply a temporal limitation to information regarding Defendants' overdraft and posting policies and procedures, the decisions to implement them, the motives behind them and information Defendants disseminated to the public.   Such information is relevant irrespective of its date.

As one example, to demonstrate that Defendants violated the covenant of good faith and fair dealing, Plaintiffs will benefit from information showing why Defendants decided to approve, rather than decline, insufficient funds transactions, to bypass obtaining consent from consumers, and to process debit transactions out of chronological order in batches, sometimes days after the transactions themselves.   This is not a theoretical discussion.   It is undisputed there are material documents created *before* January 1, 2002 and after December 31, 2009 that Defendants are refusing to produce based on the artificial time limitation.   Following a two-week bench trial in *Gutierrez v. Wells Fargo*, U.S. District Judge William Alsup of the Northern District of California found that Wells Fargo had engaged in *illegal profiteering and gouging* of its customers as a result of its scheme to post debit cards from high to low.   The Court awarded Wells Fargo's California customers approximately $203 million in restitution, and enjoined Wells Fargo from continuing its high-to-low posting practice in California.   **[DE # 926, Exh. 2, at 89–90]**.   Some of the most important documents introduced in *Gutierrez* concerning Wells Fargo's decisions to increase overdraft fees by manipulating posting order were made ***prior to 2002***.   In fact, Wells Fargo conceded at trial that it began posting debit cards from high to low in April ***2001***.   *Id*. at 26.   Thus, most of the business plans, market research, e-mails, memorandums and other documents discussing and preparing for the change in practice occurred or were created ***before*** 2002.   Therefore, inquiry as to the reasons behind challenged corporate decisions

is highly relevant and clearly warranted.  *See, e.g.*, *Lang v. Intrado, Inc.*, 2007 WL 3407366, at *3 (D. Colo. Nov. 13, 2007) (compelling responses as to the defendant's motive or intent); *Lexington Ins. Co. v. Commonwealth Ins. Co.*, 1999 WL 33292943, at *6 (N.D. Cal. Sept. 17, 1999) (compelling production of the defendant's policies and underwriting documents from before the time period in question, because they "may be relevant to the intent of the parties").

Wachovia has also refused to produce important documents based on this improper time limitation.  Like Wells Fargo, Wachovia instituted high-to-low posting order and at least some of the other allied practices well ***before*** 2002.  Consequently, Plaintiffs expect that many relevant documents detailing Wachovia's posting order, batch posting, and commingling processes – documents that show the Bank's motives and describe its strategies – date from when Wachovia first instituted its debit overdraft programs and re-evaluated them.  This Court and the jury should have the benefit of considering documents from when Wachovia made the key decisions concerning the practices at issue.

Likewise, Defendants' unilateral cut-off date of December 2009 is an arbitrary, inappropriate restriction that eliminates a variety of relevant documents from production in one fell swoop.  Significant checking account changes occurred ***after*** December 31, 2009, including:

- Changing the posting order of debit card transactions in California from high-to-low to chronological.  *See* McCune Decl., Exh. 2E (Deposition of Debbie Chacon at 16:7–17:13).

- Ceasing the practice of charging customers overdraft fees for debit card transactions, except when the customer has expressly "opted in," *i.e.*, voluntarily agreed to be charged overdraft fees on debit cards.  *See* McCune Decl., Exh. 2E (Deposition of Debbie Chacon at 14:12–15:16).

These and other changes are likely to be the subject of business plans, e-mails, memoranda and other documents that demonstrate the effect of the high-to-low posting of electronic transactions

– as well as the ease with which Defendants can post them chronologically.  There can be no justification for withholding these documents based on an arbitrary cut-off date.

>    **2.**      **The Court Should Order Defendants to Produce All Documents Relating to Electronic Transactions**

Plaintiffs require information about Defendants' treatment of electronic transactions to calculate accurate damages to the class.  Defendants, however, unilaterally substituted "debit card transactions" for "electronic transaction" in more than 25 responses, including requests for internal communications concerning the purpose of re-sequencing transactions (RFP No. 14), for information relating to the assessment of fees for transactions initiated when the customer had sufficient funds in their account (RFP No. 15), for employees' instructions for responding to customer complaints about overdraft fees or posting order (RFP No. 17), and in numerous other requests.[15]  Request No. 39 and Wells Fargo's response throw the point into stark relief:

> REQUEST NO. 39:  Produce all documents created, received or sent at any time, including prior to January 1, 2002, regarding your reason, purpose, rationale or justification for posting ***electronic debit transactions*** in the order of highest to lowest dollar amount.

> Response:

> Wells Fargo will perform a reasonable search and produce, to the extent found, all nonprivileged documents from January 1, 2002, to December 31, 2009, that discuss the Bank's reasons, purposes, and/or rationale for implementing and maintaining its posting order for ***debit-card transactions*** in consumer checking accounts.

McCune Decl., Exh. 2B (Wells Fargo's Supplemental Responses) (emphasis added).

In its 2006 Deposit Account Agreement, Wells Fargo itself uses the term "*items*" – not debits – in the section discussing posting order.  McCune Decl., Exh. 2D at 27.  The agreement defines "*Items*" as including "a check, substitute check . . . and electronic transaction (including

---

[15] *See* Supplemental Responses to RFP Nos. 13, 14, 15, 17-26, 31, 35, 39-42, 44-49, 57, 58 (Brown Decl. Exh. 1B; McCune Decl. Exh. 2B).

ACH, ATM and POS)." (*Id.* at 8.)  Wells Fargo uses the phrase "electronic transaction," as opposed to "debit card transactions," for a simple reason: it does not post debit cards separately, but rather as part of a larger group of transactions that includes electronic transactions, such as ACH transactions. *See* fn. 10, *supra*. This "batching" of transactions affects the fees imposed as a result of the high-to-low ordering: the more types of transactions grouped together for high-to-low posting, the greater the amount of overdraft fees resulting from all the transactions. The illustration below shows the effect of posting debit card transactions together with ACH transactions, as compared with posting debit card transactions separately, before ACH transactions.

Effect of Grouping for High-to-Low Posting of Electronic Transactions

– Debit Cards Grouped *Separately From* ACH Transactions –
*Then One Overdraft Fee*

| **Transaction Type** | **Date of Transaction** | **Transaction Amount** | **Balance** |
|---|---|---|---|
| Beginning Balance | | | **$25** |
| Debit Card | 1/6/2010 | $10 | **$15** |
| Debit Card | 1/5/2010 | $5 | **$10** |
| ACH | 1/8/2010 | $30 | **-$20** |

Effect of Grouping for High-to-Low Posting of Electronic Transactions
– Debit Cards Grouped *Together With* ACH Transactions –
*Then Three Overdraft Fees*

| **Transaction Type** | **Date of Transaction** | **Transaction Amount** | **Balance** |
|---|---|---|---|
| Beginning Balance | | | **$25** |
| ACH | 1/8/2010 | $30 | **-$5** |
| Debit Card | 1/6/2010 | $10 | **$15** |
| Debit Card | 1/5/2010 | $5 | **$20** |

Proving damages resulting from the high-to-low posting requires evidence of the initiation, receipt, and posting of all transactions.  Plaintiffs must be permitted this information.

### 3.   The Court Should Not Condone Defendants' Systematic Unilateral Narrowing of Responses

As described above, Defendants' responses repeatedly revise discovery requests to unilaterally narrow the scope of the responses and shield important documents.  This is not permissible.  Courts do not allow defendants "to evade and frustrate discovery with great ease" where plaintiffs seek relevant information.  *Smith v. Ford Motor Co.*, 1981 WL 380687, at *4 (N.D. Ga. Apr. 2, 1981) (granting plaintiffs' motion to compel).

In addition to the examples above – limiting requests for all overdraft policies to reordering; limiting third-party production to agreements but not communications – consider the following exchange:

> REQUEST NO. 58:   Produce exemplar copies of all advertisements and other marketing materials you used to promote your ***checking accounts***.  [Emphasis added.]
>
> Response:
>
> Subject to and without waiving all previously stated general and specific objections, Wells Fargo supplements the response to this document request to state as follows.  Wells Fargo will perform a reasonable search and produce, to the extent found, exemplar copies of any advertisements and marketing materials from January 1, 2002, to December 31, 2009, ***discussing debit cards*** that Wachovia and Wells Fargo made generally available to consumer checking account customers. [Emphasis added.]

Brown Decl., Exh. 1C (Wachovia's Second Supplemental Responses).  The Bank seems to deliberately misread the request, which reasonably seeks information concerning marketing of checking accounts that could bolster Plaintiffs' allegations of deception.  The Court should not tolerate such recasting of discovery requests, but should require production of all materials responsive to Plaintiffs' requests as actually drafted – not as Defendants wish they were drafted.

### 4.     The Court Should Require Defendants to Produce Their Internal Records

Defendants cannot reasonably withhold documents showing their internal policies and procedures regarding overdraft fees.  Indeed, this litigation arises from injuries sustained as a result of these very policies and procedures.  Yet, somewhat amazingly, Defendants' responses indicate their production will be restricted to "general documents Defendants made available ***to customers*** that define or describe the terms 'overdraft' and/or 'overdraft fees' . . . ."  Brown Decl., Exh. 1B (RFP No. 12) (emphasis added).

Make no mistake: to allow Defendants to limit discovery in this fashion would be to allow them to hide documents of the utmost importance to these cases.  *See Bradway v. Am. Nat'l Red Cross*, 132 F.R.D. 78, 79 (N.D. Ga. 1990) (compelling production of "business records that reveal internal, non-public Red Cross policies and procedures"); *United States v. Stenzel*, 2006 WL 3196500, at *1 (M.D. Fla. Sept. 15, 2006); *Parker v. Kroger Co., Inc.*, 1977 WL 90, at *3 (N.D. Ga. Mar. 18, 1977) (compelling production of "historical information as to defendant's internal employment policies and practices").

Defendants' internal methods for processing and manipulating debit transactions lie at the heart of these cases. This requested information on how Defendants conceived, implemented and maintained these practices encompasses how Defendants sequenced electronic transactions, how they batched different types of transactions, how they set the posting order for the different transaction types, and how they processed the information required to approve the different transaction types.  ***This information is exclusively within Defendants' possession.  It cannot be obtained from any other source***.  Plaintiffs need the information to determine which transactions were subject to wrongful practices, to ascertain the affected class, and to calculate damages to the class.

15

Defendants' internal policies and procedures will be central to the upcoming class certification inquiry. *See, e.g.*, *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 612 (9th Cir. 2010) (en banc) (affirming class certification order based on the Plaintiffs' submission of "substantial evidence of Wal-Mart's centralized firm-wide culture and policies."). Plaintiffs expect that Defendants' class-wide policies will demonstrate the common nature of the evidence supporting Plaintiffs' claims. Given the looming class certification deadline, the Court should order the *immediate* production of all responsive internal documents in Defendants' possession.

>    **5.    The Court Should Not Condone Defendants' Refusal to Provide Complete Overdraft Fee Information**

Defendants' attempt to limit their production of overdraft fee information to states in which class representatives reside, and to unarchived information, is equally untenable. The national figures concerning their fee income relate directly to their motives for adopting the bookkeeping trick, and to the ill-gotten gains they reaped from exploiting consumers everywhere. Defendants' position is belied by the fact that Plaintiffs clearly assert claims on behalf of nationwide classes. There has been no contention that Defendants cannot retrieve the archived data. It should all be produced forthwith.

> **D.    Defendants Should Be Ordered to Immediately and Fully Produce All Responsive Documents**

Plaintiffs need the responsive documents *now*. Many of them directly bear on Plaintiffs' motions for class certification, due less than four months from now. Plaintiffs are entitled to full discovery before the Court can fairly rule on significant motions, including motions for class certification. *See Fernandez v. Bankers Nat'l Life Ins.*, 906 F.2d 559, 570-71 (11th Cir. 1990). Documents such as those showing Defendants' internal deliberations and decisions on reordering debit transactions and maximizing overdraft fees constitute relevant evidence that will be used to support certification of the proposed class. Plaintiffs must have these documents as soon as

possible so they can take fully informed depositions and prepare for class certification.  Without the responsive documents, and without deposition testimony elicited based on them, Plaintiffs will be prejudiced in their efforts to present the Court with a full evidentiary record.

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court overrule Defendants' objections, reject their improper limitations on the scope of discovery, and order them to produce all responsive documents and information by January 31, 2011.

## <u>LOCAL RULE 7.1 CERTIFICATE</u>

Pursuant to Local Rule 7.1, I hereby certify that counsel for Plaintiffs has conferred with counsel for Defendants regarding the issues raised in this motion, but the parties have been unable to resolve the matters in dispute.

Dated:  January 7, 2011.

Respectfully submitted,

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
Tel:  (305) 571-8550
Fax:  (305) 571-8558

*Plaintiffs' Lead Counsel*

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P. A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. DS 5343
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No. 0188015
mhutts@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

*Plaintiffs' Executive Committee*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

### CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, Florida 33137
bobby@alterslaw.com