**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

**THIS DOCUMENT RELATES TO:**

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834-JLK
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685-JLK
D. Or. Case No. 3:09-cv-01239-ST

*Zankich, et al v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23186-JLK
W.D Wash. Case No. C-08- 1476-RSM

---

**PLAINTIFFS' MOTION TO COMPEL PRESERVATION OF TRANSACTIONAL DATA
AND TO PRECLUDE AFFIRMATIVE DEFENSES AND EVIDENCE RELATED
TO DESTROYED TRANSACTIONAL DATA**

Plaintiffs in the above-captioned actions ("Plaintiffs") hereby move the Court for an order: (a) compelling Defendant Wells Fargo Bank, N.A. ("Wells Fargo") to immediately cease its intentional destruction of relevant transactional data stored in its computer systems, and to preserve such data going forward; and (b) precluding Wells Fargo from pursuing affirmative defenses or introducing evidence related to either the transactional data that Wells Fargo has improperly destroyed to date or the absence of such data from the record.

## I.  INTRODUCTION

In its Pre-Trial Order No. 1, dated September 14, 2009, this Court reminded the parties of their obligation to "preserve evidence that may be relevant to this action." (DE # 60 at ¶ 9.) Despite this duty, Wells Fargo admits that it has been intentionally and systematically purging, and continues to purge, transactional data from its computer systems that is highly relevant to Plaintiffs' claims, Wells Fargo's defenses, and the measurement of class damages/restitution in these actions. According to Wells Fargo's own employee-witness, the data that Wells Fargo is destroying includes, *inter alia*, the only consistently reliable source of the authorization date and time for a significant number of the customer transactions at issue in these cases (*i.e.*, the date/time debit card transactions were authorized), information that is plainly relevant to both Wells Fargo's liability for its alleged re-sequencing of transactions and the calculation of damages/restitution in this litigation. Similarly, Wells Fargo has been systematically purging the only record of the "available balance" in customers' accounts at the time transactions are authorized, information that is plainly relevant to Plaintiffs' claims that Wells Fargo charged customers overdraft fees for transactions they had sufficient funds in their accounts to cover, and that Wells Fargo failed to inform customers that the "available balance" information the bank provided to them can be inaccurate and result in excessive overdrafts.

Wells Fargo has long been aware that the data in question is relevant and should be preserved. For example, in the related case of *Gutierrez v. Wells Fargo, N.A.*, Case No. 07-5923 WHA (N.D. Cal.) (hereinafter, the "*Gutierrez* case"), the plaintiffs sought Wells Fargo's transactional data for its California customers in order to calculate the proper amount of restitution for the class members. Wells Fargo did not provide plaintiffs with the data that is at issue in this motion—*i.e.*, the original data logged directly in its transaction processing systems—but instead produced only *reports* which contained *some*, but not all, of the information logged by its systems. Among other information missing from these reports was: (a) the authorization time (or "time stamp") for some debit card transactions; and (b) the "available account balances" represented to customers at the time of their transactions. The incomplete and scattered nature of these reports required plaintiffs and their expert, Arthur Olsen, to spend considerable time and resources managing these deficiencies, expenditures that would have been unnecessary had the bank retained and produced the original data. Wells Fargo and its experts, for their part, repeatedly tried to use the absence of this information and the purported unreliability of the information in the reports to argue that plaintiffs could not accurately measure class restitution. Likewise, the incomplete nature of the reports that Wells Fargo retained and produced hampered the plaintiffs' ability to pursue claims regarding the "available balance" information the bank provided to customers.

Now, asked in this litigation to preserve the complete, original transactional data that is logged in its systems, Wells Fargo refuses to do so, arguing that it does not need to because such data is purportedly "duplicative" of the information in the reports it is preserving (*i.e.*, the same reports produced to plaintiffs in *Gutierrez*). Wells Fargo knows full well that is not true, and that its data systems at issue—the "Hogan," "RDS," and "Settlement" systems—log relevant

information that is not contained in the reports the bank is preserving. Wells Fargo's continued destruction of the data in its systems would prejudice Plaintiffs considerably. The Court should therefore order Wells Fargo to immediately cease its destruction of the original data, and to preserve such data going forward.

Moreover, Wells Fargo's improper destruction of relevant transactional data to date has already significantly prejudiced Plaintiffs' ability to prosecute their claims against Wells Fargo and to respond to Wells Fargo's defenses. As a matter of equity, to prevent Wells Fargo from gaining an unfair advantage by its improper spoliation of evidence, the Court should exercise its discretion to preclude Wells Fargo from raising defenses and introducing evidence that explicitly or implicitly relate to the destroyed evidence or the absence of such evidence from the record, including, *inter alia*, defenses and evidence regarding the bank's purported inability to post customers' debit card transactions chronologically, the ability to measure class damages/restitution by comparing Wells Fargo's actual posting practice during the class period (*i.e.*, high-to-low) to chronological posting, and the availability of "available balance" information that was provided to customers at the time of their transactions.

## II.     BACKGROUND

Despite an express obligation to preserve relevant evidence, Wells Fargo has intentionally destroyed, and continues to destroy, highly relevant transactional data that its processing systems log and that is not comprehensively available from another source. As detailed below, Wells Fargo's destruction of such data has been carried out systematically, pursuant to company-wide policies, by allowing the data in question to automatically purge or "age-off" from the bank's computer systems not long after the data in question is created and the underlying transactions are consummated.

      A.      **The Transactional Data That Wells Fargo is Destroying.**

The relevant transactional data that Wells Fargo has been allowing to "age off" includes:

      1.      Transactional data from Wells Fargo's **"Hogan" system**, which processes and posts day-to-day transaction activity for customers. The Hogan system receives authorization information from the other two systems at issue in this motion (the RDS and Settlement systems), including information from the Settlement system regarding which transactions to "hold" and "post," and adjusts customers' available balances during the course of the day. The information recorded in the Hogan system includes the date and time of authorization for transactions and the "available balance" at the time of each transaction. Wells Fargo's policy is to purge the data from its Hogan system after approximately 61-90 days (*i.e.*, data for a transaction is purged approximately 61-90 days after the transaction occurs). *See* Declaration of Roger N. Heller, filed herewith ("Heller Decl."), Ex. A, at Response to Irog No. 10; Ex. B (Mark Lentz *Gutierrez* Decl.), ¶¶ 4-7, 9.

      2.      Transactional data from Wells Fargo's **"RDS" system**, which receives electronic authorization requests for debit card transactions, forwards such requests to the Hogan system (described above) for approval or denial, and then relays the authorization responses back to the requestor. The RDS system also forwards completed authorizations to Wells Fargo's Settlement system (described below). The RDS system records, among other information, the date and time of authorization for transactions and the available balance at the time of each transaction. Wells Fargo's policy is to purge the data from its RDS system after two (2) days. *See* Heller Decl., Ex. A, at Response to Irog No. 10; Ex. B (Mark Lentz *Gutierrez* Decl.), ¶¶ 5-6; Ex. C (Dawn Avrech *Gutierrez* Depo.), 12:19-16:11, 20:21-21:14.

      3.      Transactional data from Wells Fargo's **"Settlement" system**, which receives information from the RDS system and other systems in connection with the payment of debit card and other transactions and the posting of such transactions to customers' accounts. The Settlement system informs the Hogan system which transactions to "hold" and "post." The Settlement system records, among other information, the date and time of authorization for transactions and the available balance at the time of each transaction. Wells Fargo's policy is to purge the data from its Settlement system after 180 days. *See* Heller Decl., Ex. A, at Response to Irog No. 10; Ex. B (Mark Lentz *Gutierrez* Decl.), ¶¶ 6, 12; Ex. C (Dawn Avrech *Gutierrez* Depo.), 20:21-21:14.

      B.      **Problems With The Data Reports That Wells Fargo Does Maintain.**

In lieu of preserving and producing the original data logged into its Hogan, RDS and Settlement systems, Wells Fargo represents that it is preserving the transactional data that is recorded in various "reports" generated from its processing systems. These are the same reports that Wells Fargo made available to the plaintiffs and their expert in the *Gutierrez* case. *See*

Heller Decl., Ex. D (Letter from Wells Fargo' counsel) at 2-3. Wells Fargo asserts that the original data logged into, and then purged from, its systems is "duplicative" of the relevant data contained in its "reports." However, Wells Fargo knows that is not accurate. The shortcomings of Wells Fargo's data "reports" include:

### 1. Authorization Date and Time Information.

Wells Fargo's data reports contain the authorization date and time for most of the putative class members' debit transactions, but such reports are incomplete and otherwise problematic. As Wells Fargo is well aware from the *Gutierrez* case, Wells Fargo's data reports are missing the "time stamp" information for some of debit card transactions (*i.e.*, the time of authorization cannot be determined from the reports for these transactions). *See* Heller Decl., Ex. E (*Gutierrez* trial testimony) at RT 879:9-880:25 (Olsen); *Gutierrez v. Wells Fargo Bank, N.A.*, --- F.Supp.2d ----, 2010 WL 3155934, *59 & n.28 (N.D. Cal. Aug. 10, 2010) (Judge Alsup finding that the "the bank did not maintain date/time information for a small percentage of its customers' debit-card transactions"). Moreover, for those transactions where the bank's reports *do* contain the authorization date/time, because the relevant data is scattered among the various reports and there is no direct link between the authorization information in the various reports, identifying the authorization date/time for such transactions requires considerable time and effort and the application of a method (or "logic") to match posted transactions with their authorization date/time. *See* Heller Decl., Ex. E; Ex. F (Arthur Olsen *Gutierrez* Depo.), 97:15-99:1. While plaintiffs' expert in the *Gutierrez* case, Mr. Olsen, was able to (with significant effort and ingenuity) effectively manage these data deficiencies to the Judge Alsup's satisfaction, such deficiencies explain why Wells Fargo's own employee acknowledged at his deposition that the original transactional data recorded in Wells Fargo's computer systems (*i.e.*, the data at issue in this motion) is the only consistently reliable source of the authorization date/time for customers'

debit card transactions. *See* Heller Decl., Ex. G (Mark Lentz MDL Depo.), 36-40, 63-71. However, such information—relevant Class member data—is being purged every day pursuant to Wells Fargo's internal policies.

### 2. Available Balance Information

As discussed above, multiple Wells Fargo processing systems record the "available balance" in customers' accounts at the time transactions are authorized. This information is *not* preserved in any of the reports or other transactional data that Wells Fargo maintains long term.[1] Rather, on any given day, Wells Fargo only has this information for the immediately prior 180 days (*i.e.*, the data in the Settlement system before it is purged pursuant to Wells Fargo's policy). *See* Heller Decl., Ex. B (Mark Lentz *Gutierrez* Decl.), ¶ 12. In other words, as with the authorization date/time information, Wells Fargo is purging relevant "available balance" information every day pursuant to company policy.

### C. Plaintiffs' Efforts in this Litigation to Obtain/Preserve the Destroyed Data.

Plaintiffs requested in discovery the transactional information that is at issue in this motion.[2] Upon learning that Wells Fargo was continuing to destroy this highly relevant data, Plaintiffs demanded that Wells Fargo immediately cease its destruction of all electronic files or data from data systems that record information regarding the claims at issue in these actions, and further invited Wells Fargo to identify any other reliable, searchable data sources (*i.e.*, other than the data Wells Fargo is systematically destroying) that contain the complete authorization date

---

[1] Wells Fargo retains some "available balance" information in its "Overdraft Activity Reports," which are preserved, but such information is limited to customers' "available balance" at the end of the day—as opposed to at the time of each transaction—and is only available for customers on days when they experienced an overdraft. *See* Heller Decl., Ex. B (Mark Lentz *Gutierrez* Decl.), ¶ 12 n.3. Moreover, Wells Fargo's "Overdraft Activity Reports" are not searchable, further limiting their usefulness. *See id.*

[2] *See* Heller Decl., Ex. H, at RFP No. 7 (requesting, *inter alia*, all documents and data reflecting the date and time that transactions resulting in overdraft fees were authorized and/or the amount of available funds in the relevant accounts at the time of authorization).

and time information for customers' debit card transactions.  *See* Heller Decl., Ex. I (Letter from Plaintiffs' counsel).  In response, Wells Fargo admitted that it was not preserving the original data in question, and argued that it has no obligation to do so because such data is purportedly "duplicative" of the information in the reports that Wells Fargo is preserving.  *See* Heller Decl., Ex. D at 2-3 (letter from Wells Fargo's counsel) ("[s]uch efforts are in any event simply not necessary here, as the relevant data is available in an alternative form.").  As discussed herein, that is not true.  Wells Fargo's refusal to stop destroying this highly relevant and non-duplicative transactional data leaves Plaintiffs with no choice but to file this motion and seek relief from the Court.

**III.    ARGUMENT**

    **A.    To Avoid Further Prejudice to Plaintiffs, the Court Should Order Wells Fargo to Immediately Cease Its Destruction of the Transactional Data and to Preserve Such Data Going Forward.**

It is well settled that a party to a litigation "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action…." *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 127 (S.D. Fla. 1987) (citation omitted); *Southeastern Mechanical Services, Inc. v. Brody*, 2009 WL 2242395, *3 (M.D. Fla. Jul. 24, 2009).[3]  "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, * 16 (S.D. Fla. Nov. 16, 2009) (citations omitted).

Here, Wells Fargo cannot seriously dispute that the transactional data at issue—data from its Hogan, RDS and Settlement systems—is pertinent to the claims and defenses in these actions,

---

[3] As noted above, the Court has expressly reminded the parties of their duty to preserve relevant evidence.  (*See* DE # 60, ¶ 9.)

-7-

as such data is plainly relevant to issues such as: (a) Wells Fargo's ability to post customers' debit card transactions in chronological order, based on the date/time of authorization, instead of re-sequencing transactions from highest-to-lowest in dollar amount as the bank did; (b) the measurement of damages/restitution for the putative class members; (c) Plaintiffs' claim that Wells Fargo charged customers overdraft fees for transactions they had sufficient balances to cover; and (d) Plaintiffs' claim that Wells Fargo failed to inform customers regarding inaccuracies of the "available balance" information provided to them.

Moreover, Wells Fargo has long been on notice that the data in question is relevant and should therefore be preserved. Plaintiffs requested this information in discovery. *See* Heller Decl., Ex. H at RFP No. 7. Moreover, from its experience in litigating the *Gutierrez* case, the bank has known for years about the relevance of the data in question as well as the problems caused by its retaining only the data reports instead of the original data. *See* section II.B, *supra*.

Wells Fargo's continued destruction of its transactional data would greatly prejudice Plaintiffs. For example, in the *Gutierrez* case, the lack of authorization times for some transactions in Wells Fargo's reports required the plaintiffs' expert, Mr. Olsen, to develop a method for placing the transactions lacking such information in the queue of daily transactions for purposes of creating a comprehensive chronological posting order, which was then compared to the bank's actual (high-to-low) posting order to calculate restitution for the class.[4] Wells Fargo repeatedly attempted to use the missing authorization time information to undermine Mr. Olsen's class restitution analysis, including at trial. *See, e.g.,* Heller Decl., Ex. J (Wells Fargo's

---

[4] *See Gutierrez*, 2010 WL 3155934 at *58-60 ("[P]laintiffs' expert Arthur Olsen has convincingly shown that it is entirely practical to re-run the computerized data in storage for each class members' account and determine how many overdrafts were added by the high-to-low practice for debit-card transactions during the class period….This has been done by him on an account-by-account, day-by-day, and transaction-by-transaction basis, using the bank's own real-world data.").

-8-

Motion for Summary Judgment and/or to Decertify Class in *Gutierrez*) at 18; Ex. K (Wells Fargo's Proposed Findings of Fact in *Gutierrez*) at 41, ¶ 134 (arguing that "because of inherent limitations in the data (including the absence of times for a substantial number of transactions), none of [Mr. Olsen's restitution models] reflects true chronological posting"); Ex. L (Wells Fargo's Response to Plaintiffs' Proposed Findings of Fact in *Gutierrez*) at 44, ¶ 177 (arguing that "the unavailability of times for many transactions undermined the reliability of Olsen's results"). Ultimately, Judge Alsup held that Mr. Olsen's method for dealing with this subset of transactions was appropriate and rejected Wells Fargo's attempt to undermine Mr. Olsen's analysis on this basis. *See Gutierrez*, 2010 WL 3155934 at *58-60 & n.28 ("Class members, of course, should not be penalized for data deficiencies in the very computer systems used to power the bank's unlawful practices. It would not be equitable to allow the bank to extract hundreds of millions of dollars through unfair and fraudulent business practices and then use the supposed inadequacies of its own record-keeping system to shield itself from restitution."). Nevertheless, this same data deficiency, and corresponding prejudice and additional expert work, can be avoided in this case—at least in part (*i.e.*, for the past transactions not yet purged from the bank's systems and going forward)—if Wells Fargo were required to retain the original data in its processing systems, which includes the authorization information partially missing from the reports.

Moreover, in *Gutierrez*, the scattered nature of Wells Fargo's data reports required the plaintiffs and their expert to expend considerable time and resources cross-referencing the data in the various reports to match the relevant authorization information. Again, Wells Fargo tried to use *this* deficiency—likewise created by its own failure to retain the original data—to undermine Mr. Olsen's restitution analysis. *See, e.g.,* Heller Decl., Ex. J at 8 (arguing that "the total number of transactions for which Olsen did not have genuine transaction times was higher than 20

percent, because the data did not permit Olsen accurately to 'match' a debit card authorization to a subsequently posted transaction."); *see also* Heller Decl., Ex. G (Lentz MDL Depo.), 66:21-67:20 (Wells Fargo employee opining, in this litigation, that the lack of a link between the reports leads to inconsistent results and "fuzzy" logic). Judge Alsup rejected Wells Fargo's attempt to undermine Mr. Olsen's analysis on this basis as well, but the additional work that was required in *Gutierrez*, and the prejudice to Plaintiffs flowing from this data deficiency, can be limited here if Wells Fargo were ordered to retain the original data going forward. The same is true of the "available balance" information that is recorded in, and then purged from, Wells Fargo's systems.

Therefore, to avoid further prejudice to Plaintiffs, the Court should order Wells Fargo to immediately cease its destruction of the relevant transactional data and to preserve such data going forward.

### B. The Court Should Preclude Wells Fargo From Pursuing Defenses or Introducing Evidence That Relate to the Transactional Data Wells Fargo Has Improperly Destroyed to Date.

In addition to ordering Wells Fargo to stop destroying relevant transactional data, the Court should take appropriate action to ensure that Wells Fargo does not gain an unfair advantage as a result of its misconduct to date.

"Spoliation" of evidence is the "intentional destruction of evidence or the significant and meaningful alteration of a document or instrument." *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, --- F.Supp.2d ----, 2010 WL 3368654, *3 (S.D. Fla. Aug. 23, 2010) (citing *Southeastern Mechanical Services, Inc. v. Brody*, 657 F.Supp.2d 1293, 1299 (M.D. Fla. 2009); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003)). Remedial action for spoliation may be necessary where it is demonstrated that: (a) the missing evidence existed at one time; (b) the alleged spoliator had a duty to preserve the evidence; and

(c) the evidence is crucial to another party in being able to prove its prima facie case or defense. *See Southeastern Mechanical Services*, 657 F.Supp.2d at 1299; *Walter v. Carnival Corp.*, 2010 WL 2927962, * 2 (S.D. Fla. Jul. 23, 2010). All three elements are satisfied here. First, there is no question that the transactional data at issue resided at one time in Wells Fargo's computer systems. Second, as detailed above, Wells Fargo had a duty to preserve the data in question, given its relevance to this litigation. Third, the great importance of the data to Plaintiffs in this case is confirmed by, among other things, Wells Fargo's repeated attempts in the *Gutierrez* case to gain an advantage from the absence of such data and the testimony of Wells Fargo's own employee, in this litigation, that the data sources at issue include the only consistently reliable authorization date/time information. *See* section III.A, *supra*; Heller Decl., Ex. G.

Trial courts have broad discretion in fashioning an appropriate remedy for the spoliation of important evidence. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 943-945 (11th Cir. 2005); *Southeastern Mechanical Services*, 657 F.Supp.2d at 1302.[5] The remedy for spoliation can be as severe as dismissal of a claim or a default judgment, *see, e.g., Flury*, 427 F.3d at 944-945; *Telectron*, 116 F.R.D. at 127-137, and can also include an adverse inference against the offending party on one or more factual issues where, as here, the destruction of evidence is intentional and willful. *See, e.g., Swofford v. Eslinger*, 671 F.Supp.2d 1274, 1281-1282 (M.D. Fla. 2009). In determining the appropriate remedy for Wells Fargo's intentional destruction of the relevant transactional data here, the Court should consider the significance of the evidence destroyed and the prejudice suffered by Plaintiffs as a result. *See Flury*, 427 F.3d at 943-944 (remedy should be fashioned "to prevent unfair prejudice to litigants and to insure the integrity

---

[5] Federal law governs the imposition of remedies for spoliation of evidence. *See Flury*, 427 F.3d at 944.

of the discovery process"); *cf. Eli Lilly and Co. v. Air Exp. Intern. USA, Inc.*, 615 F.3d 1305, 1318 (11th Cir. 2010).

As set forth above, the transactional data in question is highly relevant to both Plaintiffs' claims and Wells Fargo's defenses in this case, as well as to the measurement of class damages/restitution. Plaintiffs would be significantly prejudiced if Wells Fargo were permitted to take advantage of the unavailability of such data which it willfully expunged. *See Gutierrez*, 2010 WL 3155934 at *58-60 & n.28 ("Class members, of course, should not be penalized for data deficiencies in the very computer systems used to power the bank's unlawful practices. It would not be equitable to allow the bank to extract hundreds of millions of dollars through unfair and fraudulent business practices and then use the supposed inadequacies of its own record-keeping system to shield itself from restitution."). While a greater sanction may very well be appropriate given the nature of the evidence at issue and the willful nature of Wells Fargo's conduct, Plaintiffs respectfully request that the Court exercise its discretion to preclude Wells Fargo from pursuing defenses or introducing evidence that explicitly or implicitly relate to the destroyed data or the absence of such data from the record, including, *inter alia*, defenses and evidence regarding the bank's purported inability to post customers' debit card transactions chronologically, the ability to measure class damages/restitution by comparing Wells Fargo's actual posting practice during the class period (*i.e.*, high-to-low) to chronological posting, and the availability of the "available balance" information that was provided to customers at the time of their transactions.

**IV.     CONCLUSION**

For the foregoing reasons, the Court should: (a) order Wells Fargo to immediately cease its destruction of relevant transactional data stored in its computer systems, including in its "Hogan," "RDS," and "Settlement" systems, and to preserve such data going forward; and (b)

preclude Wells Fargo from pursuing affirmative defenses or introducing evidence related to either the transactional data that Wells Fargo has improperly destroyed to date or the absence of such data from the record.

## **LOCAL RULE 7.1 CERTIFICATION**

Undersigned counsel certify that they have conferred with counsel for Wells Fargo in a good faith effort to resolve the issues raised in this motion but were unable do so.

Dated: January 24, 2011.

>Respectfully Submitted,
>
>/s/ Bruce S. Rogow
>Bruce S. Rogow
>Florida Bar No. 067999
>brogow@rogowlaw.com
>Robert C. Gilbert, Esquire
>Florida Bar No. 561861
>bobby@alterslaw.com
>ALTERS LAW FIRM, P.A.
>4141 N.E. 2nd Avenue
>Miami, Florida 33137
>Tel:  (305) 571-8550
>Fax:  (305) 571-8558
>
>*Plaintiffs' Lead Counsel*

| | |
|---|---|
| Robert C. Josefsberg, Esquire<br>Florida Bar No. 40856<br>rjosefsberg@podhurst.com<br>Victor M. Diaz, Jr., Esquire<br>Florida Bar No. 503800<br>vdiaz@podhurst.com<br>Peter Prieto, Esquire<br>Florida Bar No. 501492<br>pprieto@podhurst.com<br>John Gravante, III, Esquire<br>Florida Bar No. 617113<br>jgravante@podhurst.com<br>PODHURST ORSECK, P. A.<br>City National Bank Building<br>25 West Flagler Street<br>Suite 800<br>Miami, FL 33130-1780<br>Tel: 305-358-2800<br>Fax: 305-358-2382 | Michael W. Sobol, Esquire<br>California Bar No. 194857<br>msobol@lchb.com<br>David S. Stellings, Esquire<br>New York Bar No. DS 5343<br>dstellings@lchb.com<br>Roger N. Heller, Esquire<br>California Bar No. 215348<br>rheller@lchb.com<br>Jordan Elias, Esquire<br>California Bar No. 228731<br>jelias@lchb.com<br>LIEFF CABRASER HEIMANN &<br>  BERNSTEIN LLP<br>275 Battery Street, 29th Floor<br>San Francisco, CA 94111-3339<br>Tel: 415-956-1000<br>Fax: 415-956-1008 |
| Ted E. Trief, Esquire<br>New York Bar No. 1476662<br>ttrief@triefandolk.com<br>Barbara E. Olk, Esquire<br>New York Bar No. 1459643<br>bolk@triefandolk.com<br>TRIEF & OLK<br>150 East 58th Street, 34th Floor<br>New York, NY 10155<br>Tel: 212-486-6060<br>Fax: 212-317-2946 | Edward Adam Webb, Esquire<br>Georgia Bar No. 743910<br>Adam@WebbLLC.com<br>G. Franklin Lemond, Jr., Esquire<br>Georgia Bar No. 141315<br>FLemond@WebbLLC.com<br>WEBB, KLASE & LEMOND, L.L.C.<br>1900 The Exchange SE, Suite 480<br>Atlanta, GA 30339<br>Tel: 770-444-9325<br>Fax: 770-444-0271 |
| Russell W. Budd, Esquire<br>Texas Bar No. 03312400<br>rbudd@baronbudd.com<br>Bruce W. Steckler, Esquire<br>Texas Bar No. 00785039<br>bsteckler@baronbudd.com<br>Melissa K. Hutts, Esquire<br>Texas Bar No. 0188015<br>mhutts@baronbudd.com<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, TX 75219<br>Tel: 214-521-3605<br>Fax: 214-520-1181 | Ruben Honik, Esquire<br>Pennsylvania Bar No. 33109<br>rhonik@golombhonik.com<br>Kenneth J. Grunfeld, Esquire<br>Pennsylvania Bar No. 84121<br>kgrunfeld@golombhonik.com<br>GOLOMB & HONIK, P.C.<br>1515 Market Street, Suite 1100<br>Philadelphia, PA 19102<br>Tel: 215-985-9177<br>Fax: 215-985-4169 |

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS BOLDT BROWN
RASH & CULMO, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@alterslaw.com