**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

**THIS DOCUMENT RELATES TO:**

*Townsend v. Wells Fargo Bank & Co., et al.*
S.D. Fla. Case No. 1:10-cv-21834-JLK
C.D. Cal. Case No. CV 10-550 ODW

**RENEWED MOTION OF DEFENDANTS WELLS FARGO & CO. AND WELLS FARGO BANK, N.A. TO STAY PROCEEDINGS IN FAVOR OF ARBITRATION AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. FACTUAL AND PROCEDURAL HISTORY .......... 2

III. ARGUMENT .......... 4

A. The Federal Arbitration Act Establishes a Liberal Public Policy Favoring Arbitration. .......... 4

B. The Arbitration Agreement between the Parties Requires Plaintiff's Action to Be Stayed in Favor of Arbitration. .......... 5

1. The Parties Have a Written Arbitration Agreement .......... 6

2. The Dispute Between the Parties Falls Within the Scope of the Arbitration Agreement. .......... 6

C. No Ground Exists for Plaintiff to Avoid Arbitration with Wells Fargo. .......... 7

1. The Agreements Are Not Procedurally Unconscionable. .......... 8

2. The Agreements Are Not Substantively Unconscionable .......... 9

3. The Arbitration Agreement Is Not Invalid on Account of Its Designation of the American Arbitration Association. .......... 10

IV. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**


*Armijo v. Prudential Ins. Co. of Am,*
72 F.3d 793 (10th Cir. 1995) ....................5

*AT&T Technologies, Inc. v. Communications Workers of Am., et al.,*
475 U.S. 643 (1986)....................5, 7

*Bess v. Check Express,*
294 F.3d 1298 (11th Cir. 2002) ....................7

*Davis v. O'Melveny & Myers,*
485 F.3d 1066 (9th Cir. 2007) ....................8

*Dean Witter Reynolds, Inc. v. Byrd,*
470 U.S. 213 (1985)....................6

*Gilmer v. Interstate/Johnson Lane Corp.,*
500 U.S. 20 (1991)....................4

*Houlihan v. Offerman & Co., Inc.,*
31 F.3d 692 (8th Cir. 1994) ....................6

*Howsam v. Dean Witter Reynolds, Inc.,*
537 U.S. 79 (2002)....................5

*In re Managed Care Litig.,*
2009 WL 856321 (S.D. Fla. Mar. 30, 2009)....................7

*Ledford v. Peeples,*
605 F.3d 871 (11th Cir. 2010) ....................1

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
473 U.S. 614 (1985)....................4

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983)....................4, 6

*Pokorny v. Quixtar, Inc.,*
601 F.3d 987 (9th Cir. 2010) ....................9

*Stone v. E. F. Hutton & Co., Inc.,*
898 F.2d 1542 (11th Cir. 1990) ....................5

**STATE CASES**

*California Grocers Ass'n, Inc. v. Bank of America*,
22 Cal. App. 4th 205 (1994) ....................9, 10

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005) ....................8

*Engalla v. Permanente Med. Group, Inc.*,
15 Cal. 4th 951 (1997) ....................10

*Morris v. Redwood Empire Bancorp*,
128 Cal. App. 4th 1305 (2005) ....................9

*Sanchez v. Western Pizza Enters., Inc.*,
172 Cal. App. 4th 154 (2009) ....................8

*Walnut Prods. of Cal. v. Diamond Foods, Inc.*,
187 Cal. App. 4th 634 (2010) ....................9, 10

**FEDERAL STATUTES**

9 U.S.C. § 2 ....................4

9 U.S.C. § 3 ....................5, 6

12 U.S.C. § 1332(a) ....................1

12 U.S.C. § 1332(d) ....................1

18 U.S.C. § 1346 ....................1

## I. INTRODUCTION

Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. ("Wells Fargo"), through their attorneys, respectfully request that the Court stay these proceedings in favor of arbitration pursuant to the Federal Arbitration Act and the written arbitration agreement between Wells Fargo and plaintiff Robert Townsend.[1]

Unlike all the other actions in this MDL proceeding in which arbitration-related motions have previously been filed, this case is not a putative class action. Rather, this matter is brought by a single plaintiff who does not purport to represent a class. Therefore, the concerns that have been addressed in this Court's prior arbitration orders – those about the possible unconscionability of class-action-waiver provisions in arbitration agreements – are not relevant here.

The Federal Arbitration Act strongly encourages the enforcement of arbitration agreements, and the Supreme Court has held that the presence of such an agreement in a contract creates a presumption of arbitrability. Here, the existence and terms of the

---

[1] In order to forestall any possible claim of waiver, Wells Fargo is submitting this motion notwithstanding that subject-matter jurisdiction appears absent. No federal-question jurisdiction is evident: Plaintiff's complaint alleges a claim under 18 U.S.C. § 1346, but that section is merely the definitional provision of the criminal mail-and wire-fraud statute, and does not give rise to any federal claim on which relief can be granted. *See Ledford v. Peeples*, 605 F.3d 871, 902 (11th Cir. 2010) (federal subject-matter jurisdiction is defeated where the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous" (internal marks, emphasis, and citation omitted)). No diversity jurisdiction appears to exist pursuant to 12 U.S.C. § 1332(a) because plaintiff has made no showing that the matter in controversy – the overdraft fees on his checking account – exceeds the sum or value of $75,000. In his complaint, plaintiff alleges diversity jurisdiction under the Class Action Fairness Act of 2005, 12 U.S.C. § 1332(d), but that provision is inapplicable because this case is not a class action.

arbitration agreement between plaintiff and Wells Fargo are undisputed, as is the fact that all of plaintiff's claims fall within the scope of that agreement. Therefore, this entire action should be stayed in favor of arbitration.

## II. FACTUAL AND PROCEDURAL HISTORY

Wells Fargo is a financial services company that provides consumer banking services to its customers. Plaintiff is a Wells Fargo checking account customer. It is undisputed that the terms of plaintiff's Wells Fargo account are governed by an account agreement between the parties (Complaint ¶ 32, attached to DE #913), which contains an unambiguous arbitration clause (*id.* ¶ 55) (hereafter the "Arbitration Agreement"). This Arbitration Agreement provides in relevant part:

> **Non-Judicial Resolution of Disputes.** If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that any dispute between or among you and the Bank, regardless of when it arose, shall be resolved by the following arbitration process. You understand and agree that you and the Bank are each waiving the right to a jury trial or a trial before a judge in a public court.
>
> **Disputes.** A dispute is any unresolved disagreement between or among you and the Bank … arising out of or relating in any way to your Account and/or Services. It includes any dispute relating in any way to your Accounts and Services; to your use of any Bank location or facility; or to any means you may use to access the Bank, such as an Automated Teller Machine (ATM) or Online Banking. It includes claims based on broken promises or contracts, torts (injuries caused by negligent, or intentional conduct) or other wrongful actions. It also includes statutory, common law, and equitable claims. A dispute also includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Agreement. A dispute does not include a claim that may be filed in small claims court. If you have a dispute that is within the jurisdiction of the small claims court, you should file your claim there.

> **Binding Arbitration.** Binding arbitration is a means of having an independent third party resolve a dispute without using the court system, judges, or juries. Either you or the Bank may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced. If either you or the Bank fails to submit to binding arbitration following a lawful demand, the one who fails to submit bears all costs and expenses (including attorney's fees and expenses) incurred by the other compelling arbitration.

Declaration of David M. Jolley ("Jolley Dec.") Ex. 1 at 4-5.

On January 25, 2010, in disregard of the Arbitration Agreement, plaintiff filed a complaint against Wells Fargo in the Central District of California.[2] The Judicial Panel on Multidistrict Litigation transferred the case to this district as part of MDL 2036. No answer has been filed, and there has been no discovery or substantive motion practice.

The Complaint accuses the bank of "unfair and unconscionable assessment of and collection of excessive overdraft fees" from plaintiff's Wells Fargo checking account. Complaint ¶ 1. Specifically, plaintiff alleges that Wells Fargo improperly assessed overdraft fees on his checking account in July 2009. *Id.* ¶ 63. Such allegations fall squarely within the scope of the Arbitration Agreement (which governs all disputes relating "in any way" to plaintiff's Wells Fargo checking account). Accordingly, this dispute cannot properly be brought in this Court, but must be resolved through binding arbitration.

On July 12, 2010, Wells Fargo demanded that plaintiff dismiss this action and initiate arbitration proceedings. *See* Jolley Dec. Ex. 2. Plaintiff refused to comply with this arbitration demand. *See id.* Exs. 3, 4. Accordingly, on September 1, Wells Fargo

---

[2] Plaintiff's complaint also alleges parallel claims against co-defendants JPMorgan Chase Bank, N.A. and JPMorgan Chase & Co. ("Chase"). Plaintiff does not allege any joint liability or relationship between Wells Fargo and Chase. This motion concerns only plaintiff's obligation to arbitrate his claims against Wells Fargo pursuant to the Arbitration Agreement.

filed a motion to stay plaintiff's case in favor of arbitration. DE # 782. That motion was never considered, as the Court instead dismissed plaintiff's case without prejudice because plaintiff's complaint had never been properly filed in this case. *See* DE #892. On January 19, 2011, after plaintiff had corrected the filing defect (DE #913), the Court reinstated plaintiff's case. DE #1059. Wells Fargo now renews its motion to stay this case in favor of arbitration pursuant to the Federal Arbitration Act ("FAA") and the Arbitration Agreement between the parties.

## III. ARGUMENT

### A. The Federal Arbitration Act Establishes a Liberal Public Policy Favoring Arbitration.

The FAA provides that:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Congress enacted the FAA to ensure the "rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983) ("*Moses*"). The FAA establishes a public policy that strongly favors the arbitration of disputes and requires courts to enforce arbitration agreements. *See id.* at 24 (stating that the FAA manifests a "liberal federal policy favoring arbitration agreements"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

The Supreme Court has held that there is a presumption of arbitrability to promote the federal policy favoring arbitration. "[W]here the contract contains an arbitration

clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Technologies, Inc. v. Communications Workers of Am., et al.*, 475 U.S. 643, 650 (1986). Any doubts as to the scope of arbitrable issues or the applicability of an arbitration clause must therefore be resolved in favor of arbitration. *Id.* at 650; *Stone v. E. F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (citing *Moses*, 460 U.S. at 24-25). The party seeking to avoid arbitration – here the plaintiff – bears the burden of rebutting the presumption of arbitrability. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797-98 (10th Cir. 1995).

### B. The Arbitration Agreement between the Parties Requires Plaintiff's Action to Be Stayed in Favor of Arbitration.

The FAA requires the enforcement of written arbitration agreements. 9 U.S.C. § 3. Section 3 of the FAA states in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

A court faced with a motion to stay in favor of arbitration should make no inquiry into the merits of the case. *AT&T Technologies,* 475 U.S. at 649. In addition, issues concerning whether any prerequisites to arbitration have been met (such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation) or whether any defenses to arbitrability exist are for the arbitrator to decide. *Howsam v. Dean Witter*

*Reynolds, Inc.*, 537 U.S. 79, 84-85 (2002). The only things for the court to decide are (i) whether there is a valid written arbitration agreement between the parties and (ii) whether the dispute falls within the scope of the arbitration agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). If these conditions are met, the court must stay the litigation in favor of arbitration. 9 U.S.C. § 3; *see Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir. 1994). The FAA leaves no discretion to the court on this matter. *Byrd*, 470 U.S. at 218.

**1. The Parties Have a Written Arbitration Agreement.**

Here, it is undisputed that plaintiff and Wells Fargo have a written agreement to arbitrate the claims that plaintiff now pleads in this lawsuit. Plaintiff has acknowledged that the account agreement between the parties contains the terms of his Wells Fargo checking account (Complaint ¶ 32), and that this account agreement contains the Arbitration Agreement (*id.* ¶ 55). Moreover, in correspondence with Wells Fargo's counsel, plaintiff has further acknowledged that the account agreement between the parties containing the Account Agreement "govern[s]" the relationship between the parties. *See* Jolley Dec. Ex. 3.

**2. The Dispute Between the Parties Falls Within the Scope of the Arbitration Agreement.**

It should also be beyond dispute that plaintiff's claims fall within the scope of the Arbitration Agreement. When a written arbitration agreement exists between parties, arbitration should be ordered unless it can be said that the arbitration clause at issue is not susceptible to an interpretation that covers the asserted dispute. *Moses*, 460 U.S. at 24-25. Given the presumption in favor of arbitrability, "only the most forceful evidence of a

purpose to exclude the claim from arbitration can prevail" in defeating an arbitration provision. *AT&T Technologies*, 475 U.S. at 654 (internal marks and citation omitted).

Here, the Arbitration Agreement between the parties is considered to be a "broad" arbitration clause because it extends beyond issues of contract interpretation and applies to "any unresolved disagreement" between plaintiff and Wells Fargo that "relates in any way" to plaintiff's checking account. When a broad arbitration clause is at issue, the strong presumption in favor of arbitrability applies with even greater force. *See AT&T Technologies*, 475 U.S. at 650.

It is clear that plaintiff's claims are subject to the Arbitration Agreement between the parties. All aspects of this dispute arise from plaintiff's challenge to the practices and procedures by which Wells Fargo assesses overdraft fees to plaintiff's checking account. Therefore, the entirety of this action falls within the scope of the Arbitration Agreement, which by its express terms applies to all disputes that relate "in any way" to plaintiff's checking account. *See* Jolley Dec. Ex. 1 at 4. Thus, plaintiff's claims should be stayed in favor of arbitration.

**C. No Ground Exists for Plaintiff to Avoid Arbitration with Wells Fargo.**

A party seeking challenging an arbitration agreement has the burden of demonstrating that the agreement is "unconscionable." *In re Managed Care Litig.*, 2009 WL 856321, at *3 (S.D. Fla. Mar. 30, 2009). *See, e.g.*, *Bess v. Check Express*, 294 F.3d 1298, 1306-077 (11th Cir. 2002) (placing burden on party asserting unconscionability). Under California law, such a showing can be made only by establishing both procedural

and substantive unconscionability. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007). Plaintiff cannot make such a showing here.[3]

### 1. The Agreements Are Not Procedurally Unconscionable.

Plaintiff does not allege in his complaint, and has not otherwise established, any circumstances constituting procedural unconscionability in the formation of his agreement with Wells Fargo. Plaintiff simply alleges that the terms of Wells Fargo's checking accounts (including the Arbitration Agreement) were set out in a "standardized" account agreement, which was presented to him on a "take it or leave it" basis. Complaint ¶ 32.

Under California law, the use of standardized terms does not mean an agreement is procedurally unconscionable. *See Discover Bank v. Superior Court*, 36 Cal. 4th 148, 160 (2005) (noting that "adhesive contracts are generally enforced"). Such an analysis depends instead on whether the formation of the contract occurred under conditions of oppression or unfair surprise. *See id*. "Oppression results from unequal bargaining power when a contracting party has no meaningful choice but to accept the contract terms." *Sanchez v. Western Pizza Enters., Inc.*, 172 Cal. App. 4th 154, 173 (2009). "Unfair surprise results from misleading bargaining conduct or other circumstances indicating that a party's consent was not an informed choice." *Id*. Plaintiff has not

---

[3] Significantly, the principal ground on which plaintiffs in other cases in this MDL proceeding have asserted that arbitration agreements are unconscionable – *i.e.*, the unavailability of class-action procedures in the agreements – does not apply to plaintiff's claims, which are asserted individually and not on a class basis.

shown that either of these conditions were present during the formation of the Arbitration Agreement between the parties.[4]

Nor does the fact that a contract was presented on a "take-it-or-leave-it" basis render the resulting agreement unconscionable under California law. The lack of an ability to negotiate does not create oppression where (as here) the signing party is free to seek similar services elsewhere. *See Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005) (finding no procedural unconscionability "'if the complaining party has a meaningful choice of reasonably available alternative sources'" for the services at issue) (quoting *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 772 (1989).

**2. The Agreements Are Not Substantively Unconscionable.**

Under California law, a contract is substantively unconscionable if it involves terms that "'are so one-sided as to "shock the conscience," or that impose harsh or oppressive terms.'" *Walnut Prods. of Cal. v. Diamond Foods, Inc.*, 187 Cal. App. 4th 634, 647 (2010) (internal citation omitted) (quoting *Morris*, 128 Cal. App. 4th at 1322-23). It is not enough for a contract to be "unreasonable." *Id*. Rather, to be substantively unconscionable, an agreement must be so unbalanced that a person would have to be "under delusion" to accept it. *California Grocers Ass'n, Inc. v. Bank of America*, 22 Cal. App. 4th 205, 214-15 (1994).

---

[4] A showing that a standardized contract is *highly unconscionable* in a *substantive way* can support a finding of procedural unconscionability under California law. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010). This does not mean, however, that standardized contracts are presumptively invalid, or even suspect; rather it means only that when the terms of a standardized contract are highly unconscionable in substantive ways, the contract may be held invalid without the additional showing of particularized oppression or unfair surprise that is usually required. As shown below, that was not the case here.

Plaintiff has made no such showing here. Under California law (as most elsewhere), arbitration is favored – including in disputes between individuals and businesses. *See Engalla v. Permanente Med. Group, Inc*., 15 Cal. 4th 951, 971-72 (1997) ("California law incorporates many of the basic policy objectives contained in the Federal Arbitration Act, including a presumption in favor of arbitrability."). Moreover, arbitration in the context of bank account agreements involves mutual trade-offs, and provides benefits to both sides. Under the Arbitration Agreement, the bank itself agrees to give customers a simple, inexpensive, and quick resolution to disputes by a neutral arbitrator. There is simply nothing about plaintiff's account agreement that is so "one-sided" that it "shock[s] the conscience," or would appeal only to someone "under delusion." *Walnut Prods. of Cal.*, 187 Cal. App. 4th at 647; *California Grocers*, 22 Cal. App. 4th at 214-215.

**3. The Arbitration Agreement Is Not Invalid on Account of Its Designation of the American Arbitration Association.**

Plaintiff has claimed that the American Arbitration Association ("AAA") has instituted a moratorium on the arbitration of consumer finance disputes and would, therefore, refuse to arbitrate this matter. Thus, asserts plaintiff, this renders the Arbitration Agreement invalid, because its provisions require that the AAA administer the arbitration of any dispute between the parties. Plaintiff's Motion for Partial Summary Judgment at 5-6 (DE #661). Plaintiff completely mischaracterizes the AAA moratorium, and his argument has absolutely no basis in fact.

It is true that the AAA has issued a moratorium on certain *other* types of arbitration matters, but that moratorium does not affect customer-initiated claims against companies, such as plaintiff's claim against Wells Fargo. Rather, the moratorium only

affects "*debt collection*" matters filed by companies to recover money owed by a customer. *See* Jolley Dec. ¶¶ 5-9 & Ex. 5. Therefore, the AAA's own published statement on the arbitration moratorium indicates that it applies only to "*debt collections* … in which the company is the *filing* party. … The AAA will continue to administer all demands for arbitration *filed by consumers* against businesses." *See id.* Ex. 5 (emphasis added). In any event, the AAA has specifically confirmed that if a customer filed a complaint against a business with a court, and the court thereafter stayed the litigation in favor of arbitration, the AAA would consider the resulting arbitration matter as having been "filed by a customer against a business" and therefore not subject to the arbitration moratorium. *Id*. ¶¶ 5-9.

This makes sense, as the AAA's primary stated concern with debt-collection arbitrations initiated by banks or other creditors is that customers often fail to participate in such debt-collection arbitrations, resulting in arbitration awards against customers from proceedings in which they never appeared. *Id*. Ex. 5. That concern is obviously not a problem when it is the customer who is actively trying to recover money from the company. In any event, the AAA has confirmed that it could indeed administer the arbitration of plaintiff's claims against Wells Fargo if the Court were to compel this dispute into arbitration. *Id*. ¶¶ 5-9.

The AAA is willing and able to arbitrate plaintiff's dispute and would provide a fair and convenient forum to resolve his claims. Therefore, the designation of the AAA as the arbitration service provider in the Arbitration Agreement provides no basis why plaintiff's claims should not be stayed in favor of arbitration.

## IV. CONCLUSION

Wells Fargo respectfully requests that this Court issue an order staying this case in favor of arbitration pursuant to the terms of the Arbitration Agreement between the parties.

## CERTIFICATE OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(A)(3)

Wells Fargo certifies that it previously conferred with plaintiff in a good-faith effort to resolve this issue, but the parties were unable to do so.

DATED: January 25, 2011

COVINGTON & BURLING LLP

By: /s/

Sonya D. Winner (*pro hac vice*)
(swinner@cov.com)
David M. Jolley (*pro hac vice*)
(djolley@cov.com)
One Front Street, 35th Floor
San Francisco, CA, 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Emily Johnson Henn (*pro hac vice*)
(ehenn@cov.com)
333 Twin Dolphin Drive, Ste 700
Redwood Shores, CA, 94065
Telephone: (650) 632-7400
Facsimile: (650) 632-4800

Barry R. Davidson
(bdavidson@hunton.com)
Florida Bar No. 107678
Jamie Zysk Isani
(jisani@hunton.com)
Florida Bar No. 728861
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

Attorneys for Defendants
WELLS FARGO & CO. and
WELLS FARGO BANK, N.A.