**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

**THIS DOCUMENT RELATES TO:**

*Garcia, et al. v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:08-cv-22463-JLK

*Spears-Haymond v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-21680-JLK
N.D. Cal. Case No. 3:08-cv-4610

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685
D. Or. Case No. 3:09-cv-01239-ST

**MOTION FOR CLARIFICATION**
**OF DEFENDANT WELLS FARGO BANK, N.A.**

## I. INTRODUCTION

At the initial status conference in this case, the Court invited the parties to bring to the Court's attention any confusion or difficulties resulting from the Court's rulings. Tr. of Aug. 26, 2009 Status Conference at 75:10-14 (DE # 169) ("And if I enter something that is, you know, that clearly I didn't understand what your position was … I take no umbrage with petitions for rehearing, or something like that, just tell me."). Accordingly, defendant Wells Fargo Bank, N.A. ("Wells Fargo") moves this Court for clarification of apparent inconsistencies between the Court's March 11 and June 1, 2010 Orders re Defendants' Omnibus Motion to Dismiss (DE #s 305, 532) and its December 16, 2010 Opinion Setting Standards for Resolution of Discovery Interrogatories and Production of Documents ("Discovery Order") (DE # 1016).

At the outset of this litigation, Wells Fargo – along with other "first tranche" defendants ("Defendants") – moved under Rule 12 to strike or dismiss all claims and allegations relating to business practices other than high-to-low posting of debit-card transactions on the ground that plaintiffs failed to plead those claims with sufficient specificity, including failing even to identify which of the multiple plaintiffs in each case claimed to have been affected by any particular challenged practice. The Court declined to dismiss those claims at that time, stating that the relevant facts could be learned through discovery. Thereafter, Wells Fargo served written discovery aimed at the factual bases underlying plaintiffs' challenges to these other business practices. Plaintiffs refused to respond to this discovery. Wells Fargo moved to compel responses from plaintiffs, but the Court has now expressed the view that the discovery at issue seeks facts that are immaterial to this litigation and that Wells Fargo would have been better served testing these claims and allegations through motions under Rule 12.

Therefore, it seems that the Court denied the bank relief under Rule 12 by pointing to discovery, and then denied the bank discovery by pointing to Rule 12. Wells Fargo

fears that, without clarification from the Court in regard to this conundrum, the bank may have no way to determine which claims (other than the challenge to high-to-low posting) are genuinely at issue and what facts support those claims. If such facts are truly immaterial (as this Court appears to have held in its recent Discovery Order), then those claims should be dismissed. If, however, those claims are genuinely at issue, Wells Fargo is entitled to discovery on the facts supporting them. Accordingly, Wells Fargo brings this motion for clarification.

## II. BACKGROUND

Plaintiffs' Complaints in these cases focus largely on Wells Fargo's high-to-low posting practice and include specific factual allegations of how each plaintiff was supposedly injured by this particular practice. Plaintiffs also interjected into their Complaints a scattershot of vague claims about more than a dozen business practices *other* than high-to-low posting (including allegations about how Wells Fargo failed to satisfy plaintiffs' "expectations" about how their accounts would work), but they failed to allege *any* facts identifying which of the plaintiffs (if any) were actually affected by each of these other practices. For example, plaintiffs allege that Wells Fargo "provides customers with inaccurate balance information";[1] "misrepresents the accuracy and reliability of this published 'account balance' information in its marketing materials and customer contractual agreements";[2] and "assesses overdraft fees at times when actual funds in [a] customer['s] account are sufficient to cover all debits that have been submitted to the [b]ank … by placing a 'hold' on [the] funds in the customer's account."[3] But,

---

[1] *See, e.g.*, *Gutierrez* Second Amended Complaint ("SAC") ¶ 59; *Martinez* SAC ¶ 58; *Garcia* SAC ¶ 57; *Spears-Haymond* Third Amended Complaint ("TAC") ¶ 50.

[2] *See, e.g.*, *Gutierrez* SAC ¶ 60; *Martinez* SAC ¶ 59.

[3] *See, e.g.*, *Gutierrez* SAC ¶ 63; *Martinez* SAC ¶ 62; *Garcia* SAC ¶ 59; *Spears-Haymond* TAC ¶ 52.

based on plaintiffs' Complaints, there is simply no way to determine which of the named plaintiffs (if any) were harmed by any of these alleged practices.

Unable to learn from the Complaints any specific facts giving rise to any particular plaintiff's challenges to these additional business practices, Defendants' Omnibus Motion to Dismiss asked that the Court "at a minimum strike allegations concerning such other business practices from the complaints as immaterial and impertinent matter" pursuant to Rule 12. Omnibus Motion (DE # 217) at 96.[4] In its ruling on the Omnibus Motion, the Court discussed other portions of the banks' arguments, but did not address the section concerning plaintiffs' allegations about business practices other than high-to-low posting. *See* Mar. 11, 2010 Order (DE # 305).

In an attempt to avoid confusion, Defendants asked the Court to clarify "whether any alleged business practices, other than posting order and resulting overdraft fees, have been properly placed in issue by the Complaints and will therefore be a part of this proceeding going forward." Defendants' Apr. 5, 2010 Motion to Clarify (DE # 325) at 1. Noting the "substantial impact [on] the scope and breadth of discovery," Defendants requested a ruling from the Court "that the only business practice at issue in this litigation is posting order and resultant overdraft fees." *Id*. at 6. In the alternative, Defendants requested that "Plaintiffs … be required to amend the Complaints to demonstrate that the named plaintiffs have standing to assert such claims [relating to business practices other than high-to-low posting] because they were actual victims of and harmed by such practices." *Id*. The Court deferred ruling on this motion for clarification,

---

[4] The pertinent section of the Omnibus Motion (pages 87-96) is attached hereto as **Exhibit A** for the Court's convenience.

finding that "this issue is better addressed after discovery is taken and the facts are more clearly known to all parties." Jun. 1, 2010 Order (DE # 532) at 3.

With the Court's observation on this issue in mind, Wells Fargo sought discovery that would uncover the basic facts of each plaintiff's claim and, in particular, the specific business practices from which each plaintiff alleges harm. Wells Fargo asked each plaintiff to identify the practices he or she is personally challenging and the circumstances under which he or she was injured by the practice.[5] And, because the "other practices" (and several state statutory causes of action asserted in the Complaints) included elements of alleged misrepresentation, Wells Fargo asked plaintiffs to identify any communications they allege were misleading.[6] Wells Fargo also requested that each plaintiff provide information about any specific instances in which the bank allegedly provided him or her with inaccurate balance information – facts that are plainly relevant to plaintiffs' allegations that "[Wells Fargo] provides customers with inaccurate balance information."[7] Finally, Wells Fargo asked plaintiffs to identify their "expectations" about certain bank practices, as plaintiffs had alleged in their Complaint that Wells Fargo had not fulfilled these "expectations."[8]

Plaintiffs refused to provide substantive responses to any of these interrogatories, and Wells Fargo (along with several other bank defendants) moved to compel responses. *See*

---

[5] *See* Motion to Compel Discovery from the *Martinez* and *D. Gutierrez* Plaintiffs (DE # 909) Ex. A at 3-4, 7-8 (Interrogatory Nos. 5, 11).

[6] *See* Motion to Compel Discovery from the *Martinez* and *D. Gutierrez* Plaintiffs (DE # 909) Ex. A at 4-5 (Interrogatory Nos. 6, 11); Motion to Compel Discovery from the *Garcia* and *Spears-Haymond* Plaintiffs (DE # 907) Ex. A at 4 (Interrogatory Nos. 9, 10).

[7] *See* Motion to Compel Discovery from the *Martinez* and *D. Gutierrez* Plaintiffs (DE # 909) Ex. A at 6-7 (Interrogatory Nos. 8, 9).

[8] *See* Motion to Compel Discovery from the *Martinez* and *D. Gutierrez* Plaintiffs (DE # 909) Ex. A at 5 (Interrogatory No. 7).

Motion to Compel Discovery from the *Martinez* and *D. Gutierrez* Plaintiffs (DE # 909); Motion to Compel Discovery from the *Garcia* and *Spears-Haymond* Plaintiffs (DE # 907).

At oral argument on December 8, 2010, the Court agreed that the moving banks are entitled to know the factual bases of plaintiffs' claims to the extent there are allegations about those claims in their Complaints and those claims are genuinely at issue in this litigation. *See* Dec. 8, 2010 Status Conf. Tr. at 69, 73-74 (DE # 1010).[9] However, the Court indicated that not all of the allegations in plaintiffs' Complaints are actually at issue. Certain allegations – such as those involving plaintiffs' beyond-the-contract expectations – are simply immaterial "nonsense." *Id*. at 76 ("THE COURT: But, you see, [pleading one's expectations is] nonsense .... And [if] somebody moves to strike it, I'm going to strike it because it doesn't matter a hill of beans what they're arguing. It's what they signed, ultimately."). The Court indicated that no discovery would be needed on such types of claims or allegations, because they would not be allowed to be introduced at trial. *Id*.

On December 16, 2010, the Court issued its Discovery Order (DE # 1016). In the Discovery Order, the Court divided certain of the banks' discovery requests into seven broad categories, and denied much of the banks' motions as to each of the categories primarily on the grounds that the requests sought immaterial facts. Specifically, the Court recognized that the

---

[9] "MR. JOLLEY: …[Wells Fargo has] asked interrogatories, asking each of the individual plaintiffs, you know, Mr. Plaintiff or Ms. Plaintiff, what happened to you that caused you to be injured? What were the facts of the thinks that the bank did to you that caused you to want to be involved in this lawsuit? What was said to you in particular? How were you, in particular, injured?

…

[W]e should at least know if the plaintiff is claiming they received an advertisement that they claim is fraud.

THE COURT: Yes. And you know, I tend to agree with you on that." *Id.*

"alleged common nucleus of specific facts pled" in this litigation is the banks' high-to-low posting practices (*id*. at 2), and that "controlling in this litigation is what the parties agreed to in their contracts" (*id*. at 11). Information outside of these subject areas is generally "immaterial" and not the proper subject of discovery. *See id.* at 4 (holding that "discovery requests on facts immaterial to any relevant issue" are improper).

Wells Fargo asked plaintiffs if, in light of the Court's comments at the December 8 hearing and in its subsequent Discovery Order, they would agree to respond to discovery relating to plaintiffs' claims about other business practices that are the subject of this motion for clarification. *See* **Exhibit B** (attached hereto) ("[W]ill plaintiffs provide supplemental substantive responses to Wells Fargo's interrogatories so as to identify … each specific communication or business practice (other than posting order) that each plaintiff claims personally affected him or her…?). Plaintiffs responded by "declin[ing] to provide supplemental responses to Wells Fargo's interrogatories regarding these issues." *See* **Exhibit C** (attached hereto).[10] Plaintiffs therefore appear to be taking the incongruent position that their claims and allegations relating to business practices other than high-to-low posting remain at issue in the case but that Wells Fargo is not entitled to discovery of the facts supporting those allegations.

Meanwhile, at the same time that plaintiffs are refusing to provide such discovery to Wells Fargo, they are continuing to pursue extensive discovery *from* Wells Fargo relating to

---

10 There is still substantial disagreement between the parties as to which of the discovery requests raised in Wells Fargo's motion to compel have been resolved by the Court's Discovery Order. Plaintiffs appear to have taken the position that the Court effectively denied Wells Fargo's motion in its entirety and that plaintiffs are not required to supplement *any* of their discovery responses. Wells Fargo does not believe this was the Court's intent. The parties are in the process of discussing a joint proposed order that would set out the requests that the parties agree have been resolved, the requests that give rise to the issues raised in this motion for clarification, and the remaining requests on which a dispute still remains.

these other business practices and to the "expectations" and "motivations" of the parties. For example, plaintiffs have demanded (and are receiving) thousands of pages of documents relating to, for example: (i) customers' "expectations" about posting order; (ii) advertising and marketing "used to promote the use of your online banking services"; and (iii) "any internal ethical standards to which you hold your company and/or its employees."[11] In fact, plaintiffs have recently moved to compel further responses from Wells Fargo on such discovery – i.e., discovery aimed at Wells Fargo's "motives" and plaintiffs' "expectations."[12] Plaintiffs are also seeking corporate deposition testimony on, for example, (a) overdraft protection programs; (b) the circumstances surrounding all overdraft fees received by plaintiffs (including those having *nothing* to do with posting order); (c) the bank's reasons and motivations for adopting challenged practices or including certain language in its disclosures and communications with customers; and (d) surveys and focus group results concerning a variety of practices other than posting order,[13] all of which would appear to be topics that are immaterial under the standards set out in the Discovery Order.

## III. <u>ARGUMENT</u>

In light of the Court's recent guidance on discovery and the related discussion at oral argument, Wells Fargo respectfully requests that the Court now clarify the apparent inconsistencies between that guidance and its prior rulings in connection with the Omnibus Motion to Dismiss. The claims and allegations in plaintiffs' Complaints concerning business

---

[11] *See* DE # 1033-1 at 100, 105, 111 (Request Nos. 46, 57, 72).

[12] Plaintiffs' Motion to Compel Discovery (DE # 1033) at 3 (seeking "Defendants' motives") & at 8 (seeking information relating to "customers' reasonable and justified expectations").

[13] *See, e.g.*, **Exhibit D** (Topic Nos. 3-5, 7, 10, 11) (attached hereto).

practices other than high-to-low posting are either material (in which case Wells Fargo is entitled to discovery on them) or immaterial (in which case Wells Fargo needs some procedural mechanism through which they can be stricken or dismissed from the litigation).

The Court has inherent authority to narrow the issues in the cases before it. *Ebrahimi v. City of Huntsville Bd., of Educ.*, 114 F.3d 162, 165 (11th Cir. 1997) ("[I]t is particularly important for district courts to undertake the difficult, but essential, task of attempting to narrow and define the issues from the earliest stages of the litigation [to ensure] the orderly, efficient, and economic disposition of disputes."). The Eleventh Circuit has recognized that "when district courts abdicate this responsibility, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Id.* (quotations omitted). Therefore, if – as the Court has stated – the "common nucleus of specific facts pled" in this litigation is Wells Fargo's high-to-low posting practices, and the bank's legal obligations are controlled by "what the parties agreed to in their contracts" (Discovery Order at 2, 11), it is important to narrow the topics being litigated to those actually at issue.

If a claim is genuinely at issue, the opposing party is entitled to obtain discovery of the facts and circumstances that support that claim. Under the federal rules, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also* Discovery Order at 4 ("Where discovery requests are aimed at obtaining discovery that is material, those discovery requests are proper.").

Here, the Court first declined to dismiss plaintiffs' claims relating to other business practices (indicating that the facts relating to those claims could be brought out in discovery), but then appears to have denied Wells Fargo's motion to compel such discovery

(indicating that plaintiffs' claims on other business practices are not genuinely at issue). As it stands, Wells Fargo is in the difficult position of having to prepare a defense against still-active claims in plaintiffs' Complaints relating to these other business practices, while being unable to obtain even the most basic discovery on those claims because the Court appears to have determined that the allegations supporting those claims are immaterial.

At the same time, plaintiffs continue to actively seek their own discovery from Wells Fargo on these very same issues. Plaintiffs have demanded (and received) thousands of pages of documents concerning practices other than posting order. *See* generally DE #1033-1 (Document Responses). Plaintiffs have moved to compel additional responses on such other practices, on the bank's "motives" and "decision-making processes," and on customer "expectations. DE # 1033 at 3, 8. And plaintiffs have pursued Rule 30(b)(6) depositions on similar topics. In order to avoid prejudice created by one-sided discovery, Wells Fargo needs clarification from the Court on what claims are immaterial (and not subject to discovery by *either* side) and what claims are genuinely at issue (and are properly subject to discovery by both parties).

If certain claims and allegations in plaintiffs' Complaint are not at issue, it is important that some mechanism be established to formalize this determination, such as through reconsideration or clarification of the Omnibus Motion to Dismiss (as it relates to these claims) or through an early motion for partial summary judgment. In addition to Wells Fargo's obvious interest in avoiding the unnecessary expense of responding to discovery from plaintiffs on immaterial matters, this is important because most of these cases will not be tried by this Court. All but one of the cases against Wells Fargo (including those filed against the former "Wachovia Bank, N.A.") will, if not resolved before trial, be transferred for trial to different judges in

different jurisdictions who may have different views about the proper scope of evidence at trial. The Court has already acknowledged this as a serious concern. *See* Dec. 8, 2010 Status Conf. Tr. (DE # 1010) at 74:24-75:8 (The Court: "And I agree with you about maybe a California judge or an Illinois judge might look at it differently. I'm not trying to put anybody in a difficult position."). If this Court limits discovery to high-to-low posting (described by the Court as the "common nucleus of specific facts pled") and the contractual obligations between the parties concerning that practice, but leaves allegations about other practices and beyond-the-contract expectations in the case, then Wells Fargo could find itself in trials in other jurisdictions defending itself against claims on which it had no opportunity to obtain discovery.

Therefore, Wells Fargo requests clarification on whether the allegations in plaintiffs' Complaints involving bank practices *other* than "debiting Plaintiffs' accounts from the 'largest to smallest'" (Discovery Order at 2) or about expectations beyond what the parties agreed to in their contracts are to be considered part of plaintiffs' claims in these cases. If such claims are not genuinely at issue here, Wells Fargo requests that a mechanism be establish though which they can be dismissed from the litigation – such as through a reconsidered or renewed Rule 12 motion, or through an early motion for partial summary judgment. Such a procedure would substantially streamline the cases, avoid many future discovery disputes, and eliminate the possibility that some other judge in some other district will allow claims to proceed to trial on which discovery has not been permitted. If, however, such claims are to remain extant, Wells Fargo seeks confirmation from the Court that discovery is not to be one-sided and that it is entitled to discovery on these claims, including answers to its interrogatories asking which particular plaintiff was injured by each particular practice.

## IV. CONCLUSION

For the foregoing reasons, Wells Fargo requests clarification on the status of the claims in plaintiffs' Complaints concerning practices other than posting order or about "expectations" other than those contained in the parties' contracts concerning posting order. Wells Fargo requests that the Court establish a mechanism – such as through a reconsidered or renewed Rule 12 motion or through an early motion for partial summary judgment – to remove those claims from the litigation. In the alternative, Wells Fargo requests confirmation that it is entitled to full discovery on these claims, including answers to its discovery requests designed to identify which plaintiffs were allegedly harmed by each of the alleged practices and the facts underlying such claims.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), Wells Fargo certifies that it conferred with plaintiffs' counsel on multiple occasions beginning on December 30, 2010, in a good faith effort to resolve the need for filing this motion. The parties were not able to resolve their differences as to the issues raised in this motion. Plaintiffs disagree that any clarification is needed and intend to oppose this motion.

DATED: January 10, 2011

COVINGTON & BURLING LLP

By: _____/s/____________________________
Sonya D. Winner (*pro hac vice*)
(swinner@cov.com)
David M. Jolley (*pro hac vice*)
(djolley@cov.com)
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Emily Johnson Henn (*pro hac vice*)
(ehenn@cov.com)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-7400
Facsimile: (650) 632-4800

Barry R. Davidson
(bdavidson@hunton.com)
Florida Bar No. 107678
Jamie Zysk Isani
(jisani@hunton.com)
HUNTON & WILLIAMS
Florida Bar No. 728861
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

Attorneys for Defendant
WELLS FARGO BANK, N.A.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 10, 2011, I served the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the forgoing document is being served this day either by Notice of Electronic filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

/s/

David M. Jolley (*pro hac vice*)
(djolley@cov.com)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA, 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091