**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

**THIS DOCUMENT RELATES TO:**

*Garcia, et. al. v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:08-cv-22463-JLK

*Spears-Haymond v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-21680-JLK
N.D. Cal. Case No. 3:08-cv-4610

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834-JLK
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685-JLK
D. Or. Case No. 3:09-cv-01239-ST

**PLAINTIFFS' OPPOSITION TO MOTION FOR CLARIFICATION OF DEFENDANTS WELLS FARGO BANK AND WACHOVIA BANK**

Plaintiffs in the above-captioned cases ("Plaintiffs") respectfully submit this opposition to the motion for "clarification" [**DE # 1036**] filed by Defendants Wells Fargo Bank, N.A. and Wachovia Bank, N.A. (collectively, "Defendants" or "the Banks").

## I. INTRODUCTION

Though styled as a motion for "clarification," Defendants' motion is in fact a procedurally deficient attempt to seek reconsideration of the Court's ruling that the Banks' contention and other interrogatories are premature and improper. **[DE # 1016]**.

Re-hashing unsuccessful arguments from their motions to compel, and quoting selectively from the Court's prior rulings, Defendants claim to be "confused" about the status of Plaintiffs' allegations regarding policies and practices other than the Banks' intentional re-sequencing of debit transactions to drive up overdraft charges. In their motion, Defendants attempt to manufacture a "conflict" between the Court's rulings denying their motions to compel and their motion to dismiss. They claim that, to resolve this supposed "conflict," the Court must either: (1) withdraw its discovery Order and require Plaintiffs to respond further, *right now*, to Defendants' interrogatories; or (2) provide Defendants with a mechanism, *right now*, to carve out from this litigation unfair and deceptive business practices that Plaintiffs alleged in good faith and are pursuing on behalf of themselves and the putative class. The Court should do neither, but should allow discovery to proceed.

There is nothing unclear or inconsistent about this Court's rulings. Rather, the Court's Order denying Defendants' motions to compel is clear, correct, and fully consistent with the Court's prior rulings in this MDL. In denying Defendants' omnibus motion to dismiss last year, the Court found that Plaintiffs alleged plausible harm from various business practices, including practices other than re-sequencing. In denying Defendants' recent motions to compel, the Court did *not* find that these additional practices are immaterial.

Instead, the Court found that Defendants' interrogatories were ***premature*** at this time and improper for other reasons, including because Defendants themselves possess the information they seek. As discussed in greater detail below and in Plaintiffs' oppositions to the Banks' motions to compel **[DE # 939–42]**, all of the interrogatories at issue either call for information, such as representations in the Banks' promotional materials, within Defendants' own control, or for details that Plaintiffs cannot provide before conducting an extended analysis of the Banks' relevant practices and data concerning their accounts – information that is likewise in Defendants' control and that Plaintiffs currently seek in discovery.

Defendants' argument that this Court's discovery ruling will prevent them from ever taking discovery regarding practices other than re-sequencing is without merit. Plaintiffs have never suggested that Defendants are not entitled to take discovery regarding these practices. Such discovery, however, must take the proper form, be proper in scope, and occur at the proper time. The discovery requests at issue in Defendants' motions to compel fail to meet these criteria and, as a result, the motions were properly denied.

Defendants' argument that under this Court's rulings they lack a mechanism for challenging Plaintiffs' claims similarly lacks merit. Defendants will have ample opportunity to challenge Plaintiffs' claims – *e.g.*, through Rule 56 summary judgment motions and/or at trial. However, Defendants cannot properly ask the Court to carve out these practices at this early stage of the litigation – which they are now requesting *for the third time*[1] – when Plaintiffs have not had an opportunity to complete discovery on the practices. As the Supreme Court has long recognized, a wrongful scheme must not be parsed into bits and pieces, but must be analyzed as a

[1] In both prior instances, the Court declined to hold that the additional practices had no relevance to Plaintiffs' claims. **[DE # 305, 532]**. A third bite at the apple is two bites too many.

whole. *Andresen v. Maryland*, 427 U.S. 463, 481 n.10 (1976); *Continental Ore Co. v. Union Carbide & Carbon Corp*., 370 U.S. 690, 698-99 (1962).

In reality, Defendants are not confused, and face no conundrum. They simply don't like the Court's discovery ruling. Their motion for reconsideration should be denied.

## II. BACKGROUND

In their operative complaints, Plaintiffs allege that Defendants engaged in several unfair and deceptive business practices that caused Plaintiffs and the putative class members to incur excessive overdraft charges. While the complaints upheld by this Court discuss the Banks' practice of reordering debit transactions from highest-to-lowest dollar amount, the complaints also allege that Defendants engaged in other wrongful practices that went hand-in-hand with the reordering scheme and also caused harm.[2]

Plaintiffs' allegations concerning these related practices were made in good faith on behalf of the entire class they seek to represent. The complaints make it clear that each named

---

[2] The additional practices cannot be divorced from the reordering scheme. In many instances, they kept the scheme hidden from consumers' view and exacerbated the harm. For example, Defendants intentionally failed to provide accurate account information through their electronic networks, despite the ability to do so, and made false representations that account information on the Internet was accurate and instantaneous. As a consequence, many consumers did not know they lacked sufficient funds to make purchases or withdraw money from ATMs – falling straight into Defendants' overdraft trap. Defendants also intentionally failed to notify their customers that a debit card purchase or ATM withdrawal would result in an overdraft fee (despite the ability to do so), and the customers therefore had no opportunity to cancel transactions at the point of sale to avoid the fees. After a bench trial, the Honorable William Alsup, a U.S. District Court Judge, found that these "allied" practices "exacerbated" the harm to the class. *Gutierrez v. Wells Fargo Bank, N.A.*, -- F. Supp. 2d --, 2010 WL 3155934, at *1 (N.D. Cal. Aug. 10, 2010) ("The draconian impact of this bookkeeping device has then been exacerbated through closely allied practices specifically "engineered" – as the bank put it – to multiply the adverse impact of this bookkeeping device. These neat tricks generated colossal sums per year in additional overdraft fees, just as the internal bank memos had predicted. The bank went to considerable effort to hide these manipulations while constructing a facade of phony disclosure.").

Plaintiff claims to have suffered harm as a result of all of the allied practices. [*E.g.*, **DE # 354** ¶¶ 55-66, 98-102, 111-13].

On December 22, 2009, several defendant Banks moved to dismiss the claims asserted in the various complaints. Among other things, the Banks asked the Court to strike allegations regarding business practices other than their re-sequencing of debit transactions. [**DE # 217** at 96]. On March 11, 2010, the Court issued its Order on Defendants' Omnibus Motion to Dismiss. [**DE # 305**]. The Court held that Plaintiffs adequately pleaded several claims under both statutory and common law. The Court did not strike Plaintiffs' allegations regarding practices other than re-sequencing, as the Banks had urged. Instead, the Court summarized *all* of the wrongful practices Plaintiffs had alleged [**DE # 305** at 5-8], stating that "Plaintiffs allege that they were personally injured by Defendant bank's practices . . . and that they were forced to pay overdraft fees as a consequence of the Banks' wrongful *policies and practices* . . . ." *Id.* at 8 (emphasis added).

Unhappy with the Court's Order, the Banks filed a motion for "clarification" on April 5, 2010, in which the Banks repeated their demand that the Court strike the additional business practices. [**DE # 325**]. On June 1, 2010, the Court denied Defendants' motion without prejudice, finding that any attempt by Defendants to have particular practices eliminated from these cases would have to wait until "the end of discovery," for "this issue is better addressed after discovery is taken and the facts are more clearly known to all parties." [**DE # 532**].

On May 20, 2010, Defendants served discovery requests, including the interrogatories at issue in Defendants' present motion. Plaintiffs responded to the discovery requests while also objecting to some on the grounds that, *inter alia*, they were premature and improperly sought information in Defendants' control, such as details regarding Defendants' false advertisements

and specific instances when the Bank provided Plaintiffs with inaccurate account balance information. Defendants then moved to compel further interrogatory responses. [**DE # 909**].

Following argument, on December 16, 2010, the Court issued its Opinion Setting Standards for Resolution of Discovery Interrogatories and Production of Documents. [**DE # 1016**]. In addition to allegations of debit re-sequencing, the Court found that the "Complaints set forth a number of other alleged agreements, policies and practices, contended by Plaintiffs to unlawfully damage them." [**DE # 1016** at 2-3]. Rejecting Defendants' arguments as to why Plaintiffs should be forced to offer premature discovery responses – the same arguments Defendants now renew – the Court agreed with Plaintiffs that "[t]he best source of that information is found within the records the bank already possesses." [**DE # 1016** at 10].

> Frequently a party will not be able to provide useful answers to contention interrogatories until all discovery is completed. [Citation]. Compelling parties to respond partially to such interrogatories early in the litigation they will likely simply be asked to respond again, upon completion of document review or other phases of discovery, lacks finality and compounds the time, effort and cost of the litigation. . . . This is particularly wasteful where, as here, many of the interrogatories are directed to the proponents' own statements and conduct.

[**DE # 1016** at 5-6]. Defendants' motion for "clarification" followed. [**DE # 1036**].

## III. ARGUMENT

### A. Defendants Improperly Try to Re-Litigate.

Defendants' motion is a thinly-veiled attempt to re-litigate issues already decided. Defendants call their motion a motion for "clarification" because the law governing motions for reconsideration is extremely stringent. Indeed, relief on reconsideration is "an extraordinary remedy to be employed sparingly." *S.E.C. v. Huff*, 2010 WL 541634, at *1 (S.D. Fla. Feb. 9, 2010). "The standard for granting reconsideration is strict and will generally be denied unless the moving party can point to *controlling decisions or data* that the court overlooked." *United*

*States v. Zarabozo*, 2008 WL 5062463, at *1 (S.D. Fla. Nov. 26, 2008) (emphasis in original). Such a motion must be denied unless the movant clearly establishes: (1) a material intervening change in controlling law; (2) the availability of new evidence justifying reversal of the court's previous decision; or (3) the need to correct clear error or prevent manifest injustice. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002).

Defendants do not even try to establish any of these things – nor could they. Instead, they run afoul of the longstanding rule that "motions to reconsider are not a platform to relitigate arguments previously considered and rejected." *Busby v. JRHBW Realty, Inc.*, 642 F. Supp. 2d 1283, 1288 (N.D. Ala. 2009) (citation omitted). It is well-settled that a motion for reconsideration "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007); *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005); *accord*, *American Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (motion for reconsideration must not afford a litigant "two bites at the apple"); *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007) ("Nor may a party properly utilize a motion to reconsider as a vehicle for rehashing arguments considered and rejected in the underlying order.").

Irrespective of what Defendants may choose to call their motion, the Court should not countenance their effort to revisit old arguments. *Compare, e.g.*, **DE # 909** at 11 ("Wells Fargo is entitled to know which specific plaintiffs claim to have been injured by which specific practices."), *with* **DE # 1036** at 10 (Wells Fargo "is entitled to discovery on these claims, including answers to its interrogatories asking which particular plaintiff was injured by each

particular practice."); *compare also, e.g.*, **DE # 909** at 1 (asserting that plaintiffs think "discovery is a one-way street."), *with* **DE # 1036** at 10 (asserting that "discovery is not to be one-sided").

Defendants' arguments have not improved with age. In making them once more, Defendants disregard the longstanding rule that "motions to reconsider are not a platform to relitigate arguments previously considered and rejected." *Busby*, 642 F. Supp. 2d at 1288; *see also Arthur*, 500 F.3d at 1343 (11th Cir. 2007). While Defendants disagree with this Court's analysis of their arguments, that cannot provide a legitimate basis for relief. *See Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1246 n.2 (S.D. Ala. 2008) (noting it is "improper to utilize a motion to reconsider to ask a district court to rethink a decision once made, merely because a litigant disagrees"). The motion should be denied.

### B. The Court's Ruling on Defendants' Motions to Compel Should Not Be Disturbed.

In repeating arguments this Court already considered and rejected, Defendants dispute the Court's rulings in connection with four specific categories of their interrogatories. [**DE # 1036** at 4]. The Court's conclusion – that Plaintiffs need not provide further responses to these interrogatories at this time – is well-supported, carefully reasoned, and should not be disturbed.

First, Defendants argue that they require further responses to interrogatories asking "each plaintiff to identify the practices he or she is personally challenging and the circumstances under which he or she was injured by the practice."[3] [**DE # 1036** at 4]. No further responses are

---

[3] Defendants' renewed argument bears out the Court's suspicion that their true motive in pursuing such discovery is not to learn about the basis for Plaintiffs' claims, but to try to force the early abandonment and/or dismissal of some of Plaintiffs' claims before Plaintiffs have had an opportunity to take the required discovery. *See* **DE # 1016** at 4 (noting that contention interrogatories relating to material already in the requesting party's possession raise "the logical question: 'Is the requesting party simply trying to inundate the opponent for an improper purpose of forcing abandonment of the cause?'").

necessary. To begin with, it is clear from the operative complaints that each named Plaintiff alleges he or she was subjected to, and harmed by, *all* of the unfair practices alleged. [*E.g.*, **DE # 354** ¶¶ 55-66, 98-102, 111-13]. This alone puts to rest any possible confusion as to which Plaintiff alleges which wrongful practices.

In addition, Defendants' interrogatories prematurely demand that Plaintiffs supply all the details of precisely how and when each of them was subjected to every wrongful practice. This is precisely what Plaintiffs are trying to uncover and determine through discovery from the Banks. It is not realistic for Plaintiffs to have ascertained these details before completing an extended analysis of the Banks' practices and their effects on Plaintiffs and the proposed class. As Plaintiffs allege, Defendants hid their accounting methods and other practices, leaving consumers in the dark as to how they incurred multiple overdraft fees when Defendants had approved their debit transactions. [**DE # 354** ¶¶ 55-66]. Until the Banks fully reveal their practices, and produce the complete account data showing Plaintiffs' and the class's transactions, Plaintiffs cannot detail exactly how, and how much, each wrongful practice harmed them.

Accordingly, the Court properly denied Defendants' motions to compel as to these interrogatories. **DE # 1016** at 5-7, 10 ("The best source of that information is found within the records that the banks already possess. Therefore, the Banks' Motion to Compel the identification of each alleged improper fee is denied.").

Second, Defendants trot out their old argument that Plaintiffs should identify the details of the specific false advertisements and other representations they saw. Defendants' assertion that Plaintiffs must identify specific ads is incorrect as a matter of law. *See, e.g., In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009) ("[W]here, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of

specificity that the plaintiff relied on particular advertisements or statements."). Furthermore, as a practical matter, it is unreasonable to expect private individuals who, unlike Defendants, do not keep files of the Banks' historical ads, brochures, or other marketing materials, to be able to recall from memory the precise details of representations they saw. *See United States v. Hall*, 44 F. 864, 876 (S.D. Ga. 1890) ("At best the human memory is fallible"). Plaintiffs have described in considerable detail the nature of the Banks' statements they saw.[4] That is more than sufficient, until all the misrepresentations have been identified and analyzed.

Thus, the Court properly denied Defendants' motions to compel as to these interrogatories. **DE # 1016** at 11 ("The banks seek documents issued by them to the Plaintiffs in the promotion of their banking services. It follows then that the banks have access to this information and their request is unnecessary.").[5]

Third, Defendants recycle their argument that Plaintiffs must identify "any specific instances in which the bank allegedly provided him or her with inaccurate balance information." [**DE # 1036** at 4]. Again, Plaintiffs cannot reasonably be expected to remember exactly when they checked their balances or whether information they received each time was accurate. Any

[4] *See*, *e.g.*, **DE # 437** ¶ 142 ("Wells Fargo claims that monies used to fund electronic debit card transactions are 'automatically' or 'immediately' withdrawn from the account-holder's funds or that using an electronic debit card is like using cash when, in fact, Wells Fargo subsequently re-sequences the electronic debits after the transactions occur to its benefit."); ¶ 55 ("Wells Fargo advertises to customers that its online website provides the 'most current information regarding the funds you have available for withdrawal, ATM, or check card purchases or writing checks.' It claims that the account history it shows through its online banking service shows up-to-date transactions listed in the order transacted, starting with the most recent."); *see also id.* ¶¶ 39-44, 46, 56-60.

[5] It is undisputed that Defendants have access to the representations they made to customers and the public, and that Defendants can identify them based on Plaintiffs' descriptions. Some of these statements, in fact, are the very statements against which Wells Fargo tried to defend – but which Judge Alsup found both deceptive and actionable – in the recent *Gutierrez* trial. *See* 2010 WL 3155934, at *48-49.

attempt at this time to list specific instances would amount to guesswork that would be of little value to the Court or the parties. The law "avoids the necessity of relying upon the fallible memory of witnesses, when time may have dimmed their recollection of past transactions[.]" *Fletcher v. Fuller*, 120 U.S. 534, 546 (1887). The information Defendants seek can be gleaned from the Banks' records, which are more reliable than Plaintiffs' imperfect memories. The Court therefore properly denied Defendants' motions to compel regarding these interrogatories. **DE # 1016** at 10 ("The best source of that information is found within the records the bank already possesses.").

Last, Defendants point to interrogatories seeking information about Plaintiffs' expectations of Bank practices, and note, somewhat paradoxically, that the Court has held Plaintiffs' personal "expectations" are irrelevant to their claims. [**DE # 1036** at 4 (citing **DE # 1016** at 11)]. Plaintiffs previously explained that they believe their complaints sufficiently allege their relevant expectations concerning the order in which the Banks would post debit transactions, but that if this Court deemed it necessary they would update their responses to make clear they expected transactions to be posted chronologically, in the order in which the transactions were entered into. [**DE # 941** at 6 fn. 1]. The Court's guidance on this issue indicates it is not necessary to provide such a supplemental response, nor supplemental responses that Plaintiffs assumed Defendants' promotional materials were truthful and the available balance information accurate. This guidance is well-taken. As Plaintiffs argued, and as the Court has held, it is not the purely subjective expectations of the parties, but their objectively reasonable and justified expectations that figure in the analysis of whether the contractual covenant of good faith and fair dealing has been breached. *See, e.g.*, **DE # 265** at 36; *Abels v.*

*JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1278 (S.D. Fla. 2009) (King, J.). The supplemental responses Defendants again demand would serve no purpose here.

Moreover, even if Plaintiffs' personal and subjective expectations *were* relevant to one or more of their claims, nothing prevents Defendants from examining the named Plaintiffs at their depositions about what they expected. *See, e.g., Pendlebury v. Starbucks Coffee Co.*, 2005 WL 2105024 (S.D. Fla. Aug. 29, 2005) (denying defendant's request for plaintiffs' confidential financial information where "Defendant could inquire into these areas at depositions"). Here, Defendants complain they are "unable to obtain even the most basic discovery" and that they will have "no opportunity" to develop their defenses through examination of the facts pertaining to the class representatives. [**DE # 1036** at 9-10]. This hyperbole ignores that Defendants have informed Plaintiffs they anticipate noticing and taking depositions of every class representative. Those depositions will provide Defendants with ample opportunity to question the representatives about their experiences and how the Bank's course of conduct harmed them.

**C. There Is No Conflict Between the Courts' Prior Rulings.**

As shown above, there is nothing inconsistent, and nothing unclear, about this Court's prior rulings in this litigation. In denying the omnibus motion to dismiss, the Court determined that Plaintiffs had adequately pleaded statutory and common law claims based on the wrongful business practices alleged. Nothing in the Court's Order – and Defendants point to nothing – suggests that the Court's analysis was limited to allegations concerning the Banks' practice of re-sequencing debit transactions from highest to lowest to reap exorbitant profits at the expense of consumers. To the contrary, in denying Defendants' initial request to strike allegations of business practices other than re-sequencing, the Court summarized those very allegations. [**DE # 305** at 5-8]. Asked a *second* time by the defendant Banks to strike these allegations (in their first self-styled "motion for clarification"), the Court again declined to do so. [**DE # 532**]. The Court

held that Defendants could attempt to show the legality of these other business practices following completion of discovery: "this issue is better addressed after discovery is taken and the facts are more clearly known to all parties." [**DE # 532**].

Contrary to what Defendants now argue, this Court has never suggested that the other business practices are immaterial. Instead, the Court has consistently found that the full panoply of improper practices that led to imposition of excessive overdraft fees remains part of these cases. Defendants are right that the Court found the "alleged common nucleus of facts pled assert a common practice by Defendants, to enter charges debiting Plaintiffs' accounts from the 'largest to smallest' thus maximizing the overdraft fee revenue for themselves."[6] **DE # 1016** at 2. Immediately thereafter, the Court found that, "[i]n addition to the allegations about posting order, the Complaints set forth a number of other alleged agreements, policies, and practices, contended by Plaintiffs to unlawfully damage them." *Id*. at 2-3. Defendants conveniently omit the second finding, and cannot point to anything in the Court's discovery Order suggesting these other policies and practices are somehow immaterial.

On the other hand, the discovery Order explicitly recognizes that the disputed interrogatories are premature and improper. This finding is fully consistent with the Court's prior rulings. Defendants' surface-level reading of the Court's discovery Order, or, perhaps, their over-analysis, prevents them from seeing there is no inconsistency between the findings (1) that all of Defendants' overdraft-related business practices are at issue, and (2) that several interrogatories Defendants propounded are premature, unnecessary and otherwise improper.

---

[6] Common questions of law or fact ordinarily predominate over questions affecting only individuals under Federal Rule of Civil Procedure 23(b)(3) when the claims all arise from a common nucleus of operative facts. *Sinclair v. United Healthcare of Ga*., 1998 WL 34080882, at *5 (N.D. Ga. Aug. 31, 1998).

Although Defendants also complain that the Court's rulings deprive them of a mechanism for challenging Plaintiffs' claims to the extent they are based on Bank practices other than wrongful reordering, Defendants have already tried and failed to successfully attack the sufficiency of Plaintiffs' allegations regarding such practices. And Defendants will have additional opportunities to challenge all aspects of Plaintiffs' claims under Rule 56 summary judgment procedures and/or at trial. But the notion that Defendants should be given that opportunity now, before Plaintiffs have even completed discovery on these issues, is frankly absurd.

## IV. CONCLUSION

For all of these reasons, the Court should deny Defendants' motion for reconsideration.

Dated: January 27, 2011

Respectfully Submitted,

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Robert C. Gilbert, Esquire
Florida Bar No. 561861
bobby@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Miami, Florida 33137
Tel: (305) 571-8550
Fax: (305) 571-8558

*Plaintiffs' Lead Counsel*

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No. 0188015
mhutts@baronbudd.com
Mazin A. Sbaiti
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Jaron Shipp, Esquire
California Bar No. 264401
jshipp@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webbllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th Street, 34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@alterslaw.com