**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

**THIS DOCUMENT RELATES TO:**

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685
D. Or. Case No. 3:09-cv-01239-ST

*Zankich, et al. v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

**OPPOSITION OF DEFENDANT WELLS FARGO BANK, N.A.**
**TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS REGARDING**
**WELLS FARGO'S RETENTION OF TRANSACTION DATA**

# TABLE OF CONTENTS

**PAGE**

**I. INTRODUCTION** .......... 1

**II. BACKGROUND** .......... 1

- **A. The Processing of Debit Card Transactions** .......... 1
- **B. The Prior Use and Understanding of Wells Fargo's Data and Retention Practices by Plaintiffs' Counsel** .......... 2

**III. DEBIT-CARD AUTHORIZATION REQUEST "TIMESTAMPS"** .......... 3

- **A. Wells Fargo Has Retained Every Scrap of Timestamp Data Since 2002.** .......... 3
- **B. Wells Fargo Is Entitled to Store Authorization Timestamps in Authorization Reports Instead of on Its Debit-Card Processing Systems.** .......... 4
- **C. Wells Fargo Cannot Preserve Timestamp Data That Never Existed.** .......... 8

**IV. AVAILABLE BALANCE AT TIME OF AUTHORIZATION** .......... 8

- **A. Available Balances at the Time of Authorization Are Not Relevant.** .......... 9
- **B. Plaintiffs' Cannot Claim Spoliation After Waiting Years to Complain About Wells Fargo's Preservation Practices.** .......... 10

**V. THERE IS NO BASIS FOR SANCTIONS BASED ON ALLEGED SPOLIATION.** .......... 12

**VI. CONCLUSION** .......... 14

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Banco Latino, S.A.C.A. v. Gomez Lopez*,
53 F. Supp. 2d 1273 (S.D. Fla. 1999) ....................13

*Calixto v. Watson Bowman Acme Corp.*,
2009 WL 3823390 (S.D. Fla. Nov. 16, 2009)....................14

*Fujitsu Ltd. v. Federal Express Corp.*,
247 F.3d 423 (2d Cir. 2001)....................11

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*,
__ F. Supp. 2d __, 2010 WL 3368654 (S.D. Fla. Aug. 23, 2010) ....................12, 13, 14

*Oldenkamp v. United Am. Ins. Co.*,
619 F.3d 1243 (10th Cir. 2010) ....................8, 13

*Peery v. Serenity Behavioral Health Systems*,
2009 WL 1438939 (S.D. Ga. May 15, 2009)....................11, 13

*Quinby v. WestLB AG*,
2005 WL 3453908 (S.D.N.Y. Dec. 15, 2005) ("*Quinby I*") ....................7

*Quinby v. WestLB AG*,
245 F.R.D. 94 (S.D.N.Y. 2006) ("*Quinby II*")....................5, 7, 13

*R.F.M.A.S., Inc. v. So*,
271 F.R.D. 13 (S.D.N.Y 2010) ....................11

*Socas v. Northwestern Mut. Life Ins. Co.*,
2010 WL 3894142 (S.D. Fla. Sept. 30, 2010) ....................12

*Zubulake v. UBS Warburg LLC*,
220 F.D.R. 212....................4, 5

**FEDERAL RULES**

Fed. R. Civ. P. 26(f)(3)(C)....................11

## I. INTRODUCTION

Plaintiffs' assertion that defendant Wells Fargo Bank, N.A. ("Wells Fargo") is routinely destroying customer transaction data relevant to plaintiffs' claims rests on complete fiction. Plaintiffs argue that Wells Fargo is destroying two types of data – (1) "authorization timestamps" that show when the bank received debit-card authorization requests and (2) the "available balance" in customers' accounts at the time the bank authorized debit-card transactions. In the first category, Wells Fargo still retains every piece of information it has ever had since 2002. The information in the second category is irrelevant to plaintiffs' claims and, in any event, plaintiffs' counsel have known for years that the bank's systems do not retain it.

## II. BACKGROUND

### A. The Processing of Debit Card Transactions

Although a debit-card transaction appears simple from the perspective of the customer, the technology and procedure supporting such a transaction are in fact quite complex. When a debit card is presented for payment of a transaction by a customer, the first thing that usually (but not always) occurs is an "authorization" step. *See* Responses of Defendant Wells Fargo Bank, N.A. to Plaintiffs' First Set of Interrogatories [Interrogatory No. 9] at 20-21 (attached as Ex. A to Declaration of David M. Jolley ("Jolley Dec.")). This is where the merchant sends Wells Fargo an electronic authorization request through a third-party network such as VISA. *Id.* at 21. Upon receipt of an authorization request, Wells Fargo determines if sufficient funds are available in the customer's account given the information currently known to the bank. *Id.* at 21-22. If sufficient funds appear to be available, the bank sends an electronic response back to the merchant authorizing the purchase. *Id.* at 22.

There are, however, situations in which a debit-card transaction does not go through this authorization process. In some cases, the merchant does not submit the transaction

for authorization at all. *Id.* There are other situations in which an equipment malfunction prevents the authorization process from proceeding. *Id.* In all of these situations, Wells Fargo has no knowledge of the transaction until it is later submitted by the merchant for settlement and payment. *Id.*

Wells Fargo cannot post debit-card transactions to a customer's account until the settlement information is received from the merchant as required under federal regulations. *Id.* at 24. The bank usually (but not always) receives such settlement information within three business days. *Id.*

Wells Fargo uses three separate computer systems for the authorization and settlement of debit-card transactions: "RDS" (also referred to as the "authorization system") is the system that processes authorization requests to the extent such requests are received ; "Hogan" is the accounting system that calculates the customer's available funds and later posts the transaction to the customer's account; and the "Settlement System" is the system that directs the flow of information during the final settlement process (allowing, for example, merchants to get paid and customers' accounts to be debited). *See id.* [Interrogatory No. 10] at 31-32.

### B. The Prior Use and Understanding of Wells Fargo's Data and Retention Practices by Plaintiffs' Counsel

In *Veronica Gutierrez v. Wells Fargo & Co.*, Case No. 07-5923 WHA (N.D. Cal.), several of the same plaintiffs' counsel as represent plaintiffs in this litigation (including members of the Plaintiffs' Executive Committee) tried a case against Wells Fargo on behalf of a class of California customers on claims similar to those presented here. Jolley Dec. ¶ 2. Plaintiffs tried their case using the exact same types and sources of information that are available to them now from the data sources Wells Fargo routinely maintains. *Id.*

As a result of this prior litigation, plaintiffs' counsel have been intimately familiar with the details of the Wells Fargo data retention practices at issue in this motion since at least **July 2008**. *See id.* ¶ 3. Since that time, in addition to the expert analysis performed in the earlier litigation, plaintiffs have served document requests in this litigation, met and conferred with Wells Fargo repeatedly about those requests, and even filed motions to compel production of certain documents – yet they never once even hinted that they believed Wells Fargo's data retention practices were somehow deficient. *Id.* ¶ 5. Then, in a letter written almost two and a half years after they first became aware of these practices, plaintiffs for the very first time complained about Wells Fargo's retention practices concerning debit-card timestamps and available balance information. *Id.* ¶ 6. Shortly thereafter, plaintiffs filed this motion. *Id.*

## III. DEBIT-CARD AUTHORIZATION REQUEST "TIMESTAMPS"

### A. Wells Fargo Has Retained Every Scrap of Timestamp Data Since 2002.

The first of the two categories of transaction data that plaintiffs allege Wells Fargo has failed to preserve is information showing the dates and times that the bank received authorization requests for debit-card transactions ("authorization timestamps"). Plaintiffs claim they need these authorization timestamps to show what customers' account balances would have looked like if Wells Fargo had used a chronological (instead of a high-to-low) posting order. *See* Mot. at 8. The fundamental flaw in plaintiffs' motion is that *Wells Fargo is fully preserving this category of data*. In fact, the bank still has *all* of the authorization timestamps it has ever received since at least 2002 (which would cover any possible class period in this litigation). *See* Declaration of Paul Williamson ("Williamson Dec.") ¶¶ 3-5.

Electronic authorization requests for debit-card transactions are initially received at Wells Fargo by the RDS system. Information associated with each authorization request is then transmitted between RDS and Hogan as needed to complete the debit card authorization

process. *Id.* ¶ 2. Eventually, this information is gathered by the Settlement System, which compiles authorization data for long-term storage into "authorization reports." *Id.* ¶ 3. All of the authorization timestamps received by the bank are included in these reports – they are no different or less complete than those that passed through any of the bank's computer systems during the transaction process. *Id.* Simply put, there is not (and has never been) any more complete source of timestamp information at Wells Fargo than what is contained in the authorization reports. *See id.* Wells Fargo has been preserving authorization timestamps in these authorization reports since at least January 1, 2002. *Id.* at ¶ 4. No such data has been destroyed since this litigation began – every piece of data that has been available since long before this litigation began still exists. *See id.* ¶¶ 3-5.

**B. Wells Fargo Is Entitled to Store Authorization Timestamps in Authorization Reports Instead of on Its Debit-Card Processing Systems.**

Although it is not entirely clear from their motion, it appears that plaintiffs' actual complaint is not that Wells Fargo is failing to preserve the timestamp data, but rather that Wells Fargo is retaining it in separate reports instead of storing it in the computer systems – RDS, Hogan, and the Settlement System – that use the data during the debit-card transaction process. This complaint is also without merit.

Courts have long recognized that parties are not obligated to "preserve every shred of paper, every e-mail or electronic document, and every backup tape." *Zubulake v. UBS Warburg LLC*, 220 F.D.R. 212, 217 (S.D.N.Y. 2003). Indeed, "[s]uch a rule would cripple large corporations" like Wells Fargo that must manage massive amounts of electronic data. *Id.* Instead, parties are only obligated to preserve "unique, relevant evidence that might be useful to an adversary." *Id.* While Wells Fargo may fleetingly possess duplicate authorization timestamp information in various systems and reports, it is not obligated to preserve such duplicate data in

secondary formats. Courts have recognized that "a party [is] free to preserve electronic evidence in any format it chooses." *Quinby v. WestLB AG*, 245 F.R.D. 94, 104 (S.D.N.Y. 2006) ("*Quinby II*").[1]

The three systems at issue – RDS, Hogan, and the Settlement System – are designed to process the day-to-day (and instant-to-instant) workings of banking transactions; they are not designed to be databases for the long-term storage of transaction information. Declaration of Roger N. Heller ("Heller Dec.") Ex. B at ¶ 7 (DE #1089-1). To offer a rough analogy, a grocery shopper may use his automobile to transport groceries from the grocery store to his home. But he does not store the groceries in his car, although they are physically present there while they are being transported. Instead, the groceries are stored in the pantry or refrigerator. Similarly, Wells Fargo does not store debit-card transaction data in the systems that use and "transport" it to process transactions; rather, the bank stores that information in reports maintained elsewhere. *See* Williamson Dec. ¶ 3.

Plaintiffs argue that Wells Fargo should store authorization timestamp data in its debit-card processing systems instead of in separate authorization reports. Plaintiffs have offered no credible support – and, indeed, there is none to offer – for the proposition that Wells Fargo's processing systems contain any additional authorization timestamp data not recorded in the reports. The only "evidence" plaintiffs offer is deposition testimony from a bank representative who admitted to having no personal knowledge about the long-term storage of authorization

---

[1] *See also Phillip M. Adams & Assocs., LLC v. Winbond Elecs. Corp.*, 2010 LEXIS 85120, at *16 (D. Utah Aug. 17, 2010) ("What is an adequate method of document retention for information … must necessarily be fact specific. It is not the role of the courts to dictate a single method of document retention…."); *Zubulake*, 220 F.D.R. at 218 ("In recognition of the fact that there are many ways to manage electronic data, litigants are free to choose how this task is accomplished.").

timestamp data. *See* Mot. at 5. Indeed, the witness began his testimony to this line of questioning by exclaiming, “Oh, goodness, this is going to be speculative.” *See* Heller Dec. Ex. G at 63. Furthermore, while the witness discussed the inherent difficulty of “matching” authorization requests with posted transactions (which makes it difficult to determine when a posted transaction was previously authorized), he at no point provided any support for plaintiffs’ assertion (Mot. at 5) that this difficulty would have been eliminated if Wells Fargo had stored the data in the processing systems instead of in separate reports. To the contrary, the witness stated that such difficulty is the “nature of the beast.” Heller Dec. Ex. G at 67.

In the end, all plaintiffs offer is speculation that their damages expert might find it easier to conduct his analysis if the authorization timestamps had been stored in the bank’s processing systems instead of in separate reports. Mot. at 5-6. But Wells Fargo has a long-standing practice of storing this authorization data in the normal course of business in authorization reports, *see* Williamson Dec. ¶¶ 3-4, and, as these reports provide plaintiffs with all available timestamp data, the bank has relied on them as the source of retained timestamp data in this litigation. Plaintiffs’ counsel have shown in prior litigation that the data in the authorization reports is in a usable format. Although plaintiffs may now think that another format might be more ideally suited for their purposes, that does not obligate Wells Fargo to begin storing – at great expense – duplicate data in secondary formats. If plaintiffs would like to convert the data into an alternative format, then they are free to do so, but there is no legal basis for compelling Wells Fargo to undertake this expense on plaintiffs’ behalf.

Further, Wells Fargo properly focused on the authorization reports as its method for preserving timestamp information because, when plaintiffs first filed complaints in this litigation in October 2008, the authorization reports were the only available source for such

information for transactions that occurred between January 2002 and April 2008. *See* Heller Dec. Ex. B at ¶ 12. Courts recognize that when data is available from multiple sources, parties are correct to focus on "the most complete source" instead of "alternative sources [that] only cover a narrow time frame." *Quinby v. WestLB AG*, 2005 WL 3453908, at *7-8 (S.D.N.Y. Dec. 15, 2005) ("*Quinby I*"). Even if plaintiffs would have preferred that data be preserved in one or more secondary formats, data in those formats was not available for the vast majority of transactions at issue in this litigation. Accordingly, Wells Fargo correctly preserved the authorization reports, the only source of timestamp data for the relevant time period.

Finally, there is nothing further that Wells Fargo could do to "preserve" this data in the additional systems identified by plaintiffs in their motion without incurring overwhelming expense and potentially even endangering the bank's ongoing operations. Indeed, it is not even clear exactly what more plaintiffs want Wells Fargo to do (or think it should have done). The systems that process debit-card transactions are designed for moving those transactions from authorization through settlement. They are not designed for storing data, as they are not database systems. Heller Dec. Ex. B at ¶ 7. If Wells Fargo were forced to store the truly immense amount of data that flows through the authorization systems on the systems themselves, they would quickly become overwhelmed, meaning Wells Fargo would have to shut them down (along with its corresponding bank operations). *See* Williamson Dec. ¶ 6. And creating entirely *new* processes and systems to store the data in a different way – even if Wells Fargo knew what exactly it was that plaintiffs wanted – would likely many months and hundreds of thousands (if not millions) of dollars to implement. Certainly, Wells Fargo has no such legal obligation in this litigation. *See Quinby II*, 245 F.R.D. at 104 ("[A] party [is] free to preserve electronic evidence in any format it chooses.").

### C. Wells Fargo Cannot Preserve Timestamp Data That Never Existed.

Plaintiffs also complain that Wells Fargo does not have authorization timestamps for all 100 percent of its customers' debit-card transactions – even though it is undisputed that the transactions for which is data is "missing" are those for which the bank never received timestamps in the first place. Clearly, parties are not obligated to preserve data that never existed. *See Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1251 (10th Cir. 2010) (declining "to speculate first that there is something missing and second that what is missing might be of evidentiary value," both of which would be required for sanctions).

Plaintiffs argue that Wells Fargo's authorization reports "are missing the 'time stamp' information for some of [the] debit card transactions," and they thereby imply that the missing data was at some point available in the bank's debit-card processing systems. Mot. at 5. In fact, Wells Fargo is preserving all unique debit-card authorization timestamps to the extent such timestamps have ever been received by the bank since at least January 1, 2002. Williamson Dec. ¶¶ 3-5. As discussed previously (*see* pages 4-5), while timestamp information may not be available for all debit-card transactions, that is not because Wells Fargo failed to preserve timestamps when it transferred information from its processing systems to the authorization reports; rather, it is because Wells Fargo never had the data to begin with – i.e., it never received authorization requests for those transactions. *Id.* at ¶ 5. Plaintiffs may well wish that authorization data existed for all debit-card transactions, but that is just not the case. Wells Fargo cannot preserve data that it never received.

## IV. AVAILABLE BALANCE AT TIME OF AUTHORIZATION

The second of the two categories of transaction data that plaintiffs allege Wells Fargo has failed to preserve is information showing customers' available balances at the time the bank receives debit-card authorization requests. Not only is this information utterly irrelevant to

plaintiffs' claims in this litigation, but – even if it were somehow material here – plaintiffs' counsel have known that Wells Fargo was not preserving this data for over two and a half years and never raised the issue. Under these circumstances, plaintiffs have no basis for complaining about missing data now.

**A. Available Balances at the Time of Authorization Are Not Relevant.**

A customer's available balance at the time of a debit-card transaction is authorized has absolutely nothing to do with plaintiffs' challenge to Wells Fargo's high-to-low posting practices, and plaintiffs offer no pretense of such in their motion. Rather, plaintiffs argue instead that such information is relevant for two reasons unrelated to posting order – (1) to show that Wells Fargo charged customers overdraft fees for transactions they had sufficient funds in their accounts to cover and (2) to show that Wells Fargo provided inaccurate available balance information to its customers. Mot. at 1, 8. Even if the claims in this case had anything to do with these questions – which they do not – this particular data is material to neither one.

First, a customer's available balance at the time she uses her debit card reveals next to nothing about whether that customer will have sufficient funds to cover the purchase when it is later submitted by the merchant for payment. Debit-card transactions are not instantaneous. As discussed at page 3 above, just like when a customer writes a check, it can take several days for a customer's debit-card transaction to make its way to the bank for settlement. The amount of a customer's available funds at the moment he presents his card to a merchant thus does not indicate whether the customer's account will have sufficient funds to cover the transaction when it is later presented to the bank for payment. Plaintiffs do not (and cannot) complain that data about the customer's balance at *that* time has not been preserved.

Second, Wells Fargo's internal calculation of a customer's available balance at the time of authorization is also immaterial to any claim that the bank provided that customer

with inaccurate information about her balance. When a customer uses her debit card for a purchase from a third-party merchant, she is not informed by the bank of her available balance at that moment, as the debit-card authorization system does not allow for such a communication. *See V. Gutierrez* Trial Tr. at 1096-97 (Jolley Dec. Ex B). In short, Wells Fargo could not provide available balance information – accurate or inaccurate – to customers at the time of authorization, and plaintiffs do not claim that it does. Records of a customer's available balance at that particular point in time would therefore be irrelevant to claims about inaccurate balance communications even if such claims had been properly made in this case.

But in fact no claims about either of these things have been properly made in this litigation in any event. As pointed out in Wells Fargo's pending Motion for Clarification (DE #1036), none of the plaintiffs in these cases actually alleges that either of these things happened to him or her, and Wells Fargo has itself been denied any discovery on those points. Rather, in its December 16, 2010 Discovery Opinion, the Court held that the "common nucleus of specific facts pled" in this litigation is a challenge to the bank's high-to-low posting practice. DE #1016 at 2. And, again, this data is simply irrelevant to that claim.

### B. Plaintiffs' Cannot Claim Spoliation After Waiting Years to Complain About Wells Fargo's Preservation Practices.

For those debit-card transactions that are submitted to Wells Fargo for authorization, the customer's "available balance" at the time of the transaction is gathered from RDS by the Settlement System and is available in electronic files for only a rolling 180 days. *See* Heller Dec. Ex. B at ¶ 12. After this time, it must be overwritten due to storage limitations. *Id.*

Wells Fargo explicitly informed plaintiffs' counsel of this policy in **July 2008** during the course of the prior *Gutierrez* litigation. *See id.* Moreover, in late 2009, in conjunction

with this MDL litigation, the parties participated in the preliminary discussions required by Rule 26, which specifically instruct the parties to discuss any issues about preserving discoverable information, including "issues about disclosure or discovery of electronically stored information." *See* Fed. R. Civ. P. 26(f)(3)(C). Plaintiffs did not raise this preservation issue as a concern at that time. Jolley Dec. ¶ 4. Since that time, plaintiffs have served over 70 individual document requests on Wells Fargo and have met and conferred with the bank repeatedly about those requests. *Id*. at ¶ 5. In June 2010, in response to those document requests, Wells Fargo again informed plaintiffs that it does not maintain records containing the amount of available funds at the time a debit-card transaction is authorized. *See id*. Ex. C (Response to Plaintiffs' Request for Production No. 7). Despite all this, plaintiffs never once raised this data preservation issue. *Id.* at ¶¶ 4-5. Now, after two and a half years, plaintiffs claim for the first time that the bank's retention policies are improper and sanctionable.

Parties who know full well that certain information is not being maintained cannot wait to challenge that fact until after the evidence is not available and then expect to be rewarded with "spoliation" sanctions against the opposing party.[2] If plaintiffs truly believed that information showing customers' available balance at the time of authorization was somehow relevant to their claims, then they – having known for nearly two and a half years that Wells

---

[2] *See Peery v. Serenity Behavioral Health Systems*, 2009 WL 1438939, *1 (S.D. Ga. May 15, 2009) ("Plaintiffs have had nearly two years from the close of discovery to raise this issue. Not only have Plaintiffs failed to raise the issue of spoliation, they have never even attempted to compel [the documents]. Plaintiffs' lack of diligence in this regard, coupled with their sudden interest … strongly suggests that Plaintiffs have no interest in the original documents. Rather, Plaintiffs show a desire to vilify opposing counsel …."); *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 436 (2d Cir. 2001) (affirmed denial of sanctions for spoliation where plaintiff waited three years to raise issue with the court); *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 50 (S.D.N.Y 2010) (refusing to sanction defendant for spoliation where plaintiffs waited two months to file motion, by which time it was too late to issue an order that would have prevented prejudice to plaintiffs).

Fargo was not maintaining this data – should have raised the issue long ago. Wells Fargo has certainly not been secretive about the fact that its systems did not maintain it. Indeed, the very document plaintiffs cite in their motion as evidence of Wells Fargo's preservation practices (*see* Heller Dec. Ex. B at ¶ 12) is a July 2008 declaration – filed in open court and served on plaintiffs' counsel in the *V. Gutierrez* case – in which Wells Fargo explicitly stated that its systems did not retain the data at issue. Wells Fargo should not be punished for having failed to recognize that this data – seemingly irrelevant to the plaintiffs' claims – was somehow important to plaintiffs, when plaintiffs themselves were aware the data was not being maintained but chose not to request its preservation.

## V. THERE IS NO BASIS FOR SANCTIONS BASED ON ALLEGED SPOLIATION.

Plaintiffs know full well that the data addressed in their motion is either already being fully preserved in a usable format or is irrelevant to their claims. Plaintiffs cannot establish any of the requirements for an award of evidentiary (or any other) sanctions against Wells Fargo. As detailed above, Wells Fargo is fully meeting its discovery obligations in this litigation by preserving all relevant transaction data in its possession in a format that has proven useable by plaintiffs' counsel in prior litigation. There is not even a hint of bad faith by Wells Fargo, a required showing for sanctions that plaintiffs tellingly fail to mention in their motion.

To establish entitlement to sanctions based on alleged spoliation, plaintiffs have the burden of proving that: (1) the evidence at issue once existed; (2) Wells Fargo had a duty to preserve the evidence; and (3) "the evidence was crucial to [plaintiffs'] being able to prove [their] prima facie case or defense." *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, __ F. Supp. 2d __, 2010 WL 3368654, at *4 (S.D. Fla. Aug. 23, 2010). Additionally, sanctions are not appropriate unless plaintiffs can establish that Wells Fargo acted in bad faith; "mere negligence" is not sufficient. *Socas v. Northwestern Mut. Life Ins. Co.*, 2010 WL 3894142, at *4

(S.D. Fla. Sept. 30, 2010) (citing *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)).[3] Plaintiffs are unable to satisfy any of these factors.

First, plaintiffs are unable to show that the "missing" debit-card authorization timestamps that they complain about ever existed. The only "missing" timestamps are those that were never in Wells Fargo's possession. Wells Fargo certainly cannot be punished for failing to preserve data that never existed. *See Oldenkamp*, 619 F.3d at 1251 (10th Cir. 2010) (affirming ruling that no spoliation occurred where there was no evidence that documents at issue ever existed).

Second, plaintiffs have identified no data that Wells Fargo had a duty to preserve but did not. Wells Fargo was under no obligation to preserve duplicative data (e.g., timestamp information in alternative formats and locations). *See Quinby II*, 245 F.R.D. at 104 ("[A] party [is] free to preserve electronic evidence in any format it chooses."). Similarly, Wells Fargo was under no obligation to retain irrelevant data about customers' available balances at the time of authorization, especially considering it had informed plaintiffs' counsel years ago without objection that its systems did not preserve such data on a long-term basis. *See Peery*, 2009 WL 1438939 at *1.

Third, plaintiffs have not identified any evidence crucial to their case that Wells Fargo has not preserved. To satisfy this element, plaintiffs must identify evidence that is "crucial," not merely relevant. *Managed Care*, 2010 WL 3368654, at *8. Evidence is not "crucial" where a party "would still be able to prove its case through additional already obtained

---

[3] *See also Banco Latino, S.A.C.A. v. Gomez Lopez*, 53 F. Supp. 2d 1273, 1277 n.3 (S.D. Fla. 1999) (rejecting invitation to "disregard Eleventh Circuit precedent which clearly imposes a requirement of bad faith" in order to impose sanctions).

evidence." *Id.* Duplicate timestamp information is clearly not crucial to plaintiffs' case, as the exact same information is available in the authorization reports, which plaintiffs' counsel have actually used in prior litigation. As discussed above, the available balance information sought by plaintiffs is not even *material* to their claims, let alone *crucial*.

Finally, plaintiffs have not even alleged – nor could they – that Wells Fargo acted in bad faith. To establish bad faith on circumstantial evidence, the moving party must establish that: (1) evidence "that could fairly be supposed to have been material to the proof or defense of a claim at issue in the case" once existed; (2) an "affirmative act" caused the evidence to be lost; (3) the spoliating party knew or should have known of its duty to preserve the evidence; and (4) there is no credible explanation for the affirmative act except that it was undertaken in bad faith. *Calixto v. Watson Bowman Acme Corp.*, 2009 WL 3823390, at *13 (S.D. Fla. Nov. 16, 2009). None of those factors are satisfied here. As detailed above, Wells Fargo has not destroyed any information relevant to plaintiffs' claims that is not available from another suitable source. Further, Wells Fargo has been proceeding under the understanding that its current data retention practices – of which plaintiffs have been aware for years – are more than adequate to fulfill its preservation requirements. To allow the plaintiffs to benefit by belatedly claiming otherwise at this point would be a perversion of the sanctions requirements.

## VI. <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs' motion to compel and for sanctions should be denied in its entirety.

DATED: January 31, 2011

COVINGTON & BURLING LLP

By: s/David M. Jolley

Sonya D. Winner (*pro hac vice*)
(swinner@cov.com)
David M. Jolley (*pro hac vice*)
(djolley@cov.com)
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Emily Johnson Henn (*pro hac vice*)
(ehenn@cov.com)
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-7400
Facsimile: (650) 632-4800

Barry R. Davidson
(bdavidson@hunton.com)
Florida Bar No. 107678
Jamie Zysk Isani
(jisani@hunton.com)
Florida Bar No. 728861
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

Attorneys for Defendant
WELLS FARGO BANK, N.A.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2011, I electronically filed the following documents with the Clerk of the Court using CM/ECF.

- **OPPOSITION OF DEFENDANT WELLS FARGO BANK, N.A. TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS REGARDING WELLS FARGO'S RETENTION OF TRANSACTION DATA**
- **DECLARATION OF DAVID M. JOLLEY IN SUPPORT THEREOF**
- **DECLARATION OF PAUL WILLIAMSON IN SUPPORT THEREOF**

I also certify that the forgoing documents are being served this day either by Notice of Electronic filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

s/David M. Jolley

David M. Jolley (*pro hac vice*)
(djolley@cov.com)
One Front Street, 35th Floor
San Francisco, CA, 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091