# EXHIBIT A

**DECLARATION OF DAVID M. JOLLEY IN SUPPORT OF WELLS FARGO'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS REGARDING WELLS FARGO'S RETENTION OF TRANSACTION DATA**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

| |
|---|
| **IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**<br><br>**MDL No. 2036** |

| |
|---|
| **THIS DOCUMENT RELATES TO:**<br><br>*Dolores Gutierrez v. Wells Fargo Bank, N.A.*<br>S.D. Fla. Case No. 1:09-cv-23685<br>D. Or. Case No. 3:09-cv-01239-ST<br><br>*Martinez v. Wells Fargo Bank, N.A.*<br>S.D. Fla. Case No. 1:09-cv-23834<br>D.N.M. Case No. 6:09-cv-01072-GBW-ACT<br><br>*Zankich, et al. v. Wells Fargo Bank, N.A.*<br>S.D. Fla. Case No. 1:09-cv-23186<br>W.D. Wash. Case No. C-08-1476-RSM |

**RESPONSES OF DEFENDANT WELLS FARGO BANK, N.A.**
**TO PLAINTIFFS' FIRST SET OF INTERROGATORIES**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "the Bank") hereby responds and objects to the First Set of Interrogatories from plaintiffs Dolores Gutierrez, Karen and Edward Wickman, Michael Dehn, Marc Martinez, Ivy Graham, Alex Zankich, and William Rucker as follows.

## I. GENERAL OBJECTIONS TO ALL INTERROGATORIES

1. Wells Fargo objects to these interrogatories insofar as they seek to impose obligations beyond those established by the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Southern District of Florida.

Glossary on Wells Fargo's website. In addition, customers can receive an oral explanation in any branch or from Bank representatives over the phone.

**INTERROGATORY NO. 9:** Describe with particularity each step, including each form of communication, involved in an electronic debit transaction, beginning with the initiation of the transaction, continuing through your receipt of notice of the dollar amount of the transaction and authorization of the transaction, and ending with your posting of the transaction to the customer's account and your assessment of an overdraft fee, if any, based on the transaction.

**ANSWER:** Wells Fargo incorporates each of its General Objections into its response as if set forth verbatim herein. Wells Fargo further objects that this interrogatory is compound in that it presents multiple separate and logically independent questions. Wells Fargo further objects that this interrogatory is vague and ambiguous and rests on inaccurate premises, rendering it argumentative. Wells Fargo further objects that this interrogatory assumes facts and is based on an incomplete hypothetical. Wells Fargo further objects that this interrogatory is overbroad and unduly burdensome.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follows:

**A. *Initiation and Authorization of Debit Transactions***

The Bank's first knowledge of many electronic debits to a customer's account occurs when it receives the item for settlement and posting. Thus, for example, there is usually no separate "authorization" step for an ACH transaction. Nor (as described below) do all debit-card transactions go through an "authorization" step.

An authorization step usually (but not always) occurs for ATM withdrawals and point-of-sale ("POS") purchases made at a merchant with a Wells Fargo debit card. POS purchases with debit cards may be made through one of two methods: Some merchants employ a POS terminal on which the consumer can enter her personal identification number ("PIN") to initiate the transaction (a "PIN-based" transaction). Alternatively, if no PIN is entered on a POS terminal, the transaction will be treated as a "signature-based" transaction. A customer will often be asked to provide a signature for a signature-based transaction, but a signature is not always required.

When a debit card is presented for payment of a transaction by a customer and the merchant seeks authorization of that debit-card transaction, Wells Fargo will receive an electronic authorization query from the merchant, typically routed through a POS network and/or other intermediate third party. For a signature-based transaction, the query is routed through the VISA network and then to a third-party processor, FDR, for routing to Wells Fargo. Authorization queries for signature-based transactions include the card number and the amount for which authorization is sought but typically do not include all of the information necessary to settle the transaction. Indeed, in many cases, the amount for which authorization is sought is ultimately not the final amount of the transaction. For example, restaurants typically submit authorization requests only for the initial amount of a check, pre-gratuity. Gas stations typically seek authorization only for $1. Other merchants also seek authorizations for amounts that differ from those ultimately submitted for payment. The Bank receives no notice of the final transaction amount until the transaction is submitted for settlement.

Upon receipt of an authorization query through the applicable network and/or third-party processor, the Bank conducts a set of initial verification steps and, if those are

satisfied, determines if sufficient funds are available in the account given information then known to the Bank, including the ending balance from the previous posting date plus any information then available about transactions conducted by the customer in the interim, such as pending deposits or debits. In addition to the available balance at the time of the authorization query, the Bank will also consider available funds in a linked overdraft protection source (such as a savings account) and the amount by which the particular account is permitted to go into overdraft should the account balance and overdraft protection funds otherwise appear to be insufficient. If sufficient funds appear to be available based on the foregoing factors, the Bank sends an authorization back to the merchant using the same system that carried the initial authorization query.

There are two circumstances in which POS transactions do not go through the authorization process described above. In some cases, a merchant may not submit the transaction for authorization at all, or its equipment may malfunction, in which case the Bank will have no knowledge of the transaction until it is submitted for settlement. And in rare situations in which one or more of the electronic systems are "down," a stand-in limit will be used until system connectivity is resumed.

If a POS transaction is authorized, the Bank usually places a "memo hold" on the cardholder's account in the amount of the authorization request to subtract that pending debit from the customer's available balance. A memo hold is usually in place within a few minutes of the authorization. If the customer checks his account online while a memo hold is in place, the transaction will appear with the designation "pending."

For PIN-based POS transactions, the Bank places a memo hold on the cardholder's account in the amount of the authorization request. This hold remains in place for

one business day, after which the transaction is nearly always posted to the account.[1] This means that for PIN-based POS transactions conducted during the day (prior to cut-off time), the hold will remain throughout the day and drop prior to the batch posting of transactions that night (on Mondays through Fridays, excluding holidays). For PIN-based POS transactions conducted after cut-off time (and therefore not received for settlement in time for the batch posting session that night), the hold will remain through batch posting and until the next nightly batch posting process. For most signature-based transactions, the Bank's policy is to keep the memo hold in place until the earlier of (1) receipt and posting of the final settlement information for the transaction or (2) three business days. The Bank must limit a memo hold to three business days to comply with VISA rules, which recognize that after three business days there is an increased possibility that either (a) the transaction will never be submitted for settlement or (b) the transaction has already been submitted and posted but has not been "matched" with the memo hold (for example, because of a difference in the final transaction amount).

Unique memo-hold procedures apply to signature-based transactions with certain types of businesses, such as hotels, that regularly obtain authorizations for amounts in excess of the final transaction amounts. For debit-card transactions authorized with merchants in those categories, the Bank only holds the funds in the amount authorized for one business day. The hold will then drop off the account to prevent excessive holds on customers' funds. Gasoline

---

[1] For purposes of the procedures described here, the Bank's "business day" ends at the daily cut-off time on a day when the Bank performs batch posting to customers' deposit accounts (Monday through Friday, excluding holidays). For a transaction performed after the applicable cut-off time (which will vary depending on the location and type of transaction but is typically in the evening), the first business day will elapse, not with a posting occurring that same night, but rather on the next batch posting occasion. For example, for a transaction performed on a (non-holiday) Tuesday morning, one business day will have elapsed when the account is posted on Tuesday night. For a transaction that occurs at 11:59 p.m. on Tuesday, one business day will elapse on Wednesday night.

purchases at automated fuel dispensers also have unique memo-hold procedures. When the authorization query is submitted to activate the pump, the final purchase price is unknown. The gas station typically submits an authorization for $1, and a memo hold of $1 is placed on the account for one business day.

If a Wells Fargo customer uses a debit card to make an ATM withdrawal, the Bank applies processes and criteria similar to those described above for POS transactions to verify the status of the card and to ascertain whether the transaction should be authorized. The Bank then sends a response back to the ATM network (if the customer is using a non-Wells Fargo ATM) or to the customer (at a Wells Fargo ATM).

If an ATM withdrawal transaction is approved and completed by the customer, the Bank places a memo hold on the cardholder's account in the amount of the authorization request to subtract this pending debit from the customer's available balance until the next batch posting, which nearly always occurs within one business day.

### B. *Receipt of Final Settlement Information and Posting*

The Bank posts transactions to customers' accounts during the late night or early morning hours every business day (typically Monday through Friday, excluding holidays).

The Bank cannot post a transaction until full settlement information is received as required under federal regulations. The Bank usually receives the full settlement information needed to post a PIN-based debit-card transaction or an ATM transaction in time to post the transaction in its batch posting the same business day. The Bank usually (but not always) receives the settlement information needed to post a signature-based debit-card transaction within one to three business days.

During the course of each business day, the Bank receives dozens of batch settlement files from multiple sources, including third-party processors, POS and ATM networks, other banks that are paying (or requesting payment of) checks, and entities submitting ACH payment requests and payments. Each batch file contains the full settlement files for an accumulated collection of transactions from that source for Wells Fargo customers. All of these batch files are then analyzed and matched to customer accounts during batch processing.

Before sending a collection of final settlement files for signature-based debit-card transactions, the Bank's third-party processor, FDR, examines the transactions to identify those for which a memo hold needs to continue in place through at least the following business day. (including those that have not yet been submitted for posting and settlement). At the outset of the batch posting process, Wells Fargo removes all existing memo holds and then reapplies them to those transactions that have been identified by FDR as needing ongoing holds.

Wells Fargo sorts to customer accounts the files of all credits and debits received by the Bank before the cut-off time for that day. The transactions are then posted to each account in the following sort orders:

**i.** ***States Other Than Washington, New Mexico, and Nevada***

Except for Nevada, Washington, and New Mexico, the Bank posts deposits and other credits before debits, regardless of the order in which the transactions within that group were actually initiated by the customer. When posting debits to an account, the Bank prioritizes some debits (including cashed checks, ATM transactions, cash withdrawals, and online transfers), which are combined and sorted from highest amount to lowest and posted after deposits but before other debits. Then the remaining debit transactions (including deposited checks, debit-

card purchase transactions, and ACH transactions) are combined and sorted together from highest to lowest and posted.

The Bank posts deposits and other credits before debits, regardless of the order in which the customer actually initiated the transactions. This favors the customer, as it provides a window to cover debit transactions that would otherwise create overdrafts. Thus, for example, if a customer initiates a transaction for which there are insufficient funds in the account but makes a covering deposit before the applicable cut-off time on the business day that the transaction is received for posting and settlement (e.g., store cut-off for a deposit or late evening hour for an online transfer), no overdraft will occur under the Bank's current posting practice (absent other debits).

Deposits are generally credited to a customer's account during batch posting on the day received (or, if received on a non-business day, during batch posting on the first business day thereafter), even if the Bank has not received settlement of the funds. For example, if on Tuesday morning a customer deposits into her account a third-party check drawn on Bank A, the Bank will post the deposit to the customer's account Tuesday night, even though Wells Fargo has not yet actually received the funds for that check from Bank A and may not receive the funds for several days. In some (relatively rare) circumstances, the Bank will place a full or partial hold on availability of a deposit for a period of time pending payment. This deposit will be included in the customer's ledger balance, but the hold will reduce the customer's available balance. If Bank A subsequently refuses to pay the check, the posted credit will be reversed.

When posting debits to an account, the Bank prioritizes some debits (including ATM transactions and cash transfers to another account), which are combined and sorted from highest amount to lowest and posted after deposits but before other debits. Then the remaining

debit transactions, including personal checks and debit card, Bill Pay, and ACH transactions, are combined and sorted together from highest to lowest and posted. Transactions that exceed the available balance in the account are handled through additional steps, as described below.

**ii. Washington and New Mexico**

In Washington and New Mexico, the Bank begins by posting certain transactions received for settlement that business day that the Bank's electronic records show actually occurred on previous days. These include deposits made on a previous day (e.g., over the weekend at an ATM) and debit-card transactions initiated on earlier days but not previously submitted for settlement and payment. After these earlier transactions are posted, the Bank proceeds to post transactions dated that business day. These include deposits and debit-card transactions that are both initiated and submitted for settlement that same day, as well as checks, ACH transactions, Bill Pay transactions, and other debits that the Bank receives for settlement that day.[2] Thus, on each business day the bank posts transactions in two general groups: "previous-day" transactions first, followed by "same-day" transactions.[3] For the transactions

---

[2] Checks, ACH transactions, and Bill Pay transactions are dated for posting purposes as of the business day on which the Bank receives them for settlement and payment, even though most such transactions were actually initiated or authorized earlier by the customer. In most instances, the Bank does not receive authoritative and easily processed information on the actual date of initiation of such transactions. Also, for transactions in some of these categories, the customer may have the ability to cancel the transaction before settlement, so the customer has not firmly committed his account funds at the time of initiation. (Thus, for example, a customer may stop payment on a check or cancel a pre-scheduled monthly payment up until the time of settlement.) In some instances, the Bank may receive a file of checks from another financial institution just before the cut-off time for posting. The file will be dated as received on current-day, yet the Bank is unable to include the file in that night's batch process. On the following business day, this file of checks will post as "previous-day" debits and will be sorted high-to-low with other previous-day debits.

[3] Before October 1, 2005, the Bank did not separate out same-day transactions; instead, it simply posted all transactions received for settlement on a given day without any differentiation (continued…)

within each of these two groups ("previous-day" and "same day"), the posting rules are the same as previously described (i.e., all deposits and credits, followed by certain priority debits, followed by the remaining debit transactions).

**iii. Nevada**

In Nevada, Wells Fargo posts deposits and other credits before debits, as it does in its other geographic regions. This is true regardless of the order in which the transactions are actually initiated by the customer. Then, when posting debits, the Bank prioritizes some debits (including ATM transactions, cash withdrawals, and online transfers), which are combined and sorted from highest amount to lowest and posted after deposits but before other debits. Then, checks and ACH transactions converted from checks are posted to customers' accounts in serial order. At that point, the remaining debit transactions (including debit-card purchase transactions and non-converted ACH transactions) are combined and sorted together from highest to lowest and posted.

**C. *Determination of Overdrafts and Assessment of Overdraft Fees***

An "overdraft" occurs when a debit is posted for which there are insufficient available funds in the account. Many overdrafts occur in situations over which the Bank has no control; in other instances, the Bank exercises its right under the Account Agreement to post items into overdraft. In most overdraft situations, the bank charges fees for overdrafts. A per-item overdraft fee is assessed for each item that posts into overdraft.

To determine whether there is an overdraft, the Bank begins by determining the available balance in the account. The Bank then evaluates transactions in the order specified

---

as to date of initiation, as it currently does in all other states except Nevada (and as described above in Section B.i.).

previously. Debit transactions that can be paid with available funds are then posted to the account. When debit transactions exceed the available balance – but can be paid with funds available in a linked overdraft protection source (such as a savings account) – the debit transaction(s) post to the account and a single credit transaction moves funds from the linked overdraft protection account into the deposit account at the end of posting.

If debit transactions exceed both available funds and any linked overdraft protection funds, the transactions are "flagged" as exceeding available funds.[4] If an item is returnable (such as a check or ACH transaction), the Bank must make a decision either to pay the item or to return it for insufficient funds. The amount by which the Bank will authorize an account to go into overdraft, or to post items into overdraft, is determined electronically for each individual account through a proprietary algorithm that takes into consideration a variety of factors about the characteristics and history of the account. If the Bank determines to pay an item for which there are insufficient funds, it will become an overdraft item. If the Bank determines that the criteria for payment are not met, it will refuse payment and return the item. If the Bank refuses payment for insufficient funds and returns an item, it charges a per-item returned item fee, which is similar in amount to the overdraft item fee.

Authorized and completed debit-card transactions and ATM withdrawals cannot be returned for insufficient funds and so will always be posted and paid once submitted for settlement, even if the transaction will cause the account to exceed the overdraft limit. Any such debits that are paid into overdraft are then treated as overdraft items.

---

[4] For accounts in Washington and New Mexico, a previous-day debit will be "flagged" for insufficient available funds, even if a subsequent "current-day" deposit brings the account balance positive.

Any debit item paid into overdraft usually results in the assessment of an overdraft item fee. However, no overdraft item fees are assessed if the debit items that put the account into overdraft could have been paid by available funds if the Bank had not adjusted the available balance for pending debit transactions subject to memo holds. As a practical matter, this means that in many instances no overdraft fees are imposed even when a customer spends money that he has already committed elsewhere. Also, overdraft item fees are not assessed on overdraft items that are themselves fee transactions (such as a monthly service fee or an overdraft fee), if the overdrawn balance of the account is less than or equal to $1, or for overdraft items in excess of 10 posting on a business day.

Following the day's posting, if an overdraft or returned item fee is to be assessed on an account, an electronic notice is sent to the branch at which the customer maintains the account, where branch personnel have the ability to review and reverse the fee. If the fee is not reversed, it is then posted to the account, and an overdraft/insufficient funds notice is sent via U.S. or electronic mail to the customer.

**INTERROGATORY NO. 10:** For each step in the process described in your answer to Interrogatory No. 9, identify each computer system or database used to transmit and/or store information and for each such database or system, identify its task and function and describe in detail where and how you retain the information associated with each step and the process by which such records or information can be accessed.

**RESPONSE:** Wells Fargo incorporates each of its General Objections into its response as if set forth verbatim herein. Wells Fargo further objects that this interrogatory is overbroad and unduly burdensome in its request for a detailed identification or description of (i) each system and database involved in the processing of debit-card transactions, (ii) each task

performed by each such system and database, (iii) each function performed by each such system and database, and (iv) how information associated with each of these multitude of steps is recorded. Wells Fargo further objects to this interrogatory as compound in that it propounds multiple independent questions that should properly count as separate interrogatories.

Subject to and without waiving the foregoing objections, Wells Fargo responds as follows with respects to the internal systems that are primarily involved in the processing of debit-card transactions and/or the storage of customer transaction data:

**A. The Hogan System**: The Hogan System ("Hogan") is Wells Fargo's system of record. Hogan processes and posts day-to-day transaction activity for the Bank's customers. The Hogan system is not an information archival system. It maintains only recent transaction data from the current and the past two account statement periods (roughly between 61 and 90 days).

**B. RDS ("The Authorization System"):** RDS receives electronic authorization requests, which it forwards to Hogan for approval or denial. It then relays authorization responses back. Although RDS logs certain transaction information, it is not an information archival system. It retains only recent transaction data from the current business day and the prior business day.

**C. The Settlement System:** The Settlement System receives information from other systems, including the Bank's third-party processor, indicating which transactions should be settled and posted to customers' accounts. Certain information about these transactions are exported from the Settlement System and stored on the Bank's mainframe for 180 days. The Settlement System also gathers certain transaction information logged by RDS

and creates Authorization Logs for each 24-hour period that record certain transaction data in a fixed report.

**D. The BMG Data Warehouse:** BMG is Wells Fargo's principal analytic database for historic deposit account transaction information. Since 1999, certain transaction data has been loaded onto BMG, but only data from the last 25 months (on a rolling basis) is maintained in an active format. Transaction data from more than 25 months ago is archived.

**INTERROGATORY NO. 11:** On an annual basis for each year since 2002 and for each State in which you maintain consumer accounts, state (a) the aggregate total dollar amount of overdraft fees you assessed against your customers' accounts; (b) the aggregate total dollar amount of overdraft fees assessed against customers accounts that you have forgiven, waived, reversed or otherwise not collected; and (c) the number of your customers' accounts that have been assessed more than one overdraft fee on a single day.

**RESPONSE:** Wells Fargo incorporates each of its General Objections into its response as if set forth verbatim herein. Wells Fargo further objects that this interrogatory is compound in that it presents multiple separate and logically independent questions. Wells Fargo further objects that this interrogatory is vague and ambiguous in its use of the term "assessed." Wells Fargo further objects that this interrogatory is vague and ambiguous in its use of the terms "forgiven," "waived," and "reversed." It is unclear whether plaintiffs intend this interrogatory also to include charge-offs, which include overdraft fees that are assessed on an account but are charged off after a period of time if not paid.

Wells Fargo further objects to this interrogatory as overbroad, unduly burdensome, and not relevant to the current claims of the named plaintiffs to the extent it calls for information about overdrafts and overdraft fees in states outside of Washington, New Mexico, and Oregon.

**VERIFICATION**

I, Kenneth A. Zimmerman, declare and state:

I am the Executive Vice President of the Consumer and Small Business Deposits Group of Wells Fargo Bank, N.A., and I am authorized to make this verification on its behalf. I have read the Responses of Wells Fargo Bank, N.A. to Plaintiffs' First Set of Interrogatories, dated June 17, 2010, and certify that the facts contained therein are either true as of my own knowledge or true on the basis of my information and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 17, 2010, in San Francisco, California.

Kenneth A. Zimmerman