## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

### PLAINTIFFS' OPPOSITION TO MOTION FOR CLARIFICATION OF DEFENDANT UNION BANK

Plaintiffs in the above-captioned cases ("Plaintiffs") respectfully submit this opposition to the motion for "clarification" [**DE # 1103**] filed by Defendant Union Bank, N.A. ("Union Bank" or "the Bank").

## I.      INTRODUCTION

Union Bank makes a flawed attempt to seek reconsideration of the Court's ruling that its contention and other interrogatories are premature and improper.  [**DE # 1016**].   Recycling losing arguments from its motion to compel, and selectively quoting from the Court's prior rulings, Union Bank claims to be confused about the status of Plaintiffs' allegations regarding policies and practices other than its wrongful re-sequencing of debit transactions to drive up overdraft charges.   The only possible confusion, however, results from the Bank's own misreading and transparent mischaracterization of this Court's findings.

Union Bank asserts that the Court found policies and practices other than reordering to be immaterial to Plaintiffs' claims.  [**DE # 1103** at 2, 5.]  This is not so.  What the Court found immaterial were Plaintiffs' subjective expectations of Bank practices.  [**DE # 1016** at 11].  Union Bank's argument is premised on a wholesale misreading of the Court's discovery Order.  Succumbing to a logical fallacy, the Bank would have the Court engraft its finding of immateriality in one area (Plaintiffs' subjective expectations) onto a totally separate area (the Bank practices other than reordering).  The Court should disabuse the Bank of its erroneous belief that reordering is the only Bank practice at issue.

Union Bank makes an equally transparent attempt to manufacture a tension between the Court's rulings.  In fact, the Court's discovery Order is 100 percent consistent with the Court's prior rulings.  In denying the omnibus motion to dismiss, the Court found that Plaintiffs sufficiently alleged injury from various business practices, including practices other than debit re-sequencing.  The Court described many of these additional practices at length and found that Plaintiffs alleged plausible harm from the entire sweep of abusive conduct.

The Court did not reverse itself in its discovery Order, nor did it suggest that these additional practices have somehow become immaterial.  Rather, the Court found that interrogatories propounded by the defendant Banks, including Union Bank, were ***premature*** at this time and improper for other reasons, including because the Banks themselves possess the information they seek.  As explained below and in Plaintiffs' oppositions to the motions to compel [**DE # 939–42**], all of the interrogatories in question either call for information within the Bank's own control or for details that Plaintiffs cannot provide before conducting an extended analysis of the Bank's practices and data concerning their accounts.

Union Bank's suggestion that this Court's discovery ruling will prevent it from ever taking discovery regarding practices other than reordering is without merit.  Plaintiffs have never said that Union Bank is not entitled to take discovery regarding these practices.  Such discovery, however, must take the proper form, be proper in scope, and occur at the proper time.  The discovery requests at issue in Union Bank's motion to compel fail to meet these criteria and, as a result, the motion was properly denied.

Union Bank's argument that under this Court's rulings it lacks a mechanism for challenging Plaintiffs' claims similarly lacks merit.  Union Bank will have further opportunities to challenge Plaintiffs' claims – *e.g.*, through Rule 56 summary judgment motions and/or at trial.  However, Union Bank cannot properly ask the Court to carve out these practices at this early stage of the litigation – which it is now requesting *for the third time*[1] – when Plaintiffs have not completed discovery into the practices.  A wrongful scheme must be analyzed as a whole, not parsed into separate bits and pieces.  *Andresen v. Maryland*, 427 U.S. 463, 481 n.10 (1976); *Continental Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 698-99 (1962).

In reality, Union Bank faces no confusion.  It just doesn't like the Court's discovery ruling.  Its motion for reconsideration should be denied.

## II.    BACKGROUND

In their currently operative complaint, Plaintiffs allege that Union Bank engaged in several unfair and deceptive business practices that caused Plaintiffs and the putative class members to incur excessive overdraft charges.  While the complaint upheld by this Court discusses the Bank's practice of re-sequencing debit transactions from highest-to-lowest dollar

---

[1] In both prior instances, the Court declined to hold that the additional practices had no relevance to Plaintiffs' claims.  **[DE # 305, 532]**.

amount, the complaint also alleges that the Bank engaged in other wrongful practices, allied with the re-sequencing scheme, that also caused harm.[2]

Plaintiffs' allegations concerning these related practices were made in good faith on behalf of the entire class they seek to represent. The complaint makes it clear that each named Plaintiff claims to have suffered harm as a result of all of the allied practices. [*E.g.*, **DE # 349** ¶¶ 52-60, 98-102, 108-10].

On December 22, 2009, several defendant Banks, including Union Bank, moved to dismiss the claims asserted in the various complaints. Among other things, the Banks asked the Court to strike allegations regarding business practices other than their re-sequencing of debit transactions. [**DE # 217** at 96]. On March 11, 2010, the Court issued its Order on Defendants' Omnibus Motion to Dismiss. [**DE # 305**]. The Court held that Plaintiffs adequately pleaded several claims under both statutory and common law. The Court did not strike Plaintiffs' allegations regarding practices other than re-sequencing, as the Banks had urged. Instead, the Court summarized ***all*** of the wrongful practices Plaintiffs had alleged [**DE # 305** at 5-8], stating that "Plaintiffs allege that they were personally injured by Defendant bank's practices . . . and that they were forced to pay overdraft fees as a consequence of the Banks' wrongful *policies and*

---

[2] The additional practices cannot be isolated from the re-sequencing scheme. Indeed, they often exacerbated the harm by keeping the scheme hidden from consumers' view. For example, Union Bank intentionally failed to provide accurate account information through its electronic networks, despite the ability to do so, and made false representations that account information on the Internet was accurate and instantaneous. In consequence, many consumers did not know they lacked sufficient funds to make purchases or withdraw money from ATMs; they fell into the Bank's overdraft trap. Union Bank also intentionally failed to notify its customers that a debit card purchase or ATM withdrawal would result in an overdraft fee (despite the ability to do so), and the customers therefore had no opportunity to cancel transactions at the point of sale to avoid the fees. After a bench trial, the Honorable William Alsup, a U.S. District Court Judge, found that similar practices of Wells Fargo were "allied" with that Bank's re-sequencing practice – and "exacerbated" the harm to the class. *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1082 (N.D. Cal. Aug. 10, 2010).

*practices* . . . ." *Id.* at 8 (emphasis added).   Specifically, the Court described complaint

allegations as follows:

> Defendant Banks do not give customers the option to decline to
> complete the debit transactions or provide other forms of
> payment.  In addition, the Banks fail to adequately disclose to
> their customers that they can opt out of this overdraft policy,
> thereby avoiding all overdrafts and overdraft fees. . . .
>
> In certain cases, customers are informed that they have a positive
> balance when, in reality, they have a negative balance, despite the
> Banks' actual knowledge of outstanding debits and transactions.
> Although consumers can reduce the risk of overdrawing their
> accounts by carefully tracking their credits and debits, consumers
> often lack sufficient information about key aspects of their
> account.  For example, a consumer cannot know with any degree
> of certainty when funds from a deposit or a credit for a returned
> purchase will be made available.  Even when the Banks have
> knowledge of outstanding transactions that have already created a
> negative balance in a customer's account, they approve, rather
> than decline, subsequent debit card purchases and other electronic
> transactions.  Further, the Banks assess overdraft fees at times
> when the actual funds in customer accounts are sufficient to cover
> all debits that have been submitted for payment.  The Banks do
> this by placing a "hold" on actual funds in customer accounts.

*Id.* at 6-8.  Union Bank itself conceded that the Court "denied Union Bank's motion to dismiss

based, in part, on these very allegations."  [**DE # 951** at 8].

The defendant Banks, including Union Bank, filed a motion for "clarification" on April 5,

2010, in which they repeated their demand that the Court strike the additional business practices.

[**DE # 325**].  On June 1, 2010, the Court denied Defendants' motion without prejudice, finding

that any attempt by the Banks to have particular practices eliminated from these cases would

have to wait until "the end of discovery," because "this issue is better addressed after discovery

is taken and the facts are more clearly known to all parties."  [**DE # 532**].

In May 2010, Union Bank served discovery requests, including the interrogatories at

issue in its present motion.  Plaintiffs responded to the discovery requests while also objecting to

some on the grounds that, *inter alia*, they were premature and improperly sought information in the Bank's control, such as specific instances when the Bank provided Plaintiffs with inaccurate account balances.  Union Bank then moved to compel further interrogatory responses.  [**DE # 896**].

Following argument, on December 16, 2010, the Court issued its Opinion Setting Standards for Resolution of Discovery Interrogatories and Production of Documents.  [**DE # 1016**].  Beyond allegations of debit re-sequencing, the Court found that the "Complaints set forth a number of other alleged agreements, policies and practices, contended by Plaintiffs to unlawfully damage them."  [**DE # 1016** at 2-3].  Rejecting Union Bank's arguments as to why Plaintiffs should be ordered to give premature discovery responses – the same arguments the Bank now renews – the Court agreed with Plaintiffs that "[t]he best source of that information is found within the records the bank already possesses."  [**DE # 1016** at 10].

> Frequently a party will not be able to provide useful answers to contention interrogatories until all discovery is completed. [Citation].  Compelling parties to respond partially to such interrogatories early in the litigation they will likely simply be asked to respond again, upon completion of document review or other phases of discovery, lacks finality and compounds the time, effort and cost of the litigation. . . . This is particularly wasteful where, as here, many of the interrogatories are directed to the proponents' own statements and conduct.

[**DE # 1016** at 5-6].  On January 26, 2011, Union Bank filed a joinder in Wells Fargo and Wachovia's pending motion for "clarification" [**DE # 1036**] as well as its own "clarification" motion.  [**DE # 1103**].  On January 28, 2011, Plaintiffs filed under seal a proposed Third Amended Complaint against Union Bank.  [**DE # 1110–13**].

III.    **ARGUMENT**

A.    **Union Bank Makes an Impermissible Attempt to Re-Litigate.**

Union Bank's motion is an attempt to re-litigate issues already decided.  Union Bank styles its motion a motion for "clarification" for an obvious reason: the law governing motions for reconsideration is extremely stringent.  Relief on reconsideration is "an extraordinary remedy to be employed sparingly."  *S.E.C. v. Huff*, 2010 WL 541634, at *1 (S.D. Fla. Feb. 9, 2010). "The standard for granting reconsideration is strict and will generally be denied unless the moving party can point to *controlling decisions or data* that the court overlooked."  *United States v. Zarabozo*, 2008 WL 5062463, at *1 (S.D. Fla. Nov. 26, 2008) (emphasis in original).  Such a motion must be denied unless the movant clearly establishes: (1) a material intervening change in controlling law; (2) the availability of new evidence justifying reversal of the court's previous decision; or (3) the need to correct clear error or prevent manifest injustice.  *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002).

Union Bank does not even try to establish any of these things – nor could it.  Instead, the Bank flouts the longstanding rule that "motions to reconsider are not a platform to relitigate arguments previously considered and rejected."  *Busby v. JRHBW Realty, Inc.*, 642 F. Supp. 2d 1283, 1288 (N.D. Ala. 2009) (citation omitted). It is well-settled that a motion for reconsideration "cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007); *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005); *accord*, *American Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985) (motion for reconsideration must not afford a litigant "two bites at the apple").

Regardless of what Union Bank may choose to call its motion, the Court should not condone its latest attempt to revisit the exact same arguments that it made before and that the

Court has already rejected.  *Compare*, *e.g.*, **DE # 951** at 9 ("Union Bank is entitled to conduct discovery to ascertain what plaintiffs understood about Union Bank's practices [and] how they came to have that understanding"), *with* **DE # 1103** at 6 ("[I]f Plaintiffs' claims about 'other business practices' and 'expectations' are at issue, then Union Bank is entitled to discovery on them."); *compare also*, *e.g.*, **DE # 951** at 3 ("Not only is it necessary to allow Union Bank to defend itself from plaintiffs' claims on the merits, but the answers are essential for determining whether plaintiffs are typical and adequate class representatives"), *with* **DE # 1103** at 7 ("Not only is discovery necessary to allow Union Bank to defend itself from Plaintiffs' claims on the merits, but the answers are essential to determining whether Plaintiffs are typical and adequate class representatives").

In making these arguments again – using nearly identical language – the Bank disregards the rule that "motions to reconsider are not a platform to relitigate arguments previously considered and rejected." *Busby*, 642 F. Supp. 2d at 1288.  While Union Bank disagrees with this Court's analysis of its arguments, that cannot provide a legitimate basis for relief.  *See Longcrier v. HL-A Co., Inc.*, 595 F. Supp. 2d 1218, 1246 n.2 (S.D. Ala. 2008) (holding that it is "improper to utilize a motion to reconsider to ask a district court to rethink a decision once made, merely because a litigant disagrees").  The motion therefore should be denied.

### B.     The Court Properly Denied Union Bank's Motion to Compel.

In repeating arguments this Court already considered and rejected, Union Bank disputes the Court's rulings in connection with three specific categories of their interrogatories.  The Court's conclusion – that Plaintiffs need not provide further responses to these interrogatories at this time – is well-supported, carefully reasoned, and should not be disturbed.

First, Union Bank argues that it requires further responses to interrogatories asking "Plaintiffs to identify fees charged to their accounts for which they seek recovery in this lawsuit

for any reason *other than* 're-sequencing debit card transactions from highest to lowest . . . .'"[3] [**DE # 1103** at 4 (emphasis in original)]. No further responses are necessary. It is clear from the operative complaints that each named Plaintiff alleges he or she was subjected to, and harmed by, *all* of the unfair practices alleged. [*E.g.*, **DE # 349** ¶¶ 52-60, 98-102, 108-10]. Consequently, there can be no confusion about which Plaintiff alleges which wrongful practices.

Union Bank's interrogatories prematurely demand that Plaintiffs supply all the details of precisely how and when each of them was subjected to every wrongful practice. Nevertheless, the information Union Bank seeks will be gleaned from the Bank's own records after they have been fully produced. Plaintiffs cannot detail exactly how, and how much, each wrongful practice harmed them until after the Bank has fully revealed its practices and produced the complete account data showing Plaintiffs' and the class's transactions. It is not realistic for Plaintiffs to have determined the precise sources and extent of their injuries until they have analyzed these materials, some of which the Bank has yet to produce. This is especially true because Union Bank concealed its accounting methods and other practices, leaving consumers in the dark as to how they incurred multiple overdraft fees when the Bank had approved their debit transactions. [**DE # 349** ¶¶ 52-60]. The Court therefore properly denied Union Bank's motion to compel as to these interrogatories. **DE # 1016** at 5-7, 10 (denying motion to compel "the identification of each alleged improper fee" and finding that "[t]he best source of that information is found within the records that the banks already possess.").

_____

[3] Union Bank's renewed argument bears out the Court's suspicion that the Bank's true motive in pursuing such discovery is not to learn about the basis for Plaintiffs' claims, but to try to force the early abandonment and/or dismissal of some of Plaintiffs' claims before Plaintiffs have had an opportunity to take the required discovery. *See* **DE # 1016** at 4 (noting that early contention interrogatories relating to material already in the requesting party's possession raise "the logical question: 'Is the requesting party simply trying to inundate the opponent for an improper purpose of forcing abandonment of the cause?'").

Second, Union Bank again demands that Plaintiffs "identify advertisements, statements or disclosures by Union Bank that they contended were false or misleading, the reason therefor, and to identify when they first saw such allegedly misleading disclosures." [**DE # 1103** at 4]. The Bank's assertion that Plaintiffs must provide all of this information is incorrect as a matter of law. *See*, *e.g.*, *In re Tobacco II Cases*, 207 P.3d 20, 40 (Cal. 2009) ("[W]here, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.").

Furthermore, as a practical matter, it is unreasonable to expect private individuals who do not maintain records of the Bank's historical ads, brochures, or other marketing materials to be able to recall from memory all the details surrounding the representations they saw. The law "avoids the necessity of relying upon the fallible memory of witnesses, when time may have dimmed their recollection of past transactions . . . ." *Fletcher v. Fuller*, 120 U.S. 534, 546 (1887). Plaintiffs have described the nature of the Bank's statements they saw. That is more than sufficient, until all the misrepresentations have been identified and analyzed. The Court properly denied Defendants' motions to compel as to these interrogatories. **DE # 1016** at 11 ("The banks seek documents issued by them to the Plaintiffs in the promotion of their banking services. It follows then that the banks have access to this information and their request is unnecessary.").

Third, Union Bank points to interrogatories seeking information about Plaintiffs' expectations of Bank practices. [**DE # 1103** at 4]. The Bank ignores that Plaintiffs have already stated that they believed Union Bank posted debit transactions chronologically, in the order in which the transactions occurred. [**DE # 898-5** at 19 (Decl. of Peter H. Bales, Exh. B.1, Response

to Interrogatory No. 16)].  Further responses relating to Plaintiffs' expectations would serve no purpose here.  The uniform standard for breach of the contractual covenant of good faith and fair dealing looks to objectively reasonable or justified expectations, as opposed to purely subjective expectations.  *See* Restatement (Second) of Contracts § 205, cmt. a (1981) (stating that "good faith" means "consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness."); *accord*, *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1278 (S.D. Fla. 2009) (King, J.).

Moreover, even if Plaintiffs' personal and subjective expectations *were* relevant to one or more of their claims, nothing prevents Union Bank from examining the named Plaintiffs at their depositions about what they expected.  *See*, *e.g.*, *Pendlebury v. Starbucks Coffee Co.*, 2005 WL 2105024 (S.D. Fla. Aug. 29, 2005) (refusing to compel discovery responses where "Defendant could inquire into these areas at depositions").  Indeed, Union Bank has informed Plaintiffs that it anticipates noticing and taking depositions of every class representative.  Those depositions will provide the Bank with a more than sufficient opportunity to question the representatives about their experiences and how the Bank's course of conduct harmed them.  Union Bank's complaint that it is being forced "to fight with hands tied behind its back," **DE # 1103** at 7, is simply wrong.

### C.  The Court's Rulings Are Consistent.

Union Bank claims "[t]here are inconsistencies" between the Court's prior rulings in this litigation.  [**DE # 1103** at 1].  In fact, the Court's rulings are both clear and consistent.  In denying the omnibus motion to dismiss, the Court determined that Plaintiffs had adequately pleaded statutory and common law claims based on all of the wrongful business practices alleged.  As Union Bank itself previously acknowledged, the Court's analysis was ***not*** limited to

allegations concerning the Banks' practice of re-sequencing debit transactions from highest to lowest to reap exorbitant profits at consumer expense: "Plaintiffs' complaint includes factual allegations that they were misled, given inaccurate balance information, assessed improper overdraft charges and led to believe that transactions would be posted in some order other than high to low.  This Court denied Union Bank's motion to dismiss based, in part, on these very allegations."  [**DE # 951** at 8; *see* **DE # 305** at 5-8].

When asked a second time by the defendant Banks to strike these allegations, in their first self-styled "motion for clarification," the Court denied the motion, holding that Defendants could attempt to show the legality of the other business practices following completion of discovery – "this issue is better addressed after discovery is taken and the facts are more clearly known to all parties."  [**DE # 532**].

Contrary to what Union Bank asserts the third time around, this Court has never suggested that the other business practices are immaterial.  Union Bank accurately represents the Court's finding in its discovery Order that the "'alleged common nucleus of facts pled' in this litigation is the banks' high-to-low posting practices . . . ."  **DE # 1103** at 5 (quoting **DE # 1016** at 2).  However, Union Bank fails to mention the Court's subsequent finding: "In addition to the allegations about posting order, the Complaints set forth a number of other alleged agreements, policies, and practices, contended by Plaintiffs to unlawfully damage them."  *Id*. at 2-3.  Despite the Bank's transparent manipulation of the Court's language in an effort to expand its finding on Plaintiffs' subjective expectations [**DE # 1103** at 2, 5], the Bank is incapable of quoting anything in the discovery Order that would suggest the other practices are immaterial.

The discovery Order explicitly recognizes that the disputed interrogatories are premature and improper.  This finding is fully consistent with the Court's prior rulings.  Union Bank's

selective and erroneous reading of the Court's discovery Order prevents it from seeing there is no inconsistency between the findings (1) that all of Defendants' overdraft-related business practices are at issue, and (2) that several interrogatories Defendants propounded are premature, unnecessary and otherwise improper.

Finally, Union Bank also complains that the Court's rulings deprive it of a mechanism for challenging Plaintiffs' claims to the extent they are based on Bank practices other than wrongful reordering.  But, the Bank has already tried, and failed, to successfully attack the sufficiency of Plaintiffs' allegations regarding such practices.  The Bank will have additional opportunities to challenge all aspects of Plaintiffs' claims under Rule 56 summary judgment procedures and/or at trial.  The notion that Union Bank should be given that opportunity now – before Plaintiffs have even completed discovery on these issues – is absurd.

## IV.     CONCLUSION

For all of these reasons, the Court should deny Union Bank's motion for reconsideration. Dated:  February 3, 2011.

> Respectfully Submitted,
>
> /s/ Bruce S. Rogow
> Bruce S. Rogow, Esquire
> Florida Bar No. 067999
> brogow@rogowlaw.com
> Robert C. Gilbert, Esquire
> Florida Bar No. 561861
> bobby@alterslaw.com
> ALTERS LAW FIRM, P.A.
> 4141 N.E. 2nd Avenue
> Miami, Florida 33137
> Tel:  (305) 571-8550
> Fax:  (305) 571-8558
>
> *Plaintiffs' Lead Counsel*

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No.  0188015
mhutts@baronbudd.com
Mazin A. Sbaiti
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181


/s/ Edward Adam Webb
Edward Adam Webb, Esquire
Georgia Bar No. 743910
adam@webllc.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
flemond@webllc.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
Jaron Shipp, Esquire
California Bar No. 264401
jshipp@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000
Fax: 415-956-1008


/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 East 58th Street, 34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Robert C. Josefsberg
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Victor M. Diaz, Jr., Esquire
Florida Bar No. 503800
vdiaz@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue, Suite 201
Miami, Florida 33137
bobby@alterslaw.com