## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**THIS DOCUMENT RELATES TO:**
**FIRST TRANCHE ACTION**

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

### PLAINTIFFS' REPLY IN SUPPORT OF
### MOTION FOR LEAVE TO FILE AMENDED CLASS ACTION COMPLAINT

Plaintiffs' submit this reply in support of their motion for leave to file amended class

action complaint against Union Bank, N.A. ("Union Bank" or the "Bank").  **[DE # 1110 – 1113].**

### Introduction

Union Bank conjures a series of imagined procedural nightmares which will follow once

the Court allows Plaintiffs' amendment seeking redress for the Bank's unlawful enterprise with

CAST Management.  Apparently, the Bank lacks faith in Plaintiffs' ability to prosecute this

RICO claim expeditiously and this Court's ability to oversee such prosecution.  While Plaintiffs

hardly expect the Bank to admit liability under the federal racketeering statute without a fight,

the Bank's lack of faith is misplaced given the proceedings thus far.

Indeed, Plaintiffs have already served a third-party subpoena on Union Bank's enabler,

CAST Management – as well as many other companies that provided consulting services to the

banks involved in the first tranche actions.  Plaintiffs are on schedule.  We have reviewed tens of

thousands of documents and taken several depositions, and are preparing to take another slew of depositions in anticipation of the April 25, 2011 class certification deadline.

The mere possibility – purely speculative at this juncture – that a RICO claim against Union Bank will delay the proceedings, or even cause the Bank to fall out of the first tranche, does not militate against allowing the amendment.  Leave to amend is freely granted under Rule 15.  If Union Bank wants to push back the litigation schedule, nothing prevents it from proposing an extension at a later date if and when an extension is warranted.  Its speculation in February that Plaintiffs will not be able to complete discovery by November is insufficient to disallow the proposed amendment.

Plaintiffs are the master of their complaint; and Union Bank falls short of establishing any of the conditions that would justify denying leave here.  *First*, the RICO claim is not futile, but well-pled and supported with newly-obtained documentary evidence showing the conspiracy in action.  *Second*, despite the Bank's speculation, the amendment will not prejudice its ability to defend against all the claims asserted.   *Third*, Plaintiffs did not delay, but proposed the amendment soon after we discovered the documents evidencing the arrangement between the Bank and its consultants to conceive and implement new fee-maximizing techniques, including the egregious posting of debit card transactions from high-to-low dollar amount to gouge consumers by multiplying their overdraft fees.

## <u>Argument</u>

Union Bank claims that "Plaintiffs clearly abuse the privilege of leave to amend . . . ." Opp. at 7.  To the contrary, it is the Bank that abused its own customers through the scheme it developed in cahoots with CAST Management to drive up overdraft charges.  The Court should grant Plaintiffs' request to add factual allegations and a RICO claim based on what we have learned about this joint illicit activity.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give

leave when justice so requires.").  As the Eleventh Circuit has recognized, "rule 15(a) severely restricts the judge's freedom" such that "[u]nless there is a ***substantial*** reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial."  *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984) (citation omitted) (emphasis added).  Absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The arguments and hyperbole in Union Bank's opposition only confirm that it is incapable of showing any of these things.

## I.        The Proposed Amendment Is Not Futile.

Union Bank asserts the RICO claim is futile.  *See* Opp. at 7-9.  That is incorrect.  For purposes of Rule 15, a finding of futility requires a finding that the court cannot entertain a proposed claim because it is wholly insubstantial, *i.e.*, "the complaint, as amended, would necessarily fail."  *St. Charles Foods, Inc. v. America's Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999) (reversing district court's denial of leave to amend).  Rule 15 motions should be granted on futility grounds "only if proposed amendment is 'clearly insufficient or frivolous on its face.'"  *Bartronics, Inc. v. Power-One, Inc.*, 245 F.R.D. 532, 535 (S.D. Ala. 2007) (citation omitted).  An example of a futile claim is a claim barred by the statute of limitations.  *See, e.g.*, *Forcier v. Microsoft Corp.*, 123 F. Supp. 2d 520, 530 (N.D. Cal. 2000).

Union Bank cannot show that the proposed RICO claim is not colorable.  The Supreme Court has directed that "RICO is to be read broadly."  *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985).  Further, the statute must "be liberally construed to effectuate its remedial purposes," which are "nowhere more evident than in the provision of a private action for those

injured by racketeering activity." *Id.* at 498 (citation omitted).  Direct evidence is not necessary

under RICO.  "The existence of the conspiracy agreement can be inferred from 'the conduct of

the alleged participants or from circumstantial evidence of the scheme.'"  *United States v.*

*Church*, 955 F.2d 688, 695 (11th Cir. 1992) (citations omitted).  Courts have regularly held

banks subject to civil RICO liability.  *See*, *e.g.*, *Quick v. Peoples Bank of Cullman County*, 993

F.2d 793 (11th Cir. 1993).

A RICO claim has the following "elements of proof: '(1) conduct (2) of an enterprise (3)

through a pattern (4) of racketeering activity.'"  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277,

1282 (11th Cir. 2006) (citations omitted).  "[T]he definitive factor in determining the existence

of a RICO enterprise is the existence of an association of individual entities, however loose or

informal, that furnishes a vehicle for the commission of two or more predicate crimes, that is, the

pattern of racketeering activity requisite to the RICO violation."[1]  *United States v. Goldin Indus.,*

*Inc.*, 219 F.3d 1271, 1275 (11th Cir. 2000).

An "'enterprise' includes any individual, partnership, corporation, association, or other

legal entity, and any union or group of individuals associated in fact although not a legal entity."

18 U.S.C. § 1961(4).  "[T]his definition has a wide reach," as "the very concept of an association

in fact is expansive."  *Boyle v. United States*, 129 S. Ct. 2237, 2243 (2009).  The statute defines

"racketeering activity" to include predicate acts of mail fraud, which occur "whenever a person,

'having devised or intending to devise any scheme or artifice to defraud,' uses the mail 'for the

purpose of executing such scheme or artifice or attempting so to do'" – though the mailing itself

---

[1] The substance of a RICO violation is set forth in 18 U.S.C. § 1962(c) and is identical for civil
and criminal cases.  The definition of an enterprise in section 1961(4) is identical for civil and
criminal cases.  Only the remedies differ, with section 1963 governing criminal remedies and
section 1964 governing civil remedies.  So much for Union Bank's claim that Plaintiffs are
seeking "to apply notions of criminal intent" to the civil setting.  Opp. at 7.

need not contain any false information, and need only be "incident," not integral, to the scheme. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008) (quoting 18 U.S.C. § 1341). In addition, a defendant who commits mail fraud can be held civilly liable "even if no one relied on any misrepresentation." *Bridge*, 553 U.S. at 648.

Here, Plaintiffs recently uncovered evidence of the unlawful enterprise between Union Bank and Cast Management, and set forth in detail the facts underpinning this RICO claim in the proposed amended complaint filed under seal. See Proposed Third Amended Compl. ¶¶ 47-51.

The success of the unlawful scheme carried out by this RICO enterprise depended on misrepresentations and omissions to customers, including (1) failing to tell them that the Bank always posted debit transactions from high to low (which kept the scheme hidden from view); (2) telling them they had instantaneous access to accurate account balances (even though the *post hoc* reordering meant the information at any given moment was not necessarily accurate); and (3) failing to alert them at the point of sale that a debit transaction would result in a $35 fee (which led many customers to pile up fee after avoidable fee). See Proposed Third Amended Compl. ¶¶ 68, 70-76, 130. The interstate mails contributed to the enterprise's scheme to defraud Union Bank's customers: the Bank mailed them account statements and account agreements that facilitated the scheme. See Proposed Third Amended Compl. ¶¶ 131-33. Taken together, the factual allegations in the proposed complaint are more than sufficient to state a RICO claim.

It is not this claim but, rather, the Bank's federal preemption argument, that is futile. *See* Opp. at 7-9. On a Rule 15 motion, this argument is defeated out of hand by the fact that plaintiffs routinely assert a civil RICO claim together with state-law claims. *See*, *e.g.*, *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 233 (1989) (reversing dismissal of a complaint that contained a RICO claim in addition to a pendent state-law claim); *NCI Group, Inc. v. Cannon*

*Servs., Inc.*, 2009 WL 2411145 (N.D. Ga. Aug. 4, 2009) (denying motion to dismiss claims brought under RICO and state law).

Moreover, a federal claim cannot itself be preempted by federal law, because the basis for any preemption finding is to safeguard the supremacy of federal law over state law. *See Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985) (the Supremacy Clause, U.S. Constitution, article VI, clause 2, "invalidates *state laws* that 'interfere with, or are contrary to,' federal law.") (quoting *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824) (emphasis added)). Union Bank twists Plaintiffs' position when it argues that we believe state claims could somehow preempt a federal RICO claim. *See* Opp. at 8. That would turn the Supremacy Clause on its head. Making matters worse, the Bank fails to acknowledge that this Court, in its Order denying the omnibus motion to dismiss, already rejected the Banks' preemption argument, which relied on the ***identical*** OCC materials cited in the opposition here. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1310-13 (S.D. Fla. 2010) (King, J.). Union Bank's preemption argument is entirely misplaced, and the proposed RICO count is clearly not futile.

## II.      There Is No Undue Prejudice to Union Bank.

Union Bank contends that "denial of Plaintiffs' Motion would protect everyone's interest" – everyone, that is, except for Plaintiffs. Opp. at 6. The plaintiff is "the master of the complaint," *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 831 (2002), and here, where Plaintiffs have concluded the evidence strongly supports a RICO claim, should be permitted to assert one. Despite the Bank's repeated *ipse dixit* assertions of prejudice, simple prejudice cannot justify denying leave to amend under Rule 15(a). Instead, the non-moving party must demonstrate the existence of "undue" prejudice. *Espey v. Wainwright*, 734

F.2d 748, 750 (11th Cir. 1984) (citation omitted).  Union Bank fails to demonstrate simple prejudice, let alone the requisite undue prejudice.

The Bank's assertions of prejudice are undercut by its statement that allowing the amendment will "cause the case against Union Bank to no longer be at issue."  Opp. at 4; *see also* Opp. at 7 (arguing that the RICO claim will "result in the action no longer being at issue against Union Bank").  If the claim really would make the case against Union Bank go away, the Bank would receive the exact opposite of prejudice.  This is wishful thinking.  Union Bank remains the only defendant named in the proposed complaint.  Plaintiffs do not name CAST Management as a defendant.  But, if the Bank really thinks that CAST Management is an "indispensable party," the Bank may choose to assert a third party claim against it.  Opp. at 4. Either way, there is no undue prejudice to the Bank, which preserves its right to defend itself.

Union Bank makes a fuss about the fact that, to date, no other bank has been hit with a RICO claim.  *See* Opp. at 3-4.  Yet, that does not show undue prejudice.  All it shows is that Plaintiffs unearthed evidence of *this* Bank's conspiracy with its consultants to exploit consumers and the poor, who were caught unaware and forced to pay unwarranted fees.  Each bank in this multidistrict proceeding is responsible for its own defense, as this Court recognized when it ordered "each counsel" to "make his or her own determination of whether or not they feel their presence [at oral argument] is needed and be guided by that *individual (client-oriented)* decision without the necessity of having to discuss with other counsel . . . ."  **DE # 870** at 2 (emphasis added).

Union Bank's need to confront RICO-related issues does not rise to the level of undue prejudice.  In arguing to the contrary, Union Bank cites *Beheer v. ASAP Installations, LLC*, 2010 WL 2431922 (M.D. Fla. 2010), three times.  *See* Opp. at 2, 3, 5.  That case, however, actually

supports Plaintiffs' motion.  For one thing, the court *granted* the plaintiffs leave to file an amended complaint except as to one claim that was plainly barred by the statute of frauds.  *Id*. at *2-4.  For another, the court indicated that the potential addition of a new legal issue constitutes only one factor in the Rule 15 undue prejudice analysis.  *Id*. at *2.  Moreover, the court found no undue prejudice where "the proposed additional claims . . . involve the same facts and evidence as" the original claims.  *Id*.  The same is true here.  Plaintiffs' discovery efforts focus on the origins, implementation and effects of the Bank practices in question.  The facts and evidence in these areas will be central to proving the case against Union Bank, irrespective of the RICO claim.  Indeed, it was this very discovery that brought the unlawful RICO enterprise to Plaintiffs' attention.

Union Bank next complains about class certification.  Opp. at 6-7.  Again, however, the facts supporting the RICO claim directly relate to the same "common nucleus of facts" that creates a cohesive class – the "common practice by Defendants, to enter charges debiting Plaintiffs' accounts from the 'largest to the smallest' thus maximizing the overdraft fee revenue for themselves."  **DE # 1016** at 2.  The evidence of Union Bank's RICO violations will be common to the class just as much as the overlapping evidence of its violations of other laws, and the RICO claim will have no impact on the class-wide damage model.  Similarly, this claim will not affect the class representatives' typicality, because they were all injured by the same practices in the same way, *i.e*., they incurred excessive overdraft fees that they would not have incurred absent the debit re-sequencing scheme.  *See Brown v. SCI Funeral Servs. of Fla., Inc*., 212 F.R.D. 602, 605 (S.D. Fla. 2003) (typicality does not require identical injuries, but is satisfied if the claims of the named plaintiffs and the class arise from the same course of conduct and seek recovery based on the same remedial theory).

Union Bank also suggests that nine months will not be enough time for discovery.  In the Bank's view, November 2011 is "imminent."  Opp. at 5.  Plaintiffs believe nine months will be sufficient for completing discovery.  The parties can, of course, revisit the discovery schedule if it proves necessary – but this presents no reason to deny leave to amend.

**III.   Plaintiffs Moved Expeditiously to Amend the Complaint.**

Finally, Plaintiffs sought leave to amend the complaint shortly after learning of the unlawful association between Union Bank and CAST Management.  There was no way for Plaintiffs to have known of this association before reviewing the documents which, as a result of the delay occasioned by *Cappuccitti*, we first received from the Bank in late 2010.  Plaintiffs moved to amend the complaint at the earliest possible time.

<u>**Conclusion**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for leave to file an amended class action complaint against Union Bank.

Dated: February 16, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@alterslaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

<u>/s/ Ruben Honik</u>
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2011, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being

served this day on all counsel of record or *pro se* parties identified on the attached Service List in

the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596