# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 1:09-MD-02036-JLK

| |
|---|
| **IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**<br><br>**MDL No. 2036** |

| |
|---|
| **THIS DOCUMENT RELATES TO: FOURTH TRANCHE ACTION**<br><br>*Wolfgeher v. Commerce Bank, N.A.*<br>S.D. Fla. Case No. 1:10-cv-22017-JLK<br>W.D. Mo. Case No. 4:10-cv-00328-ODS |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT COMMERCE BANK'S MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT

**TABLE OF CONTENTS**

*Page*

I.      INTRODUCTION.......................................................................................1

II.     STATEMENT OF FACTS.................................................................……......................1

III.    ARGUMENT.................................................................................…..................3

        A.  Plaintiff's Claims Are Not Preempted…..................................................................3

        B.  Plaintiff States A Valid Claim For Breach Of Contract…………………………..5

                1.  The Deposit Agreement Confers Discretion
                    Which Much Be Exercised in Good Faith………………………………...6

                2.  Commerce's Reliance On Missouri's U.C.C. Is Misplaced.......................10

        C.  Plaintiff States A Valid Claim For Unconscionability…………………………..11

                1.  The Deposit Agreement is Procedually Unconscionable…................12

                2.  The Deposit Agreement is Substantively Unconscionable…................13

        D.  Plaintiff's Alternative Claim For Unjust Enrichment Should
            Be Sustained At This Stage Of The Proceedings………………………………...14

        E.  Plaintiff Properly States A Conversion Claim…………………………………...15

        F.  Plaintiff States A Valid Claim Under Missouri's
            Merchandising Protection Act That Is Not Prohibited By
            Constitutional, State, or Federal Law………………………………………….17

                1.  Commerce's Dormant Commerce And Equal
                    Protection Clause Arguments Are Without Merit…………………………17

                        a.   The MPA Applies To State Regulated Entities…………………17

                        b.  Even If The MPA Treats National Banks Differently,
                            It Does Not Violate Any Constitutional Doctrines………………18

                2.  Neither State Nor Federal Law Permits Commerce's Action…………..21

                3.  Commerce's Practices Are Covered By The MPA………………………22

G. Plaintiff Adequately Alleges Harm Caused By Commerce's
Other Unlawful Practices……………………………………………………...24

IV. CONCLUSION……………………………………………………………..25

# **TABLE OF AUTHORITIES**

## **FEDERAL COURT DECISIONS**

*Page*

*Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.*
  155 F.3d 59 (2d Cir. 1998)………………………………………………………………20

*Barnett Bank of Marion County v. Nelson*
  517 U.S. 25 (1996)………………………………………………………………………..4

*BlueHippo Funding, L.L.C. v. McGraw*
  609 F. Supp. 2d 576 (S.D.W. Va. 2009)……………………………………………19

*City of Cleburne, Tex. v. Cleburne Living Cent.*
  473 U.S. 432 (1985)……………………………………………………………………...21

*Cordry v. Vanderbilt Mortgage & Fin., Inc.*
  445 F.3d 1106 (8th Cir. 2006)……….…………………………………………………..9

*Crowell v. Campbell Soup Co.*
  264 F.3d 756 (8th Cir. 2001)……………………………………………………………..8

*Dep't of Agric. v. Moreno*
  413 U.S. 528 (1973)……………………………………………………………………...21

*Dep't of Revenue of Ky. v. Davis*
  553 U.S. 328 (2008)……………………………………………………………………...19

*FCC v. Beach Communications, Inc.*
  508 U.S. 307 (1993)……………………………………………………………………...20

*Fielder v. Credit Acceptance Corp.*
  19 F. Supp. 2d 966 (W.D.Mo. 1998), *vacated on other grounds,*
  188 F.3d 1031 (8th Cir. 1999)……………………………………………………18, 23

*Fla. Lime & Avocado Growers, Inc. v. Paul*
  373 U.S. 132 (1963)……………………………………………………………………...19

*General Motors Corp. v. Tracy*
  519 U.S. 278 (1997)……………………………………………………………………...20

*Ga. Cemetery Ass'n, Inc. v. Cox*
  403 F. Supp. 2d 1206 (N.D. Ga. 2003)……………………………………………21

*Granholm v. Heald*
    544 U.S. 460 (2005)……………………………………………………………...20

*Gutierrez v. Wells Fargo Bank, N.A.*
    No. 07-05923, 2008 U.S. Dist. LEXIS 70124 (N.D. Cal. Sept. 11, 2008)……………4, 22

*Gutierrez v. Wells Fargo & Co.*
    622 F. Supp. 2d 946 (N.D. Cal. 2009)………………………………………………...9, 23

*Gutierrez v. Wells Fargo Bank, N.A.*
    730 F. Supp. 2d 1080 (N.D. Cal. 2011)………………………………………...9, 10, 22

*Hopkins v. Kan. Teachers Cmty. Credit Union*
    265 F.R.D. 483 (W.D. Mo. 2010)…………………………………………………...18

*In re Checking Account Overdraft Litig.*
    694 F. Supp. 2d 1302 (S.D. Fla. 2010)……………………………………..*passim*

*In re McClelland*
    No. 06-41720, 2008 WL 5157685 (Bkrtcy. W.D. Mo. June 20, 2008)……………........23

*Int'l Dairy Foods Ass'n v. Boggs*
    622 F.3d 628 (6th Cir. 2010)…………………………………………………………19

*Metro. Life Ins. Co. v. Ward*
    470 U.S. 869 (1985)…………………………………………………………………...21

*Nordlinger v. Hahn*
    505 U.S. 1 (1992)……………………………………………………………………...21

*Pike v. Bruce Church, Inc.*
    397 U.S. 137 (1970)…………………………………………………………………20

*Plyler v. Doe*
    457 U.S. 202 (1982)…………………………………………………………………...21

*Romer v. Evans*
    517 U.S. 620 (1996)…………………………………………………………………...21

*SPGGC, L.L.C. v. Blumenthal*
    505 F.3d 183 (2d Cir. 2007)…………………………………………………………19

*Texas & Pacific Railway Co. v. Pottorff*
    291 U.S. 245 (1934)…………………………………………………………………...16

*Torres v. Wells Fargo*
    No. 07-5561, 2008 WL 2397460 (N.D. Cal. June 11, 2008)................................22

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgt. Auth.*
    550 U.S. 330 (2007)...........................…...................................................................19

*Watters v. Wachovia Bank, N.A.*
    550 U.S. 1 (2007)............................................................................................................4

*Weiss v. Wells Fargo Bank, N.A.*
    No. 07-5037, 2008 WL 2620886 (W.D. Mo. July 1, 2008)...................…...............4, 22

*White v. Wachovia Bank, N.A.*
    563 F. Supp. 2d 1358 (N.D. Ga. 2008)................................................…....…......4, 9, 22

## STATE COURT DECISIONS

*Addison v. Jester*
    758 S.W.2d 454 (Mo. Ct. App. 1988).................................................................24

*Berry v. American Express Publishing, Inc.*
    147 Cal. App. 4th 224 (2007)..............................................................................23

*Brewer v. Mo. Title Loans, Inc.*
    323 S.W.3d 18 (Mo. 2010)..........................................................................11, 12, 13

*Collier v. Consol. Cab Co.*
    591 S.W.2d 391 (Mo. Ct. App. 1979)..................................................................16

*Commerce Trust Co. v. Watts*
    231 S.W.2d 817 (Mo. 1950)...............................................................................8

*Cowbell, L.L.C. v. BORC Bldg. & Leasing Corp.*
    Nos. WD72052, WD72231, 2010 WL 4449372 (Mo. Ct. App. Nov. 9, 2010)..............11

*Cuomo v. Clearing House Ass'n,*
    129 S. Ct. 2710 (2009)....................................................................................4

*Cruthis v. Firstar Bank, N.A.*
    354 Ill. App. 3d 1122 (App. Ct. 2004)................................................................16

*Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corr.*
    977 S.W.2d 266 (Mo. 1998)................................................................................6

*Hartland Computer Leasing Corp. v. Ins. Man, Inc.*
    770 S.W.2d 525 (Mo. Ct. App. 1989).................................................................12

*Hodel v. Ind.*
   452 U.S. 314 (1981)…………………………………………………………………....19

*Howard v. Turnbull*
   258 S.W.3d 73 (Mo. Ct. App. 2008)……………..……………………………………14

*Levin v. Commerce Energy, Inc.*
   130 S.Ct. 2323 (2010)…………..……………………………………………………..19

*Martin v. Prier Brass Mfg. Co.*
   710 S.W.2d 466 (Mo. Ct. App. 1986)……………………………………………….….6

*Mertz v. Blockbuster, Inc.*
   32 S.W.3d 130 (Mo. Ct. App. 2000)…………………………………………………..15

*Perdue v. Crocker Nat'l Bank*
   702 P.2d 503 (Cal. 1985)………………………………………………………………....14

*Perez v. Boatmen's Nat'l Bank of St. Louis*
   788 S.W.2d 296 (Mo. Ct. App. 1990)………………………………………………….16

*Raster v. Ameristar Casinos, Inc.*
   S.W.3d 120 (Mo. Ct. App. 2009)……………………………………………….23, 24

*Saunders v. Michigan Avenue National Bank*
    662 N.E.2d 602 (Ill. App. Ct. 1996)……………………………………………...7

*Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.*
   199 S.W.3d 228 (Mo. Ct. App. 2006)…………………………………………………24

*State ex rel. LeFevre* v. *Stubbs*
   642 S.W.2d 103 (Mo. 1982)……………………………………………………………24

*State ex rel. Vincent v. Schneider*
   194 S.W.3d 853 (Mo. 2006)……………………………………………………11, 13

*Swain v. Auto Servs., Inc.*
   128 S.W.3d 103 (Mo. Ct. App. 2003)………………………………………………....12

*Zmuda v. Chesterfield Valley Power Sports, Inc.*
   267 S.W.3d 712 (Mo. Ct. App. 2008)…………………………………………………23

## **STATUTES & REGULATIONS**

Cal. Civ. Code § 1761(a)-(b)………………………………………………………23

Mo. Rev. Stat. § 400.4-303……..……………………………………………....10, 20

Mo. Rev. Stat. § 407.010.1(4)…………………………………………………...23

Mo. Rev. Stat. § 407.020……………………………………………………...23

Mo. Rev. Stat. § 407.020.1………………………………………………………..22

Mo. Rev. Stat. § 407.020.2(2)……………..…………………………………17, 18

Mo. Rev. Stat. § 407.025……………………………………………………...18

Mo. Rev. Stat. § 407.120………………………………………………………...18

Or. Rev. Stat. § 646.605………………………………………………………23

12 C.F.R. § 7.4002…………………………………………………………...22

12 C.F.R. § 7.4007(c)……………………………..…………………………4, 5

## **RULES**

Fed.R.Civ.P. 12(b)(6)…………………………………………………………11

Fed.R.Civ.P. 15 ………………………………………………………………25

## **OTHER SOURCES**

*Combating Consumer Fraud in Missouri: The Development of
    Missouri's Merchandising Practices Act,* 52 Mo. L. Rev. 365 (1987)…………………19

OCC Interpretive Letter No. 464, 1988 WL 284846 (Dec. 14, 1988)…………………………...16

## I.     INTRODUCTION

In her Second Amended Complaint ("SAC"), Plaintiff seeks to recover, for herself and all other customers similarly situated, excess overdraft fees generated and retained through the unlawful practices of Commerce Bank ("Commerce") including, among other things, its manipulation and reordering of debit transactions from largest to smallest to generate more overdrafts and overdraft fees.   Commerce seeks dismissal of Plaintiff's claims based on arguments this Court has already rejected in ruling on the First and Third Tranches' motions to dismiss.[1]   As demonstrated below, Commerce's arguments are without merit and its Motion to Dismiss should be denied in its entirety.

## II.    STATEMENT OF FACTS

Plaintiff, Leslie Wolfgeher ("Plaintiff"), is a resident of Missouri with an account at Commerce.  SAC ¶¶ 12, 32, 71.  Plaintiff asserts claims against Commerce for breach of contract and breach of the covenant of good faith and fair dealing, unconscionability, conversion, and unjust enrichment on behalf of herself and all U.S. customers who incurred overdraft fees as a result of Commerce's practice of reordering debit card transactions ("National Class").  SAC ¶¶ 16, 84-116.  She also states claims for violations of Missouri's Merchandising Practices Act ("MPA") on behalf of herself and all Commerce customers having accounts at branches in Missouri who incurred overdraft fees as a result of these practices ("Subclass").  SAC ¶¶ 16, 117-123.  The National Class and the Subclass are hereinafter collectively referred to as the "Classes."   The allegations made and common law claims asserted by Plaintiff against Commerce mirror those pled by the plaintiffs against the First Tranche banks.

---

[1]  Additionally, Commerce also maintains that the MPA is unconstitutional.   Defendant's Memorandum in Support of Its Motion to Dismiss ("Def. Mem.") at 18-23.  As with the other arguments discussed below, this one is also without merit.

Plaintiff and all members of the Classes maintain or maintained a checking account with Commerce, the terms for which were contained in standardized account holder agreements. SAC ¶ 32. A representative copy of Commerce's account holder agreements, 27 pages in length and in miniscule print is annexed as Exhibit A to the SAC (the "Deposit Agreement"). The terms relating to reordering are hidden in the Deposit Agreement's dense, small type, boilerplate provisions. SAC ¶ 32. The Deposit Agreement and the related documents are unconscionable contracts of adhesion.

The Deposit Agreement contains discretionary language regarding Commerce's reordering practices, such as "[w]e *may* pay checks or other items drawn upon or debits to your account in any order determined by us," or "*in general*, we pay checks or other items drawn upon or debits to your account in order from highest to lowest." SAC ¶¶ 33-34 (emphasis supplied). However, the Deposit Agreement is ineffective, ambiguous, unfair, and deceptive because it does not unambiguously state that Commerce *always* reorders debits from high to low regardless of the amounts involved – even though Commerce *does always* reorder transactions in this manner to maximize overdrafts and overdraft fee revenues for itself at the consumers' expense. SAC ¶¶ 40, 42-48. Commerce manipulates and reorders debits from highest to lowest solely to increase the number of exorbitant overdraft fees it can charge. SAC ¶ 39. Moreover, debits are held for multiple days and then batched together to maximize the number of overdraft transactions and fees, and Commerce assesses overdraft fees for transactions that occurred when there were sufficient funds in the customers' accounts to cover the transactions. SAC ¶¶ 47-48.

Further, Commerce did not: (i) disclose to customers that they may "opt out" of Commerce's overdraft scheme; (ii) provide an opportunity to cancel the debit transaction before incurring an overdraft fee; or (iii) obtain affirmative consent from customers prior to processing

transactions that will overdraw their accounts and result in overdraft fees.  SAC ¶¶ 32-38, 40-41.

Commerce also engages in deceptive and manipulative practices, in addition to those described above, to cloak accurate information regarding customer balances.  SAC ¶¶ 49-60.   Its overdraft policies and practices, and the reordering provisions of its Deposit Agreement, are procedurally and substantively unconscionable.  SAC ¶¶ 22(k), 24, 32-60, 61, 68-69, 93, 94.   As a direct consequence of Commerce's unlawful conduct, Plaintiff and the Classes have suffered damages.  SAC ¶¶ 69-83.

## III.    ARGUMENT

### A.      Plaintiff's Claims Are Not Preempted.

In response to the motions to dismiss filed by the defendant banks in the First Tranche of MDL-2036, this Court rejected the argument that federal law preempts the state law claims that have been raised in this litigation holding that "[a]t this stage, these allegations do no more than incidentally affect the banks' exercise of their deposit taking power and are therefore not preempted."  *In re Checking Account Overdraft Litig.,* 694 F. Supp. 2d 1302, 1313-14 (S.D. Fla. 2010).[2]  The Court similarly rejected the purported defense of preemption in denying the motions to dismiss made by the Third Tranche banks.  Despite these rulings, Commerce again raises preemption relying on the same arguments that repeatedly have been considered and rejected by this Court.

Neither the National Banking Act ("NBA") nor the regulations of the Office of the Comptroller of Currency ("OCC") empower national banks to disregard all state laws.  Indeed, as this Court previously recognized, the OCC's own regulation expressly identifies certain areas

---

[2] In addition to the preemption arguments below, Plaintiff adopts and incorporates those made by First Tranche plaintiffs in the Response to Omnibus Motion to Dismiss.  [DE # 265.]

in which "state law claims are not preempted" by federal law, including state law-based contract and tort claims.  *Overdraft Litig.,* 694 F. Supp. 2d at 1313 (*quoting* 12 C.F.R. § 7.4007(c)).

As observed by the United States Supreme Court, states "have always enforced their general laws against national banks."  *See Cuomo v. Clearing House Ass'n*, 129 S. Ct. 2710, 2720 (2009).   In *Watters v. Wachovia Bank, N.A.,* 550 U.S. 1, 12 (2007), the Supreme Court held that "[s]tates are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers."   Indeed, there must be an irreconcilable conflict between federal and state statutes.  *See Overdraft Litig.,* 694 F. Supp. 2d at 1311 (*discussing Barnett Bank of Marion County v. Nelson*, 517 U.S. 25, 32 (1996)).  There is no such conflict or interference here.

In addition to this Court's ruling rejecting the banks' preemption arguments, the court in *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-05923, 2008 U.S. Dist. LEXIS 70124 (N.D. Cal. Sept. 11, 2008), rejected similar preemption claims asserted by Wells Fargo.  *See also Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2011) (reaffirming rejection of preemption argument after trial).  The court held that "there was no preemption because the issue is whether Wells Fargo has been manipulating – indeed downright altering – customers' transaction records so as to maximize overdraft penalties imposed on customers."  *Id.* at *21; *see also White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1367 (N.D. Ga. 2008).

Commerce relies on *Weiss v. Wells Fargo Bank, N.A.*, No. 07-5037, 2008 WL 2620886 (W.D. Mo. July 1, 2008), but *Weiss* is inapposite.  As discussed by plaintiffs in the First Tranche, [DE # 265 at 28-29], *Weiss* addressed misrepresentations made in solicitations for mortgage loan products that related to Wells Fargo's advertising and disclosure practices.  Preemption was found because of the existence of "regulations expressly provid[ing] that bank advertising and

disclosures are not subject to state law." *Id.* at \*2.  No such similar regulations are found here.  Further, the *Weiss* case did not involve Wells Fargo's practice of reordering electronic debits.  Therefore, *Weiss* is wholly inapplicable to the facts of this case.

As observed in the First Tranche cases, there is no preemption here because: (a) the state laws at issue in this case are laws of general applicability, not laws targeted at national banks; (b) the state laws are the type of laws expressly identified by the OCC as not being preempted (12 C.F.R. § 7.4007(c)); and (c) none of the state law claims are based on laws that irreconcilably conflict with the OCC's regulations or other federal law.  The central issue is not whether Commerce has the right to charge overdraft fees.  Rather, the issue is whether Commerce has complied with state laws when imposing the overdraft fees.  Commerce has no federally granted immunity that allows it to benefit itself at the cost of harming consumers by manipulating the posting of debit card transactions to increase the likelihood or frequency of overdraft charges.  *Overdraft Litig.,* 694 F. Supp. 2d at 1313-14.  This Court should again conclude that the state laws of general application at issue in the Plaintiff's SAC "do not vitiate the purposes of the NBA, OCC regulations and banks could comply with both the NBA, OCC regulations and state laws if they refrained from engaging in the criticized posting procedures." *Id.* at 1313.

**B.      Plaintiff States A Valid Claim For Breach Of Contract.**

Commerce claims that there was no breach of contract because its Deposit Agreement expressly permits it to post debits in high-to-low order and, consequently, it is not bound by any duty of good faith and fair dealing.  Def. Mem. at 9-10.  Like the agreements already considered by this Court, the Deposit Agreement provides general discretion in posting debits.  There is nothing in the Deposit Agreement or in Missouri law that mandates a result here that is different from the other agreements already considered by the Court.

      1.      **The Deposit Agreement Confers Discretion Which Must Be Exercised in Good Faith.**

Commerce does not dispute that "Missouri law implies a covenant of good faith and fair dealing in every contract." *See Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corr.*, 977 S.W.2d 266, 271 (Mo. 1998); *see also Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo. Ct. App. 1986). Missouri courts, like courts throughout the United States, recognize that the "duty [of good faith and fair dealing] prevents one party to the contract to exercise a judgment conferred by the express terms of agreement in such a manner as to evade the spirit of the transactions or so as to deny the other party the expected benefit of the contract." *Martin*, 710 S.W.2d at 473.

The Deposit Agreement clearly gives Commerce certain discretion as to the manner and order in which it posts debit transactions. Commerce's discretion is apparent from the use of the terms "may" and "[i]n general." Missing from the Deposit Agreement is any language indicating that Commerce "will" "always" post high to low. The Deposit Agreement provides:

> We *may* pay checks or other items drawn upon or debits to your account in any order determined by us, even if paying a particular item or debit results in an insufficient available balance in your account . . .
>
> In *general*, we pay checks or other items drawn upon or debits to your account in order from the highest to the lowest . . .
>
> This policy is based on the fact that larger items typically include payments for rent, home loans and auto loans . . . .

SAC ¶¶ 32-38, Ex. A, Section D(2) at 14, 15 (emphasis added). This Court has found that similar language confers discretion to the banks that must be exercised in good faith and to constitute a sufficient basis for rejecting dismissal of claims for breach of contract and violation of the duty of good faith and fair dealing. *See Overdraft Litig.*, 694 F. Supp. 2d at 1314-17.

Commerce concedes that the implied duty of good faith applies if one party is given *generalized* discretion in a contract.  Def. Mem. at 10.  While acknowledging the above language, Commerce claims that this case is different because its Deposit Agreement also provides that it *will* post high-to-low.  Def. Mem. at 9.  The portion of the Deposit Agreement addressing reordering, however, does not use the term "will" with respect to posting order except to say that debit transactions "will be posted" in the same order as checks or other debits.  SAC Ex. A, Section D(2) at 14.  With regard to the posting order, the Deposit Agreement provides only that Commerce "generally" posts in a high-to-low order and it implies that it *may* do so only with respect to large payments for rent and loans.  SAC Ex. A, Section D(2) at 14.  Nowhere does it reveal that Commerce *always*, as a matter of course, reorders high to low.  Commerce retains the discretion to post high to low or not to post to high to low and is bound to exercise this discretion in good faith.

Commerce argues that because high-to-low posting is not contrary to the Deposit Agreement terms, it has not breached the Deposit Agreement.  Def. Mem. at 10.  Commerce misses the point.  Plaintiff's breach of contract claim rests on whether Commerce exercised its discretion to post debits in high to low order and carried out its other practices alleged to be wrongful in good faith:  "Plaintiffs do not ask the Court to tell the [bank] how to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing."  *Overdraft Litig.*, 694 F. Supp. 2d at 1315.

The cases cited by Commerce are all distinguishable because the contracts at issue in them, unlike the Deposit Agreement here, conferred no discretion and clearly and unambiguously defined the parameters of the parties' conduct.  For example, in *Saunders v. Michigan Avenue National Bank,* 662 N.E.2d 602 (Ill. App. Ct. 1996), the court ruled that the

bank contract was clear, unambiguous, and without discretion.  *See also Crowell v. Campbell Soup Co.,* 264 F.3d 756 (8th Cir. 2001) (holding the same in a case involving Minnesota law and an unconditional contractual right to terminate).  In *Commerce Trust Co. v. Watts,* 231 S.W.2d 817 (Mo. 1950), the court similarly held that the bank contract was clear and unambiguous and could not be changed.  The issue in that case was the application of the statute of frauds, which is restrictively applied, not the covenant of good faith and fair dealing, which broadly construed and implied in every contract.  Unlike the cited cases and as made clear above, the Deposit Agreement is not clear and unambiguous and confers discretion.  Plaintiff seeks to enforce Commerce's obligations under the Deposit Agreement, not change it.[3]

Moreover, Commerce incorrectly claims that Plaintiff has not sufficiently pled a breach of an express provision of the Deposit Agreement.[4]  Def. Mem. at 10.  Commerce overlooks the fact that if there were an obligation to show an express provision was breached, there would be no reason for an implied covenant of good faith and fair dealing because a breach of contract

---

[3] Commerce's reliance on the Deposit Agreement is also misplaced since, as this Court noted: "[A] declaration of unconscionability may affect the legal status of the contractual terms that Defendants seek to enforce, which may, in turn, affect the analysis of the other causes of action that Plaintiffs assert."  *Overdraft Litig.,* 694 F. Supp. 2d at 1318.  Thus, if the Court were to find those same provisions to be unconscionable and therefore unenforceable, as it should, then Commerce's duty of good faith and fair dealing would also be violated.

[4] To the extent a breach of an express term is required, the SAC allegations identify several terms in the Deposit Agreement that have been breached.  For example, the Deposit Agreement states explicitly "If funds are not available for . . . debits, your account may be subject to overdraft or insufficient funds fees."  However, Commerce charges overdraft fees even when sufficient funds are *available* for particular transactions.  SAC ¶¶ 22(f), 22(h), 48, 53, 56, 76, 82.  Similarly, the Deposit Agreement states that there will be a "simultaneous withdrawal" from the checking account for a point-of-sale transaction or, in case of a non-PIN transaction, that Commerce may "immediately reduce the available balance."  SAC Ex. A, at 14.  Contrary to this and other language in the Deposit Agreement and the reasonable expectation of Commerce's customers, however, "the Bank groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days."  SAC ¶ 40.

claim would lie.  In any event, this Court may easily reject Commerce's arguments against the breach of contract claim based on case authority it already has examined.[5]  Like the plaintiffs in *White*, 563 F. Supp. 2d at 1364, Plaintiff alleges that Commerce manipulates and alters her transactions records, imposes overdraft fees even where her account contains sufficient funds to cover a transaction, and routinely enforces a policy whereby charges incurred are posted to her account in order of largest to smallest amounts, even where larger charges are received days after smaller charges.  SAC ¶¶ 43-47.  In denying Wachovia's motion to dismiss the contract claim, the court in *White* rejected Wachovia's premise that the provisions of the contract expressly permitted it to reorder and impose overdraft fees:

> The court cannot find as a matter of law that the Deposit Agreement's statement that Wachovia "may" post items "in any order" (Deposit Agreement ¶ I.D.12) expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, and maximize overdraft fees in the ways the Complaint alleges.

*White*, 563 F. Supp. 2d at 1364.  There is no provision in Commerce's Deposit Agreement that expressly gives it that right either.

Similarly, in *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 952-53 (N.D. Cal. 2009), U.S. District Judge William Alsup denied summary judgment to Wells Fargo and held that "even if the bank-depositor contract purports to allow the bank to post in any order it wishes, such discretion remains subject to the bank's duty of good faith and fair dealing."   Indeed, the *Gutierrez* court subsequently found after trial that Wells Fargo violated that duty.  730 F. Supp. 2d 1080 (N.D. Cal. 2011).  In reaching its conclusion, the Court found that the duty of good faith precluded the Bank from "exercising that discretion to turn what would ordinarily be one

---

[5] At best, Commerce raises a question of fact by defending its actions based on its "good faith business judgment."  Def. Mem. at 10 (*citing Cordry v. Vanderbilt Mortgage & Fin., Inc.*, 445 F.3d 1106, 1112 (8th Cir. 2006)).  That is not a valid argument for a motion to dismiss, and Plaintiff is entitled to test such a claim through discovery.

overdraft into as many as ten." *Id*. at 1122.  The Court found in interpreting the analogous Wells Fargo deposit agreement that "[t]he bank went to great lengths to bury the words deep in a lengthy fine-print document." *Id*. at 1124.  It further explained:

> The bank stated in every version of its CAA that it "may, *if it chooses*, post items in the order of the highest dollar amount to the lowest dollar amount" (*see, e.g.*, TX 79 at 23) (emphasis added).  Even a sophisticated customer could reasonably have understood this to mean that the bank had *not* yet chosen to implement such a change or would exercise discretion on an item-by-item basis . . . . Ambiguities should be resolved against the drafter, especially where contracts of adhesion are involved.

*Id*. at 1123.  As in *Gutierrez*, *White*, and the First and Third Tranches, Plaintiff must be permitted the opportunity to conduct discovery to demonstrate that Commerce's practices of posting high-to-low, manipulating transactions, delaying posting, and maximizing overdraft fees in the ways the SAC alleges violate Commerce's duty of good faith and fair dealing.

### 2.      Commerce's Reliance On Missouri's U.C.C. Is Misplaced.

Commerce also relies on Missouri's U.C.C. § 4-303 (Mo. Rev. Stat. § 400.4-303), which governs paper check transactions, to argue that its high-to-low posting is authorized by Missouri. Def. Mem. at 11-13.  Commerce adds nothing new to this argument which has already been considered and rejected by this Court.  The statutory language of the Missouri U.C.C. is the same (or is not materially different) as the state law which was considered and rejected by this Court as supporting the banks' conduct.  *See Overdraft Litig.*, 694 F. Supp. 2d at 1315-16.  Indeed, the case authority cited by Commerce is the same that has already been considered by this Court. Def. Mem. at 13; *Overdraft Litig.*, 694 F. Supp. 2d at 1316.  Moreover, Section 303(b) merely permits financial institutions discretion to post items "in any order."  As discussed above, this discretion is subject to a duty of good faith.  *Overdraft Litig.,* 694 F. Supp. 2d at 1315. Consequently, this Court should reject Commerce's claim that Missouri law authorized its high-to-low debit posting.

- 10 -

### C.      Plaintiff States A Valid Claim For Unconscionability.

Commerce argues that Plaintiff has failed to allege[6] or prove either procedural or substantive unconscionability.  Def. Mem. at 13-16.  None of Commerce's arguments withstand scrutiny.  Moreover, determinations regarding unconscionability are fact intensive, thus making a Fed. R. Civ. P. 12(b)(6) motion inappropriate.

In Missouri, as in other states, "[t]he doctrine of unconscionability is meant to guard against one-sided contracts, oppression, and unfair surprise."  *Cowbell, L.L.C. v. BORC Bldg. & Leasing Corp.*, Nos. WD72052, WD72231, 2010 WL 4449372, at *3 (Mo. Ct. App. Nov. 9, 2010).  Unconscionability has two elements (1) procedural and (2) substantive.  Procedural unconscionability "relates to the formalities of the making of an agreement and encompasses, for instance, fine print clauses, high pressure sales tactics or unequal bargaining positions."  *Brewer v. Mo. Title Loans, Inc.*, 323 S.W.3d 18, 22 (Mo. 2010) (en banc); *see also State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858 (Mo. 2006).   On the other hand, "substantive unconscionability means an undue harshness in the contract terms."  *Brewer*, 323 S.W.3d at 22. Both are present here.[7]

---

[6] Commerce argues that Plaintiff does not allege that a contract or clause was unconscionable at the time the contract was made.  Def. Mem. at 13.  To the contrary, among other allegations, the SAC states that Commerce "[r]equires its customers to enter into standardized agreements which include unconscionable provisions," (SAC ¶ 22(k)), and that a number of factors including, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, and the oppressiveness of its terms, render the terms of the Deposit Agreement unconscionable (SAC ¶ 93).  The Deposit Agreement was unconscionable when made and it remains so.

[7] Commerce cites to *Brewer*, 323 S.W.3d at 22, for the proposition that "both [procedural and substantive elements] must generally be present for a finding of unconscionability to be made." Def. Mem. at 14.  However, Defendant misstates the law, as *Brewer* stands for the proposition that "Missouri law does not require the party claiming unconscionability to prove both procedural and substantive unconscionability."

**1.    The Deposit Agreement is Procedurally Unconscionable.**

The SAC alleges that the sophistication and bargaining power of Commerce dwarfs that of Plaintiff.  SAC ¶ 32.  The Deposit Agreement, drafted and offered on a take-it-or-leave-it basis, is a voluminous boilerplate contract printed in small type over dozens of pages.  SAC ¶ 32. It is a classic contract of adhesion.  SAC ¶ 32.  Despite Commerce's claims, Plaintiff does not argue that the Deposit Agreement is *per se* unconscionable merely because it is a contract of adhesion.  Def. Mem. at 14 (*citing Hartland Computer Leasing Corp. v. Ins. Man, Inc.*, 770 S.W.2d 525, 527 (Mo. Ct. App. 1989)).  On the contrary, Plaintiff's allegations are that the adhesiveness of the Deposit Agreement is a significant factor in whether that contract is procedurally unconscionable; an allegation fully supported by Missouri law.  *See, e.g.*, *Swain v. Auto Servs., Inc.*, 128 S.W.3d 103, 107 (Mo. Ct. App. 2003).  Moreover, because the agreements provided by other similar banks contain similar language, customers lack the ability to shop around for more favorable terms.

This Court has previously found that essentially identical allegations supported a claim of procedural unconscionability:  "[T]he disparity in sophistication and bargaining power between Plaintiffs and Defendants is obvious.  The terms at issue were contained in voluminous boilerplate language drafted by the bank.  If Plaintiffs did disagree with the terms, there was no meaningful opportunity to negotiate with the bank."  *Overdraft Litig.*, 694 F. Supp. 2d at 1319; *see also Abels*, 678 F. Supp. 2d at 1279 ("Procedural unconscionability is satisfied here because of the disparity in bargaining power between Plaintiffs and Defendant."); *Brewer*, 323 S.W.3d at 23 (finding unconscionability where "there was evidence that the loan agreement was non-negotiable and difficult for the average consumer to understand and that [Defendant] Missouri

Title Loans was in a superior bargaining position.").  Under Missouri law and this Court's own analysis in previous cases, Plaintiff has sufficiently alleged procedural unconscionability.

2.      **The Deposit Agreement is Substantively Unconscionable.**

In ruling on the First Tranche motion, this Court found allegations of substantive unconscionability to be sufficient where the complaint at issue stated:

> [T]hat [the] deposit agreements contained contractual terms regarding overdraft protection that had the purpose and effect of allowing defendants to re-order the posting of debit transactions to maximize the number and amount of overdraft fees to Plaintiffs, and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service.

*Overdraft Litig.*, 694 F. Supp. 2d at 1320; *see also Brewer*, 323 S.W.3d at 23; *Schneider*, 194 S.W.3d at 858.  Based on the same allegations, this Court should find the Deposit Agreement substantively unconscionable.

The overdraft fee provisions in the Deposit Agreement are unreasonably favorable to Commerce, and the purpose and effect of those provisions are to negate the reasonable expectations of the customers.  As discussed in the SAC, Commerce relies on the unconscionable overdraft terms to manipulate transactions so as to wrongfully multiply fees – excessively large fees that customers *cannot* reasonably avoid, even when exercising due diligence to monitor their account balances and to maintain sufficient funds.  SAC ¶¶ 7-9, 30-31, 56, 65.  No reasonable person would ever have agreed to grant Commerce the unfettered power to manipulate checking account transactions for the sole purpose of maximizing its profits at his or her expense.

Commerce argues that the practice of ordering debit card transactions from high to low is a "routine banking practice," authorized by the U.C.C. and Missouri law.  Def. Mem. at 15.  This Court has addressed and dismissed this very argument, noting that "the provision they rely on,

- 13 -

Section 4-303(b), applies only to paper checks, not the electronic debits that are the subject of this lawsuit." *See Overdraft Litig.*, 694 F. Supp. 2d at 1320.

Further, substantive unconscionability is evident from the disparity between the cost and the value of the service rendered on one hand, and, on the other, its price. As alleged, Commerce imposes uniform $35 overdraft fees on transactions that overdraw a customer's account. SAC ¶ 7. However, the cost to Commerce to provide this "service" has *no reasonable relation* to the amount of the overdraft, nor to the actual cost of paying it. SAC ¶ 94. This fact alone dictates the unconscionability claim is plausible and should be sustained. *See, e.g.*, *Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 512-13 (Cal. 1985) (allegations of overdraft fees of $6 deemed sufficient to maintain unconscionability claim); *Overdraft Litig.*, 694 F. Supp. 2d at 1320 (sustaining an unconscionability claim that the banks' overdraft fees "bear no reasonable commercial relationship to the costs or risk associated with providing the overdraft service"). Thus, both procedural and substantive unconscionability exist here and discovery on this issue should be permitted.

### D.       Plaintiff's Alternative Claim For Unjust Enrichment Should Be Sustained At This Stage Of The Proceedings.

Commerce contends that Plaintiff's claim for unjust enrichment should be dismissed because there is an express written contract. As this Court has recognized, Plaintiff may plead and litigate both claims at this stage of the case. *Overdraft Litig.*, 694 F. Supp. 2d at 1321 ("Fed. R. Civ. P. 8(d) allows pleading in the alternative, even if the theories are inconsistent. Defendants have not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under an unjust enrichment theory."). Missouri law is fully consistent with this Court's ruling. *See Howard v. Turnbull*, 258 S.W.3d 73, 76 (Mo. Ct. App. 2008) ("[Plaintiff's] allegation that the

[defendants] breached an express contract is an alternative pleading to his other causes of action, which is allowable in Missouri.").

E.        **Plaintiff Properly States A Conversion Claim.**

Commerce seeks dismissal of Plaintiff's conversion claim based on the same argument that has been asserted and rejected by this Court previously, namely that Plaintiff did not own or have title to the funds that were held by Commerce.  Def. Mem. at 16-17; *see Overdraft Litig.*, 694 F. Supp. 2d. at 1322.  This Court should again reject this argument.[8]

In Missouri, as in other states, a conversion claim will lie if plaintiff is entitled to possession of the property, the defendant took possession of the property with the intent to exercise some control over it, and the plaintiff was thereby deprived of the right of possession to the property.  *Mertz v. Blockbuster, Inc.*, 32 S.W.3d 130, 133 (Mo. Ct. App. 2000).  As this Court recognized in ruling on the First Tranche cases:

> Here, Plaintiffs unquestionably had the right to possess the funds in their bank accounts upon demand to the bank, and they have alleged that Defendants wrongfully took funds from their accounts so that Plaintiffs were unable to possess and use those funds.  This interference with Plaintiffs' property interest in the funds in their accounts constitutes a cause of action for conversion.

*Overdraft Litig.*, 694 F. Supp. 2d. at 1323.  Indeed, Section II of the Deposit Agreement is entitled "Ownership of Accounts" and makes clear that ownership of the funds lies with the customer, not with Commerce.  Thus, when a customer deposits his or her paycheck into a personal account, the customer retains, at a minimum, the right to possess those funds.

Despite the express language in the Deposit Agreement, Commerce argues that, pursuant to the National Bank Act and Supreme Court precedent, Commerce may not treat funds in deposit accounts as the property of the depositor.  Def. Mem. at 17.  None of the authorities cited

---

[8] Notably, Commerce does not claim that the SAC fails to adequately plead interference with a property interest, the second element of a conversion claim.

states such a prohibition.  Both *Texas & Pacific Railway Co. v. Pottorff*, 291 U.S. 245 (1934), which was raised by the banks in the First Tranche and distinguished in plaintiffs' opposing memorandum of law [DE # 265 at 68-69], and OCC Interpretive Letter No. 464, 1988 WL 284846 (Dec. 14, 1988), dealt with attempts by the banks to enforce or secure a pledge.  Plaintiff is not seeking to enforce a pledge by Commerce.  Consequently, *Texas Pacific Railway* and OCC Interpretive Letter No. 464 are inapposite.

Commerce also relies on cases for the proposition that individuals that maintain general deposits do not own the funds that are maintained at a bank, but rather become a creditor of the bank.  Def. Mem. at 16-17.   The facts of those cases are not even remotely similar to the unlawful conduct alleged by Plaintiff, as none of them examine the appropriateness of maintaining a conversion claim against a bank for unlawfully generating overdraft fees that are automatically debited from customer accounts.  *See, e.g.*, *Collier v. Consol. Cab Co.*, 591 S.W.2d 391 (Mo. Ct. App. 1979) (addressing whether a judgment creditor could garnish funds in an account held by a bank); *Perez v. Boatmen's Nat'l Bank of St. Louis*, 788 S.W.2d 296 (Mo. Ct. App. 1990) (failing to reach the issue of whether a bank's misuse of customer funds was a conversion claim).  Many courts that have considered facts similar to those here have held that a depositor could bring a claim against the bank for conversion.  *See Overdraft Litig.*, 694 F. Supp. 2d. at 1322-23; *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d 1122, 1131-32 (App. Ct. 2004).  It defies common sense to say that depositors have no right to possess their own money once it has been deposited into their personal bank accounts – especially since depositors have instantaneous access to these specific funds at ATMs and in POS transactions as well as online.

**F.**      **Plaintiff States A Valid Claim Under Missouri's Merchandising Protection Act That Is Not Prohibited By Constitutional, State, or Federal Law.**

Commerce claims that the MPA is unconstitutional because it excludes state-regulated entities from its purview while including national banks, and thereby violates the Dormant Commerce and Equal Protection Clauses. Def. Mem. at 18-20. It also argues that the MPA does not provide a cause of action to challenge its conduct because state and federal law permit its conduct and, in any event, its conduct does not constitute services under the MPA. Def. Mem. at 20-23. To the contrary, however, (a) the MPA is equally applicable to state and national banks for the claims alleged here, and (b) even if, *arguendo*, the MPA treated national and state-chartered banks differently, it would not violate the constitution for reasons including Commerce's failure to demonstrate disparate and significant adverse impact on interstate commerce, discrimination solely for the purpose of protecting local economic interests, and no rational basis for the statutory distinction. Commerce's remaining assertions (Def. Mem. at 20-23) are equally unavailing. Its arguments regarding state and federal law have previously been rejected by this Court (*Overdraft Litig.*, 694 F. Supp. 2d at 1310-14, 1325-26) and the MPA not only broadly interprets "services" but also covers "intangibles."

**1.**      **Commerce's Dormant Commerce And Equal Protection Clause Arguments Are Without Merit.**

**a.**      **The MPA Applies To State Regulated Entities.**

Commerce's constitutional arguments rest solely on its assertion that Missouri state-chartered banks have been excluded from the MPA's coverage. Def. Mem. at 18, 20. Despite Commerce's claim, the MPA is applicable to state-chartered banks as well as national banks. While the MPA excludes certain types of businesses that are regulated by state agencies including banks, Mo. Rev. Stat. § 407.020.2(2), the exclusion does not apply if the authority to

implement the MPA is "provided to either the attorney general or a private citizen by statute." Mo. Rev. Stat. § 407.020.2(2) (last sentence).

Private individuals were given the authority to implement the MPA in 1992 in Mo. Rev. Stat. § 407.025, which authorizes individual and class actions under the MPA.  By its very terms, the revised Section 407.025 does not limit or exclude persons against whom a suit may be brought by private individuals.[9]  In *Fielder v. Credit Acceptance Corp.,* 19 F. Supp. 2d 966 (W.D.Mo. 1998), *vacated on other grounds,* 188 F.3d 1031 (8th Cir. 1999), plaintiffs asserted claims under the MPA against Credit Acceptance Corporation ("CAC") for overcharging fees in automobile installment sales contracts.  CAC argued that the MPA did not apply to it because it was a sales finance company that was excluded from the MPA under Mo. Rev. Stat. § 407.020.2(2).  *Id.* at 977.  The court rejected this argument finding that the MPA applied to CAC under § 407.020.2(2) because "the Attorney General was authorized to implement the powers *and* the 1992 amendment to the statute creates powers for a private citizen."  *Id.; see also Hopkins v. Kan. Teachers Cmty. Credit Union,* 265 F.R.D. 483 (W.D. Mo. 2010) (class action asserting MPA claims against teachers' credit union).  Thus, state charted banks and financial institutions engaging in the type of conduct complained of in this case are subject to the MPA in the same manner as national banks like Commerce.

### b. Even If The MPA Treats National Banks Differently, It Does Not Violate Any Constitutional Doctrines.

Even if Commerce were correct that national banks are treated differently under the MPA than state-chartered banks, Commerce still cannot skirt liability based on either the Dormant Commerce Clause or the Equal Protection Clause.

---

[9] Mo. Rev. Stat. § 407.120 also provides that "The provisions of sections 407.010 to 407.130 [of the MPA] shall not bar any civil claim against any person who has acquired any moneys or property, real or personal, by means of any practice declared to be unlawful by this chapter."

The Dormant Commerce Clause is designed to prevent states from enacting legislation or regulations that protect the local economic interests by discriminating against out-of-state competition. *See Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008) (citations omitted).[10]  The MPA does not discriminate against out-of-state competition for the purpose of protecting local economic interests.[11]  The MPA is a remedial statute that empowers Missouri and private litigants to bring actions for unlawful conduct.  Its purpose is to protect its citizens from fraudulent conduct.  Such state interest has consistently been recognized to be valid.  *See*, *e.g., Int'l Dairy Foods Ass'n v. Boggs*, 622 F.3d 628, 649-50 (6th Cir. 2010) (upholding a rule addressing food labels because states "have always possessed a legitimate interest in the protection of their people against fraud and deception in the sale of food products" *quoting Fla. Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 144 (1963) (citation and internal quotation omitted)); *BlueHippo Funding, L.L.C. v. McGraw*, 609 F. Supp. 2d 576 (S.D.W. Va. 2009) (state telemarketing statute served legitimate state interest in preventing telemarketing fraud).[12]

Absent discrimination *solely* for the purpose of protecting local economic interests, the law "will be upheld unless the burden imposed on [interstate] commerce is clearly excessive in

---

[10] When economic legislation does not employ classifications subject to heightened scrutiny or impinge on fundamental rights, courts generally view constitutional challenges with the skepticism due respect for legislative choices. *See Levin v. Commerce Energy, Inc.,* 130 S.Ct. 2323, 2333 (2010) (*citing Hodel v. Ind.,* 452 U.S. 314, 331-332 (1981)) (discussing allegedly discriminatory state taxing regime).

[11] States banks were originally excluded from the MPA along with many other industries, including motor vehicle sales, finance companies, pawn brokers, insurance companies, because those industries were already regulated by state agencies and not for a discriminatory purpose. *See* Webster, *Combating Consumer Fraud in Missouri: The Development of Missouri's Merchandising Practices Act,* 52 Mo. L. Rev. 365 (1987).

[12] *See also SPGGC, L.L.C. v. Blumenthal,* 505 F.3d 183, 194 (2d Cir. 2007) (stating that consumer protection is a field traditionally subject to state regulation and that courts " 'should be particularly hesitant to interfere with the [State's] efforts under the guise of the Commerce Clause' " (*quoting United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgt. Auth.,* 550 U.S. 330 (2007))).

relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, (1970). To prove that a state law is either *per se* invalid or fails the *Pike* balancing test, a showing of "disparate impact" is a prerequisite. *Automated Salvage Transp., Inc. v. Wheelabrator Envtl. Sys., Inc.,* 155 F.3d 59, 75 (2d Cir. 1998). Commerce has made no showing that the MPA has any impact on interstate commerce.[13] Commerce has offered no evidence that the purpose of Missouri's MPA was to shield local banks from competition by national banks, nor does it claim, let alone submit proof, that the MPA impacts its ability to conduct business in Missouri or anywhere else.[14]

Commerce's Equal Protection argument fails for similar reasons. In *FCC v. Beach Communications, Inc.,* 508 U.S. 307 (1993), the Supreme Court set out the framework for analyzing equal protection challenges to statutes not involving suspect classifications:

> [E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.

*Id.* at 313. Thus, the MPA need only have a rational basis for any alleged difference in classification. As stated above, the rationale for the exclusion was because the entities were

---

[13] Commerce cites to cases that are inapposite or distinguishable. Def. Mem. at 18. In *General Motors Corp. v. Tracy,* 519 U.S. 278, 307 (1997), the Supreme Court *upheld* Ohio's disparate taxing regime of public utilities and independent marketers of natural gas in part due to the State's legitimate interest in its citizens health and safety. Other cases relied on by Commerce found that a legitimate state interest was lacking or that the evidence established blatant protectionism. Unlike *Granholm v. Heald,* 544 U.S. 460 (2005), and the other cases cited by Commerce, Commerce provides no evidentiary showing of discrimination or adverse effect on business.

[14] Commerce's attempt to construct a conflict between the MPA and Missouri's U.C.C. as a justification for striking down the entire MPA (Def. Mem. at 19) falls flat. As discussed *supra* and below, Missouri's U.C.C. (Mo. Rev. Stat. §400.4-303) is inapplicable to debit transactions. In any event, as discussed above, there is no ambiguity in the scope of the MPA's application and exclusions.

- 20 -

already regulated by state agencies.  Further, pursuant to Supreme Court precedent, the MPA has a "strong presumption of validity" and a party challenging its classification must "negate every conceivable basis which might support it."  *Id.* at 314-15.  *See*, *e.g.*, *Ga. Cemetery Ass'n, Inc. v. Cox*, 403 F. Supp. 2d 1206 (N.D. Ga. 2003) (state statute that regulated cemeteries, but not those owned and/or operated by certain entities including the government, did not violate the Equal Protection Clause because there was a rational basis for the exclusion – the excluded governmentally owned cemeteries were considered to be properly managed without state regulation).[15]  Under these standards, Commerce has failed to demonstrate that the MPA is constitutionally deficient.

## 2. Neither State Nor Federal Law Permits Commerce's Action.

Commerce argues that Missouri and federal law authorize its high-to-low posting practice and that its "lawful practice" cannot be the basis for an MPA claim.  Def. Mem. at 19-20.  This argument has already been rejected by this Court.  *Overdraft Litig., 694 F. Supp. 2d at 1325.* Further, Commerce's claim regarding Missouri law has previously been addressed by Plaintiff. *See* Section B(2) above.

Commerce's claim that federal law preempts state law and permits its debit reordering likewise fails.  Neither is correct.  Commerce's preemption argument has been previously

---

[15] None of Commerce's Equal Protection cases come close to supporting its position.  Either the state had no legitimate interest or the burden imposed was not rationally related to the statute's purpose.  *See Metro. Life Ins. Co. v. Ward,* 470 U.S. 869 (1985) (disparate tax rates for local insurance companies did not serve legitimate purpose); *City of Cleburne, Tex. v. Cleburne Living Cent.,* 473 U.S. 432 (1985) (superseded by statute) (no rational basis for zoning ordinance that required special use permit to operate facility for mentally challenged); *Plyler v. Doe,* 457 U.S. 202 (1982) (law excluded Mexican children from public school); *Dep't of Agric. v. Moreno,* 413 U.S. 528 (1973) (irrational classifications to exclude individuals from food stamp program); *Romer v. Evans,* 517 U.S. 620 (1996) (state amendment to prohibit legislation protecting homosexuals unconstitutional).  *But see Nordlinger v. Hahn,* 505 U.S. 1 (1992) (rational basis shown for exemption from California property tax).

rejected. *Overdraft Litig.,* 694 F. Supp. 2d at 1310-14;[16] *see also* Section III.A. above.  Further,

its reliance on OCC regulations is similarly misplaced.  This Court observed:

> *Section 7.4002* [of the OCC regulations, 12 C.F.R. § 7.4002] gives Defendant
> banks the right to charge overdraft fees, but it does not authorize banks to ignore
> general contract or tort law.  Further, the OCC's interpretative letter does not
> authorize debit card postings in a high to low order to increase fees, it merely
> states that doing so does not *violate* the OCC's requirement that banks set fees
> using sound banking judgment.

*Overdraft Litig.,* 694 F. Supp. 2d at 1313; *see Gutierrez,* 2008 U.S. Dist. LEXIS 70124, at 21;

*White,* 563 F. Supp. 2d at 1366-69) (rejecting claims by banks that their reordering practices

were permitted).  In a later decision in *Gutierrez,* the court found after trial that the reordering

practices of Wells Fargo were not only unfair and in bad faith, but fraudulent.  730 F. Supp. 2d at

1120-29.[17]  Plaintiff here should have the same right to establish Commerce's wrongdoing.

### 3.     Commerce's Practices Are Covered By The MPA.

Commerce argues that its practice of reordering debits is not done in "connection with the

sale" of "services" subject to the MPA and that this Court, as it did to the claims asserted under

the California and Oregon statutes, should dismiss Plaintiff's MPA claims.  Def. Mem. at 21-22

However, Plaintiff's claims are supported by the specific language of the MPA and Missouri

case law.

The MPA prohibits the use of deceptive and unfair practices in connection with the sale

of "merchandise."   Mo. Rev. Stat. § 407.020.1.   "Merchandise" includes services and

---

[16] For its preemption argument, Commerce relies on the inapposite case of *Weiss v. Wells Fargo Bank, N.A.*, No. 07-5037, 2008 WL 2620886 (W.D. Mo. July 1, 2008), that addresses misrepresentations made in mortgage loan products and is distinguished by Plaintiff in Section III.A. above.

[17] *Torres v. Wells Fargo,* No. 07-5561, 2008 WL 2397460 (N.D. Cal. June 11, 2008) is *improperly* cited.  The decision specifically states that "[t]his disposition is not designated for publication and may not be cited." *Id.* at *1 n.1.  The case was brought by a *pro se* litigant. *Id.* at *1.  Further, based on the cursory opinion, the plaintiff apparently relied solely upon reordering, without the other elements of wrongdoing alleged here.

intangibles.  Mo. Rev. Stat. § 407.010.1(4).  This provision is intentionally broad to prevent "evasion by overly meticulous definitions."  *Zmuda v. Chesterfield Valley Power Sports, Inc.*, 267 S.W.3d 712, 716 (Mo. Ct. App. 2008).  At the time this Court ruled on the motions of the First Tranche banks to dismiss, neither California nor Oregon included "intangibles" in the meaning of "goods" and "services."  *See* Cal. Civ. Code § 1761(a)-(b); Or. Rev. Stat. § 646.605.[18]  Commerce identifies no Missouri case law to support its argument that its practices are not covered by the MPA, but rather relies solely on the same two California decisions with which this Court was presented in addressing the California and Oregon statues, *Gutierrez v. Wells Fargo, N.A.,* 622 F. Supp. 2d 946 (N.D. Cal. 2009) and *Berry v. American Express Publishing, Inc.*, 147 Cal. App. 4th 224, 233 (2007).  Those cases have no application to the interpretation of a Missouri statute that employs different language.

In keeping with the legislature's intent that the MPA be construed broadly, Missouri cases have found "services" to be applicable in analogous circumstances.  In *Fielder v. Credit Acceptance Corp.,* 19 F. Supp. 2d 966 (W.D. Mo. 1998), *vacated on other grounds,* 188 F.3d 1031 (8th Cir. 1999)*,* the court held that "section 407.020 does apply to 'services' such as, in this case, financing a retail installment contract."  Likewise, in *Raster v. Ameristar Casinos, Inc.,* 280 S.W.3d 120 (Mo. Ct. App. 2009), the "sale" of "goods" and "services" was applied to the placing of a bet.  *Id.* at 130 ("[T]he casino player who drops a coin into a slot machine is not engaging in a purposeless act, but rather is indeed purchasing merchandise, as that term is defined in the MPA."); *see also In re McClelland,* No. 06-41720, 2008 WL 5157685, at *5 n.7 (Bkrtcy. W.D.

---

[18] Commerce fails to mention that the sale of "intangibles" is covered by the MPA.  Def. Mem. at 21.  Oregon amended § 646.605 on March 23, 2010 to include "loans and extensions of credit" in the meaning of "goods and services."

Mo. June 20, 2008) ("'Merchandise' covers 'services,' including the extension of credit.") (internal citations omitted).[19]

Commerce's claim that its conduct is not "deceptive" because its posting practice was disclosed in the Deposit Agreement likewise does not withstand scrutiny.  Def. Mem. at 22.  Section D(2) of the Deposit Agreement only states that Commerce "may" post "in any order."  SAC Ex. A, Section D(2) at 14.  Indeed, if anything, Commerce's language enhances the deception because it identifies specific large dollar items as examples of when it posts from high to low (e.g., mortgages, rent and car payments).  SAC Ex. A, Section D(2) at 14.  Nowhere in the Deposit Agreement does Commerce disclose that it *always* posts from high to low and that it does so solely to generate more fee revenue by increasing the frequency of overdrafts.  It also does not disclose its reordering over days.  Plaintiff also has alleged additional conduct by Commerce that was deceptive including (i) posting inaccurate and misleading customer account balance information (SAC ¶¶ 49-57) and (ii) failing adequately to disclose its overdraft policies.  SAC ¶¶ 58-60.  In sum, Commerce's practice of regularly reordering customer debit transactions from high to low falls squarely within the scope of the MPA and dismissal at this stage of the litigation would be improper.

**G.    Plaintiff Adequately Alleges Harm Caused By Commerce's Other Unlawful Practices.**

Although Commerce claims that the SAC fails to allege harm from the Bank's other improper practices, Commerce itself identifies the specific allegations in the SAC addressing its other unlawful business practices.  Def. Mem. at 23.  Moreover, Commerce completely ignores

---

[19] The Missouri Court of Appeals' decision in *Raster* comports with long-standing broad and liberal interpretation of the scope of the MPA.  *See, e.g.*, *Schuchmann v. Air Servs. Heating & Air Conditioning, Inc.,* 199 S.W.3d 228, 233 (Mo. Ct. App. 2006); *Addison v. Jester,* 758 S.W.2d 454, 457 (Mo. Ct. App. 1988); *State ex rel. LeFevre* v. *Stubbs,* 642 S.W.2d 103, 106 (Mo. 1982).

SAC ¶¶ 69-83 that describe in great detail the damages suffered by Plaintiff (including spreadsheets of checking account balances) and the Classes.

Commerce's other argument – that the SAC fails to identify any basis to expect it to act in any manner different from that which is expressed in the Deposit Agreement (Def. Mem. at 23-24) – is absurd. As described in great detail in the SAC and in Section III(b) above, and as recognized by this Court, Commerce had a duty to abide by the express terms of the Deposit Agreement in good faith.

Lastly, without any citation to the record or any other basis for support, Commerce misrepresents this Court's December 16, 2010 discovery order and plaintiffs' actions in the First Tranche to speculate that it is entitled to certain discovery regarding these other business practices and that Plaintiff in this case will refuse to provide such discovery as plaintiffs in the First Tranche have. Def. Mem. at 24. Aside from the self-evident proposition that speculation as to how the Plaintiff will purportedly respond to discovery that has not yet even been propounded is no basis for dismissal of the SAC, Commerce's argument should be rejected out of hand because it has failed to demonstrate that it needs or is entitled to any of the discovery which was the subject of this Court's December 16 Order.

## IV.    CONCLUSION

For all of the reasons set forth above, Commerce's Motion to Dismiss should be denied. Should the Court determine that any of Plaintiff's claims are subject to dismissal, Plaintiff respectfully requests leave to replead such claims pursuant to Fed. R. Civ. P. 15.

Dated: February 22, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@alterslaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

- 29 -