# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Shane Swift v. BancorpSouth, Inc.,*
S.D. Fla. Case No. 1:10-cv-23872-JLK

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT BANCORPSOUTH BANK'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ............................................................................................ iii

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS ................................................................................... 1

III. ARGUMENT ....................................................................................................... 3

      A.   Plaintiff Properly States a Claim for Breach of Contract and Breach of
          Contract Premised on Breach of the Implied Duty of Good Faith and Fair
          Dealing ........................................................................................................ 3

            1.   Arkansas Courts Recognize an Implied Covenant of Good Faith
               and Fair Dealing in the Performance of Contracts ................................... 4

            2.   The Deposit Agreement Contains Discretionary Terms That
               Impose an Obligation of Good Faith on BancorpSouth ........................... 5

            3.   The Court Should Follow the Decisions Recognizing That
                BancorpSouth's Abusive Overdraft Fee Scheme Breaches the
               Covenant ................................................................................................ 6

      B.   Plaintiff Properly States a Claim for Unconscionability ................................... 10

            1.   Plaintiff May Assert Unconscionability as an Affirmative Cause of
               Action ..................................................................................................... 10

            2.   Established Precedent and Arkansas Law Dictate That Plaintiff's
                Unconscionability Claims Are Valid ...................................................... 11

             3.   The BancorpSouth Contract Is Procedurally Unconscionable ................ 13

            4.   The BancorpSouth Contract Is Substantively Unconscionable ............. 14

      C.   Plaintiff Properly States a Claim for Conversion ............................................. 16

             1.   By Taking Funds From Plaintiff's Account, BancorpSouth
               Converted Property Plaintiff Had a Right to Possess ............................. 16

            2.   BancorpSouth's Conduct Was Wrongful Because it Improperly
               Imposed Overdraft Fees and Took Account Funds ................................. 18

      D.   Plaintiff's Alternative Claim For Unjust Enrichment Should Be Sustained
          At This Stage Of The Proceedings .................................................................. 21

E.      Plaintiff Properly States a Claim Under the ADTPA.......................................... 22

IV.  CONCLUSION ............................................................................................................. 25

## **TABLE OF AUTHORITIES**

### **FEDERAL COURT DECISIONS**

*Page*

*Abels v. JPMorgan Chase Bank, N.A.*
   678 F. Supp. 2d 1273 (S.D. Fla. 2009) .................................................... 11, 13

*Bildstein v. MasterCard Intern. Inc.*
   329 F. Supp. 2d 410 (S.D.N.Y. 2004) ........................................................... 25

*Burger King Corp. v. Weaver; M-W-M, Inc.*
   169 F.3d 1310 (S.D. Fla. 1995) ...................................................................... 3

*Easter v. CompuCredit Corp.*
   2009 WL 499384 (W.D. Ark. 2009) ............................................................. 12

*Gobyn v. Travelers Indem. Co.*
   2009 WL 3148755 (E.D. Ark. 2009) ................................................... 12, 13, 14

*Hambrick v. First Sec. Bank*
   336 F. Supp. 2d 890 (E.D. Ark. 2004) ......................................................... 20

*Heatherly v. Alexander*
   421 F.3d 638 (8th Cir. 2005) ......................................................................... 7

*Hunter v. Texas Instruments, Inc.*
   798 F.2d 299 (8th Cir. 1986) ............................................................. 12, 13, 14

*Geldermann & Co., Inc. v. Lane Processing, Inc.,*
   527 F.2d 571 (8th Cir. 1975) ................................................................. 12, 13

*Gutierrez v. Wells Fargo & Co.*
   622 F. Supp. 2d 946 (N.D. Cal. 2009) ..................................................... 9, 22

*In re Checking Account Overdraft Litig.*
   694 F. Supp. 2d 1302 (S.D. Fla 2010) ................................................... *passim*

*Nucor Corp. v. J. Baker & Assocs., Inc.*
   2008 WL 4372452 (E.D. Ark. 2008) .............................................................. 5

*Parnes v. Gateway 2000, Inc.*
   122 F.3d 539 (8th Cir. 2001) ........................................................................ 24

*Rush v. Whirlpool Corp.*
   2008 WL 509562 (W.D. Ark. 2008) ............................................................. 24

*Tripp v. Bunge N. Am., Inc.*
　　2009 WL 2998921 (E.D. Ark. 2009) ............................................................ 11

*Wachter Elec. Co. v. Electric Sys., Inc.*
　　2010 WL 5137361 (E.D. Ark. 2010) ............................................................ 22

*Whatley v. Reconstrust Co. N.A.*
　　2010 WL 4916372 (E.D. Ark. 2010) ............................................................ 24

*White v. Wachovia Bank, N.A.*
　　563 F. Supp. 2d 1358 (N.D. Ga. 2008) .................................................... 9, 19

*Williams v. State Farm Mut. Auto Ins. Co.*
　　2010 WL 2573196 (E.D. Ark. June 22, 2010) .............................................. 5

*Yarborough v. DeVilbiss Air Power, Inc.*
　　321 F.3d 728 (8th Cir. 2003) ......................................................................... 4

## STATE COURT DECISIONS

*Aon Risk Servs., Inc. v. Meadors*
　　267 S.W.3d 603 (Ark. Ct. App. 2007) ........................................................... 4

*Associated Press v. Southern Ark. Radio Co.*
　　809 S.W.2d 695 (Ark. Ct. App. 1991) ......................................................... 12

*Buck v. Gillham*
　　98 S.W.3d 750 (Ark. Ct. App. 2003) ...................................................... 17, 19

*Cantrell-Waind & Assocs. v. Guillaume Motorsports*
　　968 S.W.2d 72 (Ark. Ct. App. 1998) ............................................................. 4

*Car Transp. v. Garden Spot Distribs.*
　　805 S.W.2d 632 (Ark. 1991) ........................................................................ 17

*Crawford v. Lee County Sch. Dist.*
　　983 S.W.2d 141 (Ark. Ct. App. 1998) ......................................................... 21

*Cruthis v. Firstar Bank, N.A.*
　　822 N.E.2d 454 (Ill. App. Ct. 2004) ...................................................... 18, 19

*First Union Nat'l Bank of Ga. v. Davies-Elliott, Inc.*
　　452 S.E.2d 132 (Ga. Ct. App. 1994) ........................................................... 19

*Gunn v. Farmers Ins. Exch.*
　　2010 Ark. 434, ___ S.W.3d ____ (Ark. 2010) .......................................... 6, 7

*Hodge v. First Nat'l Bank in Osceola*
1994 WL 188860 (Ark. Ct. App. 1994) ...................................................... 4

*J.W. Reynolds Lumber Co. v. Smackover State Bank*
836 S.W.2d 853 (Ark. 1992) ................................................................ 17

*Katz v. Belmont Nat'l Bank of Chicago*
491 N.W.2d 1157 (Ill. 1986) ............................................................... 18

*Kohlenberger, Inc. v. Tyson's Foods, Inc.*
510 S.W.2d 555 (Ark. 1974) ............................................................... 12

*Perdue v. Crocker Nat'l Bank*
702 P.2d 503 (Cal. 1985) .................................................................. 15

*Preston v. Stoops*
373 S.W.3d 606 (Ark. 2008) ................................................................ 4

*Saunders v. Michigan Ave. Nat'l Bank*
662 N.E.2d 602 (Ill. App. Ct. 1996) .................................................. 9, 10

*State ex rel. Bryant v. R&A Inv. Co.*
985 S.W.2d 299 (Ark. 1999) ............................................................ 12, 13

*T-l Constr., Inc. v. Tannenbaum Dev. Co.*
2009 WL 613552 (Ark. Ct. App. 2009) .................................................... 13

## STATUTES AND RULES

Ark. Code Ann. § 4-88-101 .............................................................. 1, 23

Ark. Code Ann. § 4-75-201 ................................................................. 1

Fed. R. Civ. P. 8(d) ..................................................................... 21

Fed. R. Civ. P. 9(b) ..................................................................... 24

Fed. R. Civ. P. 15 ....................................................................... 25

U.C.C. 4-303 ............................................................................. 15

## OTHER SOURCES

Prosser and Keeton on the Law of Torts § 15 (5th Ed. 1984) ....................... 16

Restatement (Second) of Contracts § 205 ............................................ 4

## I.     INTRODUCTION

In his Second Amended Complaint ("SAC"), Plaintiff seeks to recover, for himself and all other customers similarly situated, excess overdraft fees generated and retained through the unlawful practices of BancorpSouth Bank's ("BancorpSouth" or the "Bank") including, among other things, its manipulation and reordering of debit transactions from largest to smallest to generate more overdrafts and overdraft fees. BancorpSouth seeks dismissal of Plaintiff's claims based on arguments this Court has already rejected in ruling on the First and Third Tranches' motions to dismiss. As demonstrated below, BancorpSouth's arguments are without merit and its motion to dismiss should be denied in its entirety.

## II.     STATEMENT OF FACTS

Plaintiff, Shane Swift ("Plaintiff"), is a resident of Arkansas and has an account at BancorpSouth. SAC ¶¶ 18, 19; Defendant's Memorandum in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint (hereinafter "Def. Mem."), p. 3 [**DE # 1068**]. Plaintiff asserts claims against BancorpSouth for breach of contract and breach of the covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, and for violations of the Arkansas's Deceptive Trade Practices Act ("ADTPA").[1] The allegations made and common law claims asserted by Plaintiff against BancorpSouth mirror those pled by the plaintiffs against the First Tranche banks.

The Deposit Agreement contains discretionary language regarding BancorpSouth's reordering practices, such as "[i]f more than one item or order is presented for payment against

---

[1] At one point, BancorpSouth describes Plaintiff's ADTPA claim as a claim "that BancorpSouth violated the Arkansas Unfair Trade Practices Law." Def. Mem., p. 2. Arkansas does not have a statute entitled "Arkansas Unfair Trade Practices Law. To provide clarity for the Court, Plaintiff alleges claims under Arkansas's Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.* (SAC ¶¶ 114-120) ***not*** under the Arkansas Unfair Practices Act, Ark. Code Ann. § 4-75-201, *et seq.*

the account on the same day and the available balance of the account is insufficient to pay them all, we *may* pay any of them in any order we choose" or "[w]hen we pay Transactions, we *generally* choose to pay the largest Transaction first and the smallest Transaction last."  SAC ¶¶ 32-33.   However, the Deposit Agreement is ineffective, ambiguous, unfair, and deceptive because it does not unambiguously state that BancorpSouth *always* reorders debits from high-to-low regardless of the amounts involved – even though BancorpSouth *does always* reorder transactions in this manner to maximize overdrafts and overdraft fee revenues for itself at the consumers' expense.  SAC ¶¶ 40, 42-49.  BancorpSouth manipulates and reorders debits from highest to lowest solely to increase the number of exorbitant overdraft fees it can charge.  SAC ¶ 40.  Moreover, debits are held for multiple days and then batched together to maximize the number of overdraft transactions and fees, and BancorpSouth assesses overdraft fees for transactions that occurred when there were sufficient funds in customers' accounts to cover the transactions.  SAC ¶¶ 41-43.

Further, BancorpSouth does not: (i) disclose to customers that they may "opt out" of BancorpSouth's overdraft scheme; (ii) provide an opportunity to cancel the debit transaction before incurring an overdraft fee; or (iii) obtain affirmative consent from customers prior to processing transactions that will overdraw their accounts and result in overdraft fees.  SAC ¶¶ 34, 54-56.   BancorpSouth also engages in deceptive and manipulative practices, in addition to those described above, to cloak accurate information regarding customer balances.  SAC ¶¶ 50-53.   Its overdraft policies and practices and the reordering provisions of its Deposit Agreement are procedurally and substantively unconscionable.  SAC ¶ 64.   As a direct consequence of BancorpSouth's unlawful conduct, Plaintiff and the Classes have suffered damages.  SAC ¶¶ 65-79.

## III.   ARGUMENT

### A.   Plaintiff Properly States a Claim for Breach of Contract and Breach of Contract Premised on Breach of the Implied Duty of Good Faith and Fair Dealing.

Like the other banks before it, BancorpSouth urges dismissal of Plaintiff's breach of contract claim because: (1) its conduct is in accord with the express terms of the Deposit Agreement and (2) Arkansas's version of the UCC permits the actions which are challenged by the breach of contract claim.  This Court has previously rejected both arguments on motions to dismiss.  *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1317 (S.D. Fla. 2010).  Indeed, as argued below, the UCC does not even apply in this case.

BancorpSouth argues that there is no breach of contract here because its Deposit Agreement and related documents permit high-to-low posting of debit card transactions and, as a result, it is not bound by any duty of good faith and fair dealing.  Def. Mem., pp. 10-11.  However, the Deposit Agreement in the case at bar is similar if not substantively identical to those previously considered by this Court in denying motions to dismiss by other banks.  In so doing, the Court held that:  "Plaintiffs do not ask the Court to tell the [bank] how to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing."  *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1315.

Contrary to BancorpSouth's argument, Plaintiff is not trying to vary the explicit contract language, in derogation of *Burger King Corp. v. Weaver; M-W-M, Inc.*, 169 F.3d 1310, 1316 (S.D. Fla. 1995).  Def. Mem., p. 11.  Rather, Plaintiff seeks only to require that BancorpSouth discharge its discretionary contractual rights in good faith.  BancorpSouth offers no novel or convincing rationale for the dismissal of breach of contract claims that this Court has previously declined to dismiss on numerous occasions.

1.     **Arkansas Courts Recognize an Implied Covenant of Good Faith and Fair Dealing in the Performance of Contracts.**

Under Arkansas law, "every contract imposes upon each party a duty of food faith and fair dealing in its performance and enforcement." *Aon Risk Servs., Inc. v. Meadors*, 267 S.W.3d 603, 613 (Ark. Ct. App. 2007); *Cantrell-Waind & Assocs. v. Guillaume Motorsports*, 968 S.W.2d 72 (Ark Ct. App. 1998) (*quoting Restatement (Second) of Contracts* § 205).[2] Accordingly, "[a]s is the case with the contract's express terms, the implied covenant is part of the contract and creates contractual obligations that are actionable." *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 732 (8th Cir. 2003). The implied duty of good faith and fair dealing in contracts "exists to supplement the terms of an existing contract, limiting the discretion of the parties in their performance." *Hodge v. First Nat'l Bank in Osceola*, 1994 WL 188860 (Ark. Ct. App. May 4, 1994) (*quoting Bonfield v. Aamco Transmissions, Inc.*, 717 F. Supp. 589, 593 (N.D. Ill. 1989)).

BancorpSouth overstates the Arkansas Supreme Court's holding in *Preston v. Stoops*, 373 S.W.3d 606 (Ark. 2008), when it argues that claims based on the implied covenant of good faith and fair dealing are not recognized by Arkansas courts. Def. Mem., p. 11. Rather, *Preston* only provides that the "court has never recognized a cause of action for failure to act in good faith" in the context of "a cause of action *pled in tort*." *Preston*, 373 S.W.3d at 610 (emphasis added). BancorpSouth fails to alert this Court that the Arkansas federal courts are in agreement

---

[2] *Restatement (Second) of Contracts* § 205, cmt. d (1981) states: Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

that *Preston* did not resolve the issue of whether Arkansas law recognizes a claim for breach of contract for failure to act in good faith:

> [t]he Supreme Court of Arkansas has not yet ruled whether Arkansas law recognizes a claim for breach of contract for failure to act in good faith where no provision of the contract is violated. *See Preston v. Stoops*, 373 Ark. 591, 594-95, 285 S.W.3d 606, 609-10 (2008) (finding it unnecessary to reach the issue of whether Arkansas law requires a claim for breach of contract for failing to act in good faith).

*Williams v. State Farm Mut. Auto Ins. Co.*, 2010 WL 2573196, at *4 (E.D. Ark. June 22, 2010) (cited in Def. Mem., p. 12).  *See also*, *Nucor Corp. v. J. Baker & Assocs., Inc.*, 2008 WL 4372452, at *1 (E.D. Ark. Sept. 23, 2008) ("As is the case with the contract's express terms, the implied covenant is part of the contract and creates contractual obligations that are actionable.") (*quoting Yarborough*, 321 F.3d at 732); *All-Ways Logistics, Inc. v. USA Truck, Inc.*, 2007 WL 1965415, at *13 (E.D. Ark. July 2, 2007) (same).  Thus, Arkansas law inarguably recognizes a claim for a violation of the implied covenant of good faith and fair dealing in the performance of a contract by a party given discretion as to how to perform.

### 2.    The Deposit Agreement Contains Discretionary Terms That Impose an Obligation of Good Faith on BancorpSouth.

The Deposit Agreement inarguably contains discretionary terms in that it provides:

> If more than one item or order is presented for payment against the account on the same day and the available balance of the account is insufficient to pay them all, we *may* pay any of them in any order we choose, even if the order we choose results in greater insufficient funds fees than if we had chosen to pay them in some other order.

SAC ¶ 32, Ex. A, at 5 (emphasis added).  The Account Information Statement (SAC, Ex. B) also contains similar discretionary language as that of the Deposit Agreement including language that falsely suggests that BancorpSouth will not *always* post transactions from high-to-low.[3]   As with

---

[3] The Account Information Statement provides: "If more than one Transaction (whether check, ACH, ATM, debit card, bank fee, overdraft-related fee or another transaction) is presented for

the deposit agreements in the first tranche cases of this MDL, discretion is apparent from the use of the term "may," and the issue of whether or not that language permitted BancorpSouth to manipulate transactions, delay posting indefinitely, or maximize overdraft fees in the ways the SAC alleges are questions of act which preclude the grant of a Rule 12(b)(6) motion.  *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316-1317.

> **3.  The Court Should Follow the Decisions Recognizing That BancorpSouth's Abusive Overdraft Fee Scheme Breaches the Covenant.**

Citing *Gunn v. Farmers Ins. Exch.*, 2010 Ark. 434, ___ S.W.3d ___ (Ark. 2010), BancorpSouth argues that language in the Deposit Agreement providing that it "may pay [debit items] in any order we choose" and "[w]hen we pay Transactions, we generally choose to pay the largest Transaction first and the smallest Transaction last" are "expressly bargained-for terms" which preclude a claim for breach of the implied covenant because "the contract at issue permits the actions of which Plaintiff complains."  Def. Mem., p. 12.  However, the contract at issue in *Gunn* – a case involving a series of agreements appointing the plaintiff to serve as a reserve agent for the Farmers Insurance companies – bears no resemblance to the contract of adhesion BancorpSouth provided to the Plaintiff in order to open a consumer checking account. In affirming the lower court's grant of summary judgment (not pre-discovery dismissal as here) on plaintiff's claim that Farmer's termination of her agency was a violation of the implied covenant, the *Gunn* court found that the provision of the contract providing for termination without cause on three months written notice was a provision:

---

payment against your account on the same banking day and the available balance is insufficient to pay them all, we *may* decide to pay any or all of them in any order we choose. When we pay Transactions, we *generally* choose to pay the largest Transaction first and the smallest Transaction last. Our choosing this order of payment for Transactions *may* result in greater Overdraft-related Fees than if we had chosen to pay them in some other order or had chosen not to pay them."  SAC ¶¶ 33, Ex. B, at 4 (emphasis added).

> (1)   where the parties have expressly disavowed any limitations on their
> discretion, and[4] (2) the consequences of the exercise of that discretion are easily
> foreseeable.  . . . .  The parties clearly bargained for such termination on three
> months notice, and an implied covenant should not be used to limit an expressly
> bargained-for term.

*Id.*

Here, in contrast, there is no evidence that Plaintiff genuinely intended to disavow any limitations on BancorpSouth's discretion to post transactions in any order it saw fit or if such disavowal was remotely fair even if intended.  Of even greater significance is the fact that nothing in the Deposit Agreement warns Plaintiff that BancorpSouth's reordering of transactions from high-to-low **will** result in many more overdraft fees than Plaintiff would have otherwise incurred or that Plaintiff would incur overdraft fees on an account that would not otherwise be overdrawn.   At the very least, the question of whether or not the consequences of BancorpSouth's exercise of discretion in the posting order of transactions were foreseeable by Plaintiff is one of fact which precludes dismissal at the pleadings stage.  *Heatherly v. Alexander*, 421 F.3d 638, 642 (8th Cir. 2005) ("foreseeability is a question of fact for the finder of fact").

In any event, this precise argument was rejected by this Court in its "Order On November 4, 2010 Status Conference" [**DE # 934**] wherein the Court denied TD Bank, N.A.'s Motion to Dismiss and/or for Judgment on the Pleadings.  During oral argument on November 4, 2010, the attorney for T.D. Bank, N. A. unsuccessfully argued the following:

> And we have in New Jersey two very recent discussions, one of the United States
> District Court in New Jersey, and then unpublished unanimous affirmance of the
> United States District Court decision interpreting New Jersey law.
>
> And those cases make clear that at least as far as New Jersey law is concerned,
> when one reserves the discretion to post high-to-low, one cannot be deemed to

---

[4] Note that the discretion the parties disavowed any limitation on in *Gunn* was *mutual* in that either Gunn or Farmers could terminate the contract without cause on three months notice. There is nothing mutual about the discretion with which BancorpSouth was purportedly vested under the Deposit Agreement.

- 7 -

have abused that discretion, acted unfairly or acted unconscionably by posting high-to-low.

Transcript of Status Conference, p. 20.  The Court found that the issue of the bank's discretion was still one of fact which would have to await discovery:

> Although your argument has been extremely well done and is very persuasive, I am of the opinion that the *Hassler* case does not alter the original findings, the original decision on the legal issues submitted at the time this matter was considered, perhaps last February, that resulted in the omnibus ruling.
>
> The motions are denied on the three motions. I believe that the *Hassler* case does not alter my original decision that these cases should go forward – be answered and go forward. As I think I've indicated before, when we get into some facts it's immensely helpful to the Court, and I'm sure to counsel, to then apply the law more easily and more clearly to what we have pending before us.

Transcript of Status Conference, p. 39.

Thus, this Court has already denied motions to dismiss where the applicable state law might preclude a claim for violation of the covenant because the contract language expressly reserves discretion in the posting order of transactions to the bank.  Here, just as with T.D. Bank's contract with its depositors (and those of other banks before it), the mere fact that BancorpSouth's Deposit Agreement purports to reserve to itself the discretion to post high-to-low, does not resolve the factual issue of whether or not BancorpSouth's exercise of discretion was made in good faith.  The state of Arkansas law is consistent with that of other states which provide that a breach of the implied duty of good faith and fair dealing premised on an express contractual provisions is available.

This Court's ruling in T.D. Bank's motion to dismiss is in accord with both the *White* and *Gutierrez* decisions.  The *White* court found that the language of the Wachovia deposit agreement did not confer *absolute* discretion because of the implied duty of good faith and fair dealing existing in all contracts and the fact that the deposit agreement vested the bank with

- 8 -

discretion, by stating that "Wachovia 'may' post transactions in any order." *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1365 (N.D. Ga. 2008).

Likewise, in *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009), Judge Alsup denied summary judgment to Wells Fargo on plaintiffs' claim for violation of the implied covenant of good faith notwithstanding Wells Fargo's argument that its agreement with the depositor conferred it with absolute discretion as to the sequence of processing debit transactions, holding that:

> even if the bank-depositor contract confers discretion on the bank as to the sequence of honoring presentments, the bank must exercise its discretion in accordance with fair dealing and cannot exercise its discretion to enrich itself by gouging the consumer. Put differently, even if the bank-depositor contract purports to allow the bank to post in any order it wishes, such discretion remains subject to the bank's duty of good faith and fair dealing. There is a duty of good faith and fair dealing to honor checks in such a way as to be fair to the consumer and that discretionary power cannot be exercised so as to pile on ever greater penalties on the depositor, which is exactly what Wells Fargo seems to be doing, or so a reasonable jury could conclude.

*Id.* at 952-53. BancorpSouth fails to distinguish or even mention the *White* and *Gutierrez* cases – decisions which are squarely on point and completely refute BancorpSouth's argument

Instead of addressing *White* or *Gutierrez*, BancorpSouth relies on *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602 (Ill. App. Ct. 1996) (Def. Mem., p. 13) an Illinois case which this Court already rejected as applicable authority in the context of debit card transactions.[5]  *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319. In any event, the deposit agreement in *Saunders* which merely provided that the Bank charged a flat $20 per day for overdrafts on checking accounts regardless of processing order, *Saunders*, 662 N.E.2d at 606, differs

---

[5] Like many of the cases cited by BancorpSouth in a footnote, Def. Mem., p. 12, fn. 6, *Saunders* deals only with the high-to-low posting of checks. Nowhere in any of these cases are debit card transactions implicated. In addition, the holdings in the cases cited in BancorpSouth's footnote are all premised on U.C.C. 4-303, which this Court has correctly held to be inapplicable to debit cards. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316.

materially from BancorpSouth's deposit agreement and practice which resulted in Mr. Swift being assessed multiple overdraft fees in a single day solely as a result of BancorpSouth's reordering of his debit transactions in order to maximize the amount of overdraft fees collected. Plaintiff's claim for breach of the covenant of good faith and fair dealing imposed upon every party to a contract should be sustained.

 **B.**  **Plaintiff Properly States a Claim for Unconscionability.**

 BancorpSouth argues that the SAC fails to allege adequately a claim for unconscionability for two reasons, both of which have already been rejected by this Court and should be rejected again. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1317-1321.

  **1.**  **Plaintiff May Assert Unconscionability as an Affirmative Cause of Action.**

 BancorpSouth argues that unconscionability is not an affirmative cause of action. Def. Mem., p. 14. In so doing, the Bank completely ignores this Court's reasoning in its Ruling on the Omnibus Motion to Dismiss ("Omnibus Order"), in which the Eleventh Circuit case on which BancorpSouth relies is distinguished from the allegations set forth in the SAC. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1318 (citing *Cowen Equip. Co., Inc. v. Gen. Motors Corp.*, 734 F.2d 1581 (11th Cir. 1984)). The issue in this case is exactly the same, and Plaintiff will not belabor the point. *See id.,* 694 F. Supp. 2d at 1318 ("Defendants appear to be correct in their assertion that, ordinarily, unconscionability is properly asserted as a defense to a contract rather than an affirmative cause of action. *But this is not the ordinary case...* [in this situation] the customer never has the opportunity to raise unconscionability as a defense for nonpayment. The only opportunity to do so is through a lawsuit filed by the customer, after payment has been made. Hence, the facts of the instant case weigh in favor of permitting Plaintiffs to pursue unconscionability claim."). The Court's reasoning applies to BancorpSouth's

argument as well, and BancorpSouth makes no attempt to distinguish this Court's prior ruling on the identical issue or even to address it in its motion.

### 2. Established Precedent and Arkansas Law Dictate That Plaintiff's Unconscionability Claims Are Valid.

BancorpSouth further argues *ipse dixit* that its overdraft practices are not unconscionable, again ignoring this Court's prior holding in the Omnibus Order. There are two aspects to unconscionability – procedural and substantive – both of which have been more than sufficiently alleged by Plaintiff pursuant to Arkansas law. In its Omnibus Order, this Court provided guidance in determining whether a challenged contractual provision or conduct was unconscionable:

> Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand the disputed contract terms….

694 F. Supp. 2d at 1319. On the other hand, substantive unconscionability "requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience." *Checking Account Overdraft Litig.,* 694 F. Supp. 2d at 1319 (quoting *Bland v. Health Care & Ret. Corp. of Am.,* 927 So.2d 252, 256 (Fla. Dist. Ct. App. 2006)). Importantly, for purposes of resolving BancorpSouth's motion, the substantive unconscionability inquiry is fact intensive, making dismissal at this stage inappropriate. *Abels v. JPMorgan Chase Bank, N.A.,* 678 F. Supp. 2d 1273, 1280 (S.D. Fla. 2009 ("Whether or not a reasonable person would have actually agreed to it is a factual question that cannot be decided on a motion to dismiss.") *See also Tripp v. Bunge N. Am., Inc.*, 2009 WL 2998921 (E.D. Ark. Sept. 11, 2009) (summary judgment on enforceability of arbitration provision precluded because genuine issue of material fact existed as to whether an arbitration provision in contracts was unconscionable.) Therefore, the unconscionability count should not be dismissed at this point.

- 11 -

The test for unconscionability in Arkansas mirrors that described by this Court in the Omnibus Order.   To determine whether a contractual provision is unconscionable under Arkansas law, "courts should review the totality of the circumstances surrounding the negotiation and execution of the contract." *State ex rel. Bryant v. R&A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999) (citing *Geldermann & Co., Inc. v. Lane Processing, Inc.*, 527 F.2d 571, 575 (8th Cir. 1975)).   Arkansas courts also consider "whether there is a gross inequality of bargaining power between the parties to the contract and whether the aggrieved party was made aware of and comprehended the provision in question." *Associated Press v. So. Ark. Radio Co.*, 809 S.W.2d 695, 697 (Ark. Ct. App. 1991) (finding unconscionability where "[t]he agreement is a preprinted form; … the agreement was neither read nor understood by the appellee; …and there appears to be a substantial disparity in the relative bargaining power of the parties.").

As in most other states, this analysis is "divided into two categories: (1) procedural and (2) substantive." *Easter v. CompuCredit Corp.*, 2009 WL 499384, at *4 (W.D. Ark. Feb. 27, 2009).   Procedural unconscionability "deals with the manner in which a contract was entered into…." *Gobyn v. Travelers Indem. Co.*, 2009 WL 3148755, at *3 (E.D. Ark. Sept. 24, 2009); *see also*, *Kohlenberger, Inc. v. Tyson's Foods, Inc.*, 510 S.W.2d 555, 566 (Ark. 1974); *Hunter v. Texas Instruments, Inc.*, 798 F.2d 299, 303 (8th Cir. 1986).   Substantive unconscionability, on the other hand, "looks to the terms of the contract and whether they are harsh, one-sided, or oppressive." *Gobyn*, 2009 WL 3148755, at *3.   Using language identical to that used by this Court in the Omnibus Order, the Arkansas Court of Appeals held that an unconscionable contract is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *T-l Constr., Inc. v. Tannenbaum Dev. Co.*, 2009 WL 613552 (Ark. Ct. App. Mar. 11, 2009) (*citing Hume v. U.S.*, 132 U.S. 406, 415 (1889)); *see*

- 12 -

*also Geldermann,* 527 F.2d at 575; *Bryant,* 985 S.W.2d at 302 (citing *Geldermann*); *compare Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1320 ("term is substantively unconscionable if it is . . . one that no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other"). Both elements of unconscionability are present here and have been pled.

### 3.    The BancorpSouth Contract Is Procedurally Unconscionable.

Procedural unconscionability is sufficiently alleged when "the disparity in sophistication and bargaining power between Plaintiffs and Defendants is obvious.  The terms at issue were contained in voluminous boilerplate language drafted by the bank.  If Plaintiffs did disagree with the terms, there was no meaningful opportunity to negotiate with the bank." *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319; *Abels*, 678 F. Supp. 2d at 1279 ("Procedural unconscionability is satisfied here because of the disparity in bargaining power between Plaintiffs and Defendant."); *see also Hunter*, 798 F.2d at 303; *Gobyn*, 2009 WL 3148755, at *3.

The SAC alleges that BancorpSouth's sophistication and bargaining power dwarfs that of the Plaintiff.  BancorpSouth's deposit agreements, drafted by the Bank and offered on a take-it-or-leave-it basis, combine into a voluminous boilerplate contract, printed in small type over half a dozen pages.  SAC ¶ 31, Ex. A.  It is a classic contract of adhesion.  Whether a contract is adhesive is a crucial factor in whether it is procedurally unconscionable—a factor which BancorpSouth completely ignores.  Moreover, because the agreements provided by other similar banks all contain similar language, customers lack the ability to shop around for more favorable terms.  BancorpSouth's agreement does not even adequately advise customers of their right to opt-out of the overdraft procedures.

- 13 -

Further, BancorpSouth's reliance on *Saunders* is unavailing. This Court addressed *Saunders* in the Omnibus Order when determining that other plaintiffs had sufficiently pled procedural unconscionability in the manner in which Plaintiff has pled it here. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319. Distinguishing *Saunders*, in which the bank's overdraft fees were not found to be unconscionable, this Court stated that Plaintiff's situation was different, due to the allegations of the "disparity in sophistication and bargaining power of between Plaintiffs and Defendants," and that the agreement, drafted and offered on a take-it-or-leave-it basis, with "voluminous boilerplate language." *Id.* Under Arkansas law and this Court's own analysis in previous cases, Plaintiff has sufficiently alleged procedural unconscionability.

### 4.     The BancorpSouth Contract Is Substantively Unconscionable.

Substantive unconscionability is sufficiently alleged when the complaint at issue alleges:

> deposit agreements contained contractual terms regarding overdraft protection that had the purpose and effect of allowing defendants to re-order the posting of debit transactions to maximize the number and amount of overdraft fees to Plaintiffs, and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service.

*Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1320; *see also Hunter*, 798 F.2d at 303; *Gobyn*, 2009 WL 3148755, at *3.

BancorpSouth's Deposit Agreement is also pled to be substantively unconscionable. The analysis of substantive unconscionability requires looking "to the terms of the contract and [determining] whether they are harsh, one-sided, or oppressive." *Gobyn*, 2009 WL 3148755, at *3. BancorpSouth argues that the practice of reordering debit card transactions from high-to-low is a "routine banking practice," authorized by the UCC. Def. Mem., p. 17. This Court has correctly addressed and dismissed this very argument when raised by other banks. *See Checking Account Overdraft Litig.,*, 694 F. Supp. 2d at 1320 ("Defendants are not entirely correct when they state that high-to-low posting is expressly condoned by the UCC. As discussed in the above

- 14 -

section, the provision they rely on, section 4-303(b), applies only to paper checks, not the electronic debits that are the subject of this lawsuit.").

The overdraft fee provisions in the BancorpSouth agreement are unreasonably favorable to BancorpSouth, and the purpose and effect of those provisions are to negate the reasonable expectations of the customers.  SAC ¶¶ 31-34.  As discussed above, BancorpSouth relies on the unconscionable overdraft terms to manipulate transactions so as to wrongfully multiply fees – excessively large fees that customers *cannot* reasonably avoid, even when exercising due diligence to monitor their account balances and to maintain sufficient funds.  SAC ¶¶ 35-56, 64, 88-91.  No reasonable person would ever have agreed to grant BancorpSouth the unfettered power to manipulate checking account transactions for the sole purpose of maximizing its profits at consumer expense.  SAC ¶¶ 65-73, 88-91.

Yet another aspect to the substantive unconscionability of the challenged contractual terms is the disparity between the cost and the value of the service rendered on one hand, and, on the other, its price.  As alleged, BancorpSouth imposes uniform $35 overdraft fees on transactions in which a customer has overdrawn his account.  However, the cost to BancorpSouth to provide this "service" has *no reasonable relation* to the amount of the overdraft, nor to the actual cost of paying it.  SAC ¶ 21i.  This fact alone indicates that the unconscionability claim is plausible and should be sustained.  *See e.g. Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923, 702 P.2d 503, 512-513 (1985) (allegations of overdraft fees of $6 deemed sufficient to maintain unconscionability claim).  Plaintiff's claim alleging that BancorpSouth's contract and conduct are unconscionable should be sustained.

C.     **Plaintiff Properly States a Claim for Conversion.**

As with the other arguments addressed in this Response, BancorpSouth repeats arguments previously addressed and rejected by this Court in the Omnibus Order. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1322-1323.  This Court should again conclude that a conversion claim has been validly pled as to the funds withdrawn from Plaintiff's account for the overdraft fees imposed.  To state a claim for conversion, a plaintiff must plausibly show: (i) his ownership of *or* right to possess the property at issue, and (ii) a wrongful interference with that right.  *See generally Prosser and Keeton on the Law of Torts* § 15 (5th ed. 1984).   The allegations in Plaintiff's Amended Complaint are more than sufficient to satisfy these elements.  First, Plaintiff holds the requisite possessory or ownership rights to the funds in his account, as case law and the Deposit Agreement itself establish.   Second, by alleging that BancorpSouth assessed overdraft fees to checking accounts that contained sufficient funds on deposit to cover the debits, Plaintiff has alleged sufficient facts to show BancorpSouth's wrongful interference.

1.     **By Taking Funds From Plaintiff's Account, BancorpSouth Converted Property Plaintiff Had a Right to Possess.**

BancorpSouth overplays "ownership" of the funds in Plaintiff's account, failing to acknowledge in its pleading that under controlling Arkansas law a right of possession is sufficient to support a conversion claim.  Ownership is an alternative not a prerequisite, and is otherwise presumed by virtue of Plaintiff having a present right to possession of the funds in the account.  Thus, the cases cited by BancorpSouth do not require or support dismissal.[6]  Under Arkansas law:

---

[6] *J.W. Reynolds Lumber Co. v. Smackover State Bank*, 836 S.W.2d 853 (Ark. 1992), does not require this Court to apply an ownership standard.  Later jurisprudence from Arkansas courts, including the case cited in this Response, clarify that a right of possession is sufficient.  Further, examining the facts in *J.W. Reynolds*, the court rejected conversion because the bank did not take the funds for itself.  Instead, funds were embezzled by a bookkeeper working for the plaintiff.

> Conversion is a common-law tort action for the wrongful possession or disposition of another's property. *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 961 S.W.2d 729 (1998). The tort of conversion is committed when a party wrongfully commits a distinct act of dominion over the property of another which is inconsistent with the owner's rights. *Dillard v. Wade*, 74 Ark.App. 38, 45 S.W.3d 848 (2001). ***The property interest may be shown by a possession or a present right to possession when the defendant cannot show a better right, since possession carries with it a presumption of ownership.*** *Big A Warehouse Dist. v. Rye Auto Supply*, 19 Ark. App. 286, 719 S.W.2d 716 (1986). The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control over the goods that is in fact inconsistent with the plaintiff's rights. *Grayson v. Bank of Little Rock*, 334 Ark. 180, 971 S.W.2d 788 (1998); *Tackett v. McDonald's Corp.*, 68 Ark.App. 41, 3 S.W.3d 340 (1999).

*Buck v. Gillham*, 98 S.W.3d 750, 753 (Ark. Ct. App. 2003) (emphasis added). *See also Car Transp. v. Garden Spot Distribs.*, 805 S.W.2d 632, 634 (Ark. 1991) (noting Arkansas' long-standing definition of conversion as violating the rights of persons entitled to possession). As previously observed by this Court in the Omnibus Order, Plaintiff unquestionably had the right to possess the funds in the bank account upon demand to BancorpSouth, and has alleged that BancorpSouth wrongfully took the funds from the account so that Plaintiff was unable to possess and use the funds. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323. Such interference with Plaintiff's property interest constitutes a conversion claim. *Id.* (citing *White*, 563 F. Supp. 2d at 1371, as an example of a conversion claim being available for a bank's wrongful debit from a customer's account).

Plaintiff had an absolute right to possession of the funds on deposit in the bank account. When a customer deposits his or her paycheck into a personal account, the customer retains, at a minimum, the right to possess those funds. Thus, courts recognize that a depositor has an "absolute and unconditional right to immediate possession of the property" in his checking account. *Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463-64 (Ill. App. Ct. 2004) (affirming a jury finding of a bank's conversion in the form of its wrongful withdrawals of money from the

plaintiff's general checking account); *see also Katz v. Belmont Nat'l Bank of Chicago*, 491 N.E.2d 1157, 1159 (Ill. 1986) (stating that a bank could be held liable for conversion for taking funds from a depositor's account, despite the debtor-creditor relationship, because the depositor has the "absolute and unconditional" right to "the immediate possession" of the funds on deposit in his account).  As these decisions show, it defies common sense to say that depositors have no right to possess their own money once it has been deposited into their personal bank accounts – especially since depositors have instantaneous access to these funds at ATMs and in POS transactions as well as online.

Additionally, BancorpSouth's argument that Plaintiff lacked the requisite ownership to assert a conversion claim is contradicted by the Deposit Agreement.  Plaintiff is identified as the owner of the account.  In the "AGREEMENT" section, BancorpSouth defines "you" or "your" to mean the "owner(s) of the account" and "signature page" to mean "the page(s) containing the signatures of the owner(s) of the account."   SAC, Ex. A at 3.   The "OWNERSHIP of ACCOUNT AND BENEFICIARY DESINGATION" section of the Deposit Agreement also addresses ownership of the account.  *Id.* at 4.  Given BancorpSouth's vastly superior bargaining power and its position as drafter of the Deposit Agreement, it should not be permitted to claim now that *it* owns the account and funds, directly contradicting the Agreement's express terms.

### 2.     BancorpSouth's Conduct Was Wrongful Because it Improperly Imposed Overdraft Fees and Took Account Funds.

Plaintiff has alleged a more than adequate nucleus of facts to satisfy the wrongful act requirement of a conversion claim.   The essence of the tort is "wrongful possession or disposition of another's property . . . .   The intent required is not conscious wrongdoing but rather an intent to exercise dominion or control" that is inconsistent with the Plaintiff's rights.

*Buck*, 98 S.W.3d at 753.  BancorpSouth's argument regarding wrongful conduct is incorrectly linked entirely to the issue of ownership of account funds.

Plaintiff alleges BancorpSouth's actionable wrongful conduct in considerable detail.  As discussed above, BancorpSouth's scheme included reordering transactions to impose the greatest possible number of overdraft fees – even when there are sufficient funds in the account – and batching transactions over multiple days.   Where the original assessment of an overdraft is improper, the resultant overdraft fee is also improper.   This common sense statement, in fact, derives from a case directly on point.   In *White*, the court refused to dismiss the plaintiffs' conversion claim, rejecting Wachovia's reliance on its deposit agreement.  563 F. Supp. 2d at 1371.  In finding that the elements of conversion had been satisfied, including the wrongful act element, the court pointed to Wachovia's practice of "impos[ing] Overdraft Fees when there was in fact no overdraft."  *Id*. at 1371; *accord, First Union Nat'l Bank of Ga. v. Davies-Elliott, Inc.*, 452 S.E.2d 132, 140 (Ga. Ct. App. 1994) (holding that where the bank's improper actions lead to overdrafts, the overdraft fees are also improper and can support a viable claim for conversion). *See also Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463-64 (Ill. App. Ct. 2004) (affirming a jury verdict of conversion in favor of the depositor where the bank removed funds on deposit in the depositor's general account).   This Court has already observed that these cases support the conclusion that a viable cause of action may be asserted against a bank that wrongfully imposes an overdraft fee.  *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323.  The Court should follow suit with regard to Plaintiff's claim against BancorpSouth.[7]

---

[7] The cases cited in footnote 11 of BancorpSouth's memorandum of law, including *Gutierrez*, 622 F. Supp. 2d at 956, do not bind this Court.   The Court should again reject *Gutierrez* as having incorrectly decided the conversion issue.   The case law cited in this Response supports the conclusion that Plaintiff's conversion claim is well pled.

One final case of import deserves consideration by this Court.  In *Hambrick v. First Sec. Bank*, 336 F. Supp. 2d 890 (E.D. Ark. 2004), the court denied a bank's summary judgment motion on a conversion claim.  The bank had utilized funds from a direct deposit from the Social Security Administration ("SSA") to pay an overdraft fee that the bank claimed the depositor owed.  The accountholder claimed that the bank had no right to the funds because the bank was required by a federal statute to have been returned to the SSA, as the account had been closed by the defendant bank prior to the SSA's direct deposit.  The court concluded that there were disputed issues of fact to be determined as to whether the bank had violated the statute or whether a contract existed between the parties regarding the offset.  *Id.* at 895-896.  Similarly, disputed issues of fact exist in the case at bar regarding whether BancorpSouth acted within its contractual rights such that Plaintiff should be permitted to pursue his conversion claim.

In rejecting the First Tranche banks' argument that their deposit agreements prevented a finding of wrongful taking of the plaintiffs' funds, this Court aptly stated:

> First, if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendants may be barred from relying on them.  Second, Plaintiffs have pled enough facts to show that, even if the deposit agreements gave Defendants discretion to re-order the debit postings, Defendants exercised that discretion in bad faith by intentionally causing Plaintiffs to incur overdrafts that they would not have otherwise incurred.  These allegation could lead a reasonable factfinder to conclude that Defendants acted wrongfully in charging some of the overdraft fees, thereby converting Plaintiffs' funds.  Thus, the Court cannot dismiss Plaintiffs' claim for conversion.

*In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323.  BancorpSouth has argued nothing that should cause this Court to deviate from this ruling.  As such, the conversion claim should survive the Motion to Dismiss.

### D. Plaintiff's Alternative Claim For Unjust Enrichment Should Be Sustained At This Stage Of The Proceedings.

BancorpSouth proffers two reasons as to why Plaintiff's unjust enrichment cause of action fails, both of which have already been correctly rejected by this Court. First, BancorpSouth contends that there can be no claim for unjust enrichment because there is an express written contract. Just as in the previous cases, Plaintiff concedes that he will not be permitted to recover damages under both claims, but he is permitted to plead in the alternative. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1321 ("The Court agrees with Plaintiff's position. Fed. R. Civ. P. 8(d) allows pleading in the alternative, even if the theories are inconsistent. Defendants have not conceded that Plaintiff is entitled to recovery under the contract, and if the contractual claim fails, Plaintiff may still be entitled to recovery under an unjust enrichment theory."). Arkansas law also permits alternative pleading. *See Crawford v. Lee County Sch. Dist.*, 983 S.W.2d 141, 145 (Ark. Ct. App. 1998) ("Further, a claim in *quantum meruit* is generally made under the legal theory of unjust enrichment and does not involve the enforcement of a contract, and a *quantum meruit* claim can succeed even when it is argued, in the alternative, pursuant to a contract that has been declared void.") (internal citations omitted). *See also Wachter Elec. Co. v. Elec. Sys., Inc.*, 2010 WL 5137361 (E.D. Ark. Dec. 9, 2010) (acknowledging that "as a general rule, when an express contract exists between the parties, unjust enrichment is not available as a means of recovery, but declining at motion to dismiss "to find that the existence of an express, written contract bars plaintiff's claim for unjust enrichment").

Second, BancorpSouth incorrectly argues that even if the unjust enrichment claim could coexist with the express contract claim, it should be dismissed because (a) Plaintiff has failed to allege circumstances under which it would be unjust for BancorpSouth to retain the overdraft

fees and (b) BancorpSouth's practices were provided for by the Deposit Agreement and are in accord with federal law. This argument should be rejected again. This Court has already held that the allegations included in Plaintiff's complaint are sufficient – that, among other things, BancorpSouth manipulated the posting order of debit transactions in bad faith so as to maximize the number of overdraft fees incurred – to lead a reasonable fact-finder to conclude that it would be unjust for a bank to retain the benefit of those fees. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1321-1322. Also, this Court has already determined that the practices complained of here, if proven, would violate the duty of good faith and fair dealing. *Id*. at 1316 (*citing Gutierrez*, 622 F. Supp. 2d at 951) ("even if the contract confers discretion on the bank to determine the sequence of honoring presentments, the bank must exercise that discretion fairly and cannot exercise it to enrich itself by gouging the consumer"). That the Deposit Agreement discloses the practices is inconsequential because, as this Court has already held, "if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendant may be barred from relying on them." *Id*. at 1323. Finally, as discussed at length *supra*, this Court has already concluded that even if the deposit agreement gives a bank the discretion to re-order the debit postings ("we *may* pay them in any order we choose"), a bank exercises that discretion in bad faith by intentionally causing the account holder to incur overdrafts that they would not have otherwise incurred, and thus acts wrongfully so as to support an unjust enrichment claim. *Id*.

> **E.    Plaintiff Properly States a Claim Under the ADTPA.**

BancorpSouth makes a variety of arguments in support of its contention that the Bank's posting practices cannot possibly violate the Arkansas Deceptive Trade Practices Act (the "ADTPA"), Ark. Code Ann. § 4-88-101 et seq., but every single argument it raises has already

been explicitly rejected by this Court in its examinations of other states' deceptive trade practices acts at issue in other complaints in this MDL.

First, following the same faulty reasoning already rejected by this Court in similar motions, BancorpSouth argues that insofar as both state and federal law purportedly authorize its posting practices and its imposition of overdraft charges, the challenged conduct cannot violate the ADTPA. Def. Mem., p. 22. Once again, BancorpSouth is wrong. The practices complained of here have already been found to violate the duty of good faith and fair dealing. *Gutierrez*, 622 F. Supp. 2d at 952-953 ("even if the bank-depositor contract purports to allow the bank to post in any order it wishes, such discretion remains subject to the bank's duty of good faith and fair dealing."). Moreover, BancorpSouth completely ignores the fact that this Court has already previously denied motions to dismiss state statutory claims after determining that, "neither federal nor state law expressly permit the bank's alleged practices." *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1325. Actions which evidence bad faith and unfair dealing are exactly the conduct which the ADTPA is designed to address.

Second, BancorpSouth erroneously argues that the ADTPA claim fails because the alleged collection of overdraft charges is not unconscionable and was fully disclosed and expressly authorized in the Deposit Agreement. Def. Mem., p. 23. The ADTPA prohibits "engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." This Court has already held that allegations of (i) re-ordering debit postings in bad faith so as to maximize the number of overdrafts incurred by Plaintiff, (ii) charging excessive overdraft fees that do not reasonably relate to the costs or risks associated with providing overdraft protection, (iii) failing to disclose that customers have the option to opt out of the overdraft protection, and (iv) failing to obtain Plaintiff's consent before overdrawing these

accounts, combined with the disparity in sophistication and bargaining power between the banks and its customers, the voluminous boilerplate language drafted by the bank, and no meaningful opportunity to negotiate with the bank, are sufficient to plead unconscionability so as to support an action under a consumer protection statute like the ADTPA. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1318. Thus, at the pleading state of this case, dismissal of state statutory claims like the ADTPA is inappropriate. *Id.* at 1326.

Third, BancorpSouth argues that any allegation that the collection of overdraft charges is a "deceptive" act as contemplated by the ADTPA fails because the allegations do not meet Rule 9(b)'s heightened pleading standard. Def. Mem., pp. 23-24. Preliminarily, the particularity required by Rule 9(b) for allegations of deception mandates only that the claim identify who, what, where, when, and how. *Whatley v. Reconstrust Co. N.A.*, 2010 WL 4916372, at *6 (E.D. Ark. Nov. 23, 2010) (citing *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 2001)). Here Plaintiff has pled the "who" (SAC ¶ 13), "what" (did not disclose opt out; did not obtain consent prior to processing; did not alert customers that transaction will trigger overdraft fee; did not provide opportunity to cancel transactions; manipulated and reordered transactions to increase number of overdrafts, etc – *see* SAC ¶¶ 31, 35-56, 65-73), "where" (at the bank, SAC ¶ 68), "when" (May 5, 2010, SAC ¶ 68), and "how" (if BancorpSouth had not manipulated and reordered Plaintiff's transactions from highest to lowest, he would not have incurred five overdraft fees, SAC ¶ 69). These allegations are more than sufficient to state a claim under the ADTPA and Rule 9(b). *See, e.g., Rush v. Whirlpool Corp.*, 2008 WL 509562, at *3-4 (W.D. Ark. Feb. 22, 2008).

BancorpSouth's final argument for dismissal of the ADTPA claim, that Plaintiff failed to allege that he was actually misled, is belied by the allegations in the SAC. The SAC alleges that

- 24 -

the Deposit Agreement failed to disclose that customers, including Plaintiff, had the option to "opt out" from BancorpSouth's overdraft scheme.  SAC ¶ 34.  In addition, the SAC alleges that BancorpSouth "misleads its customers regarding its reordering practices" by telling its customers that "we *may* pay any of them in any order we choose" and "we *generally* choose to pay the largest transaction first and the smallest transaction last" when in fact, it is BancorpSouth's practice to *always* reorder debits from highest to lowest.  SAC ¶ 36.  Further, Plaintiff alleges that the Deposit Agreement is misleading in that it states that "if more than one item or order is presented for payment *on the same day* and the available balance of the account is insufficient to pay them all, we may pay them in any order we choose . . . ."  SAC ¶ 32.  Indeed, this Court has already found such acts to constitute sufficient allegations of deceptive conduct at this state of the litigation.  *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1318.[8]

## IV.  CONCLUSION

For all of the reasons set forth above, the BancorpSouth's motion to dismiss should be denied.  Should the Court determine that any of Plaintiff's claims are subject to dismissal; Plaintiff respectfully requests leave to replead such claims pursuant to Rule 15 to correct any pleading deficiencies observed by the Court.

---

[8] BancorpSouth also includes a one sentence argument that Plaintiff does not contend that he would have acted any differently had BancorpSouth disclosed the practice differently, and cites to *Bildstein v. MasterCard Intern. Inc.*, 329 F. Supp. 2d 410, 414 (S.D.N.Y. 2004).  The *Bildstein* case deals solely with an alleged violation of New York General Business Law §349, and the burden under that law for plaintiff to "show a materially deceptive conduct on which they relied to their detriment," is inapplicable to this case covered by Arkansas law.  In any event, the issue is factual and inappropriate for resolution via a Rule 12(b)(6) motion.

Dated: February 22, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@alterslaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271


/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008


/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 22, 2011, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record or pro se parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel:  305-442-8666
Fax:  305-779-9596