**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-02036-JLK**

---

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**

*Blahut v. Harris, N.A.*
N.D. Ill. Case No. 1:10-cv-02543
S.D. Fla. Case No. 1:10-cv-21821-JLK

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT HARRIS, N.A.'S RULE 12(b)(6) MOTION TO DISMISS**
**AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................... 1

III.  ARGUMENT ...................................................................................................... 2

    A.    Plaintiff Properly States a Claim for Breach of Contract and Breach of Contract Premised on Breach of the Implied Duty of Good Faith and Fair Dealing ....................................................................................................... 2

        1.    The Deposit Agreement Contains Discretionary Terms That Impose an Obligation of Good Faith on Harris Bank ............................... 3

        2.    The Court Should Follow the Decisions Recognizing That Harris Bank's Abusive Overdraft Fee Scheme Breaches the Covenant ............. 5

    B.    Plaintiff Properly States a Claim for Unconscionability ....................................... 8

        1.    Established Precedent and Illinois Law Dictate That Plaintiff's Unconscionability Claims Are Valid .................................................... 8

        2.    The Harris Bank Contract Is Procedurally Unconscionable ................... 9

        3.    The Harris Bank Contract Is Substantively Unconscionable ................. 10

    C.    Plaintiff Properly States a Claim for Conversion ................................................. 12

        1.    By Taking Funds From Plaintiff's Account, Harris Bank Converted Property Plaintiff Had a Right to Possess ............................ 12

        2.    Harris Bank's Conduct Was Wrongful Because it Improperly Imposed Overdraft Fees and Took Account Funds ................................. 14

        3.    Plaintiff Has Satisfied the Demand Requirement of a Conversion Claim Under Illinois Law ................................................................... 15

    D.    Plaintiff Properly States a Claim for Unjust Enrichment .................................... 16

    E.    Plaintiff Has Properly Alleged a Violation of the Illinois Consumer Fraud and Deceptive Practices Act ........................................................................ 18

    F.    Harris Bank May Not Escape Liability for Its Own Purposeful Wrongful Acts by Relying on the Voluntary Payment Doctrine ...................................... 19

        1.    The Payments Were Made Involuntarily ............................................... 20

2.     Plaintiff Was Without Full Knowledge of the Facts ............................. 22

3.     The Doctrine Does Not Preclude Consumer Protection Claims ............ 22

G.     Harris Bank May Not Escape Liability for Its Own Purposeful Wrongful Acts by Relying on the Provision of Its Deposit Agreement Requiring Notice by the Depositor of Errors or Unauthorized Endorsements Within 60 Days ......................................................................................................... 23

IV.   CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

*Page*

## FEDERAL COURT DECISIONS

*4658 N. Ocean, Inc. v. Branch Bank and Trust Co.*
  2010 WL 4960088 (S.D. Fla. 2010)................................................................. 16

*Abels v. JPMorgan Chase Bank, N.A.*
  678 F. Supp. 2d 1273 (S.D. Fla. 2009) ...................................................... 8, 9

*Alexander Mfg., Inc. v. Illinois Union Ins. Co.*
  666 F. Supp. 2d 1185 (D. Or. 2009) ............................................................. 4

*Bednarick v. Titan Am. LLC*
  2009 WL 1684642 (S.D. Fla. 2009)............................................................... 16

*Cormeens, Holloman, Sibert, Inc. v. AB Volvo*
  349 F.3d 376 (7th Cir. 2003)......................................................................... 17

*Dugan v. Smerwick Sewerage Co.*
  1996 WL 535306 (N.D. Ill. 1996) ................................................................. 24

*Europlast, Ltd. v. Oak Switch Sys., Inc.*
  10 F.3d 1266 (7th Cir. 1993)........................................................................... 3

*Gonzalez v. Coilis & Assoc., P.C.*
  2004 WL 719264 (N.D. Ill. 2004) ................................................................. 23

*Gros v. Midland Credit Mgmt.*
  525 F. Supp. 2d 1019 (N.D. Ill. 2007) .......................................................... 19

*Gutierrez v. Wells Fargo & Co.*
  622 F. Supp. 2d 946 (N.D. Cal. 2009) ............................................. 6, 7, 18, 20

*Halstead Terrace Nursing Ctr., Inc. v. Scottsdale Ins. Co.*
  1997 WL 124263 (N.D. Ill. 1997) ................................................................. 22

*Hickman v. Wells Fargo Bank, N.A.*
  683 F. Supp. 2d 779 (N.D. Ill. 2010) ............................................................. 4

*In re Checking Account Overdraft Litig.*
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................. *passim*

*Levey v. CitiMortgage, Inc.*
  2009 WL 2475222 (N.D. Ill. 2009).......................................................... 9, 11

*MJ & Partners Restaurant LP v. Zadikoff*
    995 F. Supp. 929 (N.D. Ill. 1998) ................................................................ 5

*Muehlbauer v. General Motors Corp.*
    431 F. Supp. 2d 847 (N.D. Ill. 2006) ........................................................ 19

*Petrilli v. Dreschel*
    910 F.2d 1441 (7th Cir. 1998) .................................................................. 24

*Phillips v. Lincoln Nat'l Life Ins. Co.*
    978 F.2d 302 (7th cir. 1992) ..................................................................... 25

*Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*
    548 F. Supp. 2d 619 (N.D. Ill. 2008) ........................................................ 17

*Randazzo v. Harris Bank Palatine, N.A.*
    262 F.3d 663 (7th Cir. 2001) ............................................................... 20, 21

*Redfield v. Continental Cas. Co.*
    818 F.2d 596 (7th Cir. 1987) ..................................................................... 16

*Reliance Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*
    2001 WL 62597 (N.D. Ill. 2001) ............................................................... 24

*Scott v. Fairbanks Capital*
    284 F. Supp. 2d 880 (S.D. Ohio 2003) ................................................. 20, 22

*Sharnes-Yeaken v. Citizens Fin. Bank*
    677 F. Supp. 2d 994 (N.D. Ill. 2009) .......................................................... 7

*Sobel v. Hertz Corp.*
    698 F. Supp. 2d 1218 (D. Nev. 2010) ....................................................... 23

*White v. Wachovia Bank, N.A.*
    563 F. Supp. 2d 1358 (N.D. Ga. 2008) .......................................... 3, 5, 6, 13, 14

## STATE COURT DECISIONS

*Arra v. First State Bank & Trust Co. of Franklin Park*
    621 N.E.2d 128 (Ill. Ct. App. 1993) .......................................................... 21

*Citicorp Sav. of Ill. v. Rucker*
    692 N.E.2d 1319 (Ill. Ct. App. 1998) ......................................................... 4

*Cruthis v. Firstar Bank, N.A.*
    822 N.E.2d 454 (Ill. Ct. App. 2004) .................................................... 13, 14

*Dougherty v. North Fork Bank*
    301 A.D.2d 491 (2d Dep't 2003) ....................................................................... 21

*Dubey v. Public Storage, Inc.*
    918 N.E.2d 265 (Ill. Ct. App. 2009) ............................................................... 9, 11

*First Nat'l Bank of Cicero v. Sylvester*
    554 N.W.2d 1063 (Ill. Ct. App. 1990) ............................................................... 3

*First Union Nat'l Bank of Ga. v. Davies-Elliot, Inc.*
    452 S.E.2d 132 (Ga. Ct. App. 1994) ................................................................. 14

*Hill v. St. Paul Fed. Bank for Savings*
    768 N.E.2d 322 (Ill. Ct. App. 2002) ............................................................... 5, 18

*Katz v. Belmont Nat'l Bank of Chicago*
    491 N.E.2d 1157 (Ill. 1986) ............................................................................. 13

*Kinkel v. Cingular Wireless LLC*
    857 N.E.2d 250 (Ill. 2006) ............................................................................ 9, 11

*Negrin v. Norwest Mortgage, Inc.*
    263 A.D.2d 39 (2d Dep't 1999) ....................................................................... 21

*Perdue v. Crocker Nat'l Bank*
    702 P.2d 503 (Cal. 1985) ................................................................................. 11

*Pollock v. D.R. Horton, Inc.*
    77 P.3d 1120 (Or. Ct. App. 2003) ...................................................................... 4

*Pratt v. Smart Corp.*
    968 S.W.2d 868 (Tenn. Ct. App. 1997) ............................................................ 23

*Ramirez v. Smart Corp.*
    863 N.E.2d 800 (Ill. Ct. App. 2007) ................................................................. 23

*Razor v. Hyundai Motor Am.*
    854 N.E.2d 607 (Ill. 2006) ................................................................................. 9

*Robinson v. Toyota Motor Credit Corp.*
    775 N.E.2d 951 (Ill. 2002) ........................................................................... 15, 19

*Roderick Dev. Inv. Co. v. Community Bank of Edgewater*
    688 N.E.2d 1129 (Ill. Ct. App. 1996) ............................................................... 13

*Sara Lee Corp. v. Litton Indus. Automation Sys., Inc.*
    1992 WL 22693 (N.D. Ill. 1992) ...................................................................... 16

*Saunders v. Michigan Ave. Nat'l Bank*
    662 N.E.2d 602 (Ill. Ct. App. 1996) ........................................................ 6, 12, 15, 19

*Smith v. Prime Cable of Chicago*
    658 N.E.2d 1325 (Ill. Ct. App. 1995) ........................................................ 20

*Tri State Bank of E. Dubuque v. Colby*
    490 N.E.2d 1037 (Ill. Ct. App. 1986) ........................................................ 13

## **STATUTES**

810 ILCS 5/4-303 ........................................................................................ 7

810 ICLA 5/4A-108 ...................................................................................... 7

810 ILCS 5/4A-504 ...................................................................................... 7

Fed.R.Civ.P. 8(d) ........................................................................................ 16-17

Fed.R.Civ.P. 9(b) ........................................................................................ 19

Fed.R.Civ.P. 9(c) ........................................................................................ 16

Fed.R.Civ.P. 15 ........................................................................................... 26

U.C.C. 4-303(b) .......................................................................................... 7, 11

## **OTHER SOURCES**

66 Am. Jur. § 112 (2001) ............................................................................ 21

Prosser and Keeton on the Law of Torts § 15 (5th Ed. 1984)...................... 12

## I.    INTRODUCTION

In her Amended Class Action Complaint ("AC"), Plaintiff seeks to recover, for herself and all other customers similarly situated, excess overdraft fees generated and retained through the unlawful practices of Harris, N.A. ("Harris Bank" or the "Bank") including, among other things, its manipulation and reordering of debit transactions from largest to smallest to generate more overdrafts and overdraft fees.  Harris Bank seeks dismissal of Plaintiff's claims based on arguments this Court has already rejected in ruling on the First and Third Tranches' motions to dismiss.  As demonstrated below, Harris Bank's arguments are without merit and its motion to dismiss should be denied in its entirety.

## II.    STATEMENT OF FACTS

Plaintiff, Stephanie Blahut ("Plaintiff"), is a resident of the State of Illinois and has a checking account at Harris Bank.  Amended Complaint ("AC") ¶¶ 12, 69; Defendant's Rule 12(b)(6) Motion to Dismiss Plaintiff's Amended Class Action Complaint (hereinafter "Def. Mem.") p. 1 (**DE # 1074**).  Plaintiff asserts claims against Harris Bank for breach of contract and breach of the covenant of good faith and fair dealing, unconscionability, conversion, and unjust enrichment. AC ¶¶ 83-115.  She also asserts claims for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").  *Id.* at ¶¶ 116-21.  The allegations made and common law claims asserted by Plaintiff mirror those pled by plaintiffs against the First Tranche banks.

Plaintiff and all members of the Classes maintain or maintained a checking account with Harris Bank, the terms for which were contained in standardized account holder agreements ("Deposit Agreement").  AC ¶ 32.  The terms relating to the reordering are hidden in the Deposit Agreement's dense, small type, boilerplate provisions.  *Id.*  The Deposit Agreement and the related documents are unconscionable contracts of adhesion.

The Deposit Agreement contains discretionary language regarding Harris Bank's reordering practices, such as "[w]e *may* pay Items presented against your account in any order we choose, unless a particular order is either required or prohibited by Applicable law."  AC ¶ 33.  The Deposit Agreement also states "[w]e may change the order of posting Items to your account at any time without notice to you."  AC ¶ 34.  However, the Deposit Agreement is ineffective, ambiguous, unfair, and deceptive because it does not unambiguously state that Harris Bank *always* reorders debits from high to low regardless of the amounts involved – even though

Harris Bank *does always* reorder transactions to maximize overdrafts and overdraft fee revenues for itself at consumers' expense.  AC ¶¶ 39, 42-46.  Harris Bank manipulates and reorders debits from highest to lowest solely to increase the number of exorbitant overdraft fees it can charge. AC ¶ 38.  Moreover, debits are held for multiple days and then batched together to maximize the number of overdraft transactions and fees, and Harris Bank assesses overdraft fees for transactions that occurred when there were sufficient funds in the customers' accounts to cover the transactions.  AC ¶¶ 46-48.

Further, Harris Bank does not: (i) disclose to customers that they may "opt out" of Harris Bank's overdraft scheme; (ii) provide an opportunity to cancel the debit transaction before incurring an overdraft fee; or (iii) obtain affirmative consent from customers prior to processing transactions that will overdraw their accounts and result in overdraft fees.  AC ¶¶ 37, 57-59.   In addition to those described above, Harris Bank also engages in deceptive and manipulative practices to cloak accurate information regarding customer balances.  AC ¶¶ 53-56.  Its overdraft policies and practices and the reordering provisions of its Deposit Agreement are procedurally and substantively unconscionable.  AC ¶¶ 67, 91-93.   As a direct consequence of Harris Bank's unlawful conduct, Plaintiff and the Classes have suffered damages.  AC ¶¶ 68-81.

## III.   ARGUMENT

### A.   **Plaintiff Properly States a Claim for Breach of Contract and Breach of Contract Premised on Breach of the Implied Duty of Good Faith and Fair Dealing**

Like other banks before it, Harris Bank urges dismissal of Plaintiff's breach of contract claim because: (1) its conduct is in accord with the express terms of the Deposit Agreement and (2) Illinois' version of the UCC permits the actions which are the subject of the breach of contract action.  This Court has already rejected both arguments when raised in motions to dismiss.  *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1317 (S.D. Fla 2010). Indeed, as argued below, the UCC does not even apply in this case.

According to Harris Bank, since its Deposit Agreement permits the high-to-low posting of debits, it can post high-to-low irrespective of the methods it employs or its rationale for doing so.  Def. Mem., p. 6.  The Deposit Agreement in the case at bar is similar if not substantively identical to those previously considered by this Court in denying motions to dismiss by other banks, in that:

- In the Deposit Agreement, the reordering of debits is *discretionary* and, as such, imposes upon Harris Bank the obligation to act in good faith. Case law uniformly holds that where, as here, contract provisions give discretion to one party, that discretion must be exercised in good faith;

- *Nothing* in the Deposit Agreement permits Harris Bank to manipulate the reordering of debits *solely* to create overdrafts that would not otherwise exist, to charge overdraft fees when there are sufficient funds in the account, or to reorder the posting of debits over a period of days irrespective of when the transaction occurred; and

- There are fundamental differences between checks and debit transactions, which make earlier decisions and the UCC pronouncements concerning checks inapplicable.

In denying the motions to dismiss by other banks, this Court held that: "Plaintiffs do not ask the Court to tell the [bank] how to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing." *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1315 (refusing to dismiss breach of contract claim on grounds that conduct at issue was permitted by contract terms). Other courts have reached similar conclusions with regard to the order of a bank's posting of items to an account:

> The court cannot find as a matter of law that the Deposit Agreement's statement that Wachovia "may" post items "in any order" . . . expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, and maximize overdraft fees in the ways the Complaint alleges.

*White v. Wachovia Bank,* 563 F. Supp. 2d 1358, 1364 (N.D. Ga. 2008).

In response to Plaintiff's allegations, Harris Bank offers no novel or convincing rationale for the dismissal of breach of contract claims that this Court has previously declined to dismiss.

1.  **The Deposit Agreement Contains Discretionary Terms That Impose an Obligation of Good Faith on Harris Bank.**

Courts throughout Illinois recognize an implied covenant of good faith and fair dealing in the performance of contracts. *Europlast, Ltd. v. Oak Switch Sys., Inc.*, 10 F.3d 1266, 1275 n.5 (7th Cir. 1993) ("Under Illinois law, a duty of good faith and fair dealing is implied in every contract."); *First Nat'l Bank of Cicero v. Sylvester*, 554 N.E.2d 1063, 1069 (Ill. Ct. App. 1990) ("Every contract implies good faith and fair dealing between the parties.").

In Illinois, "[t]he doctrine of good faith … requires the party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties."

- 3 -

*Citicorp Sav. of Ill. v. Rucker*, 692 N.E.2d 1319, 1324 (Ill. Ct. App. 1998); *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 792 (N.D. Ill. 2010) ("To establish a breach of the duty of good faith and fair dealing under Illinois law, the complaining party must show that the contract vested the opposing party with discretion in performing an obligation under the contract and the opposing party exercised that discretion is bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties."). Terms such as "may", employed by Harris Bank in Plaintiff's Deposit Agreement, are discretionary terms that impose an obligation of good faith on the Bank. The Deposit Agreement provides:

> We *may* pay Items presented against your account in any order we choose, unless a particular order is either required or prohibited by Applicable law.
>
> . . . .
>
> We *may* change the order of posing Items to your account at any time without notice to you.
>
> . . . .
>
> We *may* charge an overdraft fee if any transfer, withdrawal, service fee or other debit of any type exceeds your available balance.

AC ¶¶ 33-35, Ex. A, at 2 (emphasis added).

As in the numerous other cases pending before this Court, Plaintiff is not seeking to vary the language of the contract, but rather to have the express contractual terms, which by their very language give the Bank discretion, carried out in good faith. "The implied covenant of good faith does not vary the substantive terms of a contract or require a party to refrain from doing what the contract expressly permits it to do." *Alexander Mfg., Inc. v. Illinois Union Ins. Co.*, 666 F. Supp. 2d 1185, 1206 (D. Or. 2009) (citing *Pollock v. D.R. Horton, Inc.*, 77 P.3d 1120 (Or. Ct. App. 2003)). Rather, good faith requires that each party perform its obligations under the contract, "including exercising any discretion that the contract provides, in a way that will effectuate the objectively reasonable contractual expectations of the parties." *Pollock*, 77 P.3d at 1127. Once again, Plaintiff does not ask the Court to tell Harris Bank how to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1315 ("when one party is given discretion to act under a contract, said discretion must be exercised in good faith") (citations omitted).

- 4 -

At the very least, the issue of whether the Deposit Agreement's language permitted Harris Bank to manipulate transactions, delay posting indefinitely, or maximize overdraft fees in the ways Plaintiff alleges are questions of fact which preclude the grant of a Rule 12(b)(6) motion. *See Checking Account Overdraft Litig.*, 649 F. Supp. 2d at 1316-17.

2.      **The Court Should Follow the Decisions Recognizing That Harris Bank's Abusive Overdraft Fee Scheme Breaches the Covenant.**

Citing, *Hill v. St. Paul Fed. Bank for Savings,* 768 N.E.2d 322 (Ill. Ct. App. 2002), Harris Bank contends that "Illinois courts have already rejected the theory that high-to-low posting, *even when not disclosed at all*, violates the implied covenant of good faith and fair dealing." Def. Mem., p. 4 (emphasis in original).  Harris Bank neglects to mention however that this Court has already considered and rejected *Hill* – a case involving paper checks – as being inapplicable to debit cards due to the "instantaneous nature of debit card transactions." *See Checking Account Overdraft Litig.*, 649 F. Supp. 2d at 1316.  As such, Harris Bank's reliance on *Hill* amounts to nothing more than an untimely motion to reargue this Court's prior decision on the Omnibus Motion to Dismiss.

Moreover, Harris Bank conspicuously ignores the leading cases on which this Court has previously relied in holding that the reordering of debit card transactions from high-to-low, *even when fully disclosed*, violates the implied covenant of good faith and fair dealing.  In *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008), Wachovia unsuccessfully moved to dismiss the  claim for breach of the implied covenant of good faith, with the court rejecting the premise that the provisions of the contract expressly permitted Wachovia to reorder and impose overdraft fees reasoning that:

> Plaintiffs' allegations state a plausible claim for breach of the implied covenant of good faith . . .  The court cannot find as a matter of law that the Deposit Agreement's statement that Wachovia "may" post items "in any order" (Deposit Agreement ¶ I.D. 12) expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, and maximize overdraft fees in the ways the Complaint alleges.

*White*, 563 F. Supp. 2d at 1364.  In addition, the court found that the language of the Wachovia deposit agreement did not confer *absolute* discretion because of the implied duty of good faith and fair dealing existing in all contracts and the fact that the deposit agreement vested the bank with discretion, by stating that "Wachovia 'may' post transactions in any order."  *Id.* at 1365.

Likewise, in *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009), Judge Alsup denied summary judgment to Wells Fargo on plaintiffs' claim for violation of the implied covenant of good faith and fair dealing notwithstanding Wells Fargo's argument that its agreement with the depositor conferred it with absolute discretion as to the sequence of processing debit transactions, holding that:

> One of the leading decisions is *Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 923 (1985), which makes this point clear. Among other rules concerning bank accounts, *Perdue* held that "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise the discretion in good faith and in accordance with fair dealing." 38 Cal. 3d at 923. Applying that rule here, even if the bank-depositor contract confers discretion on the bank as to the sequence of honoring presentments, the bank must exercise its discretion in accordance with fair dealing and cannot exercise its discretion to enrich itself by gouging the consumer. Put differently, even if the bank-depositor contract purports to allow the bank to post in any order it wishes, such discretion remains subject to the bank's duty of good faith and fair dealing. There is a duty of good faith and fair dealing to honor checks in such a way as to be fair to the consumer and that discretionary power cannot be exercised so as to pile on ever greater penalties on the depositor, which is exactly what Wells Fargo seems to be doing, or so a reasonable jury could conclude.

*Id*. at 952-53.

Relying on *White* and *Gutierrez*, this Court should conclude that Plaintiff has pled a plausible claim for breach of the implied duty of good faith and fair dealing. Like the plaintiffs in *White*, Plaintiff alleges that Harris Bank manipulates and alters her transaction records, imposes overdraft fees even when her account contains sufficient funds to cover a transaction, and routinely enforces a policy whereby charges incurred are posted to her account in order of largest to smallest amounts, even where larger charges are received days after smaller charges. AC ¶¶ 43-47. Instead of addressing *White* or *Gutierrez*, Harris Bank relies on *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602 (Ill. Ct. App. 1996) (Def. Mem., p. 5), an Illinois case which this Court also already rejected as convincing authority in the context of debit card transactions. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319. In any event, the deposit agreement in *Saunders* which merely provided that the Bank charged a flat $20 per day for overdrafts on checking accounts regardless of processing order, *Saunders*, 662 N.E.2d at 606, differs materially from Harris Bank's Deposit Agreement and practice which resulted in Plaintiff being assessed multiple overdraft fees in a single day solely as a result of Harris Bank's

reordering of Plaintiff's debit transactions in order to maximize the amount of overdraft fees collected.

Harris Bank also incorrectly argues, as other banks have done before in this MDL proceeding, that its conduct is explicitly permitted by state law.  Def. Mem., pp. 4-5.  In so doing, Harris Bank ignores the very real and basic differences between check transactions and debit transactions which render inapposite the authorities on which it relies.  In addition, and most surprisingly, Harris Bank ignores this Court's prior determination that "Defendants' suggested analysis of applying the UCC's endorsement of high-to-low posting in check transactions to debit card transactions does not logically follow.  If they were the same, there would be one body of law addressing both."  *See Checking Account Overdraft Litig.*, 695 F. Supp. 2d at 1316.

Illinois has adopted Section 4-303(b) of the UCC and its provision that permits a bank to post checks in any order the bank chooses.  *See* 810 ILCS 5/4-303, 5/4A-504.[1]  However, Section 4-303(b) of the UCC does not insulate Harris Bank from a breach of the covenant of good faith and fair dealing when it comes to high-to-low posting of debit card transactions.  *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316 ("The UCC's generally accepted principles when dealing with checks cannot be broadly applied to debit card transactions.  To do so would be to ignore the fundamental differences between the two.").  There is no ambiguity in the UCC's language – debit card transactions are *excluded* from its purview.  *See*, *e.g.*, *Gutierrez*, 622 F. Supp. 2d at 951-52 (Section 4-303 does *not* apply to debit card transactions).

Contrary to Harris Bank's contention on page 8 of its brief, this Court did *not* previously "reserve[] judgment on whether the principles of UCC § 4-303(b) should apply to debit card transactions."  This Court made it perfectly clear that the "Defendants' suggested analysis of applying the UCC's endorsement of high-to-low posting in check transactions to debit card transactions does not logically follow."  *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316.  Rather, the Court reserved judgment as to the question of whether the banks complied

---

[1] 810 ILCS 5/4A-108 cited by Harris Bank expressly states that Article 4A does not apply to a transaction that is governed by the Electronic Funds Transfer Act of 1978 (the "EFTA").  Debits are governed by the EFTA.  *Shames-Yeaken v. Citizens Fin. Bank*, 677 F. Supp. 2d 994, 1006 (N.D. Ill. 2009) (citing 15 U.S.C. § 1693a(6) at stating the EFTA governs "electronic fund transfer[s]" that "authorize a financial institution to debit or credit an account").

with their obligations of good faith, specifically stating that "any question about the facts, or how the banks operate" are "matters to be developed through discovery." *Id.* at 1317. The Court should conclude that the breach of implied covenant of good faith and fair dealing count survives the Motion to Dismiss.

        B.     **Plaintiff Properly States a Claim for Unconscionability.**

Harris Bank claims that Plaintiff's Amended Complaint fails to allege adequately a claim for unconscionability that would be recognized by an Illinois court. There are two aspects to unconscionability – procedural and substantive – both of which have been more than sufficiently alleged by Plaintiff under Illinois law. As argued below, Illinois law allows a plaintiff to prevail by proving either procedural or substantive unconscionability. Thus, Harris Bank's arguments fail to support dismissal at this stage of the litigation, and must be rejected in its entirety. In the context of various banks' motions to compel arbitration in this MDL, it has been observed that determinations regarding unconscionability are fact intensive, thus making a Rule 12(b)(6) motion in appropriate.

        **1.    Established Precedent and Illinois Law Dictate that Plaintiff's Unconscionability Claims Are Valid.**

Harris Bank argues that Plaintiff failed to state a claim for unconscionability in Illinois because: (1) of the "simple language" describing the overdraft and posting order policies (Def. Mem., p. 7); (2) adhesion contracts are a "fact of modern life" (*Id.* at 8): (3) the Plaintiff was not oppressed by or unaware of Harris Bank's policy (*Id.*); and (4) that Harris Bank's policies comport with public policy and are therefore not unconscionable (*Id.* at 9).

This Court has previously rejected similar arguments challenging allegations of unconscionable contractual terms and practices in the first tranche of bank overdraft cases. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1317-1321; *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279-80 (S.D. Fla. 2009). In *Checking Account Overdraft*, this Court provided guidance in determining whether a challenged contractual provision or conduct was unconscionable. "Procedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand the disputed contract terms . . . ." 694 F. Supp. 2d at 1319.

On the other hand, substantive unconscionability "requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience."  *Id.* at 1319 (quoting *Bland v. Health Care & Ret. Corp. of Am.,* 927 So.2d 252, 256 (Fla. Dist. Ct. App. 2006)).  Importantly, for purposes of this motion, the substantive unconscionability inquiry is a factual one that cannot support dismissal at this stage.  *Abels,* 678 F. Supp. 2d at 1280 ("Whether or not a reasonable person would have actually agreed to it is a factual question that cannot be decided on a motion to dismiss.  Therefore, the unconscionability count should not be dismissed at this point").

In contrast to many other states, under Illinois law, a finding of unconscionability can be based upon *either* procedural or substantive unconscionability, or a combination of both.  *Kinkel v. Cingular Wireless, LLC*, 857 N.E. 2d 250, 263 (Ill. 2006) (citing *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006)); *see also Dubey v. Public Storage, Inc.,* 918 N.E.2d 265, 277 (Ill. Ct. App. 2009).  In *Razor*, the Illinois Supreme Court rejected the requirement that both procedural and substantive unconscionability must be found before a contract provision will be found to be unenforceable.  *Razor*, 854 N.E.2d at 622.  Thus, a showing that Harris' Deposit Agreement is *either* procedurally or substantively unconscionable is sufficient to justify invalidation of the entire contract.  Similar to most states, Illinois courts have held that "procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice . . . [while] substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed."  *Levey v. CitiMortgage, Inc.*, 2009 WL 2475222, at *4 (N.D. Ill. Aug. 10, 2009) (citing *Kinkel,* 857 N.E.2d at 267); *see, e.g.*, *Dubey,* 918 N.E.2d at 276.

### 2.  The Harris Bank Contract Is Procedurally Unconscionable.

Procedural unconscionability is sufficiently alleged when "the disparity in sophistication and bargaining power between Plaintiffs and Defendants is obvious.  The terms at issue were contained in voluminous boilerplate language drafted by the bank.  If Plaintiffs did disagree with the terms, there was no meaningful opportunity to negotiate with the bank."  *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319; *Abels*, 678 F. Supp. 2d at 1279 ("Procedural unconscionability is satisfied here because of the disparity in bargaining power between Plaintiffs and Defendant."); *see also Levey*, 2009 WL 2475222, at *4 (citing *Kinkel,* 857 N.E.2d at 267); *Dubey,* 918 N.E.2d at 276.

The Amended Complaint alleges that the sophistication and bargaining power of Harris Bank dwarfs that of Plaintiff.  Harris Bank's agreement, drafted and offered on a take-it-or-leave-it basis, is a voluminous boilerplate contract, printed in small type over dozens of pages.  It is a classic contract of adhesion.  While standardized contracts may be a "fact of modern life," (Def. Mem., p. 8), whether a contract is adhesive is still a crucial factor in whether it is procedurally unconscionable – a factor which Harris Bank completely ignores.  Moreover, because the agreements provided by other similar banks all contain similar language, customers lack the ability to shop around for more favorable terms.  Harris Bank's agreement does not even adequately advise customers of their right to opt-out of the overdraft procedures.

Ignoring the other factors which would support a finding of procedural unconscionability under Illinois law, Harris Bank chooses to quibble over the conspicuousness of its overdraft posting disclosures as contained in its 32-page Deposit Agreement, offering the laughable contention that merely because the language purportedly disclosing its overdraft practices appears on the sixth page of the agreement[2] with a bold heading over the paragraph (like virtually every other paragraph in the Deposit Agreement), the "deposit agreement's disclosures are neither 'inconspicuous[]' nor 'incomprehensib[le].'"  Def. Mem., pp. 8-9.  Of course, Harris Bank cites no authority for the suspect proposition that merely because a provision appears early in a voluminous boilerplate agreement, that it somehow nullifies a procedural unconscionability attack.

Under Illinois law and this Court's own analysis in previous cases, Plaintiff has sufficiently alleged procedural unconscionability.

### 3.     The Harris Bank Contract Is Substantively Unconscionable.

Substantive unconscionability has been sufficiently alleged because the complaint at issue asserts that the "deposit agreements contained contractual terms regarding overdraft protection that had the purpose and effect of allowing defendants to re-order the posting of debit transactions to maximize the number and amount of overdraft fees to Plaintiffs, and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the

---

[2] Harris Bank claims the overdraft provisions appear on the second page of the agreement, Def. Mem. at 7, but the Bank's page count omits the Deposit Agreement's cover, table of contents, and blank pages.

overdraft service." *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1320; *see also Levey*, 2009 WL 2475222, at *4 (citing *Kinkel,* 857 N.E.2d at 267); *Dubey,* 918 N.E.2d at 276.

Harris Bank's contract is also substantively unconscionable. The analysis of substantive unconscionability requires looking to the terms of the contract and determining whether they "relate[] to situations where a clause or term in a contract is allegedly one-sided or overly harsh." *Dubey,* 918 N.E.2d at 276-77. Harris Bank argues that the practice of ordering debit card transactions from high to low is a "routine banking practice," authorized by the UCC and Illinois law. Def. Mem., p. 9. This Court has previously addressed and dismissed this very argument. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1320 ("Defendants are not entirely correct when they state that high-to-low posting is expressly condoned by the UCC. As discussed in the above section, the provision they rely on, section 4-303(b), applies only to paper checks, not the electronic debits that are the subject of this lawsuit.").

The overdraft fee provisions in the Harris Bank agreement are unreasonably favorable to the bank, and the purpose and effect of those provisions are to negate the reasonable expectations of the customers. AC ¶¶ 32-37. As discussed above, Harris Bank relies on the unconscionable overdraft terms to manipulate transactions so as to wrongfully create fees – excessively large fees that customers *cannot* reasonably avoid, even when exercising due diligence to monitor their account balances and to maintain sufficient funds. AC ¶¶ 38-59, 68, 91-94. No reasonable person would ever have agreed to grant Harris Bank the unfettered power to manipulate checking account transactions for the sole purpose of maximizing its profits at their expense. AC ¶¶ 77-81, 91-94.

Yet another aspect to the substantive unconscionability of the challenged contractual terms is the disparity between the cost and the value of the service rendered on one hand, and, on the other, its price. As alleged, Harris Bank imposes uniform $32 overdraft fees on transactions in which a customer has overdrawn his account. However, the cost to Harris Bank to provide this "service" has *no reasonable relation* to the amount of the overdraft, nor to the actual cost of paying it. AC ¶ 22i. This fact alone dictates the unconscionability claim is plausible and should be sustained. *See, e.g.*, *Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 512-513 (Cal. 1985) (allegations of overdraft fees of $6 deemed sufficient to maintain unconscionability claim).

- 11 -

Harris Bank's reliance on *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602 (Ill. Ct. App. 1996), as support for its argument that the Deposit Agreement is not substantively unconscionable is unavailing.  This Court previously considered the holding in *Saunders* before determining that plaintiffs had sufficiently pled procedural unconscionability in its Order on the Omnibus Motion to Dismiss.  *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319. Distinguishing *Saunders*, in which the bank's overdraft fees were not found unconscionable, this Court stated that the plaintiffs' situation was different, due to the allegations of the "disparity in sophistication and bargaining power between Plaintiffs and Defendants," and that the agreement, drafted and offered on a take-it-or-leave-it basis, with "voluminous boilerplate language." *Id.* Under Illinois law and this Court's own analysis in previous cases, Plaintiff has sufficiently alleged substantive unconscionability.

C.     **Plaintiff Properly States a Claim for Conversion.**

As with the other arguments addressed in this Response, Harris Bank repeats an argument previously addressed and rejected by this Court in the Omnibus Order.  *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1322-23.   This Court should again conclude that a conversion claim has been validly pled as to the funds withdrawn from Plaintiff's account for the overdraft fees imposed.  To state a claim for conversion, a plaintiff must plausibly show: (i) his ownership of *or* right to possess the property at issue, and (ii) a wrongful interference with that right.  *See generally Prosser and Keeton on the Law of Torts* § 15 (5th ed. 1984).   The allegations in Plaintiff's Amended Complaint are more than sufficient to satisfy these elements. First, Plaintiff holds the requisite possessory or ownership rights to the funds in his account, as case law and the Deposit Agreement itself establish.   Second, by alleging that Harris Bank assessed overdraft fees to checking accounts that contained sufficient funds on deposit to cover the debits, Plaintiff has alleged sufficient facts to show Harris Bank's wrongful interference.

1.     **By Taking Funds From Plaintiff's Account, Harris Bank Converted Property Plaintiff Had a Right to Possess**

Unlike other banks in this MDL, Harris Bank does not dispute that Plaintiff had ownership of and the right to possess the funds in her account.  Under Illinois law:

Conversion is an unauthorized act that deprives a person of his property permanently or for an indefinite time. *In re Thebus,* 108 Ill.2d 255, 259, 91 Ill. Dec. 623, 483 N.E.2d 1258 (1985). "The essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object

- 12 -

> unlawfully held." *Bender v. Consol. Mink Ranch, Inc.,* 110 Ill.App.3d 207, 213, 65 Ill. Dec. 801, 441 N.E.2d 1315 (1982). "It must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use. [Citation.]" *In re Thebus,* 108 Ill.2d at 261, 91 Ill. Dec. 623, 483 N.E.2d 1258. To prove the tort of conversion, "a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. [Citation.]" *Cirrincione* [*v. Johnson*]*,* 184 Ill.2d at 114, 234 Ill. Dec. 455, 703 N.E.2d 67 [(Ill. 1998].

*Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463 (Ill. Ct. App. 2004). In addition, Illinois courts recognize a plaintiff's cause of action for conversion against his or her bank. *See Roderick Dev. Inv. Co. v. Community Bank of Edgewater*, 688 N.E.2d 1129 (Ill. Ct. App. 1996); *Tri State Bank of E. Dubuque v. Colby*, 490 N.E.2d 1037 (Ill. Ct. App. 1986). As previously observed by this Court in the Omnibus Order, Plaintiff unquestionably had the right to possess the funds in the bank account, and has alleged that Harris Bank wrongfully took the funds from the account so that Plaintiff was unable to possess and use the funds. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323. Such interference with Plaintiff's property interest constitutes a conversion claim. *Id.* (citing *White*, 563 F. Supp. 2d at 1371, as an example of a conversion claim being available for a bank's wrongful debit of funds from a customer's account).

Plaintiff had an absolute right to possession of the funds on deposit in the bank account. When a customer deposits his or her paycheck into a personal account, the customer retains, at a minimum, the right to possess those funds. Thus, courts recognize that a depositor has an "absolute and unconditional right to immediate possession of the property" in his checking account. *Cruthis*, 822 N.E.2d at 463-64 (affirming a jury finding of a bank's conversion in the form of its wrongful withdrawals of money from the plaintiff's general checking account); *see also Katz v. Belmont Nat'l Bank of Chicago*, 491 N.E.2d 1157, 1159 (Ill. 1986) (stating that a bank could be held liable for conversion for taking funds from a depositor's account, despite the debtor-creditor relationship, because the depositor has the "absolute and unconditional" right to "the immediate possession" of the funds on deposit in his account). As these decisions show, it defies common sense to say that depositors have no right to possess their own money once it has been deposited into their personal bank accounts – especially since depositors have instantaneous access to these funds at ATMs and in POS transactions as well as online.

- 13 -

2.     **Harris Bank's Conduct Was Wrongful Because it Improperly Imposed Overdraft Fees and Took Account Funds**

Plaintiff has alleged a more than adequate nucleus of facts to satisfy the wrongful act requirement of a conversion claim. The essence of the tort is "wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Cruthis*, 822 N.E.2d at 463.

Plaintiff alleges Harris Bank's wrongful conduct in considerable detail. As discussed above, Harris Bank's scheme included reordering transactions to impose the greatest possible number of overdraft fees – even when there are sufficient funds in the account – and batching transactions over multiple days. Where the original assessment of an overdraft is improper, the resultant overdraft fee is also improper. This common sense statement, in fact, derives from a case directly on point. In *White*, the court refused to dismiss the plaintiffs' conversion claim, rejecting Wachovia's reliance on its deposit agreement. 563 F. Supp. 2d at 1371. In finding that the elements of conversion had been satisfied, including the wrongful act element, the court pointed to Wachovia's practice of "impos[ing] Overdraft Fees when there was in fact no overdraft." *Id*. at 1371; *accord*, *First Union Nat'l Bank of Ga. v. Davies-Elliott, Inc.*, 452 S.E.2d 132, 140 (Ga. Ct. App. 1994) (holding that where the bank's improper actions lead to overdrafts, the overdraft fees are also improper and can support a viable claim for conversion); *see also Cruthis*, 822 N.E.2d at 463-64 (affirming a jury verdict of conversion in favor of the depositor where the bank removed funds on deposit in the depositor's general account). This Court has already observed that these cases support the conclusion that a viable cause of action may be asserted against a bank which wrongfully imposes an overdraft fee. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323. The Court should follow suit with regard to Plaintiff's claim against Harris Bank.

In rejecting the First Tranche banks' argument that their deposit agreements prevented a finding of wrongful taking of the plaintiffs' funds, this Court aptly stated:

> First, if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendants may be barred from relying on them. Second, Plaintiffs have pled enough facts to show that, even if the deposit agreements gave Defendants discretion to re-order the debit postings, Defendants exercised that discretion in bad faith by intentionally causing Plaintiffs to incur overdrafts that they would not have otherwise incurred. These allegations could lead a reasonable factfinder to conclude that Defendants acted wrongfully in charging

some of the overdraft fees, thereby converting Plaintiffs' funds.  Thus, the Court cannot dismiss Plaintiffs' claim for conversion.

*In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323.

Harris Bank's argument that *Saunders, supra,* and *Hill, supra,* preclude a finding of unconscionability or bad faith in the instant case is not persuasive.  In *Saunders*, the Illinois Supreme Court rejected a bank customer's claim that the bank's overdraft policy establishing an unconscionably high fee constituted an unfair practice because of "a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish unfairness."  This analysis, however, appears to have been overruled.  *See  Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) ("Although the holding in *Saunders* seems to suggest that all three prongs of the *Sperry* test must be met, that is not an accurate statement of plaintiffs' burden.").  Moreover, the court in *Saunders* based its holding on the facts that the plaintiff had control over whether she would be assessed an overdraft fee and that plaintiff was free to select another bank.  *Saunders*, 662 N.E.2d at 608-09.   The court in *Hill* did not even address the issue of unconscionability.

Unlike the plaintiff in *Saunders*, Plaintiff does not have *any* kind of meaningful choice to select another bank that does not engage in similar unfair conduct.  Indeed, this MDL proceeding is coordinating similar lawsuits against many of the country's largest banks.  Given that these banks make up most of the banking market share in the United States, and that many of the smaller banks that are both part and not yet part of the MDL engage in similar activities, the banking choices available to Plaintiff are hardly meaningful when it comes to avoiding abusive overdraft fee practices.   In addition, both *Saunders* and *Hill* deal solely with paper check transactions not debit transactions, and thus, those cases are inapplicable to the case at bar.  Further, neither *Saunders* nor *Hill* concerns a claim for conversion.

### 3.  Plaintiff Has Satisfied the Demand Requirement of a Conversion Claim Under Illinois Law.

Harris Bank argues that Plaintiff may not pursue a conversion claim because she has failed to make a demand for possession of the wrongfully converted funds in her account.  This argument ignores the fact that the Amended Complaint clearly alleges satisfaction of all conditions precedent, which would include a demand on Harris Bank for the return of the converted funds at issue.  (**DE # 992**, ¶ 82).  Illinois federal courts have held that under Rule 9(c) of the Federal Rules of Civil Procedure, "a general allegation that conditions precedent have

been performed or excused is ordinarily sufficient." *Sara Lee Corp. v. Litton Indus. Automation Sys., Inc.*, No. 91 C 0971, 1992 WL 22693, at *2 (N.D. Ill. Feb 6, 1992); *Redfield v. Cont'l Cas. Co.*, 818 F.2d 596, 610 (7th Cir. 1987); *Bednarick v. Titan Am. LLC*, 2009 WL 1684642, at *2 (S.D. Fla. 2009). This is because Rule 9(c) "imposes a minimal standard for alleging performance of conditions precedent." *Sara Lee Corp.*, 1992 WL 22693, at *2. Thus, under this liberal pleading standard, Plaintiff's allegation in paragraph 82 of the Amended Complaint that all conditions precedent to her conversion claim have occurred satisfies the demand requirement under Illinois law. As such, the conversion claim should survive the Motion to Dismiss.

Discovery will reveal that Plaintiff made specific demands upon Harris Bank for the return of the funds wrongly taken from her account as a result of Harris Bank's reordering scheme. In the event that this Court believes that Rule 9(c) necessitates a more specific allegation of such demand, Plaintiff can easily cure the deficiency through an amendment of the pleading. *4658 N. Ocean Inc. v. Branch Bank and Trust Co.*, 2010 WL 4960088, at *4 (S.D. Fla. Dec. 1, 2010).

      D.    **Plaintiff Properly States a Claim for Unjust Enrichment.**

Harris Bank proffers two reasons as to why Plaintiff's unjust enrichment cause of action purportedly fails, both of which have already been rejected by this Court. First, the Bank contends that there can be no claim for unjust enrichment because there is an express written contract. Just as in the previous cases, Plaintiff concedes that he will not be permitted to recover damages under both claims, but he is permitted to plead in the alternative. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1321 ("The Court agrees with Plaintiff's position. Fed. R. Civ. P. 8(d) allows pleading in the alternative, even if the theories are inconsistent. Defendants have not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that is their contractual claim fails, Plaintiffs may still be entitled to recovery under an unjust enrichment theory.").

Furthermore, the Illinois state court cases cited by Harris Bank which hold that unjust enrichment may not even be pleaded in the alternative when a breach of contract is alleged are inapposite. The question of whether a federal complaint properly states a claim for relief is a question of federal law and the Illinois federal courts specifically hold that breach of contract and unjust enrichment may both be pled as alternative theories. *See Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008) ("As an initial matter, the

Court notes that although we must look to Illinois law to resolve Prudential's claims on the merits, whether the FAC properly states a claim for relief is a question of *federal* law.") (emphasis in original). In *Prudential*, the district court held that pleading under the federal rules is a federal procedural issue, not a matter of state law, and therefore, "a plaintiff may plead claims in the alternative, even if the claims are contradictory." *Id*. (citing Fed. R. Civ. P. 8(d)(3)). The district court further explained that the law is clear that the plaintiff cannot *recover* under both a breach of contract theory and an unjust enrichment theory, and stated that "if this Court determines in subsequent proceedings that an enforceable contract exists between the parties, then [plaintiff's] unjust enrichment claim cannot stand." *Id*. at 624; *see also Cormeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376 (7th Cir. 2003) (holding that a party is allowed to plead breach of contract and unjust enrichment in the alternative, and once a valid contract is found to exist, unjust enrichment is no longer available).

Second, Harris Bank argues that Plaintiff's unjust enrichment claim should be dismissed because the Bank's practices are provided for by the Deposit Agreement and are in accord with Illinois law. Once again, the argument for rejecting Harris Bank's position is simple. First, this Court has already held that the allegations in the Amended Complaint are sufficient to lead a reasonable fact-finder to conclude that it would be unjust for the Bank to retain the benefit of those fees derived from the bad faith resequencing of debit transactions. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1321-22. Second, this Court has already determined that the practices complained of here may violate the duty of good faith and fair dealing. *Id*. at 1316 ("even if the contract confers discretion on the bank to determine the sequence of honoring presentments, the bank must exercise that discretion fairly and cannot exercise it to enrich itself by gouging the consumer") (citing *Gutierrez*, 622 F. Supp. 2d at 951).[3] Third, that the Deposit Agreement discloses the practices is inconsequential because, as this Court has already held, "if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendant may be barred from relying on them." *Id*. at 1323. Finally, this Court has already held that even if the deposit agreement gives Defendant the discretion to re-order the debit postings ("we *may*

---

[3] For the proposition that Illinois law permits a bank to post transactions from high to low, even when its intention is to maximize the number of overdraft charges, Harris Bank cites, yet again, to the already rejected case of *Hill, supra. See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316 (holding that defendants' suggested analysis of applying the UCC's endorsement of high-to-low posting in check transactions to debit transactions does not logically follow).

pay them in any order we choose") (emphasis added), the Bank exercised that discretion in bad faith by intentionally causing Plaintiff to incur overdrafts that she would not have otherwise incurred, and thus acted wrongfully. *Id*. Thus, Plaintiff's claim for unjust enrichment should be sustained.

E.    **Plaintiff Has Properly Alleged a Violation of the Illinois Consumer Fraud and Deceptive Practices Act.**

Harris Bank claims that Plaintiff has failed to allege adequately that it violated the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"). The Bank's argument must be rejected in its entirety. Harris Bank's motion fails to offer any compelling argument for this Court to revisit its prior ruling that the defendant banks' practices are potentially "unfair" under the ICFA and Plaintiff's has properly alleged her ICFA claim.

This Court has already denied a prior challenge to the application of the ICFA to the bank practices alleged here in substantially similar complaints. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1325-28 (denying omnibus motion seeking to dismiss, inter alia, claim for violation of the consumer protection statute of Illinois.) Harris Bank's motion fails to even acknowledge this Court's prior decision in its discussion of the ICFA.

Moreover, Harris Bank's case in chief for the proposition that "Illinois Precedent Rejects Blahut's ICFA Claim" – *Hill v. St. Paul Fed. Bank for Sav.*, 768 N.E.2d 322 (Ill. Ct. App. 2002) – was already the subject of an extensive analysis by this Court. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316. This Court then rejected Hill as being inapplicable to the debit transactions being challenged here. *Id.* at 1315-17.

Harris Bank's citation to *Saunders v. Mich. Ave. Nat'l Bank*, 662 N.E.2d 602 (Ill. Ct. App. 1996), is an even odder choice for an example of "Illinois precedent" that would supposedly bar Plaintiff's ICFA claim. Harris Bank claims that Saunders makes it "impossible to deem Harris' use of a high-to-low posting order an 'unfair practice' under the ICFA." *See* Def. Mem., p. 11. Yet, numerous courts have found that the Saunders court's view of unfairness under the ICFA was specifically rejected by the Illinois Supreme Court in the seminal case of *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). *E.g., Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1025-26 (N.D. Ill. 2007). In any event, in declining to dismiss the ICFA claims in the decision denying the Omnibus Motion to Dismiss, this Court

already specifically found that the defendant banks' practices are potentially "unfair" under the ICFA.  *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1325-26.

The remainder of Harris Bank's arguments for dismissal of the ICFA claim rests on the suspect proposition that Plaintiff's 35-page complaint "fails to state with particularity the circumstances constituting fraud."  Yet, the Amended Complaint alleges that Harris Bank failed to disclose that customers had the option to "opt out" of the overdraft scheme (AC ¶ 67(a)) and that it always reorders debit card transactions from high-to-low.  AC ¶ 67(f).  The AC also describes in great detail the Bank's undisclosed and deliberate policy and practice of re-sequencing debit purchases from largest to smallest. AC ¶¶ 38-59.  Such allegations are sufficiently particular as to satisfy Federal Rule 9(b) on an ICFA claim founded on an omission:

> An ICFA claim is a species of fraud, and must accordingly be pled with particularity that satisfies Rule 9(b) . . . .  To plead fraud with particularity, a plaintiff must provide the "who, what, when, where, and how" of his claim . . . . Muehlbauer's allegations are sufficient in this regard. He has alleged that defendant failed to disclose that the vehicles were defective, and the defect, which should have been disclosed, is described with great specificity. He also alleges that defendant became aware of the defect as early as January 1999, which was 18 months before he bought his truck. Finally, Muehlbauer alleges that the defendant accomplished the fraud by not disclosing the alleged defect.

*Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 869-70 (N.D. Ill. 2006) (citations omitted).   There is no basis for Harris Bank's contention that the AC fails to sufficiently particularize its ICFA allegations under Rule 9(b).

### F.     Harris Bank May Not Escape Liability for Its Own Purposeful Wrongful Acts by Relying on the Voluntary Payment Doctrine.

Harris Bank incorrectly raises the Voluntary Payment Doctrine (the "Doctrine") as a basis to dismiss the Amended Complaint, arguing that the Doctrine bars recovery by Plaintiff under Illinois law.  Def. Mem., pp. 15-16.  Under Illinois law, to maintain an action for the recovery of a prior payment made, a party who wishes to challenge the validity or legality of a bill for payment has the obligation to make the challenge either before or at the time of voluntarily making payment.  *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325, 1330 (Ill. Ct. App. 1995).

An understanding of the Doctrine and its intended application reveals that under the facts plead in the Amended Complaint the Doctrine has no application here because there was no voluntary payment.  Additionally, the issue of whether a voluntary payment was made so as to

bar recovery is inherently factual and thus premature when raised in a Rule 12(b)(6) motion. Further, the very issue presented here – whether a bank customer is barred from pursuing a claim for repayment of overdraft fees when the customer did not object at the time the overdraft fees were withdrawn – has already been rejected when raised by a bank in this MDL in a previous and factually similar case. *See Gutierrez*, 622 F. Supp. 2d at 955-956 ("explaining that the Doctrine was inapplicable for reasons including that "the record does not support a finding that the plaintiffs understood Wells Fargo's overdraft policies," and plaintiffs did not "explicitly consent[] based on an arguably inadequate disclosure regarding the challenged re-sequencing practice in the consumer account agreement.").

Moreover, the Doctrine does not apply in instances where the plaintiff can show that when making payment: (a) it was without full knowledge of all the facts; (b) it supposed the facts to be otherwise (mistake of fact); (c) it was done "involuntarily"; or (d) the defendant committed some fraud. *Smith*, 658 N.E.2d at 1330-31. In addition, courts preclude voluntary payment as a defense where a plaintiff has sued under a state consumer protection statute. *E.g.*, *Scott v. Fairbanks Capital*, 284 F. Supp. 2d 880 (S.D. Ohio 2003). In this case, the Doctrine should provide no defense because as alleged in the Amended Complaint, the payments were not made voluntarily, or if they were, were made without full knowledge of the facts, which included improper fees assessed after violations of states consumer protection statutes. In fact, Plaintiff contends that the withdrawal of funds from their account to cover a fee imposed by Harris Bank is not in fact a "payment" to which the Doctrine would apply. Payments contemplate an affirmative act on the part of the payor.

1.    **The Payments Were Made Involuntarily.**

An involuntary payment is one not proceeding from choice. *66 Am. Jur. § 112* (2001). Payments that are made by virtue of legal obligation or by accident or mistake are inherently involuntary. *Id.* If the payment was made as a result of compulsion or duress, it is stripped of its voluntary character. *Arra v. First State Bank & Trust Co. of Franklin Park,* 621 N.E.2d 128, 131-32 (1993). Compulsion is interpreted broadly to include circumstances involving both the person and his business. *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663 (7th Cir. 2001). Compulsion is a viable defense even without a protest against payment. *Smith*, 658 N.E.2d at 1330-31. It is well-established that the issues of duress and compulsory payment ordinarily are

factual, to be judged in light of all circumstances surrounding a transaction. *Randazzo*, 262 F.3d at 668.

This case is entirely different from cases where a plaintiff affirmatively makes a payment to a defendant and then files suit to recover the same. Here, Plaintiff did not voluntarily pay the overdraft fees. Harris Bank unilaterally decided, without any prior notice or opportunity to object or protest, to withdraw money from Plaintiff's account. The fact that the Deposit Agreement may allow the bank to withdraw funds for fees owed does not give Harris Bank *carte blanche* to withdraw funds or even to call the withdrawals "payments." The funds were taken from the Plaintiff, not paid by her. The overdraft charges were not "caused by" the Plaintiff, but were caused by the Bank itself. Thus, Harris Bank's withdrawals from Plaintiff's account were not even "payments" in the first place.

Plaintiff should have the opportunity to pursue facts demonstrating involuntariness as the product of Harris Bank's compulsion or duress. Failure to pay an overdraft fee may result in the Plaintiff owing Harris Bank additional fees, and likely results in the freezing or closure of the customer's account, reporting of a negative history to credit reporting agencies, collection efforts by the bank, and the bank's reporting of the delinquency to the other banks in its network which may impact that customer's ability to open an account at other banks in the future. Denying access to a person's account causes disruption of automatic payments that flow in and out of the account and limits access to money to pay for essentials including food or household related expenses. One could hardly say that payment under these circumstances is voluntary. Harris Bank's assertion that the Plaintiff could have simply "walked away from her account without paying overdraft fees" – Def. Mem., pp. 15-16 – is absurd and would have resulted in a collection action against the Plaintiff. The same arguments were accepted by Judge Alsup when he denied Wells Fargo's motion for summary judgment in *Gutierrez*.[4] This issue is inherently fact driven, making it in appropriate for resolution in the context of a Rule 12(b)(6) motion.

---

[4] Courts have found that similar circumstances of stress justify abrogation of the voluntary payment doctrine. In the case of mortgage closings, borrowers have little or no choice to accept or reject fees, lest they risk losing their house. *Negrin v. Norwest Mortgage, Inc.,* 263 A.D.2d 39, 50 (2d Dep't 1999) (rejecting voluntary payment doctrine in respect to unlawful fees imposed by a mortgage lender at a loan closing since in truth, in such transactions, borrowers have little, if any, real choice to challenge standard fees); *Dougherty v. North Fork Bank,* 301 A.D.2d 491 (2d Dep't 2003) (rejecting voluntary payment doctrine regarding unlawful fees charged by lender).

## 2.      Plaintiff Was Without Full Knowledge of the Facts

Plaintiff alleges in her Amended Complaint that she lacked knowledge of the relevant facts.  AC ¶¶ 38-58.  Money voluntarily paid under a claim of right by one who has knowledge of the relevant facts cannot be recovered by the payor on the ground that the claim was illegal. *Halstead Terrace Nursing Ctr., Inc. v. Scottsdale Ins. Co.,* 1997 WL 124263, at *3 (N.D. Ill. Mar. 17, 1997).  The key words are "knowledge of the relevant facts."

Here, the relevant allegations are that Harris Bank was intentionally posting debit transactions on or after the days in which the transactions were made, in a manner undeterminable and unpredictable by the Plaintiff, and then re-ordering them from high to low to intentionally cause the Plaintiff's funds to deplete as quickly as possible, resulting in greater overdrafts. *Id*.  Had Plaintiff been aware that Harris Bank's re-ordering scheme was what caused Plaintiff's account to overdraw more times than if the debit transactions had been processed chronologically, including knowledge of the precise manner in which the number of fees was assessed, Plaintiff would have had the requisite full knowledge at the time the payments were withdrawn from her account.  Without being armed with that information, Plaintiff did not know to object at the time her funds were withdrawn from her account.  As explained above, the Plaintiff in the case at bar alleges that Harris Bank purposefully manipulated Plaintiff's account to create additional overdraft charges without notifying Plaintiff in advance of or at the time the overdraft charges were imposed how it sequenced debits.  Thus, Plaintiff did not possess full knowledge of what that method was, nor could they ever from that which was supplied to them by the Harris Bank.

## 3.      The Doctrine Does Not Preclude Consumer Protection Claims.

Finally, this Court should recognize that the Doctrine does not apply to Plaintiff's claims for violation of various consumer protection statutes.  It would defy logic to conclude that state consumer protection statutes are only available to consumers who challenges the unlawful or deceptive business practices in court prior to paying, thereby precluding claims by consumers who had made a payment as a result of an unlawful obligation imposed by the payee that was discovered to be unlawful after payment was made.   This was the precise holding in *Scott v. Fairbanks Capital,* 284 F. Supp. 2d 880 (S.D. Ohio 2003), wherein the Doctrine was held to be inapplicable to a putative class action against a lender for violation of the Fair Debt Credit Practices Act for consumers that did not protest fees found to be unlawful until after they were

paid and once a lawsuit filed.  *See also Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218 (D. Nev. 2010); *Gonzalez v. Codilis & Assoc., P.C.*, 2004 WL 719264 (N.D. Ill. Mar. 31, 2004).

Courts have rejected the Doctrine as violative of public policy.  For example, in *Ramirez v. Smart Corp.*, 863 N.E.2d 800 (Ill. Ct. App. 2007), the court rejected the Doctrine stating: "[T]his state has an interest in transactions that violate statutorily-defined public policy."  *See also Pratt v. Smart Corp.*, 968 S.W.2d 868, 872 (Tenn. Ct. App. 1997) ("[T]he State has an interest in transactions that involve violations of statutorily defined public policy, and generally speaking, in such situations, the voluntary payment rule will not be applicable.").  This Court should reach a similar conclusion that it would be against the public policies of the state of Illinois to apply the Doctrine in the case at bar.  To allow Harris Bank here to claim voluntary payment to avoid liability for its unfair practices under the consumer protection statutes would nullify the protections of those statutes and be contrary to the intent of the legislatures that enacted them.  Accordingly, this Court should deny Harris Bank's motion to dismiss on this ground.

### G.   Harris Bank May Not Escape Liability for Its Own Purposeful Wrongful Acts by Relying on the Provision of Its Deposit Agreement Requiring Notice by the Depositor of Errors or Unauthorized Endorsements Within 60 Days.

In a last attempt to escape liability for its practice of reordering overdraft transactions, Harris Bank asserts that the provision of its deposit agreement designed to provide it with the opportunity to investigate errors or unauthorized charges on deposit accounts is applicable to its own deliberate actions in wrongfully assessing overdraft charges.  Harris Bank's assertion of the notice provisions relating to "improper charges" as somehow encompassing overdraft fees assessed pursuant to its intentional wrongful practice of always reordering transactions from high to low is too clever by half.  In order for the literal terms of the notice requirement to apply to this dispute, the overdrafts charges caused by the reordering of debit card transactions by Harris Bank would have to be manifestly (i.e unmistakably, obviously, or plainly) "improper" in order for the depositor to identify them and then provide notice to the Bank within 60 days.  For Harris Bank, the only way the argument would work would be if the Bank admitted that the overdraft charges were improper in the first place.  That would, of course, be completely at odds with Harris Bank's position in this litigation to the effect that there was nothing improper about debit charges arising from its reposting of transactions from high to low.  Def. Mem., pp. 3-13.  This contradictory and self-defeating argument must be rejected.

In any event, the complete provision demonstrates that it is concerned only with depositors providing notice to Harris Bank of good-faith errors committed by Harris Bank and the fraudulent acts of third-parties, not the Bank's own purposeful actions of which it was obviously already on notice:

> . . . You must also notify us of any other account problem, including an erroneous statement entry, unauthorized or missing endorsement, or improper charges within 60 days of the date we send or make your statement available to you.
>
> We shall not be liable for errors, irregularities, unauthorized signatures, or alterations unless you have given us the required notice. . . .

AC, Ex. A at 9.  The second paragraph makes clear the sole purpose of the provision to which Harris Bank cites—to provide the bank with notice of its own good-faith errors and fraud by third-parties.  The provision is not intended nor should it be read to require a depositor to lodge a claim with Harris Bank arising from its own deliberately adopted internal policies.

Harris Bank's authorities do not support a contrary reading of the provision of the Deposit Agreement.  *Reliance Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, No. 99 C 3366, 2001 WL 62597 (N.D. Ill. Jan. 25, 2001) (Def. Mem., p. 16) is a case concerning a bank's liability for cashing forged checks under an account agreement which required notice to the bank of "unauthorized charges" within 30 days.  *Reliance* has nothing to do with the bank imposing charges on depositors as a consequence of the bank's own purposeful wrongful acts.

Moreover, fundamental Illinois law rules of contract construction compel a reading of the Deposit Agreement which is contrary to Harris Bank's.  First, because the provision in question fails to explicitly include charges deliberately assessed by the Bank in contrast to those that are merely "improper" among the list of statement entries of which a depositor must notify it, the maxim of interpretation *expressio unius est exclusio alterius* is applicable.  *See Petrilli v. Dreschsel*, 910 F.2d 1441, 1447 (7th Cir. 1990).  This maxim holds that when specific items are listed in a contract without any more general or inclusive terms, other items, although similar in kind are excluded.  *Dugan v. Smerwick Sewerage Co.*, 1996 WL 535306 (N.D. Ill. Sept. 18, 1996), *aff'd*, 142 F.3d 398 (7th Cir. 1998).  Because the provision in question lists specific items that must be reported to the Bank within 60 days, the failure of Harris to include improper charges deliberately assessed by the Bank means Plaintiff was not required to provide notice within 30 days.

Even if the Court were unwilling to apply the maxim of *expressio unius est exclusio alterius*, the provision in question would still be ambiguous as to whether it was meant to encompass intentional wrongful charges by Harris Bank against the depositor.  Faced with this ambiguity, this Court should apply the Illinois law rule of *contra proferentem* in determining the effect of the Deposit Agreement and find the provision should be limited to "errors, irregularities, unauthorized signatures, or alterations" limited view of provision's effect.  The rule of *contra proferentem* dictates that ambiguities in a contract be construed against the drafter. *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 306 (7th Cir. 1992).  Accordingly, this provision should be construed against Harris Bank as drafter of the Deposit Agreement. Therefore, the Bank's failure to specify that the provision in question was intended to encompass its own deliberate wrongful charges, results in the provision being inapplicable to this dispute. Harris Bank's reliance on the provision of the deposit agreement intended to provide it with notice of its mistakes and the acts of others should be rejected as a defense to claims arising from the Bank's reordering of debit card transactions in order to maximize overdraft fees.

Harris Bank argues in a footnote that the same provision's language requiring an action to be commenced against Harris Bank within one year of the date the account statement is made available should similarly bar Plaintiff's claims.  Again, as explained above, the plain language of the provision indicates that it is only applicable to claims arising from "error, irregularity, unauthorized signature, or alteration" (AC, Ex. A at 9) and is not meant to encompass claims arising from the Bank's own deliberate conduct.

IV.     **CONCLUSION**

For all of the reasons set forth above, the Harris Bank's motion to dismiss should be denied.  Should the Court determine that any of Plaintiff's claims are subject to dismissal, Plaintiff respectfully requests leave to replead such claims pursuant to Rule 15.

Dated: February 22, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@alterslaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271


/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008


/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2011, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record or pro se parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel:  305-442-8666
Fax:  305-779-9596