**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

---

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**

*Casayuran, et al. v. PNC Bank, National
Association*
S.D. FL. Case No. 10-cv-20496-JLK

*Cowen, et al. v. PNC Bank, National
Association*
S.D. FL. Case No. 10-cv-21869-JLK

*Hernandez, et al. v. PNC Bank, N.A.*
S.D. FL. Case No. 10-cv-21868-JLK

*Matos v. National City Bank* :
S.D. FL. Case No. 10-cv-21771-JLK

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS PNC BANK, N.A.'S
AND NATIONAL CITY BANK'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.    INTRODUCTION…………………………………………………………………1

II.   STATEMENT OF FACTS………………….....…….....…………………………3

III.  ARGUMENT………………………………………………………....................4

    A. *Hassler* Is a Non-Precedential and Non-Binding
       Decision That Does Not Control Any of the Claims
       in This Case…………….……………………………………………………4

    B. *Hassler* Is Inapplicable to the Facts of This Case……………………………5

         1.  The Terms of the PNC Agreement Are Materially Different
            From the Terms of the Sovereign Bank Agreement at Issue
            in *Hassler*…………………………………………………………5

                a.  PNC's Account Agreement Does Not Provide
                   for Debit Holds…………….……………………………………7

                b.  PNC's Account Agreement Leaves Open
                   the Possibility that Overdraft Fees Will Not
                   Be Charged for Overdrafts…………………………….................8

         2.  Plaintiffs Allege PNC Failed to Notify Plaintiffs of
            Their Right to Opt-Out of Overdraft Protection……………………….....9

    C. Plaintiff Casyuran's New Jersey Claims Are Supported by the
       Requisite Misconduct to Support Each of Those Claims………………………10

         1.  New Jersey Consumer Fraud Act……………………………………10

         2.  Breach of Implied Duty of Good Faith and Fair Dealing………………10

         3.  Unjust Enrichment……………………………………………………11

         4.  Unconscionability and Conversion……………..……………………12

    D. *Hassler* Does Not Control Claims Asserted by the
       Pennsylvania Plaintiffs………………………………………………...............13

         1.  Pennsylvania Unfair Trade Practices and
            Consumer Protection Law……………………………………………13

         2.  Breach of Implied Duty of Good Faith and Fair Dealing………………14

            3.   Unjust Enrichment……………………………………………………17

            4.   Unconscionability and Conversion……………………………………18

        E.   Plaintiffs' State Law Claims Are Not Preempted…………..………….............18

IV.     CONCLUSION …………………………………….........................................19

## <u>TABLE OF AUTHORITIES</u>

## <u>FEDERAL COURT DECISIONS</u>

*Page*

*Abels v. JPMorgan Chase Bank, N.A.*
   678 F. Supp. 2d 1273 (S.D. Fla. 2009)……………………………………………………9

*Archway Ins. Services, LLC v. James River Ins. Co.*
   2010 WL 3719083 (E.D. Pa. Sept. 21, 2010)……...........…………………………………17

*Benchmark Group, Inc. v. Penn Tank Lines, Inc.*
   612 F. Supp. 2d 562 (E.D. Pa. 2009)……………………………...……………………16

*Cliff v. Payco Gen. Amer. Credits, Inc.*
   363 F.3d 1113 (11th Cir. 2004)…………………………………………..………………2

*Coleman v. Albertson's Inc.*
   2005 WL 1041190 (E.D. Pa. May 4, 2005)…………………………………………………5

*Cox v. CSX Intermodal, Inc.*
   732 So. 2d 1092 (Fla. Dist. Ct. App. 1999)…………………………………………………9

*Curley v. Allstate Ins. Co.*
   289 F.Supp.2d 614 (E.D. Pa. 2003)……………………………………….....................15

*Fallon Elec. Co. v. Cincinnati Ins. Co.*
   121 F.3d 125 (3d Cir. 1997)……………………………………………………………...5

*Garcia v. Attorney General of the U.S.*
   553 F.3d 724 (3d Cir. 2009)………………………………………………………………5

*Gutierrez v. Wells Fargo & Co.*
   622 F. Supp. 2d 946 (N.D. Cal. 2009)……………………………………………………12, 18

*Hassler v. Sovereign Bank*
   644 F. Supp. 2d 509 (D. N.J. 2009)………………………………..........................*passim*

*Hassler v. Sovereign Bank*
   374 Fed. Appx. 341 (3d Cir. Mar. 15, 2010).................................................*passim*

*In re Checking Account Overdraft Litig.*
   694 F. Supp. 2d 1302 (S.D. Fla. 2010)…………………….....................................*passim*

*In re Schaefer Salt Recovery, Inc.*
   542 F.3d 90 (3d Cir. 2008)………………………………………………..………………5

*Jamison v. Klem*
    544 F.3d 266 (3d Cir. 2008)……………………………………….…………………5

*Lyon Fin. Servs. v. Woodlake Imaging, LLC*
    Civ. A. No. 04-3334, 2005 WL 331695 (E.D. Pa. Feb. 9, 2005)…….....…….…….……15

*Masterson v. Federal Express Corp.*
    2008 U.S. Dist. LEXIS 76054 (M.D. Pa. Sept. 26, 2008)………………………………17

*Northview Motors, Inc. v. Chrysler Motors Corp.*
    227 F.3d 78 (3d Cir.2000)…………………………..……………………………………15

*Perlberger v. Perlberger*
    1998 WL 472657 (E.D. Pa. Aug. 13, 1998)………..……………………………….…..5

*Ready & Motivated Minds, LLC v. Ceridian Corp.*
    2010 WL 2989986 (D.N.J. July 26, 2010)……………………………………………11

*Seal v. Riverside Fed. Sav. Bank*
    825 F. Supp. 686 (E.D. Pa. 1993)………………….……………………………………15

*Sheinman Provisions, Inc. v. National Deli, LLC*
    Civ. A. No. 08-453, 2008 WL 2758029 (E.D. Pa. Jul. 15, 2008)………………………..16

*Temple Univ. Hosp., Inc. v. Group Health, Inc.*
    Civ. A. No. 05-102, 2006 WL 146426 (E.D. Pa. Jan. 12, 2006)…………………...……15

*USX Corp. v. Prime Leasing Inc.*
    988 F.2d 433 (3d Cir. 1993)…………………………………….......................……15

*White v. Wachovia Bank, N.A.*
    563 F. Supp. 2d 1358 (N.D. Ga. 2008)………………………………………13, 16

## STATE COURT DECISIONS

*Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.*
    560 A.2d 151 (Pa. Super. Ct. 1989)………………………………………14, 16

*Heritage Surveyors & Eng'rs, Inc. v. National Penn Bank*
    801 A.2d 1248 (Pa. Super. 2002)……………………………..……………………16

*Hutchison v. Sunbeam Coal Corp.*
    513 Pa. 192, 519 A.2d 385 (1986)……………………………..……………….…15

*Liazis v. Kosta, Inc.*
   618 A.2d 450 (Pa. Super. Ct. 1992)………………………………………....………15

*Somers v. Somers*
   613 A.2d 1211 (Pa. Super. Ct. 1992)…………………………….…….…..……………15

*Wilson v. Amerada Hess Corp.*
   773 A.2d 1121 (N.J. 2001)………………………………………….........................10

## STATUTES

N.J.S.A. 56:8-2………………………………………………………………………..10

73 P.S. § 201-1 et seq………………………………………………………..….……13

73 P.S. § 201-2(4)(v)…………………………………………………………………14

73 P.S. § 201-2(4)(xiv)………………………………………………………………14

73 P.S. §201-2(4)(xxi)………………………………………………………………14

## RULES

Fed.R.Civ.P. 8(d)……………………………………………………………….. 17

Fed.R.Civ.P. 12(b)(6)…………………………………………….. ………2, 4

Third Circuit Court of Appeals Internal Operating Procedure 5.7 ("IOP 5.7")………...............4, 5

## OTHER SOURCES

RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a …….…………………………15

RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. d………………….……..…15

Plaintiffs submit this response in opposition to Defendants', PNC Bank, N.A.'s and National City's (collectively "PNC") Motion to Dismiss [**DE # 1071**] ("Response").[1] Plaintiffs seek to recover, for themselves and all other customers similarly situated, excess overdraft fees generated and retained through PNC's unlawful practices including, among other things, its manipulation and reordering of debit transactions from largest to smallest in order to maximize the overdraft fees it charged its customers. PNC seeks dismissal of some of Plaintiffs' claims based, in large part, on arguments this Court has already rejected in ruling on the First and Third Tranche banks' motions to dismiss. As demonstrated below, PNC's arguments are without merit and its motion to dismiss should be denied in its entirety.

I.     INTRODUCTION

In this coordinated, multidistrict litigation, the Court has already upheld substantially identical claims against a number of other banks. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010). PNC has provided no meaningful reason why the claims pleaded against it should not be treated the same way. Before addressing the substance of PNC's arguments, Plaintiffs note that PNC's motion only addresses New Jersey and Pennsylvania law, but collectively the claims that are the subject of the Consolidated Amended Complaint ("CAC") are brought under the laws of Ohio, Michigan, and Illinois as well. Having failed to make any argument regarding the laws of these latter three states, this Court must conclude that the motion to dismiss does not seek dismissal of any of the claims brought pursuant to Ohio, Michigan, or Illinois law by individuals who were customers of National City. For this reason, Plaintiffs do not provide arguments herein regarding those states' laws. In addition, there is no attack on the claims filed for National City customers, which implicate National City's deposit agreement attached to the CAC as Exhibit B. Therefore, all such claims should be deemed to survive the Motion.

Limiting its arguments to New Jersey and Pennsylvania law, PNC incorrectly argues that the recent Third Circuit unpublished decision, *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341 (3d Cir. Mar. 15, 2010) ("*Hassler II*"), which affirmed the New Jersey federal district court's

---

[1] Plaintiffs are Virgilio S. Casayuran, Jr. (New Jersey), Michael D. and Nicole Cowen (Pennsylvania), Eric and Monica DeRosia (Michigan), Michael and April (Edelman) Dorney (Pennsylvania), Fernando Hernandez (Illinois), Raymond A. Langford (Ohio), and Robert A. Matos (Illinois). Only the claims of Plaintiffs, Casayuran, Cowen, and Dorney are at issue in the motion.

order dismissing a complaint, *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509 (D. N.J. 2009) (*"Hassler I"*), should control the outcome in this case. As Plaintiffs discuss below, and this Court has previously recognized in this MDL, *Hassler II* is a non-precedential opinion that carries no weight in this Court. Nonetheless, the facts in *Hassler I*, including the deposit agreement at issue there, are demonstratively different from the facts at issue here such that all of the New Jersey law based claims being pursued by Plaintiff, Virgilio S. Casayuran, Jr., should proceed. PNC also makes arguments as to why Pennsylvania law governing breach of the implied duty of good faith and fair dealing, unjust enrichment, the Pennsylvania Unfair Trade Practices and Consumer Protection, unconscionability, and conversion prevent Plaintiffs, Michael D. and Nicole Cowen and Michael and April (Edelman) Dorney, from pursuing such claims against PNC. Those arguments are equally unavailing, having been previously rejected by this Court and being premised on *Hassler I and II*. Pennsylvania law permits the claims alleged in the CAC. Finally, PNC makes a half-hearted effort to raise federal preemption as a basis for dismissing the CAC. Having merely incorporated the arguments of other bank defendants, this argument should be summarily rejected.[2]

PNC inappropriately latches to the proposed class definition in the CAC suggesting that Plaintiffs' use of the term "re-sequencing in the class definitions" should eliminate consideration of all of the wrongs alleged in the CAC. *See* Defendants' Memorandum, p. 3 ("Def. Mem."). Simply put, Defendant is wrong for two reasons. Plaintiffs are not forever bound by the language used to describe the classes in their pleading. Class definitions get hashed out with formality at the class certification stage. *See Cliff v. Payco Gen. Amer. Credits, Inc.*, 363 F.3d 1113, 1133 (11th Cir. 2004) (permitting amendment to class definition on remand). Also, "re-sequencing" at issue in this case involves the wrongful debit holds that PNC has historically placed on its account holders debit transactions and other improper acts taken by PNC in failing to provide current available balance information to customers. Therefore, Plaintiffs disagree that the CAC gives PNC the right to limit its Federal Rule of Civil Procedure 12(b)(6) argument. PNC's choice of not addressing all of the wrongful conduct alleged no doubt foretells that it has no good response to the allegations of wrongful conduct on which Plaintiffs base their claims.

---

[2] Plaintiffs incorporate the oppositions filed by other bank Plaintiffs in their responses to motions to dismiss raising the preemption argument.

This is buttressed by PNC's decision to solely argue that *Hassler II* mandates the conclusion that PNC as a matter of law did nothing wrong.

## II.   STATEMENT OF FACTS

Plaintiffs, Casayuran, Cowen, and Dorney, and members of the classes they represent, maintain or maintained a checking account with PNC, the terms for which were contained in standardized account holder agreements (the "Account Agreement").  CAC ¶ 40.  The terms relating to the reordering are hidden in the Account Agreement's dense, small type, boilerplate provisions.  *Id.*  The Account Contract and the related documents are unconscionable contracts of adhesion.

The Account Agreement contains discretionary language regarding PNC's reordering practices, such as "[i]f there are sufficient funds to cover some but not all of your withdrawal orders, we [PNC] will exercise our discretion (i) in paying some but not all of the items, and (ii) to pay the items in any order."  CAC ¶ 42.  Additionally, the Account Agreement states "[i]n exercising that discretion to pay in any order, we do not necessarily process items in the order in which we receive them."  *Id.*  PNC's Account Agreement is ineffective, ambiguous, unfair, and deceptive because it does not unambiguously state that PNC *always* reorders debits from high-to-low regardless of the amounts involved – even though PNC *does always* reorder transactions in this manner to maximize overdrafts and overdraft fee revenues for itself at the consumers' expense.  CAC ¶¶ 47, 51-53.

PNC abused the discretion afforded under its Account Agreement to systematically maximize overdraft fees which PNC unilaterally deducted from its customers' accounts and paid to itself.  To carry out this scheme, PNC manipulated customer transactions records, causing funds in customer accounts to be depleted more rapidly, resulting in more overdrafts and, hence, more overdraft fees.  In fact, overdraft fees were charged at times when, but for the banks' manipulation, there would be sufficient funds in customer accounts to cover the debits.

Further, PNC does not: (i) disclose to customers that they may "opt out" of PNC's overdraft scheme; (ii) provide an opportunity to cancel the debit transaction before incurring an overdraft fee; or (iii) obtain affirmative consent from customers prior to processing transactions that will overdraw their accounts and result in overdraft fees.  CAC ¶¶ 59-60.  PNC also engages in deceptive and manipulative practices, in addition to those described above, to cloak accurate information regarding customer balances.  CAC ¶¶ 55-58.  Its overdraft policies and practices

and the reordering provisions of its Account Agreement are procedurally and substantively unconscionable.  CAC ¶¶ 93.   As a direct consequence of PNC's unlawful conduct, Plaintiffs have suffered damages.  CAC ¶¶ 94-112.

## III.   ARGUMENT

### A.   *Hassler* Is a Non-Precedential and Non-Binding Decision That Does Not Control Any of the Claims in This Case.

Based on the limited nature of its motion, PNC's argument rises and falls on whether the Third Circuit's recent decision in *Hassler II* should be applied at the motion to dismiss stage in this case.   In the context of Third Tranche defendant banks' motions to dismiss, this Court outright rejected those defendants' invitation to conclude that *Hassler II* controlled or was persuasive enough to warrant dismissal of the complaints filed against them.   *See* Order On November 4, 2010 Status Conference [**DE # 934**].   PNC quotes the Court's justification for previously denying motions to dismiss based on *Hassler I and II* (Def. Mem., pp. 7-8 [**DE # 1071**]), which reflects this Court's view that plaintiff accountholders should be given the opportunity to develop facts supporting the actions and motivations of the defendant banks that have charged overdraft fees as a result of reordering activities.   The fact that New Jersey law is at issue for a sub-class of PNC's accountholders does not change this Court's original determination that plausible causes of action have been alleged.   As discussed below, materially different account terms in PNC's Account Agreement, attached to the CAC as Exhibit A, and the fact that additional causes of action have been asserted that were not raised in *Hassler I*, warrant denial of PNC's Motion.[3]

The opinion in *Hassler II* plainly states that it was not selected for publication and is covered by the Third Circuit Court of Appeals Internal Operating Procedure 5.7 ("IOP 5.7"), which provides:

> The court by tradition does not cite to its not precedential opinions as authority. Such opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing.

The Third Circuit explained the significance of this rule:   "We have steadfastly attempted to discourage District Courts as well as attorneys from relying on nonprecedential opinions of this

---

[3] This Court's comments in the context of recent discovery rulings regarding the significance of the terms of the account agreements (Def. Mem., pp. 8-9) does not indicate that this Court would or should be inclined to vary from its consistent rejection of efforts to apply *Hassler I and II* to dismiss complaints against defendant banks in this MDL pursuant to Rule 12(b)(6).

Court." *Jamison v. Klem*, 544 F.3d 266, 278 n. 11 (3d Cir. 2008) (citing IOP 5.7); *see also Garcia v. Attorney General of the U.S.,* 553 F.3d 724, 728 (3d Cir. 2009) ("We are not bound by our nonprecedential opinions."); *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90 (3d Cir. 2008) (refusing to cite an unpublished opinion as authority and rejecting appellees' argument that the unpublished case "controls"); *Fallon Elec. Co. v. Cincinnati Ins. Co.*, 121 F.3d 125, 128 n.1 (3d Cir. 1997) ("[t]he Court does not regard such [unpublished] opinions as binding precedent."); *Coleman v. Albertson's Inc.*, 2005 WL 1041190, at *2 n.2 (E.D. Pa. May 4, 2005) ("Although [the nonprecedential decision] is directly on point, the courts of this circuit give no authority to non-precedential opinions."); *Perlberger v. Perlberger*, 1998 WL 472657, at *4 (E.D. Pa. Aug. 13, 1998) (finding defendants' reliance on an unpublished opinion "not binding precedent on this Court"). No doubt there are cases in every district court and appellate circuit where unpublished decisions have been used as persuasive authority for later rulings, but in the case at bar, Plaintiffs should be permitted to pursue their claims against PNC, who will not be barred from attempting to have Plaintiffs' claims be dismissed in the context of some future summary judgment motion.

    **B.**    *Hassler* **Is Inapplicable to the Facts of This Case.**

    **1.**    **The Terms of the PNC Agreement Are Materially Different From the Terms of the Sovereign Bank Agreement at Issue in** *Hassler.*

    PNC argues that the Account Agreement is materially identical to the Sovereign Bank agreement at issue in *Hassler I*.[4] *See* Def. Mem., pp. 13-15. PNC is wrong. Recognizing distinctions between the PNC Account Agreement and the account agreement at issue in *Hassler I*, this Court should conclude that verbiage in the PNC Account Agreement justifies treatment similar to other cases in this MDL where this Court rejected the application of *Hassler II* in denying motions to dismiss.

    PNC completely ignores the material differences between its Account Agreement and Sovereign Bank's agreement. First, while PNC tries – at length – to make its agreement akin to the one at issue in *Hassler I*, the bank conveniently omits perhaps the most important difference between the two agreements. As the Third Circuit noted in *Hassler II*, the account agreement at issue explicitly told its customers that its re-ordering policy "means, for example, that your $900 mortgage payment *will* be paid before the $100 purchase you made at the supermarket." 374 Fed. Appx. at 344 (emphasis added). Thus, while the agreement in *Hassler I* contained some

---

[4] The Account Agreement is attached as Exhibit A to the CAC as a representative copy.

discretionary language, the agreement informed its customers that larger items would be paid first.  In contrast, PNC does not provide customers with such information, but rather only that it "[does] not necessarily process items in the order in which we receive them."  CAC ¶ 42.  PNC's attempt to obscure this difference must not be overlooked.

Second, if Sovereign Bank's agreement is to be read as clearly indicating that every transaction will be posted on the same business day that Sovereign Bank received notice of the debit transaction, PNC's Account Agreement is ambiguous as to whether this will be the case for its accountholders.  In the various cases in this MDL, and as pled in the CAC, this Court has been advised of the problems associated with debit holds, which involves banks holding debit transactions for multiple days and which has the banks' intended effect of increasing the opportunity for and likelihood of imposing overdraft charges.  CAC ¶ 51.  Plaintiffs allege that PNC holds charges, sometimes for days, and then batches them together rather than posting them immediately to an account.  *Id.*  This delayed posting and batching over days prevents customers from determining accurate account balances and also results in the imposition of multiple overdraft fees that would not otherwise be imposed.  *Id.* at ¶ 52.  As explained below, the language on which PNC relies does not clearly advise its accountholders that every transaction will be processed on the day it is received by PNC, nor did PNC adhere to such a policy because it held debits over multiple days.  PNC expressly reserved discretion in a manner which this Court has on many occasions in this MDL decided creates an issue of fact regarding breach of the implied duty of good faith and fair dealing.  Plaintiffs should be given the opportunity to establish that debit holds and related decisions made regarding the re-sequencing of transactions to largest-to-smallest evidences a bad motive on PNC's part as well as unlawful conduct supportive of the other alternative claims for relief pled in the CAC.

Third, there is ambiguity in the discretion reserved by PNC as to whether accountholders will merely be responsible to repay the amount of the debit(s) that was honored because PNC allowed the account to overdraft instead of denying the transaction, or whether PNC will also impose what it calls a "service charge" making the accountholder liable to pay an overdraft charge.  PNC ignores this issue entirely in its motion.  In doing so, PNC misleads this Court.

Additionally, the Court should also observe that the two paragraphs from the Account Agreement quoted on page 13 of the motion became effective September 19, 2008.  The class periods at issue in this case go further back than that date, meaning that the policies which PNC

claims clearly permitted the actions complained of in this lawsuit may not have been in place earlier.

### a.     PNC's Account Agreement Does Not Provide for Debit Holds.

Without clearly saying so, PNC apparently intends the table appearing on pages 14 and 15 of its Motion to reflect that, like Sovereign Bank, transactions are always posted the same day they were presented to PNC.  In *Hassler I*, the plaintiff only alleged that he was charged an extra overdraft fee on two days because of reordering of transactions that occurred on the same day.[5] In contrast, the Plaintiffs in the case at bar have alleged that debit holds occurred.  *See* CAC ¶¶ 94-112 (as to Casyuran, the Cowens, and the Dorneys).  The following language from PNC's Account Agreement does not provide any notice to customers that PNC would or might hold debit transactions over one or more days before posting them so as to increase the frequency of overdrafts as part of the re-sequencing process:

> "Effective September 19, 2008, in determining whether you have sufficient funds in your account to cover a withdrawal, PNC Bank will consider: (1) the deposits and withdrawals posted that day to your account, and (2) all pending electronic transactions for which PNC has received notice, even if those transactions have not been presented for payment."

The quoted language merely states that when PNC is determining the sufficiency of funds in an account, *on whatever day that may be and without advising how many days that PNC will hold a transaction*, it considers deposits, withdrawals and pending electronic transactions for which PNC has received notice.  Without any explanation, PNC's table on page 14 of its Motion offers a conclusion that transactions are processed daily, but the meaning of daily processing is not clearly disclosed.  However, since Hassler did not allege instances of overdrafts caused by debit holds, the case at bar is distinguishable.  If PNC is arguing to this Court that its Account Agreement required it to post daily the debit transactions which occurred on the same day that

---

[5] The "Facts" section from *Hassler I* make it clear that all that was in play was re-sequencing on the same day.  Hassler had made two transactions on each of August 28, 2008 and September 2, 2008.  Sovereign reordered the August 28, 2008 charges so that two overdrafts fees were imposed and did it again on September 2, 2008 as to that day's two charges.  *Hassler I*, 644 F. Supp. 2d at 512.  It is very important to note that the district court in *Hassler I* observed that "the policy is applied to <u>transactions made</u> in the same "business day," *id.* at 516, with "transactions made" meaning that the accountholder initiated the debit transactions on the same day as opposed to over multiple days with the bank holding onto to one or more transactions.  Judge Simandle clearly premised all of his rulings on the conclusion that Sovereign Bank's policy "applied to transactions made in the same 'business day'".  *Id.* at 516.

the customer initiated the transaction, then PNC expressly breached its contract because PNC did not reserve discretion to hold debits over days.

              **b.**       **PNC's Account Agreement Leaves Open the Possibility that Overdraft Fees Will Not Be Charged for Overdrafts.**

PNC ignores very important verbiage in the Account Agreement in quoting language that it attributes to its reserving "[d]iscretion to permit or refuse a charge," which language suggests to the customer that on occasion PNC might not impose an overdraft fee if it honors a charge when the account lacks sufficient funds. According to the language in the Account Agreement, PNC would instead just require the accountholder to repay the amount of money that PNC covered to allow a transaction to go through despite a lack of available funds. PNC quotes only the first of the following two sentences:

> If, in our sole discretion, we choose to allow withdrawals for which there are not sufficient available funds, you agree to repay us immediately the amount of the funds advanced to you. We may also assess your Account a service charge.

Ex. A at p. 2. Reading both sentences in tandem, a reasonable accountholder might assume that PNC would not impose an overdraft fee when the accountholder overdrafts by a small amount. For example, if the account overdrafts by a few dollars, will PNC really see the need or justification to penalize its accountholder with a $36 overdraft fee?

The Account Agreement gives the customer no clear concept of what, if anything, PNC will do in connection with processing debit transactions and when an overdraft fee will be charged when PNC allows the account to overdraft. Accordingly, PNC customers would not have expected that PNC would post their transactions in high-to-low order over multiple days or that PNC would impose a $36 overdraft fee in addition to requiring the accountholder to repay the amount of the overdraft, even for something as small as the $2.12 or $5.85 charges that Plaintiff Casayuran made using his debit card. CAC ¶¶ 96-102. PNC clearly does not provide in the Account Agreement that every overdraft transaction will result in a corresponding overdraft fee being imposed. The Account Agreement fails to alert the customers that they must keep a large cushion of funds in their accounts in order to guard against an overdraft fee even when the customers do not spend more than the funds in the account. Therefore, PNC charges its customers overdraft fees even when there are sufficient funds in their accounts to cover transactions.

PNC customers would reasonably expect that when PNC notifies them in the Account Agreement that it is reserving discretion regarding paying and reordering items, that PNC would exercise the discretion provided in the Account Agreement to select a method of posting in good faith and not just one designed to generate overdrafts for the purpose of maximizing the number of fees.  As this Court already ruled, "when one party is given discretion to act under a contract, said discretion must be exercised in good faith."  *Overdraft Litig.*, 694 F. Supp. 2d at 1315; *see also Abels v. JP Morgan Chase Bank, N.A.*, 2009 WL 5342768, at *4 (S.D. Fla. Nov. 23, 2009) (citing *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092 (Fla. Dist. Ct. App. 1999)) ("as long as the implied covenant does not vary the express terms of the contract, the failure to perform a discretionary act in good faith may be a breach of the implied covenant of good faith and fair dealing").  Here, despite the obligations of good faith and fair dealing, PNC reordered transactions from largest-to-smallest over multiple days in order to generate additional overdraft fees.  This is not a good faith application of the terms of the Account Agreement.

        **2.**        **Plaintiffs Allege PNC Failed to Notify Plaintiffs of Their Right to Opt-Out of Overdraft Protection.**

Along with the two issues discussed in the preceding subsection of this Response, the Plaintiffs allege another form of misconduct not alleged in *Hassler I*.  PNC fails to notify customers of overdrafts or advise them of their right to opt-out of overdraft protection altogether.  CAC ¶¶ 83-85.  In fact, PNC has the technological ability to decline transactions or notify customers that the particular debit card transaction will result in an overdraft, but fails to give customers the option to decline the transaction and avoid incurring an overdraft fee.  *Id.*  As alleged in the CAC, PNC does this in order to maximize the amount of revenue generated through its assessment of overdraft fees.  CAC ¶ 83.

Since there are more factual arguments supporting all of the Plaintiffs claims than the limited argument that was raised in *Hassler I*, this Court should reject PNC's attempts to limit Plaintiffs' allegations to daily reordering and apply the narrow holding in *Hassler I* to the far broader factual allegations in this action.  This Court should adhere to its position that it is premature to apply the district court's and Third Circuit's *Hassler II* rulings to both the New Jersey and Pennsylvania Plaintiffs in the case at bar.  *See* Def. Mem., pp. 7-8 (quoting the Court's stated rationale during the November 4, 2010 hearing for rejecting Hassler as requiring dismissal of the complaints against the Third Tranche banks).

**C.      Plaintiff Casyuran's New Jersey Claims Are Supported by the Requisite
Misconduct to Support Each of Those Claims.**

Viewing Plaintiff Casyuran's allegations in the light most favorable to him, this Court
should conclude that the actionable misconduct that the courts found did not exist in *Hassler*
exists in the case at bar.  This is true with regard to the New Jersey Consumer Fraud Act, breach
of contract and implied duty of good faith and fair dealing claim, unjust enrichment, conversion,
and unconscionability claims.  PNC's arguments regarding all of these claims rise and fall solely
on the misconception that the Account Agreement permitted the re-ordering activities and the
debit holds.  Rejecting PNC's simple theme, the Court should conclude that PNC has offered no
other argument to support dismissal of the New Jersey law based claims.

**1.      New Jersey Consumer Fraud Act.**

Starting with the Consumer Fraud Act claim, the requisite "unconscionable commercial
practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing
concealment, suppression, or omission of any material fact with intent that others rely upon such
concealment, suppression, or omission" exists.  N.J.S.A. 56:8-2.  Factual issues exist as to
whether the business practices in question are misleading and stand outside of the norm of
reasonable business practices that will victimize average consumers.  *Hassler I*, 644 F. Supp. 2d
at 514 (citations to New Jersey case law omitted).  PNC's undisclosed debit hold practices
change the dynamics greatly from Sovereign Bank's simpler policy because the customer
assumes that PNC posts the transactions on the day that they are made, yet unbeknownst to the
customers, transactions are not posted until days later.

**2.      Breach of Implied Duty of Good Faith and Fair Dealing.**

 PNC argues that *Hassler* rejected the breach of contract and implied duty of good faith
and fair dealing claim for lack of evidence of bad faith.  *See* PNC Mem. at 5.  *Hassler*
recognized, however, quoting from *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1127 (N.J.
2001), that "'[a] contract thus would be breached by a failure to perform in good faith if a party
uses its discretion for a reason outside the contemplated range – a reason beyond the risks
assumed by the party claiming the breach.'" PNC's use of debit holds to increase the number of
overdraft fees imposed, and the provisions indicating that PNC may not charge overdraft fees in

10

all instances where debit transactions exceed the amount of available funds in the account, is misconduct that significantly increased the fees charged to customers. So too is PNC's failure to notify customers of overdrafts or advise customers of their right to decline or opt-out of overdraft protection altogether. This is sufficient for the Court to find that PNC breached its duty of good faith and fair dealing. *See Overdraft Litig.*, 694 F. Supp. 2d at 1317 ("[A]lthough discovery may make clear that the banks complied with its obligations in good faith, Plaintiffs have sufficiently alleged otherwise."). Indeed, Plaintiffs are "not ask[ing] the Court to tell the banks how to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing." *Id*. at 1315. Here, PNC, like other banks, did not exercise its discretion in good faith when it held debits for no reason other than to increase the number of overdrafts. Since the Account Agreement does not provide for the debit hold practices that PNC used, the Court should reject PNC's premise that as a matter of law it had no "bad motive" in performing its contractual obligations. This is a factual issue to be resolved by the trier of fact. Moreover, Plaintiffs' complaint in this action contains sufficient allegations of "bad motive" on the part of PNC, something that was absent in *Hassler I. See, e.g.*, CAC, ¶¶ 46, 52, 53 (alleging that PNC's sole goal in its re-ordering scheme is to increase the number of exorbitant overdraft fees it can charge").

### 3.    Unjust Enrichment.

This Court has repeatedly rejected dismissal of the alternatively pled unjust enrichment claims in this MDL and should do so again. This Court already found that "while the law does not permit a party to simultaneously prevail on an unjust enrichment theory and a contractual theory, it does not require the dismissal (at the motion to dismiss stage) of an unjust enrichment claim merely because an express contract exists that arguably governs the conduct complained of." *Overdraft Litig*, 694 F. Supp. 2d at 1321. New Jersey law is in accord with this holding. *See, e.g.*, *Ready & Motivated Minds, LLC v. Ceridian Corp.*, 2010 WL 2989986 (D.N.J. July 26, 2010) (slip opinion) (permitting alternative pleading of an unjust enrichment claim).

This Court has already held that the allegations included in the CAC – that, among other things, PNC manipulated the posting order of debit transactions in bad faith so as to maximize the number of overdraft fees incurred – could lead a reasonable fact-finder to conclude that it would be unjust for a bank to retain the benefit of those fees. *See Overdraft Litig.*, 694 F. Supp. 2d at 1321-1322. Also, this Court has already determined that the practices complained of here,

11

if proven, would violate the duty of good faith and fair dealing.  *Id*. at 1316 (*citing Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946, 951 (N.D. Cal. 2009)) ("even if the contract confers discretion on the bank to determine the sequence of honoring presentments, the bank must exercise that discretion fairly and cannot exercise it to enrich itself by gouging the consumer").

That the Account Agreement discloses the practices (which are clearly a disputed issue as to debit holds) is inconsequential because, as this Court has already held, "if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendant may be barred from relying on them."  *Id*. at 1323.  In other words, the Account Agreement would be invalid and unenforceable if declared unconscionable in this proceeding clearing the way for pursuit of the unjust enrichment claim.  Finally, this Court has already concluded that even if the Account Agreement gives a bank the discretion to re-order the debit postings, a bank exercises that discretion in bad faith by intentionally causing the accountholder to incur overdrafts they would not have otherwise incurred, and thus acts wrongfully so as to support an unjust enrichment claim. *Id*.

### 4.      Unconscionability and Conversion.

PNC relegates its discussion of what this Court has consistently concluded to be viable unconscionability and conversion claims to a single footnote.  Def. Mem., p.15 n.5.  That footnote should be read to indicate that PNC is not arguing that those two claims do not exist under applicable state law as other banks have done.  Instead, PNC merely offers that the conduct which is the subject of the CAC "cannot be unconscionable if it is not unfair, done in bad faith, or unjust." *Id.*  Similarly, the conduct cannot be considered wrongful so as to support the conversion claim.  *Id.*  Since, as demonstrated by an analysis of the Account Agreement provisions, the practice of debit holds, which is the core of all of the causes of action, is not disclosed to accountholders, the Court should conclude that there is an open factual issue as to whether PNC acted wrongfully, unfairly, in bad faith, or unjustly.  An affirmative answer to that question sets the stage for Plaintiffs' success on the unconscionability and conversion claims, making it improper at this juncture to grant PNC's Motion on these two counts.

This Court has previously found that analogous allegations were sufficient to uphold a claim for unconscionability and that, *inter alia*, the failure to notify Plaintiffs that they had the option to decline overdraft protection (when, in fact, they did have that option), the inability to negotiate with the bank, the unreasonableness of allowing banks to post debits in a manner

designed solely to maximize overdraft fees, and the excessiveness of the fees, all elements alleged here, constituted unconscionability. *See Overdraft Litig.*, 694 F. Supp. 2d at 1319-20. Therefore, Plaintiffs' unconscionability claim should not be dismissed.

Plaintiffs' conversion claim, like Plaintiffs' other claims, is based on, *inter alia*, the fact that PNC assessed overdraft fees to checking accounts that contained sufficient funds and, as admitted by PNC in its Account Agreement, ownership of the account is in the depositor and any joint owner of the account. Account Agreement, pp. 5-6. Since *Hassler I* only involved the reordering of funds (which, according to that court, was actually disclosed to consumers) and did not allege that Sovereign Bank assessed overdraft fees that contained sufficient funds, PNC's argument that Plaintiffs' conversion claim should fail should be disregarded. *See Overdraft Litig.*, 694 F. Supp. 2d at 1323 (upholding plaintiffs' conversion claim based on the same conduct alleged here and finding, *inter alia*, that defendants interfered with plaintiffs' property interest and wrongfully debited funds from customers' accounts); *see also White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1371 (N.D. Ga. 2008) (upholding plaintiffs' conversion claim also based on conduct identical to that alleged here and finding that "Wachovia imposed Overdraft Fees when there was in fact no overdraft").

### D.     *Hassler* Does Not Control Claims Asserted by the Pennsylvania Plaintiffs.

As TD Bank previously did, PNC argues that *Hassler  I and II*  should control this Court's ruling on the claims against PNC under Pennsylvania law, which it claims is stricter than New Jersey law. Def. Mem., p. 10. This argument also fails as to the consumer protection statutory claim, breach of the implied duty of good faith and fair dealing, unjust enrichment, unconscionability, and conversion claims.

### 1.     Pennsylvania Unfair Trade Practices and Consumer Protection Law.

PNC repeats TD Bank's argument that Pennsylvania's unfair business practices statute requires a showing of justifiable reliance (which is not required under New Jersey law). *See Def. Mem.*, p. 16. PNC does not appear to suggest that there is a pleading deficiency as it pertains to the claims of the Cowens and Dorneys. To the extent that Pennsylvania jurisprudence requires a showing of justifiable reliance for any of the acts of wrongful conduct alleged in the CAC to be violative of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq., that is a matter that should be addressed as to the evidence presented at a later stage in this proceeding. In paragraph 171 of the CAC, the Cowens and Dorneys allege

13

violations of 73 P.S. § 201-2(4)(v) (representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have), § 201-2(4)(xiv) (failing to comply with the terms of any written guarantee or warranty given to a buyer), and §201-2(4)(xxi) (engaging in any other deceptive conduct which creates a likelihood of confusion or misunderstanding).  Any perceived shortcoming in the allegation of justifiable reliance can be easily remedied by way of a simple amendment to the statutory claim.  This Court rejected arguments raised by TD Bank that the statutory claim should be dismissed and should do so again here.

PNC's suggestion that there can be no Pennsylvania statutory claim if the contract permits the conduct which is the subject of the claim should be disposed of in a manner consistent with the Court's ruling on the New Jersey statutory claim.  If it is determined that the Account Agreement did not permit PNC to commit the acts which are the subject of the CAC, then a viable statutory claim exists under Pennsylvania's consumer protection statute.  This Court should adhere to its prior rulings involving TD Bank and Citizens by deferring a ruling on the merits of the Pennsylvania consumer protection claim until after an answer and has been filed and a factual record is developed.  *See* Order on November 4, 2010 Status Conference [**DE # 934**]; Transcript of Status Conference, pp. 39, 45.

### 2.    Breach of the Implied Duty of Good Faith and Fair Dealing.

Next, PNC argues that Pennsylvania does not recognize a separate cause of action for breach of the implied duty of good faith and fair dealing.  Def. Mem., pp. 16-17.  Like other defendants in this MDL who have argued Pennsylvania and other states' laws, PNC erroneously suggests that Plaintiffs are attempting to argue breach of the implied duty of good faith and fair dealing as a claim independent of the breach of an express contract.  Plaintiffs are not making that argument, recognizing that such a separate tort claim is not recognized under Pennsylvania law.  Instead, Plaintiffs have validly alleged, consistent with Pennsylvania law, that PNC has breached its implied duty of good faith and fair dealing in performing its obligations under the Account Agreement.  Plaintiffs have alleged an express breach of the Account Agreement based on the manner in which PNC has assessed overdraft fees on their accounts, and there is no intent on the Plaintiffs' part to vary the terms of the contract.

Since *Creeger Brick & Bldg. Supply Inc. v. Mid-State Bank & Trust Co.*, 560 A.2d 151, 153-54 (Pa. Super. Ct. 1989), Pennsylvania courts have recognized the implied covenant of good

faith and fair dealing in every contract.  *See Somers v. Somers,* 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992); *Liazis v. Kosta, Inc.,* 618 A.2d 450 (Pa. Super. Ct. 1992); *see also Seal v. Riverside Fed. Sav. Bank*, 825 F. Supp. 686, 700 (E.D. Pa. 1993) (duty of good faith and fair dealing "has been embraced with increased vigor by the Pennsylvania Superior Court in recent years").  Like other banks in this MDL, PNC overplays statements in older Pennsylvania cases that the implied covenant of good faith and fair dealing is only applicable in limited circumstances.  Def. Mem., pp.16-17.

In a recent opinion addressing the parameters of an implied covenant claim of good faith and fair dealing claim, the court summarized the applicable standards as follows:

> Defendant next moves to dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing. "In Pennsylvania, a covenant of good faith and fair dealing is implied in every contract." *Temple Univ. Hosp., Inc. v. Group Health, Inc.*, Civ. A. No. 05-102, 2006 WL 146426, at *6 (E.D. Pa. Jan. 12, 2006) (quoting *Lyon Fin. Servs. v. Woodlake Imaging, LLC*, Civ. A. No. 04-3334, 2005 WL 331695, at *8 (E.D. Pa. Feb. 9, 2005)). The duty of good faith has been defined as "honesty in fact in the conduct or transaction concerned." RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (1981). Examples of bad faith can include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Somers v. Somers*, 418 Pa.Super. 131, 613 A.2d 1211, 1213 (1992) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. d). Courts use this good faith duty as "an interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91-92 (3d Cir.2000). Although the precise contours of a party's duty under the covenant vary with the context, good faith generally entails "'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" *Curley v. Allstate Ins. Co.*, 289 F.Supp.2d 614, 617 (E.D. Pa. 2003) (quoting RESTATEMENT (SECOND) § 205 cmt. a).
>
> . . . .
>
> As the Third Circuit has explained, "[t]he covenant of good faith and fair dealing involve[s] an implied duty to bring about a condition or to exercise discretion in a reasonable way'" so that "implied covenants and any express terms of a contract are necessarily mutually exclusive-one can invoke implied terms only when there are no express terms in the contract relating to the particular issue." *USX Corp. v. Prime Leasing Inc.*, 988 F.2d 433, 438 (3d Cir. 1993) (internal quotations omitted) (emphasis in original). "The law will not imply a different contract than that which the parties have expressly adopted." *Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 519 A.2d 385, 388 (1986). Thus, in order to plead a cause of action for breach of the covenant of good faith, whether it is an express or implied

> covenant, a plaintiff must allege facts to establish that a contract exists or existed, including its essential terms, that defendant failed to comply with the covenant of good faith and fair dealing by breaching a specific duty imposed by the contract other than the covenant of good faith and fair dealing, and that resultant damages were incurred by plaintiff. *Sheinman Provisions, Inc. v. Nat'l Deli, LLC*, Civ. A. No. 08-453, 2008 WL 2758029, at *3 (E.D. Pa. Jul. 15, 2008) (emphasis in original).

*Benchmark Group, Inc. v. Penn Tank Lines, Inc.*, 612 F. Supp. 2d 562, 583-584 (E.D. Pa. 2009). Plaintiffs' breach of contract claim adheres to these standards. The fact that the contours of New Jersey jurisprudence may recognize a broader implied duty than has been recognized in Pennsylvania does not support the conclusion that the Cowens and Dorneys may not pursue the claims they have asserted against PNC for themselves and others similarly situated in Pennsylvania. This Court has previously rejected attempts to dismiss implied covenant claims under Pennsylvania law and should do so again now. *See* **DE # 934** (denying the motions to dismiss filed by TD Bank, N.A., Citizens Bank of Pennsylvania, and RBS Citizens, N.A.). At the end of the day, the claims raised by Plaintiffs fall within the scope of what Pennsylvania's implied covenant jurisprudence is designed to protect. In *Creeger*, Pennsylvania's highest court defined the duty as "honesty in fact in the conduct or transaction concerned." 560 A.2d at 153. Plaintiffs contend that PNC did not adhere to that duty in assessing overdraft fees because of debit holds.

"Plaintiffs do not ask the Court to tell the [bank] how to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing." *Overdraft Litig.*, 694 F. Supp. 2d at 1315 (refusing to dismiss breach of contract claim on grounds that conduct at issue was permitted by contract terms). Other courts have reached similar conclusions with regard to the order of a bank's posting of items to an account:

> The court cannot find as a matter of law that the Deposit Agreement's statement that Wachovia "may" post items "in any order" . . . expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, and maximize overdraft fees in the ways the Complaint alleges.

*White*, 563 F. Supp. 2d at 1364.

PNC's citation to *Heritage Surveyors & Eng'rs, Inc. v. Nat'l Penn Bank*, 801 A.2d 1248 (Pa. Super. 2002), is unavailing because in the case at bar PNC's compliance with the contractual terms of the Account Agreement are not clear cut. In *Heritage Surveyors*, the bank was simply enforcing a promissory note, but presuming the allegations in the Plaintiffs' CAC as true

16

regarding the undisclosed manner in which PNC would be holding and then posting debit transactions, this Court should not find the bank's conduct to be explicitly permitted by the Account Agreement.  Thus, PNC should be required to answer the breach of contract claim as to its Pennsylvania customers.

### 3.      Unjust Enrichment.

PNC's argument that Pennsylvania law establishes that an express contract precludes unjust enrichment is contrary to this Court's own prior holding.  This Court already found that "while the law does not permit a party to simultaneously prevail on an unjust enrichment theory and a contractual theory, it does not require the dismissal (at the motion to dismiss stage) of an unjust enrichment claim merely because an express contract exists that arguably governs the conduct complained of."  *Overdraft Litig.*, 694 F. Supp. 2d at 1321.  Pennsylvania law is in accord with this holding.  *See, e.g.*, *Masterson v. Fed. Express Corp.*, 2008 U.S. Dist. LEXIS 76054, at *17-18 (M.D. Pa. Sept. 26, 2008).

PNC's reliance on *Archway Ins. Services, LLC v. James River Ins. Co.*, 2010 WL 3719083 at *4 (E.D. Pa. Sept. 21, 2010), is entirely misplaced.  First, the district court was resolving a motion for summary judgment, not a Rule 12(b)(6) motion.  Second, despite PNC's suggestion that the parties' relationship is governed by the Account Agreement, it is premature to make that conclusion because Plaintiffs have challenged the validity and enforceability of the Account Agreement as it pertains to the posting of debit transactions.  In *Archway Ins.*, the district court's ruling was premised on the lack of an allegation by either party that the insurance contract at issue was invalid or unenforceable.  *Id.* at *4.   To the contrary, Plaintiffs here have challenged the validity and enforceability of the Account Agreement.

Just as in the previous cases, Plaintiffs concede that they will not be permitted to recover damages under both the breach of contract and unjust enrichment claims, but they are permitted to plead in the alternative.  *Overdraft Litig.*, 694 F. Supp. 2d at 1321 ("The Court agrees with Plaintiff's position.  Federal Rule 8(d) allows pleading in the alternative, even if the theories are inconsistent.  Defendants have not conceded that Plaintiff is entitled to recovery under the contract, and if the contractual claim fails, Plaintiff may still be entitled to recovery under an unjust enrichment theory.").  This Court has already held that the allegations included in the CAC – that, among other things, PNC manipulated the posting order of debit transactions in bad faith so as to maximize the number of overdraft fees incurred – are sufficient to lead a reasonable

fact-finder to conclude that it would be unjust for a bank to retain the benefit of those fees.  *See Overdraft Litig.*, 694 F. Supp. 2d at 1321-1322.  Also, this Court has already determined that the practices complained of here, if proven, would violate the duty of good faith and fair dealing.  *Id.* at 1316 (*citing Gutierrez*, 622 F. Supp. 2d at 951) ("even if the contract confers discretion on the bank to determine the sequence of honoring presentments, the bank must exercise that discretion fairly and cannot exercise it to enrich itself by gouging the consumer").

That the Account Agreement may disclose some of the practices at issue is inconsequential because, as this Court has already held, "if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendant may be barred from relying on them."  *Id.* at 1323.  In other words, the Account Agreement would be invalid and unenforceable if declared unconscionable in this proceeding.

### 4.    Unconscionability and Conversion.

As with the New Jersey claims, PNC merely states that the Pennsylvania claims for unconscionability and conversion are predicated solely on PNC's conclusion that if *Hassler* barred the breach of contract, consumer protection law, and unjust enrichment claims, the unconscionability and conversion claims may not be pursued as a matter of law.  As argued above, PNC is wrong.  This Court should reach the identical conclusion in denying the motion to dismiss the unconscionability and conversion claims as to the Pennsylvania customers.

### E.    Plaintiffs' State Law Claims Are Not Preempted.

PNC does not re-argue the preemption arguments previously rejected by this Court when raised by other banks in this MDL, but rather merely incorporates the arguments advanced by those banks.  *See* Def. Mem., pp. 18-19.  Accordingly, Plaintiffs simply refer the Court to its Omnibus Order rejecting the preemption argument.  *Overdraft Litig.*, 694 F. Supp. 2d at 1310-14.  As this Court explained:

> [F]inally, these are state laws of general application that do not violate the purposes of the NBA, and banks could comply with both the NBA, OCC regulations and state laws if they refrained from engaging in the criticized posting procedures.  Again, the Court's only inquiry at this stage is whether the state law claims, as alleged, more than incidentally affect the exercise of the bank's deposit taking power.  The Plaintiffs' alleged claims are *not* that banks lack the right to charge overdraft fees as part of their deposit-taking powers.  Instead, Plaintiffs attack the allegedly unlawful manner in which the banks operate their overdraft programs to maximize fees at the expense of consumers.  At this stage, these

18

allegations do no more than incidentally affect the bank's exercise of their deposit taking power and are therefore not preempted.

*Id.* at 1313-14.   Additionally, Plaintiffs also incorporate by reference the arguments against preemption contained in the First Tranche Plaintiffs' Memorandum in Opposition to Defendants' Omnibus Motion to Dismiss and/or For Judgment on the Pleadings.  *See* **DE # 265**, pp. 13-33.

Plaintiffs, like the customers of the First Tranche Banks, assert common law claims based on the covenant of good faith and fair dealing, the prohibition against unconscionable business conduct, conversion and unjust enrichment.  All of these causes of action stem from breaches or violations of laws of general application, which apply to all businesses, not just banks. Consequently, none of the causes of action conflict with the NBA; thus, PNC's preemption argument fails.

## IV.   CONCLUSION

For the reasons set forth above, PNC's motion should be denied.  Should the Court determine that any of Plaintiffs' claims are subject to dismissal, Plaintiffs respectfully request leave to replead such claims pursuant to Rule 15.

19

Dated: February 22, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@alterslaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

20

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
    BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

21

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2011, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document

is being served this day on all counsel of record or pro se parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or parties who are

not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel:  305-442-8666
Fax:  305-779-9596

23