**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**THIS DOCUMENT RELATES TO:**

*Simmons, et al. v Comerica Bank, N.A.*
N.D. Tex. Case No. 10-cv-326
S.D. Fla. Case No. 1:10-cv-22958

**PLAINTIFFS' OPPOSITION TO DEFENDANT COMERICA BANK'S**
**<u>MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

*Page*

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS (SUMMARY OF PLAINTIFFS' CLAIMS) ........................ 1

III.  LEGAL STANDARD ...................................................................................... 3

IV.   COUNTER-STATEMENT ON FEDERAL PREEMPTION ..................................... 3

V.    ARGUMENT ................................................................................................ 4

      A.   Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and
           Fair Dealing Survives ...................................................................... 4

           1.   Michigan Law ....................................................................... 4

           2.   Texas Law .......................................................................... 5

      B.   Plaintiffs Sufficiently Allege That the Account Contract Is Both
           Procedurally and Substantively Unconscionable ................................. 8

           1.   Plaintiffs' Request for Declaratory Relief That the Challenged
                Contractual Terms Are Unconscionable is Valid and Proper ................ 8

           2.   The Banks' Practices Are Unconscionable ................................... 9

                a.   Plaintiffs Have Adequately Alleged Procedural
                     Unconscionability ..................................................... 10

                b.   Plaintiffs Have Adequately Alleged Substantive
                     Unconscionability ..................................................... 11

      C.   The Complaint States a Plausible Claim for Conversion ...................... 14

           1.   A Bank That Wrongfully Takes Funds From a Depositor Can Be
                Liable For Conversion .......................................................... 14

           2.   Plaintiffs Adequately Alleged That Comerica Bank Lacked the Right
                to Charge Overdraft Fees and Debit Plaintiffs' Accounts ................. 15

           3.   Plaintiffs Need Not Allege Demand for Converted Funds to State a
                Claim for Conversion ........................................................... 16

D.      The Complaint States a Plausible Claim for Unjust Enrichment........................ 17

VI.     CONCLUSION.......................................................................................................... 20

## **TABLE OF AUTHORITIES**

## **FEDERAL COURT DECISIONS**

*Page*

*Abels v. JPMorgan Chase Bank, N.A.*
  678 F. Supp. 2d 1273 (S.D. Fla. 2009) ............................................................. 8, 10, 11

*Af-Cap. Inc. v. Republic of Congo*
  462 F.3d 417 (5th Cir. 2006) ....................................................................................... 6

*Bartley v. Nat'l Union Fire Ins. Co.*
  824 F. Supp. 624 (N.D. Tex. 1992) ......................................................................... 10

*Bell Atl. Corp v. Twombly*
  550 U.S. 544 (2007) ...................................................................................................... 3

*Bushwick-Decatur Motors v. Ford Motor Co.*
  116 F.2d 675 (2d Cir. 1940) ........................................................................................ 4

*Cowin Equipment Co., Inc. v. Gen. Motors Corp.*
  734 F.2d 1581 (11th Cir. 1984) ................................................................................... 9

*Eva v. Midwest Nat'l Mortgage Bank, Inc.*
  143 F. Supp. 2d 862 (N.D. Ohio 2001) .................................................................. 8, 9

*Gutierrez v. Wells Fargo Bank, N.A.*
  622 F. Supp. 2d 946 (N.D. Cal. 2009) ....................................................................... 5

*Hall v. Dow Corning Corp.*
  114 F.3d 77 (5th Cir. 1997) ........................................................................................ 6

*Hassler v. Sovereign Bank*
  2010 U.S. App. LEXIS 5445 (3d Cir. 2010) ....................................................... 19, 20

*High v. Capital Senior Living Props. 2–Heatherwood, Inc.*
  594 F. Supp. 2d 789 (E.D. Mich. 2008) .................................................................. 11

*Hubbard Chevrolet Co. v. Gen. Motors Corp.*
  873 F.2d 873 (5th Cir. 1989) ...................................................................................... 4

*In Re Checking Account Overdraft Litig.*
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) ............................................................. *passim*

*In re Mercedes-Benz Tele Aid Contract Litig.*
  267 F.R.D. 113 (D.N.J. 2010) ................................................................................... 19

*Johnson v. Mobil Oil Corp.*
    415 F. Supp. 264 (E.D. Mich. 1976)................................................................ 9, 10

*Lozada v. Dale Baker Oldsmobile, Inc.*
    91 F. Supp. 2d 1087 (W.D. Mich. 2000) ..................................................... 9, 10, 11

*Newman v. Roland Machinery Co.,*
    2009 U.S. Dist. LEXIS 93991 (W.D. Mich. 2009).............................................. 9

*Nichols v. YJ USA Corp.*
    2009 U.S. Dist. LEXIS 22450 (N.D. Tex. 2009) ................................................ 13

*Pioneer Surgical Tech., Inc. v. Vikingcraft Spine, Inc.*
    2010 WL 2925970 (W.D. Mich. 2010)............................................................... 16

*Premier Digital Access, Inc. v. Cent. Tel. Co.*
    360 F. Supp. 2d 1161 (D. Nev. 2005)................................................................. 8

*Prevot v. Phillips Petroleum Co.*
    133 F. Supp. 2d 937 (S.D. Tex. 2001) ............................................................... 13

*Ross v. Wells Fargo Bank, N.A.*
    2009 WL 357921 (S.D. W. Va. 2009) ................................................................ 8

*Whirlpool Corp. v. Grigoleit Co.*
    2007 Us. Dist. LEXIS 7285 (W.D. Mich. 2007) ............................................... 8

*White v. Wachovia Bank, N.A.*
    563 F. Supp. 2d 1358 (N.D. Ga. 2008) .............................................................. 5

*Wilcox v. Valero Ref. Co.*
    256 F. Supp. 2d 687 (S.D. Tex. 2003) ............................................................... 10

*Williams v. First Gov't Mortg. & Inv. Corp.*
    225 F.3d 738 (D.C. Cir. 2000)............................................................................ 8

*Zinnia Chen v. Lester*
    364 Fed. Appx. 531 (11th Cir. 2010).................................................................. 3

## STATE COURT DECISIONS

*Arnold v. Nat'l County Mutual Fire Ins. Co.*
    725 S.W.2d 165, 167 (Tex. 1987)....................................................................... 6, 7

*Buffet Partners, L.P. v. Sheffield Square, LLC*
    256 S.W.3d 920 (Tex. App. – Dallas 2000)........................................................ 17

*Burch v. Second Jud. Dist. Court of State ex rel. County of Washoe*
    49 P.3d 647 (Nev. 2002) .......................................................................... 11

*Burkhardt v. City Nat'l Bank of Detroit*
    226 N.W.2d 678 (Mich. Ct. App. 1984) ............................................... 4, 5

*Burns v. Rochon*
    190 S.W.3d 263 (Tex. App. – Houston 2006) ......................................... 17

*Bush v. Hayes*
    282 N.W. 239 (Mich. 1938).............................................................. 16, 17

*Carson Energy, Inc. v. Riverway Bank*
    100 S.W.3d 591 (Tex. App. – Texarcana 2003) ....................................... 15

*Cordova v. World Fin. Corp. of NM*
    208 P.3d 901 (N.M. 2009) ...................................................................... 11

*Dep't of Agric. v. Appletree Mktg., LLC*
    779 N.W.2d 237 (Mich. 2010).................................................................. 14

*E. Ford, Inc. v. Taylor*
    826 So.2d 709 (Miss. 2002)..................................................................... 11

*Edmunds v. Sanders*
    2 S.W.3d 697 (Tex. App. – El Paso 1999).................................................. 17

*Ferrel v. Vic Tanny Int'l, Inc.*
    357 N.W.2d 669 (Mich. Ct. App. 1984) ............................................... 4, 5

*Hubscher & Son, Inc. v. Storey*
    228 Mich. Ct. App. 478 (Mich. Ct. App. 1998).......................................... 13

*In re Olshan Found. Repair Co., LLC*
    328 S.W.2d 883 (Tex. 2010)....................................................................... 9

*Masonic Temple Ass'n Owosso v. State Savings Bank*
    263 N.W. 771 (Mich. 1935).................................................................... 15

*Plaza Nat'l Bank v. Walker*
    767 S.W.2d 276 (Tex. App. – Beaumont 1989) ................................... 5, 6, 7

*Riverview Co-op, Inc. v. First Nat'l Bank & Trust Co. of Mich.*
    337 N.W.2d 225 (Mich. 1983).................................................................. 15

*Sears v. Cont'l Bank & Trust Co.*,
    562 S.W.2d 843 (Tex. 1977)....................................................................... 15

*Sharpe v. Roman Catholic Diocese of Dallas*
    97 S.W.3d 791 (Tex. App. – Dallas 2003).................................................. 17

*Ski River Dev., Inc. v. McCalla*
    167 S.W.3d 121 (Tex. App. – Waco 2005) ................................................... 8

*Stone Computer, Inc. v. UAW-Chrysler Nat'l Training Ctr.*
    2010 WL 1872922 (Mich. Ct. App. 2010)............................................... 16, 17

*Trail Clinic, P.C. v. Bloch*
    319 N.W.2d 638 (Mich. Ct. App. 1982) ...................................................... 16

*Wil-Roye Invest. Co. II v. Wash. Mut. Bank, F.A.*
    142 S.W.3d 393 (Tex. App. – El Paso 2004)............................................... 6, 7

## STATUTES

Fed. R. Civ. P. 8(d) ......................................................................................... 18

Fed. R. Civ. P. 9(b) ........................................................................................... 3

## OTHER SOURCES

Burton, Steven J., *Breach of Contract and the Common Law Duty to Perform in Good Faith*
    94. Harv. L. Rev. 369 (1980)......................................................................... 5

Restatement (Second) of Contracts.................................................................... 8

## I.      INTRODUCTION

Plaintiffs Delphia Simmons and Patricia Mattlage ("Plaintiffs") submit this opposition to Defendant Comerica Bank N.A.'s Motion to Dismiss (hereinafter "Def. Mem.") [**DE #1084**].[1] Plaintiffs seek to recover, for themselves and all other customers similarly situated, excess overdraft fees generated and retained through the unlawful practices of Comerica Bank ("Comerica")[2] including, among other things, its manipulation and reordering of debit transactions from largest to smallest in order to maximize the overdraft fees it charged its customers.   Comerica seeks dismissal of Plaintiffs claims based, in large part, on arguments this Court has already rejected in ruling on the First and Third Tranche banks' motions to dismiss. As demonstrated below, Comerica's arguments are without merit and its motion to dismiss should be denied in its entirety.

## II.     STATEMENT OF FACTS (SUMMARY OF PLAINTIFFS' CLAIMS)

Plaintiffs assert claims against Comerica for breach of contract and breach of the covenant of good faith and fair dealing, unconscionability, conversion, and unjust enrichment. *See* Amended Class Action Complaint ("ACAC"), ¶¶ 102-35 [**DE # 990**].  The allegations made and common law claims pled by Plaintiffs mirror those asserted by plaintiffs against the First and Third Tranche banks.   Plaintiffs seek to represent themselves and similarly situated consumers who were subject to the deceptive re-ordering practice implemented by Defendant.   These practices involve the systematic manipulation and re-ordering of electronic debit transactions from the highest dollar amount to lowest dollar amount.  ACAC, ¶¶ 14, 24.  Plaintiffs allege that the sole purpose of this practice is to deplete the customer's available funds as quickly as possible so as to maximize the amount of overdraft fees collected by Defendant.  ACAC ¶ 39. Oftentimes the amount of these overdraft charges ($37 each) exceeds the amount of the underlying transaction.  ACAC ¶¶ 7, 113.

Plaintiffs and members of the Class maintain or maintained a checking account with Comerica, the terms for which were contained in standardized account holder agreements (the "Account Contract").   ACAC ¶ 36.   The terms relating to the reordering are hidden in the

---

[1] Comerica, Incorporated, the Bank's holding company, also filed a motion to dismiss.  The Parties have stipulated to dismissing claims against Comerica, Incorporated without prejudice.

[2]  While Defendant suggests that Comerica Bank is a Texas state-chartered bank, rather than a national association, as Defendant concedes in its motion, this distinction is irrelevant for the purposes of this motion.

Account Contract's dense, small type, boilerplate provisions. *Id.* The Account Contract and the related documents are unconscionable contracts of adhesion.

The Account Contract contains discretionary language regarding Comerica's reordering practices, such as "[g]enerally, we will pay highest to lowest dollar amount after assessing any fees, charges, or other obligations due the Bank." ACAC ¶ 37. However, the Account Contract is ineffective, ambiguous, unfair, and deceptive because it does not unambiguously state that Comerica *always* reorders debits from high to low regardless of the amounts involved – even though Comerica *does always* reorder transactions in this manner to maximize overdrafts and overdraft fee revenues for itself at the consumers' expense. ACAC ¶¶ 39, 41-43. Comerica abused the discretion afforded under its Account Contract to systematically maximize overdraft fees which Comerica unilaterally deducted from its customers' accounts and paid to itself. To carry out this scheme, Comerica manipulated customer transactions records, causing funds in customer accounts to be depleted more rapidly, resulting in more overdrafts and, hence, more overdraft fees. In fact, overdraft fees where charged at times when, but for the banks' manipulation, there would be sufficient funds in customer accounts to cover the debits.

Further, Comerica does not: (i) disclose to customers that they may "opt out" of Comerica's overdraft scheme; (ii) provide an opportunity to cancel the debit transaction before incurring an overdraft fee; or (iii) obtain affirmative consent from customers prior to processing transactions that will overdraw their accounts and result in overdraft fees. ACAC ¶¶ 38, 62-64. Comerica Bank also engages in deceptive and manipulative practices, in addition to those described above, to cloak accurate information regarding customer balances. ACAC ¶¶ 52-60. Its overdraft policies and practices and the reordering provisions of its Account Contract are procedurally and substantively unconscionable. ACAC ¶¶ 72-74. As a direct consequence of Comerica's unlawful conduct, Plaintiffs have suffered damages. ACAC ¶¶ 75-100.

Comerica seeks dismissal based on five arguments: (1) preemption; (2) the Banks' contracts permit them to engage in their unfair practices; (3) damages are not recoverable for common law unconscionability; (4) conversion is not cognizable; and (5) unjust enrichment does not lie because plaintiffs have adequate remedies at law. In this coordinated, multidistrict litigation, the Court has already denied these same arguments made by a number of other banks, and upheld claims asserted by customers of those banks which are virtually identical to the claims asserted by the customers of Comerica in this case. *See In re Checking Account*

*Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010) [**DE # 305**] (the "Omnibus Order"). Comerica has provided no meaningful reason why the claims pleaded against it should not be treated similarly here.  Accordingly, Comerica's motion should be denied.

## III.   LEGAL STANDARD

Comerica seeks to have the ACAC dismissed pursuant to Federal Rule 12(b)(6).[3]  *See* Def. Mem., pp. 7–8.  As this Court acknowledged in issuing its Omnibus Order, for the purposes of a motion to dismiss, the court must view the allegations of the Complaint in the light most favorable to plaintiff, consider the allegations of the Complaint as true, and accept all reasonable inferences therefrom."  *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1308 (citing *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003)); *see also Zinnia Chen v. Lester*, 2010 U.S. App. LEXIS 2203 (11th Cir. Feb. 1, 2010) ("The complaint is viewed in the light most favorable to the plaintiffs, and all of the plaintiffs' well-pleaded facts are accepted as true."). The complaint may be dismissed if the facts as plead do not state a claim to relief that is plausible on its face.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  More simply, dismissal is appropriate if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible."  *Id*.   Therefore, the Court need only "determine whether the Complaints adequately state a cause of action, not whether those causes of action will ultimately succeed."  *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1308.

The allegations in the ACAC are beyond sufficient for this Court to draw a reasonable inference that Comerica is liable for its allegedly deceptive and manipulative reordering practices.  Accordingly, Defendant's motion to dismiss should be denied.

## IV.   COUNTER-STATEMENT ON FEDERAL PREEMPTION

Comerica candidly acknowledges that its federal preemption argument has already been rejected by the Court's Omnibus Order and makes no attempt to persuade the Court that a different result is justified here, instead adopting and incorporating by reference the exact arguments made by the First Tranche Banks which the Court previously rejected.  *See* Def. Mem., p. 2 [**DE # 1084**].  Accordingly, Plaintiffs simply refer the Court to its Omnibus Order rejecting the preemption argument.  *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1310-14.  As this Court explained:

---

[3]  Comerica does not seek to dismiss any of the claims in the ACAC pursuant to Federal Rule of Civil Procedure 9(b).

> [F]inally, these are state laws of general application that do not violate the purposes of the NBA, and banks could comply with both the NBA, OCC regulations and state laws if they refrained from engaging in the criticized posting procedures. Again, the Court's only inquiry at this stage is whether the state law claims, as alleged, more than incidentally affect the exercise of the bank's deposit taking power. The Plaintiffs' alleged claims are *not* that banks lack the right to charge overdraft fees as part of their deposit-taking powers. Instead, Plaintiffs attack the allegedly unlawful manner in which the banks operate their overdraft programs to maximize fees at the expense of consumers. At this stage, these allegations do no more than incidentally affect the bank's exercise of their deposit taking power and are therefore not preempted.

*Id.* at 1313-14.

Plaintiffs, like the customers of the First Tranche Banks, assert common law claims based on the covenant of good faith and fair dealing, the prohibition against unconscionable business conduct, conversion and unjust enrichment. All of these are laws of general application, applying to all businesses, not just banks. Because Plaintiffs assert claims solely under laws of general application, none conflicts with the NBA and Comerica's preemption argument fails.[4]

## V.     ARGUMENT

### A.     Plaintiffs' Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing Survives.

#### 1.     Michigan Law.

Assuming *arguendo* that Plaintiff Delphia Simmons' contract-based claim is governed by Michigan law, she has stated a plausible cause of action. As with virtually every other state,[5] Michigan common law recognizes an implied covenant of good faith and fair dealing that applies to the performance and enforcement of contracts. *Hubbard Chevrolet Co. v. Gen. Motors Corp.*, 873 F.2d 873, 876–877 (5th Cir. 1989) (applying Michigan law and citing *Ferrell v. Vic Tanny Int'l, Inc.*, 357 N.W.2d 669, 672 (1984) and *Burkhardt v. City Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (1975)). The implied covenant serves to limit the parties' conduct when, as here, their contract confers decision-making over a particular term to only one party. *See id.* (citing *Bushwick-Decatur Motors v. Ford Motor Co.*, 116 F.2d 675, 677 (2d Cir. 1940) (applying

---

[4] For the record, Plaintiffs incorporate by reference the arguments against preemption contained in the First Tranche Plaintiffs' Memorandum in Opposition to Defendants' Omnibus Motion to Dismiss and/or For Judgment on the Pleadings. *See* **DE # 265**, pp. 13-33.
[5] *See* Omnibus Order (recognizing that the common law duty of good faith and fair dealing is virtually the same in every state).

Michigan law); *Ferrell*, 357 N.W.2d at 672; Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 HARV. L. REV. 369, 380 (1980)). Michigan courts therefore rely on the implied covenant of good faith "[w]here a party to a contract makes the manner of its performance a matter of its own discretion . . . ." *Id.* (quoting *Burkhardt*, 226 N.W.2d at 680 and citing *Ferrell*, 357 N.W.2d at 672).

Based on these principles, this Court's Omnibus Order denied a motion to dismiss plaintiffs' breach of contract claims based on the implied covenant of good faith and fair dealing. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1314-17. In so holding, the Court found that nearly all states embrace an implied covenant of good faith and fair dealing. *Id.* at 1315-17. The Court observed that two other courts had found that the conduct alleged here – the reordering of debit card transactions to impose excessive overdraft fees – was an abuse of the bank's discretion. *Id.* at 22 (citing *Gutierrez v. Wells Fargo Bank,* 622 F. Supp. 2d 946, 951 (N.D. Cal. 2009); *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1363–64 (N.D. Ga. 2008)). Ultimately, the Court held that the determination of whether the banks violated the duty of good faith and fair dealing required a determination of factual issues that could not be resolved on the pleadings alone. 694 F. Supp. 2d at 1316-17.

The reasoning in the Omnibus Order applies equally here. Plaintiffs' Account Contract provides Comerica with the "sole discretion" to determine the order in which debit transactions will be "paid" from Plaintiffs' account. *See* ACAC, ¶ 37 [**DE # 990**]. Assuming that this can be read to apply to the order in which these debit transactions are actually posted to her account, Michigan law requires Comerica to exercise this discretion in good faith. *See Burkhardt*, 226 N.W.2d at 680. Plaintiffs have alleged that Comerica breached this duty by systematically re-sequencing electronic debits from highest to lowest dollar amount for the sole purpose of artificially creating overdrafts in order to generate excessive overdraft fees. *See* ACAC, ¶¶ 39, 41–46. This states a plausible claim for relief. Further, this issue requires factual determinations that simply cannot be made at this stage in the litigation thereby requiring Comerica's Motion to Dismiss be denied. *E.g.*, 694 F. Supp. 2d at 1316-17.

## 2. Texas Law.

The Omnibus Order recognized a split in Texas authority regarding whether a bank owes a duty of good faith and fair dealing to its customers. 694 F. Supp. 2d at 1317 (citing *Plaza Nat'l Bank v. Walker*, 767 S.W.2d 276, 277–78 (Tex. App. – Beaumont 1989, writ denied) (holding

that banks owe a duty of good faith and fair dealing to their depositors) and *Wil-Roye Invest. Co. II v. Wash. Mut. Bank, F.A.*, 142 S.W.3d 393, 410 n.4 (Tex. App. – El Paso 2004, no pet.) (holding that banks only owe the duty if the depositor is a shareholder of the bank who seeks the bank's advice on various matters)).  (The Court's actual citation of the cases did not include the Beaumont and El Paso designations of the appellate court, or the writ history indicating the status of the cases' petition for review to the Texas Supreme court.)

The Omnibus Order court noted that the *Wil-Roye* Court "declined to follow the court's ruling in *Plaza*" and decided to follow *Wil-Roye* rather than *Plaza*, finding that Texas law imposes additional requirements (presumably including the depositor being a shareholder of the bank and seeking the bank's advice).  694 F. Supp. 2d. at 1317.  Plaintiffs respectfully submit that the Court should have followed *Plaza* rather than *Wil-Roye*.  Although the El Paso Appellate Court's opinion in *Wil-Roye* was issued five years after *Plaza*, it did not overrule *Plaza* – which was issued by a different court, the Beaumont Appellate Court; it merely created a conflict which has not been resolved by the Texas Supreme Court.  The rule for federal courts endeavoring to apply Texas law is:  "If the law is unclear, this Court must predict how the Texas Supreme Court would rule."  *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 423 (5th Cir. 2006).  In attempting to predict how the Texas Supreme Court would rule, it is worth noting the different histories of *Plaza* and *Wil-Roye* with the Texas Supreme Court.  *Plaza* is designated "writ denied."

> "Writ denied" means that the Texas Supreme Court may not have been satisfied that the opinion of the court of appeals declared the law correctly, but was of the opinion that there was no reversible error or no error of law which is of such importance to Texas jurisprudence as to require correction.

*Hall v. Dow Corning Corp.*, 114 F.3d 73, 77 n.18 (5th Cir. 1997) (citing TEX. R. APP. P. 133, now TEX. R. APP. P. 56.1(b)(1)).  *Wil-Roye* is designed "no pet.," meaning no petition for Supreme Court review was filed.  Accordingly, while *Plaza* admittedly cannot be considered as Texas Supreme Court authority, it is noteworthy in trying to predict how the Texas Supreme Court would rule that the Texas Supreme Court reviewed the *Plaza* opinion and found either no reversible error or no error important enough to correct.  The holding in *Plaza* was crystal clear: "The recent case of *Arnold v. Nat'l County Mutual Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex. 1987), creates a duty of good faith and fair dealing upon a showing of a special relationship between the parties.  We hold that such a relationship exists between a bank and its depositor."

*Plaza*, 767 S.W.2d at 278.   The question of whether or not a bank has a duty to treat its customers fairly and with good faith is an important one; accordingly, if the Texas Supreme Court believed the Beaumont Court erroneously created this new duty, the error would certainly be important enough that the Texas Supreme Court would have corrected it.

This "writ denied" designation is at least some indication of Texas Supreme Court approval, which is lacking in the *Wil-Roye* opinion.   Plaintiffs believe this factor weighs in favor of finding the Texas Supreme Court, faced with the conflict between the El Paso and Beaumont Appellate courts, would agree with the El Paso court's holding in *Plaza* that the relationship between a bank and its depositor is sufficiently special to impose a duty of good faith and fair dealing.

Another indication that the Texas Supreme Court would approve of the *Plaza* decision is its reasoning in the *Arnold* opinion, cited in *Plaza*, discussing the policy behind its holding that the insurer/insured relationship is the type of special relationship where a duty of good faith and fair dealing should be imposed:

> In the insurance context a special relationship arises out of the parties' unequal bargaining power and the nature of insurance contracts which would allow unscrupulous insurers to take advantage of their insureds' misfortunes in bargaining for settlement or resolution of claims.   In addition, without such a cause of action insurers can arbitrarily deny coverage and delay payment of a claim with no more penalty than interest on the amount owed. An insurance company has exclusive control over the evaluation, processing and denial of claims.

*Arnold*, 725 S.W.2d at 167.   These characteristics of the insurer/insured relationship are true of the bank/depositor relationship.   (1) Banks and depositors have unequal bargaining power; (2) the nature of deposit contracts allow unscrupulous banks to take advantage of their depositors' misfortunes (e.g., difficulty in maintaining a positive balance) by gouging them with arbitrary and unreasonable fees; (3) without imposing a duty of good faith, banks can arbitrarily and unilaterally re-order transactions to maximize overdraft fees with no penalty; and (4) banks have exclusive control over the processing of transactions, and even more, the ability to unilaterally extract money from their depositors by directly debiting their accounts.

In the modern age, people do not keep their savings in the form of currency or gold stuffed under their mattresses or in a safe.   Most people's life savings is nothing more than an electronic number in a bank's computer system representing the depositor's balance.   Banks have

complete control of that very important electronic number, and the unilateral ability to reduce that number by, for example, manipulating transactions to generate additional fees. Accordingly, it is absurd to believe that these banks do not have a special relationship with their depositors, whose life savings they control, sufficient enough to impose a simple duty to act in good faith and deal fairly with them. The Texas Supreme Court's opinion in *Arnold* is a second good indication that the Texas Supreme Court would resolve the conflict between *Plaza* and *Wil-Roye* in favor of *Plaza*.

A final indication that the Texas Supreme Court would approve of the *Plaza* decision is the overwhelming majority of states, and the RESTATEMENT (SECOND) OF CONTRACTS, which find a duty of good faith and fair dealing to be present in *every* contract. *See* Plaintiffs' Opposition to Defendants' Omnibus Motion to Dismiss, pp. 35–41 [**DE # 265**]. Even if the Texas Supreme Court would not go as far as these states and the Restatement, it surely would recognize the duty in a relationship as special as that between banker and depositor.

**B.     Plaintiffs Sufficiently Allege that the Account Contract is Both Procedurally and Substantively Unconscionable.**

**1.     Plaintiffs' Request for Declaratory Relief that the Challenged Contractual Terms Are Unconscionable is Both Valid and Proper.**

Comerica's argument that neither Michigan nor Texas law recognize an affirmative claim for unconscionability is plainly incorrect. Under both Michigan and Texas law, courts have upheld claims seeking affirmative declaratory relief that the terms of a contract are unconscionable. *Whirlpool Corp. v. Grigoleit Co.*, 2007 U.S. Dist. LEXIS 7285, *16 (W.D. Mich. Feb. 1, 2007); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 139 (Tex. App. – Waco 2005, pet. denied). This principle is in line with the numerous other courts around the country that have sustained claims seeking affirmative declaratory relief that the terms of a contract are unconscionable. *See, e.g.*, *Williams v. First Gov't Mortg. & Inv. Corp.*, 225 F.3d 738, 748–49 (D.C. Cir. 2000); *Ross v. Wells Fargo Bank, N.A.*, 2009 WL 357921, at *2 (S.D. W. Va. Feb. 12, 2009); *Premiere Digital Access, Inc. v. Cent. Tel. Co.*, 360 F. Supp. 2d 1161, 1168 (D. Nev. 2005); *Eva v. Midwest Nat'l Mortgage Bank, Inc.*, 143 F. Supp. 2d 862, 895–96 (N.D. Ohio 2001). Indeed, consistent with these decisions, this Court recently denied a motion to dismiss directed against a claim for unconscionability seeking affirmative relief. *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279–80 (S.D. Fla. 2009).

As this Court held in the Omnibus Order,

> [i]f the overdraft fee provisions are found to be unconscionable, the Court retains the authority and discretion to fashion appropriate equitable relief.  Moreover, a declaration of unconscionability may affect the legal status of the contractual terms that Defendants seek to enforce, which may, in turn, affect the analysis of the other causes of action that Plaintiffs assert.

694 F. Supp. 2d at 1318.[6]

Furthermore, if this Court concludes that the challenged overdraft fee provisions are unconscionable, then it has the unquestionable authority to fashion appropriate relief – including ordering Comerica to return all fees collected pursuant to any terms declared unconscionable. *Eva*, 143 F. Supp. 2d at 896 (noting that once a plaintiff obtains a declaration that the contract or some of its terms are invalid, the plaintiff can further request damages to the extent that the unconscionable terms have been enforced in the past).

As for Comerica's remaining arguments on this issue, it provides no authority that Plaintiffs' specific request for a declaration of unconscionability is improper, nor has Comerica provided any authority for the absurd proposition that a specific, separate count for declaratory relief would even be necessary where a specific request for a declaration of unconscionability is expressly stated in the prayer for relief.  Def. Mem., p. 13 [**DE # 1084–1**].

## 2.    Comerica's Practices Are Unconscionable.

"[T]he notion of unconscionability is most frequently employed to shield disadvantaged and uneducated consumers from overreaching merchants."  *Lozada v. Dale Baker Oldsmobile, Inc.*, 91 F. Supp. 2d 1087, 1101 (W.D. Mich. 2000) (quoting *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 266 (E.D. Mich. 1976)); *see also In re Olshan Found. Repair Co., LLC*, 328 S.W.2d 883, 893 (Tex. 2010) (explaining, in the context of arbitration agreements, that "the unconscionability doctrine may protect unfairly disadvantaged consumers").  That is precisely

---

[6]  Defendant's arguments with respect to *Cowin Equipment Co., Inc. v. Gen. Motors Corp.*, 734 F.2d 1581 (11th Cir. Ala. 1984) are recycled ones that were previously considered and rejected by this Court in the Omnibus Order.  694 F. Supp. 2d. at 1318.  Furthermore, *Newman v. Roland Machinery Co.*, 2009 U.S. Dist. LEXIS 93991 (W.D. Mich. Oct. 8, 2009) can be distinguished on its facts, as in that case the court noted that based on the pleadings, it did not appear that the defendant was seeking enforcement of the contract.  Here, Defendant relies on the debated contract provisions to justify its actions in reordering transactions to charge excessive overdraft fees.

the situation here, and Plaintiffs have adequately alleged claims for unconscionability, both procedural and substantive.

> a.    **Plaintiffs    Have    Adequately    Alleged    Procedural Unconscionability.**

Procedural unconscionability speaks to whether there is a real and voluntary meeting of the minds of the contracting parties, and examines such factors as "age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976); *Wilcox v. Valero Ref. Co.*, 256 F. Supp. 2d 687, 691 (S.D. Tex. 2003) (noting that procedural unconscionability speaks to "the entire atmosphere in which the agreement was made; the alternatives, if any, available to the parties at the time the contract was made; the 'nonbargaining ability' of one party; whether the contract was illegal or against public policy; and whether the contract was oppressive or unreasonable"); *Abels*, 678 F. Supp. 2d at 1280 (explaining that "[p]rocedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand the disputed contract terms").

"Where a contract is prepared by one party and offered for rejection or acceptance without opportunity for bargaining under circumstances in which the party cannot obtain the desired product or service except by acquiescing in the form agreement," Michigan and Texas courts allow for a finding of procedural unconscionability. *Lozada*, 91 F. Supp. 2d at 1100; *Bartley v. Nat'l Union Fire Ins. Co.*, 824 F. Supp. 624, 635 (N.D. Tex. 1992) (stating that procedural unconscionability refers to a gross disparity in bargaining ability, and a court may find procedural unconscionability if the plaintiff presents evidence of the seller's overreaching or sharp practices combined with the buyer's ignorance or inexperience).

Examining these factors here, Plaintiffs have alleged sufficient facts that, taken together, weigh in favor of ultimately finding procedural unconscionability.  *See* ACAC, ¶ 36 [**DE # 990**] (alleging contracts of adhesion, presented on take-it-or-leave it basis without ability to negotiate; Comerica's superior bargaining power; complexity of 19-page, single-spaced, small-font,

contract); ¶ 36 (alleging inability to decline the overdraft protection service); ¶¶ 111–12 (same). As this court held in the Omnibus Order,

> the disparity in sophistication and bargaining power between Plaintiffs and Defendants is obvious.   The terms at issue were contained in voluminous boilerplate language drafted by the bank. If Plaintiffs did disagree with the terms, there was no meaningful opportunity to negotiate with the bank; rather, the bank would simply refuse to open an account for the customer as Defendants' counsel orally argued: ("That's why these terms are nonnegotiable, because it's automated.").   (*See* Oral Arg. Trans. 76:14–15.)   Moreover, Plaintiffs have alleged that they were not notified they had the option to decline the overdraft protection service (in which case the bank would simply decline to pay the merchant who presented the item for payment, rather that paying and charging the customer an overdraft fee), when in fact they did have that option.

694 F. Supp. 2d at 1319-20.  This holding comports with numerous other courts' holdings that bargaining inequality is an important component of the procedural unconscionability argument,[7] and is also consistent with prior authority of this Court.  *See Abels*, 678 F. Supp. 2d at 1280 (concluding the presence of these factors *alone* is sufficient to satisfy the procedural unconscionability).   It is also in line with Michigan and Texas law.  *Lozada*, 91 F. Supp. 2d at 1101 (finding procedural unconscionability where there was highly unequal bargaining power between car purchaser and dealership); *Bartley*, 824 F. Supp. at 635 (stating that procedural unconscionability refers to a gross disparity in bargaining ability, and a court may find procedural unconscionability if the plaintiff presents evidence of the seller's overreaching or sharp practices combined with the buyer's ignorance or inexperience).   Furthermore, procedural unconscionability has been found where, like here, the challenged provision is buried within the text of a lengthy document.  *High v. Capital Senior Living Props. 2–Heatherwood, Inc*., 594 F. Supp. 2d 789, 799 (E.D. Mich. 2008).   Without question, Plaintiffs have sufficiently alleged procedural unconscionability.

### b.   Plaintiffs Have Adequately Alleged Substantive Unconscionability.

Plaintiffs' pleadings regarding substantive unconscionability were similar to the pleadings found to be sufficient in the Omnibus Order, where the Court found:

---

[7]  *See, e.g.*, *Cordova v. World Fin. Corp. of NM*, 208 P.3d 901, 907–08 (N.M. 2009); *E. Ford, Inc. v. Taylor*, 826 So.2d 709, 714 (Miss. 2002); *Burch v. Second Jud. Dist. Court of State ex rel. County of Washoe*, 49 P.3d 647, 650 (Nev. 2002).

The Court finds that Plaintiffs have sufficiently pled substantive unconscionability. The Complaints state that deposit agreements contained contractual terms regarding overdraft protection that had the purpose and effect of allowing Defendants to re-order the posting of debit transactions to maximize the number and amount of overdraft fees charged to Plaintiffs, and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service. Moreover, Defendants are not entirely correct when they state that high-to-low posting is expressly condoned by the UCC. As discussed in the above section, the provision they rely on, section 4-303(b), applies only to paper checks, not the electronic debits that are the subject of this lawsuit. Although the Court recognizes that the UCC commentary suggests that courts may apply the UCC provisions by analogy, this is the exact set of circumstances in which the analogy breaks down . . . . Thus, [with paper checks,] banks are far more justified in adopting a specific check posting order, providing overdrafts services, and charging the customer an overdraft fee to account for the risk of insufficient funds. With electronic debit cards, however, the banks can know, at least in many circumstances, instantly whether there are sufficient funds and can decline the transaction immediately, decreasing the risk to all parties and obviating the need to "hold" the debit transactions for a period of time and then post them in a specific order. Thus, Defendants' reliance on UCC section 4 - 303(b) to defeat substantive unconscionability is misplaced.

694 F. Supp. 2d at 1321-21.

Here, Plaintiffs made the same allegations against Comerica, including deposit agreements with contractual terms that had the purpose and effect of allowing Defendant to re-order the posting of debit transactions to maximize the number and amount of overdraft fees charged to Plaintiffs (ACAC, ¶ 39); and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service. *Id.* at ¶¶ 26(i), 113. Plaintiffs also alleged that Comerica's account agreements were substantively unconscionable because they did not disclose the ability to opt out of the overdraft scheme (*id.* ¶ 72(a)); they did not require customer consent prior to processing a transaction that result in an overdraft fee, (*id.* ¶ 72(b)); they did not provide a mechanism to permit the customer to cancel a transaction that would result in an overdraft fee, (*id.* ¶ 72(c)); they did not include the overdraft fee amount in the actual Account Contract, but rather in a separate document, the Personal Services and Charges Brochure, which is not signed by the depositor (*id.* ¶ 72(e)); they do not unambiguously state that Comerica always reorders debits from high to low, even though Comerica always reorders transactions in this way in order to maximize overdrafts and overdraft fee revenues (*id.* ¶ 72(f)); they contain a jury trial waiver clause (*id.* ¶ 73); and they impose a $37 fee which is not

reasonably related to the cost of covering the overdraft or the risk of nonpayment or returning the item unpaid (*id.* ¶ 113).

This Court's holding in the Omnibus Order is entirely consistent with Michigan and Texas law.  Substantive unconscionability considers "the fairness, or oppressiveness of the contract itself" based on the totality of the circumstances as of the time it occurred.  *Nichols v. YJ USA Corp.,* 2009 U.S. Dist. LEXIS 22450 (N.D. Tex. Mar. 18, 2009).  Reasonableness is a key consideration in this inquiry.  *See Hubscher & Son, Inc. v. Storey*, 228 Mich. App. 478, 481 (Mich. Ct. App. 1998) (citing substantive reasonableness as a primary consideration in the unconscionability analysis); *Prevot v. Phillips Petroleum Co.*, 133 F. Supp. 2d 937, 940 (S.D. Tex. 2001)(noting substantive unconscionability relates to whether there are legitimate commercial reasons justifying the terms of the contract).

As set forth above, Plaintiffs have made a more than adequate showing that the overdraft fee provisions in the agreements are unreasonably favorable to the Banks, and the purpose and effect of those provisions are to negate the reasonable expectations of the customers.  The Banks rely on the unconscionable overdraft terms to manipulate transactions so as to wrongfully multiply fees – excessively large fees that customers *cannot* reasonably avoid, even when exercising due diligence to monitor their account balances and to maintain sufficient funds.[8] Further, the overdraft fees themselves are also substantively unreasonable, as the cost to the Banks to provide this "service" has *no reasonable relation* to the amount of the overdraft, nor to the actual cost of paying it – Defendant generally imposes uniform $37 overdraft fees on any and all transactions, even if the overdraft is for a $1 cup of coffee.  No reasonable person would ever have agreed to grant the banks the unfettered power to manipulate checking account transactions for the sole purpose of maximizing their profits at consumer expense.[9]  As such, Plaintiffs have sufficiently pleaded substantive unconscionability.

---

[8]  Defendant's contention that "Comerica Bank only charges an overdraft fee when the customer fails to keep a positive account balance" is false. (Def. Br. at 12).  As Plaintiffs' allegations amply set forth, Comerica's high-low posting practices result in overdraft fees being charged on transactions even when, at the time the transaction was made, customers held positive account balances.  *See* ACAC, ¶¶ 35, 56 [**DE # 990**].

[9]  The Court has also already considered and rejected Defendant's argument that its practices are somehow justified by or made reasonable by the UCC.  *See* 694 F. Supp. 2d at 1315.

C.     **The Complaint States a Plausible Claim for Conversion.**

Comerica moves to dismiss Plaintiffs' claim for conversion on three grounds:  (1) that "funds generally deposited with a bank become the bank's property" and a bank cannot convert its own property; (2) that Comerica Bank had the right to charge overdraft fees and debit them from Plaintiffs' accounts; and (3) that Plaintiffs failed to plead that they made a demand for the converted funds which is an essential element of conversion.  *See* Def. Mem., pp. 14–15 [**DE # 1084–1**].  These first two of these arguments were made and rejected in the Omnibus Order, (694 F. Supp. 2d at 1322-23), and the third is contrary to clear case law.

1.     **A Bank That Wrongfully Takes Funds From a Depositor Can be Liable for Conversion.**

First, the Court addressed the defendants' argument that banks cannot be guilty of converting money deposited by their customers.  *Checking Account Overdraft Litig.*, 694 F. Supp. 2d. at 1322.  The Court analyzed Plaintiffs' argument that a plaintiff can maintain a cause of action for conversion by "pleading a right to possession, rather than ownership, and that, even if title to the funds passes to the banks when the funds are deposited, Plaintiffs still retain a right to possess those funds at any time."  *Id.* (citing cases from New York, Florida, Washington, Illinois, and Georgia).  The Court reviewed the case law and found that conversion simply "requires interference with a property interest."  *Id.*  Based on this finding, the Court held:

> Here, Plaintiffs unquestionably had the right to possess the funds in their bank accounts upon demand to the bank, and they have alleged that Defendants wrongfully took funds from their accounts so that Plaintiffs were unable to possess and use those funds.  This interference with Plaintiffs' property interest in the funds in their accounts constitutes a cause of action for conversion. Moreover, as the above cases demonstrate, a conversion action is available for a bank's wrongful debiting of funds from a customer's account.

*Id.* at 1323.  Nothing compels a contrary decision under Michigan or Texas law.  As recently as last year, the Michigan Supreme Court clarified that under Michigan law, common law conversion consists of any "distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein" and "may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party."  *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 779 N.W.2d 237, 244–45 (Mich. 2010).  Defendant cites no Michigan cases in support of a contrary conclusion, instead citing only two Michigan cases for the general proposition that

funds generally deposited with a bank become the bank's property and can be used to pay debts owed to the bank. *See* Def. Mem., p. 15, n.59 (citing *Riverview Co-op, Inc. v. First Nat'l Bank & Trust Co. of Mich.*, 337 N.W.2d 225, 229–30 (Mich. 1983) and *Masonic Temple Ass'n Owosso v. State Savings Bank*, 263 N.W. 771 (Mich. 1935)). Neither of these cases supports Defendant's argument. The 1935 *Masonic Temple* opinion never mentions conversion. *Riverview Co-op* (which focused on the issue of election of remedies rather than the elements of conversion) involved a forgery victim who first obtained a conversion judgment against the forger, then was permitted to also sue the bank that wrongfully honored the forged checks. *Riverview Co-op*, 337 N.W.2d at 226. The present case is clearly distinguishable because the bank, rather than a third party, took the Plaintiffs' money. If a party other than Comerica Bank had improperly debited Plaintiffs' accounts for overdraft fees, then *Riverview Co-op* might support an argument that Plaintiffs' claim for conversion could only be brought against the other party and not against Comerica Bank. However, in the present case the entity that wrongfully charged the fees and the entity holding the deposits were one and the same – Comerica Bank. Accordingly, Plaintiffs' conversion claim is properly brought against Comerica Bank. Similarly, neither of the Texas cases cited addresses the issue. *E.g.*, *Sears v. Cont'l Bank & Trust Co.*, 562 S.W.2d 843, 844 (Tex. 1977); *Carson Energy, Inc. v. Riverway Bank*, 100 S.W.3d 591, 598 (Tex. App. – Texarkana 2003, pet. denied).

> ## 2. Plaintiffs Adequately Alleged that Comerica Bank Lacked the Right to Charge Overdraft Fees and Debit Plaintiffs' Accounts.

The Court also rejected the defendants' second argument, that the overdraft fees were authorized by the deposit agreements.

> First, if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendants may be barred from relying on them. Second, Plaintiffs have pled enough facts to show that, even if the deposit agreements gave Defendants discretion to re-order the debit postings, Defendants exercised that discretion in bad faith by intentionally causing Plaintiffs to incur overdrafts that they would not have otherwise incurred. These allegations could lead a reasonable factfinder to conclude that Defendants acted wrongfully in charging some of the overdraft fees, thereby converting Plaintiffs' funds. Thus, the Court cannot dismiss Plaintiffs' claim for conversion.

*Checking Account Overdraft Litig.*, 694 F. Supp. 2d. at 1323. Comerica Bank makes no argument to justify a contrary conclusion here.

### 3.      Plaintiffs Need Not Allege Demand for Converted Funds to State a Claim for Conversion.

Finally, Defendant argues that Plaintiffs' conversion claim fails due to Plaintiffs' failure to make demand for the converted funds.  However, Michigan law is clear that "demand for return of the property is ***not necessary*** if a conversion has occurred." *Trail Clinic, P.C. v. Bloch*, 319 N.W.2d 638, 641 (Mich. Ct. App. 1982) (emphasis added).  "A demand is unnecessary where the conversion results from fraud or other wrongful conduct and the . . . property has been wrongfully appropriated by the defendant for his own use and benefit." *Id.*  Here, the conversion resulted from Comerica Bank's wrongful conduct in processing charges from high to low in order to maximize overdraft charges, and Comerica Bank, by debiting Plaintiffs' accounts to collect these charges, appropriated funds from Plaintiffs' accounts for its own use and benefit. Accordingly, demand was not required.

Defendant cites three cases in support for its proposition that demand is an element of conversion under Michigan law.  *Pioneer Surgical Tech., Inc. v. Vikingcraft Spine, Inc.*, 2010 WL 2925970 at *3 (W.D. Mich. July 21, 2010); *Bush v. Hayes*, 282 N.W. 239 (Mich. 1938); and *Stone Computer, Inc. v. UAW-Chrysler Nat'l Training Ctr.*, 2010 WL 1872922, at *1 (Mich. Ct. App. May 11, 2010).  However each of these cases stands only for the common-sense proposition that when a defendant possesses plaintiff's property for a legitimate purpose, a plaintiff cannot sue for conversion until he asks for it to be returned.  As the *Trial Clinic* opinion makes clear, demand is not required when the conversion results from wrongful conduct and the defendant appropriates the property for its own use and benefit.  319 N.W.2d at 706.

In *Pioneer Surgical*, the court held that held a conversion claim did not accrue until the plaintiff made a demand for the property and defendant refused to relinquish it.  2010 WL 2925970, at *3.  Critically, the defendant was a distributor of plaintiff's products and thus understandably possessed plaintiff's inventory and property with plaintiff's permission.  *Id.* at *2–3.  The court correctly ruled that "the acts giving rise to conversion did not occur until sometime later when Pioneer made a demand for the property and Defendants refused to relinquish it." *Id.* at *3.  (The issue in Pioneer was not whether conversion was adequately pleaded, but rather whether the plaintiff demonstrated a substantial connection between the forum and plaintiff's claims).  Similarly, the other cases cited by Defendant both stand for the proposition that when "goods at issue were lawfully possessed by the defendant, the plaintiff

could not maintain an action for conversion until he first made demand for the return of his property." *Stone Computer*, 2010 WL 1872922 at *8 (citing *Bush v. Hayes* 268 Mich. at 552, 282 N.W. 239).[10]  In cases like *Bush* and *Stone Computer* it makes sense that conversion does not exist until demand is made, because the defendant possesses plaintiffs' property with plaintiff's permission until plaintiff requests its return.  Because Comerica Bank wrongfully appropriated the overdraft fees when it debited the fees from Plaintiffs' account and transferred the money to Comerica Bank's own account, Plaintiffs do not need to prove that they made demand for the converted funds to support their conversion claim.

Texas law produces the same result.  *See Sharpe v. Roman Catholic Diocese of Dallas*, 97 S.W.3d 791, 796 (Tex. App. – Dallas 2003, pet. denied) (explaining that conversion claim arises when plaintiff makes demand for return of property *or* when defendant exercises dominion over property inconsistent with claims of owner); *Buffet Partners, L.P. v. Sheffield Square, L.L.C.*, 256 S.W.3d 920, 924 (Tex. App. – Dallas 2000, no pet.); *Burns v. Rochon*, 190 S.W.3d 263, 270 n.2 (Tex. App. – Houston [1st Dist.] 2006, no pet.) (finding that, because "the demand and refusal elements of conversion are not required if other evidence establishes an act of conversion," a plaintiff need not demonstrate demand when defendant wrongfully seized plaintiff's property); *Edmunds v. Sanders*, 2 S.W.3d 697, 703 (Tex. App. – El Paso 1999, pet. denied) ("Demand and refusal are not necessary, however, when the possessor's acts manifest a clear repudiation of the plaintiff's rights").

### D.   The Complaint States a Plausible Claim for Unjust Enrichment.

Comerica contends that the unjust enrichment claim should be dismissed because "an action for unjust enrichment cannot lie in the face of an express contract," and because Plaintiffs fail to "allege grounds upon which Comerica's imposition of overdraft fees could lawfully be

---

[10]  In *Bush v. Hayes* (which involved the conversion of beans), the plaintiff delivered the beans to the defendant for storage prior to resale and obviously could not complain of conversion until he demanded they be returned.  282 N.W. at 551.  In *Stone Computer*, the defendant had the right to possess the property at issue until it defaulted on the terms of a sales agreement.  2010 WL 1872922, at *8.  The court found that because the defendant had lawful possession of the equipment prior to the default, the plaintiff had to demand possession of the collateral before it could hold the defendant liable for conversion.

unjust."[11]  These exact same arguments were rejected by the Court in its earlier Order.  694 F. Supp. 2d. at 1321-22.  For the reasons that they were rejected in that case, they must also be rejected here.

First, the unjust enrichment count in the Complaint is obviously pled in the alternative to the contractual-based claims.  *See* ACAC ¶¶ 102–109, 127–134.  Federal Rule of Civil Procedure 8(d)(2) expressly allows for such alternative pleading.  Accordingly, pursuant to Rule 8, the Court allowed the plaintiffs to pursue similar unjust enrichment claims in the alternative to the breach of contract claims.  694 F. Supp. 2d. at 1321.  Notwithstanding this ruling, Comerica's wholly ignores Rule 8's allowance for alternative pleading as well as the various authorities cited in the Omnibus Ruling, which plainly allow Plaintiffs to proceed with claims for breach of contract and unjust enrichment at this stage:

> The Court agrees with Plaintiffs' position.  Federal Rule of Civil Procedure 8(d) allows pleading in the alternative, even if the theories are inconsistent.  ***Defendants have not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under an unjust enrichment theory.***  *See Tracefone Wireless, Inc. v. Access Telecom, Inc.*, 2009 WL 2207818, *8 (S.D. Fla. 2009) ("Although plaintiff has alleged a breach of contract claim which I have concluded can proceed, it would be premature to dismiss  plaintiff's count for unjust enrichment  in this case."); *Mancini Enters v. Am. Express Co.*, 236 F.R.D. 695, 699 (S.D. Fla. 2006) ("[T]he court finds that plaintiff should be permitted to plead  alternative equitable claims for relief  as the existence of express contracts between the Parties has yet to be proven."); *Mobil Oil Corp. v. Dade County Esoil Mgmt. Co.*, 982 F.Supp. 873, 880 (S.D. Fla. 1997) ("Until an express contract is proven, a motion to dismiss a claim for promissory estoppels or unjust enrichment on these grounds is premature."). Hence, while the law does not permit a party to simultaneously prevail on an unjust enrichment theory and a contractual theory, ***it does not require the dismissal (at the motion to dismiss stage) of an unjust enrichment claim merely because an express contract exists that arguably governs the contract complained of.***  That argument may be properly raised at a later stage in this litigation, such as summary judgment.

694 F. Supp. 2d. at 1321-22 (emphasis added).  Without question, Comerica has not "conceded that Plaintiffs are entitled to recovery under the contract,"[12] and, therefore, Plaintiffs' claim for unjust enrichment, which is pled in the alternative, should not be dismissed.

---

[11]  Comerica does not dispute that the first element of unjust enrichment – the receipt of a benefit by the defendant from the plaintiff – is met here.  *See* Def. Mem., pp. 16-18.  Nowhere in its brief does Comerica deny receipt of benefit from Plaintiffs.

Second, the Complaint adequately alleges – through numerous, detailed allegations – that Comerica assessed and re-ordered overdraft fees in a deceptive and unjust fashion. *See, e.g.,* ACAC ¶¶ 1, 7–9, 24, 26, 35, 41–51, 52–61, 72–74, 75–95.   Against the backdrop of these allegations, Comerica's argument that there is nothing unjust about its re-ordering practices because it was "permissible" under the Account Agreement is woefully unavailing.   *See* Def. Mem., p. 17.   As the Court explained in rejecting this argument in its earlier Order:

> Defendants' second argument is that Plaintiffs fail to allege circumstances under which it would be unjust for Defendants to retain the benefit that they have allegedly received, chiefly because the overdraft fees are specifically provided for in the contracts.   The Court disagrees.   Plaintiffs have alleged sufficient facts— that, among other things, Defendants manipulated the posting order of debit transactions in bad faith so as to maximize the number of overdraft fees incurred—which could lead a reasonable factfinder to conclude that it would be unjust to retain the benefit of those fees.   Thus, the Court cannot dismiss the unjust enrichment count on this ground.

694 F. Supp. 2d. at 1321-22.   Because the Complaint here contains similar allegations, Comerica's motion to dismiss this claim should be denied.

Moreover, Comerica's reliance on *Hassler* is misplaced.   *See* Def. Mem., p. 17 n.67. The Third Circuit's decision in that case was predicated on its conclusion that defendant's account agreement "clearly reserved to Sovereign the right to post charges to the account each day in descending order of amount."[13]   *Hassler v. Sovereign Bank*, 2010 U.S. App. LEXIS 5445, at *11 (3d Cir. Mar. 15, 2010).   As the court explained, Sovereign's account agreement expressly provided, *inter alia*,[14] the following description of its debit posting practices:

> The order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day. Generally, we post your payment transactions each business day in

---

[12]   Indeed, Comerica is aggressively seeking dismissal of Plaintiffs' breach of contract claim.

[13]   It is also noteworthy that the Third Circuit issued the *Hassler* decision in a "non-precedential" opinion pursuant to Third Circuit Internal Operating Rule 5.7.   As another district court within the Third Circuit recently explained, this is significant because "the citation of such rulings . . . is discouraged and '[s]uch opinions are not regarded as precedents that bind the court because they do not circulate to the full court before filing'. . . .   Accordingly, the [Third Circuit's non-precedential] ruling in *Nafar* is not binding and cannot constitute a change in controlling law." *In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 134–35 (D.N.J. 2010) (internal citations omitted).

[14]   *See Hassler*, 2010 U.S. App. LEXIS 5445, at *3–4 (quoting several other sections of the Sovereign Account Agreement).

> descending order, starting with the largest payment order that is presented for payment. This means, for example, that your $900 mortgage payment will be paid before the $100 purchase you made at the supermarket. The order in which we post your transactions may affect whether you incur fees for insufficient or unavailable funds.

*Hassler*, 2010 U.S. App. LEXIS 5445, at *2–3.  Quite unlike *Hassler*, here, the Comerica Account Agreement only refers to the order in which debit transactions are "paid from" (as opposed to "posted to") Plaintiffs' accounts.  *See* ACAC, ¶ 39 [**DE # 990**].[15]  In addition, Comerica does not dispute Plaintiffs' allegation that the Account Agreement fails to reveal that its practice is to *always* re-order the posting of debit transactions from highest to lowest.  *See id.* Finally, setting aside the fact that Comercia Account Agreement is materially different from the one at issue in *Hassler*, the analysis in that decision is questionable at best.  Indeed, the *In re Checking Account* court cited to the district court's opinion in *Hassler* several times, yet refused to dismiss the unjust enrichment claim (and several others) based on this decision.[16]  As such, the better-reasoned analysis in *In re Checking Account* is not only directly applicable here, but also more persuasive, and Comerica's motion to dismiss the unjust enrichment claim should be denied.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that Comerica Bank N.A.'s motion to dismiss be denied.  Should the Court determine that any of Plaintiffs claims are subject to dismissal; Plaintiffs respectfully request leave to replead such claims pursuant to Rule 15 to correct any pleading deficiencies observed by the Court.

---

[15]  Plaintiffs alleged that the "Withdrawals" provision "refers to the order in which the bank pays these transactions to third parties, not the order in which the transactions are deducted from (or posted to) one's account."  ACAC, ¶ 39 [**DE # 990**].

[16]  The fact that the *In re Checking Account* court did not cite to the subsequently decided Third Circuit opinion in *Hassler* is irrelevant, as the Third Circuit simply affirmed the district court's decision *in toto*.  However, the Third Circuit's failure to even acknowledge (much less attempt to distinguish) Judge King's opinion in *In re Checking Account* calls into question the comprehensiveness of the analysis in that decision – particularly since the *In re Checking Account* decision was brought to the Third Circuit's attention in a notice of supplemental authority filing.  Further, neither the district court nor the Third Circuit decisions in *Hassler* even cite to two other recently decided overdraft cases:  *White, supra*, and *Gutierrez*, *supra*.

Dated: February 22, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@alterslaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271


/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008


/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

<u>/s/ Ruben Honik</u>
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
<u>rhonik@golombhonik.com</u>
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
<u>kgrunfeld@golombhonik.com</u>
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596