**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 1:09-MD-02036-JLK**

---

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE

*McKinley v. Great Western Bank*
W.D. MO Case No. 4:10-595
S.D. FL Case No. 1:10-cv-22770-JLK

---

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT GREAT WESTERN BANK'S MOTION**
**TO DISMISS THE AMENDED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ................................................................................................ 1

II.    STATEMENT OF FACTS .................................................................................. 1

III.   ARGUMENT ....................................................................................................... 3

       A.    Plaintiff States a Valid Claim for Breach of Contract and
             Breach of the Implied Duty of Good Faith and Fair Dealing ................................ 3

             1.   Plaintiff States a Valid Claim for Breach of Contract Because
                  GWB's Deposit Agreement Does Not Permit It to Reorder
                  Debit Card Transactions.............................................................................. 3

             2.   GWB Violated Its Obligation of Good Faith and
                  Fair Dealing Under the Deposit Agreement................................................ 4

             3.   GWB's Reliance on the Applicable State Laws' U.C.C.
                  and Previously Rejected Case Law is Misplaced........................................ 8

       B.    Plaintiff Has Properly Stated a Claim for Unconscionability ................................ 9

             1.   The Deposit Agreement Is Procedurally Unconscionable ........................ 11

             2.   The GWB Contract Is Substantively Unconscionable .............................. 12

       C.    Plaintiff Has Properly Stated a Claim for Conversion .......................................... 14

             1.   By Taking Funds From Plaintiff's Account, GWB
                  Converted Property Plaintiff Had a Right to Possess ............................... 14

             2.   GWB Wrongfully Interfered with Plaintiff's
                  Right of Possession ................................................................................... 17

       D.    Plaintiff's Alternative Claim For Unjust Enrichment Should Be
             Sustained At This Stage Of The Proceedings ....................................................... 18

       E.    Plaintiff Has Properly Alleged A Violation Of The
             Arizona Consumer Fraud Act ............................................................................... 20

             1.   The Challenged Conduct is Not Permitted Under State
                  and Federal Law ....................................................................................... 20

             2.   The Challenged Conduct Is the Type Prohibited by the ACFA .............. 22

       G.    GWB's Other Unlawful Practices Are Sufficiently Pled ...................................... 24

IV.    CONCLUSION .................................................................................................. 25

## TABLE OF AUTHORITIES

Page

CASES

*Abels v. JPMorgan Chase Bank, N.A.*,
    678 F. Supp. 2d 1273 (S.D. Fla. 2009) ...................................................................... 10

*Adams v. Am. Cyanamid Co.*,
    498 N.W.2d 577 (Neb. Ct. App. 1992) .................................................................. 11, 12

*Arnold & Assocs., Inc. v. Misys Healthcare Sys.*,
    275 F. Supp. 2d 1013 (D. Ariz. 2003) ...................................................................... 18

*Backus v. Apishapa Land & Cattle Co.*,
    615 P.2d 42 (Colo. Ct. App. 1980) .......................................................................... 18

*Baye v. Airlite Plastics Co.*,
    618 N.W.2d 145 (Neb. 2000) .................................................................................. 14

*Bike Fashion Corp. v. Kramer*,
    46 P.3d 431 (Ariz. Ct. App. 2002) .......................................................................... 6, 7

*Blackford v. Prairie Meadows Racetrack & Casino, Inc.*,
    778 N.W.2d 184 (Iowa 2010) .................................................................................. 14

*Byrne v. Hauptman, O'Brien, Wolf & Lathrop, P.C.*,
    608 N.W.2d 208 (Neb. Ct. App. 2000) .................................................................... 19

*Case Corp. v. Gehrke*,
    91 P.3d 362 (Ariz. Ct. App. 2004) .......................................................................... 15

*City of Golden v. Parker*,
    138 P.3d 285 (Colo. 2006) ........................................................................................ 6

*Commerce Trust Co. v. Watts*,
    231 S.W.2d 817 (Mo. 1950) ...................................................................................... 7

*Crowell v. Campbell Soup Co.*,
    264 F.3d 756 (8th Cir. 2001) ..................................................................................... 7

*Cruthis v. Firstar Bank, N.A.*,
    822 N.E.2d 454 (Ill. App. Ct. 2004) .................................................................. 15, 18

*Davis v. M.L.G. Corp.*,
    712 P.2d 985 (Colo. 1986) ...................................................................................... 12

*Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corr.*,
    977 S.W.2d 266 (Mo. 1998) ...................................................................................... 6

*First Union Nat'l Bank of Ga. v. Davies-Elliott, Inc.*,
    452 S.E.2d 132 (Ga. Ct. App. 1994) ........................................................................ 17

*Garrett v. BankWest, Inc.*,
    459 N.W.2d 833 (S.D. 1990) .................................................................................... 6

*Gutierrez v. Wells Fargo & Co.*,
    730 F. Supp. 2d 1080 (N.D. Cal. 2010) ............................................................... 6, 21

*Gutierrez v. Wells Fargo, N.A.*,
    622 F. Supp. 2d 946 (N.D. Cal. 2009) ................................................................. 8, 21

*Hassler v. Sovereign Bank*,
    644 F. Supp. 2d 509 (D.N.J. 2009) ........................................................................... 9

*Hippodrome Amusement Co. v. Redick*,
    191 N.W. 317 (Neb. 1922) ...................................................................................... 14

*Home Fed. Sav. & Loan Ass'n of Algona v. Campney*,
  357 N.W.2d 613 (Iowa 1984) ................................................................................... 11
*In re Checking Account Overdraft Litig.*,
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................. *passim*
*Ireland v. Dodson*,
  704 F. Supp. 2d 1128 (D. Kan. 2010) ................................................................... 18
*John Deere Leasing Co. v. Blubaugh*,
  636 F. Supp. 1569 (D. Kan. 1986) ........................................................................ 12
*Johnson v. Dodgen*,
  451 N.W.2d 168 (Iowa 1990) ............................................................................... 19
*Johnson v. Larson*,
  779 N.W.2d 412 (S.D. 2010) ................................................................................ 19
*Jones v. Bank of Am., N.A.*,
  No. 09-2129, 2010 WL 2572997 (D. Ariz. June 22, 2010) ......................... 12, 13
*Kan. Baptist Convention v. Mesa Operating Ltd. P'ship*,
  864 P.2d 204 (Kan. 1993) ...................................................................................... 6
*Katz v. Belmont Nat'l Bank of Chicago*,
  491 N.E.2d 1157 (Ill. 1986) ............................................................................ 15, 16
*Lonner v. Simon Prop. Group, Inc.*,
  866 N.Y.S.2d 239 (App. Div. 2008) .................................................................... 10
*Martin v. Prier Brass Mfg. Co.*,
  710 S.W.2d 466 (Mo. Ct. App. 1986) ................................................................... 6
*Master Lease Corp. v. Manhattan Limousine, Ltd.*,
  580 N.Y.S.2d 952 (App. Div. 1992) .................................................................... 10
*Maxwell v. Fidelity Fin. Servs., Inc.*,
  907 P.2d 51 (Ariz. 1995) ...................................................................................... 11
*Meyer v. Norwest Bank Iowa, N.A.*,
  112 F.3d 946 (8th Cir. 1997) ............................................................................... 14
*Myers v. Neb. Inv. Council*,
  724 N.W.2d 776 (Neb. 2006) ............................................................................... 11
*Narramore v. HSBC Bank USA, N.A.*,
  No. 09-635, 2010 WL 2732815, at *12 (D. Ariz. July 7, 2010) ......................... 23
*NCMIC Fin. Corp. v. Artino*,
  638 F. Supp. 2d 1042 (S.D. Iowa 2009) .............................................................. 15
*Newman v. Hinky Dinky Omaha-Lincoln, Inc.*,
  427 N.W.2d 50 (Neb. 1988) ................................................................................... 6
*Nicholas Homes, Inc. v. M&I Marshall & Ilsley Bank, N.A.*,
  No. 09-2079, 2010 WL 1759453 (D. Ariz. Apr. 30, 2010) ............................... 23
*Nygaard v. Sioux Valley Hosp. & Health Sys.*,
  731 N.W.2d 184 (S.D. 2007) ................................................................................ 11
*Paglia v. Elliott*,
  373 N.W.2d 121 (Iowa 1985) ............................................................................... 12
*Perdue v. Crocker Nat'l Bank*,
  702 P.2d 503 (Cal. 1985) ...................................................................................... 13
*Prof'l Recruiters, Inc.  v. Oliver*,
  456 N.W. 2d 103 (Neb. 1990) ............................................................................... 18

*Rawlings v. Apodaca,*
    726 P.2d 565 (Ariz. 1986) ........................................................................ 6
*Saunders v. Mich. Ave. Nat'l Bank,*
    662 N.E.2d 602 (Ill. App. Ct. 1996) ................................................... 7, 12
*Schubach v. Household Fin. Corp.,*
    376 N.E.2d 140 (Mass. 1978) .................................................................. 22
*Schumacher v. Tyson Fresh Meats, Inc.,*
    434 F. Supp. 2d 748 (D.S.D. 2006) .......................................................... 18
*Siebler Heating & Air Conditioning v. Jenson,*
    326 N.W.2d 182 (Neb. 1982) .................................................................... 19
*State ex rel. Corbin v. United Energy Corp. of Am.,*
    725 P.2d 752 (Ariz. Ct. App. 1986) ......................................................... 22
*Tex. & Pac. Ry. v. Pottorff,*
    291 U.S. 245 (1934) ............................................................................ 16, 17
*Union Pac. R.R. v. Cedar Rapids & Iowa City Ry.,*
    477 F. Supp. 2d 980 (N.D. Iowa 2007) .................................................... 18
*United Bonding Ins. Co. v. Swartz,*
    469 P.2d 89 (Ariz. Ct. App. 1970) ........................................................... 15
*USLife Title Co. of Ariz. v. Gutkin,*
    732 P.2d 579 (Ariz. Ct. App. 1986) ......................................................... 19
*Villegas v. Transamerica Fin. Servs., Inc.,*
    708 P.2d 781 (Ariz. Ct. App. 1985) ......................................................... 23
*White v. Wachovia, N.A.,*
    563 F. Supp. 2d 1358 (N.D. Ga. 2008) ............................................ *passim*

## STATUTES

11 U.S.C. § 101 ............................................................................................ 17
12 U.S.C. § 90 .............................................................................................. 17
12 U.S.C. § 92a ............................................................................................ 17
12 U.S.C. § 192 ............................................................................................ 17
25 U.S.C. § 156 ............................................................................................ 17
25 U.S.C. § 162 ............................................................................................ 17
25 U.S.C. § 162a ........................................................................................... 17
31 U.S.C. § 771 ............................................................................................ 17
48 U.S.C. § 780 ............................................................................................ 17
Ariz. Rev. Stat. Ann. § 44-1521(5) .............................................................. 22
Ariz. Rev. Stat. Ann. § 44-1522 .................................................................. 22
Ariz. Rev. Stat. Ann. §§ 44-5001, *et seq.* .................................................. 22
Ariz. Rev. Stat. Ann. § 47-4A-504 ........................................................... 8, 20
Colo. Rev. Stat. § 4-4.5-504 .......................................................................... 8
Iowa Code § 554.12504 .................................................................................. 8
Kan. Stat. Ann. § 84-4a-504 ........................................................................... 8
Mo. Rev. Stat. § 400.4-303(b) ........................................................................ 8
Neb. Rev. Stat. UCC § 4A-504 ....................................................................... 8
S.D. Codified Laws § 57A-4A-504 ................................................................. 8
U.C.C. § 3-101, *et seq.* (2009) ...................................................................... 8

U.C.C. § 4-101, *et seq.* (2009) ................................................................................ 8
U.C.C. § 4-303 ..................................................................................................... 8, 9
U.C.C. § 4A-504 .................................................................................................... 20

## RULES

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 10, 13
Fed. R. Civ. P. 15 .................................................................................................. 25
Third Circuit LAR, App. I, IOP 5.7 .......................................................................... 9

## OTHER AUTHORITIES

OCC Interpretive Letter No. 464, 1988 WL 284846 (Dec. 14, 1988) ......................................... 17

## I.      INTRODUCTION

In his Amended Complaint ("AC"), Plaintiff seeks to recover, for himself and all other customers similarly situated, excess overdraft fees generated and retained through the unlawful practices of Great Western Bank ("GWB") including, among other things, its manipulation and reordering of debit card transactions from largest to smallest to generate more overdrafts and overdraft fees.   GWB seeks dismissal of Plaintiff's claims based on arguments that this Court has already rejected in ruling on the First and Third Tranches' motions to dismiss.  As demonstrated below, GWB's arguments are without merit and its Motion to Dismiss ("MTD") should be denied in its entirety.

## II.     STATEMENT OF FACTS

Plaintiff, Michael McKinley ("Plaintiff"), is a resident of Arizona and had an account at GWB.  AC ¶¶ 12, 69.  Plaintiff asserts claims against GWB for breach of contract, breach of the covenant of good faith and fair dealing, unconscionability, conversion, and unjust enrichment on behalf of himself and all U.S. customers who incurred overdraft fees as a result of GWB's practice of reordering debit card transactions ("National Class").  AC ¶¶ 15, 83-121.  He also asserts claims for violations of the Arizona Consumer Fraud Act ("ACFA") on behalf of himself and all GWB customers having accounts at branches in Arizona who incurred overdraft fees as a result of these practices ("Subclass").  AC ¶¶ 15, 83-121.   Both the National Class and the Subclass are hereinafter collectively referred to as the "Classes."  The allegations made and common law claims asserted by Plaintiff against GWB mirror those pled by the plaintiffs against the First and Third Tranche banks.

Plaintiff and all members of the Classes maintain or maintained a checking account with GWB, the terms of which were contained in standardized account holder agreements.  AC ¶ 31.  A representative copy of GWB's account holder agreements is attached as Exhibit A to the AC

("Deposit Agreement"). The Deposit Agreement is an unconscionable contract of adhesion. AC ¶¶ 32, 90-94.

The Deposit Agreement, in addressing payment order of checks or drafts, states that GWB "*may, at our discretion,* pay the item (creating an overdraft) or return the item (NSF)" and that it is GWB's "policy is to pay them according to the dollar amount." AC ¶ 32 (emphasis added). The Deposit Agreement is silent, however, regarding the posting order of debit card transactions and GWB fails to disclose to its customers its policy and practice of *always* reordering debit card transactions from highest to lowest dollar value. AC ¶¶ 37-38, 42-46. GWB manipulates and reorders debits from highest to lowest solely to increase the number of exorbitant overdraft fees it can charge. AC ¶ 37. Moreover, GWB holds debits for multiple days, batches them together to maximize the number of overdraft transactions and fees, and assesses overdraft fees for transactions that occurred when there were sufficient funds in the customers' accounts to cover the transactions. AC ¶¶ 46-47.

Further, GWB did not: (i) disclose to customers that they may "opt out" of GWB's overdraft scheme; (ii) provide an opportunity to cancel the debit transaction before incurring an overdraft fee; or (iii) obtain affirmative consent from customers prior to processing transactions that will overdraw their accounts and result in overdraft fees. AC ¶¶ 57, 58, 59, 67. GWB also engages in deceptive and manipulative practices, in addition to those described above, to cloak accurate information regarding customer balances. AC ¶¶ 48-56. Its overdraft policies and practices and the reordering provisions of its Deposit Agreement are procedurally and substantively unconscionable. As a direct consequence of GWB's unlawful conduct, Plaintiff and the Classes have suffered damages. AC ¶¶ 77-82.

III.   **ARGUMENT**

    A.   **Plaintiff States a Valid Claim for Breach of Contract and Breach of the Implied Duty of Good Faith and Fair Dealing.**

        1.   **Plaintiff States a Valid Claim for Breach of Contract Because GWB's Deposit Agreement Does Not Permit It to Reorder Debit Card Transactions.**

GWB claims there was no breach of contract because its Deposit Agreement expressly permits it to post debits in high-to-low order. Defendant's Memorandum in Support of Its Motion to Dismiss Plaintiff's Amended Class Action Complaint (hereinafter "Def. Mem.") at 3-4 [D.E. 1078]. However, the express terms of the Deposit Agreement on which GWB solely relies only relates to the posting of checks or drafts, not debit card transactions, and is merely a restatement of what the U.C.C. allows with regard to checks or drafts.

The Deposit Agreement is silent as to debit transactions of the type at issue in this lawsuit. The "PAYMENT ORDER OF ITEMS" section of the Deposit Agreement states that "[t]he law permits us to pay items *(such as checks or drafts)* drawn on your account in any order." AC Ex. A at 2 (emphasis added). In addition, the section states that the reason for GWB's policy of posting checks or drafts from highest to lowest dollar value is to make sure that important items like rent or mortgage payments are paid first – items that are rarely, if ever, paid with a debit card. Further, the section ends by stating that the information GWB provides regarding its posting practice will "help you to avoid writing *checks or drafts* without sufficient funds and incurring the resulting fees." AC Ex. A at 2 (emphasis added). The section provides no authority to reorder debit card transactions and to do so for the sole purpose of maximizing overdraft fees, to reorder debit card transactions over days without notice to the customer, or to charge overdrafts where there are sufficient funds in the account to cover the transactions. Ultimately, the "PAYMENT ORDER OF ITEMS" section provides no notice to the accountholder that GWB intends to reorder debit card

transactions. As a contract of adhesion, the Deposit Agreement should be construed against its drafter, GWB.

Given that the Deposit Agreement speaks only to the posting of checks or drafts, and the rationale for GWB's posting practice as it relates to checks and drafts is not applicable to the types of transactions that are the subject of this lawsuit, customers would reasonably expect that GWB would not apply its reordering practice to debit card transactions. The Deposit Agreement, by not stating that GWB is going to hold and reorder debit card transactions, gives the accountholders no reason to believe that debit card transactions will be manipulated in such a manner. Thus, if overdrafts are caused as a result of the holding and reordering of debit transactions, then GWB has breached the terms of its banking relationship with its customers who have used a debit card.

### 2. GWB Violated Its Obligation of Good Faith and Fair Dealing Under the Deposit Agreement.

According to GWB, since its Deposit Agreement permits the high-to-low posting [although not with respect to debit card transactions], it can post high-to-low irrespective of the methods it employs or its rationale for doing so, and it has no discretion but to post items in high-to-low order. Def. Mem. at 5. The Deposit Agreement is to the contrary. First, as stated above, the Deposit Agreement does not disclose or dictate GWB's practices with respect to posting debit card transactions. By failing to address posting practices for debit card transactions, GWB either lacks the authority to reorder them or, at a minimum, must do so in good faith. Moreover, the Deposit Agreement provides that "[i]f an item is presented without sufficient funds in your account to pay it, we *may*, at our discretion, pay the item (creating an overdraft) or return the item (NSF)." AC Ex. A at 2 (emphasis added). This provision gives GWB discretion in paying the item or returning it, which, if to be applied to debit card transactions, imposes an obligation of good faith and fair dealing on GWB when GWB chooses whether to pay or "return" such

- 4 -

transactions and the order of their posting.  GWB has an obligation to assess overdraft fees in good faith so as to not manipulate transactions in order to create multiple overdrafts and overdraft fees by holding and reordering debit card transactions.  *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1314-15 (S.D. Fla. 2010).   Further, consistent with it contractual obligations, it certainly has no right to charge overdraft fees where there are sufficient funds in the account.  AC ¶ 47.[1]

GWB's claim, that this case is different than that of the other banks in the First Tranche because its Deposit Agreement provides that it is "or [sic] policy" to post in a high-to-low order and high-to-low posting is not contrary to the Deposit Agreement, misses the point.  Def. Mem. at 3, 4.  The cited language does not apply to the posting of debit card transactions, as discussed above, nor does such language eliminate GWB's obligations to exercise that policy and its discretion in posting debit card transactions and deciding whether to pay or "return" them in good faith.  Plaintiff's breach of contract claim rests on whether the Deposit Agreement authorized GWB to reorder debit card transactions and create overdrafts and, if it did, whether GWB exercised its discretion to post *debits* in high-to-low order and carry out its other practices alleged to be wrongful in good faith.  "Plaintiffs do not ask the Court to tell the [bank] how to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing." *Overdraft Litig.,* 694 F. Supp. 2d at 1315.

GWB does not dispute that the states in which it operates all recognize an implied covenant of good faith and fair dealing in the performance of contracts.  Def. Mem. at 4, *see*

---

[1] GWB's reliance on the Deposit Agreement is also misplaced since, as this Court noted:  "a declaration of unconscionability may affect the legal status of the contractual terms that Defendants seek to enforce, which may, in turn, affect the analysis of the other causes of action that Plaintiffs assert." *Overdraft Litig.*, 694 F. Supp. 2d at 1318.  Thus, if the Court were to find those same provisions to be unconscionable and therefore unenforceable, as it should, then GWB's duty of good faith and fair dealing would also be violated.

*Rawlings v. Apodaca,* 726 P.2d 565, 569 (Ariz. 1986); *City of Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006); *Kan. Baptist Convention v. Mesa Operating Ltd. P'ship*, 864 P.2d 204, 210-11 (Kan. 1993); *Farmers' Elec. Coop., Inc. v. Mo. Dep't of Corr.,* 977 S.W.2d 266, 271 (Mo. 1998); *Newman v. Hinky Dinky Omaha-Lincoln, Inc.*, 427 N.W.2d 50, 54 (Neb. 1988); *Garrett v. BankWest, Inc.*, 459 N.W.2d 833, 841 (S.D. 1990). These states all recognize that the covenant is violated by exercising discretion inconsistent with the reasonable expectations of a party or by denying the contract's expected benefits to a party. *See Bike Fashion Corp. v. Kramer*, 46 P.3d 431 (Ariz. Ct. App. 2002); *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo. Ct. App. 1986); *Garret v. BankWest, Inc*., 459 N.W.2d 833, 841 (S.D. 1990).

This Court may easily reject GWB's arguments against the breach of contract claim based on case authority the Court has already examined which mirrors that applicable in the states in which GWB operates. *Overdraft Litig*, 694 F. Supp. 2d at 1315-17. Like the plaintiffs in *White v. Wachovia, N.A.*, 563 F. Supp. 2d 1358, 1364 (N.D. Ga. 2008), Plaintiff alleges that GWB manipulates and alters his transactions records, imposes overdraft fees even where his account contains sufficient funds to cover a transaction, and routinely enforces a policy whereby charges incurred are posted to his account in order of largest to smallest amounts, even where larger charges are received days after smaller charges.[2] AC ¶¶ 42-47.

---

[2] To the extent a breach of an express term is required, as GWB claims, the AC's allegations identify express terms in the Deposit Agreement that have been breached. For example, GWB breaches the Deposit Agreement by reordering debit card transactions, not just checks or drafts as provided in its "Payment Order of Items" provision. AC ¶¶ 32, 33, Ex. A at 2. The Deposit Agreement states explicitly "If an item is presented without sufficient funds in your account to pay it, we may, at our discretion, pay the item (creating an overdraft) or return the item (NSF). However, GWB charges overdraft fees even when sufficient funds are *available* for particular transactions. AC ¶¶ 22(f), 22(h), 47, 52, 55, 75, 81. In any event, as in *White*, there is no provision in GWB's Deposit Agreement that expressly gives it the right to manipulate transactions, delay posting indefinitely, or maximize overdraft fees in the ways the AC alleges. 563 F. Supp. 2d 1358, 1364 (N.D. Ga. 2008); *see also Gutierrez v. Wells Fargo & Co.*, 730 F. Supp. 2d 1080, 1122 (N.D. Cal. 2010) (finding that the duty of good faith precluded the Bank

The cases cited by GWB are all distinguishable because the contracts at issue in them, unlike the Deposit Agreement here, conferred no discretion and clearly and unambiguously defined the parameters of the parties' conduct.  Def. Mem. at 6.  For example, in *Saunders v. Michigan Avenue National Bank,* 662 N.E.2d 602 (Ill. App. Ct. 1996), the court ruled that the bank contract was clear, unambiguous, and without discretion.  *See also Crowell v. Campbell Soup Co.,* 264 F.3d 756 (8th Cir. 2001) (holding the same in a case involving Minnesota law and an unconditional contractual right to terminate).  In *Commerce Trust Co. v. Watts,* 231 S.W.2d 817 (Mo. 1950), the court similarly held that the bank contract was clear and unambiguous and could not be changed.  The issue in that case was the application of the statute of frauds, which is restrictively applied, not the covenant of good faith and fair dealing, which is broadly construed and implied in every contract.  Unlike the cited cases and as made clear above, the Deposit Agreement does not authorize reordering of debit card transactions, nor is it clear, unambiguous, or without discretion.

Further, GWB's reliance on *Bike Fashion,* 46 P.3d at 431, is curious at best.  *Bike Fashion* indeed states the "general rule that implied covenant of good faith and fair dealing cannot contradict express contract terms."  There are no such terms here.  Moreover, the court further explained: "[I]nstances inevitably arise where one party exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain."  *Bike Fashion,* 46 P.3d at 435.  Even if GWB had authority to reorder, which Plaintiff argues it did not as a result of its silence regarding posting debit card transactions, GWB's reordering practices denied Plaintiff the benefit of his bargain.  Thus, Plaintiff must be permitted the opportunity to conduct discovery to demonstrate that GWB's practices of posting

---

from "exercising that discretion to turn what would ordinarily be one overdraft into as many as ten").

high-to-low, manipulating transactions, delaying posting, and maximizing overdraft fees in the ways the AC alleges violate the Deposit Agreement and GWB's duty of good faith and fair dealing.

> **3.      GWB's Reliance on the Applicable State Laws' U.C.C. and Previously Rejected Case Law is Misplaced.**

GWB also relies on U.C.C. § 4-303, which governs paper check transactions, to argue that its high-to-low posting is authorized by the law of each state in which a bank branch is located. Def. Mem. at 6-9.  GWB adds nothing new to this argument that already has been considered and rejected by this Court.  The statutory language of the U.C.C. provisions in the states where GWB has branch locations is the same (or is not materially different) as the state law which was considered and rejected by this Court as supporting the banks' conduct.[3]  *See Overdraft Litig.*, 694 F. Supp. 2d at 1315-16 ("The UCC's generally accepted principles when dealing with checks cannot be broadly applied to debit card transactions.  To do so would be to ignore the fundamental differences between the two."); *see also Gutierrez v. Wells Fargo, N.A.,* 622 F. Supp. 2d 946, 951-52 (N.D. Cal. 2009) (Section 4-303 does *not* apply to debit card transactions).[4]  Therefore, GWB's argument that debit card transactions constitute "payment orders" under the U.C.C. is completely

---

[3] *See* Ariz. Rev. Stat. Ann. § 47-4A-504; Colo. Rev. Stat. § 4-4.5-504; Iowa Code § 554.12504; Kan. Stat. Ann. § 84-4a-504; Mo. Rev. Stat. § 400.4-303(b); Neb. Rev. Stat. UCC § 4A-504; S.D. Codified Laws § 57A-4A-504.

[4] In *Gutierrez*, Judge Alsup correctly concluded that U.C.C. section 4-303(b) is *inapplicable* in part because that section governs the relationship between the bank and the payee or presenter of items, rather than the relationship between the bank and the depositor.  As Judge Alsup recognized, section 4-303(b) is included in part 3 of section 4 of the U.C.C., entitled "COLLECTION OF ITEMS: PAYOR BANKS."  U.C.C. § 3-101, *et seq.* (2009).  Significantly, there is no similar language in part 4 of section 4, entitled "RELATIONSHIP BETWEEN PAYOR BANK AND ITS CUSTOMER."  *See* U.C.C. § 4-101, *et seq.* (2009).  In addition, section 4-303(a) – the paragraph that immediately precedes section 4-303(b) – plainly applies to the relationship between the bank and a payee or presenter, not between the bank and the depositor. *See* U.C.C. § 4-303(a).  It is clear from the paragraph's placement that it was *solely* intended to govern the relationship between banks and presenters, not banks and depositors.

inaccurate. Def. Mem. at 7-9 n.7. The language used by GWB in the "PAYMENT ORDER OF ITEMS" section of the Deposit Agreement is merely a restatement of what the U.C.C. allows with regard to checks and drafts and is drafted to reflect that distinction. This circumstance bolsters Plaintiff's position that the Deposit Agreement does not set forth a GWB policy for reordering debit card trasactions as it purports to do with checks or drafts.

Moreover, section 4-303(b) merely permits financial institutions discretion to post items "in any order." As discussed above, this discretion is subject to a duty of good faith. *Overdraft Litig.*, 694 F. Supp. 2d at 1315. This Court should reject GWB's claim that Missouri law authorized its high-to-low debit posting. Def. Mem. at 7.

The case authority cited by GWB in its argument that courts have "repeatedly dismissed as a matter of law claims for breach of contract based on the implied covenant, in cases challenging high-to-low posting" is the same that has already been considered and found to be inapplicable by this Court. Def. Mem. at 9-10; *Overdraft Litig.*, 694 F. Supp. 2d at 1316. The cases cited involved checks, not debit card transactions, with the exception of *Hassler v. Sovereign Bank,* 644 F. Supp. 2d 509 (D.N.J. 2009), *aff'd*, No. 09-2982, 2010 WL 893134 (3d Cir. Mar. 15, 2010), which was relied upon the banks in the First and Third Tranches on their unsuccessful motions to dismiss and which is not binding precedent even in the Third Circuit. *See* Third Circuit LAR, App. I, IOP 5.7. Moreover, the case is clearly distinguishable by the factual differences in the language of the deposit agreements and the extent of the wrongful practices alleged here. Consequently, GWB's attempt to dismiss this claim must be denied.

### B. Plaintiff Has Properly Stated a Claim for Unconscionability.

Like all the banks before it, GWB erroneously contends that Plaintiff fails to state a claim for unconscionability in the states in which its branches are located because neither the procedural nor the substantive elements of unconscionability are present. Def. Mem. at 10-14. The law of

these states on unconscionability is similar in all respects to the law of the states which this Court has already examined.   Thus, not only is GWB attempting to reargue similar challenges to unconscionability rejected by this Court, but these allegations fail under the law applicable in this case.  *See Overdraft Litig.*, 694 F. Supp. 2d at 1317-21; *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279-80 (S.D. Fla. 2009).[5]   Moreover, determinations regarding unconscionability are fact intensive, thus making a Fed. R. Civ. P. 12(b)(6) motion inappropriate.

As for GWB's assertion that the only relief available for contract unconscionability is rescission (Def. Mem. at 11), this Court has previously determined that it has the power to fashion appropriate equitable relief if it ultimately finds the banks' contracts to be unconscionable:

> If the overdraft fee provisions are found to be unconscionable, the Court retains the authority and discretion to fashion appropriate equitable relief. Moreover, a declaration of unconscionability may affect the legal status of the contractual terms that Defendants seek to enforce, which may, in turn, affect the analysis of the other causes of action that Plaintiffs assert.

*Overdraft Litig.*, 694 F. Supp. 2d at 1318.  Moreover, GWB's claim that "no state allows recovery of monetary damages based on an unconscionable clause or provision in a contract" (Def. Mem. At 11) is simply wrong.  *Lonner v. Simon Prop. Group, Inc.*, 866 N.Y.S.2d 239, 245 (App. Div. 2008) (holding that a declaration that terms are unconscionable can give rise to a breach of contract action); *Master Lease Corp. v. Manhattan Limousine, Ltd.*, 580 N.Y.S.2d 952, 953 (App. Div. 1992) ("If the disclaimer of warranties provision in the subject lease were to be held

---

[5] GWB also argues that Plaintiff does not allege that a contract or clause was unconscionable at the time the contract was made.  Def. Mem. at 10.  To the contrary, among other allegations, Plaintiff alleges that GWB "[r]equires its customers to enter into standardized agreements which include unconscionable provisions."  AC ¶ 21(k).  Plaintiff also alleges that a number of factors, including, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, and the oppressiveness of its terms, render the terms of the Deposit Agreement unconscionable.  AC ¶ 92.  The Deposit Agreement was unconscionable when made and it remains so.

unconscionable by the court, as a matter of law, then the defendants' counterclaim against Master which seeks damages for breach of warranty, would be a viable one.").

### 1.    The Deposit Agreement Is Procedurally Unconscionable.

Plaintiff has sufficiently alleged procedural unconscionability which focuses on bargaining position, inability to negotiate the terms, confusing or unclear language, unfair surprise, and an inability to shop around for more favorable terms. *Adams v. Am. Cyanamid Co.*, 498 N.W.2d 577, 591 (Neb. Ct. App. 1992); *Maxwell v. Fidelity Fin. Servs., Inc.*, 907 P.2d 51, 57-58 (Ariz. 1995*); see also Nygaard v. Sioux Valley Hosp. & Health Sys.,* 731 N.W.2d 184, 194-95 (S.D. 2007); *Myers v. Neb. Inv. Council*, 724 N.W.2d 776, 799 (Neb. 2006).  Here, Plaintiff alleges that the sophistication and bargaining power of GWB dwarfs that of Plaintiff and that GWB's agreement, which is drafted and offered on a take-it-or-leave-it basis, is a boilerplate contract. AC ¶¶ 31, 91, 92.  Moreover, because the agreements provided by other similar banks all contain language purporting to allow reordering of debit card transactions as the banks in the MDL assert, customers lack the ability to shop around for more favorable terms. *See*, *e.g.*, *Myers*, 724 N.W.2d at 799.  GWB's agreement does not even adequately advise customers of their right to opt-out of the overdraft procedures.  AC ¶ 59.

Given the above, it is clear that the Deposit Agreement is a classic contract of adhesion. Contrary to GWB's claims, Plaintiff does not contend that merely because the Deposit Agreement is a contract of adhesion that it is therefore *per se* unconscionable.  Rather, as GWB's own authorities agree, the undisputed fact that the contracts are adhesive is a significant factor in determining that the contracts are unconscionable.  *See, e.g.*, *Home Fed. Sav. & Loan Ass'n of Algona v. Campney*, 357 N.W.2d 613, 619 (Iowa 1984) ("Clearly a finding that a contract is adhesive does not require a determination of unconscionability.  *It merely alerts the court that the situation is one in which such a finding may be justified.*" (emphasis added)).

In support of the proposition that the Deposit Agreement is not procedurally unconscionable, GWB cites to *Saunders v. Michigan Avenue National Bank*, 662 N.E.2d 602, 611 (Ill. App. Ct. 1996). *Saunders*, however, is distinguishable. This very Court highlighted the differences between *Saunders* and the cases in this MDL. In its Omnibus Order, this Court held that the plaintiffs in *Saunders* were in different situations from the MDL plaintiffs' due to the MDL plaintiffs' allegations of "disparity in sophistication and bargaining power between Plaintiffs and Defendants," and their allegations that the agreement was drafted and offered on a take-it-or-leave-it basis with "boilerplate language." *Overdraft Litig.*, 694 F. Supp. 2d at 1319. Thus, Plaintiff has sufficiently alleged procedural unconscionability.

## 2.  The GWB Contract Is Substantively Unconscionable.

Substantive unconscionability has also been sufficiently alleged. The analysis of substantive unconscionability requires "look[ing] at the actual terms of the contract and examin[ing] the relative fairness of the obligations assumed." *Jones v. Bank of Am., N.A.*, No. 09-2129, 2010 WL 2572997, at *10 (D. Ariz. June 22, 2010) (citation and internal quotations omitted). Substantive unconscionability occurs when there are "contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.*; *see also Ad*ams, 498 N.W.2d at 591; *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986); *Paglia v. Elliott*, 373 N.W.2d 121, 126 (Iowa 1985); *John Deere Leasing Co. v. Blubaugh*, 636 F. Supp. 1569, 1573-75 (D. Kan. 1986).

Here, the overdraft fee provisions in the Deposit Agreement are unreasonably favorable to GWB, and have the purpose and effect of negating the reasonable expectations of the customers. The AC examines the contract terms and alleges that they "had the purpose and effect of allowing defendants to manipulate and re-order the posting of debit card transactions to maximize the

number and amount of overdraft fees to Plaintiffs." *Overdraft Litig.*, 694 F. Supp. 2d at 1320. No reasonable person would ever have agreed to grant GWB the unfettered power to manipulate debit card transactions for the sole purpose of maximizing its profits at his or her expense.

Further, Plaintiff alleges that customers *cannot* reasonably avoid the wrongful fees, even when exercising due diligence to monitor their account balances and to maintain sufficient funds. AC ¶¶ 40, 64. GWB: (1) employs a policy of delaying the posting of debit transactions, which prevents customers from determining accurate account balances (AC ¶ 56); (2) provides inaccurate balance information through its electronic network (AC ¶ 50); and (3) often informs customers that they have a positive balance when, in reality, they have a negative balance (AC ¶ 50). Moreover, whether Plaintiff was able to prevent the alleged harm is a question of fact that is not ripe for resolution on a Rule 12(b)(6) motion.

In addition, the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service. Yet another aspect of the substantive unconscionability of the challenged contractual terms is the disparity between the cost and the value of the service rendered on one hand, and, on the other, its price. *See Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 512-13 (Cal. 1985) (allegations of overdraft fees of $6 deemed sufficient to maintain unconscionability claim); s*ee also Jones v. Bank of Am., N.A*., 2010 WL 2572997, at *10. As alleged, GWB imposes uniform $33 overdraft fees on transactions in which a customer has overdrawn his account. AC ¶ 7. However, the cost to GWB to provide this "service" has *no reasonable relation* to the amount of the overdraft, nor to the actual cost of covering it. AC ¶ 22(i). This fact alone dictates that the substantive unconscionability claim is legally sufficient and should withstand the motion to dismiss.

GWB argues that the practice of ordering debit card transactions from high-to-low is a "routine banking practice," authorized by the U.C.C. Def. Mem. at 13. This Court has addressed

and dismissed this very argument, noting that "the provision they rely on, Section 4-303(b), applies only to paper checks, not the electronic debits that are the subject of this lawsuit." *See Overdraft Litig.*, 694 F. Supp. 2d at 1320.

Thus, Plaintiff sufficiently alleged both procedural and substantive unconscionability. Therefore, GWB's motion to dismiss Plaintiff's claim for unconscionability should be denied.

### C.      Plaintiff Has Properly Stated a Claim for Conversion.

As with the other arguments addressed herein, GWB repeats an argument previously considered and rejected by this Court. *Overdraft Litig.*, 694 F. Supp. 2d at 1322-23. GWB argues that Plaintiff did not own or have title to the funds that were taken by GWB to pay the overdraft fees imposed. This Court should again conclude that a conversion claim has been validly pled as to the funds taken from Plaintiff's account for the overdraft fees assessed.

### 1.      By Taking Funds From Plaintiff's Account, GWB Converted Property Plaintiff Had a Right to Possess

While ownership is sufficient, it is not necessary. GWB fails to acknowledge controlling law that holds that a right of possession is also sufficient to support a conversion claim. *See, e.g.*, *Baye v. Airlite Plastics Co.*, 618 N.W.2d 145 (Neb. 2000) ("The plaintiff must establish a right to immediate possession of the property at the time of the alleged conversion.") (internal citations and quotations omitted); *Hippodrome Amusement Co. v. Redick*, 191 N.W. 317, 318 (Neb. 1922) ("One who sues in trover for conversion must have title to the property involved, or a right of possession to it."); *Meyer v. Norwest Bank Iowa, N.A.*, 112 F.3d 946, 950 (8th Cir. 1997) ("In order to demonstrate that the bank converted its property, WLS must demonstrate an ownership or possessory interest in the account at the time of the alleged conversion."); *Blackford v. Prairie Meadows Racetrack & Casino, Inc.*, 778 N.W.2d 184, 188 (Iowa 2010) ("Conversion is the wrongful control or dominion over another's property contrary to that person's possessory right to

the property.  In order to establish a conversion claim, the plaintiff must establish a possessory interest in the property.") (internal citations and quotations omitted); *NCMIC Fin. Corp. v. Artino*, 638 F. Supp. 2d 1042, 1081 (S.D. Iowa 2009) ("The essential elements of conversion are: 1) ownership by the plaintiff or other possessory right in the plaintiff greater than that of the defendant . . . .") (internal citations and quotations omitted); *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) ("To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion.") (internal citations and quotations omitted); *United Bonding Ins. Co. v. Swartz*, 469 P.2d 89, 91 (Ariz. Ct. App. 1970) (noting that "absolute ownership" is not required; rather, the right to immediate possession is all that is required).  Thus, the cases cited by GWB do not require or support dismissal.[6]

As this Court recognized in ruling on the First Tranche cases, the right to possession is sufficient to establish a cause of action for dismissal:

> Here, Plaintiffs unquestionably had the right to possess the funds in their bank accounts upon demand to the bank, and they have alleged that Defendants wrongfully took funds from their accounts so that Plaintiffs were unable to possess and use those funds.  This interference with Plaintiffs' property interest in the funds in their accounts constitutes a cause of action for conversion.

*Overdraft Litig.*, 694 F. Supp. 2d. at 1323.  Other courts have also recognized a depositor's absolute right to possession of the funds on deposit in their bank account.  *See Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463-64 (Ill. App. Ct. 2004) (stating that a depositor has an "absolute and unconditional right to immediate possession of the property" in his checking account and affirming a jury finding of a bank's conversion in the form of its wrongful withdrawals of money from the plaintiff's general checking account); *Katz v. Belmont Nat'l Bank of Chicago*, 491

---

[6] Notably, GWB does not discuss or even cite to cases discussing the law of conversion in Kansas or Colorado.

N.E.2d 1157, 1159 (Ill. 1986) (stating that a bank could be held liable for conversion for taking funds from a depositor's account, despite the debtor-creditor relationship, because the depositor has the "absolute and unconditional" right to "the immediate possession" of the funds on deposit in his account). As these decisions show, it defies common sense to say that depositors have no right to possess their own money once it has been deposited into their personal bank accounts – especially since depositors have instantaneous access to these funds at ATMs and POS transactions, as well as online.[7]

Additionally, GWB's argument that Plaintiff lacked the requisite ownership to assert a conversion claim is contradicted by the Deposit Agreement. AC Ex. A. In the "AGREEMENT" section of the Deposit Agreement, GWB defines "you" or "your" to mean the "account holder(s) and anyone else with the authority to deposit, withdraw, or exercise control over the funds in the account." AC Ex. A at 1. In the section entitled "OWNERSHIP OF ACCOUNT AND BENEFICIARY DESIGNATION," GWB wrote the following: "**Single-Party Account –** Such an account is owned by one party." AC Ex. A at 1. In that same section, GWB indicates that the ownership designation determines "to whom we pay the account funds." AC Ex. A at 1. Given GWB's vastly superior bargaining power and its position as drafter of the Deposit Agreement, it should not be permitted to now claim that GWB owns the funds. By GWB's own words, Plaintiff as the account holder had the authority to exercise control over the funds in his account.

Despite the express language in the Deposit Agreement, GWB argues that, pursuant to the National Bank Act and Supreme Court precedent, GWB may not treat funds in deposit accounts as the property of the depositor. Def. Mem. at 15. None of the authorities cited states such a prohibition. Both *Texas & Pacific Railway v. Pottorff*, 291 U.S. 245 (1934), which was raised by

---

[7] Moreover, in the case at bar, the accounts involved and the funds taken are specific and easily identifiable because GWB withdrew funds for an account certain to satisfy a debt that was wrongful to begin with. There is no issue with tracing the funds back to the Plaintiff's account.

the banks in the First Tranche and distinguished in Plaintiffs' opposing memorandum of law [DE # 265 at 68-69], and OCC Interpretive Letter No. 464, 1988 WL 284846 (Dec. 14, 1988), dealt with attempts by the banks to enforce or secure a pledge.  Plaintiff is not seeking to enforce a pledge by GWB.[8]  Consequently, *Texas Pacific Railway* and OCC Interpretive Letter No. 464 are inapposite.

### 2.      GWB Wrongfully Interfered with Plaintiff's Right of Possession.

Plaintiff has certainly alleged a more than adequate nucleus of facts to satisfy the wrongful act requirement of a conversion claim.  The essence of the tort is any distinct act of dominion wrongfully exerted over one's property, in denial of his right or inconsistent with it.

Plaintiff alleges GWB's actionable wrongful conduct in considerable detail.  As discussed in the AC, GWB's scheme included reordering transactions to impose the greatest possible number of overdraft fees – even when there are sufficient funds in the account – and batching transactions over multiple days.  AC ¶¶ 47, 48.  Where the original assessment of an overdraft is improper, the resultant overdraft fee is also improper.  *White*, 563 F. Supp. 2d at 1371; *accord First Union Nat'l Bank of Ga. v. Davies-Elliott, Inc.*, 452 S.E.2d 132, 140 (Ga. Ct. App. 1994) (holding that where the bank's improper actions lead to overdrafts, the overdraft fees are also improper and can support a viable claim for conversion).

In rejecting the First Tranche banks' argument that their deposit agreements prevented a finding of wrongful taking of the plaintiffs' funds, this Court aptly stated:

> First, if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendants may be barred from relying on them.  Second, Plaintiffs have pled enough facts to show that, even if the deposit agreements gave Defendants discretion to re-order the debit postings, Defendants exercised that discretion in bad faith by intentionally causing Plaintiffs to incur overdrafts that

---

[8]  In fact, the NBA has been expanded to allow national banks to make a pledge in certain circumstances. *See, e.g.*, 12 U.S.C. § 90; 25 U.S.C. §§ 156, 162, 162a; 12 U.S.C. § 192; 48 U.S.C. § 780; 31 U.S.C. § 771; 12 U.S.C. § 92a; 11 U.S.C. § 101.

they would not have otherwise incurred.  These allegations could lead a reasonable factfinder to conclude that Defendants acted wrongfully in charging some of the overdraft fees, thereby converting Plaintiffs' funds.  Thus, the Court cannot dismiss Plaintiffs' claim for conversion.

*Overdraft Litig.*, 694 F. Supp. 2d at 1323; *see also Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463-64 (Ill. App. Ct. 2004) (affirming a jury verdict of conversion in favor of the depositor where the bank removed funds on deposit in the depositor's general account).  GWB has argued nothing that should cause this Court to deviate from this ruling.  As such, the conversion claim should survive the Motion to Dismiss.

> **D.      Plaintiff's Alternative Claim For Unjust Enrichment Should Be Sustained At This Stage Of The Proceedings.**

GWB proffers two reasons as to why Plaintiff's unjust enrichment cause of action fails, both of which have already been rejected by this Court.  First, GWB contends that there can be no claim for unjust enrichment because there is an express written contract.  As this Court has recognized, Plaintiff may plead and litigate both claims at this stage of the case.  *Overdraft Litig.*, 694 F. Supp. 2d at 1321 ("Fed. R. Civ. P. 8(d) allows pleading in the alternative, even if the theories are inconsistent.  Defendants have not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that is their contractual claim fails, Plaintiffs may still be entitled to recovery under an unjust enrichment theory.").  The law of the other relevant jurisdictions is the same.  *See Arnold & Assocs., Inc. v. Misys Healthcare Sys.*, 275 F. Supp. 2d 1013, 1030 (D. Ariz. 2003); *Backus v. Apishapa Land & Cattle Co.*, 615 P.2d 42, 44 (Colo. Ct. App. 1980); *Union Pac. R.R. v. Cedar Rapids & Iowa City Ry.*, 477 F. Supp. 2d 980, 997 (N.D. Iowa 2007); *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1143 (D. Kan. 2010); *Prof'l Recruiters, Inc.  v. Oliver*, 456 N.W. 2d 103, 106-07 (Neb. 1990); *Schumacher v. Tyson Fresh Meats, Inc.*, 434 F. Supp. 2d 748, 754 (D.S.D. 2006).

The cases cited by GWB to support its proposition that breach of contract and unjust enrichment claims cannot co-exist at the pleading stage are distinguishable. Def. Mem. at 16-17. *Johnson v. Larson*, 779 N.W.2d 412, 416 (S.D. 2010), *USLife Title Co. of Ariz. v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986), and *Johnson v. Dodgen*, 451 N.W.2d 168, 175 (Iowa 1990), merely found after trial that both claims could not be asserted as a basis for recovery. *Siebler Heating & Air Conditioning v. Jenson*, 326 N.W.2d 182, 184 (Neb. 1982), has been held to mean "only that a plaintiff may not allege an express agreement and then seek at trial or on appeal to recover based on quantum meruit." *Byrne v. Hauptman, O'Brien, Wolf & Lathrop, P.C.*, 608 N.W.2d 208, 213 (Neb. Ct. App. 2000). GWB's reliance on *White* is similarly misplaced because the plaintiffs there "effectively claim[ed] that there was a contract and that Wachovia was unjustly enriched within a single count." 563 F. Supp. 2d at 1371-72. Plaintiff here not only asserts separate causes of action but there is a dispute concerning the validity of the Deposit Agreement.

Second, GWB incorrectly argues that even if the unjust enrichment claim could coexist with the express contract, it should be dismissed because (a) Plaintiff has failed to allege circumstances under which it would be unjust for GWB to retain the overdraft fees and (b) GWB's practices were provided for by the Deposit Agreement and are in accord with federal law. Def. Mem. at 17. The argument should be rejected again. This Court has already held that the allegations included in Plaintiff's complaint are sufficient – that, among other things, GWB manipulated the posting order of debit card transactions solely to maximize the number of overdraft fees incurred – to lead a reasonable fact-finder to conclude that it would be unjust to retain the benefit of those fees. *See Overdraft Litig.*, 694 F. Supp. 2d at 1321-22. Further, this Court has already concluded that similar practices by other banks could violate the duty of good faith and fair dealing and constitute a conversion. *Id.* at 1317, 1323. The Deposit Agreement does not disclose the practices here, particularly with respect to card debit card transactions, and

- 19 -

certainly not those of batching and reordering over multiple days or charging overdrafts despite there being sufficient funds in the account. Moreover, as this Court has already held, "if the terms of the deposit agreement are subsequently declared to be unconscionable, [GWB] may be barred from relying on them." *Id*. at 1323. Additionally if Plaintiff proves that Deposit Agreement does not cover debit card transactions, the written contract does not impede the efforts to claim unjust enrichment for the overdraft fees imposed via GWB's manipulation of the order in which the debit card transactions are posted.

E.     **Plaintiff Has Properly Alleged A Violation Of The Arizona Consumer Fraud Act.**

1.   **The Challenged Conduct is Not Permitted Under State and Federal Law.**

Following the same reasoning already rejected by this Court in similar motions, GWB argues that both state and federal law expressly permit banks to post debit card transactions from highest amount to lowest and, therefore, the challenged conduct cannot violate ACFA. GWB is wrong.

First, the Arizona statute GWB cites for the proposition that Arizona law expressly permits banks to post debit card transactions from highest to lowest, Ariz. Rev. Stat. Ann. § 47-4A-504, was added in 1991 and is taken directly, word-for-word, from the U.C.C. In fact, the legislative history of the section cites directly to U.C.C. § 4A-504. This Court has already held that this language applies only to paper checks, and not to debit card transactions, which are at issue in this case. "The UCC's generally accepted principles when dealing with checks cannot be broadly applied to debit card transactions." *In re Overdraft Litig*., 694 F. Supp. 2d at 1316. This Court recognized that there is a fundamental difference between check and electronic transactions, specifically that the instantaneous nature of debit card transactions carries with it much less risk to the merchant than the risk involved when accepting a check, and "the UCC's endorsement of high-

- 20 -

to-low posting for checks should not be extended to cover debit card transactions." *Id*. The Court's determination further supports the conclusion that the "PAYMENT ORDER OF ITEMS" section of the Deposit Agreement does not cover debit card transactions.

Second, GWB's argument that there is authorization under *any* federal or state law for the alleged practices is simply incorrect.  The practices complained of here, when proven at trial, would violate the duty of good faith and fair dealing. *Gutierrez*, 622 F. Supp. 2d at 952-53 ("Even if the bank-depositor contract purports to allow the bank to post in any order it wishes, such discretion remains subject to the bank's duty of good faith and fair dealing . . . . [T]hat discretionary power cannot be exercised so as to pile on ever greater penalties on the depositor, which is exactly what Wells Fargo seems to be doing, or so a reasonable jury could conclude."). Although the OCC gives GWB the right to charge overdraft fees, it does not authorize banks to act contrary to their obligations of good faith or to ignore general contract or tort law. *Overdraft Litig*., 694 F. Supp. 2d at 1313.  In fact, as this Court has already determined, even if the U.C.C. applies to debit card transactions (which it does not), "the OCC's interpretive letter does not authorize debit card postings in a high to low order to increase fees; it merely states that doing so does not violate the OCC's requirement that banks set fees using sound banking judgment." *Id*. "A bank could follow both the requirements of sound banking judgment outlined in Section 7.4007 and good faith; these principles are not in irreconcilable conflict." *Id*.  This Court is already well aware of cases that have found the system employed by the banks of reordering debit card transactions to impose excessive overdraft fees to permit analogous claims. *Id*. at 1316 (*citing Gutierrez*, 622 F. Supp. 2d 946; *White*, 563 F. Supp. 2d 1358).  Indeed, in a later decision in *Gutierrez*, the court found after trial that the reordering practices of Wells Fargo were not only unfair and in bad faith, but fraudulent.  730 F. Supp. 2d at 1120-29 (N.D. Cal. 2010).

- 21 -

Third, Arizona courts have already explicitly rejected GWB's assertion that otherwise lawful conduct cannot form the basis of a claim under ACFA. In *State ex rel. Corbin v. United Energy Corp. of America*, 725 P.2d 752, 760 (Ariz. Ct. App. 1986), the Arizona Court of Appeals held that "depending on the circumstances of a particular case, an act which appears to be within the bounds of one statute may be fraudulent or deceptive." In *Corbin*, the Court addressed Arizona's Home Solicitations Referral Sales Act, Ariz. Rev. Stat. Ann. §§ 44-5001, *et seq*., which allows consumers a three-day cancellation period for sales solicited in the home. There, appellants argued that, because the act contemplates the installation of goods during the three-day cancellation period, installation during the three-day period cannot constitute fraud. The Court disagreed, and held that although the Arizona law clearly contemplated the delivery of goods within the cancellation period, where there was evidence that the quick installation policy was specifically designed to inhibit cancellation, it was a willful violation of ACFA. *Corbin*, 725 P.2d at 759-60. In *Corbin*, the Arizona Court of Appeals embraced the similar reasoning of *Schubach v. Household Finance Corp.*, 376 N.E.2d 140 (Mass. 1978), a case in which a collection company was regularly obtaining default judgment against debtors by suing in inconvenient forums. When faced with charges under the Massachusetts Consumer Protection Act, the company defended itself by claiming that its actions were contemplated by the commonwealth's venue statutes. The court rejected that argument, stating "We reject the argument that an act or practice which is authorized by statute can never be an unfair or deceptive act." *Schubach*, 376 N.E.2d at 142.

## 2. The Challenged Conduct Is the Type Prohibited by the ACFA

The ACFA makes it unlawful to use deceptive or unfair practices "in connection with the sale or advertisement of merchandise." Ariz. Rev. Stat. Ann. § 44-1522. "Merchandise" is further defined as including "goods" and "services." Ariz. Rev. Stat. Ann. § 44-1521(5). This Court encountered similar language in the statutes of California and Oregon, and dismissed the claims,

- 22 -

holding that the transactions involve money, not "goods or services," and therefore the state's consumer protection statutes did not apply. *Overdraft Litig.*, 694 F. Supp. 2d at 1326. However, case law in Arizona supports Plaintiff's contention that the challenged conduct is exactly the type prohibited by the ACFA.

Arizona case law shows that the ACFA applies to banking services. In *Villegas v. Transamerica Financial Services, Inc.*, 708 P.2d 781 (Ariz. Ct. App. 1985), the appellate court reversed a trial court ruling and held that the lending of money by a bank is subject to the provisions of ACFA. The appellate court rejected Transamerica's position that the lending of money does not qualify as the sale or advertisement of merchandise, and instead determined that "money is an object or good or commodity," that "the contractual right to have Transamerica make those payments is an intangible under the statutory definition of merchandise," and that the loan transaction involved a "sale." *Id.* at 783. Applying the appellate court's reasoning to the facts here, the contractual right to the overdraft service is the "intangible" under the statutory definition of "merchandise" and the opening of the account was the "sale" within the meaning of ACFA. Following the reasoning in *Villegas*, the "broad definition of merchandise, covering both tangibles and intangibles, and the broadly remedial purposes of the legislation require this result." *Id.* The appellate court's decision in *Villegas* was followed by the United States District Court for the District of Arizona in a similar ruling in *Narramore v. HSBC Bank USA, N.A.*, holding once again that "money [is] merchandise within the meaning of the Act." No. 09-635, 2010 WL 2732815, at *12 (D. Ariz. July 7, 2010); *see also Nicholas Homes, Inc. v. M&I Marshall & Ilsley Bank, N.A.*, No. 09-2079, 2010 WL 1759453 (D. Ariz. Apr. 30, 2010) ("money constitutes merchandise under the ACFA"). A similar result is warranted here.

### G.    GWB's Other Unlawful Practices Are Sufficiently Pled.

GWB's last arguments are meritless.  GWB claims that the AC fails to allege harm from its other improper practices. Yet, GWB itself identifies the specific allegations in the AC addressing its other unlawful business practices. Def. Mem. at 21.  Moreover, GWB completely ignores AC ¶¶ 68-76 that describe in great detail the damages suffered by Plaintiff (including spreadsheets of checking account balances) and the Classes.

GWB's other argument – that the AC fails to identify any basis to expect it to act in any manner different from that which is expressed in the Deposit Agreement (Def. Mem. at 20-21) – is absurd.  The Deposit Agreement fails to state how debit card transactions will be posted, including that they will be reordered and/or held; considering the immediacy of debit card transactions, unlike checks, a reasonable accountholder would expect that debit card transactions would be posted when they occurred.  Moreover, it does provide that GWB will use its discretion in determining whether to pay an "item" and cause an overdraft fee to be incurred.  As described in great detail in the AC, and as recognized by this Court in denying other motions to dismiss, GWB had a duty to abide by the express terms of the Deposit Agreement in good faith, even if the Agreement itself does not expressly reference a duty of good faith.

Lastly, without any citation to the record or any other basis for support, GWB misrepresents this Court's December 16, 2010 discovery order and plaintiffs' actions in the First Tranche of overdraft fee cases to speculate that GWB is entitled to certain discovery regarding these other business practices and that Plaintiff in this case will refuse to provide such discovery as plaintiffs in the First Tranche have.  Def. Mem. at 22.  Aside from the self-evident proposition that speculation as to how the plaintiff will purportedly respond to future discovery is no basis for dismissal of the complaint, GWB's argument should be rejected out of hand because it has failed

to demonstrate a need for this type of discovery under the Federal Rules or this Court's December 16 order.

## IV.      CONCLUSION

For all of the reasons set forth above, GWB's Motion to Dismiss should be denied.  Should the Court determine that any of Plaintiff's claims are subject to dismissal, Plaintiff respectfully requests leave to replead such claims pursuant to Rule 15 to correct any pleading deficiencies observed by the Court.

Dated: February 22, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@alterslaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

| | |
|---|---|
| /s/ E. Adam Webb | /s/ Michael W. Sobol |
| E. Adam Webb, Esquire | Michael W. Sobol, Esquire |
| Georgia Bar No. 743910 | California Bar No. 194857 |
| Adam@WebbLLC.com | msobol@lchb.com |
| Matthew C. Klase, Esquire | David S. Stellings, Esquire |
| Georgia Bar No. 141903 | New York Bar No. 2635282 |
| Matt@WebbLLC.com | dstellings@lchb.com |
| G. Franklin Lemond, Jr., Esquire | Roger N. Heller, Esquire |
| Georgia Bar No. 141315 | California Bar No. 215348 |
| FLemond@WebbLLC.com | rheller@lchb.com |
| WEBB, KLASE & LEMOND, L.L.C. | Jordan Elias, Esquire |
| 1900 The Exchange, S.E. | California Bar No. 228731 |
| Suite 480 | jelias@lchb.com |
| Atlanta, GA 30339 | LIEFF CABRASER HEIMANN & |
| Tel: 770-444-9325 |   BERNSTEIN L.L.P. |
| Fax: 770-444-0271 | Embarcadero Center West |
| | 275 Battery Street, 30th Floor |
| | San Francisco, CA 94111 |
| | Tel: 415-956-1000 |
| | Fax: 415-956-1008 |

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596