# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Harris v. Associated Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-22948-JLK
W.D. Wis. Case No. 3:10-cv-182-BBC

## PLAINTIFFS' MEMORANDUM IN OPPOSITION
## TO ASSOCIATED BANK N.A.'S MOTION TO DISMISS THE AMENDED CLASS
## ACTION COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS ................................................................................... 1

III.    ARGUMENT ....................................................................................................... 2

       A.      Plaintiffs State A Valid Claim For Breach Of Contract
               Premised In Part On The Breach Of The Implied Duty
               Of Good Faith And Fair Dealing ........................................................ 2

               1.      The Deposit Agreement Contains Discretionary Terms
                        That Impose An Obligation Of Good Faith On Associated ...................... 3

               2.      Case Law Supports the Application of
                        Good Faith and Fair Dealing in Similar Cases ...................................... 5

       B.      Plaintiffs Have Properly Stated a Claim for Unconscionability ................... 7

               1.      The Deposit Agreement is Procedurally Unconscionable ......................... 8

               2.      The Deposit Agreement is Substantively Unconscionable ....................... 9

       C.      Plaintiffs Properly State a Claim for Conversion ................................... 10

       D.      Plaintiffs Properly State a Claim for Unjust Enrichment .......................... 14

       E.      Plaintiffs Have Properly Alleged a Violation of the State
               Consumer Protection Acts of Illinois and Minnesota. .......................... 16

               1.      Plaintiffs Have Properly Alleged A Violation Of the
                        Illinois Consumer Fraud and Deceptive Practices Act ........................... 16

               2.      Plaintiffs Have Properly Alleged A Violation Of the
                        Minnesota Consumer Fraud and Deceptive Practices Act ....................... 18

       F.      Associated May Not Escape Liability for Its Own
               Purposeful Wrongful Acts by Relying on the 14-day
               Reporting Provision in Its Deposit Agreement ...................................... 20

       G.      The Voluntary Payment Doctrine is
               Not a Defense to Plaintiffs' Claims .................................................... 21

               1.      The Payments Were Made Involuntarily ............................................. 22

               2.      Plaintiffs Were Without Full Knowledge of the Facts ............................ 24

               3.      The Doctrine Does Not Preclude
                        Consumer Protection Claims ............................................................ 25

IV.    CONCLUSION ................................................................................................ 25

## TABLE OF AUTHORITIES

**Page**

CASES

*4658 North Ocean Inc. v. Branch Bank & Trust Co.*,
    No. 10-61865, 2010 WL 4960088 (S.D. Fla. Dec. 1, 2010)................................14
*Abels v. JPMorgan Chase Bank, N.A.*,
    678 F. Supp. 2d 1273 (S.D. Fla. 2009) ...........................................................10
*Arra v. First State Bank & Trust Co. of Franklin Park*,
    621 N.E.2d 128 (Ill. App. Ct. 1993) .............................................................23
*Beattie v. Prod. Design & Eng'g, Inc.*,
    198 N.W.2d 139 (Minn. 1972).....................................................................21
*Bednarcik v. Titan Am. L.L.C.*,
    No. 08-81534, 2009 WL 1684642 (S.D. Fla. June 15, 2009) ............................14
*Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*,
    No. 05-2310, 2010 U.S. Dist. LEXIS 117971 (D. Minn. Nov. 4, 2010) ...........22
*Borowski v. Firstar Bank Milwaukee, N.A.*,
     579 N.W.2d 247 (Wis. Ct. App. 1998) .........................................................20
*BP Prods. N. Am., Inc. v. Twin Cities Stores, Inc.*,
    534 F. Supp. 2d 959 (D. Minn. 2007) .............................................................4
*Brickley v. Walker*,
    32 N.W. 773 (Wis. 1887)............................................................................11
*Brunswick Corp. v. Nw. Nat. Bank & Trust Co. of Minneapolis*,
    8 N.W.2d 333 (1943) .................................................................................20
*Citicorp Sav. of Ill. v. Rucker*,
    692 N.E.2d 1319 (Ill. App. Ct. 1998) .............................................................4
*Cruthis v. Firstar Bank, N.A.*,
    822 N.E.2d 454 (Ill. App. Ct. 2004) .........................................................11, 12
*Curtis v. Altria Group, Inc.*,
    No. A10-215, 2010 WL 5292065 (Minn. Ct. App. Dec. 28, 2010)...................19
*Daniels v. Powell*,
    604 F. Supp. 689 (N.D. Ill. 1985) ................................................................11
*Deminsky v. Arlington Plastics Mach.*,
    657 N.W.2d 411 (Wis. 2003).........................................................................8
*Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*,
    562 F. Supp. 2d 1009 (W.D. Wis. 2008) ......................................................14
*Dugan v. Smerwick Sewerage Co.*,
    95 C 3223, 1996 WL 535306 (N.D. Ill. Sept. 18, 1996)..................................21
*First Nat'l Bank of Cicero v. Sylvester*,
    554 N.E.2d 1063 (Ill. App. Ct. 1990) .............................................................4
*Ford Motor Co. v. Lyons*,
    405 N.W.2d 354 (Wis. Ct. App. 1987) ...........................................................4
*Fortech, L.L.C. v. R.W. Dunteman Co.*,
    852 N.E.2d 451 (Ill. App. Ct. 2006) .............................................................13

*Gonzalez v. Codilis & Assocs., P.C.*,
   No. 03 C 2883, 2004 WL 719264 (N.D. Ill. Mar. 31, 2004) ...........................................25

*Gros v. Midland Credit Mgmt.*,
   525 F. Supp. 2d 1019 (N.D. Ill. 2007) .........................................................................17

*Group Health Plan, Inc. v. Philip Morris*, Inc.,
   621 N.W.2d 2 (Minn. 2001)............................................................................................19

*Gutierrez v. Wells Fargo Bank, N.A.*,
   622 F. Supp. 2d 946 (N.D. Cal. 2009) ................................................................. *passim*

*Harris v. County of Hennepin*,
   679 N.W.2d 728 (Minn. 2004)........................................................................................21

*Herrmann v. Fossum*,
   364 N.W.2d 501 (Minn. Ct. App. 1985)............................................................11, 12, 14

*Hill v. St. Paul Federal Bank for Savings*,
   768 N.E.2d 322 (Ill. App. Ct. 2002) ...............................................................7, 15, 16

*Hodges v. US Bank Home Mortgage*,
   No. 10 C 5928, 2011 U.S. Dist. LEXIS 5732 (N.D. Ill. Jan. 20, 2011) ...........................13

*In re Checking Account Overdraft Litig.*,
   694 F. Supp. 2d 1302 (S.D. Fla. 2010) ................................................................ *passim*

*Joannin v. Ogilvie*,
   52 N.W. 217 (Minn. 1892)..............................................................................................22

*Kinkel v. Cingular Wireless L.L.C.*,
   857 N.E.2d 250 (Ill. 2006) ..............................................................................................8

*Larson v. Watzke*,
   259 N.W. 712 (Wis. 1935) ..............................................................................................21

*Levey v. CitiMortgage, Inc.*,
   No. 07 C 2678, 2009 WL 2475222 (N.D. Ill. Aug. 10, 2009).....................................8, 10

*Meyer v. Laser Vision Institute, L.L.C.*,
   714 N.W.2d 223 (Wis. Ct. App. 2006) ..........................................................................15

*Motley v. Homecomings Fin., L.L.C.*,
   557 F. Supp. 2d 1005 (D. Minn. 2008)...........................................................................15

*Muehlbauer v. Gen. Motors Corp.*,
   431 F. Supp. 2d 847 (N.D. Ill. 2006) .............................................................................18

*Negrin v. Norwest Mortgage, Inc.*,
   700 N.Y.S.2d 184 (App. Div. 1999) ..............................................................................24

*Peddie v. Sterling Jewelers, Inc.*,
   282 F. Supp. 2d 947 (E.D. Wis. 2003).............................................................................4

*Perdue v. Crocker Nat'l Bank*,
   702 P.2d 503 (Cal. 1985) ...............................................................................................10

*Petrilli v. Drechsel*,
   910 F.2d 1441 (7th Cir. 1990) ........................................................................................20

*Phillips v. Lincoln Nat'l Life Ins. Co.*,
   978 F.2d 302 (7th Cir. 1992) ..........................................................................................21

*Pratt v. Smart Corp.*,
   968 S.W.2d 868 (Tenn. Ct. App. 1997) ..........................................................................25

*Preston v. United States*,
   696 F.2d 528 (7th Cir. 1982) ..........................................................................................12

iii

*Prod. Credit Ass'n of Chippewa Falls v. Equity Coop Livestock Sales Ass'n,*
    261 N.W.2d 127 (Wis. 1978) ................................................................................... 11

*Prudential Ins. Co. of Am. v. Clark Consulting, Inc.,*
    548 F. Supp. 2d 619 (N. D. Ill. 2008) ..................................................................... 15

*Putnam v. Time Warner Cable,*
    649 N.W.2d 626 (Wis. 2002) .................................................................... 21, 22, 24

*Ramirez v. Smart Corp.,*
    863 N.E.2d 800 (Ill. App. Ct. 2007) ....................................................................... 25

*Randazzo v. Harris Bank Palatine, N.A.,*
    262 F.3d 663 (7th Cir. 2001) .............................................................................. 23, 24

*Redfield v. Cont'l Cas. Corp.,*
    818 F.2d 596 (7th Cir. 1987) ................................................................................... 14

*Reliance Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n,*
    No. 99 C 3366, 2001 WL 62597 (N.D. Ill. Jan. 25, 2001) ..................................... 20

*Robinson v. Toyota Motor Credit Corp.,*
    775 N.E.2d 951 (Ill. 2002) ................................................................................... 9, 17

*Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater,*
    668 N.E.2d 1129 (Ill. App. Ct. 1996) ..................................................................... 12

*Sara Lee Corp. v. Litton Indus. Automation Sys., Inc.,*
    No. 91 C 0971, 1992 WL 22693 (N.D. Ill. Feb. 6, 1992) ...................................... 14

*Saunders v. Michigan Avenue National Bank,*
    662 N.E.2d 602 (Ill. App. Ct. 1996) .......................................................... 9, 14, 17

*Schaller v. Marine National Bank of Neenah,*
    388 N.W.2d 645 (Wis. Ct. App. 1986) ................................................................. 4, 5

*Scott v. Fairbanks Capital,*
    284 F. Supp. 2d 880 (S.D. Ohio 2003) ............................................................. 22, 25

*Seitzinger v. Cmty. Health Network,*
    676 N.W.2d 426 (Wisc. 2004) ................................................................................ 21

*Sharp v. Laubersheimer,*
    347 N.W.2d 268 (Minn. 1984) ................................................................................ 15

*Smith v. Prime Cable of Chicago,*
    658 N.E.2d 1325 (Ill. App. Ct. 1995) ............................................................... 22, 23

*Sobel v. Hertz Corp.,*
    698 F. Supp. 2d 1218 (D. Nev. 2010) ..................................................................... 25

*Tuttle v. Lorillard Tobacco Co.,*
    118 F. Supp. 2d 954 (D. Minn. 2000) ..................................................................... 18

*United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equipment, L.L.C.,*
    782 N.W.2d 263 (Minn. Ct. App. 2010) ................................................................. 15

*White Stone Partners, L.P. v. Piper Jaffray Cos.,*
    978 F. Supp. 878 (D. Minn. 1997) ............................................................................ 4

*White v. Wachovia Bank, N.A.,*
    563 F. Supp. 2d 1358 (N.D. Ga. 2008) ............................................................ passim

*Wigginton v. Dell, Inc.,*
    890 N.E.2d 541 (Ill. App. Ct. 2008) ......................................................................... 9

*Williamson v. Prasciunas,*
    661 N.W.2d 645 (Minn. Ct. App. 2003) .................................................................. 11

iv

*Wis. Auto Title Loans, Inc. v. Jones*,
    714 N.W.2d 155 (Wis. 2006) ................................................................10
*Wold v. Dell Fin. Servs.*,
    598 F. Supp. 2d 984 (D. Minn. 2009) .................................................8

## STATUTES

28 U.S.C. § 1332(d)(3)-(4) ......................................................................1

810 Ill. Comp. Stat. 5/4-303 ....................................................................6

810 Ill. Comp. Stat. 5/4A-108 ................................................................6

810 Ill. Comp. Stat. 5/4A-504 ................................................................6

815 Ill. Comp. Stat. 505/2 *et seq.* .........................................................16

Minn. Stat. § 325F *et seq.* .....................................................................18

Minn. Stat. § 336.4-303(b) ......................................................................6

Minn. Stat. § 336.4A-108A .....................................................................6

Minn. Stat. § 336.4A-504 ........................................................................6

Minn. Stat. § 831, sub d. 3a .....................................................................18

Wis. Stat. § 100.20, *et seq.* ....................................................................16

Wis. Stat. § 404.303(2) ............................................................................6

Wis. Stat. § 410.504 .................................................................................6

U.C.C. § 4-303(b) .....................................................................................6

## RULES

Fed. R. Civ. P. 8(d) .................................................................................14

Fed. R. Civ. P. 9(b) ............................................................................18, 19

Fed. R. Civ. P. 12(b)(1) .............................................................................1

Fed. R. Civ. P. 12(b)(6) ...........................................................1, 17, 21, 25

Fed. R. Civ. P. 15 ....................................................................................25

## TREATISES

66 Am. Jur. § 112 (2001) ........................................................................22

*Prosser and Keeton on the Law of Torts* § 15 (5th ed. 1984) ...............11

I.       INTRODUCTION

In their Amended Complaint ("AC"), Plaintiffs seek to recover, for themselves and all other customers similarly situated, excess overdraft fees generated and retained through the unlawful practices of Associated Bank ("Associated") including, among other things, its manipulation and reordering of debit transactions from largest to smallest to generate more overdrafts and overdraft fees. Plaintiffs assert claims against Associated for breach of contract and breach of the covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, and for violations of the unfair trade practice laws of Wisconsin, Illinois and Minnesota. Associated seeks dismissal of Plaintiffs' claims based on arguments this Court has already rejected in ruling on the motions to dismiss of the First and Third Tranche banks.[1] The allegations made and common law claims asserted by Plaintiffs against Associated mirror those pled by the plaintiffs against the First and Third Tranche banks. As demonstrated below, Associated's arguments are without merit and its motion to dismiss should be denied.

II.      STATEMENT OF FACTS

Plaintiffs Pamela Harris, Edith Whitehead, and Robert W. and Charlene Selvig ("Plaintiffs") are residents of Wisconsin, Illinois and Minnesota, respectively. Harris is a prior account holder, while Whitehead and the Selvigs are current account holders of Associated. AC ¶¶ 12–14, 70, 75, 80. Plaintiffs bring common law claims for themselves and on behalf of all U.S. customers (the "National Class"), and also bring statutory claims on behalf of all Associated customers having accounts at branches in Wisconsin, Illinois and Minnesota who incurred overdraft fees as a result of Associated's practice of reordering debit card transactions under their respective state consumer statutes (the "Subclasses"). AC ¶ 18. The National Class and the Subclasses are hereinafter referred to as the "Classes."

Plaintiffs and all members of the Classes maintain or maintained a checking account with Associated, the terms of which were contained in standardized account holder agreements. AC ¶ 34. A representative copy of Associated's account holder agreements, 32 pages in length and in

---

[1] This Response only addresses Associated's motion for dismissal under Fed. R. Civ. P. 12(b)(6). Associated also seeks dismissal under Fed. R. Civ. P. 12(b)(1), alleging lack of subject matter jurisdiction based on the discretionary or mandatory "home state" exception to the Class Action Fairness Act of 2005. 28 U.S.C. § 1332(d)(3)-(4). The parties have agreed that Plaintiff shall file a motion requesting a 60-day extension to file its Response to the 12(b)(1) argument contemporaneously with the filing of this Response wherein, with the Court's permission, Plaintiffs shall have an opportunity to take the discovery needed prior to filing their response.

miniscule print, is annexed as Exhibit A to the AC (the "Deposit Agreement"), a copy of which accompanies this memorandum for the Court's convenience.  The terms relating to Associated's policies and practices regarding overdrafts are hidden in the Deposit Agreement's dense, small type, boilerplate provisions.  AC ¶ 34.  The Deposit Agreement and the related documents are unconscionable contracts of adhesion.  AC ¶¶ 34, 102-105.

The Deposit Agreement, in addressing overdrafts, states that Associated "*may* either pay or return" an item presented for payment, that it "*may* choose, without notice to you, to refuse to pay any item if it would create an overdraft," and that "[a]n overdraft *may* be created by . . . other electronic debit transaction."  AC ¶ 35 (emphasis added).  The Deposit Agreement is silent, however, regarding the posting order of transactions and Associated's policy and practice of always re-sequencing debit transactions.  Thus, Associated fails to disclose to customers that it *always* reorders debit card transactions from highest to lowest dollar value.  AC ¶¶ 36, 39, 40.  Associated manipulates and reorders debits from highest to lowest solely to increase the number of exorbitant overdraft fees it can charge.  AC ¶ 39.  Moreover, Associated holds debits for multiple days, batches them together to maximize the number of overdraft transactions and fees, and assesses overdraft fees for transactions that occurred when there were sufficient funds in the customers' accounts to cover the transactions.  AC ¶¶ 47-48.

Further, Associated does not: (i) disclose to customers that they may "opt out" of Associated's overdraft scheme; (ii) provide an opportunity to cancel the debit transaction before incurring an overdraft fee; or (iii) obtain affirmative consent from customers prior to processing transactions that will overdraw their accounts and result in overdraft fees.  AC ¶¶ 7, 38, 58-60, 68.  Associated also engages in deceptive and manipulative practices, in addition to those described above, to cloak accurate information regarding customer balances.  AC ¶¶ 49-57.  Its overdraft policies and practices and the terms of the Deposit Agreement are procedurally and substantively unconscionable.  AC ¶ 1, 7, 22, 24, 26, 47, 68, 102-104.  As a direct consequence of Associated's conduct, Plaintiffs and the Classes have suffered damages.  AC ¶¶ 88-93.

## III.    ARGUMENT

### A.    Plaintiffs State A Valid Claim For Breach Of Contract Premised In Part On The Breach Of The Implied Duty Of Good Faith And Fair Dealing.

As other banks have done in this MDL, Associated urges dismissal of Plaintiffs' breach of contract claims because (1) its conduct is in accord with the express terms of the Deposit Agreement and (2) Illinois', Wisconsin's, and Minnesota's versions of the UCC permit the

actions which are the subject of the breach of contract claim.  This Court previously rejected both arguments on motions to dismiss and the arguments are no more valid here.  *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1317 (S.D. Fla. 2010).

        **1.**      **The Deposit Agreement Contains Discretionary Terms That Impose An Obligation Of Good Faith On Associated.**

According to Associated, since its Deposit Agreement permits the high-to-low posting of debit card transactions, Associated can post high-to-low irrespective of the methods it employs or its rationale for doing so.  Defendant's Motion to Dismiss Plaintiffs' Amended Class Action Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Def. Mot.") at 8-13.   Case law is to the contrary.  For example, *Overdraft Litig.*, 694 F. Supp. 2d at 1317; *Gutierrez v. Wells Fargo Bank, N.A.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009), and *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1367 (N.D. Ga. 2008), hold that where a contract such as the Deposit Agreement confers discretion, the discretion must be exercised in good faith.  *Id.*

As with the agreements in the cited cases, Associated's Deposit Agreement provides for such discretion:

> If an item is presented for payment against your deposit account and if either the account balance or available balance is not sufficient to pay the item, or if there is a freeze or hold on the account, we *may* either pay or return the item . . . .
>
> We *may* choose, without notice to you, to refuse to pay any item if it would create an overdraft or you are drawing against unavailable funds, even though we may have previously established a pattern of honoring such items . . . .
>
> An overdraft *may* be created by payment of an item, in person withdrawal, ATM withdrawal, or other electronic debit transaction.

AC ¶ 35, Ex. A at 18 (emphasis added).  As with the deposit agreements in the First and Third Tranches of this MDL, discretion is apparent from the repeated use of the word "may" in Associated's Deposit Agreement.

Unlike many of the deposit agreements in the First Tranche, Associated's Deposit Agreement wholly fails to include language regarding the order in which transactions may be posted, giving the customer no notice of potential reordering that would increase the frequency of overdraft charges.  Thus, Associated did not even have the authority to reorder, much less do so without notifying its customers of its policies and practices.  Its reordering thus represents both a breach of its contract as well as a breach of the covenant of good faith and fair dealing.

Despite Associated's arguments to the contrary, case law, including the case law of the states at issue, uniformly holds that the covenant of good faith and fair dealing is implied in every contract and requires discretion conferred under a contract be exercised in good faith. Courts throughout Illinois, Wisconsin and Minnesota recognize an implied covenant of good faith and fair dealing in the performance of contracts. *See First Nat'l Bank of Cicero v. Sylvester*, 554 N.E.2d 1063, 1069 (Ill. App. Ct. 1990); *Ford Motor Co. v. Lyons*, 405 N.W.2d 354, 442 (Wis. Ct. App. 1987); *BP Prods. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 965 (D. Minn. 2007); *White Stone Partners, L.P. v. Piper Jaffray Cos.*, 978 F. Supp. 878, 882 (D. Minn. 1997). Thus, the implied covenant may be breached "if a party fails to exercise its discretion concerning how to perform the contract in a reasonable way." *Peddie v. Sterling Jewelers, Inc.*, 282 F. Supp. 2d 947, 952 (E.D. Wis. 2003); *see Citicorp Sav. of Ill. v. Rucker*, 692 N.E.2d 1319, 1324 (Ill. App. Ct. 1998) ("The doctrine of good faith . . . requires the party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties."); *BP Prods. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 965 (D. Minn. 2007) (holding that the implied covenant of good faith and fair dealing is breached when a party with control abuses its discretion in a manner that inflicts harm on the vulnerable party and undermines the purpose of the contract).

Plaintiffs allege the requisite abuse of discretion here. The AC repeatedly alleges that Associated failed to utilize good faith in exercising its discretion under the contract by creating and implementing a policy specifically designed to maximize the number of overdrafts, and thus, the amount of overdraft fees charged per customer. AC ¶¶ 7, 9, 24(e), 32, 39, 46, 47, 58, 68(f), 102(f). Further, the AC clearly alleges that Associated's reordering of debits from high-to-low hinders the Plaintiffs' ability to engage in their contracted for debit services, by depleting the funds in their accounts more rapidly and causing overdrafts when, but for the manipulation and alteration, there would be funds in their accounts and fewer overdrafts would occur. AC ¶ 33.

Associated cites *Schaller v. Marine National Bank of Neenah*, 388 N.W.2d 645, 651 (Wis. Ct. App. 1986), and claims that Plaintiffs could have avoided the harm alleged "by simply not spending more money than was available in [their] checking account[s]." Def Mot. at 8. That contention oversimplifies Associated's complex debit reordering scheme and ignores the pertinent allegations of the AC. Unlike in *Schaller* where the court held that all the plaintiff "needed to do

4

to avoid possible loss resulting from returned checks was to monitor the status of its own account," closely monitoring debit card accounts will not prevent the loss resulting from overdraft fees. Associated: (1) employs a policy of delaying the posting of debit transactions, which prevents customers from determining accurate account balances (AC ¶ 56); (2) provides inaccurate balance information through its electronic network (AC ¶ 60); and (3) often informs customers that they have a positive balance when, in reality, they have a negative balance (AC ¶ 61). In fact, the AC specifically states that "Associated Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account," a statement confirmed by the agencies that regulate the banking industry. AC ¶ 65. Thus, the reasoning applied in *Schaller* is inapplicable in the instant case, especially at the motion to dismiss stage. Moreover, whether Plaintiffs were denied the benefit of the bargain or were able to prevent the alleged harm is a question of fact that is not ripe for resolution on a Rule 12(b)(6) motion.

>     2.     **Case Law Supports the Application of Good Faith and Fair Dealing in Similar Cases.**

Relying on *White* and *Gutierrez*, this Court should conclude that Plaintiffs have pled a plausible claim for breach of contract and the implied duty of good faith and fair dealing. Like the plaintiffs in *White*, Plaintiffs allege that Associated manipulates and alters their transactions, imposes overdraft fees even where their accounts contain sufficient funds to cover a transaction, and routinely enforces a policy whereby charges incurred are posted to their accounts in order of largest to smallest amounts--even where larger charges are received days after smaller charges. AC ¶¶ 45-46. In *White*, Wachovia unsuccessfully moved to dismiss the contract claim, with the court rejecting the premise that the provisions of the contract expressly permitted Wachovia to reorder and impose overdraft fees based on the following reasoning:

> Plaintiffs' allegations state a plausible claim for breach of the implied covenant of good faith . . . . The court cannot find as a matter of law that the Deposit Agreement's statement that Wachovia "may" post items "in any order" (Deposit Agreement ¶ I.D.12) expressly gives Wachovia the right to manipulate transactions, delay posting indefinitely, and maximize overdraft fees in the ways the Complaint alleges.

*White*, 563 F. Supp. 2d at 1364.

Likewise, in *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009), Judge Alsup denied summary judgment to Wells Fargo on plaintiffs' claim for violation of the implied covenant of good faith and fair dealing notwithstanding Wells Fargo's argument that its

agreement with the depositor conferred it with absolute discretion as to the sequence of processing debit transactions, holding that:

> [E]ven if the bank-depositor contract confers discretion on the bank as to the sequence of honoring presentments, the bank must exercise its discretion in accordance with fair dealing and cannot exercise its discretion to enrich itself by gouging the consumer.  Put differently, even if the bank-depositor contract purports to allow the bank to post in any order it wishes, such discretion remains subject to the bank's duty of good faith and fair dealing.

*Id*. at 952-53.

Here, Plaintiffs have sufficiently alleged that Associated has failed to comply with the covenant of good faith and fair dealing and thus have stated a plausible claim for breach of contract.  The discretionary terms of Associated's Deposit Agreement, when viewed through the prism of good faith and fair dealing, simply do not permit overdraft fees to be charged where no overdrafts actually occurred, nor do the discretionary terms somehow immunize the manipulation of posting or the delaying of posting over days solely to gouge customers.  Thus, the Court should conclude that the breach of contract count survives the Motion to Dismiss.

Associated also incorrectly argues, as have other banks before in this MDL, that its conduct is explicitly permitted by state laws.  Def. Mot. at 9-12.  Like the other banks before it, Associated's argument ignores the very real and basic differences between check transactions and debit transactions which render inapposite the authorities on which it relies.

Illinois, Minnesota, and Wisconsin, have all adopted Section 4-303(b) of the U.C.C. and its provision that provides for banks to post checks in any order.  *See* 810 Ill. Comp. Stat. 5/4-303, 5/4A-504; Minn. Stat. §§ 336.4-303(b), 336.4A-504; Wis. Stat. §§ 404.303(2), 410.504.[2] However, Section 4-303(b) of the UCC does not insulate Associated from a breach of the covenant of good faith and fair dealing when it comes to high-to-low posting of debit card transactions.  "The UCC's generally accepted principles when dealing with checks cannot be broadly applied to debit card transactions.  To do so would be to ignore the fundamental differences between the two."  *Overdraft Litig.*, 694 F. Supp. 2d at 1316.  The Court similarly explained: "Defendants' suggested analysis of applying the UCC's endorsement of high-to-low posting in check transactions to debit card transactions does not logically follow.  If they were

---

[2] 810 Ill. Comp. Stat. 5/4A-108 and Minn. Stat. § 336.4A-108A cited by Associated Bank both expressly state that Article 4A does not apply to a transaction that is governed by the Electronic Funds Transfer Act of 1978.

the same, there would be one body of law addressing both." *Id.*; s*ee also Gutierrez*, 622 F. Supp. 2d at 951-52 (Section 4-303 does *not* apply to debit card transactions).

This Court did *not* previously "reserve[] judgment on whether the principles of UCC § 4-303(b) should apply to debit card transactions." Def. Mot. at 11. This Court made it perfectly clear that the "Defendants' suggested analysis of applying the UCC's endorsement of high-to-low posting in check transactions to debit card transactions does not logically follow." *Overdraft Litig.*, 694 F. Supp. 2d at 1316. Rather, the Court reserved judgment as to the question of whether the banks complied with their obligations of good faith, specifically stating that "any question about the facts, or how the banks operate" are "matters to be developed through discovery." *Id.* at 1317.

Citing *Hill v. St. Paul Federal Bank for Savings,* 768 N.E.2d 322 (Ill. App. Ct. 2002), Associated contends that "Illinois courts have already rejected the theory that an undisclosed practice of posting transactions from highest amount to lowest amount violates the implied covenant of good faith and fair dealing." Def. Mot. at 10-11. Associated fails to mention that this Court has considered and rejected *Hill*—a case involving paper checks—as being inapplicable to debit cards due to the "instantaneous nature of debit card transactions." *See Overdraft Litig.*, 694 F. Supp. 2d at 1316. Its motion, therefore, must be denied.

**B.      Plaintiffs Have Properly Stated a Claim for Unconscionability.**

Associated argues that the AC fails to adequately allege a claim for unconscionability. In making this argument, it is merely repeating the contentions previously rejected by this Court. *Overdraft Litig.*, 694 F. Supp. 2d at 1317-21.

This Court previously provided guidance in determining whether a challenged contractual provision or conduct was unconscionable, explaining that "[p]rocedural unconscionability relates to the manner in which a contract is made and involves consideration of issues such as the bargaining power of the parties and their ability to know and understand the disputed contract terms." *Overdraft Litig.*, 694 F. Supp. 2d at 1319. On the other hand, substantive unconscionability "requires an assessment of whether the contract terms are so outrageously unfair as to shock the judicial conscience." *Overdraft Litig.,* 694 F. Supp. 2d at 1319 (*quoting Bland v. Health Care & Ret. Corp. of Am.,* 927 So. 2d 252, 256 (Fla. Dist. Ct. App. 2006)). Applying these standards to the facts alleged in the First Tranche complaints and here, this Court held unconscionability to be sufficiently alleged where:

> The Complaints state that deposit agreements contained contractual terms regarding overdraft protection that had the purpose and effect of allowing Defendants to re-order the posting of debit transactions to maximize the number and amount of overdraft fees charged to Plaintiffs, and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service.

694 F. Supp. 2d at 1320. Wisconsin, Illinois,[3] and Minnesota apply the same legal standards as those utilized by this Court.[4]   The allegations of the AC regarding procedural and substantive unconscionability mirror those of the First and Third Tranche banks; thus the Court's prior decisions are equally applicable here and Associated's motion should be denied.

### 1.       The Deposit Agreement is Procedurally Unconscionable.

This Court found that in ruling on the motion to dismiss of the First Tranche banks that procedural unconscionability was sufficiently alleged because "the disparity in sophistication and bargaining power between Plaintiffs and Defendants is obvious.   The terms at issue were contained in voluminous boilerplate language drafted by the bank.   If Plaintiffs did disagree with the terms, there was no meaningful opportunity to negotiate with the bank."   *Overdraft Litig.*, 694 F. Supp. 2d at 1319.

The AC alleges that the sophistication and bargaining power of Associated dwarfs that of the Plaintiffs.   AC ¶ 34.   Associated's Deposit Agreement, drafted and offered on a take-it-or-leave-it basis, is a voluminous boilerplate contract printed in small type over dozens of pages.   It is a classic contract of adhesion.   *Id.*   Whether a contract is adhesive is a significant factor in determining whether it is procedurally unconscionable.   Associated claims that Plaintiffs fail to

---

[3] Under Illinois law, a finding of unconscionability can be based upon *either* procedural or substantive unconscionability, or a combination of both.   *Kinkel v. Cingular Wireless L.L.C.,* 857 N.E.2d 250, 263 (Ill. 2006) (*citing Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006)).

[4] *See Deminsky v. Arlington Plastics Mach.*, 657 N.W.2d 411, 422 (Wis. 2003) ("Procedural unconscionability requires consideration of the factors bearing on a meeting of the minds, while substantive unconscionability pertains to the reasonableness of the contract terms themselves." (internal citations omitted)); *Levey v. CitiMortgage, Inc.*, No. 07 C 2678, 2009 WL 2475222, at *4 (N.D. Ill. Aug. 10, 2009) ("[P]rocedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice . . . [while] substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed."); *Wold v. Dell Fin. Servs.,* 598 F. Supp. 2d 984, 988 (D. Minn. 2009) ("[A] contract is unconscionable if no clear-thinking person would make it, or if no such person would accept it.").

8

state a claim for unconscionability as to the Illinois Plaintiff because adhesion contracts are a "fact of modern life."  Def. Mot. at 14 (*citing Kinkel v. Cingular Wireless L.L.C.*, 857 N.E. 2d 250, 266 (Ill. 2006)).  Associated, however, completely ignores the fact that, while standardized contracts may be a "fact of modern life," whether a contract is adhesive is still a crucial factor in whether it is procedurally unconscionable.  *See Wigginton v. Dell, Inc.*, 890 N.E.2d 541, 546 (Ill. App. Ct. 2008) ("This combination of unfair surprise and the lack of the ability to bargain over the terms of the contract leads us to conclude that the contract formed between the plaintiff and Dell in the instant case was at least somewhat procedurally unconscionable.")

Moreover, Plaintiffs did not have a "meaningful choice to bank with a different bank with a different set of overdraft policies."  Def. Mot. at 13.  The agreements provided by other similar banks contain similar language and the banks engage in similar practices.  Customers, therefore, lack the ability to shop around for more favorable terms.  Associated's agreement does not even advise depositors that their transactions will be reordered, let alone adequately advise customers of their right to opt-out of its overdraft procedures.

Further, Associated's reliance on *Saunders v. Michigan Avenue National Bank*, 662 N.E.2d 602 (Ill. App. Ct. 1996), is unavailing.[5]  This Court cited to *Saunders* before determining that plaintiffs had sufficiently pled procedural unconscionability in its Order on the Omnibus Motion to Dismiss.  *Overdraft Litig.*, 694 F. Supp. 2d at 1319.  Distinguishing *Saunders*, in which the bank's overdraft fees were found not unconscionable, this Court stated that plaintiffs' situation was different, due to the allegations of "disparity in sophistication and bargaining power between Plaintiffs and Defendants," and the agreement having been drafted and offered on a take-it-or-leave-it basis, with "voluminous boilerplate language."  *Id.*

Under Wisconsin, Illinois, and Minnesota law and this Court's own analysis in previous cases, Plaintiffs have sufficiently alleged procedural unconscionability.

### 2.    The Deposit Agreement is Substantively Unconscionable.

In ruling on the First Tranche's motions to dismiss, this Court found allegations of substantive unconscionability to be sufficient where, as here, the complaint stated that:

_____

[5] In addition, the court in *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002), explicitly overruled *Saunders*.  Associated's claim that Plaintiffs must allege that he was "actually oppressed" to state a claim for unconscionability ignores the fact that *Saunders* was overruled, that "oppression" is not a necessary element, and that there are other factors including substantial injury to consumers.  *Id*.; Def. Mot. at 13.

> [D]eposit agreements contained contractual terms regarding overdraft protection that had the purpose and effect of allowing defendants to re-order the posting of debit transactions to maximize the number and amount of overdraft fees to Plaintiffs, and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service.

*Overdraft Litig.*, 694 F. Supp. 2d at 1320; *see also Levey*, 2009 WL 2475222, at *4; *Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 166 (Wis. 2006). Based on the same allegations, this Court should find the Deposit Agreement to be substantively unconscionable.

The overdraft fee provisions in the Deposit Agreement are unreasonably favorable to Associated, and the purpose and effect of those provisions are to negate the reasonable expectations of the customers. AC ¶¶ 34-38. Associated relies on the unconscionable overdraft terms to manipulate transactions and to wrongfully multiply fees – excessively large fees that customers *cannot* reasonably avoid, even when exercising due diligence to monitor their account balances and to maintain sufficient funds. AC ¶¶ 39-60, 68, 102-104. No reasonable person would ever have agreed to grant Associated the unfettered power to manipulate checking account transactions for the sole purpose of maximizing its profits at consumer expense. AC ¶¶ 69-92, 102-104. Further, the cost to Associated to provide this "service" has *no reasonable relation* to the amount of the overdraft, nor to the actual cost of covering it. AC ¶ 104. This fact alone dictates the unconscionability claim is plausible and should be sustained. *See, e.g.*, *Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 512-13 (Cal. 1985) (allegations of overdraft fees of $6 deemed sufficient to maintain unconscionability claim).

Associated argues that the practice of ordering debit card transactions from high to low is commercially reasonable because this MDL case proves that these practices "were not unusual." Def. Mot. at 14. The mere fact that many banks follow these abusive reordering practices does not render them and the underlying agreements any less unconscionable.

Further, the unconscionability inquiry is fact intensive, making dismissal at this stage inappropriate. *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1280 (S.D. Fla. 2009) ("Whether or not a reasonable person would have actually agreed to it is a factual question that cannot be decided on a motion to dismiss."). Therefore, the unconscionability count should not be dismissed.

### C.     Plaintiffs Properly State a Claim for Conversion.

As with the other arguments addressed in this Response, Associated repeats an argument previously rejected by this Court in the Omnibus Order. *Overdraft Litig.*, 694 F. Supp. 2d at

1322-23.  This Court should again conclude that a conversion claim has been validly pled as to the funds withdrawn from Plaintiffs' account for the overdraft fees imposed.  To state a claim for conversion, a plaintiff must plausibly show: (i) his or her ownership of *or* right to possess the property at issue, and (ii) a wrongful interference with that right.  *See generally Prosser and Keeton on the Law of Torts* § 15 (5th ed. 1984).  The allegations in Plaintiffs' AC are more than sufficient to satisfy these elements.

Under Illinois law, "[t]he essence of conversion is the wrongful deprivation of one who has a right to the immediate possession of the object unlawfully held." *Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454, 463 (Ill. App. Ct. 2004) (internal citations and quotations omitted).  The other states hold similarly.  *See Prod. Credit Ass'n of Chippewa Falls v. Equity Coop Livestock Sales Ass'n*, 261 N.W.2d 127, 129 (Wis. 1978) (conversion is "the wrongful exercise of dominion or control over a chattel"); *Williamson v. Prasciunas*, 661 N.W.2d 645, 649 (Minn. Ct. App. 2003) (the elements of conversion are: "(1) plaintiff holds a property interest; and (2) defendant deprives plaintiff of that interest").

Further, unlike the other banks in this MDL, Associated does not dispute that Plaintiffs had ownership of and the right to possess the funds in their accounts.[6]  Thus, this Court need not even engage in the "right of possession" analysis it undertook in upholding conversion claims in the First Tranche cases.  *See, Overdraft Litig.*, 694 F. Supp. 2d at 1323.  It cannot be disputed that wrongful deprivation of property owned by another is conversion under the laws of Illinois, Wisconsin and Minnesota.  *See, e.g., Daniels v. Powell*, 604 F. Supp. 689, 696 (N.D. Ill. 1985) (essence of tort of conversion is wrongful exercise of dominion and control over "personal property owned by another"); *Brickley v. Walker*, 32 N.W. 773, 776 (Wis. 1887) (conversion sufficiently alleged based on allegation of "ownership of the property by the plaintiffs); *Herrmann v. Fossum*, 364 N.W.2d 501, 503 (Minn. Ct. App. 1985) (deprivation of property "owned by others" is a conversion).

In any event, because a depositor has an "absolute and unconditional right to immediate possession of the property" in his checking account, a depositor can bring a claim for conversion against a bank even without an admission that the account is "owned" by the depositor.  *Cruthis*,

---

[6] The Deposit Agreement has a "Forms of Deposit Account Ownership" provision that clearly identifies the customer has the owner.  AC Ex. A at 4.  For example, with respect to joint tenants with rights of survivorship, it states that "[w]e will not determine the ownership of the funds" and that "[u]pon the death of any owner, the survivor(s) agree to notify us at once." *Id.*

822 N.E.2d at 463-64; *see also Roderick Dev. Inv. Co. v. Cmty. Bank of Edgewater*, 668 N.E.2d 1129 (Ill. App. Ct. 1996).  Wisconsin and Minnesota also recognize a conversion based on a right of possession alone.  *See, e.g., Preston v. United States*, 696 F.2d 528, 540 (7th Cir. 1982) ("essential element of conversion under Wisconsin law is that the plaintiff have possession or have an immediate right to possession of the chattel."); *Herrmann*, 364 N.W.2d at 503 (defining conversion as "an act of willful interference with personal property of another which is  . . . inconsistent with the rights of the person entitled to . . . possession . . . of the personal property.")

Likewise, as in the First Tranche cases, Plaintiffs here have alleged a more than adequate nucleus of facts to satisfy the "wrongful act" requirement of a conversion claim.  As discussed in the AC, Associated's scheme includes reordering transactions to impose the greatest possible number of overdraft fees – even when there are sufficient funds in the account – and batching transactions over multiple days.  AC ¶¶ 39, 46, 47, 48.  Where the original assessment of an overdraft is improper, the resultant overdraft fee is also improper.  *See White* 563 F. Supp. 2d at 1371 (refusing to dismiss the plaintiffs' conversion claim and rejecting Wachovia's reliance on its deposit agreement because "impos[ing] Overdraft Fees when there was in fact no overdraft" satisfied the wrongful act element); *see also Cruthis*, 822 N.E.2d at 463-64 (affirming a jury verdict of conversion in favor of the depositor where the bank removed funds on deposit in the depositor's general account).

Ignoring that its own Deposit Agreement omits any mention of reordering transactions— the wrongful practice that caused improper, multiple overdrafts in the first place—Associated argues that its taking of funds from its customers' accounts was not wrongful because it was permitted by the Deposit Agreement.  In rejecting a similar argument by the First Tranche banks, this Court aptly ruled:

> First, if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendants may be barred from relying on them.  Second, Plaintiffs have pled enough facts to show that, even if the deposit agreements gave Defendants discretion to re-order the debit postings, Defendants exercised that discretion in bad faith by intentionally causing Plaintiffs to incur overdrafts that they would not have otherwise incurred.  These allegations could lead a reasonable factfinder to conclude that Defendants acted wrongfully in charging some of the overdraft fees, thereby converting Plaintiffs' funds.  Thus, the Court cannot dismiss Plaintiffs' claim for conversion.

*Overdraft Litig.*, 694 F. Supp. 2d at 1323.

12

Associated also argues that, because Plaintiffs had an option to choose a different financial institution, the Deposit Agreement was not unconscionable, its removal of funds were not violative of the covenant of good faith, and its actions, therefore, were not wrongful so as to satisfy this element of conversion.  Contrary to Associated's claims, Plaintiffs did not have *any* kind of meaningful choice to select another bank.  Indeed, this MDL proceeding is coordinating similar lawsuits against many of the country's largest banks.  Given that these banks make up most of the banking market share in the United States, and that many of the smaller banks that are both part of and not yet part of the MDL engage in similar activities, the banking choices available to Plaintiffs are hardly meaningful.[7]  Given this lack of meaningful choice, Associated's argument that a finding of unconscionability or bad faith would be contradictory to either Wisconsin or Minnesota law is erroneous.[8]

Associated also argues that Whitehead may not pursue a conversion claim because she has failed to make a demand for possession of the wrongfully converted funds in her account which is purportedly required under Illinois law.  The case law, however, holds that a demand is not always required.  A demand in the complaint or "another independent action of conversion" established by the plaintiff is sufficient to satisfy any such requirement.  *Hodges v. US Bank Home Mortgage*, No. 10 C 5928, 2011 U.S. Dist. LEXIS 5732, at *6 (N.D. Ill. Jan. 20, 2011); *Fortech, L.L.C. v. R.W. Dunteman Co.,* 852 N.E.2d 451, 462 (Ill. App. Ct. 2006).  Both exist here.  The AC contains a demand for return of the money wrongfully converted and alleges other independent and multiple acts of conversion from the accounts.  AC ¶¶ 77, 117, Prayer for Relief.  Further, this argument also ignores the fact that the AC clearly alleges satisfaction of all conditions precedent, which would include a demand on Associated for the return of the converted funds at issue if a demand were necessary, which Plaintiffs dispute.  AC ¶ 93.  Illinois federal courts have held that under Rule 9(c) of the Federal Rules of Civil Procedure, "a general

---

[7] Associated seems to have forgotten that it argued only two pages earlier that its practice of ordering debit card transactions from high to low is commercially reasonable because this MDL case proves that the overdraft and posting-order policies "were not unusual."  Def. Mot. at 14.

[8] Associated's argument that the AC fails to allege that overdraft provisions of the Deposit Agreement are unconscionable ignores its clear language alleging the "inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms" and other factors render the provisions unconscionable.  AC ¶ 103.  In addition, the AC specifically refers to the "unconscionable provisions" within the Deposit Agreement.  AC ¶ 24(k).

allegation that conditions precedent have been performed or excused is ordinarily sufficient." *Sara Lee Corp. v. Litton Indus. Automation Sys., Inc.*, No. 91 C 0971, 1992 WL 22693, at *2 (N.D. Ill. Feb. 6, 1992); *Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987); *Bednarcik v. Titan Am. L.L.C.*, No. 08-81534, 2009 WL 1684642, at *2 (S.D. Fla. June 15, 2009).[9]  As such, the conversion claim is legally sufficient.[10]

Associated's claim that conversion does not apply under Minnesota law if the defendant acted with "lawful justification" fails.  There is no legal justification for the conduct alleged in the AC.  Further, as explained above, Associated's contention that the bank is the owner of the funds in the account is contrary to its own Deposit Agreement which states that "[t]he type of ownership of your account(s) is determined by you."  AC Ex. A at 4.  Further, as also explained above, the argument ignores Plaintiffs' right to immediate possession of the money in the account and the fact that Associated took identifiable funds from a specific account.  *See Herrmann*, 364 N.W.2d at 503.

> **D.      Plaintiffs Properly State a Claim for Unjust Enrichment.**

Associated proffers two reasons as to why Plaintiffs' unjust enrichment cause of action fails, both of which have already been rejected by this Court.  First, under Wisconsin, Illinois and Minnesota law, Associated contends that there can be no claim for unjust enrichment because there is an express written contract.  As this Court has recognized, Plaintiffs may plead and litigate both claims at this stage of the case.  *Overdraft Litig.*, 694 F. Supp. 2d at 1321 ("The Court agrees with Plaintiffs' position.  Fed. R. Civ. P. 8(d) allows pleading in the alternative, even if the theories are inconsistent.  Defendants have not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under an unjust enrichment theory.").  Wisconsin, Illinois, and Minnesota also permit alternative pleading.  *See, e.g., Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1016-17 (W.D. Wis. 2008) (holding that a plaintiff is "free to plead" the alternative theories of breach of contract and unjust enrichment under Fed. R. Civ. P.

---

[9] If this Court believes that a more specific allegation of a demand is necessary, Whitehead can easily cure the deficiency through an amendment of the pleading.  *4658 North Ocean Inc. v. Branch Bank & Trust Co.*, No. 10-61865, 2010 WL 4960088, at *4 (S.D. Fla. Dec. 1, 2010).

[10] Associated also argues that *Saunders* and *Hill* support its claims, even though these cases, distinguished above, deal solely with paper check transactions, not debit transactions, and neither case involves a claim for conversion.

8(e)(2)); *Prudential Ins. Co. of Am. v. Clark Consulting, Inc*., 548 F. Supp. 2d 619, 623 (N. D. Ill. 2008) (ruling with respect to a contract and unjust enrichment claim that "a plaintiff may plead claims in the alternative, even if the claims are contradictory"); *Motley v. Homecomings Fin., L.L.C.*, 557 F. Supp. 2d 1005, 1014 (D. Minn. 2008) ("Plaintiffs may plead their unjust enrichment claim in the alternative to their breach of contract claim without fear of dismissal.").

Second, Associated argues that Plaintiffs' unjust enrichment claim should be dismissed because Associated's practices are permitted by the Deposit Agreement and are in accord with state law.[11]  The Deposit Agreement does not authorize the reordering of debit transactions and any discretion Associated did have to reorder has to be exercised in good faith.  Moreover, this Court has already held that similar allegations in the complaints of the First and Third Tranche plaintiffs were sufficient.  Finally, not only is the Deposit Agreement silent as to Associated's reordering practices, but as this Court has already held, "if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendant may be barred from relying on them." *Overdraft Litig.*, 694 F. Supp. 2d at 1323.

Further, the cases cited by Associated for the proposition that unjust enrichment claims should be dismissed based upon the existence of a breach of contract claim do not support its argument.  In *Sharp v. Laubersheimer*, 347 N.W.2d 268 (Minn. 1984), *United Prairie Bank-Mountain Lake v. Haugen Nutrition & Equipment, L.L.C.*, 782 N.W.2d 263 (Minn. Ct. App. 2010), and *Meyer v. Laser Vision Institute, L.L.C.*, 714 N.W.2d 223, 230 (Wis. Ct. App. 2006), the courts already had determined that there was a valid express contract.  Here, the validity of the Deposit Agreements is still in dispute.

---

[11] For the proposition that Illinois law permits a bank to post transactions from high to low, even when its intention is to maximize the number of overdraft charges, Associated cites, yet again, to the already rejected case of *Hill,* 768 N.E. 2d 3220.  *See Overdraft Litig.*, 694 F. Supp. 2d at 1316 (holding that defendants' requested application of check reordering law to debit transactions does not logically follow).

**E.      Plaintiffs Have Properly Alleged a Violation of the State Consumer Protection Acts of Illinois and Minnesota.**[12]

       **1.      Plaintiffs Have Properly Alleged A Violation Of the Illinois Consumer Fraud and Deceptive Practices Act.**

Associated claims that Plaintiffs have failed to adequately allege that it violated the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"). 815 Ill. Comp. Stat. 505/2 *et. seq.* The Bank's argument must be rejected in its entirety. Associated's motion fails to offer any compelling argument for this Court to revisit its prior ruling that the defendant banks' practices are potentially "unfair" under ICFA and Plaintiffs have properly alleged their ICFA claim.

This Court has already denied a prior challenge to the application of ICFA to the bank practices alleged here in substantially similar complaints. *Overdraft Litig.*, 694 F. Supp. 2d at 1325-28 (denying omnibus motion seeking to dismiss, *inter alia,* claim for violation of the consumer protection statute of Illinois.) Associated's motion fails to even acknowledge this Court's prior decision in its discussion of the ICFA.

Moreover, *Hill*, Associated's case in chief for the proposition that "Illinois precedents foreclose any ICFA claim challenging the adequacy of Associated's disclosures about its posting order," was previously the subject of an extensive analysis by this Court. *See Overdraft Litig.*, 694 F. Supp. 2d at 1316. Plaintiffs have already discussed the inapplicability of *Hill*, a case that ruled on check, not debit, transactions, in Section III.A.2 above.

Further, Plaintiffs' allegations here demonstrate language in the Deposit Agreement and a pervasive scheme far more deceptive than that alleged in *Hill*. Associated stresses in the Deposit Agreement the electronic and instantaneous nature of debit card transactions, stating that a debit card "provides electronic access to your account" and that "[w]hen you initiate a POS Transaction, the amount of said transaction will be reserved against your account by memo post and reduces the available balance in your account prior to the actual debit of said transaction." AC Ex. A at 23. It states that "ATM/POS terminal transactions are completed *immediately* with us." AC Ex. A at 28 (emphasis added). These and other provisions inform the customer that

---

[12] Associated seeks dismissal of claims brought under the Wisconsin Unfair Trade Practices Act, Wis. Stat. § 100.20, *et seq*, because claims against national banks are not permitted under this statute. Plaintiffs do not contest dismissal of claims brought under Wis. Stat. § 100.20. *See Overdraft Litig.*, 694 F. Supp. 2d at 1323 n.11.

transactions made with a debit card will be immediately debited from a customer's account. However, as the AC makes clear, this is not the case. Plaintiffs allege that Associated holds debit card transactions, sometimes for days, prior to posting them. AC ¶¶ 45, 46. During this intentional delay, Associated reorders the transactions and subsequently posts them in high to low order to generate more fee revenue for the bank at the expense of customers. AC ¶¶ 45, 46. Further, fees are often assessed when there were sufficient funds in the account. AC ¶ 48. These practices are clearly deceptive as they are contrary to the clear import of the Deposit Agreement and to the reasonable expectations of the consumer. Indeed, though the inquiry is inherently factual and thus unsuitable for determination under Fed. R. Civ. P. 12(b)(6), *no consumer* could reasonably expect that Associated would reorder debit card transactions. Moreover, the AC sets forth additional allegations of unfair and deceptive acts, including the cloaking of accurate balance information and failing to advise customers of their rights to opt out. AC ¶¶ 49-60.

Associated's citation to *Saunders v. Michigan Avenue National Bank*, 662 N.E.2d 602 (Ill. 1996) is an odd choice for an example of "Illinois precedent" that would supposedly bar Plaintiffs' ICFA claim. Associated claims that *Saunders* makes it "impossible to deem Associated's use of a high-to-low posting order an 'unfair practice' under the ICFA." Def. Mot. at 22. Yet, the *Saunders* court's view of unfairness under the ICFA was specifically rejected by the Illinois Supreme Court in the seminal case of *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). As held by the U.S. District Court for the Northern District of Illinois:

> The Federal Trade Commission . . . considers the following factors relevant to the question of fairness: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers." *Robinson*, 266 Ill.Dec. 879, 775 N.E.2d at 961 (*citing Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)) ("the *Robinson* factors"). . . .
>
> In its Motion to Dismiss, Ford Credit mistakenly relies on *Saunders* for the proposition that "all three elements must be present for a finding that the act is 'unfair.'" . . . As discussed above, this is not the correct legal standard. In fact, the Supreme Court of Illinois specifically rejected this approach in *Robinson*. 266 Ill. Dec. 879, 775 N.E.2d at 961 ("Although the holding in *Saunders* seems to suggest that all three prongs of the *Sperry* test must be met, that is not an accurate statement of plaintiffs' burden.").

*Gros v. Midland Credit Mgmt.*, 525 F. Supp. 2d 1019, 1025-26 (N.D. Ill. 2007). In any event, in

17

declining to dismiss the ICFA claims in the Omnibus Motion, this Court has already specifically found that the defendant banks' practices are potentially "unfair" under the ICFA. *See Overdraft Litig.*, 694 F. Supp. 2d at 1325-26.

The remainder of Associated's arguments for dismissal of the ICFA claim rest on the meritless proposition that Plaintiffs' 35-page complaint "fails to state with particularity the circumstances constituting fraud." Yet, the AC alleges that Associated failed to disclose that customers had the option to "opt out" of the overdraft scheme (AC ¶ 68(a)) and that it *always* reorders debit card transactions from high to low (AC ¶ 68(f)). The AC also describes in great detail Associated's undisclosed and deliberate policy and practice of re-sequencing debit purchases from largest to smallest. AC ¶¶ 39-60. Such allegations are sufficiently particular as to satisfy Fed. R. Civ. P. 9(b) on an ICFA claim where one need only plead: "the 'who, what, when, where, and how' of [the] claim." *Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 869-70 (N.D. Ill. 2006) (citations omitted). There is no basis for Associated's contention that the AC fails to sufficiently particularize its ICFA allegations under Fed. R. Civ. P. 9(b).

## 2.    Plaintiffs Have Properly Alleged A Violation Of the Minnesota Consumer Fraud and Deceptive Practices Act.

Associated also argues that Plaintiffs' claims under Minnesota's Prevention of Consumer Fraud Act ("MPCFA") fail because the AC does not plead adequately a "causal connection" between Associated's allegedly misleading and deceptive acts and the Plaintiffs' asserted injury. Associated's argument for dismissal of Plaintiffs' MPFCA claims must be rejected. Minn. Stat. § 325F *et seq.*

Associated's sparse argument focuses on the pleading requirements of Fed. R. Civ. P. 9(b). Def. Mot. at 22-23. Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In *Tuttle v. Lorillard Tobacco Co.,* 118 F. Supp. 2d 954, 963 (D. Minn. 2000), the district court ruled that dismissal of an MPCFA claim is required in the circumstance where "Plaintiff has made nothing more than sweeping conclusory allegation of fraudulent conduct." 118 F. Supp. 2d at 963. Associated goes no further than citing *Tuttle* and stating *ipse dixit* that Plaintiffs fail to plead the requisite causal connection in their MPCFA claim. Def. Mot. at 23. That is hardly the case here.

Associated argues that Plaintiffs' MPCFA claims fail to establish that Plaintiffs were "injured by" Associated's acts because the complaint lacks allegations that the Minnesota Plaintiffs "actually saw or heard any allegedly deceptive statements from Associated," "were

18

unaware that Associated was posting their debit card transactions from highest to lowest," or that the "alleged deception induced the [Minnesota Plaintiffs] to incur overdraft fees that they would have avoided had they been aware of Associated's posting order practices."   Def. Mot. at 23. The Minnesota Supreme Court has recognized that to prove allegations of consumer fraud, the "injured" element of Minn. Stat. § 8.31, subd. 3a requires that a plaintiff prove a "causal nexus" between the plaintiff's injuries and the defendant's wrongful conduct.   *Group Health Plan, Inc. v. Philip Morris, Inc.*, 621 N.W.2d 2, 6 (Minn. 2001).  Minnesota law, however, does not require that the Minnesota Plaintiffs *in particular* relied on Associated's deceptive acts.   *Id.*

Minnesota courts have held consistently that "the proof of causation required in consumer-protection class actions is less stringent than proof of causation required in actions for common law fraud and does not require proof of individual reliance, but merely a causal relationship between the [defendant's] actions and the alleged injury."   *Curtis v. Altria Group, Inc.,* No. A10-215, 2010 WL 5292065, at *20 (Minn. Ct. App. Dec. 28, 2010) (*citing Weigand v. Walser Auto. Groups, Inc.*, 683 N.W.2d 807, 811-12 (Minn. 2004); *see also Group Health Plan, Inc.*, 621 N.W. 2d at 6 ("in cases such as this, where the plaintiffs' damages are alleged to be caused by a lengthy course of prohibited conduct that affected a large number of consumers, the showing of reliance that must be made to prove a causal nexus need not include direct evidence of reliance by individual consumers of defendants' products").

The AC alleges such a causal relationship with much more than merely sweeping conclusory allegations of fraudulent conduct, both as to the Classes as a whole and the Minnesota Plaintiffs in particular.   It describes in detail Associated's failure to disclose that customers had the option to "opt out" of the overdraft scheme (*see* AC ¶¶ 61, 65, 68(a), 88) and that Associated *always* reorders debit card transactions from high to low, in order to maximize the number of overdrafts.  AC ¶¶ 33, 39, 40, 68(f), 72.  The AC also describes in great detail Associated's undisclosed and deliberate policy and practice of re-sequencing debit purchases from largest to smallest.  AC ¶¶ 39-60.  Paragraphs 80-87 of the AC describe Associated's conduct as to the Minnesota Plaintiffs in particular.  These allegations are more than sufficient to provide Associated with the ability to respond and to establish the causal relationship required under Minnesota law and satisfy Fed. R. Civ. P. 9(b).

19

F.      **Associated May Not Escape Liability for Its Own Purposeful Wrongful Acts by Relying on the 14-day Reporting Provision in Its Deposit Agreement.**

Associated asserts that the provision of its Deposit Agreement designed to provide it with the opportunity to investigate errors or unauthorized transactions for which it had no knowledge is applicable to its own deliberate actions in wrongfully assessing overdraft charges.[13] Associated's assertion that the notice provisions relating to "unauthorized signatures, alterations, other unauthorized transactions, or errors" somehow encompass overdraft fees assessed pursuant to its own intentional wrongful practice of always reordering transactions from high to low is too clever by half.  It is ludicrous to contend that this provision imposes on a depositor an obligation to notify Associated of its own purposeful actions of which it was obviously already on notice; the provision can only be read as requiring depositors to provide notice to Associated of fraudulent acts of third-parties or good faith errors of which the Bank had no notice.  The provision is not intended nor should it be read to require a depositor to lodge a claim with Associated arising from its own deliberately adopted internal policies, especially where, as here, the Bank's reordering manipulations were impossible to decipher and Plaintiffs lacked knowledge of the relevant facts.  *See*, Section III.G.2, *infra*.

Associated's authorities do not support a contrary reading of the provision of the Deposit Agreement.  Def. Mot. At 23-24 *citing Borowski v. Firstar Bank Milwaukee, N.A.,* 579 N.W.2d 247 (Wis. Ct. App. 1998), *Reliance Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, No. 99 C 3366, 2001 WL 62597 (N.D. Ill. Jan. 25, 2001), and *Brunswick Corp. v. Nw. Nat. Bank & Trust Co. of Minneapolis*, 8 N.W.2d 333 (1943).  These are all cases concerning a bank's liability for cashing forged checks under account agreements which required notice to the bank of "unauthorized signatures," "unauthorized charges" or simply, "errors" within periods ranging

---

[13] The Deposit Agreement provides as follows:

> If you fail to report any unauthorized signatures, alterations, other unauthorized transactions, or errors in your account within 14 days of when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and the loss will be entirely yours.  This 14 day limitation is without regard to whether we used ordinary care and applies regardless of whether you actually received the statement.  If you are not receiving your statement it is your obligation to notify the Bank.

AC, Ex. A at 11.

20

from 10 to 30 days.  The cases have nothing to do with the banks imposing charges on depositors as a consequence of the banks' own purposeful wrongful acts.

Moreover, universal and fundamental state law rules of contract construction compel a reading of the Deposit Agreement which is contrary to Associated's.  First, because the provision in question fails to explicitly include charges deliberately assessed by Associated in contrast to those that are merely "unauthorized" among the list of statement entries of which a depositor must notify it, the maxim of interpretation *expressio unius est exclusio alterius* is applicable.  *See Petrilli v. Drechsel*, 910 F.2d 1441, 1447 (7th Cir. 1990).  This maxim holds that when specific items are listed in a contract without any more general or inclusive terms, other items, although similar in kind are excluded.  *See Dugan v. Smerwick Sewerage Co.*, 95 C 3223, 1996 WL 535306 (N.D. Ill. Sept. 18, 1996), *aff'd*, 142 F.3d 398 (7th Cir. 1998); *Larson v. Watzke*, 259 N.W. 712, 713 (Wis. 1935); *Harris v. County of Hennepin*, 679 N.W.2d 728 (Minn. 2004).  Because the provision in question lists specific items that must be reported to Associated within 14 days, but does not list fees or charges deliberately assessed by the Bank, such intentionally-imposed items cannot be deemed to fall within the notice requirements of the provision.

In addition, although Plaintiffs contend that the provision cannot be read to require that notice be given to Associated informing it of its own intentional wrongdoing, under basic principles of contract interpretation the provision must be read against the drafter to the extent that the provision is deemed ambiguous.  *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 306 (7th Cir. 1992); *Seitzinger v. Cmty. Health Network*, 676 N.W.2d 426, 452 (Wisc. 2004); *Beattie v. Prod. Design & Eng'g, Inc.*, 198 N.W.2d 139, 144 (Minn. 1972).  Accordingly, this provision should be construed against Associated as drafter of the Deposit Agreement and found inapplicable to require a depositor to object to the overdraft fees within 14 days of receiving a statement.

G.     **The Voluntary Payment Doctrine is Not a Defense to Plaintiffs' Claims.**

Associated incorrectly raises the Voluntary Payment Doctrine (the "Doctrine") as a basis to dismiss the AC, arguing that the Doctrine bars the recovery sought by Plaintiffs and the Classes under Wisconsin, Illinois, and Minnesota law.  The Doctrine is treated similarly in these (and other) states.  To maintain an action for the recovery of a prior payment made, a party wishing to challenge the validity or legality of a bill for payment has an obligation to make the challenge either before or at the time of voluntarily making payment.  *Putnam v. Time Warner*

21

*Cable*, 649 N.W.2d 626 (Wis. 2002); *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325 (Ill. App. Ct. 1995); *Best Buy Stores, L.P. v. Developers Diversified Realty Corp.*, No. 05-2310, 2010 U.S. Dist. LEXIS 117971 (D. Minn. Nov. 4, 2010); *Joannin v. Ogilvie,* 52 N.W. 217 (Minn. 1892).

The Doctrine, however, has no applicability to the facts pled in the AC because there was no voluntary payment.  Additionally, the issue of whether a voluntary payment was made so as to bar recovery is inherently factual and thus premature when raised in a Fed. R. Civ. P. 12(b)(6) motion.  Further, the very issue presented here - whether a bank customer is barred from pursuing a claim for repayment of overdraft fees when the customer did not object at the time the overdraft fees were withdrawn – has already been rejected when raised by a bank in a previous and factually similar case.  *See Gutierrez,* 622 F. Supp. 2d at 955 (explaining that the Doctrine was inapplicable for reasons including that "the record does not support a finding that the plaintiffs understood Wells Fargo's overdraft policies," and plaintiffs did not "explicitly consent[] based on an arguably inadequate disclosure regarding the challenged re-sequencing practice in the consumer account agreement").

Further, the Doctrine does not apply in instances where the plaintiff can show that when making the payment: (a) it lacked full knowledge of all the facts, (b) it supposed the facts to be otherwise (mistake of fact); (c) it was done "involuntarily," or (d) the defendant committed some fraud.  *Putnam*, 649 N.W.2d at 631-32; *Smith*, 658 N.E.2d at 1329-31; *Best Buy Stores, L.P.*, 2010 U.S. Dist. LEXIS 117971, at *7-8; *Joannin,* 52 N.W. at 217-18.  Courts also preclude voluntary payment as a defense where a plaintiff has sued under a state consumer protection statute.  *See Scott v. Fairbanks Capital,* 284 F. Supp. 2d 880 (S.D. Ohio 2003).  In this case, the Doctrine provides no defense because, as alleged in the AC, the payments were not made voluntarily with full knowledge of the facts, and the doctrine is inapplicable as a defense to consumer protection statutes.  In fact, Plaintiffs contend that the withdrawal of funds from their account to cover a fee imposed by Associated is not in fact a "payment" to which the Doctrine would apply.  The word "payment" contemplates an affirmative act on the part of the payor.

> 1.      **The Payments Were Made Involuntarily.**

"Voluntariness" goes to the willingness of a person to pay a bill without protest as to its correctness or legality.  *Putnam,* 649 N.W. 2d at 632.  An involuntary payment is one not proceeding from choice.  66 Am. Jur. § 112 (2001).  Payments that are made by virtue of legal

obligation, accident, or mistake are inherently involuntary. *Id.* If the payment was made as a result of compulsion or duress, it is stripped of its voluntary character. *Arra v. First State Bank & Trust Co. of Franklin Park*, 621 N.E.2d 128, 131 (Ill. App. Ct. 1993). Compulsion is a viable defense even without a protest against payment. *Smith v. Prime Cable of Chicago*, 658 N.E.2d 1325 (Ill. App. Ct. 1995). It is well-established that the issues of duress and compulsory payment ordinarily are factual, to be judged in light of all circumstances surrounding a transaction. *Randazzo v. Harris Bank Palatine, N.A.*, 262 F.3d 663, 668 (7th Cir. 2001) (applying Illinois law).

This case is far different from cases in which a plaintiff affirmatively pays a defendant and then sues to recover the payment - Plaintiffs did not voluntarily pay the overdraft fees. Associated exclusively decided to withdraw money from Plaintiffs' accounts, without any prior notice or opportunity to object or protest. The fact that the Deposit Agreement may, under certain circumstances, allow Associated to withdraw funds does not give Associated *carte blanche* to withdraw funds as a result of Associated's unlawful reordering scheme or to call the withdrawals "payments." The funds were taken from Plaintiffs, not paid by them. The overdraft charges were not "caused by" Plaintiffs, but were the deliberate result of Associated's unlawful scheme. The withdrawals are not "payments" and the Doctrine has no applicability.

Moreover, Plaintiffs should have the opportunity to pursue facts demonstrating involuntariness as the product of Associated's compulsion or duress. Among other ramifications from unsatisfied overdraft fees are additional fees of $7.00 per day the account is overdrawn for more than five days (AC ¶ 7), the freezing or closure of the customer's account, reporting of a negative history to credit reporting agencies, collection efforts by the bank, and the bank's reporting of the delinquency to the other banks in its network which may impact that customer's ability to open an account at other banks in the future. Denying access to a person's account causes disruption of automatic payments that flow in and out of the account and limits access to money to pay for essentials including food or household related expenses. One could hardly say that payment under these circumstances is voluntary. Associated's unqualified assertion that Plaintiffs could have simply walked away from their accounts without paying overdraft fees is absurd and would have resulted in a collection action against Plaintiffs and an adverse credit report. The same argument was rejected by Judge Alsup when he denied Wells Fargo's motion

for summary judgment in *Gutierrez*.[14]

##### 2.      Plaintiffs Were Without Full Knowledge of the Facts.

Plaintiffs allege in their AC that they lacked knowledge of the relevant facts.  AC ¶¶ 36, 38, 40, 49-60.  Associated intentionally posted debit transactions on or after the days in which the transactions were made, in a manner undeterminable and unpredictable by the Plaintiffs, and then re-ordered them from high to low to intentionally cause the Plaintiffs' funds to deplete as quickly as possible, resulting in greater overdrafts to Plaintiffs.  AC ¶¶ 39-60.  There has been no showing that Plaintiffs were aware that the overdraft fees were illegal and actionable.  Despite Associated's argument that the Plaintiffs are required to undertake some diligence to investigate the facts, a review of the terms of the Deposit Agreement would not provide all the facts needed to decipher Associated's contorted reordering manipulations nor would it explain the calculation of the number of fees assessed.  AC ¶¶ 68-87.  This case is easily distinguishable from the facts in *Randazzo*, on which Associated relies heavily, because in that case the contract at issue was clear on its face in stating that no payment was necessary.  *Randazzo*, 262 F.3d at 670.  The plaintiff chose to rely on representations provided by the defendant when he on his own volition sold his shares of stock to pay down a credit line that he had with the bank.  *Id.  Randazzo* has no bearing on the issues in the instant case.

Associated's argument that the holding in *Putnam* should control the outcome here is entirely misplaced.  In *Putnam*, voluntary payment was properly recognized as a defense because the plaintiff did not dispute that it had full and complete knowledge of how and when it would be exposed to Time Warner's $5.00 late fee.   *Putnam*, 649 N.W.2d at 633.   There were no allegations that Time Warner intentionally manipulated its receipt of funds paid by its customer so that it could assess the late fee.  As explained above, Plaintiffs in the case at bar allege that the Associated purposefully manipulated Plaintiffs' accounts to create additional overdraft charges without notifying Plaintiffs in advance of or at the time the overdraft charges were imposed how it sequenced debits.  Thus, Plaintiffs did not possess full knowledge of what that method is, nor could they discern it from that which was supplied to them by Associated.  The information supplied to them by Associated was in fact misleading and inaccurate.  AC ¶¶ 49-57.

---

[14] Courts have found that similar circumstances of stress justify abrogation of the voluntary payment doctrine.  *See, e.g., Negrin v. Norwest Mortgage, Inc.,* 700 N.Y.S.2d 184, 192-93 (App. Div. 1999) (finding consumer fraud where  a mortgage lender at a loan closing imposed unlawful fees since borrowers have little, if any, real choice to challenge standard fees).

### 3.   The Doctrine Does Not Preclude Consumer Protection Claims.

Finally, the Doctrine does not apply to Plaintiffs' claims for violation of various consumer protection statutes.  It would defy logic to conclude that the states' consumer protection statutes are only available to the consumer who challenges the unlawful or deceptive business practices in court prior to paying, thereby precluding claims by consumers who had made a payment as a result of an unlawful obligation imposed by the payee that was discovered to be unlawful after payment was made.   This was the precise holding in *Scott v. Fairbanks Capital Corp.,* 284 F. Supp. 2d 880 (S.D. Ohio 2003), wherein the Doctrine was held to be inapplicable to a putative class action against a lender for violation of the Fair Debt Credit Practices Act for consumers that did not protest fees found to be unlawful until after they were paid and once a lawsuit filed.  *See Sobel v. Hertz Corp.*, 698 F. Supp. 2d 1218 (D. Nev. 2010); *Gonzalez v. Codilis & Assocs., P.C.*, No. 03 C 2883, 2004 WL 719264 (N.D. Ill. Mar. 31, 2004).

Courts have also rejected the Doctrine as violative of public policy.  For example, in *Ramirez v. Smart Corp.*, 863 N.E.2d 800 (Ill. App. Ct. 2007), the court rejected the Doctrine stating: "[T]his state has an interest in transactions that violate statutorily-defined public policy." *See also Pratt v. Smart Corp.*, 968 S.W.2d 868, 872 (Tenn. Ct. App. 1997) ("[T]he State has an interest in transactions that involve violations of statutorily defined public policy, and generally speaking, in such situations, the voluntary payment rule will not be applicable."). This Court should reach a similar conclusion that it would be against the public policies of the states of Wisconsin, Illinois, and Minnesota to apply the Doctrine in the case at bar.  To allow Associated here to assert the voluntary payment doctrine in order to avoid liability for its unfair practices under the consumer protection statutes would nullify the statutes' protections and would be contrary to the intent of the legislatures that enacted them.  Accordingly, this Court should deny Associated's motion to dismiss on this ground.

### IV.   CONCLUSION

For all of the reasons set forth above, Associated's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be denied.  Should the Court determine that any of Plaintiffs' claims are subject to dismissal, Plaintiffs respectfully request leave to replead such claims pursuant to Fed. R. Civ. P. 15 to correct any pleading deficiencies observed by the Court.

Dated: February 22, 2011

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@alterslaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

<u>/s/ Ruben Honik</u>
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

      I hereby certify that on February 22, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                              /s/ Robert C. Gilbert
                              Robert C. Gilbert, Esquire
                              Florida Bar No. 561861
                              GROSSMAN ROTH, P.A.
                              2525 Ponce de Leon Boulevard
                              Eleventh Floor
                              Coral Gables, FL 33134
                              Tel: 305-442-8666
                              Fax: 305-779-9596