# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Larsen v. Union Bank, N.A.*

S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

## NOTICE OF TAKING DEPOSITION OF UNION BANK BANK, N.A.

PLEASE TAKE NOTICE that the deposition of Defendant Union Bank, N.A. ("Union Bank") will be taken in this action on August 15, 2010, at 10:00 a.m., before a certified court reporter at 400 California Street, San Francisco, California 94104. Pursuant to Federal Rule of Civil Procedure 30(b)(6), Union Bank shall designate one or more officers, directors, managing agents, or other persons to testify on its behalf on each topic listed below. As used in this notice, "Union Bank" includes Defendant Union Bank, N.A. and its officers, directors, employees, and other representatives. The person or persons so designated shall testify as to all information known or reasonably available to Union Bank on each topic listed below.

Definitions

In additions to the terms specifically defined in Plaintiffs' First Interrogatories and Requests for Production, the following definitions apply for purposes of this notice:

"Authorized" (or "Authorization") refers to the Bank's communication indicating that the

initiated transaction has been approved thereby giving a vendor reason to conclude that the Bank will pay the amount of the transaction.

"Account" refers to any bank account you have held for any customer, to which the customer could make withdrawals using an electronic debit card.

"Posting" refers to the Bank's act of crediting or debiting items to or from an account such that the item is reflected in the account's actual balance.

Topics

1. All electronic databases or programs used by Union Bank during the proposed class period that record, store, or which evidence:

   A. the order(s) of posting of all items posted each day as to each account and the balance resulting from such posting, including without limitation Union Bank's deposit accounting and deposit processing system(s) of record, and the existence, location, retention and use of and any material changes to all such databases or programs with respect to the recording, storage, and continued accessibility of that information;

   B. the date and time of authorization or authorization timestamp of each transaction that was authorized each day as to each account, and the existence, location, retention, and use of and any material changes to all such databases or programs with respect to the recording, storage and continued accessibility of that information;

   C. all customers who on one or more occasion were charged more than one overdraft fee on any given day, each day on which such multiple overdraft charges occurred, the transactions posted to that account on that day, and the existence, location, retention, and use of and any material changes to all such databases or

programs with respect to the recording, storage, and continued accessibility of that information;

D. all overdraft fees that were waived, forgiven, or otherwise not collected by Union Bank as to each account, and the existence, location, retention, and use of and any material changes to all such databases or programs with respect to the recording, storage and continued accessibility of that information;

E. Plaintiffs' online history, including time and date account information was accessed and web pages viewed, including the existence, location, retention, and use of and any material changes to all such databases or programs with respect to the recording, storage, and continued accessibility of that information;

F. existence of searchable customer data during the class period for the specific items below:

### Categories of Information

1) All transactions posted on any date where transactions were paid into overdraft, and were the subject of an overdraft fee.

2) All overdraft or NSF fees assessed resulting from transactions being paid into overdraft.

3) Reversals of overdraft fees within 30 days of an assessed overdraft fee.

4) All write off or uncollectible entries in the account following the assessment of an overdraft fee.

5) Documents that provide group priority posting positions at the time of the overdraft fee assessment.

6) Documents that provide sort order priority posting positions at the time of the overdraft fee assessment.

7) Documents that provide transaction code or description, sufficient to be able to ascertain which group each transaction belongs.

**Specific Requests**

8) For transactions posted on any date where transactions were paid into overdraft, and were the subject of an overdraft fee, the electronic information/fields, including but not limited to the following information for each unique transaction on the date transactions were paid into overdraft:

   a. post date;
   b. vendor;
   c. description of the transaction;
   d. identification number or code of the transaction;
   e. authorization date, time, and place;
   f. posting order for all the transactions on that date;
   g. transaction amount;
   h. transaction amount authorized;
   i. transaction code identifying the type of transaction;
   j. the day's beginning ledger balance;
   k. the day's beginning collected ledger balance;
   l. the day's ending ledger balance (or beginning balance the following day);

    m. the day's ending collected ledger balance (or beginning balance the following day);

    n. any available balance or running balance associated with each transaction;

    o. any identification or code indicating that the available balance was in the negative at the time of authorization; and

    p. any identification or code indicating that the available balance was in the negative at the time of posting of the specific transaction.

9) For all overdraft fee transactions resulting from transactions being paid into overdraft, the electronic information/fields for the resulting overdraft fees to include:

    a. the number and/or amount of overdrafts fees assessed; and

    b. any identification information tying the overdraft fees to specific transactions.

10) For the next 30 Days after overdraft fees were assessed:

    a. any reversal transactions of overdraft fees;

    b. the amount of reversal; and

    c. any identification information tying the reversal to any specific transactions or overdraft fees.

11) For any time after the Overdraft was Assessed:

    a. any write off or uncollectible entry closing the account with a negative balance

2. Union Bank's policies, practices, and procedures from 1998 to the present with respect to all posting methods utilized in posting transactions to its customers accounts.

3. Union Bank's policies, practices, and procedures in effect from 1998 to the present with respect to the circumstances under which it assesses overdraft fees, including but not limited to its policies, practices, or procedures relating to the waiver or forgiveness of overdraft fees.

4. The facts and circumstances surrounding any and all overdraft charges placed on accounts held by each named Plaintiff.

5. From 1998 to the present, Union Bank's Customer Account Agreements and addenda or any other revision or modifications to the Customer Account Agreements relating to the following practices:

   A. posting order of transactions, including how transactions are grouped for posting, and the sequencing of transactions within a group;

   B. authorization of electronic transactions;

   C. assessment of overdraft or NSF fees on electronic transactions;

   D. reversal of overdraft or NSF fees for electronic transactions; and

   E. obligation of a customer to pay assessed overdraft or NSF fees;

6. The factual basis for the following affirmative defenses set forth in Union Bank's Answer to Plaintiffs' Amended Complaint:

   A. Plaintiffs' lack standing to assert the claims.

   B. Some or all of the Plaintiffs' claims are barred by the statute of limitations.

   C. Plaintiffs' claims are barred by the existence of consent, notification, ratification, acquiescence, authorization, and/or acceptance.

D.  Plaintiffs' claims are barred by the fact that the obligations and fees about which plaintiffs complain were paid voluntarily.

E.  Plaintiffs' claims are barred by virtue of the terms and provisions of contractual agreements with Union Bank.

7.  All analyses performed from 1998 to the present, regarding the costs, profitability, or potential or actual revenue generated by the assessment of overdraft fees, including without limitation, analyses concerning the posting of items in a particular order, allowing debit card and ATM withdrawal transactions to be paid into overdraft status, the commingling or batching of different types of transactions (such as checks ordered together with debit card transactions), the determination of the amount which a customer may overdraw an account with any particular transaction, or actual or likely customer reaction to posting items in a particular order. Such analysis should be read to include all studies, professional opinions, surveys, or focus group results whether conducted by Union Bank or commissioned from third parties.

8.  The actual revenue Union Bank derived from overdraft fees each year from 2002 to the present and all efforts to track or enhance such revenue by region, state, branch, or individual employee, including without limitation, the actual revenue Union Bank derived from overdraft fees assessed upon customers who were charged more than one overdraft fee on any given day.

9.  The identity and location of all documents requested to be produced in response to Plaintiffs' Requests for Production and the efforts undertaken to respond to those requests.

10. The reasons and motivation for adopting each such posting method utilized from 1998 to the present.

7

11. The communications between Union Bank and its customers regarding each method of posting items to a customer's account and the sequence in which such items are posted.

12. All standardized forms, letters, form customer complaint responses, employee scripts, talking points, Q & A's, memoranda, and internal documents relating to communications between Union Bank and its customers regarding the assessment, waiver or forgiveness of overdraft fees.

13. Union Bank's policies, practices, and procedures in effect from 1998 to the present with respect to recording, reviewing, and responding to customer complaints relating to overdraft fees, including its policies, practices, and procedures relating to the storage and retention of the information and documents.

This deposition is being taken pursuant to Federal Rule of Civil Procedure 30(b)(6), and is subject to continuance or rescheduling from time to time or place to place until completed.

Dated: August 3, 2010.

Respectfully submitted,

/s/ Todd D. Carpenter
Todd D. Carpenter
Bonnett, Fairbourn,
Friedman & Balint, P.C.
600 West Broadway Suite 900
San Diego, California 92101
tcarpenter@bffb.com

8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| IN RE CHECKING ACCOUNT OVERDRAFT LITIGATION<br><br>MDL No. 2036<br><br>THIS DOCUMENT RELATES TO:<br><br>*Larsen v. Union Bank, N.A.*<br>S.D. Fla. Case No. 1:09-cv-23235-JLK<br>N.D. Cal. Case No. 4:09-cv-3250 | Case No.: 1:09-md-02036-JLK |

### CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2010, I served the foregoing, via electronic mail and U.S. mail, on August 3, 2010.

/s/ Todd D. Carpenter
Todd D. Carpenter
Bonnett, Fairbourn,
Friedman & Balint, P.C.
600 West Broadway Suite 900
San Diego, California 92101
tcarpenter@bffb.com