UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-MD-02036-JLK
N.D. Cal. Case No. 4:09-cv-03250-PJH

**DECLARATION OF PETER H. BALES IN SUPPORT OF UNION BANK'S OPPOSITION TO PLAINTIFFS' TO PLAINTIFFS' MOTION TO REMOVE THE "CONFIDENTIAL" DESIGNATION FROM DISCOVERY DOCUMENTS OR, IN THE ALTERNATIVE, TO UNSEAL PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

I, Peter H. Bales, declare as follows:

1.   I am an attorney with the law firm of Severson and Werson, counsel of record for Defendant Union Bank, N.A. ("Union Bank") in this action. I am duly licensed to practice law in the state of California and have been granted pro hac vice status in this matter.

2.   I am responsible for managing the review of the Electronically Stored Information ("ESI") that has been collected from Union Bank, N.A.'s custodians and sources of documents. I am submitting this declaration in support of Union Bank's Opposition to Plaintiffs' Motion to Remove the "Confidential" Designation From Discovery Documents or, In the Alternative, to Unseal Plaintiffs' Third Amended Class

Action Complaint. The facts set forth below are within my own personal knowledge and, if called as a witness to testify, I could, and would testify truthfully to these facts.

3. On May 13, 2010, Plaintiffs served on Union Bank their first set of Requests for Admission, Interrogatories, and Requests for Production. The Requests for Production contained 78 individual requests, many of which contained subparts, that sought documents in a wide breadth of areas.

4. After identifying the custodians who Union Bank believed were most likely to have electronic documents responsive to the discovery requests, Union Bank worked diligently to collect reasonably accessible ESI from these custodians and used a list of search terms to filter the data. The custodians and search terms were provided to Plaintiffs. Even after applying the search terms to filter the data, the numbers of documents to review has been enormous. As of November 2010, the amount of documents collected from reasonably accessible email-data totaled almost 700,000, after applying the search terms. Assuming a very conservative estimate of 4 pages per document, Union Bank, at that point in November 2010, had over 2 million pages of documents to review. More documents have been added since then as they have been collected and processed.

5. Prior to reviewing a single ESI document in this matter, counsel for Union Bank, both in-house counsel and attorneys from Severson & Werson, personally met with the review team to introduce them to the case and to the review process. I attended that meeting, which lasted several hours. The attorneys on the review team that were tasked with a first tier review of these documents were provided the operative complaint, all of Plaintiffs' written discovery, the search terms, the list of custodians, and other material related to the case which cannot be described in further detail because is protected by the attorney work product doctrine.

6. Contrary to Plaintiffs' allegation in the motion at issue, Union Bank did conduct a good faith review of these documents to determine whether they should be designated as "Confidential" under the Protective Order. As of the date of the meeting

described in paragraph 5 above, there was no finalized Stipulated Protective Order between the parties. Nevertheless, I, along with other counsel for Union Bank, specifically instructed the review team to review the ESI documents to determine whether the documents should be designated as "Confidential." The description of what materials should be designated as "Confidential" provided at that time was similar to the definition eventually later set forth in the Protective Order. Subsequently, after it was entered by the Court, a copy of the Protective Order was provided to these attorneys for their review.

7.  Prior to producing its first ESI production, Union Bank attorneys, separate and apart from the review team attorneys, performed random sampling reviews of documents that had been reviewed on a first tier review to ensure that the review team was designating documents correctly, among other things, with respect to the "Confidential" designation.

8.  On October 29, 2010, Union Bank produced almost 300,000 pages of email-data and attachments.

9.  On January 7, 2011, Plaintiffs sent a proposed Third Amended Complaint to counsel for Union Bank, along with thirteen proposed Exhibits. Several of the Exhibits were taken from the October 2010 ESI production. After reviewing the Exhibits, Union Bank determined that eight out of the thirteen Exhibits were Confidential but were not designated as such. After investigating the matter further, Union Bank discovered that, inadvertently, no documents had been designated as "Confidential" in the October production. On January 14, I sent a letter to Plaintiffs' counsel advising them of the discovery and notifying Plaintiffs that the documents previously produced were designated as "Confidential".

10. On January 19, 2011, Plaintiffs' counsel wrote to Union Bank's counsel, challenging Union Bank's confidentiality designations, both more broadly and with respect to several specific documents.

11. On January 27, 2011, Union Bank responded in detail as to each of the challenged documents, and set forth Union Bank's good faith basis for the "Confidential" designation. Mindful of the concerns raised by Plaintiffs, Union Bank agreed to undertake a reasonable review of the documents it designated as "Confidential" and to let Plaintiffs know if any of them warranted de-designation.

12. Promptly following Union Bank's response to the January 19 letter, Union Bank's counsel engaged in another review of documents it produced on October 29. Because Union Bank produced hundreds of thousands of pages of documents, it would have been extremely burdensome to completely review every single page of the previous production in order to address Plaintiffs' concerns. Nonetheless, Union Bank attempted to identify groups of documents which may have been improperly designated as Confidential, as Plaintiffs contend.

13. Union Bank identified several such categories. These included (1) blank attachments and small image files; (2) short emails which did not contain strategic business discussion or proprietary information; (3) publicly filed documents such as filings with the Securities and Exchange Commission and other agencies; and (4) final versions of advertisements that were distributed to the public. Union Bank identified documents which fell into one of the above categories and informed Plaintiffs' counsel of the relevant bates numbers.

14. On February 22, 2011, Union Bank's counsel sent a letter to Plaintiffs' counsel, de-designating hundreds of pages of documents and stating that Union Bank would continue the re-review and de-designate additional documents, if warranted. A true and correct copy of Union Bank's February 22 letter is attached hereto as Exhibit A.

-5-

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated this 24th day of February, 2011, at San Francisco, California.

By: ___/s/ Peter H. Bales___
Peter H. Bales