# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Amrhein v. Citibank, N.A.*
S.D. Fla. Case No. 1:09-cv-21681-JLK;
N.D. Cal. Case No. 4:08-cv-05101-SBA

### DECLARATION OF RICHARD D. McCUNE
### IN SUPPORT OF MOTION TO COMPEL

I, Richard D. McCune, declare as follows:

1. I am an attorney with the law firm of McCuneWright LLP. I am one of the attorneys representing Plaintiff in the above-entitled action. I have personal knowledge of the matters stated herein and, if called upon, could competently testify thereto.

2. On May 13, 2010, Plaintiff served Requests for Production of Documents, Special Interrogatories, and Requests for Admissions on Defendant Citibank, N.A. (hereinafter "Citibank").

3. On June 17, 2010, Citibank responded to Plaintiff's discovery requests. Citibank's responses were incomplete and contained boilerplate objections. No documents were produced with the responses.

4. On July 13, 2010, I participated in a telephonic meet and confer with Lisa Simonetti of STROOK & STROOK, counsel for Citibank.

1

5. On July 16, 2010, the parties agreed that Citibank would provide an early witness on the issue of Citibank's practices related to grouping and sorting of electronic debit card transactions. Citibank further agreed to a limited production of documents for the anticipated deposition testimony of its 30(b)(6) witness.

6. On August 2, 2010, I took the deposition of Citibank employee, Susan Bridge, in New York.

7. During the July meet and confer, Citibank also agreed to produce all documents it had gathered to date, following entry of a protective order by the Court. Other than the documents produced for the deposition of Susan Bridge, no other responsive documents have been produced.

8. Citibank also agreed to in good-faith consider the following: (1) to conduct an ESI search of documents based on a draft of ESI search terms created by Citibank; (2) to produce advertising and marketing materials relating to debit card transactions or assessment of overdraft fees from debit card transactions; (3) to produce documents pre-dating November 2004, relating to why Citibank chose to implement its debit card grouping and sorting process; and (4) to produce actual customer complaints, instead of just summaries of customer complaints.

9. The parties agreed to continue the meet and confer process, and Citibank stipulated to an extension of time for Plaintiff to bring any necessary motion to compel discovery.

10. Following this agreement, the parties agreed to mediate the case. While there was no agreement to stay discovery during the mediation process, there was a lapse in the meet and confer process during the time the parties were working toward mediation. Mediation dates were selected, but the mediation did not go forward on the scheduled date of November 29, 2010,

because of a scheduling problem, or on January 24, 2011, when an insurmountable issue arose between the parties in pre-mediation discussions that resulted in cancellation of the mediation.

11.   Immediately after the mediation was canceled, I requested a further meet and confer with Citibank's counsel to ensure that discovery would move forward in light of the approaching April 25, 2011, deadline to file the motion for class certification.

12.   On February 2, 2011, I sent a meet and confer letter to Citibank's counsel requesting that Citibank provide confirmation that it would begin a rolling production of documents as previously promised, and requesting supplemental responses to various discovery requests. A copy of the meet and confer letter dated February 2, 2011, sent to counsel for Citibank is attached as Exhibit A.

13.   On Friday, February 4, 2011, Citibank communicated via e-mail that it would respond by the "middle of next week". No response was provided within the February 9, 2011, time frame provided in the meet and confer letter.

14.   On February 10, 2011, Citibank's counsel sent me an e-mail stating that it would respond to the February 2, 2011, meet and confer letter on February 14, 2011.

15.   On February 17, 2011, I participated in a telephonic conference with Citibank's counsel during which counsel for Citibank stated that Citibank would not be producing any further documents at this time, and would be filing a motion for protective order to stay all discovery.

///

///

///

///

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 26th day of February 2011, in Redlands, California.

Richard D. McCune

# EXHIBIT A

 

Richard D. McCune, Jr.
David C. Wright
Kristy M. Arevalo
Eddie Jae K. Kim
* Michele M. Vercoski
◊ Elaine S. Kusel

* Also Admitted in New Jersey & New York
◊ Of Counsel & Admitted in New York

February 2, 2011

**Via Electronic Mail and FedEx**

Lisa M. Simonetti, Esquire
STROOCK & STROOCK & LAVAN, LLP
2029 Century Park East, Suite 1600
Los Angeles, CA  90067-3086

    Re:    **In re Checking Account Overdraft Litigation**
              *Mike Amrhein v. Citibank, N.A*

Dear Lisa:

Since the mediation efforts have proven futile, we are resuming the active litigation of this action including filing the attached Motion for Leave to File Fifth Amended Complaint, conducting depositions, seeking the production of additional data and documents, and addressing Citibank's deficiencies in response to prior written discovery. This letter addresses each of these topics.

## I
## FIFTH AMENDED COMPLAINT

On January 11, 2011, in response to your demand as a condition to proceeding with the mediation then scheduled for January 24, 2011, we sent you a draft of our proposed Fifth Amended Complaint. The mediation was cancelled when Citibank refused to agree that the mediation would encompass the claims more expansively articulated in that draft amended pleading – all of which were previously raised in the prior pleadings. As a result, we are now moving ahead with filing the attached motion. For purposes of the motions' Local Rule 7.1 Certificate, please let us know, within 48 hours, whether we should represent that Citibank consents to the filing of the Fifth Amended Complaint or intends to oppose the motion.

## II
## DEPOSITIONS

Attached is Plaintiff's 30(b)(6) Notice of Taking Deposition. As you know, the language of Topic 1 was agreed to through a stipulation with the other first tranche defendants following an extensive meet-and-confer process, and all of those banks (except U.S. Bank which received a stay of further proceedings from the Eleventh Circuit based on its pending arbitration appeal) have already produced witnesses on Topic 1 as phrased. We expect Citibank to likewise produce

2068 Orange Tree Lane, Suite 216
Redlands, California 92374
PH: 909.557.1250  FX: 909.557.1275



February 2, 2011
Page -2-

designee(s) on Topic 1, as phrased, and request that, <u>within five (5) business days of the date of this letter</u>, you provide us with one or more proposed dates and location for such deposition.

As to the Topics 2 - 9 in the attached Notice, the wording of these topics is the result of extended meet-and-confer negotiations with the other first tranche banks, in which Citibank chose not to participate. While certain of the other first tranche banks have not agreed to produce a witness on every topic identified, all of the banks (other than U.S. Bank) have agreed to produce designee(s) on Topics 2, 5, 6, 7, 8 & 9. Accordingly, we expect Citibank to likewise produce designee(s) on these Topics as phrased, as well as Topics 3 (which is unique to Citibank) and Topic 4 (which has been modified for Citibank). We request that, <u>within five (5) business days of the date of this letter</u>, you provide us with one or more proposed dates and location for such deposition.

In addition, we have preliminarily identified a select number of Citibank employee or ex-employee witnesses we wish to depose in the near future. We would like to work with you on scheduling convenient dates and locations for these depositions. However, we need dates for these depositions in late February and/or early March. If Citibank fails to cooperate with us in scheduling these depositions, we will notice the depositions on dates that work with our schedule. For any ex-employee listed below that Citibank is not going to voluntarily produce for deposition, we request that <u>within five (5) business days of the date of this letter</u>, you provide us with the ex-employee's last known address and contact information. The initial list of Citibank employees are:

1. Mike Lorusso (ex-employee)
2. Robert T. Hogan
3. Deborah Harrington (ex-employee)
4. Elissa Cucciarre
5. David Fapohunda
6. Jeffrey Pearlberg
7. Gary Kimmelman
8. Luiz Medici
9. Jay Murthy
10. John Kirrane
11. Wayne Malone
12. Christine Durner

### III
### NEW WRITTEN DISCOVERY REQUEST

Attached is Plaintiff's Second Request for Production which seeks electronic data on the class representative plaintiff, as well as additional documents relating to the contract claims in this action.

February 2, 2011
Page -3-

## IV
## OUTSTANDING WRITTEN DISCOVERY

We need to address Citibank's discovery responses. Plaintiff propounded discovery requests to Citibank on May 13, 2010. Citibank's responses were served on June 17, 2010. Notwithstanding its responses, Citibank has failed to produce most of the documents that it acknowledged would be produced. Citibank also refused to produce documents to a large number of requests based on improper and unsupportable objections. In addition, Citibank refused to respond to interrogatory no. 11, which requests overdraft fee information. Finally, Citibank improperly refused to respond to certain request for admissions. Below we itemize Citibank's failure to satisfy its discovery obligations in an effort to resolve these issues without motion practice.

A.  **Summary of Citibank's Responses to Request for Production of Documents**

In its responses to the request for production of documents, Citibank asserted certain unilateral restrictions on the documents it would produce. Notably, it asserted generally that:

- It would not produce documents – no matter the relevance – to documents that were created prior to November, 2004;
- It would not produce electronic documents without Plaintiff's first agreeing to the ESI search terms to be used by Citibank in conducting the search for documents; and
- It was limiting its responses to debit cards.

Citibank then indicated one of three responses to specific production of document requests:

1. It had already produced documents responsive to the request (Request for Production, Nos. 1, 2, 4, 7, 8, 12 & 74);
2. It would produce documents responsive to the request (Request for Production, Nos. 3, 7, 8, 9, 11, 12, 16-19, 23-25, 33, 54, 55, 61 & 75-78); and
3. It would not produce documents responsive to the request (Request for Production, Nos. 10-22, 24, 26-53, 56-60 & 62-73).

We have received only a small and partial production of the documents Citibank indicated it would produce. No further productions have been received, nor have we been advised when we can expect those documents. We need to immediately address the document production issue.

February 2, 2011
Page -4-

**B.  Failure to Produce Documents That Citibank Responded It Would Produce**
   **(RFP Nos. 3, 7, 8, 9, 11, 12, 16-19, 23-25, 33, 54, 55, 61 & 75-78)**

   1.   Citibank's Untenable Positions

   Based on our discussions, it is our understanding that Citibank elected not to produce documents on the basis that the parties were in pre-mediation settlement discussions and Plaintiff had not agreed to an ESI protocol. Neither of these reasons justify non-production of the documents. The parties were engaged in what turned out to be fruitless negotiations about mediation. However, that in no way altered Citibank's obligations to fulfill its discovery obligations. Citibank did not request a stay of discovery during this process, nor did Plaintiff agree to a stay.

   The other argument regarding a failure to have an agreement relating to ESI discovery in place is also meritless. Despite significant efforts and negotiations between Plaintiffs' Lead Counsel and the other defendants in the first tranche, the parties were unable to agree on a stipulated ESI protocol. Notwithstanding the lack of an agreed ESI protocol, all of the other first tranche defendants have produced hundreds of thousands, and in some cases millions, of pages of documents and data responsive to the identical written discovery requests served on Citibank. Moreover, we understand that Citibank did not even participate with the other first tranche defendants in attempting to negotiate a stipulated ESI protocol. Under these circumstances, Citibank's refusal to produce documents and data in the absence of an ESI protocol is without merit.

   While not yet formally raised, Citibank may also claim that Plaintiff's planned motion seeking leave to file the Fifth Amended Complaint temporarily relieves Citibank of its obligations to respond to outstanding discovery. Such a position is also without merit. The present operative complaint encompasses the same claims as are identified in the proposed Fifth Amended Complaint. The proposed Fifth Amended Complaint merely expands the factual support for the contract claim based on Citibank's wrongful assessment of overdraft fees all debit card purchase. However, the expanded factual allegations do not materially change the nature of the claims or alter the relevance and materiality of the long-outstanding discovery.

   2.   Proposed Resolution

   We would like to avoid discovery motion practice if possible. However, given Citibank's untenable positions and the delays it has caused us in this litigation thus far, we intend to file a motion to compel absent receipt of Citibank's written commitment, <u>within five (5) business days of the date of this letter</u>, that it will produce all documents and data it previously agreed to produce, on a rolling basis starting no later than February 15, 2011 with completion by March 15, 2011.

February 2, 2011
Page -5-

C. **Refusal to Produce Documents**
   **(RFP Nos. 10-22, 24, 26-53, 56-60, 62-73)**

   1. <u>Refusal to Produce Documents Created Before November 2004</u>

   Citibank's position that it is not obligated to produce relevant and material documents simply because such documents pre-date the proposed class period is the same position taken by Wells Fargo Bank and Wachovia Bank in other first tranche actions. That position is the subject of a motion to compel [DE # 1033], which is set for hearing on February 8, 2011. We will agree to forgo filing a motion to compel against Citibank on this issue provided Citibank's provides written commitment, <u>within five (5) business days of the date of this letter</u>, that it will abide by Judge King's ruling on the issue.

   2. <u>Refusal to Produce Documents Not Specifically Related to Debit Cards</u>

   This issue is also part of the aforementioned motion to compel against Wells Fargo and Wachovia. We also expect the Court to rule on this issue on or after February 8, 2011. Similar to the document creation date limitation discussed above, we will agree to forgo filing a motion to compel against Citibank on this issue provided Citibank's provides written commitment, <u>within five (5) business days of the date of this letter</u>, that it will abide by Judge King's ruling on the issue.

   3. <u>Refusal to Produce Documents to Specific Requests</u>

   While there is a long list of requests to which Citibank has improperly refused to produce responsive documents, we are currently limiting our demand for production of documents to certain document requests that are particularly relevant at this stage of the proceedings, which are as follows:

   Request No. 12 – This request seeks documents that reference "overdraft" and/or "overdraft fees". This is obviously at the heart of the litigation. There is no justification for limiting the response to policies and procedures and summary documents. A complete responsive production is required.

   Request No. 16 – This request seeks customer complaints. It appears that Citibank is limiting the response to exclude specific customer complaints. If that is what Citibank intended, that is inappropriate as these documents are relevant, and a complete response is required. If however, the response was meant to convey that Citibank was going to redact specific customer identifying information found within the document, that accommodation is acceptable for the time being.

   Request No. 18 – This request seeks documents regarding the manner in which you determine when and whether to assess overdraft fees. This is obviously relevant. There is no justification for limiting the response to policies and procedures and summary documents. A complete responsive production is required.

February 2, 2011
Page -6-

Request No. 19 – This request seeks documents regarding changes, adjustments, reversals or write-offs of fees based on questions or complaints about overdraft fees, and the policies relating to those decisions. There is no justification for limiting the response to policies, procedures and training materials of debit cards. A complete responsive production is required.

Request No. 24 – This request seeks documents regarding changes to overdraft policies. This is clearly relevant. There is no justification for limiting the response to policies, procedures and training materials of debit cards. A complete responsive production is required.

Request No. 27 – This request seeks total overdraft revenue information. This is clearly relevant to class and damage issues. A complete responsive production is required.

Request No. 28 – This request seeks production, forecast, planning and reporting of overdraft fees. Because we allege that projected overdraft fees were the reason for the overdraft policies, this information is directly relevant. A complete responsive production is required.

Request Nos. 29, 37 & 38 – These requests seek documents related to the costs, risks, disadvantages and advantages to Citibank of its overdraft policies. These documents are directly relevant to Citibank's decision-making process that resulted in its overdraft policies. A complete responsive production is required.

Request No. 32 – This request seeks organizational charts. This is relevant to identify the decision making process and to identify potential witnesses. A complete responsive production is required.

Request No. 43 – This request seeks documents relating to the effect on actual or projected revenue from changes in overdraft policies. This is relevant and material information. A complete responsive production is required.

Request No. 51 – This request seeks documents relating to the decision-making process associated with changes in overdraft policies. This is relevant and material information. A complete responsive production is required.

Request No. 52 – This request seeks documents relating to communications with regulatory agencies regarding compliance with 12 C.F.R. 7.4002. Unless Citibank is prepared to stipulate that it did not have authority to charge overdraft fees pursuant to 12 C.F.R. 7.4002, this is relevant and material information. A complete responsive production is required.

Request No. 56 – This request seeks documents relating to advertisement of debit cards. Such documents are relevant to a number of issues in this litigation and a complete responsive production is required.

February 2, 2011
Page -7-

Request No. 59 – This request seeks documents relating to customer knowledge of overdraft fees. This is obviously relevant and material information. A complete responsive production is required.

Request No. 60 – This request seeks documents generated from other overdraft fee lawsuits. Citibank's response may exclude from the production those documents relating to other lawsuits in which McCuneWright was counsel of record, provided that Citibank provides written confirmation that such records can be used for all purposes in the subject matter. However, production of responsive documents from all other lawsuits is required.

Request Nos. 65 & 66 – This request seeks documents regarding customer surveys and customer communications relating to the connection between overdraft fees and account closures. That information is relevant and material to the decisions relating to overdraft policies. A complete responsive production is required.

Request No. 67 – This request seeks documents relating to the internal analysis of the effect overdraft policies have on different demographic groups of customers. This is relevant and material information. A complete responsive production is required.

Request No. 68 – This request seeks documents relating to tracking web traffic of Citibank web pages that discuss overdraft fees. This is relevant and material information. A complete responsive production is required.

## INTERROGATORIES

Plaintiff's interrogatory No. 11 seeks the amount of overdraft fee revenue from 2002 to the present. Citibank refused to provide it. Like several issues identified above, Wells Fargo and Wachovia took the same position, and that position is currently the subject of a motion to compel set to be heard on February 8, 2011. We will agree to forgo filing a motion to compel on this issue, provided Citibank agrees in writing, <u>within five (5) business days of the date of this letter</u>, that it will abide by Judge King's ruling on the issue.

## REQUESTS FOR ADMISSIONS

Finally, in addition to the same improper general objections addressed in the request for production of documents above, Citibank either refused to respond to certain requests for admissions, or unilaterally altered the nature of the request by its admitting or denying something different than the request, as framed by us. These responses were improper and supplemental responses are demanded as follows:

Request No. 2 – This is a straightforward admission request directed to whether Citibank has the date and time that it was initially notified of the electronic debit transaction. The response was to admit that the Transaction Processing System records most electronic debit transactions through the day. That is a different issue and an improper response. Citibank must respond to the request as phrased with an admit or deny.

February 2, 2011
Page -8-

Request No. 10 – This is a straightforward admission request directed to the time of initiation of the transaction. Citibank removes the time of initiation part of the admission request, and then denies the self-created request. This is improper. Citibank must respond to the request as phrased with an admit or deny.

Request Nos. 18 & 19 – These two requests relate to information held by Citibank. Citibank craftily changed the request so that it responded about information held at the branch. This is improper. Citibank must respond to the request as phrased with an admit or deny.

Request No. 20 – This is another straightforward admission request about Citibank's reversal policy. Citibank improperly refused to respond. Citibank must respond to the request as phrased with an admit or deny.

We will agree to forgo filing a motion to compel on these admissions requests provided Citibank agrees in writing, <u>within five (5) business days of the date of this letter</u>, to supplement is prior responses.

Very truly yours,

McCuneWright LLP                                         Trief & Olk

/s/                                                      /s/

Richard D. McCune                                        Ted Trief

RDM:ams
cc:  Robert C. Gilbert, Esq.
     Michael Sobol, Esq.