Robert Townsend
P.O. Box 3330
Dana Point, CA 92629
(949)495-0089
Fax (949)495-0580
townsend@runbox.com

Plaintiff *Pro Se*

FILED by _JH_ D.C.

MAR 03 2011

STEVEN M. LARIMORE
CLERK U.S. DIST CT
S.D. of FLA – MIAMI

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT TOWNSEND,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK & COMPANY., WELLS FARGO BANK, NA., J.P MORGAN CHASE, CHASE BANK USA, N.A., AND AS SUCCESSOR'S IN INTEREST TO WASHINGTON MUTUAL BANK FA., Does 1-10<br><br>Defendants. | MDL Case **No. 10-2136**<br><br>Southern District of Florida Case No. **10-CV-21834-JLK**<br><br>Central District of California Case No: **CV10-00550 ODW(MLGx)**<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTIONS TO STAY PROCEEDINGS IN FAVOR OF ARBITRATION, AND IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS** |

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff Robert Townsend (hereinafter "Townsend"), and hereby files this, his Request for Judicial Notice in support of his opposition to Defendants' motions to stay proceedings in favor of arbitration, and in support of Townsend's motion for partial summary judgment against Defendants, and in support thereof would show this Court as follows:

## BACKGROUND

1. Defendants Wells Fargo Bank, N.A., Wells Fargo Bank & Co. ("Wells Fargo"), and Chase Bank, N.A., JP Morgan Chase ("Chase") have both filed motions to stay the instant proceedings in favor of arbitration. It is undisputed that Wells Fargo's arbitration forum of choice is the American Arbitration Forum ("AAA"), per Wells Fargo's checking account agreement with Townsend. But Townsend has argued, in his Motion for Partial Summary Judgment against Wells Fargo, and in his Opposition to Wells Fargo's Motion to Stay Proceedings in Favor of Arbitration, that the AAA is so riddled with bias and lack of due process that its arbitration proceedings are invariably rigged against consumers such as himself — thereby rendering unconscionable any mandatory arbitration clause in Townsend's checking account agreement with Wells Fargo.

2. For its part, Wells Fargo argues that it has never publicly disavowed the AAA as Chase has done to the National Arbitration Forum ("NAF"), its former arbitration forum of choice. What Wells Fargo conspicuously fails to mention in its briefs, however, is that <u>the AAA has disavowed itself</u>. On July 21, 2009 the AAA announced it would <u>also</u> stop arbitrating consumer credit card disputes, as the NAF has done. AAA's president, Richard Naimark, announced this decision before a Congressional hearing on July 22, 2009: *Arbitration or 'Arbitrary': The Misuse of Mandatory Arbitration to Collect Consumer Debts,* Hearing Before the House Subcommittee on Domestic Policy, Committee on Oversight and Government Reform, 111th Congress (July 22, 2009). Mr. Naimark stated at the hearing that "a series of important fairness and due process concerns must be addressed and resolved before [AAA] will proceed with the administration of **any future ... arbitrations**." [emphaisi added]

## REQUEST FOR JUDICIAL NOTICE

3. Townsend requests that the Court take Judicial Notice of the *"Arbitration or 'Arbitrary': The Misuse of Mandatory Arbitration to Collect Consumer Debts,* Testimony Of Richard

W. Naimark on behalf of the American Arbitration Association, at the Domestic Policy Subcommittee Oversight and Government Reform Committee on Wednesday, July 22, 2009." A true and correct copy of this testimony is attached to this Request and has been filed exactly as it was presented to this Congressional Subcommittee, without alteration as exhibit "A". This testimony, by the American Arbitration Association's own president, indicates the AAA believes its own consumer arbitration process is substantially flawed and biased against consumers and in favor of banks such as Wells Fargo.

4. In short, Townsend submits to the Court that it is unconscionable for Wells Fargo to attempt to force him into arbitration in a forum, the AAA, that has publicly disavowed and cast doubt on the integrity of its consumer arbitration.

**PRAYER**

Wherefore, premises considered, Plaintiff Robert Townsend respectfully prays that the Court take judicial notice of the testimony of AAA's Richard Naimark before Congress; and Townsend further prays for any further relief to which the Court may find him entitled.

DATED: February 28, 2010

Respectfully Submitted:

Robert Townsend
P.O. Box 3330
Dana Point, CA 92629
(949)495-0089
Fax (949)495-0580
townsend@runbox.com
Plaintiff *Pro Se*

**DECLARATION OF ROBERT TOWNSEND IN SUPPORT OF HIS REQUEST FOR JUDICIAL NOTICE**

I, ROBERT TOWNSEND, declare,

1. I am the Plaintiff in the above-entitled action. I have personal knowledge of the facts contained in this declaration and if called as a witness, could testify competently to these facts.

2. Attached to this Declaration and Request for Judicial Notice is a true and correct copy of the testimony of Richard Naimark on behalf of the American Arbitration Association, as delivered before Congress in July 2009. This document is a public record which I downloaded from Congress' website on February 27, 2011.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Dana Point, California on February 28, 2011.

_____
Plaintiff Robert Townsend

## CERTIFICATE OF SERVICE

In keeping with Rule 5a of the Federal Rules of Civil Procedure, I hereby certify that a true and correct copy of the forging instrument has been served upon all relevant parties:

**BY U.S. MAIL**

Respectfully submitted,

By: /s/

ROBERT TOWNSEND,
P.O. Box 3330
Dana Point, CA 92629
(949)495-0089
Fax (949)495-0580
townsend@runbox.com
Plaintiff *Pro Se*

DATED: February 28, 2011

**EXHIBIT "A"**

Testimony
Of
Richard W. Naimark
On behalf of the American Arbitration Association

Domestic Policy Subcommittee
Oversight and Government Reform Committee
Wednesday, July 22, 2009
2154 Rayburn HOB
2:00 p.m.

"Arbitration or Arbitrary:   The Misuse of Mandatory
Arbitration to Collect Consumer Debts"

Thank you, Chairman Kucinich, Congressman Jordan and members of the Domestic Policy Subcommittee for the opportunity to present the views and experiences of the American Arbitration Association (AAA) on the important issues being considered by the Domestic Policy Subcommittee of the House Committee on Oversight and Government Reform.

## I. Introduction

As the world's largest provider of alternative dispute resolution (ADR) services, the AAA has during its 83-year history taken a leadership role in the development of standards of fairness, ethics, and best practices.  The AAA has pioneered the development of time and court tested arbitration rules, protocols and a Code of Ethics jointly authored with the American Bar Association.  During the past eight decades, the AAA has administered over 2 million cases involving a wide range of subjects.  Various governmental entities have also turned to the AAA to assist in the resolution of disputes through over 300 state and federal statutes and regulations. The AAA is a not-for-profit public service organization dedicated to the proper and ethical use of arbitration, mediation and other forms of alternative dispute resolution.  However, the AAA is not an industry or trade organization and the AAA speaks here only from its own experience and viewpoint, and not for any other organizations.

While the AAA has not administered significant numbers of debt collection arbitrations relative to some other organizations, the AAA did process consumer debt collection arbitrations in a single high volume program.  However, the AAA's administration of that program ended in June of this year and consequently at this time the AAA is not administering any debt collection programs.

1

As a result of the AAA's review and our experiences administering debt collection arbitrations, in addition to our consideration of a number of policy concerns that have been raised, it is the AAA's position that a series of important fairness and due process concerns must be addressed and resolved before we will proceed with the administration of any future debt collection arbitrations. Until such time, the AAA has placed a moratorium on the administration of any consumer debt collection arbitration programs. Further, we suggest that to the extent that the program improvements offered here are implemented, that they are done so not just within the AAA but as part of a broader debt collection arbitration reform.

Our testimony will begin with an exploration of the AAA's administration of consumer arbitrations generally, and will then move on to recommend changes for the administration debt collection arbitrations to accommodate some of the unique aspects of that caseload.

## II. Consumer Arbitration

In recent years, the use of ADR and arbitration has grown to include consumer agreements. Often implemented through standardized contracts, the use of arbitration in consumer agreements for the purchase of goods and services has raised legitimate concerns regarding fairness, rights, and the ability of the parties to participate. The AAA's administration of consumer arbitrations is currently governed by the Consumer Due Process Protocol ("Consumer Protocol"), attached as Appendix A.

To evaluate and address concerns unique to consumer arbitration, the AAA convened the National Consumer Disputes Advisory Committee in 1997, which was composed of consumer, government, legal, business and academic experts, drawn from such organizations as the AARP, Consumers Union, Consumer Action, American Council on Consumer Interests, the Federal Trade Commission, the National Association of Attorneys General, the National Association of Consumer Agency Administrators, Fannie Mae, and Freddie Mac. One of the Advisory Committee's specific objectives was to have the Consumer Protocol influence state and federal laws governing consumer arbitration.

The stated mission of the Advisory Committee was:

> *To bring together a broad, diverse, representative national advisory committee to advise the American Arbitration Association in the development of standards and procedures for the equitable resolution of consumer disputes.*

The result of the Advisory Committee's deliberations was the Consumer Protocol, which articulates a number of fundamental principles to enhance the fairness and efficiency of consumer ADR. The Consumer Protocol constituted a voluntary set of standards and minimum requirements which the AAA has adopted, but which are not necessarily applied to arbitrations outside of AAA administration. The Consumer Protocol provides for common sense "fair play"

2

requirements, such as reasonable fees for the consumer, reasonably accessible locale, no limitation of any remedy that would be accessible in court, and access to small claims court. The AAA will not administer an arbitration that does not materially comply with the provisions of the Consumer Protocol.

The AAA applies the Consumer Protocol primarily through our *Supplementary Procedures for Consumer-Related Disputes* ("Supplementary Procedures"), attached as Appendix B, to consumer cases. The Supplementary Procedures also establish guidelines for consumers to request a deferral or waiver of fees, including requesting an arbitrator who will serve without charge. One unique aspect of the Supplementary Procedures is the "small claims opt out" which permits a consumer, whether they are a claimant or respondent in a case, to opt out of an arbitration and into a small claims court proceeding.

We bring the Consumer Protocol to the attention of the Subcommittee because it has had a meaningful and important impact on the AAA's administration of consumer arbitrations. We also believe that this collaborative approach represents the best avenue to establishing standards of fairness and balance to the specifics of the process of consumer debt collection arbitration. Evidence of the AAA's fidelity to the principles contained in the Consumer Protocol and the beneficial use of arbitration to resolve consumer disputes are reflected in a recent independent study conducted by the Searle Civil Justice Institute at Northwestern University Law School. The Executive Summary of the Searle Study is attached as Appendix C.[1] The Searle Study reviewed a representative sample of approximately 300 AAA consumer arbitration case files that were awarded between April and December of 2007. Among the most compelling findings in the Searle study are that:

- **The upfront cost of arbitration for consumer claimants in cases administered by the AAA appears to be quite low.** In cases with claims seeking less than $10,000, consumer claimants paid an average of $96.

- **AAA consumer arbitration seems to be an expeditious way to resolve disputes.** The average time from filing to final award for the consumer arbitrations studied was 6.9 months.

- **No statistically significant repeat-player effect was identified using a traditional definition of repeat-player business.** Consumer claimants won some relief in 51.8% of cases against repeat businesses and 55.3% against non-repeat businesses.

- **Arbitrators awarded attorneys' fees to prevailing consumer claimants in 63.1% of cases in which the consumer sought such an award.**

---

[1] The entire Searle Study, in addition to other information about the Searle Institute, can be found at http://www.searlearbitration.org.

3

- **A substantial majority of consumer arbitration clauses in the sample (76.6%) fully complied with the Due Process Protocol when the case was filed.**

- **AAA's review of arbitration clauses for Protocol compliance was effective at identifying and responding to clauses with Protocol violations.** In 98.2% of cases in the sample subject to AAA Protocol compliance review, the arbitration clause either complied with the Due Process Protocol or the non-compliance was properly identified and responded to by the AAA.

- **The AAA refused to administer a significant number of consumer cases because of Protocol violations by businesses.**

- **As a result of AAA's protocol compliance review, some businesses modify their arbitration clauses to make them consistent with the Consumer Due Process Protocol.**

The Searle findings are clearly a reaffirmation of the effectiveness of the Consumer Protocol, the Supplementary Rules, the AAA's administration of consumer arbitrations, and the value that arbitration can bring in the resolution of small but nonetheless important disputes between consumers and businesses. The Consumer Protocol should be considered by the Subcommittee and others interested in arbitration policy as providing necessary and minimum fairness requirements that should be made a part of any consumer arbitration process. However, it should also be explicitly noted that the Searle study did *not* focus on consumer debt arbitration, which can fairly be viewed as a subset type of consumer arbitration and which requires some additional consideration. As a result, we turn to specific matters related to debt collection arbitrations that require additional attention beyond the issues addressed in the Consumer Protocol.

### III. Consumer Debt Arbitrations

The AAA has implemented detailed procedures to ensure that consumer debt arbitrations are administered in a manner consistent with the Consumer Protocol, however, there are certain aspects of consumer debt arbitrations, each of which requires additional consideration. These same aspects of consumer debt collections are also factors in the context of litigation when similar cases proceed through the courts, as evidenced by the study *Debt Weight: The Consumer Credit Crisis in New York City and its Impact on the Working Poor*,[2] which was conducted by the Urban Justice Center. That study reviewed 600 of the 320,000 consumer debt litigations that were filed in New York City Civil Court in 2006 and found that: in 93.3% of those cases the defendant did not appear; defendants are virtually never represented by counsel; and that 80% of the cases result in default judgments against the consumer without requisite proof to establish the damages sought. Recognizing both the similarities and the differences of the litigation and the arbitration processes in matters of consumer debt arbitration, the AAA offers the following potential improvements and enhancements. With the implementation of these additional

---

[2] Available at http://www.urbanjustice.org/pdf/publications/CDP_Debt_Weight.pdf

4

changes, it is the AAA's expectation that the arbitral forum can provide an effective and meaningful alternative to litigating consumer debt arbitrations. This point is particularly important in light of the fact that if arbitration is no longer available for these disputes, a very large number of small dollar claims will be filed in our already overburdened courts. The AAA's position is that each one of the following issues is critical to the administration of debt collection, and that each must be further considered and improvements implemented before additional debt collection arbitrations should proceed.

**A. Notice**

One of the most difficult issues surrounding the consumer debt arbitration caseload is that consumers rarely appear or participate in the arbitration process. As a result, the arbitration proceeds in their absence in the same manner that a properly commenced litigation proceeds where a defendant does not appear. While it may be that some consumers do not participate as a result of a conscious decision not to do so, the fact is that large numbers of consumers do not appear in debt collection arbitrations. This raises a fair question whether the communications regarding the commencement of the arbitration are being received and understood by the respondents.

The AAA's various rules provide for more informal methods of service than those used in the context of a litigation. The rationale for this is that the parties through their contractual agreement have consented to a more informal method of service, which saves time and money. Consequently, the AAA's rules provide that notice of the commencement of an arbitration can be accomplished by serving notice by mail addressed to the party, or its representative at the last known address, or by personal service provided that reasonable opportunity to be heard with regard to the dispute has been granted to the party.

Notably, the AAA implemented a notice process for our debt collection arbitrations that greatly exceeded the requirements typically contained in our rules. Specifically, we required the claimant business party to serve the demand for arbitration in a manner that could be tracked, with the expectation that a signature would be obtained indicating the each demand had been received. In addition, the AAA's first communication to the consumer respondent was sent initially by certified mail, return receipt requested. After some time, also in an attempt to ensure a greater number of respondents received notice of an AAA arbitration proceeding, the AAA switched to a mailing method in which the United States Postal Service confirms the date and time that the communication was delivered to the addressee. Even after this change, the rate of non-appearance by the consumer remained high. The challenge, therefore, is to take appropriate steps to deliver demands for arbitration, and other arbitration related correspondence in a manner that is more likely to convey the importance of the documents that are being sent to encourage participation by the consumer.

Possible alternative steps that might be taken to address these concerns, include the following:

1. Consider a tiered method of communication for delivering initiation letters. If an initial communication is sent by regular mail and responded to by the consumer, no additional efforts would need to be made. However, if a letter is returned or not signed for when sent by certified mail, we could request that the claimant must confirm the correct address, or re-serve the individual in a manner specified for the service of process under relevant state or federal law.

2. Require service in a manner similar to a summons and complaint in litigation. It should be noted that this manner of services substantially increases the cost of the arbitration and delays the process and potentially impedes the use of arbitration as an informal method of resolving disputes.

3. Multiple methods of AAA communication should be contemplated. For example, if the AAA's initiating letter is sent by U.S. Postal Service with an acknowledgment of delivery, consideration should also be given to sending duplicate initiating letters by other means such as overnight mail or first-class mail. The claimants in these cases might also maintain respondents' e-mail addresses or faxes and if so, communicating via those methods should also be attempted.

4. Careful reemphasizing of the content of the AAA communications should take place so that consumers understand that the consequences of arbitration are serious and significant. Communications should also be tailored so that the arbitration process will appear less forbidding and more accessible.

**B. Arbitrator Neutrality**

AAA Arbitrators are carefully screened, trained and must go through a rigorous conflict of interest and disclosure process in each AAA arbitration. Nonetheless, it is argued that an appearance of bias might result from arbitrators hearing many cases involving the same business party. To address those concerns, the following steps should be implemented:

1. Limits on the number of cases that an arbitrator may hear involving one particular party should be implemented.
2. Communicate that limitation to the parties to address perceptions regarding arbitrator neutrality.
3. To the extent permissible under applicable law, eliminate the ability of businesses to disqualify arbitrators solely because of prior adverse rulings.
4. Automate arbitrator appointment for debt collection arbitrations so that arbitrators on the roster of debt collection arbitrations are appointed on a random or rotating basis.

### C. Pleading and Evidentiary Standards

There are currently no specific rules regarding the documentation that is required to prove that a particular debt is owed. As a result, some claimants provide only limited information about the debt they claim is owed, such as a bill reflecting an outstanding balance. However, affidavits from persons knowledgeable of the debt owed, or other evidence that the debt claimed is owed in the amounts stated in the demands for arbitration is usually not provided. A related problem arises out of allegations that claimants in these types of matters seek attorneys' fees and interest in amounts that may exceed the amounts that can be permissibly recovered under applicable law. The following procedures are therefore suggested to address these concerns:

1. Implement supplemental requirements for consumer debt arbitrations which would specify the documentation and supporting evidence required for demands for arbitration.
2. Provide additional specialized arbitrator training so that arbitrators can identify and address issues regarding the appropriate amount of interest and attorneys' fees that may be awarded.
3. Reinforce the need for arbitrators to be satisfied with their understanding of the applicable law relevant to the particular case, as well as any other evidence submitted.

### D. Respondents' Defenses or Counterclaims

In cases where the consumer does participate or make an appearance where they raise the issue that they were the victim of identity theft, or that they never contracted for the goods or service in question, such issues can be fact-intensive and may require a sizable amount of the arbitrator's time to fully consider. However, the relatively limited compensation available to arbitrators may not adequately cover the time required to fully consider those more complicated arbitrations. The following are possible actions that can be taken to address these concerns:

1. Change the administrative fee and arbitrator compensation structure to provide additional compensation to arbitrators in cases where defenses are raised that might require substantially more time to consider. Require that much or all of that additional expense be charged to the business claimant, a policy which is consistent with the AAA's administration of other consumer arbitrations.
   In cases that are contested for reasons such as identity theft, provide a hearing process that accommodates these more factually complex disputes.

### E. Arbitrator Training and Recruitment

The AAA maintains a highly qualified and experienced roster of arbitrators who participate in ongoing professional training and education. Arbitrators serving on consumer debt collection cases also receive additional orientation specific to this type of case. Given AAA's brief experience with this particular caseload, we would substantially boost the orientation and training of consumer debt collection arbitrators to ensure focus on the important peculiarities of these cases. The following are the types of issues that would be included in arbitrator training.

1. Substantive law regarding consumer protection statutes and other applicable laws that are common to consumer debt arbitrations.
2. The AAA's procedures for consumer debt arbitration, including evidentiary standards.
3. Notice issues.
4. Identity theft issues.
5. Interest and attorneys' fees, and the extent that they can be awarded in consumer debt arbitrations.

### F. Creation of a Consumer Debt Protocol Committee

Similar to the group that was convened to create the Consumer Due Process Protocol, the AAA recommends that a committee of individuals with expertise in the area of consumer debt and arbitration be convened to discuss the matters raised in this testimony and to determine whether these suggestions are viable. We believe that a platform of fair-play standards and safeguards can be arrived at by consensus and collaboration, as evidenced by our previous experience with such standards. Having such procedural safeguards in place will enhance consumer and legal community confidence in the fairness of the process.

### G. Continued Publication of Results

The AAA currently maintains a database accessible to the public on our website of all consumer arbitrations of all types conducted nationwide by the AAA. This should continue as an expression of transparency and a source of information for parties subject to disputes. Also, the previously referenced Searle Institute study is an example of valuable insight to be gained through research by reputable, non-partisan organizations and individuals. The Searle Center plans additional studies in the area of consumer debt arbitration, which should provide additional valuable insight.

### IV. Conclusion

The AAA appreciates the opportunity to present our thoughts and suggestions on consumer debt arbitration today. Based on our over 83 years of experience, and our recent experience with consumer debt arbitration, we believe that if properly executed and designed, arbitration can provide a prompt, effective and fair forum for the resolution of these disputes.

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange, State of California. I am over the age of 18 and not a party to the within action; my business address is 32545 "B" Golden Lantern, Dana Point, Ca 92629

On February 28, 2011 I served the foregoing document described **PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTIONS TO STAY PROCEEDINGS IN FAVOR OF ARBITRATION, AND IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS**

**SEE ATTACHED MDL No. 2036 - Panel Service List (CTO-13)**

On all interested parties in this action to and by:
\_\_\_     BY placing \_ \_a true copy thereof enclosed in sealed envelopes addressed as stated on the attached mailing list.

X\_\_\_\_  **BY E-MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice, it would be deposited with the U. S. Postal Service on the same day with postage thereon fully prepaid at Tustin, California, in the ordinary course of business. I am aware that on motion of the party served, service *is* presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**BY PERSONAL SERVICE:** I caused such envelope to be delivered by hand to the offices of the addressee.

**BY FACSIMILE TRANSMISSION:** From Fax No. 949-495-0580 to the facsimile numbers listed on the attached mailing list. The facsimile machine I used complied with Rule 2003(3), and the machine reported no error.

**BY OVERNIGHT DELIVERY:** I enclosed said document(s) in an envelope or package provided by the overnight service carrier and addressed to the persons at the addresses listed in the Service List. I placed the envelope or package for collection and overnight delivery at an office or regularly utilized drop box of the overnight service carrier or delivered such document(s) to a courier or driver authorized by the overnight service carrier to receive documents.

LA/632899v1

1
2
3    I declare under the penalty of perjury under the laws of
4 the State of California that the foregoing is true and correct.
5
6    EXECUTED on February 28, 2011 at Dana Point, Ca 92629


(Mike Lee)

LA/632899v1

IN.RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MOL No. 2036

PANEL SERVICE LIST (CTO-13)

Ben Bamow
BARNOW & ASSOCIA TES PC
One North LaSalle Street
Suite 4600
Chicago, IL 60602

Marvin 1. Bartel
BARTEL & EVANS LP
4695 MacArthur Court
Suite 310
Newport Beach, CA 92660

Barry R. Davidson
HUNTON & WILLIAMS LLP
Mellon Financial Center
III I Brickell Avenue
Suite 2500
Miami, FL 33\31-3136

Leonard A. Frisoli
FRISOLI & ASSOCIATES 43 Thorndike Street
Cambridge, MA 02141

Robert C. Gilbert
ALTERS BOLDT BROWN RASH & CULMO PA
4141 N.B. 2nd Avenue Suite 201
Miami, FL 33137

Drew M. Hicks
KEA TING MUETHING & KLEKAMP LLP
One East 4th Street Suite 1400
Cincinnati, OH 45202

Laurence J. Hutt
ARNOLD & PORTER LLP
777 South Figueroa Street 44th Floor
Los Angeles, CA 90017-2513

Jeffrey D. Kaliel
TYCKO & ZA V AREEI LLP
2000 L. Street, N.W.
Suite 808
Washington, DC 20036

Roger A. Lewis
GOLDBERG KOHN LTD 55 East Monroe Street Suite 3300
Chicago, IL 60603

David C. Marcus
WILMER CUTLER PICKERING HALE & DORR LLP
350 South Grand A venue
Suite 2100
Los Angeles, CA 90071

Richard D. McCune, Jr.
MCCUNEWRIGHT LLP
2068 Orange Tree Lane
Suite 216
Redlands, CA 92374

James E. Preston
PRESTON & ASSOCIATES
P.O. Box 844
25020 Highway 145
Dolores, CO 81323-0844

Lisa J. Rodriguez
TRUJILLO RODRIGUEZ & RICHARDS LLC
258 Kings Highway
East Haddonfield, NJ 08033

Patrick J. Sheehan
WHATLEY DRAKE & KALLAS LLC 60 State Street
Seventh Floor
Boston, MA 02109

MDL No. 2036 - Panel Service List (CTO-13) (Continued)

Erin Lind Shencopp
JONES DAY
77 West Wacker Drive Suite 3500
Chicago, IL 6060l

Lisa Marie Simonetti
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East
Suite 1600
Los Angeles, CA 90067-3086

David James Worley
PAGE PERRY LLC
1040 Crown Pointe Pkwy Suite ]050
Atlanta, GA 30338