UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION
TO REMOVE THE "CONFIDENTIAL" DESIGNATION
FROM DISCOVERY DOCUMENTS OR, IN THE ALTERNATIVE, TO UNSEAL
PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT**

Plaintiffs respectfully submit this Reply in Support of their Motion to Remove the "Confidential" Designation from Discovery Documents or, in the Alternative, to Unseal Plaintiffs' Third Amended Class Action Complaint ("Motion"). **[DE # 1183]**.

## Introduction

Defendant Union Bank, N.A.'s (the "Bank") Opposition ("Opposition" or "Oppn") makes it clear that the Bank's indiscriminate confidentiality designation of 268,522 sequentially numbered pages from its October 29, 2010 production was improper, and warrants an appropriate sanction.

Union Bank's revisionist account of its October 2010 production fails to establish any legitimate basis for its blanket designation. There are only two possible scenarios that could explain the Bank's conduct. Either (1) as the Bank claims, it conducted the mandatory good faith review of the 268,522 pages but "inadvertently" failed to designate a single page as "Confidential" and, upon realizing this oversight, informed Plaintiffs that it originally intended to designate the *entire* production as "Confidential," or (2) the Bank never conducted a "good faith review" and instead simply designated all of the documents "Confidential" without regard for the required procedures. Either way, a review of the documents and the Opposition papers shows there can be no good faith basis for thinking these documents all contain trade secrets or their equivalent, let alone material whose exposure poses a "threat of imminent death or bodily harm which are the usual grounds for conducting civil litigation in secret." **DE # 553**. Indeed, almost all of these documents were created years ago and their disclosure would not affect the Bank's competitive position one iota, particularly given Regulation E.

The Protective Order contemplates just a situation where a party abuses its provisions through over-designation, and, to deter such conduct, the Order authorizes the Court to order all

1

the documents unsealed. As demonstrated by Union Bank's own opposition papers, that is exactly what the Bank did – and its conduct warrants the requested remedy.

The Bank's attempt to portray itself as cooperative after Plaintiffs challenged the improper designation succeeds only in revealing the futility of its original "review" and its failure to confer meaningfully with Plaintiffs. Had the Bank actually engaged in a good faith review, it would be have been unnecessary for it to have "re-reviewed" the documents it had designated. The Bank has no answer to this. Instead, it resorts to unseemly name-calling, accusing Plaintiffs – incorrectly – of failing to meet and confer on these issues. Moreover, the Bank's de-designations of a miniscule number of documents are too little, too late, ignoring a vast trove of other documents that were improperly designated as confidential.

None of Union Bank's arguments holds water. The Motion should be granted.

## Argument

### A.     Union Bank Fails to Demonstrate "Good Cause" for Its Designation.

The Bank cannot seriously contend that its discovery documents, the majority of which were authored prior to 2008 and prior to the implementation of the revisions to Regulation E concerning consumer "opt-ins" to overdraft protection *(see* 12 C.F.R. § 205.1., *et seq.*), still have the potential to cause a genuine "threat of imminent harm" if disclosed.[1]  **DE # 553**.

The majority of the documents produced relate to a pattern and practice that, since its inception in 2004, has become (1) ubiquitous in the banking industry (resulting in the instant MDL), and (2) obsolete in the face of Federal regulation. Virtually the same "high to low" re-sequencing of debit card transactions that Union Bank engineered proliferated throughout the

---

[1] The Bank's own authority provides that whether confidential business information warrants protection depends upon: "1) *the extent to which information is known outside the business*; 2) the extent to which information is known to those inside the business; 3) the measures taken to guard the secrecy of the information; and 4) *the value of the information to the business and its competitors.*" *Vesta Corset Co., Inc. v. Carmen Foundations, Inc.*, 1999 WL 13257, at *2 (S.D.N.Y. Jan. 13, 1999) (emphasis added).

2

entire banking industry. Because of the prevalence of the "re-sequencing" practice, and its ultimate obsolescence following the amendment of Regulation E, these documents possess no competitive value. Therefore, their disclosure would not cause Union Bank to suffer any competitive injury. That the Bank would rather third parties not review this purported "confidential business information" does not justify confidentiality restrictions. *See In re Bankest Cap. Corp.*, 2007 WL 313301, at *2 (Bkrtcy. S.D. Fla. Jan. 29, 2007) (party's desire to shield deposition from third parties, absent other justifications, did not warrant confidentiality).

The Bank has now admitted that its January 14, 2011 "Confidential" designations swept in numerous categories of documents that are not "Confidential," including "(1) blank attachments and small image files; (2) short e-mails which did not contain strategic business discussion or proprietary information; (3) publicly filed documents such as filings with the [SEC] and other agencies; and (4) final versions of advertisements that were distributed to the public." Opp. at 5-6. However, Union Bank fails to provide any explanation to satisfy its heavy burden of demonstrating how the public release of the remaining 266,000+ documents would or could cause imminent harm. To the contrary, Union Bank's vague references to "high-level communications" and "internal strategies" reinforce Plaintiffs' contention that the materials do not rise to the level of trade secrets or justify "Confidential" protection. Opp. at 11, 13.

Instead of addressing Plaintiffs' contentions solely on their merit, the Bank attempts to minimize its vast and indiscriminate over-designation as a "misunderstanding" for which Plaintiffs somehow bear responsibility. Opp. at 2. The Bank then claims the "only purpose" of Plaintiffs' motion was to "engage in 'embarrassing revelations.'" Opp. at 2, 14. This garbled argument flagrantly misreads Plaintiffs' request. As set forth herein, Plaintiffs seek an order de-designating these documents because there is ***no basis*** for the confidential designation with which they have been wrongly branded.

3

By insisting these documents should bear the confidential brand, the Bank would mire this litigation with unnecessary disputes, substantially increasing the costs and burdens while destroying the very efficiencies that supported entry of the Protective Order. *See* Motion at 5-6 (citing Federal Judicial Center, *Manual for Complex Litig.* § 11.432, at 64 (4th ed. 2004) ("*Manual 4th*")). Moreover, because the public and the press have a strong interest in reviewing these documents, Plaintiffs would have to continually move to de-designate documents on a grueling document-by-document basis as they are introduced into the record. Motion at 11. Without the relief requested, class certification and other forthcoming case filings would lose their transparency under the burden of an improperly conceived and incorrect seal of confidentiality. That would be particularly inappropriate considering the Bank's responsibility to the public and the public's concomitant interest in monitoring this case. *See* Motion at 11-12.

**B. Union Bank's Opposition Confirms That Its Blanket Use of the "Confidential" Designation Did Not Reflect Good Faith.**

In response to Plaintiffs' assertion that Union Bank failed to conduct an initial good faith review, the Bank assert such a review was conducted but that it "inadvertently had not stamped as 'Confidential' the documents it determined were Confidential." Opp. at 8. This prompts an obvious question: If the Bank had indeed already picked out the documents it believed should be designated "Confidential," but merely failed to mark them, why it is now necessary to "re-review" its *entire* 267,000+ page production before it could "de-designate" additional documents? Either the review was not performed, rendering the Bank's "blanket designation" on January 17 wholly inappropriate, or the review was performed and designations were made but Union Bank now refuses to timely identify those documents that were improperly designated.

On February 22, 2011, several weeks after the Bank informed Plaintiffs it would undertake a "re-review" and on the same day the instant motion was filed, the Bank de-designated a portion of its production – a paltry 646 pages (639 excluding duplicates) of the

4

approximately 268,522 pages previously designated confidential. *See* Declaration of Peter H. Bales, Ex. A. Even considering these de-designated documents, roughly ***99.75 percent*** of its October production remains "Confidential." *See* Opp. at 6. This is an obscenely high percentage that itself demonstrates bad faith abuse of the Protective Order. *See In re Ullico Inc. Litig.*, 237 F.R.D. 314, 317 (D.D.C. 2006) (concluding that designation of "over 99% of the roughly 60,000 documents (200,000 pages) as confidential" constituted gross abuse of the confidential designation); *THK America v. NSK Co.*, 157 F.R.D. 637, 645 (N.D. Ill. 1993) (observing that designation of at least 79 percent of documents for attorney's eyes only was "absurdly high."). Plaintiffs' own review reveals a multitude of documents that are plainly not confidential.

      **C.**    **The Bank's Flagrant Pattern of Over-Designation Requires That the Documents Be Stripped of the "Confidential" Designation.**

Union Bank claims that Plaintiffs cite no authority for an order removing the "Confidential" designation from all of Union Bank's documents, which would amount to a sanction.[2] Opp. at 10. The Bank conveniently ignores Plaintiffs' citation to the Protective Order, *see* Motion at 5, which expressly provides that "[a] pattern of over-designation may result in an appropriate remedy." Protective Order ¶ 7. Moreover, Rule 37 authorizes sanctions against any party for failure to "obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Accordingly, the Court may impose appropriate remedial sanctions for the Bank's failure to comply with the terms of the Protective Order. *See* Protective Order ¶ 7; *Ullico*, 237 F.R.D. at 318 (ordering defendant to "remove the 'confidential' designation from all of the documents it produced during discovery"); *Humphreys v. Regents of the Univ. of Cal.*, No. C-04-03808 SI (EDL), 2006 WL 3020902, at *3 (N.D. Cal. Oct. 23, 2006) (imposing Rule 37

---

[2] The Bank also claims that Plaintiffs' request to de-designate the documents would undo the entire reason for the Protective Order. Opp. at 11. Incorrect. The entry of the Protective Order was "intended to 'expedite production, reduce costs, and avoid the burden on the court of a document-by document adjudication.'" Motion at 5 (citing *Manual 4th* § 11.432). The Bank has already eroded these purposes by blatantly over-designating documents.

sanctions for over-designation of documents as confidential); *Quotron Systems, Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992) (imposing "sanctions" on counsel for abuse of protective order through over-designation of documents).

### D. The Bank Disregards the Protective Order and Misapprehends the Law.

Union Bank asserts that Plaintiffs conflate the standard for unsealing judicial documents with the standard for conducting discovery, "where secrecy is expected." Opp. at 9. The Bank offers no clarification of the standard applicable for "conducting discovery." Instead, the Bank cites *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), where the Supreme Court held that a properly issued Protective Order does not violate the First Amendment.[3] *See id.* at 37. In the Eleventh Circuit, "[w]here discovery materials are concerned, the constitutional right of access standard ***is identical to that of Rule 26(c)*** of the Federal Rules of Civil Procedure," and "requires a showing of good cause by ***the party seeking protection***." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310 (11th Cir. 2001) (emphasis added). Union Bank does not and cannot make any such showing. It fails to address the Court's own standard, which comports with Eleventh Circuit law [DE #553], and similarly fails to address the trio of Eleventh Circuit cases summarized in Plaintiffs' Motion and the law of its home state, California. *See* Motion at 8-12.

Furthermore, the Bank misconstrues the Protective Order, which provides that a party may designate documents confidential only after a "good faith determination" that the matter designated "warrants protection." Protective Order ¶¶ 5, 7; *see also Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, 248 F.R.D. 598, 605 (D. Kan. 2008) ("The duty of good faith in the

---

[3] *See also In re Alexander Grant & Co Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) ("After evaluating the competing public and private interests, the Supreme Court [in Seattle Times] concluded that valid protective orders are not violative of the First Amendment . . . ."); *Romero v. Drummond Co., Inc.* 480 F.3d 1234, 1246 (11th Cir. 2007) ("A motion that is 'presented to the court to invoke its powers or affect its decisions,' whether or not characterized as dispositive, is subject to the public right of access.").

protective order is a duty to review the documents in good faith *before* designating them") (emphasis added). In addition, the Order provides that any party wishing to challenge "a Confidential or Highly Confidential designation" may do so by filing a motion with this Court. *Id.* ¶ 20(c). Upon such motion, the Protective Order mandates that the designating party – Union Bank – shoulder the "burden of persuasion" and set forth "good cause" for designating the 268,522 sequentially numbered pages "Confidential." *See* Protective Order ¶ 20(c); Motion at 6; *see also Chicago Tribune*, 263 F.3d at 1307 (stating that an umbrella protective order merely postpones the necessary showing of good cause until the confidential designation is challenged); *In re Alexander*, 820 F.2d at 356 (the burden of proof remains on the movant, only the burden of raising the issue of confidentiality shifts to the other party). This requires the Bank to show that specific prejudice or harm will result by disclosure of the documents it seeks to protect. *See* Motion at 7. Union Bank fails to make such a showing.

### E. At Minimum, Plaintiffs' Proposed Third Amended Complaint and Its Accompanying Exhibits Should Be Unsealed.

The Bank also argues that the proposed Third Amended Complaint and its accompanying Exhibits are not entitled to a strong presumption of openness because the Class has not been certified. Opp. at 12-13. When scrutinized, however, this argument loses its luster.

"When parties request an order restricting access to pleadings and evidence filed with the court, such a request must be subject to heightened scrutiny," because the public has a compelling interest in access to judicial records. *Microlumen, Inc. v. Allegrath*, 2007 WL 1247068, at *1 (M.D. Fla. Apr. 30, 2007); *see also* Motion at 8. The public's right of access is twofold. First, the Eleventh Circuit recognizes a First Amendment right of access to the courts. *Wilson v. American Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) ("[W]here, as in the present case, the [Court] attempts to deny access in order to inhibit the disclosure of sensitive information, it must be shown that the denial is necessitated by a compelling governmental

7

interest, and is narrowly tailored to that interest."). Second, "[t]here is no question that the press and the public jointly possess a common-law right to inspect and copy judicial records and public documents." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987).

Union Bank neglects to mention that the public's right of access extends to *all* "pleadings, docket entries, orders, affidavits or depositions *duly filed.*" *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 355 (11th Cir. 1987) (citation omitted) (emphasis in original).[4] Thus, pleadings and exhibits to them fall within the prescribed ambit of judicial records. *See Leucadia, Inc. v. Applied Extrusion Techs., Inc.* 998 F.2d 157, 164 (3d Cir. 1993) (holding there is "no reason to distinguish between material submitted in connection with a motion for summary judgment and . . . an exhibit to a complaint").

The Bank's generalized assertions of harm and confidentiality are insufficient to overcome the strong presumption of public access to judicial records. *See* Motion at 10 (bare showing that information would harm company's reputation cannot overcome presumption favoring open access). There are no "competing interest[s]" here that override the presumption of free access. *Rossbach v. Rundle*, 128 F.Supp.2d 1348, 1352 (S.D. Fla. 2000). The factors in this analysis include:

> [W]hether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents.

*Romero*, 480 F.3d at 1246. As applied here, these factors militate strongly for unsealing.

The Bank vaguely asserts that the exhibits it seeks to cloak in secrecy "include sensitive financial information, such as internal strategies as to Union Bank's bottom line . . . , competitive information about budget issues and internal strategic planning, financial and business

8

information, and technical specifications . . . ." Opp. at 13. However, the court in *Bovie Medical Corp. v. Livneh*, No. 8:10-cv-1527-T-24EAJ, 2010 WL 4117635, at *2 (M.D. Fla. Oct. 19, 2010), faced with similar conclusory descriptions summarizing the "confidential" information, concluded that such vague, sweeping descriptions made it impossible to "discern how they are relevant to the issue at hand" and, thus, such descriptions were insufficient to keep civil litigation documents secret. *Id.* at *3 ("The fact that the parties have marked their own business records as 'confidential' or 'proprietary' is immaterial, especially when the sensitive nature of these documents has not been identified."). The same is true here.

The Bank's unsubstantiated claim that the only purpose for unsealing the documents is to cause "embarrassing revelations" about the Bank should not influence the Court's decision. *See Romero*, 480 F.3d at 1247 (reversing order to seal where, *inter alia*, district court failed to substantiate claims that providing access to records would vindicate improper motives of plaintiffs' lawyers).[5] In any event, harm to the Bank's reputation is not the type of injury that warrants sealing documents. Motion at 8.

   F.   **Plaintiffs Complied with the Meet-and-Confer Process Set Forth in the Stipulated Protective Order.**

Paragraph 20 of the Protective Order outlines the procedures for challenging a confidentiality designation. *See* Protective Order ¶ 20(b). The parties are permitted to meet and confer in writing, given the size and sophistication of the production in this case. It would be ineffective for Plaintiffs to orally address with Bank counsel concerns relating to over 268,522 pages of discovery documents without the aid and benefit of a writing to clarify the issues.

Although Plaintiffs did not include in their motion the certification required by Local Rule 7.1.A.3, Plaintiffs did in fact comply with all other aspects of the meet and confer

---

[5] Moreover, the Bank's reliance on *Accenture Global Services GMBH v. Guidewire Software, Inc.*, 631 F. Supp. 2d 504 (D. Del. 2009), is patently inapposite. The *Guidewire* court denied the motion to unseal because the documents recited hearsay out of context. *See* Opp. at 14. Here, the documents involve the Bank's own documents, penned by its employees in that capacity.

9

requirements prior to filing their motion. While failure to comply with the letter of the Local Rule "may be" cause to deny a motion, it does not mandate denial. *See* L.R. 7.1.A.3; *see also ULLICO*, 237 F.R.D. at 316 (excusing parties' failure to include similar statement in pleading where letters attached to motion demonstrated substantial compliance with the rule). Here, after the Bank's January 27, 2011 letter informed Plaintiffs that "the documents that Union Bank designated as "Confidential" fall squarely into the Protective Order's definition of confidential materials," we believed that further attempts to confer would be an exercise in futility. And while Union Bank asserts that these issues could have been resolved if Plaintiffs would have picked up the phone, it was the Bank – not Plaintiffs – that refused an invitation to meet and confer further regarding these issues. *See* Motion, Ex. C, at 4 ("Please respond with your availability to meet & confer to discuss the resolution of these issues").

To dispel any question on this issue, and to comply with the letter of Local Rule 7.1.A.3, Plaintiffs hereby certify that they conferred with Union Bank's counsel in a good faith effort to resolve the need to file their motion, but that the parties were not able to resolve their differences as to the issues raised in Plaintiffs' motion.

## Conclusion

"The most important element in the conduct of judicial proceedings in this Court and in the United States is that everything be done in the sunshine. There are certain rare instances when [the courts] throw over cloaks of secrecy and close files. This is not one of them." *In re Bankest*, 2007 WL 313301, at *2. Because Union Bank has failed to establish good cause or good faith, Plaintiffs respectfully request the Court enter an order requiring the Bank to de-designate all documents previously marked confidential or, alternatively, ordering Plaintiffs' proposed Third Amended Complaint and the accompanying exhibits unsealed.

Dated: March 4, 2011

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
bruce@alterslaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596
rcg@grossmanroth.com