UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:09-MD-02036-JLK

_____
                                                            :
IN RE: CHECKING ACCOUNT          :
OVERDRAFT LITIGATION               :
                                                            :
MDL No. 2036                                 :
_____:
_____
                                                            :
THIS DOCUMENT RELATES TO:  :
                                                            :
*Casayuran, et al. v. PNC Bank, National*   :
*Association.*                                    :
S.D. FL. Case No. 10-cv-20496-JLK    :
                                                            :
*Cowen, et al. v. PNC Bank, National*       :
*Association.*                                    :
S.D. FL. Case No. 10-cv-21869-JLK    :
                                                            :
*Hernandez, et al. v. PNC Bank, N.A.*       :
S.D. FL. Case No. 10-cv-21868-JLK    :
                                                            :
*Matos v. National City Bank*                  :
S.D. FL. Case No. 10-cv-21771-JLK    :
_____:

**REPLY BRIEF OF DEFENDANTS PNC BANK, N.A. AND
NATIONAL CITY BANK IN SUPPORT OF THEIR MOTION TO
<u>DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. *Twombly* And *Iqbal* Are Binding, Not Optional, Directives On When Rule 12(b)(6) Motions Are To Be Granted ................................................................... 2

    B. Plaintiffs Do Not And Cannot Contest That Binding Eleventh Circuit Precedent Compels This Court To Defer To *Hassler* ............................................ 3

    C. Applying *Hassler* To The Account Agreement And Averments Of This Case, Dismissal Is Fully Warranted ....................................................................... 4

        1. The Practice Squarely Confronted In *Hassler* – High-to-Low Posting Order – Is What The CAC Is About ............................................... 4

        2. On High-to-Low Posting, The PNC Disclosures Are Substantively The Same As The Sovereign Bank Disclosures Approved In *Hassler* .................................................................................................................. 5

        3. The "Debit Holds" Theory Is Undercut By The Account Agreement And Is Not Well-Pled ............................................................. 7

    D. The CAC Likewise Fails To State A Claim Under Pennsylvania Law .................. 8

III. CONCLUSION ................................................................................................................. 10

Defendants, PNC Bank, N.A. ("PNC") and National City Bank (collectively, "PNC"), respectfully submit this Reply Memorandum in support of their Motion to Dismiss the Consolidated Amended Complaint [Doc. 1071].

## I.    INTRODUCTION

In addition to rebutting arguments in a party's opposition brief, a key function of a movant's reply brief is to bring to the Court's attention the important arguments to which the opponent did not respond, presumably because there was nothing to say.  There are many such concessions-by-omission in Plaintiffs' brief.  They do not contest:

- The threshold Rule 12 standards, enunciated by the United States Supreme Court, which this Court is bound to follow.  Plaintiffs simply invoke the mantra that this Court has in the past chosen to address legal issues at a later stage, but they do not confront the Supreme Court's directive that legally deficient claims are to be dismissed at the outset.

- The fundamental precept that an MDL court should apply the law of the state of the transferor jurisdiction.

- The binding precedent of this Circuit that, in ascertaining the law of another state, this Court gives "great weight" to trial judges sitting in the other state.

- The correctness of Judge Simandle's pronouncement of New Jersey law in *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509 (D.N.J. 2009), as affirmed by a unanimous panel of the Third Circuit, 374 Fed. Appx. 341 (3d Cir. 2010).

After understanding that plaintiffs have failed to contest so much of PNC's motion, it is most telling to look at what Plaintiffs *have* contested.  They contest that the Consolidated Amended Complaint ("CAC") is limited to sequencing – indeed, the impression one gets from Plaintiffs' opposition is that high-to-low sequencing is a mere afterthought, notwithstanding that the class sought by the CAC is defined as those persons who incurred overdraft fees as a result of the bank's "re-sequencing debit card transactions from highest to lowest dollar amount" (CAC ¶ 24), and further notwithstanding that Plaintiffs allege no non-

conclusory facts as to anything other than "re-sequencing." They even more vigorously contest that PNC's Account Agreement language was similar to the account agreement endorsed by Judge Simandle and the Third Circuit in *Hassler*. But to reach that result, Plaintiffs ignore critical language in the PNC Account Agreement, simply pretending that it doesn't exist.

## II.   ARGUMENT

### A.   *Twombly* And *Iqbal* Are Binding, Not Optional, Directives On When Rule 12(b)(6) Motions Are To Be Granted

In its Opening Brief PNC pointed out that under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557-60 (2007), dismissals must be granted where, taking the well-pled averments of the complaint as true, no claim is plausibly stated. *Twombly* emphasized the importance of adherence to Rule 12(b)(6) in class actions because of the large discovery costs such actions entail. PNC therefore respectfully argued that this Court's statement that it prefers to take a different approach than that taken by Judge Simandle in *Hassler*, and wait until the summary judgment stage to address legal issues, Nov. 4, 2010 Tr. at 39, 45, is not in accord with binding Supreme Court precedent. (*See* PNC Opening Br. at 9-10.)

Plaintiffs say not one word in response, but simply parrot what this Court said about its preference. (*See* Pl. Opp. Br. at 4, 14.) Nor do Plaintiffs have much to say about this Court's other statements, made in the context of ruling on discovery disputes, that the motion to dismiss stage *is indeed the stage to test whether a bank's disclosures and procedures were lawful*. Dec. 8, 2010 Tr. at 24-25. Rather, Plaintiffs make this puzzling remark:

> This Court's comments in the context of recent discovery rulings regarding the significance of the terms of the account agreements (Def. Mem., pp. 8-9) does not indicate that this Court would or should be inclined to vary from its consistent rejection of efforts to apply *Hassler I and II* to dismiss complaints against defendant banks in this MDL pursuant to Rule 12(b)(6).

2

(Pl. Opp. Br. at 4 n.3.)  Plaintiffs do not even attempt to explain this *ipse dixit*.  They do not attempt to explain why the Court's statements that the Account Agreement controls, and that a motion to dismiss is the vehicle to test the legal viability of the claims in light of the contractual language – which is precisely what the district court and court of appeals did in *Hassler* – should not be applied here.  Given that there is no appropriate basis for such inconsistency as urged by Plaintiffs, their bald assertion is not only inexplicable, but indefensible.

> B.  **Plaintiffs Do Not And Cannot Contest That Binding Eleventh Circuit Precedent Compels This Court To Defer To *Hassler***

In its Opening Brief, PNC cited binding authority that this Court is to give great weight to the decision of District Judge Simandle in *Hassler*.  (PNC Opening Br. at 9.)  PNC also pointed out that, ***unlike any other recent debit card or overdraft lawsuit***, *Hassler* has been affirmed; that the affirmance, while non-precedential, applied settled principles of New Jersey law; and that a prime reason why non-precedential decisions are issued is because the "law in this area is settled, not because it is underdeveloped." (PNC Opening Br. at 12) (citing *United States v. Minutoli*, 374 F.3d 236, 240 n.4 (3d Cir. 2004)).

Plaintiffs cannot, and do not, take issue with any of that.  They in no way argue that either the district court or Third Circuit decision mis-states New Jersey law.  Rather, Plaintiffs merely point out that the Third Circuit opinion was non-precedential and therefore not a binding precedent in the Circuit, but that is a smokescreen.  They ignore altogether the fact that the district court decision itself is to be accorded ***great weight***, as commanded by *Peacock v. Retail Credit Co.*, 429 F.2d 31, 32 (5th Cir. 1970), an authority to which Plaintiffs do not respond.

Given these principles, which Plaintiffs cannot and do not dispute, the great irony of Plaintiffs' attempt to minimize the impact of *Hassler* is revealed.  Had *Hassler* not been

3

appealed, or had it been affirmed with a mere judgment order, the district court decision would have been entitled to great weight. But because it is such a thorough opinion applying settled principles of law that the Third Circuit *affirmed* with a non-precedential opinion, Plaintiffs seek to obfuscate its significance by reason of the non-precedential affirmance. As PNC stated in its opening brief, this is "turning the law on its head." (PNC Opening Br. at 12.) Plaintiffs have not attempted to refute that point.

> **C. Applying *Hassler* To The Account Agreement And Averments Of This Case, Dismissal Is Fully Warranted**
>
> **1. The Practice Squarely Confronted In *Hassler* – High-to-Low Posting Order – Is What The CAC Is About**

PNC argued in its opening brief that this case is about "re-sequencing" debits from high to low, as established by the class definition itself: customers who "incurred an overdraft fee as a result of [the bank's] practice of re-sequencing debit card transactions from highest to lowest dollar amount." (CAC ¶ 24.) In response Plaintiffs can only say that (i) "Plaintiffs are not forever bound by the language used to describe the classes in their pleading," and (ii) "debit holds" are subsumed within the posting order, and Hassler did not address debit holds. (Pl. Opp. Br. at 2.) PNC will address the second point below, in its discussion of debit holds (*see infra* § II (C)(3)). As to the first, a class definition is "often central to class action pleading" because it must be congruent with the scope of the purportedly common questions of fact and law class plaintiffs will seek to have certified. 2 *Newberg on Class Actions*, § 6.14 at 614-15 (4th ed. 2002). Plaintiffs' statement that a class definition can be modified at a later date proves nothing. It is possible that any other part of a complaint may likewise be amended at a later date, but a Rule 12(b)(6) motion is decided on the state of the complaint in existence at the time of the motion. The CAC, which is what is currently before the Court, contains the existing class definition, and that is what is pertinent to this motion to dismiss.

4

### 2. On High-to-Low Posting, The PNC Disclosures Are Substantively The Same As The Sovereign Bank Disclosures Approved In *Hassler*

Plaintiffs argue that PNC's Account Agreement did not adequately apprise consumers of high-to-low posting. (Pl. Opp. Br. at 5-6.)[1] To reach this conclusion, however, Plaintiffs resort to a stunning tactic: they omit any mention of the very disclosures that both Judge Simandle and the Third Circuit found controlling in *Hassler*: that the bank reserved the right to post in any order, and that it "generally" posted high-to-low. *See* 644 F. Supp.2d at 515, 374 Fed. Appx. at 344-45. As summarized by the Third Circuit:

> Hassler's claim that he and others depended on Sovereign to ensure that charges were posted to their accounts in the chronological order in which the customer incurred them is undercut by Sovereign's explicit reservation of the right to post charges in any order it determines and its notification that it generally posts charges in descending order of amount.

*Id.* at 344.

The reservation of the right to post in any order and the disclosure that the bank "generally" posts high-to-low are ***precisely*** what is contained in the PNC Account Agreement:

> In exercising that discretion to pay in any order, we do not necessarily process items in the order in which we receive them. Our general practice is to post withdrawals from your account in order of the largest-to-smallest dollar item; in other words, beginning with the largest dollar item, then the next-largest dollar item, and so on until we reach the last, smallest-dollar item. . . .

---

[1] At one point Plaintiffs resort to arguing that the Court should "observe" that the Account Agreement relied upon by PNC in its motion became effective September 19, 2008, and account terms may have been different earlier. Plaintiffs do not specify what they want the Court to do with this observation, which is not surprising because the form of Account Agreement relied upon by PNC was attached **by Plaintiffs as an exhibit to the CAC**. Surely Plaintiffs know that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," F. R. Civ. P. 10(c), and that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern," and the complaint must be dismissed. *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).

5

(CAC Exh. A at 4.)  There is no better support for the fact that the PNC disclosures are substantively the same as Sovereign's than that, to argue otherwise, Plaintiffs must hide this operative language.

Plaintiffs also seize on the fact that Sovereign provided an example of the way the process works (a $900 mortgage payment paid before a $100 supermarket purchase, *see* Pl. Opp. Br. at 5), but that effort, too, is unavailing.  Both the district court and Third Circuit did indeed point to that as a helpful example.  But they noted it only as an ***example*** illustrating the principle established by the critical operative language:  that the bank "generally" posted high-to-low.  *See* 374 Fed. Appx. At 344; 644 F. Supp.2d at 515 n.5.  Moreover, in addition to disclosing its "general practice" of posting in descending order, the PNC disclosure carefully explains how that works,[2] and warns that the posting order "may affect the total amount of overdraft fees charged to your Account."  (CAC Exh. A at 4.)

Incredibly, Plaintiffs accuse PNC of "conveniently omit[ting]" the supermarket example (Pl. Opp. Br. at 5), yet PNC quoted and displayed that language in its side-by-side table comparing the two agreements.  (*See* PNC Opening Br. at 14.)  At the same time Plaintiffs base their argument that PNC does not provide information about posting order, "but rather only that it '[does] not necessarily process items in the order in which  we receive them'" (Pl. Opp. Br. at 6), by omitting the very next sentence that discloses the "general practice" of posting in

---

[2]   "[I]n other words, beginning with the largest dollar item, then the next-largest dollar item, and so on until we reach the last smallest-dollar item." Account Agreement, CAC Exh. A at 4.

descending order. That Plaintiffs are compelled to argue in such an inappropriate manner should itself be dispositive.[3]

### 3. The "Debit Holds" Theory Is Undercut By The Account Agreement And Is Not Well-Pled

Knowing that a straightforward application of New Jersey law as enunciated in court decisions to which this Court is to give great weight will eviscerate their high-to-low claim, Plaintiffs resort to the "debit hold" theory. Essentially, Plaintiffs argue that PNC holds "debit transactions over one or more days before posting them. . . ," and this was not addressed in *Hassler*. (Pl. Opp. Br. at 7.) Quite apart from the class definition problem highlighted above, which limits the class to those who paid allegedly excessive overdraft fees resulting from high-to-low posting, "debit holds" cannot buttress the CAC because they are not adequately pled.

Plaintiffs' brief asserts that "the Plaintiffs in the case at bar have alleged that debit holds occurred." (Pl. Opp. Br. at 7) (citing CAC ¶¶ 94-112). There are no **well-pled** averments supporting "debit holds," however. While there is a vague allusion in those paragraphs with respect to one set of plaintiffs that PNC held debits over more than one day (*see* CAC at ¶ 107), this is nothing more than conclusory boilerplate. In stark contrast to Plaintiffs' detailed

---

[3] Plaintiffs' arguments that the Account Agreement leaves open the possibility that overdraft fees may not be charged, because it states that "[w]e may also assess your Account a service charge" (Pl. Opp. Br. at 8), once again ignores the *Hassler* decisions. The bank disclosure there said the same thing: "You *may* incur a fee for each payment order that is presented against your account when you do not have sufficient available funds." *See* 644 F. Supp. 2d at 513 (emphasis added). Neither Judge Simandle nor the court of appeals found the use of the word "may" to detract in any way from the ample warning given consumers that the bank retained discretion to permit or not permit withdrawals resulting in overdrafts, and to impose overdraft fees for those permitted. Moreover, in addition to the quoted language, PNC also disclosed that overdrafts "are subject to a service charge." Finally, PNC disclosed that the posting order "may affect the total amount of overdraft fees charged to your Account." (CAC Exh. A at 4.) Plaintiff's argument on this point is specious.

7

averments concerning high-to-low posting, *see* ¶ ¶ 96-99, Plaintiffs give *no* examples of PNC holding debits over multiple days in order to post them at a time that would increase overdraft fees.

The PNC Account Agreement provides that "in determining whether you have sufficient funds in your account to cover a withdrawal, PNC Bank will consider . . . all pending transactions for which PNC has received notice, even if those transactions have not been presented to PNC for payment." (CAC Exh. A at 3.) That is not a "debit hold," and, as noted, Plaintiffs provide no examples of PNC acting otherwise.

Because Plaintiffs' allegations conflict with the Account Agreement, and Plaintiffs cite no example of the practice occurring to any of the named plaintiffs, the "debit holds" theory does not meet the pleading standards enunciated in *Twombly* and *Iqbal*.[4] Moreover, this Court has itself stated that whether practices were unlawful should be "tested by motion to dismiss. . . . You deal with that, you see, at the pleading stage. . . ." Dec. 8, 2010 Tr. at 24-25. Under controlling New Jersey law, as clearly and unequivocally enunciated in *Hassler*, the CAC fails to state a claim, and it should be dismissed at the pleading stage.

### D. The CAC Likewise Fails To State A Claim Under Pennsylvania Law

The thrust of Plaintiffs' opposition brief on the Pennsylvania law claims is that, because the PNC's Account Agreement and practices were different than those of Sovereign Bank in *Hassler*, the Pennsylvania claims are viable for the same reasons the New Jersey claims

---

[4] In fact, Plaintiffs give only one specific example of anything other than high-to-low posting, which was an alleged failure to timely credit a cash deposit. PNC notified Plaintiffs' counsel in correspondence (accompanied by pertinent account records) that this allegation is demonstrably false. Appropriately, Plaintiffs have therefore not relied on this allegation in their opposition brief. By contrast, the beauty of Plaintiffs' debit holds theory (from their perspective) is that, since they give no examples, they cannot be disproven.

8

are viable. (*See, e.g.*, Pl. Opp. Br. at 14, 17, 18.) As set forth above, Plaintiffs are wrong about PNC's practices and disclosures. Those points need not be repeated.

Only one point needs to be re-emphasized. Not only do Plaintiffs not dispute the governing legal principles on the Unfair Trade Practices and Consumer Protection Law and good faith and fair dealing claims, but Plaintiffs' lengthy quotation of *Benchmark Group, Inc. v. Penn Tank Lines, Inc.*, 612 F. Supp. 2d 562, 583-84 (E.D. Pa. 2009) (*see* Pl. Opp. Br. at 15-16), affirmatively supports PNC's position. That decision re-states the well-established principle that "one can invoke implied terms only when there are no express terms in the contract relating to the particular issue." *Id*. at 584 (citation omitted). Indeed, to make out a good faith and fair dealing claim, a plaintiff must establish that defendant "breach[ed] a specific duty imposed by the contract *other than* the covenant of good faith and fair dealing. . . ." *Id.* (citation omitted) (emphasis added). Here, the Account Agreement expressly provides for high-to-low processing, and there are no averments establishing that PNC breached any term of the Account Agreement term providing when PNC would process debit transactions. By Plaintiffs' own authority, then, they fail to state a claim.[5]

---

[5] One statement in Plaintiffs' review of Pennsylvania law should be corrected. Plaintiffs say that "[i]n *Creeger* [*Brick & Bldg. Supply Inc. v. Mid-State Nak & Trust Co.*, 560 A.2d 151 (Pa. Super. Ct. 1989)], Pennsylvania's highest court" defined the duty of good faith. *Creeger* is indeed the seminal decision on the duty of good faith, and fully supports PNC's position, but it is not a Pennsylvania Supreme Court decision. It is a decision of the Pennsylvania Superior Court, an intermediate appellate court.

### III. CONCLUSION

For all the foregoing reasons, and for those stated in PNC's opening brief, PNC respectfully requests that the CAC be dismissed, with prejudice.

/s/ Michael R. Tein
Michael R. Tein
Florida Bar No.: 993522
tein@lewistein.com
Guy A. Lewis
Florida Bar No.: 623740
lewis@lewistein.com
Kathryn A. Meyers
Florida Bar No.: 0711152
kmeyers@lewistein.com
LEWIS TEIN, P.L.
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
Tel: (305) 442-1101
Fax: (305) 442-6744

/s/ Darryl J. May
Darryl J. May
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Tel.: (215) 665-8500
Fax: (215) 864-8999
may@ballardspahr.com
    and
Mariah Murphy
BALLARD SPAHR LLP
A Pennsylvania Limited Liability Partnership
210 Lake Drive East
Cherry Hill, NJ 08002-1163
Tel : (856) 761-3400
Fax: (856) 761-1020
murphym@ballardspahr.com

*Attorneys for Defendants PNC Bank, N. A. and National City Bank*

Dated: March 11, 2011

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/   Mariah Murphy
Mariah Murphy
BALLARD SPAHR LLP
A Pennsylvania Limited Liability Partnership
210 Lake Drive East
Cherry Hill, NJ 08002-1163
Tel.:  (856) 761-3400
Fax:  (856) 761-1020
murphym@ballardspahr.com

*Attorneys for Defendants PNC Bank, N. A. and National City Bank*

DMEAST #13446532 v2