IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:09-MD-02036-JLK

| | |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION<br><br>MDL NO. 2036 | )<br>)<br>)<br>)<br>)<br>)<br>) |

| | |
|---|---|
| THIS DOCUMENT RELATES TO:<br><br>*Steen v. Capital One, N.A.*<br>E.D. La. Case No. 2:10-cv-01505-JCZ-KWR<br>S.D. Fla. Case No. 1:10-cv-22058-JLK | )<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT CAPITAL ONE, N.A.'S REPLY MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO DISMISS OR,
IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT**

## INTRODUCTION

Plaintiffs' opposition relies on deposit agreements from other banks, inapposite cases, holdings that are completely unrelated to Capital One, N.A. ("Capital One"), and untenable arguments that are divorced from reality and caselaw.  In contrast with other banks as to which the Court has previously ruled on motions to dismiss, Capital One's deposit agreement confers *no discretion in relation to posting order*, a point plaintiffs attempt to evade by discussing other contractual provisions and ignoring the plain meaning of the words "will" and "generally." Bereft of any arguments that pertain specifically to Capital One's deposit agreement, plaintiffs instead argue a breach of the deposit agreement that is untethered to any claims in their Complaint, and rely on conclusory allegations regarding "other" business practices that do not meet Rule 8, Rule 12, or constitutional standing requirements.  For these reasons and the reasons stated below, Capital One's Motion to Dismiss should be granted.

## ARGUMENT

## I.      ALL OF PLAINTIFFS' CLAIMS FAIL UNDER RULE 12(B)(6).

Plaintiffs' Second Amended Complaint ("Complaint" or "SAC") is rife with conclusory statements but woefully short on the factual allegations necessary to support their claims. Beyond named plaintiffs Leanne Steen and Terrance Menyweather's allegations regarding the posting order of their debit transactions on three occasions (SAC ¶¶ 60-74), plaintiffs have failed to plead individualized facts sufficient to comply with Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (requiring plaintiff's complaint to "raise a right to relief above the speculative level"); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statement, do not suffice.").

A.     **Plaintiffs' Claims Fail Because Their Deposit Agreement's High-to-Low Posting Order is Nondiscretionary.**

      1.     **Plaintiffs' Good Faith and Fair Dealing Claim Fails Because the Implied Covenant Does Not Apply to Nondiscretionary Express Terms.**

By claiming a breach of the implied covenant of good faith and fair dealing, plaintiffs attempt to rewrite the operative provision of their deposit agreement, which states that debited items "***will*** generally be posted to [a customer's] account . . . from highest dollar amount to lowest dollar amount."  (*See* ECF No. 1161, Def. Capital One, N.A's Motion to Dismiss or, in the Alternative, Motion for a More Definite Statement, and Incorporated Memorandum of Law, ("Motion"), at 5, Exs. A-E (emphasis added)).  Despite this clear, non-discretionary language, plaintiffs assert that Capital One failed to properly exercise discretion in executing a function (the posting order of debit transactions) for which the deposit agreement conferred no discretion.

The covenant exists only where its application does not supersede express contract terms that, on their face, do not afford a party discretion concerning its performance of the contract terms.  *Barnes v. Diamond Aircraft Indus., Inc.*, 499 F. Supp. 2d 1311, 1317 (S.D. Fla. 2007) (King, J.); *Renslow v. Capital One Bank (USA), N.A.*, No. 08-60964, 2009 U.S. Dist. LEXIS 83109, at *13-14 (S.D. Fla. Jan. 7, 2009) (customer credit card agreement conferred no discretion upon Capital One and thus the implied covenant of good faith and fair dealing was not implicated), *aff'd* 343 F. App'x. 457, 459 (11th Cir. 2009).  The deposit agreements of ***other banks*** in this MDL state, for example, that the bank "will generally pay larger [items] first. ***However, [the bank] is not obligated to do so***."  (*See* ECF No. 1246, Pls' Memorandum in Opposition to Def. Capital One's Motion to Dismiss And/Or for a More Definite Statement, ("Opp'n"), at 5, Exs. A-C (emphasis added)).  There, the discretion to post in a different order lies in the bolded text.  Here, the deposit agreement does not include such a caveat and Capital One has not deviated from the contractually-specified high-to-low posting order.

Plaintiffs' argument that the term "generally" signals discretion is by definition wrong.  "Generally" is defined as "usually" or "as a rule" and is synonymous with "almost always."  THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 732 (4th ed. 2000); ROGET'S

DESK THESAURUS 222 (1996).  Regarding discretion, the *Gutierrez* Court noted that the relevant issue is whether the posting-order language leads "the customer to believe, in the context of the statement, that reordering is not automatic but merely an exception."  *Gutierrez v. Wells Fargo Bank N.A.*, No. C 07-05923, 2008 U.S. Dist LEXIS 70124, at *29 (N.D. Cal. Sept. 11, 2008). Capital One's posting-order language clearly indicated that high-to-low posting is the rule rather than the exception.  The covenant requires only that Capital One "perform its obligations under the contract . . . in a way that will effectuate the objectively reasonable expectations of the parties."  (ECF No. 305, March 11, 2010 Order ("Order"), at 19 (citations omitted)).  *See also Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) (the covenant "require[s] that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable, contractual expectations").  A reasonable person, reading the language found in the Capital One agreement, would expect that Capital One would post items in high-to-low order.  Since plaintiffs plead no facts justifying their subjective expectation of an alternate posting order, much less a basis on which the contract might create an objectively reasonable expectation of such an order, they fail to state a claim for breach of the covenant.  *See* Restatement (Second) of Contracts § 205 cmt. a (1981) ("consistency with the justified expectations of the other party" is the hallmark of good faith).

Plaintiffs' allegation that Capital One breached the covenant by doing *exactly* what it said, without qualification, that it "will generally" do is complete nonsense.  Capital One could not, consistent with the deposit agreement, *generally* post in an order not mentioned in that agreement and entirely *contrary* to what it said it *will generally* do.  Courts have consistently rejected plaintiffs' argument.  *See e.g., Davis v. McDonald's Corp.*, 44 F. Supp. 2d 1251, 1259, (N.D. Fla. 1998) ("This Court will not apply the covenant of good faith and fair dealing to impose a condition on [defendant] which contradicts the express terms of the contracts."); *see also, Clark v. Am.'s Favorite Chicken Co.*, 916 F. Supp. 586, 590-91 (E.D. La. 1996) (rejecting plaintiffs' argument that defendant breached implied obligation of "good faith performance" where defendant did not breach express terms of agreement at issue), *aff'd*, 110 F.3d 295 (5th

Cir. 1997); *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983) ("[A]n implied covenant of good faith and fair dealing does not override the express terms of [a] transaction.") (Spears, J., concurring); *Enfield Equip. Co. v. John Deere Co.*, 64 F. Supp. 2d 483, 486 (D. Md. 1999) ("[T]he implied duty of good faith and fair dealing in Maryland is of limited scope and only operates where it would not contradict a contract's express terms."), *aff'd*, 217 F.3d 838 (4th Cir. 2000).  This Court should do likewise and dismiss plaintiffs' claims.

### 2.    Plaintiffs' Breach of Contract Claims Fail.

Plaintiffs styled their first claim for relief, "breach of contract and breach of the covenant of good faith and fair dealing," solely on the premise that some states include breach of the covenant under the umbrella of breach of contract.  (SAC at 25 n.3.)  Though the Complaint contains conclusory allegations of the breach of the covenant, it contains no independent allegations of breach of the deposit agreement in the Complaint.  (*Id*. at 7, 25-26.)  Plaintiffs' argument that Capital One breached the deposit agreement by allowing customers to overdraw their account supports no claim pleaded in the Complaint.  (Opp'n at 7-8.)  Moreover, the cases plaintiffs cite in support of this argument are completely inapposite.[1]

### 3.    Plaintiffs' Remaining Claims Also Fail.

A party does not act in bad faith, deceptively, or unfairly by doing what it is plainly required to do by contract.  *See Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Bd. of the Tex. Dep't of Transp.*, 179 S.W.3d 589, 615 (Tex. Ct. App. 2005) ("[A] party does not act in bad faith if its actions are permitted under the contract.").[2]  Plaintiffs' second through fifth claims, wherein

---

[1] That plaintiffs cited these cases to support their argument is puzzling.  *Henry v. Masson* decides the materiality of the breach of a settlement agreement, which required the breaching party to deliver certain documents to the other party by a specified date.  No. 01-07-00522-CV, 2010 WL 5395640, at *8 (Tex. App. Dec. 30, 2010).  *New Orleans Jazz and Heritage Found., Inc. v. Kirksey* decides whether or not plaintiff properly sued both a corporate entity and its sole shareholder for breach of a ticket sales contract.  40 So.3d 394, 407 (La. App. 2010).  And, *Diamond Point Plaza Ltd. P'ship v. Wells Fargo Bank, N.A.* analyzes a non-compete provision in a commercial lease and concludes that it was not breached.  929 A.2d 932, 950-51 (Md. 2007).

[2] *See also*, *Amoco Prod. Co. v. Tex. Meridian Res. Exploration Inc.*, 180 F.3d 664, 669-70 (5th Cir. 1999) (rejecting plaintiff's argument that defendant acted in bad faith under Louisiana law because "none of [plaintiff's] allegations establishes any conduct by [defendant] that was not permitted by its contractual rights under the [agreement]"); *Woodrow v. Vericrest Fin., Inc.*, No. AW-09-1612, 2009 U.S. Dist. LEXIS 110709, at *10-12 (D. Md. Nov. 30, 2009) (rejecting plaintiff's argument that defendant acted in bad faith where defendant refused to modify terms of contract where negotiation was not required by contract).

sf-2964086                                    4

they allege unconscionability, conversion, unjust enrichment, and violation of Maryland's unfair trade practice laws, are based on the contention that Capital One has acted in bad faith in exercising discretion available to it under the contract.  These claims should be dismissed because, as explained above, the posting-order language as stated in the deposit agreement conferred no discretion.  As such, Capital One's imposition of fees was contractually permissible.  Plaintiffs' conversion claim fails because it was proper for the bank to deduct the fees from plaintiffs' accounts.  Likewise, the unjust enrichment claim fails because contractually-permissible fees are not "unjust" as a matter of law.  *Jaffe v. Bank of Am., N.A.*, 667 F. Supp. 2d 1299, 1322 (S.D. Fla. 2009) (King, J.) (no claim for unjust enrichment where defendant was contractually entitled to payment).

### 4.    The National Bank Act Preempts Plaintiffs' Claims.

Plaintiffs fail to address Capital One's preemption argument against *their* claims and instead discuss only this Court's Order assessing the claims of *other* plaintiffs in this MDL. Plaintiffs' reliance on this Court's Order as to preemption — namely, the decision to postpone a ruling as to whether or not any or all of the other plaintiffs' claims are preempted by the National Bank Act — is misplaced.  Since the Court premised its reason for postponing a ruling on preemption on the existence of the implied covenant of good faith and fair dealing, that decision does not apply here.  (*See* Order at 10.)  Here, since Capital One's deposit agreement does not afford Capital One the discretion to adopt as a general practice any posting order other than high-to-low, there is no implied covenant issue.  *See Barnes*, 499 F. Supp. 2d at 1317 (covenant exists only where its application does not supersede express contract language).  Thus, there is no reason to forestall a preemption determination as to Capital One.

Plaintiffs have identified no authority that allows states to restrict the substantive banking terms on which a national bank and its customers have expressly agreed to by contract.  Rather, federal law dictates that states may not force national banks to adopt particular substantive terms in their banking practices, whether through common law or statute.  *See, e.g., Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 556-57 (9th Cir. 2010) (preempting state-law unfair

competition claims on disclosures and fees).  As such, plaintiffs' claims — all premised on the notion that state contract law *requires* an alternate posting order — are preempted.

**B.     Texas Law Precludes Plaintiffs' Claims for Breach of Contract and Breach of Covenant of Good Faith and Fair Dealing.**

Despite plaintiffs' assertions to the contrary, Texas does not recognize Restatement (Second) of Contracts § 205 as the "[Texas] Supreme Court has ***expressly rejected*** the contention that an implied duty of good faith and fair dealing exists in every contract."  *Wil-Roye Invest. Co. II v. Wash. Mut. Bank, FA*, 142 S.W. 3d 393, 409-10 (Tex. Ct. App. 2004) (emphasis added); *see also City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000) ("We have specifically rejected the implication of a general duty of good faith and fair dealing in all contracts.") (quotation and citation omitted).  Absent a special relationship, there is no independent action for breach of a duty of good faith between parties.  *Wil-Roye*, 142 S.W. 3d at 410.

Faced with certain dismissal, plaintiffs attempt to fashion a special relationship where none exists.  This Court correctly ruled in its Order that the relationship between depositors and defendant banks in this MDL "do[es] not satisfy the additional requirements imposed by Texas law to raise a claim based on the implied covenant."  (Order at 24-25 (finding *Wil-Roye* "particularly instructive" on this issue).)  Plaintiffs, nonetheless, seek to persuade the Court to override its own holding by asserting that a case five years older, *Plaza National Bank v. Walker*, 767 S.W. 2d 276 (Tex. Ct. App. 1989), is the proper authority even though *Plaza* "did not engage in an analysis as to why a special relationship exists between a bank and a depositor." (Order at 24.)  Plaintiffs are wrong.[3]  In *Eller v. NationsBank of Texas, N.A.*, the court concluded:

> [S]ince *Plaza*, the Texas Supreme Court has reaffirmed the long-settled principle that the duty of good faith does not arise in ordinary commercial transactions. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs., Inc.*, 960 S.W.2d 41, 52 (Tex. 1998).  So too has it recognized that the mere relationship of debtor and creditor is not sufficiently special to impose a duty of good faith upon its parties.

---

[3] Plaintiffs' argument regarding the significance of the "writ denied" designation of *Plaza* is not well taken.  (*See* Opp'n at 11.)  "A denial of review . . . by the Texas Supreme Court is not a comment on the correctness of the court of appeals' opinion below, although parties often argue as much."  *Tex. S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 239 n.8 (Tex. Ct. App. 2008); *Matthews Constr. Co., Inc. v. Rosen*, 796 S.W.2d 692, 694 n.2 (Tex. 1990) ("[O]ur denial of the writ is no indication that this court approved the opinion of the court of appeals.").

> *Fed. Deposit Ins. Corp. v. Coleman*, 795 S.W.2d 706, 708-709 (Tex. 1990).
> Since the relationship between a bank and its depositor is one of debtor and
> creditor, **Plaza has been implicitly overruled**.

975 S.W.2d 803, 809 (Tex. Ct. App. 1998) (no special relationship between bank and depositor)
(emphasis added). *Plaza* does not accurately reflect current Texas law. To survive dismissal,
plaintiffs must plead facts that turn their standard bank-depositor relationship into a "special
relationship." (*See* Order at 24.) The Complaint is wholly bereft of these facts. The electronic
debit transaction technology that plaintiffs purport creates a special relationship (*see* Opp'n at
10-12) existed at the time of the *Wil-Roye* decision, and was pleaded by other plaintiffs in this
MDL and thus implicitly rejected in this Court's Order. (Order at 24.) *Wil-Roye*, 142 S.W.3d at
410 (finding no special relationship because those "facts [did] not demonstrate . . . excessive
control over or influence in [a]ppellants' business activities"). Plaintiffs allege no facts to
distinguish them from the run-of-the-mill depositor in *Wil-Roye, Eller*, or this Court's Order. As
such, plaintiffs' claim for breach of contract and breach of the covenant of good faith and fair
dealing based on deposit agreements governed by Texas law should be dismissed.

Further, *Fetter* clearly states "the express language of the Account Agreement and UCC
section 4.303(b), preclude [plaintiffs'] claims as a matter of law." *Fetter v. Wells Fargo Bank
Tex., N.A.*, 110 S.W.3d 683, 685 (Tex. Ct. App. 2003). Plaintiffs' repeated assertion that this
Court rejected this conclusion is patently false. The Court discussed the application of the
generic UCC to the claims of those plaintiffs; however, it did not address the whether the Texas
Business and Commercial Code or express language providing for nondiscretionary high-to-low
posting foreclosed these claims. (Order at 20-22.) For the reasons discussed in its Motion,
Capital One asserts that *Fetter* forecloses plaintiffs' claims.

### C. Plaintiffs' Allegations Regarding Banking Practices Other Than Posting Order Do Not State Any Entitlement to Relief.

Plaintiffs' vague allegations concerning Capital One's practices other than posting order
fail to meet the pleading requirements articulated by the Supreme Court in *Iqbal* and *Twombly*.
For example, plaintiffs allege that Capital One holds debit charges for "multiple days," then

"batch[es]" these charges together "to maximize the number of overdraft transactions." (SAC ¶ 41). Yet, Steen's and Menyweather's individual examples of debit transactions posted in descending order on the same day include no reference to any debit transaction being "held" or "batched" so as to create a result different from the effect of posting debit transactions in the high-to-low order specified in deposit agreement. (*Id*. ¶¶ 60-75). Further, Steen and Menyweather make no allegations that the debited items in the examples described were posted on a date later than the date on which they initiated each of their debit transactions. (*Id.*) Similarly, the Complaint fails to show that any named plaintiff actually received inaccurate balance information, or actually had a "hold" placed on his or her funds.

Plaintiffs completely fail to allege that any of them suffered any specific injury as a result of the other banking practices. Moreover, to the extent that plaintiffs claim injury as a result of these "other" alleged banking practices, these practices are not within the class definition. Since plaintiffs have failed to met Rule 8's pleading standard by stating a proper "entitlement to relief" with respect to any banking practices other than posting order, these other claims should be dismissed.

### D. All of Plaintiff Peterson's Claims Should Be Dismissed for Failure to State a Plausible Entitlement to Relief.

In contrast to Steen and Menyweather, Peterson fails to plead any factual allegations that he was harmed by Capital One's high-to-low posting order. The ***only*** posting order allegations that pertain to Peterson are that "Capital One wrongfully charged [him] overdraft fees on multiple occasions" and that "[t]hese wrongful overdraft fees occurred as a result of Capital One's manipulation and re-ordering of [his] debit card transaction[s]." (*Id*. ¶ 78.) Peterson's conclusory and threadbare allegations fall exceptionally short of meeting Rule 8 by failing to provide any examples of, or to even allege, any occasion where he incurred one or more overdrafts in a single day. Contrary to plaintiffs' assertions, Peterson cannot bootstrap an injury-in-fact from the general class allegations. (*See* Opp'n at 18 relying on the "first 17 pages of the SAC"). *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987). Likewise, Peterson alleges

nothing to support his claim under the Maryland Consumer Protection Act — not even a formulaic recitation of the essential elements of the claim.  (*See* SAC ¶¶ 122-125.)  Thus, all of Peterson's claims should be dismissed under Rule 12(b)(6) for failure to state a claim.

## II.    AS TO PLAINTIFFS' CLAIMS FOR "OTHER BUSINESS PRACTICES," CAPITAL ONE ALTERNATIVELY SEEKS A MORE DEFINITE STATEMENT.

This Court suggested that whether plaintiffs have facts regarding banking practices, other than high-to-low posting, should be "tested by [a] motion to dismiss [or] motion for [a] more definite statement."  (Status Conf. Tr. 24-25, Dec. 8, 2010.)  Here, the Complaint is the quintessential example of the shotgun pleading repeatedly condemned by the Eleventh Circuit. *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 980 n.54 (11th Cir. 2008) ("since 1985 we have explicitly condemned shotgun pleadings upward of fifty times"); *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295-96 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts . . . contain irrelevant factual allegations and legal conclusions."). Capital One cannot determine which of plaintiffs' allegations concerning practices, other than high-to-posting order, are intended to support which, if any, of their five claims for relief, and consequently cannot frame a responsive pleading.  *See Anderson v. District Bd. of Trustees of Cent. Fla. Cmty College*, 77 F.3d 364, 366 (11th Cir. 1996) (shotgun pleading made it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief").  Moreover, since the Complaint is devoid of facts tying any named plaintiff to any banking practice other than high-to-low posting order, Capital One cannot determine which, if any, named plaintiff alleges an injury-in-fact as a result of these "other" banking practices.  As such, plaintiffs should be ordered to provide a more definite statement if their claims regarding these practices are not dismissed.

## III.    PLAINTIFFS LACK STANDING TO ASSERT CERTAIN OF THEIR CLAIMS.

Where plaintiffs have looked to this Court's Order in an attempt to overcome certain shortcomings in the Complaint, they cannot rely on other plaintiffs' claims against banks ***other***

***than Capital One*** to show injury-in-fact, causation, and redressability.  *Young v. West Publ'g Corp.*, 724 F. Supp. 2d 1268, 1280 (S.D. Fla. 2010).  In a class action, each named plaintiff must establish that they "personally have been injured" and thus have standing to bring the cause of action.  *Blum v. Yaretsky*, 457 U.S. 991, 1001 n.13 (1982); *see also Griffin*, 823 F.2d at 1482-83 ("[A] plaintiff must allege and show that he personally suffered injury.").  In order to meet this requirement at the pleading stage, plaintiffs must include allegations sufficient to establish injury-in-fact as to each of them ***individually***.  "Moreover, the standing requirement must be met for every claim asserted in the Complaint."  (Order at 39.)

As explained above in Section I.C, plaintiffs lack standing to challenge Capital One's banking practices other than posting order because they do not allege injury and causation as required by Rule 12(b)(1).  Therefore, plaintiffs' claims related to Capital One's "other" banking practices should be dismissed for failure to satisfy the Article III standing requirement.

Furthermore, as explained above in Section I.D, Peterson's allegations cannot meet Rule 8 requirements because he fails to plead an injury-in-fact.  Peterson cannot rely on the posting order allegations of Steen and Menyweather to show his own standing.  *Griffin*, 823 F.2d at 1483.  Peterson's failure to plead any injury-in-fact, including his failure to show that he was harmed by Capital One's high-to-low posting order, subjects all of his claims to dismissal for lack of standing.  Moreover, Peterson's inability to state any claim precludes any plaintiff in this case from having standing to bring any claims under the Maryland Consumer Protection Act.  *Id.*

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint in its entirety, or in the alternative, issue an order for a more definite statement as to the allegations regarding banking practices other than high-to-low posting order.

Dated: March 14, 2011

Respectfully submitted by,

MORRISON & FOERSTER LLP

By:   /s/ James R. McGuire
       JAMES R. McGUIRE

       JAMES R. McGUIRE (*pro hac vice*)
       RITA F. LIN (*pro hac vice*)
       MIMI YANG (*pro hac vice*)
       MORRISON & FOERSTER LLP
       425 Market Street
       San Francisco, CA  94105
       Telephone:    415.268.7000
       Facsimile:    415.268.7522

       *Attorneys for Defendant*
       CAPITAL ONE, N.A.

CERTIFICATE OF SERVICE

CASE NO.: 1:09-MD-02036-JLK

I HEREBY CERTIFY that on March 14, 2011, I filed the foregoing document with the

Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this

day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of

record entitled to receive service.

/s/ James R. McGuire
James R. McGuire
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
Telephone:     415.268.7000
Facsimile:     415.268.7522
jmcguire@mofo.com

sf-2964086