UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Blahut v. Harris, N.A.*
S.D. Fla. Case No. 1:10-cv-21821-JLK
N.D. Ill. Case No. 1:10-cv-2543

**REPLY IN SUPPORT OF
HARRIS N.A.'S RULE 12(b)(6) MOTION TO DISMISS**

Defendant Harris N.A. ("Harris") moved to dismiss the complaint of plaintiff Stephanie Blahut ("Blahut") because settled Illinois law establishes that each of her causes of action is completely foreclosed, inadequately pleaded, or both. [DE # 1074] In her response brief [DE # 1193], Blahut tries to sidestep the controlling Illinois law—which includes precedents rejecting similar challenges to bank overdraft policies—by insisting that this Court has already rejected Harris's dismissal arguments, that Harris's Illinois-law authorities are distinguishable, and that decisions applying the law of other states govern. At the same time, Blahut pretends that the complaint contains allegations that it omits, and omits allegations that it contains. Blahut's arguments are meritless. Each of her claims should be dismissed.[1]

Before we detail all of the reasons why that is so, one point deserves emphasis at the outset. Blahut's repeated claim that the Court has rejected Harris's dismissal arguments misapprehends Harris's arguments and this Court's prior dismissal rulings. In deciding the First Tranche omnibus dismissal motion, the Court by its own admission applied a kind of general common law because the parties did not invoke the specifics of any particular state's law as a ground for (or against) dismissal. *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1314 (S.D. Fla. 2010). Here, by contrast, Harris argues that the specifics of Illinois law are precisely what require dismissal. And, of course, the *Erie* doctrine dictates that a federal court sitting in diversity must apply the appropriate state's law as determined by courts of that state. *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982). Moreover, when a federal court lacks adequate guidance to confidently predict how a state's highest court would decide an issue, the appropriate response is to choose "the interpretation that restricts liability, rather than expands it." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 253 (3d Cir. 2010); *see also Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004); *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir. 2000). Alternatively, the Eleventh Circuit has instructed that "[w]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1133 (11th Cir. 2010).

---

[1] Harris also maintains that federal law preempts Blahut's claims for the reasons stated in the First Tranche omnibus motion to dismiss. [DE # 217]. Harris recognizes, however, that the Court has rejected those preemption arguments, so Harris has not reiterated them. At the same time, Harris reserves its right to argue for dismissal on preemption grounds.

I.      **Illinois Law Requires Dismissal Of Blahut's Implied Covenant Claim.**

The motion to dismiss showed that the decision of the Illinois Appellate Court in *Hill v. St. Paul Federal Bank for Savings*, 768 N.E.2d 322 (Ill. App. Ct. 2002), forecloses Blahut's claim for breach of the implied covenant of good faith and fair dealing. *Hill* affirmed dismissal of an implied covenant claim nearly identical to Blahut's, holding that Illinois law allows a bank to sequence checking account transactions from highest to lowest amount even when the bank's motive is to maximize its profits. *Id.* at 327. Blahut tries to dodge *Hill* in a variety of ways, but none have any merit.

First, Blahut asserts that because the applicable Deposit Agreement grants Harris discretion to post transactions "in any order" and to charge overdraft fees, Harris had to exercise that discretion in good faith. But that does not distinguish *Hill* or show that Harris breached the implied covenant. In *Hill*, the defendant banks had the same discretion and the same obligation to exercise it in good faith. 768 N.E.2d at 324, 326. The *Hill* court simply determined that there was "no lack of good faith" in posting transactions from high to low because the Illinois UCC allowed that practice. *Id.* at 326-27.

Second, Blahut claims that this Court's order denying the First Tranche motion to dismiss rejected *Hill* and the UCC provisions allowing high-to-low posting (810 ILCS 5/4-303(b); 810 ILCS 5/4A-504(a)) because *Hill* involved checks and the UCC provisions do not expressly apply to debit card transactions. The Court apparently believed that the "instantaneous nature" of debit card transactions made them fundamentally different from check transactions. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316. The Court, however, did not offer any analysis of whether *Hill*, the relevant UCC provisions, or any other source of Illinois law supported the Court's distinction between debit card and check transactions or otherwise required the Court to reject *Hill* and its reasoning for claims subject to Illinois law.

Such an analysis shows that neither *Hill* nor the UCC relies on the delayed authorization and processing of checks to justify the discretion granted banks to post transactions from highest to lowest amount. Instead, those authorities rely on considerations that are equally applicable to debit card transactions: "the impossibility of stating a rule that would be fair in all cases"; "the almost infinite number of combinations of large and small checks in relation to the available balance"; and the fact that "the drawer has drawn all the checks[,] should have funds available to

2

meet all of them[,] and has no basis for urging one should be paid before another." *Hill*, 768 N.E.2d at 325; UCC § 4-303 cmt. 7.

What is more, the UCC provisions granting banks posting discretion do in fact apply to some transactions that are authorized and processed "instantaneously." For instance, Article 4A and its express grant of unfettered posting discretion applies to "instantaneously" authorized funds transfers from business accounts. 3 James J. White & Robert S. Summers, *Uniform Commercial Code* § 22-3, at 8-25 (5th ed. 2002) (describing transactions subject to Article 4A); 810 ILCS 5/4A-504(a) (granting posting discretion). It is undisputed, moreover, that the only reason the UCC does not expressly govern debit card transactions is that the drafters thought federal law preempted state law regulation of those transactions. *See* Transcript of Proceedings, Nat'l Conf. of Comm'rs on Uniform State Laws, UCC Arts. 3, 4, & 4A, at 141:16-142:11 (1987). The drafters even commented that "a court might apply appropriate principles from Article 4A" to any part of a funds transfer not subject to federal law. UCC § 4A-108 cmt. 1.

Third, Blahut complains that Harris did not address the federal court decisions under Georgia and California law on which the Court relied in denying the First Tranche dismissal motion. *See White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009). But those decisions have no bearing on Illinois law, particularly when there is an Illinois Appellate Court decision directly on point. In fact, those decisions confirm that Illinois law takes a very different view of posting order discretion and they undermine any argument for treating checks and debit card transactions differently.

Without distinguishing between checks and debit card transactions, *White* ruled that it could breach the implied covenant of good faith and fair dealing *under Georgia law* for a bank to accumulate transactions (of any sort) over several days and then post them in high-to-low order so as to maximize overdraft fees. 563 F. Supp. 2d at 1363-66. *Hill* expressly rejected that approach, ruling that Illinois law allows a bank to post transactions in high-to-low fashion even if its motive is to maximize fees. 768 N.E.2d at 326-27.

*Gutierrez* ruled that neither California's version of UCC § 4-303 nor California common law permits a bank to post either checks or debit card transactions in any order it pleases. 622 F. Supp. 2d at 951-54. Crucially, *Gutierrez* relied on two California-specific authorities: (1) a comment to § 4-303 inserted by the California legislature specifying that a bank may not

3

exercise its posting discretion in order to increase the amount of returned check fees; and (2) a California Supreme Court decision consistent with that comment. *Id.* at 952-53. In telling contrast, the Illinois legislature has added no similar gloss to § 4-303, and *Hill* definitively ruled that Illinois law permits banks to resequence checking account transactions in order to maximize the number of overdraft fees. 810 ILCS 5/4-303; *Hill*, 768 N.E.2d at 326-27. Thus, *Gutierrez*, like *White*, does not remotely support Blahut's attempt to distinguish *Hill* and otherwise save her implied covenant claim. Indeed, a later decision in the *Gutierrez* litigation expressly rules that checks and debit card transactions are subject to the same posting order rules, concluding that "[w]hile on its face [the California legislative] comment only refers to checks, it plainly covers debit cards as well" because debits cards are simply "another way to make such payments." *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1122 (N.D. Cal. 2010).

Finally, Blahut asserts that questions of fact about how to understand the Deposit Agreement's grant of discretion to post transactions "in any order" somehow preclude dismissal. *Hill* again belies that assertion. *Hill* approved the dismissal of nearly identical claims about how banks "manipulated" transaction posting to maximize overdraft fees, when the deposit agreements at issue said nothing about posting order. 768 N.E.2d at 324, 326-27. Surely then, *Hill* requires dismissal when a deposit agreement expressly grants a bank posting order discretion. *See* Am. Compl., Ex. A at 2 (Deposit Agreement: "We may pay Items presented against your account in any order we choose").

## II.  Blahut Does Not State An Unconscionability Claim.

Harris's dismissal motion established that Blahut has not adequately pleaded an unconscionability claim under controlling Illinois precedents, including *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 610-11 (Ill. App. Ct. 1996), which affirmed dismissal of a similar claim that a bank's overdraft fee policy was unconscionable. Notwithstanding those precedents, Blahut insists that she has stated an unconscionability claim. But nothing she says changes the fact that her allegations are no different from ones that Illinois courts have held will not support an unconscionability claim.

Blahut contends that this Court rejected Harris's dismissal arguments in denying dismissal to the First Tranche defendants. But the Court was not applying Illinois law. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319-20. That much is obvious from the fact that the Court ruled that an adhesive contract between parties with unequal sophistication and

4

bargaining power established procedural unconscionability (*id.*), which is an idea that the Illinois Supreme Court has rejected. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 266 (Ill. 2006). Nor did the Court distinguish *Saunders*, as Blahut incorrectly claims. To be sure, the Court's order noted that the First Tranche defendants had cited *Saunders*. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319. But the order did not address how the First Tranche plaintiffs' unconscionability claims could survive under *Saunders*.

*Saunders* cannot be distinguished. The plaintiff in that case was a checking account customer who was charged 12 separate overdraft fees totaling $240 as the result of a single $4.61 overdraft. 662 N.E.2d at 605-06. She alleged that (a) she "could not negotiate the terms concerning the Bank's overdraft policy" (*id.* at 610); (b) "the overdraft fee was in excess of the services rendered" (*id.*); (c) "the Bank had sole discretion in determining whether to assess the charge" (*id.*); (d) "the Bank's policy is inconsistent with her reasonable expectations" (*id.* at 609); (e) "the Bank had an incentive to honor checks" to generate overdraft fees (*id.* at 608); (f) her account agreement "did not define the term 'overdraft'" (*id.*); (g) "the listing of the overdraft charge was buried in several documents" (*id.*); and (h) the account agreement "did not clearly disclose that the $20 [overdraft] charge would be assessed separately" every day (*id.*). Despite those allegations, *Saunders* affirmed dismissal of the plaintiff's unconscionability claims because the plaintiff "was not intimidated or coerced into accepting the terms" of the account agreement, she "was free to select from a multitude of other Banks with a variety of services and fees," she had documents informing her of the charges for overdrafts, and she had a "role in establishing the [overdraft] charge." *Id.* at 611.

The same is true here. Blahut does not allege any coercion or intimidation. A document attached to Blahut's own complaint acknowledges that "at least one large bank and a number of smaller institutions" never adopted the overdraft policy about which Blahut complains and instead simply "decline debit card transactions that would otherwise result in an overdraft." Am. Compl., Ex. D at 10. Blahut received ample information about Harris's overdraft fees in the Deposit Agreement and the accompanying fee disclosures, as well as in the account statements from which her own complaint discerns Harris's supposedly secret posting order. Am. Compl. ¶¶ 32-37, 71. And Blahut obviously had a central role in generating the overdraft fees about which she complains, given that the fees resulted only because she spent more than was available in her checking account.

5

Blahut nonetheless argues that the Deposit Agreement is procedurally unconscionable. She begins by saying the agreement is adhesive. But, as we have noted, the Illinois Supreme Court has specifically rejected the notion that non-negotiable, fine-print contracts presented to unsophisticated consumers are procedurally unconscionable, recognizing that such contracts are "a fact of modern life." *Kinkel*, 857 N.E.2d at 266. Blahut also asserts that the Deposit Agreement does not adequately disclose that customers could opt-out of overdraft procedures. However, she never explains how inadequate disclosure of a right *favoring the consumer* could make a contract procedurally unconscionable when the essence of unconscionability is the enforcement of hidden or coerced terms *detrimental to the customer*. Nor does she cite any Illinois authorities that find procedural unconscionability because a contract does not disclose pro-customer rights. Finally, Blahut speculates that customers could not shop around for more favorable terms. As already noted, however, a document attached to Blahut's own complaint belies that speculation by stating that "at least one large bank and a number of smaller institutions" did not have the overdraft policies challenged here. Am. Compl., Ex. D at 10.

Blahut further maintains that the Deposit Agreement is substantively unconscionable. She says that the agreement allowed Harris to re-order transactions to maximize overdraft fees, that the fees bear no reasonable relationship to costs or risks of the services provided, and that Harris's policies negate the reasonable expectations of customers. But, as we have shown, *Saunders* considered nearly identical allegations about a supposedly oppressive overdraft policy and had no trouble ruling that such allegations did not state an unconscionability claim. 662 N.E.2d at 608-10.[2] Blahut also asserts that customers cannot reasonably avoid the complained-of overdraft fees. That assertion is not remotely plausible; customers can (and do) completely avoid such fees by keeping enough money in their checking accounts to cover their purchases. Finally, Blahut muses that no reasonable person would have given Harris discretion to reorder transactions from highest to lowest amount. But that notion cannot be squared with the fact that bank customers have in fact agreed to high-to-low posting in contracts that courts have found to fully disclose that practice. *See Hassler v. Sovereign Bank*, 374 F. App'x 341 (3d Cir. 2010).

---

[2] *Saunders* also refutes Blahut's passing assertion (citing a case decided under Florida law) that dismissal is inappropriate because the unconscionability inquiry is a factual one. *Saunders* upheld the dismissal of an unconscionability claim as a matter of law. 662 N.E.2d at 611.

6

One more point deserves mention. High-to-low posting of debit card transactions can hardly be deemed unconscionable when Illinois law allows banks to post high-to-low in order to maximize profits. *Hill*, 768 N.E.2d at 326-27. And that is especially so when federal regulators have affirmatively declined to outlaw the practice and instead have endorsed the UCC's explanation for why banks should have posting-order discretion. 74 Fed. Reg. 5498, 5547-48 (Jan. 29, 2009). Blahut's unconscionability claim should be dismissed.

### III. The Complaint Fails to State a Claim for Conversion.

The motion to dismiss demonstrated that Blahut's conversion claim fails because she did not allege any demand for possession of her overdraft fee payments and Harris had clear authority to assume control over those payments. Blahut's efforts to sidestep those fatal defects are to no avail.

Blahut argues that her general allegation that conditions precedent have occurred or been performed or waived saves her from pleading that she made the demand for possession required for a conversion claim. *See* Am. Compl. ¶ 82. But none of the cases she cites for that proposition involved a conversion claim or a demand requirement. *Sara Lee Corp. v. Litton Indus. Automation Sys., Inc.*, No. 91 C 0971, 1992 WL 22693, at *2 (N.D. Ill. Feb. 6, 1992) (contract claim dismissed despite general allegation); *Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) (contract claim dismissed); *Bednarcik v. Titan Am. LLC*, No. 08-81534-CIV, 2009 WL 1684642, at *2 (S.D. Fla. June 16, 2009) (federal civil rights claim not dismissed). And if Blahut can cure her deficient pleading on the subject as easily as she says she can, then she should not be permitted to keep Harris in the dark about the circumstances of her (unalleged) demand.

Blahut insists that she can make the necessary showing that Harris wrongfully and without authorization assumed control over her property even though the Deposit Agreement expressly authorized Harris to charge overdraft fees and deduct them from her account. *See* Am. Compl., Ex. A at 2, 7. Blahut rests her argument on this Court's statement in the First Tranche cases that the allegations of bad faith and unconscionability made it possible that the First Tranche defendants could not rely on their contractual discretion to post transactions from highest to lowest amount. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323. But, as we have explained, the *Hill* and *Saunders* decisions establish that Blahut's allegations of bad faith and unconscionability are meritless under Illinois law. *See supra* Parts I, II. And Blahut's

7

efforts to distinguish those decisions—because she complains about *debit card* overdraft fees and supposedly lacked banking alternatives—fail for reasons we have already noted. *See id.*[3] The conversion claim should be dismissed.

### IV. Blahhut's Unjust Enrichment Claim Should Be Dismissed.

The dismissal motion showed that Blahut cannot claim unjust enrichment because she alleges that the parties had an express contract and because Harris did not act unjustly in retaining the overdraft fees that Blahut paid. Blahut fails to rebut either ground for dismissal.

Blahut argues that her allegations about the parties' express contract are not fatal to her unjust enrichment claim because federal law entitles her to plead in the alternative. But, as the very decision cited by Blahut explains, a plaintiff seeking to plead breach of contract and unjust enrichment in the alternative must actually include in the complaint language like "in the alternative" or "if there is no enforceable contract" that makes clear that the plaintiff is pleading in the alternative. *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008). Plus, a plaintiff may not incorporate any express contract allegations into the unjust enrichment count. *Id.*

Blahut's complaint contains no language that even suggests alternative pleading. And the unjust enrichment count expressly incorporates numerous paragraphs of the complaint that rely on or otherwise refer to the express contract between the parties. Am. Compl. ¶¶ 32-36 (describing terms of "account holder agreements"); *id.* ¶¶ 38-39, 49, 51 (claiming violations of Deposit Agreement). Those deficiencies warrant dismissal. *See Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 713 (N.D. Ill. 2007) (dismissing where unjust enrichment count incorporated contract allegations); *Purizer Corp. v. Battelle Mem'l Inst.*, No. 01 C 6360, 2002 WL 22014, at *5 (N.D. Ill. Jan. 7, 2002) (dismissing where no language pleaded unjust enrichment in the alternative).

Blahut also contends that she has adequately pleaded unjust retention of overdraft fee payments by alleging that Harris obtained those payments by resequencing debit card transactions in bad faith. We have already shown that, under Illinois law, a bank does not act in bad faith when it resequences checking account transactions, even if the bank's motive is to

---

[3] In passing, Blahut also says that *Saunders* may have been overruled. But nothing about the *unconscionability* ruling in *Saunders* has been overruled, or even questioned. *See Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (*Saunders* stated factors relevant to *Consumer Fraud Act unfairness claim* conjunctively, when they are disjunctive).

8

maximize overdraft fees. *See supra* Part I; *Hill*, 768 N.E.2d at 326-27. That fact, too, calls for dismissal of Blahut's unjust enrichment claim.

## V. Illinois Precedents Foreclose Blahut's ICFA Claim.

Harris's dismissal motion demonstrated that, under *Hill*, *Saunders*, and a host of other Illinois precedents, Blahut's allegations do not state a claim for violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). Blahut urges the Court to ignore the controlling Illinois precedents and allow her to proceed on her defective ICFA allegations. There is no basis for doing so.

Blahut argues that the Court's order denying dismissal in the First Tranche cases determined that allegations similar to hers state a claim for unfairness under the ICFA. That order, however, addressed statutory claims under the laws of eight different states and did not discuss the specifics of the ICFA or the relevant Illinois precedents cited here. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1325-26. The *Saunders* decision, in particular, shows that Blahut has no unfairness claim. In *Saunders*, the court ruled that a plaintiff challenging overdraft policies that turned a single $4.61 overdraft into $240 in overdraft fees did not have a viable unfairness claim because the plaintiff "had control over whether she would be assessed an overdraft fee," she "was free to select another [b]ank," and her bank "provided [her] with all of the information necessary to make a meaningful choice in selecting banks." 662 N.E.2d at 608-09.

The same is true here. Blahut could have avoided all overdraft fees if she had not spent more than was available in her checking account. One of the documents attached to her own complaint shows that she could have chosen a different bank with different overdraft policies. Am. Compl., Ex. D at 10 ("at least one large bank and a number of smaller institutions continue to decline debit card transactions that would otherwise result in an overdraft"). And Harris informed Blahut of its overdraft and posting-order policies through both Blahut's Deposit Agreement (which disclosed when Harris would charge an overdraft fee and that Harris had discretion to post items in any order) and Blahut's account statements (which, according to the complaint, allowed Blahut to determine that Harris posted debit card transactions high to low). Am. Compl., Ex. A at 2; Am. Compl. ¶ 71.

Blahut says that the Illinois Supreme Court has "rejected" *Saunders*'s view of unfairness under the ICFA. In reality, the Illinois Supreme Court merely clarified that although *Saunders*

9

suggested that a plaintiff had to establish all three factors used to judge unfairness under the ICFA, a plaintiff can prevail by proving any one of the factors to a greater degree. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002). The Illinois Supreme Court did not remotely question the dismissal ruling in *Saunders* or the reasons for that ruling. In fact, the *Robinson* court invoked similar reasons to affirm dismissal of an ICFA unfairness claim challenging car lease charges that penalized the plaintiffs: the plaintiffs were not coerced, they had reasonable alternatives, and the charges were not oppressively excessive. *Id.* at 961-63. *Saunders* remains good law.

Blahut also contends that she has adequately pleaded a deceptive omission claim under the ICFA. But Blahut ignores that *Hill* rejected a nearly identical claim about undisclosed transaction posting order policies because "[f]ederal law regulates what banks must disclose about account fees," "federal law does not require banks to disclose . . . the posting order of checks and other items," and "it is the policy in Illinois not to extend disclosure requirements beyond what is mandated by federal law." 768 N.E.2d at 327-28. Blahut simply repeats her refrain that *Hill* is irrelevant to debit card transactions. We have shown why that is not so, and there is absolutely nothing about *Hill*'s ruling on posting order disclosures that suggests that debit card transactions should be treated differently, especially when *Hill* expressly refers to disclosure of "the posting order of checks *and other items*." *Id.* at 328.

In any event, Blahut says nothing to show that her complaint pleads the allegedly deceptive omissions with the detail required by Rule 9(b). Blahut does not point to any allegation regarding whether she saw a communication that deceptively omitted details regarding Harris's overdraft policies, when she saw such a communication, or even whether she was unaware of the allegedly secret overdraft policies when she was overdrawing her account. Without such allegations, Blahhut has not pleaded the "actual deception" necessary to state an ICFA omission claim. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) (unless plaintiff saw communication, no actionable omission); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861-63 (Ill. 2005) (no actionable omission where plaintiff aware of hidden information); *Ciszewski v. Denny's Corp.*, No. 09 C 5355, 2010 WL 2220584, at *1-*2 (N.D. Ill. June 2, 2010) (dismissing ICFA omission claim for failure to satisfy Rule 9(b)).[4]

---

[4] The case Blahut cites on this issue—*Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847 (N.D. Ill. 2006)—is not to the contrary. *Muehlbauer* stressed that the plaintiff alleged he was not

10

**VI.     Blahut's Claims Are Barred by the Voluntary Payment Doctrine.**

Harris's dismissal motion showed that Illinois's voluntary payment doctrine requires dismissal of Blahut's claims because Blahut paid without protest the overdraft fees about which she now complains. Blahut responds that those fees were not voluntarily paid, that she lacked full knowledge of the relevant facts, and that the doctrine should not apply to her ICFA claim. Illinois precedents reject each of Blahut's arguments.

Blahut first contends that she did not pay the overdraft fees, claiming instead that Harris took the fees from her. Putting aside that her complaint says that she did "pay" the fees (Am. Compl. ¶ 79), the Illinois Supreme Court has ruled that the voluntary payment doctrine applies to fees that a defendant deducts from funds owed or belonging to a plaintiff. *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155, 1174-75 (Ill. 2005). And Blahut expressly agreed to "pay" overdraft fees by allowing Harris to "deduct" any such fees from her account. Am. Compl., Ex. A at 7.

Blahut also asks for a chance to explore whether her payments were involuntary because a failure to pay overdraft fees—according to her own speculation—might have led to additional fees, an account freeze, collection efforts, or reporting of the delinquency to credit reporting agencies or other banks. There are two problems with these hypothetical adverse consequences. First, none of them are pleaded in the complaint. Blahut's hypothesized consequences therefore cannot save the complaint from dismissal. *See Preyer v. McNesby*, No. 3:08cv247, 2009 WL 1605537, at *1 n.4 (N.D. Fla. June 5, 2009) (refusing to consider new allegations in response to dismissal motion); *Walker v. City of Orlando*, No. 6:07-cv-651, 2007 WL 1839431, at *5 (M.D. Fla. June 26, 2007) (same). Second, Illinois courts have rejected involuntariness claims based on nearly identical speculation about adverse consequences. *Harris v. ChartOne*, 841 N.E.2d 1028, 1033 (Ill. App. Ct. 2005); *Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1333-34 (Ill. App. Ct. 1995). In the *Smith* decision—which Blahut herself surprisingly cites—the court ruled that speculative allegations about how a failure to pay cable TV charges could lead to a denial of service, a suit to collect the unpaid charges, or damages to the plaintiffs' credit did not preclude dismissal under the voluntary payment doctrine. 658 N.E.2d at 1331-34. The *Smith* court

---

aware of the undisclosed vehicle defect at issue and would not have bought the vehicle had he been. *Id.* at 869. Blahut makes no similar allegations here. And to the extent that *Muehlbauer* suggested that plaintiffs have a lesser burden to show actual deception when they claim an omission rather than a misrepresentation, *De Bouse*, 922 N.E.2d at 316, rejects that distinction.

11

explained that dismissal was appropriate because the plaintiffs did not allege that they had actually been threatened with those consequences or that they had notified the defendant of their objection and given it a chance to resolve the objection. *Id.* at 1333-34. Blahut likewise makes neither sort of allegation. Illinois law thus does not allow her to claim involuntary payment.

Blahut further argues that she was unaware that Harris was posting her debit card transactions from highest to lowest amount and that she was incurring additional overdraft fees as a result. To support that "mistake of fact" argument, Blahut says that her complaint alleges that she lacked knowledge of those relevant facts. In reality, her complaint alleges nothing of the sort. The complaint paragraphs that she cites describe Harris's alleged conduct, not Blahut's knowledge. Am. Compl. ¶¶ 38-58. In fact, her complaint shows that the account statements she received from Harris allowed her to determine the order in which Harris posted her debit card transactions and the effect of that posting order on her overdraft fees. *Id.* ¶ 71. Thus, Blahut's own complaint establishes that any (unalleged) belief that Harris posted debit card transactions in some order other than high-to-low was the product of Blahut's failure to investigate the factual basis for her overdraft fees. Under Illinois law, a mistake of fact resulting from a failure to investigate the basis of known charges does not save a claim from the voluntary payment doctrine. *See Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 823-24 (7th Cir. 2010) ("It is no exception to the voluntary-payment doctrine when the plaintiff makes no effort to ascertain the factual basis of the charge but pays it anyway."); *Harris*, 841 N.E.2d at 1032-33 (same).

Finally, Blahut urges this Court to rule that applying the voluntary payment doctrine to her ICFA claim violates Illinois public policy. Illinois courts, however, have expressly ruled that the voluntary payment doctrine is a valid ground for dismissing ICFA claims. *Smith*, 658 N.E.2d at 1334 n.8, 1336-37; *Jenkins v. Concorde Acceptance Corp.*, 802 N.E.2d 1270, 1277 n.1, 1278 (Ill. App. Ct. 2003). And Illinois courts have rejected "public policy" challenges to application of the voluntary payment doctrine. *King*, 828 N.E.2d at 1173-74; *Jenkins*, 802 N.E.2d at 1278. Those precedents allow no room for any ruling that exempts Blahut's ICFA claim from the voluntary payment doctrine.[5]

---

[5] Nor is there anything to the contrary in the cases addressing Illinois law that Blahut cites. *Gonzalez v. Codilis & Assocs., P.C.*, No. 03 C 2883, 2004 WL 719264, at *3-*4 (N.D. Ill. Mar. 31, 2004), merely holds that a federal statutory cause of action preempts a state-law voluntary payment defense. *Ramirez v. Smart Corp.*, 863 N.E.2d 800, 809-10 (Ill. App. Ct. 2007), ruled that the voluntary payment doctrine did not apply because it violated the substantive policy of

**VII.     Blahut Failed To Dispute Overdraft Charges In A Timely Fashion.**

The motion to dismiss demonstrated that all of Blahut's claims should be dismissed because she did not dispute the overdraft fees at issue within the 60-day period specified by the Deposit Agreement for notifying Harris of "improper charges" and any other "account problem." *See* Am. Compl., Ex. A at 9.  Blahut invents a host of reasons for why her claims supposedly should not be subject to the Deposit Agreement's notice provision.  None have any merit.

First, Blahut claims that Harris would have to admit that the overdraft fees she paid were "improper" before the notice provision would apply.  That is absurd.  Blahut premises her entire complaint on the notion that the fees were improper.  *See* Am. Compl. ¶¶ 79-80 (describing "Harris Bank's improper overdraft fees").  If the charges were proper, then Blahut's claims are meritless and should be dismissed.  If they were improper, then Blahut was required to provide notice.  Her attempt to obfuscate this issue is telling.

Second, Blahut conjures a distinction that appears nowhere in the text of the Deposit Agreement by claiming (at 24) that the notice provision does not apply to Harris's "own purposeful actions."  But there is no such limitation in the provision, which expressly encompasses "any . . . account problem, including . . . improper charges."  Am. Compl., Ex. A at 9.  Blahut thus proposes that the Court infer that limitation from the provision's second paragraph, which disclaims liability for "errors, irregularities, unauthorized signatures, or alterations" in the absence of "the required notice."  *Id.*  The reference to "the required notice," however, makes clear that the "errors" and "irregularities" for which Harris is not liable are all of the "account problem[s]" for which notice is required, including "improper charges."  *Id.*  Blahut's distinction is nothing more than an inappropriate attempt to insert a condition that is nowhere in the text of the notice provision.  *See Gallagher v. Lenart*, 854 N.E.2d 800, 807 (Ill. App. Ct. 2006) ("a court cannot alter, change or modify the existing terms of a contract or add new terms or conditions").

Third, Blahut invokes the maxim of *expressio unius est exclusio alterius*, which instructs that "when specific items are listed without any more general or inclusive terms, other items, although similar in kind, are excluded."  *Dugan v. Smerwick Sewerage Co.*, No. 95 C 3223, 1996 WL 535306, at *5 (N.D. Ill. Sept. 18, 1996).  In this case, the doctrine could not imply the

---

Illinois's Hospital Records Act.  *Contrast Harris*, 841 N.E.2d at 1032-33 (dismissing similar claim under voluntary payment doctrine).  Blahut neither brings a federal cause of action nor invokes any substantive policy of an Illinois banking statute.

13

exclusion of the overdraft fees at issue because the notice provision *expressly* lists "improper charges" among the "account problem[s]" of which Blahut was required to provide notice. Am. Compl., Ex. A at 9. Plus, the notice provision itself abandons the *expressio unius* principle by using general and inclusive terms in requiring notification of "any other account problem, including" the ones listed. *Id.*; *see Dugan*, 1996 WL 535306, at *5; *Greyhound Lines, Inc. v. City of Chicago*, 321 N.E.2d 293, 302 (Ill. App. Ct. 1974) ("include" is "a term of enlargement," not limitation).

Finally, Blahut resorts to the *contra proferentem* maxim. Illinois courts have repeatedly referred to the doctrine as "at best a secondary rule of interpretation, a last resort which may be invoked after all the ordinary interpretative guides have been exhausted." *Bunge Corp. v. Northern Trust Co.*, 623 N.E.2d 785, 791 (Ill. App. Ct. 1993). Here, the phrase "improper charges" unambiguously covers the overdraft fees about which Blahut complains. The overdraft fees were undisputedly "charges," and Blahut expressly alleges that they were "improper." *See* Am. Compl. ¶¶ 79-80. As Blahut failed to provide the required notice of her current objections to the overdraft fees she paid, all of her claims should be dismissed.

## CONCLUSION

For the foregoing reasons and those stated in Harris's motion to dismiss, the Court should dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully Submitted,

Dated: March 14, 2011             By: *s/Benjamine Reid*
                                       Benjamine Reid (FL Bar # 183522)
                                       Email: breid@carltonfields.com
                                       Aaron S. Weiss (FL Bar # 48813)
                                       Email: aweiss@carltonfields.com
                                       **CARLTON FIELDS, P.A.**
                                       100 Southeast Second Street, Suite 4200
                                       Miami, Florida 33131
                                       Telephone No. (305) 530-0050
                                       Facsimile No. (305) 530-0055

                                       ---and---

        David D. Pope (Admitted Pro Hac Vice)
        Email: dpope@mayerbrown.com
        Debra Bogo-Ernst (Admitted Pro Hac Vice)
        Email: dernst@mayerbrown.com
        Lucia Nale (Admitted Pro Hac Vice)
        Email: lnale@mayerbrown.com
        Joshua Yount (Admitted Pro Hac Vice)
        Email: jyount@mayerbrown.com
        **MAYER BROWN LLP**
        71 South Wacher Drive
        Chicago, Illinois 60606
        Telephone: No. (312) 782-0600
        Facsimile No. (312) 701-7711

        *Attorneys for Defendant Harris, N.A.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized matter for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  *s/Aaron S. Weiss*
                                                Aaron S. Weiss

## **SERVICE LIST**

*In Re: Checking Account Overdraft Litigation*
Case No. 1:09-MD-02036-JLK

This Document Relates to:
*Blahut v. Harris, N.A.*
S.D. Fla. Case No. 1:10-cv-21821-JLK
N.D. Ill. Case No. 1:10-cv-2543


Jeffrey M. Ostrow
Email: ostrow@kolawyers.com
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG KEECHL**
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*Counsel for Plaintiffs and the Proposed Classes*

Robert Cecil Gilbert
Email:  bobby@alterslaw.com
**Robert Cecil Gilbert**
Email: rcg@grossmanroth.com
Grossman Roth, P.A.
2525 Ponce de Leon Boulevard, Suite 1150
Miami, FL 33134
Telephone: (888) 296-1681
Facsimile:  (305) 285-1668
*Coordinating Counsel for Plaintiff in MDL 2036*