UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Harris v. Associated Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-22948-JLK
W.D. Wis. Case No. 3:10-cv-182-BBC

REPLY IN SUPPORT OF ASSOCIATED BANK'S
RULE 12(b)(6) MOTION TO DISMISS

18452070.1

Defendant Associated Bank, N.A. ("Associated") moved to dismiss the complaint of plaintiffs Pamela Harris ("Harris"), Edith Whitehead ("Whitehead"), and Robert and Charlene Selvig ("the Selvigs") because settled Illinois, Minnesota, and Wisconsin law establishes that each of their causes of action is completely foreclosed, inadequately pleaded, or both. [DE # 1080]  In their response brief [DE # 1197], plaintiffs try to sidestep that controlling law by insisting that this Court has already rejected Associated's dismissal arguments, that Associated's Illinois, Minnesota, and Wisconsin authorities are distinguishable, and that decisions applying the law of other states govern.  At the same time, plaintiffs pretend that the complaint contains allegations that it omits, and omits allegations that it contains.  Plaintiffs' arguments are meritless.  Each of their claims should be dismissed.[1]

Before we detail all of the reasons why that is so, we must address plaintiffs' repeated, yet mistaken, claim that the Court has rejected Associated's dismissal arguments.  In deciding the First Tranche omnibus dismissal motion, the Court applied a kind of general common law because the parties did not invoke the specifics of any particular state's law.  *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1314 (S.D. Fla. 2010).  Here, by contrast, Associated argues that the specifics of Illinois, Minnesota, and Wisconsin law are precisely what require dismissal.  And, of course, the *Erie* doctrine dictates that a federal court sitting in diversity must apply the appropriate state's law as determined by courts of that state.  *Flintkote Co. v. Dravo Corp.*, 678 F.2d 942, 945 (11th Cir. 1982).[2]

### I. None Of The Plaintiffs States A Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing.

The motion to dismiss showed that plaintiffs have no claim for breach of the implied convenant of good faith and fair dealing because the law in Illinois, Minnesota, and Wisconsin allows a bank to post checking account transactions from highest to lowest amount.  In response,

---

[1] Associated also maintains that federal law preempts plaintiffs' claims for the reasons stated in the First Tranche omnibus motion to dismiss. [DE # 217].  Associated recognizes, however, that the Court has rejected those preemption arguments, so Associated has not reiterated them.  At the same time, Associated reserves its right to argue for dismissal on preemption grounds.

[2] Moreover, when a federal court lacks adequate guidance to predict how a state's highest court would decide an issue, the appropriate response is to choose "the interpretation that restricts liability, rather than expands it."  *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 253 (3d Cir. 2010).  Alternatively, the Eleventh Circuit has instructed that "[w]here there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court."  *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1133 (11th Cir. 2010).

plaintiffs principally argue that resequencing debit card transactions to maximize overdraft fees is not a good faith exercise of Associated's discretion to choose a posting order for checking account transactions.[3] That argument is unavailing for two reasons.

First, Illinois, Minnesota, and Wisconsin have enacted UCC provisions that give banks broad discretion to charge covered transactions to a customer's account "in any order" and "in any sequence." 810 ILCS 5/4-303(b), 5/4A-504(a); Wis. Stat. §§ 404.303(2), 410.504(1); Minn. Stat. §§ 336.4-303(b), 336.4A-504(a). Plaintiffs think that fact does not matter because those UCC provisions do not expressly apply to debit card transactions and such transactions (in their view) are fundamentally different from checks. Plaintiffs invoke this Court's order denying dismissal in the First Tranche cases, which opined that the "instantaneous nature" of debit card transactions precludes the same kind of posting order discretion available for check transactions. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316. That order, however, did not analyze whether the relevant UCC provisions or any other source of Illinois, Minnesota, or Wisconsin law supported the Court's distinction between debit card and check transactions.

Such an analysis shows that the official UCC comments do not even mention the delayed authorization and processing of checks in explaining why banks have discretion to post transactions from high to low. Instead, that commentary identifies considerations that are equally applicable to debit card transactions: "the impossibility of stating a rule that would be fair in all cases"; "the almost infinite number of combinations of large and small checks in relation to the available balance"; and the fact that "the drawer has drawn all the checks[,] should have funds available to meet all of them[,] and has no basis for urging one should be paid before another." UCC § 4-303 cmt. 7.

What is more, the UCC provisions granting banks posting discretion do in fact apply to some transactions that are authorized and processed "instantaneously." For instance, Article 4A and its express grant of unfettered posting discretion applies to "instantaneously" authorized funds transfers from business accounts. 3 James J. White & Robert S. Summers, *Uniform*

---

[3] Plaintiffs also assert that Associated had no authority to post debit card transactions from highest to lowest amount because the Deposit Agreement does not address the issue. Not surprisingly, plaintiffs do not cite any authority for the misguided notion that contractual silence about posting order is the same as a prohibition on high-to-low posting. Also incorrect is plaintiffs' assertion that factual issues preclude dismissal. The most relevant precedents reject analogous implied covenant claims as a matter of law. *See infra* pp. 3-4.

*Commercial Code* § 22-3, at 8-25 (5th ed. 2002); 810 ILCS 5/4A-504(a); Wis. Stat. § 410.504(1); Minn. Stat. § 336.4A-504(a). It is undisputed, moreover, that the only reason the UCC does not expressly govern debit card transactions is that the drafters thought federal law preempted state law regulation of those transactions. *See* Transcript of Proceedings, Nat'l Conf. of Comm'rs on Uniform State Laws, UCC Arts. 3, 4, & 4A, at 141:16-142:11 (1987). The drafters even commented that "a court might apply appropriate principles from Article 4A" to any part of a funds transfer not subject to federal law. UCC § 4A-108 cmt. 1.

Second, the relevant Illinois, Minnesota, and Wisconsin precedents have rejected the theories behind plaintiffs' implied covenant claims. That is true in spades for Whitehead's claim under Illinois law. In *Hill v. St. Paul Fed. Bank for Sav.*, 768 N.E.2d 322 (Ill. App. Ct. 2002), the Illinois Appellate Court affirmed dismissal of an implied covenant claim nearly identical to Whitehead's. *Hill* held that Illinois law allows a bank to sequence checking account transactions from highest to lowest amount even when the applicable deposit agreement says nothing about posting order and the bank's motive is to maximize its profits. *Id.* at 327. Plaintiffs try to dodge *Hill* by saying that the Court already rejected the case because it involved the posting order for paper checks. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316. But the First Tranche dismissal ruling does not discuss *Hill*'s reasoning—which tracks the reasoning behind the UCC provisions granting posting order discretion (*Hill*, 768 N.E.2d at 325)—nor does it explain how that reasoning is consistent with the Court's distinction between checks and debit card transactions. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1315-16.

Controlling Wisconsin precedent likewise forecloses Harris's implied covenant claim. In *Schaller v. Marine Nat'l Bank of Neenah*, 388 N.W.2d 645 (Wis. Ct. App. 1986), the Wisconsin Court of Appeals rejected a claim that the defendant bank breached the implied covenant by exercising its discretion under the UCC to refuse payment of an overdraft—even though the bank had previously honored such overdrafts and the customer agreement was silent on the subject. 388 N.W.2d at 647-52. To the *Schaller* court, it was dispositive that relevant UCC principles allowed a bank to dishonor overdrafts without notice, the applicable customer agreement did not impose any contrary duty, and the plaintiffs could have avoided overdrafts by monitoring the status of their account. *Id.* at 648-49, 651. The same is true here. The UCC supports posting order discretion. Wis. Stat. §§ 404.303(2), 410.504(1). The Deposit Agreement does not require any particular posting order. Am. Compl., Ex. A. And Harris could have avoided all overdrafts

by monitoring her deposits and purchases. On that last point, plaintiffs try to distinguish *Schaller*, listing several supposed obstacles to monitoring Associated checking account balances. But the complaint does not allege that Harris actually encountered any of those obstacles. *See* Am. Compl. ¶¶ 45, 49-51, 69-74. Nor do plaintiffs explain how any customer who carefully tracked her deposits and purchases would be unable to avoid overdrafts.

The Selvigs' implied covenant claims do not fare any better under Minnesota case law. Minnesota state courts have limited implied covenant claims to unjustifiable hindrance of the plaintiff's performance of a contract. *See Midwest Sports Mtkg., Inc. v. Hillerich & Bradsby of Can., Ltd.*, 552 N.W.2d 254, 268 (Minn. Ct. App. 1996). Trying to meet that demanding standard, plaintiffs say (at 4) that Associated hindered the ability of customers to engage in "debit services" by depleting their accounts through overdraft charges. But the complaint belies any such unjustifiable hindrance by alleging that Associated's overdraft policies actually allowed customers to make more debit card purchases, not fewer. Am. Compl. ¶ 52.[4]

Notwithstanding the Illinois, Minnesota, and Wisconsin precedents favoring dismissal, plaintiffs urge the Court to follow a pair of federal-court implied covenant decisions under Georgia and California law. *See White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008); *Gutierrez v. Wells Fargo & Co.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009). Those decisions, however, have no bearing on Illinois, Minnesota, or Wisconsin law, and they actually undermine any argument for distinguishing between debit card and check transactions.

*White* ruled that a bank could breach the implied covenant of good faith and fair dealing *under Georgia law* by accumulating transactions—of any sort—over several days and then posting them in high-to-low order so as to maximize overdraft fees. 563 F. Supp. 2d at 1363-66. *Gutierrez* likewise ruled that neither California's version of UCC § 4-303 nor California common law permits a bank to post either checks or debit card transactions in any order it pleases. 622 F. Supp. 2d at 951-54.[5] As we have shown, Illinois, Wisconsin, and Minnesota

---

[4] As for the broader duty to exercise contractual discretion in good faith that some Minnesota *federal* courts have endorsed, one of the very cases cited by plaintiffs holds that a defendant's exercise of pricing discretion to maximize its profits does not breach the implied covenant when —like here—the exercise of discretion is not dishonest or malicious. *BP Prods. N. Am., Inc. v. Twin Cities Stores, Inc.*, 534 F. Supp. 2d 959, 967-68 (D. Minn. 2007).

[5] Crucially, *Gutierrez* relies on two California-specific authorities: (1) a comment to § 4-303 inserted by the California legislature specifying that a bank may not exercise its posting discretion in order to increase the amount of returned check fees; and (2) a California Supreme

4

precedents have rejected the central idea behind *White* and *Gutierrez*, that the duty of good faith and fair dealing restricts a bank's discretion to set overdraft policies of the sort at issue here. *See supra* pp. 3-4.

## II.   None Of The Plaintiffs States An Unconscionability Claim.

Associated's dismissal motion showed that nothing alleged about the Deposit Agreement stated a claim for unconscionability under Illinois, Minnesota, or Wisconsin law because the challenged overdraft policies are consistent with state law and plaintiffs were free to choose another bank with different policies. Plaintiffs insist that they have adequately stated an unconscionability claim. None of their arguments, however, have any merit.

Plaintiffs first argue that this Court rejected Associated's arguments in denying dismissal in the First Tranche cases. But the Court was not applying Illinois, Minnesota, or Wisconsin law. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319-20. That much is clear from the Court's ruling that an adhesive contract established procedural unconscionability (*id.*), which is an idea that Illinois, Minnesota, and Wisconsin authorities have rejected. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 266 (Ill. 2006); *Deminsky v. Arlington Plastics Mach.*, 657 N.W.2d 411, 423-24 (Wis. 2003); *Vierkant v. AMCO Ins. Co.*, 543 N.W.2d 117, 120 (Minn. Ct. App. 1996).

Those same authorities go a long way toward refuting plaintiffs' further argument that they have pleaded procedural unconscionability. Plaintiffs primarily rely on their allegations that the Deposit Agreement is a non-negotiable, fine-print contract of adhesion between parties of unequal sophistication and bargaining power. As the Illinois Supreme Court has explained, such contracts "are a fact of modern life" and "cannot reasonably be said" to be "so procedurally unconscionable as to be unenforceable." *Kinkel*, 857 N.E.2d at 266. Thus, even if an adhesive contract might be relevant in judging procedural unconscionability, some other element of coercion or deception must be present. *See id.*; *Deminsky*, 657 N.W.2d at 423-24; *Vierkant*, 543 N.W.2d at 120. However, the complaint itself refutes the only other factor that plaintiffs invoke in arguing for procedural unconscionability: the supposed inability to shop around for a different bank with different overdraft policies. A document attached to the complaint acknowledges that "at least one large bank and a number of smaller institutions" never adopted the overdraft policy

---

Court decision consistent with that comment. *Id.* at 952-53. In telling contrast, the Illinois, Wisconsin, and Minnesota legislatures have not added any similar gloss to § 4-303. 810 ILCS 5/4-303(b); Wis. Stat. § 404.303(2); Minn. Stat. § 336.4-303(b).

5

about which plaintiffs complain and instead simply "decline debit card transactions that would otherwise result in an overdraft." Am. Compl., Ex. D at 10.

Plaintiffs also contend that they have adequately pleaded that the challenged overdraft fee policies are substantively unconscionable for several reasons. They say that the absence of any limitation on Associated's discretion to sequence debit card transactions from high to low negates customer expectations and is unreasonably favorable to Associated. But, as we have shown, UCC provisions adopted in Illinois, Minnesota, and Wisconsin give banks the same broad posting order discretion over analogous transactions. *See supra* pp. 2-3. Similarly, plaintiffs' claim that no reasonable person would grant his or her bank such discretion founders on the judicially established fact that people have done so even when the objected-to overdraft practices are fully disclosed. *See Hassler v. Sovereign Bank*, 374 F. App'x 341 (3d Cir. 2010).[6] As for the assertion that Associated charged excessively large overdraft fees unrelated to its costs, plaintiffs do not cite any Illinois, Minnesota, or Wisconsin authorities that support their attack on the concept behind flat fees. *See Kauffman Stewart*, 589 N.W.2d at 503 (rejecting challenge to flat fee); *Saunders v. Michigan Ave. Nat'l Bank*, 662 N.E.2d 602, 611 (Ill. App. Ct. 1996) (rejecting challenge to overdraft fees). Furthermore, the implausible notion that customers cannot avoid Associated's overdraft fees is refuted by the fact that customers easily can (and do) avoid overdraft fees by spending less than the amount available in their accounts. *See Schaller*, 388 N.W.2d at 651 (overdraft fees avoidable).

Finally, citing a case decided under Florida law, plaintiffs assert that dismissal is not appropriate because an unconscionability inquiry is fact intensive. Illinois, Minnesota, and Wisconsin precedents have rejected unconscionability claims as a matter of law. *Kauffman Stewart*, 589 N.W.2d at 502-03; *Saunders*, 662 N.E.2d at 611; *Deminsky*, 657 N.W.2d at 423-24. The Court should do the same here.

Indeed, Illinois precedent in particular leaves no room for Whitehead to proceed on her unconscionability claim. In the *Saunders* case, the Illinois Appellate Court affirmed the dismissal of an unconscionability claim challenging a bank's overdraft policies, even though the plaintiff alleged that (a) she incurred 12 overdraft fees totaling $240 as the result of a single

---

[6] Under Minnesota's more circumscribed unconscionability standard, the mere fact that other rational people would have entered the challenged contract defeats any unconscionability claim. *Kauffman Stewart, Inc. v. Weinbrenner Shoe Co.*, 589 N.W.2d 499, 502 (Minn. Ct. App. 1999).

$4.61 overdraft (662 N.E.2d at 605-06); (b) she "could not negotiate the terms concerning the Bank's overdraft policy" (*id.* at 610); (c) "the overdraft fee was in excess of the services rendered" (*id.*); (d) "the Bank had sole discretion in determining whether to assess the charge" (*id.*); (e) "the Bank's policy is inconsistent with her reasonable expectations" (*id.* at 609); (f) "the Bank had an incentive to honor checks" to generate overdraft fees (*id.* at 608); (g) her account agreement "did not define the term 'overdraft'" (*id.*); (h) "the listing of the overdraft charge was buried in several documents" (*id.*); and (i) the account agreement "did not clearly disclose that the $20 [overdraft] charge would be assessed separately" every day (*id.*). The *Saunders* court ruled that unconscionability was absent because the plaintiff "was not intimidated or coerced into accepting the terms" of the account agreement, she "was free to select from a multitude of other Banks with a variety of services and fees," she had documents informing her of the charges for overdrafts, and she had a "role in establishing the [overdraft] charge." *Id.* at 611.[7]

The same is true here. The complaint does not allege any coercion or intimidation. Whitehead could have selected another bank with different overdraft policies. Am. Compl., Ex. D at 10. Whitehead received ample information about Associated's overdraft fees in the Deposit Agreement and accompanying fee disclosures, as well as in the account statements from which the complaint discerns Associated's posting order. Am. Compl. ¶¶ 34-37, 77. And Whitehead had a central role in generating the overdraft fees about which she complains, given that the fees resulted only because she spent more than was available in her checking account.

### III. None Of The Plaintiffs States A Claim For Conversion.

The motion to dismiss established that none of the plaintiffs have a conversion claim because the Deposit Agreement gave Associated authority to charge overdraft fees and deduct the fees from plaintiffs' accounts. *See* Am. Compl., Ex. A at 8. In Illinois, Minnesota, and Wisconsin, a party with authority to take property cannot be liable for converting the property. *Small v. Sussman*, 713 N.E.2d 1216, 1222 (Ill. App. Ct. 1999); *City of Mahtomedi v. One 1995 Chevrolet Blazer*, 609 N.W.2d 913, 915 (Minn. Ct. App. 2000); *Prod. Credit Ass'n of Chippewa Falls v. Equity Coop Livestock Sales Ass'n*, 261 N.W.2d 127, 129-33 (Wis. 1978). Referencing

---

[7] Plaintiffs try to evade *Saunders* by saying that the First Tranche order denying dismissal distinguished the case and that the Illinois Supreme Court overruled the case. Neither claim is true. The Court's order noted that the First Tranche defendants cited *Saunders*, but the order did not address how the plaintiffs' unconscionability claims could survive under *Saunders*. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1319. And the Illinois Supreme Court did not even criticize anything *Saunders* says about *unconscionability*. *See infra* n. 9.

the portion of the First Tranche dismissal ruling that addressed conversion, plaintiffs respond that they can make the necessary showing that Associated wrongfully assumed control over their property because they allege that the overdraft fees were the product of bad faith and unconscionable conduct. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323. But, as we have explained, the relevant authorities establish that plaintiffs' allegations of bad faith and unconscionability are meritless under Illinois, Minnesota, and Wisconsin law. *See supra* Parts I, II. Accordingly, each plaintiff's conversion claim should be dismissed.

Associated also asked that Whitehead's conversion claim be dismissed because she did not make the pre-suit demand that Illinois law requires for a conversion claim. Plaintiffs absurdly say that the complaint serves as the necessary demand. Such a rule, of course, would eliminate any demand requirement and thus cannot be correct. *See Small*, 713 N.E.2d at 1222-23 (requiring pre-suit demand). Plaintiffs also reference an Illinois case noting that an "independent action of conversion" can make a demand unnecessary. *Fortech, L.L.C. v. R.W. Dunteman Co.*, 852 N.E.2d 451, 462 (Ill. App. Ct. 2006). But the "independent actions" described are transfers or uses of the allegedly converted property that make a return of the property impossible. *Id.* Here, there was no such "independent action" and a demand remains necessary because plaintiffs allege that Associated still retains the supposedly converted money. Am. Compl. ¶ 110. Plaintiffs alternatively argue that their general allegation about conditions precedent having occurred or having been performed or waived saves them from pleading that Whitehead made a demand. *See* Am. Compl. ¶ 93. But none of the cases they cite for that proposition involved a conversion claim or a demand requirement.[8] And if plaintiffs can cure Whitehead's deficient pleading on the subject as easily as plaintiffs say they can, then they should not be permitted to keep Associated in the dark regarding the circumstances of Whitehead's (unalleged) demand.

Finally, Associated moved to dismiss the Selvigs' conversion claim because Minnesota law unequivocally forbids conversion claims against a bank over money deposited with the bank on the ground that deposited funds become the property of the bank. *See United Prairie Bank—Mountain Lake v. Haugen Nutrition & Equip., LLC*, 782 N.W.2d 263, 273 (Minn. Ct. App. 2010); *Halla v. Norwest Bank Minn., N.A.*, 601 N.W.2d 449, 453 (Minn. Ct. App. 1999).

---

[8] *See Sara Lee Corp. v. Litton Indus. Automation Sys., Inc.*, 1992 WL 22693, at *2 (N.D. Ill. 1992) (contract claim dismissed despite general allegation); *Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 610 (7th Cir. 1987) (contract claim dismissed); *Bednarcik v. Titan Am. LLC*, 2009 WL 1684642, at *2 (S.D. Fla. 2009) (federal civil rights claim not dismissed).

8

Ignoring the controlling precedent cited by Associated, plaintiffs contend that a section of the Deposit Agreement regarding "Forms of Deposit Account Ownership" makes Associated depositors into owners of the funds in their accounts. *See* Am. Compl., Ex. A at 4. That is wrong. The Minnesota precedents are clear that once funds are deposited, they become the property of the bank "as a matter of law." *Halla*, 601 N.W.2d at 453. Indeed, the U.S. Supreme Court has ruled that the National Bank Act does not allow national banks to treat funds in deposit accounts as the property of the depositor. *Tex. & Pac. Ry. v. Pottorff*, 291 U.S. 245, 254-56 (1934). Accordingly, the Deposit Agreement passages cited by plaintiffs can only be understood to refer to ownership of the creditor rights to deposited funds that all depositors have. And Minnesota law is clear that such rights do not support a conversion claim. *Halla*, 601 N.W.2d at 453-54. Whitehead's conversion claim should be dismissed.

### IV.   None Of The Plaintiffs States A Claim For Unjust Enrichment.

The motion to dismiss showed that the unjust enrichment claim of each plaintiff should be dismissed because the complaint alleges the existence of a valid contract. Plaintiffs respond that they may plead an unjust enrichment claim in the alternative so long as the validity of the Deposit Agreement is in dispute. Two fatal defects defeat that argument.

First, as one of the very decisions cited by plaintiffs explains, a plaintiff seeking to plead breach of contract and unjust enrichment in the alternative must actually include in the complaint language like "in the alternative" or "if there is no enforceable contract" that makes clear that the plaintiff is pleading in the alternative. *Prudential Ins. Co. of Am. v. Clark Consulting, Inc.*, 548 F. Supp. 2d 619, 623 (N.D. Ill. 2008). Plus, a plaintiff may not incorporate any express contract allegations into the unjust enrichment count. *Id.* Here, the complaint contains no language that even suggests alternative pleading, while the unjust enrichment count expressly incorporates numerous paragraphs of the complaint that rely on or otherwise refer to the express contract between the parties. Am. Compl. ¶¶ 34-38 (describing terms of "account holder agreements"); *id.* ¶¶ 39-40, 55, 57 (claiming violations of Deposit Agreement). Those deficiencies warrant dismissal. *See Bucciarelli-Tieger v. Victory Records, Inc.*, 488 F. Supp. 2d 702, 713 (N.D. Ill. 2007) (unjust enrichment count incorporated contract allegations); *Purizer Corp. v. Battelle Mem'l Inst.*, 2002 WL 22014, at *5 (N.D. Ill. 2002) (no alternative pleading language).

Second, there is no dispute that the Deposit Agreement is valid. Although plaintiffs assert that certain provisions of the Deposit Agreement are unconscionable and unenforceable

9

(Am. Compl. ¶ 103), the complaint never alleges that the Deposit Agreement in its entirety is invalid. Dismissal is appropriate when a complaint's allegations establishing a valid contract are undisputed—even if some contract provision is claimed to be unenforceable. *See Meyer v. Laser Vision Inst., LLC*, 714 N.W.2d 223, 230 (Wis. Ct. App. 2006) (dismissing unjust enrichment claim based on allegations regarding contract); *Watson's Props., LLC v. Menard, Inc.*, 2002 WL 1364064, at *3 (Minn. Ct. App. 2002) (same); *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) (same); *Holiday Hospitality Franchising, Inc. v. H-5, Inc.*, 165 F. Supp. 2d 937, 941-42 (D. Minn. 2001) (rejecting unjust enrichment claim even though contractual liquidated damages provision was unenforceable).

Associated also moved to dismiss Whitehead's unjust enrichment claim because, as a matter of law, receiving and retaining her overdraft fees was not unjust. Plaintiffs respond that Associated obtained those fees by resequencing debit card transactions unconscionably and in bad faith. We have already shown that Illinois precedents reject such a conclusion. *See supra* Parts I, II; *Hill*, 768 N.E.2d at 326-27; *Saunders*, 662 N.E.2d at 611. That fact requires dismissal of Whitehead's unjust enrichment claim.

V. **Plaintiffs Do Not State Claims Under The Unfair Trade Practice Laws of Wisconsin, Illinois, Or Minnesota.**

Although plaintiffs concede that Harris's claim under Wisconsin's Deceptive Trade Practices Act should be dismissed, they maintain that Whitehead's and the Selvigs' claims under Illinois and Minnesota law should survive. They are wrong.

*Illinois.* Associated's dismissal motion demonstrated that, under *Hill*, *Saunders*, and a host of other Illinois precedents, plaintiffs' allegations do not state a claim for violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). Plaintiffs urge the Court to ignore the controlling Illinois precedents and allow Whitehead to proceed on the defective ICFA allegations. There is no basis for doing so.

Plaintiffs argue that the Court's First Tranche order denying dismissal ruled that allegations similar to theirs state a claim for unfairness under the ICFA. That ruling, however, addressed statutory claims under the laws of eight different states and did not discuss the specifics of the ICFA or the relevant Illinois precedents cited here. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1325-26. The *Saunders* decision, in particular, shows that Whitehead has no unfairness claim. In *Saunders*, the court ruled that a plaintiff challenging overdraft policies that turned a single $4.61 overdraft into $240 in overdraft fees did not have a viable

unfairness claim because the plaintiff "had control over whether she would be assessed an overdraft fee," she "was free to select another [b]ank," and her bank "provided [her] with all of the information necessary to make a meaningful choice in selecting banks." 662 N.E.2d at 608-09. The same is true here. Whitehead could have avoided overdraft fees by spending less than her available balance. She could have chosen a different bank with different overdraft policies. Am. Compl., Ex. D at 10. And her account statements allowed her to determine how Associated posted debit card transactions. Am. Compl. ¶ 77.[9]

Plaintiffs also maintain that Associated made deceptive statements and omissions that support an ICFA claim. But plaintiffs say nothing to show that the complaint pleads the alleged deception with the detail required by Rule 9(b). Plaintiffs do not cite any allegation regarding whether Whitehead saw a communication deceptively stating or omitting information about Associated's overdraft policies, when she saw such a communication, or even whether she was unaware of the allegedly secret overdraft policies when she was overdrawing her account. Without such allegations, plaintiffs have not pleaded the "actual deception" necessary to state an ICFA deception claim. *De Bouse v. Bayer AG*, 922 N.E.2d 309, 316 (Ill. 2009) (plaintiff never saw communication with omission); *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861-63 (Ill. 2005) (plaintiff aware of hidden information); *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 163-64 (Ill. 2002) (plaintiff never saw deceptive statement); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 594 (Ill. 1996) (plaintiff saw deceptive statement after purchase).

Finally, although plaintiffs' principal ICFA theory is that Associated failed to adequately disclose its posting order, plaintiffs ignore that *Hill* rejected a nearly identical claim about undisclosed transaction posting order policies. *Hill* held that "[f]ederal law regulates what banks must disclose about account fees," "federal law does not require banks to disclose . . . the posting order of checks and other items," and "it is the policy in Illinois not to extend disclosure requirements beyond what is mandated by federal law." 768 N.E.2d at 327-28. Plaintiffs simply repeat their refrain that *Hill* is irrelevant to debit card transactions. We have shown why that is

---

[9] Contrary to plaintiffs' claim, *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951 (Ill. 2002), did not reject *Saunders*'s ICFA ruling. It merely clarified that although *Saunders* suggested a need to establish all three ICFA unfairness factors, proving any one of the factors to a greater degree may be sufficient. *Id.* at 961. *Robinson* did not question the dismissal ruling in *Saunders* or the reasons for it. In fact, *Robinson* invoked similar reasons to affirm dismissal of an ICFA unfairness claim. *Id.* at 961-63. *Saunders* remains good law.

not so, and *Hill*'s ICFA analysis expressly refers to disclosure of "the posting order of checks *and other items*." *Id.* at 328 (emphasis added).

   ***Minnesota.*** Associated moved to dismiss the Selvigs' claim under Minnesota's Prevention of Consumer Fraud Act ("MPCFA") because the complaint does not adequately plead the required causal nexus between Associated's allegedly deceptive conduct and the Selvigs' alleged injuries. Plaintiffs respond that the MPCFA does not require proof of individual reliance and that they have otherwise alleged the necessary causal relationship. Plaintiffs misunderstand Minnesota law and their own allegations.

   While the MPCFA does not invariably require proof of individual reliance, it does require proof of causation. And one of the very cases cited by plaintiffs recognizes that where:

> the plaintiffs allege that their damages were caused by deceptive, misleading, or fraudulent statements or conduct in violation of the [MPCFA], as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes.

*Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001).[10] Thus, when there is no basis to conclude that a plaintiff saw a deceptive statement, acted on it, and was unaware of the truth, the plaintiff has not established causation and has no MPCFA claim. Consequently, plaintiffs' failure to allege that the Selvigs (a) saw a deceptive statement about Associated's overdraft practices, (b) were induced by such a statement to incur an overdraft, and (c) were unaware of Associated's overdraft practices, means that their MPCFA claim should be dismissed. *See Ansari v. NCS Pearson, Inc.*, 2009 WL 2337137, at *9-*10 (D. Minn. 2009) (failure to plead inducement); *Bernstein v. Extendicare Health Servs., Inc.*, 653 F. Supp. 2d 939, 944-45 (D. Minn. 2009) (failure to plead nexus between wrongful conduct and injury). And, contrary to what plaintiffs say, the absence of those vital causation allegations is not remedied by the complaint's allegations about Associated's alleged conduct (Am. Compl. ¶¶ 33, 39-60, 61, 65, 68, 72, 88) or by the separate allegations about the supposed injury to the Selvigs (Am. Compl. ¶¶ 80-87). None of those allegations connect the alleged deception to the alleged injury. The Selvigs' MPCFA claim should be dismissed.

---

[10] The other cases cited by plaintiffs are not to the contrary. *Wiegand v. Walser Auto. Grps., Inc.*, 683 N.W.2d 807, 812-13 (Minn. 2004) (plaintiff alleged reliance on oral misrepresentation); *Curtis v. Altria Grp., Inc.*, 792 N.W.2d 836, 857-59 (Minn. Ct. App. 2010) (common proof that class members were aware of deceptive advertisements and believed them).

### VI. Plaintiffs Failed to Dispute Overdraft Charges In A Timely Fashion.

The motion to dismiss showed that all of plaintiffs' claims should be dismissed because plaintiffs did not dispute the challenged overdraft fees within the 14-day period specified by the Deposit Agreement for notifying Associated of "unauthorized transactions." *See* Am. Compl., Ex. A at 11. Plaintiffs invent a host of reasons for why their claims supposedly should not be subject to the Deposit Agreement's notice provision. None have any merit.

First, plaintiffs claim (at 20) that the notice provision does not apply to Associated's "own purposeful actions." But no such limitation arises from the language of the provision, which encompasses not only "unauthorized signatures" and "alterations," but also "other unauthorized transactions." Am. Compl., Ex. A at 11. That general language plainly covers plaintiffs' complaints about Associated's overdraft fees. Indeed, plaintiffs expressly claim that Associated was not "authorized" to perform the transactions deducting the challenged fees. *See, e.g.*, Resp. at 15, 23 (Deposit Agreement "does not authorize the reordering of debit transactions" and "does not give Associated *carte blanche* to withdraw funds"); Am. Compl. ¶ 109 (Associated assumed ownership over account funds "without proper authorization").[11] Plaintiffs' distinction is nothing more than an impermissible attempt to insert a condition that is nowhere in the text of the notice provision. *See, e.g.*, *Valspar Refinish, Inc. v. Gaylord's, Inc.*, 764 N.W.2d 359, 365-66 (Minn. 2009); *Columbia Propane, L.P. v. Wis. Gas Co.*, 661 N.W.2d 776, 783 (Wis. 2003); *Gallagher v. Lenart*, 854 N.E.2d 800, 807 (Ill. App. Ct. 2006).

Second, plaintiffs invoke the maxim of *expressio unius est exclusio alterius*, which instructs that "when specific items are listed without any more general or inclusive terms, other items, although similar in kind are excluded." *Dugan v. Smerwick Sewerage Co.*, 1996 WL 535306, at *5 (N.D. Ill. 1996). In this case, that maxim could not imply the exclusion of plaintiffs' overdraft fee challenges from the notice provision because the provision *expressly* includes those challenges by listing "unauthorized transactions." Am. Compl., Ex. A at 11; *see First Wis. Trust Co. v. Perkins*, 82 N.W.2d 331, 333 (Wis. 1957); *Colangelo v. Norwest Mortg., Inc.*, 598 N.W.2d 14, 17-18 (Minn. App. Ct. 1999). Plus, the notice provision itself abandons the *expressio unius* principle by using general and inclusive terms in requiring notification of unspecified "other" unauthorized transactions and errors. *Dugan*, 1996 WL 535306, at *5.

---

[11] Plaintiffs' assertion (at 20) that Associated's "reordering manipulations" were "impossible to decipher" is demonstrably incorrect. The complaint itself "deciphers" Associated's posting order from plaintiffs' account statements. Am. Compl. ¶¶ 72, 77, 82.

13

Finally, plaintiffs raise the *contra proferentem* maxim, which holds that ambiguous terms should be read against a contract's drafter. Courts have referred to that maxim as "at best a secondary rule of interpretation, a last resort which may be invoked after all the ordinary interpretative guides have been exhausted." *Bunge Corp. v. Northern Trust Co.*, 623 N.E.2d 785, 791 (Ill. App. Ct. 1993). Here the phrase "unauthorized transactions" unambiguously covers the overdraft fees about which plaintiffs complain, making the *contra proferentem* maxim inapplicable. *Seitzinger v. Cmty. Health Network*, 676 N.W.2d 426, 433-34 (Wis. 2004); *Re-Solutions Intermediaries, LLC v. Heartland Fin. Grp., Inc.*, 2010 WL 1192030, at *3 (Minn. App. Ct. 2010); *Bunge*, 623 N.E.2d at 791. As plaintiffs failed to provide the required notice that they disputed their overdraft fees, all of their claims should be dismissed.

## VII. The Voluntary Payment Doctrine Bars Each Plaintiff's Claims.

Associated's dismissal motion established that the voluntary payment doctrine requires dismissal of all of plaintiffs' claims because plaintiffs paid, without protest, the overdraft fees about which they now complain. Plaintiffs respond that those fees were not voluntarily paid, that they lacked full knowledge of the relevant facts, and that the doctrine should not apply to their consumer fraud claims. The relevant precedents reject each of plaintiffs' arguments.

Plaintiffs first contend that they did not *pay* overdraft fees, but rather that Associated *took* the fees from them. Putting aside that the complaint says they did "pay" the fees (Am. Compl. ¶ 90), plaintiffs expressly agreed to provide "payment" of overdraft fees by allowing Associated to "deduct" such fees from their accounts. Am. Compl., Ex. A at 8. Plus, courts have ruled that the voluntary payment doctrine applies to fees deducted from funds owed or belonging to a plaintiff. *King v. First Capital Fin. Servs. Corp.*, 828 N.E.2d 1155, 1174-75 (Ill. 2005); *Indep. Glass Ass'n, Inc. v. Safelite Group, Inc.*, 2005 WL 2093035, at *9-*10 (D. Minn. 2005).

Plaintiffs also ask for a chance to explore whether their payments were involuntary because a failure to pay overdraft fees might have led to additional fees, an account freeze, collection efforts, or harm to their credit or banking relationships. There are three problems with that request. First, all but the first of the supposed consequences are not pleaded in the complaint and thus cannot save the complaint from dismissal. *See Walker v. City of Orlando*, 2007 WL 1839431, at *5 (M.D. Fla. 2007) (refusing to consider new allegations in response to dismissal motion). Second, none of the identified consequences prevented plaintiffs from paying the disputed overdraft fees under protest. *See Putnam v. Time Warner Cable of Se. Wis., L.P.*, 649

N.W.2d 626, 633 (Wis. 2002) ("the voluntariness in the doctrine goes to the willingness of a person to pay a bill *without protest as to its correctness or legality*"). Third, courts have rejected involuntariness claims based on similar claims about adverse consequences. *See, e.g.*, *id.* (doctrine applies even when customer pays bill under threat of losing service); *Smith v. Prime Cable of Chi.*, 658 N.E.2d 1325, 1333-34 (Ill. App. Ct. 1995) (doctrine applies absent actual threat of adverse consequences and presentation of objection to defendant). Accordingly, plaintiffs may not claim involuntary payment.

Plaintiffs further argue that they were unaware that Associated was posting debit card transactions from highest to lowest amount and that they were incurring additional overdraft fees as a result. To support that "mistake of fact" argument, plaintiffs say that the complaint alleges that they lacked knowledge of those relevant facts. In reality, the complaint alleges nothing of the sort. The complaint paragraphs cited by plaintiffs describe Associated's alleged conduct, not plaintiffs' knowledge. Am. Compl. ¶¶ 36, 38, 40, 49-60. In fact, the complaint shows that the plaintiffs' own account statements allowed plaintiffs to determine the order in which Associated posted debit card transactions and the effect of that posting order on overdraft fees. *Id.* ¶ 72, 77, 82. Thus, the complaint itself establishes that any (unalleged) belief that Associated posted debit card transactions in some order other than high-to-low was the product of plaintiffs' failure to investigate the factual basis for their overdraft fees. A mistake of fact resulting from a failure to investigate the basis of known charges does not save a claim from the voluntary payment doctrine. *See Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 823-24 (7th Cir. 2010) (Illinois law); *Butcher v. Ameritech Corp.*, 727 N.W.2d 546, 555-56 (Wis. Ct. App. 2006).

Finally, plaintiffs urge this Court to rule that applying the voluntary payment doctrine to Whitehead's ICFA claim and the Selvigs' MPCFA claim would violate state public policy. Illinois courts, however, have expressly ruled that the voluntary payment doctrine is a valid ground for dismissing ICFA claims. *Smith*, 658 N.E.2d at 1334 n.8, 1336-37; *Jenkins v. Concorde Acceptance Corp.*, 802 N.E.2d 1270, 1277 n.1, 1278 (Ill. App. Ct. 2003).[12] And no Minnesota precedents support plaintiffs' proposed exception to the voluntary payment doctrine. All of plaintiffs' claims should be dismissed under the voluntary payment doctrine.

---

[12] Nor is there anything to the contrary in the cases addressing Illinois law that plaintiffs cite. *Gonzalez v. Codilis & Assocs., P.C.*, 2004 WL 719264, at *3-*4 (N.D. Ill. 2004) (federal statute preempted voluntary payment defense); *Ramirez v. Smart Corp.*, 863 N.E.2d 800, 809-10 (Ill. App. Ct. 2007) (voluntary payment doctrine violated policy of Illinois's Hospital Records Act).

Respectfully Submitted,

Dated: March 14, 2011            By:  *s/Benjamine Reid*
                                      Benjamine Reid (FL Bar # 183522)
                                      Email: breid@carltonfields.com
                                      Aaron S. Weiss (FL Bar # 48813)
                                      Email: aweiss@carltonfields.com
                                      **CARLTON FIELDS, P.A.**
                                      100 Southeast Second Street, Suite 4200
                                      Miami, Florida 33131
                                      Telephone No. (305) 530-0050
                                      Facsimile No. (305) 530-0055

                                      ---and---

                                      David D. Pope (Admitted Pro Hac Vice)
                                      Email: dpope@mayerbrown.com
                                      Debra Bogo-Ernst (Admitted Pro Hac Vice)
                                      Email: dernst@mayerbrown.com
                                      Lucia Nale (Admitted Pro Hac Vice)
                                      Email: lnale@mayerbrown.com
                                      Joshua Yount (Admitted Pro Hac Vice)
                                      Email: jyount@mayerbrown.com
                                      **MAYER BROWN LLP**
                                      71 South Wacher Drive
                                      Chicago, Illinois 60606
                                      Telephone: No. (312) 782-0600
                                      Facsimile No. (312) 701-7711

                                      *Attorneys for Defendant Harris, N.A.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized matter for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Aaron S. Weiss*
Aaron S. Weiss

# **SERVICE LIST**

*In Re: Checking Account Overdraft Litigation*
Case No. 1:09-MD-02036-JLK

This Document Relates to:
*Blahut v. Harris, N.A.*
S.D. Fla. Case No. 1:10-cv-21821-JLK
N.D. Ill. Case No. 1:10-cv-2543

Jeffrey M. Ostrow
Email: ostrow@kolawyers.com
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG KEECHL**
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300
*Counsel for Plaintiffs and the Proposed Classes*


Robert Cecil Gilbert
Email:  bobby@alterslaw.com
**Robert Cecil Gilbert**
Email: rcg@grossmanroth.com
Grossman Roth, P.A.
2525 Ponce de Leon Boulevard, Suite 1150
Miami, FL 33134
Telephone: (888) 296-1681
Facsimile:  (305) 285-1668
*Coordinating Counsel for Plaintiff in MDL 2036*

18452070.1