UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION <br><br> MDL No. 2036 <br> *Fourth Tranche* <br><br> THIS DOCUMENT RELATES TO: <br><br> *McKinley v. Great Western Bank* <br> S.D. Fla. Case No. 1:10-cv-22770-JLK <br> W.D. Mo. Case No. 4:10-cv-595 | Case No. 1:09-02036-JLK |

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT

Todd W. Ruskamp, MO #38625
James P. Muehlberger, MO #51346
Andrew Carpenter, MO #47454
Kay C. Whittaker, MO #44328
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108-2613
Telephone: 816.474.6550
Facsimile: 816.421.5547

ATTORNEYS FOR DEFENDANT
GREAT WESTERN BANK

4380246 v1

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    A.    Plaintiff's Reliance on Three Distinguishable Decisions Is Not Persuasive. .......... 2

        1.    *Gutierrez* Distinguished ................................................................................ 2

        2.    *White* Distinguished ..................................................................................... 3

        3.    Plaintiff's Reliance on this Court's Decision on Defendants' Omnibus Motion to Dismiss is Misplaced. ................................................................. 4

    B.    Plaintiff's Breach of Contract/Implied Covenant Claim Fails to State a Claim on Which Relief May Be Granted. ................................................................................ 4

        1.    GWB's Contract Specifically States That Debits Will Be Posted from Highest Amount to Lowest. ............................................................................ 4

        2.    The Implied Covenant Cannot Prohibit a Practice That State Laws and Federal Regulatory Pronouncements Specifically Permit. ........................ 7

    C.    Plaintiff Fails to State a Claim for Unconscionability. ............................................ 8

    D.    Plaintiff Fails to State a Claim for Conversion. ..................................................... 10

    E.    This Court's Ruling on Defendants' Omnibus Motion to Dismiss Requires A Finding That GWB's Practices Are Not Covered By the ACFA. ......................... 12

CONCLUSION ............................................................................................................................. 15

CERTIFICATE OF SERVICE ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Case Corp. v. Gehrke*, 91 P.2d 362 (Ariz. Ct. App. 2004) .............................................................. 10
*Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454 (Ill. App. Ct. 2004) ............................................... 11
*Gutierrez v. Wells Fargo Bank, N.A.*, No. C07-05923, 2010 WL 3155934 (N.D. Cal. Aug. 10, 2010) ............................................................................................................................. 2, 3
*Gutierrez v. Wells Fargo, N.A.*, 622 F. Supp. 2d 946 (D.C. Cal. 2009) ........................................... 2
*Hernandez v. Wells Fargo Bank New Mexico, N.A.*, 128 P.3d 496 (N.M. Ct. App. 2005) ............. 9
*Houston Nat'l Bank v. Biber*, 613 S.W.2d 771 (Tex. Civ. App. 1981) ......................................... 10
*In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d at 1326 ........................................ 13
*Indus. Comm'n of AZ. v. Old Republic Ins. Co.*, 219 P.2d 285 (Ariz. Ct. App. 2009) ................... 8
*Katz v. Belmont Nat'l Bank of Chicago*, 491 N.E.2d 1157 (Ill. 1986) .......................................... 11
*Kriegel v. Bank of America, N.A.*, No. 07cv12246-NG, 2010 WL 3169579 (D. Mass. Aug. 10, 2010) ................................................................................................................................. 6
*Narramore v. HSBC Bank USA, N.A.*, 2010 WL 2732815 (D. Ariz. July 7, 2010) ..................... 14
*Nicholas Homes, Inc. v. M&I Marshall & Ilsley Bank, N.A.*, 2010 WL 1759453 (D. Ariz. Apr. 30, 2010) ............................................................................................................................ 14
*Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913 (Cal. 1985) ............................................................. 9
*Safeco Ins. Co. v. Wheaton Bank and Trust Co.*, No. 07 C 2397, 2008 WL 216396 at *3 (Jan. 24, 2008 N.D. Ill.) ............................................................................................................ 11
*Universal Mktg. and Entm't, Inc. v. Bank One of AZ.*, 53 P.3d 191 (Ariz. Ct. App. 2002) ... 10, 11
*Villegas v. Transamerica Fin. Servs., Inc.*, 708 P.2d 781 (Ariz. Ct. App. 1985) .................... 13, 14
*White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008) ..................................... 3, 9

**Statutes**

A.R.S. § 47-9102A ......................................................................................................................... 13
U.C.C. § 4-303 ............................................................................................................................. 7, 8

**Other Authorities**

Black's Law Dictionary 809 (6th ed. 1990) ................................................................................... 13

4380246 v1

Defendant Great Western Bank ("GWB") submits the following reply in support of its Motion to Dismiss Plaintiff's Amended Class Action Complaint in its entirety:

## INTRODUCTION

Plaintiff's Amended Complaint is a misguided effort to make the repetitive allegations asserted against numerous national banks in this MDL fit GWB and its Deposit Agreement. Unlike the majority of banks involved in this MDL, however, GWB is a state-chartered bank and its Deposit Agreement is a short, plain, unambiguous statement of its practices, which GWB has complied with in full. Plaintiff has failed to state any claim against GWB as a matter of law.

On his breach of contract/breach of implied duty claim, plaintiff concedes that the contract expressly authorizes GWB to post debit transactions from high to low. Yet plaintiff misstates the contract language in an apparent effort to create ambiguity or discretion within the Deposit Agreement. Despite plaintiff's mischaracterization, GWB's Deposit Agreement is clear and unambiguous, and GWB has complied with its terms, both express and implied.

Next, plaintiff cites no authority holding that high-to-low posting terms are substantively unconscionable. To the contrary, every court that has addressed the question has found the opposite. Furthermore, plaintiff's claim for substantive unconscionability alleges that there is no "reasonable relationship" between the fee GWB charges for overdrafts and the cost to GWB in administering overdrafts. But the law does not require a close relationship between the incremental cost of performing a service for a customer and the fee charged. Even assuming plaintiff's allegation is true and there is no reasonable relation, it would not support a finding of substantive unconscionability.

1

Plaintiff's claim for conversion also fails because conversion applies only to specific chattel, and has no application to a fungible item, like money, with the sole exception of funds in a trust account – an exception not applicable here.

Finally, plaintiff's claim under the Arizona Consumer Fraud Act (ACFA) fails because the Act is limited to the use of deceptive or unfair practices "in connection with the sale or advertisement of merchandise." GWB's complained of conduct neither involved "merchandise," nor did it occur "in connection with the sale or advertisement" of merchandise.

## ARGUMENT

### A.    Plaintiff's Reliance on Three Distinguishable Decisions Is Not Persuasive.

Plaintiff's opposition relies heavily on three decisions. Upon closer examination, however, these decisions are either distinguishable, or they do not support plaintiff's claims.

#### 1.    *Gutierrez* Distinguished

Plaintiff relies heavily on *Gutierrez v. Wells Fargo Bank, N.A.,* No. C07-05923, 2010 WL 3155934 (N.D. Cal. Aug. 10, 2010) (appeal pending) in his opposition. *Gutierrez* is distinguishable from the present case on numerous grounds. First, the *Gutierrez* court found the defendant bank's practices violated California's Unfair Competition Law – a law not at issue in this case, nor comparable to any law at issue in this case. *Gutierrez* did not impose liability for breach of contract, conversion, unjust enrichment, or any other cause of action actually at issue in this case. *Id.* at *1. In fact, it explicitly rejected a claim for conversion. *Gutierrez v. Wells Fargo, N.A.*, 622 F. Supp. 2d 946 (D.C. Cal. 2009).

Furthermore, *Gutierrez* is distinguished from this case on its facts. The contracts at issue in *Gutierrez* and this case are very different. Wells Fargo's contract stated that the bank could post items in any order the bank chooses, including high to low, but it failed to state in what order the bank *would* actually post transactions in all or even in most instances. GWB's

agreement, on the other hand, explicitly states that "When processing items drawn on your account, o[u]r policy is to pay them according to the dollar amount. We pay the largest items first." Thus, there is no question as to what GWB's practice is. Compare *id.* at *33 with Exh. A to Exh. 1 to GWB's Memo in Support at p. 2.

Also, the *Gutierrez* court found significant that the defendant bank in that case switched from a practice of posting debits from low to high to ordering them from high to low without disclosing this change, or other bank practices that maximized overdraft charges, to its customers. *Id.* at *3, 33, 36. This is not the case here, where plaintiff does not claim that GWB switched from low to high to high to low ordering of debit transactions without notice. Plaintiff also does not point to any "misleading marketing materials that reinforced [his] natural assumption that debit-card transactions would be posted chronologically," as in *Gutierrez*. *Id.* at *11. Plaintiff here had no reasonable expectation that GWB would post debit transactions in any order other than that disclosed as the bank's regular practice in its Deposit Agreement – which was high to low.

2.   ***White* Distinguished**

In *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008), involving factual allegations similar to those in the present case, the district court dismissed plaintiffs' claims for unjust enrichment and unconscionability. Other claims survived the motion to dismiss stage, although the court expressed reservations as to their chances for surviving summary judgment. At a minimum, however, *White* supports dismissal of plaintiff's unjust enrichment and unconscionability claims.

4380246 v1

### 3. Plaintiff's Reliance on this Court's Decision on Defendants' Omnibus Motion to Dismiss is Misplaced.

Finally, plaintiff's extensive reliance on this Court's March 11, 2010 order denying (in part) defendants' omnibus motion to dismiss on some of the same or similar grounds raised in GWB's motion is misplaced because (1) the Deposit Agreement at issue in this case contains materially different language than the contracts at issue in the cases previously considered, (2) different states' laws are implicated by this case than the cases previously considered, and (3) additional relevant case law on breach of contract/implied covenant has been decided in the interim. For example, at least one district court opinion cited by the defendants in support of their omnibus motion to dismiss has since been affirmed by a circuit court, thus reinforcing arguments previously raised. Moreover, GWB respectfully requests that the Court revisit certain aspects of its March 11, 2010 order for the reasons stated herein.

## B. Plaintiff's Breach of Contract/Implied Covenant Claim Fails to State a Claim on Which Relief May Be Granted.

### 1. GWB's Contract Specifically States That Debits Will Be Posted from Highest Amount to Lowest.

Plaintiff's reading of the provision in GWB's Deposit Agreement entitled PAYMENT ORDER OF ITEMS is contrived and illogical. There is one section in GWB's 2-page Deposit Agreement relating to PAYMENT ORDER OF ITEMS. That section reads as follows:

> The law permits us to pay items (such as checks or drafts) drawn on your account in any order. To assist you in handling your account with us, we are providing you with the following information regarding how we process the items that you write. When processing items drawn on your account, o[u]r policy is to pay them according to the dollar amount. We pay the largest items first. The order in which items are paid is important if there is not enough money in your account to pay all of the items that are presented. Our payment policy will cause your largest, and perhaps more important, items to be paid first (such as your rent or

>     mortgage payment), but may increase the overdraft or NSF fees
>     you have to pay if funds are not available to pay all of the items. If
>     an item is presented without sufficient funds in your account to pay
>     it, we may, at our discretion, pay the item (creating an overdraft) or
>     return the item (NSF). The amounts of the overdraft and NSF fees
>     are disclosed elsewhere. We encourage you to make careful
>     records and practice good account management. This will help
>     you to avoid writing checks or drafts without sufficient funds and
>     incurring the resulting fees.

GWB Deposit Agreement, Exh. A to Exh. 1 to GWB's Memo in Support at p. 2.

While the entire paragraph relates to the payment order of "items," which is modified in the first line by the phrase "(such as checks and drafts)," plaintiff argues that the paragraph applies *only* to checks and drafts, and not also to debit transactions. The phrase "such as" plainly means "for example," and therefore checks and drafts should not be interpreted as the only types of items covered by the section. Furthermore, the fact that there is no other section in the Deposit Agreement addressing the payment order of debit transactions reinforces the logical implication that debit transactions fall within the "PAYMENT ORDER OF ITEMS" category. Plaintiff's argument that the Deposit Agreement is silent about the order in which GWB will pay debits is unreasonable.

To the contrary, the paragraph is very clear about how the bank processes transactions. It states "When processing items drawn to your account, o[u]r policy is to pay them according to the dollar amount. We pay the largest items first." The paragraph goes on to explain the ramifications of the bank's posting order. The Deposit Agreement does not say the bank "may" post items in high to low order," as plaintiffs have argued in other cases in this MDL. GWB's Deposit Agreement unequivocally states "Our payment policy *will* cause your largest, and perhaps more important, items to be paid first...." (emphasis added). There is no discretion built into this statement of GWB's posting order practices. The Deposit Agreement

makes a statement of fact about posting order, and plaintiff concedes that the bank's conduct has been consistent with that policy. (SAC ¶ 43-46; Pl's Memo in Oppos. at 6).

Plaintiff also claims that the explanatory statement in the section -- stating that the bank's policy of paying the largest items first will cause items such as rent or mortgage payments to be paid first -- makes no sense in relation to debit transactions because such items are "rarely, if ever, paid with a debit card." (Pl's Memo in Oppos. at 3). This factual contention is made without any support, and is contrary to actual fact. An ever-increasing number of bank customers make their rent and mortgage payments not by check or draft, but rather through an on-line banking debit transaction. Thus, the reference to the fact that rent and mortgage payments, as examples of a bank customer's larger transactions, will be paid first is yet another signal to customers that "PAYMENT ORDER OF ITEMS" includes on-line banking and other automatic debit-type transactions, and not just checks and drafts.

Plaintiff's breach of contract/breach of implied covenant claim must be dismissed because the Deposit Agreement does not give GWB discretion in how it orders items for payment. Banks are not liable when they engage in conduct that is consistent with practices disclosed in clear and unambiguous customer contracts, even though a plaintiff may claim to be confused about those practices. *See Kriegel v. Bank of America, N.A.*, No. 07cv12246-NG, 2010 WL 3169579 (D. Mass. Aug. 10, 2010) (dismissing various state law claims for deceptive practices, fraud, breach of contract/implied covenant, and unjust enrichment on merits where bank clearly disclosed manner in which CDs would be renewed at then-prevailing interest rate if depositor took no action, as bank's language was not deceptive or misleading).

2. **The Implied Covenant Cannot Prohibit a Practice That State Laws and Federal Regulatory Pronouncements Specifically Permit.**

Plaintiff argues that U.C.C. § 4-303, authorizing state-chartered banks to post checks in any order suiting the bank, does not apply to debit transactions. Plaintiff claims that the reason debit transactions are treated differently than checks under the statutes of every state at issue in this case, all of which have adopted the U.C.C. provision, is because of the near-instantaneous nature of debit transactions. Plaintiff cites no legislative or other support for this claim, however. That is because the legislative history actually supports GWB's interpretation that debits should not be treated differently than checks with respect to posting order requirements.

The reason for the exclusion of electronic fund transfers from § 4-303 is not because the U.C.C. drafters believed that debit card transactions should be subject to a different rule, but rather because the drafters believed that debit cards were governed by preemptive federal law. GWB cited the Transcript of Proceedings, National Conference of Commissioners on Uniform State Laws, UCC Arts. 3, 4 & 4A, at 141:16-142:11 (1987) in its opening brief, and plaintiff failed to make any response. That document clearly demonstrates that the reason debit transactions are not explicitly included under U.C.C. § 4-303 is not because the nature of the transactions is so different from checks, but rather because the drafters considered debit transactions to be the subject of exclusive federal jurisdiction. (Exh. 2 to GWB's Memo in Support). Plaintiff cannot simply ignore the implication of the legislative history applicable to the uniform law, which does not recognize any substantive distinction between checks and debit transactions. Plaintiff's self-serving argument for why debit transactions should be subject to different posting order laws than checks written to a customer's checking account should be rejected.

7

In addition, plaintiff argues that the language of U.C.C. § 4-303, stating that banks may post items "in any order," even if applied to debits, still leaves banks open to liability for bad faith exercise of their discretion. Yet, plaintiff's position contradicts the statute. "In any order" means *in any order*. The statute does not say "in any order that minimizes the number of overdrafts," or "in any order so long as done in good faith." Where the language of the statute is unambiguous and clear, Arizona courts will give effect to the language as written, and will not engage in statutory construction. *Indus. Comm'n of AZ. v. Old Republic Ins. Co.*, 219 P.2d 285, 287 (Ariz. Ct. App. 2009). The clear, unambiguous terms of the statute authorize banks to post items "in any order," and thereby banks cannot be liable based on the posting order that they select. "Unless clear indication of legislative intent to the contrary exists, [courts] will not construe the words of a statute to mean something other than what they plainly state." *Id.* at 288 (internal quotations omitted).

C.  **Plaintiff Fails to State a Claim for Unconscionability.**

First of all, the states where GWB operates do not recognize a cause of action for damages based on a finding that a contract or a portion of its terms are unconscionable. Plaintiff relies on two cases from New York for the proposition that a court's finding that contract terms are unconscionable can give rise to a claim for breach of contract. But New York law is not applicable here, and furthermore, plaintiff already has a count for breach of contract, in addition to a count for unconscionability. The applicable law does not authorize an affirmative claim for damages for unconscionability.

Second, plaintiff unfairly attempts to lump this case in with all the other cases in the MDL, and asks the Court to find the contract procedurally unconscionable. But the terms of the other deposit agreements have no bearing on GWB's two-page Deposit Agreement. GWB's agreement states in clear and certain terms how the bank will order debits to customers' checking

accounts, without provision for bank discretion. The plaintiffs' briefs have argued *en masse* that it is the discretion in the defendant banks' deposit agreements that subjects them to liability. Yet, GWB's Deposit Agreement does not confer discretion. The deposit agreements of other banks do not provide a basis for a claim against GWB.

Third, plaintiff cites no authority holding that high-to-low posting terms are substantively unconscionable. To the contrary, his argument has been rejected by courts, including the *White* decision on which he otherwise relies so heavily. 563 F. Supp. 2d at 1370-71. Plaintiff colorfully asserts in support of the alleged substantive unconscionability of the Deposit Agreement, that "No reasonable person would ever have agreed to grant GWB the unfettered power to manipulate debit card transactions for the sole purpose of maximizing its profits at his or her expense." (Pl's Memo in Oppos. at 13.) But the argument is immaterial to the present situation because the Deposit Agreement does not give GWB discretion in the posting order of items, including debit transactions.

Nor may plaintiff demonstrate substantive unconscionability by pointing to the alleged disparity between the amount of the overdraft fees asserted and the cost and value of overdraft services. *See Hernandez v. Wells Fargo Bank New Mexico, N.A.*, 128 P.3d 496 (N.M. Ct. App. 2005) (rejecting claim that overdraft fee rates were unconscionable when imposed for small overdrafts). Plaintiff does not claim any aspect of unconscionability surrounding fee levels, which are very simple to understand. Nor does he allege that the fee levels were outside normal market ranges. *See, e.g., Perdue v. Crocker Nat'l Bank*, 38 Cal. 3d 913, 926-27 (Cal. 1985) (finding it "unlikely that a court would find a price set by a freely competitive market to be unconscionable").

**D.     Plaintiff Fails to State a Claim for Conversion.**

The law is clear and unequivocal that plaintiff may not maintain an action for conversion with respect to money, absent a showing that the money was transferred to the defendant for a specific purpose, *e.g.*, a deposit into a trust account. *See, e.g., Case Corp. v. Gehrke,* 91 P.2d 362, 365 (Ariz. Ct. App. 2004); *Universal Mktg. and Entm't, Inc. v. Bank One of AZ.*, 53 P.3d 191, 194 (Ariz. Ct. App. 2002). In *Universal Mktg.*, the Arizona Court of Appeals succinctly summarized the law with respect to conversion:

> An action for conversion must be supported by title in the plaintiff and there must be a means of identification of it as a specific chattel for it to constitute the subject of conversion. A suit for conversion will not lie where a debtor-creditor relationship is created by deposit of a check to the depositor's account.... *The making and acceptance of an ordinary deposit creates as between the bank and the depositor, the relation of debtor and creditor, the title to the money passing to the bank.*

53 P.3d at 193 (quoting *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. Civ. App. 1981) (emphasis in original)).

This quotation could not be any more directly on point. To emphasize the point, the court further stated:

> The question remains whether the money [deposited in a general account] constituted a chattel in which Universal had an immediate right of possession at the time of the conversion and our answer is that it did not. Universal relinquished such an interest when it deposited the finds, unsegregated and undifferentiated, into [an] ordinary account.

*Id.* at 194.

This language, and other cases cited in *Universal Mktg.*, conclusively demonstrates that Arizona law does not recognize a cause of action for conversion for funds in a general deposit account. The Court should dismiss plaintiff's conversion claim.[1]

Plaintiff argues that "other courts have also recognized a depositor's right to absolute possession of the funds on deposit in their bank account" (Plaintiff's Memo in Oppos. at 15) and cites two Illinois cases –*Cruthis v. Firstar Bank, N.A.*, 822 N.E.2d 454 (Ill. App. Ct. 2004) and *Katz v. Belmont Nat'l Bank of Chicago*, 491N.E.2d 1157 (Ill. 1986). First, Illinois is not a state where GWB has any branches, so Illinois law is inapplicable. Even apart from that, *Cruthis* acknowledges that where a bank offsets debts allegedly owed by the depositor to the bank, it does not constitute conversion. 822 N.E.2d at 464. Thus, even *Cruthis* does not support plaintiff's conversion claim. Furthermore, the *Cruthis* court's conclusion that a general depositor can ever maintain a conversion claim against a bank has subsequently been called into question by a district court in Illinois.[2]

*Katz* also does not support plaintiff's position. *Katz* states the general rule that "when money is deposited with a bank, title to it passes and the bank becomes a debtor to the extent of the deposit; and to that extent, the depositor becomes a creditor." 491 N.E.2d at 1159.

---

[1] In this Court's 3/11/10 opinion on the First Tranche defendants' motion to dismiss, it declined to dismiss plaintiffs' conversion claims, finding a distinction between the requirement of the plaintiff's ownership interest in the property (which was not satisfied) and a possessory interest (which it found was satisfied). While Arizona law recognizes that the plaintiff must have an ownership or possessory right to the property, it concludes that a plaintiff has neither with respect to money in a general deposit account, because of its fungible nature. *Id.*

[2] *See Safeco Ins. Co. v. Wheaton Bank and Trust Co.*, No. 07 C 2397, 2008 WL 216396 at *3 (Jan. 24, 2008 N.D. Ill.) (dismissing surety's claim for conversion against bank because plaintiff did not have a present and unconditional possessory right to the funds deposited with the bank; only trustee of trust account has such rights; and noting that under Illinois law, when money is deposited with a bank, the bank takes title and becomes a debtor to the depositor, who then becomes the bank's creditor).

4380246 v1

The only exception the court in *Katz* recognizes is where the deposited funds are held in trust by the depositor for the benefit of the plaintiff and other class members. *Id.* at 1158. A trust account is a recognized exception to the rule that no claim for conversion lies for funds in a customer's bank account, but there is no allegation here that plaintiff's account is a trust account. To the contrary, it is an ordinary checking account. Plaintiff cites no case that supports a finding of conversion with respect to offsets made by a bank against funds held in a general depositor's account.

Plaintiff next refers to the language in the Deposit Agreement in the sections entitled "AGREEMENT" and "OWNERSHIP OF ACCOUNT AND BENEFICIAL DESIGNATION," which he claims supports his argument that plaintiff has an immediate and unconditional right of possession to the specific funds in his account. (Pl's Memo in Oppos. at 16). Nothing in the Deposit Agreement supports such a conclusion. The fact that the Agreement states that a "single-party account" is "owned by one party" is not inconsistent with Arizona law, nor does it change the effect of plaintiff's deposit of funds with GWB. The provision in the Deposit Agreement makes clear that it simply identifies who the bank will pay the funds to when properly withdrawn. The Deposit Agreement does not override the clear statement of Arizona law; in fact, the Deposit Agreement explicitly states that "[t]his agreement is subject to applicable federal laws and the laws of the state of Arizona...." Deposit Agreement, p.1 under AGREEMENT heading.

E. **This Court's Ruling on Defendants' Omnibus Motion to Dismiss Requires A Finding That GWB's Practices Are Not Covered By the ACFA.**

Plaintiff acknowledges that the ACFA is limited to transactions involving "the sale or advertisement of merchandise," and that the definition of "merchandise" includes "goods" and "services." (Pl's Memo in Oppos. at 22, citing §§ 44-1522, 44-1521(5). Plaintiff

12

further admits that this Court previously dismissed the First Tranche plaintiffs' identical claims under the California and Oregon consumer protection statutes on the grounds that those statutes were limited to transactions involving "goods" or "services," and that the claims at issue did not constitute either "goods" or "services." *Id.* Plaintiff tries to distinguish the claim he asserts under Arizona's consumer fraud statute from the claims this Court has already dismissed on two grounds: (1) the ACFA's definition of "merchandise" also includes "intangibles" and (2) Arizona case law allegedly supports a conclusion that the conduct at issue in this case was intended to fall within the definition of "merchandise" in the ACFA. Both arguments lack merit.

"Intangibles" are generally defined as "property that is a 'right,' such as a patent, copyright, trademark, etc.; or one which is lacking a physical existence; such as goodwill." *See* Black's Law Dictionary 809 (6th ed. 1990). *See also* A.R.S. § 47-9102A (defining "general intangible" as "any personal property ... **other than** accounts, chattel paper, commercial tort claims, **deposit accounts**, ..."). Plaintiff does not explain how GWB's alleged practice of re-ordering its customers' debit transactions from high to low, or of allegedly failing to disclose accurate account information to customers constitutes an "intangible." GWB did not sell or advertise commercial goodwill or any intellectual property rights to its customers. In fact, the definition of "intangible" is even less fitting to the alleged conduct at issue than "services," which this Court already held inapplicable. *In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d at 1326. Plaintiff cites *Villegas v. Transamerica Fin. Servs., Inc.*, 708 P.2d 781 (Ariz. Ct. App. 1985) for the proposition that money constitutes "merchandise" under the Act, and that "intangibles" includes the contractual right of a lender to have a loan repaid. *Id.* at 783. This analysis is inapplicable to the facts in this case however. Plaintiff's claim is not that GWB engaged in deceptive or fraudulent practices in connection with the sale or advertisement of

money, as GWB's complained of conduct has nothing to do with making a loan.[3] Rather, it is GWB's alleged conduct *in this case* that must come within the Act in order for the Act to apply. Plaintiff presumably agrees that he does not consider GWB's challenged posting practices to be a "service" that GWB advertised and sold to him. Clearly this is the case as plaintiff claims GWB hid these practices, and that he never would have agreed to them if he had been aware they were in the contract. *See, e.g.*, AC ¶ 38, 75; Memo in Oppos. at p. 13. Moreover, this Court has already held the complained of conduct was not a "service" within the definition of two virtually identical Acts. *See In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d at 1326.

Thus, plaintiff cites no authority supporting his argument that the inclusion of "intangibles" in the definition of "merchandise" brings the alleged practices at issue in this case within the ambit of the ACFA. No Arizona court has applied the ACFA to conduct analogous to that at issue in this case.

Moreover, plaintiff ignores GWB's argument that even if the Court were to find that the conduct at issue constitutes "merchandise," it was not performed "in connection with the sale or advertisement" of merchandise – a further requirement for coverage under the ACFA. (*See* GWB's Memo in Support at 19-20). *See Villegas*, 708 P.2d at 783 (describing what constitutes a "sale" or "advertisement" under the Act). Thus, plaintiff's claim for violation of the ACFA must be dismissed because the alleged conduct at issue was not performed "in connection with the sale or advertisement of any merchandise."

---

[3] Likewise, the courts' holdings in *Narramore v. HSBC Bank USA, N.A.*, 2010 WL 2732815 (D. Ariz. July 7, 2010) and *Nicholas Homes, Inc. v. M&I Marshall & Ilsley Bank, N.A.*, 2010 WL 1759453 (D. Ariz. Apr. 30, 2010), that money constitutes "merchandise" under the ACFA, are inapposite to the issue here, as both those cases involved allegedly fraudulent conduct in connection with lending practices -- not at issue here.

## CONCLUSION

For the foregoing reasons, and the reasons set forth in Great Western Bank's Memorandum in Support of its Motion to Dismiss, the Court should dismiss all five counts of Plaintiff's Amended Complaint in their entirety, and order such other relief as the Court deems just and proper.

Dated: March 14, 2011                     SHOOK, HARDY & BACON L.L.P.


                                          By: /s/ Todd W. Ruskamp
                                              Todd W. Ruskamp, MO #38625
                                              James P. Muehlberger, MO #51346
                                              Andrew Carpenter, MO #47454
                                              Kay C. Whittaker, MO #44328

                                          2555 Grand Blvd.
                                          Kansas City, MO  64108-2613
                                          Telephone:  816.474.6550
                                          Facsimile:  816.421.5547

                                          ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2011, I electronically filed the foregoing with the Court by using the CM/ECF system which sent notification of such filing to all counsel of record.

                                          /s/ Todd W. Ruskamp
                                          Attorney for Defendant Great Western Bank

4380246 v1