UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Harris v. Associated Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-22948-JLK
W.D. Wis. Case No. 3:10-cv-182-BBC

**REPLY IN SUPPORT OF ASSOCIATED BANK'S
RULE 12(b)(1) MOTION TO DISMISS**

Fulfilling its obligation to bring defects in federal subject matter jurisdiction to the Court's attention, defendant Associated Bank, N.A. ("Associated") moved to dismiss this case under Fed. R. Civ. P. 12(b)(1) because it falls squarely within the "home state" exceptions to the expanded diversity jurisdiction of the Class Action Fairness Act ("CAFA"). In opposing the motion, plaintiffs lodge a series of inflammatory but incorrect accusations about Associated's purported conduct and motives, rely on erroneous statements of law, and speculate about the factual basis for Associated's motion. Sweeping away plaintiffs' rhetoric and conjecture, the principal issue before the Court is simple: Is the evidence that more than 70% of proposed class members have Wisconsin addresses sufficient to establish that at least two-thirds (or alternatively, at least one-third) of the proposed class members are citizens of Wisconsin? While federal courts are divided on whether address information can establish citizenship, the decisions accepting such proof are better reasoned and more consistent with controlling precedent. But to the extent the Court takes the opposite view, the jurisdictional issues here are serious enough to warrant a stay on litigation of the merits in this case pending limited jurisdictional discovery and a conclusive determination of whether this Court has subject matter jurisdiction.

**I.     Plaintiffs' Forum Shopping Allegations Are Meritless And Irrelevant.**

Oddly, plaintiffs begin their response by accusing Associated of forum shopping. The truth is that Associated had an affirmative obligation to bring to the Court's attention any question about federal subject matter jurisdiction. *See Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 518 F.3d 1302, 1304 (11th Cir. 2008) (agreeing that it is "an attorney's ethical obligation, as an officer of the court, to immediately raise before a trial court the fundamental issue of lack of subject matter jurisdiction, after it becomes apparent").

Moreover, the Court either has jurisdiction or it does not. Determining that question does not depend on whether one party or the other perceives that a different forum may or may not result in a different outcome. Nor does it depend on the nature of the principal evil described in the legislative history of the jurisdictional statute. It depends—in the case of the CAFA "home state" exceptions—on the nature of the action filed, which is shaped entirely by the plaintiff, and the plain language of the statutory exceptions, which say nothing about a movant's identity or purpose. *See* 28 U.S.C. § 1332(d)(3), (d)(4)(B). It is not "forum shopping" for Associated to point out that the class action pleaded by plaintiffs falls within the express terms of an exception to the CAFA's expanded diversity jurisdiction.

1

## II. Plaintiffs Improperly Blame Associated For Their Failure To Obtain Discovery.

Selectively recounting the events leading up to their response, plaintiffs try to blame Associated for their own failure to take the necessary steps to obtain jurisdictional discovery. A full recitation of the relevant events makes clear that plaintiffs' own delay and overreaching has placed them in the position they find themselves. As such, plaintiffs' failure to obtain discovery prior to filing their response is not a reason to deny Associated's motion.

Before filing its motion, Associated met and conferred with plaintiffs about its plan to file a separate dismissal motion under Rule 12(b)(1) that invoked the "home state" CAFA exceptions. Pope Decl. ¶¶ 4-6 (Ex. 1). Plaintiffs declined to voluntarily dismiss (*id.* ¶ 5), but the same day the motions to dismiss were due (January 20, 2011), plaintiffs threatened to move to strike any separate Rule 12(b)(1) motion on the (mistaken) view that Rule 12(b)(1) arguments had to be combined with Rule 12(b)(6) arguments (*id.* ¶ 7). Associated noted its disagreement with plaintiffs' position, but in the interest of avoiding unnecessary disputes combined its dismissal arguments into a single motion. *Id.* ¶ 8.

Fifteen days later, plaintiffs first advised that they wanted jurisdictional discovery. *Id.* ¶¶ 9-10. Associated requested a letter setting forth the desired discovery. *Id.* The following day—Saturday, February 5—plaintiffs sent a letter requesting a broad array of information and testimony. *Id.* ¶ 11. On February 9, Associated informed plaintiffs that it believed the requested information was overbroad and, in any event, could not be produced before the February 22 deadline for plaintiffs' response to the dismissal motion. *Id.* ¶ 12. Associated also explained that the requested information (which includes personal information about customers) could not be produced without prior entry of a protective order. *Id.* Both sides, therefore, discussed obtaining a 30 to 60 day extension of time for plaintiffs' response to the 12(b)(1) portion of Associated's motion. *Id.* The parties also agreed to negotiate an acceptable protective order and thereafter attempted (without success) to do so. *Id.* ¶¶ 13-17.

Ten days later—on Saturday, February 19—plaintiffs sent a draft unopposed motion for a 60-day extension of time to respond to Associated's Rule 12(b)(1) arguments. *Id.* ¶¶ 15-16. On the next business day—Tuesday, February 22, the due date for plaintiffs' response—Associated signed off on the motion, and plaintiffs filed it. *Id.* ¶16. The motion expressly stated that plaintiffs wanted an additional 60 days "because Plaintiffs will be seeking limited discovery in order to respond to the rule 12(b)(1) argument." [DE # 1182] On February 28, the Court denied

the extension motion and gave plaintiffs 10 days to respond to the Rule 12(b)(1) arguments. [DE # 1214]  The next day, plaintiffs demanded expedited, informal discovery for use in their response.  Pope Decl. ¶ 19 (Ex. 1).  Associated answered that they understood the Court's order to have disallowed the request for pre-responsive-pleading discovery, particularly given that 10 days is less than the time allowed to answer document requests or set an out-of-state deposition. *See* Fed. R. Civ. P. 34 (30 days for document request); L.R. 26.1(j) (14 days for deposition). Pope Decl. ¶¶ 19-21 (Ex. 1).  Associated also reported that it could not produce a witness before March 10 or begin discovery without an appropriate protective order.  *Id.* ¶¶ 19, 21.  Plaintiffs suggested that the parties call the Court's clerk to seek off-the-record "clarification" of the Court's order.  *Id.* ¶ 20.  Leery of such back-channel communications, Associated declined, told plaintiffs to file a motion if they believed that the Court intended to allow expedited discovery, and said that Associated would agree to an open-ended extension of the due date for plaintiffs' response if plaintiffs filed such a motion.  *Id.*  Plaintiffs did not move for "clarification."

The upshot of all of this is that plaintiffs themselves are to blame for any "failure" to obtain jurisdictional discovery before filing their response.  First, they forced Associated to combine its separate motions to dismiss, making it difficult to put the Rule 12(b)(1) motion on a separate schedule.  Then, for no apparent reason, they waited over two weeks to even ask for discovery.  After Associated expressed concern over the breadth and timing of the requested discovery, plaintiffs decided to ask for more time to respond on the Rule 12(b)(1) issue, but they did not actually ask for the extra time until the initial due date for their response.  Then, when Associated reasonably understood the Court's order to require response briefing without discovery, plaintiffs declined the chance to ask the Court, via proper motion practice, to order any part of the requested discovery.  Plaintiffs' current discovery posture is a dilemma of their own making, and Associated's supposed refusal to acquiesce to their demands is not a reason to deny Associated's request for dismissal under CAFA.  *See Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (objection to subject matter jurisdiction cannot be waived).

**III.    The Saccol Affidavit Is Admissible.**

Plaintiffs contend that the affidavit submitted in support of Associated's jurisdictional arguments is inadmissible, unsubstantiated hearsay because the affidavit does not attach the electronic customer data that the affiant, Ronald Saccol, consulted.  Plaintiffs are incorrect.

3

To begin with the most obvious point, the affidavit is not inadmissible hearsay for purposes of a Rule 12(b)(1) motion. It is elementary that an affidavit based on the personal knowledge of the affiant is proper evidence in a factual dispute over subject matter jurisdiction. *McAllister Towing & Transp. Co., Inc. v. Thorn's Diesel Serv., Inc.*, 163 F. Supp. 2d 1329, 1331, 1333 n.2 (M.D. Ala. 2001). Plaintiffs do not identify a single statement in Saccol's affidavit that is not based on his own personal knowledge. Saccol is simply reporting the results of his own analysis. That is not hearsay. *See Ava Acupuncture P.C. v. State Farm Mut. Auto. Ins. Co.*, 592 F. Supp. 2d 522, 529 n.49 (S.D.N.Y. 2008) (affidavit not hearsay where affiant reported on her review of the defendant's records).

Nor does Saccol's affidavit contain the kind of unsubstantiated conclusions that could be deemed inadmissible. The affidavit describes in detail how Saccol went about calculating the statistics reported in his affidavit. That provides sufficient foundation for his conclusions. *Id.* (statement that affiant examined underlying records established foundation).

Finally, plaintiffs do not cite a single authority holding that an affidavit submitted in support of a Rule 12(b)(1) motion must, on pain of exclusion, attach all referenced data. To be sure, plaintiffs cite a handful of cases decided under the former Rule 56(e) that reject affidavits for not attaching papers discussed in the affidavit. But no Rule 12(b)(1) cases of which we are aware adopt that position—which makes sense because discovery ordinarily follows a Rule 12(b)(1) motion but precedes a summary judgment motion. Plus, the 2010 revisions to Rule 56 abandon the attachment requirement even in the summary judgment context. *See* Fed. R. Civ. P. 56. In any event, Associated had legal constraints—including the Gramm, Leach, Bliley Act—that precluded it from attaching private customer data, particularly where, as here, the parties did not yet have a protective order that ensured the confidentiality of such information. *See* 15 U.S.C. §§ 6802, 6809 (prohibiting disclosure of "nonpublic personal information").

In short, none of plaintiffs' complaints about Saccol's affidavit make it inadmissible.

**IV.    Plaintiffs' Suit Is Subject To CAFA's Mandatory Home State Exception.**

Associated's motion to dismiss showed that the mandatory home state exception to CAFA jurisdiction applies to this case because (a) plaintiffs filed suit in Wisconsin, (b) Associated is a citizen of Wisconsin, and (c) the available evidence adequately establishes that at least two-thirds of the proposed class members are Wisconsin citizens. *See* 28 U.S.C. § 1332(d)(4)(B). Plaintiffs dispute the last point. They say that Associated's customer address

4

information cannot prove the citizenship of class members at the time plaintiffs filed suit, either as a matter of law or a matter of fact. Plaintiffs are mistaken. But even if they were correct, the appropriate course would be to stay all merits proceedings pending discovery on and resolution of the jurisdictional issues in the case.

A.     **Mailing Addresses Can Establish Citizenship.**

Plaintiffs contend that the address information on which Associated relies to establish the citizenship of proposed class members cannot prove citizenship because neither residence nor mailing address is the same as domicile.[1]  However, long settled authority binding in the Eleventh Circuit holds that "the place of residence is prima facie the domicile" of a party. *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954); *see also District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941) ("The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary."). Absent evidence that a party does not intend to remain indefinitely, the party's place of residence thus is often accepted as the party's place of citizenship. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Sledge v. Deric Lydall Carpenter-Ryals*, No. CV 08-3673, 2009 WL 577761, at *1 (C.D. Cal. Mar. 3, 2009); *Moore v. N. Am. Sports, Inc.*, No. 5:08cv343, 2008 WL 5157502, at *1 (N.D. Fla. Dec. 9, 2008); *Broderick v. Dellasandro*, 859 F. Supp. 176, 177 n.1 (E.D. Pa. 1994).

Indeed, several courts have adopted that reasoning in using mailing addresses or residences to determine citizenship for CAFA purposes. *See Randall v. Evamor, Inc.*, No. 4:09CV01756, 2010 WL 1727977, at *2 (E.D. Mo. Apr. 29, 2010) (evidence of "last-known addresses in Missouri creates a rebuttable presumption that those individuals are Missouri citizens for purposes of the home state exception"); *Haynes v. EMC Mortg. Corp.*, No. C 10-00372, 2010 WL 1445650, at *3 (N.D. Cal. Apr. 12, 2010) (defining class to include persons whose California residential property was subject to foreclosure established that at least two-thirds of class were California citizens); *Redd v. Suntrup Hyundai, Inc.*, No. 09CV411, 2009 WL 2568054, at *4 (E.D. Mo. Aug. 18, 2009) ("the court can presume, absent evidence to the contrary, that 72.7% of potential class members, who had Missouri addresses when they paid the [challenged fee], were Missouri citizens at the time this lawsuit was filed"); *Joseph v. Unitrin,*

---

[1] Plaintiffs try to draw a distinction between mailing address and residence, but they cite no authority that adopts such a distinction. Nor do they give any factually or legally supported reason to think that the mailing address that a customer provides to a bank at which it has a checking account does not reflect the state in which the customer resides (and is a citizen).

5

*Inc.*, No. 1:08-CV-077, 2008 WL 3822938, at *6 (E.D. Tex. Aug. 12, 2008) (applying "common sense presumption" that residents are citizens); *Fuller v. Home Depot Servs., LLC*, No. 1:07-CV-1268-RLV, 2007 WL 2345257, at *3 (N.D. Ga. Aug. 14, 2007) (residence "is sufficient evidence to show" citizenship of putative class members because "absent any contradictory evidence, their place of residence is their 'domicile'").[2]

Doing so not only comports with precedent, it makes good sense. The place of one's residence or mailing address is an excellent predictor of citizenship. In a class action—which is supposed to foster efficient litigation—there is no good reason to disregard such a predictor in favor of burdensome discovery into the nuances of the citizenship of individual class members.[3] Even the surveys and other methods that some courts have suggested as a way to estimate the citizenship composition of a proposed class will burden the parties, the putative class members, and the Court.[4] And such methods, of course, are no less predictions of actual citizenship composition than the use of mailing addresses or residences.

To be sure, plaintiffs cite (at 9) decisions that reject the sufficiency of residence and mailing-address evidence to establish citizenship for CAFA purposes. But those decisions too quickly reject the common sense notion that citizenship tightly correlates with residency and too readily impose the unnecessary burden of pursuing additional evidence that may remain merely predictive. Plus, a motivating factor in those decisions appears to have been the fact that the *plaintiff* was invoking the CAFA exception and thus had the ability to avoid any citizenship dispute or discovery burden by defining the class in an appropriate way. *See In re Sprint Nextel Corp.*, 593 F.3d 669, 676 (7th Cir. 2010); *Gavron v. Weather Shield Mfg., Inc.*, No. 10-22088-CIV, 2010 WL 3835115, at *3 (S.D. Fla. Sept. 29, 2010). Here, obviously, that is not true.

---

[2] The Eleventh Circuit has expressly reserved for future consideration the "kind or quantity of evidence that should be required" to satisfy CAFA's local controversy and home state exceptions. *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1168 n.8 (11th Cir. 2006).

[3] Indeed, both Congress and the courts have recognized that jurisdictional determinations under CAFA's home state exception "'should be made largely on the basis of readily available information.'" *Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 460 (D.N.J. 2007) (quoting Senate Judiciary Committee report on CAFA, S. Rep. No. 109-14, at 44 (2005)).

[4] Plaintiffs surprisingly fault Associated for not having surveyed putative class members regarding their citizenship. As plaintiffs undoubtedly know, such unilateral contact with putative class members is fraught with risk that such communications will be claimed to interfere with class proceedings. *See Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561-65 (S.D. Fla. 2008).

6

Finally, it must be remembered that plaintiffs themselves allege only residence in trying to plead the required diversity of citizenship needed for CAFA jurisdiction. Am. Compl. ¶¶ 10, 12-14; *see* 28 U.S.C. § 1332(d)(2)(A) (requiring that "any member of a class of plaintiffs is a citizen of a State different from any defendant").[5] If alleging residence is good enough for them, then evidence of residence should be good enough for Associated. And if residence is not good enough, then their complaint must be dismissed for lack of jurisdiction.

### B.  Plaintiffs' Speculation Does Not Make Associated's Address Information Unreliable.

Having excoriated Associated for supposedly relying on speculation to impute citizenship from mailing address information, plaintiffs naturally resort to their own unvarnished speculation about why they think the mailing address information may not reflect putative class member citizenship on the date they commenced this suit. Such speculation does not preclude the legally and factually supported use of Associated's customer address information to determine the citizenship of proposed class members for CAFA purposes.

Plaintiffs first opine that some of Associated's customer information must be assumed to be stale because it stretches back six years and approximately 400,000 people have moved out of Wisconsin in that time. However, there is no evidence as to what portion of those 400,000 were Associated customers, much less putative class members who did not update their addresses. Moreover, the report from which plaintiffs calculate the 400,000 number also notes that in-migration surpasses out-migration and is driven by people coming from the Chicago and Minneapolis areas. *See* http://www.doa.state.wi.us/docview.asp?locid=9&docid=7269. As Associated operates in those areas, any out-migration of putative class members is likely to have been offset by in-migration of putative class members.

Plaintiffs also tell a story about how some University of Wisconsin students either never were or eventually ceased being Wisconsin citizens. But again, they supply no evidence regarding what portion of the Wisconsin students from other states had accounts with Associated, provided a Wisconsin mailing address, did not ultimately become Wisconsin citizens, and did not update their address to reflect their domicile. Nor do they give any

---

[5] Plaintiffs try to sidestep their allegations on this point, claiming that Associated does not contest plaintiffs' citizenship. That unsupported assertion is wrong. If the Court does not dismiss this suit, Associated absolutely intends to pursue discovery on the citizenship of the named and unnamed plaintiffs.

information at all about the number of students who supposedly gave up their Wisconsin citizenship after graduation, had Associated accounts, and did not update their addresses. Plus, plaintiffs ignore the offsetting effect of Wisconsin citizens who attended school in other states and maintained an Associated account with an out-of-state mailing address.

Finally, plaintiffs try to make something of the fact that Associated has recently expanded in Illinois and Minnesota. But all of Associated's new customers in those states are fully reflected in the statistics reported in the Saccol affidavit. As that affidavit shows, more than 70% of the Responsive Customers still have Wisconsin addresses. Saccol Aff. ¶¶ 8, 9.

V.     **Plaintiffs' Suit Is Subject To CAFA's Discretionary Home State Exception.**

The motion to dismiss also showed that, even if it were not subject to CAFA's mandatory home state exception, this case falls under the discretionary home state exception because at least one-third of the proposed class members are Wisconsin citizens and the six statutory factors that guide the Court's discretion favor declining jurisdiction. *See* 28 U.S.C. § 1332(d)(3). Plaintiffs put up only token resistance to the conclusion that at least 33.3% of the proposed class members are Wisconsin citizens. When over 70% of the proposed class members have Wisconsin addresses (Saccol Aff. ¶ 8), that conclusion is unavoidable. Plaintiffs instead focus their response on the six statutory factors, claiming that the factors support retaining jurisdiction. They are mistaken.

Plaintiffs say that this case is of national and interstate interest, satisfying the first statutory factor, because this case is part of an MDL against large national banks and involves some customers outside Wisconsin. But the fact that plaintiffs forced this case into an MDL does not broaden the group of people and entities with interest in the case. This is a stand-alone suit against Associated that is independent of and must be judged separately from whatever other cases are part of the MDL. And this case principally involves issues of interest to Wisconsin, given that Associated's main office and the large majority of its branches are located there and the large majority of proposed class members live there. Saccol Aff. ¶¶ 3, 8, 10.[6]

---

[6] These facts distinguish this case from *Webb v. Riceland Foods, Inc.*, No. 4:08-CV-01048, 2008 WL 4820565, at *3 (E.D. Ark. Nov. 4, 2008), which plaintiffs cite for the notion that MDL proceedings signal national interest. In *Webb*, the MDL signaled national interest because the complained-of rice contamination reached far beyond the home state given that the contaminated rice traveled in interstate commerce. *Id.*

8

Although plaintiffs are correct that some claims of some proposed class members will be governed by the laws of states other than Wisconsin, the second statutory factor still does not tilt toward retaining jurisdiction. Most proposed class member claims will be governed by Wisconsin law because the overwhelming majority of proposed class members are from Wisconsin. Saccol Aff. ¶ 8. Particularly when the choice is between a federal court located in Florida and a Wisconsin state court, the better course is to decline jurisdiction over a case that principally revolves around Wisconsin law even if it also calls for application of Minnesota and Illinois law to a lesser extent.

Although plaintiffs acknowledge that the third statutory factor ordinarily disfavors federal jurisdiction when a case is not pleaded to avoid federal jurisdiction, they assert that the factor favors federal jurisdiction here because Associated is supposedly engaged in forum shopping. We have already shown why that accusation is false. *See supra* Part I. The third factor is aimed at artful pleading to avoid federal jurisdiction. *See* S. Rep. No. 109-14, at 37 (2005) (describing purpose of factor). Associated has engaged in no such artful pleading. It has merely pointed out that the proposed class pleaded by plaintiffs falls within an express exception to CAFA jurisdiction.

On the fourth statutory factor, plaintiffs concede that the proposed class members, the alleged harm, and the defendant all have a "nexus" with Wisconsin. But they pretend that an MDL proceeding in the Southern District of Florida somehow has the same nexus because plaintiffs sued in Wisconsin federal court before forcing the case to Florida. That is obviously absurd. So too is plaintiffs' contention that the nexus with Wisconsin is not distinct because other states have a connection to the case. Wisconsin's nexus with the case is amply "distinct," given that the large majority of proposed class members and Associated itself are located in the state. *See Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 C 5944, 07 C 2439, 2007 WL 4105204, at *11 (N.D. Ill. Nov. 14, 2007) (majority of plaintiffs were citizens of home state and defendants were either citizens or had strong connections).

Plaintiffs do not challenge Associated's showing that the fifth statutory factor is satisfied by the fact that four times as many proposed class members are from Wisconsin as are from other states and those from other states are dispersed throughout all 49 of the other states. Instead, plaintiffs repeat their objection to Associated's proof of citizenship. As we have shown, that objection is meritless. *See supra* Part IV.

9

Finally, on the sixth factor, plaintiffs do not dispute that no similar class action has been filed against Associated in the last three years. Yet they maintain that the factor nonetheless favors federal jurisdiction because this case is part of an MDL involving similar class actions *against other defendants*, relying again on the *Webb* case. *Webb*, however, actually refutes plaintiffs' position. When the *Webb* court believed that none of the other MDL class actions were against the defendant, it counted the sixth statutory factor as disfavoring federal jurisdiction. *Webb*, 2008 WL 4820565, at *4. But when the *Webb* court learned that some of the other MDL class actions included the defendant, it took the opposite position. *Webb v. Riceland Foods, Inc.*, No. 4:08-CV-01048, 2008 WL 4960464, at *1 (E.D. Ark. Nov. 17, 2008). Here, it is undisputed that none of the other class actions in this MDL are against Associated.

In sum, most if not all of the statutory factors point toward declining jurisdiction. Accordingly, if the Court finds the mandatory home state exception inapplicable, the Court should decline jurisdiction under the discretionary home state exception.

**VI.   Merits Proceedings Should Be Stayed To Answer Any Unresolved Jurisdictional Questions.**

In the event the Court is unpersuaded that Associated's customer address information adequately establishes the proportion of the proposed class with Wisconsin citizenship, Associated respectfully asks that the Court authorize limited jurisdictional discovery on the question and stay all merits proceedings until the Court can definitively determine whether CAFA's home state exceptions apply. When jurisdictional objections arise, courts routinely order such relief. *See, e.g.*, *Maynard v. Colo. Sup. Ct. Office of Atty. Reg. Counsel*, No. 09-cv-02052, 2010 WL 231555, at *2 (D. Colo. Jan. 13, 2010); *Orchid Biosciences, Inc. v. St. Louis Univ.*, 198 F.R.D. 670, 675 (S.D. Cal. 2001). Doing so would promote the efficient resolution of a potentially dispositive issue. It would save the parties and the Court from the costs and burdens of potentially unnecessary merits proceedings. And the brief time needed to conduct discovery would not prejudice either party, as plaintiffs' unopposed request for a 60-day extension of time to respond on jurisdictional issues confirms. [DE # 1182] If the submitted evidence does not allow the Court to grant Associated's Rule 12(b)(1) motion, limited jurisdictional discovery and a stay of merits proceedings would be the appropriate next steps.

Dated:  March 14, 2011

By:  *s/Benjamine Reid*
Benjamine Reid (FL Bar # 183522)
Email: breid@carltonfields.com
Aaron S. Weiss (FL Bar # 48813)
Email: aweiss@carltonfields.com
**CARLTON FIELDS, P.A.**
100 Southeast Second Street, Suite 4200
Miami, Florida  33131
Telephone No. (305) 530-0050
Facsimile No.  (305) 530-0055

---and---

David D. Pope (Admitted Pro Hac Vice)
Email: dpope@mayerbrown.com
Debra Bogo-Ernst (Admitted Pro Hac Vice)
Email: dernst@mayerbrown.com
Lucia Nale (Admitted Pro Hac Vice)
Email:  lnale@mayerbrown.com
Joshua Yount (Admitted Pro Hac Vice)
Email:  jyount@mayerbrown.com
**MAYER BROWN LLP**
71 South Wacher Drive
Chicago, Illinois  60606
Telephone: No. (312) 782-0600
Facsimile No. (312) 701-7711

*Attorneys for Defendant Associated Bank, N.A.*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized matter for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*s/Aaron S. Weiss*
Aaron S. Weiss