UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036
*Fourth Tranche*

THIS DOCUMENT RELATES TO:

*Simmons et al v. Comerica Incorporated, et al*
N.D. Tex. Case No. 10-cv-326
S.D. Fla. Case No. 1:10-cv-22958

_____

REPLY MEMORANDUM IN SUPPORT OF
COMERICA BANK'S MOTION TO DISMISS

_____

**Kenneth C. Johnston**
Texas Bar No. 00792608
**James B. Greer**
Texas Bar No. 24014739

**KANE RUSSELL COLEMAN & LOGAN PC**
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 777-4200
(214) 777-4299 (Telecopy)

**ATTORNEYS FOR COMERICA BANK**

# I. PRELIMINARY STATEMENT

The Plaintiffs argue that the Court should summarily deny Comerica Bank's motion to dismiss because this Court rejected similar arguments made by the First and Third Tranche banks. These generalized arguments—while interesting—ask this Court to make improvident *Erie* guesses. The Court should reject these arguments, evaluate the applicable state law *de novo,* and grant Comerica Bank's motion for several reasons.

First, Comerica Bank asks the Court to recognize that federal preemption bars the claims at issue. Comerica Bank, as a Texas state chartered bank, is entitled to assert federal preemption under the parity doctrine. While this Court declined to recognize preemption earlier, recent revisions to Regulation E demonstrate not only a pervasive federal regulatory scheme but also that the state laws at issue more than incidentally interfere with this regulatory scheme.

Second, Comerica Bank asks the Court to dismiss all claims for which the Plaintiffs lack Article III standing. Texas law applies to Patricia Mattlage's claims, and Michigan law applies to Delphia Simmons' claims.

Third—and the focus of this reply—the Court should dismiss the Texas and Michigan claims for the following reasons:

- **Good Faith & Fair Dealing**: The Plaintiffs' argument ignores the Court's prior dismissal of Texas common law claims. Similarly, the Michigan Supreme Court has <u>never</u> recognized an implied duty of good faith and fair dealing, and none exists under these facts.
- **Unconscionability**: Neither Texas nor Michigan laws recognize unconscionability as an affirmative claim for relief at common-law.
- **Conversion**: The deposit agreements preclude the Plaintiffs' conversion claims under the facts as pleaded.
- **Unjust Enrichment**: The Plaintiffs' express reliance on the deposit agreements bars their unjust enrichment claims.

In essence, the Plaintiffs seek to deprive Comerica Bank of a voice on the faulty premise that the Court has denied the same arguments made by other banks. To the contrary, Comerica

Bank's motion raises new arguments and binding precedent, which warrant recognition under *Erie* and its progeny.

## II.     ARGUMENT AND AUTHORITIES

**A.     Plaintiffs Fail to State a Claim for Breach of an Implied Covenant of Good Faith and Fair Dealing**

### *1.     Texas Law*

Texas law does not recognize an implied duty of good faith and fair dealing under the alleged facts.[1] Indeed, in the Omnibus Ruling, the Court correctly construed Texas law.[2]

Notwithstanding the law of the case, Mattlage argues that the Court should reverse its ruling. Mattlage's argument fails for two critical reasons. First, *Wil-Royce Inv. Co. II v. Wash. Mut. Bank, F.A.*[3]— and not *Plaza Nat'l Bank v. Walker*[4]—most correctly reflects the contours of the duty of good faith and fair dealing under Texas law. Thus, the Court correctly relied on *Wil-Royce* to dismiss breach of implied duty claims based on Texas law.[5]

Second, the Texas Supreme Court implicitly overruled *Plaza*.[6] Nonetheless, Mattlage expends great effort to explain the significance attributed to the *writ* histories of *Wil-Royce* and

---

[1] *See Subaru v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225 (Tex. 2002)("A common-law duty of good faith and fair dealing does not exist in all contractual relationships. Rather, the duty arises only when a contract creates or governs a special relationship between the parties.")(internal citations omitted). *See also Wil-Royce Inv. Co. II v. Wash. Mut. Bank, F.A.* 142 S.W.3d 393 (Tex.App.—El Paso 2004, no pet.)(holding that banks owe a duty of good faith and fair dealing only if the depositor is a shareholder of the bank who seeks the bank's advice on specified matters); *Eller v. Nationsbank of Texas, N.A.*, 975 S.W.2d 803 (Tex.App.—Amarillo 1998, no pet.)(holding bank owes no duty of good faith and fair dealing to safety deposit box customer).

[2] *In re Checking Account Overdraft Lit.*, 694 F.Supp.2d 1302, 1315-17 (S.D. Fla. 2010); *see also* Omnibus Ruling [Doc. 305] at 24-25.

[3] *Wil-Royce Inv. Co. II v. Wash. Mut. Bank, F.A.,* 142 S.W.3d 393 (Tex.App.—El Paso 2004, no pet.)(holding that banks owe a duty of good faith and fair dealing only if the depositor is a shareholder of the bank who seeks the bank's advice on specified matters).

[4] *Plaza Nat'l Bank v. Walker* , 767 S.W.2d 277 (Tex.App.—Beaumont 1989, writ denied).

[5] *In re Checking Account Overdraft Lit.*, 694 F.Supp.2d at 1315-17; *see also* Omnibus Ruling [Doc. 305] at 24-25.

[6] *Eller v. Nationsbank of Texas, N.A.*, 975 S.W.2d 803 (Tex.App.—Amarillo 1998, no pet.)(citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contrs., Inc.*, 960 S.W.2d 41, 52 (Tex. 1988) and *FDIC v. Coleman*, 795 S.W.2d 706, 708-709 (Tex. 1990)).

*Plaza*. For purposes of *Erie,* the Mattlage's myopic writ-history analysis is not relevant.[7] In rejecting *Plaza*, the Texas court of appeal in *Eller v. Nationsbank of Texas, N.A.* recognized as follows:

> First, while *Plaza* held that a bank and its depositors enjoyed the type of special relationship giving rise to duties of good faith and fair dealing, the opinion reveals no analysis to support the conclusion. Rather, the court simply cited *Arnold v. Nat'l County Mut. Fire Ins Co.*, 725 S.W.2d 165 (Tex. 1987), and recognized that it imposed the duty in question upon parties enjoying "special relationships." *Id.* Yet, *Arnold* dealt with the relationship between an insured and its insurer. It had nothing to do with a debtor/creditor relationship existent between a bank and its depositor, as in *Plaza*. So, it is obvious that *Arnold* did not dictate the result in *Plaza*. Given this, and the complete absence of other discussion explaining why a bank and its depositor should be treated akin to an insurance company and its insured, we are reluctant to assign any weight to *Plaza*.
>
> Second, since *Plaza*, the Texas Supreme Court has reaffirmed the long-settled principle that the duty of good faith does not arise in ordinary commercial transactions. So too has it recognized that the mere relationship of debtor and creditor is not sufficiently special to impose a duty of good faith upon its parties. Since the relationship between a bank and its depositor is one of debtor and creditor, **Plaza has been implicitly overruled**.[8]

Consequently, *Plaza* does not support an implied duty of good faith and fair dealing under Texas law in this case.

### 2. Michigan Law

To allow Simmons to persist in her claim would ignore a critical, yet fundamental fact: the Michigan Supreme Court has <u>never</u> recognized an implied duty of good faith and fair dealing.[9] In deference, the Michigan intermediate courts of appeal routinely deny recognition of such claims.[10]

---

[7] For the record, Comerica Bank disagrees with Mattlage's writ-history argument.

[8] *Eller*, 975 S.W.2d at 809 (internal citation omitted)(emphasis added).

[9] *Fodale v. Waste Mgt. of Michigan, Inc.*, 271 Mich. App. 11, 35 (Mich. App. 2006) ("Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing."); *Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 476 (Mich. App. 2003) (holding in connection with lease dispute that "Michigan does not recognize a claim for breach of an implied covenant of good faith and fair dealing"); *Dahlman v. Oakland University*, 172 Mich. App. 502, 507 (Mich. App. 1998)("We decline to recognize such a cause of action, because such a radical departure from the common law and Michigan precedent should only come from the Supreme Court"); *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich. App. 194, 197 (Mich. App. 1991)(holding in the context of claims asserted between borrower and federally charted land bank that "Michigan does not recognize an independent action for an alleged breach of a contract's implied covenant of good faith and fair dealing.").

Alternatively, Simmons argues that a minority view should apply because the Deposit Agreement grants discretion with regard to posting order. A few Michigan intermediate courts of appeal imply a duty of good faith and fair dealing in reliance on *Burkhardt v. City Nat'l Bank of Detroit*.[11] Notably, *Burkhardt* does not cite any Michigan legal authority. In contrast, the opinion merely cites a legal treatise as the genesis of this duty.[12] However, *Burkhardt* does not apply in this case because "neither party's duties are defined by the exercise of the discretion reserved to the other party."[13]

*Engel Management, Inc. v. Ford Motor Credit Co.*[14] provides a good example of why this Court should not impose a duty of good faith and fair dealing to rewrite the Deposit Agreement. Analyzing a discretionary contractual right similar to that in the Deposit Agreement, the *Engel* court declined to impose a duty of good faith to override a defendant's contractual right to make decisions in its sole discretion:[15]

> The wholesale agreement [at issue] state[d] that defendant "at all times shall have the right in its *sole discretion* to determine the extent to which, the terms and conditions on which, and the period for which it will make such advances, purchase such contracts or otherwise extend credit to the Dealer . . . under the Plan or otherwise." (Emphasis added.) The agreement further state[d] that defendant "may, at any time and from time to time, *in its sole discretion*, establish, rescind or change limits or the extent to which financing accommodations under the Plan will be made available to Dealer."[16]

---

[10] *See id.*

[11] *Burkhardt v. City Nat'l Bank*, 57 Mich.App. 649 (Mich. App. 1975).

[12] *See Burkhardt*, 57 Mich. App. at 652 (citing 3A Corbin, Contracts, s 644, pp.78-84).

[13] *See Maida v. Retirement Health Serv. Corp.*, 795 F.Supp. 210, 214 (E.D. Mich. 1992)("[The plaintiff's] reliance upon *Burkhardt* is misplaced. In *Burkhardt*, the bank's authority to make and enforce estimates gave it discretion in identifying the mortgagor's obligations. In the case at bar, the duties of both parties are set forth with specificity and neither party's duties are defined by the exercise of the discretion reserved to the other party.").

[14] *Engel Management, Inc. v. Ford Motor Credit Co.,* 2009 WL 348828 (Mich. App. 2009) (unpublished decision).

[15] *Engel Mgmt.*, 2009 WL 348828, at *7.

[16] *Id.* at *7 (emphasis in original).

The court held that the "[d]efendant's alleged lack of good faith [could not] override an express provision in a contract."[17] Accordingly, because the defendant had the contractual right to change credit limits in its sole discretion, the plaintiffs could not maintain a breach of contract action based on the defendant's exercise of that right.[18] Similarly, Simmons cannot maintain a breach of contract action based on allegations that Comerica Bank exercised its contractual right to pay items in any order. The Deposit Agreement vested Comerica Bank with the express right to pay items from highest to lowest dollar amount in its sole discretion.[19]

Furthermore, even the Michigan intermediate courts of appeal that give credence to the minority *Burkhardt* view also hold that courts may not impose an implied duty of good faith to override or to replace an express contractual term.[20] Nor may a court impose this duty to "require a party to ignore, forego or waive its express contractual rights."[21] In *Maida v. Retirement Health Service Corporation*, a Michigan federal court explained that the implied duty in *Burkhardt* applies only where one party's discretion affects or alters the other party's obligations under the contract.[22]

---

[17] *Id.*

[18] *See id.*

[19] Deposit Agreement [Doc. 990-1] ¶2.20 ("In our sole discretion, we determine what order checks, transfers or other orders of withdrawal will be paid from the funds in your Account. Generally, we will pay highest to lowest dollar amount after assessing any fees, charges, or other obligations due the Bank.").

[20] *Eastway & Blevins Agency v. Citizens Ins. Co. of Am.*, 206 Mich.App. 299, 303 (Mich. App. 1994)("A lack of good faith cannot override an express provision in a contract."); *see Van Arnem Co. v. Mfg. Hanover Leasing Corp.*, 776 F.Supp. 1220, 1223 (E.D. Mich. 1991) ("The implied covenant of good faith under Michigan law, as well as under the law of other jurisdictions having persuasive effect, neither overrides nor replaces any express contractual term."); *see Engel Mgmt, Inc. v. Ford Motor Co.*, 2009 WL 348828, *7 (Mich. App. 2009) (unpublished opinion) ("Defendant's alleged lack of good faith cannot override an express provision in a contract.") (internal quotations omitted); *see Jacobson v. BH Assoc. Ltd. Partnership*, 2001 WL 738408 (Mich. App. 2001) (unpublished opinion)("[a] lack of good faith cannot override an express contract provision); *see Ann Arbor Acquisition Corp. v. Gen. Motors Corp.*, 2005 WL 658761 (Mich. App. 2005) (unpublished opinion) ("A lack of good faith cannot override an express provision in a contract.").

[21] *Van Arnem*, 776 F.Supp. at 1223-25 (holding that summary judgment for the defendant was proper because the plaintiff did not raise any material fact issues to suggest that the defendant breached the implied covenant of good faith by acting in accord with an express contractual right).

[22] *See id.; see also Eastway & Blevins Agency*, 206 Mich.App. at 302 (holding that "[i]n contract termination cases, good faith is required only where the terminating party has unbridled discretion with respect to the other party's performance under the contract"); *see also Jacobson*, 2001 WL 738408, at *1 ("Where, as here, a contract expressly grants a party complete discretion with respect to particular matters, the covenant of good faith will not be imposed to restrict the exercise of that discretion and thereby override the contract.").

Therefore, even under the minority *Burkhardt* view, Michigan courts may only impose a duty of good faith to limit discretion where the exercise of that discretion affects the other party's contractual performance or obligations.[23]

Comerica Bank's exercise of its express rights did not affect Simmons' obligations or performance under the Deposit Agreement. Indeed, regardless of the order Comerica Bank paid Simmons' debit transactions, the Deposit Agreement obligated Simmons to maintain a positive balance before engaging in any withdrawal transaction.[24] Consequently, this Court should not impose a duty of good faith and rewrite the Deposit Agreement.

For these reasons, Comerica Bank asks the Court to dismiss the Plaintiffs' breach of contract claims.

**B.     The Law of Unconscionability Does Not Afford the Plaintiffs Any Entitlement to Relief**

Neither Michigan nor Texas laws recognize an affirmative claim for unconscionability.[25] It remains settled in both jurisdictions that unconscionability exists merely as an affirmative defense to contract enforcement.[26] Indeed, both cases cited by Plaintiffs to the contrary—*Whirlpool Corp.* and *McCalla*—involve unconscionability raised in the context of declaratory judgment actions resisting the enforcement of contracts.[27] Here, the Plaintiffs do not plead unconscionability as a

---

[23] *See Eastway & Blevins Agency,* 206 Mich.App. 299, 303; *see Ann Arbor Acquisition Corp.,* 2005 WL 658761, at *3.

[24] Deposit Agreement [Doc. 990-1] ¶ 7.04 ("You are responsible to know the amount of available funds you have in your Account prior to initiating a transaction or authorizing a transaction that will reduce the balance in your Account."); *see* Deposit Agreement [Doc. 990-1] ¶ 2.05(1) ("You agree that you will not use your Account to conduct any transaction that would violate the terms of this Deposit Contract.").

[25] *See, e.g., Newman v. Roland Mach. Co.*, 2009 WL 3258319 at *10-11 (W.D. Mich. Oct. 8, 2009)(holding Michigan law recognizes unconscionability as a contractual defense, but "not as an affirmative [claim] for damages"); *see also Pony Exp. Courier Corp. v. Morris*, 921 S.W.2d 817, 820-21 (Tex.App.—San Antonio 1996, no writ)(holding unconscionability is an affirmative defense to a breach of contract claim that must be specifically pleaded).

[26] *Id*.

[27] *Whirlpool Corp. v. Grigoleit*, 2007 WL 397030, *2 (W.D. Mich. 2007); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 128 (Tex.App.—Waco 2005, pet. denied).

defense to enforcement of the Deposit Agreements. In contrast, they plead that Comerica Bank, wrongfully debited overdraft fees from the Plaintiffs' checking accounts.[28]

Plaintiffs' unconscionability "claims" constitute a disguised challenge to the Uniform Commercial Code's ("UCC") long-standing "convenience rule."[29] Both the challenged banking practices and the relevant provisions of the Deposit Agreements emanate from this rule. Recognizing the weakness of a frontal assault on this bedrock UCC principle, Plaintiffs' obfuscate the true scope of the relief sought. A less veiled challenge of the "convenience rule" was mounted in *Fetter* but squarely rejected:

> Fetter, in essence, is asking this court to write this provision out of the Agreement, and authorization for the provision out of the UCC. The net effect of Fetter's requested change would render section 4.303 of Texas's UCC non-uniform, in derogation of the Code's purpose "to make uniform the law among the various jurisdictions."[30]

Relying on this bedrock UCC principle, courts have routinely upheld high-to-low posting.[31]

Because the posting practice incorporated in the Deposit Agreements emanate from a bedrock UCC principle it cannot be "shockingly improper." Similarly, it is well settled that a "take it or leave it" contract is not unconscionable, as a matter of law, when the complaining party could

---

[28] Plaintiffs generally allege that other Deposit Agreement terms are unconscionable; however, each only claims injury from Comerica Bank's high-to-low debit transaction posting practices. *See* Amended Complaint [Doc. 990] ¶¶ 50-51. Because Plaintiffs fail to plead injury resulting from other alleged unconscionable conduct, Plaintiffs fail to state claims for relief based on that conduct.

[29] *See* UCC §4-303(2). The "convenience rule" provides that unless a note, stop order, legal process, or setoff right would affect the order of payment, the UCC authorizes a bank to post a check or other item to a checking account in any order convenient to the bank. The "convenience rule" is respectively codified at §4.303 of the Texas Business & Commerce Code and §440.4303 of the Michigan Uniform Commercial Code.

[30] *Fetter v. Wells Fargo Bank Texas, NA,* 110 S.W.3d 683, 688 (Tex.App.—2003, no pet.) (citations omitted).

[31] *See White v. Wachovia Bank, N.A.*, 563 F.Supp.2d 1358, 1370 (N.D. Ga. 2008)(holding high-to-low posting not substantively unconscionable because it is expressly endorsed by the UCC); *Daniels v. PNC Bank, N.A.,* 137 Ohio App. 3d 247, 738 N.E.2d 447, 451 (2000)("[B]ecause the practice of high-low positing is allowed by [the UCC], it cannot be said to be itself unconscionable."); *Hill v. St. Paul Fed. Bank for* Sav., 329 Ill. App.3d 705, 263 Ill. Dec. 562, 768 N.E. 322 (2002)(holding that there can be no lack of good faith in acting as authorized by the UCC); *Hassler v. Sovereign Bank*, 2010 WL 893134 at *2-3, 374 Fed.Appx. 341, 344-45 (3d Cir. 2010) (not selected for publication in the Federal Reporter) (affirming the District Court's decision in *Hassler v. Sovereign Bank,* 644 F.Supp. 2d 509, 519 (D.N.J. 2009) to grant the Defendant's 12(b)(6) motion to dismiss).

have contracted for the same services elsewhere.[32] Here, neither Plaintiff alleges that she could only obtain a checking account from Comerica Bank. This precludes their entitlement to relief.

For these reasons, Comerica Bank asks the Court to dismiss the Plaintiffs' unconscionability claim.

C.   **Plaintiffs Do Not State a Claim for Conversion**

A conversion claim requires the Plaintiffs to prove the wrongful exercise of dominion or control over property without authorization and to the exclusion of the owner's rights in that property.[33] Further, one with superior rights to property cannot convert property.[34]

The Plaintiffs' rely primarily on the Omnibus Ruling in contending that the Amended Complaint states a plausible claim for conversion. However, because each Deposit Agreement establishes not only Comerica Bank's contractual right to charge overdraft fees but also the right to debit those fees from the Plaintiffs' accounts, an entitlement to relief must stem from a concrete allegation that Comerica Bank imposed overdraft fees when Plaintiffs' accounts were not actually overdrawn.[35] Neither Plaintiff pleads an actual instance of the imposition of an overdraft fee at a time when her account had a positive balance, such as by placement of an account hold.[36] Nor have

---

[32] *See In re Halliburton* Co., 80 S.W.3d 566, 572 (Tex. 2002)(holding that it is not unconscionable for Texas employers to offer at-will employees a take-it-or-leave-it agreement including arbitration provision); *Dillee v. Sisters of Charity*, 912 S.W.2d 307, 310-11 (Tex. App. - Houston [14th Dist.] 1995, no writ)(upholding provision in take-it-or-leave-it employment agreement waiving entitlement to due process notice and hearing); *see also Rory v. Continental Ins. Co.*, 703 N.W.2d 23 (Mich. 2005)(holding "[t]he term 'adhesion contract' may… be used to describe a contract for goods or services offered on a take-it-or-leave-it basis. But it may not be used as a justification for creating any adverse presumptions or for failing to enforce a contract as written."

[33]  *See Brennan v. Edward D. Jones & Co.*, 626 N.W.2d 917, 919 (Mich.App. 2001) (internal citation omitted); *N. Houston Int'l, L.L.C. v. PW Real Estate Invs., Inc*., 2003 WL 22453796, at *7 (Tex. App. – Houston [14th Dist.] Oct. 30, 2003) (not reported).

[34] *See, e.g., Riverview Coop. Inc.*, 337 N.W.2d at 229-30; *Bandy v. First State Bank*, 835 S.W.2d 609, 622 (Tex. 1992); *Upper Valley Aviation, Inc. v. Mercantile Nat'l Bank*, 656 S.W.2d 952, 955 (Tex. App. – Dallas 1983, writ ref'd n.r.e.) (holding "depositor may not sue in conversion to recover his deposit").

[35] *See White*, 563 F.Supp.2d at 1371 (allowing plaintiff's conversion claim to proceed given the allegation that overdraft fees were charged when there was no overdraft).

[36] This is also fatal to each Plaintiffs' standing to challenge this claimed practice. Comerica Bank moves for the dismissal of all claims for which Plaintiffs fail to allege an actual injury and causation. To have standing, Plaintiffs must allege an "injury in fact"—a harm suffered by the plaintiffs that is "concrete and . . . actual or imminent, not

Plaintiffs alleged that either demanded that Comerica Bank credit this improper overdraft fee, or that Comerica Bank refused to do so. Accordingly, the Amended Complaint fails to state a claim for conversion.

D.   **Plaintiffs Do Not State a Claim for Relief Based on Unjust Enrichment**

The Plaintiffs' unjust enrichment claims fail for two reasons. First, express reliance on the Deposit Agreements precludes Plaintiffs' unjust enrichment claim.[37] An action for unjust enrichment cannot lie in the face of an express contract.[38] The Plaintiffs acknowledge, incorporate, and rely on the Deposit Agreements and the "related documentation" in support of their breach of contract claim.[39] Thus, the existence of the Deposit Agreements defeats a common law claim for unjust enrichment under both Michigan[40] and Texas.[41]

As this Court instructed in a recent case, if the existence of an express contract is not in dispute, the claims arising out of that express contract will not support a claim for unjust

---

conjectural or hypothetical." *Young v. West Publ'g Corp.,* 724 F. Supp. 2d 1268, 1280 (S.D. Fla. 2010); *see also Stalley v. Orlando Reg'l Healthcare Sys., Inc.,* 524 F.3d 1229, 1232 (11th Cir. 2008) ("[P]arty invoking federal jurisdiction bears the burden of establishing" injury in fact, causation, and redressability).

[37] *See Hassler* 2010 WL at *4.

[38] *See White*, 563 F.Supp.2d at 1371 ("The Deposit Agreement covers [Defendant's] posting of transactions and imposition of overdraft fees. Plaintiffs allege that the same behavior underlying their unjust enrichment claim underlies their breach of contract claim. Effectively, Plaintiffs claim that there was a contract and that [Defendant] was unjustly enriched within a single count. This is not permissible, and the court must dismiss the unjust enrichment claim").

[39] *See* Amended Complaint [Doc. 990] at ¶¶ 103, 104.

[40] *Burton v. William Beaumont Hospital*, 373 F.Supp.2d 707 (E.D. Mich. 2005) ("Unjust enrichment is not a viable claim if an express contract governs") (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co.,* 96 F.3d 174, 181 (6th Cir. 1996) (applying Michigan law) ("Where the parties have an enforceable contract and merely dispute its terms, scope, or effect, one party cannot recover for promissory estoppel and unjust enrichment")); s*ee Fodale*, 718 N.W.2d at 841 ("In this case, an express contract . . . governs the parties' loan. This alone would foreclose plaintiff's unjust enrichment claim"); *see Keywell and Rosenfeld v. Bithell,* 657 N.W.2d 759, 776 (Mich. App. 2003) ("When unjust enrichment exists, the law operates to imply a contract in order to prevent it. However, a contract will be implied only if there is no express contract covering the same subject matter") (internal quotations omitted).

[41] *First Union Nat'l Bank v. Richmont Capital Partners I, L.P.*, 168 S.W.3d 917, 931 (Tex. App. – Dallas 2005, no pet.) ("The doctrine of unjust enrichment does not operate to rescue a party from the consequences of a bad bargain, and the enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract); *Burlington Northern Railroad Co. v. Sw. Elec. Power Co.*, 925 S.W.2d 92, 98 (Tex. App. – Texarkana 1996), *aff'd*, 966 S.W.2d 467 (Tex. 1998) (recognizing that remedy such as unjust enrichment that is based on quasi-contract is not available when a valid, express contract governing the disputed subject matter exists).

enrichment.[42]  Because mere incorporation of the provisions of an express contract between the parties is sufficient to support dismissal of an unjust enrichment claim, dismissal is proper at this stage of the litigation.[43]

Second, even if these unjust enrichment claims could coexist with the Deposit Agreements, the claims nonetheless fail because the Plaintiffs do not allege grounds upon which Comerica Bank's imposition of overdraft fees could lawfully be unjust.[44]  The Deposit Agreements specifically reserve to Comerica Bank the right to post transactions from high-to-low.  Therefore, high-to-low posting fell within Comerica Bank's contractual rights.[45]  Consequently, the Plaintiffs fail to state a claim for unjust enrichment.[46]

### III.   CONCLUSION

For these reasons, Comerica Bank asks the Court to grant the motion to dismiss or to grant such other and further relief to which Comerica Bank may be entitled.

---

[42] *Validsa, Inc. v. PDVSA Servs., Inc.*, 632 F. Supp. 2d 1219, 1243 (S.D. Fla. 2009) (King, J.).

[43] *See Spring Air Int'l, LLC v. R.T.G. Furniture Corp.*, 2010 WL 4117627 at *7 (M.D. Fla. 2010).

[44] *See Hassler* 2010 WL at **4 (affirming the district court's holding that "a party cannot satisfy this second prong . . . unless it can establish that 'the failure of remuneration enriched defendant beyond its contractual rights'"); *see also First Union Nat'l Bank,* 168 S.W.3d at 931; *Burlington Northern Railroad* Co, 925 S.W.2d at 98.

[45] *See, e.g., Hassler* 2010 WL at **4 (affirming the district court's decision that because the account agreement at issue "clearly reserved to [the bank] the right to post charges to the account each day in descending order of amount[,] . . . such posting was not 'beyond its contractual rights,' [and] the [bank's] collection of the overdraft fees did not 'enrich[] [it] beyond its contractual rights'"); *accord BMG Direct Mtg. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (finding that a plaintiff who voluntarily paid defendant with full knowledge of facts cannot recover under unjust enrichment theory – even if plaintiff was not sure of its legal obligation to pay).

[46] *See, e.g., id*; *see* Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**KANE RUSSELL COLEMAN & LOGAN PC**

By:   /s/ Kenneth C. Johnston

     Kenneth C. Johnston
     Texas Bar No. 00792608
     James B. Greer
     Texas Bar No. 24014739

3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas   75201
(214) 777-4200 (telephone)
(214) 777-4299 (facsimile)

**ATTORNEYS FOR COMERICA BANK**

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2011, I served the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. Mail on all counsel of record entitled to receive service.

/s/ Kenneth C. Johnston
Kenneth C. Johnston