# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

**THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTION**

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

## PLAINTIFFS' CIVIL RICO CASE STATEMENT

Pursuant to Local Rule 12.1, Plaintiffs Cynthia Larsen, et al., on behalf of a class of similarly situated persons (hereinafter, "Plaintiffs"), respectfully submit the following Civil RICO Case Statement in connection with their Third Amended Complaint [**DE # 1317**], filed on March 29, 2011 (the "TAC").[1]

This RICO Case Statement is based on the facts and evidence presently known to Plaintiffs. Plaintiffs' investigation and discovery in this matter is ongoing, and Plaintiffs expressly reserve their right to rely on any facts, documents, or other evidence that they may discover or develop at a later time, and may amend, revise, and/or supplement this RICO Case Statement in the future as necessary and appropriate.

---

[1] Plaintiffs' TAC contains detailed allegations setting forth the elements of their claim under the Racketeer Influenced and Corrupt Organizations Act of 1970, 18 U.S.C. §§ 1961 *et. seq.* (hereinafter "RICO"). The TAC and the exhibits thereto are generally incorporated herein by reference. Moreover, recognizing that many of the specific subsections of Local Rule 12.1 call for duplicative information, where appropriate and for the convenience of the Court, Plaintiffs incorporate by reference allegations in the TAC and exhibits to the TAC, as well as their responses made elsewhere in this RICO Case Statement, when responding to particular subsections. This RICO Case Statement does not serve to restrict, replace, or otherwise limit the allegations in the TAC, which remains the applicable pleading for purposes of Fed. R. Civ. P. 8.

> **(a)** State whether the alleged unlawful conduct is in violation of 18 U.S.C.
> §§ 1962(a), (b), (c), and/or (d) or Florida Statutes §§ 772.101(1), (2), (3)
> and/or (4).  If you allege violations of more than one (1) subsection of
> 18 U.S.C. § 1962 or Florida Statutes § 772.103, each must be treated or
> should be pled as a separate RICO claim.

Plaintiffs allege violations of 18 U.S.C. § 1962(c), predicated on violations of 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud).  *See* TAC, ¶¶ 120-134.

> **(b)** List each defendant, and separately state the misconduct and basis of liability
> of each defendant.

As alleged in the TAC, the RICO defendant here is Union Bank, N.A. ("Union Bank").  Union Bank is owned by UnionBanCal Corporation, which is incorporated in Delaware.  At all relevant times, Union Bank's headquarters and principal place of business were in California.

Plaintiffs' RICO claim arises out of Union Bank's association with third-party consultant CAST Management Consultants, Inc. ("CAST") for the deliberate purpose of engaging in an enterprise to assess and collect excessive and unconscionable overdraft fees.  In furtherance of this enterprise, beginning in or around January 2003, Union Bank and CAST agreed to develop and implement an unfair and deceptive business practice whereby Union Bank secretly manipulated and re-ordered customers' debit transactions in the order of highest to lowest in dollar amount for the purpose of artificially increasing the number of overdraft charges Union Bank imposed on its customers and thereby increasing Union Bank's overdraft fee revenue (as Union Bank put it: "The objective is to charge fees on more items").

The RICO enterprise involving Union Bank and CAST, an association-in-fact enterprise, dates back to at least 2001 or 2002.  In or around that time, CAST performed consulting services for the purpose of enhancing Union Bank's overdraft revenue through overdraft fee re-pricing (*i.e.*, changing the price charged per overdraft) and instituting "continuous overdraft fees" (*i.e.*, assessing successive overdraft fees when customers fail to bring their accounts to a positive balance).  In or about January 2003, Union Bank further sought

consulting services from CAST for "any ideas that have the potential to improve the Bank's bottom line," such that Union Bank would "leave no stone unturned, particularly in the fee income area." Thereafter, CAST actively solicited its retention by Union Bank for consultation services specifically for the purpose of recommending that Union Bank adopt a transaction posting practice whereby customers' debit transactions are re-ordered in the order of highest to lowest in dollar amount in order to artificially increase the number of overdraft occurrences and thereby increase and maximize Union Bank's overdraft revenue. Union Bank retained CAST for that purpose and CAST performed such services, including conducting a diagnostic analysis of the projected increase in fee revenue that would be generated by adopting high-to-low re-ordering.

In mid-2003, as part of the "High-to-Low Initiative," Union Bank and CAST established a joint "High to Low Implementation Team," consisting of employees and managers from both Union Bank and CAST, to assess Union Bank's capabilities of ordering transactions high-to-low and to estimate the potential revenue increase that would result from a high-to-low posting order. CAST projected that the switch to high-to-low posting would generate increased annual revenue of more than $17 million for Union Bank, and advised and recommended to Union Bank that it post debit transactions in high-to-low order so that it could charge overdraft fees on more transactions and help meet the enterprise goal of increased overdraft revenue, which, by agreement, both Union Bank and CAST would share.

In or about January 2004, Union Bank formally approved the commencement of, and funding for, implementing the "Posting Order/Sequence High to Low" plan, and Union Bank implemented high-to-low re-ordering of customers' debit transactions later in 2004.

In connection with, and in furtherance of, the high-to-low re-ordering scheme, Union Bank made material omissions and misrepresentations and engaged in unfair business practices,

including: (a) manipulating and re-ordering customers' debit transactions in the order of highest to lowest in dollar amount in order to cause customers to incur additional, excessive, and unconscionable overdraft fees; (b) delaying the posting of charges to customers' accounts so that it could amass a larger number of charges over several days, and then manipulate and reorder those charges from highest to lowest in dollar amount in order to maximize the number of overdraft fees charged; (c) providing customers with inaccurate balance information through its electronic network, including informing customers that they had positive balances when they had negative balances, despite the bank's knowledge of outstanding debit transactions; (d) assessing overdraft fees for transactions customers had sufficient funds in their account to cover; (e) failing to allow customers to opt-out of its overdraft scheme and/or failing to disclose that option to customers; (f) encouraging customers to incur more overdraft charges by approving—rather than declining—debit card purchases and other electronic transactions when there were insufficient funds in customers' accounts; (g) failing to notify customers when a debit transaction would cause an overdraft or give customers the opportunity to decline to go forward with such transactions, despite having the technological ability to do so; and (h) making material omissions and misrepresentations to customers by, *inter alia*, issuing misleading and ambiguous bank statements, Deposit Agreements, and other account information that misrepresented, obscured, and hid Union Bank's high-to-low re-ordering scheme and related practices and the consequences thereof; failing to disclose the impact on the number of overdrafts that resulted from the high-to-low re-ordering of debit transactions; and failing to disclose that it always re-ordered debit transactions in high-to-low order.

Plaintiffs incorporate by reference their response to subsection (c), below, which provides further detail regarding the nature of the RICO enterprise and Union Bank's conduct. Union Bank conducted the RICO enterprise's affairs through a pattern of racketeering activity,

consisting of numerous and repeated uses of the U.S mail and interstate wire facilities (including the Internet), to execute a scheme to defraud its customers. Union Bank's pattern of racketeering was continuing over several years and consisted of at least several thousand separate violations of 18 U.S.C. §§ 1341 and 1343.

Union Bank repeatedly used the U.S. mail and interstate wire facilities (including the Internet) in its development and furtherance of the high-to-low re-ordering scheme, in violation of 18 U.S.C. §§ 1341 and 1343. Union Bank repeatedly sent materials to its customers in furtherance of this scheme which facilitated its assessment of excessive and unconscionable overdraft fees pursuant to the scheme. These materials included Deposit Agreements, monthly bank statements and other account statements and account information. These materials were sent via the U.S. mail and via the Internet, and constitute numerous, repeated violations of 18 U.S.C. §§ 1341 and 1343.

Union Bank's conduct in furtherance of this scheme was intentional. Plaintiffs and the other members of the proposed class were harmed in that they relied to their detriment on Union Bank's conduct and incurred excessive and unconscionable overdraft fees as a result of Union Bank's conduct. Union Bank unfairly reaped millions of dollars in excessive overdraft fee revenue as a result of this scheme and its conduct in furtherance of this scheme. TAC, ¶¶ 37-134.

> **(c)     List the wrongdoers, other than the defendants listed above, and separately state the misconduct of each wrongdoer.**

CAST is the other member of the association-in-fact RICO enterprise. CAST is a consulting firm based in Los Angeles, California. CAST provides consulting services to a number of large banks, and purports to specialize in what it calls "Fee Revenue Optimization" services. Plaintiffs incorporate by reference their response to subsection (b), above, which describes CAST's role in the RICO enterprise. *See also* TAC ¶¶ 37-54, 120-134.

CAST recommended high-to-low re-ordering to Union Bank. When Union Bank decided to adopt high-to-low re-ordering, CAST assisted Union Bank with the development, implementation, and monitoring of the high-to-low re-ordering scheme.

CAST directly shared in the additional fee revenue that Union Bank generated from the high-to-low re-ordering scheme. Union Bank, by agreement, paid CAST 20% of the additional revenue that Union Bank received as a result of the high-to-low re-ordering initiative in the first year after implementation. TAC, ¶¶ 37-54.

**(d)     List the victims, and separately state when and how each victim was injured.**

Plaintiffs and the other members of the proposed class were all victims of Union Bank's high-to-low re-ordering scheme and conduct in furtherance thereof. They were each injured in that they incurred excessive, unconscionable overdraft fees, over and above what they would have incurred had Union Bank not engaged in the misconduct. These additional overdraft fees were the direct result of Union Bank's misconduct, which had the purpose and effect of generating additional overdraft occurrences. In all, Union Bank's misconduct caused Plaintiffs and the proposed class members to incur millions of dollars in excessive overdraft fees. The precise dates when Plaintiffs and each class member incurred additional overdraft fees as a result of Union Bank's misconduct, and the specific amount of injury suffered by each Plaintiff and proposed class member, are presently within Union Bank's exclusive knowledge. However, this information can be ascertained from Union Bank's comprehensive historical transactional records for the class period, which Union Bank has not yet produced to Plaintiffs. In the TAC, Plaintiffs have listed examples (including specific dates) of when Union Bank's misconduct caused them injury in the form of excessive overdraft fees. TAC, ¶¶ 85-119.

      **(e)**      **Describe in detail the pattern of racketeering/criminal activity or collection of an unlawful debt for each RICO claim. A description of the pattern of racketeering/criminal activity shall:**

            **(1)**      **separately list the predicate acts/incidents of criminal activity and the specific statutes violated by each predicate act/incident of criminal activity;**

Union Bank's pattern of racketeering activity supporting Plaintiffs' RICO claim is alleged in detail in the TAC. Plaintiffs further incorporate by reference their responses to subsections (b) and (c), above, and subsections (e)(2)-(6) and (f), below. The course of conduct alleged violated 18 U.S.C. §§ 1341 (mail fraud) and 1343 (wire fraud). These violations were continuing and ongoing throughout the several years long class period. During such time, Union Bank implemented a scheme to defraud customers by secretly re-ordering their debit transactions in the order of highest-to-lowest in dollar amount in order to artificially increase the number of overdraft occurrences and thereby increase its overdraft revenue. In furtherance of this scheme, Union Bank made material omissions and misrepresentations by means of the U.S. mail and the interstate wire facilities (including the Internet) with the intent that customers would rely on, and be deceived by, these omissions and misrepresentations. Union Bank provided its customers misleading and ambiguous bank statements, Deposit Agreements, and other account information that misrepresented, obscured, and hid Union Bank's high-to-low re-ordering scheme and related practices and the consequences thereof. Union Bank also failed to disclose the impact on the number of overdrafts that resulted from the high-to-low re-ordering of debit transactions and that it always re-ordered debit transactions in high-to-low order, failed to allow customers to opt-out of the bank's overdraft scheme and/or did not disclose that option to customers in the Deposit Agreement or otherwise, provided inaccurate balance information to customers via its electronic network, including informing customers they had a positive balance in their account when they had a negative balance, and failed to inform customers when a debit transaction would cause an

overdraft or allow customers to decline to go forward with such transactions, despite having the technological ability to do so.

Union Bank also used the U.S. mail and interstate wire facilities (including the Internet) in furtherance of the high-to-low re-ordering scheme, in violation of 18 U.S.C.§§ 1341 and 1343, in assessing and collecting the excessive overdraft charges, approving transactions into overdraft—rather than declining such transactions—when there were insufficient funds in the customer's account, assessing overdraft charges for transactions the customer had sufficient funds in their account to cover, sending bank statements and other account information to customers which included and reflected the excessive overdraft charges, and communicating regarding the development, implementation, and monitoring of the high-to-low reordering scheme.

Union Bank's pattern of racketeering involved at least several thousand separate violations of 18 U.S.C.§§ 1341and 1343 during the several years long class period. The precise dates of each use of the U.S. mail and interstate wires are known only to Union Bank and cannot be specifically alleged without access to witnesses and the books and records of Union Bank through discovery. *See* TAC, ¶¶ 37-134.

**(2)     separately state the dates of the predicate acts/incidents of criminal activity, the participants and a description of the facts surrounding each predicate act/incident of criminal activity;**

Plaintiffs incorporate by reference their responses to subsections (b), (c), (d), and (e)(1), above, and subsection (e)(3), below.

> **(3)** **if the RICO claim is based on the predicate offenses of wire fraud, mail fraud, fraud in connection with a case under Title 11, United States Code, or fraud as defined under Florida Statutes Chapter 817, the "circumstances constituting fraud or mistake shall be stated with particularity." Federal Rule of Civil Procedure 9(b) (identify the time, place, and contents of the misrepresentation or omissions, and the identity of persons to whom and by whom the misrepresentations or omissions were made);**

Union Bank's fraudulent scheme is described in detail in the TAC. Plaintiffs further incorporate by reference their responses to subsections (b), (c), and (e)(1), above.

Union Bank's use of the U.S. mail and interstate wires (including the Internet) in furtherance of its scheme included: misleading and ambiguous bank statements, Deposit Agreements, and other account information provided to customers that misrepresented, obscured, and hid Union Bank's high-to-low re-ordering scheme and related practices and the consequences thereof; failing to disclose the impact on the number of overdrafts that resulted from the high-to-low re-ordering of debit transactions; failing to disclose that it always re-ordered debit transactions in high-to-low order, failing to allow customers to opt-out of the bank's overdraft scheme and/or not disclosing that option to customers in the Deposit Agreement or otherwise; providing inaccurate balance information to customers via its electronic network, including informing customers they had a positive balance in their account when they had a negative balance; failing to inform customers when a debit transaction would cause an overdraft or allow customers to decline to go forward with such transactions, despite having the technological ability to do so; assessing and collecting excessive overdraft charges; approving transactions into overdraft—rather than declining such transactions—when there were insufficient funds in the customer's account; assessing overdraft charges for transactions the customer had sufficient funds in their account to cover; sending bank statements and other account information to customers which included and reflected the excessive overdraft charges;

and communicating regarding the development, implementation, and monitoring of the high-to-low reordering scheme.

Union Bank's pattern of racketeering involved at least several thousand separate violations of 18 U.S.C.§§ 1341 and 1343 during the several years long class period.  The precise dates of each use of the U.S. mail and interstate wires are known only to Union Bank and cannot be specifically alleged without access to witnesses and the books and records of Union Bank through discovery.  *See* TAC, ¶¶ 37-134.

> **(4)    state whether there has been a criminal conviction for any of the predicate acts/incidents of criminal activity;**

Plaintiffs are not aware of any criminal convictions for the predicate acts described herein and alleged in the TAC.

> **(5)    describe in detail the perceived relationship that the predicate acts/incidents of criminal activity bear to each other or to some external organizing principle that renders them "ordered" or "arranged" or "part of a common plan"; and**

The predicate acts described herein and alleged in the TAC are intimately related with each other and shared the same purposes, participants, results, victims, and methods of commission.  The predicate acts all were committed by Union Bank as part of, and in furtherance of, a scheme to defraud customers through the unfair and hidden manipulation of their debit transactions for the purpose of artificially increasing the number of overdraft occurrences and Union Bank's overdraft revenue.    The communications regarding the development, implementation, and monitoring of the re-ordering scheme were made in furtherance of the scheme.  The omissions, misrepresentations, and other communications Union Bank made to its customers were intended to facilitate, carry out, and hide from customers Union Bank's re-ordering scheme and related practices and the consequences thereof, and indeed had those intended effects.    The other communications, omissions, and conduct constituting illegal

predicate acts were likewise made in furtherance of the scheme and for the purpose of facilitating the scheme and its purpose of artificially increasing Union Bank's overdraft revenue.

Union Bank used the RICO enterprise as a vehicle to unfairly increase its overdraft revenue at the expense of its customers. Through its re-ordering scheme, and the predicate acts it committed in furtherance thereof, Union Bank reaped millions of additional dollars in overdraft fee revenue at the direct expense of its customers. *See* TAC, ¶¶ 37-134.

**(6)     explain how the predicate acts/incidents of criminal activity amount to or pose a threat of continued criminal activity.**

Union Bank's pattern of racketeering activity discussed herein was continuing over the course of the several years long class period, and consisted of at least several thousand separate violations of 18 U.S.C. §§ 1341 and 1343.

Union Bank's re-ordering scheme, and many of the predicate communications and acts in furtherance thereof, are continuing and ongoing. Among other things, Union Bank continues to re-order customers' debit transactions in high-to-low order to artificially increase the number of overdraft occurrences and its overdraft revenue, and continues to provide disclosures and other representations to customers that misrepresent, obscure, and hide its true posting practices and the consequences thereof. Union Bank continues to violate 18 U.S.C. §§ 1341 and 1343 on a regular basis in furtherance of the high-to-low re-ordering scheme.

**(f)     Describe in detail the enterprise for each RICO claim. A description of the enterprise shall:**

**(1)     state the names of the individuals, partnerships, corporations, associations, or other entities constituting the enterprise;**

At all relevant times, an association-in-fact enterprise, as defined by the civil RICO statute, existed among Union Bank and CAST, including their officers, directors, managers, employees, agents, and representatives who assisted in the development and implementation of initiatives—including but not limited to the high-to-low re-ordering initiative—designed to

artificially increase and maximize Union Bank's revenue.  Union Bank and CAST are separate and distinct corporations.

> **(2)    describe the structure, purpose, roles, function, and course of conduct of the enterprise;**

The RICO enterprise involving Union Bank and CAST is an association-in-fact enterprise, as defined by the RICO statute.  Plaintiffs incorporate by reference their responses to subsections (b) and (c), above.

The RICO enterprise consisted of Union Bank and CAST, a third party consultant which advised and recommended to Union Bank several methods by which it could increase and maximize its overdraft revenues, and assisted Union Bank with the development, implementation, and monitoring of adopted proposals.  The high-to-low re-ordering scheme and related practices at issue in this case are representative examples.  The members of the RICO enterprise had a common purpose:  to increase and maximize the revenue of Union Bank by increasing the overdraft fees received by Union Bank.  By agreement, Union Bank and CAST shared the increased overdraft fee revenue generated by their efforts.  *See* TAC, ¶¶ 37-54, 120-134.

> **(3)    state whether any defendants are employees, officers, or directors of the enterprise;**

The defendant, Union Bank, is a corporate entity that, at all relevant times, was employed by and associated with the RICO enterprise, an association-in-fact enterprise.

> **(4)    state whether any defendants are associated with the enterprise, and if so, how;**

The defendant, Union Bank, is a corporate entity that, at all relevant times, was employed by and associated with the RICO enterprise, an association-in-fact enterprise.  Union Bank participated directly in the conduct of the RICO enterprise's affairs through a pattern of racketeering activity, with the ultimate purpose of defrauding its customers and reaping millions

of dollars in additional revenue at its customers' expense.  Plaintiffs incorporate by reference their responses to subsections (b) (c), and (e), above.

> **(5)    explain how each separate defendant participated in the direction or conduct of the affairs of the enterprise;**

Union Bank violated 18 U.S.C. § 1962(c) by conducting the affairs of the RICO enterprise through a pattern of racketeering activity which involved at least several thousand separate violations of 18 U.S.C. §§ 1341 and 1343.  Union Bank directly participated in, conducted, co-developed, and implemented the high-to-low re-ordering scheme and the other initiatives developed by the RICO enterprise that were similarly aimed at increasing Union Bank's overdraft revenue.  Plaintiffs incorporate by reference their responses to subsections (b) (c), and (e), above.  *See* TAC, ¶¶ 37-134.

> **(6)    state whether you allege (A) that the defendants are individuals or entities separate from the enterprise, or (B) that the defendants are the enterprise itself, or (C) that the defendants are members of the enterprise; and**

The defendant, Union Bank, is a member of the RICO enterprise, an association-in-fact enterprise of Union Bank and CAST.  Union Bank and CAST are separate and distinct corporations.

> **(7)    if you allege any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the racketeering activity.**

The defendant, Union Bank, is a member of the RICO enterprise, an association-in-fact enterprise of Union Bank and CAST.  Union Bank directly participated in, conducted, co-developed, and implemented the high-to-low re-ordering scheme and the other schemes developed by the RICO enterprise that were similarly aimed at increasing Union Bank's overdraft revenue.  Union Bank was a perpetrator of the racketeering activity.  Plaintiffs

incorporate by reference their responses to subsections (b) (c), and (e), above. *See* TAC, ¶¶ 37-134.

> (g)  **State whether you allege, and describe in detail, how the pattern of racketeering/criminal activity and the enterprise are separate or have merged into one (1) entity.**

The TAC alleges in detail a pattern of racketeering activity that is distinct from the RICO enterprise. In addition to the conduct in connection with, and in furtherance of, the re-ordering scheme, proposed in 2003 and adopted in 2004, and related conduct at issue in this case, the RICO enterprise also functioned as a continuing association-in-fact enterprise, dating back to at least 2001 or 2002, that worked to propose, analyze, consider, develop, implement, and monitor a host of initiatives designed to increase and maximize Union Bank's revenue, some of which were adopted. The RICO enterprise pre-dates the conduct at issue in this case and has an ascertainable structure that is separate and apart from the conduct and racketeering alleged. Plaintiffs incorporate by reference their responses to subsections (b), (c), (e), and (f), above. *See* TAC, ¶¶ 37-54, 120-134.

> (h)  **Describe the relationship between the activities and the pattern of racketeering/criminal activity. Discuss how the racketeering/criminal activity differs from the usual and daily activities of the enterprise, if at all.**

Union Bank's racketeering activity during the class period was part of, and consistent with, the RICO enterprise's regular way of doing business. Such activity was consistent with the other conduct in furtherance of the RICO enterprise that was similarly aimed at increasing Union Bank's overdraft revenue through the development and implementation of business practices and the perpetration of misrepresentations and non-disclosures. Plaintiffs incorporate by reference their responses to subsections (b) (c), and (e), above.

**(i)      Describe what benefits, if any, the enterprise and each defendant received from the pattern of racketeering/criminal activity.**

Defendant Union Bank benefited enormously as a result of its pattern of racketeering activity, at the direct expense of its customers.  The high-to-low re-ordering scheme and related conduct, and the predicate acts conducted in furtherance thereof, allowed Union Bank to assess numerous excessive overdraft fees and reap millions of dollars in additional, unfair overdraft revenue.  CAST likewise benefited, as its fee for the work it performed in furtherance of the high-to-low posting initiative was based on a percentage (20%) of the additional revenue the initiative generated in the first year after implementation.  Plaintiffs incorporate by reference their responses to subsections (b) and (c), above.  *See* TAC, ¶¶ 37-134.

**(j)      Describe the effect of the enterprise's activities on interstate or foreign commerce.**

The RICO enterprise's actions adversely affected interstate commerce through the wrongful imposition of overdraft fees on customers which, among other things, left such customers with reduced funds and reduced ability to purchase other goods and services.  Union Bank was able to accomplish the re-ordering scheme, in part, through the interstate transfer of money and assessment of fees.

**(k)      If the complaint alleges a violation of 18 U.S.C. § 1962(a) or Florida Statutes § 772.103(1), provide the following information:**

The TAC does not allege violations of these provisions.

**(l)      If the complaint alleges a violation of 18 U.S.C. § 1962(b) or Florida Statutes § 772.103(2) provide the following information:**

The TAC does not allege violations of these provisions.

**(m)** **If the complaint alleges a violation of 18 U.S.C. § 1962(c) or Florida Statutes § 772.103(3), provide the following information:**

    **(1)** **state who is employed by or associated with the enterprise;**

Union Bank and CAST, along with its officers, directors, managers, employees, agents, and representatives, are employed by and associated with the RICO enterprise, an association-in-fact enterprise.

    **(2)** **describe what each such person did to conduct or participate in the enterprise's affairs;**

Plaintiffs incorporate by reference their responses to subsections (b), (c), (e), and (f), above. *See* TAC, ¶¶ 37-134.

    **(3)** **describe how you were directly injured by such person's conducting or participating in the enterprise's affairs; and**

Plaintiffs and the members of the proposed class were injured by Union Bank's misconduct in that they incurred additional and excessive overdraft fees, over and above what they would have incurred had the misconduct not occurred.  Plaintiffs incorporate by reference their responses to subsections (b), (c), and (d), above. *See* TAC, ¶¶ 37-134.

    **(4)** **state whether the same entity is both the liable "person" and the "enterprise" under the 18 U.S.C. § 1962(c) or Florida Statutes § 772.103(3) claim.**

The same entity is <u>not</u> both the liable "person" and the "enterprise" under Plaintiffs' 18 U.S.C. § 1962(c) claim.

**(c)** **If the complaint alleges a violation of 18 U.S.C. § 1962(d) or Florida Statutes § 772.103(4), describe in detail the conspiracy, including the identity of the co-conspirators, the object of the conspiracy, and the date and substance of the conspiratorial agreement.**

The TAC does not allege violations of these provisions.

**(d)** **Describe the injury to business or property.**

Plaintiffs incorporate by reference their responses to subsections (b), (c), (d) and (m)(3), above.

**(e)     Describe the nature and extent of the relationship between the injury and each separate RICO violation.**

The injuries suffered by Plaintiffs and the members of the proposed class are directly tied to Union Bank's violations of 18 U.S.C. § 1962(c) and 18 U.S.C. §§ 1341 and 1343.  The high-to-low re-ordering scheme and the misconduct committed in furtherance thereof directly caused Plaintiffs and the members of the proposed class to incur excessive overdraft fees.  Plaintiffs incorporate by reference their responses to subsections (b), (c), (d) and (m)(3), above.

**(f)     For each claim under a subsection of 18 U.S.C. § 1962 or Florida Statutes § 772.103, list the damages sustained by reason of each violation, indicating the amount for which each defendants is liable.**

Plaintiffs and the members of the proposed class were all damaged by Union Bank's high-to-low re-ordering scheme and misconduct in furtherance thereof.  They were each injured in that they incurred excessive, unconscionable overdraft fees, over and above what they would have incurred had Union Bank not engaged in the scheme and misconduct.  These additional overdraft fees were the direct result of Union Bank's misconduct, which had the purpose and effect of generating additional overdraft occurrences.  In all, Union Bank's misconduct caused Plaintiffs and the proposed class members to incur millions of dollars in excessive overdraft fees. The precise dates when Plaintiffs and each class member incurred additional overdraft fees as a result of Union Bank's misconduct, and the specific amount of injury suffered by each Plaintiff and proposed class member, are presently within Union Bank's exclusive knowledge.  However, this information can be ascertained from Union Bank's comprehensive historical transactional records for the class period, which Union Bank has not yet produced to Plaintiffs.  In the TAC, Plaintiffs have listed examples (including specific dates) of when Union Bank's misconduct caused them injury in the form of excessive overdraft fees.  *See* TAC, ¶¶ 85-119.  Plaintiffs incorporate by reference their responses to subsections (b), (c), (d) and (m)(3), above.

Union Bank is liable for all damages suffered by Plaintiffs and the members of the proposed class.

Dated: April 28, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 3855830
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271


/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008


/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

<u>/s/ Ruben Honik</u>
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2011, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served

this day on all counsel of record or *pro se* parties identified on the attached Service List in the

manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF

or in some other authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596