**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

---

**IN RE:  CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**

*Garcia, et al. v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:08-cv-22463-JLK

*Spears-Haymond v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-21680-JLK
N.D. Cal. Case No. 3:08-cv-4610

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685
D. Or. Case No. 3:09-cv-01239-ST

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Zankich, et al. v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-CV-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

---

**MOTION OF DEFENDANT WELLS FARGO BANK, N.A. TO DISMISS OR,**
**IN THE ALTERNATIVE, TO STAY IN FAVOR OF ARBITRATION**

## TABLE OF CONTENTS

Page(s)

INTRODUCTION.................................................................................................1

I.    FACTUAL BACKGROUND.................................................................2

II.   PROCEDURAL BACKGROUND.........................................................4

ARGUMENT.......................................................................................................5

III.  THE FEDERAL ARBITRATION ACT CONTROLS THE ARBITRATION AGREEMENTS BETWEEN THE PARTIES..................................................5

    A.    The Federal Arbitration Act Controls Enforcement of the Arbitration Agreements Between the Parties...........................................5

        1.    Plaintiffs Have the Burden of Rebutting the Presumption of Arbitrability........................................................5

        2.    *AT&T Mobility* Overruled Those State Laws Prohibiting the Enforcement of Arbitration Agreements Containing Class Action Waivers................................................6

    B.    The Arbitration Agreements between the Parties Are Enforceable..............7

        1.    The Parties Have Written Arbitration Agreements.............................8

        2.    All of Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreements........................................8

    C.    The Arbitration Agreements Require Plaintiffs to Arbitrate Their Claims on an Individual Basis.................................................9

IV.  WELLS FARGO DID NOT WAIVE ITS RIGHT TO ARBITRATION.................10

V.   THE COURT SHOULD DISMISS PLAINTIFFS' CASES IN FAVOR OF ARBITRATION................................................................12

VI.  IN THE ALTERNATIVE, THE COURT SHOULD STAY PLAINTIFFS' CASES IN FAVOR OF ARBITRATION.................................................13

CONCLUSION.................................................................................................14

CERTIFICATE OF GOOD FAITH CONFERENCE.............................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Alford v. Dean Witter Reynolds, Inc.,*
   975 F.2d 1161 (5th Cir. 1992) ......................................................................................12

*Arbaugh v. Y&H Corp.,*
   546 U.S. 500 (2006) .....................................................................................................12

*Armijo v. Prudential Ins. Co. of Am.,*
   72 F.3d 793 (10th Cir. 1995) .........................................................................................6

*AT&T Mobility LLC v. Concepcion,*
   562 U.S. ___, 2011 WL 1561956 (Apr. 27, 2011) ..............................................passim

*AT&T Technologies, Inc. v. Communications Workers of Am., et al.,*
   475 U.S. 643 (1986) ................................................................................................6, 7, 9

*Benoay v. Prudential-Bache Secs., Inc.,*
   805 F.2d 1437 (11th Cir. 1986) ...............................................................................10, 11

*Caley v. Gulfstream Aerospace Corp.,*
   428 F.3d 1359 (11th Cir. 2005) ....................................................................................13

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) .......................................................................................................8

*Discover Bank v. Superior Court,*
   113 P. 3d 1100 (2005) ..............................................................................................4, 12

*Fedmet Corp. v. M/V BUYALYK,*
   194 F.3d 674 (5th Cir. 1999) ........................................................................................13

*Fiser v. Dell Computer Corp.,*
   188 P.3d 1215 (N.M. 2008) ..........................................................................................12

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,*
   815 F.2d 840 (2d Cir. 1987) .........................................................................................13

*Gilchrist v. Citifinancial Servs., Inc.,*
   2007 WL 177821 (M.D. Fla. Jan. 19, 2007) ................................................................13

*Gilmer v. Interstate/Johnson Lane Corp.,*
   500 U.S. 20 (1991) .........................................................................................................5

*Gordon v. Branch Banking and Trust,*
   2011 WL 1111718 (11th Cir. Mar. 28, 2011) ................................................................1

*Houlihan v. Offerman & Co., Inc.,*
  31 F.3d 692 (8th Cir. 1994) .................................................................................... 8

*Howsam v. Dean Witter Reynolds, Inc.,*
  537 U.S. 79 (2002) ................................................................................................. 7

*In re Currency Conversion Fee Antitrust Litig.,*
  224 F.R.D. 555 (S.D.N.Y. 2004) ........................................................................ 10

*Jackson v. Cintas Corp.,*
  425 F.3d 1313 (11th Cir. 2005) ........................................................................... 13

*Klay v. All Defendants,*
  389 F.3d 1191 (11th Cir. 2004) ........................................................................... 13

*Kozma v. Hunter Scott Fin., L.L.C.,*
  2010 WL 724498 (S.D. Fla. Feb. 25, 2010) .................................................. 12, 13

*Miller v. Drexel Burnham Lambert, Inc.,*
  791 F.2d 850 (11th Cir. 1986) ............................................................................. 10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,*
  473 U.S. 614 (1985) ............................................................................................... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
  460 U.S. 1 (1983) .............................................................................................. 5, 8

*Muhammad v. County Bank of Rehoboth Beach,*
  912 A.2d 88 (N.J. 2006) ....................................................................................... 12

*Powertel v. Bexley,*
  743 So. 2d 570 (Fla. 1st Dist. Ct. App. 1999) ..................................................... 12

*Samadi v. MBNA Am. Bank, N.A.,*
  178 Fed. Appx. 863 (11th Cir. 2006) ................................................................... 13

*Stone v. E. F. Hutton & Co., Inc.,*
  898 F.2d 1542 (11th Cir. 1990) ............................................................................. 6

*Vasquez-Lopez v. Beneficial Oregon, Inc.,*
  152 P.3d 940 (Or. App. 2007) .............................................................................. 12

**S**TATUTES

9 U.S.C. §§ 1, *et seq.* ...........................................................................................................7

9 U.S.C. § 2 .............................................................................................................................5

9 U.S.C. § 3 .....................................................................................................1, 8, 12, 13

Fed. R. of Civ. P. 12(h)(3) .............................................................................................1, 12

## INTRODUCTION

Defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully moves the Court to dismiss the above-captioned cases or, in the alternative, to stay these proceedings pursuant to 9 U.S.C. § 3 of the Federal Arbitration Act ("FAA") and Rule 12(h)(3) of the Federal Rules of Civil Procedure.  This motion is based upon the change in the law set out by the United States Supreme Court in *AT&T Mobility LLC v. Concepcion*, 562 U.S. ___, 2011 WL 1561956 (Apr. 27, 2011), establishing that the Federal Arbitration Act preempts any state law barring the enforcement of arbitration agreements containing class arbitration waivers.

Each of plaintiffs' checking accounts with Wells Fargo is governed by an account agreement requiring plaintiffs to arbitrate any dispute they may have with the bank on an individual basis.  For years, despite the language and purpose of the FAA, state courts around the country – including the states whose laws govern the named plaintiffs' respective account agreements – have refused to enforce such arbitration clauses, holding that the class waivers contained in them were unconscionable under state law.  Federal courts, including the Eleventh Circuit, previously had declined to apply the FAA to preempt those state law determinations.  This Court also has declined to enforce such arbitration clauses in this proceeding, *see* DE #s 135, 447, 592, 763, 1330, as has the Eleventh Circuit in its recent review of one of those decisions, *see Gordon v. Branch Banking and Trust*, 2011 WL 1111718 (11th Cir. Mar. 28, 2011) (unpublished).

In a broad and sweeping opinion issued earlier this week, the United States Supreme Court held that state laws prohibiting the enforcement of arbitration agreements containing class arbitration waivers are preempted by the FAA.  *AT&T Mobility*, 2011 WL 1561956, at *13.  As a result of this decision, state laws that had been construed to bar

enforcement of mandatory arbitration clauses like those in Wells Fargo's and Wachovia's account agreements are preempted, and such clauses must now be enforced. Accordingly, Wells Fargo now moves to dismiss these cases or, in the alternative, to stay all proceedings in these cases in favor of arbitration.

**RELEVANT BACKGROUND**

**I.      FACTUAL BACKGROUND**

Wells Fargo is a financial services company that provides consumer banking services to its customers. In January 2009, Wells Fargo acquired Wachovia Bank, N.A. ("Wachovia"), and Wachovia has since ceased to exist as a separate bank. Each of the plaintiffs had checking accounts with either Wells Fargo or the former Wachovia, the terms of which (as plaintiffs acknowledge) are contained in standardized account agreements. *See* DE # 437 (*Martinez* 2nd Am. Complaint) ¶ 37, Ex. A; DE # 354 (*D. Gutierrez* 2nd Am. Complaint) ¶ 38, Ex. A; DE # 352 (*Garcia* 2nd Am. Complaint) ¶ 39, Ex. A; DE # 353 (*Spears-Haymond* 3rd Am. Complaint) ¶ 32, Ex. A; *Zankich* Complaint ¶ 12. These account agreements, which are attached to plaintiffs' complaints, contain an unambiguous Arbitration Agreement.

For those plaintiffs who opened their account at Wells Fargo, the Arbitration Agreement provided in relevant part:

> **Non-Judicial Resolution of Disputes.** If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that any dispute between or among you and the Bank, regardless of when it arose, shall be resolved by the following arbitration process. You understand and agree that you and the Bank are each waiving the right to a jury trial or a trial before a judge in a public court.

> **Disputes.** A dispute is any unresolved disagreement between or among you and the Bank … arising out of or relating in any way to your Account and/or Services. It includes any dispute relating in any way to your Accounts and Services; to your use of any Bank location or facility; or to any means you may use to access the Bank, such as an Automated Teller Machine (ATM) or Online Banking. It includes claims based on broken

2

promises or contracts, torts (injuries caused by negligent, or intentional conduct) or other wrongful actions. It also includes statutory, common law, and equitable claims. A dispute also includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Agreement. A dispute does not include a claim that may be filed in small claims court. If you have a dispute that is within the jurisdiction of the small claims court, you should file your claim there.

**Binding Arbitration.** Binding arbitration is a means of having an independent third party resolve a dispute without using the court system, judges, or juries. Either you or the Bank may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced. If either you or the Bank fails to submit to binding arbitration following a lawful demand, the one who fails to submit bears all costs and expenses (including attorney's fees and expenses) incurred by the other compelling arbitration.

**Neither you nor the Bank shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity.**

*See, e.g., Martinez* 2nd Am. Complaint Ex. A at 4-5 (emphasis in original).

For those customers who opened their account at the former Wachovia, the Arbitration Agreement provided in relevant part:

Arbitration of Disputes/Waiver of Jury Trial and Participation in Class Actions. If either you or we request, any dispute or claim concerning your account or your relationship to us will be decided by binding arbitration .… The arbitration … will be brought individually and not as part of a class action. If it is brought as a class action, it must proceed on an individual (non-class, non-representative) basis. YOU UNDERSTAND AND KNOWINGLY AND VOLUNTARILY AGREE THAT YOU AND WE ARE WAIVING THE RIGHT TO A TRIAL BY JURY AND THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN ANY CLASS ACTION LAWSUIT.

*See, e.g., Spears-Haymond* 3rd Am. Complaint Ex. A at 12 (emphasis in original).

3

## II.     PROCEDURAL BACKGROUND

In disregard of their Arbitration Agreements, plaintiffs filed putative class action suits challenging Wells Fargo's and Wachovia's practices in connection with the assessment of overdraft fees on debit-card transactions, including the order in which the bank posts such transactions to its customers' accounts. Although plaintiffs allege a variety of wrongful practices, all of their claims relate to the allegedly "unfair and unconscionable assessment and collection of excessive overdraft fees" on their checking accounts. *See, e.g., Martinez* 2nd Am. Complaint ¶ 1; *Spears-Haymond* 3rd Am. Complaint ¶ 1. Therefore, pursuant to the terms of the Arbitration Agreements between the parties (which govern "any dispute relating in any way" to Wells Fargo checking accounts or "any dispute or claim concerning" Wachovia checking accounts – *see* pp. 2-3 above), plaintiffs' claims must be resolved through binding arbitration on an individual basis.

In answering plaintiffs' complaints, Wells Fargo asserted the existence of the Arbitration Agreements between the parties as an affirmative defense to plaintiffs' claims. *See, e.g.,* DE # 549 (*Martinez* Answer) at 23; DE # 504 (*Spears-Haymond* Answer) at 20. However, state law and multiple judicial decisions (including many in this MDL proceeding) supported plaintiffs' position that the Arbitration Agreements were unenforceable because they contained a class waiver provision. *See, e.g.,* DE #s 135, 447, 592, 763, 1330; *Discover Bank v. Superior Court*, 113 P. 3d 1100 (2005). For this reason, it would have been futile for Wells Fargo to move to compel arbitration on the basis of its Arbitration Agreements.

On April 27, 2011, the United States Supreme Court overruled the state laws supporting plaintiffs' position by holding that courts may not refuse to enforce an arbitration agreement on the basis that it contains class waiver provisions. *See AT&T Mobility*, 2011 WL 1561956, at *13. On the same day, in light of this change in the law, Wells Fargo asked

plaintiffs to dismiss their claims in favor of arbitration pursuant to the Arbitration Agreements between the parties. *See* Certificate of Good Faith Conference (p. 14 below). Plaintiffs refused, and Wells Fargo now files this motion. *Id.*

**ARGUMENT**

**III.   THE FEDERAL ARBITRATION ACT CONTROLS THE ARBITRATION AGREEMENTS BETWEEN THE PARTIES.**

**A.   The Federal Arbitration Act Controls Enforcement of the Arbitration Agreements Between the Parties.**

The FAA provides that:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Congress enacted the FAA to ensure the "rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983). The FAA establishes a public policy that strongly favors the arbitration of disputes and requires courts to enforce arbitration agreements. *See AT&T Mobility*, 2011 WL 1561956, at *5 (quoting *Moses H. Cone*, 460 U.S. at 24) (stating that the FAA reflects a "'liberal federal policy favoring arbitration agreements'"); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991).

**1.   Plaintiffs Have the Burden of Rebutting the Presumption of Arbitrability.**

The Supreme Court has held that there is a presumption of arbitrability to promote the federal policy favoring arbitration. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is

5

not susceptible of an interpretation that covers the asserted dispute.'" *AT&T Technologies, Inc. v. Communications Workers of Am., et al.*, 475 U.S. 643, 650 (1986). Any doubts as to the scope of arbitrable issues or the applicability of an arbitration clause must therefore be resolved in favor of arbitration. *Id.*; *Stone v. E. F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (citing *Moses H. Cone*, 460 U.S. at 24-25). The party seeking to avoid arbitration – here the plaintiffs – bears the burden of rebutting the presumption of arbitrability. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 797-98 (10th Cir. 1995).

     **2.**    ***AT&T Mobility* Overruled Those State Laws Prohibiting the Enforcement of Arbitration Agreements Containing Class Action Waivers.**

Plaintiffs' primary argument throughout this MDL proceeding against the enforcement of bank arbitration agreements has been that – under the various state laws governing their account agreements – the agreements to arbitrate were unconscionable and thus unenforceable because they precluded plaintiffs from bringing their claims on a classwide basis. *See, e.g.,* DE #s 135, 447, 592, 763, 1330. In fact, plaintiffs' counsel appear to have carefully chosen the named plaintiffs based on the fact that they are from states that would not enforce class arbitration waivers. Following the Supreme Court's recent decision in *AT&T Mobility*, however, any such argument is now without merit.

In *AT&T Mobility*, two customers filed a putative class action alleging that AT&T engaged in false advertising and fraud by charging sales tax on phones it advertised as free. 2011 WL 1561956, at *3. The district court held, and the Ninth Circuit affirmed, that the arbitration agreement between the customers and AT&T was unconscionable (and therefore unenforceable) under California law because it disallowed classwide procedures. *Id.* at *3-4. The Supreme Court reversed, holding that "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with

the FAA." *Id.* at *8. As a result, California's law prohibiting the enforcement of arbitration agreements containing class-waiver provisions as unconscionable are "preempted by the FAA." *See id.* at *13.

The Supreme Court's decision in *AT&T Mobility* changed the law in all of those states that refused to enforce such agreements. This included the state laws that applied to the account agreements of the named plaintiffs here. (*See* pp. 11-12 below.) The Arbitration Agreements at issue here are now enforceable as a matter of federal law.[1]

**B.      The Arbitration Agreements between the Parties Are Enforceable.**

The FAA requires the rigorous enforcement of written arbitration agreements. 9 U.S.C. §§ 1, *et seq.* Section 3 of the FAA states in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Accordingly, a court faced with an arbitration motion plays a limited role. It should make no inquiry into the merits of the case. *AT&T Technologies,* 475 U.S. at 649. In addition, issues concerning whether any prerequisites to arbitration have been met (such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation) or whether any defenses to arbitrability exist are for the arbitrator to decide. *Howsam v. Dean Witter Reynolds,*

---

[1]      The fact that the *AT&T Mobility* decision effected a dramatic change in the law as it has been understood in this Circuit is confirmed by the Eleventh Circuit's determination yesterday to remand to this Court, for reconsideration in light of *AT&T Mobility,* each of the cases in which this Court had previously rejected arbitration.

*Inc.*, 537 U.S. 79, 84-85 (2002).  The only things for the court to decide are (i) whether there is a valid written arbitration agreement between the parties and (ii) whether the dispute falls within the scope of the arbitration agreement.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  If these conditions are met, the court must compel arbitration.  9 U.S.C. § 3; *see Houlihan v. Offerman & Co., Inc.*, 31 F.3d 692, 695 (8th Cir. 1994).  The FAA leaves no discretion to the court on this matter.  *Byrd*, 470 U.S. at 218.

### 1.  The Parties Have Written Arbitration Agreements.

Here, it is undisputed that plaintiffs and Wells Fargo have written agreements to arbitrate the claims that plaintiffs now plead in this lawsuit.  Plaintiffs have acknowledged that the account agreements between the parties are valid – in fact, it is the alleged breach of those very agreements that constitutes plaintiffs' primary claim in these actions.[2]  Nor is there any dispute that these account agreements contain provisions requiring plaintiffs to arbitrate their disputes.  *See, e.g., Martinez* 2nd Am. Complaint Ex. A at 4-5; *Spears-Haymond* 3rd Am. Complaint Ex. A at 12.  Therefore, the requirement that there be a valid written arbitration agreement is satisfied.

### 2.  All of Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreements.

All of the claims asserted by plaintiffs in this litigation fall within the scope of the Arbitration Agreements between the parties.  When a valid written arbitration agreement exists, arbitration should be ordered unless it can be said that the arbitration clause at issue is not susceptible to an interpretation that covers the asserted dispute.  *Moses H. Cone*, 460 U.S. at 24-

---

[2]  *See Martinez* 2nd Am. Complaint ¶¶ 103-112; *D. Gutierrez* 2nd Am. Complaint ¶¶ 104-113; *Garcia* 2nd Am. Complaint ¶¶ 122-128; *Spears-Haymond* 3rd Am. Complaint ¶¶ 81-87; *Zankich* Complaint ¶¶ 44-52.

25.  Given the presumption in favor of arbitrability, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail" in defeating an arbitration provision. *AT&T Technologies*, 475 U.S. at 654 (internal marks and citation omitted).

Here, the Arbitration Agreements between the parties are considered to be "broad" arbitration clauses because they extend beyond simple contract interpretation and apply to (i) "any unresolved disagreement" between the parties "relating in any way" to the checking accounts at issue (*see, e.g., Martinez* 2nd Am. Complaint Ex. A at 4) (Wells Fargo account agreement) or (ii) "any dispute or claim concerning [the] account or [the] relationship to [the bank]" (*see, e.g., Spears-Haymond* 3rd Am. Complaint Ex. A at 12) (Wachovia account agreement).  When a broad arbitration clause is at issue, the strong presumption in favor of arbitrability applies with even greater force.  *See AT&T Technologies*, 475 U.S. at 650.

All aspects of this litigation arise from plaintiffs' challenge to the practices and procedures by which Wells Fargo assesses overdraft fees to plaintiffs' checking accounts. *See, e.g., Martinez* 2nd Am. Complaint ¶ 1; *Spears-Haymond* 3rd Am. Complaint ¶ 1.  Therefore, the entirety of this action falls within the scope of the Arbitration Agreements, which by their express terms apply to all disputes that concern or relate "in any way" to plaintiffs' checking accounts.  Thus, plaintiffs' claims should be dismissed in favor of arbitration.

**C.     The Arbitration Agreements Require Plaintiffs to Arbitrate Their Claims on an Individual Basis.**

As the Supreme Court has recently instructed, "[a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations."  *AT&T Mobility*, 2011 WL 1561956, at *12.  As such, "[t]he overarching purpose of the FAA ... is to ensure the enforcement of arbitration agreements according to their terms ...."  *Id.* at *8.  This means that written contract provisions that prohibit class arbitration proceedings must be enforced according

to their terms, and courts may not refuse to enforce such provisions as unconscionable under state laws. *See id.* at \*12-13.

Here, the Arbitration Agreements between the parties explicitly require disputes to be resolved on an individual, non-class basis. *See, e.g., Martinez* 2nd Am. Complaint Ex. A at 5; *Spears-Haymond* 3rd Am. Complaint Ex. A at 12. Following the decision in *AT&T Mobility*, any attempt by plaintiffs to avoid their contractual obligations by arguing that the plain language of the Arbitration Agreement is unconscionable and thus unenforceable is without merit. *See AT&T Mobility*, 2011 WL 1561956, at \*13.

## IV.    WELLS FARGO DID NOT WAIVE ITS RIGHT TO ARBITRATION

Wells Fargo anticipates that plaintiffs will argue that it waived its right to arbitration of their claims by not moving sooner to compel arbitration in these cases.[3]  The Eleventh Circuit, however, has squarely held – in a case directly on point – that parties do not waive their right to arbitration by declining to file a motion to compel arbitration where such a motion would have been futile (such as prior to a change in the law affecting the right to arbitrate). *See Benoay v. Prudential-Bache Secs., Inc.*, 805 F.2d 1437, 1439-40 (11th Cir. 1986); *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986).

In *Benoay*, the defendants did not move to compel arbitration for two and a half years after litigation had commenced because the applicable law prohibited arbitration of the

---

[3]    This motion does not address Wells Fargo's arbitration rights as to the possible claims of absent members of the classes plaintiffs have recently moved to certify. Absent any certified classes, those individuals are not parties before the Court, and Wells Fargo's right to demand arbitration of their claims is not ripe. In light of the *AT&T Mobility* decision, it is now clear that no classes can be certified. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 569-70 (S.D.N.Y. 2004) (declining to include absent putative class members with enforceable arbitration agreements in certified class). However, the Court need not address that issue on this motion, which instead addresses the threshold obligation of the named plaintiffs to arbitrate their own individual claims.

claims at issue.  805 F.2d at 1439-40.  It was at that point that the United States Supreme Court issued a decision changing the law, making the claims at issue arbitrable, and the defendants moved for arbitration ten weeks later.  *Id.* at 1440.  The Eleventh Circuit found there had been no waiver of the defendants' right to arbitrate, holding:

> Despite the fact that [defendants'] motion to compel arbitration was made two and one-half years after initiation of the civil action, we conclude that the motion was timely in light of a change in the law affecting the parties' rights.

*Id.*  The Eleventh Circuit explained that, "[a]t the time this suit was commenced, the law of this circuit prohibited arbitration of [the defendants'] claims ....  Thus, until the Supreme Court handed down its decision ..., [the defendants] could not have obtained an order compelling arbitration."  *Id.*  The court determined that the defendants' "right to arbitrate" the claims at issue "did not accrue" until the day the Supreme Court decided the case and changed the law.  *Id.*  Given the state of the law, any earlier motion would have been futile, and "'[t]his circuit does not require a litigant to engage in futile gestures merely to avoid a claim of waiver.'"  *Id.* (quoting *Miller*, 791 F.2d at 854).

    The same logic applies here.  Prior to the Supreme Court's decision in *AT&T Mobility*, the state laws governing plaintiffs' claims foreclosed Wells Fargo from enforcing its agreements to arbitrate those claims on an individual basis.[4]  This Court has already addressed the laws of several of those states.  DE #s 135, 447, 592, 763.  The laws applicable to plaintiffs

---

[4]     Under the terms of the applicable account agreements, plaintiffs' accounts with Wells Fargo are governed under the laws of the state where the account is opened or maintained.  *See, e.g., Martinez* 2nd Am. Complaint Ex. A at 36; *Spears-Haymond* 3rd Am. Complaint Ex. A at 13.

in the other cases are to the same effect. *See Discover Bank*, 113 P. 3d 1100 (California law);[5]

*Vasquez-Lopez v. Beneficial Oregon, Inc.*, 152 P.3d 940 (Or. App. 2007) (Oregon law); *Fiser v.*

*Dell Computer Corp.*, 188 P.3d 1215 (N.M. 2008) (New Mexico law); *see also Muhammad v.*

*County Bank of Rehoboth Beach*, 912 A.2d 88 (N.J. 2006) (New Jersey law); *Powertel v. Bexley*,

743 So. 2d 570 (Fla. 1st Dist. Ct. App. 1999) (Florida law).  The holding in *AT&T Mobility*,

however, has resulted in a change in the law giving Wells Fargo the right to compel arbitration of

plaintiffs' claims.  As this right did not "accrue" until April 27, 2011 (just two days before the

filing of this motion), there has been no waiver of this right.

## V.  THE COURT SHOULD DISMISS PLAINTIFFS' CASES IN FAVOR OF ARBITRATION.

Although Section 3 of the FAA provides for a stay of any lawsuit until arbitration

has been completed, "this rule 'was not intended to limit dismissal of a case in the proper

circumstances.'" *Kozma v. Hunter Scott Fin., L.L.C.*, 2010 WL 724498, * 2 (S.D. Fla. Feb. 25,

2010) (quoting *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992)).  If all

claims raised before the district court are arbitrable, dismissal pursuant to Rule 12(h)(3), rather

than just a stay, is the appropriate remedy.  *Id.* (citing *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d

674, 678 (5th Cir. 1999).  As the Fifth Circuit explained:  "Given our ruling that all issues raised

in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and

staying the action will serve no purpose." *Alford*, 975 F.2d at 1164 (internal marks and citation

omitted).[6]

---

[5] The plaintiff in *Spears-Haymond* claims that her account is governed by California law. It is actually governed by North Carolina law, but for current purposes this does not matter, as this Court has twice held that North Carolina law is to the same effect.  DE #s 447, 763.

[6] Under Rule 12(h)(3), a motion to dismiss for lack of subject matter jurisdiction may be brought at any time.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

"The weight of authority clearly supports dismissal of the case" on a Section 3 arbitration motion when all of the issues raised in the district court must be submitted to arbitration. *Kozma*, 2010 WL 724498, at * 2 (citation omitted); *see also Gilchrist v. Citifinancial Servs., Inc.*, 2007 WL 177821, *4 (M.D. Fla. Jan. 19, 2007); *Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 678 (5th Cir. 1999). Moreover, the Eleventh Circuit has frequently affirmed orders from district courts compelling arbitration and dismissing the underlying case. *See, e.g., Samadi v. MBNA Am. Bank, N.A.*, 178 Fed. Appx. 863 (11th Cir. 2006), *cert. denied*, 549 U.S. 993 (2006); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359 (11th Cir. 2005); *Jackson v. Cintas Corp.*, 425 F.3d 1313 (11th Cir. 2005).

As the Arbitration Agreements at issue encompass all claims or disputes relating to or concerning plaintiffs' checking accounts or their relationship with the bank, plaintiffs have no claims before this Court that are not subject to arbitration. Therefore, all of plaintiffs claims should be compelled into arbitration, and these cases should be dismissed.

## VI.    IN THE ALTERNATIVE, THE COURT SHOULD STAY PLAINTIFFS' CASES IN FAVOR OF ARBITRATION.

If the Court declines to dismiss plaintiffs' cases, it should, at a minimum, stay these suits until arbitration has concluded. The stay of litigation under Section 3 of the FAA is mandatory for issues in an action that are within the scope of an arbitration agreement. *See Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004) (quoting *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)) ("'[A] court *must* stay its proceedings if it is satisfied that an issue before it is arbitrable ….'") (emphasis added by 11th Cir.). In cases such as those before the Court, in which "arbitrable claims predominate," a stay of the entire action is appropriate. *Id.; see also Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 856 (2d Cir. 1987).

## CONCLUSION

For the reasons set forth herein, Wells Fargo respectfully requests that the Court dismiss these cases in favor of arbitration on an individual basis. In the alternative, Wells Fargo requests that the Court stay these cases pending completion of arbitration proceedings.

## CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION

Pursuant to Local Rule 7.1(a)(3), Wells Fargo certifies that on April 27, 2011, and again on April 28, 2011, it conferred through counsel with plaintiffs in a good faith effort to resolve the need for filing this motion. The parties were not able to resolve their differences as to the issues raised in this motion. Plaintiffs intend to oppose this motion.

DATED: April 29, 2011               COVINGTON & BURLING LLP

                                    By:   /s/ David M. Jolley

                                         Sonya D. Winner (*pro hac vice*)
                                         (swinner@cov.com)
                                         David M. Jolley (*pro hac vice*)
                                         (djolley@cov.com)
                                         One Front Street, 35th Floor
                                         San Francisco, CA 94111
                                         Telephone: (415) 591-6000
                                         Facsimile: (415) 591-6091

                                         Emily Johnson Henn (*pro hac vice*)
                                         (ehenn@cov.com)
                                         333 Twin Dolphin Drive, Suite 700
                                         Redwood Shores, CA 94065
                                         Telephone: (650) 632-4700
                                         Facsimile: (650) 632-4800

14

Barry R. Davidson
(bdavidson@hunton.com)
Florida Bar No. 107678
Jamie Zysk Isani
(jisani@hunton.com)
Florida Bar No. 728861
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2011, I served the foregoing document with the

Clerk of the Court using CM/ECF.  I also certify that the forgoing document is being served this

day either by Notice of Electronic filing generated by CM/ECF or by U.S. mail on all counsel of

record entitled to receive service.

_____/s/ David M. Jolley_____

David M. Jolley (*pro hac vice*)
(djolley@cov.com)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA, 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091