# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 1:09-MD-02036-JLK

---

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:
THIRD TRANCHE ACTIONS

*Duval v. Citizens Financial Group, Inc.*
N.D. Ill. Case No. 1:10-cv-00533
S.D. Fla. Case No. 1:10-cv-21080-JLK

*Daniels v. Citizen Financial Group, Inc.*
D. Ma. Case No. 10-cv-10386
S.D. Fla. Case No. 1:10-cv-22014-JLK

*Blankenship v. RBS Citizens, N.A.*
D. RI. Case No. 10-cv-02718
S.D. Fla. Case No. 1:10-cv-22942-JLK

---

## PLAINTIFFS' OPPOSITION TO THE MOTION OF
## RBS CITIZENS, N.A. AND CITIZENS BANK OF PENNSYLVANIA
## <u>TO COMPEL PRODUCTION OF DOCUMENTS BY PLAINTIFFS</u>

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ (ii)

I.   INTRODUCTION ........................................................................................ 1

II.  ARGUMENT ............................................................................................... 2

     A.   The Arguments Proffered by Citizens Are Not Unique
          and Have Already Been Rejected by this Court ............................................ 2

          i.    Failure to Mitigate .................................................................. 3

          ii.   Class Certification ................................................................. 4

          iii.  Reliance and Causation ......................................................... 5

     B.   Plaintiffs Need Not Show Reliance ............................................... 6

     C.   Citizens Is Not Entitled to Information Relating to Plaintiffs'
          Other Bank Accounts  and Alternative Assets ............................................ 8

          i.    Plaintiffs' Other Bank Accounts Are Irrelevant ...................................... 9

          ii.   Plaintiffs' Alternative Assets Are Not Relevant ................................... 11

III. CONCLUSION................................................................................. 14

TABLE OF CASES

*Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248 (11th Cir. 2003)
  *aff'd*, 545 U.S. 546 (2005) .................................................................................... 11

*Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v.
  Sports & Recreation*, 165 F.R.D. 108 (M.D. Fla. 1996) ................................. 13

*Borden, Inc. v. Fla. E. Coast Ry.*, 772 F.2d 750 (11th Cir. 1985) ...................... 8

*Commonwealth v. Percudani*, 825 A.2d 743 (Pa. Commw. Ct. 2003) ............................ 7

*Compton v. W. Volusia Hosp. Auth.*, 727 So. 2d 379 (Fla. Dist. Ct. App. 1999) .............. 9

*Gabriel v. O'Hara*, 534 A.2d 488 (Pa. Super. Ct. 1987) .................................. 7

*Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010) .............. 12

*In re Intel Corp. Microprocessor Antitrust Litig.*, 526 F. Supp. 2d 461
  (D. Del. 2007) ......................................................................... 13

*Kamens v. Horizon Corp.*, 81 F.R.D. 444 (S.D.N.Y. 1979) ............................... 13

*Klein v. Checker Motors Corp.*, 87 F.R.D. 5 (N.D. Ill. 1979) .......................... 13

*Lang McLaughry Spera Real Estate, L.L.C. v. Hinsdale*, 2011 Vt. 29 (2011) ................ 8

*LeBourgeois v. Firstrust Sav. Bank*, No. 3378, 1991 WL 1011026
  (Pa. C.P. Ct. Apr. 12, 1991) ........................................................... 7

*Longmire v. Ala. State Univ.*, 151 F.R.D. 414 (M.D. Ala. 1992) ........................ 9

*Lorah v. SunTrust Mortgage, Inc.*, No. 08-0703,
  2010 U.S. Dist. LEXIS 134325 (E.D. Pa. Dec. 17, 2010) ................................. 7

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) ................................ 1

*Pa. Dep't of Banking v. NCAS of Del., L.L.C.*,
  995 A.2d 422 (Pa. Commw. Ct. 2010) .................................................... 7

*Pendlebury v. Starbucks Coffee Co.*, No. 04-80521,
  2005 WL 2105024 (S.D. Fla. Aug. 29, 2005) ............................................. 9

*Pottinger v. Miami*, 720 F. Supp. 955 (S.D. Fla. 1989) ................................. 11

*Sayre v. Abraham Lincoln Federal Savings & Loan Ass'n*, 65 F.R.D. 379
(E.D. Pa. 1974), *modified by*, 69 F.R.D. 117 (E.D. Pa. 1975) ...................................... 13

*Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451 (E.D. Pa. 2009) .......................... 7

OTHER AUTHORITIES

73 Fed. Reg. 28904-01 ............................................................................. 12-13

73 Fed. Reg. 28929 .................................................................................. 12-13

Pennsylvania Unfair Trade Practices and Consumer Protection Law,
73 Pa. Cons. Stat. § 201-1 *et seq.* ........................................................... 6

73 Pa. Cons. Stat. § 201-2 ......................................................................... 7

73 Pa. Cons. Stat. § 201-2(4)(xiv) .............................................................. 6

73 Pa. Cons. Stat. § 201-2(4)(xxi) .............................................................. 7

9 Vt. Stat. Ann. tit. 9 § 2453(a) ................................................................. 8

9 Vt. Stat. Ann. tit. 9 § 2461(b) ................................................................. 7

Plaintiffs submit their opposition to the motion to compel filed by RBS Citizens, N.A. and Citizens Bank of Pennsylvania ("Citizens").   [**DE # 1376**].

## I.   Introduction

This litigation involves Citizens' abusive practice of manipulating the transaction records of their checking account customers in order to maximize overdraft revenue. Through this motion, Citizens seeks documents concerning Plaintiffs' current or former accounts at any other financial institutions ("Other Bank Accounts"), as well as each and every document relating to any line of credit or source of funds accessible to each Plaintiff ("Alternative Assets") (collectively the "Contested Financial Documents"). Citizens, like the First Tranche banks before it that unsuccessfully moved to compel the exact same types of documents, seeks to intrude on the Plaintiffs' private lives.  It cannot explain how Plaintiffs' personal finances unrelated to Citizens have any conceivable relevance to this case, which involves the bank's wrongful overdraft fee practices.  It appears that the information is sought to harass and intimidate the class representatives and should not be permitted.  Case law clearly demonstrates that "discovery should be denied when a party's aim is to . . . embarrass or harass the person from whom he seeks discovery."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978).

As Citizens concedes, this Court has already considered both these issues and has held that documents related to Other Bank Accounts and Alternative Assets are ***not*** relevant.  Motion to Compel Mem. at 1, 4 ("RBS Citizens and CBP recognize that some of the First Tranche defendants have sought documents regarding plaintiffs' checking or debit card accounts at other financial institutions and documents regarding other sources of credit, and that this Court has suggested such documents are not discoverable"). Indeed, there were motions to compel filed by six First Tranche banks, most of which

sought the same types of documents which Citizens now seeks.  Citizens, however, makes the unsupported claim that the arguments "were not fully developed in briefing and oral argument."  Motion to Compel Mem. at 1.  The oral argument on the First Tranche motions lasted hours, and the proceedings filled 154 transcript pages, much of which directly related to the Contested Financial Documents.  [**DE # 1010**].  Based on that briefing and oral argument, the Court issued an Opinion Setting Standards for Resolution of Discovery Interrogatories and Production of Documents ("Discovery Order").  [**DE # 1016**].  The Discovery Order rejected the banks' arguments and held that the contested financial documents were not relevant.  Further, the standards contained in the Discovery Order were intended to "guide the parties on not just the instant motions, but on consideration of similar discovery motions yet to be filed in a case of this magnitude."  [**DE # 1016**, at 7].

Despite Citizens' claims of different and additional arguments, it offers no new grounds warranting a different result.  Motion to Compel Mem. at 4.  Instead, Citizens regurgitates arguments previously rejected by this Court.  Further, the bank's claim that the relevant unfair trade practice laws require reliance is incorrect.  In fact, reliance is not an element of the unfair trade statutes at issue, nor would this justify a different result in any event.  Thus, the bank's motion to compel should be denied.

**II. Argument**

 **A. The Arguments Proffered by Citizens Are Not Unique and Have Already Been Rejected by this Court.**

Initially, it must be noted that, despite its claims, Citizens has no "different and compelling reasons" for demanding the Contested Financial Documents.  Motion to Compel Mem. at 1.  Citizens' arguments are, in fact, indistinguishable from arguments

fully developed by many of the First Tranche banks.   In addition to the significant briefing already filed on the issue of Other Bank Accounts and Alternative Assets, the relevance of this discovery was debated at length at the December 8, 2010 Status Conference.  [**DE # 1010**, at 39-49, 55-61, 65-67, 76-78, 105-10, 121-22].  After careful consideration, this Court rejected the many arguments presented by the First Tranche banks, which Citizens has repackaged here.  In the section entitled "Plaintiffs' Alternative Accounts and Credit," the Court correctly ruled that "it is irrelevant and unduly burdensome on Plaintiffs to have to produce such sensitive information regarding their finances on accounts that are not at issue in this litigation."  Discovery Order at 7-8.  The bank's motion to compel is merely an attempt to relitigate issues already decided by this Court and thus should be rejected out of hand.

### i.  Failure to Mitigate

Citizens claims that the Contested Financial Documents are relevant to their defense of mitigation.  Motion to Compel Mem. at 1, 10.  This is hardly a unique argument, nor has it been a successful one.  Many of the First Tranche banks have made the same unpersuasive argument.  For example, in the motion to compel of JP Morgan Chase, N.A. ("Chase"), Chase argued that it "is entitled to discovery concerning all Plaintiffs' other credit lines and accounts in order to establish its affirmative defenses, including whether Plaintiffs failed to mitigate their damages."  [**DE # 930**, at 7].[1] Similarly, Bank of America, N.A. ("BOA") stated that plaintiffs' other bank accounts and credit accounts were relevant because it would support the defense that plaintiffs "reasonably could have taken steps to avoid them" and "could have mitigated their alleged damages by using other forms of payment."  [**DE # 902**, at 12, 13]; *see also* Wells

---

[1] "DE # ___ at ___" refers to the page of the document, not of the docket entry.

Fargo Bank, N.A. ("Wells Fargo") Motion to Compel Discovery from the Martinez and
D. Gutierrez Plaintiffs [**DE # 909**, at 13]; Chase Reply Motion [**DE # 959**, at 7]; BOA
Reply [**DE # 950**, at 3]; U.S. Bank National Association ("US Bank") Memorandum [**DE
# 955-1**, at 11].   Importantly, this Court rejected this argument in each instance and
refused to require plaintiffs to produce private financial information that is not related to
the accounts at issue.

### ii.  Class Certification

Citizens also alleges that the Contested Financial Documents are relevant to class
certification, specifically, adequacy and typicality.  Motion to Compel Mem. at 1-2, 13-
14.  This Court has already rejected similar arguments.  BOA alleged that plaintiffs' other
bank accounts and credit card accounts were relevant to the class certification analysis,
and stated that if the plaintiffs did not have access to alternative forms of payment their
claims "may not be typical of the class members' claims or they may be inadequate
representatives of the class under the typicality and adequate representation prerequisites
under Rule 23(a)."  [**DE # 902**, at 12]; *see also* [**DE # 950**, at 2].  BOA further argued
that "to the extent any of the Plaintiffs did have knowledge of Bank of America's
overdraft policies [through the Other Bank Accounts], they may not be typical of a class
that purportedly was 'misled' regarding Bank of America's overdraft policies."  [**DE #
902**, at 13]; [*see also* **DE # 1010**, at 39-49, 55-61, 65-67].

### iii.   Reliance and Causation

Citizens argues that the Contested Financial Documents are relevant to causation and reliance as it would allow the bank to determine if the Plaintiffs knowingly incurred overdrafts.[2]   Motion to Compel Mem. at 10-12.   Chase presented this Court with an identical argument.   Chase argued that the plaintiffs' alternative accounts and credit were relevant to show that they "knew or should have known that using their debit cards as they did would result in the number of overdraft fees charged."   [**DE # 930**, at 7].   Wells Fargo also sought discovery of materials relating to accounts at other banks, arguing that they were relevant to causation and "could establish, for example, that plaintiffs continued to overdraft [at another financial institution], undermining any claim that Wells Fargo's practices caused the challenged fees."   [**DE # 952**, at 9].   As with the mitigation and class certification arguments, this Court previously rejected these same arguments.

In this regard, much of Citizens' memorandum is addressed to the concept of the "serial overdrafter," denying its own responsibility for adding to the financial burdens of customers trying to survive in a difficult economy.   However, Chase waxed eloquent on this issue in its attack on Ms. Luquetta, claiming that she had produced numerous notices of insufficient funds from Chase, that she overdrew her account on hundreds of occasions, and was aware that she was overdrawing her account on a regular basis.   [**DE # 930**, at 6-7].   This did not alter the fact that the documents sought were irrelevant and unduly burdensome, and the Court correctly determined that these documents need not be produced.

---

[2]   As discussed at length in section B, reliance is not an issue in this litigation and causation is established simply by an objective showing of an ascertainable loss or likely effect on the consumer.

Thus, Citizens has reiterated the same arguments made by the First Tranche banks.  Production of documents relating to Other Bank Accounts and Alternative Assets should once again be denied.

### B.  Plaintiffs Need Not Show Reliance.

The bank's motion to compel largely relies on the assertion that reliance is an element of the relevant unfair trade practice statutes.  This issue, however, has already been litigated.  In its motion to dismiss, Citizens made arguments identical to that which it has asserted here: that Plaintiffs' claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et seq*. must fail because there is no explicit allegation of justifiable reliance.  [**DE # 667**, at 15-16).  However, justifiable reliance is not required by the UTPCPL and the bank's attempt to relitigate the issue should be rejected.

As stated in Plaintiffs' opposition to the bank's motion to dismiss, Citizens specifically warranted to Plaintiffs in its deposit agreement that "[w]e will not permit withdrawals from your account unless there are sufficient funds in your account, and you provide us with identification."  [**DE # 750**, at 19].  Contrary to this warranty, and conceded by Citizens itself, Citizens allowed withdrawals from Plaintiffs' accounts where there were insufficient funds in the accounts.  Pursuant to UTPCPL, which makes it unlawful to "[f]ail[] to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made," Plaintiffs need allege nothing more.  73 Pa. Cons. Stat. § 201-2(4)(xiv) (2010).  "A claim pursuant to Section 201-2(4)(xiv) is akin to a claim for breach of an express warranty . . . and would require only a showing of the breach of the contractual provision at issue.  Accordingly, neither fraud nor the element of reliance must be proven in order

6

to pursue claims under [this] section[]." *LeBourgeois v. Firstrust Sav. Bank*, No. 3378, 1991 WL 1011026, at *238-39 (Pa. C.P. Ct. Apr. 12, 1991) (*citing Gabriel v. O'Hara*, 534 A.2d 488, 494-95 (Pa. Super. Ct. 1987)).

Moreover, even if Plaintiffs were limited to a claim under the UTPCPL's catch-all provision, several Pennsylvania courts have held that reliance is not a required element of the statute as a result of the 1996 amendment which added the words "or deceptive" to the catch-all provision. *See, e.g.*, *Pa. Dep't of Banking v. NCAS of Del., L.L.C.*, 995 A.2d 422, 443 (Pa. Commw. Ct. 2010); *Commonwealth v. Percudani*, 825 A.2d 743, 746-47 (Pa. Commw. Ct. 2003); *Seldon v. Home Loan Servs., Inc*., 647 F. Supp. 2d 451, 469 (E.D. Pa. 2009). After the 1996 amendment, the UTPCPL § 201-2(4)(xxi) provides that "engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding" constitutes an "unfair or deceptive practice." 73 Pa. Cons. Stat. § 201-2. In a recent case, the Eastern District of Pennsylvania stated that "[f]ollowing a set of amendments to the UTPCPL in 1996, federal courts in this District have come to the general view that a plaintiff may proceed under the "catch-all" provision either by (1) pleading all the elements of common law fraud or (2) alleging deceptive conduct and an ascertainable loss but not necessarily all the elements of common law fraud." *Lorah v. SunTrust Mortgage, Inc.*, No. 08-0703, 2010 U.S. Dist. LEXIS 134325, at *17 (E.D. Pa. Dec. 17, 2010) (dismissed on other grounds). Thus, as the majority of Pennsylvania case law establishes, reliance is not an element of the catch-all provision of the UTPCPL.

Vermont similarly does not have such a requirement. 9 Vt. Stat. Ann. tit. 9 § 2461(b) provides in the alternative that:

> Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453, *or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title*, or prohibited by any rule or regulation made pursuant to section 2453 of this title may sue for appropriate equitable relief and may sue and recover from the seller, solicitor or other violator the amount of his damages . . . .

(emphasis supplied).  Section 2453(a) provides that "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce, are hereby declared unlawful."  Thus, reliance is not a necessary element of the statute where, as here, Plaintiffs can demonstrate, among other things, unfair practices in commerce.

In a 2011 decision of the Vermont Supreme Court, the Court listed the elements of a claim under the Consumer Fraud Act as follows:  "(1) there was a representation, practice, or omission likely to mislead the consumer; (2) the consumer interpreted the message reasonably under the circumstances; and (3) the misleading effects were material, that is, likely to affect the consumer's conduct or decision with regard to a product."  *Lang McLaughry Spera Real Estate, L.L.C. v. Hinsdale*, 2011 Vt. 29, 32 (2011) (internal quotations omitted).  Reliance was not an element that was identified.  Moreover, the Court specifically noted that "[w]e evaluate these elements under an objective standard."  *Id*.  Plaintiffs' individual reliance or causation, therefore, are neither requirements of the Vermont statute nor relevant to its applicability.

### C. Citizens Is Not Entitled to Information Relating to Plaintiffs' Other Bank Accounts and Alternative Assets.

A motion to compel should only be granted as to requests that are "limited to the issues relevant to the case."  *Borden, Inc. v. Fla. E. Coast Ry.*, 772 F.2d 750, 757 (11th Cir. 1985).  Here, Citizens seeks documents that are not relevant to any account at issue in the litigation.  Further, the documents demanded by Citizens are sensitive financial

documents, which are afforded additional protections.  *Compton v. W. Volusia Hosp. Auth.*, 727 So. 2d 379, 381 (Fla. Dist. Ct. App. 1999) (stating that "ordinarily the financial records of a party are not discoverable unless the documents themselves or the status which they evidence is somehow at issue in the case"); *see also Pendlebury v. Starbucks Coffee Co.*, No. 04-80521, 2005 WL 2105024, at *2 (S.D. Fla. Aug. 29, 2005) (denying defendant's request for tax returns and cell phone data, stating that "Plaintiffs [have a] legitimate expectation of privacy in these types of records") (*citing Longmire v. Ala. State Univ.*, 151 F.R.D. 414, 418 (M.D. Ala. 1992)) (noting that "discovery requests should be carefully scrutinized when they have the potential for harassment, embarrassment, and unnecessary invasions into one's private life") (internal citation and quotations omitted)).  In the Discovery Order, this Court held that information regarding the "Alternative Accounts and Credit" is irrelevant.  This Court should continue to protect the sensitive and private financial information of the Plaintiffs and hold that this information is not relevant to this litigation and therefore should not be produced.

### i.  Plaintiffs' Other Bank Accounts Are Irrelevant.

Citizens argues that discovery regarding Plaintiffs' Other Bank Accounts is relevant and material because it might provide evidence relating to reliance and causation.  First, as discussed above in Section B, reliance is not an element of any claim asserted by the Plaintiffs.  Second, causation is shown by an objective standard or ascertainable loss.  Here, Plaintiffs can clearly show an ascertainable loss in the amount of the wrongful overdraft fees charged as a result of Citizens' manipulation of customer transaction records.  Importantly, these overdrafts are not caused by the conduct of the Plaintiffs.  As discussed at length below in Section C. ii., these overdrafts cannot be predicted or anticipated by the Plaintiffs because Citizens' reordering scheme occurs well

after purchases are made.   Lastly, Citizens' argument that Plaintiffs' Other Bank Accounts are relevant is flawed.

Similar to the other banks in this litigation, Citizens argues that knowledge of Citizens overdraft scheme should be imputed on the Plaintiffs if they have incurred any overdraft on checking accounts at other banks as the result of reordering.   The disclosures and practices of other banks, however, do not indicate nor dictate how Citizens discloses or operates its overdraft scheme.   How other banks conduct their business and what Plaintiffs knew or did not know about how they conducted it is irrelevant to Citizens' specific practices at issue in this litigation and to its asserted defenses.   As this Court recognized, that argument would "get us into the Alice and Wonderland realm" of thinking.  [**DE # 1010**, at 40].

Citizens takes the argument one step farther down the rabbit hole and argues that "discovery showing a Plaintiff who incurred overdrafts on other accounts in spite of knowledge about how the bank posts transactions would make it difficult for that Plaintiff to prove reliance and causation" *in the case against Citizens*.  So, in addition to imputing knowledge of Citizens' overdraft scheme on Plaintiffs if they have debit card accounts at other financial institutions, Citizens also argues that this indicates a likelihood that Plaintiffs did not rely on Citizens' disclosures and, therefore, that the bank's scheme did not cause the overdraft.  Not only is this argument built on layers of speculation, it also ignores the complexity and obscurity of Citizens' disclosures and its overdraft scheme, as well as those of the other banks.   It also assumes that all of the banks' policies, practices, and language in their deposit agreements are identical, which is not the case.  The

intrusion caused by the disclosure of sensitive financial information should not be required based on such speculation and flawed reasoning.

Further, obtaining such information would not be probative of class certification issues. Typicality is met when the claims of the representative plaintiffs arise from the same course of conduct that gives rise to the claims of the other class members and based upon similar legal theories not antagonistic to those of the class. *Pottinger v. Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989). Documents regarding Other Bank Accounts have no probative value on typicality. Similarly, these documents are irrelevant to the adequacy of the Plaintiffs. Plaintiffs all have strong interests in proving Citizens' wrongdoing and obtaining redress. There is no conflict in their interests. Finally, these documents do not bear on predominance. Plaintiffs are challenging a uniform deception perpetrated on all Class members. These documents would not demonstrate whether or not the Plaintiffs somehow acquiesced to Citizens' practices of multiplying overdraft fees or that they knew or should have known that it was going to multiply those fees. Moreover, numerous courts have held that "the presence of individualized damage issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005).

### ii. Plaintiffs' Alternative Assets Are Not Relevant.

Citizens argues that the Plaintiffs' Alternative Assets are necessary to distinguish between the two types of serial overdrafters and thereby defend against reliance and causation. Citizens claims that there are two types of relevant serial overdrafters: those that incur overdrafts knowingly, which they term "strategic serial overdrafters," and those that incur overdraft fees due to their own reckless behavior, which they term "reckless serial overdrafters." Citizens claims that those customers with Alternative Assets

11

available must be "reckless serial overdrafters" and those without any Alternative Assets must be "strategic serial overdrafters."

Putting aside the bank's flawed logic, Citizens' argument misses the point.[3]  It assumes that all overdrafts can be anticipated and predicted by the customer.  This is not, however, the case.  As discussed in Plaintiffs Corrected Second Consolidated Amended Complaint [**DE # 1022**, at ¶¶ 45, 59-69, 77], Citizens implements a complex reordering scheme that occurs after the purchases are made.  Under this scheme, a customer may have sufficient funds at the time they make a purchase, but still be assessed an overdraft fee for that transaction due to the reordering scheme that occurs after, sometimes days after, the purchases are made.  Thus, Plaintiffs' Alternative Assets are totally irrelevant to reliance and causation as consumers have no ability to know which transactions will result in overdraft fees.

In a case directly on point, U.S. District Judge William Alsup recognized this fact and stated that "even the most precise register could not have predicted that what appeared to be a single overdraft would be converted to ten by the artifice of high-to-low resequencing."  *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1126 (N.D. Cal. 2010).  Even the federal agencies that regulate national banks, such as the Department of Treasury, Office of the Comptroller of Currency, FDIC, and the Board of Governors of the Federal Reserve, have confirmed that injury resulting from banks' overdraft fee policies "is not reasonably avoidable" by consumers because "consumers often lack sufficient information about key aspects of their account."   73 Fed. Reg.

---

[3] Even if Plaintiffs' "decision to overdraft" were relevant -- which Plaintiffs argue that it is not -- whether or not a Plaintiff has access to alternative assets does not dictate if there "decision to overdraft" was deliberate or reckless.

28904-01, 28929.  This is specifically alleged in the complaint.  [**DE # 1022**, at ¶ 77].

Since the complained of overdraft fees are incurred as the result of the bank's subsequent,

behind the scene practices and are unavoidable by the consumer, alternative forms of

payment are irrelevant.  The sought after production, therefore, is not material to class

certification issues.

Further, the personal finances of proposed class representatives have no relevance

to class certification.  This is clear from cases including *Barry B. Roseman, D.M.D.,*

*M.D., Profit Sharing Plan v. Sports & Recreation*, 165 F.R.D. 108, 113 (M.D. Fla. 1996)

(*citing Klein v. Checker Motors Corp.*, 87 F.R.D. 5, 6 (N.D. Ill. 1979)) (financial ability

of plaintiffs generally irrelevant to issues on class certification), *Kamens v. Horizon*

*Corp.*, 81 F.R.D. 444, 446 (S.D.N.Y. 1979) (plaintiffs' finances irrelevant where their

counsel has agreed to advance the costs of litigation and there is no question concerning

plaintiffs' ability to reimburse counsel), and *Sayre v. Abraham Lincoln Federal Savings*

*& Loan Ass'n*, 65 F.R.D. 379 (E.D. Pa. 1974), *modified by*, 69 F.R.D. 117 (E.D. Pa.

1975)).  *Accord In re Intel Corp. Microprocessor Antitrust Litig.*, 526 F. Supp. 2d 461,

464-66 (D. Del. 2007).

Citizens also argues that Alternative Asset information is relevant to the contract

claim.  Citizens again relies on the flawed argument that Alternative Asset information

will determine which serial overdrafters are strategic serial overdrafters.  The bank goes

on to argue that strategic serial overdrafters cannot demonstrate a loss of the benefit of

the bargain.  The opposite is true.  Serial overdrafters are those who incurred the greatest

number of overdraft fees due to Citizens' bookkeeping tricks.  Citizens is the only party

that has benefited from the bargain by manipulating transactions after they were made in order to maximize overdraft fees.

Moreover, such a request is extremely burdensome and involves sensitive and very personal information.  Intimidation and invasion of privacy would result from producing such documentation, as Citizens surely knows.  Citizens is seeking "each and every document relating to any line of credit or source of funds you have or have had that is accessible to you during the Relevant Time Period."  Motion to Compel Mem. at 3. Citizens argues that this encompasses all of "Plaintiffs' credit cards; home equity and other lines of credit; accounts at banks, thrifts credit unions, and other depository institutions (including other debit cards); holdings of stocks, bonds, mutual funds, exchange-traded funds, and any other liquid financial assets."  Motion to Compel Mem. at 15.  Pursuant to the request, this would include not only current sources of funds or lines of credit, but also any sources or lines accessible to the Plaintiff since the date that the account was first opened at the bank, the time frame of documents requested by Plaintiffs from the bank, or a date agreed to by the parties, whichever is longest.  On this exact issue, this Court has held that it is "unduly burdensome on Plaintiffs to have to produce such sensitive information regarding their finances on accounts that are not at issue in the litigation."

### III. Conclusion

For the foregoing reasons, Plaintiffs urge the Court to deny Citizens' motion to compel in its entirety.

Dated:  May 6, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst                          /s/ Bruce S. Rogow
Aaron S. Podhurst, Esquire             Bruce S. Rogow, Esquire
Florida Bar No. 063606                   Florida Bar No. 067999
apodhurst@podhurst.com               brogow@rogowlaw.com
Robert C. Josefsberg, Esquire        Jeremy W. Alters, Esquire
Florida Bar No. 40856                     Florida Bar No. 0111790
rjosefsberg@podhurst.com             jeremy@alterslaw.com
Peter Prieto, Esquire                        ALTERS LAW FIRM, P.A.
Florida Bar No. 501492                   4141 N.E. 2nd Avenue
pprieto@podhurst.com                    Suite 201
Stephen F. Rosenthal, Esquire         Miami, FL 33137
Florida Bar No. 0131458                 Tel: 305-571-8550
srosenthal@podhurst.com               Fax: 305-571-8558
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

*Co-Lead Counsel for Plaintiffs*

15

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 3855830
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596


*Coordinating Counsel for Plaintiffs*


/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

17

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2011, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record or pro se parties identified on

the attached Service List in the manner specified, either via transmission of Notices of

Electronic Filing generated by CM/ECF or in some other authorized manner for those

counsel or parties who are not authorized to receive electronically Notices of Electronic

Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel:  305-442-8666
Fax:  305-779-9596
