# EXHIBIT A
## (Part 1 of 2)

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into this _6th_ day of May, 2011, by and among (1) Plaintiffs, for themselves and on behalf of the Settlement Class, and (2) Bank of America, N.A. ("BofA"), subject to Court approval as required by Rule 23 of the Federal Rules of Civil Procedure.  As provided herein, BofA, Class Counsel and Plaintiffs hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Class against BofA in the actions titled *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK; *Tornes v. Bank of America, N.A.*, S.D. Fla. Case No. 1:08-cv-23323-JLK ("*Tornes*"); and *Yourke, et al. v. Bank of America, N.A.*, S.D. Fla. Case No. 1:09-cv-21963-JLK; N.D. Cal. Case No. 3:09-2186 ("*Yourke*"), shall be settled and compromised upon the terms and conditions contained herein.

I.     **Recitals**

1.        On December 1, 2008, Plaintiff Ralph Tornes filed *Tornes*, a Class Action Complaint in United States District Court for the Southern District of Florida seeking monetary damages, restitution and declaratory relief from BofA, arising from the alleged unfair assessment and collection of overdraft fees.  On December 23, 2008, Plaintiff Tornes filed a First Amended Class Action Complaint.

2.        On April 9, 2009, Plaintiffs Steve Yourke and Kristin Richards filed *Yourke*, a Class Action Complaint in the Superior Court for the City and County of San Francisco, also arising from BofA's alleged unfair assessment and collection of overdraft fees.  On May 19, 2009, BofA filed a Notice of Removal, removing the action to the United States District Court

30779298v4 - Execution Version

for the Northern District of California, where it was assigned to United States District Judge William Alsup under case number 3:09-cv-02186-WHA.

3.      On June 10, 2009, the Judicial Panel for Multi-District Litigation ("JPML") transferred *Yourke* – as well other cases arising from similar allegations of unfair assessment and collection of overdraft fees against other banks – to the United States District Court for the Southern District of Florida.  The JPML coordinated these transferred cases, together with *Tornes* and other similar cases already pending in the Southern District of Florida, for pre-trial proceedings, under a single MDL 2036 caption, *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK.

4.      On October 16, 2009, Plaintiff Tornes filed a Second Amended Class Action Complaint in MDL 2036.

5.      On December 22, 2009, Defendants filed an Omnibus Motion to Dismiss and/or for Judgment on the Pleadings.  On February 5, 2010, Plaintiffs filed their opposition.  On February 19, 2010, Defendants filed their reply.  On March 11, 2010, the Court granted in part and denied in part Defendants' Omnibus Motion to Dismiss.

6.      On April 12, 2010, Plaintiffs Yourke and Richards filed an Amended Class Action Complaint and Plaintiff Tornes filed a Third Amended Consolidated Class Action Complaint in MDL 2036.  On May 21, 2010, BofA filed Answers to the operative complaints in *Tornes* and *Yourke* denying any and all wrongdoing and liability whatsoever and asserting various affirmative defenses.

7.      On July 16, 2010, the Parties entered into a Stipulated Protective Order relating to the production of documents and information.   BofA subsequently produced to Plaintiffs

approximately one million pages of documents (in addition to many large Excel spreadsheet files).

8.     Beginning in mid-2010, the Parties engaged in significant written discovery and depositions.

9.     Beginning in late 2010, the Parties engaged in preliminary settlement discussions. Thereafter, the Parties participated in three days of mediation – on December 17, 2010, January 26, 2011, and January 27, 2011 – under the auspices of Professor Eric Green, one of the leading mediators in the United States.

10.     As a result of the mediation sessions, on January 27, 2011, the Parties signed a Memorandum of Understanding that memorialized, subject to a mutually agreeable written Settlement Agreement and subject to preliminary approval and final approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally, and forever resolve, discharge and release all rights and claims of the Settlement Class Members in exchange for BofA's agreement to pay the total sum of $410,000,000, inclusive of all attorneys' fees and costs and costs of settlement administration, to create a common fund to benefit the Settlement Class.

11.     On February 4, 2011, the Parties filed a Notice of Settlement with the Court in MDL 2036.

12.     The Parties now agree to settle the Action in its entirety, without any admission of liability, with respect to all Released Claims by the Settlement Class. The Parties intend this Agreement to bind Plaintiffs, BofA, and all members of the Settlement Class who do not timely request to be excluded from the Settlement.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

**II.**    **Definitions**

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement and the attached exhibits:

13.    "Account" means any consumer checking, demand deposit or savings account maintained by BofA in the United States that may be accessed by a Debit Card.

14.    "Action" means *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK; *Tornes v. Bank of America, N.A.*, S.D. Fla. Case No. 1:08-cv-23323-JLK; *Yourke, et al. v. Bank of America, N.A.*, S.D. Fla. Case No. 1:09-cv-21963-JLK, N.D. Cal. Case No. 3:09-2186; and any and all other cases pending in MDL 2036 as of the date of Preliminary Approval to the extent they assert claims against BofA.

15.    "Class Counsel" means:

> ALTERS LAW FIRM, P.A.
> Jeremy Alters, Esq.
> Bruce Rogow, Esq.
> 4141 Northeast Second Avenue
> Suite 201
> Miami, Florida  33137
>
> BARON & BUDD, P.C.
> Russell Budd, Esq.
> Mazin A. Sbaiti, Esq.
> 3102 Oak Lawn Avenue
> Suite 1100
> Dallas, TX  75219
> Tel:  214-521-3605

GOLOMB & HONIK, P.C.
Ruben Honik, Esq.
1515 Market Street, Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177

GROSSMAN ROTH, P.A.
Robert Gilbert, Esq.
Stuart Z. Grossman, Esq.
2525 Ponce de Leon, Suite 1150
Miami, Florida 33133
Tel : 305-442-8666

LIEFF, CABRASER,
  HEIMANN & BERNSTEIN, LLP
Michael W. Sobol, Esq.
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: 415-956-1000

David S. Stellings, Esq.
250 Hudson Street, 8th Floor
New York, NY 10013
Tel: 212-355-9500

PODHURST & ORSECK, P.A.
Aaron S. Podhurst, Esq.
Peter Prieto, Esq.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800

TRIEF & OLK
Ted. E. Trief, Esq.
150 East 58th Street, 34th Floor
New York, NY 10155
Tel: 212-486-6060

WEBB, KLASE & LEMOND, L.L.C.
Edward Adam Webb, Esq.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325

BONNET, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Andrew Friedman, Esq.
Patricia N. Syverson, Esq.
Elaine A. Ryan, Esq.
Todd D. Carpenter, Esq.
2901 N. Central Avenue, Suite 100
Phoenix, AZ 85012-3311

CADDELL & CHAPMAN
Brian M. Keller, Esq.,
Clayton A. Morton, Esq.,
1331 Lamar Street
Suite 1070
Houston, TX 77010

CHIMICLES & TIKELIS, LLP
Joseph G. Sauder, Esq.
361 W. Lancaster Avenue
Haverford, PA 19041

HAGENS BERMAN SOBOL SHAPIRO LLP
Sean Matt, Esq.
Ari Y. Brown, Esq.
1301 5th Ave., Suite 2900
Seattle, WA 98101

HIGER, LICHTER & GIVENER
David H. Lichter, Esq.
18305 Biscayne Boulevard
Aventura, FL 33160

KELLER GROVER LLP
Carey G. Been, Esq.
1965 Market Street
San Francisco, CA 94103

PHILLIPS, ERLEWINE & GIVEN LLP
R. Scott Erlewine, Esq.
David Given, Esq.
Nicholas Carlin, Esq.
50 California Street - 35th Floor
San Francisco, CA 94111

ROBBINS GELLER RUDMAN & DOWD LLP
Bonny E. Sweeney, Esq.
Rachel L. Jensen, Esq.
655 West Broadway - Suite 1900
San Diego, CA  92101-3301

WILLIAM C. HEARON, P.A.
William C. Hearon, Esq.
One Southeast Third Avenue
Suite 3000
Miami, Florida  33131

and such other counsel as are identified in Class Counsel's request for attorneys' fees and costs.

16.     "Class Period" means the period from January 1, 2001 until Preliminary

Approval.

17.     "Court" means the United States District Court for the Southern District of

Florida, Miami Division.

18.     "Current Account Holder" means a Settlement Class Member who had an

Account during the Class Period, and who continues to have an Account as of the date that the

Settlement Fund is distributed to the Settlement Class Members pursuant to this Agreement.

19.     "Debit Card" means a card, sticker, tag or other device issued or provided by

BofA, including a debit card, check card, or automated teller machine ("ATM")  card, that can be

used to debit funds from an Account by Point of Sale and ATM transactions.

20.     "Debit Card Transaction" means any transaction effectuated with a Debit Card,

including Point of Sale transactions (whether pinned or pinless) and ATM transactions.

21.     "Debit Re-sequencing" means BofA's practice of re-sequencing an Account's

Debit Card Transactions from highest to lowest dollar amount, which results in the assessment of

additional Overdraft Fees that would not have been assessed if BofA had used other posting

sequences or methods.

22.    "Effective Date" means the fifth business day after which all of the following events have occurred:

      a.    All Parties, BofA's counsel, and Settlement Class Counsel have executed this Agreement;

      b.    The Court has entered without material change the Final Approval Order; and

      c.    The time for appeal or petition has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired and relief from a failure to file same is not available.

23.    "Escrow Account" means the interest bearing account to be established by BofA consistent with the terms and conditions described in Section III below.  The Escrow Account shall be held at BofA.

24.    "Escrow Agent" means Rust Consulting.  The Escrow Agent shall administer the Escrow Account.

25.    "Final Approval" means the date that the Court enters an order and judgment granting final approval to the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Award to Plaintiffs.  The proposed Final Approval Order that will be attached to the motion for final approval of the Settlement shall be in a form agreed upon by Settlement Class Counsel and counsel for BofA.

26.    "Final Approval Order" means the order and judgment that the Court enters upon finally approving the Settlement.

27.     "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.  "Notice Program" means the methods provided for in this Agreement for giving the Notice and consists of Mailed Notice, Published Notice, Long-form Notice and Web Advertising substantially in the forms attached hereto as Exhibits 1, 2, 3, and 4 respectively, plus sponsored keyword search advertising on the Internet substantially in the form attached hereto as Exhibit 5. A complete description of the contemplated Notice Program is provided in Section VIII, *infra*.

28.     "Notice Administrator" means Kinsella Media.

29.     "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first mailed or published, and that ends no later than 30 days prior to the Final Approval Hearing.  The Opt-Out deadline will be specified in the Notice.

30.     "Overdraft Fee" means any fee assessed to a holder of an Account for items paid when the Account has insufficient funds to cover the item, even if all deposits had been considered available.  Fees charged to transfer balances from other accounts are excluded.

31.     "Parties" means Plaintiffs and BofA.

32.     "Past Account Holder" means a Settlement Class Member who held an Account at some time during the Class Period but no longer holds an Account as of the date that the Settlement Fund is distributed to Settlement Class Members pursuant to this Agreement.

33.     "Plaintiffs" means:  Richard Blair; David Brull; Jonathan Bylin; Marco Chelo; Robert Conroy; Joshua DiFrances; Carolyn Gipson; David Hanny; Haneef Haqq; Joi Holloway; Stephen and Esther James; John and Anya Kopp; Deborah and Therese Marshall; Jason Molitor; Laura Morland; Bruce and Maria Mosley; Nelson Norman; Ronald and Dawyn Palmer; William

Powell; Kristin Richards; Alvin Richardson; Caroline Sherman; Ralph Tornes; Elona Wagner; Kelly Weatherspoon; William Werking; and Steve Yourke.

34.     "Point of Sale" or "POS" means a transaction in which an Account holder uses his or her Debit Card to purchase a product or service.

35.     "Preliminary Approval" means the date that the Court enters, without material change, an order preliminarily approving the Settlement in the form jointly agreed upon by the Parties.

36.     "Released Claims" means all claims to be released as specified in Section XV of this Agreement.  The "Releases" means all of the releases contained in Section XV of this Agreement.

37.     "Released Parties" means those persons released by paragraphs 98-101 *infra*.

38.     "Releasing Parties" means all Plaintiffs and all Settlement Class Members who do not timely and properly opt out of the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

39.     "Settlement" means the settlement into which the Parties have entered to resolve the Action.  The terms of the Settlement are as set forth in this Agreement and the attached exhibits.

40.     "Settlement Administrator" means Rust Consulting.

41.     "Settlement Class" means all holders of a BofA Account who, from January 1, 2001 through Preliminary Approval, incurred one or more Overdraft Fees as a result of Debit Re-sequencing.

42.     "Settlement Class Counsel" means Bruce Rogow and Jeremy Alters of Alters Law Firm, P.A.; Aaron Podhurst and Peter Prieto of Podhurst Orseck, P.A.; Robert C. Gilbert of

Grossman Roth, P.A.; and Michael W. Sobol and David S. Stellings of Lieff, Cabraser, Heimann & Bernstein, LLP.  Settlement Class Counsel are a subset of Class Counsel.  They are responsible for handling all Settlement-related matters on behalf of Plaintiffs.

43.    "Settlement Class Member" means any person included in the Settlement Class.

44.    "Settlement Fund" means the fund established under Section III of this Agreement, pursuant to which BofA shall pay the total amount of $410 million to resolve Plaintiffs' and Settlement Class Members' claims as provided in this Agreement.

45.    "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Long-Form Notice, the order preliminarily approving this Settlement, and such other documents as Settlement Class Counsel and counsel for BofA agree to post or that the Court orders posted on the website.  These documents shall remain on the Settlement Website at least until Final Approval.  The URL of the Settlement Website shall be www.bofaoverdraftsettlement.com or such other URL as Settlement Class Counsel and counsel for BofA may subsequently agree upon in writing.  The Settlement Website shall not include any advertising, and shall not bear or include the BofA logo or BofA trademarks.  Ownership of the Settlement Website URL shall be transferred to BofA within 10 days of the date on which operation of the Settlement Website ceases.

46.    "Tax Administrator" means Damasco and Associates.  The Tax Administrator will perform all tax-related services for the Escrow Account as provided in this Agreement.

## III.    Establishing and Maintaining the Settlement Fund

47.    In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases as set forth in Section XV below and the dismissal of the Action upon Final Approval, within fourteen calendar days of Preliminary Approval, BofA shall deposit the sum of Four Hundred Ten Million Dollars ($410,000,000.00) into the Escrow Account to create the Settlement Fund as set forth herein.  The Settlement Fund shall be used to pay all distributions to the Settlement Class Members; all costs of Settlement Notice; all costs of Settlement administration; all Service Awards to Plaintiffs; and all attorneys' fees, costs and expenses of Class Counsel, as expressly provided in this Agreement.  In no event shall BofA be required to pay more than a total of $410 million in connection with this Settlement.

48.    Upon the establishment of the Escrow Account, the Escrow Agent shall cause the Settlement Funds in the Escrow Account to be invested in interest-bearing short-term instruments – to be agreed upon by Settlement Class Counsel and BofA – that are backed by the full faith and credit of the United States Government or that are fully insured by the United States Government or an agency thereof (the "Instruments").  The Escrow Agent shall thereafter re-invest the interest proceeds and the principal as they mature in similar Instruments, bearing in mind the liquidity requirements of the Escrow Account to ensure that it contains sufficient cash available to pay all invoices, taxes, fees, costs, and expenses, and other required disbursements, in a timely manner.  Except as otherwise specified herein, the Instruments at all times will remain in the Escrow Account and under the control of the Escrow Agent.  The Escrow Agent shall communicate with Settlement Class Counsel and counsel for BofA on at least a monthly basis to discuss potential cash needs for the following month.  BofA shall waive all of its fees associated with maintaining and administering the Escrow Account; all costs incurred in connection with investing in the Instruments shall be paid from the Settlement Fund.

49.     The Settlement Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1.  All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon BofA or its counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund.  BofA and its counsel shall have no liability or responsibility for any of the Taxes.  The Settlement Fund shall indemnify and hold BofA and its counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

50.     The Settlement Fund shall be used for the following purposes:

a.      Distribution of payments to the Settlement Class pursuant to Section XII hereof.

b.      Payment of the costs of Notice to the Settlement Class and for the services of the Notice Administrator, within thirty days of Settlement Class Counsel's and counsel for BofA's receipt and approval of invoices received, as provided in Section VIII hereof.

c.      Payment of the Settlement Administrator's costs and fees for services provided pursuant to Section VII hereof, within thirty days of Settlement Class Counsel's and counsel for BofA's receipt and approval of invoices received from the Settlement Administrator.

d.      Payment of the Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses pursuant to Section XVI hereof.

e.      Payment of the Court-ordered Service Awards to the Plaintiffs pursuant to Section XVI(C) hereof;

       f.        Payment of BofA's actual expenses that result from investing the Settlement Fund in the Instruments pursuant to paragraph 48 hereof, within thirty days of Settlement Class Counsel's and counsel for BofA's receipt and approval of invoices for such expenses.

       g.       Payment of all invoices of the Tax Administrator to perform tax-related services for the Escrow Account, within thirty days of Settlement Class Counsel's and counsel for BofA's receipt and approval of invoices received from the Tax Administrator.

       h.       Payment of all Taxes pursuant to paragraph 49 hereof, including, without limitation, taxes owed as a result of accrued interest on the Escrow Account, in a timely manner consistent with the recommendation of the Tax Administrator, subject to approval by Settlement Class Counsel and counsel for BofA.

       i.        Payment of additional fees, costs and expenses not specifically enumerated in subparagraphs (a) through (h) above, subject to approval of Settlement Class Counsel and counsel for BofA.

## IV.    Certification of the Settlement Class

51.     For settlement purposes only, the Plaintiffs agree to ask the Court to certify the following "Settlement Class" under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All holders of a BofA Account who, from January 1, 2001 through Preliminary Approval, incurred one or more Overdraft Fees as a result of Debit Re-sequencing.  Excluded from the Class are all current BofA employees, officers and directors, and the judge presiding over this Action.

52.     If the Court does not certify or declines to approve the Settlement Class, or if the Court changes the Settlement Class composition or the terms of the Settlement in any material way not acceptable to BofA after reasonable consultation with Settlement Class Counsel, or if certification of the Settlement Class or approval of the Settlement is reversed,  or if certification

of the Settlement Class or approval of the Settlement is changed upon appeal or review in any material way not acceptable to BofA after reasonable consultation with Settlement Class Counsel, BofA shall have the right to terminate the Settlement pursuant to Section XVII *infra*.

## V.    Settlement Approval

### A.    Preliminary Approval

53.    Upon execution of this Agreement by all Parties, Settlement Class Counsel shall promptly move the Court for an Order granting preliminary approval of this Settlement ("Preliminary Approval Order").  The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed upon by Settlement Class Counsel and counsel for BofA.  The Motion for Preliminary Approval shall request that the Court:  (i) approve the terms of the Settlement as within the range of fair, adequate and reasonable; (ii) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (iii) approve the Notice program set forth herein and approve the form and content of the Notices of the Settlement, substantially in the forms attached to this Agreement as Exhibits 1, 2, 3, 4, and 5; (iv) approve the procedures set forth in paragraphs 60-62 below for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (v) stay the Action pending Final Approval of the Settlement; and (vi) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Settlement Class Counsel and counsel for BofA, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsel's application for attorneys' fees, costs and expenses and for Service Awards to Plaintiffs ("Final Approval Hearing").

54.    BofA, at its own expense, shall serve or cause to be served a notice of the proposed Settlement, in conformance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

## VI.    Discovery

55.     Class Counsel and BofA already have engaged in significant formal and informal discovery, including depositions and the production of more than one million pages of documents.  In addition, and consistent with its statutory and regulatory obligations to protect its customers' private financial information, BofA will continue to cooperate informally with Settlement Class Counsel by providing reasonably available data to permit Settlement Class Counsel and their experts to perform the allocation analysis detailed in Section XI below.

## VII.   Settlement Administrator

56.     Settlement Class Counsel and BofA shall retain Rust Consulting to serve as the Settlement Administrator.  The Settlement Administrator shall administer various aspects of the Settlement as described in paragraph 58 below and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, providing Mailed Notice to Settlement Class Members; working with the Notice Administrator to effectuate the Published Notice Program pursuant to Section VIII below; distributing the Settlement Fund as provided herein; repaying BofA from the Settlement Fund the amount of account credits BofA provides to Current Account Holder Settlement Class Members pursuant to paragraphs 87 and 88 hereof; and  paying the remainder of the Settlement Fund to BofA in the event of a termination of the Settlement pursuant to Section XVII hereof.  Settlement Class Counsel and counsel for BofA will jointly oversee the Settlement Administrator.

57.     As specified below, all Settlement Administrator fees, charges and expenses shall be paid out of the Settlement Fund within 30 days of Settlement Class Counsel's and counsel for BofA's receipt and approval of an invoice.

58.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, are as follows:

a.      Obtain from BofA and Settlement Class Counsel Settlement Class Member name and address information (to the extent it is available), and verify and update the addresses received through the National Change of Address database, for the purpose of mailing the Mailed Notice, and later mailing distribution checks to Past Account Holder Settlement Class Members, and to Current Account Holder Settlement Class Members where it is not feasible or reasonable for BofA to make the payment by a credit to the Settlement Class Members' Accounts;

b.      Establish and maintain a Post Office box for requests for exclusion from the Settlement Class;

c.      Establish and maintain the Settlement Website;

d.      Establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

e.      Respond to any mailed Settlement Class Member inquiries;

f.      Process all requests for exclusion from the Settlement Class;

g.      Provide weekly reports and, no later than five days after the end of the Opt-Out Period, a final report to Settlement Class Counsel and counsel for BofA that summarize the number of requests for exclusion received that week, the total number of exclusion requests received to date, and other pertinent information;

h.      Interface with the Tax Administrator;

i.      At Settlement Class Counsel's request in advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Class;

j.      Process and transmit distributions to Settlement Class Members from the Settlement Fund;

k.      Pay invoices, expenses and costs upon approval by Settlement Class Counsel and counsel for BofA, as provided in this Agreement; and

l.      Perform the duties of Escrow Agent as described in this Agreement, and any other Settlement-administration-related function at the instruction of Settlement Class Counsel and counsel for BofA, including but not limited to, verifying that BofA has correctly made a distribution to Settlement Class Members pursuant to paragraph 87 herein.

## VIII.   Providing Settlement Notice to Settlement Class Members

59.     The Parties shall retain Kinsella Media as Notice Administrator, to effectuate the Notice Program that provides Notice to the Settlement Class.

60.     Upon Preliminary Approval of the Settlement, at the direction of Settlement Class Counsel, the Notice Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order.  The Notice shall include, among other information:  a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or "opt out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information.  Settlement Class Counsel and counsel for BofA shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order.  Notices and publications provided under or as part of the Notice Program shall not bear or include the BofA logo or trademarks, the

return address of BofA, the BofA red and blue colors, or otherwise be styled to appear to originate from BofA.

61.     The Notice also shall include a procedure for Settlement Class Members to opt out of the Settlement Class.  A Settlement Class Member may opt out of the Settlement Class at any time during the Opt-Out Period.  Any Settlement Class Member who does not timely and validly request to opt out shall be bound by the terms of this Agreement.

62.     The Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and for Service Awards to Plaintiffs.  Objections to the Settlement or to the application for fees, costs, expenses, and Service Awards must be mailed to the Clerk of the Court, Settlement Class Counsel, and BofA's counsel.  For an objection to be considered by the Court, the objection must be received by the Court, Settlement Class Counsel and BofA's counsel no later than the last day of the Opt-Out Period, as specified in the Notice.  For an objection to be considered by the Court, the objection must also set forth:

        a.     the name of the Action;

        b.     the objector's full name, address and telephone number;

        c.     an explanation of the basis upon which the objector claims to be a Settlement Class Member;

        d.     all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

        e.     the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of  each case in which the objector has made such objection, and a copy of any orders

related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

      f.     the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

      g.     the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

      h.     any and all agreements that relate to the objection or the process of objecting – whether written or verbal – between objector or objector's counsel and any other person or entity;

      i.     the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

      j.     a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

      k.     a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

      l.     the objector's signature (an attorney's signature is not sufficient).

    63.    Notice shall be provided to Settlement Class Members in four different ways: Mailed Notice; Published Notice; Long-form Notice on the Settlement Website; and Web

Advertising.  Not all Settlement Class Members will receive all four forms of Notice, as detailed below.

64.     The Mailed Notice shall be substantially in the form attached hereto as Exhibit 1; the Published Notice shall be substantially in the form attached hereto as Exhibit 2; the Long-form Notice shall be substantially in the form attached hereto as Exhibit 3; and the Web Advertising referred to in paragraph 69 hereof shall be substantially in the form attached hereto as Exhibit 4.

65.     Within 28 days from the date that the Settlement Administrator receives from Settlement Class Counsel and BofA the data files that identify, subject to the data limitations described in paragraph 78 hereof, the names and last known addresses of the identifiable Settlement Class Members who held Accounts on or after October 1, 2003, the Settlement Administrator shall run the addresses through the National Change of Address Database, and shall mail to all such Settlement Class Members postcards that contain the Mailed Notice (the "Initial Mailed Notice").  To coordinate the Mailed Notice Program with the Published Notice Program, within one business day of the Settlement Administrator's receipt of the data files described above, the Settlement Administrator shall inform the Notice Administrator by email that it has received the data files.

66.     The Settlement Administrator shall perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable.  No later than 35 days from the Initial Mailed Notice date, the Settlement Administrator shall complete the re-mailing of Mailed Notice postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces (the "Notice Re-mailing Process").

67.     The Mailed Notice Program (which is comprised of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than September 2, 2011.  Within seven days after the date the Settlement Administrator completes the Notice Re-mailing Process, the Settlement Administrator shall provide Settlement Class Counsel and BofA's counsel an affidavit that confirms that the Mailed Notice Program was completed in a timely manner.  Settlement Class Counsel shall file that affidavit with the Court as an exhibit to or in conjunction with Plaintiffs' motion for final approval of the Settlement.

68.     All costs associated with the Mailed Notice Program shall be paid solely out of the Settlement Fund within thirty days of being approved by Settlement Class Counsel and counsel for BofA.

69.     The Notice Administrator shall administer the Published Notice Program, which shall be comprised exclusively of the following components:  one full-page advertisement in People magazine, one full-page advertisement in Sports Illustrated magazine, and one full-page advertisement in TV Guide; web advertising on Facebook.com, Microsoft Media Network, Yahoo! Network, and 24/7 Network ("Web Advertising"); and sponsored keyword search advertisements on the internet.  The Published Notice Program shall be completed no later than September 2, 2011.  All costs associated with the Published Notice Program shall be paid solely out of the Settlement Fund within thirty days of being approved by Settlement Class Counsel and counsel for BofA.

70.     Within seven days after the date the Notice Administrator completes the Published Notice Program, the Notice Administrator shall provide Settlement Class Counsel and counsel for BofA with one or more affidavits that confirm that Published Notice was given in

accordance with the Published Notice Program.  Settlement Class Counsel shall promptly file such affidavit(s) with the Court.

## IX.    **Final Approval Order and Judgment**

71.    The Plaintiffs' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. Plaintiffs shall file their motion for final approval of the settlement, and their application  for attorneys' fees, costs and expenses and for Service Awards for Plaintiffs no later than 45 days prior to the Final Approval Hearing.  At the Final Approval Hearing the Court will hear argument on Plaintiffs' motion for final approval of the Settlement, and on Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards for Plaintiffs.  In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the fee, cost, expense or Service Award application, provided the objectors filed timely objections that meet all of the requirements listed in paragraph 62 above.

72.    The Court at the Final Approval Hearing will determine whether to enter the Final Approval Order granting final approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses and Service Awards.  The proposed Final Approval Order that will be attached to the motion shall be in a form agreed upon by Settlement Class Counsel and counsel for BofA.  Such Final Approval Order shall, among other things:

        a.    Determine that the Settlement is fair, adequate and reasonable;

        b.    Finally certify the Settlement Class for settlement purposes only;

        c.    Determine that the Notice provided satisfies Due Process requirements;

        d.    Dismiss the Action with prejudice and without costs;

e.      Bar and enjoin Plaintiffs and all Settlement Class Members from asserting any of the Released Claims, as set forth in Section XV, including during any appeal from the Final Approval Order;

f.      Release BofA and the Released Parties from the Released Claims, as set forth in Section XV; and

g.      Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including BofA, all Settlement Class Members, and all objectors, to administer, supervise, construe and enforce this Agreement in accordance with its terms.

## X.      The *Closson* Appeal

73.      An appeal of the settlement in *Closson, et al. v. Bank of America, N.A., et al.* ("*Closson*"), is pending in the California Court of Appeal, First Appellate District, Case No. A125963.  Plaintiff Tornes is among the appellants in *Closson*.  BofA is one of the respondents. Briefing of the appeal is complete.

74.      Until the Effective Date of this Settlement, Tornes shall make all reasonable efforts to abate and continue the proceedings in *Closson*, and will fully cooperate with BofA in that regard, including by contacting the other appellants and moving to stay and/or abate the proceedings.

75.      Upon the Effective Date of this Settlement, Plaintiff Tornes will withdraw his appeal and all objections to the *Closson* settlement, and will endeavor to seek the same from all other *Closson* appellants.

76.      This Agreement shall remain in full force and effect regardless of any decision (affirming or reversing the existing judgment in *Closson*) that may be issued by the California Court of Appeal or the California Supreme Court in connection with the *Closson* appeal,

irrespective of whether such decision is issued prior to the Effective Date (in the event the efforts to abate and continue the proceedings in *Closson* are unsuccessful) or after the Effective Date.

## XI.  Allocation of Settlement Fund Among Settlement Class Members

77.    Consistent with its statutory and regulatory obligations to protect its customers' private financial information, BofA shall make available to Settlement Class Counsel and to Plaintiffs' experts data – to the extent it exists in reasonably accessible electronic form – sufficient to determine and implement the allocation of Settlement Funds as provided in this Section XI of this Agreement.  The methodology provided for in paragraph 79 will be applied to the data as consistently, sensibly, and conscientiously as reasonably possible recognizing and taking into consideration the nature and completeness of the data and the purpose of the computation.

78.    The Parties acknowledge that the information contained in BofA's databases is incomplete.  For example, BofA data for the period January 1, 2004 through Preliminary Approval is sufficiently complete to permit the Parties to identify all Settlement Class Members who had Accounts during that period and to calculate the amount of the distribution from the Settlement Fund to which each is entitled under this Settlement.  However, Plaintiffs have confirmed that for the period January 1, 2001 through September 30, 2003, BofA lacks data that would enable the Parties to make such identifications and calculations for <u>all</u> Account holders, and that for the period October 1, 2003 through December 31, 2003, BofA lacks certain data that would enable the Parties to do so for <u>some</u> Account holders.  Without such data, it is not possible for the Parties to identify all Settlement Class Members from these periods prior to January 1, 2004, or to calculate all amounts that such Settlement Class Members may be due from the Settlement Fund for such periods.  Nor would it be possible – given data constraints – for all Account holders from these periods to determine whether they are Settlement Class Members or

to calculate the amount that they may be due from the Settlement Fund.  To the extent that the Parties, consistent with the foregoing data constraints and limitations, can reasonably identify Settlement Class Members and calculate the amount such Settlement Class Members are due from the Settlement Fund, a distribution will be provided to them based upon the terms of the allocation set forth in this Section XI and in Section XII of this Agreement.  To the extent that the Parties, consistent with the foregoing data constraints and limitations, cannot reasonably identify Settlement Class Members or calculate the amount such unidentifiable Settlement Class Members may be due from the Settlement Fund for periods prior to January 1, 2004, a *cy pres* distribution shall be made as provided in paragraphs 81 and 82 hereof.

79.    The amount of the distribution from the Settlement Fund to which each identifiable Settlement Class Member, as described in paragraph 78, is entitled for the period October 1, 2003 to Preliminary Approval (subject to the availability of data) shall be determined using the following methodology:

      a.    All Accounts will be identified in which, on one or more calendar days, BofA assessed two or more Overdraft Fees on such day or days;

      b.    For each calendar day on which BofA assessed two or more Overdraft Fees, all transactions posted in such Accounts on that day will be ordered in the following posting order:

            i.    All fees that were charged for the previous day's transactions;

            ii.    All credits;

            iii.    All Debit Card Transactions ordered from the lowest dollar amount to highest dollar amount of transaction;

    iv. All non-Debit Card-initiated cash withdrawals ordered from the highest dollar amount to lowest dollar amount of transaction;

    v. Check transactions together with ACH transactions, ordered from the highest dollar amount to lowest dollar amount of transaction.

    c. After ordering the transactions as set forth in subparagraph (b) above, each Account – on a daily basis – will be identified in which the number of Overdraft Fees BofA actually assessed exceeds the number of Overdraft Fees that would have been assessed if the Account had been ordered as set forth in subparagraph (b) ("Additional Overdrafts");

    d. The dollar amount of the Additional Overdrafts will be calculated ("Additional Overdrafts Amount");

    e. For each Account in which one or more Additional Overdrafts have been identified, it will be determined how many (if any) Overdraft Fees BofA refunded during the thirty-day period following each calendar day on which any Additional Overdraft occurred ("Refunded Additional Overdrafts");

    f. The dollar amount of the Refunded Additional Overdrafts will be calculated ("Refunded Additional Overdrafts Amount");

    g. All Accounts will be identified in which on any calendar day the Additional Overdrafts Amount exceeds the Refunded Additional Overdrafts Amount. The Refunded Additional Overdrafts Amount will be subtracted from the Additional Overdrafts Amount to determine the "Differential Overdraft Fee";

    h. All Accounts that experienced a Differential Overdraft Fee will be checked against a list of Accounts that BofA closed with negative balances after writing them off as uncollectable ("Uncollectable Accounts").

      i.      For any Uncollectable Account that experienced a Differential Overdraft Fee, the Differential Overdraft Fee will be reduced dollar-for-dollar by the dollar amount of the negative closing Account balance.  When the dollar amount of the negative closing Account balance equals or exceeds the Differential Overdraft Fee for the Account, the Differential Overdraft Fee shall be reduced to zero for purposes of calculating that Account holder's distribution, and the Account holder will not receive a distribution from the Settlement Fund for such Account;

      j.      The foregoing allocation formula will yield the identification of all Account holders whose Accounts experienced a Differential Overdraft Fee greater than zero dollars ("Positive Differential Overdraft Fee") as well as the amounts of their respective Positive Differential Overdraft Fees.

80.      The parties agree the foregoing allocation formula is exclusively for purposes of computing retrospectively, in a reasonable and efficient fashion, the amount of Positive Differential Overdraft Fees each identifiable Settlement Class Member, as described in paragraph 78 hereof, paid to BofA from October 1, 2003 to Preliminary Approval as a result of Debit Re-sequencing and, subject to paragraphs 84-86 below, the amount of any distribution each Settlement Class Member should receive from the Settlement Fund.  The fact that this allocation formula is used herein is not intended and shall not be used for any other purpose or objective whatsoever.

81.      For the benefit of those unidentifiable Settlement Class Members who were assessed an Overdraft Fee as a result of Debit Re-sequencing during the period January 1, 2001 through December 31, 2003, and for whom BofA lacks sufficient information to identify the respective amounts such Settlement Class Members may be due from the Settlement Fund, as

described in paragraph 78 hereof, the Settlement Administrator shall disburse a portion of the Settlement Fund through a *cy pres* program, as set forth in paragraphs 82 and 91.

82.     The amount of the *cy pres* distribution referenced in the preceding paragraph shall not be less than five percent (5%) and shall not exceed fourteen percent (14%) of the Net Settlement Fund (the "*Cy Pres* Distribution Amount"). The Net Settlement Fund is equal to the Settlement Fund plus any interest earned from the Instruments, and less the following:

a.      all costs incurred in connection with providing Notice to the Settlement Class and mailing checks from the Settlement Fund to Settlement Class Members;

b.      all costs, expenses, and fees incurred by the Settlement Administrator, the Notice Administrator and the Tax Administrator, and any Taxes;

c.      a reservation of a reasonable amount of funds for prospective costs of Settlement administration, tax administration and/or additional Notice as agreed upon by Settlement Class Counsel and counsel for BofA;

d.      the amount of the Court-awarded attorneys' fees, costs and expenses to Class Counsel;

e.      the amount of the Court-awarded Service Awards to the Plaintiffs;

f.      the amount of expenses incurred in connection with maintaining the Escrow Account;

g.      the costs associated with investing in the Instruments; and

h.      all other costs and/or expenses incurred in connection with the Settlement not specifically enumerated in subsections (a) through (g) above, that are expressly provided for in this Agreement or have been approved by Settlement Class Counsel and counsel for BofA.

## XII.   Distribution of Settlement Fund to Settlement Class Members

83.     Within 30 days of the Effective Date, BofA and the Settlement Administrator shall distribute the Settlement Fund to the Settlement Class Members who do not opt out as provided herein.  Each Settlement Class Member who had a Positive Differential Overdraft Fee shall receive a distribution in the amount of a pro rata share of the Net Settlement Fund minus the *Cy Pres* Distribution Amount.

84.     Settlement Class Counsel shall divide the total amount of all Settlement Class Members' Positive Differential Overdraft Fees by the total amount of the Net Settlement Fund as computed pursuant to paragraph 82, which yields the "Pro Rata Percentage."

85.     Settlement Class Counsel shall adjust the amount of each Settlement Class Member's total Positive Differential Overdraft Fees by multiplying it by the Pro Rata Percentage, which yields each Settlement Class Member's "Differential Overdraft Payment Amount."

86.     Every Settlement Class Member shall be paid from the Settlement Fund the total Differential Overdraft Payment Amount to which he or she is entitled as calculated above ("Settlement Class Member Payments").  In no event, however, shall BofA ever be required to pay more than a total of $410 million to cover any Settlement Class Member Payments or otherwise.

87.     BofA shall make Settlement Class Member Payments to Current Account Holders either by a credit to those Settlement Class Members' Accounts or by mailed check, in those circumstances where it is not feasible or reasonable to make the payment by a credit to the Settlement Class Members' Account.  For those Settlement Class Members who receive their Settlement Class Member Payments by credits to their Accounts, BofA shall notify the Current Account Holders of the credit, and provide a brief explanation that the credit has been made as a

payment in connection with the Current Account Holder's membership in the Settlement Class. BofA shall provide the notice of account credit described in this paragraph in or with the account statement on which the credit is reflected. BofA will bear any costs associated with implementing the account credits and notification discussed in this paragraph. Settlement Class Member Payments made to Current Account Holders by check will be cut and mailed by the Settlement Administrator with an appropriate legend, in a form approved by Settlement Class Counsel and BofA's counsel, to indicate that it is from the Settlement, and will be sent to the addresses that the Settlement Administrator identifies as valid Settlement Class Member addresses. Checks shall be valid for 180 days. The Settlement Administrator will make reasonable efforts to locate the proper address for any Settlement Class Member whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address. All costs associated with the process of printing and mailing the checks and any accompanying communication to Current Account Holders shall be paid out of the Settlement Fund. The Settlement Fund shall pay all such invoices within thirty days of Settlement Class Counsel's and BofA's counsel's approving the invoice for payment.

88.     BofA shall be entitled to a payment from the Settlement Fund equal to the amount of account credits given to Settlement Class Members pursuant to Paragraph 87. Such payment shall be made within three days after BofA provides written verification to Settlement Class Counsel of the amount of account credits that were given.

89.     Settlement Class Member Payments to Past Account Holders will be made by check with an appropriate legend, in a form approved by Settlement Class Counsel and BofA's counsel, to indicate that it is from the Settlement. Checks will be cut and mailed by the Settlement Administrator, and will be sent to the addresses that the Settlement Administrator

identifies as valid Settlement Class Member addresses.  Checks shall be valid for 180 days.  The Settlement Administrator will make reasonable efforts to locate the proper address for any Settlement Class Member whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address.  All costs associated with the process of printing and mailing the checks and any accompanying communication to Past Account Holders shall be paid out of the Settlement Fund.  The Settlement Fund shall pay all such invoices within thirty days of Settlement Class Counsel's and BofA's counsel's approving the invoice for payment.

90.     The amount of the Settlement Fund attributable to uncashed checks and checks returned to the Settlement Administrator shall remain in the Settlement Fund for one year from the date that the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator shall make a reasonable effort to locate Settlement Class Members whose checks were returned to effectuate delivery of such checks to the Settlement Class Members entitled to them.  The Settlement Administrator shall make only one attempt to re-mail or re-issue a distribution check.

91.     Within 30 days of the Effective Date, the Settlement Administrator shall disburse the *Cy Pres* Distribution Amount.  This *cy pres* distribution is intended to benefit consumer financial literacy education, and to educate and assist consumers with financial services issues through advisory and related services (excluding litigation).  The *cy pres* recipient(s) shall be agreed upon by BofA and Settlement Class Counsel, and approved by the Court.  If Settlement Class Counsel and BofA are unable to agree on a *cy pres* program or on the recipient(s), they shall bring the matter, together with supporting materials and argument, to the Court for determination.

92.     All costs associated with the *cy pres* program shall be borne solely by the Settlement Fund.

## XIII.  Disposition of Residual Funds After Distribution to the Settlement Class Of Settlement Class Member Payments.

93.     Within one year plus thirty days after the date the Settlement Administrator mails the first Settlement Class Member Payment, any funds remaining in the Settlement Fund shall be distributed as follows:

a.     At the election and complete discretion of Settlement Class Counsel and counsel for BofA, the funds may be distributed to Settlement Class Members who received Settlement Class Member Payments on a pro rata basis, to the extent feasible and practical in light of the costs of administering such subsequent payments (all such costs to prepare and transmit such additional payments to be paid by the Settlement Fund); or

b.     At the election of Settlement Class Counsel and counsel for BofA, the funds may be distributed through a residual *cy pres* program.  The residual *cy pres* recipient(s) shall be agreed upon by BofA and Settlement Class Counsel, and approved by the Court.  Any residual *cy pres* distribution shall be paid as soon as reasonably possible following the completion of distribution of funds to the Settlement Class Members.  Any residual *cy pres* program pursuant to this paragraph is separate and independent of the *cy pres* program provided for in paragraphs 82 and 91 hereof and may have different *cy pres* recipients.

c.     If the Settlement Class Counsel and counsel for BofA are unable to agree on a distribution plan ((a) or (b)) or on the recipient(s), they shall bring the matter, together with supporting materials and argument, to the Court for determination.

d.      All costs associated with the disposition of residual funds – whether through an additional distribution to Settlement Class Members or through a residual *cy pres* program – shall be borne solely by the Settlement Fund.

e.      In the event no money remains in the Settlement Fund, the Parties shall have no obligation whatsoever to make any distribution as contemplated by subparagraphs (a) or (b) above of this paragraph.

## XIV.   **Effect of a Termination**

94.     The grounds upon which this Agreement may be terminated are set forth in paragraphs 108 and 109.  In the event of a termination as provided therein, this Agreement shall be considered null and void; all of BofA's obligations under the Settlement shall cease to be of any force and effect; the amounts in the Settlement Fund shall be returned to BofA in accordance with paragraph 95; and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement.  In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved, including, but not limited to, Plaintiffs' right to seek class certification and BofA's right to oppose class certification.

95.      In the event of a termination as provided in paragraph 108 and/or 109, the Escrow Agent shall return the Settlement Fund to BofA within seven days of termination, less any money that the Settlement Fund has already paid, or incurred an obligation to pay, for Settlement-related costs and expenses.

96.     This Settlement shall become effective on the Effective Date unless earlier terminated in accordance with the provisions of paragraph 108 and/or 109.

97.     In the event the Settlement is terminated in accordance with the provisions of paragraphs 108 and/or 109, any discussions, offers, or negotiations associated with this

Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose, without prejudice to Plaintiffs' right to seek class certification, and BofA's right to oppose class certification.  In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

## XV.   Releases

98.     As of the Effective Date, Plaintiffs and each Settlement Class Member, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged BofA and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters between January 1, 2001 and Preliminary Approval that were or could have been alleged in the Action, including, without limitation, any claims, actions, causes of action, demands, damages, losses, or remedies relating to, based upon, resulting from, or arising out of (a) the assessment of one or multiple Overdraft Fees on a BofA Account or the amount of one or more Overdraft Fees assessed on an Account, or (b) Debit Re-sequencing or posting order.  The foregoing release includes, by way of example but not limitation, any and all of the following to the extent they involve, result in, or seek recovery or

relief for Overdraft Fees or Debit Re-sequencing or posting order: (1) the authorization, approval or handling of any Debit Card Transaction, (2) any failure to notify or to obtain advance approval when a Debit Card Transaction would or might cause a BofA Account to become overdrawn or further overdrawn or an Overdraft Fee to be assessed, (3) any failure to allow the holder of any BofA Account to opt-out of overdrafts, or to publicize or disclose the ability of the holder of any BofA Account to opt-out of overdrafts, (4) any failure adequately or clearly to disclose, in one or more agreements, posting order, Debit Re-sequencing, overdrafts, Overdraft Fees, or the manner in which Debit Card Transactions are or would be approved, processed, or posted to BofA Accounts; (5) any conduct or statements encouraging the use of BofA Debit Cards, and (6) any advertisements relating to any of the foregoing.

99.     As of the Effective Date, Plaintiffs and each Settlement Class Member shall further automatically be deemed to have waived and released any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code or similar laws of any other state or jurisdiction. Section 1542 of the California Civil Code reads: "§1542. Certain claims not affected by general release. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his or her settlement with the debtor."

100.     Plaintiffs or any Settlement Class Member may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of Paragraphs 98 and 99, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or

unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this paragraph and Paragraphs 98 and 99. Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Agreement, including by the releases contained in this paragraph and in Paragraphs 98 and 99, and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he/she never receives actual notice of the Settlement or never receives a distribution of funds or credits from the Settlement.

101.    Nothing in this Agreement shall operate or be construed to release any claims or rights BofA has to recover any past, present or future amounts that may be owed by Plaintiffs or by any Settlement Class Member on his/her accounts, loans or any other debts with BofA, pursuant to the terms and conditions of such accounts, loans, or any other debts.

## XVI.   Payment of Attorneys' Fees, Costs, and Incentive Awards

### A.    Class Counsel Fees and Costs

102.    BofA agrees not to oppose Class Counsel's request for attorneys' fees of up to 30% of the Settlement Fund net of the expenses listed in paragraph 82, subsections (a), (b), (c), (e), (f), (g) and (h), and not to oppose Class Counsel's request for reimbursement of costs and expenses. Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund.

103.    The Parties negotiated and reached this agreement regarding the terms of paragraph 102 only after reaching agreement on all other material terms of this Settlement.

### B.    Payment of Attorneys' Fees and Costs

104.    Within three days of the Effective Date, the Escrow Agent shall pay from the Settlement Fund to Settlement Class Counsel all Court-approved attorneys' fees, costs, and

expenses of Class Counsel, including interest accrued thereon, provided, however, that the Escrow Agent shall not pay any such fees, costs or expenses from the Settlement Fund to Settlement Class Counsel until such time as Settlement Class Counsel have jointly agreed upon a plan of allocation of fees, costs and expenses among all Class Counsel.  In the event that the award of attorneys' fees, costs, and expenses of Class Counsel is reduced on appeal, the Escrow Agent shall only pay to Settlement Class Counsel from the Settlement Fund the reduced amount of such award, including interest accrued thereon.  Settlement Class Counsel shall furnish to the Escrow Agent any required tax information or forms before the payment is made.

105.    The payment of attorneys' fees, costs and expenses of Class Counsel pursuant to Paragraph 104 shall be made through a deposit by the Escrow Agent into an Attorney Client Trust Account jointly controlled by Settlement Class Counsel.  After the fees, costs and expenses have been deposited into this account, Settlement Class Counsel shall be solely responsible for distributing each Class Counsel firm's allocated share of such fees, costs and expenses to that firm.

### C.    Class Representative Service Awards

106.    Class Counsel will ask the Court to approve service awards of $5,000 per Plaintiff, or $2,500 per Plaintiff for married couples in which both spouses are Plaintiffs ("Service Awards").  All Service Awards are to be paid from the Settlement Fund.  The Service Awards shall be paid to Plaintiffs in addition to Plaintiffs' Settlement Class Member Payments. BofA shall not oppose Class Counsel's request for payment of the Service Awards.

107.    The Parties negotiated and reached this agreement regarding the Service Awards only after reaching agreement on all other material terms of this Settlement.

## XVII. <u>Termination of Settlement</u>

108.    This Settlement may be terminated by either BofA or Settlement Class Counsel by serving on counsel for the opposing Party and filing with the Court a written notice of termination within fourteen days after any of the following occurrences:

a.    the District Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

b.    an appellate court reverses the Final Approval Order, and the Settlement is not reinstated without material change by the District Court on remand;

c.    any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement in a way that BofA or Settlement Class Counsel seeking to terminate the Settlement reasonably considers material;

d.    the Effective Date does not occur; or

e.    any other ground for termination provided for elsewhere in this Agreement.

109.    BofA also shall have the right to terminate the Settlement by serving on Settlement Class Counsel and filing with the Court a notice of termination within fourteen days of its receipt from the Settlement Administrator of the final report specified in paragraph 58(g) above, if the number of Settlement Class Members who timely request exclusion from the Settlement Class equals or exceeds the number or percentage specified in the separate letter agreement executed concurrently with this Settlement by BofA's counsel and Settlement Class Counsel.  The percentage shall be confidential except to the Court, who shall upon request be provided with a copy of the letter agreement for *in camera* review.

and Plaintiffs agree to provide BofA promptly with copies of all materials received by Class Counsel through such subpoenas and discovery that Class Counsel reasonably determine refer or pertain to BofA.

118.    <u>Gender and Plurals</u>.  As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

119.    <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

120.    <u>Cooperation of Parties</u>.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.  This obligation of the Parties to support and complete the Settlement shall remain in full force and effect regardless of events that may occur, or court decisions that may be issued, in MDL-2036, in *Closson*, or in any other case in any court.

121.    <u>Obligation To Meet And Confer</u>.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

122.    <u>Integration</u>.  This Agreement (along with the letter agreement referenced in paragraph 109 hereof) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

110. In the event of a termination of the Settlement, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Escrow Account, the balance of the Settlement Fund shall be refunded and remitted to BofA as provided in paragraph 95. BofA shall have no right to seek reimbursement from Plaintiffs or Class Counsel for any funds disbursed from the Escrow Account pursuant to paragraph 50 above.

111. In the event of a termination of the Settlement pursuant to this Section XVII, the parties retain all of their pre-Settlement litigation rights and defenses, including Plaintiffs' right to seek class certification and BofA's right to oppose class certification, as provided in paragraphs 94 and 97.

**XVIII. No Admission of Liability**

112. BofA disputes the claims alleged in the Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind. BofA has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

113. Class Counsel and Plaintiffs believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel have fully investigated the facts and law relevant to the merits of the claims, have conducted extensive formal and informal discovery, and have conducted independent investigation of the challenged practices. Class Counsel and Plaintiffs have

concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

114.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever.

115.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

116.    In addition to any other defenses BofA may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement or the Releases contained herein.

## XIX.   Miscellaneous Provisions

117.    References to BofA in Third-Party Materials.  In the course of pursuing claims against defendant banks other than BofA in MDL-2036, Class Counsel are serving subpoenas and seeking discovery from third-party consultants to the banking industry.  BofA has requested

123.   <u>No Conflict Intended</u>.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

124.   <u>Governing Law</u>.  The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Florida, without regard to the principles thereof regarding choice of law.

125.   <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

126.   <u>Jurisdiction</u>.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice program, the Settlement Administrator, the Notice Administrator, and the Tax Administrator.  As part of their respective agreements to render services in connection with this Settlement, the Settlement Administrator, the Notice Administrator, and the Tax Administrator shall consent to the jurisdiction of the Court for this purpose.

127.   <u>Notices</u>.  All notices to Settlement Class Counsel provided for herein, shall be sent by email and facsimile with a hard copy sent by overnight mail to:

Bruce S. Rogow, Esq.
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Miami, FL 33137
Telephone:  305-571-8550
Facsimile:  305-571-8558
Email:  brogow@rogowlaw.com

Aaron S. Podhurst, Esq.
PODHURST ORSECK, P.A.
25 West Flagler Street, Suite 800
Miami, FL  33130
Telephone:  305-358-2800
Facsimile:  305-358-2382
Email:  apodhurst@podhurst.com

Robert C. Gilbert, Esq.
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard, 11th Floor
Coral Gables, FL 33134
Telephone:  305-442-8666
Facsimile:  305-779-9596
Email:  rcg@grossmanroth.com

David S. Stellings, Esq.
LIEFF CABRASER HEIMANN & BERSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  212-355-9500
Facsimile:  212-355-9592
Email:  dstellings@lchb.com

Michael W. Sobol, Esq.
LIEFF CABRASER HEIMANN & BERSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111
Telephone:  415-956-1000
Facsimile:  415-956-1008
Email:  msobol@lchb.com

All notices to BofA, provided for herein, shall be sent by email and facsimile with a hard copy

sent by overnight mail to:

Laurence J. Hutt. Esq.
Christopher Tarbell, Esq.

ARNOLD & PORTER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone:  213-243-4100
Facsimile:  213-243-4199
Email:  Laurence.Hutt@aporter.com

The notice recipients and addresses designated above may be changed by written notice.  Upon

the request of any of the Parties, the Parties agree to promptly provide each other with copies of

objections, requests for exclusion, or other filings received as a result of the Notice program.

128.    Modification and Amendment.  This Agreement may be amended or modified

only by a written instrument signed by the Parties and their respective counsel and approved by

the Court.

129.    No Waiver.  The waiver by any party of any breach of this Agreement by another

Party shall not be deemed or construed as a waiver of any other breach, whether prior,

subsequent, or contemporaneous, of this Agreement.

130.    Authority.  The Plaintiffs and BofA represent and warrant that the persons signing

this Agreement on their behalf have full power and authority to bind every person, partnership,

corporation or entity included within the definitions of Plaintiffs and BofA to all terms of this

Agreement.  Any person executing this Agreement in a representative capacity represents and

warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or

she signs this Agreement to all of the terms and provisions of this Agreement.

131.    Agreement Mutually Prepared.  Neither BofA nor Plaintiffs, nor any of them,

shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of

any statute, case law or rule of interpretation or construction that would or might cause any

provision to be construed against the drafter of this Agreement.

132.   <u>Independent Investigation and Decision to Settle</u>.  The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement.  BofA has provided and is providing information that Plaintiffs reasonably request to identify Settlement Class Members and the alleged damages they incurred.  It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

133.   <u>Receipt of Advice of Counsel</u>.  Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement and the Releases contained in Section XV above, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

Dated: May 11, 2011

ALTERS LAW FIRM, P.A.

Bruce S. Rogow

*Co-Lead Counsel for Plaintiffs and the Class*

PODHURST ORSECK, P.A.

Aaron S. Podhurst

*Co-Lead Counsel for Plaintiffs and the Class*

Dated: May 11, 2011

GROSSMAN ROTH, P.A.

Robert C. Gilbert

*Coordinating Counsel for Plaintiffs and the Class*

Dated: May _11_, 2011

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP,

_____
Michael W. Sobol

_____
David S. Stellings
_Settlement Class Counsel_


Dated: May __, 2011

BANK OF AMERICA, N.A.

_____
By: _____
    Its:_____


Dated: May __, 2011

ARNOLD & PORTER LLP

_____
Laurence Hutt
_Counsel for Bank of America, N.A._

Dated: May __, 2011

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

_____

Michael W. Sobol

_____

David S. Stellings

*Settlement Class Counsel*

Dated: May 6, 2011

BANK OF AMERICA, N.A.

_____

By: _____

Its: _____

Dated: May __, 2011

ARNOLD & PORTER LLP

_____

Laurence Hutt

*Counsel for Bank of America, N.A.*

Dated: May __, 2011

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

_____

Michael W. Sobol

_____

David S. Stellings

*Settlement Class Counsel*


Dated: May __, 2011

BANK OF AMERICA, N.A.

_____

By: _____

Its:_____


Dated: May 9, 2011

ARNOLD & PORTER LLP

_____

Laurence Hutt

*Counsel for Bank of America, N.A.*