# EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

**THIS DOCUMENT RELATES TO:**
**FIRST TRANCHE ACTIONS**

*Garcia, et al. v. Wachovia Bank, N.A.*
*and Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:08-cv-22463-JLK

*Spears-Haymond v. Wachovia Bank, N.A.*
*and Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-21680-JLK
N.D. Cal. Case No. 08-4610

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685-JLK
D. Or. Case No. 3:09-cv-01239-ST

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Zankich, et al. v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

---

**PLAINTIFFS' AMENDED RESPONSE IN OPPOSITION TO WELLS FARGO BANK'S**
**AND WACHOVIA BANK'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TO STAY IN FAVOR OF ARBITRATION**

Plaintiffs oppose the Motion to Dismiss or, in the Alternative, to Stay in Favor of Arbitration (the "Arbitration Motion") filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Wachovia Bank, N.A.'s ("Wachovia") (collectively "Defendants"). [**DE # 1384**].

## I.    Introduction

Defendants litigated these cases for nearly ***two years*** without ever having sought to compel arbitration - despite this Court's express invitation to do so and clear deadlines by which to do so. Those deadlines came and went. In the meantime, Defendants purposely availed themselves of this Court's jurisdiction by, among other things, filing numerous motions and participating in extensive discovery. At least until now, moreover, Defendants took the position that all related cases across the country should be litigated *in this MDL* - not before arbitrators. Under these circumstances, Defendants' Arbitration Motion is too little and far too late. Their acts and conduct waived any right to arbitrate they may have once possessed.

Defendants contend the Supreme Court's 5-4 decision in *AT&T Mobility LLC v. Concepcion*, ___ S. Ct. ___, 2011 WL 1561956 (Apr. 27, 2011), somehow overrides or excuses their decision not to seek arbitration earlier. They are wrong. *Concepcion* does not change the fact that Defendants long ago waived any right to seek arbitration. Indeed, Defendants never even suggested arbitration, much less demanded it, during the first two years of this litigation. No matter how Defendants try to spin it, *Concepcion* cannot undo their waiver.

Defendants' Arbitration Motion is devoid of any evidentiary support. However, they will no doubt seek to appeal this matter to the Eleventh Circuit. Therefore, prior to ruling on Defendants' untimely Arbitration Motion, this Court should allow Plaintiffs to conduct limited discovery concerning arbitration, to ensure a full record on appeal.

## II.   Relevant Procedural History

Since the creation of this MDL proceeding in June 2009, Wells Fargo and Wachovia have *actively* availed themselves of the jurisdiction of this Court. Indeed, Wells Fargo was a proponent of the creation of this MDL and argued before the Judicial Panel on Multidistrict Litigation that all related matters against it should be coordinated in this Court. 626 F. Supp. 2d 1333 (J.P.M.L. 2009). Following the creation of this MDL, numerous additional actions against Wachovia and Wells Fargo were filed in or transferred to this Court.

During the October 2009 status conference, Wells Fargo complained about having to litigate multiple cases in this MDL proceeding. In response, and at Wells Fargo's urging, this

Court entered an Order requiring Plaintiffs to file consolidated, amended complaints against Wells Fargo. [**DE # 134**]. In that Order, the Court specifically noted that Defendants could respond to the amended pleadings by simultaneously filing merits and non-merits motions, including motions to compel arbitration. *Id.* Nevertheless, in response to those amended pleadings, neither Wells Fargo nor Wachovia invoked their arbitration rights against the named Plaintiffs, even though they could have done so on the same substantive grounds they now raise.

Instead, Wells Fargo and Wachovia (joined by other defendant banks in the first tranche) filed the Omnibus Motion to Dismiss [**DE #217**], which this Court denied on March 11, 2010. [**DE # 305**]. In April 2010, this Court afforded Defendants yet another opportunity to invoke their arbitration rights. [**DE # 360**]. The Court directed Wells Fargo and Wachovia (and any other defendant that wished to do so) to move to compel arbitration no later than April 19, 2010. [**DE # 360**]. Once again, Wells Fargo and Wachovia did not invoke their arbitration rights against the Plaintiffs, even though they could have done so on the same substantive grounds they currently raise. Instead, they filed answers and affirmative defenses to the amended and consolidated complaints. [**DE # 503, 504, 548, 549**].

Soon thereafter, the Court opened discovery and established deadlines for Plaintiffs to file motions for class certification and for the parties to complete all discovery. [**DE # 463, 891**]. As this Court is aware, Defendants have fully and, at times, overly availed themselves of the discovery process over the past 12 months. Defendants (i) filed five offensive discovery motions (*e.g.*, Motion to Compel Discovery from *Garcia* and *Spears-Haymond* Plaintiffs [**DE # 907**]; Motion to Compel Discovery from *Martinez* and *Gutierrez* Plaintiffs [**DE # 909**]); (ii) opposed a Motion to Compel filed by Plaintiffs [**DE # 1044**]; and (iii) routinely asked this Court to clarify and/or reconsider its Orders on discovery motions. [**DE # 1036, 1220**]. In addition to these discovery-related motions, Defendants filed a Motion Seeking an Order Confirming the Obligation of Plaintiffs' Lead Counsel to Coordinate Discovery [**DE # 1202**], and forced Plaintiffs to file a Motion Seeking to Preserve Transactional Data related to Plaintiffs' claims. [**DE #1089**].

In addition to actively engaging in discovery motion practice, Wachovia and Wells Fargo propounded written discovery on Plaintiffs and took a number of the Plaintiffs' depositions. Defendants also produced approximately nine hundred thousand (900,000) pages of documents and electronically-stored information – much of it only after the Court ordered them to do so.

Moreover, Defendants have thus far produced 14 of their senior-level employees for deposition. All of this discovery that has taken place over the past 12 months, and motion practice related thereto, culminated in Plaintiffs recent filing of Motions for Class Certification pursuant to the Court's Revised Scheduling Order.

In sum, in the 23 months since this MDL proceeding began, Defendants **never** sought to invoke their arbitration provisions against the Plaintiffs, despite multiple specific invitations from the Court to do so.  Instead, Wells Fargo and Wachovia actively participated in all aspects of the litigation and, in so doing, voluntarily waived their right to compel arbitration.

Now, Defendants are attempting to change course, and want to fight each case individually, and secretly, before arbitrators.  According to Defendants, *Concepcion* constitutes a change in law which excuses their prior waiver.  *See* Arbitration Motion, p. 1 [**DE # 1384**]. Unfortunately for Defendants, *Concepcion* did not change the law such that it excuses Defendants' waiver of their right to seek arbitration.  Rather, Wachovia and Wells Fargo could have previously demanded that Plaintiffs arbitrate and timely moved to compel arbitration, just as several other banks did.  But they did not do so.  Therefore, Defendants' Arbitration Motion should be summarily denied.

**III.     Argument**

**A.     Plaintiffs should be afforded an opportunity to conduct limited arbitration-related discovery prior to a ruling on the Arbitration Motion.**[1]

Under established precedent, the determination of whether the parties have entered into a valid, enforceable arbitration agreement is controlled by state law.  *E.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (holding that courts should apply state law principles governing formation of contracts when deciding whether parties have agreed to arbitrate); *Brown v. Green Tree Servs.*, 585 F. Supp. 2d 770, 775 (D.S.C. 2008).   Here, Defendants are prematurely asking the Court to rule on the enforceability of their arbitration provisions without the benefit of a fully developed factual record as required by applicable state and federal law.  Given the fact-intensive nature of this inquiry, the enforceability of the provisions should not be resolved on the pleadings alone.  *See Granite Rock Co. v. International Brotherhood of Teamsters*, __ U.S. __, 130 S. Ct. 2847, 2856 (2010) ("A court may order

---

[1]   Plaintiffs are simultaneously filing a Motion to Defer Ruling on Defendants' Arbitration Motion Pending the Conclusion of Limited Arbitration-Related Discovery.

arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute. To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce"); *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1124 (11th Cir. 2010) (finding arbitration enforceability is fact-intensive question under Georgia law).

Here, there is no evidentiary record with respect to arbitration given that Defendants raised this issue for the very first time on April 27, 2011. As a result, there is no substantive record upon which the Court can base its decision and, thus, no reasonable inferences to be drawn therefrom. Although the Court may take judicial notice of certain facts, a district court may only take judicial notice of an adjudicative fact that is not subject to reasonable dispute in that it is either "generally known within the territorial jurisdiction" of the court or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201.

Here, issues like waiver, contract formation, and unilateral change in terms by Defendants go to the very heart of whether or not the parties even agreed to arbitrate. The need for targeted discovery on these issues is amplified by the fact that Defendants' Arbitration Motion is devoid of any evidentiary support. *See* Arbitration Motion, pp. 5-6 [**DE # 1384**]. Therefore, Plaintiffs respectfully submit that the Court should defer ruling until Plaintiffs have had a reasonable opportunity to conduct limited arbitration-related discovery. Such discovery is routinely granted. *E.g.*, *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 608-10 (3d Cir. 2002); *Dun Shipping Ltd. v. Amerada Hess Shipping Corp.*, 234 F. Supp. 2d 291, 294-96 (S.D.N.Y. 2002); *also Alzaidi v. U-Haul Co. of Kan., Inc.*, 2009 WL 3045462, at *1 (D. Kan. Sept. 22, 2009); *R&F, LLC v. Brooke Corp.*, 2007 WL 2809845, at *2-3 (D. Kan. Sept. 24, 2007); *Coneff v. AT&T Corp.*, 2007 WL 738612, at *1 (W.D. Wash. Mar. 9, 2007); *Wilson v. Yellow Transp., Inc.*, 2007 WL 445197, at *1 (D. Kan. Jan. 29, 2007); *Livingston v. Associates Fin., Inc.*, 2001 WL 709465, at *2-4 (N.D. Ill. June 25, 2001).

As the Third Circuit noted in *Blair*, "[a]lthough discovery is ordinarily not undertaken at such an early stage of a proceeding that is governed by an arbitration agreement, there is language in the Supreme Court's opinion [in *Green Tree*] faulting the claimant for not presenting evidence 'during discovery.'" 283 F.3d at 609. In both *Blair* and *Green Tree*, the plaintiff

4

challenged that validity of the arbitration agreement on the grounds that it was cost prohibitive. *Blair*, 283 F.3d at 609; *Green Tree*, 531 U.S. at 91-92. The Supreme Court's decision affirming an order compelling arbitration in *Green Tree* was based, in part, on the fact that the claimant failed to meet her burden of showing the likelihood that she had to bear prohibitive costs. 531 U.S. at 91-92. In light of that factor, the Third Circuit in *Blair* concluded:

> Without some discovery, albeit limited to the narrow issue of the estimated costs of arbitration and the claimant's ability to pay, it is not clear how a claimant could present information on the costs of arbitration as required by Green Tree and how the defendant could meet its burden to rebut the claimant's allegation that she cannot afford to share the cost.

283 F.3d at 609. Furthermore, the Third Circuit noted that:

> [T]he appropriate inquiry is one that evaluates whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, i.e., a case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims.

*Id.* (relying upon *Bradford,* 238 F.3d at 556). Furthermore, as the district court noted in *Livingston*, "it seems axiomatic that, if the Supreme Court places a burden of proof [to show an arbitration agreement is invalid] on a party, then that party must be given an opportunity to pursue discovery related to the issue that it has the burden to prove." 2001 WL 709465, at *2.

This Court has also held that, under some circumstances, discovery is warranted in regard to arbitration-related motions. *See* June 16th Order, pp. 1-2 **[DE # 594]**. Indeed, Plaintiffs recently served arbitration-related discovery on Defendants. *See* Exhibits A, B, C, and D attached hereto. Defendants' responses to these requests, coupled with limited follow-up deposition discovery, will confirm certain important issues for the Court's consideration if it does not find that Defendants waived their arbitration rights. For example, Plaintiffs' arbitration discovery requests that Defendants identify all steps taken to inform customers of their arbitration agreements and to produce all documents referencing or reflecting the number of arbitrations that have taken place between Defendants and their customers. *E.g.*, Supp. Interrog. No. 6 to Wachovia; Supp. Req. for Prod. No. 6 to Wachovia. Defendants' responses are directly relevant to factors to be considered by the Court if it reaches the unconscionability arguments. Therefore, Plaintiffs respectfully request that the Court defer ruling on the Arbitration Motion,

5

order Defendants to timely and fully respond to this arbitration discovery, permit Plaintiffs to conduct arbitration-related depositions, including a Rule 30(b)(6) deposition as to arbitration issues, and allow Plaintiffs to submit a supplemental response to the Arbitration Motion within 30 days thereafter.  Denying Plaintiffs this minimal opportunity to conduct arbitration-related discovery will preclude a fully developed record and will prejudice Plaintiffs.

The importance of permitting Plaintiffs to conduct limited arbitration discovery and to create a full evidentiary record on these issues cannot be overstated.  Even though Defendants are asserting the spurious demand for arbitration knowing full well that they long ago waived that right, Defendants true motive is to derail this litigation through an inevitable appeal to the Eleventh Circuit.  Therefore, while Plaintiffs are confident this Court can, indeed should, summarily deny the Arbitration Motion based on waiver alone, the best way to avoid further delay is to allow Plaintiffs to create the fullest record demonstrating that, in addition to waiver, no right to arbitration exists procedurally as well as substantively.   Absent a full evidentiary record, Defendants will inevitably argue on appeal that the waiver finding was insufficient and that, at a minimum, a "full remand" is required to determine whether the subject arbitration provisions are procedurally and substantively unconscionable.  Such a remand would only reward Defendants with further delays of this litigation, their clearly-demonstrated motive over the past few months.

**B.**      **The Arbitration Motion should be denied based on waiver.**

       **1.**      **Under the facts and circumstances here, Wells Fargo and Wachovia have waived their right to compel arbitration.**

Defendants have waived their right to arbitrate by failing to timely file motions within the multiple deadlines set by this Court, and by actively engaging in substantial motion practice and discovery with Plaintiffs prior to filing the Arbitration Motion.  It is well established that a "party may, by its conduct, waive its right to arbitration." *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (internal citations omitted).  A defendant can waive its right to arbitration where, for example, it "'substantially invok[es] the litigation machinery' prior to demanding arbitration . . . ." *Id.* (quoting *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977)).[2]  The Eleventh Circuit has established a two-part test: the right to

---

[2] Waiver of a right to compel arbitration through delay is consistent with "Congress' clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into

move to compel arbitration is waived "if, 'under the totality of the circumstances, the . . . party has acted inconsistently with the arbitration right,' and, in so acting, has in some way prejudiced the other party." *Id.* (internal cites omitted); *see also Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002) (same) (quoting *S & H* at 1514).

In *S&H Contractors*, the plaintiff filed a lawsuit in a district court, waited ***eight*** months, and then moved to compel arbitration. 906 F.2d at 1514. In the interim, the parties engaged in motion practice and conducted discovery. *Id.* The Eleventh Circuit found the plaintiff waived its right to compel arbitration, noting that "as a matter of law, [defendant] was prejudiced by [plaintiff's] delay in demanding arbitration and by its invocation of the litigation process. Furthermore, we find that [plaintiff] acted inconsistently with its arbitration right [and] therefore, has waived its right to arbitrate . . . ." *Id.*

Other courts have found waiver where the defendant delayed as little as seven months or as long as two years before moving to compel arbitration. *See, e.g. Miller Brewing Co. v. Fort Worth Dist., Inc*., 781 F.2d 494, 497 (5th Cir. 1986) (finding waiver where the party seeking to invoke arbitration did not "announce its intention" to do so until almost eight months after the case was filed); *Graig Shipping Co. v. Midland Overseas Shipping Corp*., 259 F. Supp. 929, 931 (S.D.N.Y. 1966) ("a [party] may not invoke arbitration and yet seek pre-trial discovery going to the merits") (internal citations omitted). Defendants' torpor and excessive delay operate as a waiver under the black-letter rule that "[a] party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Cornell & Co. v. Barber & Ross Co*., 360 F.2d 512, 513 (D.C. Cir. 1966) (per curiam). Applying this rule in *Burton-Dixie Corp. v. Timothy McCarthy Construction Co.*, 436 F.2d 405, 408-09 (5th Cir. 1971), the Court upheld the jury's finding that a contractor waived its right to arbitrate a dispute over the cost of replacing a defective roof, where, after the owner filed suit, the contractor neither attempted to invoke the arbitration provision of the construction contract, nor asked the Court to stay proceedings pending arbitration in its answer, but instead denied liability, alleged the owner's failure to arbitrate as an affirmative defense, impleaded as third-party defendants two subcontractors, and proceeded to litigate the dispute.

---

arbitration as ***quickly and easily*** as possible . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 22 (1983) (emphasis supplied).

7

Courts nationwide have consistently denied arbitration motions when defendants could have filed them earlier.  *E.g.*, *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 703 (10th Cir. 1980) (right to arbitrate waived by defendant that consistently denied its status as a party for one year, participated in hearings, pretrial conferences, motions, and other pleadings, deposed witnesses, and asserted an arbitration clause merely as a defense in a counterclaim without demanding immediate enforcement); *Eagle Traffic Control, Inc. v. James Julian, Inc.*, 945 F. Supp. 834, 835-36 (E.D. Pa. 1996) (by actively litigating action for seven months, defendants waived their alleged contractual right to compel arbitration where parties had engaged in extensive discovery, vigorously contested a motion to dismiss, defendants assented to the court's pretrial orders, and defendants gave no notice prior to moving to compel arbitration that they intended to seek arbitration); *Ging v. Parker-Hunter Inc*., 544 F. Supp. 49, 54-55 (W.D. Pa. 1982) (broker whose contract with clients included an arbitration clause waived arbitration by filing a counterclaim and then pursuing discovery on the counterclaim); *Lounge-A-Round v. GCM Mills, Inc*., 109 Cal. App. 3d 190, 200-02 (Cal. Ct. App. 1980) (arbitration right waived by waiting nine months to raise the issue, after answering complaint without asserting any arbitration-based defenses and filing a cross complaint, which caused litigation expenses); *also Davidson v. PDS Tech. Servs.*, 2010 U.S. Dist. LEXIS 123178 *13 (M.D. Fla. Nov. 8, 2010) (finding waiver when party moved "two years after initiation of the West action to demand arbitration, [and] acted inconsistently with an intent to arbitrate and prejudiced PDS by causing PDS to incur the type of litigation expenses that arbitration seeks to eliminate"); *L&W Innovations, LLC v. Linli Constr., Inc.*, 2009 U.S. Dist. LEXIS 68519, *10-13 (D. Colo. Aug. 5, 2009) (finding waiver because a year had passed with movant "actively participat[ing] in litigation," movant waited until the "eve" of critical matters to be decided in the case before filing for arbitration, and much of "benefits of pursuing the case in arbitration [were] lost by [the delay]"); *Strickland v. Chase Bank USA, N.A.*, 2009 U.S. Dist. LEXIS 127879, *15-16 (N.D. Ga. Dec. 31, 2009) (noting that "since Chase refused to pay the arbitration fee and has now litigated with plaintiff for over a year without moving to compel arbitration, Chase 'has acted inconsistently with the arbitration right,' and arguably has waived any right to require that the dispute be resolved through arbitration").  Under the circumstances present here, Defendants' waiver is clear and irrefutable.

8

a.       **Defendants have acted inconsistently with the arbitration right.**

Participation in the judicial process is an act inconsistent with the right to arbitration when the moving party "engage[s] in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *Subway Equip. Leasing Crop. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999). Thus, "[a] party waives arbitration by seeking a decision on the merits before attempting to arbitrate." *Petroleum Pip Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 467, 480 (5th Cir. 2009); *see also Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1989) ("[E]xtended silence and much-delayed demand for arbitration indicates a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims. This choice was inconsistent with the agreement to arbitrate'") (quoting *National Found. for Cancer Research v. A.G. Edwards & Sons*, 821 F.2d 772, 777 (D.C. Cir. 1987) (right to arbitrate securities claims waived by participation in litigation)).

Here, Defendants decided to proceed in this Court since the first complaints were filed and continually demonstrated their intent to litigate the claims ever since. Defendants' Omnibus Motion to Dismiss clearly sought the dismissal of the entire case, i.e., a decision on the merits. *See, e.g.*, *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (noting that a Rule 12(b)(6) "dismissal for failure to state a claim" is a "judgment on the merits") (internal quotation marks omitted). Defendants Omnibus Motion was not based merely on procedural or jurisdictional grounds. **[DE # 217]**. Consequently, based on that motion alone, Defendants waived their alleged right to arbitrate these claims.

Defendants' untimely Arbitration Motion is particularly egregious and prejudicial to Plaintiffs because Wells Fargo and Wachovia waited almost two years and, in the process, flouted multiple deadlines set by the Court. This Court's November 6, 2009 Order clearly required Defendants to file any arbitration motion before December 8, 2009:

> On or before December 8, 2009, Defendants **Wachovia Bank, National Association,** Bank of America, N.A., Citibank, N.A., U.S. Bank National Association, JPMorgan Chase Bank, N.A., **Wells Fargo** and Union Bank **shall file** their merits **and non-merits motions** directed to the operative complaints on file . . . The Court holds that the **simultaneous filing** of these merits and **non-merits motions** shall not be deemed a waiver of any Defendant's rights to move to compel arbitration.

*See* Nov. 6, 2009 Order, ¶ 11 (emphasis added) **[DE # 134]**.

9

The November 6th Order specifically envisioned that Wachovia and Wells Fargo were to *simultaneously file* their arbitration motions with all other merits and non-merits motions, as reflected in the following colloquy at the October 22, 2009 Status Conference between Defendants' Liaison Counsel (who is also Wachovia's and Wells Fargo's counsel) and the Court:

> MR. DAVIDSON: Of course, we would have non-merits motions, which would be things like venue, *arbitration* clauses, etc. And then next we would have another tranche of motions which would be 12(b)6 motions. We are willing to collapse and put these motions together . . . with one small caveat, Judge. There may be banks that wish to pursue arbitration motions. Your Honor is well aware that if you file an arbitration motion and a merits motion simultaneously, you bear the risk of a waiver argument. We believe Your Honor can resolve that by conditioning the December 1st response and preserving, in effect, negating the waiver argument by Your Honor's order.
>
> THE COURT: In all fairness, that would be the reasonable – in all fairness, I would not wish someone who in attempting to cooperate with the Court to move this matter forward efficiently had innocently or accidentally stumbled into a waiver of some substantial right. And I would go to any reasonable length to prevent that with any ruling. In other words, we could articulate into the record that is without any prejudice to that movant to raise this matter appropriately in the appellate court. But it's wise to look forward to that and to formalize that in a written order, I suppose, so that the parties would be protected. . . . *So I agree with you, and if we can formalize that in writing, if that's agreeable to you all, the December 1st deadlines seems reasonable to me.* (emphasis added).

*See* Oct. 22, 2009 Status Conf. Transcript, pp. 39-40 (emphasis added) **[DE # 124]**. Thus, Defendants' failure to move to compel arbitration when moving to dismiss on December 22, 2009 constituted a knowing, intentional and voluntary waiver of their right to seek arbitration.[3]

Defendants' knowing waiver is further illustrated by footnote 2 of the Omnibus Motion to Dismiss, in which the banks noted that "[t]here are a few individualized issues, such as arbitration rights, that certain individual banks will be presenting to the Court in separate motions." *See* Omnibus Motion, p. 6 n.2 **[DE # 217]**. While certain other banks (Huntington and SunTrust) timely moved to compel arbitration, none of the first tranche banks, including Wells Fargo and Wachovia, filed motions to compel arbitration *simultaneous* with the filing of the Omnibus Motion. Thus, Defendants waived their right to do so.

---

[3] The deadline for filing non-merits and merits motions was subsequently extended to December 22, 2009. **[DE # 164].**

---

**Deleted:** so that all motions connected to the final complaint against each bank to be filed by December 1,

**Deleted:** I do this frequently in criminal cases. We ask people to move forward and submit the Rule 29 at the conclusion of the Government's case. And call the rest of the witnesses, but to protect them. And that's always been accepted by the 11th Court. But we consider it, if it's timely made, it's verbally made, and there's no waiver.

**Deleted:** have no difficulty with that. And I certainly would prefer, I think, I believe, it all depends on the plethora of legal theories that are going to be advanced, but I certainly would prefer to deal with this in one motion to dismiss rather than in serial form, you know. *So I*

**Formatted:** Font: Bold, Italic

**Deleted:** Defendants'

Defendants not only missed this initial deadline, they also missed the second chance provided by this Court in its April 14, 2010 Order. **[DE # 360, pp. 2-3].** The April 14th Order established that "[a]ny other Defendant presently a party in this consolidated litigation that wishes to join in and be heard on the motions to compel arbitration . . . may do so by filing a short (non-repetitive if possible) statement that they either (a) elect to join in the pending motions for arbitration already filed by the four Defendants listed above, or (b) filing such additional case authorities or memorandum as they may be advised." *Id.* Even after the Court denied Plaintiffs' motion for clarification regarding this point, Defendants again failed to assert arbitration against the operative complaints in these cases. **[DE # 365].**

The Court previously found that contravening explicit Orders constitutes a waiver of an arbitration clause in this case. Ten months ago, U.S. Bank, another defendant in the first tranche, filed a motion to compel arbitration based on the Supreme Court's mere grant of *certiorari* in *Concepcion*. [**DE # 632**]. This Court denied U.S. Bank's motion as untimely, finding that U.S. Bank waived its opportunity to compel arbitration. [**DE # 855**]. The Court found that U.S. Bank had at least two opportunities to file any arbitration related motions, but chose not to do so. *Id.* at 2-4. On page 4 of its Order, the Court specifically rejected the argument that a subsequent decision in *Concepcion* might resuscitate U.S. Bank's right to move to compel arbitration:

> Defendant does not directly address the fact that it contravened explicit orders of the court setting a time frame to file motions to compel arbitration, which was carefully crafted after a status conference and submission by all parties, or why it failed to do so in April of 2010 when the Court again opened the door for the filing of any motions to compel arbitration to any Defendant that wished to do so.

Wells Fargo and Wachovia certainly had the same opportunity as U.S. Bank, and likewise chose not to timely file motions to compel arbitration. Moreover, these Defendants continued to litigate in this Court by filing multiple motions, producing and requesting written discovery, and conducting and defending depositions in the ten months since this Court denied U.S. Bank's motion. Defendants' conduct both before and certainly since the Court rejected U.S. Bank's similar motion constitutes a waiver of their right to move for arbitration.

  b.    **Defendants' inaction has prejudiced Plaintiffs.**

Beyond ignoring repeated deadlines to timely file arbitration motions pursuant to this Court's Orders, Defendants actively participated in this litigation for nearly two years.

11

Consequently, Plaintiffs will be substantially prejudiced if the untimely Arbitration Motion is granted.  *See* Declaration of Robert C. Gilbert, ¶¶ 1 - 15 (attached hereto as Exh. E).  Since the creation of this MDL, the parties have engaged in almost two years of extensive motion practice and discovery.  *Id.*

  While discovery is not yet complete, discovery has been extensive and consumed thousands of attorney hours and enormous out-of-pocket expenses.  The discovery and related motion practice conducted to date includes the following:

- Defendants served initial disclosures. *Id.* at ¶ 3.

- Defendants served extensive interrogatories and document requests on Plaintiffs, to which Plaintiffs responded. *Id.* at ¶¶ 7-8.

- Plaintiffs served interrogatories, extensive document requests and requests for admission on Wells Fargo and Wachovia, to which Defendants responded.  *Id.* at ¶ 6.

- The parties negotiated and entered a Stipulated Protective Order and other stipulations regarding privilege and expert issues. *Id.* at ¶ 9.

- The parties participated in numerous discovery conferences and meetings in an effort to address orderly and efficient discovery proceedings in this MDL. *Id.* at ¶ 10.

- Defendants filed numerous motions regarding discovery-related issues, including a motion to compel discovery against Plaintiffs, and a motion confirming the obligation of Plaintiffs' Lead Counsel to coordinate discovery in all cases pending against Defendants in this MDL to ensure that depositions would not be duplicated. *Id.* at ¶ 11.

- Plaintiffs filed two motions to compel against Defendants, the second of which was fully briefed and decided by this Court. *Id.* at ¶ 12.

- Defendants sought relief from this Court's discovery orders through various motions for reconsideration or clarification.  *Id.* at ¶ 12.

- Defendants have produced approximately nine hundred thousand (900,000) pages of documents and electronically stored information in response to Plaintiffs' discovery requests.  *Id.* at ¶ 13.

- Plaintiffs and Defendants have taken or defended approximately 20 depositions, including depositions of 14 designees and senior-level employees of Defendants and five named Plaintiffs.  *Id.* at ¶¶ 14-15.

- Plaintiffs have devoted substantial human and financial resources to the discovery process and discovery-related motion practice. *Id.* at ¶¶ 3-15.

Plaintiffs have also expended substantial human and financial resources in non-discovery motion practice. Plaintiffs expended substantial time researching and opposing Defendants' Omnibus Motion to Dismiss, and Defendants' Motions for Clarification and for §1292 Certification. *Id.* at ¶ 2. Plaintiffs also expended tremendous resources in researching, drafting and filing the motions for class certification against Wachovia and Wells Fargo. *Id.* at ¶ 16.

The Eleventh Circuit's recent opinion in *CitiBank, N.A. v. Stok & Associates, P.A.*, No. 09-13556 (11th Cir. July 20, 2010), is the perfect foil to the facts before this Court. There, the Eleventh Circuit reversed the district court's finding that CitiBank had waived its right to seek arbitration. Slip Op. at 2. In reaching this conclusion, the Court found that Stok had not sufficiently shown that it suffered any prejudice during the 24-*day* period between CitiBank's filing of its answer and its filing of a motion to compel. *Id.* at 7-8. The Court found that given the short timeframe and lack of substantive litigation that had transpired, prior decisions like *S&H Contractors* and *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542 (11th Cir. 1990), where waiver had been found based on delays of eight and 20 months, respectively, did not apply.

In stark contrast to *Stok*, the nearly two-*year* delay here in seeking arbitration, coupled with the substantial amount of litigation and motion practice that has already occurred, clearly supports a finding that Defendants waived their right to seek arbitration.

### 2.    *Concepcion* does not excuse Defendants' waiver.

Defendants argue that *Concepcion* entitles them to reverse their litigation strategy and seek arbitration for the first time, nearly two years into this case. They are dead wrong.

The lynchpin of this argument is that *Concepcion* constitutes a change in the relevant law. *See* Arbitration Motion, pp. 6-7. According to Defendants, the Supreme Court in *Concepcion* held that any finding of unconscionability with respect to an arbitration agreement based on state unconscionability law is preempted by the FAA. *Id.* at 6. Such an argument, however, is directly at odds with the plain language of the decision.

As noted by Justice Scalia at the outset of *Concepcion*, the sole issue before the Court was whether the "*Discover Bank* rule" under California law, which held that class action waivers were *per se* unconscionable, was preempted by the FAA. 2011 WL 1561956, at *6-8.

**Formatted:** Indent: First line:  36 pt

Moreover, the Supreme Court explicitly recognized that Section 2 of the FAA allows arbitration agreements to be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* at \*5. Defendants' overly expansive reading of *Concepcion* is inconsistent with the express language of the decision. Lest there be any confusion about the scope of *Concepcion*, the Court expressly held that:

> The final phrase of § 2, however, permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Perry v. Thomas*, 482 U.S. 483, 492–493, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). The question in this case is whether § 2 preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable. We refer to this rule as the *Discover Bank* rule.

2011 WL 1561956, at \*5. Defendants' attempt to argue that the Supreme Court's resolution of this narrow question represents a broad holding that arbitration agreements are no longer subject to invalidation under any state's unconscionability law is simply not accurate.

As the Supreme Court repeatedly noted throughout *Concepcion*, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* at \*6 (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)). Furthermore, as the Supreme Court recognized before *Concepcion*, in *Doctor's Associates* and *Perry*, "a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot.'" 2011 WL 1561956, at \*6. Therefore, the holding in *Concepcion* that the *Discover Bank* rule under California law ran afoul of this longstanding legal principle does not constitute the change in law, as Defendants suggest.

The *Discover Bank* rule "requir[ed] the availability of class-wide arbitration," 131 S. Ct. at 1748, without reference to evidence that the particular arbitration provision at issue interfered with the consumer's ability to vindicate his rights in an arbitral forum. The rule automatically allowed the invocation of class-wide arbitration when (1) the contract was one of adhesion, something the Supreme Court recognized applies to all modern consumer contracts, (2) involved

14

"small" damages, a requirement that California courts had rendered "toothless and malleable," and (3) the consumer merely *alleged* a scheme to cheat consumers. *Id.* at 1750. The *Discover Bank* rule thus made "manufactured" class arbitration, *id.* at 1751, "inevitable," despite the defendant corporation's consent to no more than bilateral arbitration, *id.* at 1750. The Supreme Court found this blanket rule to burden arbitration in violation of the purposes of the FAA. But it did not take the further – and far broader – step of saying that arbitration provisions containing class-action waivers could never be deemed unconscionable pursuant to a general state law that requires a particularized evidentiary analysis of the impact of the arbitration provision on a consumer's ability to vindicate his rights in a non-judicial forum.

Far from a blanket rule like that imposed in *Discover Bank*, the Eleventh Circuit has recognized that the appropriate test, under Georgia law at least, is to examine each clause on a case-by-case basis and evaluate a wide variety of circumstances, such as the cost to an individual plaintiff of vindicating the claim when compared to the plaintiff's potential recovery, the ability to recover attorneys' fees and other costs and thus obtain legal representation, the practical effect the waiver will have on a company's ability to engage in unchecked market behavior, and related policy concerns. *See Dale v. Comcast*, 498 F.3d 1216, 1224 (11th Cir. 2007). Indeed, the Eleventh Circuit has on occasion enforced arbitration clauses. *See, e.g., Cappuccitti*, 623 F.3d at 1124-27; *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1377-79 (11th Cir. 2005); *Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 873 (11th Cir. 2005); *Randolph v. Green Tree Financial Corp.*, 244 F.3d 814, 816-18 (11th Cir. 2001). The law of other states in the Eleventh Circuit are similarly based on multi-factor tests for unconscionability and do not resemble California's *Discover Bank* standard.

Simply put, *Concepcion* did *not* change the law of arbitration enforceability in the vast majority of the relevant states. For example, *Concepcion* changes nothing in states such as Florida, Georgia, Texas and others, where certain Plaintiffs reside. These states have never adopted a rule even closely resembling *Discover Bank*'s *per se* rule against class action waivers. In Georgia, for example, class waivers have often been upheld. *E.g., Cappuccitti*, 623 F.3d at 1124-27; *Caley*, 428 F.3d at 1377-79; *Jenkins*, 400 F.3d at 878-80. Georgia law requires a case-by-case determination based upon the facts and circumstances before the Court. *E.g., Cappuccitti*, 623 F.3d at 1124 n.15; *Dale v. Comcast Corp.*, 498 F.3d at 1223. Based on the applicable Georgia factors, arbitration clauses with class waivers have also been found

15

unconscionable. *Dale*, 498 F.3d at 1122-24; *Gordon v. Branch Banking & Trust*, 2011 WL 1111718 (11th Cir. March 28, 2011); *Jones v. DirecTV, Inc.*, 381 Fed. Appx. 895, 896-97 (11th Cir. June 3, 2010). Thus, as discussed above, Wachovia and Wells Fargo could certainly have previously filed arbitration motions at much earlier stage of these cases.

Without a change in the applicable law, there is no basis upon which Defendants can justify their untimely Arbitration Motion. Therefore, the Arbitration Motion should be denied.

### 3. *Benoay* does not excuse Defendants' waiver.

Defendants also rely on *Benoay v. Prudential-Bache Securities, Inc.*, 805 F.2d 1437 (11th Cir. 1986), and similar cases, for the premise that a party can move to compel arbitration at an advanced stage of litigation, without a finding of waiver, where filing such a motion would have been futile earlier. *See* Arbitration Motion, pp. 10-11. However, a thorough reading of *Benoay* reveals that Defendants' reliance on this theory of law is misplaced.

The Eleventh Circuit recognized in *Benoay* that "[t]he right to arbitrate can be waived." 805 F.2d at 1440. However, the Court noted that "when a claim is not arbitrable at the time an action is commenced and a timely request has been made, mere participation in discovery does not cause prejudice sufficient to constitute a waiver." *Id.* (citing *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 853-54 (11th Cir. 1986); *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir.1982)). The reasoning behind the Court's ultimate holding in *Benoay* was based on the fact that at the time the case was filed there was a bright line rule that "prohibited arbitration of otherwise arbitrable state claims when arbitrable and nonarbitrable claims were 'inextricably intertwined.'" 805 F.2d at 1440. Therefore, when the Supreme Court decided *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985), which rejected the intertwining doctrine and ruled that "'the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" *Id.* (quoting *Byrd*, 470 U.S. at 217). Because *Byrd* disposed of the "inextricably intertwined" doctrine that had previously precluded the arbitration of the claims at issue in *Benoay*, the Eleventh Circuit found that a timely request to arbitrate shortly after the Supreme Court decision could overcome waiver of the right to arbitrate. 805 F.2d at 1440.

In contrast to the facts in *Benoay*, prior to *Concepcion* there was no bright line rule that established that all arbitration agreements were *per se* unconscionable under the state law of all

16

50 states if they contained a class action waiver.  In reality, as evidenced by this Court's handling of arbitration motions in certain cases dealing with overdraft fees, and the rulings of other courts on arbitration motions filed in certain cases dealing with overdraft fees, there is no such bright line rule.   Rather, a case-by-case examination is conducted into the relevant factual circumstances and applicable state law.  *See, e.g.*, *In re Checking Account Overdraft Litigation*, 734 F. Supp. 2d 1279, 1283-93 (S.D. Fla. 2010) (denying motions to compel arbitration filed under Georgia, North Carolina, South Carolina and Maryland law); *In re Checking Account Overdraft Litigation*, 734 F. Supp. 2d 1294, 1297-1301 (S.D. Fla. 2010) (granting motion to compel arbitration under Ohio law); *Pellett v. TCF Bank, N.A.*, Case No. 10-3943(DSD/FLN) (D. Minn. Nov. 24, 2010) (granting motion to compel arbitration under Illinois law in case dealing with overdraft fees) (attached hereto as Exhibit F); *Fat Butter, Ltd. v. BBVA USA Bancshares, Inc.*, Case No. 4:09-cv-03053 (S.D. Tex. Apr. 29, 2010) (granting motion to compel arbitration under Texas law in overdraft fee case) (attached hereto as Exhibit G).  As arbitration agreements with class action waivers were being upheld by this Court and others prior to *Concepcion*, it is clear there was no established law prior to *Concepcion*, as Defendants suggest.  Thus, there was no futility in moving to compel arbitration prior to the Supreme Court's decision in *Concepcion*.

Instead, Wachovia and Wells Fargo made a strategic litigation decision not to pursue enforcement of their arbitration agreements in accordance with this Court's Orders prior to engaging in full blown litigation.  *See* Declaration of E. Adam Webb, ¶¶ 4-7 (describing history of Wachovia policy not to enforce arbitration in class action cases) (attached hereto as Exhibit H).  This strategy is obvious even in the MDL, where attorneys for SunTrust timely moved to compel arbitration but, *when the same attorneys represented Wachovia during the same time period, they failed to do so even in identical circumstances*.  *Id.* at ¶¶ 4-5, 8.  The fact that Wells Fargo made a strategic litigation decision not to seek arbitration in this MDL is underscored by the fact that in *Dolores Gutierrez v. Wells Fargo Bank, N.A.*, Case No. 3:08-cv-05739-WHA (N.D. Cal.), Wells Fargo moved to compel arbitration prior to the transfer of that case to this MDL, and then consciously decided not to re-assert arbitration following transfer.  *See, e.g.*, Wells Fargo's Motion to Compel (DE # 89 in Case No. 3:08-cv-05739-WHA (N.D. Cal.)).  Moreover, as this Court is aware, Wells Fargo's conscious decision not to arbitrate is also highlighted by its conduct in *Gutierrez v. Wells Fargo Bank, N.A.*, Case No. 07-05923-WHA

17

(N.D. Cal.), where the bank litigated substantially identical claims to those at issue in this litigation all the way through trial, for over three years, without ever moving to compel arbitration. Wells Fargo apparently had a change of strategy following entry of the $203 million judgment against it in that case. As evidenced by the other arbitration motions filed in this Court, seeking to enforce their arbitration clauses was openly available to Defendants, but they consciously chose not to pursue that option at their own peril. *Concepcion* does not excuse this calculated strategy.

Such a conclusion is supported by the Eighth Circuit's decision in *Southeastern Stud & Components, Inc. v. American Eagle Design*, 588 F.3d 963 (8th Cir. 2009). There, the defendant asserted that at the time the complaint was filed, it did not have the right to arbitrate because Arkansas law required mutuality of obligation both within the contract's arbitration agreement and all other provisions of the contract. *Id.* at 967 (citing *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361, 367 (2000)). Defendant further argued that it was not until the decision in *Enderlin v. XM Satellite Radio Holdings, Inc.*, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008), which found that requiring mutuality within the arbitration paragraph itself is preempted by the Federal Arbitration Act, that it had the legal right to compel arbitration. *Southeastern Stud*, 588 F.3d at 967. The Eighth Circuit rejected this argument with reasoning that is quite applicable here. The Court noted:

> [A]s early as 1984 the Supreme Court held that the Federal Arbitration Act (FAA) "preempts a state law that withdraws the power to enforce arbitration agreements." *Southland Corp. v. Keating*, 465 U.S. 1, 16 n. 10, 104 S. Ct. 852, 79 L.Ed.2d 1 (1984). Over a decade later, the Court again explained that "[c]ourts may not . . . invalidate arbitration agreements under state laws applicable only to arbitration provisions . . . . Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts.' " *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 134 L. Ed. 2d 902 (1996) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)) (internal citations omitted). Thus, pursuant to Supreme Court precedent, it should have been clear to [defendant] that the arbitration agreement was at least arguably enforceable because Arkansas could not have imposed additional requirements that applied only to arbitration agreements. Moreover, in 2003, five years before *Enderlin*, the United States District Court for the Western District of Arkansas stated that, "mutuality of obligation is not required for arbitration clauses so long as the contract as a whole is supported by consideration." *Scherrey v. A.G. Edwards & Sons, Inc.*, No. 02-2286, 2003 U.S. Dist. LEXIS 11010, at *10 (W.D.Ark. Apr. 15, 2003) (unpublished).

18

> Thus, in spite of [defendant's] assertions, *Enderlin* did not make new law; it merely correctly applied existing law.

*Id.* Under the logic applied in *Southeastern Stud*, it should have been clear to Wells Fargo and Wachovia that their arbitration agreements were at least arguably enforceable under the law of the states where the named Plaintiffs reside. Defendants should have argued, just as other banks did before this Court – sometimes successfully – that their agreements were enforceable under applicable state law. Wachovia and Wells Fargo chose not to do so for strategic litigation purposes. Therefore, *Concepcion* and *Benoay* provide Defendants no refuge from their prior inaction.

A cursory review of the law of the states where many of the named Plaintiffs in this matter reside reveals that a motion to compel arbitration would *not* have been futile because case law existed upon which Defendants could have based a non-futile motion to arbitrate. *E.g.*, *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135-37 (11th Cir. 2010) (summarizing the uncertainty that exists under Florida law and certifying question to Florida Supreme Court); *Honig v. Comcast of Ga. I, LLC*, 537 F. Supp. 2d 1277, 1286-87 (N.D. Ga. 2008) (finding arbitration agreement with class action waiver enforceable under Georgia law); *Delta Funding Corp. v. Harris*, 912 A.2d 104, 115-16 (N.J. 2006) (upholding arbitration agreement that contained class action waiver under New Jersey law); *Motsinger v. Lithia Rose-FT, Inc.*, 156 P.3d 156 (Or. Ct. App. 2007) (upholding arbitration agreement under Oregon law); *Fat Butter, Ltd. v. BBVA USA Bancshares, Inc.*, Case No. 4:09-cv-03053 (S.D. Tex. Apr. 29, 2010) (granting motion to compel arbitration under Texas law in overdraft fee case); *March v. Tysinger Motor Co., Inc.*, 2007 WL 4358339, at *4 (E.D. Va. Dec. 12, 2007). Thus, Defendants' suggestion that moving to compel arbitration prior to *Concepcion* was futile is without merit. Defendants made a decision not to move, but futility played no part in that decision.

This reality is further confirmed by the fact that numerous co-defendants in this MDL filed motions to compel arbitration – *prior* to *Concepcion* – under the laws of the very same jurisdictions where many of the Plaintiffs in the actions brought against Defendants reside. *E.g.*, *Anderson v. Compass Bank*, Case No. 1:11-cv-20436-JLK (S.D. Fla.) (Florida law); *Gordon v. Branch Banking & Trust Co.*, Case No. 1:09-cv-23067-JLK (S.D. Fla.) (Georgia law); *Hough v. Regions Fin. Corp.*, Case No. 1:10-cv-20476-JLK (S.D. Fla.) (Georgia law); *Buffington, et al. v. SunTrust Banks, Inc.*, Case No. 1:09-cv-23632-JLK (S.D. Fla.) (Georgia law); *Johnson v.*

*KeyBank Nat'l Ass'n*, Case No. 1:10-cv-21176-JLK (S.D. Fla.) (Washington law); *Larsen v. JPMorgan Chase Bank, N.A.*, Case No. 1:09-cv-23127-JLK (S.D. Fla.) (Washington law); *Williams v. JPMorgan Chase Bank, N.A.*, Case No. 1:09-cv-23432-JLK (S.D. Fla.) (California law); Decl. of E. A. Webb, ¶ 8. Counsel for Wells Fargo and Wachovia would have this Court believe that their defense bar brethren have been inundating the Court with frivolous and futile motions to compel arbitration from the outset of this matter. This absurd notion is further disproved by the Eleventh Circuit ruling in *Gordon v. BB&T*, that the bank's appeal of this Court's finding of unconscionability was non-frivolous under the standard established in *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004). *See* Mar. 17, 2010 Order in *Gordon v. Branch Banking & Trust Co.*, No. 09-15399-AA (11th Cir.) (Exh. A to **DE # 491**).

The fact that other bank defendants moved to compel arbitration in this MDL *prior to Concepcion* demonstrates that it was not futile for Wells Fargo and Wachovia to do likewise prior to the decision. In reality, the other banks made a conscious litigation decision to seek to enforce their arbitration provisions under applicable state law, just as Wachovia and Wells Fargo made a strategic and conscious litigation decision not to seek arbitration at a time when they could have done so. In fact, Wachovia's conduct in numerous other consumer class action cases illustrates that it was Wachovia's standard practice ***not*** to seek to compel arbitration. *See* Decl. of E. A. Webb, ¶¶ 4-9. Defendants suggestion to the contrary at this juncture is patently disingenuous.

In sum, *Benoay* does not apply to situations like this, where a party's arbitration agreements have been arguably enforceable from the outset, but the party made a conscious litigation decision not to pursue arbitration. Thus, Defendants' reliance on *Benoay* is misplaced.

**C.      Defendants misapprehend the arbitration paradigm.**

Unless a corporation reaches out to a plaintiff to seek to compel arbitration, it has no basis to argue that seeking to compel arbitration was futile. Defendants conveniently overlook a condition precedent to seeking to compel arbitration – notifying the named Plaintiffs. Here, prior to April 27, 2011, Defendants never notified Plaintiffs that they sought to arbitrate. *E.g.*, Declaration of Karen & Edward Wickman, ¶ 9 (attached hereto as Exhibit I); Declaration of William Rucker, ¶ 9 (attached hereto as Exhibit J). They are well aware of how to do so. *See* Notices of Intent to Arbitrate (delivered by banks after *Concepcion*) (attached hereto as Exhibit K). Had Defendants previously demanded arbitration, Plaintiffs might have responded that they

20

believed the arbitration provisions were unconscionable or Plaintiffs – before spending thousands of hours on the case – might have accepted arbitration.  Even in states where arbitration might not be enforced by the courts. *it is certainly up to the customer to raise such an argument*.  If a customer rejected arbitration, Defendants could have reviewed the law of the various states and determined if moving to compel arbitration was futile.

This situation is identical to the circumstances described in the Middle District of Florida's decision in *Krinsk v. SunTrust Bank*, 2010 WL 1177324, * 4 (M.D. Fla. Mar. 25, 2010), where the bank never suggested arbitration and then, nine months into the litigation, moved to compel arbitration.  Just as here, the bank failed to even request arbitration at the inception of the dispute:

> Finally, Plaintiff reasonably and understandably relied to her detriment on Sun Trust's conduct in the ordinary course of litigating her claims and seeking class certification as if the case was going to be tried. As noted, Plaintiff's home equity loan agreement did not provide for mandatory arbitration. Rather, claims were subject to arbitration upon a party's "election." Therefore, in contrast to clauses which provide notice that arbitration is mandatory, Plaintiff had no notice that her claims were subject to arbitration until SunTrust's belated election to arbitrate. Indeed, until then, SunTrust had expressly rejected binding arbitration. SunTrust's right to elect arbitration accrued at least as early as the filing of the complaint. A timely election to arbitrate would have rendered unnecessary most if not all of the motion practice and discovery conducted by Plaintiff in this case.

*Id.* at *4-5.  It is far too late to do so now.  Here, Defendants never asked to arbitrate prior to April 27, 2011.  Defendants' form agreements do not purport to establish a mandatory arbitration system.  Wach. Deposit Agr., p. 12, ¶ 25 (specifically describing how parties need not arbitrate); Wells Account Agr., p. 5 ("Either you or the Bank may require the submission of a dispute to binding arbitration . . .").  Therefore, they cannot argue futility.  This is a very elementary but a critical point:  No party can argue that seeking arbitration was futile if it did not first present the idea to their opponent.

### D.    Plaintiffs' claims are exempt from arbitration under Wells Fargo's Account Agreement.

Wells Fargo's Account Agreement states that a "dispute" between the bank and its customers "*may*" be arbitrated if either party so demands.  *See* Account Agreement, p. 5. However, the language of the agreement contains an exception from this requirement that is very important in this context.  It specifically provides that "[a] dispute does ***not*** include a claim that

21

*may* be filed in small claims court." *Id.*   The claims filed by the named Plaintiffs in this case against Wells Fargo do not constitute a dispute that is mandatorily subject to arbitration because they could have been, but were not required to be, filed in small claims court.

Under the laws of California, Oregon, Washington and New Mexico, where the named Plaintiffs opened their accounts and/or reside, each case before this Court *may* have been filed in small claims court given the amount in controversy.   For example, in both California and Oregon, a party may file an action in small claims court for an amount up to $7,500.  *See* Cal. Civ. P. Code § 116.221; Or. Rev. Stat. § 46.425.   In Washington, a plaintiff can bring claims of up to $5,000 in value in small claims court.  *E.g.*, Wash. Rev. Code § 12.40.010.   In New Mexico, small claims courts have jurisdiction to hear claims up to $10,000 in value.  *E.g.*, N.M. Stat. Ann. § 34-8A-3.   As shown in the recent class certification filing, each named Plaintiff's total claim against Wells Fargo is far below these statutory thresholds.  *See* Declaration of A. Olsen, ¶ 45, Appendix IV to Plaintiffs' Motion for Class Certification filed April 25, 2011.

The express exception carved out in the Wells Fargo Account Agreement (an agreement drafted by, and construed against, Wells Fargo) for small value disputes – and in light of the fact that the agreement *does not require* that small value claims be brought in small claims court – coupled with the fact that Wells Fargo's agreement requires that each party bear the expense of their own attorneys' experts' and witness' fees, demonstrates that Wells Fargo only intended for large claims to be subject to the arbitration provision.  Any other result would make the pursuit of small value claims futile, which would immunize Wells Fargo from its wrongdoing. Accordingly, since Plaintiffs' claims are not a "dispute" as plainly defined under the Account Agreement, arbitration cannot be enforced.   Therefore, Wells Fargo's attempt to compel arbitration of these small value claims must be rejected.

> **E.     Defendants' arbitration clauses are unconscionable.**

While Plaintiffs contend that limited arbitration-related discovery is critical in order to adequately refute Defendants' Arbitration Motion at this juncture, in an abundance of caution, Plaintiffs respond to Defendants' truncated argument that the arbitration agreements at issue are enforceable under applicable state law.  In so doing, Plaintiffs urge the Court to allow them to supplement this opposition with evidentiary support once arbitration-related discovery has been completed.

1.      **The arbitration provisions within Wachovia's Deposit Agreement are unconscionable.**

Formatted: Indent: Left: 72 pt, Hanging: 36 pt

The circumstances under which Wachovia imposed its Deposit Agreement on customers, and the unreasonable and one-sided nature of the arbitration clause, support a finding of unconscionability under the applicable state laws.  Wachovia's Deposit Agreement is presented to its customers on a take-it-or-leave-it basis and is an adhesive contract.  *See* Declaration of Frances K. Pinckney, ¶¶ 6-7 (attached hereto as Exhibit L); Declaration of Celia Spears-Haymond, ¶¶ 6-7 (attached hereto as Exhibit M); Declaration of Murlee Damor, ¶¶ 6-7 (attached hereto as Exhibit N); Declaration of Anthony Poulin, ¶¶ 7-8 (attached hereto as Exhibit O).  As this Court previously recognized, the disparity between the bargaining power of a bank and its customers is vast.  Furthermore, Wachovia did not bring special attention to its arbitration provision in any way when its customers began their relationship with the bank.  Decl. of F. K. Pinckney, ¶ 5 (noting that signature card Ms. Pinckney signed when opening account did not mention arbitration); Decl. of M. Damor, ¶ 5; Decl. of C. Spears-Haymond, ¶ 5; Decl. of A. Poulin, ¶ 5.  The Deposit Agreement itself did not call specific attention to the arbitration agreement.  Decl. of F. K. Pinckney, ¶ 8; Decl. of M. Damor, ¶ 8; Decl. of C. Spears-Haymond, ¶ 8; Decl. of A. Poulin, ¶ 9.  Instead, the arbitration provision was buried on page 12 of an 18-page agreement that consisted of small print written in a legalistic fashion that was not readily understandable by customers.  *See* Decl. of F. K. Pinckney, ¶¶ 9-11; *also* Deposit Agr., p. 12, Decl. of M. Damor, ¶ 9; Decl. of A. Poulin, ¶ 11.  The arbitration language was not bolded or conspicuous, and in actuality was de-emphasized based on the fact that the agreement only highlighted the waiver of the right to a jury trial and the lack of class mechanism, not that a customer must arbitrate.  Decl. of F. K. Pinckney, ¶ 11; Deposit Agr., p. 12.

Substantively, Wachovia's arbitration clause is exceedingly unreasonable and unfair to its customers and places all the risk on the customer as well.  For example, the arbitration provision provides that each party will pay their own costs and does not contain any provision or language that establishes that a customer's fees are capped at a certain level or that the bank has agreed to pay all fees above a certain threshold.  *See* Deposit Agr., p. 12.  Moreover, while the agreement purports to establish that each side is responsible for its own attorneys' fees, other portions of the agreement make it clear that this is not the case.  For example, paragraph 26 of the agreement provides that "[y]ou agree to reimburse us for any loss, costs or expenses, including without

23

limitation, reasonable attorneys' fees and the costs of litigation to the extent permitted by law, that we incur as a result of any dispute involving your account."[4]  This paragraph also gives the bank the authority to "deduct such loss, costs, and expenses from your account(s) with us without prior notice to you."  *Id.*  This is repeated in paragraph 29:

> You agree to reimburse us for our costs and expenses (including attorney's fees) incurred in any action that we bring against you concerning your account and in any lawsuit instituted by you against us where we are the prevailing party . . . . We may charge any account of yours for such costs and expenses without prior notice to you.

*Id.* at p. 13.  Based on the rules of the American Arbitration Association, which allows the award of legal fees when mentioned in the relevant contract – *see* AAA Rule R-43(d)(ii)[5] – customers are subject to ruinous fees whenever they arbitrate against the bank.  Wachovia's agreement also purports to limit the amount of damages a customer can recover via arbitration in paragraph 28 of the agreement.  *Id.*  Such burdensome provisions are troubling for Wachovia customers.  *E.g.*, Decl. of F. K. Pinckney, ¶ 13; Decl. of M. Damor, ¶ 13; Decl. of C. Spears-Haymond, ¶ 13; Decl. of A. Poulin, ¶ 14.   Each of the aforementioned factors supports a finding of unconscionability under applicable state law.

Finally, a customer's inability to economically and effectively achieve a vindication of their rights under Wachovia's arbitration provision is an independent basis for finding substantive unconscionability.  *See* Section III, F *infra*.

**a.    Wachovia's arbitration clause is unconscionable under Florida law.**

Under Florida law, the arbitration clause in Wachovia's Deposit Agreement should be deemed unconscionable.  While the question of whether a party must show both procedural and substantive unconscionability in order to invalidate an agreement is unsettled under Florida law,

---

[4] The onerous nature of the Wachovia arbitration clause stands in stark contrast to the arbitration clause at issue in *Concepcion*.  In *Concepcion*, the arbitration clause, besides affording customers inexpensive and convenient access to arbitration, provided special incentives to pursue claims through individual arbitration.  These special incentives included a "premium" payment of $7,500 if the arbitrator awards the consumer more than AT&T's last written settlement offer made before selection of the arbitrator, double attorneys' fees and a disclaimer of attorneys' fees payable to AT&T.  *See Laster v. AT&T Mobility*, 584 F.3d 849, 852, 856 n.10 (9th Cir. 2009).  The consumer friendly nature of the AT&T arbitration agreement clearly played a significant role in the Supreme Court's decision in *Concepcion*.  2011 WL 1561956, at *13.

[5] *Available at* http://www.adr.org/sp.asp?id=22440#R50 (last visited May 16, 2011).

for the purposes of this motion, the answer to this question is immaterial, as Wachovia's arbitration clause is both procedurally and substantively unconscionable.

The lynchpin of procedural unconscionability is the absence of meaningful choice. *See Pendergrast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010) (*citing Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999)).   To determine whether a contract is procedurally unconscionable under Florida law, courts look to: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Id.*  Here, these factors clearly demonstrate that the all versions of the Wachovia arbitration provision are procedurally unconscionable.   As the Court noted in *Powertel*, an arbitration clause in procedurally unconscionable where "[t]he customers did not bargain for the arbitration clause, nor did they have the power to reject it.  One of the hallmarks of procedural unconscionability is the absence of any meaningful choice on the part of the consumer."  743 So. 2d at 575

Wachovia's arbitration clause is also substantively unconscionable under Florida law. Substantive unconscionability "focuses on the terms of the agreement itself and whether the terms of the contract are unreasonable and unfair." *Pendergrast*, 592 F.3d at 1139 (internal quotations omitted).  If "no man in his senses" would make the agreement – and "no honest and fair man would accept" it, substantive unconscionability exists.  *Id.*; McKenzie v. Betts, 55 So. 3d 615, 622-28 (Fla. 4th DCA 2011); *S.D.S. Autos, Inc. v. Chrzanowski*, 976 So.2d 600 (Fla. 1st DCA 2008); *also Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1366 (S.D. Fla. 2009); *Williams v. MetroPCS Wireless, Inc.*, 2010 WL 62605 (S.D. Fla. Jan. 5, 2010) (refusing to compel arbitration); *Holt v. O'Brien Imports of Ft. Myers, Inc.*, 862 So.2d 87 (Fla. 2nd DCA 2003) (refusing to compel arbitration).  Wachovia's arbitration clause is unconscionable.

**b.    Wachovia's arbitration clause is unconscionable under Georgia law.**

Under Georgia law, an agreement can be invalidated based on substantive unconscionability alone.  *Dale v. Comcast Corp.*, 498 F.3d 1216, 1220, n.5 (11th Cir. 2007). However, Georgia courts recognize both substantive and procedural unconscionability.  *NEC Technologies, Inc. v. Nelson*, 478 S.E.2d 769, 771 (Ga. 1996).

25

Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves. *Id.* As the Georgia Supreme Court noted in *NEC Technologies*, "[a] non-inclusive list of some factors courts have considered in determining whether a contract is procedurally unconscionable includes the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." *Id.* at 771-72 (citing *Fotomat Corp. of Fla. v. Chanda*, 464 So.2d 626, 629 (Fla. 5th DCA 1985)). As to the substantive element of unconscionability, courts focus on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns. *NEC*, 478 S.E.2d at 772.

Applying Georgia precedent to the factors in Wachovia's arbitration clause outlined above, it is clear that Wachovia's arbitration clause is procedurally and substantively unconscionable under Georgia law. As established by Ms. Pinckney's declaration, Wachovia's arbitration clause is neither conspicuous nor comprehensible, customers have no bargaining power with respect to the arbitration agreement, and arbitration comes as part of an agreement that is presented on a take-it-or-leave-it in nature. *See* Decl. of F. K. Pinckney, ¶¶ 6-10. Moreover, substantively, the agreement is unconscionable given the allocation of risks between Wachovia and its customers and the commercial unreasonableness of Wachovia's agreement.

### c.    Wachovia's arbitration clause is unconscionable under Texas law.

As the Texas Court of Appeals noted in *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 602-03 (Tex. App.–Texarkana 2008), "[u]nconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." (citing *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002)). When evaluating the validity of an arbitration provision, courts may consider both procedural and substantive unconscionability. *Id.* A party must show both procedural and substantive unconscionability. *Id.* "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).

As described above, the circumstances surrounding the imposition of the arbitration provision here, support a finding of procedural unconscionability. Likewise, the relative unfairness of the Wachovia arbitration clause supports a finding of substantive unconscionability under Texas law.

### d.      Wachovia's arbitration clause is unconscionable under New Jersey law.

As the Court noted in *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006), "[t]he defense of unconscionability, specifically, calls for a fact-sensitive analysis in each case, even when a contract of adhesion is involved." New Jersey courts have recognized that contracts of adhesion necessarily involve indicia of procedural unconscionability. *Id.* There are four factors that New Jersey courts have found are deserving of attention when asked to declare a contract of adhesion unenforceable. *E.g.*, *Rudbart v. North Jersey Dist. Water Supply Comm'n*, 127 N.J. 344, 356, 605 A.2d 681 (1992). In addition to looking at the take-it-or-leave-it nature or the standardized form of the document, New Jersey courts evaluate (1) the subject matter of the contract, (2) the parties' relative bargaining positions, (3) the degree of economic compulsion motivating the "adhering" party, and (4) the public interests affected by the contract. *Delta Funding*, 912 A.2d at 111.

As the Court in *Delta Funding* noted, "The Rudbart factors focus on the procedural and substantive aspects of a contract of adhesion in order to determine whether the contract is so oppressive . . . or inconsistent with the vindication of public policy . . . that it would be unconscionable to permit its enforcement." *Id.* (citations ommitted). New Jersey courts have generally applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability. *See Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 565-66, 800 A.2d 915 (Ch. Div. 2002).

Applying these factors here, as demonstrated above, it is clear that Wachovia's Deposit Agreement is procedurally and substantively unconscionable.

### e.      Wachovia's arbitration clause is unconscionable under California law.

The test for unconscionability under California law, was summarized recently in *Htay Htay Chin v. Advanced Fresh Concepts Franchise Corp.*, __ Cal.Rptr.3d ___, 2011 WL 1496512 (Cal. Ct. App. 2 Dist. 2011), as follows:

> The judicially created doctrine of unconscionability . . . has both a procedural and a substantive element. They are applied on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is

27

required to come to the conclusion that the term is unenforceable, and vice versa.". . . The procedural element focuses on the contracting parties' unequal bargaining power and on the weaker party's lack of notice of hidden or oppressive terms; the substantive element focuses on the actual presence of one-sided or oppressive terms.  An adhesion contract is indicative of procedural unconscionability because it is a standardized contract drafted by the party with greater bargaining power and offered to the weaker party on a take-it-or-leave-it basis.  Such a contract will not be enforced if its provisions are not within the reasonable expectations of the weaker party or if they are oppressive.

*Id.* at *3.  To be voided based on unconscionability, the agreement must be procedurally and substantively unconscionable.  *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 123 Cal.Rptr.3d 1 (2011).  However, "the two elements need not exist to the same degree. The more one is present, the less the other is required."  *Id.*

Applying California's procedural unconscionability factors here, it is clear that the arbitration provision is procedurally and substantively unconscionable.  The fact that Wachovia's arbitration agreement was presented to its customers on a take-it-or-leave-it basis, with no opportunity to opt out, results in a finding of "quintessential procedural unconscionability" under California law.  *E.g., Aral v. EarthLink, Inc.*, 36 Cal. Rptr. 3d 229, 238 (Cal. App. 2 Dist. 2005).

### f.    Wachovia's arbitration clause is unconscionable under Virginia law.

Under Virginia law, unconscionability is concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including the relationship and duties between the parties.  *March v. Tysinger Motor Co., Inc.*, 2007 WL 4358339, at *4 (E.D. Va. Dec. 12, 2007).  A party may be free of fraud but guilty of overreaching or oppressive conduct in securing an agreement which is so patently unfair that courts of equity may refuse to enforce one.  *Id.*; *also Derby v. Derby*, 378 S.E.2d 74, 78 (Va. Ct. App. 1989).  While an egregiously unfair contract is unconscionable, a contract may also be unconscionable by virtue of the way it was formed.  *March*, 2007 WL 4358339, at *4.  Accordingly, a contract of adhesion may be unconscionable.  *See Philyaw v. Platinum Enters., Inc.*, 2001 WL 112107, *3 (Va. Cir. Ct. Jan. 9, 2001).  A contract is unconscionable if it is "one that no man in his senses and not under a delusion would make, on the one hand, and [that] no fair man would accept, on the other."  *Management Enters., Inc. v. Thorncroft Co.*, 416 S.E.2d 229, 231 (Va. 1992).  While other courts refer to aspects of unconscionability as "substantive" and "procedural," Virginia courts have not adopted that distinction.  *March*, 2007 WL 4358339, at *4 n.5.

28

Applying these factors, this Court should find that the Wachovia arbitration clause is unconscionable.  It is clear the Wachovia's agreement is part of an adhesion contract that was presented to customers on a take-it-or-leave-it basis, with no opportunity for bargaining. Moreover, given that at best a customer is likely to pay more in arbitrator's fees in order to pursue this matter than he or she lost in overdraft fees to begin with, the arbitration provision is not something a fair man or woman would accept.  Moreover, the potential exposure of a customer by having to pay Wachovia's costs and fees emphasizes that no Wachovia customer in his or her right mind would truly accept such a provision if the arbitration clause was brought to the customer's attention.  Therefore, Wachovia's arbitration clause should be found unconscionable under Virginia law.

**2.    The arbitration provisions within Wells Fargo's Account Agreement are unconscionable.**

As was the case with Wachovia, the facts and circumstances through which Wells Fargo imposed its Account Agreement, along with the unreasonableness and one-sided nature of the arbitration clause, supports a finding of unconscionability under the applicable state laws.  Wells Fargo's Account Agreement was presented to its customers on a take-it-or-leave-it basis and was undoubtedly an adhesive contract.  *See* Decl. of K. & E. Wickman, ¶ 4; Decl. of W. Rucker, ¶¶ 4-5.  Moreover, as this Court has recognized previously, the disparity between the relative bargaining power of a bank like Wells Fargo and its customers is vast.  Furthermore, Wells Fargo did not call special attention to its arbitration provision but, instead, buried the section within its 80-page agreement printed in tiny font.  *See* Account Agreement, p. 4; Decl. of K. & E. Wickman, ¶¶ 5-6; Decl. of W. Rucker, ¶ 6.  Moreover, given the necessity of a checking account, Plaintiffs do not have any meaningful choice to avoid long and detailed bank agreements which they could not practically read or understand.  Furthermore, the experience of named Plaintiff Alex Zankich demonstrates that Wells Fargo avoided or otherwise refused to provide its customers with a copy of the Account Agreement prior to the opening of an account.  *See* March 18, 2011 Depo. of A. Zankich, pp. 157-59 (attached hereto as Exhibit P).

In November 2008, Mr. Zankich went in to a Wells Fargo branch to inquire about a missing deposit and to remove a joint account-holder from his account.  Mr. Zankich recorded the conversation in order to document the conversation about the missing deposit.  Wells Fargo employees informed Mr. Zankich that it would be better to open a new account.  During the

29

process of opening an account, Mr. Zankich specifically inquired about obtaining a copy of the Account Agreement. *Id.* at 158. Wells Fargo told Mr. Zankich the bank was trying to be "green" and refused to provide him with a copy of the Account Agreement and its arbitration clause prior to his opening of the account. *Id.* at 158-59. Mr. Zankich did ***not*** sign a signature card but, rather, signed an electronic keypad that did ***not*** contain any of the language or disclosures that Wells Fargo subsequently attached to his signature card. *Id.* at 358-59. Thus, Wells Fargo duped its customers into acknowledging receipt of the arbitration agreement by having them sign an electronic pad that the bank later affixed to the acknowledgement language. Mr. Zankich's experience was not unique. A former Wells Fargo banker has confirmed that, in her experience, "the vast majority of customers who opened new accounts did not receive a consumer account agreement." Declaration of Melissa Lopez ¶¶ 5-7. (attached hereto as Exhibit Q). Clearly Wells Fargo's conduct by which it obtains a customers' "agreement" to be bound by arbitration is procedurally unconscionable.

Substantively, the terms within Wells Fargo's arbitration agreement unfairly favor the bank and are overly harsh to customers. For example, the arbitration agreement explicitly provides that customers – like the named Plaintiffs here – who do not agree to be subject to the arbitration requirement, are responsible for all of Wells Fargo's costs and expenses, including attorney's fees, incurred by the bank regardless of whether or not the bank were to prevail in arbitration. *See* Account Agreement, p. 5. Such a requirement is particularly egregious here in light of the fact that Wells Fargo waived its right to seek arbitration for almost two years. *See* Decl. of W. Rucker, ¶¶ 9-11. Just like the Wachovia arbitration language, the Wells Fargo also fails to establish that a customer's fees are capped at a certain level or that the bank has agreed to pay all fees above a certain threshold. *See* Account Agreement, p. 6.

Wells Fargo's arbitration agreement also allows the bank to exercise certain legal rights against its customers without being subject to arbitration. *Id.* Under the heading "**Rights Preserved**" the arbitration agreement provides as follows:

> The Arbitration Agreement and the exercise of any of the rights you and the Bank have under this Arbitration Agreement do not stop you or the Bank from exercising any lawful rights to use other remedies available to preserve, foreclose, or obtain possession of real or personal property; exercise self-help remedies, including setoff and repossession rights; or obtain provisional or ancillary remedies such as injunctive relief, attachment, garnishment, or court appointment of a receiver by a court having jurisdiction.

*Id.*   While this provision would seem to provide benefit to both the bank and the customer, in reality, the majority of the remedies exempt from the arbitration language are remedies that only a bank would utilize such as foreclosure of real or personal property, repossession, and garnishment of wages.  Of course, a customer would not be in any position to enjoy any of these legal remedies against Wells Fargo.  Thus, this provision is clearly one-sided in the bank's favor.

The one-sided nature of the arbitration agreement can also be seen through the confidentiality provision of the agreement.  With respect to this issue, the agreement provides, "parties must not disclose the existence, content, or results of the arbitration, except for disclosures of information required in the ordinary course of business or permitted by the laws governing your Account."  *See* Account Agreement, p. 6.  This provision, though facially neutral, disproportionately favors Wells Fargo as a repeat participant in the arbitration process.  It ensures that Wells Fargo will accumulate a wealth of knowledge about arbitrators, legal issues and tactics, while preventing consumers from sharing discovery, fact patterns, or even work product to assist in their endeavor against a multi-billion dollar financial institution.

Finally, a customer's inability to economically and effectively achieve a vindication of their rights under Wells Fargo's arbitration provision is an independent basis for finding substantive unconscionability.  *See* Section III, F *infra*.

In sum, each of the aforementioned factors supports a finding of substantive unconscionability under applicable state law as well.

      **a.   Wells Fargo's arbitration clause is unconscionable under Oregon law.**

As the Oregon Court of Appeals noted in *Livingston v. Metropolitan Pediatrics, LLC*, 227 P.3d 796, 806  (Or. Ct. App. 2010), the test for unconscionability has both procedural and substantive components.  Procedural unconscionability refers to the conditions of contract formation and involves a focus on two factors: oppression and surprise.  *Id.*  (citing *Vasquez-Lopez v. Beneficial Ore., Inc.*, 152 P.3d 940, 948-49 (Or. Ct. App. 2007)).  Oppression exists when there is inequality in bargaining power between the parties, resulting in no real opportunity to negotiate the terms of the contract and the absence of meaningful choice.  *Livingston*, 227 P.3d at 806.  Surprise involves the question whether the allegedly unconscionable terms were hidden from the party seeking to avoid them.  *Id.*

31

Substantive unconscionability generally refers to the terms of the contract, rather than the circumstances of formation, and the inquiry focuses on whether the substantive terms unfairly favor the party with greater bargaining power.  *Id.*  In *Carey v. Lincoln Loan Co.*, 203 Or.App. 399, 422-23, 125 P.3d 814 (2005), Oregon's formulation of unconscionability and the interplay of the procedural and substantive components was summarized as follows:

> The primary focus . . . appears to be relatively clear: Substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue.

Under Oregon law, it is clear that Wells Fargo's arbitration clause is unconscionable.  For example, the confidentiality provision within Wells Fargo's agreement runs afoul of the district court's holding in *Torrance v. Aames Funding Corp.*, 242 F. Supp. 2d 862, 865 (D. Or. 2002). Likewise, Wells Fargo's requirement that customers pay their portion of the arbitration fees is also problematic under Oregon law.  *Id.*  Therefore, Wells Fargo's request for a stay in favor of arbitration should be denied.

**b.    Wells Fargo's arbitration clause is unconscionable under New Mexico law.**

Under New Mexico law, unconscionability is an equitable doctrine that allows courts to invalidate contracts that are unreasonably favorable to one party.  *Rivera v. American Gen'l Fin. Servs., Inc.*, 242 P.3d 351, 354-55 (N.M. Ct. App. 2010).  When evaluating whether to apply the doctrine, courts can analyze contracts from both a substantive and a procedural perspective. *Fiser v. Dell Computer Corp.*, 188 P.3d 1215, 1221 (N.M. 2008).  Although the presence of both forms of unconscionability increases the likelihood of a court invalidating the agreement, there is no strict requirement that both forms must be present.  *Rivera*, 242 P.3d at 355.  Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair.  *Fiser*, 188 P.3d at 1221 (citing *Padilla v. State Farm Mut. Auto. Ins. Co.*, 68 P.3d 901, (N.M. 2003)); *Guthmann v. La Vida Llena*, 709 P.2d 675, 679 (N.M. 1985). Procedural unconscionability is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the relative bargaining power of the parties.  *Fiser*, 188 P.3d at 1221.

32

Applying the facts and circumstances outlined above, it is clear that Wells Fargo's arbitration agreement is both substantively and procedurally unconscionable under New Mexico law. *E.g., Cordova v. World Finance Corp. of N.M.*, 208 P.3d 901, 908-10 (N.M. 2009).

> **c.   Wells Fargo's arbitration clause is unconscionable under Washington law.**

As the Washington Supreme Court noted in *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 231-33 (Wash. 2009), "[w]hether an agreement is unconscionable is a question of law for the courts."  Washington law recognizes both procedural unconscionability and substantive unconscionability.  "Procedural unconscionability is the lack of meaningful choice, considering all the circumstances surrounding the transaction including [t]he manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract, and whether the important terms [were] hidden in a maze of fine print."  *Id.* (internal quotations and citations omitted).  "[T]he key inquiry for finding procedural unconscionability is whether [a party] lacked meaningful choice."  *Id.*  Part of the analysis under Washington law is also determining whether the contract at issue is an adhesion contract, but looking at the following factors: (1) whether the contract is a standard form printed contract, (2) whether it was prepared by one party and submitted to the other on a "take it or leave it" basis, and (3) whether there was "no true equality of bargaining power" between the parties.  *Id.* at 232 n.26. "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh, while procedural unconscionability relates to impropriety during the process of forming a contract."  *Schroeder v. Fageol Motors, Inc*., 544 P.2d 20, 23 (Wash. 1975).

Substantive unconscionability under Washington law is clear under established precedent.  The confidentiality requirement, described above, was found problematic in *Luna v. Household Fin. Corp. III*, 236 F. Supp. 2d 1166, 1179 (W.D. Wash. 2002) (confidentiality provision in arbitration provision one-sided to defendant).  Such a provision ensures that Wells Fargo "will accumulate a wealth of knowledge about arbitrators, legal issues and tactics. Meanwhile, consumers are prevented from sharing discovery, fact patterns, or even work product, such as briefing, forcing them to reinvent the wheel in each and every claim, no matter how similar."  *McKee v. AT&T Corp*., 191 P.3d 845, 858 (Wash. 2008) (cite omitted) (finding confidentiality clause in arbitration provision substantively unconscionable).  Similarly, the fee-

33

splitting requirement is problematic under Washington law.  *E.g.*, *Luna*, 236 F. Supp. 2d at 1182; *Mendez v. Palm Harbor Homes, Inc.*, 45 P.3d 594, 605-05 (Wash. Ct. App. 2002).

Moreover, under the facts and circumstances here, it is clear that Wells Fargo's arbitration agreement is also procedurally unconscionable.  The standard form printed contract was presented to its customers – if at all – on a take-it-or-leave-it basis and there was no true equality of bargaining power between the parties.  Therefore, it is procedurally unconscionable under Washington law.  *E.g.*, *Satomi Owners*, 225 P.3d at 231-33.

**d.  Wells Fargo's arbitration clause is unconscionable under California law.**

The test for unconscionability under California law was discussed above as to Wachovia. Under California law, it is clear that Wells Fargo's arbitration agreement is both procedurally and substantively unconscionable.  The fact that Wells Fargo's arbitration clause is presented to its customers on a take-it-or-leave-it basis, with no meaningful opportunity to opt-out, requires a finding of "quintessential procedural unconscionability" under California law.  *E.g.*, *Aral v. EarthLink, Inc.*, 36 Cal. Rptr. 3d 229, 238 (Cal. App. 2 Dist. 2005).  As the Court noted in *Little v. Auto Stiegler, Inc.*, 63 P.3d 979, 984 (Cal. 2003), "[s]ubstantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.  One such form, as in *Armendariz*, is the arbitration agreement's lack of a 'modicum of bilaterality,' wherein the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration." (citing *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 6 P.3d 669. 691-92 (Cal. 2000)).  As shown above, Wells Fargo's arbitration agreement also lacks a "modicum of bilaterality" and is therefore unconscionable under California law.

**F.  Defendants' Arbitration Provisions are Unenforceable Because they Preclude Plaintiffs From Vindicating Their Rights.**

The Supreme Court has long held that a plaintiff may avoid arbitration if he can prove that he will be unable to vindicate his rights in arbitration.  *E.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985), *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), and *Green Tree Fin. Corp-Alabama v. Randolph*, 531 U.S. 79 (2000). These cases conform with the Supreme Court's recognition that under certain circumstances, the class action mechanism may provide the only vehicle through which plaintiffs with nominal value claims to vindicate their rights.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 616-17 (1997); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974); *Deposit Guar. Nat'l Bank v.*

34

*Roper*, 445 U.S. 326, 338 (1980).

In recognition of this principle, *Concepcion* made it clear that the plaintiffs would have been able to vindicate their rights in arbitration, even absent the class action mechanism. Specifically, the Supreme Court pointed to the Ninth Circuit's admission that "aggrieved customers who filed claims would be essentially guaranteed to be made whole." *Concepcion*, 2011 WL 1561956, at *13. It also highlighted the district court's finding that "the Concepcions were better off under the arbitration agreement with AT&T than they would have been as participants in the class action." *Id.* This finding was integral to the *Concepcion* holding because it harmonized the holding with the Court's previous decisions in *Mitsubishi Motors*, *Gilmer* and *Green Tree Fin. Corp.*, all of which held that a plaintiff may avoid arbitration if he can prove that he will be unable to vindicate his rights in arbitration.

This case is far different than *Concepcion*. No one - not even Defendants - can seriously argue that Plaintiffs will be able to vindicate their rights under the Chase arbitration agreement. *See* Gilbert Decl., ¶ 17. As the district court found in *Gutierrez v. Wells Fargo Bank, N.A.*, calculating damages in connection with the pursuit of overdraft claims like the ones brought by Plaintiffs here requires detailed work by an expert. 730 F. Supp. 2d 1080, 1138 (N.D. Ca. 2010).

Here, Plaintiffs have retained Mr. Olsen, the very same database engineer who testified in *Gutierrez*, to analyze and determine the damages sustained by Plaintiffs, and every other member of the class, as a result of Defendants' challenged overdraft practices and policies. The declarations of Mr. Olsen included in Appendix IV to Plaintiffs' Motions for Class Certification, filed under seal on April 25, 2011, make abundantly clear that the process of analyzing and determining the damages of Plaintiffs and every other class member, is a complex, but achievable, project which will require access to Defendants' data processing systems and historical transactional data. *See* Olson Declaration, pp. 13-19. Absent expertise in database engineering, and full access to Defendants' data processing systems and historical transactional data - which is highly unlikely in arbitration, where discovery is rarely allowed - it is inconceivable that Plaintiffs, or other *individual* customers of Defendants forced to proceed in arbitration, could realistically muster the resources to prove the claims brought in this case.

**IV.    Conclusion.**

Based on the foregoing, Plaintiffs respectfully urge this Court to deny the Arbitration Motion.

Dated: May 20, 2011.

Deleted: ¶
--------------------Page Break--------------------

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 3855830
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

36

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

37

<u>/s/ Ruben Honik</u>
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
<u>rhonik@golombhonik.com</u>
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
<u>kgrunfeld@golombhonik.com</u>
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

39