# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS

*Garcia, et al. v. Wachovia Bank, N.A.
and Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:08-cv-22463-JLK

*Spears-Haymond v. Wachovia Bank, N.A.
and Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-21680-JLK
N.D. Cal. Case No. 08-4610

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685-JLK
D. Or. Case No. 3:09-cv-01239-ST

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Zankich, et al. v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

**AMENDED DECLARATION OF ROBERT C. GILBERT**

My name is Robert C. Gilbert. I am over the age of eighteen and make this declaration based on personal knowledge. I submit this declaration in connection with Plaintiffs' Opposition to the Motion to Dismiss or, in the Alternative, to Stay in Favor of Arbitration (the "Arbitration Motion") filed by Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and Wachovia Bank, N.A.'s ("Wachovia") (collectively "Defendants"). [**DE # 1384**].

Since September 2, 2009, I have been the attorney responsible for coordinating the activities of Plaintiffs' counsel in this multidistrict litigation proceeding, including the above-captioned cases. [**DE # 52, 1128**]. As such, I have firsthand knowledge of the facts set forth herein.

1. Defendants have actively participated in this litigation for nearly two years. As such, Plaintiffs will be substantially prejudiced if Defendants' untimely Arbitration Motion is granted. Since the creation of this MDL, Defendants have engaged in extensive motion practice and discovery including, but not limited to, the following:

2. On December 22, 2009, Wachovia and Wells Fargo (joined by other first tranche defendants) filed the Omnibus Motion to Dismiss. [**DE # 217**]. Plaintiffs devoted substantial human and financial resources to researching the legal issues raised in the Omnibus Motion, and in preparing and filing their Opposition to the Omnibus Motion on February 5, 2010. [**DE # 265**]. Plaintiffs also devoted substantial time to preparing for and presenting oral argument on the Omnibus Motion on February 25, 2010. [**DE # 250**]. On March 11, 2010, the Court denied the Omnibus Motion to Dismiss in most respects. [**DE # 305**].

3. Wachovia served its initial disclosures on March 31, 2010, copies of which are attached as Composite Exhibit A. Wells Fargo also served its initial disclosures on March 31,

2010, copies of which are attached as Composite Exhibit B. Defendants' initial disclosures made no reference to any intention to demand arbitration of Plaintiffs' claims.

4. In April and early May 2010, I participated in extensive discussions with counsel for Wachovia and Wells Fargo, among others, regarding the proposed schedule for discovery and pretrial motions for the first tranche cases. Throughout these discussions, Defendants never disclosed any intention to demand arbitration of Plaintiffs' claims. Ultimately, the Court held a status conference on May 6, 2010 to address the scheduling order issues based on the parties' discussions and submissions, and entered the Order Establishing a Schedule for the Discovery, Motion Practice, Final Pretrial Conference, and Trial for Selected Cases on May 13, 2010. [**DE # 463**].

5. On April 12, 2010, Plaintiffs filed their amended complaints against Defendants pursuant to the Order Ruling on Omnibus Motion to Dismiss. [**DE # 352, 353, 354, 355**]. Wachovia filed its answers on May 21, 2010 [**DE # 503, 504**], and Wells Fargo filed its answers on June 4, 2010. [**DE # 548, 549**]. On November 18, 2008, prior to transfer of the *Zankich* action to this Court, Wells Fargo filed its answer to the operative complaint in that case.

6. On May 13, 2010, Plaintiffs served requests for production of documents, interrogatories, and requests for admission on Wachovia and Wells Fargo, to which Defendants responded on June 17, 2010. Copies of Defendants' responses to Plaintiffs' requests for production, interrogatories and requests for admissions are attached as Exhibits C, D and E, respectively. None of these discovery responses make any reference, nor contain any reservation, with respect to Defendants' intention to demand arbitration of Plaintiffs' claims. Defendants supplemented these discovery responses on several occasions later in 2010 and prior

to April 27, 2011, and never demanded arbitration of Plaintiffs' claims in their supplemental responses.

7.      On May 21, 2010, Wachovia served interrogatories and requests for production on each of the Plaintiffs, to which Plaintiffs timely responded. Copies of the interrogatories and requests for production served by Wachovia on each of the Plaintiffs are attached as Exhibits F and G, respectively. None of these discovery requests made reference to Wachovia's intention to demand arbitration of Plaintiffs' claims.

8.      On May 20, 2010, Wells Fargo served interrogatories and requests for production on each of the Plaintiffs, to which Plaintiffs timely responded. Copies of the interrogatories and requests for production served by Wells Fargo on each of the Plaintiffs are attached as Exhibits H and I, respectively. None of these discovery responses made reference to Wells Fargo's intention to demand arbitration of Plaintiffs' claims.

9.      Beginning in March and April 2010, counsel for Wachovia and Wells Fargo actively participated in extensive negotiations regarding the terms of a Stipulated Protective Order, a Stipulated Protocol Regarding the Assertion of Privilege, and a Stipulated Protocol Regarding Expert Witnesses. The Court ultimately entered Orders adopting these stipulated protocols based on the parties' agreed-upon filings, none of which contained any reference or reservations with respect to Defendants' intention to demand arbitration of Plaintiffs' claims. [**DE # 688, 890, 891**].

10.     Beginning in mid-2010 and continuing to the present, counsel for Wachovia and Wells Fargo actively participated in numerous discovery conferences and meetings regarding discovery-related issues in this litigation. For example, on September 15, 2010, counsel for Wachovia and Wells Fargo (as well as counsel for JPMorgan Chase Bank, N.A., Bank of

America and U.S. Bank) met with several members of Plaintiffs' counsel team in San Francisco for an entire day to address discovery-related issues, including the scope of Plaintiffs' planned depositions of the banks' Rule 30(b)(6) designees on certain topics. As a result of that meeting, the parties reached certain understandings and agreements which led to the execution of the Stipulation attached as Exhibit J. On November 3, 2010, several members of Plaintiffs' counsel team met again with counsel for Wachovia and Wells Fargo (and counsel for JPMorgan Chase Bank, N.A., Bank of America and U.S. Bank) in Miami for the better part of a day to discuss discovery-related issues. On November 19, 2010, counsel for Wachovia and Wells Fargo (along with counsel for JPMorgan Chase Bank, N.A., Bank of America and U.S. Bank) met again with several members of Plaintiffs' counsel team in Dallas to continue discussions regarding discovery-related issues. In addition to the meetings described above, attorneys working as part of Plaintiffs' counsel team have participated in numerous other discovery conferences with counsel for Wachovia and Wells Fargo since discovery commenced in the first tranche actions in May 2010. Many of these discovery conferences involved disputes raised by Wachovia and/or Wells Fargo regarding Plaintiffs' responses to Defendants' written discovery, others involved discovery disputes raised by Plaintiffs regarding Wachovia's and/or Wells Fargo's responses to Plaintiffs' written discovery, and still others involved disputes regarding the dates, locations and subjects of planned depositions of Defendants' designees and witnesses. Plaintiffs' counsel devoted substantial human and financial resources in preparing for, participating in and following up on these discovery conferences. Defendants never raised the issue of demanding arbitration of Plaintiffs' claims during the discovery conferences held between September 15, 2010 and April 26, 2011.

11. In the 12 months since discovery opened for the first tranche cases, Defendants filed numerous motions regarding discovery-related issues, all of which necessitated responses by Plaintiffs. [*See*, *e.g.*, **DE # 909 and 941; 907 and 942; 1036 and 1109**]. In addition, in February 2011, Defendants affirmatively moved for an order confirming the obligation of Plaintiffs' lead counsel to coordinate discovery in all cases pending against them in this MDL to ensure that depositions would not be duplicated. [**DE # 1202, 1256**]. Plaintiffs' counsel devoted substantial human and financial resources in researching and preparing responses to Defendants' numerous discovery-related motions. In their discovery-related motions, Defendants never made reference, nor sought to reserve their rights, with respect to demanding arbitration of Plaintiffs' claims.

12. In July 2010 and January 2011, Plaintiffs filed motions to compel against Defendants, which were fully briefed and decided by this Court. [**DE # 691, 1033, 1089, 1171**]. After the Court ruled on Plaintiffs' second motion to compel [**DE # 1033**], Defendants filed a motion for rehearing, which necessitated a response from Plaintiffs and led to a lengthy hearing on February 28, 2011. [**DE # 1220, 1247, 1268**]. Ultimately, the Court entered an Order on Defendants' motion for reconsideration, requiring Defendants to produce additional documentation by April 1, May 10, and June 30, 2011. [**DE # 1308**]. Plaintiffs' counsel devoted substantial human and financial resources in researching and preparing these discovery motions and responses to Defendants' reconsideration and clarification motions. Defendants never made reference, nor sought to reserve their rights, with respect to demanding arbitration of Plaintiffs' claims in their responses to Plaintiffs' discovery motions and the reconsideration and clarification motions that ensured thereafter.

13. To date, Defendants have produced approximately nine hundred thousand (900,000) pages of documents and electronically stored information ("ESI") in response to Plaintiffs' written discovery requests. Plaintiffs' counsel have devoted substantial human and financial resources in organizing, maintaining and reviewing these documents and ESI. Defendants never made reference, nor sought to reserve their rights, with respect to demanding arbitration of Plaintiffs' claims in connection with the 900,000 pages of documents and ESI they have produced to date.

14. Between November 8, 2010 and March 2, 2011, Plaintiffs' counsel took at least 16 depositions of Defendants' Rule 30(b)(6) designees and senior employees, including Debbie Chacon (November 8, 2010), Dawn Avrech (November 8, 2010), Paul Williamson (November 8, 2010), John Ahrendt (November 9, 2010), Mark Lentz (November 9, 2010 and March 10, 2011), Thomas Greenway (December 7, 2010), Laura Sturmer (December 7, 2010 and March 3, 2011), Richard Welsh (December 7, 2010), Timothy Smith (February 15, 2011), Steven Gilbert (February 15, 2011), Yon Lee (February 18, 2011), Karen Moore (March 1, 2011), Bradley Arrowood (March 2, 2011), and Mary Davis (March 2, 2011). Many of these deponents were identified in Defendants' initial disclosures and interrogatory responses (Exhibits A, B and D attached hereto). Plaintiffs' counsel devoted substantial human and financial resources in preparing for and conducting these depositions, which collectively comprise several thousand pages of testimony, and which necessitated travel to Charlotte, North Carolina, and San Francisco, California, on multiple occasions. Defendants never made reference, nor sought to reserve their rights, with respect to demanding arbitration of Plaintiffs' claims during any of the depositions of their designees and employees.

15. Between March 1, 2011 and April 26, 2011, Defendants took the depositions of at least five Plaintiffs, Michael Dehn (March 2, 2011), William Rucker (March 17, 2011), Alex Zankich (March 18, 2011), Anthony Poulin (March 21, 2011), and Murlee Damor (March 24, 2011). At Defendants' insistence, two of these depositions were taken in Miami, Florida, which required two Plaintiffs to take time off from work and travel to Miami to prepare for and attend their depositions. The depositions of three other Plaintiffs were taken in Seattle, Washington, also requiring those Plaintiffs to take time off from work to prepare for and attend their depositions. Plaintiffs' counsel also devoted significant human and financial resources in preparing for and defending these depositions. Defendants never made reference, nor sought to reserve their rights, with respect to demanding arbitration of Plaintiffs' claims prior to or during these depositions.

16. Most recently, Plaintiffs expended substantial human and financial resources researching, preparing and filing motions for class certification in the cases pending against Defendants. These motions were filed on April 25, 2010, pursuant to the Court's Revised Scheduling Order.

17. I am familiar with the claims tried to judgment in *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Ca. 2010), the related case before U.S. District Judge William Alsup in the Northern District of California. In this case, Plaintiffs have retained Arthur Olsen, the same database engineer who testified in *Gutierrez*, to analyze and determine the damages of Plaintiffs, and every other customer, as a result of Defendants' challenged overdraft practices and policies. Mr. Olsen's declarations, setting forth his methodology for analyzing and determining the damages of Plaintiffs, and every other customer of Defendants affected by this practice, are included in Appendix IV to Plaintiffs' Motions for Class Certification filed under seal on April

**Formatted:** Bullets and Numbering

8

25, 2011.  As Mr. Olsen's declarations make abundantly clear, the process of analyzing and determining the damages of Plaintiffs, and each affected person, is complex and will require access to Defendants' data processing systems and historical transactional data.  *See* Olson Declarations, pp. 13-19.  Absent expertise in database engineering, and full access to Defendants' data processing systems and historical transactional data, it is inconceivable that Plaintiffs, or other individual customers of Defendants, could realistically muster the resources to prove their claims if they are compelled to individually arbitrate the claims brought in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 20th day of May, 2011, in Miami, Florida.

> Deleted: 17th

    /s/ Robert C. Gilbert
    Robert C. Gilbert