UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MDL-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

## MOTION TO REMOVE UNION BANK, N.A. FROM THE FIRST TRANCHE OR, IN THE ALTERNATIVE, TO CONFIRM THAT THE MAY 13, 2011 ORDER [DE #1479] ALSO APPLIES TO UNION BANK

Defendant Union Bank, N.A. ("Union Bank"), by and through its undersigned counsel, hereby moves the Court for an Order removing it from the first tranche and transferring it into the existing fourth tranche of defendant banks. In the alternative, Union Bank moves for an Order providing that the Court's May 13, 2011 order staying discovery and class certification proceedings as to the other first tranche banks [DE #1479] also applies to Union Bank.

### INTRODUCTION

In November of 2010, this Court issued an order assigning cases to "tranches" in order to efficiently and effectively manage the increasing number of overdraft fee class actions being transferred to this MDL proceeding. [DE # 934.] Union Bank was the seventh and final bank included in the first tranche, along with Wells Fargo, Bank of America, Chase, Wachovia,

15240/0008/922890.2

Citibank and U.S. Bank. To this point, the tranche approach has served the Court and parties reasonably well, allowing the Court to rule on the same or similar issues or motions which affect multiple cases which are at the same procedural stage.

Because of recent developments, however, Union Bank respectfully suggests that it is no longer possible to efficiently manage the first tranche of cases by moving forward under the existing scheduling order which the Court issued on November 4, 2010. [DE # 878.]

Indeed, the first tranche has effectively collapsed. The cases against Bank of America have been settled, with the Court recently granting preliminary approval of that settlement. [DE # 1520.] The Court granted Citibank's request to be removed from the first tranche and moved to the fourth tranche. [DE # 1312.] Cases against four other first tranche banks (Wells Fargo, Wachovia, Chase and U.S. Bank) were recently stayed by this Court, which suspended discovery and class certification deadlines because of a series of arbitration-related issues which now have to be resolved in the wake of the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 562 U.S. __, 2011 WL 1561956 (Apr. 27, 2011). And, most recently, a single case against defendant Chase which is unaffected by *Concepion* (*Luquetta*) has also been included within the stay, by stipulation of the parties and Order of this Court. [DE # 1524.]

As a result of these developments, there is no first "tranche" of cases which can move forward at this juncture. There is but a single lawsuit against Union Bank—which is the smallest of the banks included in the first tranche, and whose customers predominantly reside in a single state, California. For the reasons explained below, continuing to litigate this single case against Union Bank under the existing schedule for the first tranche is not practical or even possible, given recent procedural developments, would not further the case management goals which led to the creation of the first tranche, and would be unfair and prejudicial to Union Bank.

15240/0008/922890.2

**MEMORANDUM OF LAW**

A.  **The Unsettled Procedural Status of the Case Against Union Bank Precludes Fair Consideration of Class Certification At This Time.**

The complaints initially filed against the seven first tranche banks all included the same counts. Given the similarity of the complaints and the legal issues they raised, in February of 2010 this Court ruled on the first tranche banks' "omnibus" motion to dismiss, thereby adjudicating these issues in fifteen different lawsuits affecting seven different banks.

On November 4, 2010, the Court issued a scheduling order for the cases in the first tranche, including the following dates:

- April 25, 2011; deadline for plaintiffs' filing of a motion for class certification;
- June 9, 2011; deadline for the first tranche banks' opposition; and,
- November 10, 2011; discovery cut-off.

On March 29, 2011, however, the *Larsen* plaintiffs filed a third amended complaint against Union Bank. That complaint asserted, for the first time in any of these overdraft lawsuits, a claim for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962(c) ("RICO"), based upon Union Bank's engagement of a consulting firm, CAST, in connection with its adoption of the practice being challenged in this litigation. To this point, no similar claim has been brought against any other bank, though CAST is a nationally recognized firm which apparently provided consulting services to many of the other banks involved in this proceeding. [DE # 1317, ¶39.]

Union Bank has moved to dismiss that claim, and plaintiffs have opposed that motion. No hearing has been set on Union Bank's motion to dismiss. Based upon the current deadlines set forth above, however, it is clear that the parties will be briefing the issue of class certification before it has even been determined whether the RICO claim will survive the motion to dismiss.

In other words, under the existing schedule the pleadings will not be settled as to Union Bank at the time the issue of class certification is addressed.

It is simply not possible for the parties to effectively brief the issue of class certification while the pleadings have not been settled, nor can the Court give due consideration to class certification issues at this juncture.

In ruling on a motion for class certification, a trial court must consider (among other factors) whether individual issues predominate, which would preclude class certification, and whether class treatment is the superior means of adjudicating plaintiffs' claims. FRCP, Rule 23(b)(3). To make such determinations, a court must consider what the essential elements are for recovery under each cause of action contained in the complaint, how plaintiffs intend to establish each of these elements, and whether these elements can be established on a class-wide basis based on common proof. *See Abercrombie v. Lum's Inc.*, 345 F.Supp. 387, 390 (S.D. Fla. 1972) (King, J.) ("an analysis of the issues and the nature of proof which will be required at trial is directly relevant to a determination of whether the matters in dispute are principally individual in nature or are susceptible of proof equally applicable to all class members") (citations omitted).[1] The trial court must also consider the defendants' affirmative defenses and what proof will be required as to those defenses. As a result, courts ordinarily rule on any pending motion to dismiss before addressing class certification. *See, e.g., County of Riverside v. McLaughlin,* 500 U.S. 44, 48, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) ("In light of the pending motion to dismiss,

---

[1] *See also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270 (11th Cir. 2009) (vacating order certifying class, and stating that "[w]hether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action") (citation omitted)); *Perez v. Metabolife Int'l, Inc.*, 218 F.R.D. 262, 273 (S.D. Fla. 2003) (denying certification because "any efficiency gained by deciding the common elements will be lost when separate trials are required for each class member in order to determine each member's entitlement to the requested relief").

15240/0008/922890.2

the District Court continued the hearing on the motion to certify the class."); *Heckler v. Ringer,* 466 U.S. 602, 610 n. 5, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); *Kilgore v. Outback Steakhouse of Fla., Inc.,* 160 F.3d 294, 296 n. 1 (6th Cir.1998).

At this stage, the parties to the *Larsen* case are not even in agreement as to the requirements for recovery under a RICO mail and wire fraud claim. As set forth in its motion to dismiss, Union Bank contends that reliance on the supposed mail or wire fraud is an essential element under RICO, pursuant to binding 11th Circuit and Supreme Court precedent. (DE # 1355, at p. 19-21 and DE # 1502, at p. 13-18.) Plaintiffs, on the other hand, argue that the Supreme Court eliminated the reliance requirement in its 2008 decision in *Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, and that plaintiffs do not need to plead or prove reliance in order to recover under RICO.

Resolution of this issue will significantly impact the class certification analysis. It is well-settled that, where a plaintiff must establish reliance as an element of recovery, the inability to do so on a class-wide basis, that is, based upon common proof, will doom class certification because of the individual issues which would have to be litigated in order to establish the class's entitlement to recovery. *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1025 (11th Cir. 1996) (reversing certification order where "plaintiffs would still have to show, on an individual basis, that they relied on the misrepresentations, suffered injury as a result, and incurred a demonstrable amount of damages"); *Burstein v. First Penn-Pacific Life Ins. Co.*, 209 F.R.D. 674, 677 (S.D. Fla. 2002) (denying motion for class certification and stating that "[t]he reliance and causation elements of Plaintiff's RICO claim necessarily entail individual inquiries of virtually each and every class member. Reliance will depend on the state of mind of the class member and simply cannot be resolved on a class-wide basis."); *Hammett v. Am. Bankers Ins. Co.*, 203 F.R.D. 690,

15240/0008/922890.2

5

699 (S.D. Fla. 2001) ("In accordance with binding precedent, the Court finds that Plaintiff and the putative class members must each show that they relied to their detriment on Defendants' misrepresentations. This individualized issue of reliance predominates over common issues, thus defeating Plaintiff's certification under Rule 23(b)(3) for her RICO claim.").

Accordingly, the Court must first decide what is required to adequately plead a RICO claim, and whether plaintiffs' third amended complaint satisfies those requirements. After the Court has ruled on Union Bank's motion to dismiss, Union Bank will then have an opportunity to respond to the complaint and set forth its affirmative defenses to plaintiffs' surviving claims. Only after the pleadings are settled can the Court properly consider class certification. It will likely take a minimum of several months to resolve the pleadings in this case.[2] Accordingly, if the Court were to adhere to the existing first tranche schedule, it will have ruled on class certification before the pleadings are even settled. Briefing and considering class certification *before* the pleadings are settled would be putting the proverbial cart before the horse. Further, this backwards approach would be inconsistent with the requirements of Rule 23 and the cases which have articulated how trial courts must determine whether the requirements for class certification have been satisfied.

This alone is reason enough to grant the relief requested in this motion, to remove the case against Union Bank to the fourth tranche, which includes other cases where the pleadings have not been settled. But there are other compelling reasons to do this as well.

As explained in the context of plaintiffs' recent motion to amend their complaint against Union Bank, the injection of a RICO claim into this case will have a profound impact on the path

---

[2]   In other cases plaintiffs have filed motions to strike the defendant's affirmative defenses to the complaint, arguing that those defenses are not sufficiently specific. See, e.g., DE # 1390.

and trajectory of this case. If this claim were to survive the motion to dismiss, there is a significant chance that CAST—Union Bank's consultant, and the supposed "co-conspirator" in the RICO scheme alleged by plaintiffs—could be brought into this lawsuit as a party. If the Court were to rule on class certification before this occurs, procedural bedlam would inevitably result. For example, if this case were certified before CAST is brought in as a party, would the class certification ruling be binding on CAST, or would CAST have an opportunity to re-litigate class certification? And if plaintiffs' motion for class certification is denied, would plaintiffs be allowed to seek class certification as against CAST?

While the answers to these questions are unclear, there is no reason to inject such uncertainty into this proceeding. The better (and proper) procedure is to settle the pleadings and determine whether additional parties will be added *before* moving on to the issue of class certification.

Looming larger still is the issue of the 11th Circuit's May 11, 2011 decision in *Baptista v. JPMorgan Chase Bank, N.A.*, 2011 WL 1772657, and the question of the impact it will have on this entire MDL proceeding, including the case against Union Bank.

As explained in various briefs recently filed in this proceeding, *Baptista* holds that (1) the National Bank Act preempts claims that fees for checking transactions violate state laws of general applicability; (2) the NBA preempts claims challenging the manner in which the national bank assesses fees, not just the amount of the fee; and, (3) NBA preemption is a question of law properly determined at the motion to dismiss stage, not postponed for decision on a fuller factual discovery. No such guidance from the 11th Circuit existed at the time this Court ruled on the preemption issue in the context of the first tranche defendants' omnibus motion to dismiss in February of 2010. But now that the 11th Circuit has decided these issues, the Court will

15240/0008/922890.2

7

certainly want to reconsider its preemption ruling in this case based upon the recent pronouncements of the 11th Circuit in *Baptista*.

Chase has moved for reconsideration of the Court's order on the omnibus motion to dismiss in light of *Baptista*, a motion in which Union Bank has also joined. Union Bank has also independently raised the preemption issue in its pending motion to dismiss the *Larsen* plaintiffs' Third Amended Complaint. For the same reasons explained above in the context of plaintiffs' unsettled RICO claim, this Court should first determine whether plaintiffs have stated viable claims against Union Bank in light of its preemption defense and the 11th Circuit's holdings in *Baptista*, before it takes up the issue of whether it should grant class certification of those claims.

**B.     Requiring the Single Case Against Union Bank To Proceed Under The Existing First Tranche Schedule Would Not Further The Goal of Effective Case Management, and Would Prejudice Union Bank.**

This Court of course has broad authority to set schedules for the various cases transferred to this MDL proceeding. *See In re Clients & Former Clients of Baron & Budd, P.C.*, 482 F.3d 835, 836 (5th Cir. 2007) ("[T]he purpose of the transfer is for 'coordinated or consolidated pretrial proceedings' and to 'promote the just and efficient conduct of such actions.' . . . Undoubtedly, Congress intended that a judge who presides over multidistrict litigation is to have broad power to conduct pretrial proceedings."). The Manual for Complex Litigation recognizes that "the judge's role is crucial in developing and monitoring an effective plan for the orderly conduct of pretrial and trial proceedings. Although elements and details of the plan will vary with the circumstances of the particular case, each plan must include an appropriate schedule for bringing the case to resolution." *See* Annotated Manual for Complex Litigation, Fourth (West 2010) (the "Manual") at §10.13.

This Court has already embraced these concepts outlined in the Manual by organizing the various cases by tranche and assigning each tranche a separate scheduling order based on their differing procedural postures. Based on the developments outlined above, however—the effective collapse of the first tranche and the recent injection of new claims, new issues and potentially new parties into the Union Bank case—adherence to the first tranche scheduling order would no longer further the goal of effective case management, even if it were possible, which it is not. Indeed, the Manual contemplates that complex litigation schedules often require adjustments in circumstances such as this:

> Case management plans ordinarily prescribe a series of procedural steps with firm dates to give direction and order to the case as it progresses through pretrial proceedings to summary disposition or trial. In some cases, the court can establish an overall plan for the conduct of the litigation at the outset; in others, ***the plan must be developed and refined in successive stages***. *Id* (emphasis added).

The procedural issues affecting the Union Bank case present the very situation contemplated by the Manual, where subsequent developments require refinements to a case management plan in order to ensure the "just and efficient" management of the MDL proceeding. There are no efficiencies to be gained from litigating this one case according to a schedule previously established for a tranche of fifteen cases where intervening developments have made compliance with that schedule impossible.

Proceeding in this fashion would prevent the Court from be able to consider class certification motions in multiple cases at the same time. Instead, the Court would have to entertain serial motions for class certification. The motion in the Union Bank case would most likely be heard in July 2011 under the existing schedule. Motions for class certification in other cases would presumably be heard at later dates, as the Court resolves other procedural matters and those cases are deemed ripe for a ruling on class certification. Further, as explained above, if

15240/0008/922890.2

the Court rules on class certification in the Union Bank case before the pleadings are settled and new parties are added, this will create a significant risk that multiple class certification hearings will be required in this one case.

Neither the Court nor the parties would benefit from serial motions for class certification, spread out over an extended period of time, such that the parties and Court must repeatedly address the same or similar issues. Proceeding under the existing schedule may also force the Court to conduct repetitive hearings on other issues affecting multiple banks, including motions relating to the impact of *Baptista* or *Concepion* on these cases.

Finally, requiring Union Bank to move forward with discovery and class certification under the existing schedule would simply be unfair and prejudicial to Union Bank, given the current procedural status of this case.

The current schedule was established in November of 2010. At that time, it was contemplated, by all parties and the Court, that the pleadings had already been settled, that all claims had been asserted against Union Bank and tested by motion practice, that no additional parties would be appearing, and that the parties would have adequate time to conduct discovery and brief class certification under the schedule set by the Court. As discussed above, however, subsequent developments have destroyed those factual assumptions upon which the initial schedule was based. Union Bank now finds itself in the impossible position of having to, within a very short time frame,

- brief its motion to dismiss plaintiffs' recently-added RICO claim;
- answer the complaint after the Court rules on this motion;
- respond to voluminous discovery requests and depositions notices seeking discovery which plaintiffs say is needed for class certification;
- conduct the discovery which Union Bank believes is necessary to oppose that motion;

- consider whether to bring in CAST as a party should the Court deny its motion to dismiss (and engage in motion practice on this issue if plaintiffs do not consent);

- brief the preemption issues arising out of the 11th Circuit's decision in *Baptista*;

- brief the critical issue of class certification; and,

- complete all other pre-trial discovery by the November 2011 deadline set by the Court.

No other bank in the first tranche is being required to adhere to such a schedule; indeed, the cases against the remaining banks in the first tranche are all stayed. Union Bank would be unfairly prejudiced if it alone were forced to complete discovery needed to defend the RICO claim under the existing schedule. The deadline to complete class certification discovery is now tolled against all other banks in the first tranche, and none of them is required to contend with a late-added RICO claim. The RICO claim will require Union Bank to engage in further extensive discovery, in addition to the significant amount of currently scheduled and proposed discovery. All of this must be completed concurrently with the other critical deadlines in this case, which deadlines were not set with the RICO claim in mind.

Removing Union Bank from the first tranche will alleviate the prejudice Union Bank faces in light of the impending deadlines and plaintiffs' late amendment of their complaint. It will allow the Court sufficient time to address Union Bank's motion to dismiss, including the viability of plaintiffs' RICO claim and the question of whether all of plaintiffs' claims are preempted in light of the 11th Circuit's May 11 ruling in *Baptista*. Plaintiffs would not be prejudiced by removing Union Bank from the first tranche because Union Bank will still be subject to all deadlines and dates under the scheduling order applicable to the fourth tranche.

## **CONCLUSION**

Union Bank respectfully requests that the Court transfer the *Larsen* case to the existing fourth tranche, and that its motion to dismiss be set for hearing consistent with this Court's schedule for resolving pleadings motions affecting other cases in that tranche. Alternatively, Union Bank requests that this case enter an order holding that Union Bank is also subject to the Court's May 13, 2011 order [DE #1479], and that discovery and class certification deadlines are also stayed as to Union Bank.

Dated: May 26, 2011                                          Respectfully submitted,

/s/ Peter H. Bales
John B. Sullivan
jbs@severson.com
Jan T. Chilton
jtc@severson.com
Mark D. Lonergan
mdl@severson.com
Peter H. Bales
phb@severson.com
Severson & Werson
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel: 415-677-5603
Fax: 415-956-0439

Alan G. Greer, Esq.
Florida Bar No. 0123294
agreer@richmangreer.com
John M. Brumbaugh, Esq.
Florida Bar No. 0126350
jbrumbaugh@richmangreer.com
RICHMAN GREER, P.A.
Miami Center – Suite 1000
201 South Biscayne Boulevard
Miami, Florida 33131-2305
Telephone: (305) 373-4000
Facsimile: (305) 373-4099
Attorneys for Defendant

UNION BANK, N.A.

15240/0008/922890.2

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2011, I served the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the forgoing document is being served this day either by Notice of Electronic filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

    /s/ Peter H. Bales
    Peter H. Bales