UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT      )
OVERDRAFT LITIGATION         )
                                          )
MDL No. 2036                    )
_____)

THIS DOCUMENT RELATES ONLY TO: )
                                          )
*Buffington, et al. v. SunTrust Banks, Inc.*  )
S.D. Fla. Case No. 1:09-cv-23632-JLK     )
_____)

## DEFENDANT SUNTRUST BANK'S RENEWED
## MOTION TO COMPEL ARBITRATION AND STAY ACTION

William N. Withrow, Jr.
Georgia Bar No. 772350
Lynette Eaddy Smith
Georgia Bar No. 236841
Lindsey B. Mann
Georgia Bar No. 431819

TROUTMAN SANDERS LLP
Bank of America Plaza, Suite 5200
600 Peachtree Street, N.E.
Atlanta, Georgia  30308
404-885-3000 (voice)
404-885-3995 (facsimile)

*Attorneys for SunTrust Bank*

2282086v1

## I.      INTRODUCTION

Defendant SunTrust Bank ("SunTrust") hereby renews its Motion to Compel Arbitration and Stay Action.

Since the date that the Court originally denied arbitration in this case, the Supreme Court has decided *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011). In *Concepcion*, the Supreme Court held that the Federal Arbitration Act ("FAA") preempts state law conditioning the enforceability of arbitration agreements on the availability of class action procedures. Thus, the *Concepcion* opinion dispenses with Plaintiffs' arguments that the Arbitration Agreement between them and SunTrust is unconscionable because it prohibits Plaintiffs from pursuing their claims on behalf of a class. Applying the holding and reasoning of *Concepcion*, the Court should find that the parties' arbitration agreement is valid and enforceable and should grant SunTrust's Motion to Compel Arbitration and Stay Action.

Alternatively, even if the Court finds that *Concepcion* does not apply to this case, the Court should grant SunTrust's Motion to Compel Arbitration and Stay Action. The Arbitration Agreement is valid and enforceable under Georgia law, and therefore Plaintiffs should be required to individually arbitrate all of their claims against SunTrust.[1]

## II.     STATEMENT OF THE CASE

All of the claims alleged against SunTrust in Plaintiffs' Class Action Complaint ("Complaint") arise out of Plaintiffs' joint checking account maintained at SunTrust ("the

---

[1] SunTrust hereby adopts and incorporates all of its previously submitted evidence and arguments in support of its original Motion to Compel Arbitration and Stay Action, which are included in the following briefs previously filed with the Court in the case styled *Buffington, et al. v. SunTrust Banks, Inc.* United States District Court, Southern District of Florida Civil Action No. 1:09-cv-23632:  SunTrust's Motion to Compel Arbitration and to Stay Action, with Brief in Support [Dkt. No. 4]; SunTrust's Reply in Support of Motion to Compel Arbitration and to Stay Action [Dkt. No. 9]; SunTrust's Response to Notice of Supplemental Authority [Dkt. No. 14].

Account").  (*See* Complaint [Buffington Dkt. No. 1][2] at Ex. B; Affidavit of Rufus M. Triplett, attached as Ex. A, at ¶ 4.)  Specifically, Plaintiffs allege that SunTrust improperly assessed overdraft fees on the Account by posting charges to the Account in order of largest to smallest amounts, resulting in increased overdraft fees with no benefit to the customer.  (Complaint [Buffington Dkt. No. 1] at Ex. B, ¶ 11.)  Plaintiffs further allege that SunTrust assessed overdraft fees at times when the actual funds in the account were sufficient to cover all debits submitted to the bank for payment.  (*Id.* at ¶ 12.)

The Account is governed by the terms and conditions in SunTrust's *Rules and Regulations for Deposit Accounts* (the "Deposit Agreement"), to which Plaintiffs are bound, as are all other members of the purported class that Plaintiffs seek to represent.  (Triplett Aff. at ¶¶ 4-6 and Exhibits A and C; Affidavit of Tracy M. Kennedy, attached as Exhibit B, at ¶ 4 and Exhibit A.)  The Deposit Agreement contains an arbitration provision for all disputes or claims related to the Account (the "Arbitration Agreement").  (*Id.* at Ex. A, ¶ 5.)  The Arbitration Agreement provides as follows:

> **DISPUTE RESOLUTION**
>
> **READ THIS PROVISION CAREFULLY AS IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED. For a Claim subject to arbitration, neither the Depositor nor the Bank will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action in court or in arbitration; or (4) join or consolidate a Claim with claims of any other person. The right to appeal is more limited in arbitration than in court and other rights in court may be unavailable or limited in arbitration.**
>
> …

---

[2] SunTrust will refer to docket entries from civil action 1:09-cv-23632, *Buffington, et al. v. SunTrust Banks, Inc.* as "Buffington Dkt. Nos."

**ARBITRATION.** Notwithstanding any other provision in these rules and regulations, if either Depositor or the Bank has any unresolvable dispute, controversy or claim between us other than any Excluded Claim or Proceeding as defined below, whether founded in contract, tort, statutory or common law, concerning, arising out of or relating to the Account or these rules and regulations, including any claim regarding the applicability, interpretation, scope or validity of this arbitration clause and/or these rules and regulations (a "Claim"), and upon the demand of either party, it will be resolved by individual (not class or class-wide) binding arbitration administered by the National Arbitration Forum (the "NAF"), P.O. Box 50191, Minneapolis, MN 55405, www.adrforum.com, (800) 474-2371, or the American Arbitration Association (the "AAA"), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org, (800) 778-7879. …

Notwithstanding any choice of law or other provision in these rules and regulations, the parties agree and acknowledge that this agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act (Title 9 of the United States Code) shall govern the interpretation, enforcement, and proceedings pursuant to the arbitration clause in this agreement.  …

….

… The prevailing party shall be entitled to an award of the costs and expenses of the arbitration including an award of reasonable attorneys' fees for any Claim(s) in which the party has prevailed, except as otherwise required by applicable law. …

(Triplett Aff. at Ex. C at pp. 22-24 (emphasis in original).)[3]

By the Answer of SunTrust (Answer [Buffington Dkt. No. 3] at 14) and by letter of July 14, 2009, SunTrust informed Plaintiffs of SunTrust's demand for arbitration and of the requirement that Plaintiffs submit their claims to individual arbitration.  Plaintiffs refused to submit their claims to arbitration and, on July 16, 2009, SunTrust filed its original Motion to Compel Arbitration and Stay Action.  (Buffington Dkt. No. 5.)

---

[3] The Arbitration Agreement excludes from arbitration individual actions brought by customers in small claims court.  (Triplett Aff. at Ex. C at p. 24.)

This Court denied SunTrust's Motion to Compel Arbitration, finding that the Arbitration Agreement was unenforceable because the agreement contained a class action waiver provision that rendered the agreement substantively unconscionable under Georgia law.  (Order [Dkt. No. 447] at 20-22.)[4]  SunTrust appealed the Court's ruling to the Eleventh Circuit.  The Eleventh Circuit heard oral argument on SunTrust's appeal on April 12, 2011.  After oral argument, on April 28, 2011, the Eleventh Circuit vacated this Court's previous Order and remanded the case to this Court for reconsideration in light of the Supreme Court's April 27, 2011 opinion in *Concepcion*.

### III.   ARGUMENT AND CITATIONS OF AUTHORITY

**A.   Enforcement Of The Arbitration Agreement Is Controlled By The Federal Arbitration Act, Which Establishes A Strong Federal Policy In Support of Arbitration.**

As Plaintiffs conceded when SunTrust's original Motion to Compel Arbitration and Stay Action was filed, the Arbitration Agreement is governed by the FAA.[5]  Under the FAA, written agreements to arbitrate a dispute arising out of a transaction involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  In enacting the FAA, Congress established a strong federal policy in support of arbitration agreements, "requiring that [courts] 'rigorously enforce agreements to arbitrate.'"  *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226,

---

[4] The Court also found the Arbitration Agreement to be "sufficiently procedurally unconscionable."  (Order [Dkt. No. 447] at 20 n.15.)

[5] The Arbitration Agreement is "[a] written provision in . . . a contract evidencing a transaction involving [interstate] commerce" within the meaning of the FAA.  9 U.S.C. § 2  Because SunTrust maintains offices and conducts banking activities in several states, funds received from and payable on SunTrust's deposit accounts are often disbursed to or originate outside of Georgia.  (Triplett Aff. at ¶6.)  In addition, in the Deposit Agreement, Plaintiffs acknowledged and agreed that the Account and the Arbitration Agreement "evidences a transaction involving interstate commerce" and would be governed by the FAA.  (*Id.* at Ex. C, p. 24.)

107 S. Ct. 2332, 2337 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941-42 (1983)).  Congress' intention in enacting the FAA was to "reverse the longstanding judicial hostility to arbitration agreements ... and to place arbitration agreements upon the same footing as other contracts." *Green Tree Fin. Corp. – Ala. v. Randolph*, 531 U.S. 79, 89, 121 S. Ct. 513, 521 (2000) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24, 111 S. Ct. 1647, 1651 (1991)).

**B.**     **The Claims Asserted Against SunTrust In This Action Are Subject To The Arbitration Agreement.**

When interpreting an arbitration agreement, courts must be ever mindful of the Supreme Court's mandate that such agreements are to be construed liberally in favor of arbitration.  Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25, 103 S.Ct. at 942.  The existence of an arbitration agreement raises a presumption that a claim is subject to arbitration, which may be overcome ***only*** if

> [I]t may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.

*AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 1419 (1986).

As Plaintiffs conceded when SunTrust filed its original Motion to Compel Arbitration and Stay Action, there is no doubt that the Arbitration Agreement covers the subject matter of this action.  Plaintiffs' claims arise from their allegation that SunTrust improperly assessed overdraft fees on the Account.  The scope of the Arbitration Agreement sweeps broadly, expressly covering "any unresolvable dispute, controversy or claim between us other than any Excluded Claim or Proceeding as defined below, whether founded in contract, tort, statutory or

common law, concerning, arising out of or relating to the Account or these rules and regulations, including any claim regarding the applicability, interpretation, scope or validity of this arbitration clause and/or these rules and regulations ….”  (Triplett Aff. at Ex. Ex. C at pp. 22-23.)  Because Plaintiffs' claims against SunTrust arise from the allegedly improper assessment of overdraft fees on the Account, clearly such claims are “relating to the Account.”

**C.**     **The Holding In _Concepcion_ Dispenses With Plaintiffs' Argument That The Class Action Waiver In The Arbitration Agreement Renders The Agreement Unconscionable.**

The Court denied SunTrust's original Motion to Compel Arbitration And To Stay Action on the grounds that the Arbitration Agreement's class action waiver provision rendered the agreement unconscionable and unenforceable.  (Order [Dkt. No. 447] at 20-22.)  That holding, however, does not survive the Supreme Court's recent opinion in _Concepcion_.  In _Concepcion_, the Supreme Court held that the FAA prohibits States from conditioning the enforceability of arbitration agreements on the availability of classwide arbitration procedures.  Under the reasoning and holding of _Concepcion_, the Court cannot refuse to enforce the Arbitration Agreement merely because the agreement does not allow potential plaintiffs to pursue their claims on a classwide basis.

**1.**     **The _Concepcion_ Court Held That The FAA Preempted California Law Declaring Class Action Waivers Unconscionable In Certain Arbitration Agreements.**

The dispute in _Concepcion_ arose out of an agreement for the sale and servicing of cellular telephones.  The contract provided for arbitration of all disputes between the parties but required that claims be brought in the parties' “individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding.”  _Concepcion_, 131 S. Ct. 1740 at 1744.

In March 2006, the Concepcions filed a complaint against AT&T that was later consolidated with a putative class action alleging, among other things, that AT&T had engaged in false advertising and fraud by charging $30.22 in sales tax on phones it had advertised as free. *Id.* AT&T moved to compel arbitration of the dispute but the Concepcions opposed the motion "contending that the arbitration agreement was unconscionable and unlawfully exculpatory under California law because it disallowed classwide procedures." *Id.* at 1745. The district court found that, under California law, "the arbitration provision was unconscionable because AT&T has not shown that bilateral arbitration adequately substituted for the deterrent effects of class actions." *Id.* (citing *Laster v. T-Mobile USA, Inc.*, Case No. 05-cv-1167-DMS(AJB), 2008 US. Dist. LEXIS 103712, *14 (S.D. Cal. Aug. 11, 2008)). In declaring the class action waiver provision unconscionable, the district court relied on the California Supreme Court's decision in *Discover Bank v. Superior Court*, 113 P.3d 1100 (2005), which held as follows:

> [W]hen the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then . . . <u>the waiver becomes in practice the exemption of the party 'from responsibility for [its] own fraud, or willful injury to the person or property of another.</u>' Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Concepcion*, 131 S. Ct. 1746 (quoting 113 P.3d at 1110 (quoting *Cal. Civ. Code Ann. § 1668*) (emphasis added)).

On appeal, the Ninth Circuit affirmed the holding of the district court. The court found the provision unconscionable under California law as announced in *Discover Bank*. *Id.* at 1745 (citing *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 855 (2009)). The Ninth Circuit further held that the *Discover Bank* rule was not preempted by the FAA because the rule was simply "a refinement of the unconscionability analysis applicable to contracts generally in California." *Id.*

The Supreme Court granted certiorari to consider "whether the FAA prohibits States from conditioning the enforceability of certain arbitration agreements on the availability of classwide arbitration procedures."  The Supreme Court concluded that the FAA did prohibit such action by the States and held that:

> The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings.  Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA.

*Id.* at 1748.  In enforcing the class action waiver provision in AT&T's arbitration agreement, the Supreme Court specifically rejected the notion argued by Plaintiffs in this case that class actions must be allowed if there is no other incentive for the prosecution of small-value consumer claims:

> The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. . . . But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons.

*Id*. at 1753.

### 2. After *Concepcion*, the Arbitration Agreement Cannot Be Found Unconscionable On The Basis That It Contains A Class Action Waiver Provision.

The Arbitration Agreement in the Deposit Agreement requires that Plaintiffs arbitrate their claim on an individual basis ("bilateral arbitration").  Just like the plaintiffs in *Concepcion*, Plaintiffs argue that the requirement of bilateral arbitration is unconscionable because it exculpates the defendant from facing any consequences of its alleged misconduct.  However, like the *Concepcion* Court, this Court must enforce the Arbitration Agreement as it is written – to require bilateral arbitration.

The Supreme Court reiterated in *Concepcion* that "the FAA was designed to promote arbitration." *Concepcion*, 131 S. Ct. at 1749. State law invalidating class action waivers in arbitration proceedings "interferes with fundamental attributes of arbitration," and therefore the law is inconsistent with and preempted by the FAA. *Id.* at 1748. The *Concepcion* Court explained that any rule invalidating a class action waiver in an arbitration agreement would, in effect, "require classwide arbitration." *Id.* at 1750. By invalidating the class action waiver, the state law would allow "any party to a consumer contract to demand [class arbitration] *ex post*." *Id.* The Court concluded that, to the extent class arbitration is "manufactured by" state law (including the law of unconscionability) rather than consented and agreed to by the contracting parties, the state law is inconsistent with and preempted by the FAA. *Id.* at 1750-51.

Furthermore, after *Concepcion* a court cannot declare a class action waiver unconscionable simply because it prevents potential plaintiffs with small-value claims from bringing their claims collectively. *Id.* at 1753(explaining that California's rule disallowing class action waivers in certain arbitration agreements was preempted despite the concern that class proceedings are necessary "to prosecute small-dollar claims that might otherwise slip through the legal system"). *See also Day v. Persels & Assocs., LLC*, Case No. 8:10-CV-2463-T-33TGW, 2011 U.S. Dist. LEXIS 49231, *16-17 (M.D. Fla. May 9, 2011) (enforcing an arbitration agreement containing a class action waiver and finding that the Florida Supreme Court's answer to the previously certified question of whether a class action waiver in an arbitration agreement was, under Florida law, unconscionable would have no determinative effect because any affirmative answer to the question would be preempted by the FAA under *Concepcion*); *Bellows v. Midland Credit Mgmt., Inc.*, Case No. 09CV1951-LAB, 2011 U.S. Dist. LEXIS 48237, *11 (S.D. Cal. May 4, 2011) (relying on *Concepcion* and holding that an "agreement to arbitrate is

not substantively unconscionable merely because it includes a class action waiver"); *D'Antuono v. Serv. Rd. Corp.*, No. 3:11c33(MRK), 2011 U.S. Dist. LEXIS 57367, at *55 (D. Conn. May 25, 2011) (stating that "this Court reads the [*Concepcion*] decision as casting significant doubt on virtually any 'device [or] formula' which might be a vehicle for 'judicial hostility toward arbitration"). Thus, *Concepcion* dispenses with each of Plaintiffs' unconscionability arguments. Under the holding of *Concepcion*, whether or not individuals with small claims are adequately incentivized to pursue their claims individually is irrelevant to the issue of the enforceability of an arbitration provision containing a class action waiver. Thus, the FAA demands that the Court enforce the Arbitration Agreement at issue in this case as it is written – to require bilateral arbitration.

**D.      Even Without The Change In The Law Announced By *Concepcion*, The Arbitration Agreement Should Be Enforced Because The Agreement Is Not Substantively Unconscionable Under Georgia Law.**

As explained above, the Supreme Court's holding in *Concepcion* definitively dispenses with Plaintiffs' argument that the class action waiver clause renders the Arbitration Agreement unconscionable and unenforceable. However, even without the benefit of the *Concepcion* opinion, the Arbitration Agreement should be enforced. Plaintiffs complain that the Arbitration Agreement's class action waiver provision, in combination with the agreement's fee shifting provision, render the agreement unconscionable. However, both of these provisions, and the Arbitration Agreement as a whole, are valid and enforceable under Georgia law.

**1.      Under Georgia Law, Neither The Class Action Waiver Nor The Fee Shifting Provision Renders The Arbitration Agreement Substantively Unconscionable.**

Courts applying Georgia law have not routinely struck down either class action waiver provisions or fee-shifting provisions.[6]  In fact, SunTrust's counsel has been unable to find a *single* case by a Georgia state appellate court in which an arbitration agreement was found unconscionable for *any* reason, much less because of the inclusion of either a class action waiver provision or a fee-shifting provision.[7]  In contrast, Georgia state courts have repeatedly rejected unconscionability claims such as Plaintiffs' that are rooted in the argument that the arbitration clause at issue renders arbitration "economically infeasible" for individuals to bring their claims. *See Results Oriented v. Crawford, Inc.,* 245 Ga. App. 432, 441 (2000), *aff'd* 273 Ga. 884, 885 (2001) (finding that an arbitration agreement was not unconscionable and holding that "the mere existence of an arbitration clause does not amount to unconscionability" and that the "lack of sophistication or economic disadvantage of one attacking arbitration will not amount to unconscionability"); *Crawford v. Great Am. Cash Advance, Inc*., 284 Ga. App. 690, 693-94 (2007) (holding in a putative class action lawsuit that an arbitration agreement was not

---

[6] In fact, the Eleventh Circuit and other courts applying Georgia law have upheld class action waiver provisions.  *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005) (enforcing arbitration agreement with class action waiver); *Jenkins v. First Am. Cash Advance of Ga.*, *LLC*, 400 F.3d 868, 877-78 (11th Cir. 2005) (same); *Randolph v. Green Tree Fin. Corp.- Ala.*, 244 F.3d 814, 819 (11th Cir. 2001) (same); *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118 (11th Cir. 2010) (vacating district court's ruling that arbitration agreement with class action waiver provision was unconscionable); *Honig v. Comcast of Ga. I, LLC*, 537 F. Supp. 2d 1277, 1289 (N.D. Ga. 2008) (same).

[7] Plaintiff's burden of establishing unconscionability is a heavy one.  "Georgia law recognizes and protects the freedom of parties to contract."  *Thomas v. T & T Straw, Inc*., 254 Ga. App. 194, 195 (2002).  This freedom is protected in Georgia even though parties "may enter into contracts that are unreasonable or which may lead to hardship on one side."  *NEC Techs., Inc. v. Nelson*, 267 Ga. 390, 396 (1996).  Georgia law permits a court to refuse to enforce a contractual provision on the grounds of unconscionability only in those rare cases where the contract "is one abhorrent to good morals and conscience" and "is one where one of the parties takes a fraudulent advantage of another."  *Thomas*, 254 Ga. App. at 195.  Put another way, an unconscionable contract is one "that no sane person not acting under a delusion would make and that no honest person would take advantage of."  *Id*.).

unconscionable even though the plaintiff contended that the arbitration terms, which required that each party be responsible for "its costs and expenses in presenting the dispute for arbitration" made it "economically infeasible for those like herself to challenge [the defendant] via arbitration," and that the provision put "borrowers such as herself at a disadvantage by making it economically difficult for borrowers to assert their rights").[8]  Plaintiffs' similar arguments that the Arbitration Agreement is unconscionable because it renders pursuit of individual small-value consumer claims economically infeasible should likewise be rejected in this case.[9]

Furthermore, Georgia law is clear that contractual fee-shifting provisions such as the one contained in the Arbitration Agreement are valid and enforceable.  *Hope & Assocs., Inc. v. Marvin M. Black Co.*, 205 Ga. App. 561, 562 (1992) ("There is no statutory prohibition on the right to contract for the recovery of attorneys' fees in arbitration proceedings.  If the parties contract for attorney's fees, that agreement will be enforced."); *King v. Brock*, 282 Ga. 56 (2007)

---

[8] The Court of Appeals of Georgia has held in two other recent cases that an arbitration agreement in a consumer contract was not unconscionable.  *Saturna v. Bickley Constr. Co.*, 252 Ga. App. 140, 141 (2001) (finding that the arbitration agreement is not unconscionable and enforcing it); *Love v. Money Tree, Inc.*, 267 Ga. App. 96 (2004) (same) (vacated and overruled on other grounds).

[9] In fact, the Plaintiffs could never challenge the Arbitration Agreement on the grounds that arbitration is not an economically viable basis for them to pursue their claims.  SunTrust has stipulated and agreed that it will not request any award of attorneys' fees or costs against the Plaintiffs or present any evidence of such attorneys' fees and costs if the claims the Plaintiffs have raised in the Complaint are brought in arbitration.  SunTrust again renews its stipulation of such.  SunTrust's stipulation disposes of any cost-based unconscionability argument.  *See Anders v. Hometown Mortg. Servs., Inc.,* 346 F.3d 1024, 1028-29 (11th Cir. 2003) (finding that, because defendant agreed to bear the administrative fees which plaintiff would otherwise be required to pay at the institution of the arbitration action, plaintiff did not meet his burden of demonstrating that arbitration would be prohibitively expensive for him); *Roberson v. Clear Channel Broad., Inc.*, 144 F. Supp. 2d 1371, 1373-74 (S.D. Fla. 2001) (finding that, because defendant agreed to pay "any and all deposits, fees and expenses imposed by the AAA" and agreed not to seek reimbursement of those filing fees, plaintiff cannot meet her burden of showing the likelihood of incurring such costs under *Green Tree*).

(enforcing a prevailing party provision under Georgia law); *Dan J. Sheehan Co. v. McCrory Constr. Co.*, 284 Ga. App. 159 (2007) (same); *Floyd v. Logisicare, Inc.*, 255 Ga. App. 702 (2002) (same); *Musnick v. King Motor Co. of Ft. Lauderdale*, 325 F.3d 1255 (11th Cir. 2003) (enforcing a prevailing party provision in an arbitration agreement under Georgia law); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S.Ct. 1758, 1773-74 (2010) (observing that parties are "generally free to structure their arbitration agreements as they see fit"). The fee-shifting provision cannot be deemed unconscionable merely because it is included in an arbitration contract. *Triad Health Mgmt. of Ga. III, LLC v. Johnson,* 298 Ga. App. 204, 209 (2009) (holding that only generally applicable contract defenses may invalidate a contract to which the FAA applies).

Because no Georgia law holds that either a class action waiver provision or a fee shifting provision renders an arbitration agreement unconscionable, the Arbitration Agreement should be enforced and Plaintiffs should be compelled to arbitrate their claims individually.[10]

### 2. The Eleventh Circuit's Holding in *Dale v. Comcast* Is No Basis For Finding The Arbitration Agreement Unconscionable.

The only cases applying Georgia law in which arbitration clauses with class action waiver provisions have been found unconscionable are cases following the Eleventh Circuit's decision in *Dale v. Comcast Corp*, 498 F.3d 1216 (11th Cir. 2007). Dale was decided before *Concepcion*, and its holding is inconsistent with the Supreme Court's holding in *Concepcion*.

---

[10] Any argument that class action waivers are per se unconscionable under Georgia law because they are against public policy must fail. In enacting the Georgia Fair Business Practices Act, the Georgia legislature expressly prohibited consumer class actions. O.C.G.A. § 10-1-399(a) ("A person who suffers injury or damages . . . . as a result of consumer acts or practices . . . may bring an action individually, but not in a representative capacity.") It is therefore implausible that an arbitration provision excluding class-wide relief is against Georgia public policy. *See Honig* 537 F. Supp. 2d at 1289 ("It is inconceivable that precluding class-wide relief is against public policy when the Georgia legislature expressly excluded this avenue of relief . . . .")

However, even if the Court finds that *Dale* continues to be good law after *Concepcion*, SunTrust's Arbitration Agreement should be enforced.  The alleged flaws of the arbitration agreement at issue in *Dale* are not present in SunTrust's Arbitration Agreement.  In fact, under the reasoning of *Dale*, the Court should reject Plaintiffs' substantive unconscionability arguments.

In *Dale*, the Court held that, under the particular facts of the case presented, a class action waiver effectively precluded customers of the defendant, Comcast, from suing Comcast for certain violations of the Cable Act alleged by the plaintiffs.  After noting that the total amount of damages at issue for each named plaintiff was only $10.56, the Court found that the cost of vindicating individual subscribers' claims, when compared to their potential recovery, was too great.  *Id.* at 1224.  In doing so, the Court found that individual subscribers would face difficulties in retaining counsel to bring individual claims in arbitration because the particular claims at issue would not allow them to automatically or likely recover their attorneys' fees if they prevailed:

> [B]ecause the Cable Act does not provide for the recovery of attorneys' fees or related costs for the violations alleged by the subscribers, and because state law allows fees and costs to be awarded only where bad faith is shown, it will be difficult for a single subscriber to obtain representation.

*Id.* at 1224.  "Corporations," the Court concluded, "should not be permitted to use class action waivers as a means to exculpate themselves from liability for small-value claims."[11]  *Id.*  For all

---

[11] In *Stolt-Nielsen,* the Supreme Court refused to allow public policy in favor of class actions to be used as a basis for refusing to enforce an agreement to arbitrate as written.  Specifically, in *Stolt-Neilsen*, the Court held that parties who had agreed to arbitration but had not agreed to class arbitration could not be forced to submit their dispute to class arbitration on the basis that public policy favored class arbitration.  130 S. Ct. at 1775.  Instead, the Supreme Court emphasized that when "enforcing an agreement to arbitrate or construing an arbitration clause, courts … must 'give effect to the contractual rights and expectations of the parties'" and that "'the parties' intentions control.'"  *Id*. at 1773-74 (citations omitted).  Following this reasoning, the Arbitration

these reasons, the *Dale* Court held the arbitration provision at issue substantively

unconscionable.[12]

Unlike in *Dale*, enforcement of the Arbitration Agreement in this case will not allow

SunTrust to engage in market behavior that may be unlawful.  The Arbitration Agreement

provides:

---

Agreement at issue here cannot be declared unenforceable as written merely because it is
inconsistent with perceived public policy favoring class actions for the prosecution of small
claims.

[12] The Eleventh Circuit recently clarified that when reviewing the enforceability of an arbitration
clause and looking to determine if a party has the ability to recover attorneys' fees, a court must
look to what claims would be available to the party at the time that it entered into the arbitration
agreement, not the claims actually brought at the time the lawsuit is filed.  In the case of
*Cappuccitti*, 623 F.3d 1118, the plaintiff filed a class action lawsuit alleging claims of money
had and received, unjust enrichment and a declaratory judgment related to an early cancellation
fee that the defendant charged him, which plaintiff alleged was illegal.  The plaintiff claimed that
because none of the claims that he pled in his complaint allowed for automatic or likely
attorneys' fees, the arbitration agreement, which contained a class action waiver, was
unconscionable under the reasoning of *Dale*.  The Eleventh Circuit disagreed and held that under
Georgia law, a finding of unconscionability must be based on "the circumstances existing at the
time" the arbitration agreement was entered into.  *Id.* at 1126.  The Court determined that when
the agreement was entered into, the plaintiff had available to him a claim under Georgia's Fair
Business Practices Act ("FBPA") and that such a claim allowed a prevailing plaintiff to recover
his attorneys' fees and costs.  *Id.* at 1126-27.  Because that claim was available to the plaintiff,
the arbitration agreement could not be unconscionable even if the plaintiff and his attorney later
decided to not bring such a FBPA claim.  *Id.* at 1127.  In the present case, Plaintiff would
automatically be entitled to his attorneys' fees based on the fee-shifting provision in the
Arbitration Agreement.  However, if the Arbitration Agreement did not contain the fee-shifting
provision or that provision was found unenforceable, attorneys' fees would still be available to
Plaintiffs.  Like the plaintiff in *Cappuccitti*, Plaintiffs could have brought their claims as FBPA
claims.  *Id.* at 1125-1126 (explaining that claim that defendants fees were "unfair" or "deceptive"
could have been brought as an FBPA claim); *see* Complaint [Buffington Dkt. No. 1] at Ex. B, ¶ 8
("SunTrust abuses its discretion and assesses charges in an unfair manner that is harmful to the
interest of the consumer."), ¶ 10 ("The charges assessed by SunTrust on the Buffingtons'
checking account provide repeated examples of SunTrust's unfair and improper practices."), ¶ 13
("SunTrust engages in these unfair, deceptive, and fraudulent practices …."), and ¶ 31
("Defendant wrongfully took possession of such funds through its unfair and bad faith
practices.").)  Further, other plaintiffs who have alleged similar factual allegations related to the
posting order of transactions have brought other claims that would allow automatic attorney's
fees if they prevailed, such as RICO.  The Plaintiffs in this case have such claims available to
them.

> The prevailing party shall be entitled to an award of the costs and expenses of the arbitration including an award of reasonable attorneys' fees for any Claim(s) in which the party has prevailed, except as otherwise required by applicable law.

(Triplett Aff. at Ex. C at p. 24.)  Thus, the concern articulated in *Dale* – that individual plaintiffs with small claims could not obtain legal representation because they could not recover the costs and attorneys' fees involved – is not present in this case.  Unlike the arbitration provision at issue in *Dale*, the Arbitration Agreement provides an incentive (in the form of an award of attorneys' fees, costs and expenses) for an attorney to represent individuals such as Plaintiffs in the arbitration of alleged small claims against SunTrust.[13]

The attorneys' fees and expenses provision in the Arbitration Agreement distinguishes this case from the facts of *Dale* and aligns it with the facts of *Jenkins v. First Am. Cash Advance of Ga.*, *LLC*, 400 F.3d 868 (11th Cir. 2005), in which the Eleventh Circuit found that a class action waiver did not render an arbitration provision unconscionable under Georgia law.  In *Jenkins*, the plaintiff filed a class action lawsuit alleging that certain "payday" loan agreements violated Georgia's usury statutes and the Georgia Racketeer Influenced and Corrupt Organizations ("RICO") Act.  400 F.3d at 872-73.  In obtaining "payday" loans, the plaintiff signed arbitration agreements that included class action waiver provisions.  *Id.* at 870.  In accordance with those agreements, the defendant sought to compel arbitration of the plaintiff's claims.  *Id.* at 873.  The district court refused to do so finding the arbitration agreement unconscionable.  *Id.*

---

[13] Further, the requirement that, if a customer were to prevail, SunTrust would have to pay both damages to the customer and all of the customer's costs and expenses (which, under the claims brought, would be mandatory in arbitration, but not in litigation), alleviates any concern that enforcing the Arbitration Agreement would allow SunTrust "to engage in unchecked market behavior."

On appeal, the *Jenkins* Court held that neither the arbitration agreement nor the class action waiver contained therein was unconscionable under Georgia law.  *Id.* at 878, 880.  The Court found the district court's conclusion that the class action waiver would make it difficult for individual plaintiffs to obtain legal representation "unfounded."  *Id.* at 878.  The Court explained that the arbitration agreement at issue in the case permitted the arbitrator to award reasonable attorneys' fees and expenses to the prevailing party "if allowed by statute or applicable law" and further noted that, under Georgia RICO, the plaintiff could recover attorneys' fees and costs if she prevailed.  *Id.*  The *Jenkins* Court stated that "when the opportunity to recover attorneys' fees is available, lawyers will be willing to represent . . . debtors in arbitration."  *Id.*  The *Jenkins* Court therefore concluded that "precluding class action relief [would] not have the practical effect of immunizing [the defendants]" and "the inclusion of a class action waiver in the [a]rbitration [a]greements did not render those [a]greements substantively unconscionable."  *Id.*

As in *Jenkins*, Plaintiffs in this case will recover their attorneys' fees and costs if they prevail against SunTrust in arbitration.  The attorneys' fee provision in the Arbitration Agreement provides an incentive to attorneys to represent individual plaintiffs in pursuing their allegedly small claims against SunTrust and ensures that individual plaintiffs will be able to secure legal counsel.[14]  Thus, enforcement of the Arbitration Agreement will not have the

---

[14] In addition, if the Plaintiffs prevail on their conversion claim (a claim not brought by the plaintiff in *Dale*), bad faith will be presumed and they will be awarded attorneys' fees on that basis as well.  *DeKalb County v. McFarland*, 231 Ga. 649, 651, 203 S.E.2d 495, 499 (1974) (holding that "[e]very intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees"); *Honig,* 537 F. Supp. 2d at 1288 (same).  *See also Infinity Ins. Co. v. Martin*, 240 Ga. App. 609, 612, 524 S.E.2d 294, 296 (1999) (holding that "[t]he award of damages for the intentional tort of conversion alone is sufficient to support Martin's claims for expenses under the 'bad faith' prong of O.C.G.A. § 13-6-11").  Therefore, because the Plaintiffs are entitled to their attorneys' fees as part of an affirmative claim, the Arbitration Agreement is enforceable under a *Dale* analysis regardless of whether the Arbitration Agreement would also allow the Plaintiffs to recover their attorneys'

practical effect of shielding SunTrust from lawsuits for the misconduct alleged in this case,[15] and

the inclusion of a class action waiver in the Arbitration Agreement does not render the

Arbitration Agreement substantively unconscionable.

When the Eleventh Circuit issued its opinion in *Dale* it was careful to clarify that it was

not overruling its prior rulings finding arbitration agreements containing class action waivers not

unconscionable.[16]  Instead, the Eleventh Circuit explicitly held that "the enforceability of a

particular class action waiver in an arbitration agreement must be determined on a case-by-case

basis, considering the totality of the facts and circumstances."  *Id.* at 1224.  Because attorneys'

fees are available if Plaintiffs prevail on their claims in arbitration, the concerns articulated in

*Dale* are not present in this case and do not render the Arbitration Agreement unconscionable.

**E.**     **The Arbitration Agreement Is Not Procedurally Unconscionable.**

Plaintiffs' arguments that the Arbitration Agreement is unconscionable under Georgia

law fail for the additional reason that the Arbitration Agreement is not procedurally

unconscionable.  Georgia's unconscionability doctrine contemplates both substantive

unconscionability and procedural unconscionability.  *Cappuccitti v. DirecTV, Inc.*, 623 F.3d

1118, 1124 (11th Cir. 2010); *NEC Techs., Inc. v. Nelson*, 267 Ga. App. 390, 394 n. 6 (1996)

---

fees.  In fact, Plaintiffs have prayed for such "an award of all reasonable costs and attorneys' fees
incurred by Plaintiffs," demonstrating their belief that they would be entitled to such based on
the claims raised in this action.  (*See* Complaint [Buffington Dkt. No. 1] at Ex. B, p. 12).

[15] In addition, the Arbitration Agreement excludes claims brought by individuals against
SunTrust in small claims court.  (Triplett Aff. at Ex. C at p. 24.)  This provision of an
inexpensive venue for the resolution of small claims against SunTrust further undercuts any
argument that small claims against SunTrust will go unheard because the costs of bringing such
claims individually is prohibitively expensive.

[16] The Eleventh Circuit's three prior rulings were: *Caley*, 428 F.3d at 1378; *Jenkins*, 400 F.3d at
877-78; and *Randolph*, 244 F.3d at 819.  In each of these cases, the plaintiff would have been
able to recover his or her attorneys' fees and costs if she prevailed against the defendant.  *Dale*,
498 F.3d at 1221 (noting that *Caley*, *Jenkins* and *Randolph* all involved claims for which a
prevailing plaintiff could recover attorneys' fees and other costs).

("Research supports the statement . . . that [m]ost courts take a 'balancing approach' to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability.")

Although Plaintiffs have complained about the print and form of the Arbitration Agreement, Courts have consistently held that arbitration clauses are not unconscionable when they are printed in a font size no smaller than the underlying agreement in which they appear, even if they are not otherwise highlighted or called to the reader's attention.  *E.g., Iberia Credit Bureau Inc. v. Cingular Wireless LLC,* 379 F.3d 159 (5th Cir. 2004) (finding arbitration agreement was not unconscionable where the "arbitration clauses [were] not printed in type that [was] smaller than generally used in the rest of the contract"); *Bailey v. SunTrust Bank*, Civil Action No. 09-776 Section S, 2010 U.S. Dist. LEXIS 54617, at * 12 (E.D. La. May 18, 2010) (enforcing the same arbitration agreement at issue in this case and noting that it "is in the same size and font type as the rest of the terms of the Depository Account Agreement"); *Lomax v. Woodmen of the World Life Ins. Society*, 228 F. Supp. 2d 1360, 1364 (N.D. Ga. 2002).  Here, the Arbitration Agreement is presented in a font size *at least* the size of the other provisions of the Deposit Agreement.[17]  Accordingly, the print and form of the Arbitration Agreement do not render the agreement procedurally unconscionable.

Furthermore, under Georgia law, neither standard form contracts nor adhesion contracts are procedurally unconscionable *per se*.  *See Results Oriented*, 273 Ga. at 885 (citing *Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 365 (S.C. 2001) for holding that an "arbitration clause is

---

[17] The Eleventh Circuit has previously characterized an arbitration provision in an agreement that used bold typeface and capital letters (similar to the Arbitration Agreement here) as "conspicuous."  *Jenkins*, 400 F.3d at 872.

not unconscionable as an adhesion contract"); *Caley*, 428 F.3d at 1377-78 (citing *Rushing v. Gold Kist*, 256 Ga. App. 115, 119-20 (2002) and finding that Georgia courts have enforced standard-form arbitration agreements in employment relationships); *Realty Lenders, Inc. v. Levine*, 286 Ga. App. 326, 329 (2007) (explaining that "the fact that a contract is adhesive does not, standing alone, render the contract unenforceable.")  As the Seventh Circuit has explained, "Standard-form agreements are a fact of life, and given § 2 of the Federal Arbitration Act, 9 U.S.C. § 2, arbitration provisions in these contracts must be enforced unless states would refuse to enforce all off-the-shelf package deals."  *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004); *see also Mathis v. Orkin Exterminating Co.*, 254 Ga. App. 335, 337 (2002) (pointing out that "contracts of adhesion are enforceable in Georgia"); *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1321 (S.D. Fla. 2006) (declining to hold that adhesion contracts are necessarily unconscionable).  Even the Supreme Court has recognized that standard-form agreements are a necessary part of modern commerce.  In upholding the arbitration agreement at issue in *Concepcion*, the Court noted that "the times in which consumer contracts were anything other than adhesive are long past."  *AT&T Mobility*, 131 S.Ct. at 1750; *see also Day*, 2011 U.S. Dist. LEXIS 49231, *21 (in light of *Concepcion*, claim of unconscionability "is not meaningfully enhanced by characterizing the Client Agreement as an adhesion contract"). Thus, the mere fact that the Deposit Agreement is a form contract does not render it procedurally unconscionable.

## IV.   <u>CONCLUSION</u>

For all the reasons stated above, the Court should grant SunTrust's Renewed Motion to Compel Arbitration and Stay Action and require Plaintiffs to individually arbitrate all of their claims against SunTrust.

Respectfully submitted this 6th day of June, 2011.

/s/ Lynette Eaddy Smith
William N. Withrow, Jr.
Georgia Bar No. 772350
Lynette Eaddy Smith
Georgia Bar No. 236841
Lindsey B. Mann
Georgia Bar No. 431819

TROUTMAN SANDERS LLP
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA  30308-2216
Phone: (404) 885-3000
Fax:     (404) 885-3990

*Counsel for Defendant SunTrust Banks*

## CERTIFICATE OF COMPLIANCE WITH S.D. FLA. L.R. 7.1(a)(3)(A)

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with Plaintiffs' counsel in a good faith effort to resolve the issues but has been unable to resolve the issues.

This 6th day of June, 2011.

/s/ Lynette Eaddy Smith
William N. Withrow, Jr.
Georgia Bar No. 772350
Lynette Eaddy Smith
Georgia Bar No. 236841
Lindsey B. Mann
Georgia Bar No. 431819

TROUTMAN SANDERS LLP
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA  30308-2216
Phone: (404) 885-3000
Fax:     (404) 885-3990

*Counsel for Defendant SunTrust Bank*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2011, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification to all attorneys of record.

/s/ Lynette Eaddy Smith
William N. Withrow, Jr.
Georgia Bar No. 772350
Lynette Eaddy Smith
Georgia Bar No. 236841
Lindsey B. Mann
Georgia Bar No. 431819

TROUTMAN SANDERS LLP
600 Peachtree Street, N.E., Suite 5200
Atlanta, GA  30308-2216
Phone: (404) 885-3000
Fax:     (404) 885-3990

*Counsel for Defendant SunTrust Bank*