# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

---

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:

*Brown v. U.S. Bank, N.A.*
S.D. Fla. Case No. 1:10-24147-JLK
E.D. Wash. Case No. 2:10-00356-RMP

---

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO DEFER RULING ON DEFENDANT U.S. BANK, N.A.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS PENDING COMPLETION OF LIMITED ARBITRATION-RELATED DISCOVERY

Plaintiffs Lori and Mitchell Brown ("Plaintiffs") respectfully submit this reply in support of their Motion to Defer Ruling on Defendant U.S. Bank, National Association's ("Defendant" or "U.S. Bank") Motion to Compel Arbitration and Stay Proceedings ("Arbitration Motion").[1]

## I.      INTRODUCTION

On June 3, 2011, this Court granted plaintiffs' motions to defer rulings on arbitration motions filed by JPMorgan Chase Bank, N.A. ("JPMorgan"), Wachovia Bank, N.A. ("Wachovia"), and Wells Fargo Bank, N.A. ("Wells Fargo") (collectively the "Other First Tranche Bank Defendants") (the "First Tranche Arbitration Discovery Order"). **[DE # 1576]**.

---

[1] Pursuant to Local Rule 7.1(c), Plaintiffs' Reply should have been filed on June 13, 2011, but mistakenly was not. Counsel for Defendant has consented to Plaintiffs' filing this Reply one day late.

The Court soundly concluded that discovery is necessary to decide defendants' arbitration motions.[2] *Id.* The reasons the Court found compelling to permit discovery as to the other First Tranche Bank Defendants apply with equal force here. Further, in this case, as Plaintiffs established they never received the agreements in which U.S. Bank's arbitration clause is contained, the issue of contract formation is at issue as to Defendant's arbitration provision. Accordingly, Plaintiffs respectfully request discovery not only on the matters in the First Tranche Arbitration Discovery Order but also as to contract formation and procedural unconscionability.

## II.    ARGUMENT

This Court's finding  in the First Tranche Arbitration Discovery Order that a "developed, complete record is essential" to adjudicating defendants' arbitration motions applies with equal force to Plaintiffs' motion here. *See* **[DE # 1576]**. Given the facts and circumstances here, however, Plaintiffs also seek discovery concerning contract formation, procedural and substantive unconscionability, and bias of the arbitrator – all issues that go to the very heart of whether they agreed to arbitrate and whether the arbitration provisions should be enforced by this Court.

### A.    Plaintiffs Are Entitled to Arbitration-Related Discovery

U.S. Bank erroneously asserts that courts view pre-arbitration discovery with suspicion, relying on caselaw that pertained to the scope of discovery in arbitration proceedings, not pre-arbitration discovery. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (discussing whether arbitration was inconsistent with the ADEA due to limited discovery); *Caley v. Gulfstream Aero. Corp.*, 428 F.3d 1359, 1378 (11th Cir. Ga. 2005) (rejecting a challenge to

---

[2] On June 6, 2011, Plaintiffs' counsel requested that U.S. Bank stipulate to discovery permitted in the Court's First Tranche Arbitration Discovery Order.  On June 8, 2011, U.S. Bank's counsel advised Plaintiffs' counsel it would not enter into a stipulation permitting arbitration-related discovery.

defendant's arbitration clause under Georgia law because it limited depositions in arbitration proceedings).  Further, *Livingston v. Associates Fin., Inc.*, 2001 WL 709465 (N.D. Ill. June 25, 2001), actually supports Plaintiffs' position because the court ***permitted, not denied, arbitration-related discovery*** so that plaintiffs "at least be given a fighting chance to prove prohibitive costs with respect to the specific statutory right at issue." *Id.* at *2.

U.S. Bank's other authorities are readily distinguishable.  For example, in *Jackson v. Cintas Corp.*, 425 F.3d 1313 (11th Cir. 2005), the court declined to disturb the district court's refusal to permit discovery as to whether the arbitration agreement lacked consideration where the plaintiff had a "misunderstanding of the concept of consideration" and her discovery requests thus veered far from the mark.  *Id.* at 1318.  Here, in contrast, U.S. Bank cannot seriously dispute that issues of contract formation, the prohibitive costs of individual arbitration, and the bias of the AAA are all probative as to whether its arbitration provisions are binding, valid and enforceable.[3]  Thus, Plaintiffs' discovery requests are reasonable and should be allowed.

U.S. Bank does not contest this Court's authority to permit arbitration-related discovery to ensure a fully developed record prior to a ruling on its Arbitration Motion.  As in plaintiffs' motions to defer rulings as to Wachovia, Wells Fargo, and JPMorgan Chase, "[g]iven the complexity of the legal and factual issues; the astronomical size of the potential class; and the critical impact the decision on Defendants' Motions to Dismiss will have on the future course of this litigation; . . . a fully developed, complete record is essential."  **[DE # 1576]**.  Plaintiffs should be provided the opportunity to conduct the limited discovery that it has requested.

### 1.  Discovery as to Contract Formation

---

[3] *Gates v. Veravest Invs., Inc.*, 2004 U.S. Dist. LEXIS 10104 (D. Or. May 25, 2004), is distinguishable because plaintiff in that case did not challenge contract formation or the unconscionability of defendant's arbitration provision but rather vaguely "his relationship with defendants." *Id.* at *29.

One difference between the instant motion and the other First Tranche Bank Defendants is the parties' factual dispute whether Plaintiffs were provided with Deposit Agreements.  In fact, to support its Motion for Arbitration, U.S. Bank submitted the declaration of Brent Farka stating that it provided Plaintiffs with copies, but Plaintiffs adamantly disagree.  Plaintiffs thus served a deposition notice to cross-examine Mr. Farka on his declaration and accompanying exhibits and other discovery requests relating to the parties' communications.  [**DE # 1491-3 to 6, Exs. C-F**].

U.S. Bank argues that Plaintiffs should not be given the opportunity to take discovery on contract formation because it says they are bound by the arbitration clause as a matter of law. [**DE # 1581 at p. 2**].  U.S. Bank is wrong.  Plaintiffs are entitled to take discovery as to whether they agreed to arbitrate this dispute under applicable Washington law.  *See, e.g.*, *Weiss v. Lonnquist*, 153 Wn. App. 502, 515 (Wash. Ct. App. 2009) ("Under Washington law, [f]or a contract to exist there must be mutual assent to its essential terms.") (citation and internal quotation marks omitted); *see, e.g.*, *id.* (reviewing evidence in the record concerning whether the parties mutually assented to arbitration agreement and concluding the parties had not so agreed).

Indeed, this case is on all fours with *Carlsen v. Global Client Solutions, LLC*, 2010 U.S. Dist. LEXIS 29255 (E.D. Wash. Mar. 4, 2010), *aff'd*, 2011 U.S. App. LEXIS 5829 (9th Cir. Mar. 21, 2011).  In that case, the court found the plaintiff was ***not*** legally bound by an arbitration agreement under Washington law when the arbitration clause appeared in a separate agreement from the one plaintiffs signed, and they were not provided the agreement containing the arbitration clause when they signed their account agreements.  *Id.* at *7.  There, too, the defendant contended that the plaintiff was bound and presumptively knew the contents of their contract.  *Id.* at *9-*10.  The court squarely rejected this argument, aptly observing:

> That is not the case, however, when a person is not presented with the contract and all of its terms at the time he or she signs it.  ***It goes without saying that a***

> ***person should at least have an opportunity to review the terms of a contract before deciding to execute a document which binds him or her to those terms.*** *.  .  . *  The sentence in the "Special Purpose Account Application" which reads "I acknowledge that I have received a copy of the Agreement; that I have read and understand it; that the Agreement is fully incorporated into this Application by reference; and that I am bound by all of its terms and conditions," is of no consequence considering the "Account Agreement and Disclosure Statement" had not been received at that time.

*Id.* at *10 (emphasis added).  In *Carlsen*, the defendant also relied on *Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 829 (Wash. Ct. App. 2001).  However, the court readily distinguished *Tjart* because "the court [had] enforced an arbitration clause which was actually part of the application the plaintiff signed."  *Id.* at *10-*11.  In contrast, in *Carlsen*, the arbitration clause was not part of the application that the plaintiffs signed but a separate agreement that "did not accompany the application, notwithstanding the representation to the contrary in the applications."  *Id.*  The agreement containing the arbitration clause was not received by the plaintiffs "until later."  *Id.* As such, the plaintiffs had not agreed to arbitrate their claims against the defendants.[4]

Here, too, the signature cards that Plaintiffs executed were in a separate document from the Deposit Agreement which contained the arbitration clause.  The signature cards neither mentioned that agreement nor the arbitration provision specifically.  Moreover, Plaintiffs were never provided a copy of the Deposit Agreement, notwithstanding the representation to the contrary on the signature card.  *See* Declarations of Lori & Mitchell Brown **[DE # 1491-1 & 2]**. U.S. Bank has submitted an affidavit of its Vice President Farka stating that it would have provided a copy to Plaintiffs in the ordinary course.  **[DE # 1411]**.  Thus, Plaintiffs should have an opportunity to cross-examine Mr. Farka to prove that they did not receive a Deposit Agreement and did not agree to arbitrate with U.S. Bank.

---

[4] *Rivera v. AT&T Corp.*, 420 F. Supp. 2d 1312, 1320-21 (S.D. Fla. 2006), cited by U.S. Bank, was not decided on the basis of Washington law and is distinguishable in any event because there, the defendant mailed a copy of the agreement to the plaintiff.  *See id.* at 1320.

U.S. Bank also contends Plaintiffs cannot disclaim the existence of their Deposit Agreement. U.S. misunderstands Plaintiffs' argument. Plaintiffs are not challenging the existence of any contract, but rather are asserting that they did not knowingly assent to an agreement to arbitrate their claims. Such an argument is not at odds with Plaintiffs' breach of contract claims. *See Carlsen*, 2010 U.S. Dist. LEXIS 29255, at *8-*9 (rejecting argument that because plaintiffs entered into agreements with defendants, they also assented to the arbitration clause).

Finally, U.S. Bank is incorrect that none of Plaintiffs' discovery requests relate to the parties' formation of the arbitration agreement. However, as previously mentioned, Plaintiffs served a deposition notice upon Mr. Farka to cross-examine him on, amongst other things, his statement that they would have received a Deposit Agreement. **[DE # 1491-6, Ex. F]**. Further, Plaintiffs propounded document requests and written discovery as to U.S. Bank's agreements with non-business customers such as Plaintiffs; their communications concerning its arbitration policy; and all communications with Plaintiffs concerning the arbitration of disputes. *See, e.g.*, [**DE # 1491-4 at p.7; 1491-3 at pp. 7-8; 1491-5 at p.3**]. As such, Plaintiffs have clearly propounded discovery relating to issues of formation as to the agreement to arbitrate.

    **2.  Discovery as to Unconscionability**

        **a.  U.S. Bank's Argument Concerning Its Purported Delegation Provision Should Be Stricken.**

U.S. Bank attempts to avoid the First Tranche Arbitration Discovery Order by asserting the Court cannot determine the enforceability of its arbitration clause. **[DE # 1581 at pp. 3-4]**. However, U.S. Bank's delegation argument is subject to a pending motion to strike and should be stricken from its opposition brief here. **[DE # 1545]**. As explained in Plaintiffs' motion to strike papers, U.S. Bank tried to sandbag Plaintiffs by arguing in its Arbitration Motion that this

Court would determine whether its arbitration provisions were valid and not unconscionable and then arguing to the contrary on reply that such determinations were reserved for the arbitrator. *Id.* Under Local Rule 7.1(C), its argument is untimely and thus waived. *Id.* Plaintiffs have not yet had an opportunity to respond to U.S. Bank's argument, and U.S. Bank's second attempt to put its untimely argument before this Court in order to preclude Plaintiffs from obtaining relief is patently unfair and should be rejected out of hand. *Id.*

Even if the Court does not strike U.S. Bank's untimely argument, this Court will still need to decide whether U.S. Bank's purported delegation provision constitutes a valid, binding agreement to arbitrate. *See Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2778 (2010) ("If a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."); *see, e.g.*, *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1311-12 (S.D. Fla. 2009) (defendant failed to provide evidence that "clearly and unmistakably" showed the parties intended to submit gateway issues solely to an arbitrator). After full briefing, this Court may decide that the purported delegation provision itself is invalid or unconscionable. *See id.* Such questions are proper subjects for pre-arbitration discovery. *See First Options v. Kaplan*, 514 U.S. 938, 946 (1995) ("On the record before us, First Options cannot show that the Kaplans clearly agreed to have the arbitrators decide (i. e., to arbitrate) the question of arbitrability.").

If the Court does not strike U.S. Bank's delegation argument, Plaintiffs should be given an opportunity to respond and conduct discovery as to formation and whether any such delegation provision is unconscionable. *See id.* As Plaintiffs will explain if the Court does not strike this argument and/or grants them a sur-reply to Defendant's Arbitration Motion, U.S. Bank's purported delegation provision is neither valid nor enforceable for myriad reasons.

However, the Court should make this determination until there is a fully-developed record. As such, if it does not strike U.S. Bank's delegation argument, Plaintiffs should be permitted to conduct discovery as to this issue as well.

> **b.** ***AT&T Mobility LLC v. Concepcion* Did Not Overrule the Well-Established "Prohibitive Cost" Defense to Arbitration.**

U.S. Bank criticizes this Court's First Tranche Arbitration Discovery Order for allowing discovery as to the cost prohibitive nature of individual arbitration against the Other First Tranche Bank Defendants. Specifically, "U.S. Bank submits that the First Tranche Arbitration Order is in direct conflict with *Concepcion*" in permitting this discovery. **[DE # 1581 at p. 5]**. U.S. Bank's criticism of this Court's Order is misguided.

Indeed, U.S. Bank confuses the narrow ruling in *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct. 1740 (2011), that the Federal Arbitration Act ("FAA") preempted California's "*Discover Bank*" *per se* rule against class action bans in arbitration clauses, *id.* at 1753, with the decade-old "prohibitive cost" defense to arbitration which remains good law under the Supreme Court's decision in *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). *See Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 462 (Wash. Ct. App. 2002) ("Green Tree allows a 'prohibitive cost' defense to arbitration."). *Concepcion* neither concerned the "prohibitive cost" defense nor overturned *Green Tree*. To the contrary, the 5-4 majority opinion emphasized that plaintiffs' claims in *Concepcion* were "unlikely to go unresolved" if individualized arbitration was compelled due to the consumer-friendly incentives in AT&T's arbitration clause. *Id.* at 1753.

To be clear, Plaintiffs do not argue U.S. Bank's arbitration clause is substantively unconscionable simply because it contains a class action ban. Rather, Plaintiffs seek to conduct discovery on the issue as to whether, ***in this case***, individual arbitration of their claims would be

cost prohibitive.  And, under Washington law, they are entitled to this discovery prior to a determination on the merits of their contentions of unconscionability.  *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 354 (Wash. 2004) (remanding because plaintiffs "should have the opportunity to prove that the costs of arbitration would prohibit him from vindicating his claims.").

Indeed, "[w]ithout some discovery, it is not clear how a claimant could present information on the costs of arbitration as required by Green Tree . . . ."  *Blair v. Scott Spec. Gases*, 283 F.3d 595, 610 (3d Cir. 2002).  Such discovery relates not only to Plaintiffs' ability to pay but also "the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims."  *Id.* (relying upon *Bradford,* 238 F.3d at 556).  As noted in the *Livingston* case cited by Defendant, "it seems axiomatic that, if the Supreme Court places a burden of proof . . . on a party, then that party must be given an opportunity to pursue discovery related to the issue that it has the burden to prove."  2001 WL 709465, at *2, *cited in* **[DE # 1581 at p. 2]**.

As set forth in their opening papers, Plaintiffs will first conduct discovery before providing supplemental submissions on the cost prohibitive nature of arbitration and substantive unconscionability here, including but not limited to, the amount of arbitration fees, expenses, attorneys' fees and expert fees that they are likely to incur and the likelihood of recovering such fees and expenses through the arbitration procedure.[5]  Once Plaintiffs have a reasonable opportunity to take discovery and adduce information as to the likely costs of arbitration, U.S. Bank must present "contrary offsetting evidence to enforce arbitration."  *Id.*

---

[5] As noted in their response to U.S. Bank's Arbitration Motion, Plaintiffs reserve their rights to assert other bases of substantive unconscionability after discovery.  **[DE # 1491 at p. 11 n.8]**.

U.S. Bank contends Plaintiffs are not entitled to discovery on the cost prohibitive nature of arbitration because they have not proffered evidence about their inability to pay.[6] **[DE # 1581 at p. 5]**. However, U.S. Bank puts the cart before the horse. How could Plaintiffs aver they lack the ability to pay costs that are yet unknown? Plaintiffs should be permitted discovery as to the likely costs of arbitration before submitting affidavits as to their inability to pay such costs.

U.S. Bank also argues that discovery is not needed as to the costs of arbitration because it is publicly available. **[DE # 1581 at p. 6]**. However, courts have found such "generic information is not enough" to show excessive costs. *Livingston*, 2001 WL 709465, at *2. Moreover, there are factual issues that must be resolved before a decision as to the likely costs of arbitration. For example, the Deposit Agreement is silent as to payment of AAA's administrative fees, arbitrator compensation and expenses, reporting services, and hearing room rentals, which Plaintiffs must bear under the AAA's Commercial Arbitration Rules. *See* http://www.adr.org/sp.asp?id=22440#R50 ("All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, ***shall be borne equally by the parties***, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.") (emphasis added). Thus, it is unclear without more information whether Plaintiffs would need to pay arbitration fees and expenses larger than their individual claims or than they would pay to bring their case in court.

---

[6] In citing *Gillespie v. Colonial Life & Accident Ins. Co.*, 2009 U.S. Dist. LEXIS 26310 (W.D. Pa. Mar. 30, 2009), U.S. Bank fails to disclose the court granted the plaintiff's motion for reconsideration. *See Gillespie v. Colonial Life & Accident Ins. Co.*, 2009 U.S. Dist. LEXIS 35666 (W.D. Pa. Apr. 28, 2009). Further, the court found that plaintiff possessed all the information she needed to prove whether the costs were prohibitive. *Id.* Here, in contrast, Plaintiffs do not possess all the information needed about the costs they are likely to incur for arbitration in this case and thus need discovery for same.

Further, as to filing and hearing fees, it is unclear which version of the Deposit Agreements applies, thus calling into question the amount that U.S. Bank will advance to consumers, and the likelihood that the arbitrator would ultimately decide that Plaintiffs must pay those fees anyway. **[DE #1491 at pp. 2 n.3, 4]**.  It is not even clear that the Supplementary Procedures for Consumer-Related Disputes will apply as the rules state: "The AAA will have the discretion to apply or not to apply the Supplementary Procedures . . . ."  *See* http://www.adr.org/sp.asp?id=22440#M-15.  If the AAA decides not to apply the Supplementary Procedures, the filing fees would exceed $1,000.  *Id.*  Given these ambiguities, Plaintiffs should be permitted to pin down the actual likely costs of arbitration through discovery.

Significantly, the AAA has a moratorium on consumer finance matters such as this.  *See* **[DE # 1491 at p. 11]**.  As such, it is also unclear whether AAA will take this matter for arbitration.  As such, additional factual and legal issues surrounding AAA's availability must be resolved prior to deciding the likely costs of arbitration.

Moreover, Plaintiffs will seek other information as to the prohibitive costs of arbitration.  For instance, Plaintiffs will seek discovery as whether their expert fees may be recovered in AAA arbitration.  And Plaintiffs will seek to adduce the cost of an expert to provide damages analyses as to their individual claims.  *See Nat'l Supermarkets Assoc. v. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.)*, 634 F.3d 187, 198 (2d Cir. 2011).

Finally, U.S. Bank's belated litigation position that it will not seek *its* attorneys' fees, and now in its reply brief costs from Plaintiffs, does not end the matter.  Indeed, this is only one aspect of the overall cost of arbitration.[7]  Moreover, the AAA rules provide that the arbitrator

---

[7] *Anders v. Hometown Mortg. Servs.*, 346 F.3d 1024, 1029 (11th Cir. 2003), is distinguishable because defendant stipulated to pay all costs "to make it fair" for the plaintiff.  Notably, some courts refuse to recognize such offers as an "after-the-fact offer" that is "treated as such."

may award such fees even in the absence of its request if authorized by the arbitration clause, as it is here.  *See* R-43 at http://www.adr.org/sp.asp?id=22440#M-15.  As such, *Musnick v. King Motor Co.*, 325 F.3d 1255 (11th Cir. 2003), is distinguishable because there the court found fees to be speculative where their award depended upon whether plaintiff won or lost, whereas here, the arbitrator has unfettered discretion to make fees and expenses awards regardless of outcome.  *Id.* at 1261.  This is why Plaintiffs' discovery as to the historical allocation of fees and arbitrator bias is essential to showing the likelihood of such fees and costs.

### 3.    Discovery as to Bias and Prior Results Relate to Their Claims

U.S. Bank argues that discovery as to U.S. Bank's relationship with the AAA and past results of consumer arbitrations are unrelated to Plaintiffs' claims.  **[DE # 1581 at p. 7]**.  Not so. Indeed, such information will demonstrate whether the AAA suffers from a lack of neutrality, as it has admitted in the course of the Congressional investigation, and thus may deprive Plaintiffs of a fair hearing.  *See* **[DE # 1491 at p. 12]**.  Moreover, the results of past consumer arbitrations with U.S. Bank will be probative of the costs Plaintiffs are likely to incur in this case and will help satisfy their burden under *Green Tree*.[8]  Finally, information as to U.S. Bank's mandatory arbitration clauses will likely show that Defendant imposed such terms upon Plaintiffs and other consumers precisely in order to deter claims and avoid liability for the types of claims at issue in

---

*Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 218 n. 2 (3d Cir. 2003).  They consider the terms of the arbitration provision as drafted.  *Id.*  This seems only fair as the defendant drafted the arbitration provision.  As the Sixth Circuit aptly put it: "Because the [defendant] drafted the arbitration agreement, the [defendant] is saddled with the consequences of the provision as drafted.  If the provision, as drafted, would deter potential litigants, then it is unenforceable, regardless of whether, in a particular case, the [defendant] agrees to pay a particular litigant's share of the fees and costs to avoid such a holding."  *Morrison v. Circuit City Stores*, 317 F.3d 646 (6th Cir. Ohio 2003), cited in Spinetti, 324 F.3d at 218 n.2.

[8] U.S. Bank's citation to *Livingston* is of limited help as the court's reference to "general statistical evidence" was made without explanation or reference to any specific category of discovery sought by plaintiffs that it deemed irrelevant.  2001 WL 709465, at *2.

this case.  Accordingly, Plaintiffs' discovery is directly relevant to factors to be considered by the Court as to the validity and unconscionability of U.S. Bank's arbitration provisions.

## III.    CONCLUSION

For the foregoing reasons, as well as those set forth in their opening papers and at oral argument, Plaintiffs respectfully submit that the Court should grant their motion in its entirety.

Dated: June 14, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 3855830
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on June 14, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596