UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION,

MDL No. 2036
_____/

THIS DOCUMENT RELATES TO:

*Eivet v. IBERIABANK*,
S.D. Fla. Case No. 1:10-CV-23790-JLK
_____/

## AFFIDAVIT OF THOMAS MEEKS

**STATE OF FLORIDA**        )

**COUNTY OF MIAMI-DADE** )

THOMAS J. MEEKS, Esq., being duly sworn, states as follows:

1. I am a shareholder of the law firm of Carlton Fields, P.A. in Miami, Florida and I am lead counsel for IBERIABANK in the above captioned matter, along with Aaron S. Weiss, Esq., also of Carlton Fields.

2. I submit this Affidavit in Support of IBERIABANK's Response in Opposition to the Verified Motion to Enjoin Copycat Case Under the All Writs Act and Incorporated Memorandum of Law (D.E. 1608) filed on June 14, 2011 by the PEC in MDL 2036.

3. In particular, I submit this affidavit to respond to the factual proffer made by the PEC in its motion with respect to the interactions between Mr. Weiss and me, on the one hand, and the PEC—particularly with lead coordinating counsel Robert C. Gilbert—on the other, since the *Eivet* action was filed.

19243376.1

4.      This action was commenced on October 22, 2010 in the Southern District of Florida as 10-cv-23790 and was immediately transferred to MDL 2036.

5.      I learned about the case on October 23, 2010 through a Notice of Electronic Filing on the Court's CM/ECF system, which I received for all filings in all of the cases in MDL 2036, as I had previously entered an appearance on behalf of another defendant in the MDL.  Later that morning our firm alerted IBERIABANK, a client of Carlton Fields in other matters, about the action.  IBERIABANK's in house counsel indicated at the time that IBERIABANK had not been served with the summons and complaint.

6.      On October 26, 2010, Mr. Weiss and I conferred with Mr. Gilbert by telephone about a motion that we were proposing to file on behalf of another party that we represent in MDL 2036.  During that call we also discussed the propriety of that defendant (Fifth Third Bank) being placed in the Fourth Tranche, based on issues that were specific to that defendant.

7.      Towards the end of our October 26, 2010 telephone conversation with Mr. Gilbert, we asked him what his position was on whether a bank that had only been sued a few days before and, as far as we were aware, had not yet been served with a summons and complaint, should be placed in the Fourth Tranche.  Mr. Gilbert indicated that it sounded like we were talking about IBERIABANK.  We responded that he was correct and that although we did not have specific authority to speak for IBERIABANK at that point, we wanted to understand lead plaintiffs' counsel's position on whether it would be subject to the Fourth Tranche.

8.      I indicated that our position was that we needed additional information to evaluate IBERIABANK's potentially unique claims and defenses, and in particular whether claims against IBERIABANK might be subject to arbitration.  I specifically noted that our review of the claims against IBERIABANK and potential defenses was hampered by the fact that Plaintiff

Eivet's complaint contained no plaintiff-specific exhibits such as an account agreement, and that IBERIABANK was in the process of locating those documents for us.

9. During this initial conversation, I told Mr. Gilbert that Ms. Eivet, a Texas resident, had a substantial pleading problem, in that she sued IBERIABANK but it appeared that her banking relationship was solely with a Texas branch of IBERIABANK*fsb*, a federally chartered thrift, headquartered in Arkansas, with branches in Arkansas, Texas, and other states. IBERIABANK*fsb*, I explained to Mr. Gilbert, was a separate legal entity from IBERIABANK, a Louisiana state chartered bank that maintained operations in Florida, Louisiana, and other states.

10. In short, Ms. Eivet had sued the wrong bank. On October 20, 2010, the date Ms. Eivet's Complaint was filed, IBERIABANK*fsb* and IBERIABANK were separate entities operating under separate charters. On that date, IBERIABANK*fsb* had operations in only three states—Arkansas, Tennessee, and Texas—and IBERIABANK*fsb* did not have any operations in Florida. Gisela Eivet was not a customer of IBERIABANK on October 20, 2010, but rather was only a customer of IBERIABANK*fsb*.

11. After informing Mr. Gilbert about the pleading problem in the *Eivet* Complaint, I stated that our position was that IBERIABANK should be placed in the next tranche, presumably the not-yet-organized Fifth Tranche as opposed to the Fourth. Mr. Gilbert indicated in this October 26, 2010 telephone conversation that he anticipated a Fifth Tranche being put in place around Christmas 2010.

12. During the October 26, 2020 telephone conversation, I also asked Mr. Gilbert if he would like us to inquire about accepting service on behalf of IBERIABANK, as we were not aware whether IBERIABANK had been served. Mr. Gilbert indicated that he would confer with Mr. Schwartz with respect to whether IBERIABANK had been served and would be back in

19243376.1  3

touch with us on that issue. As it turned out, IBERIABANK was served the same day, October 26, 2010, a fact that we learned shortly after our telephone conversation with Mr. Gilbert.

13. On November 1, 2010, the Plaintiffs' Executive Committee and several other Defendants filed a Joint Motion for Entry of a Scheduling Order with respect to the Fourth Tranche. (D.E. 862). On the same day, the Plaintiffs' lead counsel and Defendants through Defendants' liaison counsel submitted a Joint Status Report in accordance with the Court's Order Setting Status Conference for November 4, 2010. (D.E. 864). This submission indicated that "other defendants that do not agree with the interim scheduling order, including Fifth Third Bank and IBERIABANK, plan to attend the November 4, 2010 Status Conference and will be prepared to address their positions with respect to entry of an interim scheduling order covering the transfer actions pending against it." *See* D.E. 64 at ¶ 3.

14. Mr. Weiss and I attended the November 4, 2010 Status Conference on behalf of IBERIABANK, but were not called upon to give our position. The statement in the plaintiffs' submission that IBERIABANK "disagrees" with the placement of the *Eivet* matter in the Fourth Tranche shows that the PEC's position was that IBERIABANK <u>should</u> be placed in the Fourth Tranche.

15. After the Court's November 4, 2010 Status Conference, the Court entered an interim Scheduling Order with respect to several cases placing them in what was now called the Fourth Tranche. The Court did not put IBERIABANK in that tranche.

16. On November 15, 2010, IBERIABANK filed an unopposed Motion for Extension to Respond to the Complaint for a period of fourteen (14) days through November 29, 2010. Plaintiffs' lead counsel Mr. Gilbert indicated that he agreed to this extension. The Court granted that motion. (D.E. 914).

19243376.1                                    4

17. On November 16, 2010, Mr. Weiss and I conferred with Mr. Gilbert regarding IBERIABANK's status in MDL 2036 in the *Eivet* case specifically. I suggested that Ms. Eivet could correct her pleading problem with respect to the defendant being IBERIABANK as opposed to IBERIABANK*fsb* by filing an amended complaint in lieu of extensive motion practice to achieve the same result.

18. I also told Mr. Gilbert that we had confirmed that IBERIABANK did not have an arbitration clause in its agreement and thus would not be raising an arbitration defense. We then stated that because we had resolved the issue of potential arbitration rights, IBERIABANK was amenable to becoming part of the Fourth Tranche which had been organized approximately two weeks before. Prior to the call, I sent Mr. Gilbert an email to discuss this issue, a copy of which is attached to this affidavit as Exhibit A. During the call, Mr. Gilbert indicated that he did not think adding IBERIABANK to the Fourth Tranche was feasible and indicated that the Plaintiffs' Executive Committee was at that time amending their complaints in the Fourth Tranche, and had a substantial workload related to that undertaking. Mr. Gilbert indicated that IBERIABANK would therefore be placed into the Fifth Tranche and indicated that he expected that a Scheduling Order for a Fifth Tranche would be submitted by the end of the year or shortly into 2011.

19. On approximately November 29, 2010, at my direction, Mr. Weiss contacted Mr. Gilbert to discuss an additional enlargement of time for IBERIABANK to respond to the Complaint. At this time, Mr. Gilbert informed us that he had inadvertently neglected to mention that Scheduling Order No. 1 (D.E. 59), which had been entered on September 14, 2009, provided that all existing deadlines and newly transferred actions were automatically suspended and stayed upon transfer to this Court pending the entry of a Scheduling Order applicable to such newly transferred actions. *See* (D.E. 59 at pps. 2-3). (In addition, Scheduling Order No. 1

provides that Plaintiffs' lead counsel shall provide a copy of that order and any other orders entered in the MDL to each newly added defendant, but I am certain that Mr. Gilbert's oversight was unintentional.) In any event, all counsel now recognized that IBERIABANK was under no present obligation to respond to the *Eivet* Complaint, and that it had been unnecessary for IBERIABANK to file its First Motion for Enlargement of Time. Accordingly, Mr. Gilbert and Mr. Weiss exchanged emails between November 30, 2010 and December 3, 2010 agreeing that IBERIABANK's time to respond to the complaint was subject to the stay and Scheduling Order No. 1.

20. During the last several months Mr. Weiss and I have generally discussed with Mr. Gilbert the proposed timing for the Fifth Tranche. However, the Fifth Tranche has not yet been formally organized.

21. Mr. Weiss and I called Mr. Gilbert on March 22, 2011, to advise him that IBERIABANK would be removing the *Sachar* case from the state court in Pulaski County, Arkansas to the federal court in the Eastern District of Arkansas and that IBERIABANK would be filing a notice of tag along to MDL 2036. We thought it was appropriate to alert Mr. Gilbert to the fact that this overdraft class action against IBERIABANK would be entering the federal system.

22. On June 3, 2011, at my direction, Mr. Weiss called Mr. Gilbert and advised him that IBERIABANK and the Plaintiffs in the *Sach*ar case had reached a settlement and were in the process of filing a motion for preliminary approval of settlement. Mr. Weiss called Mr. Gilbert approximately thirty minutes after the settlement documents were executed. We believed it was appropriate to alert Mr. Gilbert as soon as possible of this development.

provides that Plaintiffs' lead counsel shall provide a copy of that order and any other orders entered in the MDL to each newly added defendant, but I am certain that Mr. Gilbert's oversight was unintentional.) In any event, all counsel now recognized that IBERIABANK was under no present obligation to respond to the *Eivet* Complaint, and that it had been unnecessary for IBERIABANK to file its First Motion for Enlargement of Time. Accordingly, Mr. Gilbert and Mr. Weiss exchanged emails between November 30, 2010 and December 3, 2010 agreeing that IBERIABANK's time to respond to the complaint was subject to the stay and Scheduling Order No. 1.

20. During the last several months Mr. Weiss and I have generally discussed with Mr. Gilbert the proposed timing for the Fifth Tranche. However, the Fifth Tranche has not yet been formally organized.

21. Mr. Weiss and I called Mr. Gilbert on March 22, 2011, to advise him that IBERIABANK would be removing the *Sachar* case from the state court in Pulaski County, Arkansas to the federal court in the Eastern District of Arkansas and that IBERIABANK would be filing a notice of tag along to MDL 2036. We thought it was appropriate to alert Mr. Gilbert to the fact that this overdraft class action against IBERIABANK would be entering the federal system.

22. On June 3, 2011, at my direction, Mr. Weiss called Mr. Gilbert and advised him that IBERIABANK and the Plaintiffs in the *Sach*ar case had reached a settlement and were in the process of filing a motion for preliminary approval of settlement. Mr. Weiss called Mr. Gilbert approximately thirty minutes after the settlement documents were executed. We believed it was appropriate to alert Mr. Gilbert as soon as possible of this development.

23. The foregoing statements of fact are true to the best of my knowledge.

**FURTHER AFFIANT SAYETH NAUGHT.**

                                               */s/ Thomas J. Meeks*
                                               THOMAS J. MEEKS
                                               Florida Bar No. 314323

**SUBSCRIBED AND SWORN TO BEFORE ME** on June 27, 2011, by Thomas Meeks, who is personally known to me, to which witness my hand and official seal.

                                               */s/ Dawn Marie Washam*
                                               NOTARY PUBLIC
                                               In and For the State of Florida

[Notary Seal: DAWN MARIE WASHAM, Notary Public - State of Florida, My Comm. Expires Jul 16, 2014, Commission # EE 1308]

My Commission Expires:

Commission Number:

```
From: Meeks, Thomas J. <tmeeks@carltonfields.com>
To: Bobby Gilbert
Cc: Weiss, Aaron S. <aweiss@carltonfields.com>
Sent: Fri Nov 12 14:25:13 2010
Subject: Iberiabank
```

Bobby, I tried to reach you today.  Aaron and I would like to request a two week extension to respond to the complaint.  More important, however, we want to talk to you about an idea that might let Iberiabank be part of the fourth tranche after all, and resolve a pleading problem without excessive motion practice.  Let me know about the enlargement by email and let me know when you can talk next week.  I think you will like our proposal.

Thomas J. Meeks
Attorney At Law

Miami Tower
100 S.E. Second Street, Suite 4200
Miami, Florida  33131-2114

direct 305.530.4063
fax 305.530.0055
tmeeks@carltonfields.com <mailto:tmeeks@carltonfields.com> www.carltonfields.com <http://www.carltonfields.com> bio <http://www.carltonfields.com/tmeeks/>
vcard <http://www.carltonfields.com/attorneys/AttorneyVCard.aspx?id=0a46de55-6888-4497-b7b6-94285ded5011>

Confidential: This e-mail contains a communication protected by the attorney-client privilege or constitutes work product.  If you do not expect such a communication please delete this message without reading it or any attachment and then notify the sender of this inadvertent delivery.