# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Luquetta v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23432-JLK
C.D. Cal. Case No. CV09-6967-GHK

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

*Duval v. Citizens Financial Group, Inc.*
N.D. Ill. Case No. 10-cv-00533
S.D. Fla. Case No. 1:10-cv-21080-JLK

*Daniels v. Citizens Financial Group, Inc.*
D. Mass. Case No. 10-cv-10386
S.D. Fla. Case No. 1:10-cv-22014-JLK

*Blankenship v. RBS Citizens, N.A.*
D.R.I. Case No. 10-163S
S.D. Fla. Case No. 1:10-cv-22942-JLK

*Simmons v. Comerica, Inc.*
N.D. TX Case No. 3:10-cv-326
S.D. FL Case No. 1:10-cv-22958-JLK

*Dwyer v. TD Bank, N.A.*
D. Ma. Case No. 1:09-12118
S.D. Fla. Case No. 10-cv-20855-JLK

*Mascaro v. TD Bank, N.A.*
D.D.C. 1:10-cv-0040
S.D. Fla. Case No. 10-cv-21117-JLK

*Mosser v. TD Bank, N.A.*
E.D. Pa. 2:10-cv-00731
S.D. Fla. Case No. 10-cv-21386-JLK

*Mazzadra, et al v. TD Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-21870-JLK

### PLAINTIFFS' OPPOSITION TO MOTION, BASED ON RECENTLY DECIDED ELEVENTH CIRCUIT AUTHORITY, TO DISMISS ON GROUNDS OF PREEMPTION PURSUANT TO RULE 12(c) AND ON FURTHER RECONSIDERATION OF ITS EARLIER MOTION PURSUANT TO RULE 12(b)(6), OR, IN THE ALTERNATIVE, FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)

Plaintiffs' submit their opposition to JPMorgan Chase Bank, N.A.'s motion to dismiss on grounds of preemption and on further reconsideration of its earlier motion or, in the alternative, for § 1292(b) certification [**DE # 1484**], and the separate joinders filed by Union Bank [**DE #1509**], RBS Citizens, N.A. [**DE # 1521**], Comerica Bank [**DE # 1568**], and TD Bank, N.A. [**DE # 1575**].

### Introduction

The decision in *Baptista v. JPMorgan Chase Bank, N.A.*, -- F.3d --, 2011 WL 1772657 (11th Cir. May 11, 2011) ("*Baptista*"), supports, rather than undermines, this Court's holding that federal law does not displace Plaintiffs' state law contract, tort and consumer protection claims. *Baptista* involved none of these claims. Instead, the plaintiff in *Baptista* claimed that a Florida statute prohibited JPMorgan Chase Bank, N.A. ("Chase") from charging non-customers a check-cashing fee. The Florida statute at issue specifically targeted banking activity, *i.e.*, it prohibited banks from charging a fee to cash a check. The *Baptista* court held that the statute directly clashes with federal regulatory authority which permits banks to assess a check-cashing fee upon non-customers, like the plaintiff in *Baptista*, and thus dismissed the case on federal preemption grounds.

2

That is a far cry from the situation here. Plaintiffs do not challenge Defendants' ability to charge overdraft fees but, rather, challenge Defendants' bad faith use of a secret accounting trick designed to manufacture additional instances of overdraft fees. Unlike plaintiff Baptista, a non-Chase customer who asserted claims under a state statute targeted at banks, Plaintiffs here are actual bank customers to whom the Defendants owe contractual duties, duties they breached by imposing wrongful fees through bad faith conduct. Far from immunizing national banks from liability for this conduct, federal law itself condemns such a fee-maximizing posting process. Not surprisingly then, every court to have considered a preemption defense with respect to claims based on bad faith re-sequencing of debits has rejected the defense out-of-hand and allowed the claims to proceed, finding no conflict between any OCC regulation or advisory letter and state law claims of general application, like those brought here.

*Baptista* provides no basis for this Court to revisit its prior ruling rejecting preemption. Indeed, the Court rejected the very same argument the Defendants now raise, ostensibly in light of *Baptista,* but which they previously raised based on *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274 (6th Cir. 2009). In both *Baptista* and *Monroe,* plaintiffs challenged a bank's ability to charge a particular fee, and the claims did not implicate the relationship between a bank and its depositor customers. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1312-14 (S.D Fla. 2010) (King, J.) (distinguishing *Monroe*); *Gutierrez v. Wells Fargo Bank, N.A.*, 2010 WL 1233885, at *2 (N.D. Cal. Mar. 26, 2010) (distinguishing *Monroe* and stating that "[t]hese differences were also noted by Judge King in distinguishing *Monroe* from the types of claims alleged in this action"). Like the claims in *Monroe*, the claims in *Baptista* are plainly distinguishable from the claims here.

*Baptista* does not change the law, and this Court should stand by its prior ruling.

**Procedural Background**

On December 22, 2009, Defendants in the First Tranche cases moved to dismiss all state law claims on the ground that they were purportedly preempted by the National Bank Act ("NBA" or "Bank Act"). [**DE # 217**]. On March 11, 2010, this Court issued an omnibus ruling in which, among other things, it rejected the Defendants' preemption defense as improper or, at a minimum, premature. *See Checking Account Overdraft*, 694 F. Supp. 2d at 1310-14. [**DE # 305**]. The Court held that "the banks are not federally authorized to manipulate the transactions as alleged and therefore their claims are not preempted by federal law." *Id*. at 1311. Federal law, the Court added, "gives Defendant banks the right to charge overdraft fees, but it does not authorize banks to ignore general contract or tort law." *Id*. at 1313.

Defendants subsequently moved the Court to reconsider its preemption ruling or to certify the question for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). [**DE # 325, 326, 329**]. The Court denied those motions. [**DE # 625**]. The Court noted that its "preemption ruling cannot reasonably be disputed. To date, every court that has examined the issue of preemption in connection with debit card overdraft fees has found no preemption." *Id*. at 7.

On May 17, 2011, Defendant Chase filed a motion seeking reconsideration of the Court's preemption rulings or, in the alternative, an interlocutory appeal certification in light of the Eleventh Circuit's decision in *Baptista*. [**DE # 1484**]. Four other banks filed joinders in Chase's motion: Union Bank on May 20, 2011 [**DE # 1509**]; RBS Citizens, N.A. on May 24, 2011 [**DE # 1521**]; Comerica Bank on June 3, 2011 [**DE # 1568**]; and TD Bank, N.A., on June 3, 2011 [**DE # 1575**]. (collectively, "Defendants").

4

**Argument**

I.      **Reconsideration of the Court's Preemption Ruling Is Unwarranted.**

There is no basis for this Court to depart from its previous ruling. The reconsideration decision "is vested in the district court's sound discretion, and the grant of a motion to reconsider is an **extraordinary remedy employed sparingly**." *Center for Biological Diversity v. Hamilton,* 385 F.Supp.2d 1330, 1337-38 (N.D.Ga.2005) (citing *Fla. Ass'n of Rehab. Facilities, Inc. v. Fla. Dept. of Health and Rehabilitative Servs.,* 225 F.3d 1208, 1216 (11th Cir.2000) (emphasis supplied); *Brogdon v. Nat'l Healthcare Corp.,* 103 F.Supp.2d 1322, 1338 (N.D.Ga.2000)); *S.E.C. v. Huff*, 2010 WL 541634, at *1 (S.D. Fla. Feb. 9, 2010). "The standard for granting reconsideration is strict and will generally be denied . . . ." *United States v. Zarabozo*, 2008 WL 5062463, at *1 (S.D. Fla. Nov. 26, 2008). A reconsideration motion will be denied unless the movant clearly establishes (1) a material intervening change in controlling law, (2) the availability of new evidence justifying reversal of the court's previous decision, or (3) the need to correct clear error or prevent manifest injustice. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). A motion to reconsider may not be used "to relitigate old matters, raise argument or present evidence that could have been raised" previously. *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 764 (11th Cir. 2005).

   A.   *Baptista* **Does Not Change the Law of Conflict Preemption as Established by the Supreme Court.**

*Baptista* does not signal a departure from the standard for analyzing federal conflict preemption. Under Supreme Court precedent, the conflict preemption analysis turns on "whether compliance with both statutes is a physical impossibility, or whether the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Checking Account Overdraft*, 694 F. Supp. 2d at 1311 (citations omitted). *Baptista* has zero

5

effect on this Court's well-considered ruling that the claims here for bad faith conduct are not preempted. Simply put, *Baptista* did not concern an alleged bad faith practice. The plaintiff in *Baptista* did not allege any deception or hidden manipulation to increase the *instances* of fees. She instead asserted a state statutory claim, under Florida Statutes § 655.85, together with an equitable claim for unjust enrichment, challenging the bank's right to charge her a $6 check-cashing fee itself.

The *Baptista* opinion does not focus on generally applicable state laws like the contract and tort claims pleaded here; the opinion focuses on a Florida law that expressly targeted banks, not all persons. *See Baptista*, 2011 WL 1772657, at *1 (noting that "[t]he Florida statute at issue specifically prohibits a *bank* from 'settl[ing] any check drawn on it otherwise than at par.'") (quoting Fla. Stat. § 655.85) (emphasis added). For all of their contortions and distortions of the decision, Defendants cannot hide that *Baptista* concerned a "state law[] specifically targeted at national banks" – and was held preempted for that very reason. *Cf. Checking Account Overdraft*, 694 F. Supp. 2d at 1311.

Moreover, the holding in *Baptista* does not extend to claims grounded in the legal relationship between a bank and its depositor customers. The plaintiff in *Baptista* was *not* a customer of the defendant bank. *Id*. at *1 ("Baptista was not an account holder at Chase."). Therefore, the plaintiff did not, and could not, assert contract claims or claims invoking the bank-depositor relationship.

The *Baptista* court affirmed the district court's dismissal based on the "significant conflict" between federal banking regulations and the application of Florida Statutes § 655.85 to the facts alleged. *Id.* at *2. The court explained that an OCC regulation authorizes national banks to charge non-interest fees, including service fees, and OCC interpretative letters advise

6

that such service fees can be assessed against "any person who presents a check for payment," even if the person is not a bank customer. *Id*. at *1 (citing 12 C.F.R. § 7.4002(a), and quoting *Wells Fargo Bank of Tex. N.A. v. James*, 321 F.3d 488, 490 & n.2 (5th Cir. 2003)). The *Baptista* court concluded "there is a clear conflict here: the OCC specifically authorizes banks to charge fees to non-account-holders presenting checks for payment" – the exact practice that plaintiff Baptista attempted to challenge using the Florida statute. *Id*. at *2.[1]

The *Baptista* court also affirmed the dismissal of a tag-along unjust enrichment claim based on its determinations (1) that the claim relied on "identical facts" as the statutory claim, and (2) that the plaintiff "cannot prove each element of the claim." *Baptista*, 2011 WL 1772657, at *2-3 & n.3. Defendants' argument fails to acknowledge these reasons. Contrary to Defendants' interpretation, the *Baptista* court did not purport to summarily overrule or undermine, explicitly or *sub silentio*, the long line of authority holding that general state laws remain available to aggrieved bank customers. Instead, the Court found, under the specific facts of that case, that Plaintiff did not state a claim. Because those specific facts are not present here, that holding has no application here.

---

[1] In their separate Joinders in Chase's Motion [**DE # 1568, 1575**], Comerica Bank and TD Bank, N.A., cite the Fifth Circuit's decision in *James* as support for the *Baptista* decision and their positions here. Because the facts in *James* are nearly identical to those in *Baptista* (a state par value statute), the decision there is inapposite for the same reasons as set forth herein. Comerica Bank also claims that *James* stands for the proposition that "state-chartered banks, like Comerica Bank, enjoy the same preemption rights as national banks." [**DE # 1568**] at 3. The court in *James* wrote that state-chartered banks, "*for the purpose of this appeal*, enjoy the same preemption rights as national banks." *James*, 321 F.3d at 489 n. 1 (emphasis supplied). It is not clear for the purpose of *this* case that the same is true, and Comerica Bank has offered no cases to support their broad assertion. TD Bank takes the argument one step further, stating that this Court "rejected" *James* in its earlier order. *See* **DE # 1575** at 4. In fact, this Court did not cite *James* its earlier orders. *See* **DE # 305, 934**. Regardless, *James* and *Baptista* do not apply here.

7

As this Court has recognized (*see Checking Account Overdraft*, 694 F. Supp. 2d at 1311-12), "causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted" by the Bank Act. *Baldanzi v. WFC Holdings Corp.*, 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008); *see also Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1022 (S.D. Iowa 2009) (Bank Act did not preempt claims of general application "premised on the theory that Wells Fargo had a legal duty not to employ procedures designed to defraud borrowers by charging unreasonable fees"); *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, MDL No. 2032, 2009 WL 4063349, at *9 (N.D. Cal. Nov. 20, 2009) (court could find "no authority providing that if a national bank enters into a contract and subsequently breaches an implied term of such contract, the customer lacks the ability to seek a remedy under state contract law"); *Smith v. BAC Home Loans Servs, LP*, -- F. Supp. 2d --, 2011 WL 843937, at *10 (S.D. W. Va. Mar. 11, 2011) ("Put simply, nothing in the text or inherent in the purposes of the NBA demonstrates Congress' intent to displace state consumer-protection laws of general applicability. Moreover, that has never been the view of those courts that have interpreted the NBA."); *Levitansky v. FIA Card Servs., N.A.*, 492 F. Supp. 2d 758, 762 (N.D. Ohio 2007); *Jefferson v. Chase Home Fin.*, 2008 WL 1883484, at *10 (N.D. Cal. Apr. 29, 2008) (no Bank Act preemption where state laws in question were "laws of general application" that "merely require all business (including banks) to refrain from misrepresentations and abide by contracts"); *Agustin v. PNC Fin. Servs. Grp., Inc.*, 707 F. Supp. 2d 1080, 1096 (D. Haw. 2010) (recognizing distinction "between claims that arise from generally applicable duties such as contractual obligations and a broad duty to refrain from deceptive acts, and claims that rest on alleged violations of statutes specifically aimed at NBA activities. The former are not preempted, but the latter are.") (citations omitted); *Mwantembe v. TD Bank, N.A.*, 669 F. Supp.

8

2d 545, 553 (E.D. Pa. 2009) (finding no Bank Act preemption of state law that "prohibits fraudulent and deceptive conduct and practices in all consumer transactions.").

Defendants would have this Court disregard not only the overwhelming weight of authority, but also the savings clause of 12 C.F.R. § 7.4007(c), which expressly provides that state contract and tort claims are *not* preempted where they only incidentally affect the exercise of national banks' deposit-taking powers. The OCC has clarified that, under this provision, "state laws that, *as a general matter*, are *not* preempted . . . include state laws concerning contract [and] tort . . . ." 69 Fed. Reg. 1904-01, at 1912 (emphasis added). Defendants' argument ignores this saving clause. Federal law may allow banks "to charge overdraft fees, but it does not authorize banks to ignore general contract or tort law." *Checking Account Overdraft*, 694 F. Supp. 2d at 1313 (King, J.). *Baptista* says nothing to the contrary.

Defendants rely on a creative, and erroneous, interpretation of *Baptista* to argue for preemption under another federal regulation previously analyzed by this Court, 12 C.F.R. § 7.4002. In reality, whether § 7.4002 even applies at all to a bank's decision to manipulate the order of customers' debit transactions constitutes a mixed question of law and fact that depends on whether the bank treated that decision as a pricing decision. That question, in turn, depends on a factual analysis, including whether the bank considered the factors enumerated in § 7.4002: "(i) The cost incurred by the bank in providing the service; (ii) The deterrence of misuse by customers of banking services; (iii) The enhancement of the competitive position of the bank in accordance with the bank's business plan and marketing strategy; and (iv) The maintenance of the safety and soundness of the institution." 12 C.F.R. § 7.4002(b)(2). Applying § 7.4002, courts evaluating preemption defenses to claims based on alleged wrongful overdraft fees

9

resulting from debit re-sequencing – including this Court – have refused to foreclose such claims.

These courts have recognized that when a state law claim does not clearly conflict with federal law (the type of facial conflict present in *Baptista*), it is inappropriate to rule definitively on a preemption defense until after all the facts have been established. *See* **DE # 625** at 7 ("This Court concludes that discovery will be necessary in these actions before an ultimate decision can be made, on summary judgment or by trial, regarding whether federal law preempts any or all of the Plaintiffs' claims."); *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1369 (N.D. Ga. 2008) ("[T]he OCC Letter emphasizes that to comply with § 7.4002, a bank must justify its check-posting policy by considering the listed factors. The court is not inclined to dismiss Plaintiffs' claims as preempted before the parties have developed record evidence on this point."); *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1131 (N.D. Cal. 2010) (following a bench trial, court rejected a federal preemption defense under § 7.4002, holding that "fatal to this defense is an utter failure of proof. For preemption to possibly apply, 12 C.F.R. 7.4002 *requires* national banks to actually use a four-factor decision-making process when establishing non-interest charges and fees. . . . Wells Fargo did not consider any of these factors") (emphasis in original).[2]

---

[2] Courts regularly evaluate federal preemption defenses by reference to the underlying facts. *See In re Cellphone Fee Termination Cases*, 193 Cal. App. 4th 298, 316 (Cal. Ct. App. 2011) ("[i]t is clear that the trial court considered the question of federal preemption here as a mixed issue of law and fact. So do we."); *Lincoln-Dodge, Inc. v. Sullivan*, 588 F. Supp. 2d 224, 231 (D.R.I. 2008) (federal preemption "is not an 'unmixed question of law' but, rather, it is a mixed question of law and fact."); *Hughes v. Blue Cross of N. Cal.*, 215 Cal. App. 3d 832, 859 (Cal. Ct. App. 1989) (federal preemption analysis "involves complex questions of law and fact"); *Harvey's Casino v. Isenhour*, 724 N.W. 2d 705, 708 (Iowa 2006) (preemption issues "must be evaluated with the aid of a factual record" and "involve mixed questions").

### B. Nothing in *Baptista* Suggests That Claims Based on Bad Faith Conduct Injuring Bank Customers Could Be Preempted.

Unlike in *Baptista*, there is no "irreconcilabl[e]" conflict in this action. 2011 WL 1772657, at *2. In fact, there is no conflict at all. The OCC advisory materials on which Chase relies expressly limit the bank's posting discretion with the same good-faith standard that the contractual covenant enshrines. Rather than permitting Defendants to reorder the posting of transactions any way they choose, free from limitation or consequence, the OCC – drawing upon state law – has advised that such reordering is permissible only if a bank "'act[s] in good faith."[3] OCC Interp. Letter No. 916, 2001 WL 1285359 (May 22, 2001) (quoting commentary to Cal. Comm. Code § 4303(b)); *see also* OCC Interp. Letter No. 997, 2002 WL 32639293, at *2 (Apr. 15, 2002) (same treatment of analogous Texas commentary). And, a bank acting in good faith "could *not* properly follow an established practice of maximizing the number of returned checks for the sole purpose of increasing the amount of returned check fees charged to the customer." OCC Interp. Letter No. 916, 2001 WL 1285359 (emphasis added); *see also* OCC Interp. Letter No. 997, 2002 WL 32639293 (same).

In short, the OCC itself repudiates the very conduct alleged here. There can be no conflict between federal and state standards when both recognize the same good-faith requirement. Indeed, the OCC has condemned overdraft fee programs similar to Defendants' that, "in essence, attempt to entice their customers to write NSF checks more frequently and on

---

[3] The *Baptista* court remarked that national banks have some "latitude" to decide how to charge fees. 2011 WL 1772657, at *2 n.2. That does not mean banks can do whatever they please, including secretly manipulating customers' transactions in order to artificially manufacture instances of overdrafts, as the Defendants are alleged to have done here.

purpose in order to generate fee income." OCC Interp. Letter No. 914, at 5 (Sept. 2001).[4] Thus, this Court correctly found no conflict with federal law. *See Checking Account Overdraft*, 694 F. Supp. 2d at 1310-14.

While Defendants continue to try to re-litigate old issues (and thus delay discovery), the fact remains that Congress has not authorized the manipulation of depositor account records solely to maximize bank profits. To the contrary, when it amended the NBA, Congress specified that it did "not intend [to] . . . weaken States' authority to protect the interests of their consumers, businesses, or communities." H.R. REP. NO. 103-651, 1994 WL 405911, at *53-54. The purpose of Congress is the "ultimate touchstone" in every preemption analysis, *Wolpin v. Philip Morris, Inc.*, 974 F. Supp. 1465, 1468 (S.D. Fla. 1997) (King, J.), and the banking system is a "mixed state/federal regime[]" that reflects "Congress's decision *not* to pre-empt substantive state law." *Cuomo v. Clearing House Ass'n, L.L.C.*, -- U.S. --, 129 S. Ct. 2710, 2718 (2009) (emphasis added).

Judge Alsup's decisions in the *Gutierrez* case are consistent with both Supreme Court precedent and this Court's decisions, and are highly informative to the present motion. Like this Court, Judge Alsup issued a series of rulings in *Gutierrez* analyzing the preemption issue, treating it as fact-intensive and ultimately holding Wells Fargo liable under state law. In his post-trial findings of fact and conclusions of law, Judge Alsup observed that "plaintiffs challenge bookkeeping practices that convert what is really one overdraft to count as ten overdrafts. This is a *classic* state law issue." *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1131 (N.D. Cal. 2010) (emphasis added). Earlier in the *Gutierrez* litigation, Wells Fargo, pointing to

---

[4] *Available at*: http://www.occ.gov/static/interpretations-and-precedents/sep01/int914.pdf.

12

the Ninth Circuit's decision in *Martinez v. Wells Fargo Home Mortgage, Inc.*, 598 F.3d 549 (9th Cir. 2010), moved the court to reconsider its rejection of the bank's preemption defense on summary judgment. The bank employed *Martinez* to make similar arguments to those made here, in a similar posture. The *Gutierrez* court, however, was not swayed. It recognized that *Martinez* (like *Baptista*) addressed NBA preemption of state law claims challenging the simple imposition of a fee, as opposed to a clandestine process that drove up the occurrence of fees:

> [T]he "unfair" claim in this litigation targets whether Wells Fargo's manipulation of customer transactions "behind the scenes" to maximize the *occurrence* of overdraft fees during the posting process was a breach of the bank's duty to act in good faith. In other words, it is the bank's allegedly "unfair" practice of assessing and imposing as many overdraft penalties as mathematically possible that is at issue in this action.
>
> This practice has nothing to do with whether Wells Fargo has the right to establish overdraft fees, or whether individual overdraft fees are reasonably related to actual underlying costs. . . . Indeed, an important distinction between the claims alleged here and in *Martinez* is that the *Martinez* plaintiffs were not challenging *how often* they would be assessed the challenged fees. By contrast, in this litigation, part of what makes Wells Fargo's re-sequencing practice allegedly "unfair" is that consumers have no idea whether one or ten overdrafts fees will result from a particular debit-card transaction.

*Gutierrez*, 2010 WL 1233885, at *2 (emphasis in original).

The intervening Ninth Circuit decision in *Martinez* neither upended established NBA preemption principles nor affected the preemption analysis in *Gutierrez*. So too, here, *Baptista* reinforces the traditional distinction between laws directed at banks in particular – which are more likely to conflict with federal banking law – and laws that apply to all businesses, such as the generally applicable contract and tort laws at issue here, that are not displaced.

### C. This Court Has Already Effectively Rejected the Defendant Banks' Latest Arguments in Previously Distinguishing *Monroe*.

In their initial attempt to argue preemption, the various First Tranche Defendants relied heavily on the Sixth Circuit's decision in *Monroe Retail, Inc. v. RBS Citizens, N.A.*, 589 F.3d 274

13

(6th Cir. 2009). In *Monroe*, as in *Baptista*, the plaintiff was not a customer of the defendant bank, and plaintiff's claims challenged the bank's right to charge a particular type of service fee. The *Monroe* court found that plaintiff's state law claim was preempted. In its omnibus ruling, this Court considered the applicability of *Monroe* to the claims here, and distinguished *Monroe* in rejecting the Defendant Banks' preemption defense. 694 F. Supp. 2d at 1312.

In *Gutierrez*, Wells Fargo similarly tried to invoke *Monroe* in moving the court there to revisit its earlier decision rejecting preemption. In ruling on Wells Fargo's motion, Judge Alsup noted that he "carefully reviewed" both *Monroe* and this Court's omnibus order on the Defendant Banks' motions to dismiss, and held that *Monroe* was distinguishable and did not support a finding of preemption:

> In *Monroe*, the practice examined by the Sixth Circuit was between a bank and its creditors, and it involved a state law that interfered with the bank's right to charge service fees for garnishment orders. By contrast, the targeted practice here is between a bank and its depositor customers, and the bank's right to charge an overdraft fee is *not* challenged. These differences were also noted by Judge King in distinguishing *Monroe* from the types of claims alleged in this action

*Gutierrez*, 2010 WL 1233885 at *2 (emphasis in original).

*Baptista* is distinguishable on several of the same grounds as *Monroe*. Unlike in *Baptista* and *Monroe*, Plaintiffs here are customers of the Defendants. Moreover, Plaintiffs do *not* challenge the Defendants' ability to charge overdraft fees, but rather challenge the Defendants' bad faith, secretive manipulation of their transactions to manufacture additional instances of overdrafts. Just as *Monroe* did not support a finding of preemption, *Baptista* does not in any way provide a basis for this Court to reconsider its prior ruling. Simply put, *Batpista* did not change the law or undermine this Court's decision.

14

## II. An Interlocutory Appeal Is Not Warranted.

Just as this Court previously, and correctly, declined to certify the preemption question, the question should not be certified now. An issue will not be certified for interlocutory appeal except on the rare occasion "when (1) the court's order being challenged involves a controlling question of law, (2) there is substantial ground for difference of opinion on a point of law, and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *United States ex rel. Borges v. Doctor's Care Med. Ctr., Inc.*, 2007 WL 984404, at *1 (S.D. Fla. Mar. 26, 2007). There is a "strong presumption against interlocutory appeals." *United States v. One Parcel of Real Prop.*, 767 F.2d 1495, 1498 (11th Cir. 1985); *see also McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004) ("Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy"). Even if all three § 1292(b) elements were satisfied, the Court would have discretion to deny certification. *See McFarlin v. Conseco Servs., L.L.C.*, 381 F.3d 1251, 1259 (11th Cir. 2004).

This Court's preemption analysis is consistent with every other decision that addressed preemption in connection with overdraft fee misconduct. There is no difference of opinion; to the contrary, there is a consensus that the NBA does not preempt claims based on the conduct alleged here. Moreover, *Baptista* did not involve this same conduct as is alleged here (not bad faith conduct, not deceptive conduct or trickery, not conduct toward bank customers), but rather involved the issue of whether a national bank could be held liable for charging non-customers a

15

check-cashing fee at all.  Now, as before, an immediate appeal "will not materially advance this litigation; it will delay it."[5]  **DE # 625** at 9.  The motion therefore should be denied in its entirety.

## Conclusion

Based on the foregoing, and for the additional reasons set forth in Plaintiffs' opposition to Defendants' omnibus motion to dismiss [**DE # 265**], the present motion should be denied.

Dated:  June 3, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

---

[5] To the extent Defendants attempt to avoid the strict reconsideration standard by styling their motion a Rule 12(c) motion for judgment on the pleadings, that attempt backfires because the rule contemplates the filing of such a motion "early enough not to delay trial" and an immediate appeal would do just that.  *See* Fed. R. Civ. P. 12(c).

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 3855830
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*


/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

17

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

18

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

19