# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

---

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTION

*Luquetta v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23432-JLK
C.D. Cal. Case No. CV09-6967-GHK

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION OF DEFENDANT
JPMORGAN CHASE BANK, N.A. TO STAY THE PROCEEDINGS, IN FAVOR OF
ARBITRATION, AS TO PUTATIVE ABSENT CLASS MEMBERS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................3

I.    By Litigating For Nearly Two Years, Chase Waived Any Right To Seek Arbitration. ..........................................................................................3

     A.    Chase Manifested Its Intent <u>Not</u> To Arbitrate The Claims Of Absent Class Members. ................................................................3

         1.    Chase's Attempt To Have This Case Dismissed On The Merits Is Inconsistent With A Desire To Arbitrate. ...............3

         2.    Chase's Aggressive Class Discovery Efforts—Which Induced Plaintiffs Concomitant Engagement In Discovery—Show A Desire To Litigate, Not Arbitrate ................5

         3.    Chase's Argument That It Could Not Have Filed This Motion Previously Misapprehends The Law. ............................6

         4.    Chase's Inclusion Of A Placeholder Arbitration Defense Is Unavailing. ...................................................................7

         5.    The Authorities On Which Chase Principally Relies Are Inapposite ...................................................................8

     B.    Granting Chase's Tardy Arbitration Request Would Prejudice The Absent Class Members. .............................................................9

II.    The Arbitration Provision Is Unconscionable Under California Law. ................11

     A.    The Law Of Unconscionability. .............................................................12

     B.    The Chase Arbitration Agreement Is Procedurally Unconscionable ........12

         1.    Chase Misapprehends *Concepcion*. ..............................................13

         2.    Under California Law, A Contract Of Adhesion Is Procedurally Unconscionable Even If Customers Are Given Notice Of Its Terms. .........................................................13

         3.    The Availability Of Other Banks Does Not Affect The Analysis. ...................................................................15

         4.    The Arbitration Agreement Is Procedurally Unconscionable As To All Class Members. ...........................................15

         5.    Plaintiffs Are Not Estopped From Challenging The Arbitration Agreement's Enforceability. .....................................15

     C.    The Arbitration Provision Is Substantively Unconscionable. .................16

         1.    Customers Must Pay $775 To Initiate Arbitration. .....................17

**TABLE OF CONTENTS**
(continued)

Page

2.  The CAA Authorizes Chase To Seek Attorney Fees And Freeze Customer Accounts. ..........................................18

3.  Customers Cannot Prove Liability Without Discovery. ...............18

4.  Preparation for Individual Arbitration Is Prohibitively Expensive. ...................................................................19

5.  Absent Class Members Would Be Unable To Retain Counsel To Assist Them In Arbitrations. ......................................19

6.  Individual Litigation Against Chase Would Be Prohibitively Expensive. ................................................................19

D.  Chase's Chosen Arbitrators Would Deprive Absent Class Members Of A Fair Hearing. ...............................................20

CONCLUSION ...................................................................................................21

Plaintiffs submit this opposition to the Motion of Defendant JPMorgan Chase Bank, N.A. ("Chase" or the "Bank") to Stay the Proceedings, in Favor of Arbitration, as to Putative Absent Class Members. [**DE # 1616**].

## INTRODUCTION

More than two years into its vigorously litigated defense against Plaintiffs' class claims in this MDL forum, Chase now contends that it has always intended to pursue individual arbitrations to resolve the claims of absent class members. But Chase's assertion is flatly contradicted by its litigation conduct. Among many other actions, Chase:[1]

- filed (with other First Tranche Defendants) the Omnibus Motion to Dismiss [**DE # 217**], and a separate Motion to Dismiss [**DE # 222**] (December 2009);

- availed itself of more oral argument time than any other bank at the hearing on the motions to dismiss [**DE # 296**], without *once* mentioning arbitration (February 2010);

- served 40 document requests and several interrogatories seeking information about absent class members (May 2010);

- moved on two separate occasions to compel arbitration against named Plaintiffs, while foregoing the opportunity to move against absent class members (May 2010 and May 2011);

- twice moved to compel responses to document requests and interrogatories that sought information directly pertaining to absent class members' claims (November 2010);

- responded to discovery requests (June 15, 2010) and produced over 600,000 pages of documents and electronically stored material on matters relevant to class members' claims; and

- produced eight witnesses for deposition (December 2010 through April 2011) who testified, in part, about issues clearly relevant to class members' claims.

---

[1] Plaintiffs incorporate by reference the Response in Opposition to JPMorgan Chase Bank's Motion to Stay or Dismiss in Favor of Arbitration and the Declaration of Robert C. Gilbert filed May 19, 2011 in the companion case of *Lopez et al. v. JPMorgan Chase Bank, N.A.* [**DE # 1506, 1506-1**]. The detailed recitation of events set forth in that Opposition and the Gilbert declaration apply equally here, since both cases have been litigated as if they had been consolidated.

Chase, in short, has vigorously contested the absent class members' claims through litigation; it should not be permitted to seek class discovery, drain hundreds of hours of judicial resources, and then contend successfully that it is nonetheless entitled to arbitrate the claims of absent class members. Waste, rather than efficiency (or any benefit), would result from sending the claims of absent class members to an uncertain fate in individual arbitrations. Moreover, if Chase is successful, the absent class members will suffer prejudice, not only because they relied on the Bank's invocation of the litigation machinery, but also because Chase has gained advantages against them by availing itself of discovery that would not have been available in arbitration.

Even if Chase had not waived its arbitration rights, the Chase arbitration agreement (the "CAA") still could not be enforced because it is profoundly unfair. The CAA operates not to permit or promote the efficient resolution of claims, but to deny absent class members access to any forum at all and thereby exculpate Chase from liability and prevent the vindication of customer's individual rights.

There are many egregious aspects to the CAA. For example, under its terms, a customer must pay $775 (Chase is only obligated to reimburse $500, and only at some uncertain time in the future) to have even a *chance* of recovery – yet the average claim is valued at approximately $300. The CAA thus purports to require many customers to pay *more* money to an arbitrator than they could possibly hope to recover from Chase. No court applying California law would enforce such a provision.[2]

The non-viability of individual arbitration is compounded by the subject matter of this litigation. Because of the lack of information available on their Chase account statements, absent class members cannot even determine whether they were charged overdraft fees as a result of Chase's debit re-sequencing. *See* Ex. A. (Olsen Decl.) at ¶ 9. Indeed, it would take an expert hours to analyze data (which Chase would have to produce in discovery) to determine whether any Chase customer suffered damage from debit re-sequencing. *Id.* at ¶¶ 9-15. Arbitration simply would not work in this case even if Chase had not waived the right to seek it.

---

[2] Chase's motion refers to customers from a number of states. *See* Mot. at 4 n.3. Because Chase has moved to stay this litigation only as to absent California class members suing under California law in the *Luquetta* case, Plaintiffs' response addresses California law only.

**ARGUMENT**

I.     **By Litigating For Nearly Two Years, Chase Waived Any Right To Seek Arbitration.**

A party waives the right to arbitration where it (1) "substantially participates in litigation to a point inconsistent with an intent to arbitrate" and (2) its participation "results in prejudice" to absent class members. *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.)*, 62 F.3d 1356, 1366 (11th Cir. 1995); *see also S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990).  Chase's extensive participation in this litigation, including its pursuit of class-related discovery, is plainly inconsistent with an intent to arbitrate.  There can be no doubt, moreover, that the absent class members would be prejudiced if now forced to arbitrate their claims.  Accordingly, Chase has waived its right to arbitration.

A.     **Chase Manifested Its Intent <u>Not</u> To Arbitrate The Claims Of Absent Class Members.**

1.     **Chase's Attempt To Have This Case Dismissed On The Merits Is Inconsistent With A Desire To Arbitrate.**

Chase has litigated this case in a comprehensive fashion, including challenging the validity of Plaintiffs' allegations of an unlawful scheme to maximize overdraft fees.  In moving to dismiss the Class Complaint "in its entirety,"[3] Chase asserted, among other things, that "(1) the doctrine of federal preemption barr[ed] state regulation of the activities of national bank[s] pursuant to the National Bank Act; (2) the contracts with the banks explicitly authorize[ed] Defendants to post from 'high to low' and [make] overdraft fee assessment[s]; . . . [and] (6) that state customer protection laws [we]re inapplicable." *Overdraft*, 694 F. Supp. 2d at 1307.  Those substantive arguments are not specific to named Plaintiffs; they concern the core practice affecting them and all the absent class members alike.

Chase's robust attack on the Class Complaint was inconsistent with an intent to arbitrate. *See Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 921 (8th Cir. 2009).  In *Hooper*, plaintiffs brought a putative class action against Advance America alleging that defendant was engaged in "unfair, deceptive, and illegal lending practices to the detriment of its Missouri borrowers." 589 F.3d at 919.  Advance America moved to dismiss, and its motion was granted in part, to the extent the court dismissed the plaintiffs' claim for declaratory relief. *Id.* Two weeks later, Advance America moved to stay the litigation and compel arbitration, citing a

---

[3] Omnibus Mot. to Dismiss and/or for Judgment on the Pleadings. **[DE # 217 at 5]**.

mandatory arbitration clause in its loan agreements with plaintiffs. *Id.* at 919-20. The district court denied the motion, and the Eighth Circuit affirmed, rejecting Advance America's assertion that "it could not have known" the latter six counts were arbitrable until the district court dismissed the claim for declaratory relief:

> The problem with Advance America's argument is that its motion to dismiss sought more than clarification. . . . Instead, Advance America sought a decision on the merits on [those counts], an immediate and total victory in the parties' dispute.

*Id.* at 922 (citation omitted); *see also Petroleum Pipe Ams. Corp. v. Jindal Saw Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) ("A party waives arbitration by seeking a decision on the merits before attempting to arbitrate."); *S & H Contractors*, 906 F.2d at 1514.[4]

This Court should conclude, as the Eighth Circuit did in *Hooper*, that Chase "wanted to see how the case was going in federal district court before deciding whether it would be better off there or in arbitration" by "play[ing] heads I win, tails you lose." 589 F.3d at 922 (citation and internal quotation marks omitted); *see also In re Powe*, 282 B.R. 31, 33-34 (Bankr. S.D. Ala. 2001). Indeed, had this Court found, as Chase requested, that Plaintiffs' claims were preempted by the National Bank Act, it would have served Chase far better than a similar ruling from a series of arbitrators. Chase, moreover, has contested this putative class litigation far longer than the defendant in *Hooper* – Chase pressed extensive motions to dismiss, sought reconsideration, answered the Class Complaint, actively participated in discovery, and sought information relevant to the claims of absent class members in that discovery.

In other words, Chase has engaged in exactly the type of "wait and see" tactic courts are loath to countenance. It should not get an opportunity to regurgitate arguments this Court has already rejected in the hope that an arbitrator will rule differently.

---

[4] *See also Southeastern Stud & Components, Inc. v. Amer. Eagle Design Build Studios, LLC*, 588 F.3d 963, 968 (8th Cir. 2009); *Burton v. Cruise*, 190 Cal. App. 4th 939, 949 (Cal. App. 4th Dist. 2010) ("[A]rbitration delayed is arbitration denied."); *Nat'l Found. for Cancer Research v. A.G. Edwards & Sons, Inc.*, 821 F.2d 772, 775-77 (D.C. Cir. 1987); (party waived arbitration rights when it "invoked the litigation machinery"); *Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 614 F.2d 698, 703 (10th Cir. 1980).

2.    **Chase's Aggressive Class Discovery Efforts – Which Induced
      Plaintiffs Concomitant Engagement In Discovery – Show A Desire To
      Litigate, Not Arbitrate**

Once Chase lost its motions to dismiss, it engaged in extensive discovery, serving 17
interrogatories and 42 document requests seeking information not only about Plaintiffs'
accounts, but also "Chase deposit accounts *other than* [Plaintiffs']."   *See* Ex. B (Chase
Document Req.) at ¶¶ 6, 9 (emphasis added).   Chase requested, for example, that Plaintiffs
produce "[a]ll documents constituting or concerning any communications you have had with any
members or potential members of the putative class concerning this lawsuit . . . ." *Id.* at ¶ 32.  Of
particular note, Chase requested "[a]ll documents constituting or concerning any method of
computation or quantification of the alleged damages sustained by *any member of the putative
class, or the putative class as a whole*, as a result of the conduct and omissions alleged in the
[Class] Complaint." *Id.* at ¶ 42 (emphasis added).   Chase should not be permitted to pursue class
discovery and then claim, one year later, that it always intended to arbitrate the class claims.  *Cf.
Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 498 (5th Cir. 1986) ("A party to
arbitration does not have a right to the pre-trial discovery procedures that are used in a case at
law.").

Chase also responded to Plaintiffs' document requests, which sought the type and scope
of documents that would only be relevant in a class action context. Chase met and conferred with
Plaintiffs, discussed document custodians and search terms, collected millions of pages of
documents, coded them, hired contract attorneys to review them, and produced 600,000 pages
along with electronic data that have little or nothing to do with any one particular named
Plaintiff.  Chase also engaged in multiple meet and confers with Plaintiffs—both in person and
via email, letters, and telephone about discovery disputes; offered, scheduled and defended nine
depositions including a corporate representative deposition related to class-wide issues such as
the scope of availability of class members' transaction data, and another related to Chase overall
policies, the aggregate impact of the policies, the uniformity of the policies to all class members,
and the systemization of Chase's overdraft scheme. And Chase offered testimony on and
representations about its account agreements, regardless of whether they had anything to do with
named Plaintiffs' enrollment, state, or otherwise.

Not only did Chase actively engage in this case as a class action and answer what can
only be described as class action discovery, Chase also, in doing so, induced Plaintiffs to

likewise spend a fortune engaging in this discovery and thousands of hours in attorney time reviewing documents, preparing for and taking the depositions, and generally engaging Chase in this case. Chase, then, has pursued the very type and scope of class discovery that arbitration is intended to avoid. Having done so, it should not now be permitted to seek arbitration. *See Davidson v. PDS Technical Servs.*, No. 8:10-cv-1755, 2010 WL 4639311, at \*4 (M.D. Fla., Nov. 8, 2010) (finding waiver when party moved "two years after initiation of the West action to demand arbitration, [and] acted inconsistently with an intent to arbitrate and prejudiced PDS by causing PDS to incur the type of litigation expenses that arbitration seeks to eliminate").

### 3.     Chase's Argument That It Could Not Have Filed This Motion Previously Misapprehends The Law.

Chase asserts that "[a]t no prior time would it have been apt for Chase to invoke" arbitration against the absent class members. Mot. at 9. But Chase's basic premise – that the Court could not have taken any action affecting the rights of absent class members before class certification – is flawed. Chase made this same argument – unsuccessfully – in an earlier case, *see In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 258 (S.D.N.Y. 2005), and it has not improved with age. In that MDL class action, Chase (and others) moved to stay litigation on the eve of class certification because plaintiffs' cardholder agreements purportedly contained valid arbitration clauses. *Id.* at 245-46, 257. The court denied the motion and expressly rejected Chase's argument that its motion would not have been ripe at the start of litigation. *Id.* at 257. To the contrary, the court explained, "the putative class members' rights in this litigation were protected as of the filing date of the complaint." *Id.* at 258. While this logic would apply to any defendant, Chase, specifically, was on notice that its motion would have been timely sooner.

There should be little question that Chase could have moved to stay in favor of arbitration sooner. Federal Rule of Civil Procedure 23(d) empowers the Court to protect class members' rights prior to class certification, *see* Federal Judicial Center, *Manual for Complex Litigation* § 21.12 (4th ed. 2004), and courts necessarily make determinations prior to certification that affect class members' interests, *see Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981) (recognizing the permissibility of "an order limiting communications between parties and potential class members[]"); *see also Jones v. Jeld-Wen, Inc.*, 250 F.R.D. 554, 561, 563-64 (S.D. Fla. 2008). Thus, in some contexts, absent class members are properly understood as part of the action prior to class certification. *See McDowall v. Cogan*, 216 F.R.D. 46, 50 n.4 (E.D.N.Y.

2003); *Breakstone v. Caterpillar, Inc.*, No. 09-23324-CIV, 2010 WL 2164440, at *4 (S.D. Fla. May 26, 2010) (citing *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003)).[5]

Chase's argument, moreover, is logically inconsistent. On one hand, Chase justifies its failure to seek arbitration as to the class by saying that absent class members are not parties until a class has been certified. On the other hand, Chase filed this motion prior to class certification. Chase cannot have it both ways, simultaneously contending the Court would have had no authority to determine the arbitrability of "non-party" absent class members' claims while urging without support that Plaintiffs' *moving* for class certification renders this motion ripe.

Chase knew from the very start of this case that Plaintiffs intended to seek class certification. By filing its arbitration motion now – *before* a class has been certified – Chase effectively concedes it could have brought the motion sooner.[6]

### 4. Chase's Inclusion Of A Placeholder Arbitration Defense Is Unavailing.

In the face of its significant litigation efforts and inexcusable delay, Chase points to its inclusion of a conditional arbitration defense (amid 16 other defenses) in its Answer to the Class Complaint, which states in relevant part:

> In the event that any attempt is made to certify a class in this action, Chase intends to invoke its right to stay judicial proceedings as to claims of persons, other than the present named plaintiffs against whom Chase now answers, in favor of arbitration of claims advanced by or on behalf of such persons, who have contractually agreed to arbitrate claims against Chase or its predecessors in interest.

---

[5] While Chase correctly observes that a dismissal of the Class Complaint would not have bound absent class members, it is misleading to say that those customers would not have been adversely affected by such a ruling because the "*stare decisis* effect of the initial judgments may frustrate later claimants' efforts to litigate. In addition, the expense of litigation frequently deters claimants from asserting individual claims." *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1201 n.17 (11th Cir. 1985); *see also Wright v. Schock*, 742 F.2d 541, 542-43, 545 (9th Cir. 1984); *Thornton v. Mercantile Stores Co.*, 13 F. Supp. 2d 1282, 1289-90 (M.D. Ala. 1998).

[6] Chase did not argue, nor could it have, that it would have been futile to move to compel arbitration against the absent class members before the Supreme Court decided *Concepcion*. *See, e.g., Southeastern Stud*, 588 F.3d at 967-68 (rejecting futility excuse: "arbitration agreement was at least arguably enforceable"). Chase, in fact, *did* move to compel arbitration against some California Plaintiffs prior to *Concepcion*.

[DE # 502 at 16].   Chase's reliance on that placeholder defense as indicating its purported intention to arbitrate absent class members' claims is insufficient, in light of (1) its constant stream of motions seeking dismissal of class claims, including motions for reconsideration and motions based on new authorities; (2) its discovery directed to the putative class, and; (3) the Class Complaint's class action and factual allegations detailing a common course of alleged misconduct affecting all putative class members.  [*See* **DE # 348 at ¶¶ 21–67**].

Because of the nature of this case and Chase's own prior litigation conduct, the Bank's affirmative defense cannot excuse its failure to move until now.  *See In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010) (rejecting defendant's argument that it timely demanded arbitration "by listing the right to compel arbitration as an affirmative defense in its answer and reserving that right in its motions to dismiss" because defendant "waited eighteen months before moving to compel arbitration while it attempted to obtain a dismissal with prejudice"); *see also Lawrence v. Royal Caribbean Cruises, Ltd.*, No. 09-20930, 2010 WL 4639311, at *4 (S.D. Fla. Nov. 30, 2009) (finding waiver where, *inter alia*, defendant "reference[d] the alleged arbitration agreement in its twenty-first affirmative defense [in an answer filed on December 11, 2008], but took no action to compel such arbitration until it filed a motion to compel arbitration in this Court on April 30, 2009").

Chase argues that the Court should disregard the above precedent and compel arbitration because Plaintiffs did not bring a motion to strike its arbitration defense as "insufficient" under Rule 12(f).  Motions to strike are not meant to be used to determine whether a litigant like Chase is "leading on" the Court and the opposing party.  While Plaintiffs have always believed that Chase's arbitration defense lacked merit, the fact is that Chase, after being given multiple opportunities by the Court to invoke arbitration, repeatedly declined to do so, and Plaintiffs were under no obligation to ask Chase to reconsider its choice in the form of a motion to strike.  No further action by Plaintiffs was required given Chase's clear manifestations of its intent to litigate.

### 5.    The Authorities On Which Chase Principally Relies Are Inapposite.

Chase's actions in litigating this case render many of the primary authorities offered by Chase readily distinguishable.  In *Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.*, 754 F.2d 457 (2d Cir. 1985), plaintiffs' complaint included arbitrable *and* non-arbitrable claims.  The Second Circuit found both that: "the portions of the motion addressed to nonarbitrable claims do

not constitute a waiver," and that because plaintiff had filed "an intricate complaint, setting forth numerous claims outside the scope of, though partially related to, the arbitrable claims," plaintiff should not have been "altogether surprised" that defendant took "the protective step of filing a motion to dismiss." *Id.* at 463; *cf. Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 938 F.2d 1574, 1577 (2d Cir. 1991) (distinguishing *Sweater Bee*, observing, *inter alia*, that "many of the claims which were the subject of the Rule 12(b)(6) motion in *Sweater Bee* were nonarbitrable").

And *Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*, 97 F. Supp. 2d 320 (E.D.N.Y. 2000) supports Plaintiffs, not Chase. In *Allied Sanitation*, the court held that the defendant did not waive its right to arbitrate with another entity by waiting until the latter "became a *putative* class member" to move for arbitration, which the court considered a reasonable "point of departure to measure the issue of waiver." *Id.* at 327-29 (emphasis added).

Finally, unlike defendants in *Collins v. Int'l Dairy Queen, Inc.*, 169 F.R.D. 690 (M.D. Ga. 1997), Chase has not "repeatedly emphasized [its] intention to rely upon the arbitration clauses and to submit any relevant disputes to arbitration." *Id.* at 692.

**B.    Granting Chase's Tardy Arbitration Request Would Prejudice The Absent Class Members.**

Despite Chase's arguments, its decision to litigate this case, rather than make a timely motion for arbitration, has prejudiced absent class members.

Courts have explained that prejudice in the context of failure to move for arbitration may take a number of forms. For example, a court may consider "the length of delay in demanding arbitration and the expense incurred by [the absent class members] from participating in the litigation process." *S & H Contractors*, 906 F.2d at 1514. Prejudice can also exist where the party seeking arbitration "invok[es] . . . the litigation process," *id.*, and "allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." *Morewitz*, 62 F.3d at 1366; *see also Mirant*, 613 F.3d at 591 ("A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court."). Of additional relevance, "[t]he use of pre-trial discovery procedures by a party seeking arbitration may [also] sufficiently prejudice the legal position of an opposing party so as to constitute a waiver of the [former]'s right to arbitration." *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990); *see also Lawrence*, 2009 WL 4546633 at *4 ("[D]efendant's active participation in state court for seven months coupled with significant discovery on the merits resulted in prejudice to plaintiff in terms of delay and incurred litigation expenses.").

Chase's choice to litigate this case, rather than make a timely motion for arbitration, has imposed all of those hardships on absent class members.

As detailed above, Chase aggressively sought dismissal of the Class Complaint on the merits, propounded discovery, moved to compel further responses to its discovery requests, responded to discovery, produced over 600,000 pages of documents and electronically stored material, and produced multiple witnesses for deposition. Chase's challenges to the merits of Plaintiffs' claims and aggressive pursuit of discovery – including discovery relating to absent class members – clearly demonstrate prejudice to the absent class members from this motion.

First, Chase has forced Plaintiffs, on behalf of themselves and the putative absent class members, to fend off attacks on the merits of their claims. Providing Chase with a clean slate to revisit in an arbitral forum the myriad issues and points on which it failed to persuade this Court is unfair to putative class members who have benefited from this Court's favorable rulings. *See Hooper*, 589 F.3d at 923 ("Prejudice results when parties litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts." (alteration, ellipsis, citation, and internal quotation marks omitted)).

Second, if absent class members are forced to proceed to individual arbitrations, Chase's position could be strengthened unfairly because it obtained information through this litigation and discovery that otherwise would not have been known or available to Chase. That knowledge and information would have a prejudicial effect upon arbitral proceedings. *See A.G. Edwards*, 821 F.2d at 778 (the plaintiff would "suffer a tactical disadvantage if its . . . claims were shunted over to arbitration procedures now that [the defendant] has enjoyed exhaustive discovery of [the plaintiff's] evidence and legal theories on those issues."); *Miller Brewing*, 781 F.2d at 498 ("There is every indication that Miller's position would be prejudiced and compromised in arbitration by FWDC's use of pre-trial discovery going to the merits.").[7]

---

[7] *See also Stone*, 898 F.2d at 1543-44 (one year and eight month delay before seeking to compel arbitration rendered defendant's motion untimely, where defendant "engaged in discovery typical of a party preparing for trial" and "[s]ignificant prejudice" could be "inferred from the extent of discovery conducted"); *Transamerica Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 45 F.3d 437 (9th Cir. 1994) (Table Op.) (finding prejudice because, "[t]hrough Transamerica's objections to its motions for summary judgment and supporting declarations, National Union learned of Transamerica's strategies and defenses."); *Lawrence*, 2009 WL 4546633 at *3 (defendant "served requests for production of documents requesting twenty-nine categories of items to be produced by plaintiff, and also served interrogatories seeking plaintiff's

*(Footnote continues.)*

-10-

The facts here resemble those of *S & H Contractors*, where the Eleventh Circuit affirmed the district court's order enjoining arbitral proceedings from going forward. The court noted that the defendant "waited eight months from the time it filed its complaint to the time it demanded arbitration," during which time defendant "filed two motions – a motion to dismiss and an opposition to defendant's motion for discovery. 906 F.2d at 1514. That defendant also "took the depositions of five [of plaintiff's] employees (totaling approximately 430 pages) prior to demanding arbitration." *Id.* Based on those facts, the Eleventh Circuit concluded "that, as a matter of law, [plaintiff] was prejudiced by [defendant]'s delay in demanding arbitration and by its invocation of the litigation process." *Id.* The Court determined the defendant had "acted inconsistently with its arbitration right," and had therefore waived its right to arbitrate. *Id.*

Like the defendant in *S & H*, Chase long delayed bringing this motion, all the while proceeding vigorously with discovery and litigation. In fact, Chase waited considerably longer to bring this motion – almost two years – than the defendant in *S & H*. Granting Chase's motion would prejudice the absent class members given the favorable rulings and the discovery obtained in this MDL forum.

Granting Chase's motion not only would prejudice the absent class members, it also would undermine the fundamental reason for the creation of this multidistrict litigation. Individual arbitrations would vitiate the purposes behind this MDL – established to maximize efficiency, to minimize waste and the potential for inconsistent rulings, and to conserve judicial and party resources. *See In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009) (centralizing overdraft fee cases before this Court to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation," and entrusting the Court "to efficiently manage this litigation"). Forcing absent class members to arbitrate after this Court and the parties spent two years and untold dollars litigating is the opposite of judicial efficiency and conserving the parties' resources.

## II.   The Arbitration Provision Is Unconscionable Under California Law.

Even if Chase had not waived its arbitration rights, its motion would still lack merit because the arbitration provision Chase now seeks to enforce is unconscionable. *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687 (1996) ("[G]enerally applicable contract defenses, such

---

answers to more than thirty interrogatories, including subparts," and other discovery requests "relating to the merits of plaintiff's claims," and plaintiffs also served discovery).

as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements"); *see also Concepcion*, 131 S. Ct. at 1755 & fn * (Thomas, J., concurring) (same). In *Concepcion*, the Supreme Court reaffirmed this principle and held:

> [A]greements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *see also Perry v. Thomas*, 482 U.S. 483, 492–93, n. 9 (1987).

131 S. Ct. at 1746. Consequently, Chase's motion should be denied even absent Chase's waiver.

### A.     The Law Of Unconscionability.

In California, "[u]nconscionability refers to an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (citation and quotation marks omitted). In other words, unconscionability has both a procedural and a substantive component. *See Hoffman v. Citibank, N.A.*, 546 F.3d 1078, 1083-85 (9th Cir. 2008). Procedural unconscionability refers to the manner in which a contract is formed, while substantive unconscionability refers to a contract's actual terms and their effect. *Ingle*, 328 F.3d at 1171. The California courts evaluate unconscionability on a sliding scale: "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, *and vice versa*." *Ingle*, 328 F.3d at 1171 (emphasis added) (quoting *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)); *see also Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1095 n.4 (9th Cir. 2009).

### B.     The Chase Arbitration Agreement Is Procedurally Unconscionable.

Under California law, "a contract is procedurally unconscionable . . . if it is 'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) (quoting *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. Cal. 2003); *see also Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257, 1282 (9th Cir. 2006). Put simply, when a bank imposes an account agreement on a "take it or leave it" basis, as Chase has here, the contract is procedurally unconscionable unless it also offers its customers a

"meaningful opportunity to opt out." *Hoffman*, 546 F.3d at 1079-84; *Al-Thani v. Wells Fargo & Co.*, No. C 08-1745, 2009 WL 55442, at *7 (N.D. Cal. Jan. 7, 2009); *accord Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) (King, J.). Chase did not offer its checking account customers any opportunity to opt out of the arbitration provision. The provision and its class action waiver are embedded in a procedurally unconscionable contract of adhesion. *Cf. Ingle*, 328 F.3d at 1172 (holding that an apparently clear arbitration provision in a contract of adhesion was procedurally unconscionable even when the plaintiff had three days to review it).

As discussed below, Chase's arguments against unconscionability are unavailing. *See* Mot. at 12-14.

### 1.   Chase Misapprehends *Concepcion*.

Chase's first argument that the CAA is procedurally reasonable mistakenly conflates procedural and substantive unconscionability. In particular, Chase argues:

> In *Concepcion*, the Supreme Court rejected the idea that arbitration agreements are per se unconscionable when found in adhesion contracts.... [T]he fact that the contract at issue in *Concepcion* was an adhesion contract did not affect the Supreme Court's analysis.

Mot. at 13. This is true, but it is has no bearing on the issue of procedural unconscionability at all, which was never addressed by the Court. *See generally Concepcion*, 131 S. Ct. 1740-53; *id.* at 1753-56 (Thomas, J., concurring); *id.* at 1756-62 (Breyer, J., dissenting). Rather, the Supreme Court confined its analysis to the substantive questions posed by a class-action waiver. *See generally id.*[8]

### 2.   Under California Law, A Contract Of Adhesion Is Procedurally Unconscionable Even If Customers Are Given Notice Of Its Terms.

Chase contends the CAA is enforceable because customers were "given time in advance of establishing their accounts to review the account terms." Mot. at 14. The contention fails for

---

[8] Chase notes that "the majority in *Concepcion* appeared to be little troubled by" the adhesive nature of that contract. *See* Mot. at 13. This understates it significantly. The Court did not even analyze procedural unconscionability; it was irrelevant to the issue before it. The Court did observe, of course, that the *Discover Bank* rule was "limited to adhesion contracts", *Concepcion*, 131 S. Ct. at 1750, another way of saying that an adhesive contract was one of the necessary predicates to the rule's operation; and so, where that element was not present, the analysis did not even proceed to the other elements in the rule. In short, any *dicta* in *Concepcion* regarding contracts of adhesion has no bearing here.

several reasons.  First, it is unclear on this record whether Chase's California customers did, in fact, receive the CAA prior to account opening.  Chase cites no evidence for this proposition.  As Plaintiffs in the companion *Lopez et al. v. JPMorgan Chase Bank, N.A.* case averred, they do not recall ever receiving the CAA, let alone having the opportunity to review it prior to establishing their accounts.  [*See* **DE # 1506-6 at ¶¶ 6-7** (noting that the CAA was not published until two years *after* Mr. Reed opened his account); **DE # 1506-7 at ¶¶ 4-5; and DE # 1506-8 at ¶¶ 5-7**].[9]

Second, and more important, whether its customers can review account terms prior to opening an account is "irrelevant" under California law.  *Ingle*, 328 F.3d at 1172; *see also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) ("California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree." (citation omitted)); *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 582 (2007) (explaining that procedural unconscionability is synonymous with a contract of adhesion).

Third, even if it could be relevant in some other case, Chase's argument that a reasonable customer would have seen and understood this arbitration agreement, *see* Mot. at 13, should still be rejected here.  [*See, e.g.*, **DE # 1506-6 at ¶ 8** ("Even if I had been given the Deposit Agreement, I would not have known that I would be required to arbitrate any disputes with the bank."); **DE # 1506-7 at ¶ 6; DE # 1506-8 at ¶¶ 9-11**].

While Chase maintains that the arbitration provision was conspicuous, *see* Mot. at 13, this argument crumbles when one examines the account agreement itself:

- The word "arbitration" appears in the same small print and the same font as dozens of other sub-headings.  [*See generally* **DE # 348-1**]
- The class action waiver appears on pages 19 and 20 of a 32-page document. [**Id. at 19–20**].
- The Table of Contents contains no reference to arbitration.  [**Id. at 1;** *cf.* **DE # 447 at 20 n.15** ("[T]he provision is not noted with any importance earlier in the Agreement except for being capitalized in the small font sized, single spaced table of contents, which was unlikely to be noticed.")].

---

[9] Chase attaches a declaration from one of its employees stating that the CAA is "typically conveyed to customers along with other information." [**DE # 1617 at ¶ 5**].  The declarant cites no specific basis for her knowledge in this regard.

It should also be noted that Chase's argument that the CAA's index references arbitration, *see* Mot. at 5, actually supports Plaintiffs' position. Setting aside the reality that no ordinary customer will parse the index to such an agreement, the index's reference to arbitration cannot even be found under the letter "A." **[DE # 348-1 at 31]**. The index will only alert a customer to the existence of an arbitration provision if the customer reads the entire index or thinks to look under the letter "R." **[Id.** ("Right to Resolve Disputes by Arbitration")].

3.     **The Availability Of Other Banks Does Not Affect The Analysis.**

Chase insists that its agreement is not procedurally unconscionable because its customers were free to "choose to bank elsewhere . . . . [t]here are plenty of other banks." Mot. at 13. This has no legal relevance whatsoever. Under California law, "the availability of other options does not bear on whether a contract is procedurally unconscionable." *Ingle*, 328 F.3d at 1172 (citations omitted); *see also Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 985-86 (9th Cir. 2007).

4.     **The Arbitration Agreement Is Procedurally Unconscionable As To All Class Members.**

Citing a 26-year old intermediate state court opinion from *outside* of California, Chase claims that "procedural challenges cannot be advanced on a classwide basis by Ms. Luquetta, who has not even been certified as a representative of the purported class." Mot. at 14. Chase thus implies that procedural unconscionability can *never* be asserted prior to class certification. This is incorrect. *See, e.g., Hoffman*, 546 F.3d at 1079-84 (finding procedural unconscionability prior to certification in a class action brought under California law); *accord, e.g., Kardonick v. Citigroup, Inc.*, No. 1:10-CV-23023, 2011 WL 673872, at *2 (S.D. Fla. Feb. 17, 2011) (King, J.) (South Dakota law); *Abels*, 678 F. Supp. 2d at 1279 (King, J.) (Florida law).

5.     **Plaintiffs Are Not Estopped From Challenging The Arbitration Agreement's Enforceability.**

Chase has one additional argument, that Plaintiffs are estopped from attacking the procedural unconscionability of the arbitration agreement because the Class Complaint pleads "that the arbitration terms were in force between the Absent Class Members and Chase." Mot. at 12. But this is incorrect; there is nothing inconsistent about acknowledging that a contract was formed, while arguing against enforcement of one of the contract's provisions. Indeed, there are thousands of reported challenges to arbitration agreements, and presumably the vast majority of these acknowledge the existence of a contract. *See, e.g., Kardonick*, 2011 WL 673872 at *2

-15-

(King, J.) (finding a complaint pled unconscionability properly in an action for breach of contract); *Abels*, 678 F. Supp. 2d at 1279 (King, J.) (same).[10]

C.    **The Arbitration Provision Is Substantively Unconscionable.**

Chase's arbitration agreement is also substantively unconscionable because its terms are "overly harsh" as well as "one-sided." *See, e.g., Armendariz*, 6 P.3d at 690 (quoting *A & M Produce Co.*, 135 Cal. App. 3d 473, 486-87 (Cal. App. 1982)). The class waiver purports to require arbitration of claims for individual damages that are quite small, but very expensive to pursue. *See* Ex. A (Olsen Decl.) at ¶ 15; *see also* Declaration of Arthur Olsen included in Appendix IV to Plaintiffs' Motion for Class Certification filed April 25, 2011 (under seal) at ¶ 45 (calculating damages of the four class representatives in *Lopez* action, and concluding that Chase assessed them excessive overdraft fees totaling $272, $64, $510 and $279, respectively).

Individual arbitrations here "would be prohibitively expensive." *Green Tree Fin. Corporation-Alabama v. Randolph*, 531 U.S. 79, 92 (2000). Consequently, California law forbids enforcement of Chase's class action waiver. *See* Cal. Civ. Code § 1668; *see also Linder v. Thrifty Oil Co.*, 2 P.3d 27, 38 (Cal. 2000) ("A company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit; the class action is often the only effective way to halt and redress such exploitation." (citation omitted)).

Put simply, absent class members could not individually vindicate their rights under the CAA's arbitration agreement, which acts to wholly exculpate Chase from liability, not to promote arbitration. As explained below: (1) it costs more to initiate arbitration against Chase than absent class members could hope to recover; (2) Chase retains the ability to extract draconian retribution, including attorney's fees, against individual customers who challenge it; (3) the individual arbitration process will not enable them to obtain the discovery necessary to prove they have been damaged by Chase's practices; (4) customers do not have the means to hire and pay an expert the thousands of dollars required to prove their individual claims; and; (5) no individual customer could afford an attorney. This effectively forecloses any possibility of recovery to customers if they are forced to proceed by individual arbitrations.[11]

---

[10] In any event, the Class Complaint alleges specifically that the CAA is "procedurally and substantively unconscionable and unenforceable . . . ." **[DE # 348 at ¶ 75(h)]**.

[11] The facts stated herein do not reflect the ongoing arbitration-related discovery in *Lopez* based on this Court's June 3, 2011 Order Deferring Ruling on Motions to Compel Arbitration, Granting *(Footnote continues.)*

1.    **Customers Must Pay $775 To Initiate Arbitration.**

The CAA requires a customer to pay a $775 fee simply to initiate arbitration, of which the CAA obligates Chase to reimburse only $500 unless the customer prevails. Ex. C (CAA) at 20 (explaining that Chase will "reimburse" customers $500); *see also* Exs. D & E (AAA Commercial Arbitration Rules & Supplementary Customer Procedures) (explaining that the AAA charges $775 to initiate arbitration). This is a problem for two distinct reasons. First, many customers simply would not have $775 to pay towards the mere *chance* of recovering less than $300. Second, even setting aside the $775 initial cost and focusing only on the $275 "net" cost to a customer, it is difficult to conceive of the customer who would pay $275 for the mere *chance* of recovering an amount less than $300. In light of this comparison, it is "prohibitively expensive" for an individual customer to avail himself of arbitration under the CAA, *Green Tree*, 531 U.S. at 92, and thus unconscionable under California law, Cal. Civ. Code § 1668. The Court need look no further.

Chase argues that this analysis is changed because, on June 14, 2011, its counsel sent a letter to Plaintiffs' counsel representing that the Bank would agree to pay all fees "if any absent class member requests it." **[DE # 1616-1 at 2]**. But this assurance is totally irrelevant under California law because unconscionability is measured at the time of contract formation. *See Concepcion*, 131 S. Ct. at 1746. Chase cannot transform an unconscionable provision into an enforceable provision through its post-contracting acts. *See id*; *see also Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1075 (9th Cir. 2007) ("[S]ubstantive unconscionability . . . [asks] whether the *terms of the contract* are unduly harsh or oppressive." (quotation marks and citation omitted) (emphasis added)).

Chase's payment would be irrelevant even if California law were otherwise. First, it is wholly discretionary; no individual customer could rely on any offset of this cost. Second, Chase provides no assurance that the aggrieved customers could file arbitration complaints without having to first pay the filing fee from their own (limited) funds, with the promised reimbursement coming only later. Finally, Chase only agrees to pay fees "if any absent class

---

Time to Conduct Limited Arbitration-Related Discovery in *Lopez*. **[DE # 1576]**. Chase acknowledged that Plaintiffs' arbitration-related discovery in *Lopez* will involve the same issues raised here. **[DE # 1584 at ¶ 6]**. For this reason, Plaintiffs are filing a motion to defer ruling on this arbitration motion pending completion of arbitration-related discovery permitted under the June 3 Order.

member requests it" [**DE # 1616-1 at 1**], and Chase's customers would have no reason to know to make such a request.

**2.     The CAA Authorizes Chase To Seek Attorney Fees And Freeze Customer Accounts.**

The substantive unconscionability of the CAA is evident in its terms allowing Chase to recover *all* arbitration-related costs from the customer and to freeze the account of any customer who pursues arbitration against Chase. Ex. C (CAA) at 17.  The agreement provides:

> We may restrict the use of your Account if the Account is involved in any legal or administrative proceeding, whether or not we're a party to the proceeding.  All expenses incurred by us as a result of a proceeding affecting your Account, may be charged against your Account or billed to you separately.  These fees may include, but are not limited to, court costs and attorney fees.

*Id.*

Alongside these harsh, one-sided terms, the CAA also provides that Chase will reimburse the cost of the arbitrator's time. *Id.* at 20.  But that is not the only cost associated with arbitration – indeed, the CAA provides that Chase *can* seek attorney fees, and that an arbitrator *can* order the payment of such fees even if Chase does not affirmatively seek them. *Id.*; *see also* Ex. D (AAA Commercial Arbitration Rules) (R-43: scope of award permits award of attorneys' fees).

Few customers would ever accept such a risk in exchange for a recovery of approximately $300.  [*See* **DE # 447 at 21** (emphasizing risk that customers would be saddled with defendant banks' attorney fees as an overwhelming deterrent to filing individual arbitrations)].

**3.     Customers Cannot Prove Liability Without Discovery.**

Given the particular claims asserted by Plaintiffs, it is only possible to establish Chase's liability with the aid of discovery. *See Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1138 (N.D. Ca. 2010).  In the litigation against Wells Fargo, the court explained that while Plaintiffs' expert Arthur Olsen was able to "determine how many overdrafts were added by the high-to-low practice for debit-card transactions during the class period . . . Court orders were needed to provide him access to this data." *Id.* at 1138.  As Mr. Olsen explains, it "would not be possible . . . to conclusively determine whether the overdraft fees reflected on a consumer's account statements resulted from debit re-sequencing. It would also not be possible . . . to

determine the total amount of overdraft fees charged to that customer that resulted from debit re-sequencing." Ex. A (Olsen Decl.) at ¶ 9.

### 4. Preparation for Individual Arbitration Is Prohibitively Expensive.

Even if a customer were to have access to Chase's internal documents, the actual preparation of an individual case of the type asserted in this litigation entails mind-boggling costs for a single customer. *See, e.g.* Ex. A (Olsen Decl.) at ¶¶ 9-14, 16-31. Mr. Olsen illustrates the great amount of work and expertise necessary to establish Chase's liability. *See id.; see also id.* at ¶ 9 ("[E]ven with access to the information in the internal Chase database(s), only someone with expertise similar to mine could calculate the amount of overdraft fees charged as a result of debit re-sequencing."). The costs of using an expert such as Mr. Olsen would be multiples greater than the typical absent class member's damages. *See id.* at ¶ 15.

### 5. Absent Class Members Would Be Unable To Retain Counsel To Assist Them In Arbitrations.

The difficulty of paying attorneys' fees presents yet another obstacle to an individual customer seeking to individually arbitrate claims against Chase. Indeed, experienced California attorneys would be unwilling to represent absent class members in individual arbitrations against Chase. *See* Ex. G (Creitz Decl.) at ¶¶ 6-11; *see also* Ex. H (Gertler Decl.) at ¶¶ 6-14. As California attorney Joseph A. Creitz averred, "no economically rational plaintiff" would pay an attorney thousands of dollars to arbitrate a claim this small, and "no economically rational attorney" would accept such a case on contingency. *See* Ex. G (Creitz Decl.) at ¶¶ 9-11; *see also* Ex H (Gertler Decl.) at ¶ 12 ("[I]t is my opinion that an individual class member's case, if required to be pursued in an individual arbitration proceeding, would be rejected by virtually every other qualified plaintiffs' lawyer with experience in handling litigation of this nature.").

### 6. Individual Litigation Against Chase Would Be Prohibitively Expensive.

Each of the above five factors, standing alone, establishes that individual arbitration against Chase is "prohibitively expensive," *Green Tree*, 531 U.S. at 92, and thus unconscionable under California law, Cal. Civ. Code § 1668. When the five factors are considered together, it becomes even more clear that this is precisely the type of case contemplated by Judge Posner when he wrote that "[t]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues" for such a tiny sum of money. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Simply put, absent class

members could not individually vindicate their rights under the CAA's arbitration provision; it acts to exculpate Chase from liability, not to promote arbitration.

The class waiver is unenforceable where the law's preference for arbitration "is not served by an adhesive agreement that effectively blocks every forum for the redress of disputes, including arbitration itself." *Gutierrez v. Autowest, Inc.*, 7 Cal. Rptr. 3d 267, 277 (Cal. Ct. App. 2003); *see also, e.g.*, *Comb v. Paypal, Inc.*, 218 F. Supp. 2d 1165, 1176 (N.D. Cal. 2002) ("[T]he named Plaintiffs here, none of whose individual claims exceeds $310.00, have shown that the costs each of them is likely to incur in commercial arbitration likely would exceed those involved in bringing a collective action."); *Parada v. Super. Ct.*, 98 Cal. Rptr. 3d 743, 765 (Cal. Ct. App. 2009).

### D. Chase's Chosen Arbitrators Would Deprive Absent Class Members Of A Fair Hearing.

Even if the arbitration agreement were otherwise enforceable, the Court cannot be assured that the arbitral forum Chase has selected, the American Arbitration Association ("AAA"), would provide absent class members with a fair hearing.[12]  The AAA has imposed a "moratorium" on customer arbitrations initiated by businesses because of grave "weaknesses" in its arbitration process, including doubts about "*arbitrator neutrality*."  *See* Ex. I (AAA Moratorium) (emphasis added); *see also* Ex. J (Minnesota AG Ltr.) (expressing concerns about potential bias by arbitrators in customer arbitrations).[13]  The systemic deficiencies acknowledged by the AAA demonstrate that the AAA is an inadequate forum. *See Porter v. Singletary*, 49 F.3d 1483, 1487-88 (11th Cir. 1995) ("[A] fundamental tenet of due process is a fair and impartial tribunal.").  This Court should not enforce arbitration before Chase's hand-picked arbitrators; their procedures are "so wholly one-sided as to present a stacked deck." *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999).

---

[12] The CAA provides for arbitration administration by either the National Arbitration Forum ("NAF") or the AAA.  Chase acknowledges that arbitration through the NAF is unavailable.

[13] Chase notes that the vast majority of courts to consider this issue have concluded that the moratorium does not apply when a customer initiates litigation, even though it is the business, not the customer, who is seeking to arbitrate the dispute.  Not all courts agree. *See QuickClick Loans, LLC v. Russell*, 943 N.E.2d 166, 173 (Ill. Ct. App. 2011).  The weight of case law, moreover, only serves to emphasize the bias inherent in the AAA, which is funded by repeat players such as Chase: the AAA has apparently interpreted its moratorium as narrowly as possible, notwithstanding its admitted concerns that it cannot adjudicate disputes impartially when it has an institutional interest in keeping its longstanding clients happy.

## CONCLUSION

For all of the foregoing reasons, Chase's motion to stay the proceedings in favor of arbitration as to putative absent class members should be denied.

Dated: July 5, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

<u>/s/ Robert C. Gilbert</u>
Robert C. Gilbert, Esquire
Florida Bar No. 561861
<u>rcg@grossmanroth.com</u>
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
<u>szg@grossmanroth.com</u>
David M. Buckner, Esquire
Florida Bar No. 60550
<u>dbu@grossmanroth.com</u>
Seth E. Miles, Esquire
Florida Bar No. 3855830
<u>sem@grossmanroth.com</u>
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271


/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008


/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Jason L. Lichtman, Esquire
Illinois Bar No. 6290052
jlichtman@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel.:  212-355-9500
Fax:  212-355-9592

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

### CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

928185.8

-25-