UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Luquetta v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23432-JLK
C.D. Cal. Case No. CV09-6967-GHK

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

*Duval v. Citizens Financial Group, Inc.*
N.D. Ill. Case No. 10-cv-00533
S.D. Fla. Case No. 1:10-cv-21080-JLK

*Daniels v. Citizens Financial Group, Inc.*
D. Mass. Case No. 10-cv-10386
S.D. Fla. Case No. 1:10-cv-22014-JLK

*Blankenship v. RBS Citizens, N.A.*
D.R.I. Case No. 10-163S
S.D. Fla. Case No. 1:10-cv-22942-JLK

*Simmons v. Comerica, Inc.*
N.D. TX Case No. 3:10-cv-326
S.D. FL Case No. 1:10-cv-22958-JLK

*Dwyer v. TD Bank, N.A.*
D. Ma. Case No. 1:09-12118
S.D. Fla. Case No. 10-cv-20855-JLK

*Mascaro v. TD Bank, N.A.*
D.D.C. 1:10-cv-0040
S.D. Fla. Case No. 10-cv-21117-JLK

*Mosser v. TD Bank, N.A.*
E.D. Pa. 2:10-cv-00731
S.D. Fla. Case No. 10-cv-21386-JLK

*Mazzadra, et al v. TD Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-21870-JLK

*Casayuran, et al. v. PNC Bank, National Association*
S.D. FL. Case No. 10-cv-20496-JLK

*Cowen, et al. v. PNC Bank, National Association*
S.D. FL. Case No. 10-cv-21869-JLK

*Hernandez, et al. v. PNC Bank, N.A.*
S.D. FL. Case No. 10-cv-21868-JLK

*Matos v. National City Bank*
S.D. FL. Case No. 10-cv-21771-JLK

*Steen v. Capital One, N.A.*
E.D. La. Case No. 2:10-cv-01505-JCZ-KWR
S.D. Fla. Case No. 1:10-cv-22058-JLK

_____/

## OMNIBUS ORDER DENYING DEFENDANTS' MOTIONS FOR RECONSIDERATION

**THIS CAUSE** comes before the Court upon Defendant JPMorgan Chase Bank N.A.'s Motion to Dismiss on Grounds of Preemption and Further Reconsideration (DE # 1484), filed May 17, 2011.[1] Defendants move for reconsideration of the Court's earlier Omnibus Order Denying Dismissal (DE #305), in which the Court declined to dismiss Plaintiffs' claims on the basis of preemption. Now, in support of its Motion, Defendants cite a recent Eleventh Circuit decision, *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d

---

[1] The Court also considers the fully briefed joinder motions filed by other Defendant banks. In particular, the Court considers the following joinder motions: Union Bank, N.A.'s Joinder (DE # 1509), filed May 20, 2011; Citizens Financial Group, Inc.'s Joinder (DE # 1521), filed May 24, 2011; Comerica, Inc.'s Joinder (DE # 1568), filed June 3, 2011; TD Bank, N.A.'s Joinder (DE # 1575), filed June 3, 2011; Capital One's Joinder (DE # 1587), filed on June 7, 2011; PNC Bank, N.A.'s Joinder (DE # 1591), filed June 8, 2011. Therefore, for convenience, the Court will refer to individual Plaintiffs and Defendant banks collectively.

1194 (11th Cir. 2011), which held that the National Banking Act, 12 U.S.C. § 21 *et seq.* ("NBA"), preempted an action based upon a state consumer protection law directed at limiting the ability of a bank to charge fees for certain services.[2] Defendants contend that *Baptista* mandates that Plaintiffs' claims be considered preempted by the NBA.

Upon consideration and after holding oral argument on this issue on July 12, 2011, the Court finds that *Baptista* does not demand reversal of this Court's Omnibus Order. Therefore, Defendant Chase's Motion to Dismiss on Grounds of Preemption and Further Consideration, as well as the joinder motions of the other Defendant banks, is denied for the following reasons.

I.   **Omnibus Order's Ruling on Preemption**

On December 22, 2009, Defendants filed an Omnibus Motion to Dismiss (DE #217) on the partial basis that Plaintiffs' claims were preempted by the NBA. In its Omnibus Order (DE # 305) entered March 11, 2010, the Court analyzed the issue of preemption in the context of the NBA, ultimately finding that Plaintiffs' claims were not preempted thereunder. *See also In re: Checking Account Litig.*, 694 F. Supp. 2d 1302, 1310-14 (S.D. Fla. 2010). Rather than summarizing herein the Court's findings in that Order, the Court cites in full the relevant parts as to NBA preemption:

> As the Eleventh Circuit explained in *Rine v. Imagitas, Inc.,* "[u]nder the Supremacy Clause, any state law that conflicts with federal law is preempted." 590 F.3d 1215, 1224 (11th Cir.2009) (quoting *Gibbons v. Ogden,* 22 U.S. 1, 9 Wheat. 1, 6 L.Ed. 23 (1824)). Defendants assert that the activities of national banks in conducting the "business of banking" are subject to exclusive federal regulation and any state law which attempts to regulate, limit, or condemn such activities is preempted. Defendants primarily rely on OCC Regulations § 7.4002 and § 7.4007 and OCC Interpretative Letter 997. All of Plaintiffs' allegations in this action rely upon state law claims. Defendants argue these allegations are preempted because

---

[2] Plaintiffs filed their Response in Opposition (DE # 1578) on June 3, 2011, to which Defendant Chase filed its Reply (DE # 1605). Therefore, the underlying matter is ripe for determination.

they are in direct conflict with the Office of the Comptroller of the Currency's regulations and attempt to regulate the business of banking.

Plaintiffs respond that they are not trying to prevent banks from engaging in the business of banking, they are merely asking the banks to do so in good faith. Specifically, Plaintiffs claim they are not challenging the bank's right to charge overdraft fees. Instead, they are challenging the banks' practice of manipulating the overdraft fees "in order to maximize a benefit to them and to the great detriment of the parties who are their account holders." (Oral Arg. Tr. at 33.) Plaintiffs explain that the banks are not federally authorized to manipulate the transactions as alleged and therefore their claims are not preempted by federal law. *Id.* at 38. The Court agrees.

As Defendants point out, regulation of national banks is one of the few areas in which preemption of state law is presumed. *Barnett Bank of Marion County, N.A. v. Nelson,* 517 U.S. 25, 32, 116 S.Ct. 1103, 134 L.Ed.2d 237 (1996). National banks are chartered by the federal government pursuant to the National Bank Act ("NBA") and the NBA grants national banks "all such incidental powers as shall be necessary to carry on the business of banking." 12 U.S.C. § 24 (Seventh) (2006). To insure that national banks can carry out the business of banking without the impairment of inconsistent or intrusive state laws, courts have "repeatedly made clear that federal control shields national banking from unduly burdensome and duplicative state regulation." *Watters v. Wachovia Bank,* 550 U.S. 1, 11, 127 S.Ct. 1559, 167 L.Ed.2d 389 (2007).

The United States Supreme Court has upheld the doctrine of federal preemption to shield the banking activities of national banks from the application of state law. *See e.g., Barnett Bank of Marion County,* 517 U.S. 25, 116 S.Ct. 1103; *Franklin Nat. Bank of Franklin Square v. New York,* 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954). In *Barnett Bank* the Supreme Court determined that a federal law allowing national banks to "act as the agent for any fire, life, or other insurance company" preempted a state law outlawing financial institutions from engaging in insurance agency activities. 517 U.S. at 26, 116 S.Ct. 1103. The *Barnett Bank* Court explained that to determine preemption the Court must look at whether the federal and state statutes are in *irreconcilable conflict. Id.* at 32, 116 S.Ct. 1103. In other words, whether compliance with both statutes is a physical impossibility, or whether the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id.* Similarly, the Court in *Franklin National Bank* held that federal statutes which authorize national banks to receive savings deposits conflicted with New York state legislation that prohibited national banks from using the word 'saving' or 'savings' in their advertising or business. 347 U.S. at 376-79, 74 S.Ct. 550. The Court found the statutes incompatible; finding that since advertising is a natural part of the business of banking, the government cannot allow the

banks to receive savings deposits without allowing them to advertise the same. *Id.*

Further, the Court in *Watters* held that an operating subsidy of a national bank cannot be subject to state mortgage lending requirements such as registration, inspection and enforcement regimes. 550 U.S. 1, 127 S.Ct. 1559. The Court explained that "[s]tates are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers. But when state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." *Id.* at 12, 127 S.Ct. 1559.

Nevertheless, as Plaintiffs argue, the aforementioned cases all address state laws specifically targeted at national banks. State laws of general applicability, however, have been found not to be preempted. *See e.g. Baldanzi v. WFC Holdings Corp.*, 2008 WL 4924987 (S.D.N.Y.2008) ("In contrast to findings of federal preemption in cases involving specific state regulations that conflict with the NBA, causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted."). In fact, the Supreme Court held in *Watters* that "federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or general purpose of the NBA." *Watters*, 550 U.S. at 12, 127 S.Ct. 1559.

Looking specifically at whether federal law preempts general state law claims addressing overdraft fees, the court in *Gutierrez v. Wells Fargo Bank N.A.* found that the state law claims were not preempted. 622 F.Supp.2d 946 (N.D.Cal.2009). Explaining that "preemption would likely apply if a customer were challenging a bank's fundamental right to employ an overdraft fee at all," the court held that there was no preemption in *Gutierrez* because "the issue is whether Wells Fargo has been manipulating-indeed downright altering-customers' transaction records so as to maximize overdraft penalties imposed on customers." *Id.* at 950. Addressing the same issue in *White v. Wachovia Bank, N.A.*, the court held that "while the lawsuit may incidentally implicate Wachovia's largest-to-smallest transaction posting policy, it, more importantly, claims that Wachovia's policy allows the routine imposition of an overdraft fee for transactions that do not result in an actual overdraft. This allegation which forms the basis for all of its claims is not of a regulatory nature that would subject it to federal preemption." 563 F.Supp.2d 1358, 1367 (N.D.Ga.2008).

In their oral argument, Defendants relied heavily on the Sixth Circuit case, *Monroe Retail Inc. v. RBS Citizens*, 589 F.3d 274 (6th Cir.2009). In *Monroe Retail*, the court found that the NBA's grant of authority to charge fees includes the authority to determine service fees for the garnishment process.

The court found that Ohio's state conversion claim which would require the bank to freeze accounts immediately upon receipt of a garnishment order was preempted. Notably, the court agreed with the aforementioned cases and found that state laws of general applicability that do not target banks are "exempted from preemption 'to the extent that they only incidentally affect the exercise of national banks' deposit taking powers." *Id.* at 282. The court then went on to find that " 'when state laws significantly impair the exercise of authority, enumerated or incidental under the NBA', the state laws 'must give way.' " *Id.* at 283 (quoting *Watters,* 550 U.S. at 12, 127 S.Ct. 1559).

Here, the federally authorized powers have been enumerated by the Office of the Comptroller of the Currency ("OCC"). The OCC, the regulatory agency charged with implementing the NBA, has promulgated a binding regulation confirming that the federally authorized "powers" of national banks include the power to impose non-interest fees such as overdraft fees. 12 C.F.R. § 7.4002(a) ("Authority to impose charges and fees. A national bank may charge its customers non-interest charges and fees, including deposit account service charges."). Further, the OCC sets out the factors a national bank is supposed to use to establish those fees, their amounts and the method of calculating them. 12 C.F.R. § 7.4002(b)(2). Namely, a national bank should establish non-interest fees, "in its discretion, according to sound banking judgment and safe and sound banking principles." *Id.* Further, when asked if the process followed by the Banks in deciding to use a high-to-low order of check posting is consistent with the safety and soundness considerations of 12 C.F.R. § 7.4002(b) the OCC held, in Interpretive Letter No. 997, that "we agree that the Banks' decision to set fees based on a given order of check posting falls within the Banks' authority to set fees pursuant to section 4 (Seventh) and section 7.4002. We further agree that the process the Banks used in deciding to adopt the order of check posting described in your submissions is consistent with section 7.4002." 70 FR 9127-01.

The OCC also addresses federal preemption of regulations on deposit-taking activities. In Section 7.4007(b)(2) the OCC states "[a] national bank may exercise its deposit-taking powers without regard to state law limitations concerning: ... ii) Checking accounts; iii) Disclosure requirements; iv) Funds Availability ..." 12 C.F.R. § 7.4007(b)(2). The OCC goes on to clarify "state laws that are not preempted" in Section (c): "State laws on the following subjects are not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' deposit-taking powers: 1) Contracts; 2) Torts; 3) Criminal History ..." 12 C.F.R. § 7.4007(c).

The state law claims before this Court are contracts and tort claims; thus this Court's inquiry is limited to whether Plaintiffs' claims, as alleged, more than "incidentally affect the exercise of national banks' deposit taking powers." The Court finds that they do not and are therefore not preempted.

6

Defendants assert that the language of the OCC expressly preempts any state law regulations on overdraft fees, but this is not the case. Section 7.4002 gives Defendant banks the right to charge overdraft fees, but it does not authorize banks to ignore general contract or tort law. Further, the OCC's interpretative letter does not authorize debit card postings in a high to low order to increase fees, it merely states that doing so does not *violate* the OCC's requirement that banks set fees using sound banking judgment. A bank could follow both the requirements of sound banking judgment outlined in Section 7.4007 and good faith; these principals are not in irreconcilable conflict. In fact, as cited by the *Gutierrez* court, the OCC itself advised a California bank that it must act in good faith when reordering checks for overdraft fees. *Gutierrez*, 622 F.Supp.2d at 952 ("The only restraint on the discretion given to the payor under subsection (b) is that the bank act in good faith."). Thus, the OCC did not expressly manifest its intent to preempt these state law claims in the language of the regulation.

Similarly, federal regulation in this field is not so pervasive that we can reasonably infer that Congress left no room for the states to supplement it. "States ... have always enforced their general laws against national banks-and have enforced their banking-related laws against national banks for at least 85 years ..." *Cuomo v. Clearing House Ass'n,* --- U.S. ----, 129 S.Ct. 2710, 2720, 174 L.Ed.2d 464 (2009). Moreover, Section 7.4007(c) explicitly reserves general areas of law to the states such as contracts, torts, criminal law and rights to collect debts, if the laws only incidentally affect the exercise of a national bank's deposit taking power.

Finally, these are state laws of general application that do not vitiate the purposes of the NBA, and banks could comply with both the NBA, OCC regulations and state laws if they refrained from engaging in the criticized posting procedures. Again, the Court's only inquiry at this stage is whether the state law claims, as alleged, more than incidentally affect the exercise of the banks' deposit taking power. The Plaintiffs alleged claims are *not* that banks lack the right to charge overdraft fees as part of their deposit-taking powers. Instead, Plaintiffs attack the allegedly unlawful manner in which the banks operate their overdraft programs to maximize fees at the expense of consumers. At this stage, these allegations do no more than incidentally affect the banks' exercise of their deposit taking power and are therefore not preempted.

(DE #305 at 9-16); *see also In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010).

## II. Eleventh Circuit's Holding in *Baptista*

Now, over 14 months later, Defendants have moved for reconsideration of the Court's earlier determination, contending that a case decided by the Eleventh Circuit on May 11, 2011 dictates a different result. Defendants provide no other basis for reconsideration of the Court's earlier ruling.

The case to which Defendants refer is *Baptista v. JPMorgan Chase Bank*, N.A., 640 F.3d 1194 (11th Cir. 2011). *Baptista* involved a woman, Vida Baptista, who had received a check written to her by a Chase Bank account holder. When she cashed the check in-person at a local Chase branch, Chase charged her a $6.00 fee because she was not herself an account holder. While she paid the charge, she later filed a putative class action complaint against Chase, purporting to state two causes of action for recovery: 1) violation of Section 655.85, Florida Statutes; and 2) unjust enrichment. Defendant Chase sought dismissal of her claims, contending primarily that they were preempted by the NBA.[3] The district court dismissed plaintiff's claims on that basis.

On appeal, the Eleventh Circuit considered whether a state consumer protection statute that was purposefully directed at a bank's fee-charging authority was preempted by the NBA. To make this determination, the court considered the Florida statute in relation to the NBA. Specifically, Section 655.85 states as follows:

> Settlement of Checks. Whenever any check is forwarded or presented to an institution for payment, **except when presented by the payee in person,** the paying institution or remitting institution may pay or remit the same, at its option, either in money or in exchange drawn on its reserve agent or agents in the City of New York or in any reserve city within the Sixth Federal Reserve District; **however, an institution may not settle any check drawn on it otherwise than at par.** The provisions of this

---

[3] Additionally, Defendant also argued that the plaintiff could not allege essential elements of her unjust enrichment claim. *Id.*

8

> section do not apply with respect to the settlement of a check sent to such institution as a special collection item.

Fla. Stat. § 655.85 (emphasis added). Under the NBA, however, banks are permitted to "exercise ... all such incidental powers as shall be necessary to carry on the business of banking ..." 12 U.S.C. § 24. The Office of Comptroller of Currency, the supervisory agency empowered with supervising and regulating federally chartered banks, interpreted the NBA to permit banks to "charge its customers non-interest charges and fees." 12 C.F.R. § 7.4002(a). Therefore, the issue before the Eleventh Circuit was whether the state statute was preempted by the NBA and its subsequent OCC interpretation.

The court found that the standard for preemption in the context of the NBA was provided by an amendment to the NBA, found in the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C. § 25b (b)(1). Therein, Congress mandated that, in the context of the NBA, "state consumer laws are preempted only if ...in accordance with the decision of the Supreme Court of the United States in *Barnett Bank of Marion County, N.A. v. Nelson, Florida Insurance Commissioner, et al*, 517 U.S. 25 ..., the State consumer financial law prevents or significantly interferes with the exercise by the national bank of its powers." *Baptista*, 640 F.3d at 1197 (citing Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 12 U.S.C. 25b (b)(1)). *Barnett* itself held that the determinative question in considering preemption of a state statute by the NBA was "whether the state statute forbids, or ... impairs significantly the exercise of a power that Congress explicitly granted." *Id.* (quoting *Barnett*, 517 U.S. at 33).

As such, in determining if Section 655.85, Florida Statutes, was preempted by the NBA, the Eleventh Circuit implicitly considered whether the state statute "forbids ... or

9

impairs significantly the exercise of a power that Congress explicitly granted." Having determined that "[t]he state's prohibition on charging fees to non-account holders, which reduces the bank's fee options by 50%," is in substantial conflict with federal authorization to charge such fees, the Eleventh Circuit adopted the Fifth Circuit's reasoning in *Wells Fargo Bank of Texas, N.A. v. James*, 321 F.3d 488 (5th Cir. 2003). The Eleventh Circuit further found that the Florida statute significantly impaired a bank's ability to "charge fees to non-account-holders presenting checks for payments."[4] *Id.* In relevant part, the court relied upon "the significant objective of 12 C.F.R. § 7.4002 [] to allow national banks to charge fees and to allow banks latitude to decide how to charge them.... in its discretion, according to sound banking judgment and safe and sound banking principles." *Id.* at 1198 n.2. As such, "allowing the banks the option of *how* to charge fees was a significant objective of the NBA and regulations promulgated thereunder ..." *Id.*

Therefore, this Court reads *Baptista* as holding that a state statute is preempted by the NBA where it is directed at limiting a right expressly granted to federally chartered banks by the NBA.

### III. Distinction Between *Baptista* and MDL 2036

In light of that holding, *Baptista*, while relevant to any discussion of the preemptive effect of the NBA, does not overturn this Court's earlier determination that the NBA does not preempt Plaintiffs' claims. Instead, the Court finds that its earlier

---

[4] In arriving at this conclusion, the Eleventh Circuit also noted that the Fifth Circuit had found both that the OCC had the authority to promulgate rules applicable to the NBA, and that the OCC's interpretation warranted deference under *Auer v. Robbins*, 519 U.S. 452 (1997). However, because neither of these issues is relevant to this Court's inquiry, they need not be further addressed.

reasoning in its Omnibus Order accords with the Eleventh Circuit's interpretation of the preemptive reach of the NBA.

At it simplest, *Baptista* was concerned with a state statute that specifically sought to delimit federally-granted authority to banks to charge fees to their customers and directly interfered with that right. As such, the Eleventh Circuit was faced with the question of whether a state statute, purposefully directed at impinging upon the NBA federal legislation, can serve as a basis for recovery. Unsurprisingly, the Eleventh Circuit found that the state statute was preempted not only because it was intended to undermine the NBA, but also because it had more than an incidental impact upon a bank's authority.

MDL 2036 is distinguishable from *Baptista* because it is not predicated upon a bank's authority to charge fees. As this Court previously noted in its Omnibus Order, *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1310-1311, none of the MDL Plaintiffs have claimed that banks are unable to charge fees to their customers. Indeed such a claim would fail in light of the OCC's interpretation of the NBA, which permits banks to "charge fees and to allow banks latitude to decide how to charge them." *See also* 12 C.F.R. § 7.4002(b)(2). Instead, Plaintiffs only seek recovery for the manner in which banks manipulated their debit and checking charges, rather than the manner in which those fees were computed. *Cf. In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1313-14.

The Court previously noted this same distinction in its Omnibus Order. However, it bears further discussion. A desire to limit a bank's authority to charge a fee is not synonymous with a desire to hold a bank liable for the bad-faith manner in which an account is reorganized to justify a larger number of overdraft charges. *Baptista* holds that

11

the former cannot be permitted in light of the NBA's preemptive reach. But neither this Court nor the Eleventh Circuit can prevent a lawsuit by an individual under the latter, since the NBA has not foreclosed such claims. Instead, very much to the contrary, 12 C.F.R. § 7.4007(c) states as follows:

> State laws are not preempted. State laws on the following subjects are not inconsistent with the deposit-taking powers of national banks and apply to national banks to the extent that they only *incidentally affect* the exercise of national banks' deposit-taking powers: (1) Contracts; (2) Torts; [and] (3) Criminal Law ...

*Id.* (emphasis added). Inherently, therefore, the NBA rests upon a foundation of state contract law that it does not — it cannot — preempt.

Therefore, just like when it previously passed on the issue of preemption, the issue before this Court in MDL 2036 is whether the claims raised by Plaintiffs—and the state laws upon which they are founded—only "incidentally affect the exercise of national banks' deposit-taking powers" and the other powers granted to them by the NBA. The Court so finds. Black's Law Dictionary defines "incidental" as "[s]ubordinate to something of greater importance; having a minor role ..." *Black's Law Dictionary* 777 (8th ed.2004). As noted above, Plaintiffs are not seeking to overturn the banks' authority to charge fees, which is certainly of "greater importance" within the meaning of *Black*'s definition of "incidental." Instead, Plaintiffs seek only to ensure that the banks' actions are not taken in bad faith and in breach of the banks' duty to act in good faith towards their depositors. Notwithstanding the substantial damages alleged by Plaintiffs, the oft-presumed duty of good faith and fair dealing is certainly subordinate to a bank's ability to "charge fees and to allow banks latitude to decide how to charge

them."[5] Moreover, insomuch as Plaintiffs are seeking only to enforce the "sound banking judgment and safe and sound banking principles," *Baptista*, 640 F.3d at 1198 n.2, the purpose of their claims are harmonized with the stated intent of the NBA.

Accordingly, insomuch as Plaintiffs' respective claims are based upon state contract principles expressly untouched by the NBA, the application of which has only an "incidental impact" upon the exercise of a banks' deposit-taking powers, *Baptista* has not mandated preemption of those claims. Nor, as implied by the Savings Clause of the NBA, could it.

### IV. Denial of Certification of Interlocutory Appeal

Finally, although Defendants request that this Court certify an interlocutory appeal in the event it finds that *Baptista* does not apply here, the Court finds such certification inappropriate. Under the terms of § 1292(b), a court must find that three conditions are satisfied: 1) such an order involves a controlling question of law; 2) as to which there is substantial ground for difference of opinion; and 3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The Court finds that this test is not met here, as certainly neither of the first two conditions is satisfied: *Baptista* does not control under the facts as alleged by Plaintiffs, and the NBA cannot preempt state contract claims that are expressly untouched by the NBA's own terms. *Cf. McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1256-59

---

[5] This Court is not alone in finding that the types of claims raised by Plaintiffs are not barred by the NBA. For instance, the court in *Gutierrez v. Wells Fargo Bank N.A.*, No. 07-05923, 2010 WL 1233885 (N.D. Cal Mar. 26, 2010) held, "[t]his practice has nothing to do with whether Wells Fargo has the right to establish overdraft fees, or whether individual overdraft fees are reasonably related to actual underlying costs. ... Rather, the "unfair" claim in this litigation targets whether Wells Fargo's manipulation of customer transactions "behind the scenes" to maximize the occurrence of overdraft fees during the posting process was a breach of the bank's duty to act in good faith." *Id.*

(11th Cir. 2004). Therefore, Defendants' request for certification of an interlocutory appeal must be denied.

V.     **Conclusion**

It is therefore **ORDERED, ADJUDGED**, and **DECREED** that:

1. Defendant JPMorgan Chase's Motion for Reconsideration (DE #1484), be and the same is hereby, **DENIED**.

2. Defendant JPMorgan Chase's Motion for Certification of Interlocutory Appeal (DE #1484) is **DENIED**.

3. Defendants' joinder motions, filed respectively by Union Bank, N.A. (DE # 1509); Citizens Financial Group (DE # 1521); Comerica, Inc.(DE # 1568); TD Bank, N.A. (DE # 1575); Capital One (DE # 1587); and PNC Bank, N.A. (DE # 1591), are similarly **DENIED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida this 13th day of July, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Cc:    **All counsel of record**