UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:09-MD-2036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL NO. 2036

THIS DOCUMENT RELATES TO:

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250
_____/

## ORDER GRANTING IN PART DEFENDANT UNION BANK'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

THIS CAUSE comes before the Court upon Defendant Union Bank's Motion to Dismiss (DE #1355), filed April 20, 2011. Therein, Defendant seeks dismissal of Plaintiffs' Third Amended Complaint (DE #1317), claiming both that 1) Plaintiffs' claims are preempted by the National Banking Act, 12 U.S.C. § 21, *et seq.* ("NBA"); and 2) Plaintiffs' Third Amended Complaint fails to state a cause of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO").[1] For the following reasons, the Court finds that Defendant's Motion to Dismiss must be granted in part.

### I.   Preemption under *Baptista*

Notwithstanding the Court's earlier Omnibus Order (DE #305) finding that the NBA does not preempt Plaintiffs' claims, Defendant Union Bank again urges this Court

---
[1] Plaintiff filed her Response (DE #1455) on May 9, 2011, to which Defendant filed its Reply (DE # 1502) on May 19, 2011. The matter is therefore ripe for determination.

to find preemption of Plaintiffs' statutory and common-law claims on the basis of a recent Eleventh Circuit's decision: *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir. 2011). The Court, having previously considered this issue at length in its Omnibus Order and even more recently in its Omnibus Order Denying Defendants' Motions for Reconsideration (DE #1725), declines to do so again. Accordingly, Defendant's Motion to Dismiss is denied as to the preemptive effect of the NBA.

## II.  Discussion of Plaintiff's RICO claim

As to the second, more substantive basis for its Motion to Dismiss, Defendant Union Bank seeks dismissal on the basis that Plaintiffs have failed to plead a cause of action under Count I of Plaintiffs' Third Amended Complaint. The Court agrees for the reasons stated below.

### A. Relevant Standards

The legal standard that must be applied to motions to dismiss is well known. "For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). A complaint may be dismissed if the facts as pleaded fail to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (abrogating former "unless it appears beyond a doubt that the plaintiff can prove no set of facts" standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face"); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc) ("Pleadings must be something more than an ... exercise in the conceivable.") (quoting *United States v.*

*Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)). Finally, "[i]n analyzing the sufficiency of the complaint, [the Court] limit[s] [its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Also relevant to Count I of Plaintiffs' Third Amended Class Action Complaint is the standard for pleading an action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). To state a civil claim, a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006). *See also* 18 U.S.C. § 1962(c).[2] To satisfy the "pattern of racketeering" element, a RICO plaintiff must prove "at least two acts of racketeering activity" occurred over a period of ten years. 18 U.S.C. § 1961(5).[3] "Racketeering activity," in turn, is defined as the violation of any of a number of statutes listed in section 1961(1). 18 U.S.C. § 1961(1). These include the federal statutes prohibiting mail fraud and wire fraud. *Id.* In order to state a RICO claim under § 1962, therefore, "a plaintiff must allege facts sufficient to support each of the statutory elements

---

[2] Section 1962(c) provides in full:
> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

[3] A RICO plaintiff must also plead that the predicate acts are related, and they amount to, or pose a threat of, continued criminal activity. *H.J., Inc. v. Nw. Bell. Tel. Co.*, 492 U.S. 229, 237–40 (1989); *Jackson v. Bellsouth Tel., Inc.*, 181 F.Supp. 2d 1345, 1357 (S.D. Fla. 2001).

for at least two of the pleaded predicate acts." *Republic of Panama v. BCCI Holdings, (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997).

Where, as here, a plaintiff seeks to predicate his RICO claim upon fraud, the plaintiff must allege the elements of such a predicate under 18 U.S.C. §1341. "A plaintiff must prove the following elements to establish liability under the federal mail and wire fraud statutes: (1) that defendants knowingly devised or participated in a scheme to defraud plaintiffs, (2) that they did so willingly and with an intent to defraud, and (3) that the defendants used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (same).[4]

Any plaintiff seeking to allege violations of RICO within this district must not only satisfy the Federal Rules of Civil Procedure, but also the relevant Local Rules of the Southern District of Florida. As to the Federal Rules of Civil Procedure, any claim of RICO predicate acts founded upon allegations of fraud must be pled with the heightened level of specificity required by Federal Rule of Civil Procedure 9(b). *See Liquidation Comm'n of Banco Intercontinental v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008)

---

[4] In its entirety, Section 1341 states as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both …

18 U.S.C. § 1341.

(finding that fraud-based predicate acts must be pleaded with specificity, but non-fraud predicate acts need only meet Rule 8 pleading standard); *Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (noting that RICO claims must allege "(1) the *precise* statements, documents or misrepresentations made; (2) the *time* and *place* of and [the] person responsible for the statement; (3) the *content* and *manner* in which the statements misled the Plaintiffs; and (4) what the Defendants gained by the alleged fraud") (emphasis added).

Additionally, the Southern District's Local Rules reiterate Rule 9(b)'s heightened specificity standard by requiring that all civil RICO plaintiffs file and serve a RICO Case Statement. S.D. Fla. L.R. 12.1. The RICO Case Statement must "include the facts relied on to initiate the RICO claim." *Id.* To ensure that the necessary facts are included, the Case Statement must contain specific information that is listed in the Rule, and must be presented in the format laid out in the Rule. *Id.* RICO claims may be subject to dismissal for failure to comply with Rule 12.1. *Platypus Wear, Inc. v. Clarke Modet & Co.*, Case No. 06-20976, 2008 WL 186637, at *3 (S.D. Fla. Jan. 18, 2008) ("Dismissal of RICO counts for violation of Local Rule 12.1 is discretionary."); *Harrison Enters., Inc. v. Moran*, Case No. 97-4362, 1999 WL 1211753, at *4 (S.D. Fla. Aug. 30, 1999) (warning that continued failure to comply with Local Rule 12.1 would result in dismissal with prejudice).

### B. Plaintiffs' Allegations of RICO violations

With the relevant legal standards firmly in mind, the Court has considered whether Count I of Plaintiffs' Third Amended Complaint states a civil RICO claim. In general terms, Plaintiffs allege that Defendant, along with a consulting firm, Cast

Management, conspired to devise an unlawful procedure to increase overdraft fees that would be charged to Defendant's customers. According to Plaintiffs, this partnership resulted in innumerable transactions being reordered and the conspirators unlawfully obtaining significant proceeds therefrom. Upon review and after hearing oral argument on this issue, the Court finds that Plaintiffs' RICO claim is both procedurally and substantively deficient and must therefore be dismissed for the following reasons.

As an initial matter, Plaintiffs' RICO claim does not comply with the procedural requirements of either the Federal Rules of Civil Procedure or with the Local Rules. On a review of the docket, it is evident that Plaintiffs neither filed nor served a RICO Case Statement, as required by the Local Rules of this district. *See* S.D. Fla. L.R. 12.1. This failure is alone sufficient to justify dismissal of Plaintiffs' RICO claim. *See Platypus Wear*, 2008 WL 186637 at *3. Nor have Plaintiffs pleaded their substantive claims with sufficient particularity, as they are required to do, both under the Federal and Local Rules. Because Plaintiffs' claim is founded upon a scheme to defraud effectuated by mail and wire fraud, it must meet the heightened requirements of Fed.R.Civ.P. 9(b). *Compare Renta*, 530 F.3d at 1355 (noting only claims predicated on fraud must be pleaded with specificity), *with Am. Dental*, 605 F.3d at 1291 (holding any claim predicated upon mail and wire fraud must be plead with specificity).

However, rather than alleging specifics as to the time, place, and content of any of Defendant's purported "scheme to defraud," Plaintiffs instead sketch only the outlines of a RICO claim. They allege that Union Bank, along with Cast Management, constituted an enterprise whose purpose was to develop and to implement a scheme to defraud Union Bank's customers (¶121-22), designed to manipulate the overdraft fees charged to Union

6

Bank's customers by re-ordering the customers' transactions in such a way as to maximize the overdraft fees that would be received by Union Bank. (¶123). The relative extent of Plaintiffs' foundational factual allegations as to the mail and wire fraud RICO predicates is as follows:

- "As part and in furtherance of the scheme to defraud, Union Bank made numerous material omissions and misrepresentations to its customers and to those members of the National Class. These omissions and misrepresentations included but were not limited to failing to disclose the impact upon occurrences of overdrafts ..., and failing to inform its customers in an unambiguous manner that it always reorders debits from highest to lowest ..." (¶130).

- "Union Bank sent, mailed and transmitted, or caused to be sent, mailed or transmitted, in interstate or foreign commerce, including the Internet and its website, several materials that facilitated the scheme, including bank account statements and account information." (¶131).

At best, Plaintiffs allege mail and wire fraud occur where accurate account statements are mailed to customers and customers are given access account information on its website. Such cannot be the basis for a RICO claim.

Nowhere in Plaintiffs' allegations in the Third Amended Complaint is there any indication as to 1) what specific statements or representations made by Defendant constituted fraud; 2) when those statements were made; or 3) who made them. Although Plaintiffs attempt to bolster their allegations in their Response to the pending Motion to Dismiss,[5] the Court can consider only the properly pleaded allegations contained within the Third Amended Complaint in determining whether a cause of action has been stated.

---

[5] For instance, in their Response (DE #1455), Plaintiffs point out certain communications between Union Bank employees that Plaintiffs contend evidence the fraudulent nature of the Defendants' actions. Additionally, Plaintiffs contend that Defendants not only failed to disclose their actions to their customers, but they even contemplated destroying evidence of their activity to prevent anyone from learning of it. (DE #1455 at 9) (noting that one "Union Bank official [warned] ... his colleagues that they should destroy all the records and documents generated in the consideration and implementation of the high-to-low ordering scheme"). These allegations were not pleaded within the Third Amended Complaint.

7

Instead, Plaintiffs contend that they need not allege their claims with specificity because they have alleged an overall scheme to defraud by Defendant, replete with allegations of half-truths and omissions in furtherance of that scheme. (DE #1455 at 13, 16); *cf. Braswell Wood Co. v. Waste Away Group, Inc.*, Case No. 09-CV-891, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010) (denying sufficiency of RICO claims on the same basis). Furthermore, Plaintiffs contend that the sufficiency of their fraud claims have already been addressed by this Court in its Omnibus Order (DE #305), entered March 11, 2010.

However, as has before been noted by courts of this district, failing to plead with specificity and instead

> arguing that the focus of RICO violation is not on the mailed or wired materials but, rather, on the overall scheme to defraud.... goes too far because it fails to recognize that a RICO cause of action based on mail and wire fraud is [nonetheless] subject to particularized pleading under Rule 9(b).

*In re Managed Care Litig.*, Case No. 00-1334-MD, 2009 WL 812257, *8 (S.D. Fla. Mar. 26, 2009). While the Court is cognizant of the requirements of notice pleading,[6] the absence of any specificity in regards to Plaintiffs' claim as to an ongoing scheme to defraud is therefore fatal to their civil RICO claim. Moreover, although material omissions may be sufficient to constitute a predicate under RICO, *see Beck v. Prupis*, 162 F.3d 1090, 1096 (11th Cir. 1998), where, as here, the only perceived omission pertains to

---

[6] Indeed, the Court abides by the Eleventh Circuit's desire to "harmonize the directive of Rule 9(b) with the broader policy of notice pleading." *S.E.C. v. Scoppetoulo*, Case No. 10-20475, 2011 WL 294443, *2 (S.D. Fla. Jan. 27, 2011). Permitting a plaintiff to sidestep the stricter pleading requirements under Rule 9(b), however, would not harmonize Rules 8 and 9. Instead, it would vitiate the distinction between the two.

the alleged unconscionability of Defendant's actions, such cannot be the basis for a RICO claim.[7]

Defendant cited a case that the Court considers particularly persuasive in this context: *Braswell Wood Co., Inc. v. Waste Away Group, Inc.* In that case, plaintiff Braswell Wood Company sought to become the nationwide class representative for a class of individuals and entities who had entered into contracts with Waste Management, Inc. and who had paid fuel surcharges to Waste Management. 2010 WL 3168125 at *1. Braswell alleged that Waste Management, Inc., along with a bevy of other related companies, had "concocted a fraudulent scheme to 'double bill' Braswell [and the other putative class members] for fuel surcharges that were supposed to have been included in the original contract price." *Id.* at *2. Braswell further alleged that the fuel surcharges bore "absolutely no relationship to any fuel costs [] incurred." *Id.* In its complaint alleging, in part, a RICO violation, plaintiff Braswell contended that "because invoices containing these charges were sent to customers through the U.S. mail, discussed over the phone and by fax, and paid via bank transfers, [the defendant] committed acts of mail and wire fraud sufficient to invoke the RICO statute." *Id.* Defendant sought dismissal of the RICO count, arguing that the plaintiff could not recast a breach of contract claim into a RICO claim without alleging conduct that would constitute the predicate acts of mail fraud and wire fraud. *Id.* Plaintiff Braswell, like Plaintiffs do here here, opposed dismissal, arguing that "the specific items sent through the mail need not themselves

---

[7] Moreover, the Court never previously addressed the sufficiency of pleading fraud with particularity, and certainly not in the context of a civil RICO claim. Instead, the Court's Omnibus Order simply addressed whether certain allegations constituted "deceptive practices" within the meaning of four individual state consumer protection acts. *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1325 (determining sufficiency of pleading state claims for deceptive practices under New York, Oregon, Minnesota, and West Virginia law). Since the standard for misrepresentation and, by extension the predicates of mail fraud and wire fraud, are founded upon different substantive elements which require different pleading standards than those state acts, the Court's earlier ruling is not relevant to this inquiry.

contain misrepresentations or inspire reliance; they need only be in furtherance of the overall fraudulent scheme which somewhere involves misrepresentations and reliance thereon." *Id.* at *3 (emphasis in original).

The Alabama federal district judge in that case, the Honorable W. Keith Watkins, analyzed whether the plaintiff's allegations of mailed invoices with improper fuel charges constituted misrepresentations in the context of RICO. Even when considering that the fuel surcharges in the invoices may not have been in accord with the parties' underlying contract, the court held that they did not truly constitute "misrepresentations," since those charges "were possible via the terms of the contract." *Id.* at *4. Ultimately, Judge Watkins stated that "to hold a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to broaden the word's meaning, and the reach of RICO, past the point of meaning." *Id.* at *4. Finding that amendment would be futile given the nature of the alleged misrepresentations, Judge Watkins dismissed the plaintiff's RICO claim with prejudice.

This Court finds that its holding in the above-styled matter should not differ from that of *Braswell Wood*. Like the *Braswell Wood* court, this Court finds that wrongful overcharges, at least under these facts and when permitted by contract, are not synonymous with the meaning of "misrepresentation" in the context of the RICO statute.[8] Plaintiffs' RICO claims are the proverbial square peg in the round hole, and Plaintiffs should not be permitted to alchemize their claims for breach of contract into ones for civil RICO conspiracy. Moreover, given the long-standing history of the case, the fact that discovery has been ongoing for much of that time, and the belief that Plaintiffs had ample

---

[8] The Court declines to address Defendant's other contentions as to the insufficiency of Plaintiffs' RICO claim.

opportunity to prepare the proper amendment to their Second Amended Complaint, there is no reason to suspect than an additional amendment of Plaintiffs' RICO claims would be anything but futile. Therefore, Count I of Plaintiffs' Third Amended Complaint is dismissed with prejudice.

### III. Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that:

1. Defendant's Motions to Dismiss (DE #1355) be, and the same is hereby, **GRANTED in part.**

2. Count I of Plaintiff's Third Amended Complaint (DE #1317) is **DISMISSED with prejudice.** In all other respects, Defendant's Motion to Dismiss (DE #1355) is **DENIED.**

**DONE** and **ORDERED** in Chambers at the James Lawrence Federal Justice Building and United States Courthouse in Miami, Florida on this 13th day of July, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

**cc: All counsel of record**