**United States District Court**
**Southern District of Florida**
**Miami Division**
**Case No. 1:09-MD-02036-JLK**

_____

|  |  |
|---|---|
| **IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION** | ) ) ) |
|  | ) |
| MDL No. 2036 | ) |
| _____ | ) |
|  | ) |
| **THIS DOCUMENT RELATES TO: SECOND TRANCHE ACTION** | ) ) |
|  | ) |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank* S.D. Fla. Case No.: 1-10-CV-20478-JLK | ) ) ) |
| _____ | ) |

**M&T BANK'S REPLY IN SUPPORT OF**
**RENEWED MOTION TO COMPEL**
**ARBITRATION AND STAY OR DISMISS LITIGATION**

M&T Bank submits this Reply in support of its Renewed Motion to Compel Arbitration and Stay or Dismiss Litigation (the "Motion").[1]  [DE 1563].

I.      **AT&T Mobility Shows That The Federal Arbitration Act ("FAA") Requires The Rejection Of Plaintiff's Arguments That The Arbitration Agreement Is Substantively Unconscionable.**

Plaintiff asserts that <u>AT&T Mobility</u> is narrowly restricted to invalidating California's <u>Discover Bank</u> rule.  (Opp., pp. 3-4).  According to Plaintiff, <u>AT&T Mobility</u> permits States to invalidate arbitration agreements based on the inclusion of class action waivers, so long as there is "evidence that the specific arbitration provision at issue interfered with the consumer's ability to vindicate his rights in an arbitral forum."  (Opp., p. 4).  In other words, Plaintiff argues that even after <u>AT&T Mobility</u>, States may invalidate a consumer arbitration agreement because of a class action waiver if there is evidence showing that individual arbitration would operate in an exculpatory manner by shielding a company from small-dollar consumer claims.

Plaintiff's interpretation of <u>AT&T Mobility</u> is directly in conflict with the majority opinion.  The concern about exculpation -- the same concern upon which Plaintiff relies here -- was a basic premise of the <u>Discover Bank</u> rule that the Court rejected in <u>AT&T Mobility</u>.  131 S. Ct. at 1746.  The <u>Discover Bank</u> rule invalidated arbitration agreements in consumer contracts of adhesion based on the inclusion of a class action waiver, where the consumer claimed a small amount of damages and the party with "superior bargaining power . . . carried out a scheme to deliberately cheat large numbers of consumers."  <u>Id</u>.  Plaintiff's unconscionability allegations here are a thinly disguised version of <u>Discover Bank</u>: she alleges that M&T Bank's posting order has caused consumers to be charged small amounts of NSF (overdraft) fees, based on an Account Agreement that is supposedly a contract of adhesion.  (<u>See</u>, <u>e.g.</u>, Motion, p. 16).

These allegations are not sufficient to avoid arbitration.  The Supreme Court majority in <u>AT&T Mobility</u> held that States <u>cannot</u> use these public policy considerations to refuse to enforce arbitration agreements, explaining:  "<u>The dissent claims that class proceedings are</u>

---

[1]      In her opposition ("Opp.") [DE 1686], Plaintiff suggests that the Motion might be construed as a simple motion for reconsideration.  (Opp., p. 3).  That assertion is plainly incorrect.  The Court of Appeals remanded this case specifically for reconsideration in light of <u>AT&T Mobility LLC v. Concepcion</u>, ___ U.S. ___, 131 S. Ct. 1740 (2011).  The Motion addresses the application of <u>AT&T Mobility</u> to this case, exactly as contemplated by the Court of Appeals.

necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Id. at 1753 (emphasis added).

Further, in AT&T Mobility, the Court stated that the issue was "whether the FAA prohibits States from conditioning the enforcement of certain arbitration agreements on the availability of classwide arbitration procedures." Id. at 1744. The inquiry was not narrowly limited -- as Plaintiff would have this Court find -- to only the Discover Bank rule, or the supposed evidentiary basis that a plaintiff must present under Discover Bank. Instead, the Court's broader inquiry was whether as a matter of law the FAA permits "States" (not just California) to refuse to enforce arbitration agreements because they contain class action waivers. Id. The Court answered that broad question in equally broad terms: "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." Id. at 1748 (emphasis added).

Plaintiff also argues that the "actual holding" of AT&T Mobility is narrow and a mere reaffirmation of the "longstanding legal principle" that States may not prohibit outright the arbitration of specific types of claims. (Opp., p. 4). That is simply not so.

In AT&T Mobility, the plaintiffs argued that the Discover Bank rule was valid because it was based on California's facially neutral unconscionability doctrine and, as such, was "a ground that exists at law or in equity for the revocation of any contract under FAA § 2." Id. at 1746. That is the same argument made by Plaintiff here -- i.e., the FAA permits Maryland to invalidate her arbitration agreement because the unconscionability doctrine is a general ground for revoking a contract. (See Opp., p. 5).

The Supreme Court rejected that argument. It observed that Discover Bank did not involve the outright prohibition of arbitration for a certain type of case, but was instead the "more complex" situation of a State applying a generally applicable contract doctrine in a manner that disfavored arbitration:

> When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA. But the inquiry becomes more complex when a doctrine normally thought to be generally applicable, such as duress or, as relevant here, unconscionability, is alleged to have been applied in a fashion that disfavors arbitration. ... [A] court may not rely on the uniqueness of an agreement to arbitrate as a basis for a state-law

holding that enforcement would be unconscionable, for this would enable the
court to effect what . . . the state legislature cannot.[2]

Id. at 1747 (emphasis added).  The Court concluded that, while § 2 of the FAA "preserves
generally applicable contract defenses, nothing in it suggests an intent to preserve state-law rules
that stand as an obstacle to the accomplishment of the FAA's objectives."  Id. at 1748.
Employing the unconscionability doctrine to require "classwide arbitration" is, according to the
Supreme Court majority in AT&T Mobility, an "obstacle" that the FAA prohibits.  Plaintiff asks
this Court to erect the same obstacle under Maryland law.  The Court cannot and should not do
so.[3]

---

[2]     In the wake of AT&T Mobility, district courts from across the country have uniformly
rejected plaintiffs' arguments that a class action waiver makes an arbitration agreement
unconscionable.  See Hopkins v. World Acceptance Corp., No. 1:10-CV-03429, pp. 16-17 (N.D.
Ga. June 29, 2011) (the AT&T Mobility "ruling is quite broad, and allows for the enforcement of
class action waivers in arbitration agreements" even when the agreement is a contract of
adhesion and the consumer has a small damages claim) (Georgia law) (a copy of the district
court's opinion in Hopkins is attached as **Exhibit 1**); Estrella v. Freedom Financial, 2011 WL
2633643, at *2 (N.D. Cal. July 5, 2011) (AT&T Mobility "prohibits states from conditioning the
enforceability of certain arbitration agreements on the availability of classwide arbitration
procedures") (California law); In re California Title Ins. Antitrust Litig., 2011 WL 2566449, at
*2 (N.D. Cal. June 27, 2011) (under AT&T Mobility, "courts must compel arbitration even in the
absence of the opportunity for plaintiffs to bring their claims as a class action") (California law);
Wolf v. Nissan Motor Acceptance Corp., 2011 WL 2490939, at *6 (D.N.J. June 22, 2011)
(AT&T Mobility preempts a New Jersey rule invalidating consumer arbitration agreements
containing class action waivers, because "imposing class-wide proceedings where they otherwise
have been waived . . . interferes with and stymies arbitration") (New Jersey law); Wallace v.
Ganley Auto Group, 2011 WL 2434093, at *3 (Ohio Ct. App. June 16, 2011) (in light of AT&T
Mobility, the consumer's argument that an arbitration agreement is void against public policy
due to the inclusion of a class action waiver is "without merit") (Ohio law); Bernal v. Burnett,
___ F. Supp.2d ___, 2011 WL 2182903, at *4, 7 (D. Colo. June 6, 2011) (Colorado's
unconscionability doctrine is different than California's Discover Bank rule, but AT&T
Mobility's "broad" implications nonetheless require the rejection of the consumer's
unconscionability argument) (Colorado law).  (See also Motion, pp. 6-7).

[3]     Plaintiff argues that the Court intended to "harmonize" its holding with Mitsubishi
Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985), Gilmer v.
Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), and Green Tree Financial Corp.-Alabama v.
Randolph, 531 U.S. 79 (2000).  (Opp., pp. 12-13).  This argument has no basis.  The AT&T
Mobility opinion does not mention Green Tree at all, and the few references to Mitsubishi
Motors and Gilmer are tangential at most.  131 S. Ct. at 1748-49.  Further, Mitsubishi Motors,
Gilmer, and Green Tree do not support Plaintiff's exculpation argument.  The Supreme Court
enforced arbitration in each of those cases.

Finally, as demonstrated in the Motion (pp. 10-11), the reasoning in AT&T Mobility and other Supreme Court cases preclude Plaintiff's contention that her arbitration agreement is substantively unconscionable because it contains a prevailing party attorneys' fees provision. Maryland fully enforces fee shifting provisions (infra, pp. 4-6). Asserting unconscionability to prohibit such provisions in the context of an arbitration agreement would be preempted by the FAA. See AT&T Mobility, 131 S. Ct. at 1745, 1747 (arbitration agreements must be placed on "an equal footing with other contracts," and States may not use the unconscionability doctrine "in a fashion that disfavors arbitration"). Plaintiff fails to address this point and therefore concedes it.[4]

## II.    Maryland Law Also Requires The Rejection of Plaintiff's Substantive Unconscionability Arguments.

Plaintiff argues that AT&T Mobility "did not change Maryland law." (Opp., p. 3). That is correct, because, respectfully, Maryland law does not now and never has supported Plaintiff's argument that the class action waiver and the prevailing party attorneys' fees provision make her arbitration agreement substantively unconscionable.[5] AT&T Mobility demonstrates that federal law is consistent with Maryland law, and prohibits Plaintiff's contrary interpretation of Maryland law.

As established in the Motion (pp. 8-10), Maryland's appellate courts have uniformly enforced consumer arbitration agreements that contain class action waivers. As also established in the Motion (pp. 10-11), Maryland's legislature has provided for, and its appellate courts have uniformly upheld, prevailing party attorneys' fees provisions in arbitration agreements. Indeed,

---

[4]    Additionally, Plaintiff briefly alludes to the limitation of remedies contained in the arbitration agreement. (Opp., pp. 6-7). Assuming Plaintiff is contending that this limitation makes her arbitration agreement substantively unconscionable, that determination is for the arbitrator to make. See Anders v. Hometown Mortgage Services, Inc., 346 F.3d 1024, 1032 (11th Cir. 2003) ("Because any invalid provisions are severable, the underlying claims are to be arbitrated regardless of the validity of the remedial restrictions. With or without those provisions, the case goes to arbitration.").

[5]    In its May 10, 2010, opinion denying M&T Bank's motion to compel arbitration, this Court relied in part on Gordon v. Branch Banking & Trust Co., 666 F. Supp.2d 1347 (N.D. Ga. 2009). Gordon was decided before AT&T Mobility and, therefore, is likely no longer good law. Even if it were still good law, the district court in Gordon applied Georgia law, not Maryland law, and therefore Gordon has no application to this case.

4

Plaintiff's right to recover fees under the arbitration agreement if she prevails is in addition to her right to recover fees under her statutory claim for violation of the Maryland Consumer Protection Act (the "CPA"). <u>See</u> Md. Code Ann., Comm. Law. § 13-408.

Plaintiff <u>still</u> has not cited a single Maryland appellate opinion suggesting that an arbitration agreement is unconscionable because it contains a class action waiver and/or a prevailing party attorneys' fees provision. Recognizing this void, Plaintiff attempts to distinguish the analogous Maryland case law based on the assertion that none "involved an arbitration agreement that prohibited class actions <u>and</u> placed plaintiffs in danger of being liable for the defendants' legal fees and costs." (Opp., p. 15 (emphasis in original)). This argument is factually incorrect and legally meritless.

In <u>Freedman v. Comcast Corp.</u>, 988 A.2d 68, 87, 89 (Md. Ct. Spec. App. 2010), the Maryland Court of Special Appeals affirmed the trial court's enforcement of a consumer arbitration agreement that included a class action waiver <u>and</u> a prevailing party attorneys' fees provision. A Comcast consumer arbitration agreement barred consumers from bringing class actions and provided that if either party successfully appealed an arbitration award exceeding $75,000, then the prevailing party would be entitled to recoup its costs and attorneys' fees. <u>Id.</u> The Court approved both provisions and compelled arbitration, holding that the class action waiver was enforceable under Maryland's "strong policy" favoring arbitration, and further holding that the prevailing party provision was "fair on its face" and not unconscionable. Maryland's Court of Appeals (the State's highest court) subsequently denied the plaintiff's petition for certiorari. <u>Freedman v. Comcast</u>, 997 A.2d 790 (Md. 2010) (Table).

The holding in <u>Freedman</u> flows directly from the Court of Appeals' holding in <u>Walther v. Sovereign Bank</u>, 872 A.2d 735 (Md. 2005), where a consumer arbitration agreement was enforced despite the existence of a class action waiver and a small-dollar claim.

There is no evidence that Maryland's Court of Appeals would depart from <u>Freedman</u> or from its own consistent course of enforcing arbitration agreements, class action waivers, and prevailing party attorneys' fees provisions. Under <u>Erie v. Tompkins</u>, 304 U.S. 64 (1938), and its progeny this Court is bound by the Court of Appeals' consistent decisions. <u>See</u> <u>Pendergast v. Sprint Nextel Corp.</u>, 592 F.3d 1119, 1133 (11th Cir. 2010) ("[i]n instances where a state's highest court has not ruled on a point of state law, federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state

5

court would rule otherwise"); <u>KMS Restaurant Corp. v. Wendy's Int'l, Inc.</u>, 361 F.3d 1321, 1325 (11th Cir. 2004) (federal courts sitting in diversity jurisdiction are bound by the decisions of the relevant State's highest court that are "close enough on point," absent "really persuasive" evidence to the contrary).[6]

Finally, as stated in the Motion (p. 19), any doubt about the application of Maryland law to this case can and should be resolved by the Court of Appeals of Maryland through a certified question.  Plaintiff offers no opposition to this point.

### III.    Plaintiff's Public Policy Arguments Do Not Justify An Avoidance Of Arbitration.

Plaintiff's substantive unconscionability arguments are rooted in the concept that class action waivers and prevailing party attorneys' fee provisions "would effectively prevent class members from pursuing their low value claims, thereby insulating M&T from liability for alleged misconduct."  (Opp., p. 11).  Among other things, she argues that she will supposedly need, and as a practical matter not be able to engage, an expert witness or legal counsel.  (<u>Id.</u>, pp. 11-13).

This argument does not permit Plaintiff to avoid her arbitration agreement.  The Supreme Court rejected just such an argument in <u>AT&T Mobility</u>, 131 S. Ct. at 1753.  Any public policy about small claim exculpation is, according to <u>AT&T Mobility</u>, overridden by the strong public policies embedded in the FAA to enforce arbitration agreements and to promote the "streamlined" and "efficient" resolution of disputes through bilateral arbitration.  <u>Id.</u> at 1748-49.

Maryland law is in accord.  In <u>Doyle v. Finance America, LLC</u>, 918 A.2d 1266, 1272-73 (Md. Ct. Spec. App. 2007), the Court of Special Appeals stated:

> Appellants argue that the Agreement is nothing more than a thinly veiled exculpatory agreement that denies consumers access to courts . . ..  This argument

---

[6]    Plaintiff cites <u>Helman v. Mendelson</u>, 769 A.2d 1025 (Md. Ct. Spec. App. 2001), and <u>Dale v. Comcast Corp.</u>, 498 F.3d 1216 (11th Cir. 2007), as support for her argument that the "joint effect" of the class action waiver and the prevailing party attorneys' fee provision effectively exculpates M&T Bank from small-dollar consumer claims.  (Opp., pp. 11-12).  These cases are inapposite.  <u>Helman</u> involved a trust dispute, and had nothing to do with arbitration agreements, class action waivers, or prevailing party attorneys' fees provisions.  The footnote cited by Plaintiff concerned an express exculpation of liability for a trustee having fiduciary duties, not a contract case like this one.  <u>Id.</u> at 1041.  <u>Dale</u>, like <u>Gordon</u>, 666 F. Supp.2d 1347, was decided before <u>AT&T Mobility</u> and, therefore, is likely no longer good law.  Even if it were still good law, <u>Dale</u> involved the application of Georgia law (like <u>Gordon</u>), not Maryland law, and therefore <u>Dale</u> has no application to this case.

> is, in essence, nothing more than a policy-based assault on the shortcomings of
> arbitration.  Déjà vu."
>
> ***
>
> We are keenly aware of the opposition to arbitration agreements taken by
> consumers and consumer-advocates.  Nonetheless, arbitration agreements enjoy
> favored status in Maryland.  …  The law on this issue is clear, leaving us with
> nothing to decipher.  We shall not entertain a debate that should be directed to the
> General Assembly.

Consequently, Plaintiff's contention that the class action waiver and prevailing party attorneys' fee provision would effectively prevent her from pursuing her case, even if true, would not justify a failure to enforce the arbitration agreement in this case.[7]

Moreover, there is no persuasive argument that Plaintiff needs an expert to pursue her claim for a refund of the NSF fees at issue here, nor an attorney for that matter.  Notwithstanding the convoluted affidavit of Mr. Arthur Olsen (Opp., Exhibit B), Plaintiff clearly has the ability to attempt to prove her $370 case without an expert.  All of the relevant information is within her possession or knowledge.  This includes, inter alia: (a) her Account Agreement, which sets forth the terms governing her checking account; (b) her account statements (some of which are attached to Mr. Olsen's affidavit), which show when NSF fees were charged to her account and the amount of those fees, and also show when M&T Bank posted credits and debits to her account; and (c) her personal knowledge of (or her merchant receipts showing) the date and time on which her account credits and debits actually occurred, to the extent that is different from the posting order as reflected on her account statements.  This information is more that sufficient for Plaintiff, a CPA, to know her account activity for the handful of days on which she claims M&T Bank improperly charged her $370 in NSF fees.  No supposed expert is necessary here, nor is an attorney, and not even Plaintiff's affidavit makes such a claim.  (Opp., Exhibit A).  Thus, even if it were relevant, Plaintiff would certainly be able to vindicate her rights in arbitration or in small claims court.

---

[7]     The anecdotal assertions of two attorneys, Peter Holland and Thomas Minton, are irrelevant under federal and Maryland law and, in any event, show nothing other than they would not personally be willing to represent Plaintiff in arbitration.  They obviously cannot speak for all attorneys.  Nor do they consider the possibility of representing Plaintiff in Maryland small claims court (an alternative, even less costly avenue of relief available to Plaintiff under the AAA rules), and they make no mention of the critical fact that under the arbitration agreement Plaintiff is guaranteed to recover her costs and attorneys' fees in the event she is successful.

## IV.    Plaintiff's Alleged Concerns About The AAA Do Not Justify The Avoidance of Arbitration.

Plaintiff speculates that she will be denied necessary discovery in arbitration and that the AAA will be biased.  (Opp., pp. 13-14).  This speculation is not a ground to avoid arbitration.[8]

It is settled law that "generalized attacks on arbitration rest[ing] on suspicion of arbitration as a method of weakening the protection afforded in the substantive law to would-be complaints . . . are far out of step with [the] strong endorsement of the federal statutes favoring" arbitration.  Gilmer, 500 U.S. at 32.  In Gilmer, the Supreme Court specifically rejected attacks on the neutrality of the arbitral body and the scope of discovery permitted in the arbitrable forum as grounds for avoiding arbitration.  Id. at 30-31 ("we decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators," and while discovery in arbitration "might not be as extensive as in the federal courts, by agreeing to arbitrate, a party traded the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration").[9]

Plaintiff also is incorrect in claiming that discovery would be unavailable to her in arbitration.  The AAA commercial arbitration rules (cf. AAA Rule R-21) expressly permit discovery, including the production of documents.[10]  The AAA's consumer arbitration Due

---

[8]      In a single footnote, Plaintiff "renews" her contention that the AAA will not accept this case.  (Opp., p. 14 fn. 4).  As demonstrated in the Motion (pp. 18-19), that contention is baseless.

[9]      See also AT&T Mobility, 131 S. Ct. at 1747, 1748 (observing that States cannot find "unconscionable or unenforceable as against public policy consumer arbitration agreements that fail to provide for judicially monitored discovery"); Mitsubishi Motors, 473 U.S. at 633 (holding, in an antitrust matter, that the "potential complexity [of a case] should not suffice to ward off arbitration"); Freedman, 988 A.2d at 87-89 (rejecting the plaintiff's argument that arbitration may "result in limited discovery," because parties "commonly agree to arbitrate under limited discovery, and to adopt [the plaintiff's] position would require us to speculate that he will be denied some fundamental -- and unspecified -- level of discovery.  Neither the record nor the law provides reason for such a holding."); Hooters of America, Inc. v. Phillips, 173 F.3d 933, 941 (4th Cir. 1999) ("Generally, objections to the nature of arbitral proceedings are for the arbitrator to decide in the first instance.  Only after arbitration may a party then raise such challenges if they meet the narrow grounds set out in 9 U.S.C. § 10 for vacating an arbitral award.").

[10]     See www.adr.org/sp.asp?id=22440#R21.

Process Protocol provides that "[n]o party should ever be denied the right to a fundamentally-fair process due to an inability to obtain information material to a dispute."[11]   Further, the FAA provides the right to subpoena witnesses and documents.  9 U.S.C. § 7.[12]

**V.      Plaintiff's Arbitration Agreement Is Not Procedurally Unconscionable.[13]**

In the Motion (pp. 11-14), M&T Bank demonstrated that the arbitration agreement is not procedurally unconscionable under Maryland law.  The hallmark of procedural unconscionability is the lack of a meaningful choice.  Walther, 872 A.2d at 744 (procedural unconscionability is "analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter the transaction").  Plaintiff has at all times had a meaningful choice in voluntarily choosing to maintain her checking account with M&T Bank, because:

- There was no fraud, deception, surprise, or duress in the formation of the Account Agreement.  Plaintiff received a copy of the Account Agreement (and, thus, the arbitration agreement) years before she incurred the first set of NSF fees for which she makes a claim in this case.

- The arbitration agreement is not written in legalese.  The arbitration agreement is written in plain, straightforward English that any adult can reasonably be expected to understand, much less a CPA like Plaintiff.

- Plaintiff is an educated and sophisticated business professional who is a CPA and a Senior Director at The Johns Hopkins University.  She is a person who reasonably can be expected to understand the importance of contracts and the meaning of arbitration.

---

[11]      See www.adr.org/sp.asp?id=22019#PRINCIPLE_13._ACCESS _TO_INFORMATION.

[12]      Plaintiff also claims that it would cost her $750 for an in-person hearing with the AAA. (Opp., p. 14 fn. 2).  This contradicts her prior representation to the Court that her AAA fee would be no more than $125.  [DE 19 (No.: 1-10-CV-20478-JLK), p. 23 fn. 7].  Plaintiff was correct the first time.  Because her claim is less than $10,000, the maximum fee that Plaintiff may pay is $125.  See www.adr.org/sp.asp?id=22039.

[13]      Plaintiff attempts to blend together her substantive unconscionability and procedural unconscionability arguments into a single unconscionability cocktail.  (Opp., p. 16).  But these are two separate and distinct analyses and, under Maryland law, both must be satisfied fully in order to invalidate a contract based on unconscionability.  Doyle, 918 A.2d at 1274.  There is no "sliding scale" approach under Maryland law relaxing the requirements of one element if the other element is satisfied.

- **Plaintiff has numerous banking choices available to her in the Baltimore area.** This is not a case of a consumer being forced to contract with a company on egregiously one-sided terms because there are no other options. Far from it.

(Motion, pp. 11-14). These factors are central in determining whether there is a "meaningful choice," and together they demonstrate that there is no procedural unconscionability here. See Doyle, 918 A.2d at 1274.

Plaintiff's response is to: (a) submit an affidavit that attempts to imply that she did not really agree to arbitration (Opp., Exhibit A); (b) argue that the Account Agreement is a contract of adhesion; and (c) argue that the Account Agreement provides insufficient notice of the arbitration agreement. (Opp., pp. 7-10). These arguments fail to satisfy Plaintiff's burden of proving procedural unconscionability.[14]

**(a)** As an initial matter, Plaintiff makes a potentially misleading statement in her affidavit that is inconsistent with her prior judicial admissions. She claims that she "reviewed the Account Agreement that M&T submitted to the Court." (¶ 6; emphasis added). The truth is that Plaintiff submitted the Account Agreement to the Court -- indeed, it was attached to her Complaint, which expressly acknowledges that the Account Agreement governs her relationship with M&T Bank. (See Complaint, ¶¶ 16, 24-25, 36, 39-41).

Further, Plaintiff's affidavit: (i) does not dispute that she received the Account Agreement well before incurring the NSF fees at issue in this case; (ii) admits that she is a CPA (¶ 7); (iii) states that she read "some of the Account Agreement" and found it confusing, but does not state that she finds anything confusing about the arbitration agreement (¶¶ 7-9); (iv) claims that it would have taken her "a significant period of time" to read the pages of the Account Agreement preceding the arbitration agreement, but does not state that anything or anyone precluded her from reading the Account Agreement or the arbitration agreement (¶ 9); (v) does

---

[14] The only cases cited by Plaintiff that included a finding of procedural unconscionability under Maryland law are Doyle, which found a lack of meaningful choice because the arbitration provision contained in a loan agreement was sprung on the consumers on the day of closing (facts that are not alleged here), and Jones v. Genus Credit Mngt. Corp., 353 F. Supp.2d 598, 599-601 (D. Md. 2005), where the district court found a lack of a meaningful choice based on the "great disparity" of bargaining power between a sophisticated lender and consumers "suffering from the burden of heavy debt." Id. at 600-02. In contrast to Jones, Plaintiff does not claim to be suffering from the duress of a heavy debt load, and there is no indication that the Jones consumers were sophisticated business persons like Plaintiff.

not dispute that she could, at any moment, close her account with M&T Bank and take her business to any one of the many other financial institutions in the Baltimore area; and (vi) does not state anywhere in her affidavit that she was unaware of or failed to understand the arbitration agreement prior to incurring the NSF fees at issue here.  These concessions and failures confirm what was already clear from Plaintiff's Complaint: this is a case of a sophisticated consumer who, after taking advantage of M&T Bank's services, seeks to avoid her contractual agreement to arbitrate.[15]

(b) Plaintiff is simply wrong in arguing that contracts of adhesion are procedurally unconscionable under Maryland law.  (Opp., p. 7).  See Walther, 872 A.2d at 746 ("The fact that a contract is one of adhesion does not mean that either it or any of its terms are invalid or unenforceable."); Doyle, 918 A.2d at 1270 fn. 3, 1274-75 (finding that the contract was one of adhesion, but still analyzing whether it was procedurally unconscionable under the "meaningful choice" analysis).  See also AT&T Mobility, 131 S. Ct. at 1750 ("the time in which consumer contracts were anything other than adhesive are long past"); Belfiore v. Summit Fed. Credit Union, 452 F. Supp.2d 629, 632-33 (D. Md. 2006) (enforcing a forum selection clause in a credit union account agreement, because enforcement would not be "per se unreasonable" even if the account agreement were a contract of adhesion).

(c) Plaintiff suggests that M&T Bank provided insufficient notice of the arbitration agreement, allegedly because it is contained within the 45-page Account Agreement and was not "pointed out to [customers] for their acknowledgement."  (Opp., p. 10).

In fact, there is no Maryland law that places a page limit on consumer contracts, nor is there any Maryland law requiring a specified font type or size for the Account Agreement.  The Account Agreement here is 45 pages by necessity -- there are numerous terms and conditions that must be addressed in a general deposit account agreement.  There is nothing unconscionable about seeking to particularize and memorialize contractual terms.

Moreover, the dispute resolution provisions and arbitration agreement are not hidden in fine print.  Such provisions are easily located through a table of contents under the self-explanatory heading "Disputes Involving Your Account," and the terms are written in the same

---

[15] In her affidavit (¶ 10), but not in her Motion, Plaintiff takes issue with a provision of the Account Agreement that has nothing to do with her agreement to arbitrate.  Any concern she has about that provision can be addressed by the arbitrator; it has no relevance to this Court's present inquiry.

font size as the remainder of the Account Agreement.  (Account Agreement, pp. 18-20).  The arbitration agreement is also highlighted in several places with all capital letters and bold font. (Id.).  This does not qualify as "fine print" under Maryland law.  See Meyer v. State Farm Fire & Cas. Co., 582 A.2d 275, 278 (Md. Ct. Spec. App. 1990) (a provision in a consumer insurance policy was "by no means buried or enunciated in the proverbial fine print.  It is worded in plain, colloquial English . . . and, except for the headings, is in the same size and type print as the other provisions of the policy").  Plaintiff has not even attempted to distinguish Meyer.

Similarly, nothing in Maryland law requires that an arbitration agreement be presented to a consumer in a separate document, or be placed in any particular location within a contract, or be highlighted in any special manner distinct from other contractual provisions.  Any interpretation of Maryland law that singles out arbitration agreements for special treatment -- such as requiring separate notices or placement in a particular location -- would be preempted by the FAA.  See Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 683, 687 (1996) (invalidating under the FAA a State law requirement that arbitration agreements be placed on the first page of a contract in underlined, all capital letters, because it was a "special notice requirement not applicable to contracts generally"); AT&T Mobility, 131 S. Ct. at 1745 ("courts must place arbitration agreements on an equal footing with other contracts").[16]

Finally, Plaintiff suggests that the arbitration agreement is procedurally unconscionable because she was not required to sign the Account Agreement upon receipt, and because the Account Agreement was provided to her after she opened her account.  (Opp., p. 7).  Plaintiff conceded in her appellate brief (p. 16) that under Walther, 872 A.2d 735, "a signature is not required to render arbitration provisions enforceable," and she did not dispute that receiving an arbitration agreement after opening a bank account "does not, by itself, render the clause

---

[16]     In Freedman, 988 A.2d at 86, Comcast amended its customer agreement by mailing a notice to its customers that advised of a new arbitration agreement.  The Court held that this notice provided the customers with a meaningful choice to continue or discontinue their relationship with Comcast, but nothing in Freedman suggests that a separate notice is a prerequisite to having a meaningful choice.  Similarly, while the arbitration agreement in Walther appeared just above the contract signature line, nothing in Walther suggests that placing the arbitration agreement in such a location is a prerequisite to having a meaningful choice.  872 A.2d at 745.

unenforceable" (p. 17 fn. 3).[17]  These concessions are required under Maryland law.  See, e.g., Harby v. Wachovia Bank, N.A., 915 A.2d 462, 466-68 (Md. Ct. Spec. App. 2007) (compelling arbitration despite the absence of a customer signature on the document containing the arbitration provision); Freedman, 988 A.2d at 86 (holding that Comcast had properly amended its customer agreement by subsequently adding an arbitration agreement).

**VI.     Plaintiff's Claims Are Within The Scope Of Her Arbitration Agreement.**

M&T Bank established in its Motion (pp. 14-18) that Plaintiff's claims are within the broad scope of her arbitration agreement.  Further, in the event there is any question about whether a claim is within the scope of her arbitration agreement, the Account Agreement clearly and unmistakably delegates that determination to the arbitrator, not this Court.  (Account Agreement, p. 18: "Any issue regarding whether a particular dispute or controversy is a Claim that is subject to arbitration will be decided by the arbitrator.") (emphasis added).

In her opposition, despite this plain delegation of authority to the arbitrator, Plaintiff argues that this Court should determine whether her claims fall within the scope of the arbitration agreement.  She argues further that her request in the Complaint for purported injunctive relief exempts her claims from arbitration.  (Opp., pp. 16-19)  Plaintiff's arguments rest entirely on the following two sentences of the arbitration agreement:

> Any issue regarding whether a particular dispute or controversy is a Claim that is subject to arbitration will be decided by the arbitrator.  If any part of the relief request is not expressly stated as a dollar amount, the dispute or controversy will not be a Claim that is subject to arbitration.

(Account Agreement, p. 18).  Plaintiff claims that because the broad delegation of authority to the arbitrator appears before (and not after) the sentence concerning non-monetary relief, the arbitration agreement "indicat[es] that the exemption for non-monetary claims is not subject to the delegation clause."  (Id., p. 17).

Plaintiff's sentence-order argument is specious.  There is nothing in the text of the arbitration agreement suggesting that requests for injunctive relief are exempted from the unambiguous provision that "any issue regarding whether a particular dispute or controversy is a Claim that is subject to arbitration will be decided by the arbitrator."  (Emphasis added).  Plaintiff asks this Court to ignore that plain language and, instead, add the words "except as set

---

[17]        The relevant section of Plaintiff's appellate brief is attached as **Exhibit 2**.

forth in the next sentence." Maryland law does not permit judicial rewriting of contracts. See Maslow v. Vanguri, 896 A.2d 408, 421 (Md. Ct. Spec. App. 2006) ("it is not the province of the court to rewrite the terms of a contract so as to avoid hardship to a party, or because one party has become dissatisfied with its terms"); Walther, 872 A.2d at 746 (even when interpreting a contract of adhesion, a court "will not simply excise or ignore terms merely because, in the given case, they may operate to the perceived detriment of the weaker party"); Gebhardt & Smith LLP v. Maryland Port Admin., 982 A.2d 876, 895 (Md. Ct. Spec. App. 2009) (courts must "give effect to the plain meaning" of unambiguous contracts). Under Maryland law, all provisions of the arbitration agreement must be read together and given their full effect as written, not as Plaintiff wished they had been written.

The only interpretation consistent with Maryland law is that "any issue" concerning the scope of the arbitration agreement, including any issue about whether Plaintiff's request for injunctive relief exempts her claims from arbitration, be referred to the arbitrator. The sentence concerning requests for non-monetary relief is for the arbitrator to interpret and apply when determining whether Plaintiff's claims are arbitrable.[18]

Even if this Court were authorized to determine whether Plaintiff's claims are within the scope of the arbitration agreement, M&T Bank established in the Motion (pp. 16-18) that her request for injunctive relief is a form of "artful pleading" that cannot be used to avoid arbitration. Plaintiff does not dispute the application of the artful pleading doctrine in this context, nor does she attempt to distinguish the case law cited by M&T Bank.

Instead, Plaintiff halfheartedly contends that her claims for violation of Maryland's CPA and breach of the implied covenant of good faith and fair dealing can give rise to injunctive relief under Maryland law. (Opp., p. 18). This argument fails for at least two reasons.

First, Maryland's CPA does not permit a private party to obtain injunctive relief. The statute cited by Plaintiff -- Md. Code Ann., Comm. Law § 13-406 -- applies only to actions

---

[18] Plaintiff also argues that any ambiguity in the interpretation of these sentences should be construed against M&T Bank. (Opp., p. 18). There is no ambiguity in these sentences but, even if there were, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983). See also Kristian v. Comcast Corp., 446 F.3d 25, 35-36 (1st Cir. 2006) ("[w]here the federal policy favoring arbitration is in tension with the tenet of contra proferentem for adhesion contracts, and there is a scope question at issue, the federal policy favoring arbitration trumps the state contract law tenet").

commenced by the <u>Attorney General of Maryland</u>. Nothing in the text of § 13-406 permits a private party like Plaintiff to seek or obtain an injunction, and Plaintiff has not cited any case law supporting her position. <u>See also</u> <u>Bradshaw v. Hilco Receivables, LLC</u>, 765 F. Supp.2d 719, 733 (D. Md. 2011) (granting summary judgment on claim for injunctive relief under the CPA because, <u>inter alia</u>, the CPA does not permit such relief); <u>Hauk v. LVNV Funding, LLC</u>, 749 F. Supp.2d 358, 368-69 (D. Md. 2010) (dismissing claim for injunctive relief under the CPA because, <u>inter alia</u>, the CPA does not permit such relief).

Section 13-408 is the statute providing a private cause of action under Maryland's CPA, and it permits a claim for damages only. <u>See also</u> <u>Citaramanis v. Hallowell</u>, 613 A.2d 964, 969 (Md. 1992) (the CPA's "<u>public</u> enforcement mechanisms are set up to prevent potentially unfair or deceptive trade practices from occurring, even before any consumer is injured, whereas § 13-408(a) requires that actual 'injury or loss' be sustained by a consumer before recover of damages is permitted in a <u>private</u> cause of action") (emphasis added).

Second, the <u>sine</u> <u>qua</u> <u>non</u> of injunctive relief in Maryland is the lack of an adequate remedy at law. <u>El Bey v. Moorish Science Temple of America, Inc.</u>, 765 A.2d 132, 140 (Md. 2001) (permanent "[i]njunctive relief normally will not be granted unless the petitioner demonstrates that it will sustain substantial and irreparable injury as a result of the alleged wrongful conduct," and an injury is irreparable when it cannot be "readily, adequately, and completely compensated for with money."). Ms. Given's claim for a refund of NSF fees can be "readily, adequately, and completely compensated for with money."

Plaintiff's citation of <u>Baker v. Howard County Hunt</u>, 188 A. 223 (Md. 1936), demonstrates the fundamentally baseless nature of her request for injunctive relief. (Opp., p. 18). She argues that this 1936 opinion demonstrates that injunctive relief is available in Maryland to "prevent continuing or repeated harm." (<u>Id.</u>).

<u>Baker</u> was a trespass action brought by landowners to enjoin local fox hunters and hounds from continuing to enter their property. The Court held that injunctive relief was proper under these facts because trespass on land is not normally compensable by damages (<u>i.e.</u>, there is no adequate remedy at law), and because equity will act to prevent repeated trespasses. <u>Id.</u> at 230-31. Plaintiff has cited no case suggesting that <u>Baker</u> extends beyond trespasses on land, and the Court's reasoning in that case confirms that its holding is limited to trespass actions. <u>Id.</u> at 230 ("Early cases did hold that equity would not relieve against trespasses even though

continuing, but it is long since settled that equity will relieve against continuing . . . or repeated trespasses committed in pursuance of a single plan or purpose . . ..").

Charging NSF fees is markedly different from repeatedly hunting foxes on someone else's land.  Unlike trespasses, every NSF fee, if wrongful, can be adequately remedied with money.  Moreover, unlike a landowner who may be forced to resort to dangerous or costly self-help remedies, Plaintiff has the ability to avoid NSF fees by maintaining a positive balance in her account, or terminating her relationship with M&T Bank.[19]

Finally, Plaintiff argues that her request for injunctive relief is sufficient to avoid arbitration even if it is frivolous under Maryland law.  (See Opp., p. 18).  To accept this argument and permit Plaintiff to avoid arbitration by pleading a facially frivolous request for injunctive relief would frustrate the strong policy favoring arbitration under federal and Maryland law.  See AT&T Mobility, 131 S. Ct. at 1748-49 ("The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements" and "to promote arbitration"); Walther, 872 A.2d at 743 (arbitration occupies a "favored status" in Maryland).  See also Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1360-61 (2d Cir. 1993) ("It defies reason to suggest that a plaintiff may circumvent forum selection and arbitration clauses merely by stating claims under laws not recognized by the forum selected in the agreement.").

## VII.    The Arbitration Agreement Is Not Void For Lack Of Consideration.

Plaintiff makes the brand new argument that the arbitration agreement is void for lack of consideration, because M&T Bank has reserved the right to change the terms of the Account Agreement.  (Opp., pp. 19-20).  This argument has no support under Maryland law.

As an initial matter, this argument is not properly before the Court under the Court of Appeals' mandate.  The Court of Appeals remanded this matter for the narrow purpose of reconsideration in light of AT&T Mobility.  This Court should adhere strictly to that mandate. See United States v. M.C.C. of Florida, Inc., 967 F.2d 1559, 1562 (11th Cir. 1992) ("Upon remand, the district court's authority [is] limited by the scope of the mandate . . . a district court

---

[19]    Plaintiff also cites Mattingly v. Hughes Electronics Corp., 107 F. Supp.2d 694 (D. Md. 2000), and Julian v. Christopher, 575 A.2d 735 (Md. 1990).  Neither has any relevance to this case.  In Mattingly, the district court analyzed its lack of subject matter jurisdiction, not the question of whether injunctive relief is available in the absence of irreparable harm.  Similarly, in Julian, the Court of Special Appeals analyzed the former common law rule that landlords had the right to unreasonably withhold consent for subletting.  That has nothing to do with this case.

when acting under an appellate court's mandate, cannot vary it, or examine it for any other purpose other than execution; or give any other or further relief[.]").  Here, nothing in the mandate permits this Court to do anything other than reconsider its prior holding in light of the legal principles announced in AT&T Mobility.[20]  See Robinson v. Ariyoshi, 854 F.2d 1189, 1190 (9th Cir. 1988) (upon remand from the Supreme Court for "further consideration" in light of new case law, the Court would restrict its analysis to the issues raised in the new case law and not entertain new arguments unrelated to the new case law); Kotler v. American Tobacco Co., 981 F.2d 7, 12-14 (1st Cir. 1992) (upon remand from the Supreme Court for "further consideration" in light of new case law, the Court refused to revisit an issue unrelated to the new case law, because it was obligated to confine its analysis to the "narrow" and "specific" mandate); Escalera v. Coombe, 852 F.2d 45, 47 (2d Cir. 1988) (upon remand from the Supreme Court for "reconsideration" in light of new case law, the Court would not "reconsider any issues that are not directly implicated" by the new case law) (per curiam); Hyatt v. Heckler, 807 F.2d 376, 377-78, 381 (4th Cir. 1986) (upon remand from the Supreme Court for "further consideration" in light of new case law, the Court refused to consider an issue that was not related to the new case law).  Plaintiff's new argument about an alleged lack of consideration, which she never raised before the appeal or on appeal, does not remotely relate to AT&T Mobility.  It is therefore beyond the scope of the mandate and this Court should not consider it.

For the same reasons, this Court should not consider the four new affidavits submitted by Plaintiff.  (Opp., Exhibits A, B, C, and D).  She failed to submit these or similar materials before M&T Bank's appeal, and nothing contained in those affidavits is relevant to the Court's reconsideration under AT&T Mobility.  The narrow mandate in this case does not permit

---

[20]     Plaintiff appears poised to argue that footnote 1 of the mandate, which states that the remand is "unlimited," provides this Court with unlimited jurisdiction over this case.  This argument is directly inconsistent with Eleventh Circuit precedent.  In Tilton v. Playboy Entertainment Group, Inc., 554 F.3d 1371, 1379 (11th Cir. 2009), the Court remanded the matter to the district court to make factual findings for an award of attorneys' fees, and concluded by stating, "[t]his remand is unlimited; that is, we do not retain jurisdiction over this case."  Hence, an "unlimited" remand means that the appellate panel has relinquished jurisdiction; and, in the event of another appeal, a new panel may preside.  It does not mean that the district court is vested with unlimited jurisdiction over the matter, as if the appeal and mandate never occurred.  Two members of the panel in Tilton were Judges Pryor and Cox.  Those same two judges were on the panel for this case.

Plaintiff's belated attempt to build a factual record that is irrelevant under federal and Maryland law.   See also  Medical Center Pharmacy v. Holder, 634 F.3d 830, 834 (5th Cir. 2011) (explaining that under the "waiver doctrine . . . an issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand").

This newly minted argument would have to be rejected even if it were properly before the Court.  The Account Agreement provides:

**Changes In Governing Documents**

No change in any governing document for your account can be made except in a writing signed by us.  We can change any governing document for your account at any time.  If the change adversely affects you, we will send or deliver to you any notice of the change that applicable law requires us to send or deliver to you. If applicable law does not require us to send or deliver any notice of the change to you, we will either send or deliver a notice of it to you or post a notice of it in our banking offices before the date it takes effect.  Any changes shall be effective as of the date designated by us or, in the case of an adverse change impacting an automatically renewable time deposit account, upon the first renewal of such time deposit account following the designated effective date of the change.

(Account Agreement, p. 12).  This provision -- which Plaintiff only selectively quoted in her opposition (see Opp., pp. 19-20) -- does not make the arbitration agreement void under Maryland law.

This case is closely analogous to Harby, 915 A.2d 462, a case Plaintiff failed to cite.  In Harby, as here, the plaintiff argued that the arbitration agreement contained in a bank account agreement was void for lack of consideration due to another provision in the account agreement permitting the bank to make changes to the account agreement.  The account agreement in Harby provided in part:

We [Wachovia] have the right to change the terms of this Agreement and the fees, charges and other terms and conditions described in other documents incorporated by reference.  We will notify you in writing at least thirty calendar days before the change will take effect if the change is not in your favor . . ..

Id. at 468-69.  The Court found that the notice requirement was sufficient consideration for the arbitration agreement.  Id. at 469-71.

The Court of Special Appeals' opinion in Harby is a direct application of the Maryland Court of Appeals' opinion in Holloman v. Circuit City Stores, Inc., 391 Md. 580 (Md. 2006), another case Plaintiff failed to cite.  In Holloman, the Court considered an arbitration agreement

that permitted the employer to "alter or terminate" the arbitration agreement on December 31 of every year, upon thirty days written notice to the employee.  Id. at 586.  The Court found that the limitations imposed upon the employer with respect to changing the contract were sufficient consideration to give rise to an enforceable arbitration agreement.  Id. at 592-93.[21]

As in Harby and Holloman, the Account Agreement here requires M&T Bank to provide prior notice of any change to Plaintiff.  Under Maryland law, this is sufficient consideration and makes the arbitration agreement enforceable.  See also Moses H. Cone, 460 U.S. at 24-25 (all "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration").

Finally, in Rampersad v. Primeco Personal Communications, L.P., 2001 WL 34872572, at *1 (S.D. Fla. Oct. 16, 2001) (Moreno, J.), the plaintiff sued for breach of contract but, at the same time, sought to avoid the arbitration agreement contained in that contract by arguing that no contract had ever been formed.  The district court squarely rejected this argument, holding that the plaintiff's contentions were "untenable" because he "cannot claim the contract was not formed to avoid arbitration and concurrently sue for breach of that contract."  Id.

Plaintiff is in substance seeking to do the same thing here.  The Complaint alleges that the Account Agreement governs her account (see ¶¶ 16, 24-25, 36, 39-41), and Plaintiff has brought suit under the Account Agreement for breach of the implied covenant of good faith and fair dealing (Complaint, ¶¶ 76-82).  Now, she argues that the Account Agreement, or at least part of it, is void for lack of consideration.  These contrary positions are untenable.  Plaintiff cannot

---

[21]     The Holloman and Harby opinions distinguished the lone case cited by Plaintiff, Cheek v. United Healthcare of Mid-Atlantic, Inc., 835 A.2d 656 (Md. 2003).  In Cheek, the Court of Appeals considered an arbitration agreement that reserved for the employer the "right to alter, amend, modify, or revoke [the arbitration agreement] at its sole and absolute discretion at any time with or without notice."  Id. 835 A.2d at 658  (emphasis added).  Emphasizing that the employer could revoke its agreement to arbitrate at any time without prior notice, the Court held that the arbitration agreement was illusory, and therefore void for lack of consideration.  Id. at 662-63.  Unlike Cheek, which required no prior notice, the provision cited by Plaintiff in her Account Agreement obligates M&T Bank to provide prior notice of a change, just like the provisions in Harby and Holloman that were found to provide sufficient consideration.

sue for damages based on an alleged breach of the Account Agreement and, at the same time, argue that the Account Agreement is void for lack of consideration in order to avoid arbitration.[22]

### Conclusion

For all of the foregoing reasons, and the reasons set forth in the Motion, M&T Bank respectfully requests that the Motion be granted.


Date:   July 15, 2011                                  Respectfully submitted,


                                         _____ s/ James A. Dunbar _____
                                         James A. Dunbar (admitted *pro hac vice*)
                                         Matthew R. Alsip (admitted *pro hac vice*)
                                         Venable LLP
                                         210 West Pennsylvania Avenue, Suite 500
                                         Towson, Maryland 21204
                                         410-494-6200 (telephone)
                                         410-821-0147 (facsimile)
                                         jadunbar@venable.com
                                         mralsip@venable.com

                                         John T. Prisbe (admitted *pro hac vice*)
                                         Venable LLP
                                         750 East Pratt Street, Suite 900
                                         Baltimore, Maryland 21202
                                         410-244-7400 (telephone)
                                         410-244-7742 (facsimile)
                                         jtprisbe@venable.com

                                         *Counsel for Manufacturers and Traders Trust*
                                         *Company a/k/a M&T Bank*

---

[22] Further, Plaintiff cannot avoid arbitration by attacking the validity of the Account Agreement generally.  See Rent-A-Center, West, Inc. v. Jackson, ___ U.S. ___, 130 S. Ct. 2772, 2778 (2010).

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 15th day of July, 2011, I filed a copy of M&T Bank's foregoing Reply in Support of Renewed Motion to Compel Arbitration and Stay or Dismiss Litigation using the Court's CM/ECF system.  I also certify that the foregoing documents are being served this day either by Notice of Electronic Filing generated by the CM/ECF system or by U.S. mail, postage prepaid, on all counsel of record or <u>pro</u> <u>se</u> parties entitled to receive service.


_____s/ James A. Dunbar_____
James A. Dunbar


301567/5