

# EXHIBIT 2

ELEVENTH CIRCUIT DOCKET NO. 10-12375-AA

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

In Re CHECKING ACCOUNT OVERDRAFT LITIGATION:

MANUFACTURERS AND TRADERS TRUST COMPANY
A/K/A M&T BANK,

Appellant,

v.

MAXINE A. GIVEN,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT
FOR THE SOUTHERN DISTRICT OF FLORIDA

### BRIEF OF APPELLEE

| | |
|---|---|
| E. Adam Webb | Bruce S. Rogow |
| Georgia Bar No. 743910 | Florida Bar No. 067999 |
| G. Franklin Lemond, Jr. | Robert C. Gilbert |
| Georgia Bar No. 141315 | Florida Bar No. 561861 |
| | |
| WEBB, KLASE & LEMOND, LLC | ALTERS LAW FIRM, PA |
| 1900 The Exchange, S.E. | 4141 Northeast 2nd Avenue |
| Suite 480 | Suite 201 |
| Atlanta, Georgia 30339 | Miami, Florida 33137 |
| (770) 444-0773 | (305) 571-8550 |
| (770) 444-0271 (facsimile) | (305) 571-8558 (facsimile) |

Attorneys for Appellee

### A. Procedural Unconscionability.

#### 1. The Account Agreement Is A Contract Of Adhesion.

"Certain elements of the bargaining process tend to indicate the presence of procedural unconscionability." Doyle, 918 A.2d at 1274. Courts consider numerous factors in determining whether a contract is procedurally unconscionable, none of which is dispositive. Id. at 1274-76. Such factors include, but are not limited to: the relative bargaining power of the parties, whether the terms were explained to the weaker party, whether alterations in the printed terms would have been permitted by the drafting party, the timing of the presentation of the contract to the weaker party, whether the weaker party was required to sign or initial the challenged provisions, and whether the weaker party could have opted out of any of the contract terms. Id.

Standardized agreements, like M&T's Arbitration Clause, that are "drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who ha[d] no real opportunity to bargain about its terms" are procedurally unconscionable "contracts of adhesion" under Maryland law. Jones v. Genus Credit Mgmt. Corp., 353 F. Supp. 2d 598, 600-02 (D. Md. 2005) (quoting Meyer v. State Farm Fire and Cas. Co., 582 A.2d 275, 278 (Md. Ct. Spec. App. 1990)); see also Doyle, 918 A.2d at 1270 n.3 (same, concluding "there is no doubt that the Agreement constitutes a contract of adhesion"). Further, once it is

14

established that a contract is one of "adhesion," the inquiry turns to whether the contract is substantively unconscionable. Walther, 872 A.2d at 746-47.

Applying the foregoing, the district court properly held that the Arbitration Clause was procedurally unconscionable. May 10th Order, p. 13 (RE 390). As Judge King determined, "M&T's agreement is not conspicuous." Id. The Arbitration Clause appears in a sea of fine print (*i.e.*, six-point font), roughly halfway through a 45-page standardized form agreement that M&T drafted. customers were not required to sign the Account Agreement, nor were they required to initial the arbitration provision to signify acknowledgement. M&T was in a superior bargaining position relative to its customers. Customers were not permitted to negotiate any part of the Arbitration Clause or opt out of the Clause,[2] and Ms. Given was not even provided with the provision (or any other part of the contract) until *after* she opened her account with M&T. M&T's arbitration clause is a classic "take-it-or-leave-it" adhesion contract and is procedurally unconscionable.

Judge King readily distinguished the M&T Arbitration Clause from the arbitration provision held to be enforceable in Walther, 872 A.2d 735 (relied upon by M&T below – (RE 212)). The Walther court held that the arbitration agreement

---

[2] See, e.g., Wallace v. National Bank of Commerce, 938 S.W.2d 684, 688 (Tenn. 1996) (cited by M&T but finding "the deposit agreements are standardized forms, undoubtedly, the opportunity to open an account with a particular bank was presented on a take-it-or-leave-it basis").

15

there was not "conspicuously distinct" from the entire agreement, emphasizing that the entire agreement was only two pages long, that of the seventeen paragraphs comprising the agreement, *only* paragraph 17 – the arbitration clause – was underlined; that the arbitration clause was placed *"directly above"* (emphasis in original) plaintiffs' signatures; and that plaintiffs also separately initialed the non-signature page of the agreement. Id. at 745, 754 n.11. Walther observed that although a signature is not required to render arbitration provisions enforceable, the presence or absence of a signature is often relevant to the conspicuousness determination. Walther, 872 A.2d at 754-55.

Here, by contrast, and as Judge King observed, the Arbitration Clause *was buried* in the middle of a lengthy 45-page contract, the arbitration provision is not anywhere near the end of the agreement (even if there had been a signature line), plaintiffs were not required to sign the agreement, and did not even have to initial next to the arbitration provision to signify acknowledgement. Furthermore, Ms. Given did not even receive the arbitration provision until after she opened her account with M&T. May 10th Order, p. 13 (RE 390).

M&T's suggestion that the arbitration terms are not contained in "fine print" – see Brief of Appellant, p. 22 – is wrong. The arbitration provision appears in the middle of a 45-page document and is written in small 6 point font. See Walther, 872 A.2d at 754 (citing authorities invalidating waiver provisions which were

"buried in paragraph thirty four in contract containing forty-six paragraphs" and "buried in extremely fine print in an adhesion contract" in the midst of many other clauses). The single heading is bolded but not in capital letters. See Account Agreement, p. 18 (RE 176). The only portion which appears in full capital letters appears is at the beginning and end of the Arbitration Clause, with 12 paragraphs in small type setting forth the arbitration provisions sandwiched in between. Id. at 18-20 (RE 176-77).[3] Bailey v. SunTrust Bank, 2010 WL 2010009 (E.D. La. 2010), cited by Appellant, is inapposite, since it applies Louisiana – not Maryland – law, and there is no indication that it contained, as here, a small font size, even if used throughout the entire agreement. See Brief of Appellant, pp. 22-23.

M&T also argues "there was no 'surprise' about the Account Agreement" because plaintiff received it before incurring the overdraft fees in issue. Id. at 23. The "surprise," however, was *not* that Ms. Given and the other customers received the Account Agreement, but that it contained an inconspicuous arbitration provision buried in the middle which significantly impacted their legal rights and was not pointed out to them nor were they required to sign or initial it. Nor is

---

[3] M&T's reference to Ms. Given's education and profession – see Brief of Appellant, p 22 n.16 – is inconsequential here. For example, her level of education does not negate the bank's superior bargaining position nor her inability to negotiate changes in the bank's standardized form contract. Further, although the bank notes that receipt of the Arbitration Clause by Ms. Given after she opened her checking account does not, by itself, render the clause unenforceable, id. at 23 n.17, that is one of the many factors that render the Clause unconscionable.

"surprise" the only factor to be considered. See Doyle, 918 A.2d at 1274 (holding "overwhelming bargaining strength or use of fine print . . . may reflect procedural unfairness in that it takes advantage of or surprises the victim of the clause").

### 2. The "No Alternative" Factor Is Inconsequential

M&T urges at pages 19-22 of its brief that the district court failed to address the purportedly "dispositive" issue of whether Ms. Given could have obtained banking services from another bank which did not impose an arbitration requirement. See Brief of Appellant, pp. 19-21. This argument is flawed. The "no alternative" factor is but one of many factors which may be considered to show procedural unconscionability, none of which are dispositive. Doyle, 918 A.2d at 1274. Doyle cites "overwhelming bargaining strength or use of fine print" as the primary factors to be considered. Id. Doyle then lists eleven "additional factors" which may be considered, with the very last one being "whether there were alternative providers of the subject matter of the contract." Id. As such, the "no alternative" factor is of relatively little consequence. For example, in Jones v. Genus Credit Management Corp, 353 F. Supp. 2d 598, 600-02 (D. Md. 2005), the court found the contract procedurally unconscionable without even *considering* whether plaintiffs had an alternative source for the services they sought.

Moreover, the "no alternative" factor necessarily assumes that Ms. Given and M&T's other customers were reasonably on notice of the Arbitration Clause so

18