# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

FIRST TRANCHE BANKS

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-03250-PJH

## [PROPOSED] ORDER AND OPINION GRANTING CLASS CERTIFICATION

THIS CAUSE is before the Court upon the Plaintiffs' Motion For Class Certification and Incorporated Memorandum of Law [DE #1387] ("Motion"). The Court has carefully considered the Motion, response, reply, and the documents attached to them, as well as Plaintiffs' voluminous evidentiary submission and the oral argument of counsel. As announced at the hearing on this matter on July 13, 2011, the Court grants the Motion, for the reasons explained more fully below.

## INTRODUCTION

Plaintiffs allege that, through the use of specially designed software programs, Union Bank, N.A. ("Union") engaged in a systematic scheme to extract the greatest possible number of overdraft fees from Plaintiffs and similarly situated Union consumers across the country. Union allegedly collected millions of dollars in excessive overdraft fees as a result of this systematic

scheme, much of it, according to Plaintiffs, from Union's most vulnerable customers.  To carry out this scheme, Plaintiffs allege that Union manipulated debit card transactions by, among other things, employing a bookkeeping trick to re-sequence the transactions from highest-to-lowest dollar amount at the time of posting.  These account manipulations, which Union deponents testified were applied in the same manner to all class members as a result of Union's standardized computer software, caused funds in customer accounts to be depleted more rapidly, resulting in more overdrafts and, consequently, more overdraft fees.  In many instances, overdraft fees were levied at times when, but for Union's manipulation, there would have been sufficient funds in the consumers' accounts.  Plaintiffs allege that Union did not fairly disclose its manipulations, took active steps to keep them secret, and engaged in these manipulations despite recognizing that it harmed its own customers.  Union disputes that it has manipulated account transactions and that it has committed any violations of law.

Plaintiffs move for certification of their claims for breach of contract and the breach of the duty of good faith and fair dealing, unjust enrichment, unconscionability, and violation of the California Unfair Competition Law.[1]

## CLASS CERTIFICATION STANDARDS

Questions concerning class certification are left to the sound discretion of the district court, and the Court must undertake a rigorous analysis to insure that the Rule 23 prerequisites are met.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).  In making the decision, the Court does not determine whether plaintiffs will ultimately prevail on the merits, but it may

---

[1]  Plaintiffs do not seek to certify for class treatment their claims for conversion at this time. Plaintiffs also sought to certify their claim for violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c).  However, the Court dismissed that cause of action by order dated July 13, 2011, and that part of Plaintiffs' Motion is moot.

consider the factual record in deciding whether the requirements of Rule 23 are satisfied. *Valley Drug. Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003).

Courts "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000). In other words, the Court undertakes "an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or ***are susceptible of common proof*** equally applicable to all class members." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (emphasis added) (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997)).

Rule 23(a) states that a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). If the court finds that the class criteria of Rule 23(a) are satisfied, it then must also find that the class fits within one of the three categories of class actions defined in Rule 23(b).

## DISCUSSION

*1.     Numerosity*

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "[A] numerical yardstick is not the determinant for class certification; rather a court should examine the numbers involved to see if joinder of all is impossible or impracticable." *Hastings-Murtagh v. Texas Air Corp.*, 119 F.R.D.

450, 459 (S.D. Fla. 1988).  Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class."  *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986)).  Plaintiffs' proposed class consists of

> All Union Bank customers in the United States who had one or more consumer accounts and who, from applicable statutes of limitation through August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of Union Bank's practice of sequencing debit card transactions from highest to lowest.[2]

Counsel for Union noted that the bank has thousands of customers who incurred overdraft fees. Tr. at 47.[3]  Nonetheless, Union insists that the numerosity requirement is not met in this case, and separately that certification of the class is inappropriate, because the class definition renders the class unascertainable.  Union argues that the membership of the proposed class cannot be determined without a trial on the merits because of the way that the class definition is written, and that no class member would be able to know that they were in fact a member of the class.

Plaintiffs propose to have their expert, Mr. Olsen, mine Union's data to determine who are the members of the class.  This method of determining class membership has been accepted by other courts.  *See Sadler v. Midland Credit Mgmt.*, 2009 U.S. Dist. LEXIS 26771, at *4-5 (N.D. Ill. Mar. 31, 2009) (automated query of defendants' database would yield "objective

---

[2]  Plaintiffs also seek the certification of subclasses for specific claims as set forth in Plaintiffs' Proposed Trial Plan for Trial of All Class Claims (the "Trial Plan").  These subclasses are discussed below.

[3]  References to the transcript of the hearing on July 13, 2011, are denoted as "Tr. at __.'

criteria" necessary to ascertain the class); *Stern v. AT&T Mobility Corp.*, 2008 U.S. Dist. LEXIS 110305, at *12-13 (C.D. Cal. Aug. 22, 2008) (defendants' business records provided sufficient information to identify individuals who purchased cellular telephone service and were enrolled in either one of the challenged services without ever having requested the service); *In re Diet Drugs Prods. Liab. Litig.,* 1999 U.S. Dist. LEXIS 13228, at *34-35 (E.D. Pa. Aug. 26, 1999) (finding class definition was adequate because there were reliable means to determine who had actually taken the drug where fact sheets, prescription records, and records of medical treatment were available to verify consumption); *see also Roper v. Consurve, Inc*., 578 F.2d 1106 (5th Cir. 1978).

Mr. Olsen can identify which Union customers incurred additional overdraft fees as a result of high-to-low re-sequencing of debit transactions by comparing that re-sequencing to each of the alternative posting scenarios that he discussed in his declaration.  While the finder of fact will ultimately have to decide which of these scenarios is most consistent with Union's duty of good faith and fair dealing, Mr. Olsen will be able, at the outset, to identify all of Union's customers who were harmed as compared to each of these alternative scenarios.  The exact damages due each member of the class will then be calculated by Mr. Olsen once the fact finder has chosen the appropriate posting methodology.  *Klay*, 382 F.3d at 1259-60 (footnotes omitted) ("[W]here damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification."); 7A Wright, Miller & Kane, *Federal Practice & Procedure: Civil 3d* § 1760 (3d ed. 2005) ("If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist."); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1133 n.16 (11th Cir. 2004) (noting "fact that

class definitions may undergo modification, possibly several times, during the course of a class action."). It is important to note that Union has offered neither evidence nor expert testimony to in any way rebut Mr. Olsen's findings and conclusions. Nor did Union dispute Mr. Olsen's ability to calculate damages on an account-by-account basis using the bank's own computerized records, a method upon which Mr. Olsen previously relied, with court approval, in *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 U.S. Dist. LEXIS 70124, at *48-49 (N.D. Cal. Sept. 11, 2008).

Accordingly, the Court finds that the numerosity requirement of Rule 23 is satisfied, that the class definition is quite clear, and that the class is readily ascertainable. Although the exact number of class members is not presently known, the proposed class appears to number in the tens- or hundreds-of-thousands. Because of that great number, and the fact that the members of the class are geographically dispersed, joinder is impractical. *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied by class of 31 members who were geographically dispersed across Florida, Georgia and Alabama).

2.    *Commonality and Typicality*[4]

Rule 23(a)'s commonality prerequisite requires at least one issue common to all members of the class. The "commonality" requirement of Rule 23(a)(2) "is a 'low hurdle' easily surmounted." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (citations omitted); *see also Cheney*, 213 F.R.D. at 490 (commonality threshold is "not high"). It only requires "at least one issue common to all class members." *Brown*, 212 F.R.D. at 604.

---

[4]  "The typicality and commonality requirements are distinct but interrelated, as the Supreme Court made clear: 'The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'"  *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir.

"Plaintiffs' legal claims need not be completely identical and factual differences concerning treatment or damages will not defeat a finding of commonality." *Brown*, 212 F.R.D. at 604. The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D. Fla. 2004); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action"). The common issues of law and fact in this case include whether Union:

- Manipulated and re-ordered transactions in order to increase the number of overdraft fees imposed;

- Disclosed and/or refused to allow its class members to opt out of the overdraft protection program and shadow line of credit;

- Omitted to alerted class members that a debit card transaction would trigger an overdraft fee if processed and provided them with an opportunity to cancel the transaction;

- Imposed overdraft fees when, but for re-sequencing, there would be sufficient funds in the account;

- Delayed posting transactions so that class members were charged overdraft fees even when sufficient funds were in the account to cover the transactions; and

- Breached its covenant of good faith and fair dealing with Plaintiffs and the class; engaged in practices that were substantively and procedurally unconscionable; was unjustly enriched at the expense of Plaintiffs and the class; and violated the California Unfair Competition Law.

Counsel for Union conceded at oral argument that there is at least one common issue here. Tr. at 47.[5]

---

2004) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).

[5] References to the transcript of the hearing on July 13, 2011, are denoted as "Tr. at __."

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The typicality test centers on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Data Prods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative, typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000). Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985); *see also Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 604-05 (M.D. Fla. 2003); *Pottinger v. Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989).

"The test for typicality, like commonality, is not demanding." *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996). Neither typicality nor commonality require that all putative class members share identical claims, and both may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class at large. *Kornberg*, 741 F.2d at 1337; *Prado-Steiman*, 221 F.3d at 1279 n.14. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory. . . . Indeed, even relatively pronounced factual differences will generally not

preclude a finding of typicality where there is a strong similarity of legal theories.  Where an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice."  *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citations and alterations omitted).  To defeat typicality, the factual variation presented by a class representative's claim "must be clear and must be such that interests of the class are placed in significant jeopardy."  *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996).

The Court finds that Plaintiffs' claims arise out of the same course of conduct and are based on the same legal theories as those of the absent class members.  Pursuant to a standardized, automated process, Union posted all debit transactions that settled on a given day late in the evening or early the following morning before business hours.  The order in which the bank posted debit transactions to an account directly corresponded to the order in which the funds were deducted from the account.  Throughout the Class Period, as to each Plaintiff and every member of the proposed class, it was Union's uniform practice to post all POS, ATM, and teller debit transactions in a single "batch," in the order of highest-to-lowest dollar amount.  That is, all Plaintiffs and members of the proposed class, whose accounts were governed by common and materially uniform agreements, were subjected to Union's practice of re-sequencing debit card transactions from high-to-low, and were assessed additional overdraft fees as a result.  Plaintiffs propose discrete multi-state subclasses for some of the state law claims to ensure that the proposed class representatives' claims are materially identical to all other class members that they seek to represent.  Therefore, the Court finds that the commonality and typicality requirements are met.

*3. Adequacy*

The Court must be satisfied that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when (i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Valley Drug*, 350 F.3d at 1189. Adequacy exists where the named plaintiffs share common interests with the class members and seek the same type of relief for themselves as they seek for the class. *Pottinger*, 720 F. Supp. at 959.

The Court finds that neither the Plaintiffs nor their counsel have any interests that are antagonistic to those of the absent class members. The central issues in this case – the existence, unlawfulness and effect of Union's scheme to manipulate debit card transactions and increase the number of overdraft fees assessed – are common to the claims of Plaintiffs and the other members of the class. Each representative Plaintiff, like each absent class member, has a strong interest in proving Union's scheme, establishing its unlawfulness, demonstrating the impact of the illegal conduct and obtaining redress. Plaintiffs thus "share the true interests of the class." *Texas Air*, 119 F.R.D. at 459; *see also Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997) (the "common goal of each member of the class" is to remedy the unlawful conduct, and "[i]f the Plaintiffs succeed, the benefits will inure to all class members.").

The law firms seeking to represent the class here include very qualified and experienced lawyers. The Court has reviewed the firm resumes setting forth their experience and expertise in class actions. In addition, the Court is familiar with many of the lawyers seeking to represent the class, as they have appeared before the Court a number of times. The Court is satisfied that the lead Plaintiffs and the firms seeking appointment as class counsel will properly and adequately

prosecute this case.  The Court therefore appoints Plaintiffs as representatives of the class, and appoints the following firms as class counsel pursuant to Fed. R. Civ. P. 23(g):  Alters Law Firm, P.A.; Podhurst Orseck, P.A.; Grossman Roth, P.A.; Baron & Budd, P.C.; Golomb & Honik, P.C.; Lieff Cabraser Heimann & Bernstein LLP; Trief & Olk; Webb, Klase & Lemond, L.L.C.; and Bonnett Fairbourn Friedman & Balint.

*4. Rule 23(b)(3)*

The Plaintiffs bring this action under Rule 23(b)(3), which requires (i) that questions of law or fact common to class members predominate over any questions affecting individual members, and (ii) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  "Common issues of fact and law predominate if they 'have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'"  *Klay*, 382 F.3d at 1255 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001)); *see also Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (common issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.").  It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions.  *Klay*, 382 F.3d at 1254; *see also In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (the rule "calls only for predominance, not exclusivity, of common questions").

The predominance inquiry "focuses on the number and significance of common issues. This rule does not require a complete absence of individual issues.  *Cox v. American Cast Iron*

*Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986).  If the liability issue is common to the class, common questions predominate over individual questions.  *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987)." *Singer v. AT & T Corp.*, 185 F.R.D. 681, 690 (S.D. Fla. 1998); *see also Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 606 (M.D. Fla. 2003) ("In deciding whether common questions predominate under Rule 23(b)(3), courts generally focus on whether there are common liability issues which may be resolved efficiently on a class-wide basis.") (citation omitted); *Cooper v. Pacific Life Ins. Co.*, 229 F.R.D. 245, 263-64 (S.D. Ga. 2005) (finding predominance satisfied despite "fact that some individual consideration of customers' unique circumstances would have been necessary" to evaluate their claims, where "classwide liability exists, if at all, because of the . . . common course of conduct, through misleading omissions . . . and otherwise").

Here, "irrespective of the individual issues which may arise, the focus of the litigation" concerns "the alleged common course" of unfair conduct embodied in Union Bank's alleged scheme to maximize overdraft fees through the hidden reordering of transactions at account posting.  *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 86 (M.D. Fla. 1977).  Any analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner.  A scheme "perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."  Advisory Committee Notes to Rule 23(b)(3) (1966 Amendments).  Indeed, predominance is "a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The court finds that predominance is satisfied in this case. Plaintiffs allege, and submit evidence demonstrating, that Union's course of conduct commonly, and adversely, affected the entire class. The class members are similarly situated with regard to the readily determined, allegedly excess fees they incurred as a result of a standardized process. The class is unified by both common questions and a common interest. The evidence necessary to establish Plaintiffs' claims is common to both Plaintiffs and all members of the class; they all seek to prove that Union's high-to-low re-sequencing practice was wrongful. That evidentiary presentation involves the same evidence of (i) Union's form contracts, with similar terms, applicable to all Plaintiffs and class members; (ii) Union's systematic re-sequencing of debt transactions from high-to-low for all Plaintiffs and class members through its automated software programs; and (iii) the "Matrix" line of credit that Union secretly established for all Plaintiffs and class members in order to charge them overdraft fees. The evidence to be presented by the Plaintiffs has a direct impact on every class member's effort to establish liability and on every class member's entitlement to relief. *Klay*, 382 F.3d at 1255. Moreover, where corporate policies "constitute the very heart of the plaintiffs' . . . claims," as they do here, common issues will predominate because those policies "would necessarily have to be re-proven by every plaintiff." *Klay*, 382 F.3d at 1257; *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 236 F.R.D. 62, 70 (D.N.H. 2006) (varying degrees of knowledge among class members do not present an obstacle to class certification where other common issues unite the class).

The Court notes that the problems plaguing the proposed classes in *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010), and *Klay* are not present here. In *Klay*, the court ultimately found certification of the breach of contract

claims inappropriate given the individualized issues of fact they entailed, even though questions of contract law were common to the whole class. *Id.* at 1261. There were many different defendants with many different contracts with many different provider groups. Moreover, because the defendants breached the contracts through a variety of means and differing computer algorithms that were not subject to generalized proof, each physician would have to prove a variety of individual circumstances leading to the breach. *Id.* at 1263-64. Similar problems precluded certification in *Sacred Heart*, where there were substantial variations in the terms of over 300 hospital contracts that were individually negotiated, leading the court to find that "the diversity of the material terms is overwhelming." *Sacred Heart*, 601 F.3d at 1171-72. In contrast, the agreements at issue here are uniform form contracts offered on a take-it-or-leave it basis and were not the product of any individual negotiation. *See id.* at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). Nor do Plaintiffs have to prove a variety of individual circumstances supporting the breach, as Union's standard re-sequencing policy resulted in uniform conduct directed at all members of the class.

In addition, the court's certification in *Gutierrez* is instructive. Wells Fargo, like Union, also contended that individual issues would predominate, but the court found the "challenged practice is a standardized one applied on a routine basis to all customers." 2008 U.S. Dist. LEXIS 70124, at *48. Thus, while "there will be some individual issues . . . these individual variations will not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors." *Id.* Here, as in *Gutierrez*, Plaintiffs allege that Union exercised its discretion in bad faith by re-sequencing debit card transactions posted to their checking accounts from highest to lowest in order to maximize

overdraft penalties against customers.  Moreover, as in *Gutierrez*, Union's "challenged practice is a standardized one applied on a routine basis to all customers."  *Id.* at *48.  Any individual issues will "not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors."  *Id.*

As discussed above, class members are readily ascertainable through objective criteria: Union's own records of individuals who were assessed overdraft fees.  Plaintiffs' expert will formulate calculations that can identify members of the class by running queries in Union's computer records.  Such calculations will be merely ministerial in nature, and will not be plagued by resolution of individual class member issues.  Damages will be calculated using the same Union records used to identify the class members.  These facts make this case manageable as a class action.

The Court also finds that the creation of subclasses to address variations in state law is appropriate here, and will make this case manageable as a class action.  *See, e.g., Klay*, 382 F.3d at 1262 (noting that "if applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate.").  The court "may authorize aggregate treatment of multiple claims, or of a common issue therein, by way of a class action if the court determines that

(1)  a single body of law applies to all such claims or issues;

(2)  different claims or issues are subject to different bodies of law that are the same in functional content; or

(3)  different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can manage by means of identified adjudicatory procedures."

American Law Institute, *Principles of the Law: Aggregate Litigation* § 2.05(b) (2010). The proposed special verdict forms and supporting surveys of law submitted by Plaintiffs with their Trial Plan illustrate that the variations among the potentially applicable state laws are not material and can be managed to permit a fair and efficient adjudication by the fact finder at trial. As detailed in Plaintiffs' Trial Plan, Plaintiffs propose just five subclasses for the state law claims. Each subclass will have its own start date linked to the statute of limitations for each of those claims. Each subclass groups the laws of California, Oregon and Washington accordingly.

Union argues that, despite the fact that the law of only three states, at most, is at issue with regard to any of the subclasses (and, as grouped by Plaintiffs, is sufficiently uniform), individual issues predominate with regard to these claims. Its argument relies on an incorrect reading of the relevant law. For example, it is not the case that the individual Plaintiffs' and class members' subjective expectations are necessary to prove their claims. To the contrary, breach of the duty good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct. *See, e.g.*, *Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768, at *38-40 (C.D. Cal. Nov. 9, 2009). Plaintiffs' unconscionability claims focus on Union and its conduct, making them appropriate for certification. *See, e.g.*, *Dienese v. McKenzie Check Advance of Wis., L.L.C.*, 2000 U.S. Dist. LEXIS 20389, at *13-14 (E.D. Wis. Dec. 11, 2000) (citing cases approving of class certification of common-law unconscionability claims). So too with Plaintiffs' unjust enrichment claims – courts often certify unjust enrichment claims because "common questions predominate" and are "all easily resolved class wide." *In re Nat'l W. Life Ins. Deferred Annuities Litig*., 268 F.R.D. 652, 669 (S.D. Cal. 2010); *see also Cartwright v. Viking Indus.*, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 11, 2009); *Keilholtz v. Lennox Hearth Prods*., 268 F.R.D. 330, 343 (N.D. Cal.

2010).  The uniformity of Union's representations to members of the class, through the account agreement, and the focus on its conduct also renders the California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* claim appropriate for certification.  *See, e.g.*, *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (Cal. Ct. App. 2006) (holding that in an action brought by consumers, "[a] business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."); *Progressive West Ins. Co. v. Yolo County Super. Ct.*, 135 Cal. App. 4th 263, 285-86 (Cal. Ct. App. 2005) (discussing UCL unfairness standard as applied in consumer cases); *Gutierrez v. Wells Fargo & Co.*, No. C 07-05923 WHA, 2010 WL 1233810, at *13-14 (N.D. Cal. Mar. 26, 2010) (refusing to decertify UCL class of Wells Fargo customers who sustained harm in the form of excess overdraft fees resulting from bank's debit re-sequencing practice, explaining that "[a]ll members of the 're-sequencing' class were charged overdraft fees due to defendant's accused high-to-low posting of transactions.").  The Court accordingly certifies Plaintiffs' four proposed subclasses: the two-state good faith and fair dealing subclass, the California unjust enrichment subclass, the three-state unconscionability subclass, and the California unfair competition subclass.

Nor do Union's affirmative defenses defeat certification of the class.  Union claims that it will advance a number of affirmative defenses, but it purports to meet its burden of proof as to those defenses by introducing common evidence, including "common evidence showing that it took affirmative steps to explain the change in its posting practices in April of 2004" (Trial Plan Opp. at 7-8); "common evidence" purportedly showing that it disclosed its "hold" practice but that the practice did not "delay" posting (although Union does not cite to any record evidence supporting the assertion) (*id.* at 10); and "much . . . evidence [that] is common" to allegedly

show that it carefully and studiously implemented the re-sequencing practice for reasons other than increasing revenue (*id.* at 11-12).  Union's use of common evidence supports a finding that common issues predominate.  Both sides will present common evidence on these issues.  Of course, whether Plaintiffs' or Union's evidence will prevail is not the appropriate inquiry at this time.  Instead, it is enough to note that both Plaintiffs and Union plan to rely on common evidence in making their cases.

Union's specific defenses do not defeat predominance.  Some (such as setoff) pertain (if at all, a merits determination to be made later) to damages, and can be accounted for in Plaintiffs' expert's calculations.  *See Carbajal v. Capital One F.S.B.*, 219 F.R.D. 437, 441 n.2 (N.D. Ill. 2004) (setoffs would not be a significant focus of the case and would likely involve nothing more than a mere calculation).  The Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification.  *See Allapattah Servs.*, 333 F.3d at 1261; *Sacred Heart*, 601 F.3d at 1178.  Others, such as waiver, ratification, and the voluntary payment doctrine,[6] require, under the law of all three states at issue, full knowledge by Plaintiffs and members of the class of material facts making their actions knowing and voluntary.[7]

---

[6] Moreover, these defenses may pertain more to damages than liability, depending on how the facts develop in discovery.  *See, e.g.*, *Coughlin v. Blair*, 41 Cal. 2d 587, 602-03 (1953) (discussing waiver in the context of the measure of damages, not liability), *cited in* Opp. at 27 n.37; *see also Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc*., 178 F. Supp. 2d 1099, 1114 (C.D. Cal. 2001) (affirmative defenses of waiver and mitigation pertained to damages, not liability).

[7] *See Padres Hacia Una Vida Mejor v. Davis*, 117 Cal. Rptr. 727, 736 (Cal. App. 2002) ("Waiver is the intentional relinquishment of a known right by a party with full knowledge of the facts"); *Stanley v. Mueller*, 350 P.2d 880, 887 (Or. 1960) (same under Oregon law); *Lawson v. Helmich*, 146 P.2d 537, 542 (Wash. 1944) (same under Washington law); *Am. Oil Servs. v. Hope Oil Co.*, 15 Cal. Rptr. 209, 213 (Cal. App. 1961) (voluntary payment doctrine requires full knowledge of the facts by the party making the payment); *Hammond v. Oregon & C.R. Co.*, 243 P. 767, 771-72 (Or. 1926) (same under Oregon law); *Indoor Billiard/Wash Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 23 (Wash. 2007) (same under Washington law); *Fergus v. Songer*, 59 Cal. Rptr. 3d 273, 289 (Cal. Ct. App. 2007) (ratification requires full knowledge);

However, Plaintiffs have alleged, and the evidence suggests, that Union omitted to disclose and withheld from its customers material information, including the existence of its secret "Matrix" line of credit which dictated how overdraft charges were generated, and that they had the right to opt out of the overdraft program (and thereby avoid overdrafts). Further, Union engaged in the uniform practice of omitting to disclose to its customers at the point of sale that transactions would lead to overdraft fees or their multiplication.

Specifically, Plaintiffs alleged that throughout the Class Period, if a customer's primary account and any linked account balances were not sufficient to cover the transaction amount, and if the customer did not have a cash reserve line of credit, Union secretly authorized customers' debit-card transactions into overdraft up to a maximum or ceiling amount that the bank determined was appropriate for each customer. This was done via a confidential automated process using a "Matrix" line of credit that Union built for the customer. Augmenting its re-sequencing practice, Union's secret use of the Matrix line of credit was integral to its overall scheme of increasing the number of completed debit transactions and the number of overdrafts. And the entire process of determining the amount of the Matrix line of credit and authorizing a transaction into overdraft was not disclosed to the customer before 2010. If Plaintiffs can prove these facts, they will undercut Union's defenses by common evidence.[8]

---

*Michel v. ICN. Pharm. Inc.*, 549 P.2d 519, 525 n.2 (Or. 1976) (same under Oregon law); *Snohomish County v. Hawkins*, 89 P.3d 713, 716 (Wash. Ct. App. 2004) (same under Washington law).

[8] The evidence thus far presented suggests that Union instructed its employees "never" to reveal the Matrix limits to customers. To the extent Union could prove that some customers nonetheless learned of their Matrix limit, yet continued to incur and pay overdraft fees, the presence of individualized defenses as to a small number of class members would not destroy the predominance of common liability questions. *See Smilow v. Southwestern Bell Mobile, Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008); *Robin Drug Co. v. Pharmacare Mgmt. Servs., Inc.*, No. Civ. 033397, 2004 WL 1088330, at *5 (D. Minn. May 13, 2004).

A class action is the only realistic way these claims can be adjudicated.  "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."  *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983).  The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.  The Supreme Court has long recognized that where, as here, "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device."  *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).  Thus, the Court's jurisprudence demonstrates the "recognition that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages done to any single individual or entity are too small to justify bringing an individual action."  *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 194 (2d Cir. 2011); *see, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that the class action mechanism may empower "plaintiffs to pool claims which would be uneconomical to litigate individually," such as when most of them "would have no realistic day in court if a class action were not available."); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("[T]he class attorney, who is familiar with the facts and the progress of the litigation, will be able to present the claimant's case.  If relegated to a new suit, the individual might be unable to obtain counsel to prosecute his action when the amount of individual damages is relatively small.  .  .  .  By obviating the need to bring a new lawsuit, the expense of litigating the new individual claim is reduced.") (quoting *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1220 n.80 (5th Cir. 1978)).

Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy.  Nearly all of the class members in this case have claims that are so small that it would cost them much more to litigate an individual case than they could ever hope to recover in damages, and thus there is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation. Concentrating the litigation in this forum is logical and desirable.  And as noted above, this case is eminently manageable as a class action.

## CONCLUSION

In accordance with the findings above, it is hereby

**ORDERED, DECREED, AND ADJUDGED** as follows:

Plaintiffs' Motion For Class Certification [DE # 1387] is GRANTED.  The Court certifies the following class:

> All Union Bank customers in the United States who had one or more consumer accounts and who, from applicable statutes of limitation through August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of Union Bank's practice of sequencing debit card transactions from highest to lowest.

The Court appoints Plaintiffs as representatives of the Class, and as representatives of the following specific subclasses:  Cynthia Larsen, Cheryl Brown, Kristian Logan and Josh Naehu-Reyes as representatives of Plaintiffs' proposed two-state good faith and fair dealing subclass; Cynthia Larsen, Cheryl Brown, Kristian Logan, and Josh Naehu-Reyes as representatives of the California unjust enrichment subclass; Cynthia Larsen, Cheryl Brown, Kristian Logan, and Josh Naehu-Reyes as representatives of the three-state unconscionability subclass; and Cynthia Larsen, Cheryl Brown, Kristian Logan and Josh Naehu-Reyes as representatives of the California unfair competition subclass.  The Court also appoints the following firms as Class Counsel pursuant to Fed. R. Civ. P. 23(g):  Alters Law Firm, P.A.; Podhurst Orseck, P.A.; Grossman

Roth, P.A.; Baron & Budd, P.C.; Golomb & Honik, P.C.; Lieff Cabraser Heimann & Bernstein

LLP; Trief & Olk; Webb, Klase & Lemond, L.L.C.; and Bonnett Fairbourn Friedman & Balint.[9]

      DONE AND ORDERED in Chambers at the James Lawrence King Federal Courthouse,

Miami-Dade County, Florida, this ____ day of _____, 2011.

 

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

---

[9] The Court will address the procedure for providing notice to class members regarding the certification of the class and these claims separately.