UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Faith Gordon v. Branch Banking & Trust Co.*
No. 1:09-CV-23067-JLK

PLAINTIFFS' MOTION TO STRIKE DEFENDANT'S RENEWED MOTION TO
COMPEL ARBITRATION AND STAY PROCEEDINGS AS IMPROPER AND
CONDITIONAL RESPONSE IN OPPOSITION

Plaintiff Faith Gordon moves to strike the improper Renewed Motion to Compel Arbitration and Stay Action (the "Renewed Motion") [**DE # 1721**] filed by Defendant Branch Banking & Trust Company ("BB&T").

I. Introduction

Remarkably, the Renewed Motion contends that, even though BB&T's previous motion to compel arbitration was denied, its motion to reconsider was denied, it lost on its appeal to the Eleventh Circuit, its petition for rehearing and/or rehearing *en banc* denied, and its motion to stay the mandate was denied, it can ignore two years' of legal proceedings and simply file its motion anew as if this procedural history never occurred. The Renewed Motion is improper because it advances legal theories that have already been ruled upon by this Court and Eleventh Circuit, or that the bank failed to timely argue when pursuing the initial arbitration motion. As there is no support for BB&T's implicit suggestion that it can ignore the mandate from the Eleventh Circuit and simply renew arguments that have already been rejected, the Renewed Motion should be stricken from the record.

## II.     Relevant Procedural History

On May 22, 2009, Faith Gordon filed a putative class action complaint against BB&T in the Superior Court of Fulton County, Georgia alleging that BB&T improperly assessed overdraft fees.  *See* Exh. A to **DE # 1** in Case No. 1:09-CV-23067-JLK.[1]  On June 29, 2009, BB&T removed the case to the District Court for the Northern District of Georgia. [**DE # 1**].  On July 7, 2009, BB&T filed its motion to compel arbitration along with its answer. [**DE # 5, 7**]. Plaintiff's opposition was filed on July 24, 2009, and the bank replied. [**DE # 8, 13**]. BB&T's reply was accompanied by the Affidavit of Jennifer Corn, which included new arguments and exhibits. [**DE # 14**]. As a result, Plaintiff moved to strike. [**DE # 15**].

On October 2, 2009, U.S. District Judge Charles Pannell entered an order denying BB&T's motion to compel arbitration. [**DE # 18**]; *see also* 666 F. Supp. 2d 1347 (N.D. Ga. 2009). Relying largely on the Eleventh Circuit's decision in *Dale v. Comcast Corp.*, 498 F.3d 1216 (11th Cir. 2007), the district court found BB&T's arbitration clause to be substantively unconscionable and unenforceable. [**DE # 18** at 11-13].

On July 16, 2009, the JPML conditionally transferred *Gordon* to MDL No. 2036. On August 14, 2009, BB&T objected to transfer. On October 13, 2009, the MDL panel denied BB&T's motion to vacate and ordered that *Gordon* be included in MDL No. 2036.

Following the transfer of *Gordon* to this Court, on October 16, 2009, BB&T moved for reconsideration of Judge Pannell's order as to arbitration. [**DE # 23, 24**]. In support of reconsideration, BB&T filed additional declarations and new evidence. [**DE # 25**]. BB&T also attempted to argue for the first time that the question of arbitrability should be determined by the arbitrator, not the Court. *Id.* On November 5, 2009, Ms. Gordon filed her response to reconsideration. [**DE # 125** in Case No. 1:09-md-2036-JLK]. Ms. Gordon took issue with BB&T's attempt to introduce new evidence in support of reconsideration because the evidence in question was previously available to BB&T. *Id.* at 3-6. On November 6, 2009, this Court denied reconsideration. [**DE # 44**]. BB&T appealed the initial order and the order denying reconsideration. [**DE # 38, 49**].

---

[1] Unless otherwise noted, all docket entry citations refer to filings in Case No. 1:09-cv-23067-JLK, as the majority of the previous filings in this case were entered in this underlying case number prior to the Court's instructions to file all items under Case No. 1:09-cv-2036-JLK.

Before the Eleventh Circuit, briefing was completed in February of 2010. Following the conclusion of briefing, the parties filed numerous notices of supplemental authority pursuant to Federal Rule of Appellate Procedure 28(j). Among the notices filed by BB&T was a notice of the Supreme Court's decision in *Rent-A-Center West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010), and the Eleventh Circuit's decision in *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118 (11th Cir. 2010). Each notice summarized the decision and argued its application to the *Gordon* appeal. Following oral argument, the Eleventh Circuit issued an order affirming the denial of arbitration. *Gordon v. Branch Banking & Trust Co.*, 2011 WL 1111718 (11th Cir. Mar. 28, 2011).

In *Gordon*, the Eleventh Circuit held that a class action waiver included in a consumer banking arbitration clause was unconscionable under Georgia law. 2011 WL 1111718 at *3. In reaching this conclusion, the Eleventh Circuit reaffirmed its ruling in *Dale*, stating that under Georgia law, "the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances." *Id.* at *2 (also noting that in "addressing the enforceability of a class action waiver" under Georgia law the courts have "not adopted a bright-line rule").

BB&T petitioned for rehearing. While the petition was pending, the Supreme Court issued its decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). Thereafter, BB&T filed several notices of supplemental authority arguing that *Concepcion* precludes a finding that the arbitration clause was unconscionable and unenforceable and invited the court to vacate its decision. However, the Eleventh Circuit rejected the bank's argument and, on June 3, 2011, denied rehearing. *See* June 3, 2011 Order (Exh. A hereto). Not a single judge requested a poll of the Court. *Id.* Subsequently, BB&T sought to stay the issuance of the mandate by filing a motion to stay that relied almost exclusively on *Concepcion*. This motion was also denied by the Eleventh Circuit. *See* July 1, 2011 Order (Exh. B hereto).

**III.   Argument**

Through the filing of its Renewed Motion, BB&T merely advances legal theories and arguments that have already been ruled upon and rejected by Judge Pannell, this Court, and Eleventh Circuit both explicitly and implicitly. To any extent BB&T did not raise an argument previously it was required to do so. Therefore, this Court should strike BB&T's improper attempt to seek the same relief again. This Court has the inherent authority to strike or summarily deny motions that are improper or devoid of legal support. *E.g.*, *Strategic Defense*

*Int'l, Inc. v. United States*, 745 F. Supp. 2d 1214, 1220 n.2 (M.D. Fla. 2010); *In re Seroquel Prods. Liab. Litig.*, 2009 WL 3739347, at *2 (M.D. Fla. Nov. 6, 2009) (denying renewed motion as improper and denying as moot motion to strike same); *Lee Memorial Health Sys. v. Medical Savings Ins. Co.*, 2007 WL 2044232, at * 1 (M.D. Fla. July 9, 2007).

The facts before the court in *Strategic Defense* are particularly pertinent.  There, the court summarized the improper litigation tactics at issue:

> The instant petition is another misguided attempt by Defendant to challenge its underlying criminal conviction in Case No. 8:05–CR 475–T–27TGW.  Since being convicted, Defendant and its President, Thomas F. Spellissy, have filed no less than eight pleadings seeking a new trial (CR Dkts. 125, 129, 130, 151, 156, 157, 158, 185).  In addition, and somewhat incredibly, considering that Defendants were represented by counsel who should have known that the motion was procedurally improper, Defendants filed a post trial "Renewed Motion to Suppress," purporting to re-litigate a pre-trial motion to suppress the results of an executed search warrant, notwithstanding that the district court conducted a Franks hearing. (CR Dkt. 149).  Moreover, again through counsel, Defendants filed a post trial "Motion to Compel the United States to Produce Impeachment and/or Exculpatory Evidence." (CR Dkt. 193).  ***The rulings on those motions which were appealed have been affirmed. (CR Dkts. 134, 206, 216).  The instant motion constitutes yet another attempt to re-litigate the merits of Defendant's underlying criminal conviction.***  Defendant's co-defendant filed a similar motion as well, albeit pro se.  See 8:10–CV–661–27TBM.

745 F. Supp. 2d at 1220 n.2 (emphasis added).  Moreover, the district court noted that "[b]ecause of the number of motions, their lack of merit [and] repetitive nature" that the court had enjoined the defendant from filing any motions without leave of court.  *Id.*  Ultimately, the district court denied the defendant's motion and threatened sanctions for any further violations.  *Id.* at 1220 n.2, 1237.  Given that BB&T is merely attempting to re-litigate the merits of orders that were previously appealed and affirmed, striking the Renewed Motion is entirely appropriate.

   **A. BB&T's Renewed Motion Relies on Arguments it Made, or Could Have Made, Previously.**

BB&T's sole justification for its renewed motion is that the decisions in *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118 (11th Cir. 2010), *Rent-A-Center West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010), and *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), were issued while its original appeal was pending.  However, as BB&T knows, but refuses to admit, its reliance upon these "new" decisions is merely a ruse because it had every opportunity to raise these issues in support of its initial motion to compel arbitration.

4

As the Eleventh Circuit explicitly found in its decision affirming the denial of BB&T's motion to compel arbitration, BB&T waived any ability to rely upon *Cappuccitti*. *Gordon*, 2011 WL 1111718, at *4-5. While BB&T argues that the Eleventh Circuit's holding only speaks to what arguments it may present **on appeal**, such an argument is frivolous in light of the well-established principle that a party may not seek reconsideration or otherwise seek relief from a decision based on an argument that it could have raised previously, but failed to do so. *E.g.*, *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002) ("A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments"); *Lamar Adver. of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 491 (M.D. Fla. 1999); Fed. R. Civ. P. 60(b) (grounds for relief from judgment must be based on **new** evidence).

In this case, BB&T's submissions were completely devoid of any mention of a potential claim under the Georgia Fair Business Practices Act ("FBPA") that would entitle Ms. Gordon to attorney's fees. *See generally* Motion to Compel [**DE # 7**]; BB&T's Reply [**DE # 13**]. Instead, BB&T's only argument that Ms. Gordon had a potential claim for attorneys' fees was based upon O.C.G.A. § 13-6-11, an argument that was rejected in *Dale v. Comcast Corp.*, 498 F.3d 1216, 1223 (11th Cir. 2007). In contrast, the plaintiff in *Cappuccitti* showed that a FBPA claim, which would have provided an automatic award of fees, was known to the plaintiff and counsel for the plaintiff even admitted to purposefully avoiding a FBPA claim. 623 F.3d at 1126. Indeed, as the Eleventh Circuit noted, BB&T was on notice about the possibility of raising this issue well before the Court decided *Cappuccitti*. *Gordon*, 2011 WL 1111718, at *4-5. BB&T waived this argument before this Court, and previously raised it, without success, before the Eleventh Circuit. There is no support for allowing such an argument to be made anew at this juncture.

Equally as frivolous is BB&T's suggestion that *Rent-A-Center* somehow justifies the filing of a renewed motion to compel arbitration. Long before *Rent-A-Center*, the Supreme Court and the Eleventh Circuit recognized that parties may choose to have an arbitrator decide questions of arbitrability. *E.g.*, *AT&T Techs., Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986); *Scott v. Prudential Sec., Inc.*, 141 F.3d 1007, 1011 (11th Cir. 1998). Thus, BB&T had every ability and opportunity to argue before this Court that, under existing law, the issue of arbitrability should be determined by an arbitrator. It chose not to do so. *See generally* Motion

5

to Compel [**DE # 7**]; BB&T's Reply [**DE # 13**]. Quite to the contrary, BB&T expressly asked the courts to rule on arbitrability. *E.g.*, Motion to Compel, p. 1 ("the court should compel arbitration"). The only time that BB&T raised such an issue previously was in its motion for reconsideration (**DE # 23**), which, of course, was untimely. *See, e.g.*, *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1267 (11th Cir. 1998). As it did with the FBPA argument from *Cappuccitti*, BB&T waived any argument that the arbitrator should decide arbitrability, including the issue of unconscionability.

Finally, BB&T's suggestion that the Supreme Court's decision in *Concepcion* justifies the filing of the Renewed Motion is frivolous for two reasons. First, BB&T's attempt to suggest in its Renewed Motion that the Eleventh Circuit did not have an opportunity to adequately consider the Supreme Court's decision in *Concepcion* is directly contradicted by the record. As BB&T is acutely aware, while its petition for rehearing was pending, BB&T filed no less than three notices of subsequent authority under Appellate Rule 28(j) regarding *Concepcion.* *See* April 27th Notice, April 29th Notice, May 4th Notice (collectively Exh. C hereto). Despite the Eleventh Circuit's awareness of *Concepcion*, not a single judge voted in favor of the petition for rehearing, including the same Eleventh Circuit judges who previously found it appropriate to remand the other appeals involving BB&T based on *Concepcion.*

BB&T also sought to stay the issuance of the mandate before the Eleventh Circuit by filing a motion to stay that relied almost exclusively on *Concepcion. See* Motion to Stay Mandate (Exh. D hereto). As noted above, the Court of Appeals denied the motion and the mandate was issued. *See* July 1, 2011 Order. Every attempt by the bank to undo the rulings in *Gordon* based on *Concepcion* has been roundly rebuffed.

The second reason why BB&T's argument regarding *Concepcion* is frivolous is because BB&T's attempt to raise the preemption issue at this juncture is untimely, given that the bank's prior submissions to this Court and to the Eleventh Circuit were devoid of any argument that the FAA preempts the application of Georgia law on unconscionability. *See generally* Motion to Compel [**DE # 7**]; BB&T's Reply [**DE # 13**]; Brief of Appellant (Exh. E hereto); Reply Brief of Appellant (Exh. F hereto). As such, BB&T waived the argument. *E.g.*, *Ferrill v. Parker Group, Inc.*, 168 F.3d 468, 475 (11th Cir. 1999); *Gordon*, 2011 WL 1111718, at \*4-5. Simply invoking the FAA in its briefing to this Court is not sufficient to preserve the preemption argument it now attempts to rely upon because, as the Supreme Court noted in *Concepcion*, the FAA explicitly

6

recognizes that arbitration clauses can be invalidated based on state law grounds such as unconscionability. 131 S. Ct. at 1746. BB&T had every opportunity to preserve a preemption argument before this Court in its original motion, but failed to do so.

Since BB&T failed to present the arguments raised in its renewed motion when it initially moved for arbitration, even though it had every opportunity to do so, and the Eleventh Circuit was fully informed of these same arguments, and found them immaterial, Ms. Gordon respectfully requests that her motion to strike BB&T's improper motion be granted.

**B.    Alternatively, BB&T's Renewed Motion Should Be Denied on the Merits.**

Although this Court should strike BB&T's improper and frivolous Renewed Motion, in the abundance of caution, Plaintiff provides a conditional response in opposition. As shown herein, and as shown in the responses in opposition to the renewed motions to compel arbitration filed by BB&T, Regions, SunTrust, and M&T, BB&T's arbitration clause is unenforceable. *E.g.*, *Powell-Perry* Response; *Barras* Response; *Given* Response; *Hough* Response; *Buffington* Response [**DE # 1684-88** in Case No. 1:09-md-2036-JLK].[2]

**1.    Facts Pertaining to Ms. Gordon.**

At all times relevant to the filing of this action, Ms. Gordon had a checking account with BB&T and reasonably relied on BB&T to service her account and to safeguard her funds. *See* Complaint, ¶¶ 6-7; Decl. of F. Gordon, ¶ 2 (verifying allegations of Complaint) (Exh. G hereto). Instead, BB&T abused the discretion that it is afforded under its Bank Services Agreement ("BSA") to assess charges in an unfair and improper manner. *See* Complaint, ¶¶ 7-8. BB&T engages in this practice to increase the total amount of overdraft fees. *Id.* at ¶ 12.

BB&T admits Ms. Gordon was not provided a copy of the BSA at the time she opened her account in June of 2008. *See* Decl. of S. Byerly, ¶¶ 4-5 (acknowledging that Ms. Gordon opened her account without being provided with a copy of the agreement) [**DE # 6**]; Decl. of F. Gordon, ¶ 5. After opening her account online, Ms. Gordon went into the bank to provide BB&T with a signature to keep on file and to add her two boys to the account. *See* Decl. of F. Gordon, ¶ 6. While the signature card states in fine print that the signatory acknowledges receipt of the BSA, Ms. Gordon was not provided with a copy of the agreement at that time either. *Id.* at ¶ 9; *also* Signature Card (Exh. A to Decl. of S. Byerly) [**DE # 6-2**]. At no point during the

---

[2] For the Court's convenience, Plaintiff often incorporates by reference these briefs and materials.

opening of her account and her interactions with bank employees thereafter, did BB&T even inform Ms. Gordon of the arbitration clause. *See* Decl. of F. Gordon, ¶¶ 5-10.

The BSA is a form contract that customers like Ms. Gordon are not able to negotiate. *Id.* at ¶¶ 10-11. The BSA was never presented to Ms. Gordon, but even if the bank had provided it, it is a take-it-or-leave-it proposition. *Id.* at ¶ 11. Ms. Gordon does not have the financial ability to pay for her own counsel to handle an arbitration, much less BB&T's attorney's fees and costs, which the BSA repeatedly requires Ms. Gordon to pay. *Id.* at ¶¶ 13-14; *also* BSA, ¶¶ 21, 28.

### 2.   BB&T's Bank Services Agreement

BB&T produced two forms of the BSA for Ms. Gordon. The first spans from June 2008 to March 1, 2009. *See* Decl. of S. Byerly, ¶ 6. The second spans March 1, 2009 to the date of the declaration, July 6, 2009. *Id.* The arbitration provisions appear in Section B of each BSA. Since they are virtually identical, Plaintiff refers to them as simply "the arbitration clause."

The arbitration clause contained within the BSA seeks to prevent consumers from utilizing the class action mechanism in any forum and from bringing claims before a jury. The BSA states that "[t]he arbitration, including the selection of the arbitrator, shall be administered by the American Arbitration Association ('AAA')." *See* BSA at 1, ¶ 6. On the issue of fees and costs, the arbitration clause states that "[a]ll fees and costs are allocated pursuant to the rules of the AAA." *Id.* at 2. The incorporated AAA rules state that legal fees and costs will be awarded if the contract so provides. *See* AAA Rule R-43(d)(ii). The BSA provides that BB&T will be awarded its legal fees and costs in any arbitration:

> You agree to be liable to the Bank for any loss, costs or expenses, including, without limitation, reasonable attorneys' fees, the costs of litigation, and the costs to prepare or respond to subpoenas, depositions, child support enforcement matters, or other discovery that the Bank incurs as a result of any dispute involving your account, and you authorize the Bank to deduct any such loss, costs or expenses from your account without prior notice to you.

BSA at 14, ¶ 28 (emphasis added); *see also* May 10th Order, p. 8 [**DE # 447** in Case No. 1:09-md-2036-JLK]; BSA at 10-11, ¶¶ 13, 16; 32, ¶ 21 (authorizing bank to collect legal fees). The BSA also states:

> If the Bank incurs any expense, including, without limitation, administrative costs, reasonable attorneys' fees or any costs of litigation in responding to any legal proceeding relating to you or your account that is not otherwise reimbursed, the Bank may charge such expenses to your account without prior notice to you.

It also includes cost-shifting provisions that would place the cost of an appeal on the losing consumer: "Unless applicable law provides otherwise, the appealing party will pay the cost of appeal, regardless of its outcome." *Id.* (emphasis added). Ms. Gordon cannot afford the costs or the risks of arbitration. *See* Decl. of F. Gordon, ¶¶ 13-16.

The arbitration clause purports to include a small claims court carve-out but takes any appeal out of the courts and places it back in arbitration. *See* BSA at 1, ¶ 5 ("Any appeal from a decision of a small claims court shall be subject to this arbitration provision"). Appeals from Georgia small claims courts are by right and subject to *de novo* review. *E.g.*, O.C.G.A. §§ 5-3-20; 5-3-29. Thus, any recovery outside of arbitration is illusory and at the discretion of BB&T.

### 3. *Concepcion* Does Not Require a Different Result.

In support of its Renewed Motion, BB&T argues that any argument by Ms. Gordon that BB&T's arbitration clause is unconscionable under state law is preempted by the FAA. *See* Renewed Motion, pp. 8-12. The argument that the FAA trumps state rules against arbitration has been made repeatedly for decades. *E.g.*, *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v. Thomas*, 482 U.S. 483, 490-91 (1987). The *Concepcion* case is but one illustration of this argument. In *Concepcion*, the Supreme Court found that the FAA preempted California's *per se* rule disfavoring arbitration. BB&T chose not to pursue this argument when it initially moved for arbitration. *See generally* Motion to Compel [**DE # 7**]; BB&T's Reply [**DE # 13**]. Thus, because this argument was waived by BB&T and the Eleventh Circuit had every opportunity to apply the decision, *Concepcion* offers the bank no refuge in this case.

Furthermore, as shown to this Court previously in the response in opposition to the renewed arbitration motions of Regions Bank and SunTrust (**DE # 1687, 1688**, respectively), Georgia law has no *per se* rule against class action waivers. Thus, *Concepcion* has limited applicability where Georgia law applies. The arguments advanced in the aforementioned responses apply equally here and, for the sake of brevity, Ms. Gordon incorporates by reference the arguments raised therein. *See Hough* Response, pp. 3-6 (**DE # 1687** in Case No. 1:09-md-2036-JLK); *Buffington* Response, pp. 4-7 (**DE # 1688** in Case No. 1:09-md-2036-JLK). As demonstrated therein, Ms. Gordon is not precluded from showing that BB&T's arbitration clause in unconscionable under Georgia law.

### 4. This Court, Not an Arbitrator, Should Decide Arbitrability.

Even though BB&T attempted to belatedly raise this issue during its motion for reconsideration [**DE # 23-25**], and the argument was previously rejected by this Court and the Eleventh Circuit, BB&T attempts to raise this issue once again in its Renewed Motion by arguing that the Supreme Court's decision in *Rent-A-Center* is intervening authority. *See* Renewed Motion, pp. 12-13. Unfortunately for BB&T, as noted above, *Rent-A-Center* did not create any new ability on the part of the bank to argue that the question of arbitrability can be delegated to the arbitrator. That principle has been well established for decades. *E.g.*, *AT&T Techs.*, 475 U.S. at 649; *Scott*, 141 F.3d at 1011. Thus, BB&T's attempt to raise this issue now is just as untimely as it was during its motion for reconsideration.

Moreover, on the substance of the matter, as shown in the responses in opposition to the renewed motions to compel arbitration filed in the *Barras* and *Powell-Perry* cases against BB&T, the bank's attempt to suggest that its arbitration clause delegates the question of arbitrability to the arbitrator fails as a matter of law. *See Powell-Perry* Response, pp. 17-20 (**DE # 1684** in Case No. 1:09-md-2036-JLK); *Barras* Response, pp. 14-19 (**DE # 1685** in Case No. 1:09-md-2036-JLK). Ms. Gordon hereby incorporates these arguments by reference as they have equal application here.

### 5. BB&T's Arbitration Clause Is Unconscionable Under Georgia law.

Under Georgia law, contracts can be procedurally and substantively unconscionable. *Dale*, 498 F.3d at 1219. "'Procedural unconscionability addresses the process of making [a] contract, while substantive unconscionability looks to the contractual terms themselves.'" *Id.* (quotation omitted). Unconscionability is a flexible doctrine to allow courts to consider numerous factors and is gleaned from a variety of circumstances depending on the case. *See NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 771-72 (Ga. 1996); *Dale*, 498 F.3d at 1224 ("We thus conclude that the enforceability of a particular class action waiver in an arbitration agreement must be determined on a case-by-case basis, considering the totality of the facts and circumstances"). Applying the facts and circumstances regarding Ms. Gordon's account to the legal arguments advanced under Georgia law in the responses to the renewed arbitration motions in *Buffington* and *Hough*, it is clear that BB&T's arbitration clause is unconscionable under Georgia law. *See Hough* Response, pp. 10-16 (**DE # 1687** in Case No. 1:09-md-2036-JLK);

*Buffington* Response, pp. 7-17 (**DE # 1688** in Case No. 1:09-md-2036-JLK). Ms. Gordon incorporates these arguments by reference as if included herein.

While Ms. Gordon has incorporated by reference previously submitted briefing in response to BB&T's arguments, further discussion of BB&T's attempt to rely upon *Cappuccitti* as intervening authority is warranted under the circumstances. As noted above, BB&T's waiver of any ability to rely upon *Concepcion* was clearly established by the Eleventh Circuit. *E.g.*, *Gordon*, 2011 WL 1111718, at *4-5 (finding waiver because BB&T was on notice about the possibility of raising a claim for fees under the FBPA well before the Court decided *Cappuccitti*). There is no support for BB&T's suggestion that this finding of waiver does not apply here. That being said, *Cappuccitti* does not apply here for several other reasons. First, the defendant in *Cappuccitti* showed that the plaintiff knew that he had a FBPA claim, and that counsel for the plaintiff even admitted to purposefully not pleading a FBPA claim. 623 F.3d at 1126. This very specific factual finding has not occurred in this case. Second, there is no evidence that Ms. Gordon complied with the 30-day notice procedures required by O.C.G.A. § 10-1-399(b) to perfect a FBPA claim. At the moment Ms. Gordon contracted with BB&T, which is the relevant moment of inquiry according to the panel in *Cappuccitti*, Ms. Gordon had not provided the required 30-day notice. Because the failure to provide the 30-day notice is mandatory – *e.g.*, *Rewis v. Browning*, 265 S.E.2d 316, 319 (Ga. Ct. App. 1980) – it is clear that Ms. Gordon did not have a claim entitling them to legal fees at the time the contract was made.

Furthermore, *Cappuccitti* should not be applied because it violates the Eleventh Circuit's prior precedent rule. The conflict between *Cappuccitti* and *Dale* is readily apparent from the face of the two opinions. Using the *Cappuccitti* panel's logic with respect to evaluating un-pled causes of action, would have required courts to find that the plaintiffs in *Dale* had a FBPA claim and therefore had an automatic entitlement to attorney's fees if they prevailed. *Cappuccitti*, 623 F.3d at 1126. This undeniable conflict between the *Dale* and *Cappuccitti* requires a finding by this Court that *Cappuccitti* cannot control based on the prior precedent rule. *See, e.g.*, *Morrison v. Amway Corp.*, 323 F.3d 920, 929 (11th Cir. 2003); *United States v. Smith*, 201 F.3d 1317, 1322 (11th Cir. 2000) (reiterating "it is the firmly established rule of this Circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law unless and until that holding is overruled en banc, or by the Supreme Court"). BB&T's reliance upon *Cappuccitti* is misplaced and does not provide a basis to grant the Renewed Motion.

### 6. BB&T's Arbitration Clause Precludes Ms. Gordon from Vindicating Her Rights.

Just as was the case with BB&T's arbitration clause in the *Barras* and *Powell-Perry* cases, BB&T's arbitration clause is unenforceable here because it deprives Ms. Gordon of the ability to vindicate her rights. *See Powell-Perry* Response, pp. 9-12 (**DE # 1684** in Case No. 1:09-md-2036-JLK); *Barras* Response, pp. 7-9 (**DE # 1685** in Case No. 1:09-md-2036-JLK); *also Hough* Response, pp. 16-19 (**DE # 1687** in Case No. 1:09-md-2036-JLK); *Buffington* Response, pp. 17-19 (**DE # 1688** in Case No. 1:09-md-2036-JLK). Ms. Gordon has no legal training that would allow her to pursue a claim on her own in arbitration and is certainly not able to mine BB&T's banking data to determine the amount she has lost as a result of the Bank's conduct in this matter. *See* Decl. of F. Gordon, ¶ 15. Moreover, Ms. Gordon does not have the financial ability to pay a banking expert to pursue such claims on an individual basis. *Id.*

As shown through the declarations previously submitted by expert Arthur Olsen, it is inconceivable that Ms. Gordon, or any other individual consumer proceeding in arbitration could determine the extent of the bank's wrongdoing without the help of an expert. *E.g.*, Decl. of A. Olsen, ¶¶ 17-32 (Exh. G to **DE # 1688**). Therefore, as in *Barras* and *Powell-Perry*, BB&T's arbitration clause in unenforceable because it prevents consumers from vindicating their rights.

### 7. BB&T's Arbitration Clause Is Also Unenforceable Because the AAA Is Unavailable to Arbitrate This Dispute.

Even if the arbitration clause at issue here were otherwise valid, this Court cannot enforce it because the sole and exclusive arbitral forum selected by BB&T, the AAA, is unavailable to Ms. Gordon and cannot ensure her a fair hearing or neutral arbitrator. As evidence of this fact, Ms. Gordon incorporates by reference the arguments made on this issue in the recently filed responses in the *Barras* and *Powell-Perry* cases. *See Powell-Perry* Response, pp. 13-15 (**DE # 1684** in Case No. 1:09-md-2036-JLK); *Barras* Response, pp. 19-20 (**DE # 1685** in Case No. 1:09-md-2036-JLK).[3] These facts present an external constraint that precludes the enforcement of BB&T's arbitration clause.

### IV. Conclusion

Based upon the foregoing, Plaintiff respectfully requests that this Court deny BB&T's improper Renewed Motion.

---

[3] *See also* **DE # 1687** at 19-20 (Part V, D).

## **LOCAL RULE 7.1 CERTIFICATE**

Undersigned counsel certifies that they made a good faith effort to confer with counsel for BB&T regarding matters addressed in this motion, but that the parties have been unable to resolve their differences. Specifically, on Friday, July 15, 2011, counsel for Plaintiff sent counsel for Defendant a letter regarding Plaintiff's intent to move to strike Defendant's Renewed Motion. Counsel for Defendant responded in writing on Tuesday, July 19, 2011 that BB&T would oppose this motion.

Dated: July 22, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 3855830
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

| | |
|---|---|
| /s/ E. Adam Webb<br>E. Adam Webb, Esquire<br>Georgia Bar No. 743910<br>Adam@WebbLLC.com<br>Matthew C. Klase, Esquire<br>Georgia Bar No. 141903<br>Matt@WebbLLC.com<br>G. Franklin Lemond, Jr., Esquire<br>Georgia Bar No. 141315<br>FLemond@WebbLLC.com<br>WEBB, KLASE & LEMOND, L.L.C.<br>1900 The Exchange, S.E.<br>Suite 480<br>Atlanta, GA 30339<br>Tel: 770-444-9325<br>Fax: 770-444-0271 | /s/ Michael W. Sobol<br>Michael W. Sobol, Esquire<br>California Bar No. 194857<br>msobol@lchb.com<br>Roger N. Heller, Esquire<br>California Bar No. 215348<br>rheller@lchb.com<br>Jordan Elias, Esquire<br>California Bar No. 228731<br>jelias@lchb.com<br>LIEFF CABRASER HEIMANN &<br>  BERNSTEIN L.L.P.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111<br>Tel: 415-956-1000<br>Fax: 415-956-1008 |

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Faith Gordon v. Branch Banking & Trust Co.*
No. 1:09-CV-23067-JLK

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596