UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

FIRST TRANCHE BANKS

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-03250-PJH

## ORDER GRANTING CLASS CERTIFICATION

**THIS CAUSE** is before the Court upon the Plaintiffs' Motion for Class Certification and Incorporated Memorandum of Law (DE #1387) ("Motion").[1]   The Court has carefully considered the Motion, response, reply, and the documents attached to them, as well as Plaintiffs' voluminous evidentiary submission and the oral argument of counsel.  As announced at the hearing on this matter on July 13, 2011, the Court grants the Motion, for the reasons explained more fully below.

### I.   Factual Allegations

Plaintiffs allege that, through the use of specially designed software programs, Union Bank, N.A. ("Union") engaged in a systematic scheme to extract the greatest possible number of overdraft fees from Plaintiffs and similarly situated Union consumers across the country.  Union

---

[1] Defendant filed its Response (DE # 1601) on June 9, 2011, to which Plaintiffs Replied on July 5, 2011.

allegedly collected millions of dollars in excessive overdraft fees as a result of this systematic scheme, much of it, according to Plaintiffs, from Union's most vulnerable customers. To carry out this scheme, Plaintiffs allege that Union manipulated debit card transactions by, among other things, employing a bookkeeping trick to re-sequence the transactions from highest-to-lowest dollar amount at the time of posting. Plaintiffs allege that these account manipulations, which Union deponents testified were applied in the same manner to all class members as a result of Union's standardized computer software, caused funds in customer accounts to be depleted more rapidly, resulting in more overdrafts and, consequently, more overdraft fees. Plaintiffs further allege that, in many instances, overdraft fees were levied at times when, but for Union's manipulation, there would have been sufficient funds in the consumers' accounts. Plaintiffs allege that Union did not fairly disclose its manipulations, took active steps to keep them secret, and engaged in these manipulations despite recognizing that it harmed its own customers. Union disputes that it has manipulated account transactions and that it has committed any violations of law.

Plaintiffs move for certification of their claims for breach of contract and the breach of the duty of good faith and fair dealing, unjust enrichment, unconscionability, and violation of the California Unfair Competition Law.[2]

## II.    Legal Standard for Class Certification

Questions concerning class certification are left to the sound discretion of the district court, and the Court must undertake a rigorous analysis to insure that the Rule 23 prerequisites are met. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004). In making the decision,

---

[2] Plaintiffs do not seek to certify for class treatment their claims for conversion at this time. Plaintiffs also sought to certify their claim for violation of the federal Racketeer Influenced and

the Court does not determine whether plaintiffs will ultimately prevail on the merits, but it may

consider the factual record in deciding whether the requirements of Rule 23 are satisfied. *Valley*

*Drug. Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003).

Courts "formulate some prediction as to how specific issues will play out in order to

determine whether common or individual issues predominate in a given case." *Waste Mgmt.*

*Holdings v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000). In other words, the Court undertakes

"an analysis of the issues and the nature of required proof at trial to determine whether the

matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or *are*

*susceptible of common proof* equally applicable to all class members." *In re Cardizem CD*

*Antitrust Litig.*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (emphasis added) (quoting *Little Caesar*

*Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997)).

### A.    Rule 23(a)

As to Rule 23(a), there are four prerequisites for class certification: numerosity,

commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23 (a); *Amchem*

*Prods. Inc. v. Windsor,* 521 U.S. 591, 613 (1997); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278

(11th Cir. 2000). However, "Rule 23 does not set forth a mere pleading standard. A party

seeking class certification must affirmatively demonstrate his compliance with the Rule – that is,

he must be prepared to prove that there are in fact sufficiently numerous parties, common

questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2551

(2010); *see also London v. Wal-Mart Stores,* 340 F.3d 1246, 1253 (11th Cir. 2003) (noting that

party moving for class certification bears the burden of establishing each element of Rule 23(a)).

---

Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). However, the Court dismissed that
cause of action by order dated July 13, 2011, and that part of Plaintiffs' Motion is moot.

A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden of a preponderance of the evidence. *Gen. Tel. Co. of the SW. v. Falcon,* 457 U.S. 147, 158–61 (1982). *See also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202-04 (2d Cir. 2008) (requiring plaintiffs to meet burden by a preponderance of the evidence). If the party seeking class certification fails to satisfy any one of the Rule 23 requirements, then the case may not continue as a class action. *Jones v. Roy,* 202 F.R.D. 658, 662 (M.D. Ala. 2001).

In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true. *Moreno Espinosa v. J & J AG Prods., Inc.*, 247 F.R.D. 686 (S.D. Fla. 2007). However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Vegas v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264 (11th Cir. 2009). In making that assessment, the Court may not consider the plaintiffs' likelihood of success on the merits, although some consideration of the merits may often be necessary. *Compare Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974); *and Kirkpatrick v. J.C. Bradford & Co.*, 87 F.2d 718, 722-23 (11th Cir. 1987); *with* Dukes, 131 S. Ct. at 2551 n.6 (noting that "[f]requently a 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim"); *and Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) (holding that the *Eisen* doctrine should not be "talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements").

### (i)      Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Impracticable does not mean impossible, only that it would be difficult or

inconvenient to join all members of the class. *Hammett v. Am. Bankers Ins. Co. of Fla.*, 203 F.R.D. 690, 694 (S.D. Fla. 2001). Certainly, such factors as size of the class and geographic location of the would-be class members are relevant to any consideration of practicality. *In re Recoton Corp. Secs. Litig.*, 248 F.R.D. 606 616, 617 (M.D. Fla. 2006). However, the focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697, 699 (M.D. Fla. 2000). In general terms, the Eleventh Circuit has found that "less than twenty-one [prospective class members] is inadequate, [while] more than forty [is] adequate." *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986)). Thus, the "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.,* 231 F.R.D. 632, 665 (S.D.Ala. 2005) (citing *Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 570 (6th Cir.2004)).

As this Court is required to do even where a requirement for class certification is not satisfied, it has independently considered the prospective numerosity of the putative class members. *See Valley Drug Co.*, 350 F.3d at 1188 (noting court's independent obligation to examine elements of Rule 23); *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n.37 (11th Cir. 2003) (same). The proposed number of class members on these facts easily exceeds the minimum threshold recognized by the Eleventh Circuit. More importantly, joinder

of the proposed class members would be impractical, given not just the number of class members but also their geographic distribution.

Plaintiffs' proposed class consists of

> All Union Bank customers in the United States who had one or more consumer accounts and who, from applicable statutes of limitation through August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of Union Bank's practice of sequencing debit card transactions from highest to lowest.[3]

Counsel for Union noted that the bank has thousands of customers who incurred overdraft fees. Tr. at 47.[4] Nonetheless, Union insists that the numerosity requirement is not met in this case, and separately that certification of the class is inappropriate, because the class definition renders the class unascertainable. Union argues that the membership of the proposed class cannot be determined without a trial on the merits because of the way that the class definition is written, and that no class member would be able to know that they were in fact a member of the class.

Plaintiffs propose to have their expert, Mr. Olsen, mine Union's data to determine who are the members of the class. This method of determining class membership has been accepted by other courts. *See Sadler v. Midland Credit Mgmt.*, 2009 U.S. Dist. LEXIS 26771, at *4-5 (N.D. Ill. Mar. 31, 2009) (automated query of defendants' database would yield "objective criteria" necessary to ascertain the class); *Stern v. AT&T Mobility Corp.*, 2008 U.S. Dist. LEXIS 110305, at *12-13 (C.D. Cal. Aug. 22, 2008) (defendants' business records provided sufficient information to identify individuals who purchased cellular telephone service and were enrolled in either one of the challenged services without ever having requested the service); *In re Diet Drugs Prods. Liab. Litig.*, 1999 U.S. Dist. LEXIS 13228, at *34-35 (E.D. Pa. Aug. 26, 1999) (finding

---

[3] Plaintiffs also seek the certification of subclasses for specific claims as set forth in Plaintiffs' Proposed Trial Plan for Trial of All Class Claims (the "Trial Plan"). These subclasses are discussed below.

[4] References to the transcript of the hearing on July 13, 2011, are denoted as "Tr. at __.'

class definition was adequate because there were reliable means to determine who had actually taken the drug where fact sheets, prescription records, and records of medical treatment were available to verify consumption); *see also Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978).

Mr. Olsen can identify which Union customers incurred additional overdraft fees as a result of high-to-low re-sequencing of debit transactions by comparing that re-sequencing to each of the alternative posting scenarios that he discussed in his declaration. While the finder of fact will ultimately have to decide which of these scenarios is most consistent with Union's duty of good faith and fair dealing, Mr. Olsen will be able, at the outset, to identify all of Union's customers who were harmed as compared to each of these alternative scenarios. The exact damages due each member of the class will then be calculated by Mr. Olsen once the fact finder has chosen the appropriate posting methodology. *Klay*, 382 F.3d at 1259-60 (footnotes omitted) ("[W]here damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification."); 7A Wright, Miller & Kane, *Federal Practice & Procedure: Civil 3d* § 1760 (3d ed. 2005) ("If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist."); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1133 n.16 (11th Cir. 2004) (noting "fact that class definitions may undergo modification, possibly several times, during the course of a class action."). It is important to note that Union has offered neither evidence nor expert testimony to in any way rebut Mr. Olsen's findings and conclusions. Nor did Union dispute Mr. Olsen's ability to calculate damages on an account-by-account basis using the bank's own computerized

7

records, a method upon which Mr. Olsen previously relied, with court approval, in *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 U.S. Dist. LEXIS 70124, at *48-49 (N.D. Cal. Sept. 11, 2008).

Although the exact number of class members is not presently known, the proposed class appears to number in the tens- or hundreds-of-thousands. Because of that great number, and the fact that the members of the class are geographically dispersed, joinder is impractical. *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied by class of 31 members who were geographically dispersed across Florida, Georgia and Alabama). Accordingly, the Court finds that the numerosity requirement of Rule 23(a) is satisfied, that the class definition is quite clear, and that the class is readily ascertainable.

### (ii)    Commonality[5]

The next factor under Rule 23(a) is commonality. This prerequisite requires that there be at least one issue common to all members of the class, and that any class certification be predicated on "questions of law or fact common to the class." Notably, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." *Walco Invs., Inc. v. Thenen,* 168 F.R.D. 315, 325 (S.D.Fla.1996). However, "a class action must involve issues that are susceptible to class-wide proof." *Cooper v. Southern Co.,* 390 F.3d 695, 713 (11th Cir. 2004), *overruled in part on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457-58 (2006). The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members."

---

[5]  "The typicality and commonality requirements are distinct but interrelated, as the Supreme Court made clear: 'The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir.

*In re Terazosin Hydrochloride,* 220 F.R.D. 672, 687 (S.D. Fla. 2004); *Agan v. Katzman & Korr,*

*P.A.,* 222 F.R.D. 692, 697 (S.D. Fla. 2004); *In re AmeriFirst Sec. Litig.,* 139 F.R.D. 423, 428

(S.D. Fla.1991).  It is particularly noteworthy that, where a "common scheme of deceptive

conduct" has been alleged, the commonality requirement should be satisfied.  *In re Recoton*, 248

F.R.D. at 618.

The common issues of law and fact in this case include whether Union:

- Manipulated and re-ordered transactions in order to increase the number of overdraft fees imposed;

- Disclosed and/or refused to allow its class members to opt out of the overdraft protection program and shadow line of credit;

- Omitted to alerted class members that a debit card transaction would trigger an overdraft fee if processed and provided them with an opportunity to cancel the transaction;

- Imposed overdraft fees when, but for re-sequencing, there would be sufficient funds in the account;

- Delayed posting transactions so that class members were charged overdraft fees even when sufficient funds were in the account to cover the transactions; and

- Breached its covenant of good faith and fair dealing with Plaintiffs and the class; engaged in practices that were substantively and procedurally unconscionable; was unjustly enriched at the expense of Plaintiffs and the class; and violated the California Unfair Competition Law.

Counsel for Union conceded at oral argument that there is at least one common issue here.  Tr. at

47.[6]  Therefore, the requirement of commonality under Rule 23(a)(2) is satisfied.

### (iii)       Typicality

The third factor under Rule 23(a)(3), typicality, requires that "the claims or defenses of

the representative parties [be] typical of the claims or defenses of the class."  Fed.R.Civ.P.

---

2004) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).

[6] References to the transcript of the hearing on July 13, 2011, are denoted as "Tr. at __."

23(a)(3); *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). Like the commonality requirement, the typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. *Brown v. SCI Funeral Servs. of Fla., Inc.*, 211 F.R.D. 602, 605 (S.D. Fla. 2003). Moreover, if "the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims." *Davis v. S. Bell Tel. & Tel. Co.*, No. 89-2839, 1993 WL 593999, *4 (S.D. Fla. Dec. 23, 1993). To defeat typicality, a defendant must show that conflict between the named representatives and the class members is "such that the interests of the class are placed in significant jeopardy." *Walco*, 168 F.R.D. at 326.

The Court finds that Plaintiffs' claims arise out of the same course of conduct and are based on the same legal theories as those of the absent class members. Pursuant to a standardized, automated process, Union posted all debit transactions that settled on a given day late in the evening or early the following morning before business hours. The order in which the bank posted debit transactions to an account directly corresponded to the order in which the funds were deducted from the account. Throughout the Class Period, as to each Plaintiff and every member of the proposed class, it was Union's uniform practice to post all POS, ATM, and teller debit transactions in a single "batch," in the order of highest-to-lowest dollar amount. That is, all Plaintiffs and members of the proposed class, whose accounts were governed by common and materially uniform agreements, were subjected to Union's practice of re-sequencing debit card transactions from high-to-low, and Plaintiffs allege that they and all members of the proposed class were assessed additional overdraft fees as a result. Plaintiffs propose discrete multi-state subclasses for some of the state law claims to ensure that the proposed class

10

representatives' claims are materially identical to all other class members that they seek to represent. Therefore, the Court finds that the typicality exists within the meaning of Rule 23(a)(3).

### (iv) Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The two questions considered when determining the adequacy of representation are:

> (1) Do either the named plaintiffs or their counsel have any conflicts of interest with other class members; and
>
> (2) Will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

*Kirkpatrick*, 827 F.2d at 726. While courts generally hold that a class representative have "working knowledge" of the case, *see, e.g., Buford v. H & R Block, Inc.*, 168 F.R.D. 340 (S.D. Ga. 1996), class certification will not be prevented solely on that basis unless the representatives "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick*, 827 F.2d at 728. Thus, the threshold of knowledge required to qualify a class representative is low.

The Court finds that neither the Plaintiffs nor their counsel have any interests that are antagonistic to those of the absent class members. The central issues in this case – the existence, unlawfulness and effect of Union's scheme to manipulate debit card transactions and increase the number of overdraft fees assessed – are common to the claims of Plaintiffs and the other members of the class. Each representative Plaintiff, like each absent class member, has a strong interest in proving Union's scheme, establishing its unlawfulness, demonstrating the impact of the illegal conduct and obtaining redress. Plaintiffs thus "share the true interests of the class." *Texas Air*, 119 F.R.D. at 459; *see also Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997) (the

"common goal of each member of the class" is to remedy the unlawful conduct, and "[i]f the Plaintiffs succeed, the benefits will inure to all class members.").

The law firms seeking to represent the class here include qualified and experienced lawyers. The Court has reviewed the firm resumes setting forth their experience and expertise in class actions. In addition, the Court is familiar with many of the lawyers seeking to represent the class, as they have appeared before the Court a number of times. The Court is satisfied that the lead Plaintiffs and the firms seeking appointment as class counsel will properly and adequately prosecute this case. The Court therefore appoints Plaintiffs as representatives of the class, and appoints the following firms as class counsel pursuant to Fed. R. Civ. P. 23(g): Alters Law Firm, P.A.; Podhurst Orseck, P.A.; Grossman Roth, P.A.; Baron & Budd, P.C.; Golomb & Honik, P.C.; Lieff Cabraser Heimann & Bernstein LLP; Trief & Olk; Webb, Klase & Lemond, L.L.C.; and Bonnett Fairbourn Friedman & Balint.

### B.      Rule 23(b) Certification

In addition to meeting the requirements under Rule 23(a), Plaintiffs must establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3). Thereunder, a plaintiff bears the burden of demonstrating two requirements are met: 1) predominance of the questions of law or fact common to the members of the class over any questions affecting only individual members; and 2) superiority of class action for the fair and efficient adjudication of the controversy. *See Amchem*, 521 U.S. at 625. Rule 23(b)(3) further specifies four areas of inquiry relevant to both predominance and superiority: i) class members' interest in individually controlling the prosecution or defense of separate actions; ii) the extent and nature of any litigation concerning

the controversy already begun by or against class members; iii) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and iv) the likely difficulties in managing a class action. Fed.R.Civ.P. 23(b)(3)(a)-(d).

### (i)    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *AmChem,* 521 U.S. at 623. The question of predominance presumes the overriding existence of common issues; thus, a mere showing of commonality as in Rule 23(a) is not enough. *Hanlon,* 150 F.3d at 1022; *see also AmChem,* 521 U.S. at 624-25 (predominance criterion is "far more demanding" than Rule 23(a)'s commonality requirement). Predominance focuses on the relationship between the common and individual issues. *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989); *Hanlon,* 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Here, "irrespective of the individual issues which may arise, the focus of the litigation" concerns "the alleged common course" of unfair conduct embodied in Union Bank's alleged scheme to maximize overdraft fees through the hidden reordering of transactions at account posting. *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 86 (M.D. Fla. 1977). Any analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner. A scheme "perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the

damages suffered by individuals within the class." Advisory Committee Notes to Rule 23(b)(3) (1966 Amendments). Indeed, predominance is "a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The Court finds that predominance is satisfied in this case. Plaintiffs allege that Union's course of conduct commonly, and adversely, affected the entire class, and have submitted evidence supporting that allegation. The class members are similarly situated with regard to the readily determined, allegedly excess fees they incurred as a result of a standardized process. The class is unified by both common questions and a common interest. The evidence necessary to establish Plaintiffs' claims is common to both Plaintiffs and all members of the class; they all seek to prove that Union's high-to-low re-sequencing practice was wrongful. That evidentiary presentation involves the same evidence of (i) Union's form contracts, with similar terms, applicable to all Plaintiffs and class members; (ii) Union's systematic re-sequencing of debt transactions from high-to-low for all Plaintiffs and class members through its automated software programs; and (iii) the "Matrix" line of credit that Union secretly established for all Plaintiffs and class members in order to charge them overdraft fees. The evidence to be presented by the Plaintiffs has a direct impact on every class member's effort to establish liability and on every class member's entitlement to relief. *Klay*, 382 F.3d at 1255. Moreover, where corporate policies "constitute the very heart of the plaintiffs' . . . claims," as they do here, common issues will predominate because those policies "would necessarily have to be re-proven by every plaintiff." *Klay*, 382 F.3d at 1257; *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005); *In re Tyco Int'l, Ltd. Multidistrict Litig.*,

236 F.R.D. 62, 70 (D.N.H. 2006) (varying degrees of knowledge among class members do not present an obstacle to class certification where other common issues unite the class).

The Court further notes that the problems plaguing the proposed classes in *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010), and *Klay* are not present here. In *Klay*, the court ultimately found certification of the breach of contract claims inappropriate given the individualized issues of fact they entailed, even though questions of contract law were common to the whole class. *Id.* at 1261. There were many different defendants with many different contracts with many different provider groups. Moreover, because the defendants breached the contracts through a variety of means and differing computer algorithms that were not subject to generalized proof, each physician would have to prove a variety of individual circumstances leading to the breach. *Id.* at 1263-64. Similar problems precluded certification in *Sacred Heart*, where there were substantial variations in the terms of over 300 hospital contracts that were individually negotiated, leading the court to find that "the diversity of the material terms is overwhelming." *Sacred Heart*, 601 F.3d at 1171-72. In contrast, the agreements at issue here are uniform form contracts offered on a take-it-or-leave it basis and were not the product of any individual negotiation. *See id.* at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). Nor do Plaintiffs have to prove a variety of individual circumstances supporting the breach, as Union's standard re-sequencing policy resulted in uniform conduct directed at all members of the class.

In addition, the court's certification in *Gutierrez* is instructive. Wells Fargo, like Union, also contended that individual issues would predominate, but the court in that case found the "challenged practice is a standardized one applied on a routine basis to all customers." 2008

U.S. Dist. LEXIS 70124, at *48. Thus, while "there will be some individual issues . . . these individual variations will not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors." *Id.* Here, as in *Gutierrez*, Plaintiffs allege that Union exercised its discretion in bad faith by re-sequencing debit card transactions posted to their checking accounts from highest to lowest in order to maximize overdraft penalties against customers. Moreover, as in *Gutierrez*, Union's "challenged practice is a standardized one applied on a routine basis to all customers." *Id.* at *48. Any individual issues will "not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors." *Id.*

As discussed above, class members are readily ascertainable through objective criteria: Union's own records of individuals who were assessed overdraft fees. Plaintiffs' expert will formulate calculations that can identify members of the class by running queries in Union's computer records. Such calculations will be merely ministerial in nature, and will not be plagued by resolution of individual class member issues. Damages will be calculated using the same Union records used to identify the class members. These facts make this case manageable as a class action.

Nor do Union's affirmative defenses defeat certification of the class. Union claims that it will advance a number of affirmative defenses, but it purports to meet its burden of proof as to those defenses by introducing common evidence, including "common evidence showing that it took affirmative steps to explain the change in its posting practices in April of 2004" (Trial Plan Opp. at 7-8); "common evidence" purportedly showing that it disclosed its "hold" practice but that the practice did not "delay" posting (although Union does not cite to any record evidence supporting the assertion) (*id.* at 10); and "much . . . evidence [that] is common" to allegedly

show that it carefully and studiously implemented the re-sequencing practice for reasons other than increasing revenue (*id.* at 11-12). Union's use of common evidence supports a finding that common issues predominate. Both sides will present common evidence on these issues. Of course, whether Plaintiffs' or Union's evidence will prevail is not the appropriate inquiry at this time. Instead, it is enough to note that both Plaintiffs and Union plan to rely on common evidence in making their cases.

Union's specific defenses do not defeat predominance. Some (such as setoff) pertain (if at all, to a merits determination to be made later) to damages, and can be accounted for in Plaintiffs' expert's calculations. *See Carbajal v. Capital One F.S.B.*, 219 F.R.D. 437, 441 n.2 (N.D. Ill. 2004) (setoffs would not be a significant focus of the case and would likely involve nothing more than a mere calculation). The Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification. *See Allapattah Servs.*, 333 F.3d at 1261; *Sacred Heart*, 601 F.3d at 1178. Others, such as waiver, ratification, and the voluntary payment doctrine,[7] require, under the law of all three states at issue, full knowledge by Plaintiffs and members of the class of material facts making their actions knowing and voluntary.[8]

---

[7] Moreover, these defenses may pertain more to damages than liability, depending on how the facts develop in discovery. *See, e.g.*, *Coughlin v. Blair*, 41 Cal. 2d 587, 602-03 (1953) (discussing waiver in the context of the measure of damages, not liability), *cited in* Opp. at 27 n.37; *see also Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1114 (C.D. Cal. 2001) (affirmative defenses of waiver and mitigation pertained to damages, not liability).

[8] *See Padres Hacia Una Vida Mejor v. Davis*, 117 Cal. Rptr. 727, 736 (Cal. App. 2002) ("Waiver is the intentional relinquishment of a known right by a party with full knowledge of the facts"); *Stanley v. Mueller*, 350 P.2d 880, 887 (Or. 1960) (same under Oregon law); *Lawson v. Helmich*, 146 P.2d 537, 542 (Wash. 1944) (same under Washington law); *Am. Oil Servs. v. Hope Oil Co.*, 15 Cal. Rptr. 209, 213 (Cal. App. 1961) (voluntary payment doctrine requires full knowledge of the facts by the party making the payment); *Hammond v. Oregon & C.R. Co.*, 243 P. 767, 771-72 (Or. 1926) (same under Oregon law); *Indoor Billiard/Wash Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 23 (Wash. 2007) (same under Washington law); *Fergus v. Songer*, 59 Cal. Rptr. 3d 273, 289 (Cal. Ct. App. 2007) (ratification requires full knowledge);

However, Plaintiffs have alleged, and offered evidence to support the allegation that, Union omitted to disclose and withheld from its customers material information, including the existence of its secret "Matrix" line of credit which dictated how overdraft charges were generated, and that they had the right to opt out of the overdraft program (and thereby avoid overdrafts). Further, Union engaged in the uniform practice of omitting to disclose to its customers at the point of sale that transactions would lead to overdraft fees or their multiplication.

Specifically, Plaintiffs alleged that throughout the Class Period, if a customer's primary account and any linked account balances were not sufficient to cover the transaction amount, and if the customer did not have a cash reserve line of credit, Union secretly authorized customers' debit-card transactions into overdraft up to a maximum or ceiling amount that the bank determined was appropriate for each customer. Plaintiffs allege that this was done via a confidential automated process using a "Matrix" line of credit that Union built for the customer. Plaintiffs further allege that, augmenting its re-sequencing practice, Union's secret use of the Matrix line of credit was integral to its overall scheme of increasing the number of completed debit transactions and the number of overdrafts. And they allege that the entire process of determining the amount of the Matrix line of credit and authorizing a transaction into overdraft was not disclosed to the customer before 2010. If Plaintiffs can prove these facts, they will undercut Union's defenses by common evidence.[9]

_____

*Michel v. ICN. Pharm. Inc.*, 549 P.2d 519, 525 n.2 (Or. 1976) (same under Oregon law); *Snohomish County v. Hawkins*, 89 P.3d 713, 716 (Wash. Ct. App. 2004) (same under Washington law).

[9] Plaintiffs have alleged and offered evidence to support the allegation that Union instructed its employees "never" to reveal the Matrix limits to customers. To the extent Union could prove that some customers nonetheless learned of their Matrix limit, yet continued to incur and pay overdraft fees, the presence of individualized defenses as to a small number of class members would not destroy the predominance of common liability questions. *See Smilow v. Southwestern Bell Mobile, Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Dupler v. Costco Wholesale Corp.*, 249

### (ii) Superiority

Finally, the Court now turns to the issue of superiority under Rule 23(b)(3). The four factors identified by Rule 23, *see Walco*, 168 F.3d at 337, requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.* Plaintiffs contend that a class action is superior to separate actions for each member of the putative class. Citing the factors identified by Rule 23(b)(3), Plaintiffs claim that the class action vehicle provides the most efficient, effective, and economic means of settling the controversy.

When considered in light of Rule 23(b)(3), the Court finds that Plaintiffs have met their burden in demonstrating the superiority of class action, and indeed it may be the only realistic way these claims can be adjudicated. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability. The Supreme Court has long recognized that where, as here, "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980). Thus, the Court's jurisprudence demonstrates the "recognition that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages done to any single individual or entity are too small to justify bringing an individual

---

F.R.D. 29, 45 (E.D.N.Y. 2008); *Robin Drug Co. v. Pharmacare Mgmt. Servs., Inc.*, No. Civ.

action." *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 194 (2d Cir. 2011); *see, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that the class action mechanism may empower "plaintiffs to pool claims which would be uneconomical to litigate individually," such as when most of them "would have no realistic day in court if a class action were not available."); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("[T]he class attorney, who is familiar with the facts and the progress of the litigation, will be able to present the claimant's case. If relegated to a new suit, the individual might be unable to obtain counsel to prosecute his action when the amount of individual damages is relatively small. . . . By obviating the need to bring a new lawsuit, the expense of litigating the new individual claim is reduced.") (quoting *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1220 n.80 (5th Cir. 1978)).

Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy. Nearly all of the class members in this case have claims that are so small that it would cost them much more to litigate an individual case than they could ever hope to recover in damages, and thus there is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation. Concentrating the litigation in this forum is logical and desirable. And as noted above, this case is eminently manageable as a class action. Accordingly, the Court finds that Plaintiffs have met the superiority requirement of Rule 23(b)(3).

### (iii)   Subclasses

The Court also certifies the creation of four subclasses: the two state-good faith and fair dealing subclass (encompassing California and Oregon), the California unjust enrichment

---

033397, 2004 WL 1088330, at *5 (D. Minn. May 13, 2004).

subclass, the three state unconscionability subclass (encompassing California, Oregon and Washington), and the California Unfair Competition Law subclass. Plaintiffs who represent each subclass reside in one of the states belonging to each subclass; thus, they may represent Class members residing in the other state(s) included in the subclass. The Court finds the creation of these subclasses to address variations in state law appropriate, and will make this case manageable as a class action. *See, e.g., Klay*, 382 F.3d at 1262 (noting that "if applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate."). The court "may authorize aggregate treatment of multiple claims, or of a common issue therein, by way of a class action if the court determines that

    (1)  a single body of law applies to all such claims or issues;

    (2)  different claims or issues are subject to different bodies of law that are the same in functional content; or

    (3)  different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can manage by means of identified adjudicatory procedures."

American Law Institute, *Principles of the Law: Aggregate Litigation* § 2.05(b) (2010). The proposed special verdict forms and supporting surveys of law submitted by Plaintiffs with their Trial Plan illustrate that the variations among the potentially applicable state laws are not material and can be managed to permit a fair and efficient adjudication by the fact finder at trial. As detailed in Plaintiffs' Trial Plan, Plaintiffs propose just four subclasses for the state law claims. Each subclass will have its own start date linked to the statute of limitations for each of those claims. Each subclass groups the laws of California, Oregon and Washington accordingly.

    Union argues that, despite the fact that the law of only three states, at most, is at issue with regard to any of the subclasses (and, as grouped by Plaintiffs, is sufficiently uniform),

individual issues predominate with regard to these claims. Its argument relies on an incorrect reading of the relevant law. For example, it is not the case that the individual Plaintiffs' and class members' subjective expectations are necessary to prove their claims. To the contrary, breach of the duty good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct. *See, e.g.*, *Menagerie Prods. v. Citysearch*, 2009 U.S. Dist. LEXIS 108768, at *38-40 (C.D. Cal. Nov. 9, 2009). Plaintiffs' unconscionability claims focus on Union and its conduct, making them appropriate for certification. *See, e.g.*, *Dienese v. McKenzie Check Advance of Wis., L.L.C.*, 2000 U.S. Dist. LEXIS 20389, at *13-14 (E.D. Wis. Dec. 11, 2000) (citing cases approving of class certification of common-law unconscionability claims). So, too, with Plaintiffs' unjust enrichment claims – courts often certify unjust enrichment claims because "common questions predominate" and are "all easily resolved class wide." *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 669 (S.D. Cal. 2010); *see also Cartwright v. Viking Indus.*, 2009 U.S. Dist. LEXIS 83286 (E.D. Cal. Sept. 11, 2009); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010). The uniformity of Union's representations to members of the class, through the account agreement, and the focus on its conduct also renders the California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* claim appropriate for certification. *See, e.g.*, *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (Cal. Ct. App. 2006) (holding that in an action brought by consumers, "[a] business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits."); *Progressive West Ins. Co. v. Yolo County Super. Ct.*, 135 Cal. App. 4th 263, 285-86 (Cal. Ct. App. 2005) (discussing UCL unfairness standard as applied in consumer cases); *Gutierrez v. Wells Fargo & Co.*, No. C 07-

05923 WHA, 2010 WL 1233810, at *13-14 (N.D. Cal. Mar. 26, 2010) (refusing to decertify UCL class of Wells Fargo customers who sustained harm in the form of excess overdraft fees resulting from bank's debit re-sequencing practice, explaining that "[a]ll members of the 're-sequencing' class were charged overdraft fees due to defendant's accused high-to-low posting of transactions."). The Court accordingly certifies Plaintiffs' four proposed subclasses: the two-state good faith and fair dealing subclass, the California unjust enrichment subclass, the three-state unconscionability subclass, and the California unfair competition subclass.

### III.   Conclusion

In accordance with the findings above, it is hereby **ORDERED, DECREED, AND ADJUDGED** as follows:

Plaintiffs' Motion For Class Certification (DE # 1387) be, and the same is hereby, **GRANTED.** The Court certifies the following Rule 23(b)(3) class:

> All Union Bank customers in the United States who had one or more consumer accounts and who, from applicable statutes of limitation through August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of Union Bank's practice of sequencing debit card transactions from highest to lowest.

It is further **ORDERED, DECREED, AND ADJUDGED** that Plaintiffs' Motion for the creation of four subclasses included in its Motion for Class Certification (DE # 1387) be, and the same is hereby, **GRANTED.** The Court certifies the following four subclasses:

> The two state-good faith and fair dealing subclass (encompassing California and Oregon), the California unjust enrichment subclass, the three state unconscionability subclass (encompassing California, Oregon and Washington), and the California unfair competition subclass.

The Court appoints Plaintiffs as representatives of the Class, and as representatives of the following specific subclasses:  Cynthia Larsen, Cheryl Brown, Kristian Logan and Josh Naehu-Reyes as representatives of Plaintiffs' proposed two state good faith and fair dealing subclass;

Cynthia Larsen, Cheryl Brown, Kristian Logan, and Josh Naehu-Reyes as representatives of the California unjust enrichment subclass; Cynthia Larsen, Cheryl Brown, Kristian Logan, Josh Naehu-Reyes as representatives of the three state unconscionability subclass; and Cynthia Larsen, Cheryl Brown, Kristian Logan and Josh Naehu-Reyes as representatives of the California unfair competition subclass.   The Court also appoints the following firms as Class Counsel pursuant to Fed. R. Civ. P. 23(g):   Alters Law Firm, P.A.; Podhurst Orseck, P.A.; Grossman Roth, P.A.; Baron & Budd, P.C.; Golomb & Honik, P.C.; Lieff Cabraser Heimann & Bernstein LLP; Trief & Olk; Webb, Klase & Lemond, L.L.C.; and Bonnett Fairbourn Friedman & Balint.[10]

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Courthouse, Miami, Florida, this 25th day of July, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

CC:   All Counsel of record

---

[10] The Court will address the procedure for providing notice to class members regarding the certification of the class and these claims separately.