UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTION

*Larsen v. Union Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23235-JLK
N.D. Cal. Case No. 4:09-cv-3250

PLAINTIFFS' MOTION TO UNSEAL CLASS CERTIFICATION PAPERS
AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs, pursuant to Local Rule 7.1 and the procedures set forth in the Stipulated Protective Order [**DE # 688**], move to unseal their Motion for Class Certification and Incorporated Memorandum of Law and Appendices I – IV thereto (collectively, the "Opening Brief") [**DE # 1387 et al**], and Plaintiffs' Reply in Support of Motion for Class Certification and Appendix I thereto (collectively, the "Reply Brief") [**DE # 1314-1317**] (the Opening Brief and the Reply Brief are collectively referred to as the "Class Certification papers").

Introduction

Defendant Union Bank, N.A. ("Union Bank" or the "Bank") has abused the Stipulated Protective Order by indiscriminately designating large swaths of its document production and deposition testimony as "confidential" or "highly confidential." Following the filing of the Opening Brief and again after the filing of the Reply Brief, Plaintiffs notified Union Bank of the

impropriety of its uniform confidentiality designations of exhibits filed in support of the Class Certification papers. Consistent with the Stipulated Protective Order, Plaintiffs provided Union Bank with a detailed description of the basis for Plaintiffs' challenges for each of the exhibits designated as "confidential" or "highly confidential," and asked the Bank to describe in detail the specific harm that was threatened by public disclosure of each of the exhibits. Union Bank responded by withdrawing some of its designations, but failed to provide any specific showing of harm as to those exhibits which are the subject of this motion.

Union Bank's designations lack the "good cause" required under the Stipulated Protective Order and Rule 26 for maintaining these confidentiality designations. It is undisputed that the materials do not contain trade secrets or their equivalent, and Union Bank cannot show any compelling governmental interest that would overcome the public's First Amendment right to access materials that relate to a significant motion. This is especially true in light of this Court's Order Granting Class Certification dated July 25, 2011 [**DE # 1763**], and the Court's statement at the hearing that "[a] lot of this stuff has been filed in secret. *We have got to get off of that . . . .*" Tr. of July 13, 2011 hearing, at 54:19–20 (emphasis added).

As detailed below, the Class Certification papers should be unsealed in their entirety.

## Statement of Facts

### A.     The Protective Order.

Before starting discovery in the first tranche, the parties executed, and this Court entered on July 15, 2010, a Stipulated Protective Order (the "Protective Order") that permits counsel to designate discovery materials as "confidential" when the "producing party or non-party believes in good faith" that the materials "contain trade secrets or confidential product development, business, financial, strategic planning, security or customer information." Protective Order ¶ 5 (**DE # 688**; attached as Ex. A). The Protective Order expressly provides that designating a

document as "Confidential" or "Highly Confidential" does not "creat[e] any presumption as to the confidentiality of such matter in the event of a motion challenging the confidentiality designation." *Id.* ¶ 6.

> **B.     Plaintiffs' Challenge to the Bank's Confidentiality Designations of the Exhibits Filed in Support of Plaintiffs' Class Certification papers.**

Plaintiffs filed their Opening Brief under seal on April 25, 2011 and, immediately thereafter, notified Union Bank that they were challenging the confidentiality designations the Bank made to the exhibits filed in support of the Opening Brief. Following the filing of the Reply Brief and exhibits thereto under seal, Plaintiffs again asserted their challenges to the Bank's confidentiality designations of the exhibits filed in support of thereof. The parties thereafter engaged in several "meet and confer" teleconferences and exchanged written correspondence in an effort to reach agreement on the withdrawal of the confidentiality designations of the exhibits in the Class Certification papers. The parties concluded their meet and confer efforts on July 22, 2011, and remain at impasse on the propriety of the designations the Bank has made to the following exhibits:

> **Opening Brief:**

Exhibit Nos. 7 (as to pp. 40, 44-49, 55 and 61-76), 13, 22, 26, 33, 35, 44-45, 48-50, 53-55, 58, 71, 73, 74 and 83 (as to pp. 101, 108-109, 117 and 119-121).

> **Reply Brief:**

Exhibit No. 91.

*See* attached Ex. B, July 22, 2011 letter from Union Bank's counsel Michelle McGuinness to Todd Carpenter, one of Plaintiffs' counsel.

Based on this impasse, Plaintiffs now ask this Court to unseal the above described exhibits to the Class Certification papers pursuant to the SPO. *See* SPO, ¶ 20(c).

**Argument**

I.   **THE COURT SHOULD UNSEAL THE CLASS CERTIFICATION PAPERS.**

The Class Certification papers are precisely the type of judicial records to which the public's right of access to court documents most strongly applies.  "The public's right of access to judicial records has been characterized as 'fundamental to a democratic state,'" and "this presumption is of constitutional magnitude."  *Matter of Continental Illinois Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) (citations omitted); *see also Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992) (holding that "[a]bsent a showing of extraordinary circumstances," a pre-trial civil litigation "file must remain accessible to the public."); **DE # 553** (holding that MDL documents may not be kept secret absent a showing of "threat of imminent death or bodily harm which are the usual grounds for conducting civil litigation in secret.").

The Class Certification papers which led to this Court's Order Granting Class Certification dated July 25, 2011 [**DE # 1763**] represent a vital node in this litigation.  The public – especially the thousands of prospective class members whose rights may be affected – have a strong interest in understanding the basis for the Court's decision, and Union Bank can identify no sufficiently weighty countervailing interest to justify keeping the public in the dark about these materials.  Accordingly, the materials should be unsealed forthwith.

A.   **The Class Certification Papers Are Presumptively Public.**

The Eleventh Circuit recognizes a right of public access to important judicial documents like the Class Certification papers:

> The common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process.  Beyond establishing a general presumption that criminal and civil actions should be conducted publicly, the common-law right of access includes the right to inspect and copy public records and documents.

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001) (citations omitted). Once a party relies on a document obtained during discovery in support of a "substantive motion" touching on the merits of the case, that document is considered a "public or judicial record" to which a ***strong presumption of public access*** applies. *Id*. at 1311-12.

The Class Certification papers are just the type of substantive motion papers to which the right of public access attaches. A class certification motion necessarily touches on the merits of a case. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (in deciding class certification, "the trial court can and should consider the merits of the case . . . to determine whether the requirements of Rule 23 will be satisfied") (quotation marks omitted). The Opening Brief analyzes the merits of Plaintiffs' claims in the context of the evidence known thus far of the Bank's practices. *See generally,* DE # 1387 at pp. 6-21. That discussion necessarily implicates the key Bank exhibits filed in support of the Opening Brief.

Other courts have ordered the unsealing of class certification papers in similar contexts, recognizing that the right of public access trumped the defendants' insufficient showing of good cause to keep them confidential. *See, e.g.*, *Minter v. Wells Fargo Bank, N.A.*, 2010 WL 5418910, at *15 (D. Md. Dec. 23, 2010); *In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 208-209 (E.D.N.Y. 2008), *rev'd on other grounds*, 620 F.3d 121 (2d Cir. 2010).

### B.   Union Bank Bears a Heavy Burden of Demonstrating "Good Cause" to Keep the Class Certification Papers Under Seal.

A party seeking to keep a judicial record sealed must demonstrate "good cause" under Rule 26(c) for why the documents must remain under seal. *Chicago Tribune*, 263 F.3d at 1310 ("Rule 26 requires a showing of good cause by the party seeking protection") (punctuation omitted); *Foltz v. State Farm Mut. Auto Ins., Co.,* 331 F.3d 1122, 1130 (9th Cir. 2003) ("A party asserting good cause bears the burden, for each particular document it seeks to protect, of

5

showing that specific prejudice or harm will result"); 8A Wright, Miller & Marcus, *Federal Practice & Procedure* § 2035 (3d ed. 2010) (party asserting the challenged designation must "show some plainly adequate reason."). The SPO is consistent: "The burden of persuasion on any such motion [challenging the designation of any material as confidential] shall be on the party . . . that has designated the matter as Confidential or Highly Confidential." SPO, ¶ 20(c).

That burden is not a light one. Particularly given the presumption in favor of public access, Union Bank must make a particularized evidentiary showing that these materials should remain secret. *See Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983); *Foltz*, 331 F.3d at 1130-31; *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986); *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987). In *Newman*, for instance, the district court denied a newspaper access to lists of certain prisoners submitted to the court by the Department of Corrections pursuant to a consent decree, based on testimony from the Commissioner of the Department that publication of the lists would create the possibility of prisoner unrest. 696 F.2d at 799. The Eleventh Circuit reversed the order sealing those records because the mere "possibility" of "prison violence" was not sufficient to satisfy the compelling interest necessary to overcome the strong presumption in favor of public access to judicial records. *Id*. at 803. *See Chicago Tribune*, 263 F.3d at 1311-12 (referencing *Newman* as the source for the common-law right of access in the Eleventh Circuit). Similarly, in a case applying the heightened scrutiny the Eleventh Circuit reserves for cases in which a court has sealed an entire case file, *see Chicago Tribune*, 263 F.3d at 1311, the Court of Appeals admonished that "[s]imply showing that the information would harm the company's reputation is not sufficient to overcome the strong common law presumption in favor of public access." *Wilson v. Am. Motors Corp*., 759 F.2d

1568, 1570-71 (11th Cir. 1985) (quoting *Brown & Williamson Tobacco Corp. v. Federal Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir. 1983)).

Union Bank cannot make a showing sufficient to warrant maintaining these class certification papers under seal. Indeed, the "right of public access" to these documents is "particularly compelling" in this situation "because many members of the 'public' are also plaintiffs in the class action." *In re Cendant Corp.*, 260 F.3d 183, 193 (3d Cir. 2001). "Protecting the access right in class actions 'promotes class members' confidence' in the administration of the case" (*id*. (citation and alterations omitted)), and provides an additional deterrent against the alleged unlawful conduct. Here, the public interest in class actions is even more significant, given the enormous economic power of Union Bank and the substantial damages claimed. *See In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 230 (5th Cir. 2008) (holding that "litigation with millions at stake, ought to be litigated openly.").

## II. As to Each Contested Document, the Public Right of Access Trumps the Bank's Asserted Basis for Secrecy.

The public interest in this case is at its peak: this Court has now certified a class comprising tens of thousands of class members who were subjected to the Bank's high-to-low posting scheme. Allowing the public access to the Class Certification papers will not only inform the public about the case, but will also serve the public's legitimate interest in learning about the business practices of Union Bank (an influential player in the consumer banking market) – especially whether those practices conform to federal and state laws.

The interests in keeping the Class Certification papers from the public, on the other hand, are – at best – minimal. The Bank has advanced no reasons, let alone compelling reasons, for keeping the Class Certification Papers sealed. This is because none of the 20 exhibits contested by the Bank require protection. The documents simply do not contain trade secrets, or other

confidential research, development, or commercial information. Nor do these documents provide any information that would give the Bank's competitors an advantage, *e.g.*, technical information such as formulas or procedures behind NSF modeling. Rather, the documents describe ordinary and mundane business matters, *e.g.*, the mechanics of and changes to transaction sequencing order, comparison of revenue generated by transaction sequencing order, disclosure issues, and the identification of officers and employees. The public deserves access to these materials.

### A. Internal e-mails.

Union Bank has improperly insisted on maintaining the "confidential" designation of several e-mails exchanged between and among employees of the Bank on the basis that they reveal "strategic planning," despite the fact that they are several years old and retain no competitive value. More importantly, these e-mails address routine business operations, including discussions on how to resolve customer complaints regarding NSF fees following the transition to the "High to Low" posting order (Exhibit 91); recommendations on how the Bank can comply with new federal regulations regarding overdrafts (Exhibit 48); the Bank's overdraft and NSF pay/return policies (Exhibit 13); comparing NSF fund revenue under the new sequencing order to the former sequencing order (Exhibit 73); revenue generated from high-to-low sequencing (Exhibit 35); and an e-mail sent in July 2007 which discusses modeling for implementing an overdraft fee model for business accounts (Exhibit 74). Notably missing from these documents is *any* information that would give Union Bank's competitors an advantage, *e.g.*, formulas or procedures behind NSF modeling.

### B.     Revenue and financial information related to overdrafts.

Union Bank similarly lacks any basis for keeping secret documents regarding the NSF fund revenue generated from the high-to-low sequencing order.  The Bank has sought to seal documents which demonstrate the fruits of its improper scheme, despite the fact that the balance sheets are now stale, and several years beyond having any competitive relevance. The Bank claims confidentiality for its initial overview of the high-to-low posting initiative, a document generated *in 2003* (Exhibit 33); a revenue chart demonstrating fees paid to a consulting firm (CAST) which helped develop the posting scheme (Exhibit 22); and information regarding revenue earned from overdraft fees for the years 2003 (Exhibit 58), 2004 (Exhibit 45), 2006 (Exhibit 49), 2007 (Exhibits 49-50) and 2008.

Union Bank contends these documents are confidential because they address its bottom line and/or strategic budgeting issues and, as a privately held company, such information was never intended to be publicly available.  However, this explanation does not rise to the level of specificity required to demonstrate any potential harm. *See Minter v. Wells Fargo Bank, N.A.*, 2010 WL 5418910, at *8 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the [Rule] 26(c) test.") (citing *Cipollone*, 789 F.2d at 1121). The Bank's approach is incapable of satisfying the heavy burden imposed by Rule 26 and the Protective Order.

### C.     Documents generated in the ordinary course of business.

Several of the exhibits at issue were exchanged between and among employees of Union Bank.  These exhibits consist of memoranda, spreadsheets and power-points describing routine business matters, such as:  tracking card losses indexed against NSF fees generated and the time

9

period that a customer remains in overdraft (Exhibit 53); a draft memorandum from 2003 regarding the mechanics of generating additional account fees by sequencing transaction code (internal code assigned to checking account transactions) processing in the order of descending dollar amount (Exhibit 26); a summary power-point presentation from 2003 discussing the Bank's retail delivery system (Exhibit 54); a summary chart of proposed changes to various fees, including NSF fees (Exhibit 55); a draft proposal from January 2003 initiated to evaluate the investment and potential return to be generated from the change in posting sequence (Exhibits 33 and 71); and a spreadsheet demonstrating fees generated and waived for a time period in 2007 (Exhibit 44).

There is no competitive advantage to be gleaned from these documents. None of them discusses specific modifications to Union Bank's NSF model, *e.g.*, formulas, equations, etc. So again, attempting to shoe-horn these documents under a definition of "strategic planning" is disingenuous – or simply confused – because most of Union Bank's major competitors post transactions in descending order regardless of transaction type. And, as evidenced by insurmountable data showing the exponential increase in overdraft fee income, it is no longer a secret that posting high to low generates considerably more overdraft fee revenue.

> **D. Deposition testimony on benign business processes and the existence of the "Matrix."**

Finally, Union Bank insists that certain portions of two separate F.R.C.P. 30(b)(6) depositions remain confidential. The Bank contends that Mr. Coleman's testimony regarding the historical retention of data and the Bank's account management systems is appropriately kept under seal. In fact, the Bank has failed to make any showing of competitive harm that would befall it in the event this information was made public. It contends that its systems have remained largely intact through the years, so even the most mundane disclosures as to where

account information is stored or how its account systems interact should remain concealed. However, the nature of the information to be revealed is not specific enough to rise to the level of warranting protection: Mr. Coleman's testimony provides only a generalization of how the processes work, not the "nuts and bolts" required to replicate it or cause the Bank any harm. *See, e.g.*, Exhibit 7, at p. 85; 1-10; p. 86; 3-21. Nor has the Bank attempted to make any such showing.

The Bank has also designated as "confidential" testimony from JoAnn Fristo where she provides a general description of the Bank's secret overdraft fee credit limit, the "Matrix." *See, e.g.*, Exhibit 83, pp. 101, 108-09, 117, 119-21. Ms. Fristo's testimony, however, is a high level description; it does not include an explanation of the actual process for calculating the "Matrix," or even an estimation of the algorithm used to generate it. By her own admission, she was not qualified to provide the type of detailed testimony that would provide any third party with any competitive value, and her testimony would not injure the Bank were it disclosed. *See id*. p. 109; 4-12 ("All of this data is fed into a statistical model, and *I don't know how that statistical model works*.") (emphasis added).

In short, the public has a well-founded right to see the Class Certification papers. Union Bank has not (nor can it) meet its heavy burden of showing otherwise.

## **CONCLUSION**

Based on the foregoing, Plaintiffs respectfully request that the Court unseal the Class Certification papers.

## **LOCAL RULE 7.1 CERTIFICATE**

Pursuant to Local Rule 7.1, undersigned counsel certifies that they have conferred with counsel for Union Bank regarding the issues raised in this motion, but the parties have been unable to resolve the matters in dispute.

Dated: July 27, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

13

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596
rcg@grossmanroth.com