UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:

THIRD TRANCHE ACTIONS

*Dwyer v. TD Bank, N.A.*
S.D. Fla. Case No. 10-20855-JLK
D.Mass. Case No. 09-cv-12118

*Mascaro v. TD Bank, N.A.*
S.D. Fla. Case No. 10-21117-JLK
D.D.C. Case No. 10-cv-0040

*Mosser v. TD Bank, N.A.*
S.D. Fla. Case No. 10-21386-JLK
E.D. Pa. Case No. 10-cv-00731

*Mazzadra, et. al v. TD Bank, N.A.*
S.D. Fla. Case No. 10-21870-JLK

---

STIPULATED DISCOVERY PLAN AND ORDER
FOR ELECTRONICALLY STORED INFORMATION

This Stipulated Discovery Plan for Electronically Stored Information (the "Order") is entered into by and among the parties to the above-captioned actions (the "parties") which are part of the multidistrict litigation proceeding entitled In re Checking Account Overdraft Litigation, MDL No. 2036, Case No. 1:09-md-02036-JLK (S.D. Fla.) ("MDL 2036"), through their respective counsel of record:

{W2467557.1}

1. <u>Electronic Discovery: The Collection and Culling of ESI</u>: In a joint effort to balance the volume, relevance and costs of the production and review process, the parties stipulate to the following involving the handling and production of electronically stored information ("ESI"):

(a) **Phase One:**

   a. The parties have agreed to search terms (as memorialized in the parties' in the parties' correspondence of April 25, 2011 and May 6, 2011)(the "Search Terms"),

   b. The parties agree that that the total number of custodians at the Defendant Bank for whom ESI will be produced will not initially exceed 20 individuals. By reaching this agreement, neither party waives any rights or objections they may have to additional discovery beyond the first 20 custodians.

   c. Defendant has identified the initial 9 custodians who played a more central decision-making role with respect to the alleged practices (the "Priority Custodians").

   d. Defendant will run the Search Terms for the ESI of the Priority Custodians for the identified time periods.

   e. Defendant has started its production of the identified documents and will continue the production (Phases One and Two) on a rolling basis in the agreed-upon format set forth below.

   f. The parties contemplate that there may be a limited number of additional Priority Custodians who may be identified through the Phase One production and that Plaintiffs will likely want to run a search using the full Search Terms for ESI of these Custodians for relevant periods of time.

   g. If this is the case, Plaintiffs will identify any proposed additional Priority Custodians with a brief explanation of the reasons why such documents should be gathered and produced. Plaintiff will consider whether it is feasible to use a subset of the Search Terms for any additional Priority Custodians. Provided the request is reasonable, Defendant will agree to produce the additional identified documents.

   h. If the parties disagree regarding the scope of the production described above in (a) through (g), Defendant will provide a limited sampling of the

documents being requested so that Plaintiffs may assess the relevance of the documents and limit their request, if appropriate.

**Phase Two:**

a. No more than forty-five days after Defendant starts the production of Phase One discovery, the parties will confer about the scope of any further production. This deadline does not preclude the parties from having ongoing discussions throughout the production regarding any discovery issues that may arise among the parties. The parties agree to work in good faith to identify, discuss, agree upon and revise, if necessary, the custodians and sources of documents, including search terms, to avoid an unduly burdensome production or retrieving a large quantity of non-responsive ESI.

b. The parties also understand that there will be a number of custodians who played a more peripheral role in the formation or implementation of the Bank's alleged practices (the "Peripheral Custodians") and/or period of time when Priority Custodians did not play a central role in the Bank's overdraft practices. The parties expect that Plaintiffs will want documents produced for these custodians/time periods.

c. Plaintiffs will identify any proposed Peripheral Custodians with a brief explanation of the reasons why their documents should be gathered and produced. The parties agree, however, to use more narrow and targeted search terms and time periods for such custodians. Provided the request is reasonable, Defendant will agree to produce the additional identified documents.

d. If the parties disagree regarding the scope of the production described above in (a) through (c), Defendant will provide a limited sampling of the documents being requested so that Plaintiffs may assess the relevance of the documents and limit their request, if appropriate.

(b)  In the event of a dispute or disagreement, the parties will meet and confer in a good faith effort to resolve such dispute or disagreement which includes the production and review of a limited sampling of the information sought. In the event of a failure to resolve such dispute or disagreement, either party may file a motion seeking judicial intervention to resolve the dispute or disagreement. By entering into this stipulation, no party waives its right to seek assistance from the Court on any matter relating to the handling and production of ESI not specifically addressed herein.

{W2467557.1}

3

909380.1

(c) The parties agree that, with the exception of ESI (i) specifically identifying or relating to the named plaintiffs in the Action and (ii) necessary to calculate damages through the date of class certification (if applicable), ESI dated after December 31, 2009 will not be produced.

(d) Following Phase One described above, Plaintiffs are not precluded from subsequently requesting limited ESI from specific sources or custodians as described above as "Phase Two," including, but not limited to, ESI dated after December 31, 2009 based on Plaintiffs' completed discovery.

(e) Each party shall make a reasonable and diligent effort to search for and collect reasonably accessible and responsive ESI from each of its designated custodian's e-mail systems utilized during the relevant time period and/or the relevant time period for the respective custodian, ESI stored on each such custodian's computer hard-drive, ESI on shared drives and repositories utilized during the relevant period, and other locations used by each such custodian to store potentially responsive ESI. The Parties will filter the ESI it collects using search terms agreed upon by the parties. If a party identifies ESI from its designated custodians that is not reasonably accessible, it will provide to the other party a description of the ESI that it claims is not reasonably accessible.

(f) In addition, Defendant will collect reasonably accessible and responsive ESI from Defendant's servers, electronic document repositories, or any other electronic file storage media, relevant shared network folders or repositories not attributed to any specific custodian, which it identifies following a reasonable and diligent investigation as likely to contain responsive ESI. The search terms will be run against the ESI collected from the servers or devices, electronic document repositories, or any other electronic file storage media. If Defendant identifies a shared repository from which it cannot collect data due to the nature of its organization in a database or its voluminous nature, that Defendant will identify this shared repository and propose to Plaintiffs a

{W2467557.1}

4

909380.1

method for collection of that database, and the parties will meet and confer in good faith about the most reasonable method to collect and review the data.

(g) HARD COPY DOCUMENTS: The parties agree to conduct a reasonable search for and collect reasonably accessible, non-duplicative responsive hard copy data and produce it in single-page TIFF format along with document level OCR text files and the following fields in a Summation load file as described in section 2 (f) below:

    (i) Custodian (Name of Custodian from which the file is being produced);
    (ii) Bates Begin (Beginning Production Number);
    (iii) Bates End (Ending Production Number);
    (iv) Begattach# (field contains the Beginning Docid for the first document in the family group (usually an email) and is populated for all attachments within the family group);
    (v) Endattach# (Enddoc# for the last document in the family group);
    (vi) Page count (for documents that are TIFFed)

Each party shall bear the cost of converting the hard-copy paper documents it requested to TIFF format and for providing the load file.

(h) Defendants may exclude from collection, review and production the following categories of electronic files:

    (i) System or executable files (.exe, .dll, etc.); and
    (ii) Electronically stored information or data with the following file extensions, as they typically contain no meaningful user-created data and/or cannot be reviewed in any meaningful format: ani; bat; c; cab; cfg; class; dll; ex_; exe; fon; hlp; ico; icon; inf; ini; isu; java; jpa; kqp; mpe; msi; ocx; out; pcd; pcx; reg; sfw; swf; sys; tag; ttf; and xp and stand-alone audio, video, graphic and database files, including but not limited to the following file extensions: AIFC, AIF, AIFF, ASF, WMV, WMA, AU, AVI, MP3, WAV, AAC, CDA, M4A, M4B, MID, RMI, MP2, MPA, APR, DB, DBF, MDB, ATA, MPD, MDW, MDA, ACCDB, CLS, NTF, NS3, NS4, NS5, BMP, DIB, DWG, DXF, EMF, GIF, JFI, JFIF, JPE, JPEG, JPG, PCX, PNG, PRE, PRZ, TIF, TIFF, CSV, MPG4, M4V, 3G2, 3GP, MPG, M2V, MOV, QT, IFF, MJ2, RM.

Each party agrees to provide a list of file types collected and to meet and confer in good faith if there are any file types excluded that the other party reasonably believes

contain responsive information. The parties will work together to determine reasonable methods of production for these file types.

(i) In order to reduce the volume of documents reviewed and produced, each party shall de-duplicate ESI using the SHA1 hash value. Such de-duplication will be done across the universe of all ESIs produced. De-duplicated originals and metadata shall be securely retained and made available for inspection and copying upon reasonable request.

2. <u>ESI: Production Format</u>: The parties stipulate to the following regarding the production of documents that were originally maintained as ESI:

(a) NON E-MAIL ESI: The native format of all non-email, un-redacted ESI will be maintained by each party, and non-email, un-redacted ESI productions will be produced in single-page TIFF format and corresponding document-level extracted text format with the following metadata fields in a Summation load file as described in section 2 (f) below:

  (i) Custodian (Name of Custodian from which file is being produced);
  (ii) Author (Author of file from properties);
  (iii) Doc Title (Title of file from properties);
  (iv) Doc Subject (Subject of file from properties);
  (v) Created Date (Date the file was created);
  (vi) Last Modified Date (Date the file was last modified);
  (vii) Last Author (Name of user who last saved the file);
  (viii) Doc Type (Email, Attachment or Loose File);
  (ix) File Type (Microsoft Word, Microsoft Excel, etc.);
  (x) File Name (Name of the file);
  (xi) Full Path (Full path location to where the file resided);
  (xii) File Ext (Extension for the file);
  (xiii) SHA1 hash value  (or equivalent);
  (xiv) Bates Begin (Beginning Production Number);
  (xv) Bates End (Ending Production Number);
  (xvi) ParentID (field contains the Beginning Docid for the parent document (usually an email) and is populated for all attachments within the family group);

      (xvii)  AttachID (field contains the Beginning Docids for each attachment within the family group and is populated for the parent document within a family group);

      (xviii) Page count (for documents that are TIFFed)

      (xix)  For Excel spreadsheets only, a Native link (path to the native file as included in the production e.g., d:\PROD001\natives\ABC00015.xls or d:\PROD001\natives\ABC00025.ppt). A TIFF placeholder with a link to the Native files is acceptable.

Production of redacted, non-email ESI will be subject to the same criteria along with the inclusion of the field Redacted which will contain the value "Yes" for all documents with redactions. The metadata field "Body Text" will not be produced for Plaintiffs and need not be produced for Defendants provided that the document-level extracted text format is an external link to the text of the document. In addition, Doc Title and Doc Subject will not be provided when production of such information could, in the good faith view of the parties' counsel, reveal privileged information. All date fields will be produced in either YYYYMMDD or MM/DD/YYYY format. The time will not be included in the date fields.

    (b)    E-MAILS: The native format of all un-redacted electronic mail shall be maintained by the Parties, and un-redacted electronic mail shall be produced in single-page TIFF format and corresponding document-level extracted text with the following metadata fields in a Summation load file as described in section 2 (f) below:

      (i)     Custodian (name of custodian from which file is being produced);
      (ii)    Author (FROM field);
      (iii)   CC;
      (iv)   BCC;
      (v)    Recipient (TO field);
      (vi)   SHA1 hash value or Equivalent;
      (vii)  Date Sent (date the email was sent);
      (viii) File Ext (extension for the file);
      (ix)   Email Folder (The folder within the mailbox where the message resided in)
      (x)    Bates Begin (beginning production number);

    (xi) Bates End (ending production number);
    (xii) ParentID (field contains the Beginning Docid for the parent document (usually an email) and is populated for all attachments within the family group);
    (xiii) AttachID (field contains the Beginning Docids for each attachment within the family group and is populated for the parent document within a family group);
    (xiv) Page count (for documents that are TIFFed)
    (xv) Subject

  Production of redacted, email ESI will be subject to the same criteria along with the inclusion of the field Redacted which will contain the value "Yes" for all documents with redactions. The metadata field "Body Text" will not be provided for Plaintiffs and need not be produced for Defendants provided that the "document-level extracted text format is an external link to the text of the document. OCR text files will be provided.

  All date fields will be produced in either YYYYMMDD or MM/DD/YYYY format. The time will not be included in the date fields.

  Electronic mail shall be produced along with attachments in sequential order as part of a family, maintaining the parent-child relationship, to the extent the message or any attachment is responsive, relevant and not privileged. As a general matter, subject to specific review, a message and its attachments shall not be withheld from production based on the fact that one or more attachments are privileged, irrelevant or non-responsive. To the extent the message of one or more attachments is privileged, irrelevant, or non-responsive, the responsive, non-privileged documents shall be produced and the documents shall, at the producing party's option, either: (A) be Bates numbered in order in sequence with the attachments and the removed privileged documents shown on a privilege log with corresponding Bates numbers; or (B) include placeholders indicating the privileged documents were withheld and the removed privileged documents shown on a privilege log with control numbers assigned by the

{W2467557.1}

8

909380.1

producing party.

(c) In all circumstances, Excel spreadsheets shall be produced in native format with a TIFF placeholder. This shall apply to all such ESI irrespective of whether they are standalone files or attachments to e-mails or other files. A native version of all ESI will be maintained by the parties and, upon reasonable request, the parties will make the native versions of any produced document available, subject to any redactions.

(d) All compressed or zipped ESI shall be unzipped or decompressed before production. To the extent an electronic file contains embedded files, or links to other files, such files shall be produced as attachments in sequential order as part of a family, maintaining the parent-child relationship.

(e) The parties agree to meet and confer in good faith if there are any other file types that encounter difficulties in the TIFFing process and will discuss native production of such files if necessary.

(f) The production of all documents shall be in Summation format and the following load files will be produced. (i) DII file complaint with Summation Enterprise to load the images, (ii) LST file for loading the extracted text/ocr (iii) TXT file containing the fields specified in paragraph 2(a) and (b) above, with Field Names in first row. The .txt file should be provided with the following hierarchy of delimiters: field - | (ASCII 124), quote - ^ (ASCII 094), multi-entry delimiter - ; (ASCII 059), return value in data - ~ (ASCII 126)

(g) Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image. The confidential legend shall be "burned" into the documents image. No other legend or stamp will be

placed on the document image other than a confidentiality legend or redactions (where applicable). If the page identifier or legend inadvertently obliterates, conceals, or interferes with any information from the source document, the receiving party will request a legible copy

(h) Each page image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension ",TIF."

(i) The parties will honor reasonable and specific requests for the production of color images.

(j) The parties will, upon reasonable request, make originals of any produced document available for inspection and copying, subject to appropriate redactions.

(k) The parties shall bear their own costs of the production of the ESI of the 20 custodians described above. The parties reserve the right to seek and to object to the costs arising from any additional discovery or from any improper conduct or bad faith of the litigants.

3. This stipulation relates to the general protocol of identifying and producing ESI and Hard Copy Documents. Any party may bring a motion to modify or clarify the application of this Order to particular ESI or otherwise.

Dated: July 28, 2011

Respectfully Submitted,

\/s/ William J. Kayatta, Jr.
William J. Kayatta, Jr., Esquire
wkayatta@pierceatwood.com
Clifford H. Ruprecht, Esquire
cruprecht@pierceatwood.com
Lucus A. Ritchie, Esquire
lritchie@pierceatwood.com
Joshua D. Dunlap, Esquire
jdunlap@pierceatwood.com
PIERCE ATWOOD LLP
One Monument Square
Portland, ME 04101
Fax: 305-571-8558
Tel: 207-791-1100
*Attorneys for Defendants*

/s/ John Gravante
Aaron Podhurst
apodhurst@podhurst.com
Steven Marks
smarks@podhurst.com
Peter Prieto
pprieto@podhurst.com
John Gravante
jgravante@podurst.com
Podhurst Orseck
25 W. Flagler St., Ste. 800
Miami, FL 33130
Fax: 305-358-2381
Tel: 305-358-2800
*Co-Lead Counsel for Plaintiffs*

The foregoing Stipulation is approved and adopted as an Order of the Court at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida this 29 day of July 2011.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record

{W2467557.1}

909380.1

12