UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036
_____/

**THIS DOCUMENT RELATES TO:**

*Lopez et al. v. JP Morgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-CV-23127-JLK

*Garcia et al. v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:08-CV-22463-JLK

*Dolores Gutierrez et al. v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-CV-23685-JLK
D. Or. Case No. 3:09-CV-01239-ST
_____/

**NON-PARTY AMERICAN ARBITRATION ASSOCIATION'S
MOTION TO QUASH AND/OR MOTION FOR PROTECTIVE ORDER
CONCERNING CORPORATE REPRESENTATIVE DEPOSITIONS**

Non-Party American Arbitration Association (the "AAA"), by and through undersigned counsel and pursuant to Rules 26(c) and 45(c)(3), Fed. R. Civ. P., and Local Rules 7.1 and 26.1(h), L.R. S.D. Fla., hereby moves the Court for the entry of an Order quashing and/or entering a protective order concerning Plaintiffs' subpoenas for depositions of corporate representative(s) of the AAA in connection with each of the above-referenced matters (the "Overdraft Actions"). Because the depositions Plaintiffs seek would impose an undue burden on the AAA, which burden greatly outweighs the slight benefit Plaintiffs could hope to gain from the depositions, there is good cause for the requested relief and the Court should grant this Motion. In further support, the AAA states as follows:

## BACKGROUND

### I. Overview of the Overdraft Actions, with Which the AAA Is Not Involved

As this Court has earlier described the Overdraft Actions, "Plaintiffs, are current or former checking account customers of the Defendant federally chartered banks who seek to recover [on a class basis] . . . alleged excessive overdraft fees for charges made to their accounts on debit card transactions." In re Checking Account Overdraft Litigation, 2010 WL 5136043, at *1 (S.D. Fla. Dec. 16, 2010).  Further, "[t]he alleged common nucleus of specific facts pled assert a common practice by Defendants, to enter charges debiting Plaintiffs' accounts from the largest to the smallest' thus maximizing the overdraft fee revenue for themselves." Id.  The AAA is not and never has been a party to the Overdraft Actions.  Moreover, as a neutral and independent not-for-profit administrative organization, the AAA takes no position on the merits of the issues being litigated in the Overdraft Actions or on the question of whether or not the Arbitration Motions, as referenced below, should or should not be granted.

### II. The Court Allows Limited Arbitration-Related Discovery, and Specifically Frames the Categories of Relevant Information

Recently, the Defendant banks named in the Overdraft Actions filed Motions to Dismiss or, in the Alternative, to Stay in Favor of Arbitration (which Plaintiffs label the "Arbitration Motions"), based primarily on arguments arising from the United States Supreme Court's opinion in AT&T Mobility, LLC v. Concepcion, 2011 WL 1561956 (U.S. Apr. 27, 2011).  In response, Plaintiffs requested that the Court defer ruling on the Arbitration Motions "pending completion of limited arbitration-related discovery which is critical to allow Plaintiffs to establish the requisite evidentiary record necessary to support this Court's denial of the Arbitration Motion[s]." See DE #1489, at p. 2 (emphasis added); DE #1504, at p. 1 (emphasis added).  In early June 2011, the Court ruled on Plaintiffs' deferral requests, ordering that

> [l]imited discovery will be allowed in the following areas: (1) the availability of lawyers to litigate these low value claims individually due to the complex nature and potentially small recovery; (2) the number of overdraft-related complaints; (3) the number of and result of arbitrations; (4) waiver and futility of filing motions to compel.

Order Deferring Ruling on Motion to Compel Arbitration, Granting Time to Conduct Limited Arbitration-Related Discovery, DE #1576, at p. 2 (emphasis added); see also id. ("The Court sets 90 days in which to conduct limited discovery . . . .") (emphasis added).

### III. Plaintiffs Issue Broad Subpoenas Duces Tecum to the AAA, the AAA Goes to Great Lengths to Comply with the Subpoenas, and the AAA Produces More than 1,200 Pages of Documents to Plaintiffs

Approximately two weeks later, Plaintiffs served three materially identical Subpoenas Duces Tecum on the AAA's Miami office (one in each of the three Overdraft Actions). True and correct copies of these Subpoenas are attached hereto as Exhibits "A," "B," and "C," respectively. Each Subpoena sought eighteen different categories of documents from the AAA and spanned a period of more than twelve years. See Subpoenas, at pp. 5-7. In addition, each Subpoena requested that the AAA produce, for deposition in Miami on August 5, 2011,[1] corporate representative(s) who "must be knowledgeable of the Documents [the AAA] produce[s] in response to this subpoena." Id. at p. 7.

On July 5, 2011, the AAA responded and raised various objections to the Subpoenas. True and correct copies of the AAA's responses are attached hereto as Exhibits "D," "E," and "F," respectively. Beginning well prior to that date and continuing well beyond that date, the AAA devoted substantial time and effort to complying with Plaintiffs' Subpoena requests. To date, the AAA estimates that AAA employees have expended upwards of 150 hours responding to the Subpoenas. More specifically, due to the breadth and nature of the Subpoenas' requests, six individuals at the AAA's senior management level were required to search their respective

---

[1] That date has since been changed to August 26, 2011.

3

records for any potentially responsive documents. In addition, nineteen Vice Presidents and Assistant Vice Presidents, as well as their respective staff searched their records for relevant documents. In addition to the review of records by AAA employees, the Legal Department staff also engaged in numerous hours of review and analysis of AAA records to determine what responsive documents the AAA possessed.

One of the primary difficulties posed by the nature of the requests is that they sought information dating from 1999 to the present specific to the subject area of Consumer Accounts involving the Banks at issue (both terms as defined in the Subpoenas). The AAA does not have a central way to identify arbitration case files at this level of detail. Rather, the cases are more broadly defined in categories. Thus, the AAA spent a great deal of time reviewing its existing records and determining how we might be responsive to the information being sought. For example, Request No. 4 sought copies of all documents concerning the compilation of any statistical data relating to all arbitrations between the Bank and a Consumer regarding a Consumer Account including, but not limited to, the AAA's Provider Organization Reports (as well as all prior iterations of those Reports). Requests Nos. 6-12 further requested information concerning the results of any arbitrations involving the Bank and a Consumer, and related data specific to individual arbitrations.

Prior to the production due date, and in an effort to assist Plaintiffs in identifying information they considered potentially responsive, the AAA produced to Plaintiffs' counsel a set of reports that, in accordance with the California Code of Civil Procedure Section 1281.96, the AAA maintains on consumer arbitrations nationwide that have concluded from January 2003 to the present. These reports consist of thousands of pages, and an AAA in-house attorney and paralegal spent numerous hours reviewing and printing those pages that related to the Banks at

4

issue. This production was made on July 11, 2011, bearing bates stamp numbers AAAFL00001 - AAAFL00691.

On July 13, one of Plaintiffs' counsel advised that, based upon his review of the reports, he had narrowed Plaintiffs' request to fifty-three files that he thought might relate to what the Subpoenas were focused on – Consumer Accounts (defined in the Subpoenas as "any Consumer checking, savings or demand deposit account maintained" by the Defendant banks).[2] The AAA then had to review its files to determine whether those cases in fact related to a Consumer Account, whether the files still existed and, if so, whether the files contained the requested information. In order to perform this task, two AAA in-house attorneys and one paralegal were engaged in the review of the fifty-three identified files. Further, five additional Vice Presidents and Assistant Vice Presidents were requested to review their files to determine whether they possessed the relevant records. Of these fifty-three files, the AAA confirmed that only two related to Consumer Accounts. The AAA produced documents from those two files sufficient to identify the banking party, the type of dispute, whether or not the consumer was represented by counsel, whether or not expert testimony was provided or needed, the type of disposition, the total arbitration fee, and the allocation of the fee between the consumer and non-consumer parties.

Throughout this process, the AAA's legal department had numerous discussions and exchanges of information with Plaintiffs' counsel.

By August 1, 2011, the AAA had produced to Plaintiffs more than 1,200 pages of documents responsive to the Subpoenas. As mentioned, these documents included, but were not limited to, the CCP 1281.96 Data Collection Requirement Reports covering the time period

---

[2] Of the fifty-three files, the AAA confirmed that three were duplicates, bringing the actual number of separate files at issue down to fifty. Nonetheless, for ease of reference, the AAA will discuss the fifty-three files that Plaintiffs' counsel initially identified.

5

January 1, 2003, to June 30, 2011 (the "CCP Reports"). The CCP Reports provide Plaintiffs with much of the consumer-arbitration related information they seek via their Subpoenas, including the identity of the non-consumer party, the type of dispute, the identity of the arbitrator, the amount of the claim, whether the consumer was represented by counsel, the date of disposition, the type of disposition (withdrawn, awarded, settled, or otherwise), the total arbitration fee, and the allocation of the fee between the consumer and non-consumer parties. The AAA also produced, among other documents, the arbitration rules and fee schedules relating to consumer disputes for the requested twelve-year period, and its Consumer Due Process Protocol and Consumer Debt Collection Due Process Protocol Statement of Principles.

As evidenced by the foregoing discussion, the AAA's efforts to comply with the Subpoenas have entailed numerous members of the AAA's staff devoting substantial time to the process of identifying, locating, gathering, examining, redacting as needed, and producing information that Plaintiffs contend is relevant to the issues being litigated in the Overdraft Actions. In short, the efforts to which the AAA has gone in responding to the Subpoenas' document requests have been extensive, the AAA has been highly responsive to Plaintiffs' stated needs, and the AAA's production of documents has been broad.

    **IV. Plaintiffs also Seek the Deposition of a Corporate Representative of the AAA to Testify About the Documents the AAA Has Produced and About Other Broad Topics**

Following the AAA's extensive document production, undersigned counsel for the AAA spoke with counsel for Plaintiffs about the corporate representative depositions requested in the Subpoenas. Counsel for the AAA explained that the documents the AAA produced constitute all or nearly all of what the AAA could provide as pertaining to the issues being litigated in the Overdraft Actions. Counsel for the AAA further explained that a corporate representative

knowledgeable about those documents could not likely provide any additional material information about their contents. Finally, counsel for the AAA described how producing such corporate representative(s) would involve bringing one or more representatives down from New York (where the AAA maintains its headquarters) to Miami – imposing a significant burden on the AAA that vastly outweighs whatever slight benefit Plaintiffs could hope to gain from the depositions.[3]

Counsel for the AAA also inquired about the topics on which Plaintiffs sought the deposition of a corporate representative, as the Subpoenas state only that the representative should be "knowledgeable of the Documents [the AAA] produce[d] in response to th[e] subpoena[s]." In response, Plaintiffs' counsel revised the proposed deposition topics to include those listed by the Court in its Ruling Deferring Ruling on Motion to Compel Arbitration, as well as a topic about the documents the AAA has produced. Specifically, Plaintiffs' counsel identified the following deposition topics: "(1) the availability of lawyers to litigate these low value claims individually due to the complex nature and potentially small recovery; (2) the number of overdraft-related complaints; (3) the number of and result of arbitrations; (4) waiver and futility of filing motions to compel; [and] (5) the documents produced by the American Arbitration Association in response to the subpoena."

The AAA should not be required to produce one or more deponents to attempt to provide testimony about these topics. With respect to the first topic ("the availability of lawyers to litigate these low value claims individually due to the complex nature and potentially small recovery"), the AAA has no way of knowing whether, as a general matter, lawyers are available to litigate such claims. Further, the CCP Reports that the AAA has produced to Plaintiffs

---

[3] Plaintiffs' counsel have since stated that they are willing to take these depositions in New York City (though the Amended Notice of Deposition continues to list the deposition location as being Miami).

identify whether a given consumer claimant was self-represented, which is in essence the sum total of the information that the AAA reasonably has on the question of the availability of lawyers to litigate consumer claims. Moreover, it would be impossible for the AAA to produce a deponent capable of testifying even about the broad question of how often lawyers appear in AAA consumer arbitrations relating to overdraft complaints without having that deponent first review every single AAA case file for arbitrations between consumers and banks. This would be an enormously burdensome undertaking.

With respect to the second and third topics ("the number of overdraft-related complaints" and "the number of and result of arbitrations"), again, the AAA has already provided Plaintiffs with the CCP Reports, which constitute the best information the AAA has about the topics. There is nothing else a deposition could add. With respect to the fourth topic ("waiver and futility of filing motions to compel"), it is hard to fathom how Plaintiffs believe the AAA could possibly have any information about those issues, as the AAA neither decides those issues nor takes any position with respect thereto. Finally, with respect to the fifth topic ("the documents produced by the American Arbitration Association in response to the subpoena"), the documents the AAA produced speak for themselves, and again, there is nothing further a deponent could add.[4]

In other words, the burden imposed on the AAA if this deposition is allowed to proceed would be astronomical, and greatly outweighs any benefit Plaintiffs could hope to obtain from the deposition. Moreover, much of the information Plaintiffs continue to seek can and should be obtained from the actual parties to this litigation, not from a non-party such as the AAA. Accordingly, the AAA brings the instant Motion.

---

[4] With respect to this last topic, counsel for the AAA offered to provide Plaintiffs with a business-records certification concerning the documents the AAA produced. Plaintiffs' counsel stated that such certification was neither requested nor required.

**ARGUMENT**

Pursuant to Rule 45(c)(3), Fed. R. Civ. P., a court may quash or modify a subpoena if, among other reasons, the subpoena "subjects a person to undue burden." Similarly, pursuant to Rule 26(c), Fed. R. Civ. P., "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." More specifically, it is established that, pursuant to Rule 26(c), "[t]he Court must balance the interests of the party seeking discovery with the interests of the party seeking the protective order." Bray & Gillespie IX, LLC v. Hartford Fire Ins. Co., 2008 WL 2695637, at *2 (M.D. Fla. July 3, 2008) (citing Farnsworth v. Proctor & Gamble Co., 758 F.2d 1545, 1547 (11th Cir. 1985) ("While Rule 26(c) articulates a single standard for ruling on a motion for a protective order, that of 'good cause,' the federal courts have superimposed a somewhat more demanding balancing of interests approach to the Rule.")).

Further, as this Court has observed, "the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they 'be construed to secure the just, speedy, and inexpensive determination of every action.'" In re Checking Account Overdraft Litigation, 2010 WL 5136043, at *1 (quoting Rule 1, Fed. R. Civ. P.; emphasis original). "To this end, the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .'" Id. (quoting Rule 26(c), Fed. R. Civ. P.). Accordingly, "[w]ith this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process." Id. Application of these established and salutary principles, particularly in light of the fact that the AAA is a non-party stranger to these

9

proceedings that has already devoted substantial time and effort to complying with Plaintiffs' stated needs, dictates that the instant Motion be granted and that the Court order that the August 26, 2011, depositions of one or more AAA corporate representative(s) not go forward.[5] The reasons are several.

First, as described above, the documents the AAA has already produced to Plaintiffs address most if not all of the areas of "limited discovery" that the Court has allowed Plaintiffs to undertake. See Order Deferring Ruling on Motion to Compel Arbitration, Granting Time to Conduct Limited Arbitration-Related Discovery, DE #1576, at p. 2 (emphasis added). These documents address, to the extent the AAA can address, "(1) the availability of lawyers to litigate these low value claims individually due to the complex nature and potentially small recovery; (2) the number of overdraft-related complaints; [and] (3) the number of and result of arbitrations." Id. While these documents do not address the fourth category of limited discovery the Court has allowed ("(4) waiver and futility of filing motions to compel"), the AAA does not have (and should not be expected to have) any responsive information, written or testimonial, about that subject. Moreover, the documents the AAA has produced speak for themselves, and there is little more one or more in-person depositions could provide about the issues relevant to the Overdraft Actions. Accordingly, no such depositions should be required.

Second, much of the discovery Plaintiffs seek via the Subpoenas – both written, which has already been produced, and testimonial, which is still being sought – is equally if not more readily available from the actual parties to the Overdraft Actions, viz., the Defendant banks.

---

[5] In this regard, the Federal Rules of Civil Procedure confirm that the pendency of this Motion to Quash and/or for a Protective Order suspends the date for the AAA to produce the requested deponent(s) until the Court rules on the Motion. See Rule 37(d)(2), Fed. R. Civ. P. ("A failure described in Rule 37(d)(1)(A) [which includes when a corporate representative deponent "fails, after being served with proper notice, to appear for that person's deposition"] is not excused on the ground that the discovery sought was objectionable unless the party failing to act has a pending motion for protective order under Rule 26(c).") (emphasis added).

10

This fact renders Plaintiffs' efforts to seek this same information from a stranger to this litigation, the AAA, all the more unduly burdensome. See, e.g., Fed. R. Civ. P. 26(b)(2)(C)(i) ("On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive."); E.E.O.C. v. Jack Marshall Foods, Inc., 2010 WL 55635, at *4 (S.D. Ala. Jan. 4, 2010) (quashing subpoenas the defendant issued to non-parties where discovery sought could be obtained from, among others, the plaintiffs in the action); Bray & Gillespie, 2008 WL 2695637, at *2 (stating, in quashing subpoenas issued to defendants' counsel, "I find, pursuant to Rule 26(b)(2)(C)(i), that discovery of the claims handling process, and factual information and documents related thereto, can be obtained from individuals other than [defendants' counsel] more conveniently and with less burden than permitting [plaintiff] to depose the defendants' outside trial counsel"); cf. In re Checking Account Overdraft Litigation, 2010 WL 5136043, at *4 ("Defendants already have this information in their own bank records, making it duplicitous to request the same from Plaintiffs."). For this reason as well, no corporate representative depositions should be required.

Third, as discussed above, producing the requested corporate representative(s) for deposition would not pose just a minor inconvenience for the AAA. Rather, this process would require significant attention by one or more AAA representatives at the AAA's New York City headquarters, as well as by the AAA's in-house and outside legal counsel. Such process would inherently involve not only a cost burden on the AAA, but also the burden of diverting the representative's(s') focus and attention away from his, her, or their normal work responsibilities at the AAA. Such significant burden on the AAA vastly outweighs whatever slight benefit Plaintiffs could hope to gain from the depositions, further supporting the conclusion that no

corporate representative depositions should be required. See Farnsworth, 758 F.2d at 1548 (affirming entry of protective order with respect to non-party's production of additional discovery where Rule 26(c) balancing test confirmed that concerns of and burdens on non-party opposing discovery outweighed needs of party seeking discovery).

## CONCLUSION

Plaintiffs sought, and the Court allowed, "limited discovery" on various well defined arbitration-related issues. While the AAA submits that Plaintiffs exceeded the scope of their request and the Court's Order in issuing the Subpoenas to the AAA, the AAA nonetheless has gone to great lengths to cooperate with Plaintiffs and produce a significant number of documents in response to the Subpoenas. Requiring one or more corporate representatives to appear for depositions about these documents, however, imposes a burden that vastly outweighs any benefits Plaintiffs may hope to gain from these depositions. See Bray & Gillespie, 2008 WL 2695637, at *2 (observing that pursuant to Rule 26(c), "[t]he Court must balance the interests of the party seeking discovery with the interests of the party seeking the protective order"). Accordingly, and for all of the foregoing reasons, the Court should grant this Motion and enter an order either quashing or entering a protective order with respect that portion of the Subpoenas seeking such depositions.

## CERTIFICATE OF GOOD-FAITH CONFERRAL

Pursuant to Local Rule 7.1.A.3, it is hereby certified that prior to filing the instant Motion, counsel for the AAA conferred with counsel for Plaintiffs in a good-faith effort to resolve by agreement the issues raised in this Motion, but was unsuccessful in doing so.

Respectfully submitted,

MURAI, WALD, BIONDO
& MORENO, P.A.
1200 Ponce de Leon Boulevard
Coral Gables, FL  33134
Tel:  (305) 444-0101
Fax: (305) 444-0174


By:     s/ Gerald B. Wald          .
      Gerald B. Wald
      Florida Bar No. 215112
      gwald@mwbm.com
      Allen P. Pegg
      Florida Bar No. 597821
      apegg@mwbm.com


**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that a true and correct copy of the foregoing Motion was electronically filed with the Clerk of the Court by using the CM/ECF system this 22d day of August, 2011, which will serve a Notice of Filing on all counsel of record.


By:     s/ Allen P. Pegg          .