UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION,

MDL No. 2036

_____/

THIS DOCUMENT RELATES TO:

*Powell-Perry et al. v. Branch Banking & Trust Company*
S.D. Fla. Case No. 10-cv-20820-JLK
M.D. N.C. Case No. 09-cv-00619

*Barras v. Branch Banking & Trust Company*
S.D. Fla. Case No. 10-cv-20813-JLK
M.D. N.C. Case No. 09-00678

*Given v. M&T Bank Corporation*
S.D. Fla. Case No. 10-cv-20478-JLK
Md. Case No. 09-cv-02207

*Hough et al. v. Regions Financial Corporation et al.*
S.D. Fla. Case No. 10-cv-20476-JLK
N.D. Ga. Case No. 09-02545

*Buffington, et al. v. SunTrust Banks, Inc.*
S.D. Fla. Case No. 09-cv-23632-JLK
N.D. Ga. Case No. 09-01558

_____/

## ORDER DENYING RENEWED MOTIONS TO COMPEL ARBITRATION

**THIS CAUSE** comes before the Court upon Defendants' Renewed Motions to

Compel Arbitration.[1]  The Court is fully briefed in the matter and proceeds having had

the benefit of oral argument.  (DE #1840).

---

[1] Defendant Branch Bank and Trust's ("BB&T") Renewed Motion to Compel Arbitration (DE # 1560),
filed in Powell-Perry et al. v. Branch Banking & trust Company, 10-cv-20820-JLK ("Powell-Perry");

1

## I.    Introduction

This is a class-action suit brought on behalf of accountholders at a variety of banks who claim the Defendant banks unlawfully charged them excessive overdraft fees.[2] This Court denied earlier-filed Motions to Compel Arbitration by the Defendant Banks in the Omnibus Order Denying Motions to Compel Arbitration of May 10, 2010 (DE # 447). The Banks appealed. Upon remand by the Eleventh Circuit Court of Appeals for consideration in light of the recent United States Supreme Court opinion in *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740 (2011), the Parties filed Renewed Motions to Compel Arbitration.

## II.    Background

Plaintiffs in the five above-styled cases held checking accounts at four banks: Branch Banking & Trust Company ("BB&T"), M&T Bank Corporation ("M&T"), Regions Financial Corporation ("Regions"), and SunTrust Banks, Inc. ("Suntrust"). All five Plaintiffs' accounts are governed by deposit agreements with their respective banks ("Agreements" or "Bank Services Agreement" or "BSA"). All five of the Agreements contain arbitration provisions purporting to require arbitration of any claims related to Plaintiffs' accounts at the election of either Plaintiffs or the respective Banks.

Although the Federal Arbitration Act 9 U.S.C. § 1, *et seq.* ("FAA") generally requires enforcement of arbitration agreements, the FAA's "Savings Clause" permits

---

Defendant BB&T's Renewed Motion to Compel Arbitration (DE # 1562), filed in Barras v. Branch Banking & Trust Company, 10-cv-20813-JLK ("Barras"); M&T Bank Corporation's ("M&T") Renewed Motion to Compel Arbitration (DE # 1563), filed in Given v. M&T Corporation, 10-cv-20478-JLK ("Givens"); Regions Financial Corporation and Regions Bank's ("Regions") Renewed Motion to Compel Arbitration (DE # 1561), filed in Hough et al. v Regions Financial Corporation et al.; 10-cv-20476-JLK ("Hough"); and SunTrust Bank, Inc.'s ("SunTrust") Renewed Motion to Compel Arbitration (DE # 1583), filed in Buffington, et al. v. SunTrust Banks, Inc., 09-23633-JLK ("Buffington").

[2] For a more in-depth treatment of the facts underlying this case, see *In re Checking Account Overdraft Litig.*, 654 F.Supp. 2d 1302, 1306 (S.D. Fla. 2010).

courts to refuse to uphold an arbitration agreement "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Relying on the Savings Clause, the Court's May 10, 2010 Order held the five arbitration agreements at issue were unconscionable under applicable state law,[3] and thus not enforceable.[4] At the time, the inclusion of a class-action waiver in an arbitration agreement was a significant factor weighing in favor of finding the agreements unconscionable, and thus unenforceable, under the law of all four states at issue. *See, e.g., Tillman v. Commer. Credit Loans, Inc.*, 655 S.E.2d 362, 373 (N.C. 2008) (finding class-action waiver worked with other factors to render arbitration agreement unconscionable because it "contributes to the financial inaccessibility of the arbitral forum"); *Herron v. Century BMW*, 387 S.E. 525, 536 (S.C. 2010) (affirming denial of motion to compel arbitration because class action waiver in arbitration agreement was unconscionable); *Walther v. Sovereign Bank*, 872 A.2d 735, 749–53 (Md. 2005) (explaining prohibition on class actions in arbitration clause not enough *alone* to invalidate agreement to arbitrate) (emphasis added); *Dale v. Comcast Corp.*, 498 F.3d 1216, 1224 (11th Cir. 2007) (holding arbitration agreement unenforceable because the class action waiver therein was unconscionable under Georgia law). As a result, although the Court engaged in an extensive case-by-case analysis of each Agreement, the Court relied on the class-action waiver factor in the earlier decision denying arbitration. (DE #447 at pp. 6–9, 12, 14–15, 16–20). Now, in light of

---

[3] Specifically, the Court considered Defendants' Motions in the context of contract law from the following states: North Carolina, South Carolina, Maryland, and Georgia. The Court determined the laws of these states to be applicable pursuant to the Parties' Agreements and a choice-of-law analysis that will not be repeated here, as no change in the law since May 10, 2010, has altered that analysis.

[4] The Supreme Court has previously held that state law determines the validity of an arbitration agreement where the underlying law at issue, rather than arbitration agreements generally, is at issue. *See Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996).

*Concepcion* and the mandate of the Eleventh Circuit, the Court reconsiders its ruling on unconscionability, without consideration of the class-action waivers in the Agreements.

## III.   Discussion

### A.   *Concepcion*

The United States Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) held a state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA is preempted by the FAA. 131 S. Ct. at 1753. More specifically, the Court struck down a California common law rule requiring a finding of unconscionability in arbitration agreements containing class action waivers,

> when the [class-action] waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.

*Id.* at 1746. In finding the so-called "*Discover Bank* rule"[5] preempted by the FAA, the Court explicitly rejected the argument that "class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system," finding instead that, "States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." *Id.* at 1753.

Notably, the Supreme Court acknowledged that the terms of the specific arbitration agreement in *Concepcion* was extremely consumer-friendly, and that under that agreement, "aggrieved customers who filed claims would be essentially guaranteed to be made whole." *Id.* In *Concepcion*, AT&T customers challenged AT&T's practice

---

[5] The rule is named for the case which announced it: *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005).

of charging them sales tax on cellular phones that were advertised as free. *Id.* at 1745. The arbitration agreement the plaintiffs signed with AT&T required that: (1) AT&T pay all costs for nonfrivolous claims; (2) the arbitration take place in the county in which the customer was billed; (3) for claims of $10,000 or less, the customer may choose whether the arbitration proceeds in person, by telephone, or based only on submissions; and (4) the arbitrator may award any form of individual relief. *Id.* at 1744. The Agreement also "denies AT&T the ability to seek reimbursement of attorneys' fees, and, in the event that a customer receives an arbitration award greater than AT&T's last settlement offer, requires AT&T to pay a $7,500 minimum recovery and twice the amount of the claimant's Attorneys' fees." *Id.* Accordingly, the Court found the claim in *Concepcion* "was most unlikely to go unresolved" if forced into arbitration. *Id.* at 1753.

### B.     The Eleventh Circuit's Interpretation of *Concepcion*

In *Cruz v. Cingular Wireless, LLC*, - - F.3d - -, 2011 WL 3505016 (11th Cir. Aug. 11, 2011), for the first time since *Concepcion*, the Eleventh Circuit passed on the validity of a class action waiver in a consumer contract's arbitration agreement. The *Cruz* plaintiffs were customers of AT&T Mobility, LLC.[1] They filed a class action lawsuit under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq., challenging AT&T's practice of charging them a $2.99 monthly fee for an optional "Roadside Assistance Plan" that they never ordered. *Id.* at *2. Notably, before initiating cellular phone service, the *Cruz* plaintiffs signed the very same arbitration agreement, containing the same class action waiver, upheld by the Supreme Court in *Concepcion*. *Id.* at *2, *4.

---

[1] AT&T was formerly called Cingular Wireless.  Cingular Wireless was acquired by AT&T in 2006, and renamed AT&T Mobility, LLM in 2007. *Cruz*, 2011 WL 3505016 at *1, n.1.

After AT&T moved to compel arbitration, the *Cruz* plaintiffs argued the arbitration provision was unenforceable because the class action waiver therein "hindered the remedial purposes of FDUTPA by effectively immunizing AT&T from liability for unlawful business practices, in violation of public policy" under Florida law. *Id.* The *Cruz* plaintiffs raised a similar argument to that raised by the *Concepcion* plaintiffs: "The vast majority of these numerous, small-value claims against AT&T will go unprosecuted unless they may be brought as a class." *Id.* at *5. More specifically, they argued that (1) attorneys would refuse to represent AT&T customers for these claims,[6] and (2) absent class procedures, the vast majority of AT&T customers "would never know their rights have been violated." *Id.* The Eleventh Circuit squarely rejected these arguments:

> However, the *Concepcion* Court specifically rejected this public policy argument. . . . Thus, in light of *Concepcion*, state rules mandating the availability of class arbitration based on generalizable characteristics of consumer protection claims . . . are preempted by the FAA, even if they may be "desirable." Therefore, to the extent that Florida law would be sympathetic to the Plaintiffs' arguments here, and would invalidate the class waiver simply because the claims are of small value, the potential claims are numerous, and many consumers might not know about or pursue their potential claims absent class procedures, such a state policy stands as an obstacle to the FAA's objective of enforcing arbitration agreements according to their terms, and is preempted.

*Id.* at *6 (citations omitted). Thus, after *Concepcion* and *Cruz*, courts may not invalidate arbitration agreements simply because they contain class action waivers, even if, as a practical matter, the class action waiver has a "claim-suppressing effect." *Cruz*, 2011 WL 3505016 at *7.

---

[6] In *Cruz*, the plaintiffs also "presented a factual record not present in *Concepcion*," in the form of affidavits of attorneys who "concluded it would not be cost-effective for them to pursue [plaintiffs'] claims against AT[&T] except on an aggregated basis." *Cruz*, 2011 WL 3505016 at *7.

## IV.   Analysis

### A.   The Appropriate Forum for Arbitrability Determinations

As a threshold matter, the Court must determine whether this Court or an arbitrator should determine whether the respective Plaintiffs' claims are arbitrable. Each of the agreements contains a so-called "delegation clause," which delegates this threshold question of arbitrability to the arbitrator. *Barras v. Branch Banking & Trust,* Case No. 09-cv-00678, DE #17-4 at 31 ("Claims subject to this arbitration provision include Claims regarding the applicability of this provision or the validity of this or any prior Agreement."); *Powell-Perry v. Branch Banking & Trust*, Case No. 09-cv-00619, DE #31-14 at 1 (same); *Givens v. Mfrs. & Traders Trust*, Case No. 10-cv-20478, DE #1-4 at 18 ("Any issue regarding whether a particular dispute or controversy is a Claim that is subject to arbitration will be decided by the arbitrator."); *Hough v. Regions Fin. Corp.*, Case No. 10-cv-20476, DE #9-6 at 22 ("Any dispute regarding whether a particular controversy is subject to arbitration, including any claim of unconscionability . . . shall be decided by the arbitrator(s)."); *Buffington v. SunTrust Banks, Inc.*, Case No. 09-cv-23632, DE #5-2 at 22 ("[A]ny claim regarding the applicability, interpretation, scope or validity of this arbitration clause . . . will be resolved by individual . . . binding arbitration."). Accordingly, each of the Defendant Banks argues that an arbitrator should determine whether the arbitration agreements at issue are unconscionable.

However, "arbitration should not be compelled when the party who seeks to compel arbitration has waived that right." *Morewitz v. West of England Ship Owners Mut. Protection and Indem. Ass'n (Luxembourg)*, 62 F.3d 1356, 1355 (11th Cir. 1995). As the Eleventh Circuit explained in *Morewitz*:

> Waiver occurs when a party seeking arbitration substantially participates
> in litigation to a point inconsistent with an intent to arbitrate and this
> participation results in prejudice to the opposing party. Prejudice has been
> found in situations where the party seeking arbitration allows the opposing
> party to undergo the types of litigation expenses that arbitration was
> designed to alleviate.

*Id.* at 1356. Here, all four Defendant Banks asked this Court to determine this question in
their original motions to compel arbitration, filed well over a year ago. In the original
motions, none of the banks moved this Court to allow an arbitrator to determine this
threshold issue. Now, after forcing Plaintiffs to incur the expense of opposing the
original motions to compel in this Court, as well as on appeal to the Eleventh Circuit,
Defendants argue for the first time on remand that an arbitrator should determine this
issue. In light of the late stage of the proceedings on this question, Defendants have
waived their right to arbitrate the threshold issue of unconscionability.

## B.    Application of *Concepcion* to the Arbitration Agreements at Issue

As instructed by the Eleventh Circuit in the above-styled cases, the Court now
reconsiders its Order Denying Motions to Compel Arbitration (DE #447) in light of the
Supreme Court's analysis in *Concepcion*. As an initial matter, *Concepcion* did not
completely do away with unconscionability as a defense to the enforcement of arbitration
agreements under the FAA.     Rather, *Concepcion* expressly recognized that
unconscionability is a defense contemplated by the Savings Clause of the FAA: "This
savings clause permits agreements to arbitrate to be invalidated by 'generally applicable
contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that
apply only to arbitration or that derive their meaning from the fact that an agreement to
arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (quoting *Doctor's Assocs., Inc. v.
Casarotto*, 517 U.S. 681, 687 (1996)). Accordingly, this Court does not read *Concepcion*

to preclude consideration of all unconscionability defenses; rather, it simply narrows the permissible factors for consideration in the unconscionability analysis. The Court now reviews the Parties' Agreements for unconscionability based on terms other than the class action waivers.

### 1.    Procedural Unconscionability

All four of the applicable states' laws require findings of both procedural and substantive unconscionability. However, the majority opinion in *Concepcion* did not address procedural unconscionability, and the only reference to procedural unconscionability in any of the Supreme Court's *Concepcion* opinions simply noted that "a defense concerning the formation of the agreement to arbitrate, such as fraud, duress, or mutual mistake" remains unchanged by the majority opinion. *Id.* at 1775 (Thomas, J., concurring); *see also id.* n.* ("This Court said that fraud, duress, and unconscionability may be applied to invalidate arbitration agreements without contravening § 2. All three defenses historically concern the making of an agreement.") (Thomas, J., concurring) (quotations and citations omitted). Accordingly, the Court finds that *Concepcion* did not alter the factors relevant to an analysis of procedural unconscionability. The Court has already made findings on the procedural unconscionability of the Agreements at issue, and will not repeat that analysis here. (DE #447 at 4–5, 11–12, 13, 18 n.12, 20 n.15).

### 2.    Substantive Unconscionability

The Parties now before the Court have each argued for an extreme interpretation of *Concepcion*. Plaintiffs ask the Court to find that *Concepcion* has changed nothing, and that the class action waivers in the arbitration agreements may still be the basis for finding them unconscionable. Defendants, on the other hand, argue that *Concepcion* has

9

changed everything, and that unconscionability is no longer a defense to the enforceability of an arbitration agreement.   In a sense, both views are correct. *Concepcion* has changed everything, in that class action waivers have historically been a major factor in the unconscionability analysis under state law, and now, they can no longer be considered. And yet, *Concepcion* has changed nothing in that a thorough, case-by-case analysis of the applicable state law doctrine of unconscionability, applied to the specific terms of an arbitration agreement, is still required.   In sum, *Concepcion* has not relieved courts from their obligation to scrutinize arbitration agreements for enforceability on a case-by-case basis where one party resists arbitration; rather, *Concepcion* provides guidance as to what courts may consider when fulfilling that obligation. Accordingly, the Court reviews each of the five Agreements at issue in turn.

### a.   The SunTrust Agreement in *Buffington*

The Agreement between Defendant SunTrust and Plaintiff Buffington is governed by Georgia law.   For the reasons below, the Court finds the Agreement's provisions governing dispute resolution are substantively unconscionable.

Under the heading, "DISPUTE RESOLUTION," the Agreement provides that any disputes between SunTrust and Plaintiff will be resolved by individual binding arbitration.   *Buffington v. Suntrust*, Case No. 09-cv-23632 (DE #5-2 at 22).   The arbitration provision also includes a mandatory fee-shifting provision: "The prevailing party **shall** be entitled to an award of the costs and expenses of the arbitration including an award of reasonable attorneys' fees for any Claim(s) in which the party has prevailed." *Id.* at 24 (emphasis added).   In the same "DISPUTE RESOLUTION" section, the Agreement also provides for collection of any costs and expenses awarded to SunTrust:

> If you owe SunTrust money as a borrower, guarantor, or otherwise, and it becomes due, the Bank shall have the right . . . to use money from your Account to pay the debt even if withdrawal results in an interest penalty, dishonor of checks or other unavailability of funds. You agree that such a right includes the Bank's right to use proceeds from government benefits, including social security, to pay such debts . . . . [I]f you owe a debt on your Account, we may setoff against any asset you have, individually or jointly, at the Bank or any SunTrust affiliate.

*Id.* at 24–25.

The *Concecpcion* Court explained that the purpose of the FAA is "to allow for efficient, streamlined procedures tailored to the type of dispute," thereby "reducing the cost and increasing the speed of dispute resolution." *Concepcion*, 131 S. Ct. at 1749. The Court overturned California's *Discover Bank* rule, which "d[id] not *require* classwide arbitration, [but] allows any party to a consumer contract to demand it *ex post.*" *Id.* at 1750. This rule permitting consumer-plaintiffs to demand classwide arbitration "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of [the FAA]" because classwide arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 1753, 1751. The Supreme Court also explained this rule created an unacceptable allocation of risk:

> Class arbitration greatly increases risks to defendants. Informal procedures do of course have a cost: The absence of multilayered review makes it more likely that errors will go uncorrected. Defendants are willing to accept the costs of these errors in arbitration, since their impact is limited to the size of individual disputes, and presumably outweighed by savings from avoiding the courts. But when damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable. Faced with even a small chance of devastating loss, defendants will be pressured into settling questionable claims. . . . We find it hard to believe that defendants would bet the company with no effective means of review, and even harder to believe that Congress would have intended to allow state courts to force such a decision.

11

*Id.* at 1752.

This rationale requires a finding of unconscionability here. Under Georgia law, "an unconscionable contract is one abhorrent to good morals and conscience. It is one where one of the parties takes a fraudulent advantage of another. It is an agreement that no sane person not acting under a delusion would make and that no honest person would take advantage of." *Thomas v. T & T Straw, Inc.*, 561 S.E.2d 495, 497 (Ga. App. 2002) (quotations and citations omitted). "As to the substantive element of unconscionability, courts have focused on . . . the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties." *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 772 (Ga. 1996).

Here, the terms of the Agreement place nearly all the risks of engaging in dispute resolution on Plaintiff. If SunTrust wins in arbitration or small claims court,[7] it is automatically entitled to an award of costs and attorneys' fees. SunTrust may take its award directly from Plaintiff's account at any time, without notice to her. It may take funds from Plaintiff, even if they are jointly owned with someone else. SunTrust need not engage in any garnishment process or await the outcome of an appeal. Although the FAA entitles Plaintiff to challenge an adverse arbitral award in federal court within three months, SunTrust is not required to wait that long to deduct its costs and fees from her account. *See* 9 U.S.C. § 12 (providing notice of filing a motion to vacate or modify an arbitral award must be served within three months after arbitral award is delivered).

---

[7] The Agreement provides that Plaintiff may bring a claim in small claims court in lieu of binding arbitration. The analysis here is the same whether a plaintiff proceeds in arbitration or small claims court— in either circumstance, this Court would find the DISPUTE RESOLUTION terms of the Agreement substantively unconscionable because they afford SunTrust an avenue of immediate avenue of relief not afforded to Plaintiff, which effectively nullifies Plaintiff's opportunity for review in either forum. The Court focuses here on arbitration because in this case, SunTrust has moved to compel arbitration.

Furthermore, the FAA permits a district court to stay proceedings to enforce an arbitral award when that award is challenged in court. 9 U.S.C. § 12. But here, there are no enforcement proceedings to stay. In fact, SunTrust may very well have already deducted the funds from her account. In this way, Plaintiff loses all the protections of the FAA under the Agreement.

On the other hand, if Plaintiff wins, she too is entitled to an award of costs and attorneys' fees. However, Plaintiff does not enjoy the guaranteed, immediate recovery of that award at a time of her choosing. At worst, she will have to incur the expense of engaging in legal process to recover her award from SunTrust. At best, she will have to wait until SunTrust decides to pay her. If SunTrust exercises its right to challenge an arbitral award in federal court, it would be entitled to a stay of any enforcement proceedings by Plaintiff. Thus, while the Agreement strips Plaintiff of the protections afforded by the FAA, SunTrust enjoys these benefits in full.

It is this type of "reallocation[ of] the risks of the bargain in an objectively unreasonable or unexpected manner" that is substantively unconscionable under Georgia law. *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 774 (Ga. 1996). It is also the type of "greatly increase[d] risk" found unacceptable in *Concepcion*. Just as defendants are willing to accept the risk of "errors in arbitration since their impact is limited to the size of individual disputes," *Concepcion*, 131 S. Ct. at 1752, plaintiffs are willing to accept these risks because they can seek judicial redress under the FAA. Just as "the risk of an error will often become unacceptable," *id.*, to defendants forced into class arbitration, the risk will become unacceptable to plaintiffs forced to arbitrate without the protections provided by the FAA. For the same reasons that the Supreme Court "finds it hard to

13

believe that defendants would bet the company with no effective means of review," this Court finds it hard to believe that plaintiffs would bet what may be most of their personal assets when only SunTrust may obtain meaningful review. Because this is a bet whose risks are borne entirely by Plaintiff, the "DISPUTE RESOLUTION" terms of the SunTrust Agreement are unconscionable and will not be enforced by this Court. This is consistent with *Concepcion*—unlike a rule permitting plaintiffs to demand classwide arbitration, requiring that parties go into any dispute resolution forum bearing somewhat equal risk does not interfere with any goals of the FAA.[8] Requiring both sides to take the same steps to recover an award does not "make the process slower, more costly, and more likely to proceed to procedural morass than final judgment." *See Concepcion*, 131 S. Ct. at 1752. It simply makes the resolution of disputes more fair.

### b.   The Regions Agreement in *Hough*

The Agreement between Regions and Plaintiff Hough is also governed by Georgia law. It contains terms similar to the SunTrust Agreement in *Given*.

Specifically, the Regions Agreement provides that claims related to Plaintiff's account will be settled by binding arbitration under the FAA. *Hough, et al v. Regions Fin. Corp.*, Case No. 10-cv-20476 (DE #9-6 ¶ 34, at p.21). The Regions Agreement also provides for fee-shifting to the prevailing party in arbitration or court. However, unlike the fee-shifting provision in the SunTrust Agreement, the Regions fee-shifting clause only shifts fees one way. That is, the Agreement provides that Plaintiff will reimburse

---

[8] To be clear, by finding such an unequal allocation of risk unconscionable, this Court does not require that consumer agreements set up dispute resolution procedures that are risk-free for plaintiffs. It is true that the agreement in *Concepcion* contained exceptionally plaintiff-friendly terms that virtually eliminated the risk of non-recovery for plaintiffs asserting non-frivolous claims. However, *Concepcion* does not require that all agreements contain such overwhelmingly favorable terms. It is not the existence of some risk for Plaintiff here that renders this Agreement unconscionable; rather, it is the blatant one-sidedness of the risk.

Regions for its costs and expenses if Regions prevails, but does *not* provide that Regions will pay Plaintiff's costs and expenses if she prevails:

> **Costs and Attorneys' Fees.** You agree to reimburse us for our costs and expenses (including reasonable attorneys' fees) in connection with (i) any legal process affecting your account; (ii) any ownership or authority disputes regarding your account; or (iii) **any action or arbitration regarding this Agreement, your account or services linked to the account where we are the prevailing party. We may charge any account of yours for such costs and expenses without further notice to you.**

*Id.* ¶ 36 (emphasis added). Thus, this fee-shifting provision is even more one-sided than the one previously addressed in the SunTrust Agreement. Because this provision is otherwise virtually identical to that in SunTrust, and Georgia law also applies here, the Court's analysis in the preceding section is equally applicable here. Accordingly, the Court would find the provisions related to arbitration in the Regions Agreement unconscionable for the same reasons stated above.

However, Regions attempts to avoid the effects of its one-way fee-shifting provision in three ways. First, Regions argues that this Court may not even consider this clause in deciding the validity of its arbitration agreement because the fee-shifting clause is not itself part of the arbitration agreement. Regions's argument rests on the physical placement of the fee-shifting provision within the Agreement. Paragraph 34 of the Agreement is titled, "ARBITRATION AND WAIVER OF JURY TRIAL," and spans pages 21 to 23 of the Agreement. *Id.* ¶ 34. The fee-shifting provision comprises Paragraph 36 of the Agreement, and is located on page 24. Regions relies on *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), for the proposition that "a separate section of the Deposit Agreement cannot be used to invalidate the parties' arbitration provision." (DE #175,6 at 9). However, the Court finds that despite the

placement of the fee-shifting provision in a separately-numbered paragraph, it is in fact part of the arbitration agreement. It explicitly refers to fees and expenses "in connection with . . . any action or arbitration." *Hough*, Case No. 10-cv-20476 (DE #9-6 ¶ 36). Because it purports to govern the allocation of fees and costs in arbitration, it must be considered along with Paragraph 34.

*Buckeye Check Cashing* does not compel a different result. In that case, the Supreme Court stated: "As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." 546 U.S. at 445. In that case, the plaintiffs argued the entire contract was void because of a usurious finance charge, and the Supreme Court severed the otherwise valid arbitration agreement to permit an arbitrator to determine the validity of the entire contract. *Id.* at 443, 446 ("Because respondents challenge the Agreement, but not specifically its arbitration provisions, those provisions are enforceable apart from the remainder of the contract."). Unlike here, the arbitration provisions themselves were not challenged. In addition, the contract in *Buckeye Check Cashing* did not contain terms outside the provisions labeled "Arbitration" nonetheless purporting to govern arbitration between the Parties. Accordingly, *Buckeye Check Cashing* is inapposite.

Second, Regions puts forth a related argument. The Agreement provides for severability of unenforceable terms: "If any term or provision of this agreement to arbitrate disputes . . . is held to be invalid or unenforceable, the remaining provisions shall be enforced without regard to the invalid or unenforceable term or provision." *Hough*, Case No. 10-cv-20476 (DE #9-6, ¶ 34 p.23). Accordingly, Regions argues that the Court should simply sever any objectionable terms from the Agreement, and enforce

16

the arbitration clause without those terms.[9]  However, Regions has waived its right to rely on this term of the Agreement.  Under Georgia law, it is "well-recognized that a party to a contract may waive contractual provisions for his benefit." *Kusuma v. Metametrix, Inc.*, 381 S.E.2d 322, 324 (Ga. App. 1989).  "While normally the question of waiver is a matter for the jury, where, as here, the facts and circumstances essential to the waiver issue are clearly established, waiver becomes a question of law." *Forsyth County v. Waterscape Servs., LLC*, 694 S.E. 2d 102, 110 (Ga. App. 2010).  Here, Regions filed its original Motion to Compel Arbitration on November 4, 2009.  *Hough*, Case No. 10-cv-20476 (DE #22-1).  Obviously, the severance provision was in the Agreement at that time.  Regions did not raise severance of objectionable provisions in either its Motion or the Reply filed in support of its original Motion.  *Hough*, Case No. 10-cv-20476 (DE #22-1; DE #25).  Notably, Plaintiffs did raise the unconscionability of the fee-shifting provision at that time.  *Hough*, Case No. 10-cv-20476 (DE #23, at 9–10).  Accordingly, Regions could have asserted its severance argument then, but did not.  Instead, Regions waited a year and a half to raise it.  Regions has waived the right to invoke this provision.

Finally, Regions argues that the fee-shifting provision does not apply to Plaintiff's lawsuit.  Regions relies on the Declaration of A. Lee Hardegree, III, Assistant General Counsel in the Legal Department supporting Regions Bank.  *Hough*, Case No. 10-cv-20476 (DE #28).  According to Mr. Hardegree, the fee-shifting provision "does not apply to Plaintiffs' lawsuit and would not apply to any individual arbitration or small claims court proceeding filed by Plaintiffs," and the provision has never been utilized to collect

---

[9] Again, Regions relies on *Buckeye Check Cashing*.  However, for the reasons already explained above, *Buckeye Check Cashing* does not support Regions's argument for severance here.

fees in any arbitration or court proceeding.[10]  *Id.* ¶ 5, 7.  The Court may not rely on these statements to interpret the Agreement.  Rather, the Court must look to the "ordinary and legal meaning of the words employed."  *Ryan v. State Farm Mut. Auto. Ins. Co.*, 413 S.E.2d 705, 707 (Ga. 1992).  "If the terms of the contract are plain and unambiguous, the contract must be enforced as written."  *Id.*  Here, the terms are clear:  Plaintiff is liable to Regions for the costs and expenses of any dispute, including arbitration.  Nothing in those terms suggests the meaning Regions would now assign to them.

Because none of the arguments asserted by Regions alter this Court's finding that the arbitration provisions in its Agreement with Plaintiff are unconscionable, the Motion to Compel Arbitration by Regions must be denied.

<strong>c.      The BB&T Agreement in <em>Powell-Perry</em></strong>

The Agreement between BB&T and Plaintiff Powell-Perry is governed by North Carolina law.  The Agreement includes terms similar to those in the Regions Agreement.

Specifically, the Agreement provides:  "Any claim or dispute ("Claim") by either you or us against the other arising from or relating in any way to your account [or] this Agreement . . . will . . . be resolved by binding arbitration."  *Powell-Perry v. Branch Banking and Trust Co.*, Case No. 10-cv-20820 (DE #31-21, at 1).  The Agreement also contains a one-way fee-shifting provision almost identical to the one previously discussed in the Regions Agreement.  The Agreement states:

> **COSTS, DAMAGES AND ATTORNEYS' FEES.**  You agree to be liable to the Bank for any loss, costs or expenses, without limitation, reasonable attorneys' fees, the costs of litigation, and the costs to prepare or respond to subpoenas, depositions, child support enforcement matters, or other discovery the Bank incurs as a result of any dispute involving

---

[10] More specifically, Mr. Hardegree states: "To the best of my knowledge [the fee-shifting provision] is not intended to be utilized and Regions Bank has never utilized [it] to charge unilaterally an account holder's account for attorneys' fees, expenses, or costs associated with any court or arbitration proceeding." *Id.* ¶ 7.

> your account, and you authorize the Bank to deduct any such loss, costs or expenses from your account without prior notice to you. This obligation includes disputes between you and the Bank involving your account.

*Powell-Perry v. Branch Banking and Trust Co.*, Case No. 10-cv-20820 (DE #31-21, at 14).

Under North Carolina law, "substantive unconscionability . . . refers to harsh, one-sided, and oppressive contract terms." *Tillman v. Comm. Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008). "Such terms are generally characterized as being 'unreasonably favorable' to the other party to the contract." *Rite Color Chem. Co. v. Velvet Textile, Co.*, 411 S.E.2d 645, 649 (N.C. App. 1992). This Court has already explained why a fee-shifting provision, coupled with an unbounded right to simply seize fees and costs directly from a plaintiff's bank account, is unreasonably favorable to the Bank. Sec. IV(B)(2)(a), *supra* at 10–14. The Court now finds that these terms are so unreasonably favorable to BB&T that "it turns out that one side . . . is to be penalized by the enforcement of the terms of a contract so unconscionable that no decent, fair-minded person would view the ensuing result without being possessed of a profound sense of injustice." *Blaylock Grading Co. v. Smith*, 658 S.E.2d 680, 682 (N.C. App. 2008). Accordingly, the Court finds the arbitration provisions in BB&T's Agreement are unconscionable under North Carolina law.

BB&T raises two of the same arguments as Regions to avoid the effect of its one-way fee-shifting provision: (1) the fee shifting provision is outside the arbitration provision and thus may not invalidate the arbitration provision; (2) BB&T's contract contains a severability clause. *Powell-Perry v. Branch Banking and Trust Co.*, Case No. 10-cv-20820 (DE #31-21, at 1) ("If any provision, or a portion thereof, of this Agreement

. . . shall be declared void, illegal or unenforceable, the remainder of the provision or Agreement shall be valid and enforceable."). (DE #1757, at 7–8). BB&T's first argument is rejected for the same reason that the same argument was rejected when raised by Regions—BB&T may not avoid a finding that the arbitration provisions in its contract are unconscionable by hiding a particularly one-sided term in a different physical location within the contract.

BB&T's argument for severability is also rejected for the same reason that it was rejected above—BB&T has waived the severability provision in its contract. Under North Carolina law, "it is well established that a party may waive a contract right by an intentional and voluntary relinquishment." *Fairview Developers, Inc. v. Miller*, 652 S.E. 2d 365, 369 (N.C. App. 2007). "Although waiver is a mixed question of law and fact, it is solely a question of law when the facts are not in dispute." *Medearis v. Trustees of Meyers Park Baptist Church*, 558 S.E.2d 199, 206 (N.C. App. 2001). Here, the facts are not in dispute. BB&T first moved to compel arbitration September 30, 2009. *Powell-Perry*, Case No. 10-cv-20820 (DE #31-11; DE #31-23). BB&T did not invoke the severability clause in its Agreement at that time. *Powell-Perry*, Case No. 10-cv-20820 (DE #31-11; DE #31-23; DE #31-34). Now, after extensively litigating other issues related to arbitration for the past year and a half, BB&T seeks to simply sever out objectionable provisions from its Agreement. BB&T has waived its right to do so. *See, e.g.*, *Medearis*, 558 S.E. 2d at 207–208 (finding homeowners who learned of violation of restrictive covenant two years before attempting to enforce it waived right to enforce restrictive covenant).

20

For the foregoing reasons, the Court finds the arbitration provisions in BB&T's Agreement with Plaintiff Powell-Perry is unconscionable, and will not be enforced.

### d.    The BB&T Agreement in *Barras*

The Agreement between BB&T and Plaintiff Barras is governed by South Carolina law. The Agreement is identical to the Agreement between BB&T and Plaintiff Powell-Perry, discussed above. *See Barras v. Branch Banking & Trust Co.*, Case No. 10-cv-20813 (DE #17-4).

Under South Carolina law, a contract provision is unconscionable where it contains "terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 606 S.E.2d 757, 757 (S.C. 2004). As noted above, the Court has already explained why a fee-shifting provision, coupled with an unbounded right to simply take fees and costs directly from a plaintiff's bank account, is overly oppressive. Sec. IV(B)(2)(a), *supra* at 10–14.

BB&T raises the same arguments here as in *Powell-Perry*: (1) the fee shifting provision is outside the arbitration provision and thus may not invalidate the arbitration provision; (2) BB&T's contract contains a severability clause. (DE #1760, at 8–9). Those arguments are again rejected here, for the same reasons as in *Powell-Perry*. Despite its physical location apart from the section labeled "Arbitration Agreement," the fee-shifting provision nonetheless purports to apply to "**any** loss, costs or expenses . . . as a result of **any dispute** involving your account." *Barras v. Branch Banking & Trust Co.*, Case No. 10-cv-20813 (DE #17-4, at 14). Accordingly, the Court reads this provision as part of the agreement to arbitrate or litigate in small-claims court. Additionally, BB&T

has waived its right to invoke its severability clause. BB&T filed its original Motion to Compel Arbitration on March 18, 2010, and did not raise the issue of severability. *Barras*, Case No. 10-cv-20813 (DE #17-7; DE #17-11; DE #17-23). Under South Carolina law, "waiver is a voluntary and intentional abandonment or relinquishment of a known right . . . . A simple voluntary relinquishment of a right with knowledge of all the facts—an expression of intention not to demand a certain thing is sufficient to constitute a waiver." *City of North Myrtle Beach v. Lewis-Davis*, 599 S.E.2d 462, 466–67 (S.C. App. 2004). Waiver "may be either express or implied. An implied waiver results from acts and conduct of the party against whom the doctrine is invoked from which an intentional relinquishment of a right is reasonably inferable." *Lyles v. BMI, Inc.*, 355 S.E.2d 282, 285 (S.C. App. 1987). Here, BB&T's failure to invoke this provision of its Agreement for over a year is sufficient to constitute waiver. *See, e.g., Janasik v. Fairway Oaks Villas Horizontal Property Regime*, 415 S.E.2d 384, 387 (1992) (finding delay of several years in exercise of rights constituted waiver of rights).

### C.   The M&T Agreement in *Given*

Finally, the Bank Services Agreement between M&T and Plaintiff Given contains unique terms not addressed by this Court's original Order Denying Motions to Compel Arbitration (DE #447) and not addressed by *Concepcion*. Upon reconsideration, the Court finds these unique terms to be dispositive of the issue now before it, such that an unconscionability analysis in light of *Concepcion* is unnecessary.

"The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 627 (1985). M&T's Bank Services Agreement

22

provides: "Each dispute or controversy that arises out of or is related to your account with us . . . must be determined on an individual basis by binding arbitration." *Given v. Mfrs. & Traders Trust Co.*, Case No. 10-cv-20478 (DE #1-4, at 18). However, the Agreement goes on to categorically narrow the disputes subject to arbitration under it: "If any part of the relief request is not expressly stated as a dollar amount, the dispute or controversy will not be a Claim that is subject to arbitration." *Id.* Here, Plaintiff Given seeks both monetary relief and injunctive relief in her Complaint. Compl., *Givens*, Case No. 10-cv-20478 (DE #1, ¶¶ 1, 55(e), 58, 69(a)–(b), p.19). M&T construes Plaintiff's request for injunctive relief as mere "artful pleading," employed solely to avoid arbitration. (DE #1563 at 17). Specifically, M&T argues that Plaintiff cannot prevail on her claim for injunctive relief under Maryland law because she "makes no allegation of irreparable harm." *Id.*; *see, e.g. El Bey v. Moorish Science Temple of Am., Inc.*, 362 Md. 339, 355 (Md. 2001) ("Injunctive relief normally will not be granted unless the petitioner demonstrates that it will sustain substantial and irreparable injury as a result of the alleged conduct.").

The Court disagrees. As an initial matter, the Court is required to accept all well-pled allegations in the Complaint as true at the pleading stage, whether those allegations ultimately prevail or not. *See, e.g., Omar ex rel. Cannon v. Lindsey,* 334 F.3d 1246, 1247 (11th Cir. 2003). Accordingly, the Court will not presume Plaintiff seeks injunctive relief in bad faith, or to simply avoid arbitration. Furthermore, Maryland law finds the "irreparable harm" element satisfied "whenever monetary damages are difficult to ascertain or are otherwise inadequate." *Maryland-Nat'l Capital Park and Planning Comm'n v. Washington Nat. Arena*, 386 A.2d 1216, 1234 (Md. 1978). Here, the crux of

Plaintiff's Complaint is not only that she has been harmed in the past by excessive overdraft fees, but that she will be harmed again in the future if M&T is permitted to continue using the same re-ordering scheme alleged in her Complaint. Even full reimbursement of all the overdraft fees wrongfully charged to Plaintiff by M&T would be insufficient redress if M&T could simply continue to wrongfully charge Plaintiff overdraft fees in the future. Here, monetary damages would be "otherwise inadequate" to remedy Plaintiff's well-pled claims for relief. Accordingly, the Court finds that because part of Plaintiff's "relief request is not expressly stated as a dollar amount," the claims in her Complaint are not claims that Plaintiff and M&T ever agreed to arbitrate. Consequently, the Court will not compel Plaintiff to arbitrate them. M&T's Renewed Motion to Compel Arbitration must be denied.

## V.    Conclusion

Upon reconsideration in light of *Concepcion*, the Court finds the five arbitration agreements now before it are unconscionable and can not be enforced. For the foregoing reasons, the Renewed Motions to Compel Arbitration filed by BB&T, M&T, Regions, and SunTrust must be denied. Accordingly, upon careful review of the record and the Court being otherwise fully advised, it is hereby

**ORDERED, ADJUDGED and DECREED as follows:**

1.    SunTrust's Renewed Motion to Compel Arbitration in *Buffington* **(DE #1583)** be, and the same is, **DENIED.**

2.    Regions's Renewed Motion to Compel Arbitration in *Hough* **(DE #1561)** be, and the same is, **DENIED.**

3.      BB&T's Renewed Motion to Compel Arbitration in *Powell-Perry* (**DE # 1560**) be, and the same is, **DENIED.**

4.      BB&T's Renewed Motion to Compel Arbitration in *Barras* (**DE #1562**) be, and the same is, **DENIED.**

5.      M&T's Renewed Motion to Compel Arbitration in *Given* (**DE #1563**) be, and the same is, **DENIED.**

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida this 1st day of September, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Cc:  All counsel of record