IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA; MIAMI DIVISION

CASE NO. 1:09-MD-2036-JKL

| | |
|---|---|
| IN RE: CHECKING ACCOUNT<br>OVERDRAFT LITIGATION<br><br>MDL No. 2036<br><br><br>THIS DOCUMENT RELATED TO:<br><br>*Stephen T. Anderson v. Compass Bank*<br>N.D. Fla. Case No. 1:10-cv-00208<br>S. D. Fla. Case No. 1:11-cv-20436-JLK | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPASS BANK'S OPPOSITION TO PLAINTIFF ANDERSON'S MOTION TO DEFER RULING ON COMPASS BANK'S RENEWED MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Anderson has not met his burden of demonstrating the need for discovery, which would further unnecessarily delay resolution of Compass Bank's arbitration motion. Therefore this Court should follow its prior ruling denying such discovery in the Second Tranche matters. **[DE #1767]**. Anderson claims discovery is necessary on the following issues: (1) "contract formation"; (2) "unilateral change in terms"; (3) the "number of arbitrations that have taken place between Compass and its customers"; and (4) "all the steps taken to inform customers of their arbitration agreements." Anderson is mistaken on each.

I.   **ANDERSON HAS FAILED TO MEET HIS BURDEN.**

  A.   **No Discovery Is Necessary On "Contract Formation" Issues Because Anderson's Declaration Acknowledges His Signature And Concedes That He Received Documents When He Opened His Account With Compass Bank.**

Anderson's motion does not specify why discovery is necessary on "contract formation." In fact, his own declaration settles the contract formation issues. In his declaration, Anderson admits that he (1) received the documents, and (2) signed the signature card. **[DE # 1798-1]** (Anderson Decl. at ¶¶ 6, 8) (admitting he "signed some papers and was handed a large folder that contained a package of papers" and was told that the package "contained papers relating to my

account;" "I am not denying that the word 'arbitration' may have been in some of the papers contained in the Deposit Booklet.").

Furthermore, Anderson has admitted that he has never read any of the account agreements. **[DE # 1798-1]** (Anderson Decl. ¶¶ 6–8) (acknowledging he never read the account agreement until he began "investigating" Compass Bank's overdraft policies in 2010, shortly before he filed suit). Anderson's failure to read the contract is dispositive of his procedural unconscionability argument under Florida law. It is well established that "[i]n Florida, a party to a contract is not 'permitted to avoid the consequences of a contract freely entered into simply because he or she elected not to read and understand its terms before executing it or because in retrospect, the bargain turns out to be disadvantageous.'" *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1331, 1334 (Fla. 3d DCA 2006) (refusing to consider plaintiff's argument that an arbitration provision was procedurally unconscionable in light of plaintiff failing to read contract); *see also Frantz v. Shedden*, 974 So. 2d 1193 (Fla. 2d DCA 2008) (same); *Lopez v Ernie Haire Ford, Inc.*, 974 So. 2d 517 (Fla. 2d DCA 2008) (party cannot establish procedural unconscionability when plaintiff had the opportunity but failed to read agreement).

> **B.   No Discovery Is Necessary On "Change In Terms" or "Contract Formation" (1) Because Anderson Affirmatively Pleads And Attaches The Deposit Agreement To His Complaint And (2) Because All of the Deposit Agreements Include Arbitration Agreements.**

Anderson likewise fails to explain why he needs discovery on "change in terms." The amendments to the Deposit Agreement do not change the result on arbitration because arbitration is due under **any** of the deposit agreements. Each of the deposit agreements (2002, 2004, 2008) included arbitration clauses and class action waivers. Moreover, Anderson has made no argument about any specific material difference between these agreements. If he were to make such an argument, it would merely bear on the question of which arbitration agreement was to be applied by the arbitrator (a decision for the arbitrator) rather than whether arbitration was required at all.

Moreover, Anderson's own Complaint moots any "change in terms" or "contract formation" issues because he attaches a copy of Compass Bank's deposit agreement to his Complaint. His Complaint states that "**a true and correct copy**" of the Consumer Deposit Agreement is attached to the Complaint. (Comp. ¶ 37) (emphasis added). In his Complaint, Anderson claims that Compass Bank's actions "constitute[] a breach of the express terms of the

2

Deposit Agreement." (Comp. ¶ 92)  Anderson cannot simultaneously claim that he is not bound by the terms of the Consumer Deposit Agreement, which contains the arbitration provision, and also maintain a claim for breach of contract against Compass Bank. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177 (11th Cir. 2009) ("A party is bound by the admissions in his pleadings."); *Rampersad v. Primeco Pers. Commc'ns., L.P.*, No. 01-6640, 2001 U.S. Dist. LEXIS 26037, at *4 (S.D. Fla. Oct. 16, 2001) (plaintiff "**cannot claim that the contract was not formed to avoid arbitration and concurrently sue for breach of that contract**") (emphasis added); *see also International Paper Co. v. Schwabedissen Machinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981); *Avila Group, Inc. v. Norma J. of Cal.*, 426 F. Supp. 537, 542 (S.D.N.Y. 1977).

### C. The Eleventh Circuit Has Directly Held That Discovery On the "Number of Arbitrations" Is Not Relevant.

Anderson also seeks discovery on statistics related to consumer arbitrations between Compass Bank and its customers.  Less than one month ago, the Eleventh Circuit was confronted with this **exact evidence** and held that it was irrelevant.  In *Cruz v. Cingular Wireless, LLC*, No. 08–16080, 2011 WL 3505016, at *7 (11th Cir. Aug. 11, 2011), the Eleventh Circuit noted that "[t]he Plaintiffs also provide some statistical evidence . . . **showing the 'infinitesimal' percentage of ATTM subscribers who have arbitrated a dispute with ATTM**." (emphasis added).  In response, however, the Eleventh Circuit held that "[t]he Plaintiffs' evidence goes only to substantiating the very public policy arguments that were **expressly rejected by the Supreme Court in *Concepcion*** — namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted." *Id.* at *8 (emphasis added).  Moreover, as Compass Bank explained in its reply in support of its arbitration motion **[DE # 1822]**, which it incorporates by reference, Anderson's other unconscionability arguments are also preempted.  Further, this Court's order of September 1, 2011 relating to Defendants BB&T, SunTrust, Regions and M&T Bank indicates that Anderson's unconscionability arguments relating to the class action waiver are preempted and therefore discovery on those arguments would be irrelevant (for instance, the "number of arbitrations").  **[DE # 1853, at 9]** (concluding that Concepcion "narrows the permissible factors"

3

for unconscionability and then stating: "Court now reviews the Parties' Agreements for unconscionability based on terms other than the class action waivers.")

### D. Anderson Has No Standing To Litigate What Other Customers Were Told and It Is Irrelevant To His Arbitration Motion.

As of today, this is a single plaintiff case. While Anderson may plead a class action, none has been certified and it is far too premature to even consider class certification. Simply put, Anderson has no standing to raise the question of whether Compass Bank has taken appropriate steps to "inform [other] customers of their arbitration agreements." He also provides no explanation for why Compass Bank's actions regarding other customers have any bearing whatsoever on this arbitration motion.

In fact, virtually all of Anderson's discovery requests seek information that relates to persons other than himself.[1] These other persons are not parties to this case. In fact, even the putative class members are not parties to this case yet. Therefore, discovery about other persons is not relevant to whether the arbitration clause is enforceable against Anderson – and Anderson fails to argue why such discovery would be relevant to his personal claim. *See Livingston,* 2001 WL 709465, at *2 (warning plaintiffs not to propound "requests for general statistical information" in their arbitration discovery, "because such information is irrelevant as to Plaintiffs' costs in this specific case"). *Chen-Oster v. Goldman, Sachs & Co.*, No. 10-6950, 2011 WL 803101, at *1, *4 (S.D.N.Y. Mar. 1, 2011) (denying request for "irrelevant" discovery about defendant's general "custom and practice regarding arbitration" where the arbitration agreement

---

[1] None of Anderson's interrogatories relate to Anderson specifically – but instead mainly seek historical information regarding other arbitrations with other individuals. Moreover, the interrogatories seek information for years before Anderson ever opened an account at Compass Bank and they seek information regarding predecessor banks in different states prior to their acquisition by Compass Bank. None of this information is relevant to whether Anderson's own claims are subject to arbitration. Likewise, all of the requests for admission refer to other consumers. In fact, virtually all of them relate to historical records of past arbitrations with other persons (for instance, the percentage of customers who have had arbitrations with Compass Bank; the number of arbitrations in which attorneys appeared, whether experts testified in those proceedings, whether other consumers recovered overdraft fees, what discovery, if any, occurred in those other proceedings, what Compass Bank has communicated to the AAA, and whether other customers received attorney fees or expert fees in those other arbitrations). The requests for production are virtually the same – asking for documents related to these same issues. Of the 26 requests for production, only 4 could be argued to relate directly to Anderson (and those are not relevant).

4

at issue laid out plaintiff's "rights and obligations with respect to arbitration of her individual claims").

## II. THE DISCOVERY ISSUED BY ANDERSON DOES NOT COMPORT WITH CASE LAW WHICH RARELY ALLOWS ARBITRATION DISCOVERY AND REQUIRES THAN ANY ARBITRATION DISCOVERY THAT IS ALLOWED BE VERY NARROWLY TAILORED TO RELEVANT ARBITRATION ISSUES.

The entire point of arbitration is to avoid just this type of expensive fishing expedition. *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004) ("[O]ne of the principal benefits of arbitration" is "avoiding the high costs and time involved in judicial dispute resolution."); *see also Concepcion*, 131 S. Ct. 1740, 1751 (2011) (explaining that arbitration allows parties to benefit from lower costs, greater efficiency and speed, informality, confidentiality, and procedural simplicity).

Anderson has submitted 36 pages of discovery requests – a total of 60 items (including subparts) – that cover over 11 years and unrelated predecessor banks and may be demanding the searching of an ocean of electronically stored information ("ESI").[2] Among many other things, Anderson demands "all requests for discovery propounded upon You in any arbitration proceeding involving a Consumer Account [since 1999]" and "all Documents pertaining to the one hundred (100) most recent arbitrations involving a Consumer Account(s) including all pleadings, Communications, notices, awards, orders and judgments." Anderson also appears poised to demand a broad Rule 30(b)(6) deposition and perhaps other depositions.

### A. Discovery Is Neither Routine Nor Necessary In the Context of A Motion To Compel Arbitration, And It Should Not Be Permitted Here.

Contrary to Anderson's argument, courts do ***not*** routinely permit arbitration-related discovery, particularly where the plaintiff fails to show how discovery will impact the question of enforceability. *See e.g.*, *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1317-18 (11th Cir. 2005) (affirming denial of arbitration-related discovery where plaintiff "failed to show how the discovery would have any impact on the enforceability of the arbitration clause"); *Gates v.*

---

[2] The enormous expenses of searching, reviewing, and producing ESI discovery is widely recognized by courts. *See CBT Flint Partners, LLC v. Return Path, Inc.*, 676 F.Supp.2d 1376, 1381 (N.D.Ga. 2008), *rev'd on other grounds*, CBT Flint Partners, LLC v. Return Path, Inc., 2011 WL 3487023 (11th Cir. Aug 10, 2011) ("The enormous burden and expense of electronic discovery are well known"); *Covad Communications Co. v. Revonet, Inc.*, 258 F.R.D. 5, 16 (D.D.C. 2009) ("Production of electronic information can quickly become quite expensive and disproportionate to what is truly at stake in the lawsuit.").

5

*Veravest Investments, Inc.*, No. 04-146, 2004 U.S. Dist LEXIS 10104, at *29-30 (D. Or. May 25, 2004) (rejecting request for arbitration-related discovery that was not relevant to determination of motion to compel); *Bank One, N.A. v. Coates*, 125 F. Supp. 2d 819, 828-29 (S.D. Miss. 2001) (same); *Richardson v. Virgin Islands Port Authority*, 2010 WL 1641154 at *10 (D.Virgin Is. Apr. 21, 2010) (compelling arbitration and denying discovery because there was "little doubt as to the validity of the parties' contractual relationship. Both Plaintiff and Defendant have produced copies of the signed Management Agreement, which contains an unambiguous provision to arbitrate."); *AXA Equitable Life Ins. Co. v. Infinity Fin. Group, LLC*, 608 F.Supp.2d 1330, 1332-33, 1342-43 (S.D. Fla. 2009) (Hurley, J.) (adopting Magistrate Judge Hopkins' recommendation to deny plaintiff's request for "limited discovery" regarding the role of the defendant because it was not sufficiently relevant to the arbitration motion).[3]

Courts approach requests for pre-arbitration discovery with skepticism for good reason. Pre-arbitration discovery is inconsistent with the "simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005). Even if such discovery is permitted, it must be narrowly tailored to the specific questions related to the individual claims. *See, e.g., Livingston v. Assocs. Fin., Inc.*, No. 01-1659, 2001 WL 709465, at *2 (N.D. Ill. June 25, 2011) (permitting "strictly limited" discovery relating to specific plaintiffs and warning against a "fishing expedition").

Anderson claims that "Discovery relating to arbitration-related issues is routinely granted." However, none of his cases actually stand for such a proposition. Each of the cases

---

[3] *Gillespie v. Colonial Life & Accident Ins. Co.*, No. 08-689, 2009 U.S. Dist. LEXIS 26310, at *21-22 (W.D. Pa. Mar. 30, 2009) (denying discovery request and compelling arbitration. Where a plaintiff "already possesses information as to the AAA filing fees and costs, and she has sole custody of the information regarding her ability to pay, *e.g.*, her current income, expenses, etc., . . . discovery is not needed."); *O.N. Equities Sales Co. v. Broderson*, 2008 WL 427468 at *4 (E.D.Mich. Feb. 14, 2008) (compelling arbitration and denying request for discovery on whether there was an agreement to arbitrate and arbitration costs and procedures); *Stephens v. Wachovia Corp.*, 2008 WL 686214, at *8 (W.D.N.C. Mar. 7, 2008) (denying request for discovery on costs where "ample evidence" already established anticipated fees); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 503 (4th Cir. 2002) (rejecting request for discovery on arbitration motion); *Smith v. Steinkamp,* 2002 WL 1364161, at *6 (S.D. Ind. May 22, 2002) (rejecting discovery on arbitration costs where arbitration organization made fee schedule "readily accessible").

that he discusses in the text relate solely to the discovery of the filing fees and costs charged by the arbitration association (an issue that was relevant in those cases). In sharp contrast, Anderson seeks discovery about all sorts of things – none of which include the costs and filing fees for the AAA (which would not be relevant since Compass Bank has agreed to pay all such AAA fees and costs). **[DE #1771-2 at ¶17]**. In addition, Compass Bank's arbitration provision has no fee shifting provision for either side, although Anderson could recover attorney fees and costs if the substantive law allows – something which Compass Bank expressly pointed out in its Reply in Support of its Renewed Motion to Compel Arbitration and Stay and which Anderson expressly demanded in his Complaint. **[DE # 1822, at 13; DE # 1822-6 ¶¶11, 13; DE # 1822-7 ¶¶11, 12; DE # 1822-8 ¶¶11, 12; DE # 1771-6, at 15]** ("Unless inconsistent with applicable law, each party shall bear the expense of its respective attorney, expert and witness fees, regardless of which party prevails in the arbitration."). Moreover, as Compass Bank explained in its arbitration motion, the Deposit Agreement includes a severance clause allowing an unconscionable provision (other than the class action waiver) to be severed. *E.g.* **[DE #1771-4, at 20; DE # 1771-6, at 14, 16]**. What is common about Anderson's discovery, however, is that it seeks information that is almost entirely about other customers, not himself.

The cases cited by Anderson in the text of his brief actually sharply limit discovery, therefore supporting Compass Bank's position. For instance, Anderson relies mainly upon *Blair v. Scott Specialty Gases*, 283 F.3d 585 (3d Cir. 2002). There, the court allowed discovery on the costs to be charged by the arbitration association but noted that "discovery is not ordinarily undertaken at such an early stage of a proceeding that is governed by an arbitration agreement" but because the arbitration fees were the main issue at stake the court would allow discovery "limited to the narrow issue of the estimated costs of arbitration and the claimant's ability to pay." No doubt the Third Circuit would be shocked by the 36 pages of discovery issued by Anderson seeking over 11 years of data, including information from predecessor banks that were subsequently acquired by Compass Bank and pertaining to every single consumer account arbitration by Compass Bank in those 11 years.

Likewise, Anderson relies heavily upon *Livingston v. Assoc. Fin., Inc.*, 2001 WL 709465 (N.D. Ill June 25, 2001). There, a magistrate judge recommended allowing discovery "strictly limited to the likely costs that Plaintiffs will incur in this particular case if Plaintiffs are compelled to arbitrate, as well as procedures regarding the waiving of fees and costs." *Id.* at *2.

7

Further, the *Livingston* opinion expressly refused exactly the type of evidence sought by Anderson. *Id.* ("Discovery requests shall not include requests for general statistical information, because such information is irrelevant as to Plaintiffs' costs in this specific case"). Moreover, the *Livingston* opinion expressly rejected discovery "With Respect To Potential Bias On The Part Of The Arbitrators" – again discovery sought here by Anderson. *Id.* at *2-3.[4]

Anderson has failed to connect the necessary dots. Instead, he makes a blanket assertion that discovery will assist in developing a record, but has not shown (and cannot show) how those discovery requests have any bearing on the actual arguments he advanced in his opposition to the Compass Bank's Renewed Motion to Compel Arbitration and Stay – which he has already filed.

> **B.    Anderson's Discovery Requests Are Not Narrowly Tailored To the Arguments He Made In His Response in Opposition to Compass Bank's Renewed Motion to Compel Arbitration and Stay. Instead, Anderson's Discovery Is a Carbon Copy of Discovery Requests That Have Already Been Served On Other Defendants.**

Anderson bears the burden of showing that the arbitration-related discovery is narrowly tailored to the specific issues in dispute. *See Livingston,* 2001 WL 709465, at *2. Anderson's requests, however, are not narrowly tailored to the arguments he made in opposition to the arbitration motion. *See Jackson*, 425 F.3d at 1318 (affirming district court's denial of discovery

---

[4] Anderson also cites in a footnote *Dun Shipping LTD v. Amerada Hess Shipping Corp.*, 234 F.Supp.2d 291 (S.D.N.Y. 2002). *Dun Shipping* allowed narrow discovery on whether one of the parties was sufficiently related to the signatory on the "charter" agreement and otherwise had "knowledge of and acquiescence to" the charter agreement that it had not signed. Here, there is no such issue. Anderson admits that he signed the signature card and he also attaches the Deposit Agreement to his Complaint. In the same footnote, Anderson also cites *Coneff v. AT&T Corp.*, 2007 WL 738612 (W.D.Wash). There, the court allowed some limited discovery on the class action waiver and unconscionability issues (now preempted); however, the court expressly held that plaintiffs had to show that each of their discovery requests were relevant to an issue in dispute regarding the arbitration clause. *Id.* ("Plaintiffs argue that all of their discovery requests are relevant to the issue of procedural or substantive unconscionability, but fail to specifically address many of defendants' objections in any meaningful way… Plaintiffs' conclusory argument that all of their discovery requests relate to unconscionability does not defeat Defendants' valid objection to broad discovery at this time"). Finally, Anderson cites in a footnote to two, one page, unreported Kansas District Court decisions, by the same Judge. *Alzaidi v. U-Haul Co. of Kan., Inc.*, 2009 WL 3045462 (D.Kan); *Wilson v. Yellow Transportation, Inc.*, 2007 WL 445197 (D.Kan.). In both cases, the Kansas federal judge determined that there was need for very specific discovery on whether the "parties formed a valid and binding contract". As explained above, there is no such need here based upon Anderson's own declaration and his own Complaint.

into whether employer required all employees to sign arbitration agreements because the plaintiff had "failed to show how the discovery would have any impact on the enforceability of the arbitration clause").

Instead of being narrowly tailored, Anderson has issued overly broad, boilerplate discovery requests that are not tailored to the issues before the Court on the instant Motion to Compel Arbitration. In fact, requests virtually identical to those served on Compass Bank have been served on every defendant with an arbitration motion pending before this Court. Anderson cannot credibly argue that the requests are narrowly tailored to the issues in **this case** when identical requests that have no logical connection to the arguments Anderson actually advances were served on every other defendant in this massive multi-district litigation proceeding.

### III. ANDERSON'S DISCOVERY VIOLATES THE EXPRESS TERMS OF FED. R. CIV. P. 26(d) AND HE CANNOT MEET THE "GOOD CAUSE" STANDARD TO AVOID THESE REQUIREMENTS.

#### A. Anderson's Discovery Violates Fed. R. Civ. P. 26(d).

Fed. R. Civ. P. 26(d) states: "A party **may not** seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a case exempted from initial disclosures under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." (emphasis added). Despite this clear language, Anderson issued very broad requests for admissions, requests for production and interrogatories to Compass Bank prior to the Rule 26 conference. Anderson did not seek permission from this Court for such discovery as to Compass Bank. If Anderson had sought permission, it would have been properly denied because he cannot meet the "good cause" standard required to depart from Rule 26's requirements.

Having violated the rule, Anderson can certainly not meet the "good cause" standard now. *Platinum Mfg. Int'l, Inc. v. UniNet Imaging, INc.*, 2008 WL 927558 (M.D.Fla. Apr. 4, 2008); *Nassau Terminals, Inc. v. M/V Bering Sea*, 1999 WL 1293476 (M.D.Fla.1999) ("the moving party … must show good cause for departing from the usual discovery procedures"); *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D.Colo. 2003) (The "party seeking expedited discovery in advance of [the] Rule 26(f) conference has the burden of showing good cause for the requested departure from the usual discovery procedures.").

9

> **B.   Having Violated The Express Terms of Fed. R. Civ. P. 26(d), Anderson Now Seeks To Benefit From It By Apparently Attempting To Combine A Motion For Leave With A Conclusory Motion To Compel.**

Compass correctly objected to Anderson's violation of Rule 26. Now, Anderson apparently seeks an order overruling every objection that Compass Bank has made (deeming them "boilerplate objections"). Anderson is mistaken on these objections – which are substantive and legitimate. Without arguing each of them – Compass Bank notes the following overbreath issues: (1) the time period for virtually every requests (which includes 4 years prior to Anderson ever opening an account at Compass Bank), (2) the inclusion of predecessor banks in virtually every requests (via definitions of "you") which have no connection with Anderson (and which would have different deposit agreements, different notices, different arbitration provisions), (3) the request for **every** document related to the last 100 arbitrations involving consumer accounts, (4) the request for **every** request for production in every arbitration related to a consumer account. Compass Bank also notes the use of certain vague terms (for instance, "overdraft-fee-related complaints"; "someone").

Local Rule 26.1(h)(2) requires that a motion to compel be specific as to each item – not a blunderbuss statement that all objections should be overruled. Anderson has also violated this rule. It states:

> [F]or each separate interrogatory, question, request for production, request for admission… or deposition question, state: (A) verbatim the specific item to be compelled; (B) the specific objection; (C) the grounds assigned for the objection (if not apparent from the objection); and (D) the reasons assigned as supporting the motion as it related to that specific item. The party shall write this information in immediate succession . . . to enable the Court to rule separately on each individual item in the motion.

There is a clear reason for Local Rule 26.1(h)(2). It requires the plaintiff to sharpen his arguments to address his specific issues; it allows Compass Bank to respond specifically to each of those arguments; and it provides this Court with specific and complete briefing on the precise issues at stake.

In addition, Fed. R. Civ. P. 37(a) requires that a party making a motion to compel (which this motion is **not** styled) must confer and attempt to resolve objections prior to making the motion. There has been no such attempt on the specific (and substantive) objections that Compass Bank has raised. Anderson cannot combine his apparent request for forgiveness for

10

violating Rule 26(d) with a motion to compel.  This would unfairly prejudice Compass Bank and would violate the terms and spirit of Rule 37 (as well as Local Rule 26.1(h)(2)).

### IV. THE COURT SHOULD DENY THE MOTION TO DEFER BECAUSE THE PROCEDURAL POSTURE OF THIS CASE IS MORE LIKE THE SECOND TRANCHE CASES RATHER THAN THE JP MORGAN CHASE, WELLS FARGO AND US BANK CASES.

The procedural posture of Compass Bank's case is more similar to the Second Tranche cases where this Court refused arbitration related discovery – and fundamentally different – and stronger – than the First Tranche cases where this Court granted a motion to defer.  **[DE # 1767]**.  Plaintiff filed a pleading this week which claimed that Compass Bank has "effectively been treated as part of the 'Second Tranche'." **[DE # 1838]**.[5]

For instance, plaintiffs have claimed that a major reason to grant discovery for the First Tranche Banks was the waiver issue – an issue that is not present here.

Morover, Anderson's admission that he signed and received the account documents containing the arbitration provision makes this case unlike the JP Morgan Chase, Wachovia Bank (now Wells Fargo) and US Bank cases, whose orders granting discovery Anderson relies upon. **[DE # 1576, 1673]**.  In those cases, the question of whether a binding contract had ever been formed between the plaintiffs and the defendant banks was a central preliminary issue that the Court was called on to address.  *See, e.g.* **[DE # 1487-16 ¶ 6; DE # 1491, at 2-3, 7-8; DE # 1506, at 27; DE # 1506-7 ¶¶ 3-5]**.  Unlike the plaintiffs in those cases, Anderson has specifically acknowledged signing his signature card when he first opened his account with Compass Bank in 2003 and has specifically acknowledged receiving the relevant account documents, which included the Consumer Deposit Account Agreement. **[DE # 1798-1 ¶ 6]** Anderson has not argued, nor could he consistent with his obligations under Rule 11, that he never entered into a contractual relationship with Compass Bank.  Instead, his argument is limited to claiming that Compass Bank's arbitration provision is unconscionable under Florida law.  This crucial distinction makes this case dissimilar from the JP Morgan Chase, Wachovia Bank (now Wells Fargo) and US Bank cases, in which this Court ordered arbitration related

---

[5] Compass Bank does not concede that it should be treated as a second tranche bank for future scheduling purposes.  Its case was filed long after the actions against the other second tranche banks and Compass Bank's motion to compel arbitration has never been heard by this Court.

11

discovery. Instead, because the question of contract formation is not before the Court in this action, this case is more similar to the procedural posture Second Tranche cases. **[DE #1767]**.

In addition, the Court did not have the advantage of the Eleventh Circuit's decision in *Cruz* when determining the scope of discovery in the First Tranche cases. *Cruz* has now expressly made clear that discovery on the "percentage" – or number of arbitrations with other customers is not relevant.

Likewise, Compass Bank's arbitration agreement includes a clause delegating all of Anderson's arguments to the arbitrator. In other words, if **any** discovery is necessary on the issues raised by Anderson – that discovery should occur in the arbitration and not here. *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010). Again, this appears unlike the First Tranche banks.

V.      **FURTHER DELAY IS INAPPROPRIATE.**

   A.   **Compass Bank's Arbitration Motion Has Been Pending Since December, 2010. It is Ripe For Decision.**

Anderson originally filed his action in this Court on May 4, 2010. Compass Bank responded by filing a motion to compel arbitration and to dismiss for improper venue on June 21, 2010. *See Stephen T. Anderson v. Compass Bank*, (S.D. Fla. 1:10-CV-21556-JLK) **[DE # 13, # 14]**. Anderson acknowledged the venue issues and dismissed without prejudice on July 12, 2010. *Stephen T. Anderson v. Compass Bank*, (S.D. Fla. 1:10-CV-21556-JLK) **[DE # 17]**. Anderson then re-filed this action on October 22, 2010 in the Northern District of Florida. *See Stephen T. Anderson v. Compass Bank*, (N.D. Fla. 1:10-CV-00208-SPM-GRJ).

Compass Bank filed its original motion to compel arbitration almost nine months ago, on December 2, 2010. *Stephen T. Anderson v. Compass Bank*, (S.D. Fla. 1:11-CV-20436-JLK) **[DE # 6, # 7]**. Anderson responded on January 10, 2011, opposing Compass Bank's motion with a brief and evidence. *Stephen T. Anderson v. Compass Bank*, (S.D. Fla. 1:11-CV-20436-JLK) **[DE # 10, # 11]**. Compass Bank filed its reply in support of its motion to compel arbitration on February 2, 2011. *Stephen T. Anderson v. Compass Bank*, (S.D. Fla. 1:11-CV-20436-JLK) **[DE # 16]**.[6] This Action was transferred to this Court by the MDL Panel on or about February 8, 2011. **[DE # 1144]**.

---

[6] The docket entry numbers in this paragraph refer to the case number assigned in the Southern District to this specific action against Compass Bank - Case No. 1:11-cv-20436-JLK.

12

On or about May 27, 2011, Anderson filed his first Motion to Defer **[DE # 1541]**, which Compass Bank opposed **[DE # 1607]**. Anderson filed his reply in support of his motion to defer on June 22, 2011 **[DE # 1650]**. This Court entered an administrative order closing all member cases in this MDL and requiring that motions filed in the transferor Court be refiled in this Court under the main MDL case number. **[DE #1640]**. Compass Bank refiled its Motion to Compel Arbitration. **[DE # 1771]**. As before, Anderson opposed that motion **[DE # 1798]** and Compass Bank filed its reply brief on August 25, 2011. **[DE # 1823]**. As Anderson stated in his first Motion to Defer filed on June, 2011: "Compass Bank's arbitration motion is ripe for a decision." **[DE # 1541]**.

    **B.**    **Anderson Has Presented No Reason For Delaying Almost Six Months After His Original Opposition Submissions To Submit Discovery.**

Compass Bank filed its initial motion to compel arbitration almost nine months ago and Anderson submitted his reply and evidentiary submissions almost seven months ago. Anderson provides no valid reason to allow discovery almost half a year after he submitted his initial response to Compass Bank's motion to compel arbitration. Anderson did not need, nor did he seek, discovery six months ago. Why has this changed? It certainly is not the law. Even Anderson must admit that the law available for attacking arbitration clauses has <u>narrowed</u> – not expanded – with the Supreme Court's opinion in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751 (2011). Anderson does not even attempt to explain why he now needs discovery that he failed to ask for six months ago.

Counsel for Anderson (in filings for other actions in this MDL) have repeatedly criticized counsel for other defendants for waiver and failure to timely raise issues. *See, e.g.,* **[DE # 1469, # 1514]**. Likewise, in those filings, Anderson's attorneys have repeatedly argued that the deadlines in this Court's orders should be enforced. *Id.*; *see also* S.D. Fla. L.R. 7.1; N.D.Fla. L.R. 7.1; *Rosado v. City of Hialeah*, 2010 WL 3395191 at *3 (S.D. Fla. Aug. 27, 2010) (King, J.) ("Procedural deadlines are not advisory. Instead, they are mandatory."); *Andreus v. Lan Cargo, S.A.*, 2009 WL 909420 at n.2 (S.D. Fla. April 3, 2009) (King, J.) (noting that the Court had refused to reopen discovery after defendant had filed motion for summary judgment).

13

## VI. DISCOVERY MUST PROCEED BEFORE THE ARBITRATOR, BECAUSE THE QUESTION OF ENFORCEABILITY AND ANY DISCOVERY RELATING THERETO ARE DELEGATED TO THE ARBITRATOR.

### A. Delegation Clauses in Compass Bank's Deposit Agreements Assign The Enforceability Decision To The Arbitrator.

The arbitration agreement is clear that the issue of unconscionability (or virtually any other theory that may be invoked to defeat enforceability) is for the arbitrator to decide – and therefore any discovery on those theories must be conducted in the arbitration. Compass Bank has quoted these clauses and provided details on this argument in its Renewed Motion to Compel Arbitration and Stay **[DE # 1771, at 11-16]** and again in its reply brief **[DE # 1822, at 1-3]** and incorporates those arguments in full here. The deposit agreements includes at least **three** such delegation clauses that, by their express terms, (1) delegate the decision of "enforceability" to the arbitrator; (2) delegates to the "arbitrator(s)" "any dispute" over the class action waiver; and (3) delegates to the arbitrator "[a]ny dispute as to whether any statute of limitations, estoppel, waiver; laches or other doctrine bars the arbitration of any Claim . . . ." **[DE # 1771-6]** (2008 Deposit Agreement, at 13-15.)

The parties delegated the issues of arbitrability and unconscionability to an arbitrator, not to the Courts. The United States Supreme Court has made clear that this agreement is valid and binding on the parties and vests an arbitrator with the exclusive authority to determine the threshold issues of validity and unconscionability and to order (or not) any discovery related to those issues. *Rent-A-Center, W., Inc. v. Jackson*, 130 S. Ct. 2772, 2777 (2010).

Such a result also defeats the central purpose of a delegation clause, which is to avoid precisely the type of costly discovery Anderson seeks. *Cf. Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251 (11th Cir. 2004) ("[O]ne of the principal benefits of arbitration" is "avoiding the high costs and time involved in judicial dispute resolution."); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1751 (2011) (explaining that arbitration allows parties to benefit from lower costs, greater efficiency and speed, informality, confidentiality, and procedural simplicity).

> B. **The Arbitration Agreement Limits Discovery And Delegates The Question Of Whether To Allow Discovery To The Arbitrator And Not The Court.**

The arbitration agreement goes even further and expressly limits discovery – far narrower than sought here – and delegates the issue of discovery to the arbitrator. It states (among other things):

> **You and we agree that the Arbitrator(s): shall limit discovery to matters directly relevant to the arbitrated dispute;**

**[DE # 1771-6]** (2008 Deposit Agreement, at 15.) (emphasis added).

VII. **COMPASS BANK'S OPPOSITION TO CONSOLIDATION BEFORE THE MDL PANEL IS IRRELEVANT TO THIS MOTION.**

Anderson appears to suggest that Compass Bank's opposition to MDL transfer has some relevance to this motion and that Compass Bank's opposition to transfer was inappropriate. First, Compass Bank's opposition to transfer has no relevance to this motion and plaintiff articulates none whatsoever. Second, Compass Bank has the utmost respect for this Court and its decades of dedicated public service. Compass Bank certainly vigorously opposed transfer; however, that position does not reflect a lack of respect for this Court. In fact, Compass Bank stated to the MDL Panel:

> To the contrary, Compass and its counsel have great respect for the distinguished Senior District Court Judge in charge of this increasingly unwieldy MDL. Enough respect, in fact, that Compass takes to heart the numerous instances in which the Court has expressed concern - on the record - about the MDL and the transfer of new cases into the MDL.

**[MDL 2036 J.P.M.L DE # 448, at 1-2]**.

## CONCLUSION

The Federal Arbitration Act enunciates a strong "federal policy favoring arbitration," *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), which requires courts to rigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The purpose of the Act is to "overcome courts' refusal to enforce agreements to arbitrate" and "to put arbitration provisions on the 'same footing' as contract's other terms." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995). The Act "leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration

agreement has been signed." *Dean Witter Reynolds, Inc.*, 470 U.S. at 218, 105; *see also Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225-27; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991), *aff'g*, 895 F.2d 195 (4th Cir. 1990).

The bottom line is that an enforceable agreement under the Act was created between Plaintiff and Compass Bank, and the contract is admitted. *Bank One, N.A. Coates*, 125 F. Supp. 2d 819, 828-29 (S.D. Miss. 2001) (rejecting plaintiff's request for discovery into whether there was "an agreement to arbitrate" where "[t]he terms of the original agreement . . . can be gleaned from the documents themselves"), *Caley v. Gulfstream Aerospace Corp.*, 482 F.3d 1359 (11th Cir. 2005); *Integrated Security Services v. Skidata, Inc.*, 609 F. Supp. 2d 1323 (S.D,. Fla. 2009) (King, J.); *Santos v. General Dynamics Aviation Services Corp.*, 984 So. 2d 658 (Fla. App. 4th Dist. 2008). Therefore, no discovery is necessary.

Anderson's Motion to Defer is due to be denied and Compass Bank's Renewed Motion to Compel Arbitration and Stay is due to be granted.

Dated this 2nd day of September, 2011.

> */s/ Gregory C. Cook*
> Gregory C. Cook
> A. Kelly Brennan
> BALCH & BINGHAM LLP
> 1901 Sixth Avenue North, Suite 1500
> Birmingham, Alabama  35203-2015
> Telephone:  205-226-3426
> Facsimile:  205-488-5870
> Email:  gcook@balch.com
>    kbrennan@balch.com
>
> Gerry S. Gibson
> C. Bryce Albu
> REEDER & REEDER P.A.
> 250 South Central Blvd., Suite 200
> Jupiter, Florida  33458
> Telephone:  561-575-9871
> Facsimile:  561-575-9765
> E-mail:  gerry@ederandreeder.com
>    bryce@reederandreeder.com

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record entitled to receive service.

This 2nd day of September, 2011.

    /s/ Gregory C. Cook
Gregory C. Cook
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama  35203-2015
Telephone:  205-226-3426
Facsimile:  205-488-5870
Email:  gcook@balch.com