UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTION

*Anderson v. Compass Bank*
S.D. Fla. Case No. 1:11-cv-20436-JLK
N.D. Fla. Case No. 10-CV-00208

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO STRIKE

Plaintiff Stephen T. Anderson opposes Compass Bank's ("Compass") Motion to Strike the declarations and citations [**DE # 1823**] ("Motion To Strike") contained in Plaintiff's Opposition to Compass's Renewed Motion to Compel Arbitration [**DE # 1798**].

I.   Introduction

Like Compass's one-sided agreement to arbitrate, Compass wants the Court to consider only one version of the facts: *Compass's*.[1]  Along with moving to strike the Plaintiff's declarations, Compass also opposes *any* arbitration related discovery. [**DE # 1857**]. Meanwhile,

---

[1] Compass's one-sided view of fairness is further illustrated by its position that its arbitration provision is enforceable even though – among other things – it *requires* customers to arbitrate all claims while allowing Compass to sue its customers in a court of law. *See* Compass Deposit Booklets [**DE # 1771-4 – 1771-6**]. Compass's arbitration provision even entitles Compass to "set off" a customer's account at any time, without notice and regardless of whether the account is jointly owned (*see id.*) much like the SunTrust arbitration provision recently found unconscionable under Georgia law. *See* Order Denying Renewed Motions to Compel Arbitration [**DE # 1853**].

Compass submits over 550 pages contained in some 35 exhibits,[2] including its own attorney affidavits, as ostensible support for its efforts to compel arbitration. This self contradicting position – where Compass submits exhibits that by its own logic should be excluded from the Court's consideration – demonstrates the specious nature of Compass's Motion to Strike.

Furthermore, the thrust of Compass's Motion to Strike is based both on its mischaracterization of the declaration testimony submitted by Plaintiff and other facts. Compass's claim that the declarations are not based on personal knowledge simply distorts the nature of Anderson's and Aronovitz's testimony. Both individuals clearly have personal knowledge regarding the testimony that they respectively proffer. Compass's *ad hominem* attack concerning the Declaration of Tod Aronovitz, a longstanding member and past President of The Florida Bar, as "still fighting the same arbitration battle" are not only improper, they are without merit, as arguments concerning bias go to weight rather than admissibility.

Compass's attempt to strike Anderson's reference to the eclaration of overdraft fee expert, Arthur Olsen on behalf of the Plaintiff in the *Hough v. Regions* case also falls short. [**DE # 1687-5**]. Its argument that the declaration should not be considered because it was prepared in a different overdraft case is unpersuasive. Anderson only references Olsen's declaration to show the significant expertise and analysis necessary to investigate overdraft claims and damages – considerations applicable to *any* potential overdraft claim against *any* bank. Compass's deceptive argument that Anderson already has information assumed unavailable to the plaintiff in *Hough* is misleading and simply untrue. Lastly, Compass's bias claims against Mr. Olsen are unfounded, and even so, go to weight rather than admissibility.

---

[2] *See* exhibits, sub-exhibits: [**DE ## 1771-2 – 1771-11; 1771-16 – 1771-18; 1822-2 – 1822-8**].

Compass's final argument in its Motion to Strike paints Plaintiff's citation to letters from the Minnesota Attorney General as citations to "political advocacy websites." Motion to Strike, p. 16 [**DE # 1823**]; *see also* Plaintiff Response, n.15 & 16 [**DE # 1798**]. Plaintiff cites to Attorney General Letters sent to Compass's selected arbitral forums, not to content on www.publicjustice.net. These cites, like the declarations, are properly before the Court, despite Compass's mischaracterizations of them.

## II.     Argument

### A.     Compass's Re-argument of Matters Raised in its Reply Brief

In support of its Motion to Strike, Compass continues to reargue the same matters it raised in its Reply Brief relating to its Renewed Motion to Compel Arbitration. For the Reply Brief, Compass petitioned the Court for an additional five pages. [**DE # 1804**].[3] Now, Compass uses three pages of its Motion to Strike to re-argue *Concepcion,* saying incorrectly that it preempts any consideration of the affidavits of Anderson and Aronovitz with regards to the availability of attorneys. Motion to Strike, pp. 2-4 [**DE # 1823**]. This and Compass's repeated insertion of its arguments regarding preemption constitute an improper reply. *E.g.*, *Barr v. City of Eagle Lake*, 2008 WL 717821, at *13 (M.D. Fla. 2008) (Noting a Defendant's "motion to strike [affidavits argued to be conclusory and speculative] largely repeats substantive argument contained in Defendant's motion for summary judgment and effectively constitutes an unauthorized reply…").

Moreover, Compass's portrayal of *Concepcion* is simply wrong. *Concepcion* – and its Eleventh Circuit progeny, *Cruz* – preclude state laws that invalidate arbitration provisions based

---

[3] Compass's page limit constraints are further demonstrated by its choice to include half of its brief in single-spaced footnotes and the "Post *Concepcion* Scorecard" – which is nothing more than a long string cite attached as an exhibit rather than in the body of Compass's Reply brief.

on *per se* judicially created factors and state public policy. Anderson relies on neither. Instead Anderson argues that Compass's arbitration provision is unconscionable under well established Florida law.[4] As this Court has stated:

> *Concepcion* has changed nothing in that a thorough, case-by-case analysis of the applicable state law doctrine of unconscionability, applied to the specific terms of the arbitration agreement, is still required. In sum, *Concepcion* has not relieved courts from their obligation to scrutinize arbitration agreements for enforceability on a case-by-case basis where on party resists arbitration[.]

Order Denying Renewed Motions to Compel Arbitration at 10 [**DE # 1853**].

### B. The Anderson and Aronovitz Declarations Should Not be Stricken

There is no basis to strike the declarations submitted by Plaintiff in opposition to the Renewed Motion to Compel Arbitration. Compass argues that the Anderson and Aronovitz Declarations should be stricken because the declarants rely on speculation, opinion, and lack personal knowledge. These bare assertions are simply untrue and do not alter the Court's discretion here. *Galactic Towing, Inc. v. City of Miami Beach*, 341 F.3d 1249, 1252 (11th Cir. 2003) ("no abuse of discretion by denying Galactic's motion to strike … affidavits" where party moving to strike argued that affidavits consisted of nothing more than "opinions, mere speculation, and fabricated claims").

#### 1. The Anderson Declaration

Compass argues that Anderson's Declaration should be stricken because Anderson is speculating about (i) the expense of litigation; (ii) his potential recovery; (iii) whether lawyers would take his case individually under a contingency fee arrangement; and (iv) that he would be unable to continue his case on an individual basis. Motion to Strike, p. 6 [**DE # 1823**].

---

[4] In the unlikely event the Court finds Compass's purported delegation language to evidence clear and unmistakable intent to arbitrate arbitrability, Anderson further demonstrates that to be unconscionable under Florida law as well.

4

First, Compass's hyper-technical framing of Anderson's Declaration mischaracterizes the nature of his testimony and attempts to break one paragraph of overlapping considerations into individual declarations. In truth, Anderson offers his personal knowledge that *he* would not be able to afford to hire an attorney on a non-contingent basis to litigate his claims, and that *his* common sense dictates that no attorney would accept his case on a contingent fee basis because the amount at issue is so small. That is the kind of real world budgeting decisions that people make everyday. It's Anderson's knowledge as it relates to this case. He doesn't have to conduct a sophisticated economic analysis to know what he can afford.

Compass's argument that Anderson has no personal knowledge about his ability to individually litigate because he does not yet know his exact damages is pure sophistry. Anderson could not know his exact damages at this stage, where Compass has provided no discovery of its internal batching and sequencing processes. And even after Compass does provide discovery, expert analysis – like that done by Arthur Olsen in other overdraft cases – would still be required. Accordingly, at this phase, Anderson can only have personal knowledge that his maximum recovery logically must be less than $1,500.[5] From this knowledge, Anderson believes, based upon his own determination of his economic reality, that litigating this case on a non-contingency basis would cost him more than his potential recovery and that he could not afford to do that.

Equally specious is Compass's argument that Anderson's lack of specific quantitative information regarding litigation fees and costs renders his testimony inadmissible. Compass conveniently ignores that the expense of litigating claims like Anderson's aren't even in the same

---

[5] Compass obviously wishes to invite this "devil's advocate" position so it can thrust $1,500 as the amount at issue to ostensibly inflate the amount at issue here. Clearly, Anderson does not know his damages at this point, and acknowledges that his likely damages resulting from *actionable* overdraft fees will only be a fraction of the total overdraft fees he incurred.

universe as his potential individual recovery. This is particularly so in light of Compass's commitment to expending virtually unlimited resources in an effort to avoid scrutiny of its objectionable practices. For example, Compass engaged an international law firm to simply investigate banks and credit unions in Gainesville that do not have arbitration provisions [**DE # 1822-5**].[6] This embodies the resources that Compass has at its disposal, and that Compass would likely employ even in individual or small claims disputes – especially where Compass believed an adverse small claims or arbitration ruling could lead to numerous subsequent claims on a class or individual basis (just like here).

Significantly, an attempt to exclude declaration testimony on similar grounds was rejected in *Kelly v. Stafford Tractor Co.*, 2009 WL 425356, at \*5 (N.D. Ga. 2009). In *Kelly*, the defendant attacked the sufficiency of declarations submitted by the plaintiff on the grounds that they were not based on personal knowledge of the declarant and were "grossly speculative." 2009 WL 425356, at \*5. The district court rejected this argument and found that the declaration to be based on personal knowledge and not speculative in nature. *Id.* More importantly, however, the district court concluded that the defendant's area of attack with respect to the declaration "would go toward the weight of the evidence and not its admissibility." *Id.* Similar findings are warranted here. *See also Munnings v. Fedex Ground Package Systems, Inc.*, 2008 WL 1849003, at \*19, n.15 (M.D. Fla. 2008) (argument that a statement is "conclusory goes to the weight, rather than the admissibility"); *Galactic Towing*, 341 F.3d at 1252 (court has discretion).

---

[6] Compass doesn't assert that the investigation is statistically significant based upon location, number of potential customers, market share, or even whether those financial institutions have etc. Instead, it just says that there a few banks that don't require arbitration.

### 2.     The Aronovitz Declaration

Next, Compass fires shotgun arguments for why Aronovitz's Declaration should be stricken, all of which miss the target. First, Compass's argument that Mr. Aronovitz's testimony is "*fatally deficient*" because Aronovitz "overlooks entirely that Anderson [could] file his claim in small claims court" is simply wrong, and overlooks what Mr. Aronovitz actually said:

> I would not accept Mr. Stephen Anderson's case on an individual basis under a contingency fee or other legal fee arrangement because the amount in controversy on an individual basis is so small. To litigate such a case on an individual basis in **any court or arbitration proceeding** would not make sense financially, nor would it be an efficient resolution of the matter.

Aronovitz Declaration, ¶ 7 [**DE 1798-2**] (emphasis added). Obviously the language "**any** court or arbitration proceeding" encompass a small claims court proceeding.

Next, Compass illogically contends that "Mr. Aronovitz is attempting to invade the province of the Court" because he concluded that it would not make financial sense for him to accept Anderson's case on an individual basis. It is well worth noting that Mr. Aronovitz has substantial experience litigating consumer cases. Whether or not he would accept a case is a well-founded, professional opinion, not a legal conclusion. Nor is it a legal conclusion that Compass's deposit booklet "does not provide for prevailing party's attorney fees."[7] That's simply a fact. And importantly, Compass's Deposit Booklet is not "silent" as to fees and costs – despite Compass's attempt to compare the legal fees and costs language in its arbitration provision with that in *Green Tree*. *See* Motion to Strike, p. 9 (citing *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000)).

---

[7] Compass's attempt to represent otherwise is disingenuous. *See* Motion to Strike, p. 9, n. 3. Specifically, all relevant versions of Compass's arbitration provisions provide that: "[u]nless inconsistent with applicable law, each party shall bear the expense of its respective attorney, expert, and witness fees, regardless of which party prevails in the arbitration." [**DE # 1771-4 – 1771-6**]. This is hardly "silent" as to attorneys' fees.

7

Compass then goes on to attack Mr. Aronovitz's integrity, arguing that he is a biased plaintiff's attorney that is "fighting the same arbitration battle" with an interest in "overcoming the consequences of *Concepcion*." Motion to Strike, p. 7 [**DE # 1823**]. Ignoring that it has offered nothing beyond this bald accusation, Compass's bias argument is completely undermined by well established precedent that accusations of witness bias go to weight rather than admissibility. *See e.g., Postell v. Amana Refrigeration, Inc*., 87 F.R.D. 706, 708 (N.D. Ga. 1980); *Weirich v. Horst Realty Co., LLC*, 2009 WL 920960, at *3 (E.D. Pa. Mar. 30, 2009); *Popovich v. Sony Music Entm't*, 2005 WL 1126756, at *6 (N.D. Ohio May 2, 2005). In *Postell*, counsel for plaintiff sought to prevent a doctor from examining the plaintiff in part on the ground that the doctor chosen by defendant was biased. 87 F.R.D. at 708. The Court rejected such an argument finding that allegations of bias due to the doctor's past occupation "may go to the weight the jury wishes to assign to his testimony, but it surely does not affect its admissibility." *Id*. Similarly, in *Weirich v. Horst Realty*, the court rejected an attack on the admissibility of a witness on grounds of bias, noting that "bias concerns address credibility and weight, not admissibility." 2009 WL 920960, at *3. After all, "[a]ll experts have some bias, and a jury may take such bias into account when evaluating the credibility of a witness' testimony." *Popovich*, 2005 WL 1126756, at *6. Defendant's unsubstantiated allegations regarding bias provide no basis for this Court to exclude the testimony of Mr. Aronovitz.

Compass's arguments that Mr. Aronovitz does not have sufficient knowledge about the Gainesville legal market or whether other attorneys would seriously consider accepting Mr. Anderson's case on an individual basis ignores Mr. Aronovitz's significant background in overseeing Florida attorneys *throughout the state*. As a former President of the Florida Bar (2002-2003), Mr. Aronovitz is surely well informed regarding the types of cases that counsel

8

regularly will accept, and the range of fees and expenses throughout the state of Florida. Furthermore, Mr. Aronovitz is admitted to the U.S. District Courts for the Southern, Middle, and Northern Districts of Florida and has litigated several cases throughout Florida, including the Northern District. *See* Curriculum Vitae of Mr. Aronovitz [**DE # 1798-2**]. Notwithstanding Compass's conjecture about discrepancies between the Gainesville and Miami legal markets, any variation is insignificant when balancing the *realistic* opportunity and costs to obtain counsel in light of Anderson's miniscule damages, which could be no more than $1,500.[8]

Even if Mr. Aronovitz lacked personal knowledge regarding the testimony in his declaration (again a wholly unsupported proposition based on the material before this Court), it would only affect the weight, not the admissibility of his declaration. *See Kelly*, 2009 WL 425356, at *5. The same is true for Compass's contention that Mr. Aronovitz lacks personal knowledge about fees, costs, or expenses of arbitration or pursuing Anderson's claims individually. *Id.* However, beyond making this bare assertion, Compass proffers **nothing** to support this contention. The plain language of Aronovitz's declaration makes it clear that his opinion and conclusions are based upon his personal knowledge from his extensive experience and his review of Anderson's case. Compass's arguments that he fails to provide supporting documentation is a non sequitur – he is not required to do so. The same is true regarding his conclusion about anticipated fees costs in litigating this case in an individual capacity relating to expert witness fees, trial preparation and discovery.

Finally, Compass's tortured argument that Mr. Aronovitz's "different expertise" as a successful class action attorney of consumer claims, as opposed to an individual litigator of small consumer claims is irrelevant. Once again, such an argument goes to the weight, and not the

---

[8] Notwithstanding, Anderson does not adopt this damage figure. *See supra*, p. 4, n. 5.

admissibility of evidence. *Smith v. Ortho Pharma. Corp.*, 770 F. Supp. 1561, 1568 (N.D. Ga. 1991). ("The fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it").

### 3. Compass's Attorney Affiants Make Improper Assumptions

Compass proffers the affidavits of three attorneys that purport to specialize in "consumer protection." *See* Affidavits of Adam Kohl, Kelly McNeal, and Susan Seigle [**DE # 1822-6 – 1822-8**]; (collectively the "**Affiant Attorneys**"). Not surprisingly, the Affiant Attorneys all claim that they would accept Anderson's case against Compass for a flat or hourly fee. *See id.*

Interestingly, each Affiant Attorney opines that civil theft (Fla. Stat. § 772.11) or an "offer of judgment" (Fla. Stat. § 768.79) would be appropriate avenues for an individual plaintiff like Anderson to recover attorney's fees against Compass.[9] First it's telling that the Affiant Attorneys mistakenly reference "offer of judgment" when the plaintiff's version of this is called a "demand for judgment" expressly provided in Fla. Stat. § 768.79(1). This begs the question not only about the competence and expertise of the Affiant Attorneys, but also whether they are more accustomed to defense-oriented work.

Even more significant, the Affiant Attorneys fail to mention important aspects of civil theft that could be devastating to an individual consumer who unsuccessfully brings a civil theft claim. First, civil theft is difficult to prove; it requires a taking of property with the felonious intent to commit a crime of theft. *See* Fla. Stat. § 772.11; *also Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1328 (11th Cir. 2006).[10] Given Compass's unwillingness to cooperate in discovery, it

---

[9] Kohl Affidavit, ¶¶ 11, 13 [**DE # 1822-6**]; McNeal and Seigle Affidavits, ¶¶ 11, 12 [**DE # 1822-7 – 1822-8**].

[10] *See also Ames v. Provident Life and Acc. Ins. Co.*, 942 F. Supp. 551, 560 (S.D. Fla. 1994); *Autochina Ltd. v. Huang*, 2010 WL 3009112, at *3 (S.D. Fla. 2010) ("Florida['s] ... civil theft [action] ... derives from two statutory sources: the criminal section setting forth the elements of

would be nearly impossible for an individual consumer to prove that Compass manifested "felonious intent" in its overdraft practices. More importantly, bringing such a claim without a substantial factual and legal basis for doing so, would **subject the plaintiff to paying the defendant attorneys' fees and costs**. *Almeida*, 456 F.3d at 1328 (awarding defendant attorneys' fees); *Autochina Ltd.*, 2010 WL 3009112, at *3 (same). Even voluntarily dismissing a civil theft claim can result in a plaintiff liability for attorneys' fees. *Nodal v. Infinity Auto Ins. Co.,* 50 So.3d 721,724 (Fla. 2d DCA 2010).

Obviously Anderson has a substantial legal and factual basis for his claims in the instant case, but he has no information regarding a felonious intent by Compass that would rise to civil theft. That the Affiant Attorneys champion civil theft as a useful consumer tool, while neglecting to mention the significant and real risk of liability for a defendant's attorneys' fees calls their expertise, if not their underlying motivation, for submitting their affidavits into question.

### 4. Plaintiff's Reference to Arthur Olsen Declaration

Compass is still convinced that it should be treated differently because the technical specifics of how it re-ordered debit transactions are different from other banks. *See* Compass Motion to Vacate CTO-29, MDL No. 2036 [**DE # 417**]. That shotgun argument also misses the mark. Significantly, Plaintiff does not rely on Arthur Olsen's declaration to establish how Compass reordered. Instead, Plaintiff uses the Olsen Declaration to illustrate the expertise necessary to investigate claims and the complex nature of such an analysis. Mr. Olsen's opinion of the expertise required and the steps necessary to investigate a bank, would be equally applicable to *any* overdraft claim of *any* bank.

---

theft, and the civil section granting private parties a cause of action for a violation of the criminal section").

Next, Compass's argument that Olsen is biased so he can get more work as an expert in overdraft cases is without merit. Such an argument merely goes to weight, not admissibility. *Postell*, 87 F.R.D. at 708; *Weirich*, 2009 WL 920960, at *3; *Popovich*, 2005 WL 1126756, at *6. Compass's argument is more of an *ad hominem* attack as opposed to an adequate showing of bias.

Compass's remaining attacks against the Olsen Declaration are even more unavailing. Compass first claims that Olsen's Declaration is "fundamentally flawed" because it is inapplicable to analyzing damages in individual cases. According to Compass the only complexity with determining damages in these overdraft cases is in the aggregate and "an individual claimant can easily offer direct testimony as to what order he engaged in transactions he entered." Motion to Strike, p. 13. Yet the position that Compass advocated when challenging transfer to MDL No. 2036 belies this questionable position.

At that time, Compass acknowledged that its sophisticated, proprietary method of re-ordering debit transactions (which it calls "Effective Date Posting") was so vastly different from other banks, that it warranted Compass's exclusion from the MDL. *See* Motion to Vacate, pp. 9, 13-14 [**DE # 417**]. Now, when convenient to flip-flop, Compass argues that the "Effective Date Posting" is so simple that a customer could use receipts and bank statements to determine if whether Compass was improperly re-sequencing his account. Motion to Strike, p. 13. Clearly Compass will adopt whichever position it believes to facilitate its arguments.

Finally, Compass mischaracterizes the information that Anderson has at his disposal by claiming the chart that Anderson included in his Complaint somehow means that Anderson has already, *individually* conducted an *accurate* damages analysis. The *rudimentary table* that Anderson included in his complaint is an estimation based solely on bank statements provided by

Compass, and in no way is his damages analysis, or necessarily even an accurate portrayal of Anderson's damages. Anderson has no internal Compass information regarding its Effective Date Processing batching system, which given the sophisticated nature of that system, would undoubtedly be required to accurately and conclusively determine what damages Mr. Anderson is entitled to recover.

### C. The Letters From the Minnesota Attorney General Are Relevant and Proper

Compass's final mischaracterization paints Plaintiff's citation to letters from the Minnesota Attorney General as citations to "political advocacy websites." Motion to Strike, p. 16; *see also* Plaintiff Response, notes 15 and 16. [**DE # 1798**]. Plaintiff's Response cites directly to the Attorney General Letters, which were sent to the National Arbitration Forum and American Arbitration Association, and highlight the unfairness inherent in their respective consumer arbitrations. Plaintiff does not cite to content on the website. These citations are properly before the Court.

### III. Conclusion

Based on the foregoing, Plaintiff respectfully requests that the Court deny Compass's Motion to Strike.

Dated: September 12, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard, 11th Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

| | |
|---|---|
| /s/ Ruben Honik | /s/ Ted E. Trief |
| Ruben Honik, Esquire | Ted E. Trief, Esquire |
| Pennsylvania Bar No. 33109 | New York Bar No. 1476662 |
| rhonik@golombhonik.com | ttrief@triefandolk.com |
| Kenneth J. Grunfeld, Esquire | Barbara E. Olk, Esquire |
| Pennsylvania Bar No. 84121 | New York Bar No. 1459643 |
| kgrunfeld@golombhonik.com | bolk@triefandolk.com |
| GOLOMB & HONIK, P.C. | TRIEF & OLK |
| 1515 Market Street | 150 E. 58th Street |
| Suite 1100 | 34th Floor |
| Philadelphia, PA 19102 | New York, NY 10155 |
| Tel: 215-985-9177 | Tel: 212-486-6060 |
| Fax: 215-985-4169 | Fax: 212-317-2946 |

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on September 12, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596