IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-2036-JKL

IN RE: CHECKING ACCOUNT )
OVERDRAFT LITIGATION )
                                                     )
MDL No. 2036                                  )
                                                     )
                                                     )
THIS DOCUMENT RELATED TO:   )
                                                     )
*Stephen T. Anderson v. Compass Bank*,   )
N.D. Fla. Case No. 1:10-cv-00208       )
S. D. Fla. Case No. 1:11-cv-20436-JLK   )

**COMPASS BANK'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE**

Compass's Motion to Strike is targeted to particular submissions that do not meet the Federal Rules of Evidence. [DE # 1823]. Anderson's response is: (1) a renewed attack on Compass' arbitration clause, (2) an assertion that all of Compass' attacks go to the weight not the admissibility of the evidence and (3) an assertion that Compass' submission of evidence is hypocritical. Anderson is incorrect on each point.

**I.   ANDERSON IS AGAIN INCORRECT ABOUT COMPASS' DEPOSIT AGREEMENT.**

On page one of his response to the Motion to Strike, Anderson argues that Compass' arbitration provision is "one-sided" because it "*requires* customers to arbitrate all claims while allowing Compass to sue its customers in a court of law." [DE # 1865 at 1] (emphasis in original). However, Anderson does not quote any language from Compass' deposit agreement to support this assertion. In fact, the very first sentence of the arbitration clause demonstrates just the opposite: "[b]y opening or maintaining the account, you agree that if **a dispute of any kind arises under this Agreement or relates to your account or any transactions involving your account, either you or we can choose** to have that dispute resolved by binding arbitration." *E.g,* [DE # 1771-6] (2008 Deposit Agreement, at 13) (emphasis added).

1174692.1

Also on his first page, Anderson claims that Compass' setoff provision is "much like the SunTrust arbitration provision" recently found unconscionable. [D.E. # 1865 at 1]  Anderson is mistaken again.  This Court found the SunTrust provision unconscionable because of the setoff provision **plus** a fee shifting provision (because SunTrust was "automatically entitled to an award of costs and attorneys' fees" if it won in arbitration).  Unlike SunTrust's provision, Compass' arbitration agreement does not shift attorney's fees but instead expressly states: "Unless inconsistent with applicable law, **each party shall bear the expense of its respective attorney**… regardless of which party prevails in the arbitration." (emphasis added). [1]

In other words, Anderson's assertions about the deposit agreement are plainly wrong, as well as being entirely irrelevant to the Motion to Strike.[2]

---

[1] In addition, Compass has never brought claims or sought attorney's fees against Anderson--whose account was closed before this lawsuit ever began.

Even if there were an improper provision related to attorney fees (and there is not), the Deposit Agreement expressly provides for severance of any provision (other than the class waiver in the arbitration agreement) deemed unenforceable from the remainder of the agreement (as Compass has previously noted).  *E.g.,* [DE # 1771-4] at p. 20.

[2] Likewise, in his Motion to Defer response (filed the same day as the response to the Motion to Strike), Anderson claims that, "Because Anderson seeks injunctive relief, this case falls outside the express scope of Compass' arbitration provision or any purported delegation language…"  [DE # 1866] (citations omitted).  First, Anderson has pled no claim for an injunction and he does not cite any page or paragraph in the complaint.  Second, his account was closed months before he ever brought a lawsuit – so there is nothing to enjoin. [DE # 1771-2 at ¶ 9].  Third, he has never made this argument in his briefs on the arbitration motion and therefore it would be waived (if it were true).  Notably, Anderson inappropriately included this new merits argument for the first time in a rebuttal brief in support of a procedural motion (and a brief to which Compass had no reply).

## II. ONLY PARAGRAPH 10 OF ANDERSON'S DECLARATION SHOULD BE STRUCK.

Compass has made a very targeted Motion to Strike. Compass only seeks to strike paragraph 10 of Anderson's declaration. This paragraph is replete with speculation which is not admissible under the Federal Rules of Evidence. It is full of assertions that are not "facts" and are not personal knowledge.

Anderson does not dispute the legal standard to be applied – as stated in Compass' Motion to Strike: Declarations used in connection with dispositive motions must "**be made on personal knowledge, and shall set forth such facts as would be admissible in evidence**." Fed. R. Civ. P. 56(e) (emphasis added). If the Declarations do not meet the standards of evidentiary admissibility, they must be stricken. *Johnson v. Scotty's, Inc.*, 119 F. Supp. 2d 1276, 1281 (M.D. Fla. 2000) (concluding affidavit filed in opposition to a dispositive motion "must be stricken if it is a conclusory argument rather than a statement of fact, or when the affidavit is not based on personal knowledge" or contains inadmissible statements).[3]

Paragraph 10 asserts that (1) I "**believe** I would not be able to pursue my claims against Compass Bank", and (2) "I also would **probably not** pursue this matter [sic] **the expense of pursuing my claims against Compass would exceed my potential recovery**" and (3) that he knows of no lawyer who would take his case. (emphasis added). In defense of these statements, Anderson claims that Compass is "hyper-technical"; that this is a statement of Anderson's "common sense"; that no lawyer would take his case; and that he would not be able to afford this litigation. However, it is undisputed that statements of a declarant's belief or personal conclusions, rather than statements based on personal knowledge, are not competent evidence. *Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (l1th Cir. 2002); *Northbrook Indem. Co. v. First Auto. Serv. Corp.*, 2008 U.S. Dist. LEXIS 61424 (M.D. Fla. Aug. 1, 2008) (considering, on a motion to compel arbitration followed by motion to strike affidavit, only "those portions of the affidavit stating facts of which [plaintiff] has personal knowledge"); *see also* Fed. R. Evid. 602 (lack of personal knowledge).

---

[3] Anderson also does not dispute Compass' argument that evidence submitted for a motion to compel arbitration must meet the Federal Rules of Evidence.

Paragraph 10 is also speculation because Anderson has no personal knowledge about the costs to pursue this matter or whether there are lawyers who will take his case. He makes no effort to support his speculation about the "expense". Anderson is not a lawyer and certainly not qualified as an expert and there is no evidence that he even had a prior lawsuit or arbitration. He has no basis to provide this speculative opinion. In addition, Anderson makes no effort to state that he ever looked for an attorney to take his case on an individual basis.

Declarants may not reach beyond their personal knowledge and speculate or draw inferences about the actions or thoughts of others, including what other attorneys or experts might think or do, or what type of attorney or expert an individual plaintiff might need to pursue individual arbitration. Fed. R. Evid. 701; *Corey Airport Svcs, Inc. v. City of Atlanta*, 632 F. Supp.2d 1246, 1268-69 (N.D. Ga. 2008) (striking parts of declaration that were not based on the declarant's particularized knowledge and that essentially answered a hypothetical question), *rev'd on other grounds*, *Corey Airport Svcs., Inc. v. DeCosta*, 2009 U.S. Dist. LEXIS 25048 (11th Cir. Nov. 16, 2009); *see also United States v. Henderson*, 409 F.3d 1293, 1300 (11th Cir. 2005) (noting ability to answer hypothetical questions is essential difference between expert and lay witnesses).

Anderson makes no effort to distinguish **any** of the caselaw cited by Compass. Instead he cites three completely irrelevant cases. He mainly relies upon *Kelly v. Stafford Tractor Co.*, 2009 WL 425356 (N.D.Ga.); however, there the affidavit at issue was "clearly based upon [affiant's] personal knowledge [of the company for which he was president] and of the used equipment sales business in general [in which he was president of a company]… The fact that [affiant] uses the term 'recollection' or cannot cite a specific figure does not indicate that the statement is speculative." In contrast, Anderson does not use the term "recollection" but instead **provides opinions on what he will (or will not) do in the future** and upon what **other persons might or might not do**. He also provides speculation on costs that he has never incurred before in a field in which he has no experience. *Kelly* has no application whatsoever to paragraph 10. The other two cases are even less helpful as explained in the footnote below.[4]

---

[4] The court in *Munnings v. Fedex Ground Package Systems, Inc.*, 2008 WL 1849003 at *19, n.15 (M.D.Fla.) allowed an affidavit over the defendant's objection because the affidavit had sworn to personal knowledge of a conversation ("I heard…") and because he had sworn to personal knowledge of the actions of the business after the conversation ("the route … would be the next route … to be split"). Again, this decision has no relevance to the wording of

### III. ANDERSON PROVIDES NO RESPONSE TO THE ARGUMENT THAT THE ELEVENTH CIRCUIT HAS CONSIDERED MR. ARONOVITZ'S EXACT TESTIMONY AND HELD IT IRRELEVANT.

Anderson continues to argue that Mr. Aronovitz's declaration is admissible because it goes to unconscionability. However, the Eleventh Circuit has already considered essentially the same testimony – from the very same witness (Mr. Aronovitz), and determined that the testimony was irrelevant. The Eleventh Circuit stated – immediately after noting the testimony from the "three" attorneys (which included Mr. Aronovitz):

> However, at least as applied to the facts of this case, we believe that faithful adherence to *Concepcion* requires the rejection of the Plaintiffs' argument. **The Plaintiffs' evidence goes only to substantiating the very public policy arguments that were expressly rejected by the Supreme Court in Concepcion—namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted.**

*Cruz v. Cingular Wireless*, 2011 WL 3505016 at *7-8 (11th Cir. Aug. 11, 2011). Mr. Aronovitz's declaration in both cases are essentially identical. *See* Case 2:07-cv-00714-JES-DNF (M.D.Fla) [DE # 43-3]. Anderson simply doesn't respond to this argument or quote.

Anderson also does not respond to Compass' argument that this Court has already decided that testimony from lawyers about whether they would or would not take a case is unhelpful. (Tr. Of Hearing on Mot. to Stay or Dismiss, Case No. 09-2036-MD-JLK, June 1, 2011 at pp. 40-41.)

What Anderson does is accuse Compass of engaging in "*ad hominem*" attacks on Mr. Aronovitz. Compass did not do this, and is disappointed with such an accusation.[5] So that the record is clear, Compass stated in its Motion to Strike: "Mr. Aronovitz is an experienced and well regarded class action plaintiff's attorney" and "Mr. Aronovitz is an experienced, successful

---

paragraph 10 here since that case involved personal knowledge of facts and not speculation. Finally, Anderson cites to *Galactic Towing, Inc. v. City of Miami Beach*, 341 F.3d 1249, 1253 (11th Cir. 2003) where the Eleventh Circuit affirmed the decision of the District Court not to strike an affidavit; however the opinion provides no insight on the basis of the decision and the only indication is that the affidavits were directly related to the legislative intent of the City in enacting a towing provision (that is, that the "towing ordinance affect *safety concerns*") (emphasis in the original). Again, this decision has no application to the rank speculation in paragraph 10.

[5]Plaintiff also accuses defense counsel of being "disingenuous" and making "deceptive" and "misleading" arguments.

class action plaintiff counsel." That defense counsel respects Mr. Aronovitz, his experience, his integrity and his service to the bar – does not mean that his declaration meets the rules of evidence or is not subject to a bias attack.

Anderson argues that Aronovitz's opinions are admissible because Compass' objections merely go to the weight of the testimony (for instance, the expert witness fees or other expenses of litigating Anderson's case on an individual basis). However, Aronovitz's testimony is being proffered as opinion testimony – allegedly expert testimony. It must meet the standards of *Daubert* and Fed.R.Civ.P. 702. In support of his "weight" argument, Anderson merely cites (again) the *Kelly* case discussed above (not a *Daubert* case) and a pre-*Daubert* case from the Northern District of Georgia involving doctors.

Anderson continues to argue admissibility of the assertion in the older Aronovitz declaration that "the subject arbitration provision excludes any entitlement to pay a prevailing party's attorney's fees." [DE # 1798-3 ¶ 5.] First, this testimony is simply incorrect. As even Anderson concedes, the arbitration provision states: "Unless inconsistent with applicable law, each party shall bear the expense of its respective attorney, expert, and witness fees, regardless of which party prevails in the arbitration." Second, this type of testimony is inadmissible because it sets forth no facts, only legal opinions. Mr. Aronovitz is attempting to invade the province of the Court by forming legal conclusions based on his own assumptions.

While Mr. Aronovitz's second declaration backpedals slightly from this inadmissible statement, it is also contrary to facts in this case because Anderson demands attorney's fees in his complaint. Anderson has never responded to this argument (and it is not even mentioned in either of the Aronovitz's declarations). Likewise, Anderson does not dispute that attorney's fees could be recoverable under Florida Statute § 768.79 (and neither does either of the Aronovitz declarations). *Cappuccitti v. DIRECTV*, 623 F.3d 1118, 1126 (11th Cir. 2010) ("the district court needed to consider all of the remedies available to Cappuccitti under Georgia law at the moment he contracted with DirecTV").

Anderson does respond to Compass' evidence regarding attorney fees that could be recovered under the Florida Civil Theft Statute. According to Anderson, "civil theft is difficult to prove; it requires a taking of property with the felonious intent to commit the crime of theft." Anderson then admits that he "has no information regarding a felonious intent by Compass. . . ." [DE # 1865 at 10].

However, the factual allegations of Anderson in the complaint are directly contrary to this assertion.  The Civil Theft statute states: "A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or use, the property of another with intent to, either temporarily or permanently deprive the other person of a right to the property …" Fla.Stat.§ 812.014(1);  *see also Almeida v. Amazon, Inc.*, 456 F.3d 1316, 1327 (11th Cir. 2006).  While Plaintiff represents in his brief that he has no information regarding any felonious intent by Compass[6], he alleges in his Class Action Complaint that: (i) "Compass **knowingly** received and retained wrongful benefits and funds from the members of the Class" (Complaint, ¶ 113); (ii) "Compass **wrongfully converted** these specific and readily identifiable funds" (Complaint, ¶ 106); and (iv) "Compass **intends to permanently deprive** Plaintiff and the members of the Class of these funds."  (Complaint, ¶ 103) (emphasis added to each).  Anderson also claims for punitive damages for these wrongs.

Anderson contends that the attorney affidavits submitted by Compass on this point lack credibility (that is, that the potential for fee shifting under the civil theft statute somehow means that no lawyer would assert such a claim).  Of course, the credibility of Compass' affiants has no bearing on whether Plaintiff's declarations should be stricken.  Further, Compass' evidence is unrebutted at this point.  Compass has sworn affidavits from multiple lawyers regarding the Civil Theft claim; Anderson has no contrary evidence.

Ironically, the actions of plaintiff counsel prove Compass' point.  Plaintiff counsel have filed other overdraft litigation cases in this very MDL in which they sought attorneys' fees under consumer protection statutes with fee shifting provisions.  For instance, in *Tornes v. Bank of America, N.A.* [DE # 79], *Garcia v. Wachovia, N.A.* [DE # 80]*,* and *Lopez v. JP Morgan Chase Bank, N.A.* **[**DE # 1; 09-CV-23127-CMA], Plaintiff's counsel filed causes of action under the Illinois Consumer Fraud and Deceptive Business Practices Act and the New Jersey Unfair Trade Practice Act, which provide for recovery of attorneys' fees by the prevailing party in the action.  *See* 815 ILCS 505/10a (c) (2011); N.J.S.A. 56:8-19 (2011).  The claimants in those cases would be liable for attorneys' fees if they do not prevail.  On the other hand, the Civil Theft statute, which permits a defendant to recover attorneys' fees only upon a finding that the plaintiff raised a claim that was "without substantial fact or legal support," provides more insulation from liability for an adverse fee award. *See* Fla. Stat. §772.11(1).

---

[6] Given this admission, the inclusion of a claim for conversion is certainly suspect.

Anderson continues to insist that it is self-evident that expenses for Andersons' case "aren't in the same universe as his potential recovery" (in other words, Anderson contends that it is obvious that Mr. Aronovitz is correct on his speculation about the expenses and recovery). However, the facts contradict this assertion since (1) Compass has filed unrebutted evidence of many individuals filing small claims cases in Gainesville small claims court (with and without counsel) for similar amounts and (2) Compass has provided evidence of lawyers willing to accept these cases. The basic problem with this assertion by Mr. Aronovitz is that it assumes that every case requires the same level of effort, expense and attention. As Compass' evidence amply demonstrates, cases regarding smaller amounts of money can be (and are) handled every day in the courts of Florida on an efficient basis. Every small case does not need the expertise of Mr. Aronovitz. Mr. Aronovitz's expertise regards class actions – it does not regard small claims cases in Gainesville, Florida. Nor can he testify to what analytical experts would be needed to sufficiently prove a small claims case there – or to obtain a settlement from a defendant in that venue. Nor does he know how many lawyers in Gainesville – or nearby – would take such cases; or what a small claims court judge in Gainesville would award for damages in such a case.

Finally, Anderson takes Compass to task for filing affidavits in response to his submissions (on the one hand) and yet moving to strike his evidence (on the other hand). Anderson claims that Compass' position is "self contradicting". However, Compass is not required to stand defenseless when Anderson files evidence. Were Compass to await a ruling on the Motion to Strike, it would be too late to file rebuttal evidence. Further, Compass' evidence addresses assertions in Anderson's reply brief.

IV. **ANDERSON NEVER EXPLAINS HOW HE CAN CITE TO THE OLSEN DECLARATION EVEN THOUGH (1) IT IS NOT FILED, (2) IT DOES NOT MENTION COMPASS, (3) IT DOES NOT MENTION ANDERSON, (4) IT IS NOT BASED UPON THE FACTS IN THIS CASE AND (5) IT DOES NOT MEET THE *DAUBERT* REQUIREMENTS.**

Anderson provides no authority that would allow him to cite to evidence that he did not file (that is, the Olsen Declaration that was not filed in Compass' case).

Anderson also provides no authority that would allow him to cite to a declaration that concerns another bank and another plaintiff.

Anderson never disputes that the Olsen Declaration does not mention Compass or Anderson. It is not based upon the facts in this case (and does not purport to be based upon those facts).

With these acknowledged shortcomings, the Olsen Declaration cannot meet the requirements of *Daubert* (which it must) or the Federal Rules of Evidence. Nevertheless, Anderson argues that it is admissible because what the declaration really means is that the need for and costs for expert testimony would be the same against "any bank". Leaving aside whether such an assertion could ever meet *Daubert* or any evidentiary standards (it cannot), **Olsen did not say this**. Indeed, in his declaration, Olsen specifically states that he was "asked to review an account statement of Plaintiff Pamela Hough on which Regions Bank charged overdraft fees . . ." and he never mentions any other bank or the banking industry in general. [DE # 1687-5].

Even if Olsen's testimony did concern Compass, it would still be inadmissible. Olsen testifies about those methods suitable for a class action where class attorneys have no direct contact with claimants and must consequently rely on expert analysis of aggregate data to calculate statistical rates of causation of overdrafts. Olsen's opinion has no applicability in an individual case – where an individual claimant can easily offer direct testimony as to what order he engaged in transactions and which charges he contends to be improper (in other words, Anderson knows what transactions he entered; Anderson received receipts; Anderson received bank statements (*e.g.,* DE # 1771-8 at 5–6); Anderson received overdraft notices (*e.g., id.* at 40)).

These facts are not disputed in Anderson's reply. Instead, Anderson continues to insist that somehow the internal records of Compass are necessary to determine if there has been a violation or the damages for the violation. However, Anderson does not even attempt to explain why he needs to have the internal records of Compass if he knows the order of his purchases and the balances for each day as well as the items overdrafted.

More fundamentally, Anderson cannot run from his own complaint where he provided a detailed chart for one of the days where multiple overdrafts occurred. In other words, he has already done the work for one of the days at issue. Anderson claims this chart is *"rudimentary."* However, he never disputes that he provided this chart or admits that it is wrong.

In short, you don't need rocket science for a $1500 small claims court cases. Individual cases are far more simple than a class action for millions of customers. For instance, for Anderson there are a discrete number of days involved – at most 20 and likely far fewer

(Anderson had 40 overdrafts and only days with more than one overdraft could have a sequencing issue).

## V. CITATIONS TO POLITICAL ADVOCACY GROUP WEBSITES SHOULD BE STRUCK

In response, Anderson argues that his citations to the website of a political advocacy group (www.publicjustice.net) are admissible because the underlying evidence is relevant (it is not). However, this simply misses the point. The evidence is hearsay, unauthenticated, and simply irrelevant. Plaintiff never denies that Public Justice is an advocacy group or that this was his citation.

Respectfully submitted,

/s Gregory C. Cook
Gregory C. Cook
A. Kelly Brennan
BALCH & BINGHAM LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama  35203-2015
Telephone:  205-226-3426
Facsimile:  205-488-5870
Email:  gcook@balch.com
          kbrennan@balch.com

Gerry S. Gibson
C. Bryce Albu
Reeder & Reeder P.A.
250 South Central Blvd.
Suite 200
Jupiter, Florida  33458
Telephone:  561-575-9871
Facsimile:  561-575-9765
E-mail: gerry@ederandreeder.com
          bryce@reederandreeder.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of September, 2011, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the persons whose addresses are listed below, and/or via first-class United States mail, postage prepaid, as indicated by the Court's notice:

| | |
|---|---|
| Aaron S. Podhurst<br>Robert C. Josefsberg<br>Peter Prieto<br>Stephen F. Rosenthal<br>John Gravante, III<br>PODHURST ORSECK, P.A.<br>City National Bank Building<br>25 W. Flagler Street, Suite 800<br>Miami, Florida 33130-1780 | Bruce S. Rogow<br>Jeremy W. Alters<br>ALTERS LAW FIRM, P.A.<br>4141 N.E. 2nd Avenue<br>Suite 201<br>Miami, Florida 33137 |
| Robert C. Gilbert<br>Stuart Z. Grossman<br>David Buckner<br>Seth E. Miles<br>GROSSMAN ROTH, P.A.<br>2525 Ponce de Leon Boulevard<br>Eleventh Floor<br>Coral Gables, Florida 33134 | E. Adam Webb<br>Matthew C. Klase<br>G. Franklin Lemond, Jr.<br>WEBB, KLASE & LEMOND, L.L.C.<br>1900 The Exchange, S.E., Suite 480<br>Atlanta, Georgia 30339 |
| Russell W. Budd<br>Bruce W. Steckler<br>Mazin A. Sbaiti<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue, Suite 1100<br>Dallas, Texas 75219 | Michael W. Sobol<br>Roger N. Heller<br>Jordan Elias<br>LIEFF CABRASER HEIMANN &<br>BERNSTEIN, L.L.P.<br>Embarcardero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, California 94111 |
| David S. Stallings<br>LIEFF CABRASER HEIMANN &<br>BERSTEIN, L.L.P.<br>250 Hudson Street, 8th Floor<br>New York, New York 10013 | |

/s/ Gregory C. Cook
Of Counsel