UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Jason R. Moore v. SunTrust Bank*
S.D. Fla. Case No. 1:11-cv-22454

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Plaintiff opposes the Motion to Compel Arbitration and Stay Action ("Motion") filed by Defendant SunTrust Bank ("SunTrust" or "Defendant"). [**DE # 1848**].

**I.      Introduction.**

As this Court is aware, SunTrust previously moved to compel arbitration twice in the *Buffington* case, and on each occasion was denied by this Court. *See* May 10, 2010 Order [**DE # 447**]; Sept. 1, 2011 Order [**DE # 1853**]. In denying SunTrust's first motion, this Court found that SunTrust's arbitration clause was procedurally and substantively unconscionable under the law of Georgia. *See, e.g.*, May 10th Order, pp. 20-22. SunTrust appealed the first order to the Eleventh Circuit Court of Appeals. [**DE # 21** in Case No. 1:09-CV-23632-JLK]. After the appeal was fully briefed and oral argument held, the Supreme Court issued its decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). As a result of the Supreme Court's decision, the Eleventh Circuit vacated and remanded for further consideration in light of *Concepcion*. Thereafter, SunTrust filed a renewed motion to compel arbitration in *Buffington*. [**DE # 1583**]. After SunTrust's renewed motion was fully briefed and oral argument was held, this Court denied the bank's renewed motion. *See* Sept. 1, 2011 Order [**DE # 1853**]. The Court found that the SunTrust arbitration clause was wholly unlike the AT&T provision at issue in

*Concepcion*. *Id.* at 13-14. For reasons described more fully below, procedural and substantive unconscionability were found under Georgia law. *Id.* at 9, 12-14.

Although *Buffington* was decided under Georgia law, the logic and reasoning behind this Court's previous decisions apply under Florida law. Thus, while decisions regarding the enforceablility of an arbitration clause must be made on a case-by-case basis, the facts before the Court here require the denial of SunTrust's motion to compel arbitration once again.

**II.     Statement of Facts.**

By SunTrust's own acknowledgment, at the time Plaintiff Jason Moore opened the checking account at issue in this case, the Rules and Regulations for Deposit Accounts ("Rules and Regulations") did not contain an arbitration clause, but rather only contained a mediation requirement. *See* Exhibit C to Affidavit of R. Scott [**DE # 1848-1**]; Aff. of R. Scott, ¶¶ 5-6; Declaration of J. Moore, ¶ 7 (Exhibit A hereto). While SunTrust asserts that it provided Mr. Moore with notice regarding the Rules and Regulations that would govern his account once SunTrust took over his account, this version of the agreement only contained a mediation requirement as well. *See* Exh. A to Aff. of T. Kennedy [**DE # 1848-2**]. SunTrust has never asked Mr. Moore to mediate his overdraft fee dispute. Moore Decl., ¶ 7. SunTrust's arbitration requirement was later imposed upon Plaintiff beginning in June of 2006. *See* Aff. of R. Scott, ¶ 6; Moore Decl., ¶ 8. Even though the arbitration clause purportedly took effect in 2006, over four years after he opened his account, SunTrust did not send the new Rules and Regulations to Mr. Moore. Aff. of R. Scott, ¶¶ 6-7. By SunTrust's own admission, Mr. Moore was not notified through his statements that an updated version of the Rules and Regulations was available online until July of 2008. *Id.* at ¶ 7. Mr. Moore eventually terminated his checking account with SunTrust in May of 2009. *Id.* at ¶ 8. According to SunTrust, the version of the Rules and Regulations in effect when Mr. Moore closed his account were dated December 1, 2008. *Id.*

This version of the Rules and Regulations was a 40-page, single-spaced standardized form document. *See* 2008 Rules and Regulations [Exh. F to **DE # 1848-1**]; Moore Decl., ¶¶ 10-11. Buried in the middle (at pages 22-24 of 40 pages) are provisions that purportedly require certain disputes to be arbitrated:

> DISPUTE RESOLUTION
>
> READ THIS PROVISION CAREFULLY AS IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER ARE RESOLVED. For a Claim subject to arbitration, neither the Depositor nor the Bank will have the right to: (1) have a court or a jury decide the Claim; (2) engage in information-gathering (discovery) to the same extent as in court; (3) participate in a class action in court or in arbitration; or (4) join or

> consolidate a Claim with claims of any other person. The right to appeal is more limited in arbitration than in court and other rights in court may be unavailable or limited in arbitration.
>
> ARBITRATION. Notwithstanding any other provision in these rules and regulations, if either Depositor or the Bank has any unresolvable dispute, controversy or claim between us other than any Excluded Claim or Proceeding as defined below, whether founded in contract, tort, statutory or common law, concerning, arising out of or relating to the Account or these rules and regulations, including any claim regarding the applicability, interpretation, scope or validity of this arbitration clause and/or these rules and regulations (a "Claim"), and upon the demand of either party, it will be resolved by individual (not class or class-wide) binding arbitration administered by the National Arbitration Forum (the "NAF"), P.O. Box 50191, Minneapolis, MN 55405, www.adrforum.com, (800) 474-2371, or the American Arbitration Association (the "AAA"), 1633 Broadway, 10th Floor, New York, NY 10019, www.adr.org, (800) 778-7879 . . . .
>
> Notwithstanding any choice of law or other provision in these rules and regulations, the parties agree and acknowledge that this agreement evidences a transaction involving interstate commerce and that the Federal Arbitration Act (Title 9 of the United States Code) shall govern the interpretation, enforcement, and proceedings pursuant to the arbitration clause in this agreement . . . .

Rules and Regulation, pp. 22-23 (shown in approximate actual size).

The arbitration clause ensures that SunTrust will recover its costs and expenses, including attorneys' fees, should it prevail in arbitration in two ways. First, the clause provides that SunTrust can recover its legal costs and expenses, including attorneys' fees if, as here, a consumer refuses to voluntarily submit their claims to arbitration:

> if a party in a pending legal proceeding demands a Claim to be submitted to arbitration, the party initiating the action will immediately dismiss the legal proceeding and file the claim in arbitration and any party who wrongfully fails to comply with this provision **shall be liable to the other party for all reasonable costs and expenses, including attorneys' fees,** incurred in enforcing this provision.

*Id.* (emphasis added). Such provisions are enforced under the applicable Rules of the American Arbitration Association. AAA Consumer Supp., § C-7(c) ("arbitrator should apply any identified pertinent contract terms, statutes, and legal precedents"). In light of the fact that SunTrust sent a letter to Mr. Moore demanding that he submit his dispute to arbitration, Plaintiff may be liable to SunTrust for legal fees and costs to date. *See* Motion to Compel, p. 5 [**DE # 1848**]; 2008 Rules & Regulations, p. 23 [**DE # 1848-1**].

Second, SunTrust also threatens to recover its fees associated with any arbitration through the inclusion of a fee-shifting provision in favor of the prevailing party:

> [t]he prevailing party shall be entitled to an award of the costs and expenses of the arbitration including an award of reasonable attorneys' fees for any Claim(s) in which the party has prevailed, except as otherwise required by law.

*See* Rules and Regulations, p. 24. These fees could easily amount to tens of thousands of dollars. Equally as problematic is the bank's ability to seize funds from the customer without notice. *See* Sept. 1, 2011 Order, pp. 10-14 [**DE # 1853**]. Thus, SunTrust has created a mechanism that

3

deters consumers like Plaintiff from challenging the enforceability of the arbitration clause and from pursuing their claims in arbitration.

Even though Plaintiff closed his account in May of 2009, SunTrust makes numerous references to version of its Rules and Regulations that were enacted after Mr. Moore's account was terminated. *See* Motion to Compel, p. 5 n.7; Affidavit of Nilsa Hernandez [**DE # 1848-3**]. SunTrust's references to these later versions are immaterial to this Court's determination regarding the enforceability. *Reuter v. Davis*, 2006 WL 3743016, at *3 (Fla. Cir. Ct. Dec. 16, 2006) ("Unconscionability is determined at the time the contract is made"); *also Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010); *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1124 (11th Cir. 2010). SunTrust's suggestion that these later versions somehow apply to this Court's determination is spurious.[1]

**III.   Argument.**

    **A.   *Concepcion* Does Not Foreclose Plaintiffs' Ability to Show SunTrust's Arbitration Clause Is Unconscionable Under Florida Law.**

Under the Federal Arbitration Act ("FAA"), written agreements to arbitrate a dispute arising out of a transaction involving commerce are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 1 *et seq.*, at § 2. However, the Eleventh Circuit has long recognized that "[t]he FAA allows state law to invalidate an arbitration agreement, provided the law at issue governs contracts generally and not arbitration agreements specifically." *E.g.*, *Bess v. Check Express*, 294 F.3d 1298, 1306, 1309 (11th Cir. 2002) (finding questions of fact concerning whether plaintiff signed the arbitration agreement, and whether such agreement was dated, necessitated remand). The Supreme Court has held that "[g]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 682 (1996) (noting that arbitration provisions are on the same footing as other contract provisions under the FAA).

The Supreme Court's recent decision in *AT&T Mobility LLC v. Concepcion*, does not change this analysis. As noted by Justice Scalia at the outset of *Concepcion*, the sole issue before the Court was whether the "*Discover Bank* rule" under California law, which held that class action waivers were *per se* unconscionable, was preempted by the FAA:

---

[1] In order to preclude repetition, additional facts relevant to the issue of procedural unconscionability have been detailed only in Section III, Part B below.

4

> The final phrase of § 2, however, permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." This saving clause permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability," but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue. *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); *see also Perry v. Thomas*, 482 U.S. 483, 492-493, n. 9, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). The question in this case is whether § 2 preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable. We refer to this rule as the *Discover Bank* rule.

131 S. Ct. at 1746. Any attempt by SunTrust to argue that the Supreme Court's resolution of this narrow question represents a broad holding that arbitration clauses are no longer subject to invalidation under state standards for unconscionability is simply wrong. Subsequent to *Concepcion*, recent decisions have also recognized this aspect of the *Concepcion* holding. *E.g.*, *Kanbar v. O'Melveny & Myers*, 2011 WL 2940690, at *6 (N.D. Cal. July 21, 2011) ("In short, arbitration agreements are still subject to unconscionability analysis"); *Hamby v. Power Toyota Irvine*, 2011 WL 2852279, at *1 (S.D. Cal. July 18, 2011) ("[*Concepcion*] does not stand for the proposition that a party can never oppose arbitration on the ground that the arbitration clause is unconscionable"). This Court recently held: "This Court does not read *Concepcion* to preclude consideration of all unconscionability defenses; rather, it simply narrows the permissible factors for consideration in the unconscionability analysis." *See* Sept. 1, 2011 Order, pp. 8-9. The Eleventh Circuit is in accord. *Community State Bank v. Strong*, 2011 WL 3715769, at n.28 (11th Cir. Aug. 25, 2011) ("The ability of such contractual defenses to invalidate arbitration agreements is not affected by the Supreme Court's decision"). Thus, *Concepcion* altered the analysis but has not precluded unconscionability challenges to arbitration.

As the Supreme Court repeatedly noted throughout *Concepcion*, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* at 1747 (citing *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)). Furthermore, as the Supreme Court recognized before *Concepcion*, in *Doctor's Associates* and *Perry*, "a court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what . . . the state legislature cannot.'" 131 S. Ct. at 1747.

5

The *Discover Bank* rule "requir[ed] the availability of class-wide arbitration," without reference to evidence that the particular arbitration provision at issue interfered with the consumer's ability to vindicate his rights in an arbitral forum. The rule automatically allowed the invocation of class-wide arbitration when (1) the contract was one of adhesion, something the Supreme Court recognized applies to all modern consumer contracts, (2) involved "small" damages, a requirement that California courts had rendered "toothless and malleable," and (3) the consumer merely *alleged* a scheme to cheat consumers. *Id.* at 1750. The *Discover Bank* rule thus made "manufactured" class arbitration "inevitable," despite the defendant's consent to no more than bilateral arbitration. *Id.* at 1750-51. The Supreme Court found this blanket rule to burden arbitration in violation of the purposes of the FAA. But it did not take the further – and far broader – step of saying that arbitration clauses containing class action waivers could never be deemed unconscionable pursuant to state laws. Thus, arbitration clauses can still be found unconscionable under state laws, as the text of the FAA makes clear.

The Eleventh Circuit's recent decision in *Cruz v. Cingular Wireless, LLC*, 2011 WL 3505016 (11th Cir. Aug. 11, 2011), does not alter this reality. *Cruz* analyzed a public policy challenge based on Florida law to the identical consumer-friendly arbitration clause at issue in *Concepcion*. The court recognized that certain challenges could not be made "at least as applied to the facts of this case" because *Concepcion* had already ruled on the precise questions as to the same arbitration clause. *Id.* at *8. *Cruz* dealt with a public policy challenge as opposed to one based on unconscionability. In Florida, the courts

> have identified two analytical frameworks [to invalidate arbitration provisions]: (1) whether the arbitration clause is void as a matter of law because it defeats the remedial purpose of the applicable statute, or (2) whether the arbitration clause is unconscionable.

*Hialeah Auto., LLC v. Basulto*, 22 So.3d 586, 590 (Fla. 3d DCA 2009). *Cruz* struck down a line of Florida cases that invalidated arbitration clauses based only on Florida public policy considerations where the arbitration clause was found to frustrate the remedial purpose of a state statute. 2011 WL 3505016, at *4-5. The particular state statute addressed in *Cruz* was the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). The Eleventh Circuit noted that "Plaintiffs have argued that ATTM's class action waiver is unenforceable because it would exculpate ATTM from liability under state law and would thus defeat the remedial purpose of FDUTPA, in violation of public policy." *Id.* *Cruz* rejected such an argument, finding that "the

6

*Concepcion* Court specifically rejected this public policy argument." *Id.* at *6. *Concepcion* and *Cruz* both make clear, however, that "an arbitration agreement may be invalidated by –generally applicable contract defenses such as fraud, duress, or unconscionability.'" *Id.* at *4 (citing *Concepcion*, 131 S. Ct. at 1746); *accord Strong*, 2011 WL 3715769, at n.28. *Cruz* reaffirms this "savings clause" but held that Section 2 "does not –preserve state-law rules that stand as an obstacle to the accomplishment of the FAA's objectives.'" *Id.* As Mr. Moore is not challenging SunTrust's arbitration clause on public policy grounds, *Cruz* has no application here.

This Court need not look any further than the Eleventh Circuit's decision in *Pendergast* to conclude that Florida courts have not created a blanket rule towards arbitration agreements like that imposed in *Discover Bank*. *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135-37 (11th Cir. 2010) (contrasting the holding of *Powertel, Inc. v. Bexley*, 743 So.2d 570 (Fla. 1st DCA 1999), which found arbitration agreement procedurally and substantively unconscionable, with *Fonte v. AT&T Wireless Services, Inc.*, 903 So.2d 1019 (Fla. 4th DCA 2005), which found arbitration agreement was ***not*** procedurally unconscionable). Instead, Florida courts have recognized that the appropriate test is to examine each clause on a case-by-case basis and evaluate a wide variety of factors and circumstances, such as (1) the manner in which the contract was entered into, (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into, and (3) whether the terms were merely presented on a "take-it-or-leave-it" basis as to procedural unconscionability, and as to substantive unconscionability, whether the terms of the contract amount to an outrageous degree of unfairness to a party and whether an honest and fair man would accept on the terms if given a choice. *Pendergast*, 592 F.3d at 1135, 1139.

### B. SunTrust's Arbitration Clause Is Unconscionable Under Florida Law.

Under Florida law, SunTrust's arbitration clause is unconscionable. Although the question of whether a party must show both procedural and substantive unconscionability to invalidate an agreement is unsettled under Florida law, the answer to this question is of no moment as SunTrust's arbitration clause fails both. Procedural unconscionability relates to the manner in which a contract was entered while substantive unconscionability focuses on the terms of the agreement itself. *Pendergast*, 592 F.3d at 1135, 1139 (citing *Powertel*, 743 So.2d at 574).

7

### 1.     The Arbitration Clause Is Procedurally Unconscionable.

The linchpin of procedural unconscionability is the absence of meaningful choice. *See Pendergast*, 592 F.3d at 1135 (citing *Powertel*, 743 So.2d at 574). To determine whether a contract is procedurally unconscionable under Florida law, courts must look to: (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice when the contract was entered into; (3) whether the terms were presented on a "take-it-or-leave-it" basis; and (4) the complaining party's ability and opportunity to understand the disputed terms of the contract. *Id.* Under Florida law, a central question in the procedural unconscionability analysis is whether there was a meaningful choice in whether to accept the disputed terms. *Belcher v. Kier*, 558 So.2d 1039, 1045 (Fla. 2d DCA 1990). The available facts demonstrate clearly that the arbitration clause is procedurally unconscionable.

First, the manner in which the arbitration clause was implemented was not done in a way that made it reasonably understandable. *See Hialeah Auto.*, 22 So.3d at 590 (finding an arbitration provision procedurally unconscionable where arbitration was not mentioned in an understandable way). When Plaintiff opened his account, nobody from the bank discussed the Rules and Regulations or arbitration with Plaintiff, because such provisions were not included in the contract at that time. Moore Decl., ¶¶ 5, 7; Exh. C to Aff. of R. Scott. Indeed, even when Mr. Moore became a SunTrust customer, the Rules and Regulations required only mediation. Moore Decl., ¶ 7.

Once SunTrust added the arbitration requirement, it did so by burying the arbitration clause in the middle of its 40-page Rules and Regulations. *Id.* at ¶¶ 10-11. A "court might find that a contract is procedurally unconscionable if important terms were hidden in a maze of fine print and minimized by deceptive sales practices." *Powertel*, 743 So.2d at 574.

The relative bargaining power of the parties was also unequal. Whereas Plaintiff is an unsophisticated consumer without significant business dealings or legal resources, SunTrust is a large banking institution regularly engaging in complicated financial and legal transactions, and therefore enjoyed a superior bargaining position. Of course, in reality no bargaining was even possible. SunTrust imposed arbitration "in the dark of night" without sending it to Mr. Moore. Moore Decl., ¶¶ 5, 7-8. Years later he was told on a monthly statement "PLEASE VISIT SUNTRUST.COM TO REFERENCE UPDATED RULES AND REGULATIONS FOR

8

DEPOSIT ACCOUNTS." *See* Exh. E to Aff. of R. Scott [**DE # 1848-1**]. Thus, arbitration was imposed without any chance for negotiation or even knowledge by Plaintiff.

In short, SunTrust's Rules and Regulations is an adhesion contract. Each version, and all provisions contained therein, were imposed on a take-it-or-leave-it basis. *Id.* There was absolutely no ability to negotiate the terms and conditions contained in SunTrust's Rules and Regulations. "Although not dispositive . . . *it is significant that the arbitration clause is an adhesion contract*." *Powertel*, 743 So.2d at 574.

Finally, Mr. Moore's ability and opportunity to understand the Rules and Regulations as originally provided and subsequently amended was a daunting, if not impossible, task without the help of an attorney. Moore Decl., ¶ 10. SunTrust's failure to discuss, or at least highlight the terms contained in the arbitration clause, further demonstrates the impossibility of Plaintiff fully understanding such terms.

In a transparent attempt to undermine Plaintiff's claims regarding procedural unconscionability, SunTrust notes that versions of its arbitration clause enacted after Mr. Moore closed his account contained an opt-out provision and gave customers the ability to reject arbitration. *See* Motion to Compel, p. 5 n.7. SunTrust, through the Affidavit of Nilsa Hernandez, then goes so far as to say that Mr. Moore "never submitted a written notice rejecting the Arbitration Agreement." *Id.* Mr. Moore closed his checking account with SunTrust 13 months *prior* to the opt-out language being added to SunTrust's arbitration clause. *See* Aff. of R. Scott, ¶¶ 8-9 (noting Mr. Moore closed his checking account on May 8, 2009 and establishing that the next revision to the arbitration clause took place on June 1, 2010); Exh. G to Aff. of R. Scott, p. 23 (establishing customers had ability to opt-out of arbitration agreement between June 1, 2010 and Oct. 1, 2010). The bank has apparently injected this discussion in order to confuse the issues before the Court. There is absolutely no support for SunTrust's insinuation that the failure to reject a change in terms made 13 months *after* one closes an account is somehow an agreement to be bound by such changes.

In sum, under the factors laid out in *Powertel*, it is clear that the SunTrust arbitration clause in procedurally unconscionable under Florida law.

### 2. The Arbitration Clause Is Substantively Unconscionable.

Under Florida law, substantive unconscionability "focuses on the terms of the agreement itself and whether the terms of the contract are unreasonable and unfair." *Pendergast* at 1139. If

"no man in his senses" would make the agreement and "no honest and fair man would accept" it, substantive unconscionability exists. *Id.*; *see also Caban v. J.P. Morgan Chase & Co.*, 606 F. Supp. 2d 1361, 1366 (S.D. Fla. 2009). Significantly, traditional tests for substantive unconscionability regularly consider a party's ability to effectively vindicate its rights, including the waiver of legal rights, the availability of competent counsel, and whether the cost of bringing an individual claim exceeds recovery. *Pendergast* at 1139; *Powertel*, 743 So.2d at 576. This Court has recently concluded its review of the SunTrust arbitration provision under Georgia law. *See* Sept. 1, 2011 Order, pp. 10-14. The Court's extensive analysis will not be restated verbatim here but the findings of unfairness made therein are equally relevant under Florida law.

Before beginning an analysis of whether the SunTrust arbitration clause is substantively unconscionable, it is instructive to compare the AT&T arbitration clause at issue in *Concepcion* to the SunTrust clause at issue here. There were five salient features to the AT&T clause: (1) the customer paid no costs of arbitration; (2) the customer was guaranteed $7,500 if the arbitration result was better than AT&T's last offer; (3) the customer was reimbursed for double their legal fees; (4) the customer's expert fees and costs were paid; and (5) AT&T could never seek any payment from the complaining customer. *Concepcion*, 131 S. Ct. at 1753; *Laster v. AT&T Mobility LLC*, 584 F.3d 849, 856 n.10 (9th Cir. 2009). As frequently noted by the Court in *Concepcion* and the Eleventh Circuit in *Cruz*, these terms are consumer-friendly to an unprecedented degree, which militates strongly against a finding that they are unconscionable. However, to the extent that arbitration terms in other agreements are less favorable to consumers, they may fall within the unconscionable end of the spectrum.

In stark contrast, the SunTrust arbitration clause contains none of these consumer-friendly incentives. *See generally* Rules and Regulations [**DE # 1848-1**, pp. 22-24]. The Rules and Regulations applicable to Mr. Moore's closed account make no reference to SunTrust paying any costs of arbitration on behalf of a claimant. *Id.* Assuming *arguendo* that SunTrust would argue that the AAA Rules should apply – even though the agreement does not establish as much – the AAA Standard Fee Schedule provides that the lowest fee to initiate a claim would be $975 if Mr. Moore had not sought any non-monetary relief. *See* AAA Standard Fee Schedule (lowest possible fee to initiate arbitration is $975) (available at www.adr.org). Given that Mr. Moore's Complaint in this case includes an express claim for non-monetary relief – *see* Complaint, ¶¶ 118-125 (entire count for injunctive relief) – Mr. Moore would be required to pay $3,350 to

bring an arbitration claim against SunTrust. *See* AAA Standard Fee Schedule (fee to file any non-monetary claims is $3,350 and "This fee is applicable when a claim or counterclaim is not for a monetary amount"). Mr. Moore cannot afford such fees to bring his claim for improper overdrafts against SunTrust. *See* Moore Decl., ¶ 13. While SunTrust will likely attempt to argue that the AAA's Commercial Arbitration Rules and the Supplemental Procedures for Consumer-Related Disputes should apply, once again, its agreement does not establish that such rules would apply. Moreover, under these rules, customers are still obligated to pay a minimum of $125 just to file claims which do not include any non-monetary elements. *Compare* AAA Consumer Supp., § C-2(a) (to file claim consumer must "send the appropriate administrative fees and deposits"), *with* § C-8 ("if the consumer's claim or counterclaim is non-monetary, then the consumer must pay an Administrative Fee in accordance with the Commercial Fee Schedule").

Just as there is no provision in SunTrust's arbitration clause that would relieve a customer from having to pay arbitration costs, there are also no provisions that provide for an incentive payment should the customer prevail, no provision that guarantees a customer double their legal fees, and no provision that provides that a customer's expert fees and costs in arbitration would be paid. *See generally* Rules and Regulations, pp. 22-24. These stark contrasts between the arbitration clause at issue in *Concepcion* and the clause here are quite revealing.

However, one fundamental difference between the AT&T agreement, which stated that AT&T could never seek any payment from the complaining customer, and the SunTrust agreement is that SunTrust's agreement contains two fee-shifting provisions, which put a litigant at risk of paying SunTrust's enormous attorneys' fees and expenses in arbitration. One fee-shifting provision states that a party who fails to dismiss a lawsuit when an arbitration demand has been made "shall be liable to the other party for all reasonable costs and expenses, including attorneys' fees, incurred in enforcing this provision." *See* Rules and Regulations, p. 23 [**DE # 1848-1**]. SunTrust does not dispute that this provision, on its face, likely exposes Plaintiff to the bank's legal costs to date. Indeed, SunTrust makes specific mention that it sent Mr. Moore a letter requesting he submit his claims to arbitration. *See* Motion to Compel, p. 5. Second, SunTrust also threatens to recover its fees associated with any arbitration through the inclusion of a fee-shifting provision in favor of the prevailing party:

> [t]he prevailing party shall be entitled to an award of the costs and expenses of the arbitration including an award of reasonable attorneys' fees for any Claim(s) in which the party has prevailed, except as otherwise required by law.

11

*See* Rules and Regulations, p. 24. Here, Mr. Moore cannot afford to pay SunTrust's legal fees and costs associated with pursuing his claim in arbitration. Moore Decl., ¶ 12. Thus, the differences between the AT&T arbitration clause in *Concepcion* and the SunTrust arbitration clause cannot be overstated.

This Court previously found that SunTrust's ability to immediately seize attorney's fees as the prevailing party them from a customer's account under the language of the Rules and Regulations rendered the arbitration clause unconscionable. *See* Sept. 1, 2011 Order, pp. 10-14 [**DE # 1853**]. The Court explored in great detail the one-sided and unfair nature of the Rules and Regulations. These findings are dispositive under Florida law.

SunTrust attempts to minimize this concern by stipulating that the bank will not seek to recover attorneys' fees or costs against Mr. Moore. *See* Motion to Compel, p. 9, n.8 [**DE # 1848**]. Such a stipulation is not relevant to the unconscionability analysis. Numerous courts have found that attempts to stipulate or waive contractual requirements are not permitted. *E.g.*, *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663 (6th Cir. 2003) ("Because the employer drafted the arbitration agreement, the employer is saddled with the consequences of the provision as drafted. If the provision, as drafted, would deter potential litigants, then it is unenforceable, regardless of whether, in a particular case, the employer agrees to pay a particular litigant's share of the fees and costs to avoid such a holding"); *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 304-05 (4th Cir. 2002). Moreover, under Florida law, the relevant inquiry is the time the contract was made, not based on rationalizations adopted after contract formation. *Reuter*, 2006 WL 3743016, at *3; *also Pendergast*, 592 F.3d at 1135; *Cappuccitti*, 623 F.3d at 1124 (relevant inquiry takes place under circumstances at the time the parties entered into the contract). In this instance, the Court should not consider any evidence from the bank either after February of 2002, when Mr. Moore opened his account with SunTrust, or after May of 2009, when Mr. Moore stopped doing business with SunTrust. *See* Aff. of R. Scott, ¶¶ 5, 8. Where arbitration was adopted by a corporation years after contract formation – which is undeniably the case here – and the corporation then concedes that it will not enforce the actual text of its arbitration clause, unconscionability is strongly suggested.

In addition to being unconscionable based on its fee-shifting language, various other terms in the arbitration clause in this case, when read separately or together, render it substantively unconscionable for the primary reason that it effectively precludes SunTrust

customers from bringing a claim for SunTrust's improper imposition of overdraft fees, thereby insulating SunTrust from liability. This vindication of rights inquiry was expressly preserved by the Eleventh Circuit in *Cruz*. 2011 WL 3505016, at *8 (noting that its decision and *Concepcion* left open "the possibility that in some cases, an arbitration agreement may be invalidated on public policy grounds where it effectively prevents the claimant from vindicating her [rights]").

The requirement that claims be brought on an individual basis combined with the two fee-shifting provisions means that an individual plaintiff, with the low-dollar claims at issue here would have to find an attorney who is willing to take on such an individual case with the attendant risk of the client's having to pay SunTrust's attorneys' fees and expenses if SunTrust prevailed. This is highly unlikely. *See* Moore Decl., ¶ 12. In fact, a plaintiff's attorney has previously confirmed this unfortunate conclusion after reviewing SunTrust's Rules and Regulations. *See* Decl. of S. Crowe, ¶¶ 12, 18-19 [**DE # 1688-4**]. Lawyers will not arbitrate these claims on an individual basis because, among other reasons, the time spent would easily exceed the actual damages at issue. *See* Decl. of S. Crowe, ¶¶ 13-15, 18.

Moreover, as the Eleventh Circuit has previously recognized, consumers could not bring claims like those asserted here without counsel since most consumers would never know that they even had a claim against SunTrust under the legal theories advanced here for overdraft charges. *See Gordon*, 2011 WL 1111718, at *3-4 (finding that a consumer would need an attorney to successfully prosecute the exact claims at issue here); *Scott v. Cingular Wireless*, 161 P.3d 1000, 1007 (Wash. 2007); *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 275-76 (Ill. 2006); *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 562 (Cal. Ct. App. 2005). Further, Mr. Moore has affirmed that he will not proceed with his claims without counsel. Moore Decl., ¶ 14.

The Eleventh Circuit's finding in *Gordon* is instructive. In response to the bank's suggestion that an individual could pursue these claims on their own, the court found,

> We agree that in some circumstances, the small-claims forum would be a viable option for consumers seeking to bring claims that a layperson may reasonably be expected to pursue without the assistance of an attorney. Gordon's claims, however, are plainly not of the kind that could be effectively prosecuted without the benefit of attorney assistance.
> . . .
> At oral argument, BB&T claimed that Gordon would have no difficulty in mounting the factual allegata needed to support her claims without the assistance of an attorney. Even assuming arguendo that BB&T is correct, however, Gordon

13

would still likely require an attorney to successfully marshal and prosecute the complex legal arguments surrounding her factual showings.

2011 WL 1111718, at *3-4. Thus, because the individual claims are too small and too factually and legally complex to be arbitrated by an attorney for an individual client, the SunTrust Rules and Regulations effectively immunize the bank from liability.

The AAA consumer arbitration statistics confirm this result. *See* AAA Consumer Arbitration Statistics (Exhibit B hereto). These statistics reveal that over the past six years, there have been a total of only seven arbitrations filed with the AAA against various SunTrust entities. *Id.* More importantly, the lowest claim brought in arbitration was $10,000, in a home construction dispute. *Id.* The remaining claims ranged in value from $73,000 to $5,000,000. *Id.* Mr. Moore seeks only a fraction of the $525 in overdraft fees that he paid. Moore Decl., ¶ 13. Clearly low-value claims like those being pursued by Mr. Moore are not brought by individuals in arbitration as SunTrust would have this Court believe. The cost of arbitration, particularly against a well-funded large corporation like SunTrust is far too high to permit any consumer lawyer to represent an individual consumer with such a small claim. *See* Decl. of S. Crowe, ¶¶ 12, 16.

Moreover, SunTrust customers like Mr. Moore cannot bring claims like those asserted here without discovery from the bank, and the use of an expert. *See* Moore Decl., ¶ 15. A consumer would not be able to prove from their monthly statements which overdraft fees were improper. While SunTrust does not adopt specific rules of the AAA, under either the Commercial Rules or the Consumer Supplement a customer has no right to take discovery. Rules and Regulations, p. 22; AAA Consumer Supp., §§ C-5, C-6 (failing to provide for discovery or experts); AAA Commercial Rules, § R-21 (arbitrator "may" allow document requests but not depositions); AAA Expedited Proc., §§ E-5, E-7. As the district court found in *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Ca. 2010), calculating damages in connection with the pursuit of overdraft claims like the ones brought by Plaintiff here requires detailed work by an expert. That court found that expert Arthur Olsen was able to "determine how many overdrafts were added by the high-to-low practice for debit-card transactions during the class period," but that "Court orders were needed to provide him access to this data." *Id.* at 1138; *see also* Decl. of A. Olsen, ¶¶ 17-32 [**DE # 1688-7**] (noting that computation of damages requires access to SunTrust's records, as account statements do not

have sufficient information). As Mr. Olsen has stated that "without access to internal SunTrust documents and databases and the assistance of an expert, Plaintiff, his counsel, and even an expert like myself, would not be able to conclusively prove that the overdraft fees reflected on [the plaintiff's] statement were the result of SunTrust's re-sequencing of debit card transactions, and the total amount of overdraft fees resulting from SunTrust's re-sequencing of debit card transactions." *Id.* at ¶ 2. Indeed, the great complexity of that determination and the amount of work and expertise required is self-evident from Mr. Olsen's declaration, and it is quite clearly beyond the capability of Plaintiff. *See id.* ¶¶ 9-14, 16-30; Moore Decl., ¶ 15. Plaintiff has no means to hire and pay an expert the thousands of dollars required to prove their claim – *see* Moore Decl., ¶¶ 14-15 – and the arbitration process will not enable him to obtain the discovery necessary to prove that he has been damaged by SunTrust's practices. When combined with the inability to hire an attorney, Plaintiff has been effectively foreclosed from vindicating his claims in arbitration. Moore Decl., ¶¶ 14, 16.

     SunTrust's attempts to avoid a finding of unconscionability are quite puzzling. First, SunTrust's reliance upon *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118 (11th Cir. 2010), for the premise that Mr. Moore could have brought a claim for attorney's fees under the Georgia Fair Business Practices Act is undermined by the fact that *Cappuccitti* was decided under Georgia law, not Florida law. The Eleventh Circuit's holding in *Cappuccitti* does not apply here for several other reasons. Plaintiff is a Florida resident who used his debit card almost exclusively in Florida. *See* Moore Decl., ¶¶ 1, 6. Thus, he has no ability to pursue claims under Georgia's Fair Business Practices Act ("FBPA"). The mere fact that Mr. Moore engaged in a transaction that was routed through the State of Georgia does not mean he has a valid FBPA claim against SunTrust, particularly since there has been no showing that Mr. Moore was assessed an overdraft fee on a transaction originating in Georgia.

     Even if *Cappuccitti* was not decided under Georgia law, the facts there are completely inapposite. The defendant in *Cappuccitti* showed that a FBPA claim was known to the plaintiff and that counsel for the plaintiff even admitted to purposefully avoiding a FBPA claim. 623 F.3d at 1126. This very specific factual finding has not occurred in this case. Nor could it for the reasons stated above. Moreover, there is no evidence here that Plaintiff complied with the 30-day notice procedures required by O.C.G.A. § 10-1-399(b) in order to prefect a claim under the FBPA. At the moment Plaintiff contracted with SunTrust, which is the relevant moment of

15

inquiry according to the panel in *Cappuccitti*, not only was there no arbitration clause within SunTrust's Rules and Regulations, but Plaintiff had not provided SunTrust with a 30-day notice required under the law. As the failure to provide the 30-day notice required under the statute results in a forfeiture of the benefits of the code section – *e.g.*, *Rewis v. Browning*, 265 S.E.2d 316, 319 (Ga. Ct. App. 1980) – it is clear that Plaintiff does not have a claim that would entitle him to attorneys' fees at the time the contract was made. *Cappuccitti* does not apply and frankly SunTrust's desperate effort to "jam a square peg in a round hole" undermines the credibility of its entire Motion.

Equally as unpersuasive is SunTrust's attempt to rely upon the Florida Consumer Collection Practices Act, Fla. Stat. § 559.77, as part of its argument regarding the availability of attorneys' fees for prevailing parties. *See* Motion to Compel, p. 10 n.9. The Florida Consumer Collection Practices Act deals with violations by entities collecting debts from consumers and has absolutely no application to this case. Florida's consumer protection statute, the Florida Deceptive and Unfair Trade Practices Act, explicitly exempts banks from regulation. *See* Fla. Stat. § 501.212 (exempting banks from suit). SunTrust's attempted reliance on the availability of attorneys' fees by Mr. Moore fails.

In sum, the facts of this case and the totality of these circumstances demonstrate that, as in *Powertel*, the arbitration clause in substantively unconscionable under Florida law. Moreover, the arbitration clause is unconscionable because consumer plaintiffs like Mr. Moore cannot vindicate their rights on an individual basis in arbitration, essentially immunizing SunTrust from liability for its improper conduct.

**IV.     Conclusion.**

For the foregoing reasons, the Court should deny SunTrust's Motion.

Dated:  September 29, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard, 11th Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

| | |
|---|---|
| /s/ Ruben Honik | /s/ Ted E. Trief |
| Ruben Honik, Esquire | Ted E. Trief, Esquire |
| Pennsylvania Bar No. 33109 | New York Bar No. 1476662 |
| rhonik@golombhonik.com | ttrief@triefandolk.com |
| Kenneth J. Grunfeld, Esquire | Barbara E. Olk, Esquire |
| Pennsylvania Bar No. 84121 | New York Bar No. 1459643 |
| kgrunfeld@golombhonik.com | bolk@triefandolk.com |
| GOLOMB & HONIK, P.C. | TRIEF & OLK |
| 1515 Market Street | 150 E. 58th Street |
| Suite 1100 | 34th Floor |
| Philadelphia, PA 19102 | New York, NY 10155 |
| Tel: 215-985-9177 | Tel: 212-486-6060 |
| Fax: 215-985-4169 | Fax: 212-317-2946 |

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596