IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

| | | |
|---|---|---|
| IN RE : | § | |
| | § | |
| **CHECKING ACCOUNT** | § | **CASE NO. 09-MD-02036** |
| | § | |
| **OVERDRAFT LITIGATION.** | § | |
| | § | |
| <u>MDL No. 2036</u> | § | |
| | § | |
| **THIS DOCUMENT RELATES** | § | |
| **TO FIRST TRANCHE TRANSACTIONS** | § | |
| | § | |
| *Tornes, et al. v. Bank of America N.A.* | § | |
| S.D. Fla. Case No. 1:08-cv-23323-JLK | § | |
| | § | |
| *Yourke, et al. v. Bank of America, N.A.* | § | |
| S.D. Fla. Case No. 1:09-cv21963-JLK | § | |
| N.D. Cal. Case No. 3:09-2186 | § | |

**OBJECTION TO MOTION FOR FINAL APPROVAL OF SETTLEMENT,
APPLICATION FOR SERVICE AWARDS, AND
CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES
[Refers to Dk. No. 1885]**

COMES NOW, Prentiss Jenkins, Kirk A. Kennedy, Marvelus Sattiewhite III, Johnson W. Sattiewhite, Fay Robinson, and Anthony McMahon, class members of the above referenced Plaintiffs' class (the "Class Members")[1], by and through undersigned counsel and hereby file their Objection to the Motion for Final Approval of Settlement, Application for Service Awards, and Class Counsel's Application for Attorneys' Fees (the "Motion"). In support hereof, Class Members state as follows:

---

[1] Each of the Class Members herein are current or former holder of depository accounts with Bank of America N.A. and were charged overdraft fees on debit card charges during the relevant periods. None of the Class Members have filed objections to any class action settlements in the past five (5) years.

I.

### INTRODUCTION AND SUMMARY OF OBJECTIONS

The proposed class action settlement with class defendant Bank of America, N.A. ("BofA") suffers from significant problems that prevent this Court from approving the proposed settlement in its current form (the "Proposed Class Settlement"). The Proposed Class Settlement is not fair to the Class. It gives a windfall to defendant BofA and pays a disproportionate amount of the settlement proceeds to Class Counsel at the expense of class members. The Proposed Class Settlement appears to violate Class Counsel's duty to serve the interests of class members and not the interests of Class Counsel or third parties to the litigation. With some material modifications, however, the Proposed Class Settlement could potentially be approved.

**A.    Pre-certification Settlement Agreements should be Evaluated Closely to Assure Fairness to Class Members and to Prevent Collusive Settlements.**

In the instant case, Class Counsel and BofA are seeking approval of a settlement prior to certification of the class. It is well established that class settlements that are proposed prior to formal class certification require a higher standard of fairness. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000); *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). Where a court is confronted with a settlement-only class certification, the court must look to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for

the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).

B.     **The Proposed Class Settlement Should Not Be Approved by the Court**

Class Counsel's Motion for Final Approval of Settlement (Dk. No.1885) is riddled with puffery and statements that are inaccurate, misleading and untrue. Class Counsel assert that they successfully negotiated a settlement "after more than two years of hard-fought litigation…This result is nothing short of extraordinary." [Motion, p. 4]. The Class Members agree that the settlement in this case is an "extraordinary" result, but not in any sense asserted by Class Counsel.

This result is extraordinary in that: (1) class members will not be sufficiently compensated for damages suffered as a result of BofA's conversion and taking of billions of dollars in customer funds; (2) BofA will reap extraordinary profits from wrong-doing that worked severe injustice and distress to millions of class members who were charged billions in unauthorized overdraft fees; (3) Up to 14% of the Net Settlement Fund (approximately $40 million) may be paid to a non-profit charity for class members who cannot be contacted and not redistributed to Class Members; and (4) Class Counsel will receive an effective 33.26% attorney fee ($123 million)[2] which disproportionately rewards Class Counsel, who appear to be serving their own interests instead of the interests of the class members.

---

[2] The 33.26% effective attorneys' fee recovery sought by Class Counsel is calculated by subtracting 14% of the *Cy Pres* award ($40.18 million) from the Settlement Fund ($410 million) and then dividing $123 million (amount sought by Class Counsel) by the difference ($369.82 million) thus yielding an effective return to Class Counsel of 33.26% assuming the Cy Pres award is 14%. Assuming the Cy Pres award is 5%, the return to Class Counsel is 31.2%. In sum, Class Counsel should not be awarded attorneys' fees based on $410 million since the value of the settlement *that will be realized by the Class* is less than $410 million.

Class Counsel also seek fees for representing a large group of class members who they *assert* cannot be contacted, but for whom they claim "success" in representing as Class Counsel. These funds would be considered "unclaimed" and subject to a *cy pres* award dictated by BofA and Class Counsel. If, in fact, these individuals cannot be identified or contacted, allocating amounts to these unidentified members in a class settlement and diverting the funds into a charity of Class Counsel's choosing is grossly unfair to the class. Such funds should be distributed to class members who can be identified and who can actually obtain relief.

The inadequate recovery for class members, coupled with the staggering amount of attorneys' fees proposed in this case, and unwarranted *cy pres* award demonstrate that Class Counsel have placed their interests, and the interests of third parties ahead of their own putative class clients. Given the obvious defects in the proposed settlement, one must seriously question whether Class Counsel and the named representatives can fairly and adequately represent the class under Rule 23(a)(4), Federal Rules of Civil Procedure.

Based on the limited information provided by Class Counsel, the Class Action Fairness Act of 2005 ("CAFA") and Eleventh Circuit precedent, it appears that instead of 33.26%, an appropriate attorney fee award should be limited to a range of 10% to 20% of any final court approved settlement.

**II.**

**HISTORY OF THE LITIGATION REVEALS THAT CLASS COUNSEL'S DESCRIPTION OF THEIR EFFORTS AND THE RESULTS ACHIEVED ARE INACCURATE, MISLEADING AND UNTRUE**

Class Counsel asserts that this settlement was reached after "two years of hard-fought litigation." [Motion, p. 2]. An objective review of the docket reveals that the

actual time spent in litigation was five (5) months, not two years.  The rest of time the case was stayed or spent by Class Counsel working on a quick settlement deal.  The following chronology is instructive:

1. After filing of the Complaint, and some initial pleadings filed, discovery was stayed on November 13, 2009.  [Order Staying Discovery, Dk. No. 148].

2. After the Order Staying Discovery, Defendant BofA filed a Motion to Dismiss the Amended Complaint. [Dk. No. 217].

3. The Court conducted a hearing on the Motion to Dismiss and entered an order refusing to dismiss the primary claims made by the Class against BofA. [Dk. No. 305].

4. On May 13, 2010 the stay on discovery was lifted by this Court and a trial date of October 31, 2011 was set. [Dk. No. 463].

5. Class Counsel propounded discovery sometime in mid-May 2010. However, on September 8, 2010, the case was again stayed by this Court following the Eleventh Circuit Court of Appeals decision in *Cappucitti v. DirectTV, Inc.* 611 F.3d 1252 (11th Cir. 2011) (holding jurisdictional defects when no class member's claim exceeds $75,000). [Dk. No. 790].

6. On October 15, 2011 the Eleventh Circuit *en banc* vacated its decision in *Cappucitti*. *See Cappucitti v. DirectTV, Inc.* 623 F.3d 1118 (11th Cir. 2011)(vacating prior ruling on lack of subject matter jurisdiction). After the *en banc* decision, this Court lifted the stay allowing Class Counsel to continue discovery and allowing the case to proceed.

7. Immediately after the Eleventh Circuit vacated its decision in *Cappucitti*, BofA agreed to mediation. Mediation formally began on December 17, 2010. [Motion, pp. 13-14].

8. Within 41 days, BofA agreed to settle the class action case for $410 million. [*See* Motion, pp. 13-14].

9. The proposed settlement was agreed to <u>before</u> discovery was completed and <u>before</u> the class was able to formulate its damages model. [Motion, p. 24 (Class Counsel stating "Significant discovery$^3$ occurred in this case prior to the Settlement…While that discovery was not complete, it

---

$^3$ It is unclear whether the discovery conducted was, in fact, "substantial." Discovery of a million documents is not, on its face, unusual in a case involving millions of customers spanning more than a decade. It appears only two (2) depositions were taken in the entire case.

5

> nonetheless afforded Settlement Class Counsel insight into the strengths and weaknesses of their claims against BofA."]
>
> 10. Active discovery was only conducted for a period of five (5) months before the focus of the case turned to settlement and mediation as opposed to fact gathering and statistical analysis.

While Class Counsel and BofA may well consider this settlement "extraordinary" and a success, the Class members have suffered a significant loss. For these reasons explained below, the Court should reject the proposed settlement in its current form. In particular, the award of attorney's fees and distributions to non-class members under *cy pres* violate Class counsel's fiduciary duties to their clients and violates the letter and spirit of the Class Action Fairness Act of 2005.

### III.

#### THE SETTLEMENT AMOUNT IS INADEQUATE AND SHOULD BE INCREASED

The amount of the proposed settlement—$410 million—is low given the amount of overdraft-fees that BofA charged and collected from its customers. BofA's improper collection efforts spanned more than a decade (2001-2011) and resulted in billions of dollars in overdraft fees without the knowledge or consent of its customers.[4] The damages model in this class action is significantly higher than $410 million.

The damages model has not been fully explored, developed, or presented to the Court for evaluation. The Motion and supporting declarations in support of settlement, including the declaration of plaintiffs' damages expert, Arthur Olsen, provide scant detail of damages analysis. [*See, e.g.*, Olsen Declaration, p. 2 at ¶ 4, Exhibit 6 to Motion (hereinafter "Olsen Declaration")]. To gauge the reasonableness of the proposed settlement, it is necessary to compare that amount ($410 million) with the potential range

---

[4] Class Counsel admits that the overdraft fees illegally collected by defendant BofA totaled "*billions* of dollars". [Motion, p. 23].

6

of recoveries based on the actual overdraft charges collected during the relevant period (2001-2011). Further, discovery in this case did not begin in earnest until May 13, 2010, when the stay on discovery was lifted by this Court. In fact, active discovery was only conducted for a period of less than five (5) months before the focus of the case turned to settlement and mediation as opposed to fact gathering and statistical analysis of damages. As such, the settlement amount appears insufficient given the facts and case history. Discovery is necessary to determine whether Class Counsel has properly evaluated alleged litigation risks that dictated a settlement that awarded less than full relief to class members.

The stated difficulties in proceeding with litigation are insufficient to justify an early settlement that does not fully compensate victims of BofA's fraud where, as here, the profits to be retained by BofA through its misconduct justify the alleged risks of litigation.

### IV.

#### CY PRES RELIEF BREACHES CLASS COUNSEL'S DUTY TO THE CLASS

Class Counsel and defendant BofA propose that instead of distributing all the settlement proceeds to members of the Class, they will distribute up to 12.5% of the Settlement to a charity of their choice. [Motion, pp. 17-18]. However, the Settlement Agreement states that up to 14% of the Net Settlement Fund will be distributed to charity. [Settlement Agreement and Release, p. 29 at ¶ 82 attached as Exhibit "A" to Motion (hereinafter "Settlement Agreement")]. It is unclear why the Motion represents that 12.5% is the maximum amount of the Net Settlement Fund will be given to charity when the Settlement Agreement states 14%.

Nonetheless, at 14% this represents an amount of up to $40.18 million that will not be distributed to Class Members. As such, the proposed *cy pres* is a breach of Class Counsel's fiduciary duty to the class by valuing the recovery of a third party over the recovery to the unnamed class members, and cast serious question as to whether they can fairly and adequately represent the class. *See* American Law Institute, *Principles of the Law: Aggregate Litigation* § 3.07 (2010).

Moreover, the Motion suggests that neither Class Counsel nor BofA has adequate data to identify the Class Members who may have incurred overdraft charges during the period January 1, 2001 through September 30, 2003. [Motion, pp. 17-18]. However, Arthur Olsen, Plaintiff's data expert on the BofA account information, states that he was able to identify all BofA accounts from the period January 1, 2001 through May 24, 2011. [Olsen Declaration, p. 2 at ¶ 4]. If Olsen was able to identify all accounts, it seems to reason that the identity of each class member associated with that account would also be available, thus bringing into question the need for any distributions to non-class members. This inconsistency between Olsen's statement and the representations of Class Counsel needs to be explained before $40 million is taken from the class and distributed to charity.

*Cy pres* may be appropriate where the transaction costs of distributing a settlement among class members is not feasible. *Id*. However, this settlement already contains a method to distribute funds for class members. Thus, *cy pres* is not appropriate.

### A.   A *Cy Pres* Award in this Case Violates ALI Principles

Similarly, the ALI Principles make it clear that distribution of residual funds should not be the subject of *cy pres* in this type of settlement. The settlement should

"presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair." *Id*. at § 3.07(b). The class has not been fully compensated, so additional pro rata distributions would not be a windfall requiring *cy pres*. *See In re Pharmaceutical Industry Avg. Wholesale Price Lit*., 588 F.3d 24 (1st Cir. 2009) (approving *cy pres* of unclaimed funds where district court ensured full treble recovery of class members first).

All settlement proceeds should be distributed to the Class unless the transactional costs of distribution is not economically feasible. If class members wish to donate to charity with their settlement funds, they are free to do so. Such decisions should not be made by Class Counsel or the Bank of America at the expense of class members.

### B. Case Precedent Does Not Support *Cy Pres* Relief

Federal courts will not approve settlements that have inappropriate *cy pres* provisions. Based on the reasoning above, this Court should follow the numerous courts that have rejected settlements because of inappropriate *cy pres* awards. *Molski v. Gleich*, 318 F.3d at 954-55 (9th Cir. 2003) (reversing settlement approval); *Masters v. Wilhemina Model Agency, Inc*. 473 423 (2d Cir. 2007) (reversing settlement approval); *In re Airline Ticket Comm'n Antitrust Litig*., 307 F.3d 679, 682 (8th Cir. 2002) (reversing settlement approval); *In re American Tower Corp. Securities Litig*., 648 F. Supp. 2d 223, 224-225 (D. Mass. 2009) (reversing settlement approval); *SEC v. Bear Stearns & Co*., 626 F. Supp 2d 402, 415 (S.D.N.Y. 2009) (reversing settlement approval); *In re Wells Fargo Securities Litig*., 991 F. Supp. 1193, 1197 (N.D. Cal. 1998) (reversing settlement approval).

### C. *Cy Pres* Relief in this Case Constitutes a Breach of Fiduciary Duty

There are inherent risks of a conflict of interest in allowing *cy pres* distributions. Martin H. Redish, *et. al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010 (*cy pres* threatens to undermine the due process interests of absent class members by disincentivizing the class attorneys in their efforts to assure [class wide] compensation of victims of the defendants' unlawful behavior).[5]

In the instant case, Class Counsel knows that most, if not all the *cy pres* relief cannot be granted; however, instead of allocating the funds to class members who are entitled to relief, Class Counsel wants to assign millions of dollars to charity instead of his putative clients. The charity to be named is not Class Counsel's client. Indeed, the proposed *cy pres* flagrantly disregards the interests of class members who are clients of Class Counsel. The failure of Class Counsel and the Class Representative to put the interests of the class first in negotiating this settlement raises serious questions under Rule 23(a)(4). Such conduct violates the fiduciary duty of Class Counsel and the Class representatives to fairly and adequately represent the class.

---

[5] *See* Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, Columbia Bus. L. Rev..1014 (2009); Theodore H. Frank, *Cy Pres Settlements*, CLASS ACTION WATCH (March 2008).

      D.    If *Cy Pres* Relief is Granted, the Award Should not be Counted in Calculating the Award of Attorneys' Fees or Benefit to the Class

The Court should not count the $40.18 million *cy pres* as a class benefit when calculating attorneys' fees.[6] *Mirfasihi v. Fleet Mortgage Corp.*, 346 F.3d 781, 784 (7th Cir. 2004) ("There is no direct benefit to the class from the defendant's giving the money to someone else."). *Murray v. GMAC v. Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). Any funds distributed to non-class members by definition do not provide a tangible economic benefit to the Class. Arguably, any benefit realized from a *cy pres* award of this magnitude is realized exclusively by Class Counsel who seek to increase their attorneys' fees based on distributions to non-clients and to defendant BofA who can state that it has donated millions to consumer literacy programs.

### IV.   THE PROPOSED ATTORNEYS' FEES ARE EXCESSIVE

The Proposed Class Settlement seeks to award Class Counsel $123 million in attorneys' fees which is thirty (33.26%) of the $410 million Settlement Fund. This amount is excessive for several reasons. Class Counsel represent to this Court that their fees "fall at the low end of the average in the private market-place." [Motion, p. 47]. This statement is inaccurate and untrue.

Fee awards to class counsel were exhaustively studied in a 2009 Cornell University Law Faculty Working Paper by Theodore Eisenberg and Geoffrey P. Miller, entitled *Attorneys' Fees and Expenses in Class Action Settlements (1993-2008)*(hereinafter "Cornell Class Fee Study")]. The average class counsel fee awarded in

---

[6] The $40.18 million proposed *cy pres* distribution is based on the 14% distribution set forth in the Settlement Agreement. *See* Settlement Agreement, p. 29 at ¶ 82 (setting maximum *cy pres* distribution at 14% of Net Settlement Fund).

all federal courts is 25% of the common fund for class actions (1993-2008). *Class Fee Study*, p. 12, Table 3.

### A. Class Counsel's Request for Thirty Percent Fees is Excessive and Unconscionable.

The mean class action fee award in the Eleventh Circuit during the period 1993-2008 is 16.94%.[7] *Cornell Class Fee Study*, p.12, Table 4.  While in various sections of their brief, Class Counsel recognize *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ("*Camden I*") as controlling precedent on class actions in the Eleventh Circuit, counsel conspicuously failed to cite *Camden I* in their argument for a 30% fee.  This omission is understandable—*Camden I* holds that a twenty-five (25%) contingent fee is the benchmark for class fees in this Circuit.  *See Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 775 (11th Cir. 1991) *cited in Cornell Class Fee Study*, p. 13 at n. 13.  Thus, in line with *Camden I*, Class Counsel's fees should be no more than 25% at the high end.  Indeed, the Court should award fees in the range of 10% to 20%.

### B. Class Counsel Failed to Provide Information for a Lodestar Analysis of Fees

It is significant to note that Class Counsel do not provide any details that allow class members or the Court to compare fees on a percentage basis against the lodestar methodology.  As pointed out by Professors Theodore Eisenberg and Geoffrey P. Miller, courts often check the percentage fee request against the lodestar method to assess whether the percentage fee is excessive.  *Cornell Class Fee Study*, p. 23.  Here, there is

---

[7] Although Professor Miller is a retained expert and has provided a declaration in support of Class Counsel's claim for fees, his analysis data, and conclusions seem to contradict his own published study on the subject of class action fee awards.  Compare *Cornell Class Fee Study*, p.12, Table 4 *with* Declaration of Geoffrey P. Miller, pp. 18-20 attached as Exhibit H to Motion.

no data on lodestar and no way to confirm the reasonableness of the Class Counsel fee. No fee should be awarded until such time as Class Counsel provide lodestar data to all parties and objectors.

Another factor to be considered is that this case lasted only two (2) years and discovery was incomplete. If one considers the stays that were in effect during the case, this case was short-lived by any objective measure. This militates in favor of reduction of a dramatic reduction in the requested fee.

## V.

### THE PROPOSED SETTLEMENT GIVES DEFENDANT BOFA BROAD FORM RELEASES THAT ARE BEYOND THE SCOPE OF THE CLAIMS IN THIS CLASS ACTION

The Proposed Class Settlement Agreement contains release language that is too broad. Specifically, the releases given to BofA include all claims and causes of action held by class members since January 1, 2001 that were actually alleged "*or could have been alleged* in the Action". [Settlement Agreement, ¶ 98 (emphasis added)]. This language is too broad and could be used by BofA to release legal claims held by class members that are not part of the Action. As such, the releases are too broad and should only include claims that are based on the transactions at issue in the Action. The Settlement Agreement should be modified to clarify that only claims arising from the transactions at issue in the Action will be released.

## VI.

### THE CLASS MEMBERS SHOULD BE AFFORDED ACCESS TO DISCOVERY OF BOFA DOCUMENTS AND DEPOSITIONS TAKEN BY THE PARTIES AND SHOULD BE ALLOWED ADDITIONAL TIME TO REVIEW THE RECORD AND AMEND THEIR OBJECTIONS TO ADD AND/OR SUPPLEMENT THEIR OBJECTIONS

Review of the pleadings, Class Counsel's Motion, and the Proposed Settlement Agreement provide limited insight into the issues raised in this case. Access to depositions taken, as well as documents produced by BofA, will allow the Objectors an opportunity to address issues that go to the merits of the case, and address both the fairness of the settlement, as well as the proposed award of attorneys' fees to Class Counsel.

Class Counsel and BofA have litigated this matter for two years and presumably are well grounded in the facts of the case. In contrast, Objectors have had a limited time to retain counsel and review the facts and legal issues before the Court. Accordingly, Objectors request the Court, or Special Master if appointed, set reasonable deadlines for disclosure of relevant documents to Objectors and deadlines for additional objections or amendment of objections.

## VII.

### CONCLUSION

For the reasons stated above, The Class Members request that their objections be sustained, that Plaintiffs' Motion for Final Approval of Settlement Application for Service Awards, Class Counsel's Application for Attorney's Fees be denied and that an order be entered setting the deadlines to conduct discovery on the Motion and for all other relief which is fair, just and equitable. The Class Members further request that the Court allow the them additional time to add and amend their objections upon further review and examination of the pleadings and evidence, such amendment to be

accomplished by or before October 24, 2011.[8]  Class Members further request an award of costs and attorneys' fees as may be deemed just and appropriate.

Dated:  October 3, 2011

Respectfully submitted,

**ALDERMAN & KODSI**

By:  /S  *Neil Kodsi*
    Neil Kodsi
    Florida Bar No. 0011255
    Shoreview Center
    9999 N.E. 2nd Ave.
    Suite 211
    Miami Shores, Florida 33138
    Tel: (305) 200-5473
    Fax: (305) 200-5474

**AND**

**THE COCHELL LAW FIRM**

By:  /S  *Stephen R. Cochell*
    Stephen R. Cochell
    Texas Bar No. 24044255
    Fed. Bar No. 0032453
    7026 Katy Road, Suite 259
    Houston, Texas 77024
    Tel: (713) 980.8796
    Fax: (713) 980.1179
    srcochell@cochellfirm.com

Motion for Limited Appearance Pending

Attorneys for Class Members and Objecting Parties Prentiss Jenkins, Kirk A. Kennedy, Marvelus Sattiewhite III, Johnson W. Sattiewhite, Fay Robinson, and Anthony McMahon

---

[8] Counsel were retained approximately one week prior to the deadline for filing objections.  Given the complexity of the case, opportunity to amend the objections would be in the best interest of justice.  FED.R.CIV.P. 15.

## CERTIFICATION OF CLASS MEMBERS

I hereby certify that I am a member of the group of Class Members who are objecting to the Proposed Class Settlement for the reasons stated herein and also certify that I have not filed any objection to a class action lawsuit in the past five years. At least one of the members of our group will appear and testify at trial or at hearing on approval of the settlement in this matter.

*Prentiss Jenkins*
Prentiss Jenkins

*Kirk A. Kennedy*
Kirk A. Kennedy

*Marvelus Sattiewhite III*
Marvelus Sattiewhite III

*Johnson M. Sattiewhite*
Johnson M. Sattiewhite

*Fay Robinson*
Fay Robinson

*Anthony McMahon*
Anthony McMahon

## CERTIFICATE OF SERVICE

I certify that on October 3, 2011 a true and correct copy of Objection to the Motion for Final Approval of Settlement, Application for Service Awards, and Class Counsel's Application for Attorneys' Fees was served on all parties in this adversary proceeding by electronic mail, first class mail, facsimile and/or via the ECM/ECF system.

_____/S/ *Neil Kodsi*_____
Neil Kodsi