**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

|  | ) |  |
|---|---|---|
| In re: Checking Account Overdraft Litigation | ) | 1:09-MD-2036-JLK |
|  | ) |  |

**OBJECTION OF ELIZABETH M LOCKE, MICHELLE W LOCKE, MICHAEL V. VILECE, FRANK J. VILECE, TODD TAYLOR AND TAYLOR HUGHES AND NOTICE OF INTENTION TO APPEAR**

NOW COMES Class Members Elizabeth M. Locke and Michelle W. Locke, 3253 Austin Street, Corpus Christi, TX 78404, Michael V. Vilece and Frank J. Vilece, P.O. Box 27134, Houston, TX 77227-7134, Todd Taylor, 900 Olympic Court, College Station, Texas 77845, and Taylor Hughes, 273 East Circuit Drive, Beaumont, Texas 77706, and object to the proposed settlement of this class action and the request for attorney's fees. Elizabeth Locke has had a Bank of America consumer checking account that she could access with a Bank of America debit card since 2004, and is still an active account holder and debit card user.  Michael Vilece has had a Bank of America consumer checking account that he could access with a Bank of America debit card since 1995, and is still an active account holder and debit card user.  Todd Taylor has had a Bank of America consumer checking account that he could access with a Bank of America debit card since 1996, and is still an active account holder and debit card user.  Taylor Hughes has had a Bank of America consumer checking account that she could access with a Bank of America debit card since 2004, and is still an active account holder and debit card user. Each of the Objectors received a postcard notice of the settlement in the mail.  Objectors each were charged one or more overdraft fees as a result of Bank of America's practice of posting debit transactions from highest to lowest amounts during the Class Period.  Each

of the Objectors has read this objection filed on his or her behalf and indicated their endorsement and adoption of this objection by their signature.

I.      **The Subclass of Consumers Whose Claims Arose After the Date of the *Closson* Release Require Separate Representation and  a Higher Recovery.**

Not all class members share the same interest in seeing the *Closson* release narrowed or the appeal of *Closson* filed by Lead Plaintiffs succeed.  Each of the class members covered by the *Closson* release assented to that release by failing to either opt out of or object to the *Closson* settlement.  Those class members who became Bank of America customers after the date of the *Closson* release have stronger claims than those class members whose claims were completely or partially released as a result of that settlement.   In short, there is an absence of the unity of interests necessary for certification of a unitary settlement class.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999).

In Plaintiffs' Motion for Final Approval of Settlement, class counsel concedes that the settlement on behalf of the post-*Closson* class could have been far more generous than one that encompasses all of the released claims dating back to 2001.  On page 27 of that Motion, class counsel states that $410 million "represents between forty-five (45%) and nine percent (9%) of their anticipated total recovery, depending on how the *Closson* appeal was resolved..."  In other words, this settlement represents 45% of the value of claims arising after December 2007, but a mere 9% recovery when the arguably released claims of the 80% of class members whose claims arose before 2007 are factored in.  In addition to disserving the interests of the 20% of class members who are entirely unaffected by *Closson*, the proposed settlement represents the kind of allocation decision

prohibited by *Ortiz, supra* – all class members' claims are compensated identically, even though some of those claims are stronger than others.

Recently, in *In re: Literary Works in Electronic Databases Copyright Litig.*, 2011 U.S. App. LEXIS 17026 (2nd Cir. Aug. 17, 2011), the Second Circuit applied the *Ortiz* holding to a proposed settlement that disfavored a particular subclass, and clarified that the mere fact that the lead plaintiffs happened to be members of the disfavored subclass does not overcome the fact that no one was advocating for the interests of the subclass alone. *Id*. at *23.

This case is identical to *Ortiz, supra*, in which one subclass of class members held claims that were more valuable than another subclass' because they were covered by insurance. The Supreme Court held that claims based on asbestos exposure that occurred when the defendant was insured had a "much higher" settlement value than those for exposure that occurred after the insurance had expired. 527 U.S. at 823 n.2. "The very decision to treat them all the same is itself an allocation decision with results almost certainly different from the results that those with ... claims of indemnified liability would have chosen." *Id*. at 857.

Here, it is quite clear that the claims that arose after December 2007 are far stronger than those that arose before that date, for the simple reason that those claims are unaffected by the *Closson* release, and do not depend upon class counsel prevailing in their appeal of that case in order to proceed. Therefore, the post-2007 claims are at a minimum entitled to a higher rate of compensation than the pre-2007 claims.[1]

---

[1] This intra-class conflict makes the proposed payment of 12.5% of the settlement fund to cy pres recipients even more objectionable. The 12.5% amount was determined based on the ration of 2001-2003 damages to all damages during the Class Period, without discounting for the fact that those claims are weaker than

The Lead Plaintiffs, like the Objectors here, may in fact hold both post-2007 claims and the weaker pre-2007 claims. Whether any class member would be better off with a fair allocation that accurately reflects the relative strength of pre- and post- July 2008 claims cannot be answered without access to each class member's distribution of overdraft fees. If, for example, the amount paid for post-2007 claims were doubled, and the amount for pre-2007 claims cut in half, a class member who had an equal distribution of overdrafts would be better off under an allocation that comports with *Ortiz.* For someone with 2/3 of their overdrafts pre-2007, and 1/3 post-2007, the result would be a wash.[2]

Regardless of what impact a re-allocation of the settlement to comport with *Ortiz* would have on any individual class member, the proposed settlement must be rejected for failing to adequately represent and compensate class members whose claims arose after 2007. The fact that the Lead Plaintiffs, or objectors for that matter, happen to be members of both the pre-2007 and post-2007 classes does not eliminate the issue of inadequate representation of the post-2007 subclass. Depending upon the distribution of a class member's overdrafts during the Class Period, any given class member may be made better off by properly allocating the settlement according to the strength of the claims.

Objectors hereby adopt the previously filed Objections of Richard Hastings and Janel Buycks with regard to the settlement's inadequacy generally, but especially with regard to those class members whose accounts were opened after December 2007.

---

post-2007 claims. Accordingly, the 12.5% cy pres payment should be reduced to reflect the weakness of the 2001-2003 claims based on *Closson*.
[2] Obviously, for a class member who became a Bank of America customer after July 2008, revising the allocation to reflect the relative strength of their claims would be a net benefit.

The Court should reject the proposed settlement and decertify the settlement class for failing to adequately represent the post-2008 subclass, and for failing to allocate the settlement fund based on the relative strength of each class member's claims.

## II.   Class Counsel's Requested Fee is Unreasonable for a Megafund Recovery.

While correctly noting the Eleventh Circuit's expressed preference for the common fund method of awarding attorneys' fees, class counsel grossly overstate the range of percentages awarded in cases of this magnitude.  In a case that has lasted just 2 years from filing to settlement, a 30% fee would be unconscionable and inconsistent with the trend toward awarding smaller percentage fees in cases that result in recoveries in the hundreds of millions of dollars.  *Cf. Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1189 (S.D. Fla. 2006) (approving 31% fee because case lasted fifteen years, resulted in two trials, and involved extensive appeals including one to the United States Supreme Court).

The average fee award in all cases settling for more than $100 million (so-called "megafund" cases)  was 15% in 2003.  *See Exhibit A*.  As noted above, the trend in recent years has been to award more modest fees in megafund cases and to avoid windfalls for class counsel.  *See e.g.*, *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 57 (2d Cir. 2000).  Therefore, the average fee award in cases settling for more than $100 million would likely be even lower in 2011 than it was in 2003.[3]

There is no reason to depart from the benchmark established by megafund cases here.  This case lasted just two years.  During that time, class counsel was pursuing cases

---

[3] The statement in *Camden I Condominium Ass'n v. Dunkle* that the majority of common fund fee awards fall between 20% to 30% of the fund is 20 years out of date, and does not apply to megafund settlements in any event.  The fund in *Camden I*, after all, was just $3 million, and the awarded fee was $1 million.  The lone citation in *Camden I* for the 20%-30% range was to *Newberg*.

against other First Tranche defendants in addition to Bank of America.  The risk borne by class counsel was modest given the quick settlement.  Accordingly, a 15% fee award to class counsel would appear to be more than adequate in the circumstances of this case, and class counsel has not borne its burden of establishing that it is entitled to anything more to avoid unjust enrichment of the class.[4]

### III.    A Lodestar Cross-Check Should be Required in this Case.

Class counsel has requested the extraordinary fee of 30% of $410 million, or $123 million, without seeing fit to provide their lodestar or to calculate a lodestar-multiplier for the requested fee.  In undersigned counsel's experience, this is unprecedented.  It would not be permitted in the district from which one of these cases was transferred, and it should not be permitted here.  *See In re: Bluetooth Headset Prods. Liab. Litig.*, 2011 U.S. App. LEXIS 17224 at *21 (9th Cir., Aug. 19, 2011) (courts required to guard against unreasonable fees by cross-checking against second method, regardless of primary method used).

Indeed, district courts in the Eleventh Circuit have routinely employed a lodestar cross-check for guidance in assessing the reasonableness of a percentage fee award.  *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001) (finding that multiplier of 1.45 does not require higher percentage award, in case settled for $110 million); *Pinto v. Princess Cruise Lines Ltd.*, 513 F. Supp. 2d 1334, 1343 (S.D. Fla. 2007) (approving lodestar multiplier of 1.2 in $4.25 million settlement).

---

[4] The only factor that could possibly argue for a higher percentage award would be class counsel's lodestar, but class counsel has neglected to provide this figure, which is routinely disclosed in virtually all class action settlements in which a fee is requested.  The only inference to be made from this omission is that the lodestar  is relatively small and would not support a larger fee.

The first factor set forth in *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), is "the time and labor required." *Id*. at 772. In this Circuit, that factor has been interpreted to mean the number of hours that class counsel spent on the case – in effect, a lodestar cross-check. Class counsel neglect to provide that figure in their Motion for Final Approval, instead providing a summary description of tasks performed and number of documents reviewed. While these tasks clearly consumed attorney time, that time may not have exceeded 40,000 hours, which would result in a lodestar of only $20 million at an average hourly rate of $500. Clearly, a $123 million fee would be unreasonably excessive if that were true.

There are three reasons why class counsel should be required to provide detailed information to satisfy the first factor set forth in *Camden I*, and to enable this Court to perform a lodestar cross-check. First, this is a megafund settlement, unlike *Camden I* and *Pinto, supra*, and therefore the lodestar will provide critical information to the Court about what percentage is reasonable in the circumstances of this case. Second, this case settled in 2 years, in contrast to *Allapattah, supra*, and therefore one would not expect that class counsel's lodestar would exceed $20 million. Third, as in *Sunbeam, supra*, the number of hours class counsel can fairly attribute to the Bank of America settlement is only a fraction of the total hours spent by class counsel in this consolidated litigation against all of the First Tranche defendants. It would be improper to permit class counsel to use all of its hours against non-BofA defendants to justify its fee in this settlement. *See Sunbeam, supra*, 176 F. Supp. 2d at 1334 ("the total hours spent on this case cannot be supposed to be identical to those spent on the settlement with this particular defendant").

A 30% fee, resulting in a lodestar multiplier of 6 or higher, would be an excessive and unreasonable fee in the context of this case.  Courts in this Circuit have held that a lodestar multiplier of 1.45 is adequate.  *See Sunbeam, supra*, 176 F. Supp. 2d at 1336. The only appropriate way to set a percentage fee in a case of this magnitude, and such short duration, is to require the percentage to be informed by the first *Camden I* factor – the time and labor required – which class counsel has improperly failed to quantify.

## IV.    Objectors' Attorneys' Experience.

Objectors object to the onerous and unreasonable requirement contained in the Settlement Agreement that they and their attorneys identify each time they have objected or represented an objector for the past five years.  Such a requirement is designed to deter competent and counseled objections, by imposing such a burden on potential counsel that no class member can retain competent representation.

Without waiving these objections, the Objectors state that none of them has ever objected to a class action settlement before.  Furthermore, the Objectors' primary counsel, Ernest Browne, has not represented an objector to a class action settlement during the past five years.[5]  Local counsel Brian Silverio has never represented an objector to a class action settlement.

---

[5] Mr. Browne does currently serve as the lead plaintiff in the BP oil spill litigation proceeding in Texas, where he is represented by Lieff Cabraser.

## CONCLUSION

For the foregoing reasons, this Court should deny approval to the proposed Settlement unless the allocation is amended to reflect the relative strength of post-*Closson* claims, and should award class counsel no more than 15% of the fund, or $61.5 million, in attorneys' fees.

Respectfully submitted,

*s/ Brian M. Silverio*
Brian M. Silverio
FL Bar #0183301
Silverio & Hall, P.A.
150 West Flagler Street
Penthouse - 2850
Miami, Florida 33130
(305) 371-2756
(305) 372-2744 (Fax)
bsilverio@silveriohall.com

*s/Ernest J. Browne, Jr.*
ERNEST J. BROWNE, JR.
BROWNE & BROWNE
2380 Eastex Freeway
Beaumont, TX 77703
(409) 898-2123 Telephone
(409) 898-2126 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing has been served via transmission of Notices of Electronic Filing generated by CM/ECF on October 3, 2011 and was filed with the Clerk of Court using CM/ECF, and that as a result a copy of this filing has been served upon every counsel of record.

*/s/ Brian Silverio*

Signed By:

_____
Michael V. Vilece, Objector

_____
Elizabeth M. Locke, Objector

_____
Todd Taylor, Objector

_____
Taylor Hughes, Objector

Signed By:

_____                    _____

Elizabeth M. Locke                          Michael V. Vilece

Signed By:

_____
Elizabeth M. Locke

_____
Michael V. Vilece