# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 1:09-MD-02036-JLK

---

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS**

***Tornes, et al. v. Bank of America, N.A.***
**S.D. Fla. Case No. 1:08-cv-23323-JLK**

***Yourke, et al. v. Bank of America, N.A.***
**S.D. Fla Case No. 1:09-cv-21963-JLK**
**N.D. Cal. Case No. 3:09-2186**

---

## OBJECTION AND NOTICE TO APPEAR

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that class members Brooklyn Sarro and Megan Marek ("Objectors") intend to appear through counsel at the Rule 23 fairness hearing in the above-captioned matter to discuss the following objections to the proposed settlement.

## Objection No. 1 – The Release is Overbroad

The release in this case is overbroad in light of the claims made in the underlying pleadings. For example, the *Tornes* Third Amended Complaint asserts that Bank of America "[r]equires it customers to enter into standardized account agreements which include unconscionable provisions." The Settlement Agreements sets forth the release beginning at Paragraph 98. The breadth of the release is confirmed by Paragraph 101 which includes limiting language to ensure nothing in the Settlement Agreement is construed to effectuate a release of, for example, any loans or debts a class member may owe Bank of America. It is possible the Settlement Agreement could be construed so as to release claims relating to, for example, fraudulent usage of debit cards. The settling parties should amend the Settlement Agreement to provide that there is no release based upon a routine *individual* dispute with Bank of America regarding payment of a class member's personal account statement unassociated with overcharge fees.

## Objection No. 2 – The Settlement Codifies Prior Bank Overcharges

Pursuant to this settlement, Bank of America retains the overwhelming bulk of the money gained from its improper overcharge scheme. Meanwhile, class members merely receive approximately nine cents on the dollar. This is unfair and unreasonable. The notice fails to set forth the class members shall only receive

reimbursement for approximately one overcharge while allowing Bank of America to retain its ill gotten gains.

**<u>Objection No. 3 – The Attorneys' Fee Award</u>**

The settling parties request thirty percent of the common fund, in this case well in excess of $100 million.  The settling parties have not shared the respective lodestar of class counsel and this makes responding to the underlying fee application difficult.  See *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) ["Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests. When the district court sets a schedule that denies the class an adequate opportunity to review and prepare objection to class counsel's completed fee motion, it fails to fulfill its fiduciary responsibilities to the class."]

Separate and apart from the inadequate opportunity to evaluate all evidence with regard to the underlying fee application prior to the objection deadline, the substantive request is problematic in light of the methodology utilized.  This is a diversity case pursuant to the *Class Action Fairness Act* predicated on violations of state law claims as opposed to any federal claims; *to wit*, in the *Yourke* Amended Complaint [first claim for relief, breach of implied covenant of good faith and fair dealing; second claim for relief, conversion; third claim for relief, unjust enrichment and restitution; fourth claim for relief, violation of California's

3

Business and Professions Code Section 17200, *et seq.*]; in the *Tornes* Third

Amended Consolidated Complaint [first claim for relief, breach of contract and

breach of covenant of fair dealing; second claim for relief, unconscionability; third

claim for relief, conversion; fourth claim for relief, unjust enrichment; fifth claim

for relief, violation of various state unfair trade practice laws.]  See *Erie R. Co. v.*

*Tompkins*, 304 U.S. 64 (1938); *McMahon v. Toto*, 256 F.3d 1120 (11th Cir. 2001);

*Mangold v. California Public Utilities Commission,* 67 F.3d 1470 (9th Cir. 1997)

["Existing Ninth Circuit precedent has applied state law in determining not only

the right to fees, but also in the method of calculating fees."]  In *Mangold*, the

Ninth Circuit noted that "In *Shakey's* [referring to *Shakey's Inc. v. Covalt*, 704

F.2d 426 (9th Cir. 1983)], the court held that state substantive law governs the

award of fees in diversity actions, but the decision whether to hold an evidentiary

hearing in deciding the fee question is procedural."]  As a result, it would appear,

contrary to the analysis offered by the settling parties, that state substantive law

with regard to fee jurisprudence; in this case, the State of Florida, would be

applicable and not the federal jurisprudence relied upon.

   Even if *Erie* and its progeny do not independently control the outcome with

respect to the fee award, Paragraph 124 of the operative Settlement Agreement

provides, in pertinent part, "[t]he Agreement **shall be construed in accordance**

**with, and be governed by, the laws of the State of Florida**, without regard to the

4

principles thereof regarding choice of law." (emphasis added).  The parties therefore agreed to be bound by substantive Florida law (and perhaps even procedural) with regard to settlement construction and governance and this would seem to apply to any fee determination made by this Court.  Conceivably, the parties could have stipulated to utilize some other procedure or substantive law but designated the State of Florida's to apply here.

In light of the aforementioned, the percentage of the fund method does not appear to square with applicable Florida law.  *Florida Dep't of Revenue v. Kuhnlein*, 646 So. 2d 717 (Fla. 1994).  Rather, the settling parties are required to utilize the lodestar/multiplier method and comport with the requirements of the Florida Supreme Court.  It appears that the fees sought are excessive.

**Objection No. 4 – The Settlement and Notice Stifles Meritorious Objections**

The Settlement Agreement, Preliminary Approval Order and Class Action Settlement Notice require that in order for a class member to file an objection to the settlement, he or she must include *inter alia*, "information about other objections your or your lawyer have made in other class action cases."  This simply has not correlation to class member standing and whether the underlying settlement is fair, adequate and reasonable.  The concept that objections filed by an attorney in other cases on behalf of other clients has any relevance whatsoever flies in the

face of the system of justice this country has maintained for over two hundred years.

In simplest terms, the parties appear to suggest that merely by Objectors' counsel appearing in other class action settlements and representing class members who object to proposed settlements, that a conclusion can be drawn that the instant objections should be disregarded. The parties misconstrue (or alternatively desire to ignore) the intent of the law which provides for a procedure for class members who are not the named representatives to be represented and to have a voice in the determination as to whether the settlement is, in fact, fair, adequate, and reasonable.

The provisions of the Settlement Agreement requiring information concerning unrelated and irrelevant matters are designed to chill class member dissent and amount to an improper prior restraint. Nevertheless, Objectors have attempted to comply with these onerous procedures as evidenced by the exhibits to this Objection. In any event, if these objectionable provisions are enforced with regard to absent class members, it would be appropriate to apply the rule equally and require that the settling parties and their counsel identify any other cases in which they have filed class action complaints, defended against class actions, or objected to class action settlements.

1.      **<u>Objectors Play A Vital Role In Assisting Court Determination Of
The Fairness, Adequacy, And Reasonable Of The Prospective
Settlement</u>**

As has been noted in case law and by the commentators as quoted below, the
vast majority of class members have absolutely no knowledge that a class action is
pending or the status of a class action until notice of a proposed settlement is sent
to class members.  As a practical matter, whether a case has been pending for two
months or ten years is not relevant with regard to the real world involvement of
class members who desire to object to a proposed settlement.

Class members who are not named representatives are given notice of a
proposed settlement only after a proposed settlement has been preliminarily
approved by the court.  It is at this point that class members begin to inquire about
their rights and the fairness of the settlement.  That is what is contemplated by
class action due process and that is exactly what happens in all class settlements,
including the proposed settlement in this case.  Due process dictates that once a
proposed settlement has been reached, the class members have a right to hire
counsel experienced in such matters and appear and be heard if such individual
believes the settlement to be unfair, unreasonable, or inadequate.  *Devlin v.
Scardelletti*, 536 U.S. 1, 10 (2002).

The critical and helpful role of objectors in class litigation has been
discussed in detail in case law and by learned commentators.  As has been

7

discussed universally in case law, the objective of the fairness hearing is to protect the interests of absent class members - not the named plaintiffs in the case.  While the law generally requires notice of a lawsuit and an opportunity for a hearing before any person can be bound by a court's judgment, applicable law clearly provides that in class actions the judgment - whether or not favorable to the class - shall be binding on all those whom the court finds to be members of the class.  The Supreme Court of the United States has made it clear that due process requires in all class action settlements that objecting class members be given sufficient standing so as to participate at the fairness hearing.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985).

As noted in *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, in a class action, the absentee members of the class may not even learn of the proposed judgment until a tentative settlement has been struck on their behalf by the defendant and Class Counsel.  *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 680-81 (7th Cir. 1987).  When notice of a proposed settlement and notice of the class action are sent simultaneously, the absent class members may perceive it as *fait accompli*.  The potential for conflict of interest under these circumstances is substantial and, to some extent, unavoidable.  For these reasons, the role of the objector is critical in assisting the Court in ensuring the fairness of the settlement, even if the objectors are only few in number.

Legal scholars have expressed growing concerns about the conflicts that may arise between the class and its counsel: "These attorneys are not subject to monitoring by their putative clients, they operate largely according to their own self interests, subject only to whatever restraints might be imposed by bar discipline, judicial oversight, and their own sense of ethics and fiduciary responsibilities." Jonathan R. Macey & Geoffrey P. Miller, The Plaintiffs' Attorney's Role in Class Actions and Derivative Litigation, 58 U.CHI.L.REV. 1, 7-8 n.4 (1991); *see also* John C. Coffee, Jr., Rethinking the Class Action, 62 IND.L.J. 625, 628-629 (1987) (listing several factors that have contributed to "entrepreneurial" class action litigation, including the relatively low cost of filing dubious class action suits, the large amounts defendants are willing to pay in settling these suits and the incentive for class counsel to invest little time or effort in protecting the absent class members), John C. Coffee, Jr., The Regulation of Entrepreneurial Litigation: Balancing Fairness and Efficiency in the Large Class Action, 54 U.CHI.L.REV. 877-879 (1987) (outlining proposed rule changes that would "manipulate the incentives that the law holds out so as to motivate" class counsel to defend the absent class members as they would any other client). Kenneth W. Dam, Class Actions: Efficiency, Compensation, Deterrence, and Conflict of Interest, 4 J.LEGAL STUD. 47, 61 (1975) (coining the phrase "lawyer-entrepreneur" in reference to class counsel).

Judge Posner, in his Richard A. Posner, "An Economic Analysis of Law," at 570 (4th ed. 1992), noted:

> [T]he absence of a real client impairs the incentive of the lawyer for the class to press the suit to a successful conclusion.  His earnings from the suit are determined by the legal fee he receives rather than the size of the judgment.  No one has economic stake in the size of the judgment except the defendant, who has an interest in minimizing it.  The lawyer for the class will be tempted to offer to settle with defendant for a small judgment and a large legal fee, and such an offer will be attractive to the defendant, provided the sum of the two figures is less than the defendant's net expected loss from going to trial.  Although the judge must approve the settlement, the lawyers largely control his access to the information-about the merits of the claim, the amount of work done by the lawyer for the class, the likely damages if the case goes to trial, etc. - that is vital to determining the reasonableness of the settlement.

2.     **The Potential For Abuse Of The Class Action Procedure Points Out The Importance Of The Trial Court's Obligation, With The Assistance Of Objecting Class Members, To Determine That The Protective Requirements Of Rule 23 Are Met When It Approves A Class Action Settlement**

While the court generally plays a relatively detached role in most civil proceedings, in a class action the court is the guardian of class interest. *Weinberger v. Kendrick*, 698 F.2d 61, 69 n. 10, cert. denied, 464 U.S. 818, 104 S. Ct. 77, 78 (1983); *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 216, 223 (2d Cir.), cert. denied 484 U.S. 926 (1987); *In re Corrugated Container Antitrust Litig.*, 643 F. 2d 195, 225 (5th Cir. 1981), cert. denied, 456 U.S. 998 (1982);

10

*Piambion v. Bailey*, 610 F. 2d 1306, 1327 (5th Cir.), cert. denied, 449 U.S. 1011 (1980); 2 NEWBURG & CONTE, § 11.41, at 11-93 to 11-94.  The trial court therefore bears the burden under Rule 23 to police the proceedings to minimize conflicts of interest and, primarily, to protect absent class members:

> The drafters designed the procedural requirements of (class action law), so that the court can assure, to the greatest extent possible, that the actions are prosecuted on behalf of the actual class members in a way that makes it fair to bind their interest.  The rule thus represents a measured response to the issues of how the due process rights of absentee interests can be protected and how absentees' represented status can be reconciled with a litigation system premised on traditional bipolar litigation.  *In re General Motors Corp.*, 55 F.3d at 785.

In simplest terms, the critical role of the Court, joined by objectors, with regard to class settlement review is to act as guardian for absent class members in ensuring that the settlement is fair, adequate, and reasonable.  If in fact the settlement is fair, adequate, and reasonable in all aspects, the Court, the defendant, and class counsel should welcome the presence of class members who did not participate in the discovery and settlement procedures in their role of further confirming that the settlement meets the applicable criteria.

Typically, however, class counsel and the defendant do everything possible to minimize or even eliminate the role of any would-be objector.  Class counsel and defendant's counsel must be aware that most individuals in a class settlement cannot afford and will not go to the effort to seek legal counsel even if they are

greatly dissatisfied with the proposed settlement.  Through these procedures, class

counsel and defendant's counsel can totally control the settlement hearing and

virtually exclude the court from hearing from class members about any matters that

the court might need to consider from the standpoint of the average class member.

**3.     The Role Of Objectors In Class Actions Is Critical In Ensuring That The Proposed Settlement Is Fair, Adequate, And Reasonable, And Benefits The Court In Its Rigorous Analysis**

The undersigned submits that this Court is served by knowledgeable

attorneys representing class members putting the settlement to the test in the hope

that the class will be the winner - not merely class counsel.  The Court's

determination with regard to final approval of the proposed settlement should boil

down to the unequivocal question in class action settlements, and that is whether

the settlement, as proposed, is fair, adequate, and reasonable.  The Court should

not condone any attempt by the settling parties to frustrate Objectors' due process

rights merely because they are unable or unwilling to address Objectors' concerns

on the merits.  Any attempt to shield the prospective settlement from unbiased

scrutiny should not be well taken.

## Conclusion

Objectors reserve the right to amend and refine their objections as more information is made available.  Additionally, Objectors adopt and incorporate herein by reference all objections expressed by other class members not adverse to the positions expressed herein.

In light of the foregoing objections, Objectors respectfully request that this Court deny final approval and reject the proposed class action settlement and class counsel's application for attorneys' fees.


Date:  October 3, 2011                                Respectfully submitted,


                                                      ___s/ John W. Davis_____.
                                                      John W. Davis (FL Bar No. 193763)
                                                      john@johnwdavis.com
                                                      Law Office of John W. Davis
                                                      501 W. Broadway, Suite 800
                                                      San Diego, CA  92101
                                                      Telephone:  (619) 400-4870
                                                      Facsimile:  (619) 342-7170

## CERTIFICATE OF SERVICE

## CASE NO.:  1:09-MD-02036-JLK

I hereby certify that on October 3, 2011, I filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date:  October 3, 2011

  s/ John W. Davis            .
John W. Davis