**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION,

MDL No. 2036

_____/

THIS DOCUMENT RELATES TO:

*Sachar, et al. v. IBERIABANK Corporation, et al.*
S.D. Fla. Case No. 1:11-CV-22844-JLK

_____/

**PLAINTIFFS' AND DEFENDANTS' JOINT MOTION FOR PRELIMINARY**
**APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT**
**CLASS AND INCORPORATED MEMORANDUM OF LAW**

21060932.1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................ 1

II.     STATEMENT OF FACTS ................................................................... 3

        A.      Factual Background ............................................................... 3

                1.      Procedural History ...................................................... 3

                2.      Plaintiffs' Investigation.............................................. 5

        B.      Summary of the Settlement Terms ........................................ 5

                1.      The Settlement Class.................................................... 5

                2.      Monetary Relief for the Class ..................................... 6

                3.      Injunctive Relief for the Class .................................... 7

                4.      Class Release ............................................................... 7

                5.      The Notice Program..................................................... 8

                        (a)     The Mailed Notice Program............................... 9

                        (b)     The Published Notice Program ......................... 10

                        (c)     The Settlement Website and the Toll-Free
                                Settlement Line ............................................... 10

                6.      Settlement Administration ......................................... 11

                7.      Settlement Termination.............................................. 11

                8.      Class Representative Service Awards......................... 11

                9.      Attorneys' Fees and Costs ......................................... 11

III.    MEMORANDUM OF LAW ............................................................. 12

        A.      The Legal Standard for Preliminary Approval ..................... 12

        B.      This Settlement Satisfies The Criteria For Preliminary Settlement
                Approval. ............................................................................ 14

                1.      This Settlement Is The Product Of Good Faith, Informed
                        and Arm's Length Negotiations.................................. 14

                2.      The Facts Support a Preliminary Determination that the
                        Settlement is Fair, Adequate and Reasonable............. 15

                        (a)     Likelihood of Success at Trial ........................ 15

                        (b)     Range of Possible Recovery and The Point on or
                                Below the Range of Recovery at Which a
                                Settlement is Fair ............................................ 16

                        (c)     Complexity, Expense and Duration of Litigation ............ 17

## TABLE OF CONTENTS
(continued)

**Page**

    (d)    Stage of the Proceedings ................................................... 17

C.    Certification Of The Settlement Class Is Appropriate............................ 18

D.    The Court Should Approve The Proposed Notice Program, Because It Is Constitutionally Sound....................................... 20

E.    The Court Should Schedule A Final Approval Hearing. ........................ 21

IV.    CONCLUSION ................................................................................ 22

## I.    <u>INTRODUCTION</u>

The Parties respectfully move for preliminary approval of the Amended Settlement Agreement and Release ("Settlement" or "Agreement", attached hereto as Exhibit 1), which would resolve Plaintiffs' claims against IBERIABANK Corporation and IBERIABANK (collectively, "IBERIABANK") in the above-captioned actions (collectively, the "Action").[1] The Court should grant preliminary approval because the $2.5 million Settlement provides substantial monetary relief to the Settlement Class, because IBERIABANK's modification of the order in which IBERIABANK Debit Card Transactions are posted to Settlement Class Members' Accounts provides substantial injunctive relief to the Settlement Class, and because the terms of the Settlement are within the range of reasonableness, consistent with applicable case law.

The Settlement is an excellent result for the class of IBERIABANK account holders defined in paragraph 51 of the Settlement Agreement (the "Settlement Class").  Accordingly, the Parties respectfully request that the Court approve the Settlement's Notice Program and the form and content of the Notices attached hereto as Exhibits 2-6; certify a Settlement Class under Rule 23 of the Federal Rules of Civil Procedure; and schedule a final approval hearing.  The Settlement satisfies all Eleventh Circuit criteria for preliminary settlement approval.  For the Court's convenience, the Parties attach, as Exhibit 8, a proposed Order that grants preliminary approval and approves the Notice Program, certifies the Settlement Class, and schedules a final approval hearing.

Plaintiffs sued on behalf of themselves and all others similarly situated who incurred overdraft fees as a result of IBERIABANK's practice of re-sequencing debit card transactions from highest dollar amount to lowest dollar amount ("Debit Re-sequencing").  Plaintiffs allege that IBERIABANK systemically re-sequenced Settlement Class Members' debit transactions to maximize IBERIABANK's overdraft fee revenue.  According to Plaintiffs, these practices violate IBERIABANK's contractual and good faith duties to the Settlement Class, violate state unfair trade practices laws, and result in conversion and unjust enrichment.

Although IBERIABANK maintains that it did nothing improper, the Parties have agreed to a settlement that includes monetary consideration in the amount of $2.5 million and injunctive relief that will eliminate the practice of re-sequencing IBERIABANK account holders' debit card

---

[1] "Action" and all other capitalized defined terms used throughout this memorandum have the same meanings ascribed in Section II of the Agreement.

transactions.  One of the keystones of this Settlement is that identifiable Settlement Class Members automatically — without having to do anything at all — will receive their *pro rata* share of the $2.5 million Settlement Fund.  Readily identifiable Settlement Class Members do not have to fill out claims forms, and will not be asked to prove that they were damaged as a result of IBERIABANK's Debit Re-sequencing.  Instead, Class Counsel (as defined in paragraph 15 of the Agreement) and experts will use available IBERIABANK data to determine which identifiable IBERIABANK checking, savings and demand deposit account holders ("Account holders") were affected by Debit Re-sequencing, and will apply a formula (described below and detailed in paragraph 75 of the Agreement) to calculate each identifiable Settlement Class Member's *pro rata* share of the Settlement Fund.  Settlement Class Members who cannot be readily identified based on IBERIABANK's data (Agreement ¶ 74) who submit a claim form will be entitled to a *pro rata* share of the Settlement Fun as described in paragraph 76 of the Agreement.

 This Action involves sharply opposed positions on several fundamental legal questions, including whether the Home Owners' Loan Act ("HOLA") preempts some or all of Plaintiffs' claims, and whether IBERIABANK violated its duty of good faith and fair dealing to its customers when it re-sequenced their debit transactions.  IBERIABANK consistently has argued that some or all of Plaintiffs' claims are preempted, and that relevant account agreements expressly authorize its re-sequencing practices.

 Further, the only federal appellate court to examine the key legal theories underlying this case — the Third Circuit in *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341 (3d Cir. 2010) — affirmed the district court's dismissal with prejudice of similar claims relating to the reordering of debit card transactions.  While Plaintiffs believe that *Hassler* is distinguishable based on the clarity of the bank's disclosures in question and are aware that there are district court decisions much more favorable to Plaintiffs' legal position,[2] there is no question that the legal theory is relatively new and there is a possibility that the Court could at some stage reject liability as a matter of law.  Even if this case went to trial, much would depend on the trier of fact's determination of whether IBERIABANK's disclosures of its overdraft and posting order

---

[2] *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010) (denying defendant banks' omnibus motion to dismiss); *Gutierrez v. Wells Fargo*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010).

practices were sufficiently clear.  Finally, even if liability is established, Class Members could be awarded substantially smaller damages or possibly no damages at all, and could be afforded no injunctive relief.  When evaluated within the context of the legal risks posed by these issues, the Parties believe that the proposed Settlement consisting of both monetary consideration and injunctive relief is an outstanding result meriting approval by the Court.

Plaintiffs have litigated this Action, first in state and federal court in Arkansas, and then as part of a coordinated multidistrict litigation in the Southern District of Florida.  The Parties also engaged in significant informal discovery.  Settlement discussions were held in April and May 2011, including a full day of lengthy, in-person, mediation sessions led by Gary McGowan, of McGowan Dispute Resolution in Houston, Texas.  With this motion, the Parties seek preliminary approval so that they can notify the Settlement Class Members of the Settlement terms, and provide them an opportunity to opt out of or object to the Settlement.

For all of these reasons, and those detailed below, the Parties respectfully request that the Court take the following initial steps in the settlement approval process: (1) preliminarily approve the Settlement; (2) certify the proposed Settlement Class for settlement purposes, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure, and appoint David J. Sachar and Christine M. Sachar as Class Representatives; (3) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices, attached hereto as Exhibits 2, 3, 4, 5 and 6; (4) approve and order the opt out and objection procedures set forth in the Agreement; (5) stay the Action against IBERIABANK pending final approval of the Settlement; (6) appoint as Class Counsel the attorneys and law firms listed in paragraph 15 of the Agreement; and (7) schedule a fairness hearing on final settlement approval to occur on April 16, 2012.

## II.     STATEMENT OF FACTS

### A.     Factual Background

The Parties reference the facts giving rise to Plaintiffs' claims and IBERIABANK's defenses to the extent pertinent to the issues raised in this joint motion.

#### 1.     Procedural History

Plaintiffs brought this case seeking monetary damages, restitution and injunctive relief from IBERIABANK, arising from IBERIABANK's alleged re-sequencing practices that Plaintiffs contend were designed to increase the number of overdraft fees its customers incurred.

*See generally* Plaintiffs' First Amended Complaint (Dkt. 28)[3].  As a result of IBERIABANK's manipulation of the order in which customers' debit transactions were posted, it is contended, customers' funds were depleted more rapidly than they should have been, and Plaintiffs and Class Members paid more overdraft fees than they should have paid.  *Id.* at ¶ 10.

IBERIABANK denies all of Plaintiffs' allegations.  *See generally* IBERIABANK's Brief in Support of Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 30).  IBERIABANK consistently has defended its conduct by, *inter alia*, highlighting language in the relevant account agreements that it contends expressly advises customers of and permits the re-sequencing practices at issue.  *Id.*  IBERIABANK also asserts that some or all of Plaintiffs' claims are preempted by HOLA.  Furthermore, IBERIABANK has advanced several other defenses, including that the UCC endorses the re-sequencing practices at issue, that Plaintiffs cannot maintain common law conversion or unjust enrichment claims, and that Plaintiffs' state statutory claims fail.

Settlement negotiations began in April 2011.  On May 18, 2011, the Parties participated in a full day of mediation under the auspices of Gary McGowan, an experienced mediator in Houston.  In preparation for and at the mediation, Class Counsel reviewed documentary evidence concerning IBERIABANK's relevant overdraft fee policies, the changes to those policies, and the revenue IBERIABANK derived from those policies.  As a result, counsel for both parties were able to assess the strengths and weaknesses of the case and determine with a reasonable degree of certainty the amount of damages the class might plausibly claim in the event it was successful at trial.

During the mediation, the parties discussed their relative views of the law and facts, and potential relief for the proposed Class.  Counsel exchanged a series of counter-proposals on key aspects of the Settlement.  At all times the negotiations were adversarial, non-collusive, and at arm's length.  On May 18, 2011, the Parties signed a Memorandum of Understanding that memorialized the Parties' agreement that Plaintiffs' claims against IBERIABANK would be released in exchange for IBERIABANK's agreement to pay $2.5 million into a Settlement Fund and to modify its transaction posting methodology.  Several weeks of intense negotiations

---

[3] All filings pertaining to the Action are docketed under S.D. Fla. Case No. 1:11-CV-22844-JLK, and all references to docket numbers will refer to this case number unless otherwise specified.

regarding the specific terms of the Settlement Agreement followed.   An initial Settlement Agreement was signed on June 3, 2011.

Between June 3, 2011 and October 18, 2011, the Parties engaged in a subsequent round of settlement negotiations, during which they agreed, *inter alia*, that any settlement of the Action should be evaluated and administered by this Court as part of MDL 2036.  On July 19, 2011, the Judicial Panel for Multi-District Litigation ("JPML") transferred the Action to this Court for coordinated pre-trial proceedings under MDL No. 2036.  Dkt. 37.  After transfer, the Parties continued to partake in settlement negotiations culminating in the execution of the Revised Settlement Agreement on October 18, 2011.

2.      <strong><u>Plaintiffs' Investigation</u></strong>

Apart from diligently investigating Plaintiffs' claims, Plaintiffs' counsel spent many hours investigating the claims of many of the plaintiffs in this MDL to gather information about banks' conduct and its impact upon consumers.  Plaintiffs' counsel also reviewed a great deal of documentary evidence, produced informally by IBERIABANK, regarding IBERIABANK's overdraft related policies and revenues.  This information was essential to counsel's ability to understand the nature of IBERIABANK's conduct, the language of the account agreements at issue, and potential remedies.

After the Parties executed the Memorandum of Understanding in connection with the initial Settlement Agreement, Plaintiffs engaged in extensive settlement-related investigation, to determine — among other things — an appropriate plan for allocation of the Settlement funds.  That investigation required Class Counsel to retain experts to analyze the relevant transactional data related to overdraft fees imposed upon Settlement Class members, and to help determine the fairest and most appropriate distribution formula in light of the data that IBERIABANK possessed.

B.      <strong><u>Summary of the Settlement Terms</u></strong>

The Settlement's terms are detailed in the Agreement, attached as Exhibit 1.  The following is a summary of the material terms of the Settlement.

1.      <strong><u>The Settlement Class</u></strong>

The Settlement Class is an opt out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.  The Settlement Class is defined as:

> All persons who maintained an IBERIABANK, IBERIABANK*fsb*, Acadiana Bancshares, LBA Savings Bank, Alliance Bank of Baton Rouge, American Horizons Bank of Monroe, Pulaski Investment Corporation, Pulaski Bank and Trust, Pochahontas Bancorp, Inc., First Community Bank, Omni Bank, or Cameron State Bank Account, within the applicable limitations period in the state in which the account incurred fees, or an ANB Financial, Capital South Bank, Century Bank, Orion Bank, or Sterling Bank Account after the date IBERIABANK assumed certain assets of those banks after each failed and the Federal Deposit Insurance Corporation was appointed as receiver, and within the applicable limitations period in the state in which the account incurred fees, who incurred one or more Overdraft Fees as a result of Debit Re-sequencing. Excluded from the Class are all current IBERIABANK employees, officers and directors, and the judge presiding over this Action.

Agreement ¶ 51.

### 2.      Monetary Relief for the Class

The Settlement requires IBERIABANK to deposit $2.5 million into an Escrow Account within 14 calendar days of this Court's preliminary approval of the Settlement.  Agreement ¶ 46. That deposit will create the Settlement Fund, which will be used to pay all distributions, fees, costs and expenses in the Settlement, including but not limited to distribution of money to the Settlement Class; all costs of Settlement Notice; all costs of Settlement Administration; and all attorneys' fees, costs and expenses of Class Counsel.  Agreement ¶¶ 46, 49.

Readily identifiable Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement.  Instead, within 30 days of the Effective Date of the Settlement (Agreement ¶ 22), IBERIABANK and the Settlement Administrator will distribute the Net Settlement Fund to all readily identifiable Settlement Class members who do not opt out of the Settlement.  Agreement ¶ 80.

All readily identifiable Settlement Class members who experienced a "Positive Differential Overdraft Fee" will receive a *pro rata* distribution of the Net Settlement Fund. Agreement ¶¶ 75, 80-83.  The Positive Differential Overdraft Fee analysis determines, among other things, which IBERIABANK Account holders were assessed additional overdraft fees that would not have been assessed if IBERIABANK had used a posting sequence or method for Debit Card Transactions (Agreement ¶ 20) other than ordering them from highest to lowest dollar amount, and how much in additional overdraft fees those Account holders paid.  The

calculation involves a complex multi-step process that is described in detail in the Agreement. Agreement ¶ 75. All Settlement Class Members that cannot be readily identified, but who submit a claim form (attached hereto as Exhibit 7), who experienced a "Positive Differential Overdraft Fee" will also receive a *pro rata* distribution of the Net Settlement Fund as described in detail in the Agreement. Agreement ¶ 76.

The Net Settlement Fund — which will be distributed *pro rata* among Settlement Class Members — is equal to the Settlement Fund, plus interest earned, less (among other things) Settlement Notice and Settlement Administration costs, attorneys' fees and costs, and Court-awarded Service Awards for the Plaintiffs. Agreement ¶ 79.

Payments to Settlement Class Member current account holders will be made by IBERIABANK crediting such Settlement Class Members' accounts, and notifying the Settlement Class members of the credit. Agreement ¶ 84. IBERIABANK will then be entitled to a reimbursement for any such credits from the Settlement Fund. Agreement ¶ 85. Former account holders (and current account holders whose accounts cannot feasibly be credited) will receive payment from the Settlement Fund by checks mailed by the Settlement Administrator. Agreement ¶¶ 84, 86.

Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member Payments. Agreement ¶ 87.

### 3. <u>Injunctive Relief for the Class</u>

The Settlement also requires IBERIABANK to changes its transaction posting practices so that Debit Card Transactions post to IBERIABANK Accounts in the order in which the transactions are authorized or settled. Agreement ¶ 50. This will assure that on or before the date of Preliminary Approval, and in the future, IBERIABANK Account holders will no longer be liable for any overdraft fees resulting from re-ordering of customer transactions.

### 4. <u>Class Release</u>

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will be deemed to have released IBERIABANK from claims related to the subject matter of the Action. The detailed release language can be found in Section XV of the Agreement.

5.      **The Notice Program**

The Parties have retained one of the leading class action notice experts in the country to serve as the Notice Administrator for this Settlement.  Hilsoft Notifications and its principals, Lauran Schultz and Cameron Azari, have developed and directed some of the largest and most complex national notification programs in the country.  *See* Hilsoft Notifications' curriculum vitae, annexed as Attachment A to the Notice Plan.  The Notice Program in this Settlement (Agreement, Section IX) is designed to be the best notice practicable, and it is tailored to take advantage of the information IBERIABANK has available about the Settlement Class Members.  The Settlement Fund will pay all Notice Program costs.

The Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, Class Counsel's Fee Application and request for Service Awards for Plaintiffs, and their rights to opt out of the Settlement Class and object to the Settlement, Class Counsel's Fee Application, and/or the request for Service Awards for Plaintiffs.  *See, e.g.,* Order Granting Preliminary Approval of Bank of America Overdraft Litigation Settlement (MDL Dkt. 1520), which, like the Agreement, provided for individual mailed notice to all identifiable settlement class members.  The Notice and Notice Program constitute sufficient notice to all persons entitled to notice.  The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirement of due process.

The Notice Program is comprised of four parts:  (1) direct mail statement insert notice to all readily identifiable Settlement Class Members that are current IBERIABANK Account holders who receive monthly paper statements; (2) direct mail postcard notice (the direct mail statement insert notice and the direct mail postcard notice are collectively referred to as "Mailed Notice") to all other readily identifiable Settlement Class Members; (3) publication notice ("Published Notice") designed to reach those Settlement Class Members for whom direct mail notice is not possible; and (4) a "Long Form" notice with more detail than the direct mail or publication notices, that will be available on the Settlement Web Site and via mail upon request.  Agreement, Section IX.

All forms of Notice to the Settlement Class will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class members may exclude themselves from or opt out of the Settlement Class; a date by which Settlement

Class members may object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class members may access the Agreement and other related documents and information.  Agreement ¶ 60; Exs. 2-6.

In addition to the information described above, the Long-Form notice will also describe the procedure Settlement Class Members must use to opt out of the Settlement or to object to the Settlement, and/or to Class Counsel's application for attorneys' fees.  *See* Ex. 6.  All opt outs must be received by counsel before the opt out deadline, and any objections must be received by counsel for the Parties by the objection deadline.  For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any such cases, and any relevant orders issued in response to such past objections; a statement confirming whether the objector will appear at the final approval hearing and a description of counsel or witnesses who will appear on behalf of the objector at the final approval hearing; and the objector's signature.  Agreement ¶ 62.

**(a)**     **The Mailed Notice Program**

The Notice Administrator will administer the Mailed Notice Program.  Within 28 days from the date that the Notice Administrator receives from Class Counsel and IBERIABANK the data files that identify the names and last known addresses of the identifiable Settlement Class Members, as set forth in paragraphs 65 and 74 of the Settlement, the Notice Administrator will run such addresses through the National Change of Address Database, and will mail to all such Settlement Class Members either statement inserts or postcards (Exs. 3 and 4, respectively) that contain the Mailed Notice (the "Initial Mailed Notice").

The Notice Administrator will perform reasonable address traces for all Initial Mailed Notice statement inserts or postcards that are returned as undeliverable.  No later than 35 days from the Initial Mailed Notice date, the Notice Administrator will complete the re-mailing of Mailed Notice statement inserts or postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces (the "Notice Re-mailing Process").

The Mailed Notice Program (both the Initial Mailed Notice and the Notice Re-mailing Process) will be completed by no later than March 1, 2012.  Within seven days after the date the

Notice Administrator completes the Notice Re-mailing Process, the Notice Administrator will provide Class Counsel and IBERIABANK's counsel an affidavit that confirms that the Mailed Notice Program was completed in a timely manner. Class Counsel will file such affidavit with the Court in conjunction with Plaintiffs' motion for final approval of the Settlement.

All costs associated with the Mailed Notice Program will be paid solely out of the Settlement Fund, as set forth in the Agreement.

<strong>(b)        The Published Notice Program</strong>

The Published Notice Program, for which the Notice Administrator is also responsible, is comprised of the following components: an approximate one-fifth page Summary Publication Notice (approximately 5" x 9") appearing once on a weekday in the major daily newspaper in eighteen selected media markets, which include the primary city locations of each of the banks acquired by IBERIABANK for which the Parties acknowledge that certain of IBERIABANK's records of customer accounts are not readily accessible, as described in paragraph 74 of the Agreement, and the media markets with the highest number of IBERIABANK branch offices. The Published Notice Program will be completed no later than March 1, 2012. All costs associated with the Published Notice Program will be paid solely out of the Settlement Fund, as set forth in the Agreement.

Within seven days after the date the Notice Administrator completes the Published Notice Program, the Notice Administrator will provide Class Counsel and counsel for IBERIABANK with one or more affidavits that confirm that Published Notice was given in accordance with the Published Notice Program. Class Counsel will promptly file such affidavit(s) with the Court.

<strong>(c)        The Settlement Website and the Toll-Free Settlement Line</strong>

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class Members to obtain notice of, and information about, the Settlement. The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Notice Program. The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, and such other documents as Class Counsel and counsel for IBERIABANK agree to post or that the Court orders posted on the Settlement Website. These documents will remain on the Settlement Website at least until Final Approval.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries.

### 6.      Settlement Administration

The Settlement Administrator is Epiq Systems ("Epiq"), one of the leading class action settlement administrators in the United States. Epiq's responsibilities include the following:

a.      Processing and transmitting distributions to Settlement Class Members from the Settlement Fund;

b.      Paying invoices, expenses and costs upon approval by Class Counsel and counsel for IBERIABANK, as provided in the Agreement; and

c.      Performing the duties of Escrow Agent as described in the Agreement, and any other Settlement-administration-related function at the instruction of Class Counsel and counsel for IBERIABANK. Agreement ¶¶ 56-58.

All fees and charges related to Settlement Administration will be paid from the Settlement Fund. Agreement ¶ 57.

### 7.      Settlement Termination

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court. Agreement ¶ 102. IBERIABANK also has the right to terminate the Settlement if the number of Settlement Class Members who timely opt out of the Settlement Class equals or exceeds certain amounts. Agreement ¶ 103.

### 8.      Class Representative Service Awards

Class Counsel will seek and IBERIABANK will not oppose Service Awards of $5,000 per named Plaintiff. Agreement ¶ 100. If the Court approves them, the Service Awards will be paid from the Settlement Fund, and will be in addition to the relief the Class Representatives will be entitled to under the terms of the Settlement. *Id.* These awards will compensate the representatives for their time and effort in the Action, and for the risk they undertook in prosecuting the case against IBERIABANK.

### 9.      Attorneys' Fees and Costs

IBERIABANK will not oppose Class Counsel's request for attorneys' fees of up to 30% of the Settlement Fund, net of Settlement-related costs and expenses, plus reimbursement of

litigation costs and expenses.  Agreement ¶ 96.  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.  Agreement ¶ 97.

## III.    MEMORANDUM OF LAW

### A.    The Legal Standard for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness."  4 Newberg § 11.26.  "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."  *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).  Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.  *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted); Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.28, at 11-59 (3d ed. 1992) (stating that counsel are "not expected to prove the negative proposition of a noncollusive agreement").

When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986.  Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage.  *See, e.g.*, *Smith*, 2010 WL 2401149 at *2.[4]  Because preliminary approval is simply the first step in the process of approving a settlement, Courts have typically screened proposed settlements to determine if they have "obvious deficiencies, such as unduly preferential treatment of class representatives ... or excessive compensation for attorneys." *Chin v. RCN Corp.*, No. 08-7349, 2010 WL 1257586, at *2 (S.D.N.Y. Mar. 12, 2010) (quoting MANUAL FOR COMPLEX LITIGATION § 30.41 (3d ed.) (1995).

The Settlement here has none of the obvious defects mentioned by courts.  The Settlement itself is not contingent upon approval of attorneys' fees or any incentive award to the Class Representatives.  The Court will separately and independently determine the appropriate amount of fees to award to Class Counsel and the appropriate amount of any award to the Class Representatives.  Accordingly, the Proposed Settlement treats all members of the Proposed Settlement Class equally and fairly, and there are no obvious deficiencies that should prevent preliminary approval.

The Court's grant of preliminary approval will allow all Settlement Class Members to receive notice of the proposed Settlement's terms, and of the date and time of the Final Approval Hearing at which Settlement Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the Parties.  *See* MANUAL FOR COMPLEX LITIGATION, at §§ 13.14, § 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may

---

[4] The Parties do not address the fifth factor related to objections to the Settlement in the context of this motion, because at this preliminary stage, Settlement Notice has not yet been distributed. The Parties address the remaining factors here, but reserve a more thorough discussion of each factor for the motion for final approval of the Settlement.

grant such relief upon an informal application by the settling parties, and may conduct any necessary hearing in court or in chambers, at the Court's discretion. *Id.* at § 13.14.

     **B.**      **This Settlement Satisfies The Criteria For Preliminary Settlement Approval.**

Each of the relevant factors weighs in favor of approval of this Settlement.  First, the Settlement was reached in the absence of collusion, and is instead the product of good-faith, informed and arm's length negotiations by competent counsel, in conjunction with an experienced mediator.  Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that the Settlement fits well within the range of reasonableness, such that preliminary approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  Plaintiffs maintain that the claims asserted are meritorious, that any motion for class certification would prove successful, and that Plaintiffs would prevail if this matter proceeded to trial.  IBERIABANK maintains that Plaintiffs' claims are unfounded and cannot be maintained as a class action, denies any potential liability, and has shown a willingness to vigorously litigate those claims.

The Parties have concluded that the benefits of settlement in this case outweigh the risks attendant to litigation, which include, but are not limited to, the time and expenses associated with proceeding to trial, the time and expenses associated with appellate review, and the countless uncertainties of litigation, particularly in the context of a large and complex multi-district litigation.

     **1.**      **This Settlement Is The Product Of Good Faith, Informed and Arm's Length Negotiations.**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case.  The parties engaged in contested mediation before an experienced and

respected mediator, Gary McGowan.  These negotiations were at arm's-length and extensive. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  And counsel for both sides zealously represented their clients leading up to the execution of the Settlement Agreement.

In negotiating this Settlement, Plaintiffs' counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive informal discovery with IBERIABANK. Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the case, and prepared counsel for well-informed settlement negotiations. *See Cotton*, 559 F.2d at 1332 (approving settlement over objection that not enough discovery was done; finding that the Plaintiff was adequately informed despite the fact that "very little formal discovery was conducted and that there is no voluminous record in the case").

### 2. The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable.

As noted, this Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement is warranted.

### (a) Likelihood of Success at Trial

Plaintiffs and Class Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available to IBERIABANK, and the risks inherent to litigation.  As noted above, Plaintiffs faced the risk of dismissal on various theories advanced at the motion to dismiss stage, including federal preemption and a legal challenge to the duty of good faith claim.  The success of Plaintiffs' claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial.

Further, while Plaintiffs believe that a class would be certified even over IBERIABANK's objection, there is always a risk that IBERIABANK would successfully block Class Certification.  But for the Settlement, IBERIABANK would have contested certification of the Class, and even if the Class was eventually certified by the Court, IBERIABANK would have likely taken any opportunity to argue for decertification as the Action progressed.  Further,

there is no assurance of maintaining certification of a class, as courts may exercise their discretion to re-evaluate the appropriateness of class certification at any time.  *See Calloway v. Westinghouse Elec. Corp.*, 642 F. Supp. 663, 672-73 (M.D. Ga. 1986) (noting the court's "continuing duty" to examine the propriety of class certification throughout the litigation).

Protracted litigation carries inherent risks that would necessarily have delayed and endangered Class members' monetary recovery and entitlement to injunctive relief.  Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the settlement reached with IBERIABANK outweighs the gamble of continued litigation.

Even if Plaintiffs did prevail at trial, any recovery could be delayed for years by an appeal.  *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class Members without further delay.

> **(b)     Range of Possible Recovery and The Point on or Below the Range of Recovery at Which a Settlement is Fair**

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties."  *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  *Id.*

Courts have determined that settlements may be reasonable even where Plaintiffs recover only part of their actual losses.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."  *Lipuma*, 406 F. Supp. 2d at 1323.

Notwithstanding, when compared to settlements in other similar national overdraft class actions that have been finally approved, the monetary consideration of the Settlement Agreement represents a greater ratio of IBERIABANK's assets than the monetary consideration provided by either Fifth Third Bank or Webster Bank to their respective settlement class members.  Fifth Third Bank, with assets totaling approximately $111,000,000,000, settled the claims in *Schulte v. Fifth Third Bank*, in the Northern District of Illinois, for $9,500,000 (approximately .0086% of its assets).  Webster Bank, with assets totaling approximately $17,500,000,000, settled the claims in *Mathena v. Webster Bank, N.A.*, in the District of Connecticut, for $2,800,000 (approximately

.0160% of its assets).   IBERIABANK's assets total approximately $11,000,000,000 and a settlement amount of $2,500,000 represents approximately .0227% of its assets.[5]

This Settlement, which includes $2.5 million in monetary relief and significant injunctive relief, is at the very high end of recoveries in class action settlements of this nature and is a fair and reasonable recovery for the Class in light of IBERIABANK's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.

(c)      <u>**Complexity, Expense and Duration of Litigation**</u>

The traditional means for handling claims like those at issue here would unduly tax the court system and require a massive expenditure of public and private resources.   Individual Settlement Class Members likely would be unable or unwilling to shoulder the great expense of litigating the claims at issue against IBERIABANK given the comparatively small size of each individual Settlement Class Member's claims.   Thus, the proposed Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.

One of the most expensive aspects of ongoing litigation of this case would involve the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial.   Experts in the fields of marketing, economics and the credit card industry may also be necessary.   These, and other considerations noted above, militate heavily in favor of the Settlement.   *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

(d)      <u>**Stage of the Proceedings**</u>

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."   *Lipuma*, 406 F. Supp. 2d at 1324.

Plaintiffs settled this Action with the benefit of millions of pages produced informally by IBERIABANK leading up to the execution of the Agreement.   As noted, review of those documents positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and their possible recovery at trial.   *See Numismatic Guaranty Corp.*, 2008 WL

---

[5] Fifth Third Bank's settlement was granted final approval on July 29, 2011.   Webster Bank's settlement was granted final approval on March 24, 2011.

649124 at *11.  Even in the absence of such discovery, Class Counsel are familiar with the practices and likely defenses of banks on these issues.  *Lipuma*, 406 F. Supp. 2d at 1325 ("Information obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case.").

**C.**     **Certification Of The Settlement Class Is Appropriate.**

For settlement purposes, Plaintiffs respectfully request that the Court certify the Settlement Class defined above, and in paragraph 51 of the Agreement.  "A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue."  *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted).  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of a nationwide class for settlement purposes permits notice of the proposed Settlement to issue to the class to inform class members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing.  *See* MANUAL FOR COMPL. LIT., at §§ 21.632, 21.633.  For purposes of this Settlement only, IBERIABANK does not oppose class certification. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of thousands of people throughout the United States, and joinder of all such persons is impracticable.  *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th

Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"[C]ommonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted); *see also Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001) (same). Here, the commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on IBERIABANK's practice of systemically re-sequencing account transactions, as alleged in the complaint. *See* Fed. R. Civ. P. 23(a)(2).

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiffs are typical of absent Settlement Class Members because they were subjected to the same IBERIABANK practices and claim to have suffered from the same injuries, and because they will equally benefit from the relief provided by the Settlement.

Plaintiffs also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and absent Settlement Class Members have an equally great interest in the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case.

The predominance requirement of Rule 23(b)(3) requires that "[c]ommon issues of fact and law ... ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).   Plaintiffs satisfy the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member. For example, each Settlement Class Member's relationship with IBERIABANK arises from an account agreement that is the same or substantially similar in all relevant respects to other Settlement Class Members' account agreements.  *See Sacred Heart Health Sys.*, 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

Furthermore, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes fairness, consistency, convenience, and efficiency of adjudication. *See Phillips Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("[c]lass actions . . . permit the plaintiffs to pool claims which would be uneconomical to litigate individually . . . [in such a case,] most of the plaintiffs would have no realistic day in court if a class action were not available"); Fed. R. Civ. P. 23(b)(3).  For these reasons, the Court should certify the Settlement Class.

### D.   The Court Should Approve The Proposed Notice Program, Because It Is Constitutionally Sound.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  MANUAL FOR COMPL. LIT., *supra*, at § 21.312 (internal quotation marks omitted).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action."  *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

The proposed Notice Program satisfies all of these criteria.  As recited in the proposed Settlement and above, Notice will inform Settlement Class members of the substantive terms of the Settlement, will advise Settlement Class members of their options for opting-out or objecting to the Settlement, and how to obtain additional information about the Settlement.  Moreover, the Notice Program was designed and is being implemented by two of the most respected Notice experts in the country, Lauran Schultz and Cameron Azari of Hilsoft Notifications.

The Notice Plan, attached as Exhibit 2, provides detailed information about the design and scope of the Notice Program, which Hilsoft Notifications will administer.  The program is the best practicable notice under the circumstances and the various notices alert Class Members of the legal significance of the Settlement and their corresponding rights.  *See* Notice Plan, p. 13-14.  Among other things, it is designed to reach a high percentage of Settlement Class Members (including all readily identifiable Settlement Class Members by direct mail, the best possible form of notice, and not readily identifiable Settlement Class Members by targeted publication), and it exceeds the requirements of constitutional due process.  *See* Bank of America Preliminary Approval Order (granting preliminary approval of settlement in which certain class members could not be identified and would not be entitled to a distribution from the settlement fund).  Therefore, the Court should approve the Notice Program and the form and content of the Notices attached as Exhibits 2-6.

> **E.      The Court Should Schedule A Final Approval Hearing.**

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement.   Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of final approval.  The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a final order and judgment under Rule 23(e); and whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses.  The Parties request that the Court schedule the Final Approval Hearing for a full day during the week of April 16, 2012, if that is convenient for the Court.  The Parties will file their motion for final approval of the Settlement, and Class Counsel will file their Fee Application and request for Service Awards for Plaintiffs, no later than 45 days prior to the Final Approval Hearing.

## IV.    CONCLUSION

Based on the foregoing, the Parties respectfully request that the Court (1) grant preliminary to the Settlement; (2) certify the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only, and appoint David J. Sachar and Christine M. Sachar as Class Representatives; (3) approve the Notice Program set forth in the Agreement and the form and content of the Notices as set forth in Exhibits 2, 3, 4, 5, and 6; (4) approve and order the opt out and objection procedures set forth in the Agreement; (5) stay the Action against IBERIABANK pending final approval of the Settlement; (6) appoint as Class Counsel the law firms listed in paragraph 15 of the Agreement; and (7) schedule a final approval hearing during the week of April 16, 2012, subject to the Court's availability and convenience. For the Court's convenience, the Parties have attached as Exhibit 8 hereto a [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3), undersigned counsel for the Defendants represents that the Parties are in agreement with respect to the relief specifically requested herein, and that the Parties are jointly filing this motion.

### CONSENT OF COUNSEL FOR PLAINTIFFS

Pursuant to Rule 3J (3) of the Administrative Procedures of the United States District Court for the Southern District of Florida (November 13, 2009), the undersigned counsel for Defendants represents to the Court that counsel for Plaintiffs has authorized him to affix their electronic signature to this joint motion.

Dated: October 19, 2011.

Respectfully submitted,


s/Brent Walker_____
Brent Walker
Carter Walker, PLLC
P.O. Box 629
Cabot, AR 72023
Telephone: (501) 605-1346
Facsimile: (501) 605-1348
E-mail: bwalker@carterwalkerlaw.com

Steven A. Owings
Owings Law Firm
1400 Brookwood
Little Rock, AR 72202
Telephone: (501) 661-9999
Facsimile: (501) 661-8393
Attorneys for Plaintiffs, with full authority
E-mail: sowings@owingslawfirm.com

Jack Wagoner
Wagoner Law Firm, P.A.
1320 Brookwood, Suite E
Little Rock, AR 72202
Telephone: (501) 663-5225
Facsimile: (501) 660-4030
E-mail: Jack@wagonerlawfirm.com

Attorneys for Plaintiffs David J. Sachar and
Christine M. Sachar

s/Thomas Meeks_____
Thomas Meeks (FBN 314323)
E-mail: tmeeks@carltonfields.com
Aaron S. Weiss (FBN 48813)
E-mail: aweiss@carltonfields.com
Carlton Fields, P.A.
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Telephone:  (305)  530-0050
Facsimile:   (305)  530-0055
E-mail: tmeeks@carltonfields.com

Elizabeth Robben Murray
Friday, Eldredge & Clark, LLP
400 W. Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201
Telephone:  (501) 376-2011
Facsimile:   (501) 244-5356
E-mail: Murray@fridayfirm.com


Attorneys for Defendants IBERIABANK
Corporation and IBERIABANK

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_s/ Aaron S Weiss_
Aaron S. Weiss

**<u>Service List</u>**

*Sachar v. IBERIABANK*
Case No. 09-cv-02036-JLK


Brent Walker
Carter Walker, PLLC
P.O. Box 629
Cabot, AR 72023
Telephone: (501) 605-1346
Facsimile: (501) 605-1348
E-mail: bwalker@carterwalkerlaw.com
*(via electronic filing)*

Steven A. Owings
Owings Law Firm
1400 Brookwood
Little Rock, AR 72202
Telephone: (501) 661-9999
Facsimile: (501) 661-8393
Attorneys for Plaintiffs, with full authority
E-mail: sowings@owingslawfirm.com
*(via electronic filing)*

Jack Wagoner
Wagoner Law Firm, P.A.
1320 Brookwood, Suite E
Little Rock, AR 72202
Telephone: (501) 663-5225
Facsimile: (501) 660-4030
E-mail: Jack@wagonerlawfirm.com
*(via electronic filing)*

Robert C. Gilbert
Grossman Roth, P.A.
2525 Ponce de Leon Boulevard
Suite 1150
Miami, FL 33134
Telephon: (305) 442-8666
Facsimile: (305) 779-9596
E-mail: rcg@grossmanroth.com
*(via electronic filing)*