## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION

*Mello v. Susquehanna Bank*
D. MD Case No. 1:11-cv-02104-WDQ
S.D. FL Case No. 1:11-cv-2325-JLK

### AMENDED CLASS ACTION COMPLAINT

Plaintiffs, Bryan J. Mello and Denise E. Mello, through undersigned counsel, on behalf of

themselves and all persons similarly situated, allege the following based on personal knowledge

as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

### INTRODUCTION

1.        This is a civil action seeking monetary damages, restitution, and declaratory

relief from Defendant, Susquehanna Bank ("Susquehanna Bank" or the "Bank"), arising from its

unfair and unconscionable assessment and collection of excessive overdraft fees.

2.        In the era of electronic banking and the ubiquitous use of debit card

transactions, the assessment of overdraft fees has become a major profit center for many United

States banks, including Susquehanna Bank.  For years, banks covered customers who

occasionally bounced checks and even did so for a time for customers using debit cards, without

charging their customers.  Since the early 1990's, however, banks have devised methods to

provide overdraft "protection" for customers and charge them in each instance.  A recent FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.  Nevertheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.      In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks brought in $37.1 billion in overdraft charges alone.*  Operating 220 banking centers across four states, Susquehanna Bank benefits greatly from these staggering charges.

4.      Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.      Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries,

the grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.      The same considerations are not present when customers use debit cards. Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.      Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Susquehanna Bank routinely processes such transactions and then charges its customers an overdraft fee of $40 – even when the transaction is for only a few dollars.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for Susquehanna Bank.  Additionally, as part of its inequitable motive to generate obscene profits gained through the imposition of unconscionable overdraft fees, Susquehanna Bank failed to adequately disclose to its customers that they could elect to opt out of overdraft protection.

8.      In many instances, these overdraft fees cost Susquehanna Bank account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

9.      Thus, it is through manipulation and alteration of customers' transaction records that Susquehanna Bank maximizes overdraft penalties imposed on customers.

- 3 -

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a resident of a different state than Susquehanna Bank.

11.     Venue is proper in this district under 28 U.S.C. § 1407(a).  Venue is proper in the District of Maryland, the district in which this action was originally filed, pursuant to 28 U.S.C. § 1391 because Susquehanna Bank is subject to personal jurisdiction there and regularly conducts business in that district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## THE PARTIES

12.     Plaintiffs, Bryan J. Mello and Denise E. Mello, are residents of the State of New Jersey.

13.     Susquehanna Bank is a state bank chartered under the laws of the State of Pennsylvania and maintains its principal place of business in Lititz, Pennsylvania.  Among other things, Susquehanna Bank is engaged in the business of providing retail banking services to consumers, including Plaintiffs and members of the putative Classes, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts.  Susquehanna Bank operates more than 220 banking centers in Maryland, New Jersey, Pennsylvania, and West Virginia.

## CLASS ALLEGATIONS

14.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

15.     The proposed classes are defined as:

> All Susquehanna Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Susquehanna Bank's practice of re-sequencing debit card transactions from highest to lowest dollar amount (the "National Class").

> All Susquehanna Bank customers having accounts at branches in the state of New Jersey for the purpose of asserting claims under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, *et seq.* (the "New Jersey State Subclass") (*see* Fifth Claim for Relief, *infra*).

The National Class and the New Jersey State Subclass are collectively referred to as the "Classes."

16.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

17.     Excluded from the Classes are Susquehanna Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Susquehanna Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

18.     The members of the Classes are so numerous that joinder is impractical.  The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Susquehanna Bank's records.

19.     The claims of the representative Plaintiffs are typical of the claims of the Classes in that the representative Plaintiffs, like all Class members, were charged overdraft fees

by Susquehanna Bank as a result of its practice of re-sequencing debit card transactions from highest to lowest dollar amount. The representative Plaintiffs, like all Class members, have been damaged by Susquehanna Bank's misconduct in that they have been assessed and/or will continue to be assessed unfair and unconscionable overdraft charges. Furthermore, the factual basis of Susquehanna Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

20.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

21.     Among the questions of law and fact common to the Classes are whether Susquehanna Bank:

a.     Did not clearly disclose and/or refused to allow its customers to opt out of its overdraft protection program;

b.     Did not obtain affirmative consent from its customers prior to processing transactions that would result in overdraft fees;

c.     Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

d.     Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

e.     Manipulates and reorders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

      f.        Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

      g.        Fails to provide customers with accurate balance information;

      h.        Delays posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

      i.        Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

      j.        Breaches its covenant of good faith and fair dealing with Plaintiffs and other members of the Classes through its overdraft policies and practices;

      k.        Requires its customers to enter into standardized account agreements which include unconscionable provisions;

      l.        Converts money belonging to Plaintiffs and other members of the Classes through its overdraft policies and practices;

      m.        Is unjustly enriched through its overdraft policies and practices; and

      n.        Violates the consumer protection acts of certain states through its overdraft policies and practices.

22.      Other questions of law and fact common to the Classes include:

      a.  The proper method or methods by which to measure damages, and

      b.  The declaratory relief to which the Classes are entitled.

23.      Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Susquehanna Bank's account agreements and other related

documents.  Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

24.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

25.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Susquehanna Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and Susquehanna Bank's misconduct will proceed without remedy.

26.     Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  Individualized litigation would also create the potential for inconsistent or contradictory rulings.  By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

A.        **Susquehanna Bank**

27.        According to its website, Susquehanna Bank has approximately $14 billion in assets and operates over 220 banking locations in communities throughout Maryland, New Jersey, Pennsylvania, and West Virginia.

28.        Susquehanna Bank is in the business of providing its customers with a variety of banking services.  One of the services provided by Susquehanna Bank for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATMs, the transaction is processed electronically.  As a result, Susquehanna Bank is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

29.        Susquehanna Bank employs sophisticated software to automate its overdraft system.  This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

30.        As a result of Susquehanna Bank's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer, whose account has a $50 balance at the time Susquehanna Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits

from largest to smallest, imposing five overdraft fees on the customer.  Conversely, if the $100

transaction was debited last – consistent with the actual order of transactions – only one

overdraft fee would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008,

*available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

   **B.**  **Susquehanna Bank's Relevant Customer Documents Regarding Overdrafts**

   31.  Plaintiffs and all members of the Classes maintain or maintained a checking

account with Susquehanna Bank.  The terms of Susquehanna Bank's checking accounts are

contained in standardized account holder agreements, presented to its customers on a "take it or

leave it" basis, drafted and imposed by Susquehanna Bank, which was the party of vastly

superior bargaining strength, and thus constitute agreements of adhesion.  A representative copy

of Susquehanna Bank's "Deposit Account Agreement" (the "Deposit Agreement"), covering

customers maintaining accounts in Maryland, New Jersey, Pennsylvania, and West Virginia, and

which is nineteen pages long, single-spaced and in small font, is attached as Exhibit A.

   32.  The Deposit Agreement states:

> The law permits us to pay items (such as checks or drafts) drawn on your account in any
> order.  When processing items drawn on your account, our policy is to pay them
> according to the dollar amount.  We pay the largest items first.  The order in which items
> are paid is important if there is not enough money in your account to pay all of the items
> that are presented.  Our payment policy will cause your largest, and perhaps more
> important, items to be paid first (such as your rent or mortgage payment), but may
> increase the overdraft or NSF fees you have to pay if funds are not available to pay all of
> the items.  If an item is presented without sufficient funds in your account to pay it, we
> may, at our discretion, pay the item (creating an overdraft) or return the item (NSF).  The
> amounts of the overdraft and NSF fees are disclosed elsewhere.  We encourage you to
> make careful records and practice good account management.  This will help you to
> avoid writing checks or drafts without sufficient funds and incurring the resulting fees.

*Id.* at 5.

33.      The Deposit Agreement only refers to items *drawn* on customers' accounts, "such as checks or drafts" and fails to state that the Bank will re-order *debit transactions* from highest to lowest dollar value.

34.      The Deposit Agreement and, upon information and belief, related documents failed to disclose to customers that they had the option to "opt out" from the Bank's overdraft scheme, although it is possible for them to opt out upon request.

     **C.**      **Susquehanna Bank's Re-Ordering of Checking Account Transactions**

35.      In an effort to maximize overdraft revenue, Susquehanna Bank manipulates and reorders debits from highest to lowest dollar amount during given periods of time. Susquehanna Bank reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge.  This practice violates the consumer protection laws of certain states and the covenant of good faith and fair dealing in the Bank's Deposit Agreement.

36.      In addition, Susquehanna Bank misleads its customers regarding its reordering practices.  The Deposit Agreement fails to state that the Bank will reorder debit transactions from highest to lowest dollar value.  In addition, the Deposit Agreement fails to state that the Bank groups together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days, and reorders them so that higher debits that occurred on subsequent days are posted to its customers' accounts before lower debits that occurred on earlier days, contrary to the terms of the Bank's Deposit Agreement and its customers' reasonable expectations.  Further, the Deposit Agreement fails to give the period of time in which the Bank processes and reorders batches of transactions.  The Bank's practices thus violate the covenant of good faith and fair dealing implied in the Bank Deposit Agreement as well as the consumer protection laws of numerous states.

37.     Susquehanna Bank's website is littered with deceptive representations. Susquehanna Bank claims that customers can use Internet banking in order to receive detailed information about their account, including balances and the dates of transactions.  Contrary to Susquehanna Bank's advertisements and representations, the online account features are not a means by which consumers can gain control of their finances or effectively manage their accounts.  In fact, the inaccurate and unreliable information displayed in the online account information on the Bank's website dupes consumers into generating overdraft fees for Susquehanna Bank.

38.     Transactions involving debit cards used by Susquehanna Bank customers, including the withdrawal of cash from ATMs and POS transactions with vendors, are processed electronically.  As a result, Susquehanna Bank is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

39.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Susquehanna Bank's posting system, it fails to post charges in the order in which they are assessed or received.  Susquehanna Bank developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

40.     Instead of processing such transactions in chronological order, Susquehanna Bank processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

41.     Susquehanna Bank refrains from immediately posting charges to a customer's account as it receives them – sometimes for multiple business days.  By holding charges rather

than posting them immediately to an account, Susquehanna Bank is able to amass a number of charges on the account.  Subsequently, Susquehanna Bank posts all of the amassed charges on a single date.  When the group of charges is eventually posted to the customer's account, Susquehanna Bank posts them in order of largest to smallest – not in the order in which they were received or in the order in which they were charged.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.  The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

42.      Susquehanna Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

43.      Susquehanna Bank enforces an unconscionable policy whereby charges assessed are posted to customers' accounts in a non-chronological order, from highest to lowest dollar amount, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.  Susquehanna Bank's processing practices substantially increase the likelihood that customers' smaller charges will result in multiple overdraft fees.  The practices provide Susquehanna Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

44.      Susquehanna Bank also assesses overdraft fees at times when actual funds in the customer's account are sufficient to cover all debits that have been submitted to the Bank for payment.  It does this by placing a "hold" on actual funds in the customer's account.  In doing so, Susquehanna Bank charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

45.      A debit card can be used to make a purchase in two ways:  (1) an Automated Clearing House ("ACH") transaction in which a customer enters his/her PIN number at the point of sale; or (2) an "offline signature" transaction, in which the debit card is treated like a credit card and the customer usually is required to sign a receipt.  In the former, the money is debited from the account instantaneously.  In the latter, the "offline signature" transaction occurs in two parts: first, authorization for the purchase amount is obtained by the merchant.  Second, the transaction is not actually "settled" (that is, money between the bank and the merchant does not change hands) until the merchant submits the transaction to the bank sometime after the customer's purchase.  Before settlement, "authorization holds" are placed on the customer's account, preventing access to money so held.  For some transactions, the authorization hold is for an amount larger than the purchase actually made by the customer.  Susquehanna Bank charges an overdraft fee when the authorization hold amount—not the purchase price—pushes an account balance into negative territory.

46.      Such "authorization hold" policies, and the extent to which they are used by Susquehanna Bank to charge overdraft fees, are inconsistent with Susquehanna Bank's Deposit Agreement.

47.      The terms of the Deposit Agreement fail to alert customers that they must often keep a large cushion of funds in their account in order to guard against an overdraft fee even when customers do not spend more than the funds in their account, and are materially deceptive.  Accordingly, Susquehanna Bank charges customers overdraft fees even when there are sufficient funds in customers' accounts to cover transactions.

48.      Charging an overdraft fee when in fact an account has never been over-drafted is materially deceptive.  By charging overdraft fees when in fact the customer's account has not been over-drafted, Susquehanna Bank breached its contract with Plaintiffs.

49.     As a result, Plaintiffs and members of the Classes have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

### D.     Susquehanna Bank's Cloaking of Accurate Balance Information

50.     Susquehanna Bank actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information. When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

51.     Susquehanna Bank claims that online banking provides current balance information about customers' accounts.  But in reality, Susquehanna Bank's computers are set up not to process transactions in the order received — in "real time," but in order from highest to lowest dollar amount so as to ensure that the maximum number of overdraft charges are imposed on customers' accounts.

52.     Susquehanna Bank provides inaccurate balance information to its customers through its electronic network.  In certain cases, Susquehanna Bank informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual knowledge of outstanding debits and transactions.

53.     Even when Susquehanna Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customer's account, it encourages the customer to incur more overdraft charges by approving – rather than prudently declining – subsequent debit card purchases and other electronic transactions.

54.     The false and misleading account balance information provided by Susquehanna Bank in addition to the lack of disclosure regarding how overdraft fees are assessed

violates the Electronic Fund Transfer Act, 15 U.S.C. 1693, *et seq*. ("EFTA"), and Regulation E, 12 C.F.R. Part 205.

       **E.**        **Susquehanna Bank's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out**

      55.      At the time its debit cards are used in POS transactions or at ATMs, Susquehanna Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Susquehanna Bank could give customers the option to decline the transaction to avoid incurring the overdraft fee, but it does not do so because it seeks to maximize the amount of revenue generated through its assessment of overdraft fees.

      56.      Notwithstanding its technological capabilities and actual knowledge, Susquehanna Bank fails to provide notice to Plaintiffs and the Classes that a particular debit card transaction will result in an overdraft and, hence, an overdraft fee.  Because Susquehanna Bank's customers are not notified of the potential overdraft, and are not given the option of declining the debit card transaction or providing another form of payment, the customers are assessed monetary damages in the form of overdraft fees.

      57.      Susquehanna Bank failed to make Plaintiffs and Class members aware that they could opt out of its overdraft scheme upon request, thereby avoiding any overdraft fees from being charged.

**F.      Susquehanna Bank's Overdraft Policies and Practices Are Contrary to Best Practices**

58.      By engaging in the conduct described herein, Susquehanna Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies").  A copy of the Joint Guidance is attached as Exhibit B.  These "best practice" recommendations include: "Provide election or opt-out of service.  Obtain affirmative consent of consumers to receive overdraft protection.  Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

59.      According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . .  This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

60.      The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.  When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."  70 F.R.D. 9127, 9132.  The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id.*

- 17 -

61.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.  A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit C.

62.     Susquehanna Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer. 73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

63.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion:  Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit D, finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee."  The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

64.      A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



G.      **Susquehanna Bank's Unconscionable Provisions and Policies**

65.      Susquehanna Bank's overdraft policies and practices are or were unconscionable in the following respects, among others:

a.      The Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.      The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Deposit Agreement and related documents, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Susquehanna Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

## H.      **Susquehanna Bank's Overdraft Practices Harmed Plaintiffs**

66.     Susquehanna Bank's wrongful overdraft policies and practices described above harmed Plaintiffs and members of the Classes.  The following allegations regarding the named Plaintiffs are made for purposes of illustrating the harm and damage sustained by Plaintiffs and members of the Classes as a result of Susquehanna Bank's wrongful overdraft policies and practices.

67.      Plaintiffs, Bryan J. Mello and Denise E. Mello, are current checking account customers of Susquehanna Bank.

68.      In connection with their account, Susquehanna Bank issued a debit card or cards to Mr. and Mrs. Mello.  A debit card allows customers to access their checking account funds by using the card to execute a transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

69.      Susquehanna Bank's wrongfully charged Mr. and Mrs. Mello multiple overdraft fees.  For example, based on information and belief, Mr. and Mrs. Mello were charged three overdraft fees on November 23, 2009, in the amount of $40.00 each, for a total of $120.00. Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Susquehanna Bank's Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Credit | Fees | Balance |
|---|---|---|---|---|---|
| | Beginning Balance on 11/23/2009: | | | | $25.34 |
| Date Posted | Debit Description | | | | |
| 11/23/2009 | Counter Deposit | | 162.86 | | 188.20 |
| 11/23/2009 | Counter Deposit | | 60.00 | | 248.20 |
| 11/23/2009 | CHECK | 200.00 | | | 48.20 |
| 11/23/2009 | PAPA JOHN'S | 30.72 | | | 17.48 |
| 11/23/2009 | WAWA | 30.00 | | | -12.52 |
| 11/23/2009 | OVERDRAFT | | | 40.00 | -52.52 |
| 11/23/2009 | AMAZON | 7.23 | | | -59.75 |
| 11/23/2009 | OVERDRAFT | | | 40.00 | -99.75 |
| 11/23/2009 | AMAZON | 5.76 | | | -105.51 |
| 11/23/2009 | OVERDRAFT | | | 40.00 | -145.51 |
| | | Total Fees: | | $120.00 | |

70.      If Susquehanna Bank's had not manipulated and reordered Mr. and Mrs. Mello's transactions, including debits, from highest to lowest, they would not have been assessed three overdraft fees.

71.     For instance, if Susquehanna Bank's had posted the transactions from lowest to highest, Mr. and Mrs. Mello would have been assessed only one overdraft fee instead of three:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | **Debits** | **Credit** | **Fees** | **Balance** |
|---|---|---|---|---|---|
| | **Beginning Balance on 11/23/2009:** | | | | **$25.34** |
| **Date Posted** | **Debit Description** | | | | |
| 11/23/2009 | Counter Deposit | | 162.86 | | 188.20 |
| 11/23/2009 | Counter Deposit | | 60.00 | | 248.20 |
| 11/23/2009 | CHECK | 200.00 | | | 48.20 |
| 11/23/2009 | AMAZON | 5.76 | | | 42.44 |
| 11/23/2009 | AMAZON | 7.23 | | | 35.21 |
| 11/23/2009 | WAWA | 30.00 | | | 5.21 |
| 11/23/2009 | PAPA JOHN'S | 30.72 | | | -25.21 |
| 11/23/2009 | OVERDRAFT | | | 40.00 | -65.21 |
| | | **Total Fees:** | | **$40.00** | |

72.     Likewise, had the Bank posted the transactions in chronological order, Mr. and Mrs. Mello would have been assessed fewer overdraft fees.

73.     The wrongful overdraft fees assessed occurred as a result of the Bank's manipulation and re-ordering of Plaintiffs' debit card transactions.

74.     Susquehanna Bank failed to notify Plaintiffs that they could be assessed overdraft fees on transactions even though there were sufficient funds in the checking accounts to cover the transaction at the time the transaction was executed.  In addition, Susquehanna Bank's never notified Plaintiffs, at the time they executed the purported insufficient funds transactions described above, that their checking account was overdrawn or that they would be charged an overdraft fee as a result of the transactions.  Furthermore, Susquehanna Bank paid, rather than returned, all of the debit card charges described above, even though Plaintiffs' account purportedly lacked sufficient funds to cover the transactions.

75.     Based on information and belief, the overdraft charges assessed to Plaintiffs are representative of millions of dollars of overdraft fees that Susquehanna Bank's wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially

egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

**I.**          <u>**The Damages Sustained by Plaintiffs and the Classes**</u>

76.        Susquehanna Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account. In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers. 73 F.R. 28904-01, 28929. "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out. Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account. For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available." *Id.*

77.        According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee." 73 F.R. 28904-01, 28929 (May 19, 2008).

78.        Thus, as a consequence of Susquehanna Bank's overdraft policies and practices, Plaintiffs and the Classes have been wrongfully forced to pay overdraft fees. Susquehanna Bank has improperly deprived Plaintiffs and the Classes of significant funds, causing ascertainable monetary losses and damages.

79.        As a consequence of Susquehanna Bank's improper overdraft fees, Susquehanna Bank has wrongfully deprived Plaintiffs and the Classes of funds to which it had no legitimate claim.

80.      Plaintiffs and the Classes had sufficient funds to cover at least some of the transactions for which they and the Classes were charged overdraft fees.  Plaintiffs and members of the Classes either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Susquehanna Bank could impose these wrongful charges.   In many instances, Susquehanna Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiffs and Class members.

81.      All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing[1]**
**(On Behalf of the National Class)**

82.      Plaintiffs repeat paragraphs 1 through 81 above.

83.      Plaintiffs and Susquehanna Bank have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in Susquehanna Bank's Deposit Agreement and related documentation.

84.      Under the laws of the states where Susquehanna Bank does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to

---

[1]  Certain states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract.   Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.  For the sake of convenience in this multi-district litigation, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

comply with the substance of their contract in addition to its form.  Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

85.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

86.     Susquehanna Bank has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

87.     Plaintiffs and the National Class have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

88.     Plaintiffs and members of the National Class have sustained damages as a result of Susquehanna Bank's breach of the covenant of good faith and fair dealing.

## SECOND CLAIM FOR RELIEF
### Unconscionability
**(On Behalf of the National Class)**

89.     Plaintiffs repeat paragraphs 1 through 81 above.

90.     Susquehanna Bank's overdraft policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

a.     The Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.     The Bank did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c.      The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.      The Deposit Agreement and related documents, are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.      The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, which is not signed by the depositor; and

f.      The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from high to low, even though Susquehanna Bank *always* reorders debits and other transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

91.      Considering the great business acumen and experience of Susquehanna Bank in relation to Plaintiffs and the National Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

92.      The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $40 charge on an overdraft of less than $40) is itself unconscionable.

Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

93.     Plaintiffs and members of the National Class have sustained damages as a result of Susquehanna Bank's unconscionable policies and practices as alleged herein.

### THIRD CLAIM FOR RELIEF
### Conversion
### (On Behalf of the National Class)

94.     Plaintiffs repeat paragraphs 1 through 81 above.

95.     Susquehanna Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

96.     Susquehanna Bank has wrongfully collected overdraft fees from Plaintiffs and the members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

97.     Susquehanna Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Class, without legal justification.

98.     Susquehanna Bank continues to retain these funds unlawfully without the consent of Plaintiffs or members of the National Class.

99.     Susquehanna Bank intends to permanently deprive Plaintiffs and the members of the National Class of these funds.

100.    These funds are properly owned by Plaintiffs and the members of the National Class, not Susquehanna Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the National Class.

101.     Plaintiffs and the members of the National Class are entitled to the immediate possession of these funds.

102.     Susquehanna Bank has wrongfully converted these specific and readily identifiable funds.

103.     Susquehanna Bank's wrongful conduct is continuing.

104.     As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Class have suffered and continue to suffer damages.

105.     By reason of the foregoing, Plaintiffs and the members of the National Class are entitled to recover from Susquehanna Bank all damages and costs permitted by law, including all amounts that Susquehanna Bank has wrongfully converted.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the National Class)**

106.     Plaintiffs repeat paragraphs 1 through 81 above.

107.     Plaintiffs, on behalf of themselves and the National Class, assert a common law claim for unjust enrichment.

108.     By means of Susquehanna Bank's wrongful conduct alleged herein, Susquehanna Bank knowingly provides banking services to Plaintiffs and members of the National Class that are unfair, unconscionable, and oppressive.

109.     Susquehanna Bank knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National Class.  In so doing, Susquehanna Bank acted with conscious disregard for the rights of Plaintiffs and members of the National Class.

110.     As a result of Susquehanna Bank's wrongful conduct as alleged herein, Susquehanna Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National Class.

111.     Susquehanna Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

112.     Under the common law doctrine of unjust enrichment, it is inequitable for Susquehanna Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiffs and members of the National Class in an unfair, unconscionable, and oppressive manner.  Susquehanna Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

113.     The financial benefits derived by Susquehanna Bank rightfully belong to Plaintiffs and members of the National Class.  Susquehanna Bank should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the National Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Susquehanna Bank traceable to Plaintiffs and the members of the National Class.

114.     Plaintiffs and members of the National Class have no adequate remedy at law.

### FIFTH CLAIM FOR RELIEF
### Violations of New Jersey Consumer Fraud Act
#### (On Behalf of the New Jersey State Subclass)

115.     Plaintiffs repeat paragraphs 1 through 81 above.

116.     This claim is asserted on behalf of the members of the New Jersey State Subclass under the New Jersey Consumer Fraud Act.

117.     Susquehanna Bank engages in unfair business practices relating to the imposition of overdraft fees on consumers, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, *et seq*.

118.     The New Jersey Consumer Fraud Act ("NJCFA") protects consumers against "any unconscionable commercial practice, deception, fraud, false pretense, false promise,

misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . ."  N.J.S.A. 56:8-2.

119.     The conduct of Susquehanna Bank as set out above constitutes unlawful acts and practices that are prohibited by the NJCFA.

120.     As a result of Susquehanna Bank's unconscionable commercial practices, misrepresentations, and material omissions that the Bank intended consumers such as Plaintiffs rely upon, Plaintiffs and members of the New Jersey State Subclass have suffered an ascertainable loss of monies and/or value.

121.     Unless Susquehanna Bank's conduct, activities, or material omissions are declared illegal and violative of the NJCFA and enjoined, the Bank will continue to do the same in the future to the detriment and harm of Plaintiff and others similarly situated.

122.     As redress for Susquehanna Bank's repeated and ongoing violations of this consumer protection statute, Plaintiffs and the New Jersey State Subclass are entitled to, *inter alia*, damages and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Classes demand a jury trial on all claims so triable and judgment as follows:

1.     Declaring Susquehanna Bank's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.     Restitution of all overdraft fees paid to Susquehanna Bank by Plaintiffs and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;

3.     Disgorgement of the ill-gotten gains derived by Susquehanna Bank from its misconduct;

4.             Actual damages in an amount according to proof;

5.             Punitive and exemplary damages;

6.             Pre-judgment interest at the maximum rate permitted by applicable law;

7.             Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

8.             Such other relief as this Court deems just and proper.

Dated: October 19, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No. 516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiff*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiff*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271


/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008


/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiff's Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2011, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being

served this day on all counsel of record or *pro se* parties identified on the attached Service List in

the manner specified, either via transmission of Notices of Electronic Filing generated by

CM/ECF or in some other authorized manner for those counsel or parties who are not authorized

to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

- 35 -