Jeff Horwitz (Pro se)
1 State St 26th Floor
New York, NY 10004
Jeff.horwitz@sourcemedia.com
(212) 803 8577



### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| In re: | CASE NO. 1:09-MD-02036-JLK |
| CHECKING ACCOUNT OVERDRAFT LITIGATION | NOTICE OF MOTION AND MOTION TO INTERVENE AND MOTION TO UNSEAL RECORDS BY JEFF HORWITZ; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE BY JEFF HORWITZ UNDER F.R.C.P. 24 AND TO UNSEAL RECORDS |
| MDL No. 2036 | |

### INTRODUCTION

I seek by this present Motion to intervene in this case pursuant to Federal Rule of Civil Procedure 24(b) to seek public access to amended complaints, exhibits, and discovery documents produced by the lengthy list of defendant banks.

The matters at issue in this litigation are of interest to the financial industry, to tens of thousands of class members currently prevented from following the litigation closely, and to the public at large.

I am a reporter for a trade publication following the banking industry, and am representing myself in this case both to avoid the cost of retaining legal representation and because I believe that access to such documents is a fundamental right of the public. While there is an understandable expediency to blanket confidentiality agreements of the sort entered into by

the parties in this litigation, such restrictions are no longer appropriate in this case and cannot be justified.

I apologize for any procedural errors contained herein, and ask that they be viewed with the charitable eye that I believe pro se filings are rightfully accorded. I have leaned significantly on the form and language of intervention filings such as PLOS Medicine's intervention in *In re: Prempro Products Liability Litigation* and *Reilly v. MediaNews Group Inc* to craft this Motion, as well as on the plaintiffs' own motion to unseal documents in the *Union Bank* case. Should this Motion result in significant opposition or be deemed to fall short of this Court's standards, I will do my best to rectify any errors or to obtain legal representation capable of doing so on my behalf.

My Motion to intervene should be granted because: (1) the Motion has been filed in a timely manner; (2) The Motion shares a question of law or fact in common with the main action; and (3) the Motion will not unduly delay or affect the parties' rights in the underlying litigation.

### INTEREST OF MOVANT

I have a specific and compelling interest in obtaining access related to bank overdraft fees and practices.

I am a reporter for *American Banker*, a leading publication that has covered the banking industry for well over a century. *American Banker*'s track record and seriousness as a publication is well established, and we have covered overdraft fees for years.

The dollar value of the alleged damages alone would justify interest in this litigation, but I believe that this case offers an unprecedented opportunity to explore numerous important issues for the banking industry. Overdraft fees and debit sequencing have been key points of contention

in public policy and banking regulatory reform, as well as a key source of revenue for banks. The industry's pricing of consumer checking accounts over the last decade has been based in part on the calculation that fees from overdraft and debit transactions would supplement income from deposit gathering, and how banks handled overdraft may provide insight into their future activities.

While I anticipate that there are many newsworthy documents under seal in the case, I am particularly interested in information about the involvement of consultants and third parties in the evolution of industry standard practices. This is information that would be a natural part of the court record, but is unlikely to play a prominent role in briefs themselves. Likewise, I anticipate that documents currently under seal would illuminate how the management of prominent banks approached overdraft and basic consumer financial products. There is no reason, for example, that depositions of executives or emails produced in discovery should be automatically shielded.

Members of the public who are potential participants in the various potential classes in this litigation should be able to access information on this case as well. Whether they do it through reviewing unsealed court files or reading a publication such as *American Banker* is immaterial.

**ARGUMENT**

**INTERVENTION IS WARRANTED BECAUSE THIS REQUEST MEETS ALL THREE REQUIREMENTS FOR PERMISSION INTERVENTION UNDER FRCP 24(B)**

Virtually every circuit in the country has backed the ability of a non-party to challenge a protective order under FRCP 24(b). *In re Guidant Corp Implantable Defibrillators Products Liabiity Litig.*, 245 F.R.D. 632, 635 (D. Minn. 2007).

Federal Rule of Civil Procedure 24(b) states, in relevant part, "On timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact ....[T]he court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)

Pursuant to this rule, courts consider three factors in deciding whether to permit an intervention: (1) whether the motion is timely; (2) whether the motion raises a question of law or fact in common with the main action; and (3) whether intervention will unduly delay or prejudice the adjudication of the parties' rights.

### I. THE MOTION TO INTERVENE IS TIMELY.

This Motion satisfies the first criterion because the proceedings in this case are ongoing. This alone should render the Motion timely, especially since courts have routinely permitted intervention for the limited purpose of seeking public access to discovery materials even after the underlying case is resolved.

Were that insufficient, it is fair to note that this Motion comes shortly after the decision to unseal records in the Union Bank litigation, which served as an alert to the public about the wealth of information potentially available in case files.

### II. THE MOTION TO INTERVENE SHARES A QUESTION OF LAW OR FACT WITH THE MAIN ACTION.

This Motion meets the second criterion in that it "shares with the main action a common question of law or fact." This criterion has generally been construed liberally in cases where non-

parties seek intervention for the limited purpose of obtaining public access to discovery materials and other court records. The reason for this, as the D.C. Circuit has explained, is "because of the need for 'an effective mechanism for third-party claims of access to information generated through judicial proceedings." *Nat'l Children's Center*, 146 F.3d at 1045-46. Thus "despite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that non-parties may permissively intervene for the purpose of challenging confidentiality orders." *Id.* at 1045.

My request for permissive intervention is akin to the request for intervention filed by newspapers in *Pansy v. Borough of Stroudsburg,* 23 F.3d, where the Third Circuit permitted intervention solely for the purpose of challenging a protective order, even though the newspapers had not technically raised any "question of law or fact" in common with the original parties' claims or defenses. *Id* at 778. In so ruling, the court "agree[d] with other courts.... That the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." *Id.* The court found that "[b]y virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of Fed. R. Civ. P. 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action." *Id.; see also San Jose Mercury News Inc v. U.S. District Court, 187 F.3d 1096, 1103,* (9th Cir. 1999) (reversing district court order denying newspaper's motion to intervene so that newspaper could "press the public's right of access to discovery materials pursuant to Federal Rule of Civil Procedure 26(c)"); *In re Beef Industry Antitrust Litig.,* 589 F.2d 786, 789 (5th Cir. 1979) (noting that "[t]here is no question" that Rule 24 intervention is the "procedurally correct course" for third party challenges to protective orders.)

### III MY INTERNVENTION IN THIS CASE WILL NOT UNDULY DELAY OR PREJUDUCE THE ADJUDICATION OF THE PARTIES' RIGHTS.

This Motion satisfies the third Rule 24(b) consideration because it will not cause undue delay or prejudice the rights of the existing parties.

As the First Circuit has explained, the "delay or prejudice" factor of Rule 24(b) "encompasses the basic fairness notion that intervention should not work 'a last minute disruption of painstaking work by the parties and the court.'" *Public Citizen,* 858 F.2d at 786. This sort of disruption, the court observed, is not an issue where – as in this case – the intervener seeks to "litigate only the issue of the protective order," which is a "particularly discrete and ancillary issue." *Id.*

The same reasoning applies to this Motion, which is not brought with any intent to delay or inconvenience the parties or litigation. What minimal effort is required of the parties to address it should be viewed in the context of the massive scope of the litigation and the significant presumption in favor of open court records when possible.

### MOTION TO UNSEAL DOCUMENTS

Access to court records and proceedings is a basic right of the public, and one that cannot be waived by an agreement between litigating parties. Nor does the parties' mere assertions of confidentiality suffice to overcome the public's right of access. Rather, to overcome the public's strong presumptive right of access to documents filed in any court, a party seeking secrecy carries a heavy burden. They must establish a compelling interest that can only be protected by sealing particular material. The party must provide specific evidence, and a specific legal basis (such as

trade secret or a recognized privilege) that together justify secrecy. Without this, the court cannot make a meaningful evaluation of whether the public's right has been overcome. Last, the sealing, if any, must be narrow and include as little material as needed to protect the party's interest while also protecting the public's right.

According to the local rules of Florida's Southern District, litigants seeking to maintain the confidentiality of records submitted to the court must put forth "a reasonable basis for departing from the general policy of a public filing." This has not happened, and the preference of one or both parties for secrecy is insufficient to justify this failure.

There is a clear public interest in this case. Articles on the MDL in *American Banker* – and in particular the unsealed Union Bank documents – have drawn above average interest from members of the general public and industry participants, interest that has been borne out by above-average readership for stories written about the case. And as the unsealing of the Union Bank records shows, the records are of significant interest but contain little or nothing in the way of sensitive business information.

## I. THE PUBLIC'S FIRST AMENDMENT RIGHT OF ACCESS TO COURT FILES HAS NOT BEEN OVERCOME BY ANY INTEREST ASSERTED BY THE PARTIES

### A. THE PUBLIC HAS A FIRST AMENDMENT RIGHT OF ACCESS TO THE COURT FILES OF CIVIL PROCEEDINGS

That the public has a First Amendment right to attend criminal proceedings is beyond dispute. *Richmond Newspapers v. Virginia*, 448 U.S. 555, 577-578 (1980) (trial). The Supreme Court has suggested that this constitutional right that extends to all judicial proceedings, both criminal and civil. "[I]n some civil cases the public interest in access, and the salutary effect of

publicity, may be as strong as, or stronger than, in most criminal cases." *Gannett Co. v. DePasquale*, 443 U.S. 368, 386-87 n.15 (1979).

That this case raises the issue of access to civil court files rather than attendance at civil court proceedings does not require a different analysis or yield a different result.

### B. COURTS APPLY AN EXPERIENCE AND LOGIC TEST TO DETERMINE WHETHER OR NOT THE PUBLIC HAS A FIRST AMENDMENT RIGHT TO COURT PROCEEDINGS AND FILES

Courts in most jurisdictions apply a two-part "experience and logic" test to determine whether or not a First Amendment right of access applies to a particular judicial proceeding. First, the court looks to whether the process has historically been open to the public.

Second, the court asks "whether public access plays a significant positive role in the functioning of the particular process in question."

The "experience and logic" test is easily met here. First, civil proceedings have historically been open to the public. "[H]istorically both civil and criminal trials have been presumptively open." *Richmond Newspapers*, 448 U.S. at 580 n.17. Similarly, the public has historically had access to all documents filed with a court in civil matters, absent a specific statute.

Second, it is undeniable that the public plays an important role in monitoring and assessing the performance of its judicial system.

Moreover, the subject of this proceeding is no simple private dispute, it is a case with potential ramifications for hundreds of thousands of consumers, large financial institutions, and banking policy and practices. The need for strict adherence to proceedings to protect the

presumption of openness in this instance is even stronger than it might be in typical civil action between two private parties.

### C. THE PARTIES MUST ASSERT A THREAT TO AN IMPORTANT RIGHT THAT REQUIRES RESTRICTION ON THE PUBLIC'S FIRST AMENDMENT RIGHT OF ACCESS TO THE COURT FILES

It is my belief that the central parties to this litigation must overcome an extremely high bar to justify secrecy of the court documents underlying the overdraft cases. To quote from the Plaintiffs' brief to unseal records in the Union Bank case:

> "'The banking business is affected with the public interest. Traditionally banks and their officers have been held to a high degree of integrity and responsiveness to their public calling.' *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 763 (Md. 1986). Banks 'are invested with enormous public trust' and must be 'held to a high degree of integrity and responsiveness to their public calling.' *Djowharzadeh v. City Nat'l Bank & Trust Co.*, 646 P.2d 616, 619 (Okla. Ct. App. 1982).

The agreement entered into by the parties in the multidistrict overdraft litigation does not justify the blanket sealing of records. To the contrary, the protective order states that there is no presumption of confidentiality in the event that the order is challenged and that attorneys must make a good-faith designation that sealed information contains trade secrets or other justifiably confidential information.

To date, there has been no concrete reasons offered for why any – much less most -- details of this litigation should be off-limits to the public, including members of the proposed classes whose interests are supposed to be represented.

To quote again from the Plaintiffs' filing requesting the unsealing of Union Bank documents, "the presumption of open access is particularly strong in this class action, as banks have a well-recognized responsibility to the public at large and are alleged to owe substantial damages to tens of thousands of class members."

## CONCLUSION

Because this Motion to Intervene satisfies all three factors for limited permissive intervention under Rule 24(b), it should be granted.

The Motion to unseal court records should also be granted, barring the ability of parties to this litigation to demonstrate that they can meet the exceedingly high standards required for confidentiality. And thorough justification for the filing of sealed documents in the future should be required in this case.

Respectfully submitted,

JEFF HORWITZ
Pro Se
1 State St 26th floor
New York, NY 10004