## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 1:09-02036-JLK

---

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION**

*Lewis  v. Sovereign Bank.*
D. Md. Case No. 1:11-cv-00064

---

### FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT[1]

Plaintiff, through undersigned counsel, file on behalf of herself and all persons similarly situated, this First Consolidated Amended Class Action Complaint, alleging the following based on personal knowledge as to allegations regarding the Plaintiff and on information and belief as to other allegations.

### INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution and injunctive relief from Defendant Sovereign Bank ("Sovereign Bank" or the "Bank"), arising from its unfair and unconscionable assessment and collection of excessive overdraft fees.

---

[1] By filing this Consolidated Amended Complaint, Plaintiffs consolidate all previously-filed Complaints that have been transferred to this Court in connection with *In Re: Checking Account Overdraft Litigation*, MDL No. 2036 for all purposes, including trial.  "[A]n amended complaint asserting venue in the transferee district" filed in the MDL court gives the transferee court the authority "to resolve the multidistrict litigation through trial while remaining faithful to the *Lexecon* limitations."  *See* Manual for Complex Litig. Fourth § 20.132 at 224-25 (*citing Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 118 S. Ct. 956, 140 L.Ed.2d 62 (1998)).

2.      In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including Defendant. For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers.  Since the early 1990's, however, banks have devised methods to provide overdraft "protection" for customers and charge them in each instance.  A recent FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent.*  Nevertheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.      In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks were estimated to have brought in between $27 billion to $38.5 billion in overdraft charges alone.* Operating more than 750 branches and 2,300 ATMs in Connecticut, Delaware, Massachusetts, Maryland, New Hampshire, New Jersey, New York, Pennsylvania and Rhode Island, Sovereign Bank benefits greatly from these staggering charges.

4.      Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance

will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.      Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries, the grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.      The same considerations are not present when customers use debit cards.  Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be incurred, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.      Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, Sovereign Bank routinely process such transactions and then charge its customers an overdraft fee of $33 or $35 — even when the transaction is only for a few dollars.  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for the Defendant.  Additionally, as part of its inequitable motive to generate obscene profits gained

through the imposition of unconscionable overdraft fees, Sovereign Bank fails to adequately disclose to its customers that they may elect to opt out of overdraft protection.

8.      In many instances, these overdraft fees cost Defendant's account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

9.      Thus, it is through manipulation and alteration of customers' transaction records that Sovereign Bank maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.      The Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and at least one of the Plaintiffs is a resident of a state different than Sovereign Bank.

11.      Venue is proper in this district pursuant to 28 U.S.C. § 1407(a).  Venue was proper in the District of Maryland, the district in which Plaintiff's action was originally filed, pursuant to 28 U.S.C. § 1391 because Sovereign Bank is subject to personal jurisdiction there and regularly conducts business in that district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## THE PARTIES

12.      Plaintiff Diane Lewis is a citizen and resident of the State of Maryland.

13.      Sovereign Bank is one of the largest banking institutions in the Northeastern United States.  It is a federal savings bank that is currently moving its principal place of business

from Wyomissing, Pennsylvania to Boston, Massachusetts.  Among other things, Sovereign

Bank is engaged in the business of providing retail banking services to millions of customers,

including Plaintiff and members of the putative Classes.  These services include the issuance of

debit cards for use by its customers in conjunction with their checking accounts.  Sovereign Bank

has nearly $77 billion in assets and operates 723 branches and 2,300 ATMs in Connecticut,

Delaware, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania,

and Rhode Island.

## CLASS ALLEGATIONS

14.     Plaintiff brings this action on behalf of herself and all others similarly situated

pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality,

adequacy, predominance and superiority requirements of Rule 23.

15.     The proposed classes are defined as:

**Class A:**      All Sovereign Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee and/or were not adequately advised of their right to opt-out of the overdraft protection scheme.

**Class B:**      All Sovereign Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of Sovereign's practice of re-sequencing debit card transactions from highest to lowest.

**Class C:**      All Sovereign Bank customers having accounts at branches in the state of Maryland for the purpose of asserting claims under their respective state consumer protection statutes (the "Maryland Subclass") (*see* Fifth Claim for Relief, *infra*).

The three classes are collectively referred to as the "Classes."

16.     Plaintiff reserves the right to modify or amend the definition of the proposed

Classes before the Court determines whether certification is appropriate.

17.     Excluded from the Classes are Sovereign Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which Sovereign Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

18.     The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Sovereign Bank's records.

19.     The claims of the representative Plaintiff are typical of the claims of the Classes in that the representative Plaintiff, like all Class members, was (a) not clearly informed of Sovereign Bank's overdraft protection program and did not request overdraft protection; and (b) charged overdraft fees as a result of its practice of re-sequencing debit card transactions from highest to lowest.  The representative Plaintiff, like all Class members, has been damaged by Defendant's misconduct in that she incurred and/or will continue to incur unfair and unconscionable overdraft charges.  Furthermore, the factual basis of Defendant's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Classes.

20.     There are numerous questions of law and fact common to the Classes and those common questions predominate over any questions affecting only individual Class members.

21.     Among the questions of law and fact common to the Classes are whether Sovereign Bank:

a.     Did not obtain affirmative consent from its customers prior to opting them in to its overdraft scheme;

b.      Did not clearly disclose and/or refused to allow its customers to opt out of its overdraft protection program;

c.      Did not obtain affirmative consent from its customers prior to processing transactions that result in overdraft fees;

d.      Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

e.      Manipulates and reorders transactions so that it can increase the number of overdraft fees it imposes;

f.      Manipulates and reorders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

g.      Imposes overdrafts and overdraft fees when, but for reordering transactions, there would otherwise be sufficient funds in the account;

h.      Fails to provide customers with accurate balance information;

i.      Delays posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

j.      Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

k.      Breaches its covenant of good faith and fair dealing with Plaintiff and the other members of the Classes through its overdraft policies and practices;

l.      Converts moneys belonging to Plaintiff and the other members of the Classes through its overdraft policies and practices;

    m.  Requires its customers to enter into standardized account agreements which include unconscionable provisions;

    n.  Is unjustly enriched through its overdraft policies and practices;

    o.  Violates the consumer protection acts of certain states through its overdraft policies and practices; and

    p.  Continues to commit wrongdoing through its overdraft policies and practices.

  22.  Other questions of law and fact common to the Classes include:

    a.  The proper method or methods by which to measure damages; and

    b.  The declaratory relief to which the Classes are entitled.

  23.  Plaintiff's claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of Sovereign's bank account agreements and other related documents. Plaintiff has suffered the harm alleged and has no interests antagonistic to the interests of any other Class member.

  24.  Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Classes.

  25.  A class action is superior to the other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of Sovereign Bank, no Class member could afford to seek legal redress individually for the claims alleged

herein. Therefore, absent a class action, the Class members will continue to suffer losses and Sovereign Bank's misconduct will proceed without remedy.

26. Even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.  Sovereign Bank

27. Sovereign Bank is one of the largest banking institutions in the Northeastern United States. Sovereign Bank has nearly $77 billion in assets and operates 723 branches and 2,300 ATMs in Connecticut, Delaware, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Pennsylvania, and Rhode Island.

28. Sovereign Bank is in the business of providing its customers with a variety of banking services. One of the services provided by Sovereign Bank for customers who open a checking account is a debit card, also known as a check card or ATM card. Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs"). Whether the card is used to execute POS transactions or to withdraw cash from ATM machines, the transaction is processed electronically. As a result,

Sovereign Bank is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

29.     Sovereign Bank employs sophisticated software to automate its overdraft system. This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

30.     As a result of Sovereign Bank's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the account and no overdraft would occur.  For example, if a customer, whose account has a $50 balance at the time Sovereign Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would reorder the debits from largest to smallest, imposing four overdraft fees on the customer.  Conversely, if the $100 transaction was debited last – consistent with the actual order of transactions – only one overdraft fee would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at:* http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

**B.     Sovereign Bank's Relevant Customer Documents Regarding Overdrafts**

31.     Plaintiff and all members of the Classes maintain or maintained a checking account with Sovereign Bank.  The terms of Sovereign Bank's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by Sovereign Bank, which was the party of vastly superior bargaining strength, and thus constitutes agreements of adhesion.  A representative copy of the "Deposit Account Agreement" effective September 2008 (the "Deposit Agreement"), covering personal

deposit accounts, which is 28 pages long, single-spaced and in small print, is attached as Exhibit

"A."

32.     The Deposit Agreement states:

> We reserve the right to pay the withdrawals you make from your Account
> regardless of the method of withdrawal in any order we determine.  This includes
> withdrawals made at an ATM or by computer, POS purchases, checks, pre-
> authorized payments and by any other means we make available to you.  The
> order in which you make withdrawals from your Account *may* not be the same as
> the order in which we post those transactions to your Account each business day.
> *Generally*, we post your payment transactions each business day in descending
> order, starting with the largest payment order that is presented for payment.  This
> means, for example, that your $900 mortgage payment will be paid before the
> $100 purchase you made at the supermarket.  The order in which we post your
> transactions may affect whether you incur fees for insufficient or unavailable
> funds.  (pp. 4-5). (emphasis supplied)

33.     The Deposit Agreement also states:

> If you write a check or other order or otherwise request a withdrawal from your
> Account, such as by using an ATM or making a purchase using a Visa CheckCard
> or ATM Card, for more money than you have available for withdrawal from your
> Account, we may either permit you to withdraw the funds by complying with the
> payment order or we may refuse to honor the payment order.  You may incur a
> fee for each payment order that is presented against your account when you do not
> have sufficient available funds.

34.     The Deposit Agreement does not set forth the dollar amount of fees that will be

charged for purported overdrafts.  Instead, in a separate heading titled "FEES AND CHARGES,"

the Agreement states:

> Your Account may be subject to regular service fees as well as miscellaneous fees
> and charges.  These fees and charges are listed in our Fee Schedule, which is
> subject to change.  You agree to pay the fees and charges that apply to you.  We
> will deduct these fees and charges automatically from your Account without any
> specific request from you.

35.     Sovereign Bank also publishes a pamphlet entitled "Personal Deposit Account

Fee Schedule" ("Fee Schedule").  A representative copy of the Fee Schedule is attached as

Exhibit "B."  The Fee Schedule states that there is a charge of $33.00 for insufficient funds, a

charge of $33.00 for unavailable funds, and a charge of $35.00 for the overdraft protection line of credit (per year).

36.     The Deposit Agreement and related documents failed to disclose to customers that they had the option to "opt out" from the Bank's overdraft scheme.

### C.     Sovereign Bank's Re-Ordering of Checking Account Transactions

37.     In an effort to maximize overdraft revenue, Sovereign Bank manipulates and reorders debits from highest to lowest during given periods of time.  Sovereign Bank reorders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge. This practice violates numerous consumer protection laws and the covenant of good faith and fair dealing in the Bank's Deposit Agreement.

38.     In addition, Sovereign Bank misleads its customers regarding its reordering practices, as the Bank fails to unequivocally tell its customers that it will reorder debits from highest to lowest, which is deceptive and/or unfair.  The Bank's practices thus violates the covenant of good faith and fair dealing implied in the Bank Deposit Agreement as well as the consumer protection law of numerous states.

39.     Transactions involving debit cards used by Sovereign Bank's customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed electronically.  As a result, Sovereign Bank is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

40.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under Sovereign Bank's posting system, it fails to post charges in the order in which they are incurred or received.  Sovereign Bank developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological

order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

41.     Instead of processing such transactions in chronological order, Sovereign Bank processes transactions starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

42.     Sovereign Bank refrains from immediately posting charges to a customer's account as it receives them — sometimes for multiple business days. By holding charges rather than posting them immediately to an account, Sovereign Bank is able to amass a number of charges on the account. Subsequently, Sovereign Bank posts all of the amassed charges on a single date. When the group of charges is eventually posted to the customer's account, Sovereign Bank posts them in order of largest to smallest — not in the order in which they were received or in the order in which they were charged. This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed. The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

43.     Sovereign Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

44.     Sovereign Bank enforces an unconscionable policy whereby charges incurred are posted to customer' accounts in a non-chronological order, from highest to lowest, and are held for multiple days and then batched together, to maximize the number of overdraft transactions and fees.   Sovereign Bank's processing practices substantially increase the likelihood that

customers' smaller charges will result in multiple overdraft fees. The practices provide Sovereign Bank with substantially higher overdraft fee revenues than it would otherwise achieve absent these practices.

45.     As a result, Plaintiff and members of the Classes have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

**D.      Sovereign Bank's Cloaking of Accurate Balance Information**

46.     Sovereign Bank actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information. When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

47.     Sovereign Bank provides inaccurate balance information to its customers through its electronic network. In certain cases, Sovereign Bank informs its customers that they have a positive balance when, in reality, they have a negative balance, despite the Bank's actual knowledge of outstanding debits and transactions.

48.     Even when Sovereign Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customer's account, it encourages the customer to incur more overdraft charges by approving — rather than prudently declining — subsequent debit card purchases and other electronic transactions.

49.     Sovereign Bank also assesses overdraft fees at times when actual funds in the customer account are sufficient to cover all debits that have been submitted to the Bank for payment. It does this by placing a "hold" on actual funds in the customer's account. In doing so,

Sovereign Bank charges overdraft fees where it faces no risk, because the cash balance in the customer's account has not dropped below zero.

     **E.**     **Sovereign Bank's Failure to Notify Customers of Overdrafts or Advise Customers of Their Rights to Opt Out**

     50.     At the time its debit cards are used in POS transactions or at ATMs, Sovereign Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  Sovereign Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Prior to the effective date of the opt in/opt out requirements of Regulation E (the "Effective Date"), Sovereign Bank could have given customers the option to decline the transaction to avoid incurring the overdraft fee, but it did not do so because it sought to maximize the amount of revenue generated through its assessment of overdraft fees.

     51.     Notwithstanding its technological capabilities and actual knowledge, Sovereign Bank failed to provide notice to Plaintiff and the Classes that a particular debit card transaction would result in an overdraft and, hence, an overdraft fee.  Because Sovereign Bank's customers were not notified of the potential overdraft, and were not given the option of declining the debit card transaction or providing another form of payment, the customers incurred monetary damages in the form of overdraft fees.

     52.     Sovereign Bank failed to make Plaintiff and Class members aware that they could opt out of its overdraft scheme upon request, thereby avoiding any overdraft fees from being incurred.

### F.   Sovereign Bank's Overdraft Policies and Practices Are Contrary to Best Practices

53.     By engaging in the conduct described herein, Sovereign Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies").   A copy of the Joint Guidance is attached as Exhibit "C".   These "best practice" recommendations include: "Provide election or opt-out of service. Obtain affirmative consent of consumers to receive overdraft protection.   Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option."  70 F.R. 9127-01, 9132.

54.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

55.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees.   When consumers attempt to withdraw or transfer funds made available through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."  70 F.R.D. 9127, 9132.  The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice." *Id.*

56.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.  A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit "D".

57.     Sovereign Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer.  73 F.R. 28904-01, 28929.  It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

58.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion: Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit "E", finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds that debit card transactions account for more overdraft fees than traditional checks or any other type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee."  The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12 month period, with 27 million accounts incurring five or more overdraft fees.

59.     A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



### G.     Sovereign Bank's Unconscionable Provisions and Policies

60.     Sovereign Bank's overdraft policies and practices are or were unconscionable in the following respects, among others:

a.     Prior to the Effective Date, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.     Prior to the Effective Date, the Bank did not obtain affirmative consent from checking account customers prior to processing a debit card transaction that would overdraw the account and result in an overdraft fee;

      c.     The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

      d.     The agreements Sovereign Bank provides to its customers are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety.

      e.     The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner.

      f.     The agreements provided to customers are ineffective, ambiguous, deceptive, unfair, and misleading in that they do not unambiguously state that the Bank always reorders debits form highest to lowest, even though Sovereign Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

### H.    Recently Announced Changes in Sovereign Bank's Overdraft Policies and Practices Do Not Offer Any Remedial Benefits to Customers

61.     On May 20, 2010, Sovereign Bank announced plans to overhaul its overdraft policies on a going-forward basis.  The changes do nothing to remedy the past wrongs to Plaintiff and the Classes.  They do not retroactively reverse the charges wrongly debited from their accounts, nor do they prevent Sovereign Bank from continuing its unfair and unconscionable methods of business.

### I.    Sovereign Bank's Overdraft Practices Harmed Plaintiff

62.     Plaintiff Diane Lewis is a current or former checking account customer of Sovereign Bank.

63.     In connection with her account, the Bank issued a debit card to Ms. Lewis.  A debit card allows customers to access their checking account funds by using the card to execute a transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

64.     Sovereign Bank wrongfully charged Ms. Lewis overdraft fees on multiple occasions.  By way of illustration, Ms. Lewis was charged nine overdraft fees on April 26, 2010, in the amount of $35.00 each, for a total of $315.00.  Based on information and belief, the overdraft fees were based on the following ordering of transactions:

**Balance Sheet per Sovereign Bank Reordering Scheme**
**(Debits Processed from Highest to Lowest)**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | **Beginning Balance on 4/26/2010** | | | 309.41 |
| **Date Posted** | **Debit Description** | | | |
| 4/26/2010 | CHK CARD PUR 533564 PEACE&P PEACE & PLENTY | 318.00 | | -8.59 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -43.59 |
| 4/26/2010 | CHECK 5622 | 100.00 | | -143.59 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -178.59 |
| 4/26/2010 | POS PURCHASE 423043 LOWE'S#4 1500WESELBL HAGERSTOWN, MD | 79.10 | | -257.69 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -292.69 |
| 4/26/2010 | CHECK 5623 | 48.33 | | -341.02 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -376.02 |
| 4/26/2010 | CHK CARD PUR 569833 EXXONMOBIL ROCKVILLE, MD | 47.00 | | -423.02 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -458.02 |
| 4/26/2010 | CHK CARD PUR 563161 STAPLES | 44.27 | | -502.29 |

| | | | | |
|---|---|---|---|---|
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -537.29 |
| 4/26/2010 | CHK CARD PUR 820207 SHAWLEY'S ST. JAMES, MD | 13.53 | | -550.82 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -585.82 |
| 4/26/2010 | CHK CARD PUR 684171 FEDEX045 800-4633339 TN | 8.32 | | -594.14 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -629.14 |
| 4/26/2010 | CHK CARD PUR 824805 AC&T FAIRPLAY, MD | 5.29 | | -634.43 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -669.43 |
| 4/26/2010 | CHK CARD PUR 684362 FEDEX730 | 5.29 | | -674.72 |
| | | **Total Fees:** | 315.00 | |

65.     If Sovereign Bank had not manipulated and reordered Ms. Lewis' transactions from highest to lowest, she would not have incurred nine overdraft fees.

66.     For instance, if Sovereign Bank had posted the transactions from lowest to highest, Ms. Lewis would have incurred only two overdraft fee instead of nine:

**Balance Sheet if Debits Were Processed from Lowest to Highest**

| | | Debits | Fees | Balance |
|---|---|---|---|---|
| | **Beginning Balance on  4/26/2010** | | | 309.41 |
| **Date Posted** | **Debit Description** | | | |
| 4/26/2010 | CHK CARD PUR 684362 FEDEX730 | 5.29 | | 304.12 |
| 4/26/2010 | CHK CARD PUR 824805 AC&T FAIRPLAY, MD | 5.29 | | 298.83 |
| 4/26/2010 | CHK CARD PUR 684171 FEDEX045 800-4633339 TN | 8.32 | | 290.51 |
| 4/26/2010 | CHK CARD PUR 820207 SHAWLEY'S ST. JAMES, MD | 13.53 | | 276.98 |
| 4/26/2010 | CHK CARD PUR 563161 STAPLES | 44.27 | | 232.71 |
| 4/26/2010 | CHK CARD PUR 569833 EXXONMOBIL ROCKVILLE, MD | 47.00 | | 185.71 |
| 4/26/2010 | CHECK 5623 | 48.33 | | 137.38 |

| 4/26/2010 | POS PURCHASE 423043 LOWE'S#4 1500WESELBL HAGERSTOWN, MD | 79.10 | | 58.28 |
|---|---|---|---|---|
| 4/26/2010 | CHECK 5622 | 100.00 | | -41.72 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -76.72 |
| 4/26/2010 | CHK CARD PUR 533564 PEACE&P PEACE & PLENTY FREDERICK, MD | 318.00 | | -394.72 |
| 4/26/2010 | INSUFFICIENT FUNDS FEE | | 35.00 | -429.72 |
| | | **Total Fees:** | 70.00 | |

67.     Sovereign Bank wrongfully charged Plaintiff overdraft fees on multiple occasions.  These wrongful overdraft fees occurred as a result of the Bank's manipulation and re-ordering of her debit card transactions.

68.     Sovereign Bank failed to notify Plaintiff that she could incur overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, Sovereign Bank never notified Plaintiff, at the time she executed the purported insufficient funds transactions described above, that her checking account was overdrawn or that she would be charged an overdraft fee as a result of the transactions.  Furthermore, Sovereign Bank paid, rather than returned, all of the debit card charges described above, even though Plaintiff's account purportedly lacked sufficient funds to cover the transactions.

69.     Based on information and belief, the overdraft charges incurred by Plaintiff are representative of hundreds of millions of dollars of overdraft fees that Sovereign Bank wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transactions.

70.     Sovereign Bank's wrongful overdraft policies and practices described above harmed Plaintiff and members of the Classes.  The following allegations regarding Plaintiff is made for the purpose of illustrating the harm and damage sustained by Plaintiff and members of the Classes as a result of Sovereign Bank's wrongful overdraft policies and practices.

**J.      The Damages Sustained by Plaintiff and the Classes**

71.     As shown by the example of Ms. Lewis, Sovereign Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account.  In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."  *Id*.

72.     According to rules proposed by the Agencies, "[i]njury [caused by overdraft charges] is not outweighed by countervailing benefits....This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

73.     Thus, as a consequence of Sovereign Bank's overdraft policies and practices, Plaintiff and the Classes have been wrongfully forced to pay overdraft fees. Sovereign Bank has

improperly deprived Plaintiff and the Classes of significant funds, causing ascertainable monetary losses and damages.

74.     As a consequence of Sovereign Bank's improper overdraft fees, Sovereign Bank has wrongfully deprived Plaintiff and the Classes of funds to which it had no legitimate claim.

75.     Plaintiff and members of the Classes had sufficient funds to cover at least some of the transactions for which Plaintiff and the Classes were charged overdraft fees.  Plaintiff and members of the Classes either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that Sovereign Bank could impose these wrongful charges.  In many instances, Sovereign Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiff and Class members.

76.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

**FIRST CLAIM FOR RELIEF**
**<u>Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing[2]</u>**
**<u>(On Behalf of the National Class)</u>**

77.     Plaintiff repeats paragraphs 1 through 76 above.

78.     Plaintiff and Sovereign Bank have contracted for bank account deposit, checking, ATM and debit card services.

79.     Under the laws of the states where Sovereign Bank does business, good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common

---

[2] Maryland and certain other states recognize a claim for the breach of the covenant of good faith and fair dealing as a separate and distinct claim from breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a species of breach of contract.  For the sake of convenience in this multi-district litigation, the Complaint pleads these two types of claims, which are substantively identical, in a single count.

law or statute, all such contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit — not merely the letter — of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

80. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

81. Since at least 2004, Sovereign Bank has breached the covenant of good faith and fair dealing in the Deposit Agreement through its overdraft policies and practices as alleged herein.

82. Plaintiff and the members of the Classes have performed all, or substantially all, of the obligations imposed on them under the Deposit Agreement.

83. Plaintiff and members of the National Classes have sustained damages as a result of Sovereign Bank's breach of the covenant of good faith and fair dealing.

**SECOND CLAIM FOR RELIEF**
**Unconscionability**
**(On Behalf of the National Class)**

84. Plaintiff repeats paragraphs 1 through 83 above.

85. Sovereign Bank's overdraft policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

a. Prior to the Effective Date, the Bank did not obtain affirmative consent from the customers prior to opting them in to the Bank's overdraft protection scheme;

b. Prior to the Effective Date, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

c. Prior to the Effective Date, the Bank did not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

d. The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

e. The Deposit Agreement and related documents are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

f. The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner, since it is not contained in the Deposit Agreement, but rather in a different and separate document, the Fee Schedule, which is not signed by the depositor; and

g. The Deposit Agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always reorders debits from highest to lowest, even though Sovereign Bank *always* reorders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

86. Considering the great business acumen and experience of Sovereign Bank in relation to Plaintiff and the National Class, the great disparity in the parties' relative bargaining

power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

87.     The imposition of overdraft charges which exceed the amount overdrawn *(e.g.,* the imposition of a $35 charge on an overdraft of less than $35) is itself unconscionable.  Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

88.     Plaintiff and members of the National Class have sustained damages as a result of Sovereign Bank's unconscionable policies and practices as alleged herein.

### THIRD CLAIM FOR RELIEF
### Conversion
### (On Behalf of the National Class)

89.     Plaintiff repeats paragraphs 1 through 83 above.

90.     Sovereign Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

91.     Sovereign Bank has wrongfully collected overdraft fees from Plaintiff and the members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

92.     Sovereign Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiff and the members of the National Class, without legal justification.

93.     Sovereign Bank continues to retain these funds unlawfully without the consent of Plaintiff or members of the Classes.

94.     Sovereign Bank intends to permanently deprive Plaintiff and the members of **Plaintiff or members of the National** Class of these funds.

95.     These funds are properly owned by Plaintiff and the members of the National Class, not Sovereign Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiff and the members of the National Class.

96.     Plaintiff and the members of the National Class are entitled to the immediate possession of these funds.

97.     Sovereign Bank has wrongfully converted these specific and readily identifiable funds.

98.     Sovereign Bank's wrongful conduct is continuing.

99.     Because of Sovereign Bank's deceit in its overdraft assessment policies, Plaintiff and the members of the National Class could not have discovered Sovereign Bank's conversion.

100.    As a direct and proximate result of this wrongful conversion, Plaintiff and the members of the National Class have suffered and continue to suffer damages.

101.    By reason of the foregoing, Plaintiff and the members of the National Class are entitled to recover from Sovereign Bank all damages and costs permitted by law, including all amounts that Sovereign Bank has wrongfully converted.

<u>**FOURTH CLAIM FOR RELIEF**</u>
<u>**Unjust Enrichment**</u>

102.    Plaintiff repeats paragraph 1 through 83 above.

103.    Plaintiff, on behalf of herself and the National Class, asserts a claim for unjust enrichment.

104.     By means of Sovereign Bank's wrongful conduct alleged herein, Sovereign Bank knowingly provides banking services to Plaintiff and members of the National Class that are unfair, unconscionable and oppressive.

105.     Sovereign Bank knowingly received and retained wrongful benefits and funds from Plaintiff and members of the National Class.  In doing so, Sovereign Bank acted with conscious disregard for the rights of Plaintiff and members of the National Class.

106.     As a result of Sovereign Bank's wrongful conduct as alleged herein, Sovereign Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the National Class.

107.     Sovereign Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

108.     Under the common law doctrine of unjust enrichment, it is inequitable for Sovereign Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiff and members of the National Class in an unfair, unconscionable, and oppressive manner.  Sovereign Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

109.     The financial benefits derived by Sovereign Bank rightfully belong to Plaintiff and members of the National Class.  Sovereign Bank should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the National Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by Sovereign Bank traceable to Plaintiff and the members of the National Class.

110.     Plaintiff and members of the National Class have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
## Violations of State Unfair Trade Practice Laws
## (On Behalf of the State Subclasses)

111.     Plaintiff repeats paragraphs 1 through 83 above.

112.     This claim is asserted on behalf of members of each State Subclass under their respective consumer protection statutes.

113.     Sovereign Bank engages in unfair and/or deceptive trade practices relating to the imposition of overdraft fees on consumers, in violation of the Maryland Consumer Protection Act, Md. Code Ann. Com. Law §§ 1301, *et seq*.

114.     A redress for Sovereign Bank's repeated and ongoing violations of these consumer protection statutes, Plaintiff Diane Lewis and the Classes are entitled to, *inter alia*, damages and declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the Classes she seeks to represent, demands a jury trial on all claims so triable, and judgment as follows:

1.     Declaring Sovereign Bank's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.     Restitution of all overdraft fees paid to Sovereign Bank by Plaintiff and the Classes, as a result of the wrongs alleged herein, within the applicable statutes of limitations, in an amount to be determined at trial;

3.     Disgorgement of all ill-gotten gains derived by Sovereign Bank from its misconduct;

4.     Actual damages in an amount according to proof;

5.     Punitive and exemplary damages;

6.      Statutory damages where appropriate;

7.      Pre-judgment interest at the maximum rate permitted by applicable law;

8.      Costs and disbursements incurred by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9.      Such other relief as this court deems just and proper.

Dated: October 21, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No.  516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
BRUCE S. ROGOW, P.A.
Broward Financial Center
500 E. Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596