**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

---

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**

*Stillion, et al v. United Bank, Inc. and United Bankshares, Inc.*
S.D. W.Va. Case No. 6:11-cv-00237

---

**AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, through undersigned counsel, on behalf of themselves and all persons similarly situated, allege the following based on personal knowledge as to allegations regarding the Plaintiffs and on information and belief as to other allegations.

**INTRODUCTION**

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendants United Bank, Inc. and United Bankshares, Inc. (collectively, "United Bank" or the "Bank"), arising from their unfair and unconscionable assessment and collection of excessive overdraft fees.

2.      In the era of electronic banking and the ubiquitous use of debit card transactions, the assessment of overdraft fees has become a major profit center for many United States banks, including United Bank.  For years, banks covered customers who occasionally bounced checks and even did so for a time for customers using debit cards, without charging their customers. Since the early 1990's, however, banks have devised methods to provide overdraft "protection"

for customers and charge them in each instance.  A recent FDIC report estimated that overdraft fees represent 74 percent of the total service charges that are imposed on deposit accounts in the United States.  A 2008 FDIC study reports that overdraft fees for debit cards can carry an effective annualized interest rate that *exceeds 3,500 percent*.  Nevertheless, the Consumer Federation of America reports that five of the ten largest banks raised their overdraft fees in the last year.

3.      In 2007, banks collected more than $17 billion in overdraft fees.  That number nearly doubled in 2008, as more and more consumers struggled to maintain positive checking account balances.  *In 2009, banks were estimated to bring in between $27 billion to $38.5 billion in overdraft charges alone.*

4.      Almost by definition, these fees disproportionately affect the poor, who are most likely to maintain low balances.  Moebs Services, a research company that has conducted studies for the government as well as banks, estimates that 90 percent of overdraft fees are paid by the poorest 10 percent of banks' customer base.  Moreover, these fees have the tendency to create a domino effect, because the imposition of a service charge on an account with a negative balance will make it less likely that the account holder's balance will reach positive territory, resulting in more fees.

5.      Before debit cards existed, banks occasionally extended the courtesy of honoring paper checks written on overdrawn or otherwise deficient accounts for customers who were typically in good standing.  Banks extended this courtesy largely because the third party involved in a sales transaction allowed the customer to pay by check, expecting the funds to be available and the check to clear.  For example, if a customer wrote a check to purchase groceries, the

grocery store would only know whether the check cleared *after* the groceries had been purchased.

6.     The same considerations are not present when customers use debit cards.  Banks could simply decline to honor debit or point of sale transactions where accounts lack sufficient funds to execute the transactions.  Retail and service transactions could still be executed if consumers presented an alternative form of payment.  ATM transactions could still proceed if banks provided a warning that an overdraft fee would be assessed, and customers chose to proceed nevertheless.  In fact, until a few years ago, most banks simply declined debit transactions that would overdraw an account.

7.     Instead of simply declining debit transactions when there are insufficient funds, or warning its customers that an overdraft fee will be assessed if they proceed with the transaction, United Bank routinely processes such transactions and then charges its customers an overdraft fee of $36 for each charge even when the transaction is for only a few dollars.[1]  This automatic, fee-based overdraft scheme is intentionally designed to maximize overdraft fee revenue for United Bank.  Additionally, as part of its inequitable motive to generate obscene profits gained through the imposition of unconscionable overdraft fees, United Bank fails to adequately disclose to its customers that they may elect to opt out of overdraft protection.

8.     In many instances, these overdraft fees cost United Bank account holders hundreds of dollars in a matter of days, or even hours, when they may be overdrawn by only a few dollars.  Even more egregious, customer accounts may not actually be overdrawn at the time the overdraft fees are charged, or at the time of the debit transaction.

---

[1] Previously, the Bank charged $34 per overdraft occurrence, but at some point in the last year increased that amount to $36.

9.      Thus, it is through manipulation and alteration of customers' transaction records that United Bank maximizes overdraft penalties imposed on customers.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005.  Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and members of the putative class are residents of a different state than United Bank, notably residents of Virginia, Washington, DC, Maryland and Ohio, where United Bank has several branch offices, will be class members.

11.      Venue is proper in the Southern District of West Virginia, where this matter was originally filed, pursuant to 28 U.S.C. § 1391, because United Bank is subject to personal jurisdiction there and regularly conducts business in that district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred and continue to occur in that district.

## THE PARTIES

12.      Plaintiffs, Christopher and Heather Stillion, are residents of the State of West Virginia.  The Stillions maintain a checking account with United Bank, and have been injured as a result of the Bank's improper practices as alleged herein.

13.      The members of the Class are those individuals that have been charged overdraft fees as a result of United Bank's use of a non-chronological and/or largest-to-smallest re-ordering system for the posting of debits to customer accounts and the Bank's practice of assessing overdraft fees when sufficient funds exist in the customer's account.  Upon information and belief, members of the Class number in the thousands.

- 4 -

14.     Defendant United Bank, Inc. is an entity incorporated under the laws of West Virginia, with a principal place of business located at 514 Market Street, Parkersburg, West Virginia 26101.

15.     United Bankshares, Inc. is a bank holding company headquartered in Charleston, West Virginia.  United Bankshares issues stock that is publicly traded on the NASDAQ Stock Market under the ticker symbol "UBSI."

16.     United Bank, Inc. is a wholly-owned subsidiary of United Bankshares, Inc. that has 111 banking offices located in West Virginia, Virginia, Washington DC, Maryland and Ohio.

## CLASS ALLEGATIONS

17.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Federal Rule 23.   This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

18.     (A) The proposed National Class is defined as:

> All United Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of United Bank's practices of re-sequencing debit card transactions from highest to lowest, debiting other items before debit card transactions for which a time-stamp exists, and by assessing overdraft fees even when a customer had sufficient funds in their account (the "National Class").

> (B)  The proposed West Virginia Sub-Class is defined as:

> All United Bank customers residing in the State of West Virginia who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, incurred an overdraft fee as a result of United Bank's practices of re-sequencing debit card transactions from highest to lowest, debiting other items before debit card transactions for which a time-stamp exists, and by assessing overdraft fees even when a customer had sufficient funds in their account (the "West Virginia Sub-Class").

- 5 -

19.     Plaintiffs reserve the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

20.     Excluded from the Class are United Bank, its parents, subsidiaries, affiliates, officers and directors, any entity in which United Bank has a controlling interest, all customers who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

21.     The members of the Class are so numerous that joinder is impractical.  The Class consists of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to United Bank's records.

22.     The claims of the representative Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, were charged overdraft fees by United Bank as a result of its practices of re-sequencing debit card transactions from highest to lowest, debiting other items before debit card transactions for which a time-stamp exists, and by assessing overdraft fees even when a customer had sufficient funds in their account.  The representative Plaintiffs, like all Class members, have been damaged by United Bank's misconduct in that they have been assessed and/or will continue to be assessed unfair and unconscionable overdraft charges.  Furthermore, the factual basis of United Bank's misconduct is common to all Class members, and represents a common thread of unfair and unconscionable conduct resulting in injury to all members of the Class.

23.     There are numerous questions of law and fact common to the Class and those common questions predominate over any questions affecting only individual Class members.

24.     Among the questions of law and fact common to the Class are whether United Bank:

a.      Did not clearly disclose and/or refused to allow customers to opt out of their overdraft protection programs;

b.      Did not obtain affirmative consent from customers prior to processing transactions that resulted in overdraft fees;

c.      Does not alert its customers that a debit card transaction will trigger an overdraft fee, and does not provide its customers with an opportunity to cancel such transactions;

d.      Manipulates and re-orders transactions so that it can increase the number of overdraft fees it imposes;

e.      Manipulates and re-orders debits from highest to lowest in order to maximize the number of overdrafts and, consequently, the amount of overdraft fees;

f.      Imposes overdrafts and overdraft fees when, but for re-ordering transactions, there would otherwise be sufficient funds in the account;

g.      Fails to provide customers with accurate balance information;

h.      Delays posting of transactions by customers using debit cards so that customers are charged overdraft fees on transactions, even though the customers had sufficient funds in their accounts to cover the transactions upon execution;

i.      Charges exorbitant overdraft fees that bear no relationship to the actual costs and risks of covering insufficient funds transactions;

j.      Breaches its covenant of good faith and fair dealing with Plaintiffs and other members of the Class through its overdraft policies and practices;

k.      Requires its customers to enter into standardized account agreements which include unconscionable provisions;

l.    Converts moneys belonging to Plaintiffs and other members of the Class through its overdraft policies and practices;

m.    Is unjustly enriched through its overdraft policies and practices; and

25.    Other questions of law and fact common to the Class include:

a.    The proper method or methods by which to measure damages, and

b.    The declaratory relief to which the Class is entitled.

26.    Plaintiffs' claims are typical of the claims of other Class members, in that they arise out of the same wrongful overdraft policies and practices and the same or substantially similar unconscionable provisions of United Bank's account agreements and other related documents.  Plaintiffs have suffered the harm alleged and have no interests antagonistic to the interests of any other Class member.

27.    Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers and against financial institutions.  Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Class.

28.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Since the amount of each individual Class member's claim is small relative to the complexity of the litigation, and due to the financial resources of United Bank, no Class member could afford to seek legal redress individually for the claims alleged herein.  Therefore, absent a class action, the Class members will continue to suffer losses and United Bank's misconduct will proceed without remedy.

29.    Even if Class members themselves could afford such individual litigation, the court system could not.  Given the complex legal and factual issues involved, individualized

litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

## COMMON FACTUAL ALLEGATIONS

### A.  United Bank

30.     United Bank is in the business of providing its customers with a variety of banking services.  One of the services provided by United Bank for customers who open a checking account is a debit card, also known as a check card or ATM card.  Through those debit cards, customers can engage in transactions using funds directly from their accounts by engaging in "debit" or "point of sale" ("POS") transactions, or may withdraw money from their accounts at automated teller machines ("ATMs").  Whether the card is used to execute POS transactions or to withdraw cash from ATMs, the transaction is processed electronically.  As a result, United Bank is notified instantaneously when the card is swiped, and has the option to accept or decline transactions at such time.

31.     United Bank employs sophisticated software to automate its overdraft system. This program maximizes the number of overdrafts, and thus, the amount of overdraft fees charged per customer.

32.     As a result of United Bank's manipulation and alteration of customers' transactions records, funds in a customer's account are depleted more rapidly and more overdraft fees are likely to be charged for multiple smaller transactions.  Indeed, overdraft charges are likely to occur at times when, but for the manipulation and alteration, there would be funds in the

account and no overdraft would occur.  For example, if a customer, whose account has a $50 balance at the time United Bank processed several transactions, made four transactions of $10 and one subsequent transaction of $100 on the same day, the Bank would re-order the debits from largest to smallest, imposing five overdraft fees on the customer.  Conversely, if the $100 transaction were debited last – consistent with the actual order of transactions – only one overdraft fee would be assessed.  *See* FDIC Study of Bank Overdraft Programs, November 2008, *available at*: http://www.fdic.gov/bank/analytical/overdraft/, at 11, n. 12.

**B.**     **United Bank's Relevant Customer Documents Regarding Overdrafts**

33.     Plaintiffs and all members of the Class maintain or maintained a checking account with United Bank.  The terms of the Bank's checking accounts are contained in standardized account holder agreements, presented to its customers on a "take it or leave it" basis, drafted and imposed by United Bank, which was the party of vastly superior bargaining strength, and thus constitute agreements of adhesion.

34.     Until required to do so by federal regulators in 2010, United Bank failed to give customers the option to "opt out" of the Bank's overdraft scheme.

35.     The Bank's account agreement does not disclose United Bank's improper re-ordering and overdraft assessment practices described herein.

**C.**     **United Bank's Re-Ordering of Checking Account Transactions**

36.     In an effort to maximize overdraft revenue, United Bank manipulates and re-orders debits from highest to lowest during given periods of time.  United Bank re-orders transactions for no reason other than to increase the number of exorbitant overdraft fees it can charge.  This practice violates numerous consumer protection laws and the account agreement which is subject to the covenant of good faith and fair dealing.

37.     In addition, United Bank misleads its customers regarding its re-ordering and overdraft assessment practices which are never properly disclosed.

38.     Transactions involving debit cards used by United Bank customers, including the withdrawal of cash from ATM machines and POS transactions with vendors, are processed electronically.  As a result, United Bank is notified instantaneously when the customer's debit card is swiped, and has the option to accept or decline these transactions.

39.     Notwithstanding the instantaneous nature of these electronic debit card transactions, under United Bank's posting system, it fails to post charges in the order in which they are assessed or received.  United Bank developed a policy and employs a practice whereby account charges and debits are posted to its customers' accounts out of chronological order for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.  Debit card transactions which have a time-stamp for the precise time of authorization are also re-ordered and posted after transactions for which no time-stamp exists for the sole purpose of maximizing the number of overdraft transactions and, therefore, the amount of overdraft fees charged to its customers.

40.     Instead of processing such transactions in chronological order, United Bank processes them starting with the largest debit and ending with the smallest debit, so as to generate the largest possible number of overdrafts and the greatest possible amount of overdraft fees.

41.     United Bank refrains from immediately posting charges to a customer's account as it receives them – sometimes for multiple business days.  By holding charges rather than posting them immediately to an account, United Bank is able to amass a number of charges on the account.  Subsequently, United Bank posts all of the amassed charges on a single date.  When

the group of charges is eventually posted to the customer's account, United Bank posts them in order of largest to smallest – not in the order in which they were received or in the order in which they were charged.  It also posts transactions with no time-stamp before debit card transactions for which a precise time-stamp is known.  This delayed posting results in the imposition of multiple overdraft fees that would not otherwise be imposed.  The delayed posting also prevents customers from ascertaining the accurate balances in their accounts.

42.     United Bank's policy and practice of posting charges from largest to smallest, rather than chronologically, or from smallest to largest, is specifically designed to maximize the generation of overdraft fees by triggering overdraft fees for account charges that would not otherwise result in such fees.

43.     United Bank enforces an unconscionable policy whereby charges assessed are posted to customers' accounts in a non-chronological order, from highest to lowest, and are held and then batched together, to maximize the number of overdraft transactions and fees.  United Bank's processing practices substantially increase the likelihood that customers' smaller charges will result in multiple overdraft fees.  The practices provide United Bank with substantially higher service fee revenues than it would otherwise achieve absent these practices.

44.     As a result, Plaintiffs and all members of the Class have been assessed overdraft fees for transactions which occurred when they actually had sufficient funds in their accounts to cover those transactions.

**D.     United Bank's Cloaking of Accurate Balance Information**

45.     United Bank actively promotes the convenience of its debit cards and other electronic debiting, but fails to provide customers with accurate balance information.  When customers execute account transactions, they generally do not have access to an accurate balance register or balance information.

46.     United Bank provides inaccurate balance information to its customers through its electronic network.  In certain cases, United Bank informs its customers that they have a positive balance when, in reality, the Bank has actual knowledge of outstanding debits and transactions which should be made clear to the customer but are not.

47.     Even when United Bank has actual knowledge of outstanding transactions which have already created a negative balance in a customers' account, it encourages the customer to incur more overdraft charges by approving – rather than prudently declining or at least notifying the customer of the status – subsequent debit card purchases and other electronic transactions.

**E.     United Bank's Failure to Notify Customers of Overdrafts or Advise Customers of Their Right to Opt Out**

48.     At the time its debit cards are used in POS transactions or at ATMs, United Bank is able to determine, almost instantaneously, whether there are sufficient funds in a customer's account to cover that particular transaction.  The Bank has the technological capability to decline transactions (which it does when a pending transaction would exceed a pre-determined, overdraft tolerance limit for the account), or notify customers at that very moment that the particular debit card transaction would result in an overdraft.  Prior to the effective date of the opt in/opt out requirements of Regulation E (the "Effective Date"), United Bank could have given customers the option to decline the transaction to avoid incurring overdraft fees, but it failed to do so because it sought to maximize the amount of revenue generated through its assessment of overdraft fees.

49.     Notwithstanding its technological capabilities and actual knowledge, United Bank failed to provide notice to Plaintiffs and the Class that a particular debit card transaction would result in an overdraft and, hence, an overdraft fee.  Because United Bank's customers were not notified of the potential overdraft, and were not given the option of declining the debit card

transaction or providing another form of payment, the customers were assessed monetary damages in the form of overdraft fees.

50.     Prior to the Effective Date, United Bank failed to allow Plaintiffs and Class members to opt out of its overdraft scheme, thereby preventing them from ensuring that they avoided any overdraft fees from being charged.

**F.     United Bank's Overdraft Policies and Practices Are Contrary to Best Practices**

51.     By engaging in the conduct described herein, United Bank has failed to follow the list of "best practices" for overdraft programs set forth in the "Joint Guidance on Overdraft Protection Programs" ("Joint Guidance") issued by the United States Department of the Treasury, the Office of the Comptroller of the Currency, the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the National Credit Union Administration (collectively, the "Agencies"). These "best practice" recommendations include: "Provide election or opt-out of service. Obtain affirmative consent of consumers to receive overdraft protection. Alternatively, where overdraft protection is automatically provided, permit consumers to 'opt-out' of the overdraft program and provide a clear consumer disclosure of this option." 70 F.R. 9127-01, 9132.

52.     According to rules proposed by the Agencies: "Injury [caused by overdraft charges] is not outweighed by countervailing benefits. . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee." 73 F.R. 28904-01, 28929 (May 19, 2008).

53.     The Joint Guidance also advises banks to "[a]lert customers before a transaction triggers any fees. When consumers attempt to withdraw or transfer funds made available

- 14 -

through an overdraft protection program, provide a specific consumer notice, where feasible, that completing the withdrawal may trigger the overdraft fees."  70 F.R.D. 9127, 9132.  The Joint Guidance further advises that "[t]his notice should be presented in a manner that permits consumers to cancel the attempted withdrawal or transfer after receiving the notice."  *Id.*

54.     Similarly, the list of "best practices" recommended in "Overdraft Protection: A Guide for Bankers," issued by the American Bankers Association, includes offering customers the option of "opting out" of any overdraft programs, and informing customers, before they access funds, that a particular point of sale or ATM transaction will cause them to incur an overdraft fee.  A copy of "Overdraft Protection: A Guide for Bankers" is attached as Exhibit B.

55.     United Bank's overdraft policies make it difficult for customers to avoid injury even if they carefully track the balance in their account.  In fact, the Agencies have stated that "Injury" resulting from such policies, "is not reasonably avoidable" by the consumer.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."

56.     On October 6, 2009, the Center for Responsible Lending issued a report entitled "Overdraft Explosion: Bank Fees for Overdrafts Increase 35% in Two Years."  The report, attached hereto as Exhibit C finds that it is now "standard procedure to automatically enroll checking account customers in their most expensive overdraft loan program."  The report finds that debit card transactions account for more overdraft fees than traditional checks or any other

type of transaction, even though "debit card transactions and ATM withdrawals . . . could easily be denied for no fee." The report also finds that overdraft fees increased 35 percent from 2006 to 2008, and that over 50 million Americans overdrew their accounts in a 12-month period, with 27 million accounts incurring five or more overdraft fees.

57.     A chart from the research company Moebs Services shows that, in every year since 1992, banks have gained increased revenues from overdraft fees:



**G.     United Bank's Unconscionable Provisions and Policies**

58.     United Bank's overdraft policies and practices are unconscionable in the following respects, among others:

a.     Prior to the Effective Date, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.     The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c.     The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee to the account;

d.     The account agreement and related documents are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety; and

e.     The account agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading.

f.     Even the Bank's title for its overdraft policy or service – "Worry Free Banking" – is unfair, deceptive and misleading.

59.     The above cited provisions are unconscionable because the contract and related documents, to the extent they are deemed contracts, are unenforceable contracts of adhesion and substantively unconscionable.

### H.     United Bank's Overdraft Practices Harmed Plaintiffs

60.     United Bank's wrongful overdraft policies and practices described above harmed Plaintiffs and members of the Class.   The following allegations are made for purposes of illustrating the harm and damage sustained by Plaintiffs and members of the Class as a result of United Bank's wrongful overdraft policies and practices.

- 17 -

61.     Plaintiffs Christopher and Heather Stillion are and were at all relevant times checking account customers of United Bank.

62.     In connection with their account, United Bank issued a debit card to the Stillions. A debit card allows customers to access their checking account funds by using the card to execute a transaction.  The charge is processed electronically, and the Bank has the option to accept or decline the transaction at the point of sale.

63.     United Bank wrongfully charged the Stillions multiple overdraft fees.   For example, the Stillions were charged six overdraft fees on February 16, 2011, in the amount of $36.00 each, for a total of $216.00.  The overdraft fees were based on the following ordering of transactions:

### February 2011 Balance Sheet per United Bank Re-ordering Scheme
### (Debits Processed from Highest to Lowest)

|  |  | Debits | Fees | Balance |
|---|---|---|---|---|
|  | Beginning Balance on 02/16/11 |  |  | 71.13 |
| Date | Debit Description |  |  |  |
| 2/16/2011 | TJS SPORTS GARDEN | $42.42 |  | $28.71 |
| 2/16/2011 | THE MEDICINE SHOPPE | $19.35 |  | $9.36 |
| 2/16/2011 | RITE AID | $17.11 |  | -$7.75 |
| 2/16/2011 | OD COURTESY FEE |  | $36.00 | -$43.75 |
| 2/16/2011 | JEBBIAS MARKET | $15.25 |  | -$59.00 |
| 2/16/2011 | OD COURTESY FEE |  | $36.00 | -$95.00 |
| 2/16/2011 | LJS | $6.35 |  | -$101.35 |
| 2/16/2011 | OD COURTESY FEE |  | $36.00 | -$137.35 |
| 2/16/2011 | MARATHON OIL | $4.83 |  | -$142.18 |
| 2/16/2011 | OD COURTESY FEE |  | $36.00 | -$178.18 |
| 2/16/2011 | MCDONALDS | $2.53 |  | -$180.71 |
| 2/16/2011 | OD COURTESY FEE |  | $36.00 | -$216.71 |
| 2/16/2011 | APL ITUNES | $2.10 |  | -$218.81 |
| 2/16/2011 |  |  | $36.00 | -$254.81 |
|  |  | **Total Fees** | **$216.00** |  |

64.     If United Bank had posted the transactions from lowest to highest, Plaintiffs would have also incurred only one overdraft fee instead of six:

**February 2011 Balance Sheet if Debits Were Processed from Lowest to Highest**

|  |  | Debits | Fees | Balance |
|---|---|---|---|---|
|  | Beginning Balance on 02/16/11 |  |  | 71.13 |
| Date | Debit Description |  |  |  |
| 2/16/2011 | APL ITUNES | $2.10 |  | $69.03 |
| 2/16/2011 | MCDONALDS | $2.53 |  | $66.50 |
| 2/16/2011 | MARATHON OIL | $4.83 |  | $61.67 |
| 2/16/2011 | LJS | $6.35 |  | $55.32 |
| 2/16/2011 | JEBBIAS MARKET | $15.25 |  | $40.07 |
| 2/16/2011 | RITE AID | $17.11 |  | $22.96 |
| 2/16/2011 | THE MEDICINE SHOPPE | $19.35 |  | $3.61 |
| 2/16/2011 | TJS SPORTS GARDEN | $42.42 |  | -$38.81 |
| 2/16/2011 | OD COURTESY FEE |  | $36.00 | -$74.81 |
|  |  | **Total Fees** | **$36.00** |  |

65.     United Bank failed to notify Plaintiffs that they could incur overdraft fees on transactions even though there were sufficient funds in the checking account to cover the transaction at the time the transaction was executed.  In addition, United Bank never notified Mr. and Mrs. Stillion, at the time they executed the purported insufficient funds transactions described above, that their checking account was overdrawn or that they would be charged an overdraft fee as a result of the transactions.  Furthermore, United Bank paid, rather than returned, all of the debit card charges described above, even though Plaintiffs' account purportedly lacked sufficient funds to cover the transactions.

66.     Based on information and belief, the overdraft charges incurred by Plaintiffs are representative of hundreds of millions of dollars of overdraft fees that the Bank wrongfully assessed and deducted from its customers' accounts.  These wrongful takings are especially

egregious considering the fact that the Bank approved each transaction and knew at the time of approval whether there were sufficient funds in the account to cover the transaction.

      **B.**     **The Damages Sustained by Plaintiffs and the Class**

      67.    As shown by these examples, United Bank's overdraft policies make it difficult for a customer to avoid injury even if the customer keeps close track of the balance in his or her account.  In fact, the Agencies have stated that "injury" resulting from such policies "is not reasonably avoidable" by consumers.  73 F.R. 28904-01, 28929.  "It appears that consumers cannot reasonably avoid this injury if they are automatically enrolled in an institution's overdraft service without having an opportunity to opt out.  Although consumers can reduce the risk of overdrawing their accounts by carefully tracking their credits and debits, consumers often lack sufficient information about key aspects of their account.  For example, a consumer cannot know with any degree of certainty when funds from a deposit or a credit for a returned purchase will be made available."  *Id*.

      68.    According to rules proposed by the Agencies, "Injury [caused by overdraft charges] is not outweighed by countervailing benefits . . . . This is particularly the case for ATM withdrawals and POS debit card transactions where, but for the overdraft service, the transaction would typically be denied and the consumer would be given the opportunity to provide other forms of payment without incurring any fee."  73 F.R. 28904-01, 28929 (May 19, 2008).

      69.    Thus, as a consequence of United Bank's overdraft policies and practices, Plaintiffs and the Class have been wrongfully forced to pay overdraft fees.  United Bank has improperly deprived Plaintiffs and the Class of significant funds, causing ascertainable monetary losses and damages.

      70.    As a consequence of United Bank's improper overdraft fees, United Bank has wrongfully deprived Plaintiffs and the Class of funds to which it had no legitimate claim.

71.     Plaintiffs had sufficient funds to cover at least some of the transactions for which they and the Class were charged overdraft fees.  Plaintiffs and members of the Class either had adequate funds to cover the transactions posted to their accounts, or the accounts were allowed to become overdrawn, even by *de minimis* margins, exclusively so that United Bank could impose these wrongful charges.  In many instances, United Bank's manipulation of the process for imposing overdraft fees triggered a cascade of charges that exponentially added to the charges it collected from Plaintiffs and Class members.

72.     All conditions precedent to the relief sought herein have either occurred or have been performed or waived.

## FIRST CLAIM FOR RELIEF

### Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing
**(On Behalf of the National Class)**

73.     Plaintiffs repeat paragraphs 1 through 72 above.

74.     Plaintiffs and United Bank have contracted for bank account deposit, checking, ATM and debit card services, as embodied in United Bank's account agreement and related documentation.  The Bank has breached its contractual agreements with Plaintiffs and the Class.

75.     United Bank has also breached the covenant of good faith and fair dealing.  Good faith is an element of every contract pertaining to the assessment of overdraft fees.  Whether by common law or statute, all such contracts impose upon each party a duty of good faith and fair dealing.  Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit –not merely the letter – of the bargain.  Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.  Evading the spirit of the

bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

76.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified.  Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

77.     United Bank has also breached its contract with Plaintiffs and the Class by failing to comply with the covenant of good faith and fair dealing through its overdraft policies and practices as alleged herein.

78.     Plaintiffs and the National Class have performed all, or substantially all, of the obligations imposed on them under the account agreement.

79.     Plaintiffs and members of the National Class have sustained damages as a result of United Bank's breach of the covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF

#### Unconscionability
#### (On Behalf of the National Class)

80.     Plaintiffs repeat paragraphs 1 through 72 above.

81.     United Bank's overdraft policies and practices are or were substantively and procedurally unconscionable in the following respects, among others:

        a.      Prior to the Effective Date, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.     The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c.     The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.     The account agreement and related documents are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.     The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner; and

f.     The account agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always re-orders debits from high to low, even though United Bank *always* re-orders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

82.     Considering the great business acumen and experience of United Bank in relation to Plaintiffs and the National Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the oppressiveness of the terms, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and, therefore, unenforceable as a matter of law.

83.     The imposition of overdraft charges which exceed the amount overdrawn (*e.g.*, the imposition of a $36 charge on an overdraft of less than $36) is itself unconscionable. Such charges are not reasonably related to the Bank's cost of covering the overdraft and/or its risk of nonpayment (where the Bank pays the overdraft), or to the Bank's cost of returning the item unpaid (where the Bank does not pay the overdraft).

84.     Plaintiffs and members of the National Class have sustained damages as a result of United Bank's unconscionable policies and practices as alleged herein.

### THIRD CLAIM FOR RELIEF

**Conversion**
**(On Behalf of the National Class)**

85.     Plaintiffs repeat paragraphs 1 through 72 above.

86.     United Bank had and continues to have a duty to maintain and preserve its customers' checking accounts and to prevent their diminishment through its own wrongful acts.

87.     United Bank has wrongfully collected overdraft fees from Plaintiffs and the members of the National Class, and has taken specific and readily identifiable funds from their accounts in payment of these fees in order to satisfy them.

88.     United Bank has, without proper authorization, assumed and exercised the right of ownership over these funds, in hostility to the rights of Plaintiffs and the members of the National Class, without legal justification.

89.     United Bank continues to retain these funds unlawfully without the consent of Plaintiffs or members of the National Class.

90.     United Bank intends to permanently deprive Plaintiffs and the members of the National Class of these funds.

91.     These funds are properly owned by Plaintiffs and the members of the National Class, not United Bank, which now claims that it is entitled to their ownership, contrary to the rights of Plaintiffs and the members of the National Class.

92.     Plaintiffs and the members of the National Class are entitled to the immediate possession of these funds.

93.     United Bank has wrongfully converted these specific and readily identifiable funds.

94.     United Bank's wrongful conduct is continuing.

95.     As a direct and proximate result of this wrongful conversion, Plaintiffs and the members of the National Class have suffered and continue to suffer damages.

96.     By reason of the foregoing, Plaintiffs and the members of the National Class are entitled to recover from United Bank all damages and costs permitted by law, including all amounts that United Bank has wrongfully converted.

## FORTH CLAIM FOR RELIEF

### Unjust Enrichment
### (On Behalf of the National Class)

97.     Plaintiffs repeat paragraphs 1 through 72 above.

98.     Plaintiffs, on behalf of themselves and the National Class, assert a common law claim for unjust enrichment.

99.     By means of United Bank's wrongful conduct alleged herein, United Bank knowingly provides banking services to Plaintiffs and members of the National Class that are unfair, unconscionable, and oppressive.

100.     United Bank knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the National Class.  In so doing, United Bank acted with conscious disregard for the rights of Plaintiffs and members of the National Class.

101.     As a result of United Bank's wrongful conduct as alleged herein, United Bank has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the National Class.

102.     United Bank's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

103.     Under the common law doctrine of unjust enrichment, it is inequitable for United Bank to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of overdraft fees on Plaintiffs and members of the National Class in an unfair, unconscionable, and oppressive manner.  United Bank's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

104.     The financial benefits derived by United Bank rightfully belong to Plaintiffs and members of the National Class.  United Bank should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the National Class all wrongful or inequitable proceeds received by them.  A constructive trust should be imposed upon all wrongful or inequitable sums received by United Bank traceable to Plaintiffs and the members of the National Class.

105.     Plaintiffs and members of the National Class have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### Violation of the West Virginia Consumer Credit and Protection Act
**(*W.Va. Code* §461-6-104)**
**(On Behalf of the West Virginia Sub-Class)**

106.     Plaintiffs repeat paragraphs 1 through 72 above.

107.   United Bank engages in trade or commerce in West Virginia and offers overdraft "protection" services to its customers, which services necessarily include, but are not limited to, the extension of consumer credit.

108.   Processing and payment of overdraft debit card transactions constitutes a "service" as defined by W.Va. Code § 46A-1-102(46).

109.   The acts and practices engaged in by United Bank and described in this complaint constitute unfair or deceptive acts or practices in the conduct of trade or commerce, violating the West Virginia Consumer Credit and Protection Act.  *W.Va. Code* §461-6-104, including, but not limited to, those acts or practices described in W.Va. Code § 46A-6-102(7)(L)(M)&(N).

110.   United Bank engaged in unlawful practices, including deception, misrepresentation, fraud and the concealment, suppression or omission of material facts in connection with its assessment of overdraft fees.

111.   United Bank's policies and procedures are not fairly represented in its customer agreements.  As such, consumers are not sufficiently informed of the Defendant's true practices.

112.   United Bank's policies and procedures as alleged herein offend the public policy of the State of West Virginia, as they are unethical, oppressive and unscrupulous, and have caused substantial injury to West Virginia consumers.

113.   Through its policies and procedures as alleged herein, United Bank has violated its duty of good faith to its customers, and has therefore violated the West Virginia Consumer Credit and Protection Act.  In connection with executing contracts and discharging performance and other duties, the duty of good faith obliges United Bank to preserve the spirit of the bargain it made with its customers.   United Bank was obliged to comply with the substance of its

contract in addition to its form.  By evading the spirit of the bargain and abusing its power to specify terms, United Bank violated its duty of good faith.

114.    Through its policies and procedures as alleged herein, United Bank has engaged in unconscionable acts and practices while negotiating its contract with its customers and then obtained an unconscionable contract.

a.    Prior to the Effective Date, the Bank did not disclose or reasonably disclose to customers that they had the option to "opt out" of the Bank's overdraft scheme;

b.    The Bank does not obtain affirmative consent from checking account customers prior to processing a transaction that would overdraw the account and result in an overdraft fee;

c.    The Bank does not alert its customers that a debit card transaction will trigger an overdraft, and does not provide the customer the opportunity to cancel that transaction, before assessing an overdraft fee;

d.    The account agreement and related documents are contracts of adhesion in that they are standardized forms, imposed and drafted by the Bank, which is a party of vastly superior bargaining strength, and only relegates to the customer the opportunity to adhere to them or reject the agreement in its entirety;

e.    The amount of overdraft fees is disclosed in an ineffective, ambiguous, misleading, and unfair manner; and

f.    The account agreement provided to customers is ineffective, ambiguous, deceptive, unfair, and misleading in that it does not unambiguously state that the Bank always re-orders debits from high to low, even though United Bank *always* re-orders transactions in this way for customers in order to maximize overdrafts and overdraft fee revenues for the Bank.

115.    United Bank has taken unfair advantage of its unequal bargaining position and obtained a contract term which results in gross disparity of values exchanged.  The account agreement provided to customers is a contract of adhesion, and customers were not given fair opportunity to evaluate its terms.

116.    As a result of United Bank's employment of unlawful acts and practices, the Plaintiffs and the West Virginia Sub-Class have suffered an ascertainable loss of money or property in the form of unlawful overdraft fees assessed upon customers by the Defendant.

117.    Plaintiffs and the West Virginia Sub-Class are thus entitled to all relief available under the West Virginia Consumer Credit and Protection Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class demand a jury trial on all claims so triable and judgment as follows:

1.    Declaring United Bank's overdraft fee policies and practices to be wrongful, unfair and unconscionable;

2.    Restitution of all overdraft fees paid to United Bank by Plaintiffs and the Class as a result of the wrongful practices alleged herein in an amount to be determined at trial;

3.    Disgorgement of the ill-gotten gains derived by United Bank from its misconduct;

4.    Actual damages in an amount according to proof;

5.    Statutory penalties for each violation of the West Virginia Consumer Credit and Protection Act, pursuant to *W.Va. Code §§* 46A-5-101(1) and 106 (West Virginia Sub-Class Only);

6.    Punitive and exemplary damages and penalties;

7.    Pre-judgment interest at the maximum rate permitted by applicable law;

8.     Costs and disbursements assessed by Plaintiffs in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

9.     Such other relief as this Court deems just and proper.

Dated: October 24, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No. 516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

- 30 -

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY 10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 24, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

- 33 -