

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. CASE NO. 1:09-MD-02036-JLK

In the interest of Gregory Murphy at one of the following:

*Jessica Duval v. Citizens Financial Group, Inc.* N.D. Ill. Case No. 1:10-cv-00533 S.D. Fla. Case No. 1:10-cv-21080-JLK

*Eric Daniels v. Citizens Financial Group, Inc.* D. Ma. Case No. 10-cv-10386 S.D. Fla. Case No. 1:10-cv-22014-JLK

*Michael L. Blankenship v. RBS Citizens, N.A.* D.R.I. Case No. 10-163S S.D. Fla. Case No. 1:10-cv-22942-JLK
    Plaintiff (s)

Vs.

Citizens Financial Group, Inc
RBS Citizens, N.A.
Citizens Bank of Pennsylvania

    Defendant(s).

## Pro-se Correspondence

I, Gregory Murphy, Plaintiff, in the above styled cause, request the court to consider the following facts and allegations against my legal representation and the Plaintiff Executive Committee (PEC) in the aforementioned case.

On October 12, 2011, at approximately 19:33 - no later than 20:15 (end of phone call) - a conversation took place between Gregory Murphy (client) and Andrea Gold (council). Council stated the purpose of scheduled telephone conference was to go over a few things before the prep session in New York **(Doc A)**. During said phone call, council asked if client had any criminal background; client acknowledged the adjudication of criminal charges approximately 10 years previous. At conclusion of phone call council advised client she "looked forward to meeting him tomorrow in New York".

On October 13, 2011, at approximately 07:54, client "missed" a phone call from council no voicemail was left. Phone call was returned at 08:01; but council missed phone call. Client will provide a copy of phone records upon demand to support this fact.

On October 13, 2011, at approximately 08:02, client "texted" council, to let her know he had her number. Council did not respond to text message. *Note* It was discussed on October 12, 2011 that council would email phone number to client in case of emergency, council failed to email client.

On October 13, 2011, at approximately 08:06, council again attempted to call client. The phone call was missed and a voicemail was left. The voicemail asked client to return call.

On October 13, 2011, at approximately 08:10, council texted client; informing client that his deposition had been cancelled. The text message

further asked client to call council. An exact version is transcribed in **(Doc B)** original will be provided upon demand.

On October 13, 2011, at approximately 08:14, client called council. At this time council informed client she was transferring him to a lead partner of the firm, Hassan Zavareei (partner). Over the next 7 minutes and 13 seconds, partner expressed numerous concerns and condolences, including paying for the air fare for a vacation for "working so hard with the firm". Among the items discussed by partner – who had an anxious demeanour/voice throughout phone call - was the "fictitious fact" that felons could not represent a class action lawsuit. The fictitious fact was the reason client was told his deposition was cancelled. Client never implied or specifically agreed to cancel the deposition. Travel expenses were agreed to be covered by the partner **(Doc C)** wherefore, client requests this court to force partner to repay all expenses including, air travel arrangements (plus change and cancellation fees), credit card fees, mileage and cell phone minutes used to perform these tasks.

On October 13, 2011, early afternoon, client began to doubt partner's claims and statements. Client searched for cases and information related to class representatives and/or plaintiffs with felonious convictions. Client found hundreds of thousands of cases involving felonious plaintiffs, contrary to what was "factually stated" by partner. Client began to feel betrayed, distraught, flustered and misled by the legal misrepresentation laid upon him.

On October 14, 2011, at approximately 09:21, but, no later than 09:50 client contacted Barbra Olk (Barbra), an attorney at Trief and Olk. Client contacted Barbra because he believed she was PEC. Client was informed by Barbra that she was not PEC; but had an interest in the matter. Client was further informed that it was to Barbra's understanding that client had mutually agreed to withdrawal from case and cancel deposition. Client informed her that this was a total fabrication and misrepresentation of client's intentions. Client was also informed by Barbra that client's mental health could be an issue that was brought forward. Client has no current mental disorders that he is aware of nor is there substantiated proof to support such a claim. Barbra was extremely

accommodating, to the point where a simple apology from partner would have made this matter go away. Barbra made certain that client was aware he could still be a class member even though he was not a class representative which was acknowledged. Barbra also clarified the fact that this case is not yet in class status; which is contrary to what has been reported several times by council and partner.

On October 14, 2011, at approximately 10:05, client sent an email to council **(Doc D)**. The email advised council that client knew council's firm (law firm) had provided fictitious information regarding client's interests; which included false light statements by a member of law firm regarding client's mental health.

On October 14, 2011, at approximately 17:56, partner emailed client acknowledging client's concerns. Partner responded with a "cool-down" memo allowing for the weekend to pass before giving details **(Doc E)**.

On October 14, 2011, at approximately 18:53, client emailed partner to refute partner's claims. Client expressed his displeasure with partner's actions and pointed out that partner's actions constitute serious ethical misconduct **(Doc F)**.

On October 17, 2011, at approximately 09:56, council emailed client to set-up telephone call with her and PEC, John Gravante III (PEC) **(Doc G)**.

On October 17, 2011, at approximately 10:45, client emailed council to deny request of dual party phone conversation; as client was suspicious of true intentions. At this point in time client believed council was the only lawyer capable of telling him truthfully what was going on. Client was hoping to get the matter resolved by speaking to only council **(Doc H)**.

On October 17, 2011, at approximately 12:27, council emailed client to collaborate partner's fictitious statements. Council also admits to participating in an illegal form of wiretapping **(Doc I)**. Client did not know nor give council permission to listen-in on client's conversation with partner. Client believed he was transferred to an unrestricted private line with partner.

On October 17, 2011, at approximately 12:49, client emailed council in response to her fictitious collaboration **(Doc J)**. At this point in time client felt completely backed into a corner. Client felt he could no longer be directly involved with any member of the firm as they were misleading and manipulating him. Client also references "the ace", referring to a text message that was received by the client from council, prior to the phone conversation during

which, client allegedly agreed to drop his right to participate in this case. Client denies the firm's fabricated recollection of client's agreement, which was allegedly made during the phone call, in its entirety.

On October 17, 2011, at approximately 12:50, client attempted to call PEC. Client was advised PEC was unavailable until 13:30.

On October 17, 2011, at approximately 13:48, council emailed client to advise him, again, that she wanted to talk to him with PEC **(Doc K)**.

On October 17, 2011, at approximately 13:57, client again called PEC to speak with him. Client was advised PEC was unavailable a message was left by client. Phone records are available upon request.

On October 17, 2011, at approximately 15:14, client again called PEC to speak about this matter client was again told PEC was not available client left another message. Phone records are available upon request.

On October 17, 2011, at approximately 18:50, client responded to council's email **(Doc L)**. Client believing that the firm would continue to exploit him decided to cut all verbal communications with firm. Client's phone conversations are billed minutely. Client deemed further verbal communication with firm would prove to be uneventful and burdensome financially. Client also realized at this point PEC was participating in firm's scheme by purposely avoiding client's pertinent phone calls.

On October 18, 2011, at approximately 09:54, client attempted to contact PEC for the final time. The phone call and message was again ignored by PEC. Phone records are available upon request.

On October 18, 2011, at approximately 16:02, partner emailed client amongst other things partner pushed subtle threats toward client **(Doc M)**. Partner reiterates his fictitious statements and inadvertently makes an indirect statement regarding the prejudice of the PEC. Partner confirms clients suspicions that PEC is ignoring and avoiding his phone calls. Partner implicates council of illegal wiretapping activities. Partner makes references to wording, in a retention agreement, that client does not recall reviewing; Partner has not responded to a request for a signed and initialled copy of said agreement. Partner attempts to give notice of termination as well; which should be done by prepaid US mail.

On October 18, 2011, at approximately 17:01, client responded, irritably, to partner's threats and correspondence **(Doc N)**. Client's response was heated and heartfelt. At this point client was tired of being manipulated and shunned by

someone who was supposed to advocate him. Client revealed to partner what his "ace" was, the text message from council; which, negates all of partner's recollections of "the conversation". This conversation was dishonestly collaborated upon and illegally listened to by council.

On October 18, 2011, at approximately 17:04, council was forwarded the original text **(Doc B)** she had sent client and asked to have partner call client. Council did not respond and has had no further interaction with client.

On October 18, 2011, at approximately 17:16, PEC was emailed original text message he did not respond.

On October 18, 2011, at approximately 17:22, client again responded to partner's email **(Doc M)**. The client's intentions were to have partner make verbal contact with client **(Doc O)**. The attempt failed, client has not responded back since Doc M.

On October 18, 2011, at approximately 18:56, client sent a mass email to the following Andrea Gold (council), Hassan Zavareei (partner), John Gravante III (PEC) and Barbra Olk (Barbra) attempting to once again ensure that everyone knew my legal council was lying; but nobody responded.

On October 18, 2011, approximately between 21:09 and 21:30, I responded to the rest of partner's final email **(Doc M)** via various short emails. Furthermore, I gave him the opportunity to apologize "off-the-record" yet again to no avail.

It is this client's belief that his council is ineffective and has effectively conspired with other attorneys on this case to prejudicially have him removed from this case. Client believes that his rights and privileges have been violated by both John Gravante III (PEC) and the law firm of Tycko and Zavareei (firm).

Client requests the court to take serious disciplinary action against said attorneys and to force said attorneys to fund my future legal representation and fund all expenses incurred with relation to pursuing this matter.

Client also request to impose any punishment it deems fit for this matter.

Client further requests that John Gravante III and his firm along with the firm of Tycko and Zavareei relinquish all rights and privileges related to this matter.

If court can not accommodate client's request, client hopes the court can advise him of his legal options regarding the ethical misconduct of aforementioned attorneys.

In closing, client would also like to note that his college experience including test preparation and study time has been severely affected by the firm's negligence and unethical conduct. Client has to take time from his home family life, including two young children (almost 5 and 3 years old) and busy college career (18credits) to pursue his legal interest and right. Firm has been extremely detrimental to this entire process. Finally, client's previous criminal convictions have absolutely no bearing on the procedures Citizens Bank uses to write its policies; including, but not limited to, overdraft practices.

October 19, 2011						Respectfully submitted,

							*[signature]*
							Gregory P Murphy
							Pro Se
							610 Saint Clair ST
							Latrobe, PA 15650-2059
							(724)-217-5078
							Mur4430@CalU.edu
							MurphyG9@comcast.net

**<u>Certificate of Service</u>**

**No other parties were served by plaintiff.**

## Doc A

Greg,

I'd like to talk before the 13th, if at all possible. The 13th is the prep session in NY and it would be good to go over a few things before then.

I will accommodate your schedule, if you can make some time. The 10th also works for me.

Andrea

Sent from my iPhone

**This document is an excerpt from a series of emails correspondence between client and council.**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Doc B

Greg,
URGENT.
Do not travel to NY. Your deposition has been cancelled. Please call me.

Andrea Gold

# Doc C

Greg,

We have made your hotel reservation for the evening of October 13. Your room is reserved at The Roosevelt Hotel, 45 East 45th Street New York, NY 10017. The telephone number there is (866) 530-9379. The reservation is in your name, but all costs are being paid for by our firm. Your confirmation number is 6432554. The hotel is conveniently located to the preparation session location and deposition location detailed below.

**As we've discussed, please forward all other receipts for your expenses to our office (preferably, my paralegal, Mia Goschalk, who is copied here) and we will work on getting you a reimbursement. I believe that you have already sent me your flight receipts so we will work on that.**

Hassan and I would like to speak with you via phone prior to the deposition. Are you free to talk on October 11 or 12? If so, please let me know when is most convenient. The afternoons are better for us, if possible, on those days.

Otherwise, we look forward to speaking with you soon and meeting you in NYC.

Best,
Andrea


Greg,

I found the additional flights using Kayak.com. It appeared that there were a lot of options, although I did not study it closely.

Please let me know if you run into any problems. **Save your receipts and we will reimburse you.**

Best,
Andrea


**This document is an excerpt from a series of emails correspondence between client and council.**

## Doc D

Your firm has misstated my intentions! You said we were in agreement that I would no longer represent the class... You forced and apparently coerced me into that decision, a decision I DID NOT AGREE TO! I have let the proper people know that I am still interested in being a class representative! Your firm and I now have a conflict of interest amongst other issues... I will be contacting the DC bar association later today to report the fallacies; in fact I will not do that until I have a resolution to my original complaint. I also heard Jones questioned my mental health that was from juvenile cases relating to parental and judicial forced treatment... Again that was from a juvenile record and should not be listed on my public record. The felonies are from 10 years ago... they are what they are! From a time when I was immature and misguided! I was one of two juveniles that were convicted with an adult of stealing a car and placing it on the railroad tracks for two trains to hit it... I was involved in one of the three burglaries I plead guilty to; was not present for two of them. None the less I paid for my stupidity and now the firm's greed has caused its own! Your best interest never coincided with mine and ultimately you are as greedy as the bank... The firm at this point is nothing more than a bunch of ambulance chasers that has a conflict of interest with the entire class; which, contrary to your statements has not even been certified yet!

Gregory Murphy

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Doc E

Greg,

Thank you for your emails, which expressed concerns regarding your role in the case against RBS Citizens. I take your concerns very seriously, and I will provide you with a full response on Monday. In the meantime, please know that we will not file a stipulation of dismissal without further consultation with you.

Best,

Hassan

## Doc F

We are passed this point Hassan... You in direct representation of me lied on my behalf; **we have a conflict of interest!** I am absolutely furious with regards to your actions! You have played me for a damn fool, a convicted criminal YES an ignorant person NO! Contrary to the norm I did not sit around and do my time, I read everything I could get my hands on; most of the time it was limited to case law.

I have never, NEVER been so misguided and under appreciated! You saw a dollar sign fall off your potential earnings when all this came to light and made a calculated decision; unfortunately, you did not respect my intelligence when you made your calculations!

I am sure you realize the possible sanctions that could result from your ethical misconduct... At this point I am not interested in the possible sanctions. Your reputation means nothing to me (at this point)! If I were to seek sanctions against you, your family would suffer. I would be indirectly affecting them - something in my own virtuous ways WILL NOT happen - by taking food off of their table.

I can not trust you or your firm to serve my best interest. I will only accept email correspondence from you going forward until a point in time when I can reach a resolution with my advising council with regards to what has taken place over the past two days. **I will not accept any phone calls from your firm that are monitored (wire taping or otherwise) by any means.**

The only person I will speak to regarding any of your direct concerns will be Andrea, one on one, no speaker phone and surely no monitoring (wire taping or otherwise). If I do not like the way the conversation is laid out surely I will end it abruptly. Your best option is to use email originating from 72.32.253.73 (your company's server).

Please do not think I have taken this matter lightly or that I can be intimidated... If a lawyer wants to tear my credibility apart and pick apart my life so be it... Would not be the first time and surly will not be the last. I am mature enough to admit my faults and not lie about them most of the time it will end things conclusively the first time!

Gregory Murphy

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Doc G

Greg,

John Gravante, one of the attorneys on the Plaintiffs' Executive Committee, and I would like to have a call with you this afternoon at around 1:30 pm. Are you available at that time?

Best,
Andrea

Sent from my iPhone

## Doc H

No...

I want to speak with you first; I am still beside myself regarding this entire matter. Let it be known, I possibly would have agreed to walk away from this case IF I was not manipulated.

I am not interested in reasoning with Hassan at this point the actions are done and current. I do want to speak with you before I make my next decision; which is a pretty drastic recommendation from a "friend".

When I speak with you the last email should be noted (except for the misspelling of wiretapping – which should not be misconstrued), truth be told I would rather talk to you face to face; but given the circumstances I will speak to you over the phone.

I know that I did not ask you certain questions but, in hindsight, I believe you were withholding information from me. For the record, I am not flustered by these (possibly imaginary) withholdings by any means it is the bold-faced lies that have me off my seat.

Please understand that my intentions concerning this conversation with you are genuine. I anticipate the same unadulterated conversation from you in return.

Gregory Murphy

*************************************************************

## Doc I

Greg,

In light of our dramatically different recollections of your conversation with Hassan (which I was also a party to), further telephone calls will require a representative from the Plaintiffs' Executive Committee.

If you are willing to speak with me and John together after 1:30 p.m. today, please let me know.

Best,

Andrea

*****************************************************************

## Doc J

Seriously??? You should know I hold the ace Felon or not its concrete!!!!!!!!

## Doc K

Greg,

John and I would like to talk to you, together, today. If you are in agreement with that arrangement, we will call you shortly. If not, our office will contact you via letter regarding next steps.

Best,
Andrea

*****************************************************************

## Doc L

Andrea,
I will no longer be available to discuss the case by phone with Tycko and Zavareei; as it is consuming too many minutes and my current financial situation can not bear its burden. I will continue to be available by mail and email to discuss the case. If you need to get an urgent message to me please feel free to call and leave a voicemail; as it cost me nothing to check them. I look forward to moving professionally forward with you and John on this matter.

Gregory Murphy

# Doc M

Dear Greg,

I am writing to address your recent emails. As you know, we tried numerous times to speak with you about this matter. You insisted that you would not speak with me. So we tried to arrange a call with you, Andrea, and John Gravante, who is a lawyer with one of the lead firms in the MDL proceedings. But you have refused to speak with Andrea and John Gravante together. You told Andrea you could not afford to use your cell phone, yet you have continued to call John. In light of your mischaracterization of my conversation with you, we are not willing to speak to you without lawyers from two firms on the call. There are a number of issues you have raised in your email, and I will address those that we believe are pertinent here.

Let me begin by making absolutely clear that I reject your accusation that I lied to you or misled you in any way during our conversation on October 13th. When we recently learned of your numerous criminal convictions, the lawyers representing the putative class in this case determined that it would potentially be harmful to our other clients and the class to have you continue as a potential class representative. Immediately after we made this decision, Andrea and I spoke to you on the phone together. You were speaking with Andrea, and she conferenced me into the call. So there is no question that you knew she was on the call. During that conference call I explained that your further involvement could harm the entire class. Although you were disappointed, you gave me your consent to voluntarily dismiss your claim without prejudice. Andrea and I have the same recollection of that conversation. There is no truth to your accusation that I said anything that was false or misleading or that you did not consent to the dismissal of your claim.

I also want to make it clear that there is unanimous agreement among the lawyers directing this litigation against RBS Citizens that your further involvement in this matter is detrimental to the interests of the other plaintiffs and the putative class.

Because of this, I must withdraw from my representation of you in this matter. Our retention agreement provides that we must give you thirty days' written notice of our intention to withdraw as your counsel. Please accept this email as that written notice.

The retention agreement requires you to "advise the Firm fully of all pertinent matters," and permits us to withdraw from the representation if you fail to adhere to this obligation. *See* Paragraphs 3, 11. Your failure to tell us about your criminal convictions until the eve of your deposition is a breach of your duties. We have had numerous communications with you about the case, both by telephone and by email. Until Andrea asked you directly whether you had any criminal convictions, you did not make any mention of this very important fact. It was your obligation to tell us about this from the very beginning.

In addition, we are permitted to withdraw from our representation if "in the sole judgment of the Firm," we learn of "unknown facts" that "make the Claims too risky or uncertain to pursue[.]" Even if you didn't have an affirmative duty to tell us about your convictions, we are still permitted to withdraw because these were unknown facts which have caused us to conclude, in our judgment, that your claims are too risky to pursue.

Our retention agreement also provides that you understand that conflicts might arise between you and our other clients in this case. In the event of such a conflict, we are permitted to terminate our representation. See Paragraph 7. It is our judgment that such a conflict now exists. For all of these reasons, we must terminate our representation.

Despite the fact that you have expressed your desire to terminate our attorney-client relationship immediately, we will cooperate in the transition to any new counsel you retain. In the meantime, I want to make it clear that we will not represent you after thirty days expires.

Finally, I want to let you know that whether you retain new counsel or proceed without an attorney, it is my understanding that the Plaintiffs' Executive Committee (PEC) will ask Judge King to dismiss your claims without prejudice. This is because the PEC believes that any further involvement by you in this case is detrimental to the interests of the class. If, after reading this e-mail, you agree to withdraw as class representative, please confirm this in writing and we will attempt to reach a stipulated agreement with Citizens' attorneys that permits you to withdraw and provides that costs will not be assessed against you.

Best regards,

/s/ Hassan

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## Doc N

Unfortunately, I did not know Andrea was on the phone I thought she transferred me to you .I also have a text message proving the deposition was canceled before the call took place LIAR There is the concrete evidence to your lie the ace you are phony I will ensure to pursue the ethics violations to the fullest... I was not aware a criminal record would conflict with this case, if your firm would have done this during the intake interview this would not be going and David would not have to slay Goliath again... You want to talk to me on the phone one on please do call me you spineless prick... You still owe for the plane tickets I will sue you here in small claims court for those since they were not outlined properly in the contract... I will respond to the rest of your accusations upon review... You're a snake Hassan... Much worse than I could ever be your lies will not side well with Karma...

## Doc O

You told Andrea you could not afford to use your cell phone, yet you have continued to call John…. What were my exact words??? They are in black and white… Don't let a worthless low-life felon out smart you!!!

I will address those that we believe are pertinent here… Pretty much touched on all of them… Must have taken you since Monday I have not heard from you!

Let me begin by making absolutely clear that I reject your accusation that I lied to you or misled you in any way during our conversation on October 13th.. LIAR

When we recently learned of your numerous criminal convictions, the lawyers representing the putative class in this case determined that it would potentially be harmful to our other clients and the class to have you continue as a potential class representative….. From my understanding you knew about them before the phone call along with some mental health issues???? LIAR

You were speaking with Andrea, and she conferenced me into the call. Unfortunately I did not know Andrea was illegally listening over our conversation ( is it a felony there as well?) I thought she transferred me to you.

Although you were disappointed, you gave me your consent to voluntarily dismiss your claim without prejudice. No I was pissed that " a felon could not represent a class" those were your exact words… That is what got me thinking that 2+2 was not  Furthermore the phone call was shortly after the text that my deposition had been canceled…
LLLLLLLLLLLLLLLLLLIIIIIIIIIIIIIIIIIIIIIIIIAAAAAAAAAAAARRRRRRRRRRRRRR

Lets skip the rest of the bullshit call me off the record

*************************************************************************

## Doc P

Has everybody on the plaintiff's side of this case received the text message that proves Andrea and Hassan are lying?
I will file a general motion tomorrow and if the PEC decides to attempt to throw me off a full share portion of this case I will answer that motion… Pleasure doing corrupt business with you Hassan… For those others involved I truly apologize! I hope John that you were not responding because you were misled… I have not contacted Jones-Day because that would be detrimental to my own case along with the other Plaintiffs

Have a wonderful night

Gregory Murphy