IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

| | |
|---|---|
| IN RE : § § | |
| CHECKING ACCOUNT § OVERDRAFT LITIGATION. § § | CASE NO. 09-MD-02036-JLK |
| MDL NO. 2036 § § | |
| THIS DOCUMENT RELATES § TO FIRST TRANCHE TRANSACTIONS § § | |
| *Tornes, et al. v. Bank of America N.A.* § S.D. Fla. Case No. 1:08-cv-23323-JLK § § | |
| *Yourke, et al. v. Bank of America, N.A.* § S.D. Fla. Case No. 1:09-cv21963-JLK § N.D. Cal. Case No. 3:09-2186 § | |

REPLY MEMORANDUM IN SUPPORT OF KENNEDY OBJECTIONS
[Refers to Dk. No. 1885]

Prentiss Jenkins, Marvelus Sattiewhite III, Johnson W. Sattiewhite, Kirk A. Kennedy, Fay Robinson, and Anthony McMahan, class members of the above referenced Plaintiffs' class (collectively, "Jenkins Objectors"), hereby reply to Defendant's Memorandum In Response To Objections Regarding Final Approval Of Class Action Settlement ("Defendant's Response") [DE.2029] and Plaintiffs' Response To Objections To Motion For Final Approval Of Settlement And Class Counsel's Application For Service Awards And Attorneys' Fees ("Plaintiffs' Response") [DE.2030].

I.  The Pre-Distribution *Cy Pres* Program Is Unsustainable, and Reallocation to Identifiable Class Members is Mandated.

Plaintiffs and Defendant overlook that the Settlement Agreement and Release ("Settlement") [DE.1885 at Ex. A] provides for two separate and distinct *cy pres* programs, and misapprehend the Jenkins Objectors' *cy pres* arguments. To be clear: The

1

Jenkins Objectors do not object to the residual *cy pres* provision in Section XII of the Settlement, which is not only appropriate, but necessary to ensure that unclaimed settlement funds do not escheat to the defendant; the Jenkins Objectors do object, however, to the pre-distribution *cy pres* provision in Section XI of the Settlement, which is legally inappropriate *per se*. Plaintiffs and Defendant attempt to find cover for the pre-distribution *cy pres* program by wrapping themselves in decisions approving residual *cy pres* awards. Plaintiffs' Response at 16-19; Defendant's Response at 12-14. But the law is well-settled, and was recently reiterated by the Fifth Circuit in *Klier v. Elf Atochem N. Am.*, 2011 WL 4436528, *3 (5th Cir. Sept. 26, 2011), that a pre-distribution *cy pres* award, before all identifiable class members have been fully compensated, cannot be approved. Its inclusion in the Settlement should concern the Court.

Indisputably, Section XI of the Settlement compensates unidentifiable 2001-2003 class members, prior to the distribution of funds to identifiable class members. Settlement at 28-29. And whatever label Class Counsel place on that pre-distribution *cy pres* program, see Plaintiff's Response at 18, it certainly creates a *de facto* subclass of 2001-2003 class members about whom Bank of America "lacks sufficient information to identify the respective amounts such Settlement Class Members may be due." Settlement at 28. The Settlement earmarks between 5% and 14% of the settlement fund to the *de facto* subclass through the creation of a *cy pres* program "separate and independent" of the residual *cy pres* program contained within Section XII of the Settlement.

"The *cy pres* doctrine takes its name from the Norman French expression, *cy pres comme possible*, which means 'as near as possible,'" and "originated to save testamentary charitable gifts that would otherwise fail." *Id*. "In the class action context, a *cy pres* distribution is designed to put any unclaimed settlement funds to their next best compensation use, *e.g.*, for the aggregate, indirect, prospective benefit of the class." *Id*. (citations and internal quotations omitted). Thus, as pertains to the Jenkins Objectors, reliance on case law approving *cy pres* distributions as a *residual* program, see Plaintiffs'

2

Response at 17; Defendant's Response at 13, is misplaced.[1]  And cases cited by Class Counsel involving lawsuits in which the entire settlement was diverted to a *cy pres* program are equally inapposite.  Where the costs to administer claims exceed the aggregate damages' distributions to class members, a *cy pres* program may be valid.[2]  Here, however, it is indisputable that it is economically feasible to compensate identifiable class members thus rendering Class Counsel's reliance on that line of case law to be misguided.  Indeed, *Klier* is the *only* case cited that addresses a situation where, as here, a settlement purports to distribute recovery through a *cy pres* program to compensate a subclass of unidentifiable class members, when it is economically feasible to compensate identifiable class members.

The *cy pres* doctrine is permitted to be effective *if, and only if,* there are unclaimed settlement funds *after* distribution is made to ascertainable class members. *Klier*, 2011 WL 4436528 at *4; *accord*, *Airline Ticket Comm. Antitrust Litig.*, 307 F.3d at 682-83.  Indeed, "*cy pres* has only been employed when dealing with settlement funds after those class members who could be identified with reasonable effort received their distribution." *Grimes v. Rave Motion Pictures Birmingham*, L.L.C., 264 F.R.D. 659, 666 (N.D. Ala. 2010).  "There is no precedent for using *cy pres* to distribute somehow aggregated … damages the owners of which are unknown, especially if [the identifiable class members have not been paid in full]." *Id.*.

---

[1] *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 588 F.3d 24, 30 (1st Cir. 2009); *In re Airline Ticket Comm. Antitrust Litig.*, 307 F.3d 679, 682-83 (8th Cir. 2002); *Powell v. Ga.-Pac. Corp.*, 119 F.3d 703, 704-05 (8th Cir. 1997); *Dem. Cent. Comm. v. Wash. Metro. Area Transit Comm'n*, 84 F.3d 451, 455 (D.C. Cir. 1996); *In re: Infant Formula Multidistrict Litig.*, 2005 WL 2211312, *1 (N.D. Fla. Sept. 8, 2005).

[2] *Shepherd Park Citizens Ass'n v. Gen. Cinema Bev. of Wash. D.C.*, 584 A.2d 20, 26 (D.C. Ct. App. 1990) ("costs of distributing recovery … would greatly exceed any individual benefit"); *In re Toys R Us Antitrust Litig.*, 191 F.R.D. 347, 353 (E.D.N.Y. 2000) (impossible to identify "proper claimants); *N.Y. v. Reebok Int'l Ltd.*, 903 F. Supp. 532, 537 (S.D.N.Y. 1995) (economically infeasible to distribute to class and difficult to identify claimants); *In re Vitamin Cases*,107 Cal. App.4th 820, 830 (Cal. Ct. App. 2003) (*cy pres* necessary; would cost more to administer claims than individual value).

Here, the Settlement diverts between 5% and 14% of the fund to a distribution for the benefit of unidentifiable class members, without regard to whether identifiable class members have been made whole.  This it cannot do.  Indeed, *Klier* so ruled.  The Fifth Circuit reversed the approval of a settlement containing the same form of *cy pres* program as exists in the Settlement here, holding that it was not permissible to distribute funds to one set of unidentifiable class members.  2011 WL 4436528 at *4-7.

The Fifth Circuit began its analysis in *Klier* "with a return to basic principles," including that "a class settlement generates property interests":

> Because the settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible "only when it is not feasible to make further distributions to class members."  Where it is still logistically feasible and economically viable to make additional pro rata distributions to class members, the district court should do so, except where an additional distribution would provide a windfall to class members with liquidated-damages claims that were 100 percent satisfied by the initial distribution.  A *cy pres* distribution puts settlement funds to their next-best use by providing an indirect benefit to the class.  That option arises *only if* it is not possible to put those funds to their very best use: benefitting the class members directly.

2011 WL 4436528 at *4 (emphasis added).

*Klier* then addressed, and rejected, the argument that identifiable class members "have already been fully compensated because they were paid in full according to the terms" of the settlement agreement:

> The fact that the members of Subclass A have received the payment authorized … does not mean that they have been fully compensated. … "[F]ew settlements award 100 percent of a class member's losses, and thus it is unlikely in most cases that further distributions to class members would result in more than 100 percent recovery for those class members."  Moreover, the Agreement does not even purport to provide full, individualized compensation.  It authorized pro rata distributions … that w[ere] designed to ensure, within the limits of the fund, that each claimant obtained some relief.

2011 WL 4436528 at *7 (citations omitted). And the court also addressed, and rejected, the argument that eliminating the *cy pres* distribution would deprive the unidentifiable class members of the settlement's benefits:

> This argument is a straw man. All agree that additional distributions to the members of Subclass B were not economically viable. No proposal before the district court would have allowed Subclass B to receive the full value allocated to it by the original agreement. The choice was not between a distribution to Subclass A and a distribution to Subclass B; the choice was between a distribution to Subclass A and a distribution to charity.

*Id.* at *8.

Attempts to distinguish *Klier* are misguided. To be sure, the settlement in *Klier* differed slightly in that it provided that "if it [was] not feasible to distribute funds" to one subclass, then the district court was authorized to "make changes to the terms of this protocol as necessary for the benefit of the Settlement Class Members." 2011 WL 4436528 at *5. And it is for that reason the court held that both controlling principles regarding *cy pres* awards *and* the settlement agreement interpreted through the lens of *cy pres* principles, required distributions in favor of identifiable class members until those class members were made whole. *Id.* at *8. Critically, and notably ignored by Class Counsel, however, the court confirmed the axiom that "additional 'distributions to class members better approximate the goals of the substantive laws than distributions to third parties that were not directly injured by the defendant's conduct" was applicable to bar *cy pres* distributions before identifiable class members have been made whole. *Id.*

Class Counsel appear to suggest that reallocating funds endangers the Settlement. Plaintiffs' Response at 9. But the Settlement merely permits Bank of America to withdraw from the settlement if the Court changes a "material term." Settlement at 39. It is beyond the pale to contend that a reallocation of funds (presently sitting in escrow) from an unlawful *cy pres* distribution to a lawful distribution for the benefit of class members is a material change to permit Bank of America to terminate the Settlement.

The suggestion that *Klier* involved formal subclasses and therefore is inapplicable to this case is baseless. Despite the labels given, the Settlement Agreement indisputably creates two distinct categories of class members: unidentifiable class members with claims from 2001-2003 who will receive no direct benefit from the settlement, and class members with claims from 2004-2009 who will receive less compensation because 5-14% of the funds will be diverted to a *cy pres* program to benefit unidentifiable 2001-2003 class members. Notwithstanding Class Counsel's protestations to the contrary, Plaintiff's Response at 18, the plea to the Court to approve the Settlement "as is" in order to avoid the possibility that Bank of America will back out, *id*. at 9, should raise concerns regarding the creation of *de facto subclasses* without providing separate representation.

The separate subclasses created by the *cy pres* raise the fundamental issue whether the Settlement complies with Fed R. Civ. P. 23(a)(4), which requires that representative fairly and adequately represent interests of the class. That is, the pre-distribution *cy pres* unfairly and arbitrarily benefits unidentifiable class members and third parties at the expense of the identifiable class members. This the Settlement cannot do. "[I]ntraclass equity" is a requirement of any settlement, regardless the interests in "achieving a global settlement." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858, 863 (1999). Indeed, "it is obvious after *Amchem* [*Products v. Windsor*, 521 U.S. 591 (1997),] that a class divided … requires … separate representation to eliminate conflicting interests of counsel." *Id*. at 856. No such procedure was undertaken here, and the 2004-2009 class members will suffer as a result.

Addressing a slightly different problem, the Court held in *Amchem Products* that claims may not be resolved in a settlement when there are no class representatives with future claims. That principle should apply here where there are no identifiable class representatives with claims arising in 2001-2003.

> The class representatives may well have thought that the Settlement serves the aggregate interests of the entire class. But the adversity among subgroups requires that the members of each subgroup cannot

6

> be bound to a settlement except by consents given by those who understand that their role is to represent solely the members of their respective subgroups.

*Id.* at 627 (internal quotations and citations omitted).

Even if the Court were to conclude that the Settlement fairly compensates the 2004-2009 class, the Court should not rely on that fact to approve the Settlement with the pre-distribution *cy pres* program,

> because doing so would conflate Rule 23(a)(4)'s adequacy of representation analysis with Rule 23(e)(2)'s fairness, adequacy, and reasonableness analysis." The possible fairness of a settlement cannot eclipse the Rule 23(a) and (b) precertification requirements. Thus, the adequacy of representation cannot be determined solely by finding that the settlement meets the aggregate interests of the class or "fairly" compensates the different types of claims at issue. In the Rule 23(a)(4) context, we must ask independently whether the interests of all class members were adequately represented.

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 254 (2nd Cir. 2010) (internal quotations and citations omitted).

## II. A Sliding Scale Analysis Compels A Downward Adjustment From The Established Benchmark.

Class Counsel's arguments on the factors articulated in C*amden I Condo. Ass'n v. Dunkle*, 46 F.2d 768, 772 (11th Cir. 1991) (*Camden I*), and *Johnson v. Ga. Hwy., Inc.*, 488 F.2d 714, 719-20 (5th Cir.1974), are unsound. To the contrary, the Court should consider a *downward* adjustment from the 25% to 30% *Camden I* benchmark, for two reasons: (i) attorneys' fees should be adjusted downward in very large common fund recoveries; and (ii) no time records were submitted to enable the Court to conduct an objective evaluation of "the time and labor required" under *Johnson*. This Court should avoid a result where class members receive a modest recovery, while Class Counsel receive $123 million, and particularly where it appears that settlement was reached with relatively little time invested and active discovery lasted barely five months.

In *Behrens* v. *Wometco Enters., Inc.,* 118 F.R.D. 534 (S.D. Fla. 1988), while

7

recognizing that courts have awarded percentage fees in common fund recoveries in the 20% to 50% range, this Court found: "The district court was not to make the prevailing counsel 'rich.' The award of fees should only 'enable an attorney to serve his client effectively and to preserve the integrity and independence of the profession.'" *Id.* at 545 (*citing Johnson*, 488 F.2d at 719-20). *Behrens* reflects the principles and reasoning articulated in *Camden I,* 946 F.2d at 775, in which the Eleventh Circuit cited approvingly *Court Awarded Attorney Fees*, Report of the Third Circuit Task Force, October 8, 1985 (Arthur R. Miller, Reporter), 108 F.R.D. 237, 251, 256 (1985) (reporting that courts "act[ing] as a fiduciary for the beneficiaries of the fund," should apply a "sliding scale dependent upon the ultimate recovery, the expectation being that, absent unusual circumstances, the percentage will decrease as the size of the fund increases"). *See also*, *e.g.*, *Carpenters Health & Welfare Fund v. Coca-Cola Co.,* 587 F. Supp. 2d 1266 (N.D. Ga. 2008) (adhering to sliding scale per *Camden I*).

But even were this Court to conclude, as it did in *Behrens*, that Class Counsel achieved success under the *Camden I* factors and *Johnson*, it could (and should) nonetheless reduce and reallocate a substantial percentage of the requested fees to class members because the interests of the class members take priority over the interests of compensating class action lawyers. Indeed, Class Counsel has not produced facts to support the 25% to 30% *Camden I* benchmark, nor to counter a downward departure to a 20% fee award ($82 million, not including expenses). Certainly they have not shown how such downward departure would work severe economic hardship, or compromise "the integrity and independence of the profession." *Behrens,* 118 F.R.D. at 534.

And notably, contemporaneous time records would have enabled the Court to evaluate the time and labor actually expended, and to determine whether a $123 million fee award is an improper windfall. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1991) (recognizing that "while we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for

8

comparison"). Indeed, a lodestar calculation is a valuable crosscheck on the reasonableness of the percentage, based on objective numbers. Here, Class Counsel's refusal to submit time records should weigh heavily on the Court. Indeed, the case law cited by Class Counsel, purportedly to support a 30% fee award is inapposite; in each of those cases, (i) time records were submitted, (iii) the litigation was far more extensive than involved in this action, and/or (iii) the class fund amount paled in comparison to the $410 million here. See Plaintiffs' Motion For Final Approval of Settlement, Application For Service Awards, Class Counsel's Application For Attorneys' Fees, And Incorporated Memorandum Of Law [DE.1885] at 49, n.8[3]; Plaintiffs' Response at 28 & n.37.[4] And so,

---

[3] *See Composite Exhibit A*. *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1290 (11th Cir. 2011) (settlement "after seven years," five months of trial; lodestar); *Allapattah Servs. Inc. v. Exxon Corp.,* 454 F.Supp. 2d 1185 (S.D. Fla. 2006) (31.3% of $1.06 billion in case spanning 15 years, after two trials and appeal; lodestar); *In re Terazosin Hydrochloride Litig.*, S.D. Fla. No. 99-MDL-1317 (33.3% of $30 million; finding $12,328,076.48 of hourly fees during six years of litigation); *In re Managed Care Litig. v. Aetna,* MDL No. 1334, 2003 WL 22850070 (S.D. Fla. 2003) (35.5% of $100 million, but 10.6% of total settlement value; 152 attorneys; time records; five years of litigation); *Gutter v. E.I Dupont De Nemours & Co*., S.D. Fla. No. 95-2152 (33.3% of $40 million; lodestar); *Ehrenrich v. Sensormatic Electrs. Corp.,* S.D. Fla. No. 95-6637-CIV-ZLOCH (30% of $44 million; lodestar); *In re: CHS Electrs., Inc. Secs. Litig.*, S.D. Fla. No. 99-8186-CIV-GOLD (30% on $11 million; lodestar); *Pinto v. Princess Cruise Lines, Ltd*. 513 F.Supp. 2d 1334, 1344-1345 (S.D. 2007) (30% of $4,250,000; lodestar); *In re Cryolife, Inc. Sec. Litig.*, N.D. Ga. No. 1:2-cv-1868-BBM (30% of $23,250,000; 16,500 hours billed); *In re Profit Recovery Group, Int'l, Inc. Sec. Litig.,* N.D. Ga. No. 1:00-cv-1416CC (33.3.% of $6,750,000; action spanning five years; over 10,000 hours); *In re Clarus Corp. Sec. Litig.,* N.D. Ga. No. 1:00-cv-02841-CAP (33.3% of $4,500,000 settlement; lodestar); *In re Pediatric Servs. of Am, Inc. Sec. Litig*., N.D. Ga. No 1:99-cv-0670-RLV (33.3%, amounting to $1,066,560); *In re Sound Advice Sec. Litig.,* S.D. Fla. No. 92-6457 (30% amounting to $829,500); *In re Belmac Corp. Sec. Litig*., M.D. Fla. No. 92-1814-CIV-T-23-(C) (31% amounting to $650,000.00); *Holloway v. Chapnick*, Consol. S.D. Fla. No. 89-6572-CIV-T-23-C (31% amounting to $267,000); *Kaser v. Swann*, M.D. Fla. No 90-607-CIV-Orl-3A18 (30% amounting to $241,976.49); *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) (30% of $775,000 settlement, 787.8 hours).

[4] *See Composite Exhibit B*. *Eslava v. Gulf Tel. Co., Inc*., 2007 WL 4105977 (S.D. Ala. 2007) (30% amounting to $1,697,058; 10,500 hours; lodestar); *In re Friedman's, Inc. Sec. Litig*., 2009 WL 1456698 (N.D. Ga. 2009) (30% of $14.9; 14,923 hours); *Stahl v Mastec, Inc*., 2008 WL 2267469 (M.D. Fla. 2008) (27.9% of $13,137,365); *Fluornoy v. Honeywell Int'l, Inc.,* 2007 WL 1087279 (S.D. Ga. 2007) (25% of $25,000,000 in case

to be fair, Class Counsel's decision not to produce time records and a lodestar calculation to support their requested fees, leaves this Court without objective evidence upon which to justify more than an estimate of what might be fair and reasonable.[5]

And the declarations, though representing the opinions of esteemed lawyers and law school professors, conclude that a 30% award is "within the range of reason," these opinions are made without the benefit of time records, and without applying the principles articulated by this Court in *Behrens* and the Eleventh Circuit in *Camden I*. That shortfall should influence the weight, if any, given to these declarations and in the end compel a downward adjustment from the *Camden I* benchmark.

### III. Conclusion.

Jenkins Objectors request the Court to sustain *all* their objections, and specifically to: (i) reject the proposed pre-distribution *cy pres* program and order the reallocation of that amount ($30 to $40 million) to identifiable class members; (ii) adjust the proposed attorneys' fee award of 30% to reflect a downward adjustment from the *Camden I* benchmark, to 20%; and (iii) grant such other relief as deemed appropriate.

---

spanning 12 years); *Winn Dixie Stores, Inc. ERISA Litig.*, 2008 WL 815724 (M.D. Fla. 2008) (26% of $2,985,000; lodestar); *Sands Point Partners, L.P. v Pediatrix Med. Group, Inc.*, 2002 WL 34343944 (S.D. Fla. 2002) (30% of $12 million; lodestar).

[5] Class Counsel's argument that courts award fees based on a percentage of fees "without discussing lodestar," Plaintiffs Response at 28, is flatly contradicted by the cases to which they cite. *See In re Managed Care Litig. v Aetna*, MDL No 1334, 2003 WL 22850070 at 3 (S.D. Fla. 2003) ("work done by 152 attorneys from 26 law firms"); *In re Friedman's Sec. Litig.*, 2009 WL 1456698 at 3 (N.D. Ga. 2009) ("total of 14,923,35 hours … total billings of $6,160,887.26").

Dated:  October 28, 2011

Respectfully submitted,

**ALDERMAN & KODSI**

By: /S *Neil Kodsi*
Neil Kodsi
Florida Bar No. 0011255
Shoreview Center
9999 N.E. 2nd Ave., Suite 211
Miami Shores, Florida 33138
Tel: (305) 200-5473
Fax: (305) 200-5474
nkodsi@aldermankodsi.com

**AND**

**THE COCHELL LAW FIRM**

By: /S *Stephen R. Cochell*
Stephen R. Cochell
Texas Bar No. 24044255
Fed. Bar No. 0032453
7026 Katy Road, Suite 259
Houston, Texas 77024
Tel: (713) 980.8796
Fax: (713) 980.1179
srcochell@cochellfirm.com

**AND**

KULA & SAMSON, LLP

By: /S *Elliot B. Kula*
Elliot B. Kula
Florida Bar No. 003794
Daniel M. Samson
Florida Bar No. 866911
17501 Biscayne Blvd., Suite 430
Aventura, Florida 33160
Tel: (305) 354-3858
Fax: (305) 354-3822
elliot@kulaandsamson.com
dan@kulaandsamson.com

*Attorneys for Class Members and Objecting Parties Prentiss Jenkins, Kirk A. Kennedy, Marvelus Sattiewhite III, Johnson W. Sattiewhite, Fay Robinson, and Anthony McMahon*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2011, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system. I also hereby certify that the foregoing document is being served this day on all counselor record identified on the Service List in the manner specified, via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /S/ *Elliot B. Kula*
Elliot B. Kula