# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

**THIS DOCUMENT RELATES TO:**
**FIRST TRANCHE ACTIONS**

*Garcia, et al. v. Wachovia Bank, N.A.*
*and Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:08-cv-22463-JLK

*Spears-Haymond v. Wachovia Bank, N.A.*
*and Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-21680-JLK
N.D. Cal. Case No. 08-4610

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685-JLK
D. Or. Case No. 3:09-cv-01239-ST

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Zankich, et al. v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

---

## PLAINTIFFS' RESPONSE TO NON-PARTY AMERICAN ARBITRATION
## ASSOCIATION'S MOTION FOR LEAVE TO FILE
## AMICUS CURIAE MEMORANDUM CONCERNING ARBITRATION MOTIONS

Non-Party American Arbitration Association ("AAA") submitted what it purports to be an amicus curiae memorandum ("Amicus") [**DE # 2042-1**] in connection with the Motions to Dismiss or, in the Alternative, to Stay in Favor of Arbitration filed by Defendants Wells Fargo and Wachovia.[1]   AAA admits that it is not truly a "friend of the court" at all, but instead has made the decision to become an advocate in this matter:

> To be clear, while amicus curiae briefs generally focus on broad policy issues or widespread legal principles that are being addressed in a case to which the amicus is not a party, the AAA is decidedly not submitting this amicus curiae memorandum for any such overarching purpose.

*See* **DE # 2042-1** at 2.  AAA is simply and demonstrably wrong.  As we will show, AAA's representative testified as quoted, and AAA's documents similarly expose the inaccuracy of AAA's stated position here.  AAA appears not to like what their witness said, but they cannot undo those statements with unsworn pleadings written by lawyers purporting to assist the Court.[2] Nor may AAA hide behind what little reputation it has left as a self-proclaimed "neutral and independent not-for-profit administrative organization."  Contrary to the fig leaf that it offers – that it "continues to take no position on the merits of the issues being litigated in the Overdraft Actions" – it has decided, for reasons unknown to Plaintiffs, to weigh in to support compelled, involuntary arbitration (and, effectively, the complete annihilation of Plaintiffs' right to recover improper overdraft fees) by mischaracterizing the consequences of the arbitration process.  AAA is attempting to come to the rescue of Defendants who pay its fees, and who are in the untenable position of having to defend an arbitration process that is unfair and unconscionable.  AAA does

---

[1] There are no provisions in the Federal Rules of Civil Procedure allowing for the filing such a document.  There are several provisions of Federal Rule of Appellate Procedure 29 which address amicus curiae in the appellate courts, but the AAA fails to comply with these requirements.  *See, e.g.*, FRAP 29(b).

[2] The deposition transcript of AAA is attached hereto as Exhibit A for the Court's convenience.

1

not deserve to be viewed in any more favorable light.[3]

**I.     AAA's Attempt to Distance Itself from the National Arbitration Forum ("NAF") Is Unpersuasive and Is Contrary to the Indisputable Public Record.**

AAA's contention that the Court should reject any attempt to draw parallels between the practices of NAF and AAA is unpersuasive.  As this Court is aware, on July 14, 2009, the Minnesota Attorney General's office filed suit against NAF alleging that it was not a neutral body, but rather had extensive financial and organizational ties to banks and other creditors. Shortly thereafter, on July 17, 2009, the NAF entered into a consent decree with the Attorney General's office in which NAF agreed to cease all arbitrations of consumer cases.  Two days later, the Minnesota AG's office, as AAA concedes in its "amicus" filing, sent a letter to AAA that outlined the AG's findings from its NAF investigation.  *See* July 19, 2009 Letter (Ex. B). Among the items addressed in the letter were (1) the fact that mandatory arbitration agreements are nearly always the product of unequal bargaining power, (2) the fact that customers were routinely unaware of the mandatory arbitration provision that was being enforced, (3) that there was a repeat-player bias in favor of the company seeking to enforce arbitration, and (4) that customers were not aware that in many cases they would only be given a "document hearing" with no opportunity to be heard.  *Id.*  Based on these problems in arbitration, the Minnesota AG asked AAA to cease accepting arbitration of certain consumer disputes.

A mere eight days later, AAA announced that it would no longer accept new consumer debt collection cases after the company determined that there were "weaknesses in the consumer debt arbitration process."  *See* AAA Press Release (Ex. C).  Among the weaknesses identified by AAA included (1) concern over "bulk filings" by consumer debt collectors, which, of course,

---

[3] AAA claims that it "undertook a detailed search and review of its records."  Important records which it obviously retains, however, such as those showing its admitted discounting for corporations were not provided.  Dep. AAA, pp. 133:15 – 135:19.

raise an issue akin to the "repeat-player" problem raised by the Minnesota AG, and (2) cases filed where the company initiated the arbitration and the consumer did not agree to arbitrate at the time of the dispute, which addresses the first two practices outlined above regarding a consumer's lack of knowledge regarding the arbitration requirement.

The concerns regarding consumer arbitrations raised in the Minnesota AG's letter to AAA appear well founded.  According to AAA's own records, Midland Credit Management, Inc., a consumer debt collection company, conducted ***over 47,107 separate arbitrations*** using AAA as the arbitration entity to collect consumer debt from April 2006 through March 2009. *See* AAA Data Collection Reports [**DE # 2020-3, -4, -5**].[4]  Moreover, as Plaintiffs noted in their Supplemental Briefing to the Court, AAA's rules only guarantee consumers an in-person hearing if they specifically request one at the outset of the arbitration initiation.  *See* Pl. Supp. at 5.  For AAA to suggest that its practices were not implicated by the Minnesota AG strains credulity. That AAA "saw the writing on the wall" and chose to voluntarily institute its own moratorium rather than await an external investigation from the Minnesota AG is of little consequence.

Clearly AAA was involved in the same practices that it claims were only being perpetrated by NAF.  How else can the AAA explain 47,107 arbitrations by the same entity in consumer debt collection cases?  AAA's attempt to distance itself from such practices by claiming that its consumer arbitration caseload is only a fraction of its overall caseload is quite misleading given that the moratorium announced in July of 2009 is still in effect over two years later.  While it is understandable that AAA would like to distance itself from NAF's "abhorrent

---

[4] While the Data Collection Reports do not always specify the names of the arbitrator, a cursory review of the records reveals that certain arbitrators, like James McKanna, conducted in excess of two dozen arbitrations for Midland Credit against consumers.  Notably, AAA recently confirmed that the same practice is still allowed.  Dep. AAA at 78:20 – 79:2, 91:22 – 92:4 (conceding an arbitrator can handle 100 cases for the same corporation), 153:14-22.

3

practices," Amicus at 4, the facts show that AAA's conduct (if not its ownership structure) was starkly similar.  Plaintiffs' representations about AAA's previous conduct and current practices are accurate.

## II. **Plaintiffs' Have Truthfully Characterized the AAA's Sworn Testimony.**

AAA claims that "Plaintiffs Mischaracterize a Number of the AAA Representative's Statements."  [**DE# 2042-1** at 5].  Ironically, in its zeal to undo the testimony of its own corporate representative and preserve its relationship with the banks that repetitively use AAA's services and pay its fees, it is AAA, and not Plaintiffs, that mischaracterizes the testimony.

Specifically, AAA takes umbrage at four statements.  First, AAA claims that "Plaintiffs (on p. 3 of Plaintiffs' Supplemental Brief) give the impression that AAA arbitrators will regularly handle 100 cases for the same corporation."  *Id.*  In fact, Plaintiffs never gave that impression.  Rather, Plaintiffs clearly stated that "an arbitrator can handle 100 cases for the same corporation."  [**DE # 1971** at 3].  And that is precisely what AAA's representative said:

> Q:     Is there any set rule with respect to how many times a neutral can handle a
>        case for a particular party?
>
> A:     No.
>
> Q:     So theoretically, a neutral could handle a hundred cases, for
>        instance?
>
> A:     Correct.

Dep. AAA at 91:22 – 92:4.

The fact remains that AAA, like NAF, imposes no limits on the number of times that its "neutrals" can handle a case for a particular corporation, thereby creating the repeat-player bias that so concerned the Minnesota Attorney General.  *See* Ex. B (Minnesota AG's letter to AAA's President noting conclusion of year-long investigation that "pre-dispute mandatory arbitration

provisions are fundamentally unfair to the consumer" because, among other things, "arbitrators have a powerful incentive to favor the dominant party in an arbitration; namely, the corporation" as a result of "repeat player bias" where "an arbitrator is more likely to favor the party that is likely to send future cases," a bias that "does not exist in a court"). Tellingly, AAA does not address what Plaintiffs *actually* said, but instead mischaracterizes Plaintiffs' statement as an obvious pretext to becoming involved in this case as an advocate so that it can throw its allegedly "hard-earned reputation as an independent and neutral provider of alternative dispute resolution services" behind Defendants' case.[5]

Second, AAA quibbles with Plaintiffs' contention that "AAA will allow arbitrator (sic) who previously represented corporation to serve as a neutral." [**DE # 2042** at 6] (quoting **DE # 1971** at 3). Mr. Bishop testified:

> Q:    So there are cases in which a neutral who's been selected by the AAA has previously represented one of the parties, the other party objects to that, and AAA overrules that objection and continues with that arbitrator?
>
> A:    That's a possible scenario.    We review every objection to an arbitrator on a case-by-case basis.

Dep. AAA at 153:14–153:22. In plain English, AAA allows arbitrators, who have previously represented a bank or other corporation and received remuneration for the representation, to issue

---

[5] How AAA came to take this position should be the subject for discovery in related cases. AAA has thus far refused to disclose the extent of its contacts with Defendants and other banks. It is known, however, that those contacts occur, and that on at least one occasion AAA gave a discount to a financial institution. Dep. Gould, p. 34:5-22 (Wells Fargo admits that at least one of its executives has had repeated discussions with AAA) [**DE # 1971-3**]; Dep. AAA, pp. 133:15 – 135:19 (describing situation where mortgage insurance-related company negotiated a volume discount). Obviously, the extent of AAA's dealings with corporations appearing before it is critical information for any court considering a motion to compel arbitration. *Porter v. Singletary*, 49 F.3d 1483, 1487-88 (11th Cir. 1995) ("a fundamental tenet of due process is a fair and impartial tribunal"); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999) (court should refuse to enforce arbitration where the process is "so wholly one-sided as to present a stacked deck").

binding rulings in subsequent arbitrations where that bank or corporation is a party.  The Code of Conduct for United States Judges, by contrast, directs that "[a] judge *shall* disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Canon 3(c)(1) (emphasis supplied).

AAA disingenuously argues that its representative "made no distinction whether the arbitrator's prior representation was of the consumer or of the business."  [**DE # 2042** at 6].  That is rank sophistry.  AAA knows full well that individual consumers are not repeat participants in arbitration, but its corporate customers certainly are.  AAA produced reports with dozens of arbitration proceedings involving Wells Fargo and Wachovia.  *See* CCP Reports of AAA [**DE # 1971-9, 1971-10**].  AAA cannot produce such reports for consumers.

Third, AAA alleges that "Plaintiffs falsely claim that '[t]he AAA is still working with corporations to assist them in adding arbitration clauses to their consumer contracts.'"  [**DE # 2042-1** at 6].  This is a particularly spurious objection in light of the fact that AAA markets its arbitration clause drafting assistance.  *See* Drafting Dispute Resolution Clauses: A Practical Guide, American Arbitration Association, Sept. 1, 2007 (Ex. D hereto).  That practical guide to drafting arbitration clauses even includes a helpful "Checklist for the Drafter" to ensure that banks or other corporations adequately draft the clause in a way that avoids unwanted judicial intervention.  *Id.* at 4-5.  After providing corporations assistance in drafting the clauses, AAA "from time to time will be provided with a copy of a draft clause from a business asking us to take a look at it.  That's usually handled though [AAA's] district vice presidents."  Dep. AAA at 69:12-16.  And, in this very case, Wells Fargo has admitted having discussions with AAA.  Dep. Gould at 34:5-22.  Interestingly, AAA never mentions providing any services to consumers to

help them understand either the import or the impact of an arbitration clause buried in a form contract of adhesion.

Fourth, AAA protests that Plaintiffs "incorrectly cite to Mr. Bishop's testimony in support of [the] assertion" that "the AAA 'has given discounts to corporations that require disputes to be arbitrated before the AAA.'"  [**DE # 2042-1** at 7].  Mr. Bishop testified:

> Q:    Are you aware of any instances in which the fee that's listed in the document as being assessed to a business has been altered?
>
> A:    I am aware that has occurred.  I do not recall the specifics.
>
> Q:    Can you tell me what type of business it occurred with?
>
> A:    No. I can't.
>
> Q:    And was that a - - I assume a lessened rate that was charged to this particular business?
>
> A:    Yes.
>
> Q:    Was that a result of a negotiation between AAA and the business?
>
> A:    Yes.
>
> Q:    And - -
>
> A:    I believe - - I'm sorry.
>
> Q:    Go ahead.  I didn't mean to cut you off.
>
> A:    I believe it occurred when a party with a number of filings came to us to negotiate a rate for the submission of a large group of filings.
>
> --
>
> Q:    Okay.  Do you remember what type of industry that business was in?
>
> A:    I believe it was mortgage insurance.
>
> Q:    Was it a bank?
>
> A:    I don't recall.

Dep. AAA at 133:19 – 134:17, 135:4 – 8.

AAA claims, without support, that this fee reduction for a business "was not [ ] a way for AAA to induce the business to 'require that disputes be arbitrated before' the AAA." [**DE # 2042-1** at 8]. This is yet another instance of AAA twisting Plaintiffs' words to create the misimpression that Plaintiffs have somehow altered the meaning of Mr. Bishop's statements. The clear meaning of Plaintiffs' statement was that AAA "has given discounts to corporations" and those are "corporations that require disputes to be arbitrated before the AAA," not that the discounts were given in return for requiring arbitration. AAA is so eager to concoct a grievance as a pretext for its intervention that it once again ignored what Plaintiffs actually said. Nor does it provide a statement under oath that this is the only occasion in which it provided a discount to a corporate customer. Instead, it engages in more sophistry and reduces Mr. Bishop's testimony to "a vague recollection," *id.* at 7, a characterization he never made. It also engages yet again in the pedantic device of suggesting without any proof whatsoever that this did not involve "a consumer case." *Id.* at 8. However, the likelihood that a "business" in the "mortgage insurance" industry was engaged in enough arbitration proceedings with other businesses sufficient to justify a bulk discount for a "large group of filings" is far less likely than that this involved a large number of consumers on the other side of the disputes. AAA is free to clear this up – it need simply provide all documents detailing discounts it has given to businesses seeking to use its services. It has chosen not to do that, and to instead make unsworn suggestions about what Mr. Bishop meant. The fact is, his deposition is quite clear, and Plaintiffs have reported it accurately and attached it to both their brief and hereto so that the Court can review it for itself. That AAA, or perhaps its corporate customers, are not comfortable with Mr. Bishop's candor cannot serve to rewrite his testimony.

## CONCLUSION

The Court should deny AAA's Motion for Leave to File Amicus Curiae Memorandum [**DE # 2042**].  Review of the stipulated documents and AAA's sworn deposition plainly shows that Plaintiffs have misrepresented nothing.  Thus, AAA's proposed memorandum amounts to nothing more than improper advocacy for Defendants.

Dated:  October 31, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No.  516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 E. Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008


/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

| | |
|---|---|
| /s/ Ruben Honik | /s/ Ted E. Trief |
| Ruben Honik, Esquire | Ted E. Trief, Esquire |
| Pennsylvania Bar No. 33109 | New York Bar No. 1476662 |
| rhonik@golombhonik.com | ttrief@triefandolk.com |
| Kenneth J. Grunfeld, Esquire | Barbara E. Olk, Esquire |
| Pennsylvania Bar No. 84121 | New  York Bar No. 1459643 |
| kgrunfeld@golombhonik.com | bolk@triefandolk.com |
| GOLOMB & HONIK, P.C. | TRIEF & OLK |
| 1515 Market Street | 150 E. 58th Street |
| Suite 1100 | 34th Floor |
| Philadelphia, PA 19102 | New York, NY 10155 |
| Tel: 215-985-9177 | Tel: 212-486-6060 |
| Fax: 215-985-4169 | Fax: 212-317-2946 |

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ David M. Buckner
David M. Buckner, Esquire
Florida Bar No. 60550
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596