# EXHIBIT B



OFFICE OF THE ATTORNEY GENERAL
### State of Minnesota

LORI SWANSON
ATTORNEY GENERAL

ST. PAUL, MN 55155

July 19, 2009

President
American Arbitration Association
Corporate Headquarters
1633 Broadway
10th Floor
New York, New York 10019

Dear President:

  This office recently concluded a year long investigation of National Arbitration Forum ("NAF"). The investigation concluded with an agreement by NAF that it would no longer arbitrate consumer debt disputes. I enclose a copy of the Consent Order and the amendatory letter. While the lawsuit focused on conflict of interest issues, our investigators and attorneys also interviewed over one hundred consumers who complained about the arbitration process. Based on our investigation, it is my conclusion that pre-dispute mandatory arbitration provisions are fundamentally unfair to the consumer. This is particularly the case with credit card contracts and other consumer contracts—such as cell phone, utility, loan, and hospital agreements—where the mandatory arbitration provisions are hidden in the fine print. Our findings include the following:

  First, pre-dispute mandatory arbitration agreements are nearly always the product of unequal bargaining power between the consumer and the business. In almost every interview we found that the consumer was not aware of the arbitration provision. In many cases the consumer never saw the provision, because it was simply mailed with a monthly statement. The consumer is given virtually no opportunity to reject the provision. Yet, through these provisions, the consumer gives up their important right to have his or her day in court.

  Second, because the consumer is unaware of the mandatory arbitration provision, in many cases the consumer ignored the notice of arbitration served on them. Since they did not know that they agreed to arbitration, and were unfamiliar with the arbitration process, they didn't believe they were obligated to respond to an arbitration notice from an office in Minnesota. It is part of our democracy that we have a right to redress in a court of law, and that includes the notion that the court should be easily accessible to the consumer. Through pre-dispute mandatory arbitration clauses, consumers forfeit this important right without even knowing it.

American Arbitration Association
July 19, 2009
Page 2

Third, it is apparent, based on many interviews with consumers, arbitrators and employees of NAF, that arbitrators have a powerful incentive to favor the dominant party in an arbitration; namely, the corporation. Indeed, there is a term commonly used in the arbitration industry called "repeat player bias," describing a phenomena describing where an arbitrator is more likely to favor the party that is likely to send future cases. This bias does not exist in a court, where the judge is not reliant on a dominant player for his or her future income. In the case of NAF, arbitrators and employees claimed that arbitrators who issued an award against the corporation, or who failed to award attorney's fees against the consumer, were simply "deselected" and not appointed to future proceedings.

Fourth, consumers are not aware they can submit exhibits, and many are not aware that there will only be a "document hearing" with no opportunity to be heard. For instance, victims of identity theft were not told to submit a copy of a police report, even though arbitrators were advised that, absent such documentation, the claim of identity theft should be ignored.

Fifth, the arbitration process is fundamentally unfair for holding corporations responsible for any wrongdoing. In some cases, consumers forfeited important rights in the fine print of contracts they had never seen. Consumers who we interviewed in the NAF investigation were told that, when they initiated a claim against the corporation, the claim could be delayed for up to one year before there was any review of the matter.

There are many other defects in the process. The fundamental problem with consumer arbitrations under "fine print" contracts is that the arbitration company draws its income from the dominant participant--namely the credit card company, telecommunications company, the hospital, etc.--and personnel have a financial incentive to make sure that the corporation is pleased with the outcome. Otherwise, the corporation will undoubtedly look to other arbitration administrators. As noted above, this "repeat player" bias does not occur in court, since judges rely on taxpayers—not litigants—for their income.

In short, for the above reasons and many others, I ask that your organization take the initiative to announce that it will not accept the arbitration of credit card and other consumer debt claims based on pre-dispute mandatory arbitration clauses. Because the AAA and NAF are the largest arbitration companies, I believe such a proclamation by AAA would be a powerful signal to Congress that reform is desperately needed in this area.

Sincerely,

LORI SWANSON
Attorney General

Enclosure