## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 09-MD-02036-JLK

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS**

*Tornes, et al. v. Bank of America, N.A.*
S.D. Fla. Case No. 1:08-cv-23323-JLK

*Yourke, et al. v. Bank of America, N.A.*
S.D. Fla. Case No. 1:09-cv-21963-JLK
N.D. Cal. Case No. 3:09-2186

---

### PLAINTIFFS' RESPONSE TO EMERGENCY MOTION
### TO COMPEL ATTENDANCE OF ARTHUR OLSEN
### <u>AT NOVEMBER 7, 2011 FAIRNESS HEARING</u>

Objectors Hastings' and Buycks' ("Objectors") Emergency Motion to Compel Attendance of Arthur Olsen at November 7, 2011 Fairness Hearing [**DE # 2045**] ("Emergency Motion") should be denied. There is no emergency, and the time pressures created by Objectors' lack of diligence do not constitute an emergent situation for either the Court or Plaintiffs. Further, Objectors' demand, that Plaintiffs produce their expert, Arthur Olsen, at the final fairness hearing, is unwarranted and unsupported. Objectors can point to no material information missing from the record that would require additional testimony from Mr. Olsen and no law that requires his attendance. Moreover, Mr. Olsen is scheduled to be at a hearing in California on November 7, 2011, and made no plans to attend the fairness hearing because no one, until Objectors filed their eleventh hour Emergency Motion, even sought to compel his attendance.

**I.      There Is No Emergency, And Objectors Have Failed Repeatedly To Comply With The Local Rules With Regard To Both Emergency Motions And The Use Of Process To Compel Witness Attendance.**

Any "emergency" here is entirely of Objectors' creation. Plaintiffs' Motion for Preliminary Approval [**DE # 1471**] was filed on May 13, 2011, and was granted on May 24, 2011 [**DE # 1520**]. The Settlement Agreement with Bank of America and this Court's Preliminary Approval Order were posted on the settlement administrator's website on July 1, 2011, and mailed to all Class members on July 8, 2011. *See* Decl. of Joel Botzet [DE # 1185-4] ¶ 8. Plaintiffs' Motion for Final Approval of Settlement was filed on September 16, 2011 [**DE # 1885**], and posted on the settlement administrator's website on September 20, 2011. The deadline for filing objections to the Settlement was October 3, 2011. Objectors waited until that very day to file theirs. *See* Objections or Richard Hastings and Janel Buycks to Final Approval of Proposed Class Action Settlement [**DE # 1916**] ("Objection"). Objectors have been on notice

regarding all of the details of the Settlement for over three months, and they waited until now to file the Emergency Motion.  The Emergency Motion should be denied on this basis alone.

In direct contravention of the Local Rules, Objectors failed to provide any basis, much less "good cause," for the alleged "emergency" nature of their Emergency Motion.  L.R. 7.1(e) ("The motion *shall* set forth in detail the necessity for such expedited procedure.") (emphasis supplied).  The Rules of Civil Procedure do not provide for the production of a witness by means of a "motion to compel attendance," Objectors cite no Rule of Civil Procedure in support of their Emergency Motion, and thus the relief requested in the Emergency Motion is without foundation in the law.  Objectors have not served a Rule 45 subpoena on Mr. Olsen, and even if they had, it would be untimely.  The Court may quash any subpoena that "fails to allow a reasonable time to comply."  Fed. R. Civ. P. 45(c)(3).  The Local Rules set the time limits for reasonableness, and require at least 14 days notice from the date of notice for the deposition of an out-of-state witness.  L.R. Appx. A(II)(A)(1), Admin. Order 96-36.  The Emergency Motion was filed on October 28, 2011, only ten days from the final fairness hearing.  This too is a sufficient basis for denying the Emergency Motion.

The simple fact is that the reason that Objectors want Mr. Olsen to attend the fairness hearing is that they recognize the shortcomings in their Objections.  Clearly, they are stung by Plaintiffs' observation that "[n]ot a single Objector submitted an expert affidavit or provided any evidence that undermines the conclusion . . . that the Settlement achieves an exceptional result for the Settlement Class."  Emergency Motion at 5 (quoting DE # 2030 at 3).  Objectors seek to make up for their failure to make a proper record to support their objections by turning the fairness hearing into a mini-trial, and to build a record by examining Mr. Olsen.  That this effort would ultimately fail is beside the point.  Objectors' failure to prepare does not constitute an

emergency on the part of the Court or Plaintiffs.  The fact is that their Objections have no merit, and that they could find no actual expert to take their side of the argument.

## II.     The Record Contains More Than Sufficient Information Regarding Potential Class Damages To Permit The Court To Find That The $410 Million Settlement Payment Is Adequate.

In the first sentence of their Emergency Motion, Objectors contend that "[w]ith barely more than a week remaining before the November 7, 2011 fairness hearing on the proposed $410 million settlement with Bank of America, the record remains devoid of any evidence concerning the total damages sustained by the Settlement Class."  Motion at 1.  They are incorrect.  Indeed, the first sentence of Objectors' Objection shows that sufficient class damages information *is* in the record:  "The proposed $410 million settlement with Bank of America, while large in the abstract, is only 9% of the over $4.5 billion in damages sustained by the class as a result of Bank of America's practice of 'debit re-sequencing.'"  The $4.5 billion damages number to which Objectors refer in their objection is the class damages information that they claim is missing from the record. Objectors – like all other Settlement Class Members – were able to calculate the approximately $4.5 billion maximum class damages number because that class damages calculation is part of the record in this case.

In the Declaration of Arthur Olsen In Support Of Final Approval Of Class Settlement With Bank Of America, N.A., Ex. E to Plaintiffs' Motion For Final Approval Of Settlement, Service Awards, Attorneys' Fees And Incorporated Memorandum Of Law [DE 1885] ("Olsen Dec."), Plaintiffs' damages expert Olsen states that he calculated the potential damages to each Settlement Class Member by applying a low-to-high alternative posting order, and that he added together all of the Settlement Class Members' damage figures to determine the gross class damages number.  As Olsen explains:

[T]he analysis consisted of the following steps:

a. For each instance where a customer was assessed multiple overdraft charges on a given day, using software code that I developed, I programmatically re-sorted the transactions to match the alternative posting scenario that I was provided, and calculated the number of overdraft fees that would have been assessed under the alternative scenario. Specifically, I sorted all debit card transactions by transaction amount, from low-to-high, (as opposed to the original order of high-to-low), and then all other debits in their original order of high-to-low.

b. Next, I calculated the differential between the overdraft fees that would have been assessed to each customer under the alternative posting order and the overdraft fees that BOA actually assessed under its actual posting order. I then added up the differentials for all of the customers to calculate the gross damages.

(Olsen Dec. ¶28) (emphasis added). This testimony shows that Olsen calculated the maximum possible damages that the Settlement Class could have recovered; he put that information into the record through his declaration. This is not to say that the Class would or could have recovered that amount after trial and the exhaustion of any appeals.

Class Counsel put a finer point on Olsen's analysis when they state in their declaration that at a minimum, the $410 million settlement is nine percent of maximum class damages: "Under the Settlement, Plaintiffs and the Settlement Class have recovered $410 million, which represents between 45% and 9% of their anticipated total recovery. . ." Joint Declaration of Robert C. Gilbert and Michael W. Sobol In Support Of Plaintiffs' Motion For Final Approval Of Settlement, Application For Service Awards, And Class Counsel's Application For Attorneys' Fees ("Joint Dec."), ¶ 68, Ex. B to Plaintiffs' Motion For Final Approval Of Settlement, Service Awards, Attorneys' Fees And Incorporated Memorandum Of Law [**DE # 1885**]). Thus, according to the declaration of class counsel, $410 million represents a recovery of at least nine percent of the maximum damages the class could have recovered.

The settlement amount ($410 million) is in the record. The percentage of maximum

- 4 -

damages that the settlement amount represents (9%) is in the record.   When those two uncontested facts are combined, it becomes evident through simple math that the maximum damage amount recoverable in this litigation was approximately $4.5 billion.   Objectors were able to perform this simple arithmetical calculation without any extra-record evidence, as could any other Settlement Class Member who wanted to do so.   The Court has more than enough information to find that this $410 million settlement is fair, adequate and reasonable.   The Objection is meritless, and the Court should deny their motion.

## III.   There Is Neither Basis Nor Need to Compel Mr. Olsen's Attendance

The fact that there is no evidentiary gap in the record before the Court concerning the damages amount renders superfluous the Objectors' request that Mr. Olsen be compelled to attend the hearing.   Furthermore, there is no procedural basis to compel his attendance, since a final approval hearing should not be converted into a mini-trial.

The Sixth Circuit has observed that "no court of appeals, to our knowledge, has demanded that district courts invariably conduct a full evidentiary hearing with live testimony and cross-examination before approving a settlement. . . . Our court, and several others, have instead deferred to the district court's traditionally broad discretion over the evidence it considers when reviewing a proposed class action settlement." *UAW v. GMC*, 497 F.3d 615, 636 (6th Cir. 2007).   The former Fifth Circuit similarly observed that a district court conducting a settlement hearing "does not try the case," as the "very purpose of compromise is to avoid the delay and expense of such a trial." *Young v. Katz*, 447 F.2d 431, 433 (5th Cir. 1971).

The final fairness hearing is designed to afford the Court an opportunity to assure itself that the settlement is fair, reasonable, and adequate. *Canupp v. Liberty Behavioral Health Corp.*, 417 Fed. Appx. 843, 845 (11th Cir. 2011).   In undertaking this assessment, the Court need not

conduct a mini-trial.  Rather,  the "[p]arties to the settlement must proffer sufficient evidence to allow the district court to review the terms and legitimacy of the settlement . . . ."  *UAW*, 497 F.3d at 635.  "It cannot be overemphasized that neither the trial court in approving the settlement nor this Court in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also U.S. v. Alabama*, 271 Fed. Appx. 896, 902 (11th Cir. 2008).

As a consequence, the Court "has the discretion to limit the fairness hearing, and the consideration of [] objections, so long as such limitations are consistent with the ultimate goal of determining whether the proposed settlement is fair, adequate and reasonable."  *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 567 (6th Cir. 2001).  *Accord Police Officers' Org., Inc. v City of San Antonio*, 188 F.R.D. 433, 459 (W.D. Tex. 1999) ("The extent of discovery needed in order for the . . . Court to be able to determine the fairness and adequacy of the compromise is left to the discretion of the Court."); *see also Geier v. Alexander*, 801 F.2d 799, 809 (6th Cir. 1986) ("[U]nless the objectors have made a clear and specific showing that vital material was ignored by the District Court[,] [t]here is no need for the District Court to hold an additional evidentiary hearing on the propriety of the settlement.") (internal quotation marks omitted).

Class members who object to a class action settlement do not have an absolute right to discovery.  Instead, the Court may, in its discretion, allow limited discovery or presentation of evidence which may assist it in determining the fairness and adequacy of the settlement. *See, e.g.*, *In re Domestic Air Transp. Antitrust Litig.*, 144 F.R.D. 421, 424 (N.D.Ga.1992); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 24, 26 (D.D.C.2001); *In re Ford Motor*

*Co. Bronco II Prods. Liability Litig.*, Civ. A. No. MDL-991, 1994 WL 593998, 1994 U.S. Dist. LEXIS 15867 (E.D.La. Oct. 28, 1994); *Glicken v. Bradford*, 35 F.R.D. 144, 148 (S.D.N.Y.1964); *see generally* A. Conte and H. Newberg, Newberg on Class Actions § 11:57 at 184 (4th ed.2002).    "While objectors are entitled to 'meaningful participation' in the settlement proceedings, *Girsh v. Jepson*, 521 F.2d 153, 158 (3rd Cir. 1975) and 'leave to be heard,' *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977), they are not automatically entitled to discovery or 'to question and debate every provision of the proposed compromise.'" *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n. 6 (6th Cir.1984).   "The temptation to convert a settlement hearing into a full trial on the merits must be resisted." *Mars Steel Corp. v. Cont'l Illinois Nat'l Bank & Trust Co. of Chicago*, 834 F.2d 677, 684 (7th Cir. 1987); *see also In re Lupron Marketing and Sales Practices Litig.*, MDL No. 1430, 2005 WL 613492, at *4 (D. Mass. Mar. 16, 2005) (quashing subpoenas by intervenors).

Where, as here, evidence in the record is sufficient to allow the Court to document its evaluation of the fairness of the settlement, the Court should not indulge an objector's demand for the opportunity to develop additional evidence at or in advance of the fairness hearing.  *See, e.g., Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. N.Y. 1974) (rejecting objectors' argument that they should have been entitled to "subpoena witnesses for the settlement hearing" regarding damages data because "a great deal, if not all, of this information already exists in the [document] depository"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  Where the evidence submitted in support of the settlement is the result of truly adversarial proceedings and where the "comprehensiveness" of the records developed by the proponents of the settlement increases, the objector has a greater burden to show the necessity of additional evidence.  Newberg § 11.57 at 476 (2d ed.1985); *see also*

*Lorazepam*, 205 F.R.D. at 27 n. 5.  Moreover, there are only 52 objectors out of approximately 13,280,225 Settlement Class members, representing only .0003% of the Class.   The near "unanimous approval of the proposed settlements by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlements."  *In re Art Materials Antitrust Litig.*, MDL No. 436, 100 F.R.D. 367, 372 (N.D. Ohio 1983).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Emergency Motion be denied.

Dated: October 31, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No.  516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*


/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 29th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

### CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Blvd.
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596