FILED by PCG D.C.

NOV 0 2 2011

STEVEN M. LARIMORE
CLERK U. S. DIST. CT.
S. D. of FLA. -- MIAMI

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS

Tornes, et al. v. Bank of America, N.A., S.D.
FLA. Case No. 108-cv-23323-JLK

Yourke, et al. v. Bank of America, N.A.
S.D. Fla. Case No. 1:09-cv-21963-JLK
N.D. Cal. Case No. 3:09-2186

**REPLY IN SUPPORT OF CLASS MEMBER FRED R. FLETCHER'S OBJECTION TO CLASS ACTION SETTLEMENT AND REQUEST TO APPONT NEW CLASS COUNSEL**

I.

REPLY

1. **The Response Seeks to Distract the Court from the Fatal Flaws of the Settlement.**

BOA's response and Plaintiff's response (collectively referred to as "the Response") attempts to morph the numerous objections together while completely neglecting the structural fairness of the Settlement or the constitutionality of any Court order approving the Settlement. The Response attempts to distract the Court from the fatal flaws of the Settlement, and requests the Court instead to focus on the difficulty and risks posed if the Settlement is denied and litigation proceeds. The risks and difficulties in litigating this case have no bearing on whether the Settlement

passes constitutional muster or whether the structure of the Settlement is inherently fair, unfair, or impossible to determine.

The Response boasts that many of the objectors were mistaken about the size of the class thereby proving the settlement and notice were confusing and misleading, yet the Response attempts to use this confusion to support their argument that the class has been adequately informed, a prerequisite to Settlement approval. The confusion regarding class size derives from a complete absence of estimates regarding the number of class members whose claims will be released but will receive no compensation. (See, Settlement ¶ 100) While the Response seeks to have the Court focus on the 13 million who will receive something, there is no consideration given to the real number of claims which will be released if the Settlement is approved. At this juncture, the number of real class members have not been disclosed or even estimated which leads me to believe the Settlement is unfair and the product of collusion. If the claims of the unknown class members are being concealed, such an occurrence provides adequate standing for me to object to such concealment because the concealment of the absent class members' claims relates directly to the issues of adequacy of representation and the likelihood of collusion. If the settling parties are willing to conceal the claims of the unknown class members then it is reasonable for me to suspect they are also concealing the majority of my claims.

2. The Release is <u>Not</u> "Perfectly Appropriate"

The Response relies upon *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.* 396 F.3d 96, 106 - 08 (2 Cir. 2005) and *In Re Managed Care Litig.,* 2010 WL 6532985, at 11 (S.D. Fla. Aug. 15, 2010) in arguing that the release is "perfectly appropriate." While it is routine for releases to contain language releasing unknown claims or claims that could have been brought but were not, it is

unprecedented for a judicially enforced release to release torts arising from a settling party's abuse of the legal process in the form of evidence concealment, or obtaining a judicial order based upon false information or information intentionally concealed over the objection of the aggrieved party. *See, Unisuper et al. vs. News Corporation*, C.A. No.1699-N (Del. 2005):

> [Objector] also objects to the release on the grounds that it purports to release defendants from liability for "hidden or concealed" claims. The release is quite broad in that it applies to "known or unknown" claims, "apparent or unapparent" claims, and "disclosed and undisclosed claims." I agree with [objector] that, to the extent that the release of "hidden or concealed" claims is not redundant, it can only operate to release claims that the defendants have affirmatively concealed from plaintiffs. **This part of the release implicates self-interested and disloyal conduct by the <u>defendant fiduciaries</u> and <u>complicity</u> in that conduct by the <u>class' fiduciaries</u>.** This language of the release should be stricken, as well as the identical language granting a similar release to plaintiffs. (Emphasis Added.)

(See Notice of Lodgment of Foreign Authorities for entire case.)

The "hidden" and "concealed" language in the Release would only become operative if BOA had intentionally concealed evidence and shirked its discovery obligations by failing to produce the information which was "hidden" or "concealed." There is simply no scenario where BOA could have "concealed" or "hidden" information herein without committing a discovery violation or misrepresenting facts to this Court, with or without the assistance of Class Counsel. The terms "hidden" and "concealed" describe intentional acts, which demonstrates BOA must have feared someone at BOA intended to hide and conceal information, and has been successful in doing so while this action was pending and discovery was ongoing.

Class Counsel has argued that while evaluating the Settlement the Court must rely upon Class Counsel's judgment as class fiduciary, which has been shaped by the information or lack of information provided by BOA in discovery. If the Court grants Class Counsel's request the Court will also be relying upon the information or lack of information provided by BOA in discovery. On

a fundamental level, a court of law simply cannot execute an order which would enforce a release of claims constituting fraud upon the court. Whenever any officer of the court commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". *In Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985). "Fraud upon the court [ ] is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. "A decision produced by fraud upon the court is not in essence a decision at all, and never becomes final." *Id.*

Besides being unprecedented, the release of "hidden" and "concealed" claims in this particular class settlement is patently absurd since a *cy pres* award is being suggested due to missing claims data. The "hidden" and "concealed" language in the release should raise concerns in the Court's mind that the *cy pres* award is improper and more should be done to locate the missing or "concealed" data.

As explained by the Court in *Unisuper et al. vs. News Corporation*, C.A. No.1699-N (Del. 2005), allowing a class settlement release to encompass claims "hidden" and "concealed" is a breach of the "fiduciary duty" owed to the class by Class Counsel. As such, I request the Court remove Class Counsel and appoint a new Class Counsel to litigate this sprawling class action. Allowing this language to be included in the release is strong evidence that Class Counsel's judgment has been compromised and can no longer be relied upon by this Court.

The Settlement must be rejected. *See, e.g. In re Domestic Air Transportation* 148 F.R.D. 297, 305 (N.D.Ga.1993) ("The Court may only approve or disapprove the settlement as presented.")

### 3. This Particular Proposed Cy Pres Distribution is Inappropriate and Violates the Real Class' Right to Fair Substantive Compensatory Relief

The Response fails to address my objection that the SETTLEMENT provides that the *cy pres* distribution will be deducted from each class member's pro rata share of the settlement. (See ¶ 83 of the SETTLEMENT) This arrangement ensures that each class member's award will be reduced in an amount knowable only to BOA, and possibly Class Counsel, because the Settlement does not place a limit on the deductions made to each class member's pro rata share. Instead, the Settlement provides that the <u>first</u> *cy pres* distribution shall not be less than 5% and shall not be more than 14% of the entire Settlement fund. The 5% to 14% cap on the <u>first</u> cy pres distribution is meaningless because the Settlement provides that any remaining funds shall be distributed by a <u>second</u> *cy pres* distribution which is uncapped. The 5% to 14% cap is simply intended to mislead the Court into believing the *cy pres* distributions will not violate the class members' substantive right to fair compensatory relief.

### 4. The Settlement Fails to Guarantee a Disbursement of any Size will be made to the Real Class Members

While the Response and moving papers argue that the 13 million will receive between 9% and 45% of the value of their claims, no such guarantee is set forth in the Settlement. I am simply baffled as to why the Settlement guarantees that a portion of the cy pres distribution will occur but no such guarantee is made in regards to Class Counsel's real clients. The fact that Class counsel "previously informed the Court, the $410 million paid into escrow by BofA represents between 45 percent and 9 percent of the total potential damages" does nothing to guarantee such a disbursement will occur. If the Court approves the Settlement it must do so

while relying upon a guarantee made by Class Counsel which is unenforced in the language of the Settlement. In sum, the Settlement guarantees the *cy pres* recipient will be paid at least 5% of the Settlement fund, or 22 million dollars, while no such assurance has been made that the actual class members will be paid an amount more than zero.

5. **The Settling Parties have waived the Right to Oppose all Objections not Fully Addressed in the Response**

I request that all meritorious objections to the Settlement asserted by all other objecting parties or opposing parties be incorporated into my Objection both for purposes of the Final Approval Hearing and appeal if necessary. The procedural unfairness set forth in the terms of the Settlement has prejudiced my ability to fully assert all meritorious objections myself making incorporation of all meritorious objections necessary and fair. I continue to assert all my objections previously asserted. I request that the Court grant all objections not fully responded to in the Response and reject the Settlement. As stated in my original Objection, I intend to be present and be heard at the *Fairness Hearing* on November 7, 2011. My inability to be present at the Final Approval Hearing or be heard by the Court at the Final Approval Hearing does not constitute waiver of my right to continue to assert my objections, whether before this Court, or any reviewing court.

Dated: October 28, 2011

By: _____
Fred R. Fletcher, class member
California SBN 238038

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:09-MD02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I **Delacy Brown** am over the age of 18 years and am not a party to this action. My business address is 34188 Pacific Coast Highway, Dana Point, California 92629. On October 28, 2011, I served the following document(s) described as **REPLY IN SUPPORT OF OBJECTION TO CLASS SETTLEMENT, NOTICE OF LODGEMENT OF FOREIGN AUTHORITY** by depositing said documents with the United States Postal Service and paying postage charges with instructions to ship the documents with guaranteed delivery by September 30, 2011 on the parties in this action as follows:

> Clerk of the Court
> U.S. District Court for the Southern District of Florida
> James Lawrence King Federal Justice Building
> 99 Northeast Fourth Street
> Miami, FL 33132
>
> The Honorable James Lawrence King
> James Lawrence King Federal Justice Building
> 99 Northeast Fourth Street, Room 1127
> Miami, FL 33132
>
> The Honorable James Lawrence King
> James Lawrence King Federal Justice Building
> 99 Northeast Fourth Street, 11th Floor, Courtroom #2
> Miami, FL 33132
>
> Checking Account Overdraft Litigation
> P.O. Box 2505
> Faribault, MN 55021-9505

Reply In Support of Class Member Fred R. Fletcher's Objection
In Re: Checking Account Overdraft Litigation

Michael Sobol
Lieff Cabraser Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Lieff Cabraser Heimann & Bernstein, LLP
250 Hudson Street, 8th Floor
New York, NY 10013

Bobby Gilbert
Grossman Roth, P.A.
2525 Ponce de Leon Boulevard
Suite 1150
Miami, FL 33134

Laurence Hutt
44th Floor
777 South Figueroa Street
Los Angeles, CA 90017-5844

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 28, 2011, at Dana Point, California.

                                                          _____
                                                          DeLacy Brown

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS

Tornes, et al. v. Bank of America, N.A., S.D.
FLA. Case No. 108-cv-23323-JLK

Yourke, et al. v. Bank of America, N.A.
S.D. Fla. Case No. 1:09-cv-21963-JLK
N.D. Cal. Case No. 3:09-2186

**CLASS MEMBER FRED R. FLETCHER'S NOTICE OF LODGMENT OF FOREIGN AUTHORITY FILED CONCURRENTLY WITH REPLY IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT AND REQUEST TO APPONT NEW CLASS COUNSEL**

LODGMENT:

Attached hereto as Exhibit "1" is a true and correct copy of *Unisuper et al. vs. News Corporation*, C.A. No.1699-N (Del. 2005).

Dated: October 28, 2011

By: _____
Fred R. Fletcher, class member
California SBN 238038

CLASS MEMBER FRED R. FLETCHER'S NOTICE OF LODGMENT OF FOREIGN AUTHORITY FILED CONCURRENTLY WITH REPLY IN SUPPORT OF OBJECTION TO CLASS ACTION SETTLEMENT AND REQUEST TO APPONT NEW CLASS COUNSEL

1

Court of Chancery of Delaware, New Castle County.

UNISUPER LTD PTY PTY PTY ABP v. NEWS CORPORATION AC AO

UNISUPER LTD., Public Sector Superannuation Scheme Board, Commonwealth Superannuation Scheme Board, United Super PTY Ltd., Motor Trades Association of Australia Superannuation Fund PTY Ltd., H.E.S.T. Australia Ltd., Care Super PTY Ltd., Universities Superannuation Scheme Ltd., Britel Fund Nominees Limited, Hermes Assured Limited, Stichting Pensioenfonds ABP, Connecticut Retirement Plans and Trust Funds, and The Clinton Township Police and Fire Retirement System, Plaintiffs, v. NEWS CORPORATION, a Delaware corporation, K. Rupert Murdoch AC, Peter L. Barnes, Chase Carey, Peter Chernin, Kenneth E. Cowley AO, David F. Devoe, Viet Dinh, Roderick Eddington, Andrew S.B. Knight, Lachlan K. Murdoch, Thomas J. Perkins, Stanley S. Shuman, Arthur M. Siskind, and John L. Thornton, Defendants.

C.A. No. 1699-N.

-- May 31, 2006

Stuart M. Grant, Megan D. McIntyre and Cynthia A. Calder, of Grant & Eisenhofer P.A., Wilmington, DE, for Plaintiffs.Edward P. Welch, Robert S. Saunders, Edward B. Micheletti and T. Victor Clark, of Skadden, Arps, Slate, Meagher & Flom, L.L.P., Wilmington, DE, for Defendants.J. Travis Laster, of Abrams & Laster, L.L.P., Wilmington, DE, for Objector Liberty Media Corporation.

MEMORANDUM OPINION

On May 23, 2006, this Court heard oral argument at a fairness hearing on the parties' stipulation of settlement of this class action. A single shareholder appeared as an objector to the settlement. At the close of the hearing, I stated that I would approve the settlement if the parties could agree to amend the release language to clarify that the release met the requirements of Delaware law. The parties were able to agree on amended release language and I have reviewed it. I have also considered the arguments of the parties in support of the amended release language and the objector's opposition. For the reasons stated below, I conclude that the release language in the settlement still suffers from two minor deficiencies. I direct the parties to modify the release language so as to cure these problems. Upon completion of that task, I will enter the final order approving the settlement.

I. BACKGROUND

Plaintiffs filed their complaint on October 7, 2005, asserting five claims in connection with News Corporation's ("News Corp.") announcement that it would extend its poison pill. News Corp. had previously adopted a board policy of not extending poison pills without a shareholder vote. Board policies are, of course, subject to revision by the board of directors at its discretion. Plaintiffs alleged in their complaint, however, that News Corp. had agreed that if plaintiffs voted for News Corp.'s reincorporation to Delaware from Australia, the board would not rescind its policy regarding extensions of the poison pill.

On December 20, 2005, this Court issued an opinion granting defendants' motion to dismiss three of plaintiffs' five claims.[1] The Court dismissed plaintiffs' claims for fraud, negligent misrepresentation and equitable fraud, but did not dismiss plaintiffs' claims for breach of contract and promissory estoppel.

Defendants immediately filed an application for certification of interlocutory appeal, which this Court granted.[2] The Supreme Court of Delaware declined to hear defendants' appeal.[3] The case then proceeded towards a trial that was scheduled to begin on April 24, 2006.

In early April, the parties communicated to the Court that a settlement of the case might be possible. After extensive negotiations, the parties reached an agreement in principle. In order to facilitate this agreement, plaintiffs filed an amended complaint on April 12, 2006, in order to move for class certification under Court of Chancery Rule 23 (the "Amended Complaint"). Defendants consented to the filing of the Amended Complaint pursuant to Delaware Court of Chancery Rule 15(a).

On April 13, plaintiffs' counsel alerted the Court that the parties had signed a stipulation of settlement (the "Settlement"). The parties filed a motion for an order approving the Settlement and the Court scheduled a fairness hearing for Tuesday, May 23.

On May 12, 2006, Liberty Media Corporation ("Liberty") filed a notice that it intended to object to the Settlement. Liberty is the owner of an 18% equity interest in News Corp. and would be a class-member as defined in the Amended Complaint. Liberty also is significant in this litigation for a second reason: It was Liberty's acquisition of its 18% stake that allegedly caused the News Corp. Board of Directors to extend the poison pill without a shareholder vote in the first place.

At the May 23 hearing, counsel for plaintiffs and defendants spoke in favor of the Settlement. Liberty

1

objected to the Settlement on a single ground: that the proposed release was overly broad. Liberty's objection to the release included four arguments: (1) the release extended to claims not part of the operative or core facts; (2) the release purported to extend to future claims; (3) the plaintiffs should be judicially estopped from asserting that the operative facts of the case include the merits of the decision to extend the poison pill because plaintiffs have expressly stated otherwise; and (4) the release bound non-voting shareholders, forcing them to give up claims in return for a benefit they do not share.

I was not persuaded by the third and fourth arguments, and explicitly stated so at the May 23 hearing.[4] Liberty's second argument was more persuasive. At the conclusion of the fairness hearing, I declined to approve the Settlement because I determined that, as drafted, the release language was unnecessarily prolix (to the point of being incomprehensible) and was overly broad, so that it potentially ran aground of the standard set forth by the Delaware Supreme Court in Nottingham Partners v. Dana.[5]

In the days following the fairness hearing, the parties redrafted the release language in an effort to cut down on its prolixity and clarify its meaning. Unfortunately, after reviewing the new release language (the "Redrafted Release"), I have concluded that the latest version of the settlement suffers from the same fatal deficiency as the original: the release as drafted is too broad.

II. REASONING

A settlement can release claims that were not specifically asserted in an action, but can only release claims that are based on the "same identical factual predicate" or the "same set of operative facts" as the underlying action.[6] Thus, it follows that a release is overly broad if it releases claims based on a set of operative facts that will occur in the future.[7] If the facts have not yet occurred, then they cannot possibly be the basis for the underlying action.

Additionally, a release may be overbroad if it could be interpreted to "encompass any claim that has some relationship-however remote or tangential-to any 'fact,' 'act' or conduct 'referred to' in the Action."[8] In other words, a release is overly broad if it releases claims based on a common set of tangential facts, as opposed to operative or core facts.

The operative facts in this case center on the allegation of a contract between the parties and the allegations regarding the News Corp. Board of Directors' decision to extend the poison pill. Liberty argued at the fairness hearing that the Settlement was overly broad in that it released fiduciary duty claims arising from the decision to extend the pill in 2004. Because I view the operative facts to include the events surrounding the decision to extend the poison pill, I find that this aspect of the release falls within the Nottingham standard.

Liberty also challenges the release on the grounds that it extends to future claims. At the fairness hearing, I expressed concern over portions of the release that purported to apply to future conduct. In the Redrafted Settlement, the parties included a provision clarifying that the release does not extend to "claims challenging the merits of future conduct." The same sentence, however, contains a parenthetical excepting claims relating to the adoption of the October 2006 Rights Plan. The October 2006 Rights Plan will be adopted, pursuant to a shareholder vote, at the October 2006 shareholders meeting. I agree with Liberty that a date five months hence is clearly in the future. The rule in Delaware is that a release cannot apply to future conduct. Defendants cite no authority for the proposition that there is an exception for future conduct arising out of, or contemplated by, the settlement itself. Viewed another way, no facts relating to the October 2006 Rights Plan were alleged in the underlying action, much less were they part of the underlying action's operative facts. For these reasons, I conclude that the release is overly broad in that it attempts to release claims arising from an event that has not yet happened, viz., the October 2006 Rights Plan.[9]

Liberty also objects to the release on the grounds that it purports to release defendants from liability for "hidden or concealed" claims. The release is quite broad in that it applies to "known or unknown" claims, "apparent or unapparent" claims, and "disclosed and undisclosed claims." I agree with Liberty that, to the extent that the release of "hidden or concealed" claims is not redundant, it can only operate to release claims that the defendants have affirmatively concealed from plaintiffs. This part of the release implicates self-interested and disloyal conduct by the defendant fiduciaries and complicity in that conduct by the class' fiduciaries. This language of the release should be stricken, as well as the identical language granting a similar release to plaintiffs.

Defendants cite the Order and Final Judgment dated June 23, 2005, in In re Fox Entertainment[10] as an example of a settlement approved by this Court that contained a release purportedly applying to "hidden or concealed" claims. Unfortunately, this precedent does little work for defendants. In the Fox matter, there was no objector to the release as drafted and the "hidden or concealed" release language was never placed directly at issue before the Court. Due to the prolix nature of settlement releases, it is unrealistic to expect this Court to parse through each settlement with a fine-toothed comb. Furthermore, to approve the release language in this case on the

2

grounds that similar language has slipped through in previous settlements would be to surrender completely to the "tyranny of the form," with the result that future releases would be weighed down by an ever-lengthening chain of terms.

III. CONCLUSION

The parties and their counsel have expended great effort in order to move this case as close as it is to a settlement. The proposed settlement is otherwise clearly in the best interests of the class and is tantalizingly close to being approved. If the two sides can agree to remove the problematic language identified above, I am confident that the settlement can be approved. I invite the parties to make one last good faith effort to satisfy the Court's concerns.

IT IS SO ORDERED.

FOOTNOTES

1. UniSuper Ltd. v. News Corp., 2005 WL 3529317 (Del.Ch. Dec. 20, 2005).

2. UniSuper Ltd. v. News Corp., 2006 WL 207505 (Del.Ch. Jan. 19, 2006).

3. News Corp. v. UniSuper Ltd., 2006 WL 387998 (Del.2006).

4. Liberty, to repeat, was the only class member to object to the Settlement.

5. 564 A.2d 1089 (Del.1989).

6. Id. at 1106-7; see also Steiner v. Sithe-Energies, 1988 WL 36133, at *2 (Del.Ch. Apr. 18, 1988) (holding that where the same "factual predicate provides the basis for" two actions, the settlement of the Delaware action can preclude claims arising out of the other.)

7. See Green v. Phillips, 2000 WL 33521109 at, *1 (Del.Ch. June 28, 2000) (flaw in proposed release was that it was "overly broad insofar as it purported to release claims that could arise in the future"); see also Schwartz v. Dallas Cowboys Football Club, Ltd., 157 F.Supp.2d 561, 578 (E.D.Pa.2001) (finding a release to be "too broad because it bars later claims based on future conduct" and noting that "[a]lthough the law permits a release to bar future claims based on the past conduct of the defendant . this release would bar later claims based not only on past conduct but also future conduct.")

8. Green v. Phillips, 2000 WL 33521109, at *1 (Del.Ch. June 28, 2000) (emphasis in original).

9. To be absolutely clear: This parenthetical should be stricken entirely from the release.

10. In re Fox Entm't Group, Inc. S'holders Litig., Del. Ch., Consol. C.A. No. 1033-N, Chandler, C. (June 23, 2005) (ORDER AND FINAL JUDGMENT).

CHANDLER, Chancellor.

3



Fred R. Fletcher, Esq
34188 Pacific Coast Highway,
Dana Point, CA 92629