UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Lopez, et al. v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23127-JLK

*Luquetta v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23432-JLK
C.D. Cal. Case No. CV09-6967-GHK

*Garcia, et al. v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:08-cv-22463-JLK

*Spears-Haymond v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-21680-JLK
N.D. Cal. Case No. 3:08-cv-4610

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685
D. Or. Case No. 3:09-cv-01239-ST

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Zankich, et al. v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-CV-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

**JOINT OPPOSITION OF DEFENDANTS WELLS FARGO BANK, N.A.
AND JPMORGAN CHASE BANK, N.A. TO MOTION OF
<u>NON-PARTY JEFF HORWITZ TO UNSEAL RECORDS</u>**

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 2

    A. **A Party Need Only Show Good Cause to Justify Sealing Materials Produced in Discovery and Filed with the Court.** ............................................... 2

    B. **Good Cause Exists to File the Limited Number of Documents at Issue Under Seal.** ........................................................................................................... 4

    C. **There Is No Right to Access to Discovery Materials Not Filed with the Court.** ................................................................................................................... 7

    D. **There Is No Need to Alter the Existing Protective Order.** ............................... 8

III. CONCLUSION .................................................................................................................. 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bayer AG & Miles, Inc. v. Barr Labs., Inc.*,
   162 F.R.D. 456 (S.D.N.Y. 1995) ...................................................................................9

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*,
   263 F.3d 1304 (11th Cir. 2001) ........................................................................3, 4, 5, 7

*Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*,
   2010 WL 6790538 (M.D. Fla. Oct. 28, 2010) ...............................................................6

*In re Alexander Grant & Co. Litig.*,
   820 F.2d 352 (11th Cir. 1987) ............................................................................. passim

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   255 F.R.D. 308 (D. Conn. 2009).....................................................................................9

*Jackson v. United States*,
   2009 WL 2436577 (M.D. Fla. Aug. 6, 2009) .................................................................3

*Luzzi v. ATP Tour, Inc.*,
   2011 WL 2693542 (M.D. Fla. July 12, 2011) ................................................................5

*McCarthy v. Barnett Bank of Polk County*,
   876 F.2d 89 (11th Cir. 1989) ......................................................................................5, 9

*Nuclear Corp. v. Cranford Ins. Co.*,
   905 F.2d 1424 (10th Cir. 1990) ......................................................................................9

*Romero v. Drummond Co.*,
   480 F.3d 1234 (11th Cir. 2007) ......................................................................................4

*Seattle Times Co. v. Rhinehart*,
   467 U.S. 20 (1984).........................................................................................................7

*United States ex rel. Westfall v. Axiom Worldwide, Inc.*,
   2008 WL 5341140 (M.D. Fla. Dec. 19, 2008)...............................................................6

*United States v. Anderson*,
   799 F.2d 1438 (11th Cir. 1986) ......................................................................................8

*Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*,
   2011 WL 2413404 (M.D.N.C. June 10, 2011) ..............................................................9

*Zemel v. Rusk*,
    381 U.S. 1 (1965) ................................................................................................................7

**OTHER AUTHORITIES**

FED. R. CIV. P. 26(c) ...............................................................................................3, 4, 7, 10

6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.104[2] (3d ed. 2011) .................9

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.432 .................................................................9

Defendants Wells Fargo Bank, N.A. ("Wells Fargo") and JPMorgan Chase Bank, N.A. ("Chase") (collectively, the "banks") respectfully submit this Joint Opposition to the Motion of Non-Party Jeff Horwitz to Unseal Records.

## I.     INTRODUCTION

Mr. Horwitz's motion seeks to upset the established procedure that this Court has ordered for dealing with confidential information in this complex litigation.  *See* DE # 688 ("Protective Order").  There is no reason for such a change.  The existing Protective Order and procedure adheres to the standard, universal approach followed routinely in this District, and followed by other federal district courts throughout the nation.  It has operated effectively in this case to facilitate the orderly, efficient exchange of millions of pages of documents between the parties, while ensuring public access to documents filed with the Court.

The stated basis for Mr. Horwitz's motion is his asserted belief – unsupported by any showing, and in fact contrary to the record – that "most" of the "details of this litigation" have been filed under seal and that the Protective Order allows for "the blanket sealing of records." Mot. at 9.  In fact only a very small number of documents has been filed with the Court under seal.  Indeed, of the more than two thousand documents docketed in this MDL proceeding, only one set of substantive briefs is currently under seal:  plaintiffs' class certification briefing and supporting materials and the oppositions thereto.  And as to those documents currently under seal, the parties, following customary litigation procedures, have already reached agreement for all briefs to be re-filed publicly, with only minor redactions, leaving only a handful of exhibits remaining under seal.  Declaration of Emily Johnson Henn ¶¶ 4-8 ("Henn Dec."); Declaration of Peter Homer ¶¶ 6-7 ("Homer Dec.").  Keeping those few exhibits sealed is necessary to protect the confidentiality of the personal financial information of bank customers and certain highly

1

sensitive technical information relating to the safety and soundness and competitive position of the banks.  Declaration of Karen Moore ¶¶ 5-19 ("Moore Dec."); Declaration of Ralph O. Slenker, III ¶¶ 4-5 ("Slenker Dec.").

Mr. Horwitz's motion to obtain immediate access to these documents – with no protection for customer and bank confidentiality – risks serious personal, institutional, and competitive harm, and advances no legitimate purpose.  The plaintiffs and the banks have followed the procedures established in the Protective Order to identify and narrow a small set of particularly sensitive documents containing legitimately confidential information.  As explained in detail in the accompanying declarations of Karen Moore and Ralph Slenker, maintaining this remaining handful of documents under seal is necessary and entirely appropriate.  If these documents were made public, they would disclose private information about the plaintiffs and their financial records, expose information about banking systems that would create a high risk of fraud or similar harm, and reveal sensitive competitive information of the bank defendants that if disclosed would cause serious competitive harm.  To the extent that Mr. Horwitz seeks to upend the existing Protective Order entirely and to gain access to millions of pages of discovery documents that have never even been filed in court – as his motion in certain places appears to suggest – the law conclusively rejects any right to such access.  His motion should therefore be denied.

## II.    ARGUMENT

### A.    A Party Need Only Show Good Cause to Justify Sealing Materials Produced in Discovery and Filed with the Court.

The Eleventh Circuit has held – in a situation virtually identical to this one – that a party seeking to maintain the confidentiality of discovery materials filed on the public docket need only meet the requirement of "good cause" in order to satisfy all constitutional and other legal

2

requirements. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1310-11 (11th Cir. 2001). In *Chicago Tribune Co.*, the plaintiff and defendant in a personal injury case had entered into a protective order under Rule 26(c) prior to beginning discovery. 263 F.3d at 1307. The protective order, like the one in these cases, permitted the producing party to designate particular documents as confidential and required the parties to file any confidential materials submitted to the court under seal. *Id.* at 1308. A group of media companies intervened to gain access to confidential documents that had been submitted to the court under seal, claiming a constitutional right to access the court's records without restriction. *Id.* at 1308-09.

The Eleventh Circuit rejected the media intervenors' argument that discovery documents filed in civil litigation could only be sealed if supported by a compelling interest. It held that, absent the extraordinary circumstance where "the trial court [has] conceal[ed] the record of an *entire case*," *id.* at 1311 (emphasis added), "[m]aterials merely gathered as a result of the civil discovery process . . . do not fall within the scope of the constitutional right of access's compelling interest standard." *Chicago Tribune*, 263 F.3d at 1310; *see also In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) ("[The media intervenors] possess no First Amendment rights to the protected information which override the provisions of Federal Rule of Civil Procedure 26(c)."); *Jackson v. United States*, 2009 WL 2436577, at *3 (M.D. Fla. Aug. 6, 2009) ("[A] party, or non-party, to a law suit possess[es] no First Amendment rights to information that has been protected pursuant to the provisions of Fed. R. Civ. P. 26(c)."). Instead, "where a third party seeks access to material disclosed during discovery and covered by

3

a protective order, the constitutional right of access, like Rule 26, requires a showing of good cause by the party seeking protection." *Chicago Tribune*, 263 F.3d at 1310.[1]

*Chicago Tribune* is directly controlling. This case has not been "super-sealed"; instead, all of the pleadings have been, or will be, filed publicly, with the exception of a handful of documents that contain the particularly confidential information. "Good cause" under Rule 26(c) is all that is required to justify maintaining these documents under seal.

### B. Good Cause Exists to File the Limited Number of Documents at Issue Under Seal.

Mr. Horwitz apparently seeks access to *all* of the documents filed with the Court, including those containing plaintiffs' (and other individual customers') personal account information, and to defendant banks' private security and commercial information – but even he does not dispute that there is legal "good cause" for the protection of such information. In fact, the "good cause" standard is easily met here. Good cause "is a well established legal phrase" that "signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant*, 820 F.2d at 356. In the context of Rule 26(c), good cause requires a balancing of the competing interests, including a party's interest in keeping the information confidential, the possible harm to legitimate privacy interests, the degree and likelihood of injury, and the availability of a less onerous alternative. *See Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007); *Chicago Tribune*, 263 F.3d at 1313 (good cause standard "requires the district court to balance the party's interest in obtaining access against the other party's interest in keeping the

---

[1] Mr. Horwitz's motion appears to rely solely on the First Amendment as his basis for gaining access to the sealed materials. In any event, the only other possible basis for seeking access to the materials – the common law right of access to court proceedings and records – is evaluated under the same "good cause" standard. *Chicago Tribune*, 263 F.3d at 1311-13.

information confidential"). In this case, the balance of interests clearly favors maintaining the limited number of documents under seal.

The efficiency generated by a protective order in the discovery process is enough by itself to establish good cause to protect sensitive documents. Protective orders like the one the Court has adopted here enable parties in complex litigation to exchange information in discovery efficiently, and they encourage the parties to reach agreement before presenting any possible dispute to the court, limiting the need for court intervention to those documents that are truly relevant to the litigation. *Chicago Tribune*, 263 F.3d at 1308; *In re Alexander Grant*, 820 F.2d at 356. These efficiencies establish good cause for sealing the limited number of the banks' documents that have been filed under seal. *See Chicago Tribune*, 263 F.3d at 1317 (Black, J., concurring) (stating that, "[i]n light of the strong interest in having unimpeded discovery, third parties may be barred from accessing documents even when the documents are not protected by a privilege . . ., as long as the [protective] order itself meets the good cause requirement" because the "order is necessary to facilitate the free flow of information").

A review of the sealed documents confirms that good cause exists to maintain them under seal. As detailed in the accompanying declarations of Karen Moore and Ralph Slenker, the limited number of materials that the parties seek to maintain under seal, if released, would likely result in widespread and significant harm to the banks' customers and the banks. The harms that are likely to result from public disclosure of those documents include the invasion of consumers' privacy, the risk of fraud caused by disclosure of internal bank policies and procedures, and the disclosure of highly sensitive commercial and financial information that would harm the banks' competitive interests. Courts have recognized that such harms provide sufficient good cause for allowing documents to be filed under seal. *See, e.g.*, *Luzzi v. ATP Tour, Inc.*, 2011 WL 2693542,

at *3 (M.D. Fla. July 12, 2011) (stating that "legitimate privacy interests" of individuals "who are not involved in this dispute weigh[] heavily" in the decision to deny a motion to unseal); *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, 2010 WL 6790538, at *2 (M.D. Fla. Oct. 28, 2010) (holding that a company's "interest in maintaining the confidentiality of its financial information . . . outweigh[s] the public's interest in accessing the documents."); *United States ex rel. Westfall v. Axiom Worldwide, Inc.*, 2008 WL 5341140, at *4 (M.D. Fla. Dec. 19, 2008) (requiring documents be filed "under seal so that a competitor, or other individual, will have to employ its own resources, rather than [the producing party's] to ascertain" the confidential information in the documents).

In contrast to the serious risks presented if the sealed information were publicly available, Mr. Horwitz has not presented any evidence that maintaining this small set of documents under seal will materially interfere with his ability to report on the litigation. Only a handful of the many motions, oppositions, and replies filed with the Court have ever been sealed, and virtually all of the details of the litigation are accessible to him. Henn Dec. ¶ 4; Homer Dec. ¶¶ 5-7. Furthermore, the parties have agreed to re-file publicly, with only minor redactions, many of the documents that were originally filed under seal. Henn Dec. ¶¶ 4-8; Homer Dec. ¶¶ 5-8.

Nor is there any less onerous alternative to filing the documents under seal. As detailed in the attached declarations, redaction has been used where possible (for example, to remove individual consumers' account and other private financial information). Henn Dec. ¶ 8; Homer Dec. ¶ 7. In a limited number of instances, the sensitive information pervades the entire document such that redaction cannot be used. It is these documents – only a small handful in the massive record of this MDL – that the parties have asked the Court to maintain under seal.

For these reasons, good cause exists to maintain under seal the small number of documents identified in the Declaration of Karen Moore, as well as certain other redacted material, *see* Homer Dec. ¶ 7; Slenker Dec. ¶¶ 4-5; Henn Dec. ¶¶ 6, 8 & nn.1-2. The banks request that the Court accordingly deny Mr. Horwitz's motion to unseal.

### C. There Is No Right to Access to Discovery Materials Not Filed with the Court.

In addition to requesting that all sealed documents be unsealed, Mr. Horwitz's motion appears to be asking the Court to give him access to all of the voluminous "discovery documents produced by the lengthy list of defendant banks." Mot. at 1; *see also id.* at 3. This unprecedented request, unsupported by any legal authority, apparently would require turning over to Mr. Horwitz millions of pages of documents and transcripts that have never been filed with the Court. This request should be summarily denied. Mr. Horwitz has no First Amendment, common law, or other legal right whatsoever to documents that the parties have merely exchanged in discovery and not filed in court.

The Eleventh Circuit has clearly held that an intervenor has "no common-law right of access" to discovery material in civil litigation, "as these materials are neither public documents nor judicial records." *Chicago Tribune*, 263 F.3d at 1311; *see also In re Alexander Grant*, 820 F.2d at 355. Indeed, the appellate court has further held that "material filed [on the court's docket] with discovery motions is not subject to the common-law right of access." *Chicago Tribune*, 263 F.3d at 1312. Nor does Mr. Horwitz have a cognizable First Amendment right to such documents. *See Seattle Times v. Rhinehart*, 467 U.S. 20, 34-37 (1984); *Zemel v. Rusk*, 381 U.S. 1, 16-17 (1965) ("The right to speak and publish does not carry with it the unrestrained right to gather information."); *In re Alexander Grant*, 820 F.2d at 355 (holding that media intervenors "possess no First Amendment rights to the protected information which override the provisions of Fed. R. Civ. P. 26(c)"). Mr. Horwitz's request should therefore be denied.

7

D.     **There Is No Need to Alter the Existing Protective Order.**

There is also no basis for Mr. Horwitz's apparent request that the Court somehow alter the terms of the protective order to require that the parties provide additional "justification" prior to filing any document under seal in the future. Mot. at 10. In July 2010, Wells Fargo and Chase, along with the other First Tranche banks, entered into a stipulation with the plaintiffs to establish an orderly framework for the extensive discovery then underway. (DE # 687.) The Court approved that stipulation and entered it as an order of the Court on July 16, 2010. (DE # 688.) This Protective Order, which is completely customary, recognizes that discovery would necessarily entail exchange of sensitive information, and permits each party to designate information it produced as "confidential" or "highly confidential." (*Id.* ¶¶ 5-6.) The Protective Order specifically defines the types of information that can receive these designations. Only information that the producing party in good faith believes to contain "trade secrets or confidential product development, business, financial, strategic planning, security or customer information" may be designated as "confidential," and only materials that the producing party believes in good faith to "create a serious risk of monetary or non-monetary injury, or breach of security or consumer privacy" if publicly disclosed may be designated as "highly confidential." (*Id.*)

The procedures established in the Protective Order are not novel or by any means unusual. The Protective order has operated effectively in this case to facilitate the exchange of millions of pages of documents. Numerous courts, including the Eleventh Circuit, have recognized that protective orders such as this one result in significant efficiencies in the discovery process during complex litigation. *See, e.g.*, *In re Alexander Grant*, 820 F.2d at 355-57 (citing cases approving such orders); *United States v. Anderson*, 799 F.2d 1438, 1441 (11th

8

Cir. 1986).[2]  The Eleventh Circuit observed in *Alexander Grant* that such orders are "designed to encourage and simplify the exchanging of large numbers of documents, volumes of records and extensive files without concern of improper disclosure" and that "[h]istory has confirmed the tremendous saving of time effected by such an approach."  *In re Alexander Grant*, 820 F.2d at 356.  Without assurance that confidential information would remain private, discovery disputes between the parties requiring judicial intervention would multiply over information that may only be tangentially related to issues in the case.  *See id.*  By allowing the parties to designate any information exchanged in discovery as confidential and then implementing a process for the other party to challenge that designation, a protective order ensures that "[j]udicial review will then be limited to those materials relevant to the legal issues raised."  *Id.*

The experience of the parties in this litigation has proven the wisdom of using such procedures here.  As detailed in the attached declarations, through the Protective Order's meet-and-confer process, the parties have been able to substantially reduce the number of documents maintained under seal and have avoided the need for this Court's intervention.  Henn Dec. ¶¶ 4-

---

[2] *See also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) (noting that this type of protective order is "becoming standard practice in complex cases"); *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 90-91 (11th Cir. 1989); *Volumetrics Med. Imaging, LLC v. Toshiba Am. Med. Sys., Inc.*, 2011 WL 2413404, at *3 (M.D.N.C. June 10, 2011); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 255 F.R.D. 308, 323 (D. Conn. 2009) (noting that "it is not uncommon" for courts to grant such protective orders "to keep the proceedings moving rather than being bogged down by a labor intensive document-by-document good cause inquiry"); *Bayer AG & Miles, Inc. v. Barr Labs., Inc.*, 162 F.R.D. 456, 458, 463-64 (S.D.N.Y. 1995), *overruled on other grounds by SEC v. TheStreet.com*, 273 F.3d 222, 229 n.7 (2d Cir. 2001); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 11.432 (stating that, "[w]hen the volume of potentially protected materials is large," a protective order "will expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication"); 6 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.104[2] (3d ed. 2011) (noting that protective orders "avoid the expense and delay of a dispute over every item of allegedly confidential information, thereby promoting the overriding goal of the Federal Rules of Civil Procedure, 'to secure the just, speedy, and inexpensive determination of every action'" (quoting Fed. R. Civ. P. 1)).

8; Homer Dec. ¶¶ 6-8.  Under these circumstances, as the Eleventh Circuit has recognized, the goal of promoting an efficient discovery process alone supplies good cause for the Protective Order:  "We conclude that in complex litigation where document-by-document review of discovery materials would be unpracticable, and when the parties consent to an umbrella order restricting access to sensitive information in order to encourage maximum participation in the discovery process, conserve judicial resources and prevent the abuses of annoyance, oppression and embarrassment, a district court may find good cause and issue a protective order pursuant to Rule 26(c)." *Id.* at 357.

In contrast, the alternative proposed by Mr. Horwitz – a document-by-document showing of "thorough justification," presumably in front of this Court – would make this already burdensome litigation completely unmanageable.

### III.   CONCLUSION

For the reasons stated above, Wells Fargo and Chase respectfully request that the Court deny Mr. Horwitz's motion to unseal.

DATED: November 4, 2011

By: /s/ Barry R. Davidson

   Barry R. Davidson
   (bdavidson@hunton.com)
   Florida Bar No. 107678
   Jamie Zysk Isani
   (jisani@hunton.com)
   Florida Bar No. 728861
   HUNTON & WILLIAMS LLP
   1111 Brickell Avenue, Suite 2500
   Miami, FL 33131
   Telephone: (305) 810-2500
   Facsimile: (305) 810-2460

   Sonya D. Winner (*pro hac vice*)
   (swinner@cov.com)
   David M. Jolley (*pro hac vice*)
   (djolley@cov.com)
   COVINGTON & BURLING LLP
   One Front Street, 35th Floor
   San Francisco, CA 94111
   Telephone: (415) 591-6000
   Facsimile: (415) 591-6091

   Emily Johnson Henn (*pro hac vice*)
   (ehenn@cov.com)
   COVINGTON & BURLING LLP
   333 Twin Dolphin Drive, Suite 700
   Redwood Shores, CA 94065
   Telephone: (650) 632-4700
   Facsimile: (650) 632-4800

 Attorneys for Defendant
   WELLS FARGO BANK, N.A.

By: /s/ Peter W. Homer

   Peter W. Homer
   (phomer@homerbonner.com)
   Florida Bar No. 291250
   HOMER BONNER, P.A.
   1411 Brickell Avenue, Suite 1200
   Miami, Florida 33131
   Telephone: (305) 350-5139
   Facsimile: (305) 372-2738

   Christopher R. Lipsett (*pro hac vice*)
   (chris.lipsett@wilmerhale.com)
   David S. Lesser (*pro hac vice*)
   (david.lesser@wilmerhale.com)
   WILMER CUTLER PICKERING HALE
     AND DORR LLP
   399 Park Avenue
   New York, New York 10022
   Telephone: (212) 230-8851
   Facsimile: (212) 230-8888

   Attorneys for Defendant
    JPMORGAN CHASE BANK, N.A.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2011, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, and that copies of the foregoing were served this day on all counsel authorized to receive Notices of Filing generated by the CM/ECF system.  I also hereby certify that a copy of the foregoing was served via Federal Express to:

> Jeff Horwitz (*pro se*)
> 1 State St. 26th Floor
> New York, NY 10004

/Barry R. Davidson
Barry R. Davidson