UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  1:09-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036
_____/

THIS DOCUMENT RELATES TO:

*Dasher v. RBC Bank (USA)*,
S.D. Fla. Case No.  1:10-CV-22190-JLK

*Avery v. RBC Bank*,
E.D. N.C. Case No. 5:10-cv-329

_____/

**REPLY IN SUPPORT OF DEFENDANT RBC BANK (USA)'S RENEWED
MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY CASES**

Defendant RBC Bank (USA) ("RBC") files its reply to *Plaintiffs' Response in Opposition to Defendant's Motion to Compel Arbitration and Dismiss or Stay Proceedings* ["*Opposition*"; DE 2019] in further support of *Defendant RBC Bank (USA)'s Renewed Motion to Compel Arbitration and Dismiss or Stay Case* ["*Renewed Motion*"; DE 1929].

## I.   INTRODUCTION

RBC has moved to compel arbitration of the claims brought in the actions by Michael Dasher ("Dasher") and Stephanie Avery ("Avery") (collectively, "Plaintiffs") because those claims arise solely from their banking relationships with RBC and those banking relationships are entirely governed by the "Personal Accounts Service Agreement" Dasher both attached to his Complaint and sued for "breach of [that] contract." *See Dasher Class Action Complaint* at ¶¶ 86-92. That agreement requires arbitration of all customer claims, *see Renewed Motion*, Ex. A at 8-9; therefore, arbitration must be compelled pursuant to the Federal Arbitration Act ("FAA").

Dasher and Avery seek to avoid their commitment to arbitrate, but before addressing their specific arguments, two basic principles merit emphasis. First, "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues *should be resolved in favor of arbitration*." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002) (internal quotations and citations omitted; emphasis in original).  Second, "a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004). Thus, the Court must view the *Opposition* through the lens that doubts regarding arbitrability must be resolved in RBC's favor <u>and</u> that Dasher and Avery have the burden of defeating the very strong presumption favoring arbitrability of their claims.[1]

_____

[1] Because it is Plaintiffs' burden to show that arbitration should <u>not</u> be compelled, RBC had no evidentiary obligation beyond providing the Court with the copy of the arbitration provision and showing that Plaintiffs' claims are encompassed by that provision. It did so in the *Renewed Motion*. Contrary to Plaintiffs' assertion, RBC had no obligation to provide "facts concerning its relationship with" Avery or with Dasher beyond the agreement, *see Opposition* at 2, especially given the allegations of Dasher's and Avery's respective pleadings. *See Renewed Motion* at 3-5. However, now that Plaintiffs have attempted, albeit unsuccessfully, to meet their burden through their declarations, RBC provides the Court with the affidavits provided in RBC's prior arbitration briefing. Attached as Exhibit **A** is the "Affidavit of Sonia C. Bauer in Support of Defendant's Motion to Compel Arbitration and Stay All Proceedings," previously filed as *Dasher* DE 5-1. Attached as Exhibit **B** is the "Affidavit of Crystal J. Jones," previously filed as *Avery* DE 16-1. Attached as Exhibit **C** is the "Affidavit of Sonia C. Bauer," previously filed as *Avery* DE 16-2. The Affidavit of Crystal J. Jones shows that Avery used her account multiple times after the arbitration provision was made part of the Personal Accounts Service Agreement

Dasher and Avery fail in their burden. Most important, their challenges to RBC's arbitration provision largely violate the basic principle that challenges must be <u>to</u> the provision itself, and not to the contract as a whole. *See*, *e.g.*, *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 877 (11th Cir. 2005) (rejecting district court's reliance on adhesion arguments, because they "pertain to the underlying Consumer Loan Agreements as a whole, and not to the Arbitration Agreements specifically"). Furthermore, the Court may not accept Plaintiffs' invitation to speculate as to what might happen in arbitration. "[A]ny discussion of [Plaintiffs'] potential costs under the AAA rules necessarily is based on speculation and cannot provide an adequate basis for concluding that [their] costs likely would be prohibitively expensive." *Bess v. Check Express*, 294 F.3d 1298, 1304 (11th Cir. 2002). *See also Summers v. Dillards, Inc.*, 351 F.3d 1100, 1101 (11th Cir. 2003) (speculation about costs improper basis to deny arbitration, noting that "if a party considers his liability for costs to be excessive or to deprive him of his statutory remedy, he may seek judicial review of the award").[2]

Parsing through their blunderbuss arguments reveals that Dasher and Avery only challenge two, easily-severable lines of the arbitration provision itself: (i) the one-year period for bringing claims in arbitration, which limitation is valid under North Carolina law, and (ii) the sentence that allows (but does not require) the arbitrator to impose the "costs" of discovery on the requesting party, which is no different than this Court's power to address discovery costs in litigation. The remainder of Plaintiffs' arguments focus on terms which are <u>not</u> in the arbitration provision, such as RBC's set-off right (which is a historic, common law feature of North Carolina law). *See Opposition* at 10-17. None of these terms warrants invalidation of RBC's arbitration provision and, in fact, Plaintiffs fail to cite to a single case addressing any of these specific provisions. Instead, they generically cite *Tillman v. Commercial Credit Loans, Inc.*, 655

---

in April 2008. *See id*. at ¶ 4. Dasher specifically alleges that he used the account multiple times in June 2010 alone. *See Dasher Class Action Complaint* at ¶ 67. For this reason also, both are bound by the arbitration provision in the Personal Accounts Service Agreement.

[2] This principle disposes of the entirety of Plaintiffs' discussion of what "might happen" in an AAA arbitration. *See Opposition* at 12-17. It also shows the irrelevancy of Plaintiffs' Exhibit 3, which is purportedly "AAA consumer arbitration statistics . . . over the past six years[.]" *Opposition* at 12. Plaintiffs' contention that these alleged statistics show that "low-value claims like those being pursued by Mr. Dasher and Mrs. Avery are not being brought by individuals in arbitration" flies directly in the face of the *Concepcion* majority's express rejection of the dissent's argument "that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system." *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1753 (2011).

S.E.2d 362 (N.C. 2008), as support. However, *Tillman* is not only of questionable validity post-*Concepcion*, the underlying facts of *Tillman* – and, in particular, the arbitration agreement at issue there – establish that its analysis does not warrant invalidation of RBC's provision.

Finally, the Court should not overlook Plaintiffs' stark admission: "Mr. Dasher and Mrs. Avery are not challenging RBC's arbitration clause on public policy grounds[.]" *Opposition* at 5. That concession means that the wiggle-room Plaintiffs later seek to find in *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011), on the issue of substantive unconscionability, *see Opposition* at 9, has been foregone. No "vindication of rights" principle is at issue here and Plaintiffs must be compelled to arbitrate in accordance with *Concepcion*, *Cruz*, and the host of decisions underscoring the strong federal <u>and</u> North Carolina presumption in favor of arbitration.

## II.   DASHER AND AVERY ARE BOUND BY THE PERSONAL ACCOUNTS SERVICE AGREEMENT

Plaintiffs' argument that they are not bound by the Personal Accounts Service Agreement wholly fails, especially given that the burden on these issues is theirs. Remarkably, both the "Declaration of Michael Dasher"[DE 751-1] and the "Amended Declaration of Michael Dasher" [DE 2020-2], show a fascinating – and dispositive – omission, one which is also reflected in the "Declaration of Stephanie Avery" [DE 2020-1]. In the prior briefing, RBC filed an "Affidavit of Sonia C. Bauer" in each action, which states that, in April 2008, "RBC notified all of its then-existing accountholders in writing that the Agreement had been revised by way of an insert in all statements from April 4, 2008, through May 6, 2008, in all quarterly statements, and in all end of year inactive statements." *See* Ex. A (Dasher) at ¶ 6; Ex. B (Avery) at ¶ 7. That notice reads:

---

**IMPORTANT NOTICE ABOUT TERMS AND CONDITIONS GOVERNING YOUR ACCOUNTS**

When you opened any type of personal or non-personal deposit account(s) with RBC Bank™ or one of its predecessors, you received a "Service Agreement" or similar document containing the terms and conditions which govern your account(s) (the "Agreement"). From time to time you may also have received (or we may have notified you about and made available to you) certain amendments to, or revised versions of, the Agreement. The most recent revision of the Agreement was dated June 22, 2007.

We have again revised the Agreement. The new edition, which supersedes and replaces all prior versions of and any prior amendments to the Agreement, is dated April 4, 2008 (the "new Agreement"), and will be effective for all new accounts opened on or after that date. For all accounts opened at any time before April 4, 2008, the new Agreement will begin to govern those accounts 30 calendar days from the date this notice was mailed or otherwise delivered to you. If you have multiple deposit accounts with us and receive multiple copies of this notice in your statements, all of your affected accounts will be governed by the new Agreement beginning 30 calendar days from the date the first such notice was mailed or otherwise delivered to you.

*You agree that your continued use or maintenance of any account with us after the 30-day period described above will constitute your acceptance of and your agreement to be bound by all the terms and conditions contained in the new Agreement, regardless of whether you have obtained a copy of the new Agreement or whether you have read it.*

We encourage you to request a copy of the new Agreement, to read it carefully, and to keep it with your other important papers and bank records. You may obtain a copy at any of our banking centers, by calling 1.800.236.8872 and asking us to mail you one, or by clicking on the "Legal Notices and Terms of Use" tab at www.rbcbankusa.com.

We appreciate your continued business and look forward to serving you in the future.

 © RBC Bank (USA) 2008. Member FDIC.
™ Trademark of Royal Bank of Canada. Used under license.
RBC Bank is a trade name used by RBC Bank (USA) and its branch offices operate under this trade name.

 **RBC Bank**

---

*See id*. (emphasis in original). However, <u>neither Dasher nor Avery avers that the notice was not</u> <u>received</u>. Instead, Dasher and Avery parrot each other in stating, "<u>I do not recall</u> ever signing an account application or receiving an account agreement from [RBC]." *See* Dasher Amd.Decl. at ¶ 5; Avery Decl. at ¶ 3 (emphasis added). "I do not recall" does not come close to meeting their burden of proof in seeking to rebut the  strong presumption favoring arbitration.[3]

Where, as here, there is proof that a document was mailed to its recipient, the document is presumed to have been received, and a mere denial is insufficient to rebut the presumption. *Barnett v. Okeechobee Hosp.*, 283 F.3d 1232, 1240-41 (11th Cir. 2002). But, of course, neither Dasher nor Avery denies receiving the notice. Moreover, receipt is not essential, because well-established North Carolina law provides that where a party performs pursuant to an agreement, its arbitration provision is binding even in the absence of a signature. *See, e.g., Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879, 882 (N.C. App. 1999) (by continuing employment after being mailed arbitration agreement, and by attaching it to her EEOC complaint, plaintiff established that she was bound to arbitration provision). *See also Losapio v. Comcast Corp.*, No. 1:10–CV–3438–RWS, 2011 WL 1497652, *3 (N.D. Ga. Apr. 19, 2011) ("[V]alid contracts, including contracts containing arbitration clauses, may be formed by a party's continued use or

---

[3] The Court should give little credence to either declaration, because both contain blatant inaccuracies. Although Avery avers that she "do[es] not recall . . . receiving an account agreement," her Amended Complaint states, "The service agreement as amended on April 1, 2009 that was sent to Plaintiffs in the United States Postal Mail to supplement prior service agreements." *See Avery* DE 8 at ¶ 9. Though grammatically confused, it is a statement that "Plaintiffs" – *i.e.*, Avery – acknowledges being sent the agreement. Avery also avers that "Exhibit A to [RBC's] Renewed Motion . . . was a <u>different version</u> of the Personal Accounts Service Agreement and was not created until a couple of years after I became a RBC Bank customer." *Id*. at ¶ 4 (emphasis added). If Avery truly "do[es] not recall receiving an account agreement," *id*. at ¶ 3, how could she know that the operative one "was a different version"?

Dasher's Amended Declaration is even more egregious. Dasher states, "under penalty of perjury," *id*. at 4, that "I simply had no idea that RBC Bank believed that I was required to arbitrate my overdraft fee claim until I learned of RBC Bank's original motion to compel arbitration," *id*. at ¶ 11. Dasher also avers that "I had never seen the arbitration language until reading it for purposes of my previous declaration[.]" *Id*. at ¶ 13. However, Dasher's *Class Action Complaint* states that "[t]he Deposit Agreement also contains <u>an arbitration clause</u> which states if 'either you or we have any unresolvable dispute or claim concerning the Agreement or the Account, <u>such dispute or claim will be decided by binding arbitration under the expedited</u> <u>procedures of the Commercial Financial Disputes Arbitration Rules of the [AAA]</u>'" and that "[t]he above cited <u>arbitration provision</u> is unconscionable[.]" *Id*. at ¶¶ 62-63 (emphasis added). Thus, his pleading contains core allegations of which claims he "simply had no idea."

acceptance of services without objection." (applying Georgia law)); *Athon v. Direct Merchs. Bank*, No. 5:06-CV-1 (CAR) 2007 WL 1100477, 4 (M.D. Ga. Apr. 11, 2007) ("[U]nder Georgia law, the parties to an arbitration agreement may demonstrate their assent to be bound by the agreement by acting upon or accepting benefits under the contract containing the arbitration agreement even though they do not sign it.").[4]

Furthermore, both Dasher's and Avery's claims center on the Personal Accounts Service Agreement, *see Renewed Motion* at 3-5, and a party cannot sue on an agreement and then claim not to be bound by its arbitration provision.[5] The Eleventh Circuit addressed this precise issue in *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308 (11th Cir. 2005), stating, "Mrs. Blinco may not rely upon the Note to establish her RESPA claims while avoiding her obligation under the Note to arbitrate such claims." *Id*. at 1312. *See also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 418 (4th Cir. 2000) ("[Plaintiff's] entire case hinges on its asserted rights under the . . . contract; it cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated."); *Hughes Masonry Co., Inc. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981) (arbitration required "because [plaintiff's] complaint is . . . fundamentally grounded in [defendant's] alleged breach of the obligations assigned to it in the [arbitration] agreement").

Accordingly, as a matter of well-established law, Dasher and Avery have failed to meet their burden to show that they are not bound by the Personal Accounts Service Agreement.

---

[4] Although *Losapio* and *Athon* are decided under Georgia law, the analysis of North Carolina law in *Howard* shows that the same principles apply under both states' laws. Thus, Plaintiffs' contention that they are not bound by the arbitration provision because they "do not recall" receiving the Personal Accounts Service Agreement must be rejected.

[5] Although Plaintiffs recognize that the merits are not at issue here, they proceed to misrepresent both RBC's agreement and North Carolina law. *See Opposition* at 3 n.1. RBC expressly informed its customers that it handled transactions in a largest-to-smallest manner at the end of the day. *See Renewed Motion* at 7-8. Furthermore, under North Carolina law, an implied covenant claim fails in the face of such disclosures. *Lane v. Scarborough*, 200 S.E.2d 622, 624-25 (N.C. 1973) ("A contract, however, encompasses not only its express provisions but also all such implied provisions as are necessary to effect the intention of the parties unless express terms prevent such inclusion. . . . However, no meaning, terms, or conditions can be implied which are inconsistent with the expressed provisions." (internal citations, quotations, and alterations omitted)). Accordingly, Plaintiffs' claims must fail when the merits are reached.

### III.   *TILLMAN* IS INAPPOSITE AND ITS CORE HOLDING DOES NOT SURVIVE *CONCEPCION*

Plaintiffs' entire argument rests on the proposition that the North Carolina Supreme Court's decision in *Tillman* mandates a finding that RBC's arbitration provision is unconscionable. *See* Opposition at 5-18. Plaintiffs are mistaken, because the facts before the Court are nothing like those in *Tillman* and *Tillman*'s central principles were rejected in *Concepcion* and the Eleventh Circuit's interpretation of *Concepcion* in *Cruz*.[6]

In analyzing RBC's arbitration provision under *Tillman*, it is important to understand the backdrop to the decision, which does much to explain why "[f]or the first time in [its] history, a North Carolina appellate court [] found a contract to be unconscionable." 655 S.E.2d at 375 (Newby, J., dissenting). The transactions before the North Carolina Supreme Court were, at the time of the *Tillman* decision, illegal under North Carolina law. Both loans at issue (one entered into on September 22, 1998, and the second one entered into on June 4, 1999) involved "single premium credit insurance" and "[i]n July 1999 the North Carolina General Assembly outlawed single premium credit insurance for loans made or entered into on or after 1 July 2000." 665 S.E.2d at 365. Thus, in its January 2008 decision, the North Carolina Supreme Court was addressing whether arbitration should be compelled with respect to disputes centered on financial transactions that had been illegal in North Carolina for almost a decade.

The *Tillman* plurality noted that the plaintiffs " 'were rushed through the loan closings'" and "'[t]here was no mention of credit insurance'" – *i.e.*, the illegalized transaction that was the centerpiece of the dispute. *See id.* at 370. The arbitration provision had multiple features deemed egregious: (i) a provision exempting foreclosures and any claim for damages less than $15,000, (ii) an appeal process that required an appeal in arbitration as to which the expedited (and much

---

[6] Plaintiffs' attempt to parse the *Tillman* factors into multiple elements, *see* Opposition at 5-6, highlights the degree to which *Concepcion* invalidated *Tillman*. *Concepcion* specifically rejects the "contract of adhesion" basis for procedural unconscionability. *See* 131 S.Ct. at 1750; *see also Cruz*, 648 F.3d at 1215 ("Plaintiffs here do not allege any defects in the formation of the contract, aside from its generally adhesive nature, which alone is insufficient to invalidate a consumer contract."). That disposes of all of the procedural unconscionability elements listed by Plaintiffs except for "any mention of the disputed provision." *See Opposition* at 5. That aspect of unconscionability is shown inapplicable by virtue of Plaintiffs' undenied receipt of the notice of change of terms and their continued use of their accounts, which, as established above, binds Plaintiffs to all provisions of the Personal Accounts Service Agreement, including the arbitration provision. Thus, having failed to show procedural unconscionability, Plaintiffs' challenge fails, even under *Tillman*. *See* 655 S.E.2d at 370 ("A party asserting that a contract is unconscionable must prove both procedural <u>and</u> substantive unconscionability." (emphasis added)).

less costly) arbitration rules did not apply, (iii) a costs provision making the non-prevailing party liable for all costs of the proceeding exceeding one day, (iv) a requirement that the appealing party pay the costs of filing the appeal and the non-prevailing party liable for the appeal "costs, fees, and expenses," and (v) a class-action waiver. *See id*. at 366, 370-73. Of these issues, the central concerns for the plurality opinion and the concurrence were the costs of arbitration and the class-action waiver.[7] *See id*. (plurality) at 371 ("[P]aying for arbitrators is a significant cost that is simply not faced in filing a lawsuit in court."), 373 ("[T]he [class action] prohibition contributes to the financial inaccessibility of the arbitral forum as established by this arbitration clause because it deters potential plaintiffs from bringing and attorneys from taking cases with low damage amounts in the face of large costs that cannot be shared with other plaintiffs."); (concurrence) at 374 ("Particularly compelling circumstances include the cost-shifting ("loser pays") provision[s] . . . [and] the prohibitions against joinder of claims and class actions . . . .").[8]

As this Court recognized in its order denying arbitration to the other Second Tranche banks, "*Concepcion* has changed everything, in that class action waivers have historically been <u>a major factor</u> in the unconscionability analysis under state law, and now, <u>they can no longer be considered</u>." *In re Checking Account Overdraft Litig.*, No. 09-md-2036, 2011 WL 4454913, *5 (S.D. Fla. Sept. 1, 2011) (emphasis added). Clearly, the class action waiver was "a major factor" in *Tillman*, which makes its application to RBC's arbitration provision particularly inapposite, as RBC's provision lacks both the class action waiver <u>and</u> the cost-shifting aspects of the provision found unconscionable in *Tillman*. *See* Personal Accounts Service Agreement at 8-9.[9]

---

[7] There is no "majority" decision in *Tillman*. "The Supreme Court's votes were split 3-2-2 in this case, meaning that the . . . analysis is of a plurality, not a majority." *Kucan v. Advance America*, 660 S.E.2d 98, 103 n.1 (N.C. App. 2008). This highlights the fragility of the decision in view of the subsequent *Concepcion* decision, which invalidated one of *Tilllman*'s main grounds, and the dissent's analysis, which foreshadowed *Concepcion*.

[8] This Court should note that, in distinct contrast to RBC's arbitration provision, the provision at issue in *Tillman* made its terms applicable in the event of a conflict between the arbitration terms and the AAA rules, which led the plurality to disregard the AAA Consumer Rules provisions in its analysis. *See* 655 S.E.2d at 372. That analysis parallels this Court's analysis of BB&T's arbitration provision in the first order denying arbitration to the other Second Tranche banks. *See In re Checking Account Overdraft Litig.*, 734 F. Supp. 2d 1279, 1285-86 (S.D. Fla. 2010). And, as noted in the *Renewed Motion*, the Court incorporated its analysis of BB&T's fundamentally-different provision into its order denying RBC's original motion to compel arbitration. *See id*. at 15.

[9] Plaintiffs' continued insistence that the claimed inability to find an attorney constitutes a basis for finding unconscionability, *see Opposition* at 12-13, is baffling, especially in view of

Therefore, given the tenuous nature of the *Tillman* decision and its factual inapplicability to RBC's arbitration demand, *Tillman* provides no basis to find unconscionability under North Carolina's exceedingly high standard for such a finding – *i.e.*, that the arbitration provision "shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Lacey v. EMC Mortgage Corp.*, No. 5:10-cv-00173-RLV-DSC, 2011 WL 1337424, *4 (W.D. N.C. Apr. 7, 2011) (quoting *Tillman*, 655 S.E. 2d at 369). RBC's relatively-routine arbitration provision simply does not meet that high standard, and Plaintiffs have failed in their burden to establish that it does.

## IV.   RBC'S SET-OFF RIGHT CANNOT BE A BASIS TO DENY ARBITRATION

Contrary to Plaintiffs' argument, *see Opposition* at 10-12, RBC's set-off right cannot defeat its arbitration right, especially since RBC's set-off right is <u>not</u> found in the arbitration clause. In fact, a bank's right to set-off is a long-standing common law right in North Carolina. Therefore, the existence of such a right has no bearing on the unconscionability analysis.

As a preliminary issue, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006). *See also Jenkins*, 400 F.3d at 877. Furthermore, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Id*. at 445. Accordingly, because the set-off provision is not in the arbitration provision itself, *see* Personal Accounts Service Agreement at 8-9, the Court may not consider that provision in analyzing RBC's arbitration entitlement.

Moreover, Plaintiffs are fundamentally mistaken about the source of the set-off right. It does <u>not</u> spring from a nefariously-inserted contractual provision. To the contrary, the right of <u>set-off is a right that banks in North Carolina have had for at least a century</u>. "As debtors of their

Plaintiffs' express recognition that, under *Concepcion*, "any effect the class waiver on attorneys who might otherwise take the case, should no longer be considered by the Court," *id*. at 6. Both *Concepcion* and *Cruz* establish that attorney availability can no longer be considered in an unconscionability analysis, which principle cannot be limited to the class-waiver context. "[F]aithful adherence to Concepcion requires the rejection of the Plaintiffs' argument . . . that the [unavailability of a class action] will be exculpatory, because most of these small-value claims will go undetected and unprosecuted." *Cruz*, 648 F.3d at 1214. That aspect of *Concepcion* goes far to vitiate *Tillman*'s substantive unconscionability analysis, even as Plaintiffs have framed it. *See Opposition* at 5-6. That aspect of *Concepcion* also refutes Plaintiffs' overarching argument, which is that Dasher's and Avery's claimed inability to secure counsel requires denial of RBC's *Renewed Motion*.

general depositors <u>banks have long had the right to setoff</u> against the deposits any matured debts the depositors owe them. *Continental Trust Co. v. Spencer*, 193 N.C. 745, 138 S.E. 124 (1927)." *Killette v. Raemell's Sewing Apparel, Inc.*, 377 S.E.2d 73, 74 (N.C. App. 1989) (emphasis added). Indeed, in *Continental Trust*, the North Carolina Supreme Court itself emphasized this principle: "*For any indebtedness accruing from the customer to itself, the bank has the right to set-off.*" *Id.*, 138 S.E. at 124 (italics in original; quotation and citation omitted). Thus, inclusion of this provision in the customer agreement simply makes explicit an existing RBC right.

Because the set-off right has nothing to do with arbitration, invalidation of RBC's arbitration provision because of the set-off right would be invalidating an arbitration agreement simply because it is an arbitration agreement. That, of course, the Court may not do under *Concepcion* and many prior Supreme Court decisions.

### V. ANY PERCEIVED PROBLEM WITH RBC'S ARBITRATION PROVISION MUST BE CURED BY SEVERANCE

Plaintiffs cannot use random terms of RBC's agreement to attempt to avoid arbitration because "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye*, 546 U.S. at 445-46; *Jenkins*, 400 F.3d at 877. Furthermore, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye*, 546 U.S. at 445.[10]

Plaintiffs' concluding paragraph of their *Opposition* starts as follows: "There are numerous components of the arbitration provision that make it substantively unconscionable such that the Court should again reject the concept of severing those provisions." *Id.* at 17. One would expect that dramatic statement would be followed by a listing; however, consistent with their arguments throughout the *Opposition*, Plaintiffs fail to identify a single one, leaving the Court to guess as to the identity of the "numerous components." Moreover, the only troublesome

---

[10] Indeed, even were the Court to disregard *Buckeye* and apply North Carolina law, the result would be the same. As Plaintiffs' counsel have informed the Court, "North Carolina . . . allow[s] courts to enforce severability clauses provided that doing so does not rewrite the parties' [arbitration] agreement." *Plaintiffs' Response to Supplemental Briefing* [etc.] [DE 2036] at 18 (*citing Rose v. Vulcan Materials Co.*, 194 S.E.2d 521, 532 (N.C. 1973); *Whitaker Gen. Med. Corp. v. Daniel*, 379 S.E.2d 824, 828 (N.C. 1989)). Their analysis is correct. In *Rose*, the North Carolina Supreme Court stated, "When a contract contains provisions which are severable from an illegal provision and are in no way dependent upon the enforcement of the illegal provision for their validity, such provisions may be enforced." 194 S.E.2d at 531-32. Similarly, in *Whittaker General*, that court noted, "If the contract is separable, however, and one part is reasonable, the courts will enforce the reasonable provision." 379 S.E.2d at 828.

provisions (to Plaintiffs) identified that are actually in the arbitration provision are (i) the one-year period for bringing a claim in arbitration and (ii) the provision that the arbitrator could, in a rife-with-speculation scenario, award discovery costs to RBC as the prevailing party. *See id*. at 12-15. Neither is a basis to deny arbitration and use of these provisions to deny arbitration would be doing so solely because arbitration is at issue; moreover, both are easily severable.[11]

On the first provision, North Carolina law freely permits shortening of statutes of limitations. A thorough discussion is found in *Badgett v. Federal Express Corp.*, 378 F. Supp. 2d 613 (M.D. N.C. 2005), which explains that "The Supreme Court of North Carolina has honored such limitations provisions to bar state law claims in the absence of a statute explicitly disallowing them. They have been upheld by North Carolina courts in a wide array of factual scenarios." *Id*. at 622-23 (citations omitted). And, obviously, the easy severability of that provision makes it an even more inappropriate a basis to deny RBC its arbitration right.

As to costs, as explained in the *Renewed Motion* and above, Plaintiffs' speculation about costs-of-arbitration similarly cannot be used to deny RBC its arbitration right. Moreover, because Plaintiffs have the burden of proof here, they must do more than speculate, which they have failed to do. Instead, they only postulate what the AAA might do, how it might treat the claims, what costs might be imposed, *etc.* – none of which meets Plaintiffs' burden. And, of course, the costs sentence could also be severed. Furthermore, the discretion to allocate discovery costs authorized by the arbitration provision is no different than the discretion to which Plaintiffs would be subject in litigation in this Court.

Indeed, Plaintiffs' interweaving of the arbitration costs issues throughout the *Opposition* reflects the underlying theme – and, in fact, essential argument – of the entire *Opposition*: Plaintiffs contend that Dasher's and Avery's claims can only be addressed through class-action litigation. *Concepcion* forecloses that argument, and not just to Dasher and Avery, but to any member of the class whom Plaintiffs' counsel seek to represent – every one of which would have to go through the same process in their attempts to avoid the arbitration provision of the Personal Accounts Service Agreement. Therefore, such arguments must be rejected by the Court, and RBC's *Renewed Motion* should be granted.

---

[11] Plaintiffs also contend that RBC's right to seek injunctive relief to protect its right to arbitration is a basis for invalidating that right. *See Opposition* at 9. Such provisions are routine, and Plaintiffs – similar to most of their arguments – cite nothing but *Tillman* in support. *See id*. However, *Tillman* does not even discuss injunctive relief.

## VI.   CONCLUSION

WHEREFORE, defendant RBC Bank (USA) respectfully requests that the Court grant this Motion, compel the claims of plaintiffs Dasher and Avery to arbitration, dismiss or stay this action as the Court deems fit, and grant RBC such other and further relief as the Court deems just and proper.

Respectfully submitted,

Date:  November 7, 2011

**AKERMAN SENTERFITT**
One S.E. Third Avenue — 25th Floor
Miami, FL 33131-1714
Tel.: 305-374-5600
Fax: 305-374-5095

By: s/ Christopher S. Carver
    CHRISTOPHER S. CARVER, ESQ.
    Florida Bar No. 993580
    E-mail: christopher.carver@akerman.com
    STACY J. HARRISON, ESQ.
    Florida Bar No. 44109
    E-mail: stacy.harrison@akerman.com

**AKERMAN SENTERFITT**
420 South Orange Avenue
Post Office Box 231
Orlando, FL  32802-0231
Tel.:  407-423-4000
Fax:  407-843-6610

By: s/ Virginia B. Townes
    VIRGINIA B. TOWNES, ESQ.
    Florida Bar No.  361879
    E-mail: virginia.townes@akerman.com

*Attorneys for Defendant RBC Bank (USA)*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true and correct copies of this *Reply in Support of Defendant RBC Bank (USA)'s Renewed Motion to Compel Arbitration and Dismiss or Stay Cases* were served via transmission of Notices of Electronic Filing generated by CM/ECF on November 7, 2011, on all counsel or parties of record on the Service List below, as well as on all other counsel who have entered appearances in MDL 2036.

<u>s/Christopher S. Carver</u>

12

## SERVICE LIST

*In re: Checking Account Overdraft Litigation*, **Case No. 1:09-md-02036-JLK**
**Relating to: *Dasher v. RBC Bank (USA)*, Case No. 1:10-cv-22190-JLK**
**United States District Court, Southern District of Florida**

**Counsel for Plaintiff Michael Dasher**
(service by CM/ECF)

Jeffrey M. Ostrow, Esq.
David L. Ferguson, Esq.
**KOPELOWITZ OSTROW FERGUSON**
  **WEISELBERG KEECHL**
200 S.W. First Avenue, 12th Floor
Ft. Lauderdale, FL 33301
Tel.: 954-525-4100
Fax: 954-525-4300
E-mail: ostrow@kolawyers.com
E-mail: ferguson@kolawyers.com

Darren T. Kaplan, Esq.
**CHITWOOD HARLEY HARNES, LLP**
1230 Peachtree Street, N.E.
2300 Promenade II
Atlanta, GA 30309
Tel.: 404-873-3900
Fax:  404-876-4476
E-mail: dkaplan@chitwoodlaw.com

**Plaintiffs' Coordinating Counsel**
(service by CM/ECF)

Robert C. Gilbert, Esq.
**GROSSMAN ROTH, P.A.**
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel.: 305-442-8666
Fax: 305-779-9596
E-mail: rcg@grossmanroth.com

**Counsel for Defendant RBC Bank (USA)**
(service by CM/ECF)

Virginia B. Townes, Esq.
Carrie Ann Wozniak, Esq.
**AKERMAN SENTERFITT**
420 South Orange Avenue
Post Office Box 231
Orlando, FL  32802-0231
Tel.:  407-423-4000
Fax:  407-843-6610
E-mail: virginia.townes@akerman.com
E-mail: carrieann.wozniak@akerman.com

Christopher S. Carver, Esq.
Stacy J. Harrison, Esq.
**AKERMAN SENTERFITT**
One S.E. Third Avenue – Suite 2500
Miami, FL 33131-1714
Tel.:  305-374-5600
Fax:  305-374-5095
E-mail: christopher.carver@akerman.com
E-mail: stacy.harrison@akerman.com

**Counsel for Plaintiff Stephanie Avery**

Inez de Ondarza Simmons, Esq.
5 West Hargett Street – Suite 808
Raleigh, NC 27603
E-mail: inezsimmons@inezlaw.com