**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
THIRD TRANCHE ACTIONS

*Duval v. Citizens Financial Group, Inc.*
**N.D. Ill. Case No. 1:10-cv-00533**
**S.D. Fla. Case No. 1:10-cv-21080-JLK**

*Daniels v. Citizen Financial Group, Inc.*
**D. Ma. Case No. 10-cv-10386**
**S.D. Fla. Case No. 1:10-cv-22014-JLK**

*Blankenship v. RBS Citizens, N.A.*
**D. RI. Case No. 10-cv-02718**
**S.D. Fla. Case No. 1:10-cv-22942-JLK**

**RESPONSE TO PRO SE CORRESPONDENCE FILED BY**
**GREGORY MURPHY AND MOTION TO WITHDRAW**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. (ii)


RESPONSE TO PRO SE CORRESPONDENCE FILED BY
GREGORY MURPHY ...................................................................................................... 1

    I.    INTRODUCTION ...................................................................................... 1

    II.    BACKGROUND  FACTS AND RESPONSE TO
        ALLEGATIONS OF MISCONDUCT ............................................................ 2

    III.  MR. MURPHY'S REQUEST FOR RELIEF MUST BE DENIED ............... 7


MOTION TO WITHDRAW.............................................................................................. 7


CONCLUSION ............................................................................................................... 10


CERTIFICATE OF SERVICE ....................................................................................... 13

**TABLE OF AUTHORITIES**

**CASES**

*BellSouth Adver. & Publ'g Corp. v. Am. Bus. Lists, Inc.*, No. 1:90-cv-149,
  1992 WL 338392 (N.D. Ga. Sept. 8, 1992) ........................................................................ 2

*Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994) ................................ 2

*Shafnaker v. Clayton*, 680 So. 2d 1109 (Fla. Dist. Ct. App. 1996)...................................... 2

**Other Authorities**

Florida Rules of Professional Conduct, Rule 4-1.16(b)(2) ................................................. 9

Florida Rules of Professional Conduct, Rule 4-1.16(b)(5) ................................................. 9

Florida Rules of Professional Conduct, Rule 4-3.1 ............................................................. 8

Rules Regulating the Florida Bar, Rule 4-1.16(a) ............................................................... 8

Rules Regulating the Florida Bar, Rule 4-1.16(a)(1)........................................................... 8

Rules Regulating the Florida Bar, Rule 4-1.16(b) ............................................................... 8

S.D. Fla. L.R. 7.1 ............................................................................................................. 8, 9

S.D. Fla. L.R. 11.1 ............................................................................................................... 8

### RESPONSE TO PRO SE CORRESPONDENCE FILED BY GREGORY MURPHY

#### I.  INTRODUCTION

On October 28, 2011, Plaintiff Gregory Murphy filed a document entitled "Pro-Se Correspondence" in this action. [**DE # 2043**].  In his filing, Mr. Murphy alleges that he was "misled" by his attorneys.  His accusations are leveled at the law firm that Mr. Murphy retained, Tycko & Zavareei LLP ("TZ"), and at members of the Plaintiffs' Executive Committee ("PEC")—who were appointed by the Court to represent Mr. Murphy and the Plaintiffs for the benefit of the putative class.  Mr. Murphy claims that his counsel "is ineffective and has effectively conspired with other attorneys on this case to prejudicially have him removed from this case." *Id*. at 6.  Both in his "Pro-Se Correspondence" and throughout his most recent communications with counsel, Mr. Murphy has expressed extreme dissatisfaction with his legal representation.  Mr. Murphy also claims that his attorneys failed to represent his interests.  Mr. Murphy appears to request that this Court discipline his attorneys for this alleged misconduct, remove them from this case, and require them to pay for Mr. Murphy's "future legal representation" and expenses. *Id*.

As detailed below, TZ and the PEC (collectively referred to as "Plaintiffs' Counsel") unequivocally deny Mr. Murphy's allegations of misconduct.  The legal representation of Plaintiffs' Counsel has been entirely proper and consistent with the Rules of Professional Conduct.  As such, Plaintiffs' Counsel respectfully request that the Court deny the relief sought by Mr. Murphy.  Further, in light of the apparent and fundamental disagreements between Mr. Murphy and Plaintiffs' Counsel, Plaintiffs' Counsel respectfully request that the Court grant their Motion to Withdraw as counsel for Mr. Murphy.

## II.  BACKGROUND  FACTS AND RESPONSE TO ALLEGATIONS OF MISCONDUCT[1]

Mr. Murphy entered into a retention agreement with TZ on or about June 3, 2010. Declaration of Hassan A. Zavareei ("Zavareei Decl."), ¶2.[2]  Mr. Murphy retained TZ to represent him in connection with litigation against Citizens Bank related to overdraft fees.  *Id*.  On June 7, 2010, the PEC filed a Consolidated Amended Class Action Complaint in which Mr. Murphy was named as a Plaintiff. [**DE # 560**, at 5, ¶19].  On December 22, 2010, the PEC filed a Corrected Second Consolidated Amended Class Action Complaint, which is the current active Complaint in this matter, and Mr. Murphy was again named as a Plaintiff. [**DE # 1022**, at 5, ¶20].   In connection with its representation of Mr. Murphy in this litigation, TZ communicated with Mr. Murphy on several occasions, both in writing (via e-mail and letter) as well as via telephone. Zavareei Decl. ¶2.

---

[1] Plaintiffs' Counsel is mindful that confidential communications with Mr. Murphy are subject to the attorney-client privilege.  Mr. Murphy, however, has waived that privilege with respect to the subject matter of his correspondence to the Court by making representations regarding the content of purported oral communications and by filing written communications with the Court.  "The attorney-client privilege 'belongs solely to the client,' and the client may waive it, either expressly or by implication." *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1417 (11th Cir. 1994) (quoting *In re Von Bulow*, 828 F.2d 94, 100, 101 (2d Cir. 1987)). When a party waives the attorney-client privilege as to a communication, the waiver generally "extends to all other communications relating to the same subject matter." *BellSouth Adver. & Publ'g Corp. v. Am. Bus. Lists, Inc.*, No. 1:90-cv-149, 1992 WL 338392, at *8 (N.D. Ga. Sept. 8, 1992).  In addition, an exception to the attorney-client privilege exists in this situation because the communications are relevant to Mr. Murphy's breach of his obligations to his attorneys and because they are relevant to his allegations that his attorneys breached their duties to him.  *Shafnaker v. Clayton*, 680 So. 2d 1109, 1111 (Fla. Dist. Ct. App. 1996).  In an abundance of caution, however, Plaintiffs' Counsel is limiting its discussion of its communications with Mr. Murphy to the communications he has already raised—and made representations about—in his original filing with the Court.

[2] The declarations of Hassan A. Zavareei, Andrea Gold, and John Gravante are being submitted herewith.

On or about August 23, 2011, Defendants issued a Notice of Videotaped Deposition of Mr. Murphy.  Zavareei Decl. ¶3.  Mr. Murphy's deposition was set for October 14, 2011, in New York, New York.  TZ communicated repeatedly with Mr. Murphy concerning the scheduled deposition.  Declaration of Andrea R. Gold ("Gold Decl.") ¶2.  During a telephone conversation with Mr. Murphy on the evening of October 12, 2011, and in response to a question posed by Ms. Gold, Mr. Murphy disclosed significant information regarding his personal history that he had never before shared with TZ.  *Id*. ¶2.  After Mr. Murphy's disclosure, Ms. Gold promptly conducted some research related to the disclosure.  This research revealed that Mr. Murphy had previously been convicted of at least seven serious criminal offenses.  *Id*. ¶3.

Moreover, earlier that day, counsel for Defendants, Lisa Gates, Esq., communicated her concern to John Gravante, III, Esq. of Podhurst Orseck, P.A., about deposing Mr. Murphy because of the background search her firm had conducted on Mr. Murphy which revealed both his criminal history and certain mental health issues which Mr. Murphy allegedly had admitted to having during his court proceedings.  Declaration of John Gravante, III ("Gravante Decl."), ¶2.[3]

After completing this research and communicating amongst themselves on the evening of October 12 and into the following morning, TZ and the PEC determined that, as a result of the newly disclosed facts, they could not in good faith represent to this Court that Mr. Murphy was an adequate representative of the putative class.  Zavareei

---

[3] Mr. Murphy appears to allege that a "member of law firm" made "false light statements" regarding his "mental health." [**DE # 2043**, at 4].  Neither Ms. Gold nor Mr. Zavareei provided any information regarding Mr. Murphy's mental health.  Zavareei Decl. ¶13; Gold Decl. ¶15.  The source of the information regarding Mr. Murphy's mental health was counsel for Defendants.  Gravante Decl. ¶2.

Decl. ¶5; Gold Decl. ¶4; Gravante Decl. ¶3.  As such, Plaintiffs' Counsel decided to cancel Mr. Murphy's deposition, which was set to go forward the following day, and to seek Mr. Murphy's permission to voluntarily dismiss his complaint.  Zavareei Decl. ¶5; Gold Decl. ¶4; Gravante Decl. ¶3.  Promptly thereafter, Ms. Gold attempted to telephone Mr. Murphy to explain Plaintiffs' Counsel's concerns, tell him that Plaintiffs' Counsel was going to cancel his deposition, and obtain his consent to voluntary dismiss his claim without prejudice.  Gold Decl. ¶5.  After unsuccessfully trying to contact Mr. Murphy and because of the urgency of resolving this situation, Ms. Gold sent Mr. Murphy a text message informing him that his deposition was cancelled and asking him to call her.  *Id*. ¶¶5, 6.  As of this time, Plaintiffs' Counsel had *not* informed counsel for Defendant that the deposition was cancelled, nor had Plaintiffs' Counsel informed counsel for Defendant that Mr. Murphy had agreed to voluntarily dismiss his claims.  Gravante Decl. ¶4.

Shortly after Ms. Gold sent the text message to Mr. Murphy, he called her.  Gold Decl. ¶6.  Ms. Gold immediately informed Mr. Murphy that Mr. Zavareei wanted to join the call and that she would be conferencing him in.  *Id*.  Mr. Murphy agreed, and Mr. Zavareei was conferenced into the call.  *Id*.  Ms. Gold never indicated to Mr. Murphy that she would be disengaging from the phone call; rather, at the termination of the call, she expressed her thanks to Mr. Murphy and said goodbye.[4]  *Id*. at ¶¶6, 9.

_____

[4] Mr. Murphy alleges that Ms. Gold participated in "an illegal form of wiretapping" during her October 13, 2011 call with Mr. Murphy and Mr. Zavareei.  There is no basis to this allegation.  Ms. Gold informed Mr. Murphy that she would be conferencing Mr. Zavareei into the existing call.  Gold Decl.  ¶6.  Ms. Gold never indicated that the call would be transferred to Mr. Zavareei or that she would be disengaging from the call.  *Id*.  Indeed, Ms. Gold expressed her thanks to Mr. Murphy at the culmination of the call and said goodbye.  *Id*. ¶9.  Mr. Murphy's claim that he was unaware that Ms. Gold was on the call is false.

During the call, Mr. Zavareei informed Mr. Murphy of Plaintiffs' Counsel's concerns. Zavareei Decl. ¶ 7, Gold Decl. ¶7. Contrary to what he is claiming now, Mr. Murphy expressly agreed during the call to cancel his deposition and to voluntarily dismiss his claims against Defendant. Zavareei Decl. ¶7; Gold Decl. ¶7. He said he was unhappy about the decision, but understood that it was in the best interests of the other plaintiffs and putative class. Mr. Zavareei also told Mr. Murphy that he would be reimbursed for the flight expenses he incurred related to the deposition.[5] Zavareei Decl. ¶ 7, 12; Gold Decl. ¶7.

After speaking with Mr. Murphy, Mr. Zavareei and Ms. Gold contacted a member of the PEC and informed him of Mr. Murphy's consent. Zavareei Decl. ¶8; Gold Decl. ¶10. Mr. Gravante informed counsel for Defendants that Mr. Murphy's deposition was cancelled and his claim would be voluntarily dismissed only *after* Mr. Murphy had given his permission. Gravante Decl. ¶4.

Later that morning, Mr. Murphy sent Ms. Gold an email regarding his flight reimbursement. Gold Decl. ¶11. In that email, he expressed no concerns regarding his decision to voluntarily dismiss his claim or his legal representation. *Id.* On the morning of the following day, however, Mr. Murphy sent Ms. Gold another email and, for the first time, expressed concerns regarding the phone call of the previous day and, more

---

[5] Mr. Zavareei did not offer to pay for Mr. Murphy's airfare "for a vacation for working so hard with the firm." [**DE # 2043**, at 3]. Rather, Mr. Zavareei indicated that he understood that Mr. Murphy likely would not be able, at such late notice, to obtain refund from the airline. Zavareei Decl. ¶12; Gold Decl. ¶8. Mr. Zavareei indicated that TZ would reimburse Mr. Murphy for the flight and that, if he obtained a credit or some sort of voucher from the airline, he could chose to use that credit for his personal use—since such credits are not transferable. Zavareei Decl. ¶12; Gold Decl. ¶8. Mr. Zavareei did thank Mr. Murphy for his hard work on the case with TZ. Those comments were made generally and not in connection with a discussion regarding the flight reimbursement. Zavareei Decl. ¶12; Gold Decl. ¶8.

generally, his representation by TZ. *Id.* ¶12. Mr. Murphy subsequently sent a number of additional emails in which he made untrue and threatening allegations against Plaintiffs' Counsel similar to those outlined in his "Pro-Se Correspondence." [**DE # 2043**]. Zavareei Decl. ¶13; Gold Decl. ¶14. It was unclear from this correspondence whether he was terminating the attorney-client relationship with TZ and the PEC.

As a result of Mr. Murphy's correspondence, Plaintiffs' Counsel decided that they should only communicate with Mr. Murphy via telephone if two or more attorneys participated in the call—with one lawyer from TZ and one from the PEC. Gold Decl. ¶14; Gravante Decl. ¶5. On at least three occasions, Mr. Gravante, Ms. Gold, and/or Mr. Zavareei attempted to schedule a telephone call with Mr. Murphy in order to discuss his concerns. Gold Decl. ¶14; Gravante Decl. ¶5. Mr. Murphy declined these requests. Gold Decl. ¶14; Gravante Decl. ¶5.

On October 18, 2011, Mr. Zavareei sent Mr. Murphy written notice of TZ's intention to withdraw from its representation of Mr. Murphy in this case. Zavareei Decl. ¶10. Thirty days written notice was required by the retention agreement between TZ and Mr. Murphy. *Id.* Mr. Zavareei informed Mr. Murphy in this correspondence that, although he had indicated, at times, that he wanted to terminate TZ, TZ would cooperate with Mr. Murphy should he retain new counsel or proceed *pro se*. *Id.* After this notice was sent by Mr. Zavareei, Mr. Murphy sent a number of additional emails to Plaintiffs' Counsel in which he repeated his false allegations. Zavareei Decl. ¶11; Gold Decl. ¶13; Gravante Decl. ¶6. TZ also sent Mr. Murphy reimbursement for his flight expenses associated with his deposition. Zavareei Decl. ¶17. The PEC has also sent Mr. Murphy notice of its intention to withdraw. Gravante Decl. ¶10.

6

### III.  MR. MURPHY'S REQUEST FOR RELIEF MUST BE DENIED

Plaintiffs' Counsel denies the allegations of misconduct made by Mr. Murphy in his "Pro-Se Correspondence."  They have not made any misrepresentations to him.[6] Promptly upon learning of significant information regarding Mr. Murphy's personal history and conducting confirmatory research, counsel informed Mr. Murphy of their concerns and Mr. Murphy agreed to voluntarily dismiss his claims.  Later, when Mr. Murphy falsely claimed that he had not provided such consent, and made serious attacks against counsel, Plaintiffs' Counsel attempted to communicate with Mr. Murphy and resolve his concerns.  Mr. Murphy eventually refused to communicate with counsel. Notice of counsel's intention to withdraw was consequently provided.     Plaintiffs' Counsel's representation of Mr. Murphy, the other named Plaintiffs in this case, and the putative Class has been entirely proper and consistent with the canons governing the legal profession.

### MOTION TO WITHDRAW

It is unclear whether Mr. Murphy has terminated his relationship with Plaintiffs' Counsel—for example, he has entitled his filing as "pro se" and has indicated in his correspondence that there is a conflict of interest between himself and TZ and that he "cannot trust [Mr. Zavareei] or [TZ] to serve [his] best interest" [**DE # 2043**, at 12]— In any event, however, it is clear that TZ and the PEC cannot and should not continue to

---

[6] In addition to alleging misrepresentations arising from the cancelled deposition and consent to withdraw, Mr. Murphy claims that Ms. Gold and Mr. Zavareei reported to him "several times" that the case was "in class status." [**DE # 2043**, at 4].  While it is unclear what Mr. Murphy means by "in class status," neither Ms. Gold nor Mr. Zavareei ever told Mr. Murphy that a class had been certified in this case.  Zavareei Decl. ¶12; Gold Decl.¶ 16.

represent him.  Pursuant to S.D. Fla. L.R. 7.1 and 11.1, and Rule 4-1.16(a) and (b) of the

Rules Regulating the Florida Bar, Tycko & Zavareei LLP, and all attorneys associated

with the firm who have appeared in this case, including Hassan A. Zavareei and Andrea

R. Gold, and the Plaintiffs' Executive Committee, hereby file this motion to withdraw as

counsel for Plaintiff Gregory Murphy and, in support thereof, state as follows:

1. According to S.D. Fla. L.R. 7.1, a motion to withdraw as counsel "need not incorporate a memorandum [of law]." *Id*.

2. According to S.D. Fla. L.R. 11.1, "No attorney shall withdraw the attorney's appearance in any action or proceeding except by leave of Court after notice served on the attorney's client and opposing counsel. A motion to withdraw shall include a current mailing address for the attorney's client or the client's counsel." *Id*.  Further, "[t]he standards of professional conduct of members of the Bar of this Court shall include the Rules Regulating the Florida Bar." *Id*.

3. According to Rule 4-1.16(a)(1) of the Rules Regulating the Florida Bar, an attorney "must" terminate her representation of a client if, *inter alia*, "the representation will result in violation of the Rules of Professional Conduct or law."

4. Rule 4-3.1 of the Florida Rules of Professional Conduct states that:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.

5. Counsel cannot in good faith represent to this Court that Mr. Murphy would be an adequate representative of the class for the reasons shown in this response and in his correspondence.

6. In addition, Rule 4-1.16(b) (2) and (5) of the Florida Rules of Professional Conduct provide that a lawyer may withdraw from representing a client if:

> (2)    the client insists upon taking action that the lawyer considers repugnant, imprudent, or with which the lawyer has a fundamental disagreement;
>
>               * * *
>
> (5)    other good cause for withdrawal exists.

Counsel believes that it would be imprudent to attempt to have Mr. Murphy act as a class representative and is in fundamental disagreement with him on that basis.  Moreover, the trust required for an attorney-client relationship has been destroyed, as the allegations and charges contained in Mr. Murphy's correspondence make clear.  The completely fractured relationship constitutes good cause for withdrawal.

7. As such, TZ and the Plaintiffs' Executive Committee seek leave to withdraw as counsel of record for Gregory Murphy as of November 17, 2011, the expiration date of the thirty days notice provided to Mr. Murphy.

8. Notice of this Motion to Withdraw has been sent to Gregory Murphy, via overnight mail, at his last known address of 610 Saint Clair Street, Latrobe, PA 15650.

9. Pursuant to Local Rule 7.1, undersigned has consulted with counsel of record for Defendants, who have advised that they do not oppose the granting of this

motion.  Due to his prior writings and statements, and the unusual nature of this matter, we have not attempted to consult with Mr. Murphy.  We assume that he opposes this Motion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Counsel ask the Court to deny the relief requested by Mr. Murphy in his "Pro-Se Correspondence" and enter an Order granting them leave to withdraw as counsel of record for Plaintiff Gregory Murphy as of November 17, 2011, together with such other and further relief as the Court may deem just and appropriate under the circumstances.

Dated: November 14, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No.  516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

10

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

11

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2011, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record or *pro se* parties identified on

the attached Service List in the manner specified, either via transmission of Notices of

Electronic Filing generated by CM/ECF or in some other authorized manner for those

counsel or parties who are not authorized to receive electronically Notices of Electronic

Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

13