UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
THIRD TRANCHE ACTIONS

*Duval v. Citizens Financial Group, Inc.*
N.D. Ill. Case No. 1:10-cv-00533
S.D. Fla. Case No. 1:10-cv-21080-JLK

*Daniels v. Citizen Financial Group, Inc.*
D. Ma. Case No. 10-cv-10386
S.D. Fla. Case No. 1:10-cv-22014-JLK

*Blankenship v. RBS Citizens, N.A.*
D. RI. Case No. 10-cv-02718
S.D. Fla. Case No. 1:10-cv-22942-JLK

DECLARATION OF HASSAN A. ZAVAREEI IN SUPPORT OF
RESPONSE TO PRO SE CORRESPONDENCE FILED BY
GREGORY MURPHY AND MOTION TO WITHDRAW

I, Hassan A. Zavareei, declare as follows:

1. I am a partner at the law firm of Tycko & Zavareei LLP ("TZ"). TZ was retained by

   Gregory Murphy and certain other plaintiffs in connection with litigation against

   defendants, Citizens Bank of Pennsylvania and RBS Citizens, N.A ("Citizens Bank")

   related to overdraft fees. I have personal knowledge of the facts stated herein and, if

   called upon, could competently testify thereto.

1

2. On or about June 3, 2010, Mr. Murphy signed a retention agreement with TZ to pursue his claims against Citizens Bank. In keeping with this representation, TZ communicated with Mr. Murphy, both in writing (via e-mail and letter) as well as via telephone.

3. On or about August 23, 2011, Defendants issued a Notice of Videotaped Deposition of Mr. Murphy. Mr. Murphy's deposition was set for October 14, 2011, in New York, New York. In order to prepare for this deposition, TZ communicated with Mr. Murphy on several occasions.

4. On or about October 12, 2011, my associate, Andrea Gold, shared with me important information about Mr. Murphy's personal history that he had never before shared with our firm. Ms. Gold also provided me with public records she obtained relating to this new disclosure.

5. After receiving this information, I communicated with Ms. Gold and representatives from the PEC. We agreed that we could not, in good faith, represent to the Court that Mr. Murphy was an adequate representative of the putative class. As such, we decided to cancel Mr. Murphy's deposition. We also decided to seek Mr. Murphy's permission to voluntarily dismiss his complaint without prejudice.

6. On the morning of October 13, 2011, I participated in a phone call with Ms. Gold and Mr. Murphy. Ms. Gold conferenced me into an existing call with Mr. Murphy.

7. During the call, I informed Mr. Murphy of Plaintiffs' Counsel's concerns. Mr. Murphy stated to Ms. Gold and myself that he agreed to voluntarily dismiss his claims against Defendants and to the cancellation of his deposition that had not been previously communicated to Defendants' counsel. He said he was unhappy about the decision, but understood that it was in the best interests of the other Plaintiffs and putative class. I also

told Mr. Murphy that he would be reimbursed for the flight expenses he incurred related to the deposition.

8. After speaking with Mr. Murphy, Ms. Gold and I contacted a member of Podhurst Orseck, P.A. and informed him of Mr. Murphy's consent.

9. After this October 13 phone call, Mr. Murphy sent me a number of emails in which he made untrue and threatening allegations against me, Ms. Gold, and the PEC similar to those outlined in his "Pro-Se Correspondence."

10. On October 18, 2011, I sent Mr. Murphy written notice of TZ's intention to withdraw from its representation of him in this case. Even though it appeared that Mr. Murphy was terminating the representation, I provided him with 30 days notice of our intent to withdraw, pursuant to our retention agreement. I informed Mr. Murphy in this correspondence that, although he had indicated, at times, that he wanted to terminate TZ, TZ would cooperate with Mr. Murphy should he retain new counsel or proceed *pro se*.

11. After I sent this October 18 notice, Mr. Murphy sent a number of additional emails in which he repeated his false allegations.

12. I never offered to pay for Mr. Murphy's airfare "for a vacation for working so hard with the firm." I indicated in our October 13 telephone conversation that TZ would reimburse Mr. Murphy for the flight and that, if he obtained a credit or some sort of voucher from the airline, he could chose to use that credit for his personal use—since such credits are not transferable. I thanked Mr. Murphy for his hard work on the case with TZ. These comments were made generally and not in connection with a discussion regarding the flight reimbursement. At no time during the call (or at any other time) did I tell Mr. Murphy that a class had been certified in this case.

13. Further, I did not have any information about his mental health, and did not convey any information about his mental health to Ms. Olk, as Mr. Murphy erroneously has claimed in his filing with the Court.

14. TZ has determined that it cannot, in good faith, represent to this Court that Mr. Murphy would be an adequate representative of the class for the reasons detailed in the Response to his Pro-se Correspondence and in his correspondence. TZ believes that it would be imprudent to have Mr. Murphy act as a class representative and is in fundamental disagreement with him on that basis.

15. Moreover, and as evidenced by Mr. Murphy's Pro-se Correspondence, the trust required for an attorney-client relationship is absent and the relationship has been irreparably damaged.

16. Consequently, TZ has decided that it cannot properly continue to represent Mr. Murphy and that it should seek permission from this Court to withdraw as counsel.

17. TZ has reimbursed fully Mr. Murphy for his flight expenses associated with his deposition.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:   November 11, 2011

_____
Hassan A. Zavareei