UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
THIRD TRANCHE ACTIONS

*Duval v. Citizens Financial Group, Inc.*
N.D. Ill. Case No. 1:10-cv-00533
S.D. Fla. Case No. 1:10-cv-21080-JLK

*Daniels v. Citizen Financial Group, Inc.*
D. Ma. Case No. 10-cv-10386
S.D. Fla. Case No. 1:10-cv-22014-JLK

*Blankenship v. RBS Citizens, N.A.*
D. RI. Case No. 10-cv-02718
S.D. Fla. Case No. 1:10-cv-22942-JLK

DECLARATION OF ANDREA R. GOLD IN SUPPORT OF
RESPONSE TO PRO SE CORRESPONDENCE FILED BY
GREGORY MURPHY AND MOTION TO WITHDRAW

I, Andrea R. Gold, declare as follows:

1. I am an associate at the law firm of Tycko & Zavareei LLP ("TZ"). TZ was retained by Gregory Murphy and certain other plaintiffs in connection with the litigation against defendants, Citizens Bank of Pennsylvania and RBS Citizens, N.A. I have personal

knowledge of the facts stated herein and, if called upon, could competently testify thereto.

2. I communicated with Mr. Murphy on several occasions in connection with his forthcoming deposition, both by e-mail and by telephone. On October 12, 2011, I had a telephone call with Mr. Murphy in which his scheduled October 14, 2011 deposition was discussed. During the course of this conversation and in response to my question, Mr. Murphy disclosed significant information regarding his personal history that he had never before shared with me or, to my knowledge, anyone at TZ.

3. After Mr. Murphy's disclosure, I promptly conducted some research related to his disclosure. This research revealed that Mr. Murphy had been convicted of at least seven serious criminal offenses.

4. I shared this information about Mr. Murphy's personal history with my colleague, Hassan Zavareei, Esq., as well as with representatives of the Plaintiffs' Executive Committee ("PEC"). We determined that we could not, in good faith, represent to the Court that Mr. Murphy was an adequate representative of the putative class. As such, we decided to cancel Mr. Murphy's deposition. We also decided to seek Mr. Murphy's permission to voluntarily dismiss his complaint without prejudice.

5. After this decision was made, on the morning of October 13, 2011, I tried to reach Mr. Murphy via telephone, but was initially unsuccessful in contacting him. I sent him a text message informing him that his deposition was cancelled and asking him to call me.

6. Shortly after I sent this text message to Mr. Murphy, he called me. I immediately informed Mr. Murphy that Mr. Zavareei wanted to join the call and that I would be conferencing him in. Mr. Murphy agreed and I conferenced Mr. Zavareei into the call. I

never indicated to Mr. Murphy that the call would be transferred to Mr. Zavareei or that I would be disengaging from the call.

7. During the call, Mr. Zavareei informed Mr. Murphy of Plaintiffs' Counsel's concerns. Mr. Murphy expressly agreed to the cancellation of his deposition (which had not yet been conveyed to Defendants) and to voluntarily dismiss his claims against Defendants. He said he was unhappy about the decision, but understood that it was in the best interests of the other Plaintiffs and putative class. Mr. Zavareei also told Mr. Murphy that he would be reimbursed for the flight expenses he incurred related to the deposition.

8. Mr. Zavareei did not offer to pay for Mr. Murphy's airfare "for a vacation for working so hard with the firm." He indicated that TZ would reimburse Mr. Murphy for the flight and that, if he obtained a credit or some sort of voucher from the airline, Mr. Murphy could choose to use that credit for his personal use—since such credits are not transferable. Mr. Zavareei also thanked Mr. Murphy for his hard work on the case with TZ.

9. I also expressed my thanks to Mr. Murphy at the end of the call and said goodbye.

10. After speaking with Mr. Murphy, Mr. Zavareei and I contacted a member of the firm of Podhurst Orseck, P.A. and informed him of Mr. Murphy's consent in order that the determination could be conveyed to counsel for Defendants. Podhurst Orseck, P.A. is co-lead counsel for Plaintiffs and a firm on the PEC.

11. Later that morning, Mr. Murphy sent me an email regarding his flight reimbursement. In that email, he did not express any concern regarding his decision to voluntarily dismiss his claim or his legal representation.

12. On the morning on the following day, October 14, Mr. Murphy sent me another e-mail and, for the first time, expressed concerns regarding the phone call of the previous day and, more generally, his representation by TZ.

13. Mr. Murphy subsequently sent me a number of emails in which he made untrue and threatening allegations against me, Mr. Zavareei, and the PEC similar to those outlined in his "Pro-Se Correspondence."

14. As a result of this email correspondence from Mr. Murphy, it was determined that at least two counsel should participate in any call with Mr. Murphy (one from TZ and one lawyer from the PEC). On at least three occasions, Mr. Zavareei, John Gravante, and/or I attempted to schedule a telephone call with Mr. Murphy in order to discuss his concerns, but Mr. Murphy declined these requests.

15. Mr. Murphy has made some statements in his filing with the Court regarding his mental health, and appears to be suggesting that I gave some information about his mental health to Barbara Olk, Esq. This is false. I did not have any information about his mental health, and did not convey any information about his mental health to Ms. Olk.

16. In addition, contrary to Mr. Murphy's claims, I never told Mr. Murphy that a class had been certified in this case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated:    November 11, 2011

_____
Andrea Gold