**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTIONS

*Dee v. Bank of the West*
N.D. CA Case No. 4:10-cv-02736
S.D. Fla. Case No. 1:10-cv-22985-JLK

*Orallo v. Bank of the West*
C.D. CA Case No. 2:10-cv-2469
S.D. FL Case No. 1:10-cv-22931-JLK

### REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL DISCOVERY

Plaintiffs hereby file this reply in support of their motion to compel discovery from Defendant Bank of the West ("Bank"). This Court should reject the Bank's misguided attempt to re-cast Plaintiffs' motion as a dispute over the substance of individual discovery requests and the propriety of Defendant's objections. It is not. Indisputably, the Bank agreed several months ago to produce responsive documents to 64 of Plaintiffs' 78 requests in a prioritized manner. The only issue before the Court on this motion is the remarkably slow pace of the Bank's production to date – i.e., the Bank's failure to produce documents responsive to those requests, as it agreed, in a timely manner. The Bank's failure to devote the resources necessary to produce documents at a reasonable pace, and its failure to live by promises it made to Plaintiffs regarding its production, have left Plaintiffs with little choice but to seek the Court's help. Moreover, there is

no basis for the Court to entertain the Bank's belated (and blanket) assertion that complying with its obligation is overly burdensome. As more fully set forth below, the Bank's professed burden is of its own making. Thus, Plaintiffs' motion to compel the production of the responsive documents should be granted.

## I.     ARGUMENT

The Bank's Opposition lacks credibility. In filing a voluminous, repetitive Opposition wrought with extreme vernacular (*e.g.*, describing its "tireless" efforts at production), the Bank attempts to avoid the undisputable reality that necessitated the present motion-- that in the six months following its receipt of Plaintiffs' document requests, and just one month before Plaintiffs' class certification motion is due, the Bank has produced only 6,534 documents. Even by its own admissions, the Bank's production to date represents just a fraction of the responsive documents in its possession. The backdrop of the Bank's insufficient production is framed by the context of this litigation. Plaintiffs' counsel have served on Bank of the West essentially the exact same discovery (already thoroughly vetted by this Court) served on each of the other defendant banks in the MDL. In response to such requests, other banks produced several hundred thousand, and in some cases millions, of pages of responsive documents. Bank of the West has simply failed to act in good faith in responding to discovery. By way of example, included in the Bank's "tireless" efforts to review and produce documents, is the 10-week period from August 6th to October 13th, where the Bank managed to produce only ***73 documents***. *See* Opposition, p. 6. This is simply unacceptable given the pending deadline of December 20th for Plaintiffs to file their Motion for Class Certification.

Remarkably, the Bank attributes its small document production to date not on a lack of relevant, responsive documents in its possession – the Bank itself claims that potentially

2

thousands of boxes of additional responsive documents exist – but on its misguided argument that *Plaintiffs* have prevented the Bank from making substantive and timely productions because Plaintiffs haven't explained to the Bank how to more efficiently gather its ESI from the Bank's own computer servers.  The Bank essentially argues that the reason for its production shortcomings is because it has too many documents to produce. This is nonsense.  This Court should not entertain the Bank's attempt to blame Plaintiffs for the Bank's failure to meet its discovery obligations and its belated (blanket) assertion that complying with its obligation is overly burdensome; nor does its purported burden in any way excuse its failure to produce a meaningful quantity of its total production.

As more fully set forth herein, the Bank's professed burden is of its own making. The Bank selected its own ESI custodians. The Bank agreed to the list of search terms used by every other defendant in this MDL litigation.  Plaintiffs attempted to assist the Bank in reducing its burden by offering to permit the Bank to prioritize its production.  Plaintiffs' proposal was provided to the Bank on September 19, 2011, and agreed to shortly thereafter.  ***It is undisputed that the Bank agreed to this prioritization.*** It is disingenuous for the Bank to now blame Plaintiffs for its shortcomings. The Bank obviously did not commit enough resources to follow through with its promise to Plaintiffs.  Plaintiffs should not bear the consequence of the Bank's malfeasance.

**A.  Counsel for Plaintiffs have Complied with Local Rule 26.1.H.2.**

Realizing that its discovery efforts to date are objectively insufficient, the Bank mischaracterizes the parties' dispute in an effort to contend that Plaintiffs have subverted Local Rule 26.1.H.2.  However, this is plainly not the sort of motion to compel where the Court is

3

called upon by the parties to evaluate the propriety of the parties' requests and substantive objections.

Here, the Bank already unequivocally *agreed* to provide documents responsive to Plaintiffs' Requests for Production.[1] At issue in the instant motion is the Bank's complete failure to timely produce the responsive documents it agreed to produce for these Requests. Plaintiff readily concedes that Requests Nos. 40, 44, 46-47, 49, 58-61, 63, 67, 69 and 76-77 are not at issue in this motion.[2] Plaintiffs simply need the documents from the Requests the Bank agreed to provide. There is no dispute over whether the documents should be produced or the propriety of the Bank withholding documents subject to its objections, only that the Bank has not lived up to its agreement to timely provide them.[3] A complete recitation of the Requests at issue and the Bank's responses is not required in the instances where a party either fails to respond to the discovery sought (as is the case here) or asserts general or blanket objections to the discovery requests. *See* Local Rule 26.1.H.2.

The Bank contends that its efforts to date in producing a couple thousand documents do not amount to a "failure to respond" under the Local Rule. The Court should not entertain this transparent effort to create a hyper-technical violation of the rule. The Bank admits in its Opposition that it has not provided a single page of paper responsive to forty-eight (48) of

---

[1] *See,* Mtn. to Compel; Exhibit "B" Requests and Responses Nos. 1-39, 41-43, 45, 48, 50-57, 62, 64-66, 68, 70-75, and 78. Oppn. at p. 6.

[2] Despite its contention to the contrary, Bank of the West agreed to provide all non-privileged responsive documents in response to Requests for Production Nos. 31 and 53. *See* Mtn. Exhibit, "B", Nos. 31 and 53.

[3] Nonetheless, in their opening motion, Plaintiffs submitted as an exhibit, each of the requests at issue, followed by the Bank's complete responses verbatim. *See*, Mtn. to Compel; Exhibit "B". As demonstrated by its responses, the Bank repeatedly agreed to produce non-privileged responsive documents. *See, e.g.*, Mtn. to Compel; Exhibit "B" RFP Response No. 3 ("The Bank will produce copies of those non-privileged documents…").

4

Plaintiffs' Requests.[4] And only upon the filing of its Opposition, did Plaintiffs learn for the first time the Bank supposedly intended for its initial 6,534 document production to have *satisfied* the Bank's production obligations for documents responsive to the remaining Requests at issue, Requests for Production, Nos. 1-8, 32-33 and 55. Interestingly, this representation is made despite the Bank's competing contention that the equivalent of 130,000 boxes of potentially relevant documents *remains to be reviewed*, and the Bank has not completed the email production for *any* of the ESI custodians it identified, including the six "Key Custodians". *See* Oppn. at p.11.[5] Indeed, the Bank's own Opposition papers underscore Plaintiffs' contention; the Bank has failed to timely respond to numerous discovery requests and has not produced the documents it agreed to produce.

### B. Plaintiffs' Counsel Met Their Obligations Under Local Rule 7.1.A.3.

Plaintiffs are cognizant of the need to cooperate with opposing counsel in an effort to avoid burdening the Court with discovery matters. Nevertheless, the overriding purpose of the Federal Rules of Civil Procedure is "to secure the just, speedy, and inexpensive determination of every action." *See In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985). Despite the Bank's assertions to the contrary, Plaintiffs have conferred with defense counsel regarding these discovery responses at every turn, as evidenced by their record of correspondence (*See* Motion, Exhibits C through I), and unfortunately reached the point where further discussions would not be productive and, in fact, would frustrate the overriding purpose of the Federal Rules.

---

[4] The Bank claims it has produced documents responsive to only a handful of Plaintiffs' requests: "[T]he Bank already has produced documents responsive to Requests 1-8, 32-33 and 55". *See* Oppn. p. 6. It claims it does not have documents responsive to Request Nos. 52, and 74-75. *Id*. Even assuming these are accurate statements, that leaves 48 unanswered requests.

[5] While only indirectly related to this motion, Plaintiffs note that it is unclear how the Bank can claim to have provided all documents responsive to certain requests when, by its own admission, the Bank has large quantities of potentially relevant documents that it has not yet started to review.

### 1. Bank of the West Complains of a Burden that it Created.

Absent from the Bank's Opposition is any assertion that the information Plaintiffs seek is unwarranted or improper. Rather, the Bank essentially argues that in acquiring the information it agreed to produce, it has apparently cast its net too broadly and now seeks relief from its own self-created burden. The very steps it now suggests to remedy its self-made difficulties could have easily been accomplished at the onset of this process. However, since the Bank failed to take the appropriate action at the appropriate time, it now seeks to benefit from the current situation. The Court should not allow such gamesmanship.

The Bank initially attributes its oversized production to Plaintiffs' insistence upon the use of "overly-broad" search criteria. This is ridiculous. The Bank proposed the search terms to Plaintiffs, and such terms were identical to the list of search terms used in several other cases in the MDL. *See* Opposition at p. 9 ("The Bank used EnCase software to search the electronic data of the 134 custodians identified…***using the search terms and date range applied in the First Tranche cases***.") (emphasis added). Similarly, the Bank identified the ESI custodians that it felt would have responsive and relevant information. *Id.* The Bank asked Plaintiffs for their help in prioritizing the production, and Plaintiffs responded with a proposal on September 19, 2011. *See* Motion, Exhibit "E", p. 2. It called for the Bank to first produce the files for the six individuals the Bank identified in its interrogatory responses, the "Key Custodians," followed by the files of any noticed deponent and then to focus on seven (7) prioritized categories of documents related to various aspects of Plaintiffs' requests. The Bank confirmed its acceptance on October 12, 2011. *See* Motion, Exhibit "G".

The problem here is not in the search terms or prioritization the parties agreed to, but rather is the manner in which the Bank has apparently culled its ESI production. In fact, the

6

Bank admits that its difficulties are attributed to the technology it employs to manage its servers; and similarly to its own collection process – a combination which it *claims* has left it without the ability to search for documents generated or updated by its ESI custodians (*i.e.* Bank employees). There are several problems with the Bank's story. Even assuming the Bank cannot truly identify the authors of any documents maintained on its servers[6] (an extraordinary representation, unique to Bank of the West in this MDL), it had an obligation to raise this concern with Plaintiffs at the outset and certainly *prior* to the filing of Plaintiffs' motion, not for the first time in its Opposition. Moreover, such a representation decries its proclamations of good faith because there would be no purpose in proposing ESI custodians in the first place if they have no bearing on the Bank's ability to search for relevant documents on its servers. The Bank claims it was "forced to identify and pull back every document containing a search term that was located on any shared drive to which an identified custodian had access." *See* Opposition at p. 10. That was an obligation it placed on itself, not one imposed by Plaintiffs. The Bank cannot blame Plaintiffs for its own inability to identify who the authors, contributors and recipients of documents are on its own systems. As a result of the Bank's problematic processes, it concedes that it "undoubtedly has collected hundreds of thousands of documents that were not prepared, sent to or ever seen by individuals in any way involved in the underlying facts that led to this litigation." *Id.* However, this is simply not a credible excuse for the Bank's production of only a limited number of documents to date.

The Bank also improperly attempts to use the size of its potential production to justify its failure to run appropriate ESI searches. But the Bank has not undertaken the effort to compile

---

[6] The Bank's own Opposition contradicts its representation that it does not have the ability to self-limit or identify documents on a per-custodian basis as contemplated by the parties. For example, despite its competing representation that such individual searches are impossible, the Bank agreed to produce documents from the six "Key Custodians" in advance of the next F.R.C.P. Rule 30(b)(6) deposition.. *See* Opposition at p. 16.

7

the data in native format, a step that is paramount to performing the ESI searches that would necessitate an accurate description of the size or number of potentially responsive documents. Tellingly, were the Bank forced to do what it should have done months ago, it suggests that it would be able to compile the relevant data and facilitate its conversion into a searchable format in sixteen weeks. *See* Opposition at p. 20. It also suggests that it could then run electronic searches, but only in the interest of identifying privileged documents. *Id.* These representations make it clear that had the Bank discussed the purported limitations of its systems in good faith and at the appropriate time (*i.e.*, soon after receiving Plaintiffs' requests), a reasonable solution could have been addressed months ago.

Finally, the Bank's claim that Plaintiffs have hindered their acquisition of relevant data by refusing to limit the universe of responsive "file extensions[7]" is wholly inaccurate. The Bank requested that Plaintiffs pull back on six file extensions; Plaintiffs agreed to some and requested the Bank to confirm that the remaining extensions were not "text" files, or files where responsive documents would be found. Plaintiffs are still waiting for some confirmations from the Bank. *See* Motion, Exhibit, "I", p. 4 ("The Bank currently is confirming whether such files are strictly related to personal user files and will provide Plaintiffs the requested declaration if and when the confirmation is made.") After asking Plaintiffs to reconsider only a handful of file extension formats in the initial draft of the proposed ESI protocol, the Bank suggested on ***November 3, 2011***, roughly three months after the parties initially exchanged a proposed protocol, that it required an exclusion of ***several hundred additional file extensions***. The Court should not reward such blatant gamesmanship.

---

[7] A filename extension is a suffix (separated from the actual name of a file by a dot) to the name of a computer file applied to indicate the encoding (file format) of its contents or usage. Filename extensions can be considered a type of metadata. They are commonly used to imply information about the way data might be stored in the file. In the process of gathering ESI, the goal in limiting the file extensions to be searched should be to eliminate those extensions which do not contain useful or responsive data.

8

**2. The Bank's Self Created Claims Of Burden Do Not Excuse Its Underwhelming Efforts At Production.**

The Bank does not dispute that it has the ability to review the individual ESI custodian's *email* files (email files and their storage are presumably different from the custodian generated documents stored on its servers). *See* Opposition, at p. 11 ("Thus far, the Bank has reviewed 6.1 gigabytes of the emails…for the Key Custodians."). Yet, the Bank offers no excuse as to why it has failed to conclude its review and production of even a single ESI custodian's email files despite Plaintiffs having identified the "Key Custodians" and requested their production as the "highest priority" on September 19, 2011. *Id.* The Bank's failure to complete the email production for even a single custodian is compelling evidence that it has not acted in good faith to ensure that it appropriately staffed and resourced this review and production.

## II.   CONCLUSION

Plaintiffs respectfully urge the Court to enter an order compelling a full and timely production of responsive documents.

Dated: November 16, 2011.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No. 516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL 33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*


| | |
|---|---|
| /s/ E. Adam Webb<br>E. Adam Webb, Esquire<br>Georgia Bar No. 743910<br>Adam@WebbLLC.com<br>Matthew C. Klase, Esquire<br>Georgia Bar No. 141903<br>Matt@WebbLLC.com<br>G. Franklin Lemond, Jr., Esquire<br>Georgia Bar No. 141315<br>FLemond@WebbLLC.com<br>WEBB, KLASE & LEMOND, L.L.C.<br>1900 The Exchange, S.E.<br>Suite 480<br>Atlanta, GA 30339<br>Tel: 770-444-9325<br>Fax: 770-444-0271 | /s/ Michael W. Sobol<br>Michael W. Sobol, Esquire<br>California Bar No. 194857<br>msobol@lchb.com<br>Roger N. Heller, Esquire<br>California Bar No. 215348<br>rheller@lchb.com<br>Jordan Elias, Esquire<br>California Bar No. 228731<br>jelias@lchb.com<br>LIEFF CABRASER HEIMANN &<br>  BERNSTEIN L.L.P.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111<br>Tel: 415-956-1000<br>Fax: 415-956-1008 |

11

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596