# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 1:09-MD-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT  LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Lewis v. Sovereign Bank*
S.D. FL Case No. 1:11-cv-22022-JLK

**MOTION OF DEFENDANT SOVEREIGN BANK TO DISMISS THE
FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT
AND CORRECTED INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    BACKGROUND ................................................................................................. 2

    A.    The Parties and their Agreement.................................................................. 2

    B.    Plaintiff's Incurring of Overdraft Fees ...................................................... 3

    C.    Procedural History ...................................................................................... 3

III.    ARGUMENT ...................................................................................................... 4

    A.    Dismissal Under Rule 12(b)(6) .................................................................. 4

    B.    Plaintiff's Claims Are Preempted .............................................................. 5

        1.    Preemption Generally ..................................................................... 5

        2.    Preemption for Federal Savings Banks And The Non-Retroactivity of Dodd-Frank.............................................................. 6

        3.    The OTS Claimed Field Preemption Rather Than The Conflict Preemption Claimed By The OCC ................................................. 7

        4.    Plaintiff's Claims Are Field Preempted........................................... 9

        5.    Plaintiff's Claims Are Not Excepted From Field Preemption Under 12 U.S.C. § 557.13 Because That Section Is Never Reached............................................................................................. 12

    C.    Plaintiff's Claims Fail Under Maryland Law ........................................... 13

        1.    *Hassler* Is Directly On-Point ....................................................... 13

        2.    Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing ................................................................................... 15

        3.    Unconscionability ......................................................................... 16

        4.    Unjust Enrichment ........................................................................ 17

        5.    Conversion .................................................................................... 18

        6.    Violation of the MCPA ................................................................. 18

IV.    CONCLUSION.................................................................................................. 20

## I.      **INTRODUCTION**

Defendant, Sovereign Bank ("Sovereign"), hereby moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the First Consolidated Amended Class Action Complaint ("CAC") filed against it in this Multi-District Litigation ("MDL") proceeding.[1]  Plaintiff's claims are preempted by federal banking law and fail to state claims under Maryland law.  Accordingly, they should be dismissed.

Sovereign recognizes that the Court has previously addressed preemption in these MDL proceedings.  However, ***the Court has not previously considered Sovereign's argument here***.  Sovereign is the first defendant that has been chartered as a federal savings bank and therefore regulated by the Office of Thrift Supervision ("OTS") under the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*  All prior preemption defenses have been asserted by national banks pursuant to regulation by the Office of the Comptroller of the Currency ("OCC") under the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.*  The OTS claimed field preemption – a type of preemption not previously addressed by this Court –and under field preemption Plaintiff's claims are preempted.

Moreover, in addressing those claims, Sovereign relies on *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509 (D.N.J. 2009), *affirmed* 374 F. App'x 341 (3d Cir. 2010).  Sovereign is well aware the Court has heard argument on *Hassler* before and has decided not to follow it at the Rule 12(b)(6) phase.  *Hassler*, however, applies with unique force to this case because it addresses the ***same defendant, and hence the same operative contractual provisions*** as are present here.  As a result, the legal holding in *Hassler* is uniquely applicable as to Sovereign, even at this phase of the proceeding.

---

[1]     This corrected Memorandum is filed to correct a statement made in Sovereign's Memorandum filed earlier this date concerning the scope of prior MDL state law rulings, and to correct certain typographical errors.

II.     **BACKGROUND**[2]

    A.     **The Parties and their Agreement**

        During the operative period Sovereign was a federal savings bank.[3] (CAC ¶ 13.)  Plaintiff Diane Lewis is a citizen of Maryland and a current or former holder of a checking account with Sovereign.  (*Id.* at ¶¶ 12, 62.)

        Incident to opening her checking account, plaintiff entered into a Personal Deposit Account Agreement with Sovereign (the "Account Agreement").  (*Id.* at ¶ 31.) Among other things, the Account Agreement provided and disclosed Sovereign's policies and rights with respect to withdrawals and overdraft fees.  (*See* Account Agreement, pp. 4-5, 10) (attached to the CAC as Exh. A).  With respect to withdrawals, the Account Agreement provided:

> **We reserve the right to pay the withdrawals you make from your Account regardless of the method of withdrawal in any order we determine.  This includes withdrawals made at an ATM or by computer, [point-of-sale] purchases, checks, pre-authorized payments and by any other means we make available to you.  The order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day.  Generally, we post your payment transactions each business day in descending order, starting with the largest payment order that is presented for payment. This means, for example, that your $900 mortgage payment will be paid before the $100 purchase you made at the supermarket.  The order in which we post your transactions may affect whether you incur fees for insufficient or unavailable funds.**

(*Id.* at pp. 4-5) (bold in original).  With respect to overdraft fees, the Account Agreement provided:

---

[2]     Facts taken from the CAC are accepted as true for purposes of this motion only.

[3]     Following the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act on July 21, 2010, Sovereign applied to the applicable regulators to convert to a national bank charter.  This conversion has been approved but is not effective as of the filing of this motion.  However, the anticipated conversion has no impact on the present lawsuit.  *See* § III.B.2 *infra*.

> **If you write a check or other order or otherwise request a withdrawal from your Account, such as by using an ATM or making a purchase using a Visa Checkcard or ATM Card, for more money than you have available for withdrawal from your Account, we may either permit you to withdraw the funds by complying with the payment order or we may refuse to honor the payment order.  You may incur a fee for each payment order that is presented against your account when you do not have sufficient available funds.**

(*Id.* at p. 10) (bold in original).

### B.     Plaintiff's Incurring of Overdraft Fees

Plaintiff overdrew from her account on several occasions and incurred overdraft fees as a result.  (CAC ¶ 64.)  For instance, on April 26, 2010, plaintiff made ten withdrawals from her checking account using either a check or the debit card that Sovereign had issued to her in connection with the account.  (*Id.*)  Plaintiff's beginning account balance on that date was $309.41, and her ten withdrawals totaled $669.13.  (*Id.*) Consistent with the Account Agreement, Sovereign posted those withdrawals starting with the largest.  (*Id.*)  As a result of plaintiff withdrawing more funds than she had available, plaintiff incurred nine overdraft fees totaling $315.00.  (*Id.*)

### C.     Procedural History

On January 7, 2011, Plaintiff sued Sovereign in the United States District Court for the District of Maryland.  (DE 1 in 11-cv-00064 (D. Md.)).  On May 31, 2011, the MDL Panel ordered plaintiff's case transferred to this Court for adjudication as part of this MDL proceeding.  (DE 1544; DE 10 in 11-cv-00064 (D. Md.)).

On October 21, 2011, Plaintiff filed the CAC.  (DE 2027.)  On behalf of herself and a putative class, Plaintiff brings claims for breach of contract and the covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, and violation of Maryland's Consumer Protection Act ("MCPA"), MD. CODE ANN., COM. LAW § 13-101 *et seq.*  (*See* CAC ¶¶ 77-114.)  Plaintiff bases those claims on Sovereign's high-to-low ordering of withdrawals, its allegedly deficient disclosure of that practice, and its allowing of account holders to overdraw without warning and opportunity to abort.  (*See generally* CAC ¶¶ 1, 7.)  Plaintiff seeks damages and injunctive relief, including prospective injunctive relief.  (*Id.* at ¶¶ 1, 61.)

III.    **ARGUMENT**

           Sovereign is unique in this MDL in that it is the first OTS-chartered bank. That is significant because OTS regulations provided different preemption standards than those adopted by the OCC for national banks under the NBA. Because of the different preemption standards at issue, the Court's previous decision in *In re Checking Account Overdraft Litigation* ("*Omnibus Opinion*"), 694 F. Supp. 2d 1302, 1310-14 (S.D. Fla. 2010), and its subsequent preemption decisions, ***all of which considered preemption relative to OCC-chartered banks***, do not apply.[4]

           Sovereign is also unique in its ability to rely on *Hassler* as persuasive authority, for the simple reason that Sovereign was the defendant in that case. The *Hassler* district court and court of appeals considered the same conduct and operative contractual provisions as are at issue here. Thus, Sovereign does not cite *Hassler* as merely an example of courts rejecting similar claims based on similar disclosures and high-to-low ordering practices. Rather, Sovereign cites *Hassler* because courts have, in essence, already rejected the very claims which Plaintiff asserts against Sovereign here.

A.     **Dismissal Under Rule 12(b)(6)**

           A court should dismiss a complaint that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A complaint fails to state a claim if the allegations in it do not "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Stated another way, to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). In reviewing

---

[4]     That is not to say that Sovereign disagrees with the position taken by national banks in the MDL that have claimed preemption under the NBA and OCC regulations founded on conflict preemption, particularly under the authority of *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir. 2011). In fact, Sovereign respectfully submits that OCC conflict preemption would be sufficient to preempt Plaintiff's claims here. But that question does not arise because it is indisputable that the grounds the Court relied upon in rejecting the preemption defenses of national banks do not and cannot exist when dealing with OTS-chartered banks.

the complaint for sufficiency, a court must disregard "legal conclusions" and "recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.*

    **B.**    **Plaintiff's Claims Are Preempted**

        **1.**    **Preemption Generally**

There are "three types of preemption:  express preemption, field preemption, and conflict preemption." *Baptista*, 640 F.3d at 1197.  Express preemption occurs where federal law expressly so provides. *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604-05 (1991).  Field preemption occurs where federal law implies an intent "to supersede state law in a given area . . . ." *Id.*  Conflict preemption occurs where federal and state law "actually conflict," whether because state law makes compliance with federal law impossible or because state law "stands as an obstacle to the accomplishment and execution of" federal purposes. *Id.* at 605 (internal quotation marks omitted).  Regulations, not just statutes, may preempt state law. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes.").

While there is generally a presumption against preemption, s*ee Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947), courts abandon that presumption where the area of law at issue has "a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000).  Banking is such an area. *See, e.g., Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32-33 (1996) (discussing the long history of federal bank legislation and its effect on state law); *Fidelity*, 458 U.S. at 153 (noting decades of pervasive federal oversight of federal savings banks); *Bank of America v. City & County of San Francisco,* 309 F.3d 551, 558 (9th Cir. 2002) (citing *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 325-26 (1819), as illustrating the federal government's long-standing involvement in banking and holding that the presumption against preemption did not apply to federal banking laws).  Indeed, in the case of the HOLA, the Supreme Court has observed that the predecessor to the OTS "promulgated regulations governing the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." *Fidelity*, 458 U.S. at 144 (internal quotation marks omitted).

    2.       **Preemption for Federal Savings Banks And The Non-Retroactivity of Dodd-Frank**

        Historically, federal savings banks were chartered under the HOLA, which was administered by the OTS.  *See Fidelity*, 458 U.S. at 144 & n. 1; *Bank of America*, 309 F.3d at 559; 12 U.S.C. § 1464 (2006).  This means that federal savings banks have historically been subject to a different regulatory regime than national banks chartered under the NBA and overseen by the OCC.  *See, e.g., Aguayo v. U.S. Bank*, 653 F.3d 912, 921 (9th Cir. 2011) (describing differences in OCC and OTS regulatory structures).

        Congress's passage of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") on July 21, 2010, changed the OTS and OCC structures.  *See* Pub. L. No. 111-203, 124 Stat. 1376 (2010).  Among other things, Dodd-Frank transferred oversight responsibility for federal savings banks to the OCC and replaced federal savings banks' field preemption with conflict preemption.  *See* 12 U.S.C. § 1462a (providing for transfer of certain powers from OTS to other federal banking agencies) and § 1465 (providing that, going forward, principles of conflict preemption will apply to federal savings banks).  However, ***Dodd-Frank expressly provides that OTS regulations still apply to any contract predating Dodd-Frank's enactment***.[5]  12 U.S.C. § 5553.

---

[5]      Dodd-Frank provides:

> This title, and regulations, orders, guidance, and interpretations prescribed, issued, or established by the Bureau, shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law ***to any contract entered into on or before the date of enactment of this Act***, by national banks, Federal savings associations, or subsidiaries thereof that are regulated and supervised by the Comptroller of the Currency or the Director of the Office of Thrift Supervision, respectively.

12 U.S.C. § 5553 (emphasis added).

Plaintiff's Account Agreement with Sovereign predates Dodd-Frank's enactment.[6]  Thus, OTS field preemption applies here.

### 3. The OTS Claimed Field Preemption Rather Than The Conflict Preemption Claimed By The OCC

In its *Omnibus Opinion* the Court addressed conflict preemption because that is the type of preemption applicable to national banks.  *See* 694 F. Supp. 2d at 1310.

By contrast, the OTS occupied the entire fields of "the deposit and lending-related practices of federal savings banks."  *Bank of America*, 309 F.3d at 560; *see also Aguayo*, 653 F.3d at 921-22 (describing OTS preemption as "full field preemption").  Specifically, the governing OTS regulations provided:

> (a)     Under sections 4(a), 5(a), and 5(b) of the HOLA, 12 U.S.C. 1463(a), 1464(a), and 1464(b), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when appropriate to:
>
> > (1)     Facilitate the safe and sound operations of federal savings associations;
> >
> > (2)     Enable federal savings associations to operate according to the best thrift institutions practices in the United States; or
> >
> > (3)     Further other purposes of HOLA.
>
> (b)     To further these purposes without undue regulatory duplication and burden, ***OTS hereby occupies the entire field of federal savings associations' deposit-related regulations.***  OTS intends to give federal savings associations maximum flexibility to exercise deposit-related powers according to a uniform federal scheme of regulation.  Federal savings associations may exercise deposit-related powers as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect deposit activities, except to

---

[6]     While the CAC does not specify the date on which Plaintiff entered into the Account Agreement with Sovereign, it refers to withdrawals made on April 26, 2010 (CAC ¶ 65), so clearly Plaintiff had entered into the Account Agreement on some date prior thereto, which predates the July 21, 2010 enactment of Dodd-Frank.  Moreover, the representative Account Agreement attached to the CAC is from 2008.  (*Id*. at ¶ 31.)

the extent provided in Sec. 557.13.  **State law includes any statute, regulation, ruling, order, or judicial decision.**

12 C.F.R. § 557.11 (emphasis added).

As noted above, Sovereign respectfully submits that, even under the conflict preemption pursuant to OCC regulations, as explicated by the Eleventh Circuit in *Baptista*, the overdraft fee claims presented in these MDL cases are preempted.  But the greater – indeed absolute – sweep of the OTS's field preemption simply removes all doubt about the question.  In analyzing whether claims against a national bank arising from automobile lending practices would be preempted, the Ninth Circuit recently explored at length the differences between conflict and field preemption:

> The OTS, unlike the OCC, has explicit full field preemption. *See* 12 C.F.R. § 560.2(a) ("OTS hereby occupies the entire field of lending regulation for federal savings associations."). Field preemption, described as "the pinnacle of federal preemption," *Smith v. BAC Home Loans Servicing, LP,* 769 F. Supp. 2d 1033, 1039 (S.D.W.Va.2011), is a preemption approach "so pervasive that Congress must have intended to leave *no room* for the states to supplement it." *City of Charleston, S.C. v. A Fisherman's Best, Inc.,* 310 F.3d 155, 169 (4th Cir.2002) (emphasis added); *see also Conference of Fed. Sav. and Loan Ass'ns v. Stein,* 604 F.2d 1256, 1260 (9th Cir.1979) (citing *Ray v. Atl. Richfield Co.,* 435 U.S. 151, 157, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978)) ("[I]mplicit preemption can be found where the scheme of federal regulation is so pervasive as to make reasonable the inference that there is no room for state action."). . . .

*Aguayo,* 653 F.3d at 921-22 (brackets and emphasis in original).

In its *Omnibus Opinion*, this Court cited *Gutierrez v. Wells Fargo Bank, N.A.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009), as an authority rejecting a preemption defense in the precise context of this case, overdraft fees.  *See* 694 F. Supp. 2d at 1312. Critically, the *Gutierrez* court had, in any earlier decision, already considered the differences between OTS and OCC preemption and declined to follow a Ninth Circuit decision in favor of OTS preemption because of those distinctions:

> [T]he regulations and rules issued by the OTS are dissimilar to [the OCC regulations applicable] here.  The language employed by the OCC in its regulations and interpretive letters evidences that application of a more

8

> narrow preemption analysis is more appropriate than that
> applied in *Silvas [v. E*Trade Mortg. Corp.*, 514 F.3d 1001
> (9th Cir. 2008)] (where the OTS had specifically defined a
> proper preemption test to be employed). . . .

*Gutierrez*, 2008 WL 4279550 at *12 (N.D. Cal. Sept. 11, 2008).  *See also Davis  v. Chase
Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1082-84 & n. 4 (C.D. Cal. 2009) (noting the
separate regulatory regimes of the OTS and OCC and characterizing preemption under
OTS regulations as "more sweeping").

### 4.    Plaintiff's Claims Are Field Preempted

As established above, OTS "occup[ies] the entire field of federal savings
associations' deposit-related regulations."  12 C.F.R. § 557.11(b).  The OTS regulations
provide several "examples of preempted state laws affecting deposits[.]"  *Id.* § 557.12.
Among those are "state laws that purport to impose requirements governing," among
other things, "Checking accounts," "Disclosure requirements," and "Service charges and
fees."  *Id.* § 557.12(b), (c), (f).

Here, Plaintiff complains of high-to-low processing of withdrawals from
her checking account, disclosures relating thereto, and failure to provide warnings and an
opportunity to abort transactions.  (CAC ¶¶ 37-45, 50-52.)  Those complaints obviously
touch on Sovereign's practices with respect to checking accounts, disclosure
requirements, and service charges and fees, all of which are areas to which field
preemption under section 557.12 expressly applies.  Thus, on the plain language of the
OTS regulations, Plaintiff's claims are preempted.

Ample authority supports that conclusion.  In *In re Washington Mutual
Overdraft Protection Litigation* ("*Washington Mutual*"), 539 F. Supp. 2d 1136 (C.D. Cal.
2008), plaintiffs claimed that the defendant federal savings bank violated California's
Business & Professions Code § 17200 (a consumer protection statute of general
application prohibiting unfair or fraudulent business acts or practices) and was unjustly
enriched by the bank's overdraft practices.  The complaint alleged that the bank "engaged
in unfair and fraudulent business practices by 'intentionally fail[ing] to disclose to
Plaintiffs . . . that their withdrawals or debit card purchases would result in the overdraft
of their accounts,'" and from having inserted "an unconscionable provision in the
Account Disclosures by including the Overdraft Limit Feature 'without revealing to

consumers the applicability and high costs of this feature to ATM and debit card transactions at the time consumers accessed their accounts by means of an ATM and/or debit card.'" *Id*. at 1154 (alterations in original). The court held that these claims were preempted by HOLA and the OTS preemption regulations, explaining:

> Each of these state law claims therefore rests on allegations concerning how Defendant structures its checking accounts, its disclosure practices, and the reasonableness of its fees. As such, Plaintiffs' state law claims attempt to "impose [ ] requirements governing . . . Checking accounts . . . Disclosure requirements [and] Service Charges and fees." 12 C.F.R. § 557.12.

539 F. Supp. 2d at 1154 (alterations in original).

Similarly, in *Lopez v. Washington Mutual Bank, FA*, 302 F.3d 900 (9th Cir. 2002), the Ninth Circuit affirmed the district court's rejection of claims arising from the bank's "practice of using directly deposited Social Security and SSI benefits to cover overdrafts and overdraft fees." *Id.* at 902. The district court had concluded that all state law claims were preempted, including those for conversion and violation of § 17200, as well as for a violation of § 704.080, which exempted SSI benefits in a deposit account from enforcement action. In affirming the dismissal of the § 704.080 claim on preemption grounds,[7] the court explained:

> This state law . . . would impose requirements governing "checking accounts" because it would prohibit the use of certain deposits to the accounts to clear overdrafts and mandate the type of disclosures a bank must make regarding account and deposit transactions . . . . Finally, it would impose requirements governing "service charges and fees," because it would prohibit the bank from deducting overdraft fees from directly deposited benefits. By imposing requirements governing "checking accounts," "funds availability" and "service charges and fees," Section 704.080 falls within the specific categories of laws that are preempted under Section 557.12.

*Id.* at 907; *see also Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1006-07 (9th Cir. 2008) (holding that California UCL § 17200 Unfair Competition and UCL § 17500

---

[7]     Dismissal of the other claims was affirmed for failure to state a claim and so preemption was not reached as to those.

Unfair Advertising claims arising from loan practices and disclosures were preempted under parallel OTS regulations on field preemption of lending practices); *Boursiquot v. Citibank, F.S.B.*, 323 F. Supp. 2d 350, 354-56 (D. Conn. 2004) (holding that a Connecticut Unfair Trade Practices Act claim complaining of loan fees and disclosures was preempted under parallel OTS regulations on field preemption of lending practices).[8]

This Court, in its *Omnibus Opinion*, distinguished between claims challenging a bank's ability to charge overdraft fees at all (which the Court intimated would be preempted), *see* 694 F. Supp. 2d at 1313, versus claims attacking a bank's methods in disclosing and calculating overdraft fees.  As seen from *Washington Mutual*, which is a case involving overdraft fee-related disclosures and practices, the other cited authorities, and the plain meaning of the regulations themselves, such distinction is simply immaterial for OTS field preemption.

In fact, we need go no further than the *Omnibus Opinion* itself to see that field preemption compels the dismissal of Plaintiff's claims.  This Court concluded, upon examination of the OCC regulations, that "federal regulation in this field is not so pervasive that we can reasonably infer that Congress left no room for the states to supplement it."  694 F. Supp. 2d at 1313.  But, as explained in *Aguayo*, leaving no room for state supplementation is ***precisely*** what field preemption does.  653 F.3d at 921.  Accordingly, the *Omnibus Opinion* actually presaged the need for dismissal here.

Finally, Plaintiff's reliance on common law and statutes of general application instead of bank regulatory statutes does not change the result.  Field preemption under OTS regulations expressly applies to any state "statute, regulation, ***ruling, order or judicial decision***."  12 C.F.R. § 557.11 (emphasis added).  *See also, e.g., Washington Mutual*, 539 F. Supp. 2d at 1154 (holding that § 557.12 preempts laws of

---

[8]     The OTS promulgated regulations asserting field preemption over both deposit-related and lending-related activities.  *See* 12 C.F.R. §§ 557.11, 557.12, & 557.13 (preemption of deposit-related activities) and § 560.2 (preemption of lending-related activities).  Because those two sets of preemption regulations are "indistinguishable in their operative language and in their structure, and are both issued by the same agency," cases addressing the preemptive scope of lending-related regulations are persuasive with regard to the preemptive scope of deposit-related regulations.  *Washington Mutual*, 539 F. Supp. 2d at 1152 n.5.

general application); *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1273 (C.D. Cal. 2008) (same).  Thus, while this Court held that generally applicable common law doctrines and statutes were not preempted under the NBA/OCC, *see Omnibus Opinion*, 694 F. Supp. 2d at 1311, that holding is not apposite here because the OTS expressly provided that common law claims and laws of general application are preempted under OTS regulations.

**5.     Plaintiff's Claims Are Not Excepted From Field Preemption Under 12 U.S.C. § 557.13 Because That Section Is Never Reached**

A key focus of this Court's preemption analysis for national banks involved the section of the OCC's preemption rule stating that contract, tort and, criminal laws are not preempted if they "only incidentally affect" the deposit-related activities otherwise subject to preemption.  *Omnibus Opinion*, 694 F. Supp. 2d at 1313 (citing 12 C.F.R. § 7.4007(c)).  While the OTS regulations contain a section, 12 C.F.R. § 557.13, that looks similar to the OCC rule in that it refers to contract, tort, and criminal laws that only incidentally affect deposit-related activities, there is a fundamental distinction.  The OTS regulation itself establishes that this section ***must not even be considered*** where, as here, the matters complained of fall within the ambit of the activities described in the preempting language of section 557.12.

The OTS said this quite explicitly in promulgating its preemption rule:

> To determine whether a state law is preempted, the first step is to ascertain whether the law in question is of the type listed in § 557.12 as an example of preempted law.  ***If it is, the analysis ends there; the law is preempted***.

62 Fed. Reg. 55762 (Oct. 22, 1997) (emphasis added).  *See Aguayo*, 653 F.3d at 922 (citing the quoted OTS rule and explaining that OTS preemption analysis "stringently limit[s] a court's ability to review preemption questions by foreclosing consideration of [§ 557.13]" where a claim fits within the scope of § 557.12); *Washington Mutual*, 539 F. Supp. 2d at 1154 (holding state law claims preempted under §  557.12 without reaching §  557.13); *Silvas*, 514 F.3d at 1006-07 ("We do not reach the question of whether the law fits within the confines of paragraph (c) [OTS lending preemption provision paralleling § 557.13] because Appellants' claims are based on types of laws listed in

paragraph (b) of § 560.2 [OTS lending preemption provision paralleling § 557.12], specifically (b)(9) and (b)(5).").

Here, as noted above, Plaintiff's claims fall squarely within the scope of section 557.12.  The inquiry thus cannot proceed to section 557.13.  Rather, as the OTS mandated, "the analysis ends there; the law is preempted."  62 Fed. Reg. 55762.  Accordingly, Plaintiff's claims must all be dismissed, with prejudice, as preempted by the HOLA, and the OTS regulations promulgated thereunder.

### C.    **Plaintiff's Claims Fail Under Maryland Law**

#### 1.    *Hassler* **Is Directly On-Point**

In addition to being preempted, Plaintiff's claims fail under Maryland law. This is not the first case to adjudicate claims brought by an account holder complaining of Sovereign's overdraft fee practices and account disclosures.  Such claims were considered and rejected on a motion to dismiss in *Hassler*, *supra*, 644 F. Supp 2d 509, and the dismissal was affirmed by the Third Circuit, 374 F. App'x 341.  The Account Agreement scrutinized in *Hassler* was **the same one at issue here**.  Accordingly, in terms of the clarity of the disclosures and the impact of those disclosures on state law claims, the *Hassler* opinions are, at the least, highly persuasive.

Addressing *Hassler's* claim that Sovereign's high-to-low ordering and related disclosures were unconscionable, deceptive, and/or fraudulent in violation of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*, the Third Circuit explained:

> This claim was properly dismissed. ***The Account Agreement explicitly provided for the reordering of charges of which Hassler complains.*** In Section A.7, Sovereign "reserve[d] the right to pay the withdrawals ... regardless of the method of withdrawal in any order [it] determine[d]." ***Sovereign clarified what this meant by repeating the same principle in the same paragraph using different words***: "The order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day." Sovereign specifically stated that "[g]enerally, [it] post[s] ... payment transactions each business day in descending order, starting with the largest payment order that is presented for payment." ***It also gave***

13

*an example*: "This means, for example, that your $900 mortgage payment will be paid before the $100 purchase you made at the supermarket. **Sovereign even warned Hassler that "[t]he order in which we post your transactions may affect whether you incur fees for insufficient or unavailable funds." The Account Agreement also makes clear that attempting to charge an account beyond its available balance will not necessarily result in the charge being denied.** Rather, Sovereign retained the right either to permit or refuse to honor the charge in Section A.13.

Hassler's claim that he and others depended on Sovereign to ensure that charges were posted to their accounts in the chronological order in which the customer incurred them is undercut by Sovereign's explicit reservation of the right to post charges in any order it determines and its notification that it generally posts charges in descending order of amount.

*Hassler*, 374 F. App'x at 344 (emphasis added).[9]

Whereas previous MDL plaintiffs have argued that Sovereign's disclosures differ materially from those presented in actions against other banks in which

---

[9]   In opposing *Hassler*, previous MDL plaintiffs have argued that the Third Circuit's affirmance was issued as a non-precedential decision and should therefore be disregarded. This is incorrect. A nonprecedential decision can, and should be, cited as persuasive when it is the most on-point appellate authority. Among district courts of the Third Circuit that have spoken to this issue, *see, e.g.*, *Marracco v. Kuder*, No. 08-713, 2009 U.S. Dist. LEXIS 6757, at *8-10 (D.N.J. Jan. 30, 2009) (stating that non-precedential opinions ("NPOs") are "widely used" and although a NPO does not have precedential authority, it is still "a Third Circuit opinion and, therefore, carries considerable persuasive authority"); *Allen v. Mineral Fiber Specialists, Inc.*, No. 02-7213, 2004 WL 231293, at *12 (E.D. Pa. Jan. 30, 2004) ("While not precedential, the Third Circuit's facts and findings in [a non-precedential opinion] present a persuasive parallel."). Plainly stated, a court of appeals does not render a non-precedential decision to be careless or cavalier with the disposition of the matter before it. Frequently the decision is non-precedential simply because it requires only the application of well-settled legal principles to a given set of facts.  Thus, in addressing why most of its decisions on a particular issue were non-precedential, the Third Circuit explained that this was "because our law in this area is settled, not because it is underdeveloped." *United States v. Minutoli*, 374 F.3d 236, 240 n.4 (3d Cir. 2004).

the Court has denied motions to dismiss,[10] such an argument obviously cannot be made here.  Because the Account Agreement was clear regarding Sovereign's high-to-low ordering and related account practices, and because Sovereign acted in conformity therewith, the factual basis for Plaintiff's claims, to borrow from *Hassler*, boils down to this:  "Sovereign re-ordered the charges, this resulted in overdraft fees, and this was unfair."  *Hassler*, 341 F. App'x at 345.  As discussed below, while Plaintiff's claims are presented under Maryland rather than New Jersey law as in *Hassler*, the result is the same:  those facts do not support any of her state law claims.

> **2.      Breach of Contract/Breach of the Covenant of Good Faith and Fair Dealing**

Maryland does not recognize a claim for breach of the covenant of good faith and fair dealing.  *Mount Vernon Properties, LLC v. Branch Banking & Trust Co.*, 907 A.2d 373, 381 (Md. App. 2006).  More fundamentally, while Plaintiff styles her good faith claim as one for breach of contract, a claim for breach of contract cannot be stated unless the complaint avers that specific terms of the contract were breached.  Maryland law does not recognize any "duty requiring affirmative steps beyond those required by the contract itself."  *Id.* (quoting *Swedish Civil Aviation Admin. v. Project Management Enterprises, Inc.*, 190 F. Supp. 2d 785, 794 (D. Md. 2002)).

Here, Plaintiff's allegations describe Sovereign processing debits and charging overdraft fees in accordance with the express language of the Account Agreement.  There is simply not one iota of an allegation that Sovereign took any action in any way inconsistent with the terms of the Account Agreement.  Nor could there be.  *See Hassler*, 644 F. Supp. 2d at 519 (noting that "[t]he Agreement permitted precisely this re-ordering and fee incurral to happen").  Moreover, the CAC implicitly acknowledges that Sovereign acted in accordance with these terms by its resort to concepts going beyond the actual terms of the contract, like "[b]ad faith may be overt or may consist of inaction, and fair dealing may require more than honesty."  (CAC ¶ 80.)

---

[10]     *See, e.g.,* Plaintiffs' Opposition to Defendant TD Bank, N.A.'s Motion to Dismiss And/Or For Judgment On The Pleadings [DE 749], at 4 (section heading) ("The Terms of the TD Bank Agreement Are Materially Different from the Terms of the Sovereign Bank Agreement at Issue in *Hassler*").

These are not facts but conclusions of law, and they are wrong conclusions of law. Plaintiff's breach of contract claim fails.

### 3.  Unconscionability

Assuming that unconscionability is even an affirmative cause of action under Maryland law, a contractual term will not be deemed unconscionable unless it is both procedurally and substantively so.  *See Freedman v. Comcast Corp.*, 988 A.2d 68, 85 (Md. App. 2010) (discussing unconscionability only as a defense to contract enforcement and stating that a contractual term will only be invalidated if it is both procedurally and substantively unconscionable).  To be procedurally unconscionable, the contractual provision must use "fine print" or "convoluted or unclear language" and have been agreed to as a result of "deception" or "one party's lack of meaningful choice."  *Id.* (internal quotation marks omitted).  To be substantively unconscionable, the contractual provision must be "unreasonably and unexpectedly harsh."  *Id.* at 85-86 (internal quotation marks omitted).  The mere fact that imbalance exists between the parties, or the fact that the contractual term is part of an adhesion contract, does not make a contract unconscionable.  *Id.*

Here, the operative provisions in the Account Agreement were stated plainly and in bold print.  Indeed, as the district court in *Hassler* stated, "***it would be difficult for Sovereign to have disclosed its practice[s] . . . in clearer or more understandable terms***."  *Hassler*, 644 F. Supp. 2d at 515.  Accordingly, the test for procedural unconscionability fails, and thus so does Plaintiff's unconscionability claim.

The substantive unconscionability prong, even if it were relevant given that there is no procedural unconscionability, likewise fails.  Among other reasons is that the Uniform Commercial Code expressly authorizes high-to-low processing.  Sovereign acknowledges that numerous MDL defendants have previously made this argument and that this Court has not accepted it.  Sovereign therefore sets out this argument in abbreviated form in the margin[11] but reiterates that, regardless of substantive unconscionability, this claim fails at the outset for lack of procedural unconscionability.

---

[11]   The Uniform Commercial Code ("UCC") authorizes banks to process items in any order: "[s]ubject to subsection (a), items may be accepted, paid, certified or

(continued...)

### 4.    <u>Unjust Enrichment</u>

Under Maryland law, unjust enrichment claims cannot "arise where a contract exists between the parties concerning the same subject matter." *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000).  Moreover, "enrichment [is] not unjust [where] it [is] in strict compliance with the terms of [the] contract." *Id.* at 610.

Here, a contract – the Account Agreement – plainly exists, because it is pled and a copy is attached.  (CAC ¶ 31.)  The Account Agreement covers overdraft fees.  Thus, Plaintiff's unjust enrichment claim concerns the same subject matter as the Account Agreement, and no unjust enrichment claim can be stated.  Also, the purported enrichment to Sovereign that she alleges was unjust was nothing more than what was

_____

(...continued)
charged to the indicated account of its customer in any order." MD. CODE ANN., COM. LAW § 4-303(b). The drafters recognized that it is often preferable for consumers that larger payments be processed first.  *See id.* § 4-303 cmt. 7. Moreover, the account-holder bears responsibility for keeping track of the funds in her account and not over-drawing it:  "the drawer has drawn all the checks, the drawer should have funds available to meet all of them and has no basis for urging one should be paid before another . . . ." *Id.*  While the cited UCC provision governs checks rather than electronic debits, its resolution of the issue also applies to debit card transactions. The absence of a provision in Article 4A of the UCC, which governs electronic funds transfers generally, but not consumer electronic transactions, results not from a belief by the drafters that debit card transactions should be subject to a different rule, but rather from the drafters' understanding that consumer electronic transactions were governed by preemptive federal law, the Electronic Funds Transfer Act. *See id.* § 4A-102, entitled "Subject Matter" ("Except as otherwise provided in § 4A-108 of this subtitle [relating to exclusion of consumer transactions governed by Federal law], this title applies to funds transfers defined in § 4A-104 of this subtitle [relating to funds transfer; definitions].").  Notwithstanding the drafters' desire to avoid interference with federal law, the UCC still supplies the appropriate rule here because the official comment to MD. CODE ANN., COM. LAW § 4A-108 expressly counsels that "in the absence of any law to govern the part of the funds transfer that is not subject to [the Electronic Funds Transfer Act], a court might apply appropriate principles from Article 4A by analogy." *Id.* § 4A-108 cmt.  Those analogous principles are found in § 4A-504, which provides that "the bank may charge the sender's account with respect to the various orders and items in any sequence." *Id.* § 4A-504.

allowed under the Account Agreement.  Thus, under Maryland law it was not unjust, and Plaintiff's unjust enrichment claim fails for that additional reason.

### 5.    Conversion

A claim for conversion under Maryland law requires an "exercise of dominion or control" over property that "is in fact inconsistent with the plaintiff's rights" in that property.  *Keys v. Chrysler Credit Corp.*, 494 A.2d 200, 208 (Md. 1985).  Here, Sovereign exercised control over funds in Plaintiff's account consistent with plaintiff's rights under the Account Agreement.

Moreover, a bank's relationship with its depositor is one of debtor-creditor: the bank owes the depositor money and is obligated to re-pay it in accordance with the terms of its account agreement. Thus, while the accountholder "owns" the account, it does not own specifically identifiable funds in the account, and no claim for conversion may be stated.  Indeed, the *Gutierrez* court rejected the conversion claim there for just that reason: "The relationship between a bank and its depositor arising out of a general deposit is that of a debtor and creditor. A bank may not be sued for conversion of funds deposited with the bank." 622 F. Supp. 2d at 956.

### 6.    Violation of the MCPA

Violation of the MCPA requires some type of false or misleading representation.  *See* MD. CODE ANN., COM. LAW § 13-301 (proscribing several forms of false or misleading representation); *Phillip Morris Inc. v. Angeletti*, 752 A.2d 200, 234 (Md. 2000) (finding Plaintiff's MCPA claims unsuitable for class treatment because of the statute's requirements of reliance upon misrepresentations or material omissions).

As the district court observed in *Hassler*, the terms of Sovereign's Account Agreement "simply are not misleading or deceptive in any way."  *Hassler*, 644 F. Supp. 2d at 515.  Because the New Jersey Consumer Protection Act requires misleading conduct – as does the MCPA here – the CPA claim there was dismissed.  *Id.* at 517.

In affirming, the Third Circuit explained:

> This claim was properly dismissed. The Account Agreement explicitly provided for the reordering of charges of which Hassler complains. In Section A.7, Sovereign "reserve[d] the right to pay the withdrawals ... regardless of

the method of withdrawal in any order [it] determine[d]."
Sovereign clarified what this meant by repeating the same
principle in the same paragraph using different words: "The
order in which you make withdrawals from your Account
may not be the same as the order in which we post those
transactions to your Account each business day." Sovereign
specifically stated that "[g]enerally, [it] post[s] ... payment
transactions each business day in descending order, starting
with the largest payment order that is presented for
payment." It also gave an example: "This means, for
example, that your $900 mortgage payment will be paid
before the $100 purchase you made at the supermarket."
Sovereign even warned Hassler that "[t]he order in which
we post your transactions may affect whether you incur
fees for insufficient or unavailable funds." The Account
Agreement also makes clear that attempting to charge an
account beyond its available balance will not necessarily
result in the charge being denied.  Rather, Sovereign
retained the right either to permit or refuse to honor the
charge in Section A.13.

374 F. App'x at 344.  As noted above, Plaintiff here cannot even attempt to do what prior

MDL Plaintiffs have done, which is claim that the account agreement at issue was

different than the Sovereign agreement in *Hassler*.  This *is* the Sovereign agreement.

Because it is in no way deceptive, and the MCPA requires deception, that claim must be

dismissed.

IV.     **CONCLUSION**

   For the foregoing reasons, Sovereign respectfully requests that the Court dismiss the First Consolidated Amended Class Action Complaint, with prejudice.

         */s/  Darryl J. May*      
         Alan S. Kaplinsky
         kaplinsky@ballardspahr.com
         Darryl J. May
         may@ballardspahr.com
         Mariah Murphy
         murphym@ballardspahr.com
         BALLARD SPAHR LLP
         1735 Market Street, 51st Floor
         Philadelphia, PA 19103
         Tel.:  (215) 665-8500
         Fax:  (215) 864-8999

         *Attorneys for Defendant, Sovereign Bank*

Dated: November 21, 2011

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 1:09-MD-02036-JLK

**IN RE:  CHECKING ACCOUNT OVERDRAFT  LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**

*Lewis v. Sovereign Bank*
S.D. FL Case No. 1:11-cv-22022-JLK

---

I hereby certify that on November 21, 2011, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF, and that it is being

served this day on counsel of record via transmission of Notices of Electronic Filing

generated by CM/ECF.


*/s/  Darryl J. May*                                    
Darryl J. May
may@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel.:  (215) 665-8500
Fax:  (215) 864-8999

*Attorneys for Defendant Sovereign Bank*

DMEAST #14047854 v1