# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTION

*Lopez v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23127-JLK

*Luquetta v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23432-JLK
C.D. Cal. Case No. 2:09-cv-06967-GHK

---

# APPENDIX I TO PLAINTIFFS' MOTION FOR CLASS
# CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW

Dated: April 25, 2010.

Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

Respectfully submitted,

Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

1

E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

2

Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2011, I filed the foregoing document with the Clerk of

the Court.  I also certify that the foregoing document is being served this day, via Federal

Express, on Christopher R. Lipsett, Esquire, David S. Lesser, Esquire, Wilmer Cutler Pickering

Hale & Dorr, LLP, 399 Park Avenue, New York, New York 10022; and Peter W. Homer,

Esquire, Homer Bonner, P.A., 1441 Brickell Avenue, Suite 1200, Miami, Florida 33131.

Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

4

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:09-MD-02036-JLK

---

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTION

*Lopez v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23127-JLK

*Luquetta v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23432-JLK
C.D. Cal. Case No. 2:09-cv-06967-GHK

---

## APPENDIX I

### PLAINTIFFS' PROPOSED TRIAL PLAN FOR TRIAL OF CLASS CLAIMS

Page

I.     INTRODUCTION ...................................................................................................1

II.    PRESENTATION OF COMMON PROOF FOR EACH CLAIM .......................................3

       A.     Plaintiffs Will Prove with Common Evidence that Chase Breached Its
              Contracts with Plaintiffs and the Class and Breached the Implied Covenant
              of Good Faith and Fair Dealing ..............................................................................3

       B.     Plaintiffs Will Prove with Common Evidence that Chase's Overdraft
              Practices Are Substantively and Procedurally Unconscionable .............................7

       C.     Plaintiffs Will Prove With Common Evidence that Chase Has Been
              Unjustly Enriched ...................................................................................................9

       D.     Plaintiffs Will Prove with Common Evidence that Chase Violated the
              California Unfair Competition Law.......................................................................10

       E.     Plaintiffs Will Prove with Common Evidence that Chase Converted
              Plaintiffs' and the Class' Property .......................................................................11

       F.     Plaintiffs Will Prove with Common Evidence Causation and Amount of
              Damages.................................................................................................................12

III.   APPLYING MULTI-STATE LAW ...............................................................................13

       A.     The Four Breach of Contract and Implied Covenant of Good Faith and
              Fair Dealing Subclasses Are Manageable.............................................................15

       B.     The Four Unjust Enrichment Subclasses Are Manageable....................................17

       C.     The Unconscionability Subclass Is Manageable....................................................19

       D.     The California Unfair Competition Law Subclass Is Manageable ........................20

       E.     The Two Conversion Subclasses Is Manageable...................................................20

IV.    CONCLUSION............................................................................................................20

## I.      INTRODUCTION

Plaintiffs submit this trial plan in support of their motion for class certification.  The plan provides a roadmap to aid the Court in assessing how a single trial can be conducted against JPMorgan Chase Bank, N.A. ("Chase") on behalf of multiple classes under multiple state laws in an efficient and manageable manner.[1]  Because discovery is not yet complete, this plan is necessarily preliminary.  Plaintiffs may suggest changes to this plan (and reserve the right to do so) in advance of trial in light of the completion of discovery, reports from experts, any changes in the law, orders arising from motions for summary judgment, or later additions of class representatives.[2]  At this time, discovery conducted to date demonstrates that trial of this action on a class-wide basis presents no unduly challenging manageability issues.

In contrast to other class actions involving contractual claims, in this case Chase used uniform form contracts for all Class members.  Class members nationwide were forced to accept Chase's contract terms on a "take-it-or-leave-it" basis.  There was no opportunity to negotiate the terms, and no material variation among the form contracts in effect.  Similarly, Chase's own witnesses and

---

[1]  While Rule 23 does not require submission of a trial plan, "[a]n increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof." Fed. R. Civ. P. 23 Advisory Committee Note (2003 amendments).  The Eleventh Circuit does not require trial plans but recommends that Plaintiffs present feasible trial plans in support of class certification. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009).

[2]  Plaintiffs intend to seek the appointment of Valerie Williams, Megan Biss, Billy Martin Ruiz and Deborah Ruiz, John D. Kirkland, Jacqueline Miller, Thomas Larsen, Brent Lowe, Jennifer Palacios and Martin Palacios and Angela Walsh-Duffy as additional class representatives of certain subclasses discussed herein, and to certify additional subclasses for which these Plaintiffs will serve as class representatives, if the Eleventh Circuit affirms this Court's Order denying Chase's motion to compel arbitration.  Oral argument is scheduled for May 19, 2011.

documents demonstrate that Chase applied its overdraft policies uniformly to all Class members. For these reasons, certification of the class will not present any insuperable manageability issues. Rather, certification will enable a fair and efficient resolution of claims uniform to millions of Chase customers.

At this time, Plaintiffs envision a single trial comprised of the following steps. First, Plaintiffs will present their case-in-chief, submitting common evidence of Chase's wrongdoing, class-wide injury and total damages. Second, the burden shifts to Chase, and it presents whatever defenses it wishes to advance. Plaintiffs then present their rebuttal case. The Court will then enter a verdict based on Special Verdict Forms that take into account the minor variations among state laws.

Plaintiffs anticipate that trial of this action will take nine days. In the *Gutierrez v. Wells Fargo Bank, N.A.*, Case No. 07-05923 WHA (N.D. Cal.), tried before U.S. District Judge William Alsup in the Northern District of California, plaintiffs put on their case in five days and defendants in four. The total number of trial days was nine. There is no reason to believe that the trial against Chase here will take any longer. In this trial, as in *Gutierrez*, Plaintiffs will present their case through a handful of Chase's own witnesses and documents, and through their expert Art Olsen – the same expert qualified by Judge Alsup in *Gutierrez*. Because Chase's overdraft fee policies were virtually uniform across all Class members during the entire Class Period, presentation of evidence demonstrating Chase's conduct will not be overly complex.

If a verdict for the Plaintiffs results, judgment in a total, single monetary sum will be entered on behalf of the Class. A post-judgment administrative proceeding will follow, in which Chase's data will be used to distribute checks to each individual Class member based on Art Olsen's calculations and the applicable statutes of limitations. This will be done systematically and without

requiring Class members to submit proofs of claim.  The Court will be asked to approve this final allocation of damages, which will be of no concern to Chase.[3]  On the other hand, if a verdict is returned for Chase, judgment dismissing the action with prejudice would enter.

## II.    PRESENTATION OF COMMON PROOF FOR EACH CLAIM

For all of their claims, Plaintiffs will rely on common proof derived directly from Chase's own witnesses or documents, or from Plaintiffs' expert, to prove their claims.  Below is an evidentiary outline demonstrating how this case will be tried as a class action without manageability problems.

### A.    Plaintiffs Will Prove with Common Evidence that Chase Breached Its Contracts with Plaintiffs and the Class and Breached the Implied Covenant of Good Faith and Fair Dealing

As this Court noted in its omnibus ruling denying defendants' motion to dismiss, all states recognize an implied covenant of good faith and fair dealing in every contract.[4]  Further, "when one party is given discretion to act under a contract, said discretion must be exercised in good faith." Dkt. No. 305 at 19.  Plaintiffs will prove with evidence common to all Class members that Chase did not act in good faith when it exercised discretion under the account agreements Chase entered into

---

[3] It is very common for courts to have follow-on proceedings regarding damages allocation, even if they involve individualized damage proceedings (which will not be necessary here).  *See, e.g.,* *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003); 3 CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS, § 9:53 at 429-30 (4th ed. 2002) (collecting cases); 7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, Federal Practice and Procedure § 1781 (2d ed. 1986).

[4] Certain states recognize a claim for breach of the covenant of good faith and fair dealing as a separate and independent claim from breach of contract, while other states treat breach of the implied covenant of good faith and fair dealing as a species of breach of contract.  Plaintiffs' complaints plead both types of claims, which are substantively identical, in a single count.

with members of the Class.  Evidence adduced so far in discovery demonstrates that proof of

Plaintiffs' claim is found in Chase's own documents and witness testimony.

For example, the account agreements Chase entered into with Class members are

standardized form contracts that are remarkably uniform across all states in which Chase does and

did business.[5]  *See, e.g.*, Exs. 16 & 17.[6]  Thus, the named Plaintiffs and all Class members were

subject to and governed by materially-similar account terms and legal disclosures.[7]  In all of the

agreements, Chase reserved discretion whether to authorize the transaction, how to order the

transactions, and whether to charge an overdraft fee.[8]  Nothing in these uniform agreements

---

[5]  Per agreement between the parties, Chase provided Plaintiffs with charts of agreements specifying which Account Agreements were representative of the contract language, and which reflected a change in the terms or conditions during the Class Period, in lieu of deposition testimony.

[6]  All exhibits and deposition excerpts referenced herein are included in Appendix III being filed contemporaneously herewith.

[7]  Chase updated its account agreement periodically, but the provisions regarding posting order and overdraft fees remained materially similar throughout the Class Period for all states.  *See* Ex. 17.

[8]  Chase's agreements throughout the Class Period provided specific provisions for debit cards, which stated: "If you use your Card to access an Account that does not have sufficient funds to complete a transaction or that would exceed the daily authorization limit attached to your Card, [the Bank] may, at its sole discretion, authorize the transaction.  If [the Bank] authorize[s] a transaction that overdraws your Account, the Bank may assess a fee and or charge interest for any overdraft against your Account." Ex. 18 at 36 (Special Personal Deposit Account Updates, June 16, 2009); Ex. 10 at 36 (Special Customer Update including Account Rules and Regulations beginning on May 22, 2009); Ex. 19 at 36 (Special Personal Deposit Account Updates, Feb. 25, 2009); Ex. 20 at 22 (Account Rules and Regulations, Dec. 31, 2008); Ex. 21 at 22 (Account Rules and Regulations, May, 9, 2008); Ex. 22 at 29 (Updates for your deposit accounts, effective Aug. 24, 2007); Ex. 23 at 38 (Account Rules and Regulations beginning Sept. 15, 2006); Ex. 24 at 38 (Account Rules and Regulations beginning Sept. 1, 2006); Ex. 25 at 40 (Account Rules and Regulations July 16, 2006); Ex. 26 at 28 (Account Rules and Regulations effective Feb. 27, 2006); Ex. 27 at 28 (Account Rules and Regulations); Ex. 28 at 25 (Account Rules and Regulations, Dec. 28, 2004); Ex. 29 at 25 (Account Rules and Regulations).

discloses or permits Chase to manipulate the reordering of debit card transactions solely to create overdrafts that would not otherwise exist,[9] to charge overdraft fees when there are sufficient funds in the account, or to reorder the posting of debits over a period of days irrespective of when the transaction occurred.[10] Chase's conduct in doing so constitutes a breach of Plaintiffs' and the Class' contracts by violating the implied covenant of good faith and fair dealing.

Other evidence of Chase's breach will be common and uniform, given that Chase uniformly re-sequenced transactions and posted debits from highest to lowest for all Class members.[11]

---

Chase's agreements elsewhere contained provisions expressly reserving discretion to Chase regarding its posting order and overdraft fee practices, and whether customers would pay a fee when Chase paid a transaction that overdrew the account. *See* Ex. 29 at 15 (2004 account agreement reserving Bank One's "right" to change posting order without notice); Ex. 53 at 6 (2004 account agreement reserving Chase's discretion to pay or refuse payment for transactions); Ex. 26 at 15 (Chase 2006 agreement reserving right to change posting order without notice); *see also* Ex. 17 (Chase agreement chart); Ex. 25 (Chase Account Agreement (La.) effective July 16, 2006); Ex. 23 (Chase, effective Sept. 16, 2006); Ex. 22 (Updates For Your Deposit Accounts – effective Aug. 24, 2007); Ex. 20 (Chase, effective Dec. 31, 2008); Ex. 19 (Chase (ID, OR, WA - WaMu) effective May 22, 2009); Ex. 18 (Chase (CA, NV-WaMu) effective Oct. 23, 2009).

[9]  Chase's high-to-low re-sequencing process was originally proposed by a third party called Methods Research, Inc. ("MRI"), which recommended that Heritage Bank One use an "Aggressive Method" that posted all debits – checks, ACH, debit cards, cash withdrawals and ATMs together – and charged them against the balance from largest to smallest dollar amount. Ex. 13; Ex. 1 at 58:20-59:4. This methodology would "*maximize fee income potential from overdraft and NSF fees in the processing of daily transactions* for various deposit products." Ex. 14 at 2 (emphasis added). The contingent fee contract that Bank One executed with MRI specifically anticipated the scheme would generate more than $75 million in additional fees, with Bank One and MRI each reaping profits as the generated fees increased. *Id.* at 4.

[10]  Chase's executives at all times recognized that high-to-low re-sequencing always resulted in the maximum number of assessed overdraft fees, and *never* resulted in fewer fees for Chase. *See* Ex. 5 at 238:24-39:11.

[11]  Plaintiffs' common proof will include internal documents and the testimony of Chase employees. *See, e.g.*, Ex. 2 at 143:10-44:3. Posting occurs in the DDA system, and the re-sequencing protocols

Plaintiffs will also show that Chase systematically implemented a highly-sophisticated behaviorally-based algorithm called "Matrix," which adjusted each customer's daily line of credit in order to maximize the number of overdrafts and thus charge the most overdraft fees possible.[12]

Common evidence will also be introduced to demonstrate that Chase failed to disclose the circumstances under which it would charge overdraft fees,[13] and that Chase was well aware of the adverse impact that its scheme had on Plaintiffs and the Class.[14]

---

are set forth in a "DDA [M]anual," which serves as Chase's central guide for all functions related to accounts. Ex. 1 at 62:8-63:17; Ex. 2 at 113:5-14:7; *see also* Ex. 7 (Monetary Transaction Code Posting Priority Table); Ex. 6 (Overdraft and Unposted Item Processing). A single internal transaction code groups all relevant transactions (each of which is designated by an "external transaction code") and then sorts them by amount, highest to lowest. Ex. 2 at 99:15-102:5, 113:5-14:7. The DDA system also assesses overdraft fees. *Id.* at 136:6-24.

[12] The amount that Matrix determines is commonly referred to as an "overdraft limit." Chase hides from its customers the actual amount of credit. Chase extended a secret line of credit through its automated "Matrix" program that considers various factors in deciding "on a case-by-case basis whether to honor a check or debit-card transaction if there is not enough money in the[] account." Ex. 47; *see also* Ex. 1 at 195:2-3; Ex. 7 (DDA Manual set forth the uniform factors and technical processes for Matrix). And the entire process of determining the amount of the Matrix line of credit and authorizing a transaction into overdraft was never disclosed to the customer. Ex. 5 at 311:1-12:10; Ex. 11. Matrix increased the number of overdrafts permitted. Chase earns more than just one extra overdraft fee each time it allows someone to overdraft. For every one "occurrence" that Matrix generated – that is, each time a customer balance went negative – Chase generated fees equal to the average *number of items* per occurrence. As of 2009, Chase on average generated 1.66 items per occurrence at an average of $33.40 per item as a result of marrying the Matrix line of credit to the practice of high-to-low re-sequencing. Ex. 8. And Chase was able to do this while minimizing write-offs. *See* Ex. 8 (comparing Chase's "Behavior Score Invisible Limit" strategy to WaMu's "Visible Tenure / Balance Based Limits" to show that Matrix allowed lower losses). By 2008, Matrix allowed Chase to approve 1% more transactions, resulting in at least $400 million more per year in overdraft revenue. Ex. 12.

[13] Plaintiffs' common proof on this issue will include, *inter alia*, Chase's monthly statements listing checks separate from debits, and without time stamps, thereby making it impossible for customers to determine the order transactions were posted in relation to each other. Exs. 48-52.

**B.     Plaintiffs Will Prove with Common Evidence that Chase's Overdraft Practices Are Substantively and Procedurally Unconscionable**

In denying Defendants' omnibus motion to dismiss, the Court ruled that Plaintiffs sufficiently pled the following elements of *procedural* unconscionability: (i) there is a tremendous disparity in sophistication and bargaining power between Plaintiffs and defendants; (ii) the deposit agreements were contracts of adhesion – that is, Plaintiffs and Class members were not presented with an option to negotiate the terms, and those terms were set out in voluminous boilerplate language; and (iii) Plaintiffs and Class members were denied any meaningful opportunity to opt out of the so-called "overdraft protection" programs.  Dkt. No. 305 at 28-29.

The Court also ruled that Plaintiffs sufficiently pled the following elements of *substantive* unconscionability: (i) no reasonable person would have agreed to allow the banks to post debits in a manner designed solely to maximize the number of overdraft fees; and (ii) the amount of overdraft fees is unconscionably excessive because the fees are not reasonably related to the costs or risks associated with providing overdraft protection.  Dkt. No. 305 at 30-31.

Plaintiffs will prove the foregoing elements with common evidence, which will include evidence of Chase's financial resources and sophistication in devising the overdraft fee program;[15]

---

[14]  *See, e.g.*, Ex. 54; Ex. 33 (Chase internal communication admitting that "posting order changes [from high-to-low to real time will now] help customers track spending avoid overdrafts").  Erol Aspromatis, a Chase Vice President, found that 16% of Chase's annual overdraft revenue, or $0.5 Billion, was realized solely from posting debit card transactions high-to-low instead of in the order in which they occurred, and that Chase would have made half-a-billion dollars in 2010 from the practice. *See also* Ex. 36.

[15]  Chase's heritage-Bank One consciously adopted its high-to-low re-sequencing practice applied to all debits (checks, ACH, debit cards, cash withdrawals and ATMs) as an "Aggressive Method" to maximize fee income, originally at the suggestion by consultant, Methods Research, Inc. ("MRI").

the form contracts with boilerplate language that Chase provided to all of its retail banking customers;[16] Chase's common failure to provide Plaintiffs and Class members with any meaningful opportunity negotiate or change the material terms of their deposit agreements, or to opt out of having their accounts overdrawn;[17] and consumer complaints regarding the unfairness of the overdraft scheme.[18]

---

*See* Ex. 13; Ex. 1 at 58:18-59:4; Ex. 14 at 3-4 (anticipating over $75 million in additional fees). Bank One shared the profits with MRI. *Id.* at 5. Prior to the merger, Chase also adopted a posting order process whereby it grouped together all debits (checks, ACH, debit cards, cash withdrawals, ATM transactions) and posted them high to low, also at the advice of a third-party consultant, Carreker. Ex. 1 at 219:1-22; *id.* at 220:23-21:13. After the merger, Bank One's Demand Deposit Account ("DDA") system became the system for the entire bank. Ex. 2. Bank One's contract with Methods Research survived the merger with Chase, and the combined unit sought to leverage the methods and know-how provided by Methods Research across the newly-combined enterprise. Ex. 1 at 218:10-19:22; Ex. 15. The use of the Methods Research "operationalized" transaction code system to manage and effectuate the posting order scheme survives to this day.

[16] *See supra*, at 4 & n.6.

[17] Chase's deposit product group suggested, as far back as 2007, that Chase should allow customers to opt-out of overdraft, suggesting that "[t]his resolves a common complaint from customers who otherwise expect that their debit card would work like a stored value card and not be usable when there's no money in their checking account." Ex. 5 at 258:5-11. "This is expected to lower fee revenue, but increase customer satisfaction and checking account retention." However, Chase never adopted the suggestion, despite its recognition of customer impact. *See* Ex. 5 at 254:18-63:5 & Exhibit 16 thereto.

[18] Chase customers questioned "whether or not high to low was the right way to post." Ex. 1 at 368:15-22. By July 2008, Chase was receiving over 9,000 customer complaints per month about "the dollar amount of fees and that posting order of payments caused additional fees." Ex. 43; *see also* Ex. 35 (Chase bankers recognizing that high volume over drafters often do not have the financial means to qualify for overdraft programs); Ex. 55; Ex. 44.

When Chase converted the Washington Mutual population, which entailed switching them from a "real time" posting/payment to high-to-low posting at the end of the day, the calls increased significantly because the re-sequencing led to more overdraft fees. Ex. 44; Ex. 59 (changing WaMu customers to high low posting order would increase overdraft fees); Ex. 56 at MDL-CH_0040933 (changing WaMu customers to high low posting order would increase overdraft fees to 320 million

Tellingly, Chase's own employees called practice of re-ordering debit items high to low

"unconscionable":

> Its [*sic*] so difficult and upsetting to explain to [customers] that although they had enough in their account to cover most of their debits that came through on a particular day, since we pay the highest debit first, all of their debits posted NSF. I realize this benefits the bank since we collect more fees, however it seems a bit ***unconscionable***. Has Chase considered paying checks and debits in the order in which they occur, which is not only fair, but also would make more sense to our customers and save us from a lot of disheartening conversations.

Ex. 41 (emphasis added).

### C.   Plaintiffs Will Prove With Common Evidence that Chase Has Been Unjustly Enriched

Plaintiffs will use common evidence to prove their unjust enrichment claims. First, Plaintiffs

will demonstrate that they and the Class members conferred a benefit on Chase by paying

excessively high overdraft fees. This evidence will include the declaration and testimony of Art

Olsen, based on a detailed analysis of Chase's overdraft transaction data for the entire Class. *See*,

*e.g.*, *See* Declaration of Arthur Olsen, included in Appendix IV ("Olsen Decl."), at ¶¶34-45; *see also*

*Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1104 (N.D. Cal. 2010). It will include

evidence that Chase specifically recognized that overdraft fee revenue (*i.e.*, the benefit conferred)

---

dollars); Ex. 1 at 198:25-204:10. However, Chase failed to provide accurate information about the reason for the switch, and recognized the switch was going to cause immense customer confusion. *See, e.g.*, Ex. 57; Ex. 11; Ex. 58 (Chase knew WaMu customers would negatively react to not knowing their OD limits and not knowing whether their items would be paid and not know how overdraft fees would be charged). And, in fact, Chase customers were unclear about how Chase charged overdraft fees. Ex. 45 at MDL-CH_0534584.

would increase as a result of the scheme.[19]  Plaintiffs will also show with common evidence that Chase appreciated the benefit.

Second, Plaintiffs will show that Chase's retention of that benefit is unjust.  That evidence will include evidence that Chase knowingly devised the scheme to increase its revenue at the expense of the Class;[20] evidence that Chase recognized that high to low was not in its customer's best interests;[21] and evidence that a high percentage of the overdraft fees collected were paid by the most vulnerable and poorest percentage of its customer base, including racial minorities.[22]

### D.    Plaintiffs Will Prove with Common Evidence that Chase Violated the California Unfair Competition Law

Plaintiffs seek to certify a single-state sub-class for violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §17200, *et seq*.  The UCL broadly prohibits unfair and deceptive acts or practices.  *See* Exhibit D.

Using evidence common to Plaintiffs and all Class members – much of which overlaps with the evidence that will be used to establish Chase's other violations, as discussed above – Plaintiffs

---

[19]  *See supra*, at n.8.

[20]  *See id.*

[21]  *See, e.g.*, Ex. 41 (recognizing unconscionability of high to low posting for customers).  Even though Chase customer representatives were scripted to tell customers that its high-to-low posting order was devised, not to create profits, but because customers requested it, Chase recently testified that posting order changes were "less about honoring most important debits first" and more because Chase sought "consistency across all the different posting types." *Compare* Ex. 40 at MDL-CH_0031106, *with* Ex. 1 at 338:5-22.  Chase executives acknowledged the "domino effect" of having fees further deplete account balances – it makes it markedly more difficult for customers to get back to zero.  *See* Ex. 42.

[22]  Ex. 3 at MDL-CH_0534463 (attached as Ex. 6a to Newstead Deposition).  Chase knew that its practices had the greatest impact on racial minorities.  *Id.*

will demonstrate that Chase violated the UCL. That evidence will include the following: Chase uniformly re-sequenced transactions and posted debits from highest to lowest for all Class members;[23] employed a secret line of credit by way of the "Matrix" to Class members to charge overdraft fees;[24] provided untrue or misleading advertising and inaccurate balance information to all Class members;[25] failed to disclose the actual circumstances under which it would charge overdraft fees in its uniform account agreements;[26] was well aware of the adverse impact that its scheme had on Plaintiffs and the Class;[27] and failed to provide Plaintiffs and Class members with any meaningful opportunity to opt out of having their accounts overdrawn.[28] Additional common proof will consist of evidence of the Chase's financial resources and sophistication in devising the overdraft fee program;[29] and consumer complaints regarding the unfairness of the overdraft scheme.[30]

### E.   Plaintiffs Will Prove with Common Evidence that Chase Converted Plaintiffs' and the Class' Property

In denying Defendants' omnibus motion to dismiss, the Court found that Plaintiffs had sufficiently plead that: (i) they had a right to possess the funds in their bank accounts upon demand;

---

[23] *See supra*, at n.10.

[24] *See supra*, at n.11.

[25] *See, e.g.*, Ex. 30 at 2; Ex. 31 at MDL-CH_0068843.

[26] *See supra*, at n.7.

[27] *See supra*, at n.13.

[28] *See supra*, at n.16.

[29] *See, e.g., supra*, at n.14.

[30] *See, e.g., supra*, at n.17.

(ii) that defendants wrongfully took funds from their accounts; and (iii) which interfered with Plaintiffs' property interests. Dkt. No. 305 at 36.

Using evidence common to all Plaintiffs and Class Members, Plaintiffs will be able to prove the elements of conversions through documents and data in Chase's possession. Such evidence will largely overlap with that which is outlined above, including evidence that Plaintiffs and the Class opened bank accounts with defendants in which they had deposited their moneys;[31] that Chase wrongfully took their funds in the form of unlawful overdraft fees, as explained above;[32] and Chase interfered with Plaintiffs and the Class' property interests as Chase claimed the moneys as its own.[33]

### F.   Plaintiffs Will Prove with Common Evidence Causation and Amount of Damages

Plaintiffs will demonstrate causation through, *inter alia*, documents and testimony from Chase showing that the injury to Class members in the form of the payment of overdraft fees was foreseeable and an intended consequence of its scheme, including internal documents admitting to the overdraft scheme's substantial economic impact on the Class and the benefit of the scheme to Chase.[34]

---

[31] *See, e.g.*, Exs. 48-52 (Plaintiffs' account statements).

[32] Plaintiffs will be able to prove the amount of funds taken from Plaintiffs and the Class member through their expert, Art Olsen. *See* Olsen Decl., ¶39.

[33] *See, e.g.*, *supra*, at n.8 (describing Chase's "Aggressive Method" to extract millions of dollars in overdraft fees from its customers).

[34] Consistent with Chase's projections for its "income enhancement" posting policies, the volume of transactions considered overdrafts and against which Chase levied fees rose dramatically each year. Exs. 38 & 39. Erol Aspromatis, a Chase Vice President, found that 16% of Chase's annual overdraft revenue, or $0.5 billion, was realized solely from posting debit card transactions high-to-low instead of sequentially, and that Chase would have made half-a-billion dollars in 2010 from the practice.

With the assistance of their expert, Art Olsen, Plaintiffs will use common proof to demonstrate injury to Class members and calculate total damages for the Class without the need to resort to information collected from individual Class members.  In our increasingly complex society where mass marketing of financial services can lead to widespread harm, the potential difficulty of adjudicating mass claims can be enormously simplified through the use of modern information management technology used by large corporate defendants such as Chase.  Chase's sophisticated systems contemporaneously recorded and then stored all debit transactions during the Class period.  This common evidence will be mined to: (i) identify the Chase customers who were assessed additional overdraft fees due to Chase's high-to-low posting order as compared with an alternative posting order in which debit card transactions are posted in chronological order based on authorization date and time; and (ii) calculate the amount of the additional overdraft charges that *each* Class member was charged during the Class Period.  *See* Olsen Decl., ¶39.

## III.   APPLYING MULTI-STATE LAW

When seeking certification of a class for which the laws of several states potentially apply, the plaintiff bears the burden of demonstrating a suitable and realistic plan for trial of the class claims and must submit an extensive analysis showing that there are no material variations among the law of the states for which certification of a class is sought.  *Klay v. Humana, Inc.*, 382 F.3d

---

*See* Ex. 36; *see also* Ex. 4 (Reports from Chase Retail Deposit Pricing Committee reflecting overdraft revenues throughout Class period).

1241, 1262 (11th Cir. 2004).[35]  "[I]f applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate."  *Id.*[36]

Common issues of law and fact will remain the predominant focus of this litigation, notwithstanding the potential application of multiple states' laws.  The extensive analysis embodied in this Trial Plan and in the surveys attached hereto demonstrate that applying the laws of the several states to Plaintiffs' claims here does not present any difficult manageability issues.  For all of the claims, the applicable state laws can be grouped into a total of 11 subclasses sharing materially-identical legal standards.  Plaintiffs will present evidence of all of these elements through uniform proof derived from Chase's documents, Chase's witnesses, or Plaintiffs' expert, as described more particularly above.  Plaintiffs seeking to represent each subclass reside in one of the states belonging to that subclass; thus, they may represent Class members residing in those other states included in the subclass.  *See* Manual for Complex Litigation §§21.23, 22.754 (4th ed. 2004) (describing use of subclasses to take account of differences amongst the various states' laws and representation for each subclass); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 252 F.R.D. 83, 104 (D. Mass. 2008) (for multi-state class, case law does not create a *per se* rule that the Court must appoint a separate representative for each state or each group).

---

[35]  In a later decision, the Eleventh Circuit declined to explain precisely what "extensive" specifically means other than to say it must be "more than perfunctory."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010).

[36]  In *Klay*, although the Court reversed certification of claims for breach of contract and unjust enrichment, the Court recognized that state law claims "based on a principle of law that is uniform among the states" can form a "realistic possibility" of certification.  *Id.* at 1261.

Plaintiffs propose that, at the conclusion of evidence, the fact finder be provided special verdict forms that take into account these minor variations among state laws. Proposed Special Verdict Forms are attached as Exhibit F. As these proposed verdict forms demonstrate, the differences that do exist among state laws can readily be taken into account through the use of discrete subclasses, thus ensuring careful adherence to legal requirements and eliminating any manageability issues.

### A. The Four Breach of Contract and Implied Covenant of Good Faith and Fair Dealing Subclasses Are Manageable

The common law implies the duty of good faith and fair dealing in every contract in terms of performance and enforcement. *See* Restatement (2d) of Contracts §205 (1981) (the "Restatement of Contracts"). In other words, each party to a contract has a duty to refrain from doing anything to unfairly interfere with the rights of any other party to receive the benefits of the contract. *Id.* As this Court has already found, good faith and fair dealing includes exercising one's discretion in carrying out the contract in good faith. Dkt. No. 305 at 19.

The law of good faith and fair dealing is largely uniform. Nearly all of the jurisdictions either directly cite or paraphrase the Restatement of Contracts as to the implied covenant of good faith and fair dealing. *See* Exhibit A at 1. Some states treat the implied covenant of good faith and fair dealing as a separate cause of action. *Id.* For those that do not, the good faith and fair dealing claims are subject to the elements of that state's breach of contract claims. *Id.*

Plaintiffs have grouped the states together into four subclasses for which materially identical legal standards apply as follows:

**Good Faith and Fair Dealing Breach Subclass No. 1**. This subclass is comprised of states that treat the breach of the implied covenant of good faith and fair dealing as a separate cause of

action; thus, a party may breach the implied covenant without breaching an express provision of the contract. The states included are Arizona, California, Connecticut, New Jersey, Oklahoma, Oregon, and Wisconsin. The common elements that must be proven to establish a breach of the duty of good faith and fair dealing in these states are: (i) a valid contract; (ii) the defendant acted in bad faith or engaged in unreasonable conduct that had the effect of preventing the plaintiff from receiving the benefits of the contract; and (iii) resulting damages. The proposed representative of this subclass is Andrea Luquetta, who resides in California. *See* Exhibit A at 2-4; Exhibit F.

**Good Faith and Fair Dealing Breach Subclass No. 2**. This subclass treats the implied covenant claims as part of the breach of contract claims and requires a showing of bad faith for the implied covenant of good faith and fair dealing. This subclass includes Louisiana. The common elements that must be proven to establish a breach of the duty of good faith and fair dealing are: (i) a valid contract; (ii) the defendant breached the contract by unfairly interfering with the plaintiff's rights to receive benefits under the contract in bad faith; (iii) plaintiffs' performance or excuse; and (iv) resulting damages. The proposed representative of this subclass is Charles Reed, Jr., who resides in Louisiana. *See* Exhibit A at 5-6; Exhibit F.

**Good Faith and Fair Dealing Breach Subclass No. 3**. This subclass treats the implied covenant claims as part of the breach of contract claims, which has four elements. The states included are Colorado, Georgia, Illinois, Indiana, New York, and Ohio. The common elements that must be proven to establish a breach of the duty of good faith and fair dealing in these states are: (i) a valid contract; (ii) plaintiffs' performance or excuse; (iii) the defendant breached the contract by unfairly interfering with the plaintiff's rights to receive benefits under the contract; and (iv) resulting

damages. The proposed representative of this subclass is Linda McDaniel, a resident of Georgia. *See* Exhibit A at 7-11; Exhibit F.

**Good Faith and Fair Dealing Breach Subclass No. 4**. This subclass treats the implied covenant as part of the breach of contract claim and requires plaintiff to show that the breach was material. The states included are Florida and New Mexico. The common elements that must be proven to establish a breach of the duty of good faith and fair dealing in these states are: (i) a valid contract; (ii) defendant unfairly interfered with the plaintiff's right to receive benefits under the contract; (iii) defendant's conduct affected a fundamental purpose or essence of the contract; and (iv) resulting damages. The proposed representative of this subclass is Estella Lopez, a resident of Florida. *See* Exhibit A at 12-13; Exhibit F.

### B.     The Four Unjust Enrichment Subclasses Are Manageable

The law of unjust enrichment is largely uniform. Most states have simply adopted a variation of the definition of unjust enrichment in Restatement (First) of Restitution §1, which provides that a party may be required to make restitution if she is unjustly enriched at the expense of another.

Plaintiffs have grouped the states together into four subclasses for which materially identical legal standards apply as follows:

**Unjust Enrichment Subclass No. 1**. These states follow the definition of unjust enrichment in Restatement (First) of Restitution §1. The states included are California, Connecticut, Michigan, New Mexico, and West Virginia. The common elements that must be proven to establish unjust enrichment in these states are: (i) the plaintiff conferred a benefit; (ii) the defendant accepted or retained that benefit; and (iii) under circumstances that would be unjust for the defendant to retain

the benefit. The proposed representative of this subclass is Andrea Luquetta, a resident of California. *See* Exhibit B at 1-3; Exhibit F.

**Unjust Enrichment Subclass No. 2**. The states encompassed by this subclass also follow the definition of unjust enrichment in Restatement (First) of Restitution §1 but also require the plaintiff to prove a single additional element: that the defendant appreciated the benefit conferred. The states included in this subclass are Florida, Georgia, Idaho, Kentucky, Oregon, Washington, and Wisconsin. The proposed representatives of this subclass are Estella Lopez, a Florida resident, and Linda McDaniel, a Georgia resident. *See* Exhibit B at 4-5; Exhibit F.

**Unjust Enrichment Subclass No. 3**. The states encompassed by this subclass follow the definition of unjust enrichment in Restatement (First) of Restitution §1 but also require the plaintiff to prove that the plaintiff lacks an adequate remedy at law. The states included in this subclass are Arizona, Colorado, Louisiana, New Jersey, New York, Ohio, Oklahoma, and Utah. The proposed representative of this subclass is Charles Reed, Jr., a resident of Louisiana. *See* Exhibit B at 6-8; Exhibit F.

**Unjust Enrichment Subclass No. 4**. The states encompassed by this subclass follow the definition of unjust enrichment in Restatement (First) of Restitution §1 but also require the plaintiff to prove that the defendant engaged in wrongful conduct. The states included in this subclass are Indiana and Texas. The proposed representative of this subclass is John Stone, a resident of Texas. *See* Exhibit B at 9; Exhibit F.

## C.    The Unconscionability Subclass Is Manageable

The law of unconscionability is substantially uniform across all states. All of the states, with

the exception of Louisiana, have adopted statutes that are the same or substantially identical to

Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.
>
> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

U.C.C. §2-302 (2011).

The states in the subclass, which comprise the majority of states, require both substantive and

procedural unconscionability. These states are: California, Colorado, Connecticut, Florida, Georgia,

Idaho, Louisiana, Michigan, New Jersey, Ohio, Oklahoma, Texas, West Virginia, and Wisconsin.

The proposed representatives of this subclass are Andrea Luquetta, a California resident; Estella

Lopez, a Florida resident; Linda McDaniel, a Georgia resident; Charles Reed, Jr., a Louisiana

resident; and John Stone, a Texas resident. *See* Exhibit C at 2-14; Exhibit F.

For Class members in Arizona, Illinois, Kentucky, New Mexico, Utah, and Washington,

which allow a plaintiff to prevail on a showing of either procedural or substantive unconscionability,

*see* Ex. C at 15-21, and for Class members in New York and Oregon which allow recovery if

plaintiff demonstrates substantive unconscionability, *id.* at 22-24, they are being represented by

Plaintiffs who reside in states that require plaintiffs to demonstrate both substantive and procedural

unconscionability. Plaintiffs have crafted a special verdict form that permits the fact finder to allow

- 19 -

these Class members to recover if either substantive or procedural unconscionability are found, respectively, according to the standard applied by their state of residence. *See* Exhibit F. Such an approach is entirely manageable and will efficiently and effectively adjudicate the claims of these states.

### D.    The California Unfair Competition Law Subclass Is Manageable

The Court has ruled that Plaintiffs may only assert a state statutory claim if a named Plaintiff resides in that state. Dkt. No. 305 at 40. Plaintiffs at this time move to certify a single-state subclass for California Class members to assert violations of the UCL, Cal. Bus. & Prof. Code §17200, *et seq.*, represented by Plaintiff Andrea Luquetta. *See* Exhibits D & F. The elements required to prove a violation of each of the UCL are set forth in Exhibit D.

### E.    The Two Conversion Subclasses Is Manageable

For their conversion claims, Plaintiffs also do not propose grouping state laws for purposes of creating multi-state subclasses. Instead, Plaintiffs seek to certify two single-state subclasses for states in which certain named Plaintiffs reside: namely, Florida, represented by Estella Lopez and Louisiana, represented by Charles Reed, Jr. *See* Exhibits E & F.

## IV.    CONCLUSION

Plaintiffs' trial plan demonstrates that all of Plaintiffs' claims can be efficiently tried on a class-wide basis.

DATED: April 25, 2011.

Respectfully submitted,

_____
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130
Tel: 305-358-2800
Fax: 305-358-2382

_____
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Jeremy W. Alters, Esquire
Florida Bar No. 0111790
jeremy@alterslaw.com
ALTERS LAW FIRM, P.A.
4141 N.E. 2nd Avenue
Suite 201
Miami, FL 33137
Tel: 305-571-8550
Fax: 305-571-8558

*Co-Lead Counsel for Plaintiffs*

Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 3855830
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*Plaintiffs' Executive Committee*

- 23 -

# EXHIBIT A

# BANK OVERDRAFT MDL 2036
# BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

## I. INTRODUCTION

Every contract imposes a duty of good faith and fair dealing in its performance and in its enforcement. *See Restatement (Second) of Contracts* §205 (1981) ("*Restatement*"). Below are surveys related to the four proposed subclasses for the breach of contract and implied covenant of good faith and fair dealing class claims. The first table sets forth those states in which Chase does business and where breach of the implied covenant of good faith and fair dealing is a separate cause of action. The second table represents those states in which Chase does business and that require a showing of bad faith for such breach. The third table represent those states in which Chase does business that apply a four-element test for breach of contract claims, and the implied covenant does not supply a separate cause of action. The fourth table lists states in which Chase does business that require a material breach in order to bring a breach of contract claim and the implied covenant claims are not separate causes of action.

**BANK OVERDRAFT MDL 2036**

**BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING**

| GOOD FAITH AND FAIR DEALING SUBCLASS #1 |
|---|
| **IMPLIED COVENANT AS A SEPARATE CAUSE OF ACTION**<br>(1) Valid Contract; (2) Defendant Unreasonably Interferes with Plaintiff's Rights<br>to Receive Benefits under the Contract; (3) Resulting Damages |

| States | Arizona, California, Connecticut, New Jersey, Oklahoma, Oregon, Wisconsin |
|---|---|
| Class Representative | Andrea Luquetta |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| Arizona | The implied covenant prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement; the duty arises by operation of law, but exists by virtue of a contractual relationship. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 27 (Ariz. 2002). A contract would be breached by a failure to perform in good faith if a party uses its discretion for a reason outside the contemplated range – a reason beyond the risks assumed by the party claiming a breach. A contracting party may not exercise a retained contractual power in bad faith, for example, adjust claims in an insurance contract or fire an at will employee for a bad cause. *Wells Fargo Bank*, 38 P.3d at 28-31.<br><br>"A party can breach the implied covenant of good faith and fair dealing without breaching an express provision of the underlying contract." *United Dairymen of Ariz. v. Schugg*, 128 P.3d 756, 760 (Ariz. Ct. App. 2006). |
| California | California law implies in every contract a covenant of good faith and fair dealing. Broadly stated, that covenant requires that neither party do anything which will deprive the other of the benefits of the agreement. *Freeman & Mills, Inc. v. Belcher Oil Co.*, 900 P.2d 669, 672 (Cal. 1995). The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another. Such power must be exercised in good faith. A party violates the covenant if it subjectively lacks belief in the validity of its act or if its conduct is objectively unreasonable. *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 122 Cal. Rptr. 2d 267, 284 (Cal. Ct. App. 2002). In the case of discretionary power, it has been suggested the covenant requires the party holding such power to exercise it for any purpose within the reasonable contemplation of the parties at the time of formation – to capture opportunities that were preserved upon entering the contract, interpreted objectively. *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 |

2

**BANK OVERDRAFT MDL 2036**

**BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING**

| | |
|---|---|
| | P.2d 710, 727-28 (Cal. 1992). Breach of a specific provision of the contract is not a necessary prerequisite. Were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract. Nor is it necessary that the party's conduct be dishonest. Dishonesty presupposes subjective immorality; the covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive. *Id.*

A breach of the implied covenant of good faith and fair dealing, by itself, will support a contract action. *Storek & Storek*, 122 Cal. Rptr. 2d 267. Breach of a specific provision of the contract is not a necessary prerequisite to an action for breach of the implied covenant of good faith; were it otherwise, the covenant would have no practical meaning, for any breach thereof would necessarily involve breach of some other term of the contract. *Brehm v. 21st Century Ins. Co.*, 83 Cal. Rptr. 3d 410, 417 (Cal. Ct. App. 2008). |
| Connecticut | "[E]very contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) Landmark Investment Group, LLC v. Chung Family Realty Partnership, LLC, 125 Conn.App. 678, 693, 10 A.3d 61, 75 (2010). "A claim of a breach of the duty of good faith and fair dealing is a separate cause of action." *Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut, Inc.*, Superior Court, complex litigation docket at Hartford, Docket No. X04 CV 08 5023532 (May 11, 2010, Shapiro, J.); see *Lund v. Stern & Co., Superior Court*, judicial district of New Britain, Docker No. CV 94 0463413 (November 3, 1994, Stengel, J.) (13 Conn. L. Rptr. 77, 78 n. 1) ("To the extent that the plaintiff may be alleging breach of the implied covenant of good faith and fair dealing as a separate cause of action, rather than in support of his tortious breach of contract claim, courts have allowed plaintiffs to allege breach of contract and breach of the implied covenant of good faith and fair dealing"). *Michel v. Bridgeport Hosp.*, 2011 WL 1176885, *6 (March 7, 2011 Conn. Super. 2011).

"In short, the plaintiffs pleaded two separate causes of action, and it is not necessarily inconsistent for the jury to find that the breach of the express terms did not cause any injury while finding that the breach of the implied covenant of good faith and fair dealing did cause legal injury." *Froom Dev. Corp. v. Developers Realty, Inc.*, 972 A.2d 239, 247 (Conn. App. Ct. 2009). |
| Oklahoma | Every contract carries an implicit and mutual covenant to act towards each other in good faith. *First Nat'l Bank & Trust Co. v. Kissee*, 859 P.2d 502, 509 (Okla. 1993).

Typically, a breach of the implied covenant of good faith and fair dealing merely results in a breach of contract claim. *Id.* The "special relationship" that gives rise to tort liability for breach of the implied duty to deal fairly |

**BANK OVERDRAFT MDL 2036**

**BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING**

| | |
|---|---|
| | and in good faith is marked by: (1) a disparity in bargaining power where the weaker party has no choice of terms, also called an adhesion contract; and (2) the elimination of risk. Tort liability is allowed in these types of contracts, because bad faith or, more properly, breach of the implied duty to deal fairly and in good faith, precipitates the precise economic hardship the contract was intended to avoid. *Embry v. Innovative Aftermarket Sys. L.P.*, 247 P.3d 1158, 1160, (Okla. 2010). |
| Oregon | There is an implied covenant of good faith and fair dealing in the performance and enforcement of every contract. *Comini v. Union Oil Co.*, 562 P.2d 175, 176-77 (Or. 1977); *United States Nat'l Bank v. Boge*, 814 P.2d 1082, 1085-86 (Or. 1991). The duty requires that parties act consistent with and in furtherance of the agreed upon terms of the contract and to "effectuate the reasonable contractual expectations of the parties." *Best v. United States Nat'l Bank*, 739 P.2d 554, 558; *Boge*, 814 P.2d at 1092. The common-law implied duty of good faith and fair dealing serves to effectuate the objectively reasonable expectations of the parties. *Klamath Off-Project Water Users, Inc. v. PacifiCorp*, 240 P.3d 94, 101 (Or. Ct. App. 2010).

A claim for breach of the duty of good faith and fair dealing may be pursued independently of a claim for breach of the express terms of the contract. *Id.* |
| Wisconsin | An implied duty of good faith accompanies every contract. *Brew City Redevelopment Group, LLC v. Ferchill Group*, 714 N.W.2d 582, 590 (Wis. Ct. App. 2006), *aff'd*, 724 N.W.2d 879 (2006). "The duty represents 'a guarantee by each party that he or she will not intentionally and purposely do anything to prevent the other party from carrying out his or her part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'" *Tang v. C.A.R.S. Prot. Plus, Inc.*, 734 N.W.2d 169, 183 (Wis. Ct. App. 2007).

A party may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled. *Foseid v. State Bank*, 541 N.W.2d 203, 212 (Wis. Ct. App. 1995). |

BANK OVERDRAFT MDL 2036

BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | GOOD FAITH AND FAIR DEALING SUBCLASS #2 |
|---|---|
| | IMPLIED COVENANT IS NOT A SEPARATE CAUSE OF ACTION AND REQUIRES BAD FAITH |
| | (1) Valid Contract; (2) Defendant Breached the Contract by Interfering with Plaintiff's Rights to Receive Benefits under the Contract in Bad Faith; (3) Plaintiff's Performance or Excuse; and (4) Resulting Damages |
| States | Louisiana |
| Class Representative | Charles Reed, Jr. |
| | Bad Faith Required for Breach of Implied Covenant of Good Faith & Fair Dealing |
| Louisiana | Contracts, or conventional obligations, must be performed in good faith. Thus, a party to a contract has an implied obligation to put forth a good faith effort to fulfill the conditions of the contract. *Payne v. Hurwitz*, 978 So. 2d 1000, 1006 (La. Ct. App. 2008). As a general rule, there is an implied covenant of good faith and fair dealing in every contract. Under Louisiana law, implied covenant of good faith performance of conventional obligations or contracts is not measured by higher objective standard, but by a subjective standard. Mere failure to fulfill a contractual obligation, without showing intent or ill will, does not constitute breach of good faith under Louisiana law. *Brill v. Catfish Shaks of Am., Inc.*, 727 F. Supp 1035, 1039-40 (E.D. La. 1989).

It is generally agreed that implied duty of good faith and fair dealing are an outgrowth of duties that have their foundation in the contract between parties. *Theriot v. Midland Risk Ins. Co.*, 694 So. 2d 184, 193 (La. 1997). A statute may impose a good faith and fair dealing duty on particular parties and creates a statutory right of action. *Id.* at 187. |
| | Elements of Breach of Contract |
| Louisiana | Breach of contract requires proof of the existence of a contract and a breach of that contract by the defendant. *Fussell v. Louisiana Business College, Inc.*, 478 So. 2d 652, 654 (La. Ct. App. 1985). To determine whether there is a breach of contract the court must first determine whether there was a contract and then determine whether damages have been proven by the plaintiff. *Frame v. Comeaux*, 735 So. 2d 753, 756 (La. Ct. App. 1999). It is incumbent for the plaintiff in order to state a cause of action, to allege that either the contract itself was illegal or that performance by plaintiff was excused under the express or implied conditions of the contract. |

# BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

*Penny v. Spencer Business College, Inc.* 85 So. 2d 365, 367-68 (La. Ct. App. 1956).

BANK OVERDRAFT MDL 2036

BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | GOOD FAITH AND FAIR DEALING SUBCLASS #3 |
|---|---|
| | IMPLIED COVENANT: NOT A SEPARATE CAUSE OF ACTION AND BREACH OF CONTRACT HAS FOUR ELEMENTS: (1) Valid Contract; (2) Plaintiffs' Performance or Excuse; (3) Defendant's Breach; and (4) Resulting damages |
| States | Colorado, Georgia, Illinois, Indiana, New York, Ohio |
| Class Representative | Linda McDaniel |
| | Elements of Breach of Implied Covenant of Good Faith & Fair Dealing |
| Colorado | The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations. Good faith performance of a contract involves faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. The application of the reasonable expectations doctrine often fails to give effect to some hornbook rules governing the construction of contracts, including the precept that contracts which are free from ambiguity are to be enforced as written. Nonetheless, adherence to this principle promotes the central policy underlying contract law, that of construing contracts so as to effectuate the parties' intentions. |
| | The duty of good faith and fair dealing applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time. The covenant may be relied upon only when the manner of performance under a specific contract term allows for discretion on the part of either party. However, it will not contradict terms or conditions for which a party has bargained. |
| | The concept of discretion in performance refers to one party's power after contract formation to set or control the terms of performance. Discretion occurs when the parties, at formation, defer a decision regarding performance terms of the contract. Generally, the good faith performance doctrine may be used to protect a "weaker" party from a "stronger" party. Weakness and strength in this context, however, do not refer to the relative bargaining power of the parties. Good faith performance cases typically involve arm's-length transactions, often between sophisticated business persons. The relative strength of the party exercising |

7

BANK OVERDRAFT MDL 2036

BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

|  |  |
|---|---|
|  | discretion typically arises from an agreement of the parties to confer control of a contract term on that party. The dependent party then is left to the good faith of the party in control. *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498-99 (Colo. 1995).<br><br>A breach of the implied covenant constitutes a breach of an obligation created by the contract, rather than breach of an obligation arising independently from the contract. Colorado courts have determined that in contractual disputes not arising in the employment context no independent tort claim for alleged breach of an implied covenant of good faith and fair dealing exists. *Decker v. Browning-Ferris Indus.*, 931 P.2d 436, 442 (Colo. 1997). |
| **Elements of Breach of Contract** | |
| Colorado | Elements for a breach of contract claim are: (1) existence of contract; (2) performance by plaintiff or some justification for nonperformance; (3) failure to perform contract by defendants; and (4) resulting damages to plaintiff. *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Georgia | "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Brack v. Brownlee*, 273 S.E.2d 390, 392 (1980) (citing *Restatement (Second) of Contracts* §231 (1981)) (cited in *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1363 (N.D. Ga. 2008)).<br><br>The implied duty of good faith and fair dealing requires both parties to a contract to perform their promises and provide such cooperation as is required for the other party's performance. And, where the manner of performance is left more or less to the discretion of one of the parties to the contract, he is bound to the exercise of good faith. The only exceptions to this rule are where an agreement by its express terms grants the party absolute or uncontrolled discretion in making a decision or where the contract is a leasehold contract. Good faith and reasonableness for purposes of the implied covenant of good faith and fair dealing do not comprehend arbitrary or capricious reasons or considerations based on pecuniary gain, or merely personal preferences; rather they refer to considerations of fairness and commercial reasonableness. *ULQ, LLC v. Meder*, 666 S.E.2d 713, 717 (Ga. Ct. App. 2008).<br><br>The Eleventh Circuit, in interpreting Georgia law, explained the concept succinctly: the covenant to perform in good faith is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms de facto when performance is maintained de jure. *Stuart* |

BANK OVERDRAFT MDL 2036

BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

|  |  |
|---|---|
|  | *Enters. Int'l, Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 883-84 (Ga. Ct. App. 2001) (citing *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1429 (11th Cir. 1990)).

The implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract. *Stuart Enters.*, 555 S.E.2d at 884. "Georgia law does not provide for an independent cause of action for breach of the common law covenants of good faith and fair dealing absent some allegation of a breach of an express contract provision. . . . Wachovia failed to exercise in good faith the discretion conferred to it by [provisions] of the Deposit Agreement, and by doing so, breached those provisions *de facto*." *White*, 563 F. Supp. 2d at 1364 n.9. Under such circumstances that supports an action even where Wachovia performed according to the terms de jure. |
| **Elements of Breach of Contract** | |
| Georgia | The elements for a breach of contract claim in Georgia are breach of a valid contract, resultant damages, to the party who has the right to complain about the contract being broken. *Kuritzky v. Emory Univ.*, 669 S.E.2d 179, 181 (Ga. Ct. App. 2008). The elements for a breach of contract claim in Georgia are the breach, which must be more than de minimis, and the resultant damages to the party having the right to complain about the contract being broken. *TechBios, Inc. v. Champagne*, 688 S.E.2d 378, 381 (Ga. Ct. App. 2009). |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Illinois | The principle of good faith and fair dealing ensures that parties do not try to take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or to do anything that will destroy the other party's right to receive the benefit of the contract. *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001).

Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted. This good faith principle is used only as a construction aid in determining the intent of the contracting parties. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. A plaintiff must plead existence of contractual discretion. The good faith duty to exercise contractual discretion reasonably does not apply where no contractual discretion exists. *Mid-W. Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 914-16 (Ill. App. Ct. 2004). |

**BANK OVERDRAFT MDL 2036**

**BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING**

| | |
|---|---|
| | The implied covenant of good faith and fair dealing is a contractual covenant is not generally recognized as an independent source of duties giving rise to a cause of action in tort. *Voyles*, 751 N.E.2d at 1131. |
| | **Elements of Breach of Contract** |
| Illinois | The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Henderson-Smith & Assocs. v. Nakamani Family Serv. Ctr.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001); *Sherman v. Ryan*, 911 N.E.2d 378, 397 (Ill. App. Ct. 2009) |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| Indiana | "We decline to hold that the relationship between a bank and a checking account holder is always necessarily a fiduciary one. However, we do believe the relationship invokes a duty of good faith and fair dealing to at least the same extent as does a buyer-seller relationship. A bank is inherently in a position superior to its checking account holders, who, in order to conduct their business, must depend on the bank to protect the account holder's funds and to honor checks on the account holder's account when they are properly presented for payment. The bank and account holder relationship, like the buyer and seller relationship, is sufficient to support an inference of fraud, and Wells' pleadings thus allege the first element of constructive fraud." *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1251 (Ind. Ct. App. 1998). |
| | **Elements of Breach of Contract** |
| Indiana | The elements of a breach of contract action are: (1) the existence of a contract; (2) the defendant's breach; and (3) damages. *McKeighen v. Daviess County Fair Bd.*, 918 N.E.2d 717, 721 (Ind. Ct. App. 2009). Generally where one seeks recovery of damages from another whom he alleges has violated the terms of a contract, plaintiff must both allege and prove that he himself performed or offered to perform the terms of the contract up to the time of the alleged breach. *Clark Mut. Life Ins. Co. v. Lewis*, 217 N.E.2d 853, 857 (Ind. Ct. App. 1966). |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| New York | In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). Implied covenant of good faith and fair dealing embraces pledge that neither party to contract shall do anything that will have effect of destroying or injuring other party's right to receive fruits of contract. *MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 611 (N.Y. Sup. Ct. 2010). |
| | There is no separate claim for breach of the implied covenant of good faith and fair dealing; it is a form of |

**BANK OVERDRAFT MDL 2036**

**BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING**

| | |
|---|---|
| | breach of contract claim. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). |
| | **Elements of Breach of Contract** |
| New York | The essential elements of a cause of action to recover damages for breach of contract: the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages. *Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (N.Y. App. Div. 2010). |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| Ohio | The duty of good faith and fair dealing is integral to any contract. *Ireton v. JTD Realty Invs.*, LLC, 2011 Ohio 670, P51 (Ohio Ct. App. 2011); *cf. Fodor v. First Nat'l Supermarkets, Inc.*, 589 N.E.2d 17, 20 (Ohio 1992) (concurrence, suggesting Ohio Supreme Court refuses to apply the implied covenant of good faith and fair dealing to employment relationships). The duty of good faith applies where one party has discretionary authority to determine certain terms of the contract and requires the parties to deal reasonably with each other. *DavCo. Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-cv-1064, 2008 U.S. Dist. LEXIS 27108 (S.D. Ohio Mar. 19, 2008).

Most Ohio courts hold that there is no claim for breach of the implied covenants of good faith and fair dealing independent of a breach of contract action. *See, e.g., Mortg. Elec. Registration Sys. v. Mosley*, 2010 Ohio 2886, P49 (Ohio Ct. App. 2010). A few courts have recognized a separate cause of action in the insurance context. *Walton v. Residential Fin. Corp.*, 151 Ohio Misc. 2d 28 (Ohio 2009). |
| | **Elements of Breach of Contract** |
| Ohio | The elements of a breach of contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *State v. Ferreira*, 2006 Ohio 6060 (Ohio Ct. App. 2006). |

BANK OVERDRAFT MDL 2036

BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | GOOD FAITH AND FAIR DEALING SUBCLASS #4 |
|---|---|
| | IMPLIED COVENANT NOT A SEPARATE CAUSE OF ACTION AND BREACH OF CONTRACT REQUIRES A MATERIAL BREACH (1) Valid Contract; (2) Defendant's Material Breach; and (3) Resulting Damages |
| **States** | Florida, New Mexico |
| **Class Representative** | Estella Lopez |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| Florida | The covenant is intended to protect the reasonable expectations of the parties in light of their express agreement. *Ins. Concepts & Design, Inc. v. Healthplan Servs.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001). The doctrine of implied covenant of good faith cannot be used to vary the terms of an express contract. A duty of good faith must relate to performance of an express term of the contract and is not an abstract and independent term of a contract. It must be anchored to the performance of an express contractual obligation. There can be no cause of action for a breach of the implied covenant absent breach of an express term of the contract. *Flagship Resort Dev. Corp. v. Interval Int'l, Inc.*, 28 So. 3d 915, 924 (Fla. Dist. Ct. App. 2010).

A claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract was breached. *Ins. Concepts & Design*, 785 So. 2d at 1234. |
| | **Elements of Breach of Contract** |
| Florida | A contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008). To constitute a vital or material breach, a defendant's nonperformance of a contract must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part but a defendant's failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach. *Atlanta Jet v. Liberty Aircraft Servs, LLC*, 866 So. 2d 148, 150 (Fla. Dist. Ct. App. 2004). A material breach by one party may be considered a discharge of the other party's obligations there under. A party to a contract is not entitled to specific performance where that party did not perform its obligations under the clear terms of the contract. *Nacoochee Corp. v. Pickett*, 948 So. 2d 26, 30 (Fla. Dist. Ct. App. 2006). |

BANK OVERDRAFT MDL 2036

BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | Elements of Breach of Implied Covenant of Good Faith & Fair Dealing |
|---|---|
| New Mexico | "[E]very contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract." *Sanders v. FedEx Ground Package Sys.*, 188 P.3d 1200, 1203 (N.M. 2008). "The breach of this covenant requires a showing of bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Cont'l Potash v. Freeport-McMoran, Inc.*, 858 P.2d 66, 82 (N.M. 1993).<br><br>The inquiry regarding good faith and fair dealing is "[w]hether there has been a breach of the covenant of good faith and fair dealing is a factual inquiry that focuses on the contract and what the parties agreed to." *Sanders*, 188 P.3d at 1208. |
| | Elements of Breach of Contract |
| New Mexico | The elements of a breach of contract claim are: a valid contract, a material breach, causation, and damages. *Camino Real Mobile Home Park P'ship v. Wolfe*, 891 P.2d 1190 (N.M. 1995).<br><br>Some courts have described a material breach as the failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract. Put another way, a material breach is one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract. Other courts have noted that a material breach occurs when there is a breach of an essential and inducing feature of the contract. The Restatement also provides a useful framework for analyzing whether a breach of contract is material. In particular, the Restatement sets forth five factors that courts should consider when deciding the materiality of a breach of contract. *See Restatement (Second) of Contracts*, § 241 (1981). One factor to examine is the extent to which the injured party will be deprived of the benefit he or she reasonably expected to receive from the contract. Another factor considers the extent to which the breaching party will suffer forfeiture if the breach is deemed material. Courts should also explore whether the injured party can be adequately compensated in damages for the breach. A fourth factor focuses on the likelihood that the breaching party will cure his or her failure to perform under the contract. And the fifth factor evaluates whether the breaching party's conduct comported with the standards of good faith and fair dealing. *Famiglietta v. Ivie-Miller Enters., Inc.*, 966 P.2d 777, 782 (N.M. Ct. App. 1998). |

# EXHIBIT B

# BANK OVERDRAFT MDL 2036
# UNJUST ENRICHMENT SUBCLASSES

## I. OVERVIEW

Below are surveys related to the four proposed subclasses for unjust enrichment. The first table sets forth those states in which Chase does business and that use the *Restatement's*[1] definition of unjust enrichment. The second table sets forth those states in which Chase does business and that use the *Restatement's* definition but add an additional element requiring that the defendant have knowledge of the benefit received. The third table lists states in which Chase does business and that allow an unjust enrichment claim only if there is an inadequate remedy at law. The fourth table lists the states in which Chase does business and that require wrongful conduct.[2]

| UNJUST ENRICHMENT SUBCLASS #1a | |
| --- | --- |
| **BASIC RESTATEMENT DEFINITION** <br> (1) Plaintiff conferred a benefit on Defendant; (2) Defendant accepts/retains benefit; (3) under circumstances it would be unjust for Defendant to retain the benefit. | |
| **States** | California, Connecticut, Michigan, New Mexico, West Virginia |
| **Class Representative** | Andrea Luquetta |
| **Case Law** | |
| California | Under the law of restitution, an individual may be required to make restitution if he is unjustly enriched at the expense of another. *Restatement (1st) Restitution* §1. A person is enriched if he receives a benefit at another's expense. *Id.* cmt. a. The term "benefit" "denotes any form of advantage." *Id.* cmt. b. A benefit is conferred not only when one adds to the property of another, but also when one saves the other from expense |

---

[1] *Restatement (1st) Restitution* §1 (1937) ("*Restatement (1st) Restitution*").

[2] Plaintiffs do not address any privity requirements because all Class members had account agreements with Defendant. Thus, any such requirement is met classwide and is hence not a material difference.

BANK OVERDRAFT MDL 2036
UNJUST ENRICHMENT SUBCLASSES

| | |
|---|---|
| | or loss. Even when a person has received a benefit from another, he is required to make restitution "only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it." *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51, 924 P.2d 996, 1003 (1996) (citation omitted); *see also In re Easysaver Rewards Litig.*, 737 F. Supp. 2d 1159, 1180 (S.D. Cal. 2010) ("California courts permit a plaintiff to invoke the doctrine of unjust enrichment"); *Marilao v. McDonald's Corp.*, 09-CV-01014-H (AJB), 2009 U.S. Dist. LEXIS 86150, *11 (S.D. Cal. Sept. 21, 2009) ("Plaintiff has sufficiently alleged a cause of action for unjust enrichment"). |
| Connecticut | Unjust enrichment doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. The question is: Did the party liable, to the detriment of someone else, obtain something of value to which the party liable was not entitled? Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 970 A.2d 592, 610 (Conn. 2009). |
| Michigan | Under the equitable doctrine of unjust enrichment, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Restatement (1st) Restitution* §1. The remedy is one by which "'the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received'" to ensure that "'exact justice'" is obtained. *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*, 504 N.W.2d 635, 640 (Mich. 1993) (citation omitted). Unjust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another. "No person is unjustly enriched unless the retention of the benefit would be unjust." *Buell v. Orion State Bank*, 41 N.W.2d 472, 478 (Mich. 1950). |
| New Mexico | A person who has been unjustly enriched at the expense of another is required to make restitution to the other. *Restatement (1st) Restitution* §1. *Sunwest Bank of Albuquerque, N.A. v. Colucci*, 872 P.2d 346, 348 (N.M. 1994). To prevail on a claim of unjust enrichment, one must show that: another has knowingly benefitted at one's expense in a manner such that allowance of the other to retain the benefit would be unjust. *See generally Restatement (1st) Restitution* §1, *Ontiveros Insulation Co., Inc. v. Sanchez*, 3 P.3d 695, 698 (N.M. Ct. App. 2000). |

# BANK OVERDRAFT MDL 2036
## UNJUST ENRICHMENT SUBCLASSES

| West Virginia | An implied contract arises from the principle of equity that one person may not enrich himself unjustly at the expense of another. *Marshall v. Elmo Greer & Sons, Inc.*, 456 S.E.2d 554, 557 (W. Va.1995). The Court has also indicated that if benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefore, the law requires the party receiving the benefits to pay their reasonable value. *Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 884-85 (W. Va. 2000). |
|---|---|

BANK OVERDRAFT MDL 2036
UNJUST ENRICHMENT SUBCLASSES

| | UNJUST ENRICHMENT SUBCLASS #2: |
|---|---|
| | Relief sought: The Plaintiffs, and those similarly situated, seek to recover all overdraft fees charged by the Defendant as a result of the Defendant's unlawful practices. (1) Plaintiff conferred a benefit on the Defendant; (2) Defendant accepts, retains benefit; (3) Defendant appreciated the benefit conferred; and (4) under circumstances it would be unjust for Defendant to retain the benefit. |
| States | Florida, Georgia, Idaho, Kentucky, Oregon, Washington, Wisconsin |
| Class Representatives | Estella Lopez, Linda McDaniel |
| | Case Law |
| Florida | The essential elements that must be proven under a theory of unjust enrichment are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. *Jackson-Jester v. Aziz*, 48 So. 3d 88, 90 (Fla. Dist. Ct. App. 2010). |
| Georgia | Under theory of unjust enrichment, party cannot receive and retain benefit of another's labor without duty to pay for reasonable value of such work. *Yoh v. Daniel*, 497 S.E.2d 392 (Ga. Ct. App. 1998). Inherent in unjust enrichment is the requirement that the receiving party knew of the value being bestowed upon them by another and failed to stop the act or to reject the benefit. *Reidling v. Holcomb*, 483 S.E.2d 624, 626 (Ga. Ct. App. 1997). |
| Idaho | In order to establish the prima facie case for unjust enrichment, the plaintiff must show that there was: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of the benefit; (4) under circumstances that would be inequitable for the defendant to retain the benefit without payment to the plaintiff of the value thereof. *Aberdeen-Springfield Canal Co. v. Peiper*, 982 P.2d 917, 923 (Idaho 1999). |
| Kentucky | For a party to prevail under the theory of unjust enrichment, they must prove the following elements: (1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; |

4

**BANK OVERDRAFT MDL 2036**

**UNJUST ENRICHMENT SUBCLASSES**

| | |
|---|---|
| | and (3) inequitable retention of benefit without payment for its value. *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. Ct. App. 2009). |
| Oregon | A benefit received and retained can consist of any form of advantage and exists, for example, where one party adds to the property of another or saves another from expense or loss. *Restatement (1st) Restitution* §1 cmt. b. But the mere receipt of a benefit is not enough. Rather, its receipt and retention must be unjust under all of the circumstances. *Hitchcock v. Delaney*, 86 P.3d 73, 76 (Or. Ct. App. 2004). Unjust enrichment has the following elements: (1) a benefit conferred; (2) awareness by the recipient that a benefit has been received; and (3) it would be unjust to allow retention of the benefit without requiring the recipient to pay for it. *Edward D. Jones & Co. v. Mishler*, 983 P.2d 1086, 1101 (Or. Ct. app. 1999). |
| Virginia | A man shall not be allowed to enrich himself unjustly at the expense of another. *Kern v. Freed Co., Inc.*, 299 S.E.2d 363, 365 (Va. 1983). There are three general elements which must be shown: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant; (4) in circumstances that render it inequitable for the defendant to retain the benefit without paying for its value. *Whitehurst v. Cho*, No. 99231, 1992 WL 884510, *1 (Va. Cir. Ct. Feb. 19, 1992). |
| Washington | The purpose of restitution is to remedy unjust enrichment. *See Restatement of Restitution* §1 ("A person who has been unjustly enriched at the expense of another is required to make restitution to the other."); *Ehsani v. McCullough Family P'ship*, 159 P.3d 407, 411 (Wash. 2007). The three elements that must be established to sustain a claim based on unjust enrichment: a benefit conferred upon the defendant by the plaintiff; an appreciation or knowledge by the defendant of the benefit; and the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008) (citation omitted). |
| Wisconsin | To establish a claim for unjust enrichment, the plaintiff must prove the following elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had an appreciation or knowledge of the benefit; and (3) the defendant accepted or retained the benefit; (4) under circumstances making it inequitable for the defendant to retain the benefit without payment of its value. *Buckett v. Jante*, 767 N.W.2d 376, 380 (Wis. 2009) (citing *S & M Rotogravure Serv., Inc. v. Baer*, 77 Wis. 2d 454, 460, 252 N.W.2d 913 (1977)). |

BANK OVERDRAFT MDL 2036
UNJUST ENRICHMENT SUBCLASSES

| UNJUST ENRICHMENT SUBCLASS #3 | |
|---|---|
| (b) Plaintiff confers a benefit; (2) Defendant accepts, retains benefit; (3) It would be unjust for the Defendant to retain the benefit and (4) there is an inadequate remedy at law. | |
| **States** | Arizona, Colorado, Louisiana, New Jersey, New York, Ohio, Oklahoma, Utah |
| **Class Representative** | Charles Reed, Jr. |
| **Case Law** | |
| Arizona | Unjust enrichment occurs when one party has and retains money or benefits that in justice and equity belong to another. *Loiselle v. Cosas Mgmt. Group, LLC*, 228 P.3d 943, 946 (Ariz. Ct. App. 2010). To recover under a theory of unjust enrichment, a plaintiff must demonstrate: an enrichment, an impoverishment, a connection between the enrichment and impoverishment, the absence of justification for the enrichment and impoverishment, and the absence of a remedy provided by law. *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011). |
| Colorado | Former employer had an adequate remedy at law, and thus could not recover on its unjust enrichment claim. *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1205 (Colo. Ct. App. 2009). Unjust enrichment is a legal claim in quasi-contract for money damages based upon principles of restitution. The *Restatement (1st) Restitution* §1 states "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." The comment to this section explains that "[a] person is enriched if he has received a benefit. A person is unjustly enriched if the retention of the benefit would be unjust." *Id.* cmt. a. *DCB Const. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 118-19 (Colo. 1998). |
| Louisiana | Unjust enrichment is founded on the equitable principle that no one should be enriched at the expense of another. *Bamburg Steel Bldgs., Inc. v. Lawrence Gen. Corp.*, 817 So.2d 427, 437 (La. Ct. App. 2002). The Louisiana Civil Code's doctrine of unjust enrichment provides a remedy for people who have enriched someone without just compensation. LA. Civ. Code Ann. art. 2298 (2011). To recover, the claimant must prove: enrichment of the defendant; impoverishment of the plaintiff; a connection between the enrichment |

6

# BANK OVERDRAFT MDL 2036
## UNJUST ENRICHMENT SUBCLASSES

| | |
|---|---|
| | and the impoverishment; no justification for the alleged unjust enrichment; and the lack of any other remedy at law." *Quilio & Assocs. v. Plaquemines Parish Gov't*, 931 So. 2d 1129, 1137 (La. Ct. App. 2006). |
| New Jersey | Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law. *Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992) *aff'd*, 275 N.J. Super. 134, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994); *D.R. Horton Inc. - New Jersey v. Dynastar Dev., L.L.C.*, No. MER-L-1808-00, 2005 WL 1939778, *18 (N.J. Super. Ct. Law Div. Aug. 10, 2005). The doctrine of unjust enrichment is equitable in nature. It is applied where the facts show that one party has received a benefit at the expense of another, which it is simply unjust to permit him to retain. The remedy for unjust enrichment is an order of restitution. *Restatement (1st) Restitution* §1. *Jersey Shore Sav. & Loan Ass'n v. Edelstein*, 530 A.2d 1320, 1323 (N.J. Super. Ct. Ch. Div. 1987); *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285 (N.J. 1992) (recovery in quasi-contract is generally allowed when one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust). |
| New York | The remedy of an equitable lien is unwarranted where damages lie for unjust enrichment. *Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 418 (N.Y. App. Div. 1999); *Bennett v. John*, 151 A.D.2d 711 (N.Y. App. Div. 1989) ("the plaintiff has an adequate remedy at law, to wit, monetary damages for unjust enrichment and that dismissal of the claim for an equitable lien is warranted"). A person shall not be allowed to enrich himself unjustly at the expense of another. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it. *See Restatement (1st) Restitution* §1. The general rule is that the plaintiff must have suffered a loss and an action not based upon loss is not restitutionary. *State v. Barclays Bank of New York, N.A.*, 563 N.E.2d 11, 15 (N.Y. 1990). The doctrine of unjust enrichment does not require wrongful conduct by the one enriched only that the enrichment be unjust. *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 179 A.D. 2d 592, 593 (N.Y. App. Div. 1992). |
| Ohio | In order for an equitable claim, such as unjust enrichment, to lie, "it is requisite that the primary right involved be an equitable right as distinguished from a legal right, or that the remedy at law as to the right involved is not full, adequate and complete." *Jones v. Jones*, 903 N.E.2d 329, 336 (Ohio Ct. App. 2008). The general rule of unjust enrichment is stated in the *Restatement (1st) Restitution* §1: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Unjust |

**BANK OVERDRAFT MDL 2036**

**UNJUST ENRICHMENT SUBCLASSES**

| | |
|---|---|
| | enrichment occurs when a party retains money or benefits which in justice and equity belong to someone else. *Dixon v. Smith*, 695 N.E.2d 284, 289 (Ohio Ct. App. 1997). "To recover on a claim of unjust enrichment, the party asserting the claim must demonstrate a benefit conferred by a plaintiff upon a defendant; knowledge by the defendant of the benefit; and retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Dailey v. Craigmyle & Son Farms, L.L.C.*, 894 N.E.2d 1301, 1309 (Ohio Ct. App. 2008). |
| Oklahoma | Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment. *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006). The general principle is that restitution will be available whenever one has received a benefit to which another is justly entitled. The inequity of retaining a benefit can spring from a variety of sources, such as fraud or other unconscionable conduct in which the recipient has received a benefit for which has no responded quid pro quo. *Warren v. Century Bankcorporation, Inc.*, 741 P.2d 846, 852 (Okla. 1987). *Restatement (1st) Restitution* §1 provides: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." |
| Utah | If a legal remedy is available, the law will not imply the equitable remedy of unjust enrichment. A plaintiff must affirmatively show a lack of an adequate remedy at law on the face of the pleading. *Thorpe v. Washington City*, 243 P.3d 500, 507 (Utah Ct. App. 2010). Unjust enrichment occurs when a person has and retains money or benefits that in justice and equity belong to another; however, the fact that a person benefits another is not itself sufficient to require the other to make restitution. *Hess v. Johnston*, 163 P.3d 747, 754 (Utah Ct. App. 2007). To prevail on a claim for unjust enrichment, a plaintiff must prove a benefit conferred on one person by another; the conferee must appreciate or have knowledge of the benefit; and there must be the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value. *Desert Miriah, Inc. v. B & L Auto, Inc.*, 12 P.3d 580, 582 (Utah 2000). |

BANK OVERDRAFT MDL 2036

UNJUST ENRICHMENT SUBCLASSES

UNJUST ENRICHMENT SUBCLASS #4

RESTATEMENT: UNJUST AND REQUIRES WRONGFUL CONDUCT

(1) Plaintiff confers a benefit; (2) Defendant accepts/retains benefit;

(3) under circumstances that it would be unjust for the Defendant to retain the benefit due to Defendant's wrongful conduct.

| States | Indiana, Texas |
|---|---|
| Class Representative | John Stone |
| CASE LAW | |
| Indiana | "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Restatement (1st) Restitution* §1. A claimant must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust. *Zoeller v. E. Chicago Second Century, Inc.*, 904 N.E.2d 213, 220 (Ind. 2009). Pivotal concept of unjust enrichment is occurrence of wrong or something unjust. *Savoree v. Indus. Contracting & Erecting, Inc.*, 789 N.E.2d 1013 (Ind. Ct. App. 2003). |
| Texas | Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits. Unjust enrichment occurs when the person sought to be charged has wrongfully secured a benefit or has passively received one which it would be unconscionable to retain. Thus, a party may recover under the theory of unjust enrichment when one person has obtained a benefit from another by fraud, duress, or the other taking of an undue advantage. *City of The Colony v. N. Texas Mun. Water Dist.*, 272 S.W.3d 699, 731 (Tex. App. 2008). |

9

# EXHIBIT C

# BANK OVERDRAFT MDL 2036
# UNCONSCIONABILITY

## I. OVERVIEW

All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

(1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

(2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

U.C.C. §2-302 (2011).

Below are three tables representing the unconscionability subclass. The first table sets forth those states in which Chase does business and that require a showing of *both* procedural *and* substantive unconscionability. The second table sets forth those states in which Chase does business and that require a showing of substantive unconscionability *only*. The final table lays out those states in which Chase does business and that require *either* procedural *or* substantive unconscionability.

The proposed class representatives for the unconscionability subclass are Andrea Luquetta, Estella Lopez, Linda McDaniel, Charles Reed, Jr., and John Stone.

BANK OVERDRAFT MDL 2036
UNCONSCIONABILITY

| | If a Provision or a Term Is Deemed As Unconscionable; and (2) If Unequal Bargaining and/or Contract of Adhesion or Other Elements of Procedural Unconscionability |
|---|---|
| **States** | California, Colorado, Connecticut, Florida, Georgia, Idaho, Louisiana, Michigan, New Jersey, Ohio, Oklahoma, Texas, West Virginia, Wisconsin |
| | **Both Elements Required** |
| California | **CAL. CIV. CODE § 1670.5 (2011)**<br><br>"(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br><br>(b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."<br><br>STATUTORY NOTES TO CAL. CIV. CODE § 1670.5<br><br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (b) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. |

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY

|  | |
|---|---|
|  | **CASELAW**<br>Unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. Although procedural and substantive unconscionability must both be present for a court to exercise its discretion to refuse to enforce a contract or clause, they need not be present in the same degree; the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000). |
| Colorado | **COLO. REV. STAT. ANN. § 4-2-302 (2010)**<br>"(1) If the court, as a matter of law, finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect, to aid the court in making the determination."<br>**STATUTORY NOTES TO COLO. REV. STAT. ANN. § 4-2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>Colorado does not use the terms procedural and substantive but recognizes that both must be present to succeed in bringing an unconscionability claim. Factors to consider in determining unconscionability of contract include: (1) terms of the agreement, including substantive |

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY

| | |
|---|---|
| | unfairness; (2) relationship of the parties, including factors of assent, unfair surprise, and notice [substantively unconscionable]; and (3) all the circumstances surrounding the formation of the contract, including its commercial setting, purpose, and effect [procedurally unconscionable]. *Indus. Products Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. Ct. App. 1997). |
| Connecticut | **CONN. GEN. STAT. ANN. § 42a-2-302 (2010)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**CASELAW**<br>The doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made, that is, some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Bender v. Bender*, 975 A.2d 636, 658 (Conn. 2009). |
| Florida | **FLA. STAT. ANN. § 672.302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." |

# BANK OVERDRAFT MDL 2036

# UNCONSCIONABILITY

**STATUTORY NOTES TO FLA. STAT. ANN. § 672.302**

The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.

**CASELAW**

To succeed on an unconscionability claim, there must be a showing of both procedural and substantive unconscionability. *Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630, 632 (Fla. Dist. Ct. App. 2008); *Bland v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 257 (Fla. Dist. Ct. App. 2006). Procedural unconscionability concerns the manner in which the contract is entered, whereas substantive unconscionability looks to whether the contractual terms are unreasonable and unfair. "Most courts take a 'balancing approach' to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability. The amount of either may vary . . . the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025 (Fla. Dist. Ct. App. 2005).

| | |
|---|---|
| Georgia | **GA. CODE ANN. § 11-2-302 (2011)**<br><br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br><br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." |

BANK OVERDRAFT MDL 2036
UNCONSCIONABILITY

**STATUTORY NOTES TO GA. CODE ANN. § 11-2-302**

The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.

**CASELAW**

Foreign courts have generally divided the relevant factors into procedural and substantive elements. Procedural unconscionability addresses the process of making the contract, while substantive unconscionability looks to the contractual terms themselves. A non-inclusive list of some factors courts have considered in determining whether a contract is procedurally unconscionable includes the age, education, intelligence, business acumen and experience of the parties, their relative bargaining power, the conspicuousness and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice. As to the substantive element of unconscionability, courts have focused on matters such as the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns. *NEC Tech., Inc. v. Nelson*, 478 S.E.2d 769, 771-72 (Ga. 1996).

| Idaho | **IDAHO CODE ANN. § 28-2-302 (2011)** |
|---|---|
| | "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. |
| | (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." |

6

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY

| | |
|---|---|
| | **STATUTORY NOTES TO IDAHO CODE ANN. § 28-2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>For a contractual provision to be voided as unconscionable, it must be both procedurally and substantively unconscionable. Procedural unconscionability relates to the bargaining process leading to the agreement while substantive unconscionability focuses upon the terms of the agreement itself. *Lovey v. Regence BlueShield of Idaho*, 72 P.3d 877, 882 (Idaho 2003). |
| Louisiana | **CASELAW**<br>Louisiana does not use the terms procedural and substantive but recognizes that both must be present to succeed in bringing an unconscionability claim. An unconscionable contract or term is lacking the free consent that the Louisiana Civil Code requires of all contracts. To be invalidated, a provision must possess features of both adhesionary formation and unduly harsh substance. *Lafleur v. Law Offices of Anthony G. Buzbee, P.C.*, 960 So. 2d 105, 112 (La. Ct. App. 2007). |
| Michigan | **MICH. COMP. LAWS ANN. § 440.2302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." |

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY

**STATUTORY NOTES TO MICH. COMP. LAWS ANN. §440.2302**

The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz,* 172 F.2d 80 (3d Cir. 1948)) and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.

**CASELAW**

For a contract or a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. Substantive unconscionability exists where the challenged term is not substantively reasonable. *Liparoto Const., Inc. v. Gen. Shale Brick, Inc.,* 772 N.W.2d 801, 805 (Mich. Ct. App. 2009).

---

**New Jersey**

**N.J. STAT. ANN. § 12A:2-302 (2011)**

"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

**STATUTORY NOTES TO N.J. STAT. ANN. §12A:2-302 (West)**

The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf.

BANK OVERDRAFT MDL 2036
UNCONSCIONABILITY

*Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.

CASELAW

Courts generally have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability. *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006). Unconscionability traditionally entails discussion of two factors: procedural unconscionability, which "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process," and substantive unconscionability, which generally involves harsh or unfair one-sided terms. *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 912 A.2d 88, 96 (N.J. 2006).

| Ohio | OHIO REV. CODE ANN. §1302.15 (2011)

"(A) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
(B) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."

STATUTORY NOTES TO OHIO REV. CODE ANN. §1302.15

The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY

| | |
|---|---|
| | **CASELAW**<br>The party challenging a contract as unconscionable must prove a quantum of both procedural and substantive unconscionability. However, substantive and procedural unconscionability need not be present in equal measure in the agreement in question: Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Hayes v. Oakridge Home*, 908 N.E.2d 408, 420-21 (Ohio 2009). |
| Oklahoma | **OKLA. STAT. ANN. tit. 12A, § 2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**CASELAW**<br>Oklahoma does not use the terms procedural and substantive but recognizes that both must be present to succeed in bringing an unconscionability claim. The basic test of unconscionability of a contract is whether under the circumstances existing at the time of making of the contract, and in light of the general commercial background and commercial need of a particular case, clauses are so one-sided as to oppress or unfairly surprise one of the parties. Unconscionability has generally been recognized to include an absence of meaningful choice [procedurally unconscionable] on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party [substantively unconscionable]. *Bilbrey v. Cingular Wireless, L.L.C.*, 164 P.3d 131, 136 (Okla. 2007). |

10

# BANK OVERDRAFT MDL 2036
# UNCONSCIONABILITY

| | |
|---|---|
| Texas | **TEX. BUS. & COM. CODE ANN. § 2.302 (2010)**<br>"(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO TEX. BUS. & COM. CODE ANN. § 2.302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>Unconscionability includes two aspects (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton Co.*, 80 S.W.3d 566, 571 (Tex. 2002). The party asserting unconscionability bears the burden of proving both procedural and substantive unconscionability. *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 603 (Tex. Ct. App. 2008). |
| West Virginia | **W. VA. CODE ANN. § 46-2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. |

# BANK OVERDRAFT MDL 2036
# UNCONSCIONABILITY

| | |
|---|---|
| | (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." |
| | **STATUTORY NOTES TO W. VA. CODE ANN. § 46-2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. |
| | **CASELAW**<br>Unconscionability may be divided into two categories: procedural and substantive. Procedural unconscionability is concerned with the inequities and unfairness in the bargaining process. Substantive unconscionability is involved with determining unfairness in the contract itself. *Drake v. W. Virginia Self-Storage, Inc.*, 509 S.E.2d 21, 24 (W. Va. 1998). |
| Wisconsin | **WIS. STAT. ANN. § 402.302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO WIS. STAT. ANN. § 402.302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be |

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY

unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.

**CASELAW**

For a contract or a contract provision to be declared invalid as unconscionable, the contract or contract provision must be determined to be both procedurally and substantively unconscionable. Determination of contractual unconscionability requires a mixture of both procedural and substantive unconscionability that is analyzed on a case-by-case basis; the more substantive unconscionability present, the less procedural unconscionability is required, and vice versa. *Wisconsin Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 164 (Wis. 2006).

13

BANK OVERDRAFT MDL 2036
UNCONSCIONABILITY

| ELEMENTS OF AN UNCONSCIONABILITY CLAIM: Either Procedurally or Substantively Unconscionable | | |
|---|---|---|
| (ii) Contract Terms Are So One-Sided as To Be Unconscionable; or (2) Unequal Bargaining and Contract of Adhesion or Other Elements of Procedural Unconscionability | | |

| States | Arizona, Illinois, Kentucky, New Mexico, Utah, Washington | |
|---|---|---|
| | Effect if Either | |
| Arizona | ARIZ. REV. STAT. ANN. § 47-2302 (2011)
"A. If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
B. When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

STATUTORY NOTES TO ARIZ. REV. STAT. ANN. § 47-2302
The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. | |

14

BANK OVERDRAFT MDL 2036
UNCONSCIONABILITY

| | |
|---|---|
| | **CASELAW**<br>Substantive unconscionability of contract concerns actual terms of contract and examines relative fairness or obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in obligations and rights imposed by bargain, and significant cost-price disparity. Under the statute governing unconscionable contract or clause, claim of unconscionability can be established with a showing of substantive unconscionability alone, especially in cases involving either price-cost disparity or limitation of remedies. If only procedural irregularities are present, it may be more appropriate to analyze the claims under the doctrines of fraud, misrepresentation, duress, and mistake, although such irregularities can make a case of procedural unconscionability. *Maxwell v. Fid. Fin. Servs., Inc.*, 907 P.2d 51, 58-59 (Ariz. 1995). |
| Illinois | **810 ILL. COMP. STAT. ANN. 5/2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>STATUTORY NOTES TO 810 ILL. COMP. STAT. ANN. 5/2-302<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. |

**BANK OVERDRAFT MDL 2036**
**UNCONSCIONABILITY**

| | |
|---|---|
| | **CASELAW**<br>We rejected the requirement that both procedural and substantive unconscionability must be found before a contract or a contract provision will be found to be unenforceable. A finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006). Procedural unconscionability refers to a situation where a contract term is so difficult to find, read, or understand that the plaintiff can not fairly be said to have been aware he was agreeing to it. Procedural unconscionability always takes into account the disparity of bargaining power between the drafter of the contract and party claiming unconscionability. *Id.* at 264. Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. *Id.* at 267. |
| Kentucky | **KY. REV. STAT. ANN. § 355.2-302 (2010)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO KY. REV. STAT. ANN. § 355.2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these |

16

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY

| | |
|---|---|
| | questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. <br><br>**CASELAW** <br><br> Review of unconscionability involves a two-step process: (1) a review focused on the procedures surrounding the making of the clause (procedural unconscionability); and (2) a review of the substantive content of the clause (substantive unconscionability). *Schnuerle v. Insight Communications Co., L.P.*, No. 2008-SC-000789-DG, 2010 WL 5129850, at *10 (Ky. Dec. 16, 2010). The parties raise the issue of whether a finding of unconscionability requires *both* procedural and substantive unconscionability. . . . [T]here need not be both. Substantive unconscionability, alone, is grounds for a determination that an arbitration clause, or an individual provision thereof, is unenforceable. Similarly, the converse is true. If the arbitration clause is written in "legalese" and disguised in the "fine print," the provision may be unenforceable even though not substantively unconscionable. *Id.* at *10, n. 11. |
| New Mexico | **N.M. STAT. ANN. § 55-2-302 (2010)** <br><br> "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." <br><br>**CASELAW** <br><br> The classic articulation of unconscionability is that it is comprised of two prongs: substantive unconscionability and procedural unconscionability. Substantive unconscionability relates to the content of the contract terms and whether they are illegal, contrary to public policy, or grossly unfair. Procedural unconscionability is determined by analyzing the circumstances surrounding the contract's formation, such as whether it was an adhesive contract and the |

17

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY

| | |
|---|---|
| | relative bargaining power of the parties. The weight given to procedural and substantive considerations varies with the circumstances of each case. *Fiser v. Dell Computer Corp.*, 188 P.3d 1215, 1221 (N.M. 2008). While there is a greater likelihood of a contract's being invalidated for unconscionability if there is a combination of both procedural and substantive unconscionability, there is no absolute requirement in our law that both must be present to the same degree or that they both be present at all. Procedural and substantive unconscionability often have an inverse relationship. The more substantively oppressive a contract term, the less procedural unconscionability may be required for a court to conclude that the offending term is unenforceable. *Cordova v. World Fin. Corp. of NM*, 208 P.3d 901, 908 (N.M. 2009). |
| Utah | **UTAH CODE ANN. § 70A-2-302 (2011)**<br><br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO UTAH CODE ANN. § 70A-2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>Gross disparity in terms, absent evidence of procedural unconscionability, can support a finding of unconscionability. *Res. Mgmt. Co. v. Weston Ranch & Livestock Co., Inc.*, 706 P.2d 1028, |

18

BANK OVERDRAFT MDL 2036

UNCONSCIONABILITY

| | |
|---|---|
| | 1043 (Utah 1985). Although rare, a contract might be unconscionable on the theory of [procedural unconscionability] without any substantive imbalance in the obligations of the parties to the contract. *Sosa v. Paulos*, 924 P.2d 357, 361 (Utah 1996). |
| Washington | **WASH. REV. CODE ANN. § 62A.2-302 (2011)**<br><br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br><br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO WASH. REV. CODE ANN. § 62A.2-302**<br><br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br><br>Agreements may be either substantively or procedurally unconscionable. *Townsend v. Quadrant Corp.*, 224 P.3d 818, 825 (Wash. Ct. App. 2009). The Washington Supreme Court has explicitly held that substantive unconscionability alone can support a finding of unconscionability. *Adler v. Fred Lind Manor*, 103 P.3d 773, 782 (Wash. 2004). Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh. Shocking to the conscience, monstrously harsh, and exceedingly calloused are terms sometimes used to define substantive unconscionability. Procedural unconscionability is the lack of a meaningful choice, considering all the circumstances |

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY

surrounding the transaction including the manner in which the contract was entered, whether the party had a reasonable opportunity to understand the terms of the contract, and whether the important terms were hidden in a maze of fine print. *Id.* at 781.

20

BANK OVERDRAFT MDL 2036
UNCONSCIONABILITY

| | ELEMENTS OF AN UNCONSCIONABILITY CLAIM Substantive Unconscionability Alone Is Sufficient Contract Terms Are so One-Sided as To Be Unconscionable |
|---|---|
| State | New York and Oregon |
| | Substantive Unconscionability |
| New York | **N.Y. U.C.C. Law § 2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO N.Y. U.C.C. Law § 2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. |

21

BANK OVERDRAFT MDL 2036
UNCONSCIONABILITY

|  |  |
|---|---|
|  | **CASELAW**<br>Under New York law, unconscionability is generally predicated on the presence of both the procedural and substantive elements, the substantive element alone may be sufficient to render the terms of the provision at issue unenforceable. Procedural and substantive unconscionability are shown by an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 254 (N.Y. App. Div. 1998); *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988). |
| Oregon | **OR. REV. STAT. ANN. § 72.3020 (2009)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO OR. REV. STAT. ANN. § 72.3020**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>Unconscionability in Oregon, as elsewhere, has both a procedural and a substantive component. Procedural unconscionability generally refers to the conditions of contract formation and focuses on two factors: oppression and surprise. Substantive unconscionability generally refers |

22

# BANK OVERDRAFT MDL 2036

## UNCONSCIONABILITY

to the terms of the contract . . . and focuses on the one-sided nature of the substantive terms. In some jurisdictions, unconscionability requires both components. In others, the courts may invalidate a contract or a contract term on either procedural or substantive grounds. Oregon has not adopted a formal template. Rather, the court has described the analysis as follows: The primary focus appears to be relatively clear: substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue. Thus, both procedural and substantive unconscionability are relevant, although only substantive unconscionability is absolutely necessary. *Vasquez-Lopez v. Beneficial Oregon, Inc.*, 152 P.3d 940, 948 (Or. Ct. App. 2007); *Best v. United States Nat'l Bank*, 739 P.2d 554 (Or. 1987).

23

# EXHIBIT D

## REVIEW OF STATE UNFAIR AND DECEPTIVE TRADE PRACTICE ACTS

## I.     CALIFORNIA

**Class representative**: Andrea Luquetta

**A.     Relevant Prohibitions**

A trial court may certify a claim under California's Unfair Competition Law ("UCL") as a class action when the statutory requirements of CCP § 382 are met.  *Corbett v. Superior Court* 101 Cal. App. 4th 649 (2002).

The UCL prohibits "unfair competition, which is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code."  CAL. BUS. & PROF. CODE § 17200.  "Unlawful" refers to practices that are forbidden by law.  *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 559-60 (1998) (holding that plaintiff stated cause of action under UCL's unlawful prong for defendant's alleged sale of cigarettes to minors in violation of Penal Code section 308).

"Unfair" is determined under either the "*Cel-Tech*" test or a balancing test.  Under the decision in *Cel-Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999), conduct is "unfair" if it "threatens an incipient violation of a [] law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Id.* at 186-87.  An alternative test for unfairness is to assess whether the "[p]ractice offends an established public policy" or "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," and the "gravity of the harm to the victim outweighs the utility of the defendant's conduct."  *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1268-69 (2006).  Omissions can be unfair under

either test (*see Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1498 (2003)), and this prong of the UCL is "intentionally broad, thus allowing courts maximum discretion to prohibit new schemes to defraud." *State Farm Fire & Cas. Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996).

A business act or practice is "fraudulent" if members of the public are likely to be deceived. *Blakemore v. Superior Court*, 129 Cal. App. 4th 36, 49 (2005).

A business act or practice that is found to be a violation of UCL's fraud prong based upon false advertising or promotional practices is also a violation of the false advertising law and vice versa. *See Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).

A violation of the UCL can be shown even in the absence of actual deception, reasonable reliance and damage. *Id.*

There is no right to a jury trial under the UCL. *See, e.g., Okura & Co. v. Careau Group*, 783 F. Supp. 482, 491 (C.D. Cal. 1991).

In 2004, Proposition 64 was passed by California voters which substantially revised the UCL's standing requirement. Where once private suits could be brought by "any person acting for the interests of itself, its members, or the general public," now private standing is limited to any "person who has suffered injury in fact and has lost money or property as a result of unfair competition." *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 884 (Cal. 2011). The intent of this change was to confine standing to those actually injured by a defendant's business practices and to curtail the prior practice of filing suits on behalf of "clients who have not used the defendant's product or service, viewed the defendant's advertising, or had any other business dealing with the defendant." *Id.* A party who has lost money or property generally has suffered injury in fact. To satisfy the narrower standing requirements imposed by Proposition 64, a party

2

must (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact (*i.e.*, an economic injury); and (2) show that the economic injury was the result of (or caused by) the unfair business practice that is the gravamen of the claim. *Id.* at 884-85.

## B.   Causation/Damages

If a party has alleged or proven a personal, individualized loss of money or property in any nontrivial amount, he or she has also alleged or proven an injury in fact, as required for standing under the UCL. *Kwikset*, 246 P.3d at 887. Standing under the UCL does not require plaintiffs to satisfy the out-of-pocket loss damages rule. *Id.* at 894.

In *In re Tobacco II*, the California Supreme Court clarified the standard for alleging reliance on the part of named class members asserting claims under the Unfair Competition Law and the False Advertising Law. *See Tobacco II*, 46 Cal. 4th at 324-29. A private enforcement action under the UCL may only be brought by "a person who has suffered injury in fact and has lost money or property *as a result* of the unfair competition." *See id.* at 320. The Supreme Court held that the "as a result of" language applied only to named class members, *id.* at 314-24, and concluded that the statute did "impose[] an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong." *Id.* at 326.

Although actual reliance is required, a named plaintiff ***need not demonstrate individualized reliance on specific representations.*** *Tobacco II*, 46 Cal. 4th at 327. The Supreme Court held:

> ...while a plaintiff must allege that the defendant's misrepresentations were an immediate cause of the injury-causing conduct, the plaintiff is ***not required to allege that those misrepresentations were the sole or even the decisive cause*** of the injury-producing conduct. Furthermore, where, as here, a plaintiff alleges ***exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.*** Finally, an allegation of reliance is not defeated

3

> merely because there was alternative information available to the consumer-plaintiff, even regarding an issue as prominent as whether cigarette smoking causes cancer. Accordingly, we conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204 but, consistent with the principles set forth above, *is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign.*

*Id.* at 328 (emphases added) (internal citation omitted). The Court determined that the named class representatives had adequately alleged reliance based on their exposure to a long-term advertising by the tobacco industry designed to conceal the addictive nature of nicotine and the relationship between tobacco use and disease. *See id.* at 306.

The court may "may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition." CAL. BUS. & PROF. CODE § 17203. Plaintiff can recover only restitution, not damages, a bar that forecloses an award of penalties. *See West v. Circle K Stores, Inc.* No. S-04-0438 WBS GGH, 2006 U.S. Dist. LEXIS 25164 (E.D. Cal. Feb. 14, 2006).

The standard for establishing standing under the UCL and eligibility for restitution under the UCL are wholly distinct, and ineligibility for restitution is not a basis for denying standing. *Kwikset*, 246 P.3d at 894. While injunctive relief is the standard form of relief under the UCL, restitution may also be granted. Restitution, under the UCL, requires that money or property has been lost by the plaintiff and that it has been acquired by the defendant. *Id.* at 895.

### C.    Statute Of Limitations

The statute of limitations under the UCL is four years "after the cause of action accrued." CAL. BUS. & PROF. CODE § 17208. There is a split in authority regarding whether the discovery

4

rule applies to the UCL. *Compare Massachusetts Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1295 (2002) (discovery rule probably applies); *Snapp & Assocs. Ins. Servs., Inc. v. Robertson*, 96 Cal. App. 4th 884, 891 (2002) (rule does not apply). The California Supreme Court recently assumed that the discovery rule would apply in an action under the UCL but declined to specifically address the issue. *See Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 635 n.7 (2007).

**D.     Notice Requirements**

There are no pre-suit notice requirements under the UCL.

5

# EXHIBIT E

# BANK OVERDRAFT MDL 2036
# CONVERSION SUBCLASSES

## I. OVERVIEW

Conversion is a common law tort claim for an intentional exercise of dominion or control over property in which plaintiff had an interest which so seriously interfered with her right to control it that the defendant may justly be required to pay the other the full value of the chattel. *See Restatement (Second) of Torts* § 222A.

| | FLORIDA |
|---|---|
| | (1) Act of dominion over property wrongfully asserted; (2) over property in which plaintiff has a possessory interest; and (3) inconsistent with the plaintiff's property interest. |
| Class Representative | Estella Lopez |
| Elements of Conversion | "Under Florida law, 'conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time.'" *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 668 n.8 (S.D. Fla. 2010) (citing *General Fin. Corp. v. Sexton*, 155 So. 2d 159 (Fla. Dist. Ct. App. 1963)); *see also Wright v. Emory*, 41 So. 3d 290, 292 (Fla. Dist. Ct. App. 2010). Claims for conversion under Florida law has three components: (1) act of dominion wrongfully asserted; (2) over plaintiff's property; and (3) inconsistent with plaintiff's ownership therein. *Compania de Elaborados de Cafe v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270 (S.D. Fla. 2003) (applying Florida law). Any wrongful exercise or assumption of authority over another person's goods is a conversion when it deprives that person of the possession either permanently or for an indefinite time. *Star Fruit Co. v. Eagle Lake Growers, Inc.*, 33 So. 2d 858, 868 (Fla. 1948) (cited in Dkt. No. 305, Order Ruling on Omnibus Motion to Dismiss, at 35); *see also Seibel v. Society Lease*, 969 F. Supp. 713, 718-19 (M.D. Fla. 1997) ("Conversion has been defined as: 'An act of willful interference with the personal property of another which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property . . . .'") (quotations and citations omitted) (cited in Dkt. No. 305, at 35). |
| | There may be liability for conversion even when the property was obtained without a specific wrongful |

# BANK OVERDRAFT MDL 2036
## CONVERSION SUBCLASSES

intent. *Seymour v. Adams*, 638 So. 2d 1044, 1047 (Fla. Dist. Ct. App. 1994) (stating that conversion "may be established despite evidence that the defendant took or retained property based upon the mistaken belief that he had a right to possession, since malice is not an essential element of the action"). *Ernie Passeos, Inc. v. O'Halloran*, 855 So. 2d 106, 109 (Fla. Dist. Ct. App. 2003).

Withdrawal of funds from a bank account may form the basis of an action for conversion if the specific money in question can be identified. *Joseph v. Chanin*, 940 So. 2d 483 (Fla. Ct. Dist. App. 2006). Florida courts find a claim for conversion may lie when a party takes money from another, as long as the money is sufficiently identifiable. *See Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1059 (S.D. Fla. 2009) (collecting authorities, including *Rosenthal Toyota, Inc. v. Thorpe*, 824 F.2d 897, 902 (11th Cir. 1987) (conversion was committed when defendant took plaintiff's money with no intention of delivering cars); *Florida Dep't. of Ins. v. Debenture Guar.*, 921 F. Supp. 750, 757 (M.D. Fla. 1996) (where $1.1 million was not placed into the proper account, money was proper subject of conversion claim); *Masvidal v. Ochoa*, 505 So. 2d 555 (Fla. Dist. Ct. App. 1987) (finding that defendant who took funds from plaintiff's escrow constituted conversion).

2

**BANK OVERDRAFT MDL 2036**
**CONVERSION SUBCLASSES**

| | LOUISIANA |
|---|---|
| | (1) Act in derogation of the plaintiff's possessory rights; (2) wrongful exercise or assumption of authority over another's property; and (3) depriving plaintiff of the possession. |
| Class Representatives | Charles Reed, Jr. |
| Elements of Conversion | A conversion consists of: (1) an act in derogation of the plaintiff's possessory rights; (2) and any wrongful exercise or assumption of authority over another's goods; and (3) depriving him of the possession, permanently or for an indefinite time. *Jefferson v. Crowell*, 956 So. 2d 746, 749 (La. Ct. App. 2007). The tort of conversion is an intentional act done in derogation of the plaintiff's possessory rights. It is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. Although a party may have rightfully come into possession of another's goods, the subsequent refusal to surrender the goods to one who is entitled to them may constitute conversion. *Louisiana Health Care Grp., Inc. v. Allegiance Health Mgmt., Inc.*, 32 So. 3d 1138, 1143 (La. Ct. App. 2010). <br><br> The intent required for a conversion is not necessarily that of conscious wrongdoing. It is rather intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights. *Louisiana State Bar Ass'n v. Hinrichs*, 486 So. 2d 116, 121 (La. 1986). However, liability is predicated on the fault of the defendant. *Dual Drilling Co. v. Mills Equip. Invs.*, 721 So. 2d 853, 857 & n.3 (La. 1998). <br><br> Actions against banks for wrongful *transfer* or disposition of account funds *uniformly* are considered actions for conversion of property. *See Williams v. Bank of La.*, 454 So. 2d 1138, 1138-39 (La. Ct. App. 1984) (suit against bank for unauthorized distribution of savings account funds was a suit for conversion of property); *Hampton v. Hibernia Nat'l Bank*, 598 So. 2d 502, 504 (La. Ct. App. 1992) (suit by customer against bank for wrongfully taking funds from his checking account to set off a past due loan was an action |

# BANK OVERDRAFT MDL 2036
## CONVERSION SUBCLASSES

for conversion); *Labbe v. Premier Bank*, 618 So. 2d 45, 46 (La. Ct. App. 1993) (action for unauthorized transfer by bank from customer's account to bank's account was an action for conversion); *see also Metro Elec. & Maint., Inc. v. Bank One Corp.*, 924 So. 2d 446, 449 (La. Ct. App. 2006) (finding that defendant's deposit into the wrong account constituted conversion); *Med Data Serv. Bureau, L.L.C. v. Bank of La.*, 898 So. 2d 482 (La. Ct. App. 2004) (finding that bank committed when it deposited into customer's account checks that contained customer's forged endorsements of payees; bank made payment to customer, who was not entitled to enforce checks).

4

# EXHIBIT F

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

### BREACH OF CONTRACT AND
### THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

### BANK OVERDRAFT MDL 2036

1

*Set forth below are suggested interrogatories to be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiff[s] may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

# I. BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

## GOOD FAITH AND FAIR DEALING SUBCLASS # 1
## IMPLIED COVENANT AS A SEPARATE CAUSE OF ACTION

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however the implied promise of good faith and fair dealing cannot create obligations inconsistent with the contract.[1]

In some states (Arizona, California, Connecticut, New Jersey, Oklahoma, Oregon, and Wisconsin), a party can breach the implied covenant of good faith and fair dealing without breaching an express provision of the parties' underlying contract.

### A. LIABILITY

Plaintiff Andrea Luquetta claims that Chase violated the duty to act fairly and in good faith.

Do you find by a preponderance of the evidence the following[2]:

(i)     **Did the plaintiff and the subclass enter into a contract with the defendant?**

Yes ☐          No ☐

(ii)    **Did the defendant act in bad faith or engage in unreasonable conduct that had the effect of preventing plaintiff and the subclass from receiving the benefits of the parties' contract?**

Yes ☐          No ☐

(iii)   **As a result, were the plaintiff and the subclass harmed?**

Yes ☐          No ☐

---

[1]   *See Restatement (Second) of Contracts* §205 (1981).

[2]   *See* 7A Am. Jur. *Contracts* § 118.1 (Plaintiffs deleted the elements that required plaintiff's performance and defendant's performance under the contract because those elements are not relevant to this subclass).

If you selected "yes" for all of the elements listed above, please answer the question in part B.  If you selected "no," for any of the elements listed above, please skip to ["Subclass #2."]

### B. DAMAGES

**Has the plaintiff proved by a preponderance of the evidence the amount of damages suffered by plaintiff and the subclass?**

Yes ☐                No ☐

If yes, complete the following blank: The [Court/Jury] finds actual damages for Plaintiff and the Good Faith and Fair Dealing Subclass 1 in the amount of $ _____.  (If you answered "no," do not complete the blank.)

## GOOD FAITH AND FAIR DEALING SUBCLASS #2
### IMPLIED COVENANT IS NOT A SEPARATE CAUSE OF ACTION AND REQUIRES BAD FAITH

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however, the implied covenant does not create obligations that are inconsistent with the terms of the contract.

In Louisiana, a plaintiff must show defendant acted in bad faith to show a breach of the implied covenant of good faith and fair dealing and that the defendant breached an express provision of the parties' underlying contract.

### A. LIABILITY

Plaintiff Charles Reed, Jr., claims that Chase breached its contract and duty of good faith and fair dealing with the plaintiff and the Class.

Do you find by preponderance of the evidence the following[3]:

(i)     **Did the plaintiff and the subclass enter into a contract with the defendant?**

Yes ☐                    No ☐

(ii)    **Did the plaintiff show either that he performed or performance was excused?**

Yes ☐                    No ☐

(iii)   **Did the defendant act in bad faith in interfering with the plaintiff's and subclass's rights to receive the benefits of the contract?**

Yes ☐                    No ☐

(iv)    **As a result, were the plaintiff and the subclass harmed?**

Yes ☐                    No ☐

If you selected "yes" for all of the elements listed above, please answer the question in part B. If you selected "no," for any of the elements listed above, please skip to ["Subclass #3."]

---

[3]     7A Am. Jur. *Contracts* § 117.1.

4

## B. DAMAGES

**Has the plaintiff proved by a preponderance of the evidence the amount of damages suffered by plaintiff and the subclass?**

Yes ☐                    No ☐

If yes, complete the following blank: The [Court/Jury] finds actual damages for Plaintiff and the Breach of Contract and Good Faith and Fair Dealing Subclass 2 in the amount of $_____. (If you answered "no," do not complete the blank.)

## GOOD FAITH AND FAIR DEALING SUBCLASS #3
## IMPLIED COVENANT IS NOT A SEPARATE CAUSE OF ACTION AND
## BREACH OF CONTRACT HAS FOUR ELEMENTS

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

In many states, a party cannot breach the implied covenant of good faith and fair dealing without breaching an express provision of the parties' underlying contract. In (Colorado, Georgia, Illinois, Indiana, New York, Ohio), a party bringing a breach of contract claim must satisfy a four-part test.

### A. LIABILITY

Plaintiff Linda McDaniel claims that Chase breached its contract and duty of good faith and fair dealing with the plaintiff and the Class.

Do you find by preponderance of the evidence the following:

**(i)      Did the plaintiff and the subclass enter into a contract with the defendant?**

Yes ☐            No ☐

**(ii)     Did the plaintiff show either performance or excuse from performance?**

Yes ☐            No ☐

**(iii)    Did the defendant breach the contract by unfairly interfering with the plaintiff's and the subclass's rights to receive the benefits of the contract?**

Yes ☐            No ☐

**(iv)     As a result, were the plaintiff and the subclass harmed?**

Yes ☐            No ☐

## B. DAMAGES

**Has plaintiff proved by a preponderance of the evidence the amount of damages suffered by plaintiff and the subclass ?**

Yes ☐          No ☐

If yes, complete the following blank: The [Court/Jury] finds actual damages for Plaintiff and the Breach of Contract and Good Faith and Fair Dealing Subclass 3 in the amount of $_____. (If you answered "no," do not complete the blank.)

Yes ☐          No ☐

## GOOD FAITH AND FAIR DEALING SUBCLASS #4
### IMPLIED COVENANT IS NOT A SEPARATE CAUSE OF ACTION AND BREACH OF CONTRACT REQUIRES A MATERIAL BREACH

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

In many states, a party cannot breach the implied covenant of good faith and fair dealing without breaching an express provision of the parties' underlying contract. In Florida and New Mexico, a party bringing a breach of contract claim must show there is a material breach of contract.

### A. LIABILITY

Plaintiff Estella Lopez claims that Chase breached its contract and duty of good faith and fair dealing with the plaintiff and the Class.

Do you find by preponderance of the evidence the following:

**(i)      Did the plaintiff and the subclass enter into a contract with the defendant?**

Yes ☐                No ☐

**(ii)     Did the defendant breach the contract by unfairly interfering with the plaintiff's and the subclass's rights to receive the benefits of the contract?**

Yes ☐                No ☐

**(iii)    Did the defendant's conduct affect a fundamental purpose or essence of the contract?**

Yes ☐                No ☐

**(iv)    As a result, were the plaintiff and the subclass harmed?**

Yes ☐                No ☐

If you selected "yes," for all of the elements listed above, please answer the question in part B. If you selected "no," for any of the elements listed above please skip to the end of the form.

8

## B. DAMAGES

**Has plaintiff proved by a preponderance of the evidence the amount of damages suffered by plaintiff and the subclass?**

Yes ☐          No ☐

If yes, complete the following blank: The [Court/Jury] finds actual damages for Plaintiff and the Breach of Contract and Good Faith and Fair Dealing Subclass 4 in the amount of $_____. (If you answered "no," do not complete the blank.)

Yes ☐          No ☐

# PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

## UNJUST ENRICHMENT

## BANK OVERDRAFT MDL 2036

*Set forth below are suggested interrogatories that would be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

## II. Unjust Enrichment

### Subclass # 1

### The Restatement's Basic Definition

A party is enriched if she receives a benefit. A party is unjustly enriched if the retention of the benefit would be unfair. A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received by the defendant. If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.[1]

Some states (California, Connecticut, Michigan, New Mexico, and West Virginia), use the *Restatement's* basic definition of unjust enrichment to determine liability.

### A. Liability

Plaintiff Andrea Luquetta claims that Chase was unjustly enriched.

Do you find by a preponderance of the evidence the following:[2]

**(i)      Did the plaintiff and the subclass confer a benefit on the defendant?**

Yes ☐            No ☐

**(ii)     Did the defendant accept a benefit from the plaintiff and the subclass?**

Yes ☐            No ☐

**(iii)    Under the circumstances, would it be unfair for the defendant to retain the benefit?**

Yes ☐            No ☐

---

[1]      *Restatement (First) of Restitution* §1 (1937) ("*Restatement*").

[2]      *See,* 21B *American Jurisprudence Pleading & Practice Forms Restitution & Implied Contracts* §12.1.

1

## B. RESTITUTION

**Has plaintiff proved by a preponderance of the evidence the amount that should be restituted to plaintiff and the subclass?**

Yes ☐                    No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiff and the Unjust Enrichment Subclass 1 is $_____. (If you answered "no," do not complete the blank.)

## SUBCLASS # 2

### THE RESTATEMENT TEST AND APPRECIATION OF THE BENEFIT

A party is enriched if she receives a benefit. A party is unjustly enriched if the retention of the benefit would be unfair. A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received by the defendant. If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.

Some states (Florida, Georgia, Idaho, Kentucky, Oregon, Washington, and Wisconsin) use the *Restatement's* definition of unjust enrichment and require that the defendant appreciate the benefit to determine liability.

### A. LIABILITY

Plaintiffs Estella Lopez and Linda McDaniel claim that Chase was unjustly enriched.

Do you find by a preponderance of the evidence the following:

(i)     **Did the plaintiffs and the subclass confer a benefit on the defendant?**

Yes ☐          No ☐

(ii)    **Did the defendant accept money from the plaintiffs and the subclass?**

Yes ☐          No ☐

(iii)   **Did the defendant appreciate the benefit it was receiving from the plaintiffs and the subclass?**

Yes ☐          No ☐

(iv)    **Under the circumstances, would it be unfair for the defendant to retain the benefit?**

Yes ☐          No ☐

3

## B. RESTITUTION

**Have plaintiffs proved by a preponderance of the evidence the amount that should be restituted to plaintiffs and the subclass?**

Yes ☐        No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiffs and Unjust Enrichment Subclass 2 is $_____. (If you answered "no," do not complete the blank.)

4

SUBCLASS # 3

THE RESTATEMENT TEST AND AN INADEQUATE REMEDY AT LAW

A party is enriched if she receives a benefit. A party is unjustly enriched if the retention of the benefit would be unfair. A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received by the defendant. If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.

Some states (Arizona, Colorado, Louisiana, New Jersey, New York, Ohio, Oklahoma, and Utah), require that the plaintiff show she lacks an adequate remedy at law.

## A. LIABILITY

Plaintiff Charles Reed, Jr. claims that Chase was unjustly enriched.

**(1)** Do you find by a preponderance of the evidence the following:

    **(i)** **Do the plaintiffs and the subclass have an adequate remedy at law?**

        Yes ☐        No ☐

    If you selected "yes," please skip to "Subclass #4." If you selected "no," please answer question 2.

**(2)** Do you find by a preponderance of the evidence the following::

    **(i)** **Did the plaintiff and the subclass confer a benefit on the defendant?**

        Yes ☐        No ☐

    **(ii)** **Did the defendant accept the benefit from the plaintiff and the subclass?**

        Yes ☐        No ☐

    **(iii)** **Under the circumstances, would it be unfair for the defendant to retain the benefit?**

        Yes ☐        No ☐

## B. Restitution

**Have plaintiff proved by a preponderance of the evidence the amount that should be restituted to plaintiff and the subclass?**

Yes ☐                    No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiff and Unjust Enrichment Subclass 3 is $_____. (If you answered "no," do not complete the blank.)

**SUBCLASS # 4**

**THE RESTATEMENT TEST AND WRONGFUL CONDUCT**

A party is enriched if she receives a benefit. A party is unjustly enriched if the retention of the benefit would be unfair. A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received by the defendant. If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.

Some states (Indiana and Texas), require that a defendant engage in wrongful conduct in order to bring an unjust enrichment claim.

**A. LIABILITY**

Plaintiff John Stone claims that Chase was unjustly enriched.

Do you find by a preponderance of the evidence the following:

**(i)**      **Did the plaintiff and the subclass confer a benefit on the defendant?**

         Yes ☐          No ☐

**(ii)**      **Did the defendant take undue advantage of the plaintiff and the subclass by accepting the benefit?**

         Yes ☐          No ☐

**(iii)**      **Under the circumstances, would it be unfair for the defendant to retain the benefit?**

         Yes ☐          No ☐

**B. RESTITUTION**

**Have plaintiff proved by a preponderance of the evidence the amount that should be restituted to plaintiff and the subclass?**

         Yes ☐          No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiff and Unjust Enrichment Subclass 4 is $_____. (If you answered "no," do not complete the blank.)

PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

UNCONSCIONABILITY

BANK OVERDRAFT MDL 2036

*Set forth below are suggested interrogatories to be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

# III. UNCONSCIONABILITY

All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.[1]

In many states (California, Colorado, Connecticut, Florida, Georgia, Idaho, Louisiana, Michigan, New Jersey, Ohio, Oklahoma, Texas, West Virginia, and Wisconsin), plaintiff must show both substantive and procedural unconscionability to prevail.

In some states (Arizona, Illinois, Kentucky, New Mexico, Utah, and Washington), plaintiff may prevail if only *either* substantive *or* procedural unconscionability is shown.

In some states (New York and Oregon), plaintiff may prevail on a showing of substantive unconscionability alone.

## A. LIABILITY

Plaintiffs Andrea Luquetta, Estella Lopez, Linda McDaniel, Charles Reed, Jr., and John Stone claim that Chase's overdraft provisions and practices are unconscionable.

Do you find by a preponderance of the evidence the following:

**(i)    Were defendant's overdraft provisions procedurally unconscionable due to the parties' unequal bargaining position and the adhesionary nature of the contract?**

Yes ☐          No ☐

---

[1]     U.C.C. §2-302 (2011).

1

(ii)     **Were defendant's overdraft provisions substantively unconscionable because the contractual terms were so one-sided as to be unreasonable and unfair?**

Yes ☐                No ☐

If yes to both "i" and "ii," go to "B" for class members in California, Colorado, Connecticut, Florida, Georgia, Idaho, Louisiana, Michigan, New Jersey, Ohio, Oklahoma, Texas, West Virginia, and Wisconsin.

If yes to A(i), skip to "B" for class members in Arizona, Illinois, Kentucky, New Mexico, Utah and Washington.

If yes to A(ii), go to "B" for class members in New York and Oregon.

## B. EQUITABLE RELIEF

(i)     **Should the defendant's overdraft provisions be stricken from the account agreement as unconscionable?**

Yes ☐                No ☐

If yes, the Court may declare defendants' contractual provisions to be unconscionable.

(ii)     **Were defendant's overdraft practices unconscionable?**

Yes ☐                No ☐

If yes, the Court may declare defendants' overdraft fee practices to be unconscionable.

(iii)     **Have plaintiffs proved by a preponderance of the evidence the harm suffered by plaintiffs and the subclass as a result of defendant's past practices?**

Yes ☐                No ☐

If yes to A(i) and (ii), complete the following blank: The [Court/Jury] awards monetary relief for Plaintiffs and the Unconscionability Class Members in California, Colorado, Connecticut, Florida, Georgia, Idaho, Louisiana, Michigan, New Jersey, Ohio, Oklahoma, Texas, West Virginia, and Wisconsin in the amount of $_____. (If you answered "no," do not complete the blank.)

If yes to A(i) only, complete the following blank: The [Court/Jury] awards monetary relief for Plaintiffs and the Unconscionability class members in Arizona, Illinois, Kentucky, New Mexico, Utah, Washington in the amount of $_____. (If you answered "no," do not complete the blank.)

If yes to A(ii) only, complete the following blank: The [Court/Jury] awards monetary relief for Plaintiffs and the Unconscionability class members in New York and Oregon in the amount of $_____.  (If you answered "no," do not complete the blank.)

# PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

## CALIFORNIA UNFAIR COMPETITION LAW

### BANK OVERDRAFT MDL 2036

*Set forth below are suggested interrogatories that would be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

## IV. STATE UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS

### CALIFORNIA

#### A. LIABILITY

Plaintiff Andrea Luquetta claims that Chase violated California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §17200.

Do you find by a preponderance of the evidence the following:

(i)     **Did the defendant engage in an unlawful business act or practice?**

Yes ☐              No ☐

If yes, skip to "v." If no, go to "ii."

(ii)    **Did the defendant engage in an unfair business act or practice?**

Yes ☐              No ☐

If yes, skip to "v." If no, go to "iii."

(iii)   **Did the defendant engage in a fraudulent business act or practice?**

Yes ☐              No ☐

If yes, skip to "v." If no, go to "iv."

(iv)    **Did the defendant engage in untrue or misleading advertising?**

Yes ☐              No ☐

(v)     **As a result of the defendant's conduct, did the plaintiff lose money or property?**

Yes ☐              No ☐

## B. RESTITUTION

**Has plaintiff proved by a preponderance of the evidence the amount of restitution necessary to restore plaintiff's and the California Class' lost money or property?**

Yes ☐                No ☐

If "yes," complete the following blank: The Court awards restitution to Plaintiff and the Chase California Class in the amount of $_____. (If you answered "no," do not complete the blank.).

2

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

### CONVERSION

### BANK OVERDRAFT MDL 2036

.

*Set forth below are suggested interrogatories that would be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

## V. CONVERSION

### FLORIDA

Conversion is an intentional exercise of dominion or control over property in which plaintiff had an interest, which exercise so seriously interfered with plaintiff's right to control the property that the defendant may justly be required to pay the other the full value of the chattel. *See Restatement (Second) of Torts § 222A.*

### A. LIABILITY QUESTIONS

Plaintiff Estella Lopez claims that Chase converted property in which she and other members of the subclass have a possessory interest.

Do you find by a preponderance of the evidence the following:

**(i)      Did the defendant engage in an act of dominion wrongfully asserted over property?**

Yes ☐                         No ☐

**(ii)     Did the plaintiff and the subclass have a right to possession of that property?**

Yes ☐                         No ☐

**(iii)    Was the defendant's conduct inconsistent with plaintiff's and the subclass's property interest?**

Yes ☐                         No ☐

### B. DAMAGES

**Has plaintiff proved by a preponderance of the evidence the value of the property converted by defendant?**

Yes ☐                         No ☐

If "yes," complete the following blank: The [Court/Jury] awards actual damages in the amount of the value of the property plus interest for Plaintiff and the Florida Conversion Subclass in the amount of $_____. (If you answered "no," do not complete the blank.)

## LOUISIANA

Conversion is an intentional exercise of dominion or control over property in which plaintiff had an interest, which exercise so seriously interfered with plaintiff's right to control the property that the defendant may justly be required to pay the other the full value of the chattel. *See Restatement (Second) of Torts* § 222A.

### A. LIABILITY

Plaintiff Charles Reed, Jr. claims that Chase converted property in which he and other members of the subclass have a possessory interest.

Do you find by a preponderance of the evidence the following:

**(i)      Did the defendant act in derogation of the plaintiff's possessory rights over property?**

Yes ☐                          No ☐

**(ii)     Did the defendant wrongfully interfere with plaintiff's and the subclass's property interest?**

Yes ☐                          No ☐

**(iii)    Did the defendant's actions deprive plaintiff and the subclass of their possession?**

Yes ☐                          No ☐

### B. DAMAGES

**Has plaintiff proved by a preponderance of the evidence the value of the property converted by defendant?**

Yes ☐                          No ☐

If "yes," complete the following blank: The [Court/Jury] awards actual damages in the amount of the value of the property plus interest for Plaintiff and the Louisiana Conversion Subclass in the amount of $_____. (If you answered "no," do not complete the blank.)