## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS

*Tornes, et al. v. Bank of America, N.A.*
S.D. Fla. Case No. 1:08-cv-23323-JLK

*Yourke, et al. v. Bank of America, N.A.*
S.D. Fla. Case No. 1:09-cv-21963-JLK
N.D. Cal. Case No. 3:09-2186

*Phillips, et al. v. Bank of America, N.A.*,
S.D. Fla. Case No. 1:10-cv-24316-JLK
W.D. Okla. Case No. 5:10-cv-01185-R

---

### PLAINTIFFS' MOTION TO REQUIRE POSTING OF APPEAL BONDS
### BY OBJECTOR-APPELLANTS AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs request entry of an order requiring the posting of appeal bonds under FRAP 7

and 8 by Objectors Daniel G. Repa, Todd M. Spann and Karen Palting [**DE # 2297**], John Finn

[**DE # 2263**], Richard Hastings and Janel Buycks [**DE # 2262**], Martin Carapia and Fatima

Dorego [**DE # 2251**], Brooklyn Sarro and Megan Marek [**DE # 2249**], Elizabeth M. Locke,

Michelle W. Locke, Michael V. Vilece, Frank J. Vilece, Todd Taylor and Taylor Hughes [**DE #

2244**], Tevis R. Ignacio a/k/a Robin Hood f/k/a John Jacob Jingleheimer Schmidt [**DE # 2216**],

Kirk A. Kennedy and Marvelus Sattiewhite III [**DE # 2208**], and Fred R. Fletcher, Esq. [**DE #

2177**],   (collectively, "Objector-Appellants").   As the following facts and authorities

demonstrate, substantial appeal bonds should be imposed on each of the Objector-Appellants as a prerequisite for pursuing their appeals.[1]

## I.     INTRODUCTION

On September 16, 2011, Plaintiffs filed their Motion for Final Approval of Settlement, Application for Service Awards, Class Counsel's Application for Attorneys' Fees, and Incorporated Memorandum of Law [**DE # 1885**] ("Motion"), seeking final approval of the Settlement with Bank of America ("BofA") totaling $410 million.  In support, Plaintiffs filed affidavits from local and national experts in class action law, as well as affidavits supplementing the factual record, to enable the Court to evaluate the fairness and adequacy of this Settlement. Of the approximately 13 million Settlement Class Members, only 49 timely filed objections to the Settlement (collectively, the "Objections"), raising issues related generally to the sufficiency of the evidence supporting the Settlement, the amount of the Settlement, the manner in which the Settlement was negotiated, the methods used to notify Settlement Class Members and the information provided to them in the Notices, the scope of the proposed release to be given by Settlement Class Members to BofA, the *cy pres* provision of the Settlement, the absence of injunctive relief, and the amount of the fee award sought by Class Counsel.

The Court carefully reviewed all of the filings related to the Settlement, including the Motion, the Objections, and responses to the Objections.  On November 7, 2011, the Court held a full day Final Approval Hearing, at which all Parties and objectors were given the opportunity to appear and address the Court.  Several objectors appeared in person or through counsel at the Final Approval Hearing to present argument in support of their Objections.   After full consideration of the filings and the presentations at the Final Approval Hearing, the Court

---

[1] This motion incorporates the definitions of the terms used in the Settlement Agreement and Release of May 6, 2011 ("Agreement") and the Order.

concluded that there can be no doubt that the Settlement provides a substantial recovery for the Settlement Class Members, and represents an excellent result for the Settlement Class under all of the circumstances and challenges presented by this case.  The Court specifically found that the Settlement is fair, reasonable and adequate, represents a more than acceptable compromise of the Settlement Class' claims, and complies with Fed. R. Civ. P. 23(e).

The Court denied the Objections and rejected the arguments set forth therein in all respects, finding that they were completely unsupported in the record (none of the objectors even submitted a single affidavit to provide facts or expert opinions supporting their Objections) and unpersuasive as to the substance of their complaints.

At the conclusion of the Final Approval Hearing, based on its findings and conclusions, the Court announced its intention to grant Final Approval to the Settlement.  On November 22, 2011, the Court entered its Order of Final Approval of Settlement, Authorizing Service Awards, Granting Application for Attorneys' Fees and Overruling Objections to Settlement ("Order"). [**DE # 2150**].  On the same date, the Court entered a Final Judgment dismissing the Action with prejudice as provided in the Order.  [**DE # 2151**].

The Order and Final Judgment should have put an end to this litigation, allowing the Parties to expeditiously distribute the benefits of the Settlement to the more than 13 million Settlement Class Members.  The delivery of those benefits, however, has now been delayed by the Objector-Appellants.  The Objector-Appellants include several known professional objectors and a lawyer with and motivations having little to do with this litigation.  If the Objector-Appellants wish to pursue their objections beyond this point, in the face of this Court's ruling, they are required to compensate the Settlement Class Members for the delay that their actions will cause.

Good cause exists for the Court to require the Objector-Appellants to post appeal bonds. In the Order, the Court specifically contemplated the possibility of requiring the Objector-Appellants to post appeal bonds:

> As Plaintiffs noted both in their pleadings, . . . and at the Final Approval Hearing, most if not all of the Objections are motivated by things other than a concern for the welfare of the Settlement Class.  Instead, they have been brought by professional objectors and others whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto.  The Court agrees with the court in *Barnes v. Fleet Boston Fin. Corp.*, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006), that, "[P]rofessional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors.  Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose benefit the appeal is purportedly raised, gains nothing."  . . .  The Court has nonetheless considered their objections on the merits, and rejects them for the reasons set forth herein. **Should these or any other Objectors choose to persist in their objections in order to tie up the execution of this Settlement and further delay payment to the members of the Settlement Class, the Court will consider additional measures to make sure that the members of the Settlement Class are not further harmed as a result.**  *See* Supplemental Decl. of Prof. Brian T. Fitzpatrick [**DE # 1885-7**], ¶¶ 11–13 (discussing "objector blackmail" and observing that courts have fought back by sanctioning professional objectors and requiring hefty appeal bonds).  And, as Judge Gold noted in the *Allapattah* case, an Objector seeking a fee "for simply filing a claim when Class Counsel has done all the work" will "[a]t the end of the day . . . have to appear before this Court to justify his fees."  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1191 (S.D. Fla. 2006). (emphasis added).

Order at 47-48 n.30

Given the high likelihood the Order will be affirmed, the Court should require each of the Objector-Appellants to post substantial appeal bonds.  Such bonds will provide the protections typically afforded appellees during the pendency of an appeal – particularly an appeal of questionable merit – and will also discourage the Objector-Appellants and Objecting Counsel from viewing this settlement as just a money-making opportunity.  That is, if the Objector-Appellants truly believe that their objections are well founded and they are motivated by genuine concern for the Settlement Class, they will post the required bond and proceed.  On the other

hand, if these appeals are what they appear to be, then by requiring bonds the Court will bend the Objector-Appellants' cost-benefit analyses such that these appeals will not be the easy money they are hoping for, and they will cease their efforts to block the Class from receiving its just compensation.

The amount of such bonds will include (i) security for expected appellate fees and costs under FRAP 7, and (ii) the (at least partial) preservation of the status quo on behalf of the 13 million-plus non-objecting Settlement Class Members to account for the delay in distribution of the benefits of the Settlement to Settlement Class Members under FRAP 8.   As discussed below, Plaintiffs urge the Court to order each of the Objector-Appellants to post appeal bonds totaling $621,338.00.   The amount of these bonds is appropriate in this case and is reasonable when compared to bonds imposed in other class actions, particularly in light of the meritless and attorney-interested nature of the Objector-Appellants' appeals.

## II.   ARGUMENT

Federal Rule of Appellate Procedure 7 provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  The Eleventh Circuit has held that under Rule 7, this Court has discretion to require appellants to post a bond to secure payment of appeal costs.  *See Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002).   In particular, a Rule 7 bond should be imposed where necessary to protect class members "from the burdens that stem from being forced to defend frivolous lawsuits".  *Id.* at 1333.  As noted by the Eleventh Circuit, "an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond . . . prior to filing the appeal."  *Id.*  Rule 7 authorizes the Court to forecast the outcome of the appeal. *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998); *Sckolnick*, 820 F .2d at

15. The nature and amount of an appeal bond is left to the sound discretion of the district court. *Farris v. Standard Fire Ins. Co.*, 280 Fed. App'x 486, 489 (6th Cir. 2008).

Courts commonly impose appeal bonds in the class action context. *See In re Cardizem CD Antitrust Litig.,* 391 F.3d 812, 816-17 (6th Cir. 2004) (endorsing the trial court's imposition of a $50,000 appeal bond); *Barnes v. FleetBoston Fin. Corp.*, No. 1:0 l-cv-1039, slip op. at 2 (D. Mass. Aug. 22, 2006) (ordering imposition of $645,111 appeal bond); *Conroy v. 3M Corp.*, OO-cv-2810, Order Granting Plaintiffs Motion For Appellate Bond (N.D. Cal. Aug. 10, 2006) (ordering class action objectors to post an appeal bond of $431,167); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *3 (D. Me. Oct. 7, 2003) (granting a motion requiring an objector/appellant to post an appeal bond of $35,000).

When determining if an appeal bond is appropriate, courts consider: (i) the appellant's financial ability to post a bond; (ii) the merits of the appeal; (iii) whether the appellant has shown any bad faith or vexatious conduct; (iv) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful (*Schied v. Davis*, No. 08-CV-10005, 2008 WL 3852264, at *1 (E.D. Mich. Aug. 18, 2008) (citations omitted)); and (v) the appellant's attorney's prior actions. *See In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2010 WL 2505677, at *2 (S.D.N.Y. June 17, 2010). Consideration of these factors supports imposing sizeable appeal bonds here.

Here, the Objector-Appellants are continuing to press pretextual objections, unnecessarily holding up a Settlement that Settlement Class Members overwhelmingly support. Their motivations are transparent: they are looking to extract money from Class Counsel by delaying the resolution of this case. Accordingly, the Court should exercise its discretion under Rule 7 to require the Objector-Appellants to post sizable bonds on appeal. *See Sckolnick v. Harlow*, 820

F.2d 13 (1st Cir. 1987) (upholding imposition of appeal bond under Rule 7 based on plaintiff's history of litigiousness and implication that appeal was frivolous); *In re Compact Disc Minimum Advertised Price Antitrust Litigation*, 2003 WL 22417252 (D.Me. 2003) (accord); *In re NASDAQ Market-Makers Antitrust Litigation*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (citing *Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998) (in setting the amount of the Rule 7 bond, "it is appropriate to consider 'the merits of the appeal itself'")).

The costs that can be included in a Rule 7 bond are not limited to costs defined by Rule 39.[2] *Pedraza*, 313 F.3d at 1323. The district court has substantial discretion to determine the amount of a bond necessary to ensure the payment of costs on appeal. *Id.* at 1327; *Sckolnick v. Harlow*, 820 F.2d 12, 15 (1st Cir. 1987).

Plaintiffs request that the amount of the bonds in this instance total $621,338,[3] representing (i) security for expected appellate costs, and (ii) the (at least partial) preservation of the status quo on behalf of the more than 13 million non-objecting Settlement Class Members to account for the delay in distribution of the benefits of the Settlement to them.

The first category of costs, under Rule 39, is routinely included in appeal bonds. *See e.g., O'Keefe v. Mercedes-Benz USA, LLC*, No. 01-CV-2902, 2003 U.S. Dist. LEXIS 9838 (E.D. Pa. 2003) (including Rule 39(c) costs of copying, printing, and reproducing documents in an appeal

[2] Rule 39(e) provides that "[t]he following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: (1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedes bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal."

[3] This amount represents two years' compounded interest at the current federal post-judgment rate (0.11%) on $280,000,000, which is the amount of the Settlement minus attorneys' fees, plus $5,000 for the Class' costs on appeal, as discussed below. Objector-Appellants are not being asked to post a bond in an amount that will include interest on the court-awarded attorneys' fees and costs.

bond); Wright, Miller & Cooper, *Federal Practice & Procedure* § 3953 (3d ed. 1999).  Class Counsel anticipate incurring costs taxable under Rule 39(e), including the estimated cost for printing and copying briefs and other submissions, in the approximate amount of $5,000.

The second category of costs that should be included in the appeal bonds represents an amount intended to (at least partially) preserve the status quo.  As Judge Gold and former Judge Scott recognized in *Allapattah Services, Inc. v. Exxon*, Case No.: 91-0988-CIV-Gold/Simonton (S.D. Fla. 2006), if an objecting class member's appeal effectively stays the payment of settlement proceeds or the implementation of settlement relief to the rest of the class, it is appropriate to require the appealing class member to post a *supersedeas* bond to "preserve the status quo while protecting the non-appealing party's rights pending appeal."  Report and Recommendation on Westheimer's Objection to the Class Settlement, at 20-24 (DE. 1315-4) ("*Exxon* R&R"), *adopted Allapattah Services, Inc. v. Exxon Corp*., 2006 WL 1132371 (S.D. Fla. 2006), *citing Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189 (5th Cir. 1979).  "The bond secures against any losses sustained as a result of being 'forced to forgo execution on a judgment during the course of an ineffectual appeal.'"  *Id*. at 22-23, *quoting Poplar Grove*, 600 F.2d at 1191; *United States v. United States Fishing Vessel Maylin*, 130 F.R.D. 684 , 686 (S.D. Fla. 1990).

In this instance, the estimated net amount to be distributed to Settlement Class Members is approximately $280 million (after deducting attorneys' fees awarded by the Court and past and anticipated future settlement administration expenses).  Plaintiffs urge the Court to also include the amount of $616,338.00 in the appeal bond, representing the estimated loss of use of the Net Settlement Fund to Settlement Class Members during the pendency of this appeal.  This amount is based on the current Treasury Bill interest rate, which is exceedingly conservative and

represents the minimum that the Class could earn if its money were invested in these safe and secure investments.

### A.    The Objector-Appellants are Presumed to Have the Financial Ability to Post a Bond.

Courts presume that appellants are financially able to post appeal bonds unless they demonstrate otherwise. *See In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 201, 213 (S.D.N.Y. 2010) (citations omitted).[4] In this case, each Objector-Appellant is represented by an attorney or is an attorney himself, and the appeal bond requirement should be an expected expense. Accordingly, this factor favors the imposition of appeal bonds.

### B.    The Appeals Lack Merit.

The Appeals are without merit. The Objector-Appellants will only be able to make arguments on appeal that were raised before the Court. *Kensington Rock Island Ltd. P'ship v. Am. Eagle Partners*, 921 F.2d 122, 124-25 (7th Cir. 1990). To prevail on appeal, the Objector-Appellants will have to show that this Court abused its discretion. *Williams v. Rohm and Haas Pension Plan*, Nos. 10-- 1978, 10-2175, 10-3713, -- F.3d --, 2011 WL 3874460, at *2 (7th Cir. Sept. 2, 2011). The Settlement was approved after lengthy and careful review, and none of the appeals has any reasonable expectation of altering the Order based on fact or law.  The appeals serve only to delay the Settlement Class Members' receipt of the benefits of the Settlement.

### 1.    The Objector-Appellants' Arguments Have No Merit

The Objector-Appellants' argument that the Settlement was insufficient has no merit. In approving the Settlement as "fair, reasonable, and adequate," the Court considered testimony

---

[4] *See also Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998) (finding that "without any showing of [appellant's] financial hardship," the imposition of a bond is not an impermissible barrier to appeal); *In re AOL Time Warner*, No. 02 CV 5575 (SWK), 2007 WL 2741033, at *2 (S.D.N.Y. Sept. 20, 2007) (concluding that the appellant was not arguing that it lacked the financial ability to post a bond where it did not submit financial information).

relating to BofA's maximum exposure, analyzed the strength of Plaintiffs' case, and calculated the value of the Settlement to the Settlement Class. Order at 19-24. The Objector-Appellants' papers included no specific analysis refuting BofA's maximum exposure, Class Counsel's assessment of the strength of Plaintiffs' case, or the value of the Settlement to the Settlement Class. Indeed, those few Objector-Appellants who addressed these points argued without any expert declarations of their own. Additionally, only two of the Objector-Appellants even sought (albeit untimely) to conduct discovery regarding the Settling Parties' damages calculations. Order at 5 n.6. Instead, the Objector-Appellants primarily relied on rhetoric. As the Court recognized, however, the analogies offered by the Objector-Appellants were unhelpful. Order at 28. Additionally, the Objector-Appellants references to other overdraft fee litigation settlements were of little or no relevance in analyzing the strength of this Settlement in light of the factual and legal issues specific to this case. Order at 28 n.13.

This Court also found that the Objector-Appellants' generic objections to the amount of discovery engaged in at the time of the Settlement was also without merit. Order at 24-26. To the contrary, the Court found that Class Counsel engaged in significant discovery prior to reaching the Settlement and were well apprised of the facts and law when they entered into the Settlement – a fact evidenced by the fair, reasonable, and adequate settlement amount that was negotiation over the course of three days of mediation spanning two months. Order at 26; *see also Mars Steel Corp.* v. *Continental Illinois Nat. Bank and Trust Co. of Chicago,* 834 F.2d 677, 684 (7th Cir. 1987) ("Rather than attempt to prescribe the modalities of negotiation, the district judge permissibly focused on the end result of the negotiation, which was more favorable to the class than any class member could reasonably have expected. The proof of the pudding was indeed in the eating.")). Thus, this argument cannot reasonably be viewed as anything other than

a shot in the dark, and has little, if any, chance of succeeding in the Court of Appeals.  *See McBean* v. *City of New York,* 233 F.R.D. 377, 384-85 (S.D.N.Y. 2006)).

The Court also properly rejected the Objector-Appellants' challenge to the *cy pres* distribution.  The record reflects that approximately 12.5% of the damages attributable to BofA's alleged wrongful conduct were charged to customers between 2000 and 2003 who cannot be identified through BofA's records.  No Objector offered any contrary proof.  The Parties' decision to allocate that portion of the Net Settlement Funds to *cy pres* relief was totally appropriate and supported by the law.  *See* Order at 34-39.  As the Court noted, "[t]he *cy pres* doctrine has routinely been recognized in the class action settlement context when, among other circumstances, 'class members are difficult to identify.'"  Order at 35 (quoting *Powell v. Ga.-Pac. Corp.*, 1 19 F.3d 703, 706 (8th Cir. 1997).  Thus, the method of allocation provided for by the Settlement is tailored to the facts of this case and is grounded in applicable law.

**C.    The Objector-Appellants' and Their Counsels' Conduct and Motivations Warrant the Imposition of the Requested Appeal Bonds**

**1.    The Objector-Appellants and Their Counsel**

The attorney-driven nature of the Objector-Appellants' appeals is transparent.    Baseless rote allegations (such as those the Objectors raised) that class counsel deliberately undervalued the claims, and boilerplate objections (again, like the Objectors') to fees, notice, or the settlement release, provide strong evidence that objections stem from professional objectors' counsel.  Such lawyers – who employ objections, and subsequent meritless appeals, as leverage to extort settlements – interfere with the system and "often delay and unnecessarily complicate class proceedings." *Newberg on Class Actions* § 15:37.  The Federal Judicial Center therefore advises courts to "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests."    Federal Judicial Center,

*Managing Class Action Litigation: A Pocket Guide for Judges*, at 15 (2d ed. 2009).

Federal courts "are increasingly weary of professional objectors," who "are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements – not to assess their merits on some principled basis – but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time-consuming appeals process." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003); *Snell v. Allianz Life Ins. Co. of N. Am.*, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 975 (E.D. Tex. 2000). *See also* Plaintiffs' Response to Objections to Motion for Final Approval of Settlement and Class Counsel's Application for Service Awards and Attorneys' Fees [**DE # 2030**] at 19-23 (discussing these particular professional objectors counsel and other compromised counsel).

The actions of the attorneys for the Objector-Appellants have real costs, as Settlement Class Member payments will be delayed until the appeals have been resolved.

> [Class actions ... attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counselor the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors ....

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008). Accordingly, the Court should impose an appeal bond on Objector-Appellants to protect the Settlement Class. Many of the Objectors-Appellants' attorneys are fairly characterized as professional objectors, and they should be forced to internalize the costs that their fee-seeking conduct imposes on the Class. *See* Plaintiffs' Response to Objections to Motion for Final Approval of Settlement at 19-

23 [DE # 2030]; *In re Initial Public  Offering Securities Litig.*, 728 F. Supp. 2d 289, 294 (S.D.N.Y. 2010)  (taking status as professional objectors into account in setting appeal bonds).

### D.    A Significant Risk of Nonpayment Exists

Class Counsel and the Settlement Class face a significant risk of never receiving any post-appeal costs to which they may be entitled absent a bond. The Objector-Appellants are scattered around the country and, in the more than likely event that Objector-Appellants are unsuccessful in their meritless appeals, Class Counsel and the Settlement Class "would need to institute collection actions in numerous jurisdictions to recover their costs ... [resulting in] a significant risk of non-payment." *In re Initial Pub. Offering Sec. Litig.,* 721 F. Supp. 2d at 213; *see also In re Currency Conversion Fee Antitrust Litig.*, 01 MDL 1409, 2010 WL 1253741, *2 (S.D.N.Y. Mar. 5, 2010) (same). Moreover, none of the Objector-Appellants has offered to guarantee payment of costs that might be assessed against them. *Id.*

In light of these risks, the Objector-Appellants should be required to post appeal bonds. See *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189, 1191 (5th Cir. 1979); *Allapattah Services, Inc. v. Exxon Corp*., 2006 WL 1132371 (S.D. Fla. 2006), adopting Report and Recommendation on Westheimer's Objection to the Class Settlement ("*Exxon R&R*"), at 20-24 (DE# 1315-4); *U.S. v. U.S. Fishing Vessel Maylin*, 130 F.R.D. 684 , 686 (S.D. Fla. 1990).;

In *Exxon*, the settlement agreement provided that payment would not be made to at least some class members until after resolution of any appeals.  Thus, an appealing class member would effectively obtain a stay of the final judgment on appeal, and such a stay typically triggers a bond to protect "the security of the rights of the adverse party."  *Exxon R&R* at 22.  The appealing objector would clearly be "an adverse party to the rest of the Class because it is the

only Claimant who has objected to an Agreement universally accepted by thousands of Claimants who did not file an objection." *Id.*

## III.     THE AMOUNTS REQUESTED ARE REASONABLE

While the precise amount of the bond is left to the sound discretion of the Court, the practical reality is that "[r]equiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals." *Page v. AH Robins Co.*, 85 F.R.D. 139, 139-40 (ED. Va. 1980). The requested appeal bond amounts are reasonable when viewed against the facts of the appeals. *See, e.g., Conroy v. 3M Corp.*, 00-cv-2810, Order Granting Plaintiffs Motion For Appellate Bond (N.D. Cal. Aug. 10, 2006) (ordering class action objectors to post an appellate bond of $431,167); *Barnes v. FleetBoston Fin. Corp.*, No. 1:01-cv-l039, slip op. at 2 (D. Mass. Aug. 22, 2006) (ordering imposition of $645,111 appeal bond); *see also In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 1253741, at *3 (finding $16,000 too low for an appellate bond and ordering the posting of a $50,000 bond); *Capizzi v. States Res. Corp.*, CIV.A.02-12319-DPW, 2005 WL 958400, at *1 (D. Mass. Apr. 26, 2005) (endorsing appeal bond of $25,000 for a brief that would merely require the "use of cut-and-past[ e] functions for word processing.").

This Court has broad discretion as to the elements and amount of the *supersedeas* bond:

In order to preserve the status quo, the District Court has the inherent power to set the amount of the *supersedeas* bond, which may include the whole amount of the judgment remaining unsatisfied, costs on appeal, interest, and damages for delay. *Poplar Grove*, 600 F.2d at 1191. Although Fed. R. Civ. P. 62(d) does not precisely define the amount and conditions of a *supersedeas* bond, it has been read consistently with the earlier rule, Civil Rule 73(d). *Id; Trans World Airlines, Inc. v. Hughes*, 515 F.2d 173 (2d Cir. 1975), *cert. denied* 424 U.S. 932. As such, the Court may impose such terms and conditions as to the security of the judgment that are just and necessary for the protection of the parties. *Underwood v. Malony*, 245 F.2d 797 (3d Cir. 1957).

*Exxon R&R* at 23.

In *Exxon*, former Judge Scott found, and Judge Gold ordered, that the *supersedeas* bond should be calculated as the amount of interest that would accrue on settlement funds whose distribution was delayed by the appeal, for the expected one year duration of the appeal. *Exxon R&R* at 21, n. 8; *Exxon*, 2006 WL 1132371 at 19. Judge Gold thus ordered that if the objecting class member chose to appeal he must post a bond of $13,500,000. *Exxon*, 2006 WL 1132371 at 19. This rule makes eminent good sense, and should be applied here.[5]

Here, the appeals can be expected to last at least a year, and will delay distribution of the entire Net Settlement Fund of approximately $280 million to the Settlement Class Members during that time. The Settlement does not permit distributions to Settlement Class Members until after resolution of any appeals. *See* **DE # 1471-1**, ¶ 83 (distributions to take place "[w]ithin 30 days of the Effective Date"), ¶ 22 (defining "Effective Date" as the fifth business day after all appeals have been concluded, including the time for filing a petition for certiorari). Applying former Judge Scott's reasoning, the Objector-Appellants are clearly adverse to the 99.9% of the Settlement Class Members who have accepted the Settlement by not objecting to it. Accordingly, the Objector-Appellants should be required to post *supersedeas* bonds as a condition to pursuing their appeals of this Court's Order and Final Judgment. The Objector-Appellants should be required to post *supersedeas* bonds equal to two years' interest on $280 million, or $616,338.00, in addition to the $5,000 cost bond under Rule 7.

## IV.    CONCLUSION

For the reasons set forth herein, requiring each of the Objector-Appellants to post significant appeal bonds is justified and appropriate. Plaintiffs respectfully request that the Court

---

[5] In *Exxon*, Judge Gold and Judge Scott based the interest calculation on the T-bill rate, and this amount can be calculated precisely at the time of imposition of the bond.

enter an Order under FRAP 7 and 8 requiring each of the Objector-Appellants to post appeal

bonds totaling $621,338.00, and for such other relief as this Court deems appropriate.

Dated:  December 27, 2011.

Repectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No.  516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*


/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

17

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on December 27, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596