Defendant Susquehanna Bank ("Susquehanna"), through its undersigned counsel, submits this reply in support of its motion to dismiss (the "Motion") (DE 2136).

## INTRODUCTION

The Amended Class Action Complaint (the "Complaint") (DE 2011) fails to state a claim upon which relief can be granted under New Jersey law, as demonstrated by Hassler v. Sovereign Bank, 644 F. Supp.2d 509 (D.N.J. 2009) ("Hassler I"), and the established New Jersey case law on which it relies. There, Judge Simandle -- who soon will be Chief Judge of the United States District Court for the District of New Jersey -- applied settled New Jersey law to dismiss claims that were identical in substance to those alleged in this case by the Mellos. A unanimous Third Circuit panel affirmed Judge Simandle. Hassler v. Sovereign Bank, 374 Fed. Appx. 341 (3d Cir. 2010) (unpublished) ("Hassler II"). The rulings in Hassler I and Hassler II were direct applications of established New Jersey law as articulated by that State's appellate courts. That law requires dismissal of this case under the Erie doctrine.

The Mellos know that the application of New Jersey law would be fatal to their claims. Therefore, they invite the Court not to engage in an analysis of New Jersey law to assess the sufficiency of their claims. Instead, they argue that Susquehanna's Motion be denied because this Court has previously denied most motions to dismiss in this MDL: "In this coordinated, multidistrict litigation, the Court has already upheld substantially identical claims against a number of other banks." (Response at 1).

The Court should reject the Mellos' invitation. This case involves unique features that require dismissal, notwithstanding the other motions previously decided by the Court. Among other things,

- The Mellos' claims are narrow. They allege that they have been harmed by only one allegedly illegal practice -- the so-called high-to-low "re-ordering" of electronic debit items. (Complaint at ¶¶ 67-74). They do not allege that they have personally been harmed by any of the other banking practices that have been alleged in this MDL (for example, the so-called "debit hold" practice), and there is no plaintiff in this case with standing to challenge those alleged practices.

- Unlike many other account agreements at issue in this MDL, the parties' Deposit Account Agreement (the "Account Agreement") both requires a high-to-low posting order, and unambiguously warns that the application of that posting order may result in additional overdraft fees. (Complaint at ¶ 32 & Ex. A).

- Unlike other cases in this MDL, this case involves <u>only</u> New Jersey plaintiffs and <u>only</u> New Jersey law, which is very well-developed and demonstrates the fatal flaws in the Mellos' alleged claims.

- Recent, directly on-point case law applies controlling New Jersey precedent to dismiss claims that are identical to those alleged here.  Under Eleventh Circuit law and <u>Erie</u>, this Court must defer to that precedent and dismiss this case.

<u>**ARGUMENT**</u>

**I.     This Court Should Defer To The New Jersey Law Applied In <u>Hassler</u> And The New Jersey Law On Which It Relies.**

   **A.     Only New Jersey Law Governs This Action.**

The Mellos argue that the Motion is "limited" because it does not address the laws of Maryland, Pennsylvania, and West Virginia (Response at 1, 3), which are the other States in which Susquehanna has branches.  That argument is nonsense.  The Mellos are the <u>only</u> named plaintiffs in this action.  They are New Jersey residents who are purporting to pursue claims on behalf of a New Jersey subclass under the New Jersey Consumer Fraud Act ("CFA").  (Complaint at ¶¶ 12, 15, 115-122).  There is no basis for the Mellos to assert claims under anything other than New Jersey law.  As this Court previously held in this MDL, the alleged claims of the unnamed purported class members are given no consideration at this stage.  <u>In re: Checking Account Overdraft Litig.</u>, 694 F. Supp.2d 1302, 1324-25 (S.D. Fla. 2010).[1]

Moreover, this Court is required to apply New Jersey law to analyze the sufficiency of the Mellos' claims.  "In a multi-district litigation case, the transferee court applies the choice of law rules of the state in which the action was filed."  <u>In re: Checking Account Overdraft Litig.</u>, 718 F. Supp.2d 1352, 1355 (S.D. Fla. 2010).  The Mellos filed this action in the United States District Court for the District of Maryland.  As a result, this Court must apply Maryland's <u>lex loci delicti</u> rule, which means that "the court must apply the law of the place of injury as to all matters of substantive law."  <u>Lewis v. Waletzky</u>, 31 A.3d 123, 129 (Md. 2011).  Because the place of the Mellos' alleged injury is New Jersey, this Court must apply New Jersey law.[2]  <u>See also</u> <u>Provau v. State Farm Mutual Auto. Ins. Co.</u>, 772 F.2d 817, 819 (11th Cir. 1985) ("Under

---

[1] Internal citations and quotations are omitted from this reply unless otherwise noted.

[2] The Account Agreement also specifies that it is governed "by the laws of the state in which the office where you opened your account is located."  (Complaint, Ex. A at 1).

2

Erie Railroad v. Tompkins . . . a federal court in a diversity action must apply the controlling substantive law of the state.").

Further, the Mellos' invitation to this Court to rely on prior rulings arising primarily under the law of other States in effect asks for an application of collateral estoppel -- an invitation that, if accepted, would violate Susquehanna's due process rights. The fact that this case has been transferred to this MDL for coordinated pre-trial proceedings does not mean that it has lost its identity as a separate and distinct case. In In re: Nissan Motor Corp. Antitrust Litig., 471 F. Supp. 754 (S.D. Fla. 1979), the defendant argued that the Court's prior ruling against a plaintiff in one case had a collateral estoppel effect on other cases in the MDL. Id. at 756. Chief Judge Atkins squarely rejected that argument:

> The Court rejects Nissan Motors' argument that a likeness in complaint, closely coordinated pre-trial responsibilities and joint motions and strategies are sufficient to enforce collateral estoppel against parties not represented in an action. ... The mere fact the cases were transferred under § 1407 does not have the effect of merging the suits into a single cause, or change the rights of the parties, or make those who are parties to one suit parties to another.

Id. at 758-59. Due process of law precludes anything other than separate treatment for separate cases in an MDL. Id. at 759-60.

To Susquehanna's knowledge, this Court has not yet addressed in substance the application of New Jersey law, and particularly Hassler, to extremely narrow claims of the kind alleged by the Mellos. This action presents the Court with its first opportunity to address a case that involves only New Jersey plaintiffs, only New Jersey law, only high-to-low posting, and an account agreement that plainly discloses both the posting order and the potential consequence of additional overdraft fees.[3]

**B.     The Settled New Jersey Law Applied In Hassler Is Directly On Point.**

In Hassler, the plaintiff alleged the same claim that the Mellos make here -- that the posting of electronic debit items in high-to-low dollar order is wrongful because it results in a greater number of overdraft fees. Hassler I, 644 F. Supp.2d at 511-12. The plaintiff in Hassler attempted to allege three counts under New Jersey law: violation of the CFA; breach of the

---

[3] The two previous MDL Orders cited by the Mellos (DE 934 & 1305) address issues of New Jersey law, but do not include a substantive discussion explaining the Court's reasoning. Nor did those Orders involve cases arising exclusively under New Jersey law.

implied duty of good faith and fair dealing; and unjust enrichment. Id. at 514, 517, 519. The Mellos purport to allege the same counts here.

Judge Simandle, a member of the New Jersey district court bench since 1983 and a member of the New Jersey bar before that[4], applied established New Jersey law to dismiss each of the plaintiff's claims, with prejudice:

- The CFA and unjust enrichment claims failed because the account agreement disclosed and reserved the bank's right to use the high-to-low posting order. Hassler I, 644 F. Supp.2d at 514-15, 519-20. These holdings were required under settled New Jersey law, including New Jersey Citizen Action v. Schering-Plough Corp., 842 A.2d 174 (N.J. Super. Ct. App. Div. 2003), and VRG Corp. v. GKN Realty Corp., 641 A.2d 519 (N.J. 1994). The Mellos' Account Agreement likewise contains a clear disclosure of Susquehanna's high-to-low posting order. (Complaint at ¶ 32).

- The claim for breach of the implied duty of good faith and fair dealing failed because the plaintiff did not allege an improper motive for the high-to-low posting order. An allegation that the bank desired to maximize fees and profits is not sufficient under New Jersey law. Hassler I at 518-19. This holding was also required under settled New Jersey law, including Wilson v. Amerada Hess Corp., 773 A.2d 1121 (N.J. 2001). The Mellos likewise allege only that Susquehanna was motivated to use the high-to-low posting order by a desire to increase profits. (Complaint at ¶ 7).

In their Response, the Mellos attempt to distinguish Hassler by arguing that their claims in this action are broader than the claims in this case.[5] They claim that in Hassler, "all that was in play was re-sequencing [in high-to-low dollar order] on the same day." (Response at 6, fn. 1). The Mellos argue that their claims encompass not only the ordering of electronic debit items, but also: (a) Susquehanna's so-called "debit holds" (that is, the alleged practice of holding debit items for multiple days, supposedly to increase the chance of generating an overdraft fee); (b) Susquehanna's alleged failure to clearly disclose to its customers whether a fee will result from

---

[4]   See   http://www.fjc.gov/servlet/nGetInfo?jid=2191&cid=999&ctype=na&instate=na   (last accessed on December 21, 2011).

[5]   The Mellos note that they have attempted to allege claims for conversion and unconscionability, which were not pled in Hassler. (Response at 4). That is irrelevant. The Mellos' claims for conversion and unconscionability are barred by New Jersey law. (See Motion at 7-16; infra at 9-14). Further, the Mellos' attempted pleading of two extra claims does not alter the dispositive impact of Hassler on the common claims for violation of the CFA, breach of the implied duty of good faith and fair dealing, and unjust enrichment.

an overdraft; and (c) Susquehanna's alleged failure to notify its customers of a right to opt out of its overdraft policies. (See Response at 4-8).

These arguments mischaracterize the allegations made in the Mellos' own Complaint. The only allegations in the Complaint identifying the harm allegedly incurred by the Mellos arise from the ordering of debit items by Susquehanna on a single day in November 2009. (Complaint at ¶ 69). The Mellos allege, simply, that the "wrongful overdraft fees assessed occurred as a result of the Bank's manipulation and re-ordering of Plaintiffs' debit card transactions." (Id. at ¶ 73). This is the very same allegation made by the plaintiff in Hassler. See Hassler I, 644 F. Supp.2d at 511-12.

There are no allegations that the Mellos were harmed by anything related to a purported "debit hold." (Complaint at ¶¶ 67-74). There are no allegations that the Mellos were harmed, misled, or confused about when or whether a fee would be charged for an overdraft.[6] (Id.). Finally, there are no allegations that the Mellos were harmed, misled, or confused about the right (or lack thereof) to opt out of Susquehanna's overdraft policies. (Id.). They do not allege a legal or contractual basis for a right to opt out, nor do they allege that they would have opted out had they been notified of any such right. (Id.).

Accordingly, as in Hassler, the only thing "in play" with respect to the Mellos' claims is the alleged posting of their electronic debit items in high-to-low dollar order.[7] Their conclusory allegations about how Susquehanna's other allegedly improper practices may have affected individuals who are not before the Court are irrelevant at this stage of the litigation. The Mellos' allegation of harm is focused squarely on Susquehanna's high-to-low posting order. That limited allegation is consistent with this Court's prior observation about the nature of this MDL. See DE 2206: "The issue [in this MDL] is whether or not these banking institutions have violated any laws pertaining to re-sequencing of their customers' debit card transactions."

---

[6] In fact, this allegation is not made at all in the Complaint, not even in conclusory fashion.

[7] Based on the class definitions in the Complaint, it appears that the high-to-low posting order is also the only thing "in play" with respect to the purported class claims. (Complaint at ¶ 15).

**C.     This Court Should Defer To The Settled New Jersey Law Applied By Judge Simandle And The Third Circuit.**

The Mellos make much ado about the fact that <u>Hassler II</u> is an unpublished opinion.[8] (Response at 3-4).   <u>Hassler II</u>'s status as an unpublished opinion does not diminish the persuasiveness of Judge Simandle's analysis and application of New Jersey law in <u>Hassler I</u>, which is a <u>published</u> opinion.  Judge Simandle is an experienced and well-respected New Jersey jurist whose deep familiarity with New Jersey law cannot seriously be questioned.  His analysis of the claims in <u>Hassler I</u>, which are the same claims alleged here, and his application of New Jersey law to those claims, must be accorded great deference by this Court.   <u>See</u> <u>Alabama Electric Co-op., Inc. v. First Nat. Bank of Akron, Ohio</u>, 684 F.2d 789, 792 (11th Cir. 1982) ("In the absence of guiding Florida decisions, we are bound to follow the principle . . . that the interpretation of state law by a federal district judge sitting in that state is entitled to deference."); <u>Bordelon Bros. Towing Co. v. Piling & Structures, Inc.</u>, 906 F.2d 528, 532 (11th Cir. 1990) ("The court of appeals affords deference to a district judge's interpretation of the law of a state in which the district judge sits.").  The fact that Judge Simandle was affirmed on appeal in <u>Hassler II</u> only adds to the persuasive weight of <u>Hassler I</u>.

There is good reason for deferring in this circumstance.  As the Ninth Circuit has stated,

> we are mindful of the rule that interpretations of state law by a district judge of the law of the state in which he sits are entitled to deference.  This standard of review stems from the rationale that district judges are familiar with the law in the state in which they sit, both from their current experience in living in the legal milieu of their home state and from past experience as attorneys in the state prior to becoming judges.

<u>Safeco Ins. Co. of America v. Guyton</u>, 692 F.2d 551, 553-54 (9th Cir. 1982).  <u>See also</u> <u>Butner v. United States</u>, 440 U.S. 48, 58 (1979) ("The federal judges who deal regularly with questions of state law in their respective districts and circuits are in a better position than we to determine how local courts would dispose of comparable issues.").

---

[8] While that makes <u>Hassler II</u> non-binding authority under the Third Circuit's internal operating procedures, it is certainly persuasive authority that cannot be ignored, as the Mellos urge this Court to do.  <u>See</u> Fed. R. App. P. 32.1; <u>United States v. Rodriguez-Lopez</u>, 363 F.3d 1134, 1138, fn. 4 (11th Cir. 2004) ("While unpublished opinions are not binding on this court, they may nonetheless be cited as persuasive authority.").

Thus, Eleventh Circuit precedent requires this Court to give considerable deference to the rulings made in Hassler. Hassler I is a thorough and well-reasoned opinion made by a long-time New Jersey judge. It applies settled New Jersey law to claims that are substantively identical to the ones alleged here, and it was affirmed in Hassler II by three experienced appellate judges.

In desperation, the Mellos argue that they should be permitted to pursue their claims because Susquehanna "will not be barred from seeking summary judgment at a later stage of this lawsuit." (Response at 4). That argument exhibits a fundamental misunderstanding of federal civil procedure. Now is the time to test the legal sufficiency of the Complaint. That is the very purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Goldin v. Boce Group, L.C., 773 F. Supp.2d 1376, 1378 (S.D. Fla. 2011) (King, J.) ("To survive a motion to dismiss, a complaint must allege both a cognizable legal theory and sufficient facts to support it."). The Mellos have no right to conduct discovery without first stating a claim for relief, which they have failed to do. See, e.g., Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 566 (6th Cir. 2003) ("there is no general right to discovery upon filing of the complaint. The very purpose of Fed. R. Civ. P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery."). The need to eliminate legally insufficient claims is heightened in cases such as this one, where this Court is keenly familiar with the burdens of discovery, particularly electronic discovery, in this MDL.

## II.   The Mellos Have Failed To State A Claim Under New Jersey Law.

### A.   The Mellos Have Failed To State A Claim For Breach Of The Implied Duty Of Good Faith And Fair Dealing.

In the Motion, Susquehanna identified two principles of New Jersey law that require dismissal of this claim. (Motion at 4-5). The Mellos make no serious response to either point.

First, the implied duty of good faith and fair dealing cannot override the express provision in the Account Agreement authorizing Susquehanna's use of the high-to-low posting order. Hassler I, 644 F. Supp.2d at 518; Wilson, 773 A.2d at 1126 ("the implied covenant of good faith and fair dealing cannot override an express term in a contract"). Here, the Account Agreement states, in part, that "[t]he law permits us to pay items (such as checks or drafts) drawn on your account in any order. When processing items drawn on your account, our policy is to pay them according to the dollar amount. We pay the largest items first." (Complaint at ¶ 32;

emphasis added).   As <u>Hassler</u> demonstrates, the implied duty of good faith and fair dealing cannot hinder, impede, or alter this express contractual right.

The Mellos' response is to argue that the posting order disclosed in the Account Agreement extends only to paper checks and drafts, not electronic debit items.  (<u>See</u> Response at 5, 11-12).  As an initial matter, the argument is a complete red herring.  The Mellos make no allegation in their Complaint that <u>they</u> were personally confused or misled about the meaning of the word "items," or the application of the stated posting order to debit card purchases. (Complaint at ¶¶ 67-74).  They merely allege that Susquehanna's practice of ordering debit items in high-to-low dollar order breached the implied duty of good faith and fair dealing -- just as the plaintiff alleged in <u>Hassler</u>.  (<u>Id.</u>).

Further, the argument has no merit as a matter of common sense, and is contrary to standard English usage.  The posting order provision set forth in the Account Agreement broadly applies to all types of "items" presented to Susquehanna for payment from the Mellos' account, not just checks and drafts.  (Complaint at ¶ 32).  For example, the very first sentence of the provision states: "The law permits us to pay items (<u>such as</u> checks or drafts) . . . in any order." (Emphasis added).  This necessarily means that "items" is not limited to checks and drafts, as the Mellos argue.  The lack of any other posting order in the Account Agreement (Complaint, Ex. A), and the fact that the Account Agreement's undeniably covers <u>all</u> debits, including electronic debit items (<u>id.</u> at 11-16), establish that the posting order broadly applies to all "items" drawn on the Mellos' account, including checks, drafts, and debit card purchases.[9]

Moreover, the interpretation of the word "items" in the Account Agreement to include checks, drafts, and electronic debits is consistent with the commonly understood meaning of the word.  The ordinary meaning of "item," based on standard definitions available on the internet, is: (a) "<u>an entry in an account</u>"[10]; or (b) "<u>a distinct part in an enumeration, account, or series</u>"[11]

---

[9] The Mellos attempt to link the Account Agreement's use of the term "items" to Article 4 of the UCC, which they say applies only to checks and drafts.  (Response at 5, 11-12).  There is no support in the Account Agreement for this argument.  To the contrary, the Account Agreement extends the definition of items beyond just checks and drafts: "The law permits us to pay items (<u>such as</u> checks or drafts) . . . in any order."  (Emphasis added).

[10]   <u>See</u>  http://www.thefreedictionary.com/item  (last  accessed  on  January  6,  2012); http://oxforddictionaries.com/definition/item?q=item (last accessed on January 6, 2012).

(emphasis added). "Item" is by definition a broad term covering all account entries; the Account Agreement does not express any limitation on its broad, ordinary meaning. <u>Flanigan v. Munson</u>, 818 A.2d 1275, 1280 (N.J. 2003) ("words of an agreement are given their ordinary meaning").[12]

Second, and independent of whether or not electronic debit items are governed by the posting order specified in the Account Agreement, the Mellos have failed to allege that Susquehanna harbored an improper motive, as is required under New Jersey law to state a claim for breach of the implied duty of good faith and fair dealing, because maximizing profits is legal under New Jersey law. Judge Simandle, citing New Jersey case law, explained that

> it does not satisfy the improper motive element of a good faith performance claim for a plaintiff to allege merely that its contractual partner exercised the discretion expressly afforded to it under the agreement "to serve [its own] financial interests," <u>Stony Brook Constr. Co., Inc. v. College of New Jersey</u>, 260-01, 2008 WL 2404174, at *7 (App. Div. May 24, 2004), or to "maximize [its] profits," <u>Wilson</u>, 168 N.J. at 248, 773 A.2d 1121 (citation omitted), and that this decision worked to disadvantage the complaining party.

<u>Hassler I</u>, 644 F. Supp.2d at 519.  <u>See also</u> <u>Hassler II</u>, 374 Fed. Appx. at 345.

The Mellos have no non-frivolous response to this point. They argue that "[s]ince the Account Agreement does not provide for the debit hold practices that Susquehanna used, the Court should reject Susquehanna's premise that as a matter of law it had no 'bad motive' in performing its contractual obligations." (Response at 10). That assertion is irrelevant because, as stated above, the Mellos do not allege that they were harmed by an alleged "debit hold," and they have no standing to challenge that practice. (Complaint at ¶¶ 67-74).

**B.      There Is No Such Claim As "Unconscionability" Under New Jersey Law.**

**1.      The Mellos Concede That New Jersey Law Does Not Recognize An Affirmative Cause Of Action For Unconscionability.**

Susquehanna established in its Motion that New Jersey does not recognize an affirmative cause of action for unconscionability. (Motion at 7). The Mellos make no response to that point (<u>see</u> Response at 13-16), and thereby concede it.

---

[11] <u>See</u> http://www.merriam-webster.com/dictionary/item?show=1&t=1325863283 (last accessed on January 6, 2012).

[12] The interpretation of the Account Agreement is a question of law for this Court. <u>Peterson v. Township of Raritan</u>, 12 A.3d 250, 255 (N.J. Super. Ct. App. Div. 2011).

The Mellos instead argue that Susquehanna "is attempting to reargue similar challenges to unconscionability that have been rejected by this Court" in other actions in this MDL. (Response at 13).[13]   The so-called "similar challenges" made by other banks in other cases involving other plaintiffs, other facts, and other States' laws have no impact on this case whatsoever.   In re: Nissan Motor, 471 F. Supp. at 758-59 ("The mere fact the cases were transferred under § 1407 does not have the effect of merging the suits into a single cause, or change the rights of the parties, or make those who are parties to one suit parties to another."). There is simply no basis to reject dispositive New Jersey law on this central legal point, or to allow the Mellos to continue to pursue a cause of action that does not exist.

### 2.   Unconscionability Is A Question Of Law, Not A Question Of Fact.

The Mellos also argue that unconscionability is a "fact intensive" inquiry that is inappropriate for dismissal at this stage.   That is simply not so.   In B & S Ltd., Inc. v. Elephant & Castle Int'l, Inc., 906 A.2d 511, 521 (N.J. Super. Ct. Ch. Div. 2006), a case cited by the Mellos, the Court plainly held that the "issue of unconscionability is one of law for resolution by the court, and the burden of proving unconscionability is on the party asserting it."

The Mellos have failed to satisfy their burden of pleading unconscionability in this case -- even assuming, contrary to fact, that New Jersey recognized such a cause of action.

•   Procedural Unconscionability.   The Mellos appear to concede that they must demonstrate the lack of a meaningful choice in order to prove procedural unconscionability. (Response at 14-15).   Indeed, in Hunish v. Assisted Living Concepts, Inc., 2010 WL 1838427, at *4 (D.N.J. May 6, 2010), a case cited by the Mellos, the Court held that the "gravamen of procedural unconscionability is whether one party lacked a meaningful choice in entering the agreement."   Further, "the mere fact that a contract is a 'contract of adhesion' does not render it procedurally unconscionable," nor does "mere inequality in bargaining power."   Id. at *4-5.

---

[13] The Mellos cite non-New Jersey law as support for their argument that an unconscionability claim can justify a damages award, not just rescission. (Response at 13-14).   But they fail entirely to rebut (or even address) the New Jersey law holding that there is no affirmative cause of action for unconscionability in the first instance.   Further, the New York cases cited by the Mellos actually support Susquehanna.   For example, in Lonner v. Simon Group, Inc., 866 N.Y.S.2d 239, 245 (N.Y. App. Div. 2008), the Court held that money damages are not available based on an unconscionability argument: "[u]nder both the UCC and common law, a court is empowered to do no more than refuse enforcement of the unconscionable contract or clause."

The Mellos argue that they lacked a meaningful choice in contracting with Susquehanna because "other similar banks all contain language purporting to allow reordering of debit card transactions." (Response at 15). That assertion has no basis in the Complaint. There are no well-pled allegations that all of the financial institutions available to the Mellos in New Jersey and on the internet use the high-to-low posting order. Without any factual allegations that, if true, would establish a lack of a meaningful choice, the Mellos cannot establish procedural unconscionability. Sitogum Holdings, Inc. v. Ropes, 800 A.2d 915, 921-22 (N.J. Super. Ct. Ch. Div. 2002).

- Substantive Unconscionability. The Mellos fail to respond to nearly every one of Susquehanna's substantive unconscionability arguments (Motion at 11-14), and thus apparently concede that their allegations fail to show substantive unconscionability (Response at 15-16).

The Mellos instead attempt to shift the focus of their argument to other aspects of the Account Agreement, specifically: (a) the high-to-low posting order; (b) supposedly inadequate account balance disclosures[14]; and (c) the alleged lack of a reasonable relationship between Susquehanna's $40 overdraft fee and the "costs or risks associated with providing the overdraft service." (Id.).

The Mellos cannot use their Response to attempt to amend (again) their Complaint.[15] But even if they had properly made these new allegations, they would still fail to establish a plausible basis for substantive unconscionability under New Jersey law. Substantive unconscionability requires contractual terms that are so disproportionately one-sided that they would shock a New Jersey court's conscience. B & S Ltd., 906 A.2d at 521. There is nothing shocking under New Jersey law about posting debit items in high-to-low dollar order, particularly when (as here) that order is plainly disclosed in the parties' account agreement. See Hassler I, 644 F. Supp.2d 509; Hassler II, 374 Fed. Appx. 341.

---

[14] This argument is yet another red herring, because the Mellos do not allege that they were harmed, misled, or confused in any way about their account balance. (See Complaint at 67-74).

[15] This pleading deficiency is likely one reason why the Mellos have sought leave to amend their Complaint for a second time. (Response at 20). Susquehanna agrees that the Complaint fails to state a claim for relief, but disagrees that leave to amend would be appropriate. Amendment would be futile here. See In re: Checking Account Overdraft Litig., 2011 WL 1102867, at *1 (S.D. Fla. Mar. 21, 2011) (leave to amend should be denied where amendment would be futile).

Additionally, as established in the Motion (pp. 13-14), there is nothing unconscionable about a $40 overdraft fee. The Mellos' citation of the California case of <u>Perdue v. Crocker Nat. Bank,</u> 702 P.2d 503 (Cal. 1985) (Response at 16), does not support their argument. The Mellos' claims are not controlled by California law; they have offered no New Jersey law to support their theory. Further, unlike the plaintiff in <u>Perdue,</u> 702 P.2d at 512, the Mellos have made no allegation with respect to Susquehanna's cost for processing an overdraft item. Additionally, the Mellos have admitted that $40 is close to the average $34 present day overdraft fee found in the marketplace. (<u>See</u> Complaint, Ex. D). Finally, as demonstrated in the Motion (p. 13), more recent cases have approved overdraft fees much greater than $6.

### C.    The Mellos Have Failed To State A Claim For Conversion.

Susquehanna established in its Motion that this claim fails for at least four reasons: (a) ownership of the allegedly converted property is required to plead conversion, but the Mellos do not own the funds in their Susquehanna account as a matter of New Jersey law; (b) Susquehanna, as an alleged debtor, has no obligation under New Jersey law to return to the Mellos, as the alleged creditors, the identical money that was allegedly assessed as overdraft fees; (c) the claim is barred by New Jersey's economic loss doctrine; and (d) there was nothing wrongful under New Jersey law about Susquehanna's assessment of overdraft fees on the Mellos' account because they admittedly exceeded their available funds and the overdraft fees were assessed in accordance with the Account Agreement. (Motion at 14-16). Each one of these arguments is in accord with established New Jersey case law. (<u>Id.</u>).

The Mellos respond primarily by misinterpreting New Jersey law and citing the laws of other States with respect to the need to plead ownership of the allegedly converted property and the economic loss doctrine. (Response at 17-20).

First, they argue that New Jersey law does not require an allegation that the plaintiff owned the allegedly converted property, but only an allegation of an immediate right to possession of the property. (Response at 17). This argument is contrary to New Jersey law. The Supreme Court of New Jersey has held that ownership is a required element of a conversion claim. <u>Mueller v. Technical Devices Corp.,</u> 84 A.2d 620, 623 (N.J. 1951) ("The gist of an action in trover is conversion, that is, the exercise of any act of dominion in denial of another's <u>title</u> to the chattels, or inconsistent with such <u>title</u>.") (emphasis added). This principle was repeated in a

series of recent New Jersey appellate opinions cited in the Motion, opinions that the Mellos fail to address in their Response. (Motion at 14; Response at 16-20).

This Court is bound to apply this settled law under the <u>Erie</u> doctrine, regardless of its prior decisions in this MDL. <u>Clark v. Riley</u>, 595 F.3d 1258, 1264 (11th Cir. 2010) (the objective for a federal court sitting in a diversity action is to "decide the case the way it appears the state's highest court would"); <u>KMS Restaurant Corp. v. Wendy's Int'l, Inc.</u>, 361 F.3d 1321, 1325 (11th Cir. 2004) (federal courts sitting in diversity must follow decisions of the State's intermediate appellate courts, "unless there is some really persuasive indication" that the State's highest court would decide otherwise).

The Mellos' argument is not even supported by the cases cited in their Response. Their only New Jersey case, a 1971 opinion from the State's intermediate appellate court, applies <u>Pennsylvania</u> law, not New Jersey law. <u>Royal Store Fixture Co. v. New Jersey Butter Co.</u>, 276 A.2d 153, 155-56 (N.J. Super. Ct. App. Div. 1971).

Further, in <u>Corestar Int'l PTE. Ltd. v. LPB Communications, Inc.</u>, 513 F. Supp.2d 107, 115, 127 (D.N.J. 2007), there was no issue about whether the plaintiff owned the allegedly converted property (money paid by the plaintiff to the defendant for goods); rather, the issue was whether the plaintiff had the right to immediately possess that property. The federal district court held that there was no right to immediate possession because the defendant had the potential right to a set-off. <u>Id.</u> At most, <u>Corestar</u> stands for the proposition that the right to immediate possession is an <u>additional</u> element of a conversion claim under New Jersey law, not an <u>alternative</u> element in lieu of ownership.

In response to this settled New Jersey law, the Mellos attempt to argue that the Account Agreement provides them with ownership of their account funds. (Response at 18). They rely exclusively on disclosures in the Account Agreement about beneficiary designations and the disposition of account funds upon an account holder's <u>death</u> as evidence of their right to ownership. (<u>Id.</u>; Complaint, Ex. A at 3). These contract-based rights to select a beneficiary of an account upon <u>death</u> do not establish that the account holder is the "owner" of the account funds upon deposit. There is no inconsistency between providing these rights and the settled New Jersey law that title to bank account funds transfers from the customer to the bank upon deposit. <u>All American Auto Salvage v. Camp's Auto Wreckers</u>, 679 A.2d 627, 631 (N.J. 1996) ("The deposit of funds into a general account transfers ownership of the funds to the bank and

constitutes the depositor as the bank's creditor."). Nor is there anything in the Account Agreement suggesting that this firmly-entrenched common law rule is inapplicable here. That the Mellos have the "ability to exercise control over the funds in their account" proves nothing. (Response at 18). That is the right of any account holder in New Jersey, as a creditor to the bank. See Maurello v. Broadway Bank & Trust Co. of Paterson, 176 A. 391, 394 (N.J. 1935) ("a deposit in a bank is general, creating the relationship of debtor and creditor as between the bank and the depositor; the debt to be satisfied upon payment on demand by the depositor") (emphasis added).

Moreover, in Gutierrez v. Wells Fargo & Co., 622 F. Supp.2d 946 (N.D. Cal. 2009) (Alsup, J.), a case on which the plaintiffs in this MDL have repeatedly relied, the district court squarely rejected an alleged conversion claim. Judge Alsup held that "a bank may not be sued for conversion of funds deposited with the bank." Id. at 956.

Finally, the Mellos cite federal district court opinions from Pennsylvania and Florida to argue that the economic loss doctrine is inapplicable here. (Response at 19-20). Neither opinion supports their argument. In Hunter v. Sterling Bank, 750 F. Supp.2d 530, 543-45 (E.D. Pa. 2010), the district court applied New Jersey law and held that the plaintiff's conversion and negligence claims were barred by the economic loss doctrine because those claims were rooted in contract. As was the case in Hunter, the Mellos allege no independent tort duty. The subject of their claims -- overdraft fees -- is within the scope of and governed by the Account Agreement, and the Mellos have alleged a claim for breach of contract. (Complaint at ¶¶ 82-88).

The Florida case, Szterensus v. Bank of America, N.A., 2010 WL 427509, at *2 (S.D. Fla. Feb. 1, 2010), is inapposite. There, the court applied Florida law to hold that a conversion claim was not barred by the economic loss doctrine where a bank employee allegedly stole hundreds of thousands of dollars from a customer. No such facts are alleged here.

**D.     The Mellos Have Failed To State A Claim For Unjust Enrichment.**

The Mellos' unjust enrichment claim fails under Hassler I and Hassler II. (Motion at 17-18). As explained by the Court of Appeals in Hassler II,

> [t]he Account Agreement clearly reserved to Sovereign the right to post charges to the account each day in descending order of amount. Because such posting was not "beyond its contractual rights," Sovereign's collection of the overdraft fees did not "enrich it beyond its contractual rights."

374 Fed. Appx. at 345-46 (quoting VRG Corp., 641 A.2d at 526).  Susquehanna likewise reserved the right in the Account Agreement to post debit items in descending order of amount. See Alabama Electric, 684 F.2d at 792 ("the interpretation of state law by a federal district judge sitting in that state is entitled to deference.").

The Mellos also argue that they may plead breach of contract and unjust enrichment as alternative claims.  (Response at 12-13).  This argument might be relevant if they had actually pled the elements of an unjust enrichment claim, which they have not.  Further, alternative pleading is not available here because neither party is claiming that the Account Agreement is invalid or unenforceable as a whole.  The Mellos are actually seeking to enforce it.  (Complaint at ¶¶ 82-88). Compare Bosland v. Warnock Dodge, Inc., 933 A.2d 942, 950 (N.J. Super. Ct. App. Div. 2007), aff'd 964 F.2d 741 (N.J. 2009) (affirming the preliminary dismissal of a claim for unjust enrichment because "no benefit was conferred upon defendant that was separate and distinct from the written contract," and no party sought to invalidate the express contract); In re: Prudential Ins. Co. of America Sales Practices Litig., 975 F. Supp. 584, 621-22 (D.N.J. 1996) (permitting alternative pleading of breach of contract and unjust enrichment claims because the plaintiff alleged that the contract was induced by fraud, and, therefore, invalid).

### E.    The Mellos Have Failed To State A Claim For Violation Of The CFA.

This claim was considered and dismissed by Judge Simandle and the Third Circuit.  As discussed above, there is no basis for distinguishing or ignoring their holdings or the settled New Jersey law upon which they relied.

Moreover, this claim is not pled with particularity as required under Fed. R. Civ. P. 9(b). (Motion at 18).  The Mellos' CFA count makes a general reference to unspecified conduct alleged somewhere in the first 81 paragraphs of the Complaint.  (See Compliant at ¶¶ 115, 117). In their Response (pp. 9-10), the Mellos attempt to identify what they now claim to be some relevant allegations, but the need for particularized facts applies to the Complaint, not a brief. See, e.g., Hughes v. Chattem, Inc., ___ F. Supp.2d ___, 2011 WL 3877120, at *10 (S.D. Ind. Aug. 31, 2011); Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg, 651 F. Supp. 877, 879-80 (D. Conn. 1986).

### CONCLUSION

For all the foregoing reasons, and the reasons set forth in the Motion, Susquehanna respectfully requests that the Complaint be dismissed with prejudice.

Date:   January 9, 2012                              Respectfully submitted,

 

                                                   *s/ James A. Dunbar*

James A. Dunbar (admitted *pro hac vice*)
Matthew R. Alsip (admitted *pro hac vice*)
Venable LLP
210 West Pennsylvania Avenue, Suite 500
Towson, Maryland 21204
410-494-6200 (telephone)
410-821-0147 (facsimile)
jadunbar@venable.com
mralsip@venable.com

John T. Prisbe (admitted *pro hac vice*)
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
410-244-7400 (telephone)
410-244-7742 (facsimile)
jtprisbe@venable.com

*Counsel for Susquehanna Bank*

## <u>CERTIFICATE OF SERVICE</u>

    I HEREBY CERTIFY that on this 9th day of January, 2012, I filed and served a copy of Susquehanna Bank's foregoing Reply Memorandum using the Court's CM/ECF system.

                                            *s/ Matthew R. Alsip*
                                          Matthew R. Alsip

307714/1