UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Lewis v. Sovereign Bank*
S.D. FL Case No. 1:11-cv-22022-JLK

**REPLY OF DEFENDANT SOVEREIGN BANK
IN SUPPORT OF ITS MOTION TO DISMISS THE
FIRST CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

    A. Plaintiff's Claims Are Field Preempted ................................................................. 1

        1. Plaintiff's Half-Hearted Attempt To Question Whether OTS Preemption Governs In Light Of Dodd-Frank Is Frivolous ........................ 1

        2. OTS Field Preemption Is Not The Same As OCC Conflict Preemption ..................................................................................................... 2

        3. Laws of General Application Are Preempted Under HOLA/OTS Preemption, And Plaintiff's Assertion To The Contrary Is Contradicted By Her Own Cases ................................................................. 5

        4. Only Straightforward Breach Of Contract Or Fraud Claims That Do Not Bear On A Bank's Practices Are Not Preempted .......................... 7

    B. Plaintiff's Claims Fail Under Maryland Law ......................................................... 8

        1. Plaintiff Cannot Effectively Negate *Hassler* ............................................. 8

        2. Breach of the Covenant of Good Faith and Fair Dealing .......................... 8

        3. Unconscionability ...................................................................................... 9

        4. Unjust Enrichment .................................................................................... 9

        5. Conversion ............................................................................................... 10

        6. Violation of the MCPA ........................................................................... 10

III. CONCLUSION .................................................................................................................. 10

I.     **INTRODUCTION**

Sovereign Bank ("Sovereign"), at all times relevant hereto, was a federal savings bank regulated by the Office of Thrift Supervision ("OTS") under the Home Owners' Loan Act ("HOLA"), 12 U.S.C. § 1461 *et seq.*  As such, Sovereign was subject to a more expansive federal preemption scheme – namely, field preemption – than the conflict preemption scheme that applies to national banks governed by the Office of the Comptroller of the Currency ("OCC") under the National Bank Act ("NBA"), 12 U.S.C. § 21 *et seq.*  Thus, Sovereign's preemption argument requires a different analysis than the Court has previously used in addressing preemption for OCC-chartered national banks.  *See, e.g., In re Checking Account Overdraft Litigation* ("*Omnibus Opinion*"), 694 F. Supp. 2d 1302 (S.D. Fla. 2010).  And that different analysis leads inexorably to the conclusion that Plaintiff's claims are preempted.

Nothing in Plaintiff's opposition brief undercuts any of the above in the slightest.  Plaintiff tries to obscure the distinction between the OTS and OCC preemption regulations so as to make it appear that the Court's prior preemption rulings apply with equal force here, but her arguments, to be blunt, ignore the law and, indeed, this Court's *Omnibus Opinion*.  There, as pointed out by Sovereign in its Opening Brief, at 11, the Court took pains to note, with respect to national banks regulated by the OCC, that "federal regulation in this field is not so pervasive that we can reasonably infer that Congress left no room for the states to supplement it."  694 F. Supp. 2d at 1313.  The clear import of this Court's statement is that, had it been considering field preemption, as it is here, it would have reached a different result.  Plaintiff never addresses this point in her opposition brief because there is no response to be made.

Plaintiff's claims fare no better under Maryland law, and this Reply will briefly respond to Plaintiff's state law arguments, but they need not be reached at all because, as shown below, Plaintiff's own legal authorities compel preemption.

II.     **ARGUMENT**

    A.     **Plaintiff's Claims Are Field Preempted**

        1.     **Plaintiff's Half-Hearted Attempt To Question Whether OTS Preemption Governs In Light Of Dodd-Frank Is Frivolous**

Plaintiff tries to cast doubt on whether, in light of Dodd-Frank, the Account Agreement is governed by the OTS regulations.  She goes so far as to say that "[w]hile Sovereign claims that the Dodd-Frank Act contains a provision that provides that the bank maintains its OTS supervision, this is far from certain."  (Pl. Opp. Br. at 3-4.)  This statement,

unadorned by any reasoning or supporting authority, is frivolous. In a passage quoted in Sovereign's Opening Brief at 6 n.5, Dodd-Frank expressly provides that OTS regulations apply to any contract predating Dodd-Frank's enactment. 12 U.S.C. § 5553. There is no dispute that the Account Agreement predates Dodd-Frank's enactment. Thus, this matter is settled, with certainty, based on the plain meaning of the statute.

### 2. OTS Field Preemption Is Not The Same As OCC Conflict Preemption

As stated in the governing regulation, which Plaintiff does not dispute is accorded the force of statute, the OTS "occupies the entire field of federal savings associations' deposit-related regulations." 12 C.F.R. § 557.11(b). The OTS's deposit-related regulations preempt "state laws that purport to impose requirements" regarding, among other things, "Checking accounts," "Disclosure requirements," and "Service charges and fees." *Id.* § 557.12. Plaintiff's claims, which attack how Sovereign processes checking account withdrawals and provides or not provide overdraft opt-out procedures, how it discloses its practices, and how many overdraft fees it charges (CAC ¶¶ 37-45, 50-52), fall squarely within all of these categories listed in § 557.12 and are thus preempted.

Plaintiff responds by trying to paint the OTS preemption analysis as being "[s]ubstantially the [s]ame" (Pl. Opp. Br. at 4) as the OCC conflict preemption analysis, hoping that the Court will reject Sovereign's preemption argument as a "mere variation on a failed theme." (*Id.* at 1.) They are not the same. Sovereign will not repeat its Opening Brief's discussion of the critical differences; rather, at the outset Sovereign observes only that the differences between conflict and field preemption are well-settled and, indeed, have been taught in law schools for decades. It cannot be seriously asserted that conflict and field preemption are the same. Plaintiff's method of dealing with the concept of field preemption is to hide her head in the sand – indeed, the word "field" does not appear even once in her brief.

What some of the cases cited in Plaintiff's brief do say is that the result in the particular case would have been the same regardless of whether OCC or OTS preemption applied. ***But in every case cited by Plaintiff for the proposition that preemption would be the same***, ***the Court found preemption.*** See *Parmer v. Wachovia*, 2011 WL 1807218, at *1 & n.1 (N.D. Cal. Apr. 22, 2011) (holding that "[e]ach of plaintiff's state law claims [relating to loan practices] is preempted by the Home Owner's Loan Act" and further noting that, if defendant's successor (a national bank) were instead subject to the claims, the result would be the same);

*DeCohen v. Abbasi, LLC*, 2011 WL 3438625, at *6 n.13 (D. Md. Jul. 26, 2011) (holding that claims regarding the financing of insurance were preempted under the OCC's national bank preemption regulation and noting in *dictum* that the same result would obtain under the OTS's regulation); *Larin v. Bank of America, N.A.*, 725 F. Supp. 2d 1212, 1216-18 (2010) (declining to follow this Court's *Omnibus Opinion* and instead dismissing claims as preempted); *SPGGC, LLC v. Ayotte*, 443 F. Supp. 2d 197, 208 (D.N.H. 2006) (holding that challenges to gift card practices conducted by both a national bank and federal thrift were preempted).[1]

In furtherance of her efforts to obfuscate the difference between OCC and OTS preemption, Plaintiff's comparison of the text of the respective regulations (Pl. Opp. Br. at 4-5 (quoting 12 C.F.R. § 7.4007(b)(2) (OCC) and 12 C.F.R. § 557.13 (OTS))) omits a critical component of the OTS regulation. In promulgating its regulation the OTS issued a field preemption rule providing that if the practice complained of is described in the categories delineated in 12 C.F.R. § 557.12 – including "Checking accounts," "Disclosure requirements," and "Service charges and fees" – then there is *no* inquiry into whether the state law would more-than-incidentally interfere with the bank's activities, as there would be for an OCC preemption analysis, s*ee Omnibus Opinion*, 694 F. Supp. 2d at 1313-14. The OTS could not have stated this rule more clearly:

> To determine whether a state law is preempted, the first step is to ascertain whether the law in question is of the type listed in § 557.12 as an example of preempted law. ***If it is, the analysis ends there; the law is preempted***.

62 Fed. Reg. 54762 (Oct. 22, 1997) (emphasis added).

---

[1] It does nothing for Plaintiff's argument to show that in certain cases preemption would be found under either a field or conflict analysis – indeed, in its Opening Brief, at 4 n.4 and 8, Sovereign noted that it believes preemption would also be appropriate under OCC conflict preemption but that OTS field preemption removes any doubt. The significance of Plaintiff's inability to cite to a single case in which a court stating that OCC and OTS preemption are similar did ***not*** find preemption, then, while not what Plaintiff would prefer, is simple yet powerful. If this Court were to follow Plaintiff's cases and reasoning, it would revisit its earlier rulings against national bank preemption and find claims against national banks preempted, because it would find that the OCC's conflict preemption compelled the same result. Sovereign emphasizes that it is not the point of this motion to have the Court revisit its prior rulings, but the Court should be aware that such would be the proper result ***if it were to follow Plaintiff's authorities***.

3

In its Opening Brief, Sovereign cited several cases to illustrate the application of the OTS rule precluding a conflict-preemption inquiry where the practice complained of was within the scope of section § 557.12. (*See* Opening Br. at 8-11.) Plaintiff's response is to characterize these cases as the "Ninth Circuit's framework" and to suggest that this framework is so off-kilter that it has been "implicitly rejected," even by district courts within the Circuit. (Pl. Opp. at 6 (citing *Valverde v. Wells Fargo Bank, N.A.*, 2011 WL 3740836, at *5 (N.D. Cal. Aug. 25, 2011).) This statement is simply outlandish. *First*, the "Ninth Circuit framework" is nothing other than the faithful adherence to the OTS regulation, including the above-quoted promulgating rule found at 62 Fed. Reg. 54762, which in plain English says what the Ninth Circuit says it says. Any court that would ignore the plain language of the regulation is simply not adhering to it. *Second*, a district court in the Ninth Circuit cannot "implicitly reject" a Ninth Circuit decision. *Third*, the *Valverde* decision not only did not seek to "implicitly reject" the appellate authority that binds it, but it dismissed the claims there in large measure based on preemption. *See Valverde*, 2011 WL 3740836 at * 5 (noting that "several of Plaintiff's claims are extremely susceptible to HOLA preemption" and that, "given HOLA's wide preemptive effect, Plaintiff has failed to plead sufficient facts to render any of his claims plausible").

Plaintiff cites *In re Ocwen Loan Servicing, LLC Mortgage Servicing Litigation*, 491 F.3d 638 (7th Cir. 2007), as rejecting the "Ninth Circuit framework," *i.e.*, that if the activity in question is listed in § 557.12 then the inquiry ends there. (*See* Pl. Opp. Br. at 6.) Judge Posner's opinion is somewhat cryptic on this point, but two things are clear. First, as discussed above, the "Ninth Circuit framework" is simply the framework promulgated by the OTS, and no Court will simply overturn a regulation (that has the force of statute) without expressly saying so and articulating reasons (*e.g.*, failure to follow administrative procedures). Nothing of the sort appears in *Ocwen*. Second, as discussed *infra* at 7-8, *Ocwen* makes clear that the very types of claims asserted in this lawsuit ***are preempted***.

At this point it is well worth pointing out Plaintiff's stark silence on Judge Alsup's statement on OTS preemption in *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550 at *12 (N.D. Cal. Sep. 11, 2008). Sovereign quoted *Gutierrez* in its Opening Brief for the proposition that "application of a more narrow preemption analysis is more appropriate" for OCC than for OTS preemption, "where the OTS had specifically defined a proper preemption test to be employed." (*See* Opening Br. at 8-9.) The unmistakable implication is that plaintiff's

4

claims in *Gutierrez* would have been preempted had the defendant there been an OTS-chartered bank. In light of the fact that plaintiffs in this MDL have never been shy about citing *Gutierrez*, including on the preemption issue, it is, at the least, ironic that Plaintiff cannot think of one thing to say about Judge Alsup's statement regarding HOLA/OTS preemption.

While Judge Alsup did consider OTS preemption, if only to distinguish it from the OCC preemption at issue in *Gutierrez*, this Court has never opined on OTS preemption, in a vacuum or in distinction to OTS preemption. Thus, Plaintiff's statement that "[o]ther jurisdictions, *including this Court*, have rejected the Ninth Circuit's framework for preemption" (Pl. Opp. Br. at 6) (emphasis in original), is flatly wrong. By contrast, and as noted above, this Court did point out that *OCC* preemption is not field preemption, which clearly implies that had field preemption been at issue a different analysis would have been conducted and a different result reached.

### 3. Laws of General Application Are Preempted Under HOLA/OTS Preemption, And Plaintiff's Assertion To The Contrary Is Contradicted By Her Own Cases

Plaintiff's argument captioned "Laws of General Application Are Not Preempted Under HOLA" (Pl. Opp. Br. at 5-8), is contradicted by the very authorities she cites in support. In fact, if one does nothing but adhere to the cases Plaintiff cites, there is only one result: preemption.[2]

In almost all the cases cited by Plaintiff throughout her brief, plaintiffs asserted claims of good faith and fair dealing, unjust enrichment, restitution, violation of a consumer protection statute, and the like – all laws of general application – and, as discussed above, such claims were preempted. Indeed, in one case cited by Plaintiff for the proposition that laws of general application are not preempted, *Amaral v. Wachovia Mortgage Corp* (cited at Pl. Opp. Br. at 6), the court held exactly the opposite:

> The Ninth Circuit drew no distinction between a law of general applicability and one specifically designed to regulate savings

---

[2] Moreover, as pointed out in Sovereign's Opening Brief with no response from Plaintiff, the OTS explicitly spelled out that "[s]tate law includes any statute, regulation, ruling, order, or judicial decision," 12 C.F.R. § 557.11, thereby making clear that preemption is by no means restricted to laws of specific application to banking activities. (*See* Opening Br. at 7-8.)

5

>associations. Thus, state court decisions cited by Ms. Munoz, to the extent they hold a law of general applicability cannot be preempted by HOLA, are in conflict with this recent decision of the Ninth Circuit.

2010 WL 2673766, at *11 (E.D. Cal. Jul. 2, 2010) (quoting *Munoz v. Fin. Freedom Senior Funding Corp.*, 567 F. Supp. 2d 1156, 1162-63 (C.D. Cal. 2008)). Remarkably, Plaintiff's citation to *Amaral* gets even worse. The quotation recited in Plaintiff's parenthetical on *Amaral* is taken from the *Amaral* court's quotation of *Ocwen, supra*. Plaintiff's failure to cite *Amaral* correctly, *i.e.,* (quoting *Ocwen* …), would not be particularly noteworthy except for the fact that, after quoting from *Ocwen*, the *Amaral* court **rejects** that case as not being in accord with the correct framework for analyzing OTS preemption. *See Amaral*, 2010 WL 2673766 at *13.

Other of Plaintiff's own cases that directly undermine her position include *Taguinod v. World Savings Bank, FSB*, 755 F. Supp. 2d 1064, 1072, 1074 (C.D. Cal. 2010) (stating that "HOLA preempts ***any state law claim relating to good faith and fair dealing*** in lending" and that allegations of a "consistent pattern and practice of unlawful corporate behavior" brought under the general-application Unfair Competition law were also "likely preempted by HOLA" (emphasis added)); *Dixon v. Wells Fargo Bank, N.A.*, 798 F. Supp. 2d 336 (D. Mass. 2011) (observing that "courts must be wary of artfully pleaded attempts to use common-law claims as a clandestine way of imposing requirements on lenders that states otherwise could not enact through legislation or regulation"); *Parmer*, 2011 WL 1807218 at *1 (holding that, because plaintiff's allegations related to matters described by OTS preemption regulations, claims for fraud, unfair business practices and promissory estoppel were preempted); *Valverde*, 2011 WL 3740836 at * 5 (holding claims for negligence, negligent misrepresentation, negligent infliction of emotional distress, and breach of duty of good faith to be preempted).

In short, even if the regulation itself did not make clear that laws of general application are subject to preemption, Plaintiff's own reliance on so many cases that preempt laws and common law causes of action of general application is dispositive. Indeed, when Plaintiff closes her preemption section by reciting her common law and statutory consumer protection claims, noting that "[e]ach and every one of these laws is a law of general application" that apply "to all businesses, not just to banks," and concludes that "[t]herefore, none conflicts with HOLA and Sovereign's preemption argument fails" (Pl. Opp. Br. at 8), one wonders whether Plaintiff has actually read the very decisions she cites to this Court.

6

### 4. Only Straightforward Breach Of Contract Or Fraud Claims That Do Not Bear On A Bank's Practices Are Not Preempted

Plaintiff cites *Ocwen* for the notion that the "OTS's assertion of plenary regulatory authority does not deprive persons harmed by the wrongful acts of savings and loan associations to their basic state common-law type remedies." (Pl. Opp. Br. at 6 (quoting 491 F.3d. at 643-44).) And in a few of Plaintiff's cases, such as *Dixon, Valverde,* and *Fletcher v. OneWest Bank, FSB*, 798 F. Supp.2d 925, 931 (N.D. Ill. 2011), certain claims are found not to be preempted. But those few instances actually reinforce Sovereign's argument, because they hold that, while a plaintiff may assert a basic breach of contract claim for a bank's failure to abide by an express promise, or a fraud claim for a misrepresentation of specific facts, ***such common law claims may not be dressed up to challenge the bank's practices***, which is exactly what Plaintiff does here by attacking, among others, high-to-low posting order and opt-out practices. Thus, in *Ocwen*, the Seventh Circuit distinguished between a claim that the lender inflated the price of insurance (preempted), versus a hypothetical claim that the lender charged more for the insurance than the price specified in the contract (not preempted). 491 F.3d at 647. It likewise held that claims under state consumer protection statutes for "excessive" fees, "unreasonable" fees, "predatory" charges, and failing to provide borrowers with more specific disclosures ***were preempted***. *Id.*

In *Fletcher*, plaintiff's claims based upon a straightforward failure to abide by an agreement the lender entered into with a distressed borrower were found not to be preempted, whereas "any claims contesting the guidelines OneWest follows …, the fees OneWest charges, and the disclosures OneWest was required to make" *were* preempted. 798 F. Supp. 2d at 933. And in perhaps the clearest illustration of this principle, in *Taguinod* the court was willing to entertain a straightforward breach of contract claim based on an oral promise, but found the good faith and fair dealing claim to be clearly preempted. *See* 755 F. Supp. 2d at 1072 ("HOLA preempts any state law claim relating to good faith and fair dealing in lending."). Likewise, it found no preemption as to a fraud claim alleging an alteration to contract documents, but found claims alleging a kick-back scheme to inflate profits to be preempted. *See id.* at 1070.

The cases cited ***in Plaintiff's brief*** so strongly support Sovereign's position that it is easy to forget that, in its Opening Brief, Sovereign presented its own abundance of authority that compels preemption (authority that actually supports Sovereign's position). In any event, under either set of authorities, the application of the foregoing principles to this case is

7

straightforward. This lawsuit is not about, for example, Plaintiff calling up Sovereign, Sovereign agreeing to refund certain fees and then breaching that specific agreement. Far from it. This lawsuit is a direct, frontal assault on Sovereign's order-of-posting practices, its overdraft opt-out practices, its overdraft fees and its disclosures about those fees. That cannot be seriously disputed, so Sovereign will note but one vivid illustration. In opposing dismissal of the unconscionability count for failure to state a claim, Plaintiff seeks to establish unconscionability through "the disparity between the cost and the value of the service rendered on one hand, and, on the other, its price." (Pl. Opp. Br. at 16.) Yet in the Seventh Circuit case that ***Plaintiff touts***, *Ocwen,* the court held:

> The thirteenth claim [under New Mexico's Unfair Trade Practices Act] … goes on to charge "a gross disparity between the value received … and the price paid," ***a charge that clearly is preempted***.

491 F.3d at 647 (emphasis added). In sum, Plaintiff's own brief makes manifest that her claims are preempted.

### B. Plaintiff's Claims Fail Under Maryland Law

#### 1. Plaintiff Cannot Effectively Negate *Hassler*

Plaintiff argues at length that the appellate decision in *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509 (D.N.J. 2009), *aff'd* 374 F. App'x 341 (3d Cir. 2010), is non-binding. (Pl. Opp. Br. at 8-13) That misses the point. No court of appeals decision is binding on a district court outside of the circuit. A court looks to decisions outside the circuit for their persuasive value. Here, both a district court judge, who issued a thorough published decision, and the Third Circuit, which issued a likewise thorough (albeit non-precedential) decision, found the Sovereign disclosures to be so clear as to defeat all state law claims. Those opinions are highly persuasive.

#### 2. Breach of the Covenant of Good Faith and Fair Dealing

As Plaintiff concedes, Maryland law does not recognize a claim for breach of the covenant of good faith and fair dealing (Pl. Opp. Br. at 13), but Plaintiff nonetheless argues that her allegations of bad faith can be recast to support a breach of contract claim if necessary. (*Id.*)

This transmogrification cannot be accomplished. What Plaintiff fails to acknowledge, but does not refute, is that Maryland law does not recognize any "duty requiring affirmative steps beyond those required by the contract itself." *Mount Vernon Properties, LLC v. Branch Banking & Trust Co.*, 907 A.2d 373, 381 (Md. App. 2006). Thus, Plaintiff's allegations

8

of Sovereign's inaction do not state a breach of contract claim against Sovereign, since they do not implicate an affirmative contractual duty. Nor do Plaintiff's allegations of Sovereign's actions state a contract claim because they describe Sovereign acting in accordance with the contract insofar as the posting order is concerned. Plaintiff refers in her brief to debit holds and alleged improper overdrafts caused thereby, but the Complaint provides no specific examples of harm caused by debit holds. Accordingly, Plaintiff's breach of contract/good faith claim fails.

### 3. Unconscionability

Plaintiff does not contest that she must show that to be unconscionable a contractual term must be both procedurally and substantively so. Plaintiff fails to show either.

Plaintiff argues that Account Agreement's overdraft provisions were procedurally unconscionable because it was an adhesion contract, offered by a party with vastly superior bargaining power, with the overdraft provisions inconspicuously placed among dozens of pages. (Pl. Opp. Br. at 15-16.) This argument does not comport with Maryland law or the Account Agreement. Indeed, Plaintiff must resort to citing cases only from other jurisdictions. But *Maryland* courts have held that mere disparity between the parties or the presence of an adhesion contract do not suffice to show unconscionability. *See Freedman v. Comcast Corp.*, 988 A.2d 68, 85-86 (Md. App. 2010). Moreover, while Maryland law does recognize that terms hidden in "fine print" or presented in "convoluted or unclear language" may militate towards a finding of procedural unconscionability, *id.* at 85, the Account Agreement provisions at issue were plain and in bold print with descriptive headings. That is why the *Hassler* district court stated: "it would be difficult for Sovereign to have disclosed its practice[s] . . . in clearer or more understandable terms." 644 F. Supp. 2d at 515. As to substantive unconscionability, Plaintiff does not respond to the arguments in Sovereign's Opening Brief but, as shown above, instead reinforces that her claims are preempted.

### 4. Unjust Enrichment

As Sovereign noted in its Opening Brief, unjust enrichment claims under Maryland law cannot "arise when a contract exists between the parties concerning the same subject matter." *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 607 (Md. 2000).

Plaintiff argues that "the mere existence of a contract does not preclude an unjust enrichment claim that is based on conduct that is not covered by the express terms of the

9

contract." (Pl. Opp. Br. at 17 (citing *Janusz v. Gillam*, 947 A.2d 560 (Md. 2008).) However, the conduct alleged in the CAC that she cites as being beyond the express terms of the contract – posting transactions, charging overdraft fees and making disclosures– falls squarely within its subject matter. The unjust enrichment claim must be dismissed.

### 5. Conversion

Plaintiff argues that an account holder has a right to funds in the account and that a conversion claim lies where the right to those funds has been wrongfully denied. (Pl. Opp. Br. at 18.) But the decision of the Maryland Court of Appeals (the state's highest appellate court) cited by Plaintiff applies that concept only to non-commingled, segregated funds; otherwise, "monies are intangible and, therefore, not subject to a claim for conversion." *Allied Inv. Corp. v. Jaren*, 731 A.2d 957, 966 (Md. 1999). Each customer's checking account funds are not segregated into separate "lockboxes"; they become part of the general liabilities that the bank owes its depositors. *See Gutierrez*, 622 F. Supp. 2d at 956. This claim fails.

### 6. Violation of the MCPA

As Sovereign explained in its Opening Brief, violation of the MCPA requires some type of false or misleading representation. *See* MD. CODE ANN., COM. LAW § 13-301 (proscribing several forms of false or misleading representation); *Phillip Morris Inc. v. Angeletti*, 752 A.2d 200, 234 (Md. 2000) (finding Plaintiff's MCPA claims unsuitable for class treatment because of the statute's requirements of reliance upon misrepresentations or material omissions).

Here, Sovereign's Account Agreement was "not misleading or deceptive in any way." *Hassler*, 644 F. Supp. 2d at 515 (internal quotation marks omitted). Thus, there is no deception upon which to base the MCPA claim, and it fails.

## III. CONCLUSION

For the foregoing reasons, Sovereign respectfully requests that the Court dismiss the Consolidated Amended Complaint, with prejudice.

               */s/  Darryl J. May*
               Alan S. Kaplinsky
               kaplinsky@ballardspahr.com
               Darryl J. May
               may@ballardspahr.com
               Nathan W. Catchpole
               catchpolen@ballardspahr.com
               BALLARD SPAHR LLP
               1735 Market Street, 51st Floor
               Philadelphia, PA 19103
               Tel.:  (215) 665-8500
               Fax:  (215) 864-8999

               *Attorneys for Defendant Sovereign Bank*

Dated: January 10, 2012

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT  LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Lewis v. Sovereign Bank*
S.D. FL Case No. 1:11-cv-22022-JLK

I hereby certify that on January 10, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and that it is being served this day on counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/  Darryl J. May
Darryl J. May
may@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Tel.:  (215) 665-8500
Fax:  (215) 864-8999

*Attorneys for Defendant Sovereign Bank*

DMEAST #14411045 v3