UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION

*Stillion, et al. v. United Bank, Inc. and United Bankshares, Inc.*,
S.D. Fla. Case No. 11-cv-21472-JLK
S.D. W. Va. Case No. 11-cv-0237

**REPLY BRIEF OF UNITED BANK, INC. AND UNITED BANKSHARES, INC.
IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT**

4154571.5

# **TABLE OF CONTENTS**

Argument ..................................................................................................................................1

    I.    United Bank (WV) and UBSI have proven that at least two-thirds of the "National Class" members are West Virginia citizens. ................................1

        A.    Neither UBSI nor United Bank (WV) "operates" branches in Virginia, Maryland, or the District of Columbia, and UBSI is a West Virginia citizen.............................................................................2

            1.    The allegations set forth in the Amended Complaint precludes any effort to include United Bank (VA) or its depositors in this action............................................................3

            2.    The Stillions' assertions regarding UBSI's *operation* of bank branches is contrary to the evidence in the record. .....................................................................4

            3.    The evidence proves UBSI is a West Virginia citizen................................................................................................6

        B.    Attacks on the precedent and evidence supporting the Motion lack merit.....................................................................................7

            1.    The Declaration of William Salvatori is admissible and credible.....................................................................................7

            2.    The *Response*'s attacks ignore binding precedent. ..........................8

            3.    The Stillions' efforts to rebut the presumption of West Virginia citizenship of more than two-thirds of the members of the National Class must fail because they are based on inadmissible speculation.......................9

    II.    The remaining assertions are contrary to the facts and to applicable precedent.......................................................................................................9

        A.    Based on CAFA's express language, its underlying policies, and the fact *Jones* was filed <u>after</u> *Stillion*, the *Jones* action does not foreclose dismissal....................................9

        B.    This MDL does not make *Stillion* a matter of national interest......................................................................................10

Conclusion ............................................................................................................................10

Defendants United Bank, Inc. ("United Bank (WV)") and United Bankshares, Inc. ("UBSI") respectfully file their Reply Brief in Support of Their Motion to Dismiss for Lack of Subject Matter Jurisdiction under the Class Action Fairness Act.

Defendants' *Motion to Dismiss* proves this action should be dismissed, pursuant to the "Home State" and "Local Controversy" exceptions to the Class Action Fairness Act ("CAFA"), because it is uniquely centered in West Virginia. [DE 2162.] In particular, the *Motion to Dismiss* demonstrates a lack of CAFA jurisdiction because: (1) both defendants are West Virginia citizens; (2) more than two-thirds of the class members are West Virginia citizens; (3) the action was filed in West Virginia; and (4) no similar actions were filed in the three years preceding this action. The *Motion to Dismiss* also proves that the Court should dismiss this action pursuant to CAFA's Discretionary exception. Because the *Motion to Dismiss* proffered credible evidence proving the absence of jurisdiction, the burden of proof shifted to the Stillions. But instead of offering credible evidence, the *Response* ignores the actual facts alleged in the Amended Complaint and ignores or misrepresents the applicable legal principles and facts. Consequently, the *Motion to Dismiss* should be granted.

## ARGUMENT

Although the Home State and Local Controversy exceptions require proof of multiple elements, the *Response* only addresses two elements. In particular, the Stillions argue that CAFA's mandatory exceptions cannot apply because "(1) Defendants have not established that more than two-thirds of the class members are West Virginia citizens; and (2) another class action asserting similar factual allegations has been filed against the Defendants." [DE 2330 at 1.] To the extent the Stillions fail to offer evidence or argument with respect to the mandatory exceptions' other elements, they have conceded that these elements have been proven and they will not be addressed in this brief.

I.  **United Bank (WV) and UBSI have proven that at least two-thirds of the "National Class" members are West Virginia citizens.**

In arguing that the two-thirds prong has not been proven, the Stillions rely upon two assertions. First, they assert that United Bank (WV) and UBSI fail to prove that more than two-thirds of the Class members are West Virginia citizens because their evidence only

addresses branch offices located in West Virginia and Ohio.[1] In particular, the Stillions argue that "UBSI '*operates* one hundred and twelve (112) full service offices -- fifty-three (53) offices located throughout West Virginia, fifty-six (56) offices in the Shenandoah Valley region of Virginia and the Northern Virginia, Maryland and Washington, D.C. metropolitan area and three offices in southeastern Ohio." [DE 2330 at 3 (emphasis in original).] Second, the Stillions assert that the evidence proffered to prove the citizenship of the Class members is inadmissible, not credible, and insufficient. As demonstrated below, however, these arguments must be rejected because they are contrary to: (1) the allegations set forth in the Amended Complaint; (2) the actual evidence, including evidence they have proffered; and (3) binding legal precedent.

### A. Neither UBSI nor United Bank (WV) "operates" branches in Virginia, Maryland, or the District of Columbia, and UBSI is a West Virginia citizen.

In response to evidence that more than two-thirds of the Class members are West Virginia citizens because United Bank (WV) only maintains branches in West Virginia and Ohio, the Stillions allege that the Class members' citizenship must be more diverse because UBSI "operates" bank branches in Virginia, Maryland, and the District of Columbia. To support this assertion, the Stillions rely upon the following quote from UBSI's 2010 Form 10-K: "[UBSI] *operates* one hundred and twelve (112) full service offices — fifty-three (53) offices located throughout West Virginia, fifty-six (56) offices in the Shenandoah Valley region of Virginia and the Northern Virginia, Maryland and Washington, D.C. metropolitan area and three offices in southeastern Ohio." [DE 2330 at 3 (emphasis in original).] Similarly, the Stillions quote the following statement from UBSI's website: "United Bankshares, Inc., with dual headquarters in Washington, DC and Charleston, WV is a bank holding company with full service banking offices in West Virginia, Virginia, Washington, DC, Maryland, Ohio and Pennsylvania. . . ." [DE 2330 at 4.]

Any assertion, however, that UBSI operates bank branches — in Virginia, Maryland, the District of Columbia, or anywhere else — is contrary to the evidence in the record. As explained below, the evidence proves UBSI is not a bank, but rather a bank holding company that owned two banking subsidiaries when *Stillion* was filed. Although both subsidiaries are known as United Bank, each subsidiary operates in distinct markets, as distinct

---

[1] The evidence offered in support of the *Motion to Dismiss* addressed only bank branches in West Virginia and Ohio because United Bank (WV) only maintains branches in these states and because United Bank (WV) is the only bank named as a defendant in this action.

corporations, and under separate banking charters.  *See also infra* note 3.  The first subsidiary is the West Virginia corporation, named as a defendant, that is referred to as "United Bank (WV)."  The second subsidiary is a Virginia corporation, based in Fairfax, Virginia, that is referred to as "United Bank (VA)."  Importantly, the Stillions only maintained a contractual deposit relationship with United Bank (WV) and they have never alleged or argued otherwise.

### 1. The allegations set forth in the Amended Complaint precludes any effort to include United Bank (VA) or its depositors in this action.

Although evidence extrinsic to the four corners of a complaint can be offered in support of, or in opposition to, a jurisdictional motion to dismiss, fairness and commonsense dictate that any extrinsic evidence must be tethered to — or at least consistent with — the facts alleged in the complaint.  Here, the Amended Complaint names only two defendants.  With respect to UBSI, the Amended Complaint alleges that UBSI "is a bank holding company headquartered in Charleston, West Virginia."  [DE 2031 ¶ 15.]  It alleges United Bank (WV) "is an entity incorporated under the laws of West Virginia, with a principal place of business located at 514 Market Street, Parkersburg, West Virginia  26101."  [DE 2031 ¶ 14.]  Despite these facts, and despite the fact that UBSI's ownership of United Bank (VA) is a matter of public knowledge, the Stillions never mentioned United Bank (VA) **until** their *Response* to the *Motion to Dismiss*.  As a result, neither the original Complaint nor the Amended Complaint provided either United Bank (WV) or UBSI with reasonable notice that the Stillions were pursuing their claims on behalf of persons owning United Bank (VA) checking accounts.

Moreover, at the time the original Complaint was filed, United Bank (WV)'s review of its records indicated that the Stillions were the owners of a United Bank (WV) checking account.  On the other hand, neither United Bank (VA) nor UBSI have located any evidence that either of the Stillions ever maintained a checking account with United Bank (VA); nor have the Stillions ever alleged an account relationship with United Bank (VA).  Significantly, the four claims alleged on behalf of a "National Class" are:  (1) breach of contract; (2) unconscionability; (3) conversion; and (4) unjust enrichment.  [DE 2031 at 21-25.]  In general, and as pled by the Stillions, these claims are based upon a **contractual** deposit relationship.  Critically, however, given that the Stillions never maintained a United Bank (VA) checking account, they lack standing to assert contractual and quasi-contractual claims individually or as class representatives.  In sum, the Stillions should be estopped from asserting facts inconsistent with the allegations and legal claims set forth in their Amended Complaint.

3

> 2. **The Stillions' assertions regarding UBSI's *operation* of bank branches is contrary to the evidence in the record.**
>> a. **Evidence proffered by the Stillions demonstrates that UBSI does not operate bank branches and that United Bank (WV) and United Bank (VA) are separate and distinct entities.**

Significantly, the introductory paragraphs of the Form 10-K relied upon by the Stillions identifies clearly the nature of UBSI's business. In relevant part, the Form 10-K states:

> **Item 1. BUSINESS**
>
> <u>Organizational History and Subsidiaries</u>
>
> United Bankshares, Inc. (United) is a West Virginia corporation registered as a bank holding company pursuant to the Bank Holding Company Act of 1956, as amended. . . . As of December 31, 2010, United has two banking subsidiaries (the Banking Subsidiaries) doing business under the name of United Bank, one operating under the laws of West Virginia referred to as United Bank (WV) and the other operating under the laws of Virginia referred to as United Bank (VA). ***United's Banking Subsidiaries offer a full range of commercial and retail banking services and products*** . . . .
>
> * * *
>
> <u>Business of United</u>
>
> As a bank holding company registered under the Bank Holding Company of 1956, as amended, United's present business is community banking. . . .
>
> United is permitted to acquire other banks and bank holding companies, as well as thrift institutions. United is also permitted to engage in certain non-banking activities which are closely related to banking under the provisions of the Bank Holding Company Act and the Federal Reserve Board's Regulation Y. . . .
>
> <u>Business of Banking Subsidiaries</u>
>
> United, ***through its subsidiaries***, engages primarily in community banking and offers most banking products and services . . .
>
> The Banking Subsidiaries each maintain a trust department . . . . United Bank (WV) provides services to its correspondent banks such as check clearing, safekeeping and the buying and selling of federal funds.
>
> * * *
>
> United Bank (WV) is a member of a network of automated teller machines known as the STAR ATM network while United Bank (VA) participates in the MOST network. . . .

4

>United ***through its Banking Subsidiaries*** offers an Internet banking service . . .

[DE 2330-1 at 7-8 (bold and italics added).] These excerpts establish several critical facts regarding UBSI and its "business."

First, it is clear that the "business of" UBSI is limited to that of a registered bank holding company, which means that UBSI can only engage in those business activities authorized by the Bank Holding Company Act.[2] Second, these excerpts demonstrate, repeatedly, that any banking activities are conducted "through" UBSI's "banking subsidiaries."[3] Third, the Form 10-K notes that UBSI's banking subsidiaries generally provide services independent of each other, including the fact that United Bank (WV) and United Bank (VA) sometimes diverge in the way they service their depositors, including through the use of different ATM networks. Moreover, with respect to the separateness of United Bank (WV) and United Bank (VA), the arguments and other exhibits offered by the Stillions further indicate the existence of two distinct banks. For example, the websites identified in the *Response* clearly distinguish between United Bank (WV) and United Bank (VA).[4]

With respect to the text quoted in the *Response* for the proposition that UBSI "operates" 112 bank branches in Virginia, Maryland, and the District of Columbia, the actual

---

[2] Similarly, a FDIC report appended to the Stillions' *Response* demonstrates UBSI's status as a bank holding company and that United Bank (WV) and United Bank (VA) are separate banks. DE 2330-1 at 27. Indeed, the FDIC report discloses that United Bank (WV) is based in Parkersburg, West Virginia, that United Bank (VA) is based in Fairfax, Virginia, and that both banks have different FDIC certificate numbers. *Id.*

[3] The Form 10-K makes clear that UBSI's profitability does not depend so much on its own efforts but on the efforts of its wholly-owned banking subsidiaries: "[UBSI's] principal source of funds to pay dividends on its common stock is cash dividends from its subsidiaries. The payment of these dividends by its subsidiaries is also restricted by federal and state banking laws and regulations." DE 2330-1 at 13.

[4] *See* DE 2330 at 4 ("United Bank -- WV includes 53 West Virginia branches and three Belmont County, Ohio branches. *See* http://www.unitedbank-wv.com/. United Bank -- VA includes 42 Virginia branches, eight Maryland branches, and six D.C. branches. *See* http://www.unitedbank-dcmetro.com."). The "standard overdraft protection" website pages appended to the *Response* further evidence the separateness of United Bank (WV) and United Bank (VA) to the extent the documents indicate: subtle but noticeable differences in website layout; different customer service telephone numbers; differing fee amounts; and different website URLs. DE 2330-1 at 35-38.

5

language, viewed in its proper context, reveals that it has little to do with the business of banking. The quoted text is taken from the following section of UBSI's Form 10-K:

> **ITEM 2. PROPERTIES**
>
> [UBSI] is headquartered in the United Center at 500 Virginia Street, East, Charleston, West Virginia. [UBSI's] executive offices are located in Parkersburg, West Virginia at Fifth and Avery Streets. [UBSI] operates one hundred and twelve (112) full services offices — fifty-three (53) offices located throughout West Virginia, fifty-six (56) offices in . . . Virginia, Maryland and Washington, D.C. metropolitan area and three (3) in southeastern Ohio. [UBSI] owns all of its West Virginia facilities except for . . . [UBSI] leases an operations center facility in the Charleston, West Virginia area.

[DE 2330-1 at 14.] Thus, the term "operates" is found in that part of the Form 10-K that discloses real properties owned or leased by UBSI or its subsidiaries.

      **b. Evidence proffered by United Bank (WV) and by UBSI demonstrates that UBSI does not operate bank branches.**

   Although the *Response* addresses the Declaration of William Salvatori submitted in support of the *Motion to Dismiss*, it fails to address the separate Declaration of Joe L. Wilson. [*See* DE 2162-2.] Mr. Wilson noted that: "Although United Bankshares, Inc. is registered as a bank holding company under the U.S. Bank Holding Company Act of 1956, as amended, it is not a bank. In particular, United Bankshares, Inc. does not offer banking products and services to members of the public. . . ." [DE 2162-2 at 2-3.] Mr. Wilson also noted that he could "find no evidence that United Bankshares, Inc. has ever been a party to any contractual relationship with the Plaintiffs." [DE 2162-2 at 3.] Significantly, the *Response* offered no evidence that would rebut Mr. Wilson's statements.

      **3. The evidence proves UBSI is a West Virginia citizen.**

   In an apparent effort to detract from the West Virginia locus of UBSI and of this action, the Stillions note that UBSI's public website states that it has "dual headquarters in Washington, DC and Charleston, WV . . ." [DE at 2330 at 4.] Whatever the meaning of "dual headquarters" in the context of an advertising or informational website, however, the binding precedent of the U.S. Supreme Court holds that a corporation's principal place of business determines its citizenship. *Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). Under the test recently prescribed by the Supreme Court, a corporation's principal place of business is the place

4154571.5

where the corporation's officers "direct, control, and coordinate the corporation's activities." *See id.* at 1192 ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities"). As noted in the Wilson Declaration, UBSI's CEO, CFO, and other key executive officers manage the day-to-day affairs of UBSI from Parkersburg, West Virginia. [DE 2162-2 at 2.]

    **B.**    **Attacks on the precedent and evidence supporting the Motion lack merit.**

The Stillions generally assert that the evidence proffered by United Bank (WV) and UBSI to prove the citizenship of the National Class members is inadmissible, not credible, and insufficient. As explained below, the evidence proffered by United Bank (WV) and UBSI is admissible and credible. Moreover, the legal principles relied upon by United Bank (WV) and UBSI are grounded in well-established precedent.

    **1.**    **The Declaration of William Salvatori is admissible and credible.**

The Stillions incorrectly assert that the Declaration of William Salvatori [DE 2162-1] "is hearsay and offers only unsupported legal conclusions of residency, which Defendants have incorrectly equated with domicile (and therefore with citizenship)." [DE 2330 at 9-10.] Significantly, the use of affidavits and declarations in support of jurisdictional motions to dismiss is well-established in the federal courts.[5] With respect to the substance of Mr. Salvatori's Declaration, he indicated that his estimates of residence are based upon his "review of records regularly and routinely created and maintained in the regular course of" United Bank's business. [DE 2162-1 at ¶ 4.] Significantly, in cases involving comparable evidence, challenges similar to those made here have been rejected.[6] Although these cases were cited in the *Motion to Dismiss*, the *Response* simply **ignores** them.

Lastly, any suggestion that Mr. Salvatori's Declaration should be rejected because it pertains to residence, as opposed to citizenship, should be rejected. Significantly, United Bank (WV) and UBSI do not rely upon Mr. Salvatori's Declaration to prove — standing alone — that

---

[5] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("A motion to dismiss under Rule 12(b)(1) may assert . . . a factual attack . . . A factual attack challenges 'the existence of subject matter jurisdiction in fact . . . matters outside the pleadings, such as testimony and affidavits, are considered.'").

[6] *Anirudh v. Citimortgage, Inc.*, 598 F. Supp. 2d 448, 452 (S.D.N.Y. 2009) (rejecting claim court "should discredit … calculations because his affidavit 'contains no factual or documentary support for his conclusions'").

7

more than two-thirds of the National Class members are West Virginia citizens. Rather, Mr. Salvatori's Declaration is evidence of a significant fact that is pertinent to the Class members' citizenship and, as explained below, evidence of residence is presumptive of domicile.

### 2. The *Response*'s attacks ignore binding precedent.

Rather than distinguishing, or even addressing, the case law cited in the *Motion to Dismiss* [DE 2162 at 10-16], the *Response* either **ignores** binding Eleventh Circuit precedent or it relies on misleading representations of precedent issued by other courts. With respect to domicile, the *Response* fails to acknowledge that in *Stine v. Moore*, the old Fifth Circuit held that "[r]esidence alone is not the equivalent of citizenship, although the place of residence is prima facie the domicile . . ." 213 F.2d 446, 448 (5th Cir. 1954). Significantly, United Bank (WV) and UBSI are unaware of any decisions issued by the Eleventh Circuit since its creation that repudiate the binding precedent created by the old Fifth Circuit in *Stine*. Rather than address this aspect of *Stine*, the *Response* simply ignores it. The *Response* also ignores the existence of very well-established case law issued by the U.S. Supreme Court — which was also cited in the *Motion to Dismiss* — that is identical to the precedent established in *Stine*. *See, e.g., Dist. of Columbia v. Murphy*, 314 U.S. 441, 455 (1941) ("The place where a man lives is properly taken to be his domicile until facts adduced establish the contrary.").

Similarly, the *Response*'s attacks on the evidence proffered in support of the *Motion to Dismiss* ignores the critical fact that Congress intended for a flexible standard to apply to determinations of jurisdiction under CAFA. Based upon CAFA's legislative history, the Fifth Circuit recently noted that "[j]urisdictional determinations 'should be made largely on the basis of **readily available information**.'" *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (emphasis added). Indeed, the *Hollinger* court later noted that "[t]he evidentiary standard for establishing citizenship and domicile at this preliminary stage must be practical and reasonable." *Id.* at 572. Moreover, evidence reasonably similar to that offered in support of the *Motion to Dismiss* has been accepted by other courts in the evaluation of CAFA jurisdiction, including by the Fifth Circuit in *Hollinger*. *Id.* at 572-74; *see also Anirudh*, 598 F. Supp. 2d at 452-54; *Hirschbach v. NVE Bank*, 496 F. Supp. 2d 451, 460 (D.N.J. 2007). Despite the fact that the *Motion to Dismiss* specifically cited these cases, the *Response* makes no effort whatsoever to distinguish them or even address them. [DE 2162 at 11-12.] Similarly, the *Response* fails to acknowledge that the Eleventh Circuit — in the context of traditional diversity jurisdiction —

8

very recently noted that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010).

Finally, the *Response* relies upon *In re Sprint Nextel Corp.*, 593 F.3d 669 (7th Cir. 2010) for the proposition that "a court may not draw conclusions about the citizenship of class members based on things like their phone numbers and mailing addresses." [DE 2330 at 8.] The *Response* failed to note, however, that the district court in that case made assumptions regarding the citizenship of the class members without the benefit of any evidence regarding the class's citizenship. 593 F.3d at 671 (noting the district court "ruled that even though the plaintiffs presented no evidence . . ."). Moreover, the Seventh Circuit recognized that a challenge to subject matter jurisdiction might properly be made on the basis of sampling or statistical data. 593 F.3d at 675 ("the district court could have relied on evidence going to the citizenship of a representative sample. This evidence might have included affidavits or survey responses . . .").

### 3. The Stillions' efforts to rebut the presumption of West Virginia citizenship of more than two-thirds of the members of the National Class must fail because they are based on inadmissible speculation.

In contrast to the declarations and Census Bureau data proffered in support of the *Motion to Dismiss*, the *Response* is supported by little more than speculation regarding the ***possible*** inclusion of college students and "transient" workers who ***may*** reside in West Virginia, but remain domiciled elsewhere, and the fact that West Virginia shares borders with five other states. [DE 2330 at 10-12.] Beyond being based on speculation, most, if not all, of the Internet websites relied upon by the Stillions to support their speculation are inadmissible hearsay. In sum, the *Response* is based on little more than rank speculation backed by inadmissible hearsay.

## II. The remaining assertions are contrary to the facts and to applicable precedent.

### A. Based on CAFA's express language, its underlying policies, and the fact *Jones* was filed <u>after</u> *Stillion*, the *Jones* action does not foreclose dismissal.

In their *Response*, the Stillions assert that the pendency of the *Jones* action forecloses both the Local Controversy and Discretionary exceptions, even though *Jones* was filed **after** *Stillion*. [DE 2330 at 18.] The Stillions' assertion must be rejected for the very reasons cited in their *Response*: "Although the exception applies to class actions filed in 'the 3-year period **preceding** the filing of' a class action that is the subject of a motion to dismiss, it was intended to facilitate the consolidation or coordination of overlapping or parallel class

9

actions." [DE 2330 at 18 (emphasis added).] Here, as the Stillions acknowledge, "*Jones* was filed six days after the instant action . . ." [DE 2330 at 18.] Thus, the only possible way this element can apply here is if the Court ignores the word "preceding."[7] As acknowledged by the Eleventh Circuit, however, a court "must construe [a] statute to give effect, if possible, to every word and clause." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1204 (11th Cir. 2007).

      **B.**    **This MDL does not make *Stillion* a matter of national interest.**

In arguing that the Discretionary exception cannot apply here, the *Response* asserts that this action is of national interest because it is part of this MDL. Under loosely analogous circumstances, however, other courts have recognized that analysis of CAFA's exceptions should apply only to the particular case being considered for dismissal.[8] Consequently, the mere existence of the *Overdraft* MDL is not a factor that imports "national" relevance to the *Stillion* matter.

### CONCLUSION

For the reasons set forth above and in the *Motion to Dismiss*, this Court should find that United Bank (WV) and UBSI have proven the elements necessary to satisfy the Local Controversy and Home State exceptions to CAFA subject matter jurisdiction. Consequently, the *Motion to Dismiss* should be granted.

---

[7] Application of the "preceding" action element would also not serve CAFA's purposes because *Jones* is pending in a state court and cannot be consolidated with *Stillion*.

[8] *In re Sprint Nextel Corp.*, 593 F.3d at 673 ("the fact that this suit may be but a slice of a bigger controversy is irrelevant."); *In re Hannaford Bros. Data Sec. Litig.*, 564 F.3d 75, 78-79 (1st Cir. 2009).

10

4154571.5

Dated:  January 11, 2012

                                                Respectfully Submitted,

                                                  /s/ *Floyd E. Boone Jr.*
                                                Edward D. McDevitt
                                                Floyd E. Boone Jr.
                                                BOWLES RICE McDAVID GRAFF & LOVE LLP
                                                600 Quarrier Street
                                                Charleston, West Virginia  25301
                                                Tel:  (304) 347-1100
                                                Fax:  (304) 347-1756
                                                emcdevitt@bowlesrice.com
                                                fboone@bowlesrice.com

                                                *Counsel for Defendants*
                                                *United Bank, Inc. and United Bankshares, Inc.*

4154571.5

## CERTIFICATE OF SERVICE

I hereby certify that on January 11, 2012, the foregoing **Reply Brief of United Bank, Inc. and United Bankshares, Inc. in Support of Their Motion to Dismiss for Lack of Subject Matter Jurisdiction Under the Class Action Fairness Act** was filed and served via the Court's CM/ECF system.

       /s/ *Floyd E. Boone Jr.*
       Floyd E. Boone Jr.

4154571.5