ENTERED
CLERK, U.S. DISTRICT COURT
DEC - 9 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

FILED
CLERK, U.S DISTRICT COURT
DEC - 5 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                           DEPUTY

Priority ✓
Send ✓
Enter ✓
Closed ✓
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re BROADCOM CORP. SECURITIES LITIGATION | CASE NO. SACV 01-275 DT (MLGx)<br>(Consolidated Cases)<br><u>CLASS ACTION</u><br>ORDER **GRANTING** CLASS PLAINTIFFS' MOTION TO REQUIRE APPEAL BOND |

DOCKETED ON CM
DEC - 9 2005
BY _____ 001

## I. Background

On June 27, 2005, the Honorable Gary Taylor, who presided over this case since its filing, granted preliminary approval of a settlement reached by the parties in this securities fraud class action (the "Settlement"). Obtained on behalf of the Class by the Minnesota State Board of Investment ("Lead Plaintiff"), the Settlement culminates four years of litigation and nearly a year of mediation. On September 14, 2005, this Court entered the Final Judgment and Order of Dismissal.

THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d).

717

In accordance with the terms of the Settlement, Defendant Broadcom Corp. ("Broadcom" or "Company") had already paid $108 million into an escrow account. The remaining $42 million was deposited on September 8, 2005.

Currently before this Court is a motion by Class Plaintiffs to require Objector Rinis Travel Services, Inc., Profit Sharing Trust U.A. 6-1-1989 ("Rinis" or "Objector") to post an appeal bond in light of Rinis's appeal of this Court's Judgment.

### A. Factual Summary

The following is a brief summary of this action:

On and after March 5, 2001, 31 putative federal securities class action complaints, including <u>Minnesota State Board of Investment v. Broadcom Corporation, et. al.</u>, Case No. 01-04120 ABC (Mcx), were filed against Broadcom Corporation and certain of its then-officers and/or directors. By order dated May 31, 2001, the Honorable Gary L. Taylor consolidated these complaints under the caption <u>In re Broadcom Corporation Securities Litigation</u>, Case No. SA CV 01-275 GLT (MLGx) (the "Class Action"), appointed the Minnesota State Board of Investment as the lead plaintiff (the "Lead Plaintiff"), and appointed Heins, Mills, & Olson PLC as Lead Plaintiffs' counsel.

On April 1, 2002, Plaintiffs' Lead Counsel filed a Second Consolidated Amended Complaint for Violation of Securities Exchange Act of 1934 (the "Amended Complaint"). The Amended Complaint asserted claims against Broadcom and the Individual Defendants for alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and rule 10b-5 promulgated thereunder. The Amended Complaint sought recovery on behalf of all persons or entities who purchased or otherwise acquired publicly traded securities of Broadcom, or bought or sold options on Broadcom stock, between

2

July 31, 2000 and February 26, 2001, and were damaged thereby (the "Class"). The Class does not include Defendants; members of the immediate families of the Individual Defendants; officers and directors of Broadcom; Broadcom's parents, subsidiaries, or affiliates; or the legal representatives, heirs, successors, or assigns of such excluded parties. The Amended Complaint alleged that during the Class Period, Defendants issued false or misleading statements and omitted certain facts concerning certain of Broadcom's acquisitions, accounting for certain warrant agreements in connection with those acquisitions, and Broadcom's current or future financial condition, causing Broadcom's stock price to be artificially inflated.

**B.     Procedural Summary[1]**

On June 27, 2005, Judge Taylor issued an Order for Preliminary Approval of Class Action Settlement, Approval of Class Notice, and Request for Settlement Hearing.

On July 5, 2005, this action was transferred to this Court.

On September 12, 2005, this Court granted the following motions: (1) Lead Counsel's Motion for Approval of Lead Counsel's Application for Award of Attorneys' Fees and Reimbursement of Expenses; (2) Class Plaintiffs' Motion for Final Approval of Settlement; and (3) Class Plaintiffs' Motion for Final Approval of Proposed Plan of Allocation.

On September 14, 2005, this Court entered the Final Judgment and Order of Dismissal.

On October 14, 2005, Objector Rinis filed a Notice of Appeal.

---

[1] This Court sets forth only an abbreviated procedural history.

3

On October 25, 2005, Class Plaintiffs filed a Motion to Deny Request for Attorneys' Fees and Expenses by Jacob Sabo, which is currently before this Court.

On this same date, Class Plaintiffs filed a Motion to Require Appeal Bond, which is also currently before this Court.

## II. Discussion

### A. Standard

Federal Rule of Appellate Procedure 7 provides that "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. In applying this rule, "[t]he determination of the amount of a bond necessary to ensure payment of costs on appeal is left to the discretion of the district court." In re Heritage Bond Litig., No. MDL 02-ML-1475 DT (RCX), 2005 WL 2401111, *2 (C.D. Cal. Sept. 12, 2005)("Heritage Bond")(citing Young v. New Process Steel, 419 F.3d 1201, 1203 (11th Cir. 2005)).

### B. Analysis

Rinis has appealed this Court's final approval of the $150 million settlement ("Settlement") for the shareholder class in this case ("Class") and its benchmark attorneys' fee award of 25%. Lead Plaintiff, on behalf of Class Plaintiffs, moves for an order requiring Rinis to post an appeal bond under Federal Rule of Appellate Procedure 7. It argues that allowing Rinis to appeal without posting a substantial bond would expose the Class to a grave risk that it will not be reimbursed for the enormous expenses imposed by the appeal. More specifically, as examined below, Lead Plaintiff seeks a bond in the amount of $1,240,500 (double the anticipated costs of $620,250).

4

1. **The bond shall include the costs of copies under Fed. R. App. P. 39(e)**

Lead Plaintiff requests that the Court include in Objector's bond the taxable costs specified by Rule 39(c).

Rule 39(e) provides:

> The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:
>
> (1) the preparation and transmission of the record;
>
> (2) the reporter's transcript, if needed to determine the appeal;
>
> (3) the premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
>
> (4) the fee for filing the notice of appeal.

In addition, Rule 39(c) provides in pertinent part:

> Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by Rule 30(f).

The Class anticipates incurring costs taxable under Rule 39(c) in the approximate amount of $800.00, which is the estimated cost for printing and copying briefs and other submissions.[2] (Williams Decl., ¶ 9.) Such costs are included in appeal bonds, see, e.g., Johnson v. Pac. Lighting Land Co., 878 F.2d 297, 298 (9th Cir. 1989), and Objector Rinis does not oppose this amount. As

---

[2] The costs are based on the limit of 20 cents per page set in 9th Circuit Rule 39-1.3.

5

such, this Court finds that the bond amount shall include the costs in the amount of $800.00.

### 2. The bond shall include the costs of delay and disruption of the settlement administration process

Lead Plaintiff also requests that Objector's appeal bond cover additional costs arising from delay and disruption of administering the Settlement, as it did in Heritage Bond. It argues that Objector's appeal effectively postpones distribution of the entire judgment for well over a year. It claims that the Class will incur the following administrative costs of delay: costs of updating addresses and other information needed to remain in contact with Class members, locating lost Class members, sending notices to Class members to apprise them of Objector's appeal and keep them informed about the status of the appeal, paying monthly fees for maintaining the website created to inform Class members, and providing phone support to answer inquiries from the Class members. These expenses are estimated to be approximately $517,700. (Gilardi Decl., ¶¶ 6-7 and Exh. A.)

This Court has held that the costs of delay are properly included in a Rule 7 bond because "distribution of the settlement proceeds will be unnecessarily delayed until [the] appeal is exhausted." Heritage Bond, 2005 WL 240111, at *7. "[I]mposition of an appeal bond is necessary to provide some level of security to Lead Plaintiffs who have no assurances that [the appellant] has the financial resources to pay the costs and fees associated with opposing [the] appeal." Id. In making this determination, this Court followed the lead of other courts which found it appropriate to require an appeal bond from an appellant in similar circumstances. See In re Cardizem CD Antitrust Litigation, 391 F.3d 812, 817 (6th Cir. 2004)(Court held that "Fed. R. App. P. 39 does not define 'costs' at all;

6

rather, it merely lists which costs of appeal can be 'taxed' by the district court if it chooses to order one party to pay costs to the other")(citing Adsani v. Miller, 139 F.3d 67, 74 (2d Cir. 1998)); In re compact Disc minimum Advertised Price Antitrust Litigation, No. MDL 1361, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003)(court held that a Rule 7 bond should reflect "damages resulting from delay or disruption to the settlement administration," including "fees to the bank administering the fund, and tracking down claimants who move during the anticipated period . . . until resolution of the appeal); In re NASDAQ Market-Makers Antitrust Litigation, 187 F.R.D. 124 (S.D.N.Y. 1999)(court did not limit the costs covered by a Rule 7 appeal bond to those enumerated in Rule 39(e)).

Objector argues that "the predominant position among the courts that have considered the matter is that Rule 7 costs on appeal are strictly limited to costs listed in Rule 39." However, Objector, no doubt for good reason, fails to address this Court's decision in Heritage Bond, as well as the decisions of other court presiding over class settlements that have similarly rejected the narrow interpretation of Rule 7. Objector relies only on In re American President Lines, Inc., 779 F.2d 714 (D.C. Cir. 1985), a bankruptcy case decided long before the cases which have reasoned that in a class settlement context, a Rule 7 bond may cover fees and expenses resulting from delay or disruption to the settlement administration.

Here, Objector's appeal is tantamount to a stay of the judgment approving the class settlement. While Objector did not formally move to stay the Judgment, its appeal effectively imposes a stay, forcing the Class to bear the same risks. Because there is no supersedeas bond to protect the Class from these risks, this Court finds it proper to impose a Rule 7 bond to serve the same purpose. Indeed, Objector's appeal effectively postpones distribution of the entire judgment

7

for well over a year. The Class will incur administrative costs of delay, such as those described in the Declaration of Dennis A. Gilardi, the Court-appointed Claims Administrator. (See Gilardi Decl. at ¶¶ 6-7 and Exh. A.) As such, the bond shall include the costs of delay in the amount of $517,700.00.

### 3. The bond shall include attorneys' fees that will be incurred in defending the appeal

Lead Plaintiff asks the Court to secure payment of attorneys' fees likely to be awarded on appeal. It claims that the fees necessary to oppose the appeals are conservatively estimated to be $100,750. (Williams Decl., ¶ 10.) This estimate includes time for briefing the issues, preparing for oral argument and oral argument. (Id.)

As Lead Plaintiff points out, while the Ninth Circuit has not addressed the issue of whether district courts have discretion under Rule 7 to include attorneys' fees in an appeal bond, this Court has previously determined that it has discretion under Rule 7 to include attorneys' fees in an appeal bond. More specifically, this Court determined that a potential Rule 38[3] award is properly considered in determining the amount of an appeal bond. See Heritage Bond, 2005 WL 2401111, at *2 (citing In re NASDAQ Market-Makers Antitrust Litig., 187 F.R.D. 124, 128 (S.D. N.Y. 1999)). In other words, attorneys' fees incurred to defend a frivolous appeal may be included in a Rule 7 bond. Id.

---

[3] Rule 38 provides:
> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

Fed. R. App. P. 38.

8

Where the arguments to be made on appeal are frivolous, Rule 38 allows the court of appeals to "award just damages and single or double costs to the appellee." Attorneys' fees are one category of "just damages" that may be awarded. See, e.g., Ingle v. Circuit City, 408 F.3d 592, 595 (9th Cir. 2005)(imposing double costs and attorneys' fees under Rule 38); Harrah's Club v. Van Blitter, 902 F.2d 774, 777 (9th Cir. 1990)(same). For purposes of Rule 38, an appeal is frivolous if "the result is obvious or the appellant's arguments are wholly without merit." Glanzman v. Uniroyal, Inc., 892 F.2d 58, 61 (9th Cir. 1989)(quoting McConnell v. Critchlow, 661 F.2d 116, 118 (9th Cir. 1981)).

This Court agrees with Lead Plaintiff that the Ninth Circuit is likely to find that Objector's appeal fits this definition.[4] With respect to Objector's claimed lack of adequate notice, this Court has already found that "[t]here can be no legitimate dispute that the Notice 'apprise[d] interested parties of the pendency of the action and afford[ed] them an opportunity to present their objections." (Final Approval Order at 16-17.)[5] Clearly, notice was forwarded to Objector in ample time to file its objection. Notwithstanding this, contrary to Objector's assertions, the courts have rejected the notion that class counsel has a duty to ensure actual notice to beneficial owners. See Torrisi v. Tuscon Elec. Power Co., 8 F.3d 1370, 1374-75 (9th Cir. 1993)(Ninth Circuit held that the class notice satisfied due process and Rule 23 despite the fact that nearly one-third of the

---

[4] Lead Plaintiff states that once the Ninth Circuit affirms the Judgment, it intends to file a motion under Rule 38 to recover the damages suffered by the Class as a result of Objector's unfounded appeal.

[5] This Court also notes its discussion in the Order regarding the "canned" nature of Rinis's objection, as the objection was virtually identical to another objection filed in one of the many other cases in which Rinis's collective attorneys have asserted objections. (Order, p. 15.)

9

113,000 class members held their shares in street name and that notice was mailed to some shareholders as late as five days after the deadline for opting out and filing objections). In its Opposition, Objector argues that the Ninth Circuit, not this Court, ultimately will determine under Rule 38 whether the appeal is frivolous. While this is true, this Court has the authority to require a bond reflecting the Ninth Circuit's likely finding that the appeal is frivolous, as explained above.

Lead Plaintiff also relies on another statute supporting the inclusion of attorneys' fees in Objector's bond, 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. This statute authorizes the Court to impose sanctions against any lawyer who wrongfully proliferates litigation proceedings after a case has commenced. See Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc., 210 F.3d 1112 (9th Cir. 2000).

A Section 1927 violation requires a finding of subjective bad faith. See B.K.B. v. Maui Police Dept., 276 F.3d 1091, 1107 (9th Cir. 2002). Subjective bad faith "is present when an attorney knowingly or recklessly raises a frivolous argument, or agues a meritorious claim for the purpose of harassing an opponent." In re Keegan Mgmt. Co. Sec. Litig., 78 F.3d 431, 436 (9th Cir. 1996); Gomez v. Vernon, 255 F.3d 1118, 1135 (9th Cir. 2001). However, a finding of bad faith

10

"does not require that the legal and factual basis for the action prove totally frivolous." Hart v. Baca, No. CV 01-01866 DDP, 2005 WL 1168422 at *2 (C.D. Cal. May 17, 2005.) Furthermore, Section 1927 sanctions have been imposed on professional objectors. See In re Prudential Ins. Co. Am. Sales Practice Litig., 278 F.3d 175, 193 (3d Cir. 2002)(affirming Section 1927 sanctions imposed on professional objectors). As such, this Court agrees with Lead Plaintiff that Section 1927 also provides a basis for including attorneys' fees in the bond.

Thus, the bond shall include Lead Plaintiff's attorneys' fees likely to be awarded on appeal in the amount of $100,750.00.

### 4. The bond shall secure double the costs that the Ninth Circuit may award

Lead Plaintiff asks the Court to order, as it did in Heritage Bond, that Objector's Rule 7 bond secure payment of double the costs that may be awarded as sanctions for its unfounded appeal. See 2005 WL 2401111, at *7.

The Ninth Circuit has used its authority under Rule 38 to impose double costs for a frivolous appeal. See, e.g., Ingle, 408 F.3d at 595 (imposing double costs and attorneys' fees under Rule 38); Harrah's Club, 902 F.2d at 777. Here, as discussed above, Rinis' appeal is unfounded. Thus, this Court finds that doubling the costs is appropriate. Doubling the costs of $620,250 increases the proposed bond amount to $1,240,500.

### 5. The bond will not include Defendants' expenses

Defendants Broadcom, Henry T. Nicholas, III, Henry Samueli and William J. Ruehle filed a Joinder in Class Plaintiffs' Motion to Require Appeal Bond. They argue that the amount of the bond should cover Defendants' anticipated expenses as well as those of Class Plaintiffs. They claim that they will independently incur costs and attorneys' fees at least equal to the costs and

11

attorneys' fees incurred by Class Plaintiffs. In addition, Defendants also ask the Court to double the costs and attorneys' fees, increasing the bond amount to cover Defendants' estimated expenses to $203,100.

This Court finds it unnecessary to include Defendants' expenses in the bond amount. The amount set by the Court, as detailed above, is sufficient. This is especially true in light of the fact that the Court doubled Plaintiffs' costs and attorneys' fees, and Defendants contend that their costs and attorneys' fees would be at least equal to Class Plaintiffs'.

**B.** <u>**Conclusion**</u>

Accordingly, this Court **grants** Class Plaintiffs' Motion to Require Appeal Bond. Objector Rinis Travel Service, Inc., Profit Sharing Trust U.A. 6-1-1989 is ordered to post a bond in the amount of $1,240,500 within 10 court days upon entry of this Order.

IT IS SO ORDERED.

DATED: 12/5/05

DICKRAN TEVRIZIAN
Dickran Tevrizian, Judge
United States District Court

12