UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION

*Stillion, et al. v. United Bank, Inc. and United Bankshares, Inc.*,
S.D. Fla. Case No. 11-cv-21472-JLK
S.D. W. Va. Case No. 11-cv-0237

**MOTION FOR SUGGESTION OF REMAND AND INCORPORATED MEMORANDUM
<u>OF LAW OF UNITED BANK, INC. AND UNITED BANKSHARES, INC.</u>**

4153102.3

# TABLE OF CONTENTS

Introduction ..........................................................................................................................1

Statement of the Case ...........................................................................................................1

Legal Standard .....................................................................................................................4

Argument .............................................................................................................................5

    I.    Remand of *Stillion* will be in the "convenience of the parties and witnesses." ..........................................................................................................5

    II.   Remand of *Stillion* to the transferor court will better promote its "just and efficient conduct" and allow it to be coordinated with closely-related litigation. .........................................................................................8

        A.    Remand of *Stillion* will enhance its efficient resolution and that of the closely-related *Jones* action by allowing the cases to be more closely coordinated. ..........................................................9

        B.    If limited jurisdictional discovery is necessary, it will potentially distract from efforts to resolve the substantive merits of the *Overdraft* MDL and such discovery can be more efficiently managed by the transferor court. ....................................12

    III.  Realization of the advantages and efficiencies pioneered by this Court through the *Overdraft* MDL do not require *Stillion* to remain a part of the MDL. ..............................................................................................14

Conclusion .........................................................................................................................14

Local Rule 7.1 Certificate ..................................................................................................15

**INTRODUCTION**

Pursuant to 28 U.S.C. § 1407(a) and Rule 10.1 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("JPML" or "Panel"), United Bank, Inc. ("United Bank (WV)") and United Bankshares, Inc. ("UBSI") respectfully move for entry of a suggestion of remand.  As explained below, the development of *Stillion* following its transfer to this Court and the simultaneous progression of an overlapping putative class action pending in a West Virginia state court indicate compelling advantages in terms of convenience, justice, and efficiency can be realized through a remand to the West Virginia transferor court.  Consequently, the statutory prerequisites applicable to MDL transfers no longer apply with respect to *Stillion*.

**STATEMENT OF THE CASE**

On April 8, 2011, Plaintiffs Christopher and Heather Stillion ("the Stillions") filed their original Complaint in the United States District Court for the Southern District of West Virginia.  [Exhibit A, Boone Decl. ¶9 (02/01/2012).][1]  Prior to its transfer to the *In re Checking Account Overdraft Litigation* ("*Overdraft* MDL"), the West Virginia district court shifted the case to its Parkersburg division.  [*See id.*][2]  The Stillions are West Virginia citizens.  [DE 2031 ¶12 (Amended Complaint).]  They opened a United Bank (WV) checking account in September 1998.  [DE 2162-1 ¶8 (Salvatori Decl.)]  The Stillions maintained this account until they closed it in October 2011.  [DE 2162-1 ¶8.]

The Stillions' original Complaint was filed by the West Virginia law firm Bordas & Bordas, PLLC ("Bordas" or "Bordas firm").  [*See* Exhibit 8 (original Compl.) to Exhibit A.]

---

[1] For the convenience of the Court, a true and accurate copy of the original Complaint downloaded from PACER is attached as Exhibit 8 to Exhibit A, Boone Declaration (02/01/2012).

[2] The copy of the original Complaint served on United Bank (WV) and UBSI indicated that the case had been filed in the Huntington Division of the United States District Court for the Southern District of West Virginia.  *See* Exhibit A, Boone Decl. ¶9.  However, the copy of the original Complaint downloaded from the PACER website indicates that the word "Huntington" was struck through and replaced with the word "Parkersburg."  *See id.*

The Bordas firm possesses significant experience representing plaintiffs in consumer protection litigation.[3] Following transfer to the *Overdraft* MDL, the Stillions filed an Amended Class Action Complaint ("Amended Complaint") on October 24, 2011. [DE 2031.] Although the Amended Complaint was "signed" by the MDL's "Co-Lead Counsel," instead of Bordas, recent events indicate that the Bordas firm remains intimately involved in litigating *Stillion*.[4] The original and amended complaints both invoke subject matter jurisdiction under the Class Action Fairness Act of 2005 ("CAFA").

Like the Stillions, United Bank (WV) is a West Virginia citizen. More specifically, United Bank (WV) is a West Virginia corporation that maintains its principal place of business in Parkersburg, West Virginia. [DE 2031 ¶ 14.] United Bank (WV) operates 56 branch banking offices under the supervision of the West Virginia commissioner of banking. [DE 2162-1 ¶3; DE 2162-2 ¶6 (Wilson Decl.).] All but three of United Bank (WV)'s branches are located in West Virginia. United Bank (WV)'s non-West Virginia branches — all three of which are in Ohio — recently accounted for no more than approximately $48 million of United Bank (WV)'s total approximate deposits of $2.9 billion. [DE 2162-3 ¶3 (Boone Decl.).] Thus, unlike the much larger "interstate" banks that are *Overdraft* MDL parties, United Bank (WV) is overwhelmingly concentrated in one state.

United Bank (WV) is a wholly-owned subsidiary of UBSI. [DE 2031 ¶16]. UBSI is a West Virginia corporation that operates as a registered bank holding company. [DE 2162-2 ¶4.] Like United Bank (WV), UBSI has its principal place of business in Parkersburg,

---

[3] *See* Bordas & Bordas, PLLC, http://www.bordaslaw.com/Protecting-Consumers/ (visited Jan. 13, 2012).

[4] In opposing the *Motion to Dismiss* filed by United Bank (WV) and UBSI, the plaintiffs relied upon a declaration authored and executed by an attorney employed by Bordas & Bordas. [DE 2330-1.]

2

West Virginia.  [DE 2162-2 ¶3.]  Thus, like the Stillions and United Bank (WV), UBSI is a citizen of West Virginia.

Based on these facts, United Bank (WV) and UBSI moved to dismiss *Stillion* based on a lack of subject matter jurisdiction under CAFA.  [DE 2162 (Motion to Dismiss).]  In particular, United Bank (WV) and UBSI submitted evidence proving that subject matter jurisdiction is lacking because the vast majority of the putative class members and both named Defendants are West Virginia citizens.  In response, the Stillions asserted, incorrectly, that UBSI "operates" bank branches in West Virginia, Ohio, Virginia, the District of Columbia, and Maryland.  [DE 2330.]  Given these alleged branches in Virginia, Maryland, and the District of Columbia, the Plaintiffs assert that United Bank (WV)'s and UBSI's representations regarding the predominantly West Virginia nature of the putative "National Class" must be wrong.

As explained in the *Reply Brief* filed by United Bank (WV) and UBSI in support of their *Motion to Dismiss*, however, UBSI is a bank holding company, not a bank.  [DE 2373.]  Further, the *Reply Brief* notes that the documents relied upon by the Stillions for the assertion that UBSI "operates" bank branches in Virginia, Maryland, and the District of Columbia only show that UBSI owns a second, separately incorporated, bank — referred to as "United Bank (VA)" — that operates in Virginia, Maryland, and the District of Columbia.  [DE 2373 at 6-8.][5] The *Reply Brief* further notes that the Stillions have never offered any proof or factual allegations that would support the proposition that they ever maintained a contractual deposit account relationship with United Bank (VA), as opposed to United Bank (WV).  [DE 2373 at 5.]

---

[5] Page number references to memoranda or other documents electronically filed with the Court refer to the page numbers automatically assigned to, and imprinted on, the documents by the Court's CM/ECF system.

As noted in the *Reply Brief*, United Bank (VA) is a Virginia corporation that maintains its principal place of business in Fairfax, Virginia.  [DE 2373 at 7 n. 2.]  Similarly, in contrast to United Bank (WV), which is regulated by the State of West Virginia (in addition to the litany of federal regulators that also regulate United Bank (WV)'s banking operations), United Bank (VA) is regulated by the Commonwealth of Virginia.

3

Finally, although *Stillion* is the only action of its kind pending against UBSI and United Bank (WV) in a federal court, it is not the only putative class action of its kind pending against United Bank (WV). [DE 2162-2 ¶9.] In fact, United Bank (WV) is a party to a substantially overlapping putative class action that was filed in a West Virginia state court after the filing of *Stillion*. [DE 2162-2 ¶9.] The second lawsuit is known as *Jones v. United Bank, Inc.* and it was filed in the Circuit Court for Jackson County in Ripley, West Virginia. [DE 2162-2 ¶9; DE 2162-2 ¶6.] Ripley is approximately 40 miles from the site of the transferor court and from the named defendants' principal places of business in Parkersburg.

## LEGAL STANDARD

Although the Panel has sole authority to remand a case transferred pursuant to 28 U.S.C. § 1407(a), a transferee court can suggest remand under the Panel's Rules of Procedure.[6] A transferee court's suggestion of remand is given "great weight."[7] In considering a suggestion of remand, transferee courts are guided by the same standard applied by the Panel.[8] The standard applied by the Panel is "whether the case will benefit from further coordinated proceedings as part of the MDL."[9]

In applying this standard, the Panel essentially reassesses the initial statutory factors for transfer of an action to a MDL.[10] Therefore, this Court's suggestion of remand hinges upon the two prongs set forth in 28 U.S.C. § 1407(a): (1) whether MDL centralization is convenient for the "parties and witnesses" and (2) promotes "the just and efficient conduct" of

---

[6] *See* J.P.M.L. Rule 10.1(b)(i).

[7] *In re Asbestos Products Liab. Litig.*, 545 F. Supp. 2d 1362, 1363 (J.P.M.L. 2008) (quoting *In re Holiday Magic Securities and Antitrust Litigation*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977)).

[8] *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001).

[9] *Id*.

[10] *Id*.

4

the action. Finally, the Panel also considers "the totality of circumstances involved in th[e MDL] docket[,]"[11] which pertains to whether a case's continued inclusion in a MDL "is more likely to 'insure the maximum efficiency for all [MDL] parties and the judiciary.'"[12]

## ARGUMENT

I.   **Remand of *Stillion* will be in the "convenience of the parties and witnesses."**

The Panel evaluates whether transfer will enhance the convenience of the parties and witnesses. Although controversies involving manufacturers of ubiquitous products consumed or used by persons distributed across the country will rarely have a "geographic center of gravity[,]"[13] any controversy involving United Bank (WV) and UBSI is distinctly centered in West Virginia. Indeed, both defendants are West Virginia corporations that maintain their principal places of business in Parkersburg, West Virginia. Similarly, both plaintiffs are West Virginia citizens. More importantly, both plaintiffs choose to file their case in a West Virginia federal district court using West Virginia lawyers. *Stillion* is also the only lawsuit filed against either United Bank (WV) or UBSI in a federal forum involving allegations of misconduct in the assessment of overdraft fees.[14] And the only other case filed against United Bank (WV) involving comparable allegations was filed, and remains pending, in a West Virginia state court.

In the past, the Panel has found comparable facts significant. More specifically, the Panel once concluded that a particular district was "convenient" because:

---

[11] *In re: Columbia/HCA Healthcare Corp. Qui Tam Litig.*, 560 F. Supp. 2d 1349, 1350 (J.P.M.L. 2008).

[12] *U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 38 (D.D.C. 2007) (quoting *In re IBM Peripheral EDP Devices Antitrust Litig.*, 407 F. Supp. 254, 256 (J.P.M.L. 1976)).

[13] *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Products Liab. Litig.*, 990 F. Supp. 834, 835 (J.P.M.L. 1998) ("With respect to the selection of the transferee district, we note that this is truly a nationwide litigation in which no particular district or region emerges as the geographic center of gravity.").

[14] There is also no evidence or reason to believe that the remand of *Stillion* would inconvenience any of the **other parties** or witnesses in any of the other actions consolidated in the *Overdraft* MDL. Neither the Stillions nor anyone else has ever asserted any relationship or connection between United Bank (WV) or UBSI and any other defendant within the *Overdraft* MDL that would render evidence pertaining to United Bank (WV)'s banking practices relevant to the conduct of other banking defendants.

5

> Two defendants maintain headquarters within the district, which implies that relevant documents and witnesses will likely be found there. The presence of the government investigation and federal grand jury in the Southern District of Ohio also tilts toward centralization in the Southern District of Ohio.[15]

Although no government investigation or federal grand jury proceeding is pending in West Virginia with respect to overdraft fees, *In re Foundry Resins* is still analogous based upon the pending *Jones* case. Indeed, *Jones* is pending in the Jackson County courthouse, which is approximately 40 miles from the federal district courthouse in Parkersburg and from the defendants' principal places of business.

Finally, as noted above, the Stillions have recently asserted that UBSI "operates" banks in Virginia, Maryland, and the District of Columbia because it owns United Bank (VA), which maintains branches in those states. In making this assertion, the Stillions have implicitly asserted that they have standing to represent United Bank (VA) depositors, even though they failed to name United Bank (VA) as a defendant and have never alleged the existence of any contractual deposit relationship between themselves and United Bank (VA). Even if the Stillions could comprise customers of United Bank (VA) within their "National Class," however, it is clear that the National Class would still be overwhelmingly concentrated in West Virginia.

Although United Bank (WV) and United Bank (VA) hold roughly comparable "total assets" and "total deposits," the similarities end there.[16] As to United Bank (WV) and the West Virginia deposit market, United Bank (WV) recently held approximately ten percent of the

---

[15] *In re Foundry Resins Antitrust Litigation*, 342 F. Supp. 2d 1346, 1347 (J.P.M.L. 2004).

[16] Based upon data maintained by the United States Federal Deposit Insurance Corporation ("FDIC"), as of December 30, 2010, United Bank (WV) had "total assets" of approximately $3.465 billion, while United Bank (VA) had "total assets" of approximately $3.667 billion. *See* Exhibit A, Boone Decl. ¶¶8-9. Similarly, as of December 30, 2010, United Bank (WV) had "total deposits" of approximately $2.979 billion, while United Bank (VA) had "total deposits" of approximately $2.762 billion. *See id.*

market and is second to only BB&T.[17] In contrast, with respect to United Bank (VA) and the three "state" markets within which it operates (i.e., Virginia, Maryland, and the District of Columbia), its market share only exceeded one percent in the District of Columbia where it held 1.25 percent of the market.[18] Moreover, United Bank (VA)'s business is much more focused on commercial accounts and lending, which means it derives a far lower percentage of its total income from "noninterest income."[19] One component of noninterest income is "service charges on deposit accounts." "Service charges on deposit accounts" includes overdraft fees, nonsufficient funds fees, and a myriad of other fee types.[20] To illustrate the gap, for the year ending December 31, 2010, United Bank (WV) derived approximately $19.4 million in "service charges on deposit accounts," as compared to $10.7 million at United Bank (VA).[21]

In addition, the predominantly consumer nature of United Bank (WV) — and the predominantly commercial nature of United Bank (VA) — becomes even more apparent after drilling further into the official FDIC data. For example, for the year that ended on December 31, 2010, United Bank (WV) derived approximately $12.86 million in overdraft fees through its

---

[17] *See* Exhibit A, Boone Decl. ¶3. In contrast, United Bank (WV)'s share of the Ohio bank deposit market was approximately 0.02 percent of the total Ohio market. *See id.* ¶4. Moreover, United Bank (WV) deposits originating from Ohio accounted for approximately $48 million versus approximately $2.877 billion in deposits originating in West Virginia. *See id.* ¶¶3-4.

[18] *See id.* ¶¶ 5-7. In discussing United Bank (VA) or UBSI's business interests outside of West Virginia, neither United Bank (WV) nor UBSI concedes that it is appropriate to consider any of United Bank (VA)'s depositors as being among the members of the putative "National Class" that the Stillions seek to represent. As noted in United Bank (WV)'s and UBSI's *Reply Brief* in support of their *Motion to Dismiss*, United Bank (WV) and United Bank (VA) are separate banks that operate independently of one another. [DE 2373 at 7 n. 2.] Moreover, neither of the Stillions has ever alleged a contractual deposit account relationship between themselves and United Bank (VA). [*Id.* at 5.]

[19] *See generally* Exhibit A, Boone Decl. ¶8-9 (noting, *inter alia*, that as of December 31, 2010, United Bank (WV) generated "total noninterest income" of approximately $42.95 million versus approximately $18.06 million with respect to United Bank (VA)).

[20] *See* FDIC, FDIC Study of Bank Overdraft Programs (Nov. 2008), at 68 (available at www.fdic.gov/bank/analytical/overdraft/FDIC138_Report_Final_v508.pdf).

[21] *See* Exhibit A, Boone Decl. ¶8-9.

consumer deposit accounts[22] versus approximately $5.7 million in overdraft fees attributable to consumer deposit accounts at United Bank (VA) during the same time period.[23]

Based on these data, it is clear that United Bank (WV) depositors — more than 91 percent of whom reside in West Virginia and who account for more than 90 percent of the funds deposited with United Bank (WV)[24] — make up the vast majority of any putative "National Class." Consequently, remand to the transferor court would further the convenience of the parties and any witnesses given the uniquely West Virginia locus of the controversy.

## II. Remand of *Stillion* to the transferor court will better promote its "just and efficient conduct" and allow it to be coordinated with closely-related litigation.

The MDL statute provides neither a bright-line rule nor any statutory factors for the Panel or this Court to apply in assessing the "just and efficient conduct" prong.[25] The Panel's prior decisions, however, illustrate the circumstances in which the "just and efficient conduct" prong will be satisfied. These circumstances include the "avoidance of conflicting rulings in various cases; prevention of duplication of discovery on common issues; resolution of conflicting class actions; avoidance of conflicting and duplicative pretrial conferences; [...] [and advancement] of judicial economy."[26]

In contrast to the larger nationwide banks in the *Overdraft* MDL, United Bank (WV) and UBSI are uniquely tied to one state: West Virginia. There are at least two reasons why this critical distinction makes *Stillion* well-suited for remand to the West Virginia transferor court to better promote its just and efficient conduct. First, if federal subject matter jurisdiction

---

[22] Exhibit B, Salvatori Decl. ¶4 (02/09/2012).

[23] Exhibit C, Wilson Decl. ¶9 (02/09/2012).

[24] DE 2162-1 ¶4; *see also* Exhibit A, Boone Decl. ¶3.

[25] David F. Herr, *Multidistrict Litigation Manual* § 5:6 (2011) ("the Panel has never articulated a single standard to be used in determining if this requirement is met in litigation before it.").

[26] *Id*.

8

is found, remand would permit the West Virginia district court to coordinate the litigation of *Stillion* with the closely-related *Jones* action, which is pending in a West Virginia state court that is only 40 miles from the federal courthouse to which *Stillion* would be remanded. Second, to the extent this Court possesses doubts regarding United Bank (WV)'s and UBSI's pending *Motion to Dismiss*, United Bank (WV) and UBSI assert that the Court should order limited jurisdictional discovery to determine whether federal subject matter jurisdiction exists over *Stillion*. Such jurisdictional discovery would be both collateral to the substantive issues in the *Overdraft* MDL and a distraction for this Court. Moreover, limited jurisdictional discovery could be overseen much more efficiently by a district court based in the same West Virginia city that serves as the principal place of business of both United Bank (WV) and UBSI: Parkersburg, West Virginia.

      **A.**    **Remand of *Stillion* will enhance its efficient resolution and that of the closely-related *Jones* action by allowing the cases to be more closely coordinated.**

In the unlikely event CAFA jurisdiction is found to exist, remand of *Stillion* would still benefit both the federal court system and the West Virginia state court system by enabling *Stillion* to be more closely coordinated with the *Jones* action. The definition of judicial economy is "the efficient management of litigation so as to minimize duplication of effort and to avoid wasting the judiciary's time and resources."[27] As explained below, remand of *Stillion* so it can be coordinated with *Jones* is well-supported by the Panel's precedent.

One of the key factors the Panel examines in determining the most efficient transferee district is the ability to "coordinate" proceedings, which inevitably prevents duplicative discovery and pretrial hearings, as well as potentially conflicting rulings. Often, the Panel determines that a particular federal district court is the most efficient transferee court based

---

[27] Black's Law Dictionary 923 (9th ed. 2009).

on its proximity to related state court actions. As noted in the Federal Judicial Center's *Manual for Complex Litigation*, "[t]he Judicial Panel on Multidistrict Litigation has no power over cases pending in state courts, but has facilitated coordination [of discovery and other matters] by transferring federal cases to a district where related cases are pending in the state courts."[28] For example, in *In re Air Crash Disaster at Florida Everglades*,[29] the Panel transferred all federal actions regarding the same airplane disaster to the Southern District of Florida, after Florida state court actions were filed. The Panel noted that "[t]ransfer of all actions to the Southern District of Florida . . . will take advantage of this state-federal accommodation in discovery and will greatly enhance the expeditious processing of all actions arising out of the crash."[30] Here, similar benefits can be achieved by remanding *Stillion* to the transferor court in West Virginia.

Another factor relevant to the Panel's calculus is an overriding concern to avoid inconsistent judicial treatment of similar issues in parallel or overlapping class actions. Indeed, the Panel "ha[s] frequently held that the possibility of inconsistent class action determinations is an important factor favoring transfer."[31] Based on the clear similarities between *Jones* and *Stillion*, any decision on the merits in either case would be certain to affect the other.

In fact, a comparison of the complaints in both *Stillion* and *Jones* illustrates the overlap between them. For example, paragraph two of the Complaint in *Jones* states:

---

[28] Manual for Complex Litigation § 20.311 (4th ed.).

[29] 360 F. Supp. 1394 (J.P.M.L. 1973).

[30] *Id*. at 1395-96. *See also In re Bomb Disaster at Roseville, California, on April 28, 1973*, 399 F. Supp. 1400 (J.P.M.L. 1975) ("[T]ransfer of all federal actions to California will provide an opportunity for the federal and California state courts to coordinate discovery efforts in the two jurisdictions and thereby greatly facilitate the processing of the various actions arising out of the explosions."); *and see In re Air Crash Disaster Near Silver Plume, Colorado, on October 2, 1970*, 352 F. Supp. 968 (J.P.M.L. 1972) ("Such state-federal accommodation in discovery will significantly lessen the burdens on both court's judicial resources and greatly enhance the expeditious process of all actions arising out of the crash.")

[31] *In re Texas Gulf Sulphur Sec. Litig.*, 344 F. Supp. 1398, 1400 (J.P.M.L. 1972).

10

> Plaintiff brings this action on behalf of himself and a class of all similarly situated West Virginia citizens against Defendants United [Bank (WV)] and United Bankshares, Inc. (collectively, "United" or the "Bank") arising out of United's unfair, deceptive, unconscionable, and bad faith assessment and collection of overdraft fees or insufficient funds fees . . .[32]

Likewise, the Amended Complaint filed in *Stillion* states:

> This is a civil action seeking monetary damages, restitution and declaratory relief from Defendants United Bank, Inc. and United Bankshares, Inc. (collectively, "United Bank" or the "Bank"), arising from their unfair and unconscionable assessment and collection of excessive overdraft fees.[33]

Nor do the similarities end there. Critically, the putative classes in both cases are nearly identical. In *Jones*, the putative class includes those

> injured by United's unlawful practices, including but not limited to: (a) re-ordering and processing electronic debit transactions from the highest dollar amount to lowest dollar amount, rather than chronologically, a practice that depletes the customer's available funds as quickly as possible and thereby maximizes the number of overdraft fees collected by United; (b) charging overdraft fees when in fact the Bank's customer had not overdrawn his or her checking account at the time of the transaction; and (c) failing to adequately disclose its overdraft policies.[34]

Likewise, the putative class in *Stillion* includes

> those individuals that have been charged overdraft fees as a result of United Bank's use of a non-chronological and/or largest-to-smallest re-ordering system for the posting of debits to customer accounts and the Bank's practice of assessing overdraft fees when sufficient funds exist in the customer's account.[35]

---

[32] DE 2162-3 at 23 ¶2.

[33] DE 2031 ¶1.

[34] DE 2162-3 at 24 ¶6.

[35] DE 2031 ¶13.

11

Finally, there is considerable identity among the claims asserted in *Stillion* and *Jones*, including breach of contract (through breach of the covenant of good faith) and unjust enrichment.[36]

In sum, the two actions involve the same defendants, class members, and claims. Remanding *Stillion* to the transferor court will allow it to be more closely coordinated with *Jones*, which will result in greater judicial economy for the federal courts and for the West Virginia state court system, while alleviating the possibility of decisions in one case that might adversely affect the other. Therefore, this Court should find that remand of *Stillion* would promote "the just and efficient conduct" of it and of the *Jones* action.

> B. **If limited jurisdictional discovery is necessary, it will potentially distract from efforts to resolve the substantive merits of the *Overdraft* MDL and such discovery can be more efficiently managed by the transferor court.**

At the outset, United Bank (WV) and UBSI believe the evidence submitted in support of their *Motion to Dismiss* builds a compelling case in favor of dismissal due to a lack of CAFA subject matter jurisdiction and the Stillions failed to rebut this evidence. If, however, the Court harbors uncertainty regarding the evidence submitted by United Bank (WV) and UBSI or the overwhelmingly West Virginia nature of United Bank (WV)'s business, then this Court should order limited discovery focused on the existence of CAFA jurisdiction.[37] This approach would also be directly comparable to the approach taken by this Court in the arbitration context.[38] Indeed, given that a federal court's threshold obligation in every case is to verify its

---

[36] *Compare* DE 2162-3 at 36-37 *to* DE 2031 at 21-22, 25-26.

[37] *See, e.g., Wilson v. PBI Bank, Inc.*, No. 1-11-CV-19, 2011 WL 1376709 (W.D. Ky. Apr. 12, 2011).

[38] *See* DE 1576 at 2 ("Careful consideration of the briefs and thorough oral argument of the parties, impels the conclusion that discovery is necessary. Given the complexity of the legal and factual issues; the astronomical size of the potential class; and the critical impact the decision on Defendants' Motions to Dismiss will have on the future course of this litigation; the Court finds a fully developed, complete record is essential. The interruption of ongoing merit discovery is justified under these circumstances.").

subject matter jurisdiction, the merit in ordering limited jurisdictional discovery here is even more compelling than it was in the arbitration context.[39]

Moreover, this Court's experience with the arbitration issue offers other reasons why a remand to the West Virginia district court would promote the just and efficient resolution of *Stillion* and of the other actions currently consolidated within the *Overdraft* MDL. First, in contrast to the prevalence of the arbitration issue among the actions consolidated in the *Overdraft* MDL, the assertion of a lack of CAFA subject matter jurisdiction appears to have been infrequent at best, which means that any procedures for dealing with the jurisdiction question would have to be developed by this Court from scratch. And, given the infrequency of the issue in *Overdraft* MDL actions and the end of automatic transfers to the *Overdraft* MDL,[40] it appears that the Court's development of procedures and guidelines for resolving the jurisdiction question would not be applicable to any other action. Thus, as with arbitration, resolution of the jurisdiction issue will be collateral to the merits of the *Overdraft* MDL, but, unlike arbitration, the creation of procedures for resolving the jurisdiction issue will not benefit any other cases in the MDL.

In addition, although enmeshed in the "convenience of the parties and witnesses" prong, the transferor court's proximity to both defendants' principal places of business in Parkersburg, West Virginia also means it will be able to consider the jurisdiction question more

---

[39] *See, e.g., Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577, 119 S. Ct. 1563, 1567 (1999) (internal quotation marks and citations omitted) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception.").

[40] *See In re Checking Account Overdraft Litig.*, MDL 2036, DE 639 (JPML Oct. 11, 2011) ("Panel Rule 7.1(a), requiring notification to the Clerk of the Panel of potential tag-along actions, is hereby suspended in this litigation until further notice."); *see also* DE 2336 (JPML order vacating conditional transfer orders).

efficiently than this Court.[41]  As a result, the transferor court would have almost immediate and direct access to testimony from crucial witnesses based in Parkersburg and to documents maintained at both defendants' principal places of business.  Given the distance between Parkersburg and Miami, and the lack of a modern full-service airport in the Parkersburg-area, this Court's access to such witnesses and documents would be much more limited, which would hamper this Court's ability to make critical findings of fact regarding jurisdiction.

### III. Realization of the advantages and efficiencies pioneered by this Court through the *Overdraft* MDL do not require *Stillion* to remain a part of the MDL.

There can be no doubt that this Court has generated a significant body of work with respect to the subject matter encompassed within the *Overdraft* MDL.  As noted recently by the Panel, however, an action does not need to be consolidated within the *Overdraft* MDL to benefit from this Court's efforts.[42]  Thus, there is no reason that the West Virginia transferor court cannot leverage the work accomplished by this Court.

### CONCLUSION

The ultimate concern for the Panel in determining whether a case should be included in an MDL is whether it "is more likely to insure the maximum efficiency for all parties and the judiciary."[43]  As demonstrated above, this action is uniquely centered in the State of West Virginia and would benefit from a remand to the transferor court.

---

[41] One commentator has noted that the Panel's transfer considerations involve "consideration of several related factors, but may also involve a single, compelling, factor."  Herr, *supra* note 25, § 6:3.  Moreover, the interrelatedness of efficiency and convenience in this matter, with respect to West Virginia, is compelling.

[42] *In re Checking Account Overdraft Litig.*, ___ F. Supp. 2d ___, 2011 WL 4889123, at *1 (JPML Oct. 11, 2011) ("we observe that the *Creative Home* parties, as well as parties in subsequently-filed actions, should be able to avail themselves of the discovery already obtained in the MDL under Judge King's supervision . . . In addition, the presiding judge in *Creative Home* likely will find useful guidance in Judge King's many pretrial rulings.  Thus, even absent transfer, many benefits of the MDL are available to expedite resolution of this and other actions.").

[43] *U.S. ex rel. Hockett*, 498 F. Supp. 2d at 38.

## LOCAL RULE 7.1 CERTIFICATE

Pursuant to Local Rule 7.1, I hereby certify that counsel for United Bank (WV) and UBSI conferred with counsel for the Plaintiffs on February 1, 2012 regarding the issues raised in this motion.  The parties were unable to resolve the matters in dispute.

Dated:  February 13, 2012

        Respectfully Submitted,

        __/s/ *Floyd E. Boone Jr.*_____
        Edward D. McDevitt
        Floyd E. Boone Jr.
        BOWLES RICE McDAVID GRAFF & LOVE LLP
        600 Quarrier Street
        Charleston, West Virginia  25301
        Tel:  (304) 347-1100
        Fax:  (304) 347-1756
        emcdevitt@bowlesrice.com
        fboone@bowlesrice.com
        *Counsel for Defendants*
        *United Bank, Inc. and United Bankshares, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2012, the foregoing Motion for Suggestion of Remand and Incorporated Memorandum of Law of United Bank, Inc. and United Bankshares, Inc. was filed and served via the Court's CM/ECF system.

    /s/ *Floyd E. Boone Jr.*_____
Floyd E. Boone Jr.