UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036
_____/

THIS DOCUMENT RELATES TO:

*Dasher v. RBC Bank (USA)*,
S.D. Fla. Case No. 1:10-CV-22190-JLK

*Avery v. RBC Bank*,
E.D. N.C. Case No. 5:10-cv-329

_____/

## DEFENDANT RBC BANK (USA)'S MOTION FOR PROTECTIVE ORDER AS TO MARCH 5, 2012, CORPORATE REPRESENTATIVE DEPOSITION

Pursuant to Federal Rule of Civil Procedure 26(c) and Local Rule 26.1(h), defendant RBC Bank (USA) ("RBC"), moves for a protective order as to the deposition of RBC's corporate representative, which was unilaterally noticed by plaintiffs Michael Dasher and Stephanie Avery ("Plaintiffs") to take place on March 5, 2012.

As Plaintiffs' counsel were informed well prior to service of the unilateral notice, no RBC representative is available due to RBC's imminent acquisition by PNC Financial Services Group, effective March 1, 2012, which has resulted in and will continue to result in the substantial employee repositioning and turnover that inevitably occurs with a large corporate acquisition and concomitant merger of operations. In fact, as Plaintiffs' counsel were also informed well prior to service of the unilateral notice, until the process is completed, RBC will not be able to identify who its corporate representative(s) should be for the deposition. And, even

aside from those insuperable problems, <u>with only **seven days'** notice, Plaintiffs seek to depose an RBC representative on nineteen separate topics **spanning a period of over a decade**</u>. Moreover, the topics listed in *Plaintiffs' Second Amended Notice of Deposition of RBC Bank (USA) Pursuant to Fed. R. Civ. P. 30(b)(6)* ("*Plaintiff's Deposition Notice*"; copy attached as Exhibit **A**) substantially exceed the "limited arbitration-related discovery" authorized by the Court in this particular action.[1] Finally, given the discovery which has occurred pursuant to the Court's ruling permitting "limited arbitration-related discovery," no deposition is necessary to accomplish the Court's purposes in authorizing such discovery, especially in view of the fact that the 90-day period for discovery authorized by the Court expires on March 5, 2012.

Accordingly, for the reasons set forth below, RBC requests a protective order quashing the deposition notice, barring the deposition from taking place, and ordering the parties to proceed with supplemental briefing of *Defendant RBC Bank (USA)'s Renewed Motion to Compel Arbitration and Dismiss or Stay Cases* ["*Renewed Motion to Compel Arbitration*"; DE 1929].

In support of this motion, RBC states as follows:

### I.   INTRODUCTION AND BACKGROUND

Two actions against RBC are pending in this multi-district litigation. *Dasher v. RBC Bank (USA)* (the "*Dasher* Action") was originally filed in the Southern District of Florida on July 2, 2010, under Case No. 1:10-CV-22190-JLK. *Avery v. RBC Bank* (the "*Avery* Action") was originally filed in the Eastern District of North Carolina under Case No. 5:10-cv-329. The *Dasher* Action has been the main vehicle through which the claims against RBC have been addressed in this multi-district proceeding; the *Avery* Action is encompassed by the *Dasher*

---

[1] It is not clear to RBC why the notice is entitled "Second Amended Notice." There is no original "Notice" or "First Amended Notice." The "Second Amended Notice" is the only notice of deposition setting a date and time ever e-mailed to RBC's counsel, although two prior "proposed" notices were e-mailed. Hence, RBC references it as *Plaintiffs' Deposition Notice.*

Action and the actions were functionally consolidated by agreement with Plaintiffs' counsel upon the filing of RBC's *Renewed Motion to Compel Arbitration*.

RBC initially moved to compel arbitration in the *Dasher* Action prior to transfer. [*Dasher* DE 5].[2] That motion was denied after transfer [DE 763] and appealed to the Eleventh Circuit [DE 797]. The *Dasher* Action is assigned to the "Second Tranche," along with actions against several other banks which have moved to compel arbitration. *See Joint Report re List of Cases in Second Tranche*. [DE 1494]. The Court similarly denied arbitration in five other Second Tranche cases – *Buffington v. SunTrust Banks*, Case No. 09-cv-23632, *Barras v. Branch Banking & Trust Co.*, Case No. 10-cv-20813, *Powell-Perry v. Branch Banking & Trust Co.*, Case No. 10-cv-20820, *Givens v. M & T Bank Corp.*, Case No. 10-cv-20478, and *Hough v. Regions Financial Corp.*, Case No. 10-cv-20476 – through its *Order Denying Motions to Compel Arbitration* [DE 447]. As the Court is aware, those banks appealed the ruling and, immediately after the Supreme Court issued *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), the Court's decision was vacated and remanded for reconsideration in light of *Concepcion*. RBC's appeal followed the same track; however, the *Dasher* Action remained in the Eleventh Circuit until a joint motion to remand for reconsideration in light of *Concepcion* was granted. The *Dasher* Action returned to this Court on June 28, 2011. [DE 1670].

The *Avery* Action was filed in North Carolina state court on July 9, 2010, and was removed on August 8, 2010, to the Eastern District of North Carolina. [*Avery* DE 1]. On March 3, 2011, the *Avery* Action was transferred to this Court. [DE 1232]. On June 20, 2011, the Court issued its *Omnibus Order Administratively Closing Member Cases, Requiring Future Filings in*

---

[2] Unless otherwise indicated, "DE" numbers will reflect entries in the docket of MDL 2036. Thus, "*Dasher* DE 1" references the first entry in the *Dasher* Action docket in Case No. 10-CV-22190, while "DE 730" references the 730th entry in the docket for MDL 2036.

*Lead Case* [DE 1640], which included the *Avery* Action within its ambit. *See id*. at 4. That order denied as moot all motions filed under the original case numbers. *See id*. at ¶ 1. On September 12, 2011, the Court issued its *Interim Scheduling Order Re Fifth Tranche Actions* [DE 1861], which assigned the *Avery* Action to the Fifth Tranche. The scheduling order set an October 3, 2011, deadline for banks with actions in the Fifth Tranche to file motions to compel arbitration. *See id*. at 3. Based on the October 3 deadline, RBC's counsel agreed with Plaintiffs' counsel that RBC would file a motion encompassing both actions on that date, thereby putting the *Dasher* Action and the *Avery* Action on the same track. Thus, on October 3, 2011, RBC filed its *Renewed Motion to Compel Arbitration*.

In response to RBC's *Renewed Motion to Compel Arbitration*, Plaintiffs' took two separate tacks. They filed *Plaintiffs' Response in Opposition to Defendant's Renewed Motion to Compel Arbitration and Dismiss or Stay Cases* [DE 2020], attached to which is 7,632-page "Exhibit C." Plaintiffs contend this document constitutes "six years" of "AAA consumer arbitration statistics" which they claim shows "there has not been a single arbitration filed with the AAA against RBC Bank" during that period. *See id*. at 12. Simultaneously, Plaintiffs moved to defer ruling on the *Renewed Motion to Compel Arbitration* to enable them to take "arbitration-related discovery." *See Plaintiffs' Motion to Defer Ruling on RBC Bank (USA)'s Renewed Motion to Compel Arbitration and Dismiss or Stay Cases and Incorporated Memorandum of Law* [DE 2021].

Despite the fact that the Court had denied arbitration-related discovery with respect to the other Second Tranche banks, *see Order Denying Arbitration Related Discovery* [DE 1767], and

over RBC's objection,[3] the Court granted Plaintiffs' motion to defer, and set a 90-day period "for the parties to conduct limited arbitration-related discovery[.]." *Order Deferring Ruling on Motion to Compel Arbitration, Granting Time to Conduct Limited Arbitration-Related Discovery* [DE 2191] at 1.

## II.   THE "ARBITRATION-RELATED DISCOVERY" TO DATE

On December 5, 2011, Plaintiffs "served" (by e-mail) on RBC purportedly arbitration-related interrogatories, requests for production, and requests for admission.[4] By agreement and in large part due to the intervening holiday period, RBC served its responses on January 25, 2012. In those responses, RBC confirmed that none of its customers has sought arbitration with respect to the types of claims raised by Dasher or Avery in their respective complaints, which is consistent with Plaintiffs' 7,632-page exhibit to their opposition to RBC's *Renewed Motion to Compel Arbitration*.[5] RBC also produced responsive documents in addition to its written discovery responses.

On February 8, 2012, Plaintiffs' counsel requested a "meet and confer" with respect to certain of the discovery responses and, for the first time – *i.e.*, 65 days into the 90-day discovery period set by the Court – raised the issue of a Rule 30(b)(6) deposition of an RBC corporate

---

[3] For ease of reference, a copy of *Defendant RBC Bank (USA)'s Opposition to Plaintiffs' Motion to Defer Ruling on RBC (USA)'s Renewed Motion to Compel Arbitration and Dismiss or Stay Cases and Incorporated Memorandum of Law (DE 2021)* [DE 2115] is attached as Exhibit **B**. RBC reiterates its objections to arbitration-related discovery as set fort in that filing.

[4] For some reason, Plaintiffs' counsel took the position that e-mail service was sufficient and expressly stated that they were not serving the requests by regular mail (*i.e.*, properly). Although RBC technically could have ignored the requests because they were not served properly, it did not.

[5] *See generally Defendant RBC Bank (USA)'s Response to Plaintiffs' Arbitration-Related Interrogatories*, *Defendant RBC Bank (USA)'s Response to Plaintiffs' Arbitration-Related Request for Production of Documents*, and *Defendant RBC Bank (USA)'s Response to Plaintiffs' Arbitration-Related Requests for Admissions* (all attached as Composite Exhibit **C**).

representative.[6] On February 13, 2012, Plaintiffs' counsel e-mailed a proposed deposition notice (lacking a date, time, or location) for discussion purposes, listing all but one of the wide-ranging issues reflected on *Plaintiffs' Deposition Notice* attached as Exhibit A.

The "meet and confer" was held by telephone on February 14, 2012. In addition to addressing various issues with the discovery responses, RBC's counsel (i) informed Plaintiffs' counsel that it would not be possible to identify the appropriate corporate representative(s) for the topics identified in the proposed deposition notice (which had been slightly amended by Plaintiffs earlier that day) before mid- to late-March because of the impending PNC-RBC acquisition and (ii) suggested that the solution might be to seek a 90-day extension of the "limited arbitration-related discovery" period.

One week later, on February 22, 2012, Plaintiffs' counsel rejected the proposal of an extension of the discovery period and proposed potential dates for the deposition – all of which were within the March 5 discovery cut-off period. Then, on February 27, 2012, after RBC's counsel had reiterated (on February 24) that the impending PNC-RBC acquisition made it impossible to have the deposition on or before March 5, Plaintiffs unilaterally noticed the deposition for March 5, 2012, in Miami, Florida. *See Plaintiffs' Notice of Deposition* at 1.[7]

### III. THE COURT SHOULD GRANT RBC A PROTECTIVE ORDER AS TO THE UNILATERALLY-NOTICED DEPOSITION

As Plaintiffs' counsel were informed well prior to Plaintiffs' unilaterally noticing the deposition for March 5, RBC is currently being acquired by PNC Financial Services Group; the merger of the two entities into PNC will be effective March 1, 2012. Staffing changes and

---

[6] The communications discussed in this section are reflected in e-mail messages exchanged between counsel or in e-mail messages confirming prior oral communications. If necessary, RBC will file the e-mail exchanges.

[7] Like the discovery requests, the deposition notice was also only served by e-mail.

redeployments are expected to continue through mid- to late-March. Because of the merging of the two organizations and resulting staffing changes, RBC cannot presently identify the proper individuals to represent RBC in a corporate representative capacity at a deposition – and it is literally impossible to do so by March 5. For that reason alone, the Court should grant the protective order requested herein.

Courts have broad discretion over protective orders. *See, e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."). This discretion includes the issuance of protective orders to prohibit a deposition for "good cause," such as "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); *Baratta v. Homeland Housewares, LLC*, 242 F.R.D. 641, 642 (S.D. Fla. 2007). It is well settled that a court may protect a party from whom discovery is sought whenever that party can demonstrate "good cause," and the matter is important enough to prompt the party to take the initiative in seeking protection against abuse. *See, e.g., Herbert v. Lando*, 441 U.S. 153, 177 (1979). A party may establish good cause by providing "a particular and specific demonstration of fact" supporting the need for a protective order. *Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429-30 (M.D. Fla. 2005). The decision to enter a protective order is within the District Court's discretion. *See Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1548 (11th Cir. 1985); *Auto-Owners*, 231 F.R.D. at 429 (M.D. Fla. 2005).

Here, good cause exists, for several reasons. At the most basic level, RBC cannot do the impossible – which is what Plaintiffs demand through their unilateral notice. Due to the PNC acquisition of RBC and ongoing merger of RBC's operations into the PNC organization, RBC cannot even identify the proper corporate representative(s) at this time, much less designate a

representative to appear on RBC behalf at any such deposition. That alone is "good cause" to issue a protective order.

A separate ground for "good cause" is that Plaintiffs' problem is entirely of their own making. Plaintiffs did not even raise the issue of a deposition until 65-days into the 90-day period permitted by the Court for "limited arbitration-related discovery." Consequently, Plaintiffs left only twenty-five calendar days to address any potential complications with a deposition, including resolving issues such as location – as a North Carolina defendant, RBC is entitled to be deposed in North Carolina – or the proper scope of the deposition, which is far beyond anything Plaintiffs are entitled to at this time (if ever). *See infra*, § IV. Indeed, by raising the issue of a deposition so late in the permitted discovery period, Plaintiffs did not allow any time for the Court to be involved in resolving any questions before the end of the discovery period, absent one side or the other seeking relief on an emergency basis.

Third, and particularly significant, Plaintiffs cannot make use of any deposition transcript they obtain from a March 5 deposition. The Federal Rules and Local Rules are clear: Now that RBC has "promptly" moved for a protective order in response to *Plaintiffs' Notice of Deposition*, if Plaintiffs choose to proceed with the unilaterally-scheduled deposition on March 5 over RBC's objection, Plaintiffs cannot use the deposition against RBC because the deposition was not timely noticed. "A deposition <u>must not be used</u> against a party who, having received less than 14 days' notice of the deposition, promptly moved for a protective order under Rule 26(c)(1)(B) requesting that it not be taken or be taken at a different time or place—and this motion was still pending when the deposition was taken." Fed. R. Civ. P. 32(a)(5) (emphasis added). *See also* S.D. Fla. L.R. 26.1(i) (same, but setting only an 11-day limit); S.D. Fla. L.R. App'x A, Discovery Practices Handbook, § II-A(1) (same, with 14-day limit).

Here, Plaintiffs' served their notice on February 27, unilaterally setting the deposition for seven days later. Accordingly, even if Plaintiffs insist on taking the deposition, the Federal Rules, Local Rules of this Court, and Discovery Practices Handbook guiding discovery proceedings in this Court all prohibit Plaintiffs from using any transcript resulting from the deposition.[8] Accordingly, "good cause" exists for this reason also.

Finally, the deposition serves no purpose whatsoever. Even were it relevant to whether Plaintiffs must arbitrate their claims – and RBC submits that *Concepcion* resolves the issue (it is not) – RBC's discovery responses show that RBC's customers have not chosen to arbitrate any claims akin to Dasher's and Avery's that they may have. None of the topics of the deposition can change the fact that Dasher and Avery sued for breach of the Personal Accounts Service Agreement, which contains the arbitration clause governing their claims. They base their claims on the agreement and, accordingly, cannot escape the arbitration provision of that agreement. *See Renewed Motion to Compel Arbitration* at 13-16. Indeed, as discussed below, except for Topic 19, none of the topics has anything to do with Dasher or Avery. Moreover, to the extent that the deposition topics implicate the bases that the Court used to deny the post-*Concepcion* remand arbitration motions filed by other Second Tranche banks, those bases do not apply to RBC's arbitration demand. *See Renewed Motion to Compel Arbitration* at 16-20. Thus, separate "good cause" is established by the fact that taking the deposition will serve no purpose whatsoever, even if Plaintiffs could use the transcript under the applicable Rules (which they cannot).

---

[8] It is for this reason that RBC has not designated this as an "emergency" filing. The Court has evinced a desire that parties not designate filings as "emergency" filings in this MDL proceeding unless an actual emergency exists, and the fact that Plaintiffs may not use any deposition even if the Court does not grant RBC the requested protection prior to March 5 means that no emergency filing is warranted. RBC hopes, however, that the filing of this motion alone dissuades Plaintiffs from insisting on attempting to proceed on March 5.

## IV. EVEN IF THE COURT ALLOWS THE DEPOSITION TO GO FORWARD AT SOME FUTURE DATE, THE TOPICS ON WHICH PLAINTIFFS SEEK TESTIMONY ARE IRRELEVANT AND BEYOND THE SCOPE OF "LIMITED ARBITRATION-RELATED DISCOVERY"

*Plaintiffs' Deposition Notice* reflects that Plaintiffs seek testimony from RBC on nineteen topics that are largely irrelevant to the sole issue properly before the Court at this time: Whether Plaintiffs Dasher and Avery are required by their agreements with RBC to arbitrate their individual claims against RBC. Far from limiting their requests to that issue, Plaintiffs seek to engage in a broad search for information concerning thousands of customers other than Avery or Dasher. Accordingly, in the event the Court declines to bar the deposition entirely, protection should be granted to narrow the areas of questioning significantly.

At issue here are the arbitration agreements between RBC and Avery and RBC and Dasher, not any other customer's arbitration agreement. And, both Dasher and Avery are North Carolina RBC customers, which means that discovery must be limited to transactions in that state. Accordingly, one proper topic for RBC's deposition would be the account statements of Avery or Dasher and Dasher's and Avery's specific interactions with RBC; that is the last topic on Plaintiffs' nineteen-topic list. In contrast, the other topics listed in *Plaintiffs' Deposition Notice* are far from limited to Dasher and Avery. Instead, they reflect an intent to engage in a wide-ranging investigation of RBC's business practices generally, which is wholly improper with respect to the issue before the Court: Whether Dasher and Avery are obligated to arbitrate their disputes with RBC, as both agreed to do in their Personal Accounts Service Agreement.

Instead of addressing the issues properly subject to discovery, Plaintiffs seek deposition testimony on nineteen broad topics, with a purported "relevant time period [of] January 1, 2003 to the present," and in no way limited to North Carolina transactions. *See id*. at 2-3. The topics identified are:

-10-

1. Your policies, practices, and procedures with respect to arbitration of disputes with non-business customers, including without limitation, modifications or changes thereto during the relevant time frame; and your efforts to notify customers of any such changes.

2. Documents provided to, and communications with, your non-business customers – including Plaintiffs and other putative class members – concerning your policies, practices, and procedures regarding arbitration and any modifications thereto.

3. Your decision to adopt an Arbitration Provision in your customer Account Documents, and your efforts to enforce same.

4. Your decision to amend any Predecessor Bank documents to include an Arbitration Provision for disputes with non-business customers.

5. Your efforts to notify existing customers of any Predecessor Bank about your amending any customer agreements, as they existed at the Predecessor Bank prior to your acquisition, to include an Arbitration Provision for disputes with non-business customers.

6. All documents or agreements between a Predecessor Bank and its customers that predated your acquisition of the Predecessor Bank.

7. All Account Documents with customers that RBC Bank implemented at any Predecessor Bank after RBC Bank acquired the Predecessor Bank.

8. Any analysis or evaluation, whether undertaken by you or a third party, relating to: (a) The financial benefits of arbitration of non-business customer disputes; and (b) The circumstances in which arbitration was preferable to other methods of resolving disputes relating to non-business customer accounts.

9. Any studies or other analysis undertaken by you or a third party, concerning the readability of your Arbitration Provision for non-business customers, and non-business customers' ability to understand such an Arbitration Provision.

10. Any analysis or evaluation performed by you or a third party, regarding inconsistencies or variations relating to arbitration contained in any of your Account Documents in effect at a given time, and your efforts to revise all Account Documents so they included a uniform Arbitration Provision.

11. The persons involved in your decision to include an Arbitration Provision in any version of your Account Documents, and their detailed roles in same.

12. Your public statements regarding your arbitration policies and changes to same.

13. All meetings, conference calls, documents, and written or verbal communications with any other bank or issuer of credit cards regarding the arbitration of customer disputes.

14. Your methods of tracking legal expenses for actions where you have used outside counsel to represent RBC Bank in actions in which the dispute between you and a customer is less than $10,000.

  15. All instances in which you sought to collect attorney's fees from a non-business customer – either in arbitration or civil court proceedings.

  16. The nine actions involving consumer accounts instituted since 2008 referenced in response to interrogatory 1 of the arbitration-related interrogatories served in this lawsuit.

  17. Complaints made to RBC Bank by non-business customers concerning overdraft fee related issues.

  18. RBC Bank's policies and procedures for logging non-business customer complaints in a call log or otherwise.

  19. The matters addressed in the two affidavits of Sonia C. Bauer filed as exhibits to RBC's Reply in Support of Defendant RBC Bank (USA)'s Renewed Motion to Compel Arbitration and Dismiss or Stay Cases [DE 2092].

*Plaintiffs' Notice of Deposition* at 3-5. In other words, <u>Plaintiffs seek to depose an RBC representative on seven-days' notice on nineteen topics with respect to an over eleven-year period</u>. And, except for the nineteenth topic, all of these areas of inquiry concern thousands of customers who are <u>not</u> Dasher or Avery or issues irrelevant to whether Dasher and Avery are properly compelled to arbitration; therefore, they are improper topics for arbitration-related discovery. *See, e.g., Jackson v. Cintas Corp.*, 425 F.3d 1313, 1317-18 (11th Cir. 2005) (district court did not abuse its discretion in denying plaintiff's request for discovery concerning whether defendant "selectively required" employees to sign arbitration agreements because it had no relevance as to enforceability of arbitration clause with plaintiff).

  Further, topics directed to why RBC included an arbitration clause in its customer agreement, analysis or evaluation of RBC's arbitration clause, persons involved in deciding to include the arbitration provision, public statements made concerning arbitration provisions, and communications with other banks or issuers of credit cards concerning arbitration, *see, generally*, *Plaintiffs' Deposition Notice*, are not only irrelevant to the question of whether valid arbitration agreements exist between RBC and Dasher and RBC and Avery, they are wholly irrelevant to

whether valid arbitration agreements exist between RBC and any customer – which subject is not properly the subject of discovery at this time.

Finally, comparison of *Plaintiffs' Deposition Notice* with RBC's discovery responses (attached as Exhibit C) shows that Plaintiffs simply served a form notice having nothing to do with RBC *per se* or Dasher's and Avery's claims against RBC. As is clear from RBC's written discovery responses, RBC customers have not sought arbitration of these issues. Indeed, that fact was made clear from the 7,632-page exhibit to Plaintiffs' opposition to RBC's *Renewed Motion to Compel Arbitration*. Of course, RBC submits that *Concepcion* and the Eleventh Circuit's decision in *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011), establish conclusively that whether any RBC customer has sought arbitration is irrelevant to whether Plaintiffs here must arbitrate their claims.[9] But, even if it were relevant, Plaintiffs are not going to learn anything "new" or relevant by taking a deposition of an RBC representative on that or any other issue.

## V.  CONCLUSION

Plaintiffs have taken sufficient "limited arbitration-related discovery" to enable them to supplement their briefing on RBC's *Renewed Motion to Compel Arbitration*. Plaintiffs chose not to agree to seek to extend the period for taking such discovery and instead unilaterally noticed a corporate representative deposition for a date on which it is impossible for RBC to attend. Therefore, the Court should grant the requested protective order, bar the taking of the deposition, and order the parties to file supplemental briefs in support of their positions on arbitration so that

---

[9] While possibly an issue for a different day, RBC notes that the Supreme Court and the Eleventh Circuit have consistently affirmed rulings favoring arbitration and reversed denials of arbitration since *Concepcion* was issued, frequently requiring district courts to re-evaluate denials in light of *Concepcion* and/or *Cruz*. Every day, it becomes more and more clear that Plaintiffs will not be able to prevail on this arbitration issue, at least with respect to RBC.

the Court can decide the issue. In the alternative, if the Court chooses to allow the deposition to take place at some future date, the deposition topics, geographic scope, and time-frame should be dramatically narrowed so that the issues are limited to the "arbitration-related" topics properly subject to discovery by Plaintiffs.[10]

WHEREFORE, defendant RBC Bank (USA) respectfully requests that the Court enter an order (i) quashing *Plaintiffs' Deposition Notice*, (ii) setting a briefing schedule for the parties to submit supplemental briefs on the arbitration issue, and (iii) granting RBC such other and further relief as the Court deems just and proper.

### LOCAL RULE 7.1(A)(3) CERTIFICATION

In accordance with Local Rule 7.1(a)(3), undersigned counsel for the movant certifies that he has conferred with counsel for Plaintiffs in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

---

[10] With respect to the timing of any events resulting from this motion, as undersigned counsel has informed Plaintiffs, counsel, undersigned counsel will be out of the country from March 9 through March 15 and will return to the office on March 18. Accordingly, RBC respectfully requests that any deadlines be established with consideration of that period of counsel's unavailability.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  February 29, 2012. | **AKERMAN SENTERFITT**<br>One S.E. Third Avenue — 25th Floor<br>Miami, FL 33131-1714<br>Tel.: 305-374-5600<br>Fax: 305-374-5095<br><br>By: s/ Christopher S. Carver<br>    CHRISTOPHER S. CARVER, ESQ.<br>    Florida Bar No. 993580<br>    E-mail: christopher.carver@akerman.com<br>    STACY J. HARRISON, ESQ.<br>    Florida Bar No. 44109<br>    E-mail: stacy.harrison@akerman.com<br><br>**AKERMAN SENTERFITT**<br>420 South Orange Avenue<br>Post Office Box 231<br>Orlando, FL  32802-0231<br>Tel.:  407-423-4000<br>Fax:  407-843-6610<br><br>By: s/ Virginia B. Townes<br>    VIRGINIA B. TOWNES, ESQ.<br>    Florida Bar No.  361879<br>    E-mail: virginia.townes@akerman.com<br>    CARRIE ANN WOZNIAK, ESQ.<br>    Florida Bar No. 12666<br>    Email:  carrieann.wozniak@akerman.com<br>    *Attorneys for Defendant RBC Bank (USA)* |

**CERTIFICATE OF SERVICE**

I hereby certify that true and correct copies of *Defendant RBC Bank (USA)'s Motion for Protective Order as to March 5, 2012, Corporate Representative Deposition* were served via transmission of Notices of Electronic Filing generated by CM/ECF on February 29, 2012, on all counsel or parties of record on the Service List below, as well as on all other counsel who have entered appearances in MDL 2036.

                                        s/Christopher S. Carver

## SERVICE LIST

*In re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK
Relating to: *Dasher v. RBC Bank (USA)*, Case No. 1:10-cv-22190-JLK
United States District Court, Southern District of Florida

*Counsel for Plaintiff Michael Dasher*
(service by CM/ECF)

Jeffrey M. Ostrow, Esq.
David L. Ferguson, Esq.
**KOPELOWITZ OSTROW FERGUSON
   WEISELBERG KEECHL**
200 S.W. First Avenue, 12th Floor
Ft. Lauderdale, FL 33301
Tel.: 954-525-4100
Fax: 954-525-4300
E-mail: ostrow@kolawyers.com
E-mail: ferguson@kolawyers.com

Darren T. Kaplan, Esq.
**CHITWOOD HARLEY HARNES, LLP**
1230 Peachtree Street, N.E.
2300 Promenade II
Atlanta, GA 30309
Tel.: 404-873-3900
Fax:  404-876-4476
E-mail: dkaplan@chitwoodlaw.com

*Plaintiffs' Coordinating Counsel*
(service by CM/ECF)

Robert C. Gilbert, Esq.
**GROSSMAN ROTH, P.A.**
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel.: 305-442-8666
Fax: 305-779-9596
E-mail: rcg@grossmanroth.com

*Counsel for Defendant RBC Bank (USA)*
(service by CM/ECF)

Virginia B. Townes, Esq.
Carrie Ann Wozniak, Esq.
**AKERMAN SENTERFITT**
420 South Orange Avenue
Post Office Box 231
Orlando, FL  32802-0231
Tel.:  407-423-4000
Fax:  407-843-6610
E-mail: virginia.townes@akerman.com
E-mail: carrieann.wozniak@akerman.com

Christopher S. Carver, Esq.
Stacy J. Harrison, Esq.
**AKERMAN SENTERFITT**
One S.E. Third Avenue – Suite 2500
Miami, FL 33131-1714
Tel.:  305-374-5600
Fax:  305-374-5095
E-mail: christopher.carver@akerman.com
E-mail: stacy.harrison@akerman.com

*Counsel for Plaintiff Stephanie Avery*

Inez de Ondarza Simmons, Esq.
5 West Hargett Street – Suite 808
Raleigh, NC 27603
E-mail: inezsimmons@inezlaw.com

Richard Croutharmel
303-200 Blake Street – Suite 211
Raleigh, NC 27601
E-mail: rcroutharmel@earthlink.net