# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION,

MDL No. 2036
_____/

THIS DOCUMENT RELATES TO:

*Sachar, et al. v. IBERIABANK Corporation, et al.*
S.D. Fla. Case No. 1:11-CV-22844-JLK
_____/

**DECLARATION OF CAMERON R. AZARI, ESQ., ON IMPLEMENTATION
AND ADEQUACY OF SETTLEMENT NOTICE PROGRAM**

I, CAMERON R. AZARI, ESQ., hereby declare as follows:

1. My name is Cameron R. Azari, Esq. I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2. I am the Director of Legal Notice for Hilsoft Notifications; a firm that specializes in designing, developing, analyzing and implementing large-scale, un-biased, legal notification plans. Hilsoft has been involved with some of the most complex and significant notices and notice programs in recent history.

3. We have been recognized by courts for our testimony as to which method of notification is appropriate for a given case, and we have provided testimony on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances. Hilsoft's CV is included as **Attachment 1**. For example:

a. *Schulte v. Fifth Third Bank*, No. 09-CV-06655, N.D. Ill. (overdraft litigation settlement; individual notification effort reached[1] approximately 89.7% of the class; granted final approval);

b. *Trombley v. National City Bank*, No. 1:10-CV-00232, D.D.C. (overdraft litigation settlement; individual notification effort reached approximately 93.3% of the class; granted final approval);

c. *Mathena v. Webster Bank, N.A.*, No. 3:10-cv-01448, D. Conn. (overdraft litigation; individual notification effort reached approximately 97.6% of the class; settlement; granted final approval);

d. *In re Department of Veterans Affairs (VA) Data Theft Litigation*, MDL 1539, D. D.C. (settlement related to the theft of personal identifying information of 17.5 million veterans, spouses of veterans and military personnel; extensive publication notice effort that reached approximately 80% of the class; granted final approval);

e. *Dolen v. ABN AMRO Bank N.V.*, Nos. 01-L-454 and 01-L-493, Ill. Cir. Ct. (a multi-million dollar settlement related to the marketing of callable C.D.'s; nationwide publication notice effort in newspaper supplements and leading consumer magazines; overall reach was 82%; granted final approval);

f. *In re Trans Union Corp.*, MDL No. 1350, N.D. Ill (settlement related to alleged violations of the Fair Credit Report Act (FCRA) concerning the release of consumers' names for marketing purposes; nationwide notice effort disseminated by print publication, television, Internet banners and radio public service announcements; overall reach was 88%; granted final approval);

g. *Lockwood v. Certegy Check Services, Inc.*, No. 8:07-CV-1434-T-TGW, M.D. Fla. (data theft settlement involving over 37 million consumers; notice effort included individual mailed notice to 5.9 million class members in concert with

---

[1] Reach is defined as the percentage of a class exposed to a notice, net of any duplication among people who may have been exposed more than once. Notice "exposure" is defined as the opportunity to view a notice. The average "frequency" of notice exposure is the average number of times that those reached by a notice would be exposed to a notice.

a nationwide publication effort; overall reach was at least 80%; granted final approval);

3. In this case, *In Re: Checking Account Overdraft Litigation* and *Sachar, et al. v. IBERIABANK Corporation, et al. ("IBERIABANK"),* my colleagues and I were asked to design the Notices (or "Notice") and a Notice Program (or "Notice Plan") to inform Settlement Class Members about their rights under the proposed class action settlement.

4. On November 1, 2011, the Court appointed Hilsoft Notifications as the Notice Administrator and Epiq Class Action and Claims Solutions ("ECA") as the Settlement Administrator. The Court also approved the Notice Plan and the proposed forms of notice. With the Court's approval, and according to the timeline laid out in the Order, we began implementing each element of the Notice Plan.

5. This report will detail the successful implementation of the Notice Program and document the completion of all of the notice activities. The report will also discuss the administration activity to date, with a more complete statistical report to be provided in advance of the April 16, 2012 Fairness Hearing. The facts in this report are based on information provided to me by colleagues from Hilsoft Notifications and ECA.

## SUMMARY OF CONCLUSIONS

6. The Notice Program we designed and implemented achieved each of the planned objectives:

a. Names and direct contact information for the vast majority of Settlement Class Members were identified from IBERIABANK's records. Individual Notice was sent to all identifiable Settlement Class Members.

b. The individual Notice reached approximately 97% of Settlement Class Members.

c. Not reflected in this reach calculation are the additional efforts that were utilized with the publication of a Summary Publication Notice in mainstream newspapers.

d. Each person reached had an opportunity to view a Notice, with plenty of time prior to the Final Fairness Hearing to make appropriate decisions such as whether to object or opt out.

e. The Notices were designed to be noticeable, clear, simple, substantive, and informative. No significant or required information was missing.

f. The program was consistent with other notice programs we have designed and implemented for similar settlements and that have received final approval.

g. The Notice Plan was developed with the active participation of both Settlement Class Counsel and counsel for IBERIABANK.

7. In my view, the Notice Plan was the best notice practicable under the circumstances of this case, and satisfied due process, including its "desire to actually inform" requirement.[2]

8. This report will detail the notice activities undertaken and explain how and why the settlement Notice Plan was comprehensive, well suited to the Settlement Class, and more than adequate to satisfy federal rules and due process obligations.

## NOTICE PLAN IMPLEMENTATION

9. The Order Preliminarily Approving Class Settlement and Certifying Settlement Class ("Order") defines the "Settlement Class" as consisting of "All persons who maintained an IBERIABANK, IBERIABANK *fsb*, Acadiana Bancshares, LBA Savings Bank, Alliance Bank of Baton Rouge, American Horizons Bank of Monroe, Pulaski Investment Corporation, Pulaski Bank and Trust, Pochahontas Bancorp, Inc., First Community Bank, Omni Bank, or Cameron State Bank Account, within the applicable limitations period in the state in which the account incurred fees, or an ANB Financial, Capital South Bank, Century Bank, Orion Bank, or Sterling Bank Account after the date IBERIABANK assumed certain assets of those banks after each failed and the Federal Deposit Insurance Corporation was appointed as receiver, and within the applicable limitations period in the state in which the account incurred fees, who incurred

---

[2] "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

one or more Overdraft Fees as a result of Debit Re-sequencing."[3]  The Settlement Class includes owners and former owners of both personal and business deposit accounts.

10.  I have reviewed the Order and Settlement Agreement and I fully understand the defined terms used in the definition of the Settlement Class.  "Account" means "any consumer checking, demand deposit or savings account maintained by IBERIABANK in the United States that may be accessed by a Debit Card."  "Overdraft Fee" means "any fee assessed to a holder of an Account for items paid when the Account has insufficient funds to cover the item, even if all deposits had been considered available.  Fees charged to transfer balances from other accounts are excluded."  "Debit Card" means "a card, sticker, tag or other device issued or provided by IBERIABANK, including a debit card, check card, or automated teller machine ("ATM") card, that can be used to debit funds from an Account by Point of Sale and ATM transactions."  "Debit Re-sequencing" means IBERIABANK's practice of re-sequencing an Account's Debit Card Transactions from highest to lowest dollar amount, which results in the assessment of additional Overdraft Fees that would not have been assessed if IBERIABANK had used other posting sequences or methods.

11.  IBERIABANK was able to identify names and direct contact information for the vast majority of Settlement Class Members.  I understand that 50,282 account records were provided to ECA and that these records included names and physical mailing addresses.  Of this total, 17,821 records were for current IBERIABANK

---

[3] Excluded from the Class are all current IBERIABANK employees, officers and directors, and the judge presiding over this Action.

customers who receive monthly paper statements by mail. The remaining records were comprised of current IBERIABANK customers who are not sent monthly statements by mail and Settlement Class Members for which the applicable IBERIABANK Account was closed prior to the onset of the Notice Program. IBERIABANK does acknowledge that there was a small subset of potential Settlement Class Members for which records of customer accounts were not readily accessible. These accounts were held with banks that IBERIABANK acquired, or otherwise acquired the assets of, during the Class Period. In total, these accounts represent less than 2% of overall potential Settlement Class Members.

*Individual Notice*

12.     ECA confirms that prior to the initial mailing of the Summary Mailed Notice, postal mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the United States Postal Service ("USPS"), which contains records of all reported permanent moves for the past four years. Subsequently, any addresses that were returned by NCOA as invalid, the addresses were updated through a third-party address search service prior to mailing. In addition, the addresses were certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through the Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

13. On or about January 13, 2012, IBERIABANK sent 17,821 notice packages by USPS First Class Mail to potential Settlement Class Members who received monthly paper statements by mail. Each notice package included a 1-image, 8" x 11" Summary Mailed Notice. The Summary Mailed Notice was folded and inserted at the back of the statement envelope with the headline facing the flap. The outside of the envelope had the prominent call-out "Important Overdraft Settlement Notice Enclosed" printed to alert potential Settlement Class Members that important legal information was included.

14. A copy of the Summary Mailed Notice is included as **Attachment 2**. A copy of the envelope with the call-out is included as **Attachment 3**.

15. On February 3, 2012, ECA sent 33,831 Summary Postcard Notices by USPS First Class Mail to potential Settlement Class members who: (1) received monthly statements electronically and did not receive monthly paper statements by mail; and (2) in which the applicable IBERIABANK Account was closed up to three years ago; and in which the applicable IBERIABANK Account was closed more than three years ago or the Account closed date was unknown. Each notice was a four image 4.25" x 5.5" Summary Postcard Notice.

16. A copy of the Summary Postcard Notice is included as **Attachment 4**.

17. The return address on the Summary Postcard Notice is a post office box maintained by ECA. As of February 24, 2012, ECA has re-mailed _____ Summary Postcard Notices for addresses that were corrected through the USPS. Additionally, an extra search for different addresses using a third-party lookup service, ALLFIND,

maintained by LexisNexis for undeliverable Summary Mailed Notices and Summary Postcard Notices, resulted in mailing and re-mailing of \_\_\_\_\_ Summary Postcard Notices. As of February 24, 2012 only \_\_\_\_\_ mailings remain un-delivered.

18. Considered together, the disseminated Summary Mailed Notice and Summary Postcard Notices are estimated to have reached 97% of the Settlement Class.

19. As of February 24, 2012, ECA has received _____ requests for a copy of the Detailed Notice and Claim Form via the toll free number established for the case. As of February 24, 2012, ECA has mailed _____ notice packets containing the Detailed Notice and the Claim Form in response to these requests.

20. As of February 24, 2012, ECA has received _____ requests for a copy of the Detailed Notice from the return tear-off card of the Summary Postcard Notice returned by potential Class Members to ECA. As of February 24, 2012, ECA has mailed _____ notice packets containing the Detailed Notice and the Claim Form in response to these requests.

21. A copy of the Detailed Notice is included as **Attachment 5**. A copy of the Claim Form is included as **Attachment 6.**

*Publication Notice*

22. According to the Federal Deposit Insurance Corporation, IBERIABANK (FDIC Certificate Number 28100) and IBERIABANK fsb (FDIC Certificate Number

33538) had 136 offices with reported deposits in 6 states as of June 30, 2010.[4] To guide the media selection, IBERIABANK's branch offices were analyzed by county and DMA. DMA or Designated Market Area is a "term used by Nielsen Media Research to identify an exclusive geographic area of counties in which the home market television stations hold a dominance of total hours viewed. There are 210 DMA's in the US."[5]

23. For each DMA with 6 or more IBERIABANK branch offices, an appropriate daily newspaper was selected. The selected newspaper in each DMA was either the highest circulation daily newspaper published in the DMA or a newspaper that was more likely to be read by Settlement Class Members based on the geographic distribution of IBERIABANK branches in the DMA. These 9 DMA's included 111 IBERIABANK branch offices or almost 82% of total branches, averaging over 8 branches per DMA. The remaining 25 IBERIABANK offices outside of these 9 DMA's are located in 10 additional DMA's with an average of only 2 branches per DMA.

24. An approximate fifth-page Summary Publication Notice (approximately 5" x 9") appeared once in a weekday edition in the major daily newspaper in 18 selected media markets covering both the primary city locations of each of the banks acquired by IBERIABANK for which the settling Parties acknowledge that certain of IBERIABANK's records of customer accounts were not readily accessible, and the media markets with the highest number of IBERIABANK branch offices. The 18 total

---

[4] FDIC Summary of Deposits as of June 30, 2010, FDIC Certificate Numbers 28100 and 33538
http://www2.fdic.gov/sod/sodInstBranchRpt.asp?rCert=28100&rYear=2010&barItem=1,
http://www2.fdic.gov/sod/sodInstBranchRpt.asp?rCert=33538&rYear=2010&barItem=1, (Last visited June 2, 2011).
[5] Nielsen Media Research, Glossary of Media Terms, http://www.nielsenmedia.com/glossary/, (Last visited June 2, 2011).

newspapers[6] have a combined average daily circulation of 1,460,356. Positioning was sought in the main news section of each newspaper to enhance readership. The newspaper insertion dates and positioning are indicated below:

### Primary City Location Coverage

| City/State | Newspaper | Issue Date | Page Position |
|---|---|---|---|
| Ruston, LA | Ruston Daily Leader | 2/3/2012 | 3 |
| Baton Rouge, LA | Baton Rouge Advocate | 2/3/2012 | 6A |
| Germantown, TN | Memphis Commercial Appeal | 2/3/2012 | A3 |
| Lake Charles, LA | Lake Charles American Press | 2/3/2012 | A5 |
| Rogers, AR | Morning News | 2/3/2012 | 11A |
| Huntsville, AL | Huntsville Times | 2/3/2012 | A10 |
| Birmingham, AL | Birmingham News | 2/3/2012 | 7A |
| Montgomery, AL | Montgomery Advertiser | 2/3/2012 | 5B |
| Jacksonville, FL | Florida Times-Union | 2/3/2012 | A7 |
| Lantana, FL | Palm Beach Post | 2/3/2012 | 16A |
| Miami, FL (Florida Keys) | Miami Herald | 2/3/2012 | 17A |

### Branch Office Coverage

| DMA | IBERIABANK Offices | Newspaper | City/State | Issue Date | Page Position |
|---|---|---|---|---|---|
| Jonesboro | 14 | Jonesboro Sun | Jonesboro, AR | 2/3/2012 | A5 |
| Little Rock-Pine Bluff | 13 | Arkansas Democrat Gazette | Little Rock, AR | 2/3/2012 | A7 |
| Fort Smith | 8 | Morning News | Rogers, AR | 2/3/2012 | 11A |
| Ft. Myers-Naples | 11 | Ft. Myers News Press | Ft . Myers, FL | 2/3/2012 | B3 |
| Miami-Fort Lauderdale | 6 | Miami Herald | Miami, FL | 2/3/2012 | 17A |
| Tampa-St. Petersburg-Sarasota | 14 | Sarasota Herald Tribune | Sarasota, FL | 2/3/2012 | 3B |
| Lafayette | 21 | Lafayette Daily Advertiser | Lafayette, LA | 2/3/2012 | 7A |
| Monroe-El Dorado | 11 | Monroe News Star | Monroe, LA | 2/3/2012 | 2B |
| New Orleans | 13 | New Orleans Times Picayune | New Orleans, LA | 2/3/2012 | A7 |
| TOTAL | 111 | | | | |

---

[6] Two newspapers appear in both charts (*The Miami Herald* and the *Rogers Morning News*). The Summary Publication notice appeared one time in each paper. The combined average daily circulation of 1,460,356 reflects the single insertion in each of these newspapers.

25.  A copy of the Summary Publication Notice is included as **Attachment 7**.

26.  Providing proof of performance, included as **Attachment 8** is an original copy of each newspaper page on which the Notice appeared.

*Case Website*

27.  The case website, www.IberiabankOverdraftSettlement.com, went live on December 29, 2011 and included complete versions in both English and Spanish. The website address was displayed prominently in all notice documents. By visiting this website, Settlement Class Members can view additional information about the settlement, including: the Detailed Notice, Settlement Agreement, Preliminary Approval Order, Preliminary Approval Order Correction and a list of Frequently Asked Questions. Settlement Class Members can also print out a copy of the Claim Form. As soon as they become available, the Motion for Final Approval, Motion for Attorney's Fees, Costs and Expenses, and Motion for Incentive Award will also be posted [this needs to be confirmed]. The website was made secure using a Secure Socket Layer (SSL) Certificate through Network Solutions, LLC.

28.  As of February 24, 2012, there have been _____ website visitor sessions in which _____ website pages were viewed, which equates to just over _____ pages per visitor session.

29.  Included as **Attachment 9** is a notarized translation certificate, which verifies the accuracy of the Spanish translations.

*Toll Free Number*

30.     On December 29, 2012, the toll free number, set up and hosted by ECA, became operational.  By calling this number, Settlement Class Members can listen in both English and Spanish to answers to frequently asked questions and request a copy of the Detailed Notice and Claim Form.  This automated system is available 24 hours per day, 7 days per week.  As of February 24, 2012, the toll free number has handled _____ calls representing _____ minutes of use.

*Exclusions and Objections*

31.     As of February 24, 2012, ECA has received _____ requests for exclusion from the Settlement Class.  After the March 16, 2012 exclusion request and objection deadline passes, ECA will prepare a complete report of all exclusion requests and objections received prior to the April 16, 2012 Fairness Hearing.

*Claims Filed*

32.     The claims filing deadline is not until April 30, 2012.  As of February ___, 2012, ECA has received a total of ____ Claim Forms.

**PERFORMANCE AND DESIGN OF NOTICE PROGRAM**

33.     ***Objectives were met.***  The primary objective of this settlement notice effort was to effectively reach the greatest practicable number of Settlement Class Members with a "noticeable" Notice of the settlement, and provide them with every

reasonable opportunity to understand that their legal rights were affected, to be heard, and to object or exclude themselves if they so chose. These efforts were successful.

34. ***The Notice reached Settlement Class Members effectively.*** Our calculations indicate that the Summary Mailed Notice reached approximately 97% of the Settlement Class. In my experience, this reach percentage exceeds that achieved in many other court-approved settlement notice programs. I can confidently state that the Settlement Class was adequately reached.

35. ***Plenty of time and opportunity to react to Notices.*** The initial mailing of notices was completed on or about February 3, 2012, which allowed an adequate amount of time for Settlement Class Members to see the Notice and respond accordingly before the March 16, 2012 exclusion and objection deadlines. With approximately 43 days from the completion of the initial Notice mailing until the exclusion and objection deadlines, Settlement Class Members were allotted adequate time to act on their rights.

36. ***Notices were designed to increase noticeability and comprehension.*** Because mailing recipients are accustomed to receiving junk mail that they may be inclined to discard unread, the program called for steps to bring the Notice to the attention of Settlement Class Members. Once people "noticed" the Notices, it was critical that they could understand them. As such, the Notices, as produced, were clearly worded with simple, plain language text to encourage readership and comprehension. The design of the Notices followed the principles embodied in the Federal Judicial Center's illustrative "model" notices posted at www.fjc.gov.

37. The Summary Mailed Notice carried a prominent callout on the front of the envelope in which it was sent ("**Important Overdraft Settlement Notice Enclosed**"). The Summary Mailed Notice featured a prominent headline ("**If you paid overdraft fees related to an IBERIABANK debit card, check card and/or bank card, you could receive a cash payment from a class action settlement.**") in bold text. These design elements alert recipients that the Notice is an important document authorized by a court and that the content may affect them, thereby supplying reasons to read the Notice.

38. We drafted a Detailed Notice that provided more information to Settlement Class Members. The Detailed Notice began with a summary page providing a concise overview of the important information and Settlement Class Members' key options. It contained a prominent focus on the options that Settlement Class Members have, using a straightforward table design, and included details about the settlement, such as who is affected, and their rights. A table of contents, categorized into logical sections, helped to organize the information, while a question and answer format made it easy to find answers to common questions by breaking the information into simple headings and brief paragraphs.

39. Subsequent to the Court's November 1, 2011 Preliminary Approval Order approving the Parties' Revised Settlement Agreement and approving the forms of Notice, the Parties identified approximately 8,000 Settlement Class Members who were entitled to receive Notice but who were not entitled to a distribution from the Settlement Fund. The forms of Notice initially approved by the Court stated that Settlement Class

Members that received mailed Notice would receive an automatic payment from the Settlement Fund if the Settlement is approved and they did not opt out. This portion of the Notice was potentially misleading to Settlement Class Members who may have been in the Settlement Class, but not entitled to an automatic payment. To remedy this, the Parties on January 18, 2012 filed their *Joint Motion for Leave to Amend Previously Approved Class Notices*, requesting permission from the Court to modify the Notices to clarify that Settlement Class Members who receive mailed Notice would get an automatic payment from the Settlement Fund only if they had a Positive Differential Overdraft Fee. Upon approval from the Court, the relevant Notices were changed as needed (except the statement insert Notice provided only to Settlement Class Members that were current IBERIABANK customers receiving mailed monthly paper statements and who had a Positive Differential Overdraft Fee). The Notices included as Attachments to this Declaration reflect the change approved by the Court.

## CONCLUSIONS

40. The notice effort reached approximately 97% of Settlement Class Members through the individual Summary Mailed Notice efforts alone. Many courts have accepted and understood, based on evidence we provided, that a 75 or 80 percent reach is more than adequate under the circumstances of analogous cases. Here we were able to far exceed that. This "reach" indicates that the mailed notice effort was highly successful in providing direct notice to Settlement Class Members.

41.     In preparing the Notices we employed communications methods that are well established in our field, and eschewed the idea of producing old-fashioned, case-captioned, lengthy, legalistic notice documents.

42.     We have provided evidence that the notice effort sufficiently reached the vast majority of Settlement Class Members, and we have prepared notice documents that adequately informed them of the class action, properly described their rights, and clearly conformed to the high standards for modern notice programs.  In designing our notice programs, we truly desire to adequately inform the class, and my colleagues and I designed and implemented a program that effectively accomplished this.

43.     In my expert opinion, the Notice Program comported with Federal Rule of Civil Procedure 23, and also the guidance for effective notice articulated in the FJC's *Manual for Complex Litigation, 4th Edition.*

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

_____

Cameron R. Azari, Esq.

*© 2012 Hilsoft Notification*