# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

---

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:
THIRD TRANCHE ACTIONS**

*Mosser v. TD Bank, N.A.*
E.D. Pa. Case No. 2:10-00731
S.D. Fla. Case No. 10-cv-21386-JLK

*Mazzadra, et al. v. TD Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-21870-JLK

---

### <u>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION</u>

# TABLE OF CONTENTS

**Page(s)**

PRELIMINARY STATEMENT ...........................................................................................1

INTRODUCTION……………………………………………………………...……1

FACTUAL REPLY ...........................................................................................................2

I.   TD Bank's Opposition Confirms that its Standardized Agreements and Other
     Communications with Class Members Uniformly Failed to Adequately Disclose Its
     Posting Order for Electronic Debit Transactions...............................................................2

II.  Class Members' Subjective Expectations and Understandings Concerning How TD Bank
     Posted Transactions Are Irrelevant...................................................................................4

III. Whether or not Class Members Opted in to Discretionary Overdraft Service upon
     Implementation of the Federal Reserve's New Regulations is also Irrelevant...................4

IV.  Contrary to TD Bank's Assertions, the Record Shows that TD Bank Used its High-to-
     Low Posting Order to Maximize its Overdraft Fee Revenue ............................................5

V.   TD Bank's Secret Credit Line Furthered Its Deceptive Scheme........................................6

ARGUMENT ....................................................................................................................6

I.   Plaintiffs Have Established Commonality ........................................................................6

II.  Common Questions Predominate ....................................................................................9

          A.   Common Issues Relating to Plaintiffs' Breach of Contract and Breach of
               the Duty of Good Faith and Fair Dealing Claims Predominate..................9

                    (1)   Individualized evidence is irrelevant because the uniform
                          deposit agreements control the litigation. ............................9

                    (2)   Even if evidence outside of the language of the deposit
                          agreements were required to establish the parties'
                          expectations, common issues still predominate because the
                          parties' expectations are determined by an objective
                          standard ..........................................................................10

          B.   Common Issues Relating to Plaintiffs' Unconscionability Claim
               Predominate. ....................................................................................12

          C.   Common Issues Relating to Plaintiffs' Unjust Enrichment Claim
               Predominate. ....................................................................................13

        D.      Common Issues Related to Plaintiffs' Statutory Unfair and Deceptive Trade Practice Claims Predominate...........................................................15

III.     TD Bank's Affirmative Defenses Do Not Defeat Predominance ......................................17

IV.    Plaintiffs' Other Allegations Do Not Raise Individualized Issues ....................................20

V.     Individual Issues Relating To Causation Do Not Predominate ..........................................21

VI.    No Intra-Class Conflicts Exist ..........................................................................................21

VII.   Plaintiffs' Detailed Trial Plan And State Law Surveys Demonstrate This Case Is Well-Suited For Class Treatment..................................................................................................24

VIII.  Membership In The Class Is Ascertainable .......................................................................33

CONCLUSION...............................................................................................................................35

# TABLE OF AUTHORITIES

PAGE(S)

## Federal Cases

*Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 326-7 (5th Cir. 1978)...……………………………21

*Allapattah Servs.*, 333 F.3d 1248, 1261 (11th Cir. 2003)……………………………………………...…18

*Allen v. Holiday Universal, et al.*, 249 F.R.D. 166, 192 (E.D. Pa. 2008)………………………………15

*Amirsaleh v. Board of Trade of City of New York, Inc.*, 27 A.3d 522, 529-30 (Del. 2011)………..…..18

*Andrews v. Am. Tel. & Tel.*, 95 F.3d 1014, 1024 (11th Cir. 1996)……………………………………33

*In re Avon Securities*, 1998 U.S. Dist. LEXIS 18642, *35 (S.D.N.Y. Nov. 19, 1998)…………………11

*Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010)……………………………………...…12

*Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592, 604 (E.D. La. 2002)……………………………30

*Bennett v. ITT Hartford Group*, 846 A.2d 560, 564 (N.H. 2004)………………………………………27

*Blackie v. Barrack*, 524 F.2d 891, 908-910 (9th Cir.1975)………………….…………………………22

*Brooks v. Norwest Corp.*, 103 P.3d 39, 52 (N.M. 2004)……………………………………………………12

*Carbajal v. Capital One F.S.B.*, 219 F.R.D. 437, 441 n.2 (N.D. Ill. 2004)……………………...…..18

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)…………………………………31

*Castillo v. Roche Labs., Inc.*, No. 10-20876-CIV, 2010 U.S. Dist. LEXIS 87681, at *5 (S.D. Fla. Aug. 2, 2010)……………………………………………………………………………………………………...…17

*Cendant Corp. Litigation*, 182 F.R.D. 476, 479 (D.N.J. 1998)…………………………………………23

*Centronics Corp. v. Genicom Corp.*, 562 A.2d 187, 193-94 (N.H. 1989)………………………………27

*Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 274 F.R.D. 286, 290 (N.D. Cal. 2011)…………10

*Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 311 (5th Cir. 1998)……………………………………30

*City of Camden v. Green*, 25 A. 357, 357 (N.J. 1892)……………………………………………...…19

*City of Key W. v. Florida Keys Cmty. Coll.*, 3D11-417, 2012 WL 126858 (Fla. 3d DCA Jan. 18, 2012)..19

*Clancy v. King*, 954 A.2d 1092, 1108 (Md. 2008)……………………………………………………...…10

*E.D. Clough & Co. v. Boston & M.R.R.*, 90 A. 863, 876 (N.H. 1913)…………………………………..19

*Collins v. Covert*, 98 S.E.2d 26, 29 (N.C. 1957)…………………………………………………………19

*Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671, 679 (S.D. Fla. 2007)………………………………..22

*Com. v. Lucarelli*, 971 A.2d 1173, 1179 (Pa. 2009)……………………………………………………..19

*Compass Bank v. Snow*, 823 So. 2d 667, 677 (Ala. 2001)………………………………………………12

*County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010)……………....………14

*Dannley v. Murray*, No. CIV.A. 5383, 1980 WL 268061 (Del. Ch. July 3, 1980)……………………18

*Degirmenci v. Sapphire – Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1347 (S.D. Fla. 2010)…………………………………………………………………………………………………....13

*De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 288 (Conn. 2004)………………27

*DeSilvio v. Restaure*, 400 A.2d 211, 213 (Pa. Super. Ct. 1979)…………………………………………18

*Deutsche Credit Corp. v. Peninger*, 603 So.2d 57, 59 (Fla. 5th DCA 1992)……………………………18

*Dienese v. McKenzie Check Advance of Wis. L.L.C.*, 2000 U.S. Dist LEXIS 20389, at \*13-14 (E.D. Wis. Dec. 11, 2000)……………………………………………………………………………………………..12

*Dodson v. Newport News Shipbuilding & Dry Dock Co.*, No. 0278-99-1, 1999 WL 1133301 (Va. Ct. App. Aug. 10, 1999)……………………………………………………………………………………………19

*Dua v. Comcast Cable of Maryland, Inc.*, 805 A.2d 1061 (Md. 2002)……………………………………19

*Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005)

*Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008)…………………………………20

*Englade v. HarperCollins Publishers*, 289 AD.2d 159, 159-60  (App. Div. 1st Dep't 2001)…………...11

*Eagle Maint. Services, Inc. v. Dist. of Columbia Contract Appeals Bd.*, 893 A.2d 569 (D.C. 2006)……19

*Fairbanks v. Mann*, 34 A. 1112, 1113 (R.I. 1896)………………………………………………………...19

*In re: FedEx Ground Package Sys., Empl. Practices Litig.*, 273 F.R.D. 424, 461 (N.E. Ind. 2008)……………………………………………………………………………………………………....11

*Fish King Enterprises v. Countrywide Ins. Co.*, 930 N.Y.S.2d 256, 259 (N.Y. App. Div. 2011)………18

*Flores v. Shapiro & Kreisman,* 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002)………………………………33

*Johnson v. Geico Gen. Ins. Co.*, 673 F. Supp. 2d 255, 275-76 (D. Del. 2009)…………………………11

*Gibbs Properties v. Cigna*, 196 F.R.D. 430, 441 (M.D. Fla. 2000)………………………………………11

*Grey v. Hearst Communications, Inc.*, No. 10-1302, 2011 U.S. App. LEXIS 17890, *10 (4th Cir. Aug. 25, 2011)..................................................................................................................................11

*Gutierrez v. Wells Fargo Bank, N.A.*, No. C07-05923 WHA, 2010 WL 1233810, *13 (N.D. Cal. Mar. 26, 2010); ................................................................................................................................20

*Harsch Props., Inc. v. Nicholas*, 932 A.2d 1045, 1051 (Vt. 2007)..........................................27

*Hardaway v. S. Ry. Co.*, 73 S.E. 1020, 1025 (S.C. 1912)........................................................19

*Hartford Underwriters Ins. Co. v. Phoebus*, 979 A.2d 299, 310 (Md. Ct. Spec. App. 2009)..............18

*Hayes v. Oakridge Home*, 908 N.E.2d 408, 420-21 (Ohio 2009)..........................................28

*In re Healthsouth Corp.*, 213 F.R.D. 447, 464-465 (N.D. Ala. 2003).......................................33

*James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011)..................................................................................................................................14

*Iberia Credit Bureau*, 2011 U.S. Dist. LEXIS 131607, *22-23 (W.D. La. Nov. 9, 2011)..................33

*In re Initial Public Offerings Securities Litig.*, 471 F.3d 24, 39-40 (2d Cir. 2006)...........................20

*N. Jackson Pharm., Inc. v. Express Scripts, Inc.*, 2006 U.S. Dist. LEXIS 98774, at *18-20 (N.D. Ala. Mar. 3, 2006)...............................................................................................................35

*Jermyn v. Best Buy Stores, L.P.*, No. 08-214, 2011 U.S. Dist. LEXIS 104449, at *10 (S.D.N.Y. Sept. 15, 2011) ................................................................................................................................7

*Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548-49 (11th Cir. 1996)............................................9

*King v. James*, 694 S.E.2d 35, 43 (S.C.App. 2010)................................................................19

*Klay v. Humana, Inc.*, 382 F.3d 1241, 1257 (11th Cir. 2004).................................................14

*Kpade v. Emmanuel*, 261 F.R.D. 687, 692 (S.D. Fla. 2009)....................................................30

*Kraul v. Maine Bonding & Cas. Co.*, 559 A.2d 338, 338-39 (Me. 1989)....................................18

*Larsen v. Union Bank,* 275 F.R.D. 666, 673-74 (S.D. Fla. 2001..............................................8

*Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (N.J. 2006).....................................................16

*Leiber v. Arboretum Joint Venture, LLC*, 702 S.E.2d 805, 812 (N.C. Ct. App. 2010)......................18

*Liptrap v. Coyne*, 675 S.E.2d 693, 696 (N.C. Ct. App. 2009)............................................18, 19

*Marcus, v. B.M.W. North America, LLC*, No. 08-5859, 2010 U.S. Dist. LEXIS 122908, *41-42 (D.N.J. Nov. 19, 2010)...............................................................................................................11

*Margolis v. St. Paul Fire & Marine Ins. Co.*, 125 A.2d 768, 771 (N.H. 1956)..............................18

*In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 119 (D.N.J. 2010)……………………28

*In re Metlife Demutualization Litigation*, 229 F.R.D 369, 377 (S.D.N.Y. 2005)…………………………22

*Mid-Continent Cas. Co. v. Active Drywall S., Inc.*,765 F. Supp. 2d 1360, 1362 (S.D. Fla. 2011)………17

*Miller v. Optimum Choice, Inc.*, No. DKC 2003-3653, 2006 WL 2130640, *7 (D. Md. July 28, 2006)……………………………………………………………………………..………20

*Morris v. City of New Haven*, 63 A. 123, 124 (Conn. 1906)……………………………………………19

*Morrissey v Nextel Partners, Inc.* 72 A.D.3d 209 (N.Y. App Div 2010)…………………………..………16

*Neely v. Love*, 142 S.E. 623, 642 (S.C. 1928)………………………………………………………..18

*Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689 (S.D. Fla. 2010)………………………………35

*New York State Medical Transporters Ass'n, Inc. v. Perales*, 566 N.E.2d 134, 137 (N.Y. 1990)………..18

*Norton v. Marden*, 15 Me. 45, 45 (Me. 1838)……………………………………………………………19

*Oakley v. Verizon Communications, Inc.*, No. 09-9175, 2012 U.S. Dist. LEXIS 12975, *38 (S.D.N.Y. Feb. 1, 2012) ……………………………………………………………………………………………7

*Oaks v. Connors*, 660 A.2d 423, 426 (Md. 1995)……………………………………………………18

*O'Malley v. Dep't of Energy*, 537 A.2d 647, 651 (N.J. 1987)…………………………………………19

*Page v. Suraci*, 483 A.2d 601, 603 (Vt. 1984) ………………………………………………..18

*Payne v. Fujifilm U.S.A., Inc.*, 2007 U.S. Dist. LEXIS 94765, at *34 (D.N.J. Dec. 28, 2007)………….27

*Peebles v. City of Pittsburgh*, 101 Pa. 304, 304 (Pa. 1882)…………………………………………19

*Petrolito v. Arrow Fin. Servs., LLC*, 221 F.R.D. 303, 315 (D. Conn. 2004)………………………..…16

*Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000)…………………………..22

*Pippert v.Niece,* 518 F. Supp. 2d 1265, 1273 (D. Ore. 2007)……………………………………..…10

*Post v. Killington* No. 07-252, 2008 U.S. Dist. LEXIS 92495, *5-6 (D. Vt. Oct. 14, 2008)……………………………………………..…………………………………...………....10

*Powers v. Gov't Employees Ins. Co.* 192 F.R.D. 313, 318-19 (S.D. Fla. 1998)…………………………25

*Priest v. Zayre Corp.,* 118 F.R.D. 552, 556 (D. Mass. 1988)…………………………………………33

*Pujals ex. Re. El Rey De Los Habanos, Inc. v. Garcia*, No. 10-22990-CIV, 2011 WL 1134989, at *6 (S.D. Fla. Mar. 28, 2011)…………………………………………………………………………...17

*Robin Drug Co. v. Pharmacare Mgmt. Servs., Inc.*, No. Civ. 033397, 2004 WL 1088330, at *5 (D. Minn. May 13, 2004))..................................................................................................................................20

*Roy v. Metropolitan Property and Cas. Ins. Co.*, 909 A.2d 980, 982 (Conn. App. Ct. 2006...............18

*Rudick v. Rudick*, 403 So. 2d 1091, 1093-94 (Fla. 3d DCA 1981)...........................................18

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010).................................................................................................................................12

*Seidenberg v. Summit Bank*, 791 A.2d 1068, 1077 (N.J. Super. Ct. App. Div. 2002). .............................11

*Shelley v. AmSouth Bank*, No. CIV.A.97-1170-RV-C, 2000 WL 1121778, *11(S.D. Ala. June 24, 2000)19

*Simon v. Phillip Morris,* 124 F. Supp. 2d 46, 77 (E.D.N.Y. 2000).....................................................25

*Smilow v. Southwestern Bell Mobile, Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)............................20

*Smith v. Mountjoy*, 694 S.E.2d 598, 603 (Va. 2010)....................................................................18

*Stockbridge v. Gemini Air Cargo, Inc.*, 611 S.E.2d 600, 605 (Va. 2005)........................................19

*Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 353 (D. Ariz. 2009)...........................................12

*In re Terazoxin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004)..................14

*Tidewater Realty, LLC v. State, Providence Plantations*, 942 A.2d 986, 995 (R.I. 2008)...............19

*E. Devoe Tompkins, Inc., v. City of Bridgeport*, 123 A. 135, 137 (Conn. 1923)............................18

*Torrest v. TPUSA, Inc.*, No. 2:08-cv-618-FtM-29DNF, 2009 U.S. Dist. LEXIS 22033, at *3-*5 (M.D. Fla. March 19, 2009)............................................................................................................17

*Travelers Indem. Co. of Illinois v. United Food & Commercial Workers Intern. Union*, 770 A.2d 978, 992 (D.C. 2001).................................................................................................................................18

*Jacob Trinley & Sons v. Golter*, 41 A.2d 243 (N.H. 1945)....................................................18

*UST Corp. v. General Road Trucking Corp.*, 783 A.2d 931, 939 (R.I. 2001)................................18

*Valley Drug C. v. Geneva Pharmaceuticals, Inc.,* 350 F.3d 1181, 1189 (11th Cir. 2003)............22

*Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009)....................................................14

*In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001)........................20

*W. Natural Gas Co. v. Cities Serv. Gas Co.*, 201 A.2d 164 (Del. 1964)......................................19

*Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S.Ct. 2541 (2011) ..............................................6

*Walsh v. Northrop-Grumman Corp.*, 162 F.R.D. 440, 447 (E.D.N.Y. 1995)……………………………..22

*Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010)……………………………22

*Waterbury Feed Company, LLC v. O'Neil*; 915 A.2d 759, 762 (Vt. 2006)………………………………19

*Weiler v. SmithKline Beecham Corp.,* 2001 WL 1807382, 53 Pa. D. & C.4th 449, 452-55 (Pa.Com.Pl. 2001)….……………………………………………………………………………………31

*Weinberg v. Sun Co., Inc.*, 777 A.2d 442 (Pa. 2001)……………………………………..………15

*Wilkins v. Waldo Lumber Co.*, 153 A. 191, 193 (Me. 1931)……………………………………...18

*Wilson v. Alexander*, 139 Vt. 279, 428 A.2d 1089 (Vt. 1981)……………………………………19

*Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2011) ...........................................11

*Wittlin v. Giacalone*, 171 F.2d 147, 148 (D.C. Cir. 1949)……………………………………...18

*In Re: World Famous, Inc., v. Keybank National Assoc.,* No. 04-61005, 2004 Bankr. LEXIS 1045,*10 (Bankr. D. Or. June 21, 2004)….……………………………………………………………..…..10

## Authorities

Willitson on Contracts
Restatement (Second) Contracts § 211(2)...……………………………………………………10
73 Pa. Stat. Ann. § 201-9.2 ...……………………………………………………………………15
American Law Institute, *Principles of the Law:  Aggregate Litigation* § 2.05(b) (2010) ...………25
Manual For Complex Litigation (Fourth), § 21.222 ...……………………………………...34

## PRELIMINARY STATEMENT

Upon review of Defendant T.D. Bank's Opposition to Plaintiffs' Motion for Class Certification (the "Opposition" or "Opp."), Plaintiffs wish to clarify their proposed class definition.  Specifically, Plaintiffs move for certification of the following Class:

> All customers of T.D. Bank, N.A. ("TD Bank") in the United States who had one or more consumer accounts and who, from the applicable statutes of limitation through August 13, 2010, (the "Class Period"), incurred an overdraft fee as a result of TD Bank's practice of sequencing debit card transactions from highest to lowest.

> Excluded from the Class are TD Bank; its parents, subsidiaries, affiliates, officers and directors; any entity in which TD Bank has a controlling interest; all customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

This proposed revised Class definition is consistent with the class definitions proposed in the other motions for class certification filed in the other Third Tranche and Fourth Tranche actions and is included in a Proposed Order submitted concurrently herewith.

## INTRODUCTION

TD Bank's Opposition is predicated on a stunning misreading of the applicable law, a misapprehension of class-certification standards, and misapplication of the salient, common evidence that Plaintiffs will employ to prove their claims.  More specifically, the crux of TD Bank's argument, underpinning virtually every section of its Opposition, is that resolution of Plaintiffs' claims will require examination of each Plaintiff's individual and subjective expectations.  On this point, TD Bank is simply wrong, and, as a result, its arguments opposing certification necessarily fail.  Indeed, this Court rejected many of TD Bank's arguments in its order certifying a class of consumers asserting similar claims against Union Bank[1].  TD does not offer a single reason why the outcome here should be any different.

---

[1] TD Bank concedes that Plaintiffs have satisfied several of Rule 23's prerequisites, namely numerosity, typicality and adequacy of counsel as none of these requirements are discussed in TD Bank's Opposition. As Plaintiffs demonstrated in their opening Motion, all of Rule 23's requirements have been met, including numerosity, typicality and adequacy of counsel.

- 1 -

FACTUAL REPLY

**I.    TD BANK'S OPPOSITION CONFIRMS THAT ITS STANDARDIZED AGREEMENTS AND OTHER COMMUNICATIONS WITH CLASS MEMBERS UNIFORMLY FAILED TO ADEQUATELY DISCLOSE ITS POSTING ORDER FOR ELECTRONIC DEBIT TRANSACTIONS**

TD Bank's Opposition confirms that it used only four versions of its Personal Deposit Account Agreements ("PDAAs") during the entire Class Period.  *See* Opp. at 2-3; Declaration of Matthew Chevalier, dated January 27, 2012 ("Chevalier Decl."), at ¶ 20.  TD Bank's Opposition also confirms that these PDAAs were uniformly vague and misleading with regard to the order in which the Bank posted electronic debit transactions throughout the Class Period.

In this regard, although TD Bank suggests that, prior to January 2007, it used a PDAA "that did not distinguish between checks and electronic debits" *see* Opp. at 2, in reality, the only provision in TD Bank's PDAAs at this time alluding to the posting order employed by TD Bank spoke only of checks, made no mention of electronic debits whatsoever and did not even specify the posting order TD Bank employed for processing checks.[2]

The next version of TD Bank's PDAA, which TD Bank started using in January 2007, was equally vague with regard to the order in which TD Bank posted transactions to its customers' accounts.  Similar to the prior version of the PDAA, this version stated that "[m]ethods available to the Bank for processing checks and other items for payment include, but are not limited to, by dollar amount from highest to lowest, by number or by date."  Opp. at 2; Chevalier Decl., at ¶ 20, Ex. E at MDL-TD-0004400.  This version of the PDAA also stated that "we typically process checks and other items from the highest to lowest dollar amount" and that "[w]e do not process transactions in the order in which they occurred."  Chevalier Decl. at MDL-TD-0004401.  This PDAA also failed to specify a posting order for electronic debits, as it did not indicate which items other than checks TD Bank "typically" posted in high-to-low order.  Moreover, as noted in Plaintiffs' moving papers, any suggestion that TD Bank "typically" posted electronic debits is misleading on its face, as TD Bank has conceded that the posting order for

---

[2] Declaration of JoAnn Leon, dated Jan. 25, 2012 ("Leon Decl."), at ¶ 10, Ex. C at MDL-TD-0009188 ("**Payment of Checks:** Incoming checks received each day are processed in any order convenient to the Bank using criteria deemed appropriate by the Bank.  Methods available to the Bank for processing checks for payment include, but are not limited to, by dollar amount of the item from highest to lowest, by item number or by item date.").

such transactions "is always highest to lowest."  *See* Plaintiffs' Motion for Class Certification and Incorporated Memorandum of Law ("Motion" or "Mot.") at 14.

The subsequent version of the PDAA, which TD Bank began to use in June 2009, was similarly misleading.  This version of the PDAA deleted the language purporting to "typically process checks and other items from the highest to lowest dollar amount" but retained the language indicating that "[m]ethods available to the Bank for processing checks and other items for payment include, but are not limited to, by dollar amount from highest to lowest, by number or by date."  Opp. at 2; Chevalier Decl., ¶ 20, Ex. I at MDL-TD0004616-17.  In essence, the PDAA reverted to a form that did not attempt to specify any posting order at all.

The fourth and final version of the PDAA used by TD Bank during the Class Period was also deceptive.  This version, similar to all prior versions of the PDAA utilized by TD Bank during the Class Period, deleted the language stating that "[w]e do not process transactions in the order in which they occurred" but retained the language stating that "[m]ethods available to the Bank for processing checks and other items for payment include, but are not limited to, by dollar amount from highest to lowest, by number or by date."  Opp. at 3; Chevalier Decl., ¶ 20, Ex. J at MDL-TD-0004640.[3]  Thus, each of TD Bank's PDAAs was vague and concealed the posting order it applied to electronic debit transactions.

Despite its assertions to the contrary, TD Bank's other written communications with its customers also failed to clarify the posting order it applied to  electronic debit transactions.  Instead, these communications merely cross-referenced or incorporated the PDAA's vague and ambiguous references to "available" posting orders, providing further evidence that TD Bank's communications with its customers uniformly failed to adequately disclose the posting order it applied to electronic debit transactions.[4]

---

[3] TD Bank's most recent PDAA, which was not utilized until March of 2011, well after the end of the Class Period, is irrelevant.

[4] Opp. at 2 (citing Chevalier Decl. ¶ 18, Ex. D at MDL-TD-0004771) ("We reserve the right to modify this order at any time.  Please see the Personal Deposit Account Agreement for details."); 3-4 (citing Chevalier Decl., ¶ 14 (describing "Reference Guide" sent to legacy Commerce Bank customers (Chevalier Decl., Ex. A))( accompanied by PDAA stating that "[m]ethods available to the Bank for processing checks and other items for payment include, but are not limited to, by dollar amount from highest to lowest, by number or by date." (Chevalier Decl., Ex. B)).

TD Bank suggests that its customers engaged in discussions with its representatives on the subjects of overdraft fees and posting order.  Opp. at 4 (citing notes written by TD Bank employees indicating that they "educated" or "explained" posting TD Bank's posting order and/or overdraft fee policies).  However, TD Bank fails to present any evidence indicating that its representatives adequately explained its overdraft fee policies or posting order it applied to electronic debit transactions.  *Id.*  Indeed, as Plaintiffs noted in their moving papers, the evidence shows that not even TD Bank's employees understood TD Bank's overdraft policies.  Mot. at 21.

In sum, TD Bank's Opposition confirms that it never adequately disclosed the order in which it posted electronic debit transactions.  Instead, TD Bank masked its posting order by alluding to several "available" posting orders it might use in both its PDAAs and other written communications disseminated to its customers.  Moreover, TD Bank has not submitted any evidence that its representatives disclosed its actual posting order to its customers.

## II.  CLASS MEMBERS' SUBJECTIVE EXPECTATIONS AND UNDERSTANDINGS CONCERNING HOW TD BANK POSTED TRANSACTIONS ARE IRRELEVANT

As this Court has already held, "expectations are entirely immaterial.  Controlling in this litigation is what the parties agreed to in their contracts.  Not whether Plaintiff expected to get a free account or a pair of dishes when they signed on the dotted line."  Opinion Setting Standards For Resolution of Discovery Interrogatories and Production of Documents ("Order Setting Standards") [D.E. 1016] at 11.  As discussed below, the Court's conclusion is well-supported by the relevant legal authority.

## III.  WHETHER OR NOT CLASS MEMBERS OPTED IN TO DISCRETIONARY OVERDRAFT SERVICE UPON IMPLEMENTATION OF THE FEDERAL RESERVE'S NEW REGULATIONS IS ALSO IRRELEVANT

Plaintiffs move for certification of a Class of consumers who incurred overdraft fees as a result of TD Bank's practice of sequencing electronic debit transactions from highest to lowest prior to August 13, 2010, when the Federal Reserve's regulations requiring banks to employ "opt-in" discretionary overdraft service became effective.  Accordingly, whether or not Plaintiffs or Class members opted in to this service offered by TD Bank is irrelevant to class certification. If it is relevant at all, it merely shows that TD Bank had the ability to utilize such an "opt-in" discretionary overdraft service but, to the detriment of Class members, it refused to adopt such a service until it was forced to do so by the Federal Reserve.

- 4 -

IV.   **CONTRARY TO TD BANK'S ASSERTIONS, THE RECORD SHOWS THAT TD BANK USED ITS HIGH-TO-LOW POSTING ORDER TO MAXIMIZE ITS OVERDRAFT FEE REVENUE**

TD Bank's suggestion that there is no evidence that it adopted a posting order that maximized overdraft fee revenue, Opp. at 5, is disingenuous at best.  This assertion is predicated entirely on TD Bank's claim that its posting order is substantially closer to the posting order that generates the least number of overdrafts than the posting order that generates the most possible overdrafts. Opp. at 5-6. (*citing* Declaration of Steven Visser, dated January 27, 2012 ("Visser Decl."), Ex. 4).  However, this contention is based entirely on Mr. Visser's retrospective application of these posting orders to past transactions executed by the named Plaintiffs, which fails to take into account how many customers TD Bank could have retained if it had utilized the posting order that generates the most possible overdrafts and whether that method, if properly disclosed to consumers, would in fact generate the maximum number of overdraft fees.  In reality, the record shows that TD Bank utilized overdraft fee policies that it believed would increase overdraft fees to the fullest extent possible given the size of its customer base.  *See, e.g.*, TD000033973-33985, at 33976 (detailing how the implementation of Project MORE increased overdraft fee revenue from 45 cents per account per business day to 63.5 cents per account per business day -- just 3 cents shy of the industry average -- and noting that "[t]he size of the TD footprint prevents us from growing significantly beyond the average"), relevant pages attached hereto as Ex. "A."

TD Bank's assertion that any alternative posting order that sought to approximate chronological posting of customer transactions would have increased overdraft fees for many customers, Opp. at 6, is equally baseless. In support of its position, TD Bank offers several purported alternative chronological posting orders in the declaration of Mr. Visser.  *See* Visser Decl. at 5-7.  However, TD Bank ignores Mr. Visser's analysis of the "Scenario 2A" posting order, which Judge Alsup adopted as the proper posting order in Gutierrez and which posts certain debits in chronological order.  That analysis shows that every Plaintiff fared better under Scenario 2A than under TD Bank's high-to-low posting order.  Moreover, each of the other alternative chronological posting orders Mr. Visser analyzed are patently unreasonable and manipulated to disfavor Class members by posting all checks in "buckets" ahead of the "buckets" for all debit card transactions on a given day based on the dates written on the checks

(which are nearly always prior to the date of debit card transactions posted on the same day) as opposed to the dates when the checks were posted to Class members' accounts. *See id.* at 5-7, 10; Transcript of Deposition of Steven Visser, dated February 16, 2012 ("Visser Depo."), at 211:14-214:3, attached hereto as Exhibit "B."  As Mr. Visser readily acknowledged at his deposition, he used the dates on Class members' checks even though he could not independently verify their accuracy, *id.* at 221:24-222:11; 223:20-225:11, and despite the fact that accurate posting dates are maintained in TD Bank's computer systems, *id.* at 220:23-221:4, and could be used to sequence checks "in a programmatic fashion." *Id.* at 212:16-213:5.  Moreover, none of Mr. Visser's purported alternative chronological posting orders take into account checks dated and posted on the same day as prior debit card transactions. *Id.* at 227:15-229:14.  As each of the purported alternative chronological posting orders proposed by Mr. Visser suffers from fundamental flaws that disfavor Class members, they prove nothing about how Class members would have fared under a *fair* chronological posting order.  If they are relevant at all, they merely confirm that, given a particular posting order, both Plaintiffs' expert and TD Bank's expert are capable of analyzing the impact of those posting orders on Class members on a programmatic basis.

## V.   TD BANK'S SECRET CREDIT LINE FURTHERED ITS DECEPTIVE SCHEME

Although TD Bank claims that Plaintiffs have not alleged that the secret credit line it applied to its customers' accounts (dubbed "OD Points") caused class members harm, Opp. at 6-7, it has not offered any valid reason for keeping this line of credit a secret.  In reality, the only purpose of this secret line of credit was to maximize the impact of its re-sequencing scheme by increasing the number of debit transactions authorized and, therefore, the number of overdrafts. *See* Mot. at 10.  Accordingly, TD Bank's failure to disclose the process it used to determine the amount of each customer's line of credit and authorized transactions that would overdraft accounts was an integral part of its deceptive scheme.

## ARGUMENT

## I.   PLAINTIFFS HAVE ESTABLISHED COMMONALITY

TD Bank argues that Plaintiffs have failed to satisfy the commonality requirement of Rule 23(a)(2) as described in *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S.Ct. 2541 (2011). Opp. at 7-10.  TD Bank first accuses Plaintiffs of misrepresenting the commonality standard

because Plaintiffs did not cite *Dukes* in their Motion, and further argues that the common questions of fact and law offered by Plaintiffs here are like the questions rejected as being insufficient in *Dukes*.  Opp. at 8-9.  TD Bank's arguments should be rejected.  Although the Supreme Court in *Dukes* did clarify the commonality standard, the facts and claims at issue  in *Dukes* are nothing like those at issue in this case..  And unlike the questions presented by the *Dukes* plaintiffs as being common, the common questions presented by Plaintiffs here are based on a systematic course of conduct by TD Bank and also "drive the litigation."  *Dukes*, 131 S.Ct. at 2551 (resolution of the common question must "drive the resolution of the litigation").

The plaintiffs in *Dukes* brought a Title VII employment discrimination case on behalf of the defendant's female employees and moved to certify a class under Rule 23(b)(2).  The Court concluded that the plaintiffs failed to satisfy the threshold commonality requirement.  Specifically, "[t]he Supreme Court held that [] a 'common contention' was lacking … because the basis for liability – the 'glue' holding all of the individual class member's claims together – was not merely disfavor in pay and promotion, but the *reason why* each class member was disfavored."  *Jermyn v. Best Buy Stores, L.P.*, No. 08-214, 2011 U.S. Dist. LEXIS 104449, at *10 (S.D.N.Y. Sept. 15, 2011).  In other words, the ability of all class members to recover in *Dukes* was dependent on the reason why a particular action was taken, so answering the question in one case would not necessarily answer the question as to all class members.  *Dukes*, 131 S. Ct. at 2561.  Because the plaintiffs failed to produce evidence of *any* common corporate policy or practice that could supply the "why" behind the challenged employment decisions, Rule 23(a)(2) was not satisfied.

Unlike the plaintiffs in *Dukes*, Plaintiffs here have provided evidence of a common corporate policy or practice, namely, TD Bank's systematic and uniform manipulation and re-ordering of debit card transactions to increase the number of overdraft fees imposed.  "Of course, when a group of plaintiffs suffer under a uniform policy, the commonality test is often satisfied, even after *Dukes*."  *Oakley v. Verizon Communications, Inc.*, No. 09-9175, 2012 U.S. Dist. LEXIS 12975, *38 (S.D.N.Y. Feb. 1, 2012).  Here, the "why" behind Defendant's wrongful conduct is irrelevant, unlike the "why" behind the employment decisions in *Dukes*, because all Class members were subject to the same corporate policy.  *See Jermyn*, 276 F.R.D. at 172 ("In the deceptive business practice context, by contrast, the 'why' is less relevant, if it is relevant at all.").  The practices that Plaintiffs challenge are standardized and apply on a routine basis to all

- 7 -

Class members.  Plaintiffs satisfy the *Dukes* commonality standard by alleging and providing significant evidence that TD Bank uniformly manipulated and re-ordered debit card transactions to increase the number of overdraft fees imposed.  That is the common contention that applies to all Class members that drives the resolution of this litigation.  *Dukes*, 131 S. Ct. at 2551.

Moreover, the six common questions presented in Plaintiffs' Motion are exactly the types of questions contemplated by the Supreme Court in *Dukes* as satisfying the commonality requirement.[5]  Indeed, this Court has already found that substantially similar questions satisfied the commonality standard in *Larsen v. Union Bank*, which was issued after *Dukes*.  275 F.R.D. 666, 673-74 (S.D. Fla. 2001).  Nonetheless, TD Bank takes issue with Plaintiffs' first five questions, arguing that each question "turns on the individual understanding of each customer." Opp. at 9.  Not so.  Each question, from whether the Bank manipulated and reordered transactions to increase overdraft fees, to whether the Bank delayed posting transactions so that Class members were charged overdraft fees even when there were sufficient funds in the account, concerns TD Bank's uniform conduct, not each customer's understanding of it.  And, as explained more fully below, each customer's knowledge of and subjective expectations regarding TD Bank's posting practices are irrelevant to Plaintiffs' claims.

Finally, TD Bank argues that Plaintiffs' sixth question does not satisfy the commonality requirement because it is too broad.  Opp. at 8.  This question tracks each of the counts asserted by Plaintiffs.  As set forth in Plaintiffs' Motion, and below, these claims not only present common questions of law and fact, but they predominate over any individual questions that may exist.  By satisfying the predominance standard for each of the claims, Plaintiffs have necessarily established the commonality requirement.

---

[5] Whether TD Bank: (1) Disclosed or refused to allow its Class members to opt out of the overdraft protection program and secret line of credit; (2) Alerted Class members that a debit card transaction would trigger an overdraft fee if processed and provided them with an opportunity to cancel the transaction; (3) Manipulated and re-ordered transactions in order to increase the number of overdraft fees imposed; (4) Imposed overdraft fees when, but for re-sequencing, there would be sufficient funds in the account; (5) Delayed posting transactions so that Class members were charged overdraft fees even when sufficient funds were in the account to cover the transactions; and (6) Breached its covenant of good faith and fair dealing with Plaintiffs and the Class; engaged in practices that were substantially and procedurally unconscionable; was unjustly enriched at the expense of Plaintiffs and the Class; and violated the [UDAP] laws of Connecticut, New Jersey, New York, Pennsylvania, and Vermont.  Motion at  26-27.

## II.      COMMON QUESTIONS PREDOMINATE

### A.      Common Issues Relating to Plaintiffs' Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing Claims Predominate.

#### (1)      Individualized evidence is irrelevant because the uniform deposit agreements control the litigation.

TD Bank contends that individual issues predominate on Plaintiffs' claim for the breach of the duty of good faith and fair dealing because the jury will have to determine each Class member's expectations by reviewing evidence of each Class member's individual circumstances.[6]  Opp. at 13-17.  However, as noted above, this Court has already held that Plaintiffs' expectations concerning TD Bank's posting practices are immaterial because it is the PDAAs that control the litigation.  Order Setting Standards [D.E. 1016] at 11.

Further, TD Bank sinks its own argument by conceding, as it must, that courts first look to the words of a contract to ascertain the expectations of the parties.  Opp. at 13 (citing *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1548-49 (11th Cir. 1996); 11 Williston on Contracts § 31:4, at 277-78 (4th ed.)).  Here, the vague language of the contracts, which purported to give TD Bank the discretion to apply a variety of posting orders, created the objective expectation that TD Bank would use its discretion in good faith.  TD Bank uniformly thwarted this expectation by always reordering debits from highest to lowest and grouping together POS transactions that occurred on subsequent days with POS transactions that occurred on earlier days.  Thus, the premise of TD Bank's argument regarding consumer expectations—that "Plaintiffs seek to build their case by alleging expectations and circumstances that are outside . . . the applicable writings," Opp. at 15, —is wrong.  The Court need only examine the language of the contracts to determine the justified, objective expectations of Plaintiffs and the Class.

---

[6] TD Bank claims the "central claim" advanced under Count I is that by posting debit transactions from highest dollar amount to lowest dollar amount, TD Bank "thwarted Plaintiffs' expectations."  Opp. at 13.  However, this is only a partial description of the wrongful conduct giving rise to Plaintiffs' claim for breach of the duty of good faith and fair dealing. As set forth in Plaintiffs' Third Amended Consolidated Complaint, Plaintiffs alleged that TD Bank not only manipulated debit card transactions to increase overdraft fees, but also did not fairly disclose these manipulations and kept secret from Plaintiffs and Class members the secret line of credit that was linked to Plaintiffs' accounts.

> **(2)** **Even if evidence outside of the language of the deposit agreements were required to establish the parties' expectations, common issues still predominate because the parties' expectations are determined by an objective standard**

Even if TD Bank were correct that evidence outside of the language of the PDAAs was required to determine the parties' expectations, TD Bank is wrong that the standard for determining the expectations of the parties is subjective, such that the individual understanding of each TD Bank customer as to posting order must be considered.  Opp. at 16.  The vast majority of cases that have specifically addressed the issue have held that the expectations of the parties are determined by an objective, rather than subjective, standard.  *See Larsen*, 275 F.R.D. at 680 ("For example, it is not the case that the individual Plaintiffs' and class members' subjective expectations are necessary to prove their claims. To the contrary, breach of the duty good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct").[7]  The use of an objective standard for a consumer's reasonable expectations is particularly appropriate here because TD Bank's account agreements were standardized contracts of adhesion.  The Restatement recognizes that "[s]uch a writing is interpreted wherever reasonable as treating alike all those similarly situated, *without regard to their knowledge or understanding of the standard terms of the writing*."  Restatement (Second) Contracts § 211(2) (emphasis added).  The rule also considers exceptions where some customers have superior knowledge, but such exceptions do not alter the rule.  "[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it.  The result may be to give the advantage of a restrictive

---

[7]  *See also In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 274 F.R.D. 286, 290 (N.D. Cal. 2011) (holding that, under Delaware law, "the reasonable expectations of the class are measured by an objective standard, and as plaintiffs argue, can be determined here with evidence common to the class."); *Clancy v. King*, 954 A.2d 1092, 1108 (Md. 2008) (under Maryland law, where personal taste does not provide the basis for the exercise of discretion under a contract, and objective standard of what constitutes good faith and fair dealing applies); *Post v. Killington* No 07-252, 2008 U.S. Dist. LEXIS 92495, *5-6 (D. Vt. Oct. 14, 2008) (parties' expectations determined by an objective standard).  *See also Pippert v. Niece*, 518 F. Supp. 2d 1265, 1273 (D. Ore. 2007) (holding that, when examining claim for the breach of the duty of good faith and fair dealing, the "expectations are held to an objective standard."); *In Re: World Famous, Inc. v. Keybank National Assoc.*, No. 04-61005, 2004 Bankr. LEXIS 1045, *10 (Bankr. D. Or. June 21, 2004) ("This test has been described as an "objective" test, in which the court looks to the objectively reasonable expectations of the parties in determining whether the obligation of good faith has been met.").

reading to some sophisticated customers who contracted with knowledge of an ambiguity or dispute." *Id.*, cmt. e. Because the standard for determining the parties' expectations is an objective one, the various portions of the named Plaintiffs' deposition testimony that TD Bank focuses upon are irrelevant. Opp. at 17-21.

Indeed, if the parties' subjective expectations were relevant, a claim for the breach of the duty of good faith and fair dealing could never be certified because the jury would always have to consider individualized evidence for each class member. Thus, the fact that numerous courts have certified claims for the breach of the duty of good faith and fair dealing plainly disposes of TD Bank's novel argument.[8]

TD Bank cites two New Jersey state court cases in support of its argument that claims for the breach of the duty of good faith and fair dealing require proof of each individual plaintiff's subjective expectations, but those decisions do not even address this issue. Opp. at 16. TD Bank first cites language from *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1077 (N.J. Super. Ct. App. Div. 2002), stating that, "[t]o determine what is considered a good faith performance, the court must consider the expectations of the parties and the purposes for which the contract was made." Second, TD Bank cites language from *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2011), stating that "the plaintiff's interest is internal to the understanding of the parties and good faith requires the defendant not to exercise such discretion as it may have under the literal terms of the contract to thwart plaintiff's expectation or purpose." TD Bank incorrectly infers from this language that the expectations of the parties are determined by a subjective standard, but this is not what these cases hold. *See In re FedEx Ground Package Sys., Empl. Practices Litig.*, 273 F.R.D. 424, 461 (N.D. Ind. 2008) (*Seidenberg* does not stand for the proposition "that

---

[8] *See Marcus, v. B.M.W. North America, LLC*, No. 08-5859, 2010 U.S. Dist. LEXIS 122908, *41-42 (D.N.J. Nov. 19, 2010) (certifying New Jersey state class for breach of the covenant of good faith and fair dealing and rejecting the defendant's argument that individual evidence of disclosures made to each class member would be required); *Grey v. Hearst Communications, Inc.*, No. 10-1302, 2011 U.S. App. LEXIS 17890, *10 (4th Cir. Aug. 25, 2011) (affirming district court's certification of claim for breach of the duty of good faith and fair dealing under South Carolina law); *Johnson v. Geico Gen. Ins. Co.*, 673 F. Supp. 2d 255, 275-76 (D. Del. 2009) (certifying claim for breach of the duty of good faith and fair dealing where the defendant employed "systematic procedures" that "applie[d] on a class-wide basis."); *In re Avon Securities*, 1998 U.S. Dist. LEXIS 18642, *35 (S.D.N.Y. Nov. 19, 1998), *Englade v. HarperCollins Publishers*, 289 AD.2d 159, 159-60 (App. Div. 1st Dep't 2001). *See also Gibbs Properties v. Cigna*, 196 F.R.D. 430, 441 (M.D. Fla. 2000) (denying certification but holding that whether "the doctrine of good faith and fair dealing were breached through Defendants' employment of the each and every practice is susceptible to class-wide proof.").

an inquiry into each [parties'] intent will be needed to resolve claims for breach of the duty of good faith and fair dealing").  While these courts hold that the parties' reasonable expectations should be considered, they did not address the standard by which the expectations of the parties are determined.[9]  The other authorities upon which TD Bank relies for the proposition that each Class member's claimed expectations and knowledge must be considered are also readily distinguishable and, in any event, are not binding on this Court.  Opp at 22-24.[10]

**B.    Common Issues Relating to Plaintiffs' Unconscionability Claim Predominate.**

All of the elements of Plaintiffs' claims for unconscionability are susceptible to common proof.  *See, e.g.*, *Dienese v. McKenzie Check Advance of Wis. L.L.C.*, 2000 U.S. Dist LEXIS 20389, at *13-14 (E.D. Wis. Dec. 11, 2000) (citing cases approving class certification of common-law unconscionability claims).  The common proof will include evidence of TD Bank's financial resources and sophistication in devising the overdraft fee program (Trial Plan at 6 & n.9); TD Bank's form contracts with boilerplate language (*id.* at 6 & n.10); TD Bank's failure to

---

[9] TD Bank also cites Arizona, New Mexico and Alabama case law to support its position, but the law of these states is irrelevant.  Opp. at 16.  In any event, these cases are either inapplicable or readily distinguishable.  In *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 353 (D. Ariz. 2009), although the plaintiffs asserted a breach of contract and breach of the duty of good faith and fair dealing claim, the court noted that "[p]laintiff proposes a common issue that only relates to Defendants' marketing and selling of the group policy" which the court found would require consideration of circumstances such as "the insurance agent's representations to the insured."  Here, Plaintiffs' claims are based on the language in the contract regarding posting order, not any representations made to Plaintiffs as to posting order.  In any event, the court in *Stratton* never specifically addressed whether the standard for determining the expectations of the parties was subjective or objective.  The decisions in both *Brooks v. Norwest Corp.*, 103 P.3d 39, 52 (N.M. 2004) and *Compass Bank v. Snow*, 823 So. 2d 667, 677 (Ala. 2001) address NSF charges for checks rather than debit transactions.  Further, in *Brooks*, while the court held that the customers' "reasonable expectations" should be considered, 103 P.3d at 52, the court did not specifically address whether the standard for determining those expectations was objective or subjective.  The *Snow* decision did not even address a claim for the breach of the duty of good faith and fair dealing.

[10] In *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023 (8th Cir. 2010), the contracts at issue were individually negotiated with thousands of independent agents who were not required to follow any script and who were free to answer questions about the product, making it impossible to ascertain the prevailing objective consumer's expectations.  *Id.* at 1027.  In contrast, here, as in *Larsen*, the PDAAs "are uniform form contracts offered on a take-it-or-leave-it basis and were not the product individual negotiations."  *Larsen*, 275 F.R.D. at 677 (citing *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1171 (11th Cir. 2010) ("It is the form contract, executed under like conditions by all class members that best facilitates class treatment.")).  In addition, TD Bank's PDAAs did not advise any of the Class members of the invariable high-to-low posting order.  Thus, similar to the plaintiffs in *Larsen*, Plaintiffs here would not have to prove a variety of individual circumstances to support the breach.  *Id.*

- 12 -

provide Plaintiffs and Class members with any meaningful opportunity to negotiate the terms of their deposit agreements or to opt out of the overdraft program (*id.* at 6 & n.11); and widespread consumer complaints about the unfairness of TD Bank's overdraft fees (*id.* at 6 & n.12). TD Bank ignores Plaintiffs' evidence, instead claiming that proof of substantive and procedural unconscionability will require individualized proof. Opp. at 24-27.

To establish procedural unconscionability, Plaintiffs must prove that they and Class members lacked a meaningful choice. *See* Trial Plan Exhibit C. The standardized nature of TD Bank's deposit agreements, which none of Plaintiffs or Class members, regardless of their sophistication and experience, were able to negotiate, and the gross disparity of bargaining power are common factors supporting procedural unconscionability. Defendants point to Plaintiffs' deposition testimony regarding their understanding of the deposit agreement to establish that Plaintiffs had differing levels of sophistication and knowledge. Opp. at 26. But Plaintiffs' understanding of the language of the deposit agreement is irrelevant to the question of whether Plaintiffs and Class members had a meaningful choice.

In addition, individualized proof of substantive unconscionability is not required. Substantive unconscionability requires proof that the contract contains terms which unreasonably favor the other party. *See* Trial Plan Exhibit C. This element can be established through common proof with evidence of the terms of the deposit agreement itself. TD Bank contends that whether its boilerplate, form contracts are substantively unconscionable depends on the parties' circumstances. This is incorrect. The terms of the deposit agreement, as set forth in the uniform deposit agreement itself, either unreasonably favor TD Bank or they do not. While this is a merits question not appropriately addressed at this stage, it is a question that can be established through common proof.

### C.   Common Issues Relating to Plaintiffs' Unjust Enrichment Claim Predominate.

Plaintiffs will proffer common evidence to prove their claims for unjust enrichment, which require that "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Degirmenci v. Sapphire – Fort Lauderdale, LLLP*, 693 F. Supp. 2d 1325, 1347 (S.D. Fla. 2010); *see also* Trial Plan at 6-7. Here, Plaintiffs' unjust

enrichment claim is based upon conduct embodied in TD Bank's scheme to maximize overdraft fees.  Where corporate policies constitute the focus of the plaintiffs' claims, common issues will predominate because such policies would necessarily have to be re-proven by every plaintiff if each claim were tried separately.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1257 (11th Cir. 2004).

Plaintiffs will also use common evidence to demonstrate that they and the Class members conferred a benefit on TD Bank by paying excessive overdraft fees.  Trial Plan at 6-7.  The common evidence will include expert testimony based upon a detailed analysis of TD Bank's overdraft transaction data.  *See, e.g.,* Olsen Decl., ¶¶ 37-53 (Appx. IV to Plaintiffs' Motion).  *See also* Supplemental Olsen Decl., attached as Ex. "C."  Plaintiffs will proffer common evidence that TD Bank knew that the benefit conferred – greater overdraft fee revenue – would result from its overdraft scheme.  Plaintiffs will further establish with common evidence that TD Bank understood the benefit and unjustly took advantage of it to the detriment of Plaintiffs and Class members.

Relying on *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009), TD Bank contends that individual questions predominate with regard to Plaintiffs' unjust enrichment claim.  Opp. at 27-28.  However, *Vega* is distinguishable from the instant case.  In *Vega*, the court found that different employees had different understandings of the commission system at issue and that many employees knew and understood how the system worked.  *Id.* at 174-75. Here, TD Bank has provided no evidence that Plaintiffs or Class members were informed of the true nature of its exploitative overdraft scheme.  Furthermore, "common questions can predominate in unjust enrichment claims where 'the defendant's conduct is the same as to all members of the putative class. . . . [W]hen the defendant's conduct is the same, 'it is difficult to conceive of any significant equitable differences between class members.'"  *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011) (quoting *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010)).  The evidence Plaintiffs will proffer will focus on TD Bank's practices, which applied equally to all bank customers.  This common evidence will focus on the Defendant's gain and not on Plaintiffs' losses.  *See* Trial Plan at 6-7.  Accordingly, it is evident that "success or failure in proving this unjust enrichment claim will mean success or failure for the class as a whole, not for individual class members."  *In re Terazoxin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004) (certifying unjust enrichment class).

- 14 -

    **D.**    **Common Issues Related to Plaintiffs' Statutory Unfair and Deceptive Trade Practice Claims Predominate.**

Plaintiffs will use common evidence to prove that TD Bank violated the consumer protection statutes of Pennsylvania, New Jersey, New York, Connecticut and Vermont. TD Bank contends that these claims require individual inquiries into causation. Opp. at 28-30 However, TD Bank admits that reliance is not a required element under the consumer protection statues of New Jersey, New York and Connecticut. Opp. at 29.[11]

The Pennsylvania Unfair Trade Practices and Consumer Protection Law or "UTPCPL", which TD Bank argues requires a showing of reliance, actually requires that a plaintiff show that, as a result of the defendant's fraudulent or deceptive conduct, he or she suffered an "ascertainable loss of money or property." 73 Pa. Stat. Ann. § 201-9.2. Under certain circumstances, this causation requirement may preclude class treatment because justifiable reliance is the only way to establish causation. *See e.g.*, *Weinberg v. Sun Co., Inc.*, 777 A.2d 442 (Pa. 2001) (affirming denial of class certification of UTPCPL claim where plaintiffs alleged deceptive advertising because plaintiffs would have to prove the reliance of all class members to establish causation in the case). However, this is not that type of case. Causation under the UTPCPL can be established on a class-wide basis without a showing of individualized reliance where "the alleged violation is a uniform policy and practice of charging excessive fees." *Allen v. Holiday Universal, et al.*, 249 F.R.D. 166, 192 (E.D. Pa. 2008) (certifying UTPCPL claim). In these cases, "there is no doubt as to the *cause* of the ascertainable monetary loss." *Id*. at 193 (emphasis in original). As in *Allen*, there is no real issue in this case as to the "ascertainable loss" requirement because all Class members were wrongfully charged overdraft fees as a result of TD Bank's wrongful conduct.

TD Bank contends that, regardless of whether a showing of reliance is necessary, establishing causation under each of the consumer protection statutes will require an inquiry into

---

[11] In footnote 15, TD Bank says it appears that Vermont's consumer protection statute requires reliance, but TD Bank is incorrect. Reliance is required under the Vermont Consumer Fraud Act only if the plaintiff has not sustained damage or injury, and in such case, the plaintiff must establish that he or she contracted for goods or services in reliance on the wrongful conduct. Otherwise, the plaintiff must only establish a causal connection between the wrongful conduct and the injury. *See* VT. STAT. ANN. tit. 9, § 2461(b) ("Any consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representations or practices prohibited by section 2453 of this title, or prohibited by any rule or regulation made pursuant to section 2453 of this title may sue …").

each individual customer's particular circumstances.  Not so.  While Plaintiffs must establish a causal connection between TD Bank's wrongful conduct and Plaintiffs' loss, proof of causation will not require any individualized determinations.  Instead, Plaintiffs will use common evidence to establish TD Bank's liability, including evidence that TD Bank: uniformly re-sequenced transactions and posted debits from highest to lowest for all Class members in the same manner (Trial Plan at 4-5 n.4, 8); employed a secret line of credit to charge overdraft fees (*id*. at 5 n.6); provided unclear balance information (*id*. at 5 n.7); failed to disclose the circumstances under which it would charge overdraft fees (*id*. at 5 n.8); knew the adverse impact that its scheme had on Plaintiffs and the Class (*id*.); and failed to provide Plaintiffs and Class members with any meaningful opportunity to opt out of its overdraft program (*id*. at 6 n.11).  Additional common proof relevant to Plaintiffs' claims will include evidence regarding TD Bank's financial resources and sophistication in devising the overdraft fee program (*id*. at n.9); and consumer complaints regarding TD Bank's overdraft fees (*id*. at 6 n.12).

Moreover, proof of causation for Plaintiffs' consumer protection statutory claims can be established through common evidence because the contracts in this case are uniform.  There is no evidence that Class members were exposed to differing oral representations regarding the deposit agreements, while there is substantial evidence that all class members were subjected to the same or similar written misrepresentations or omissions that prevented them from knowing or understanding how TD Bank's conduct could cause them to sustain harm.

Indeed, courts have certified classes under each of the relevant states' consumer protection statutes.  *See  Morrissey v Nextel Partners, Inc*. 72 A.D.3d 209 (N.Y. App Div 2010) (certifying class under New York consumer protection act given the uniformity of a cellular telephone company's spending limit fee increase disclosure); *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (N.J. 2006) (reversing denial of class certification on a New Jersey consumer fraud act claim where claims were based on a uniform marketing scheme); ; *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (N.J. 2006) (certifying Vermont consumer protection act claim); *Allen v. Holiday Universal, et al*., 249 F.R.D. 166, 192 (E.D. Pa. 2008) (certifying UTPCPL claim); *Petrolito v. Arrow Fin. Servs., LLC*, 221 F.R.D. 303, 315 (D. Conn. 2004) (certifying class under Connecticut unfair trade practices act).

- 16 -

### III.    TD BANK'S AFFIRMATIVE DEFENSES DO NOT DEFEAT PREDOMINANCE

TD Bank acknowledged, but chose not to address, a fatal flaw in its argument regarding its affirmative defenses: they are insufficiently pled.  Opp. at 30 n.16.[12]  Affirmative defenses must meet the pleading standards of *Iqbal* and *Twombly*.  *See Castillo v. Roche Labs., Inc.*, No. 10-20876-CIV, 2010 U.S. Dist. LEXIS 87681, at *5 (S.D. Fla. Aug. 2, 2010) (noting that "a majority of district courts in Florida have applied this heightened pleading standard to affirmative defenses").  Affirmative defenses that merely offer "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.*; *Mid-Continent Cas. Co. v. Active Drywall S., Inc.*, 765 F. Supp. 2d 1360, 1362 (S.D. Fla. 2011) (striking affirmative defense under *Twombly* because, as pled, it involved "nothing more than bare conclusions" without "any factual basis").  TD Bank's affirmative defenses are insufficiently pled because they are mere labels and conclusions, consisting of single-sentence allegations formulaically reciting the elements of accord and satisfaction, ratification, waiver, estoppel, voluntary payment, and failure to mitigate.  TD Bank's Answer and Affirmative Defenses [D.E. 1031] at 22-25.[13]  Indeed, it is facially implausible that TD Bank's customers would knowingly consent to being gouged by TD Bank's predatory practices.  As such, TD Bank's affirmative defenses could not withstand a motion to strike, much less impede class certification.  *See generally Torrest v. TPUSA, Inc.*, No. 2:08-cv-618-FtM-29DNF, 2009 U.S. Dist. LEXIS 22033, at *3-*5 (M.D. Fla. March 19, 2009) (holding that defenses that simply claim "statute of limitations," "waiver," and "estoppel" are insufficiently pled); *Pujals ex. Re. El Rey De Los Habanos, Inc. v. Garcia*, No. 10-22990-CIV, 2011 WL 1134989, at *6 (S.D. Fla. Mar. 28, 2011) (striking waiver defense where defendants failed to allege "any facts detailing how Plaintiff waived his claims").

But even if TD Bank's affirmative defenses were sufficiently pled, they could not defeat predominance.  Some, such as accord and satisfaction, pertain to damages.  The evidence TD

---

[12] TD Bank incorrectly suggests that Plaintiffs waived this argument by not raising it in their Motion. Plaintiffs, however, had no obligation to divine TD Bank's argument and respond to it in their initial brief.  The function of a reply brief is to rebut arguments raised in the response brief.  *See* S.D. Fla. Local Rule 7.1(c).  That is what Plaintiffs are doing here.

[13] TD Bank effectively conceded that its affirmative defenses are insufficiently pled when it moved to amend it affirmative defenses to address this insufficiency.  TD Bank's Motion to Amend [D.E. 2193]. The Court denied TD Bank's motion to amend, however, because there was ample case law applying *Twombly* and *Iqbal* to affirmative defenses when TD Bank filed its answer over a year ago, thus leaving TD Bank with its insufficiently pled affirmative defenses.  Order Denying Motion to Amend [D.E. 2341].

- 17 -

Bank cites for its accord and satisfaction defense simply shows that certain Plaintiffs received refunds for some, but not all, of the overdraft fees they paid, not that those Plaintiffs entered into superseding agreements with the intent to effect a settlement of an existing dispute, as is required to find accord and satisfaction.  *See, e.g., Rudick v. Rudick*, 403 So. 2d 1091, 1093-94 (Fla. 3d DCA 1981) ("A defense of accord and satisfaction involves a two-step process of proof that (1) the parties mutually intended to effect settlement of an existing dispute by entering into a superseding agreement, and (2) there was actual performance with satisfaction of the new agreement which acted to discharge the debtor's prior obligation.") (citations omitted).  Thus, TD Bank's accord and satisfaction defense is nothing more than a setoff defense, and can be accounted for in Plaintiffs' expert's damages calculations.  *See Carbajal v. Capital One F.S.B.*, 219 F.R.D. 437, 441 n.2 (N.D. Ill. 2004) (setoffs would not be a significant focus of the case and would likely involve nothing more than a mere calculation).  The Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification.  *See Allapattah Servs.*, 333 F.3d 1248, 1261 (11th Cir. 2003); *Sacred Heart*, 601 F.3d 1159, 1178 (11th Cir. 2010).

Others, such as ratification,[14] waiver,[15] voluntary payment,[16] and failure to mitigate,[17] require, under the law of all fourteen states at issue, full knowledge by Plaintiffs and members of

---

[14] *See E. Devoe Tompkins, Inc., v. City of Bridgeport*, 123 A. 135, 137 (Conn. 1923) (requiring "full knowledge" for ratification); *Dannley v. Murray*, No. CIV.A. 5383, 1980 WL 268061 (Del. Ch. July 3, 1980) (same); *Wittlin v. Giacalone*, 171 F.2d 147, 148 (D.C. Cir. 1949) (same); *Deutsche Credit Corp. v. Peninger*, 603 So.2d 57, 59 (Fla. 5th DCA 1992) (same); *Wilkins v. Waldo Lumber Co.*, 153 A. 191, 193 (Me. 1931) (same); *Oaks v. Connors*, 660 A.2d 423, 426 (Md. 1995) (same); *Jacob Trinley & Sons v. Golter*, 41 A.2d 243 (N.H. 1945) (same); *New York State Medical Transporters Ass'n, Inc. v. Perales*, 566 N.E.2d 134, 137 (N.Y. 1990) (same); *Leiber v. Arboretum Joint Venture, LLC*, 702 S.E.2d 805, 812 (N.C. Ct. App. 2010) (same); *DeSilvio v. Restauire*, 400 A.2d 211, 213 (Pa. Super. Ct. 1979) (same); *UST Corp. v. General Road Trucking Corp.*, 783 A.2d 931, 939 (R.I. 2001) (same); *Neely v. Love*, 142 S.E. 623, 642 (S.C. 1928) (same); *Smith v. Mountjoy*, 694 S.E.2d 598, 603 (Va. 2010) (same); *Page v. Suraci*, 483 A.2d 601, 603 (Vt. 1984) (same).

[15] *See Roy v. Metropolitan Property and Cas. Ins. Co.*, 909 A.2d 980, 982 (Conn. App. Ct. 2006) ("Waiver involves an *intentional* relinquishment of a *known* right . . . .") (emphasis added and internal quotation marks omitted); *Amirsaleh v. Board of Trade of City of New York, Inc.*, 27 A.3d 522, 529-30 (Del. 2011) (same); *Travelers Indem. Co. of Illinois v. United Food & Commercial Workers Intern. Union*, 770 A.2d 978, 992 (D.C. 2001) (same); *Alston v. Alston*, 960 So.2d 879, 881 (Fla. 4th DCA 2007) (same); *Kraul v. Maine Bonding & Cas. Co.*, 559 A.2d 338, 338-39 (Me. 1989) (same); *Hartford Underwriters Ins. Co. v. Phoebus*, 979 A.2d 299, 310 (Md. Ct. Spec. App. 2009) (same); *Margolis v. St. Paul Fire & Marine Ins. Co.*, 125 A.2d 768, 771 (N.H. 1956) (same); *Fish King Enterprises v. Countrywide Ins. Co.*, 930 N.Y.S.2d 256, 259 (N.Y. App. Div. 2011) (same); *Liptrap v. Coyne*, 675

the Class of material facts to make their actions knowing and intentional. [18]  However, just like the plaintiffs in *Larsen* did, Plaintiffs here have alleged, and offered evidence to prove, that TD Bank actively sought to conceal from its customers material information concerning its scheme, including the existence of its secret line of credit which dictated how overdraft charges were generated, and that they had the right to opt out of the overdraft program (and thereby avoid

---

S.E.2d 693, 696 (N.C. Ct. App. 2009) (same); *Com. v. Lucarelli*, 971 A.2d 1173, 1179 (Pa. 2009) (same); *Tidewater Realty, LLC v. State, Providence Plantations*, 942 A.2d 986, 995 (R.I. 2008) (same); *King v. James*, 694 S.E.2d 35, 43 (S.C.App. 2010) (same); *Waterbury Feed Company, LLC v. O'Neil*; 915 A.2d 759, 762 (Vt. 2006) (same); *Stockbridge v. Gemini Air Cargo, Inc.*, 611 S.E.2d 600, 605 (Va. 2005) (same).

[16] *Eagle Maint. Services, Inc. v. Dist. of Columbia Contract Appeals Bd.*, 893 A.2d 569 (D.C. 2006) (The voluntary payment doctrine. . . provides that money *voluntarily paid* under a claim of right to the payment, and *with knowledge of the facts* by the person making the payment, cannot be recovered by the payor . . .) (emphasis added and internal quotation marks omitted); *W. Natural Gas Co. v. Cities Serv. Gas Co.*, 201 A.2d 164 (Del. 1964) (same); *Morris v. City of New Haven*, 63 A. 123, 124 (Conn. 1906) (same); *City of Key W. v. Florida Keys Cmty. Coll.*, 3D11-417, 2012 WL 126858 (Fla. 3d DCA Jan. 18, 2012) (same); *Norton v. Marden*, 15 Me. 45, 45 (Me. 1838) (same); *Dua v. Comcast Cable of Maryland, Inc.*, 805 A.2d 1061 (Md. 2002) (same); *E.D. Clough & Co. v. Boston & M.R.R.*, 90 A. 863, 876 (N.H. 1913) (same); *City of Camden v. Green*, 25 A. 357, 357 (N.J. 1892) (same); *Collins v. Covert*, 98 S.E.2d 26, 29 (N.C. 1957) (same); *Peebles v. City of Pittsburgh*, 101 Pa. 304, 304 (Pa. 1882) (same); *Fairbanks v. Mann*, 34 A. 1112, 1113 (R.I. 1896) (same); *Hardaway v. S. Ry. Co.*, 73 S.E. 1020, 1025 (S.C. 1912) (same); *Wilson v. Alexander*, 139 Vt. 279, 428 A.2d 1089 (Vt. 1981) (same); *Dodson v. Newport News Shipbuilding & Dry Dock Co.*, No. 0278-99-1, 1999 WL 1133301 (Va. Ct. App. Aug. 10, 1999) (same).

[17] It is unclear what TD Bank means by its "failure to mitigate" defense or how it differs from ratification, waiver, and voluntary payment.  This again illustrates the problem of TD Bank's failure to properly plead its affirmative defenses.  Regardless, the one case TD Bank cites for it shows that, like waiver, estoppel, and voluntary payment, this defense requires that Plaintiffs and members of the Class have full knowledge of TD Bank's policies and practices.  *See Shelley v. AmSouth Bank*, No. CIV.A.97-1170-RV-C, 2000 WL 1121778, *11 (S.D. Ala. June 24, 2000).

[18] TD Bank also claims to raise an estoppel defense, but that doctrine is inapplicable here.  As the case TD Bank cites for estoppel states, "the essential elements of equitable estoppel are a knowing and intentional misrepresentation by the party sought to be estopped under circumstances in which the misrepresentation would probably induce reliance, and reliance by the party seeking estoppel to his or her detriment."  *O'Malley v. Dep't of Energy*, 537 A.2d 647, 651 (N.J. 1987).  But TD Bank has not shown that any of the Plaintiffs made misrepresentations or that it relied on any misrepresentations.  Thus, its estoppel defense is completely unsubstantiated and cannot undermine predominance.

overdrafts).  Mot. at 15-18.  Thus, as this Court found in *Larsen*, "[i]f Plaintiffs can prove these facts, they will undercut [TD Bank's] defenses by common evidence.[19]  275 F.R.D. at 678.

Moreover, a common question pertaining to TD Bank's affirmative defenses is whether continuing to pay overdraft fees after learning about TD Bank's policies and practices is even the type of conduct that could, as a matter of law, support a ratification, waiver, voluntary payment, or failure to mitigate defense.  As the Court can answer this question on a class-wide basis, it only provides further support for finding that common issues predominate.  *See Miller v. Optimum Choice, Inc.*, No. DKC 2003-3653, 2006 WL 2130640, *7 (D. Md. July 28, 2006) ("Because the affirmative defenses are common across the putative class members, the defenses would not operate to destroy the predominance of common questions across the class, but would instead provide an additional link of commonality between the class members.").

## IV.    PLAINTIFFS' OTHER ALLEGATIONS DO NOT RAISE INDIVIDUALIZED ISSUES

TD Bank argues that Plaintiffs' allegations that TD Bank utilized a secret line of credit, failed to notify customers at the point of sale whether a transaction would overdraw their account, and failed to disclose to customers that they could opt out of overdraft services create individualized issues because they "raise questions regarding the expectations, experiences, and knowledge of individual Plaintiffs."  Opp. at 36.  As discussed more fully above, however, individual Plaintiffs' expectations, experiences, and knowledge are not relevant to Plaintiffs' claims in this case.

---

[19] As this Court also found in *Larsen*, "[t]o the extent [TD Bank] could prove that some customers learned of their secret line of credit or of their ability to opt out, yet continued to incur and pay overdraft fees, the presence of individualized defenses as to a small number of class members would not destroy the predominance of common liability questions."  275 F.R.D. at 678 n.9 (citing *Smilow v. Southwestern Bell Mobile, Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008); *Robin Drug Co. v. Pharmacare Mgmt. Servs., Inc.*, No. Civ. 033397, 2004 WL 1088330, at *5 (D. Minn. May 13, 2004)).  Rule 23(b)(3) "tolerates some individualized issues, so long as 'questions of law or fact common to the members of the class predominate over any questions affecting only individual members.'"  *Gutierrez v. Wells Fargo Bank, N.A.*, No. C07-05923 WHA, 2010 WL 1233810, *13 (N.D. Cal. Mar. 26, 2010); *see also In re Visa Check/Mastermoney Antitrust Litig.*, 280 F.3d 124, 138 (2d Cir. 2001), *overruled on other grounds by In re Initial Public Offerings Securities Litig.*, 471 F.3d 24, 39-40 (2d Cir. 2006) ("[T]he question for purposes of determining predominance is not whether a defense exists, but whether the common issues will predominate over the individual questions raised by that defense.").

Further, despite TD Bank's suggestion otherwise, Plaintiffs do not need to show whether each particular Plaintiff was harmed by these practices. Plaintiffs were harmed by TD Bank's debit re-sequencing scheme. The additional conduct addressed here furthered that scheme by keeping customers in the dark about TD Bank's practices. Indeed, TD Bank's own internal documents acknowledge this fact. *See* Mot. at 18.

## V.  INDIVIDUAL ISSUES RELATING TO CAUSATION DO NOT PREDOMINATE

TD Bank readily admits – as it must – that individual issues relating to damages do not defeat class certification when those damages can be calculated using a mathematical or mechanical formula. *See, e.g., Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 326-7 (5th Cir. 1978). The Declaration of Art Olsen clearly establishes that a mechanical calculation of the damages in this case is feasible. Faced with this elegant and logical solution to the damages analysis in this case, TD Bank pivots to an attack on Mr. Olsen, arguing that (1) Olsen's testimony does not "fit" the case; (2) Olsen refuses to identify the "proper" posting method; and (3) Olsen does not account for predicted changes in bank practices and customer behavior. These arguments are without merit. These arguments are fully addressed in Plaintiffs' opposition to TD Bank's motion to strike Mr. Olsen's report filed concurrently. *See* Response in Opposition to Motion to Exclude Olsen ("Daubert Response") at 6-7, 13-18.

## VI.  NO INTRA-CLASS CONFLICTS EXIST

### A.  There Is No Preclusive Conflict Between Plaintiffs' and Class Members' Interests.

TD Bank asserts that an intra-class conflict exists that should preclude certification. Opp. at 44-47. The purported conflict, according to TD Bank, is that some alternative posting orders would lead to differing results between the Class members, such that "[t]he choice of remedies will favor some plaintiffs, enlarging their recovery, while eliminating or minimizing the recovery of other plaintiffs." *Id.* at 45. As the testimony of TD Bank's own expert demonstrates, however, no such conflict exists. But even if one did, it would not defeat class certification.

For this intra-class conflict argument, TD Bank relies on the calculations of its expert, Steven Visser. Visser calculated the percentage increase or decrease in overdraft fees under a number of alternative posting methods as compared to TD Bank's actual method. *See* Visser Decl. ¶ 19, Table 3. According to Visser's calculations, every named Plaintiff fared best under

the "Credits then Debits Low to High" posting order. *Id.* Indeed, TD Bank concedes that this posting order "necessarily generates the least amount of overdrafts." Opp. at 46. Thus, according to TD Bank's own expert, Plaintiffs' and the Class's interests are perfectly aligned— every Class member's recovery will be maximized if the "Credits then Debits Low to High" posting order is used to calculate damages. Similarly, according to Visser's calculations, the interests of Plaintiffs and the Class are also aligned with respect to the "Scenario 2A" posting order that the *Gutierrez* court adopted, as every named Plaintiff will benefit if that order is used. *See* Visser Decl. ¶ 19, Table 3. There are, therefore, at least two posting orders that all Class members have an interest in advocating should be used to calculate damages.[20]

Faced with this clear alignment of interests, TD Bank tries to invent a conflict within the Class by pointing to several hypothetical posting orders under which some Class members would benefit and others would not. But TD Bank does not show that Plaintiffs have a legal basis for pursuing one of those alternatives over the two posting orders that benefit the entire class. Without such a showing, there is no real conflict, just an imaginary one, which is insufficient to defeat class certification. *See Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) ("[A] conflict will not defeat the adequacy requirement if it is "merely speculative or hypothetical . . . .") (internal quotation marks omitted).[21]

But even if some conflict relating to alternative posting orders existed, it would not preclude class certification. For a conflict between the representative and the class to defeat class certification, it must be "a fundamental one, going to the specific issues in controversy." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000); *see also Valley Drug Co.*

---

[20] The specific example TD Bank relies upon, involving Plaintiffs Daniels and Mazzadra, demonstrates that Plaintiffs' interests are not antagonistic. *See* Opp. at 41. According to Visser's calculations, Daniels fares the same under Scenario 2A and "Credits then debits low to high," while Mazzadra fares 25% better under "Credits then debits low to high," and 8% better under Scenario 2A. *See* Visser Decl. ¶ 19, Table 3. Thus, Daniels's and Mazzadra's interests are aligned in that both would benefit if either Scenario 2A or "Credits then debits low to high" were used to calculate damages. In any event, Mazzadra has voluntarily dismissed his claims, [D.E. 2344], and is no longer a Class representative.

[21] *See also Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671, 679 (S.D. Fla. 2007) (certifying class where the purported intra-class conflict was "purely hypothetical"); *In re Metlife Demutualization Litigation*, 229 F.R.D. 369, 377 (S.D.N.Y. 2005) (certifying class where there was "'nothing but speculation that plaintiffs' interests conflict with the interests of the class'") (quoting *Walsh v. Northrop-Grumman Corp.*, 162 F.R.D. 440, 447 (E.D.N.Y. 1995)).

*v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("[T]he existence of minor conflicts alone will not defeat a party's claim to class certification …."). Here, the specific issues in controversy are whether TD Bank's high-to-low posting practices breached the duty of good faith and fair dealing, were deceptive, were unconscionable, or resulted in unjust enrichment. As all Class members will benefit if Plaintiffs prevail on these issues, there is no fundamental intra-class conflict. *See James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommunications, Inc.*, 275 F.R.D. 638, 643 (M.D. Fla. 2011) (finding that no fundamental intra-class conflict existed when "[t]he specific issues in this controversy concern whether BellSouth's billing practices were deceptive, fraudulent, or resulted in unjust enrichment," and all class members would benefit if plaintiffs prevailed on their claims). Rather, as TD Bank concedes, the conflict that it claims exists goes to "the choice of remedies." Opp. at 45. But conflicts concerning the measurement or calculation of damages are not fundamental and do not preclude class certification. *See Blackie v. Barrack*, 524 F.2d 891, 908-910 (9th Cir.1975) (finding that certification of a class was proper even where the interests of class members in calculating damages might conflict); *see also In re Cendant Corp. Litigation*, 182 F.R.D. 476, 479 (D.N.J. 1998) (same); *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 532 (D. Me. 1991) (same). Thus, the conflict that TD Bank claims exists cannot defeat class certification.

### B. There Is No Preclusive Conflict As A Result Of Some Class Members Benefiting From TD Bank's Posting Practices.

TD Bank also argues that a separate conflict exists between those Class members who purportedly benefited from its high-to-low posting practices and those who did not. *See* Opp. at 48. According to TD Bank, some Class members "economically benefited from TD Bank's high-to-law posting practices in that it enabled TD Bank to offer free checking." *Id.* This argument is similar to the one it made in attacking Mr. Olsen for failing to consider changes in bank practices and consumer behavior in a world with a different posting order, and fails for many of the same reasons discussed in Plaintiffs' response to TD Bank's *Daubert* motion. *See* Daubert Response at 13-18.

First, if Plaintiffs prevail, every Class member will benefit economically in that they will receive a refund of the overdraft fees they incurred as a result of TD Bank's high-to-low posting practices. And in the world that actually existed, in which TD Bank offered free checking, no Class member benefitted economically by paying an overdraft fee. Only in TD Bank's counter-

- 23 -

factual world, in which TD Bank claims it would charge its customers for checking and use an alternative posting order, can it argue that some Class members would benefit from its high-to-low posting practices.  But TD Bank points to no case law that supports imagining whether some class members would have benefited from a defendant's predicted practice in a hypothetical world to determine whether an intra-class conflict exists.[22]  Indeed, the case law points in the opposite direction: hypothetical conflicts based on uncertain predictions about a defendant's conduct cannot preclude certification.  *See Ward*, 595 F.3d at 180 (affirming class certification and rejecting intra-class conflict argument because the putative conflict rested on the uncertain prediction that the lawsuit would cause the defendant insurer to raise premiums enough to adversely affect some members of the class).

But even if it were appropriate to consider TD Bank's counter-factual world to determine whether an intra-conflict exists, TD Bank offers no evidence to support it.  There is no evidence in the record showing that TD Bank's high-to-low posting practices actually enabled it to offer free checking; there is no evidence indicating how much TD Bank would have charged for a checking account had it not used a high-to-low posting order; and there is no evidence that any Class members would have stayed with TD Bank had it charged a fee for checking.  Without such evidence, there is no basis for entertaining TD Bank's speculation that some Class members benefitted from its high-to-low positing practices.

## VII.   PLAINTIFFS' DETAILED TRIAL PLAN AND STATE LAW SURVEYS DEMONSTRATE THIS CASE IS WELL-SUITED FOR CLASS TREATMENT

### A.   Common Questions Of Multi-State Law Predominate.

TD Bank's assault on Plaintiffs' proposed Trial Plan and state law groupings fails.  To make its argument, TD Bank ignores critical elements of Plaintiffs' Trial Plan and proposed state law groupings; focuses on non-critical issues; and attempts to muddy the waters by throwing up supposed shortcomings all in an effort to draw attention away from the painstakingly constructed Trial Plan Plaintiffs have proposed.

---

[22] In the cases it did cite, some class members received a *direct* benefit from the defendant's practice, not some indirect benefit imagined to exist from a comparison of the defendant's actual practice and its predicted actions in a hypothetical world.  *See Valley Drug Co.*, 350 F.3d at 1190-91 (reversing class certification and remanding to determine whether national wholesalers actually "made more money on the sale of the branded product than on the generic product" as a result of the defendants' challenged agreements); *Pickett*, 209 F.3d at 1280 (reversing class certification because those members of the class who had entered into the challenged forward contracts and marketing agreements "have benefitted").

In keeping with the dictates of Eleventh Circuit law, Plaintiffs have demonstrated that the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards. *Klay*, 382 F. 3d at 1262. *See also Powers v. Gov't Employees Ins. Co.* 192 F.R.D. 313, 318-19 (S.D. Fla. 1998). Importantly, complete uniformity of state law is not required as long as there are no material conflicts among the laws. *Simon v. Phillip Morris,* 124 F. Supp. 2d 46, 77 (E.D.N.Y. 2000). Indeed, as this Court observed in *Larsen*, the Court may certify multi-state classes even if "different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can manage by means of" sub-classing. *Larsen*, 275 F.R.D. at 679 (quoting American Law Institute, *Principles of the Law: Aggregate Litigation* § 2.05(b) (2010)).

Plaintiffs here have provided the Court a detailed package of information including a Trial Plan that explains how common evidence will be used to try class claims. The Trial Plan details the essential elements for recovery on each claim, including extensive citation to controlling authority in each jurisdiction. The Plan sets forth clear and carefully considered subgroupings (13 in total) for each claim asserted with reference to the proposed Class representatives for each subclass as well as an explanation as to how each subclass was formed. Comprehensive special verdict forms are also included for every claim. The Plan further provides a wide-ranging survey showing the types of common evidence that will be used to prove the Class claims and a lays out a clear plan for ensuring that an efficient and manageable trial takes place. As detailed below, TD Bank's objections to Plaintiffs' proposed groupings fail.

**B.      Plaintiffs' Proposed Groupings Properly Account for Minor Variations in State Law.**

TD Bank argues Plaintiffs' Trial Plan erroneously categorizes Plaintiffs and states. Opp. at 50. This is incorrect. TD Bank's attempt to paint the reasonable subclasses presented as confusing is similarly untrue. As Plaintiffs explained in the Trial Plan and accompanying exhibits, Plaintiffs intend to deal with the application of multiple states' laws by relying upon a small number of subclasses, grouping together states where materially identical legal standards apply. To further ensure the trial is manageable, Plaintiffs have also provided special verdict forms which guide jurors through the elements of Plaintiffs' claims, under each separate subclass. The groupings are narrowly focused and intuitive.

For example, in proposed Unjust Enrichment Subclass 1, Plaintiffs have grouped those states in which TD Bank does business that use the First Restatement's definition of unjust enrichment into a single subclass.  For Subclass 1, Plaintiffs have combined the states of Connecticut, New Hampshire, Vermont and the District of Columbia.  Representing this class are residents of Connecticut, Vermont, Pennsylvania, New Jersey and New York.  In its Opposition, TD Bank complains that representatives from New York and New Jersey are in this subclass. Opp at 50.[23]  Plaintiffs included representatives from these states because they too can represent Subclass 1.  The reason why is simple, yet TD Bank ignores it: Subclass 3 contains states (Delaware, New Jersey, New York and North Carolina) that also follow the Restatement, but add a requirement that there be an inadequate remedy at law.  Thus if plaintiffs are able to prove all of the elements of Subclass 3, they will also, by definition, already prove the elements of Subclass 1.  This difference is specifically detailed in Plaintiffs Proposed Special Verdict Forms which, for Subclass 3, set forth a question for jurors to decide whether there is an adequate remedy at law.

TD Bank also complains that the only representative of Unjust Enrichment Subclass 2 is also a representative of Subclass 1.  Opp. at 50.  But this is another red herring.  Todd Mosser of Pennsylvania can represent both Subclasses 1 and 2 because, by necessity, if he proves the elements for unjust enrichment under Subclass 2, he will automatically prove the elements needed for Subclass 1 because Subclass 2 contains the same elements under the Restatement, but adds a requirement that there be an appreciation of the benefit conferred.  The proposed special verdict forms deal precisely with this issue by listing as a jury question whether defendant appreciated the benefit conferred from plaintiff and the subclass.  *See* Unjust Enrichment Special Verdict Form (Appx. I to Plaintiff's Motion, Exh. E).

Other supposed insurmountable difficulties are easily explained.  In fact, two of the "difficulties" latched on to by TD Bank are plainly typographical errors.  TD Bank complains that there are inconsistencies between the Trial Plan and the exhibits in that the written Trial Plan includes in Unconscionability Subclass 2 representatives from states not covered by that subclass while the exhibit does not.  Opp at 50.  This is a mere typographical error.  Two of the proposed

---

[23] TD Bank ignores in its response the representatives from Connecticut, Vermont and Pennsylvania, who are also proper representatives of this subclass.

Class representatives were inadvertently listed in the Trial Plan; the correct information appears in the Exhibit.  Appx. I to Plaintiffs' Motion, Exh. C.

Similarly, TD Bank complains that no representatives are listed for Unconscionability Subclass 1 in the Trial Plan, even though the exhibit lists the representatives.  Opp. at 50**.**  This typographical error is even more obvious as the sentence pointed to by TD Bank simply reads "The proposed See Appendix II."  Trial Plan at 14.  It is clear that something went awry in the process of finalizing the document.  This is not grounds to find Plaintiffs' proposed groupings fail.  Plaintiffs regret these errors, as minor as they may be, and can easily provide a corrected Trial Plan, although it should be noted that the correct information was provided in the exhibits.

TD Bank also claims that there are material variations in the law of good faith and fair dealing between the states grouped together by Plaintiffs.  Opp. at 53.  This is incorrect.  TD Bank contends that some states require a showing of bad faith or ill motive, while others do not. Opp. at 54-55.  Yet, the elements in Plaintiffs' proposed jury verdict forms already recognize and accommodate these requirements.  For Subclass 1, which includes the states Connecticut, New Hampshire and New Jersey, the fact finder will be asked to determine whether the defendant acted in bad faith or engaged in unreasonable conduct.[24]  Thus, contrary to TD Bank's assertion, the standards for proving bad faith are not contrasting and are instead uniform.

Relying on *Centronics Corp. v. Genicom Corp.*, 562 A.2d 187, 193-94 (N.H. 1989), TD Bank contends that New Hampshire does not require bad faith.  Opp. at 53.  This is not true. While the *Centronics* court did not explicitly use the words "bad faith," it clearly found that "bad faith" was required when it held a lack of good faith must be proved.  *Id*. at 193-94.  "Bad faith" is synonymous with the absence of good faith; thus, if bad faith is proved, a violation of New Hampshire law is found.

Plaintiffs' two unconscionability subclasses also sufficiently accommodate state-law variations.   Plaintiffs' Trial Plan proposes two subclasses for Plaintiffs' claims for

---

[24]   *See, e.g., De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 288 (Conn. 2004) (bad faith by defendant required); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005) (bad faith by defendant required; unreasonable conduct is a form of bad faith); *Bennett v. ITT Hartford Group*, 846 A.2d 560, 564 (N.H. 2004) (requirement that defendant not act in good faith); *Payne v. Fujifilm U.S.A., Inc.*, 2007 U.S. Dist. LEXIS 94765, at *34 (D.N.J. Dec. 28, 2007) (bad faith performance constitutes breach of the covenant);[24] *Harsch Props., Inc. v. Nicholas*, 932 A.2d 1045, 1051 (Vt. 2007) (breach of the covenant requires an absence of good faith)

- 27 -

unconscionability, both of which are based on Uniform Commercial Code § 2-302.  The only differences among the states pertain to whether both procedural and substantive unconscionability are required (Subclass No. 1), and whether only substantive unconscionability is required (Subclass No. 2).  *See* Trial Plan at 5-6 & Exh. C thereto.  TD Bank lodges two baseless objections to these subclasses.

TD Bank asserts that New York prohibits unconscionability as an affirmative claim.  Opp. at 54.  However, the Court has already rejected this argument, finding that, while unconscionability is ordinarily asserted as a defense to a contract, this is not the ordinary case.  *See* Order on Motion to Dismiss [DE# 305] at 26.  Further, the Court has found that it may declare as unconscionable contractual clauses purporting to reserve discretion to re-sequence transactions highest-to-lowest so as to maximize overdraft fee charges, and that the Court may fashion appropriate equitable relief.  *Id.*

TD Bank also claims that New Jersey requires proof of unconscionability on a sliding scale, and therefore should not be grouped in the same subclass.  However, a material variation in standards does not result because some of the cases discuss how substantive and procedural unconscionability need not be present in equal measure and that a sliding scale can be invoked.  *E.g., Hayes v. Oakridge Home*, 908 N.E.2d 408, 420-21 (Ohio 2009).  This merely goes to how evidence is weighed and is easily accommodated via jury instructions.  TD Bank fails to cite any authority to the contrary.

TD Bank's argument regarding the unjust enrichment subclass is similarly misguided.  First, contrary to the Bank's claim, courts can and do certify unjust enrichment claims.  For example, Judge Seitz certified a 17-state unjust enrichment subclass in *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 551, 697 n.40 (S.D. Fla. 2004), finding that unjust enrichment law is "virtually identical" from state to state.  *See also In re Mercedes-Benz Tele Aid Contract Litig.*, 267 F.R.D. 113, 119 (D.N.J. 2010) (the minor variations in the elements of unjust enrichment in the laws of the various states are not material and do not create conflicts).

Second, TD Bank asserts that the unjust enrichment claims cannot be certified because there can be no unjust enrichment claim where there is a formal contract with the parties.  Opp. at 54-55.  But the Court already addressed this argument in response to motions to dismiss and held that Plaintiffs are entitled to proceed on both a breach of contract and unjust enrichment theory in the alternative, adding:  "Federal Rule of Civil Procedure 8(d) allows pleading in the

- 28 -

alternative, even if the theories are inconsistent.  Defendants have not conceded that Plaintiffs are entitled to recovery under the contract, and it is possible that if their contractual claim fails, Plaintiffs may still be entitled to recovery under an unjust enrichment theory."  Order on Motion to Dismiss [DE# 305] at 32-33.  Thus, the unjust enrichment claims should move forward and be certified as class claims.

### C.      There Are No Constitutional Problems With Plaintiffs' Trial Plan.

TD Bank complains the proposed Trial Plan violates due process, the Seventh Amendment and Article III of the U.S. Constitution.  Nonsense.  First, the proposed Trial Plan is not final, by necessity.  Discovery is ongoing and changes to the Plan, in light of the completion of discovery, reports from experts, and orders by the Court may allay the concerns expressed by TD Bank.  Second, far from computing damages on an aggregate basis without regard to the individual circumstances of each putative Class member, Plaintiffs' plan is to calculate a total Class damage number by first calculating the amount of damage suffered by each Class member and taking into consideration the individual circumstances of each Class member.  Trial Plan at 8-9.  In other words, total Class damages are calculated by summing each Class member's individual damage.

More specifically, Plaintiffs' expert Arthur Olsen will first mine TD Bank's detailed transaction data to identify each Class member who incurred overdraft fees as a result of high-to-low re-sequencing of debit transactions by comparing that re-sequencing to each of the alternative posting scenarios discussed in his declaration.  Olsen Decl., ¶ 47.  Mr. Olsen will then calculate each Class member's individual damage.  *Id.*, ¶ 47.  And contrary to TD Bank's contention that Plaintiffs' methodology ignores the individual circumstances of each Class member, Mr. Olsen's approach also considers any reversals and write-offs specific to each Class member.  *Id.*, ¶ 24-28.  Indeed, Mr. Olsen has already applied his reliable methodology to calculate the precise amount of each named Plaintiffs' damage by reference to one potential alternative posting order.  *Id.*, ¶¶ 49-53.

Only after the fact finder has awarded total Class damages will that total number be distributed to Class members in a post-trial administrative procedure.  In that process, checks or direct deposits will be issued to each individual Class member ***based on Mr. Olsen's calculation of each Class member's individualized damages as found by the adjudicator of fact***.  Mot. at

- 29 -

50; Trial Plan at 2-3.[25]  There simply will not be any post-trial factual determinations during this distribution process that infringes the fact finder's role to determine individual damages.[26]

TD Bank is deprived of no rights by having Plaintiffs' expert, following the liability portion of the trial, determine the amount of damages each class member is entitled to by using a formula based on the jury's verdict regarding the proper posting order.  The claimed constitutional issues are non-existent.

## VIII.  PLAINTIFFS' TRIAL PLAN ESTABLISHES THAT THE ACTION IS MANAGEABLE

### A.  The Trial Plan Adequately Addresses All Potential Issues.

In addition to its claims of confusion regarding Plaintiffs' proposed subclasses, TD Bank also seeks to defeat certification by claiming that in order to try Plaintiffs' claims, so many subclasses would be required as to render the action unmanageable.  This is untrue.  The number of subclasses proposed—13 in total with five of those being separate statutory subclasses—is entirely manageable.  Of course, thirteen subclasses is eminently more manageable than the thousands of individual cases that would exist should certification be denied.[27]

TD Bank contends that the Court is likely to encounter management difficulties sufficient to negate a finding of superiority.  Opp. at 53-57.  But, as demonstrated above and in Plaintiffs'

---

[25] The cases relied upon by TD Bank highlight the weakness of their position.  *Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592, 604 (E.D. La. 2002) is wholly inapposite.  In that case plaintiffs sought to focus on a representative sample of injured plaintiffs to determine damages.  Here, by contrast, Plaintiffs' expert would calculate each class members actual damages, using TD Bank's own records. *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 311 (5th Cir. 1998) and *Kpade v. Emmanuel*, 261 F.R.D. 687, 692 (S.D. Fla. 2009), also cited by TD Bank, fare no better.  *Cimino* was an asbestos case where representative cases were to be extrapolated to find class-wide liability.  Here, by contrast, each Plaintiff's actual records will be mined to determine damages following a finding for Plaintiffs.  *Kpade* is completely irrlevant.  There the court found class certification inappropriate where the question as to whether each alleged victim was tortured and arbitrarily detained was necessarily an individual one and plaintiffs had proposed using summary reviews of deposition transcripts from a sample of the class plaintiffs to determine liability and damages.

[26] In any event, TD Bank ignores Plaintiffs' authorities recognizing that post-trial administrative proceedings can be used to make individualized damages determinations, even though that will not be necessary here.  *See* Mot. at 3 n.2.

[27] Should the Court certify the proposed Class and see droves of class members decide to request exclusion, the Court retains discretion to later decertify the Class.  However, the paltry number of opt-outs in the *Gutierrez* certification against Wells Fargo ***where only 44 consumers elected to exclude themselves out of a class of approximately 1.1 million***, demonstrates that individual consumers are not interested in prosecuting separate actions.

Motion and Trial Plan, common issues will predominate.  Any individual issues that remain will be ancillary, will not be the focus of most of the Court's efforts, and will neither vitiate predominance of the common issues nor make trial unmanageable.  Plaintiffs set forth a very cogent and reasonable plan for trying this case based on detailed citations to common evidence, and TD Bank cannot rebut it.

Moreover, as Plaintiffs highlighted in their Motion, the manageability factor "will rarely, if ever, be in itself sufficient to prevent certification of a class."  *Klay*, 382 F.3d at 1272.  The question is not whether a class trial will be easy to manage but, rather, whether multiple individual lawsuits would be more manageable than a class action.  *Id.* at 1273.[28]  TD Bank does not argue that multiple individual lawsuits would be more manageable, and it is indeed difficult to envision how a multiplicity of suits would be superior to a single class-wide proceeding.  Second, despite TD Bank's claims to the contrary, the purported variations in state law detailed by TD Bank in its Opposition are not material.

TD Bank claims that Plaintiffs have failed to adequately address individual questions related to Plaintiffs' claims by presenting three unconvincing arguments.  First, TD Bank argues that in order to state a claim under the UTPCPL, Plaintiffs must plead all of the elements of common law fraud, including reliance, citing *Weinberg v. Sun Co., Inc.,* 565 Pa. 612, 618, 777 A.2d 442 (Pa. 2001).  However, since *Weinberg*, several courts have held that the Pennsylvania legislature's 1996 amendment to the UTPCPL (which was not addressed in *Weinberg*) eliminated the requirement that a plaintiff plead each element of common-law fraud and do not require proof of individual reliance where a causal nexus is shown. *See, e.g., Weiler v. SmithKline Beecham Corp.,* 2001 WL 1807382, 53 Pa. D. & C.4th 449, 452-55 (Pa.Com.Pl. 2001); *Flores v. Shapiro & Kreisman,* 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002) (holding that, to survive a motion to dismiss, plaintiff seeking relief under UTPCPL need allege only that conduct was deceptive; all six elements of common law fraud are not necessary).   Second,   TD   Bank asserts that Plaintiffs' Special Verdict Form for the UTPCPL claims "descends into a cloud of contradiction" because it tells the jury that if it finds that Plaintiffs have not proven reliance, it should proceed to a series of questions that ask whether Plaintiffs justifiably relied on the

---

[28] *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("[T]he realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.")

misrepresentation by the Defendant.  Opp. at 51.  However, the apparent contradictory and repetitive nature of this series of questions is not the result of an error caused by manageability of the subclasses as TD Bank contends.  Rather, this series of questions represent the elements required to satisfy UTPCPL section 201-2(4)(xxi), also known as the "catchall provision."  As discussed above, the "catchall provision" was amended in 1996 to prohibit deceptive conduct in addition to fraudulent conduct as follows: "Engaging in any other fraudulent *or deceptive* conduct which creates a likelihood of confusion or of misunderstanding." Act 146, P.L. 906, § 1, December 4, 1996.

TD Bank's third and final attack on Plaintiffs' Trial Plan rests on the assertion that three of the named Plaintiffs in the Good Faith and Fair Dealing Subclass No. 1—Carcaci, Schwartzman and Nico—present individual questions because they were all customers of Commerce Bank before it was acquired by TD Bank in 2009.  This argument fails, however, because, for the reasons discussed above, the subjective expectations and experiences of individual Plaintiffs are irrelevant.  Moreover, as Plaintiffs have established, TD Bank's disclosures were uniformly inadequate.[29]

Moreover, any individual issues of fact relating to overdraft fee reversals can be easily addressed in the calculation of damages phase, and do not predominate over the issues common to the Good Faith and Fair Dealing Subclass No. 1.

**B.      TD Bank's Claimed Timing Variations Are Not Material.**

Variations in the timing of Plaintiffs' injuries do not create the need for an unmanageable number of subclasses as TD Bank contends.  While TD Bank attempts to show that material changes occurred over time that affect some putative Class members and not others, the evidence put forth in its brief fails to show any material variations in the challenged policies over time.  On the contrary, each example of a bank policy or notice provided by TD Bank from December 1999 to March 2011 contains the same or substantially similar language, each failing to

---

[29] TD also claims that former Commerce Bank customers like Carcaci, Schwartzman and Nico present individual issues because TD "entertained reversals of all initial overdraft fees for any customer who expressed surprise or unhappiness."  Opp at 52. While this policy "entertained" *initial* reversals of overdrafts by former Commerce Bank customers, there was never any change in TD Bank's course of conduct as the bank continued to charge customers overdraft fees while posting debits and credits from largest to smallest amount.  These reversals were only possible for an initial overdraft fee incurred by former Commerce Bank customers after integration, and that was only if customers actually caught the initial overdraft charge and complained to the Bank.

adequately disclose the posting order TD Bank applied to debit transactions.  Opp. at  55-56.

Furthermore, even assuming that various putative Class members received policy notices at

different times over the years, the timing of the policies or notices is immaterial, as TD Bank was

clearly engaged in a common course of conduct that was consistent throughout the Class Period.

*See Priest v. Zayre Corp.,* 118 F.R.D. 552, 556 (D. Mass. 1988) ("A class period spanning the

release of different documents is appropriate where the documents repeated the same

misrepresentation or constituted a common course of conduct.").   In *Priest*, the court held that

the alleged misrepresentations were sufficiently related in time and in content to be construed as

a common course of conduct for purposes of class certification, and noted that "[t]he difference

in purchase dates does not present an inherent conflict, especially given the cumulative effect

that the misrepresentations could have." *Id.* at 557.[30]

In sum, TD Bank's manageability challenge fails.  This case can and will be tried in an

efficient manner.  This is what the Court concluded in *Larsen*, 275 F.R.D. at 680, and there is no

reason to alter course here.   Trying this matter as a class action is a superior means of

adjudicating this dispute.

## VIII.   MEMBERSHIP IN THE CLASS IS ASCERTAINABLE

In a last-ditch effort to defeat class certification, TD Bank erroneously argues that the

proposed Class cannot be ascertained by reference to objective criteria.  Opp. at 57.  The crux of

this argument is the mistaken assumption that Plaintiffs need to define a "baseline" posting order

---

[30] The cases TD Bank cites in support of its argument that the presence of individual issues precludes
class certification, Opp. at  57, are easily distinguishable on factual grounds, as the plaintiffs in each case
failed to adequately allege a common course of conduct by the defendants that resulted in class-wide
injury.  In *In re Healthsouth Corp.*, some of the proposed class members lacked standing to sue under the
same cause of action, and some class members were shown to have benefitted from the very conduct that
allegedly injured the others.  *See In re Healthsouth Corp.*, 213 F.R.D. 447, 464-465 (N.D. Ala. 2003).
Such individual questions are not an issue in the present case, as all Plaintiffs in the proposed subclasses
have standing to sue under the same cause of action, and all were injured by a common course of conduct
on the part of the TD Bank.  *Andrews* involved 900-number telephone programs which allegedly involved
illegal gambling.  The Eleventh Circuit found insurmountable problems because reliance would have to
be proven on an individual basis and the defendant had no records to prove injury and damages.  *See
Andrews v. Am. Tel. & Tel.,* 95 F.3d 1014, 1024 (11th Cir. 1996).  Since individual reliance is not an issue
in the instant case and TD Bank has detailed records, *Andrews* is distinguishable and is not controlling
here.  Finally, in *Iberia Credit Bureau,* the court declined to certify the class because the plaintiffs were
subject to varying contract terms between governmental and non-governmental plaintiffs. *See Iberia
Credit Bureau,* 2011 U.S. Dist. LEXIS 131607, *22-23 (W.D. La. Nov. 9, 2011).  As explained above,
that is not the case here.

- 33 -

against which its high-to-low posting order can be compared to establish membership in the Class. Opp. at 58. While specifying such a baseline is unnecessary at this stage, Plaintiffs do allege an alternative posting order that disposes of all of TD Bank's objections. Plaintiffs have pled that all customers who were charged additional overdraft fees, as compared to what they would have been charged under a *low-to-high* posting practice, were harmed by TD Bank's re-ordering scheme. *See* Consol. Third Am. Class Action Compl. [D.E. 997], ¶¶ 56, 87. Using that implicit alternative posting order in the class definition leaves no ambiguity about class membership: those customers who incurred additional overdrafts as a result of the high-to-low posting, as compared to low-to-high posting, are readily ascertainable through TD Bank's own records.

Contrary to TD Bank's suggestion, *see* Opp. at 58-59, the composition of the class will not vary if liability is ultimately premised on a less consumer-friendly posting order than low-to-high. The fact-finder's determination of the appropriate alternative posting order as a comparator for purposes of measuring damages, *see Larsen*, 275 F.R.D. at 673, will only affect which class members are entitled to recover and how much, not who is part of the class that will be bound by the judgment. A judgment for Plaintiffs using a different comparator (say, chronological) would still bind all class members.

In any event, specifying the alternative posting order is not necessary at class certification because, as the Court previously recognized in *Larsen,* what matters for present purposes is that Plaintiffs have shown that the class *can* be identified through objective means. *Larsen*, 275 F.R.D. at 672-73. In *Larsen*, the Court found that "Mr. Olsen can identify which … customers incurred additional overdraft fees as a result of high-to-low … [posting] by comparing that re-sequencing *to each of the alternative posting scenarios* . . . ." 275 F.R.D. at 673 (emphasis added). Mr. Olsen can do the same thing in this case.

TD Bank also argues that the Class definition is impermissibly vague because its start date is based on the applicable statutes of limitation rather than a particular date in time. Opp. at 59. TD Bank is wrong. A class definition should include the relevant time period during which the class members incurred the claimed injury. Manual For Complex Litigation (Fourth), § 21.222, at 394. Called the "Class Period," this time period is commonly linked to statutes of limitation where, like here, the challenged conduct predates the relevant limitations period. *See, e.g., Vega*, 564 F.3d at 1263 (court did not take issue with definition of class period as beginning

with the "commencement of the statute of limitations through the date that the Court certifies this suit as a class action"); *Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689 (S.D. Fla. 2010) (certifying class defined as "[a]ll Florida consumers who purchased Enfamil® LIPIL® within the applicable statute of limitations."); *N. Jackson Pharm., Inc. v. Express Scripts, Inc.*, 2006 U.S. Dist. LEXIS 98774, at *18-20 (N.D. Ala. Mar. 3, 2006) (class certified where class period beginning date was based on when limitation period began to run); *Larsen*, 275 F.R.D. 280-281.[31]

There is nothing vague about the Class Period proffered by Plaintiffs here. As detailed in the Trial Plan, Plaintiffs' propose 13 subclasses for the state law claims. Each subclass will have its own start date linked to the statute of limitations for each of those claims.[32]

## CONCLUSION

For all of the foregoing reasons, and for the reasons set forth in Plaintiffs' Motion and Trial Plan, Plaintiffs respectfully request that the Court grant their motion to certify the Class pursuant to Fed. R. Civ. P. 23(b)(3). A proposed Order is attached.

---

[31] Notably, where class members may be subject to different statutes of limitations or where a class definition merits further clarification, class certification is not defeated. Rather, courts commonly create subclasses if various statutes of limitations are involved in the same action. *See, e.g., Brown v. Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 608 (S.D. Fla. 2003) (where two distinct statutes of limitations governed class members' claims, court remedied issue by creating subclass for each).

[32] TD Bank's citation to *Clausnitzer v. Fed. Express Corp.*, 248 F.R.D. 647, 655 (S.D. Fla. 2008)(*see* Opp. at 59), is unavailing because the plaintiffs in that case, unlike Plaintiffs in this action, failed to present a proposed subclass scheme. Moreover, *Clausnitzer* involved employment agreements including limitations periods shorter than those provided by the applicable state laws; determining the validity of those provisions presented choice of law issues potentially requiring individualized fact inquiries not implicated by the facts of this case. *See id.*

Dated: March 6, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No.  516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

- 36 -

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE No. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

### CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596