# EXHIBIT "C"

Plaintiffs' Reply in Support of Their Motion for Class Certification

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:

*Dwyer v. TD Bank, N.A.*,
S.D. Fla. Case No. 10-20855-JLK
D. Mass. Case No. 09-cv-12118

*Mascaro v. TD Bank, N.A.*,
S.D. Fla. Case No. 10-21117-JLK
D.D.C. Case No. 10-cv-0040

*Mosser v. TD Bank, N.A.*,
S.D. Fla. Case No. 10-21386-JLK
E.D. Pa. Case No. 10-cv-00731

*Mazzadra, et. al. v. TD Bank, N.A.*,
S.D. Fla. Case No. 10-21870-JLK

---

**REPLY DECLARATION OF ARTHUR OLSEN
IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

I, Arthur Olsen, declare as follows:

1. I submit this reply declaration in support of Plaintiffs' class certification motion.

2. I have reviewed the declaration of TD Bank's expert, Mr. Visser, dated January 27, 2012, as well as TD Bank's "*Daubert* Motion to Exclude the Declaration of Plaintiffs' Proposed Expert Arthur Olsen and Incorporated Memorandum of Law," dated

January 28, 2012. Moreover, I personally attended the deposition of Mr. Visser, taken on February 16, 2012. In this declaration, I respond to points made by TD Bank and Mr. Visser.

3. Contrary to certain suggestions of TD Bank and Mr. Visser, I was not asked by Plaintiffs to opine about the proper measurement of damages/restitution in this case, or about the appropriate but-for "scenario" to be used for that purpose, and I offer no opinions regarding those issues.

4. TD Bank and Mr. Visser sought clarification about the methodology that I can and would use in this case to programmatically identify, using the Bank's data, the authorization dates and times for posted debit card transactions (i.e., my "matching" methodology). While I have described that methodology already, including at my deposition, I reiterate it here. Specifically, for each debit card transaction that posted, a search was made of the settlement data in order to find the authorization request. This search was made based on account number and settlement amount, and the settlement data was searched for a fixed number of days preceding the posting date, (originally set at three days).

5. Mr. Visser loosely suggests in his expert report that I might only be able to identify authorization dates and times for about one half of debit card transactions. Based on Mr. Visser's deposition testimony, I do not believe that he is actually taking this position, but to be clear, it is absolutely incorrect. Using the data that was provided to me by the Bank for the named plaintiffs, for the posted debit card transactions, I initially searched through the Bank's authorization data for the prior three days to match settlement amounts with authorization amounts in order to identify the authorization dates and times for posted transactions. Using three days, I was able to programmatically identify authorization dates and times for approximately 75% of the debit card transactions. After I submitted my initial

declaration, I performed the same matching exercise two more times, these times using five and seven days instead of three days (i.e., using the data that was provided to me by the Bank, for the posted debit card transactions, I searched through the Bank's authorization data for the prior five and seven days, respectively, to match settlement amounts with authorization amounts in order to identify the authorization dates and times for posted transactions). Using either five days or seven days, I was able to programmatically identify authorization dates and times for approximately 85% of the debit card transactions.[1] Of course, having identified this improvement, I would use the larger number of days for my comprehensive analysis in this case.

6. Likewise, TD Bank's expert, Mr. Visser, testified at his deposition that he applied my matching methodology, using five days, to a larger set of the Bank's customer data than I was provided, and he too was able to identify authorization dates and times for approximately 85% of debit card transactions. That is very close to the percentage of debit card transactions I was able to identify authorization dates and times for in *Gutierrez v. Wells Fargo* for my class-wide analysis, and supports my conclusion that I can apply the same (or a very similar) methodology in this case to reliably measure differentials under the various alternative scenarios.

7. In this case, with respect to the approximately 15% of debit card transactions for which I could not identify authorization dates and times (e.g., the gas station example) in the data provided, the reason I could not do so was because the Bank either did not maintain, or did not provide to me, data linking these debit card transactions to the corresponding

---

[1] Using five days, I was able to match for 84.8%. Using seven days, I was able to match for 87.5%.

settlement data. Based on the testimony of TD Bank's John Longinetti in this case, it appears that there may be additional linking data that the Bank maintains (but which was not provided to me) that would allow me to identify authorization dates and times for *even more* than the approximately 85% I could identify using the data points that were provided to me. If data of this nature is provided, I could incorporate that information into my analysis.

8. In *Gutierrez v. Wells Fargo*, my "2A" scenario (adopted by the Court) was identical to another scenario I ran in that case, except with respect to where the approximately 15% of debit card transactions without authorization date and time information were sequenced in relation to the approximately 85% of debit card transactions with authorization date and time information. It made very little difference in the aggregate (less than 1/10 of one percent difference) whether the transactions without date and time information were posted before or after the transactions with date and time information.

9. With respect to fee reversals, I was not provided any data from TD Bank showing that any specific overdraft fee reversals were tied to any specific overdraft fees assessed. To the extent the Bank did tie overdraft fee reversals to specific fees assessed, and the corresponding data is provided to me, I could incorporate that information into my analysis.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of March, 2012, at San Francisco, California.

_____

ARTHUR OLSEN