**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

_____/

THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTIONS

*Sachar, et al. v. IBERIABANK Corporation, et*
*al.*
S.D. Fla. Case No. 1 :1 1-CV-22844-JLK

_____/

**PLAINTIFFS' CORRECTED APPLICATION FOR SERVICE**
**AWARDS AND CLASS COUNSEL'S APPLICATION FOR**
**ATTORNEYS' FEES, AND INCORPORATED MEMORANDUM OF LAW[1]**

**I. INTRODUCTION**

Class Counsel successfully negotiated the Settlement with IBERIABANK Corporation

and IBERIABANK (collectively hereinafter referred to as "IBERIABANK"), memorialized in

the Amended Settlement Agreement and Release of October 19, 2011 (the "Agreement"), under

which IBERIABANK will pay $2.5 million in cash to the Settlement Class[2] and begin posting

Debit Card Transactions to IBERIABANK Accounts in the order in which they are authorized or

settled by IBERIABANK. This proper method of posting began on November 1, 2011. [Doc. 34,

Attachment 1 ¶ 50].

---

[1] Plaintiffs filed their Application for Service Awards and Class Counsel's Application for
Attorneys' Fees, and Incorporated Memorandum of Law on March 1, 2012. It contained certain
errors and incorrect exhibits that needed to be corrected. This Corrected Motion is being filed
with the consent of Defendant's Counsel.

[2] All capitalized terms have the same meaning as defined in the Settlement Agreement attached
as Exhibit A to Plaintiffs' Corrected Motion for Final Approval of Settlement and Incorporated
Memorandum of Law. Any capitalized terms not defined there are defined herein.

In conjunction with the present motion, Plaintiffs have moved for Final Approval of the Settlement on behalf of the Settlement Class. The controlling legal standards and supporting facts warrant Final Approval of this Settlement.

In addition, Class Counsel now request that the Court award service awards to the Plaintiffs, whose willingness to represent the Settlement Class and active participation in the Action have made this result possible. Class Counsel also respectfully request that the Court award attorneys' fees and reimbursement of expenses to compensate for their work in achieving this result for the benefit of the Settlement Class.

For the reasons detailed below, Plaintiffs and Class Counsel ask that the Court: (1) award service Awards to the Settlement Class Representatives; and (2) award Class Counsel attorneys' fees.

## II. APPLICATION FOR SERVICE AWARDS TO THE CLASS REPRESENTATIVES

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp*., 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See, e.g., Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc*., 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g., Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The above factors, as applied to this case, demonstrate the reasonableness of a service award of $5,000 to each Class Representative. Among other things, each Class Representative

took numerous actions and provided substantial assistance to Class Counsel by locating and forwarding responsive documents and information – including monthly account statements and account agreements – and by engaging in conferences with Class Counsel. In so doing, the Class Representatives were integral to forming the theory of this case. The Class Representatives not only devoted time and effort to this litigation, but the end result of their efforts, and those of counsel, was an immediate and tangible benefit to the Class. The Class Representatives should be rewarded for their service.

If each of the Class Representatives is awarded $5,000, the total service awards will only be $10,000. This is a mere 0.4% of the Settlement Fund of $2.5 million, and well within the range of reasonable service awards. *See, e.g., Enter. Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 251 (S.D. Ohio 1991) (approving service awards totaling $300,000, or 0.56 percent of the $56.6 million settlement fund). The requested service awards of $5,000 are reasonable and should be approved.

## III. CLASS COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

As indicated in the Court-approved Notice disseminated to the Settlement Class, and consistent with standard class action practice and procedure, Class Counsel request a fee amounting to 27.5 percent of the $2.5 million common fund created through their efforts in reaching this Settlement and expenses in the amount of $83,785.61. *See* Joint Decl. of Class Counsel, Ex. A ¶ 59.  This fee request is well within the guidelines set forth by the Eleventh Circuit in *Camden I Condominium Assn. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).  For the reasons set forth below, the requested attorney fee award is appropriate, fair and reasonable, and should be approved.

**A.**     **The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.**

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *Id*. at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727

F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1195 (6th Cir. 1974). The common benefit doctrine is based on the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Boeing*, 444 U.S. at 478; *Mills*, 396 U.S. at 392. Thus, the Supreme Court, the Eleventh Circuit, and courts in this District have all noted that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980)); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

Courts also have recognized that appropriate awards of attorneys' fees in cases such as this encourage redress for wrongs caused to entire classes of persons, as well as discourage future misconduct of a similar nature:

> [C]ourts . . . have acknowledged the economic reality that in order to encourage 'private attorney general' class actions brought to enforce . . . laws on behalf of persons with small individual losses, a financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid.

*Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988); *see also Deposit Guar. Nat'l Bank v. Rope*, 445 U.S. 326, 338-39 (1980). Adequate compensation promotes the availability of counsel for plaintiffs:

> If the plaintiffs' bar is not adequately compensated for its risk, responsibility, and effort when it is successful, then effective representation for plaintiffs in these cases will disappear . . . . We as members of the judiciary must be ever watchful to avoid being isolated from the experience of those who are actively engaged in the practice of law. It is difficult to evaluate the effort it takes to successfully and ethically prosecute a large plaintiffs' class action suit. It is an experience in which few of us have participated. The dimensions of the undertaking are awesome.

*Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

In the Eleventh Circuit, class counsel is awarded a percentage of the funds generated through a class action settlement. In *Camden I* – the controlling authority in this Circuit dealing with the issue of attorneys' fees in common-fund class-action cases – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a

common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam*, 176 F. Supp. 2d at 1333 (quoting Camden I, 946 F.2d at 774). Nevertheless, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund," although "an upper limit of 50 percent of the fund may be stated as a general rule." *Id.* (quoting *Camden I*, 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30 percent and then adjusted the fee award higher based on the circumstances of the case). Class counsel's fee request falls within this range.

**B.      The Camden I Factors Support Class Counsel's Requested Fee.**

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award class-action counsel. These factors are:

    (1)     the time and labor required;

    (2)     the novelty and difficulty of the questions involved;

    (3)     the skill requisite to perform the legal service properly;

    (4)     the preclusion of other employment by the attorney due to acceptance of the case;

    (5)     the customary fee;

    (6)     whether the fee is fixed or contingent;

    (7)     time limitations imposed by the client or the circumstances;

    (8)     the amount involved and the results obtained;

    (9)     the experience, reputation, and ability of the attorneys;

    (10)    the "undesirability" of the case;

    (11)    the nature and the length of the professional relationship with the client; and

    (12)    awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *In re Sunbeam,* 176 F. Supp. 2d at 1333 (quoting *Camden I,* 946 F.2d at 775). These factors are merely guidelines, and the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Id.* (quoting *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997)). As applied here, the *Camden I* factors demonstrate that the Court should award Class Counsel the requested fee.

### 1. The Claims Against IBERIABANK Required Substantial Time, Labor, and Expense.

Prosecuting and settling the claims in the Action demanded considerable time, labor, and expense, making this fee request reasonable. Class Counsel spent many hours investigating the claims against IBERIABANK and incurred expenses in the amount of $83,785.61. *See* Ex. A. ¶ 59. Class Counsel interviewed plaintiffs to gather information about IBERIABANK's conduct and its impact upon consumers. *Id.* This information was essential to Class Counsel's ability to understand the nature of IBERIABANK's conduct, the language of the account agreements at issue, and potential remedies. *Id.* Class Counsel obtained, reviewed, sorted, and analyzed numerous IBERIABANK deposit account agreements.

### 2. The Issues Involved Were Difficult and Required the Exceptional Skill of a Highly Talented Group of Attorneys.

Class Counsel's legal work has conferred an immediate and tangible benefit on the Class. As the Court is aware from its history of dealing with similar cases in the MDL, it is extremely challenging to identify and establish liability based upon the Debit Re-sequencing that lies at the heart of the Action. Even from the face of Plaintiffs' bank statements, the proof is not self-evident. Instead, it requires the acquisition and analysis of a substantial amount of bank data – and the efforts of a highly skilled expert. Litigation of a case like this requires counsel highly trained in class action law and procedure as well as the specialized issues these cases present. All of the lawyers representing Plaintiffs possess these attributes, and their participation as Class Counsel added significant value to the representation of this large Settlement Class consisting of tens of thousands of individuals.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. *See Walco*, 975 F. Supp. at 1472 (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"). Class Counsel have extensive experience in complex and class action litigation.

In assessing the quality of representation by Class Counsel, the Court also should consider the quality of their opposing counsel. *See, e.g., Camden I*, 946 F.2d at 772 n.3; Johnson, 488 F.2d at 718; *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992). IBERIABANK is represented by extremely able and diligent attorneys. These were highly competent adversaries.

### 3.     The Claims Against IBERIABANK Entailed Considerable Risk.

IBERIABANK possessed vigorous defenses to these claims, denying any and all liability. The time and expense demands on Class Counsel were significant. "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *In re Sunbeam*, 176 F. Supp. 2d at 1336. In addition, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motor Corp*., 860 F.2d 250,258 (7th Cir. 1988), cert. denied, 493 U.S. 810 (1989). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit – not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp*., 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

Prosecuting the Action was risky from the outset. Joint Decl. ¶ 63. First, IBERIABANK would have raised its preemption argument at all stages of the litigation. *See White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1369 (N.D. Ga. 2008) ("At least at this stage, this court is unprepared to hold that the state laws under which Plaintiffs assert their claims are contrary to federal banking law."). The centrality of the preemption issue to IBERIABANK's defense is further illustrated by the fact that (1) Union Bank raised preemption (under the National Bank Act) in two of its three main arguments in its recent petition to the Eleventh Circuit challenging this Court's class certification order under Federal Rule of Civil Procedure 23(f), see Eleventh

Circuit Case No. 11-90012; and (2) Wells Fargo emphasized the preemption issue in appealing the *Gutierrez* verdict (*Gutierrez v. Wells Fargo Bank, N.*A., 730 F. Supp. 2d 1080 (N.D. Cal. 2010)) to the Ninth Circuit – devoting more pages to that issue than to any other in both its opening and reply briefs, *see* Ninth Circuit Case Nos. 10-16959, 10-17468 & 10-17689. Had this litigation proceeded, IBERIABANK undoubtedly would have argued that the Home Owners' Loan Act, like the National Bank Act, preempts these claims on the grounds that they "significantly interfere" with its federally-authorized banking powers. *Barnett Bank of Marion City, N.A. v. Nelson*, 517 U.S. 25, 33 (1996). In further support of its argument that the claims conflict with federal law, IBERIABANK would have pointed to the fact that the Federal Reserve Board has the authority to promulgate regulations for all financial institutions, and has authorized banks to "cover" customer overdrafts subject only to disclosure requirements under Regulation DD.  While Class Counsel believe that these specific claims – brought under state laws of general applicability, and based on allegations of bad-faith conduct – are not preempted, no one doubts that the preemption issue involves complex issues of law and fact, and presented an ongoing, major risk to Plaintiffs' claims against IBERIABANK.

Second, IBERIABANK would have continued to assert that language in its deposit account agreement shields it from liability for the claims asserted in the Actions.  IBERIABANK would contend that this language expressly authorized it to engage in the challenged Debit Re-sequencing and, as a material term in the account agreements, foreclosed any finding of breach of the covenant of good faith and fair dealing.

Third, IBERIABANK would have continued to argue that no claim exists under the deceptive trade practices law because Arkansas law has a safe harbor provision that specifically exempts conduct that is permitted under laws administered by a federal agency.  Moreover, IBERIABANK would vigorously contend that no fiduciary relationship exists between it and Plaintiffs, and that, even such a fiduciary relationship existed, IBERIABANK provided Plaintiffs with the proper disclosures.

Each of these risks, standing alone, could have impeded Plaintiffs' successful prosecution of these claims at trial (and in any appeal). Together, they demonstrate that Plaintiffs' claims against IBERIABANK were subject to great risk and challenging defenses. In light of all the circumstances, the Settlement achieves an excellent class-wide result. *Id.*

8

    **4.**    **Class Counsel Assumed Substantial Risk to Pursue This Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.**

Class Counsel prosecuted the Action entirely on a contingent fee basis and bore the expense of the litigation. In undertaking to prosecute this complex action on that basis, Class Counsel assumed a significant risk of nonpayment or underpayment. *Id.* That risk warrants the requested fee.

Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award. "A contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), modified, 803 F.2d 1135 (11th Cir.); *York v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

Public policy concerns – especially ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs whose individual claims would defy vindication – further justify such a fee award. As this Court observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

Class Counsel remains completely uncompensated for their time invested in this case. Uncompensated expenditures of this nature can severely damage or even destroy law firms. The Action entailed substantial risk of nonpayment and resulting financial catastrophe. Furthermore, the time spent on the Action was time that could not be spent on other matters. This factor strongly supports the requested fee.

**5.      Class Counsel Achieved an Appropriate Result.**

The Settlement is an immediate and tangible achievement for the Class Members. Instead of facing additional years of costly and uncertain litigation, tens of thousands of Settlement Class Members will receive an immediate benefit from a settlement fund of $2.5 million. More importantly, the Settlement includes an injunction against Debit Re-sequencing, which will benefit the Class Members now and in the future. The Settlement represents an important achievement for the Class Members.

**6.      The Requested Fee Comports with Customary Fees Awarded in Similar Cases.**

The fee requested here is 27.5 percent of the common fund plus costs and is less than the fee typically awarded in similar cases. As legions of decisions have recognized, a fee award of 30 percent of a common fund is well within the range of a customary fee. *See, e.g., In re Sunbeam*, 176 F. Supp. 2d at 1333-34. Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent, confirming the fairness and reasonableness of the fee requested here. As another member of this Court observed, "federal district courts across the country have, in the class action settlement context, routinely awarded class counsel fees in excess of the 25 percent 'benchmark,' even in so-called 'mega-fund' cases." *Allapattah Servs., Inc. v. Exxon Corp*., 454 F. Supp. 2d 1185, 1210 (S.D. Fla. 2006) (awarding fees equaling 31 percent of settlement of over $1 billion including interest; citing, inter alia, *In re Relafen Antitrust Litig*., No. 01-12239WGY (D. Mass. Apr. 9, 2004) (33 percent); *In re Lease Oil Antitrust Litig*., 186 F.R.D. 403 (S.D. Tex. 1999) (35.1 percent)); *see also Gaskill v. Gordon*, 942 F. Supp. 382, 387-88 (N.D. Ill. 1996), aff'd, 160 F.3d 361 (7th Cir. 1998) (finding that 33 percent is the norm, but awarding 38 percent of the settlement fund); *In re Combustion, Inc*., 968 F. Supp. 1116 (W.D. La. 1997) (36 percent); *In re Crazy Eddie Sec. Litig*., 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8 percent); *In re Ampicillin Antitrust Litig*., 526 F. Supp. 494, 498 (D.D.C. 1981) (45 percent); *Beech Cinema, Inc. v. Twentieth-Century Fox Film Corp*., 480 F. Supp. 1195, 1199 (S.D.N.Y. 1979), aff'd, 622 F.2d 1106 (2d Cir. 1980) (approximately 53 percent); *Zinman v. Avemco Corp*., 1978 WL 5686 (E.D. Pa. Jan. 18, 1978) (Higginbotham, J.) (50 percent)).

Class Counsel's fee request falls at the low end of the average in the private marketplace, where contingency fee arrangements often approach or equal 40 percent of any recovery. *See, e.g., In re Continental Illinois Sec. Litig*., 962 F.2d 566, 572 (7th Cir. 1992) ("The object in

awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig., Fed. Sec. L. Rep.* (CCH) ¶ 94,268 (S.D.N.Y. 1992) ("what should govern [fee] awards is . . . what the market pays in similar cases . . . ."); *see also Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate.'") (emphasis in original). "In tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring); *see also Kirchoff*, 786 F.2d at 323, 325 n.5 (observing that "40 percent is the customary fee in tort litigation"); *In re Public Service Co. of New Mexico*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) ("If this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery.").[3]

The record here establishes that Class Counsel's fee request is justified and comports with those in similar cases. Indeed, the requested fee falls squarely within the range of awards made in numerous cases brought in this Circuit and District. *See, e.g., Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999), cert. denied, 530 U.S. 1289 (2000) (affirming fee award of 33 fee percent on settlement of $40 million even though most of the fund ultimately reverted to the defendant); *In re Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (35.5 percent fee including costs on a settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-CIV-Gold (S.D. Fla. May 30, 2003) (33 percent fee on settlement of $77.5 million); *In re Terazosin Hydrochloride Antitrust Litig.*, 99-1317-MDL-Seitz (S.D. Fla. Apr. 19, 2005) (33 percent fee on settlement of over $30 million); *Sands Point Partners, LP v. Pediatrix Med. Group, Inc.*, 2002 U.S. Dist. Lexis 25721 (S.D. Fla. 2002) (30 percent fee on settlement of $12 million); *In re CHS Elecs., Inc. Sec. Litig.*, 99-8186-CIV-Gold (S.D. Fla. 2002) (30 percent fee on settlement of over $11 million); *Ehrenreich v. Sensormatic Elecs. Corp.*, 956637-CIV-Zloch (S.D. Fla. 1998) (30 percent fee on settlement of

---

[3] National Economic Research Associates, an economic consulting firm that has conducted a survey of fee awards in class actions, has found that "[r]egardless of the case size, fees average approximately 32 percent of the settlement." Denise N. Martin, et al., Recent Trends IV: What Explains Filings and Settlements in Shareholder Class Actions? at 12-13 (NERA Nov. 1996).

over $44 million); *Tapken v. Brown*, 90-0691-CIV-Marcus (S.D. Fla. 1995) (33 percent fee on settlement of $10 million).[4]

### 7. The Remaining Camden I Factors Also Favor Approving Class Counsel's Fee Request.

The remaining *Camden I* factors likewise support granting Class Counsel's fee request. As noted, the burdens of this litigation have limited Class Counsel's pursuit of other cases. The relatively small size of most of the firms representing Plaintiffs, and the major commitment involved in accepting this representation, prevented Class counsel's firms from working on other matters and accepting other representations. *Id.* In addition, Class counsel's fee request is firmly rooted in "the economics involved in prosecuting a class action." *See In re Sunbeam*, 176 F. Supp. 2d at 1333. Without adequate compensation and financial reward, law firms could not pursue cases such as this.

### IV. CONCLUSION

The Settlement secures $2.5 million in immediate compensation for the Settlement Class. The Settlement satisfies the fairness and reasonableness standard embodied in Rule 23(e), as well as the class certification requirements of Rules 23(a) and (b)(3). Further, Class Counsel's fee request is reasonable under the circumstances of this case. The request satisfies the guidelines of *Camden I* given the favorable result, the considerable risks of litigation, the complicated nature

---

[4]  *See also In re Friedman's, Inc. Sec. Litig.*, No. 1:03-cv-3475-WSD, 2009 WL 1456698 (N.D. Ga. May 22, 2009) (30 percent); *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677CIV-Martinez, 2008 WL 649124 (S.D. Fla. 2008) (30 percent); *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334 (S.D. Fla. 2007) (30 percent); *In re BellSouth Corp. Sec. Litig.*, Civil Action No. 1:02-cv-2142-WSD (N.D. Ga. Apr. 9, 2007) (30 percent); *In re Cryolife, Inc. Sec. Litig., Civil Action No.* 1:02-cv-1868-BBM (N.D. Ga. Nov. 9, 2005) (Martin, J.) (30 percent); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.*, Civil Action No. 1:00-cv-1416-CC (N.D. Ga. May 26, 2005) (33. percent plus interest and expenses); *In re Clarus Corp. Sec. Litig.*, Civil Action No. 1:00-CV-2841-CAP (N.D. Ga. Jan. 6, 2005) (33. percent); *In re Pediatric Servs. of Am., Inc. Sec. Litig.*, Civil Action No. 1:99-CV-0670-RLV (N.D. Ga. Mar. 15, 2002) (33.percent); *In re Int'l Recovery Corp. Sec. Litig.*, Case No. 92-1474-CIV (S.D. Fla. 1994) (30 percent); *In re Sound Advice, Inc. Sec. Litig.*, Case No. 92-6457 (S.D. Fla. 1994) (30 percent); *In re Belmac Corp. Sec. Litig.*, Case No. 92-1814-CIV-T-23-(C) (M.D. Fla. 1994) (31 percent); *Holloway v. Chapnick*, Consol. Case No. 89-6572-CIV-Paine (S.D. Fla. 1994) (30 percent); *Kaser v. Swann*, Case No. 90-607-CIV-Orl-3A18 (M.D. Fla. 1993) (30 percent); *Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) (30 percent); *In re Home Shopping Network Sec.Litig.*, Case No. 87-428-T-13(A) (M.D. Fla. 1991) (33 percent).

of the factual and legal issues, and the time, effort and skill required to litigate claims of this nature to a satisfactory conclusion.

Accordingly, Plaintiffs and Class Counsel respectfully request that this Court: (1) approve the requested service awards to the Class Representatives; and (2) award Class Counsel attorneys' fees and reasonable costs and expenses.

Attorneys for Plaintiffs:

Kevin McLaughlin, FL Bar No. 0085928
Wagner, Vaughan & McLaughlin, P.A.
601 Bayshore Boulevard, Suite 910
Tampa, FL 33606
Telephone: (813) 225-4000
Fax: (813) 225-4010
Kevin@wagnerlaw.com

By:   /s/ Kevin McLaughlin

and

Steven A. Owings, AR Bar No. 89035
OWINGS LAW FIRM
1400 Brookwood
Little Rock, AR 72202
Telephone: (501) 661-9999
Fax: (501) 661-8393
sowings@owingslawfirm.com

and

Brent Walker, AR Bar No. 2002152
CARTER WALKER, PLLC
P.O. Box 628
Cabot, AR  72023
Telephone: (501) 605-1346
Fax: (501) 605-1348
bwalker@carterwalkerlaw.com

and

Jack Wagoner, AR Bar No. 89096
WAGONER LAW FIRM, P.A.
1320 Brookwood, Suite E
Little Rock, AR 72202
Telephone:  (501) 663-5225
Fax:  (501) 660-4030
Jack@wagonerlawfirm.com

13

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 6, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>*s/ Kevin McLaughlin*</u>

Kevin McLaughlin

**<u>Service List</u>**
*Sachar v. IBERIABANK*
Case No. 09-cv-02036-JLK

Thomas Meeks
Aaron S. Weiss
Carlton Fields, P.A.
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Telephone:  (305)  530-0050
Facsimile:  (305)  530-0055
E-mail: tmeeks@carltonfields.com
*(via electronic filing)*

Robert C. Gilbert
Grossman Roth, P.A.
2525 Ponce de Leon Boulevard
Suite 1150
Miami, FL 33134
Telephon: (305) 442-8666
Facsimile: (305) 779-9596
E-mail: rcg@grossmanroth.com
*(via electronic filing)*