# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
SECOND TRANCHE ACTION

*Faith Gordon v. Branch Banking & Trust Co.*
No. 1:09-CV-23067-JLK

<u>**DECLARATION OF SAMUEL J. CROWE**</u>

I, Samuel J. Crowe, hereby declare under penalty of perjury the following is true and correct:

1.

I am an attorney admitted to practice law in Georgia. I was admitted by the State Bar of Georgia in 1996 and have been engaged in the practice of law since that time. I am over the age of 18, competent to testify as to the matters discussed below and make these statements based on my personal knowledge, information and belief.

2.

I am a partner at the law firm of Toliver & Gainer, LLP, a law firm in Conyers, Georgia. My area of practice is Complex Civil Litigation.

3.

I received a Doctor of Jurisprudence, J.D. in 1996 from the University of Georgia.

4.

I have been licensed to practice law in the State of Georgia since 1996 and am admitted to practice before Georgia Court of Appeals, Georgia Supreme Court, and the U.S. District Court Northern District of Georgia.

5.

I am a member of the Georgia Trial Lawyers Association ("GTLA") and often meet with other members of the plaintiffs' bar in Georgia.

6.

My practice is focused on contingency fee litigation on behalf of plaintiffs.  However, I have also handled billable matters on behalf corporate clients and individuals.

7.

My billable rate is generally $250.00 per hour for hourly clients.

8.

I am not charging a fee and have not been offered any fee or other form of compensation in connection with this matter.

9.

In my practice, I see many potential clients, review many potential matters, and make decisions with respect to which cases to accept.  When evaluating any case, my duty to my client, as well as my firm, requires me to consider not just the merits of the action, but to weigh the potential costs of bringing the case against the potential recovery.

10.

In connection with making this Declaration, I have reviewed the Class Action Complaint in this case, as well as an exemplar copy of the Defendant's Bank Services Agreement containing the arbitration provision, and the arbitration orders dated October 2, 2009, May 10, 2010 and September 1, 2011.  I have also reviewed the Declaration of Arthur Olsen, a banking expert who has reviewed what would be needed to bring a claim against BB&T.

11.

Based upon my review of the claims in this case, Plaintiff Faith Gordon alleges that she was improperly charged overdraft fees as the result of a hidden re-sequencing of her debit charges and other improper practices.   According to Plaintiff, this re-sequencing and other manipulations of her debit transactions are not readily apparent from her account statements.  In total, Defendant alleges that Plaintiff was charged over $2200 in overdraft fees, some fraction of which Ms. Gordon believes were improper.  Expert analysis would be required, at a minimum, to prove causation of damages, by identifying how many of the overdraft fees were attributable to the challenged practices.  Based on the Plaintiff's theory of the case, not every overdraft fee or transaction is unlawful.  This analysis would likely involve reviewing numerous bank records only available to the bank.

12.

If I had been approached by the Plaintiff and asked to handle her claims on an individual basis (and not as a putative class action) in arbitration, then I would not have accepted the case on a contingency fee basis, and would have discouraged her from hiring me on an hourly basis. Based on my review of the allegations and claims in the case and the nature of the harm and damages, my judgment is that her damages are simply not large enough to justify the significant

expense and time that would be required to proceed with arbitration against a defendant such as BB&T.

14.

In particular, I would not agree to represent Plaintiff in an arbitration because of the substantial work that would be required to present the matter competently, including the following:  (a) I would need to research the legal and factual elements of the claim and confer with the client and review any available documents; (b) I would have to review the arbitration rules and law; (c) I would have to spend additional time preparing an arbitration statement or brief, to familiarize the arbitrator with the legal theories; (d) I would need to seek discovery from the bank to determine the re-sequencing order and other practices utilized by it and explore other relevant issues such as the bank's internal rules, policies and procedures, the nature of its hardcopy and electronic documents that exist, and any defenses raised; (e) I would take at least one deposition of the bank, if allowed by the arbitrator; (f) I would work with an expert to understand the bank's practices and the provable damages; (g) I would have to spend substantial time working with the Plaintiff and otherwise preparing for arbitration; and (h) I would have to attend an arbitration session which could last at least two days.  These tasks would consume significant time, I estimate at least 100 hours of my legal work.  In light of the relatively small potential monetary damages in the case – less than $2000 – it would neither make economic sense for the Plaintiff to pay me an hourly rate to perform these tasks, nor for me to agree to do them on a contingency fee basis.

15.

A technical expert, such as Mr. Olsen, would have to assist me in reviewing the bank's information, including electronic information or data from computer systems, and to understand

the sequencing of the transactions, and the damages would also be very costly.  In my experience, qualified experts charge a significant amount per hour, which the client or I would have to pay.  An hourly fee of over $200 an hour is certainly possible.

16.

Thus, by the time the Plaintiff's case was ready to arbitrate, the time and costs in the case would be substantial and far in excess of any potential recovery.  A contingency fee of even 40 percent of the recovery, would be miniscule when compared to legal fees and expert costs that are likely to exceed $25,000.

17.

I could not in good conscience counsel an individual consumer client to pay me what it would cost by the hour to arbitrate such a claim in light of the modest individual damages.

18.

I would further be obligated to advise a BB&T customer that the bank is contractually entitled pursuant its Bank Services Agreement to withdraw all of its legal fees and costs from the customer's bank accounts as they are accrued in any arbitration.  In my experience, legal fees by a large corporation usually exceed those of an individual they are litigating against.  Thus, the bank's fees in an overdraft-related arbitration would be likely to exceed $25,000, all of which could be deducted from the customer's account as accrued.

19.

Consequently, it is my opinion that as a practical matter the terms of the BB&T arbitration clause preclude an individual consumer from effectively vindicating his or her rights in arbitration.

20.

I know other lawyers in Georgia who represent plaintiffs in disputes with banks and other companies.  I am not aware of any other attorneys who would agree to handle the claims described in the complaint in this case on an individual basis in arbitration.  I believe my assessment of the financial aspects of this case would be shared by other members of the Bar who represent plaintiffs, such as the members of GTLA.

21.

Therefore, it is my opinion that arbitration pursuant to the BB&T arbitration clause would not allow Ms. Faith Gordon or other like consumers, to effectively pursue her claims.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of March, 2012, in City of Conyers, Rockdale County, Georgia.

Samuel J. Crowe

6