UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

THIRD TRANCHE ACTIONS

*Mosser v. TD Bank, N.A.*
S.D. Fla. Case No. 10-21386-JLK
E.D. Pa. Case No. 10-cv-00731

*Mazzadra, et al. v. TD Bank, N.A.*
S.D. Fla. Case No. 10-21870-JLK

**DEFENDANT TD BANK, N.A'S REPLY IN SUPPORT OF**
***DAUBERT* MOTION TO EXCLUDE THE DECLARATION OF PLAINTIFFS'**
**PROPOSED EXPERT ARTHUR OLSEN**

## INTRODUCTION

To find Olsen's declaration admissible, this Court must reach the following conclusions: (1) Plaintiffs need not demonstrate "fit" between Olsen's methodology and the facts and law of this case; (2) Olsen can ignore the named Plaintiffs' actual expectations and knowledge concerning the terms of the contract when deciding expectancy damages for breach of that contract; and (3) Olsen may rely on class-wide assumptions contrary to the actual evidence available for individualized review.  As detailed below, none of these conclusions finds support in the applicable law, including the *Gutierrez v. Wells Fargo* case.  Olsen's declaration must be struck.

## ARGUMENT

**I.     *Gutierrez* Does Not Allow This Court To Ignore The "Fit" Problem Under *Boca Raton*, Because Admission Of Olsen's Testimony In *Gutierrez* Was Based On Peculiarities Of The California Statutory Claim At Issue There, Which Are Not Applicable Here.**

In its opening brief, TD Bank showed that Olsen's opinion should be struck because it does not fit the facts and theories at issue in this case.  As in *Boca Raton Comm. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227 (11th Cir. 2009) ("*Boca Raton*"), Plaintiffs here have tendered an expert whose methodology cannot reliably differentiate between those injured and not injured by TD Bank's challenged conduct.  Specifically, Olsen calculates harm even in situations where TD Bank posted customers' transactions in the chronological order in which they occurred.[1]  Under *Boca Raton*, such testimony is inadmissible.  582 F.3d at 1232-34.  While Plaintiffs suggest the question of "fit" is "a merits question for the finder of fact," (Pl. Opp. at 13), that is not the law.  The proponent of expert testimony bears the burden to meet the *Daubert* standards, including "fit," at the class certification stage, and the Court must conduct "a rigorous

---

[1] In its opening brief, TD Bank included testimony from Olsen which establishes this lack of fit through demonstrating that Scenario 2A can find "harm" even on a day where TD Bank posted a customer's transactions in the order in which those transactions were initiated. (*Daubert* Mot. at 3-7.)  In order to assist the Court, TD Bank has attached hereto an example from one of the named Plaintiffs' accounts that details this flaw in Olsen's analysis. (Appendix A, Example 1; *see also* Olsen Depo. at 238-257 (discussing Example 1).)

analysis of the evidence proffered." *Cooper v. S. Co.,* 390 F.3d 695, 712, 718 (11th Cir. 2004), *abrogated on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006); *Sher v. Raytheon Co.*, 419 F. App'x 887, 890-91 (11th Cir. 2011).  Plaintiffs point to no law that would allow the Court to deviate from this requirement of rigorous review prior to trial.[2]  Indeed, even in *Gutierrez*, Judge Alsup analyzed the fit issue prior to trial and excluded Olsen's attempted use of a low-to-high posting order, because it did not fit the plaintiffs' claim that Wells Fargo should have posted chronologically.  *Gutierrez v. Wells Fargo & Co*., 2010 WL 1233810, at *8 (Mar. 26, 2010 N.D. Cal.) ("this ordering doesn't even attempt to 'chronologically' order the transactions in dispute," and thus has "no discernable (and, hence, reliable) relation to the facts or theories in this case," rendering it "inadmissible under *Daubert* as a damages theory.")

Plaintiffs' chief response here is that this Court should ignore the *Boca Raton* problem, because some of Olsen's testimony was admitted in *Gutierrez*.  Obviously, *Boca Raton* is binding precedent and *Gutierrez* is not.  And the mere fact that a judge found Olsen admissible in another case is "irrelevant to the determination whether he is qualified to give such testimony in this case." *Elcock v. Kmart Corp*., 233 F.3d 734, 744 (3d Cir. 2000).  Rather, this Court must conduct a rigorous examination of the fit between Olsen's methods and the evidence and theories at issue.  The *Gutierrez* analogy does not withstand such rigorous analysis:  Judge Alsup's reason for allowing certain testimony from Olsen was that the peculiar California law at issue did not require any plaintiff to show individual harm.  That reasoning does not apply here.

In *Gutierrez,* the plaintiffs sought restitution under Section 17200 of California's Unfair Business Practices Act.  Judge Alsup ruled such restitution is available "without individualized proof of … injury."  *Gutierrez v. Wells Fargo Bank, N.A*., 730 F.Supp.2d 1080, 1138 (N.D. Cal. 2010) (citations omitted); *see also id.* ("absent class members on whose behalf a Section 17200 action is prosecuted need *not* show on 'an individualized basis that they have 'lost money or

---

[2] The two cases cited by Plaintiffs, *In re Linerboard Antritrust Litig.*, 305 F.3d 145, 155 (3d Cir. 2002), and *In re Corrugated Container Antitrust Litig.*, 80 F.R.D. 244, 251-52 (S.D. Tex 1978), stand for the unremarkable proposition that where a plaintiff has forwarded two "generally accepted" damages methodologies, plaintiff need not choose between them at the class certification stage.  Neither case involved a *Daubert* challenge to the fit of the proffered methodologies to the respective plaintiff's claims.

2

property as a result in the unfair competition[.]'") (citations omitted) (emphasis supplied by Judge Alsup). It was with this unusual theory, and only this theory, that Judge Alsup found a fit with two of Olsen's proposed scenarios.[3]

In contrast, there is no statutory restitution claim under California law at issue here. In this case, Plaintiffs themselves recognize that "damages are measured by calculating the amount necessary to place the non-breaching party in the same position he or she would have been in had the contract been performed." (Pl. Opp. at 15 n. 10.) The fact that Plaintiffs have brought their claims as a class action does not lessen this burden to show harm for each injured party. *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1365 (11th Cir. 2002) ("[C]lass treatment may not serve to lessen the plaintiffs' burden of proof."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

The distinction between the statutory restitution sought under California law in *Gutierrez* and the expectancy damages sought in this case is critical to the *Daubert* analysis under *Boca Raton. See* 582 F.3d at 1232-34. Judge Alsup's admission of Olsen's testimony to determine restitution under California statutory law in *Gutierrez* -- where it did not matter whether a class member suffered any harm -- does not support admission of such testimony here on expectancy damages, where each instance of actual harm to each class member must be shown, and where Olsen has tendered a method that does not separate out those who were not injured when TD Bank posted their transactions in the order in which they occurred. *Gutierrez* offers no ground on which this Court could refuse to follow the Eleventh Circuit's controlling decision in *Boca Raton*.

**II.     Plaintiffs' Suggestion That This Court Can Ignore The Lack Of Fit Between Olsen's Methods And Ms. Schwartzman's Theory Of Harm Is Based On A Mischaracterization of *Shelley*, Which Controls Here.**

In its opening brief, TD Bank argued that Olsen's methodology failed to fit the posting order the named Plaintiffs say TD Bank should have used. (*Daubert* Mot. at 4.). In a posting order case, these expectations are relevant, *see Shelley v. AmSouth Bank*, 2000 WL 1121778, *9,

---

[3] Judge Alsup struck a third scenario on *Daubert* grounds for failing to fit their claim.

\*15 (S.D. Ala. July 24, 2000), *aff'd*, 247 F.3d 250 (11th Cir. 2001) (table) (the "alternate posting order identified by the depositor as the one she believed to be in place ... must be identified separately for each depositor before her damage determination may proceed."),[4] and Olsen concedes his method cannot account for them on a classwide basis. (Olsen Depo. at 228:6-7 ("we can't read the intent without data on a case-by-case basis.).)

Here, using a named Plaintiff's expected posting order to determine harm would often result in no damages. For example, Plaintiff Paige Schwartzman testified at deposition that good faith required TD Bank to post all transactions, credits and debits alike, in chronological order, as she would have kept them in her check register. (Schwartzman Depo. at 105:24 – 107:10.) Olsen did not model a scenario based on Schwartzman's expectation. (Olsen Depo. at 296:12-25.) Instead, Olsen simply ran his Scenario 2A against Schwartzman's data, concluding that she suffered $350 in harm as a result of high-to-low posting. (Olsen Decl. ¶ 53 (h).) If TD Bank had posted Schwartzman's transactions in the manner she herself expected, Olsen admits that Schwartzman would have suffered no harm as a result of high-to-low posting. (Olsen Depo. at 293:23-314:23.). In fact, had TD Bank posted Schwartzman's transactions in the order she expected, she would have experienced more overdrafts than she did in the actual world under TD Bank's high-to-low posting. (Visser Decl. ¶ 21 and Table 3.) That is because in the actual world, TD Bank provides customers the benefit of posting all credits first, prior to any debits, regardless of when in the day those credits occurred in relation to other transactions. (Visser Decl. ¶¶ 9, 10 and 21)

Below is a real life example from Schwartzman's account on November 13, 2009 that details the benefit TD Bank's actual practice provides customers, as compared to posting transactions in the order in which they occurred.[5] Schwartzman started that day with a negative

---

[4] *Gutierrez* offers no guidance on this point as the claim at issue there was a statutory claim seeking restitution, not a breach claim seeking expectancy damages.

[5] One additional named Plaintiff example on this point is included in Appendix A (Example 2). Many others could be provided. The data supporting these examples was produced in discovery (TD Bank's Response to Plaintiffs' Second Request for Production, dated Dec. 2, 2012), and discussed at the depositions of Olsen and Visser.

4

account balance from previously spending more than she had; two debit card purchases she had made on prior days – one from November 11, 2009, and the other from November 12, 2009 – were presented that day to TD Bank for payment; and a deposit was made that day.  As shown below, because the deposit occurred after the debit card purchases, Schwartzman's expected posting order would have resulted in two overdraft fees being charged to her account:

| Transaction Date | Transaction Description | Transaction Amount | Account Balance | Fee Amount |
|---|---|---|---|---|
| | Beginning Balance | - | (183.07) | - |
| Nov. 11, 2009 | DEBIT CARD PURCHASE | (3.21) | (186.28) | 35.00 |
| Nov. 12, 2009 | DEBIT CARD PURCHASE | (151.58) | (337.86) | 35.00 |
| Nov. 13. 2009 | DEPOSIT | 1,377.53 | 1,039.67 | - |

But that is not what happened.  In the actual world, TD Bank posted the deposit first, even though it occurred last; and as a result of such "manipulation" (in Plaintiffs' words), Ms. Schwartzman did not get charged overdraft fees for her earlier debit card purchases:

| Transaction Description | Transaction Amount | Account Balance |
|---|---|---|
| Beginning Balance | - | (183.07) |
| DEPOSIT | 1,377.53 | 1,194.46 |
| DEBIT CARD PURCHASE | (151.58) | 1,042.88 |
| DEBIT CARD PURCHASE | (3.21) | 1,039.67 |

Plaintiffs argue that Olsen can ignore a named Plaintiff's expected posting order because "Plaintiffs' individual subjective views are not relevant." (Pl. Opp. at 13.)  This claim is directly contrary to *Shelley*.  Plaintiffs try to distinguish *Shelley* by suggesting the only claims at issue there "were for fraud and violation of the Truth in Lending Act." (Pl. Opp. at 14.)  Plaintiffs are wrong.  *Shelley* involved a breach of contract claim that the court explicitly refused to certify as a

5

class claim because the claim required "individual assessments of what each depositor understood to be the defendant's policies, which in turn requires assessments of such things as what information each depositor was given in addition to the written documents and what each depositor did do or would have done once armed with sufficient awareness of the defendant's actual policies." *Shelley*, 2010 WL 1121778, at *11. In short, the point urged by TD Bank has been established specifically in a posting order case affirmed by the Eleventh Circuit. Plaintiffs offer no compelling reason for this Court to ignore the rule in *Shelley*.[6]

### III. *Gutierrez* Also Provides No Basis For This Court To Ignore The Lack Of Fit Between Olsen's Testimony And The Evidence In This Case.

The previously discussed lack of fit between Olsen's opinion and Plaintiffs' chronological theory is a fatal defect under *Daubert*, and the Court needs no additional reason to exclude Olsen's testimony. Nonetheless, additional, independently adequate reasons exist, and Plaintiffs have not offered any persuasive argument against them. In its opening brief, TD Bank noted that Olsen ignores available evidence regarding Plaintiffs' claimed harm, concedes that his method cannot account for such evidence, and concedes that accounting for such evidence in individual cases yields more accurate determinations than his method does. (*Daubert* Mot. at 7-14.) A method that ignores such relevant, available evidence is inadmissible. Again, Plaintiffs say this Court should admit Olsen's testimony because Judge Alsup did; furthermore, they say this Court should reject TD Bank's argument if TD Bank withheld relevant evidence or the evidence in question does not exist. These arguments also fail. Judge Alsup did not confront this issue in *Gutierrez* because he expressly found there was no difference between the evidence Olsen used and the evidence available in individual cases. And Plaintiffs here have not pointed

---

[6] While Plaintiffs cite the Restatement (Second) of Contracts § 211(2) to suggest that individualized inquiries should not be made, even the courts that follow that provision do not necessarily read it as Plaintiffs suggest. *See Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 353 (D. Ariz. 2009) (noting that the state courts had "adopted the 'reasonable expectation' rule from the Restatement (Second) of Contracts § 211," and that, pursuant to that rule, a standardized contract "should be read in light of the parties' intentions as reflected by their language and in view of all the circumstances," including oral representations made). Section 211 does not stand for the broad proposition suggested by Plaintiffs; indeed, if it did, UCC provisions regarding the use of course of dealing as an interpretive tool would be rendered null and void. *See* U.C.C. §§ 1-201(b)(3), 1-205, 1-303.

6

to any relevant evidence that TD Bank has refused to provide.  Plaintiffs' counsel has withheld evidence from Olsen, and Plaintiffs' counsel has failed to request other evidence they say Olsen wants.  As for Plaintiffs' denials of the existence of certain evidence harmful to Olsen, those denials are simply, and provably, false.

Judge Alsup had a record in *Gutierrez* from which he could not accurately determine restitution, "even if the claims were brought individually rather than on a class-wide basis." *Gutierrez*, 2010 WL 1233810, at *11.  From this record, Judge Alsup determined Olsen's "class-wide methods of proof" acceptable because they "would be no less imprecise than individual methods of proof." *Id.*  Here, in contrast, individual evidence is available that will result in more accurate results than those returned by Olsen's computer programs.

For instance, Olsen concedes that he cannot reliably link an overdraft reversal to the specific overdraft fee that the customer and TD Bank intended to be reversed or refunded. (*Daubert* Mot. at 8-10; Olsen Depo. at 202:24-203:12; 215:2-12.)[7]  Olsen further concedes that existing information outside the transaction data he considered may establish the actual link and improve the "accuracy" of his results.  (Olsen Depo. at 127:15-128:9; 154:3-23.)  And despite Plaintiffs' suggestion that the record is void of such evidence (Pl. Opp. at 9), in fact, declarations from TD Bank employees that reversed overdraft fees for two of the named Plaintiffs confirm that customer or employee testimony, as well as other available evidence such as customer service records or teller tickets, can be used to establish the proper match.  (*See* Bodnar and Colombari Decl., Exhibits 6 and 7 to TD Class Opp.)  Olsen chose not to consider this additional information only because it cannot be incorporated into his computer programs. (Olsen Depo. at 128:10-17.)

---

[7] Plaintiffs try to defend this infirmity in their case by arguing that reversals are set-offs against damages, and thus an affirmative defense for which TD Bank bears the burden of proof. (Pl. Opp. at 8.)  But the reversals stem from the very same transactions upon which Plaintiffs advance their current claims.  Such costs cannot constitute "set offs" capable of shifting the burden of proof from Plaintiffs to TD Bank.  *See Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 336 (2d Cir. 2005) ("a claim for setoff embodies a counterdemand based on some transaction entirely extrinsic to the plaintiff's cause of action").  Moreover, regardless of which party bears the burden, the important point is that reversals are an issue in this case, and the evidence is clear that they cannot be reliably matched to overdraft fees based on common proof.  (*Daubert* Mot. at 8-10.)

Olsen's methodology also fails to reliably match debit card transactions to date and time information in instances where merchants seek payment for a different amount than TD Bank initially authorized. (*See Daubert* Mot. at 16-19.)  Olsen concedes that these types of transactions are "common" among TD Bank customers, and that his inability to match them renders his results "less accurate," tending to skew damages in favor of Plaintiffs. (Olsen Depo. at 57:15-21; 94:7-22 and 251:22-252:9.)  While Olsen has not identified any cure for this problem, TD Bank's data analysis expert, Steve Visser, has confirmed that it can be resolved through review of customers' monthly account statements. (Visser Decl., ¶ 15 and Appendix C.)  Plaintiffs' counsel chose not provide Olsen copies of these statements, as they would require individualized assessment. (Olsen Depo. at 72:25-73:5, 74:16-18 and 217:7-13; Visser Depo. at 128:8-129:24.)[8]

Similarly, Olsen ignored available evidence that different retail checking practices would have applied if TD Bank had used a different posting order.  Olsen concedes he has not modeled such different practices.  Plaintiffs claim this issue can be ignored for lack of evidence: "such business changes are sheer speculation; no bank employee has testified that they would, as a matter of fact, have been implemented." (Pl. Opp. at 18.)  Not true.  TD Bank offered a declaration on this very point. (*See Daubert* Mot. at 12-14.) The uncontroverted evidence on this point shows TD Bank would have explored adjustments to its monthly checking fees and minimum balance requirements, as well as other options to prevent attrition of revenue in its retail checking business, if it had not posted debit transactions in the order it did.  (*Id.*)[9]

Distinct from the *Gutierrez* record where Judge Alsup found that no individual evidence was available to improve on Olsen's imprecision, the record here contains additional evidence

---

[8] The issue therefore is not that TD Bank failed to maintain the information required to reach an accurate result, as Plaintiffs suggest (Pl. Opp. at 11), but rather that Olsen is unable of using that existing data on a class-wide basis.
[9] Plaintiffs' suggestion that Olsen's failure to account for these changes in practice is somehow remedied because Visser too did not account for them ignores the very different tasks the two experts were asked to perform. Olsen was proffered to identify customers "harmed" as a result of TD Bank's posting practices, and quantify the amount of that harm. (Olsen Decl. ¶¶ 2, 50.)    Olsen's work must therefore be held to the standard of a damages expert, and all the economic considerations such work requires. Visser, on the other hand, was not retained to determine damages or harm, but rather to show problems that arise if one approaches harm the way Olsen was ordered to do: including the differing impact on various potential class member of different choices Plaintiffs' counsel might make about what assumptions to order Olsen to adopt.  (Visser Decl. ¶ 11; Visser Depo. at 232:5-233:12.)

that must be considered to reliably calculate expectancy damages. Plaintiffs cannot sweep this evidence under the rug simply because it is not of the type or form that Olsen can use in his computer analysis.

### IV. Olsen's Testimony Should Be Excluded Because His Method Cannot Be Applied Classwide And Therefore Will Not Meaningfully Assist The Trier Of Fact.

Olsen has run Scenario 2A against the data for only the eight named Plaintiffs. As TD Bank explained in its opening brief, the transaction data available to Olsen on a class-wide basis will not be the same as the data available for named Plaintiffs, at least for some class members, and there are challenges with the class data that were not present with the named Plaintiffs' data, including issues concerning the data necessary to link debit card transactions to the date and time of authorization. (*See Daubert* Mot. at 14-19.)[10] Olsen has not proven that these issues can be cured on a class-wide basis, and Visser's opinion is they cannot. (Visser Decl. ¶ 28.)

Rather than meaningfully respond to this point, Plaintiffs argue that TD Bank forfeited its right" to make such an argument because it "limited Olsen's access to data." (Pl. Opp. at 11 n. 5.) Tellingly, they state their support for this more passively: "Olsen received only data related to the class representatives." (Pl. Opp. at 10 n. 2.) The fact is, TD Bank provided everything Plaintiffs requested, namely, transaction data for "each named Plaintiff." *See* Plaintiffs' Second Request for Production, dated Nov. 9, 2011, attached hereto as Exhibit 1. Plaintiffs never sought transaction data for a single absent class member, and thus they cannot now complain about not having a broader data set to give Olsen.[11]

Plaintiffs' suggestion that "TD offers no credible proof" that these class-wide data problems will impact Olsen's work is both wrong (*see Daubert* Mot. at 14-19), and improperly

---

[10] Plaintiffs seem to suggest that Visser testified that between 82 and 85% of debit card transactions could be linked to date/time information for the entire class. (Pl. Opp. at 10.) This is not the case. Visser's testimony on this point was limited to his analysis of the named Plaintiffs. (*See* Visser Depo. at 108:3-9 ("we're talking about the named plaintiff analyses . . . from a programmatic perspective, the percentage that I could not match up was around 15 to 18 percent.").)

[11] Plaintiffs' complaints about TD Bank counsel instructing Visser to limit his answers at deposition are similarly misplaced. (Pl. Opp. at 10 n. 3.) Counsel instructed Visser to limit his testimony to the work performed to provide the opinions offered in his declaration, and not other work, outside the scope of his declaration, protected by the work product doctrine and the expert discovery protocol in this case [DE # 1051]. (*See*, *e.g*., Visser Depo. at 34:11-18.)

9

shifts the burden of proof. "The burden is not on the defendant to show the difficulty of proving each class member's damages; the burden is on the plaintiffs to show the ease of doing so." *Shelley*, 2010 WL 1121778, at *10. Plaintiffs have not met that burden.

## V. Olsen Has Not Shown His Method Can Be Reliably Applied To Any Theory Other Than Scenario 2A, Much Less To Every Theory That Might Be Presented To The Factfinder.

Plaintiffs claim that their "burden, and Olsen's purpose, at this point is simply to show that, whatever scenario is chosen, damages can be calculated using TD's data." (Pl. Opp. at 16; *see also id*. at 14 n. 8 (suggesting Olsen can calculate class-wide damages "under any posting order determined to be appropriate by the finder of fact").) Even if this were the standard under *Daubert* at the class stage (it is not), Plaintiffs cannot meet it. As an initial matter, Olsen has forwarded only a method to calculate restitution, not expectancy damages. Further, Olsen admits that if a jury were to find liability, but limit damages for each customer to those periods when the customer was not aware of TD Bank's actual posting order, he has not offered an opinion how to correctly calculate that harm, and that it is infeasible to do so on a class-wide basis. (Olsen Depo. at 170:19-171:21.)[12] Similarly, Olsen concedes that if a jury determined that each overdraft reversal must be matched to the overdraft fee the customer and TD Bank intended to reverse, he cannot do that based on common evidence. (Olsen Depo. at 202:24-203:12; 215:2-12.)[13] Thus, rather than prove he can calculate damages based on any methodology selected by the jury, as Plaintiffs claim, Olsen has conceded that there are multiple methods that a jury could select for which he cannot calculate damages based on common proof.

---

[12] TD Bank demonstrated in its class opposition that the named Plaintiffs acquired knowledge of TD Bank's actual posting practice, and did so through varying ways at varying times in the account relationship. (*See, e.g*., TD Class Opp. at 17-21, 30-33.)

[13] Neither has Olsen proven that he can programmatically sequence checks based on serial number or the date written on the check (even though such information exists in TD Bank's records) if a jury were to decide that checks should be posted in one of those ways. Nor has he demonstrated that he can programmatically sequence all transactions, including credits, in any type of chronological order if a jury determined that such ordering was required. Visser's work shows these types of analyses can only be done with manual review of checks and other existing information. (Visser Decl. ¶ 33(b).)

Dated: March 16, 2012

Respectfully Submitted,

/s/ William J. Kayatta, Jr.
William J. Kayatta, Jr.
wkayatta@pierceatwood.com
Clifford H. Ruprecht
cruprecht@pierceatwood.com
Lucus A. Ritchie
lritchie@pierceatwood.com
Joshua D. Dunlap
jdunlap@pierceatwood.com
*(pro hac vice)*
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
Tel: (207) 791-1100
Fax: (207) 791-1350

*Attorneys for Defendant TD Bank, N.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

      I hereby certify that on March 16, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via CM/ECF on all counsel of record.

      /s/ Lucus A. Ritchie
      Lucus A. Ritchie
      lritchie@pierceatwood.com
      PIERCE ATWOOD LLP
      Merrill's Wharf
      254 Commercial Street
      Portland, ME  04101
      Tel: (207) 791-1100
      Fax: (207) 791-1350