**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTION

*Shane Swift v. BancorpSouth, Inc.,*
**N.D. Fla. Case No. 1:10-cv-00090-SPM**
**S.D. Fla. Case No. 1:10-cv-23872-JLK**

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................................................1

II.   ARGUMENT ..............................................................................................................1

    A.    The Proposed Class Definition is Objective ..................................................1

        1.    Determining Class membership does not depend on a threshold liability finding in Plaintiff's' favor. ...................................................1

        2.    Tying the start of the Class Period to applicable statutes of limitation is not vague. ..................................................................3

    B.    Common Issues Predominate......................................................................5

        1.    The Court need not decide the merits and instead determines whether Plaintiff's claims rise or fall based on common proof. ...............................5

        2.    Common issues predominate on the good faith and fair dealing claim. ......6

            a.    Good faith and fair dealing is appropriate for class treatment.........6

            b.    Good faith and fair dealing is amenable to common proof. ............7

            c.    Variations in customer preferences do not defeat class certification. ..................................................................10

        3.    Common issues predominate on the unconscionability claim...................10

        4.    Common issues predominate on the unjust enrichment claim...................12

        5.    Plaintiff's unfair and deceptive trade practices claim does not require individual inquiries that preclude certification. .............................13

        6.    BancorpSouth's affirmative defenses do not defeat predominance...........13

        7.    Damages will be established by common proof…………..………………18

    C.    Commonality is satisfied.......................................................................20

    D.    Plaintiff is an Adequate Representative and Possesses Claims Typical to the Class....................................................................................23

        1.    Plaintiff is vigorously pursuing full relief for all Class members.............24

i

2.      The relief Plaintiff seeks will benefit all Class members. .........................26

3.      Plaintiff is an adequate representative despite affirmative defenses
        that BancorpSouth intends to assert at trial..............................................28

4.       Plaintiff has claims that are typical of the claims of all class Members... 28

E.      BancorpSouth's Remaining Objections are Without Merit……………………...30

III.    CONCLUSION...........................................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abels v. JPMorgan Chase Bank, N.A.*,
   678 F. Supp. 2d 1273 (S.D. Fla. 2009) .................................................................................11

*Allapattah Servs., Inc. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005) ................................................16

*Allen v. Holiday Universal*,
   249 F.R.D. 166 (E.D. Pa. 2008) ...........................................................................................16

*Arceneaux v. Amstar Corp.*,
   66 So. 3d 438 (La. 2011) ......................................................................................................15

*Arkansas Research Medical Testing, LLC v. Osborne*,
   2011 Ark. 158, 2011 WL 1423993 (Ark. Apr. 14, 2011) .....................................................24

*Armstrong v. Chicago Park Dist.*,
   117 F.R.D. 623 (N.D. Ill. 1987) .............................................................................................2

*Armstrong v. Mississippi Farm Bureau Cas. Ins. Co.*,
   66 So. 3d 188 (Miss. Ct. App. 2011), reh'g denied (May 3, 2011), *cert. denied*,
   65 So. 3d 310 (Miss. 2011) ..................................................................................................15

*Arnold v. All Am. Assur. Co.*,
   499 S.W.2d 861 (Ark. 1973) ................................................................................................15

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .........................................................................................................14

*AT&T Mobility LLC v. Concepcion*,
   131 S. Ct. 1740 (2011) .........................................................................................................11

*Avritt v. Reliastar Life Ins. Co.*,
   2009 WL 488808, *aff'd* 615 F.3d 1023 (8th Cir. 2010) ...........................................4, 8, 9, 17

*Barnes & Noble, Inc. v. LSI Corp.*,
   2012 WL 359713 (N.D. Cal. Feb. 2, 2012) .........................................................................30

*Basco v. Wal-Mart Stores, Inc.*,
   216 F. Supp. 2d 592 (E.D. La. 2002) ..................................................................................32

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................................14

*Bishop v. Bishop*,
    250 S.W.3d 570 (Ark. Ct. App. 2007) ...............................................................................15

*Board of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    269 F.R.D. 340 (S.D.N.Y. 2010) ......................................................................................17

*Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*,
    238 F.R.D. 679 (S.D. Fla. 2006) .......................................................................................28

*Bostick v. St. Jude Med., Inc.*,
    2004 U.S. Dist. LEXIS 29997 (W.D. Tenn. Aug. 17, 2004) ..................................................2

*Brown v. SCI Funeral Servs. of Fla., Inc.*,
    212 F.R.D. 602 (S.D. Fla. 2003) .................................................................................4, 29

*Camafel Bldg. Inspections, Inc. v. Bellsouth Advert'g & Publ'g Corp.*,
    2008 U.S. Dist. LEXIS 18192 (N.D. Ga. Mar. 7, 2008), *aff'd*, 2008 U.S. App. LEXIS
    23618 (11th Cir. Oct. 28, 2008) ......................................................................................17

*Carbajal v. Capital One F.S.B.*,
    219 F.R.D. 437 (N.D. Ill. 2004) ......................................................................................16

*Castano v. American Tobacco Co.*,
    84 F.3d 734 (5th Cir. 1996) .............................................................................................13

*Castillo v. Roche Labs., Inc.*,
    2010 U.S. Dist. LEXIS 87681 (S.D. Fla. July 30, 2010)......................................................14

*Cimino v. Raymark Indus., Inc.*,
    151 F.3d 297 (5th Cir. 1998) ...........................................................................................32

*CIT Commc'n Fin. Corp. v. McFadden, Lyon & Rouse, L.L.C.*,
    37 So. 3d 114 (Ala. 2009) ...............................................................................................15

*City of Ft. Smith v. McCutchen*,
    279 S.W.3d 78 (Ark. 2008) .............................................................................................15

*Commodity Futures Trading Comm'n v. Schor*,
    478 U.S. 833 (1986).......................................................................................................32

*Compass Bank v. Snow*,
    823 So. 2d 667 (Ala. 2001)...............................................................................................6

*Cooper v. Fed. Reserve Bank of Richmond*,
    467 U.S. 867 (1984).......................................................................................................26

*Cooper v. Southern Co.*,
    390 F.3d 695 (11th Cir. 2004) .........................................................................................24

*Corley v. Entergy Corp.*,
   220 F.R.D. 478 (E.D. Tex. 2004), *aff'd*, 152 Fed. App'x 350 (5th Cir. 2005).......................17

*County of Monroe v. Priceline.com, Inc.*,
   265 F.R.D. 659 (S.D. Fla. 2010).........................................................................................12

*Davis v. Cash For Payday, Inc.*,
   193 F.R.D. 518 (N.D. Ill. 2000)..........................................................................................10

*Deutsche Credit Corp. v. Peninger*,
   603 So. 2d 57 (Fla. 5th DCA 1992)....................................................................................15

*Dunn v. Midwest Buslines, Inc.*,
   94 F.R.D. 170 (E.D. Ark. 1982)...........................................................................................2

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*,
   657 F.2d 890 (7th Cir. 1981) .............................................................................................23

*Endres v. Wells Fargo Bank*,
   2008 U.S. Dist. LEXIS 12159 (N.D. Cal. Feb. 6, 2008) ....................................................17

*Englade v. HarperCollins Publishers*,
   289 AD.2d 159 (NY App. Div. 1st Dep't 2001).....................................................................8

*Farrow v. St. Francis Med. Ctr.*,
   Case No. ED 96532, 2012 WL 451882 (Mo. Ct. App. Feb. 14, 2012) ................................15

*Feinstein v. Firestone Tire & Rubber Co.*,
   535 F. Supp. 595 (S.D.N.Y. 1982).....................................................................................25

*Fogie v. Rent–A–Center, Inc.*,
   867 F.Supp. 1398 (D.Minn.1993) .......................................................................................11

*Forman v. Data Transfer*,
   164 F.R.D. 400 (E.D. Pa. 1995)...........................................................................................2

*Fortner v. Thomas*,
   983 F.2d 1024 (11th Cir.1993) ...........................................................................................26

*Foster v. St. Jude Med., Inc.*,
   229 F.R.D. 599 (D. Minn. 2005)..........................................................................................25

*Glassford v. Brickkicker*,
   35 A.3d 1044 (Vt. 2011)......................................................................................................11

*Grayson & Grayson, P.A. v. Couch*,
   2012 Ark. App. 200, --- S.W. 3d ---, 2012 WL 11281 (Ark. Ct. App. Jan. 4, 2012) ..............14

*Grey v. Hearst Communications, Inc.*,
  No. 10-1302, 2011 U.S. App. LEXIS 17890 (4th Cir. Aug. 25, 2011) ...................................8

*Gutierrez v. Wells Fargo Bank, N.A.*,
  2008 U.S. Dist. LEXIS 70124 (N.D. Cal. Sept. 11, 2008) .....................................................21

*Gutierrez v. Wells Fargo Bank, N.A.*,
  730 F. Supp. 2d 1080 (N.D. Cal. 2010) ..................................................3, 9, 10, 14, 21, 26, 32

*Hagen v. City of Winnemucca*,
  108 F.R.D. 61 (D. Nev. 1985)..................................................................................................2

*Hicks v. Levett*,
  140 So. 276 (La. Ct. App. 1932)............................................................................................15

*Hiser v. Franklin*,
  94 F.3d 1287 (9th Cir.1996) ..................................................................................................26

*Horne v. TGM Associates, L.P.*,
  56 So. 3d 615 (Ala. 2010)......................................................................................................15

*Iberia Credit Union v. Cingular Wireless*,
  Civ. Act. No. 6:01–2148, 2011 WL 5553829 (W.D. La. Nov. 9, 2011) ................................23

*In re Avon Securities*,
  1998 U.S. Dist. LEXIS 18642, *35 (S.D.N.Y. Nov. 19, 1998)................................................8

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 326 (E.D. Mich. 2001) .....................................................................................5, 16

*In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*,
  274 F.R.D. 286 (N.D. Cal. 2011)............................................................................................8

*In re Checking Account Overdraft Litig.*,
  694 F. Supp. 2d 1302 (S.D. Fla. 2010) (King, J.) ............................................................11, 25

*In re Checking Account Overdraft Litig. ("Larsen v. Union Bank")*,
  275 F.R.D. 666 (S.D. Fla. 2011)...................................................................................... passim

*In re Currency Conversion Fee Antitrust Litig.*,
  264 F.R.D. 100 (S.D.N.Y. 2010) ...........................................................................................16

*In re Ernie Haire Ford, Inc.*,
  403 B.R. 750 (M.D. Fla. 2009)................................................................................................8

*In re MTBE Prods. Liab. Litig.*,
  209 F.R.D. 323 (S.D.N.Y. 2002) ...........................................................................................25

*In re Terazosin Hydrochloride Antitrust Litig.*,
  220 F.R.D. 672 (S.D. Fla. 2004) .................................................................................13, 19

*In re Telectronics Pacing Sys., Inc.*,
  172 F.R.D. 271 (S.D. Ohio 1997) .......................................................................................31

*In re United Cos. Fin. Corp.*,
  276 B.R. 368 (D. Del. 2002) .......................................................................................10, 11

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
  219 F.R.D. 661 (D. Kan. 2004).....................................................................................24, 25

*James D. Hinson Elec. Contr. Co. v. Bellsouth Telecomms., Inc.*,
  275 F.R.D. 638 (M.D. Fla. 2011)..................................................................................12, 28

*Johnson v. Geico Gen. Ins. Co.*,
  673 F. Supp. 2d 255 (D. Del. 2009)........................................................................................8

*Jones v. Bourassa*,
  2011 Ark. App. 369, --- S.W.3d ----, 2011 WL 1885840 (Ark. Ct. App. May 18, 2011).......14

*Kelecseny v. Chevron, U.S.A., Inc.*,
  262 F.R.D. 660 (S.D. Fla. 2009).........................................................................................24

*Kelly v. Skytel Commc'ns, Inc.*,
  32 F.App'x 283 (9th Cir. 2002) ............................................................................................9

*Kinkel v. Cingular Wireless L.L.C.*,
  857 N.E.2d 250 (Ill. 2006) ................................................................................................11

*Klay v. Humana, Inc.*,
  382 F.3d 1241 (11th Cir. 2004) ........................................................................5, 6, 7, 12, 30, 31

*Kleiner v. First Nat'l Bank of Atlanta*,
  97 F.R.D. 683 (N.D. Ga. 1983)............................................................................................8

*Kline v. Security Guards, Inc.*,
  196 F.R.D. 261 (E.D. Pa. 2000)............................................................................................2

*Kornberg v. Carnival Cruise Lines, Inc.*,
  741 F.2d 1332 (11th Cir. 1984) ......................................................................................28, 29

*Kpadeh v. Emmanuel*,
  261 F.R.D. 687 (S.D. Fla. 2009).....................................................................................19, 32

*Krueger v. Wyeth, Inc.*,
  2008 WL 481956 (S.D. Cal. Feb. 19, 2008)...........................................................................25

*La Grasta v. First Union Sec., Inc.*,
  2005 U.S. Dist. LEXIS 20207 (M.D. Fla. 2005) ...................................................................17

*Luedke v. Pan Am Corp.*,
  155 B.R. 327 (S.D.N.Y. 1993)...................................................................................................2

*Mallory v. Mortgage America, Inc.*,
  67 F.Supp.2d 601 (S.D.W.Va 1999) ......................................................................................11

*Marcus v. B.M.W. North America, LLC*,
  No. 08-5859, 2010 U.S. Dist. LEXIS 122908, *41-42 (D. N.J. Nov. 19, 2010) ......................8

*McDaniel Bros. Const. Co. v. Burk-Hallman Co.*,
  175 So. 2d 603 (Miss. 1965)...................................................................................................15

*Miller v. Optimum Choice, Inc.*,
  No. DKC 2003-3653, 2006 WL 2130640, *7 (D. Md. July 28, 2006)...................................15

*Murphy v. Jackson Nat. Life Ins. Co.*,
  83 S.W.3d 663 (Mo. Ct. App. 2002).......................................................................................15

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
  244 F.R.D. 79 (D. Mass. 2007)...............................................................................................16

*Pitman v. City of Columbia*,
  309 S.W.3d 395 (Mo. Ct. App. 2010).....................................................................................15

*Post v. Killington, Ltd.*,
  2008 WL 4615914 (D. Vt. Oct. 14, 2008) ................................................................................8

*Pratt v. Smart Corp.*,
  968 S.W.2d 868 (Tenn. Ct. App. 1997)..................................................................................15

*Pro Plus, Inc. v. Crosstex Energy Services, L.P.*,
  01-11-00025-CV, 2012 WL 404500 (Tex. App. Feb. 9, 2012)...............................................15

*Robinson v. Tex. Auto. Dealers Ass'n*,
  387 F. 3d 416 (5th Cir. 2004) ................................................................................................30

*Rose v. SLM Fin. Corp.*,
  254 F.R.D. 269 (W.D.N.C. 2008)..............................................................................................9

*Ross v. Bank South, N.A.*,
  837 F.2d 980 (11th Cir. 1988), *vacated on other grounds*, 848 F.2d 1132 (11th Cir.
  1988), *on rehearing*, 885 F.2d 723 (11th Cir. 1989) (en banc), ..............................................28

*R.T. Polk Cotton Co. v. Bethel*,
  96 So. 305 (Miss. 1923).........................................................................................................15

*Ruiz v. Brink's Home Sec., Inc.*,
  777 So. 2d 1062 (Fla. 2nd DCA 2001) ...............................................................15

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) ................................................... 7, 16, 17, 18

*Sadler v. Midland Credit Mgmt.*,
  2009 U.S. Dist. LEXIS 26771 (N.D. Ill. Mar. 31, 2009) ...........................................1

*Sanneman v. Chrysler Corp.*,
  191 F.R.D. 441 (E.D. Pa. 2000) ...............................................................2

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) ...............................................................5

*Sebo v. Rubenstein*,
  188 F.R.D. 310 (N.D. Ill. 1999) ...............................................................17

*Shelley v. AmSouth Bank*,
  2000 WL 1121778 (S.D. Ala. July 24, 2000) ...................................................6, 19

*Sher v. Raytheon Co.*,
  419 Fed.Appx. 887 (11th Cir. 2011) ...........................................................19, 20

*Smith v. First Union Nat'l Bank*,
  958 S.W.2d 113 (Tenn. Ct. App. 1997) .........................................................24

*State of Arkansas ex rel. Bryant v. R&A Investment Co., Inc.*,
  336 Ark. 289, 985 S.W.2d 299 (1999) .........................................................11, 13

*Stratton v. American Med. Sec., Inc.*,
  266 F.R.D. 340 (D. Ariz. 2009) ...............................................................9

*Tarpley v. Hornyak*,
  174 S.W.3d 736 (Tenn. Ct. App. 2004) .........................................................15

*Thompson v. Amer. Tobacco Co.*,
  189 F.R.D. 544 (D. Minn. 1999) ...............................................................25

*Thomson Oil Royalty, LLC v. Graham*,
  351 S.W.3d 162 (Tex. App. 2011) ..............................................................15

*Tomlison v. Kroger Co.*,
  2007 U.S. Dist. LEXIS 23805 (S.D. Ohio March 30, 2007) ......................................17

*Tyler v. Tyler*,
  S.W.2d 740 (Tex. App. 1987) .................................................................15

*Valley Drug. Co. v. Geneva Pharms., Inc.*,
   350 F.3d 1181 (11th Cir. 2003) .........................................................................23, 26, 27

*Valley Fid. Bank & Trust Co. v. Cain P'ship, Ltd.*,
   738 S.W.2d 638 (Tenn. Ct. App. 1987) .........................................................................15

*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) .........................................................................4, 12

*Wal-Mart v. Dukes*,
   __ U.S. __, 131 S. Ct. 2541 (2011)........................................................13, 20, 21, 22, 23, 32

*Waste Mgmt. Holdings v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000).........................................................................5

*Watson v. Auto-Owners Ins. Co.*,
   599 So. 2d 1133 (Ala. 1992).........................................................................15

*Western States Wholesale, Inc. v. Synthetic Indus., Inc.*,
   206 F.R.D. 271 (C.D. Cal. 2002) .........................................................................25

*Zeller v. Webre*,
   17 So. 3d 55 (La. Ct. App. 2009).........................................................................15

**STATUTES**

Ark. Code Ann. §44-88-107(a)(10) …………………………………………...…………………...13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 .........................................................................1, 5

Fed. R. Civ. P.  23(a)(2).........................................................................20, 22, 23

Fed. R. Civ. P. 23(a)(3) .........................................................................28

Fed. R. Civ. P. 23(b)(3).........................................................................6, 32

Fed. R. Evid. 402 .........................................................................19

Fed. R. Evid. 702(b).........................................................................19

MANUAL FOR COMPLEX LITIG. (FOURTH) § 21.222 (2004).........................................................................1, 4

RESTATEMENT (SECOND) OF CONTRACTS § 211 .........................................................................8

# I.     INTRODUCTION

Defendant BancorpSouth Bank ("BancorpSouth" or "the Bank") opposes class certification by contending that each of the elements of class certification, other than numerosity and the adequacy of proposed class counsel, is not met.  BancorpSouth misreads applicable law, misunderstands the applicable class certification standards, and misapplies the salient, common evidence that Plaintiff will employ to prove the claims.  All of BancorpSouth's challenges to class certification fail.  Moreover, Plaintiff has developed a workable Proposed Trial Plan for Trial of Class Claims (the "Trial Plan") that incorporates differences in the laws of the several states at issue here.  All Fed. R. Civ. P. 23 elements have been established and, consequently, the class should be certified.

# II.     ARGUMENT

## A.     The Proposed Class Definition is Objective.

A proposed class definition suffices if it describes a class that is ascertainable through objective criteria.  *Sadler v. Midland Credit Mgmt.*, 2009 U.S. Dist. LEXIS 26771, at *4-5 (N.D. Ill. Mar. 31, 2009).  The definition should avoid subjective standards (for example, a plaintiff's state of mind) and should not depend on resolution of the legal claims.  MANUAL FOR COMPLEX LITIG. (FOURTH) § 21.222, at 393 (2004) ("MANUAL").  Consisting of "all BancorpSouth Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to August 13, 2010 (the "Class Period"), maintained a non-commercial account, and incurred an overdraft fee as a result of BancorpSouth's practice of resequencing debit card transactions from highest to lowest dollar amount," Plaintiff's proposed Class definition is concise, clear and objective and satisfies these standards.  BancorpSouth's attempts to divert the analysis into subjective, irrelevant inquiries should be ignored.

### 1.   Determining Class membership does not depend on a threshold liability finding in Plaintiff's favor.

The Bank contends that the definition is "improperly merits-based" because a Class member must demonstrate that he or she incurred an overdraft fee "as a result of BancorpSouth Bank's practice of sequencing debit card transactions from highest to lowest."  Opp. at 28-30.  BancorpSouth is wrong.  This is not an improper merits-based inquiry because it does not require the fact finder to decide liability – a defect present in the so-called "fail-safe" class cases cited by

BancorpSouth but not applicable here.[1]  And determining Class membership does not depend on first deciding the appropriate alternative posting order, as BancorpSouth contends.  Opp. at 28-29.[2]  Whether BancorpSouth's manipulations are unlawful and, if so, which alternative posting order should have been used, are common, liability issues to be determined at trial.  Resolution of those issues is not necessary to determine who is in the Class.

Plaintiff has pled that all customers who were charged additional overdraft fees, as compared to what they would have been charged under a *low-to-high* posting practice, were harmed by BancorpSouth's re-ordering scheme.  *See* Second Am. Class Action Compl., **DE # 994** at ¶¶65-73.  Using that implicit alternative posting order in the class definition leaves no ambiguity about class membership:  those customers who incurred additional overdrafts as a result of the high-to-low posting, as compared to low-to-high posting, are readily ascertainable through BancorpSouth's own records.

The composition of the class will not vary if liability is ultimately premised on a less consumer-friendly posting order than low-to-high.  The fact-finder's determination of the appropriate alternative posting order as a comparator for purposes of measuring damages, *see In*

---

[1]   A "fail-safe" class is comprised only of those class members who prove defendant's liability and, as such, is unascertainable prior to a finding of liability in plaintiffs' favor.  The cases cited by BancorpSouth fall into this category and are, consequently, inapposite.  *See Hagen v. City of Winnemucca*, 108 F.R.D. 61, 63-64 (D. Nev. 1985) (proposed class defined by reference to "all persons whose Constitutional rights have been . . . are or may be" violated by the challenged conduct); *Bostick v. St. Jude Med., Inc.*, 2004 U.S. Dist. LEXIS 29997, at *49 (W.D. Tenn. Aug. 17, 2004) (to establish class membership, the court would have to conduct "mini-trials on the merits" to determine who suffered personal injury as a result of the aortic connector); *Kline v. Security Guards, Inc.*, 196 F.R.D. 261, 266-68 (E.D. Pa. 2000) (class membership turned on deciding various threshold legal issues under the Wiretap Act, including subjective inquiries into individual plaintiffs' states of mind); *Sanneman v. Chrysler Corp.*, 191 F.R.D. 441, 445 (E.D. Pa. 2000) (class membership depended on individualized proof of whether paint defect was from delamination); *Forman v. Data Transfer*, 164 F.R.D. 400, 403 (E.D. Pa. 1995) (individual inquiries required into whether fax advertisements were "unsolicited"); *Luedke v. Pan Am Corp.*, 155 B.R. 327, 330 (S.D.N.Y. 1993) (class membership required individual inquiries into over 10,000 employees to determine "who were advised that they would be employed by Pan Am II or its unions" and who "as a result of their seniority with Pan Am were assured of positions"); *Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623, 626-27 (N.D. Ill. 1987) (proposed class required court to determine legal question of who was "denied promotional opportunities because of their sex"); *Dunn v. Midwest Buslines, Inc.*, 94 F.R.D. 170, 172 (E.D. Ark. 1982) (finding of discrimination required in order to define the class).

[2]  References to "Opp." are to citations from BancorpSouth's Response and Opposition to Plaintiff's Motion for Class Certification.  **DE # 2446**.

*re Checking Acct. Overdraft Litig.-- Larsen v. Union Bank* ("*Larsen*"), 275 F.R.D. 666, 673 (S.D. Fla. 2011), will only affect which class members are entitled to recover and how much, not who is part of the class that will be bound by the judgment.  A judgment for Plaintiff using a different comparator (say, chronological) would still bind all members of the class.  Thus, the class is not a "fail safe" class.   Instead, Class membership is simply a function of objectively identifying whether each Class member (i) incurred an overdraft fee (ii) as a result of BancorpSouth's high-to-low re-sequencing.  That assessment is made through a mechanical task using BancorpSouth's own data reflecting all of the Class's debit transactions and overdraft fees.  Plaintiff's opening brief and the supporting Olsen Declaration detailed precisely how Class members will be identified using the Bank's data.  *See* Br. at 39-41; Olsen Decl., ¶¶ 37-54.[3]  BancorpSouth possesses all of the data yet fails to present any relevant ***evidence*** purporting to rebut Olsen's testimony.  This is not surprising given Judge Alsup's endorsement of Mr. Olsen's methodology after trial in *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1139 (N.D. Cal. 2010). Rather, BancorpSouth "adopts" the opinion of J.P. Morgan Chase's expert, Robert D. Willig, whose opinion is based on the fact that the named Plaintiff in that case may not have had high-to-low posting applied to her account.[4]  Willig Dec. at ¶ 9.  Professor Willig then goes on to posit that there are multiple damages scenarios that must be addressed prior to the Class being identified.  By placing the burden on Plaintiff to prematurely identify a baseline posting method for comparison purposes" at the class certification stage, BancorpSouth improperly asks the Court to determine in advance which alternative posting scenario would satisfy the Bank's legal obligations.  *See* Opp. at 30; *Larsen*, 275 F.R.D. at 673.  Defining the class in that fashion would indeed create the kind of "fail-safe" class BancorpSouth decries.

## 2. Tying the start of the Class Period to applicable statutes of limitation is not vague.

BancorpSouth contends that the Class definition is too vague because the start of the proposed Class Period is tied to applicable statutes of limitation.  Opp. at 30-32.  The Bank is

---

[3]    References to "Br." are to citations from Plaintiffs' Motion for Class Certification and Incorporated Memorandum of Law filed December 20, 2011.  References to "Olsen Decl." are to the Declaration of Arthur Olsen included in Appendix IV to Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law filed December 20, 2011.

[4]    Plaintiff is separately moving this Court to strike BancorpSouth's reliance on the Declaration of Profesor Willig for reasons specifically exposed in that motion, which are incorporated herein by reference.

wrong.  The class definition should include the relevant time period during which the class members incurred the claimed injury.  MANUAL, § 21.222, at 394.  This time period is commonly linked to statutes of limitation where, like here, the challenged conduct predates the relevant limitations period.  *See, e.g., Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1263 (11th Cir. 2009) (court did not take issue with definition of class period as beginning with the commencement of the statute of limitations).[5]

There is nothing vague about the Class Period proffered by Plaintiff here.  As detailed in the Trial Plan, Plaintiff proposes subclasses for the state law claims.[6]  Each subclass will have its own start date linked to the statute of limitations for each of those claims.

Furthermore, contrary to the Bank's claim, the statute of limitations is not a fact-intensive, individualized inquiry.  In the case that BancorpSouth cites, the statute of limitations depended on the Class Member's knowledge of wrongdoing in order to toll the limitations period.  *See Avritt v. Reliastar Life Ins. Co.*, 2009 WL 488808 at *7, *aff'd* 615 F.3d 1023 (8th Cir. 2010) (proposed Class Period depended on whether the limitations period was tolled due to the Plaintiff's lack of discovery.)  The present case has no issues of tolling the limitations period for any reason.  Rather, the statute of limitations serves to limit the Bank's liability for the wrongful overdrafts it charged prior to the commencement of the Class Period.

The Class Period is easily ascertainable by this Court, the finder of fact, and the parties through a mechanical analysis of the Bank's data.  Plaintiff's expert, Arthur Olsen, will be able to determine which of BancorpSouth's customers suffered a wrongful overdraft fee due to the Bank's policy of manipulating customer accounts as he has previously done in the *Gutierrez* and *Larsen* cases.

---

[5] Notably, where class members may be subject to different statutes of limitations or where a class definition merits further clarification, class certification is not defeated.  Rather, courts commonly create sub-classes if various statutes of limitations are involved in the same action. *See, e.g., Brown v. Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 608 (S.D. Fla. 2003) (where two distinct statutes of limitations governed class members' claims, court remedied issue by creating a sub-class for each).

[6] Plaintiff's Trial Plan is included in Appendix I to Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law filed December 20, 2011.

**B.      Common Issues Predominate.**

**1.    The Court need not decide the merits and instead determines whether Plaintiff's claims rise or fall based on common proof.**

Although BancorpSouth pays lip service to the rule that class certification is not an adjudication of the merits, its challenge to Plaintiff's certification motion is merits-based, with BancorpSouth contending that Plaintiff cannot prevail on his claims premised on high-to-low posting because "the Account Agreements explicitly authorize this practice."  Opp. at 34-35. Aside from the fact that this Court already rejected this very argument on the Motion to Dismiss, **DE # 305, 1305**, BancorpSouth fails to take substantive issue with Plaintiff's identification in the Motion for Class Certification of generalized class-wide proof that would both establish the affirmative claims or refute BancorpSouth's defenses.  Certainly, BancorpSouth fails to show that individual legal or factual issues predominate.

The Court's inquiry into the merits is necessarily limited on class certification.  That inquiry is made in order to "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case."  *Waste Mgmt. Holdings v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).  In other words, the Court undertakes "an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or *are susceptible of common proof* equally applicable to all class members."  *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (emphasis added) (quotation omitted).  This "peek at the merits" is "limited to those aspects of the merits that affect the decisions essential under Rule 23."  *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010).  Indeed, under Rule 23, "certification is largely *independent* of the merits . . . and a certified class can go down in flames on the merits."  *Id.* (emphasis added).

BancorpSouth argues that Plaintiff's common evidence – including BancorpSouth's uniform contracts, uniform overdraft practices, Overdraft Matrix Limit, and inaccurate balance information – cannot suffice to prove Plaintiff's claims.  *See, e.g.*, Opp. at 34 (arguing the uniform account agreements permit high-to-low posting).  However, as in *Schleicher*, the sufficiency of Plaintiff's common proof is a merits question that the fact finder will determine at a later stage.  If BancorpSouth is correct that Plaintiff's common evidence is insufficient, his claims on behalf of both himself *and* the Class will ultimately fail.  The key determinant now is

whether Plaintiff's and the Class' claims **rise or fall** predominantly on common proof.   The evidence to be presented at trial will have a direct impact on every Class member's effort to establish liability and on every Class member's entitlement to relief.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).  Because this is so, Plaintiff's claims should be certified under Rule 23(b)(3).

    **2.**  **Common issues predominate on the good faith and fair dealing claim.**

        **a.**    *Good faith and fair dealing is appropriate for class treatment.*

BancorpSouth cites two inapposite cases for the proposition that "federal and state courts are loathe to certify good faith and fair dealing class actions."  Opp. at 37.  However, each of those cases has previously been considered and rejected by this Court.  Moreover, both cases deal with paper checks governed by the UCC and not instantaneous electronic transfers. BancorpSouth cites *Shelley v. AmSouth Bank*, 2000 WL 1121778 (S.D. Ala. July 24, 2000), *aff'd without opinion*, 247 F.3d 250 (11th Cir. 2001), and claims that a bank's high-to-low posting order cannot support a claim for breach of the covenant of good faith and fair dealing because it would require individualized determinations of consumer knowledge.  The challenged practice in *Shelley* dealt with insufficient funds (NSF) charges for paper checks, not debit card transactions. Importantly, the *Shelley* plaintiffs did not allege a breach of the covenant of good faith and fair dealing.  Moreover, the challenged practices were not alleged to be uniform, but rather, the plaintiffs claimed that AmSouth Bank failed to provide certain disclosures to members of the class.  2000 WL 1121778 at *1-2.  *Compass Bank v. Snow*, 823 So.2d 667 (Ala. 2001), differs in the same way as *Shelley* – no good faith and fair dealing claim, no uniform policy, and paper checks rather than electronic debits.  The Alabama Supreme Court held that the trial court would have to look at individualized proof of whether the class members were provided the appropriate disclosures.  *Id.* at 677.  In the present case, it is undisputed that BancorpSouth provided materially identical disclosures to all class members.  Thus, no individualized proof is necessary.

Remarkably, BancorpSouth completely ignores the opinion of this Court in *Larsen* which certified a class for good faith and fair dealing claims.  275 F.R.D. at 680 ("breach of the duty good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct").  In *Larsen*, as here, this Court correctly found that a uniform course of conduct with uniform contracts and a standard policy of manipulating account records would support a class alleging a breach of good faith claim.  *Id.* at 676-677.  Indeed,

BancorpSouth ignores this Court's holding that the problems plaguing the proposed classes in *Sacred Heart Health Sys. Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010) and *Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004), were not present in *Larsen*, a case with substantially the same facts as those found here. *Larsen*, 275 F.R.D. at 676-677; *see also Sacred Heart*, 601 F. 3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). BancorpSouth's failure to address the Court's ruling in *Larsen* on this issue highlights the dubious nature of BancorpSouth's arguments against certification of the class.

> **b.      *Good faith and fair dealing is amenable to common proof.***

BancorpSouth begins with the impermissible merits-based (as well as objectively false) proposition that Plaintiff's claim for breach of good faith and fair dealing seeks to vary the terms of the account agreement. Opp. at 39.  But as this Court has previously found in ruling on the First Tranche Defendants' Omnibus Motion to Dismiss, Plaintiff "do[es] not seek to vary the language of the contract, but rather to have the express contractual terms carried out in good faith. . . .  There are a number of cases supporting the proposition that when one party is given discretion to act under a contract, said discretion must be exercised in good faith."  **DE # 305** at 19.  Thus, BancorpSouth's argument misses the mark inasmuch as Plaintiff can prove by common evidence that BancorpSouth did not exercise good faith under the contracts when it failed to exercise its discretion in good faith.  What is more, BancorpSouth's impermissible merits argument – even if correct – could not defeat class certification, ***as the argument invokes issues common to all Class members i.e.***, whether BancorpSouth's common overdraft practices were bad faith exercises of discretion under its standard contract language.  Again, the key determinant now is whether Plaintiff's and the Class' claims rise or fall predominantly on common proof.

The Bank also incorrectly argues that this claim requires consideration of the expectations and understandings of each individual class member.  Opp. at 39.  Again, the Court has already ruled that "a breach of the duty [of] good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct." *Larsen*, 275 F.R.D. at 680.  An objective standard appropriately governs good-faith-and-fair-dealing claims.  The reasonable expectations of a party to a standardized form contract are

judged from the perspective of a reasonable person.[7]  The use of an objective standard for a consumer's reasonable expectations is particularly appropriate here because BancorpSouth's account agreements were standardized contracts of adhesion.  The Restatement recognizes that "[s]uch a writing is interpreted wherever reasonable as treating alike all those similarly situated, *without regard to their knowledge or understanding of the standard terms of the writing*." RESTATEMENT (SECOND) OF CONTRACTS § 211 (emphasis added).  The rule also considers exceptions where some customers have superior knowledge, but such exceptions do not alter the rule.  "[C]ourts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it.  The result may be to give the advantage of a restrictive reading to some sophisticated customers who contracted with knowledge of an ambiguity or dispute." *Id*., cmt. e.[8]

BancorpSouth's reliance on *Avritt v. Reliastar Life Insurance Co.*, 615 F.3d 1023 (8th Cir. 2010), is misplaced.  Decided under Washington law not at issue here, *Avritt* emphasized

---

[7] *In re Ernie Haire Ford, Inc.*, 403 B.R. 750, 757-758 (M.D. Fla. 2009) (applying Florida law and noting that the implied covenant is designed to protect the contracting parties' reasonable expectations); *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 693 (N.D. Ga. 1983) ("where case involves standard written contracts containing terms that have an objective meaning," a court need not inquire into individual customer's subjective understanding of the meaning of the contract terms); *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 274 F.R.D. 286, 290 (N.D. Cal. 2011) ("the reasonable expectations of the class [asserting a good faith and fair dealings claim under Delaware law] are measured by an objective standard"); *Post v. Killington, Ltd.*, 2008 WL 4615914, at *3 (D. Vt. Oct. 14, 2008) (class members' subjective expectations irrelevant to good faith and fair dealings claim; "the standard is objective and based on the fact finder's determination of justified, or reasonable expectations"); *cf. Johnson v. Geico Gen. Ins. Co.*, 673 F. Supp. 2d 255, 275-76 (D. Del. 2009) (certifying class good-faith-and-fair-dealing claim because defendant's "systematic procedures" applied class-wide and predominated over individualized issues).

[8] Courts regularly certify good faith and fair dealing claims for class treatment.  *See Grey v. Hearst Communications, Inc.*, No. 10-1302, 2011 U.S. App. LEXIS 17890, *10 (4th Cir. Aug. 25, 2011) (affirming district court's certification of claim for breach of the duty of good faith and fair dealing under South Carolina law); *Marcus v. B.M.W. North America, LLC*, No. 08-5859, 2010 U.S. Dist. LEXIS 122908, *41-42 (D. N.J. Nov. 19, 2010) (certifying New Jersey state class for breach of the covenant of good faith and fair dealing and rejecting the defendant's argument that individual evidence of disclosures made to each class member would be required); *Johnson v. Geico Gen. Ins. Co.*, 673 F. Supp. 2d 255, 275-76 (D. Del. 2009) (certifying claim for breach of the duty of good faith and fair dealing where the defendant employed "systematic procedures" that "applie[d] on a class wide basis."); *In re Avon Securities*, 1998 U.S. Dist. LEXIS 18642, *35 (S.D.N.Y. Nov. 19, 1998); *Englade v. HarperCollins Publishers*, 289 AD.2d 159, 159-60  (NY App. Div. 1st Dep't 2001).

that "what is objectively reasonable depends on the nature and the context of the parties' bargain."  615 F.3d at 1032.  The *Avritt* plaintiffs relied on a dubious reading of the contract, causing the court to observe that "it is not clear that any members of the putative class, let alone a substantial number of them, originally understood the contract language in the manner the Avritts propose."  *Id.* at 1030.  Moreover, the defendant in *Avritt* marketed its insurance policies through thousands of independent agents who were not required to follow any script and who were free to answer customers' questions about the product.   *Id.* at 1027.   Given that decentralized and uncontrolled context, it was impossible to hypothesize a prevailing objective consumer's expectations.  In contrast, BancorpSouth marketed its own banking services through standardized account agreements, applied to all class members consistently, and tightly regulated the information released to customers regarding overdraft services.   Given this context, the perspective of the reasonable consumer can readily be ascertained in this case.[9]

BancorpSouth predicates many of its arguments on the factually indefensible position that no predominant customer experience existed among class members, that instead their experiences were materially different and thus "individualized."  But the undisputed evidence is to the contrary.  BancorpSouth did not inform customers of their Overdraft Matrix Limits or of any changes made to the matrix system.  Absent this information, "most consumers would not be expected to understand how posting order could impact overdraft fees."  *Gutierrez*, 730 F. Supp.2d at 1123.  The Bank's contemporaneous records demonstrate that customers were wholly unaware of all or most of the nefarious components of the overdraft scheme:  the automatic high-to-low posting order, the aggressive Overdraft Matrix system and its impact on overdrafts, the assigned Overdraft Matrix Limit, and the right to opt out of the overdraft system.[10]

BancorpSouth asserts: "At a minimum, each customer would have to provide evidence that he had 'expectations' different from what the contract said, and that his own expectations

---

[9] BancorpSouth cites three other inapposite cases, which do not involve a state law at issue here nor do they address a similar factual record involving evidence that the defendant withheld key information from all customers.  *See Kelly v. Skytel Commc'ns, Inc.*, 32 F.App'x 283 (9th Cir. 2002) (California law requires discretion to be exercised in good faith); *Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 351-52 (D. Ariz. 2009) (no "centrally orchestrated strategy" by the defendant to market the product); *Rose v. SLM Financial Corp.*, 254 F.R.D. 269 (W.D.N.C. 2008) (disclosures in proposed mortgage refinance class actions were not uniform).

[10] *See e.g.*, Mtn. for Class Cert. Ex. 1, 30(b)(6) Dep. of Jeff Jaggers, 199:14-200:21 (customer complaints over high-to-low posting order), 226:16-24 (Matrix system purposefully hidden from customers); Dep. Ex. 6 (BXS Swift H-007249) (same).

were 'objectively reasonable' based on his course of dealing with the bank, materials from the bank, and so on" but it bases that speculation on nothing more than the small print of the deposit agreements themselves.  Opp. at 40.  On this point, Judge Alsup's findings in *Gutierrez* are instructive:  "customers reasonably expect, of course, that if they overdraft their accounts, they will have to pay an overdraft fee.  They do not, however, reasonably expect that they will have to pay up to ten overdraft fees when only one would ordinarily be incurred."  *Gutierrez*, 730 F. Supp. 2d at 1123.  Given the Bank's consistent violation of the reasonable customer's expectations, the conclusion that customers incurred excess overdraft fees logically follows.

### c.   Variations in customer preferences do not defeat class certification.

As a final makeweight argument, BancorpSouth asserts that because individual class members' preferred posting order *may* vary, the Class cannot be certified because customer expectations were not uniform.  Opp. at 41-43.  Again, the Court has already ruled that "a breach of the duty [of] good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct."  *Larsen*, 275 F.R.D. at 680.  Whether some subset of customers preferred high-to-low posting order in certain circumstances, a hypothesis for which BancorpSouth offers no facts in support, is irrelevant to whether BancorpSouth exercised its reserved discretion in good faith.  That issue will be decided with common proof on a class-wide basis.  *Id.*

### 3.  Common issues predominate on the unconscionability claim.

BancorpSouth's contention regarding the unconscionability claim fares no better. Common evidence of the Bank's conduct suffices to establish both substantive and procedural unconscionability.  As this Court has already recognized, "Plaintiffs' unconscionability claims focus on [the Bank] and its conduct, making them appropriate for certification."  *Larsen*, 275 F.R.D. at 680; *see also Davis v. Cash For Payday, Inc.*, 193 F.R.D. 518, 522-23 (N.D. Ill. 2000) (certifying unconscionability class claim because common issues predominate); *In re United Cos. Fin. Corp.*, 276 B.R. 368, 375-76 (D. Del. 2002) (collecting cases).  BancorpSouth offers three specific incorrect objections: (1) unconscionability is a defense to contract and not a proper basis for affirmative relief (a previously rejected merits argument—**DE # 305** at 25-32); (2) procedural unconscionability requires individualized proof; and (3) substantive unconscionability requires individualized proof.  Opp. at 43-44.

Unconscionability may be pursued on a class-wide basis when the facts and circumstances are appropriate. *See e.g. Larsen*, 275 F.R.D. at 680, *Davis*, 193 F.R.D. at 522-3, *In re United Cos. Fin. Corp.*, 276 B.R. at 375-6, *Mallory v. Mortgage America, Inc.*, 67 F.Supp.2d 601, 614 (S.D. W.Va 1999); *Fogie v. Rent–A–Center, Inc.*, 867 F.Supp. 1398, 1403 (D.Minn.1993). In each of those cases, as here, there was a uniform course of conduct that could be determined to be unconscionable and could provide an affirmative basis for relief. *See also State of Arkansas ex rel. Bryant v. R&A Investment Co., Inc.*, 336 Ark. 289, 296, 985 S.W.2d 299, 302 (1999) (upholding affirmative unconscionability action).

Common issues also predominate for procedural unconscionability, which looks to considerations like the disparity in bargaining power between the parties, *e.g.*, *Kinkel v. Cingular Wireless L.L.C.*, 857 N.E.2d 250, 264 (Ill. 2006), whether the contract was presented on a take-it-or-leave-it basis, *id.* at 265, and whether important terms are hidden in a maze of fine print, *e.g.*, *Glassford v. Brickkicker*, 35 A.3d 1044, ¶¶ 28-30 (Vt. 2011); *see also* **DE # 514** at 5-6. BancorpSouth suggests that procedural unconscionability requires individual proof, such as being rushed through a closing. Opp. at 44. But this myopic focus ignores the common fact that what is relevant for class purposes is each customer's common relative bargaining power vis-à-vis the Bank, not their differences among themselves. As the Court previously recognized in a related unconscionability context, "there is an obvious disparity in bargaining power" between a bank's customers and their bank. **DE # 447** at 5.

BancorpSouth cites *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), for the seemingly uncontroversial position that standardized contracts are not necessarily procedurally unconscionable. Opp. at 44. Plaintiff is not relying on the standardized contract alone. Rather, Plaintiff argues that BancorpSouth's use of an adhesion contract with terms "contained in voluminous boilerplate language drafted by the bank," combined with the "lack of meaningful opportunity [for Plaintiff] to negotiate with the bank" if they disagreed with the terms, *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1319 (S.D. Fla. 2010); coupled with "the disparity in bargaining power between Plaintiffs and Defendant," *Abels*, 678 F. Supp. 2d at 1279, is the common proof of procedural unconscionability.

As for substantive unconscionability, Plaintiff can prove it on a class-wide basis. *See, e.g., Davis*, 193 F.R.D. at 522 ("substantive unconscionability claim rests on factual and legal questions common to all putative class members") (citing cases). Failing to disclose overdraft

limits (thereby hiding BancorpSouth's practice of secretly extending credit to trigger more overdraft fees) and uniformly posting high-to-low renders the deposit agreements substantively unconscionable.  Finally, BancorpSouth makes a merits argument (without any evidentiary support) that the account agreement is not unconscionable because some customers might have preferred it.  Opp. at 44.  The premature merits argument that "it cannot be said [that] 'no man in his senses and not under delusion' would" agree to BancorpSouth's overdraft policy is subject to common proof.  Opp. at 44.

### 4.  Common issues predominate on the unjust enrichment claim.

BancorpSouth's argument about the unjust enrichment claim is based on an artificially narrow view of the misconduct at issue.  The overdraft scheme was much more than just posting debits in high-to-low order.  Integral to the scheme was the Bank's hidden Overdraft Matrix Limit.  The Court should reject out of hand the Bank's suggestion that mere awareness by some class members regarding high-to-low posting, Opp. at 45, would immunize the Bank from a class-wide finding of inequitable conduct to prove an unjust enrichment claim.  As in *Gutierrez*, even had the Bank properly disclosed the posting order, "[i]t did not disclose how posting order could dramatically multiply the number overdraft penalties a customer could be assessed."  730 F. Supp. 2d at 1116.

The Bank's reliance on *Vega* is, therefore, unpersuasive.  In *Vega*, the court found that different employees possessed markedly different levels of knowledge and understanding of the commission systems established by the defendant's employment contracts based on information they may or may not have received.  564 F.3d at 1274-75.  In contrast, BancorpSouth cites no evidence that any class member learned the true nature of BancorpSouth's exploitative scheme.  Again, mere awareness of high-to-low posting is only part of the equation.  The Bank admits to willfully concealing how its overdraft policy would increase the frequency of overdrafts.  Thus, this case is like others in which certification of unjust enrichment claims is proper.  *See Larsen*, 275 F.R.D. at 680.[11]  Because Plaintiff's claim is based on BancorpSouth's across-the-board corporate policy to maximize overdraft fees, common issues will necessarily predominate.  *See Klay*, 382 F.3d at 1257.  Accordingly, "success or failure in proving this unjust enrichment claim

---

[11] *See also James D. Hinson Elec. Contr. Co. v. Bellsouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011); *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010).

will mean success or failure for the class as a whole, not for individual class members." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004).

**5. Plaintiff's unfair and deceptive trade practices claim does not require individual inquiries that preclude certification.**

BancorpSouth's primary, albeit erroneous, contention regarding the Arkansas Deceptive Trade Practices Act ("ADTPA") claim is that individualized issues will predominate because the ADTPA only allows for the recovery of actual damages. However, as the Plaintiff's Trial Plan demonstrates, determining Class Members' individual damages can be done through mechanical means once liability is established. Trial Plan at 9-10. The Bank is also wrong to claim that individual reliance issues preclude class certification because reliance is not implicated in Plaintiff's ADTPA claim. The Bank cites a Fifth Circuit case holding that a fraud claim cannot be certified on a class basis because of issues of individual reliance. *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996). However, the ADTPA does not require proof of fraud or individual reliance. Rather, it prohibits "unconscionable, false, or deceptive" trade practices. Ark. Code Ann. § 44-88-107(a)(10). While reliance-based fraud may violate the ADTPA when pled, the Bank's unconscionable business practice pled here certainly violates the ADTPA without reference to a customer's subjective reliance. *See, e.g., State ex rel. Bryant*, 985 S.W.2d at 303 (DTPA broad enough to encompass illegal usury scheme, even when interest rate was disclosed in loan contracts). As the merits of the ADTPA claim are subject to common proof, this Court should certify the class as it did for the analogous California claim in *Larsen*, 275 F.R.D. at 680, and given that the plaintiffs in *Guiterrez* prevailed at trial on the California unfair business practices claim.

**6. BancorpSouth's affirmative defenses do not defeat predominance.**

BancorpSouth also contends that its affirmative defenses create so many individualized issues that common ones cannot possibly predominate. Opp. at 48-52. BancorpSouth's platform for its argument about affirmative defenses is *Wal-Mart v. Dukes*, __ U.S. __, 131 S. Ct. 2541 (2011), Opp. at 49, but that decision is not adverse to Plaintiff's predominance argument. The employment discrimination context of *Wal-Mart* is entirely unlike the case at bar, and when the Supreme Court addressed the issue of defenses, it did so in the context of the proposed "Trial by Formula" and in the context of concluding that back pay damages relief sought for the employee class was not "incidental" to the injunctive relief sought. 131 S.Ct. at 2561.

13

As Plaintiff emphasized in his opening brief, BancorpSouth's boilerplate affirmative defenses (even with the amendments offered in response to Plaintiff's motion to strike them) asserted in a scattershot fashion are insufficient to defeat class certification. *See* Br. at 42-44. The Court's current focus should be on whether the amended defenses are plausible avoidances to the claims asserted by Plaintiff in accordance with *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). *See Castillo v. Roche Labs., Inc.*, 2010 U.S. Dist. LEXIS 87681, at *3-5 (S.D. Fla. July 30, 2010) (*Twombly* and *Iqbal* apply to affirmative defenses). In fact, it is facially implausible that Plaintiff or other Class members would knowingly consent to being gouged by BancorpSouth's predatory practices, given the choice. *See Gutierrez*, 730 F. Supp. 2d at 1104.

BancorpSouth throws out references to a number of affirmative defenses that it contends should create individual issues, but then only substantively addresses ratification, waiver, voluntary payment, mitigation of damages, and statute of limitations. As to those that are mentioned in title without further argument, the Court should reject consideration of those defenses entirely at the class certification stage to wit: unclean hands, accord and satisfaction, and acquiescence. The defense of accord and satisfaction has no place in this lawsuit for any accountholder, such as Plaintiff, who never reached an affirmative settlement with the BancorpSouth concerning its overdraft policy.[12] Given the way that BancorpSouth elected to hide its policy and practices from its customers, it is equally true that unclean hands and acquiescence have no place as defenses against Plaintiff or any other member of the Class.

Most of the affirmative defenses asserted by BancorpSouth, including ratification, waiver, and voluntary payment,[13] require *full knowledge* of the circumstances in order for the

---

[12] BancorpSouth cannot point to any agreement with Plaintiff to *settle* Plaintiff's claims for damages. *See Grayson & Grayson, P.A. v. Couch*, 2012 Ark. App. 200, --- S.W. 3d ---, 2012 WL 11281, at *15- 16 (Ark. Ct. App. Jan. 4, 2012) ("An accord and satisfaction generally involves a settlement in which one party agrees to pay and the other to receive a different consideration or a sum less than the amount to which the latter is or considers himself entitled; before there can be an accord and satisfaction, there must be a disputed amount involved and a consent to accept less than the amount in settlement of the whole.") The Bank has failed to present evidence in its Opposition of any settlements with accountholders.

[13] Voluntary payment will fare no better as a defense, and is also expected to be argued on a class-wide basis, to the extent the evidence at trial proves the Bank's concealment of its actions from the accountholders in a manner that would refute the claim that customers, including Plaintiff, voluntarily paid the overdraft fees. *See Jones v. Bourassa*, 2011 Ark. App. 369, ---

defense to prevail.  *See Larsen*, 275 F.R.D. at 677-78 & n. 8 (under California, Oregon, and Washington law).[14]   Whether this is even the type of conduct that could, as a matter of law, support such defenses is a question this Court can answer on a Class wide basis.  *See Miller v. Optimum Choice, Inc.*, No. DKC 2003-3653, 2006 WL 2130640, *7 (D. Md. July 28, 2006) ("Because the affirmative defenses are common across the putative class members, the defenses would not operate to destroy the predominance of common questions across the class, but would instead provide an additional link of commonality between the class members.").  As the facts discussed above make clear, no Class member could have possessed the requisite knowledge.

---

S.W.3d ----, 2011 WL 1885840, at *7 (Ark. Ct. App. May 18, 2011) ("The voluntary-payment rule bars the recovery of payments for obligations that are not enforceable at law when the payments are made in the absence of fraud, mistake of fact, coercion, or duress.").

[14] Ratification:  *See Arnold v. All Am. Assur. Co.*, 499 S.W.2d 861, 866 (Ark. 1973) ("A fundamental requirement to finding ratification, at least when the principal has not received any benefits from the transaction, is that the principal have full knowledge of all material facts connected with the transaction and not merely an opportunity to know them." (citations omitted)); (same: (*Watson v. Auto-Owners Ins. Co.*, 599 So. 2d 1133, 1136 (Ala. 1992); *Deutsche Credit Corp. v. Peninger*, 603 So. 2d 57, 58 (Fla. 5th DCA 1992); *Zeller v. Webre*, 17 So. 3d 55, 58 (La. Ct. App. 2009); *R.T. Polk Cotton Co. v. Bethel*, 96 So. 305 (Miss. 1923); *Murphy v. Jackson Nat. Life Ins. Co.*, 83 S.W.3d 663, 668 (Mo. Ct. App. 2002); *Valley Fid. Bank & Trust Co. v. Cain P'ship, Ltd.*, 738 S.W.2d 638, 640 (Tenn. Ct. App. 1987); *Thomson Oil Royalty, LLC v. Graham*, 351 S.W.3d 162, 165-66 (Tex. App. 2011)).

Waiver:  *See City of Ft. Smith v. McCutchen*, 279 S.W.3d 78, 81 (Ark. 2008) ("Waiver is the voluntary abandonment or surrender by a capable person of a right known to him to exist, with the intent of forever depriving him of the benefits of the right, and it may occur when one, with full knowledge of the material facts, does something which is inconsistent with the right or his intention rely upon it." (citation omitted)); (same: *Horne v. TGM Associates, L.P.*, 56 So. 3d 615, 624 (Ala. 2010); *Caraffa v. Carnival Corp.,* 34 So. 3d 127, 130 (Fla. 3rd DCA 2009); *Arceneaux v. Amstar Corp.,* 66 So. 3d 438, 450 (La. 2011); *Armstrong v. Mississippi Farm Bureau Cas. Ins. Co.,* 66 So. 3d 188, 192 (Miss. Ct. App. 2011), reh'g denied (May 3, 2011), *cert. denied,* 65 So. 3d 310 (Miss. 2011); *Farrow v. St. Francis Med. Ctr.,* Case No. ED 96532, 2012 WL 451882 (Mo. Ct. App. Feb. 14, 2012); *Tarpley v. Hornyak*, 174 S.W.3d 736, 751 (Tenn. Ct. App. 2004); *Pro Plus, Inc. v. Crosstex Energy Services, L.P.,* 01-11-00025-CV, 2012 WL 404500 (Tex. App. Feb. 9, 2012)).

Voluntary Payment:  *Bishop v. Bishop*, 250 S.W.3d 570, 572 (Ark. Ct. App. 2007) ("The voluntary-payment rule bars the recovery of payments for obligations that are not enforceable at law when the payments are made in the absence of fraud, mistake of fact, coercion, or duress." (citation omitted)); (same: *CIT Commc'n Fin. Corp. v. McFadden, Lyon & Rouse, L.L.C.,* 37 So. 3d 114, 127-28 (Ala. 2009); *Ruiz v. Brink's Home Sec., Inc.*, 777 So. 2d 1062, 1064 (Fla. 2nd DCA 2001); *Hicks v. Levett*, 140 So. 276, 282 (La. Ct. App. 1932); *McDaniel Bros. Const. Co. v. Burk-Hallman Co.,*175 So. 2d 603, 605 (Miss. 1965); *Pitman v. City of Columbia*, 309 S.W.3d 395, 403 (Mo. Ct. App. 2010); *Pratt v. Smart Corp.,* 968 S.W.2d 868, 871 (Tenn. Ct. App. 1997); *Tyler v. Tyler*, 742 S.W.2d 740, 743 (Tex. App. 1987)).

The secrecy with which the Bank manipulated the posting order for debit card transactions and approved transactions into overdraft on a class-wide basis militates against any sentiment that Plaintiff knowingly, willingly, and without protest paid the overdraft fees.  His deposition testimony reveals that when he came to understand what he believed the Bank to be doing with his debit card transactions in May 2010, he filed suit against BancorpSouth. BancorpSouth concedes that this requirement of complete knowledge exists by its use of the phrase "knowingly, willingly and without protest."  Opp. at 49.  However, it is undisputed that Plaintiff and the Class did not have full knowledge.  The Bank concealed fundamental and material aspects of its overdraft scheme from customers.  The across-the-board deprivation of knowledge presents a critical common issue which "will undercut [the Bank's] defenses by common evidence."  *Larsen*, 275 F.R.D. at 678.

Even if the defense is available, accord and satisfaction, as well as ratification and setoff pertain to damages, and can be accounted for in Plaintiff's expert's calculations.[15]  The Eleventh Circuit has made clear that individual issues relating to damages do not defeat class certification. *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005); *Sacred Heart*, 601 F.3d at 1178.  Similarly, mitigation of damages is not a barrier to class certification.[16]  If so, no breach of contract class would ever be certified since failure to mitigate is often a defense.  BancorpSouth misleads the Court in representing that Plaintiff testified that he never paid attention to overdraft charges prior to May 2010.  Opp. at 51. BancorpSouth was inquiring about the specific overdraft fee example contained in the pleading, which caused the Plaintiff to investigate the Bank's overdraft practice through the retention of counsel and shortly thereafter file this lawsuit.  Whether Plaintiff failed to complain to the Bank

---

[15] *See Larsen*, 275 F.R.D. at 677 (setoff defense does not destroy predominance); *Carbajal v. Capital One F.S.B.*, 219 F.R.D. 437, 441 n.2 (N.D. Ill. 2004) (same); *Allen v. Holiday Universal,* 249 F.R.D. 166, 177, 191 (E.D. Pa. 2008) (granting class certification and rejecting ratification as a basis for denial of the motion).  BancorpSouth relegates to its footnote 40 mention of potential offsets *and counterclaims* as examples of affirmative defenses.  Opp. at 48.  A counterclaim is not an affirmative defense, and no affirmative claim has been asserted against Plaintiff.  The set-off allegations that BancorpSouth makes can easily be dealt with to the extent that a class member owed money to the Bank at the time the account was closed.  The damage calculation made for each class member will reduce the balance that the Bank wrote off.

[16] *See, e.g.*, *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 116 (S.D.N.Y. 2010); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 244 F.R.D. 79, 87 (D. Mass. 2007); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 347.

or ask for a waiver of the fees is not relevant to a true mitigation of damages defense.  The insinuation that he paid every overdraft fee is incorrect – the Bank takes the fees involuntarily.

BancorpSouth erroneously contends that class certification must be denied because there are individual issues regarding the statute of limitations defense.  As discussed *supra* at pp. 3-4, with regard to the sufficiency of the Class definition, the Bank's citation to *Avritt* is misplaced.[17]  Opp. at 52.  Courts consistently hold that the statute of limitations does not bar class certification, even where there are certain individual issues.[18]

The issue here, as in *Larsen*, is simply whether BancorpSouth "engaged in a systematic scheme to extract the greatest possible number of overdraft fees from Plaintiff and similarly situated [BancorpSouth] consumers across the country."  275 F.R.D. at 670.  This can be determined by class-wide proof, so BancorpSouth's defenses do not defeat class certification.[19]

BancorpSouth's cherry-picked presentation of Plaintiff's' testimony is misleading and fails to support its lack of predominance argument.  For example, BancorpSouth cites to Plaintiff's testimony regarding the understanding he gained from his investigation of the multiple overdraft fees assessed shortly before he filed suit, and to the payment of multiple overdraft fees assessed on single days after he filed suit.  *See* Opp. at 49-50.  Any overdraft fees assessed against Plaintiff after the August 13, 2010 cutoff date for the Class Period are simply to be excluded from recovery.  Even as of the time that his wife signed the opt-in form for the Bank's

---

[17] *Corley v. Entergy Corp.*, 220 F.R.D. 478 (E.D. Tex. 2004), *aff'd*, 152 Fed. App'x 350 (5th Cir. 2005), Opp. at 52, is also inapposite.  The court's primary reason for finding no predominance pertained to the manner of proving each member's damages.  Later, the court briefly addressed a concern about differing limitations periods that do not exist in the case at bar.

[18] *See La Grasta v. First Union Sec., Inc.*, 2005 U.S. Dist. LEXIS 20207, at *19-20, 30 (M.D. Fla. 2005); *Sebo v. Rubenstein*, 188 F.R.D. 310, 316 (N.D. Ill. 1999); *Board of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 269 F.R.D. 340, 353 n.129 (S.D.N.Y. 2010); *Tomlison v. Kroger Co.*, 2007 U.S. Dist. LEXIS 23805, at *19-21 (S.D. Ohio March 30, 2007).

[19] Other cases BancorpSouth cites with respect to affirmative defenses barring class certification are all factually distinguishable.  Unlike here, many cases required proof of oral representations or advertising materials.  *See*, *e.g.*, *Endres v. Wells Fargo Bank*, 2008 U.S. Dist. LEXIS 12159, at *2-3, 21, 32 (N.D. Cal. Feb. 6, 2008).  *Sacred Heart Health Sys., Inc.*, 601 F.3d at 1171-72, 1179, involved hundreds of different contracts with numerous material variants, alleged oral modifications to the contracts, and the assertion of fraud in opposing certain defenses that necessitated proof of reasonable reliance.  In *Camafel Bldg. Inspections, Inc. v. Bellsouth Advert'g & Publ'g Corp.*, 2008 U.S. Dist. LEXIS 18192, at *8-9 (N.D. Ga. Mar. 7, 2008), *aff'd*, 2008 U.S. App. LEXIS 23618 (11th Cir. Oct. 28, 2008) (unpublished opinion), a specific Georgia law codifying the voluntary payment doctrine was at issue, and plaintiffs conceded that they were aware of the facts at the time that they made the payment.

Overdraft Payment Service in May 2010, BancorpSouth was not disclosing the manner in which it used the Overdraft Matrix Limit to increase the frequency of overdrafts involving debit card transactions.   **DE # 2446-3** at 13.   Nothing that BancorpSouth presents establishes that BancorpSouth disclosed all of its predatory practices to Plaintiff or any Class member, or that Plaintiff and the Class knowingly waived any challenge to those practices.   *Sacred Heart* thus does not apply.   *Cf.* 601 F.3d at 1178 (finding predominance defeated where "defendant [had] proffer[ed] individualized and varying evidence to defend against claims of individual class members by showing what they knew or should have known about an allegedly illegal course of conduct of which they complain") (internal quotation marks and citation omitted).

### 7.   Damages will be established by common proof.

BancorpSouth is completely wrong in suggesting that Plaintiff fails to show that injury and damage amounts can be established with common proof.   Opp. at 53-56.   Fundamentally, the Bank does not understand the role that Plaintiff's expert, Art Olsen, is intended to serve at trial. Mr. Olsen was not asked by Plaintiff to opine about the proper measurement of damages/restitution in this case, or about the appropriate but-for "scenario" to be used for that purpose, and offers no opinions regarding those issues.   The trier of fact will select from the various posting order scenarios that Mr. Olsen's Declaration discusses.   From there, all Class members' damages will be computed on a uniform basis using calculations that Mr. Olsen will have performed in advance of the trial using BancorpSouth's data.   Mr. Olsen's methodology is similar, if not identical, to the methodology proposed in *Larsen*, which this Court accepted for class certification purposes relying on *Gutierrez*.   *Larsen*, 275 F.R.D. at 673.

Mr. Olsen makes clear that he will first mine BancorpSouth's detailed transaction data to identify each class member who incurred additional overdraft fees as a result of the Bank's posting order by comparing that posting order to each of Mr. Olsen's alternative posting scenarios.   Olsen Decl. ¶¶ 43-47.   Mr. Olsen will then calculate each class member's individual damage.   *Id.*, ¶ 46.   Contrary to BancorpSouth's contention that Plaintiff's methodology ignores individual circumstances, Mr. Olsen's approach will consider any reversals and uncollectibles specific to each class member.   *Id.*   Indeed, Mr. Olsen has already applied his reliable methodology to calculate Plaintiff's damage.   *Id.*, ¶ 54.   A total class damage number will be calculated after calculating each class member's damage amount.   Br. 39-41; Trial Plan at 9.

18

The cases on which BancorpSouth relies at the beginning of Section V.D. of its Opposition (Opp. at 53) do not support the Bank's predominance argument as to injury and damages. *Kpadeh v. Emmanuel*, 261 F.R.D. 687 (S.D. Fla. 2009) involved personal injury claims stemming for alleged torture of many victims by a Liberian government official. *Shelley v. AmSouth Bank*, *supra*, involved OD/NSF fees for checks, and the court's critique involved a failure to present an explanation as to how each class member's damages would be identified via common evidence. Mr. Olsen's Declaration fills the void that concerned the *Shelley* court.

*In re Terazosin Hydrochloride*, supports Plaintiff's argument regarding the standard this Court applies at the class certification stage. Predominance is to be found when "the methodologies are common to the class, and their validity 'will be adjudicated at trial based upon economic theory, data sources, and statistical techniques that are entirely common to the class.'" 220 F.R.D. at 699 (citation omitted). In *Terazosin*, this Court rejected as improper a defense argument that the plaintiff's expert's methodology was too imprecise because "plaintiffs need not supply a precise damage formula and the Court need not decide which approach is best-suited to the particularities of this case." *Id.* Here, the fact that Mr. Olsen has not been asked by Plaintiff to pick one of his alternative damages scenarios to apply in this case does not defeat predominance.

Having failed to retain any expert in this case to evaluate BancorpSouth's overdraft policies or its account data for Plaintiff or any other Class member, the Bank has no basis for interjecting an analysis of competing expert opinions or citing *Sher v. Raytheon Co.*, 419 Fed.Appx. 887 (11th Cir. 2011) (unpublished opinion). BancorpSouth has elected to latch on to an expert that JP Morgan Chase Bank ("Chase") retained for a class certification motion that was never decided by this Court. BancorpSouth would not cooperate in making Chase's expert available for deposition, having stated that it had neither retained nor designated this expert as a BancorpSouth witness. One can only hypothesize about what Chase's expert would opine about BancorpSouth's policies and data and whether that expert would opine consistently.[20]  As noted

---

[20] By failing to retain Chase's expert, and have him actually examine BancorpSouth's own data, there is a significant question as to whether or not Chase's expert's testimony is even relevant under Fed. R. Evid. 402, let alone based on sufficient facts or data under Fed. R. Evid. 702(b). BancorpSouth does not even offer a competing Trial Plan to incorporate Chase's expert's opinions. This issue is most evident with regard to what BancorpSouth calls its "*Second*" argument for relying on Chase's expert. Opp. at 55-56.

in Plaintiff's Opening Brief, the Bank specifically considered the impact of low to high posting in 2003, 2007, and 2010, but elected not to institute an alternative method of posting because of the significant impact on revenue.  Br. at 11 n.9.

In any event, *Sher* is inapposite because the experts were battling over how far a plume of pollution extended into groundwater beneath properties belonging to many different owners. 419 Fed.Appx. at 889.  Thus, if the trial court ultimately agreed with the defendant's expert (who was claiming that the plume was not as extensive) following certification, then the certified class would potentially include members with no groundwater injury.  Here, in contrast, because the proposed class definition only includes BancorpSouth customers who "incurred an overdraft fee as a result of BancorpSouth's practice of re-sequencing debit card transactions from highest to lowest dollar amount," every single member in the class suffered injury based solely on the common issue of whether or not BancorpSouth's re-sequencing conduct is determined by the trier of fact to be wrongful or not.   BancorpSouth's purported battle of the experts adds nothing to this fundamental inquiry because it is merely a conflict over how individual class member damages should be calculated, not membership in the class itself. Thus, the Court can defer a decision on the battle of experts (assuming BancorpSouth actually retains Chase's or some other expert) to the time of trial when the trier of fact can decide whether damages have been proven with sufficient certainty.[21]

Lastly, BancorpSouth fails to distinguish *Gutierrez* by implying that the finder of fact will not make damages determinations in this case.  Just as in *Gutierrez*, the finder of fact – whether it be the Court on equitable claims or the jury on others – will make the damage determinations described above.

## C.    Commonality is satisfied.

Defendant's commonality argument rests on a fundamental misapprehension of both the substance and import of the Supreme Court's recent decision in *Wal-Mart*.  Plaintiff's claims clearly meet the requirements of Rule 23(a)(2) because resolution of common questions of law and fact will determine the outcome of the case.   BancorpSouth erroneously contends that because it concedes certain common facts, it can defeat class certification, arguing that:

---

[21]    Plaintiff will be opposing BancorpSouth's *Daubert* motion attacking Mr. Olsen's Declaration. **DE # 2448**.  Plaintiff's to be filed response to that motion will further demonstrate that the predominance factor has been met.

"throughout this litigation, BancorpSouth has not disputed that it provided an overdraft payment service to consumer account holders, posted debit transactions from highest to lowest order on each banking day, and applied the same posting and overdraft policies to all consumer accounts. These undisputed common practices cannot satisfy Rule 23 commonality after *Wal-Mart*."  Opp. at 18 (citations omitted).  The Bank gets the issue precisely backwards.  Because it concedes the common facts, but not the common issues of law, *i.e.* that the Bank's conceded common conduct was wrongful and/or actionable, the case becomes *more* appropriate for class certification applying *Wal-Mart*, not less.  Moreover, if the Bank's actions in manipulating and altering customer transaction records were wrongful as to the Plaintiff, then they are wrongful as to every class member, which is demonstrative of Rule 23 commonality.  Class certification is particular appropriate *because* the Bank had a commonly applied policy.  Unlike in *Wal-Mart*, where there was no record of uniform treatment of class members,[22] BancorpSouth applied its policy identically.  The common facts give rise to a common, outcome determinative, operational question: were the uniform policies proper?

As U.S. District Judge William Alsup wrote in certifying the class in *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 U.S. Dist. LEXIS 70124, at *48-49 (N.D. Cal. Sept. 11, 2008), under similar circumstances:

> The challenged practice is a standardized one applied on a routine basis to all customers. . . .  [I]ndividual variations will not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors.

This is precisely the scenario that the *Wal-Mart* refinement of Rule 23(a) meant to preserve.  *Wal-Mart*, 131 S. Ct. at 2554 ("The only corporate policy that the plaintiffs' evidence convincingly establishes is Wal-Mart's "policy" of *allowing discretion* by local supervisors over employment matters.  On its face, of course, that is just the opposite of a uniform employment practice that would provide the commonality needed for a class action…" (italics in original)).

---

[22]  In *Wal-Mart*, Justice Scalia wrote: "Without some glue holding together the alleged *reasons* for all those [employment] decisions together, it will be impossible to say that examination of the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*." *Wal-Mart*, 131 S.Ct. at 2552 (italics in original).  In other words, absent a common policy, like the one BancorpSouth admits to applying, it was impossible to produce common answers to the central elements of the case.

BancorpSouth uniformly applied its overdraft policy to the Class.   Thus, the commonality requirement of Rule 23(a)(2) is easily met under the *Wal-Mart* standard.

Plaintiff's Opening Brief identified seven common questions that will drive the resolution of this litigation.  Br. at 29-30.   Contrary to the Bank's assertion, each of those questions is appropriate for class treatment under *Wal-Mart*.  The common remedies questions that the Court invalidated for class treatment under *Wal-Mart* involved capacious statutes that were alleged to have been violated in multiple ways.  131 S. Ct. at 2551 ("this does not mean merely that they have suffered a violation of the same provision of law.  Title VII, for example, can be violated in many ways. . .").  In contrast, the common questions of law here are for identical claims under identical factual circumstances – the specific scenario the *Wal-Mart* court describes as appropriate for class treatment a mere four sentences after the sentence Defendant cites.  *Id.* ("Their claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor.  That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").  The truth of the Plaintiff's contentions will resolve the claims of each member of the class, and BancorpSouth admits the truth of the most material contentions.

BancorpSouth erroneously claims the four remaining common questions identified by the Plaintiff fail because they turn on an individual customer's understandings.  Opp. at 16-17.  The Bank is wrong because each question deals with BancorpSouth's common actions and is not dependent on any Class member's particular discernment of these actions.  The first question, whether BancorpSouth disclosed and/or refused to allow its Class members to opt out of the Overdraft Payment Service, has nothing to do with the Class members individual understandings, but addresses the Bank's admitted common non-disclosure.  Opp. at 18.  Second, whether BancorpSouth alerted Class members that a debit card transaction would trigger an overdraft fee if processed and provided them with an opportunity to cancel the transaction again deals with an admittedly common policy of not doing so.  Third, whether BancorpSouth manipulated and re-ordered transactions in order to increase the number of overdraft fees imposed similarly only deals with the Bank's common wrongful practice of the Bank of altering the sequence of debit card transactions to increase revenues.  Finally, whether BancorpSouth imposed overdraft fees

when, but for re-sequencing, there would be sufficient funds in the account to cover some of the transactions, is not reliant on each customer's understanding.  It is a mathematical calculation.

The Bank cites the unreported and non-precedential case of *Iberia Credit Union v. Cingular Wireless*, Civ. Act. No. 6:01–2148, 2011 WL 5553829 (W.D. La. Nov. 9, 2011), in support of its argument.  In that case, the formation of individual, non-standard contracts was an issue in the case.  *Id*. at *2.  Moreover, the complained-of practice was non-standard.  *Id*.  The court rejected commonality because of the lack of uniform contracts and a uniform policy.  *Id*. at *6.  In contrast, BancorpSouth's ignores its admission to applying a common policy based on substantively identical standardized contracts.

Plaintiff has raised seven common questions of law and fact that are at the heart of his dispute.  Each of the questions centers on uniformly applied policies of the Bank – uniformity that the Bank does not dispute.  Thus, because the answers to these questions will "resolve . . . issue[s] that [are] central to the validity of each of the claims in one stroke," they readily satisfy Rule 23(a)(2).  *Wal-Mart,* 131 S. Ct. at 2551.  Finally, this Court has already ruled that similar questions satisfy the commonality requirement in this context.  *Larsen*, 275 F.R.D. at 674.

**D.     Plaintiff is an Adequate Representative and Possesses Claims Typical to the Class.**

BancorpSouth next seeks to defeat certification with the oft-employed and oft-rejected defense tactic of attacking the "adequacy" of the proposed class representatives and the "typicality" of their claims.  Not surprisingly, courts have viewed with skepticism the motives of defendants who feign concern for the well-being of class members through such challenges:"[w]hen it comes, for instance, to determining whether "the representative parties will fairly and adequately protect the interests of the class,"  . . . it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).

Here, BancorpSouth incorrectly maintains that Plaintiff is inadequate because of supposed "conflicts" between his interests and those of the Class.  To the contrary, Plaintiff seeks redress for the exact same conduct and harm as the unnamed Class members.  Plaintiff's interests are fully aligned with those of the Class, and the Bank is unable to identify any "fundamental" conflict that could defeat adequacy.  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

1.       **Plaintiff is vigorously pursuing full relief for all Class members.**

BancorpSouth erroneously contends that Plaintiff is inadequate because he does not seek certification of certain claims under the laws of states in which BancorpSouth did business during the class period but in which Plaintiff does not reside. Opp. at 21-24. This argument is meritless. While some courts have found plaintiffs inadequate where they have abandoned claims for significant monetary damages or other important forms of relief for absent class members, no such tension or conflict exists here.[23] Plaintiff has not abandoned any potential remedies. Instead, they continue to pursue ***full relief*** for ***all*** Class members, including complete class-wide restitution of the excess overdraft charges resulting from BancorpSouth's re-sequencing. *See, e.g.*, *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 219 F.R.D. 661, 668-70 (D. Kan. 2004) (plaintiffs' decision not to pursue claim did not affect adequacy because they still sought all available relief for class). BancorpSouth's strained attempt to create an adequacy issue out of Plaintiff's experienced counsel's Trial Plan does not provide any basis for this Court to deny certification of the Class.[24]

BancorpSouth cannot credibly argue that Plaintiff is compromising the interests of certain Class members by "abandoning" claims under those states' UDAP statutes. This Court has already determined that a class representative from one state lacks standing to pursue UDAP

---

[23] Plaintiff's actions are distinguishable from those of the plaintiff in *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660 (S.D. Fla. 2009). In that case, this Court denied class certification because certain class members whose claims were originally sought to be included as part of the class were to be left out entirely. It was a matter of those individuals not recovering any remedy if the class was certified. Thus, the concerns of the court in *Cooper v. Southern Co.*, 390 F.3d 695 (11th Cir. 2004), which caused the court to affirm the denial of class certification, do not appear here. Importantly, BancorpSouth does not explain what remedies would be lost to a smaller group of accountholders.

[24] BancorpSouth mis-cites a recent case in arguing that Arkansas courts no longer recognize a claim for the breach of the implied of convenant of good faith and fair dealing, citing to the unreported decision in *Arkansas Research Medical Testing, LLC v. Osborne*, 2011 Ark. 158, 2011 WL 1423993 (Ark. Apr. 14, 2011). That decision merely confirms that there is no implied covenant claim distinct from a claim for breach of contract. As this Court is aware, Plaintiff is not pursuing the oft-criticized independent tort claim.

BancorpSouth also erroneously cites to the Tennessee case of *Smith v. First Union Nat'l Bank*, 958 S.W.2d 113 (Tenn. Ct. App. 1997), a case involving the ordering of checks and thereby implicating the express provision of Tennessee's Uniform Commercial Code. After "assuming without deciding" that the Code's "good faith" requirement applied to the contract in question, the court merely concluded that if the defendant was acting within the authority granted by the statute, there would be no basis to claim breach of the implied duty.

claims for class members whose UDAP claims would be governed by another state's UDAP statute. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1325 (King, J.) ("Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state."). Regardless, the interests of Plaintiff and Class members from other states than Arkansas remain fully aligned. All relief that would be available under those states' UDAP statues remains available to Class members in those other states under the other claims.

Likewise, Plaintiff's decision to pursue certain common law claims for Class members from some, but not all, states does not create any conflict because Plaintiff seeks full relief for all Class members irrespective of their residency. Plaintiff's decision to trim back the common law classes was prudent, and based upon a careful evaluation of the relevant state laws. The decision benefits all Class members by strengthening the basis for certification and facilitating class-wide adjudication. *See In re Universal Serv.*, 219 F.R.D. at 670 ("[T]he named plaintiffs' decision to abandon the fraud claim appears to have been a choice that advances the named plaintiffs' interests as well as the interests of the absent class members, and therefore the court is unpersuaded that any impermissible conflict of interest exists.").

Moreover, *Thompson v. American Tobacco Co.*, 189 F.R.D. 544 (D. Minn. 1999), and the other cases BancorpSouth cites do not stand for the proposition for which the Bank cites them.[25] Those cases are concerned with the abandonment of colorable damages claims by the class representatives in order to pursue class-wide non-monetary, equitable claims and relief. Opp. at 22-24. It is well-settled that "the general rule is that a class action suit seeking only declaratory

---

[25] *See Thompson*, 189 F.R.D. at 550-51 (res judicata potentially bars class members' individual personal injury and damage claims if injunctive relief class is certified); *Feinstein v. Firestone Tire & Rubber Co.*, 535 F. Supp. 595, 606 (S.D.N.Y. 1982) (class plaintiffs pursuing only economic damages are inadequate when putative class members may have claims for injury to person or property); *Western States Wholesale, Inc. v. Synthetic Indus., Inc.*, 206 F.R.D. 271, 277 (C.D. Cal. 2002) (plaintiff is inadequate class representative because it seeks only injunctive relief and disgorgement and abandoned recovery of damages for lost sales or market share); *Krueger v. Wyeth, Inc.*, 2008 WL 481956, at *2-4 (S.D. Cal. Feb. 19, 2008) (plaintiff seeking only statutory damages is inadequate because putative class member claims for personal injury will be barred by res judicata); *Foster v. St. Jude Med., Inc.*, 229 F.R.D. 599, 604-05 (D. Minn. 2005) ("Given the principles of res judicata, another court may well find that the class members' compensatory damages claims, if any, should have been litigated in this lawsuit."); *In re MTBE Prods. Liab. Litig.*, 209 F.R.D. 323, 339-40 (S.D.N.Y. 2002) (plaintiffs inadequate when they sought injunctive relief only while jeopardizing absent class members' personal injury claims under doctrine of res judicata).

and injunctive relief does not bar subsequent individual damage claims by class members, even if based on the same events." *Hiser v. Franklin*, 94 F.3d 1287, 1291 (9th Cir.1996).[26]

> **2.     The relief Plaintiff seeks will benefit all Class members.**

BancorpSouth does not dispute that Plaintiff challenges common practices devised to increase the number of overdraft charges, or that BancorpSouth's implementation of such practices caused the Class to incur many millions of dollars in excessive overdraft fees. Nevertheless, BancorpSouth asserts that some customers "benefited" from these practices, and that Plaintiff cannot adequately represent those hypothetical customers.  Opp. at 39-42.  This argument fails for several reasons.

First, as their proposed class definition makes clear, Plaintiff seeks certification of a Class of BancorpSouth customers who were harmed in that they *all* incurred excess overdraft fees as a result of BancorpSouth's debit card re-sequencing practice.  Plaintiff and every Class member fit within this definition, making any conflict illusory.

Second, there is no evidence in the record that the challenged practices have benefited or would benefit any customers as the defendant claimed in *Valley Drug Co.*  There are no studies or other empirical data that BancorpSouth can reference to substantiate its position that its customers either support or are better served by high-to-low.  *E.g.*, *Gutierrez*, 730 F. Supp. 2d at 1107-08 (holding that it is clear that depositors do not prefer high-to-low posting).     While BancorpSouth claims its re-sequencing helps some customers, it fails to cite a single instance when that actually happened.  The lone, inapposite *hypothetical* scenario it describes – re-sequencing allegedly helping a customer avoid a "bounced check" fee imposed by a third party – cannot possibly justify the across-the-board re-sequencing of all customers' *debit card transactions* to drive up the number of overdraft charges.  Given the Bank's use of the Overdraft Matrix Limit, and the fact that it knows as it goes to post items at the end of each day just how far into overdraft each customer will go, and posts and pays "may pay" items likes checks before "must pay" items like debit card transactions with that knowledge, charges paid under the current posting scheme that overdraft an account would be paid by the Bank regardless of the order in which they are posted.  BancorpSouth also asserts that some customers benefit from its practice of approving transactions into overdraft via its Overdraft Matrix Limit, notwithstanding that

---

[26] *See also Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867 (1984); *Fortner v. Thomas*, 983 F.2d 1024, 1031 (11th Cir.1993).

customers are charged upwards of $35 for each overdraft, even for small transactions. BancorpSouth misapprehends Plaintiff's allegations relating to the Overdraft Matrix Limit. Plaintiff is an adequate class representative despite his generic testimony that there could be some benefit to the Bank paying a transaction into overdraft. BancorpSouth elicited no testimony from Plaintiff that he agrees there is benefit in the Bank's use of re-sequencing high to low in conjunction with the secret matrix limit. Thus, his interests remain aligned with the accountholders he seeks to represent.

The Bank cites only its own representative's self-serving opinions about the benefit customers derive and a misconstrued citation in the Federal Register that is by no means authoritative on whether BancorpSouth's customers benefit from the system described in the Motion for Class Certification. Opp. at 25-26. Suggesting that people, including Plaintiff, opting in to Bank's overdraft payment service as part of its Regulation E compliance evidences some recognition of supposed "benefit" by the class masks the fact that even in its opt-in form, the Bank does not clearly identify its all the time high to low posting in conjunction with its secret Overdraft Matrix Limit. **DE # 2446-3** at 13. Nothing the Bank presents establishes that customers find benefit in BancorpSouth's re-sequencing. BancorpSouth's suggestion that its nightly posting order benefits its customers because they can make deposits during the day to counter the effects of the posting order, as well as its tired claim that its posting order ensures that larger, more important items, are paid first, Opp. at 26, are merits-based arguments that do not have any bearing on the Plaintiff's adequacy.

Hence, BancorpSouth cannot contend that a conflict of interest exists. Opp. at 25-26. Plaintiff and the class both seek to recover improperly assessed overdraft fees. Only substantial and fundamental conflicts of interest involving the specific issues in controversy will render a representative party inadequate. *Valley Drug*, 350 F.3d at 1189. None exists here. Plaintiff and class members will both gain by having their overdraft fees returned, so their economic interests are aligned. *See id*. at 1190.

Irrespective of the alternative posting order ultimately selected, all class members share the common goal of recovering the excessive overdraft fees they paid and will benefit from having the class certified. Absent this class action, their chance of recovery approximates zero. Individually litigating their case is not a feasible economic alternative considering the amounts at issue and potential litigation expenses for each customer. BancorpSouth's argument mirrors the

27

defendant's claim in *James D. Hinson Elec.*, 275 F.R.D. at 643, that a conflict of interest existed between class members who each had an interest in maximizing recovery for defendant's overcharges.  The court correctly rejected the argument, explaining that "[i]f plaintiffs' claims are successful on a class-wide basis, all class members will benefit by recovering the amounts overcharged." *Id.*

### 3.     Plaintiff is an adequate class representative despite affirmative defenses that BancorpSouth intends to assert at trial.

BancorpSouth is incorrect to argue that Plaintiff is inadequate because of three purported "unique defenses" it intends to assert at trial.  Opp. at 20-21.  The two cases cited by the Bank do not support its theory.  Further, BancorpSouth having failed to explain how the elements of the accord and satisfaction, waiver, and voluntary payment defenses would be met as to Plaintiff alone, the Court should conclude that at most those defenses would be asserted equally at trial as to all Class members in Plaintiff's shoes.[27]

The cases on which BancorpSouth relies provide no authority for the Bank's arguments. *Ross v. Bank South, N.A.*, 837 F.2d 980, 990–91 (11th Cir. 1988), *vacated on other grounds*, 848 F.2d 1132 (11th Cir. 1988), *on rehearing*, 885 F.2d 723 (11th Cir. 1989) (en banc), merely holds that the impact of potential affirmative defenses on class certification is left to the sound discretion of the trial court.  "Although the existence of an arguable defense can be taken into account by the district court, the court is not required to deny certification for such speculative reasons."  *Id.    Boca Raton Cmty. Hosp., Inc. v. Tenet Healthcare Corp.*, 238 F.R.D. 679, 694 (S.D. Fla. 2006), is factually distinct because the court was able to point to evidence that the proposed class representative was involved in the same type of conduct as the accused defendant—something which cannot be the case here inasmuch as Plaintiff is not a bank.

### 4.     Plaintiff has claims that are typical of the claims of all Class members.

Typicality under Fed. R. Civ. P. 23(a)(3) is satisfied here because the class representative's claims arise out of the same course of conduct and are based on the same legal theory as those of the potential class.  *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Brown*, 212 F.R.D. at 605.  The claims of both Plaintiff and the Class

---

[27] The most that can be said of the evidence in the record is that Plaintiff had knowledge of the posting order ***as of the time he filed this lawsuit***, which does not bar recovery on the Plaintiff's behalf for excess overdraft fees charged by BancorpSouth prior to filing suit and which would fall within the class period ending on August 13, 2010.

arise out of overdraft policies that BancorpSouth unilaterally imposed across its entire customer base. This "common course of conduct" underpins the claims of Plaintiff and other class members. *Kornberg*, 741 F.2d at 1337.

BancorpSouth's typicality challenge consists of nothing more than rehashes of flawed arguments the Bank makes elsewhere (Opp. at 18-20), and should be rejected. First, the Bank places improper emphasis on Plaintiff's testimony concerning his wife's involvement in managing their joint checking accounts, suggesting that she should have been the class representative. The fact is that Plaintiff owns the account, and BancorpSouth failed to develop a deposition record that clearly identifies applicable time frames for the questions asked.

Second, Plaintiff's agreement that reordering does not necessarily cause an overdraft in the instance that there are sufficient funds in the account to cover all of the reordered transactions does not end the inquiry. Plaintiff never admitted that high to low posting, coupled with the Overdraft Matrix Limit that causes an increased number of overdrafts, benefited him or any other class member. BancorpSouth's posting order is in fact inherently harmful given that the Bank selected and maintained a posting order over other alternative posting orders to achieve its purpose of tremendous financial gain. The Bank engaged consultants to extract millions of dollars in service fees annually from unsuspecting class members, including the Plaintiff. At the class certification stage, BancorpSouth has presented no evidence that would render Plaintiff's claims atypical on this issue.

Third, Plaintiff did not admit to ease in understanding the posting order from a review of his account statements, nor did he indicate that he easily read the Bank's deposit agreement to allow for posting transactions in any order. Plaintiff's investigation, which included the hiring of counsel to assist him, in May 2010 resulted in an understanding that he had fallen victim like other BancorpSouth customers to excessive overdraft fees. The very same arguments that BancorpSouth would present regarding the clarity it believes exists in its account agreement coupled with the periodic account statements will be made across the board as to all class members.

Fourth, Plaintiff's demand for a "fair" posting order at his deposition does not undermine the position that BancorpSouth's posting order is "wrongful." Opp. at 19. Plaintiff need not be the arbiter of a "correct" posting order, as that is a decision for the trier of fact based on an objective standard, in particular with regard to the breach of the implied duty of good faith and

fair dealing claim.  His testimony sufficiently addresses that he did not expect the Bank to manipulate his debit card transactions using the vehicle of high to low posting to line its pockets with overdraft fees.  The U.C.C. commentary cited by BancorpSouth (Opp. at 20) pertains only to checks and, therefore, does not define the reasonable expectations of debit card users.

Finally, the Bank's reference to Plaintiff opting into its overdraft payment service after the lawsuit was filed does not signal Plaintiff's consent to being abused by the Bank.  The opt-in form says nothing of the high to low posting or the Overdraft Matrix Limit that would be used in tandem to cause excessive overdraft fees.  **DE # 2446-3** at 13.  At most, Plaintiff's act of opting in should be a cap on Plaintiff's damages, which would be consistent with the class definition which terminates the class period on the effective date of Regulation E.

**E.    Bancorpsouth's Remaining Objections are Without Merit.**

Bancorpsouth asserts several other arguments in scattershot fashion, which belies its lack of faith in these arguments and its inability to articulate a compelling logic in support of them. First, the Bank claims that a class action is not the superior method for resolving the claims of the many thousands of class members because Plaintiff's trial plan does not take some unspecified "individual issues" into account and "suggests no means by which those issues could feasibly be addressed."  Resp. at 57.  That is the beginning and the end of the Bank's argument on this point.  It says literally nothing more about why any of this is so, and it makes no effort to engage in any kind of analysis of the superiority factors articulated by the Eleventh Circuit.  *See Klay*, 382 F.3d at 1269.  This kind of placeholder argument, completely lacking in any details, cannot form an adequate basis for denial of class certification.  *Cf. Barnes & Noble, Inc. v. LSI Corp.*, 2012 WL 359713 at *14 (N.D. Cal. Feb. 2, 2012) (striking defense lacking any specificity and "asserted only as a placeholder.").  Bancorpsouth fails to rebut this Court's well-reasoned finding in *Larsen* that "[n]early all of the class members in this case have claims that are so small that it would cost them much more to litigate an individual case than they could ever hope to recover in damages, and thus there is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation."  **DE # 1763** at 20.

In any event, the Bank's argument is simply wrong.  As in *Larsen*, Plaintiff's trial plan proposes a discrete number of subclasses to ensure the predominance of common legal issues, and offers jury instructions and verdict forms demonstrating in concrete fashion "how a trial on the alleged causes of action would be tried."  *See* Opp. at 57 (citing *Robinson v. Tex. Auto.*

30

*Dealers Ass'n*, 387 F. 3d 416, 425 (5th Cir. 2004)).  The *Klay* Court recognized that "if the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate."  *Klay*, 382 F.3d at 1262.  As this Court observed in *Larsen*, the Court may certify multi-state classes even if "different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can manage by means of" sub-classing.  **DE # 1763** at 21 (citation omitted).[28]

Next, the Bank argues that Plaintiff's trial plan "violates due process, the Seventh Amendment, and Article III."  Opp. at 58.  This argument is also without merit.  Right out of the box, Bancorpsouth blatantly misrepresents Plaintiff's proposed damages model to support its rhetorical point.  As set forth in Plaintiff's Motion for Class Certification and Art Olsen's Declaration, Plaintiff will construct his damages model for the Class by adding together the damages suffered by individual Class members as a result of Bancorpsouth's misconduct.  Br. at 39-41; Trial Plan at 8-9.  This is not an average or estimate.  It is, instead, simply the sum total of each Class members individual damages, reached by comparing the overdraft fees they paid to Bancorpsouth to those for which they would have been responsible under the alternate posting method selected by the finder of fact.  Only after the fact finder has awarded total Class damages will that total number be distributed to Class members in a post-trial administrative procedure.  In that process, checks or direct deposits, or even credits against negative balances, will be issued to each individual Class member based on Olsen's calculation of each Class member's individualized damages.  Trial Plan at 2.  No post-trial factual determinations will occur that infringes upon the fact finder's role to determine individual damages.

---

[28] As discussed above, Bancorpsouth argues that the laws of some states will not permit a stand-alone good faith and fair dealing claim, or will not allow one where the contact allegedly permits the conduct in question.  *See* Opp. at 39-40.  These are nothing more than merits arguments that can and will be resolved after trial by the trier of fact with regard to all Class members from those states.  Purported variations in law must be pertinent to the issues being certified.  *In re Telectronics Pacing Sys., Inc.*, 172 F.R.D. 271, 292 (S.D. Ohio 1997).  If the conduct is permitted by the contract as a whole or by specific provisions thereof, the defense is common to all Class members.  This does not create any material manageability issues.  Indeed, manageability "will rarely, if ever, be in itself sufficient to prevent certification of a class."  *Klay*, 382 F.3d at 1272.

Olsen has done this analysis repeatedly, and its soundness and accuracy are by now well established.  This is the same methodology he used and that Judge Alsup approved in *Gutierrez*.

> This order finds that plaintiffs' expert Arthur Olsen has convincingly shown that it is entirely practical to re-run the computerized data in storage for each class members' account and determine how many overdrafts were added by the high-to-low practice for debit-card transactions during the class period. Indeed, he has already done so, using various alternate posting sequences. This has been done by him on an account-by-account, day-by-day, and transaction-by-transaction basis, using the bank's own real-world data.

*Gutierrez*, 730 F. Supp. 2d at 1138; *see also Larsen*, 275 F.R.D. at 677 (S.D. Fla. 2011).  Bancorpsouth will have a full and fair opportunity to examine Olsen at trial (having failed to depose him yet), offer its own analysis of its data, and "advanc[e] . . . evidence or objection to the amount that [it] would be required to pay each customer in damages."  Resp. at 58.[29]

## III.  CONCLUSION

Plaintiff has demonstrated that he satisfies all of the elements of Rule 23(a) and (b)(3).  The class action mechanism is not only the best and most efficient way to adjudicate the Class members' claims in this case, it is also the only viable method of doing so.  For all of the foregoing reasons, and for the reasons set forth in Plaintiff's opening brief and Trial Plan, Plaintiff respectfully requests that the Court grant his motion to certify the Class pursuant to Fed. R. Civ. P. 23(b)(3).[30]

---

[29] Bancorpsouth's cases do not remotely apply here.  In both *Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 592, 604 (E.D. La. 2002), and *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297, 211 (5th Cir. 1998), plaintiffs sought to determine damages for a small group of plaintiffs and then extrapolate those damages to divine a class-wide total damage figure.  Such "Trial by Formula," *Wal-Mart*, 131 S. Ct. at 2560-61, will not be done here.  *Kpadeh*, 261 F.R.D. at 692, also cited by the Bank, is even further afield.  In contrast to the mechanical determination of damages resulting from Bancorpsouth's uniform course of conduct, *Kpadeh* involved highly individualized personal injury damages under the Alien Tort Act stemming from rape, torture, and mutilation by the commander of the Liberian Anti-Terrorism Unit.  *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986), revolved around the question of whether the CFTC, a federal agency, could adjudicate state common law counterclaims in an administrative proceeding without running afoul of Article III.  The Supreme Court found that it could, which makes Bancorpsouth's citation to this case most curious.

[30] Plaintiff anticipates that the Court will set oral argument on Plaintiff's Motion for Class Certification.  Following the completion of oral argument, Plaintiff will provide his proposed Order.

Dated: March 20, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No. 516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

<table>
<tr><td>

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

</td><td>

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

</td></tr>
</table>

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

36