UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:09-MD-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL NO. 2036

_____/

THIS DOCUMENT RELATES TO:

THIRD TRANCHE ACTIONS

*Dwyer v. TD Bank, N.A.*
D.Ma. Case No. 1:09-12118
S.D. Fla. Case No. 10-cv-20855-JLK

*Mosser v. TD Bank, N.A.*
E.D. Pa. Case No. 2:10-00731
S.D. Fla. Case No. 10-cv-21386-JLK

*Mascaro v. TD Bank, N.A.*
D.D.C. Case No. 1:10-cv-0040
S.D. Fla. Case No. 10-cv-21117-JLK

*Mazzadra, et al. v. TD Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-21870-JLK

_____/

APPENDIX I TO PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW

Dated:          December 16, 2011

Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel:  305-358-2800
Fax:  305-358-2382

Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
BRUCE S. ROGOW, P.A.
Broward Financial Center
500 E. Broward Blvd., #1930
Ft. Lauderdale, FL 33394
Tel: 954-767-8909
Fax: 954-764-1530

          *Co-Lead Counsel for Plaintiffs*

Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134

Tel:  305-442-8666
Fax:  305-779-9596

*Coordinating Counsel for Plaintiffs*

E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G.Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange S.E.
Suite 480
Atlanta, GA 30339
Tel:  770-444-9325
Fax:  770-444-0271


Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Melissa K. Hutts, Esquire
Texas Bar No. 0188015
mhutts@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 95219
Tel:  214-521-3605
Fax:  214-520-1181

Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire

Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
        BERNSTEIN LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Tel:  415-956-1000
Fax:  415-956-1008


Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel:  215-985-9177
Fax:  215-985-4169

New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street, 34th Floor
New York, NY 10155
Tel:  212-486-6060
Fax:  212-317-2946

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL NO. 2036

_____/

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on  December 16, 2011, I filed the foregoing document with

the Clerk of the Court.  I also certify that the foregoing document is being served this day, via

Federal Express, on **William J. Kayatta, Jr. and Lucas A. Ritchie, Esquire**, Pierce Atwood,

LLP, One Monument Square, Portland, Maine 04101.

Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler St., Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800 Fax: 305-358-2382

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
THIRD TRANCHE ACTIONS

*Dwyer v. TD Bank, N.A.*
D. Ma. Case No. 1:09-12118
S.D. Fla. Case No. 10-cv-20855-JLK

*Mosser v. TD Bank, N.A.*

E.D. Pa. Case No. 2:10-cv-00731

S.D. Fla. Case No. 10-cv-21386-JLK

*Mascaro v. TD Bank, N.A.*
D.D. Case No. 1:10-cv-0040
S.D. Fla. Case No. 10-cv-21117-JLK

*Mazzadra, et al v. TD Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-21870-JLK

APPENDIX I

PLAINTIFFS' PROPOSED TRIAL PLAN FOR TRIAL OF CLASS CLAIMS

# I.      INTRODUCTION

Plaintiffs submit this trial plan in support of their motion for class certification.  This plan provides a detailed outline to aid the Court in assessing how a single trial can be conducted against TD Bank, N.A. ("TD" or the "Bank") on behalf of multiple classes under the laws of fifteen states and the District of Columbia in an efficient and manageable manner.[1]  Discovery has not been completed, so this plan is, by necessity, incomplete.  Plaintiffs reserve the right to suggest changes to this plan in advance of trial in light of the completion of discovery, reports from experts, changes in the law, orders arising from summary judgment motions, or later addition of class representatives.  It is evident, however, from discovery conducted to date that trial of this action on a class-wide basis will present no unduly challenging manageability issues.

Unlike certain other class actions involving contractual claims, in this case TD Bank used uniform form contracts for all Class members with similar, if not identical, terms.  Class members nationwide were required to accept TD Bank's non-negotiable terms.  TD Bank's own witnesses and documents will demonstrate that TD Bank applied its overdraft policies uniformly to all Class members and that the banks that TD Bank acquired became subject to these same terms.  Further, these witnesses and documents will demonstrate TD Bank's unlawful scheme to impose and collect overdraft fees in the hundreds of millions of dollars.  Consequently, certification of the Class will not present any insuperable manageability issues and will instead make possible a fair and efficient resolution of claims that are uniform to hundreds of thousands of TD Bank's customers.

---

[1] Rule 23 does not require submission of a trial plan, but "[a]n increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof." Fed. R. Civ. P. 23, Advisory Committee Note (2003 amendments).  The Eleventh Circuit does not require trial plans but recommends that plaintiffs present feasible trial plans in support of class certification. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009).

Plaintiffs envision at this time a single trial with the following procedural steps:

(1)       Plaintiffs will present their case-in-chief, submitting common evidence of TD Bank's wrongdoing, class-wide injury, and total damages;

(2)       TD Bank will present the defenses it wishes to advance, with the burden having shifted to TD;

(3)       Plaintiffs will present their rebuttal case; and

(4)       The Court will enter a verdict based on Special Verdict Forms that take into consideration the minor variations, if any, among state laws.

Plaintiffs expect that trial of this action will take nine days.  In *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1126 (N.D. Cal. 2010), a case involving similar allegations, the plaintiffs put on their case before U.S. District Judge William Alsup in the Northern District of California in five days and defendants in four.  The trial of the case at bar should of similar length and there is no reason to believe that it will take any longer.  Plaintiffs here, like the plaintiffs in *Gutierrez*, will present their case through a handful of TD Bank's own witnesses and documents, TD Bank's third-party consultants, and Plaintiffs' expert, Arthur Olsen, the same expert qualified by Judge Alsup in *Gutierrez*.  TD Bank's overdraft policies were essentially uniform during the entire Class Period throughout its geographic footprint, so that presentation of evidence demonstrating TD Bank's wrongful conduct will not be overly complex.

If a verdict for the Plaintiffs results, judgment in a total, single monetary sum will be entered in favor of the Class.  A post-judgment administrative proceeding will follow, in which TD Bank's data will be used to distribute checks (or direct deposits) to each individual Class member based on Mr. Olsen's calculations and the applicable statute of limitations.  This will be done systematically and without any requirement that the Class members submit proofs of claim.

Plaintiffs will ask the Court to approve the final allocation of damages.[2]  If a verdict is returned in favor of TD Bank, judgment dismissing the action with prejudice would be entered.

## II.     PRESENTATION OF COMMON PROOF FOR EACH CAUSE OF ACTION

In order to prove their claims, Plaintiffs will rely on common proof for all of their causes of action that is derived from TD Bank's own witnesses and documents, TD Bank's consultants and documents, and Plaintiffs' expert.  Plaintiffs set forth below an evidentiary outlines that demonstrates how this case will be tried as a class action.

### A.     Plaintiffs Will Prove with Common Evidence that TD Bank Breached the Covenant of Good Faith and Fair Dealing

In this Court's omnibus order in the First Tranche denying defendants' motion to dismiss, this Court concluded that "all states recognize an implied covenant of good faith and fair dealing in every contract.[3]  In addition, the Court held that "when one party is given discretion to act under a contract, said discretion must be exercised in good faith."  **DE # 305** at 19.  Plaintiffs will prove with evidence common to all Class members that TD Bank did not act in good faith when it exercised discretion under its deposit agreements with Class members.  Proof of Plaintiffs' claims is found in TD Bank's own documents and in the testimony of its witnesses.

For example, TD Bank's deposit agreements ("Personal Deposit Account Agreements" or "PDAAs") are standardized form, non-negotiable contracts that are remarkably uniform across

---

[2] It is common for courts to have follow-on proceedings regarding the allocation of damages, even if they involve individualized damage proceedings (which will not be necessary here).  *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003); 3 CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS, §9:53 at 429-30 (4th ed. 2002) (collecting cases); 7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1781 (2d ed. 1986).

[3] Certain states recognize a separate and independent claim for breach of the covenant of good faith and fair dealing apart from that of breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a part of breach of contract.

the states in which TD Bank did retail business during the Class Period.[4]  The deposit agreements, given to customers when they opened an account, failed to advise customers of the invariable high-to-low posting order and contained only vague and misleading disclosures.  Ex. 9 at 68:6-16.  The agreements averaged nearly 40 pages in length and were single-spaced and in small font.

All of TD Bank's deposit agreements provided that the reordering of transactions was discretionary.  None of these uniform agreements permitted TD Bank to manipulate the reordering of debit card transactions solely to create overdrafts that would not otherwise exist, to charge overdrafts when there were sufficient funds in the account, or to reorder the posting of debits over a period of days irrespective of when the transaction occurred.  In doing so, TD Bank violated the implied covenant of good faith and fair dealing.

In addition to the uniform deposit agreements and the testimony of TD Bank's witnesses, Plaintiffs will introduce other common and uniform evidence of TD Bank's breach predicated upon TD Bank's common policies and practices.  Among other things, TD Bank utilized a formulaic, automated system in order to post transactions from highest to lowest for all Class members;[5] implemented a secret line of credit applicable to all Class members designed to

---

[4] *See, e.g.*, Ex. 16 (MDL-TD-0009183-9201); Ex. 17 (MDL-TD-0004101-4112); Ex. 18 (MDL-TD-0004214-4257-4257); Ex. 19 (MDL-TD-0004302-4324); Ex. 20 (PDAA Comparison Chart prepared by TD Bank and its counsel for time period 4/2/02-12/31/05); Ex. 21 (MDL-TD-0004393-4416); Ex. 22 (MDL-TD-0004417-4464); Ex. 23 MDL-TD-0004513-4536); Ex. 24 (MDL-TD-0004537-4560); Ex. 25 (MDL-TD-0004609-4632); Ex. 26 (MDL-TD-0004633-4654); MDL-TD-0004699-4720); Ex. 27 (PDAA Comparison Chart prepared by TD Bank and its counsel for time period 12/2005 – 11/2011).

[5] *See* Ex. 4 at 21, 23-4; Ex. 5 at 35:4-37:11, 58:20-59:11; Ex. 6 (TD000129814); Ex. 7 at 97:8-17.

authorize transactions into overdraft;[6] and provided unclear balance information to all Class members.[7]

TD Bank's failure to clearly disclose the circumstances that would give rise to an overdraft fee, and its knowledge of the adverse impact that its overdraft scheme had on Plaintiffs and the Class,[8] is also established through common proof, including the testimony of TD Bank's witnesses and the documents it produced.

**B.    Plaintiffs Will Prove with Common Evidence that TD Bank's Overdraft Practices are Substantively and Procedurally Unconscionable**

This Court, in denying the motions by the First Tranche defendants to dismiss the complaints of the First Tranche plaintiffs, found that those similar complaints sufficiently pled the following elements of procedural unconscionability:  (i) a tremendous disparity in the sophistication and bargaining power between Plaintiffs and defendants, (ii) the deposit agreements were contracts of adhesion – there was no option to negotiate their terms and the terms were contained in voluminous boilerplate language, and (iii) Plaintiffs and Class members were denied any meaningful opportunity to opt out of the overdraft programs.  **DE # 305** at 28-29.

The Court also ruled on substantive unconscionability in deciding those First Tranche motions to dismiss.  The Court found that the pleading of the following elements was sufficient: (i) no reasonable person would have agreed to allow the banks to post debits in a manner designed solely to maximize the number of overdraft fees, and (ii) the amount of overdraft fees

---

[6] *See* Ex. 31 (MDL-TD-0005974-5976); Ex. 32 (Leon Depo. at 117:20-25); Ex. 34 (TD000030549); Ex. 35; Ex. 36 (MDL-TD-0006081); Ex. 37 (TD000405736); Ex. 9 (Chevalier Depo. II at 110:20-24).
[7] *See* Ex. 58 (TD000454037); Ex. 60 (TD000016532-16533); Ex. 7 at 138:9-139:12; Ex. 61 (TD000079058); Ex. 62 (TD0000121892).
[8] *See* Ex. 54 (TD000017276); Ex. 55 (TD000094723); Ex. 50 (TD000038652); Ex. 56 (TD000029852).

imposed was unconscionably excessive because the fees were not reasonably related to the costs or risks associated with providing overdraft protection. **DE # 305** at 30-31.

Plaintiffs will prove these elements of procedural and substantive unconscionability with common evidence. That evidence will include: TD Bank's retention of consultants and its financial resources and sophistication in devising its overdraft fee program,[9] the form contracts with boilerplate language provided by TD Bank to all of its retail banking customers,[10] the absence of any meaningful opportunity for Plaintiffs and Class members to negotiate or change the terms of the deposit agreements or opt out of the overdraft program,[11] and widespread consumer confusion and customer complaints regarding the substantive unfairness of TD Bank's overdraft scheme.[12]

### C.   Plaintiffs Will Prove With Common Evidence that TD Bank Has Been Unjustly Enriched

Plaintiffs will use common evidence to prove their unjust enrichment claims. First, Plaintiffs will demonstrate that they and the Class members conferred a benefit on TD Bank that was unjust – the payment of excessive overdraft fees. This evidence will include the testimony of Plaintiffs' expert, Arthur Olsen, which is based upon a detailed analysis of TD Bank's overdraft transaction data for the Class. *See, e.g.*, Olsen Decl., ¶¶ 37-53; *id.* ¶¶ 19-33 (summarizing his analysis in *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp.2d 1080, 1104

---

[9] *See* Ex. 10 (Carreker retention letter TD000385277) at 1; Ex. 9 at 21:3-10; 22:15-18; 24:12-21; 27:7-18; 39:4-6; 39:7-19; 41:4-6; 42:8-10; Comp. Ex. 11; Ex. 42 (TD000148840) ("In TD Bank alone, the revenue line represents $438MM in 2010."); Ex. 43 (overdraft income at TD Banknorth); Ex. 44 (TD000406759)(gross NSF/OD revenue); Ex. 45 (TD000328074) (indicating expected revenue impact of impending federal regulation).

[10] *See supra* note 4.

[11] *See* Ex. 38 (TD000372753); Ex. 39 (TD000034555); Ex. 40 (TD000110808); Ex. 32 (Leon Depo.) at 147:3-13.

[12] *See* Ex. 57 (TD000090118); Ex. 7 at 34:19-21, 138:9-139:12; Ex. 58 (TD000454037); Ex. 59 (TD000305554-305555); Ex. 60 (TD000016532-16533); Ex. 61 (TD000079058); Ex. 62 (TD0000121892).

(N.D. Cal. 2010)).  Further, Plaintiffs will introduce evidence that TD Bank knew that the benefit conferred – greater overdraft fee revenue – would result from its overdraft scheme.[13]  Plaintiffs can therefore establish with common evidence that TD Bank understood the benefit and took advantage of it to the detriment of Plaintiffs and the Class members.

### D.  Plaintiffs Will Prove with Common Evidence that TD Bank Violated the Unfair Competition Laws of Connecticut, New Jersey, New York, Pennsylvania and Vermont

Plaintiffs seek to certify five separate subclasses of customers residing in states subject to the following consumer-protection statutes;  (1) Connecticut Gen. Stat. §§ 42-110a, *et seq.*,  (2) New Jersey Stat. §§ 56:8-1, *et seq.*, (3) New York Gen. Bus. Law § 349, (4) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, particularly 73 P.S. § 201-2(4)(v), § 201-2(4)(xiv), and § 201-2(4)(xxi), and  (5) Vermont Stat. Ann. Tit. 9, §§2451 *et seq.*  These statutes prohibit unlawful, unfair, or deceptive acts or practices and are substantially similar.

Because Plaintiffs and all Class members have been subjected to the same conduct by TD Bank, common evidence will be able to establish the violations of each of these statutory provisions.  That evidence will include the following:  TD Bank utilized a high-to-low posting order that maximized its revenues by increasing the number of transactions that resulted in an overdraft fee,[14] used a concealed line of credit to Class members in order to maximize the amount of overdraft fees it received,[15] provided inaccurate balance information to all Class members;[16] misrepresented and failed to properly disclose the circumstances under which it

---

[13] *See supra* n.9.
[14] *See supra* n.5.
[15] *See supra* n.6.
[16] *See supra* n.7.

would charge overdraft fees in its uniform deposit agreements;[17] was completely aware of the adverse impact that its overdraft scheme had on Plaintiffs and the Class,[18] and failed to provide Plaintiffs and Class members with any meaningful opportunity to opt out of its overdraft program.[19]   Evidence of TD Bank's financial resources, sophistication, and use of consultants in devising the overdraft fee program,[20] and consumer complaints attesting to the unfairness of TD Bank's scheme and documents from TD Bank's employees acknowledging the validity of these complaints will constitute additional proof.[21]

### E.      Plaintiffs Will Prove with Common Evidence Causation and the Amount of Damages

Plaintiffs will demonstrate the existence of causation through, *inter alia*, documents and testimony from TD Bank's witnesses showing the foreseeability of injury to Class members caused by greater overdraft fees and that this injury was in fact an intended consequence of TD Bank's scheme.  Common proof will include internal TD Bank documents and testimony showing the intended effect of its scheme, the scheme's impact on the Class, and the benefit of the scheme to TD Bank.

With the aid of their expert, Arthur Olsen, Plaintiffs will use common proof to demonstrate the injury to Class members and calculate total damages for the Class without any need to resort to information obtained from individual Class members.  Modern information management technology used by large defendants such as TD Bank will simply the calculation of damages and readily permit the adjudication of these mass claims.  TD Bank's sophisticated systems contemporaneously recorded and then stored the transactions during the Class period.

---

[17] *See* Ex. 9 at 68:6-16.
[18] *See supra* n.8.
[19] *See supra* n.11.
[20] *See supra* n.9.
[21] *See supra* n.12.

This common evidence will be used to (i) identify the TD Bank customers who were assessed additional overdraft fees due to the Bank's high-to-low posting order as compared with an alternative posting order in which, for example, debit card transactions are posted in chronological order based on authorization date and time, and (ii) calculate the amount of the additional overdraft charges that each Class member incurred during the Class Period.  *See* Olsen Decl., ¶¶ 43-53.

## 1.        APPLYING MULTISTATE LAW

When seeking certification of a class for which the laws of several states potentially apply, the plaintiff bears the burden of demonstrating a suitable and realistic plan for trial of the class claims and must submit an extensive analysis showing that there are no material variations among the law of the states for which certification of a class is sought.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004).[22]  "[I]f applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate." *Id.*[23]

Common issues of law and fact will remain the predominant focus of this litigation, notwithstanding the potential application of multiple states' laws.  The extensive analysis embodied in this Trial Plan and in the surveys attached hereto demonstrate that applying the laws of the several states to Plaintiffs' claims here does not present any difficult manageability issues. For all of the claims, the applicable state laws can be grouped into a total of 13 subclasses sharing materially identical legal standards.  Plaintiffs will present evidence of all of these

---

[22] In a later decision, the Eleventh Circuit declined to explain precisely what "extensive" specifically means other than to say it must be "more than perfunctory." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010).
[23] In *Klay*, although the court reversed certification of claims for breach of contract and unjust enrichment, the court recognized that state law claims "based on a principle of law that is uniform among the states" can form a "realistic possibility" of certification. *Id.* at 1261.

elements through uniform proof derived from TD Bank's documents and witnesses, or Plaintiffs' expert, as described more particularly above. Plaintiffs seeking to represent each subclass reside in one of the states belonging to that subclass; thus, they may represent Class members residing in those other states included in the subclass. *See* MANUAL FOR COMPLEX LITIGATION §§21.23, 22.754 (4th ed. 2004) (describing use of subclasses to take account of differences amongst the various states' laws and representation for each subclass); *Wooden v. Board of Regents of Univ. Sys. of Georgia,* 247 F.3d 1262, 1287-88 (11th Cir. 2001) (explaining that one class representative must have standing for each subclass).

Plaintiffs propose that at the conclusion of evidence, the fact finder be provided special verdict forms that take into account these minor variations among state laws. Proposed Special Verdict Forms are attached as Exhibit E. As these proposed forms demonstrate, the differences that do exist among state laws can readily be taken into account through the use of discrete subclasses, thus ensuring careful adherence to legal requirements and mitigating any manageability issues. Indeed, the Court has already endorsed this approach in its previous order certifying subclasses against Union Bank, finding that "[t]he proposed special verdict forms and supporting surveys of law submitted by Plaintiffs with their Trial Plan illustrate that the variations among the potentially applicable state laws are not material and can be managed to permit a fair and efficient adjudication by the fact finder at trial." *Larsen v. Union Bank, N.A.,* 275 F.R.D. 666, 2011 U.S. Dist. LEXIS 83273, *65-66 (S.D. Fla. July 25, 2011).

### 1. The Three Breach Of Contract And Implied Covenant Of Good Faith And Fair Dealing Subclasses Are Manageable

The common law implies the duty of good faith and fair dealing in every contract in terms of performance and enforcement. *See* RESTATEMENT (2D) OF CONTRACTS §205 (1981) (the "RESTATEMENT OF CONTRACTS"). In other words, each party to a contract has a duty to refrain

from doing anything to unfairly interfere with the rights of any other party to receive the benefits of the contract. *Id.* As this Court has already found, good faith and fair dealing includes exercising one's discretion in carrying out the contract in good faith. Dkt. No. 305 at 19.

The law of good faith and fair dealing is largely uniform. Forty-nine jurisdictions either directly cite or paraphrase the RESTATEMENT OF CONTRACTS as to the implied covenant of good faith and fair dealing. *See* Exhibit A at 1. Some states treat the implied covenant of good faith and fair dealing as a separate cause of action. *Id.* For those that do not, the good faith and fair dealing claims are subject to the elements of that state's breach of contract claims. *Id.*

Plaintiffs have grouped the states together into three subclasses for which materially identical legal standards apply as follows:

**Good Faith and Fair Dealing Breach Subclass No. 1**. This subclass is comprised of states that treat the breach of the implied covenant of good faith and fair dealing as a separate cause of action; thus, a party may breach the implied covenant without breaching an express provision of the contract. The states included are Connecticut, Delaware, New Hampshire, New Jersey, North Carolina and Vermont. The common elements that must be proven to established a breach of the duty of good faith and fair dealing in these states are: (i) a valid contract; (ii) the defendant acted in bad faith or engaged in unreasonable conduct that had the effect of preventing the plaintiff from receiving the benefits of the contract; and (iii) resulting damages. The proposed representatives of this subclass are Ian McNulty (Connecticut), Gregory Carcaci (New Jersey), Paige Schwartzman (New Jersey), Lucy Nico (New Jersey) and Suzanne Hubbard (Vermont). *See* Appendix II.

**Good Faith and Fair Dealing Breach Subclass No. 2**. This subclass treats the implied covenant claims as part of the breach of contract claims. The states included are District of

11

Columbia, Maryland, New York, Rhode Island, South Carolina, and Virginia. The common elements that must be proven to establish a breach of the duty of good faith and fair dealing in these states are: (i) a valid contract; (ii) the defendant breached the contract by unfairly interfering with the plaintiff's rights to receive benefits under the contract; and (iii) resulting damages. The proposed representatives of this subclass are James Daniels and Kelli Herd, both residents of New York. *See* Appendix II.

**Good Faith and Fair Dealing Breach Subclass No. 3**. This subclass treats the implied covenant as part of the breach of contract claim and requires plaintiff to show that the breach was material. Included in this subclass are the states of Florida, Maine and Pennsylvania. The common elements that must be proven to establish a breach of the duty of good faith and fair dealing in these states are: (i) a valid contract; (ii) defendant's breach of a material term of the contract; and (iii) resulting damages. The proposed representative of this subclass is Todd Mosser, a resident of Pennsylvania. *See* Appendix II.

## 2. The Three Unjust Enrichment Subclasses are Manageable

The law of unjust enrichment is largely uniform. Most states have simply adopted a variation of the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1, which provides that a party may be required to make restitution if she is unjustly enriched at the expense of another.

Plaintiffs have grouped the states together into three subclasses for which materially identical legal standards apply as follows:

**Unjust Enrichment Subclass No. 1**. These states follow the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1. The states included are Connecticut, District of Columbia, New Hampshire and Vermont. The common elements that must be proven to establish unjust enrichment in these states are: (i) the plaintiff conferred a benefit; (ii) the

defendant accepted or retained that benefit; (iii) under circumstances that would be unjust for the defendant to retain the benefit.  The proposed representatives of this subclass are Ian McNulty (Connecticut), Suzanne Hubbard (Vermont), Todd Mosser (Pennsylvania), Gregory Caraci (New Jersey), Lucy Nico (New Jersey), Paige Schwartzman (New Jersey), James Daniels (New York) and Kelli Herd (New York).  *See* Appendix II..[24]

**Unjust Enrichment Subclass No. 2**.  The states encompassed by this subclass also follow the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1 but also require the plaintiff to prove a single additional element:  that the defendant appreciated the benefit conferred.   The states included in this subclass are Florida, Maine, Maryland, Pennsylvania, Rhode Island, South Carolina and Virginia.  The proposed representative of this subclass is Todd Mosser, a resident of Pennsylvania.  *See* Appendix II..

**Unjust Enrichment Subclass No. 3.**

3.        **The states encompassed by this subclass follow the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1 but also require the plaintiff to prove that the plaintiff lacks an adequate remedy at law.  The states included in this subclass are Delaware, New Jersey, New York and North Carolina.  The proposed representatives of this subclass are Gregory Caraci (New Jersey), Lucy Nico (New Jersey), Paige Schwartzman (New Jersey), James Daniels (New York) and Kelli Herd (New York).   *See* Appendix II.The Two Unconscionability Subclasses Are Manageable**

The law of unconscionability is substantially uniform across all states.  All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it

---

[24] Plaintiffs who do not reside in states grouped into this subclass may nonetheless serve as representatives of Unjust Enrichment Subclass No. 1 because they reside in states that require these same elements of unjust enrichment to be proven, in addition to other elements.

may so limit the application of any unconscionable term as to avoid any unconscionable result.

(2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

U.C.C. §2-302 (2011).

Plaintiffs have grouped the states together into two subclasses for which materially identical legal standards apply as follows:

**Unconscionability Subclass No. 1**.  The states in the subclass, which comprise the majority of states, require both substantive and procedural unconscionability.  These states are: Connecticut, Delaware, District of Columbia, Florida, Maine, Maryland, New Hampshire, New Jersey, North Carolina, Pennsylvania, Rhode Island and South Carolina.  The proposed *See* Appendix II.

**Unconscionability Subclass No. 2.**

4.      **The states in this subclass require only substantive unconscionability.  These states are:  New York, Vermont and Virginia.  The proposed representatives of this subclass are Suzanne Hubbard (Vermont), James Daniels (New York), Kelli Herd (New York),  Todd Mosser (Pennsylvania) and Ian McNulty (Connecticut).[25]  *See* Appendix II.The Five Unfair and Deceptive Trade Practices Acts Subclasses are Manageable**

The Court has ruled that Plaintiffs may only assert a state statutory claim if a named Plaintiff resides in that state.  Dkt. No. 305 at 40.  Accordingly, Plaintiffs do not propose state unfair and deceptive trade practices act groupings and instead seek to certify single-state subclasses represented by Plaintiffs who reside in their home states as follows:  Connecticut, New Jersey, New York, Pennsylvania and Vermont.  The proposed representatives of these

---

[25] Plaintiffs who do not reside in states grouped into this subclass may nonetheless serve as representatives of Unconscionability Subclass No. 2 because they reside in states that require these same elements of unjust enrichment to be proven, in addition to other elements.

subclasses are Ian McNulty for Connecticut; Gregory Carcaci, Lucy Nico and Paige Schwartzman for New Jersey; James Daniels and Kelli Herd for New York; Todd Mosser for Pennsylvania; and Suzanne Hubbard for Vermont.

The applicable statutes are as follows: CONN. GEN. STAT. § 42-110b(a); N.J. STAT. § 56:8-2; N.Y. GEN. BUS. LAW § 349(a); 73 PENN. STAT. § 201-3; and VT. STAT. ANN. tit. 9, § 2453(a).

# EXHIBIT A

# BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

## I. INTRODUCTION

Every contract imposes a duty of good faith and fair dealing in its performance and in its enforcement. *See Restatement (Second) of Contracts* §205 (1981) ("*Restatement*"). Below are surveys related to the three proposed subclasses for the breach of contract and implied covenant of good faith and fair dealing class claims. The first table sets forth those states in which TD Bank does business and where breach of the implied covenant of good faith and fair dealing is a separate cause of action. The second table represents those states in which TD Bank does business that apply a three- element test for breach of contract claims, where the implied covenant does not supply a separate cause of action. The third table lists states in which TD Bank does business that require a material breach in order to bring a breach of contract claim where implied covenant claims are not separate causes of action.

# BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | |
|---|---|
| **GOOD FAITH AND FAIR DEALING SUBCLASS #1**<br><br>**IMPLIED COVENANT AS A SEPARATE CAUSE OF ACTION**<br>**(1) Valid Contract; (2) Defendant Unreasonably Interferes with Plaintiff's Rights**<br>**to Receive Benefits under the Contract; (3) Resulting Damages** | |
| States | Connecticut, Delaware, New Hampshire, New Jersey, North Carolina, Vermont |
| Class Representatives | Ian McNulty, Gregory Carcaci, Paige Schwartzman, Lucy Nico, Suzanne Hubbard |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| Connecticut | "[E]very contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) Landmark Investment Group, LLC v. Chung Family Realty Partnership, LLC, 125 Conn.App. 678, 693, 10 A.3d 61, 75 (2010). "A claim of a breach of the duty of good faith and fair dealing is a separate cause of action." *Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut, Inc.*, Superior Court, complex litigation docket at Hartford, Docket No. X04 CV 08 5023532 (May 11, 2010, Shapiro, J.); see *Lund v. Stern & Co., Superior Court*, judicial district of New Britain, Docker No. CV 94 0463413 (November 3, 1994, Stengel, J.) (13 Conn. L. Rptr. 77, 78 n. 1) ("To the extent that the plaintiff may be alleging breach of the implied covenant of good faith and fair dealing as a separate cause of action, rather than in support of his tortious breach of contract claim, courts have allowed plaintiffs to allege breach of contract and breach of the implied covenant of good faith and fair dealing"). *Michel v. Bridgeport Hosp.*, 2011 WL 1176885, *6 (March 7, 2011 Conn. Super. 2011).<br><br>"In short, the plaintiffs pleaded two separate causes of action, and it is not necessarily inconsistent for the jury to find that the breach of the express terms did not cause any injury while finding that the breach of the implied covenant of good faith and fair dealing did cause legal injury." *Froom Dev. Corp. v. Developers Realty, Inc.*, 972 A.2d 239, 247 (Conn. App. Ct. 2009). |
| Delaware | Stated in its most general terms, the implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain. Thus, parties are liable for breaching the covenant when their conduct |

# BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

|  |  |
|---|---|
|  | frustrates the overarching purpose of the contract by taking advantage of their position to control implementation of the agreement's terms. This Court has recognized the occasional necessity of implying contract terms to ensure the parties' reasonable expectations are fulfilled. This quasi-reformation, however, should be a rare and fact-intensive exercise, governed solely by issues of compelling fairness. Only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of had they thought to negotiate with respect to that matter may a party invoke the covenant's protections. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).<br><br>Damages awarded are concurrent with those awarded for breach of the contract's explicit provisions. Typically, damages for breach of contract are limited to the non-breaching parties' expectation interest. *E.I. DuPont de Nemours*, 679 A.2d at 445. |
| New Hampshire | There is an implied covenant that the parties will act in good faith and fairly with one another in every contract. *Livingston v. 18 Mile Point Drive*, 972 A.2d 1001, 1005-06 (2009). Parties are prohibited from behavior inconsistent with: (1) the parties' agreed-upon common purpose and justified expectations; and (2) common standards of decency, fairness and reasonableness. *Id.*<br><br>A breach of contract standing alone does not give rise to a tort action for breach of good faith and fair dealing; however, if the facts constituting the breach of the contract also constitute a breach of duty owed by the defendant to the plaintiff independent of the contract, a separate tort for breach of good faith and fair dealing will lie. *Bennett v. ITT Hartford Group*, 846 A.2d 560, 564 (N.H. 2004). |
| New Jersey | Every contract in New Jersey contains an implied covenant of good faith and fair dealing. *Kalogeras v. 239 Broad Ave., L.L.C.*, 997 A.2d 943, 953 (N.J. 2010). A party shall not do anything that "will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965).<br><br>New Jersey recognizes the breach of the covenant of good faith and fair dealing as an independent cause of action. *Payne v. Fujifilm U.S.A., Inc.*, No. 07-385 (JAG), 2007 U.S. Dist. LEXIS 94765, at *34 (D.N.J. Dec. 28, 2007). The cause of action has been recognized in permitting the inclusion of terms and conditions which have not been expressly set forth in the written contract, redressing bad faith performance of an agreement even where no express term has been breached, and permitting inquiry into a party's exercise of discretion expressly granted by a contract's terms. *Id.* |

**BANK OVERDRAFT MDL 2036**
**BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING**

| | |
|---|---|
| North Carolina | Breach of the implied covenant may provide a separate cause of action. *Eli Research, Inc. v. United Communications Group, LLC*, 312 F. Supp. 2d 748, 761 (M.D.N.C. 2004) (noting that NC courts have considered GFFD claims separately from breach of contract claims and holding the plaintiff sufficiently alleged two separate claims, one for GFFD and one for breach of contract). |
| Vermont | An implied covenant of good faith and fair dealing exists in every contract. *Carmichael v. Adirondack Bottled Gas Corp.*, 635 A.2d 1211, 1217 (Vt. 1993). The covenant of good faith prohibits dealing that is unfair (such as taking advantage of the necessitous circumstances of the other party), "'evasion of the spirit of the bargain,'" and "'abuse of a power to specify terms.'" *Id.* (citation omitted). <br><br> A breach for violation of the implied covenant may form a separate cause of action than for breach of contract, as long as the counts are based on different conduct. *Harsch Props., Inc. v. Nicholas,* 932 A.2d 1045, 1050 (Vt. 2007). |

BANK OVERDRAFT MDL 2036
BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| GOOD FAITH AND FAIR DEALING SUBCLASS #2 | |
| --- | --- |
| IMPLIED COVENANT NOT A SEPARATE CAUSE OF ACTION AND<br>BREACH OF CONTRACT HAS THREE ELEMENTS:<br>(1) A valid contract; (2) Defendant's breach; and (3) Resulting damages | |
| States | District of Columbia, Maryland, New York, Rhode Island, South Carolina, Virginia |
| Class Representative | James Daniels, Kelli Herd |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| District of Columbia | This court has held that all contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.  If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing.  *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (citing *Hais v. Smith,* 547 A.2d 986, 987 (D.C. 1988)).<br><br>There must be a contract for the covenant of good faith and fair dealing to arise.  For example an at-will employee cannot make a claim for breach of the covenant because there is no contract to provide a basis for the covenant.  *Paul,* 754 A.2d at 310. |
| **Elements of Breach of Contract** | |
| District of Columbia | To prevail on a claim of breach of contract a party must establish a valid contract between the parties; an obligation or duty arising out of the contract; a breach of that duty; and damages caused by breach.  *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Maryland | A contract in Maryland gives rise to an implied duty of good faith and fair dealing.  That duty concerns the performance and enforcement of the contract itself.  The covenant of good faith and fair dealing does not obligate a party to take affirmative actions that the party is clearly not required to take under the contract.  Rather, the duty simply prohibits one party to a contract from acting in such a manner as to prevent the other party from performing his obligations under the contract.  In short, while the implied duty of good faith and fair dealing recognized in Maryland requires that one party to a contract not frustrate the other party's performance, |

BANK OVERDRAFT MDL 2036
BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | |
|---|---|
| | it is not understood to interpose new obligations about which the contract is silent, even if inclusion of the obligation is thought to be logical and wise. An implied duty is simply recognition of conditions inherent in expressed promises. *Blondell v. Littlepage*, 991 A.2d 80, 90-91 (Md. 2010). |
| | Where, as here, personal taste does not provide the basis for the exercise of discretion, an objective standard of what constitutes good faith and fair dealing applies. *See Clancy v. King*, 954 A.2d 1092, 1108 (Md. 2008). The obligation of good faith and fair dealing requires a party exercising discretion to do so in accordance with the "reasonable expectations" of the other party. *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 675-76 (Md. 2009) (citing Steven J. Burton & Eric G. Anderson, *Contractual Good Faith: Formation, Performance, Breach, Enforcement* §2.3.3 (Little Brown & Co. 1995). What constitutes a "reasonable expectation," of course, depends on the language of the contract. *Id.* (citing Burton & Anderson, §3.3.4). We agree with Professors Burton and Anderson, who explain: This accommodation requires meaningful review because a discretion-exercising party may be called upon to justify its actions by giving its reasons. A court or jury must decide whether those reasons reasonably deserved significant weight and were among the reasons allowed by the contract. If they satisfy these criteria, then the discretion exercising party performed in good faith. At the same time, this standard requires deference to the discretion exercising party, not judge or jury. Accordingly, a reasonableness standard allows meaningful legal review of discretion without overreaching – a deferential standard that bites. *Id.* |
| | Maryland does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing, and the allegations making up such a claim should be pursued under a plaintiff's breach of contract claim. *Magnetti v. Univ. of Md.*, 909 A.2d 1101, 1105 n.3 (Md. Ct. Spec. App. 2006) *aff'd*, 937 A.2d 219 (Md. 2007). |
| **Elements of Breach of Contract** | |
| Maryland | To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation. *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). A party's failure to comply with the contract bars his breach of contract claim. *County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 602 (Md. 2000); *K&K Mgmt., Inc. v. Lee*, 557 A.2d 965, 971 (Md. 1989) (in order for plaintiffs to recover damages for breach of contract they must prove that the defendant breached the contract and the plaintiffs did not themselves commit a material breach of that contract). |

BANK OVERDRAFT MDL 2036
BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | Elements of Breach of Implied Covenant of Good Faith & Fair Dealing |
|---|---|
| New York | In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). Implied covenant of good faith and fair dealing embraces pledge that neither party to contract shall do anything that will have effect of destroying or injuring other party's right to receive fruits of contract. *MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 611 (N.Y. Sup. Ct. 2010). <br><br> There is no separate claim for breach of the implied covenant of good faith and fair dealing; it is a form of breach of contract claim. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). |
| | **Elements of Breach of Contract** |
| New York | The essential elements of a cause of action to recover damages for breach of contract: the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages. *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (N.Y. App. Div. 2010) |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| Rhode Island | "Virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortg., Inc. v. Antonelli*, 790 A.2d 1113 (R.I. 2002). This implied covenant exists between the parties to a contract so that the contractual objectives may be achieved. *Ide Farm & Stable v. Cardi*, 297 A.2d 643, 645 (R.I. 1972). While a claim for a breach of the covenant of good faith gives rise to a breach of contract claim, it does not give rise to an independent tort. *A. A. A. Pool Serv. & Supply v. Aetna Casualty & Sur. Co.*, 395 A.2d 724, 725-26 (R.I. 1978); *Gillette of Kingston, Inc. v. Bank R.I.*, No. WC 05-0616, 2006 R.I. Super. LEXIS 51 (R.I. Super. Ct. May 5, 2006). |
| | **Elements of Breach of Contract** |
| Rhode Island | Breach of contract is validly pled upon a showing of three elements: existence of a contract; breach; and resulting damages. *Rendine v. Catoia*, 52 R.I. 140, 142 (R.I. 1932). |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| South Carolina | There exists in every contract an implied covenant of good faith and fair dealing. *Butler Contracting, Inc. v. Court St., LLC*, 631 S.E.2d 252, 258 (S.C. 2006); *Tharpe v. G. E. Moore Co.*, 174 S.E.2d 397, 399 (S.C. 1970). An implied covenant of good faith and fair dealing is not an independent cause of action separate from a claim for breach of contract. *Rotec Servs. v. Encompass Servs.*, 597 S.E.2d 881, 884 (S.C. Ct. App. 2004). |
| | **Elements of Breach of Contract** |
| South Carolina | Under South Carolina law, to prove breach of contract plaintiff must prove existence of a contract, breach, and |

# BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | |
|---|---|
| | resulting damages. *McCain Mfg. Corp. v. Rockwell Int'l Corp.*, 695 F.2d 803 (4th Cir. 1982); *Gen. Info. Servs., Inc. v. LP Software, Inc.*, No. 3:08-324-CMC, 2009 U.S. Dist. LEXIS 53516, at *17-*18 (D.S.C. June 18, 2009). |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Virginia | Virginia law imposes an implied covenant of good faith and fair dealing in every contract. *Virginia Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1998). Breach of the duties imposed by the implied covenant of good faith and fair in every contract gives rise to an action for breach of contract, not a separate claim. *Frank Brunckhorst Co. L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 462, 465 (E.D. Va. 2008) |
| **Elements of Breach of Contract** | |
| Virginia | A valid breach of contract claim requires that plaintiff show the existence of a legal obligation, violation of that obligation, and, as a consequence, injury or damages. *Frank Brunckhorst Co. L.L.C. v. Coastal Atl., Inc.*, 542 F. Supp. 2d 452, 457 (E.D. Va. 2008). |

BANK OVERDRAFT MDL 2036

BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| GOOD FAITH AND FAIR DEALING SUBCLASS #3 | |
|---|---|
| **IMPLIED COVENANT NOT A SEPARATE CAUSE OF ACTION**<br>**BREACH OF CONTRACT REQUIRES A MATERIAL BREACH:**<br>**(1) a valid contract; (2) Defendant's material breach; and (3) Resulting damages** | |
| States | Florida, Maine, Pennsylvania |
| Class Representative | Todd Mosser |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Florida | The covenant is intended to protect the reasonable expectations of the parties in light of their express agreement. *Ins. Concepts & Design, Inc. v. Healthplan Servs.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001). The doctrine of implied covenant of good faith cannot be used to vary the terms of an express contract. A duty of good faith must relate to performance of an express term of the contract and is not an abstract and independent term of a contract. It must be anchored to the performance of an express contractual obligation. There can be no cause of action for a breach of the implied covenant absent breach of an express term of the contract. *Flagship Resort Dev. Corp. v. Interval Int'l, Inc.*, 28 So. 3d 915, 924 (Fla. Dist. Ct. App. 2010).<br><br>A claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law absent an allegation that an express term of the contract was breached. *Ins. Concepts & Design*, 785 So. 2d at 1234. |
| **Elements of Breach of Contract** | |
| Florida | A contract action requires three elements: (1) a valid contract; (2) a material breach; and (3) damages. *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008). To constitute a vital or material breach, a defendant's nonperformance of a contract must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part but a defendant's failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach. *Atlanta Jet v. Liberty Aircraft Servs., LLC*, 866 So. 2d 148, 150 (Fla. Dist. Ct. App. 2004). A material breach by one party may be considered a discharge of the other party's obligations there under. A party to a contract is not entitled to specific performance where that party did not perform its obligations under the clear terms of the contract. *Nacoochee Corp.* |

9

# BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | |
|---|---|
| | *v. Pickett*, 948 So. 2d 26, 30 (Fla. Dist. Ct. App. 2006). |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| Maine | We have recognized that the former Uniform Commercial Code, §1-203, imposes a duty of good faith and fair dealing by banks, requiring "'honesty in fact in the conduct or transaction concerned.'" *First NH Banks Granite State v. Scarborough*, 615 A.2d 248, 250 (Me. 1992) (citation omitted). |
| | **Elements of Breach of Contract** |
| Maine | Breach of contract consists of: a meeting of the minds; consideration; and mutuality of obligations. *Dom J. Moreau & Son, Inc. v. Fed. Pac. Elec. Co.*, 378 A.2d 151, 153 (Me. 1977). To prevail on a contract claim, there must be a: (1) breach of a material contract term; (2) causation; and (3) damages. *Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 724 A.2d 1248, 1250 (Me. 1999). Plaintiff properly pled a cause of action for breach of contract upon showing: the existence of a contract; plaintiff's performance; defendant's breach; damages. *Anderson v. E. Coupling Co.*, 81 A. 167, 168-69 (Me. 1911). |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| Pennsylvania | A covenant of good faith and fair dealing is implied in every contract. *Kamco Indus. Sales, Inc. v. Lovejoy, Inc.*, No. 09-1407, 2011 WL 891825, at *7 (E.D. Pa. Mar. 10, 2011). Examples of breaches include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Philadelphia Plaza -- Phase II v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 2002 Phila. Ct. Com. Pl. LEXIS 14 (Pa. C.P. June 21, 2002). <br><br> A breach of the covenant of good faith is nothing more than a breach of contract claim and that separate causes of action cannot be maintained for each, even in the alternative. *JHE, Inc. v. Se. Pennsylvania Transp. Auth.*, No. 1790 NOV.TERM 2001, 2002 WL 1018941, at *7 (Pa. Com. Pl. May 17, 2002). |
| | **Elements of Breach of Contract** |
| Pennsylvania | Breach of contract is validly pled upon a showing of three elements: a valid contract (including its essential terms), a material breach of a duty imposed by the contract, and resulting damages. *Principal Life Ins. Co. v. DeRose*, No. 1:08-CV-2294, 2009 U.S. Dist. LEXIS 109130, at *23 (M.D. Pa. Oct. 28, 2009). Material breach is "when there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 652 (Pa. 2009). |

# BANK OVERDRAFT MDL 2036

## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

I:\XanB\Bank Overdraft\CLASS CERT THIRD AND FOURTH TRANCHE\TD Bank Charts\TD Bank Good Faith Fair Dealing Survey final.docx

# EXHIBIT B

# BANK OVERDRAFT MDL 2036
## UNJUST ENRICHMENT SUBCLASSES
### I. OVERVIEW

Below are surveys related to the three proposed subclasses for unjust enrichment. The first table sets forth those states in which TD Bank does business and that use the *Restatement's*[1] definition of unjust enrichment. The second table sets forth those states in which TD Bank does business and that use the *Restatement's* definition but add an additional element requiring that the defendant have knowledge of the benefit received. The third table lists states in which TD Bank does business and that allow an unjust enrichment claim only if there is an inadequate remedy at law.

| UNJUST ENRICHMENT SUBCLASS #1: | |
|---|---|
| **BASIC RESTATEMENT DEFINITION**<br>**(1) Plaintiff conferred a benefit on Defendant; (2) Defendant accepts/retains benefit;**<br>**(3) under circumstances it would be unjust for Defendant to retain the benefit.** | |
| States | Connecticut, District of Colombia, New Hampshire, Vermont |
| Class Representative | Ian McNulty, Suzanne Hubbard, Todd Mosser, Gregory Caraci, Lucy Nico, Paige Schwartzman, James Daniels, Kelli Herd |
| **Case Law** | |
| Connecticut | Unjust enrichment doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. The question is: Did the party liable, to the detriment of someone else, obtain something of value to which the party liable was not entitled? Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 970 A.2d 592, 610 (Conn. 2009). |
| District of Columbia | Unjust enrichment occurs when a person retains a benefit (usually money) which in justice and equity |

---

[1]   *Restatement (1st) Restitution* §1 (1937) ("*Restatement (1st) Restitution*").

BANK OVERDRAFT MDL 2036
UNJUST ENRICHMENT SUBCLASSES

|  | |
|---|---|
|  | belongs to another. *Hillyard v. Smither & Mayton, Inc.,* 76 A.2d 166, 167 (D.C.1950); *Restatement (1st) Restitution* §1 cmt. A . In such a case, the recipient of the benefit has a duty to make restitution to the other person if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for the recipient to retain it. *Id.* § 1 cmt. c. Thus the doctrine of unjust enrichment depends on whether it is fair and just for the recipient to retain the benefit, not on whether the person or persons who bestowed the benefit had any duty to do so. A claim of unjust enrichment does not require fault on the part of the recipient of the benefit, *4934, Inc. v. D.C. Dept. of Emp. Servs.,* 605 A.2d 50, 55-56 (D.C. 1992). Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust. *News World Communications, Inc. v. Thompsen,* 878 A.2d 1218, 1222 (D.C. 2005). |
| New Hampshire | The doctrine of unjust enrichment is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity. Where there is no express contractual relationship a trial court may require an individual to make restitution for unjust enrichment if he has received a benefit that would be unconscionable to retain. *Pella Windows & Doors, Inc. v. Faraci,* 580 A.2d 732, 732-33 (N.H. 1990). |
| Vermont | The equitable doctrine of unjust enrichment rests upon the principle that a man shall not be allowed to enrich himself unjustly at the expense of another. *Legault v. Legault,* 459 A.2d 980, 984 (Vt. 1983). The elements of unjust enrichment: (1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for defendant not to compensate plaintiff for its value. *Reed v. Zurn,* 992 A.2d 1061, 1066 (Vt. 2010). |

BANK OVERDRAFT MDL 2036
UNJUST ENRICHMENT SUBCLASSES

| UNJUST ENRICHMENT SUBCLASS #2: | |
|---|---|
| **RESTATEMENT TEST AND REQUIRES AN APPRECIATION OF THE BENEFIT:**<br>**(1) Plaintiff conferred a benefit on Defendant; (2) Defendant accepts/retains benefit; (3) Defendant appreciated the benefit conferred; and (4) under circumstances it would be unjust for Defendant to retain the benefit.** | |
| States | Florida, Maine, Maryland, Pennsylvania, Rhode Island, South Carolina, Virginia |
| Class Representatives | Todd Mosser |
| **Case Law** | |
| Florida | The essential elements that must be proven under a theory of unjust enrichment are a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof. *Jackson-Jester v. Aziz*, 48 So. 3d 88, 90 (Fla. Dist. Ct. App. 2010). |
| Maine | To sustain a claim for unjust enrichment, a claimant must establish that it conferred a benefit on the other party that the other party had appreciation or knowledge of the benefit and that the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value. *Forrest Assocs. v. Passamaquoddy Tribe*, 760 A.2d 1041, 1045-46 (Me. 2000). |
| Maryland | "In 2000, this Court identified the elements of a claim of [*295] unjust enrichment, previously considered by the Court of Special Appeals in Everhart v. Miles, 47 Md. App. 131, 136, 422 A.2d 28, 31 (1980). Unjust enrichment consists of three elements: 1. A benefit conferred upon the defendant by the plaintiff; 2. An appreciation or knowledge by the defendant of the benefit; and 3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *Berry & Gould, P.A. v. Berry*, 360 Md. 142, 151-152, 757 A.2d 108, 113 (2000) (quoting *County Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 n. 7, 747 A.2d 600, 607 n. 7 (2000)). *Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 294-295 (Md. 2007) |

3

## BANK OVERDRAFT MDL 2036
### UNJUST ENRICHMENT SUBCLASSES

| | |
|---|---|
| Pennsylvania | Where one party has been unjustly enriched at the expense of another, he is required to make restitution to the other. To recover, there must be both (1) an enrichment and (2) an injustice resulting if recovery for the enrichment is denied. *See Restatement (1st) Restitution* §1, cmt. a. *Meehan v. Cheltenham Twp.*, 189 A.2d 593, 595 (Pa. 1963). The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007). |
| Rhode Island | Recovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them. To recover under a claim for unjust enrichment, a plaintiff is required to prove the following elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit; (4) in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof. *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 99 (R.I. 2006). |
| South Carolina | Unjust enrichment is an equitable doctrine, akin to restitution, which permits the recovery of that amount the defendant has been unjustly enriched at the expense of the plaintiff. *Ellis v. Smith Grading & Paving, Inc.*, 366 S.E.2d 12, 14 (S.C. Ct. App. 1988). "This Court has recognized quantum meruit as an equitable doctrine to allow recovery for unjust enrichment. Absent an express contract, recovery under quantum meruit is based on quasi-contract, the elements of which are: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit; (4) under conditions that make it unjust for him to retain it without paying its value." *Columbia Wholesale Co., Inc. v. Scudder May N.V.*, 440 S.E.2d 129, 130 (S.C. 1994). |
| Virginia | A man shall not be allowed to enrich himself unjustly at the expense of another. *Kern v. Freed Co., Inc.*, 299 S.E.2d 363, 365 (Va. 1983). There are three general elements which must be shown: (1) a benefit conferred on the defendant by the plaintiff; (2) knowledge on the part of the defendant of the conferring of the benefit; and (3) acceptance or retention of the benefit by the defendant; (4) in circumstances that render it inequitable |

4

### BANK OVERDRAFT MDL 2036
#### UNJUST ENRICHMENT SUBCLASSES

| | |
|---|---|
| | for the defendant to retain the benefit without paying for its value. *Whitehurst v. Cho*, No. 99231, 1992 WL 884510, *1 (Va. Cir. Ct. Feb. 19, 1992). |

## BANK OVERDRAFT MDL 2036
### UNJUST ENRICHMENT SUBCLASSES

| UNJUST ENRICHMENT SUBCLASS #3: |
| :--- |
| **REQUIRES AN INADEQUATE REMEDY AT LAW**<br>**(1) Plaintiff confers a benefit; (2) Defendant accepts/retains benefit; (3) it would be unjust for the Defendant to retain the benefit; and (4) there is an inadequate remedy at law.** |

| States | Delaware, New Jersey, New York, North Carolina |
| :--- | :--- |
| Class Representatives | Gregory Caraci, Lucy Nico, Paige Schwartzman, James Daniels, Kelli Herd |
| **Case Law** | |
| Delaware | Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.  The elements of unjust enrichment are: an enrichment, an impoverishment, a relation between the enrichment and impoverishment, the absence of justification, and the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). |
| New Jersey | Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law.  *Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992) aff'd, 275 N.J. Super. 134, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994); *D.R. Horton Inc. - New Jersey v. Dynastar Dev., L.L.C.,* No. MER-L-1808-00, 2005 WL 1939778, *18 (N.J. Super. Ct. Law Div. Aug. 10, 2005).  The doctrine of unjust enrichment is equitable in nature.  It is applied where the facts show that one party has received a benefit at the expense of another, which it is simply unjust to permit him to retain.  The remedy for unjust enrichment is an order of restitution. *Restatement (1st) Restitution* §1. *Jersey Shore Sav. & Loan Ass'n v. Edelstein*, 530 A.2d 1320, 1323 (N.J. Super. Ct. Ch. Div. 1987); *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285 (N.J. 1992) (recovery in quasi-contract is generally allowed when one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust). |
| New York | The remedy of an equitable lien is unwarranted where damages lie for unjust enrichment.  *Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 418 (N.Y. App. Div. 1999); *Bennett v. John*, 151 A.D.2d 711 (N.Y. App. Div. 1989) ("the plaintiff has an adequate remedy at law, to wit, monetary damages for unjust |

## BANK OVERDRAFT MDL 2036
### UNJUST ENRICHMENT SUBCLASSES

|  |  |
|---|---|
|  | enrichment and that dismissal of the claim for an equitable lien is warranted"). A person shall not be allowed to enrich himself unjustly at the expense of another. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it. *See Restatement (1st) Restitution* §1. The general rule is that the plaintiff must have suffered a loss and an action not based upon loss is not restitutionary. *State v. Barclays Bank of New York, N.A.*, 563 N.E.2d 11, 15 (N.Y. 1990). The doctrine of unjust enrichment does not require wrongful conduct by the one enriched only that the enrichment be unjust. *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 179 A.D. 2d 592, 593 (N.Y. App. Div. 1992). |
| North Carolina | The court's equitable intervention is obviated when an adequate remedy at law is available to the plaintiff, as the dissent correctly notes. "Equity will not lend its aid in any case where the party seeking it has a full and complete remedy at law." *Jefferson Standard Life Ins. Co. v. Guilford County,* 34 S.E.2d 430, 434 (1945). Thus when the remedy of foreclosure is available, a plaintiff cannot rely upon a restitution theory to recover the balance of a promissory note secured by a deed of trust. *Id.* "And restitution is not available on a claim of unjust enrichment for a subcontractor who failed to utilize the remedies of Chapter 44A when these would have given him adequate relief." *Embree Const. Group, Inc. v. Rafcor, Inc.*, 411 S.E.2d 916, 920 (N.C. 1992). The *Restatement (1st) Restitution* §1 lays down the general principle that "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." To establish a claim for unjust enrichment, a party must have conferred a benefit on the other party. The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. The benefit must not be gratuitous and it must be measurable. The defendant must have consciously accepted the benefit. A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law. A quasi contract or a contract implied in law is not a contract. The claim is not based on a promise but is imposed by law to prevent an unjust enrichment. If there is a contract between the parties the contract governs the claim and the law will not imply a contract. Our cases hold that the measure of damages for unjust enrichment is the reasonable value of the goods and services to the defendant. *Booe v. Shadrick*, 369 S.E.2d 554, 555-56 (N.C. 1988). |

# EXHIBIT C

# BANK OVERDRAFT MDL 2036
# UNCONSCIONABILITY SUBCLASSES

## I. OVERVIEW

All of the states where TD Bank does business, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

U.C.C. §2-302 (2011).

Below are two tables representing the two unconscionability subclasses. The first table sets forth those states in which TD Bank does business and that require a showing of both procedural and substantive unconscionability. The second table sets forth those states in which TD Bank does business and that require a showing of substantive unconscionability.

1

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| UNCONSCIONABILITY SUBCLASS #1: |
| --- |
| **ELEMENTS OF AN UNCONSCIONABILITY CLAIM:**<br>**Both Procedurally and Substantively Unconscionable**<br><br>**(1) Contract clauses are so one-sided as to be unconscionable at the time the contract was made if the clause is oppressive or leads to unfair surprise; and (2) unequal bargaining and contract of adhesion or other elements of procedural unconscionability** |

| States | Connecticut, Delaware, District of Columbia, Florida, Maine, Maryland, New Hampshire, New Jersey, North Carolina, Pennsylvania, Rhode Island, South Carolina |
| --- | --- |
| Class Representatives | Todd Mosser, Gregory Carcaci, Lucy Nico, Paige Schwartzman, Ian McNulty |

| Both Elements Required | |
| --- | --- |
| Connecticut | CONN. GEN. STAT. ANN. § 42a-2-302 (2010)<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**CASELAW**<br>The doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made, that is, some showing of an absence of meaningful choice on the part of one of the parties together with contract |

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

|  |  |
|---|---|
|  | terms which are unreasonably favorable to the other party. *Bender v. Bender*, 975 A.2d 636, 658 (Conn. 2009). |
| Delaware | **DEL. CODE ANN. tit. 6, § 2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**CASELAW**<br>Delaware does not use the terms procedural and substantive but recognizes that both elements must be present to succeed in bringing an unconscionability claim.  A mere disparity in the bargaining power of parties to a contract will not support a finding of unconscionability.  Rather, to support such a finding, a court must find that the party with superior bargaining power used it to take unfair advantage of its weaker counterpart.  For a contract clause to be unconscionable, its terms must be "so one-sided as to be oppressive."  Put another way, "[u]nconscionability has generally been recognized to include an absence of meaningful choice [procedurally unconscionable] the part of one of the parties together with contract terms which are unreasonably favorable to the other party [substantively unconscionable]." *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, No. C.A. 19209, 2002 Del. Ch. LEXIS 91, at *37 (Del. Ch. July 9, 2002). |
| District of Columbia | **D.C. CODE § 28:2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." |

3

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

|  |  |
|---|---|
|  | **CASELAW**<br>"Generally, a party must prove both elements [of substantive and procedural unconscionability] for a court to find the contract unconscionable." *Pan Am Flight 73 Liaison Group v. Dave*, 711 F. Supp. 2d 13, 22-23 (D.D.C. 2010). The claimant "must prove not only that one of the parties lacked a meaningful choice but also that the terms of the contract are unreasonably favorable to the other party." *Id.* at 23 (internal quotation marks and citation omitted). |
| Florida | **FLA. STAT. ANN. § 672.302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO FLA. STAT. ANN. § 672.302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>To succeed on an unconscionability claim, there must be a showing of both procedural and substantive unconscionability. *Woebse v. Health Care & Ret. Corp. of Am.*, 977 So. 2d 630, 632 (Fla. Dist. Ct. App. 2008); *Bland v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 257 (Fla. Dist. Ct. App. 2006). |

4

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | Procedural unconscionability concerns the manner in which the contract is entered, whereas substantive unconscionability looks to whether the contractual terms are unreasonable and unfair.  "Most courts take a 'balancing approach' to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability.  The amount of either may vary . . . the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025 (Fla. Dist. Ct. App. 2005). |
| Maine | **ME. REV. STAT. ANN. TIT. 11 §2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO ME. REV. STAT. ANN. TIT. 11 §2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (*Cf. Campbell Soup Co. v. Wentz*, 172 F.2d 80, 3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power.  *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>This two-part test for unconscionability involves determining whether there was an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.  The inquiry involves a search for components of procedural and |

5

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | substantive unconscionability. *Zapatha v. Dairy Mart, Inc.*, 408 N.E.2d 1370, 1377, n. 13 (Mass. 1980). |
| Maryland | **MD. CODE ANN. COM. LAW § 2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO MD. CODE ANN. COM. LAW § 2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>The doctrine of unconscionability contains two components, substantive and procedural aspects. Procedural unconscionability concerns deceptive practices employed at the bargaining table. Substantive unconscionability concerns the actual terms of the contract.  The prevailing view is that procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.  This is also the position taken in Maryland. *Doyle v. Fin. Am., LLC*, 918 A.2d 1266, 1274 (Md. Ct. Spec. App. 2007). |

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| New Hampshire | **N.H. REV. STAT. ANN. § 382-A:2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO N.H. REV. STAT. ANN. § 382-A:2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power.  *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>New Hampshire does not use the terms procedural and substantive but recognizes both must be present for unconscionability.  Unconscionability includes an absence of meaningful choice [procedurally unconscionable] on the part of one of the parties together with contract terms which are unreasonably favorable to the other party [substantively unconscionable].  The existence of gross inequality of bargaining power is also a factor.  An imbalance in bargaining power of the parties may render the contract so coercive and one-sided as to prevent the plaintiff from having voluntarily assented to its terms and constitute a contract of adhesion. *Pittsfield Weaving Co., Inc. v. Grove Textiles, Inc.*, 430 A.2d 638, 639-40 (N.H. 1981). |
| New Jersey | **N.J. STAT. ANN. § 12A:2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce |

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

<table>
<tr><td></td><td>the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>STATUTORY NOTES TO N.J. STAT. ANN. §12A:2-302 (West)<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>CASELAW<br>Courts generally have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability. *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006). Unconscionability traditionally entails discussion of two factors: procedural unconscionability, which "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process," and substantive unconscionability, which generally involves harsh or unfair one-sided terms. *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 912 A.2d 88, 96 (N.J. 2006).</td></tr>
<tr><td>North Carolina</td><td>N.C. GEN. STAT. ANN. § 25-2-302 (2011)<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be</td></tr>
</table>

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." |
| | **STATUTORY NOTES TO N.C. GEN. STAT. ANN. § 25-2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. |
| | **CASELAW**<br>A party asserting that a contract is unconscionable must prove both procedural and substantive unconscionability. Procedural unconscionability involves "bargaining naughtiness" in the form of unfair surprise, lack of meaningful choice, and an inequality of bargaining power. Substantive unconscionability, on the other hand, refers to harsh, one-sided, and oppressive contract terms. *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008). |
| Pennsylvania | **13 PA. CONS. STAT. ANN. § 2302 (2010)**<br>"(a) Finding and authority of court--If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may:<br>(1) refuse to enforce the contract;<br>(2) enforce the remainder of the contract without the unconscionable clause; or<br>(3) so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(b) Evidence by parties.--When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**CASELAW**<br>A contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful |

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it.  The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively.  The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts.  *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119-20 (Pa. 2007). |
| Rhode Island | **R.I. GEN. LAWS § 6A-2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO R.I. GEN. LAWS § 6A-2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power.  *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>Reiterates statutory comments for the basic test of unconscionability: "[W]aiver of liability was unconscionable in light of the general commercial background and commercial needs of the particular trade or case.  This omission, plaintiffs argue, requires reversal so that plaintiffs may be given an opportunity to present such evidence." *Star-Shadow Prods., Inc. v. Super 8 Sync Sound Sys.*, 730 A.2d 1081, 1083 (R.I. 1999).  "To establish unconscionability, a party must prove that (1) there is an absence |

BANK OVERDRAFT MDL 2036
UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | of 'meaningful choice' on the part of one of the parties; and (2) the challenged contract terms are 'unreasonably favorable' to the other party. *E.H. Ashley & Co. v. Wells Fargo Alarm Servs.*, 907 F.2d 1274, 1278 (1st Cir. R.I. 1990) (citing amongst other authorities, *Grady v. Grady*, 504 A.2d 444, 446-47 (R.I. 1986)). |
| South Carolina | **S.C. CODE ANN. § 36-2-302 (2010)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO S.C. CODE ANN. § 36-2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>South Carolina does not use the terms procedural and substantive but recognizes that both must be present to succeed in bringing an unconscionability claim. Unconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them. *Fanning v. Fritz's Pontiac-Cadillac-Buick, Inc.*, 472 S.E.2d 242, 245 (S.C. 1996). |

11

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| UNCONSCIONABILITY SUBCLASS #2: ELEMENTS OF AN UNCONSCIONABILITY CLAIM: Substantive Unconscionability Alone Is Sufficient — Contract Terms Are So One-Sided as To Be Unconscionable under the Circumstances | |
|---|---|
| States | New York, Vermont, Virginia |
| Class Representative | Suzanne Hubbard, James Daniels, Kelli Herd |
| **Substantive Unconscionability** | |
| New York | **N.Y. U.C.C. Law § 2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO N.Y. U.C.C. Law § 2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. |

12

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | **CASELAW**<br>Under New York law, unconscionability is generally predicated on the presence of both the procedural and substantive elements, the substantive element alone may be sufficient to render the terms of the provision at issue unenforceable Procedural and substantive unconscionability are shown by an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 254 (N.Y. App. Div. 1998); *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988). |
| Vermont | **VT. STAT. ANN. tit. 9A, § 2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO VT. STAT. ANN. tit. 9A, § 2-302 (2011)**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>Substantively unfair terms support finding of unconscionability regardless of presence or absence of other enumerated factors of unconscionability at formation of contract. *KPC Corp. v. Book Press, Inc.*, 636 A.2d 325, 329 (Vt. 1993). Unconscionability can be shown by evidence of some overreaching on |

13

**BANK OVERDRAFT MDL 2036**
**UNCONSCIONABILITY SUBCLASSES**

| | |
|---|---|
| | the part of one of the parties such as that which results from an inequality in bargaining power or under other circumstances in which there is an ***absence of meaningful choice*** on the part of one of the parties, together with contract terms which are unreasonably favorable to that party. *Maglin v. Tschannerl*, 800 A.2d 486, 491 (Vt. 2002) |
| Virginia | VA. CODE ANN. § 8.2-302 (2011)<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>STATUTORY NOTES TO VA. CODE ANN. § 8.2-302<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>CASELAW<br>Historically, a bargain was unconscionable if no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.  If inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief.  A person may legally agree to make a partial gift of his or her property or may legally make a bad bargain.  But gross disparity in the value exchanged is a significant factor in determining whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resultant agreement unconscionable.  Other unfair and inequitable incidents in addition to |

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

|  | the inadequacy, however, may more readily justify relief. *Derby v. Derby*, 378 S.E.2d 74, 78-79 (Va. Ct. App. 1989). |
|---|---|

I:\XanB\Bank Overdraft\CLASS CERT THIRD AND FOURTH TRANCHE\TD Bank Charts\TD Bank Unconscionability Survey.docx

# EXHIBIT D

# REVIEW OF STATE UNFAIR AND DECEPTIVE TRADE PRACTICE ACTS

## I.    CONNECTICUT

**A.    Relevant Prohibitions**

The Connecticut Unfair Trade Practices Act ("CUTPA") prohibits a person from engaging in "unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a).  "Person" includes a corporation.  CONN. GEN. STAT. § 42-110a(3).  In determining what constitutes "unfair or deceptive," courts are guided by interpretations given by the Federal Trade Commission and federal courts to the Federal Trade Commission Act (15 U.S.C. § 45(a)(1)).  CONN. GEN. STAT. § 42-110b(b).  *Service Road Corp. v. Quinn*, 698 A.2d 258, 638-39 (Conn. 1997).  The CUTPA is to be liberally construed in favor of consumers.  *Id.* at 638.

"Trade" and "commerce" mean "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state."  CONN. GEN. STAT. § 42-110a(4).

An act or practice is unfair if it (1) offends public policy as it has been established by statutes, the common law or other established concept of unfairness, (2) is immoral, unethical, oppressive or unscrupulous; or (3) causes substantial injury to consumers, competitors or other business persons.  *Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 717 A.2d 77, 99-100 (Conn. 1998).  This test "reflects a public policy that favors remedying wrongs that may not be actionable under other bodies of law."  *Id.* at 100.

In evaluating whether conduct is immoral, unethical, oppressive or unscrupulous (the second factor of the unfairness test), at least one court has resorted to dictionary definitions of

1

unethical, finding unethical conduct as "not conforming to approved standards of behavior, a socially accepted code, or professionally endorsed principles and practices" or "not in conformity with moral norms or standards of professional conduct." *Walk v. Lupia Renovating Co., Inc.*, No. CV000504055, 2001 Conn. Super. Lexis 1191, at *12-*13 (Conn. Sup. Ct. Apr. 18, 2001).

In determining whether the act causes substantial injury to consumers, competitors or other business persons (the third factor), the plaintiff must demonstrate an injury that is: (1) substantial; (2) not outweighed by countervailing benefits to consumers or competition; and (3) that the consumers or competitors could not reasonably have avoided. *McLaughlin Ford, Inc. v. Ford Motor Co.*, 473 A.2d 1185, 1192 (Conn. 1984); *Walk*, 2001 Conn. Super. Lexis 1191, at *13-14.

Turning to the deception prong of the CUTPA, an act is "deceptive" if (1) there is a representation, omission, or other practice likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading representation, omission, or practice is material – that is, likely to affect consumer decisions or conduct. *Caldor, Inc. v. Heslin*, 577 A.2d 1009, 1013 (Conn. 1990). A party need not prove intent to deceive or knowledge of falsity. *Cheshire Mortgage Serv., Inc. v. Montes*, 612 A.2d 1130, 1144 (Conn. 1992).

**B.    Causation/Damages**

The plaintiff must demonstrate an "ascertainable loss" in order to recover. *Service Road Corp.*, 698 A.2d at 262. An ascertainable loss "is a 'deprivation, detriment [or] injury' that is 'capable of being discovered, observed or established" and is ascertainable "if it is measurable even though the precise amount of the loss is not known." *Id.* (citations omitted). There is no need to prove a specific amount of damages to make out a case. *Id.*

2

The plaintiff may recover actual damages and punitive damages, as well as reasonable attorneys' fees CONN. GEN. STAT. § 42-110g(a), (d). The court and not the jury decides the punitive damages and attorneys' fee award. CONN. GEN. STAT. § 42-110g(g). Punitive damages are warranted if there is reckless indifference to another's rights or wanton or intentional violation to another's rights. *Nautilus LLC v. Langello*, No. CV-970541607S, 1998 Conn. Super. Lexis 1801, at *8 (Conn. Super. Ct. June 25, 1998).

The general rule in Connecticut in awarding damages in fraud and deceit cases "is that the plaintiff purchaser is entitled to recover the difference in value between the property actually conveyed and the value of the property as it would have been if there had been no false representation, i.e., 'the benefit of the bargain' damages, together with any consequential damages resulting directly from the fraud." *Miller v. Appleby*, 438 A.2d 811 (Conn. 1981) (citing *Franchey v. Hannes,* 152 Conn. 372, 381, 207 A.2d 268 (1965); *Clark v. Haggard,* supra, 673; *Morrell v. Wiley,* 119 Conn. 578, 583, 178 A. 121 (1935); *Piascyk v. Malon,* 116 Conn. 418, 425, 165 A. 352 (1933); see also Dobbs, Remedies § 9.2, p. 595). However, a District Court interpreting CUTPA limited the damages to out-of-pocket expenses and not benefit-of-the bargain where the consumer could also get punitive and multiple damages. *See Bailey Employment Sys. Inc. v. Hahn*, 545 F. Supp. 62 (D. Conn. 1982), *aff'd*, 723 F.2d 895 (2d Cir. 1983).

## C.   Statute Of Limitations

The statute of limitations under the CUPTA is three years "after the occurrence of a violation." CONN. GEN. STAT. § 42-110g(f). In *Fichera v. Mine Hill Corp.*, 541 A.2d 472 (Conn. 1988), the court declined to apply the discovery rule to § 42-110g(f). However, the court in *Willow Springs Condo. Ass'n, Inc. v. Seventh BRT Dev. Corp.*, 717 A.2d 77 (Conn. 1998), found that independent acts taking place within the three year period that have been undertaken

3

for the purpose of concealing actionable conduct occurring prior to the three year period are independently actionable as a continuing wrong. *Id.* at 101. To be "independent," the acts must be separate, for "an arguably fraudulent or deceptive act that is itself claimed to be a CUTPA violation that occurred more than three years before the filing of the action cannot, by itself, toll the statute of limitations." *Id.*

**D.      Notice Requirements**

Upon bringing an action pursuant to CUPTA, plaintiff shall mail a copy of the complaint to the Attorney General and the Commissioner of Consumer Protection.  CONN. GEN. STAT. § 42-110g(c).

## II.     NEW JERSEY

**A.     Relevant Prohibitions**

The New Jersey Consumer Fraud Act ("NJCFA") declares:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate . . . whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice. . . .

N.J. Stat. § 56:8-2.   "Merchandise" includes any objects, goods and commodities offered, directly or indirectly, to the public for sale.   N.J. Stat. § 56:8-1(c).   "Person" includes a corporation.   N.J. Stat. § 56:8-1(d).   "Sale" includes "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute."   N.J. Stat. § 56:8-1(e).   "Advertisement" means "the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan." N.J. Stat. § 56:8-1(a).

"[T]he requirement that knowledge and intent be shown is limited to the concealment, suppression or omission of any material fact" prong of the statute. *Fenwick v. Kay Am. Jeep, Inc.*, 371 A.2d 13, 16 (N.J. 1977).  It is not necessary to show that any person was in fact misled or deceived; all that is required is that the conduct has the capacity to mislead. *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994).

"Unconscionable" implies a "lack of 'good faith, honesty in fact and observance of fair dealing.'" *Id.* (quoting *Kugler v. Romain*, 279 A.2d 640 (N.J. 1971)).

5

The New Jersey Standard Civil Jury Instructions, § 4.43 Model Charge under Consumer Fraud Act, defines many of the words under § 56:8-2:

1.      An "affirmative act" is something done voluntarily by a person.  It includes not merely physical acts, but also any steps taken voluntarily by a person to advance a plan or design, or to accomplish a purpose.

2.      An "unconscionable commercial practice" is an activity in the public marketplace which is basically unfair or unjust, which materially departs from standards of good faith, honesty in fact and fair dealing.  To be unconscionable, there should be factual dishonesty and a lack of fair dealing.

3.      "Deception" is conduct or an advertisement misleading to an average consumer to the extent that it is capable of, and likely to, mislead an average consumer.  It does not matter that at a later time it could have been explained to a more knowledgeable and inquisitive consumer, nor need the conduct or advertisement actually have misled the Plaintiffs. The fact that the Defendant may have acted in good faith is unimportant.  It is the capacity to mislead that is important.

4.      "Fraud" is a perversion of the truth, a misstatement or a falsehood communicated to another person creating the possibility that that other person will be cheated.

5.      "False pretense" is an untruth knowingly expressed by a wrongdoer.

6.      "False promise" is an untrue commitment or pledge (which is communicated to another person) to create the possibility that that other person will be misled.

7.      A "misrepresentation" is an untrue statement which is made about a fact which is important or significant to the sale or advertisement, and is communicated to another person to create the possibility that other person will be misled.  A "misrepresentation" is a statement made to deceive or mislead.

8.      The term "person" includes a corporation.

9.      The term "sale" includes transfer of ownership; rental; distribution; offer to sell, rent, or distribute; and attempt to sell, rent or distribute, either directly or indirectly.

10.     An "advertisement" is a notice designed to attract public attention.  Modes of communication include the attempt, directly or indirectly, by publication, dissemination, solicitation, indorsement, circulation or in any way to induce any person to enter or not enter into an obligation, acquire any title or interest in any merchandise, increase the consumption of any merchandise or make any loan.

11.     The term "merchandise" includes any objects, wares, goods, commodities, services or anything offered directly or indirectly to the public for sale.

12.    An "omission" is the act of neglecting to perform what the law requires.  Liability must be imposed for such inaction, depending upon the existence of a duty to act under the circumstances.

13.    A person acts "knowingly" if he/she is aware that his/her conduct is of a nature that it is practically certain that his/her conduct will cause a particular result.  He/She acts with knowledge, consciously, intelligently, willfully or intentionally.

14.    To "conceal" is to hide, secrete or withhold something from the knowledge of others or to hide from observation, cover or keep from sight or prevent discovery of.  A "concealment" is a withholding of something which one is bound or has a duty to reveal so that the one entitled to be informed will remain in ignorance.

15.    To "suppress" is to put a stop to a thing actually existing, to prohibit or put down, or to prevent, subdue, or end by force. "Suppression" is the conscious effort to control or conceal unacceptable impulses, thought, feelings or acts.

16.    "Intent" is a design, resolve, or determination with which a person acts. It refers only to the state of mind existing when an act is done or omitted.

**B.    Causation/Damages**

Any person who suffers "ascertainable loss of moneys" as a result of a prohibited act is entitled to recover treble damages, attorney's fees, and costs of the suit. N.J. STAT. § 56:8-19; see *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 442 (N.J. 2004); *Cox*, 647 A.2d at 464. "The purpose of those remedies is not only to make whole the victim's loss, but also to punish the wrongdoer and to deter others from engaging in similar fraudulent practices." *Furst v. Einstein Moomjy, Inc.*, 860 A.2d at 442.

New Jersey courts apply the benefit of the bargain standard to measure damages in a NJCFA action. *See Furst, Inc.*, 860 A.2d at 442 ("In keeping with the Legislature's remedial objectives, we conclude that a consumer who suffers an ascertainable loss is entitled to the benefit of the bargain--in this case, the replacement value of the carpet--trebled under the Act.").

## C.     Statute Of Limitations

The statute of limitations is six years "after the cause of any such action shall have accrued." N.J. STAT. § 2A:14-1; *Mirra v. Holland Am. Line*, 751 A.2d 138, 139-40 (N.J. Super. Ct. App. Div. 2000).  The discovery rule applies:  the cause of action accrues when the plaintiff discovers or through the exercise of reasonable diligence should have discovered the injury. *Sangemino v. Money Mailer*, No. 96-3845 (AMW), 1997 U.S. Dist. LEXIS 11647, at *10 (D.N.J. July 25, 1997) (quoting *Lopez v. Swyer*, 300 A.2d 563 (N.J. 1973)).

## D.     Notice Requirements

No notice to defendant is required prior to bringing a claim under the statute, but notice of the claim should be filed with the New Jersey Attorney General within ten days of filing an action. N.J. STAT. § 56:8-20.

## III.   NEW YORK

### A.   Relevant Prohibitions

New York prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ." N.Y. GEN. BUS. LAW § 349(a). A plaintiff must prove three elements: (1) that the challenged act or practice was "consumer-oriented;" (2) that the act or practice was misleading in a material way; and (3) that the plaintiff suffered injury as a result of the deceptive act or practice. *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611 (N.Y. 2000).

Starting with the first element, it is not necessary to establish repeated acts. All that is needed is that the acts or practices at issue have "a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). Merely private disputes will not suffice. *Id.*

Turning to the second element, the deceptive act or practice may be a representation or an omission. *Stutman*, 731 N.E.2d at 611. Either way, it is evaluated according to an objective standard: the complained-of act or practice must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers'*, 647 N.E.2d at 744. The plaintiff need not establish defendant's intent to defraud or mislead; nor is justifiable reliance by plaintiff required. *Id.* This objective test complements the definition of unfair and deceptive acts or practices applied by the Federal Trade Commission under 15 U.S.C. § 45, upon which the New York statute is modeled. *Id.*

### B.   Causation/Damages

A person injured by reason of a violation of § 349(a) may recover the greater of actual damages or $50. N.Y. GEN. BUS. LAW § 349(h). If the court finds that the defendant willfully or knowingly violated § 349(a), the court, in its discretion, may increase the award "not to exceed three times the actual damages up to one thousand dollars." *Id.* In order to recover, the plaintiff

must have suffered injury "as a result of the deceptive act." *Stutman*, 731 N.E.2d at 611.   A plaintiff must prove "actual" injury to recover under the statute, though not necessarily pecuniary harm. *Id.* at 612.  Proving reliance is not necessary. *Id.* at 612-13 (explaining that a deception causing loss is not equivalent to reliance, that is, a showing that plaintiffs otherwise would not have entered the transaction).

In New York, the "true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong" or what is known as the 'out-of-pocket' rule." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E. 2d 1370, 1373 (N.Y. 1996) (citing *Reno v. Bull*, 226 N.Y. 546, 553, 124 N.E. 144; *Hanlon v MacFadden Publ.*, 302 N.Y. 502, 99 N.E.2d 546 (1951)).

[1]  Under this rule:

> the loss is computed by ascertaining the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain" (*Sager v Friedman*, 270 N.Y. 472, 481, 1 N.E.2d 971).   Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained (*see, Cayuga Harvester v Allis-Chalmers Corp.*, 95 A.D.2d 5, 465 N.Y.S.2d 606).  Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud (*Foster v Di Paolo*, 236 N.Y. 132, 140 N.E. 220; *AFA Protective Sys. v American Tel. & Tel. Co.*, 57 N.Y.2d 912, 456 N.Y.S.2d 757, 442 N.E.2d 1268).

*Id.*

C.      **Statute Of Limitations**

The statute of limitations is three years.  N.Y. C.P.L.R. § 214(2); *Wender v. Gilberg Agency*, 276 A.D.2d 311, 312 (N.Y. 2000).  The discovery rule does not apply. *Id.*  But New York recognizes the doctrine of equitable tolling, which is applicable if the plaintiff can show that the defendant has wrongfully deceived or misled him or her in order to conceal the existence

---

[1] A standard for calculating damages under § 349(a) is not enumerated in the statute or related case law.

of his or her claim.  *Kotlyarsky v. N.Y. Post*, 195 Misc. 2d 150, 757 N.Y.S.2d 703, 707-08 (N.Y. Misc. 2003) (citations omitted).

**D.      Notice Requirements**

No notice is required prior to bringing a claim under the statute.

## IV.   PENNSYLVANIA

**A.   Relevant Prohibitions**

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") declares unlawful any unfair acts or practices in the conduct of any trade or commerce as specially defined by the act.   73 PENN. STAT. § 201-3.   "Trade" and "Commerce" mean "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth." 73 PENN. STAT. § 201-2(3).

For relevant purposes, "unfair or deceptive acts or practices" means the following:

> (v) Representing that goods or services have . . . characteristics . . . that they do not have . . . ;

> (vii) Representing that goods or services are of a particular standard . . . if they are of another;

> (ix) Advertising goods or services with intent not to sell them as advertised;

> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 PENN. STAT. § 201-2(4).

In cases involving false advertising or misrepresentation, plaintiff must demonstrate that he or she relied on the challenged practice to their detriment.   *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001).   Neither the statute nor case law has established any scienter requirement.

In cases under the "catch-all" provision of § 201-2(3)(xxi), the plaintiff must prove all of the elements of common law fraud, which are:   (1) misrepresentation of material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party

defrauded upon the misrepresentation; and (5) damage as a proximate result. *Colaizzi v. Beck*, 895 A.2d 36, 40 (Pa. Super. Ct. 2006). "A misrepresentation is material if it is of such character that if it had not been misrepresented, the transaction would not have been consummated." *Id.* at 39-40.

**B.      Causation/Damages**

A person purchasing goods primarily for personal, family or household purposes and who suffers any ascertainable loss of money as a result of the challenged practice may recover the greater of actual damages or $100.  73 PENN. STAT. § 201-9.2(a).   The court may, in its discretion, increase the award up to three times the actual damages sustained, but not less than $100. *Id.*

Punitive damages may be awarded if the defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. *Jahanshahi v. Centura Dev. Co., Inc.*, 816 A.2d 1179, 1188 (Pa. Super. 2003).

Pennsylvania adopts the benefit of the bargain standard.  *See Solarchick v. Metro. Life Ins. Co.*, 430 F. Supp. 2d 511, 515 (D. Pa. 2006) ("Certainly, both *Agliori* and *Lesoon* make it clear that a UTPCPL plaintiff is not limited to out-of-pocket losses.").[2]

**C.      Statute Of Limitations**

The statute of limitations is six years.  42 PENN. STAT. § 5527(b); *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646 n.9 (Pa. Super. Ct. 1999).  The discovery rule applies. *Lesoon v. Met. Life Ins. Co.*, 898 A.2d 620, 627 (Pa. Super. Ct. 2006) (citation omitted).

**D.      Notice Requirements**

No notice is required prior to filing a claim under the Law.

---

[2] A standard for calculating damages under § 201-9.2 is not enumerated in the statute or related case law.

## V.    VERMONT

### A.    Relevant Prohibitions

The Vermont Consumer Fraud Act ("VCFA") prohibits "unfair or deceptive acts or practices in commerce . . . ." VT. STAT. ANN. tit. 9, § 2453(a).  The VACFA does not define "unfair" or "deceptive," but courts are to be guided by the construction of similar terms found in 15 U.S.C. § 45. VT. STAT. ANN. tit. 9, § 2453(b).

A practice is unfair if it (1) offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common-aw, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. *Vermont Mobile Home Owners' Ass'n, Inc. v. LaPierre*, 94 F. Supp. 2d 519, 522 (D. Vt. 2000) (citing *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)).

"Deceptive" means the capacity or tendency to deceive. *Poulin v. Ford Motor Co.*, 513 A.2d 1168, 1171 (Vt. 1986).   There are ordinarily three elements to deception when a misrepresentation is involved:  (1) a representation, practice, or omission likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading effects must be "material," that is, likely to affect consumers' conduct or decision with regard to a product. *Id.* at 1171-72.

The burden of proof under the VCFA is a preponderance of the evidence. *Id.* at 1172.

### B.    Causation/Damages

Any consumer who sustains damages as a result of any violation of the VCFA may sue to recover damages. VT. STAT. ANN. tit. 9, § 2461(b).  "Consumer" includes any person who

14

purchases goods for his or her use or benefit or the use or benefit of a member of this or her household. VT. STAT. ANN. tit. 9, § 2451a(a).

"[E]xemplary damages not exceeding three times the value of the consideration given by the consumer" may be recovered. VT. STAT. ANN. tit. 9, § 2461(b). Exemplary damages can be awarded only where malice, ill will, or wanton conduct is demonstrated. *Bruntaeger v. Zeller*, 515 A.2d 123, 127 (Vt. 1986).

Vermont uses the benefit of the bargain standard.[3] Vermont courts, however, "while using the phrase 'benefit of the bargain,' has similarly adopted a flexible, rather than a dogmatic, approach to calculating damages in fraud cases." *Kramer v. Chabot*, 564 A.2d 292, 294-95 (Vt. 1989) ("On remand, the trial court must determine what it will take to give plaintiff the benefit of her bargain, considering all of the surrounding facts and circumstances.") (citing *Cushman*, 148 Vt. at 578, 536 A.2d at 554; see also *Munjal v. Baird & Warner, Inc.,* 138 Ill. App. 3d at 186-87, 485 N.E.2d at 867 ("benefit-of-the-bargain damages may be either the cost of repair to make property conform to the condition as represented, or difference between the value of property at time of sale with defects and the value it would have had if defects did not exist"f).

## C.     Statute Of Limitations

The statute of limitations is six years "after the cause of action accrues and not thereafter." VT. STAT. ANN. tit. 12, § 511. However, the discovery rule applies and time begins to run from the date of discovery of the injury. *Univ. of Vermont v. W.R. Grace & Co.*, 565 A.2d 1354, 1357 (Vt. 1989).

## D.     Notice Requirements

No notice is required prior to bringing a claim under the statute.

---

[3] A standard for calculating damages under VCFA is not enumerated in the statute or related case law.

# EXHIBIT E

PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

BREACH OF CONTRACT AND
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

BANK DEBIT MDL 2036

*Set forth below are suggested interrogatories to be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive.  Plaintiff[s] may suggest changes to the special interrogatories herein.  Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

# I. BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

### GOOD FAITH AND FAIR DEALING SUBCLASS # 1
### IMPLIED COVENANT AS A SEPARATE CAUSE OF ACTION

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however the implied promise of good faith and fair dealing cannot create obligations inconsistent with the contract.[1]

In Connecticut, Delaware, New Hampshire, New Jersey, North Carolina, and Vermont, a party can breach the implied covenant of good faith and fair dealing without breaching an express provision of the parties' underlying contract.

## A. LIABILITY

The plaintiffs, Ian McNulty (Connecticut), Gregory Carcaci (New Jersey), Paige Schwartzman (New Jersey), Lucy Nico (New Jersey) and Suzanne Hubbard (Vermont), claim that the defendant, TD Bank, violated the duty to act fairly and in good faith.

Do you find by a preponderance of the evidence the following:[2]

(i) **Did the plaintiff[s] and the subclass enter into a contract with the defendant?**

Yes ☐                    No ☐

(ii) **Did the defendant act in bad faith or engage in unreasonable conduct that had the effect of preventing plaintiff[s] and the subclass from receiving the benefits of the parties' contract?**

Yes ☐                    No ☐

(iii) **As a result, were the plaintiff[s] and the subclass harmed?**

Yes ☐                    No ☐

---

[1]    *See Restatement (Second) of Contracts* §205 (1981).

[2]    7A Am. Jur. *Contracts* § 118.1 (As the practice notes instruct, counsel should delete elements that are not contested.  We deleted the elements that required plaintiff's performance and defendant's performance under the contract because those elements are not relevant to this subclass.)

1

If you selected "yes" for all of the elements listed above, please answer the question in part B. If you selected "no," for any of the elements listed above, please skip to ["Subclass #2."]

### B. DAMAGES

**Have the plaintiff[s] proved by a preponderance of the evidence the amount of damages suffered by plaintiff[s] and the subclass?**

Yes ☐          No ☐

If yes, complete the following blank: The [Court/Jury] finds actual damages for Plaintiff[s] and the Good Faith and Fair Dealing Subclass 1 in the amount of $_____. (If you answered "no," do not complete the blank.)

## GOOD FAITH AND FAIR DEALING SUBCLASS #2
### IMPLIED COVENANT IS NOT A SEPARATE CAUSE OF ACTION AND BREACH OF CONTRACT HAS THREE ELEMENTS

In every contract, there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

In many states, a party cannot breach the implied covenant of good faith and fair dealing without breaching an express provision of the parties' underlying contract. In the District of Columbia, Maryland, New York, Rhode Island, South Carolina, and Virginia, a party bringing a breach of contract claim must satisfy a three-part test.

### A. LIABILITY

The plaintiffs, James Daniels (New York) and Kelli Herd (New York), claim that the defendant, TD Bank, breached its contract and duty of good faith and fair dealing with the plaintiffs and the Class.

Do you find by preponderance of the evidence the following:

(i)      **Did the plaintiffs and the subclass enter into a contract with the defendant?**

Yes ☐        No ☐

(ii)    (a)      **Did the defendant breach the contract by unfairly interfering with the plaintiffs' and the subclass's rights to receive the benefits of the contract?**

Yes ☐        No ☐

      (b)      **Did the plaintiffs show either performance or excuse from performance?**

Yes ☐        No ☐

(iii)      **As a result, were the plaintiffs and the subclass harmed?**

Yes ☐        No ☐

If you selected "yes," for all of the elements listed above, please answer the question in part B. If you selected "no" for any of the elements listed above, please skip to "Subclass #3."

## B. Damages

**Have plaintiff[s] proved by a preponderance of the evidence the amount of damages suffered by plaintiff[s] and the subclass?**

Yes ☐          No ☐

If yes, complete the following blank: The [Court/Jury] finds actual damages for Plaintiff[s] and the Breach of Contract and Good Faith and Fair Dealing Subclass 3 in the amount of $_____. (If you answered "no," do not complete the blank.)

### GOOD FAITH AND FAIR DEALING SUBCLASS #3
### IMPLIED COVENANT IS NOT A SEPARATE CAUSE OF ACTION AND
### BREACH OF CONTRACT REQUIRES A MATERIAL BREACH

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

In many states, a party cannot breach the implied covenant of good faith and fair dealing without breaching an express provision of the parties' underlying contract. In Florida, Maine, and Pennsylvania, a party bringing a breach of contract claim must show there is a material breach of contract.

### A. LIABILITY

(1)    The plaintiff, Todd Mosser (Pennsylvania), claims that the defendant, TD Bank, breached its contract and duty of good faith and fair dealing with the plaintiffs and the Class.

Do you find by preponderance of the evidence the following:

(i)    **Did the plaintiffs and the subclass enter into a contract with the defendant?**

Yes ☐            No ☐

(ii)    (a)    **Did the defendant breach the contract by unfairly interfering with the plaintiffs' and the subclass's rights to receive the benefits of the contract?**

Yes ☐            No ☐

(b)    **Did the plaintiffs show either performance or excuse from performance?**

Yes ☐            No ☐

(iii)    **Did the defendant's conduct affect a fundamental purpose or essence of the contract?**

Yes ☐            No ☐

(iv)    **As a result, were the plaintiff and the subclass harmed?**

Yes ☐            No ☐

If you selected "yes," for all of the elements listed above, please answer the question in part B. If you selected "no," for any of the elements listed above please skip to the end of the form.

5

## PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

### UNJUST ENRICHMENT

### BANK DEBIT MDL 2036

*Set forth below are suggested interrogatories that would be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

## II. UNJUST ENRICHMENT

### SUBCLASS # 1

### THE RESTATEMENT'S BASIC TEST

A party is enriched if she receives a benefit. A party is unjustly enriched if the retention of the benefit would be unfair. A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received by the defendant. If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.[1]

Connecticut, District of Colombia, New Hampshire, and Vermont use the *Restatement's* definition of unjust enrichment to determine liability.

### A. LIABILITY

The plaintiffs, Ian McNulty (Connecticut), Suzanne Hubbard (Vermont), Todd Mosser (Pennsylvania), Gregory Caraci (New Jersey), Lucy Nico (New Jersey), Paige Schwartzman (New Jersey), James Daniels (New York) and Kelli Herd (New York),[2] claim that the defendant, TD Bank, was unjustly enriched.

Do you find by a preponderance of the evidence the following:[3]

**(i)     Did the plaintiff[s] and the subclass confer a benefit on the defendant?**

Yes ☐          No ☐

**(ii)    Did the defendant accept a benefit from the plaintiff[s] and the subclass?**

---

[1]     *Restatement (First) of Restitution* §1 (1937) ("*Restatement*").

[2]     Plaintiffs who do not reside in states grouped into this subclass may nonetheless serve as representatives of Unjust Enrichment Subclass No. 1 because they reside in states that require these same elements of unjust enrichment to be proven, in addition to other elements.

[3]     *See,* 21B Am. Jur. *Pleading & Practice Forms: Restitution & Implied Contracts* §12.1.

Yes ☐                     No ☐

(iii)    **Under the circumstances, would it be unfair for the defendant to retain the benefit?**

Yes ☐                     No ☐

B. RESTITUTION

(i)    **Have plaintiff[s] proved by a preponderance of the evidence the amount that should be restituted to plaintiff[s] and the subclass?**

Yes ☐                     No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiff[s] and the Unjust Enrichment Subclass 1 is $_____.  (If you answered "no," do not complete the blank.)

SUBCLASS # 2

### THE RESTATEMENT'S TEST AND APPRECIATION OF THE BENEFIT

A party is enriched if she receives a benefit. A party is unjustly enriched if the retention of the benefit would be unfair. A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received by the defendant. If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.

Florida, Maine, Maryland, Pennsylvania, Rhode Island, South Carolina, and Virginia use the *Restatement's* definition of unjust enrichment and require that the defendant appreciate the benefit to determine liability.

### A. LIABILITY QUESTIONS

The plaintiff, Todd Mosser (Pennsylvania), claims that the defendant, TD Bank, was unjustly enriched.

Do you find by a preponderance of the evidence the following:

(i)　　Did the plaintiff[s] and the subclass confer a benefit on the defendant?

Yes ☐　　　　No ☐

(ii)　　Did the defendant accept money from the plaintiff[s] and the subclass?

Yes ☐　　　　No ☐

(iii)　　Did the defendant appreciate the benefit it was receiving from the plaintiff[s] and the subclass?

Yes ☐　　　　No ☐

(iv)　　Under the circumstances, would it be unfair for the defendant to retain the benefit?

Yes ☐　　　　No ☐

## B. RESTITUTION

(i)     Have plaintiff[s] proved by a preponderance of the evidence the amount that should be restituted to plaintiff[s] and the subclass?

Yes ☐          No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiff[s] and Unjust Enrichment Subclass 2 is $_____. (If you answered "no," do not complete the blank.)

SUBCLASS # 3

THE RESTATEMENT'S TEST AND REQUIRES AN INADEQUATE REMEDY AT LAW

A party is enriched if she receives a benefit.  A party is unjustly enriched if the retention of the benefit would be unfair.  A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money.  Ordinarily, the measure of restitution is the amount of enrichment received by the defendant.  If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.

Delaware, New Jersey, New York, and North Carolina require that there be an inadequate remedy at law before bringing an unjust enrichment claim.

A.  LIABILITY QUESTIONS

The plaintiffs, Gregory Caraci (New Jersey), Lucy Nico (New Jersey), Paige Schwartzman (New Jersey), James Daniels (New York) and Kelli Herd (New York), claim that the defendant, TD Bank, was unjustly enriched.

**(1)**   Do you find by a preponderance of the evidence the following:

    **(i)**   **Do the plaintiff[s] and the subclass have an adequate remedy at law?**

        Yes ☐          No ☐

    If you selected "yes," please skip to "Subclass #4."  If you selected "no," please answer question 2.

**(2)**   Do you find by a preponderance of the evidence the following:

    **(i)**   **Did the plaintiff[s] and the subclass confer a benefit on the defendant?**

        Yes ☐          No ☐

    **(ii)**   **Did the defendant accept the benefit from the plaintiff[s] and the subclass?**

        Yes ☐          No ☐

    **(iii)**   **Under the circumstances, would it be unfair for the defendant to retain the benefit?**

        Yes ☐          No ☐

5

## B. Restitution

(i)  Have plaintiff[s] proved by a preponderance of the evidence the amount that should be restituted to plaintiff[s] and the subclass?

Yes ☐            No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiff[s] and Unjust Enrichment Subclass 3 is $_____. (If you answered "no," do not complete the blank.)

PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

UNCONSCIONABILITY

BANK DEBIT MDL 2036

*Set forth below are suggested interrogatories to be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

## III. UNCONSCIONABILITY

All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.[1]

In many states (Connecticut, Delaware, District of Columbia, Florida, Maine, Maryland, New Hampshire, New Jersey, North Carolina, Pennsylvania, Rhode Island and South Carolina), plaintiff must show both substantive and procedural unconscionability to prevail.

### A. LIABILITY

Plaintiffs Todd Mosser (Pennsylvania) and Ian McNulty (Connecticut) claim that TD Bank's overdraft provisions and practices are unconscionable.

Do you find by a preponderance of the evidence the following:

(i)     **Were defendant's overdraft provisions procedurally unconscionable due to the parties' unequal bargaining position and the adhesionary nature of the contract?**

Yes ☐          No ☐

(ii)    **Were defendant's overdraft provisions substantively unconscionable because the contractual terms were so one-sided as to be unreasonable and unfair?**

Yes ☐          No ☐

### B. EQUITABLE RELIEF

---

[1]     U.C.C. §2-302 (2011).

1

(i)   **Should the defendant's overdraft provisions be stricken from the account agreement as unconscionable?**

Yes ☐          No ☐

If yes, the Court may declare defendants' contractual provisions to be unconscionable.

(ii)   **Were defendant's overdraft practices unconscionable?**

Yes ☐          No ☐

If yes, the Court may declare defendants' overdraft fee practices to be unconscionable.

(iii)   **Have plaintiffs proved by a preponderance of the evidence the harm suffered by plaintiffs and the subclass as a result of defendant's past practices?**

Yes ☐          No ☐

If yes to A(i) and (ii), complete the following blank: The [Court/Jury] awards monetary relief for Plaintiffs and the Unconscionability Class Members in Connecticut, Delaware, District of Columbia, Florida, Maine, Maryland, New Hampshire, New Jersey, North Carolina, Pennsylvania, Rhode Island and South Carolina in the amount of $_____. (If you answered "no," do not complete the blank.)

SUBCLASS # 2

SUBSTANTIVE UNCONSCIONABILITY ALONE IS SUFFICIENT

All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.[2]

In some states (New York, Vermont and Virginia), plaintiffs may show only substantive unconscionability to prevail.

A. LIABILITY

Plaintiffs Suzanne Hubbard (Vermont), James Daniels (New York), Kelli Herd (New York), Todd Mosser (Pennsylvania) and Ian McNulty (Connecticut)[3] claims that TD Bank overdraft provisions and practices are unconscionable.

Do you find by a preponderance of the evidence the following:

**Were defendant's overdraft provisions substantively unconscionable because the contractual terms were unreasonably and unfairly one-sided in favor of defendant?**

Yes ☐        No ☐

B. EQUITABLE RELIEF

(i)    **Should the defendant's overdraft provisions be stricken from the account agreement as unconscionable?**

Yes ☐        No ☐

If yes, the Court may declare defendants' contractual provisions to be unconscionable.

---

[2]    U.C.C. §2-302 (2011).

[3] Plaintiffs who do not reside in states grouped into this subclass may nonetheless serve as representatives of Unjust Enrichment Subclass No. 1 because they reside in states that require these same elements of unjust enrichment to be proven, in addition to other elements.

3

(ii)     **Were defendant's overdraft practices unconscionable?**

Yes ☐          No ☐

If yes, the Court may declare defendants' overdraft fee practices to be unconscionable.

(iii)    **Have plaintiffs proved by a preponderance of the evidence the harm suffered by plaintiffs and the subclass as a result of defendant's past practices?**

Yes ☐          No ☐

If yes, complete the following blank: The [Court/Jury] awards monetary relief for Plaintiffs and the Unconscionability Subclass 2 in the amount of $_____.  (If you answered "no," do not complete the blank.)

The [Court/Jury] declares that the contractual provisions and overdraft practice are substantively unconscionable and awards additional monetary relief for class members in New York, Vermont and Virginia in the amount of $_____.  (If you answered "no," do not complete the blank.)

4

PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

STATE UNFAIR AND DECEPTIVE TRADE PRACTICE ACTS

BANK DEBIT MDL 2036

*Set forth below are suggested interrogatories that would be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

## IV. STATE UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS

### CONNECTICUT

#### A. LIABILITY

Plaintiff Ian McNulty claims that TD Bank violated Connecticut Unfair Trade Practices Act ("CUTPA"), CONN. GEN. STAT. § 42-110b(a).

Do you find by a preponderance of the evidence the following:

**(i)      Did the defendant engage in a business act or practice that offends public policy as it has been established by statutes, the common law or other established concept of unfairness?**

Yes ☐                    No ☐

If yes, skip to "v." If no, go to "ii."

**(ii)     Did the defendant engage in an immoral, unethical, oppressive or unscrupulous business act or practice?**

Yes ☐                    No ☐

If yes, skip to "v." If no, go to "iii."

**(iii)    Did the defendant engage in a business act or practice that causes substantial injury to consumers, competitors or other business persons?**

Yes ☐                    No ☐

If yes, skip to "v." If no, go to "iv."

**(iv)     Did the defendant engage in a material untrue or misleading representation, omission, or practice?**

Yes ☐                    No ☐

**(v)      As a result of the defendant's conduct, did the plaintiff suffer an ascertainable loss?**

Yes ☐                    No ☐

## B. DAMAGES

**Have plaintiff proved by a preponderance of the evidence the amount of damages necessary to restore plaintiff's and the Connecticut Class' ascertainable loss?**

Yes ☐          No ☐

If "yes," complete the following blank: The Court awards damages to Plaintiff and the TD Bank Connecticut Class in the amount of $_____. (If you answered "no," do not complete the blank.).

## NEW JERSEY

### A. LIABILITY

Plaintiffs Gregory Carcaci, Lucy Nico and Paige Schwartzman claim that TD Bank violated New Jersey's Consumer Fraud Act ("NJCFA"), N.J. STAT. §56:8-2.

Do you find by a preponderance of the evidence the following:

(i)  **Did the defendant engage in an unconscionable business practice?**

Yes ☐                No ☐

If yes, skip to "iv." If no, go to "ii."

(ii)  **Did the defendant engage in a deceptive or fraudulent business practice?**

Yes ☐                No ☐

If yes, skip to "iv." If no, go to "iii."

(iii)  **Did the defendant make a misrepresentation or omission of a material fact with intent that others rely thereon?**

Yes ☐                No ☐

(iv)  **Did the plaintiffs suffer an ascertainable loss of moneys?**

Yes ☐                No ☐

(v)  **Is there a causal relationship between plaintiffs' ascertainable loss of moneys and defendant's misconduct?**

Yes ☐                No ☐

### B. DAMAGES

**Have plaintiffs proved by a preponderance of the evidence the amount of damages suffered by plaintiffs and the New Jersey class?**

Yes ☐                No ☐

If "yes," complete the following blank: The [Court/Jury] finds actual damages for Plaintiffs and the TD Bank New Jersey Class in the amount of $_____. (If you answered "no," do not complete the blank.). The Court will award treble damages to Plaintiffs and the TD Bank New Jersey Class in the amount of $_____. (If you answered "no," do not complete the blank.).

3

## NEW YORK

### A. LIABILITY

The plaintiffs, James Daniels and Kelli Herd, claim that the defendant, TD Bank, violated New York's deceptive practices statute, N.Y. GEN. BUS. LAW § 349(a).

Do you find by a preponderance of the evidence the following:

(i)     **Did the defendant engage in an act or practice that was consumer-oriented??**

Yes ☐          No ☐

(ii)    **Was the act or practice was misleading in a material way?**

Yes ☐          No ☐

(iii)   **Did the plaintiffs suffer injury as a result of the deceptive act or practice?**

Yes ☐          No ☐

### B. DAMAGES

**Have plaintiffs proved by a preponderance of the evidence the actual injury suffered by plaintiffs?**

Yes ☐          No ☐

If "yes," Plaintiffs are entitled to the greater of their actual damages or $50. Complete the following blank: The [Court/Jury] awards damages for Plaintiffs in the amount of $_____. (If you answered "no," do not complete the blank.).

(ii)    **Were defendant's violations done willfully or knowingly?**

Yes ☐          No ☐

If "yes," the Jury may treble the actual damages. The Jury hereby trebles the damages to Plaintiffs and the TD Bank New York Class in the amount of $_____. (If you answered "no," do not complete the blank.).

## PENNSYLVANIA

### A. LIABILITY

4

Plaintiff Todd Mosser claims that TD Bank violated Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Penn. Stat. § 201-2(3).

Do you find by a preponderance of the evidence the following:

**(i)     Did the defendant represent that goods or services have . . . characteristics . . . that they do not have . . . ?**

Yes ☐              No ☐

If yes, skip to "iv." If no, go to "ii."

**(ii)     Did the defendant represent that goods or services are of a particular standard . . . if they are of another?**

Yes ☐              No ☐

If yes, skip to "iv." If no, go to "iii."

**(iii)     Did the defendant advertise goods or services with intent not to sell them as advertised?**

Yes ☐              No ☐

If yes, go to "iv." If no, skip to "v."

**(iv)     Has the plaintiff demonstrated reliance on the representation or advertising by the defendant?**

Yes ☐              No ☐

If yes, skip to "B" If no, go to "v."

**(v)     Did the defendant engage in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding?**

Yes ☐              No ☐

**(v)     Was the fraudulent or deceptive conduct a misrepresentation of a material fact?**

Yes ☐              No ☐

**(vi)     Did the defendant knowingly engage in the fraudulent or deceptive conduct?**

Yes ☐              No ☐

**(vi)     Did the defendant intend to induce reliance by the plaintiff?**

Yes ☐              No ☐

(vii)   **Did the plaintiff justifiably rely on the misrepresentation by the defendant?**

Yes ☐                           No ☐

(viii)   **Did the plaintiff suffer damages as a proximate result of his reliance on the defendant's misrepresentation?**

Yes ☐                           No ☐

If "yes," then go to "B"

## B. DAMAGES

(i)   **Have plaintiff[s] proved by a preponderance of the evidence the amount of damages suffered by plaintiff[s] and the Pennsylvania Class?**

Yes ☐                           No ☐

If "yes," Plaintiff is entitled to the greater of their actual damages or $100. Complete the following blank: The [Court/Jury] awards damages for Plaintiff[s] in the amount of $_____. (If you answered "no," do not complete the blank.).

The [Court/Jury] may treble the actual damages for the named Plaintiff. The [Court/Jury] hereby awards treble damages for Plaintiff in the amount of $_____. (If you answered "no," do not complete the blank.).

(ii)   **Was the defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others?**

Yes ☐                           No ☐

If "yes," the [Court/Jury] may award punitive damages for Plaintiff and the TD Bank Pennsylvania Class in the amount of $_____. (If you answered "no," do not complete the blank.).

# VERMONT

## A. LIABILITY

The plaintiff, Suzanne Hubbard claims that the defendant, TD Bank, violated Vermont Consumer Fraud Act ("VCFA"), VT. STAT. ANN. tit. 9, § 2453(a).

Do you find by a preponderance of the evidence the following:

**(i)     Did the defendant engage in a business act or practice that offends public policy as it has been established by statutes, the common law or other established concept of unfairness?**

Yes ☐          No ☐

If yes, skip to "B."  If no, go to "ii."

**(ii)    Did the defendant engage in an immoral, unethical, oppressive or unscrupulous business act or practice?**

Yes ☐          No ☐

If yes, skip to "B."  If no, go to "iii."

**(iii)   Did the defendant engage in a business act or practice that causes substantial injury to consumers, competitors or other business persons?**

Yes ☐          No ☐

If yes, skip to "B."  If no, go to "iv."

**(iv)    Did the defendant engage in a representation, practice, or omission likely to mislead consumers?**

Yes ☐          No ☐

**(iv)    Did the plaintiff interpret the message reasonably under the circumstances?**

Yes ☐          No ☐

**(iv)    Were the misleading effects "material," that is, likely to affect consumers' conduct or decision with regard to a product?**

Yes ☐          No ☐

7

## B. Damages

**(i)    Has the plaintiff proved by a preponderance of the evidence the amount of actual damages suffered by plaintiff?**

Yes ☐          No ☐

If "yes," complete the following blank: The [Court/Jury] awards actual damages for Plaintiff and the TD Bank Washington Class in the amount of $_____.  (If you answered "no," do not complete the blank.).

**(ii)    Did the defendant demonstrate malice, or ill will, or wanton conduct?**

Yes ☐          No ☐

If "yes," the [Court/Jury] may treble the actual damages for the named Plaintiff.  The [Court/Jury] hereby awards treble damages for Plaintiff in the amount of $_____.  (If you answered "no," do not complete the blank.).

PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

UNCONSCIONABILITY

BANK DEBIT MDL 2036

*Set forth below are suggested interrogatories to be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

# III. UNCONSCIONABILITY

All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.[1]

In many states (Connecticut, Delaware, District of Columbia, Florida, Maine, Maryland, New Hampshire, New Jersey, North Carolina, Pennsylvania, Rhode Island and South Carolina), plaintiff must show both substantive and procedural unconscionability to prevail.

## A. LIABILITY

Plaintiffs Todd Mosser (Pennsylvania) and Ian McNulty (Connecticut) claim that TD Bank's overdraft provisions and practices are unconscionable.

Do you find by a preponderance of the evidence the following:

(i)   **Were defendant's overdraft provisions procedurally unconscionable due to the parties' unequal bargaining position and the adhesionary nature of the contract?**

Yes ☐       No ☐

(ii)  **Were defendant's overdraft provisions substantively unconscionable because the contractual terms were so one-sided as to be unreasonable and unfair?**

Yes ☐       No ☐

## B. EQUITABLE RELIEF

---

[1]   U.C.C. §2-302 (2011).

(i)     **Should the defendant's overdraft provisions be stricken from the account agreement as unconscionable?**

Yes ☐                    No ☐

If yes, the Court may declare defendants' contractual provisions to be unconscionable.

(ii)    **Were defendant's overdraft practices unconscionable?**

Yes ☐                    No ☐

If yes, the Court may declare defendants' overdraft fee practices to be unconscionable.

(iii)   **Have plaintiffs proved by a preponderance of the evidence the harm suffered by plaintiffs and the subclass as a result of defendant's past practices?**

Yes ☐                    No ☐

If yes to A(i) and (ii), complete the following blank: The [Court/Jury] awards monetary relief for Plaintiffs and the Unconscionability Class Members in Connecticut, Delaware, District of Columbia, Florida, Maine, Maryland, New Hampshire, New Jersey, North Carolina, Pennsylvania, Rhode Island and South Carolina in the amount of $_____. (If you answered "no," do not complete the blank.)

## SUBCLASS # 2

### SUBSTANTIVE UNCONSCIONABILITY ALONE IS SUFFICIENT

All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.[2]

In some states (New York, Vermont and Virginia), plaintiffs may show only substantive unconscionability to prevail.

### A. LIABILITY

Plaintiffs Suzanne Hubbard (Vermont), James Daniels (New York), Kelli Herd (New York), Todd Mosser (Pennsylvania) and Ian McNulty (Connecticut)[3] claims that TD Bank overdraft provisions and practices are unconscionable.

Do you find by a preponderance of the evidence the following:

**Were defendant's overdraft provisions substantively unconscionable because the contractual terms were unreasonably and unfairly one-sided in favor of defendant?**

Yes ☐          No ☐

### B. EQUITABLE RELIEF

(i)     **Should the defendant's overdraft provisions be stricken from the account agreement as unconscionable?**

Yes ☐          No ☐

If yes, the Court may declare defendants' contractual provisions to be unconscionable.

---

[2]     U.C.C. §2-302 (2011).

[3] Plaintiffs who do not reside in states grouped into this subclass may nonetheless serve as representatives of Unjust Enrichment Subclass No. 1 because they reside in states that require these same elements of unjust enrichment to be proven, in addition to other elements.

**(ii)** **Were defendant's overdraft practices unconscionable?**

Yes ☐          No ☐

If yes, the Court may declare defendants' overdraft fee practices to be unconscionable.

**(iii)** **Have plaintiffs proved by a preponderance of the evidence the harm suffered by plaintiffs and the subclass as a result of defendant's past practices?**

Yes ☐          No ☐

If yes, complete the following blank: The [Court/Jury] awards monetary relief for Plaintiffs and the Unconscionability Subclass 2 in the amount of $_____.  (If you answered "no," do not complete the blank.)

The [Court/Jury] declares that the contractual provisions and overdraft practice are substantively unconscionable and awards additional monetary relief for class members in New York, Vermont and Virginia in the amount of $_____.  (If you answered "no," do not complete the blank.)

4