UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Shane Swift v. BancorpSouth, Inc.,*
N.D. Fla. Case No. 1:10-cv-00090-SPM
S.D. Fla. Case No. 1:10-cv-23872-JLK

**PLAINTIFF'S OPPOSITION TO NOTICE OF SETTLEMENT AND
MOTION TO STAY AND SUSPEND SCHEDULING ORDER PERTAINING TO
FOURTH TRANCHE CASES AS TO BANCORPSOUTH, INC. AND BANCORPSOUTH
BANK, AND PLAINTIFF'S EMERGENCY MOTION TO ENJOIN
COPYCAT CASE UNDER THE ALL WRITS ACT
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs' Co-Lead Counsel, Plaintiffs' Coordinating Counsel and Plaintiffs' Executive Committee in MDL 2036 (collectively, the "PEC") file their (i) Opposition to BancorpSouth Bank's Notice of Settlement and Motion to Stay and Suspend Scheduling Order Pertaining to Fourth Tranche Cases as to Defendant BancorpSouth Bank [**DE # 2602**] ("Motion to Stay"), and (ii) Emergency Motion to Enjoin Copycat Case Under the All Writs Act.

**INTRODUCTION**

Defendant BancorpSouth and its counsel have engineered a scheme in an attempt to circumvent this Court's effective and efficient governance of the litigation which the Judicial Panel on Multidistrict Litigation ("JPML") entrusted to it. Long after the case against BancorpSouth was transferred to this Court by the JPML, and after a considerable amount of

litigation over an 18-month period, including several instances of BancorpSouth seeking rulings consuming time and resources of this Court – and on the eve of a ruling on Plaintiff's fully briefed Motion for Class Certification [**DE # 2271**] – BancorpSouth entered into a collusive class action settlement in another case encompassing the claims at issue here.

To orchestrate this "reverse auction" settlement, where the defendant runs to the lowest bidder to secure friendly settlement terms, BancorpSouth cooperated in the re-filing of another case against it one month ago in the Western District of Arkansas, only to announce a class action settlement in that case two days ago. Notwithstanding the extensive overlap between that case and the *Swift* case pending before this Court, BancorpSouth's counsel failed to notify this Court or the PEC of the pendency of the copycat Arkansas action, nor of the proposed settlement, until *after* they appeared before the other court to secure preliminary approval of their collusive settlement. Even worse, over the past weeks, BancorpSouth's counsel affirmatively misled Plaintiff's counsel in delaying pending discovery matters in this case under the guise of scheduling conflicts, all the while secretly negotiating to settle the other case and thereby scuttle *Swift* before it could be certified as a class action.

BancorpSouth's actions effectively seek to usurp this Court's authority to adjudicate the long-pending class action claims pending against it here. Absent immediate action by this Court, BancorpSouth's actions will cause irreparable harm to tens of thousands of proposed class members on whose behalf Plaintiff has been actively pursuing these claims. Moreover, allowing the later-filed copycat case and proposed settlement to proceed will establish a dangerous precedent in MDL 2036; it will tacitly authorize other defendants to "shop around" for the most favorable settlement terms and, when they find partners in other venues willing to quickly settle

for inadequate consideration, to undermine the ongoing litigation pending against them in this Court.

To prevent that outcome, and to reassert the MDL Court's authority over all claims arising from this subject matter in the interests of efficiency and sound case management, Plaintiff respectfully requests that this Court *immediately*: (1) deny BancorpSouth's Motion to Stay [**DE # 2602**]; (2) dispense with oral argument and grant Plaintiff's pending and fully briefed Motion for Class Certification [**DE # 2271**]; (3) enjoin further proceedings in the later-filed copycat action BancorpSouth is attempting to settle outside the province of this Court; and (4) order BancorpSouth and its counsel to produce, for this Court and the PEC, all documents exchanged with opposing counsel and other third parties in connection with the copycat case and the negotiations that resulted in the announced proposed classwide settlement, so this Court can determine whether sanctions are appropriate against BancorpSouth and/or its counsel based on their conduct in this affair.

## PROCEDURAL HISTORY

On May 18, 2010, Plaintiff Shane Swift filed a nationwide class action complaint against BancorpSouth in the Northern District of Florida, challenging BancorpSouth's unlawful overdraft practices ("*Swift*"). *Swift* was the first-filed class action lawsuit anywhere in the country against BancorpSouth alleging claims based on its unlawful overdraft fee practices. On October 20, 2010, over BancorpSouth's objection, the Judicial Panel on Multidistrict Litigation ("JPML") transferred *Swift* to this Court as part of MDL 2036.

*Swift* has been actively litigated in this Court for almost 18 months. This Court denied BancorpSouth's motion to dismiss [**DE # 1305**]; the parties have engaged in extensive pretrial discovery consisting of multiple depositions and BancorpSouth's production of over 100,000

pages of documents; and Plaintiff's Motion for Class Certification [**DE # 2271**] is fully briefed and ripe for decision. The PEC and Plaintiff's counsel have invested a substantial amount of time and advanced tens of thousands of dollars in costs in furtherance of the prosecution of *Swift*. Not once – until March 27, 2012 – did BancorpSouth's counsel ever disclose or mention the copycat Arkansas litigation, despite their continuing duty to supplement outstanding discovery plainly requesting such information.

On March 27, 2011, at approximately 3:00 p.m. EDT, BancorpSouth's counsel, Eric J. Taylor and William J. Holley, called Plaintiff's counsel, Jeffrey M. Ostrow, to advise that they had negotiated a class action settlement in a case pending in the Western District of Arkansas that purportedly subsumes the claims asserted on behalf of the proposed class in *Swift*. Declaration of Jeffrey M. Ostrow, ¶ 5 (See Exhibit A). Messrs. Taylor and Holley further advised Mr. Ostrow that, on March 26, this settlement had been preliminarily approved by the Honorable Robert T. Dawson, United States District Judge, Western District of Arkansas, in *Thomas, et al. v. Bancorpsouth Bank, et al.*, Case No.: 1:12-cv-1016-RTD ("*Thomas*"). *Id.* at ¶ 6. Messrs. Taylor and Holley further advised that they would be filing the Motion to Stay with this Court pending final approval of the *Thomas* settlement. *Id.* at ¶ 7. In response, Mr. Ostrow requested that BancorpSouth's counsel provide copies of the settlement documents and preliminary approval papers in *Thomas*. *Id.* at ¶ 8. Mr. Holley declined, responding that "they are in the public record." *Id*. BancorpSouth filed the Motion to Stay a few minutes later. [**DE # 2602**].

Prior to this March 27 call, the PEC and Plaintiff's counsel were unaware of any other overdraft-fee-related class action suits pending against BancorpSouth, and had no reason to suspect that any such suits existed. Ostrow Decl., ¶ 9. Indeed, in prior discovery responses,

4

BancorpSouth denied the existence of any such litigation and never supplemented its discovery responses.  Moreover, in e-mail communications just two days earlier, on March 25, 2012, BancorpSouth's counsel failed to disclose any other pending litigation, let alone a nationwide settlement, and instead requested to delay certain depositions in *Swift* until late April 2012 because of purported scheduling conflicts.  *Id.* at ¶ 10.  BancorpSouth's counsel indicated that he wanted to delay the depositions in order to focus on preparing and filing a reply in support of a *Daubert* motion the bank filed with this Court challenging Plaintiff's expert.  *Id.* [**DE # 2448**].

A review of PACER and Arkansas public records following BancorpSouth's filing of the Motion to Stay revealed that on August 2, 2011 – nearly 18 months after *Swift* was filed – one of the named plaintiffs in *Thomas*, Billy Lawson, Jr., filed an action in Arkansas state court styled *Billy D. Lawson, Jr. v. Bancorpsouth, Inc., et al.*; Case No.: CV-11-426I (21st Judicial District, Crawford County, Ark.) ("*Lawson*"), alleging nearly identical claims to those asserted in *Swift*.  Ostrow Decl., ¶ 11.  On September 9, 2011 – approximately six months ago – *Lawson* was voluntarily dismissed.  *Id.*

On February 28, 2012, plaintiff Melvin L. Thomas III joined plaintiff Lawson and filed *Thomas* in the Western District of Arkansas, asserting nearly identical claims to those in the *Swift* action pending before this Court.  (*See* Exhibit B).  On March 12, 2012, BancorpSouth filed a motion to dismiss the *Thomas* action.  (*See* Exhibit C).  Three days later, on March 16, 2012, the *Thomas* plaintiffs filed an unopposed motion seeking certification of a settlement class, preliminary approval of a class action settlement, approval of a notice plan to provide absent class members with notice of the class action settlement, and scheduling a final fairness hearing.  (*See* Exhibit D).  On March 23, 2012, the *Thomas* plaintiffs filed a brief in support of the unopposed motion for class certification.  (*See* Exhibit E).  That brief confirms that, at the time

the parties to the state court action voluntarily dismissed it, they had already agreed that they would settle the case. On March 23, BancorpSouth filed a brief in support of the settlement agreement in *Thomas*, and in the process disclosed the existence of *Swift* to the Arkansas federal court to "fulfill its obligation of candor and to notify the Court of a prospective class action lawsuit – not yet with a certified class – challenging similar BancorpSouth practices." (*See* Exhibit F). On March 26, 2012, Judge Dawson of the Western District of Arkansas granted preliminary approval to the settlement in *Thomas*. (*See* Exhibit G).

## ARGUMENT

The Court should refuse to stay the *Swift* action, dispense with oral argument and certify a litigation class in *Swift*, and enjoin further proceedings in the copycat *Thomas* case. BancorpSouth has been trying to avoid this Court's jurisdiction ever since it opposed transfer of *Swift* to MDL 2036. Unfortunately, the recent tactics of BancorpSouth's counsel depart materially from recognized standards of professional conduct. Even as its counsel actively defended the claims here, they were plotting to reach a collusive, wholly inadequate settlement with willing plaintiffs' counsel outside the purview of the MDL – a settlement that, if not enjoined, will provide a mere pittance of the proposed class' total damages.[1] The behavior of BancorpSouth's counsel not only shows disrespect for this Court and a willingness to waste its time; if condoned, such behavior will seriously undermine the purpose of these coordinated pre-trial proceedings. The tactics of BancorpSouth and its counsel may also warrant sanctions for inappropriate conduct in connection with *this* case.

---

[1] The proposed settlement agreement is wholly inadequate and provides virtually zero benefit to the proposed settlement class. Plaintiff will not fully set forth the gross deficiencies of that settlement at this time – as denying the motion to stay and granting class certification will effectively obviate these problems. (*See* Exhibit H).

**I.     The Motion to Stay Should Be Denied.**

Unlike every other notice of settlement filed in this MDL with an accompanying request to suspend scheduling deadlines, BancorpSouth's notice was filed *unilaterally* – not by both parties to the MDL litigation. *See* Notices of Settlement for Bank of America, Union Bank, Associated Bank, Harris Bank, Great Western Bank, Commerce Bank, Bank of the West, and Chase. [**DE # 1135, 2066, 2169, 2281, 2240, 2333, 2414 and 2447**]. In all of these other proposed settlements, the PEC and the MDL defendant *jointly* requested that this Court stay further proceedings as a result of proposed settlements reached in this MDL. Joint notices were filed only after the MDL parties engaged in serious, good faith, arms-length negotiations that resulted in *bona fide* proposed settlements with significant benefits for the proposed settlement classes – components that are entirely absent from the proposed settlement that BancorpSouth seeks to consummate outside the auspices of this multidistrict proceeding.

Despite the transparency expected in this Court, BancorpSouth and its counsel intentionally failed to disclose the existence of a competing copycat case so they could covertly hold settlement talks without risk of disclosure to the Plaintiff, the PEC, or this Court. *Compare* **DE # 60** at ¶ 6 ("This Court places a premium on professionalism and requires counsel to fulfill their obligation as advocates in a manner that will foster and sustain good working relations among fellow counsel and the Court. The Court expects that professionalism and courteous cooperation permeate this proceeding from now until this litigation is concluded."). Contrary to this Court's salutary requirement, even after they knew they had brokered a settlement *in January 2012*, and colluded to have the case re-filed in federal court, BancorpSouth and its counsel failed to provide Plaintiff, the PEC or this Court – throughout the course of active class certification briefing and expensive discovery in this case – with notice that it had reached a

proposed settlement in *Thomas* and would be moving for preliminary approval of that settlement in Arkansas.

If the Court were to grant the Motion to Stay, irreparable harm will clearly result to the proposed class in *Swift*. Plaintiff will have to sit idly by while the parties in *Thomas* move toward final approval of an inadequate, collusive settlement. In that event, the remaining defendants in MDL 2036 would be free to pursue similar actions in other venues.

## II. The Court Should Grant Plaintiff's Motion for Class Certification.

Plaintiff's Motion for Class Certification [**DE # 2271**] is fully briefed and ripe for a ruling by this Court. Plaintiff has made the proper evidentiary and factual showings to sustain its burden for class certification. Plaintiff requests that the Court dispense with oral argument and *immediately* grant the Motion for Class Certification to thwart the *Thomas* parties' efforts to exclude from their settlement class definition: ". . . (2) any Person with an interest in a BancorpSouth account that is subject of an active lawsuit against BancorpSouth or any parent, subsidiary, affiliate, or sister company of BancorpSouth, or any officers or directors of BancorpSouth, in any court that makes allegations that are included or similar to the allegations made in this Action." (Settlement Agreement ¶ C1.)

This language purporting to exclude Plaintiff Swift from the *Thomas* settlement class was crafted by the *Thomas* parties in an attempt to avoid the obvious overlap between the two cases. Significantly, however, if this Court certifies *Swift*, all those bank customers will now be members of a certified class in *Swift* – and, because they will then be "subject to an active lawsuit against BancorpSouth," they will no longer be included in the *Thomas* settlement class. Consequently, in light of BancorpSouth's attempt to circumvent this Court's jurisdiction and orders, the Court should certify Plaintiff's proposed classes not only because the Rule 23

8

requirements are satisfied, but also to safeguard the rights and interests of the individuals whom *Swift* seeks to represent.

**III.    Because *Swift* Was the First-Filed and BancorpSouth and the *Thomas* Parties Colluded in Reaching an Inadequate Settlement, This Court Should Enjoin the Arkansas Parties From Further Prosecution of *Thomas* and Their Settlement.**

As the Court is aware, MDL 2036 was established to promote the just and efficient conduct of overdraft fee cases pending in federal courts around this country. *See In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009). As a necessary result of the coordinated overdraft-fee pretrial proceedings, the Court rules on similar issues, providing much-needed consistency in resolving common issues in this litigation challenging many banks' overdraft-fee practices. Such uniformity is especially important in the context of class certification and settlement because of their pivotal role in determining the outcomes of cases.

When parties try to circumvent the MDL Court's jurisdiction, the only logical inference is that these parties are seeking to further their own self-interest. Concern regarding improper motives is further heightened where, as here, a subsequent copycat case is also filed. Based on the conduct of the *Thomas*' parties, and upon review of the proposed settlement agreement in the copycat *Thomas* action, it is evident that BancorpSouth and the *Thomas* plaintiffs are improperly attempting to push through a defective settlement outside the purview of this Court.

The proposed settlement's insufficient consideration and unfavorable terms strongly imply that BancorpSouth's counsel and the *Thomas* plaintiffs' counsel contrived a plan to dismiss the *Lawson* case in state court so that they could negotiate a "reverse-auction" settlement, without anyone in the MDL – including Plaintiff's counsel, the PEC and this Court – having any idea. *See Reynolds v. Beneficial Nat'l Bank*, 238 F.3d 277, 280-285 (7th Cir. 2002) (discussing "the practice whereby the defendant in a series of class actions picks the most

9

ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant."). Here, the plan was to re-file the Arkansas state copycat case in federal court, have Bancorpsouth file a motion to dismiss to suggest an intent to defend *Thomas*, and immediately move for approval of a settlement that would subsume the *Swift* class. BancorpSouth should not be permitted to manipulate these MDL proceedings by selling out the settlement class to the lowest bidder in another district.

Because *Swift* was the first case filed against BancorpSouth, and because the record indicates BancorpSouth and the *Thomas* plaintiffs and their counsel colluded to reach a settlement beyond the power of this Court which, if approved, will extinguish the class claims in this case, this Court should exercise its jurisdiction under the All Writs Act to enjoin BancorpSouth, Inc., BancorpSouth Bank, the *Thomas* Plaintiffs, and their respective counsel from further prosecution of the *Thomas* action, including further efforts in the Western District of Arkansas to seek final approval of the recently announced settlement.

A.  **The All Writs Act.**

The All Writs Act, 28 U.S.C. § 1651, authorizes district court judges to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."[2] As shown in *In re Managed Care Litigation*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002), the All Writs Acts was designed for just this type of situation where the proposed release of claims in another judicial district would interfere with the Court's disposition of those same claims.

---

[2] The All Writs Act is limited only by the Anti-Injunction Act, which bars a federal court from enjoining a proceeding a *state court* unless that action is "expressly authorized by [an] Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283 (emphasis added). That limitation does not apply here, because *Thomas* is now a federal, not state court proceeding.

10

In the *Managed Care* MDL, U.S. District Judge Federico Moreno invoked the All Writs Act to halt settlement activities outside of the MDL relating to a case that properly belonged in the MDL.[3] Just as Judge Moreno did in *Managed Care*, this Court, acting on the authority granted by the All Writs Act, should enjoin the *Thomas* parties' collusive efforts to settle a copycat case and thereby deprive the Court of its ability to adjudicate the long-standing claims against BancorpSouth.

The two cases share remarkably similar procedural histories. Like BancorpSouth here, CIGNA was simultaneously defending a case in the MDL and a narrower state court class action. There, the Illinois state court litigation moved into federal court as a result of the maneuverings of CIGNA and the state court plaintiffs in an attempt to avoid the MDL. Like the *Thomas* plaintiffs, the renegade *Managed Care* plaintiffs revamped their pleadings; CIGNA removed the action to federal court based on the newly filed claims, and the parties immediately moved for preliminary approval of a class settlement. *See Managed Care*, 236 F. Supp. 2d at 1339.

Judge Moreno appropriately refused to condone the non-MDL settlement maneuvers of a entity that was already part of the MDL. *Id.* at 1342. The court noted the critical importance of respecting the statute that established the JPML for the purpose of consolidating similar cases and promoting judicial efficiency, as well as the importance of subjecting class settlements to rigorous review because of their far-reaching impact on numerous parties. *Id.* In enjoining CIGNA from moving forward to settle outside of the MDL, the court emphasized the need to respect the JPML, which had vested the court with authority over the centralized actions, and the fact that the injunction would further the JPML's intentions but allowing the settlement to proceed would directly undermine them. *Id.* at 1343.

---

[3] The filings in *Managed Care* that resulted in the order enjoining the action pending outside the MDL may assist this Court. [S.D. Fla. Case No. 1:00-md-01334-FAM, DE # 1702, 1753, 1760].

As a longstanding participant in MDL 2036, BancorpSouth and its counsel have obligations to this Court and to opposing counsel in this case. BancorpSouth and its counsel violated those obligations, disrespecting this Court and placing the proposed class at risk. The Court should not tolerate such conduct. Instead, it can and should follow Judge Moreno's lead by enjoining the *Thomas* parties and their respective counsel from proceeding with their settlement activities in another court, pursuant to the All Writs Act.

### B. The First-to-File Rule Supports an Injunction Against the Arkansas Settlement.

It is undisputed that *Swift* is the first-filed case against BancorpSouth. The "first-to-file rule" developed as a doctrine of federal comity. Competing lawsuits involving the same parties and the same issues in separate jurisdictions waste judicial resources and can lead to conflicting results. *See Thomas Betts Corp. v. Hayes*, 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002) ("The first filed rule is a doctrine of federal comity that promotes judicial efficiency"). Under the "first-to-file rule," the entire action should generally be decided by the court in which the action was first filed. *Smith v. S.E.C.*, 129 F.3d 256, 361 (6th Cir. 1997). The Eleventh Circuit follows the "first-to-file rule." *See Manuel v. Eonvergys Corp.*, 430 F.3d 1132, 1135-36 (11th Cir. 2005) ("[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed under the first-filed rule"). This Court's designated role in supervising all of these actions heightens the importance of respecting the "first-to-file rule" where, as here, a copycat case has been filed against a bank that is already defending a case centralized within MDL 2036.

"'[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.'" *Cadle v. Whataburger of*

12

*Alice, Inc.,* 174 F.3d 599, 606 (5th Cir. 1999) (citation omitted). Courts applying this rule agree "'that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.'"[4] *Id.* Thus, once the Court determines that the two suits likely involve substantial overlap, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed. *Cadle*, 174 F.3d at 606; *Mann Mfg. v. Hortex, Inc.,* 439 F.2d 403, 408 (5th Cir. 1971). Rather, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Cadle*, 174 F.3d at 606.

Given that the *Thomas* plaintiffs have converted their case from a state class action to a putative national class action in another federal forum – and, moreover, that they explicitly intended to subsume *Swift* and settle outside of the MDL – the "first-to-file rule" strongly supports an injunction staying *Thomas*. It is particularly appropriate for this Court to intervene to stay *Thomas* on account of the conduct of the *Thomas* parties.

To date, the PEC has largely refrained from invoking the "first-to-file rule" against other cases because, based on the history of the proceedings before the JPML, transfer of prior copycat cases has been a virtual certainty. However, as this Court knows, the JPML recently stopped sending new cases to this Court. BancorpSouth and the *Thomas* plaintiffs are explicitly trying to capitalize on the JPML's decision not to add newly-filed cases to the MDL. (Class Certification

---

[4] *See also Perkins v. Am. Nat. Ins. Co.,* 446 F. Supp. 2d 1350, 1353 (M.D. Ga. 2006) ("[U]nder the 'first-filed rule,' the court where the subsequently filed action has been filed should defer to the court where the first action was filed to allow that court to decide whether it should exercise jurisdiction over both cases in a consolidated action."); *Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.,* 370 F. Supp. 2d 1333, 1338 (N.D. Ga. 2005) ("[T]he first-filed rule generally requires the first court to decide whether the first-filed rule should apply, or whether a narrow exception to the rule that only applies in 'compelling circumstances,' favors transfer of the first-filed case to the second court for consolidation." (citations omitted))

13

Brief at p. 24, fn. 4.) However, immediately upon learning of *Thomas*, Plaintiff alerted the JPML of the existence of the *Thomas* case and is seeking to have that copycat case transferred into the MDL.[5] The PEC and Plaintiff's counsel believe that BancorpSouth timed its notice of the *Thomas* settlement to coincide with the March 29, 2012 JPML Panel hearing in San Diego, California, creating a two-month delay before the JPML will be able to consider the events surrounding the filing and attempted settlement of *Thomas*.

Neither the PEC nor this Court can sit idly by and risk that the Arkansas proceedings will move forward. To do so will create a dangerous precedent and open the floodgates for other defendants to follow the lead of the parties in *Thomas*, by consenting to the filing of copycat cases outside the MDL with the intent of settling them on less than desirable terms to the proposed classes, without fear of the cases being transferred into the MDL.

This Court was chosen by the JPML to preside over these cases almost three years ago. No Court has more experience or a better understanding of the issues involved, or how best to adjudicate them. What BancorpSouth and its counsel have done here is a direct attempt to undermine this Court's authority granted by the JPML.

**IV.    This Court Should Consider Sanctioning BancorpSouth and Its Counsel Based on Their Conduct.**

BancorpSouth and its counsel have acted so egregiously that the Court may wish to consider imposing sanctions for their behavior. As this Court is well aware, "a court has 'inherent authority to control and preserve the integrity of its Judicial proceedings.'" *Smith v. Armour Pharmaceutical Co.*, 838 F. Supp. 1573, 1578 (S.D. Fla. 1993) (quoting *In re Shell Oil Refinery,* 143 F.R.D. 105, 109 (E.D. La. 1992)). "Deeply rooted in the common law tradition is the power of any court to 'manage its affairs which necessarily includes the authority to impose

---

[5] Attached as Exhibit I is the Notice of Tag-Along Action letter sent by the PEC to JPML on March 28, 2012 requesting that it transfer *Thomas* to MDL 2036.

reasonable and appropriate sanctions upon errant lawyers practicing before it.'" *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536, 1545 (11th Cir. 1993) (quoting *Carlucci v. Piper Aircraft Corp.,* 775 F.2d 1440, 1447 (11th Cir. 1985)). "A court may appropriately sanction a party or attorney who 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'" *Id.* at 1545-46 (quoting *Hutto v. Finney,* 437 U.S. 678, 689 n.14 (1978)).

Having been admitted *pro hac vice*, as guests in this Court, the attorneys for BancorpSouth are duty-bound to conduct themselves in a manner consistent with the ethical standards with which all attorneys practicing before the Court must comply. Based on the foregoing chain of events, it appears that counsel for BancorpSouth have failed to adhere to their obligations as officers of this Court. Consequently, this Court should mandate production of all documents related to this affair and consider sanctioning both BancorpSouth and its counsel.

## CONCLUSION

The PEC respectfully requests that this Court: (1) deny BancorpSouth's Motion to Stay [**DE # 2602**]; (2) dispense with oral argument and grant Plaintiff's pending and fully briefed Motion for Class Certification [**DE # 2271**]; (3) enjoin further proceedings in the later-filed copycat *Thomas* action that BancorpSouth is attempting to settle outside the province of this Court; and (4) order BancorpSouth and its counsel to immediately produce, for this Court and for the PEC, all correspondence and documents exchanged with opposing counsel and other third parties in connection with the copycat *Thomas* case that resulted in the proposed classwide settlement, so this Court can determine whether to impose sanctions upon BancorpSouth and/or its counsel.

## **LOCAL RULE 7.1 CERTIFICATE**

Pursuant to Local Rule 7.1, I hereby certify that counsel for Plaintiff has conferred with Eric J. Taylor and William J. Holley, counsel for BancorpSouth, by telephone on March 29, 2012, regarding the issues raised in the motion. BancorpSouth does not consent to the relief sought herein and in particular advised of the following: (a) it would oppose transfer of the *Thomas* case to this Court for further proceedings; and (b) it would not agree to enjoin further proceedings in *Thomas* in the Western District of Arkansas and would oppose a motion on the grounds that this Court has no jurisdiction to do so.

Dated: March 29, 2012.

Respectfully submitted,

| | |
|---|---|
| /s/ Aaron S. Podhurst | /s/ Bruce S. Rogow |
| Aaron S. Podhurst, Esquire | Bruce S. Rogow, Esquire |
| Florida Bar No. 063606 | Florida Bar No. 067999 |
| apodhurst@podhurst.com | brogow@rogowlaw.com |
| Robert C. Josefsberg, Esquire | Bruce S. Rogow, P.A. |
| Florida Bar No. 40856 | Broward Financial Center |
| rjosefsberg@podhurst.com | 500 E. Broward Boulevard |
| Steven C. Marks, Esquire | Suite 1930 |
| Florida Bar No. 516414 | Fort Lauderdale, FL 33394 |
| smarks@podhurst.com | Tel: 954-767-8909 |
| Peter Prieto, Esquire | Fax: 954-764-1530 |
| Florida Bar No. 501492 | |
| pprieto@podhurst.com | |
| Stephen F. Rosenthal, Esquire | |
| Florida Bar No. 0131458 | |
| srosenthal@podhurst.com | |
| John Gravante, III, Esquire | |
| Florida Bar No. 617113 | |
| jgravante@podhurst.com | |
| PODHURST ORSECK, P.A. | |
| City National Bank Building | |
| 25 W. Flagler Street, Suite 800 | |
| Miami, FL 33130-1780 | |
| Tel: 305-358-2800 | |
| Fax: 305-358-2382 | |

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 3855830
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596


*Coordinating Counsel for Plaintiffs*

| | |
|---|---|
| /s/ E. Adam Webb<br>E. Adam Webb, Esquire<br>Georgia Bar No. 743910<br>Adam@WebbLLC.com<br>Matthew C. Klase, Esquire<br>Georgia Bar No. 141903<br>Matt@WebbLLC.com<br>G. Franklin Lemond, Jr., Esquire<br>Georgia Bar No. 141315<br>FLemond@WebbLLC.com<br>WEBB, KLASE & LEMOND, L.L.C.<br>1900 The Exchange, S.E.<br>Suite 480<br>Atlanta, GA 30339<br>Tel: 770-444-9325<br>Fax: 770-444-0271 | /s/ Michael W. Sobol<br>Michael W. Sobol, Esquire<br>California Bar No. 194857<br>msobol@lchb.com<br>Roger N. Heller, Esquire<br>California Bar No. 215348<br>rheller@lchb.com<br>Jordan Elias, Esquire<br>California Bar No. 228731<br>jelias@lchb.com<br>LIEFF CABRASER HEIMANN &<br>  BERNSTEIN L.L.P.<br>Embarcadero Center West<br>275 Battery Street, 30th Floor<br>San Francisco, CA 94111<br>Tel: 415-956-1000<br>Fax: 415-956-1008 |
| /s/ Russell W. Budd<br>Russell W. Budd, Esquire<br>Texas Bar No. 03312400<br>rbudd@baronbudd.com<br>Bruce W. Steckler, Esquire<br>Texas Bar No. 00785039<br>bsteckler@baronbudd.com<br>Mazin A. Sbaiti, Esquire<br>Texas Bar No. 24058096<br>msbaiti@baronbudd.com<br>BARON & BUDD, P.C.<br>3102 Oak Lawn Avenue<br>Suite 1100<br>Dallas, TX 75219<br>Tel: 214-521-3605<br>Fax: 214-520-1181 | /s/ David S. Stellings<br>David S. Stellings, Esquire<br>New York Bar No. 2635282<br>dstellings@lchb.com<br>LIEFF CABRASER HEIMANN &<br>  BERNSTEIN L.L.P.<br>250 Hudson Street<br>8th Floor<br>New York, NY  10013<br>Tel: 212-355-9500<br>Fax: 212-355-9592 |

<div style="display: flex;">

<div>

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

</div>

<div>

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

</div>

</div>

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

C ASE N O. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596