# EXHIBIT B

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

FEB 2 8 2012

CHRIS R. JOHNSON, CLERK
BY

DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**EL DORADO DIVISION**

**MELVIN L. THOMAS III, and BILLY D. LAWSON, JR.,**
**on behalf of themselves and all others similarly**
**situated**                                              **PLAINTIFFS**

**vs.**                    Case No. ___12 · 1016___

**BANCORPSOUTH BANK and**
**BANCORPSOUTH, INC.**                                    **DEFENDANTS**

---

### CLASS ACTION COMPLAINT

---

Plaintiffs Melvin L. Thomas III, and Billy D. Lawson, Jr. ("Plaintiffs"), bring this action

on behalf of themselves and all others similarly situated, against BancorpSouth Bank and

BancorpSouth, Inc. ("Defendants" or "BancorpSouth") and alleges:

### I.    INTRODUCTION

1.    BancorpSouth engages in an overarching wrongful practice where it seeks to

maximize the amount of overdraft fees and non-sufficient funds fees (NSF) ("Overdraft Fees") it

earns from its customers.    To accomplish its goal, BancorpSouth:   (i) conceals or disseminates

misleading information about its Overdraft Fees programs to its customers; (ii) provides its

customers with inaccurate information concerning their account balance information; (iii) high-

low orders checks, debit card and ATM transactions at the end of the posting day to trigger

multiple Overdraft Fees; (iv) charges Overdraft Fees when a customer has not in fact overdrawn

his or her account; and (v) charges Overdraft Fees in an amount that is unconscionable, an illegal

penalty, set in bad faith, and usurious.

2.     BancorpSouth's actions are in violation of State and federal law.   Specifically BancorpSouth violates the Electronic Funds Transfer Act (15 U.S.C. §1693c and § 1693h) and the unfair and deceptive acts and practices statutes in the states where it does business. BancorpSouth also breaches the deposit contract, in violation of state law.   Through its wrongful Overdraft Fee practices Bancorp South is unjustly enriched, at the expense of its customers. BancorpSouth's actions also constitute the tort of conversion.

3.     This lawsuit seeks money damages for BancorpSouth's wrongful conduct and injunctive relief for all of BancorpSouth's consumer checking account customers.

4.     This is a class action brought on behalf of all of BancorpSouth's customers in the United States who hold or previously held a BancorpSouth consumer checking account from May 1, 2004 to December 31, 2011.

## II.     **PARTIES**

5.     Plaintiff Melvin L. Thomas III, is an individual, an adult, and a resident of Columbia County, Arkansas.   Mr. Thomas has been a customer of BancorpSouth during the class period, held a consumer account with BancorpSouth, and incurred and paid overdraft fees as a result of BancorpSouth's wrongful practices.

6.     Plaintiff Billy D. Lawson, Jr., is an individual, an adult, and a resident of Crawford County, Arkansas.   Mr. Lawson has been a customer of BancorpSouth during the class period, held a consumer account with BancorpSouth, and incurred and paid overdraft fees as a result of BancorpSouth's wrongful practices.

7.     Defendant BancorpSouth Bank is a state-chartered bank and has its main office in Tupelo, Mississippi.   BancorpSouth may be served with process through its registered Agent in

Arkansas, the Corporation Company, 124 West Capitol Avenue, Suite 1700, Little Rock, Arkansas 72201 and through its attorneys.

8.  BancorpSouth Bank is owned by its publically traded, financial holding, parent company BancorpSouth, Inc.  BancorpSouth conducts commercial banking and financial services operations in Mississippi (where it has 105 branches), Arkansas (56 branches), Alabama (30 branches), Tennessee (30 branches), Louisiana (23 branches), Texas (21 branches), Missouri (7 branches), Florida (2 branches), and Illinois (1 location).

### III.  VENUE and JURISDICTION

9.  Venue is proper here because these causes of action accrued in the Western District of Arkansas, and Mr. Thomas and Mr. Lawson are residents of the Western District of Arkansas.  BancorpSouth has a substantial business presence in this district, with four branches in the city of El Dorado, Arkansas alone.

10.  This Court has federal question jurisdiction over this action under 28 U.S.C. § 1331, because Plaintiffs' Electronic Funds Transfer Act claims arise under federal law.  This Court also has subject matter over this lawsuit pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because the matter in controversy exceeds $5 million, exclusive of interests and costs, this is a class action in which there is minimal diversity, and the proposed class has more than 100 members.  This Court has personal jurisdiction over BancorpSouth.

### IV.  NATURE OF THE ACTION

**A.  BancorpSouth's Transactions with its Customers in General**

11.  BancorpSouth provides its consumer checking account customers with traditional checks, debit cards or check cards.  Debit or check cards allow customers to have instant, direct

electronic access to their checking accounts.   They are used for various types of electronic types of electronic transactions, including on-line use, bill payments, cash withdrawals, and ATM deposits and withdrawals.

12.   BancorpSouth provides its customers with "Internet Banking Access" through its website *www.bancorpsouthonline.com*.   Internet Banking Access allows customers to check account balances on a real-time basis.

13.   BancorpSouth also provides overdraft protection to its customers, and has continuously provided overdraft protection throughout the class period.   Overdraft protection allows BancorpSouth to accept a transaction during processing, and charge customers an overdraft fee to process or "cover the transaction" when the account does not have enough funds to cover the transaction.   BancorpSouth's Overdraft Fee has varied during the class period, within the range of $29 to $35 for each overdraft.

14.   BancorpSouth establishes the amount of its Overdraft Fee.   The Overdraft Fee has never been set in relation to BancorpSouth's costs with processing overdrafted transactions.

15.   BancorpSouth maintains records sufficient to reasonably identify its current and former customers who maintain consumer checking accounts, have debit cards, or have overdraft protection.   Unlike credit cards or checks, debit cards deduct the purchase amount from a customer's checking account.

16.   When a customer opens a consumer checking account, BancorpSouth provides each of its customers an "Account Information Statement."   BancorpSouth's Account Information Statement has never stated that it will always process checks and other transactions on a high-to-low basis.   BancorpSouth's account information statement has never stated that if a customer checks their balance at an ATM or online, BancorpSouth's payment method would

render this information inaccurate. BancorpSouth has always been responsible for drafting the language of the Account Information Statement and the customers have never drafted the language of the Account Information Statement.

17. Also, in connection with opening a consumer checking account, BancorpSouth provided each of its customers with a "Deposit Account Terms and Conditions." Each Deposit Account Terms and Conditions stated in fine-print permissive language BancorpSouth's policy for the order of processing of customer transactions. BancorpSouth's Deposit Account Terms and Conditions statement has never stated that it will always process check and other transactions on a high-to-low basis, or discussed the interest rate relationship between transactions and overdraft fees. BancorpSouth's Deposit Account Terms and Conditions has never stated that if a customer checks their balance at an ATM or in connection with a debit transaction online, BancorpSouth's payment method may render this information inaccurate. BancorpSouth has always been exclusively responsible for drafting the language of the Deposit Account Terms and Conditions and its customers have never drafted the language of the Deposit Account Terms and Conditions.

18. BancorpSouth's customer service representatives are instructed on how to answer consumer inquiries concerning overdraft fees and accuracy of account information.

19. To ensure that its processing methods are uniform, BancorpSouth provides all branches with an operations manual. To ensure that its processing methods are uniform, BancorpSouth uses computer software so that its overdraft fee policies are followed by all of its branches. BancorpSouth's computer software allows it to "batch process" all transactions at the end of a banking day, from an order of highest to lowest. BancorpSouth's computer software

allows it to charge overdraft fees without regard to the amount of the transaction triggering the overdraft.

20.     BancorpSouth has processed its check and debit transactions in a high-to-low order, without exception, throughout the class period.

21.     BancorpSouth has records sufficient to reasonably identify its current and former customers who have debit or check cards and consumer checking accounts.

22.     BancorpSouth's customers rely on it to fairly and accurately account for funds that customers deposit and the balance they keep.

23.     Ultimately, over 90% of BancorpSouth overdraft fees are paid by its customers. Over 50% of the overdraft fees are greater than the transaction that triggered them.

**B.     Unfairness of Bank Overdraft Fees Policies in General**

24.     On March 11, 2004, the Board of Governors of the Federal Reserve System and the Federal Deposition Insurance Corporation (FDIC), issued a statement titled "Unfair or Deceptive Acts or Practices by State-Chartered Banks."   This statement outlined "guidance on best practices to address some areas with the greatest potential for unfair or deceptive acts and practices."   Of these best practices, the statement included directions to banks (like BancorpSouth) to:   (i) review all promotional materials, marketing scripts, and customer agreements and disclosures to ensure that they fairly and adequately describe the terms, benefits and material limitations of the product or service being offered, including any related or optional products or services, and that they do not misrepresent such terms either affirmatively or by omission, and (ii) inform consumers in a clear and timely manner about any fees, penalties, or other charges . . . that have been imposed, and the reason for their imposition.

25.     On February 18, 2005, the Office of the Comptroller of Currency (OCC), the

Board of Governors of the Federal Reserve System, the FDIC and the National Credit Union

Administration (NCUA) issued a joint guidance concerning "bounced-check protection" or

"overdraft protection."  In this Joint Guidance, it was noted under the section "Concerns":

> Institutions may not clearly disclose that the [overdraft program] may cover
> instances when consumers overdraw their accounts by means other than check,
> such as ATMs and point-of-sale (POS) terminals.   Some institutions may include
> overdraft protection amounts in the sum that they disclose as the consumer's
> account "balance" (for example at an ATM) without clearly distinguishing the
> funds that are available for withdrawal without overdrawing the account.   When
> the institution knows that the transaction will trigger an overdraft fee, such as at a
> proprietary ATM, institutions may not alert the consumer prior to the completion
> of the transaction to allow the customer to cancel the transaction before the fee is
> triggered.

26.     On October 6, 2009, the Center for Responsible Lending (CRL) published the

article "Overdraft Explosion:   Bank fees for overdrafts increase 35% in two years."    In this

Article, under the section "Overview" the CRL noted:

> It is now standard practice for most banks and credit unions to automatically
> enroll checking account customers in their most expensive overdraft loan
> programs –one in which the financial institution generally approves transactions
> when the accountholder does not have enough funds to cover them, in return for a
> fee of around $34 per overdraft.
>
> [c]ommon banking practices—such as re-ordering transactions from largest to
> smallest—increase the number of overdraft fees paid by customers rather than
> helping them avoid charges . . . because banks generally charge a fixed overdraft
> fee regardless of the size of the transaction covered, the fee bears no relationship
> to the actual cost to the institution of covering the overdraft . . . previous CRL
> research found that consumers paid about $2 in fees for every $1 in credit
> extended if they overdrew their account using a debit card at a checkout counter.

27.     The CRL article found that "over 50 million Americans overdrew their checking

account at least once over a 12-month period, with 27 million accountholders incurring five or

more overdraft or non-sufficient funds (NSF) Fees" and "the most common triggers of these fees

are small debit card transactions that could easily be denied for no fee."   The CRL Article also

found "financial institutions engage in abusive practices that maximize fee revenue," including (i) "approv[ing] debit card transactions that they could deny for no fee," (ii) "charg[ing] exorbitant fees that bear no relationship to the cost of covering an overdraft," (iii) "charg[ing] excessive numbers of overdraft fees over the course of a day, month, or year," and (iv) "automatically enroll[ing] customers in the most expensive overdraft options available."

28.    The FDIC Financial Institution Letter FIL-81-2010, issued on November 24, 2010, noted that "Overdraft fees can exceed the amount of the overdraft and can occur multiple times in a single banking day, depending on the type and amount of transaction and the transaction-clearing practices of the institution."   The Letter noted that "for example, batch processing checks and clearing them from largest to smallest likely increases the number of items triggering an overdraft."   The Letter warned that "extremely high cost in comparison to the overdraft benefit and/or permitting product over-use often result in customer dissatisfaction and complaints . . . [s]erious financial harm can result for customers with a low or fixed income."

29.    On July 1, 2010, the Board of Governors of the Federal Reserve System amended Regulation E and required institutions to provide notice and a reasonable opportunity for customers to opt-in to the payment of ATM and POS overdrafts for a fee.   Thus, since this date, financial institutions have been prohibited from automatically enrolling its customers in overdraft programs.   The FDIC also believes that banks should "allow customers to decline overdraft coverage (i.e., opt-out) for [paper checks or automated clearing house (ACH) transfers]," and honor a customer's opt-out request.  FIL-81-2010.

30.    Overdraft fees are typically more than 300% to 900% of a bank's processing costs.

31.     Overdraft fees also typically translate into triple-digit (and even quadruple) rates of interest, as illustrated by the following:

| *Effective APR For Various Repayment Period (In Days)* | | | | | | | |
|------|----------------|-----------------|------|------|------|------|------|
| Fee | Overdraft Amt. | Period Rate | 3 | 7 | 14 | 30 | 45 |
| $20 | $100 | 20% | 2433% | 1043% | 521% | 243% | 162% |
| $25 | $100 | 25% | 3042% | 1304% | 652% | 304% | 203% |
| $35 | $100 | 35% | 4258% | 1825% | 913% | 426% | 284% |
| $35 | $500 | 7% | 852% | 365% | 183% | 85% | 57% |
| $25 | $900 | 3% | 338% | 145% | 72% | 34% | 23% |

White, James J., *NSF Fees*, 68 Ohio St. L. J. 185 (2007).

**C.     Plaintiffs' Transactions**

> **i.     Billy D. Lawson, Jr.**

32.     As one example, when BancorpSouth high-low posted the transactions in Mr. Lawson's account in January of 2007, it charged Mr. Lawson ten overdrafts, at effective interest rates of over 100%:

| Date | | Debits | Credits | Fees | Balance | Number of overdrafts |
|---|---|---|---|---|---|---|
| Jan 23, 2007 | BALANCE | | | | $202.98 | |
| Jan 23, 2007 | POS Debit Super 8 Motels | $50.85 | | | $152.13 | |
| Jan 23, 2007 | POS Debit H & M Enterprise | $32.76 | | | $119.37 | |
| Jan 23, 2007 | POS Debit Shell Oil | $25.00 | | | $94.37 | |
| Jan 23, 2007 | POS Debit Chevron | $12.25 | | | $82.12 | |
| Jan 23, 2007 | POS Debit Flying J | $7.34 | | | $74.78 | |
| Jan 24, 2007 | ATM W/D | $202.00 | | | ($127.22) | 1 |
| Jan 24, 2007 | ATM W/D | $62.00 | | | ($189.22) | 2 |
| Jan 24, 2007 | POS Debit Super 8 Motels | $50.85 | | | ($240.07) | 3 |
| Jan 24, 2007 | CK Debit Shell | $25.00 | | | ($265.07) | 4 |
| Jan 24, 2007 | ATM W/D | $22.80 | | | ($287.87) | 5 |
| Jan 24, 2007 | POS Debit Shell Oil | $20.00 | | | ($307.87) | 6 |
| Jan 24, 2007 | ATM W/D/Fee | $1.50 | | | ($309.37) | 7 |
| Jan 24, 2007 | ATM W/D/Fee | $1.50 | | | ($310.87) | 8 |
| Jan 24, 2007 | ATM W/D/Fee | $1.50 | | | ($312.37) | 9 |
| Jan 24, 2007 | POS Debit Shell Oil | $0.61 | | | ($312.98) | 10 |

33.     If Mr. Lawson's transactions had been posted from lowest to highest, he would have been imposed only three (3) overdraft fees:

| Date | | Debits | Credits | Fees | Balance | Number of overdrafts |
|---|---|---|---|---|---|---|
| Jan 23, 2007 | BALANCE | | | | $202.98 | |
| Jan 23, 2007 | POS Debit Flying J | $7.34 | | | $195.64 | |
| Jan 23, 2007 | POS Debit Chevron | $12.25 | | | $183.39 | |
| Jan 23, 2007 | POS Debit Shell Oil | $25.00 | | | $158.39 | |
| Jan 23, 2007 | POS Debit H & M Enterprise | $32.76 | | | $125.63 | |
| Jan 23, 2007 | POS Debit Super 8 Motels | $50.85 | | | $74.78 | |
| Jan 24, 2007 | POS Debit Shell Oil | $0.61 | | | $74.17 | |
| Jan 24, 2007 | ATM W/D/ Fee | $1.50 | | | $72.67 | |
| Jan 24, 2007 | ATM W/D/ Fee | $1.50 | | | $71.17 | |
| Jan 24, 2007 | ATM W/D/ Fee | $1.50 | | | $69.67 | |
| Jan 24, 2007 | POS Debit Shell Oil | $20.00 | | | $49.67 | |
| Jan 24, 2007 | ATM W/D | $22.80 | | | $26.87 | |
| Jan 24, 2007 | CK Debit Shell | $25.00 | | | $1.87 | |
| Jan 24, 2007 | POS Debit Super 8 Motels | $50.85 | | | ($48.98) | 1 |
| Jan 24, 2007 | ATM W/D | $62.00 | | | ($110.98) | 2 |
| Jan 24, 2007 | ARM W/D | $202.00 | | | ($312.98) | 3 |

34.    Mr. Lawson was not informed at the Point of Sale or at the ATM that his account balance would be insufficient to cover any of his transactions if they were posted in a high-to-low order.

**ii.    Melvin L. Thomas III**

35.    As one example, when BancorpSouth high-low posted the transactions in Mr. Thomas's account during February of 2007, it charged Mr. Thomas three overdrafts, at effective interest rates of over 100%.

| | | Debits | Credits | Fees | Balance | Number of overdrafts |
|---|---|---|---|---|---|---|
| February 12, 2007 | BALANCE | | | | $84.60 | |
| February 13, 2007 | Deposit | | $45.00 | | $129.60 | |
| February 13, 2007 | | 2116 | ($69.00) | | $60.60 | |
| February 13, 2007 | | 2115 | ($25.65) | | $34.95 | |
| February 13, 2007 | EMC - Debit | | ($18.88) | | $16.07 | |
| February 13, 2007 | | 2118 | ($17.70) | | ($1.63) | 1 |
| February 13, 2007 | | 2112 | ($10.92) | | ($12.55) | 2 |
| February 13, 2007 | | 2117 | ($10.68) | | ($23.23) | 3 |

36.    If Mr. Thomas's transactions had been posted from lowest to highest, he would have been imposed only one overdraft.

| | | Debits | Credits | Fees | Balance | Number of overdrafts |
|---|---|---|---|---|---|---|
| February 12, 2007 | BALANCE | | | | $84.60 | |
| February 13, 2007 | Deposit | | $45.00 | | $129.60 | |
| February 13, 2007 | | 2117 | ($10.68) | | $118.92 | |
| February 13, 2007 | | 2112 | ($10.92) | | $108.00 | |
| February 13, 2007 | | 2118 | ($17.70) | | $90.30 | |
| February 13, 2007 | EMC - Debit | | ($18.88) | | $71.42 | |
| February 13, 2007 | | 2115 | ($25.65) | | $45.77 | |
| February 13, 2007 | | 2116 | ($69.00) | | ($23.23) | 1 |

37.    Mr. Thomas was not informed at the Point of Sale or at the ATM that his account balance would be insufficient to cover any of his transactions if they were posted in a high-to-low order.

**V.    CLASS ALLEGATIONS**

38.    This case is brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

39.     Plaintiffs bring this action on their own behalf and on behalf of the following class, pursuant to Rule 23(b)(3) and Rule 23(b)(2) of the Federal Rules of Civil Procedure:

> All BancorpSouth customers in the United States who had a consumer check account and incurred one or more overdraft fee from May 1, 2004 to December 31, 2011.

40.     Although the precise number of members of the classes is presently unknown, upon information and belief, there are thousands of customers who are proposed class members, and Plaintiffs do not anticipate a challenge to this approximation by Defendant.  Joinder of all BancorpSouth customers with similar claims would be impractical.  The proposed class size satisfies the requirement of Rule 23(a) of the Federal Rules of Civil Procedure.

41.     Plaintiffs are members of the class defined herein.  Plaintiffs held consumer checking accounts and debit cards with BancorpSouth and incurred and paid overdraft fees during the class period because of Defendant's wrongful overdraft fee practices.

42.     Plaintiffs' claims are typical of the claims of all class members in that all putative class members incurred overdraft fees as a result of BancorpSouth's wrongful overdraft fee practices, or were subject to BancorpSouth's wrongful overdraft fee policies.

43.     No antagonism exists between the interests of the representative Plaintiffs and the interests of other class members, and Plaintiffs are fully prepared to diligently pursue this case on behalf of all class members.

44.     Plaintiffs' counsel is experienced in class action litigation and well-qualified to conduct this litigation.

45.     There are numerous questions of common law and fact in this action within the meaning of Rule 23 of the Federal Rules of Civil Procedure and these common questions

predominate over any questions affecting only individual class members within the meaning of Rule 23 of the Federal Rules of Civil Procedure.

46.    Common questions of law and fact common to the Proposed Class are whether BancorpSouth:

a.    charged overdraft fees when it never had to pay out more funds than were in the customer's checking account or the customer had not in fact overdrawn his or her customer account;

b.    Violated the Electronic Funds Transfer Act (15 U.S.C. § 1693c and § 1693h);

c.    Provided false and misleading account balance information on the bank's website, at the point of sale, and at ATM transactions;

d.    Clearly disclosed and allows its customers to opt out of its overdraft fee program;

e.    Suppressed Material Information concerning its overdraft fee programs;

f.    Charged overdraft fees that have no relationship to the actual costs and risks of providing overdraft protection;

g.    Breached the covenant of good faith and fair dealing with respect to its overdraft fee policies;

h.    Breached the account agreement;

i.    Has been unjustly enriched as a result of the deceptive, unfair and misleading business practices described herein;

j.    Charged charges overdraft fees in an amount that is unconscionable, an illegal penalty, set in bad faith, and usurious;

j.    caused Plaintiffs and the proposed members damages; and

k.    is subject to class-wide injunctive relief.

47.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure a class action is superior to the other available methods for the fair and efficient adjudication of the controversy

because, among other things, it is desirable to concentrate the litigation of the class members' claims to one forum, since it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, as the damages suffered by individual class members may be relatively modest, their interest in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for them to seek individual redress for the wrongs done to them. Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

48.     This action is also properly maintainable pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because BancorpSouth has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate relief with respect to the class as a whole.

## COUNT I

## VIOLATIONS OF THE ELECTRONIC FUNDS TRANSFER ACT

49.     Plaintiffs repeat all previous allegations as if fully set forth herein word-for-word.

50.     BancorpSouth's failure to disclose the fees it charges for making debit card purchases at the point of sale and failure to disclose that it did not process the electronic funds transfers in a timely fashion were in violation of the Electronic Funds Transfer Act (15 U.S.C. § 1693c and §1693h).

51.     The EFTA contains a private cause of action:

Any person who fails to comply with any provision of [the EFTA] . . . is liable to such consumer in an amount equal to the sum of - -

  (1) any actual damage sustained by such consumer as a result of such failure;

  (2) (A) In the case of an individual action, an amount not less than $100 nor greater than $1,000;

Page 14 of 22

      (B)  In the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii) the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser or $500,000 or 1 per centum of the net worth of the defendant; and

    (3)     in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

52.    BancorpSouth's failure to disclose the fees it charges for making debit card purchases at the point of sale or failure to disclose that it did not process the electronic funds transfers in a timely fashion caused actual damages and/or entitles the Plaintiffs and the proposed class to statutory damages, in an amount to be determined at trial.

## COUNT II

## UNJUST ENRICHMENT

53.    Plaintiffs repeat all previous allegations as if fully set forth herein word-for-word.

54.    BancorpSouth withheld material terms and processes relating to its overdraft protection program from consumers prior to enrolling them in it, including the fact that BancorpSouth would always resequence transaction posting to maximize the number of overdraft fees charged under the program, and provided misleading information concerning the account balance information.  BancorpSouth failed to adequately disclose the effective interest rates of overdrafts for small transactions that could trigger overdrafts.

55.    BancorpSouth knowingly and willfully retained benefits and funds from Plaintiffs and proposed class members. BancorpSouth was unjustly enriched by its practice of resequencing positing of transactions from highest to lowest and increasing the number of

overdraft fees charged, charging overdraft fees with no relationship to BancorpSouth's actual costs, and deceptively providing customers with account information.

## COUNT III

## BREACH OF THE COVENANT OF GOOD FAITH & FAIR DEALING

56.     Plaintiffs repeat all previous allegations as if fully set forth herein word-for-word.

57.     Plaintiffs and members of the proposed classes have contracted with BancorpSouth for bank accounts, deposit accounts, checking, ATM, and debit card services, as memorialized in BancorpSouth Deposit Agreement.  BancorpSouth represented to its customers, including Plaintiffs, that it would exercise discretion in the manner in which it chose to post transactions, when, in truth, it always intended to reorder debit transactions and post them high-to-low in order to maximize overdraft fees at the expense of its customers.  This was a breach of the contract.

58.     Each state where BancorpSouth does business imposes an obligation of good faith that banks must exercise toward their depositors and which cannot be disclaimed by agreement[1].

---

[1]     **Arkansas.**    Ark. Code Ann. § 4-4-103(a)(the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure); **Mississippi.**  Miss Code Ann. § 75-4-103(a)(the parties to an agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for lack or failure); **Alabama.**    Code of Ala. § 7-4-103(a)(the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure); **Tennessee.**  Tenn. Code Ann. §47-4-103(a)(the effect of the provision of this chapter may be varied by agreement, to the extent the agreement does not disclaim a bank's responsibility for its own lack of good faith and is not manifestly unreasonable); **Louisiana.**   La. R.S. 10:4-103(a)(the effect of the provisions of this Chapter may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure); **Texas.**  Tex. Bus. & Com. Code §4.103(a)(the effect of the provisions of this chapter may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure); **Missouri.**   § 400.4-103 R.S. Mo. (the effect of the provisions of this article may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure); **Florida.**    Fla. Stat. §674.103(1)(the effect of the provisions of this chapter may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure); **Illinois.**  810 ILCS 5/4-103(a)(the effect of the provisions of this Article may be varied by agreement, but the parties to an agreement cannot

59.     BancorpSouth's obfuscation of its intention to always resequence transactions from largest to smallest so as to maximize overdraft fees to its customers constitutes bad faith and unfair dealing.    BancorpSouth's charging an overdraft fee with no relationship to the amount of costs, or the transaction triggering the overdraft also constitutes bad faith and unfair dealing.

60.     Plaintiffs and members of the proposed classes have performed all, or substantially all, of their obligations under their agreements with BancorpSouth.

61.     Plaintiffs and members of the proposed classes have suffered losses as a result of BancorpSouth's bad faith for which compensatory damages should be awarded to Plaintiffs and the proposed class.

## COUNT IV

## VIOLATIONS OF STATE UNFAIR & DECEPTIVE TRADE PRACTICES ACTS

62.     Plaintiffs repeat all previous allegations as if fully set forth herein word-for-word.

63.     BancorpSouth has engaged in deceptive, unconscionable, unfair, and unconscionable practices, and unfair methods of competition, in violation of the states' laws where it does business.[2]

64.     Plaintiffs and the proposed classes are "consumers" and BancorpSouth is engaged in "trade or commerce" within the meaning of the statutes described above.

---

disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure).

[2]     **Arkansas.**  Ark. Code Ann. § 4-88-101, *et seq.* (Arkansas Deceptive Trade Practices Act); **Mississippi.** Miss Code Ann. 75-24-1, *et seq.* (Mississippi Consumer Protection Act); **Alabama.**  Code of Ala. § 8-19-1, *et seq.* (Alabama Deceptive Trade Practices Act); **Tennessee.**  Tenn. Code Ann. §47-18-101, *et seq.*  (Tennessee Consumer Protection Act); **Louisiana.**  La. R.S. 51:1401, *et seq.*  (Louisiana Unfair Trade Practices and Consumer Protection Law); **Texas.**  Tex. Bus. & Com. Code §17.41, *et seq.*  (Texas Deceptive Trade Practices—Consumer Protection Act); **Missouri.**  § 407.010, R.S. Mo., *et seq.* (Missouri Merchandising Practices Act); **Florida.**  Fla. Stat. §501.201, *et seq.* (Florida Deceptive and Unfair Trade Practices Act); **Illinois.**   815 ILCS 5/1 *et seq.* (Illinois Consumer Fraud and Deceptive Business Practices Act); 815 ILCS 510/1 *et seq.* (Illinois Uniform Deceptive Trade Practices Act).

65.     BancorpSouth was in a superior position relative to its customers to know the benefits and risks associated with its overdraft fee programs, and withheld these affirmative facts and/or uniformly misrepresented its overdraft fee programs.  BancorpSouth acted with the intent to cause consumer reliance on its material representations and omissions.

66.     Plaintiffs and the proposed class members suffered actual damages as a result of BancorpSouth's deceptive and unfair trade acts.    Specifically, as a result of BancorpSouth's deceptive, unconscionable, unfair, practices, and unfair methods of competition, Plaintiffs and the class members have suffered actual monetary losses associated with BancorpSouth's overdraft fee programs.

**COUNT V**

**CONVERSION**

67.     Plaintiffs repeat all previous allegations as if fully set forth herein word-for-word.

68.     BancorpSouth had and continues to have a duty to maintain and preserve its customers' banking accounts and to prevent their diminishments through its wrongful acts.

69.     BancorpSouth wrongfully collected Overdraft Fees from Plaintiffs and members of the proposed class.

70.     BancorpSouth collected these fees by wrongfully taking specific and readily identifiable funds from their customers' bank accounts.

71.     BancorpSouth has assumed and exercised the right of ownership over these funds without any authorization to do so and in hostility to the rights of Plaintiffs and members of the proposed class without legal justification.

72.     BancorpSouth retains these funds unlawfully and without consent of Plaintiffs or the members of the proposed classes.

73.     BancorpSouth intends to permanently deprive Plaintiffs and members of the proposed class of these funds.

74.     Plaintiffs and members of the proposed class properly own these funds, not BancorpSouth, which now claims that it is entitled to their ownership contrary to the rights of Plaintiffs and members of the proposed classes.

75.     BancorpSouth has wrongfully converted these specific and readily identifiable funds.

76.     BancorpSouth's wrongful conduct is of a continuing nature.

77.     As a direct and proximate result of BancorpSouth's wrongful conversion, Plaintiffs and members of the proposed classes have suffered and continue to suffer damages.

78.     As a result of BancorpSouth's actions constituting conversion, Plaintiffs and members of the proposed classes have suffered actual damages for which BancorpSouth is liable. BancorpSouth's liability should be measured by the extent of BancorpSouth's conversion.

79.     These wrongfully collected funds are specifically and readily identifiable.

## COUNT VI

## BREACH OF CONTRACT

80.     Plaintiffs repeat all previous allegations as if fully set forth herein word-for-word.

81.     Plaintiffs and the proposed class and BancorpSouth entered into a contract in connection with their consumer checking accounts.

82.     By charging overdraft fees when in fact the customer's account had not been over drafted, BancorpSouth breached its contract with Plaintiffs and the proposed class.

83.     BancorpSouth breaches its contractual duty to charge overdraft fees only when an overdraft occurs through its policy of charging overdraft fees when it did not have to pay out more funds than were in the customer's consumer checking account.

84.     Plaintiffs and the proposed class have been damaged as a result of BancorpSouth's breach of contract.

## COUNT VII

### UNCONSCIONABILITY, ILLEGAL PENALTY and USURY

85.     Plaintiffs repeat all previous allegations as if fully set forth herein word-for-word.

86.     BancorpSouth provided short-term cash advances of overdraft protection in the form of overdraft fees that translate to triple-digit interest rates, especially when the transaction triggering the overdraft is small.  This violates the usury provisions of the states in which it does business[3].

87.     Plaintiffs have been damaged by Defendants' conduct, in that they paid a usurious rate of interest and are entitled to damages for twice the amount of interest paid.

88.     BancorpSouth's Overdraft Fee bears no reasonable relationship to the costs for BancorpSouth to process overdraft transactions or to an ordinary profit margin.

89.     BancorpSouth's Overdraft Fee is not set in good faith.

90.     As a result of BancorpSouth's wrongful conduct, Plaintiffs and the members of the class have been damaged in an amount to be determined at trial.

## COUNT VIII

### MONEY HAD AND RECEIVED

91.     Plaintiffs repeat all previous allegations as if fully set forth herein word-for-word.

---

[3]     **Arkansas.**  Ark. Const. Art. XIX § 13; **Mississippi.**  Miss Code Ann. 75-17-1 [2]; **Alabama.**  Code of Ala. § 8-8-1; **Tennessee.**  Tenn. Code Ann. §47-14-103; **Louisiana.**  La. R.S. 9:3501; **Texas.**  Tex. Finance Code § 302.002; **Missouri.**  § 408.020, R.S. Mo.; **Florida.**  Fla. Stat. §55.03; **Illinois.**  815 ILCS 205/6 *et seq.*

92.     BancorpSouth received money that was intended to be used for the benefits of Plaintiffs.

93.     The money was not used for the benefit of Plaintiffs.

94.     Defendants have not given the money to Plaintiffs.

95.     As a result of BancorpSouth's conduct, Plaintiffs and the members of the class have been damaged in an amount to be determined at trial.

**JURY DEMAND**

97.     Plaintiffs demand a trial by jury of twelve on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and proposed class members demand a judgment against Defendants jointly and severally as follows:

A.     Injunctive relief enjoining BancorpSouth from charging Overdraft Fees pursuant to its current overdraft policy;

B.     Injunctive relief prohibiting BancorpSouth from engaging in the deceptive trade practices described herein;

C.     Injunctive relief requirement BancorpSouth to modify its present Overdraft Fee Policies and customer disclosures.

D.     Restitution of all overdraft fees paid as a result of BancorpSouth's wrongful overdraft practices, within the applicable statutes of limitations, and in an amount to be determined at trial;

E.     Restitution and disgorgement of all amounts for which BancorpSouth has been unjustly enriched;

F.     Actual damages;

G.      Punitive Damages;

H.      Pre and post-judgment interest in the maximum amount allowable by law;

I.      Statutory damages authorized by the EFTA;

J.      Twice the interest paid;

K.      Attorneys Fees and costs;

L.      All other relief that this Court deems just and proper.

DATED:  February 28, 2012                    **EMERSON POYNTER LLP**

                                             Scott E. Poynter (AR #90077)
                                             Christopher D. Jennings (AR #2006306)
                                             William T. Crowder (AR #2003138)
                                             Corey D. McGaha (AR#2003047)
                                             500 President Clinton Ave
                                             Suite 305
                                             Little Rock, AR 72201
                                             Phone:  (501) 907-2555
                                             Fax:  (501) 907-2556

                                             John G. Emerson (AR #2008012)
                                             **EMERSON POYNTER LLP**
                                             830 Apollo Lane
                                             Houston, TX 77058
                                             Phone: (281) 488-8854
                                             Fax:  (281) 488-8867