# EXHIBIT F

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| MELVIN L. THOMAS III, and BILLY D. LAWSON, JR. on Behalf of Themselves and All Others Similarly Situated,<br><br>      Plaintiff,<br><br>v.<br><br>BANCORPSOUTH BANK and BANCORPSOUTH, INC.,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:12-cv-1016<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT BANCORPSOUTH'S BENCH MEMORANDUM
IN SUPPORT OF SETTLEMENT AGREEMENT**

    BancorpSouth Bank and BancorpSouth, Inc. (collectively, "BancorpSouth") urge the Court to preliminarily approve the Settlement Agreement presented in Plaintiffs' Brief in Support of its Unopposed Motion and Request for Hearing and Requesting Class Certification, Preliminary Approval of the Class Action Settlement, Approval of the Notice Plan, and Scheduling a Date for a Final Fairness Hearing (the "Preliminary Approval Request") because the proposed settlement (the "Thomas-Lawson Settlement") is fair, reasonable, and adequate – satisfying the Rule 23 standard for preliminary approval.

    BancorpSouth also submits this memorandum to fulfill its obligation of candor and to notify the Court of a *prospective* class action lawsuit -- not yet with a certified class -- challenging similar BancorpSouth practices.[1] This lawsuit does not limit or hinder in any way

---

[1] This lawsuit is styled *Shane Swift on behalf of himself and all other persons similarly situated v. BancorpSouth Inc.*, MDL-2036, S.D. Fl. Case No. 1:10-cv-23872-JLK (the "*Swift* Action"), filed on May 20, 2010 in the U.S. District Court for the Northern District of Florida.

this Court's authority to grant the Preliminary Approval Request. The question before this Court is whether the Thomas-Lawson Settlement should be approved, and this question should be viewed through the lens of the strong presumption in favor of class action settlements. The existence of another action in which similar BancorpSouth policies are challenged -- an action brought by a BancorpSouth customer who is not within the Thomas-Lawson Settlement class and can continue to pursue his own claims -- places no legal constraints on this Court's ability to approve the Thomas-Lawson Settlement.

I.  THE THOMAS-LAWSON SETTLEMENT IS DEFINITE, COMPREHENSIVE, AND PROVIDES IMMEDIATE RELIEF TO THE SETTLEMENT CLASS.

The Thomas-Lawson Settlement promises immediate, tangible, substantial benefits for a broad class of BancorpSouth customers, while the *Swift* Action challenging some of the same practices Plaintiffs Thomas and Lawson challenge has not been certified as a class, is still in the early stages of litigation, is a highly uncertain vehicle for ever providing relief to BancorpSouth customers, and certainly will not provide relief in any reasonable foreseeable time frame.

A.  *The Thomas-Lawson Settlement*

Under the terms of the Settlement Agreement, BancorpSouth has agreed to make substantial, immediate relief available to the Class Members.[2] BancorpSouth has agreed to establish a Settlement Fund of $1.75 million dollars. (Settlement Agreement ¶ B(40)). BancorpSouth has also agreed to provide significant additional relief to Class Members, including: (a) a cap on the number of insufficient funds or overdraft fees any customer may incur per banking day; (b) a minimum transaction value below which an overdraft fee will not be charged; (c) additional training for all BancorpSouth customer service representatives regarding

---

[2] Capitalized terms used in this brief are defined in the Settlement Agreement. These definitions are incorporated herein by reference.

both the manner in which overdraft fees are assessed and educating consumers on how the fees are assessed; and (d) granting authority to customer service representatives to waive overdraft fees (Settlement Agreement C(2)(b)). BancorpSouth has projected that this additional relief will save its account holders more than $11.25 million in the five years following the Thomas-Lawson Settlement. (Settlement Agreement ¶ C(2)(b)(vi)).

Additionally, the Thomas-Lawson Settlement is within a range of relief, and includes an allocation methodology, that is the same as has already received federal court approval in the first overdraft fee class settlement to be examined under Fed. R. Civ. Proc. 23. *See Schulte v. Fifth Third Bank*, No. 1:09-cv-06655, 2011 U.S. Dist. LEXIS 83423 (N.D. Ill. July 29, 2011).

### B. The *Swift* Action Is Not Relevant To The Thomas-Lawson Settlement Approval

#### 1. Background Regarding The *Swift* Action

The *Swift* Action was filed in the Northern District of Florida on May 10, 2010, and seeks to represent a fraction of the class presented in the Thomas-Lawson Settlement. The Judicial Panel on Multidistrict Ligation transferred the *Swift* Action to the Southern District of Florida as part of an "overdraft fees" MDL (*In re: Checking Account Overdraft Litigation*, MDL No. 2036, No. 1:09-MD-02036-JLK (S.D. Fla.).[3] Although Shane Swift resides in Pocahontas, Arkansas, he filed his putative class action complaint in the Northern District of Florida,[4] and is represented by lawyers who regularly practice in the Southern District of Florida.

---

[3] As of October 11, 2011, the Judicial Panel on Multidistrict Litigation stopped transferring cases to MDL 2036, and has suspended the Panel's Rule 7.1(a) requiring that the Panel be notified of potential "tag-along" actions. *See* Orders of the Panel, attached hereto as Exhibits A, B, and C. Therefore, this case is not a "tag along" action subject to transfer to MDL 2036.

[4] Any connection Florida may have to the issues raised in this lawsuit pales in comparison to the connections of Arkansas. BancorpSouth records show that there are substantially more Thomas-Lawson Settlement Class Members in the Western District of Arkansas, El Dorado Division (approximately 11,681) than in the entire state of Florida (1,342).

> *2.   The Thomas-Lawson Settlement provides more relief to more BancorpSouth customers than the un-certified, uncertain* Swift *Action ever will.*

The Thomas-Lawson Settlement Class is broader, more inclusive, and states more theories of recovery, than the proposed class in the *Swift* Action. The settlement here resolves potential claims of more BancorpSouth customers, involves more types of transactions and types of fees, and provides broader relief than is requested by the narrower putative class in the *Swift* Action.

First, the types of claims brought on behalf of the putative class they seek to represent are broader than *Swift*. The *Swift* complaint alleges causes of action for breach of contract and/or breach of the implied covenant of good faith and fair dealing, unconscionability, conversion, unjust enrichment, and violation of the Arkansas Deceptive Trade Practices Act ("ADTPA"). (*Swift*, Second Amended Complaint). Thomas and Lawson assert all of those claims, and include claims for violation of the Electronic Funds Transfer Act, illegal penalty, usury, and money had and received.

Second, the Thomas-Lawson Settlement would provide relief to a much larger class of BancorpSouth customers. The proposed settlement class relief here addresses both overdraft fees and insufficient funds fees. The Thomas-Lawson Settlement addresses all transactions for which a BancorpSouth customer can incur overdraft fees or insufficient funds fees, while *Swift* involves only overdraft fees arising only from debit card transactions. And the Thomas-Lawson Settlement provides relief to all current BancorpSouth customers who incurred an overdraft fee or insufficient funds fee during the class period (as well as thousands of former BancorpSouth customers), while *Swift* concerns only BancorpSouth customers who incurred multiple overdraft fees on a single banking day.

Third, the Thomas-Lawson Settlement provides entire classes of relief that have never

been pursued in the *Swift* Action. The Thomas-Lawson Settlement provides for significant BancorpSouth policy changes that will provide substantial monetary benefits to class members going forward. The *Swift* Action, even if successful would not provide such benefits.

   3.  *No relief for BancorpSouth customers is forthcoming in the* Swift *litigation.*

     a.  <u>*Swift* is still in the early stages of litigation.</u>

Despite the fact that it was filed almost two years ago, as of the filing of this memorandum, no class has been certified in the *Swift* Action. Indeed, no hearing on plaintiff's motion for class certification has been set. On December 20, 211, Swift filed his Motion for Class Certification (the "Swift Class Motion"). BancorpSouth filed a response and opposition to Swift's Class Motion on February 3, 2012, (the "Swift Class Opposition," attached hereto as Exhibit D). Swift's reply brief in support of his Class Motion was filed on March 20, 2012. (*See* Order attached hereto as Exhibit E). No hearing has been set on the Swift Class Motion, but BancorpSouth anticipates that such hearing would occur well into April – because briefing on a pending *Daubert* motion for which the MDL Court must schedule a hearing and decide *before* ruling on class certification does not close until April 2, 2010. (*Id.*); *see, e.g., Sher v. Raytheon*, 419 Fed. Appx. 887, 890 (11th Cir. 2011) (stating that "when an expert's report or testimony is critical to class certification, [ ] a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion").

In the unlikely event that the *Swift* litigation ever results in any class-wide benefits, those benefits will be achieved years from now at the earliest. The *Swift* matter has been pending for almost two years; nevertheless, the case is just now at the class certification briefing stage, and discovery is ongoing. (Swift Scheduling Order, attached hereto as Exhibit F). Only two depositions have been taken in the *Swift* Action (one by Swift's counsel, one by BancorpSouth's

counsel). The Swift Action will not be put on a trial calendar until it is remanded to the transferor court where it was originally filed; which cannot happen until sometime in 2013 at the earliest.

        b.    <u>There are fundamental legal weaknesses in Swift's proposed classes.</u>

As compared to the unopposed settlement class in the Thomas-Lawson Settlement, the proposed class in *Swift* has no viable basis for being certified. This is not a case between two competing classes. The case presented before this Court is unopposed while the Swift case is hotly contested. Reasons for this include that Swift is an inadequate class representative, membership in the Swift-proposed class is not ascertainable, and Swift's proposed class does not satisfy Rule 23(b)(3)'s predominance or superiority requirements. (*See generally* Swift Class Opposition, Exhibit D hereto).

Swift proposes the following class definition:

> All BancorpSouth Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to August 13, 2010 (the "Class Period"), maintained a non-commercial account, and incurred an overdraft fee *as a result* of BancorpSouth's practice of re-sequencing debit card transactions from highest to lowest dollar amount.

(*Id*. at p. 10) (emphasis added). The Swift Class Motion initially states that Swift wants to certify a nationwide class, but Swift in fact requests certification for a series of subclasses that add up to less than the whole class as originally pleaded. Significantly, **Swift proposes waiving more than half of claims that absent class members could assert**. As discussed in more detail in the Swift Class Opposition, Swift proposes certifying limited classes, at the cost of abandoning over half of the claims he initially sought to pursue on a class-wide basis. (*Id*. at p. 11). Swift has abandoned more than half of his original claims. This analysis does not even consider the claims that Swift could have, but did not bring, on behalf of his prospective class (including several of those asserted by Thomas and Lawson).

Swift's proposed wholesale abandonment of prospective class members' claims harms the very BancorpSouth account holders he seeks to represent. If the *Swift* class were certified, and Swift somehow successfully brought the limited claims to judgment, that judgment operates as *res judicata*, forever barring class members from recovering on the abandoned or ignored claims or obtaining the forms of relief left behind in the rush to certify a class. *See, e.g., Thompson v. American Tobacco Co.*, 189 F.R.D. 544, 551 (D. Minn. 1999) ("[R]epresentatives who tailored the class claims in an effort to improve the possibility of demonstrating commonality obtained this essentially cosmetic benefit only by presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action") (quotations omitted). Under the course Swift suggests, *res judicata* would automatically wipe out most claims of the customers that Swift seeks to "represent." Because he advocates a class action structured in a way that would benefit him at the expense of prospective class members, Swift is *per se* an inadequate class representative.[5] The Thomas-Lawson Settlement does not suffer from this fatal flaw.

Additionally, the proposed class definition in *Swift* is unworkable because, among other reasons, it fails to specify which BancorpSouth customers are within the class scope and thus required to receive notice. The proposed definition requires an improper determination of the ultimate issue at the class certification stage: inclusion in the class depends on a damages determination that will not even be addressed until after trial (rather than when class notice is to be mailed). (Swift Class Opposition, Exhibit D hereto, at pp. 27-31). Additionally, the proposed

---

[5] Swift is also an inadequate class representative because his claims are not typical of his proposed class members, BancorpSouth has unique defenses to his claims, and a fundamental conflict exists between Swift's theory and the many class members he purports to represent who he acknowledges *benefit* from BancorpSouth's policies. (Swift Class Opposition, Exhibit D hereto, at pp. 18-26).

class definition does not specify the time period involved. (*Id.*)

For these reasons and others set forth in the Swift Class Opposition, the class proposed in the *Swift* Action does not satisfy Rule 23 and should not be certified. As such, this Court is not faced with a choice between two competing prospective classes; at present, there is one viable settlement class that is unopposed that challenges BancorpSouth's policies -- the settlement class proposed by Lawson and Thomas.

## II.   *SWIFT* DOES NOT HINDER APPROVAL OF THE SETTLEMENT.

The existence of an action challenging similar BancorpSouth practices places no legal constraints on this Court's ability to approve the Thomas-Lawson Settlement.

First, the *Swift* Action cannot prevent approval of the Thomas-Lawson Settlement simply because it also challenges BancorpSouth's overdraft policies. "[T]he pendency of a parallel or overlapping class action does not preclude certification and adjudication of a subsequent class action." *Hall v. Midland Group, et al.*, No. 99-3108, 2000 U.S. Dist. LEXIS 16751 (E.D. Penn. Nov. 20, 2000). In *Hall*, the Eastern District of Pennsylvania certified a settlement class despite the pendency of a **previously-filed** putative class action involving similar issues. Like here, the *Hall* settlement class claims were broader and more inclusive than those brought in the earlier-filed case, and the earlier-filed case had not been certified as a class. *See also Schulte v. Fifth Third Bank*, No. 1:09-cv-06655, 2011 U.S. Dist. LEXIS 83423 (N.D. Ill. July 29, 2011) (approving settlement of class related to overdraft procedures despite pendency of similar action in the overdraft fee MDL).

Second, the *Swift* Action is not relevant to the primary question now before this Court -- whether the proposed class settlement is fair, reasonable, and adequate to the parties. "[T]he mere overlap of the classes, without more, fails to render the proposed settlement unfair,

unreasonable, or inadequate." *Trombley v. Nat'l City Bank*, 2011 U.S. Dist. LEXIS 137898, 61-62 (D.D.C. Dec. 1, 2011); *see also In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 516 (E.D.N.Y. 2003) (nothing improper about overlapping classes and releasing the claims of the overlapping classes, where "the expansive reach of the releases could not have been clearer" and observing that there is "no requirement that the Class be specifically apprised of all pending actions covered by the releases, as long as the releases themselves were reasonably clear").

In fact, the Court in *Trombley* approved a settlement of an overdraft-related class action over the objections of a putative class representative in a non-certified class action that was pending in the very same MDL where *Swift* is pending. In reaching its conclusion to certify a settlement class, the *Trombley* Court noted that "[e]ven though any claims involving National City arising out of the same transactions would be extinguished in the multi-district litigation, class members retained the prerogative of opting-out of this settlement." *Trombley*, 2011 U.S. Dist. LEXIS 137898 at *62. Likewise here, putative class members have the ability to opt out if they believe that they can achieve a better result elsewhere (or for any other reason).

Most importantly, settlements of class actions -- when otherwise meeting the requirements for certification -- are favored. "The settlement class device has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims," where the claims are small. *In re Prudential Sec. Ltd. P'ship Litig.*, 163 F.R.D. 200, 205 (S.D.NY. 1995). Certification of a settlement is appropriate despite the pendency of related, overlapping or competing classes. *See* Manual for Complex Litigation (4th) § 21.612 ("Settlement will also effectively terminate other pending individual and class actions subsumed in the certified settlement class."); *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*,

314 F.3d 1180 (10th Cir. 2002) (affirming certification of settlement class despite objections and additional pending putative class actions); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 346 (3d Cir. 1998) (affirming certification of settlement class); *Larson v. Sprint Nextel Corp.*, No. 07-5324, 2010 U.S. Dist. LEXIS 3270 (Jan. 15, 2010, D.N.J.) (approving settlement resolving multiple pending related class actions); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1325 (S.D. Fla. 2005) (approving settlement class over objections of competing putative class members). So, too, the strong public policy favoring settlement of class action claims supports certification of this settlement class. *See, e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits."); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context.") (internal quotations omitted); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *Colella v. Univ. of Pittsburgh*, 569 F. Supp. 2d 525, 530 (W.D. Pa. 2008) ("The strong public policy and high judicial favor for negotiated settlements of litigation is particularly keen in class actions") (internal quotation marks omitted). "Due to their uncertainty, difficulty of proof, and length, and in the interest of judicial economy, class action . . . suits should be settled whenever possible, as soon as possible." *In re Corrugated Container Antitrust Litig.*, 556 F. Supp 1117, 1157 (S.D. Tex. 1982), aff'd, 687 F.2d 52 (5th Cir. 1982).

As all of these courts recognize, a class settlement found fair, reasonable, and adequate should be favored over an uncertified, prospective litigated class. In short, certification of a settlement class in this case is favored and the *Swift* Action does not change the equation or result.

### III. CONCLUSION

The Thomas-Lawson Settlement is fair, reasonable, adequate, and in the best interest of the proposed class. It promises immediate, tangible, substantial benefits for a broad class of BancorpSouth customers. For all of these reasons, BancorpSouth requests that the Court grant Plaintiffs' Preliminary Approval Motion.

Respectfully submitted this 23rd day of March, 2012.

                    **PARKER, HUDSON, RAINER & DOBBS, LLP**

                    **/s/** *Eric Jon Taylor*
                    Eric Jon Taylor
                    Georgia Bar No. 699966
                    ejt@phrd.com
                    William J. Holley, II
                    Georgia Bar No. 362310
                    wjh@phrd.com

1500 Marquis Two Tower
285 Peachtree Center Avenue N.E.
Atlanta, Georgia 30303
Telephone:  (404) 523-5000
Facsimile:  (404)522-8409

                    Floyd M. Thomas, Jr.
                    Thomas & Hickey LLP
                    423 North Washington Avenue
                    El Dorado, Arkansas 71730

                    Walter B. Cox
                    Cox, Cox & Estes PLLC
                    75 North East Avenue
                    Suite 400
                    P.O. Drawer 878
                    Fayetteville, Arkansas 72701

                    Gary R. Burbank
                    Burbank, Dodson & Barker PLLC
                    215 North Washington Avenue
                    El Dorado, Arkansas 71730


                    *Counsel for Defendants BancorpSouth Bank and BancorpSouth, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **DEFENDANT BANCORPSOUTH'S MEMORANDUM IN SUPPORT OF SETTLEMENT** with the Clerk of Court using the CM/ECF system which automatically sent e-mail notification of such filing to the following attorneys of record, each of whom is a registered participant in the Court's electronic notice and filing system:

>Scott E. Poynter
>Christopher D. Jennings
>William T. Crowder
>Corey D. McGaha
>EMERSON POYNTER LLP
>500 President Clinton Ave
>Suite 305
>Little Rock, AR 72201
>scott@emersonpoynter.com
>cjennings@emersonpoynter.com
>wcrowder@emersonpoynter.com
>cmcgaha@emersonpoynter.com
>
>John G. Emerson
>EMERSON POYNTER LLP
>830 Apollo Lane
>Houston, TX 77058
>jemerson@emersonpoynter.com

This 23rd day of March, 2012.

>/s/ *Eric Jon Taylor*
>Eric Jon Taylor