UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

—————————————————————
:
IN RE: CHECKING ACCOUNT              :
OVERDRAFT LITIGATION                  :
                                                        :
MDL No. 2036                               :
—————————————————————:
                                                        :
THIS DOCUMENT RELATES TO:   :
                                                        :
*Casayuran, et al. v. PNC Bank, National*   :
*Association.*                                      :
S.D. FL. Case No. 10-cv-20496-JLK   :
                                                        :
*Cowen, et al. v. PNC Bank, National*      :
*Association*.                                     :
S.D. FL. Case No. 10-cv-21869-JLK   :
                                                        :
*Hernandez, et al. v. PNC Bank, N.A.*    :
S.D. FL. Case No. 10-cv-21868-JLK   :
                                                        :
*Matos v. National City Bank*              :
S.D. FL. Case No. 10-cv-21771-JLK   :
—————————————————————:

**DEFENDANT PNC BANK, N.A.'S REPLY**
**IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF ARTHUR OLSEN**

**I.      INTRODUCTION**

           Plaintiffs' opposition to PNC Bank, N.A.'s (PNC) Motion to Strike the

Declaration of Arthur Olsen boils down to a single argument: because Olsen's opinions were

accepted in *Gutierrez v. Wells Fargo & Co.,* No. 07-05923, 2010 U.S. Dist. LEXIS 29117 (N.D.

Cal. Mar. 26, 2010), they should be accepted in this case.

           But *Gutierrez* is a different – still pending – case, in a different jurisdiction,

involving application of unique California-specific law.  Judge Alsup's findings in *Gutierrez* do

not alter Plaintiffs' obligation to demonstrate, at this stage, an ability to prove damages on a

class-wide basis using a reliable methodology that actually fits the facts of this case – a requirement that Plaintiffs simply cannot meet.

When evaluated under the proper legal standard, Mr. Olsen's Declaration must be stricken.  His damage analysis (1) fails to identify a reliable methodology appropriate to calculate class damages *in this case*; (2) ignores Plaintiffs' own testimony and stated preferences concerning posting order; and (3) fails to account for refunds and other Plaintiff-specific issues that go directly to the issue of whether Plaintiffs have even suffered *any* damages – let alone whether those damages could be proven in a class-wide manner.

II.   **ARGUMENT**

    A.   *Gutierrez* **Does Not Obviate Plaintiffs' Rule 23 Obligation to Demonstrate a Reliable Methodology for Proving Class-wide Damages**

Although all defendants have made this point in previous court filings, it bears repeating: this case is not *Gutierrez*.  That case involved different law, different parties, and different damages theories.  *Gutierrez* is not binding on this Court and Plaintiffs' constant invocation of the case does not make it so.  *Gutierrez,* moreover, is on appeal and pending review by the Court of Appeals of the Ninth Circuit.

Plaintiffs take it on faith that this Court will qualify Olsen's conclusions in support of class certification on the basis of *Gutierrez*.  For this reason, Plaintiffs do not bother to identify an alternative posting scenario.  Utilizing the *Gutierrez* "2A" analysis, Olsen goes through the motions of demonstrating each named Plaintiff's alleged damages (itself a flawed analysis, as discussed below), only to disavow this methodology for this case, leaving PNC and the Court to wonder how, precisely, Plaintiffs intend to prove class-wide damages.  (Olsen Decl. ¶ 49 ("I have applied the same methodology as I used in the *Gutierrez* case . . . .  I do not mean to suggest that this is the proper damage analysis for this litigation.").)

This trust-me approach toward proving class-wide damages is improper, and violates Rule 23 as well as *Daubert.  See Wiesfeld v. Sun Chem. Corp.*, 84 Fed. Appx. 257, 261-64 (3d Cir. 2004) (affirming denial of class certification where plaintiff's expert failed to provide an "extensive empirical investigation and economic analysis" of his proposed damages models) (internal quotation marks omitted); *Kottaras v. Whole Foods Mkt., Inc.*, ___F. Supp. 2d ___, 2012 WL 259862, at *11 (D. D.C. Jan. 30, 2012) (denying class certification where the plaintiff's "proposed methodology is not sufficiently developed" and his expert failed to "tell the Court the precise [damage] analyses he intended to undertake"); *Reed v. Advocate Health Care*,

2

268 F.R.D. 573, 593 (N.D. Ill. 2009) (determining whether an expert's methods are reliable is not a matter "strictly for the jury").

Rather, Plaintiffs must show – at the class certification stage – a viable measure for reliably providing damages using common proof. *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 317 n.17 (3d Cir. 2008) (a concern for merits avoidance "should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements"); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 26 (1st Cir. 2008) ("district court must engage in a searching inquiry into the viability of [a novel or complex damages] theory" at class certification state).

Nothing in *Gutierrez* permits Plaintiffs to ignore their obligations under Rule 23 and *Daubert*. Put differently: just because Olsen's opinions were accepted by Judge Alsup does not mean that they should be accepted by this Court.

**B.      Olsen Cannot Prove Class-wide Damages In This Case**

Plaintiffs cite *Gutierrez* not merely to bolster Olsen's conclusions, but for the proposition that Plaintiffs need not identify an alternative posting order at this stage. Rather, they contend that the finder of fact will determine what posting order PNC should have used. (Pl. Opp. Br. [DE No. 2574] at 7-8.) In their telling, Olsen is merely a statistician, assigned to crunch the numbers in whatever order the jury ultimately determines is appropriate. But even assuming that this is a proper standard under *Daubert* at this stage (which it is not), Olsen's analysis still fails the test of admissibility.

**1.      Olsen's 2A Analysis Lacks Documentary Support and Cannot Be Used in this Case as a Model for Calculating Compensatory Damages**

The only damages analysis contained in Olsen's Declaration is a modified version of his 2A analysis from *Gutierrez*, which Plaintiffs' wrongly contend they can engraft onto this case and satisfy their obligations under *Daubert*. But there are numerous reasons why Olsen's 2A analysis is legally insufficient in this case.

To begin, Olsen's threadbare Declaration provides no documentary support, and only the barest of narrative, describing how he applied his 2A analysis to calculate Plaintiffs' damages. Olsen does not identify the specific overdrafts that allegedly caused each of the named Plaintiffs' harm, thus depriving PNC of the ability to test the validity of his calculations or to identify specific overdrafts that may be subject to unique defenses, as with Mr. Casayuran.

3

(Mot. to Strike [DE No. 2474] at 5.)  Olsen also admits to "modifying" his 2A analysis for this case, but does not bother to identify what changes he made to the analysis.  (Olsen Decl. ¶ 50.) His Declaration is bereft of the most basic information that would enable PNC and the Court to understand how exactly he calculated Plaintiffs' damages.

Even putting aside these flaws, there are substantive differences between *Gutierrez* and this case that make it improper to apply Olsen's 2A analysis, modified or not, to determine class damages here.  *Gutierrez* involved claims under California's Business & Profession Code, which permits statutory restitution, a punitive theory of recovery measuring damages by a defendant's *gain*, not a plaintiff's *actual injury*.  *See* Cal. BPC §§ 17200, *et seq.* Section 17203; *People, ex rel v. Beaumont Inv., Ltd.*, 111 Cal. App. 4ᵗʰ 102, 134-135 (2003) (Section 17203 "is designed to penalize a defendant for past unlawful conduct. . . .").

In this case, however, Plaintiffs' common law state claims incorporate *loss-based* theories of recovery.  For those theories, the relevant damages measure is "an amount reasonably calculated to make [the plaintiff] whole and neither more nor less. . . ."  24 WILLISTON ON CONTRACTS § 64:1 (4ᵗʰ ed.).[1]  Thus, unlike in *Gutierrez*, Plaintiffs here must show that Olsen can calculate *compensatory* damages based on common proof.  This analysis includes not only a determination of the differential in the number of overdraft transactions between the real world and a hypothetical, alternative transaction ordering system, but also an assessment of the additional costs associated with the substitute order.

Olsen's Declaration fails to account for the pecuniary and non-pecuniary effects of his 2A analysis.  Reordering checks by putting them after debit-card transactions will have the effect of causing additional returned checks, leading to increased third-party returned check fees, late fees, and negative credit reporting.  Olsen makes no effort in his Declaration to account for the effect of such penalties – and there is no evidence from *Gutierrez* or elsewhere that Olsen can account for such penalties.

Plaintiffs respond by arguing that there is no evidence that the third-party effects of Olsen's 2A analysis would result in any harm "to any class member under any alternate posting scenario."  (Pl. Opp. Br. at 17.)  But this is backwards.  It is *Plaintiffs*, not PNC, who

---

[1]    *See also Corl v. Huron Castings, Inc.,* 544 N.W.2d 278, 280, 286 (Mich. 1996); *State ex rel. Stacy v. Batavia Local Sch. Dist. Bd. of Educ.*, 829 N.E.2d 298, 305 (Ohio 2005).

must demonstrate that they can prove class damages using a reliable methodology: "The burden is not on the defendant to show the difficulty of proving each class member's damages; *the burden is on the plaintiffs to show the ease of doing so*." *Shelley v. AmSouth Bank,* No. CIV-A-97-1170-RV-C, 2000 WL 1121778 at * 10 (S.D. Ala. July 24, 2000) (emphasis added). If Olsen cannot account for the additional harm to PNC customers that would result from utilizing his 2A analysis – or any alternative posting order – then his methodology is not helpful to the trier of fact and his opinions must be stricken.

> **2.    Olsen Cannot Prove Class-wide Damages Under Any Other Alternative Posting Order**

There is also nothing in Olsen's Declaration that remotely establishes his ability to calculate class damages under any other alternative posting scenario. What if, for example, the finder of fact determines that Plaintiffs' damages should be limited to the time period when Plaintiffs were unaware of PNC's policies? There is nothing in Olsen's report, or his history, to suggest that he can calculate class damages on that basis. Likewise, there is nothing in Olsen's Declaration demonstrating that he can re-order checks based either on date or check number. Thus, if a jury were to determine that PNC should have used a true chronological posting order for all transactions (in which checks are posted before later-transacted debits are transacted come first), Olsen would be unable to calculate class damages. These are only a few of the alternative posting scenarios that a jury might conceivably determine is the appropriate measure for calculating damages.

In fact, far from establishing the reliability of Olsen's opinions, Plaintiffs' contention that they need only prove an ability to calculate class damages under an alternative posting order to be determined by the jury demonstrates the flaws in Olsen's methodology. Olsen cannot even demonstrate the ability to calculate class damages under his 2A analysis – let alone any of the other alternative posting orders that a jury might conceivably deem proper. For this reason, Olsen's Declaration should be stricken.

> **C.    Olsen's Calculations Do Not Fit the Facts of the Case**

Not only is Olsen unable to calculate class-wide damages using his 2A analysis, that analysis does not fit Plaintiffs' liability theories or the facts of the case, as required under *Daubert* and Rule 702.

Under Olsen's 2A analysis, debit card transactions are reordered in chronological order and processed before checks and ACH transactions, which are grouped in high-low order.

By contrast, at PNC debit card transactions as well as checks are processed together.  Thus, Olsen's 2A analysis re-orders *both* debit card transactions – which are at issue in this case – *as well as* checks and ACH transactions, which are not at issue.  There is no factual basis for Olsen to employ such a methodology here, where most of the Plaintiffs have stated in their deposition testimony that PNC should have re-ordered transactions in a chronological method.  (Mot. to Strike at 4.)

Not only does Olsen's re-ordering of checks and ACH transactions after debit card transactions have the net effect of penalizing PNC for *lawful* conduct, there is no logical basis for placing such transactions after debit card transactions in his alternative posting order.  If anything, checks – which are generally written days before they are presented to the bank, and thus prior to the occurrence of debit card transactions – ought to be paid first in a true chronological posting order.  Olsen's imprecise and ill-fittings damages model fails to meet *Daubert*'s strict requirements.  *See Boca Raton Cmty. Hosp., v. Tenet Health Care Corp.,* 582 F.3d 1227, 1233-1234 (11th Cir. 2009) (excluding expert testimony for lack of "fit" where plaintiffs' expert measured damages from activity that was not unlawful under plaintiffs' liability theory.)[2]

Olsen also completely ignores the effect of refunds in his Declaration.  Olsen describes in detailed fashion how he accounted for refunds in *Gutierrez* by using either a Last-in-First-Out ("LIFO") or a 30-day method.  (Olsen Decl. ¶ 26.)  But then he states, "I have not applied either the '30-day' or 'LIFO' methods for crediting reversals." (Olsen Decl. ¶ 52, n 5.)  His opinion is devoid of any attempt to calculate refunds.

As stated in PNC's opening brief, this is not a theoretical problem.  Plaintiff Casayuran called PNC on one occasion to complain about a particular transaction and resulting overdraft fee, and later admitted to PNC that the transaction and overdraft fee had been properly assessed.  (Mot. to Strike at 5.)  Similarly, Olsen calculated that Mr. Casayuran suffered $108 in

---

[2]     Plaintiffs respond to this argument by disputing that their "subjective preferences [are] legally relevant."  (Pl. Opp. Br. at 14.)  But this position was explicitly rejected by the Eleventh Circuit in *Shelley*, a posting order case wherein the Court expressly held that depositor's expectations were relevant.  *Shelley v. AmSouth Bank*, No. 97-1170, 2000 WL 1121778, * 11 (S.D. Ala. July 24, 2000), *aff'd* 247 F. 3d 250 (11th Cir. 2001) (Table).

"harm," but PNC's records establish that the bank refunded him $108 in March 2009 alone. *Id*. Thus, it is not apparent from the face of Olsen's Declaration that Mr. Casayuran has even suffered any damage.

Plaintiffs respond, without any supporting case law, that it is PNC's obligation to "prove" refunds. (Pl. Opp. Br. at 15.) But Plaintiffs again have it backwards. It is Plaintiffs' duty to demonstrate that they can prove compensatory damages for the class, using a reliable methodology. The requirement that a fee not be counted when it had been refunded is not an affirmative defense, but rather an element of Plaintiffs' burden of proving damages. The methodology that Plaintiffs employ to prove but-for damages must, in other words, account for refunds at the outset, but it fails to do so.

> **D.** **Olsen's Opinions Will Not Meaningfully Assist the Trier of Fact**

Plaintiffs do not dispute PNC's argument that Olsen is unqualified to render an opinion on the proper posting order to be utilized in this case. Rather, they contend that Olsen's opinions are merely being offered to demonstrate his ability to calculate damages using statistical programs that he has developed (for a different case). (Pl. Opp. Br. at 6.) This admission further underscores why Olsen's opinions are inadequate to prove class certification.

As described above, the numerous flaws in Olsen's purported damage calculations for this case vitiate Plaintiffs' claim that they can prove class-wide damages. Olsen's 2A analysis – the only damages analysis Olsen provides in his Declaration– lacks documentary support, excludes refunds, and ignores Plaintiffs' own testimony. When stripped of this plainly insufficient damage analysis (which Olsen admits may not even be the proper damages analysis for this case), Olsen's Declaration becomes an empty letter. If Olsen cannot demonstrate an ability to calculate class-wide damages using a reliable methodology and, as Plaintiffs acknowledge, he is unqualified to render an opinion as to the posting order that PNC should have used –or as to any other topic – then his opinions are meaningless and will not assist the trier of fact.

III.    **CONCLUSION**

For these reasons, as well as the reasons set forth in its opening brief, PNC respectfully requests that the Court strike the Declaration of Arthur Olsen submitted in support of Plaintiffs' Motion for Class Certification.

Respectfully Submitted,

/s/  *Michael R. Tein*
Michael R. Tein
Florida Bar No.: 993522
tein@lewistein.com
Guy A. Lewis
Florida Bar No.: 623740
lewis@lewistein.com
Kathryn A. Meyers
Florida Bar No.: 0711152
kmeyers@lewistein.com
LEWIS TEIN, P.L.
3059 Grand Avenue, Suite 340
Coconut Grove, Florida 33133
Tel: (305) 442-1101
Fax: (305) 442-6744

/s/  *Darryl J. May*
Darryl J. May
Philip N. Yannella
Marcel S. Pratt
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
Tel.:  (215) 665-8500
Fax:  (215) 864-8999
may@ballardspahr.com
yannellap@ballardspahr.com
prattm@ballardspahr.com

and

Mariah E. Murphy
BALLARD SPAHR LLP
A Pennsylvania Limited Liability Partnership
210 Lake Drive East
Cherry Hill, NJ 08002-1163
Tel : (856) 761-3400
Fax:  (856) 761-1020
murphym@ballardspahr.com

*Attorneys for Defendants PNC Bank, N. A. and National City Bank*

Dated:  April 2, 2012

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

———————————————————  :
                                                   :
**IN RE: CHECKING ACCOUNT**        :
**OVERDRAFT LITIGATION**             :
                                                   :
**MDL No. 2036**                             :
———————————————————  :
                                                   :
**THIS DOCUMENT RELATES TO:**    :
                                                   :
*Casayuran, et al. v. PNC Bank, National*   :
*Association.*                               :
S.D. FL. Case No. 10-cv-20496-JLK     :
                                                   :
*Cowen, et al. v. PNC Bank, National*      :
*Association.*                               :
S.D. FL. Case No. 10-cv-21869-JLK     :
                                                   :
*Hernandez, et al. v. PNC Bank, N.A.*      :
S.D. FL. Case No. 10-cv-21868-JLK     :
                                                   :
*Matos v. National City Bank*               :
S.D. FL. Case No. 10-cv-21771-JLK     :
———————————————————  :

       I hereby certify that on April 2, 2012, I electronically filed the foregoing Reply in Support of PNC Bank, N.A.'s Motion to Strike the Testimony of Arthur Olsen Submitted in Support of Plaintiffs' Motion for Class Certification with the Clerk of Court using CM/ECF, and that it is being served this day on counsel of record via ECF Notices of Electronic Filing.

                                      */s/ Mariah Murphy*
                                       Mariah E. Murphy