UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

| | |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION | ) ) ) |
| MDL No. 2036 *Fourth Tranche* | ) ) ) |
| THIS DOCUMENT RELATES TO: | ) ) ) |
| *Shane Swift v. BancorpSouth, Inc.*,[1] S.D. Fla. Case No. 1:10-cv-23872-JLK | ) ) ) |

**BANCORPSOUTH BANK'S REPLY BRIEF IN SUPPORT OF MOTION TO STRIKE THE DECLARATION OF ARTHUR OLSEN IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND INCORPORATED MEMORANDUM OF LAW**

**I.   INTRODUCTION**

Plaintiff Shane Swift's ("Swift" or "Plaintiff") Opposition to Defendant BancorpSouth Bank's ("BancorpSouth") Motion to Strike the Declaration of Arthur Olsen (the "Opposition") avoids the underlying defect of Olsen's testimony – it cannot carry the weight Plaintiff's class certification motion has placed upon it. Olsen's Declaration provides no real support on the critical questions presented by Plaintiff's class certification motion.

Swift spends an inordinate amount of time briefing minor or inconsequential issues, all while ignoring the only real question presented by the motion to strike: can Olsen's testimony

---

[1] BancorpSouth, Inc. is not a proper defendant in this matter. Counsel for Swift and BancorpSouth Bank discussed the proper BancorpSouth entity to name in this matter in 2010, and Swift properly identified the defendant herein as BancorpSouth Bank in his Second Amended Complaint (DE# 994).

help the Court render a decision on Plaintiff's class certification motion. Plaintiff ignores the question because the answer is obvious – it cannot. Indeed, the ultimate impact of Olsen's testimony is not discussed in Swift's Opposition at all. Swift improperly seeks to use Olsen's testimony to prop-up his ill-conceived class definition, even though Swift now contends that Olsen's testimony is relevant only to calculate damages for individual plaintiffs (if at all). As such, because Olsen's testimony cannot assist the fact finder in determining the only issue currently before the Court – whether a class should be certified -- the Court should grant BancorpSouth's Motion to Strike the Declaration of Arthur Olsen in Support of Plaintiff's Motion for Class Certification (the "Motion to Strike").[2]

## II.   ARGUMENT AND CITATION OF AUTHORITY

**A.   Swift's Opposition is a bait-and-switch: it claims Olsen's testimony is only to calculate damages, but his class certification briefing claims that Olsen can cure an otherwise defective class definition.**

Despite his representations in the Opposition, Swift is, in fact, seeking to use Olsen's testimony to prop up a poorly-conceived and impermissible class definition. Swift has made clear in his class certification briefing that Olsen's testimony is critical to help Swift define who is within his proposed class and who is not. As BancorpSouth argued in its opposition to Swift's class certification motion, Olsen's testimony cannot save Swift's flawed class definition. Perhaps

---

[2] BancorpSouth has also moved to stay all class-related proceedings in this matter because the Western District of Arkansas has already certified a settlement class that subsumes Swift's proposed class herein. (MDL Doc. 2602). The Honorable Robert T. Dawson of the United States District Court for the Western District of Arkansas has certified, for settlement of overdraft fee claims, a nationwide class of BancorpSouth customers that includes the putative class members here. *Thomas, et al. v. BancorpSouth Bank, et al.*, 1:12-cv-1016-RTD (W.D. Ark.) (DE# 22). Judge Dawson also set a final fairness hearing on the preliminarily approved *Thomas* settlement for July 30, 2012. (*Id.*) Both Swift's class certification motion and BancorpSouth's Motion to Strike should be held in abeyance until after the *Thomas* final fairness hearing.

recognizing that Olsen's testimony cannot accomplish such a lofty goal, now that Olsen's testimony has been challenged, Plaintiff has retreated to the more modest proposition that Olsen's testimony can assist the fact finder in calculating damages. Swift represents Olsen's testimony as narrow and tailored in the Motion to Strike, but reverses field and simultaneously posits it as broad and widely applicable for the purpose of identifying the putative class. Olsen's testimony cannot accomplish what Swift claims it can in his class certification briefing, and to the extent that Olsen seeks only to opine on damages, his testimony is premature. A damages calculation is neither relevant to the current inquiry (whether a class can be certified) nor helpful to the fact-finder for the current inquiry (the Court). As such, Olsen's testimony should be excluded at this stage of the proceedings.

>   1. Swift's Opposition and his class certification briefing make contradictory claims regarding the purpose of Olsen's testimony.

In the Opposition, Swift demurely claims that he offers "Olsen's testimony for [a] very limited purpose; i.e. to show the ability to make the calculations Olsen performs using BancorpSouth's data," (Opp., MDL Doc. 2578 at 7) (emphasis added). Swift states that Olsen's testimony will "assist the trier of fact in calculating the amount of damages," (*id.* at 1), but does not explain how calculating damages is relevant to any of the elements of Rule 23. He also makes clear that Olsen "does not offer an opinion regarding a proper alternate posting order," despite Plaintiff's position that posting order is an inherent part of the class definition (*Id.* at 2).

Swift's class certification briefing tells a different story, however. There, Swift proposes to use Olsen's testimony to:

- "detail[] precisely how Class members will be identified using the Bank's data." (MDL Doc. 2576 at 3) (emphasis added);

3

- "formulate calculations that can <u>identify members of the Class</u> . . ." (MDL Doc. 2271, Motion for Class Certification at 40) (emphasis added); and

- specifically to "<u>identify Class members</u> . . ." (*id.* at 39) (emphasis added).

Therefore, although Swift feigns in his Opposition that the Olsen Declaration is only for the "very limited purpose" of damages calculation, he actually seeks to use Olsen to buttress his untenable class definition. Even more, Swift says Olsen *identifies* class members.

    2.    <u>Olsen's testimony cannot carry the burden Swift has assigned to it in his class certification briefing.</u>

The importance of Swift's improper use of the Olsen testimony cannot be overstated; Olsen is the faulty lynchpin with which Swift hopes to hold his class certification motion together. In his class certification briefing, Swift manipulates Olsen's testimony, claiming it can identify purported class members. Without this manipulation, Swift completely fails to demonstrate how a class can be identified among the various scenarios articulated by Olsen, but not yet endorsed – or even advocated – by anyone in this lawsuit.

Even though Swift is using Olsen's testimony regarding alternative posting orders to state that he can identify a class, Swift now readily admits that "the fact-finder will determine which alternative posting order best comports with BancorpSouth's good faith duties." (Opp., MDL Doc. 2578 at 8). These concepts are completely contradictory. Due to Swift's poorly-conceived class definition, the class can *only* be identified by first deciding which posting order allegedly is proper.[3] Because Swift admits that the proper posting order will be decided by the fact-finder, he

---

[3] The proposed class definition fails to specify, in any objective way, which BancorpSouth customers are within the class scope and supposed to get notice. The actual terms proposed are circular: inclusion in the class depends on a damages determination that will not even be

4

admits that the class cannot be identified until <u>after</u> liability has been established.[4] Olsen does not help identify the purported proper posting order; in fact, he says he cannot. (Olsen Decl. MDL Doc. 2275-1, ¶ 46, 49).

Critically, class membership is completely dependent on what posting order is used (or which "Scenario" Olsen uses). For example, there are BancorpSouth customers who *may not* be class members if the jury determines that Olsen's Scenario 2A is the proper posting order but *may* be class members if the jury determines that Olsen's Scenario 1A is the proper posting order. Therefore, if the Court certifies a class now based on Scenario 2A as the hypothetical "correct" posting order, but the jury later decides that Scenario 1A is the correct posting order, those customers identified as damaged using Scenario 1A but not identified as damaged under Scenario 2A never would have received class notice (because only those customers within the class definition according to Scenario 2A calculations would receive notice). If customers do not receive notice, they are not bound by the outcome of the class action.[5] <u>See</u>, <u>e.g.</u>, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997). This could open up BancorpSouth to multiple re-litigation of this case, thereby defeating the efficiency goals of the class action process.

---

addressed until after trial (rather than when class notice is to be mailed). (*See, e.g.*, MDL Doc. 2446, Opp. to Mtn. for Class Cert. at 27–32).

[4] Olsen's inability to advance a proper posting order does nothing to advance Swift's motion for class certification. "If [Olsen] admittedly has no answer to that question, we can safely disregard what he has to say." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011).

[5] Olsen only testified that Swift was "harmed" by Scenario 2A, making no mention of harm under any other scenario. (Olsen Decl., MDL Doc. 2275-1 ¶¶ 49, 54); (Opp. at 6) ("Olsen makes an exemplar calculation . . . when compared with <u>one</u> of the possible alternative posting orders.") (emphasis added). If the trial results in any of the other scenarios as the proper posting order, it is possible that Swift would not be "harmed" under that scenario and, thus, *cannot act a class representative*. Again, Swift's proposed use of Olsen only invites re-litigation of the issues in this case.

Despite the problems created by the uncertainty as to membership within the class under Olsen's various scenarios, neither Olsen nor Swift takes a position as to the proper posting order.[6] Indeed, despite all the weight Swift puts on Olsen's testimony to identify a class, Olsen definitively does <u>not</u> state that he can identify an objective class here. (Olsen Decl., MDL Doc. 2275-1 ¶ 46) (Olsen only can identify customers who were "harmed" "compared to an alternative posting order" This identifies no one in any real sense of the word, certainly not for class definition purposes.).

At most, Olsen states that he could identify individual customers who have been "damaged" under various scenarios – but he explicitly stated that he has not done so. *Id.* Thus, Olsen's testimony does not "assist[] the trier of fact . . . to understand the evidence or to determine a fact in issue." *United States v. Masferrer*, 367 F. Supp. 2d 1365, 1371 (S.D. Fla. 2005) (quoting *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004)). Instead, all Olsen's testimony really shows is that Olsen knows how to do math and can rearrange transactions in any order he is instructed to rearrange them – it does not assist the fact finder in identifying the members of Swift's purported class.

In the terms of the *Daubert* standard, Olsen's testimony does not "fit" the purpose for which Swift is trying to use it, *i.e.* to identify a class. Under the *Daubert* standard, "[t]he party

---

[6] Even if Olsen's class turned out to be over-inclusive rather than under-inclusive, it would still be an invalid class definition. *See, e.g.*, *Freeman v. Motor Convoy, Inc.*, 700 F.2d 1339, 1347 (11th Cir. 1983) (noting "the potential unfairness to class members of being bound by a judgment where the certified class is overbroad."); *Kemblesville HHMO Ctr., LLC v. Landhope Realty Co.*, 2011 U.S. Dist. LEXIS 83324, *14 (E.D. Pa. July 28, 2011) ("Overbroad class descriptions violate the definiteness requirement because they 'include individuals who are without standing to maintain the action on their own behalf.'"). Indeed, "[c]ertification should be denied when determining membership in the class would essentially require a mini-hearing on the merits of each case." *Id.* at *15.

offering the expert testimony has the burden of demonstrating that the testimony is 'relevant to the task at hand.'" *Boca Raton Cmty. Hosp., Inc v. Tenet Health Care Corp.*, 582 F.3d 122, 1232 (11th Cir. 2009). The task at hand here -- at the class certification stage -- is identifying the purported class. But "if an expert opinion does not have a 'valid scientific connection to the pertinent inquiry' it should be excluded because there is no 'fit.'" *Id.* That is exactly the case here; Olsen's testimony should be excluded at his stage because Olsen is *incapable* of doing the only thing that Swift needs him to do – identify a class.

### 3. Olsen's testimony regarding damages is premature.

Swift's Opposition repeatedly insists that Olsen is testifying only to quantify damages. (Opp., MDL Doc. 2578 at 1, 3, 6, 7, 8, 10, 18, 19). If that is so, his testimony simply is not relevant now, and should be disregarded. Liability has not been determined, and the only question before the Court is whether Swift's proposed class should be certified. A damages calculation is neither relevant to the only question currently before the Court, nor helpful to the fact-finder in any way. As such, to the extent that Plaintiff is now advocating a narrow use of Olsen's testimony, it should be excluded at this stage of the proceedings because it is not relevant, necessary, or applicable. Olsen's testimony *may* be competent to identify damages for individual plaintiffs under a variety of circumstances, when or if damages calculations become necessary. At this point, they are not.

### B. Incorporation of other MDL defendants' filings is proper.

Swift's objection to BancorpSouth's incorporation of other MDL defendants' filings in opposition to Olsen's testimony is unfounded. (Opp., MDL Doc. 2578 at 12). BancorpSouth incorporates those filings only to the extent they demonstrate flaws in Olsen's work and does not

incorporate the portions of those filings that pertain specifically to the other MDL defendants. The incorporated materials focus their critiques on Olsen's methodology—and that focus is uniform among the MDL defendants opposed to class certification.[7] Incorporating generally applicable criticisms of Olsen's testimony make sense because Olsen's testimony is nearly identical from one bank to the next.

None of the cases cited by Swift criticizing BancorpSouth's incorporation are from an MDL proceeding, so they do not account for the unique aspects of an MDL and the corresponding need for efficiency and avoiding duplication or redundancy. In contrast, a Ninth Circuit case in the MDL context explicitly allowed the incorporation of other MDL defendants' briefs. *See NSA Telecomms. Records Litig. v. Verizon Communs., Inc.*, 2011 U.S. App. LEXIS 25950, *4 (9th Cir. Dec. 29, 2011) (allowing incorporation of briefs in other cases in the same MDL because "the cases have followed a parallel path through the MDL process"). *See also* Desmond T. Barry, Jr., *A Practical Guide to the Ins and Outs of Multidistrict Litigation,* 64 Def. Couns. J. 58, 66 (1997) (stating that "the procedures are intended only as a guide to promote the fair and efficient resolution of complex litigation"); *id.* at 59 (noting the purpose of MDL is to "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation

---

[7] Swift's line of argument regarding BancorpSouth's incorporation of evidence submitted by other defendants is nonsensical. The fact that the evidence incorporated happens to be testimony of a purported expert does not make the Court somehow less able to evaluate the weight of that criticism. If a treatise existed that criticized the methodologies utilized by Olsen and BancorpSouth cited that book in its briefing, BancorpSouth would not be expected to produce the author. Moreover, Swift spends a large amount of time quoting the judge in the *Gutierrez* case, Judge Alsup, to support Olsen's testimony (*see generally* MDL Doc. 2576), but BancorpSouth would not ask or expect Swift to produce Judge Alsup for deposition. In any event, Swift's counsel could have simply subpoenaed Professor Willig or Professor Udell – as BancorpSouth's counsel reminded them. (*See* Exhibit A to Plaintiff's Opposition).

cost, and save time and effort on the part of the parties, the attorneys, the witnesses and the courts"). Quite simply, it is common practice in MDL litigation to incorporate arguments and filing of other parties. This Court also appears to recognize the need to avoid duplication in this MDL by placing all the MDL cases under one docket number and frequently issuing omnibus orders or orders that address multiple defendants.

In any event, incorporation of the pleadings of other MDL defendants making the same points is not necessary to strike Olsen's testimony—all that is necessary is to recognize Swift's improper use of expert testimony to prop-up an ill-conceived class definition. The Court should disregard Olsen's testimony for that reason alone.

**C.      BancorpSouth incorporates the reply briefs of other MDL defendants in support of their motions to strike Olsen's testimony.**

With respect to the remaining arguments in Swift's Opposition brief, instead of straining this Court's resources with the repetition of duplicative arguments, BancorpSouth hereby adopts and incorporates the reply briefs made by other defendants in this MDL in support of their motions to strike Arthur Olsen's testimony. *See, e.g.*, U.S.C. § 1407(a) (MDL intended to promote efficiency). Specifically, BancorpSouth adopts and incorporates herein: (1) Defendants RBS Citizens, N.A.'s and Citizens Bank of Pennsylvania's Reply in Support of Motion to Strike the Declaration of Arthur Olsen in Support of Plaintiffs' Motion for Class Certification (MDL Doc. 2565), (2) Defendant TD Bank, N.A.'s Reply in Support of *Daubert* Motion to Exclude the Declaration of Plaintiffs' Proposed Expert Arthur Olsen (MDL Doc. 2564), and (3) Defendant PNC Bank, N.A.'s Reply in Support of Motion to Strike the Declaration of Arthur Olsen (MDL Doc. 2606).

### III.   CONCLUSION

For all the reasons stated herein, in the Motion to Strike, and in all incorporated filings, BancorpSouth respectfully requests that this Court grant BancorpSouth's motion and enter an order striking the December 19, 2011 Declaration of Arthur Olsen in Support of Plaintiffs' [sic] Motion for Class Certification.

Respectfully submitted this 2nd day of April, 2012.

        **PARKER, HUDSON, RAINER & DOBBS LLP**

        */s/ Eric Jon Taylor*
        Eric Jon Taylor
        Georgia Bar No. 699966
        ejt@phrd.com
        William J. Holley, II
        Georgia Bar No. 362310
        wjh@phrd.com
        David B. Darden
        Georgia Bar No. 250341
        dbd@phrd.com
        Darren E. Gaynor
        Georgia Bar No. 288210
        deg@phrd.com

        1500 Marquis Two Tower
        285 Peachtree Center Avenue N.E.
        Atlanta, Georgia 30303
        Telephone: (404) 523-5000
        Facsimile: (404)522-8409

        *Counsel for Defendant BancorpSouth Bank*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record entitled to receive service.

This 2nd day of April, 2012.

>*/s/ Eric Jon Taylor*
>Eric Jon Taylor