UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL NO. 2036
*Fourth Tranche*

THIS DOCUMENT RELATES TO:

*Simmons v. Comerica Bank*
N.D. Tex. Case No. 10-cv-326
S.D. Fla. Case No. 1:10-cv-22958

REPLY IN SUPPORT OF COMERICA BANK'S MOTION TO EXCLUDE
THE TESTIMONY OF ARTHUR OLSEN

**Kenneth C. Johnston**
Texas Bar No. 00792608
**James B. Greer**
Texas Bar No. 24014739

**KANE RUSSELL COLEMAN & LOGAN PC**
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 777-4200
(214) 777-4299 (Facsimile)

**ATTORNEYS FOR COMERICA BANK**

# I.
## INTRODUCTION

Comerica Bank timely filed its Motion to Exclude the Testimony of Arthur Olsen (the "*Daubert* Motion"), and Plaintiffs did not suffer any prejudice by the March 2, 2012 filing.

Plaintiffs' expert cannot prove damages by common proof on a class-wide basis. Rather than address this fatal flaw, the Plaintiffs argue that Comerica Bank's criticisms relate only to Olsen's failure to undertake an analysis that Plaintiffs never asked him to do. However, this argument avoids the issue: Did Olsen fail to articulate a reliable methodology for calculating class-wide damages?

This reply refocuses the Court's attention on the Plaintiffs' deeply flawed class definition, which impacts both class membership and damages—both of which derive solely from Olsen's methodology. Therefore, the Court must conclusively rule on the admissibility of Olsen's testimony when evaluating whether Plaintiffs have satisfied Rule 23 and the predominance requirement. Contrary to the Plaintiffs contention,[1] this Court did not endorse Olsen's methodology under the *Daubert* standard in *Larsen v. Union Bank*.[2] Union Bank did not challenge Olsen's methodology.[3]

Moreover, regardless of the propriety of Judge Alsup's acceptance of Olsen's data manipulation in *Gutierrez v. Wells Fargo,* myriad considerations—including disparate theories of recovery and damages, as well as computational errors inherent in Olsen's analysis of Comerica Bank's data—render Olsen's methodology inapplicable in this case. In short, this case legally and factually differs from *Gutierrez*.[4]

As described in both the *Daubert* Motion and this Reply, Olsen failed to articulate a competent and reliable methodology for calculating class-wide damages. Accordingly, the Court should exclude Olsen's opinions under *Daubert*.

# II.
## ARGUMENT

**A.   COMERICA BANK TIMELY FILED ITS MOTION TO EXCLUDE**

On February 13, 2012, Plaintiffs, Comerica Bank, and other Fourth Tranche defendants filed a Joint Motion to Revise Class Certification Briefing Schedule and to Schedule Oral Argument

---

[1] Plaintiffs' Response in Opposition to Comerica Bank's Motion to Exclude the Testimony of Arthur Olsen ("*Daubert* Opposition") p. 10.

[2] *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666, 667 (S.D. Fla. 2011).

[3] *In re Checking Acct. Overdraft Litig.*, 275 F.R.D. at 673.

[4] *See* Comerica Bank's Notice Regarding Review of Arthur Olsen's Testimony in *Gutierrez v. Wells Fargo Bank* [Doc No. 2505].

("Joint Motion").[5] Paragraph 3 of the Joint Motion provided a specific carve-out for Comerica Bank, stating that "Comerica may also file a *Daubert* motion and an expert declaration in connection with its opposition to class certification . . . ."[6] Importantly, the Joint Motion contemplated that Plaintiffs would depose "Comerica's experts in order to respond to these *Daubert* motions and to prepare their replies in support of class certification."[7]

On February 15, 2012, this Court modified the Fourth Tranche Scheduling Order [Doc. 1340] to incorporate the deadlines into the Joint Motion (the "Revised Briefing Schedule").[8] Neither the Joint Motion nor the Revised Briefing Schedule specified a deadline for Comerica Bank to file its *Daubert* motion. The Revised Briefing Schedule did, however, set March 20, 2012 as the deadline for Plaintiffs to file their oppositions to the Fourth Tranche Defendants' *Daubert* motions.[9]

In accordance with the Fourth Tranche Scheduling Order, Comerica Bank served its Memorandum of Law in Opposition to Class Certification ("Class Opposition") and its related appendix (the "Appendix") on February 21, 2012. As noted by the Plaintiffs, the Class Opposition "devoted more than a dozen pages to criticism" of Olsen's methodology and opinion.[10] Additionally, Comerica Bank included in its Appendix the declarations of two rebuttal experts, Arthur Baines and Dr. Michael DuMond.[11] The declaration of Dr. DuMond specifically refuted the reliability of Mr. Olsen's methodology as it pertains to the calculation of class-wide damages.

Thereafter, Plaintiffs deposed Baines and Dr. DuMond on March 6 and 7, 2012, respectively—dates well in advance of Plaintiffs' deadlines to respond to Comerica Bank's *Daubert* motion and reply to the Class Opposition. In fact, the Class Opposition included specific reference to these depositions.[12]

---

[5] *See* [Doc. 2472].

[6] *See id.* at ¶ 3.

[7] *See id.* at ¶ 4.

[8] [Doc. 2475].

[9] *See id.* at ¶ 2.

[10] *See* Class Opposition at Page 6 n.1.

[11] *See* Appendix: Tab F (Declaration of Dr. Michael DuMond), Tab N (Declaration of Arthur Baines).

[12] *See* Class Opposition at Page 2 n.6 ("The parties have scheduled the depositions of Mr. Baines and Dr. DuMond on March 6 and 7, 2012, respectively"). This also reflects Plaintiffs' plan "to depose Capital One's and Comerica's experts in order to respond to these *Daubert* motions and to prepare their replies in support of class certification." *See* Joint Motion [Doc. 2472] at ¶ 4.

In connection with the Class opposition, Comerica Bank filed its *Daubert* Motion on March 2, 2012. Plaintiffs had the *Daubert* Motion four days before the first expert deposition and 18 days before their response deadline. They had Comerica Bank's extensive criticism of Olsen's methodology, including the Baines and Dr. DuMond declarations, almost a month before their deadline to respond to the *Daubert* Motion.

B.   **EVEN ASSUMING *ARGUENDO* THAT COMERICA BANK FILED ITS MOTION UNTIMELY, THE PLAINTIFFS MAY CLAIM NO PREJUDICE**

Even assuming *arguendo* that Comerica Bank did not timely file its *Daubert* Motion, Plaintiffs suffered no prejudice. The Plaintiffs ask that the Court deny the *Daubert* Motion based on the holdings in *Mosley v. Waste Management Co.*[13] and *Chacon v. El Milagro Child Care Center.*[14] However, these cases are unpersuasive. Both *Mosley* and *Chacon* involved untimely briefs and affidavits in opposition to summary judgment motions.[15] Unlike this case, *Chacon* involved a scheduling order that set a specific deadline for filing dispositive motions.[16] In contrast, the Court did not set any specific deadline for Comerica Bank to file its *Daubert* Motion. As another distinguishing factor, the court in *Chacon* struck a late response on the basis of preserving a scheduled trial date.[17] Here, the *Daubert* Motion in no way interfered with any case deadline, much less the trial date. In *Mosley*, the party filing the untimely opposition did not dispute the untimeliness of her motion.[18] In this case, Comerica Bank disputes Plaintiffs' contention.

By their own admission, Comerica Bank served Plaintiffs with dozens of pages of argument related to Olsen's testimony in Comerica Bank's Motion for Summary Judgment and its Class Opposition.[19] Comerica Bank also provided Plaintiffs with its expert declarations in the Appendix. Plaintiffs had almost two weeks to prepare for the expert depositions, and ultimately deposed both experts on all subjects disclosed in their declarations. Consequently, Plaintiffs suffered no prejudice.[20]

---

[13] 137 Fed. Appx. 248, 250 (11th Cir. 2005).

[14] No. 07-cv-22836, 2009 WL 1920151 at *2 (S.D. Fla. Jul. 2, 2009).

[15] *See Mosley*, 137 Fed. Appx. at 250; *Chacon*, 2009 WL 1920151 at *2.

[16] *See id.* at 1.

[17] *Chacon*, 2009 WL 1920151 at *2.

[18] *See Mosley*, 137 Fed. Appx. at *2.

[19] *See* Class Opposition at p. 6 n.1.

[20] *See, e.g., Cowley v. Sunset Yacht Charters, Inc.*, No. 10-61928, 2011 WL 2939431 (S.D. Fla. Jul. 19, 2011) (no prejudice for a late-filed supplemental expert report because the opposing party deposed the expert on all the

### C.   OLSEN DOES NOT OFFER A RELIABLE METHOD TO PROVE CLASS-WIDE DAMAGES

In a putative class action, the plaintiffs must demonstrate proof of class-wide damages with a reliable damages model, and must do so at the class certification stage.[21] In the context of damage models based on proffered expert testimony, "the issue is not whether [an expert] has shown just any method for proving impact and damages on a class-wide basis; it is whether the method he proposes is a reliable means of common proof."[22]

At certification, Plaintiffs must sponsor a damages methodology which demonstrates the reliable and precise calculation of class-wide damages.[23] Plaintiffs' suggestion that this Court should ignore its duty to rigorously analyze Olsen's methodology, and instead delegate the assessment of a valid damages methodology to the jury, violates the requirements of Rule 23, to say nothing of *Daubert*.[24] This problem alone defeats Plaintiffs' motion for class certification, because now—and not later—Plaintiffs must identify a viable, reliable method of proving class-wide damages by common proof. The Court should exclude Olsen's testimony because he cannot articulate a reliable damages methodology.

The Plaintiffs cite *In re Linerboard Antitrust Litigation* to support their position that Olsen doesn't need to select a proper posting order because class certification "is early in [the] litigation

---

subjects that the expert addressed in both of his reports); *Nissim Corp. v. Clearplay, Inc.*, No. 04-21140-CIV, 2005 WL 5955009 (S.D. Fla. Aug. 5, 2005) (no prejudice, despite "technical violation" of scheduling order, because defendants "timely disclosed the expert witness at issue" and listed the subjects which relate to the expert's opinions); *Jenkins v. Aramark Uniform & Career Apparel, Inc.*, No. CV400-197, 2001 WL 36106201 (S.D. Ga. Mar. 21, 2001) (no prejudice where plaintiffs filed expert reports eleven days past a deadline, but with "ample time to depose the expert witness before trial").

[21] *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 522 F.3d 6, 26 (1st Cir. 2008) ("district court must engage in a searching inquiry in to the viability of [a novel or complex damages] theory" at class certification); *Kottaras v. Whole Foods Market, Inc.*, __ F. Supp. 2d __, 2012 WL 259862, at * 10-11 (D.D.C. Jan. 30, 2012) (denying class certification where the plaintiff's "proposed methodology is not sufficiently developed" and his expert failed to "tell the Court the precise [damage] analyses he intended to undertake").

[22] *Reed v. Advocate Health Care*, 268 F.R.D. 573, 593-94 (N.D. Ill. 2009) (denying class certification).

[23] *See Wiesfeld v. Sun Chemical Corp.*, 84 Fed. Appx. 257, 261–64 (3d Cir. Jan. 9, 2004) (affirming denial of class certification where the plaintiffs' expert failed to provide an "extensive empirical investigation and economic analysis" of his proposed damages models) (internal quotations omitted).

[24] *See In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 317, n.17, 323 (3d Cir. 2009) (A concern for merits avoidance "should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements" because "[w]eighing conflicting expert testimony at the class certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands."); *Reed*, 268 F.R.D. at 594 ("when it comes to the reliability of an expert's methods," the suggestion that evaluation of the methodology is "strictly for the jury" is incorrect).

process."[25] However, *Linerboard* predates Rule 23's 2003 amendment that adopted a more strenuous *Daubert*-like inquiry of expert-proffered evidence in support of class certification.[26] Moreover, even a strained interpretation of *Linerboard* does not relieve Olsen from his duty to provide insight into the viability of a damage model at the class certification stage.[27]

Notably, the Plaintiffs' opposition wholly ignores the Eleventh Circuit's opinion in *Sher v. Raytheon Co.*, in which the court ruled that it was appropriate to subject expert-proffered evidence to a "*Daubert* style critique."[28] As discussed in the *Daubert* Motion, the Eleventh Circuit in *Sher* explicitly agreed with the Seventh Circuit's ruling in *American Honda Motor Co. v. Allen*,[29] which instructed that district courts, as "gatekeepers," must:

- "[c]onclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion";
- "perform a full *Daubert* analysis before certifying [a] class";
- "determine the reliability of the expert's experience and training as well as the methodology used"; and
- "resolve any challenge to the reliability of information provided by an expert if that information is relevant to establishing any of the Rule 23 requirements for class certification."[30]

Under the rigors of this analysis, the fatal shortcomings of Olsen analysis become apparent.

**D.    *GUTIERREZ* NEITHER RESOLVES THE "FIT" ISSUES ABOUT WHICH COMERICA BANK COMPLAINS NOR OBVIATES PLAINTIFFS' RULE 23 BURDEN**

In its *Daubert* Motion, Comerica Bank sought to exclude Olsen's testimony because it does not fit the facts and theories of this case. Here, as in *Boca Raton Comm. Hosp., Inc. v. Tenet Health Care*

---

[25] *See Daubert* Opposition, p. 15.

[26] *See, e.g.*, *Sher v. Raytheon Co.*, 419 Fed. Appx. 887, 889 (11th Cir. 2011) (unpublished) (attached as Ex. A to *Daubert* Motion); *American Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 323 ("[e]xpert opinion with respect to class certification, like any matter relevant to a Rule 23 requirement, calls for rigorous analysis."); *West v. Prudential Sec., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002).

[27] Of note, in in *Linerboard*, the court found it "significant" that qualified economics experts "made an extensive empirical investigation" of their propose methodologies; "studied the structure of the industry"; and input the relevant data into two empirically verified models. *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 153–54 (3d Cir. 2002).

[28] *See Sher*, 419 Fed. Appx. at 889.

[29] *American Honda Motor Co., Inc.*, 600 F.3d at 815–16.

[30] *Id.*

*Corp.*,[31] ("*Boca Raton*"), Plaintiffs proffer an expert whose methodology cannot reliably differentiate between individuals who were injured by Comerica Bank's challenged conduct and those who were not. Specifically, Olsen's opinions do not fit Plaintiffs' liability theory because the conduct that Plaintiffs deem unlawful did not cause the "harm" that Olsen purports to quantify. In contrast, Plaintiffs seek certification of a class of customers "who incurred an overdraft fee as a result of . . . sequencing debit card transactions from highest to lowest . . ."[32] But Olsen did not limit the magnitude of "harm" to re-ordering debit card transactions on a chronological basis. Rather, most of the so-called "harm" results from Olsen's arbitrary placement of non-debit card (and non-time-stamped debit card) transactions either before or after his re-ordered debit card transactions.[33] *Boca Raton* prohibits this over-inclusive approach to class-wide damages.[34]

Plaintiffs do not defend this over-inclusive methodology in their *Daubert* Opposition. Instead, their opposition boils down to a single argument: because Judge Alsup accepted Olsen's opinions in *Gutierrez v. Wells Fargo & Co.*,[35] the Court should accept them in this case. This case differs from *Gutierrez*: a case still pending in a different jurisdiction that involves the application of California-specific law. Judge Alsup's findings in *Gutierrez* do not alter Plaintiffs' obligation to demonstrate, at class certification, an ability to prove damages on a class-wide basis using a reliable methodology that actually fits the facts of this case—a requirement the Plaintiffs' simply cannot meet.[36]

Plaintiffs cite no law allowing the Court to deviate from the required rigorous analysis before trial.[37] Indeed, even Judge Alsup analyzed the fit issue prior to trial and excluded Olsen's alternative scenario using a low-to-high posting order, because it did not fit the plaintiffs' claim that Wells Fargo should have posted chronologically.[38] Here, Plaintiffs respond that this Court should ignore the

---

[31] 582 F.3d 1227 (11th Cir. 2009).

[32] Class Motion at 1.

[33] *See* Appendix: Tab F (DuMond Dec.) at ¶¶ 14–17, 22; Appendix: Tab M (Olsen Depo.) at 182, 188.

[34] 582 F.3d at 1232–34.

[35] *Gutierrez v. Wells Fargo & Co.*, 2010 WL 1233810 (N.D. Cal. Mar. 26, 2010).

[36] *Cooper v. S. Co.*, 390 F.3d 695, 712, 718 (11th Cir. 2004), *abrogated on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006); *Sher v. Raytheon Co.*, 419 F. Appx 887, 890–91 (11th Cir. 2011).

[37] Plaintiffs cite *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 155 (3d Cir. 2002) for the unremarkable proposition that where a plaintiff offered two "generally accepted" damages methodologies, the plaintiff need not choose between them at the class certification stage. *In re Linerboard* did not involve a *Daubert* challenge to the fit of the proffered methodologies to the respective plaintiff's claims.

[38] *Gutierrez*, 2010 WL 1233810 at *8 ("this ordering doesn't even attempt to 'chronologically' order the transactions in dispute," and thus has "no discernible (and, hence, reliable) relation to the facts or theories in this case," rendering it "inadmissible under *Daubert* as a damages theory.").

*Boca Raton* problem because Judge Alsup admitted some of Olsen's testimony in *Gutierrez*. *Gutierrez* does not bind this Court's determination of the issue. The mere fact that a judge found Olsen's testing admissible in another case is "irrelevant to the determination whether he is qualified to give such testimony in this case."[39] Rather, this Court must conduct a rigorous examination of the fit between Olsen's methods and the evidence and theories at issue.

The *Gutierrez* analogy does not withstand such rigorous analysis: Judge Alsup's reason for allowing certain testimony from Olsen involved a California statute that did not require any plaintiff to show individual harm. That reasoning does not apply here. In *Gutierrez,* the plaintiffs sought restitution under Section 17200 of California's Unfair Business Practices Act. Judge Alsup found that the right to restitution existed "without individualized proof" of injury.[40] It was with this unusual theory, and only this theory, that Judge Alsup found a fit with two of Olsen's proposed scenarios.[41] In contrast, Plaintiffs do not plead any statutory restitution claim under California law.[42]

In this case, Plaintiffs plead common law claims that incorporate *loss-based* theories of recovery. Under these theories, black-letter law provides that the relevant damages measure includes "an amount reasonably calculated to make [the plaintiff] whole and neither more nor less . . . ."[43] Unlike in *Gutierrez*, the Plaintiffs here must show that Olsen can calculate *compensatory* damages based on common proof. This analysis includes not only a determination of the differential in the number of overdraft transactions between the real world and a hypothetical, alternative transaction ordering system, but also an assessment of the additional costs associated with the substitute order. Because Olsen does not account for the pecuniary and non-pecuniary effects of the 2A analysis, *Gutierrez* offers no basis for this Court to refuse to follow the Eleventh Circuit's controlling decision in *Boca Raton*.

---

[39] *Elcock v. Kmart Corp.*, 233 F.3d 734, 744 (3d Cir. 2000).

[40] *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1138 (N.D. Cal. 2010) (citations omitted); *see also id.* ("absent class members on whose behalf a Section 17200 action is prosecuted need *not* show on 'an individualized basis that they have 'lost money or property as a result in the unfair competition[.]'") (citations omitted) (emphasis supplied by Judge Alsup).

[41] Judge Alsup struck a third scenario on *Daubert* grounds for failing to fit their claim.

[42] Under the same California law, federal courts do not agree on the lenient approach to restitution damages and have denied certification because, "[f]or example, the 'Full Refund Method' would award full restitution of all fees paid to [defendant] without taking into account the benefit [the plaintiffs] received or the fact that some actively sought to [benefit from the alleged wrongful conduct]." *In re Google AdWords Litig.*, No. 5:08-CV-3369, 2012 WL 28068 at * 15 (N.D. Cal. Jan. 5, 2012) (noting that restitution must be based on specific amounts; the measurable amount of restitution must be supported by substantial evidence).

[43] 24 Williston on Contracts § 64:1 (4th ed.).

The fact that Plaintiffs have brought their claims as a class action does not remove their burden to show harm for each injured party.[44]

Finally, not only do Olsen's methods calculate damages related to lawful conduct, but they also fail to incorporate the very customer expectations upon which Plaintiffs base their claims. Because Olsen's methodology does not "fit" the facts of this case, this Court should exclude his opinions as inadmissible *ipse dixit*.[45] Such imprecise, inconsistent, and ill-fitting damages calculations fail the strict *Daubert* standards.[46]

### E. OLSEN'S METHODOLOGY IS INHERENTLY FLAWED AND CANNOT SUPPORT CLASS CERTIFICATION

Plaintiffs argue that Comerica Bank attacks opinions that "Olsen never offered, and chastises him for having not offered a different opinion while claiming that he lacks qualifications to offer it."[47] Plaintiffs then cite *Gutierrez* for the proposition that they need not identify an alternative posting order at this stage.[48] They contend that, at trial, the finder of fact will determine the posting order Comerica Bank should have used.[49] Plaintiffs then conclude that "Olsen's analysis reliably compared, on an account-by-account basis for each named Plaintiff, the number of overdraft charges Comerica would have assessed under an alternate scenario with the charges Comerica actually assessed based on its re-sequencing."[50]

Plaintiffs ignore a critical, yet inescapable fact: Olsen did not even correctly undertake the actual analysis the Plaintiffs hired him to perform. Aside from the fact that Olsen ignores the issue of

---

[44] *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1365 (11th Cir. 2002) ("[C]lass treatment may not serve to lessen the plaintiffs' burden of proof."), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

[45] *See Haggerty v. Upjohn, Co.*, 950 F. Supp. 1160, 1167 (S.D. Fla. 1996); *see also Shelley v. AmSouth Bank*, 2000 WL 1121778, at *9, *15 (S.D. Ala. July 24, 2000) (unpublished), *aff'd*, 247 F.3d 250 (11th Cir. 2001 (table) ("each depositor's damages must be measured with reference to the alternative posting order identified by the depositor as the one she believed in place").

[46] *See Boca Raton Community Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1234 (11th Cir. 2009) (affirming exclusion of expert testimony for lack of "fit" where plaintiffs' expert measured injury and damages from activity that was not unlawful under plaintiffs' liability theory); *Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.*, 103 F. Supp. 2d 268, 280–81 (S.D. N.Y. 2000) (finding expert's opinions "fatally flawed" and "simply irrelevant" to the extent they computed damages for conduct not at issue in the case).

[47] *Daubert* Opposition, p. 3.

[48] *Id.* at p. 15.

[49] *Id.*

[50] *Id.* at p. 10.

whether the 2A methodology applies in this case,[51] Olsen still failed to reliably calculate the number of overdrafts Comerica Bank actually assessed the named Plaintiffs during the class period.[52]

This error, compounded by Olsen's inability to reliably match authorization time/stamp data with settlement time stamp/data (essential to the formulation of any alternate "chronological" posting scenario), undermines the basis for Plaintiffs' suggestion that Olsen "reliably compared" the "number of overdraft charges Comerica would have assessed under an alternate scenario" to "the charges Comerica actually assessed based in its re-sequencing."[53] Moreover, these failures hamper Olsen's claim that he reliably re-sequenced the named Plaintiffs' transaction data from a "high-to-low" posting sequence to a "chronological" posting sequence.[54] These failures preclude admissibility of his opinions under Federal Rule of Evidence 702 and *Daubert*.

The Plaintiffs do not rebut the dispositive impact of Olsen's computational errors on the reliability of his data manipulation, but instead blame Comerica Bank's data for his failure. Both approaches are misplaced.

First, Olsen agrees that his inability to match authorization and settlement time/stamp data constitutes error:

> Q: Do you have records that would reveal that error rate and your ability to match authorizations with settlements?
>
> A: Yes, and you should be able to take one of these files and just look at all of the ones that are marked with a debit card and know which ones have dates and which ones don't.[55]

In assessing the reliability of Olsen's methods, the Court must consider the error rate associated with his technique. At all times, the Plaintiffs bear the burden of demonstrating that the error rate does not render the methodology unreliable.[56] Here, Olsen conceded at his deposition the insufficiency of the non-match error rate of his methodology, which at "about 20, low 20 percent"

---

[51] *See* Appendix: Tab M (Olsen Depo.) at 34:16–35:2.

[52] *See* Appendix: Tab M (Olsen Depo.) at 145:4–149:15; *See* Appendix: Tab F (DuMond Decl.) at ¶¶ 50–52; Class Opposition at Exhibit D (DuMond Depo.) at 38:1–40:2.

[53] *Daubert* Opposition at p. 10.

[54] *See* Appendix: Tab F (DuMond Decl.) at ¶¶ 24–42; Class Opposition at Exhibit D (DuMond Depo.) at 64:5–23.

[55] *See* Appendix: Tab M (Olsen Depo.) at 10:5–11.

[56] *See Quiet Tech, DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003) (*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593–94 (1993))(the court must "consider, to the extent possible . . . the known or potential rate of error.").

REPLY IN SUPPORT OF COMERICA BANK'S MOTION TO EXCLUDE THE TESTIMONY OF ARTHUR OLSEN                                                            Page 9
1718849 v2 (71315.00002.000)

prompted his repeated reference to his efforts as a "first pass."[57] However, even this error rate is generous in that Olsen freely admits that his methodology "arbitrarily and randomly" assigns a "match" among multiple transactions of the same dollar amount occurring "within a week of the settlement date."[58] In any case, the record before the Court reveals that Olsen cannot improve this match rate.[59]

Plaintiffs respond only that they "need not prove that the proffered expert testimony is correct or even persuasive."[60] In Plaintiffs' view, applicable law requires the calculation of "harm" by a common formula irrespective of that formula's error rate or accuracy. However, under the rigors of *Daubert*, simply proffering a methodology, without also demonstrating its reliability by reference to an acceptable rate of error, is no standard for class certification.[61]

Second, if the vast majority of debit card transactions include date/time stamp information for authorizations,[62] Olsen's match rate failure derives exclusively from inadequacies in his own methodology, and not limitations in Comerica Bank's data.[63] Accordingly, Plaintiffs' citation to *Bigelow v. RKO Radio Pictures*,[64] and *Eastman Kodak Co. of New York v. Southern Photo Materials Co.*,[65] is misplaced. Comerica Bank must question how many other errors Olsen's methodologies will engender; it should not be Comerica Bank's burden to somehow find them all. Plaintiffs, not Comerica Bank, have the burden to show class-wide damages using a reliable methodology: "The burden is not on the defendant to show the difficultly of proving each class member's damages; the burden is on the plaintiffs to show the ease of doing so."[66]

**WHEREFORE,** Comerica Bank requests that the Court exclude the testimony of Arthur Olsen.

---

[57] *See* Appendix: Tab M (Olsen Depo.) at 117:21–125:12.

[58] *See* Appendix: Tab M (Olsen Depo.) at 155:25–156:12.

[59] *See* Appendix: Tab F (DuMond Decl.) at ¶¶ 53–61; *See* Appendix: Tab M (Olsen Depo.) at 125:1–127:4.

[60] *Daubert* Opposition at p. 8.

[61] *See Boca Raton Community Hosp., Inc.*, 582 F.3d at 1234; *Johnson Elec. N. Am., Inc.*, 103 F. Supp. 2d at 280–81.

[62] *See* Appendix: Tab M (Olsen Depo.) at 117:13–22.

[63] Class Opposition at Exhibit D (DuMond Depo.) at 64:5–23; *See* Appendix: Tab M (Olsen Depo.) at 34:16–35:2.

[64] 327 U.S. 251 (1946).

[65] 273 U.S. 359, 379 (1927).

[66] *Shelley v. AmSouth Bank*, 2000 WL 1121778 at *10.

Respectfully submitted,

**KANE RUSSELL COLEMAN & LOGAN PC**


By: /s/ Kenneth C. Johnston
     Kenneth C. Johnston
     Texas Bar No. 00792608
     James B. Greer
     Texas Bar No. 24014739

3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 777-4200 (telephone)
(214) 777-4299 (facsimile)

**ATTORNEYS FOR COMERICA BANK**

**CERTIFICATE OF SERVICE**

I hereby certify that on April 2, 2012, I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. Mail on all counsel of record entitled to receive service.

/s/ Kenneth C. Johnston
Kenneth C. Johnston