# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:
THIRD TRANCHE ACTIONS**

*Mosser v. TD Bank, N.A.*
E.D. Pa. Case No. 2:10-00731
S.D. Fla. Case No. 10-cv-21386-JLK

*Mazzadra, et al. v. TD Bank, N.A.*
S.D. Fla. Case No. 1:10-cv-21870-JLK

---

## ORDER GRANTING CLASS CERTIFICATION

**THIS CAUSE** is before the Court upon Plaintiffs' Motion for Class Certification and Incorporated Memorandum of Law (DE #2256) (the "Motion"). The Court has carefully considered the Motion, response, reply, and the documents attached to them, as well as Plaintiffs' voluminous evidentiary submission and the oral argument of counsel.[1]   For the reasons explained more fully below, the Court grants class certification.

### I.        Factual Allegations

Plaintiffs allege that Defendant TD Bank, N.A. ("TD Bank") employed specially designed software programs in a systematic scheme to extract the greatest possible number of overdraft fees from Plaintiffs and similarly situated TD Bank customers across the country.  TD

---

[1] Defendant filed its Response (DE #2427) on January 30, 2012, to which Plaintiffs Replied on March 6, 2012 (DE #2533).   Pursuant to the parties' Joint Stipulation to unseal class certification briefing (DE #2530), Defendant and Plaintiffs re-filed the Response and Motion on the public docket on March 19 and March 21, 2012, respectively. (*See* DE #2568 & 2579).   The Court heard oral argument on March 26, 2012. (DE #2597).

Bank allegedly collected "hundreds of millions of dollars"[2] in excessive overdraft fees as a result of this systematic scheme, much of it, according to Plaintiffs, from TD Bank's most vulnerable customers.[3] *See* DE #997 ("Third Amended Compl."), at ¶ 89.

To carry out this scheme, Plaintiffs allege that TD Bank manipulated debit card transactions by, among other things, employing a bookkeeping trick to re-sequence the transactions from highest-to-lowest dollar amount at the time of posting. Plaintiffs allege that these account manipulations, which TD Bank deponents testified were applied in the same manner to all class members as a result of TD Bank's standardized computer software, caused funds in customer accounts to be depleted more rapidly, resulting in more overdrafts and, consequently, more overdraft fees. Plaintiffs further allege that, in many instances, overdraft fees were levied at times when, but for TD Bank's manipulation, there would have been sufficient funds in the consumers' accounts. Plaintiffs allege that TD Bank did not fairly disclose its manipulations, took active steps to keep them secret, and engaged in these manipulations despite recognizing that it harmed its own customers. TD Bank disputes that it has manipulated account transactions and that it has committed any violations of law.

Based on these allegations, Plaintiffs move to certify their claims for breach of contract and the breach of the duty of good faith and fair dealing, unjust enrichment, unconscionability, and violation of the unfair and deceptive trades practice laws of Connecticut, New Jersey, New York, Pennsylvania and Vermont. Plaintiffs' proposed Class comprises:

> All customers of T.D. Bank, N.A. ("TD Bank") in the United States who had one or more consumer accounts and who, from the applicable statutes of limitation through August

---

[2] According to TD Bank's own Board Meeting Speaking Notes (DE #2581-48), TD Bank collected $438 million in revenue from overdraft fees in 2010. *Id.* at 2.

[3] *See* DE #2581-62, at 2 ("92% of total NSF/OD fee revenue contributed by all low-balance [Simply Free Checking households]"); DE #2581-63, at 13 (showing low income account holders are most likely to experience overdrafts in their accounts).

13, 2010, (the "Class Period"), incurred an overdraft fee as a result of TD Bank's practice of sequencing debit card transactions from highest to lowest.

Excluded from the Class are TD Bank; its parents, subsidiaries, affiliates, officers and directors; any entity in which TD Bank has a controlling interest; all customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members. (DE #2533, at 10).[4]

## II.     Legal Standard for Class Certification

Questions concerning class certification are left to the sound discretion of the district court, and the Court must undertake a rigorous analysis to insure that the Rule 23 prerequisites are met. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).  In making the decision, the Court does not determine whether plaintiffs will ultimately prevail on the merits, but it may consider the factual record in deciding whether the requirements of Rule 23 are satisfied. *Valley Drug. Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003).

Courts "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).  In other words, the Court undertakes "an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or ***are susceptible of common proof*** equally applicable to all class members."  *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (emphasis added) (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997)).

---

[4] Plaintiffs also seek the certification of subclasses for specific claims as set forth in Plaintiffs' Proposed Trial Plan for Trial of All Class Claims (DE #2579-2) (the "Trial Plan").  These subclasses are discussed below.

## A.   Rule 23(a)

There are four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23 (a); *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 613 (1997); *Prado-Steiman v. Bush,* 221 F.3d 1266, 1278 (11th Cir. 2000). However, "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2551 (2010); *see also London v. Wal-Mart Stores,* 340 F.3d 1246, 1253 (11th Cir. 2003) (noting that party moving for class certification bears the burden of establishing each element of Rule 23(a)).

A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden of a preponderance of the evidence. *Gen. Tel. Co. of the SW. v. Falcon,* 457 U.S. 147, 158–61 (1982). *See also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202–04 (2d Cir. 2008) (requiring plaintiffs to meet burden by a preponderance of the evidence). If the party seeking class certification fails to satisfy any one of the Rule 23 requirements, then the case may not continue as a class action. *Jones v. Roy,* 202 F.R.D. 658, 662 (M.D. Ala. 2001).

In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true. *Moreno Espinosa v. J & J AG Prods., Inc.*, 247 F.R.D. 686 (S.D. Fla. 2007). However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Vegas v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264 (11th Cir. 2009). In making that assessment, the Court may not consider the plaintiffs' likelihood of success on the merits, although some consideration of the merits may

4

often be necessary. *Compare Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78 (1974); *and Kirkpatrick v. J.C. Bradford & Co.*, 87 F.2d 718, 722–23 (11th Cir. 1987); *with* Dukes, 131 S. Ct. at 2551 n.6 (noting that "[f]requently a 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim"); *and Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984) (holding that the *Eisen* doctrine should not be "talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements").

### (i)     Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable."  Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Hammett v. Am. Bankers Ins. Co. of Fla.*, 203 F.R.D. 690, 694 (S.D. Fla. 2001).  Certainly, such factors as size of the class and geographic location of the would-be class members are relevant to any consideration of practicality. *In re Recoton Corp. Secs. Litig.*, 248 F.R.D. 606, 616, 617 (M.D. Fla. 2006).  However, the focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D. Fla. 1986).  Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697, 699 (M.D. Fla. 2000).

In general terms, the Eleventh Circuit has found that "less than twenty-one [prospective class members] is inadequate, [while] more than forty [is] adequate." *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d

1546, 1553 (11th Cir. 1986)).  Thus, the "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.,* 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing *Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 570 (6th Cir. 2004)).

As this Court is required to do even where a requirement for class certification is not satisfied, it has independently considered the prospective numerosity of the putative class members.  *See Valley Drug Co.,* 350 F.3d at 1188 (noting court's independent obligation to examine elements of Rule 23); *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n.37 (11th Cir. 2003) (same).  The proposed number of class members on these facts easily exceeds the minimum threshold recognized by the Eleventh Circuit.  More importantly, individual joinder of the proposed Class members would be impractical given not just the number of class members, but also their geographic distribution.

TD Bank argues that the proposed Class does not satisfy the implicit definition requirement because the definition requires a merits determination and the class period is defined by reference to the applicable statutes of limitation.  These arguments are unpersuasive. As explained below, the Court finds that the Class is readily ascertainable.  *See Singer v. AT & T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998) (holding that "[w]hile the definition of the class must not be vague or difficult to apply, the implicit definition requirement does not require an overly strict degree of certainty and is to be liberally applied.").

Plaintiffs propose to have their expert, Mr. Olsen, mine TD Bank's data to determine who the members of the class are.  This method of determining class membership has been accepted by other courts.  *See Sadler v. Midland Credit Mgmt.*, 2009 WL 901479, at *2 (N.D. Ill. Mar. 31, 2009) (automated query of defendants' database would yield "objective criteria" necessary to ascertain the class); *Stern v. AT&T Mobility Corp.*, 2008 WL 4382796, at *5 (C.D. Cal. Aug. 22,

2008) (defendants' business records provided sufficient information to identify individuals who purchased cellular telephone service and were enrolled in either one of the challenged services without ever having requested the service); *In re Diet Drugs Prods. Liab. Litig.,* 1999 WL 673066, at \*13–14 (E.D. Pa. Aug. 26, 1999) (finding class definition was adequate because there were reliable means to determine who had actually taken the drug where fact sheets, prescription records, and records of medical treatment were available to verify consumption).

Mr. Olsen can identify which TD Bank customers incurred additional overdraft fees as a result of high-to-low re-sequencing of debit transactions by comparing that re-sequencing to each of the alternative posting scenarios that he discussed in his declaration.  While the finder of fact will ultimately have to decide which of these scenarios is most consistent with TD Bank's duty of good faith and fair dealing, Mr. Olsen will be able, at the outset, to identify all of TD Bank's customers who were harmed as compared to each of these alternative scenarios.  The exact damages due each member of the class will then be calculated by Mr. Olsen once the fact finder has chosen the appropriate posting methodology.  *Klay,* 382 F.3d at 1259–60 (footnotes omitted) ("[W]here damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification."); 7A Wright, Miller & Kane, *Federal Practice & Procedure: Civil 3d* § 1760 (3d ed. 2005) ("If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist."); *Cliff v. Payco Gen. Am. Credits, Inc.,* 363 F.3d 1113, 1133 n.16 (11th Cir. 2004) (noting "fact that class definitions may undergo modification, possibly several times, during the course of a class action.").

The crux of TD Bank's argument is that Olsen's testimony in *Gutierrez* does not "fit" the case because Olsen refuses to identify the "proper" posting method, i.e., chronological, and does not account for predicted changes in bank practices and customer behavior. The Court has previously considered and rejected this argument on TD Bank's *Daubert* motion to strike Mr. Olsen's Declaration. *See* Minute Order (DE #2569). Mr. Olsen is able to calculate damages on an account-by-account basis using the bank's own computerized records, a method upon which Mr. Olsen previously relied, with court approval, in *Gutierrez v. Wells Fargo Bank, N.A.*, 2010 WL 1233810, at \*14 (N.D. Cal. Sept. 11, 2008).

Although the exact number of class members is not presently known, the proposed Class appears to number in the tens- or hundreds-of-thousands. Because of that great number, and the fact that the members of the class are geographically dispersed, individual joinder is impractical. *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied by class of 31 members who were geographically dispersed across Florida, Georgia and Alabama). Accordingly, the Court finds that the numerosity requirement of Rule 23(a) is satisfied, that the class definition is quite clear, and that the class is readily ascertainable.

(ii)     **Commonality**[5]

The prerequisite commonality factor requires that there be at least one issue common to all members of the class, and that any class certification be predicated on "questions of law or fact common to the class." Notably, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." *Walco Invs., Inc. v. Thenen,* 168 F.R.D. 315,

---

[5] "The typicality and commonality requirements are distinct but interrelated, as the Supreme Court made clear: 'The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Cooper v. Southern Co.*, 390 F.3d 695, 713 (11th Cir. 2004) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).

325 (S.D.Fla.1996).  However, "a class action must involve issues that are susceptible to class-wide proof." *Cooper*, 390 F.3d at 713.

The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D. Fla. 2004); *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004); *In re AmeriFirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla.1991).  *Cf. Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S.Ct. 2541 (2011) (holding plaintiffs failed to satisfy the commonality requirement because they "provide[d] no convincing proof of a companywide discriminatory pay and promotion policy"). *Id.* at 2557.  It is particularly noteworthy that, where a "common scheme of deceptive conduct" has been alleged, the commonality requirement should be satisfied. *In re Recoton*, 248 F.R.D. at 618.

Plaintiffs here have provided evidence of a common corporate policy or practice, namely, TD Bank's systematic and uniform manipulation and re-ordering of debit card transactions to increase the number of overdraft fees imposed.  *See Oakley v. Verizon Communications, Inc.*, No. 09-9175, 2012 WL 335657, *14 (S.D.N.Y. Feb. 1, 2012) ("Of course, when a group of plaintiffs suffer under a uniform policy, the commonality test is often satisfied, even after *Dukes*.").  Plaintiffs thus satisfy the commonality requirement under Rule 23(a)(2) by alleging and providing significant evidence that TD Bank uniformly manipulated and re-ordered debit card transactions to increase the number of overdraft fees imposed.  That is the common contention that applies to all Class members that drives the resolution of this litigation.

In particular, the common issues of law and fact in this case include whether TD Bank:

- Manipulated and re-ordered transactions in order to increase the number of overdraft fees imposed;

- Disclosed and/or refused to allow Class members to opt out of the overdraft protection program and shadow line of credit;

- Omitted to alerted Class members that a debit card transaction would trigger an overdraft fee if processed and provided them with an opportunity to cancel the transaction;

- Imposed overdraft fees when, but for re-sequencing, there would be sufficient funds in the account;

- Delayed posting transactions so that Class members were charged overdraft fees even when sufficient funds were in the account to cover the transactions; and

- Breached its covenant of good faith and fair dealing with Plaintiffs and the Class; engaged in practices that were substantively and procedurally unconscionable; was unjustly enriched at the expense of Plaintiffs and the Class; and violated the unfair and deceptive trades practice laws of Connecticut, New Jersey, New York, Pennsylvania and Vermont.

### (iii)      Typicality

The third factor under Rule 23(a)(3), typicality, requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3); *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).  Like the commonality requirement, the typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical.  *Brown v. SCI Funeral Servs. of Fla., Inc.*, 211 F.R.D. 602, 605 (S.D. Fla. 2003).  Moreover, if "the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims." *Davis v. S. Bell Tel. & Tel. Co.*, No. 89-2839, 1993 WL 593999, *4 (S.D. Fla. Dec. 23, 1993).  To defeat typicality, a defendant must show that conflict between the named representatives and the class members is "such that the interests of the class are placed in significant jeopardy." *Walco*, 168 F.R.D. at 326.

The Court finds that Plaintiffs' claims arise out of the same course of conduct and are based on the same legal theories as those of the absent class members. That is, all Plaintiffs and members of the proposed class, whose accounts were governed by common and materially uniform agreements, were subjected to TD Bank's practice of re-sequencing debit card transactions from high-to-low, and Plaintiffs allege that they and all members of the proposed class were assessed additional overdraft fees as a result. Plaintiffs propose discrete multi-state subclasses for some of the state law claims to ensure that the proposed class representatives' claims are materially identical to all other class members that they seek to represent. Therefore, the Court finds that the typicality exists within the meaning of Rule 23(a)(3).

### (iv)    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The two questions considered when determining the adequacy of representation are:

> (1) Do either the named plaintiffs or their counsel have any conflicts of interest with other class members; and
>
> (2) Will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

*Kirkpatrick*, 827 F.2d at 726. While courts generally hold that a class representative have "working knowledge" of the case, *see, e.g., Buford v. H & R Block, Inc.*, 168 F.R.D. 340 (S.D. Ga. 1996), class certification will not be prevented solely on that basis unless the representatives "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick*, 827 F.2d at 728. Thus, the threshold of knowledge required to qualify a class representative is low.

The Court finds that neither the Plaintiffs nor their counsel have any interests that are antagonistic to those of the absent class members. The central issues in this case – the existence,

11

unlawfulness and effect of TD Bank's scheme to manipulate debit card transactions and increase the number of overdraft fees assessed – are common to the claims of Plaintiffs and the other members of the class. Each representative Plaintiff, like each absent class member, has a strong interest in proving TD Bank's scheme, establishing its unlawfulness, demonstrating the impact of the illegal conduct and obtaining redress. Plaintiffs thus "share the true interests of the class." *Texas Air*, 119 F.R.D. at 459; *see also Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997) (the "common goal of each member of the class" is to remedy the unlawful conduct, and "[i]f the Plaintiffs succeed, the benefits will inure to all class members.").

The law firms seeking to represent the class here include qualified and experienced lawyers. The Court has reviewed the firm resumes setting forth their experience and expertise in class actions. In addition, the Court is familiar with many of the lawyers seeking to represent the class, as they have appeared before the Court a number of times. The Court is satisfied that the lead Plaintiffs and the firms seeking appointment as class counsel will properly and adequately prosecute this case. The Court therefore appoints Plaintiffs as representatives of the class, and appoints the following firms as class counsel pursuant to Fed. R. Civ. P. 23(g): Bruce S. Rogow, P.A.; Podhurst Orseck, P.A.; Grossman Roth, P.A.; Baron & Budd, P.C.; Golomb & Honik, P.C.; Lieff Cabraser Heimann & Bernstein LLP; Trief & Olk; Webb, Klase & Lemond, L.L.C.; and Whatley Drake & Kallas, LLC.

**B.      Rule 23(b) Certification**

In addition to meeting the requirements under Rule 23(a), Plaintiffs must establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3). Thereunder, a plaintiff bears the burden of demonstrating two requirements are met: 1) predominance of the questions of law or fact

common to the members of the class over any questions affecting only individual members; and

2) superiority of class action for the fair and efficient adjudication of the controversy. *See*

*Amchem*, 521 U.S. at 625.   Rule 23(b)(3) further specifies four areas of inquiry relevant to both

predominance and superiority: i) class members' interest in individually controlling the

prosecution or defense of separate actions; ii) the extent and nature of any litigation concerning

the controversy already begun by or against class members; iii) the desirability or undesirability

of concentrating the litigation of the claims in a particular forum; and iv) the likely difficulties in

managing a class action.   Fed. R. Civ. P. 23(b)(3)(a)-(d).

### (i)    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation." *AmChem,* 521 U.S. at 623.   The question of

predominance presumes the overriding existence of common issues; thus, a mere showing of

commonality as in Rule 23(a) is not enough. *Hanlon,* 150 F.3d at 1022; *see also AmChem,* 521

U.S. at 624–25 (predominance criterion is "far more demanding" than Rule 23(a)'s commonality

requirement).   Predominance focuses on the relationship between the common and individual

issues. *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989); *Hanlon,* 150

F.3d at 1022.   "When common questions present a significant aspect of the case and they can be

resolved for all members of the class in a single adjudication, there is clear justification for

handling the dispute on a representative rather than on an individual basis." *Hanlon,* 150 F.3d at

1022.

Here, "irrespective of the individual issues which may arise, the focus of the litigation"

concerns "the alleged common course" of unfair conduct embodied in TD Bank's alleged

scheme to maximize overdraft fees through the hidden reordering of transactions at account

posting. *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 86 (M.D. Fla. 1977). Any analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner. A scheme "perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Advisory Committee Notes to Rule 23(b)(3) (1966 Amendments). Indeed, predominance is "a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The Court finds that predominance is satisfied in this case. Plaintiffs allege that TD Bank's course of conduct commonly, and adversely, affected the entire class, and have submitted evidence supporting that allegation. The class members are similarly situated with regard to the readily determined, allegedly excess fees they incurred as a result of a standardized process. The class is unified by both common questions and a common interest. The evidence necessary to establish Plaintiffs' claims is common to both Plaintiffs and all members of the class; they all seek to prove that TD Bank's high-to-low re-sequencing practice was wrongful. That evidentiary presentation involves the same evidence of (i) TD Bank's form contracts, with similar terms, applicable to all Plaintiffs and class members; (ii) TD Bank's systematic re-sequencing of debt transactions from high-to-low for all Plaintiffs and class members through its automated software programs; and (iii) the line of credit that TD Bank secretly established for all Plaintiffs and class members in order to charge them overdraft fees.

The evidence to be presented by the Plaintiffs has a direct impact on every class member's effort to establish liability and on every class member's entitlement to relief. *Klay,*

382 F.3d at 1255. Moreover, where corporate policies "constitute the very heart of the plaintiffs' . . . claims," as they do here, common issues will predominate because those policies "would necessarily have to be re-proven by every plaintiff." *Klay*, 382 F.3d at 1257; *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 236 F.R.D. 62, 70 (D.N.H. 2006) (varying degrees of knowledge among class members do not present an obstacle to class certification where other common issues unite the class).

The Court further notes that the problems plaguing the proposed classes in *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010), and *Klay* are not present here. In *Klay*, the court ultimately found certification of the breach of contract claims inappropriate given the individualized issues of fact they entailed, even though questions of contract law were common to the whole class. *Id.* at 1261. There were many different defendants with many different contracts with many different provider groups. Moreover, because the defendants breached the contracts through a variety of means and differing computer algorithms that were not subject to generalized proof, each physician would have to prove a variety of individual circumstances leading to the breach. *Id.* at 1263–64. Similar problems precluded certification in *Sacred Heart*, where there were substantial variations in the terms of over 300 hospital contracts that were individually negotiated, leading the court to find that "the diversity of the material terms is overwhelming." *Sacred Heart*, 601 F.3d at 1171–72. In contrast, the agreements at issue here are uniform form contracts offered on a take-it-or-leave it basis and were not the product of any individual negotiation. *See id.* at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). Nor do Plaintiffs have to prove a variety of individual circumstances supporting the

breach, as TD Bank's standard re-sequencing policy resulted in uniform conduct directed at all members of the class.

In addition, the court's certification in *Gutierrez* is instructive.  Wells Fargo, like TD Bank, also contends that individual issues would predominate, but the court in that case found the "challenged practice is a standardized one applied on a routine basis to all customers." 2008 WL 4279550, at *17.  Thus, while "there will be some individual issues . . . these individual variations will not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors." *Id.*  Here, as in *Gutierrez*, Plaintiffs allege that TD Bank exercised its discretion in bad faith by re-sequencing debit card transactions posted to their checking accounts from highest to lowest in order to maximize overdraft penalties against customers.  Moreover, as in *Gutierrez*, TD Bank's "challenged practice is a standardized one applied on a routine basis to all customers." *Id.* at *17.  Any individual issues will "not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors." *Id.*

As discussed above, class members are readily ascertainable through objective criteria: TD Bank's own records of individuals who were assessed overdraft fees.  Plaintiffs' expert will formulate calculations that can identify members of the class by running queries in TD Bank's computer records.  Such calculations will be merely ministerial in nature, and will not be plagued by resolution of individual class member issues.  Damages will be calculated using the same TD Bank records used to identify the class members.  These facts make this case manageable as a class action.

Nor do TD Bank's affirmative defenses defeat certification of the class.  Affirmative defenses must meet the pleading standards in *Iqbal* and *Twombly*.  *See  Castillo v. Roche*

16

*Laboratories, Inc.*, No. 10-20876-CIV, 2010 WL 3027726, at *2 (S.D. Fla. Aug. 2, 2010) (noting that "a majority of district courts in Florida have applied this heightened pleading standard to affirmative defenses"). TD Bank's affirmative defenses are insufficiently pled, as they are mere "labels and conclusions," consisting of single-sentence allegations formulaically reciting the elements of accord and satisfaction, ratification, waiver, estoppel, voluntary payment, and failure to mitigate. *Id.*

Even if TD Bank's specific defenses were sufficiently pled, they do not defeat predominance. Some defenses, such as accord and satisfaction, pertain (if at all) to damages and can be accounted for if proved by Plaintiffs' expert's calculations. *See Carbajal v. Capital One F.S.B.*, 219 F.R.D. 437, 441 n.2 (N.D. Ill. 2004) (setoffs would not be a significant focus of the case and would likely involve nothing more than a mere calculation). The Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification. *See Allapattah Servs.*, 333 F.3d at 1261; *Sacred Heart*, 601 F.3d at 1178.

Others, such as waiver,[6] ratification,[7] the voluntary payment doctrine,[8] and failure to mitigate[9] require, under the law of all fourteen states at issue, full knowledge by Plaintiffs and

---

[6] *See Roy v. Metropolitan Property and Cas. Ins. Co.*, 909 A.2d 980, 982 (Conn. App. Ct. 2006) ("Waiver involves an *intentional* relinquishment of a *known* right . . . .") (emphasis added and internal quotation marks omitted); *Amirsaleh v. Board of Trade of City of New York, Inc.*, 27 A.3d 522, 529-30 (Del. 2011) (same); *Travelers Indem. Co. of Illinois v. United Food & Commercial Workers Intern. Union*, 770 A.2d 978, 992 (D.C. 2001) (same); *Alston v. Alston*, 960 So.2d 879, 881 (Fla. Dist. Ct. App. 2007) (same); *Kraul v. Maine Bonding & Cas. Co.*, 559 A.2d 338, 338-39 (Me. 1989) (same); *Hartford Underwriters Ins. Co. v. Phoebus*, 979 A.2d 299, 310 (Md. Ct. Spec. App. 2009) (same); *Margolis v. St. Paul Fire & Marine Ins. Co.*, 125 A.2d 768, 771 (N.H. 1956) (same); *Fish King Enterprises v. Countrywide Ins. Co.*, 930 N.Y.S.2d 256, 259 (N.Y. App. Div. 2011) (same); *Liptrap v. Coyne*, 675 S.E.2d 693, 696 (N.C. Ct. App. 2009) (same); *Com. v. Lucarelli*, 971 A.2d 1173, 1179 (Pa. 2009) (same); *Tidewater Realty, LLC v. State, Providence Plantations*, 942 A.2d 986, 995 (R.I. 2008) (same); *King v. James*, 694 S.E.2d 35, 43 (S.C.App. 2010) (same); *Waterbury Feed Company, LLC v. O'Neil*, 915 A.2d 759, 762 (Vt. 2006) (same); *Stockbridge v. Gemini Air Cargo, Inc.*, 611 S.E.2d 600, 605 (Va. 2005) (same).

[7] *See E. Devoe Tompkins, Inc., v. City of Bridgeport*, 123 A. 135, 137 (Conn. 1923) (requiring "full knowledge" for ratification); *Dannley v. Murray*, No. CIV.A. 5383, 1980 WL 268061 (Del. Ch. July 3, 1980) (same); *Wittlin v. Giacalone*, 171 F.2d 147, 148 (D.C. Cir. 1949) (same); *Deutsche Credit Corp. v. Peninger*, 603 So.2d 57, 59 (Fla. Dist. Ct. App. 1992) (same); *Wilkins v. Waldo Lumber Co.*, 153 A. 191, 193 (Me. 1931) (same); *Oaks v. Connors*, 660 A.2d 423, 426 (Md. 1995) (same); *Jacob Trinley & Sons v. Golter*, 41 A.2d 243 (N.H. 1945) (same); *New York State Medical Transporters Ass'n, Inc. v. Perales*, 566 N.E.2d 134, 137 (N.Y. 1990) (same); *Leiber v. Arboretum*

members of the Class of material facts making their actions knowing and voluntary.[10]  However,

Plaintiffs have alleged, and offered evidence to prove, that TD Bank actively sought to conceal

from its customers material information, including the existence of its secret "line of credit

which dictated how overdraft charges were generated, and that they had the right to opt out of the

overdraft program (and thereby avoid overdrafts), and that TD Bank engaged in the uniform

practice of omitting to disclose to its customers at the point of sale that transactions would lead

to overdraft fees or their multiplication.

Specifically, Plaintiffs alleged that throughout the Class Period, if a customer's primary

account and any linked account balances were not sufficient to cover the transaction amount, TD

Bank secretly authorized customers' debit-card transactions into overdraft up to a maximum or

ceiling amount that the bank determined was appropriate for each customer.  Plaintiffs allege that

---

*Joint Venture, LLC*, 702 S.E.2d 805, 812 (N.C. Ct. App. 2010) (same); *DeSilvio v. Restaure*, 400 A.2d 211, 213 (Pa. Super. Ct. 1979) (same); *UST Corp. v. General Road Trucking Corp.*, 783 A.2d 931, 939 (R.I. 2001) (same); *Neely v. Love*, 142 S.E. 623, 642 (S.C. 1928) (same); *Smith v. Mountjoy*, 694 S.E.2d 598, 603 (Va. 2010) (same); *Page v. Suraci*, 483 A.2d 601, 603 (Vt. 1984) (same).

[8]  *Eagle Maint. Services, Inc. v. Dist. of Columbia Contract Appeals Bd.*, 893 A.2d 569 (D.C. 2006) (The voluntary payment doctrine. . . provides that money *voluntarily paid* under a claim of right to the payment, and *with knowledge of the facts* by the person making the payment, cannot be recovered by the payor . . .) (emphasis added and internal quotation marks omitted); *W. Natural Gas Co. v. Cities Serv. Gas Co.*, 201 A.2d 164 (Del. 1964) (same); *Morris v. City of New Haven*, 63 A. 123, 124 (Conn. 1906) (same); *City of Key W. v. Florida Keys Cmty. Coll.*, 3D11-417, 2012 WL 126858 (Fla. Dist. Ct. App. Jan. 18, 2012) (same); *Norton v. Marden*, 15 Me. 45, 45 (Me. 1838) (same); *Dua v. Comcast Cable of Maryland, Inc.*, 805 A.2d 1061 (Md. 2002) (same); *E.D. Clough & Co. v. Boston & M.R.R.*, 90 A. 863, 876 (N.H. 1913) (same); *City of Camden v. Green*, 25 A. 357, 357 (N.J. 1892) (same); *Collins v. Covert*, 98 S.E.2d 26, 29 (N.C. 1957) (same); *Peebles v. City of Pittsburgh*, 101 Pa. 304, 304 (Pa. 1882) (same); *Fairbanks v. Mann*, 34 A. 1112, 1113 (R.I. 1896) (same); *Hardaway v. S. Ry. Co.*, 73 S.E. 1020, 1025 (S.C. 1912) (same); *Wilson v. Alexander*, 139 Vt. 279, 428 A.2d 1089 (Vt. 1981) (same); *Dodson v. Newport News Shipbuilding & Dry Dock Co.*, No. 0278-99-1, 1999 WL 1133301 (Va. Ct. App. Aug. 10, 1999) (same).

[9] It is unclear what TD Bank means by its "failure to mitigate" defense or how it differs from ratification, waiver, and voluntary payment.  Regardless, the one case TD Bank cites for it shows that, like waiver, estoppel, and voluntary payment, it requires that Plaintiffs and members of the class have full knowledge of TD Bank's policies and practices. *See Shelley v. AmSouth Bank*, No. CIV.A.97-1170-RV-C, 2000 WL 1121778, *11 (S.D. Ala. June 24, 2000).

[10] Moreover, these defenses may pertain more to damages than liability, depending on how the facts develop in discovery.  *See, e.g., Coughlin v. Blair*, 41 Cal. 2d 587, 602-03 (1953) (discussing waiver in the context of the measure of damages, not liability); *see also Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1114 (C.D. Cal. 2001) (affirmative defenses of waiver and mitigation pertained to damages, not liability).

this was done via a confidential automated process using a line of credit that TD Bank built for the customer. Plaintiffs further allege that, augmenting its re-sequencing practice, TD Bank's secret use of the line of credit was integral to its overall scheme of increasing the number of completed debit transactions and the number of overdrafts. And they allege that the entire process of determining the amount of the line of credit and authorizing a transaction into overdraft was not disclosed to customers during the Class Period. If Plaintiffs can prove these facts, they will undercut TD Bank's defenses by common evidence.[11]

### (ii)   Superiority

Finally, the Court now turns to the issue of superiority under Rule 23(b)(3). The four factors identified by Rule 23, *see Walco*, 168 F.3d at 337, requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.* Plaintiffs contend that a class action is superior to separate actions for each member of the putative class. Citing the factors identified by Rule 23(b)(3), Plaintiffs claim that the class action vehicle provides the most efficient, effective, and economic means of settling the controversy.

When considered in light of Rule 23(b)(3), the Court finds that Plaintiffs have met their burden in demonstrating the superiority of class action, and indeed it may be the only realistic way these claims can be adjudicated. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). The class action fills an essential role when the plaintiffs would not

---

[11] Plaintiffs have alleged and offered evidence to support the allegation that TD Bank instructed its employees not to reveal the limits on the secret lines of credit to customers. To the extent TD Bank could prove that some customers nonetheless learned of their limit, yet continued to incur and pay overdraft fees, the presence of individualized defenses as to a small number of class members would not destroy the predominance of common liability questions. *See Smilow v. Southwestern Bell Mobile, Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008); *Robin Drug Co. v. Pharmacare Mgmt. Servs., Inc.*, No. Civ. 033397, 2004 WL 1088330, at *5 (D. Minn. May 13, 2004).

have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability. The Supreme Court has long recognized that where, as here, "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980). Thus, the Court's jurisprudence demonstrates the "recognition that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages done to any single individual or entity are too small to justify bringing an individual action." *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 194 (2d Cir. 2011); *see, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that the class action mechanism may empower "plaintiffs to pool claims which would be uneconomical to litigate individually," such as when most of them "would have no realistic day in court if a class action were not available."); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("[T]he class attorney, who is familiar with the facts and the progress of the litigation, will be able to present the claimant's case. If relegated to a new suit, the individual might be unable to obtain counsel to prosecute his action when the amount of individual damages is relatively small. . . . By obviating the need to bring a new lawsuit, the expense of litigating the new individual claim is reduced.") (quoting *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1220 n.80 (5th Cir. 1978)).

Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy. Nearly all of the class members in this case have claims that are so small that it would cost them much more to litigate an individual case than they could ever

hope to recover in damages, and thus there is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation. Concentrating the litigation in this forum is logical and desirable. And as noted above, this case is eminently manageable as a class action. Accordingly, the Court finds that Plaintiffs have met the superiority requirement of Rule 23(b)(3).

### (iii)   Subclasses

The Court also certifies the creation of thirteen subclasses: three good faith and fair dealing subclasses, three unjust enrichment subclasses, two unconscionability subclasses, and five subclasses for the unfair and deceptive trade practice act claims. Plaintiffs' Trial Plan, included in Appendix I to the Motion, contains an extensive analysis of state law breach of the duty of good faith and fair dealing, unjust enrichment, unconscionability, and violation of certain state unfair and deceptive trade practice acts. As the surveys demonstrate, variations are minimal.[12]

The Court therefore finds that the creation of subclasses to address variations in state law is appropriate here, and will make this case manageable as a class action. *See, e.g., Klay*, 382 F.3d at 1262 (noting that "if applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate."). The court "may authorize aggregate treatment of multiple claims, or of a common issue therein, by way of a class action if the court determines that

(1) a single body of law applies to all such claims or issues;

---

[12] For example, the law breach of the duty of good faith and fair dealing is relatively uniform between the three subclasses, with each requiring a valid contract, some level of unreasonable interference with the contract by the defendant, and resulting damages. *See* Trial Plan at 10-12 & Exhibit A.

(2)  different claims or issues are subject to different bodies of law that are the same in functional content; or

(3)  different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can manage by means of identified adjudicatory procedures."

American Law Institute, *Principles of the Law: Aggregate Litigation* § 2.05(b) (2010).  The proposed special verdict forms and supporting surveys of law submitted by Plaintiffs with their Trial Plan illustrate that the variations among the potentially applicable state laws are not material and can be managed to permit a fair and efficient adjudication by the fact finder at trial. Each subclass will have its own start date linked to the statute of limitations for each of those claims.  Each subclass groups the laws of the relevant states accordingly.

TD Bank argues that, despite the materially identical legal standards pertaining to the subclasses (as grouped by Plaintiffs), individual issues predominate with regard to these claims. Its argument relies on an incorrect reading of the relevant law.  For example, it is not the case that the individual Plaintiffs' and class members' subjective expectations are necessary to prove their claims.  To the contrary, breach of the duty good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct. *See, e.g., Menagerie Prods. v. Citysearch*, No. CV 08-4263, 2009 WL 3770668, at *10–12 (C.D. Cal. Nov. 9, 2009).  Plaintiffs' unconscionability claims similarly focus on TD Bank's common and uniform conduct, making them appropriate for certification. *See, e.g., Dienese v. McKenzie Check Advance of Wis., L.L.C.*, 2000 WL 34511333, at *5–6 (E.D. Wis. Dec. 11, 2000) (citing cases approving of class certification of common-law unconscionability claims).  So, too, with Plaintiffs' unjust enrichment claims – courts often certify unjust enrichment claims because "common questions predominate" and are "all easily resolved class wide." *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 669 (S.D. Cal. 2010); *see also In re Terazoxin*

22

*Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004) (certifying unjust enrichment class); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011) ("[W]hen the defendant's conduct is the same, 'it is difficult to conceive of any significant equitable differences between class members.'" ).  Finally, the uniformity of TD Bank's representations to members of the class, through the account agreement, and the focus on its conduct, also renders the claims under the Pennsylvania, New Jersey, New York, Connecticut and Vermont consumer protection statutes appropriate for certification.  Indeed, courts have certified classes under each of the relevant states' consumer protection statutes when the claims arose out of the defendant's common and uniform conduct.[13]

## III.   Conclusion

In accordance with the findings above, it is hereby **ORDERED, ADJUDGED and DECREED** that Plaintiffs' Motion for Class Certification (DE #2256, 2579) be, and the same is hereby, **GRANTED**.  The Court certifies the following class:

> All TD Bank customers in the United States who had one or more consumer accounts and who, from applicable statutes of limitation through August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of TD Bank's practice of sequencing debit card transactions from highest to lowest.

---

[13] *See Super Glue Corp. v. Avis Rent A Car Sys.*, 132 A.D.2d 604 (N.Y. App. Div. 1987) (reversing denial of class certification of unfair trade practices claim where claims were based on defendant's "standardized rental agreements"); *Taylor v. American Bankers Ins. Group.*, 267 A.D.2d 178 (N.Y. App. Div. 1999) (affirming certification of claims for breach of contract and violation of the new York consumer protection statutes based on defendants' uniform offers of insurance coverage); *Morrissey v Nextel Partners, Inc.* 72 A.D.3d 209 (N.Y. App Div 2010) (certifying class under New York consumer protection act given the uniformity of a cellular telephone company's spending limit fee increase disclosure); *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (N.J. 2006) (reversing denial of class certification on a New Jersey consumer fraud act claim where claims were based on a uniform marketing scheme); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46 (D.N.J. 2009) (certifying claim under the new Jersey consumer fraud act and holding that it was not necessary for the plaintiff purchasers to prove that the relied on the defendant's alleged non-disclosures); *Wright v. Honeywell, Int'l, Inc.*, 2009 VT 123 (Vt. 2009) (certifying Vermont consumer protection act claim); *See also Butler v. Vt. Elec. Power Co.*, No. 06-517, 2008 VT LEXIS 31, *23 (Vt. Sup. Ct. Mar. 14, 2008) (denying class certification of claim under the Vermont consumer protection act but because of the many oral representations made to class members but noting that such a claim could be certified and individual determinations would not be required where only a uniform written misrepresentation was at issue); *Allen*, 249 F.R.D. at 195.

It is further **ORDERED, ADJUDGED and DECREED** that Plaintiffs' Motion for the creation of thirteen subclasses included in its Motion for Class Certification be, and the same is hereby, **GRANTED**.  The Court certifies the following thirteen subclasses:

> Three good faith and fair dealing subclasses (one encompassing Connecticut, Delaware, New Hampshire, New Jersey, North Carolina, and Vermont; one encompassing the District of Columbia, Rhode Island, South Carolina, Virginia, Maryland, and New York; and one encompassing Florida, Maine, and Pennsylvania); three unjust enrichment subclasses (one encompassing Connecticut, the District of Columbia, New Hampshire, and Vermont; one encompassing Florida, Maine, Maryland, Pennsylvania, Rhode Island, South Carolina, and Virginia; and one encompassing Delaware, New Jersey, New York, and North Carolina); two unconscionability subclasses (one encompassing Connecticut, Delaware, the District of Columbia, Florida, Maine, Maryland, New Hampshire, New Jersey, North Carolina, Pennsylvania, Rhode Island and South Carolina); and five subclasses for the Connecticut, New Jersey, New York, Pennsylvania, and Vermont statutory claims.

The Court appoints Plaintiffs as representatives of the Class, and as representatives of the following specific subclasses:  Ian McNulty, Gregory, Carcaci, Paige Schwartzman, Lucy Nico and Suzanne Hubbard as representatives of the Good Faith and Fair Dealing Subclass No. 1; James Daniels and Kelli Heard as representatives of the Good Faith and Fair Dealing Subclass No. 2; Todd Mosser as representative of the Good Faith and Fair Dealing Subclass No. 3; Ian McNulty, Suzanne Hubbard, Todd Mosser, Gregory, Carcaci, Paige Schwartzman, Lucy Nico, James Daniels and Kelli Herd as representatives of Unjust Enrichment Subclass No. 1; Todd Mosser as class representative of Unjust Enrichment Subclass No. 2; Gregory Carcaci, Lucy Nico, Paige Schwartzman, James Daniels and Kelli Herd as class representatives of Unjust Enrichment Subclass No. 3; Todd Mosser, Gregory Carcaci, Lucy Nico, Paige Schwartzman and Ian McNulty as class representatives of Unconscionability Subclass No. 1; Suzanne Hubbard, James Daniels, and Kelli Herd as class representatives of Unconscionability Subclass No. 2; Ian McNulty as the class representative of the Connecticut Unfair and Deceptive Trade Practice Act

Subclass; Gregory Carcaci, Lucy Nico and Paige Schwartzman as class representatives of the new Jersey Consumer Fraud Act Subclass; James Daniels and Kelli Herd as class representatives of the New York Deceptive Trade Practices Act Subclass; Todd Mosser as class representative of the Pennsylvania Unfair Trade Practices and Consumer Protection Law Subclass; and Suzanne Hubbard as class representative of the Vermont Consumer Fraud Act Subclass.

The Court also appoints the following firms as Class Counsel pursuant to Fed. R. Civ. P. 23(g): Bruce S. Rogow, P.A.; Podhurst Orseck, P.A.; Grossman Roth, P.A.; Baron & Budd, P.C.; Golomb & Honik, P.C.; Lieff Cabraser Heimann & Bernstein LLP; Trief & Olk; Webb, Klase & Lemond, L.L.C. and Whatley Drake & Kallas, LLC.[14]

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida this 3rd day of April, 2012.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Copies furnished to:

Counsel of Record

---

[14] The Court will address the procedure for providing notice to class members regarding the certification of the class and these claims separately.