UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Shane Swift v. BancorpSouth, Inc.,*
N.D. Fla. Case No. 1:10-cv-00090-SPM
S.D. Fla. Case No. 1:10-cv-23872-JLK

**REPLY IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION
TO ENJOIN COPYCAT CASE UNDER THE ALL WRITS ACT**

Plaintiff Shane Swift files this Reply in support of the Emergency Motion to Enjoin
Copycat Case Under the All Writs Act ("Motion") [**DE # 2603**].

**I.   INTRODUCTION**

The Motion should be granted because:

- *Thomas* is a later-filed case asserting the same or substantially similar claims to those being prosecuted in *Swift* for the past 18 months;

- *Thomas'* predecessor, *Lawson*, was voluntarily dismissed as a pretext for BancorpSouth engaging in secret settlement negotiations in Arkansas;

- BancorpSouth and its counsel engaged in secret settlement negotiations in Arkansas for six months while the *only* case pending against it was *Swift*;

- During the same six month period, BancorpSouth and its counsel were engaged in an ongoing, detailed exchange of settlement-related data and information with Plaintiff's counsel in *Swift* under the pretext of preparing for an eventual mediation in *Swift*;

- BancorpSouth secretly negotiated the *Thomas* settlement in Arkansas designed to undermine the class claims being prosecuted in *Swift*;

• BancorpSouth's counsel failed to fully disclose the nature and complete procedural status of *Swift* to the *Thomas* Court during the March 26 hearing in order to secure preliminary approval of a collusive and inadequate settlement; and

• BancorpSouth's counsel failed to timely disclose the existence of *Lawson* or *Thomas* to this Court, the JPML, or to Swift's counsel until after securing a rushed preliminary approval of the *Thomas* settlement outside of MDL 2036.

## II.   SUMMARY OF MARCH 26 HEARING BEFORE JUDGE DAWSON

While BancorpSouth's opposition claims that it fully disclosed the nature and procedural status of *Swift* to the Honorable Robert T. Dawson, United States District Judge, Western District of Arkansas, the transcript of the March 26, 2012 hearing proves otherwise. A careful reading of that transcript confirms that BancorpSouth's counsel (and plaintiff's counsel) selectively disclosed the nature and status of the proceedings in *Swift* by failing to disclose to Judge Dawson that: (i) the claims in *Swift* are substantially similar to those asserted in the recently-filed *Thomas* case; (ii) the claims in *Swift* have been pending and actively litigated for over 18 months; (iii) the motion for class certification in *Swift* was briefed and pending decision at the time BancorpSouth appeared for the March 26 hearing; and (iv) this Court in *Swift* long ago entered a comprehensive scheduling order establishing pretrial deadlines, including a June 22, 2012 deadline for completing discovery and a January 14, 2013 trial date.

BancorpSouth's counsel failed to fully disclose these facts to Judge Dawson for good reason. Judge Dawson expressed concern about the *Thomas* parties' rush to obtain preliminary approval of a class action settlement in a case filed less than a month earlier:

> I am a little concerned with the speed with which we are moving. We do have a rocket docket and you can get a setting usually before you want a setting, but, you know, I'm willing to proceed as fast as you think we should proceed. But I would ask that today that we be as deliberate and as thoughtful as we can, because -- not to have a misstep because we are in -- we are apparently in a hurry.

(Transcript at 4).[1]

BancorpSouth's counsel explained that his client's urgency in seeking preliminary approval was to satisfy three interested constituencies: (1) the proposed settlement class (BancorpSouth's customers) with whom the bank had existing banking relationships; (2) bank regulators; and (3) the bank's shareholders. (Id. at 15-17). At no time, however, did

---

[1] The Transcript of the March 26, 2012 hearing is attached as Exhibit 1.

BancorpSouth's counsel mention *this Court's* interest given its nearly two year history presiding over *Swift*.

BancorpSouth also misled Judge Dawson into believing he should have no concerns about how this Court would react to a preliminary approval order in *Thomas* based on settlements announced between parties in other cases pending in MDL 2036. (Id. at 21-23). When Judge Dawson expressed concern that he might be infringing upon this Court's jurisdiction, BancorpSouth's counsel deflected the issue by stating that this Court regularly enters stay orders when settlements are announced. What BancorpSouth's counsel failed to disclose was that such stays have generally been granted in response to *joint* requests by settling parties in MDL 2036, not unilaterally when one party to first-filed litigation pending in MDL 2036 attempts to settle those claims with another party outside of MDL 2036. BancorpSouth's counsel also failed to disclose that a class certification decision in *Swift* was imminent:

> THE COURT: If I agree to this [meaning preliminary approval], *am I going to be on the blacklist of the judge in Florida* or is that - -
> MR. TAYLOR: I certainly would hope not, Judge. I think what we've seen with Judge King is whenever settlement - -
> THE COURT: He or she may be willing to get rid of it in a hurry.
> MR. TAYLOR: I was going to say, *every settlement that's been presented in that court and from outside that court has resulted in a stay of the class aspects of the litigation and the MDL. We have been careful to preserve the right of the plaintiff to pursue his claim.*
> THE COURT: But it has not been certified beyond the fact that he is just an individual plaintiff in that case?
> MR. TAYLOR: *Exactly right, sir. There is one plaintiff, no class certified.*

(Id. at 20-21) (emphasis added).[2]

---

[2] Throughout the March 26 hearing, counsel uniformly made similar omissions regarding *Swift*. When Judge Dawson specifically inquired about the status of *Swift*, the *Thomas* plaintiffs' counsel stated:

> *There is an uncertified class action pending in the Southern District of Florida.* The fellow who filed it is a guy named Shane Swift out of Jonesboro. He filed it with some Florida lawyers in the Northern District of Florida, not in Arkansas. And BancorpSouth, my understanding, has about two branches in the Northern District of Florida, compared with -- they have got more customers in Union County, Arkansas, than they do in the entire state of Florida. *The case got transferred there, but it's an uncertified class.*

(Id. at 14) (emphasis added).

BancorpSouth's counsel also misled Judge Dawson into believing that *Thomas* would never be transferred to this Court as a tag-along MDL action, stating:

> that the JPML last October stopped sending cases to Florida for whatever determination. Anecdotally, we believe it's because they decided that there were too many cases, that that MDL had gone its course. *So this case would never end up there anyway*.

(Id. at 22) (emphasis added).  Counsel's statement incorrectly suggested that the JPML's October 11, 2011 order suspending application of Panel Rule 7.1(a) applied to banks already defending actions previously made part of MDL 2036, like BancorpSouth.  Candor required that Judge Dawson be told that the JPML likely would transfer *Thomas* to this Court to be included in MDL 2036 because it is clearly a later-filed tag-along action to *Swift*, as the JPML had done with two other tag-along cases following entry of the October 11th order.  *See* **JPML DE # 646 and 654** (Conditional Transfer Order (CTO-42) as to Bank of the West and Conditional Transfer Order (CTO-43) as to TD Bank).

Finally, BancorpSouth's counsel failed to apprise Judge Dawson that the parties in *Swift* had engaged in an extensive process of exchanging settlement-related data and information for a number of months under the pretext of participating in mediation, while simultaneously engaging in secret settlement negotiations in *Lawson/Thomas*.[3]

In sum, BancorpSouth and its counsel, aided by willing plaintiffs' lawyers in Arkansas ready to strike a quick deal, misled Judge Lawson into preliminarily approving the settlement of a copycat case which was intentionally designed to extinguish the class claims being prosecuted for nearly two years in *Swift*.

## III.  APPLICATION OF THE FIRST TO FILE RULE *OR* THE ALL WRITS ACT SUPPORTS THE RELIEF REQUESTED.

### A.  The First to File Rule Applies.

As the Court presiding over the first-filed federal action challenging BancorpSouth's overdraft fee policies and practices, this Court should decide whether to apply the First to File Rule to *Thomas*.  It is a fallacy for BancorpSouth to argue that the First to File Rule is inapplicable because *Thomas* is "more fully developed" based on Judge Dawson's preliminary

---

[3] The Supplemental Declaration of Jeffrey M. Ostrow is attached as Exhibit 2.  The Supplemental Ostrow Declaration and accompanying Exhibits A - M are being filed under seal because they include numerous communications designated by BancorpSouth as "Privileged and Confidential – Communicated for Settlement Negotiations Only, Pursuant to Fed. R. Evid. 408."

approval order.  Nothing substantive transpired in *Thomas* other than the February 2012 filing of the complaint, a titular motion to dismiss, and the unopposed motion for preliminary approval of the settlement.  To allow litigants to collude to render a later-filed, for settlement-purposes only case "more fully developed" makes a mockery of the First to File Rule and will only serve to encourage forum shopping by litigants.

As demonstrated above, the *Thomas* parties were not forthright with Judge Dawson.  Had he known the true status of *Swift*, Judge Dawson would likely have denied preliminary approval outright, or at least deferred ruling in order to first consult with this Court.  Granting class certification in *Swift* based on the well-developed record in this case would be far more significant than what Judge Dawson described as certification of a "plaintiff class for settlement purposes only. . . ."  [**DE # 2602-1 at ¶1**].  Comparing the proceedings in *Swift* to the little that occurred in *Thomas* fully supports application of the First to File Rule.

It is also a fallacy to suggest that the issues addressed in *Thomas* are broader than *Swift* by virtue of the inclusion of check transactions and NSF fees in the *Thomas* settlement.  Opp. at 14-15.  The *Thomas* complaint does *not* target check transactions; it is a case about debit card overdraft fees, and the additional alternative causes of action will not change the monetary or non-monetary relief if *Thomas* were to be litigated through trial.  It is disingenuous for BancorpSouth to argue that the *Thomas* plaintiffs are pursuing *all* causes of action in *every* state within the bank's footprint, in particular with regard to the state deceptive trade practices act claims, where this Court ruled – based on the motions of bank defendants in MDL 2036 – that plaintiffs may only pursue deceptive trade practices claims for states in which named plaintiffs reside.  *In re Checking Acct. Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324 (S.D. Fla. 2010).  It would be error for the *Thomas* court to depart from that well-settled rule, even with a settlement class.  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306 (3d Cir. 1998).  Additionally, differences in plaintiff class representatives do not bar application of the First to File Rule because the focus should be on the class, not the class representatives.  *See*, *e.g.*, *Adoma v. University of Phoenix, Inc.*, 711 F.Supp.2d 1142, 1147 (E.D. Cal. 2010).

**B.**     **The Court May Also Exercise its Discretion Under the All Writs Act.**

BancorpSouth also incorrectly argues for a rigid approach to applying the All Writs Act, and that *In re Managed Care* does not provide precedent for this Court to enjoin *Thomas*. Despite immaterial differences in the procedural history, Judge Moreno's well-reasoned order in *Managed Care* provides the blue print for this Court.

This Court should reject BancorpSouth's argument that this Court's jurisdiction is protected based on the fact that the *Thomas* settlement still permits Plaintiff Swift to pursue his *individual* claims in this action. *Swift* was transferred to MDL 2036 for coordinated pretrial proceedings, including class certification and settlement. Were it not for the fact that BancorpSouth found a willing partner outside of MDL 2036 with whom to strike an inadequate settlement, an All Writs Act injunction would be unnecessary. Although BancorpSouth would have this Court ignore its significance, the existence of a fully briefed certification motion in *Swift* is procedurally important because the *Thomas* class has been certified for settlement purposes only.

In addition to the cases previously cited in the Motion, two post-*Managed Care* orders from other courts support the relief sought in the Motion. In *In re Bank of Amer. Wage and Hour Employ. Litigation*, 740 F. Supp. 2d 1207 (D. Kan. 2010), an MDL court enjoined subsequently filed proceedings in another federal district court in which a class settlement had been preliminarily approved. Like the situation here, there were overlapping claims and the proposed settlement would likely extinguish claims in the MDL court. *Id.* at 1209. The MDL court criticized Bank of America for not disclosing the non-MDL case, concluding that the integrity of the judicial process in the MDL court would be undermined and that the bank had disregarded direct court orders. *Id.* Initially, like *Lawson* here, the non-MDL case was a non-removable state court action. *Id*. at 1210. However, the complaint was amended, like *Thomas* here, in a fashion that allowed for and prompted removal by the bank. *Id.*

Distinguishing cases, including some of the same cases on which BancorpSouth relies,[4] the MDL court in *Bank of Amer.* found it significant that "that none of those cases concerned a defendant attempting to settle a tag-along action outside the context of an MDL after deliberately or inadvertently failing to disclose the case to the JPML or the MDL court." 740 F. Supp. 2d at 1215. It did not matter that there was no pending settlement or a class certification order in the MDL action. *Id.* at 1214-15. The court analogized to *Managed Care*, finding that order very persuasive. *Id.* at 1216.

To the extent necessary, but noting authority that an All Writs Act movant need not prove all Federal Rule of Civil Procedure 65 injunctive relief prerequisites, the MDL court in *Bank of*

---

[4] BancorpSouth cites *Negrete v. Allianz Life Ins. Co.,* 523 F.3d 1091, 1099 (9th Cir. 2008), and *Grider v. Keystone Health Plan Cent., Inc.,* 500 F.3d 322 (3d Cir. 2007).

*Amer.* found that the circumstances satisfied those requirements.[5]  Most notable is the MDL court's conclusion that irreparable harm would ensue once the class action settlement notice was sent to the class in the settled case, and the settlement would establish a lower baseline for future settlement negotiations in the MDL.  It also made sense to enjoin the non-MDL action to allow the JPML to decide whether to transfer the case.  *Id.* at 1217.  As in *Bank of Amer.*, BancorpSouth can argue to the JPML that *Thomas* is not a tag-along case and the associated delay in noticing the *Thomas* settlement class while that process is completed will be minimal.

*In re America Online Spin-Off Accounts Litigation*, MDL Docket No. 04-1581, 2005 WL 5747463 (C.D. Cal. May 9, 2005) (unpublished), also supports application of the All Writs Act. There, the court enjoined efforts to have a state court class settlement approved where America Online ("AOL") secretly negotiated a state court settlement after it was unsuccessful in negotiating a settlement of claims being litigated against it in a pre-existing MDL proceeding. *Id.* at *2.  Many of the points that BancorpSouth raises about the status of *Swift* were raised by AOL and rejected by that court.  The court enjoined the Illinois state court proceeding because the settlement in that forum "diminishes this Court's ability to bring the MDL litigation to a natural conclusion."  *Id.* at *4.  Similar to the situation here, there were concerns about reverse auction activity and gamesmanship by AOL, the MDL defendant.  *Id.* at *5.  AOL also failed to comply with a local court rule requiring disclosure of a similar action being filed.  *Id.*

## IV.   BANCORPSOUTH WAS OBLIGATED TO DISCLOSE *THOMAS* TO THE JMPL AND THIS COURT.

Even if the Arkansas state court action (*Lawson*) was technically not subject to removal because plaintiff's counsel stipulated to limit damages to avoid CAFA jurisdiction (clearly raising questions as to their adequacy to represent the class in that case),[6] the filing of *Thomas* triggered a duty to notify the JPML of a potential tag-along case. JPML Rule 7.1(a) expressly

---

[5] Judge Moreno concluded in *Managed Care*: "Because the type of injunction here does not fall within the scope of the typical Rule 65 injunction, Plaintiffs do not have to meet the Rule 65 requirements."  *In re Managed Care Litig.*, 236 F. Supp. 2d 1336, 1343 (S.D. Fla. 2002).

[6] In a recent order from an Arkansas federal court, the same attorneys for the *Thomas* plaintiffs noted that a question as to adequacy of the class representative and class counsel arises when stipulations to limit damages are attached to the complaint in an effort to prevent CAFA removal. *See Murphy v. Reebok Int'l, Ltd.*, Case No. 4:11-cv-214-DPM, 2011 WL 1559234, at *3 (E.D. Ark. Apr. 22, 2011) (slip copy).

applies to *any* party to an MDL action who learns of a potential tag-along case.[7]  Ironically, were it not for the fact that BancorpSouth had a proposed class settlement in hand, it is highly likely BancorpSouth would have itself tagged *Thomas* as a competing federal case to limit the number of cases it would have to defend.

The JPML has issued conditional transfer orders involving other banks already part of the MDL 2036 since entry of the October 11, 2011 suspension order, signaling to BancorpSouth's counsel that *Thomas* would likely be similarly.  Knowing that Plaintiff Swift's class certification motion was ripe for adjudication before this Court and that discovery was well underway and continuing, BancorpSouth instead chose not to alert Plaintiff Swift's counsel about *Thomas* in order to allow sufficient time for the *Thomas* parties to rush into Court before Judge Dawson and secure preliminary approval of their inadequate settlement.

Under Rule 7.1(a), BancorpSouth's counsel should have timely notified the JMPL and this Court of the existence of *Thomas*, that it was a potential tag-along case and that it had agreed to settlement terms with the *Thomas* plaintiffs and would oppose transfer to MDL 2036 on that basis.  Of course, doing so would have given Plaintiff's counsel in *Swift* time to immediately move this Court to enjoin *Thomas*, even if the JPML had yet to decide on transfer.  Had BancorpSouth's counsel done so, efforts to intervene in *Thomas* before preliminary approval would also have been possible.

Additionally, and contrary to its argument that it was not obligated to disclose the competing actions, Opp. at p. 15-16, BancorpSouth's counsel failed to comply with the clear dictates of S.D. Fla. Local Rule 3.8, which provides:

> It shall be the continuing *duty of the attorneys of record in every action or proceeding to bring promptly to the attention of the Court and opposing counsel* the existence of other actions or proceedings as described in Section 2.15.00 of the Court's Internal Operating Procedures, *as well as the existence of any similar actions or proceedings then pending before another court* or administrative agency. Such notice shall be given by filing with the Court and serving on counsel a "Notice of Pending, Refiled, Related or Similar Actions," containing a list and description thereof sufficient for identification.  (emphasis added).

BancorpSouth's counsel violated Rule 3.8 by delaying notice to this Court of *Lawson* or *Thomas* until after entry of the *Thomas* preliminary approval order.

---

[7] JPML Rule 7.1(a) states:  "*Any party or counsel* in actions previously transferred under Section 1407 *shall promptly notify* the Clerk of the Panel of any potential tag-along actions *in which that party is also named* or in which that counsel appears." (emphasis added.)

**V.    BANCORPSOUTH AND ITS COUNSEL ENGAGED IN A REVERSE AUCTION SETTLEMENT.**

Even though BancorpSouth did not disclose its settlement negotiations with the *Lawson/Thomas* parties to Plaintiff Swift's counsel, the *Thomas* settlement has all the hallmarks of a "reverse auction." As described in *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002), a reverse auction is:

> the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with in the hope that the district court will approve a weak settlement that will preclude other claims against the defendant. *Blyden v. Mancusi*, 186 F.3d 252, 270 n. 9 (2d Cir. 1999); *Coffee*, supra, at 392; Samuel Issacharoff, *"Governance and Legitimacy in the Law of Class Actions*," 1999 Sup.Ct. Rev. 337, 388; Marcel Kahan & Linda Silberman, *"The Inadequate Search for 'Adequacy' in Class Actions: A Critique of Epstein v. MCA, Inc.,"* 73 N.Y.U. L.Rev. 765, 775 (1998); John C. Coffee, Jr., *"Class Wars: The Dilemma of the Mass Tort Class Action,"* 95 Colum. L. Rev. 1343, 1370-73 (1995). The ineffectual lawyers are happy to sell out a class they anyway can't do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line--the sum of the settlement and the attorneys' fees--and not the allocation of money between the two categories of expense.

BancorpSouth's willingness to engage in a "reverse auction" settlement process is clearly evidenced by the events described in Mr. Ostrow's supplemental declaration.[8] *See* Ex. 2. As Mr. Ostrow states, BancorpSouth's counsel was actively engaged in providing confidential settlement-related data and information in *Swift*, under the guise of preparing to engage in mediation, from July 2011 through December 2011. (Ostrow Decl. at ¶¶ 6-19). The seven month process of exchanging confidential settlement data and information culminated on December 6, 2012, when Mr. Ostrow advised BancorpSouth's counsel of the bank's projected damage exposure based on expert analysis of sample customer data provided by BancorpSouth, and that Plaintiff Swift would participate in mediation based on that damages figure. (Id. at ¶ 19).

At no time during the course of exchanging confidential settlement data and information between July 2011 and December 2011 did BancorpSouth's counsel disclose that they were simultaneously engaged in ongoing, secret settlement negotiations with the *Lawson/Thomas*

---

[8] At the inception of the *Lawson* Arkansas state court action, plaintiff's counsel evinced a clear willingness to participate in a "reverse auction" settlement, having stipulated to claim no more than $5 million in damages, inclusive of any attorney's fees and costs, despite not knowing the true value of the class' claims.

parties in Arkansas. (Id. at ¶ 21). Based on that non-disclosure, it appears that BancorpSouth's purpose for engaging in simultaneous settlement communications with Plaintiff's counsel in *Swift* and with counsel in the unfiled *Thomas* case was to find the "lowest bidder" with whom to settle the claims being litigated in *Swift*, and when it became apparent that BancorpSouth would face much greater exposure in *Swift* than elsewhere, BancorpSouth and its counsel covertly concluded a settlement in *Thomas* for a fraction of the class' true damages. (Id. at ¶ 22).

## VI.     CONCLUSION

Based on the foregoing, Plaintiff Swift respectfully urges this Court to enter an Order granting the Motion and denying Bancorpsouth's motion to stay *Swift*.

Dated: April 9, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No. 516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*


/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on April 9, 2012, I electronically filed the foregoing document with

the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served

this day on all counsel of record or *pro se* parties identified on the attached Service List in the

manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF

or in some other authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

13