# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into this 16th day of March, 2012, by and among (1) Plaintiffs, for themselves and on behalf of the Settlement Class, and (2) BOKF, N.A. ("Bank of Oklahoma"), subject to Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. As provided herein, Bank of Oklahoma, Class Counsel and Plaintiffs hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Class against Bank of Oklahoma in the actions titled *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK; *Terry Case v. Bank of Oklahoma, N.A.*, W.D. OK Case No. 5:10-00901-L, S.D. FL Case No. 1:11-cv-20815-JLK; *Susan Eaton v. Bank of Oklahoma, N.A., et al.*, Case No. CJ-2010-5209; and *Bryan Ramer v. Bank of Oklahoma*, N.A., Case No. CJ-2010-05841, shall be settled and compromised upon the terms and conditions contained herein.

**I.    Recitals**

1.    On August 17, 2010, Plaintiff Susan Eaton filed a Class Action Petition in District Court of Tulsa County, Oklahoma seeking monetary damages, restitution and declaratory relief from Bank of Oklahoma, arising from the alleged unfair assessment and collection of overdraft fees, entitled *Susan Eaton v. Bank of Oklahoma, N.A., et al.,* Case No. CJ-2010-5209 ("*Eaton*").

2.    On August 17, 2010, Plaintiff Terry Case filed a Class Action Complaint in United States District Court for the Western District of Oklahoma seeking monetary damages, restitution and declaratory relief from Bank of Oklahoma, arising from the alleged unfair assessment and collection of overdraft fees, entitled *Terry Case v. Bank of Oklahoma, N.A.*, W.D. OK Case No. 5:10-00901-L ("*Case*").

1

3.      On September 16, 2010, Plaintiff Bryan Ramer filed a Class Action Petition in District Court of Tulsa County, Oklahoma seeking monetary damages, restitution and declaratory relief from Bank of Oklahoma, arising from the alleged unfair assessment and collection of overdraft fees, entitled *Bryan Ramer v. Bank of Oklahoma, N.A.*, Case No. CJ-2010-05841 ("*Ramer*").

4.      On September 21, 2010, Bank of Oklahoma moved to Dismiss *Case*.  Thereafter, the Court granted Case's Motion to Stay Proceedings pending the Judicial Panel on Multidistrict Litigation's ("JPML") ruling on Bank of Oklahoma's motion to vacate the conditional transfer order previously entered by the JPML.  On November 30, 2010, the Judicial Panel on Multidistrict Litigation transferred *Case* for coordination with these proceedings, *In re Checking Account Overdraft Fee Litigation*, MDL No. 2036 ("MDL 2036").  Thereafter, Bank of Oklahoma filed a Petition for Mandamus to the 11th Circuit Court of Appeals to vacate the JPML's transfer order.  On March 4, 2011, the 11th Circuit denied the Petition for Mandamus. On October 19, 2011, Case filed his Amended Complaint.  *Case* is within MDL 2036's "Fifth Tranche" of cases.

5.      On September 21, 2010, BOK filed a Motion to Dismiss the *Eaton* action on a number of grounds, including that the state law claims were preempted by the National Bank Act and that the OCPA, breach of contract and unjust enrichment state law claims failed as a matter of law.  After briefing and oral argument, the Court dismissed Plaintiff's unjust enrichment claim but denied BOK's motion as to Eaton's two remaining claims on March 15, 2011.  BOK filed a Motion to Reconsider, which the Court denied on April 14, 2011 without argument.  BOK subsequently filed a Motion for Summary Judgment on Plaintiff's OCPA claims in the *Eaton* matter.  The Court denied this motion without argument on August 17, 2011.  BOK also filed a

Motion to Dismiss in the *Ramer* action prior to its consolidation with *Eaton*.  That Motion to Dismiss was denied without hearing on October 19, 2011 based on the consolidation of the *Ramer* and *Eaton* cases.

6.      On October 19, 2011, Plaintiffs took a corporate representative deposition.

7.      Plaintiff in *Eaton* propounded her first request for production of documents, first set of interrogatories and first requests for admissions on November 16, 2010.  On April 12, 2011, the Parties entered into a Stipulated Protective Order relating to the production of documents and information.   Plaintiff in *Eaton* propounded her second request for production of documents on June 27, 2011.   Bank of Oklahoma has produced to Plaintiffs approximately twenty-five thousand pages of documents (in addition to many large Excel spreadsheet files).  Pursuant to these production requests, Bank of Oklahoma provided Plaintiffs with sample transactional and aggregate data regarding its overdraft fee revenue.

8.      Bank of Oklahoma denies any wrongdoing but wishes to settle this litigation to avoid any further expense and distraction from it.

9.      The commencement of overdraft fee litigation against other banks occurred in 2007, and MDL No. 2036 was created by the Judicial Panel on Multidistrict Litigation in June 2009.

10.     Amendments to Regulation E became effective in January 2010.

11.     In 2010, BOK modified certain of its overdraft policies and practices.  Among those modifications, Bank of Oklahoma capped the number of overdraft fees a customer may be assessed in a single banking day at five (5), and instituted a policy whereby an account is not charged an Overdraft Fee if it is overdrawn by a *de minimis* amount of less than $5.

12.     Beginning in early 2011, the Parties engaged in preliminary settlement discussions. Thereafter, the Parties participated in several formal mediation sessions.

13.     On November 11, 2011, the Parties held a formal mediation session with the Honorable Layn Phillips (Ret.) in Tulsa, Oklahoma.  As a result of the mediation, the Parties signed a Term Sheet that memorialized, subject to a mutually agreeable written Settlement Agreement and subject to preliminary approval and final approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally, and forever resolve, discharge and release all rights and claims of the Settlement Class Members in exchange for Bank of Oklahoma's agreement to pay the sum of $19,000,000 to create a common fund for the benefit the Settlement Class, and to pay the costs of Class notice and costs of settlement administration.

14.     On November 23, 2011, the Parties filed a Notice of Settlement with the Court in MDL 2036 and with the court presiding over *Eaton* and *Ramer*.

15.     The Parties now agree to settle the Actions (defined below) in their entirety, without any admission of liability, with respect to all Released Claims by the Settlement Class. The Parties intend this Agreement to bind Plaintiffs, Bank of Oklahoma, and all members of the Settlement Class who do not timely request to be excluded from the Settlement.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

II.     <u>**Definitions**</u>

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement and the attached exhibits:

16.    "Account" means any consumer checking, demand deposit or savings account maintained by Bank of Oklahoma in the United States that may be accessed by a Debit Card.

17.    "Actions" means the class action lawsuits styled *Terry Case v. Bank of Oklahoma, N.A.*, W.D. OK Case No. 5:10-00901-L, S.D. FL Case No. 1:11-cv-20815-JLK, filed in the Western District of Oklahoma on August 17, 2010 and later consolidated into *In re Checking Account Overdraft Litigation*, Case No. S.D. FL 1:09-md-02036-JLK; *Susan Eaton v. Bank of Oklahoma, N.A., et al.,* Case No. CJ-2010-5209, filed in the District Court of Tulsa County, Oklahoma, on August 17, 2010; *Bryan Ramer v. Bank of Oklahoma, N.A.*, Case No. CJ-2010-05841, filed in the District Court of Tulsa County, Oklahoma, on September 16, 2010 and consolidated with *Susan Eaton v. Bank of Oklahoma, N.A.* as of September 20, 2011.

18.    "Bank of Oklahoma" means BOKF, N.A., and any of its predecessors in interest and any of the entities it acquired, including Bank of Oklahoma, N.A., Bank of Arkansas, N.A., Bank of Albuquerque, N.A., Bank of Arizona, N.A., Bank of Kansas City, N.A., Bank of Texas, N.A., and Colorado State Bank and Trust, N.A.

19.    "Class Counsel" means the firms Tycko & Zavareei LLP, Stueve Siegel Hanson LLP, Gray Ritter & Graham, P.C., Sneed Lang Herrold P.C., Sill & Medley, PLLC, Jeff Martin & Associates, P.C., Finkelstein Thompson LLP, Kopelowitz Ostrow Ferguson P.A., Podhurst Orseck, Chitwood Harley Harnes LLP, Bruce S. Rogow, P.A., Grossman Roth, P.A., Lieff Cabraser Heimann & Bernstein LLP, Webb, Klase & Lemond, LLC, Trief & Olk, Baron & Budd, P.C., and Golomb & Honik, P.C. and such other counsel as are identified in Class Counsel's request for attorneys' fees and costs.

20.    "Class Period" means January 1, 2005 through and including August 31, 2011.

21.    "Court" means the United States District Court for the Southern District of Florida, Miami Division.

22.    "Current Account Holder" means a Settlement Class Member who had an Account during the Class Period, and who continues to have an Account as of the date that the Settlement Fund is distributed to the Settlement Class Members pursuant to this Agreement.

23.    "Debit Card" means a card, sticker, tag or other device issued or provided by Bank of Oklahoma, including a debit card, check card, or automated teller machine ("ATM") card, that can be used to debit funds from an Account by Point of Sale and ATM transactions.

24.    "Debit Card Transaction" means any debit transaction effectuated with a Debit Card, including Point of Sale transactions (whether pinned or pinless) and ATM transactions.

25.    "Effective Date" means the fifth business day after which all of the following events have occurred:

a.    All Parties, Bank of Oklahoma's counsel, and Class Counsel have executed this Agreement;

b.    The Court has entered without material change the Final Approval Order; and

c.    The time for appeal or petition has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired and relief from a failure to file same is not available.

26.     "Escrow Account" means the interest bearing account to be established by the Settlement Administrator consistent with the terms and conditions described in Section III below.

27.     "Final Approval" means the date that the Court enters an order and judgment granting final approval to the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Award to Plaintiffs.  The proposed Final Approval Order that will be attached to the motion for final approval of the Settlement shall be in a form agreed upon by Class Counsel and counsel for Bank of Oklahoma.

28.     "Final Approval Order" means the order and judgment that the Court enters upon finally approving the Settlement.

29.     "High-to-low Debit Card Transaction Sequencing" means Bank of Oklahoma's practice of sequencing an Account's Debit Card Transactions (along with other debit transactions) from highest to lowest dollar amount, which results in some instances in the assessment of additional Overdraft Fees that would not have been assessed if Bank of Oklahoma had used a posting method that sequenced transactions in the chronological order in which the transactions were initiated by Settlement Class Members, or an order that simulated the chronological order in which the transactions were initiated by Settlement Class Members.

30.     "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.  "Notice Program" means the methods provided for in this Agreement for giving the Notice and consists of Mailed Notice, Published Notice, and Long-form Notice substantially in the forms attached hereto as Exhibits 1, 2, and 3, respectively.  A complete description of the contemplated Notice Program is provided in Section VIII, *infra*.

31. "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first mailed or published, and that ends no later than 30 days prior to the Final Approval Hearing. The Opt-Out deadline will be specified in the Notice.

32. "Overdraft Fee" means the fee assessed to a holder of an Account for each item paid when the Account has insufficient funds to cover the item. Fees charged to transfer balances from other accounts are excluded.

33. "Parties" means Plaintiffs and Bank of Oklahoma.

34. "Past Account Holder" means a Settlement Class Member who held an Account at some time during the Class Period but no longer holds an Account as of the date that the Settlement Fund is distributed to Settlement Class Members pursuant to this Agreement.

35. "Plaintiffs" means Susan Eaton, Terry Case and Bryan Ramer.

36. "Point of Sale" or "POS" means a transaction in which an Account holder uses his or her Debit Card to purchase a product or service.

37. "Preliminary Approval" means the date that the Court enters, without material change, an order preliminarily approving the Settlement in the form jointly agreed upon by the Parties.

38. "Released Claims" means all claims to be released as specified in Section XIV of this Agreement. The "Releases" means all of the releases contained in Section XIV of this Agreement.

39. "Released Parties" means those persons released by paragraphs 90-92, *infra*.

40. "Releasing Parties" means all Plaintiffs and all Settlement Class Members who do not timely and properly opt out of the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

41.   "Settlement" means the settlement into which the Parties have entered to resolve the Action.  The terms of the Settlement are as set forth in this Agreement and the attached exhibits.

42.   "Settlement Administrator" means Epiq Systems.

43.   "Settlement Class" means all Bank of Oklahoma customers in the United States who had one or more consumer accounts and who, during the Class Period, incurred an Overdraft Fee as a result of Bank of Oklahoma's High-to-low Debit Card Transaction Sequencing.

44.   "Settlement Class Member" means any person included in the Settlement Class.

45.   "Settlement Fund" means the fund established under Section III of this Agreement.

46.   "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Long-Form Notice, the order preliminarily approving this Settlement, and such other documents as Class Counsel and counsel for Bank of Oklahoma agree to post or that the Court orders posted on the website.  These documents shall remain on the Settlement Website at least until Final Approval.  The URL of the Settlement Website shall be www.BOKFOverdraftSettlement.com or such other URL as Class Counsel and counsel for Bank of Oklahoma may subsequently agree upon in writing.  The Settlement Website shall not include any advertising, and shall not bear or include the Bank of Oklahoma logo or Bank of Oklahoma trademarks.  Ownership of the Settlement Website URL shall be transferred to Bank of Oklahoma within 10 days of the date on which operation of the Settlement Website ceases.

47.    "Tax Administrator" means Damasco & Associates or another professionally recognized tax administrator.  The Tax Administrator will perform all tax-related services for the Escrow Account as provided in this Agreement.

**III.    Establishing and Maintaining the Settlement Fund; Costs of Notice And Settlement Administration.**

48.    In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases as set forth in Section XIV below and the dismissal of the Action upon Final Approval, within fourteen calendar days of Preliminary Approval, Bank of Oklahoma shall deposit the sum of Nineteen Million Dollars ($19,000,000.00) into the Escrow Account to create the Settlement Fund as set forth herein, and, in addition, Bank of Oklahoma agrees to timely advance and pay all costs of providing Notice to the Settlement Class and all costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator.

49.    Upon the establishment of the Escrow Account, the Settlement Funds shall be transferred to the Escrow Account, and may be invested in interest-bearing short-term instruments – to be agreed upon by Class Counsel and Bank of Oklahoma – that are backed by the full faith and credit of the United States Government or that are fully insured by the United States Government or an agency thereof (the "Instruments").  The interest proceeds and the principal may thereafter be reinvested as they mature in similar Instruments, bearing in mind the liquidity requirements of the Escrow Account to ensure that it contains sufficient cash available to pay all invoices, taxes, fees, costs, and expenses, and other required disbursements, in a timely manner.  Except as otherwise specified herein, the Instruments at all times will remain in the Escrow Account.

50.     The Settlement Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1.  All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Bank of Oklahoma or its counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund.  Bank of Oklahoma and its counsel, and Plaintiffs and Class Counsel, shall have no liability or responsibility for any of the Taxes.  The Settlement Fund shall indemnify and hold Bank of Oklahoma and its counsel, and Plaintiffs and Class Counsel, harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

51.     The Settlement Fund shall be used to pay all distributions to the Settlement Class Members, and all attorneys' fees, costs and expenses of Class Counsel (hereinafter referred to as "Net Settlement Fund"), as follows:

    a.      Distribution of payments to the Settlement Class pursuant to Section XI hereof.

    b.      Payment of the Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses pursuant to Section XV hereof.

    c.      Payment of the Court-ordered Service Awards to the Plaintiffs pursuant to Section XV(C) hereof.

52.     In addition to the payment of the funds to establish the Settlement Fund, Bank of Oklahoma shall pay the following:

a.      The costs of Notice to the Settlement Class and for the services of the Settlement Administrator in connection with the provision of Notice, within thirty days of Class Counsel's and counsel for Bank of Oklahoma's receipt and approval of invoices received, as provided in Section VIII hereof.

b.      The Settlement Administrator's costs and fees for services provided pursuant to Section VII hereof, within thirty days of Class Counsel's and counsel for Bank of Oklahoma's receipt and approval of invoices received from the Settlement Administrator.

c.      Bank of Oklahoma's actual expenses that result from investing the Settlement Fund in the Instruments pursuant to paragraph 49 hereof, within thirty days of Class Counsel's and counsel for Bank of Oklahoma's receipt and approval of invoices for such expenses.

d.      All invoices of the Tax Administrator to perform tax-related services for the Escrow Account, within thirty days of Class Counsel's and counsel for Bank of Oklahoma's receipt and approval of invoices received from the Tax Administrator.

e.      All Taxes pursuant to paragraph 50 hereof, including, without limitation, taxes owed as a result of accrued interest on the Escrow Account, in a timely manner consistent with the recommendation of the Tax Administrator, subject to approval by Class Counsel and counsel for Bank of Oklahoma.

f.      Additional fees, costs and expenses not specifically enumerated in subparagraphs (a) through (e) above, subject to approval of Class Counsel and counsel for Bank of Oklahoma.

**IV.     Certification of the Settlement Class**

53.     For purposes of this Settlement only, Bank of Oklahoma agrees to the certification of the Settlement Class.  If the Court declines to approve the Settlement, or if the Court changes

the Settlement Class composition or the terms of the Settlement in any material way not acceptable to Bank of Oklahoma after reasonable consultation with Class Counsel, or if certification of the Settlement Class or approval of the Settlement is reversed,  or if certification of the Settlement Class or approval of the Settlement is changed upon appeal or review in any material way not acceptable to Bank of Oklahoma after reasonable consultation with Class Counsel, Bank of Oklahoma shall have the right to terminate the Settlement pursuant to Section XVI, *infra*.

## V.    Settlement Approval

### A.    Preliminary Approval

54.    Upon execution of this Agreement by all Parties, Class Counsel shall promptly move the Court for an Order granting preliminary approval of this Settlement ("Preliminary Approval Order").  The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and counsel for Bank of Oklahoma.  The Motion for Preliminary Approval shall request that the Court:  (i) approve the terms of the Settlement as within the range of fair, adequate and reasonable; (ii) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (iii) approve the Notice program set forth herein and approve the form and content of the Notices of the Settlement, substantially in the forms attached to this Agreement as Exhibits 1, 2, and 3; (iv) approve the procedures set forth in paragraphs 61 and 62 below for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (v) stay the Action pending Final Approval of the Settlement; and (vi) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Class Counsel and counsel for Bank of Oklahoma, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the

Settlement and Class Counsel's application for attorneys' fees, costs and expenses and for Service Awards to Plaintiffs ("Final Approval Hearing").

55.    Bank of Oklahoma, at its own expense, shall serve or cause to be served a notice of the proposed Settlement, in conformance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

**VI.    Discovery**

56.    Class Counsel and Bank of Oklahoma already have engaged in significant formal and informal discovery.  In addition, and consistent with its statutory and regulatory obligations to protect its customers' private financial information, Bank of Oklahoma will continue to cooperate informally with Class Counsel by providing reasonably available data to permit Class Counsel and their experts to perform the allocation analysis detailed in Section X below.

**VII.    Settlement Administrator**

57.    Class Counsel and Bank of Oklahoma have retained Epiq Systems to serve as the Settlement Administrator.  The Settlement Administrator shall administer various aspects of the Settlement as described in paragraph 59 below and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, providing Mailed Notice to all Settlement Class Members; effectuating the Published Notice Program pursuant to Section VIII below; distributing the Settlement Fund as provided herein; repaying Bank of Oklahoma from the Settlement Fund the amount of account credits Bank of Oklahoma provides to Current Account Holder Settlement Class Members pursuant to paragraph 80 hereof; and  paying the remainder of the Settlement Fund to Bank of Oklahoma in the event of a termination of the Settlement pursuant to Section XVI hereof.  Class Counsel and counsel for Bank of Oklahoma will jointly oversee the Settlement Administrator.

58.     As specified below, all Settlement Administrator fees, charges and expenses shall be paid by Bank of Oklahoma within 30 days of Class Counsel's and counsel for Bank of Oklahoma's receipt and approval of an invoice.

59.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, are as follows:

a.      Obtain from Bank of Oklahoma and Class Counsel Settlement Class Member name and address information (to the extent it is available), and, to the extent necessary, verify and update the addresses received through the National Change of Address database, for the purpose of mailing the Mailed Notice, and later mailing distribution checks to Past Account Holder Settlement Class Members, and to Current Account Holder Settlement Class Members where it is not feasible or reasonable for Bank of Oklahoma to make the payment by a credit to the Settlement Class Members' Accounts;

b.      Establish and maintain a Post Office box for requests for exclusion from the Settlement Class;

c.      Establish and maintain the Settlement Website;

d.      Establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

e.      Respond to any mailed Settlement Class Member inquiries;

f.      Process all requests for exclusion from the Settlement Class;

g.      Provide weekly reports and, no later than five days after the end of the Opt-Out Period, a final report to Class Counsel and counsel for Bank of Oklahoma that

summarize the number of requests for exclusion received that week, the total number of

exclusion requests received to date, and other pertinent information;

       h.     Interface with the Tax Administrator;

       i.     At Class Counsel's request in advance of the Final Approval Hearing,

prepare an affidavit to submit to the Court that identifies each Settlement Class Member who

timely and properly requested exclusion from the Settlement Class;

       j.     Process and transmit distributions to Settlement Class Members from the

Settlement Fund;

       k.     Pay invoices, expenses and costs upon approval by Class Counsel and

counsel for Bank of Oklahoma, as provided in this Agreement; and

       l.     Administer the Escrow Account as described in this Agreement, and any

other Settlement-administration-related function at the instruction of Class Counsel and counsel

for Bank of Oklahoma, including but not limited to, verifying that Bank of Oklahoma has

correctly made a distribution to Settlement Class Members pursuant to paragraphs 77-80 herein.

## VIII.  **Providing Settlement Notice to Settlement Class Members**

     60.     Upon Preliminary Approval of the Settlement, at the direction of Class Counsel,

the Settlement Administrator shall implement the Notice Program provided herein, using the

forms of Notice approved by the Court in the Preliminary Approval Order.  The Notice shall

include, among other information:  a description of the material terms of the Settlement; a date

by which Settlement Class Members may exclude themselves from or "opt out" of the Settlement

Class; a date by which Settlement Class Members may object to the Settlement; the date upon

which the Final Approval Hearing will occur; and the address of the Settlement Website at which

Settlement Class Members may access this Agreement and other related documents and

information.  Class Counsel and counsel for Bank of Oklahoma shall insert the correct dates and

deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order.  Notices and publications provided under or as part of the Notice Program shall not bear or include the Bank of Oklahoma logo or trademarks, the return address of Bank of Oklahoma, the Bank of Oklahoma red and blue colors, or otherwise be styled to appear to originate from Bank of Oklahoma.

61.    The Notice also shall include a procedure for Settlement Class Members to opt out of the Settlement Class.  A Settlement Class Member may opt out of the Settlement Class at any time during the Opt-Out Period.  Any Settlement Class Member who does not timely and validly request to opt out shall be bound by the terms of this Agreement.

62.    The Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and for Service Awards to Plaintiffs.  Objections to the Settlement or to the application for fees, costs, expenses, and Service Awards must be mailed to the Clerk of the Court, Class Counsel, and Bank of Oklahoma's counsel.  For an objection to be considered by the Court, the objection must be received by the Court, Class Counsel and Bank of Oklahoma's counsel no later than the last day of the Opt-Out Period, as specified in the Notice.  For an objection to be considered by the Court, the objection must also set forth:

a.    the name of the Actions;

b.    the objector's full name, address and telephone number;

c.    an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d.    all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel;

e.      the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of  each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

f.      the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.      the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

h.      any and all agreements that relate to the objection or the process of objecting – whether written or verbal – between objector or objector's counsel and any other person or entity;

i.      the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

j.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

k.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

l.      the objector's signature (an attorney's signature is not sufficient).

63.     Notice shall be provided to Settlement Class Members in four different ways: Mailed Notice; Published Notice; and Long-form Notice on the Settlement Website.  Not all Settlement Class Members will receive all four forms of Notice, as detailed below.

64.     The Mailed Notice shall be substantially in the form attached hereto as Exhibit 1; Published Notice shall be substantially in the form attached hereto as Exhibit 2; the Long-form Notice shall be substantially in the form attached hereto as Exhibit 3.

65.     Within 28 days from the date that the Settlement Administrator receives from Class Counsel and Bank of Oklahoma the data files that identify, subject to the data limitations described in paragraph 75 hereof, the names and last known addresses of the identifiable Settlement Class Members, the Settlement Administrator shall, to the extent necessary, run the addresses through the National Change of Address Database.

66.     The Settlement Administrator shall perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable.  No later than 35 days from the Initial Mailed Notice date, the Settlement Administrator shall complete the re-mailing of Mailed Notice postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces (the "Notice Re-mailing Process").

67.     The Mailed Notice Program (which is comprised of both the Initial Mailed Notice, and the Notice Re-mailing Process) shall be completed no later than 60 days after the Court's order of Preliminary Approval.  Within seven days after the date the Settlement Administrator completes the Notice Re-mailing Process, the Settlement Administrator shall provide Class Counsel and Bank of Oklahoma's counsel an affidavit that confirms that the Mailed Notice Program was completed in a timely manner.  Class Counsel shall file that affidavit with the

Court as an exhibit to or in conjunction with Plaintiffs' Motion for Final Approval of the Settlement.

68.     Bank of Oklahoma shall pay all costs associated with the Mailed Notice Program within thirty days of being approved by Class Counsel and counsel for Bank of Oklahoma.

69.     The Settlement Administrator shall administer the Published Notice Program, which shall be comprised exclusively of the following components:  one quarter-page advertisements in each of the following publications: *Albuquerque Journal, Dallas Morning News, Denver Post/Boulder Daily Camera Combo, Fort Smith Times Record, Houston Chronicle, Kansas City Star, Oklahoma City Oklahoman, Arizona Republic,* and *Tulsa World.* The Published Notice Program shall be completed no later than 30 days after the Court's order of Preliminary Approval.

70.     Bank of Oklahoma shall pay all costs associated with the Published Notice Program within thirty days of being approved by Class Counsel and counsel for Bank of Oklahoma.

71.     Within seven days after the date the Settlement Administrator completes the Published Notice Program, the Settlement Administrator shall provide Class Counsel and counsel for Bank of Oklahoma with one or more affidavits that confirm that Published Notice was given in accordance with the Published Notice Program.  Class Counsel shall file such affidavit(s) with the Court in conjunction with Plaintiffs' Motion for Final Approval of the Settlement.

## IX.     Final Approval Order and Judgment

72.     The Plaintiffs' Motion for Preliminary Approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. Plaintiffs shall file their Motion for Final Approval of the Settlement, and their application for

attorneys' fees, costs and expenses and for Service Awards for Plaintiffs no later than 45 days prior to the Final Approval Hearing.  At the Final Approval Hearing the Court will hear argument on Plaintiffs' motion for final approval of the Settlement, and on Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards for Plaintiffs.  In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel), provided the objectors filed timely objections that meet all of the requirements listed in paragraph 62 above.

73.    The Court at the Final Approval Hearing will determine whether to enter the Final Approval Order granting final approval of the Settlement, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses and Service Awards.  The proposed Final Approval Order that will be attached to the motion shall be in a form agreed upon by Class Counsel and counsel for Bank of Oklahoma.  Such Final Approval Order shall, among other things:

      a.    Determine that the Settlement is fair, adequate and reasonable;

      b.    Finally certify the Settlement Class for settlement purposes only;

      c.    Determine that the Notice provided satisfies Due Process requirements;

      d.    Dismiss *Case* with prejudice and without costs;

      e.    Bar and enjoin Plaintiffs and all Settlement Class Members from asserting any of the Released Claims, as set forth in Section XIV, including during any appeal from the Final Approval Order;

      f.    Release Bank of Oklahoma and the Released Parties from the Released Claims, as set forth in Section XIV; and

g.      Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Bank of Oklahoma, all Settlement Class Members, and all objectors, to administer, supervise, construe and enforce this Agreement in accordance with its terms.

74.      Immediately upon the Effective Date, the Parties shall jointly file a stipulation in the District Court of Tulsa country to dismiss with prejudice the consolidated *Eaton* and *Ramer* actions.

## X.      Allocation of Settlement Fund Among Settlement Class Members

75.      Consistent with its statutory and regulatory obligations to protect its customers' private financial information, Bank of Oklahoma shall make available to Class Counsel and to Plaintiffs' experts data – to the extent it exists in reasonably accessible electronic form – sufficient to determine and implement the allocation of Settlement Funds as provided in this Section X of this Agreement.  The methodology provided for in paragraph 76 will be applied to the data as consistently, sensibly, and conscientiously as reasonably possible recognizing and taking into consideration the nature and completeness of the data and the purpose of the computation.  The Parties recognize that certain data may not exist for the period January 2005 through and including October 2005 (the "Data Period"), and that the strict application of the methodology described in paragraph 76 will not be possible for this Data Period.  The Parties will establish a proxy for fairly allocating the amount of the distribution from the Settlement Fund for Overdraft Fees incurred during the Data Period.  Such proxy will be determined as follows:  1) for the Class Period not including the Data Period, the average increase in Overdraft Fees attributable to High-to Low Debit Card Transaction Sequencing will be determined; 2) for each Account, this average increase will be multiplied by the number of Overdraft Fees incurred on banking days on which multiple Overdraft Fees were incurred during the Data Period.

76.     Consistent with the limitations described in paragraph 75, the amount of the distribution from the Settlement Fund to which each identifiable Settlement Class Member is entitled shall be determined using the following methodology:

a.     All Accounts will be identified in which, on one or more calendar days, Bank of Oklahoma assessed two or more Overdraft Fees on such day or days;

b.     For each calendar day on which Bank of Oklahoma assessed two or more Overdraft Fees, all transactions posted in such Accounts on that day will be ordered in the following posting order:

i.     All credits;

ii.     All Bank of Oklahoma initiated fees and transactions;

iii.     All Debit Card Transactions ordered in a manner that simulates, to the extent possible given any data limitations, the chronological order in which the transactions were initiated by Settlement Class Members;

iv.     All other debit transactions, including Check transactions, ACH transactions, and non-Debit Card-initiated cash withdrawals, ordered from the highest dollar amount to lowest dollar amount of transaction;

c.     After ordering the transactions as set forth in subparagraph (b) above, each Account – on a daily basis – will be identified in which the number of Overdraft Fees Bank of Oklahoma actually assessed exceeds the number of Overdraft Fees that would have been assessed if the Account had been ordered as set forth in subparagraph (b) ("Additional Overdrafts");

d.     The dollar amount of the Additional Overdrafts will be calculated ("Additional Overdrafts Amount");

e.     The foregoing allocation formula will yield the identification of all Account holders whose Accounts experienced Additional Overdrafts, as well as each Settlement Class Member's Additional Overdraft Amount.

f.     The parties agree the foregoing allocation formula is exclusively for purposes of computing retrospectively, in a reasonable and efficient fashion, the Additional Overdraft Amount of each Settlement Class Member as a result of Bank of Oklahoma's High-to-low Debit Card Transaction Sequencing and, subject to paragraphs 78-80 below, the amount of any distribution each Settlement Class Member should receive from the Settlement Fund.  The fact that this allocation formula is used herein is not intended and shall not be used for any other purpose or objective whatsoever.

## XI.     Distribution of Settlement Fund to Settlement Class Members

77.     Within 30 days of the Effective Date, Bank of Oklahoma and the Settlement Administrator shall distribute the Settlement Fund to the Settlement Class Members who do not opt out as provided herein.  Each Settlement Class Member who had an Additional Overdraft Amount shall receive a distribution in the amount of a pro rata share of the Net Settlement Fund.

78.     Class Counsel shall divide the total amount of all Settlement Class Members' Additional Overdraft Amounts by the total amount of the Net Settlement Fund as computed pursuant to paragraph 51, which yields the "Pro Rata Percentage."

79.     Class Counsel shall adjust the amount of each Settlement Class Member's total Additional Overdraft Amounts by multiplying it by the Pro Rata Percentage, which yields each Settlement Class Member's Additional Overdraft Payment Amount.

80.     Bank of Oklahoma shall make Settlement Class Member Additional Overdraft Payment Amounts to Current Account Holders either by a credit to those Settlement Class Members' Accounts or by mailed check, in those circumstances where it is not feasible or

reasonable to make the payment by a credit to the Settlement Class Members' Account.  For those Settlement Class Members who receive their Settlement Class Member Additional Overdraft Payment Amounts by credits to their Accounts, Bank of Oklahoma shall notify the Current Account Holders of the credit, and provide a brief explanation that the credit has been made as a payment in connection with the Current Account Holder's membership in the Settlement Class.  Bank of Oklahoma shall provide the notice of account credit described in this paragraph in or with the account statement on which the credit is reflected.  Bank of Oklahoma will bear any costs associated with implementing the account credits and notification discussed in this paragraph.  Settlement Class Member Additional Overdraft Payment Amounts made to Current Account Holders by check will be cut and mailed by the Settlement Administrator with an appropriate legend, in a form approved by Class Counsel and Bank of Oklahoma's counsel, to indicate that it is from the Settlement, and will be sent to the addresses that the Settlement Administrator identifies as valid Settlement Class Member addresses.  Checks shall be valid for 180 days.  The Settlement Administrator will make reasonable efforts to locate the proper address for any Settlement Class Member whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address.

81.     Bank of Oklahoma shall pay all costs associated with the process of printing and mailing the checks and any accompanying communication to Current Account Holders within thirty days of Class Counsel's and Bank of Oklahoma's counsel's approving the invoice for payment.

82.     Settlement Class Member Additional Overdraft Payment Amounts to Past Account Holders will be made by check with an appropriate legend, in a form approved by Class Counsel and Bank of Oklahoma's counsel, to indicate that it is from the Settlement.  Checks will be cut

and mailed by the Settlement Administrator, and will be sent to the addresses that the Settlement Administrator identifies as valid Settlement Class Member addresses.  Checks shall be valid for 180 days.  The Settlement Administrator will make reasonable efforts to locate the proper address for any Settlement Class Member whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address.

83.     Bank of Oklahoma shall pay all costs associated with the process of printing and mailing the checks and any accompanying communication to Past Account Holders within thirty days of Class Counsel's and Bank of Oklahoma's counsel's approving the invoice for payment.

84.     The amount of the Settlement Fund attributable to uncashed checks and checks returned to the Settlement Administrator shall remain in the Settlement Fund for one year from the date that the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator shall make a reasonable effort to locate Settlement Class Members whose checks were returned to effectuate delivery of such checks to the Settlement Class Members entitled to them.  The Settlement Administrator shall make only one attempt to re-mail or re-issue a distribution check.

**XII.   Disposition of Residual Funds After Distribution to the Settlement Class Of Settlement Class Member Additional Overdraft Payment Amounts.**

85.     Within one year plus thirty days after the date the Settlement Administrator mails the first Settlement Class Member Payment, any funds remaining in the Settlement Fund shall be distributed as follows:

a.      At the election and complete discretion of Class Counsel and counsel for Bank of Oklahoma, the funds may be distributed to Settlement Class Members who received Settlement Class Member Additional Overdraft Payment Amounts on a pro rata basis, to the extent feasible and practical in light of the costs of administering such subsequent payments (all

such costs to prepare and transmit such additional payments to be paid by the Settlement Fund); or

        b.    At the election of Class Counsel and counsel for Bank of Oklahoma, the funds may be distributed through a residual *cy pres* program.  The residual *cy pres* recipient(s) shall be agreed upon by Bank of Oklahoma and Settlement Class Counsel, and approved by the Court.  Any residual *cy pres* distribution shall be paid as soon as reasonably possible following the completion of distribution of funds to the Settlement Class Members.

        c.    If the Class Counsel and counsel for Bank of Oklahoma are unable to agree on a distribution plan ((a) or (b)) or on the recipient(s), they shall bring the matter, together with supporting materials and argument, to the Court for determination.

        d.    Bank of Oklahoma shall pay all costs associated with the disposition of residual funds – whether through an additional distribution to Settlement Class Members or through a residual *cy pres* program.

        e.    In the event no money remains in the Settlement Fund, the Parties shall have no obligation whatsoever to make any distribution as contemplated by subparagraphs (a) or (b) above of this paragraph.

## XIII.   Effect of a Termination

86.    The grounds upon which this Agreement may be terminated are set forth in paragraphs 98 and 99.  In the event of a termination as provided therein, this Agreement shall be considered null and void; all of Bank of Oklahoma's obligations under the Settlement shall cease to be of any force and effect; the amounts in the Settlement Fund shall be returned to Bank of Oklahoma in accordance with paragraph 57; and the Parties shall return to the status quo ante in the Action as if the Parties had not entered into this Agreement.  In addition, in the event of such a termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved,

including, but not limited to, Plaintiffs' right to seek class certification and Bank of Oklahoma's right to oppose class certification.

87.  In the event of a termination as provided in paragraph 98 and/or 99, the Settlement Fund shall be returned to Bank of Oklahoma within seven days of termination, less any money that the Settlement Fund has already paid, or incurred an obligation to pay, for Settlement-related costs and expenses.

88.  This Settlement shall become effective on the Effective Date unless earlier terminated in accordance with the provisions of paragraph 98 and/or 99.

89.  In the event the Settlement is terminated in accordance with the provisions of paragraphs 98 and/or 99, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose, without prejudice to Plaintiffs' right to seek discovery and class certification, and Bank of Oklahoma's right to oppose class certification.  In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

**XIV.  <u>Releases</u>**

90.  As of the Effective Date, Plaintiffs and each Settlement Class Member, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Bank of Oklahoma and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, of and from any and all liabilities, rights,

claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Actions, including, without limitation, any claims, actions, causes of action, demands, damages, losses, or remedies relating to, based upon, resulting from, or arising out of (a) the assessment of one or multiple Overdraft Fees on a Bank of Oklahoma Account or the amount of one or more Overdraft Fees assessed on an Account, or (b) Bank of Oklahoma's High-to-low Debit Card Transaction Sequencing.  The foregoing release includes, by way of example but not limitation, any and all of the following to the extent they involve, result in, or seek recovery or relief for Overdraft Fees or Bank of Oklahoma's High-to-low Debit Card Transaction Sequencing:  (1) the authorization, approval or handling of any Debit Card Transaction, (2) any failure to notify or to obtain advance approval when a Debit Card Transaction would or might cause a Bank of Oklahoma Account to become overdrawn or further overdrawn or an Overdraft Fee to be assessed, (3) any failure to allow the holder of any Bank of Oklahoma Account to opt-out of overdrafts, or to publicize or disclose the ability of the holder of any Bank of Oklahoma Account to opt-out of overdrafts, (4) any failure to adequately or clearly to disclose, in one or more agreements, Bank of Oklahoma's High-to-low Debit Card Transaction Sequencing, Overdraft Fees, or the manner in which Debit Card Transactions are or would be approved, processed, or posted to Bank of Oklahoma Accounts; (5) any conduct or statements encouraging the use of Bank of Oklahoma Debit Cards, and (6) any advertisements relating to any of the foregoing.

91.     Plaintiffs or any Settlement Class Member may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of paragraph 90, or the law applicable to such claims may change.  Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this paragraph and paragraph 90.  Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Agreement, including by the releases contained in this paragraph and in paragraph 90, and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he/she never receives actual notice of the Settlement or never receives a distribution of funds or credits from the Settlement.

92.     Nothing in this Agreement shall operate or be construed to release any claims or rights Bank of Oklahoma has to recover any past, present or future amounts that may be owed by Plaintiffs or by any Settlement Class Member on his/her accounts, loans or any other debts with Bank of Oklahoma, pursuant to the terms and conditions of such accounts, loans, or any other debts.

## XV.   **Payment of Attorneys' Fees, Costs, and Incentive Awards**

### A.     **Class Counsel Fees and Costs**

93.     Bank of Oklahoma agrees not to oppose Class Counsel's request for attorneys' fees of up to 30% of the Settlement Fund prior to any deductions from the Settlement Fund, and not to oppose Class Counsel's request for reimbursement of costs and expenses.  Any award of

attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund.

94.     The Parties negotiated and reached this agreement regarding the terms of paragraph 93 only after reaching agreement on all other material terms of this Settlement.

**B.      Payment of Attorneys' Fees and Costs**

95.     Within three days of the Effective Date, all Court-approved attorneys' fees, costs, and expenses of Class Counsel, including interest accrued thereon, shall be paid from the Escrow Account into the account described in this paragraph.  The payment of attorneys' fees, costs and expenses of Class Counsel pursuant to paragraph 93 shall be made into an Attorney Client Trust Account jointly controlled by Class Counsel.  After the fees, costs and expenses have been deposited into this account, Class Counsel shall be solely responsible for distributing each Class Counsel firm's allocated share of such fees, costs and expenses to that firm.

**C.      Class Representative Service Awards**

96.     Class Counsel will ask the Court to approve service awards of $5,000 per Plaintiff ("Service Awards").  All Service Awards are to be paid from the Settlement Fund.  The Service Awards shall be paid to Plaintiffs in addition to Plaintiffs' Settlement Class Member Additional Overdraft Payment Amounts.  Bank of Oklahoma shall not oppose Class Counsel's request for payment of the Service Awards.

97.     The Parties negotiated and reached this agreement regarding the Service Awards only after reaching agreement on all other material terms of this Settlement.

**XVI.   Termination of Settlement**

98.     This Settlement may be terminated by either Bank of Oklahoma or Class Counsel by serving on counsel for the opposing Party and filing with the Court a written notice of termination within fourteen days after any of the following occurrences:

      a.     the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

      b.     an appellate court reverses the Final Approval Order, and the Settlement is not reinstated without material change by the Court on remand;

      c.     any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement in a way that Bank of Oklahoma or Class Counsel seeking to terminate the Settlement reasonably considers material;

      d.     the Effective Date does not occur; or

      e.     any other ground for termination provided for elsewhere in this Agreement.

99.    Bank of Oklahoma also shall have the right to terminate the Settlement by serving on Class Counsel and filing with the Court a notice of termination within fourteen days of its receipt from the Settlement Administrator of the final report specified in paragraph 59(g) above, if the number of Settlement Class Members who timely request exclusion from the Settlement Class equals or exceeds the number or percentage specified in the separate letter agreement executed concurrently with this Settlement by Bank of Oklahoma's counsel and Class Counsel. The percentage shall be confidential except to the Court, who shall upon request be provided with a copy of the letter agreement for *in camera* review.

100.   In the event of a termination of the Settlement, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Escrow Account, the balance of the Settlement Fund shall be refunded and remitted to Bank of Oklahoma as provided in paragraph 57.  Bank of Oklahoma shall have no

right to seek reimbursement from Plaintiffs or Class Counsel for any funds disbursed from the Escrow Account pursuant to paragraphs 50-52 above.

101.   In the event of a termination of the Settlement pursuant to this Section XVI, the parties retain all of their pre-Settlement litigation rights and defenses, including Plaintiffs' right to seek class certification and Bank of Oklahoma's right to oppose class certification, as provided in paragraph 89.

## XVII.   No Admission of Liability

102.   Bank of Oklahoma disputes the claims alleged in the Actions and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind.  Bank of Oklahoma has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Actions.

103.   Class Counsel and Plaintiffs believe that the claims asserted in the Actions have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action.  Class Counsel have fully investigated the facts and law relevant to the merits of the claims, have conducted extensive formal and informal discovery, and have conducted independent investigation of the challenged practices.  Class Counsel and Plaintiffs have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

104.   The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims.  No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be

deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever.

105.   Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

106.   In addition to any other defenses Bank of Oklahoma may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement or the Releases contained herein.

## XVIII. <u>Miscellaneous Provisions</u>

107.   <u>Gender and Plurals</u>.  As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

108.   <u>Binding Effect</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

109.   <u>Cooperation of Parties</u>.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.  This obligation of the Parties to support and complete the Settlement shall remain in

full force and effect regardless of events that may occur, or court decisions that may be issued, in MDL-2036 or in any other case in any court.

110.   <u>Obligation To Meet And Confer</u>.  Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

111.   <u>Integration</u>.  This Agreement (along with the letter agreement referenced in paragraph 99 hereof) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof.  No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

112.   <u>No Conflict Intended</u>.  Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

113.   <u>Governing Law</u>.  The Agreement shall be construed in accordance with, and be governed by, the laws of the State of Florida, without regard to the principles thereof regarding choice of law.

114.   <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts.  Original signatures are not required.  Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

115.   <u>Jurisdiction</u>.  The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be

resolved by negotiation and agreement by counsel for the Parties.  The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement.  The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice program, the Settlement Administrator,  and the Tax Administrator.  As part of their respective agreements to render services in connection with this Settlement, the Settlement Administrator, and the Tax Administrator shall consent to the jurisdiction of the Court for this purpose.

116.   <u>Notices</u>.  All notices to Class Counsel provided for herein, shall be sent by email and facsimile with a hard copy sent by overnight mail to:

<u>As to Plaintiffs:</u>

Hassan A. Zavareei
hzavareei@tzlegal.com
TYCKO & ZAVAREEI, LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone:  (202) 973-0900
Facsimile:  (202) 973-0950

Burton H. Finkelstein
bfinkelstein@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
1050 30th St. NW
Washington, DC 20007
Telephone:  (202) 337-8000
Facsimile:  (202) 337-8090

Robert C. Gilbert
rcg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Telephone: (305) 442-8666
Facsimile: (305) 779-9596

Jeffrey M. Ostrow
KOPELOWITZ OSTROW P.A.
ostrow@kolawyers.com
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

As to Bank of Oklahoma:

Frederic Dorwart
fdorwart@fdlaw.com
FREDERIC DORWART, LAWYERS
Old City Hall Building
124 East Fourth Street
Tulsa, Oklahoma 74103-5010
Tel:  (918) 583-9922
Fax:  (918) 583-8251

The notice recipients and addresses designated above may be changed by written notice.  Upon

the request of any of the Parties, the Parties agree to promptly provide each other with copies of

objections, requests for exclusion, or other filings received as a result of the Notice program.

117.   Modification and Amendment.  This Agreement may be amended or modified only

by a written instrument signed by the Parties and their respective counsel and approved by the

Court.

118.   No Waiver.  The waiver by any party of any breach of this Agreement by another

Party shall not be deemed or construed as a waiver of any other breach, whether prior,

subsequent, or contemporaneous, of this Agreement.

119.   Authority.  The Plaintiffs and Bank of Oklahoma represent and warrant that the

persons signing this Agreement on their behalf have full power and authority to bind every

person, partnership, corporation or entity included within the definitions of Plaintiffs and Bank

of Oklahoma to all terms of this Agreement.  Any person executing this Agreement in a

representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

120.   <u>Agreement Mutually Prepared</u>.  Neither Bank of Oklahoma nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

121.   <u>Independent Investigation and Decision to Settle</u>.  The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with these Actions; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Actions as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement.  Bank of Oklahoma has provided and is providing information that Plaintiffs reasonably request to identify Settlement Class Members and the alleged damages they incurred.  It is the Parties' intention to resolve their disputes in connection with these Actions pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

122.   <u>Receipt of Advice of Counsel</u>.  Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement and the Releases contained in Section XIV above, received independent legal advice with respect to the advisability of entering

into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

ON BEHALF OF PLAINTIFFS:

Hassan A. Zavareei, Esq., for

TYCKO & ZAVAREEI LLP,
GRAY, RITTER & GRAHAM, P.C., and
STEEN LANG HERROLD, P.C.
*Counsel for Eaton*

Dated: March 7, 2012

Patrick J. Stueve, Esq., for

STUEVE SIEGEL HANSON LLP,
*Counsel for Eaton*

Dated: March ___, 2012

Jeffrey M. Ostrow, Esq. for

KOPELOWITZ OSTROW P.A., and
CHITWOOD HARLEY HARNESS, LLP
*Counsel for Case*

Dated: March ___, 2012

into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

ON BEHALF OF PLAINTIFFS:

_____

Hassan A. Zavareei, Esq., for

TYCKO & ZAVAREEI LLP,
GRAY, RITTER & GRAHAM, P.C., and
STEEN LANG HERROLD, P.C.
*Counsel for Eaton*

Dated: March ___, 2012

_____

Patrick J. Stueve, Esq., for

STUEVE SIEGEL HANSON LLP,
*Counsel for Eaton*

Dated: March ___, 2012

_____

Jeffrey M. Ostrow, Esq. for

KOPELOWITZ OSTROW P.A., and
CHITWOOD HARLEY HARNESS, LLP
*Counsel for Case*

Dated: March 9th, 2012



Robert C. Gilbert, Esq., for

GROSSMAN ROTH, P.A.,
BRUCE S. ROGOW, P.A.,
PODHURST ORSECK, P.A.,
LIEFF CABRASER HEIMMAN & BERNSTEIN,
LLP,
WEBB, KLASE & LEMOND, LLC,
TRIEF & OLK,
BARON & BUDD, P.C., and
GOLOMB & HONIK, P.C.
*Counsel for Case*

Dated: March 9, 2012

Burton Finkelstein, Esq., for

FINKELSTEIN THOMPSON LLP
*Counsel for Ramer*

Dated: March __, 2012

Jim Sill, Esq., for

SILL & MEDLEY PLLC, and
JEFF MARTIN & ASSOCIATES, P.C.
*Counsel for Ramer*

Dated: March __, 2012

Robert C. Gilbert, Esq., for

GROSSMAN ROTH, P.A.,
BRUCE S. ROGOW, P.A.,
PODHURST ORSECK, P.A.,
LIEFF CABRASER HEIMMAN & BERNSTEIN,
LLP,
WEBB, KLASE & LEMOND, LLC,
TRIEF & OLK,
BARON & BUDD, P.C., and
GOLOMB & HONIK, P.C.
*Counsel for Case*

Dated: March ___, 2012


/Burton Finkelstein, Esq., for

FINKELSTEIN THOMPSON LLP
*Counsel for Ramer*

Dated: March / , 2012

Jim Sill, Esq., for

SILL & MEDLEY PLLC, and
JEFF MARTIN & ASSOCIATES, P.C.
*Counsel for Ramer*

Dated: March 17, 2012

ON BEHALF OF DEFENDANT:

Frederic Dorwart

FREDERIC DORWART, LAWYERS

*Counsel for Bank of Oklahoma*

Dated: March 16, 2012


PLAINTIFF:
_____

Susan Eaton
Dated: March \_\_\_, 2012


PLAINTIFF:
_____

Bryan Ramer
Dated: March \_\_\_\_, 2012


PLAINTIFF:
_____

Terry Case
Dated: March \_\_\_\_, 2012

ON BEHALF OF DEFENDANT:

_____

Frederic Dorwart

FREDERIC DORWART, LAWYERS

*Counsel for Bank of Oklahoma*

Dated: March ___, 2012

PLAINTIFF:

_____

Susan Eaton

Dated: March 10, 2012

PLAINTIFF:

_____

Bryan Ramer

Dated: March _____, 2012

PLAINTIFF:

_____

Terry Case

Dated: March _____, 2012

ON BEHALF OF DEFENDANT:

_____

Frederic Dorwart

FREDERIC DORWART, LAWYERS

*Counsel for Bank of Oklahoma*

Dated: March __, 2012

PLAINTIFF:

_____

Susan Eaton

Dated: March ___, 2012

PLAINTIFF:

*Bryan R. Ramer*

_____

Bryan Ramer

Dated: March _12_, 2012

PLAINTIFF:

_____

Terry Case

Dated: March ____, 2012

ON BEHALF OF DEFENDANT:

_____

Frederic Dorwart

FREDERIC DORWART, LAWYERS

*Counsel for Bank of Oklahoma*

Dated: March __, 2012

PLAINTIFF:

_____

Susan Eaton

Dated: March ___, 2012

PLAINTIFF:

_____

Bryan Ramer

Dated: March ____, 2012

PLAINTIFF:

_____

Terry Case

Dated: March 9 , 2012

41

# Exhibit 1

md-02036-JLK Document 2631-1 Entered on FLSD Docket 04/13/2012 61

# If you paid overdraft fees related to a BOKF, N.A. * debit card, check card, or ATM card, you could receive a payment or account credit from a class action settlement.

*Si desea recibir esta notificacióon en español, llámenos o visite nuestra página web*

A settlement has been reached with BOKF, N.A. about the posting of debit card transactions in highest to lowest dollar amount and resulting overdraft fees. BOKF, N.A. denies all of plaintiffs' claims and says that it did nothing wrong. Those included in the Settlement Class have legal rights and options, such as receiving settlement benefits or excluding themselves from or objecting to the settlement.

### WHO IS INCLUDED?

BOKF, N.A.'s records indicate you are a Settlement Class Member. The Settlement Class includes all Bank of Oklahoma, N.A., Bank of Arkansas, N.A., Bank of Albuquerque, N.A., Bank of Arizona, N.A., Bank of Kansas City, N.A., Bank of Texas, N.A., and Colorado State Bank and Trust, N.A. consumer checking account holders who at any time from January 1, 2005 through August 31, 2011 incurred an Overdraft Fee as a result of the bank's sequencing of debit card transactions, check card purchases, and ATM withdrawals in a high-to-low posting order.

### SETTLEMENT BENEFITS.

BOKF, N.A. will pay $19 million to a Settlement Fund. If the Settlement is approved, payments or credits will automatically be made to Settlement Class Members identified in the bank's records according to a formula detailed in the Settlement Agreement. If you received this notice by mail, you do not need to file a claim to receive a payment or account credit.

### OTHER OPTIONS.

If you do not want to be legally bound by the settlement, you must exclude yourself by Month Day, 2012. If you stay in the settlement, you may object to it by Month Day, 2012. The Court will hold a hearing on Month Day, 2012 to consider whether to approve the settlement and a request by Class Counsel for attorneys' fees of up to 30% of the Settlement Fund ($5.7 million) plus Class Counsel's costs and expenses, and Service Awards to the named plaintiffs in the amount of $5,000 each.

For more information regarding the settlement, call the Claims Administrator toll free or visit the settlement website.

* BOKF, N.A.'s subsidiary banks are: Bank of Oklahoma, N.A., Bank of Arkansas, N.A., Bank of Albuquerque, N.A., Bank of Arizona, N.A., Bank of Kansas City, N.A., Bank of Texas, N.A., and Colorado State Bank and Trust, N.A.

**www.BOKFOverdraftSettlement.com  •  1-877-752-5534**

BOKF, N.A. Overdraft Settlement
PO Box 4087
Portland, OR 97208-4087

## **Legal Notice about a class action settlement.**

Exhibit 2

# If you paid overdraft fees related to a BOKF, N.A* debit card, check card or ATM card, you could receive a payment from a class action settlement.

*Si desea recibir esta notificación en español, llámenos o visite nuestra página web.*

A settlement has been reached with BOKF, N.A. about the posting of debit card transactions in highest to lowest dollar amount and resulting overdraft fees. The settlement offers payments to eligible people who paid overdraft fees to Bank of Oklahoma, N.A., Bank of Arkansas, N.A., Bank of Albuquerque, N.A., Bank of Arizona, N.A., Bank of Kansas City, N.A., Bank of Texas, N.A., and Colorado State Bank and Trust, N.A. from January 1, 2005 through August 31, 2011.

The United States District Court for the Southern District of Florida, Miami Division will hold a hearing to decide whether to give final approval to the settlement, so that the benefits can be issued. Those included have legal rights and options, such as excluding themselves from or objecting to the settlement. More information is in the Detailed Notice, which is available at www.BOKFOverdraftSettlement.com.

## WHAT IS THIS ABOUT?

The lawsuit alleges that BOKF, N.A. improperly assessed overdraft fees for insufficient funds on debit card, check card purchases and/or ATM withdrawals by sequencing transactions in a high to low posting order, resulting in increased overdraft fees in some instances. BOKF, N.A. denies all of Plaintiffs' claims and says that it did nothing wrong.

## WHO IS INCLUDED?

The Settlement Class includes all BOKF, N.A. customers in the United States who had one or more consumer accounts and who, from January 1, 2005 through August 31, 2011, incurred an Overdraft Fee as a result of the bank's sequencing of transactions in a high to low posting order.

## WHAT DOES THE SETTLEMENT PROVIDE?

The BOKF, N.A. will pay $19 million to a Settlement Fund to make payments to eligible Settlement Class Members as well as to pay attorneys' fees, costs, expenses, and Service Awards.

Payments or credits will be automatically made to Settlement Class Members for whom data exists. Details on the formulas

for determining payment amounts and other settlement benefits are included in the Detailed Notice and the Settlement Agreement, which are available at www.BOKFOverdraftSettlement.com.

## HOW DO YOU ASK FOR BENEFITS?

If you received a notice in the mail telling you that you are Settlement Class Member, you will receive an automatic payment by credit (if you are a current bank customer) or by mailed check if the settlement is approved by the Court and you do not exclude yourself from the settlement. If you did not receive a notice in the mail and believe you are a Class Member, please visit the website or call the number below to request a claim form.

## YOUR OTHER OPTIONS.

If you do not want to be legally bound by the settlement, you must exclude yourself from the Settlement Class by **Month Day, 2012**, or you will not be able to sue, or continue to sue, BOKF, N.A. about the legal claims this settlement resolves, ever again. If you exclude yourself, you cannot get a payment from the settlement. If you stay in the settlement, you may object to it by **Month Day, 2012**. The Detailed Notice explains how to exclude yourself or object.

The Court will hold a hearing in the case known as *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK; *Terry Case v. Bank of Oklahoma, N.A., W.D. OK* Case No. 5:10-00901-L, S.D. FL Case No. 1:11-cv-20815-JLK; *Susan Eaton v. Bank of Oklahoma, N.A., et al*., Case No. CJ-2010-5209; and *Bryan Ramer v. Bank of Oklahoma, N.A*., Case No. CJ-2010-05841 on **Month Day, 2012**, to consider whether to approve the settlement, and a request by Class Counsel for attorneys' fees of up to 30% of the Settlement Fund plus payment of costs and expenses. Class Counsel will also request payments of incentive awards of $5,000 to each Class Representative for their services on behalf of the Settlement Class. You or your own lawyer, if you have one, may ask to appear and speak at the hearing at your own cost, but you do not have to. For more information, call or go to the website shown below.

_____

* BOKF, N.A. subsidiary banks are: Bank of Oklahoma, N.A., Bank of Arkansas, N.A., Bank of Albuquerque, N.A., Bank of Arizona, N.A., Bank of Kansas City, N.A., Bank of Texas, N.A., and Colorado State Bank and Trust, N.A.

## www.BOKFOverdraftSettlement.com • 1-877-752-5534

# Exhibit 3

# If you paid overdraft fees related to a BOKF, N.A.* debit card, check card, or ATM card, you could receive a payment or account credit from a class action settlement.

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

- A settlement has been reached with BOKF, N.A. ("BOKF, N.A." or "Defendant") about the posting of debit card transactions in highest to lowest dollar amount and resulting overdraft fees.

- The settlement offers payments to eligible people who paid Overdraft Fees to Bank of Oklahoma, N.A., Bank of Arkansas, N.A., Bank of Albuquerque, N.A., Bank of Arizona, N.A., Bank of Kansas City, N.A., Bank of Texas, N.A., and Colorado State Bank and Trust, N.A. from January 1, 2005 through August 31, 2011.

- Your legal rights are affected whether you act or do not act.  Read this notice carefully.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **EXCLUDE YOURSELF** | Get no benefits from the settlement.  This is the only option that allows you to start or remain part of any other lawsuit against BOKF, N.A. about the legal claims in this case. |
| **OBJECT** | Write to the Court about why you do not like the settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the settlement. |
| **DO NOTHING** | If you received a notice in the mail about this settlement, an account credit or check payment will automatically be issued to you for the amount you are eligible to receive.  You will give up your rights to sue BOKF, N.A. about the legal claims in this case. |

- These rights and options—**and the deadlines to exercise them**—are explained in this notice.

- The Court presiding over this case still has to decide whether to approve the settlement.  If it does, and after any appeals are resolved, benefits will be distributed to those who qualify.  Please be patient as this process sometimes takes a long time.

* BOKF, N.A.'s subsidiary banks are: Bank of Oklahoma, N.A., Bank of Arkansas, N.A., Bank of Albuquerque, N.A., Bank of Arizona, N.A., Bank of Kansas City, N.A., Bank of Texas, N.A., and Colorado State Bank and Trust, N.A.

QUESTIONS? CALL 1-877-752-5534 OR VISIT www.BOKFOverdraftSettlement.com
SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.

K2681 v.0.04 4.5.2012

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION** ..............................................................................................................**PAGE 3**

    1. Why is this Notice being provided?
    2. What is this lawsuit about?
    3. Why is this a class action?
    4. Why is there a settlement?

**WHO IS IN THE SETTLEMENT** ...............................................................................................**PAGE 3**

    5. How do I know if I am part of the settlement?
    6. What do "Account", "Overdraft Fee", "Debit Card", "Debit Card Transaction" and
       "High-to-Low Debit Card Transaction Sequencing" mean?
    7. What if I am not sure whether I am included in the settlement?

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY**....................................**PAGE 4**

    8. What does the settlement provide?
    9. How will the amount of the payments be determined?

**HOW TO GET A PAYMENT** .....................................................................................................**PAGE 5**

    10. How can I get a payment?
    11. When will I get my payment?
    12. What am I giving up to get a payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...............................................................**PAGE 5**

    13. If I exclude myself, can I get anything from this settlement?
    14. If I do not exclude myself, can I sue later?
    15. How do I get out of the settlement?

**THE LAWYERS REPRESENTING YOU**....................................................................................**PAGE 6**

    16. Do I have a lawyer in the case?
    17. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** .......................................................................................**PAGE 6**

    18. How do I tell the Court if I do not like the settlement?
    19. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING**......................................................................................**PAGE 8**

    20. When and where will the Court decide whether to approve the settlement?
    21. Do I have to come to the hearing?
    22. May I speak at the hearing?

**IF YOU DO NOTHING** ............................................................................................................**PAGE 8**

    23. What happens if I do nothing?

**GETTING MORE INFORMATION** ...........................................................................................**PAGE 8**

    24. How do I get more information?

**QUESTIONS? CALL 1-877-752-5534 OR VISIT www.BOKFOverdraftSettlement.com**
**SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.**

K2682 v.0.04 4.5.2012

2

# BASIC INFORMATION

## 1. Why is this notice being provided?

A Court authorized this notice because you have a right to know about a proposed settlement of this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the settlement. This notice explains the lawsuit, the settlement, your legal rights, what benefits are available, who may be eligible for those benefits, and how to get them.

Judge James Lawrence King of the United States District Court for the Southern District of Florida is overseeing this class action.  The settlement resolves the cases known as *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK; *Terry Case v. Bank of Oklahoma, N.A.*, W.D. OK Case No. 5:10-00901-L, S.D. FL Case No. 1:11-cv-20815-JLK; *Susan Eaton v. Bank of Oklahoma, N.A., et al.*, Case No. CJ-2010-5209; and *Bryan Ramer v. Bank of Oklahoma*, N.A., Case No. CJ-2010-05841.

The persons who sued are called "Plaintiffs," and the company sued, BOKF, N.A., is called "Defendant."

## 2. What is this lawsuit about?

The lawsuit alleges that BOKF, N.A. improperly assessed overdraft fees for insufficient funds on debit card, check card purchases and/or ATM withdrawals by sequencing transactions in a high to low posting order, resulting in increased overdraft fees in some instances.  BOKF, N.A. denies all of Plaintiffs' claims and says that it did nothing wrong.

## 3. Why is this a class action?

In a class action, one or more people called Class Representatives (in this case Susan Eaton, Terry Case, and Bryan Ramer) sue on behalf of people who have similar claims.  All of these people are a "Settlement Class" or "Settlement Class Members."  One court resolves the issues for all class members, except for those who timely exclude themselves from the class.

## 4. Why is there a settlement?

The Court did not decide in favor of Plaintiffs or Defendant.  Instead, both sides agreed to settle this case to avoid the cost and risk of a trial. The proposed settlement does not mean that any law was broken or that the Defendant did anything wrong.  Defendant denies all legal claims in this case.  Plaintiffs and their lawyers think the proposed settlement is best for all Settlement Class Members.

# WHO IS IN THE SETTLEMENT

To see if you will be affected by the settlement or if you can get a payment from it, you first have to determine if you are a Settlement Class Member.

## 5. How do I know if I am part of the settlement?

The Court decided that the Settlement Class means all BOKF, N.A. customers in the United States who had one or more consumer accounts and who, from January 1, 2005 through August 31, 2011, incurred an Overdraft Fee as a result of the bank's High-to-low Debit Card Transaction Sequencing.  Each of these persons is a Settlement Class Member.

If you received a notice in the mail, BOKF, N.A.'s records indicate that you are a Settlement Class Member.

## 6. What do "Account", "Overdraft Fee", "Debit Card", "Debit Card Transaction" and "High-to-Low Debit Card Transaction Sequencing" mean?

Under the terms of the settlement, "Account" means any consumer checking, demand deposit or savings account maintained by BOKF, N.A. in the United States that may be accessed by a Debit Card.

"Overdraft Fee" means the fee assessed to a holder of an Account for each item paid when the Account has insufficient funds to cover the item. Fees charged to transfer balances from other accounts are excluded.

"Debit Card" means a card, sticker, tag or other device issued or provided by BOKF, N.A., including a debit card, check card, or automated teller machine ("ATM") card, that can be used to debit funds from an Account by Point of Sale and ATM transactions.

"Debit Card Transaction" means any debit transaction effectuated with a Debit Card, including Point of Sale transactions (whether pinned or pinless) and ATM transactions.

"High-to-low Debit Card Transaction Sequencing" means BOKF, N.A.'s practice of sequencing an Account's Debit Card Transactions, along with other debit transactions, from highest to lowest dollar amount, which results in some instances in the assessment of Overdraft Fees that would not have been assessed if BOKF, N.A. had used a posting method that sequenced transactions in the chronological order in which the transactions were initiated by Settlement Class Members, or an order that simulated the chronological order in which the transactions were initiated by Settlement Class Members.

## 7. What if I am not sure whether I am included in the settlement?

If you are not sure whether you are in the Settlement Class, or have any other questions about the settlement, visit the settlement website at www.BOKFOverdraftSettlement.com or call the toll free number, 1-877-752-5534.  You may also write with questions to BOKF, N.A. Overdraft Settlement, PO Box 4087, Portland, OR 97208-4087, or send an e-mail to info@BOKFOverdraftsettlement.com.

# THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY

If the settlement is approved and becomes final, it will provide benefits to Settlement Class Members.

## 8. What does the settlement provide?

BOKF, N.A. will pay $19 million to a Settlement Fund to make payments or give account credits to eligible Settlement Class Members as well as to pay Class Counsel's attorneys' fees, costs, expenses, and Service Awards.

Automatic payments will be made to identifiable and eligible Settlement Class Members (*see* ―How to Get a Payment" below).

Details on all of the settlement benefits are in the Settlement Agreement, which is available at www.BOKFOverdraftSettlement.com.

## 9. How will the amount of the payments be determined?

Payments will be calculated using a formula outlined in Section XI of the Settlement Agreement, which is available at www.BOKFOverdraftSettlement.com or on request from the Settlement Administrator at 1-877-752-5534 section XI. The formula allocates a proportional share of the Net Settlement Fund to Settlement Class Members, based on the number of Overdraft Fees each incurred due to High-to-Low Debit Card Transaction Sequencing.

Settlement Class Members who are current account holders of BOKF, N.A. will receive their individual payment by a credit to their account.

Settlement Class Members who are past account holders of BOKF, N.A., will receive their individual payment by mailed check.

QUESTIONS? CALL **1-877-752-5534** OR VISIT **www.BOKFOverdraftSettlement.com**
SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.

K2684 v.0.04 4.5.2012

# HOW TO GET A PAYMENT

### 10.  How can I get a payment?

If you received a notice in the mail telling you that you are Settlement Class Member, you will receive an automatic payment once the settlement is approved by the Court, provided you are eligible for a payment and you have not requested exclusion from the settlement (*see* —"Excluding Yourself From The Settlement" below).

If you did not receive a notice in the mail and believe you are a Settlement Class Member, please contact the Settlement Administrator at www.BOKFOverdraftSettlement.com or by calling 1-877-752-5534.

### 11.  When will I get my payment?

Payments will be mailed to qualifying Settlement Class Members or credited to each qualifying Settlement Class Members' BOKF, N.A. Account after the Court grants "final approval" to the settlement and after any appeals are resolved (*see* "The Court's Fairness Hearing" below).  It is uncertain when any appeals made will be resolved, and resolving them can take time.  Please be patient.

### 12.  What am I giving up to get a payment?

If the settlement becomes final, Settlement Class Members who do not timely request exclusion from the settlement will be releasing BOKF, N.A. from all of the claims described and identified in section XIV of the Settlement Agreement. This means you will no longer be able to sue BOKF, N.A. regarding any of the claims described in the Settlement Agreement.

The Settlement Agreement is available at www.BOKFOverdraftSettlement.com.  The Settlement Agreement provides more detail regarding the release and describes the released claims with specific descriptions in necessary, accurate legal terminology, so read it carefully. You can talk to the law firms representing the Settlement Class listed in the section "The Lawyers Representing You" for free or you can, at your own expense, talk to your own lawyer if you have any questions about the released claims or what they mean.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want to participate in this proposed settlement and you want to keep the right to sue BOKF, N.A. about the legal issues in this case, then you must take steps to get out of the settlement. This is called asking to be excluded from, or sometimes called "opting out" of, the Settlement Class.

### 13.  If I exclude myself, can I get anything from this settlement?

No. If you exclude yourself, you may not apply for any benefits under the settlement and you cannot object to the proposed settlement.  If you ask to be excluded, however, you may sue or be part of a different lawsuit against the Defendant in the future.  You will not be bound by anything that happens in this lawsuit.

### 14.  If I do not exclude myself, can I sue later?

Unless you exclude yourself, you give up the right to sue the Defendant for all of the claims that the proposed settlement resolves.  You must exclude yourself from this Settlement Class to start your own lawsuit or be part of any different lawsuit relating to the claims in this case.

### 15.  How do I get out of the settlement?

To exclude yourself from the proposed settlement, you must send a letter or other written document by mail saying that you want to be excluded from the settlement of *Terry Case v. Bank of Oklahoma, N.A.*, W.D. OK Case No. 5:10-00901-L,

QUESTIONS? CALL 1-877-752-5534 OR VISIT www.BOKFOverdraftSettlement.com
SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.

K2685 v.0.04 4.5.2012

5

S.D. FL Case No. 1:11-cv-20815-JLK; *Susan Eaton v. Bank of Oklahoma, N.A., et al*., Case No. CJ-2010-5209; and *Bryan Ramer v. Bank of Oklahoma*, N.A., Case No. CJ-2010-05841.  In addition, you must list the account number(s) of your BOKF, N.A. account(s) linked to a BOKF, N.A. Debit Card.  In addition, your exclusion request must include, for each account listed:

The full names and current addresses of everyone whose name is on the account.

(1)    A statement that everyone whose name is on the account satisfies the criteria set forth above to be a Settlement Class Member (*see* "Who is in the Settlement," above).

(2)    A statement of intention to exclude everyone whose name is on the account from the Settlement Class.

(3)    The signature of everyone whose name is on the account.

Be sure to include your full name, address, signature, and date.  You must mail your request for exclusion postmarked by **Month DD**, **2012** to:

> BOKF, N.A. Overdraft Exclusions
> PO Box 4087
> Portland, OR 97208-4087

This is a firm deadline for requesting exclusion from the proposed settlement.  You cannot ask to be excluded on the phone, by email, or at the website.

# THE LAWYERS REPRESENTING YOU

## 16.  Do I have a lawyer in the case?

The Court appointed Tycko & Zavareei LLP, 2000 L. Street, NW, Suite 808, Washington, DC 20036; Stueve Siegel Hanson LLP, 460 Nichols Road, Suite 200, Kansas City, MO 64112; Gray Ritter & Graham, P.C., 701 Market Street, Suite 800, St. Louis, MO 63101; Sneed Lang Herrold P.C., 1700 Williams Center Tower I, One West Third Street, Tulsa, OK 74103; Sill & Medley, PLLC, 14005 N. Eastern Avenue, Edmond, OK 73013; Jeff Martin & Associates, P.C., 4815 S Harvard Ave., Suite 380, Tulsa, OK 74135; Finkelstein Thompson LLP, James Place, 1077 30th Street NW, #150, Washington, DC 20007; Kopelowitz Ostrow P.A., 200 SW First Avenue, 12th Floor, Fort Lauderdale, FL 33301; Podhurst Orseck, 25 W Flagler St Ste 800, Miami, FL 33130; Chitwood Harley Harnes LLP, 1350 Broadway, Suite 908, New York, NY 10018; Bruce S. Rogow, P.A., 500 E Broward Blvd., Fort Lauderdale, FL 33394; Grossman Roth, P.A., 2525 Ponde de Leon Blvd., 11th Floor, Coral Gables, FL 33134; Lieff Cabraser Heimann & Bernstein LLP, 275 Battery Street, 29th Floor, San Francisco, CA 94111; Webb, Klase & Lemond, LLC, 1900 The Exchange, S.E., Suite 480, Atlanta, GA 30339; Trief & Olk, 150 E 58th Street, Floor 34, New York, NY 10155; Baron & Budd, P.C., 3102 Oak Lawn Ave., Suite 1100, Dallas, TX 75219; Golomb & Honik, P.C., 1515 Market Street, Suite 1100, Philadelphia, PA 19102. as "Class Counsel" to represent you and other Settlement Class Members.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer in this case, you may hire one at your own expense.

## 17.  How will the lawyers be paid?

Class Counsel will ask the Court for attorney's fees of up to 30% of the Settlement Fund ($5.7 million), along with payment of Class Counsel's reasonable costs and expenses.  Class Counsel will also request Service Awards of $5,000 to each of the Class Representatives for their services on behalf of the Settlement Class.  The Court may award less than these amounts.  Payments approved by the Court will be made from the Settlement Fund.

# OBJECTING TO THE SETTLEMENT

## 18.  How do I tell the Court if I do not like the settlement?

You can object to the settlement if you do not like some part of it.  You must give reasons why you think the Court should not approve the settlement. To object, send a letter (as instructed below) saying that you object to the proposed settlement. You must include:

QUESTIONS? CALL 1-877-752-5534 OR VISIT www.BOKFOverdraftSettlement.com
SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.

6

K2686 v.0.04 4.5.2012

1) the name of the Actions: *Terry Case v. Bank of Oklahoma, N.A.*, W.D. OK Case No. 5:10-00901-L, S.D. FL Case No. 1:11-cv-20815-JLK; *Susan Eaton v. Bank of Oklahoma, N.A., et al.*, Case No. CJ-2010-5209; and *Bryan Ramer v. Bank of Oklahoma*, N.A., Case No. CJ-2010-05841;

2) your full name, address and telephone number;

3) an explanation of the basis upon which you claim to be a Settlement Class Member;

4) all grounds for your objection, accompanied by any legal support for the objection known to you or your counsel;

5) the number of times in which you have objected to a class action settlement within the five years preceding the date that you file the objection, the caption (name) of each case in which you have made such objection, and a copy of any orders related to or ruling upon your prior such objections that were issued by the trial and appellate courts in each listed case;

6) the identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the settlement or fee application;

7) the number of times in which your counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that you file the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

8) any and all agreements that relate to the objection or the process of objecting – whether written or verbal – between you or your counsel and any other person or entity;

9) the identity of all counsel representing you who will appear at the Final Approval Hearing;

10) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

11) a statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing; and

12) your signature (an attorney's signature is not sufficient).

Mail the objection to each of the following addresses so that it is received no later than **Month DD,** 2012. This is a firm deadline.  Objections received after this date will not be recognized.

| COURT | CLASS COUNSEL | DEFENDANT'S COUNSEL |
|---|---|---|
| Clerk of Court<br>U.S. District Court for the<br>Southern District of Florida<br>400 North Miami Avenue, 8th Floor<br>Miami, FL 33128 | Hassan Zavareei<br>Tycko & Zavareei LLP<br>2000 L Street, NW,<br>Suite 808<br>Washington, DC 20036 | Frederic Dorwart<br>Sarah Poston<br>Frederic Dorwart, Lawyers<br>124 East 4th Street<br>Tulsa, OK 74103 |

## 19.  What is the difference between objecting and asking to be excluded?

Objecting is simply telling the Court that you do not like something about the settlement. You can object only if you stay in the Settlement Class.  Excluding yourself is telling the Court that you do not want to be part of the Settlement Class.  If you exclude yourself, you cannot object to the settlement and you will not be eligible to apply for any benefits under the settlement because the case no longer affects you.

QUESTIONS? CALL **1-877-752-5534** OR VISIT **www.BOKFOverdraftSettlement.com**
SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.

7

K2687 v.0.04 4.5.2012

# THE COURT'S FAIRNESS HEARING

## 20.  When and where will the Court decide whether to approve the settlement?

The Court will hold a Fairness Hearing at x:xx x.m. on **Month DD, 2012**, at the United States District Court for the Southern District of Florida, James Lawrence King Federal Justice Building, 99 N.E. 4th Street, Eleventh Floor, Court Room No. 2, Miami, FL 33132.  At the Fairness Hearing, the Court will consider whether the proposed settlement is fair, reasonable, and adequate.  The Court may also consider Class Counsel's request for attorneys' fees, costs and expenses, and Service Awards.  If there are objections received by the deadline, the Court may consider them.  After the Fairness Hearing, the Court will decide whether to approve the settlement and how much to award in attorneys' fees, costs and expenses, as well as Service Awards.

The Fairness Hearing may be moved to a different date or time without additional notice, so it is recommended that you periodically check www.BOKFOverdraftSettlement.com or call the toll-free number for updated information.

## 21.  Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have.  However, you are welcome to attend the hearing at your own expense. If you send in a written objection, you do not have to come to the Fairness Hearing to talk about it. As long as you mailed your written objection on time, the Court may consider it. You may also pay your own lawyer to attend the Fairness Hearing, but their attendance is not necessary.

## 22.  May I speak at the hearing?

Yes.  You may ask for permission to speak at the Fairness Hearing.  To do so, no later than **Month DD, 2012**, you must mail or file with the Court (Clerk of Court, U.S. District Court for the Southern District of Florida, 400 North Miami Avenue, 8th Floor, Miami, FL 33128) your "Notice of Intention to Appear in *Terry Case v. Bank of Oklahoma, N.A.*, W.D. OK Case No. 5:10-00901-L, S.D. FL Case No. 1:11-cv-20815-JLK; *Susan Eaton v. Bank of Oklahoma, N.A., et al.*, Case No. CJ-2010-5209; and *Bryan Ramer v. Bank of Oklahoma, N.A.*, Case No. CJ-2010-05841.  Be sure to include your name, address, telephone number and signature.  You must also mail your Notice of Intention to Appear to both Class Counsel and Defendants' Counsel at the addresses listed in Question 18. You cannot speak at the hearing if you exclude yourself.

# IF YOU DO NOTHING

## 23.  What happens if I do nothing?

If you are a Settlement Class Member and received a notice in the mail telling you that you will receive an automatic payment or account credit, you do not need to do anything in order to receive your payment or account credit (provided the Court approves the settlement).  If you *did not* receive a notice in the mail telling you that you will receive an automatic payment or account credit and do nothing, you *will not* get a payment or account credit from this settlement.  In addition, unless you exclude yourself, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against the Defendants about the claims in this case, ever again.

# GETTING MORE INFORMATION

## 24.  How do I get more information?

This notice summarizes the proposed settlement.  More details are in the Settlement Agreement which is available at www.BOKFOverdraftSettlement.com.  You also may write with questions to BOKF, N.A. Overdraft Settlement, PO Box 4087, Portland, OR 97208-4087, or send an e-mail to info@BOKFOverdraftsettlement.com.

**QUESTIONS? CALL 1-877-752-5534 OR VISIT www.BOKFOverdraftSettlement.com**
**SI DESEA RECIBIR ESTA NOTIFICACIÓN EN ESPAÑOL, LLÁMENOS O VISITE NUESTRA PÁGINA WEB.**

K2688 v.0.04 4.5.2012                                                                                                                        8