# EXHIBIT B

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION

*Terry Case v. Bank of Oklahoma, N.A.*
S.D. FL Case No. 1:11-cv-20815-JLK
W.D. OK Case No. 5:10-00901-L

**JOINT DECLARATION OF HASSAN ZAVAREEI, JEFFREY M. OSTROW,
ROBERT C. GILBERT, AND BURTON FINKELSTEIN**

1. I, Hassan A. Zavareei, am counsel for plaintiff Susan Eaton in the action pending in Oklahoma state court, *Susan Eaton v. Bank of Oklahoma, N.A., et al.*, Case No. CJ-2010-5209.

2. I, Jeffrey M. Ostrow, am counsel for plaintiff Terry Case in the above-captioned action pending in the Southern District of Florida.

3. I, Robert C. Gilbert, am counsel for plaintiff Terry Case in the above-captioned action pending in the Southern District of Florida.

4. I, Burton H. Finkelstein, am counsel for plaintiff Bryan Ramer in the action pending in Oklahoma state court, *Bryan Ramer v. Bank of Oklahoma*, N.A., Case No. CJ-2010-05841.

5. All capitalized terms used herein have the same definitions as those in the Settlement Agreement and Release dated March 16, 2012.

6. On August 17, 2010, Plaintiff Susan Eaton filed a Class Action Petition in District Court of Tulsa County, Oklahoma seeking monetary damages, restitution and declaratory relief from BOK, arising from its alleged unfair assessment and collection of overdraft fees, captioned *Susan Eaton v. Bank of Oklahoma, N.A., et al.*, Case No. CJ-2010-5209 ("*Eaton*").

7. On August 17, 2010, Plaintiff Terry Case filed a Class Action Complaint in United States District Court for the Western District of Oklahoma seeking monetary damages, restitution and declaratory relief from BOK, arising from its alleged unfair assessment and collection of overdraft fees, captioned *Terry Case v. Bank of Oklahoma, N.A.*, W.D. OK Case No. 5:10-00901-L ("*Case*").

8. On September 16, 2010, Plaintiff Bryan Ramer filed a Class Action Petition in District Court of Tulsa County, Oklahoma seeking monetary damages, restitution and declaratory relief from BOK, arising from its alleged unfair assessment and collection of overdraft fees, captioned *Bryan Ramer v. Bank of Oklahoma, N.A.*, Case No. CJ-2010-05841 ("*Ramer*").

9. On September 21, 2010, Bank of Oklahoma ("BOK") moved to dismiss *Case* in the Western District of Oklahoma. The district court granted plaintiff's motion to stay proceedings in *Case* pending the Judicial Panel on Multidistrict Litigation's ("JPML") ruling on BOK's motion to vacate the Conditional Transfer Order previously entered by the JPML.

10. On November 30, 2010, the JPML transferred *Case* to this Court as part of MDL 2036.

11. Thereafter, BOK filed a petition for mandamus to the Eleventh Circuit Court of Appeals seeking to vacate the JPML's transfer order in *Case*. On March 4, 2011, the Eleventh Circuit denied the petition.

12. On October 19, 2011, plaintiff filed his Amended Complaint in *Case*, and the Action was made part of the "Fifth Tranche" in MDL 2036. On September 21, 2011, BOK filed a motion to dismiss *Case*. That motion is fully briefed and pending decision by this Court.

13. On September 21, 2010, BOK filed a motion to dismiss *Eaton* on a number of grounds, including that the state law claims are preempted by the National Bank Act and that the Oklahoma Consumer Protection Act, breach of contract and unjust enrichment state law claims fail as a matter of law.

14. On March 15, 2011, after briefing and oral argument, the state court presiding over *Eaton* dismissed the unjust enrichment claim, but denied BOK's motion as to the two remaining claims. BOK filed a motion to reconsider, which the state court denied on April 14, 2011.

15. BOK subsequently filed a motion for summary judgment on plaintiff's OCPA claims in *Eaton*. The state court denied this motion on August 17, 2011.

16. On October 18, 2010, BOK filed a motion to dismiss in *Ramer* on a number of grounds, similar to those raised in *Eaton*. The motion to dismiss in *Ramer* was fully briefed by December 12, 2010. BOK's motion to dismiss in *Ramer* was ultimately denied by the state court without hearing on October 19, 2011, following consolidation of the *Ramer* and *Eaton* cases.

17. Class Counsel expended significant resources researching and developing the legal claims at issue in the Actions, including Oklahoma Consumer Protection Act claims which have not been previously addressed in MDL 2036.

18. Class Counsel investigated several potential plaintiffs' claims against BOK and reviewed dozens of sets of bank records. This information was essential to Class Counsel's

understanding of the nature of BOK's conduct, the language of the account agreements at issue, and potential claims, remedies and adequacy of the Plaintiffs.

19. Class Counsel also devoted substantial time and resources to litigating the Actions, including defeating motions to dismiss and for summary judgment, pursuing discovery, and in preparing for and negotiating the Settlement.

20. Faced with the prospect of litigating three separate Actions against BOK in federal and state courts, counsel in *Eaton*, *Case* and *Ramer* agreed to jointly prosecute the Actions in order to make efficient use of judicial and professional resources and to achieve the best possible results for our clients.

21. During the course of discovery, BOK produced approximately 25,000 pages, Class Counsel deposed BOK's corporate representative, and were in the process of preparing for other depositions when the mediation and ensuing settlement negotiations occurred.

22. In response to production requests, BOK provided sample transactional account data and aggregate data regarding its Overdraft Fee revenues. Class Counsel's expert used sample transactional account data and aggregate data regarding BOK's Overdraft Fee revenues to analyze and estimate the range of damages at issue in the Actions, comparing Overdraft Fees actually charged to the Overdraft Fees that would have been charged had BOK not employed the challenged transaction ordering practices, to the extent permitted by the data available.

23. Class Counsel's and our expert's review of that data enabled us to gain an understanding of the evidence relating to central questions in the Actions, and prepared us for mediation and settlement negotiations.

24. In addition to discovery undertaken in the Actions, Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the

4

appropriate basis upon which to resolve them, based on our knowledge of the *Gutierrez v. Wells Fargo* action in federal court in California, and our participation in similar actions in MDL 2036 and in other federal and state courts across the country.

25.     On November 11, 2011, the Parties participated in a full-day mediation session with the Honorable Layn Phillips, United States District Judge (Ret.) in Tulsa, Oklahoma. Although no agreement was reached that day, the Parties continued the discussions—under the supervision of the mediator—over the following days.

26.     The Parties eventually reached agreement on the basic terms of the Settlement and signed a Term Sheet on November 15, 2011.  The Term Sheet memorialized, subject to a mutually agreeable written Settlement Agreement and subject to Preliminary Approval and Final Approval by this Court, the Parties' good faith intention to fully, finally, and forever resolve, discharge and release all rights and claims of the Settlement Class Members in exchange for BOK's payment of $19,000,000 to create a common fund for the benefit the Settlement Class.  In addition, BOK will pay all costs and expenses associated with Class Notice and settlement administration, which the Settlement Administrator currently estimates will cost over $350,000.

27.     Based on Class Counsel's expert's analysis, the $19 million Settlement Fund represents approximately 46% of the Overdraft Fees incurred as a result of BOK's alleged unfair and improperly disclosed posting practices.

28.     Over the following three months, the Parties engaged in protracted negotiations regarding the specific terms of the Settlement Agreement.  During this time, Class Counsel engaged in additional settlement-related analysis to determine—among other things—an appropriate plan for allocation of the Settlement Fund.  That analysis required Class Counsel and our expert to analyze the relevant transactional data relating to Overdraft Fees assessed by BOK

against Settlement Class Members, and to determine the fairest and most appropriate distribution formula in light of the data that BOK possesses.

29.     All Settlement Class Members who were assessed an "Additional Overdraft Amount" will automatically receive a *pro rata* distribution of the Net Settlement Fund without having to file any claims.  The Additional Overdraft Amount analysis determines, among other things, which BOK Account holders were assessed additional Overdraft Fees that would not have been assessed if the Bank had used a posting sequence or method for Debit Card Transactions other than ordering them from highest to lowest dollar amount, and how much in additional Overdraft Fees those Account holders were assessed.  The calculation involves a complex multi-step formula and process that is described in detail in the Settlement Agreement.

30.     While there exists a limited 10-month period during the approximately 6 ½ year Class Period for which BOK lacks certain account balance information, all other relevant account information is available for that limited 10-month time period, which allowed the Parties to design a proxy for fairly, reasonably and adequately allocating distributions to Settlement Class Members who incurred Overdraft Fees during that limited 10-month time period that is as close as possible to the allocation formula being used for the balance of the Class Period.  All Settlement Class Members – including those who incurred Overdraft Fees during the limited 10-month period, will automatically receive their *pro rata* share of the Net Settlement Fund without having to file any claims.

31.     The Settlement Agreement was signed on March 16, 2012.

32.     The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys familiar with class action litigation and the legal and factual issues of the Actions.

6

33. Class Counsel settled the Actions with the benefit of thousands of pages of documents produced by BOK, an analysis of a significant sample of account-level data and aggregate BOK Overdraft Fee revenue data, and following a Rule 30(b)(6) deposition. Review of this information positioned us to evaluate the strengths and weaknesses of Plaintiffs' claims and the prospects for success at class certification, summary judgment, trial and on appeal.

34. While Class Counsel are confident in the strengths of the Actions, we are also mindful of the various defenses available to BOK. While Plaintiffs defeated BOK's motions to dismiss in *Eaton* and *Ramer*, Plaintiffs would have continued to face risks at all stages of the Actions, including class certification, summary judgment, trial and, if successful, on appeal.

35. Continued litigation of the Actions would require extensive fact and expert discovery, including the retention of data experts to perform comprehensive damage analyses, and in the fields of marketing and the banking industry.

36. Protracted litigation carries with it inherent risks that would necessarily delay and endanger Settlement Class Members' monetary recovery. In view of those risks and delays, Plaintiffs and Class Counsel believe that the value of entering into the Settlement now outweighs the risks and delays associated with continued litigation of the Action.

****

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Washington, DC on April 13, 2012.

/s/ Hassan A. Zavareei
Hassan A. Zavareei

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Florida on April 13, 2012.

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Miami, Florida on April 13, 2012.

/s/ Robert C. Gilbert
Robert C. Gilbert

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Washington, DC on April 13, 2012.

/s/ Burton H. Finkelstein
Burton H. Finkelstein