**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:09-MD-2036-JLK**

| | |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION | ) ) |
| | ) |
| MDL No. 2036 | ) |
| | ) |
| | ) |
| THIS DOCUMENT RELATED TO: | ) |
| | ) |
| Stephen T. Anderson v. Compass Bank, | ) |
| N.D. Fla. Case No. 1:10-cv-00208 | ) |
| S.D. Fla. Case No. 1:11-cv-20436-JLK | ) |

**COMPASS BANK'S POST-DISCOVERY SUPPLEMENTAL BRIEF IN SUPPORT OF
RENEWED MOTION TO COMPEL ARBITRATION AND STAY**

## INTRODUCTION

After Compass' Motion to Compel Arbitration was fully briefed, this Court granted plaintiff's request to conduct arbitration related discovery.  With that discovery now complete, Compass files this supplemental brief, focusing on that discovery and new case law.  Compass incorporates, rather than repeating, its arguments in its original briefing.  [DE # 1771, #1823.]

Now that plaintiff has had his opportunity to conduct discovery, it is clearer than ever that arbitration is due because both the facts and the law have improved.  For instance, the Eleventh Circuit has recently enforced arbitration clauses in two separate appeals from this MDL – for both Regions Bank and SunTrust Bank – rejecting the same arguments Anderson makes here.  As described below, Compass' facts are even stronger than the facts in those two actions. *See In re Checking Account Overdraft Litigation MDL No. 2036 (Hough v. Regions Bank)*, __ F.3d __, 2012 WL 686311 (11th Cir. Mar. 5, 2012) [hereinafter *Regions*]; *In re Checking Account Overdraft Litigation MDL No. 2036 (Buffington v. SunTrust Banks, Inc.)*, 2012 WL 660974 (11th Cir. Mar. 1, 2012) [hereinafter *SunTrust*].

In yet another recent arbitration appeal from this MDL, the Eleventh Circuit enforced the delegation clause in M&T Bank's arbitration provision.  *In re Checking Account Overdraft Litigation MDL No. 2036 (Given v. M&T Bank Corp.)*, __ F.3d __, 2012 WL 934054 (11th Cir. Mar. 21, 2012) [hereinafter *M&T*].  Likewise, Compass' facts on its delegation clause are even stronger than those in the *M&T* case.

## FACTS

Despite three months of discovery, the fundamental facts have not changed:

- **Compass has already successfully enforced its arbitration provision in two putative class actions that were substantially identical to this case.** Those actions, which were decided by two different federal judges in Texas (where over 50% of Compass' depositors reside), were both decided in 2010 – pre-*Concepcion*.  Compass has previously filed the detailed opinions by these federal judges. [DE # 1771-1, DE # 1771-12].  The rationale of those cases is not only sound in its own right, but has also been further bolstered by *Concepcion* and its progeny.  *See AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740 (2011); *see also*

1

*Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1214 (11th Cir. 2011).  Not only has Anderson completely failed to respond to Compass' argument in this regard, but Anderson's attorneys have actually cited, approvingly, one of these Compass Texas arbitration opinions in its brief to the Eleventh Circuit in another arbitration appeal from this MDL.  *See* Brief of Appellee at 30, *Garcia v. Wachovia Bank*, No. 11-16029 (11th Cir. Apr. 2, 2012) ("[C]lass action waivers were routinely upheld under Texas law.  *See, e.g.*, *Fat Butter, Ltd. v. BBVA USA Bancshares, Inc.*, Case No. 4:09-cv-03053 (S.D. Tex. Apr. 29, 2010) (granting motion to compel arbitration under Texas law in overdraft fee case) . . . .").

- **Anderson does not deny receiving the arbitration agreement**.  In fact, he acknowledges that he "signed some papers and was handed a large folder that contained a package of papers" and was told that the package "contained papers relating to my account." "I am not denying that the word 'arbitration' may have been in some of the papers contained in the Deposit Booklet." [DE # 1798-1] (Anderson Decl. at ¶¶ 6, 8).

- **The scope of Compass' arbitration agreement is broad (and identical in each version of the Deposit Agreement)**.  *Compare* [DE # 1771-6] at 13 *with* [DE # 1771-5] at 13, and *with* [DE # 1771-4] at 15 ("By opening or maintaining the account, **you agree that if a dispute of any kind arises under this Agreement or relates to your account or any transactions involving your account**, either you or we can choose to have that dispute resolved by binding arbitration.") (emphasis added).[1]

- **Anderson signed an Account Signature Card when he opened his account**, in which he "acknowledges receiving a copy of the Disclosure Booklet for Consumer Accounts" and "agrees to the terms and conditions of the account provided in those disclosures." [DE # 1771-3.]

---

[1]Page numbers in the Deposit Agreements are references to the actual numbers on the original Deposit Agreement rather than the Pacer page.

- **Compass' arbitration clause does not have a fee shifting clause and instead defers to applicable state law on the issue**: "Unless inconsistent with applicable law, each party shall bear the expense of its respective attorney, expert, and witness fees, regardless of which party prevails in the arbitration." [DE # 1771-6] at 17 (2008 Agreement); [DE # 1771-5] at 15 (2004 Agreement); [DE # 1771-4] at 15 (2002 Agreement).

- **Compass' arbitration clause includes an express severance provision** and Compass has consistently stated that if any provision is unconscionable or otherwise unenforceable, severance would be appropriate. *E.g.,* [DE # 1771-5] at 15; [DE # 1771-6] at 15; *see also* [DE # 1771-4] at 19.

- **Anderson alleges that the 2008 Deposit Agreement governs the claims in this lawsuit**.  Anderson's Complaint (1) attaches the 2008 Deposit Agreement, (2) alleges that it was the contract that governs the transactions at issue and (3) alleges breach of that 2008 Deposit Agreement.  Compass agrees that the 2008 Deposit Agreement governs.  And that Deposit Agreement contains the arbitration provision that governs this dispute.

- **During the life of Anderson's accounts at Compass, Compass changed its arbitration provision only once -- effective 2005 (announced in November 2004).**  Although Compass has amended the Deposit Agreement several times, it only changed the arbitration clause in the Deposit Agreement one time during the life of Anderson's accounts (in the amendment announced in November 2004).  After this change, the arbitration provision stayed the same in all other Deposit Agreement amendments for Anderson.  Both the version of the arbitration clause that existed when he opened his account and the version that applied to his account after this amendment require Anderson to arbitrate these claims.  Further, both versions also include a class action waiver.

- **Compass provided more than adequate notice of the 2005 Amendment to its Deposit Agreement**.  When Compass announced an amended Deposit Agreement in November 2004, it mailed a special two page notice, expressly alerting

Anderson, and other existing customers, to the changes in its arbitration clause and stating that those changes would be effective on January 1, 2005.  [DE # 1771-11].

- **Although not required to be, the presence of an arbitration clause was conspicuously noted on the cover of Compass' Deposit Agreement.**  The presence of an arbitration clause was disclosed on the <u>cover page</u> of the 2008 Deposit Agreement and the section on arbitration appeared in the Deposit Agreement under a heading labeled in bold and all capital letters **"ARBITRATION."** [DE # 1771-6] at 2, 8.

- **Compass has expressly agreed to pay "any" costs and "any" filing fee charged by the AAA for Anderson's individual claim.** [DE # 1771-2] at ¶17. Each version of Compass' arbitration agreement also promises to pay at least any portion of the arbitration filing fee that exceeds the Federal Court filing fee. [DE # 1771-6] at 15.

- **Anderson seeks punitive damages, compensatory damages, interest, and "attorneys' fees."**  Complaint at p.30.

- **Other banks near Anderson's residence offered "arbitration free" deposit accounts.**  There were at least 5 other banks within 10 miles of Anderson's Gainesville, Florida residence that offered deposit accounts without requiring customers to agree to arbitrate disputes arising from or relating to those accounts. [DE # 1822-5, DE # 1822-4, DE # 1822- 3].  Simply put, Anderson had other banking options besides Compass Bank, but he voluntarily chose to do business with Compass.

- **Anderson has sufficient information to prosecute his own, individual case.** Anderson's Complaint includes several detailed charts listing different <u>possible</u> posting orders for his transactions.  Anderson should know the order of his own debit card transactions because he received receipts for those transactions.

4

Anderson also received bank statements (and overdraft notices) from Compass Bank.

- **Compass' arbitration provision includes at least three separate delegation clauses**: (1) ("Any dispute regarding the prohibitions in the prior sentence [class action waiver] shall be resolved by the arbitrator(s) in accordance with this agreement."); (2) ("You and we agree . . . to submit to binding arbitration all disputes . . . that arise from or relate to this Agreement . . . or the scope or enforceability of this Agreement"); and (3) ("**Any dispute as to whether any … other doctrine bars the arbitration of any Claim shall be decided by arbitration**"). [DE # 1771-6] at 13-15 (emphasis added). Additionally, the arbitration provision in effect when Anderson opened his account is substantially identical to the delegation provision in the 2008 Deposit Agreement. [DE # 1771-4] at 16-17 ("You and we agree . . . to submit to binding arbitration all disputes . . . that arise from or relate to a) this Agreement . . . or (c) the scope or enforceability of this Agreement . . . ." and "Any dispute as to whether any statute of limitations . . . or similar doctrine bars the arbitration of any Claim shall be decided by arbitration . . . .").

The additional facts revealed over the past three months of discovery have done nothing but weaken Anderson's arguments in opposition to arbitration. For instance, Anderson previously complained about notice of the 2008 amendment to Compass' Deposit Agreement. Now, there can be no dispute that Anderson was indeed mailed both notice of the 2008 amendment **and** the actual 2008 agreement. During discovery, Compass provided Anderson a reproduction of the December 2007 notice sent to Anderson for the 2008 amendment to Compass' Deposit Account Agreement.[2]

Likewise, Anderson previously complained about the adequacy of notice of the 2005 amendment, as well as whether any such notice was timely. It is now clear that Compass mailed a specific notice of amendment in the same envelope as his monthly bank statement, and that the

---

[2] The notice that Compass provided to Anderson was reproduced from the actual mail files maintained by Compass' third-party vendor. Decl. Shari S. Cowart (attached as Exhibit 5).

mailing was in November, 2004, more than 30 days before the January 1, 2005 effective date for existing customers as reflected on the notice itself. Decl. Nicki Chambers (attached as Exhibit 4). The notice stated: "**The 'Effective Date' for the changed terms is January 1, 2005**." *Id.* (attaching notice) (emphasis added).   Further, this notice explained the amendments in the arbitration provisions on the first page of the notice.

In earlier briefing, Anderson also complained about the size of the font on the signature card he signed in 2003.  The evidence now shows, however, that the signature card for Anderson was actually legal size and therefore in reality was larger than the image filed on Pacer.[3]

Further, Compass has now also provided ample evidence that there are simple, inexpensive and fast methods for consumers to resolve any overdraft-related problems they may have.  For instance, Compass has provided evidence from its "Customer Care Unit," where unresolved consumer inquiries or complaints are handled, that it waives over 60% of overdraft fees based upon consumer inquiries.  Decl. Michael Burnette (attached as Exhibit 1)  Likewise, Compass has also provided evidence that it is sued regularly in small claims courts by consumers (with and without lawyers) and that it wins, loses and settles those cases (sometimes without outside counsel). Decl. Lisa Carroll (attached as Exhibit 3).  While the data on overdraft inquiries is limited, what is available is more than sufficient to demonstrate that practical alternatives to filing class action claims for overdraft fees do indeed exist.

### ARGUMENT AND AUTHORITY

**I.    THE LAW HAS MOVED FURTHER IN FAVOR OF COMPASS.**

**A.    The Eleventh Circuit has made clear that arbitration clauses like Compass' are not unconscionable and should be enforced.**

In two separate appeals from this MDL, two separate Eleventh Circuit panels recently held that arbitration provisions for Regions Bank and for SunTrust Bank were enforceable and were not unconscionable.  *See Regions,* 2012 WL 686311; *SunTrust,* 2012 WL 660974, *rev'ing*

---

[3] The actual signature card that Anderson signed was printed on legal size paper, but when the card was converted to PDF for archiving it was, by default, shrunk to letter size.  An exemplar of a blank 2003 signature card, which bears the same form number and date as the actual signature card signed by Anderson in 2003, along with a supporting declaration is being filed along with this brief electronically.  Decl. Sandy Lovell (attached as Exhibit 2).  In addition, to eliminate any dispute, Compass is filing a motion to allow a physical filing of this exhibit.

*In re Checking Account Overdraft Litigation*, 813 F. Supp. 2d 1365 (S.D. Fla. 2011) [Doc. 1853] [hereinafter Second Tranche Order].  Indeed, the Eleventh Circuit expressly held in *Regions* that **"[t]he arbitration clause in the Houghs' agreement is neither procedurally nor substantively unconscionable**," despite the presence of a fee shifting provision—a provision that is absent from Compass' arbitration clause.  *Id.* at *4 (emphasis added).

The *Regions* Court also expressly rejected arguments identical to those Anderson makes against Compass, namely that the terms were presented on a "take-it-or-leave-it" basis, that there was an "inequality in bargaining power," and that the arbitration clause was "buried" in the deposit agreement and was not "conspicuous."  The Eleventh Circuit wrote:

> Although the district court found troubling that the clause was presented to the Houghs "on a take-it-or-leave-it basis with no opt-out provision," under Georgia law, an adhesion contract is not per se unconscionable." . . . As the Supreme Court has recognized, "**[m]ere inequality in bargaining power … is not a sufficient reason to hold that arbitration agreements are never enforceable . . .**" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 1655 (1991).

*Id.* at *4 (some citations omitted) (emphasis added).

The Eleventh Circuit also rejected the Hough's argument that Regions' arbitration clause was unconscionable because it was not "conspicuous," writing:

> The district court also criticized the clause as "not conspicuous" because it was "buried on the twenty-first page of a forty-three page, single-spaced document … in a maze of fine print," but the district court overlooked other aspects of the document that made apparent the agreement to arbitrate.  The first two pages of the deposit agreement thrice reference that it contained "**BINDING ARBITRATION** provisions,"  and the second page of the agreement contains a separate paragraph typed in all caps, bold and underlined …  And reference to the arbitration clause is not difficult: the table of contents states that the paragraph regarding "Arbitration and Waiver of Jury Trial" is located on pages 21 through 23, and that paragraph explains in bold typeset what kinds of disputes are subject to arbitration.  The Supreme Court invalidated in *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652 (1996), a requirement under state law that operated to "singl[e] out arbitration provisions for suspect status" on the ground that the Federal Arbitration Act requires that "such provisions be placed 'upon the same footing as other contracts.'" *Id.* at 687, 116 S.Ct. at 1656.  The **Houghs fail to cite any case law that requires provisions relating to arbitration be "conspicuous,"** and even if this were the standard, the language regarding arbitration in the Houghs' agreement is conspicuous.  **The arbitration agreement is not procedurally unconscionable**.

7

*Id.* at *4 (some citations omitted) (emphasis added).

In fact, the holding in the *Regions* opinion is of even broader application here.  In its brief to the Eleventh Circuit, plaintiffs' counsel made many of the same scattershot arguments that they have made in opposition to Compass' arbitration motion, including the following:

- That the Houghs argued they were "unable to find representation for arbitration" based upon three declarations from different plaintiff lawyers.  *See* Brief of Appellee at 7-8, *Hough v. Regions Bank*, No. 11-14317 (11th Cir. Dec. 13, 2011);

- That Regions' arbitration clause included "*none* of the consumer-friendly terms present in the AT&T clause that the Supreme Court favorably cited in *Concepcion*" and that "Regions' suggestion that the facts of the case in *Concepcion* played no role in the Supreme Court's decision and that *Concepcion* simply forecloses any avenues of challenge by the Houghs in misguided."  *Id.* at 9, 22-23;

- That Regions' arbitration clause "effectively precludes Regions customers from bringing a claim for Regions' improper imposition of overdraft fees, thereby immunizing Regions from liability" and that "it cannot seriously be disputed that customers in overdraft disputes cannot vindicate their rights under the Regions arbitration clause."  *Id.* at 35, 37–8;

- That Regions' arbitration clause is unconscionable and prevents vindication of rights "given the complex nature of the banking transactions . . . calculating damages in connection with the pursuit of overdraft claims like the ones brought by the Houghs requires detailed work by an expert" and the Houghs "have no means to hire" such an expert.  *Id.* at 38–9;

- That Plaintiff is allegedly subject "to the [AAA] Standard Commercial Fee Schedule [and therefore] . . . [t]he initial filing fee for such claims is $3,350" rather than the consumer fee schedule of $125.  *Id.* at 36;

- That "AAA, is neither available to the Houghs nor could it assure a fair hearing or a neutral arbitrator." *Id.* at 41;

- That there is a "moratorium [that] effectively prevents AAA from hearing this dispute." *Id.* at 42;

- That even if AAA were somehow available, the acknowledged systemic deficiencies which precipitated its moratorium on business-initiated consumer arbitrations render an AAA forum inadequate on due process grounds. *Id.* at 43; and

- That AAA rules does not allow the "discovery necessary to prove" the Houghs' claims. *Id.* at 39-40.

The Eleventh Circuit rejected these arguments, however, expressly holding that Regions' arbitration provision was to be enforced.  *Regions*, 2012 WL 686311, at *4.

Likewise in *SunTrust*, the Eleventh Circuit also rejected plaintiffs' claims of unconscionability, stating that "[t]he arbitration clause in the Buffintons' agreement is neither procedurally nor substantively unconscionable."  *SunTrust*, 2012 WL 660974 at * 3.   As it did in *Regions*, the Eleventh Circuit in *SunTrust* rejected the exact same set of scattershot arguments listed above, instead mandating that SunTrust's arbitration provision be enforced.  *See* Brief of Appellee at 10, 17, 33-39, *Buffington v. SunTrust Bank*, No. 11-14316 (11th Cir. Dec. 20, 2011).

For the same reasons the Eleventh Circuit rejected those arguments in *Regions* and *SunTrust*, this Court should reject those arguments here.

**B.**      **The facts here even more strongly require arbitration than those in *Regions* and *SunTrust*.**

   1.   Unlike the Second Tranche Cases, Compass' Deposit Agreement Does Not Include a Fee Shifting Provision and Defers to Underlying State Law.

Unlike the facts in *SunTrust*, *Regions* and *BB&T*, Compass' arbitration provision neither includes a "mandatory" fee shifting provision nor a "one-way" fee-shifting provision.  In fact, Compass' arbitration provision does not include a fee shifting provision of <u>any</u> kind.  Instead, Compass' arbitration provision expressly adopts underlying state law regarding fees, which by its very nature cannot be unconscionable, stating that "[u]nless inconsistent with applicable law, each party shall bear the expense of its respective attorney, expert, and witness fees, regardless of which party prevails in the arbitration."  *Compare* [DE # 1771-6] at 17; [DE # 1771-4] at 15 *with Second Tranche Order*, 813 F. Supp. 2d at 1373, 1376.

   2.   Unlike the Second Tranche Cases, Compass Has Not Waived the Applicability of its Severance Clauses.

This Court did not reach the question of whether the fee shifting or setoff provisions were severable in the Second Tranche Order, because it held that the banks had waived those arguments by failing to raise them.  Unlike the second tranche banks, however, Compass has repeatedly asserted severance as an alternative if this Court were to find any portion of Compass' arbitration provision, other than the class action waiver clause, unconscionable.  The severance clause in Compass' arbitration provisions states that "[i]f any portion of this arbitration provision other than the prohibition against the arbitration of joined, consolidated or class actions is

deemed invalid or unenforceable, the remaining portions of this arbitration provision will remain valid and enforceable." [D.E.#1771-5] at 15; [D.E.#1771-6] at 15; *see also* [D.E.#1771-4] at 19 (2002 arbitration provision with similar but not identical language).  Likewise, each of the Deposit Agreements include a separate and equally broad severance clause, providing that: "[a] determination that any provision of this Agreement is unenforceable or invalid shall not affect the enforceability or validity of any other provision of this Agreement."  [D.E.#1771-5] at 17; [D.E.#1771-6] at 17; [D.E.#1771-4] at 21.  Thus, the unambiguous language of Compass' arbitration clause ensures its enforceability despite any provision that this Court holds to be unenforceable or invalid.

    3.   <u>The Setoff Provision in the Deposit Agreement Does Not Change the Result.</u>

While Compass' Deposit Agreement does include a setoff provision, its mere presence does not make Compass' arbitration provision unconscionable.  This Court's Second Tranche decision was based upon the **combination**[4] of the mandatory fee shifting and the setoff provisions.  Because Compass does not have a fee shifting provision in its arbitration clause, the setoff provision would be irrelevant to Anderson (or, for that matter, any Compass customer in arbitration).  Further, Compass' setoff provision is part of the Deposit Agreement as a whole (not the arbitration provision) and Compass' setoff provision does not reference arbitration at all.  Thus, the conscionability or application of this setoff provision is not properly before this Court because that decision is for the arbitrator – since the setoff provision is outside of the arbitration clause.  "**[U]nless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance**." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (emphasis added); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 399- 400 (1967) (a challenge to the "contract generally—as opposed to the arbitration clause itself—is for the arbitrators and not for the courts").  Applying *Buckeye* and *Prima Paint*, federal courts have repeatedly held that challenges to provisions that

---

[4] In fact, this Court wrote that "this Court does not require that consumer agreement setup dispute resolution procedures that are risk-free for plaintiffs" and that "*Concepcion* does not require that all agreements contain such overwhelmingly favorable terms."  *Second Tranche Order*, 813 F. Supp. 2d at 1375 n.9.

are not part of the arbitration clause and that apply equally in arbitration and litigation are not a basis for refusing enforcement of the parties' arbitration agreement.[5]

Moreover, this setoff provision is completely irrelevant to the merits of Compass' arbitration motion.  Anderson's account was closed before this action was filed; he does not allege a current account and Compass has not claimed for any monies against him.  Anderson cannot escape these facts by arguing that setoff would potentially be applicable to other putative class members who might someday attempt to arbitrate claims against Compass. The issues of "hypothetical plaintiffs in a potential class action lawsuit . . . do not prevent the named plaintiffs from being forced to compel arbitration."  *In re Managed Care Litig.*, 132 F. Supp. 2d 989 (S.D. Fla. 2000) *rev'd on other grounds by Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401 (2003); *Stewart Agency, Inc. v. Robinson*, 855 So. 2d 726, 728 (Fla. 4th DCA 2003) (record must establish unconscionability as to the specific plaintiff at issue); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756-57 (Tex. 2001) (same).

Finally, Anderson's claims in this case are governed by Florida law, which provides Compass with a right of setoff even in the absence of an express right of setoff in its Deposit Agreement. Under Florida common law, a bank is entitled to a setoff against a depositor's general accounts for an obligation owed to it by that depositor.  *See Coyle v. Pan Am. Bank of Miami*, 377 So. 2d 213, 215 (Fla. 3d DCA 1979) ("The law is well-settled that a garnishee bank in a garnishment proceeding is entitled to a set-off against a depositor's general account, which is sought to be garnished, when the set-off is based on a matured debt owed by the depositor to the bank."); *In re Andrews*, 33 B.R. 197, 199 (S.D. Fla. 1983) ("It is clear in Florida that a bank has

---

[5]*See, e.g., Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 877 (11th Cir. 2005) (rejecting district court's reasoning, because they "pertain to the underlying Consumer Loan Agreements as a whole, and not to the Arbitration Agreements specifically"); *Day v. Persels & Assocs., LLC*, , 2011 U.S. Dist. LEXIS 49231, at* 13-14 (M.D. Fla. May 9, 2011) (challenge to a provision limiting punitive damages was an issue for the arbitrator under *Buckeye* and not a basis to refuse enforcement of the parties' arbitration agreement); *Davis v. Global Client Solutions*, LLC, 2011 U.S. Dist. LEXIS 116063, at *6 (W.D. Ky. Oct. 6, 2011) (Because plaintiffs' challenges to provisions limiting legal remedies and other ostensibly exculpatory clauses "concern the terms of the Agreement outside of the arbitration provision, their propriety appears outside this Court's mandate" and are "properly left to the arbitrator."); *Wince v. Easterbrooke Cellular Corp.*, 681 F. Supp. 2d 679, 686 (N.D. W.Va. 2010) (refusing to consider challenges to provisions aside from the arbitration provision because "any challenge to [the] liability-limiting provisions must be raised before an arbitrator").

a common-law right to setoff against a deposit balance a debt due the bank and may, at its option, apply any part or all of the deposit, as is necessary, to the payment of the debt due it by the depositor."); *Carl v. Republic Sec. Bank*, 282 F. Supp. 2d 1358, 1367 (S.D. Fla. 2003) ("Under Florida law, when an individual owes a debt to a bank in the form of an outstanding loan or a negative balance, or overdraft, in a bank account, the bank has a common-law right to transfer funds from another account owned by the same bank customer to satisfy the outstanding debt.").

Because Compass has such setoff rights under Florida state law, a provision in its Deposit Agreement expressly granting that same right is per se not unconscionable under Florida law. Further, setoff provisions in banking agreement are commonplace and are routinely enforced by Florida area courts. *E.g.*, *Matter of T&B Gen. Contracting Co., Inc.*, 13 B.R. 686, 688 (M.D. Fla. 1981) (A bank and a depositor can enter into an agreement providing the bank the right of setoff under default.**).**

###### C. In addition to the Eleventh Circuit's holdings in *Regions* and *SunTrust*, this Court's "Second Tranche" order disposes of Anderson's class action waiver argument.

As this Court acknowledged in its Second Tranche Order, *Concepcion* and *Cruz* prevent courts from invalidating an arbitration provision due to the mere presence of a class action waiver within the arbitration provision. Indeed, this Court observed that "Now, in light of *Concepcion* . . . ., the Court reconsiders its ruling on unconscionability, **without consideration of the class-action waivers** in the Agreements." *Second Tranche Order*, 813 F. Supp. 2d at 1370 (emphasis added); *id.* at 1372 ("The Court now reviews the Parties' Agreements for unconscionability **based on terms other than the class action waivers**") (emphasis added). Likewise, "after *Concepcion* and *Cruz*, courts may not invalidate arbitration agreements simply because they contain class action waivers, **even if, as a practical matter, the class action waiver has a 'claims-suppressing effect**.'" *Id.* at 1371 (quoting *Cruz*, 648 F.3d at 1214) (emphasis added). This Court noted that "*Concepcion* has changed everything, in that class action waivers . . . **can no longer be considered**." *Id.* at 1373. (emphasis added). [6]

---

[6] This Court is undoubtedly correct that *Concepcion* (among other things) preempts any attack on the class action waiver within an arbitration clause. *See, e.g.*, *Litman v. Cellco P'ship*, 655 F.3d 255, 231 (3d Cir. 2011) ("We understand the holding of *Concepcion* to be both **broad**

While the result of this Court's Second Tranche Order has been reversed for Regions and SunTrust, the rationale behind this Court's holdings that *Concepcion* and *Cruz* bar consideration of class action waivers was upheld by the Eleventh Circuit's orders granting arbitration.

### D.  In addition to *Regions* and *SunTrust*, *Concepcion* and *Cruz* support this Court's conclusions regarding class action waivers.

As Compass argued previously, *Concepcion* and *Cruz* preempt all of the enforceability arguments raised by Anderson.   Anderson's arguments, whether phrased in terms of unconscionability or vindication of rights, rest upon the premises that (1) the claims involve small amounts of damages, (2) the claims involve large number of consumers, and (3) many potential claims may go unprosecuted without class treatment.  Both the Supreme Court and the Eleventh Circuit have now expressly rejected this line of argument, as Compass set out in its previous briefing on its pending arbitration motion.  *Concepcion*, 131 S.Ct. at 1758 ("**The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system.  But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons**.") (emphasis added); *Cruz*, 648 F.3d at 1212-13 ("Therefore, to the extent that Florida law would be sympathetic to the Plaintiffs' arguments here, and would invalidate the class waiver simply because the claims are of small value, the potential claims are numerous, and many consumers might not know about or pursue their potential claims absent class procedures, such a state policy stands as an obstacle to the FAA's objective of enforcing arbitration agreements according to

_____

**and clear**: a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by, the FAA, irrespective of whether class arbitration 'is desirable for unrelated reasons.'") (emphasis added); *Quilloin v. Tenet Healthsystem Philadelphia, Inc.*, 673 F.3d 221, 231 - 33 (3rd Cir. 2012) (any ambiguity in arbitration clause was for the arbitrator to construe before unconscionability determination: "ambiguities in arbitration agreements must be interpreted by the arbitrator" citing *PacifiCare Health Sys., Inc. v. Book*, 538 U.S. 401, 406-7 (2003); reaffirming that law impairing class action waivers in arbitration clauses was preempted); *Coneff v. AT&T Corp, et al*, 673 F.3d 1155 (9th Cir. 2012) (*Concepcion* foreclosed class action waiver argument); *Green v. Supershuttle Int'l*, 653 F.3d 766, 769 (8th Cir. 2011) (*Concepcion* preempted class action waiver argument); *Willis v. Nationwide Debt Settlement Group,* 2012 WL 1093618 at *8 (D.Or. Mar. 30, 2012) ("Supreme Court directly rejected Plaintiffs' argument with respect to preserving class actions in situations where the potential numbers of litigants is large but the damage amounts are low"); *Tory v. First Premier Bank*, 2011 WL 4478437 at *4 (N.D.Ill. Sept. 26, 2011) ("*Concepcion* moots any argument on the cost benefits to the plaintiff of a class action versus an individual arbitration.").

their terms, and is preempted."); *id.* at 1214 ("The Plaintiffs' evidence goes only to substantiating the very public policy arguments that were expressly rejected by the Supreme Court in *Concepcion*—namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted.").

## II. ANDERSON UNMISTAKABLY ENTERED INTO AN ENFORCEABLE ARBITRATION AGREEMENT WITH COMPASS WHEN HE OPENED HIS ACCOUNT IN 2003.

In the earlier round of briefing, Anderson argued that he could avoid arbitration because Compass could not prove (1) that an arbitration agreement existed or (2) that it had validly amended its Deposit Agreement.  As Compass explained in the earlier round of briefing, however, this argument is (1) unavailable because Anderson claims breach of the very same Deposit Agreement that contains the arbitration clause; (2) irrelevant; and (3) factually incorrect.

First, Anderson simply cannot make this argument because (1) he has pled that an agreement existed with Compass Bank; (2) he has expressly pled that the agreement was the Deposit Agreement – which he then attached to the complaint;[7] and then (3) he expressly pled that Compass Bank has breached this very Deposit Agreement.  In short, Anderson cannot have his cake and eat it too.[8]  In *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308 (11th Cir. 2005), *abrogated on other grounds by Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009), the Eleventh Circuit rejected a strikingly similar argument, holding that "Mrs. Blinco may not rely upon the Note to establish her RESPA claims while avoiding her obligation under the Note to arbitrate such claims."  *Id.* at 1312; *see also Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GmbH*, 206 F.3d 411, 418 (4th Cir. 2000) ("[Plaintiff's] entire case hinges on its asserted rights under the . . . contract; it cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated."); *Hughes*

---

[7] Anderson's Complaint states that "**a true and correct copy**" of the Consumer Deposit Agreement is attached to the Complaint.  (Comp. ¶ 37) (emphasis added).  In his Complaint, Anderson claims that Compass Bank's actions "constitute[] a breach of the express terms of the Deposit Agreement."  (Comp. ¶ 92)

[8] Even stranger is Anderson's effort to simultaneously use the Deposit Agreement as a sword and shield.  In other words, to make the argument that Compass has not amended the Deposit Agreement appropriately Anderson uses the provisions relating to amendment in the original Deposit Agreement, which includes an arbitration clause.

14

*Masonry Co., Inc. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981) (arbitration required "because [plaintiff's] complaint is . . . fundamentally grounded in [defendant's] alleged breach of the obligations assigned to it in the [arbitration] agreement"); *Remapersad v. Primeco Pers. Commc'ns., L.P.*, No. 01-6640, 2001 U.S. Dist. LEXIS 26037 at * 3-4 (S.D. Fla. Oct. 16, 2001) (plaintiff argued "agreement to arbitrate was never formed"; Judge Moreno rejected that contention because complaint alleged that "he entered into a contract with Defendant and is suing for breach of that contract."; plaintiff "cannot claim that the contract was not formed to avoid arbitration and concurrently sue for breach of that contract."). *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177 (11th Cir. 2009) ("A party is bound by the admissions in his pleadings.").

Second, Anderson's argument that Compass cannot prove that it validly amended its Deposit Agreement is irrelevant because each iteration of Compass' Deposit Agreement has an arbitration provision that would require Anderson to submit his dispute to the arbitrator for resolution. In other words, arbitration is due under **any** of Compass' Deposit Agreements. The scope of each of the arbitration provisions is identical and broad:

> "By opening or maintaining the account, you agree that if a dispute of **any kind** arises under this Agreement or **relates to your account or any transactions involving your account, either you or we** can choose to have that dispute resolved by binding arbitration."

[DE # 1771-6] at 13; [DE # 1771-5] at 13; [DE # 1771-4] at 15.

Third, Anderson's argument that Compass failed to properly amend its Deposit Agreement in 2005 is simply not supported by any evidence. In 2004, Compass mailed a notice of its amendment to the Deposit Agreement in the same envelope as its regular monthly statements to customers. [DE # 1771-11]. This mailing was done by Compass' mailing room. Decl. Nicki Chambers (attached as Exhibit 4). Per the express language of the notice of amendment, Compass' amended agreement became effective for existing customers like Anderson on "January 1, 2005." [DE # 1771-11] at 2. Thus, Compass actually provided Anderson with more notice than the Deposit Agreement's amendment procedure required. [DE # 1771-4] at 21 ("We agree to provide you notice of any amendment . . . at least thirty (30) days . . . before that amendment becomes effective . . . .").

III.    **ANDERSON'S ATTACKS ON THE ARBITRATION CLAUSE ARE FOR THE ARBITRATOR.**

As Compass has previously pointed out, its arbitration agreement includes multiple delegation clauses.  [DE # 1822] at 1-2; [DE # 1771] at 12-13.  Those clauses clearly delegate questions of arbitrability to the arbitrator.  *See Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777-79, 2781 (2010) ("[A] party's challenge to another provision of the contract, or the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitration [contained within the challenged contract]."); *M&T*, 2012 WL 934054 at *3  ("A delegation provision is severable from the rest of the arbitration agreement and must be challenged 'specifically.'" (citing *Rent-A-Center*, 130 S.Ct. at 2777-79)).  Further, the AAA rules likewise provide for the arbitrator to make the decision on arbitrability.   Commercial Arb.R.7 (www.adr.org/sp.asp?id=22440).   Anderson argues that these delegation clauses are not sufficiently clear and that they are unconscionable.  He is mistaken.

The Eleventh Circuit has just opined on this very issue in another appeal from this MDL. In *M&T*, the Eleventh Circuit enforced M&T's delegation clause, writing:

> The terms of the delegation provision in this case provide clear and unmistakable evidence that M&T Bank and Given manifested their intent to arbitrate whether Given's claims are within the scope of the arbitration agreement. As we have mentioned, the delegation provision provides: "Any issue regarding whether a particular dispute or controversy is . . . subject to arbitration will be decided by the arbitrator." Given's claims for relief are "a particular dispute or controversy," and whether her claims are within the scope of the arbitration agreement is an "issue regarding whether a particular dispute or controversy is subject to arbitration." Because the delegation provision encompasses *any* issue, it encompasses Given's claims for relief. *See Anders v. Hometown Mortg. Servs., Inc.,* 346 F.3d 1024, 1028 (11th Cir. 2003) ("The agreement could not have been broader. Any disputes means all disputes, because 'any' means all." (some quotation marks omitted)). An arbitrator, not the district court, must decide whether those claims are within the scope of the arbitration agreement. *See CompuCredit Corp. v. Greenwood*, __ U.S. __, 132 S.Ct. 665, 669 (2012) ("[Section 2 of the FAA] requires courts to enforce agreements to arbitrate according to their terms."); *Rent-A-Center*, 130 S.Ct. at 2776.

*M&T*, 2012 WL 934054, at *3.

Compass' delegation clause is virtually identical to M&T's delegation clause:

16

| **M&T's Delegation Clause** | **Compass' Delegation Clause** |
|---|---|
| "Any issue regarding whether a particular dispute or controversy is . . . subject to arbitration will be decided by the arbitrator. . . ." *Id.* at *1. | "Any dispute as to whether any statute of limitations . . . or other doctrine bars the arbitration of any Claim shall be decided by arbitration"… [DE # 1771-6] at 14.[9] |

In fact, Compass' agreement goes further by including two additional delegation clauses. The first clearly applies to any attack (however denominated) upon the unavailability of class treatment in arbitration. The Deposit Agreement states: "Any dispute regarding the prohibitions in the prior sentence [class action waiver] shall be resolved by the arbitrator(s) in accordance with this agreement." [DE # 1771-6] at 14. The last of these delegation clauses simply confirms that "all disputes" arising from or relating to the agreement or the scope of the agreement or its enforceability must go to arbitration. This provision states that the parties agree "to submit to binding arbitration all disputes . . . that arise from or relate to this Agreement . . . or the scope or enforceability of this Agreement". [DE # 1771-6] at 13-14.

In addition to the holding in *M&T*, the Eleventh Circuit has enforced delegation clauses far less clear than Compass' delegation clauses. For instance, in *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005), the Eleventh Circuit delegated a dispute regarding arbitrability to the arbitrator even though, unlike this case, there was no express delegation of authority to an arbitrator in the arbitration agreement. *Id*. Rather, the Court held that the parties' incorporation of the AAA rules—including, particularly, the rule providing the arbitrator with authority to "rule on . . . objections with respect to the existence, scope or validity of the arbitration agreement"—was sufficient to "clearly and unmistakably" delegate the issue to an arbitrator. *Id*.

Further, Anderson bears the burden to establish that the delegation clause is unconscionable because unconscionability is an affirmative defense. *See, e.g., Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration."). Moreover, general

---

[9] The arbitration provision in Compass' 2002 Deposit Agreement contained substantially identical delegation provisions. [DE#1771-4] ("Any dispute as to whether any . . . or other doctrine bars the arbitration of any Claim shall be decided by arbitration"; agree to arbitration for "all disputes" arising from "the scope or enforceability of this Agreement").

attacks on the conscionability of an arbitration clause as a whole alone are insufficient to defeat a delegation clause.   Indeed, the *Rent-A-Center* Court specifically rejected the argument that simply because the arbitration agreement may be unconscionable, the delegation clause must be also unconscionable.[10]   The Supreme Court has stated that a substantive unconscionability attack on a delegation clause is a "**much more difficult argument**" than an attack on the arbitration agreement as a whole.   *Rent-A-Center*, 130 S.Ct. at 2780 (emphasis added).

Anderson claims that one of the delegation clauses is unconscionable (1) "for the same reasons as the arbitration provision," (2) because the delegation clause "is not emphasized," and (3) because winning the delegation fight would not provide a "monetary recovery."   The delegation clause that Anderson challenges, however, is neither procedurally nor substantively unconscionable. As discussed above, there is no requirement that the delegation clause be highlighted and Supreme Court precedent holds that any rule requiring extra disclosures for arbitration related clauses is preempted.   *See, e.g., Doctors' Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (holding that FAA preempted a Montana state statute which imposed special typographical requirements for arbitration provisions); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 172 (5th Cir. 2004) ("[T]he FAA prohibits states from passing statutes that require arbitration clauses to be displayed with special prominence . . . . [C]ourts cannot use the unconscionability doctrines to achieve the same result[.]").   Further, like the Houghs in *Regions*, Anderson fails to cite any case holding that arbitration related clauses must be highlighted or conspicuous.   Moreover, any procedural unconscionability argument also fails because Anderson has now admitted that he read none of the agreements.

Anderson's "monetary relief" argument adds nothing.   No monetary relief will ever be immediately available as a result of any enforceability dispute resulting from a delegation clause—and yet the Supreme Court clearly indicated that such clauses are enforceable in *Rent-A-Center*.   Anderson's argument in this regard collapses when examined.   There is **substantial** "monetary relief" potentially available if plaintiff's counsel wins the enforceability dispute before the arbitrator.   With such a win, plaintiff's counsel can then attempt to move ahead with

---

[10] Further, such delegation clauses are routinely honored by Florida courts.   *See, e.g.*, *ATP Flight School, LLC v. Sax*, 44 So. 3d 248, 252-53 (Fla. 4th DCA 2010) (acknowledging that delegation clauses are valid under the FAA); *Mercedes Homes, Inc. v. Colon*, 966 So. 2d 10, 14 (Fla. 5th DCA 2007) (enforcing delegation clause).

their putative class action in court (since the arbitration provision has a clause that sends the case back to court if the class action waiver is held unenforceable) and can then attempt to obtain a piece of the enormous settlement (for instance, the Bank of America settlement for over $400 Million) or judgment (Wells Fargo judgment of over $200 Million in *Gutierrez*).

## IV.   DOUBTS REGARDING ARBITRATION MUST BE RESOLVED IN FAVOR OF ARBITRATION AND ANDERSON BEARS THE BURDEN.

To the extent that this Court has any doubts about the setoff provision, severance, signature cards, amendments, costs, small claims cases, past arbitrations, the AAA, any provision in Deposit Agreement  or any other argument raised by Anderson, Eleventh Circuit precedent holds that doubts about arbitration should be resolved in favor of arbitration: "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues *should be resolved in favor of arbitration*." *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc.*, 312 F.3d 1349, 1358 (11th Cir. 2002) (internal quotations and citations omitted; emphasis in original).   The United States Supreme Court has expressly agreed.  *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration"); *Citibank, N.A. v. Stok & Associates, P.A.*, 387 F. App'x 921, 923 (11th Cir. 2010) (*per curiam*), *cert. dismissed* ____ U.S. ___, 131 S. Ct. 2955 (2011) ("When arbitration agreements are governed by the Federal Arbitration Act . . . any doubts concerning the scope of arbitrable issues should be resolves in favor of arbitration . . ..") (citations omitted).

Moreover, Anderson at all times bears the burden of proof for his unconscionability arguments—a burden he cannot meet.  "A party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity."  *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).  The Supreme Court has recently been especially clear on the need to enforce arbitration clauses.  *See CompuCredit Corp. v. Greenwood*, __ U.S. __, 132 S.Ct. 665, 669 (2012) ("[Section 2 of the FAA] requires courts to enforce agreements to arbitrate according to their terms.") (cited and quoted by *M&T*, 2012 WL 934054 at *3).

Anderson cannot meet this burden with mere speculation.  "[A]ny discussion of [Plaintiffs'] potential costs under the AAA rules necessarily is based on speculation and cannot provide an adequate basis for concluding that [their] costs likely would be prohibitively

19

expensive." *Bess v. Check Express*, 294 F.3d 1298, 1304 (11th Cir. 2002); *see also Summers v. Dillards, Inc.*, 351 F.3d 1100, 1101 (11th Cir. 2003) (speculation about costs improper basis to deny arbitration, noting that "if a party considers his liability for costs to be excessive or to deprive him of his statutory remedy, he may seek judicial review of the award"). Courts must trust arbitrators to make sound and fair decisions, *Southland Corp. v. Keating*, 465 U.S. 1, 13-14 (1984) (holding that the FAA was designed to combat judicial hostility towards arbitration).

## CONCLUSION

In short, after discovery both the law and the facts are clearer than ever than arbitration is due.  Two other federal judges ruled in Compass' favor even before *Concepcion*.  Now, after *Concepcion*, *Regions*, *SunTrust* and *M&T*, arbitration is due.[11]

Respectfully submitted,

/s/Gregory C. Cook
Counsel for Defendant
Compass Bank

**OF COUNSEL:**

Gregory C. Cook
A. Kelly Brennan-Bolvig
BALCH & BINGHAM LLP
1901 Sixth Avenue North
Birmingham, Alabama  35203-4644
Telephone:  205-251-8100
Facsimile:  205-226-8799
E-mail:  gcook@balch.com
         kbrennanbolvig@balch.com

---

[11] Compass also incorporates all of its prior motions and briefs directed towards the arbitration issue including: (S.D. Fla. 1:11-CV-20436-JLK) [DE ## 6, 7, 16] (motion to compel arbitration and responses); [DE # 1607] (Compass briefing on motions to defer); [DE ## 1771, 1822] (Compass renewed motion to compel arbitration and reply in support thereof); [DE ## 1823, 1893] (Compass motion to strike and reply in support thereof); [DE # 1857] (Compass response in opposition to motion to defer ruling on Compass' arbitration motion).

**OF COUNSEL**:

Gerry S. Gibson and C. Bryce Albu
Fla. Bar Nos. 261998 and 657204
REEDER & REEDER, P.A.
250 South Central Blvd.
Suite 200
Jupiter, Florida 33458
Telephone:  561-575-9871
Facsimile: 561-575-9765
Email: gerry@reederandreeder.com
        bryce@reederandreeder.com

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record entitled to receive service.

This 27th day of April, 2011.

/s/ Gregory C. Cook
Of Counsel