UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Shane Swift v. BancorpSouth, Inc.*,
N.D. Fla. Case No. 1:10-cv-00090-SPM
S.D. Fla. Case No. 1:10-cv-23872-JLK

ORDER DENYING BANCORPSOUTH BANK'S MOTION TO STAY AND
GRANTING PLAINTIFF'S EMERGENCY MOTION TO ENJOIN
COPYCAT CASE UNDER THE ALL WRITS ACT

On March 27, 2012, nearly two years after this action was commenced and approximately 18 months after the Judicial Panel on Multidistrict Litigation ("JPML") transferred it to this Court for inclusion in this multidistrict litigation proceeding, Defendant BancorpSouth Bank ("BancorpSouth") filed a Notice of Settlement and Motion to Stay and Suspend Scheduling Order ("Motion to Stay") (**DE # 2602**) based on the entry of an order granting preliminary approval of a proposed class action settlement in an action styled *Thomas, et al. v. Bancorpsouth Bank, et al.*, filed on February 29, 2012 in the United States District Court for the Western District of Arkansas, Case No.: 1:12-cv-1016-RTD ("*Thomas*"). The Motion to Stay urges this Court to stay all further class-related proceedings in this action because the proposed class action settlement in *Thomas* would, if finally approved, encompass the claims of all proposed class members in this action other than named Plaintiff Shane Swift.

On March 29, 2012, Plaintiff Swift, Plaintiffs' Co-Lead Counsel, and the Plaintiffs' Executive Committee ("PEC"), filed an Opposition to the Motion to Stay and Emergency Motion to Enjoin Copycat Case Under the All Writs Act ("Motion to Enjoin") (**DE # 2603**). The Motion to Enjoin asserts that this Court should deny the Motion to Stay and enjoin BancorpSouth, its attorneys, and all others acting in concert with them from proceeding in any fashion with the *Thomas* case, including the proposed class action settlement, because, *inter alia*, (i) the action pending before this Court is the first-filed action challenging BancorpSouth's re-sequencing of debit transactions in a manner designed to inflict more overdraft fees on its customers, (ii) this action is substantially further progressed than *Thomas*, and on the eve of a class certification decision, with a June 2012 discovery cutoff, and (iii) permitting BancorpSouth – or any other defendant – to settle the claims pending against it in this multidistrict litigation proceeding in another forum would undermine the jurisdiction of this Court and the responsibilities imposed on it by the JPML to oversee, administer and resolve all pretrial issues raised in *In Re Checking Account Overdraft Litigation*, MDL 2036 ("MDL 2036").

The Motion to Stay and the Motion to Enjoin are fully briefed (**DE #2602, 2603, 2605, 2626, 2634 & 2635**) and the Court proceeds with the benefit of oral argument (**DE # 2642**). As announced at the conclusion of the April 18 hearing and as discussed below, the Court denies BancorpSouth's Motion to Stay and grants Plaintiff's and the PEC's Motion to Enjoin.

## I.   FINDINGS OF FACT[1]

On May 18, 2010, Plaintiff Swift filed a nationwide class action complaint against Defendant BancorpSouth in the Northern District of Florida, challenging BancorpSouth's overdraft fee policies and practices ("*Swift*"). *Swift* was the first-filed class action lawsuit

---

[1] These factual findings are based on matters of record filed in *Swift* and *Thomas*, including the sworn declarations filed in *Swift* by counsel for Plaintiff (**DE # 2603-1 & 2626-2**) and counsel for BancorpSouth (**DE # 2605-1, 2605-2 & 2635**), as well as the pleadings filed in *Thomas* (**DE # 2605-3–24**).

2

challenging BancorpSouth's overdraft fee policies and practices. On October 20, 2010, over BancorpSouth's objection, the JPML transferred *Swift* to this Court as part of MDL 2036.

*Swift* has been actively litigated in this Court for almost 18 months. Among other activities, this Court entered a comprehensive Scheduling Order on April 13, 2011 (**DE # 1340**), setting firm deadlines for the conduct of discovery and motion practice and a January 14, 2013 trial date. In accordance with the Scheduling Order, the Court denied BancorpSouth's motion to dismiss (**DE # 1305**); BancorpSouth filed its amended answer and affirmative defenses (**DE # 1693**); the Court denied BancorpSouth's *Daubert* motion (**DE # 2650**); and Plaintiff filed its Motion for Class Certification (**DE # 2271**), which is fully briefed and awaiting decision.[2] The parties also engaged in extensive pretrial discovery, including depositions and BancorpSouth's production of over 100,000 pages of documents, conducted pursuant to the Court's Scheduling Order that establishes a June 22, 2012 deadline for completing discovery.

Moreover, for a period spanning July 2011 through December 2011, counsel for Plaintiff and BancorpSouth exchanged privileged and confidential settlement-related communications and data with the goal of ultimately engaging in mediation in *Swift*. (**DE # 2626 & 2625**). As part those settlement negotiations, Plaintiff retained an expert to complete a damage analysis calculation based on sample transactional data provided by BancorpSouth. Plaintiff's expert concluded that the class' damages were in excess of $42 million. *See* Supplemental Declaration of Jeffrey M. Ostrow (**DE # 2625**), at ¶ 19. In response, counsel for BancorpSouth stated that "the case would not settle and will go to trial." *Id.* Yet, during the same time period, the same counsel for BancorpSouth was participating in intensive settlement negotiations and mediations of a case with identical claims and a substantially similar class in Arkansas before re-filing the

---

[2] Pursuant to the Revised Scheduling Order (**DE # 2475**) for the Fourth Tranche relating to class certification, class certification was fully briefed and ripe as of March 20, 2012.

3

case in a race to the courthouse for a lower settlement. *See* Settlement Agreement (**DE # 2605-10**), at ¶ 40 (establishing $1.75 million "Settlement Fund" in *Thomas* for a proposed class that is broader in scope and for a longer time period than in *Swift*).[3]

This Court first learned of the existence of *Thomas* on March 27, 2012, when BancorpSouth filed a notice that a proposed class action settlement had been preliminarily approved in *Thomas* by the Honorable Robert T. Dawson, United States District Judge, Western District of Arkansas, and requested that this Court stay all class-related proceedings in *Swift* to allow the parties in *Thomas* to move forward with the final settlement approval process before Judge Dawson in Arkansas. (**DE # 2602**). Prior to March 27, 2012, BancorpSouth's counsel never made this Court, the PEC, or Plaintiff's counsel aware of any other overdraft-fee-related lawsuits filed or pending against BancorpSouth. (**DE # 2603-1**).

As a result of the motion practice that ensued, this Court has learned that on August 2, 2011 – nearly 18 months after *Swift* was filed – one of the named plaintiffs in *Thomas*, Billy D. Lawson, Jr., filed an action in Arkansas state court styled *Billy D. Lawson, Jr. v. Bancorpsouth, Inc., et al.*, Case No.: CV-11-426I (21st Judicial District, Crawford County, Ark.) ("*Lawson*"), alleging claims nearly identical to those already pending in *Swift*. (**DE # 2605-1**). On September 9, 2011, *Lawson* was voluntarily dismissed without prejudice so that Plaintiff's counsel in *Lawson* and BancorpSouth could pursue confidential settlement negotiations. (**DE # 2603-1 & 2605-1**). Those confidential settlement negotiations continued for approximately six months, including two mediation sessions, culminating in the February 2012 class action settlement agreement that was submitted to Judge Dawson for preliminary approval in *Thomas*. (**DE # 2605-1**).

---

[3] The proposed "Settlement Class" in *Thomas* encompasses all persons who currently have incurred overdraft fees, regardless of whether or not overdraft fee was incurred as a result of the bank's debit re-sequencing.

On February 28, 2012, the day before the settlement agreement was signed, Plaintiff Melvin L. Thomas, III joined Plaintiff Lawson in filing *Thomas* in the Western District of Arkansas, asserting claims nearly identical to those in the *Swift* action. (**DE # 2605-4**). On March 12, 2012 – two weeks *after* it entered into the Settlement Agreement (**DE # 2605-10**) – BancorpSouth filed a motion to dismiss in *Thomas*. (**DE # 2605-5**). On March 16, 2012, the plaintiffs in *Thomas* filed an unopposed motion seeking certification of a settlement class, preliminary approval of the class action settlement, approval of a notice plan to provide absent class members with notice of the proposed class action settlement, and to schedule a final fairness hearing. (**DE # 2603-4**). On March 23, 2012, the *Thomas* plaintiffs filed a brief in support of their unopposed motion for class certification. (**DE # 2603-5**). That brief confirmed that beginning in August 2011, before *Lawson* was voluntarily dismissed, the parties began discussions about negotiating a "global settlement." *Id.* at 4. Also on March 23, BancorpSouth filed a memorandum in *Thomas* in which it "urged the Court to preliminarily approve the settlement agreement" and, for the first time, disclosed the existence of *Swift* to the Arkansas federal court to "fulfill its obligation of candor." *See* Defendant BancorpSouth Bank's Bench Memorandum in Support of Settlement Agreement (**DE # 2603-6**), at 2. On March 26 – at the *Thomas'* parties' request – Judge Dawson convened a preliminary approval hearing in *Thomas*, which was attended by the same attorneys who represent BancorpSouth in *Swift* before this Court. *See* Transcript (**DE # 2626-1**), at 3.

While BancorpSouth claims that it fully disclosed the nature and procedural status of *Swift* to Judge Dawson, this Court's review of the record in *Thomas* and the March 26 hearing transcript leads it to a contrary conclusion. In this Court's view, BancorpSouth's counsel selectively disclosed the nature and status of the proceedings in *Swift* by failing to fully disclose

5

to Judge Dawson the extent to which: (i) the claims in *Swift* are substantially similar to those asserted in the recently-filed *Thomas* case; (ii) the claims in *Swift* have been pending and actively litigated for over 18 months; (iii) the motion for class certification in *Swift* was fully briefed and pending decision at the time of the March 26 preliminary approval hearing in *Thomas*;[4] and (iv) this Court long ago entered a comprehensive scheduling order establishing pretrial deadlines in MDL 2036, including a June 22, 2012 deadline for completing discovery and a January 2013 trial date. Moreover, before and during the March 26 hearing in *Thomas*, BancorpSouth's counsel never disclosed to Judge Dawson that they: (a) had exchanged settlement-related information with Plaintiff's counsel in *Swift* while simultaneously pursuing secret settlement negotiations with the in *Lawson/Thomas* parties; and (b) had not informed this Court, the PEC or Plaintiff's counsel in *Swift* of the existence of *Lawson* or *Thomas* or the proposed class action settlement.

Judge Dawson naturally expressed concern about the *Thomas* parties' rush to obtain preliminary approval of a class action settlement in a case filed less than a month earlier:

> I am a little concerned with the speed with which we are moving. We do have a rocket docket and you can get a setting usually before you want a setting, but, you know, I'm willing to proceed as fast as you think we should proceed. But I would ask that today that we be as deliberate and as thoughtful as we can, because -- not to have a misstep because we are in -- we are apparently in a hurry.

Transcript (**DE # 2626-1**), at 4. BancorpSouth's counsel explained that their client's urgency in seeking preliminary approval was intended to satisfy three interested constituencies: (1) the proposed settlement class (BancorpSouth's customers) with whom the Bank had existing banking relationships; (2) bank regulators; and (3) the bank's shareholders. (**DE # 2626-1 at 15–**

---

[4] Indeed, BancorpSouth was objecting to class certification in February 2012 – the same time it entered into the proposed settlement seeking class certification – without mention to this Court, Judge Lawson, or the parties of the related action filed just weeks after their opposition to class certification.

17). At no time, however, did BancorpSouth's counsel mention *this Court's* interest given its 18 month history presiding over *Swift* as part of MDL 2036.

Judge Dawson also asked the Bank's counsel about this Court's likely reaction to preliminary approval of the *Thomas* settlement. Judge Dawson was led to believe that this Court would have no issue with preliminary settlement approval of a later-filed overdraft fee lawsuit. Counsel suggested to Judge Dawson that this Court regularly enters stay orders when settlements are announced in MDL 2036, but neglected to disclose that such stays have been based on settlements announced *jointly* by the parties litigating in MDL 2036. (**DE # 2626-1 at 21–23**). In this Court's view, BancorpSouth's counsel was not candid with Judge Dawson in addressing his concerns that he might be infringing upon this Court's jurisdiction.

BancorpSouth's counsel downplayed to Judge Dawson the significance of the motion for class certification pending before this Court in *Swift*, suggesting that the absence of a certified class here left the door open to Judge Dawson to certify a class for settlement purposes only in *Thomas* without regard for *Swift*. (**DE # 2626-1 at 14**). In this Court's view, Judge Dawson was not made fully aware that Plaintiff's motion for class certification, filed on December 20, 2011, was fully briefed and pending decision at any time.

BancorpSouth also advised Judge Dawson that *Thomas* would *never* be transferred to this Court as a tag-along action because the JPML had issued an Order suspending Panel Rule 7.1(a) on October 11, 2011. (**DE # 2626-1 at 22**). In fact, notwithstanding the October 11, 2011 Order, prior to March 26, the JPML had issued two conditional transfer orders relating to tag-along actions filed against other banks that are defending actions previously made part of MDL 2036. *See* Conditional Transfer Order (CTO-42) as to Bank of the West (**JPML DE # 646**) and Conditional Transfer Order (CTO-43) as to TD Bank (**JPML DE # 654**). Notably, on April 19,

2012, the day after the hearing before this Court and contrary to BancorpSouth's counsel's statement to Judge Dawson that *Thomas* would *never* be transferred, the JMPL issued Conditional Transfer Order (CTO-44) as to *Thomas*. **(JPML DE # 671)**.

On March 26, 2012, based on the statements and answers provided by BancorpSouth's counsel and plaintiffs' counsel during the hearing, Judge Dawson entered an order granting preliminary approval to the proposed class action settlement in *Thomas*. **(DE # 2603-7)**. Among other things, the preliminary approval order directed that notice be given to all *Thomas* settlement class members and scheduled a final approval hearing for July 30, 2012. On April 3 and 4, 2012, the parties in *Thomas* caused the notice of the proposed class action settlement to be mailed and emailed to approximately 350,000 and 67,000 settlement class members in *Thomas*, respectively, and published it in 16 newspapers. **(DE # 2634-1)**. The *Thomas'* parties disseminated class notice *after* the Motion to Enjoin was filed in *Swift* and *after* this Court entered an Order setting a hearing on the Motion to Enjoin for April 18, 2012.

## II.   ANALYSIS

The Court is presented with conflicting requests. BancorpSouth seeks a stay of class certification proceedings in *Swift* in favor of allowing it to move forward with a settlement in *Thomas* which, if finally approved, will release the claims being litigated in *Swift* for all putative class members other than named Plaintiff Swift. Plaintiff and the PEC seek to enjoin *Thomas* under the All Writs Act and the "first-to-file rule," arguing that (i) *Swift* is the first-filed action challenging the Bank's re-sequencing of debit transactions in a manner designed to inflict more overdraft fees on its customers, (ii) *Swift* is substantially further progressed than *Thomas*, and that (iii) permitting BancorpSouth – or any other defendant – to settle the claims pending against it in MDL 2036 in another forum will undermine the jurisdiction of this Court and the

8

responsibilities imposed on it by the JPML to oversee, administer and resolve all pretrial issues in MDL 2036.

A.   **Defendant's Motion to Stay**

Unlike virtually every other notice of settlement filed in MDL 2036 with an accompanying request to suspend scheduling deadlines, BancorpSouth's Motion to Stay was filed unilaterally. (*See* **DE # 1135, 2066, 2169, 2281, 2240, 2333, 2414 and 2447**). In the face of the information supplied to this Court regarding the events which transpired in Arkansas, beginning with the August 2011 filing of *Lawson* through the March 26, 2012 preliminary settlement approval hearing in *Thomas*, all of which occurred well after the filing and transfer of *Swift* into this MDL 2036, and with Plaintiff's motion for class certification filed on December 20, 2011 fully briefed and awaiting decision, this Court will not stay *Swift* in favor of *Thomas* because the later-filed *Thomas* case interferes with the jurisdiction of this MDL Court.

The JPML has ordered that all cases relating to improper overdraft fees be consolidated in this Court pursuant to 28 USC §1407. To allow another federal court sitting in another Circuit to enter into a settlement that encompasses the entire class here as part of consolidated proceedings in place for over 18 months would effectively render the JPML's decisions and existence moot. This cannot be the correct interpretation of the law.

While Defendants seek refuge in the October 11, 2011 Order Suspending Panel Rule 7.1(a), as discussed below, S.D. Fla. Local Rule 3.8 nonetheless requires disclosure of "the existence of any similar actions or proceedings then pending before another court." BancorpSouth and its counsel failed to notify this Court, the PEC or Plaintiff's counsel in *Swift* of the existence of *Lawson* or *Thomas* until *after* Judge Dawson granted preliminary approval of the proposed class action settlement. This Court concludes that the Bank was seeking to avoid

this MDL Court's jurisdiction by cooperating in the filing of the *Thomas* action in another jurisdiction with the goal of having a non-MDL Court preside over a settlement that would, if finally approved, moot the class action proceedings pending against it before this Court. According to its own filings, BancorpSouth reached the terms of that proposed class action settlement in January 2012, and agreed with the *Thomas* plaintiffs to re-file that case in federal court in order to secure court approval of the proposed class action settlement.

Granting the Motion to Stay would result in irreparable harm to the putative class in *Swift* and establish a precedent in MDL 2036 of permitting other defendants to pursue similar courses of action. Establishing such a precedent would undermine this Court's jurisdiction and the responsibilities imposed on it by the JPML, frustrate the purpose for which MDL 2036 was established in June 2009 and, ultimately, undermine the multidistrict litigation process as a whole. For these reasons, the Motion to Stay is denied.

**B.     Plaintiff's Motion to Enjoin**

MDL 2036 was established to promote the just and efficient conduct of overdraft fee cases pending in federal courts around this country. *See In re: Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009). As a result of the coordinated overdraft-fee pretrial proceedings, this Court has and continues to rule on similar issues, providing much-needed consistency in resolving common issues in MDL 2036 challenging many banks' overdraft-fee practices. Such uniformity is especially important in the context of class certification and settlement because of their pivotal role in determining the outcomes of cases.

Plaintiff and the PEC argue that the proposed *Thomas* settlement's insufficient consideration and unfavorable terms strongly imply that BancorpSouth and the *Thomas* plaintiffs' contrived a plan to dismiss the *Lawson* case in Arkansas state court so they could

negotiate a settlement, unbeknownst to anyone in MDL 2036. Plaintiff and the PEC contend that the facts disclosed by the declarations of BancorpSouth's counsel and Plaintiff's counsel demonstrate that the Bank engaged in a "reverse auction" settlement. *See Reynolds v. Beneficial Nat'l Bank*, 238 F.3d 277, 280–285 (7th Cir. 2002) (discussing "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with the hope that the district court will approve a weak settlement that will preclude other claims against the defendant"). Plaintiff and the PEC argue that once the *Lawson/Thomas* parties reached a settlement, their plan included re-filing the Arkansas state copycat case in federal court as *Thomas* and immediately seeking preliminary approval of their settlement in an effort to subsume the putative *Swift* class. BancorpSouth denies any such intent.

Without delving into the details of the activities of *Lawson/Thomas* parties and their counsel to determine whether, in fact, BancorpSouth engaged in a "reverse auction" and/or whether the *Lawson/Thomas* parties colluded, this Court is empowered under the All Writs Act and the "first-to-file rule" to enjoin BancorpSouth, its counsel, and any other party acting in concert with them, from proceeding in any manner with the proposed settlement that has been preliminarily approved in *Thomas*.

### 1. Federal Courts' Power to Enjoin Under the All Writs Act

The All Writs Act, 28 U.S.C. § 1651, confers "extraordinary powers" upon federal courts. *See ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978). The All Writs Act authorizes district court judges to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." As discussed in *In re Managed Care Litigation*, 236 F. Supp. 2d 1336 (S.D. Fla. 2002), the All Writs Acts was

designed for situations where the proposed settlement and release of claims in another judicial district would interfere with the MDL Court's disposition of those same claims.

In *Managed Care,* a multidistrict litigation proceeding in this district, United States District Judge Federico Moreno invoked the All Writs Act to halt settlement activities outside of that multidistrict proceeding relating to a case that properly belonged in the *Managed Care* MDL. Just as Judge Moreno did in *Managed Care*, this Court, acting on the authority granted under the All Writs Act, will enjoin BancorpSouth's efforts to settle a copycat case and thereby deprive this Court of its ability to adjudicate the long-standing class claims pending against it in MDL 2036.

*Managed Care* and this case share remarkably similar facts. Like BancorpSouth, in *Managed Care* CIGNA was simultaneously defending a case in the *Managed Care* MDL and a narrower state court class action. The Illinois state court litigation moved into federal court as a result of the maneuverings of CIGNA and the state court plaintiffs in an attempt to avoid the *Managed Care* MDL. Like the *Thomas* plaintiffs, the *Managed Care* plaintiffs revamped their pleadings; CIGNA removed the action to a federal court in Illinois based on the newly filed claims, and the parties immediately moved for preliminary approval of a class settlement. *See Managed Care*, 236 F. Supp. 2d at 1339.

Judge Moreno refused to condone the non-MDL settlement maneuvers of an entity that was already part of the *Managed Care* MDL. *Id.* at 1342. He noted the critical importance of respecting the statute that established the JPML for the purpose of consolidating similar cases and promoting judicial efficiency, as well as the importance of subjecting class settlements to rigorous review because of their far-reaching impact on numerous parties. *Id.* In enjoining CIGNA from moving forward to settle outside of the *Managed Care* MDL, Judge Moreno

emphasized the need to respect the JPML, which had vested him with authority over the centralized actions, and that allowing the settlement outside of the *Managed Care* MDL would directly undermine that authority. *Id.* at 1343. This Court agrees with Judge Moreno's well-reasoned opinion.

As a longstanding participant in MDL 2036, BancorpSouth and its counsel were required by S.D. Local Rule 3.8 to timely disclose the existence of *Lawson* and *Thomas* to this Court, the Plaintiff and to the PEC. BancorpSouth and its counsel did not disclose the existence of these competing, later-filed cases until *after* Judge Dawson granted preliminary settlement approval in *Thomas*.

This Court rejects BancorpSouth's argument that this Court's jurisdiction is protected because the *Thomas* settlement still permits Plaintiff Swift to pursue his *individual* claims in this action.[5] *Swift* was transferred to MDL 2036 for coordinated pretrial proceedings, including class certification and settlement. Although BancorpSouth would have this Court ignore its significance, the existence of a fully briefed class certification motion in *Swift* is procedurally important because the *Thomas* class has been certified for settlement purposes only.

The Court rejects BancorpSouth's position that *Managed Care* is inapplicable because this Court has yet to certify a class in *Swift*. While it is true that Judge Moreno had already certified a class in *Managed Care* when the attempted non-MDL settlement came to light, that distinguishing fact alone neither prevents this Court from applying the All Writs Act nor justifies a different result based on the facts now known to this Court. *See In re Bank of Amer. Wage and Hour Employ. Litig.*, 740 F. Supp. 2d 1207 (D. Kan. 2010) (granting injunction against non-

---

[5] This Court has its doubts about that as well, as eliminating the class component of this action would leave only Plaintiff Swift's individual state law claims, over which this Court may lack subject matter jurisdiction.

13

MDL settlement under All Writs Act); *In re America Online Spin-Off Accounts Litig.*, MDL Docket No. 04-1581, 2005 WL 5747463 (C.D. Cal. May 9, 2005).

To the extent that BancorpSouth's counsel believed the JPML's October 11, 2011 Order suspending Panel Rule 7.1(a) for MDL 2036 eliminated their obligation to file a tag-along notice, they were on notice that potential tag-along cases against other banks already defending actions in MDL 2036 had been the subject of Conditional Transfer Orders issued after October 11, 2011. Such orders contradict the argument advanced before Judge Dawson that the JMPL would *never* transfer *Thomas* to MDL 2036. And as noted above, the JMPL has now acted to conditionally transfer *Thomas* to this Court (**JPML DE # 671**) and modified the October 11, 2011 Order to require notice of any tag-alongs (**JPML DE # 677**).

Additionally, there is no doubt that had Defendant timely complied with Local Rule 3.8, the PEC and/or Plaintiff's counsel in *Swift* could have timely advised this Court and/or the JPML of the potential tag-along case involving BancorpSouth or sought to intervene in *Lawson* and/or *Thomas* for purposes of seeking a stay of those later-filed copycat actions.

On April 3 and 4, 2012 – after the Motion to Enjoin was filed, after this Court entered an Order setting a hearing for April 18, and after the PEC sent a tag-along notice to the JMPL – the *Thomas* parties disseminated the settlement notice to settlement class members by mail and email and published it in 16 newspapers. In this Court's view, BancorpSouth and the other parties in *Thomas* intentionally rushed to give notice of their proposed settlement instead of awaiting a ruling from this Court. Once the Motion to Enjoin was filed on March 29 and this Court issued its April 2 Order setting an April 18 hearing, BancorpSouth and the other parties in *Thomas* could have easily asked Judge Dawson to modify the deadlines for disseminating notice to the settlement class until after this Court ruled on the Motion to Enjoin and Motion to Stay.

BancorpSouth and the other parties in *Thomas* chose not to do so and, thus, acted at their own peril. Therefore, any costs previously incurred in disseminating class notice in *Thomas*, or to be incurred in the future in notifying the *Thomas* settlement class of events resulting from this Order, are the sole responsibility of the *Thomas* parties and do not dissuade this Court from enjoining BancorpSouth from proceeding with the proposed class action settlement in *Thomas*.

Finally, this Court agrees with Judge Moreno's conclusion in *Managed Care* that Plaintiff and the PEC are not required to satisfy the prerequisites of Rule 65 of the Federal Rules of Civil Procedure before this Court can issue an injunction under the All Writs Act. *See Managed Care*, 236 F. Supp. 2d at 1343–44; *see also In re Baldwin-United Corp.*, 770 F. 2d 328, 338–39 (2d Cir. 1985) (Rule 65 does not apply to injunctions issued under the All Writs Act). To the extent Rule 65 is deemed to apply, however, this Court finds that all prerequisites are satisfied (and, in the case of likelihood of success on the merits, inapplicable) based on the facts discussed herein. *Managed Care*, 236 F. Supp. 2d at 1343–45; *Bank of Amer.*, 740 F. Supp. 2d at 1217–18.

### 2. Federal Courts' Power to Enjoin Under the "First-to-File Rule"

In addition to the All Writs Act, this Court concludes that application of the "first-to-file rule" authorizes it to enjoin *Thomas*. It is undisputed that *Swift* is the first-filed overdraft fee class action against BancorpSouth. The "first-to-file rule" developed as a doctrine of federal comity. Competing lawsuits involving the same parties and the same issues in separate jurisdictions waste judicial resources and can lead to conflicting results. *See Thomas Betts Corp. v. Hayes*, 222 F. Supp. 2d 994, 996 (W.D. Tenn. 2002) ("The first filed rule is a doctrine of federal comity that promotes judicial efficiency"). Under the "first-to-file rule," the entire action should generally be decided by the court in which the action was first filed. *Smith v. S.E.C.*, 129

F.3d 256, 361 (6th Cir. 1997). The Eleventh Circuit follows the "first-to-file rule." *See Manuel v. Eonvergys Corp.*, 430 F.3d 1132, 1135–36 (11th Cir. 2005) ("[W]here two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed under the first-filed rule.").

This Court's designated role in supervising all of these actions heightens the importance of enforcing the "first-to-file rule" where, as here, a copycat case has been filed against a bank that is already defending a case centralized within MDL 2036.

"'[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated.'" *Cadle v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999) (citation omitted). Courts applying this rule agree "'that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.'" *Id.* Thus, once the court determines that the two suits likely involve substantial overlap, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed. *Cadle*, 174 F.3d at 606; *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). Rather, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Cadle*, 174 F.3d at 606.

Given that the *Lawson/Thomas* parties converted their case from a state class action to a putative national class action in another federal court – and that they explicitly intended to subsume *Swift* and settle outside of MDL 2036 – the "first-to-file rule" strongly supports an

16

injunction staying *Thomas*. It is particularly appropriate for this Court to intervene to stay *Thomas* on account of the conduct of the *Thomas* parties.

This Court concludes that it cannot sit idly by and allow *Thomas* to proceed. Allowing *Thomas* to move forward would create a dangerous precedent. It would effectively encourage other defendants in MDL 2036 to follow the *Thomas* parties' lead, by cooperating with counsel who file substantially similar cases outside of MDL 2036 against banks that are already defending cases in MDL 2036, with the intent of settling those cases outside MDL 2036 and thereby undermining the ongoing litigation against such bank(s) in MDL 2036. In the Court's view, the actions of the *Thomas* parties, in particular BancorpSouth which has long been subject to this Court's jurisdiction, exhibit a direct attempt to undermine this Court's authority granted by the JPML. Thus, an injunction shall also issue under the "first-to-file rule."

### III. CONCLUSION

Accordingly, after a careful review of the record and the arguments of counsel, and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED and DECREED** that:

   a. BancorpSouth's Motion to Stay (**DE # 2602**) is **DENIED**;

   b. Plaintiff Swift's Motion to Enjoin (**DE #2603**) is **GRANTED**;

   c. BancorpSouth, its counsel, and any parties acting in concert with them, are hereby enjoined, pursuant to this Court's authority under the All Writs Act, 28 U.S.C. §1651, and the "first-to-file rule," from engaging in any further proceedings in the later-filed *Thomas* action, including any further proceedings relating to the proposed settlement that has been preliminarily approved, without the express approval of this Court;

   d. Counsel for BancorpSouth is directed, within one (1) day following entry of this Order, to file in *Thomas* copies of this Order and the transcript of the April 18, 2012 hearing held

before this Court, and to simultaneously deliver copies of this Order and the hearing transcript to the Honorable Robert T. Dawson, United States District Judge, Western District of Arkansas;

e. The PEC is directed, within one (1) day following entry of this Order, to file with the Clerk of the JPML copies of this Order and the transcript of the April 18, 2012 hearing held before this Court; and

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 30th day of April, 2012.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: All Counsel of Record