**United States District Court**
**Southern District of Florida**
**Miami Division**
**Case No. 1:09-MD-02036-JLK**

|  |  |
|---|---|
| **IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION** | ) ) ) ) |
| MDL No. 2036 | ) ) ) |
| **THIS DOCUMENT RELATES TO: SECOND TRANCHE ACTION** | ) ) ) ) |
| *Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank* S.D. Fla. Case No.: 1-10-CV-20478-JLK | ) ) ) ) |

**M&T BANK'S MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DEFERRING RULING ON M&T BANK'S SECOND RENEWED MOTION TO COMPEL ARBITRATION AND GRANTING TIME TO CONDUCT ARBITRATION-RELATED DISCOVERY, AND INCORPORATED MEMORANDUM OF LAW**

Defendant Manufacturers and Traders Trust Company a/k/a M&T Bank respectfully asks the Court to reconsider its April 26, 2012 Order (DE # 2661), entered after remand of this case from the Eleventh Circuit. The Court's Order deferred its ruling on M&T Bank's Second Renewed Motion to Compel Arbitration and granted time to conduct what Plaintiff Maxine Given claims is "limited" arbitration-related discovery.[1]

The Court should reconsider its Order and deny Given's Motion to Defer for three reasons:

First, the Court made its decision before M&T Bank had a chance to respond.

Second, the procedural posture of this case differs significantly from that of other cases in which the Court has permitted limited arbitration-related discovery, because the scope of the Eleventh Circuit's remand is very narrow. Only one issue is now before the Court: whether

---

[1] Given filed her Motion to Defer on April 25, 2012 (DE #2655), and the Court granted it the next day.

Given's arbitration agreement is unconscionable in light of AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011). To determine this issue, the discovery Given seeks is inappropriate and unnecessary.

Finally, contrary to Given's representation in her Motion to Defer, much of what she seeks goes far beyond any of the limited arbitration-related discovery that the Court has previously allowed.

## ARGUMENT AND AUTHORITY

### 1. M&T Bank deserves at least one bite at the apple, to be heard, and to have its input considered on why the posture and narrow remand of this case make discovery (and the overbroad scope of discovery urged by Given) inappropriate.

M&T Bank does not seek to reargue a point already raised and lost; nor does it seek to argue a new point that it could have raised but failed to do. Cf. Z.K. Marine, Inc. v. M/V Archigetis, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) ("A motion for reconsideration should not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made …."). M&T Bank also does not ask for "two bites at the apple." Am. Home Assurance Co. v. Glenn Estess & Assocs., 763 F.2d 1237, 1239 (11th Cir. 1985). Rather, M&T Bank asks only to be allowed a first bite and to be heard.[2]

---

[2] Before ruling on similar motions to defer, the Court has allowed other defendants the chance to respond – at least on paper, and sometimes by oral argument as well:

- "Careful consideration of the briefs and thorough oral argument of the parties …." (DE # 1576, at 2.)
- "Defendant filed its Response in opposition …, to which Plaintiff Replied. Careful consideration of the briefs …." (DE # 1673, at 1.)
- "Defendant filed its response in opposition …, to which Plaintiff replied …. Upon careful consideration of the parties' briefs …." (DE # 1950, at 1.)
- "Defendants responded in opposition …. Upon careful consideration of the parties' briefs …." (DE # 1985, at 1.)

Because the Court's prompt decision gave M&T Bank no opportunity to be heard, the Court should exercise its power and give M&T Bank the opportunity to be heard now. See, e.g., Shepaug Realty, LLC v. Ingrassia, No. 3:05CV628 (JBA), 2006 WL 1273771, at *1 (D. Conn. May 5, 2006) ("Defendant seeks reconsideration of the Court's order granting plaintiff's Motion

*Footnote continued on next page.*

## 2. Given's proposed discovery either exceeds the scope of the Eleventh Circuit's remand or is irrelevant; no discovery is needed to decide M&T Bank's Second Renewed Motion to Compel Arbitration.

On reconsideration, Given's Motion to Defer should be denied for two principal reasons. First, much of the discovery that Given seeks plainly exceeds the very narrow scope of the Eleventh Circuit's remand in this case: whether the arbitration agreement in Given's April 2007 General Deposit Account Agreement ("Account Agreement") with M&T Bank is unconscionable in light of Concepcion. See In re Checking Account Overdraft Litig. (Given v. M&T Bank Corp.), ___ F.3d ___, 2012 WL 934054, at *4 (11th Cir. Mar. 21, 2012) (M&T Bank II). Second, the remainder of what she seeks, even if viewed as ostensibly within the scope of the remand, is irrelevant. In light of Concepcion, in light of well-settled Eleventh Circuit law, and in light of well-settled Maryland law, whether Given's arbitration agreement is unconscionable can be determined as a matter of law from the face of the agreement. As a matter of law, Given's agreement is not unconscionable, and nothing that her proposed discovery might disclose could possibly change that legal conclusion.

### A. Given's proposed "limited" arbitration-related discovery is not limited enough; much of what Given seeks is unlike anything this Court has ruled discoverable in other cases, and much has no bearing on the single issue now before the Court – whether Given's arbitration agreement is unconscionable.

The scope of the Eleventh Circuit's remand in this case is narrow. This Court is "to reconsider its unconscionability determination in light of Concepcion." M&T Bank II, 2012 WL 934054, at *4. Much of Given's proposed discovery, however, invites the Court to ignore the narrow scope of the Eleventh Circuit's remand. See, e.g., United States v. Tamayo, 80 F.3d 1514, 1520 (11th Cir. 1996) ("Our settled circuit law obligates a district court to follow our mandates … and not to assert jurisdiction over matters outside the scope of a limited mandate, which constitutes an abuse of discretion…. Additionally, we have held that an appellate vacation of judgment for consideration in light of a particular decision is much more limited than a general vacation by an appellate court ….").

---

for Leave to Amend because … plaintiff's motion was granted before defendant had the opportunity to oppose. For this reason alone, reconsideration must be granted.").

In passing fashion, Given suggests that the discovery she seeks is "very similar to the limited arbitration-related discovery permitted under this Court's orders in related cases." (DE # 2655, at 4.) For two reasons, her suggestion is misleading. First, she has included several requests that are utterly unlike anything this Court has ever permitted. Second, she glosses over the fact that the specific posture of this case – the Eleventh Circuit's limited remand – renders many of her requests, even if similar to requests this Court has permitted in other cases, unwarranted and inappropriate here.

**(1)** *Under the law of the case, M&T Bank did not waive its right to have an arbitrator decide whether Given's claims are within the scope of the arbitration agreement.*

Given seeks to now issue discovery about the drafting, interpretation, and historical application of the so-called "non-monetary relief clause" – the very clause whose application in *this* case the Eleventh Circuit just ruled "is a decision for an arbitrator" alone. M&T Bank II, 2012 WL 934054, at *4. In particular, Given wants M&T Bank to engage in substantial discovery on:

- "the date the non-monetary relief clause was first included in [M&T Bank's] deposit account agreement" (DE # 2655-1, Interrog. No. 12);

- "all Documents referring or relating to … the 'non-monetary relief clause' … including … [a]ll Documents relating to the adoption and inclusion of such clause in the arbitration agreement; … [a]ll … Documents discussing the pros and cons of such clause at the time it was being considered, and at any time thereafter" (DE # 2655-2, Doc. Req. No. 27(a), (b));

- "[M&T Bank's] adoption of … the 'non-monetary relief clause' …, the reasons it was adopted, [and] any changes to it since it was adopted" (DE # 2655-4, Notice of Fed. R. Civ. P. 30(b)(6) Dep., Topic No. 12);

- "each occasion in which [M&T Bank] attempted to, or did, invoke the non-monetary relief clause … to avoid arbitration of a Consumer dispute" (DE # 2655-1, Interrog. No. 10);

- "each occasion in which a Consumer attempted to, or did, invoke the non-monetary relief clause to avoid arbitration of a Consumer dispute" (DE # 2655-1, Interrog. No. 11);

- "the number of claims … brought by [M&T Bank] against a Consumer in which [M&T Bank] sought non-monetary relief, since the date the non-monetary relief clause was first included in … [the] agreement" (DE # 2655-1, Interrog. No. 13);

4

- "the number of claims … brought by a Consumer against [M&T Bank] in which the Consumer sought non-monetary relief, since the date the non-monetary relief clause was first included in … [the] agreement" (DE # 2655-1, Interrog. No. 14);

- "[a]ll Documents showing how [M&T] Bank interpreted the non-monetary relief clause, whether internally or to third parties" (DE # 2655-2, Doc. Req. No. 27(c));

- "[a]ll Documents regarding occasions where a Consumer has sought non-monetary relief through arbitration and [M&T] Bank either considered invoking or did invoke the non-monetary relief clause to avoid arbitration" (DE # 2655-2, Doc. Req. No. 27(d));

- "[a]ll Documents regarding occasions where [M&T] Bank has sought non-monetary relief from a Consumer in court or in arbitration since … adoption of the non-monetary relief clause" (DE # 2655-2, Doc. Req. No. 27(e));

- "[a]ll … documents regarding the effectiveness of the non-monetary relief clause in achieving its goals" (DE # 2655-2, Doc. Req. No. 27(f)); and

- "[the] effectiveness [of the non-monetary relief clause] in achieving its goals, and [M&T Bank's] implementation of that clause in connection with disputes with Consumers, including the number of times it has been invoked by [M&T Bank] and by Consumers to avoid arbitration of disputes" (DE # 2655-4, Notice of Fed. R. Civ. P. 30(b)(6) Dep., Topic No. 12).

None of these proposed discovery requests remotely resembles "the limited arbitration-related discovery permitted under this Court's orders in related cases." (Contra DE # 2655, at 4.) More importantly, none has any bearing on the single question that this Court must now reconsider – whether Given's arbitration agreement is unconscionable. Given has never argued that the so-called "non-monetary relief clause" is itself unconscionable, nor has she ever argued that it renders the entire arbitration agreement unconscionable. Nor can she.

To the extent Given intends to use the requested information to argue that M&T Bank has supposedly waived its right to have an arbitrator decide any issue as to whether her claims are within the scope of the arbitration agreement, the Eleventh Circuit has unequivocally foreclosed such an attempt. The Eleventh Circuit held – and Given has already conceded – that "M&T Bank did *not* waive that argument." M&T Bank II, 2012 WL 934054, at *4 n.1 (emphasis added). Given must seek this discovery in the arbitral forum, not here.

5

> **(2) *Information about other documents, other agreements, and other cases in which other parties argued that M&T Bank had waived its right to arbitrate has no bearing on the sole issue now before the Court.***

Given admits that the Account Agreement she has attached and incorporated into her Complaint is the one and only agreement that governs her relationship with M&T Bank.  (See Compl. ¶¶ 16, 24, 25, 36, 39-41.)  She does not allege that there is any other; nor does she allege that M&T Bank has changed any term in the arbitration agreement since she first received her Account Agreement.  It therefore follows that "the only arbitration agreement at issue is the [one in the Account Agreement attached to Given's Complaint], and documents relevant to determining the [unconscionability] of that arbitration agreement … are already accessible by the parties and the Court."  Meyer v. T-Mobile USA, Inc., ___ F. Supp. 2d ___, No. C 10-05858 CRB, 2011 WL 4434810, at *10 (N.D. Cal. Sept. 23, 2011).

Nevertheless, Given seeks to discover information about *other* agreements between M&T Bank and its customers; changes in *other* agreements between M&T Bank and herself; *other* documents provided to her by M&T Bank; the results of arbitrations conducted in arbitral forums *other* than the forum stipulated in *her* arbitration agreement – the American Arbitration Association ("AAA"); settlement of *another* case involving *other* parties; and *other* cases in which *other* parties argued that M&T Bank had waived its right to arbitrate.  In particular, she wants M&T Bank to disclose:

- "[f]or each year from 2003 to the present, … all versions of [M&T Bank's] account agreement(s) with [its] customers, including any riders, addendums or additions" (DE # 2655-1, Interrog. No. 8);
- "[f]or each year from 2003 to the present, … all documents, including but not limited to notices and mailers, [that] were provided to [M&T Bank's] customers regarding any changes to their account agreement(s)" (DE # 2655-1, Interrog. No. 9);
- "[a]ll Documents … provided to Plaintiff at the time she signed up for an account with the Bank" (DE # 2655-2, Doc. Req. No. 22);
- "[a]ll account statements or other forms of written communications between [M&T Bank] and the named Plaintiff in this matter" (DE # 2655-2, Doc. Req. No. 23);
- "[a]ll Documents that … constituted [M&T Bank's] customer agreements or account agreements since 2003" (DE # 2655-2, Doc. Req. No. 24);

- "[a]ll Documents [that] were provided to Plaintiff regarding any changes in terms to [M&T Bank's] customer agreements, whether in the form o[f] mailers, notices, or otherwise, since 2003" (DE # 2655-2, Doc. Req. No. 25);

- "[a]ll Documents that [M&T Bank] ha[s] either sent to or received from the National Arbitration Forum ('NAF') that discuss the number of or result(s) of arbitrations involving Consumer Accounts, the number of overdraft-fee-related arbitrations conducted by NAF, or the circumstances under which [M&T Bank] will or will not arbitrate a dispute with a Consumer" (DE # 2655-2, Doc. Req. No. 15);

- "[a]ll Documents that [M&T Bank] ha[s] either sent to or received from Judicial Arbitration and Mediation Services, Inc. ('JAMS') that discuss the number of or result(s) of arbitrations involving Consumer Accounts, the number of overdraft-fee-related arbitrations conducted by JAMS, or the circumstances under which [M&T Bank] will or will not arbitrate a dispute with a Consumer" (DE # 2655-2, Doc. Req. No. 16);

- "[M&T Bank's] communications with … NAF[] and JAMS regarding arbitration of non-business customer disputes" (DE # 2655-4, Notice of Fed. R. Civ. P. 30(b)(6) Dep., Topic No. 10);

- "[M&T Bank's] payments to … NAF[] and JAMS" (DE # 2655-4, Notice of Fed. R. Civ. P. 30(b)(6) Dep., Topic No. 10);

- "[a]ll Documents and Communications that discuss the settlement agreement(s) resulting from the litigation styled *Ross v. Bank of America, N.A., et al.*" (DE # 2655-2, Doc. Req. No. 17; see also DE # 2655-3, Req. for Admission No. 16); and

- "by case name, case number, judicial or administrative body, and proceeding, each and every instance where someone, including Consumers, argued or asserted that [M&T Bank] had waived the arbitration clause pertaining to a Consumer Account, and the disposition and resolution of that issue" (DE # 2655-1, Interrog. No. 7).

Most of these proposed discovery requests, like the "non-monetary relief clause"-related requests, differ significantly from "the limited arbitration-related discovery permitted under this Court's orders in related cases."  (Contra DE # 2655, at 4.)  This Court has sometimes allowed discovery related to "(1) the availability of lawyers to litigate these low value claims individually due to the complex nature and potentially small recovery; (2) the number of overdraft-related complaints; (3) the number and result of arbitrations; [and] (4) waiver and futility of filing motions to compel." (DE # 1950, at 1-2; see also, e.g., DE # 1673, at 2; DE # 1576, at 2.)

But information about other documents, other agreements, and settlement in an unrelated case has nothing to do with any of these four areas of limited inquiry – and nothing to do with

7

*Given's* arbitration agreement.  See, e.g., Meyer, 2011 WL 4434810, at *10 (denying similar discovery before ruling on – and granting – defendant's motion to compel arbitration because "[m]ost of Plaintiff's discovery requests do not relate to the validity [or unconscionability] of *Plaintiff's* arbitration agreement with T-Mobile," but "[i]nstead concern all agreements, disputes, arbitrations and lawsuits relating to T-Mobile customers in California *other than Plaintiff* for the entire seven-year 'relevant time period'") (emphasis in original).

Although this Court has sometimes allowed discovery related to the number and result of arbitrations, *Given's* arbitration agreement stipulates to arbitration before the AAA; it does not permit arbitration before NAF or JAMS.  Thus, even if information about the number and result of AAA arbitrations were relevant here (and it is not, see infra Part 2.B), information about the number and result of NAF and JAMS arbitrations is irrelevant.  See, e.g., Clemins v. GE Money Bank, No. 11-CV-00210, 2011 WL 6148676, at *2 (E.D. Wis. Dec. 8, 2011) (denying unconscionability-related discovery about NAF and JAMS arbitrations before ruling on motion to compel arbitration, and "limiting discovery to arbitrations in front of the AAA because it is the only possible arbitral forum for plaintiffs' claims").

Although this Court has also allowed discovery, at least once, related to "unilateral changes implemented" to a financial institution's *arbitration* agreement (DE # 1673, at 2), Given seeks far more.  She wants to discover information about changes to the entire Account Agreement between M&T Bank and herself – not just to the arbitration agreement – and to the entire account agreements between M&T Bank and other customers.  Such information, however, has absolutely no bearing on the sole issue that the Court must now decide:  whether the *arbitration* agreement in *Given's* Account Agreement is unconscionable in light of Concepcion.

### (3) *The issue of contract formation, like the issue of waiver of the right to arbitrate, is settled and done.*

To the extent Given intends to use any of the requested information to argue that no agreement to arbitrate was ever formed between M&T Bank and herself, she is estopped and otherwise precluded from doing so.  (See, e.g., DE # 2655-1, Interrog. Nos. 8, 9; DE # 2655-2, Doc. Req. Nos. 22-25.)  Given has *admitted* that the Account Agreement governs her relationship with M&T Bank; she has sued for a breach of the implied covenant of good faith

8

and fair dealing under it. (Compl. ¶¶ 76-82.) See, e.g., Rampersad v. Primeco Pers. Commc'ns, L.P., No. 01-6640-CIV, 2001 WL 34872572, at *1 (S.D. Fla. Oct. 16, 2001) (Moreno, J.) ("[A] plaintiff] cannot claim the contract was not formed to avoid arbitration and concurrently sue for breach of that contract."). Because Given's Account Agreement includes an unambiguous agreement to arbitrate, there can be no doubt but that an arbitration agreement exists. See, e.g., Richardson v. V.I. Port Auth., Civil Action No. 2009-136, 2010 WL 1641154, at *10 (D.V.I. Apr. 21, 2010) (denying request for discovery because there was "little doubt as to the validity of the parties' contractual relationship. Both Plaintiff and Defendant have produced copies of the signed … Agreement, which contains an unambiguous provision to arbitrate."). Indeed, the Eleventh Circuit has already interpreted and enforced it. M&T Bank II, 2012 WL 934054, at *2-4.

Moreover, Given never argued, in opposing M&T Bank's first motion to compel arbitration, that no arbitration agreement existed. She also never argued, in opposing M&T Bank's renewed motion to compel, that no agreement existed. Given is not entitled to *three* bites at the enforceability apple presented in M&T Bank's initial motion to compel. See, e.g., Skretvedt v. E.I. DuPont de Nemours, 372 F.3d 193, 203 (3d Cir. 2004) ("We have consistently rejected such attempts to litigate on remand issues that were not raised in a party's prior appeal and that were not explicitly or implicitly remanded for further proceedings…. Failure to follow this rule would lead to the bizarre result … that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost.") (citations and internal quotation marks omitted).

The issue of the formation and existence of the arbitration agreement is therefore off the table. It is also irrelevant to the determination of unconscionability now before the Court. So too, at *this* point in *this* case, evidence allegedly related to the issue of any waiver by M&T Bank of its right to arbitrate is irrelevant. See supra Part 2.A(1); M&T Bank II, 2012 WL 934054, at *4 n.1. Just as the court denied plaintiff's request in Meyer for similarly broad and irrelevant discovery before ruling on – and granting – defendant's motion to compel arbitration, the Court should deny Given's request here. See Meyer, 2011 WL 4434810, at *9-10.

9

### B. In *this* case, no discovery is needed to determine whether the arbitration agreement is unconscionable.

Under the Eleventh Circuit's ruling and remand, there is now only one issue before the Court: whether Given's arbitration agreement is unconscionable in light of Concepcion. See M&T Bank II, 2012 WL 934054, at *4 ("If the district court concludes that the arbitration agreement is not unconscionable, an arbitrator must decide …."). As this Court has already recognized, Maryland law "require[s] findings of both procedural and substantive unconscionability" to render an agreement unenforceable. In re Checking Account Overdraft Litig., 813 F. Supp. 2d 1365, 1373 (S.D. Fla. 2011) ("Second Tranche Order").[3] Although Given alleges that the arbitration agreement is an adhesion contract (Compl. ¶ 41), it is well-settled that an adhesion contract is not per se unconscionable under Maryland law. Walther v. Sovereign Bank, 872 A.2d 735, 746 (Md. 2005) ("The fact that a contract is one of adhesion does not mean that either it or any of its terms are invalid or unenforceable.") (citation and internal quotation marks omitted); see also Concepcion, 131 S. Ct. at 1750 ("[T]he times in which consumer contracts were anything other than adhesive are long past."). Unless Given can demonstrate that her arbitration agreement is substantively unconscionable, it must be enforced.

She has tendered only two provisions as substantively unconscionable: (1) the class action waiver; and (2) the prevailing-party attorneys' fees provision. The premise of her argument is that these provisions discourage consumers from pursuing small-dollar claims and thus effectively exculpate M&T Bank from liability for such claims.

The rest of Given's proposed discovery appears aimed to elicit information about the availability of lawyers to litigate such low-value claims individually, the number of overdraft-fee-related complaints, the number and result of past arbitrations, and the costs and attorneys' fees paid in past arbitrations by customers and M&T Bank. (See, e.g., DE # 2655-1, Interrog. Nos. 1-6; DE # 2655-2, Doc. Req. Nos. 1-11, 13-16; DE # 2655-3, Req. for Admission Nos. 1-9,

---

[3] Parts of the Second Tranche Order were vacated on other grounds by three separate Eleventh Circuit decisions: (1) M&T Bank II; (2) In re Checking Account Overdraft Litig. (Hough v. Regions Financial Corp.), 672 F.3d 1224 (11th Cir. Mar. 5, 2012), and reh'g denied (Apr. 30, 2012); and (3) In re Checking Account Overdraft Litig. (Buffington v. SunTrust Banks, Inc.), No. 11-14316, 2012 WL 660974 (11th Cir. Mar. 1, 2012), and reh'g denied (Apr. 30, 2012).

10

13-15; DE # 2655-4, Notice of Fed. R. Civ. P. 30(b)(6) Dep., Topic Nos. 9-11.)  But in light of Concepcion, in light of well-settled Eleventh Circuit law, and in light of well-settled Maryland law, none of this information is needed to resolve whether either of the provisions she has pointed to is substantively unconscionable.  In *this* case, *all* of Given's proposed discovery is irrelevant.

> **(1)** *Post-Concepcion, discovery is not the norm prior to a ruling on a motion to compel arbitration, and there is no need of any discovery here.*

Given claims that "[d]iscovery relating to arbitration issues is routinely granted." (DE # 2655 at 3.)  But the eight cases she cites in putative support all antedate Concepcion. (Id. at 3 n.1.)

She then says that "post-Concepcion a growing number of courts have found it appropriate to permit limited arbitration-specific discovery prior to ruling on a motion to compel arbitration." (Id. at 3.)  But a growing number of courts, post-Concepcion, have instead denied just such discovery:

- "Because Plaintiff's proposed discovery requests are either overly broad or irrelevant to disposition of the pending Motion, Plaintiff is not entitled to discovery." Meyer, 2011 WL 4434810, at *10.

- "Giles requests that the court stay its determination on GE Money's motion [to compel arbitration] so that it can propound discovery regarding whether the arbitration clause at issue is unconscionable.  The court is unimpressed by this argument.  Whether the arbitration agreement is enforceable against Giles, is a straightforward matter of contract law….  The court can glean from the face of the document whether it is unconscionable." Giles v. GE Money Bank, No. 2:11-CV-434 JCM (CWH), 2011 WL 4501099, at *2 (D. Nev. Sept. 27, 2011) (refusing to allow discovery).

- "[B]ecause Plaintiffs" – like Given here – "must prove both procedural and substantive unconscionability and because substantive unconscionability can be determined from the face of the Agreements, Plaintiffs' … motion would be rendered moot if [they] failed to establish that the Agreements were substantively unconscionable." Valle v. Lowe's HIW, Inc., No. 11-1489 SC, 2011 WL 3667441, at *7 (N.D. Cal. Aug. 22, 2011) (explaining its earlier denial of plaintiffs' motion to allow discovery related to procedural unconscionability before ruling on motion to compel arbitration).

Given also notes that the Eleventh Circuit concluded one of its recent vacatur orders remanding a case for "reconsider[ation] … in light of … Concepcion" with the admonition that "discovery is to be limited to issues bearing significantly on the arbitrability of this dispute until

11

the question of arbitrability has been decided." Larsen v. J.P. Morgan Chase Bank, N.A., 438 F. App'x 894, 895 (11th Cir. 2011). From this she extrapolates a blanket Eleventh Circuit approval of all such discovery. (See DE # 2655, at 4.) But in Larsen, the primary issue was an alleged waiver of arbitration by failure to request it, and that issue was almost certainly the focus of the Court's discovery comment. Given reads Larsen's limited comment far too broadly.

Indeed, significant by its absence from *both* of the Eleventh Circuit's vacatur-and-remand orders in *this* case is any Larsen-like hint that even limited discovery should be permitted before the Court rules on M&T Bank's Second Renewed Motion to Compel Arbitration. See In re Checking Account Overdraft Litig. (Given v. M&T Bank Corp.), 425 F. App'x 857, 857 (11th Cir. 2011) (M&T Bank I) ("The district court's order denying the motion to compel arbitration is VACATED, and this case is remanded … for reconsideration in light of the Supreme Court's [Concepcion] opinion."); M&T Bank II, 2012 WL 934054, at *4 ("We still believe it is prudent for the district court to reconsider its unconscionability decision in light of Concepcion …. [W]e vacate the district court's denial of M&T Bank's renewed motion to compel arbitration and remand for proceedings consistent with this opinion."). Neither M&T Bank I nor M&T Bank II contemplates discovery, and neither indicates a need of it here.

Moreover, when the Court first considered and decided the issue of unconscionability in this case, pre-Concepcion, it did so without any discovery. (See DE # 447.) Post-Concepcion, it is even clearer that the substantive unconscionability of the two provisions Given complains about can be determined without discovery. Under Concepcion, its progeny in the Eleventh Circuit, and Maryland law, no further information is required for the Court to reconsider and decide the issue of unconscionability now.

**(2)** *Discovery as to the unconscionability of the class-action waiver is futile.*

Concepcion nails the coffin on Given's first substantive-unconscionability argument. Even if the class-action waiver in her arbitration agreement were substantively unconscionable under Maryland law (and it is not, see, e.g., Walther, 872 A.2d at 750-51), it must be enforced under federal law. Concepcion, 131 S. Ct. at 1748 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."); see also, e.g., Cruz v. Cingular Wireless, LLC, 648 F.3d 1205, 1212 (11th Cir. 2011) ("[T]he Concepcion Court specifically rejected [the] public policy

12

argument" that an arbitration agreement can be invalidated if a class-action waiver provision effectively allows "many potential claims [to] go unprosecuted …."). As the Eleventh Circuit said in Cruz, any evidence that Given might uncover in her proposed discovery would "go[] only to substantiating the very public policy arguments that were expressly rejected by the Supreme Court in Concepcion – namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted." Cruz, 648 F.3d at 1214.

As this Court said on this topic in its Second Tranche Order: "Concepcion has changed everything, in that class action waivers have historically been a major factor in the unconscionability analysis under state law, and now, they *can no longer be considered*." Second Tranche Order, 813 F. Supp. 2d at 1373 (emphasis added). Given should not be allowed discovery to prove an argument she is bound to lose as a matter of law.

### (3) *Discovery as to the unconscionability of the prevailing-party fee-shifting provision is foreclosed by Musnick.*

Given is also bound to lose her second substantive-unconscionability argument. Maryland courts routinely enforce prevailing-party attorneys' fees provisions in contracts generally. See, e.g., Henriquez v. Henriquez, 992 A.2d 446, 451 (Md. 2010) ("Fee shifting … may be accomplished by an express agreement …."); Wells Fargo Bank, N.A. v. Diamond Point Plaza Ltd. P'ship, 971 A.2d 360, 368 (Md. Ct. Spec. App.) ("In general, contract provisions providing for awards of attorney's fees to the prevailing party in litigation are valid and enforceable in Maryland."), cert. denied, 979 A.2d 707 (Md. 2009). And the Maryland legislature, in the Uniform Arbitration Act, has expressly acknowledged the enforceability of such provisions in arbitration agreements specifically: "*Unless the arbitration agreement provides otherwise*, the [arbitration] award may not include legal fees."[4] Md. Code Ann., Cts. & Jud. Proc. § 3-221(b) (1974, 2006 Repl. Vol.) (emphasis added). Moreover, even if fee-shifting provisions in arbitration agreements were somehow unconscionable under Maryland law (again, not the case), federal law would preempt that law and enforce them. See, e.g., Concepcion, 131

---

[4] The Maryland high court has called the state's Uniform Arbitration Act "the State analogue … to the Federal Arbitration Act" and noted that "[t]he same policy favoring enforcement of arbitration agreements is present in both our own and the federal acts." Walther, 872 A.2d at 742 (citations and internal quotation marks omitted).

13

S. Ct. at 1745 ("[C]ourts must place arbitration agreements on an equal footing with other contracts.").

Further dooming Given's proposed discovery on historical costs and attorneys' fees to irrelevance is the fact that no matter how much data she might uncover, she cannot prove whether *she* will actually pay *any* costs or fees in *this* case. Nor can she prove whether any other M&T Bank customers will, in the future, pay any costs or fees in their own hypothetical cases. The prevailing-party provision is even-handed; it applies to each party equally. Each bears the risk, *if* unsuccessful, of paying the other's costs and fees, and each enjoys the opportunity, *if* successful, of recouping all costs and fees from the other.[5] Any contention that Given or other customers of M&T Bank will incur prohibitive expenses in vindicating their contractual or common-law rights is therefore fatally speculative. The possibility is too iffy.

As the Eleventh Circuit has held, no fact-finding is required – and none is warranted – to decide whether the contingent possibility of paying the other party's costs and attorneys' fees renders a "loser pays" provision unconscionable in an arbitration agreement. Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1260-62 (11th Cir. 2003). Discovery is irrelevant, the Eleventh Circuit explained, because

> *there is no record that could be made at this point* [i.e., before arbitration]…. Whether [the claimant] will, in fact, incur attorneys' fees in [a given] matter depends entirely on whether he prevails in arbitration. If he does, he will incur no fees at all under the agreement's "loser pays" provision. In this event, obviously, he will not have been deprived of any statutory [or other] right or remedy by the mandatory arbitration. Should he not prevail, he may incur liability for costs and fees. If he believes that liability is excessive or that it deprives him of his … remedy, he may seek judicial review…. At that point, the district court may make an informed judgment on whether the Agreement deprived him of a statutory [or other] remedy by conditioning the exercise of his … right on the payment of excessive costs.

---

[5] Though Given might argue that another provision in her Account Agreement – outside the arbitration agreement itself – affords M&T Bank the ability to recover its legal fees from her regardless whether it prevails, any such argument must fail. The *specific* attorneys' fees provision in the arbitration agreement trumps. Under well-settled Maryland law, "'[w]here two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it.'" Heist v. E. Sav. Bank, FSB, 884 A.2d 1224, 1228 (Md. Ct. Spec. App. 2005) (alteration in original) (quoting Fed. Ins. Co. v. Allstate Ins. Co., 341 A.2d 399, 407 (Md. 1975)).

14

> … A court compelling arbitration should decide only such issues as are essential to defining the nature of the forum in which a dispute will be decided. If the arbitrator awards attorney's fees to [the respondent company, the claimant] may challenge this award in federal court…. Once the arbitrator has reached the issues of costs and fees, those items will no longer be speculative, and any issue presented thereby will be ripe for decision.

Id. at 1261-62 (emphasis added) (citations and internal quotation marks omitted). Musnick quashes Given's request for discovery to buttress her second unconscionability argument. No fact-finding will avail her.[6]

## CONCLUSION

For the foregoing reasons, M&T Bank asks the Court to reconsider its Order deferring ruling on M&T Bank's Second Renewed Motion to Compel Arbitration and granting time to conduct arbitration-related discovery, and, on reconsideration, to deny Given's Motion to Defer. A proposed order is attached.

## CERTIFICATE OF GOOD-FAITH CONFERENCE

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that I conferred with Given's counsel in a good-faith effort to resolve the issues set forth in this motion, but have been unable to resolve those issues. Given does not consent to the relief sought herein.

May 3, 2012

Respectfully submitted,

/s/ James A. Dunbar
James A. Dunbar (admitted *pro hac vice*)
Matthew R. Alsip (admitted *pro hac vice*)
Venable LLP
210 West Pennsylvania Avenue, Suite 500
Towson, Maryland  21204
410-494-6200 (telephone)
410-821-0147 (facsimile)
jadunbar@venable.com
mralsip@venable.com

---

[6] If the Court nevertheless allows Given some discovery, M&T Bank reserves the right to assert all applicable objections to Given's discovery requests, including the objections asserted in this motion.

15

>John T. Prisbe (admitted *pro hac vice*)
>Venable LLP
>750 East Pratt Street, Suite 900
>Baltimore, Maryland  21202
>410-244-7400 (telephone)
>410-244-7742 (facsimile)
>jtprisbe@venable.com
>
>*Counsel for Manufacturers and Traders Trust Company a/k/a M&T Bank*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3d day of May 2012, I filed a copy of M&T Bank's foregoing Motion for Reconsideration of the Court's Order Deferring Ruling on M&T Bank's Second Renewed Motion to Compel Arbitration and Granting Time to Conduct Arbitration-Related Discovery, and Incorporated Memorandum of Law, using the Court's CM/ECF system.

>      */s/ John T. Prisbe*
>John T. Prisbe