UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Shane Swift v. BancorpSouth Bank*
N.D. Fla. Case No. 1:10-cv-00090-SPM
S.D. Fla. Case No. 1:10-cv-23872-JLK

## ORDER GRANTING CLASS CERTIFICATION

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Class Certification and Incorporated Memorandum of Law (DE #2271) (the "Motion"). The Court has carefully considered the Motion, response, reply, and the documents attached to them, as well as Plaintiff's voluminous evidentiary submission.[1] Upon careful consideration of the record, and for the reasons explained more fully below, the Court grants Plaintiff's Motion.

### I.      Background

Plaintiff alleges that, through the use of specially designed software programs, Defendant BancorpSouth Bank ("BancorpSouth") engaged in a systematic scheme to extract the greatest possible number of overdraft fees from Plaintiff and similarly situated BancorpSouth customers across the country. (*See* 2d Am. Compl.).[2] BancorpSouth allegedly collected hundreds of

---

[1] Plaintiff's evidentiary submission is attached as Appendices I–IV (DE #2272–2275). Defendant filed its Response (DE #2446) on February 3, 2012 and Plaintiff Replied on March 20, 2012 (DE #2576).

[2] References to "2d Am. Compl." are to Plaintiff's Second Amended Complaint (DE #994) filed December 6, 2010.

millions of dollars in excessive overdraft fees as a result of this systematic scheme, much of it, according to Plaintiff, from BancorpSouth's most vulnerable customers. (*Id.* at ¶¶ 3–4). To carry out this scheme, Plaintiff alleges that BancorpSouth manipulated debit card transactions by, among other things, employing a bookkeeping trick to re-sequence the transactions from highest-to-lowest dollar amount at the time of posting. (*Id.* at ¶ 29; *see also* Ex. 1, at 68:2–9; 82:18–87:16; Ex. 2, at p. 11).[3]  Plaintiff alleges that these account manipulations, which BancorpSouth deponents testified were applied in the same manner to all class members as a result of BancorpSouth's standardized computer software, (Ex. 1, at 178:21–179:1), caused funds in customer accounts to be depleted more rapidly, resulting in more overdrafts and, consequently, more overdraft fees. (2d Am. Compl. ¶ 30).  Plaintiff further alleges that, in many instances, overdraft fees were levied at times when, but for BancorpSouth's manipulation, there would have been sufficient funds in the customers' accounts. (*Id.*) Plaintiff alleges that BancorpSouth did not fairly disclose its manipulations, took active steps to keep them secret, and engaged in these manipulations despite recognizing that it harmed its own customers. (*Id.* at ¶ 36). BancorpSouth disputes that it has manipulated account transactions and that it has committed any violations of law. (*See* Answer).[4]

After over a year of discovery, Plaintiff Swift filed the instant Motion seeking class certification of his claims for breach of contract and the breach of the duty of good faith and fair dealing, unjust enrichment, unconscionability, and violation of the Arkansas Deceptive Trade Practice Act against Defendant BancorpSouth.[5]

---

[3] References to "Ex." are to exhibits in Appendix III (DE #2274) to Plaintiff's Motion.

[4] References to "Answer" are to Defendant's Answer and Affirmative Defenses (DE #1693), filed July 6, 2011.
[5]  Plaintiff does not seek to certify for class treatment his claim for conversion at this time.

## II.      Rule 23 Standard & Analysis

To be entitled to class certification, the party seeking certification must have standing, must meet each of the four requirements specified in Rule 23(a), as well as at least one subsection of Rule 23(b). *See Klay v. Humana*, Inc., 382 F.3d 1241, 1250 (11th Cir. 2004). In addition, "[a] plaintiff seeking certification of a claim for class treatment must propose an adequately defined class that satisfies the requirements of Rule 23." *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 667 (S.D. Fla. 2009).

Questions concerning class certification are left to the sound discretion of the district court, and the Court must undertake a "rigorous analysis" to insure that each and every element of Rule 23 is established at the time of certification. *See* Advisory Committee Notes to Rule 23, Fed. R. Civ. P.  In making the decision, the Court does not determine whether a plaintiff will ultimately prevail on the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  But, it may consider the factual record in deciding whether the requirements of Rule 23 are satisfied. *Valley Drug. Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003). Courts "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000).  In other words, the Court undertakes "an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or are susceptible of common proof equally applicable to all class members." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997)).

### A.    Class Definition

With the instant Motion, Plaintiff Swift asks the Court to certify the following class:

> All BancorpSouth Bank customers in the United States who, within the applicable statute of limitations preceding the filing of this action to August 13, 2010 (the "Class Period"), maintained a non-commercial account, and incurred an overdraft fee as a result of BancorpSouth's practice of re-sequencing debit card transactions from highest to lowest dollar amount.[6]

(Motion, at 1).[7]

Upon consideration of the proposed class definition, the Court finds that the definition is clear and that the class is readily ascertainable. It is well settled that "where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification." *Klay*, 382 F.3d at 1259–60 (footnotes omitted). Thus, "the implicit definition requirement does not require an overly strict degree of certainty and is to be liberally applied." *Singer v. AT & T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998). *See also* 7A Wright, Miller & Kane, *Federal Practice & Procedure: Civil 3d* § 1760 (3d ed. 2005) ("If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist."); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1133 n.16 (11th Cir. 2004) (noting that "class definitions may undergo modification, possibly several times, during the course of a class action.").

Plaintiff proposes to have his expert, Arthur Olsen ("Olsen"), mine BancorpSouth's data to determine who the members of the class are.   Olsen can identify which BancorpSouth

---

[6] Excluded from the Class are BancorpSouth Bank; its parents, subsidiaries, affiliates, officers and directors; any entity in which BancorpSouth Bank has a controlling interest; all customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members. (DE #2271, at 1). Plaintiff also seeks the certification of five subclasses for specific claims as set forth in Plaintiffs' Proposed Trial Plan for Trial of Class Claims (DE #2272) (the "Trial Plan").   These subclasses are discussed below.

[7] References to "Motion" are to citations from Plaintiffs' Motion for Class Certification (DE #2271).

customers incurred additional overdraft fees as a result of high-to-low re-sequencing of debit transactions by comparing that re-sequencing to each of the alternative posting scenarios. (Olsen Decl. ¶¶ 43–47). [8] While the finder of fact will ultimately have to decide which of these scenarios is most consistent with BancorpSouth's duty of good faith and fair dealing, Olsen will be able, at the outset, to identify all of BancorpSouth's customers who were harmed as compared to each of these alternative scenarios. The exact damages due each member of the class will then be calculated by Mr. Olsen once the fact finder has chosen the appropriate posting methodology. (*Id.* at ¶ 46). Olsen has already applied his reliable methodology to calculate Plaintiff's damage. (*Id.* at ¶ 54). A total class damage number will be calculated after calculating each class member's damage amount. (Trial Plan, at 9). This method of determining class membership has been accepted by this, and other courts. *See, e.g., In re Checking Acct. Overdraft Litig.-- Larsen v. Union Bank* ("*Larsen*"), 275 F.R.D. 666, 673 (S.D. Fla. 2011).[9]

BancorpSouth argues certification of the class is inappropriate because membership of the proposed class cannot be determined without a trial on the merits and no class member would be able to know that they were in fact a member of the class. (Opp. at 28–30).[10] BancorpSouth further argues that Olsen fails to show that injury and damage amounts can be established with common proof. (*Id.* at 53–56). This Court considered and rejected this argument on Defendant's

---

[8] References to "Olsen Decl." are to the Declaration of Arthur Olsen included in Appendix IV to Plaintiff's Motion for Class Certification (DE #2275-1).

[9] *See also, e.g., Sadler v. Midland Credit Mgmt.*, 2009 WL 901479, at *2 (N.D. Ill. Mar. 31, 2009) (automated query of defendants' database would yield "objective criteria" necessary to ascertain the class); *Stern v. AT&T Mobility Corp.*, 2008 WL 4382796, at *5 (C.D. Cal. Aug. 22, 2008) (defendants' business records provided sufficient information to identify individuals who purchased cellular telephone service and were enrolled in either one of the challenged services without ever having requested the service); *In re Diet Drugs Prods. Liab. Litig.*, 1999 WL 673066, at *13–14 (E.D. Pa. Aug. 26, 1999) (finding class definition was adequate because there were reliable means to determine who had actually taken the drug where fact sheets, prescription records, and records of medical treatment were available to verify consumption).

[10] References to "Opp." are to BancorpSouth Bank's Response to Plaintiff's Motion (DE #2446).

*Daubert* motion to strike Olsen's Declaration. (*See* DE #2650). Moreover, BancorpSouth has offered neither evidence nor expert testimony to in any way rebut Olsen's findings and conclusions.[11] BancorpSouth thus cannot dispute Olsen's ability to calculate damages on an account-by-account basis using the bank's own computerized records, a method upon which Olsen previously relied, with court approval, in *Gutierrez v. Wells Fargo Bank, N.A.*, 2008 WL 4279550, at *14–15 (N.D. Cal. Sept. 11, 2008).[12]

**B.      Rule 23(a)**

There are four prerequisites for class certification under Rule 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation. *Klay*, 382 F.3d at 1250. However, "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2551 (2010); *see also London v. Wal-Mart Stores*, 340 F.3d 1246, 1253 (11th Cir. 2003) (noting that party moving for class certification bears the burden of establishing each element of Rule 23(a)).

A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden of a preponderance of the evidence. *Gen. Tel. Co. of the SW.  v. Falcon,* 457 U.S. 147, 158–61 (1982). *See also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 202–04 (2d Cir. 2008) (requiring plaintiffs to meet burden by a preponderance of the evidence). If the party seeking class certification fails to

---

[11] BancorpSouth has instead elected to adopt the opinion of J.P. Morgan Chase's expert, Robert D. Willig, who was retained by J.P. Morgan Chase for a class certification motion that was never decided by this Court. (*See* Willig Decl., DE #1644). BancorpSouth did not make the expert available for deposition, having stated that it had neither retained nor designated this expert as a BancorpSouth witness.

[12] Mr. Olsen's methodology is also similar, if not identical, to the methodology proposed in *Larsen*, which this Court accepted for class certification purposes relying on *Gutierrez. Larsen*, 275 F.R.D. at 673.

satisfy any one of the Rule 23 requirements, then the case may not continue as a class action. *Jones v. Roy,* 202 F.R.D. 658, 662 (M.D. Ala. 2001).

In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true. *Moreno Espinosa v. J & J AG Prods., Inc.*, 247 F.R.D. 686 (S.D. Fla. 2007). However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Vegas v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1264 (11th Cir. 2009). In making that assessment, the Court may not consider the plaintiffs' likelihood of success on the merits, although some consideration of the merits may often be necessary. *Compare Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78 (1974); *and Kirkpatrick v. J.C. Bradford & Co.*, 87 F.2d 718, 722–23 (11th Cir. 1987); *with* Dukes, 131 S. Ct. at 2551 n.6 (noting that "[f]requently a 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim"); *and Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir. 1984) (holding that the *Eisen* doctrine should not be "talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements").

### (i)      Numerosity[13]

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Hammett v. Am. Bankers Ins. Co. of Fla.*, 203 F.R.D. 690, 694 (S.D. Fla. 2001). Certainly, such factors as size of the class and geographic location of the would-be class members are relevant to any consideration of practicality. *In re Recoton Corp. Secs. Litig.*, 248 F.R.D. 606 616, 617 (M.D. Fla. 2006). However, the focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy

---

[13] BancorpSouth does not challenge the elements of numerosity or adequacy of counsel. (*See* Opp. at 28–39).

the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697, 699 (M.D. Fla. 2000).

In general terms, the Eleventh Circuit has found that "less than twenty-one [prospective class members] is inadequate, [while] more than forty [is] adequate." *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986)). Thus, the "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.,* 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing *Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 570 (6th Cir.2004)).

As this Court is required to do even where a requirement for class certification is not satisfied, it has independently considered the prospective numerosity of the putative class members. *See Valley Drug Co.,* 350 F.3d at 1188 (noting court's independent obligation to examine elements of Rule 23); *Martinez-Mendoza v. Champion Int'l Corp.,* 340 F.3d 1200, 1216 n.37 (11th Cir. 2003) (same). The proposed number of class members on these facts easily exceeds the minimum threshold recognized by the Eleventh Circuit. Although the exact number of class members is not presently known, the proposed Class appears to number in the hundreds-of-thousands. Given not just the number of class members, but also their geographic distribution, individual joinder is impractical. *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied by class of 31 members who were geographically dispersed across Florida, Georgia and Alabama). Accordingly, the Court finds that the numerosity requirement of Rule 23(a) is satisfied.

### (ii)   Commonality[14]

The prerequisite commonality factor requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Notably, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." *Walco Invs., Inc. v. Thenen,* 168 F.R.D. 315, 325 (S.D. Fla. 1996). Rather, "a class action must involve issues that are susceptible to class-wide proof." *Cooper,* 390 F.3d at 713. Where the defendant is alleged to have "engaged in a standardized course of conduct that affects all class members," commonality is satisfied. *In re Terazosin Hydrochloride Antitrust Litig.,* 220 F.R.D. 672, 685-86 (S.D. Fla. 2004). *See also In re Recoton,* 248 F.R.D. at 618 (holding that, where a "common scheme of deceptive conduct" has been alleged, the commonality requirement should be satisfied).

Plaintiff here has provided evidence of a common corporate policy or practice, namely, BancorpSouth's systematic and uniform manipulation and re-ordering of debit card transactions to increase the number of overdraft fees imposed. *Cf. Oakley v. Verizon Communications, Inc.,* No. 09-9175, 2012 WL 335657, *14 (S.D.N.Y. Feb. 1, 2012) ("Of course, when a group of plaintiffs suffer under a uniform policy, the commonality test is often satisfied, even after *Dukes.*"). Plaintiff thus satisfies the commonality requirement under Rule 23(a)(2) by alleging and providing significant evidence that BancorpSouth uniformly manipulated and re-ordered debit card transactions to increase the number of overdraft fees imposed. That is the common contention that applies to all Class members that drives the resolution of this litigation.

---

[14] "The typicality and commonality requirements are distinct but interrelated, as the Supreme Court made clear: 'The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Cooper v. Southern Co.,* 390 F.3d 695, 713 (11th Cir. 2004) (quoting *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982)), *overruled on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457 (2006).

In particular, the common issues of law and fact in this case include whether BancorpSouth:

- Manipulated and re-ordered transactions in order to increase the number of overdraft fees imposed;

- Disclosed and/or refused to allow Class members to opt out of the overdraft payments service and the undisclosed Overdraft Matrix Limit assigned to the customers;

- Alerted Class members that a debit card transaction would trigger an overdraft fee if processed and provided them with an opportunity to cancel the transaction;

- Imposed overdraft fees when, but for re-sequencing, there would be sufficient funds in the account; and

- Breached its covenant of good faith and fair dealing with Plaintiff and the Class; engaged in practices that were substantively and procedurally unconscionable; was unjustly enriched at the expense of Plaintiff and the Class; and violated the Arkansas Deceptive Trade Practice Act.

(Motion, at 30).

### (iii)    Typicality

The third factor under Rule 23(a)(3), typicality, requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).   Like the commonality requirement, the typicality requirement is permissive: representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical. *Brown v. SCI Funeral Servs. of Fla., Inc.*, 211 F.R.D. 602, 605 (S.D. Fla. 2003). Moreover, if "the same unlawful conduct was directed at or affected both the class representatives and the class itself, the typicality requirement is usually met irrespective of varying fact patterns which underlie the individual claims." *Davis v. S. Bell Tel. & Tel. Co.*, No. 89-2839, 1993 WL 593999, *4 (S.D. Fla. Dec. 23, 1993). To defeat typicality, a defendant must

show that conflict between the named representatives and the class members is "such that the interests of the class are placed in significant jeopardy." *Walco*, 168 F.R.D. at 326.

The Court finds that Plaintiff's claims arise out of the same course of conduct and are based on the same legal theories as those of the absent class members. That is, Plaintiff and members of the proposed class, whose accounts were governed by common and materially uniform agreements, were subjected to BancorpSouth's practice of re-sequencing debit card transactions from high-to-low, and Plaintiff alleges that they and all members of the proposed class were assessed additional overdraft fees as a result. Plaintiff proposes discrete multi-state subclasses for some of the state law claims to ensure that the proposed class representatives' claims are materially identical to all other class members that they seek to represent. Therefore, the Court finds that the typicality exists within the meaning of Rule 23(a)(3).

### (iv)    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The two questions considered when determining the adequacy of representation are:

> (1) Do either the named plaintiffs or their counsel have any conflicts of interest with other class members; and
>
> (2) Will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?

*Kirkpatrick*, 827 F.2d at 726. While courts generally hold that a class representative have "working knowledge" of the case, *see, e.g., Buford v. H & R Block, Inc.*, 168 F.R.D. 340 (S.D. Ga. 1996), class certification will not be prevented solely on that basis unless the representatives "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick*, 827 F.2d at 728. Thus, the threshold of knowledge required to qualify a class representative is low.

The Court finds that neither the Plaintiff nor his counsel have any interests that are antagonistic to those of the absent class members. The central issues in this case – the existence, unlawfulness and effect of BancorpSouth's scheme to manipulate debit card transactions and increase the number of overdraft fees assessed – are common to the claims of Plaintiff and the other members of the class. Representative Plaintiff Swift, like each absent class member, has a strong interest in proving BancorpSouth's scheme, establishing its unlawfulness, demonstrating the impact of the illegal conduct and obtaining redress. Plaintiff thus "share[s] the true interests of the class." *Texas Air*, 119 F.R.D. at 459; *see also Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997) (the "common goal of each member of the class" is to remedy the unlawful conduct, and "[i]f the Plaintiffs succeed, the benefits will inure to all class members.").

The law firms seeking to represent the class here include qualified and experienced lawyers. The Court has reviewed the firm resumes setting forth their experience and expertise in class actions. In addition, the Court is familiar with many of the lawyers seeking to represent the class, as they have appeared before the Court a number of times. The Court is satisfied that the lead Plaintiff and the firms seeking appointment as class counsel will properly and adequately prosecute this case. The Court therefore appoints Plaintiff as representative of the class, and appoints the following firms as class counsel pursuant to Fed. R. Civ. P. 23(g):  Bruce S. Rogow, P.A.; Podhurst Orseck, P.A.; Grossman Roth, P.A.; Baron & Budd, P.C.; Golomb & Honik P.C.; Lieff Cabraser Heimann & Bernstein LLP; Trief & Olk; Webb, Klase & Lemond, L.L.C.; The Kopelowitz Ostrow Firm, P.A.; and Chitwood Harley Harnes LLP.

### C.    Rule 23(b) Certification

In addition to meeting the requirements under Rule 23(a), Plaintiff must establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b).

12

Plaintiff seeks certification under Rule 23(b)(3).   Thereunder, a plaintiff bears the burden of demonstrating two requirements are met: (1) predominance of the questions of law or fact common to the members of the class over any questions affecting only individual members; and (2) superiority of class action for the fair and efficient adjudication of the controversy. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Rule 23(b)(3) further specifies four areas of inquiry relevant to both predominance and superiority: (i) class members' interest in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and (iv) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(a)–(d).

### (i)    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. The question of predominance presumes the overriding existence of common issues; thus, a mere showing of commonality as in Rule 23(a) is not enough. *Hanlon,* 150 F.3d at 1022; *see also Amchem,* 521 U.S. at 624–25 (predominance criterion is "far more demanding" than Rule 23(a)'s commonality requirement). Predominance focuses on the relationship between the common and individual issues. *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989); *Hanlon,* 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022. Moreover, a scheme "perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite

the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Advisory Committee Notes to Rule 23(b)(3). Indeed, predominance is "a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem*, 521 U.S. at 625.

The Court finds that predominance is satisfied in this case. It is clear that "irrespective of the individual issues which may arise, the focus of the litigation" concerns "the alleged common course" of unfair conduct embodied in BancorpSouth's alleged scheme to maximize overdraft fees through the hidden reordering of transactions at account posting. *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 86 (M.D. Fla. 1977). Any analysis of this scheme will thus depend on common evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner.

Specifically, Plaintiff alleges that BancorpSouth's course of conduct commonly and adversely affected the entire class and has submitted evidence supporting that allegation. The class members are similarly situated with regard to the readily determined, allegedly excess fees they incurred as a result of a standardized process. The class is unified by both common questions and a common interest. The evidence necessary to establish Plaintiff's claims is common to both Plaintiff and all members of the class; they all seek to prove that BancorpSouth's high-to-low re-sequencing practice was wrongful. That evidentiary presentation involves the same evidence of: (i) BancorpSouth's form contracts, with similar terms, applicable to Plaintiff and class members; (ii) BancorpSouth's systematic re-sequencing of debt transactions from high-to-low for Plaintiff and class members through its automated software programs; and (iii) the line of credit that BancorpSouth secretly established for Plaintiff and class members in order to charge them overdraft fees.

Further, the evidence to be presented by the Plaintiff has a direct impact on every class member's effort to establish liability and on every class member's entitlement to relief. *Klay*, 382 F.3d at 1255. It has been held that where corporate policies "constitute the very heart of the plaintiffs' . . . claims," as they do here, common issues will predominate because those policies "would necessarily have to be re-proven by every plaintiff." *Id.* at 1257; *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 236 F.R.D. 62, 70 (D.N.H. 2006) (varying degrees of knowledge among class members do not present an obstacle to class certification where other common issues unite the class).

The Court also notes that the problems plaguing the proposed classes in *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159 (11th Cir. 2010), and *Klay* are not present here. In *Klay*, the court ultimately found certification of the breach of contract claims inappropriate given the individualized issues of fact they entailed, even though questions of contract law were common to the whole class. *Id.* at 1261. There were many different defendants with many different contracts with many different provider groups. Moreover, because the defendants breached the contracts through a variety of means and differing computer algorithms that were not subject to generalized proof, each physician would have to prove a variety of individual circumstances leading to the breach. *Id.* at 1263–64. Similar problems precluded certification in *Sacred Heart*, where there were substantial variations in the terms of over 300 hospital contracts that were individually negotiated, leading the court to find that "the diversity of the material terms is overwhelming." *Sacred Heart*, 601 F.3d at 1171–72. In contrast, the agreements at issue here are uniform form contracts offered on a take-it-or-leave it basis and were not the product of any individual negotiation. *See id.* at 1171 ("It is the

form contract, executed under like conditions by all class members, that best facilitates class treatment."). Nor does Plaintiff have to prove a variety of individual circumstances supporting the breach, as BancorpSouth's standard re-sequencing policy resulted in uniform conduct directed at all members of the class.

In addition, the court's certification in *Gutierrez* is instructive. Wells Fargo, like BancorpSouth, also contends that individual issues would predominate, but the court in that case found the "challenged practice is a standardized one applied on a routine basis to all customers." 2008 WL 4279550, at *17. Thus, while "there will be some individual issues . . . these individual variations will not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors." *Id.* Here, as in *Gutierrez*, Plaintiff alleges that BancorpSouth exercised its discretion in bad faith by re-sequencing debit card transactions posted to their checking accounts from highest to lowest in order to maximize overdraft penalties against customers. Moreover, as in *Gutierrez*, BancorpSouth's "challenged practice is a standardized one applied on a routine basis to all customers." *Id.* at *17. Any individual issues will "not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors." *Id.*

As discussed above, class members are readily ascertainable through objective criteria: BancorpSouth's own records of individuals who were assessed overdraft fees. Plaintiff's expert will formulate calculations that can identify members of the class by running queries in BancorpSouth's computer records. Such calculations will be merely ministerial in nature, and will not be plagued by resolution of individual class member issues. Damages will be calculated using the same BancorpSouth records used to identify the class members. These facts make this case manageable as a class action.

Nor do BancorpSouth's affirmative defenses defeat predominance. Affirmative defenses must meet the pleading standards of *Iqbal* and *Twombly*. *See Castillo v. Roche Laboratories, Inc.*, No. 10-20876-CIV, 2010 WL 3027726, at *2 (S.D. Fla. Aug. 2, 2010) (noting that "a majority of district courts in Florida have applied this heightened pleading standard to affirmative defenses"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009). "Labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Mid-Continent Cas. Co. v. Active Drywall South, Inc.*, 765 F.Supp.2d 1360, 1361–62 (S.D. Fla. 2011) (striking affirmative defense under *Twombly* because, as pled, it involved "nothing more than bare conclusions" without "any factual basis"). BancorpSouth's affirmative defenses here, even with the amendments offered in response to Plaintiff's motion to strike them, are insufficient to defeat class certification. Some (such as setoff) pertain, if at all, to a merits determination to be made later and can be accounted for in Plaintiff's expert's calculations. *See Carbajal v. Capital One F.S.B.*, 219 F.R.D. 437, 441 n.2 (N.D. Ill. 2004) (setoffs would not be a significant focus of the case and would likely involve nothing more than a mere calculation). The Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification. *See Allapattah Servs.*, 333 F.3d at 1261; *Sacred Heart*, 601 F.3d at 1178. Others, such as waiver, ratification, and the voluntary payment doctrine,[15] require, under the law of all of the states at

---

[15] These defenses may also pertain more to damages than liability, depending on how the facts develop in discovery. *See Coughlin v. Blair*, 41 Cal. 2d 587, 602–03 (1953) (discussing waiver in the context of the measure of damages, not liability); *see also Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1114 (C.D. Cal. 2001) (affirmative defenses of waiver and mitigation pertained to damages, not liability). Thus, some of these specific denials can be dealt with, if need be, during the claims process. *See, e.g.*, Answer, at 26 (offset); *id.*, at 24 (voluntary payment); *see also Allapattah Servs.*, 333 F.3d at 1259 (if liability is established, set-off claims can be handled on a class member-by-class member basis during claims administration). Also, if BancorpSouth can present sufficient facts to survive a motion for summary judgment, the jury can readily decide their application on a classwide basis.

issue, full knowledge by Plaintiff and members of the class of material facts making their actions knowing and voluntary.

Despite the materially identical legal standards pertaining to the proposed class and subclasses (as grouped by Plaintiff), BancorpSouth argues that individual issues predominate with regard to these claims. (Opp. at 39). Its argument relies on an improper reading of the relevant law and an incorrect assumption that its customers' experiences were materially different from Plaintiff's and thus "individualized." (Opp. at 36). For example, it is not the case that the individual Plaintiff and class members' subjective expectations are necessary to prove their claims. To the contrary, as this Court held in *Larsen*, Plaintiff's good-faith-and-fair-dealing, unconcionability and unjust enrichment claims "may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct." *Larsen*, 275 F.R.D. at 680.[16] Plaintiff has alleged, and BancorpSouth's contemporaneous records demonstrate, that customers were unaware of all or most of the components of the overdraft scheme, including but not limited to, the automatic high-to-low posting order, the Overdraft Matrix system, the assigned Overdraft Matrix Limit, which dictated how overdraft charges were generated, and that they had the right to opt out of the overdraft program (and thereby avoid overdrafts). (*See, e.g.,* Ex. 1, at 199:14–200:21, 226:16–24).[17] Plaintiff further alleges that, augmenting its re-sequencing practice, BancorpSouth's secret use of the Matrix was integral to its overall scheme

---

[16] Similarly, this Court has found that the uniformity of a bank's representations to members of the class, through the account agreement, and the focus on its conduct, renders claims under state consumer protection statutes appropriate for certification. *Id.*

[17] *See also, e.g.,* Ex. 1, at Depo. Ex. 6 ("The Matrix Overdraft Limit itself **should not** be disclosed to the customer. . . .") (bold and underline in original). To the extent BancorpSouth could prove that some customers nonetheless learned of their Matrix limit, yet continued to incur and pay overdraft fees, the presence of individualized defenses as to a small number of class members would not destroy the predominance of common liability questions. *See Smilow v. Southwestern Bell Mobile, Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008); *Robin Drug Co. v. Pharmacare Mgmt. Servs., Inc.*, No. Civ. 033397, 2004 WL 1088330, at *5 (D. Minn. May 13, 2004).

of increasing the number of completed debit transactions and the number of overdrafts.[18] Plaintiff alleges that the entire process of determining the amount of the Matrix and authorizing a transaction into overdraft was not disclosed to the customer before 2010. (Ex. 1, at 60:19–25; 126:20–127:15). If Plaintiff can prove these facts, they will undercut BancorpSouth's defenses by common evidence.

### (ii)   Superiority

Finally, the Court now turns to the issue of superiority under Rule 23(b)(3).  The four factors identified by Rule 23, *see Walco*, 168 F.3d at 337, requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." *Id.*  Plaintiff contends that a class action is superior to separate actions for each member of the putative class. Citing the factors identified by Rule 23(b)(3), Plaintiff claims that the class action vehicle provides the most efficient, effective, and economic means of settling the controversy.

When considered in light of Rule 23(b)(3), the Court finds that Plaintiff has met his burden in demonstrating the superiority of class action, and indeed it may be the only realistic way these claims can be adjudicated. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability.

---

[18] BancorpSouth's Rule 30(b)(6) representative pegged the percentage of retail customer accounts that were subject to the Overdraft Matrix and related overdraft limit at 96%. *See* Ex. 1, at 229:21–231:3. Also, according to BancorpSouth's documents, the bank considered the impact of low to high posting in 2007 and concluded that it would significantly decrease bank revenue, estimating a 17.5% decrease in revenue of more than $12 million. (Ex. 26). It did so again in 2010 in light of the filing of this lawsuit, and noted concern that switching "could provide a different class of customer to claim unfair practice." (Ex. 27).

The Supreme Court has long recognized that where, as here, "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guar. Nat. Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980). Thus, the Court's jurisprudence demonstrates the "recognition that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages done to any single individual or entity are too small to justify bringing an individual action." *In re Am. Express Merchants' Litig.*, 634 F.3d 187, 194 (2d Cir. 2011); *see, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that the class action mechanism may empower "plaintiffs to pool claims which would be uneconomical to litigate individually," such as when most of them "would have no realistic day in court if a class action were not available."); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("[T]he class attorney, who is familiar with the facts and the progress of the litigation, will be able to present the claimant's case.  If relegated to a new suit, the individual might be unable to obtain counsel to prosecute his action when the amount of individual damages is relatively small. . . . By obviating the need to bring a new lawsuit, the expense of litigating the new individual claim is reduced.") (quoting *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1220 n.80 (5th Cir. 1978)).

Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy.  Nearly all of the class members in this case have claims that are so small that it would cost them much more to litigate an individual case than they could ever hope to recover in damages, and thus there is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation.

Concentrating the litigation in this forum is logical and desirable. And as noted above, this case is eminently manageable as a class action. Accordingly, the Court finds that Plaintiff has met the superiority requirement of Rule 23(b)(3).

### (iii)   Subclasses

"When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). The party seeking certification of a class for which the laws of several states potentially apply bears the burden of demonstrating a suitable and realistic plan for trial of the class claims and must submit an extensive analysis showing that there are no material variations among the law of the states for which certification is sought. *Klay*, 382 F.3d at 1262. "[I]f the applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate." *Id.*[19] The court may thus authorize aggregate treatment of multiple claims, or of a common issue therein, by way of a class action if the court determines that:

> (1) a single body of law applies to all such claims or issues;
>
> (2) different claims or issues are subject to different bodies of law that are the same in functional content; or
>
> (3) different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can manage by means of identified adjudicatory procedures."

American Law Institute, *Principles of the Law: Aggregate Litigation* § 2.05(b) (2010).

Plaintiff has submitted, through his Trial Plan, an extensive analysis of state law breach of the duty of good faith and fair dealing, unjust enrichment, unconscionability, and violation of

---

[19] In *Klay*, although the Court reversed certification of claims for breach of contract and unjust enrichment, the Court recognized that state law claims "based on a principle of law that is uniform among the states" can form a "realistic possibility" of certification. *Id.* at 1261.

the Arkansas Deceptive Trade Practices Act. (*See* Trial Plan, at Ex. A). Plaintiff's Trial Plan proposes a discrete number of subclasses to ensure the predominance of common legal issues, and offers jury instructions and verdict forms demonstrating in concrete fashion how a trial on the alleged causes of action would be tried. As the surveys and proposed special verdict forms illustrate, variations among the potentially applicable state laws are not material and can be managed to permit a fair and efficient adjudication by the fact finder at trial. Each subclass will have its own start date linked to the statute of limitations for each of those claims. Each subclass groups the laws of the relevant states accordingly. The Court therefore finds that the creation of subclasses to address variations in state law is appropriate here, and will make this case manageable as a class action. The Court accordingly certifies Plaintiff's five proposed subclasses: the good faith and fair dealing subclass,[20] the unjust enrichment subclass,[21] two unconscionability subclasses, and the Arkansas Deceptive Trade Practices Act subclass.

### III.    Conclusion

In accordance with the findings above, it is hereby **ORDERED, ADJUDGED and DECREED** that Plaintiff's Motion for Class Certification (DE #2271) be, and the same is hereby, **GRANTED**.[22] The Court certifies the following class:

> All BancorpSouth customers in the United States who had one or more consumer accounts and who, from applicable statutes of limitation through August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of BancorpSouth's practice of sequencing debit card transactions from highest to lowest.

---

[20] Plaintiff is not currently seeking to certify claims for breach of contract and violation of the implied covenant of good faith and fair dealing based on the laws of the states of Louisiana or Missouri, both states where Bancorp South does business. Plaintiff reserves the right to amend to add potential class representatives for these states. (*See* Trial Plan, at 12–13 & Ex. A).

[21] Plaintiff is not currently seeking to certify claims for unjust enrichment based on the laws of the states of Florida, Tennessee, Louisiana, Alabama, Texas or Missouri, all states where Bancorp South does business. Plaintiff reserves the right to amend to add potential class representatives for these states. (Trial Plan at 12–13 & Ex. B).

[22] Defendant's Motion for Hearing (DE #2449) on its Opposition to Class Certification is **DENIED as moot.**

It is further **ORDERED, ADJUDGED and DECREED** that Plaintiff's Motion for the creation of five subclasses included in its Motion for Class Certification be, and the same is hereby, **GRANTED**. The Court certifies the following subclasses:

> One good faith and fair dealing subclass (encompassing Alabama, Arkansas, Florida, Mississippi, and Tennessee); one unjust enrichment subclass (encompassing Arkansas and Mississippi); two unconscionability subclasses (one encompassing Alabama, Arkansas, Florida, Louisiana, Tennessee, and Texas, and the other encompassing Mississippi and Missouri); and one subclasses for Plaintiff's Arkansas Deceptive Trade Practices Act claim.

The Court appoints Plaintiff Shane Swift as representative of the Class, and as representatives of the proposed good faith and fair dealing subclass; the unjust enrichment subclass; the two unconscionability subclasses; and the Arkansas Deceptive Trade Practices Act subclass. The Court also appoints the following firms as Class Counsel pursuant to Fed. R. Civ. P. 23(g):  Bruce S. Rogow, P.A.; Podhurst Orseck, P.A.; Grossman Roth, P.A.; Baron & Budd, P.C.; Golomb & Honik, P.C.; Lieff Cabraser Heimann & Bernstein LLP; Trief & Olk; Webb, Klase & Lemond, L.L.C.; The Kopelowitz Ostrow Firm, P.A.; and Chitwood Harley Harnes LLP.[23]

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida this 4th day of May, 2012.

_____
**JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA**

Copies furnished to:

Counsel of Record

---

[23] The Court will address the procedure for providing notice to class members regarding the certification of the class and these claims separately.