No. 12-12386

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**In re: CHECKING ACCOUNT OVERDRAFT LITIGATION**:

Shane Swift,
on behalf of himself and all others similarly situated,
Plaintiff-Appellee

v.

Bancorpsouth, Inc.,
Defendant-Appellant.

On Appeal from the United States District Court for the Southern District of
Florida
Case No. 1:09-MD-2036-JLK
Secondary Case No. 1:10-CV-23872-JLK

**APPELLEES' RESPONSE TO APPELLANT'S
TIME-SENSITIVE MOTION FOR IMMEDIATE STAY
OF INJUNCTION AND TO EXPEDITE APPEAL**

Stephen F. Rosenthal
Aaron S. Podhurst
Robert C. Josefsberg
Steven C. Marks
Peter Prieto
John Gravante
Matthew Weinshall
Podhurst Orseck, P.A.
25 W. Flagler St. – Ste. 800
Miami, FL 33130
Tel.: (305) 358-2800

Bruce S. Rogow
Bruce S. Rogow, P.A.
Broward Financial Ctr.
500 E. Broward Blvd.
Suite 1930
Ft. Lauderdale, FL 33394
Tel.: (954) 767-8909

David M. Buckner
Stuart Z. Grossman
Robert C. Gilbert
Seth E. Miles
Grossman Roth, P.A.
2525 Ponce de Leon Blvd.
Suite 1150
Coral Gables, Florida
33134
Tel.: (305) 442-8666

**Counsel for Appellees**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Appellees certify that, in addition to the names of persons and entities disclosed in Defendant-Appellant Bancorpsouth Bank's ("Bancorpsouth") certificate of interested persons, the following persons have an interest in the outcome of the particular case on appeal:

Hacker, Sara C.

Von Borke, Brett E.

Weinshall, Matthew

*s/Stephen F. Rosenthal*
Stephen F. Rosenthal, Esq.
Florida Bar No. 0131458

C-1

## **INTRODUCTION**

The "dilemma" BancorpSouth finds itself in is entirely of its own making. Its statements of concern for customers, regulators, and settlement class members are disingenuous, bordering on bad faith.  The actual basis for the alleged "time-sensitive" nature of its Motion is its improper desire to subvert the district court's authority in this MDL, and to goad this Court into taking precipitous action based on an incomplete and undeveloped record below, also entirely of its own making.[1]

BancorpSouth prematurely requests a stay pending appeal from this Court, having failed to give the district court a fair opportunity to rule on its May 1, 2012 Motion to Stay ("Motion").  Apparently dissatisfied with district court rulings to date, the Bank now will not even wait for them, or a decision on transfer by the Judicial Panel on Multidistrict Litigation ("JPML") of the recently-filed *Thomas et al. v. BancorpSouth Bank*, W.D. Ark. Case No. 1:12-cv-01016-RTD ("*Thomas*"), that is the source of the Bank's self-inflicted concerns.  This is in derogation of Federal Rule of Civil Procedure 62 and Federal Rule of Appellate Procedure 8, and by itself warrants the denial of the Motion.

Nothing that BancorpSouth presents justifies a stay pending its interlocutory

---

[1] BancorpSouth admits in its May 7, 2012 Supplement Notice to the Motion that it characterized the Motion as "time-sensitive" to avoid misusing the term "emergency."  There is nothing either emergent or time-sensitive about the relief it seeks in advance of seeking identical relief from the district court, and the Bank is wrong to suggest that the harm will worsen with the passage of time.

appeal of the district court's Order Granting Plaintiff's Emergency Motion to Enjoin Copycat Case Under All Writs Act ("Injunction").  *See* Ex. D to Mtn. (DE # 2666) (hereinafter cited as "Injct. at ___").   Nor can BancorpSouth demonstrate good cause for expediting its appeal, as its actions "caused" the district court to properly enjoin *Thomas*.  *See* 11th Cir. R. 27-1, I.O.P. 3.

BancorpSouth cannot show likelihood of success on the merits of its interlocutory appeal.  Its Motion omits significant aspects of the procedural history that led the district court to enter the Injunction pursuant to both the All Writs Act, 28 U.S.C. § 1651, and the "first to file" rule.  BancorpSouth's Motion ignores the first to file rule and the Bank's violation of S.D. Fla. Local Rule 3.8.

BancorpSouth seeks to stay the Injunction so that it can move forward with the proposed settlement in *Thomas* (Mtn. at 13), with the hope of obtaining final settlement approval in July 2012, prior to the conclusion of this appeal.  Its request will not preserve the status quo.  Granting the stay it seeks would further endanger the jurisdiction that the JPML has entrusted to the district court in MDL No. 2036, appointing the district court here to preside over all pretrial matters involving overdraft claims against BancorpSouth.   The district court recently granted BancorpSouth limited relief from the Injunction to oppose the JPML's Conditional Transfer Order (CTO-44). *See* Ex. D to Mtn. (DE # 2653).  No further relief from the Injunction is warranted, on an interim basis or otherwise.  This Court should

deny the Motion.

## I.   FACTUAL MATTERS OMITTED FROM THE MOTION TO STAY

BancorpSouth's self-serving recitation of the facts fails to present a fair depiction of the factual and procedural context giving rise to the order on appeal. This Court should instead be informed by the extensive findings of fact the district court made in ruling on the Injunction.[2] Excerpts of those findings are reproduced below. They clearly demonstrate that BancorpSouth created its own "dilemma":

> On May 18, 2010, Plaintiff Swift filed a nationwide class action complaint against Defendant Bancorpsouth in the Northern District of Florida, challenging BancorpSouth's overdraft fee policies and practices ("*Swift*").   *Swift* was the first-filed class action lawsuit challenging BancorpSouth's overdraft fee policies and practices.  On October 20, 2010, over BancorpSouth's objection, the JPML transferred *Swift* to this Court as part of MDL 2036.

> *Swift* has been actively litigated in this Court for almost 18 months. Among other activities, this Court entered a comprehensive Scheduling Order on April 13, 2011 (DE # 1340), setting firm deadlines for the conduct of discovery and motion practice and a January 14, 2013 trial date. In accordance with the Scheduling Order, the Court denied BancorpSouth's motion to dismiss (DE # 1305); BancorpSouth filed its amended answer and affirmative defenses (DE # 1693); the Court denied BancorpSouth's *Daubert* motion (DE # 2650); and Plaintiff filed its Motion for Class Certification (DE # 2271), which is fully briefed and awaiting decision.[][3] The parties also engaged in extensive pretrial discovery, including depositions and BancorpSouth's production of over 100,000 pages of documents, conducted

---

[2] The district court noted that its "factual findings are based on matters of record filed in *Swift* and *Thomas*, including the sworn declarations filed in *Swift* by counsel for Plaintiff (DE # 2603-1 & 2626-2) and counsel for BancorpSouth (DE # 2605-1, 2605-2 & 2635), as well as the pleadings filed in *Thomas* (DE # 2605-3-24).  *See* Ex. B to Motion at p.2 n.1.

[3] On May 4, 2012, the district court certified the class in *Swift*. (DE # 2673).

3

pursuant to the Court's Scheduling Order that establishes a June 22, 2012 deadline for completing discovery.

Moreover, for a period spanning July 2011 through December 2011, counsel for Plaintiff and BancorpSouth exchanged privileged and confidential settlement-related communications and data with the goal of ultimately engaging in mediation in *Swift*. (DE # 2626 & 2625). As part those settlement negotiations, Plaintiff retained an expert to complete a damage analysis calculation based on sample transactional data provided by BancorpSouth. Plaintiff's expert concluded that the class' damages were in excess of $42 million. *See* Supplemental Declaration of Jeffrey M. Ostrow (DE # 2625), at ¶ 19.  In response, counsel for BancorpSouth stated that "the case would not settle and will go to trial." *Id.*  Yet, during the same time period, the same counsel for BancorpSouth was participating in intensive settlement negotiations and mediations of a case with identical claims and a substantially similar class in Arkansas before re-filing the case in a race to the courthouse for a lower settlement.  *See* Settlement Agreement (DE # 2605-10), at ¶ 40 (establishing $1.75 million "Settlement Fund" in *Thomas* for a proposed class that is broader in scope and for a longer time period than in *Swift*).[]

This Court first learned of the existence of *Thomas* on March 27, 2012, when BancorpSouth filed a notice that a proposed class action settlement had been preliminarily approved in *Thomas* by the Honorable Robert T. Dawson, United States District Judge, Western District of Arkansas, and requested that this Court stay all class-related proceedings in *Swift* to allow the parties in *Thomas* to move forward with the final settlement approval process before Judge Dawson in Arkansas. (DE # 2602). Prior to March 27, 2012, BancorpSouth's counsel never made this Court, the PEC, or Plaintiff's counsel aware of any other overdraft-fee-related lawsuits filed or pending against BancorpSouth. (DE # 2603-1).

* * *

On February 28, 2012, the day before the settlement agreement was signed, Plaintiff Melvin L. Thomas, III joined Plaintiff Lawson in filing *Thomas* in the Western District of Arkansas, asserting claims nearly identical to those in the *Swift* action. (DE # 2605-4). On March 12, 2012 – two weeks after it entered into the Settlement Agreement (DE # 2605-10) – BancorpSouth filed a motion to dismiss in *Thomas*. (DE # 2605-5). On

4

March 16, 2012, the plaintiffs in *Thomas* filed an unopposed motion seeking certification of a settlement class, preliminary approval of the class action settlement, approval of a notice plan to provide absent class members with notice of the proposed class action settlement, and to schedule a final fairness hearing. (DE # 2603-4). On March 23, 2012, the *Thomas* plaintiffs filed a brief in support of their unopposed motion for class certification. (DE # 2603-5). That brief confirmed that beginning in August 2011, before *Lawson* was voluntarily dismissed, the parties began discussions about negotiating a "global settlement."' *Id.* at 4. Also on March 23, BancorpSouth filed a memorandum in *Thomas* in which it "urged the Court to preliminarily approve the settlement agreement" and, for the first time, disclosed the existence of *Swift* to the Arkansas federal court to "fulfill its obligation of candor." *See* Defendant BancorpSouth Bank's Bench Memorandum in Support of Settlement Agreement (DE # 2603-6), at 2.  On March 26 – at the Thomas' parties' request – Judge Dawson convened a preliminary approval hearing in *Thomas*, which was attended by the same attorneys who represent BancorpSouth in *Swift* before this Court.  *See* Transcript (DE # 2626-1), at 3.

While BancorpSouth claims that it fully disclosed the nature and procedural status of *Swift* to Judge Dawson, this Court's review of the record in *Thomas* and the March 26 hearing transcript leads it to a contrary conclusion. In this Court's view, BancorpSouth's counsel selectively disclosed the nature and status of the proceedings in *Swift* by failing to fully disclose to Judge Dawson the extent to which: (i) the claims in *Swift* are substantially similar to those asserted in the recently-filed *Thomas* case; (ii) the claims in *Swift* have been pending and actively litigated for over 18 months; (iii) the motion for class certification in *Swift* was fully briefed and pending decision at the time of the March 26 preliminary approval hearing in *Thomas*;[4] and (iv) this Court long ago entered a comprehensive scheduling order establishing pretrial deadlines in MDL 2036, including a June 22, 2012, deadline for completing discovery and a January 2013 trial date.  Moreover, before and during the March 26 hearing in *Thomas*, BancorpSouth's counsel never disclosed to Judge Dawson that they: (a) had exchanged settlement-related information with Plaintiff's counsel in *Swift*

---

[4] Footnote 4 to the Injunction reads: "Indeed, BancorpSouth objected to class certification in February 2012 - the same time it entered into the proposed settlement seeking class certification - without mention to this Court, Judge Dawson, or the parties of the related action filed just weeks after their opposition to class certification."

while simultaneously pursuing secret settlement negotiations with the . . . *Lawson/Thomas* parties; and (b) had not informed this Court, the PEC or Plaintiff's counsel in *Swift* of the existence of *Lawson* or *Thomas* or the proposed class action settlement.

Judge Dawson naturally expressed concern about the *Thomas* parties' rush to obtain preliminary approval of a class action settlement in a case filed less than a month earlier . . . [quotation omitted] . . . BancorpSouth's counsel explained that their client's urgency in seeking preliminary approval was intended to satisfy three interested constituencies: (1) the proposed settlement class (BancorpSouth's customers) with whom the Bank had existing banking relationships; (2) bank regulators; and (3) the bank's shareholders. (DE # 2626-1 at 15-17). At no time, however, did Bancorpsouth's counsel mention this Court's interest given its 18 month history presiding over *Swift* as part of MDL 2036.

Judge Dawson also asked the Bank's counsel about this Court's likely reaction to preliminary approval of the *Thomas* settlement. Judge Dawson was led to believe that this Court would have no issue with preliminary settlement approval of a later-filed overdraft fee lawsuit. Counsel suggested to Judge Dawson that this Court regularly enters stay orders when settlements are announced in MDL 2036, but neglected to disclose that such stays have been based on settlements announced *jointly* by the parties litigating in MDL 2036. (DE # 2626-1 at 21-23). In this Court's view, BancorpSouth's counsel was not candid with Judge Dawson in addressing his concerns that he might be infringing upon this Court's jurisdiction.

* * *

In this Court's view, Judge Dawson was not made fully aware that Plaintiff's motion for class certification, filed on December 20, 2011, was fully briefed and pending decision at any time.

BancorpSouth also advised Judge Dawson that *Thomas* would never be transferred to this Court as a tag-along action because the JPML had issued an Order suspending Panel Rule 7.1(a) on October 11, 2011. (DE # 2626-1 at 22). In fact, notwithstanding the October 11, 2011 Order, prior to March 26, the JPML had issued two conditional transfer orders relating to tag-along actions filed against other banks that are defending actions previously made part of MDL 2036. *See* Conditional Transfer Order (CTO-

42) as to Bank of the West (JPML DE # 646) and Conditional Transfer Order (CTO-43) as to TD Bank (JPML DE # 654).  Notably, on April 19, 2012, the day after the hearing before this Court and contrary to BancorpSouth's counsel's statement to Judge Dawson that *Thomas* would never be transferred, the JMPL issued Conditional Transfer Order (CTO-44) as to *Thomas*.  (JPML DE # 671).

On March 26, 2012, based on the statements and answers provided by BancorpSouth's counsel and plaintiffs' counsel during the hearing, Judge Dawson entered an order granting preliminary approval to the proposed class action settlement in *Thomas*. (DE # 2603-7).  Among other things, the preliminary approval order directed that notice be given to all *Thomas* settlement class members and scheduled a final approval hearing for July 30, 2012.  On April 3 and 4, 2012, the parties in *Thomas* caused the notice of the proposed class action settlement to be mailed and emailed to approximately 350,000 and 67,000 settlement class members in *Thomas*, respectively, and published it in 16 newspapers. (DE # 2634-1). The *Thomas* parties disseminated class notice *after* the Motion to Enjoin was filed in *Swift* and after this Court entered an Order setting a hearing on the Motion to Enjoin for April 18, 2012.

Injct. at 2-8.[5]

BancorpSouth's Motion also omits or misstates other critical details, including:

- The April 24, 2012 JPML Order which modifies the October 11, 2011 Order Suspending Panel Rule 7.1(a), which requires notification to the JPML of any potential tag-along action involving a defendant bank, like BancorpSouth, named in another action presently pending in MDL No. 2036.  (JPML DE # 677).

- BancorpSouth's violations of S.D. Fla. Local Rule 3.8, which requires parties to advise the district court of similar actions pending before any federal or state court.

---

[5] BancorpSouth has not shown, and cannot meet its burden to establish, that these findings of fact are clearly erroneous.  *U.S. v. Alabama Dept. of Mental Health and Mental Retardation*, 673 F.3d 1320, 1324 (11th Cir. 2012).

- Between March 27, 2012 (the date the bank first notified the district court of *Thomas*) and April 18, 2012 (the hearing date on the competing motions), (a) Plaintiff immediately moved for emergency injunctive relief on March 29, 2012; and (b) on April 2, 2012, the district court set the April 18, 2012 hearing  (Injct. at 14).  As the district court observed, BancorpSouth "could have easily asked Judge Dawson to modify the deadlines for disseminating notice to the settlement class until after th[e] [district court here] ruled on the Motion to Enjoin and Motion to Stay." *Id.*  Instead, it proceeded with settlement notice. *Id.* at 8, 14-15.

BancorpSouth's argument concerning its purported inability to comply with the *Thomas* Settlement Agreement due to the Injunction (Mtn. at 9) is inaccurate. With respect to confirmatory discovery, BancorpSouth leaves out the fact that it agreed to a 45 day confirmatory discovery period that commenced on February 29, 2012.  That 45 day period has thus *already* expired, and indeed expired prior to the April 18, 2012 hearing.

Similarly, BancorpSouth alleges an inability to furnish account statements to settlement class members at no cost, as contemplated by ¶C.11.d. of the Settlement Agreement.  The agreement does not even contemplate BancorpSouth furnishing account statements free of charge unless and until the settlement receives final approval.  (DE # 2603-8 at 34-35).  The obligation relates to claim forms, which are not due until 45 days *after* final approval.  BancorpSouth's concerns about its inability to participate in the other cited activities[6] contemplated by the Settlement

---

[6]  BancorpSouth refers to the following activities: (1) depositions of class settlement objectors; (2) participating in the final fairness hearing; and (3) filing declarations regarding compliance with the settlement notice plan.  Motion at 9.

Agreement are similarly due to its failure to ask Judge Dawson to slow down the timeline set forth in the preliminary approval order before the Injunction was entered.  Exhibit F to the Motion and the *Thomas* settlement website indicate that the class settlement administrator has acted to respect the Injunction since timely relief was not sought by the *Thomas* parties to slow down the timeline of events.[7]

## ARGUMENT

Federal Rule of Civil Procedure 62(c) provides that "[w]hile an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights."  *Jaffe v. Bank of America, N.A.*, 667 F. Supp.2d 1299, 1323-1324 (S.D. Fla.2009), sets forth BancorpSouth's heavy burden to establish entitlement to a stay of the Injunction pending interlocutory appeal:

> A motion under Federal Rule of Civil Procedure 62(c) seeking to stay an injunction pending appeal is "extraordinary relief" for which the moving party bears a "heavy burden." *Winston Salem/Forsyth County*

---

[7] The website address is www.bancorpoverdraftsettlement.com, and the following now appears:  "Recently, a court order was entered by another federal court that appears to be the subject of an appeal.  Until the order and appeal are resolved, the process of assisting class members in retrieving bank statements is on hold. Additionally, Epiq, as the Claims Administrator, will not be able to assist settlement class members in answering questions or assisting them in the filing of claims at this time.  As additional information is received, court appointed Class Counsel, Emerson Poynter LLP, will ensure that additional information is provided here.  For these reasons, the time deadlines on the left-hand side of this page may be extended as well."

*Bd. of Edu. v. Scott*, 404 U.S. 1221, 1231, 92 S.Ct. 1236, 31 L.Ed.2d 441 (1971); *Garcia–Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir.1986) ("Such motions are disfavored and granted only in exceptional circumstances."). In determining whether to grant such a motion, the court considers: 1) whether the applicant made a strong showing that it is likely to prevail on the appeal; 2) whether the applicant will be irreparably injured absent a stay; 3) whether the issuance of the stay will substantially injure the other parties interested in the proceeding; and 4) where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

BancorpSouth's arguments are unavailing and legally insufficient.  The failure to satisfy any one prong of the standard is fatal to the Motion.

## A. There Is No Likelihood of Success on the Merits.

Likelihood of success is typically the most important factor.  *Garcia–Mir*, 781 F.2d at 1453.  BancorpSouth must prove that the district court abused its discretion in entering the Injunction.  It cannot do so.

### 1. <u>BancorpSouth does not even address the first to file rule.</u>

BancorpSouth does not address the first to file rule, and the fact that *Thomas* is an MDL tag-along action.  The first to file rule provided an independent basis to grant the Injunction, separate and apart from the All Writs Act.  Injct. at 15-17.  On this basis alone, the Motion should be denied.  *See Castillo v. Cessna Aircraft Co.*, 712 F. Supp.2d 1306, 1314 (S.D. Fla.2010) (failure to address holding of the court is, in and of itself, sufficient reason to conclude that movant failed to demonstrate that it is likely to succeed on appeal).

10

BancorpSouth also ignores the district court's conclusion that the Bank twice violated Local Rule 3.8.  Had BancorpSouth notified the district court and the Plaintiff that *Thomas* had been filed, as S.D. Fla. Local Rule 3.8 required, Plaintiff would have promptly (a) filed its first to file rule motion and (b) tagged *Thomas* for JPML transfer, well before the motion for preliminary approval was filed and Judge Dawson's settlement class certification ruling.

### 2.  <u>The district court properly applied the All Writs Act.</u>

BancorpSouth overemphasizes Judge Dawson's settlement-only class certification order which remains conditioned upon final settlement approval that may never occur.  *See* Ex. A to Mtn. (Preliminary Approval Order at 3).  The "rigorous analysis" that this Circuit's precedent requires is absent.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).

By contrast, in certifying the *Swift* class, Judge King conducted that analysis. *Compare* Class Certification Order (*Thomas*) at 3-4 (Mtn. Ex. A) *and* Order Granting Class Certification (MDL 2036).  *See* Ex. D to Mtn. (DE # 2673).  As the district court pointed out during the April 18, 2012 hearing, there is a rather glaring inconsistency between BancorpSouth's representation to Judge Dawson in *Thomas* that class certification is warranted, when at the same time it was strenuously opposing certification in *Swift*.  *See* Ex. E to Mtn.--*April 18, 2012 Hearing Transcript* at pp. 6-7, 12-13 (DE # 2647).

11

It is simply incorrect for BancorpSouth to state that a prerequisite to applying the All Writs Act is a pending settlement agreement in the enjoining court. Indeed, several cases support the contrary conclusion. *See In re Managed Care Litig.*, 236 F. Supp.2d 1336 (S.D. Fla. 2002); *In re Bank of America Wage and Hour Employ. Litig.* (*"BofA"*), 740 F. Supp.2d 1207 (D. Kan. 2010); *In re America Online Spin-Off Accts. Litig.*, MDL Docket No. 04-1581, 2005 WL 5747463 (C.D. Cal. May 9, 2005). The *BofA* court distinguished *Negrete v. Allianz Life Ins. Co.*, 523 F.3d 1091 (9th Cir. 2008), and *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322 (3d Cir. 2007), two cases that BancorpSouth cites in its Motion and previously cited in opposing entry of the Injunction. Mtn. at 7. The distinctions noted in *BofA* apply here.

*Grider* involved a federal action that was at an advanced stage prior to the creation of an MDL. As a result, the JPML did not transfer that action into the MDL. Later, when the MDL proceeding moved toward a comprehensive settlement, the non-MDL court issued an All Writs Act injunction against the defendants in the MDL court. *BofA*, 740 F. Supp.2d at 1214. While it is true there was no settlement in the MDL action, the Third Circuit focused more on the facts that (a) the enjoined court was the MDL court; (b) there was no evidence of wrongdoing by the defendants; and (c) the class members had an adequate remedy at law to object through the Fed. R. Civ. P. 23(e) process. *Grider*, 500 F.3d at 331-

12

332.   In contrast, here the MDL court enjoined the non-MDL court to protect the MDL court's path to judgment and the important responsibilities vested in it by the JPML.  Further, there is clear evidence of wrongdoing by BancorpSouth, including violations of Local Rule 3.8 and failure to tag *Thomas* with the JPML.  Finally, since the class definition approved by Judge Dawson excludes Swift from the class (because he has active litigation against the Bank), Swift's standing to object to the *Thomas* settlement is uncertain.  At the same time, there could be doubt as to the district court's jurisdiction over Plaintiff's individual claim under the Class Action Fairness Act ("CAFA"), given its relatively modest size.  *See* Injct. at 13 n.5.

The *BofA* court also observed that *Negrete* was not an MDL proceeding. 740 F. Supp.2d at 1103.  There was no evidence of collusion, as there is here. *Negrete*, 523 F.3d at 1099.  Ultimately, the lack of a settlement in *Swift* does not trump the other more important procedural factors that properly led the *BofA* court, and the district court here, to enter All Writs Act injunctions, following Judge Moreno's lead in *Managed Care*.  It was pivotal for the *BofA* court that neither *Negrete* nor *Grider* involved "a defendant attempting to settle a tag-along action outside the context of an MDL after deliberately or inadvertently failing to disclose the case to the JPML or the MDL court."  720 F. Supp.2d at 1215.  Of course, this is precisely what BancorpSouth has done here.  Accordingly, the district court correctly followed *Managed Care*, *BofA*, and *America Online* courts in applying

13

the All Writs Act to enjoin BancorpSouth to protect the integrity of the MDL process.[8]

The district court's reliance on *Managed Care* was correct. Even assuming *arguendo* that the October 11, 2011 Suspension Order did not require the Bank to file a JPML tag-along notice, the district court correctly concluded that S.D. Fla. Local Rule 3.8 required prompt disclosure of *Lawson* and then *Thomas*. Accordingly, whether the obligation to disclose those cases arose under Local Rule 3.8 or the JPML tag-along notice rule, the obligation was there. BancorpSouth willfully did not comply in an obvious effort to conceal its actions until another court preliminarily approved a settlement, which the Bank believed would result in *Swift* being stayed. By violating Rule 3.8, BancorpSouth thwarted prompt action to tag *Thomas* with the JPML and efforts to intervene and object in *Thomas* prior

---

[8] BancorpSouth's citation to the District of Kansas case of *Vallier v. Am. Fid. Assur. Co.*, No 08-2267, 2008 U.S. Dist. Lexis 70672 (D. Kan. Sept. 16, 2008), is also unavailing. *BofA* and *Vallier* are from the same court, but *Vallier* pre-dates *BofA*. *Vallier* involved an All Writs Act injunction against a state court proceeding, potentially implicating the Anti-Injunction Act that is not involved here. Unlike in *Vallier*, the *Thomas* action interferes with this Court's path to judgment because the intention is to exclude *Swift* from the class and at the same time undermine the district court's order certifying the class with him as its representative. Again, Plaintiff is unlikely to have standing to object under Fed. R. Civ. P. 23(e) due to the *Thomas* class definition. *Vallier* was at its very preliminary stages, which is not the case here. *In re Gen. Motors Corp. Pick-Up Fuel Tank Prod. Liab. Litigation*, 134 F.3d 133 (3rd Cir. 1998), also does not support BancorpSouth's likelihood of success on the merits, as it too involved a settlement in a state court action, potentially implicating the Anti-Injunction Act, and did not involve covert conduct like that exhibited here by BancorpSouth.

14

to the preliminary approval hearing.  Injct. at 14.

BancorpSouth incorrectly claims that the district court is infringing on its due process rights.  In fact, at the Bank's request, the district court is giving BancorpSouth the opportunity to oppose MDL transfer before the JPML in *Thomas*.  (DE # 2653).  No other relief should be afforded, as none is necessary or justified.  BancorpSouth is free to try to convince the JPML not to transfer *Thomas* because of the preliminary approval order.  However, as of this filing, BancorpSouth is not showing any urgency in moving to vacate CTO-44, nor are the *Thomas* plaintiffs.[9]  The only urgency is to jump over the district court for a stay pending appeal.  There is no reason both parties in *Thomas* could not have already filed their motions to vacate CTO-44, other than that they wish to delay that process because they expect the JPML to rule against them.[10]

### 3. The traditional factors for injunctive relief do not apply to the All Writs Act.

BancorpSouth incorrectly argues that the district court was required to apply what the Bank calls "the Rule 65 requirements before entering an All Writs Act

---

[9] On May 4, 2012, the *Thomas* plaintiffs moved for and received a short extension of time to file their motion to vacate, to wait for BancorpSouth to file its motion. (JPML DE # 700, 702).

[10] Because the motions to vacate CTO-44 have yet to be filed, the JPML is not expected to schedule a hearing on the opposition to CTO-44 until July 26, 2012, after the July 9, 2012, *Thomas* settlement opt-out and objection deadlines, and four days prior to the July 30, 2012 final fairness hearing in *Thomas*.  However, the reason for the Bank's haste to obtain a stay is obvious – to get as far along with its settlement before the JPML can transfer *Thomas* into the MDL, where it belongs.

15

Injunction."  Mtn. at 7.  This argument is belied by *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004), and *Alabama v. U.S. Army Corp. of Eng'rs*, 424 F.3d 1117 (11th Cir. 2005).  *Klay* in particular explicitly addressed *Florida Med. Ass'n v. U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199 (5th Cir. 1979), the former Fifth Circuit case that BancorpSouth claims applies.

In *Klay*, this Court analyzed three different types of district court injunctions: (a) traditional injunctions, (b) statutory injunctions, and (c) All Writs Act injunctions.  376 F.3d at 1098-1101.  This Court then confirmed that only the first two require application of the four factors triggered by a Rule 65 motion.  *Id.* at 1097-1099.  "The requirements for a traditional injunction do not apply to injunctions under the All Writs Act because a court's traditional power to protect its jurisdiction, codified by the Act, is grounded in entirely separate concerns."  *Id.* at 1100; *see also id.* at 1101 n.13 (specifically addressing *Florida Med. Ass'n*).[11]  A year after *Klay*, this Court confirmed that the Rule 65 criteria do not apply.  *See Alabama*, 424 F.3d at 1131-1132.[12]

Finally, even if the four injunction factors (excluding likelihood of success on the merits) applied here, the district court noted that its findings of fact

---

[11] *U.S. v. Brown*, 342 F.3d 1245 (11th Cir. 2003), has no application here because this Court reconciled its holding with *Florida Med. Ass'n* in *Klay*.

[12] The *Klay* court cited *Managed Care* favorably as a case that applied the All Writs Act to "unique considerations that support[ed] enjoining proceedings related to a complex class action."  376 F.3d at 1132 n.22.  *Klay* arose out of orders entered in the *Managed Care* MDL.

supported the conclusions that irreparable harm would occur if an injunction did not issue against *Thomas*; the threatened injury to *Swift* outweighs whatever damage the Injunction would cause to BancorpSouth; and the Injunction would not be adverse to the public interest.  Injct. at 15.

### B. BancorpSouth Will Not Be Irreparably Injured Absent a Stay.

Irreparable injury will not befall BancorpSouth without a stay of the Injunction.  BancorpSouth decries its inability to participate in or protect its rights in *Thomas*, but all of its concerns are self-inflicted, and would have been avoided had BancorpSouth reasonably asked Judge Dawson to modify the schedule in the preliminary approval order.   BancorpSouth knew that Judge Dawson was concerned about interfering with the MDL court and the pace with which *Thomas* was proceeding.  Even now BancorpSouth has not sought leave to request that Judge Dawson allow the bank to publish a new notice to the accountholders notifying them of the Injunction and that the current deadlines in the preliminary approval will be suspended or extended.  Of course, BancorpSouth cannot plead innocence because it has been plotting all along to use the preliminary approval order in *Thomas* to moot *Swift*.  That ploy correctly failed, and BancorpSouth is now desperately trying to convince this Court to save it from the foreseeable consequences of its ill-conceived gamble.

BancorpSouth misses the point in arguing that Plaintiff does not "own" the

17

class.  The Injunction was issued because of the affront to the district court's jurisdiction as the MDL court presiding over the first-filed action.  On May 4, 2012, the district court fulfilled its obligation by considering and granting class certification, meaning that it has jurisdiction over the class members that the *Thomas* plaintiffs seek to represent.  Moreover, in a failed attempt to be clever, BancorpSouth asked Judge Dawson to certify a class that excludes all parties to any other active litigation against the bank.  Now that *Swift* has been certified as a class, its members all have active litigation against BancorpSouth, thereby excluding them from the *Thomas* class.

### C. Staying the Injunction Will Substantially Injure Plaintiff.

Since it is readily apparent that BancorpSouth seeks to immediately complete the *Thomas* settlement if the stay is lifted (Mtn. at 13), Plaintiff and the members of the certified *Swift* class will be substantially injured by any action that allows *Thomas* to proceed.  Further, BancorpSouth is wrong to suggest that Plaintiff is protected because Judge Dawson's preliminary approval order allows him to proceed with his individual claims.  As noted above, without class claims, there would be a serious question about the district court's subject matter jurisdiction over *Swift* under CAFA. So there is no refuge in BancorpSouth's argument that money damages remain available to Plaintiff as an adequate legal remedy.  Additionally, if Plaintiff is not in the *Thomas* class, Rule 23(e) objections

are not available to him in *Thomas*.

### D. Only a Denial of the Requested Stay Will Serve the Public Interest.

BancorpSouth's argument as to the public interest factor totally misses the mark.  The Injunction reasonably slows down the *Thomas* settlement process to allow the JPML to rule on transfer, and independently protects the MDL district court's jurisdiction.  Judge Dawson was hesitant to grant preliminary approval to begin with, and there is no reason that the deadlines in the Thomas *preliminary* approval order cannot be modified.  Staying the Injunction to allow BancorpSouth to work with the *Thomas* plaintiffs to try to push through their inferior, collusive settlement does not serve the public's interest.

### E. BancorpSouth Does Not Offer a Good-Faith Basis for an Expedited Appeal.

BancorpSouth improperly analogizes the emergency injunctive relief Plaintiff sought to halt *Thomas* to the exigencies that BancorpSouth wrongly created in *Thomas*.  Mtn. at 16 n.14.  Plaintiff legitimately sought to stop the *Thomas* parties from acting on the March 26, 2012 preliminary approval order, and to prevent the very confusion that BancorpSouth claims now exists.  A fully-briefed class certification motion was pending before the district court in *Swift* when the *Thomas* parties appeared before Judge Dawson at the preliminary approval hearing.  By March 29, 2012, two days after BancorpSouth disclosed *Thomas* and moved to stay *Swift*, Plaintiff filed his emergency motion and his

19

opposition to BancorpSouth's stay motion.   The *Thomas* preliminary approval order did not set a deadline for distributing and publishing settlement notice. BancorpSouth elected to push the process, and created its own predicament, by directing the class settlement notice administrator to distribute and publish the class settlement notice in the face of a possible injunction.   BancorpSouth ignored another warning sign in Judge King's April 2, 2012 hearing notice, which set the April 18, 2012 hearing.    The settlement notice administrator distributed and published settlement notice on April 3 and 4, 2012 because BancorpSouth was desperate to create a sense that final approval in *Thomas* is inevitable, *not* because the Bank feared non-compliance with Judge Dawson's order.

Assuming there even is any, the "peril" BancorpSouth claims for the *Thomas* class members is BancorpSouth's fault.   Thus, it provides no good-faith basis for this Court to expedite this appeal.   As noted above, there is certainly time to notify the *Thomas* settlement class, at BancorpSouth's expense, that the settlement is on hold.   For these reasons, this Court should not expedite this appeal.

## CONCLUSION

BancorpSouth's failure to satisfy any of the factors required for a stay pending appeal is fatal to its Motion.   Therefore, Plaintiff respectfully requests that this Court deny the Motion, including the request to expedite this appeal.

Respectfully submitted,


*s/Stephen F. Rosenthal*
Stephen F. Rosenthal, Esq.
Florida Bar No. 0131458


| | | |
|---|---|---|
| Stephen F. Rosenthal | Bruce S. Rogow | David M. Buckner |
| Aaron S. Podhurst | Bruce S. Rogow, P.A. | Stuart Z. Grossman |
| Robert C. Josefsberg | Broward Financial Ctr. | Robert C. Gilbert |
| Steven C. Marks | 500 E. Broward Blvd. | Seth E. Miles |
| Peter Prieto | Suite 1930 | Grossman Roth, P.A. |
| John Gravante | Ft. Lauderdale, FL 33394 | 2525 Ponce de Leon Blvd. |
| Matthew Weinshall | Tel.: (954) 767-8909 | Suite 1150 |
| Podhurst Orseck, P.A. | | Coral Gables, Florida |
| 25 W. Flagler St. – Ste. 800 | | 33134 |
| Miami, FL 33130 | | Tel.: (305) 442-8666 |
| Tel.: (305) 358-2800 | | |


Jonathan M. Streisfeld
Jeffrey M. Ostrow
Kopelowitz Ostrow Ferguson Weiselberg Keechl
200 S.W. First Avenue, 12th Floor
Fort Lauderdale, Florida  33301
Tel:  (954) 525-4100

**Counsel for Appellees**

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified below either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Eric Jon Taylor, Esq.
ejt@phrd.com
William J. Holley, II, Esq.
wjh@phrd.com
David B. Darden, Esq.
dbd@phrd.com
Darren E. Gaynor, Esq.
deg@phrd.com

Parker Hudson, Rainer & Dobbs LLP
1500 Marquis Two Tower
285 Peachtree Center Ave., N.E.
Atlanta, Georgia  30303


*s/Stephen F. Rosenthal*
Stephen F. Rosenthal, Esq.
Florida Bar No. 0131458