**United States District Court**
**Southern District of Florida**
**Miami Division**
**Case No. 1:09-MD-02036-JLK**

| | |
|---|---|
| IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION<br><br>MDL No. 2036<br><br>THIS DOCUMENT RELATES TO:<br>SECOND TRANCHE ACTION<br><br>*Given v. Manufacturers and Traders Trust Company a/k/a M&T Bank*<br>S.D. Fla. Case No.: 1-10-cv-20478-JLK | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**M&T BANK'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR RECONSIDERATION OF THE COURT'S ORDER
DEFERRING RULING ON M&T BANK'S SECOND RENEWED MOTION TO
COMPEL ARBITRATION AND GRANTING TIME TO CONDUCT
<u>ARBITRATION-RELATED DISCOVERY</u>**

M&T Bank, through its undersigned counsel, submits this reply in support of its motion for reconsideration (the "Motion"). (ECF No. 2670).

## ARGUMENT

**I.    Discovery is not permitted under the Eleventh Circuit's narrow remand in this case.**

M&T Bank established in its Motion that discovery is not permitted under the Eleventh Circuit's remand. Given ignores this issue in her opposition. (ECF No. 2700).

The Eleventh Circuit remanded this case for the very narrow purpose of permitting this Court to reconsider its prior finding that Given's arbitration agreement is unconscionable (ECF No. 447), in light of AT&T Mobility LLC v. Concepcion, ___ U.S. ___, 131 S. Ct. 1740 (2011). The Eleventh Circuit did not authorize discovery on remand. In Re: Checking Account Overdraft Litig., 674 F.3d 1252, 1257 (11th Cir. 2012) (per curiam).[1] Given did not request that the Eleventh Circuit permit discovery on remand, and Given did not cross-appeal this Court's prior decision denying arbitration-related discovery.

The Eleventh Circuit's remand in this case, which distinguishes this case from the other cases in which this Court has permitted arbitration-related discovery, stands in stark contrast to the remand in Larsen v. J.P. Morgan Chase Bank, N.A., 438 Fed. Appx. 894, 895 (11th Cir. 2011) (per curiam) (unpublished), where the Court of Appeals authorized limited discovery "bearing significantly on the arbitrability of [the] dispute." Had the Eleventh Circuit intended to permit arbitration-related discovery in this case, it would have provided for such discovery in its remand, as it did in Larsen. It did not do so.[2]

In short, there is no evidence that the Eleventh Circuit intended to permit discovery on remand, and Given has cited no law permitting an expansion of the remand to accommodate her discovery requests. United States v. Tamayo, 80 F.3d 1514, 1520 (11th Cir. 1996) ("Our settled circuit law obligates a district court to follow our mandates . . . and not to assert jurisdiction over matters outside the scope of a limited mandate, which constitutes an abuse of discretion. …

---

[1] Internal citations and quotations are omitted from this reply unless otherwise noted.

[2] Further, contrary to Given's suggestion (Given Opp. at 3), the discovery contemplated by the Eleventh Circuit in Larsen had nothing to do with evaluating unconscionability in light of Concepcion. The plaintiffs in Larsen asked the Court of Appeals for discovery relating primarily to waiver issues, not unconscionability. Brief for Appellees, 2010 WL 5064889 (Sep. 17, 2010).

[A]n appellate vacation of judgment for consideration in light of a particular decision is much more limited than a general vacation . . ..").

Moreover, no discovery is necessary here. The sole question presently before this Court is whether its prior finding that the arbitration agreement is unconscionable is impacted in any way by the holding in Concepcion. That presents an issue of law that does not warrant or require discovery. Given has not identified any specific aspect of Concepcion that, she believes, requires arbitration-related discovery in this case for the first time on this second remand.[3]

This Court recognized that a reconsideration under Concepcion does not justify discovery when it denied Given's request for discovery following the first remand in this and other cases (ECF No. 1767), and then denied the renewed motions to compel arbitration filed by M&T Bank and other banks (ECF No. 1853). In other words, this Court has already determined that it may appropriately reconsider its unconscionability findings in light of Concepcion without needless and burdensome discovery.

Accordingly, contrary to Given's argument, her motion for arbitration-related discovery is anything but "straightforward," and the circumstances of this case are not at all similar to those of the other cases where this Court has allowed some arbitration-related discovery. (Given Opp. at 1, 3). Given is inviting this Court to violate the Eleventh Circuit's mandate.

**II.     This Court should deny Given's request for discovery even assuming, arguendo, that the Eleventh Circuit had permitted discovery in its remand.**

Given's discovery would be improper even if the Eleventh Circuit had authorized discovery on remand. Her proposed discovery does not fall within the narrow mandate to reconsider the arbitration agreement's alleged unconscionability in light of Concepcion.

**A.     Given should not be permitted to attempt to discover evidence of the arbitration agreement's alleged exculpatory effect.**

Much of Given's requested discovery seeks information related to prior disputes between M&T Bank and customers other than Given, in an attempt to show that the arbitration agreement's class action waiver and other provisions allegedly exculpate M&T Bank from liability for small-dollar claims. (See Given Opp. at 10: "The combined effect of M&T's provisions is to unfairly exculpate M&T for its misconduct, by preventing any individual

---

[3] To the contrary, Given previously argued that Concepcion had no impact on Maryland law. (ECF No. 1686 at 3: "Concepcion did not change Maryland law.").

2

customer from seeking redress for small value damages."). Given's "exculpation" argument has no basis in law, and, accordingly, her proposed discovery into the alleged exculpatory effect of the arbitration agreement has no legal basis.

In Concepcion, 131 S. Ct. 1740, the Supreme Court rejected this very same exculpation argument as a basis for invalidating an arbitration agreement. The majority stated: "The dissent claims that class proceedings are necessary to prosecute small-dollar claims that might otherwise slip through the legal system. But States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." Id. at 1753 (emphasis added).

Given ignores entirely this aspect of Concepcion in her opposition. Instead, she argues that the holding in Concepcion was driven by the particular features of the AT&T arbitration agreement at issue therein, which she claims were more consumer friendly than her arbitration agreement with M&T Bank.[4] (Given Opp. at 9-10).

In fact, Concepcion is not limited to the specific terms of the AT&T arbitration agreement.[5] Justice Scalia did not mention those terms in his analysis until the very end of the opinion, long after stating the holding that the FAA preempts State law that seeks to invalidate an arbitration agreement due to the inclusion of a class action waiver. 131 S. Ct. at 1748, 1753. The Court's holding was based on the inherent conflict between the FAA's purposes and State

---

[4] Given also argues that "Concepcion does not preclude class action waivers from being considered in determining the unconscionability of other terms." (Given Opp. at 9). Given simply ignores this Court's prior holding that, "Concepcion has changed everything, in that class action waivers have historically been a major factor in the unconscionability analysis under state law, and now, they can no longer be considered." (ECF No. 1853 at 10). This is so "even if, as a practical matter, the class action waiver has a 'claim-suppressing effect.'" (Id. at 6).

[5] Given tries to distinguish the AT&T arbitration agreement in Concepcion from her arbitration agreement by arguing that M&T Bank may recover its legal fees even if it does not prevail in arbitration. (Given Opp. at 10). This is false. The specific attorneys' fees provision in the arbitration agreement permits M&T Bank to recover its fees if -- and only if -- it prevails in arbitration, just as Given may recover her fees if she prevails. (ECF No. 2645-2 at 14 of 28). That specific provision takes precedence over the general attorneys' fees provision contained outside the arbitration agreement, and which makes no mention of arbitration. (Id. at 9 of 28). Heist v. Eastern Savings Bank, FSB, 884 A.2d 1224, 1228 (Md. Ct. Spec. App. 2005) ("[w]here two clauses or parts of a written agreement are apparently in conflict, and one is general in character and the other is specific, the specific stipulation will take precedence over the general, and control it"). Interpreting these provisions raises a question of law for this Court; no discovery is needed. Ocean Petroleum Co., Inc. v. Yanek, 5 A.3d 683, 690 (Md. 2010).

law requiring the availability of class actions. Id. at 1748-52. The particular terms of an arbitration agreement cannot remove that conflict.

Similarly, nothing in Concepcion indicates that a State can invalidate an arbitration agreement based on the inclusion of a class action waiver if the plaintiff produces evidence of an exculpatory effect on small-dollar claims. Given's argument about exculpation was the basic premise of California's Discover Bank doctrine that was rejected in Concepcion. 131 S. Ct. at 1746. The majority found this doctrine to be inconsistent with, and thus preempted by, the FAA, notwithstanding the dissent's concerns about an exculpatory effect on small-dollar claims.[6]

In Cruz v. Cingular Wireless, LLC, 648 F.3d 1205 (11th Cir. 2011), a case not mentioned by Given in her opposition, the Eleventh Circuit applied Concepcion and dismissed the "exculpation" argument as a basis for finding an arbitration agreement unconscionable. The Court in Cruz rejected the plaintiffs' argument that a factual record of exculpation would justify invalidating an arbitration agreement:

> [W]e believe that faithful adherence to Concepcion requires the rejection of the Plaintiffs' argument. The Plaintiffs' evidence [of an exculpatory effect] goes only to substantiating the very public policy arguments that were expressly rejected by the Supreme Court in Concepcion -- namely, that the class action waiver will be exculpatory, because most of these small-value claims will go undetected and unprosecuted.

Id. at 1213-14.

In Doyle v. Finance America, LLC, 918 A.2d 1266, 1276 (Md. Ct. Spec. App. 2007), the Maryland appellate court also rejected Given's argument:

---

[6] In her attempt to develop a record of alleged exculpation, Given argues that she should be permitted discovery related to the arbitration agreement's prevailing party provision and the common law set-off rights recognized in the account agreement (mischaracterized by Given as the ability to "unilaterally seize" funds). (Given Opp. at 11). The Eleventh Circuit recently rejected nearly identical arguments made under Georgia law by other plaintiffs in this MDL. In Re: Checking Account Overdraft Litig., 2012 WL 660974 (11th Cir. Mar. 1 2012) (per curiam) (unpublished) (SunTrust Bank); In Re: Checking Account Overdraft Litig., 672 F.3d 1224 (11th Cir. 2012) (per curiam) (Regions Bank). See also Marsh v. Loffler Housing Corp., 648 A.2d 1081, 1085 (Md. Ct. Spec. App. 1994) ("An arbitration award . . . may lawfully include an award of attorneys' fees if the underlying agreement between the parties so provides."); Mercantile-Safe Deposit and Trust Co. v. Delp and Chapel Concrete and Const. Co., 408 A.2d 1043, 1049 (Md. Ct. Spec. App. 1979), cert. denied 287 Md. 751 (Md. 1980) (banks have "a right to set off matured debts of a depositor against the depositor's checking account").

> Appellants argue that the Agreement is nothing more than a thinly veiled exculpatory agreement that denies consumers access to the courts . . . . This argument is, in essence, nothing more than a policy-based assault on the shortcomings of arbitration. Déjà vu.
>
> \*\*\*
>
> We are keenly aware of the opposition to arbitration agreements taken by consumers and consumer-advocates. Nonetheless, arbitration agreements enjoy "favored" status in Maryland. ... The law on this issue is clear, leaving us with nothing to decipher. We shall not entertain a debate that should be directed to the General Assembly.

Accordingly, this Court should not permit discovery intended to show the arbitration agreement's alleged exculpatory effect. An invalid legal theory does not provide a basis for discovery.

### B.   Contract formation does <u>not</u> remain a viable topic of inquiry.

Given argues that whether there was a contract formed between herself and M&T Bank is an issue in this case, and, therefore, she should be permitted to conduct discovery on the topic. (Given Opp. at 7-8). She argues that this is so because she previously argued that the account agreement is illusory, or lacked consideration. (<u>Id.</u>). Given's contention is simply wrong.

The Eleventh Circuit directed this Court on remand to reconsider its unconscionability finding in light of <u>Concepcion</u>, only. It did not remand for further consideration of Given's lack-of-consideration argument, or any other issue relating to contract formation or validity. <u>In Re: Checking Account</u>, 674 F.3d at 1257. Thus, contract-formation issues are off the table.

Additionally, because the Eleventh Circuit <u>enforced</u> the delegation provision within the arbitration agreement, it necessarily rejected Given's lack-of-consideration argument. <u>In Re: Checking Account</u>, 674 F.3d at 1257. Had the Eleventh Circuit been persuaded by Given's argument, it would not have instructed this Court to compel arbitration if it concludes on remand that the agreement is not unconscionable. <u>Id.</u> This is the law of the case; it cannot be re-opened or re-examined on remand.

Recognizing this problem, Given attempts to shoehorn her lack-of-consideration argument into the Eleventh Circuit's narrow mandate. Specifically, she now argues for the first time that under <u>Walther v. Sovereign Bank</u>, 872 A.2d 735 (Md. 2005), and <u>Cheek v. United Healthcare of Mid-Atlantic, Inc.</u>, 835 A.2d 656 (Md. 2003), her lack-of-consideration argument is actually an unconscionability argument. (Given Opp. at 8).

5

Given has never before argued that the account agreement's alleged lack of consideration constitutes a basis for finding the arbitration agreement unconscionable. She previously argued just the opposite: "Apart from its unconscionability . . . M&T's arbitration agreement cannot be enforced under Maryland law because it is not supported by adequate consideration. (ECF No. 1686 at 19) (emphasis added). Thus, Given has waived this newly-found unconscionability argument. Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193, 203 (3d Cir. 2004) ("We have consistently rejected such attempts to litigate on remand issues that were not raised in a party's prior appeal and that were not explicitly or implicitly remanded for further proceedings . . . .").

Moreover, Given's current argument is wrong as a matter of law. Unconscionability and consideration are separate concepts under Maryland law. In Cheek, 835 A.2d 656, the Court analyzed the validity of an arbitration agreement by examining whether it lacked consideration, without mentioning Maryland's unconscionability doctrine. Similarly, in Walther, 872 A.2d 735, the Court did not hold that a contract lacking in consideration qualifies as an unconscionable contract. Given's attempt to conflate these two principles should be rejected.

Further, because Concepcion did not address lack-of-consideration issues, Given's argument cannot be raised on remand for the first time even if it arguably related to unconscionability. See, e.g., Kotler v. American Tobacco Co., 981 F.2d 7, 12-14 (1st Cir. 1992) (upon remand from the Supreme Court for "further consideration" in light of new case law, the Court refused to revisit an issue unrelated to the new case law, because it was obligated to confine its analysis to the "narrow" and "specific" mandate); Escalera v. Coombe, 852 F.2d 45, 47 (2d Cir. 1988) (per curiam) (upon remand from the Supreme Court for "reconsideration" in light of new case law, the Court would not "reconsider any issues that are not directly implicated" by the new case law).

Accordingly, this Court should deny all discovery related to contract-formation issues.[7]

### C. The non-monetary relief clause in the arbitration agreement is not an appropriate basis for discovery.

Given argues that she may engage in discovery related to the non-monetary relief clause that is included within the arbitration agreement, because she claims that it is substantively

---

[7] Likewise, there is no basis for permitting discovery related to any waiver. (Given Opp. at 7-8). Given conceded on appeal that M&T Bank did not waive its arbitration rights. See In Re: Checking Account, 674 F.3d at 1257 fn. 1.

6

unconscionable.[8] (Given Opp. at 4). She argues that this clause lacks mutuality and is one-sided, allegedly "because in practical effect only the bank depositor, not the Bank, will be seeking injunctive or other non-monetary relief and the bank desires to have those claims decided by a court, not an arbitrator." (Id.).

This is another new argument concocted to avoid the narrow remand in this case. <u>Given has never previously argued that the non-monetary relief clause is unconscionable.</u> She has waived that argument, and, therefore, should not be permitted to pursue discovery related to it.

Further, Given's argument would fail to provide a basis for discovery even if she had not waived it. The clause is plainly not one-sided or unconscionable. It is available to and can benefit both parties. No discovery is needed to resolve this issue. <u>Freedman v. Comcast Corp.</u>, 988 A.2d 68, 87-88 (Md. Ct. Spec. App. 2010), <u>cert. denied</u>, 997 A.2d 790 (Md. 2010) (consumer arbitration agreement entitling the prevailing party to recover its attorneys' fees in the event an arbitration award exceeding $75,000 was overturned on appeal was not unconscionable, because it applied to both parties and was "fair on its face"); <u>Walther</u>, 872 A.2d at 748 ("Mutuality . . . does not require an exactly even exchange of identical rights and obligations between the two contracting parties . . . .").

Moreover, Given is judicially estopped from attacking the non-monetary relief clause as unconscionable. In <u>Stephens v. Tolbert</u>, 471 F.3d 1173, 1177 (11th Cir. 2006), the Court identified three primary factors for assessing judicial estoppel: "(1) whether a later position asserted by a party was clearly inconsistent with an earlier position; (2) whether a party succeeded in persuading a court to accept an earlier position . . .; and (3) whether the party with an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." All three factors are satisfied here.

First, Given has taken clearly inconsistent positions with respect to the non-monetary relief clause. Previously, she argued to this Court that the clause was enforceable (not unconscionable) and operated to exclude her claims from arbitration. (<u>See</u> ECF No. 1686 at 16-19). Now, she argues that the same clause is unconscionable and unenforceable.

---

[8] That clause states: "If any part of the relief request is not expressly stated as a dollar amount, the dispute or controversy will not be a Claim that is subject to arbitration." (ECF No. 2645-2 at 14 of 28).

Second, Given succeeded in persuading this Court that the non-monetary relief clause was enforceable, and this Court applied it as the basis for denying M&T Bank's first renewed motion to compel arbitration. (See ECF No. 1853 at 23-24).

Third, Given seeks to impose an unfair detriment on M&T Bank by taking these inconsistent positions, in the form of burdensome (and needless) discovery that otherwise would not be possible.

Finally, because Concepcion did not address issues of mutuality, considering this issue on remand would violate the Eleventh Circuit's remand. Kotler, 981 F.2d at 12-14.

Accordingly, this Court should deny discovery related to the non-monetary relief clause.

### D.   M&T Bank's agreements and correspondence with Given, with other customers, and with arbitration forums are irrelevant.

#### 1.   Agreements and correspondence with Given.

M&T Bank established in its Motion (pp. 6-9) that the only document relevant for evaluating whether Given's arbitration agreement is unconscionable is the arbitration agreement that she attached to her Complaint.

Given argues that she is entitled to discover, in essence, any other document provided to her by M&T Bank because these additional documents are purportedly "relevant to the issue of procedural unconscionability," including whether M&T Bank had "overwhelming bargaining strength," whether the terms of the arbitration agreement were explained to her, and whether M&T Bank would have permitted revisions to the arbitration agreement. (Given Opp. at 5). Given's argument is meritless.

No discovery is needed for this Court to assess procedural unconscionability issues under Maryland law. Indeed, this Court has already done so on two occasions in this case. (ECF Nos. 447 & 1853). Any documents provided to Given by M&T Bank would already be in her possession; she has not alleged anything to the contrary. See Meyer v. T-Mobile USA Inc., ___ F. Supp.2d ___, 2011 WL 4434810 at *10 (N.D. Cal. Sep. 23, 2011) (denying discovery of documents because they were "already accessible" by the plaintiff).

In this case, Given has conceded that the applicable arbitration agreement is the one included in the account agreement that is attached to her Complaint -- the same agreement that she alleges to be the controlling agreement in this litigation, and which she has used as the basis for her alleged breach of contract claim. There is no other relevant agreement or document for

8

purposes of compelling arbitration, and thus her request for discovery is improper. Richardson v. Virgin Islands Port Authority, 2010 WL 1641154 at *10 (D. Virgin Is. Apr. 21, 2010) (compelling arbitration and denying the plaintiff's request for discovery because "Plaintiff and Defendant have produced copies of the signed Management Agreement, which contains an unambiguous provision to arbitrate."); Rampersad v. Primeco Personal Communications, L.P., 2001 WL 34872572 at *1 (S.D. Fla. Oct. 16, 2001) (a plaintiff "cannot claim the contract was not formed to avoid arbitration and concurrently sue for breach of that contract").[9]

Further, the discovery sought by Given is not tailored to seek information related to the alleged procedural unconscionability. There is, for example, not a single inquiry about "bargaining strength," even assuming, arguendo, that discovery were needed for this Court to resolve that issue. Given seeks much, much more, such as "all manuals, policies, training or practice materials, and other Documents, including electronic Documents and computer hosted protocols (such as "status-mart," "teamworks," or any equivalent programs) that summarize, describe, or otherwise relate to the procedures that were used (or were supposed to be used) in connection with the opening of Consumer Accounts." (ECF No. 2655-2, Doc. Req. 19). This request, and many like it, extends far beyond limited "arbitration-related" discovery.

### 2. Agreements and correspondence with other bank customers.

Given has no coherent justification for seeking discovery related to M&T Bank's relationship with other customers. She argues that "the Bank's communications regarding all agreements, not just the account agreement attached to the complaint, will tend to evidence whether the Bank would have permitted alterations to the printed terms" (Given Opp. at 6), but does not state how communications related to other agreements with other customers have any bearing on Given's agreement.

The only issue here is whether Given's arbitration agreement is unconscionable in light of Concepcion. Discovery related to other customers' relationships with M&T Bank is irrelevant to that issue. Thus, in Newton v. Clearwire Corp., 2011 WL 4458971 at *7 (E.D. Cal. Sep. 23, 2011), a case cited by Given, the Court denied the plaintiff's broad request for "any and all documents that relate to the policies and procedures [the defendant] has implemented or

---

[9] Given speculates that discovery may uncover potential "other agreements" with M&T Bank. (Given Opp. at 6). Given's admission that the account agreement attached to her Complaint is the controlling agreement for this litigation precludes that contemplated fishing expedition.

9

followed regarding any arbitration provision found in any alleged Terms of Service." The plaintiff in Newton failed to show how this request was "relevant to her contention that the arbitration clause at issue produces overly harsh or one-sided results." Id. See also Meyer, 2011 WL 4434810 at *10 (denying the plaintiff's request for discovery concerning agreements and disputes with persons other than the plaintiff, because "the only arbitration agreement at issue is the 2008 agreement" between the plaintiff and the defendant).[10]

### 3.   Correspondence with arbitration forums.

Lastly, there is no basis for discovery with respect to M&T Bank's alleged communications with the AAA, NAF, or JAMS. Such correspondence has no conceivable relevance to procedural or substantive unconscionability under Maryland law. Walther, 872 A.2d at 744 (procedural unconscionability examines issues of contract formation; substantive unconscionability examines the terms of the contract). Given's asserted justification for seeking this discovery -- to understand M&T Bank's "overall approach to and handling of arbitration" (Given Opp. at 7) -- has nothing to do with the alleged unconscionability of Given's arbitration agreement. Chen-Oster v. Goldman, Sachs & Co., 2011 WL 803101 at *1 (S.D.N.Y. Mar. 1, 2011) (denying the plaintiff's request to conduct discovery into the defendant's "custom and practice regarding arbitration").[11]

## CONCLUSION

This Court should reconsider its Order permitting arbitration-related discovery.

---

[10] Given attempts to distinguish Meyer primarily by arguing that the agreement in that case included an opt-out provision (Given Opp. at 6), but that is irrelevant. Given has not shown how the lack of an opt-out provision in her agreement somehow justifies her request for discovery into other agreements with other persons.

[11] Further, in Clemins v. GE Money Bank, 2011 WL 6148676 at *2 (E.D. Wis. Dec. 8, 2011), the Court squarely denied the plaintiffs' request to conduct discovery concerning the defendants' relationship with AAA, NAF, and JAMS, because the plaintiffs (like Given here) presented no evidence of an "inappropriate relationship." Given attempts to distinguish Clemins by arguing that it "related only to the issue of costs." (Given Opp. at 7). That is false. The plaintiffs in Clemins sought discovery concerning the defendant's relationship with the arbitration forums, as Given does here, and the Court properly denied that discovery. See also Livingston v. Associates Finance, Inc., 2001 WL 709465 at *3 (N.D. Ill. Jun. 25, 2001) (rejecting the plaintiff's attempt to conduct discovery into the potential biases of AAA, despite the plaintiff's argument that AAA favored corporate parties).

10

Date:  May 29, 2012                      Respectfully submitted,

             *s/ James A. Dunbar*
        James A. Dunbar (admitted *pro hac vice*)
        Matthew R. Alsip (admitted *pro hac vice*)
        Venable LLP
        210 West Pennsylvania Avenue, Suite 500
        Towson, Maryland 21204
        410-494-6200 (telephone)
        410-821-0147 (facsimile)
        jadunbar@venable.com
        mralsip@venable.com

        John T. Prisbe (admitted *pro hac vice*)
        Venable LLP
        750 East Pratt Street, Suite 900
        Baltimore, Maryland 21202
        410-244-7400 (telephone)
        410-244-7742 (facsimile)
        jtprisbe@venable.com

        *Counsel for Manufacturers and Traders*
        *Trust Company a/k/a M&T Bank*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 29th day of May, 2012, I filed a copy of M&T Bank's foregoing reply memorandum using this Court's CM/ECF system.

             *s/ Matthew R. Alsip*
        Matthew R. Alsip

311939/6

11