UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Given v. Manufacturers and Traders Trust Company a/k/a/ M&T Bank*
No. 1:10-CV-20478-JLK

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND INCORPORATED MEMORANDUM OF LAW

Plaintiff Maxine Given ("Plaintiff" or "Ms. Given"), pursuant to Rule 37 of the Federal Rules of Civil Procedure, hereby moves the Court to compel Defendant Manufacturers and Traders Trust Company a/k/a/ M&T Bank ("Defendant" or "M&T") to respond to Plaintiff's interrogatories and requests for production of documents as previously ordered by the Court.

### INTRODUCTION

Defendant has again attempted to delay these proceedings. In accordance with this Court's April 26, 2012 Order mandating 90 days to conduct arbitration-related discovery, Ms. Given attempted to obtain relevant and essential information authorized by the Court. However, Defendant has refused to participate in discovery whatsoever. In fact, in response to Ms. Given's arbitration-related discovery, Defendant has asserted nothing more than boilerplate and categorical objections without providing even a single document or identifying one relevant fact.

Defendant's utter failure to respond in any substantive manner to Ms. Given's discovery requests is improper, particularly in the face of the Court's previous order to participate in such discovery. Indeed, the Court explicitly stated that the "limited arbitration related discovery is appropriate" and "is reasonable and useful in building a complete record essential to determining whether M&T's arbitration provision is unconscionable under Maryland law." *See* April 26th

Order, p. 1 **[DE # 2661]** (the "Discovery Order"). Nor were Ms. Given's requests for arbitration-related discovery unreasonable given that "[t]he discovery sought here is identical in most respects to the limited arbitration-related discovery permitted under this Court's Orders under similar circumstances." *Id.*

Defendant's refusal to participate in any discovery relating to arbitration has made it impossible for Ms. Given to adequately brief the issue remanded to the Court – whether Defendant's arbitration provision is unconscionable under Maryland law. Accordingly, Defendant must be compelled to provide substantive answers to Ms. Given's discovery requests in a timely manner. Further, Ms. Given respectfully asks that the Court sanction Defendant for failing to participate in discovery and forcing Ms. Given to bring this motion.

## PROCEDURAL HISTORY

This motion stems from the Eleventh Circuit's remand of proceedings to determine whether Defendant's arbitration provision is unconscionable under Maryland law. *See In re Checking Account Overdraft Litig.*, 674 F.3d 1252 (11th Cir. 2012). Defendant subsequently filed a renewed motion to compel arbitration (the "Arbitration Motion") on April 20, 2012. **[DE # 2645]**. On April 25, 2012, Ms. Given moved that the Court defer ruling and permit limited discovery related to the issue of unconscionability. **[DE # 2655]**. The Court promptly granted Ms. Given's motion and ordered the Parties to conduct limited discovery related to whether Defendant's arbitration provision was unconscionable under Maryland law. *See* Discovery Order.

The very next day, April 26, 2012, Ms. Given served discovery requests, including interrogatories, requests for admissions, requests for production of documents and a Rule 30(b)(6) deposition notice. Defendant responded on May 29, 2012. In its responses, Defendant did not provide any documents or respond to any interrogatories with substantive facts. Instead, Defendant objected to each and every interrogatory or request for production with boiler plate objections. *See generally* Resp. to Interrogatories (Exh. A hereto); Resp. to Req. Prod. (Exh. B hereto). Plaintiff's counsel alerted M&T that the non-responses were insufficient and a lengthy meet and confer telephone call was held on June 4, 2012. M&T did not agree to produce any further interrogatory responses or documents. In light of Defendant's abject refusal to meaningfully participate in the discovery process as ordered by the Court, Ms. Given hereby moves to compel discovery.

2

**ARGUMENT AND CITATION TO AUTHORITY**

Rule 26 establishes a broad scope for civil discovery. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevancy is "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). As this Court has observed, the liberal discovery rules under which a party must produce all relevant information are tempered by the requirement that the inquiry be material to the claims for relief. **[DE # 1016]**. Here, the discovery that Defendant has failed to respond to is clearly material to the Arbitration Motion as each of the requests relate to the topics of permissible arbitration-related discovery set forth in the Court's Discovery Order.

"Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court." *Edwards v. Howmedica Osteonics Corp.*, 2011 U.S. Dist. LEXIS 82729, at *3 (M.D. Fla. July 28, 2011) (citing *Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984)). "The trial court's exercise of discretion regarding discovery orders will be sustained absent a finding of abuse of that discretion to the prejudice of a party." *Id.* (citing *Westrope*, 730 F.2d at 731). "The party opposing a motion to compel has the burden to show that the discovery is improper, unreasonable, or burdensome." *Belaire at Boca, LLC v. Associations Ins. Agency, Inc.*, 2007 U.S. Dist. LEXIS 54099 (S.D. Fla. July 24, 2007) (citing *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985)). "When opposing the motion, a party must show specifically how the requested discovery is burdensome, overbroad, or oppressive by submitting detailed affidavits or other evidence establishing the undue burden." *Id.* "The resisting party must make a particular and specific demonstration of fact and cannot rely on simply conclusory assertions about the difficulty of complying with a discovery request." *Id.* (internal quotation marks and citation omitted).

Here, Defendant will not be able to demonstrate how and why Ms. Given's discovery is improper (which it is not). Not only is Ms. Given's discovery "reasonable and useful in building a complete record essential to determining whether M&T's arbitration provision is unconscionable under Maryland law," but the Court has already specifically ordered that Defendant respond to Ms. Given's discovery as currently worded. *See* Discovery Order, p. 2

**[DE # 2661]**.  Therefore, Defendant should be compelled to respond to Ms. Given's arbitration-related discovery.

I.      **Defendant's Boilerplate Objections to Plaintiff's Discovery Are Improper.**

Ms. Given served 27 requests for production of documents upon Defendant.  These requests, which read as follows, were approved by the Court in the Discovery Order.

REQUEST NO. 1:  Produce all Documents that discuss or reflect the number of disputes involving Consumer Accounts submitted to or decided by arbitration.

REQUEST NO. 2:  Produce Documents sufficient to show the initial demands made in all disputes involving Consumer Accounts submitted to or decided by arbitration.

REQUEST NO. 3:  Produce Documents sufficient to show the results of all disputes involving Consumer Accounts submitted to or decided by arbitration.

REQUEST NO. 4:  Produce all Documents that discuss or reflect the number of disputes involving Consumer Accounts that relate to overdraft fees submitted to or decided by arbitration, the results of any arbitration proceedings, and/or whether the Consumer had a lawyer or an expert participate in the arbitration proceeding.

REQUEST NO. 5:  Produce all Documents regarding any analysis or evaluation of the arbitration of disputes involving Consumer Accounts.

REQUEST NO. 6:  Produce all Documents that reflect or discuss the actual involvement of or likelihood of appearances by lawyers retained by Consumers in arbitrations involving Consumer Accounts.

REQUEST NO. 7:  Produce all Documents that reflect or discuss the actual involvement of or likelihood of appearances by expert witnesses retained by Consumers in arbitrations involving Consumer Accounts.

REQUEST NO. 8:  Produce all requests for discovery propounded upon You in any arbitration proceeding involving a Consumer Account(s) and Your response(s) thereto.

REQUEST NO. 9:  Produce all Documents and Communications from You seeking attorneys' fees and/or costs from Consumers as a result of or after arbitration involving a Consumer Account(s).

REQUEST NO. 10:  Produce Documents sufficient to show the total amount of overdraft fees refunded to Consumers by You as a result of or after arbitration involving a Consumer Account(s).

4

REQUEST NO. 11:  Produce all Documents pertaining to the one hundred (100) most recent arbitrations involving a Consumer Account(s), including all pleadings, Communications, notices, awards, orders and judgments.

REQUEST NO. 12:  Produce all Documents that contain any public statements or Communications by You (excluding account agreements) regarding the arbitration of disputes involving Consumer Accounts.

REQUEST NO. 13:  Produce all Documents that discuss or reflect the number of overdraft-fee-related complaints that You have received relating to a Consumer Account(s) and the resolution or disposition of those complaints.

REQUEST NO. 14:  Produce all Documents that You have either sent to or received from the American Arbitration Association ("AAA") that discuss the number of or result(s) of arbitrations involving Consumer Accounts, the number of overdraft-fee-related arbitrations conducted by AAA, or the circumstances under which You will or will not arbitrate a dispute with a Consumer.

REQUEST NO. 15:  Produce all Documents that You have either sent to or received from the National Arbitration Forum ("NAF") that discuss the number of or result(s) of arbitrations involving Consumer Accounts, the number of overdraft-fee-related arbitrations conducted by NAF, or the circumstances under which You will or will not arbitrate a dispute with a Consumer.

REQUEST NO. 16:  Produce all Documents that You have either sent to or received from Judicial Arbitration and Mediation Services, Inc. ("JAMS") that discuss the number of or result(s) of arbitrations involving Consumer Accounts, the number of overdraft-fee-related arbitrations conducted by JAMS, or the circumstances under which You will or will not arbitrate a dispute with a Consumer.

REQUEST NO. 17:  Produce all Documents and Communications that discuss the settlement agreement(s) resulting from the litigation styled Ross v. Bank of America, N.A., et al., No. 05-cv-7116 (S.D.N.Y.).

REQUEST NO. 18:  Produce all Documents regarding any meetings, Communications, or discussions You or Your affiliates have had with any other financial institution(s) regarding consumer arbitration, including any agreements or understandings that resulted from such meetings, Communications, or discussions.

REQUEST NO. 19:  Produce all manuals, policies, training or practice materials, and other Documents, including electronic Documents and computer hosted protocols (such as "status-mart," "teamworks," or any equivalent programs) that summarize, describe, or otherwise relate to the procedures that were used (or were supposed to be used) in connection with the opening of Consumer Accounts.

REQUEST NO. 20:  Produce all Documents You relied upon in responding to Plaintiff's Arbitration-Related Interrogatories dated February 27, 2012.

REQUEST NO. 21:  Produce all Documents You relied upon in denying any of Plaintiff's Arbitration-Related Requests for Admission dated February 27, 2012.

REQUEST NO. 22:  Produce all Documents You contend were provided to Plaintiff at the time she signed up for an account with the Bank.

REQUEST NO. 23:  Produce all account statements or other forms of written communications between You and the named Plaintiff in this matter.

REQUEST NO. 24:  Produce all Documents that You contend constituted your customer agreements or account agreements since 2003.

REQUEST NO. 25:  Produce all Documents You contend were provided to Plaintiff regarding any changes in terms to your customer agreement, whether in the form or mailers, notices, or otherwise, since 2003.

REQUEST NO. 26:  Produce all Documents You rely upon in support of Your motion to compel arbitration and in support of any declarations filed in support of that motion.

REQUEST NO. 27:  Produce all Documents referring or relating to the following phrase in the arbitration clause: "If any part of the relief request is not expressly stated not expressly stated as a dollar amount, the dispute or controversy will not be a Claim that is subject to arbitration" (hereinafter, the "non-monetary relief clause"), including but not limited to the following:

    a.    All Documents relating to the adoption and inclusion of such clause in the arbitration agreement;

    b.    All memos or other Documents discussing the pros and cons of such clause at the time it was being considered, and at any time thereafter;

    c.    All Documents showing how the Bank interpreted the non-monetary relief clause, whether internally or to third parties;

  d.  All Documents regarding occasions where a Consumer has sought non-monetary relief through arbitration and the Bank either considered invoking or did invoke the non-monetary relief clause to avoid arbitration, including but not limited to any pleadings or related documents analyzing that issue;

  e.  All Documents regarding occasions where the Bank has sought non-monetary relief from a Consumer in court or in arbitration since Your adoption of the non-monetary relief clause;

  f.  All memos, studies, reports and other documents regarding the effectiveness of the non-monetary relief clause in achieving its goals;

  g.  All Documents showing any changes in the non-monetary relief clause since its initial adoption.

In response to these requests for production, Defendant did not produce a single document, nor a privilege log. Instead, Defendant responded to each request for production with the following objection in a nearly uniform manner:

> Objection. The Eleventh Circuit's remand does not permit discovery in this case. Even if it did permit discovery, this request seeks irrelevant information, is not reasonably calculated to lead to the discovery of admissible evidence, and is overly broad. The only relevant question at this stage of the action is whether the arbitration agreement between Plaintiff and M&T Bank is unconscionable in light of <u>Concepcion</u>. The documents sought in this request concerning prior arbitration proceedings have no relevance to that question. <u>Cruz v. Cingular Wireless, LLC</u>, 648 F.3d 1205 (11th Cir. 2011).
>
>   Further, this request is overly broad and seeks to impose undue burden on M&T Bank. This case involves a dispute about NSF fees related to Plaintiff's checking account. This request, however, seeks all documents and ESI that "reflect" the number of prior arbitration proceedings involving <u>any</u> type of dispute with respect to <u>any</u> type of consumer account. <u>See</u> Local Discovery Practices Handbook, § III(A)(1)("A request for documents, electronically stored information or things…should be clear, concise, and reasonably particularized. For example, a request for 'each and every document supporting your claim' is objectionably broad in most cases.")
>
>   Further, in order to determine whether it possesses any responsive documents, M&T Bank may be required to search for and review more than a decade of electronic and/or paper records. These actions would be unreasonably time consuming and expensive given the irrelevance of the information sought.
>
>   Further, this request may seek documents that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or some other applicable privilege.

7

    Further, this request may seek documents that are protected from disclosure by a rule, order, or agreement applicable to a prior arbitration proceeding requiring confidentiality.
    Further, M&T does not at this time have information to suggest that any customer was ever dissatisfied in such a way as to cause him or her to initiate arbitration proceedings concerning overdraft fees.
    Finally, M&T incorporates its Preliminary Statement and General Objections herein by reference.
    For these reasons, M&T Bank objects to this document request.

*See generally* Resp. to Req. Prod. 1, 6-9, 11-12, 14.

Ms. Given also served 14 interrogatories on Defendant – 22 interrogatories in all if one includes subparts. The interrogatories read as follows:

INTERROGATORY NO. 1: For each year from 1999 to the present, state on an annual basis the number of disputes involving Consumers Accounts where the amount in controversy was less than $15,000 that were instituted and resolved in state or federal court.

INTERROGATORY NO. 2: For each year from 1999 to the present, state on an annual basis:

(a)   the number of disputes involving Consumers Accounts submitted to or decided by arbitration;

(b)   the number of arbitrations in subpart (a) initiated by You;

(c)   the number of arbitrations in subpart (b) that involved overdraft fees;

(d)   the number of arbitrations in subpart (b) where the Consumer prevailed, and the number where You prevailed;

(e)   the number of arbitrations in subpart (a) initiated by Consumers;

(f)   the number of arbitrations in subpart (e) that involved overdraft fees;

(g)   the number of arbitrations in subpart (e) where the Consumer prevailed, and the number where You prevailed;

(h)   the amount of arbitration filing fees and arbitrators' fees and costs paid by You; and

(i)   the amount of arbitration filing fees and arbitrators' fees and costs paid by Consumers.

INTERROGATORY NO. 3: For each arbitration included in Your response to Interrogatory No. 2 that resulted in a decision in Your favor, please state the amount of attorneys' fees and costs that You sought from the Consumer(s), the amount of attorneys' fees

8

and costs that You were awarded, the steps you took to enforce the award of attorneys' fees and costs in a court of competent jurisdiction, and the amount of attorneys' fees and costs that You waived.

INTERROGATORY NO. 4:   For each arbitration included in Your response to Interrogatory No. 2 that resulted in a decision in favor of the Consumer, please state the total amount money that You paid or refunded to the Consumer(s).

INTERROGATORY NO. 5:   For each arbitration identified in Your response to Interrogatory No. 1(c) and 1(f), please state whether the Consumer had an attorney or an expert participate in the arbitration.

INTERROGATORY NO. 6:  For each year from 1999 to the present, state on an annual basis the number of overdraft-fee-related complaints pertaining to Consumer Accounts recorded by You.

INTERROGATORY NO. 7:  Please identify by case name, case number, judicial or administrative body, and proceeding, each and every instance where someone, including Consumers, argued or asserted that You had waived the arbitration clause pertaining to a Consumer Account, and the disposition or resolution of that issue.

INTERROGATORY NO. 8:  For each year from 2003 to the present, identify all versions of Your account agreement(s) with Your customers, including any riders, addendums or additions thereto.

INTERROGATORY NO. 9: For each year from 2003 to the present, identify all documents, including but not limited to notices and mailers, You contend were provided to Your customers regarding any changes to their account agreement(s).

INTERROGATORY NO. 10:  Identify each occasion in which You attempted to, or did, invoke the non-monetary relief clause (defined as the following phrase in the arbitration clause: "If any part of the relief request is not expressly stated not expressly stated as a dollar amount, the dispute or controversy will not be a Claim that is subject to arbitration") to avoid arbitration of a Consumer dispute.

INTERROGATORY NO. 11:  Identify each occasion in which a Consumer attempted to, or did, invoke the non-monetary relief clause to avoid arbitration of a Consumer dispute.

INTERROGATORY NO. 12:  State the date the non-monetary relief clause was first included in Your deposit account agreement.

9

INTERROGATORY NO. 13: State the number of claims (whether by way of arbitration or civil lawsuit) brought by You against a Consumer in which You sought non-monetary relief, since the date the non-monetary relief clause was first included in Your deposit account agreement.

INTERROGATORY NO. 14: State the number of claims (whether by way of arbitration or civil lawsuit) brought by a Consumer against You in which the Consumer sought non-monetary relief, since the date the non-monetary relief clause was first included in Your deposit account agreement.

In response, Defendant objected to each request in a nearly uniform manner, such as the following:

> Objection. The Eleventh Circuit's remand does not permit discovery in this case. Even if it did permit discovery, this request seeks irrelevant information, is not reasonably calculated to lead to the discovery of admissible evidence, and is overly broad. The only relevant question at this stage of the action is whether the arbitration agreement between Plaintiff and M&T Bank is unconscionable in light of Concepcion. The documents sought in this request concerning prior arbitration proceedings have no relevance to that question. Cruz v. Cingular Wireless, LLC, 648 F.3d 1205 (11th Cir. 2011).
>
> Further, M&T Bank does not at this time have information to suggest that any customer was ever dissatisfied in such a way as to cause him or her to initiate arbitration proceedings concerning overdraft fees.
>
> Finally, M&T Bank incorporates its Preliminary Statement and General Objections herein by reference.

See Resp. to Interrogatory 4. Other elements which are included in several responses are addressed below.

M&T has raised nearly identical objections to each of Ms. Given's interrogatories and requests for production. While the Local Rules require that a motion to compel lay out each contested interrogatory or request for production at issue and the contested responses on an individual basis, to do so blindly would be unduly repetitive. See Local R. 26.1(h)(2). Therefore Ms. Given first addresses Defendant's global objections. To the extent that Defendant included an additional, non-boilerplate objection to an individual interrogatory or request for production, it will be addressed later.

A.   **Defendant's Objection Based on Remand Is Without Merit.**

Defendant almost uniformly objected to Ms. Given's interrogatories and requests for production on the alleged basis that the Eleventh Circuit's remand did not authorize discovery. Specifically, Defendant stated:

> Objection. The Eleventh Circuit's remand does not permit discovery in this case. Even if it did permit discovery, this request seeks irrelevant information, is not reasonably calculated to lead to the discovery of admissible evidence, and is overly broad. The only relevant question at this stage of the action is whether the arbitration agreement Plaintiff and M&T is unconscionable in light of Concepcion. The documents sought in this request concerning prior arbitration proceedings have no relevance to that question. Cruz v. Cingular Wireless, LLC, 648 F.3d 1205 (11th Cir. 2011)

*See generally* Resp. to Interrogatories; Resp. to Req. Prod. This objection is improper because it misstates the Eleventh Circuit's instructions on remand, ignores the plain meaning of the Discovery Order, and presumes that the discovery is "irrelevant" and "not reasonably calculated to lead to the discovery of admissible evidence" without providing any reason.

The Eleventh Circuit's order on remand was clear. This Court was to "reconsider its unconscionability determination in light of *Concepcion*" and conduct "proceedings consistent with this opinion." *In re Checking Account Overdraft Litig.*, 674 F.3d 1252, 1257 (11th Cir. 2012). The only issue before the Supreme Court in *Concepcion* was "whether § 2 [of the FAA] preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011). What was not at issue in *Concepcion* was whether Section 2 of the Federal Arbitration Act preempted Maryland law, or the law of any other state, regarding unconscionability.

Therefore, the issue before this Court is whether the arbitration clause of M&T is unconscionable under Maryland law under the circumstances of this case. Maryland law has no *per se* rule invalidating arbitration agreements like California. Rather, Maryland courts look at the facts and circumstances surrounding the creation of an agreement to arbitrate to determine its enforceability. *Compare DirecTV, Inc. v. Mattingly*, 376 Md. 302, 323-24 (2003) (holding arbitration agreement was unenforceable because DirecTV failed to follow contractual terms governing modification of customer agreement), *with Freedman v. Comcast Corp.*, 190 Md. App. 179, 209-10 (2010) (holding that arbitration agreement was not *per se* procedurally unconscionable where only supporting fact was contract's adhesive nature). Without permitting

11

limited discovery to develop the factual record regarding the alleged formation of an agreement to arbitrate and other factors of unconscionability, there is no way for the Court to conduct the in-depth factual review necessary to evaluate unconscionability. Therefore, Defendant's objection must be overruled and responses must be compelled.

    **B.    Defendant's Assertion of Privilege Is Unsubstantiated and Therefore Waived.**

In response to nearly every request for production, M&T responded with the objection that documents sought "may" be protected by privilege. Specifically, M&T stated:

> Further, this request may seek documents that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, and/or some other applicable privilege. Further, this request may seek documents that are protected by disclosure by a rule, order, or agreement applicable to a prior arbitration proceeding requiring confidentiality.

*See generally* Resp. to Req. Prod. However, M&T did not say whether documents were actually protected by privilege, nor which documents might be protected by privilege. Further, M&T failed to state which privilege would possibly apply to individual documents. The only certainty to be gleaned from such an objection is that Defendant did not even attempt to search for responsive documents.

Such an objection is utterly insufficient. The Federal Rules require that any party withholding information on the basis of privilege must both expressly make the privilege claim and provide a privilege log describing the nature of the documents not produced or disclosed sufficient to enable other parties to assess the privilege claim. Fed. R. Civ. P. 26(b)(5)(A). Failure to comply with the Rule, such as through the use of boilerplate objections, constitutes waiver of privilege. *See Miller v. Pruneda*, 236 F.R.D. 277, 281 (N.D. W. Va. 2004); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 662 (D. Colo. 2000).

Here, Defendant has not stated whether any privilege applies, only that documents "may" be privileged. Given the unsubstantiated nature of Defendant's boilerplate objections, Defendant must be found to have waived privilege and compelled to produce responsive documents.

    **C.    Defendant's Objection to the Burden of Responding to Discovery Is Without Merit.**

Defendant also objects to the vast majority of Ms. Given's discovery on the grounds that it is unduly burdensome, time consuming, and expensive to respond to her requests. Specifically, Defendant objected to each of Ms. Given's requests for production, stating that:

12

> Further, this request is overly broad and seeks to impose an undue burden on M&T Bank. This case involves a dispute about NSF fees related to Plaintiff's checking account. This request, however, seeks all documents and ESI that "reflect" the number of prior arbitration proceedings involving <u>any</u> type of dispute with respect to <u>any</u> type of consumer account…Further, in order to determine whether it possesses any responsive documents, M&T Bank may be required to search for and review more than a decade of electronic and/or paper records. These actions would be unreasonably time consuming and expensive given the irrelevance of the information sought.

*See generally* Resp. to Req. Prod. Of course, discovery for such a large company is expected to involve effort at times.

The court in *Baine v. General Motors* comprehensively explained the law on this issue when it overruled General Motors' objections:

> The law applicable to an objection to production on grounds of burdensomeness and expense is fairly clear. The mere fact that producing documents would be burdensome and expensive and would interfere with a party's normal operations is not inherently a reason to refuse an otherwise legitimate discovery request. *Biliske v. American Live Stock Ins. Co.*, 73 F.R.D. 124 (W.D. Okla. 1977); *Keco Indus., Inc. v. Stearns Elec. Corp.*, 285 F. Supp. 912 (E.D. Wis. 1968); *Speedrack, Inc. v. Baybarz*, 45 F.R.D. 254 (E.D. Cal. 1968); *Technograph, Inc. v. Texas Instruments, Inc.*, 43 F.R.D. 416 (S.D.N.Y. 1967); *Rockaway Pix Theatre, Inc. v. Metro-Goldwyn-Mayer, Inc.*, 36 F.R.D. 15 (E.D.N.Y. 1964). Scholarly authority clearly perceives the relationship between the enormity of a corporation like General Motors and the paper shield it can erect to discovery. As one treatise has expressed it, "The fact that defendant's size requires it to keep a great amount of records cannot give it immunity which a small organization would not possess." 4A Moore's Federal Practice § 34.19 n. 10.
>
> Nor can the lack of an adequate filing system insulate a party from discovery. For example, in *Baxter v. Travenol Labs., Inc. v. LeMay*, 93 F.R.D. 379 (S.D. Ohio 1981), plaintiff opposed discovery on the grounds that producing 800,000 sales invoices would require it to search almost 3,000,000 documents. The cost, it was asserted, would be some $80,000, and "hundreds of man-hours." The court ruled that an unwieldy recordkeeping system could not be used to frustrate discovery. *Accord Alliance to End Repression v. Rochford*, 75 F.R.D. 441 (N.D. Ill. 1977). Similarly, in *Kozlowski v. Sears Roebuck & Co.*, 73 F.R.D. 73 (D. Mass. 1976), the court found that a corporation that maintained its records in such a way as to make document retrieval totally impracticable could not use this impracticability as grounds to defend against production.

141 F.R.D. 328, 331 (M.D. Ala. 1991). Similar logic applies in this case. That Defendant is a large corporation with voluminous records is no basis for an objection to legitimate discovery due to perceived burden or expense. Therefore, M&T's responses should be compelled.

      **D.**      **Defendant's Objections Based on Customer Satisfaction Are Irrelevant.**

In response to almost every request for production and several interrogatories, Defendant objected that it should not have to produce documents because it did not have any dissatisfied customers. Specifically, Defendant stated:

> Further, M&T Bank does not at this time have information to suggest that any customer was ever dissatisfied in such a way as to cause him or her to initiate arbitration proceedings concerning overdraft fees.

*See generally* Resp. to Req. Prod.; *also* Resp. to Interrogatories 2, 3, 4, 5, 10, 11. The logical fallacy is obvious. At issue is whether the arbitration provision that M&T seeks to enforce is unconscionable under Maryland law. Discovery Order, p. 1. Customer satisfaction is not in issue. Further, that no customer has to date initiated arbitration proceedings against M&T shows that the requests are highly relevant. Moreover, to the extent this objection purports to be informational, it is improper and ineffective as the responses were not under oath.

**II.**      <u>**Defendant's Specific Objections to Certain Discovery Requests Are Improper.**</u>

In addition to Defendant's boilerplate responses to all of Ms. Given's discovery requests, Defendant did occasionally provide an additional ground for objection. Like Defendant's boilerplate objections, these specific objections are also baseless.

      **A.**      **Defendant's Objection to the Number of Interrogatories Is Improper.**

Ms. Given's second interrogatory contained multiple subparts. Defendant therefore objected to the number of subparts, stating:

> Further, M&T Bank objects to the nine subparts contained within this interrogatory. Each subpart is a separate interrogatory. *See* Local Rule 26.1(g)(1) ("The presumptive limitation on the number of interrogatories (twenty-five (25) questions including discrete subparts)…shall apply to actions in this Court."); Local Discovery Practices Handbook, § IV(A)(2) ("Interrogatories should be brief, simple, particularlized and capable of being understood by jurors when read in conjunction with the answer.")

Resp. to Interrogatory 2. This objection is without merit because Ms. Given served 14 interrogatories, one of which contained nine subparts. *See generally*, Resp. to Interrogatories. Therefore, Defendant's objection should be overruled and its response should be compelled. M&T agreed to waive this basis for objection during the June 4 conference.

      **B.**      **Defendant's Objection Based on the Role of the Arbitrator Is Without Merit.**

In response to Interrogatories 10, 11, 12, 13, and 14, Defendant objected to responding on the basis that interpretation of the arbitration clause was the role of the arbitrator. Specifically,

14

Defendant stated "[f]urther, in accordance with the Eleventh Circuit's opinion and mandate, the interpretation and application of this clause is left for an arbitrator, not a court." Resp. to Interrogatories 10-14. While the Eleventh Circuit did rule that questions of arbitrability are for the arbitrator, *In re Checking Account Overdraft Litig.*, 674 F.3d 1252, 1256-57 (11th Cir. 2012), the interrogatories at issue seek factual information which goes to the question of unconscionability, which the Eleventh Circuit ruled is a question for this Court. *Id.* As such, the interrogatories seek information regarding when the non-monetary relief clause was inserted into Defendant's account agreement as well as statistical information regarding the frequency with which it is invoked. *See* Interrogatories 10-14. This in turn relates to the question of mutuality: a contractual remedies clause which, on its face, applies to both parties, but in reality only benefits one party is evidence of *de facto* lack of mutuality of remedy, which is evidence of substantive unconscionability under Maryland law. *E.g.*, *Cheek v. United Healthcare of Mid-Atl., Inc.*, 835 A.2d 656, 667 (Md. 2003). Plaintiff expects that such discovery will show that the only party such clause could conceivably benefit is the Bank, since it is only consumers who would normally seek non-monetary relief from a bank – not the other way around. In essence, the Bank sought to ensure that it would have all the benefits of the judicial system for dealing with such claims, while relegating its customers to arbitration for monetary claims. An objection based on an arbitrator's right to interpret the meaning of the clause is therefore irrelevant and Defendant should be compelled to answer these interrogatories.

### C. Defendant's Definitional Objections Have Been Resolved.

M&T objected to several terms from Plaintiff's discovery requests. During the parties' meet and confer call on June 4, all such definitional issues were resolved but M&T offered no further responses.

### D. Defendant's Objections to Requests for Production 20 and 21 Are Frivolous.

In requests for production 20 and 21, Ms. Given requested all documents which Defendant relied upon in responding to her arbitration-related discovery dated February 27, 2012. Defendant correctly noted that these requests contained typographical errors because no arbitration-related discovery had been served on February 27, 2012. *See* Resp. to Req. Prod. 20, 21. However, instead of participating in discovery in good-faith by producing documents which Defendant relied upon in responding to Ms. Given's arbitration-related discovery dated April 25, 2012, as Defendant acknowledged was Ms. Given's intent, Defendant merely objected and

15

"incorpate[d] by reference herein both its Preliminary Statement and General Objections and the objections set forth in M&T's answers" to Ms. Given's interrogatories and requests for admission. *See* Resp. to Req. Prod. 20, 21.

### III.   Sanctions Are Appropriate Due to Defendant's Failure to Participate in Good Faith in the Discovery Process.

In this particular instance, Defendant's refusal to participate in the discovery process is egregious enough to warrant sanctions. The Court should award attorney's fees and costs to Ms. Given to reimburse those incurred in bringing this motion. Fed. R. Civ. P. 37(a)(5). However, the Court is also permitted to apply additional sanctions where Defendant has failed to obey a previous Court order regarding discovery by failing to answer. Fed. R. Civ. P. 37(b)(2)(A) (permissible sanctions for failing to comply with Court order on discovery). For purposes of sanctions, evasive or incomplete responses must be treated as a failure to respond. Fed. R. Civ. P. 37(a)(4); *see also Philpot v. Philco-Ford Corp.*, 63. F.R.D. 672, 674 (E.D. Pa. 1974) ("an objection to the discovery sought is not a defense to defendant's motion for sanctions"). These sanctions include, but are not limited to, prohibiting a disobedient party from asserting designated defenses, striking pleadings, or rendering default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A) (listing suggested penalties for failing to comply with discovery order).

Here, Defendant has willfully and intentionally failed to participate in the discovery process by providing evasive answers which are nothing more than threadbare protests. This Court ordered the parties to conduct limited arbitration-related discovery. *See* Discovery Order, p. 2. In the Order, the Court specifically approved Ms. Given's discovery as worded. *Id.* ("The Court sets 90 days for the parties to conduct limited arbitration-related discovery as set out in Exhibits A, B, C, and D of the above-styled motion."). In response to Ms. Given's court-ordered and approved discovery, Defendant failed to provide a single substantive response or responsive document. *See generally* Resp. to Interrogatories; Resp. to Req. Prod. Instead, Defendant provided unsupported and meritless objections, the phrasing of which tellingly indicates that Defendant has not even attempted to begin compiling responsive discovery. Such flagrant conduct merits further sanctions from this Court beyond an award of attorneys' fees and expenses.

## CONCLUSION

For the foregoing reasons, Ms. Given's motion should be granted. Defendant should be compelled to provide substantive responses to Ms. Given's discovery requests as previously ordered by the Court on April 26, 2012. In addition, as Defendant has apparently waived any assertions of privilege, the Court should prohibit Defendant from asserting any privilege or similar claims after the fact. Finally, the Court should award Ms. Given attorneys fees for bringing this motion and may add further sanction if the Court sees fit.

## LOCAL RULE 7.1 CERTIFICATE

Pursuant to Local Rule 7.1, I hereby certify that counsel for Plaintiff conferred at length with counsel for Defendant on June 4, 2012 regarding the issues raised in this motion, but the parties have been unable to resolve the matters in dispute.

Dated: June 7, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
BRUCE S. ROGOW, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271


/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181


/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008


/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY 10013
Tel: 212-355-9500
Fax: 212-355-9592


/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946


*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 7, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

    /s/ Robert C. Gilbert
    Robert C. Gilbert, Esquire
    Florida Bar No. 561861
    GROSSMAN ROTH, P.A.
    2525 Ponce de Leon Boulevard
    Eleventh Floor
    Coral Gables, FL 33134
    Tel: 305-442-8666
    Fax: 305-779-9596