# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

C ASE N O.  1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTIONS

*Dee v. Bank of the West*
N.D. CA Case No. 4:10-cv-02736
S.D. Fla. Case No. 1:10-cv-22985-JLK

*Orallo v. Bank of the West*
C.D. CA Case No. 2:10-cv-2469
S.D. FL Case No. 1:10-cv-22931-JLK

**JOINT DECLARATION OF ROBERT C. GILBERT, MICHAEL W. SOBOL, JEFFREY M. OSTROW AND ELAINE RYAN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**

ROBERT C. GILBERT, MICHAEL W. SOBOL, JEFFREY M. OSTROW and ELAINE RYAN declare as follows:

1. We are four of the Class Counsel for Plaintiffs and the proposed Settlement Class in the Action against Bank of the West ("BOW" or the "Bank").[1] We submit this joint declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and Certification of Settlement Class.  Except as otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

---

[1] "Action" and all other capitalized terms used herein have the same meanings ascribed to them in the Agreement.

2. The Parties have entered into a Settlement Agreement providing for an $18 million recovery for the Settlement Class. Under the Settlement Agreement, Settlement Class Members are entitled to their *pro rata* share of the Net Settlement Fund without having to submit claim forms or take any other affirmative steps. This outstanding Settlement followed nearly two years of litigation, months of arms'-length settlement negotiations, and a full-day mediation before the Honorable Edward A. Infante (Ret.) of JAMS.

3. Plaintiffs maintain that the claims asserted in the Action are meritorious and that Plaintiffs would prevail if the Action proceeded to trial. BOW maintains that Plaintiffs' claims are unfounded and cannot be pursued on a class-wide basis, denies any potential liability, and has demonstrated it will litigate its defenses vigorously. Continued litigation, however, presents all the risks, uncertainties, time and expenses attendant to litigation particularly in the context of this large, complex, and risky multi-district litigation, which include, but are not limited to, contested class certification proceedings and possible interlocutory appellate review, completing merits discovery, pretrial motion practice, trial, and appellate review.

A. **Litigation History**

4. Plaintiffs seek monetary damages, restitution and declaratory relief from BOW due to its Debit Re-sequencing practices that were designed to increase the number of Overdraft Fees its customers incurred.

5. BOW denies all of Plaintiffs' allegations. The Bank consistently defended its conduct by, *inter alia*, highlighting language in the relevant account agreements that it contends expressly advised its customers of and permitted the Debit Re-sequencing practices at issue.

6. BOW advanced additional defenses that Plaintiffs cannot maintain common law unconscionability, conversion or unjust enrichment claims, and that Plaintiffs' state statutory claims fail.

7. On April 5, 2010, Plaintiff Betty Orallo filed the class action complaint in *Orallo*, seeking monetary damages, restitution and declaratory relief from BOW based on its alleged unfair assessment and collection of Overdraft Fees on Debit Card Transactions. On June 22, 2010, Plaintiff Saynyonoh Dee filed the class action complaint in *Dee*, asserting substantially similar claims for relief to those asserted in *Orallo*.

8. The Judicial Panel on Multi-District Litigation subsequently transferred *Orallo* and *Dee* to this Court for inclusion in MDL No. 2036.

9. On December 6, 2010, the Plaintiffs filed a consolidated first amended class action complaint against BOW, at which time Plaintiff Michele Draper joined the Action.

10. On January 24, 2011, BOW filed its answer and affirmative defenses.

11. On May 23, 2011, Plaintiffs propounded their first request for production of documents, first set of interrogatories and first requests for admissions. On October 13, 2011, Plaintiffs propounded their second request for production of documents.

12. On July 12 and November 14, 2011, BOW served responses to Plaintiffs' written discovery.

13. In connection with this Action, and in light of regulatory developments, effective July 1, 2011, BOW modified some of its Debit Card policies and practices, including its posting order, so that Debit Card Transactions are processed in chronological order (when date and time information is available) or in low-to-high order (when date and time information is not available).

14. On October 5, 2011, Plaintiffs deposed one of BOW's corporate representatives, who testified to the operation of various computer systems used by BOW in processing Debit Card Transactions, as well as the range and format of data currently existing from those systems.

15. On November 30, 2011, Plaintiffs deposed a second BOW corporate representative who testified to, among other things, BOW's practices and policies with respect to processing Debit Card Transactions during the Class Period.

16. In connection with Plaintiffs' discovery requests, including the written discovery, BOW produced more than a million pages of documents.

17. On December 20, 2011, Plaintiffs filed their motion for class certification.

18. Beginning in late 2011, the Parties engaged in preliminary settlement discussions. On January 6, 2012, the Parties participated in a formal mediation session before the Honorable Edward A. Infante (Ret.) of JAMS.

19. In advance of the mediation, BOW provided Class Counsel with sample customer transactional data and aggregate information regarding its Overdraft Fee revenues from Debit Card Transactions. Class Counsel's expert analyzed this data.

20. As a result of the January 6, 2012 mediation, the Parties signed a memorandum of understanding which memorialized, subject to negotiation and execution of the Settlement Agreement and Preliminary Approval and Final Approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally and forever resolve, discharge and release all rights and claims of Plaintiffs and the Settlement Class Members in exchange for BOW's agreement to pay the sum of $18,000,000 to create a common fund for the benefit of the Settlement Class, and to separately pay the costs of class notice and settlement administration.

21. Over the ensuing months, Class Counsel and BOW negotiated and drafted the detailed priovisions of the Settlement Agreement. During this same time, Class Counsel and their expert determined, among other things, the most appropriate method by which to

implement the plan for direct allocation of the Settlement Fund to Settlement Class Members. That process required Class Counsel and their experts to analyze the relevant transactional data related to Overdraft Fees imposed upon the Settlement Class, and to help determine the fairest and most appropriate distribution formula in light of the data that BOW possesses.

22. The Parties executed the Settlement Agreement on June 26, 2012.

### B. Class Counsel's Investigation

23. Class Counsel devoted hundreds of hours to investigating the claims of many potential plaintiffs against BOW. Class Counsel interviewed customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers. This information was essential to counsel's ability to understand the nature of BOW's conduct, the language of the account agreements at issue, and potential remedies.

24. Class Counsel also expended significant resources researching and developing the legal claims at issue and in drafting the operative complaints. Mindful of the Court's emphasis on the development of the factual record in its denial of most points raised in the omnibus motion filed by other MDL 2036 defendants, Class Counsel crafted document requests, interrogatories and requests for admission with an eye toward class certification, summary judgment and trial.

25. In response to those discovery requests, BOW produced more than one million pages of documents, in addition to answering interrogatories and requests for admission. Class Counsel created a large document review team whose task was to review and analyze the produced documents. To make the review and subsequent litigation more efficient, Class Counsel established coding procedures for electronic review of the documents produced, and team members remained in constant contact with each other to ensure that all counsel became aware of significant emerging evidence in real time.

26.     Class Counsel deposed BOW representatives, filed a motion for class certification, engaged in discovery motion practice, and prepared responses to BOW's written discovery directed to Plaintiffs.

**C.      Settlement Recovery**

27.     The Settlement requires BOW to deposit $18 million into an Escrow Account following this Court's Preliminary Approval of the Settlement. (Agreement ¶ 44.) That deposit will create the Settlement Fund.

28.     Settlement Class Members do not have to submit claims or take any other affirmative steps to receive relief under the Settlement. Instead, within 30 days of the Effective Date of the Settlement (Agreement ¶ 78), BOW and the Settlement Administrator will distribute the Net Settlement Fund to all identifiable Settlement Class Members who do not opt out of the Settlement. (*Id*).

29.     Members of the Settlement Class will be identified through a complex analysis of BOW data that allows for the identification of all members of the Settlement Class who experienced excess Overdraft Fees as a result of Debit Re-sequencing. BOW data for the period June 1, 2005 through July 11, 2011 is sufficiently complete to permit the Parties to identify all members of the Settlement Class who had Accounts during that period, and to calculate the amount of the distribution from the Net Settlement Fund to which each Settlement Class Member is entitled under the Settlement.

**D.      Settlement Notice**

30.     Settlement Class Counsel and BOW have retained Rust Consulting, Inc. ("Rust"), to serve as the Notice Administrator for this Settlement.

31.     The Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the

Settlement, Class Counsel's Fee Application and request for Service Awards for Plaintiffs, and their rights to opt-out of or object to the Settlement, Class Counsel's Fee Application, and/or the request for Service Awards for Plaintiffs. The Notice and Notice Program constitute sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the Constitutional requirements of due process. The Notice Program is designed to reach a high percentage of the Settlement Class (including many by direct mail), and exceeds the requirements of constitutional due process.

### 1. **Mailed Notice**

32. Rust will administer the Mailed Notice Program. Within 28 days from the date that Rust receives the data files that identify the names and last known addresses of the identifiable members of the Settlement Class, Rust will run such addresses through the National Change of Address Database, and will mail to all such members of the Settlement Class postcards that contain the Mailed Notice (the "Initial Mailed Notice").

33. Rust will perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable. No later than 35 days from the Initial Mailed Notice date, Rust will complete the re-mailing of Mailed Notice postcards to those members of the Settlement Class whose new addresses were identified as of that time through address traces (the "Notice Re-mailing Process").

34. Within seven days after Rust completes the Notice Re-mailing Process, Rust will provide Settlement Class Counsel and BOW's counsel an affidavit that confirms that the Mailed Notice Program was completed in a timely manner. Settlement Class Counsel will file such affidavit with the Court in conjunction with Plaintiffs' motion for Final Approval.

**2.     Published Notice**

35.     The Published Notice Program, for which Rust is also responsible, will be completed no later than 30 days after the date on which the Court preliminarily approves the Settlement. The Publication Notice will be comprised of one-time advertisements in the Los Angeles Times, the San Diego Union Tribune, the San Francisco Chronicle, and USA Today.

36.     Within seven days after the date Rust completes the Published Notice Program, Rust will provide Settlement Class Counsel and counsel for BOW with one or more affidavits that confirm that Published Notice was given in accordance with the Published Notice Program. Settlement Class Counsel will file such affidavit(s) with the Court.

**3.     The Settlement Website and the Toll-Free Settlement Hotline**

37.     The Settlement Administrator will establish a Settlement Website as a means for the Settlement Class to obtain notice of, and information about, the Settlement. The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than commencement of the Notice Program. The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, and such other documents as Settlement Class Counsel and counsel for BOW agree to post or that the Court orders posted on the Settlement Website. These documents will remain on the Settlement Website at least until Final Approval.

38.     The Settlement Administrator will establish and maintain an automated toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries, and answer the questions of those who call with or otherwise communicate such inquiries.

**E.     Service Awards and Attorneys' Fees and Costs**

39.     Class Counsel will seek, and BOW will not oppose, Service Awards of $5,000.00 per named Plaintiff. (Agreement ¶ 100.) If the Court approves them, the Service Awards will be

paid from the Settlement Fund, and will be in addition to the relief the Plaintiffs will be entitled to under the terms of the Settlement. (*Id.*) The requested awards will compensate the Plaintiffs for their time and efforts in the Action and for the risks they assumed in prosecuting the Action against BOW.

40. BOW will not oppose Class Counsel's request for attorneys' fees of up to 30% of the value of the Settlement, net of Settlement-related costs and expenses, plus reimbursement of litigation costs and expenses. (Agreement ¶ 96.) The Parties negotiated and reached this agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement. (Agreement ¶ 97.)

### F. Considerations Supporting Settlement

#### 1. The Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations

41. Settlement negotiations were informed by the experience of counsel for both sides in the litigation, certification, trial and settlement of nationwide class action cases, including consumer cases. In particular, Class Counsel had the benefit of years of experience and a familiarity with the facts of this Action as well as with other cases involving similar claims.

42. Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive formal discovery with BOW. Counsel's review of that extensive discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared Class Counsel for well-informed settlement negotiations.

43. Certain of Class Counsel successfully pursued similar claims against Wells Fargo Bank, N.A. through class certification, summary judgment and a two-week trial that resulted in a $203 million plaintiffs' verdict. That case, *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-5923 (N.D. Cal), was filed in the Northern District of California in 2007 on behalf of a class of

9

California Wells Fargo customers. As this Court is aware, the *Gutierrez* plaintiffs challenged high-to-low posting practices almost identical to those challenged in this Action.

### 2. Risks Associated with Litigation Favor Settlement

44. Plaintiffs and Class Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available to BOW, and the risks inherent to litigation. Plaintiffs faced the risk of dismissal on various theories advanced by BOW. The success of Plaintiffs' claims in future litigation turns on these and other questions that were certain to arise in the context of motions for summary judgment, at trial, and on appeal.

45. Protracted litigation carries inherent risks and inevitable delay. Under the circumstances, Plaintiffs and Class Counsel determined that the Settlement reached with BOW outweighs the risks of continued litigation.

### 3. The Settlement Amount Is Reasonable Given the Range of Possible Recovery

46. Analysis of the transaction data provided by BOW showed that the most probable sum that Plaintiffs and the Settlement Class could reasonably have anticipated recovering at a trial in the Action was $34,843,001. With this Settlement, Plaintiffs and the Settlement Class Members will recover approximately 52% of those damages without any further litigation risks. The $18 million Settlement is an extremely fair and reasonable recovery for Settlement Class Members in light of the Bank's defenses, and the challenging and unpredictable path of continued litigation Plaintiffs would face absent a settlement.

### 4. The Complexity, Expense, and Duration of Ongoing Litigation Favors Settlement

47. The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner. One of the most expensive aspects of ongoing litigation of this Action – to which Class Counsel can attest after the

*Gutierrez* trial – would involve the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions and at trial.

### 5. Proceedings Are at an Appropriate Stage for Settlement

48. Plaintiffs settled the Action following the filing of a motion for certification of a litigation class, and with the benefit of at least one million pages of documents produced by BOW and deposition testimony from BOW representatives. Review of those documents and testimony positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and the prospects for success at summary judgment, at trial, and on appeal.

49. Class Counsel are highly familiar with the Bank's practices and likely defenses from their experience litigating similar cases.

### G. Class Certification for Settlement Purposes

50. The Court has already certified several classes for litigation and settlement purposes in MDL No. 2036. Certification of the Settlement Class in the Action is likewise appropriate.

51. Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

52. The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of hundreds of thousands of the Bank's customers; joinder of all such persons is impracticable.

53. The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on BOW's practice of systemically engaging in Debit Re-sequencing, as alleged in the operative complaint.

54. Plaintiffs are typical of absent members of the Settlement Class because they suffered from the same Debit Re-sequencing injuries, and because they will benefit equally from the relief provided by the Settlement.

55. Adequacy is established because Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class. Plaintiffs and absent members of the Settlement Class have an equally great interest in the relief offered by the Settlement. Further, Class Counsel are qualified and competent and have extensive experience prosecuting complex class actions, including consumer actions similar to the instant case. Class Counsel have devoted substantial time and resources to vigorously litigate this Action from its inception through the date of Settlement.

56. Plaintiffs satisfy the predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. For example, each member of the Settlement Class' relationship with BOW arises from an account agreement that is the same in all relevant respects to every other member of the Settlement Class' account agreement.

\*   \*   \*

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Miami, Florida on July 11, 2012.

/s/ Robert C. Gilbert
Robert C. Gilbert

I declare under penalty of perjury of the laws of California and the United States that the foregoing is true and correct, and that this declaration was executed in San Francisco, California on July 11, 2012.

/s/ Michael W. Sobol
Michael W. Sobol

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Florida on July 11, 2012.

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow

I declare under penalty of perjury of the laws of Arizona and the United States that the foregoing is true and correct, and that this declaration was executed in Phoenix, Arizona on July 11, 2012.

/s/ Elaine Ryan
Elaine Ryan
