# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION

*Terry Case v. Bank of Oklahoma, N.A.*
S.D. FL Case No. 1:11-cv-20815-JLK
W.D. OK Case No. 5:10-00901-L

## JOINT DECLARATION OF ROBERT C. GILBERT, HASSAN ZAVAREEI, JEFFREY M. OSTROW, AND BURTON FINKELSTEIN

Robert C. Gilbert, Hassan Zavareei, Jeffrey M. Ostrow, and Burton Finkelstein declare as follows:

1. We are among the Class Counsel identified in paragraph 19 of the Settlement Agreement and Release entered into with Bank of Oklahoma, N.A. ("BOK").[1] We submit this declaration in support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement and for Certification of Settlement Class. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify to them if called upon to do so.

2. After approximately one and one-half years of hard-fought litigation and protracted settlement negotiations, the Parties entered into a Settlement Agreement and Release

---

[1] All capitalized defined terms have the same meaning as defined in the Settlement Agreement and Release attached as Exhibit A to Plaintiffs' Unopposed Motion for Final Approval of Class Settlement.

("Settlement" or "Agreement") under which BOK will pay nineteen million dollars ($19,000,000) in cash to create a common fund for the benefit of the Settlement Class, and separately pay all costs and fees of providing Notice to Settlement Class Members and associated administration of the Settlement. Under the Settlement, Settlement Class Members will automatically receive automatic pro rata distributions from the Net Settlement Fund in proportion to the actual damages that each of them sustained due to BOK's High-to-Low Debit Card Transaction Sequencing.

3. The Actions involved sharply opposed positions on several fundamental legal and factual issues. Plaintiffs maintained that the claims asserted are meritorious; that they would establish liability and recover substantial damages if the Actions proceeded to trial; and that the final judgment recovered in their favor would be affirmed on an appeal. Plaintiffs' ultimate success in the litigation required them to prevail, in whole or in part, at *all* of these junctures. Conversely, BOK's success at any one of these junctures could or would have spelled defeat for Plaintiffs and the proposed class. Thus, continued litigation posed significant risks and countless uncertainties, as well as the time, expense and delays associated with trial and appellate proceedings, particularly in the context of complex multi-district litigation.

4. In light of the risks, uncertainties and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to the Settlement Class in the form of direct cash compensation.

**Background of the Litigation**

5. Plaintiffs sued on behalf of themselves and all others similarly situated who incurred Overdraft Fees as a result of BOK's practice of re-sequencing all Debit Card Transactions from highest to lowest dollar amount ("High-to Low Debit Card Transaction Sequencing"). Plaintiffs alleged that BOK systemically engaged in High-to Low Debit Card

2

Transaction Sequencing to maximize its Overdraft Fee revenues. According to Plaintiffs, BOK's practices violated the Bank's contractual and good faith duties, were substantively and procedurally unconscionable, violated state unfair trade practices laws, and resulted in conversion and unjust enrichment.

6. BOK denied all of Plaintiffs' allegations of wrongdoing. BOK consistently argued, *inter alia*, that Plaintiffs' claims are preempted by the National Bank Act ("NBA"); that its account agreements expressly authorize the very practice of High-to-Low Debit Card Transaction Sequencing challenged by Plaintiffs; that it fully disclosed its practices to its customers; that no unconscionability claim lies for the recovery of damages; that no conversion claim exists; that Plaintiffs cannot maintain unjust enrichment claims; and that the statutory consumer protection claims are defective.

**The Course of Proceedings**

7. On August 17, 2010, Plaintiff Susan Eaton filed a Class Action Petition in District Court of Tulsa County, Oklahoma seeking monetary damages, restitution and declaratory relief from BOK, arising from its alleged unfair assessment and collection of Overdraft Fees, captioned *Susan Eaton v. Bank of Oklahoma, N.A., et al.*, Case No. CJ-2010-5209 ("*Eaton*").

8. Also on August 17, 2010, Plaintiff Terry Case filed a Class Action Complaint in United States District Court for the Western District of Oklahoma seeking monetary damages, restitution and declaratory relief from BOK, arising from its alleged unfair assessment and collection of Overdraft Fees, captioned *Terry Case v. Bank of Oklahoma, N.A.*, W.D. OK Case No. 5:10-00901-L ("*Case*").

9. On September 16, 2010, Plaintiff Bryan Ramer filed a Class Action Petition in District Court of Tulsa County, Oklahoma seeking monetary damages, restitution and declaratory relief from BOK, arising from its alleged unfair assessment and collection of

3

Overdraft Fees, captioned *Bryan Ramer v. Bank of Oklahoma, N.A.*, Case No. CJ-2010-05841 ("*Ramer*").

10. On September 21, 2010, BOK moved to dismiss *Case* in the Western District of Oklahoma. The district court granted plaintiff's motion to stay proceedings in *Case* pending the Judicial Panel on Multidistrict Litigation's ("JPML") ruling on BOK's motion to vacate the Conditional Transfer Order previously entered by the JPML. On November 30, 2010, the JPML denied BOK's motion to vacate and transferred *Case* to this Court as part of MDL 2036. Thereafter, BOK filed a petition for mandamus to the Eleventh Circuit Court of Appeals seeking to vacate the JPML's transfer order in *Case*. On March 4, 2011, the Eleventh Circuit denied the petition. On October 19, 2011, an Amended Complaint was filed in *Case* and it was made part of the Fifth Tranche in MDL 2036.

11. On September 21, 2010, BOK filed a motion to dismiss *Eaton* on a number of grounds, including that the state law claims are preempted by the NBA and that the Oklahoma Consumer Protection Act ("OCPA"), breach of contract and unjust enrichment state law claims fail as a matter of law. On March 15, 2011, after briefing and oral argument, the state court presiding over *Eaton* dismissed the unjust enrichment claim, but denied BOK's motion as to the two remaining claims. BOK filed a motion to reconsider the court's ruling. The state court subsequently denied BOK's motion to reconsider on April 14, 2011. Thereafter, BOK filed a motion for summary judgment on plaintiff Eaton's OCPA claims. The state court denied the motion on August 17, 2011.

12. On October 18, 2010, BOK filed a motion to dismiss in *Ramer* on a number of grounds, similar to those raised in *Eaton*. The motion to dismiss in *Ramer* was fully briefed by December 12, 2010. At the same time, Plaintiff Ramer submitted and briefed three different

4

notices of supplemental authority. On September 19, 2011, the *Ramer* and *Eaton* cases were consolidated before the *Eaton* court. BOK's pending motion to dismiss in *Ramer* was ultimately denied in full by the *Eaton* court without hearing on October 19, 2011.

**Class Counsel's Investigation**

13. Class Counsel devoted substantial time and expended significant resources researching and developing the legal claims at issue, before and after the Actions began. Class Counsel interviewed many of BOK's customers and potential plaintiffs, and reviewed dozens of sets of bank records, to gather information about BOK's conduct and its impact upon consumers. This information was essential to Class Counsel's ability to understand the nature of BOK's conduct, the language of the account agreements at issue, potential claims for relief and remedies, and adequacy of the Plaintiffs.

14. Class Counsel also expended resources researching and developing the legal claims at issue in the Actions, including OCPA claims that have not been previously addressed in MDL 2036, or in a direct way in Oklahoma's jurisprudence.

15. Class Counsel also devoted substantial time and resources to litigating the Actions, including defeating motions to dismiss and for summary judgment, pursuing discovery, and in preparing for and negotiating the Settlement.

16. Faced with the prospect of litigating three separate Actions against BOK in federal and state courts, counsel in *Eaton*, *Case* and *Ramer* agreed to coordinate the joint prosecution of the Actions in order to make efficient use of judicial and professional resources and to achieve the best possible results for the classes they proposed to represent.

17. Discovery occurred in this case prior to the Settlement. While that discovery was not completed, it nonetheless afforded Class Counsel insight into the strengths and weaknesses of their claims against BOK.

18. Class Counsel settled the Actions with the benefit of approximately 25,000 pages of documents produced by BOK, an analysis of a significant sample of account-level data and aggregate BOK Overdraft Fee revenue data, and following a Rule 30(b)(6) deposition on various topics.

19. Class Counsel reviewed the documents produced by BOK and identified important documents in preparation for depositions, class certification briefing, and dispositive motions. Review of this information also positioned Class Counsel to evaluate the strengths and weaknesses of Plaintiffs' claims and the prospects for success at class certification, summary judgment, trial and on appeal. Class Counsel deposed BOK's corporate representative on various topics and were preparing for other depositions when the mediation and ensuing settlement discussions resulted in the Settlement.

20. BOK also produced sample transactional account data and aggregate data regarding its Overdraft Fee revenues. Class Counsel engaged a consulting expert, Mr. Lee Ayres, to assist in analyzing and preparing damages estimates. Class Counsel's expert used sample transactional account data and aggregate data regarding BOK's Overdraft Fee revenues to analyze and estimate the range of damages at issue in the Actions, comparing Overdraft Fees actually charged to the Overdraft Fees that would have been charged had BOK not employed the challenged practice of High-to-Low Debit Card Transaction Sequencing. Class Counsel's and their expert's review of that data enabled them to gain an understanding of the evidence relating

to central questions in the Actions, and prepared Class Counsel for mediation and settlement negotiations.

21.     Class Counsel were well positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to resolve them, based on their knowledge of the *Gutierrez v. Wells Fargo Bank, N.A.* action in federal court in California, and their participation in similar actions in MDL 2036 and in other federal and state courts across the country.

**The Settlement**

22.     On November 11, 2011, the Parties participated in a full-day mediation session with the Honorable Layn Phillips, United States District Judge (Ret.) in Tulsa, Oklahoma. Although no agreement was reached that day, the Parties continued the discussions—under the supervision of the mediator—over the following days.

23.     The Parties eventually reached agreement on the basic terms of the Settlement on November 15, 2011, subject to a mutually agreeable written Settlement Agreement and to Preliminary Approval and Final Approval by this Court.  Pursuant to their agreement in principle, the Parties' expressed their good faith intention to fully, finally, and forever resolve, discharge and release all rights and claims of Plaintiffs and the Settlement Class Members in exchange for BOK's payment of $19,000,000 for the creation of a common fund for the benefit the Settlement Class.  BOK also agreed separately to pay all costs and expenses associated with the Notice Program and administration of the Settlement, which are estimated at $350,000.

24.     The negotiations were adversarial and the full-day mediation session ended without an agreement.  It was only through the continued efforts of Judge Phillips (that continued even after the first mediation session) that the Parties were ultimately able to bridge their differences and reach an agreement in principle that led to the Settlement.

25. Based on Class Counsel's expert's analysis, the $19 million Settlement Fund represents approximately 46% of the Overdraft Fees incurred as a result of BOK's High-to-Low Debit Card Transaction Sequencing based on the most probable theory of damages Class Counsel believe would be successful at trial.

26. Over the following three months, the Parties engaged in extensive negotiations regarding the specific terms of the Agreement, which was signed on March 16, 2012. During this time, Class Counsel engaged in additional settlement-related analysis to determine—among other things—an appropriate plan for allocation of the Settlement Fund. That analysis required Class Counsel and their expert to analyze the relevant transactional data relating to Overdraft Fees assessed by BOK against Settlement Class Members, and to determine the fairest and most appropriate distribution formula in light of the data that BOK possesses.

27. During this investigation, the Parties identified that BOK was missing a small amount of the Settlement Class' transactional data (a limited 10 month period during the approximately 6 ½ year Class Period), and worked to mitigate this issue and allow for the execution of the fair, efficient, and burden-free plan of allocation of the Settlement Fund to Settlement Class Members—as well as the ultimate distribution of the Net Settlement Fund.

28. All Settlement Class Members who were assessed an Additional Overdraft Amount —including those who incurred Overdraft Fees during the limited 10- month period where transactional data was missing— will automatically receive a *pro rata* distribution of the Net Settlement Fund without having to file any claims. The Additional Overdraft Amount analysis determines, among other things, which BOK Account holders were assessed additional Overdraft Fees that would not have been assessed if BOK had used a posting sequence or method for Debit Card Transactions other than ordering them from highest to lowest dollar

8

amount, and how much in additional Overdraft Fees those Account holders were assessed. The calculation involves a complex multi-step formula and process that is described in detail in the Agreement.

29. While there exists a limited 10-month period during the approximately 6 ½ year Class Period for which BOK lacks certain account balance information, all other relevant account information is available for that limited 10-month time period, which allowed the Parties to design a proxy for fairly, reasonably and adequately allocating distributions to Settlement Class Members who incurred Overdraft Fees during that limited 10-month time period that is as close as possible to the allocation formula being used for the balance of the Class Period. All Settlement Class Members—including those who incurred Overdraft Fees during the limited 10-month period—will automatically receive their *pro rata* share of the Net Settlement Fund without having to file claims.

30. Following entry of this Court's Preliminary Approval Order, Class Counsel worked closely with the Settlement Administrator to ensure that the required Notice Program was timely and properly completed. This included reviewing all text and language, and supervising the dissemination of mailed notice, the establishment of an informational website, and the establishment of a toll-free informational telephone number. Additionally, Class Counsel oversaw BOK's collection and analysis of Settlement Class Member data that was necessary for their expert's calculation of individual damages of each Settlement Class Member.

31. The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys familiar with class action litigation and the legal and factual issues of the Actions. The Parties litigated vigorously prior to reaching the Settlement. Class Counsel negotiated the Settlement with similar vigor. Plaintiffs and the Settlement Class were

9

represented by experienced and competent Class Counsel during these arms-length negotiations. Settlement negotiations were informed by the experience of Class Counsel in the litigation, certification, trial, and settlement of nationwide class action cases. Class Counsel also had the benefit of their experience, understanding and involvement in a number of other cases involving similar claims.

32. While Class Counsel are confident in the strengths of the Actions, they are also mindful of the various defenses available to BOK. While Plaintiffs defeated BOK's motions to dismiss and for summary judgment in *Eaton* and *Ramer*, Plaintiffs would have continued to face risks at all stages of the Actions, including class certification, further summary judgment, trial and, if successful, on appeal.

33. Continued litigation of the Actions would require extensive fact and expert discovery in the fields of marketing and banking, including the retention of data experts to perform comprehensive damage analyses.

34. Protracted litigation carries with it inherent risks that would necessarily delay and endanger Settlement Class Members' monetary recovery. For example, while Class Counsel believe that BOK's overdraft practices are indeed covered by the OCPA, and prevailed on this issue in the Oklahoma trial courts, it is a complex issue that still presented significant risk in the Oklahoma appellate courts. In view of those risks and delays, Class Counsel believe that the value of entering into the Settlement now outweighs the risks and delays associated with continued litigation of the Actions.

35. Each of the above-described efforts was essential to achieving the Settlement. Litigation of a case like this requires counsel highly trained in class action law and procedure as

well as the specialized issues these cases present. The record before the Court establishes that the Actions involved complex challenges, which Class Counsel met at every juncture.

36. Class Counsel believe this Settlement is excellent and deserving of Final Approval. Moreover, opposition to the Settlement has been *de minimis*. To date, Class Counsel have received no objections, and only two opt-outs. In addition, one Settlement Class Member, Sidney Hardman, submitted a letter to the Court describing his experience with BOK Overdraft Fees. Because the letter did not indicate whether Mr. Hardman intended to object or to opt-out of the Settlement, Class Counsel contacted Mr. Hardman via telephone. Mr. Hardman indicated that he did not intend to object or to opt-out of the Settlement.

**Class Release**

37. In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not timely opt out will be deemed to have released BOK from claims related to the subject matter of the Actions. The detailed release language can be found in Section XIV of the Agreement.

**Settlement Notice**

38. Class Counsel retained class action notice expert Hilsoft Notifications and Epiq Class Action and Claims Solutions, a leading class action administrator, to serve as Settlement Administrator.

39. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Actions, the terms of the Settlement, Class Counsel's Fee Application and request for Service Awards for Plaintiffs, and their rights to opt-out of the Settlement Class or object to the Settlement, Class Counsel's Fee Application and/or the request for Service Awards for Plaintiffs. The Notice Program constituted sufficient notice to all persons

11

entitled to notice. The Notice Program satisfied all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirements of due process.

40. The Settlement Administrator administered the Notice Program in accord with the terms of the Agreement and the Preliminary Approval Order.

41. Among other thing, the Settlement Administrator mailed postcards to over 270,603 Settlement Class Members, and timely completed the Mailed Notice Program.

42. The Settlement Administrator also administered the Published Notice Program, which consisted of one-quarter page advertisements in the following publications: *Albuquerque Journal, Dallas Morning News, Denver Post/Boulder Daily Camera Combo, Fort Smith Times Record, Houston Chronicle, Kansas City Star, Oklahoma City Oklahoman, Arizona Republic,* and *Tulsa World*. The Published Notice Program was timely completed as well.

43. The Settlement Administrator also established a Settlement Website as a means for Settlement Class Members to obtain notice of, and information about, the Settlement. The Settlement Website includes hyperlinks to the Settlement, the Long-Form Notice, the Preliminary Approval Order, the Settlement Agreement, and certain other documents which Class Counsel and counsel for BOK agreed to post. These documents will remain on the Settlement Website at least until Final Approval.

44. Further, the Settlement Administrator established and maintains an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and to answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries.

**Certification for Settlement Purposes**

45. Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

46. The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of nearly 300,000 people, and joinder of all such persons is impracticable.

47. The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on BOK's systematic practice of High-to-Low Debit Card Transaction Sequencing for the sole purpose of increasing Overdraft Fee revenues, as alleged in the operative complaints.

48. Plaintiffs are typical of absent Settlement Class Members because they were subjected to BOK's systematic practice of High-to-Low Debit Card Transaction Sequencing and suffered damages as a result thereof, and because they will equally benefit from the relief provided by the Settlement.

49. Adequacy is established because Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and absent Settlement Class Members have an equally great interest in the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests. Further, Class Counsel are qualified and competent and have extensive experience prosecuting complex class actions, including consumer

13

actions similar to the Actions.  Class Counsel have devoted substantial time and resources to vigorous litigation of the Actions from inception through the Settlement.

50. Plaintiffs satisfy the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member.  For example, each Settlement Class Member's relationship with BOK arises from an account agreement that is the same in all relevant respects to other Settlement Class Members' Account agreements.

**Service Awards**

51. Each Plaintiff provided substantial assistance to Class Counsel by locating and forwarding responsive documents and information—including monthly account statements and account agreements—by engaging in conferences with Class Counsel, and by agreeing to serve as named Plaintiffs in formal litigation against BOK, an act that exposed them to risks.  In so doing, the Plaintiffs were integral to the success of this litigation.

**Class Counsel's Attorney Fee and Expense Request**

52. Pursuant to the Settlement, Class Counsel are entitled to request that the Court award attorneys' fees up to 30% of the Settlement Fund, plus reimbursement of our litigation costs and expenses.  Agreement ¶ 93.  BOK agreed not to oppose Class Counsels' request for attorneys' fees of up to 30% and expenses.  *Id*.  The Parties negotiated and reached this agreement regarding attorneys' fees and expenses only after reaching agreement on all other material terms of the Settlement.  Agreement ¶ 94.

53. As indicated in the Court-approved Notice disseminated to the Settlement Class, and consistent with standard class action practice and procedure, Class Counsel are requesting a fee equal to 30% of the $19 million common fund created through our efforts.

14

54. As discussed in detail above, investigating, filing, prosecuting and settling the Actions demanded considerable time and labor, making this fee request reasonable.

55. Class Counsel's work paid great dividends for the Settlement Class. Our efforts were essential to achieving the Settlement currently before the Court. Taken together, the time and resources Class Counsel devoted to the Actions justify the fee we are requesting.

56. Litigation of a case like this requires counsel highly trained in class action law and procedure as well as the specialized issues these cases present. The members of the team of Class Counsel possess these attributes, and their participation added value to the successful representation of this Settlement Class.

57. In assessing the quality of representation by Class Counsel, the Court also should consider the quality of opposing counsel. BOK is represented by extremely able and diligent attorneys. They were worthy, highly competent adversaries.

58. BOK mounted vigorous defenses to these claims, denying any and all liability in the Actions. The time and expense demands on Class Counsel obviated our ability to accept and/or work on other matters.

59. Prosecuting the Actions was risky from the outset. While several risks existed, we limit our discussion to three of the most serious risks.

60. *First*, BOK would have raised its federal preemption argument under the NBA at all stages of the litigation. Had this litigation proceeded, BOK undoubtedly would have argued that the NBA preempts these claims on the grounds that they "significantly interfere" with its federally-authorized banking powers. In further support of its argument, BOK would have pointed to commentary by a federal banking agency, the OCC, suggesting that national banks have discretion to order debits as they see fit and that this decision falls within their federally-

15

granted powers. While Class Counsel believe that these specific claims—brought under state laws of general applicability and based on allegations of bad-faith conduct—are not preempted, no one doubts that the preemption issue involves complex issues of law and fact, and presented an ongoing risk to Plaintiffs' claims against BOK.

61. *Second*, BOK would have argued that the OCPA Act did not apply to the claims at issue. BOK argued that five Oklahoma decisions each held that regulation of an industry (or enforcement authority) is sufficient to bar a claim under the OCPA. In support of its argument that the OCC regulates the overdraft practices at issue, BOK produced several hundred pages of BOK consumer complaint documents sent to the OCC. BOK also relied on the OCC's enforcement action in *In the Matter of Woodforest National Bank*, AA-EC-10 (OCC Oct. 7, 2010), in which a national bank entered into a consent agreement regarding deceptive overdraft fee policies. While Class Counsel believe that BOK's overdraft practices are indeed covered by the OCPA, and prevailed on this issue before the Oklahoma state trial court, it is a complex issue and presented ongoing risks in Oklahoma appellate court.

62. *Third*, BOK would have continued to assert that language in its deposit account agreement shields it from liability for the claims asserted in the Actions. The agreement states: "If multiple items have been presented against the Account and there are insufficient funds to pay all the items presented, we may pay the items in any order we select[.]" Such language, BOK argued, expressly authorized it to engage in the challenged transaction sequencing and, as a material term in the account agreements, foreclosed any finding of breach of the covenant of good faith and fair dealing. BOK's contractual language would have allowed it to make the argument to the fact-finder that it told Plaintiffs exactly what it was going to do, and that it

16

cannot be held responsible for Plaintiffs' decision to maintain BOK checking accounts under these terms.

63. Each of these three risks, standing alone, could have impeded Plaintiffs' successful prosecution of these Actions at trial and in any ensuing appeal. Together, they demonstrate that Plaintiffs' claims against BOK were far from a "slam dunk" and that, in light of all the circumstances, the Settlement achieves an outstanding class-wide result.

64. Class Counsel prosecuted the Actions entirely on a contingent fee basis. In undertaking to prosecute these complex actions on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants the requested fee.

65. Public policy concerns—especially ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs whose individual claims would be denied a remedy—further justifies the requested fee award.

66. The progress of the Actions to date readily demonstrates the inherent risk that Class Counsel faced in taking these cases on a contingency fee basis. Despite ongoing effort in litigating before this Court and two state courts for nearly two years, Class Counsel remain completely uncompensated for the time and expenses we have invested. There can be no reasonable dispute that the Actions entailed substantial risk of nonpayment.

67. Furthermore, the time Class Counsel spent on the Actions was time that could not be spent on other matters. This factor thus strongly militates in favor of the requested fee.

68. Instead of facing additional years of costly and uncertain litigation, over 250,000 Settlement Class Members will receive an immediate benefit from a $19 million Settlement Fund—representing over 46% of the Settlement Class' damages. The Settlement represents an excellent result by any measure.

17

69.     The fee requested here matches the fee typically awarded in similar cases. As legions of decisions have recognized, a fee award of 30 percent of a common fund is well within the range of a customary fee. The requested fee falls squarely within the range of awards made in numerous cases brought in this District and the Eleventh Circuit.

70.     Other factors likewise support granting Class Counsel's fee request. As noted, the burdens of this litigation have precluded the pursuit of other cases. The relatively small size of most of the Class Counsel firms, and the commitment involved in accepting this representation, precluded these firms from working on other matters and accepting other representations. In addition, the fee request is firmly rooted in "the economics involved in prosecuting a class action." Without adequate compensation and financial reward, cases such as this simply could not be pursued.

**Expenses Incurred By Class Counsel**

71.     Class Counsel requests reimbursement for a total of $78,136.78 in expenses reasonably and necessarily incurred in furtherance of the litigation of the Actions and the Settlement. These costs and expenses are comprised of: (1) $7,206.50 for court filing fees, including *pro hac vice* fees; (2) $2,406.75 for court reporter fees; (3) $34,567.90 for mediation fees and expenses; and (4) $33,955.63 for the services of Class Counsel's expert whose analysis was necessary in order to determine the damages at issue in the Actions, to properly identify Settlement Class Members, and to properly allocate the Settlement Fund.[2]  These out-of-pocket expenses were reasonable and necessary.

---

[2] We have limited the categories of expenses for which reimbursement is being sought to those enumerated above, and are not seeking reimbursement for thousands of dollars in other costs and expenses that are routinely recovered in common fund class actions.

\*\*\*\*

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Miami, Florida on July 16, 2012.

        /s/ Robert C. Gilbert
        Robert C. Gilbert

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Washington, DC on July 16, 2012.

        /s/ Hassan A. Zavareei
        Hassan A. Zavareei

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Florida on July 16, 2012.

        /s/ Jeffrey M. Ostrow
        Jeffrey M. Ostrow

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Washington, DC on July 16, 2012.

        /s/ Burton H. Finkelstein
        Burton H. Finkelstein