# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION

*Terry Case v. Bank of Oklahoma, N.A.*
S.D. FL Case No. 1:11-cv-20815-JLK
W.D. OK Case No. 5:10-00901-L

## DECLARATION OF THOMAS E. SCOTT

1. My name is Thomas E. Scott, and I make this declaration in support of Class Counsel's Application for Attorney's Fees arising from their Settlement Agreement with BOKF, N.A. a/k/a Bank of Oklahoma.

2. I have been licensed to practice law in the State of Florida since 1972, and I am actively engaged in such practice throughout the State of Florida. I have had extensive experience in handling complex commercial cases and have presided over cases similar to the above-styled case. My curriculum *vitae* is attached as Exhibit "A."

3. I served almost five years as a Circuit Judge for the Eleventh Judicial Circuit, State of Florida, and five years as a United States District Judge for the

Southern District of Florida. For over three years, I was the United States Attorney for the Southern District of Florida. I have served as the Chairman of the Grievance Committee for United States District Court for the Southern District of Florida, on the Standing Committee on Professionalism of The Florida Bar, and as Co-Chairman of the American Bar Association Committee on Discovery Under the Litigation Section.

4.   I have been in private practice for over twenty years not including government service. My practice has to a large extent involved federal court litigation, including class actions. From my experience as both a practitioner, and state and federal judge, I am familiar with the fees charged by attorneys in this jurisdiction, including fees requested and awarded in class action cases. I am also familiar with the case law regarding the reasonableness of attorney's fees in the Eleventh Circuit and, in particular, *Camden I Condominium Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), which established that attorney's fees awarded from a common fund would be based on a percentage of the fund created for the class.

5.   I have been asked by Class Counsel in this case to render an opinion on their request for attorney's fees arising from the Settlement between a class of Bank of Oklahoma consumer account holders (the "Class") and BOKF, N.A. a/k/a Bank of Oklahoma, N.A. ("BOK" or the "Bank"). Specifically, I have been asked whether Class Counsel's request for attorney's fees of thirty percent (30%) of the

2

nineteen million dollar ($19,000,000) common fund created by the settlement in this case is reasonable under the law and the facts of this case.

6. In rendering my opinion, I have reviewed various materials filed in this case including, but not limited to, the following:

   a. Amended *Case* Complaint, *Eaton* Complaint, and *Ramer* Complaint;

   b. Orders on Motions to Dismiss in *Eaton* and *Ramer*;

   c. Answer to *Eaton* Complaint;

   d. Order Denying Motion for Summary Judgment in *Eaton*;

   e. Settlement Agreement and Release; and

   f. Motion for Preliminary Approval and Joint Declaration of Class Counsel in Support of Preliminary Approval; and

   g. Order Granting Preliminary Approval of Settlement.

7. I also reviewed the declaration I previously submitted in support of class counsel's application for attorneys' fees in connection with the $410 million settlement with Bank of America in MDL 2036 (DE # 1885-10), the declarations of Professor Samuel Issacharoff of NYU (DE # 1885-7), Professor Geoffrey Miller of NYU (DE # 1885-9), Professor Brian Fitzpatrick of Vanderbilt University (DE # 1885-11), and Professor Charles Silver of the University of Texas (DE # 1885-12 & 1885-13), all nationally recognized legal scholars on class action issues and

3

attorneys' fees, previously submitted in connection with the Bank of America settlement, and this Court's Order of Final Approval of Settlement, Authorizing Service Awards, Granting Application for Attorneys' Fees and Overruling Objections to Settlement that awarded attorneys' fees equal to thirty percent (30%) of the four hundred and ten million dollar ($410,000,000) common fund (DE # 2150). *See In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1358-68 (S.D. Fla. 2011).

8. In connection with rendering my opinion, I have also spoken to Class Counsel to obtain background about this specific case and the proceedings leading up to the Settlement. I am also generally familiar with the overall legal issues in MDL 2036 because I served as a mediator in another case involving a different bank.

9. Based on my review of the materials, my experience with the award of attorney's fees – both as a judge and a practitioner – and the law in our Circuit, it is my opinion that Class Counsel's request for attorney's fees of thirty percent (30%) of the nineteen million dollar ($19,000,000) common fund created by the settlement in this case is reasonable and justified.

10. In *Camden I Condominium Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), the Eleventh Circuit announced that in cases where a common fund has been created, attorney's fees were to be awarded based on a percentage of the fund

that had been created for the benefit of the class, and not the lodestar method: "[h]enceforth in this [C]ircuit, attorney's fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Id.* at 774. The Eleventh Circuit went on to note that while twenty-five percent (25%) appeared to be the "benchmark" percentage for a fee award, that benchmark "may be adjusted in accordance with the individual circumstances of each case." *Id.* at 775.

11. *Camden I* also concluded that in determining the appropriate percentage, a district court should consider the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). Those factors are the following:

    a. time and labor required;

    b. novelty and difficulty of the questions involved;

    c. the skill requisite to perform the legal services properly;

    d. the preclusion of other employment by the attorney due to acceptance of the case;

    e. the customary fee;

    f. whether the fee is fixed or contingent;

    g. time limitations imposed by the client or the circumstances;

    h. the amount involved and the results obtained;

    i. the experience, reputation, and ability of the attorneys;

    j. the undesirability of the case;

    k. the nature and length of the professional relationship with the client; and

    l. awards in similar cases.

12. In my opinion, an analysis of these factors strongly supports Class Counsel's request for a thirty percent (30%) fee of the nineteen million dollar ($19,000,000) common fund created by the settlement in this case.

13. **Time and labor required**: These three class action lawsuits brought against BOK by proposed classes of hundreds of thousands of account holders were filed in August and September 2010. In November 2010, the Judicial Panel on Multidistrict Litigation transferred *Case* to this Court as part of MDL 2036. Two parallel actions against BOK, *Eaton* and *Ramer*, continued to be prosecuted in Oklahoma state court. Over the past two years, the lawyers comprising the Class Counsel firms have worked long and hard to obtain an outstanding result for the Class.

Among other things, Class Counsel investigated potential plaintiffs' claims and reviewed dozens of sets of individual customer records; researched, drafted and filed complaints in federal and state courts; researched and opposed BOK's motion to avoid transfer of *Case* to MDL 2036; researched, briefed and argued

oppositions to BOK's motions to dismiss and for summary judgment; drafted and propounded extensive written discovery; reviewed over twenty five thousand (25,000) pages of documents and electronic data; prepared for and deposed BOK's corporate representative; and retained and worked with experts to analyze sample transactional account data and aggregate data that BOK produced regarding its overdraft fee practices in preparation for settlement discussions. When the parties eventually began exploring settlement, those discussions were adversarial. The full day mediation session, conducted by a retired United States District Judge, did not initially result in an agreement to settle the litigation. Through the continued efforts of the mediator, the parties subsequently reached an agreement in principle to settle the litigation. It took several additional months of negotiations to complete and execute a comprehensive written Settlement Agreement. Undoubtedly, the time and labor required and expended by Class Counsel warrant the requested fee of thirty percent (30%).

14.  ***The novelty and difficulty of the questions involved***: This factor, along with the results obtained, are the most compelling factors supporting the attorney's fees requested in this case. This was no ordinary class action. The novelty and difficulty of the issues involved created significant risks for Class Counsel. The risks were several, three of which are discussed below.

The first risk involved federal preemption, specifically BOK's argument that the Class' state law claims are preempted by the National Bank Act ("NBA"). In previously rejecting this argument when raised by other banks in MDL 2036, this Court made it expressly clear that it was rejecting the preemption argument at "this stage" of the litigation, indicating that a different result was possible once discovery was completed. The fact that preemption was a significant risk was underscored when, during the course of MDL 2036, the Eleventh Circuit held that a Florida statute banning check-cashing fees was preempted by the NBA and its implementing regulations. *See Baptista v. J.P. Morgan Chase Bank, N.A.* 640 F.3d 1194 (11th Cir. 2011). *Baptista* prompted several other banks in MDL 2036 to renew their motions for dismissal, albeit unsuccessfully, on the grounds of NBA preemption. Indeed, while the certified class of Wells Fargo customers succeeded in recovering a $203 million judgment in *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010), NBA preemption is the primary issue raised by Wells Fargo in its pending appeal before the United States Court of Appeal for the Ninth Circuit.

A second difficult issue generating significant risk involved BOK's argument that the Class' claims under the Oklahoma Consumer Protection Act, breach of contract and unjust enrichment failed as a matter of law. Although the

state courts denied BOK's motion to dismiss the consumer protection and contract claim, the state court presiding *Eaton* dismissed the unjust enrichment claim.

A third issue that generated risk involved BOK's position that it had disclosed to its customers the very practice that the Class alleged was unlawful. According to BOK, its deposit agreement expressly informed its customers that the Bank could post and process items, including withdrawals, in any order that it chose, and that BOK generally adequately disclosed in the account agreement that it processed and posted items from the highest to lowest dollar amount. As a result, BOK had a colorable argument that its customers were aware and had consented to the challenged practice of posting debits and withdrawals from highest to lowest dollar amount.

These three issues, and others, presented significant risks that Class Counsel undertook when accepting this representation.

15. ***The skill requisite to perform the legal services properly, and the reputation and experience of the attorneys***:[1] Undoubtedly, Class Counsel had the skill required to perform the services required in this complex class action. I have known the Co-Lead Counsel Aaron Podhurst and Bruce Rogow for many years. They are among the finest lawyers in our District, if not the country. Their

---

[1] For the sake of brevity and because they overlap, I have consolidated the two factors dealing with the skills, experience and reputation of the attorneys handling the case into a single discussion.

reputation as highly skilled and ethical advocates precedes them. I am also very familiar with some of the other lawyers and firms that serve on the Plaintiffs' Executive Committee, including Robert Josefsberg, Peter Prieto and Steven Marks from the firm of Podhurst Orseck, P.A., and Robert Gilbert and Stuart Grossman of Grossman Roth, P.A. They are all known for the high quality of their work, especially in complex and sophisticated litigation, including class actions. Working closely with the other firms that comprise Class Counsel, this talented team of lawyers accomplished outstanding results for the Class in the face of substantial risks. Had they not had the requisite skill to perform the necessary services, it is highly doubtful Class Counsel could have achieved the results obtained for the Class in this case.

16. ***Preclusion of other employment because of this case***: I understand from my discussions with Class Counsel that this case has taken up a significant amount of time of a number of the firms designated as Class Counsel in the case against BOK. It is also my understanding that because of this case they have turned away other work that they would otherwise have accepted. This, in my opinion, is not surprising given the complexity and difficulty of the issues involved, as well as the amount at stake.

17. ***The customary fee:*** In contingency cases such as this one, the fees agreed between client and counsel normally range between twenty-five percent

(25%) and forty percent (40%). Accordingly, the request of thirty percent (30%) being made by Class Counsel is well within the range of customary fees for similar work in our community.

18.     *A contingent or fixed fee:* This case, like virtually all consumer class actions, was undertaken – with great risk I might add – on a contingency basis. Up to this point, Class Counsel have spent an enormous of their time and advanced substantial dollars in expenses without receiving any compensation. Given their work and the result in this case, it is now time they be compensated appropriately.

19.     *Time limitations:* It is no coincidence that this complex class action was resolved, after contested motions to dismiss, the production and review of documents and electronic data and other discovery, and a full day mediation session. Generally, these cases tend to take longer to resolve. The tradition in this District, and in this Court in particular, however, is to resolve cases effectively, yet efficiently. Clearly, and based on my conversations with Class Counsel, they met all of the deadlines that this Court established to ensure that this case was litigated expeditiously. All deadlines and time limitations imposed by this Court, which is well known for its diligence and efficiency, were met and is another factor that should be considered.

20. ***Amount involved and results obtained:*** The result obtained in this case, when coupled with the risks undertaken by Class Counsel, are the most significant factors to be considered when assessing Class Counsel's fee request.

Under the Settlement, BOK will pay a total of nineteen million dollars ($19,000,000) to create a common fund for the benefit of the Class. According to Class Counsel, the nineteen million dollar ($19,000,000) common fund recovery represents approximately forty-six percent (46%) of the total damages sustained by the Class under the most probable damage theory, assuming this case were to successfully proceed to final judgment in favor of the Class and that judgment was affirmed on appeal. In addition to the nineteen million dollar ($19,000,000) common fund, BOK will pay all costs associated with providing notice to the Class and administration of the Settlement, which are estimated to be approximately three hundred and fifty thousand dollars ($350,000).

In spite of the risks I discussed previously, the results obtained by Class Counsel in this case for the Class are excellent. Class Counsel are to be commended, as well as appropriately compensated, for such a result.

21. ***The undesirability of the case:*** This case was undesirable not because it was controversial, but because of the number of significant legal risks it presented. Very few lawyers, when this case was first brought, would have placed

their reputations and finances at risk, given the obstacles in the case. That Class Counsel did so in light of those risks should weigh in favor of their fee request.

22. **_The nature and length of the professional relationship with the client:_** In some cases, having either a longstanding or strong relationship with a client justifies accepting a case with significant risks because other benefits may come from the relationship. In this case, however, no such client relationship previously existed with virtually any of the class representatives. This lack of an existing relationship with the clients heightened the risks since Class Counsel did not know their clients prior to this case. The lack of an existing relationship also made it unlikely that any other benefit would result from the representation.

23. **_Awards in similar cases:_** Based on my experience as a judge and a long-time practitioner in this District, I believe that the fee request of thirty percent (30%) of the nineteen million dollar ($19,000,000) common fund created by the settlement in this case is consistent with other fee awards in similar cases in this District. Those other similar fee awards include, but are certainly not limited to, the following:

   a. *In re Checking Account Overdraft Litigation*, 830 F. Supp. 2d 1330, 1358-68 (S.D. Fla. 2011) (awarding fees of 30% on settlement of $410 million);

   b. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006), (awarding fees of 31 1/3 % on settlement of $1.06 billion);

    c. *In re: Terazosin Hydrochloride Antitrust Litigation,* 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33.3% on settlement of over $30 million);

    d. *In re: Managed Care Litig. v. Aetna,* MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% on settlement of $100 million);

    e. *Gutter v. E.I. Dupont De Nemours & Co.,* 95-2152-Civ-Gold (S.D. Fla. May 30, 2003) (awarding fees of 33.3% on settlement of $77.5 million); and

    f. *Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.3% on settlement of $40 million).

24. In conclusion, based on my experience and my assessment of the work done by Class Counsel, their fee request of thirty percent (30%) of the nineteen million dollar ($19,000,000) common fund is reasonable and justified. Class Counsel undertook an incredibly risky and undesirable case, and through their diligence, perseverance and skill, obtained an outstanding result for the Class. Class Counsel are to be commended for such an excellent result, and should be compensated in accord with their request because it is warranted and reasonable given similar fee awards.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 9th, 2012

Thomas E. Scott, Esq.

14

# EXHIBIT A

# THOMAS E. SCOTT

| | | |
|---|---|---|
| **JUDICIAL POSITIONS** | United States District Judge, Southern District of Florida (Miami Division) | 1985-1990 |
| | Circuit Judge, Eleventh Judicial Circuit, State of Florida (Dade County) | 1979-1984 |
| | Chairman, Grievance Committee United States District Court Southern District of Florida | 1994-1997 |
| **GOVERNMENT POSITIONS** | United States Attorney, Southern District of Florida | August 29, 1997 to May 30, 2000 |
| | Honorable James W. Kehoe, Circuit Judge Eleventh Judicial Circuit, State of Florida (Dade County) Law Clerk/Bailiff | 1970-1971 |
| **MILITARY SERVICE** | United States Army First Lieutenant Military Intelligence | |
| **PRIVATE PRACTICE** | Cole, Scott & Kissane, P.A., Partner | 2001 - Present |
| | Shook, Hardy & Bacon L.L.P, Partner, Miami, FL | 2000-2001 |
| | Davis, Scott, Weber & Edwards, Managing Partner, Miami, FL | 1992-1997 |
| | Steel, Hector & Davis, Partner, Miami, FL | 1990-1992 |
| | Kimbrell, Hamann, Jennings, Womack, Carlson & Kniskern, P.A. Member of the firm, Miami, FL | 1984-1985 |
| | Huebner, Shaw & Bannel, Ft. Lauderdale, FL | 1976-1977 |
| | Bradford, Williams, McKay, Kimbrell, Hamann & Jennings, P.A. Associate and them member of the firm, Miami FL | 1972-1979 |
| **EDUCATION** | University of Virginia, Charlottesville, VA, LL.M., Judicial Process | 1989 |
| | University of Miami, Coral Gables, FL, J.D. B.A., Economics | 1972 1969 |

| | |
|---|---|
| **PROFESSIONAL ASSOCIATIONS** | Florida Bar Association |
| | American Bar Association |
| | Who's Who in American Law |
| **TEACHING POSITIONS** | Instructor, Professional Responsibility, St. Thomas University School of Law |
| | Instructor, Product Liability, St. Thomas University School of Law |
| | Adjunct Professor, Litigation Skills Program, University of Miami School of Law |
| | Instructor, NITA Program, University of Florida Law School |
| | Instructor, Trial Advocacy Program, Nova University Law School |
| **AWARDS AND ACTIVITIES** | Judicial Nominating Committee, Northern, Southern and Middle Districts |
| | Member and Fellow, Product Liability Advisory Council Foundation |
| | Co-Chairman, American Bar Association Committee on Discovery Under the Litigation Section |
| | Chairman, Standing Committee on Professionalism, Florida Bar Association |
| | Past Chairman, Security Committee, United States District Court Southern District of Florida |
| | Outstanding Jurist Award, Young Lawyers' Section Dade County Bar Association |
| | AV Rating, Martindale-Hubbell |
| **PUBLICATIONS** | "Pretrial Detention Under the Bail Reform Act of 1984: An Empirical Analysis," American Criminal Law Review (Georgetown Law Center) (Fall 1990) <br> "A Compact for Bench and Bar." 6 Trial Advocate Quarterly 9 (January 1987) <br> Judges' Handbook on Florida Law (Chapter on FELA and Jones Act) <br> Florida Defense Counsel (Fall 1981) (article on products liability and crash worthiness doctrine). |

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

Sworn to (or affirmed) and subscribed before me this 16 day of Sept, 2011, by Thomas Scott



Signature of Notary Public-State of Florida

_____
Name of Notary Typed, Printed or Stamped

Personally Known ✓ OR Produced Identification _____

Type of Identification Produced _____

DEBBIE ARENCIBIA
Notary Public - State of Florida
My Comm. Expires Mar 21, 2014
Commission # DD 973337
Bonded Through National Notary Assn.

11