# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO FOURTH TRANCHE ACTION:**

*Harris v. Associated Bank, N.A.*
W.D. Wis. Case No. 3:10-cv-182-BBC
S.D. Fla. Case No. 1:10-cv-22948-JLK

---

# PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS <u>AND INCORPORATED MEMORANDUM OF LAW</u>

<u>**TABLE OF CONTENTS**</u>

<u>**Page**</u>

I.     **INTRODUCTION**.................................................................................. 1

II.    **STATEMENT OF FACTS** .................................................................. 4

    A.    Factual Background ........................................................................ 4

        1.    Procedural History ...................................................... 4

        2.    Class Counsel's Investigations .................................. 6

    B.    Summary of the Settlement Terms .............................................. 7

        1.    The Settlement Class.................................................. 7

        2.    Relief for the Benefit of the Class............................. 8

            (a)    Monetary Relief ......................................... 8

            (b)    Non-Monetary Relief ..............................10

                (i)    Current Posting Order ....................10

                (ii)    Overdraft Fee Limit .......................11

                (iii)    Overdraft Fee Amount....................11

                (iv)    Three Year Period...........................11

        3.    Class Release ............................................................11

        4.    The Notice Program .................................................. 12

            (a)    The Mailed Notice Program..................... 13

            (b)    The Published Notice Program ................. 14

            (c)    The Settlement Website and Toll-Free Settlement Line.............. 15

        5.    Settlement Administration ........................................ 15

        6.    Settlement Termination............................................. 17

        7.    Class Representatives' Service Awards..................... 17

        8.    Attorneys' Fees and Costs ........................................ 18

III.    **ARGUMENT** .................................................................................. 18

    A.    The Legal Standard for Preliminary Approval ........................... 18

    B.    This Settlement Satisfies The Criteria For Preliminary Settlement Approval .................................................................... 20

        1.    This Settlement Is The Product Of Good Faith, Informed and Arm's Length Negotiations................. 20

        2.    The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable ......................................... 22

## TABLE OF CONTENTS

**Page**

(a)   Likelihood of Success at Trial ................................................. 22

(b)   Range of Possible Recovery and The Point on or Below the
Range of Recovery at Which a Settlement is Fair ...................... 23

(c)   Complexity, Expense and Duration of Litigation ....................... 24

(d)   Stage of the Proceedings ........................................................... 24

C.    Certification Of The Settlement Class Is Appropriate ......................................... 25

D.    The Court Should Approve The Proposed Notice Program, Because It Is
Constitutionally Sound .......................................................................................... 28

E.    The Court Should Schedule A Final Approval Hearing ...................................... 29

**IV.**   **CONCLUSION** ................................................................................................. 29

I.      **INTRODUCTION**

Plaintiffs respectfully move for Preliminary Approval of the Settlement Agreement and Release ("Settlement" or "Agreement," attached as Exhibit A), which will resolve Plaintiffs' claims against Associated Bank, N.A. ("Associated" or "Bank") in the above-captioned action (the "Action").[1]   The Court should grant Preliminary Approval because the Settlement - which includes $13 million in monetary relief and non-monetary practice changes that have and will continue to result in millions of dollars of savings to the Settlement Class - is well within the range of reasonableness, consistent with applicable case law.   Indeed, the Settlement, which secures more than fifty percent of the most probable class-wide damages, is an excellent result for the class of Associated account holders defined in paragraph 40 of the Settlement Agreement ("Settlement Class").

Accordingly, Plaintiffs respectfully request that the Court approve the Settlement's Notice Program and the form and content of the Notices attached to the Agreement as Exhibits 1-3; certify a Settlement Class under Rule 23 of the Federal Rules of Civil Procedure; and schedule a Final Approval Hearing.   For the Court's convenience, Plaintiffs attach a proposed Order that grants Preliminary Approval, approves the Notice Program, certifies the Settlement Class, and schedules a Final Approval Hearing.

Plaintiffs sued on behalf of themselves and all others similarly situated who incurred Overdraft Fees as a result of Associated's practice of re-sequencing Debit Card Transactions from highest dollar amount to lowest dollar amount ("Debit Re-sequencing").   Plaintiffs allege that Associated systemically engaged in Debit Re-sequencing of Settlement Class Members' Debit Card Transactions to maximize the Bank's Overdraft Fee revenue.   According to Plaintiffs,

---

[1] "Action" and all other capitalized terms used herein have the same meanings ascribed in the Agreement.

Associated's practices violate the Bank's contractual and good faith duties to the Settlement Class, are substantively and procedurally unconscionable, violate state unfair trade practices laws, and result in conversion and unjust enrichment.

The Settlement satisfies all Eleventh Circuit criteria for settlement approval. One of the keystones of this Settlement is that Settlement Class Members, who do not opt out of the Settlement, automatically—without having to do anything at all—will receive their *pro rata* share of the Net Settlement Fund. There are no claims forms to fill out, and Settlement Class Members will not be asked to prove that they were damaged as a result of the Bank's Debit Re-sequencing. Instead, Class Counsel and their experts will use available Associated data to determine which Associated checking, savings and demand deposit account holders ("Account holders") were affected by Debit Re-sequencing, and will apply a formula (described in paragraphs 77 and 81-83 of the Agreement) to calculate each eligible Settlement Class Member's *pro rata* share of the Net Settlement Fund.

Another testament to the reasonableness and fairness of the Settlement is the magnitude of the Settlement Fund. Class Counsel negotiated a $13 million cash payment, which represents over fifty percent (50%) of the most likely recovery the Settlement Class could have achieved at trial. This is an extraordinary recovery in a consumer class action; it equals or exceeds the percentage recovery achieved in most consumer class action settlements, including prior settlements in this MDL. The recovery of over one-half of the probable damages falls well within a reasonable range of recovery, given the risks.

This Action involves sharply opposed positions on several fundamental legal questions, including whether Associated violated its duty of good faith and fair dealing to its customers when it engaged in Debit Re-sequencing. Associated consistently argued that relevant account agreements expressly authorize its Debit Re-sequencing practices. Additionally, while this Court

denied an omnibus motion to dismiss filed by other banks on the same and other issues, including federal preemption under the Nation Bank Act, the Court indicated that its view on these defenses was not fixed and could change based on facts developed through discovery.

Plaintiffs have litigated this Action for over two years.  The litigation has been hard-fought as they have engaged in extensive formal discovery, the production of thousands of pages of documents, and motion practice before this Court.  Settlement discussions began in September, 2011, and the Parties mediated in Boston on November 11, 2011, under the supervision of Professor Eric Green, a nationally recognized mediator.  With this motion, Plaintiffs seek Preliminary Approval so that they can notify the Settlement Class of the Settlement terms, and provide them an opportunity to opt out of or object to the Settlement.

Therefore, as detailed below, Plaintiffs respectfully request that the Court take the following initial steps in the Settlement approval process: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure and appoint Pamela Harris, Robert Selvig, Charlene Selvig, and Edith Whitehead as Class Representatives; (3) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices attached to the Agreement as Exhibits 1, 2 and 3; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) stay the Action against Associated pending Final Approval of the Settlement; (6) appoint as Class Counsel and Settlement Class Counsel the attorneys and law firms listed in paragraphs 12 and 41 of the Agreement, respectively; and (7) schedule a Final Approval Hearing to occur no sooner than the week of January 7, 2013 (if convenient for the Court).

II.      **STATEMENT OF FACTS**

   A.      **Factual Background.**

   The Court is generally familiar with the facts giving rise to Plaintiffs' claims and Associated's defenses.  Plaintiffs reference such facts below only to the extent pertinent to the issues raised in this motion.

   1.      **Procedural History.**

   Plaintiffs brought the Action seeking monetary damages, restitution and declaratory relief arising from Associated's Debit Re-sequencing practices that Plaintiffs contend were designed to increase the number of Overdraft Fees its customers incurred.  *See generally* First Amended Class Action Complaint [DE # 988].  Plaintiffs alleged that as a result of Associated's manipulation of the order in which customers' Debit Card Transactions were posted, customers' funds were depleted more rapidly than they should have been, and Plaintiffs and Settlement Class Members paid more Overdraft Fees than they should have paid.  *Id.*

   Associated denies all of Plaintiffs' allegations.  The Bank consistently defended its conduct by, *inter alia*, highlighting language in the relevant account agreements that it contends expressly advises customers of and permits the Debit Re-sequencing practices at issue.  (Joint Declaration of Robert C. Gilbert and Jeffrey M. Ostrow ("Joint Decl.") ¶ 6, attached hereto as Exhibit B.)  Furthermore, the Bank advanced a medley of other defenses.  *See generally* Answer and Affirmative Defenses to First Amended Complaint [DE # 1360]; (Joint Decl. ¶ 6.)

   On April 2, 2010, Plaintiff Pamela Harris filed the class action complaint, seeking monetary damages, restitution and declaratory relief from Associated based on its alleged unfair assessment and collection of Overdraft Fees on Debit Card Transactions.  On August 9, 2010, the Judicial Panel on Multi-District Litigation transferred the case to this Court for inclusion in MDL No. 2036.

On August 16, 2010, Associated modified its overdraft policies and implemented a cap on the number of Overdraft Fees it assessed a single Account on any given day.  (Joint Decl. ¶ 9.)

On December 6, 2010, Plaintiffs filed a First Amended Class Action Complaint against Associated. [DE # 988.]  On January 20, 2011, Associated filed a Motion to Dismiss.  [DE # 1080.]

On February 19, 2011, as result of the litigation, Associated modified some of its Debit Card policies and practices, including its posting order, so that Debit Card Transactions are now processed in chronological order.  Agreement ¶ 48; (Joint Decl. ¶ 11.)

On April 4, 2011, the Motion to Dismiss was denied, with the exception of the Wisconsin consumer protection claim.  [DE # 1323.]  On April 21, 2011, Associated filed its Answer and Affirmative Defenses [DE # 1360] and on July 6, 2011, Associated filed its Amended Answer and Affirmative Defenses. [DE # 1695.]

On May 23, 2011, Plaintiffs propounded initial discovery, consisting of a first request for production of documents, first set of interrogatories and first requests for admissions. (Joint Decl. ¶ 13.)  On June 21 and 22, 2011, Associated served its responses to Plaintiffs' written discovery. *Id.*  On November 4 and 11, 2011, Associated supplemented its interrogatory responses.  *Id.*  In response to Plaintiffs' request for production, Associated produced over 15,000 pages of documents to Plaintiffs.  *Id.*

Beginning in September, 2011, the Parties engaged in preliminary settlement discussions. On November 11, 2011, the Parties participated in a formal full day mediation session in Boston under the auspices of Professor Eric Green of Resolutions, LLC. (Joint Decl. ¶ 14.)   In advance of the mediation, Associated provided Class Counsel with sample transactional and aggregate data regarding its Overdraft Fee revenue.  *Id.*

As a result of the mediation, the Parties signed a Memorandum of Understanding that memorialized, subject to a mutually agreeable written settlement agreement and subject to Preliminary Approval and Final Approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally, and forever resolve, discharge and release all rights and claims of the Settlement Class Members, on such terms as reflected herein, including Associated's agreement to pay the sum of $13 million to create a common fund for the benefit of the Settlement Class, and to separately pay the costs of class notice and settlement administration.  (Joint Decl. ¶ 15.)

On November 28, 2011, the Parties filed a Notice of Settlement [DE # 2169], and on July 18, 2012, after nearly eight months of negotiations, the Parties signed the Agreement. (Joint Decl. ¶ 17.)

2.     <strong><u>Class Counsel's Investigation.</u></strong>

Class Counsel spent many hours investigating the claims of dozens of potential plaintiffs against Associated.  (Joint Decl. ¶ 7.)  Class Counsel interviewed a number of customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers.  *Id.*  This information was essential to Class Counsel's ability to understand the nature of Associated's conduct, the language of the Account agreements at issue and potential relief and remedies.  *Id.*

Class Counsel also expended significant resources researching and developing the legal claims at issue.  *Id.*  Mindful of the Court's emphasis on the development of the factual record in its denial of most points raised in the omnibus motion to dismiss filed by first tranche defendants, Class Counsel crafted document requests and interrogatories with an eye toward class certification, summary judgment and trial.  *Id.*

In response to those discovery requests, Associated produced more than fifteen thousand pages of documents. (Joint Decl. ¶ 13.)   Class Counsel created a document review team whose task was to review and analyze the Bank's documents.   To make the review and subsequent litigation more efficient, Class Counsel established coding procedures for electronic review of the documents produced, and team members remained in contact with each other to ensure that all counsel became aware of significant emerging evidence in real time.  (Joint Decl. ¶ 53.)

After the Parties executed the memorandum of understanding, Class Counsel engaged in additional settlement-related investigation to determine, among other things, the most appropriate method by which to implement the plan for direct allocation of the Net Settlement funds to Settlement Class Members who do not opt out of the Settlement.  (Joint Decl. ¶ 23.) That investigation required Class Counsel and their experts to analyze the relevant transactional data relating to Overdraft Fees imposed upon Settlement Class Members, and to determine the fairest and most appropriate distribution formula in light of the data that Associated possesses. *Id.*

**B.**    **Summary of the Settlement Terms.**

The Settlement's terms are detailed in the Agreement attached Exhibit A.  The following is a summary of the material terms of the Settlement.

**1.**    **The Settlement Class.**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.  The Settlement Class is defined as:

> All holders of any Associated Bank Account in the United States who, during the Class Period, incurred one or more Overdraft Fees in connection with Associated Bank's Debit Re-sequencing Overdraft Practices.

(Agreement ¶ 40).   Class Period "means the period from April 2, 2000 through the date of Preliminary Approval for Illinois Settlement Class Members, and the period from January 1, 2004 through the date of Preliminary Approval for Wisconsin, Minnesota, and other non-Illinois Settlement Class Members. (Agreement ¶ 13).  Determination of the Settlement Class Members' states of residence shall be based on the current or last known mailing addresses maintained in Associated Bank's records of Accounts."  *Id.*

### 2. <u>Relief for the Benefit of the Settlement Class.</u>

The Settlement consists of three main components: (a) a $13 million cash settlement fund to be distributed to Settlement Class Members who do not opt out of the Settlement Class; (b) significant practice changes in the way Associated posts Debit Card Transactions and assesses Overdraft Fees resulting in millions of dollars of savings to the Settlement Class; and (c) the separate payment of all costs of providing Notice to the Settlement Class and all costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator.  (Agreement ¶¶ 46-49); (Joint Decl. ¶¶ 2, 18, 24-28.)

### (a) <u>Monetary Relief</u>.

The Settlement requires Associated to deposit $13 million into an Escrow Account within fourteen (14) calendar days following this Court's Preliminary Approval of the Settlement. (Agreement ¶ 46).  That deposit will create the Settlement Fund.  Settlement Class Members who do not opt out of the Settlement do not have to submit claims or take any other affirmative step to receive relief under the Settlement.   Instead, within 30 days of the Effective Date of the Settlement (Agreement ¶ 80), Associated and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members who do not opt out of the Settlement.  *Id.* Payments to Settlement Class Members who do not opt out of the Settlement and who are Current Account Holders will be made by the Bank crediting such Settlement Class Members'

accounts, and notifying them of the credit.  (Agreement ¶ 84.)  Settlement Class Members who do not opt out of the Settlement and who are Former Account Holders will receive payments by checks mailed by the Settlement Administrator.  (Agreement ¶ 86.)

Thus, all Settlement Class Members who do not opt out of the Settlement and who experienced a "Positive Differential Overdraft Fee" will receive a *pro rata* distribution of the Net Settlement Fund.   (Agreement ¶ 80).   The Positive Differential Overdraft Fee analysis determines, among other things, which Associated Account holders were assessed additional Overdraft Fees that would not have been assessed if the Bank had used a posting sequence or method for Debit Card Transactions other than ordering them from highest to lowest dollar amount, and how much in additional Overdraft Fees those Account holders paid.   This calculation involves a complex multi-step process described in detail in the Agreement. (Agreement ¶ 78.)   The Net Settlement Fund – which will be distributed *pro rata* among Settlement Class Members who do not opt out of the Settlement – is equal to the Settlement Fund plus any accrued interest, and less: (a) the amount of any Court-awarded attorneys' fees, costs and expenses to Class Counsel; and (b) the amount of any Court-awarded Service Awards to the Plaintiffs.  (Agreement ¶ 79).

Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member Payments.  (Agreement ¶ 88.)  Within one year plus thirty days after the date the Settlement Administrator mails the first Settlement Class Member Payment, any funds remaining in the Settlement Fund shall be distributed as follows: (a) to Associated in such amount as to reimburse Associated for the actual amounts paid by Associated to the Settlement Administrator or Notice Administrator for costs of Class Notice and Settlement Administration;

(b) at the election and complete discretion of Settlement Class Counsel and counsel for Associated, any funds remaining may be distributed to Settlement Class Members who received Settlement Class Member Payments on a *pro rata* basis, to the extent feasible and practical in light of the costs of administering such subsequent payments; or (c) at the election of Settlement Class Counsel and counsel for Associated Bank, the funds may be distributed through a residual *cy pres* program. (Agreement ¶ 89). The residual *cy pres* recipient(s) shall be agreed upon by Associated and Settlement Class Counsel, and approved by the Court. The purpose of any residual *cy pres* distribution shall be to benefit consumer financial literacy education, and to educate and assist consumers with financial services issues through advisory and related services (excluding litigation). Any residual *cy pres* distribution shall be paid as soon as reasonably possible following the completion of distribution of funds to the Settlement Class Members. *Id.*

### (b)   <u>Non-monetary Relief</u>.

Subject to Court approval and as additional consideration for the releases of the claims of the Settlement Class, Associated agrees to implement no later than the Effective Date, the practice changes detailed below with respect to Debit Card Transactions for its Accounts.

### (i)   <u>Current Posting Order.</u>

On February 19, 2011, as a result of the Action, Associated changed its posting order policy for Debit Card Transactions to the following: (1) credits from high to low; (2) force post/closing debits from low to high; (3) POS/ATM debits in chronological order (from oldest to most recent based on the time and date the transaction was authorized), (4) wire/internal debits from low to high; (5) ACH/internal transfer debits from low to high; (6) checks in check number order from lowest to highest number; and (7) miscellaneous debits from low to high. For categories (3) and (5) above, if the specific order cannot be (*e.g.*, no check number on a check), Associated pays the items in low to high order. (Agreement ¶ 48); (Joint Decl. ¶ 25.)

### (ii)    Overdraft Fee Limit.

On August 16, 2010, Associated changed its Overdraft Fee policy to cap the number of Overdraft Fees assessed with respect to Debit Card Transactions for Accounts at a maximum of four (4) per day. (Joint Decl. ¶ 26.)

### (iii)    Overdraft Fee Amount.

In April, 2009, Associated began assessing an Overdraft Fee of $35.00 for Debit Card Transactions that resulted in an overdraft.  As a result of this Action, Associated has agreed that $35.00 will be the maximum amount it will assess for as an Overdraft Fee.  (Joint Decl. ¶ 27.)

### (iv)    Three Year Period.

Associated agrees that for a minimum period of three years from the date of Final Approval it will not change its current posting order described in section (a) herein, the overdraft transaction cap described in section (b), or the overdraft fee amount described in section (c) herein, in any material manner that would be less beneficial for its customers, except that Associated at all times retains the right on a prospective basis to modify its policies and practices based on amendments or clarifications of applicable law as enacted or interpreted by the courts, Congress, or federal regulators or as necessary for Associated to comply with any such amendment, interpretation or clarification. (Agreement ¶ 48).

The practice changes described herein are a significant benefit to the Settlement Class and have and will continue to result in substantial monetary savings to the Settlement Class and the Bank's customers over the period from which the practice was changed until at least three years after Final Approval.   (Joint Decl. ¶¶ 2, 15, and 28.)

### 3.    Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out of the Settlement will be deemed to have released Associated from claims

relating to the subject matter of the Action.  The detailed release language can be found in Section XVI of the Agreement.

4.     **The Notice Program.**

The Notice Program in this Settlement (Agreement, Section X) is designed to provide the best notice practicable, and is tailored to take advantage of the information Associated has available about the Settlement Class.  The Notice Program is reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Action, class certification, the Settlement terms, Class Counsel's Fee Application and request for Service Awards for Plaintiffs, as well as their rights to opt-out of the Settlement Class or object to the Settlement, Class Counsel's Fee Application, and/or the request for Service Awards.  The Notice and Notice Program constitute sufficient notice to all persons entitled to notice.  The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.  (Joint Decl. ¶ 30).

The Notice Program is comprised of three parts:  (1) direct mail postcard notice ("Mailed Notice") to all Settlement Class Members; (2) publication notice ("Published Notice") designed to reach those Settlement Class Members for whom direct mail notice is not possible; (3) and a "Long Form" notice containing more detail than the direct mail or publication notices, that will be available on the Settlement website (www.ABOverdraftsettlement.com) and via U.S. mail upon request. (Agreement ¶¶ 25, 66); Joint Decl. ¶ 31.)

All forms of Notice to the Settlement Class will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from ("opt out") of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date of the Final Approval Hearing; and the

address of the Settlement Website at which Settlement Class Members may access the Agreement and other related documents and information. (Agreement ¶¶ 62-64 & Exs. 1-3).

In addition to the information described above, the Long Form notice will also describe the procedure that Settlement Class Members must follow to opt out of the Settlement or to object to the Settlement, and/or to Class Counsel's Fee Application. *See* Ex. 3 to Agreement. All opt-outs must be postmarked no later than the Opt-Out Deadline (no later than 28 days prior to Final Approval Hearing), and any objections must be postmarked no later than the last day of the Opt-Out Period. For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any such cases, and any relevant orders issued in response to such past objections; a statement confirming whether the objector will appear at the Final Approval Hearing and a description of counsel or witnesses who will appear on behalf of the objector at the Final Approval Hearing; and the objector's signature. (Agreement ¶ 65).

(a)    **The Mailed Notice Program**

The Settlement Administrator will administer the Mailed Notice Program. Within 28 days from the date that the Settlement Administrator receives from Settlement Class Counsel and Associated the data files that identify the names and last known addresses of the identifiable Settlement Class Members, the Settlement Administrator will run such addresses through the National Change of Address Database, and will mail to all such Settlement Class Members postcards that contain the Mailed Notice ("Initial Mailed Notice"). (Agreement ¶ 68).

The Settlement Administrator will perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable. (Agreement ¶ 69). No later than 35 days

from the Initial Mailed Notice date, the Settlement Administrator will complete the re-mailing of Mailed Notice postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process"). *Id.* Within seven days after the Settlement Administrator completes the Notice Re-mailing Process, the Settlement Administrator will provide Settlement Class Counsel and Associated's counsel an affidavit that confirms that the Mailed Notice Program was completed in a timely manner. (Agreement ¶ 70). Settlement Class Counsel will file such affidavit with the Court in conjunction with Plaintiffs' motion for Final Approval. *Id.* The Mailed Notice Program (which is comprised of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 63 days before the Final Approval Hearing. *Id.*

**(b)**      <u>**The Published Notice Program**</u>

The Notice Administrator shall administer the Published Notice Program, which shall be comprised exclusively of the following: a single 1/4-page weekday insertion in the top newspaper in the following designated marketing areas: Chicago, Illinois; Green Bay, Wisconsin; La Crosse, Wisconsin; Madison, Wisconsin; Milwaukee, Wisconsin; Minneapolis, Minnesota; and Wausau, Wisconsin. (Agreement ¶ 72). The Published Notice Program shall be commenced as soon as practicable after the Initial Mailed Notice, and shall be completed no later than 63 days before the Final Approval Hearing. *Id.* Within seven days after the date the Notice Administrator completes the Published Notice Program, the Notice Administrator will provide Settlement Class Counsel and counsel for Associated with one or more affidavits that confirm that Published Notice was given in accordance with the Published Notice Program. Settlement Class Counsel will file such affidavit(s) with the Court. (Agreement ¶ 74).

**(c)**      <u>**The Settlement Website and Toll-Free Hotline**</u>

The Settlement Administrator will establish a Settlement Website as a means for Settlement Class Members to obtain notice of, and information about, the Settlement. (Agreement ¶ 44). The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than the commencement of the Notice Program. *Id.* The Settlement Website will include hyperlinks to the Settlement, the Long Form Notice, the Preliminary Approval order, and such other documents as Settlement Class Counsel and counsel for Associated agree to post or that the Court orders posted on the Settlement Website. *Id.* These documents will remain on the Settlement Website at least until Final Approval. *Id.*

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries. (Agreement ¶ 60(d)).

**5.**      <u>**Settlement Administration**</u>

The Settlement Administrator is Epiq Systems, Inc. ("Epiq"), one of the leading class action settlement administrators in the United States. Epiq's responsibilities include the following:

        a.      Obtain Settlement Class Members' name and address information (to the extent it is available), and verify and update the addresses received through the National Change of Address database, for the purpose of mailing the Mailed Notice, and later mailing distribution checks to Past Account Holders, who are members of the Settlement Class who have not opted out of the Settlement and to Current Account Holders who are members of the Settlement Class and who have not opted out of the Settlement where it is not feasible or

- 15 -

reasonable for Associated to make the payment by a direct credit to the Settlement Class Members' Accounts;

        b.     Establish and maintain a Post Office box for requests for exclusion from the Settlement Class;

        c.     Establish and maintain the Settlement Website;

        d.     Establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

        e.     Respond to any mailed Settlement Class Member inquiries;

        f.     Process all requests for exclusion from the Settlement Class;

        g.     Provide weekly reports and, no later than five days after the end of the Opt-Out Period, a final report to Settlement Class Counsel and counsel for Associated that summarize the number of requests for exclusion received that week, the total number of exclusion requests received to date, and other pertinent information;

        h.     Perform all tax-related services for the Escrow Account as provided in the Agreement;

        i.     At Settlement Class Counsel's request in advance of the Final Approval Hearing, prepare an affidavit that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Class;

        j.     Process and transmit Net Settlement Fund distributions to Settlement Class Members who have not opted out of the Settlement;

        k.     Pay invoices, expenses and costs upon approval by Settlement Class Counsel and counsel for Associated, as provided in the Agreement; and

l.      Perform the duties of Escrow Agent as described in the Agreement, and any other Settlement-administration-related function at the instruction of Settlement Class Counsel and counsel for Associated including, but not limited to, verifying that Associated has correctly made a distribution to Settlement Class Members who have not opted out of the Settlement. (Agreement ¶ 60).

All fees and charges related to Settlement Administration will be paid by Associated separately, and will not come out of the $13 million Settlement Fund.  (Agreement ¶ 53).

### 6.      Settlement Termination

Either Party may terminate the Settlement if the Settlement is rejected or materially modified by the Court or an appellate court.  (Agreement ¶ 105).  Associated also has the right to terminate the Settlement if the number of Settlement Class members who timely opt out of the Settlement Class equals or exceeds the number or percentage specified in the separate letter agreement executed concurrently with the Agreement by Associated's counsel and Settlement Class Counsel.  (Agreement ¶ 106).  The number or percentage will be confidential except to the Court, which upon request will be provided a copy of the letter agreement for *in camera* review. *Id.*

### 7.      Class Representatives Service Awards

Class Counsel will seek and Associated will not oppose Service Awards of $5,000 for each of the named Plaintiffs.  (Agreement ¶ 103).  If the Court approves them, the Service Awards will be paid from the Settlement Fund, and will be in addition to the Settlement Class Member Payments the Plaintiffs will be entitled to under the terms of the Settlement. *Id.*  This award will compensate the representatives for their time and effort in the Action and for the risks she assumed in prosecuting the Action against Associated.  (Joint Decl. ¶ 42).

- 17 -

### 8. Attorneys' Fees and Costs

Associated will not oppose Class Counsel's request for attorneys' fees of up to thirty percent (33%) of the Settlement Fund, net of Settlement-related costs and expenses, plus reimbursement of litigation costs and expenses. (Agreement ¶ 99). The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement. (Agreement ¶ 100; Joint Decl. ¶ 43).

## III. ARGUMENT

### A. The Legal Standard for Preliminary Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness." 4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties'

good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether a settlement falls within the range of reason at the preliminary approval stage. *See*, *e.g*., *Smith*, 2010 WL 2401149 at *2.[2]

The Court's grant of Preliminary Approval will allow all Settlement Class Members to receive notice of the proposed Settlement's terms, and of the date and time of the Final Approval hearing at which Settlement Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be

---

[2] Plaintiffs do not address the fifth factor, concerning objections to the Settlement, because at this preliminary stage Notice has not yet been distributed. Plaintiffs address the remaining factors here, reserving a more thorough discussion of each factor for the motion for Final Approval of the Settlement.

- 19 -

presented by the Parties.  *See Manual for Compl. Lit.*, §§ 13.14, 21.632.  Neither formal notice

nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon

an informal application by the settling parties.  *Id.* § 13.14.

>    **B.      This Settlement Satisfies the Criteria for Preliminary Approval.**

Each of the relevant factors weighs in favor of Preliminary Approval of this Settlement.

First, the Settlement was reached in the absence of collusion, and is the product of good-faith,

informed and arm's length negotiations by competent counsel, in conjunction with an

experienced mediator.  Furthermore, a preliminary review of the factors related to the fairness,

adequacy and reasonableness of the Settlement demonstrates that the Settlement fits well within

the range of reasonableness, such that Preliminary Approval is warranted.

Any settlement requires the parties to balance the merits of the claims and defenses

asserted against the attendant risks of continued litigation and delay.  Plaintiffs believe that the

claims asserted are meritorious and that they would prevail if this matter proceeded to trial.

Associated argues that Plaintiffs' claims are unfounded, denies any potential liability, and has

shown a willingness to litigate those claims vigorously.

The Parties concluded that the benefits of settlement in this case outweigh the risks and

uncertainties of continued litigation, particularly in the context of this large and complex

multidistrict litigation, as well as the attendant time and expenses associated with contested class

certification proceedings and possible interlocutory appellate review, completing merits

discovery, pretrial motion practice, trial, final appellate review.  (Joint Decl. ¶ 49).

>    **1.      This Settlement Is The Product Of Good Faith, Informed and Arm's**
>    **Length Negotiations.**

A class action settlement should be approved so long as a district court finds that "the

settlement is fair, adequate and reasonable and is not the product of collusion between the

parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement in this case is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  (Joint Decl. ¶ 16).  The Parties engaged in a full day formal mediation before an experienced and respected mediator, Professor Eric Green.  (Joint Decl. ¶ 14).  These negotiations were arm's-length and extensive.  (Joint Decl. ¶ 16); *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Furthermore, counsel for both sides are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  (Joint Decl. ¶ 44).  Counsel zealously represented their clients throughout the discovery process, which included the production and review of over fifteen thousand pages from the Bank, as well as contested motion practice. (Joint Decl. ¶ 45).  In negotiating this Settlement, Class Counsel had the benefit of years of experience and a familiarity with the facts of this Action and other cases involving similar claims.  (Joint Decl. ¶ 44).  Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive formal discovery with Associated.  Class Counsel's review of that extensive discovery enabled them to gain an understanding of the evidence related to central questions in the case, and prepared counsel for well-informed settlement negotiations. (Joint Decl. ¶ 44.); *See also Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where

counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery). Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them, as a result of their participation in a full bench trial of similar claims in federal court in California. (Joint Decl. ¶ 47).

**2.** **The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable.**

As noted, this Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that notice to the Class and a final hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.

**(a)** **Likelihood of Success at Trial.**

Plaintiffs and Class Counsel are confident in the strength of their case, but are also pragmatic in their awareness of the various defenses available to Associated, and the risks inherent to litigation. (Joint Decl. ¶ 48). Plaintiffs faced the risk of losing at summary judgment, at trial, or on appeal based on various theories advanced by Associated. *Id.* The success of Plaintiffs' claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial, as they did in the *Gutierrez v. Wells Fargo Bank, N.A.* case in California. *Id.* Though the *Gutierrez* plaintiffs were successful at trial, protracted litigation carries inherent risks that would necessarily have delayed and endangered Settlement Class Members' monetary recovery. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with Associated outweighs the gamble of continued litigation. (Joint Decl. ¶ 49).

- 22 -

Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). This Settlement provides substantial relief to Settlement Class Members without further delay. (Joint Decl. ¶ 52).

**(b)**     <u>**Range of Possible Recovery and the Point on or Below the**</u>
<u>**Range of Recovery at Which a Settlement Is Fair.**</u>

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where Plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

Plaintiffs' $13 million recovery is outstanding, given the complexity of the litigation and the significant barriers that would loom in the absence of settlement: motions for summary judgment; trial; and appeals after a Plaintiffs' verdict. Based on Associated's transactional data, Class Counsel estimate that Settlement Class Members' most likely recoverable damages at trial would have been $25,508,775. (Joint Decl. ¶ 50). Thus, under the Settlement, Plaintiffs and the Settlement Class Members are recovering approximately 51% of their most probable damages, without further risks attendant to litigation. *Id.* That is a significant achievement considering the obstacles that Plaintiffs faced in the litigation. Further, the 51% recovery is even better when

- 23 -

one considers the millions of dollars in practice changes that will benefit the Settlement Class. *Id.*

There can be no doubt that this $13 million Settlement is a fair and reasonable recovery for the Settlement Class in light of the Bank's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a settlement.

### (c)   Complexity, Expense and Duration of Litigation.

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class members, could be impracticable. The proposed Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner. (Joint Decl. ¶ 52).

One of the most expensive aspects of ongoing litigation in this case – to which Class Counsel can attest after *Gutierrez* – involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial.  (Joint Decl. ¶ 52). Experts in the fields of marketing and banking may also be necessary.  These considerations, and the other considerations noted above, militate heavily in favor of the Settlement.  *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

### (d)   Stage of the Proceedings.

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."  *Lipuma*, 406 F. Supp. 2d at 1324.

Plaintiffs settled the Action with the benefit of reviewing at least fifteen pages of documents produced by Associated.  As a result, Class Counsel were extremely well-positioned

to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at summary judgment, at trial, and on appeal.  (Joint Decl. ¶ 53).

### C.   Certification of the Settlement Class Is Appropriate.

For settlement purposes, Plaintiffs respectfully requests that the Court certify the Settlement Class defined above, and in paragraph 40 of the Agreement.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the proposed Settlement to issue to the class to inform the Settlement Class of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing.  *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.  For purposes of this Settlement only, ASSOCIATED does not oppose class certification. For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of thousands of Associated customers, and joinder of all such persons is impracticable.

(Joint Decl. ¶ 53.)  *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Associatedman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

 "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on Associated's systematic practice of Debit Re-sequencing – that is common to the Settlement Class, that is alleged to have injured all Settlement Class members in the same way, and that would generate common answers central to the viability of the claims were the Action to proceed to trial.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent Settlement Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").  Plaintiffs are typical of absent Settlement Class Members because they were subjected to the same Associated practices and claim to have suffered from the same injuries, and because they will benefit equally from the relief provided by the Settlement.

Plaintiffs also satisfiy the adequacy of representation requirement.  Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic to

the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant*, 202 F.R.D. at 314. The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case. (Joint Decl. ¶ 58). Class Counsel have devoted substantial time and resources to vigorous litigation of this Action by engaging in class certification proceedings, significant discovery and settlement negotiations. *Id.*

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class member. (Joint Decl. ¶ 59). For example, each Settlement Class member's relationship with Associated arises from an account agreement that is the same or substantially similar in all relevant respects to other Settlement Class members' account agreements. *See Sacred Heart Health Sys.*, 601

F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

### D.       The Court Should Approve the Proposed Notice Program Because It Is Constitutionally Sound.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Lit. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The proposed Notice Program satisfies all of these criteria. As recited in the Settlement, the Notice will properly inform Settlement Class Members of the substantive terms of the Settlement. It will advise Settlement Class Members of their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the Settlement. The Notice Program is designed to reach a high percentage of the Settlement Class and exceeds the

requirements of constitutional due process.   (Joint Decl. ¶ 30).   Therefore, the Court should approve the Notice Program and the form and content of the Notices attached to the Agreement as Exhibits 1-3.

> **E.**      **The Court Should Schedule a Final Approval Hearing.**

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement.   Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of Final Approval.   The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a Final Approval Order and Final Judgment under Rule 23(e); whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses; and whether to approve the request for Service Awards to the Plaintiffs. .   Plaintiffs request that the Court schedule the Final Approval hearing for a half-day no sooner than the week of January 7, 2013 (if convenient for the Court).   Plaintiffs and Class Counsel will file their motion for Final Approval, Fee Application and request for Service Awards for Plaintiffs no later than 49 days prior to the Final Approval Hearing.

## IV.   <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure and appoint   Pamela Harris, Robert Selvig, Charlene Selvig, and Edith Whithead as Class Representatives; (3) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices, attached to the Agreement as Exhibits 1, 2, and 3; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) stay the Action

against Associated pending Final Approval of the Settlement; (6) appoint as Class Counsel and Settlement Class Counsel the attorneys and law firms listed in paragraphs 12 and 41 of the Agreement, respectively; and (7) schedule a Final Approval Hearing no sooner than the week of January 7, 2013.

For the Court's convenience, Plaintiffs attach as Exhibit C a Proposed Order Preliminarily Approving Class Settlement and Certifying Settlement Class.

Dated: July 24, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No. 516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

- 30 -

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
    BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

- 33 -