# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Harris v. Associated Bank, N.A.*
W.D. Wis. Case No. 3:10-cv-182-BBC
S.D. Fla. Case No. 1:10-cv-22948-JLK

**JOINT DECLARATION OF ROBERT C. GILBERT AND JEFFREY M. OSTROW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**

Robert C. Gilbert and Jeffrey M. Ostrow declare as follows:

1. We are Class Counsel for Plaintiffs and the proposed Settlement Class in the Action against Associated Bank, N.A.[1] We submit this declaration in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2. After more than two years of hard-fought litigation and protracted settlement negotiations, Plaintiffs, Class Counsel and Associated Bank, N.A. ("Associated" or the "Bank") entered into a Settlement Agreement and Release ("Settlement" or "Agreement") under which

---

[1] All capitalized defined terms have the same meaning as defined in the Settlement Agreement and Release attached to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class.

Associated shall: (i) pay $13 million in cash to create a common fund for the benefit of the Settlement Class Members; (ii) modify its business practice of re-sequencing Debit Card Transactions from high to low to chronological and in the manner in which it assesses Overdraft Fees; and (iii) separately advance and pay all costs of providing Notice to the Settlement Class and all costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator.  Under the Settlement, Settlement Class Members who do not opt out of the Settlement will automatically receive distributions from the Net Settlement Fund in proportion to the actual harm that each of them sustained.

3. The Action involved sharply opposed positions on several fundamental legal and factual issues.  Plaintiffs maintain that the claims asserted in the Action are meritorious; that they would establish liability and recover substantial damages if the Action proceeded to trial; and that the final judgment recovered in favor of Plaintiffs and the Settlement Class Members who do not opt out of the Settlement would be affirmed on an appeal.  Plaintiffs' ultimate success in the litigation required them to prevail, in whole or in part, at *all* of these junctures.  Conversely, Associated's success at any one of these junctures could or would have spelled defeat for Plaintiffs and the Settlement Class.  Thus, continued litigation posed significant risks and countless uncertainties, as well as the time, expense and delays associated with trial and appellate proceedings, particularly in the context of complex multi-district litigation.

4. In light of the risks, uncertainties and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to the Settlement Class in the form of direct cash compensation and other valuable relief.

**F.     Background of the Litigation.**

5. On April 2, 2010, Plaintiff Harris sued on behalf of herself and all others similarly situated who incurred Overdraft Fees as a result of Associated's practice of re-sequencing all

Debit Card Transactions from highest to lowest dollar amount. On December 6, 2010, Plaintiff Harris filed a First Amended Complaint which included additional Plaintiffs Robert Selvig, Charlene Selvig, and Edith Whithead. Plaintiffs alleged that Associated systemically engaged in Debit Re-sequencing to maximize the Bank's Overdraft Fee revenues. According to the Amended Complaint, Associated's practices violated the Bank's contractual and good faith duties to the Settlement Class, were substantively and procedurally unconscionable, violated state unfair trade practices laws, and resulted in conversion and unjust enrichment.

6. Associated denies all of Plaintiffs' allegations of wrongdoing. Associated consistently argued, *inter alia*, that Plaintiffs' claims are preempted by the National Bank Act, that its Account agreements expressly authorize the very practice of Debit Re-sequencing challenged by Plaintiffs; that it fully disclosed its practices to its customers; that no unconscionability claim lies for the recovery of damages; that no conversion claim exists; that Plaintiffs cannot maintain unjust enrichment claims; and that the statutory consumer protection claim is defective.

### B. Class Counsel's Investigation.

7. Class Counsel devoted substantial time and expended significant resources researching and developing the legal claims at issue, before and after the litigation began. Class Counsel interviewed many Associated customers and potential plaintiffs to gather information about Associated's conduct and its impact upon consumers. This information was essential to Class Counsel's ability to understand the nature of Associated's conduct, the language of the Account agreements at issue, and potential claims for relief and remedies. Mindful of the Court's emphasis on the development of the factual record in its denial of most points raised in

the omnibus motion to dismiss filed by first tranche defendants, Class Counsel crafted document requests and interrogatories with an eye toward class certification, summary judgment and trial.

### C. The Course of Proceedings.

8. On April 2, 2010, Plaintiff Pamela Harris filed the class action complaint, seeking monetary damages, restitution and declaratory relief from Associated based on its alleged unfair assessment and collection of Overdraft Fees on Debit Card Transactions. On August 9, 2010, the Judicial Panel on Multi-District Litigation transferred the case to this Court for inclusion in MDL No. 2036.

9. On August 16, 2010, Associated modified its overdraft policies and implemented a cap on the number of Overdraft Fees it assessed a single Account on any given day.

10. On December 6, 2010, Plaintiffs filed a First Amended Class Action Complaint against Associated. On January 20, 2011, Associated filed a Motion to Dismiss.

11. On February 19, 2011, as a result of this Action, Associated modified some of its Debit Card policies and practices, including its posting order, so that Debit Card Transactions are now processed in chronological order.

12. On April 4, 2011, the Motion to Dismiss was denied, with the exception of the Wisconsin consumer protection claim. On April 21, 2011, Associated filed its Answer and Affirmative Defenses, and on July 6, 2011, it filed its Amended Answer and Affirmative Defenses.

13. On May 23, 2011, Plaintiffs propounded initial discovery, consisting of a first request for production of documents, first set of interrogatories and first requests for admissions. On June 21 and 22, 2011, Associated served its responses to Plaintiffs' written discovery. On November 4 and 11, 2011, Associated supplemented its interrogatory responses. In response to

4

Plaintiffs' request for production, Associated produced more than 15,000 pages of documents to Plaintiffs.

14.     Beginning in September, 2011, the Parties engaged in preliminary settlement discussions. On November 11, 2011, the Parties participated in a formal full day mediation session in Boston under the auspices of Professor Eric Green of Resolutions, LLC. In advance of the mediation, Associated provided Class Counsel with sample transactional and aggregate data regarding its Overdraft Fee revenue.

15.     As a result of the mediation, the Parties signed a Memorandum of Understanding that memorialized, subject to a mutually agreeable written settlement agreement and subject to Preliminary Approval and Final Approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally, and forever resolve, discharge and release all rights and claims of eligible Settlement Class Members, on such terms as reflected herein, including Associated's agreement to pay the sum of $13 million to create a common fund for the benefit of the Settlement Class, and to separately pay the costs of class notice and settlement administration.

16.     At all times throughout the mediation proceedings and subsequent settlement discussions, the negotiations were adversarial, non-collusive and at arm's length.

17.     On November 28, 2011, the Parties filed a Notice of Settlement and on July 18, 2012, after nearly eight months of negotiations, the Parties signed the Agreement.

   **D.    Settlement Recovery.**

18.     The Settlement requires Associated to deposit $13 million into an Escrow Account with Northern Trust within 14 days of this Court's Preliminary Approval of the Settlement. That deposit will create the Settlement Fund, which will be used to pay: (i) all distributions of money to the Settlement Class Members who do not opt out of the Settlement;

(ii) all attorneys' fees, costs and expenses of Class Counsel; (iii) any Service Awards to the Plaintiffs; (iv) any residual *cy pres* distributions; (v) any Taxes; (vi) any costs of Settlement Administration other than those to be paid by Associated; and (vii) additional fees, costs and expenses not specifically enumerated in the Agreement, subject to approval of Settlement Class Counsel and Associated.  In addition to the $13 million Settlement Fund, Associated agreed to advance and pay all costs of providing Notice to the Settlement Class and all costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator

19. All Settlement Class Members who do not opt out of the Settlement will automatically receive *pro rata* distributions from the Net Settlement Fund.  The analysis and complex distribution formula determines, among other things, which Associated Account holders were assessed Additional Overdraft Fees that would not have been assessed if the Bank had used an alternative posting sequence or method for posting Debit Card Transactions other high to low, and how much in Additional Overdraft Fees those Account holders paid.  The calculation involves a multi-step process that is described in detail in the Agreement.

20. The Net Settlement Fund – which will be distributed *pro rata* among Settlement Class Members who do not opt out of the Settlement – is equal to the Settlement Fund, plus interest earned (if any), less all costs incurred in connection tax administration, Court-awarded attorneys' fees and costs, Service Awards for the Plaintiffs, expenses and fees for investing the funds in Instruments, escrow expenses, and any fees or costs approved by Settlement Class Counsel and counsel for Associated Bank.

21. Eligible Settlement Class Members do not have to do anything or take any affirmative step to receive relief under the Settlement.  The amount of their *pro rata* distributions

6

will be determined by Settlement Class Counsel and their expert through analysis of Associated's data. Within 30 days after the Effective Date of the Settlement, Associated and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members who have not opted out of the Settlement.

22. Payments to Settlement Class Members who do not opt out of the Settlement and who are Current Account Holders will be made by the Bank crediting such Settlement Class Members' Accounts, and notifying them of the credit. Associated will then be entitled to a reimbursement for such credits from the Settlement Fund. Former Account Holders and Current Account Holders whose Accounts cannot feasibly be automatically credited, will receive payments from the Settlement Fund by checks mailed by the Settlement Administrator. Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Fund Payments.

23. After the Parties executed the memorandum of understanding, Class Counsel engaged in additional settlement-related investigation to determine, among other things, the most appropriate method by which to implement the plan for direct allocation of the Settlement funds to Settlement Class Members who do not opt out of the Settlement. That investigation required Class Counsel and their experts to analyze the relevant transactional data relating to Overdraft Fees imposed upon Settlement Class Members, and to determine the fairest and most appropriate distribution formula in light of the data that Associated possesses.

24. In addition to the $13 million cash recovery, Plaintiffs secured significant non-monetary relief on behalf of the Settlement Class through Associated's agreement to maintain for a period of three (3) years from Final Approval specific practice changes related to the assessment of overdrafts and the posting order of Debit Card Transactions.

25. On February 19, 2011, as a result of the Action, Associated changed its posting order policy for Debit Card Transactions to the following: (1) credits from high to low; (2) force post/closing debits from low to high; (3) POS/ATM debits in chronological order (from oldest to most recent based on the time and date the transaction was authorized), (4) wire/internal debits from low to high; (5) ACH/internal transfer debits from low to high; (6) checks in check number order from lowest to highest number; and (7) miscellaneous debits from low to high. For categories (3) and (5) above, if the specific order cannot be determined (*e.g.*, no check number on a check), Associated pays the items in low to high order. Associated will maintain the current posting order described in this paragraph for a minimum of three (3) years from the date of Final Approval, unless the Courts, Congress, or federal regulators require otherwise.

26. On August 16, 2010, Associated changed its Overdraft Fee policy to cap the number of Overdraft Fees assessed with respect to Debit Card Transactions for Accounts at a maximum of four (4) per day. Associated will maintain this current cap on the number of overdrafts for a minimum of three (3) years from the date of Final Approval, unless the Courts, Congress, or federal regulators require otherwise.

27. In April, 2009, Associated began assessing an Overdraft Fee of $35.00 for Debit Card Transactions that resulted in an overdraft. Associated has agreed that $35.00 will be the maximum amount it will assess for as an Overdraft Fee on any single Debit Card Transaction.

Associated will maintain this current amount for a minimum of three (3) years from the date of Final Approval, unless the Courts, Congress, or federal regulators require otherwise.

28. The adoption of and agreement to maintain these practice changes is expected to result in a loss by Associated and savings to Settlement Class Members and Associated's customers in millions of dollars in Overdraft Fee revenue between the time the changes commenced and through the three year commitment period following Final Approval.

### E. Class Release

29. In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will be deemed to have released Associated from claims related to the subject matter of the Action.

### F. Settlement Notice.

30. Settlement Class Counsel and Associated have selected and Associated has retained Epiq Systems, Inc., one of the leading class action notice experts in the country to serve as the Notice Administrator for this Settlement. Epiq has developed and directed some of the largest and most complex national notification programs in the country. The Notice Program is designed to provide the best notice practicable, and is tailored to take advantage of the information Associated has available about the Settlement Class. Associated will pay all fees and costs of the Notice Program, including those of the Notice Administrator. The Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Fee Application and request for Service Awards for the Plaintiffs, and their rights to opt-out of the Settlement Class and object to the Settlement or any of its terms. The Notices and Notice Program constitute sufficient notice to all persons entitled to notice. The Notices and Notice Program satisfy all

applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

31. The Notice Program is comprised of three parts: (1) direct mail postcard notice ("Mailed Notice") to all Settlement Class Members; (2) publication notice ("Published Notice") designed to reach the Settlement Class Members for whom direct mail notice is not possible; and (3) a "Long Form" notice with more detail than the direct mail or publication notices, that will be available on the Settlement Web Site (www.ABOverdraftsettlement.com) and via mail upon request.

32. All forms of Notice to the Settlement Class will include, among other information: a description of the Settlement; a date by which the Settlement Class may exclude themselves from or "opt out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing will occur; and the address of the Settlement Website at which members of the Settlement Class may access the Agreement and other related documents and information.

33. The Long-Form notice will also describe the procedure that Settlement Class Members must use to opt out of the Settlement or to object to the Settlement, and/or to Class Counsel's application for attorneys' fees and expenses and Plaintiffs' request for Service Awards. All opt-outs must be postmarked before the Opt-Out Deadline (no later than 28 days prior to the Final Approval Hearing), and any objections must be postmarked by the Opt-Out Deadline. For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any

such cases, and any relevant orders issued in response to such past objections; the identity of the objector's counsel; any agreements relating to the objection or the process of objecting between the objector or the objector's counsel and any other person or entity; a statement confirming whether the objector will appear at the Final Approval Hearing and a description of counsel or witnesses who will appear on behalf of the objector at the Final Approval Hearing; and the objector's signature.

### a.     **The Mailed Notice Program**

34.     The Settlement Administrator will administer the Mailed Notice Program. Within 28 days from the date that the Settlement Administrator receives from Settlement Class Counsel and Associated the data files that identify the names and last known addresses of the identifiable Settlement Class Members, the Settlement Administrator will run such addresses through the National Change of Address Database, and will mail to all such Settlement Class Members postcards that contain the Mailed Notice ("Initial Mailed Notice").

35.     The Settlement Administrator will perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable. No later than 35 days from the Initial Mailed Notice date, the Settlement Administrator will complete the re-mailing of Mailed Notice postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process").

36.     The Mailed Notice Program (which is comprised of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 63 before the Final Approval Hearing. Within 7 days after the date the Settlement Administrator completes the Notice Re-mailing Process, the Settlement Administrator shall provide Settlement Class Counsel and Associated's counsel an affidavit that confirms that the Mailed Notice Program was

completed in a timely manner.  Settlement Class Counsel will file that affidavit with the Court as an exhibit or in conjunction with Plaintiffs' motion for Final Approval of the Settlement.

37.     All fees and costs associated with the Mailed Notice Program shall be paid by Associated.

### b.     The Published Notice Program

38.     The Published Notice Program, for which Epiq is responsible, shall be comprised exclusively of the following: a single 1/4-page weekday insertion in the top newspaper in the following designated marketing areas: Chicago, Illinois; Green Bay, Wisconsin; La Crosse, Wisconsin; Madison, Wisconsin; Milwaukee, Wisconsin; Minneapolis, Minnesota; and Wausau, Wisconsin.  The Published Notice Program shall be commenced as soon as practicable after the Initial Mailed Notice, and shall be completed no later than 63 days before the Final Approval Hearing.  All fees and costs associated with the Published Notice Program will be paid by Associated.

39.     Within 7 days after the date the Notice Administrator completes the Published Notice Program, the Notice Administrator shall provide Settlement Class Counsel and counsel for Associated with one or more affidavits that confirm that Published Notice was given in accordance with the Published Notice Program.  Settlement Class Counsel shall promptly file such affidavit(s) with the Court.

### c.     The Settlement Website and the Toll-Free Settlement Line

40.     The Settlement Administrator will establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries.  The Settlement Administrator will establish a Settlement Website (www.ABOverdraftsettlement.com) as a means for Settlement Class Members to obtain notice

12

of, and information about, the Settlement. The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Notice Program. The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice, the Claim Form, the Preliminary Approval Order, and such other documents as Settlement Class Counsel and counsel for Associated agree to post or that the Court orders posted on the Settlement Website. These documents will remain on the Settlement Website at least until Final Approval.

41. The Settlement Administrator will establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries.

### G.   Service Awards, Attorneys' Fees And Costs

42. Class Counsel will seek and Associated will not oppose Service Awards of $5,000 for each named Plaintiff. If the Court approves it, the Service Awards will be paid from the Settlement Fund, and will be in addition to the other relief the named Plaintiffs will be entitled to as Settlement Class Members. These awards will compensate the named Plaintiffs for their time and effort in the Action, and for the risk they undertook in prosecuting the Action against Associated.

43. Associated will not oppose Class Counsel's request for attorneys' fees of up to thirty-three (33%) of the Settlement Fund, plus reimbursement of litigation costs and expenses. The Parties negotiated and reached this agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

### H.     Considerations Supporting Settlement

#### 1.     The Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations

44.     Settlement negotiations were informed by the experience of counsel for both sides in the litigation, certification, trial and settlement of nationwide class action cases. In particular, Settlement Class Counsel had the benefit of years of experience and a familiarity with the facts of this case as well as with other cases involving similar claims.

45.     As detailed above, Settlement Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and Associated's defenses, and engaged in extensive formal discovery and zealously represented the Plaintiffs and Settlement Class. Counsel's review of that extensive discovery enabled them to gain an understanding of the evidence related to central legal and factual issues in the case, and prepared counsel for well-informed settlement negotiations.

46.     Class Counsel have a thorough understanding of the practical and legal issues they would continue to face litigating these claims against Associated based, in large part, on similar claims challenging Wells Fargo's high-to-low posting practices prosecuted in *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-5923 (N.D. Cal), that resulted in a $203 million judgment in favor of the certified class of California customers. Wells Fargo appealed the final judgment in *Gutierrez* to the Ninth Circuit, which held oral argument on May 15, 2012. One of Wells Fargo's primary issues on appeal involves preemption under the NBA, which is one of Associated's principal defenses here.

47.     Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of

14

*Gutierrez* and other post-*Gutierrez* settlements of similar claims reached within and outside of MDL 2036.

### 2. Risks Associated with Trial Favor Settlement

48. While Class Counsel are confident in the strength of the case, they are also pragmatic in our awareness of the various defenses available to Associated, and the risks inherent in continued litigation. Associated Bank has already been successful in dismissing Plaintiffs' Wisconsin consumer protection statutory claim. Further, Plaintiffs face the risk of dismissal on other various theories advanced at the motion to dismiss stage, including NBA preemption and legal challenges to the common law and other state statutory claims raised in Associated's Affirmative Defenses. The success of Plaintiffs' claims in future litigation turns on these and other questions that were certain to arise in the context of motions for summary judgment and at trial.

49. Protracted litigation carries inherent risks and inevitable delay. Under the circumstances, Class Counsel determined that the Settlement outweighs the risks of continued litigation.

### 3. The Settlement Amount is Reasonable Given the Range of Possible Recovery.

50. Given the risks in this case and inherent in litigation, the $13 million cash recovery and the savings to the Settlement Class resulting from Associated's modification of its overdraft policies and posting order are outstanding. Plaintiffs estimate that the total damages at issue are $25,508,775. Therefore, the $13 million cash portion of the Settlement alone represents over fifty percent 50% of Plaintiffs' and Settlement Class Members' most probable damages recovery under the same posting order adopted by Judge Alsup in *Gutierrez*. Associated's

15

discontinuation of Debit Re-sequencing is a tremendous benefit and greatly enhances the value of the Settlement.

51. The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiffs and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiffs succeeded in certifying a nationwide class and the Eleventh Circuit declined to accept Associated's inevitable rule 23(f) petition; (ii) Plaintiffs and the certified class established liability at trial; (iii) Plaintiffs and the certified class recovered damages at trial under the same posting order adopted by Judge Alsup in *Gutierrez*; and (iv) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Associated's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent the Settlement.

### 4. **The Complexity, Expense, and Duration of Ongoing Litigation Favors Settlement.**

52. The Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Ongoing litigation would involve substantial, expensive fact and expert discovery, lengthy additional pretrial proceedings in this Court and the appellate courts and, ultimately, a trial and appeal. Absent the Settlement, the Action would likely continue for two or three more years.

### 5. **Proceedings are at an Appropriate Stage for Settlement.**

53. Plaintiffs settled the Action with the benefit of significant discovery, including production of more than 15,000 pages of documents. The review and subsequent litigation was efficient because Class Counsel established coding procedures for electronic review of the documents produced, and team members remained in contact with one another to ensure that all counsel became aware of significant emerging evidence in real time. Review of those

documents positioned Settlement Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims, Associated's defenses, and the prospects for success on issues of class certification, summary judgment and trial.

### I.  Class Certification For Settlement Purposes

54. Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

55. The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of thousands of people throughout the United States, and joinder of all such persons is impracticable.

56. The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on Associated's systematic practice of Debit Re-sequencing for the sole purpose of increasing Overdraft Fee revenue, as alleged in the operative complaint.

57. Plaintiffs are typical of absent Settlement Class Members because they suffer from the same injuries, and because they will equally benefit from the relief provided by the Settlement.

58. Adequacy is established because Plaintiffs interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and absent Settlement

17

Class Members have an equally great interest in the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests. Further, Class Counsel are qualified and competent and have extensive experience prosecuting complex class actions, including consumer actions similar to the Action. Class Counsel have devoted substantial time and resources to vigorous litigation of the Action from inception through the date of the Settlement.

59. Plaintiffs satisfy the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each member of the Settlement Class. For example, each Settlement Class Member's relationship with Associated arises from an Account agreement that is the same in all relevant respects to other Settlement Class Members' Account agreements.

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Miami, Florida on July 24, 2012.

/s/ Robert C. Gilbert
Robert C. Gilbert

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Texas, on July 24, 2012.

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow

18