## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION**

*Lewis v. Sovereign Bank*
D. MD Case No. 1:11-cv-0064
S.D. FL Case No. 1:11-cv-22022-JLK

---

## FINAL ORDER OF DISMISSAL

**THIS CAUSE** comes before the Court upon Defendant Sovereign Bank's ("Sovereign")

Motion to Dismiss (the "Motion") (DE #2148), filed November 21, 2011. Therein, Defendant

seeks to dismiss Plaintiff's First Consolidated Amended Class Action Complaint ("CAC") (DE

#2027) pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff's

claims are preempted and fail under Maryland law. The Court is fully briefed on the Motion and

proceeds with the benefit of oral argument.[1] After careful consideration of the parties' legal

briefs and extensive oral argument, the Court has determined that Plaintiff's claims are

preempted by federal banking law and must be dismissed accordingly.[2]

---

[1] Plaintiff filed a Response (DE #2318) on December 21, 2011 and Defendant replied
(DE #2371) on January 10, 2012. Coordinated oral argument was held June 12, 2012. *See* Oral
Arg. Tr. (DE #2800). Following oral argument, Plaintiff filed a Notice of Supplemental
Authority (DE #2761), to which Defendant responded on July 9, 2012 (DE #2819), and Plaintiff
replied on July 20, 2012 (DE #2849).

[2] Because the Court finds Plaintiff's claims are preempted, it need not address whether
Plaintiff's state law claims fail as a matter of law.

## I. <u>BACKGROUND</u>[3]

Plaintiff Diane Lewis ("Lewis"), a citizen of Maryland who maintained a checking account with Sovereign, seeks to recover for herself, and all customers similarly situated, excess overdraft fees generated and retained through Sovereign's alleged unlawful practices, including, among other things, its manipulation and reordering of debit transactions from largest to smallest in order to maximize the overdraft fees it charged its customers. (CAC ¶¶ 1, 12, 62.)

Plaintiff filed the initial Complaint on behalf of herself and a putative class on January 7, 2011 in the United States District Court for the District of Maryland. (DE #1 in 11-cv-10064 (D. Md.)). On May 31, 2011, the United States Judicial Panel on Multidistrict Litigation transferred Plaintiff's case to this Court for adjudication as part of this multi-district litigation ("MDL") proceeding. (DE #1544). On October 21, 2011, Plaintiff filed the CAC (DE #2027), which is the subject of the instant Motion to Dismiss.

Plaintiff's claim against Sovereign is stated in five counts: Count I for breach of contract and the covenant of good faith and fair dealing; Count II for unconscionability; Count III for conversion; Count IV for unjust enrichment; and Count V for violation of the Maryland Consumer Protection Act. (CAC at ¶¶ 77–114.) Plaintiff bases those claims on Sovereign's high-to-low ordering of withdrawals, its allegedly deficient disclosure of that practice, and its allowing of account holders to overdraw without warning and opportunity to abort. (*Id.* at ¶¶ 1, 7.) Sovereign seeks dismissal of the CAC in its entirety on the ground that it is preempted by federal law.

Sovereign argues it is unique in this MDL as the "first defendant that has been charted as a federal savings bank and therefore regulated by the Office of Thrift Supervision ("OTS") under

---

[3] Facts taken from the CAC are accepted as true for purposes of this Motion.

the Home Owner's Loan Act ("HOLA"), 12 U.S.C. § 1461 *et. seq.*"[4] According to Defendant, that is significant because OTS regulations provide different preemption standards than those adopted by the Office of the Comptroller of the Currency ("OCC") for national banks under the under the National Bank Act ("NBA"). Thus, unlike the *conflict* preemption analysis applied in the Court's previous decision relating to defenses raised by national banks, the OTS "occupied the entire fields of the deposit and lending-related practices of federal savings banks," such that a *field* preemption analysis applies to preempt all of Plaintiff's claims against here. (Motion, at 7 (internal quotations omitted)). *Cf. In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d 1302, 1310-14 (S.D. Fla. 2010) ("Omnibus Order").

## II. <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 12, facts taken from the Complaint are accepted as true and all reasonable inference are resolved in the plaintiff's favor. *Harper v. Lawrence County*, 592 F.3d 1227, 1232 n.10 (11th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 558 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted).

## III. <u>DISCUSSION</u>

Applying this standard to a consideration of the well-pled allegations made by Plaintiff in the CAC, the Court finds Plaintiff makes the following assertions:

---

[4] It is undisputed that Sovereign was a federal savings bank during the operative period. (CAC ¶ 13.) Following the enactment of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") on July 21, 2010, discussed *infra*, Sovereign applied to the applicable regulators to convert to a national bank charter, which was approved but it not effective as of the filing of the Motion to Dismiss. (*See* Motion, at 2 n. 3.)

Plaintiff Lewis and members of the classes she represents maintain or maintained a checking account with Sovereign, the terms of which were contained in standardized account holder agreements (the "Deposit Agreement"), attached as Exhibit A to the CAC. The terms relating to reordering are alleged to be unconscionable contracts of adhesion. (CAC ¶¶ 31–33.)

The Deposit Agreement contains discretionary language regarding Sovereign's reordering practices, including, for example, that the bank reserves the right to pay withdrawals in any order the bank determines, which may affect the amount of overdraft fees charged. (*Id.* at ¶ 32.) The Deposit Agreement is alleged to be ineffective, ambiguous, unfair, and deceptive because it does not unambiguously state that Sovereign *always* reorders debits from high-to-low regardless of the amounts involved – even though, as alleged, Sovereign does always reorder transactions in this manner to maximize overdrafts and overdraft fee revenues for itself at the consumers' expense. (*Id.* at ¶¶ 37–38.) To carry out this scheme, Sovereign is alleged to have manipulated customer transaction records, causing funds in customer accounts to be depleted more rapidly, resulting in more overdrafts and, hence, more overdraft fees. (*Id.* at ¶¶ 64–67.)

Moreover, as alleged, Sovereign failed to: (i) disclose to customers that they may "opt-out" of Sovereign's overdraft scheme; (ii) provide an opportunity to cancel the debit transaction before incurring an overdraft fee; or (iii) obtain affirmative consent from customers prior to processing transactions that will overdraw their accounts and result in overdraft fees. (*Id.* at ¶¶ 50–52.) As such, its overdraft policies and practices and the reordering provisions of its Deposit Agreement are alleged to be procedurally and substantively unconscionable. (*Id.* at ¶ 60.)

Plaintiff alleges she suffered damages as a result of Defendant's alleged improper conduct. (*Id.* at ¶¶ 62–76.) Specifically, Plaintiff overdrew from her account on several occasions and incurred overdraft fees as a result. (*Id.* at ¶ 64.) For instance, on April 26, 2010, Plaintiff

-4-

made ten withdrawals from her checking account using either a check or the debit card that Sovereign had issued to her in connection with the account. (*Id.*) Plaintiff's beginning account balance on that date was $309.41, and her ten withdrawals totaled $669.13. (*Id.*) Sovereign posted those withdrawals starting with the largest. (*Id.*) As a result, Plaintiff incurred nine overdraft fees totaling $315.00. (*Id.*)

Defendant moves to dismiss all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) as preempted by federal law. Specifically, Defendant argues, the OTS's deposit-related regulations preempt "state laws that purport to impose requirements" regarding, among other things, "Checking accounts," "Disclosure requirements," and "Service charges and fees." (Motion, at 9) (quoting 12 C.F.R. § 557.12(b),(c), (f).) Defendant argues that Plaintiff's claims, which attack how Sovereign processes checking account withdrawals and provides or not provide overdraft opt-out procedures, how it discloses its practices, and how many overdraft fees it charges, (CAC ¶¶ 37–45, 50–52), fall squarely within all of these categories listed in § 557.12 and are thus preempted.

Moreover, Defendant argues that the Deposit Agreement complies with OTS disclosure requirements by fully disclosing Sovereign's policies and rights with respect to withdrawals and overdraft fees. With respect to withdrawals, for example, the Deposit Agreement provides:

> **We reserve the right to pay the withdrawals you make from your Account regardless of the method of withdrawal in any order we determine. This includes withdrawals made at an ATM or by computer, [point-of-sale] purchases, checks, pre-authorized payments and by any other means we make available to you. The order in which you make withdrawals from your Account may not be the same as the order in which we post those transactions to your Account each business day. Generally, we post your payment transactions each business day in descending order, starting with the largest payment order that is presented for payment. This means, for example, that your $900 mortgage payment will be paid before the $100 purchase you made at the supermarket. The order in which we post your transactions may affect whether you incur fees for insufficient or unavailable funds.**

(*Id.* at 4–5) (bold in original)).[5] Similarly, with respect to overdraft fees, the Account Agreement provides:

> **If you write a check or other order or otherwise request a withdrawal from your Account, such as by using an ATM or making a purchase using a Visa Checkcard or ATM Card, for more money than you have available for withdrawal from your Account, we may either permit you to withdraw the funds by complying with the payment order or we may refuse to honor the payment order. You may incur a fee for each payment order that is presented against your account when you do not have sufficient available funds.**

(*Id.* at 10.)

Plaintiff concedes that the Deposit Agreement contains discretionary language, but argues Sovereign abused the discretion afforded under its Deposit Agreement to systematically maximize overdraft fees which Sovereign unilaterally deducted from its customers' accounts and paid to itself. (CAC at ¶ 37.) Plaintiff also concedes that Sovereign is a federal chartered bank governed by the OTS, but argues that the same preemption analysis under the NBA considered and rejected as a basis for dismissal in this Court's Omnibus Order applies. (Response, at 6.)

The Court will consider the Omnibus Order and address whether Sovereign's status as a federal savings association changes the Court's previous preemption analysis.

## A. Federal Preemption

There are "three types of preemption: express preemption, field preemption, and conflict preemption." *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1197 (11th Cir. 2011). Express preemption occurs where federal law expressly so provides. *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604–05 (1991). Field preemption occurs where federal law implies an intent "to supersede state law in a given area . . . ." *Id.* Conflict preemption occurs where federal and state law "actually conflict," whether because state law makes compliance with federal law

---

[5] All bold is in the original unless otherwise stated.

impossible or because state law "stands as an obstacle to the accomplishment and execution of" federal purposes. *Id.* at 605 (internal quotation marks omitted). Regulations, not just statutes, may preempt state law. *See Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes.").

### B. Preemption under the HOLA and the Non-Retroactivity of Dodd-Frank

While there is generally a presumption against preemption, s*ee Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947), courts abandon that presumption where the area of law at issue has "a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 108 (2000). Banking is such an area. *See, e.g., Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 32–33 (1996) (discussing the long history of federal bank legislation and its effect on state law). In the case of the HOLA, the Supreme Court has observed that the predecessor to the OTS "promulgated regulations governing the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." *Fidelity*, 458 U.S. at 144 (internal quotation marks omitted).

Historically, federal savings banks were chartered under the HOLA, which was administered by the OTS. *See id.* & n. 1; *see also* 12 U.S.C. § 1464 (2006). This means that federal savings banks have been subject to a different regulatory regime than national banks chartered under the NBA and overseen by the OCC. *See, e.g., Aguayo v. U.S. Bank*, 653 F.3d 912, 921 (9th Cir. 2011) (describing differences in OCC and OTS regulatory structures); *Bank of America v. City & County of San Francisco,* 309 F.3d 551, 559–60 (9th Cir. 2002) (discussing the historical context of the HOLA and OTS regulations).

On July 21, 2010, Congress' passage of Dodd-Frank changed the OTS and OCC structures. *See* Pub. L. No. 111-203, 124 Stat. 1376 (2010). Among other things, Dodd-Frank

transferred oversight responsibility for federal savings banks to the OCC and, significantly here, replaced federal savings banks' field preemption with conflict preemption. *See* 12 U.S.C. § 1462a (providing for transfer of certain powers from OTS to other federal banking agencies) and § 1465 (providing that, going forward, principles of conflict preemption will apply to federal savings banks). However, Dodd-Frank expressly provides that OTS regulations still apply to any contract predating Dodd-Frank's enactment. 12 U.S.C. § 5553.[6]

## C. Field Preemption

The parties agree that at all relevant times, Sovereign was a federal savings bank regulated by the OTS.[7] The issue presented to the Court is whether the OTS occupies the entire field of deposit-related activity, thereby preempting the state law claims asserted by Plaintiff.

Defendant argues that while this Court held that generally applicable common law doctrines and statutes were not preempted under the NBA/OCC, *see In re Checking Account*

---

[6] Dodd-Frank provides in relevant part:

> This title, and regulations, orders, guidance, and interpretations prescribed, issued, or established by the Bureau, shall not be construed to alter or affect the applicability of any regulation, order, guidance, or interpretation prescribed, issued, and established by the Comptroller of the Currency or the Director of the Office of Thrift Supervision regarding the applicability of State law under Federal banking law *to any contract entered into on or before the date of enactment of this Act*, by national banks, Federal savings associations, or subsidiaries thereof that are regulated and supervised by the Comptroller of the Currency or the Director of the Office of Thrift Supervision, respectively.

12 U.S.C. § 5553 (emphasis added).

[7] While the CAC does not specify the date on which Plaintiff entered into the Deposit Agreement with Sovereign, it refers to withdrawals made on April 26, 2010. (CAC ¶ 65.) Thus, Plaintiff entered into the Deposit Agreement on some date prior thereto, which predates the July 21, 2010 enactment of Dodd-Frank. Moreover, the representative Account Agreement attached to the CAC is from 2008. (*Id.* at ¶ 31.) Plaintiff also admits that the quoted paragraphs of the Deposit Agreement relating to overdrafts and withdrawals became effective in September 2008 and that Plaintiff's claims and the potential class period at issue go further back than that date. (Response, at 13.)

*Overdraft Litigation*, 694 F. Supp. 2d at 1311, that holding is inapposite here because the OTS expressly provides that common law claims and laws of general application are preempted under OTS regulations. In their oral argument, Defendant also relied heavily on *Hassler v. Sovereign Bank*, 374 F. App'x 341 (3d Cir. 2010), which affirmed the lower court's dismissal of similar claims against the same bank based on this same Deposit Agreement.

Plaintiff, on the other hand, argues that the preemption analysis is the same under both the NBA and the HOLA and the Court's ruling in the Omnibus Order applies with equal force to the instant matter. (Response, at 3–7.) Plaintiff further argues *Hassler* is non-precedential and inapplicable to the alleged facts of this case. (*Id.* at 8–13.)

In considering the HOLA/OTS, as contrasted with the NBA/OCC, the Court will first turn to the governing OTS regulation on preemption, which provides as follows:

> (a) <u>Occupation of field</u>. Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), ***OTS hereby occupies the entire field of lending regulation for federal savings associations***. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section[8] or § 560.110 of

---

[8] Paragraph (c) provides that state laws of the following types "are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:"

> (1) Contract and commercial law;
>
> (2) Real property law;
>
> (3) Homestead laws specified in 12 U.S.C. 1462a(f);

this part. [9] For purposes of this section, "state law" includes any state statute, regulation, ruling, order or judicial decision.

12 C.F.R. § 560.2(a) (emphasis added).

Section 560.2(b) clarifies the scope of this express preemption clause by setting forth a non-exhaustive list of the types of state laws that are expressly preempted. C.F.R. § 560.2(b). These include state laws purporting to impose requirements regarding "[d]isclosures." *Id.* at § 560.2(b)(9). Further, under section 557.12, the OTS expressly preempts state laws that purport to impose requirements governing "Checking accounts;" "Disclosure Requirements;" "Funds availability;" "Savings account orders of withdrawal;" and "Service charges and fees." *Id.* at § 557.12 (b)–(f).

To determine whether a claim is preempted, the OTS framework is explained as follows: "[T]he first step is to ascertain whether the law in question is of the type listed in § 557.12 as an example of preempted law. ***If it is, the analysis ends there; the law is preempted***." OTS Final Rule, No. 62 Fed. Reg. 54759, 54762 (Oct. 22, 1997) (emphasis added). Thus, even state laws of general applicability, such as tort, contract, and real property laws, are preempted if their enforcement would impact federal savings associations in areas listed in § 560.2(b). 12 C.F.R. § 560.2(c). *See also Aguayo*, 653 F.3d at 922 (citing the quoted OTS rule and explaining that OTS

---

(4) Tort law;

(5) Criminal law; and

(6) Any other law that OTS, upon review, finds: (i) Furthers a vital state interest; and (ii) Either has only an incidental effect on lending operations or is not otherwise contrary to the purposes expressed in paragraph (a) of this section.

12 C. F. R. § 560(c).

[9] *See* 12 C.F.R. § 560.110, Most favored lender usury preemption ("If state law permits different interest charges on specified classes of loans, a federal savings association making such loans is subject only to the provisions of state law relating to that class of loans that are material to the determination of the permitted interest.). *Id.* at § 560.110(b).

preemption analysis "stringently limit[s] a court's ability to review preemption questions by foreclosing consideration of [§ 557.13]" where a claim fits within the scope of § 557.12); *In re Washington Mutual Overdraft Protection Litigation*, 539 F. Supp. 2d 1136, 1154 (C.D. Cal. 2008) (holding state law claims preempted under § 557.12 without reaching § 557.13); *Silvas v. E*Trade Mortg. Corp.*, 514 F. 3d 1001, 1006–07 (9th Cir. 2008) ("We do not reach the question of whether the law fits within the confines of paragraph (c) [OTS lending preemption provision paralleling § 557.13] because Appellants' claims are based on types of laws listed in paragraph (b) of § 560.2 [OTS lending preemption provision paralleling § 557.12], specifically (b)(9) and (b)(5)."); *Cordon v. Wachovia Mortg., a Div. of Wells Fargo Bank, N.A.*, 776 F. Supp. 2d 1029 (N.D. Cal. 2011) (holding that even state laws of general applicability are preempted by HOLA if their enforcement would impact federal savings associations in areas listed in regulation). Alternatively, if such laws are not covered by § 560.2(b), they may nonetheless be preempted if they have more than an incidental effect on the lending operations of a federal savings association. *See* 12 C.F.R. § 560.2(c).

Defendant argues that since Plaintiff's claims all relate to areas in which field preemption under section 557.12 expressly applies, the analysis must end there. (Motion, at 9.) The Court agrees.

Unlike in its Omnibus Order, in which the Court distinguished between claims challenging a bank's ability to charge overdraft fees at all (which the Court intimated would be preempted) versus claims attacking a bank's methods in disclosing and calculating overdraft fees, such distinction is simply immaterial for OTS field preemption. *See In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d at 1313. The Court concluded, upon examination of the OCC regulations, that "federal regulation in this field is not so pervasive that we can reasonably

infer that Congress left no room for the states to supplement it." *Id.* But, as explained in *Aguayo*, leaving no room for state supplementation is precisely what field preemption does. 653 F. 3d at 921.

Indeed, a key focus of this Court's preemption analysis for national banks involved the section of the OCC's preemption rule stating that contract, tort and, criminal laws are not preempted if they "only incidentally affect" the deposit-related activities otherwise subject to preemption. *In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d at 1313 (citing 12 C.F.R. § 7.4007(c)). While the OTS regulations contain a section, 12 C.F.R. § 557.13, that looks similar to the OCC rule in that it refers to contract, tort, and criminal laws that only incidentally affect deposit-related activities, there is a fundamental distinction: The OTS regulation itself establishes that this section must not even be considered where, as here, the matters complained of fall within the ambit of the activities described in the preempting language of section 557.12.

Under this framework, Plaintiff's claim is similarly distinguishable from *Binetti v. Washington Mutual Bank*, 446 F. Supp. 2d 217 (S.D.N.Y. 2006), and other cases cited by Plaintiff (DE #2849). In *Binetti*, for example, Judge McMahon found that the plaintiff's claims arose strictly out of the lender's failure to adhere to the terms of its contract with the plaintiff. In that context, the statute was not directly aimed at lenders and had only an incidental impact on lending relationships. *Id.* at 220. Here, in contrast, Plaintiff's claims arise out of conduct directly regulated by the OTS: the ordering of withdrawals, the deficient disclosure of that practice, and allowing of account holders to overdraw without warning and opportunity to abort. *See* 12 C.F.R. § 557.12(b)–(f). *Cf. also, e.g., Munoz v. Financial Freedom Senior Funding Corp.*, 567 F. Supp. 2d 1156 (C.D. Cal. 2008) (holding borrower's putative class claims against lender under

California's unfair competition law related to disclosure of fees expressly preempted by HOLA, 12 C.F.R. § 560.2(b)(9).

Also in the Omnibus Order, the Court cited *Gutierrez v. Wells Fargo Bank, N.A.*, 622 F. Supp. 2d 946 (N.D. Cal. 2009), as an authority rejecting a preemption defense in the precise context of this case, overdraft fees. *See In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d at 1312. Critically, the *Gutierrez* court had, in an earlier decision, already considered the differences between OTS and OCC preemption and declined to follow a Ninth Circuit decision in favor of OTS preemption because of those distinctions:

> [T]he regulations and rules issued by the OTS are dissimilar to [the OCC regulations applicable] here. The language employed by the OCC in its regulations and interpretive letters evidences that application of a more narrow preemption analysis is more appropriate than that applied in *Silvas* (where the OTS had specifically defined a proper preemption test to be employed). . . .

*Gutierrez*, 2008 WL 4279550 at *12 (N.D. Cal. Sept. 11, 2008). Applying this more narrow preemption analysis, the Court finds that Plaintiff's claims against Sovereign bear on activities expressly contemplated by section 557.12, and, as such, are preempted. 12 C.F.R. § 557.12(b).

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED, ADJUDGED, and DECREED** that Defendant Sovereign Bank's Motion to Dismiss **(DE #2148)** is hereby **GRANTED** with prejudice.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 26th day of July, 2012.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:    All Counsel of Record

-13-