UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION,

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION

*Childs, et al. v. Synovus Bank, et al.,*
N.D. Ga. Case No. 1:10-CV-03027-ODE
S.D. Fla. Case No. 1:10-CV-23938-JLK

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS MATTER** is before the Court upon Defendants Synovus Bank, Synovus Financial Corporation, and Columbus Bank and Trust Company's Motion to Dismiss ("the Motion") (DE #2158), filed November 22, 2011. Therein, Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on each of the four counts of Plaintiffs' First Amended Class Action Complaint ("CAC") (DE #2026) pending in this multi-district litigation ("MDL") proceeding. The Court is fully briefed in the matter[1] and proceeds with the benefit

---

[1] Plaintiffs filed a Response (DE #2328) on December 22, 2011, and Defendants filed a Reply (DE #2374) on January 10, 2012.

of oral argument.[2] For the following reasons, the Court finds it must deny Defendants' Motion to Dismiss with respect to Defendant Synovus Bank and Defendant Synovus Financial Corporation, and grant dismissal of all claims against Defendant Columbus Bank and Trust Company.

## I. BACKGROUND

On June 10, 2009, the United States Judicial Panel on Multidistrict Litigation established this multi-district litigation proceeding known as *In re Checking Account Overdraft Litigation*, MDL No. 2036. The above-styled action against Synovus Bank, Synovus Financial Corporation ("Synovus Financial"), and Columbus Bank and Trust Company ("CB&T") was subsequently made part of this MDL proceeding, transferred to this Court, and assigned to the Fifth Tranche. (Case No. 1:10-CV-23938-JLK, DE #14&15; DE #1861.) The CAC is now the operative pleading.

Plaintiffs are current or former checking account customers of Synovus Bank. Plaintiffs allege that they maintain(ed) a demand deposit account with Synovus Bank, the terms of which are governed by a Deposit Account Agreement. Defendants are Synovus Bank, the state-chartered, federally insured bank with whom Plaintiffs maintain(ed) a checking account; CB&T, "a locally branded division of Synovus Bank;" and Synovus Financial, "the holding company for Synovus Bank." (CAC ¶¶ 14&15.)

With the instant action, Plaintiffs seek to recover (for themselves and all other

---

[2] The Court heard argument on the motion on June 12, 2012. (Oral Arg. Tr., DE #2800.)

customers similarly situated) alleged excessive overdraft fees levied as a result of the Defendants' alleged manipulation and reordering of debit transactions from largest to smallest in order to maximize the overdraft fees they charged their customers. Specifically, Plaintiffs assert claims under Georgia law for breach of contract based on the implied covenant of good faith and fair dealing (Count I), unconscionability (Count II), conversion (Count III), and unjust enrichment (Count IV). (CAC.) Before the Court now is the Synovus Defendants' Motion to Dismiss all counts under Rule 12(b)(6).

## II. STANDARD OF REVIEW

"For the purposes of a motion to dismiss, the court must view the allegations of the Complaint in the light most favorable to plaintiff, consider the allegations of the Complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1247 (11th Cir. 2003). The complaint may be dismissed if the facts as pled do not state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, the Court is determining only whether the complaint adequately states causes of action, not whether those causes of action will ultimately succeed.

## III. DISCUSSION

With the instant Motion, Defendant Synovus Bank advances five arguments as to why this Court should dismiss each of Plaintiffs' state-law claims.[3] In addition, Defendants CB&T

---

[3] (1) Plaintiffs' breach of contract based on the implied covenant of good faith and fair dealing claim ("breach of implied covenant") should be dismissed because Synovus Bank's posting of transactions is consistent with the express terms of

moves to dismiss on the ground that it is not a separate legal entity, and Defendant Synovus Financial moves to dismiss on the ground that Plaintiffs fail to allege any wrongful conduct on its behalf.

In response, Plaintiffs argue that this Court has previously rejected many of the arguments presented by Defendant Synovus Bank. Specifically, Plaintiffs urge the Court to apply the analysis set forth in the Order Ruling on Omnibus Motion to Dismiss ("Omnibus Order") to deny the instant Motion to Dismiss. *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1316–17 (S.D. Fla. 2010). Indeed, in a showing of professionalism and in the interest of judicial economy, Defendant Synovus Bank recognizes that this Court has previously considered and rejected of all but one of its arguments for dismissal. (Motion, at 18 n.7, 19 n.8, 20 n.9, 24–25.) Accordingly, the Court will provide a brief review of its analysis of Defendant Synovus Bank's arguments upon which the Court has previously ruled, so that it may focus the bulk of the analysis on the new arguments raised by Defendants, as briefed extensively in the pleadings and argued in detail at the June 12, 2012 hearing.

---

the deposit account agreement;
(2) Plaintiffs' breach of the implied covenant claim should be dismissed insofar as it is plead to create new or independent contract terms;
(3) Plaintiffs' unconscionability claim should be dismissed because Synovus Bank's posting of transactions is consistent with the express terms of the deposit account agreement and the relevant Georgia statutory law;
(4) Plaintiffs' conversion claim should be dismissed because the deposit account agreement permitted Synovus Bank's posting of the transactions high-to-low; and
(5) Plaintiffs' unjust enrichment claim should be dismissed because there is an express contract between the parties.

### A. THE COURT HAS PREVIOUSLY ANALYZED AND REJECTED ARGUMENTS VIRTUALLY IDENTICAL TO THOSE OF DEFENDANT SYNOVUS BANK

The Court has previously addressed and rejected virtually identical arguments for dismissal when it evaluated the Omnibus Motion to Dismiss filed by the First Tranche banks. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1314–23. Upon consideration of Defendant Synovus Bank's arguments, the Court finds no reason to modify the rulings of the Omnibus Order.

In the Omnibus Order, the Court found unavailing the defendant banks' arguments for dismissal of the breach of implied covenant claim where the plaintiffs, like the Plaintiffs in the instant case, claimed that defendants did not carry out their discretionary duties in good faith. *Id.* at 1315. The same reasoning holds true under Georgia law, which governs this matter. *See, e.g., White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358, 1363 (N.D. Ga. 2008) (declining to find, as a matter of law, that discretionary language of deposit agreement gave bank the right to manipulate transactions to maximize overdraft fees).

With regard to the unconscionability claim, in the Omnibus Order, the Court found that the Uniform Commercial Code's ("U.C.C.") endorsement of high-to-low posting for checks should not be extended to cover debit card transactions to defeat a claim of unconscionability as a matter of law. *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1320 (finding section 4-303(b) of the U.C.C. "applies only to paper checks, not the electronic debits that are the subject of this lawsuit"). Specifically, the Court ruled that "[t]he UCC's generally accepted principles when dealing with checks cannot be broadly applied to

debit card transactions." *Id.* at 1316.

Similarly here, the Court finds that it should not dismiss the instant Plaintiffs' unconscionability claim as a matter of law where the relevant portions of the Georgia statute permitting high-to-low posting are identical to the U.C.C. *Compare, e.g.*, GA. CODE ANN. § 11-4-303(b) *with* U.C.C. 4-303(b). Both Georgia statute and the U.C.C. endorse high-to-low posting, yet expressly exclude "a credit or debit card slip" and "a payment order governed by 4A." GA. CODE ANN. § 11-4-303(b); GA. CODE ANN. § 11-4-104(a)(9). Chapter 4A applies generally to payment orders, such as wire transfers, where the payor, as opposed to the beneficiary,[4] instructs its bank to make a payment on its behalf and then debit the account of the payor. GA. CODE ANN. § 11-4A-103(a)(1). Chapter 4A, however, expressly excludes "a funds transfer any part of which is governed by the Electronic Fund Transfer Act of 1978," ("EFTA"), 15 U.S.C. § 1693. GA. CODE ANN. § 11-4A-108.[5] Debit card transactions, which are at issue in this case, come within the scope of the EFTA,[6] and are therefore

---

[4] Payment orders are different from check-based transactions because with a check-based transaction, it is the beneficiary who submits the order to transfer the funds to the bank. U.C.C. § 4A-104 official cmt. 5.

[5] To summarize: The Georgia statute authorizes a bank to post only those transactions initiated by the beneficiary (with the exception of debit card slips) high-to-low, while transactions initiated by the payor (e.g., wire transfers) are governed by the posting provisions of chapter 4A to the extent that they are not within the scope of the EFTA.

[6] An "electronic fund transfer" is a "transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to,

expressly outside the scope of both Georgia statute § 11-4-303(b) and chapter 4A. 15 U.S.C. § 1693a(7). In addition, this Court has previously declined to extend by analogy the U.C.C.'s endorsement of high-to-low posting for checks to cover debit card transactions. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1320.

Turning to the instant matter, Defendant Synovus Bank moves for dismissal of the unconscionability claim, arguing that the transactions at issue come within Georgia statute § 11-4-303(b) because they are "electronic transactions" that are not expressly excluded by the language of the statute. (Oral Arg. Tr. 22:7–24.) In response, Plaintiffs argue that the "debit card transactions" qualify as "debit card slips," expressly outside the scope of Georgia statute § 11-4-303(b). (Response, at 15.) At the motion to dismiss stage, it is immaterial whether the transactions at issue ultimately prove to be either paper-based "debit card slips" or electronic funds transfers initiated by the payor, because both types of transactions are outside the scope of Georgia statute § 11-4-303(b). Accordingly, taking Plaintiffs' allegations of Defendant Synovus Bank's "reorder[ing] [of] debit card transactions" as true, the Court finds that Plaintiffs have pled a plausible claim of unconscionability.[7] (CAC ¶ 36.)

---

point-of-sale transfers, automated teller machine transactions . . . ." 15 U.S.C. § 1693a (7).

[7] The Synovus Defendants argue that this Court should apply the law of the original forum (in this case, the Northern District of Georgia), and rule in accordance with the precedent established by *White v. Wachovia Bank, N.A.*, 563 F. Supp. 2d 1358 (N.D. Ga. 2008), to dismiss Plaintiffs' unconscionability claim. (Reply, at 4–6.) Upon consideration of the internal limitations of the Georgia statute on high-to-low posting to exclude debit card slips and the distinction between beneficiary-initiated and payor-initiated transactions, matters not addressed in the *White* opinion, the Court respectfully declines to follow the non-binding precedent of the *White* opinion on this issue of unconscionability.

Finally, with regard to the unconscionability, conversion, and unjust enrichment claims, this Court has already ruled that Plaintiffs may plead these claims under Fed. R. Civ. P. 8(d) as alternate theories to the breach of contract claim. *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1321–23. The Court now turns to the arguments of Defendants previously not considered by the Court.

## B. DEFENDANTS RAISE THREE NEW ARGUMENTS FOR DISMISSAL

The instant Motion to Dismiss presents three arguments for dismissal not previously considered by this Court during the pendency of the MDL proceedings: (1) Plaintiffs' breach of the implied covenant claim should be dismissed insofar as it is pled to create new or independent contract terms; (2) Plaintiffs' claims against Defendant CB&T should be dismissed because Defendant CB&T is not a separate legal entity; and (3) Plaintiffs' claims against Defendant Synovus Financial should be dismissed because Plaintiffs did not plead facts of wrongdoing against Defendant Synovus Financial specifically. The Court will address each argument in turn.

### i. *Plaintiffs Sufficiently Plead Breach of the Implied Covenant Against Defendant Synovus Bank*

Defendant Synovus Bank argues that this Court should dismiss Plaintiffs' claim for breach of the implied covenant insofar as it is pled to create new or independent contract terms. The crux of the argument is that Plaintiffs may not maintain a breach of the implied covenant claim for policies and procedures that are not tied to any provision in the Deposit Account Agreement. *See generally Am. Casual Dining, L.P. v. Moe's SW Grill, L.L.C.*, 426

F. Supp. 2d 1356, 1370 (N.D. Ga. 2006) (holding common law breach of the implied covenant claims must be tied to breach of specific contractual provision). Specifically, Defendant Synovus Bank points to Plaintiffs' allegations that Defendant Synovus Bank breached the implied covenant by "holding" or delaying the posting of transactions, as well as by failing to make certain disclosures to customers, to obtain affirmative consent from customers prior to processing overdraft transactions, and to alert customers to transactions that would trigger an overdraft. (Motion, at 22–23.) Defendant Synovus Bank maintains that these allegations do not relate to a breach of any provision of the Deposit Account Agreement, and, therefore, are not grounds for breach of the implied covenant. (*Id.*)

In response, Plaintiffs argue, and the Court agrees, that Defendant Synovus Bank's practice of "holding" or delaying the posting of transactions is directly related to the Deposit Account Agreement provision that states Defendant Synovus Bank "may" pay items drawn on an account in any order it determines. (Response, at 12–13.) As the Court has already ruled that Plaintiffs may maintain a claim for breach of the implied covenant as it relates Defendants' fulfillment of their discretionary duties under the Deposit Account Agreement, see discussion, *supra* Part III.A., the Court finds it must deny Defendants' motion to dismiss the breach of the implied covenant claim on this ground.

With regard to the remaining allegations highlighted by Defendant Synovus Bank as not relating to a contractual provision, Plaintiffs argue that those particular allegations pertain to Plaintiffs' unconscionability claim, as opposed to Plaintiffs' claim for breach of

the implied covenant. (Response, at 12–13.) The Court has reviewed the CAC, and the allegations at issue appear in the common factual allegations section under the heading "Synovus' Unconscionable Provisions and Policies" and are repeated under Count II for unconscionability. (CAC ¶ 58(a)–(c) & ¶ 83(a)–(c).) Accordingly, the Court finds it must deny Defendants' Motion to Dismiss the breach of the implied covenant claim on this ground as well. The Court now turns to the arguments of Defendants CB&T and Synovus Financial.

### ii. *As Pled, CB&T Is Not Subject to Suit*

Defendant CB&T moves the Court to dismiss Plaintiffs' claims against it in their entirety, because Defendant CB&T, as plead in the CAC, is merely a division of Defendant Synovus Bank, as opposed to a separate legal entity capable of being sued. (Motion, at 14.) In response, Plaintiffs direct the Court's attention to the various allegations in the CAC that refer specifically to Defendant CB&T's involvement with the reordering of debit transactions. (Response, at 20–22.)

While the Court acknowledges the various allegations of wrongdoing against Defendant CB&T, it cannot overlook the legal significance of the allegation in the CAC that Defendant CB&T is "a locally branded division of Synovus Bank." (CAC ¶ 14.) Under Geogia law, a division or branch of a bank "is not a discrete entity subject to suit." *Harrell v. Bank of the South, N.A.*, 330 S.E.2d 147, 148 (Ga. App. 1985) (setting aside judgment entered against non-party bank where only named defendant was a branch division); *see also*

*generally Western Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 590 (5th Cir. 1980)[8] (reversing district court's entry of judgment where court did not give legal significance to the factual determination that one defendant was a division of the other defendant, as opposed to a separate legal entity). Here, at the motion to dismiss stage, the Court must take as true Plaintiffs' factual allegation that Defendant CB&T is a division of Defendant Synovus Bank. Accordingly, the Court finds it must dismiss Defendant CB&T from the above-styled action.

### iii. *Plaintiffs Plead Sufficient Facts Against Defendant Synovus Financial*

Defendant Synovus Financial moves the Court to dismiss Plaintiffs' claims against it in their entirety for failing to plead facts against Defendant Synovus Financial specifically, aside from that Defendant Synovus Financial is the holding company of Defendant Synovus Bank. (Motion, at 13–14.) In response, Plaintiffs argue, and the Court agrees, that the CAC sets forth sufficient facts to establish plausible claims against Defendant Synovus Financial. The CAC starts by stating that Defendants CB&T, Synovus Bank, and Synovus Financial will be referred to collectively as "Synovus" or "the Bank." (CAC ¶ 1.) Therefore, taking the CAC in the light most favorable to Plaintiffs, every time "Synovus" or "the Bank" is referred to in an allegation, the Court must read that allegation to include Defendant Synovus Financial. Accordingly, the Court finds it must deny the Motion with respect to Defendant Synovus Financial.

---

[8] Decisions of the United States Court of Appeals for the Fifth Circuit handed down by the close of business on September 30, 1980 are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

## IV. CONCLUSION

After careful consideration and being fully advised by the briefs, memoranda and oral argument of counsel, it is

**ORDERED, ADJUDGED, and DECREED** that the Motion to Dismiss **(DE #2158)** be, and the same is hereby **GRANTED in part and DENIED in part**, as follows:

1. The Motion to Dismiss (DE #2158), insofar as it relates to the claims against Defendant Synovus Bank and Synovus Financial, is **DENIED**.

2. The Motion to Dismiss (DE #2158), insofar as it relates to the claims against Defendant CB&T, is **GRANTED**. All claims against CB&T are hereby **DISMISSED**.

It is **FURTHER ORDERED** that Defendants Synovus Bank and Synovus Financial shall, within twenty (20) days hereof, consistent with the rulings set forth in this Order, file an answer to the CAC.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 26th day of July, 2012.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: All Counsel of Record