# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into as of April 6, 2012, by and among (1) Plaintiffs, for themselves and on behalf of the Settlement Class, and (2) Union Bank, N.A. ("Union Bank"), subject to Court approval as required by Rule 23 of the Federal Rules of Civil Procedure. As provided herein, Union Bank, Class Counsel and Plaintiffs hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Class against Union Bank in the actions titled *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK; *Cynthia Larsen, et al. v. Union Bank, N.A.*, N.D. Cal. Case No. 4:09-cv-3250-PJH and S.D. Fla. Case No. 1:09-cv-23235-JLK, shall be settled and compromised upon the terms and conditions contained herein.

## I.    Recitals

1.    On July 16, 2009, plaintiff Cynthia Larsen filed a Class Action Complaint in United States District Court for the Northern District of California seeking monetary damages, restitution and declaratory relief from Union Bank, arising from the alleged unfair assessment and collection of overdraft fees, entitled *Cynthia Larsen, et al. v. Union Bank, N.A.*, N.D. Cal. Case No. 4:09-cv-3250-PJH ("*Larsen*").

2.    On October 14, 2009, the Judicial Panel on Multidistrict Litigation transferred *Larsen* for coordination with these proceedings, *In re Checking Account Overdraft Fee Litigation*, MDL No. 2036 ("MDL 2036"). The claims against Union Bank proceeded in MDL 2036's so-called First Tranche of cases.

3. On November 9, 2009, Plaintiffs filed a First Amended Complaint, which Union Bank moved to dismiss. On March 11, 2010, the Court issued an omnibus ruling on motions to dismiss pleadings then pending against the First Tranche cases, denying in part and granting in part the motion to dismiss. *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010).

4. On April 12, 2010, Plaintiffs filed their Second Amended Complaint against Union Bank. In the Second Amended Compliant three additional class representatives were named: Cheryl Brown, Kristian Logan, and Josh Naehu-Reyes. On May 21, 2010, Union Bank filed its Answer to the Second Amended Complaint.

5. On May 13, 2010, Plaintiffs propounded their first request for production of documents, first set of interrogatories and first requests for admissions. On July 16, 2010, the Parties entered into a Stipulated Protective Order relating to the production of documents and information. On January 26, 2011, Plaintiffs propounded a Second Request for Production. Over the course of the Action, Union Bank has produced to Plaintiffs approximately 1.2 million pages of documents.

6. During the Litigation, Plaintiffs took the depositions of fifteen (15) Union Bank employees and officers, some for more than one day of deposition. Union Bank took the deposition of all four of the class representatives. Plaintiffs subpoenaed documents from a third party consultant of Union Bank, CAST Management Consultants, Inc.

7. On January 28, 2011, Plaintiffs moved to amend the complaint to add a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1691, *et seq.* ("RICO"). By Order dated March 21, 2011, the Court granted the motion to amend the complaint, and on March 29, 2011, Plaintiffs filed the Third Amended Complaint. On April 20,

2011, Union Bank moved to dismiss the RICO claim in the Third Amended Complaint. On July 13, 2011, the Court granted the motion to dismiss the RICO claim.

8.      Beginning in early 2011, the Parties engaged in preliminary settlement discussions. Thereafter, the Parties participated in formal mediation sessions under the auspices of Professor Eric Green of Resolutions, LLC. The first mediation session was held in Miami on April 6, 2011. Subsequent to the first mediation, Union Bank provided Plaintiffs with sample transactional and aggregate data regarding its overdraft fee revenue.

9.      By August 1, 2010, as a result of this litigation and other factors, Union Bank reviewed, evaluated and modified some of its checking account policies and practices with respect to its consumer DDA accounts, ultimately modifying its practices so that debit and ATM transactions in such accounts are generally posted from lowest to highest dollar amount.

10.     On April 25, 2011, Plaintiffs filed a Motion For Class Certification. On July 25, 2011, the District Court entered an Order Granting Class Certification. On July 27, 2011, Union Bank, pursuant to Fed. R. Civ. P. 23(f), petitioned the United States Court of Appeal for the Eleventh Circuit for permission to appeal the District Court's Order Granting Class Certification. On October 7, 2011, the Court of Appeal denied that petition.

11.     On August 18, 2011, Plaintiffs served upon Union Bank their Third Request for Production which sought all applicable transactional data for class members during the class period.

12.     On November 1, 2011, the Parties had a second formal mediation session with Professor Eric Green in Boston, Massachusetts. As a result of the mediation, the Parties signed a Memorandum of Understanding that memorialized the Parties' good-faith intention to fully, finally, and forever resolve the claims of the Settlement Class Members.

13.     On November 2, 2011, the Parties filed a Notice of Settlement with the Court in MDL 2036.

14.     The Parties now agree to settle the Action in its entirety with respect to all Released Claims by the Settlement Class. Union Bank has denied and continues to deny that it engaged in the wrongful acts or violations of law or duty alleged in the Action, and contends that it has not engaged in any wrongdoing whatsoever with respect to Plaintiffs or Settlement Class Members. In addition, Union Bank contends that the claims of Plaintiffs and Settlement Class Members asserted in the Action are preempted. Nevertheless, in light of the burden, risk and uncertainty of litigation generally, and the expense and delays in any potential recovery which would be necessitated by continued litigation of this Action, the Parties are willing to enter into this settlement to put this controversy to rest. The Parties intend this Agreement to bind Plaintiffs, Union Bank, and all members of the Settlement Class who do not timely request to be excluded from the Settlement.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.     Definitions

In addition to the terms defined at various points within this Agreement, the following Defined Terms apply throughout this Agreement and the attached exhibits:

15.     "Account" means any consumer checking, demand deposit or savings account maintained by Union Bank in the United States that may be accessed by a Debit Card.

16.     "Action" means *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK; *Cynthia Larsen, et al. v. Union Bank, N.A.*, N.D. Cal. Case No. 4:09-cv-3250-

PJH and S.D. Fla. Case No. 1:09-cv-23235-JLK, and any and all other cases pending in MDL

2036 as of the date of Preliminary Approval to the extent they assert claims against Union Bank.

17. "Class Counsel" means:

> BRUCE S. ROGOW, P.A.
> Bruce Rogow, Esq.
> 500 E Broward Boulevard # 1930
> Fort Lauderdale, FL 33394
>
> BARON & BUDD, P.C.
> Russell Budd, Esq.
> Mazin A. Sbaiti, Esq.
> 3102 Oak Lawn Avenue
> Suite 1100
> Dallas, TX 75219
> Tel: 214-521-3605
>
> GOLOMB & HONIK, P.C.
> Ruben Honik, Esq.
> 1515 Market Street, Suite 1100
> Philadelphia, PA 19102
> Tel: 215-985-9177
>
> GROSSMAN ROTH, P.A.
> Robert G. Gilbert, Esq.
> Stuart Z. Grossman, Esq.
> 2525 Ponce de Leon, Suite 1150
> Miami, Florida 33133
> Tel : 305-442-8666
>
> LIEFF, CABRASER,
>   HEIMANN & BERNSTEIN, LLP
> Michael W. Sobol, Esq.
> Embarcadero Center West
> 275 Battery Street, 29th Floor
> San Francisco, CA 94111-3339
> Tel: 415-956-1000
>
> David S. Stellings, Esq.
> 250 Hudson Street, 8th Floor
> New York, NY 10013
> Tel: 212-355-9500

PODHURST & ORSECK, P.A.
Aaron S. Podhurst, Esq.
Peter Prieto, Esq.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800

TRIEF & OLK
Ted. E. Trief, Esq.
150 East 58th Street, 34th Floor
New York, NY 10155
Tel: 212-486-6060

WEBB, KLASE & LEMOND, L.L.C.
Edward Adam Webb, Esq.
1900 The Exchange SE, Suite 480
Atlanta, GA 30339
Tel: 770-444-9325

BONNET, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Andrew Friedman, Esq.
Patricia N. Syverson, Esq.
Elaine A. Ryan, Esq.
Todd D. Carpenter, Esq.
2901 N. Central Avenue, Suite 100
Phoenix, AZ 85012-3311
655 West Broadway - Suite 1900
San Diego, CA 92101-3301

MCCUNE WRIGHT LLP
Richard D. McCune, Esq.
2068 Orange Tree Lane, Suite 216
Redlands, CA 92374

HAGENS BERMAN SOBOL SHAPIRO LLP
Sean Matt, Esq.
1301 5th Ave., Suite 2900
Seattle, WA 98101

ROBBINS GELLER RUDMAN & DOWD LLP
Bonny E. Sweeney, Esq.
Rachel L. Jensen, Esq.
Xan Bernay, Esq.
655 West Broadway - Suite 1900
San Diego, CA 92101-3301

and such other counsel as are identified in Class Counsel's request for attorneys' fees and costs.

18.  "Class Period" means the period from July 16, 2005, through August 13, 2010.

19.  "Court" means the United States District Court for the Southern District of Florida, Miami Division.

20.  "Current Account Holder" means a Settlement Class Member who had an Account during the Class Period, and who continues to have that Account as of the date that the Settlement Fund is distributed to the Settlement Class Members pursuant to this Agreement.

21.  "Debit Card" means a card, sticker, tag or other device issued or provided by Union Bank, including a debit card, check card, or automated teller machine ("ATM") card, that can be used to debit funds from an Account by Point of Sale and ATM transactions.

22.  "Debit Card Transaction" means any transaction effectuated with a Debit Card, including Point of Sale transactions (whether pinned or pinless) and ATM transactions.

23.  "Debit Re-sequencing" means Union Bank's former practice of posting an Account's Debit Card Transactions from highest to lowest dollar amount, which is alleged to have resulted in the assessment of Overdraft Fees that would not have been assessed if Union Bank had used an alternative posting method, *e.g.*, one that posted transactions from lowest to highest.

24.  "Effective Date" means the fifth business day after which all of the following events have occurred:

a.  All Parties, Union Bank's counsel, and Settlement Class Counsel have executed this Agreement;

b. The Court has entered without material change the Final Approval Order; and

c. The time for appeal or petition has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without change (unless such change is agreed to by the Parties), no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired and relief from a failure to file same is not available.

25. "Escrow Account" means the interest bearing account to be established by Union Bank consistent with the terms and conditions described in Section III below. The Escrow Account shall be held at a bank to be selected by the Escrow Agent and approved by the Parties.

26. "Escrow Agent" means Rust Consulting, Inc. The Escrow Agent shall administer the Escrow Account.

27. "Final Approval" means the date that the Court enters an order and judgment granting final approval to the Settlement and determines the amount of any fees, costs, and expenses awarded to Class Counsel and any Service Award to Plaintiffs. The proposed Final Approval Order that will be attached to the motion for final approval of the Settlement shall be in a form agreed upon by Settlement Class Counsel and counsel for Union Bank.

28. "Final Approval Order" means the order and judgment that the Court enters upon finally approving the Settlement.

29. "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement. "Notice Program" means the methods provided for in this Agreement for giving the

Notice and consists of Mailed Notice, Published Notice, and Long-form Notice substantially in the forms attached hereto as Exhibits 1, 2, and 3. A complete description of the contemplated Notice Program is provided in Section VIII, *infra.*

30. [reserved]

31. "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first mailed or published, and that ends no later than 30 days prior to the Final Approval Hearing. The Opt-Out deadline will be specified in the Notice.

32. "Overdraft Fee" means any fee assessed to a holder of an Account for items paid when the Account has insufficient funds to cover the item, even if all deposits had been considered available. Fees charged to transfer balances from other accounts are excluded.

33. "Parties" means Plaintiffs and Union Bank.

34. "Past Account Holder" means a Settlement Class Member who held an Account at some time during the Class Period but no longer holds that Account as of the date that the Settlement Fund is distributed to Settlement Class Members pursuant to this Agreement.

35. "Plaintiffs" means: Cynthia Larsen, Cheryl Brown, Kristian Logan, and Josh Naehu-Reyes.

36. "Point of Sale" or "POS" means a transaction in which an Account holder uses his or her Debit Card to purchase a product or service.

37. "Preliminary Approval" means the date that the Court enters, without material change (unless such change is agreed to by the Parties), an order preliminarily approving the Settlement in the form jointly agreed upon by the Parties.

38.     "Released Claims" means all claims to be released as specified in Section XIV of this Agreement. The "Releases" means all of the releases contained in Section XIV of this Agreement.

39.     "Released Parties" means those persons released by paragraphs 93-96, *infra*.

40.     "Releasing Parties" means all Plaintiffs and all Settlement Class Members who do not timely and properly opt out of the Settlement, and each of their respective heirs, assigns, beneficiaries, and successors.

41.     "Settlement" means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are as set forth in this Agreement and the attached exhibits.

42.     "Settlement Administrator" means Rust Consulting, Inc.

43.     "Settlement Class" means all Union Bank customers in the United States who had one or more Accounts and who, during the Class Period, incurred an Overdraft Fee as a result of Union Bank's Debit Re-sequencing.

44.     "Settlement Class Counsel" means Bruce Rogow of Bruce S. Rogow, P.A.; Aaron Podhurst of Podhurst Orseck, P.A.; Robert C. Gilbert of Grossman Roth, P.A.; and Michael W. Sobol of Lieff, Cabraser, Heimann & Bernstein, LLP. Settlement Class Counsel are a subset of Class Counsel. They are responsible for handling all Settlement-related matters on behalf of Plaintiffs.

45.     "Settlement Class Member" means any person included in the Settlement Class.

46.     "Settlement Fund" means the fund established under Section III of this Agreement.

47.     "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for Settlement Class Members to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Long-Form Notice, the order preliminarily approving this Settlement, and such other documents as Settlement Class Counsel and counsel for Union Bank agree to post or that the Court orders posted on the website. These documents shall remain on the Settlement Website at least until Final Approval. The URL of the Settlement Website shall be www.Union Bankoverdraftsettlement.com or such other URL as Settlement Class Counsel and counsel for Union Bank may subsequently agree upon in writing. The Settlement Website shall not include any advertising, and shall not bear or include the Union Bank logo or Union Bank trademarks. Ownership of the Settlement Website URL shall be transferred to Union Bank within 10 days of the date on which operation of the Settlement Website ceases.

48.     [reserved]

## III.    Establishing and Maintaining the Settlement Fund; Costs of Notice And Settlement Administration.

49.     Within fourteen calendar days of Preliminary Approval, Union Bank shall deposit the sum of Thirty Five Million Dollars ($35,000,000.00) into the Escrow Account to create the Settlement Fund.

50.     Upon the establishment of the Escrow Account, the Escrow Agent may, at the direction of Settlement Class Counsel, cause the Settlement Funds in the Escrow Account to be invested in interest-bearing short-term instruments – to be agreed upon by Settlement Class Counsel and Union Bank – that are backed by the full faith and credit of the United States Government or that are fully insured by the United States Government or an agency thereof (the

"Instruments"). The Escrow Agent may thereafter re-invest the interest proceeds and the principal as they mature in similar Instruments, bearing in mind the liquidity requirements of the Escrow Account to ensure that it contains sufficient cash available to pay all invoices, taxes, fees, costs, and expenses, and other required disbursements, in a timely manner. Except as otherwise specified herein, the Instruments at all times will remain in the Escrow Account and under the control of the Escrow Agent. The Escrow Agent shall communicate with Settlement Class Counsel and counsel for Union Bank on at least a monthly basis to discuss potential cash needs for the following month. Union Bank shall waive all of its fees associated with maintaining and administering the Escrow Account; all costs incurred in connection with investing in the Instruments shall be paid from the Settlement Fund.

51. The Settlement Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Union Bank or its counsel and/or Plaintiffs or Class Counsel with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund. Union Bank and its counsel and Plaintiffs and Class Counsel shall have no liability or responsibility for any of the Taxes. The Settlement Fund shall indemnify and hold Union Bank and its counsel and Plaintiffs and Class Counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

52.     The Settlement Fund shall be used to pay all distributions to the Settlement Class Members, any Service Awards to Plaintiffs, and all attorneys' fees, costs and expenses awarded to Class Counsel, as follows:

    a.     Distribution of payments to the Settlement Class pursuant to Section XI hereof.

    b.     Payment of the Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses pursuant to Section XV hereof.

    c.     Payment of any Court-ordered Service Awards to the Plaintiffs pursuant to Section XV(C) hereof.

53.     In addition to the $35 million payment required by paragraph 49, Union Bank shall pay the following:

    a.     The costs of Notice to the Settlement Class and for the related services of the Settlement Administrator, within thirty days of Settlement Class Counsel's and counsel for Union Bank's receipt and approval of invoices received, as provided in Section VIII hereof.

    b.     The Settlement Administrator's costs and fees for services provided pursuant to Section VII hereof, within thirty days of Settlement Class Counsel's and counsel for Union Bank's receipt and approval of invoices received from the Settlement Administrator.

    c.     Union Bank's actual expenses that result from investing the Settlement Fund in Instruments pursuant to paragraph 50 hereof, within thirty days of Settlement Class Counsel's and counsel for Union Bank's receipt and approval of invoices for such expenses.

    d.     All invoices of the Settlement Administrator to perform tax-related services for the Escrow Account, within thirty days of Settlement Class Counsel's and counsel for Union Bank's receipt and approval of invoices received from the Settlement Administrator.

e. [reserved]

f. As provided in paragraph 88 below, Union Bank may be reimbursed for costs and fees it pays pursuant to subparagraphs (a) through (d) above.

g. Under no circumstances shall Union Bank be required to pay an amount greater than the $35 million payment required under paragraph 49 and the fees and expenses required in subparagraphs (a) through (f) above.

## IV. Certification of the Settlement Class

54. The Settlement Class shall be consistent with the class certified by the Court in the July 25, 2011, Order Granting Class Certification, *i.e.*, "All Union Bank customers in the United States who had one or more consumer accounts and who, during the Class Period, incurred an Overdraft Fee as a result of Union' Bank's Debit Re-sequencing."

55. For purposes of this Settlement only, Union Bank agrees to the certification of the Settlement Class. If the Court declines to approve the Settlement, if the Court changes the Settlement Class composition or the terms of the Settlement in any material way not acceptable to Union Bank after reasonable consultation with Settlement Class Counsel, if certification of the Settlement Class or approval of the Settlement is reversed, or if certification of the Settlement Class or approval of the Settlement is changed upon appeal or review in any material way not acceptable to Union Bank after reasonable consultation with Settlement Class Counsel, Union Bank shall have the right to terminate the Settlement pursuant to Section XVI *infra*.

## V. Settlement Approval

### A. Preliminary Approval

56. Upon execution of this Agreement by all Parties, Settlement Class Counsel shall promptly move the Court for an Order granting preliminary approval of this Settlement ("Preliminary Approval Order"). The proposed Preliminary Approval Order that will be

attached to the motion shall be in a form agreed upon by Settlement Class Counsel and counsel for Union Bank. The Motion for Preliminary Approval shall request that the Court: (i) approve the terms of the Settlement as within the range of fair, adequate and reasonable; (ii) approve the Notice program set forth herein and approve the form and content of the Notices of the Settlement, substantially in the forms attached to this Agreement as Exhibits 1, 2, and 3; (iii) approve the procedures set forth in paragraphs 64 and 65 below for Settlement Class Members to exclude themselves from the Settlement Class or to object to the Settlement; (iv) stay the Action pending Final Approval of the Settlement; and (v) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Settlement Class Counsel and counsel for Union Bank, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsel's application for attorneys' fees, costs and expenses and for any Service Awards to Plaintiffs ("Final Approval Hearing").

57.    Union Bank, at its own expense, shall serve or cause to be served a notice of the proposed Settlement, in conformance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

## VI.    **Discovery**

58.    Class Counsel and Union Bank already have engaged in significant formal and informal discovery, including approximately 19 depositions and the production of approximately 1.2 million pages of documents. In addition, and consistent with its statutory and regulatory obligations to protect its customers' private financial information, Union Bank will continue to cooperate informally with Settlement Class Counsel by providing reasonably available data to permit Settlement Class Counsel and their experts to perform the allocation analysis detailed in Section X below.

## VII.   Settlement Administrator

59.     Settlement Class Counsel and Union Bank shall retain Rust Consulting, Inc. to serve as the Settlement Administrator.  The Settlement Administrator shall administer various aspects of the Settlement as described in paragraph 61 below and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, providing Mailed Notice to Settlement Class Members; working to effectuate the Published Notice Program pursuant to Section VIII below; distributing the Settlement Fund as provided herein; repaying Union Bank from the Settlement Fund the amount of account credits Union Bank provides to Current Account Holder Settlement Class Members pursuant to paragraph 88 hereof; and  paying the remainder of the Settlement Fund to Union Bank in the event of a termination of the Settlement pursuant to Section XVII hereof.  Settlement Class Counsel and counsel for Union Bank will jointly oversee the Settlement Administrator.

60.     As provided in subparagraph 53(b), Union Bank shall pay the Settlement Administrator's costs and fees for services within thirty days of Settlement Class Counsel's and counsel for Union Bank's receipt and approval of invoices received from the Settlement Administrator.  Union Bank may be reimbursed for these payments as provided in subparagraph 53(f) and paragraph 88.

61.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in this Agreement, are as follows:

a.     Obtain from Union Bank and Settlement Class Counsel Settlement Class Member name and address information (to the extent it is available), and verify and update the addresses received through the National Change of Address database, for the purpose of mailing the Mailed Notice, and later mailing distribution checks to Past Account Holder Settlement Class Members, and to Current Account Holder Settlement Class Members where it is not feasible or

reasonable for Union Bank to make the payment by a credit to the Settlement Class Members' Accounts;

b.      Establish and maintain a Post Office box for requests for exclusion from the Settlement Class;

c.      Establish and maintain the Settlement Website;

d.      Establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries;

e.      Respond to any mailed Settlement Class Member inquiries;

f.      Process all requests for exclusion from the Settlement Class;

g.      Provide weekly reports and, no later than five days after the end of the Opt-Out Period, a final report to Settlement Class Counsel and counsel for Union Bank that summarize the number of requests for exclusion received that week, the total number of exclusion requests received to date, and other pertinent information;

h.      Perform all tax-related services for the Escrow Account as provided in this Agreement;

i.      At Settlement Class Counsel's request in advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that identifies each Settlement Class Member who timely and properly requested exclusion from the Settlement Class;

j.      Process and transmit distributions to Settlement Class Members from the Settlement Fund;

k.      Pay invoices, expenses and costs upon approval by Settlement Class Counsel and counsel for Union Bank, as provided in this Agreement; and

l.      Perform the duties of Escrow Agent as described in this Agreement, and any other Settlement-administration-related function at the instruction of Settlement Class Counsel and counsel for Union Bank, including but not limited to, verifying that Union Bank has correctly made a distribution to Settlement Class Members pursuant to paragraph 87 herein.

m.      Maintain records sufficient to identify any and all Settlement Class Members who exclude themselves from the Settlement Class or who object to the Settlement, and report to the Parties regarding such records at the request of Settlement Class Counsel or counsel for Union Bank.

## VIII.   Providing Settlement Notice to Settlement Class Members

62.      The Parties shall retain Rust Consulting, Inc. to effectuate the Notice Program that provides Notice to the Settlement Class.

63.      Upon Preliminary Approval of the Settlement, at the direction of Settlement Class Counsel, the Settlement Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice shall include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or "opt out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing will occur; and the address of the Settlement Website at which Settlement Class Members may access this Agreement and other related documents and information. Settlement Class Counsel and counsel for Union Bank shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. Notices and publications provided under or as part of the Notice Program shall not bear or include the Union

Bank logo or trademarks, the return address of Union Bank, the Union Bank red and blue colors, or otherwise be styled to appear to originate from Union Bank.

64.     The Notice also shall include a procedure for Settlement Class Members to opt out of the Settlement Class. A Settlement Class Member may opt out of the Settlement Class at any time during the Opt-Out Period. Any Settlement Class Member who does not timely and validly request to opt out shall be bound by the terms of this Agreement.

65.     The Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for attorneys' fees, costs and expenses and for Service Awards to Plaintiffs. Objections to the Settlement or to the application for fees, costs, expenses, and Service Awards must be mailed to the Clerk of the Court, Settlement Class Counsel, and Union Bank's counsel. For an objection to be considered by the Court, the objection must be received by the Court, the Settlement Administrator, Settlement Class Counsel and Union Bank's counsel no later than the last day of the Opt-Out Period, as specified in the Notice. For an objection to be considered by the Court, the objection must also set forth:

      a.      the name of the Action;

      b.      the objector's full name, address and telephone number;

      c.      an explanation of the basis upon which the objector claims to be a Settlement Class Member;

      d.      all grounds for the objection, accompanied by any legal support for the objection known to the objector or the objector's counsel;

      e.      the number of times the objector has objected to a class action settlement within the five years preceding the date on which the objector files the objection, the caption of each case in which the objector has made such an objection, and a copy of any orders or opinions

related to or ruling upon the objector's prior such objections that were issued by the trial court and appellate courts in each listed case;

      f.     the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

      g.     the number of times the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such an objection, and a copy of any orders or opinions related to or ruling upon counsel or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

      h.     any and all agreements that relate to the objection or the process of objecting – whether written or verbal – between objector or objector's counsel and any other person or entity;

      i.     the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

      j.     a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

      k.     a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

      l.     the objector's signature (an attorney's signature is not sufficient).

66.     Notice shall be provided to Settlement Class Members in three different ways: Mailed Notice; Published Notice; and Long-form Notice on the Settlement Website. Not all Settlement Class Members will receive all three forms of Notice, as detailed below.

67. The Mailed Notice shall be substantially in the form attached hereto as Exhibit 1; the Published Notice shall be substantially in the form attached hereto as Exhibit 2; and the Long-form Notice shall be substantially in the form attached hereto as Exhibit 3.

68. Settlement Class Counsel and Union Bank shall provide to the Settlement Administrator the data files that identify, subject to the data limitations described in paragraph 78 hereof, the names and last known addresses of the identifiable Settlement Class Members. Within 28 days from the date of Preliminary approval, the Settlement Administrator shall run the addresses through the National Change of Address Database, and shall mail to all such Settlement Class Members a postcard containing the Mailed Notice (the "Initial Mailed Notice").

69. The Settlement Administrator shall perform address traces for all Initial Mailed Notice postcards that are returned as undeliverable using a National Change of Address database. No later than 35 days from the Initial Mailed Notice date, the Settlement Administrator shall complete the re-mailing of Mailed Notice postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces (the "Notice Re-mailing Process").

70. Within seven days after the date the Settlement Administrator completes the Notice Re-mailing Process, the Settlement Administrator shall provide Settlement Class Counsel and Union Bank's counsel an affidavit that confirms that the Mailed Notice Program was completed in a timely manner. Settlement Class Counsel shall file that affidavit with the Court as an exhibit to or in conjunction with Plaintiffs' motion for final approval of the Settlement.

71. [reserved]

72. The Settlement Administrator shall administer the Published Notice Program, which shall consist of the following: a one-time appropriate sized advertisement in the

newspaper of highest circulation in each of the three market areas with the highest number of customers. The Published Notice Program shall be completed no later than 28 days after Preliminary Approval.

73. As provided in subparagraph 53(d), Union Bank shall pay all costs of the Mailed Notice Program and the Published Notice Program and all related fees for the services of the Settlement Administrator, within thirty days of Settlement Class Counsel's and counsel for Union Bank's receipt and approval of invoices received from the Settlement Administrator. Union Bank may be reimbursed for these payments as provided in subparagraph 53(f) and paragraph 88.

74. Within seven days after the date the Settlement Administrator completes the Published Notice Program, the Settlement Administrator shall provide Settlement Class Counsel and counsel for Union Bank with one or more affidavits that confirm that Published Notice was given in accordance with the Published Notice Program. Settlement Class Counsel shall promptly file such affidavit(s) with the Court.

## IX. Final Approval Order and Judgment

75. The Plaintiffs' motion for preliminary approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. Plaintiffs shall file their motion for final approval of the settlement, and their application for attorneys' fees, costs and expenses and for any Service Awards for Plaintiffs no later than 45 days prior to the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' motion for final approval of the Settlement, and on Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards for Plaintiffs. In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the fee, cost,

expense or any Service Award application, provided the objectors filed timely objections that meet all of the requirements listed in paragraph 65 above.

76.     The Court at the Final Approval Hearing will determine whether to enter the Final Approval Order granting final approval of the Settlement, whether to approve Class Counsel's request for attorneys' fees, costs, expenses and any Service Awards, and whether the Settlement Class has been fairly and adequately represented.  The proposed Final Approval Order that will be attached to the motion shall be in a form agreed upon by Settlement Class Counsel and counsel for Union Bank.  Such Final Approval Order shall, among other things:

a.     Determine that the Settlement is fair, adequate and reasonable;

b.     Finally certify the Settlement Class for settlement purposes only;

c.     Determine that the Settlement Class has been fairly and adequately represented;

d.     Determine that the Notice provided satisfies Due Process requirements;

e.     Dismiss the Action with prejudice and without costs;

f.     Bar and enjoin Plaintiffs and all Settlement Class Members from asserting any of the Released Claims, as set forth in Section XIV, including during any appeal from the Final Approval Order;

g.     Release Union Bank and the Released Parties from the Released Claims, as set forth in Section XIV; and

h.     Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including Union Bank, all Settlement Class Members, and all objectors, to administer, supervise, construe and enforce this Agreement in accordance with its terms.

## X.  Allocation of Settlement Fund Among Settlement Class Members

77.  Consistent with its statutory and regulatory obligations to protect its customers' private financial information, Union Bank shall make available to Settlement Class Counsel and to Plaintiffs' experts data – to the extent it exists in reasonably accessible electronic form – sufficient to determine and implement the allocation of Settlement Funds as provided in this Section X of this Agreement.  The methodology provided for in paragraph 78 will be applied to the data as consistently, sensibly, and conscientiously as reasonably possible recognizing and taking into consideration the nature and completeness of the data and the purpose of the computation.

78.  The amount of the distribution from the Settlement Fund to which each identifiable Settlement Class Member, as described in paragraphs 79-87, is entitled shall be determined using the following methodology:

a.  All Accounts will be identified in which, on one or more calendar days, Union Bank assessed two or more Overdraft Fees on such day or days;

b.  For each calendar day on which Union Bank assessed two or more Overdraft Fees, all transactions posted in such Accounts on that day will be ordered in the following posting order:

i.  All credits (Union Bank's Posting Group "A");

ii.  All Union Bank initiated fees and transactions, including Transaction Code 925 transactions (Union Bank's Posting Group "B");

iii.  All Debit Card Transactions ordered from the lowest dollar amount to highest dollar amount of transaction;

iv.  All other debit transaction, including Check transactions, ACH transactions, and non-Debit Card-initiated cash withdrawals, ordered from the highest dollar

amount to lowest dollar amount of transaction (Union Bank's Posting Group "C," exclusive of Debit Card Transactions);

      c.     After ordering the transactions as set forth in subparagraph (b) above, each Account – on a daily basis – will be identified in which the number of Overdraft Fees Union Bank actually assessed exceeds the number of Overdraft Fees that would have been assessed if the Account had been ordered as set forth in subparagraph (b) ("Additional Overdrafts");

      d.     The dollar amount of the Additional Overdrafts will be calculated ("Additional Overdrafts Amount");

      e.     For each Account in which one or more Additional Overdrafts have been identified, it will be determined how many (if any) Overdraft Fees Union Bank refunded during the thirty-day period following each calendar day on which any Additional Overdraft occurred ("Refunded Additional Overdrafts");

      f.     The dollar amount of the Refunded Additional Overdrafts will be calculated ("Refunded Additional Overdrafts Amount");

      g.     All Accounts will be identified in which on any calendar day the Additional Overdrafts Amount exceeds the Refunded Additional Overdrafts Amount. The Refunded Additional Overdrafts Amount will be subtracted from the Additional Overdrafts Amount to determine the "Differential Overdraft Fee";

      h.     All Accounts that experienced a Differential Overdraft Fee will be checked against a list of Accounts that Union Bank closed with negative balances after writing them off as uncollectable ("Uncollectable Accounts").

      i.     For any Uncollectable Account that experienced a Differential Overdraft Fee, the Differential Overdraft Fee will be reduced dollar-for-dollar by the dollar amount of the

negative closing Account balance. When the dollar amount of the negative closing Account balance equals or exceeds the Differential Overdraft Fee for the Account, the Differential Overdraft Fee shall be reduced to zero for purposes of calculating that Account holder's distribution, and the Account holder will not receive a distribution from the Settlement Fund for such Account;

       j.     The foregoing allocation formula will yield the identification of all Account holders whose Accounts experienced a Differential Overdraft Fee greater than zero dollars ("Positive Differential Overdraft Fee") as well as the amounts of their respective Positive Differential Overdraft Fees.

       k.     The parties agree the foregoing allocation formula is exclusively for purposes of computing retrospectively, in a reasonable and efficient fashion, the amount of Positive Differential Overdraft Fees each Settlement Class Member incurred as a result of Debit Re-sequencing and, subject to paragraphs 79-87 below, the amount of any distribution each Settlement Class Member should receive from the Settlement Fund. The fact that this allocation formula is used herein is not intended and shall not be used for any other purpose or objective whatsoever.

## XI.    Distribution of Settlement Fund to Settlement Class Members

79.    Within 30 days of the Effective Date, Union Bank and the Settlement Administrator shall distribute the Net Settlement Fund to the Settlement Class Members who do not opt out as provided herein. Each Settlement Class Member who had a Positive Differential Overdraft Fee shall receive a distribution in the amount of a pro rata share of the Net Settlement Fund.

80.    Settlement Class Counsel shall divide the total amount of the Net Settlement Fund by the total amount of all Settlement Class Members' Positive Differential Overdraft Fees as

computed pursuant to paragraph 82, which yields the "Pro Rata Percentage." The Net Settlement Fund is equal to the Settlement Fund plus any accrued interest and less: (a) the amount of the Court-awarded attorneys' fees, costs and expenses to Class Counsel; and (b) the amount of the Court-awarded Service Awards to the Plaintiffs.

81.     Settlement Class Counsel shall adjust the amount of each Settlement Class Member's total Positive Differential Overdraft Fees by multiplying it by the Pro Rata Percentage, which yields each Settlement Class Member's "Differential Overdraft Payment Amount."

82.     Every Settlement Class Member shall be paid from the Net Settlement Fund the total Differential Overdraft Payment Amount to which he or she is entitled as calculated above ("Settlement Class Member Payments").

83.     Union Bank shall make Settlement Class Member Payments to Current Account Holders either by a credit to those Settlement Class Members' Accounts or by mailed check, in those circumstances where it is not feasible or reasonable to make the payment by a credit to the Settlement Class Members' Account. For those Settlement Class Members who receive their Settlement Class Member Payments by credits to their Accounts, Union Bank shall notify the Current Account Holders of the credit, and provide a brief explanation that the credit has been made as a payment in connection with the Current Account Holder's membership in the Settlement Class. Union Bank shall provide the notice of account credit described in this paragraph in or with the account statement on which the credit is reflected. Union Bank will bear any costs associated with implementing the account credits and notification discussed in this paragraph. Settlement Class Member Payments made to Current Account Holders by check will be cut and mailed by the Settlement Administrator with an appropriate legend, in a form

approved by Settlement Class Counsel and Union Bank's counsel, to indicate that it is from the Settlement, and will be sent to the addresses that the Settlement Administrator identifies as valid Settlement Class Member addresses. Checks shall be valid for 180 days. The Settlement Administrator will make reasonable efforts to locate the proper address for any Settlement Class Member whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address.

84. Union Bank shall pay all costs associated with the process of printing and mailing the checks and any accompanying communication to Current Account Holders within thirty days of Settlement Class Counsel's and Union Bank's counsel's approving the invoice for payment. Union Bank may be reimbursed for these payments as provided in subparagraph 53(f) and paragraph 88.

85. Settlement Class Member Payments to Past Account Holders will be made by check with an appropriate legend, in a form approved by Settlement Class Counsel and Union Bank's counsel, to indicate that it is from the Settlement. Checks will be cut and mailed by the Settlement Administrator, and will be sent to the addresses that the Settlement Administrator identifies as valid Settlement Class Member addresses. Checks shall be valid for 180 days. The Settlement Administrator will make reasonable efforts to locate the proper address for any Settlement Class Member whose check is returned by the Postal Service as undeliverable, and will re-mail it once to the updated address.

86. Union Bank shall pay all costs associated with the process of printing and mailing the checks and any accompanying communication to Past Account Holders within thirty days of Settlement Class Counsel's and Union Bank's counsel's approving the invoice for payment.

Union Bank may be reimbursed for these payments as provided in subparagraph 53(f) and paragraph 88.

87.     The amount of the Net Settlement Fund attributable to uncashed checks and checks returned to the Settlement Administrator shall remain in the Net Settlement Fund for one year from the date that the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator shall make a reasonable effort to locate Settlement Class Members whose checks were returned to effectuate delivery of such checks to the Settlement Class Members entitled to them.  The Settlement Administrator shall make only one attempt to re-mail or re-issue a distribution check.

XII.    **Disposition of Residual Funds After Distribution to the Settlement Class Of Settlement Class Member Payments.**

88.     Within one year plus thirty days after the date the Settlement Administrator mails the first Settlement Class Member Payment, any funds remaining in the Net Settlement Fund shall be distributed as follows:

a.     The remaining funds shall be paid to Union Bank up to the amount of, and as reimbursement for, settlement notice and administration costs and fees Union Bank paid to unaffiliated third parties pursuant to paragraphs 53, 60, 73, 84, and/or 86.

b.     After any distribution pursuant to subparagraph (a), at the election and complete discretion of Settlement Class Counsel and counsel for Union Bank, the funds may be distributed to Settlement Class Members who received Settlement Class Member Payments on a pro rata basis, to the extent feasible and practical in light of the costs of administering such subsequent payments (all such costs to prepare and transmit such additional payments to be paid by the Settlement Fund).

c.       After any distribution pursuant to subparagraph (a), at the election of
Settlement Class Counsel and counsel for Union Bank, the funds may be distributed through a
residual *cy pres* program.  The residual *cy pres* recipient(s) shall be agreed upon by Union Bank
and Settlement Class Counsel, and approved by the Court.  Any residual *cy pres* distribution
shall be paid as soon as reasonably possible following the completion of distribution of funds to
the Settlement Class Members.

d.       If the Settlement Class Counsel and counsel for Union Bank are unable to
agree on a distribution plan (whether (b) or (c)), or on the recipient(s), they shall bring the
matter, together with supporting materials and argument, to the Court for determination.

e.       The Net Settlement Fund shall pay all costs associated with any
disposition under subparagraphs (b) or (c).

f.       In the event no money remains in the Net Settlement Fund, the Parties
shall have no obligation whatsoever to make any distribution as contemplated by subparagraphs
(a), (b) or (c) above of this paragraph.

## XIII.   **Effect of a Termination**

89.      The grounds upon which this Agreement may be terminated are set forth in
paragraphs 103 and 104.  In the event of a termination as provided therein, this Agreement shall
be considered null and void; all of Union Bank's obligations under the Settlement shall cease to
be of any force and effect; the amounts in the Settlement Fund shall be returned to Union Bank
in accordance with paragraph 90; and the Parties shall return to the status quo ante in the Action
as if the Parties had not entered into this Agreement.  In addition, in the event of such a
termination, all of the Parties' respective pre-Settlement claims and defenses will be preserved.

90.      In the event of a termination as provided in paragraphs 103 and/or 104, the
Escrow Agent shall return the Settlement Fund to Union Bank within seven days of termination,

less any money that the Settlement Fund has already paid, or incurred an obligation to pay, for Settlement-related costs and expenses.

91.     This Settlement shall become effective on the Effective Date unless earlier terminated in accordance with the provisions of paragraphs 103 and/or 104.

92.     In the event the Settlement is terminated in accordance with the provisions of paragraphs 103 and/or 104, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

## XIV.  **Releases**

93.     As of the Effective Date, Plaintiffs and each Settlement Class Member, each on behalf of himself or herself and on behalf of his or her respective heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Union Bank and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors, successors and assigns, and the present and former directors, officers, employees, agents, insurers, shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters during the Class Period that were or could have been alleged in the Action, including, without limitation, any claims, actions, causes of action, demands, damages, losses, or remedies relating to, based upon, resulting from, or arising out of

(a) the assessment of one or multiple Overdraft Fees on a Union Bank Account or the amount of one or more Overdraft Fees assessed on an Account, or (b) Debit Re-sequencing or posting order. The foregoing release includes, by way of example but not limitation, any and all of the following to the extent they involve, result in, or seek recovery or relief for Overdraft Fees or Debit Re-sequencing or posting order: (1) the authorization, approval or handling of any Debit Card Transaction, (2) any failure to notify or to obtain advance approval when a Debit Card Transaction would or might cause a Union Bank Account to become overdrawn or further overdrawn or an Overdraft Fee to be assessed, (3) any failure to allow the holder of any Union Bank Account to opt-out of overdrafts, or to publicize or disclose the ability of the holder of any Union Bank Account to opt-out of overdrafts, (4) any failure to adequately or clearly disclose, in one or more agreements, posting order, Debit Re-sequencing, overdrafts, Overdraft Fees, or the manner in which Debit Card Transactions are or would be approved, processed, or posted to Union Bank Accounts; (5) any conduct or statements encouraging the use of Union Bank Debit Cards, (6) the assessment of any continuing overdraft fee, and (7) any advertisements relating to any of the foregoing.

94. As of the Effective Date, Plaintiffs and each Settlement Class Member shall further automatically be deemed to have waived and released any and all provisions, rights, and benefits conferred by § 1542 of the California Civil Code or similar laws of any other state or jurisdiction. Section 1542 of the California Civil Code reads: "§1542. Certain claims not affected by general release. A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his or her settlement with the debtor."

95.     Plaintiffs or any Settlement Class Member may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of Paragraphs 93 and 94, or the law applicable to such claims may change.  Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this paragraph and Paragraphs 93 and 94.  Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Agreement, including by the releases contained in this paragraph and in Paragraphs 93 and 94, and that all of their claims in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he/she never receives actual notice of the Settlement or never receives a distribution of funds or credits from the Settlement.

96.     Nothing in this Agreement shall operate or be construed to release any claims or rights Union Bank has to recover any past, present or future amounts that may be owed by Plaintiffs or by any Settlement Class Member on his/her accounts, loans or any other debts with Union Bank, pursuant to the terms and conditions of such accounts, loans, or any other debts.

## XV.     Payment of Attorneys' Fees, Costs, and Incentive Awards

### A.     Class Counsel Fees and Costs

97.     Union Bank agrees not to oppose Class Counsel's request for attorneys' fees of up to 30% of the value of the Settlement.  Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund, and is subject to Court approval.  Notwithstanding anything herein, the Court's failure to approve, in whole or in part,

any award of attorneys' fees, costs, and expenses to Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination. In the event the Court declines to approve, in whole or in part, the payment of attorneys' fees, costs, and expenses to Class Counsel in the amounts sought by Class Counsel, or at all, the remaining provisions of this Settlement Agreement shall remain in full force and effect.

98. The Parties negotiated and reached this agreement regarding the terms of paragraph 97 only after reaching agreement on all other material terms of this Settlement.

**B.** **Payment of Attorneys' Fees and Costs**

99. Within three days of the Effective Date, the Escrow Agent shall pay from the Settlement Fund to Settlement Class Counsel all Court-approved attorneys' fees, costs, and expenses of Class Counsel, including interest accrued thereon, provided, however, that the Escrow Agent shall not pay any such fees, costs or expenses from the Settlement Fund to Settlement Class Counsel until such time as Settlement Class Counsel have jointly agreed upon a plan of allocation of fees, costs and expenses among all Class Counsel. In the event that the award of attorneys' fees, costs, and expenses of Class Counsel is reduced on appeal, the Escrow Agent shall only pay to Settlement Class Counsel from the Settlement Fund the reduced amount of such award, including interest accrued thereon. Settlement Class Counsel shall furnish to the Escrow Agent any required tax information or forms before the payment is made.

100. The payment of attorneys' fees, costs and expenses of Class Counsel pursuant to Paragraph 99 shall be made through a deposit by the Escrow Agent into an Attorney Client Trust Account jointly controlled by Settlement Class Counsel. After the fees, costs and expenses have been deposited into this account, Settlement Class Counsel shall be solely responsible for distributing each Class Counsel firm's allocated share of such fees, costs and expenses to that firm.

## C. Class Representative Service Awards

101. Class Counsel will ask the Court to approve service awards of $10,000 per Plaintiff, or $5,000 per Plaintiff for married couples in which both spouses are Plaintiffs ("Service Awards"). Any Service Awards are to be paid from the Settlement Fund. Any Service Awards shall be paid to Plaintiffs in addition to Plaintiffs' Settlement Class Member Payments. Union Bank shall not oppose Class Counsel's request for payment of any Service Awards. Notwithstanding anything herein, the Court's failure to approve, in whole or in part, the Service Awards sought by Class Counsel shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination. In the event the Court declines to approve, in whole or in part, any Service Awards in the amounts set forth above, or at all, the remaining provisions of this Settlement Agreement shall remain in full force and effect.

102. The Parties negotiated and reached this agreement regarding any Service Awards only after reaching agreement on all other material terms of this Settlement.

## XVI. Termination of Settlement

103. This Settlement may be terminated by either Union Bank or Settlement Class Counsel by serving on counsel for the opposing Party and filing with the Court a written notice of termination within fourteen days after any of the following occurrences:

    a. the District Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

    b. an appellate court reverses the Final Approval Order, and the Settlement is not reinstated without change (unless such change is agreed to by the Parties) by the District Court on remand;

    c. any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement in

a way that Union Bank or Settlement Class Counsel seeking to terminate the Settlement reasonably considers material;

> d.    the Effective Date does not occur; or

> e.    any other ground for termination provided for elsewhere in this

Agreement.

104.    Union Bank also shall have the right to terminate the Settlement by serving on Settlement Class Counsel and filing with the Court a notice of termination within fourteen days of its receipt from the Settlement Administrator of the final report specified in paragraph 61(g) above, if the number of Settlement Class Members who timely request exclusion from the Settlement Class equals or exceeds the number or percentage specified in the separate letter agreement executed concurrently with this Settlement by Union Bank's counsel and Settlement Class Counsel. The percentage shall be confidential except to the Court, who shall upon request be provided with a copy of the letter agreement for *in camera* review.

105.    In the event of a termination of the Settlement, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Escrow Account, the balance of the Settlement Fund shall be refunded and remitted to Union Bank as provided in paragraph 90. Union Bank shall have no right to seek reimbursement from Plaintiffs or Class Counsel for any funds disbursed from the Escrow Account pursuant to paragraph 50 above.

106.    In the event of a termination of the Settlement pursuant to this Section XVI, the parties retain all of their pre-Settlement litigation rights and defenses, as provided in paragraphs 89 and 92.

## XVII. <u>No Admission of Liability</u>

107. Union Bank disputes the claims alleged in the Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind. Union Bank has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

108. Class Counsel and Plaintiffs believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel have fully investigated the facts and law relevant to the merits of the claims, have conducted extensive formal and informal discovery, and have conducted independent investigation of the challenged practices. Class Counsel and Plaintiffs have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

109. The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever.

110. Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class

Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency or other tribunal.

111.    In addition to any other defenses Union Bank may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement or the Releases contained herein.

## XVIII.  **Miscellaneous Provisions**

112.    References to Union Bank in Third-Party Materials.  In the course of pursuing claims against defendant banks other than Union Bank in MDL-2036, Class Counsel are serving subpoenas and seeking discovery from third-party consultants to the banking industry.  Union Bank has requested and Plaintiffs agree to provide Union Bank promptly with copies of all materials received by Class Counsel through such subpoenas and discovery that Class Counsel reasonably determine refer or pertain to Union Bank.

113.    Gender and Plurals.  As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

114.    Binding Effect.  This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

115.    Cooperation of Parties.  The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this

Agreement. This obligation of the Parties to support and complete the Settlement shall remain in full force and effect regardless of events that may occur, or court decisions that may be issued, in MDL 2036 or in any other case in any court.

116. <u>Obligation To Meet And Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

117. <u>Integration</u>. This Agreement (along with the letter agreement referenced in paragraph 104 hereof) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

118. <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

119. <u>Governing Law</u>. The Agreement shall be construed in accordance with, and be governed by, the laws of the State of California, without regard to the principles thereof regarding choice of law.

120. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

121. <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any

suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice program and the Settlement Administrator. As part of its agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose.

122. <u>Notices</u>. All notices to Settlement Class Counsel provided for herein, shall be sent by email and facsimile with a hard copy sent by overnight mail to:

> Bruce S. Rogow, Esq.
> BRUCE S. ROGOW, P.A.
> 500 E Broward Boulevard # 1930
> Fort Lauderdale, FL 33394
> Telephone: 954-767-8909
> Facsimile: 954-764-1530
> Email: brogow@rogowlaw.com
>
> Aaron S. Podhurst, Esq.
> PODHURST ORSECK, P.A.
> 25 West Flagler Street, Suite 800
> Miami, FL 33130
> Telephone: 305-358-2800
> Facsimile: 305-358-2382
> Email: apodhurst@podhurst.com
>
> Robert C. Gilbert, Esq.
> GROSSMAN ROTH, P.A.
> 2525 Ponce de Leon Boulevard, 11th Floor
> Coral Gables, FL 33134
> Telephone: 305-442-8666
> Facsimile: 305-779-9596
> Email: rcg@grossmanroth.com
>
> Michael W. Sobol, Esq.

LIEFF CABRASER HEIMANN & BERSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: 415-956-1000
Facsimile: 415-956-1008
Email: msobol@lchb.com

All notices to Union Bank, provided for herein, shall be sent by email and facsimile with a hard
copy sent by overnight mail to:

John B. Sullivan
Mark D. Lonergan
SEVERSON & WERSON
One Embarcadero Center
Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

The notice recipients and addresses designated above may be changed by written notice. Upon
the request of any of the Parties, the Parties agree to promptly provide each other with copies of
objections, requests for exclusion, or other filings received as a result of the Notice program.

123. <u>Modification and Amendment</u>. This Agreement may be amended or modified
only by a written instrument signed by the Parties and their respective counsel and approved by
the Court.

124. <u>No Waiver</u>. The waiver by any party of any breach of this Agreement by another
Party shall not be deemed or construed as a waiver of any other breach, whether prior,
subsequent, or contemporaneous, of this Agreement.

125. <u>Authority</u>. The Plaintiffs and Union Bank represent and warrant that the persons
signing this Agreement on their behalf have full power and authority to bind every person,
partnership, corporation or entity included within the definitions of Plaintiffs and Union Bank to
all terms of this Agreement. Any person executing this Agreement in a representative capacity

represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

126. <u>Agreement Mutually Prepared</u>. Neither Union Bank nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

127. <u>Independent Investigation and Decision to Settle</u>. The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. Union Bank has provided and is providing information that Plaintiffs reasonably request to identify Settlement Class Members and the alleged damages they incurred. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

128. <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement and the Releases contained in Section XIV above, received independent legal advice with respect to the advisability of entering

into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

Dated: April ___, 2012

BRUCE S. ROGOW, P.A.

_____
Bruce S. Rogow
*Co-Lead Counsel for Plaintiffs and the Class*

PODHURST ORSECK, P.A

_____
Aaron S. Podhurst
*Co-Lead Counsel for Plaintiffs and the Class*

Dated: April 9, 2012

GROSSMAN ROTH, P.A.

_____
Robert C. Gilbert
*Coordinating Counsel for Plaintiffs and the Class*

Dated: April 6, 2012

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

_____
Michael W. Sobol
*Settlement Class Counsel*

43

Dated: April 6, 2012

UNION BANK, N.A.

Kim M. Kahmer

Executive Vice President

Dated: April __, 2012

SEVERSON & WERSON
A Professional Corporation

John B. Sullivan
Mark D. Lonergan

*Counsel for Union Bank, N.A.*

Dated:  April \_\_, 2012

UNION BANK, N.A.

_____

By: _____

Its:_____

Dated:  April *6*, 2012

SEVERSON & WERSON
A Professional Corporation

_____

John B. Sullivan
Mark D. Lonergan

*Counsel for Union Bank, N.A.*

Dated: April 10, 2012           PLAINTIFF

Print Name CHERYL BROWN

Dated: April \_\_, 2012                    PLAINTIFF

Print Name_____

45

Date: April 16, 2012

Plaintiff:

Josh Naehu-Reyes

JOSH NAEHU-REYES

**Print Name**

Dated: April 10, 2012                    PLAINTIFF

Print Name Cynthia Larsen

45

# EXHIBIT 1

# If You Paid Overdraft Fees to Union Bank,
## You May Be Eligible for a Payment from a Class Action Settlement.

A $35 million Settlement has been reached in a class action lawsuit about the order in which Union Bank, N.A. ("Union Bank") posted debit card transactions to customer accounts. Union Bank maintains there was nothing wrong with the posting process used.

**Who's Included?** You are a member of the Settlement Class if you: (1) had a Union Bank consumer checking and/or savings account that you could access with a Union Bank debit card, at any time between July 16, 2005 and August 13, 2010, and (2) were charged one or more overdraft fees as a result of Union Bank's practice of posting debit card transactions from highest to lowest dollar amount. You are not eligible for a payment under the Settlement if your account was closed with a negative balance and the amount of the benefits that would otherwise be provided for in the Settlement would be insufficient to make the balance in that account positive.

**What Are the Settlement Terms?** Union Bank has agreed to establish a Settlement Fund of $35 million, from which identifiable Settlement Class Members will receive payments or account credits. The amount of such individual payments or account credits cannot be determined at this time. However, it will be based on the number of people in the Settlement Class and the amount of additional overdraft fees each Settlement Class Member paid as a result of Union Bank's posting order. Union Bank will separately pay for settlement administration and related costs; such amounts will not come out of the $35 million Settlement Fund.

**How to Receive a Payment?** If you are included in the Settlement Class and entitled to receive a cash benefit, you do not have to do anything to receive a payment or account credit. If the Court approves the Settlement and it becomes final and effective, you will *automatically* receive a payment or account credit.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class. To exclude yourself from the Settlement Class, you must send a letter that includes the following: your name, address, and telephone number; a statement that you want to be excluded from the Union Bank Settlement in *In Re: Checking Account Overdraft Litigation*, 1:09-MD-02036-JLK; and your signature. You must mail your exclusion request, postmarked no later than _____, **2012**, to: Checking Account Overdraft Litigation Exclusions; P.O. Box _____; [City, State, Zip ]. The deadline to exclude yourself is _____, **2012**. If you do not exclude yourself, you will release your overdraft-fee-related claims against Union Bank and will not be able to sue Union Bank for any claim relating to the lawsuit. If you stay in the Settlement Class, you may object to it by _____, **2012**. The Court will hold a hearing on _____, **2012** to consider whether to approve the Settlement and a request for attorneys' fees of up to 30 percent of the Settlement Fund. You may appear at the hearing, but you are not required to attend. You may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**For more information: www.unionbankoverdraftsettlement.com or 1-800-_____**
**Do not contact Union Bank or the Court for information.**

# EXHIBIT 2

# If You Paid Overdraft Fees to Union Bank,

## You May Be Eligible for a Payment from a Class Action Settlement.

A $35 million Settlement has been reached in a class action lawsuit about the order in which Union Bank, N.A. ("Union Bank") posted debit card transactions to customer accounts. Current and former Union Bank customers may be included.

## What's this about?

The lawsuit claims that Union Bank processed debit card transactions in order of highest to lowest dollar amount to maximize the number of overdraft fees assessed to its customers. Specifically, the lawsuit claims that, instead of declining certain transactions when an account had insufficient funds to cover a purchase, Union Bank authorized the transactions and then processed them in highest to lowest dollar amount order, which had the effect of increasing the number of overdraft fees the bank charged its customers. Union Bank maintains there was nothing wrong about the posting process used.

## Who's included?

You are included in the Settlement Class if you:

- Had a Union Bank consumer checking and/or savings account that you could access with a Union Bank debit card, at any time between July 16, 2005 and August 13, 2010; and

- Were charged one or more overdraft fees as a result of Union Bank's practice of posting debit card transactions from highest to lowest dollar amount.

You are not eligible for a payment under the Settlement if your account was closed with a negative balance and the amount of the benefits that would otherwise be provided for in the Settlement would be insufficient to make the balance in that account positive.

## What are the Settlement terms?

Union Bank has agreed to establish a Settlement Fund of $35 million from which identifiable Settlement Class Members will receive payments or account credits. The amount of such payments or account credits cannot be determined at this time. However, it will be based on the number of people in the Settlement Class and the amount of additional overdraft fees each Settlement Class Member paid as a result of Union Bank's posting order. Union Bank will separately pay for settlement administration and related costs; such amounts will not come out of the $35 million Settlement Fund.

## How to get a payment.

If you are included in the Settlement Class and entitled to receive a cash benefit, you do not have to do anything to get a payment or account credit. If the Court approves the Settlement and it becomes final and effective, you will automatically receive a payment or account credit.

## Your rights may be affected.

If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class. The deadline to exclude yourself is _____, **2012**. If you do not exclude yourself, you will release your overdraft-fee-related claims against Union Bank and will not be able to sue Union Bank for any claim relating to the lawsuit. If you stay in the Settlement Class, you may object to it by _____, **2012**. The Court will hold a hearing on _____, **2012** to consider whether to approve the Settlement and a request for attorneys' fees of up to 30 percent of the Settlement Fund. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

For more information: www.unionbankoverdraftsettlement.com or 1-800-_____

**Do not contact Union Bank or the Court for information.**

# EXHIBIT 3

# If You Paid Overdraft Fees to Union Bank,

## You May Be Eligible for a Payment from a Class Action Settlement.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- A $35 million Settlement has been reached in a class action lawsuit about the order in which Union Bank, N.A. ("Union Bank") posted debit card transactions to customer accounts, and the effect the posting order had on the number of overdraft fees the bank charged its account holders. Union Bank maintains that there was nothing wrong about the posting process used and that it has not violated any laws.

- Current and former holders of Union Bank consumer checking and/or savings accounts may be eligible for a payment or account credit from the Settlement Fund.

- Your legal rights are affected whether you act or don't act. Read this notice carefully.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **GET A PAYMENT OR ACCOUNT CREDIT** | You do not have to do anything to get a payment or account credit from the Settlement. If the Court approves the Settlement and it becomes final and effective, all identifiable Settlement Class Members who remain in the Settlement Class will automatically receive a payment or account credit. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT** | Get no benefit from the Settlement. This is the only option that allows you to retain your right to bring any other lawsuit against Union Bank about the claims in this case. |
| **OBJECT** | Write to the Court if you don't like the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. |
| **DO NOTHING** | You will receive any payment or account credit to which you are entitled, and will give up your legal rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether or not to approve the Settlement. Payments and account credits will be provided if the Court approves the Settlement and after any appeals are resolved. Please be patient.

**Questions? Call 1-800-_____ or visit www.unionbankoverdraftsettlement.com**

1

# WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION**     **Page 3**
1. Why is there a notice?
2. What is this lawsuit about?
3. What is an overdraft fee?
4. Why is this a class action?
5. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT**     **Page 4**
6. Who is included in the Settlement?

**THE SETTLEMENT'S BENEFITS**     **Page 4**
7. What does the Settlement provide?
8. How do I receive a payment or account credit?
9. What am I giving up to stay in the Settlement Class?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**     **Page 5**
10. How do I get out of the Settlement?
11. If I don't exclude myself, can I sue Union Bank for the same thing later?
12. If I exclude myself from the Settlement, can I still get a payment?

**THE LAWYERS REPRESENTING YOU**     **Page 5**
13. Do I have a lawyer in this case?
14. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT**     **Page 6**
15. How do I tell the Court that I don't like the Settlement?
16. What's the difference between objecting and excluding?

**THE COURT'S SETTLEMENT APPROVAL HEARING**     **Page 7**
17. When and where will the Court decide whether to approve the Settlement?
18. Do I have to come to the hearing?
19. May I speak at the hearing?

**IF YOU DO NOTHING**     **Page 8**
20. What happens if I do nothing at all?

**GETTING MORE INFORMATION**     **Page 8**
21. How do I get more information?

**Questions? Call 1-800-_____ or visit www.unionbankoverdraftsettlement.com**

# BASIC INFORMATION

## 1. Why is there a notice?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

Senior Judge James Lawrence King, of the U.S. District Court for the Southern District of Florida, is overseeing this case. The case is known as *In Re: Checking Account Overdraft Litigation*, 1:09-MD-02036-JLK. The people who sued are called the Plaintiffs. The Defendant is Union Bank, N.A.

## 2. What is this lawsuit about?

The lawsuit claims that Union Bank processed debit card transactions in order of highest to lowest dollar amount to maximize the number of overdraft fees assessed to its customers. Specifically, the lawsuit claims that, instead of declining certain transactions when an account had insufficient funds to cover a purchase, Union Bank authorized the transactions and then processed them in highest to lowest dollar amount order, which had the effect of increasing the number of overdraft fees the bank charged its customers. The complaints in this action are posted on this website, and contain all of the allegations and claims asserted against Union Bank. Union Bank maintains that there was nothing wrong about the posting process it used and that it has not violated any laws.

## 3. What is an overdraft fee?

An overdraft fee may be assessed when a customer's withdrawals from a bank account exceed the available balance.

## 4. Why is this a class action?

In a class action, one or more people, called class representatives (in this case, four Union Bank customers who were assessed overdraft fees), sue on behalf of people who have similar claims. All of the people who have claims similar to the class representatives are Class Members, except for those who exclude themselves from the class.

## 5. Why is there a Settlement?

The Court has not decided in favor of either Plaintiffs or Union Bank. Instead, both sides agreed to a Settlement. By agreeing to the Settlement, the parties avoid the costs and uncertainty of a trial, and Class Members receive the benefits described in this Notice. The Class Representatives and their attorneys think the Settlement is best for everyone who is affected.

**Questions? Call 1-800-_____ or visit www.unionbankoverdraftsettlement.com**

3

## WHO IS IN THE SETTLEMENT?

If you received notice of the Settlement from a postcard addressed to you, then you are a Settlement Class Member. But even if you did not receive a postcard with Settlement notice, you may still be a Settlement Class Member, as described below.

### 6. Who is included in the Settlement?

You are a member of the Settlement Class if you:

- Had a Union Bank consumer checking and/or savings account that you could access with a Union Bank debit card, anytime between July 16, 2005 and August 13, 2010; and

- Were charged one or more overdraft fees as a result of Union Bank's practice of posting debit card transactions from highest to lowest dollar amount.

You are not eligible for a payment under the Settlement if your account was closed with a negative balance and the amount of the benefits that would otherwise be provided for in the Settlement would be insufficient to make the balance in that account positive.

## THE SETTLEMENT'S BENEFITS

### 7. What does the Settlement provide?

Union Bank has agreed to establish a Settlement Fund of $35 million from which identifiable Settlement Class Members may receive payments or account credits. The amount of such payments or account credits cannot be determined at this time. However, it will be based on the number of people in the Settlement Class and the amount of additional overdraft fees each Settlement Class Member paid as a result of Union Bank's posting order. Union Bank will separately pay for settlement administration and related costs; such amounts will not come out of the $35 million Settlement Fund.

### 8. How do I receive a payment or account credit?

If you are included in the Settlement Class and entitled to receive a payment or cash benefit, you do not need to do anything to receive a payment or account credit. If the Court approves the Settlement and it becomes final and effective, you will automatically receive a payment or account credit.

### 9. What am I giving up to stay in the Settlement Class?

Unless you exclude yourself from the Settlement, you can't sue, continue to sue, or be part of any other lawsuit against Union Bank about the legal issues in this case. It also means that all of the decisions by the Court will bind you. The "Release of Claims" included in the Settlement Agreement describes the precise legal claims that you give up if you remain in the Settlement. The Settlement Agreement is available at www.unionbankoverdraftsettlement.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you don't want benefits from the Settlement, and you want to keep the right to sue or continue to sue Union Bank on your own about the legal issues in this case, then you must take steps to get out of the Settlement. This is called excluding yourself – or it is sometimes referred to as "opting out" of the Settlement Class.

### 10.  How do I get out of the Settlement?

To exclude yourself from the Settlement, you must send a letter that includes the following:
- Your name, address, and telephone number;
- A statement that you want to be excluded from the Union Bank Settlement in *In Re: Checking Account Overdraft Litigation*, 1:09-MD-02036-JLK; and
- Your signature.

You must mail your exclusion request, postmarked no later than _____, **2012**, to:

Checking Account Overdraft Litigation Exclusions
P.O. Box _____
[ City, State, Zip ]

### 11.  If I don't exclude myself, can I sue Union Bank for the same thing later?

No.  Unless you exclude yourself, you give up the right to sue Union Bank for the claims that the Settlement resolves. You must exclude yourself from this Settlement Class in order to try to pursue your own lawsuit.

### 12.  If I exclude myself from the Settlement, can I still get a payment?

No.  You will not get a payment or account credit if you exclude yourself from the Settlement.


## THE LAWYERS REPRESENTING YOU

### 13.  Do I have a lawyer in this case?

The Court has appointed lawyers to represent you and other Class Members as "Class Counsel," including:

| | |
|---|---|
| Michael Sobol | Robert C. Gilbert |
| Lieff Cabraser Heimann & Bernstein, LLP | Grossman Roth, P.A. |
| Embarcadero Center West | 2525 Ponce de Leon Boulevard |
| 275 Battery Street, 29th Floor | Suite 1150 |
| San Francisco, CA 94111-3339 | Miami, FL 33134 |

Class Counsel will represent you and other Class Members.  You will not be charged for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.

## 14. How will the lawyers be paid?

Class Counsel intends to request up to 30 percent of the money in the Settlement Fund for attorneys' fees, plus reimbursement of their expenses incurred in connection with prosecuting this case. The fees and expenses awarded by the Court will be paid out of the Settlement Fund.  The Court will determine the amount of fees and expenses to award.  Class Counsel will also request that up to $10,000 per Plaintiff be paid from the Settlement Fund to the four Class Representatives for their service as representatives of the entire Class.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

## 15. How do I tell the Court that I don't like the Settlement?

If you are a member of the Settlement Class, you can object to any part of the Settlement, the Settlement as a whole, and/or Class Counsel's requests for fees and expenses.  To object, you must submit a letter that includes the following:

- The name of this case, which is *In Re: Checking Account Overdraft Litigation*, 1:09-MD-02036-JLK;
- Your full name, address and telephone number;
- An explanation of the basis upon which you claim to be a Settlement Class Member;
- All grounds for the objection, accompanied by any legal support for the objection known to you or your counsel;
- The identity of all counsel who represent you, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;
- The number of times in which your counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that you file the objection;
- Any and all agreements that relate to the objection or the process of objecting – whether written or verbal – between you or your counsel and any other person or entity;
- The identity of all counsel representing you who will appear at the Final Approval Hearing;
- A list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;
- A statement confirming whether you intend to personally appear and/or testify at the Final Approval Hearing; and
- Your signature (an attorney's signature is not sufficient).

A complete list of the requirements to object to the Settlement are set forth in the Settlement Agreement at paragraph 65.

**Questions? Call 1-800-_____ or visit www.unionbankoverdraftsettlement.com**

6

You must submit your objection to the following addresses, so that it is **_received_** by all the people listed below no later than _____, **2012**:

| Clerk of the Court U.S. District Court for the Southern District of Florida James Lawrence King Federal Justice Building 99 Northeast Fourth Street Miami, FL 33132 | Checking Account Overdraft Litigation P.O. Box ____ [City, State, Zip] | Michael Sobol Lieff Cabraser Heimann & Bernstein, LLP Embarcadero Center West 275 Battery Street, 29th Floor San Francisco, CA 94111 | Robert C. Gilbert Grossman Roth, P.A. 2525 Ponce de Leon Boulevard Suite 1150 Miami, FL 33134 | Mark D. Lonergan, Severson & Werson, P.C. One Embarcadero Center Suite 2600 San Francisco, CA 94111 |
|---|---|---|---|---|

| **16.** | **What's the difference between objecting and excluding?** |
|---|---|

Objecting is telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object to the Settlement because it no longer affects you.

## THE COURT'S SETTLEMENT APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement and the request for attorneys' fees. You may attend and you may ask to speak, but you don't have to do so.

| **17. When and where will the Court decide whether to approve the Settlement?** |
|---|

The Court will hold a Final Approval Hearing at 9:30 a.m. on _____, **2012**, at the United States District Court for Southern District of Florida, Miami Division, located at James Lawrence King Federal Justice Building, 99 Northeast Fourth Street, Miami, FL 33132. The hearing may be moved to a different date or time without additional notice, so it is a good idea to check www.unionbankoverdraftsettlement.com for updates on the Final Approval Hearing. At this hearing the Court will consider whether the Settlement is fair, reasonable and adequate. The Court will also consider any request by Class Counsel for attorneys' fees and expenses. If there are objections, the Court will consider them at this time. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

| **18. Do I have to come to the hearing?** |
|---|

No. Class Counsel will answer any questions the Court may have. But, you may come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you submitted your written objection on time, to the proper address, and it complies with the other requirements set forth in paragraph 64 of the Settlement Agreement, the Court will consider it. You may also pay your own lawyer to attend, but it's not necessary.

**19. May I speak at the hearing?**

You may ask the Court for permission to speak at the Settlement Approval Hearing. To do so, you must send a letter saying that you intend to appear and wish to be heard. Your Notice of Intention to Appear must include the following:

- Your name, address and telephone number;
- A statement that this is your "Notice of Intention to Appear" at the Settlement Approval Hearing for the Union Bank Settlement in *In Re: Checking Account Overdraft Litigation*, 1:09-MD-02036-JLK;
- The reasons you want to be heard;
- Copies of any papers, exhibits, or other evidence or information that is to be presented to the Court at the Settlement Approval Hearing; and,
- Your signature.

You must submit your Notice of Intention to Appear, so that it is ***received*** no later than _____, **2012**, to all of the addresses in Question 15.

## IF YOU DO NOTHING

**20. What happens if I do nothing at all?**

If you do nothing, you will still receive the benefits to which you are entitled. Unless you exclude yourself, you won't be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Union Bank relating to the issues in this case, ever again.

## GETTING MORE INFORMATION

**21. How do I get more information?**

The notice summarizes the proposed Settlement. More details can be found in the Settlement Agreement. You can obtain a copy of the Settlement Agreement at www.unionbankoverdraftsettlement.com. You may also write with questions to Checking Account Overdraft Litigation, P.O. Box _____, [City, State, Zip] , or call the toll-free number, 1-800-_____. Do not contact Union Bank or the Court for information.

**Questions? Call 1-800-_____ or visit www.unionbankoverdraftsettlement.com**

8