UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Simmons, et al. v. Comerica Bank,*
N.D. Tex. Case No. 3:10-cv-326-0
S.D. Fla. Case No. 1:10-cv-22958

## ORDER AND OPINION GRANTING CLASS CERTIFICATION

**THIS CAUSE** is before the Court on Plaintiffs Delphia Simmons and Patricia Mattlage's

("Plaintiffs") Motion For Class Certification (DE #2384) (the "Motion"), filed January 6, 2012.

The Court has carefully considered the Motion, Comerica's Opposition (DE #2490), and

Plaintiffs' Reply (DE #2583), as well as the parties' voluminous evidentiary submissions and the

oral argument of counsel. As announced at the hearing on this matter on July 18, 2012, and for

the reasons set forth below, the Court grants the Motion.

## I.  FACTUAL ALLEGATIONS[1]

Defendant Comerica Bank ("Comerica") is a financial services company headquartered

in Dallas, Texas that provides checking and debit card services to individual customers through

approximately 550,000 consumer accounts in the United States and maintains approximately 443

banking centers in several states. (*See* Amended Compl. ¶¶ 15–18, DE #990.) Plaintiffs are

---

[1] Without making conclusive findings of fact at this preliminary stage, the record appears
to indicate the following factual allegations are material to the Court's certification analysis.

current and former Comerica customers who allege that Comerica employed specially designed software programs in a systematic scheme to extract the greatest possible number of overdraft fees from Plaintiffs and similarly situated Comerica customers across the country. (*Id.* ¶ 34.) Comerica allegedly collected millions of dollars in excessive overdraft fees as a result of this systematic scheme, much of it, according to Plaintiffs, from Comerica's most vulnerable customers. (*Id.* ¶ 87.)

To carry out this scheme, Plaintiffs allege that Comerica manipulated debit card transactions by, among other things, employing a bookkeeping device to re-sequence the transactions from highest-to-lowest dollar amount at the time of posting. (*Id.* ¶ 24.) Plaintiffs allege that these account manipulations, which Comerica deponents testified were applied in the same manner to all class members as a result of Comerica's standardized computer software, caused funds in customer accounts to be depleted more rapidly, resulting in more overdrafts and, consequently, more overdraft fees. (*See* Motion, at 10–12 (citing Deposition of Matthew Wind, Ex. 1 of Appendix III to the Motion).) Plaintiffs further allege that, in many instances, overdraft fees were levied at times when, but for Comerica's manipulation, there would have been sufficient funds in the consumers' accounts. (Motion, at 14–25.) Plaintiffs allege that Comerica did not fairly disclose its manipulations, took active steps to keep them secret, and engaged in these manipulations despite recognizing that it harmed its own customers. (*Id.* at 25–32.) Comerica disputes that it manipulated account transactions in a manner inconsistent with its deposit agreements and that it committed any violations of law. (Opposition, at 1–8.)

## II.   CLASS CERTIFICATION STANDARDS

Questions concerning class certification are left to the sound discretion of the district court, and the Court must undertake a rigorous analysis to insure that the Rule 23 prerequisites are met. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004). In making the decision, the

Court does not determine whether plaintiffs will ultimately prevail on the merits, but it may consider the factual record in deciding whether the requirements of Rule 23 are satisfied. *Valley Drug. Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 n. 15 (11th Cir. 2003).

Courts "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings v. Mowbray*, 208 F.3d288, 298 (1st Cir. 2000). In other words, the Court undertakes "an analysis of the issues and the nature of required proof at trial to determine whether the matters in dispute and the nature of plaintiffs' proofs are principally individual in nature or are susceptible of common proof equally applicable to all class members." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 334 (E.D. Mich. 2001) (quoting *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 241 (E.D. Mich. 1997)).

Rule 23(a) states that a class may be certified "only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). If the court finds that the class criteria of Rule 23(a) are satisfied, it then must also find that the class fits within one of the three categories of class actions defined in Rule 23(b).

## III.   <u>DISCUSSION</u>

### A. The Class Definition

Before considering the requirements of Rule 23, the Court must determine whether a class exists that can adequately be defined. *Singer v. AT & T Corp.*, 185 F.R.D. 681, 685 (S.D. Fla. 1998) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). "While the definition of the class must not be vague or difficult to apply, the implicit definition requirement

3

does not require an overly strict degree of certainty and is to be liberally applied." *Id.* Plaintiffs'

proposed class consists of:

> All Comerica Bank customers in the United States who had or have one or more
> customer accounts and who, from the applicable statutes of limitation through
> August 15, 2010, (the "Class Period"), incurred one or more overdraft fees as a
> result of Comerica's practice of sequencing debit card transactions from highest
> to lowest.[2]

(Motion, at 1.) Plaintiffs also seek the certification of subclasses for specific claims as set forth in

Plaintiffs' Proposed Trial Plan for Trial of Class Claims (the "Trial Plan") (DE #2387).  These

subclasses are discussed below.

Comerica argues that the proposed class definition does not satisfy the requirements of

Rule 23 because it lacks objective criteria to determine class membership, requires a merits

determination, and is defined by reference to the applicable statutes of limitation.[3] (Opposition,

at 29–34.) The crux of Comerica's argument is that Plaintiffs have not identified a baseline

posting order for comparison purposes such that the class is not ascertainable. (*Id.* at 30–33.) The

Court finds this argument unpersuasive.

The evidence demonstrates that class members can be identified from Comerica's own

records. Plaintiffs propose to have their expert, Mr. Arthur Olsen, mine Comerica's data to

determine who the members of the class are. (*See* Declaration of Arthur Olsen ("Olsen Decl."),

¶¶ 37–52, Appendix IV to Motion.) More specifically, Mr. Olsen will compare high-to-low

---

[2] Excluded from the Class are Comerica; its parents, subsidiaries, affiliates, officers and directors; any entity in which Comerica has a controlling interest; all customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

[3] Courts commonly certify classes with start dates that are linked to the statute of limitations where, as here, the challenged conduct predates the relevant limitations periods. *See, e.g., Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689 (S.D. Fla. 2010) (certifying class defined as "[a]ll Florida consumers who purchased Enfamil® LIPIL® within the applicable statute of limitations."); *North Jackson Pharm., Inc. v. Express Scripts, Inc.*, Nos. CV–03–2696–VEH, CV–03–2697–VEH, 2006 WL 6625864, *6 (N.D. Ala. Mar. 3, 2006) (class certified

4

sequencing (which yields the greatest number of overdraft fees) to low-to-high sequencing (which yields the lowest number of overdraft fees), which will define the outer parameters of the membership of the proposed class.[4]

The composition of the class, and those persons bound by the judgment, will not vary if the finder of fact ultimately determines that a less consumer-friendly posting order, such as chronological, is appropriate or, even if, the finder of fact determines that a high-to-low posting order is consistent with Comerica's contractual and other obligations.[5] Indeed, this subsequent determination of an alternate posting order will, if anything, vary only the amount of damages.[6] Plaintiffs have thus adequately shown that for each permutation, the resulting damages can be calculated by Mr. Olsen. This method of determining class membership has been accepted by this and other courts and on a number of occasions. *See also In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 666, 672 (S.D. Fla. 2011) ("*Larsen*") (DE #1763), *pet. for leave to appeal denied*, No. 11-90012 (11th Cir. Oct. 7, 2011).[7] Thus, because class membership is defined by

---

where class period beginning date was based on when limitation period began to run).

[4] The Court finds that the expert testimony and evidence offered by Comerica is insufficient to rebut Mr. Olsen's findings and conclusions at this stage. Plaintiffs have put forth sufficient evidence to demonstrate Mr. Olsen's ability to calculate damages on an account-by-account basis using the bank's own computerized records, a method upon which Mr. Olsen previously relied, with court approval, in *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2008 WL 4279550, *17 (N.D. Cal. Sept. 11, 2008), and which this Court also approved in *Larsen*, as well as in this case. (*See, e.g.*, Order Denying Comerica Bank's Motion to Exclude the Testimony of Plaintiffs' Expert Arthur Olsen (DE #2801).)

[5] *See* 7A Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 1760 (3d ed. 2005) ("If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist.").

[6] *Klay*, 382 F.3d at 1259–60 (footnotes omitted) ("[W]here damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification.").

[7] *See also, e.g., Sadler v. Midland Credit Mgmt.*, No. 06 C 5045, 2009 WL 901479, *2 (N.D. Ill. Mar. 31, 2009) (finding automated query of defendants' database would yield "objective criteria" necessary to ascertain the class); *Stern v. AT & T Mobility Corp.*, No. CV 05-8842 CAS, 2008 WL 4382796, *5 (C.D. Cal. Aug. 22, 2008) (holding defendants' business

objective criteria, the Court finds that the defined class is readily ascertainable.

### B. Rule 23(a)

##### 1. Numerosity

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." FED.R.CIV.P. 23(a)(1). "[A] numerical yardstick is not the determinant for class certification; rather a court should examine the numbers involved to see if joinder of all is impossible or impracticable." *Hastings-Murtagh v. Texas Air Corp.*, 119 F.R.D. 450, 459 (S.D. Fla. 1988). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.*, 197 F.R.D. 697, 699 (M.D. Fla. 2000). The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir.1986)).

This case easily satisfies the numerosity requirement. Although the exact number of class members is not presently known, the proposed class appears to number in the tens- or hundreds-of-thousands. The evidence shows, for example, that Comerica has 550,000 consumer accounts and, in July 2010 alone, Comerica assessed over 129,000 individual overdraft fees. (*See* Motion, at 35.) Because of that great number, and the fact that the members of the class are geographically dispersed, there is no question that joinder is impractical. *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied by class of 31 members

---

records provided sufficient information to identify individuals who were enrolled in either one of the challenged services); *In re Diet Drugs Prods. Liab. Litig.*, No. CIV. A. 98–20626, 1999 WL 673066, *13–14 (E.D. Pa. Aug. 26, 1999) (class definition held adequate because there were reliable means to determine who had actually taken the drug); *Roper v. Consurve, Inc.*, 578 F. 2d 1106 (5th Cir. 1978) (certifying class where individual fact determinations could be reached by using objective criteria and assistance of computer)).

who were geographically dispersed across three states). Accordingly, the Court finds that the numerosity requirement of Rule 23 is satisfied.

  2. <u>Commonality</u>[8]

  Rule 23(a)'s commonality prerequisite requires at least one issue common to all members of the class. *See* FED. R. CIV. P. 23(a)(2). The "commonality" requirement of Rule 23(a)(2) "is a 'low hurdle' easily surmounted." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (citations omitted). *See also Cheney*, 213 F.R.D. at 490 (commonality threshold is "not high"). It only requires "at least one issue common to all class members." *Brown*, 212 F.R.D. at 604. "Plaintiffs' legal claims need not be completely identical and factual differences concerning treatment or damages will not defeat a finding of commonality." *Id.* at 604. The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 687 (S.D. Fla. 2004); *see also Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action").

  Relying on *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S.Ct. 2541 (2011), Comerica contends that Plaintiffs have not satisfied the commonality requirement. (Opposition, at 35–36.) In *Dukes*, the Supreme Court decertified a Rule 23(b)(2) class consisting of 1.5 million current and former employees of Wal-Mart. The Court held that the plaintiffs failed to satisfy the

---

[8] "The typicality and commonality requirements are distinct but interrelated, as the Supreme Court made clear: 'The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Cooper v. Southern Co.*, 390 F.3d695, 713 (11th Cir. 2004) (quoting *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982)), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006).

commonality requirement because they "provide[d] no convincing proof of a companywide discriminatory pay and promotion policy," *id.* at 2557, and without such proof, it would have been impossible to produce a common answer to the question of why each class member was disfavored, which was the "crux of the inquiry" for the plaintiffs' Title VII claims. *Id.* at 2552.

Unlike the plaintiffs in *Dukes*, Plaintiffs here have provided evidence of a common corporate policy or practice, namely, Comerica's systematic, computerized and uniform manipulation and re-ordering of debit card transactions, its development and implementation of overdraft limits, and its concealment of its overdraft practices, all to increase the number of overdraft fees imposed. Plaintiffs provided substantial evidence of Comerica's uniform overdraft scheme, (Motion, at 35–36, 40–59), thereby satisfying the commonality and typicality standards. *See Oakley v. Verizon Communications, Inc.*, No. 09-9175, 2012 WL 335657, *14 (S.D.N.Y. Feb. 1, 2012) ("Of course, when a group of plaintiffs suffer under a uniform policy, the commonality test is often satisfied, even after *Dukes*."); *cf. Dukes*, 131 S. Ct. at 2551.

In particular, the common issues of law and fact in this case include whether Comerica:

- Manipulated and re-ordered transactions in order to increase the number of overdraft fees imposed;

- Disclosed and/or refused to allow its class members to opt out of the overdraft protection program;

- Failed to alert class members that a debit card transaction would trigger an overdraft fee if processed and to provide them with an opportunity to cancel the transaction;

- Imposed overdraft fees when, but for re-sequencing, there would be sufficient funds in the account;

- Concealed from class members the limits of their overdraft credit line and the existence of such a limit;

- Delayed posting transactions so that class members were charged overdraft fees even when sufficient funds were in the account to cover the transactions; and

- Breached the terms of its contracts with Plaintiffs and the class; engaged in practices that were substantively and procedurally unconscionable; and/or was unjustly enriched at the expense of Plaintiffs and the class.

(Motion, at 36.)

Based on this and other evidence presented, the Court finds that Plaintiffs' claims arise out of the same course of conduct and are based on the same legal theories as those of the absent class members. Comerica's debit posting was done through a uniform, standardized, and automated process. All Plaintiffs and members of the proposed class, whose accounts were governed by common and materially uniform agreements, were subjected to Comerica's practice of re-sequencing debit card transactions from high-to-low, and Plaintiffs allege that they and all members of the proposed class were assessed additional overdraft fees as a result. Thus, when the finder of fact determines whether Comerica's uniform application of high-to-low reordering, as applied to all of customers in the same way, was unlawful, there will be a common answer that will resolve a central issue in the case, thus satisfying the commonality requirement.

      3.    <u>Typicality</u>

Plaintiffs have also satisfied the requirement of typicality. Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality test centers on "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Data Prods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality is satisfied where the named plaintiffs' claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984), *cert. denied*, 470 U.S. 1004 (1985). Plaintiffs and the class need not possess identical claims or defenses, nor need they have been "affected in exactly the same way

by defendant's conduct ...." in order to satisfy the typicality requirement. *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (M.D. Fla. 2003); *see also Pottinger v. Miami*, 720 F. Supp. 955, 959 (S.D. Fla. 1989).

Like commonality, the test for typicality is not demanding. *In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996). Typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. *Piazza v. EBSCO Indus. Co.*, 273 F.3d 1341, 1346 (11th Cir. 2001); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1269 (11th Cir. 2000). Both may be satisfied even if some factual differences exist between the claims of the named representatives and the claims of the class at large. *Kornberg*, 741 F.2d at 1337; *Prado-Steiman*, 221 F.3d at 1279 n.14. Thus, "[w]here an action challenges a policy or practice, the named plaintiffs suffering one specific injury from the practice can represent a class suffering other injuries, so long as all the injuries are shown to result from the practice." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994) (citation omitted).

To defeat typicality, the factual variation presented by a class representative's claim "must be clear and must be such that interests of the class are placed in significant jeopardy." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996). Here, Comerica attempts to defeat typicality by arguing that Plaintiffs' different expectations and preferences regarding the use of overdrafts and posting order render them atypical of the class. (Opposition, at 12.) However, it is the defendant's common course of conduct, not the class representatives' subjective expectations or preferences, which governs considerations of typicality. *See Johnson v. GEICO Cas. Co.*, 673 F. Supp. 2d 255, 275–78 (D. Del. 2009). Plaintiffs and the members of the class are all challenging the same overdraft policies of Comerica and seeking to recover the

additional overdraft fees they incurred as a result of Comerica's re-sequencing of their transactions. This is true irrespective of the cause of action alleged.

Moreover, to the extent that expectations are relevant, an objective standard governs.[9] For example, with respect to Plaintiffs' breach of contract claim, the Restatement recognizes that "[s]uch a writing is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." RESTATEMENT (SECOND) CONTRACTS § 211(2). Plaintiffs' claims can thus be established by common proof of Comerica's uniform application of high-to-low posting and related devices like the Matrix to the members of the Class and the Bank's concealment of its overdraft practices that affect Plaintiffs and the class alike. Similarly, with respect to Plaintiffs' claim for unconscionability, differences in characteristics such as education, age, experience, and sophistication between Plaintiffs and the class do not render them atypical since common proof can be used to establish that the conduct alleged by Plaintiffs was uniformly unconscionable. Likewise, with respect to Plaintiffs' unjust enrichment claim, differences in the degree of customer awareness do not establish atypicality since Plaintiffs contend that Comerica's concealment of its overdraft policies prevented both Plaintiffs and the class members from gaining sufficient knowledge to understand and appreciate Comerica's scheme and how it affected them. Finally, differences in the amount of damages suffered by the class representatives and the class do not affect typicality. *Kornberg*, 741 F.2d at 1337.

In sum, the Court finds that Plaintiffs' claims arise out of the same course of conduct and are based on the same legal theories as those of the absent class members. Pursuant to a

---

[9] *See Larsen*, 275 F.R.D. at 680 ("For example, it is not the case that the individual Plaintiffs' and class members' subjective expectations are necessary to prove their claims. To the contrary, breach of the covenant good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct.").

standardized, automated process, Comerica posted all debit transactions that settled on a given day late in the evening or early the following morning before business hours. Throughout the Class Period, as to each Plaintiff and every member of the proposed class, it was Comerica's uniform practice to post all debit transactions in a single "batch," in the order of highest-to-lowest dollar amount. That is, all Plaintiffs and members of the proposed class, whose accounts were governed by common and materially uniform Deposit Agreement, were subjected to Comerica's uniform practice of re-sequencing debit card transactions from high-to-low, and Plaintiffs allege that they and all members of the proposed class were assessed additional overdraft fees as a result. Plaintiffs propose discrete multi-state subclasses for some of the state law claims to ensure that the proposed class representatives' claims are materially identical to all other class members that they seek to represent. (*See* Trial Plan, at 11–17.) Therefore, the Court finds that the typicality requirement is met.

4.    Adequacy

The Court must be satisfied that the "representative parties will fairly and adequately protect the interests of the class." FED.R.CIV.P. 23(a)(4). This requirement is satisfied when (i) the class representatives have no interests conflicting with the class; and (ii) the representatives and their attorneys will properly prosecute the case. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Valley Drug*, 350 F.3d at 1189. Adequacy exists where the named plaintiffs share common interests with the class members and seek the same type of relief for themselves as they seek for the class. *Pottinger*, 720 F. Supp. at 959.

The Court finds that neither the Plaintiffs nor their counsel have any interests that are antagonistic to those of the absent class members. The central issues in this case–the existence, unlawfulness and effect of Comerica's scheme to manipulate debit card transactions and increase the number of overdraft fees assessed–are common to the claims of Plaintiffs and the other

members of the class. Each representative Plaintiff, like each absent class member, has a strong interest in proving Comerica's scheme, establishing its unlawfulness, demonstrating the impact of the illegal conduct and obtaining redress. Plaintiffs thus "share the true interests of the class." *Texas Air*, 119 F.R.D. at 459; *see also Tefel v. Reno*, 972 F. Supp. 608, 617 (S.D. Fla. 1997) (the "common goal of each member of the class" is to remedy the unlawful conduct, and "[i]f the Plaintiffs succeed, the benefits will inure to all class members."). The Court is therefore satisfied that Delphia Simmons, a resident and citizen of Michigan, and Patricia Mattlage, a resident and citizen of Texas, will properly and adequately represent the class.

The law firms seeking to represent the class here include very qualified and experienced lawyers. The Court has reviewed the firm resumes setting forth their experience and expertise in class actions. In addition, the Court is familiar with many of the lawyers seeking to represent the class, as they have appeared before the Court a number of times. The Court is satisfied that the lead Plaintiffs and the firms seeking appointment as class counsel will properly and adequately prosecute this case. The Court therefore appoints Plaintiffs as representatives of the class, and appoints the following firms as class counsel pursuant to FED.R.CIV.P. 23(g): Podhurst Orseck, P.A.; Bruce S. Rogow, P.A.; Baron & Budd, P.C.; Golomb & Honik, P.C.; Grossman Roth, P.A.; Lieff Cabraser Heimann & Bernstein LLP; Trief & Olk; and Webb, Klase & Lemond, L.L.C.

### C. Rule 23(b)(3)

Plaintiffs bring this action under Rule 23(b)(3), which requires (i) that questions of law or fact common to class members predominate over any questions affecting individual members, and (ii) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* FED.R.CIV.P. 23(b)(3).

1.    <u>Predominance</u>

"Common issues of fact and law predominate if they 'have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Klay*, 382 F.3d at 1255 (quoting *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001)). *See also Moore v. Painewebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (common issues predominate "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."). It is not necessary that all questions of law or fact be common; only some questions must be common, and they must predominate over individual questions. *Klay*, 382 F.3d at 1254; *In re Visa Check/Master Money Antitrust Litig.*, 280 F.3d 124, 140 (2d Cir. 2001) (the rule "calls only for predominance, not exclusivity, of common questions").

The predominance inquiry "focuses on the number and significance of common issues. This rule does not require a complete absence of individual issues. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546 (11th Cir. 1986). If the liability issue is common to the class, common questions predominate over individual questions. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987)." *Singer*, 185 F.R.D. at 690; *see also Brown*, 212 F.R.D. at 606 ("In deciding whether common questions predominate under Rule 23(b)(3), courts generally focus on whether there are common liability issues which may be resolved efficiently on a class-wide basis.") (citation omitted); *Cooper v. Pacific Life Ins. Co.*, 229 F.R.D. 245, 263–64 (S.D. Ga. 2005) (finding predominance satisfied despite "fact that some individual consideration of customers' unique circumstances would have been necessary" to evaluate their claims, where "classwide liability exists, if at all, because of the . . . common course of conduct, through misleading omissions . . . and otherwise").

Here, "irrespective of the individual issues which may arise, the focus of the litigation" concerns "the alleged common course" of unfair conduct embodied in Comerica Bank's alleged scheme to maximize overdraft fees through the hidden reordering of transactions at account posting. *Sargent v. Genesco, Inc.*, 75 F.R.D. 79, 86 (M.D. Fla. 1977). Any analysis of this scheme will depend on evidence relating to the standardized form account agreement and bank practices affecting all class members in a uniform manner. A scheme "perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class." Advisory Committee Notes to Rule 23(b)(3) (1966 Amendments). Indeed, predominance is "a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

The Court finds that predominance is satisfied in this case. Plaintiffs allege that Comerica's course of conduct commonly, and adversely, affected the entire class, and have submitted evidence supporting that allegation. The class members are similarly situated with regard to the readily determined, allegedly excess fees they incurred as a result of a standardized process. The class is unified by both common questions and a common interest. The evidence necessary to establish Plaintiffs' claims is common to both Plaintiffs and all members of the class; they all seek to prove that Comerica's high-to-low re-sequencing practice was wrongful. That evidentiary presentation involves the same evidence of (i) Comerica's form contracts, with similar terms, applicable to all Plaintiffs and class members; (ii) Comerica's systematic re-sequencing of debt transactions from high-to-low for all Plaintiffs and class members through its automated software programs; and (iii) the Matrix line of credit that Comerica secretly established for all Plaintiffs and class members in order to charge them overdraft fees. (*See* Trial

Plan, at 3–6 & Ex. A; *id.* at 7–9 & Ex. C; *id.* at 9–10 & Ex. B; *see also id.* at Ex. D.) The evidence to be presented by the Plaintiffs has a direct impact on every class member's effort to establish liability and on every class member's entitlement to relief. *Klay*, 382 F.3d at 1255. Moreover, where corporate policies "constitute the very heart of the plaintiffs' . . . claims," as they do here, common issues will predominate because those policies "would necessarily have to be re-proven by every plaintiff." *Klay*, 382 F.3d at 1257; *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 236 F.R.D. 62, 70 (D.N.H. 2006) (varying degrees of knowledge among class members do not present an obstacle to class certification where other common issues unite the class).

Unique affirmative defenses rarely predominate where a common course of conduct is established. *Wahl v. Midland Credit Mgmt.*, 243 F.R.D. 291, 297–298 (N.D. Ill. 2007). Contrary to Comerica's arguments, there are no unique defenses asserted against the Plaintiffs "which threaten to become the focus of this litigation." *Demmick v. Cellco P'ship*, No. 06–2163 (JLL), 2010 WL 3636216, *7 (D.N.J. Sept. 8, 2010) (citing *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)). The defenses asserted here against Plaintiffs are related to the class claims and are typical of those that Comerica will assert against the class.

As discussed below, Plaintiffs have met their burden of showing that common issues of fact and law will predominate within the subclasses they have proposed, as to each of their claims. As this Court observed in *Larsen*, the Court may certify multi-state classes even if "different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited number of patterns that the court . . . can

manage by means of" sub-classing. *Larsen*, 275 F.R.D. at 679–80 (quoting American Law Institute, *Principles of the Law: Aggregate Litigation* § 2.05(b) (2010)).

(i)     *Breach of Contract Claims*

For many of the reasons discussed above, the Court finds that common issues of law and fact relating to Plaintiffs' breach of contract claims would predominate. Contrary to Comerica's contention that this claim requires consideration of the expectations, understandings, or preferences of each individual class member, (Opposition, at 46), the claim is amenable to common proof based on its uniform contract and the standardized contractual provisions in the Deposit Agreement.

Comerica does not deny that all class members received the same account agreements, which contained the same provision, or that none of the class members renegotiated or altered their agreements. Since the reasonable expectations of a party to a standardized form contract are judged objectively,[10] the entire class will win or lose on their contract claims based upon the same evidence and legal standards of contract construction. Moreover, Comerica's own records can be used to identify which transactions were authorized with a positive available balance, and which of those still received an overdraft fee once the transactions were posted highest to lowest. (*See* Olsen Decl.) This was a primary basis for class certification in *Gutierrez*, which this Court followed in *Larsen. See Gutierrez*, 2008 WL 4279550, at *17; *Larsen*, 275 F.R.D. at 677.

(ii)    *Unconscionability Claims*

Common issues similarly predominate as to Plaintiffs' unconscionability claims. As this Court has already recognized, common evidence of the bank's conduct suffices to establish

---

[10] *See, e.g., Parcel Tankers, Inc. v. M/T Stolt Luisa Pando*, 787 F. Supp. 614, 618 (E.D. La. 1992); *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 274 F.R.D. 286, 290 (N.D. Cal. 2011) ("the reasonable expectations of the class [asserting a good faith and fair

substantive and procedural unconscionability, making them appropriate for class certification. *Larsen*, 275 F.R.D. at 680; *see also Davis v. Cash For Payday, Inc.*, 193 F.R.D. 518, 522–23 (N.D. Ill. 2000) (certifying unconscionability class claim because common issues predominate); *In re United Cos. Fin. Corp.*, 276 B.R. 368, 375–76 (D. Del. 2002) (collecting cases).

The Court has already ruled that Plaintiffs sufficiently pled the elements of unconscionability, (DE #305, at 28–31; DE #1306, at 5), and Plaintiffs' Trial Plan further identifies these common elements. (*See* Trial Plan, at 7–9.) Since the account agreements are materially similar, a fact-finder could conclude, based on subclass-wide proof, that Comerica's alleged failures to disclose the operative features of its overdraft policies were so unfair and overreaching as to be unconscionable. Moreover, considerations like the disparity in bargaining power between the parties, *e.g.*, *Kinkel v. Cingular Wireless L.L.C.*, 857 N.E.2d 250, 264 (Ill. 2006), whether the contract was presented on a take-it-or-leave-it basis, *id.* at 265, and whether important terms are hidden in a maze of fine print, *Glassford v. Brickkicker*, 35 A.3d 1044, ¶¶ 28–30 (Vt. 2011), are susceptible to common proof at trial. Plaintiffs' unconscionability claims are therefore appropriate for class certification.

(iii)    *Unjust Enrichment Claims*

Unjust enrichment claims can be certified for class treatment where there are common circumstances bearing on whether the defendant's retention of a benefit received from class members was just or not. *See James D. Hinson Elec. Contr. Co. v. Bellsouth Telecomms., Inc.*, 275 F.R.D. 638, 647 (M.D. Fla. 2011).[11] That situation exists in this case. Based on the evidence presented, class-wide proof is available to show that Comerica deliberately concealed from all

---

dealings claim under Delaware law] are measured by an objective standard"); *Clancy v. King*, 954 A.2d 1092, 1108 (Md. 2008) (under Maryland law, objective standard applies).

[11] *See also County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010); *Cassese v. Wash. Mut., Inc.*, 255 F.R.D. 89, 97–98 (E.D.N.Y. 2008).

customers important information about its overdraft policy–including the existence and amount of customers' overdraft Matrix limits–factors which bear on the justness of Comerica's retention of the excess overdraft fees it collected as a result.  (Trial Plan, at 9–10.)

The Court notes that the problems plaguing the proposed classes in *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d1159 (11th Cir. 2010), *Klay*, and *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1263 (11th Cir. 2009), are not present here. In *Sacred Heart*, there were substantial variations in the terms of over 300 hospital contracts that were individually negotiated, leading the court to find that "the diversity of the material terms is overwhelming." 601 F.3d at 1171–72. In contrast, the agreements at issue here are uniform form contracts offered on a take-it-or-leave it basis and were not the product of any individual negotiation. *See id.* at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment."). Similar problems precluded certification in *Klay*, where the court ultimately found certification of the breach of contract claims inappropriate given the individualized issues of fact they entailed, even though questions of contract law were common to the whole class. 383 F.3d at 1261. Likewise in *Vega*, the court found that different employees possessed markedly different levels of knowledge and understanding of the commission systems established by the defendant's employment contracts. 564 F.3d at 174–75. In contrast, no evidence here shows that any class members learned the true nature of Comerica's alleged "scheme" or practices, which, as alleged, included secret lines of credit and extending the amount by which customers could overdraft their accounts, and these hidden practices equally affected all Plaintiffs and class members. This case is thus like others in which certification of unjust enrichment claims is proper. *Larsen*, 274 F.R.D. at 680.

In addition, the court's certification in *Gutierrez* is instructive. Wells Fargo, like Comerica, also contended that individual issues would predominate, but the court found the

"challenged practice is a standardized one applied on a routine basis to all customers." 2008 WL 4279550, at *17. Thus, while "there will be some individual issues . . . these individual variations will not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors." *Id.* Here, as in *Gutierrez*, Plaintiffs allege that Comerica exercised its discretion in bad faith by re-sequencing debit card transactions posted to their checking accounts from highest to lowest in order to maximize overdraft penalties against customers. Moreover, as in *Gutierrez*, Comerica's "challenged practice is a standardized one applied on a routine basis to all customers." *Id.* at *17. Any individual issues will "not predominate over the pervasive commonality of the highest-to-lowest method and its adverse impact on hundreds of thousands of depositors." *Id.*

As discussed above, class members are readily ascertainable through objective criteria: Comerica's own records of individuals who were assessed overdraft fees. Plaintiffs' expert will formulate calculations that can identify members of the class by running queries in Comerica's computer records. Such calculations will be merely ministerial in nature, and will not be plagued by resolution of individual class member issues. Damages will be calculated using the same Comerica records used to identify the class members. These facts make this case manageable as a class action.

Comerica argues that individual issues predominate with regard to these claims. Its argument relies on an incorrect reading of the relevant law. For example, it is not the case that the individual Plaintiffs' and class members' subjective expectations are necessary to prove their claims. To the contrary, Plaintiffs' claim can be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct. *See, e.g.*, *Menagerie Prods. v. Citysearch*, No. CV 08-4263, 2009 WL 3770668, *10–12 (C.D. Cal. Nov. 9, 2009). Plaintiffs' unconscionability claims focus on Comerica and its conduct, making them appropriate for

certification. *See, e.g.*, *Dienese v. McKenzie Check Advance of Wis., L.L.C.*, No. 99-C-50, 2000 WL 34511333, *5–6 (E.D. Wis. Dec. 11, 2000) (citing cases approving of class certification of common-law unconscionability claims). So too with Plaintiffs' unjust enrichment claims – courts often certify unjust enrichment claims because "common questions predominate" and are "all easily resolved class wide." *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 268 F.R.D. 652, 669 (S.D. Cal. 2010); *see also Cartwright v. Viking Indus.*, No. 2:07-CV-02159-FCD-EFB, 2009 WL 2982887, *7 (E.D. Cal. Sept. 11, 2009); *Keilholtz v. Lennox Hearth Prods.*, 268 F.R.D. 330, 343 (N.D. Cal. 2010).

> 2.     Superiority

A class action is the only realistic way Plaintiffs' claims can be adjudicated. "Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts." *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983). The class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability. The Supreme Court has long recognized that where, as here, "it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guar. Nat. Bank of Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980). "[T]he class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages done to any single individual or entity are too small to justify bringing an individual action." *In re Am. Express Merchants' Litig.*, 634 F.3d187, 194 (2d Cir. 2011). *See also, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (noting that the class action mechanism may empower "plaintiffs to pool claims which would be uneconomical to litigate individually," such as when

most of them "would have no realistic day in court if a class action were not available."); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1154 (11th Cir. 1983) ("[T]he class attorney, who is familiar with the facts and the progress of the litigation, will be able to present the claimant's case.  If relegated to a new suit, the individual might be unable to obtain counsel to prosecute his action when the amount of individual damages is relatively small. . . . By obviating the need to bring a new lawsuit, the expense of litigating the new individual claim is reduced.") (quoting *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1220 n. 80 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115 (1979)).

Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy. Nearly all of the class members in this case have claims that are so small that it would cost them much more to litigate an individual case than they could ever hope to recover in damages, and thus there is no reason to believe that the putative class members have any particular interest in controlling their own litigation. Comerica suggests that class members may prefer an alternative posting order, (Opposition, at 24), but the legal and expert costs alone needed to litigate the case and calculate the damages would far exceed any individual class members' recovery, and Comerica does not demonstrate anything to the contrary.

As discussed above, class members are readily ascertainable through objective criteria: Comerica's own records of individuals who were assessed overdraft fees.  Plaintiffs' expert will formulate calculations that can identify members of the class by running queries in Comerica's computer records.  Such calculations will be merely ministerial in nature, and will not be plagued by resolution of individual class members' issues. Damages will be calculated using the same Comerica records used to identify the class members. These facts make this case eminently manageable as a class action.  In any event, the manageability factor is seldom sufficient in and

of itself to defeat certification, and multiple individual lawsuits would be substantially less manageable. *See Klay*, 383 F.3d at 1272. Accordingly, the Court finds that Plaintiffs have met the superiority requirement of Rule 23(b)(3).

### 3.   Affirmative Defenses

Nor do Comerica's affirmative defenses defeat certification of the class. (*See* Amended Answer, DE #1709.) Although Comerica claims that its affirmative defenses require individualized proof, (Opposition, at 53–60), the Court finds the defenses are susceptible to class-wide proof. For example, defenses such as waiver and ratification,[12] under the law of the two primary states at issue (Texas and Michigan), require full knowledge of all material facts to render their actions knowing and voluntary.[13] Plaintiffs allege and offer evidence to support the contention that Comerica failed to meaningfully disclose its overdraft practice, including, *inter alia,* the existence of its secret line of credit which dictated how overdraft charges were generated. (*See* Motion, at 15, 25–30.) If Plaintiffs can prove these facts, they will undercut Comerica's defenses by common evidence.[14]

These defenses may also pertain more to damages than liability, depending on how the facts develop in discovery. *See, e.g., Coughlin v. Blair*, 41 Cal. 2d 587, 602–03 (1953) (discussing waiver in the context of the measure of damages, not liability) (cited in Opposition, at 27 n. 37); *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1114 (C.D.

---

[12] *See* Thirteenth & Fifteenth Affirmative Defenses (DE #1702).

[13] *See, e.g., Frans v. Harleysville*, No. 280173, 2008 Mich. App. LEXIS 1925, at *3–4 (Mich. Ct. App. Sept. 23, 2008); *Martin v. Martin*, 287 S.W.3d 260, 266 (Tex. App. Dallas 2009) (collecting cases).

[14] Moreover, to the extent Comerica could prove that some customers nonetheless learned of their Matrix limit, yet continued to incur and pay overdraft fees, the presence of individualized defenses as to a small number of class members would not destroy the predominance of common liability questions. *See Smilow v. Southwestern Bell Mobile, Sys., Inc.*, 323 F.3d32, 39 (1st Cir. 2003); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y.

Cal. 2001) (affirmative defenses of waiver and mitigation pertained to damages, not liability).The Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat class certification. *See Allapattah Servs.*, 333 F.3dat 1261; *Sacred Heart*, 601 F.3d at 1178.

Of course, whether Plaintiffs' or Comerica's evidence will prevail is not the appropriate inquiry at this time. Instead, it is enough to note that both Plaintiffs and Comerica plan to rely on common evidence in making their cases, which makes the case appropriate for certification as a class action.

### D.    The Use of Subclasses

The Court certifies five subclasses: one breach of contract subclass, two unjust enrichment subclasses, and two unconscionability subclasses. Plaintiffs' Trial Plan, included in Appendix I to the Motion, contains an extensive analysis of state law breach of contract, unjust enrichment, and unconscionability. As the surveys demonstrate, variations are minimal, and are fully addressed by the subclasses proposed by Plaintiffs, which unify within each of the subclasses the state laws with common elements.

The Court finds that the creation of subclasses to address variations in state law is appropriate here and will make this case manageable as a class action. *See, e.g., Klay*, 382 F.3d at 1262 (noting that "if applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate."). Indeed, as this Court recently observed, the Court may certify multi-state classes even if "different claims or issues are subject to different bodies of law that are not the same in functional content but nonetheless present a limited

---

2008); *Robin Drug Co. v. Pharmacare Mgmt. Servs., Inc.*, No. Civ. 033397, 2004 WL 1088330, at *5 (D. Minn. May 13, 2004).

number of patterns that the court . . . can manage by means of" sub-classing. *Larsen*, 275 F.R.D. at 679–80 (internal quotations omitted).

The proposed materials submitted by Plaintiffs with their Trial Plan illustrate that the variations among the potentially applicable state laws are not material and can be managed to permit a fair and efficient adjudication by the fact-finder at trial. The state subclasses and representatives for each are set forth at the end of this opinion. For the reasons set forth earlier, common issues predominate with respect to each of these claims.

Class treatment is superior to other available methods for the fair and efficient adjudication of this controversy. Nearly all of the class members in this case have claims that are so small that it would cost them much more to litigate an individual case than they could ever hope to recover in damages, and thus there is no reason to believe that the putative class members in this case have any particular interest in controlling their own litigation. Concentrating the litigation in this forum is logical and desirable. And as noted above, this case is eminently manageable as a class action.

## IV.   **CONCLUSION**

In accordance with the findings above, it is hereby **ORDERED, ADJUDGED, and DECREED** as follows:

1.      Plaintiffs' Motion for Class Certification (DE #2384) is **GRANTED**.  The Court certifies the following class:

> All Comerica Bank customers in the United States who had or have one or more customer accounts and who, from the applicable statutes of limitation through August 15, 2010, (the "Class Period"), incurred one or more overdraft fees as a result of Comerica's practice of sequencing debit card transactions from highest to lowest.

> Excluded from the Class are Comerica; its parents, subsidiaries, affiliates, officers and directors; any entity in which Comerica has a controlling interest; all

customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

2.    The Court appoints Plaintiffs Delphia Simmons and Patricia Mattlage as representatives of the Class, and as representatives of the following specific, certified subclasses:

| Subclass | Number[15] | Representative | States |
|---|---|---|---|
| Breach of Contract | 1 | Delphia Simmons and Patricia Mattlage | CO, IL, MI, TX, OH |
| Unjust Enrichment | 1 | Delphia Simmons | CA, IL, MI, NE |
| Unjust Enrichment | 2 | Patricia Mattlage | TX |
| Unconscionability | 1 | Delphia Simmons and Patricia Mattlage | CA, CO, FL, MI, NV, OH, TX |
| Unconscionability | 2 | Delphia Simmons and Patricia Mattlage | AZ, IL |

3.    The Court appoints the following firms as Class Counsel pursuant to Fed. R. Civ. P. 23(g):  Podhurst Orseck, P.A.; Bruce S. Rogow, P.A.; Baron & Budd, P.C.; Golomb & Honik, P.C.; Grossman Roth, P.A.; Lieff Cabraser Heimann & Bernstein LLP; Trief & Olk; Webb, Klase & Lemond, L.L.C.[16]

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida this 10th day of August, 2012.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

Copies furnished:
All Counsel of Record

---

[15] The Subclass Numbers are those set forth at pages 13–17 of Plaintiffs' Trial Plan.
[16] The Court will address the procedure for providing notice to class members regarding the certification of the class and these claims separately.

26