# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

**THIS DOCUMENT RELATES TO:**
**FOURTH TRANCHE ACTION**

*Wolfgeher v. Commerce Bank, N.A.*
S.D. FL Case No. 1:10-cv-22017-JLK
W.D. MO Case No. 4:10-cv-00328-ODS

**JOINT DECLARATION OF ROBERT C. GILBERT AND JEFFREY M. OSTROW IN**
**SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**
**OF  CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**

Robert C. Gilbert and Jeffrey M. Ostrow declare as follows:

1.       We are Class Counsel for Plaintiff and the proposed Settlement Class in the

Action against Commerce Bank.[1] We submit this declaration in support of Plaintiff's Unopposed

Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class.

Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration,

and could testify competently to them if called upon to do so.

2.       After more than two years of litigation and protracted settlement negotiations,

Plaintiff, Class Counsel and Commerce Bank ("Commerce" or the "Bank") entered into a

---

[1] All capitalized defined terms have the same meaning as defined in the Settlement Agreement
and Release attached as Exhibit A to Plaintiff's Unopposed Motion for Preliminary Approval of
Class Settlement and for Certification of Settlement Class.

Settlement Agreement and Release ("Settlement" or "Agreement"), under which Commerce will: (i) pay $18.3 million in cash to create a common fund for the benefit of the Settlement Class; (ii) change for a minimum of two (2) years its current High-to-Low Debit Transaction Posting, whereby the Bank posts Debit Card Transactions from highest-to-lowest dollar amount, to a Chronological Posting Order, whereby the Bank posts Debit Card Transactions in the same order in which they are authorized for payment against an Account; and (iii) separately pay all fees and expenses associated with Class Notice and Settlement Administration.  Under the Settlement, the overwhelming majority of Settlement Class Members will automatically receive distributions from the Net Settlement Fund in proportion to the actual harm that each of them sustained.

3.      The Action involves sharply opposed positions on several fundamental legal and factual issues.  Plaintiff and Class Counsel maintain that the claims asserted in the Action are meritorious; that Plaintiff and the Settlement Class would establish liability and recover substantial damages if the Action proceeded to trial; and that the final judgment ultimately recovered in favor of Plaintiff and the Settlement Class would be affirmed on an appeal. Plaintiff's and the Settlement Class' ultimate success in the litigation require them to prevail, in whole or in part, at all of these junctures.  On the other hand, Commerce maintains that the claims asserted in the Action lack merit in whole or in part; that Plaintiff and the Settlement Class would not prevail on liability and/or recover substantial damages if the Action proceeded to trial; and that any judgment ultimately entered against Commerce would not survive on appeal.  Conversely, Commerce's success at any one of these junctures could or would spell defeat for Plaintiff and the Settlement Class.  Thus, continued litigation poses significant risks and countless uncertainties, as well as the time, expense and delays associated with trial and appellate proceedings, particularly in the context of complex multi-district litigation.

4.      In light of the risks, uncertainties and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to the Settlement Class in the form of direct cash payments and other valuable relief.

### A.      Background of the Litigation.

5.      Plaintiff sued on behalf of herself and all others similarly situated who incurred Overdraft Fees as a result of Commerce's practice of Debit Re-Sequencing.  Plaintiff alleged that Commerce systemically reengaged in Debit Re-sequencing to maximize its Overdraft Fee revenues.  According to Plaintiff, Commerce's practices violated the Bank's contractual and good faith duties, were substantively and procedurally unconscionable, violated state unfair trade practices laws, and resulted in conversion and unjust enrichment.

6.      Commerce denied all of Plaintiff's allegations of wrongdoing.  Commerce consistently argued, *inter alia*, that Plaintiff's claims are preempted by the National Bank Act ("NBA"), that its Account agreements expressly authorize the very practice of Debit Re-sequencing challenged by Plaintiff; that it fully disclosed its Debit Re-sequencing practices to its customers; that no unconscionability claim lies for the recovery of damages; that no conversion claim exists; that Plaintiff cannot maintain unjust enrichment claims; and that the Missouri statutory consumer protection claim is defective.

### B.      Class Counsel's Investigation.

7.      Class Counsel devoted substantial time and resources to researching and developing the legal claims at issue, before and after the litigation began.  Class Counsel interviewed many Commerce customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers.  This information was essential to Class Counsel's ability to understand the nature of Commerce's conduct, the language of the Account agreements at issue, and potential claims for relief and remedies.

C.      **The Course of Proceedings.**

8.      On April 6, 2010, Plaintiff filed a Class Action Complaint in the United States District Court for the Western District of Missouri, seeking monetary damages, restitution and declaratory relief, arising from Commerce's alleged Debit Re-sequencing.

9.      In May 2010, the Judicial Panel on Multidistrict Litigation transferred the Action to this Court for inclusion in MDL 2036.  The Action was made part of the Fourth Tranche.

10.     On July 27, 2010, Plaintiff filed an Amended Complaint.  On December 3, 2010, Plaintiff filed a Second Amended Complaint [DE # 996].  On January 20, 2011, Commerce filed a Motion to Dismiss [DE # 1072].  After full briefing, on March 21, 2011, the Court entered an Order denying the Motion to Dismiss in all respects, with the exception of the Missouri Merchandising Practices Act claim [DE # 1036].

11.     On April 20, 2011, Commerce filed its Answer and Affirmative Defenses [DE # 1357].  On May 16, 2011, Plaintiff filed a Motion to Strike Defendant's Affirmative Defenses [DE # 1477].  On June 3, 2011, Commerce filed its Response to Plaintiff's Motion to Strike [DE # 1573].  On June 13, 2011, Plaintiff and Commerce filed a Stipulation whereby Commerce agreed to amend its Answer and Plaintiff agreed to withdraw the Motion to Strike [DE # 1606]. On July 7, 2011, pursuant to that Stipulation, Commerce filed its Amended Answer and Affirmative Defenses to the Second Amended Complaint [DE # 1699].

12.     On May 23, 2011, Plaintiff propounded her first request for production of documents, first set of interrogatories and first requests for admissions.  On October 17, 2011, Plaintiff propounded a second request for production.  Commerce thereafter produced thousands of documents and electronic data in response to the production requests, which were reviewed by Class Counsel.  Class Counsel also deposed Commerce's Executive Vice President and Director of Banking Operations.

13.     On December 20, 2011, Plaintiff filed a Motion for Class Certification (under seal).

14.     Beginning in 2011, Class Counsel and Commerce engaged in preliminary settlement discussions.   As part of settlement negotiations, Commerce provided Class Counsel with sample transactional and summary data regarding its Overdraft Fee revenues.   On November 18, 2011, Class Counsel and Commerce engaged in a full day of mediation before Professor Eric Green and Carmen Reiss in Boston, Massachusetts.  The Parties did not reach an agreement that day, but continued to negotiate with the assistance of Professor Green over the course of the next month.   On December 23, 2011, Class Counsel and Commerce signed a Memorandum of Understanding that memorialized, subject to a mutually agreeable written Settlement Agreement and subject to Preliminary Approval and Final Approval by the Court, as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally and forever resolve, discharge and release all rights and claims of the Settlement Class Members in exchange for Commerce's agreement to: (i) pay $18.3 million to create a common fund for the benefit the Settlement Class; (ii) pay all fees and expenses associated with providing Class Notice and Settlement Administration; and (iii) change for a minimum of two (2) years its current High-to-Low Debit Transaction Posting to a Chronological Posting Order.

15.     On December 27, 2011, the Parties filed a Notice of Settlement with the Court. Months of extensive negotiations followed regarding the comprehensive terms of the Settlement. The Agreement was executed on July 26, 2012.   At all times throughout the mediation proceedings and subsequent settlement discussions, the negotiations were adversarial, non-collusive and at arm's length.

## D.  Settlement Recovery.

16.     The Settlement requires Commerce to deposit $18.3 million into an Escrow Account within 14 days of this Court's Preliminary Approval of the Settlement.  That deposit will create the Settlement Fund, which shall be used for the following purposes: (i) distribution of payments to Settlement Class Members; (ii) payment of Court-ordered attorneys' fees, costs and expenses of Class Counsel; (iii) payment of the a Service Award to the Plaintiff; (iv) payment of the costs of the Escrow Agent and Tax Administrator; (v) distribution of residual funds, if any; and (vi) any additional fees, costs and expenses not specifically enumerated in paragraph 57(a)-(e), subject to approval of Settlement Class Counsel and Commerce.  In addition to the $18.3 million Settlement Fund, Commerce is separately responsible for paying all costs and fees associated with the Notice Administrator's costs and fees for Class Notice and the Settlement Administrator's costs and fees for Settlement Administration.

17.     All identifiable Settlement Class members who experienced a Positive Differential Overdraft Fee and all eligible Settlement Class Members who timely submit valid Claims demonstrating that they experienced a Positive Differential Overdraft Fee will receive pro rata distributions from the Net Settlement Fund.  The analysis determines, among other things, which Commerce Account holders were assessed Additional Overdraft Fees that would not have been assessed if the Bank had used an alternative posting sequence or method for posting Debit Card Transactions other High-to-Low Debit Transaction Posting" and how much in Additional Overdraft Fees those Account holders paid.  The calculation involves a multi-step process that is described in detail in the Agreement.

18.     The Net Settlement Fund – which will be distributed *pro rata* among all identifiable Settlement Class Members – is equal to the Settlement Fund, plus interest earned (if

any), less all costs incurred in connection tax administration, Court-awarded attorneys' fees and costs, a Service Award for the Plaintiff, and escrow expenses.

19.     Most members of the Settlement Class do not have to submit Claims or take any other affirmative step to receive relief under the Settlement.  The amount of their *pro rata* distributions will be determined by Settlement Class Counsel and their expert through analysis of Commerce's data.  Members of the Settlement Class who incurred Overdraft Fees during the limited period of time for which Commerce does not have sufficient reasonably accessible data (Accounts opened in Illinois from April 6, 2000 through December 31, 2002) will be able to submit Claims seeking payment of their *pro rata* share of the Net Settlement Fund based on the same formula used to determine the amount of Positive Differential Overdraft Fees for Settlement Class Members for whom Commerce has available data.  Within 30 days after the Effective Date of the Settlement, Commerce and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members entitled to a distribution under the automatic distribution and/or under the Claims Process.

20.     Payments to Settlement Class Members who are Current Account Holders will be made by the Bank crediting such Settlement Class Members' Accounts, and notifying them of the credits.  Commerce will then be entitled to a reimbursement for such credits from the Settlement Fund.  Former Account Holders and Current Account Holders whose Accounts cannot feasibly be automatically credited, will receive payments from the Settlement Fund by checks mailed by the Settlement Administrator.  Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Fund Payments.

21.     In addition to the $18.3 million cash recovery, Plaintiff secured significant non-monetary relief on behalf of the Settlement Class through Commerce's agreement to change its current High-to-Low Debit Transaction Posting, whereby the Bank posts Debit Card Transactions from highest-to-lowest dollar amount, to a Chronological Posting Order, whereby the Bank posts Debit Card Transactions in the same order in which they are authorized for payment against an account.  The modified business practice will commence no later than March 29, 2013, for a minimum of two (2) years, and will ensure that Settlement Class Members who are Current Account Holders, as well as all other Current Account Holders, no longer incur Overdraft Fees due to Debit Re-sequencing.

### E.     Class Release

22.     In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Commerce from claims related to the subject matter of the Action.

### F.     Class Notice and Settlement Administration.

23.     Settlement Class Counsel and Commerce selected and Commerce retained Hilsoft Notifications ("Hilsoft") and Epiq Systems, Inc., leading class action notice and settlement administration experts, to serve as the Notice Administrator and Settlement Administrator, respectively, for the Settlement.  The Notice Program is designed to provide the best notice practicable, and is tailored to take advantage of the information Commerce has available about the Settlement Class.  Commerce will pay all fees and costs of the Notice Administrator and the Settlement Administrator.  The Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Fee Application and request for a Service Award for the Plaintiff, and their rights to opt-out of the Settlement Class and object to the Settlement.  The Notices and Notice Program

constitute sufficient notice to all persons entitled to notice.  The Notices and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

24.     The Notice Program is comprised of three parts:  (1) direct mail postcard notice ("Mailed Notice") to all identifiable members of the Settlement Class; (2) publication notice ("Published Notice") designed to reach those members of the Settlement Class for whom direct mail notice is not possible; and (3) a "Long Form" notice with more detail than the direct mail or publication notices, that will be available on the Settlement Web Site (www.CommerceBankOverdraftSettlement.com) and via mail upon request.

25.     All forms of Notice to the Settlement Class will include, among other information: a description of the Settlement; a date by which members of the Settlement Class may exclude themselves from or "opt out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing will occur; and the address of the Settlement Website at which members of the Settlement Class may access the Agreement and other related documents and information.

26.     The Long-Form notice will also describe the procedure that members of the Settlement Class must use to opt out of the Settlement or to object to the Settlement, and/or to Class Counsel's application for attorneys' fees and expenses.  All opt-outs must be postmarked before the Opt-Out Deadline, and any objections must be postmarked by the Opt-Out Deadline. For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any

such cases, and any relevant orders issued in response to such past objections; the identity of the objector's counsel; any agreements relating to the objection or the process of objecting between the objector or the objector's counsel and any other person or entity; a statement confirming whether the objector will appear at the Final Approval hearing and a description of counsel or witnesses who will appear on behalf of the objector at the Final Approval hearing; and the objector's signature.

### a.     The Mailed Notice Program

27.     The Settlement Administrator will implement the Mailed Notice Program.  Within 28 days from the date that the Settlement Administrator receives the data files that identify the names and last known addresses of the identifiable members of the Settlement Class, the Settlement Administrator will run such addresses through the National Change of Address Database, and will mail to all such Settlement Class Members postcards that contain the Mailed Notice ("Initial Mailed Notice").  To coordinate the Mailed Notice Program with the Published Notice Program, within one business day of its receipt of the data files described above, the Settlement Administrator will inform the Notice Administrator by email that it has received such data files.

28.     The Settlement Administrator will perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable.  No later than 35 days from the Initial Mailed Notice date, the Settlement Administrator will complete the re-mailing of Mailed Notice postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process").

29.     The Mailed Notice Program (which is comprised of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 35 days from the Initial

Mailed Notice Date.   Within seven days after the date the Settlement Administrator completes the Notice Re-mailing Process, the Settlement Administrator shall provide Settlement Class Counsel and Commerce's counsel an affidavit that confirms that the Mailed Notice Program was completed in a timely manner.  Settlement Class Counsel shall file such affidavit with the Court as an exhibit or in conjunction with Plaintiff' Motion for Final Approval.

30.     All fees and costs of the Settlement Administrator associated with the Mailed Notice Program will be paid by Commerce.

### b.     The Published Notice Program

31.     The Published Notice Program, for which Hilsoft is responsible, shall be comprised exclusively of exclusively of the following: the placement of 3 column x 8 inch advertisements in appropriate daily newspapers across Colorado, Illinois, Kansas, Missouri, and Oklahoma covering the major markets in which Commerce Bank operates branches.  The Published Notice Program will be completed no later than 28 days following the Initial Mailed Notice Date.

32.     Within seven days after the date the Notice Administrator completes the Published Notice Program, the Notice Administrator shall provide Settlement Class Counsel and counsel for Commerce with one or more affidavits that confirm that Published Notice was given in accordance with the Published Notice Program.  Settlement Class Counsel shall promptly file such affidavit(s) with the Court.

33.     All fees and costs of the Notice Administrator associated with the Published Notice Program will be paid by Commerce.

### c.     The Settlement Website and the Toll-Free Settlement Line

34.     The Settlement Administrator will establish and maintain an automated toll-free telephone line for all members of the Settlement Class to call with Settlement-related inquiries,

11

and answer the questions of Settlement Class members who call with or otherwise communicate such inquiries.  The Settlement Administrator will establish a Settlement Website as a means for members of the Settlement Class to obtain notice of, and information about, the Settlement. The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Notice Program.  The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice, the Claim Form, the Preliminary Approval Order, and such other documents as Settlement Class Counsel and counsel for Commerce agree to post or that the Court orders posted on the Settlement Website.  These documents will remain on the Settlement Website at least until Final Approval.

35.     The Settlement Administrator will establish and maintain an automated toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries, and answer the questions of members of the Settlement Class who call with or otherwise communicate such inquiries.

### G.     Service Award, Attorneys' Fees And Costs

36.     Class Counsel will seek and Commerce will not oppose a Service Award of $5,000 for the named Plaintiff.  If the Court approves it, the Service Award will be paid from the Settlement Fund, and will be in addition to the other relief the named Plaintiff will be entitled to as a Settlement Class Member.  This award will compensate the named Plaintiff for her time and effort in the Action, and for the risk she undertook in prosecuting the Action against Commerce.

37.     Commerce will not oppose Class Counsel's request for attorneys' fees of up to thirty percent (30%) of the value of the Settlement, plus reimbursement of litigation costs and expenses.

38.     Class Counsel and Commerce negotiated and reached the agreement regarding the Service Award, as well as attorneys' fees and costs, after reaching agreement on all other material terms of the Settlement.

### H.     Considerations Supporting Settlement

#### 1.     The Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations

39.     Settlement negotiations were informed by the experience of counsel for both sides in the litigation, certification, trial and settlement of nationwide class action cases.  In particular, Class Counsel had the benefit of years of experience and a familiarity with the facts of this case as well as with other cases involving similar claims.

40.     As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and Commerce's defenses, and engaged in formal discovery.  Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central legal and factual issues in the case, and prepared counsel for well-informed settlement negotiations.

41.     Class Counsel have a thorough understanding of the practical and legal issues they would continue to face litigating these claims against Commerce based, in large part, on similar claims challenging Wells Fargo's high-to-low posting practices prosecuted in *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-5923 (N.D. Cal), that resulted in a $203 million judgment in favor of the certified class of California customers.  Wells Fargo appealed the final judgment in *Gutierrez* to the Ninth Circuit, which held oral argument on May 15, 2012.  One of Wells Fargo's primary issues on appeal involves preemption under the NBA, one of Commerce's principal defenses here.

42.     Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them, as a result of *Gutierrez* and other post-*Gutierrez* settlements of similar claims reached within and outside of MDL 2036.

### 2.     Risks Associated with Trial Favor Settlement

43.     While Class Counsel are confident in the strengths of our case, we are also pragmatic in our awareness of the various defenses available to Commerce, and the risks inherent in continued litigation.  Plaintiff and the Settlement Class face the risk of dismissal on various theories advanced at the motion to dismiss stage, including NBA preemption and legal challenges to the common law and state statutory claims.  The success of Plaintiff's and the Settlement Class' claims in future litigation turns on these and other questions that were certain to arise in the context of motions for summary judgment and at trial.

44.     Protracted litigation carries inherent risks and inevitable delay.  Under the circumstances, Class Counsel determined that the Settlement outweighs the risks of continued litigation.

### 3.     The Settlement Amount is Reasonable Given the Range of Possible Recovery.

45.     Given the risks in this case and inherent in litigation, the $18.3 million cash recovery and Commerce's change of its Posting order obtained through the Settlement are outstanding.  The $18.3 million cash portion of the Settlement alone represents approximately 45% of the most probable damages that Plaintiff and Settlement Class Members could have recovered if they prevailed all the way through at trial and on appeal.  The additional value of Commerce's change of its Posting order substantially increases the range of recovery as a percentage.

46.     The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff succeeded in certifying a multistate class and the Eleventh Circuit declined to accept Commerce's inevitable rule 23(f) petition; (ii) Plaintiff and the certified class established liability at trial; (iii) Plaintiff and the certified class recovered damages at trial; and (iv) the final judgment was affirmed on appeal.  The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Commerce's defenses, and the challenging and unpredictable path of litigation that Plaintiff and the Settlement class would have faced absent the Settlement.

### 4.     The Complexity, Expense, and Duration of Ongoing Litigation Favors Settlement.

47.     The Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner.  Ongoing litigation would involve substantial, expensive fact and expert discovery, lengthy additional pretrial proceedings in this Court and the appellate courts and, ultimately, a trial and appeal.  Absent the Settlement, the Action would likely continue for two or more years.

### 5.     Proceedings are at an Appropriate Stage for Settlement.

48.     Plaintiff and Class Counsel settled the Action with the benefit of sufficient discovery, including the review of thousands of pages of documents and electronic data produced by Commerce and after deposing Commerce's Executive Vice President of Banking Operations. Review of those documents and deposition testimony positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiff's claims, Commerce's defenses, and the prospects for success on issues of class certification, summary judgment and trial.

### I.        Class Certification For Settlement Purposes

49.        Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

50.        The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of tens of thousands of people throughout several states, and joinder of all such persons is impracticable.

51.        The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on Commerce's systematic practice of Debit Re-sequencing, as alleged in the operative complaint.

52.        Plaintiff is typical of absent members of the Settlement Class because she suffered the same injuries, and because she will benefit from the relief provided by the Settlement.

53.        Adequacy is established because Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and absent members of the Settlement Class have an equal interest in the relief offered by the Settlement, and absent members of the Settlement Class have no diverging interests.  Further, Class Counsel are qualified and competent and have extensive experience prosecuting complex class actions, including consumer actions similar to the Action.  Class Counsel have devoted substantial time and resources to the Action from inception through the date of the Settlement.

54.     Plaintiff satisfies the predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class.  For example, each Settlement Class Member's relationship with Commerce arises from an Account agreement that is the same in all relevant respects to other Settlement Class Members' Account agreements.

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Miami, Florida on August 14, 2012.

/s/ Robert C. Gilbert
Robert C. Gilbert


I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Texas, on August 14, 2012.

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow