UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT           )
OVERDRAFT LITIGATION              )
                                  )
MDL No. 2036                      )
*Fourth Tranche*                  )
_____    )
                                  )
THIS DOCUMENT RELATES TO:         )
                                  )
*Shane Swift v. BancorpSouth, Inc.,*[1]  )
S.D. Fla. Case No. 1:10-cv-23872-JLK  )
_____    )

## BANCORPSOUTH BANK'S OPPOSITION TO MOTION FOR SANCTIONS

BancorpSouth and its counsel respectfully request that the Court deny Plaintiff's Motion for Sanctions. BancorpSouth and its counsel intended no disrespect to this Court or to Plaintiff Swift or his counsel in pursuing a class settlement of overdraft claims in the *Thomas/Lawson* case filed by different plaintiffs' counsel in the Western District of Arkansas. Importantly, BancorpSouth pursued the *Thomas/Lawson* settlement at a time when the JPML had issued an order affirmatively suspending the "tag-along" notice rule for MDL 2036, and BancorpSouth's counsel reviewed Local Rule 3.8 and made a good-faith determination that it did not apply in this case based on (i) the limited definition of "similar" actions under this Court's Internal Operating Procedures, (ii) the more specific order issued in this MDL which counsel reasonably construed to supersede L.R. 3.8, and (iii) the uniform practice of *all* other counsel in this MDL (none of

---

[1] BancorpSouth, Inc. is not a proper defendant in this matter. Counsel for Swift and BancorpSouth Bank discussed the proper BancorpSouth entity to name in this matter in 2010, and Plaintiff properly identified the defendant herein as BancorpSouth Bank in his Second Amended Complaint (DE # 994). Plaintiff does not appear to seek sanctions against BancorpSouth, Inc.

whom had ever filed a notice under L.R. 3.8 as to any other overdraft case filed in another federal court). BancorpSouth and its counsel express their sincere apology to the Court for their different conclusion regarding the applicability of L.R. 3.8 and respectfully state that their actions were the result of a good-faith difference in interpretation – not, as Plaintiff theorizes, a bad-faith attempt to undermine this Court's authority or impede the MDL process.

## FACTUAL BACKGROUND

### A.  BancorpSouth has participated in MDL 2036 in good faith.

On May 18, 2010, Swift filed his putative class action in the Northern District of Florida. (*Swift* DE # 1.) The JPML transferred the action on October 26, 2010 to MDL 2036. (*Swift* DE # 23.) BancorpSouth has complied with every scheduling order set by this Court and diligently participated in discovery. (Taylor Decl., DE # 2605-1 ¶ 5.) To date, BancorpSouth has produced more than 107,000 pages of documents, has made over 124,000 documents available for review online, has provided numerous witnesses for deposition, and has engaged in a formal mediation with Swift's counsel. Similarly, BancorpSouth's counsel have participated in numerous "meet and confer" conferences with Plaintiff Swift's counsel that have resulted in coordinated discovery dates, resolution of discovery issues, coordinated scheduling agreements and numerous consent and joint orders presented to this Court for the orderly completion of pretrial activities.

### B.  The JPML denied MDL case transfers and suspended notice requirements.

In a series of orders beginning October 11, 2011, the JPML declined to transfer cases against Fifth Third Bank, Whitney Bank, and Republic Bank to MDL 2036, and explained that, after consultation with this Court, further transfer of cases "threatens to significantly hinder" MDL 2036. The JPML also immediately suspended its "tag-along" notice rule as to MDL 2036.

(*See* JPML Order, DE # 2605-26.)[2]  Therefore, BancorpSouth and its counsel believed that as of October 11, 2011, no order or rule required BancorpSouth (or any other defendant in MDL 2036) to notify the JPML of new overdraft cases filed against it.

Also, between the entry of the October 11, 2011 JPML Order and the entry of the Injunction Order (DE # 2666), the JPML did not transfer *any* new cases to MDL 2036.  Even before October 11, 2011, the JPML declined to transfer class action cases to MDL 2036 in which the parties indicated that the action had settled or was about to settle. *In re: Checking Account Overdraft Litigation*, MDL No. 2036, DE # 233, 289, 459 (JPML).  These critical facts regarding the status of the MDL existed at all times relevant to Plaintiff's Motion for Sanctions and were relied on by BancorpSouth and its counsel.

On April 24, 2012, six days <u>after</u> the Injunction Order was issued, the JPML issued their "Order Modifying the October 11, 2011, Order Suspending Panel Rule 7.1(a) In This Docket," which explicitly amended their October order that had suspended the "tag-along" notice rule. With the modified order, the JPML reinstated the requirement for parties to provide notice of any potential tag-along action involving a defendant also named in another action presently pending in MDL No. 2036. *In re: Checking Account Overdraft Litigation*, MDL No. 2036, DE # 677 (JPML Apr. 24, 2012).  Thus, contrary to Plaintiff's and the PEC's contention in their Motion (Motion at 6-7), BancorpSouth and its counsel believed that there was <u>no</u> obligation to notify the JPML of *Thomas/Lawson* when it was filed.

At the time the *Thomas/Lawson* action was filed, no S.D. Fla. Local Rule 3.8 notices had been filed by any party to the MDL.  All counsel for all parties presumably believed, as BancorpSouth and its counsel believed, that there was no requirement to file such a notice in the

---

[2] The JPML recently determined that transfers to the MDL were again appropriate in some circumstances. *See, e.g.,* JPML DE # 750.

MDL. The Local Rule 3.8 argument was first raised by counsel for Plaintiff in a reply brief. (*See* DE # 2626 at p. 8.) At its April 18, 2012 hearing, this Court made clear that its interpretation of S.D. Fla. L.R. 3.8 differed from that of BancorpSouth's counsel.

After BancorpSouth stated its position to the Court, the Court entered an order clarifying when notice of similar actions is required under this Court's local rules -- the Court's May 14, 2012 Omnibus Order Requiring Notice of Pending, Refiled, Related or Similar Actions. (DE # 2684.) The May 14 Order directed all counsel, consistent with S.D. Fla. L.R. 3.8, to provide notice of any similar actions or proceedings. BancorpSouth respectfully suggests that if the application of L.R. 3.8 was sufficiently ambiguous as to require the May 14 Order, BancorpSouth's counsel were reasonable in their good faith belief that notice was not required prior to its notification of the *Thomas/Lawson* class settlement in March 2012. To the extent that BancorpSouth's counsel's interpretation of L.R. 3.8 was in mistake, taking a reasonable position on an unclear issue does not support the sanctions for bad faith conduct that Plaintiff seeks.

> C. **Arkansas residents Lawson and Thomas brought and settled claims outside the MDL**.

On August 15, 2011, BancorpSouth's counsel learned that a putative overdraft class action had been filed by Arkansas resident Billy D. Lawson against BancorpSouth in the Circuit Court of Crawford County, Arkansas. (Taylor Decl., DE # 2605-1 ¶ 14.) *Lawson*, a state court action, was pled so as not to be removable to federal court and thus was not a case that could be removed and "tagged" for notice to the JPML. (*See* Class Action Complaint, DE # 2605-25; *see also* JPML R. 1.1(h) ("tag-along actions" only consist of those pending in a district court)). Before BancorpSouth responded to the original *Lawson* complaint, it was dismissed.

BancorpSouth entered into arms-length settlement negotiations with Lawson's counsel after dismissal of the state court action. (Taylor Decl., DE # 2605-1 ¶ 15.) On November 29,

4

2011, BancorpSouth participated in a confidential, formal mediation with Lawson's counsel, who by then also represented another Arkansas customer, Melvin L. Thomas, III. Despite the best efforts of mediator Frank Hamlin, the parties did not reach agreement to settle. (*Id.* ¶ 16.) On January 16, 2012, BancorpSouth and counsel for Thomas and Lawson again engaged in confidential, arms-length mediation but this time before Mr. Hamlin's colleague, mediator Chris Gomlicker. (*Id.*) At the end of a lengthy mediation session, the parties reached agreement in principle on some but not all issues for a class overdraft settlement. (*Id.*) With some assistance from Mr. Gomlicker, the parties continued negotiations. (*Id.*) By late February the parties had reached agreement on most, but not all, settlement issues. (*Id.*) The declarations of these mediators confirm that the negotiations between BancorpSouth and Thomas and Lawson were not collusive and were truly arms-length. (*See* Hamlin Decl., DE # 2620-1 ¶¶ 7–9; Gomlicker Decl., DE # 2620-2 ¶ 6.)

The contentions by Plaintiff and the PEC that the *Thomas/Lawson* settlement was "collusive" or "patently inadequate" (Motion at 6) are unsupported. The settlement monetary consideration was supported by an independent expert analysis and used a framework accepted by the Northern District of Illinois in *Schulte v. Fifth Third Bank*, N.D. Ill. Doc. No. 1:09-cv-06655. The expert engaged by Thomas and Lawson was the same expert approved in *Schulte,* and he estimated alleged damages at $17.5 million consistent with the established framework endorsed by Judge Dow in *Schulte*. While this settlement framework differs from that advocated for by the PEC in *Swift*, the fact that the *Thomas/Lawson* settlement was based on a framework approved by another federal court conclusively refutes any claim of bad faith or that the settlement was "patently inadequate" or "defective."

On February 28, 2012—more than four months after the JPML suspended the tag-along notice rule—Thomas and Lawson publically filed a putative overdraft class action against BancorpSouth in the Arkansas District Court. (DE # 2605-4.)  The case was assigned to Senior District Judge Robert T. Dawson.  On February 29, 2012, the *Thomas/Lawson* parties executed a Settlement Agreement and Release. Shortly thereafter, the Arkansas District Court was provided with numerous settlement related filings, including materials submitted by BancorpSouth that identified the case pending against BancorpSouth in MDL 2036, the scheduling orders entered in MDL 2036, and the recent class certification briefing in MDL 2036. (DE # 2605-14, 2605-15, 2605-16, 2605-17, 2605-18, 2605-19, 2605-20, 2605-21; Taylor Decl., DE # 2605-1 ¶ 17.) Those filings specifically disclosed the *Swift* action and the existence of MDL 2036.  (*Id.*)  On March 16, 2012, the parties to the *Thomas/Lawson* action publicly requested a hearing to seek certification of a settlement class, preliminary approval of the class action settlement, and approval of the notice plan. (DE # 2605-7.)

On March 26, 2012, the Arkansas District Court conducted a public hearing to address the parties' proposed settlement, during which it made numerous inquiries regarding the settlement. (*See* Hearing Transcript, DE # 2620-3.)  Judge Dawson had read and considered the documents in the record before the hearing. (*See id.* at 4:15–17, 5:3–4, 5:15–21, 14:1–3, 18:5–11, 20:18, 20:24–21:4.) Judge Dawson specifically acknowledged the existence of *Swift* and MDL 2036 at the hearing.

Plaintiff's suggestion that counsel misled the Arkansas District Court is contrary to the record.  On the first page of BancorpSouth's Bench Memorandum in Support of Settlement Agreement, counsel informed the Arkansas District Court that the *Swift* action was a case "challenging similar BancorpSouth practices."  (DE 2605-14.)  Counsel explained that the *Swift*

6

case was filed on May 20, 2010, that the *Swift* class certification motion was fully briefed, and that no hearing on the class motion had been set by this Court. (*Id*. at 1, 3-5.) Counsel provided the specific scheduling orders entered by this Court to the Arkansas District Court. (DE 2605-20 and 21.)

At the conclusion of the March 26, 2012 hearing, the Arkansas District Court certified a settlement class and determined that the presented settlement was fair, reasonable, and adequate. (*See* DE # 2620-3; *see also* DE # 2602-1 at ¶ 5.)[3] BancorpSouth respectfully submits that Judge Dawson's preliminary certification of the *Thomas/Lawson* settlement class demonstrates that BancorpSouth's conduct was not undertaken in bad faith or in contravention of established legal principles.

### D. The Court granted Swift's motion to enjoin BancorpSouth and its counsel.

The day after the Arkansas District Court preliminarily approved the settlement agreement and issued the Class Certification Order, BancorpSouth notified Swift's counsel and filed a Notice of Settlement and Motion to Stay the *Swift* action, notifying this Court of the Arkansas settlement and seeking a stay of class-related proceedings. (DE # 2602.) Swift opposed BancorpSouth's motion and filed an emergency motion seeking an injunction prohibiting BancorpSouth and its counsel from participation in the *Thomas/Lawson* action. (DE # 2603.) This Court held a hearing on April 18, 2012, at which it denied BancorpSouth's motion, granted

---

[3] As the materials presented to the Arkansas District Court showed, the *Thomas/Lawson* settlement was on par with settlements involving other banks in checking overdraft account litigation. (DE # 2605-9 at 11–13.) The settlement included monetary consideration of $1.75 million and banking practice changes that would have added another $11.25 million in value over the first five years. (*See* DE # 2605-10.)

7

Swift's motion, and issued an injunction prohibiting BancorpSouth and its counsel from further participation in the *Thomas/Lawson* litigation. (DE # 2642.)[4]

Plaintiff and the PEC did not reference L.R. 3.8 in their original motion but argued for the first time in their injunction reply brief that the rule required BancorpSouth to provide notice of the *Thomas/Lawson* action immediately after its February 28, 2012 filing. (DE # 2626.) BancorpSouth's counsel did not believe that this local rule was applicable to this situation for several reasons:

(1)   Before this Court's May 14, 2012 Order, a good faith and reasonable analysis of L.R. 3.8 led to the conclusion that it had no bearing on MDL 2036. Rule 3.8 provides:

> It shall be the continuing duty of the attorneys of record in every action or proceeding to bring promptly to the attention of the Court and opposing counsel the existence of other actions or proceedings as described in Section 2.15.00 of the Court's Internal Operating Procedures, as well as the existence any similar actions or proceedings then pending before another court or administrative agency. Such notice shall be given by filing with the court and serving on counsel a "Notice of Pending, Refiled, Related or Similar Actions," containing a list and description thereof sufficient for identification.

The Court's Internal Operating Procedures, Section 2.15.00 defines "similar" as:

> Whenever an action or proceeding is filed in the Court which involves subject matter which is a material part of the subject matter of another action or proceeding then pending before this Court, or for other reasons the disposition thereof would appear to entail the unnecessary duplication of judicial labor if heard by a different Judge, the Judges involved shall determine whether the newly filed action or proceeding shall be transferred to the Judge to whom the earlier filed action or proceeding is assigned.

Because of the specific language in L.R. 3.8 and I.O.P. 2.15.00, BancorpSouth's counsel reasonably and in good faith believed that this provision required notice of intra-district cases

---

[4] BancorpSouth and its counsel immediately and unfailingly complied with the Injunction Order, including by informing Judge Dawson of these developments.

within the Southern District of Florida only and had no application to MDL 2036.

Counsel also noted that L.R. 3.8 is subject to L.R. 1.1, "Scope of the Local Rules," that provides: "These Local Rules shall apply in all proceedings in civil and criminal actions <u>except where indicated otherwise</u>." (Emphasis added.) This Court "indicated otherwise" in its Pretrial Order No. 1, Docket Entry 60. In Paragraph 4 of Docket Entry 60, the Court addressed notice requirements:

> The Court requests the assistance of counsel in calling to the attention of the Clerk the filing or transfer of any case that might properly be consolidated or coordinated as part of the action.

DE # 60. Thus, it was BancorpSouth counsel's conclusion that Pretrial Order No. 1, DE # 60, superseded L.R. 3.8 rendering it inapplicable in MDL 2036. Based on the JPML's suspension of Rule 7.1(a) on October 11, 2011, particularly its statement that further transfer of cases "threaten[ed] to significantly hinder" MDL 2036, BancorpSouth's counsel reasonably determined that the *Thomas/Lawson* case was not one that "might properly be consolidated or coordinated as part of this action." *See* DE 2605-16. Thus, BancorpSouth's counsel operated with the belief that no notice was required under Pretrial Order No. 1.

(2) Counsel believed that notice for MDL 2036 was controlled by the specific JPML tag-along notice rules and such rules did not require notice of the *Thomas/Lawson* action. (*See* pp. 2-3, *supra*).

(3) Counsel was aware of more than 100 overdraft cases that were filed outside of MDL 2036 and were either (i) the subject of CTOs that were ultimately transferred to MDL 2036[5] or (ii) arose outside of MDL 2036 and resolved outside of MDL 2036 that involved parties represented by plaintiffs' counsel in the MDL. Significantly, neither the PEC nor any

---

[5] If Swift's counsel is right, there should have been a Rule 3.8 notice for every case that was the subject of a CTO.

9

defendant's counsel had ever filed a L.R. 3.8 notice. Nor was the failure to do so ever identified as improper in any of these cases.[6]

In any event, BancorpSouth did not keep the *Thomas/Lawson* action secret. The action was publically filed and all documents were available on the PACER system.

BancorpSouth and its counsel understand fully that this Court has now determined that L.R. 3.8 should have triggered earlier notice of the *Thomas/Lawson* action, and both the bank and its counsel apologize for its analysis of Rule 3.8 that yielded a different conclusion and delayed notice. Counsel's analysis of L.R. 3.8 was undertaken in good faith and certainly with no attempt to "undermine this Court's authority and the multi-district litigation process." (Motion at 1.) If counsel had believed that earlier notice was required, earlier notice would have been given.

On April 19, 2012, Swift's counsel "tagged" the *Thomas/Lawson* case in the JPML, and as a result the JPML issued a CTO. *In re: Checking Account Overdraft Litigation*, MDL No. 2036, DE # 671 (JPML Apr. 19, 2012). Over Swift's opposition, BancorpSouth sought permission from this Court to participate in the CTO process in the JPML on April 23, 2012. (DE # 2649.) The next day, this Court granted that permission, but did not otherwise alter the scope of the Injunction Order.[7] (DE # 2653.) This Court issued a written order on the injunction on April 30, 2012. (DE # 2666.) BancorpSouth exercised its right to appeal the Injunction Order.

---

[6] *See, e.g.,* Conditional Transfer Orders 1 - 44, June 12, 2009 - March 16, 2012 (transferring 98 cases without corresponding Local Rule 3.8 notices); *see also Taulava v. Bank of Hawaii*, Hawaii Circuit Court, First Circuit (settled by Jeffery Ostrow, *et al.*); *Molina v. Intrust Bank, N.A.*, District Court of Sedgwick County, Kansas (settled by Barrett J. Vahle, Patrick J. Steueve, *et al.*).

[7] Notably, Plaintiff seeks sanctions related to, among other things, BancorpSouth's participation in the CTO process, despite the permission provided by this Court.

Based on these factual circumstances, BancorpSouth and its counsel had a good faith basis for each of the actions upon which Plaintiff seeks sanctions. The actions were grounded in a rational, reasonable, and good faith reading of the JPML's rules and orders, this Court's local rules, and the orders and law related to MDL 2036. BancorpSouth sought to defend a class settlement approved by a federal district court judge, and its counsel zealously advocated for the best result for its client. BancorpSouth and its counsel understand this Court's determination that they should have provided earlier notice of the *Thomas/Lawson* action but respectfully urge that counsel's good faith, albeit mistaken, interpretation of L.R. 3.8 should not support sanctions.

## ARGUMENT

### A.   Plaintiff's arguments do not meet the standard for sanctions to be awarded.

Plaintiff seeks nonspecific sanctions against BancorpSouth and its counsel under this Court's inherent power and against BancorpSouth's counsel under 28 U.S.C. § 1927.[8] Neither standard is met.

### 1. "Bad faith" is required for sanctions under the Court's inherent authority.

Before a court can impose sanctions under its inherent power, it must find that the lawyer's conduct "constituted or was tantamount to bad faith," an extremely high hurdle to clear. *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 918 (11th Cir. 1982); *see also Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) ("The key to unlocking a court's inherent power is a finding of bad faith."). "A court must, of course, exercise caution in invoking its inherent power, and it must comply with the mandates of due

---

[8] The motion for sanctions does not articulate the specific sanctions sought or who the sanctions are sought on behalf of. The motion for sanctions is styled as a motion filed by Plaintiff Shane Swift yet Mr. Swift has not shown that he incurred any out of pocket costs, fees or other damage based on the filing, settlement, notification and subsequent legal proceedings related to *Thomas/Lawson*.

11

process, both in determining that the requisite bad faith exists and in assessing fees. . .[.]" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

"Bad faith is an objective standard that is satisfied when an attorney knowingly or recklessly pursues a frivolous claim." *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). Zealous advocacy absent bad faith does not support an award of sanctions. *See United States v. Seltzer*, 227 F.3d 36, 40 (2d Cir. 2000) ("zealous advocacy" absent bad faith is insufficient for the imposition of sanctions against attorney under "inherent powers"); *Wilbur v. City of Mt. Vernon*, Case No. C11-1100RSL, 2012 U.S. Dist. LEXIS 22628, *6-8 (W.D. Wash. Feb. 23, 2012) ("zealous advocacy, untainted by bad faith" does not warrant sanctions).

        2.    *Section 1927 requires proof of unreasonable and vexatious conduct tantamount to bad faith.*

28 U.S.C. § 1927 allows sanctions only when counsel "so multiplies the proceedings in any case unreasonably and vexatiously[.]" 28 U.S.C. § 1927. "To justify an award of sanctions pursuant to [28 U.S.C. §] 1927, an attorney must engage in unreasonable and vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). Sanctions for unreasonable and vexatious actions only may be imposed "when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (citation omitted).

Section 1927 sanctions are not justified for conduct motivated by zealous advocacy. *See Mattox v. Watson*, No. 07-cv-5006, 2007 U.S. Dist. LEXIS 88634, *16-17 (C.D. Cal. Nov. 15, 2007). "[Sanctions] must not be a penalty against merely unsuccessful litigants, and [they] 'should not be applied to adventuresome, though responsible, lawyering which advocates creative legal theories.'" *In re Mondelli*, Case No. 10-cv-3393, 2011 U.S. Dist. LEXIS 67231,

*9 (D.N.J. June 23, 2011) (discussing Rule 11 sanctions, quoting *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988)); *see also Kosnoski v. Howley*, No. 91-1818, 1992 U.S. App. LEXIS 24363, at *16 (4th Cir. Sept. 24, 1992) ("When deciding whether to impose Rule 11 sanctions, a court must be careful not to chill creative advocacy.").

BancorpSouth and its counsel zealously advocated to support a settlement that BancorpSouth and opposing class counsel in Arkansas believed was in their respective best interests, and that was preliminarily approved by a sister federal court. Their actions were not in bad faith and do not meet the standards necessary for imposition of sanctions.

**B.     BancorpSouth's actions were grounded in law and good faith interpretation of a local rule.**

Sanctions are an extraordinary remedy and are not warranted in a situation like here, when a litigant and its counsel have a good faith belief that the strategy they are pursuing is legal. *See Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1320 (11th Cir. 2002) ("Due to the scope of the inherent powers vested in federal courts, however, it is necessary that such courts 'exercise caution in invoking [their] inherent power.'") (quoting *Chambers*, 501 U.S. at 50). The following factors, among others, evidence the reasonable and good faith beliefs held by BancorpSouth and its counsel.

*1. The original Lawson suit was a non-removable state court action.*

The *Lawson* lawsuit filed in Arkansas state court was pleaded specifically to avoid removal and subsequent inclusion in the MDL. *See generally* Class Action Complaint, DE # 2605-25. Based on the jurisdictional pleading in the original *Lawson* action, the language of Pretrial Order No. 1 (requiring notice of "any case that might properly be consolidated or coordinated as part of the action"), a review of L.R. 3.8 and I.O.P. 2.15.00 (focusing on intra-Court transfers), and JPML rules, BancorpSouth's counsel reasonably concluded that the *Lawson*

13

action was not removable to federal court such that no notice of the action was required in this Court.

### 2. *Banks in the MDL had successfully settled outside of the MDL.*

Before the *Thomas/Lawson* settlement, three banks sued both in the MDL and outside the MDL (Fifth Third Bank, National City Bank and Webster Bank) already had settled outside the MDL. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) (July 2011 final approval of settlement); *Trombley v. National City Bank*, 826 F. Supp. 2d 179 (D.D.C. 2011) (December 2011 final approval of settlement); *Mathena v. Webster Bank, N.A.*, 3:10-cv-1448-SRU at DE # 37 (D. Conn. Mar. 28, 2011) (March 2011 final approval of settlement). The PEC opposed two of these settlements in the settling district courts but those courts approved each settlement. *See Trombley*, 826 F. Supp. 2d at 182-83 (discussing PEC objections and granting final approval); *Trombley v. National City Bank*, 759 F. Supp. 2d 20, 22, 28-29 (N.D. Ill. 2011) (discussing PEC objections and granting preliminary approval); *Schulte*, 805 F. Supp. 2d at 565-66, 572-75 (discussing PEC objections and granting final approval). Based on the PEC's prior actions, BancorpSouth expected to address PEC objections to the substance of the Arkansas settlement in the settling district court and believed that the settlement should be approved just as the prior settlements had been approved. As this Court recognized on April 18, 2012: "I have no bad feeling about the lawyers involved here in any way. You are entitled to go and represent your client wherever is the best interest for your client. If you can get a better settlement in Arkansas than you can get here, I don't fault you for a heartbeat in trying to do that." *See* Transcript of April 18, 2012 hearing, DE # 2647 at 12:7-11.

*3. BancorpSouth kept settlement negotiations confidential for good reasons.*

BancorpSouth and its counsel believed that they were prohibited from divulging the Arkansas settlement negotiations. Mediation agreements signed by BancorpSouth's counsel required confidentiality. And, counsel specifically sought to avoid triggering the type of "reverse auction" that is prohibited when competing class actions are pending. *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1189 (10th Cir. 2002). Had BancorpSouth alerted Plaintiff Swift's counsel that they were in serious settlement negotiations with Arkansas plaintiffs' counsel, such notice would be interpreted as an improper invitation for Plaintiff Swift to bid for the lowest settlement.

*4. Settlement negotiations were observed and facilitated by two mediators.*

Two separate mediators submitted declarations setting forth their observations of the arms-length negotiations that resulted in the Arkansas settlement. (*See* Hamlin Decl., DE # 2620-1; Gomlicker Decl., DE # 2620-2) As these professionals attest, the negotiations were conducted in good faith and without any hint of collusion.[9]

*5. Settlement was predicated on the model approved by other federal judges.*

The settlement negotiated with *Thomas/Lawson* followed much of the settlement template approved by three different district courts over the PEC's objections. Specifically, the settlement was predicated on the exact same model as settlements that were approved for Fifth Third Bank and National City Bank, and the Arkansas plaintiffs relied on expert analysis for damages by the same expert accepted by the Northern District of Illinois in *Schulte*. *See Trombley*, 826 F. Supp. 2d at 197-199, 203-204 (discussing and approving expert analysis and

---

[9] After hearing Plaintiff's claims of collusion during the April 18, 2012 hearing, this Court declined Plaintiff's invitation to enter findings supporting the claim of collusion and, instead, enjoined BancorpSouth and its counsel from participation in *Thomas/Lawson*. *See* DE # 2666 at p. 11.

reasonableness of settlement); *Schulte*, 805 F. Supp. 2d at 569-572, 579 (discussing expert analysis). In other words, BancorpSouth had more than a good faith belief that the settlement was fair and would be approved.

### 6. *Settlement in Arkansas made more sense for BancorpSouth and its customers.*

Arkansas is in the middle of BancorpSouth's banking footprint and a significant portion of its banking customers reside there. Not only did Mr. Thomas and Mr. Lawson reside in Arkansas, Plaintiff Swift resides in Arkansas. (*Swift* DE # 9-1, Amended Class Action Complaint at ¶ 12.) On the other hand, BancorpSouth has only two Florida branches, located in the northernmost part of the state. BancorpSouth and its counsel believed that settlement administered in the Western District of Arkansas would be convenient for the both the bank and its customers.

### 7. *The JPML suspended the "tag" rule for MDL 2036.*

Well before BancorpSouth reached a settlement agreement in Arkansas, the JPML, after consulting with this Court, suspended the tag notice rule. (*See* pp. 2-3, *supra*). In other words, counsel were not to send notice to the JPML of new federal overdraft suits. Until the JPML issued its April 19, 2012 order reinstituting the tag rule for cases against parties already in MDL 2036, no cases were transferred into MDL 2036 (despite several requests by the PEC). Based on the JPML's ruling and subsequent inaction, BancorpSouth's counsel concluded reasonably and in good faith that the *Thomas/Lawson* case was not subject to notice, was not transferrable, and would not be transferred to MDL 2036.

### 8. *BancorpSouth informed Judge Dawson of MDL 2036 and its status.*

When BancorpSouth's counsel provided settlement papers to Judge Dawson, those papers specifically identified MDL 2036, included this Court's scheduling orders, and provided

the parties' class certification briefing from MDL 2036. (*See* pp. 5-7, *supra*). Judge Dawson was aware of the MDL and specifically referenced it in his settlement class certification order and during the preliminary approval hearing. *Id.* Neither BancorpSouth nor its counsel made any attempt to conceal any aspect of MDL 2036, and, instead, made significant efforts to alert the Judge Dawson to important aspects of the case.

### 9. *BancorpSouth analyzed L.R. 3.8 in good faith and found no notice required.*

As explained above, when the *Thomas/Lawson* action was filed on February 28, 2012, BancorpSouth's counsel made a reasoned and good faith analysis of the rules and past practice in MDL 2036 to conclude that L.R. 3.8 did not require notice. (*See* pp. 8-9, *supra*). Prior to the PEC's L.R. 3.8 objection in its reply brief in support of injunction against BancorpSouth, none of the hundreds of plaintiffs' counsel and defendants' counsel in MDL 2036 had filed a L.R. 3.8 notice or contended that the rule was applicable to the MDL.

### 10. *BancorpSouth never sought to prevent Plaintiff's settlement objections.*

In the *Thomas/Lawson* settlement BancorpSouth preserved Swift's claims and set a simple procedure for any BancorpSouth customer to object to the settlement for any reason whatsoever. (*See* DE # 2605-9 at 22 (describing procedure for objections); *see also* DE # 2605-10 at pp. 26-28 (outlining objection procedure)). No action by BancorpSouth or its counsel restricted any of the arguments that Swift has made before this Court or in the Eleventh Circuit. In other words, the arguments used by Swift to derail the *Thomas/Lawson* settlement were always available to Swift, and no action by BancorpSouth or its counsel was intended to or did prevent him from making his objection.[10] To the contrary, while BancorpSouth and its counsel

---

[10] The heart of Plaintiff's complaint is that BancorpSouth did not notify the Court of the filing of the *Thomas/Lawson* action (by counsel for Thomas and Lawson, not counsel for BancorpSouth) until twenty-eight days after the action was filed. The flaw in Plaintiff's theory is

were enjoined from attempting to defend the settlement, Swift was able to successfully attack the settlement.

In sum, BancorpSouth and its counsel did not act in bad faith or in disrespect of this Court by failing to notify Plaintiff's counsel or this Court of the *Thomas/Lawson* action sooner. BancorpSouth pursued a settlement structure that had been successful for other banks and believed that its good faith settlement strategy would reasonably resolve overdraft litigation against it. BancorpSouth and its counsel respect this Court's determination that their interpretation of L.R. 3.8 was incorrect and, in great part as a result of this Court's injunction, the settlement negotiated in Arkansas failed. The conduct of BancorpSouth and its counsel in not giving immediate notice under L.R. 3.8 was at most a good-faith mistake in interpretation of the applicability of L.R. 3.8. Such conduct was not, however, the result of disrespect for this Court, bad faith, or improper motives.

## CONCLUSION

BancorpSouth and its counsel advocated for a settlement that failed but did so at all times believing that they were in good faith compliance with the rules of this Court. For the foregoing reasons, BancorpSouth and its counsel request that Plaintiff's request for sanctions be denied. In any event, this Court should await the outcome of the pending Interlocutory Injunction appeal and jurisdiction question in the Eleventh Circuit before proceeding with consideration of Plaintiff's sanction motion.

---

that he cannot identify any action required to combat the *Thomas/Lawson* settlement that would not have been required without regard to notice timing. In either instance Plaintiff would take actions to derail the *Thomas/Lawson* settlement, BancorpSouth would have, in good faith, opposed those actions, and the case would have proceeded with issues addressed in this Court, in the Western District of Arkansas, in the Eleventh Circuit, and in the JPML. Accordingly, Plaintiff has not shown factual support for damages.

Respectfully submitted this 24th  day of August, 2012.

**COLE, SCOTT & KISSANE, P.A.**

*/s/ Thomas Scott*
Thomas E. Scott
Florida Bar No. 478539
Thomas.scott@ckslegal.com

9150 South Dadeland Boulevard, Suite 1400
Miami, Florida 33156
Telephone: (305) 350-5385
Facsimile: (305) 373-2294

**PARKER, HUDSON, RAINER & DOBBS LLP**

*/s/ Eric Jon Taylor*
Eric Jon Taylor
Georgia Bar No. 699966
ejt@phrd.com
William J. Holley, II
Georgia Bar No. 362310
wjh@phrd.com
David B. Darden
Georgia Bar No. 250341
dbd@phrd.com
Darren E. Gaynor
Georgia Bar No. 288210
deg@phrd.com

1500 Marquis Two Tower
285 Peachtree Center Avenue N.E.
Atlanta, Georgia 30303
Telephone: (404) 523-5000
Facsimile: (404)522-8409

*Counsel for Defendant BancorpSouth Bank*

## **CERTIFICATE OF SERVICE**

  I hereby certify that I have this day caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record entitled to receive service.

  This 24th day of August, 2012.

              */s/ Eric Jon Taylor*
              Eric Jon Taylor