**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

---

**IN RE: CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**
**FOURTH TRANCHE ACTION**

*Simmons, et al. v. Comerica Bank*
N.D. Tex. Case No. 3:10-cv-326-0
S.D. Fla. Case No. 1:10-cv-22958

---

**PLAINTIFFS' MOTION TO COMPEL AND FOR SANCTIONS**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, pursuant to Rules 26 and 37 Fed.R.Civ.P., respectfully request entry of

an order compelling certain discovery against Defendant Comerica Bank ("Comerica"),

and imposing sanctions against Comerica and/or its counsel of record based on the

discovery misconduct detailed below.

**I.  Introduction**

Plaintiffs recently learned that, in gathering emails responsive to the document

requests served by Plaintiffs over a year ago, Comerica's legal department identified

selected bank employee custodians, described to them generally what they believed the

lawsuit was about, and then asked only those *custodians* – approximately one-third of

those possessing potentially relevant emails and other documents – to gather and produce

emails and related documents that the custodians subjectively thought were relevant to

the case.  Remarkably, there was no email follow up search conducted, *even with respect*

*to custodians who did not produce a single email.*  The process by which Comerica produced non-email documents was similarly deficient; a recent bank FED. R. CIV. P. 30(b)(6) designee (a) testified that it was very possible that, for example, a memorandum on a Comerica employee's computer discussing overdraft fees might not have been produced, and (b) could not state with any degree of confidence that all of the materials requested by Plaintiffs in certain key document requests had been produced.

Comerica's discovery gamesmanship was improper, must be corrected, and should not go unpunished.  Comerica's decision to allow its custodians to "self-collect" their responsive e-mails was inappropriate.   Comerica's counsel also abdicated their responsibility, as officers of this Court, to supervise and oversee their client's obligation to properly respond to Plaintiffs' discovery requests.

Plaintiffs and the certified class will be unfairly prejudiced if this case advances to summary judgment and trial with Plaintiffs only having been provided with Comerica's self-chosen, cherry-picked documents.  For the reasons that follow, this Court should enter an order compelling (i) Comerica to immediately undertake a complete review of its emails, documents and internal data and produce all responsive emails, documents and data previously withheld, and (ii) Comerica's witnesses to re-appear for deposition (or appear for the first time if not previously deposed) in the event additional emails and documents are produced.   Additionally, this Court should impose sanctions against Comerica and/or its counsel including, but not limited to, requiring payment of all fees and costs incurred by Plaintiffs in connection with the review of additional emails and documents to be produced and additional depositions to be taken of Comerica's witnesses.

## II.  Factual Background

**A.      Discovery Conducted to Date.**

This case was filed on February 17, 2010.  On March 21, 2011, this Court denied, in large part, Comerica's motion to dismiss.[1]   The Scheduling Order entered thereafter provided that discovery vis-à-vis Comerica was to commence on May 20, 2011 (DE # 1340).  On August 10, 2012, the Court granted Plaintiffs' motion for class certification.[2] Based on the date of entry of the class certification order and the schedule set forth in the Revised Scheduling Order (DE # 2789), fact discovery will end on November 8, 2012.

The parties have conducted extensive discovery over the previous year and a half. Plaintiffs served Comerica with initial interrogatories and requests for production of documents on May 23, 2011.  After agreeing upon the terms of a proposed confidentiality order, Comerica produced over 18,000 pages of documents.  Plaintiffs loaded these documents onto a database and reviewed them over the course of several months.  Based on the assumption that Comerica had conducted a diligent search in compliance with its discovery obligations, Plaintiffs' counsel thereafter deposed nine (9) current and former Comerica employees, plus Comerica's two expert witnesses.[3]

On July 16, 2012, Plaintiffs served a FED. R CIV. P. 30(b)(6) deposition notice on Comerica for the purpose of ensuring that it had adequately and fully complied with its discovery obligations and produced (or otherwise accounted for) all of the material requested by Plaintiffs.  *See* Exhibit A.   Among other things, the deposition topics

---

[1] *In re Checking Account Overdraft Litig*., 2011 U.S. Dist. LEXIS 30965 (S.D. Fla. Mar. 21, 2011).
[2] *In re Checking Account Overdraft Litig.,* 2012 U.S. Dist. LEXIS 113621 (S.D. Fla. Aug. 10, 2012).
[3] Many of these depositions were conducted in Michigan (where Comerica maintains a substantial presence).

included Comerica's search for and retrieval of emails, documents and electronically stored information ("ESI") requested by Plaintiffs' discovery requests; litigation holds issued at Comerica; and steps taken to ensure that all requested emails, documents and ESI had been accounted for or produced.  *See id.*   On July 24, Comerica served objections to Plaintiffs' Rule 30(b)(6) notice, but nevertheless designated its employee Kathleen Green "to testify about information known or reasonably available to Comerica Bank regarding the topics identified with reasonable particularity in [Plaintiffs' deposition notice]." *See* Exhibit B.

**B.      The July 25 Rule 30(b)(6) Deposition.**

On July 25, 2012, Plaintiffs conducted the 30(b)(6) deposition of Ms. Green.  *See* Exhibit C.[4]  Ms. Green is a Vice President and Senior Security Engineer in Comerica's Information Security Department who has worked at the bank for 21 years.[5] Ms. Green's testimony about how the bank and its counsel responded to Plaintiffs' discovery requests for email communications revealed numerous deficiencies.

This process began with Comerica's legal department issuing a series of litigation hold notifications to its custodians beginning in March 2010.[6]  According to Ms. Green, these litigation holds provided the custodians with an outline of the litigation, and instructed them to "gather relevant e-mails" and "any electronic documents or physical documents,"[7] send them to the legal department, and then "sign [a] certification if they

---

[4] Exhibit C, the transcript of Ms. Green's deposition, is being temporarily filed under seal because it contains material and information that Comerica has designated as 'confidential" and/or "highly confidential."
[5] Green Transcript at 10:2-11:7.
[6] *Id.* at 15:9-21; 17:15-21.
[7] *Id.* at 25:5-14.

had any documentation or they acknowledged receipt of the litigation hold."[8]  While Comerica's in-house legal department identified between 60 and 75 document custodians in this case,[9] it inexplicably only provided these instructions to about 20 of them.[10]

Comerica left it entirely up to these custodians to determine which emails they deemed relevant and worthy of sending to the legal department.[11]  Moreover, Ms. Green testified that she was not aware of any follow up or "policing" that was done to ensure that these custodians performed a diligent search and produced this information:

> Q.  Was there any what I'll call policing to make sure
>       that each of these employees produced everything that
>       was relevant to the lawsuit?
>          MR.  JOHNSTON:  Object to form again.
>       Answer if you can.
>          THE WITNESS:  Not that I'm aware of.
>          BY MR. JOHNS:
> Q.  If there was any such policing, who would know the
>       answer to whether that was done?
> A.  I suppose if any policing were to have happened, it
>       would have been my team that would have done it.[12]

The 20 Comerica custodians gathered the emails they deemed relevant and put them into an internal computer folder called the Simmons file, which was then accessed by the legal department.  Ms. Green testified that these hand selected emails (by 20 different bank employees) were the only emails produced to Plaintiffs:

> Q.  Fair to say that the only e-mails that were produced
>       in this case from those 20 custodians were those
>       e-mails that they deemed relevant and put into the
>       Simmons file?
>
> A.  Correct.[13]

---

[8] *Id.* at 16:10-18; 25:15-17.
[9] *Id.* at 16:23-17:12; 19:7-12.
[10] *Id.* at 28:1-29:14.  *See also id.* at 33:8-25 (only the e-mails of these 20 custodians were retrieved and produced to Xact, Comerica's litigation vendor).
[11] *See, e.g., id.* at 39:1-4.
[12] *Id.* at 26:6-11.

The emails in the Simmons file were extracted through the legal department and delivered to a vendor called Xact that ran search terms against them.[14]   After Xact "parsed through that information" and reviewed the materials in that computer folder for relevancy, they were put on a file that was produced to Comerica's outside counsel.[15]

Ms. Green testified that she has done follow up policing on custodians who were asked to produce "relevant" emails in "probably about five" other cases.[16]   When this follow up was done in other cases, Ms. Green explained that she would "typically obtain access to their e-mails and run key search terms against their mail files."[17]   Yet, Ms. Green testified that she did not do that here, was not instructed by legal to do it, and was unaware of any such follow up being conducted.[18]   This notwithstanding the fact that she believed "there were a couple of individuals that didn't have documentation…"[19]

Ms. Green also described the similar process by which other responsive documents were gathered.   The bank custodians were requested to put documents they thought were responsive into an email or CD so they would be included in the production to Xact.[20]   Ms. Green acknowledged the problems inherent with this process.   She testified, for example, that if there was a Microsoft Word document created on someone's

---

[13] *Id.* at 35:25-36:4.  Ms. Green testified that she had the same understanding with respect to the collection and production of physical documents.  *See id.* at 72:24-73:17.
[14] *Id.* at 23:9-14; 34:2-24.
[15] *Id.* at 23:10-12; 32:24-33:1.  *See also, id.* at 39:20-22 ("Q: And is that the first time Mr. Johnston's law firm saw that data?  A: As far as I know, yes.").
[16] *Id.* at 26:15-27:2.
[17] *Id.* at 29:15-24.
[18] *See id.* at 27:12-25.
[19] *Id.* at 27:7-11.
[20] *Id.* 32:13-22.

computer regarding overdraft fees, it could have been "missed."[21]  With respect to these materials, Ms. Green testified that "[t]here was no follow-up requested."[22]

Ms. Green – who testified that she had never even seen Comerica's interrogatories or document request responses[23] – also could not testify with any degree of certainty that all of the documents related to certain critical issues at the very heart of this case (*e.g.,* internal communications regarding the posting of debit card transactions, the bank's purpose and rationale for posting high/low, and marketing materials related to debit cards) were collected and/or produced to Plaintiffs' counsel.[24]  This Rule 30(b)(6) testimony is directly contrary to Comerica's signed responses and objections to Plaintiffs' document requests, where it agreed to search for and produce these responsive materials. *See* Exhibit D.[25]

## C.      Remedial Steps Taken by Plaintiffs Following Ms. Green's Deposition.

Within days of Ms. Green's testimony, Plaintiffs' counsel advised Comerica's counsel of the concerns evident from the Rule 30(b)(6) deposition described above.  *See* Exhibits E & F.  The parties exchanged numerous letters and e-mails, and had multiple telephone conferences.  While Comerica's counsel expressed their willingness to provide certain information,[26] to date they have not produced a single additional document, and

---

[21] *Id.* 37:1-24.
[22] *Id.* at 37:17.  *See also id.* at 21:20-23.
[23] *Id.* at 110:21-23.
[24] *See id.* at 120:1-126:11.
[25] Exhibit D, Comerica's responses and objections to Plaintiffs' document requests, is also being temporarily filed under seal because certain information contained therein has been designated by Comerica as "confidential" and/or "highly confidential."
[26] Comerica's counsel described the instructions provided to custodian to Plaintiffs' counsel over the telephone and offered to produce them, as well as the litigation hold and certifications, if Plaintiffs agreed to certain conditions. While Plaintiffs' counsel

refused to undertake the search of the custodians' files requested by Plaintiffs (absent receiving a considerable payment by Plaintiffs).   Instead of alleviating Plaintiffs' concerns, Comerica's counsel's responses only exacerbated them.   Plaintiffs therefore seek to compel adequate searches and complete responses to their discovery requests.

### III. Argument

**A.     Comerica Should be Ordered to Promptly Comply with its Discovery Obligations.**

Plaintiffs submit that the appropriate remedy should include an order directing Comerica to immediately undertake a complete review of all 60-75 custodians for potentially responsive emails, other documents and ESI to Plaintiffs' discovery requests that were not previously provided, and to promptly produce all documents previously withheld.   Thereafter, to level the playing field, Comerica's witnesses who were previously deposed should be required to re-appear for deposition, this time in Miami, so that Plaintiffs' counsel may inquire into matters raised by the additional emails, documents and ESI produced.   To the extent that additional emails, documents and ESI are produced from other current or former Comerica employees who were not previously deposed, the Court should order that Comerica also produce those witnesses, at its expense, for deposition in Miami.

Magistrate Judge Simonton's report and recommendation in *Seven Seas Cruises S. DE R.L. v. V Ships Leisure Sam,* is instructive in this regard.  No. 09-23411, 2011 U.S. Dist. LEXIS 19465 (S.D. Fla. Feb. 19, 2011).[27]   The plaintiffs in that case alleged (and

---

attempted to work with counsel for Comerica to reach agreement on acceptable terms for the production of these materials, none of these documents have been produced to date.

[27] This R&R was affirmed and adopted in its entirety by Judge Ungaro, who found that the defendant's "ongoing inability to 'properly conduct complete, thorough and timely searches of ESI responsive to the Plaintiffs' discovery requests' is inexcusable, especially

the Court agreed) that the defendants had "failed to properly conduct complete, thorough and timely searches of ESI responsive to the Plaintiffs' discovery requests," leaving "no doubt that the manner and method in which the Defendants conducted their ESI searches were wholly inadequate." *Id.* at \*12.   The items ordered by the Court to remedy the defendants' discovery response deficiencies included directing the defendants to prepare an affidavit stating, *inter alia,* what steps had been undertaken by them in responding to Plaintiffs' discovery requests, and which of the custodians' computers had been searched. *Id.* at \*4.   The Court also sanctioned the defendants for their failure to "complete a thorough and accurate search of [electronically stored information]," *id.* at \*14, required them to search the computers of custodians whose computers had not previously been searched, *id.* at \*21, and awarded the plaintiffs' their attorney's fees and costs associated with bringing the motion to compel.  *Id.* at \*22.   Under the circumstances, a Court order compelling Comerica to fully comply with its discovery obligations is appropriate.

Similarly, another district court granted comparable relief based upon a party's failure to timely produce material information.  *Kona Spring Water Distributing, LTD. v. World Triathlon Corp.*, No. 05-119, 2007 U.S. Dist. LEXIS 16176 (M.D. Fla. Mar. 7, 2007).   The defendant in that case filed a motion for sanctions based upon the plaintiff's failure to timely produce conversations with key witnesses that the plaintiff had recorded. *Id.* at \*2.   The defendant argued that the production of these materials, which was eventually made over a year after they were originally requested, "has prejudiced its discovery and preparation for trial as [defendant] was deprived of 'critical evidence'

---

at this stage of litigation and regardless of whether the failure will ultimately not have prejudiced Plaintiffs.*"  Seven Seas Cruises S. DE R. L. v. V. Ships Leisure SAM*, No. 09-23411, 2011 U.S. Dist. LEXIS 19559, at \*2 (S.D. Fla. Feb. 28, 2011).

throughout the discovery period." *Id.* The plaintiff argued that it should not be sanctioned because the recordings subsequently been produced to the defendant. *Id.* at *4. The court observed, however, that defense counsel had been "forced to conduct almost all of its discovery without the knowledge or benefit of [the belatedly disclosed recordings]." *Id.* at *10. As a remedy, the court found that the plaintiff was required to pay the fees and costs associated with the defendant having to re-depose witnesses, and for filing motions to compel and for sanctions as a result of the belated discovery production. *Id.* at *10-12. As that court aptly put it, the defendant "should never have been put in this position…" *Id.* at *10. Unfortunately, Comerica has done just that to Plaintiffs and their counsel.

**B.    Comerica and its Counsel Should be Sanctioned for their Discovery Misconduct.**

Rules 26 and 37 of the Federal Rules of Civil Procedure empower a district court to award a variety of sanctions for a party's failure to comply with its discovery obligations. *See, e.g., Emery v. Am. Airlines, Inc*., No. 08-22590, 2010 U.S. Dist. LEXIS 130339, at *5 (S.D. Fla. Aug. 27, 2010). This Court has explained that FED. R. CIV. P. 37 "gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders." *Preferred Care Partners Holding Corp. v. Humana, Inc*., No. 08-20424, 2009 U.S. Dist. LEXIS 130736, at *7 (S.D. Fla. Apr. 9, 2009) (citing *Malautea v. Suzuki Motor Company, Ltd*., 987 F.2d 1536 (11th Cir. 1993)). "Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but also to insure the integrity of the discovery process." *Id.* (collecting cases).

Sanctions are appropriate here based upon both of these rules. First, they are available pursuant to FED. R. CIV. P. 26(g)(1) and (3), which provide that responses to

discovery requests must be signed, and cannot be offered for "any improper purpose, such as to…needlessly increase the cost of litigation."  FED. R. CIV. P. 26(g)(1)(B)(ii). The comments to this rule "clarify that Rule 26(g) broadly 'imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37.'"  *In re Delta/AirTran Baggage Fee Antitrust Litig.*, No. 09-2089, 2012 U.S. Dist. LEXIS 13462, at *40 (N.D. Ga. Feb. 3, 2012) (citing FED. R. CIV. P. 26(g) advisory committee's note).   The rule requires Comerica's counsel to conduct a reasonable inquiry into Comerica's discovery responses, and requires that the investigation and conclusions drawn therefrom must be reasonable under the circumstances.  *Id.*  Rule 26 further provides that if a "certification violates this rule without substantial justification," a district court "must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both."  FED. R. CIV. P. 26(g)(3). These sanctions may include a court order requiring the payment of fees and expenses.  *Id.*

Second, sanctions are available pursuant to FED. R. CIV. P. 37 for Comerica's failure to abide by the Court's scheduling orders (and steadfast refusal to take appropriate measures to fully do so).  *See In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 664 (M.D. Fla. 2007) (citations omitted) (sanctions may be imposed against [a party] under Rule 37(b)(2) based on its noncompliance with a court order, notwithstanding a lack of willfulness or bad faith, although such factors are relevant . . . to the sanction to be imposed for the failure.").  Comerica's failure to diligently search for these requested e-mails – while Plaintiffs are faced with a fast approaching discovery cut off and trial date – violate the spirit, if not the letter, of this Court's scheduling orders.

Courts have also made clear that conduct like Comerica's – issuing a litigation hold and expecting the custodians to gather up and produce documents that they subjectively view as "relevant" – is an unacceptable way to discovery requests, particularly in a case of this magnitude.[28] *See, e.g., John B. v. Goetz*, No. 98-0168, 2010 U.S. Dist. LEXIS 8821, at *211 (M.D. Tenn. Jan. 28, 2010) ("A party's discovery obligations do not end with the implementation of a 'litigation hold'--to the contrary, that's only the beginning. Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents.") (quoting *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 432 (S.D.N.Y. 2004)); *In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. at 663 ("In short, it is not sufficient to notify all employees of a litigation hold and expect that the party will  then retain and produce all relevant information. . . . Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched.) (quoting *Zubulake*, 229 F.R.D. at 432).

Recently, a litigant was sanctioned for, *inter alia*, failing to conduct a diligent search of computers on which relevant information was stored.  *In re Delta/AirTran Baggage Fee Antitrust Litig*. 2012 U.S. Dist. LEXIS 13462.  The district court concluded that sanctions were "appropriate for [defendant's] failure to ensure that all collected hard drives were actually searched and to locate the back-up tapes in the evidence locker and for its myriad inaccurate representations that it had done both."  *Id.* at *45 (citing *Legault v. Zambarano,* 105 F.3d 24, 28 (1st Cir. 1997)).  *See also, SCADIF, S.A. v. First Union*

---

[28] As the Court recently noted in its class certification opinion, "the proposed class appears to number in the tens- or hundreds-of-thousands."  *In re Checking Account Overdraft Litig*., 2012 U.S. Dist. LEXIS 113621, at *51.

*Nat'l Bank*, 208 F. Supp. 2d 1352, 1378-79 (S.D. Fla. 2002), *aff'd*, 344 F.3d 1123 (11th Cir. 2003) (court issued written reprimand as a sanction where a party failed to make a complete production, remarking that the party's "failure to timely produce known, requested and discoverable documents [was] . . . a serious procedural and ethical violation . . . one that cannot be dismissed lightly, even where the failure is the result of mere carelessness."); *Bernal v. All Am. Inv. Realty, Inc*., 479 F. Supp. 2d 1291, 1298 (S.D. Fla. 2007) (counsel's issuance of discovery responses and - related statements - based on his reliance on his client's assurances amounts to a failure of counsel "to undertake the most basic first step in the performance of his duties as counsel and an officer of the Court, which is to review the records he is relying on").  Likewise, the process by which Comerica responded to Plaintiffs' discovery requests presents a serious problem that cannot be overlooked.

## IV. Conclusion

For the reasons set forth above, Plaintiffs' motion should be granted.   In particular, Plaintiffs respectfully request that the Court enter an order directing that:

1.  Comerica and its counsel (or agreed upon vendor) search the email accounts of every one of the 60-75 custodians for responsive emails, documents and ESI, and produce all responsive emails, documents and ESI not previously produced and provide Plaintiffs' counsel with a declaration and/or affidavit confirming that this has been done, and describing the steps by which it was undertaken;

2.  Plaintiffs be afforded the opportunity, at Comerica's expense, to re-depose all current or former Comerica witnesses, in Miami, in the event that the supplemental search of emails, documents and ESI reveals new emails, documents and ESI, and the

opportunity to depose, in Miami, all other current or former Comerica employees from whom additional emails, documents and ESI are produced;

3.   The current fact discovery deadline be suspended until the above tasks are completed, and the parties be ordered to file a status report every two (2) weeks on their progress in this regard;

4.   Comerica and/or its counsel be sanctioned including, but not limited to, paying the fees and expenses of Plaintiffs' counsel associated with the supplemental review of emails, documents and ESI to be produced, and the re-deposition and/or additional depositions to be taken as a result thereof; and

5.   Such other relief as this Court deems appropriate.

## LOCAL RULE 7.1 CERTIFICATE

Pursuant to Local Rule 7.1(a)(3), Plaintiffs' counsel certify that they have made reasonable efforts to confer with counsel for Comerica (which included several telephone calls and written correspondence), but have been unable to resolve the issues raised herein.

Dated: August 24, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst                          /s/ Bruce S. Rogow
Aaron S. Podhurst, Esquire                     Bruce S. Rogow, Esquire
Florida Bar No. 063606                         Florida Bar No. 067999
apodhurst@podhurst.com                         brogow@rogowlaw.com
Robert C. Josefsberg, Esquire                  Bruce S. Rogow, P.A.
Florida Bar No. 40856                          Broward Financial Center
rjosefsberg@podhurst.com                       500 East Broward Boulevard
Steven C. Marks, Esquire                       Suite 1930
Florida Bar No.  516414                        Fort Lauderdale, FL  33394
smarks@podhurst.com                            Tel: 954-767-8909
Peter Prieto, Esquire                          Fax: 954-764-1530
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

| | |
|---|---|
| /s/ E. Adam Webb | /s/ Michael W. Sobol |
| E. Adam Webb, Esquire | Michael W. Sobol, Esquire |
| Georgia Bar No. 743910 | California Bar No. 194857 |
| Adam@WebbLLC.com | msobol@lchb.com |
| Matthew C. Klase, Esquire | Roger N. Heller, Esquire |
| Georgia Bar No. 141903 | California Bar No. 215348 |
| Matt@WebbLLC.com | rheller@lchb.com |
| G. Franklin Lemond, Jr., Esquire | Jordan Elias, Esquire |
| Georgia Bar No. 141315 | California Bar No. 228731 |
| FLemond@WebbLLC.com | jelias@lchb.com |
| WEBB, KLASE & LEMOND, L.L.C. | LIEFF CABRASER HEIMANN & |
| 1900 The Exchange, S.E. | BERNSTEIN L.L.P. |
| Suite 480 | Embarcadero Center West |
| Atlanta, GA 30339 | 275 Battery Street, 30th Floor |
| Tel: 770-444-9325 | San Francisco, CA 94111 |
| Fax: 770-444-0271 | Tel: 415-956-1000 |
| | Fax: 415-956-1008 |

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

### CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596