# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*McKinley v. Great Western Bank*
S.D. Fla. Case No. 1:10-cv-22770-JLK
W.D. Mo. Case No. 4:10-cv-595

**JOINT DECLARATION OF ROBERT C. GILBERT AND JEFFREY M. OSTROW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**

Robert C. Gilbert and Jeffrey M. Ostrow declare as follows:

1. We are Class Counsel for Plaintiff and the proposed Settlement Class in the Action against Great Western Bank.[1] We submit this declaration in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

2. Following litigation and settlement negotiations, Plaintiff, Class Counsel and Great Western Bank ("GWB" or the "Bank") entered into a Settlement Agreement and Release ("Settlement" or "Agreement"), under which GWB will: (i) pay $2.2 million in cash to create a

---

[1] All capitalized defined terms have the same meaning as defined in the Settlement Agreement and Release attached as Exhibit A to Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class.

common fund for the benefit of the Settlement Class; (ii) maintain Low-to-High Posting or a Chronological Posting Order for a period of two years; (iii) refrain for two years from: (a) assessing more than five (5) Overdraft Fees per Account on any single business day and (b) assessing an Overdraft Fee unless an Account is negative by more than Ten Dollars ($10.00); and (iv) separately pay all fees and expenses associated with Class Notice and Settlement Administration.

3. Under the Settlement, the overwhelming majority of Settlement Class Members will automatically receive pro rata distributions from the Net Settlement Fund in proportion to the actual harm that each of them sustained.

4. GWB lacks account data for members of the Settlement Class who opened Accounts prior to January 1, 2005. For the benefit of those Unidentifiable Settlement Class Members, the Settlement Administrator shall disburse a portion of the Settlement Fund pursuant to the Initial *Cy Pres* Distribution Program.

5. The Action involves sharply opposed positions on several fundamental legal and factual issues. Plaintiff and Class Counsel maintain that the claims asserted in the Action are meritorious; that Plaintiff and the Settlement Class would establish liability and recover damages if the Action proceeded to trial; and that the final judgment ultimately recovered in favor of Plaintiff and the Settlement Class would be affirmed on an appeal. Plaintiff's and the Settlement Class' ultimate success in the litigation require them to prevail, in whole or in part, at all of these junctures. On the other hand, GWB maintains that the claims asserted in the Action lack merit in whole or in part; that Plaintiff and the Settlement Class would not prevail on liability and/or recover substantial damages if the Action proceeded to trial; and that any judgment ultimately entered against GWB would not survive on appeal. Conversely, GWB's success at any one of

these junctures could or would spell defeat for Plaintiff and the Settlement Class. Thus, continued litigation poses significant risks and countless uncertainties, as well as the time, expense and delays associated with trial and appellate proceedings, particularly in the context of complex multi-district litigation.

6. In light of the risks, uncertainties and delays associated with continued litigation, the Settlement represents a significant achievement by providing guaranteed benefits to the Settlement Class in the form of direct cash payments and other valuable relief.

### A. Background of the Litigation.

7. Plaintiff sued on behalf of himself and all others similarly situated who incurred Overdraft Fees as a result of GWB's practice of Debit Re-Sequencing. Plaintiff alleged that GWB systemically engaged in Debit Re-sequencing to maximize its Overdraft Fee revenues. According to Plaintiff, GWB's practices violated its contractual and good faith duties, were substantively and procedurally unconscionable, violated state unfair trade practices laws, and resulted in conversion and unjust enrichment.

8. GWB denied all of Plaintiff's allegations of wrongdoing. GWB consistently argued, *inter alia*, that its Account agreements expressly authorize the very practice of Debit Re-sequencing challenged by Plaintiff; that it fully disclosed its Debit Re-sequencing practices to its customers; that no unconscionability claim lies for the recovery of damages; that no conversion claim exists; that Plaintiff cannot maintain unjust enrichment claims; and that the statutory consumer protection claim is defective. While the Court denied an Omnibus Motion to Dismiss filed by banks in the First Tranche on the same and other issues, it indicated that facts developed through discovery could be relevant to these defenses.

B.   **Class Counsel's Investigation.**

9.   Class Counsel devoted substantial time and resources to researching and developing the legal claims at issue, before and after the litigation began. Class Counsel interviewed GWB customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers. This information was essential to Class Counsel's ability to understand the nature of GWB's conduct, the language of the Account agreements at issue, and potential claims for relief and remedies.

C.   **The Course of Proceedings.**

10.   On June 15, 2010, Plaintiff Michael McKinley filed a Class Action Complaint seeking monetary damages, restitution and declaratory relief from GWB based on its alleged unfair assessment and collection of Overdraft Fees on Debit Card Transactions. On July 23, 2010, the Judicial Panel on Multi-District Litigation transferred the case to this Court for inclusion in MDL No. 2036.

11.   On December 6, 2010, Plaintiff filed an Amended Class Action Complaint. [DE # 995]. On January 20, 2011, GWB filed a Motion to Dismiss. [DE # 1077]. On March 16, 2011, the Motion to Dismiss was denied. [DE # 1296]. On April 20, 2011, GWB filed an Answer and Affirmative Defenses. [DE # 1356]. On May 16, 2011, Plaintiff filed a Motion to Strike Defendant's Affirmative Defenses. [DE # 1478]. On June 3, 2011, GWB filed its Response to Plaintiff's Motion to Strike. [DE # 1574]. On June 16, 2011, Plaintiff and GWB filed a stipulation whereby GWB agreed to amend its Answer and Plaintiff agreed to withdraw the Motion to Strike. [DE # 1606]. On July 7, 2011, pursuant to that stipulation, GWB filed its Amended Answer and Affirmative Defenses. [DE # 1700].

12.   On May 23, 2011, Plaintiff propounded his first request for production of documents, first set of interrogatories and first requests for admissions. On October 17, 2011,

Plaintiff propounded a second request for production. GWB thereafter produced a significant number of documents in response to the production requests

13.     Beginning in October 2011, Class Counsel and GWB engaged in preliminary settlement discussions. In connection with those discussions, GWB provided Class Counsel with sample customer transactional data and summary information regarding its Overdraft Fee revenues on Debit Card Transactions. Class Counsel and their expert analyzed this data. Thereafter, Class Counsel and GWB negotiated the material terms of the Settlement and signed a Memorandum of Understanding on December 13, 2011, which memorialized, subject to a mutually agreeable written Settlement Agreement and subject to Preliminary Approval and Final Approval by the Court, as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally and forever resolve, discharge and release all rights and claims of the Settlement Class Members in exchange for GWB's agreement to pay the sum of $2.2 million to create a common fund for the benefit of the Settlement Class as well as significant non-cash practice change relief involving its Posting of Debit Card Transactions and its practice of assessing Overdraft Fees. GWB also agreed to pay the costs and fees associated with providing Class Notice and for Settlement Administration.

14.     On December 19, 2011, the Parties filed a Notice of Settlement with this Court. [DE #2240]. During ensuing months, Class Counsel and GWB negotiated the comprehensive terms of the Settlement, which included addressing limitations based on GWB's data and the appropriate damage allocation and distribution of the Settlement Fund. The Parties signed the Agreement on August 7, 2012.

15.     At all times throughout the negotiations, the Parties and counsel were adversarial, non-collusive and the negotiations were at arm's length.

5

**D.      Settlement Recovery.**

16.     The Settlement requires GWB to deposit $2.2 million into an Escrow Account within 14 days of Preliminary Approval. That deposit will create the Settlement Fund, which shall be used for the following purposes: (i) distribution of payments to Settlement Class Members; (ii) payment of the *Cy Pres* Distribution Amount; (iii) payment of Court-ordered attorneys' fees, costs and expenses of Class Counsel; (iv) payment of the a Service Award to the Plaintiff; (v) payment of the costs of the Escrow Agent and Tax Administrator; (vi) distribution of residual funds, if any; and (vii) any additional fees, costs and expenses not specifically enumerated in paragraph 57(a)-(e), subject to approval of Settlement Class Counsel and GWB. In addition to the $2.2 million Settlement Fund, GWB is separately responsible for paying all costs and fees associated with the Notice Administrator's costs and fees for Class Notice and the Settlement Administrator's costs and fees for Settlement Administration.

17.     All identifiable Settlement Class members who experienced a Positive Differential Overdraft Fee will receive *pro rata* distributions from the Net Settlement Fund. The analysis determines, among other things, which GWB Account holders were assessed Additional Overdraft Fees that would not have been assessed if the Bank had used an alternative posting sequence or method for posting Debit Card Transactions other High-to-Low Debit Transaction Posting" and how much in Additional Overdraft Fees those Account holders paid. The calculation involves a multi-step process that is described in detail in the Agreement.

18.     The Net Settlement Fund – which will be distributed *pro rata* among identifiable Settlement Class Members – is equal to the Settlement Fund plus accrued interest earned (if any), less the *Cy Pres* Distribution Amount; the amount of Court-awarded attorneys' fees, costs and expenses to Class Counsel; the amount of the Court-awarded Service Award to the Plaintiff, the amount of expenses incurred in connection with maintaining the Escrow Account; the costs

6

associated with investing in the Instruments (if any), a reservation of a reasonable amount of funds for prospective costs of tax administration; and other costs and/or expenses incurred in connection with the Settlement not specifically enumerated in paragraph 75 of the Agreement but that are expressly provided for in the Agreement or that have been approved by Settlement Class Counsel and counsel for GWB.

19. Settlement Class Members do not have to submit claims or take any other affirmative steps to receive relief under the Settlement. The amount of their *pro rata* distributions will be determined by Class Counsel and their expert through analysis of GWB's data. Within 30 days after the Effective Date, GWB and the Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members entitled to a distribution.

20. Payments to Settlement Class Members who are Current Account Holders will be made by the Bank crediting such Settlement Class Members' Accounts, and notifying them of the credits. GWB will then be entitled to a reimbursement for such credits from the Settlement Fund. Former Account Holders and Current Account Holders whose Accounts cannot feasibly be automatically credited, will receive payments from the Settlement Fund by checks mailed by the Settlement Administrator. Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Fund payments. The *Cy Pres* Distribution Amount will be disbursed within 30 days of the Effective Date of the Agreement.

21. Any residue still remaining after the one-year period will be used to pay any costs related to Settlement Administration and Notice Administration not otherwise payable by GWB and then to *cy pres* recipients pursuant to the Residual *Cy Pres* Program.

22. Although GWB maintains customer Account records for most customers for the majority of the Class Period and the Parties are able to calculate the amount of the distribution from the Settlement Fund to which identifiable Settlement Class Members are entitled, GWB is missing information to identify customers who opened Accounts prior to January 1, 2005, and who may be members of the Settlement Class. The Parties are unable to calculate the precise amount of payments due to those Unidentifiable Settlement Class Members. Nor is it possible for those Unidentifiable Settlement Class Members to determine whether they are members of the Settlement Class or to calculate the amount that they may be due.

23. For the benefit of the Unidentifiable Settlement Class Members who were assessed an Overdraft Fee as a result of Debit Re-sequencing on Accounts prior to January 1, 2005, and for whom GWB lacks sufficient information to identify the respective amounts such Unidentifiable Settlement Class Members may be due, the Settlement Administrator shall disburse a portion of the Settlement Fund through the Initial *Cy Pres* Program. Based upon a review of the available data, Class Counsel estimate that between two percent (2%) and five percent (5%) of the Settlement Class' damages occurred during the period for which data is unavailable. Consequently, the amount of the Initial *Cy Pres* Payment to *cy pres* recipients shall not be less than 2% and shall not exceed 5% of the Settlement Fund. Because Settlement Class Members for those periods cannot be identified and, therefore, payments cannot be made directly to them, between 2% and 5% of the Settlement Fund will be allotted to a *cy pres* program that is intended to benefit consumer financial literacy education and/or to educate consumers with financial issues through advisory and related services (excluding litigation). The *cy pres* recipients under the Initial *Cy Pres* Program will be agreed upon by the Bank and Settlement Class Counsel, and approved by the Court.

24. In addition to the $2.2 million cash recovery, Plaintiff secured significant non-cash relief on behalf of the Settlement Class.

25. On or about July 1, 2010, GWB changed its Posting order policy for Debit Card Transactions for Accounts from High-to-Low Debit Transaction Posting to Low-to-High Posting. GWB acknowledges that this change in Posting order policy was instituted as a result of this litigation. GWB has agreed to maintain Low-to-High Posting or a Chronological Posting Order for a minimum period of two (2) years from the Effective Date. This will ensure that members of the Settlement Class who are current Account holders, as well as other current Account holders, no longer incur Overdraft Fees due to Deibt Re-sequencing.

26. GWB's current Overdraft Fee assessment policies include: (a) assessing Accounts a maximum of five (5) Overdraft Fees on any single business day; and (b) requiring a minimum negative balance of Ten Dollars ($10.00) before assessing an Overdraft Fee on an Account. As additional relief for the Settlement Class, GWB has agreed to maintain these policies for a minimum period of two (2) years from the Effective Date of the Agreement.

### E. **Class Release**

27. In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released GWB from claims related to the subject matter of the Action.

### F. **Class Notice and Settlement Administration.**

28. Settlement Class Counsel and GWB selected and GWB retained Hilsoft Notifications ("Hilsoft") and Epiq Systems, Inc., leading class action notice and settlement administration experts, to serve as the Notice Administrator and Settlement Administrator, respectively, for the Settlement. The Notice Program is designed to provide the best notice practicable, and is tailored to take advantage of the information GWB has available about the

Settlement Class. GWB will pay all fees and costs of the Notice Administrator and the Settlement Administrator. The Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Fee Application and request for a Service Award for the Plaintiff, and their rights to opt-out of the Settlement Class and object to the Settlement. The Notices and Notice Program constitute sufficient notice to all persons entitled to notice. The Notices and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

29. The Notice Program is comprised of three parts: (1) direct mail postcard notice ("Mailed Notice") to all identifiable members of the Settlement Class; (2) publication notice ("Published Notice") designed to reach those members of the Settlement Class for whom direct mail notice is not possible; and (3) a "Long Form" notice with more detail than the direct mail or publication notices, that will be available on the Settlement Web Site (www.GreatWesternBankOverdraftSettlement.com) and via mail upon request.

30. All forms of Notice to the Settlement Class will include, among other information: a description of the Settlement; a date by which members of the Settlement Class may exclude themselves from or "opt out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date on which the Final Approval Hearing will occur; and the address of the Settlement Website at which members of the Settlement Class may access the Agreement and other related documents and information.

31. The Long-Form notice will also describe the procedure that members of the Settlement Class must use to opt out of the Settlement or to object to the Settlement, and/or to Class Counsel's application for attorneys' fees and expenses. All opt-outs and objections must

be postmarked by the Opt-Out Deadline. For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any such cases, and any relevant orders issued in response to such past objections; the identity of the objector's counsel; any agreements relating to the objection or the process of objecting between the objector or the objector's counsel and any other person or entity; a statement confirming whether the objector will appear at the Final Approval hearing and a description of counsel or witnesses who will appear on behalf of the objector at the Final Approval hearing; and the objector's signature.

### a. **The Mailed Notice Program**

32.     The Settlement Administrator will implement the Mailed Notice Program. Within 28 days from the date that the Settlement Administrator receives the data files that identify the names and last known addresses of the identifiable members of the Settlement Class, the Settlement Administrator will run such addresses through the National Change of Address Database, and will mail to all such Settlement Class Members postcards that contain the Mailed Notice ("Initial Mailed Notice"). To coordinate the Mailed Notice Program with the Published Notice Program, within one business day of its receipt of the data files described above, the Settlement Administrator will inform the Notice Administrator by email that it has received such data files.

33.     The Settlement Administrator will perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable. No later than 35 days from the Initial Mailed Notice date, the Settlement Administrator will complete the re-mailing of Mailed Notice

postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process").

34. The Mailed Notice Program (which is comprised of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 35 days from the Initial Mailed Notice Date. Within seven days after the date the Settlement Administrator completes the Notice Re-mailing Process, the Settlement Administrator shall provide Settlement Class Counsel and GWB's counsel an affidavit that confirms that the Mailed Notice Program was completed in a timely manner. Settlement Class Counsel shall file such affidavit with the Court as an exhibit or in conjunction with Plaintiff' Motion for Final Approval.

35. All fees and costs of the Settlement Administrator associated with the Mailed Notice Program will be paid by GWB.

### b. The Published Notice Program

36. The Published Notice Program, for which Hilsoft is responsible, will be comprised exclusively of publishing notice in major newspaper publications covering the major markets in which GWB operates branches.. The Published Notice Program will be completed no later than 28 days following the Initial Mailed Notice Date.

37. Within seven days after the date the Notice Administrator completes the Published Notice Program, the Notice Administrator shall provide Settlement Class Counsel and counsel for GWB with one or more affidavits that confirm that Published Notice was given in accordance with the Published Notice Program. Settlement Class Counsel shall promptly file such affidavit(s) with the Court.

38. All fees and costs of the Notice Administrator associated with the Published Notice Program will be paid by GWB.

### c. The Settlement Website and the Toll-Free Settlement Line

39. The Settlement Administrator will establish and maintain an automated toll-free telephone line for all members of the Settlement Class to call with Settlement-related inquiries, and answer the questions of Settlement Class members who call with or otherwise communicate such inquiries. The Settlement Administrator will establish a Settlement Website as a means for members of the Settlement Class to obtain notice of, and information about, the Settlement. The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Notice Program. The Settlement Website will include hyperlinks to the Settlement, the Long-Form Notice, the Claim Form, the Preliminary Approval Order, and such other documents as Settlement Class Counsel and counsel for GWB agree to post or that the Court orders posted on the Settlement Website. These documents will remain on the Settlement Website at least until Final Approval.

40. The Settlement Administrator will establish and maintain an automated toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries, and answer the questions of members of the Settlement Class who call with or otherwise communicate such inquiries.

### G. Service Award, Attorneys' Fees And Costs

41. Class Counsel will seek and GWB will not oppose a Service Award of $5,000 for the named Plaintiff. If the Court approves it, the Service Award will be paid from the Settlement Fund, and will be in addition to the other relief the named Plaintiff will be entitled to as a Settlement Class Member. This award will compensate the named Plaintiff for his time and effort in the Action, and for the risk he undertook in prosecuting the Action against GWB.

42. GWB will not oppose Class Counsel's request for attorneys' fees of up to thirty percent (30%) of the value of the Settlement, plus reimbursement of litigation costs and expenses.

43. Class Counsel and GWB negotiated and reached the agreement regarding the Service Award, as well as attorneys' fees and costs, after reaching agreement on all other material terms of the Settlement.

### H. Considerations Supporting Settlement

#### 1. The Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations

44. Settlement negotiations were informed by the experience of counsel for both sides in the litigation, certification, trial and settlement of nationwide class action cases. In particular, Class Counsel had the benefit of years of experience and a familiarity with the facts of this case as well as with other cases involving similar claims.

45. As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiff's claims and GWB's defenses, and engaged in formal discovery. Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central legal and factual issues in the case, and prepared counsel for well-informed settlement negotiations.

46. Class Counsel have a thorough understanding of the practical and legal issues they would continue to face litigating these claims against GWB based, in large part, on similar claims challenging Wells Fargo's high-to-low posting practices prosecuted in *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-5923 (N.D. Cal), that resulted in a $203 million judgment in favor of the certified class of California customers. Wells Fargo appealed the final judgment in *Gutierrez* to the Ninth Circuit, which held oral argument on May 15, 2012.

47. Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them, as a result of *Gutierrez* and other post-*Gutierrez* settlements of similar claims reached within and outside of MDL 2036.

### 2. Risks Associated with Trial Favor Settlement

48. While Class Counsel are confident in the strengths of our case, they are also pragmatic in our awareness of the various defenses available to GWB, and the risks inherent in continued litigation. Plaintiff and the Settlement Class face the risk of dismissal on various theories advanced at the motion to dismiss stage, including legal challenges to the common law and state statutory claims. The success of Plaintiff's and the Settlement Class' claims in future litigation turns on these and other questions that were certain to arise in the context of motions for summary judgment and at trial.

49. Protracted litigation carries inherent risks and inevitable delay. Under the circumstances, Class Counsel determined that the Settlement outweighs the risks of continued litigation.

### 3. The Settlement Amount is Reasonable Given the Range of Possible Recovery.

50. Given the risks in this case and inherent in litigation, the $2.2 million cash recovery and GWB's agreement to maintain Low-to-High Posting or a Chronological Posting Order and to the other Overdraft Fee practice commitments is a significant recovery. The $2.2 million cash portion of the Settlement alone represents approximately fifty percent 50% of the most probable damages that Plaintiff and Settlement Class Members could have recovered if they were to prevail all the way through at trial and on appeal. The percentage recovery is even higher when one considers that costs associated with Class Notice and Settlement Administration

15

will not be subtracted from the Settlement Fund because GWB has agreed to pay those costs separately.

51. The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff succeeded in certifying a multistate class and the Eleventh Circuit declined to accept GWB's inevitable rule 23(f) petition; (ii) Plaintiff and the certified class established liability at trial; (iii) Plaintiff and the certified class recovered damages at trial; and (iv) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of GWB's defenses, and the challenging and unpredictable path of litigation that Plaintiff and the Settlement class would have faced absent the Settlement.

### 4. The Complexity, Expense, and Duration of Ongoing Litigation Favors Settlement.

52. The Settlement is the best vehicle for Settlement Class Members to receive the relief to which they are entitled in a prompt and efficient manner. Ongoing litigation would involve substantial, expensive fact and expert discovery, lengthy additional pretrial proceedings in this Court and the appellate courts and, ultimately, a trial and appeal. Absent the Settlement, the Action would likely continue for two or more years.

### 5. Proceedings are at an Appropriate Stage for Settlement.

53. Plaintiff and Class Counsel settled the Action with the benefit of motion practice and discovery, including the review of documents and electronic data produced by GWB. Review of those documents and data positioned Class Counsel to evaluate with confidence the strengths and weaknesses of Plaintiff's claims, GWB's defenses, and the prospects for success on issues of class certification, summary judgment and trial.

### I.     Class Certification For Settlement Purposes

54. Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

55. The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of thousands of people throughout several states, and joinder of all such persons is impracticable.

56. The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on GWB's systematic practice of Debit Re-sequencing, as alleged in the operative complaint.

57. Plaintiff is typical of absent members of the Settlement Class because he suffered the same injuries, and because he will benefit from the relief provided by the Settlement.

58. Adequacy is established because Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and absent members of the Settlement Class have an equal interest in the relief offered by the Settlement, and absent members of the Settlement Class have no diverging interests. Further, Class Counsel are qualified and competent and have extensive experience prosecuting complex class actions, including consumer actions similar to the Action. Class Counsel have devoted substantial time and resources to the Action from inception through the date of the Settlement.

59. Plaintiff satisfies the predominance requirement because liability questions common to all members of the Settlement Class substantially outweigh any possible issues that are individual to each member of the Settlement Class. For example, each Settlement Class Member's relationship with GWB arises from an Account agreement that is the same in all relevant respects to other Settlement Class Members' Account agreements.

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Miami, Florida on August 24, 2012.

/s/ Robert C. Gilbert
Robert C. Gilbert

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Florida, on August 24, 2012.

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow