UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:
THIRD TRANCHE ACTIONS

*Duval v. Citizens Financial Group, Inc.*
N.D. Ill. Case No. 1:10-cv-00533
S.D. Fla. Case No. 1:10-cv-21080-JLK

*Daniels v. Citizen Financial Group, Inc.*
D. Ma. Case No. 10-cv-10386
S.D. Fla. Case No. 1:10-cv-22014-JLK

*Blankenship v. RBS Citizens, N.A.*
D. RI. Case No. 10-cv-02718
S.D. Fla. Case No. 1:10-cv-22942-JLK

APPENDIX I

**PLAINTIFFS' PROPOSED TRIAL PLAN FOR TRIAL OF CLASS CLAIMS**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     PRESENTATION OF COMMON PROOF FOR EACH CAUSE OF ACTION .............. 3

        A.     Plaintiffs Will Prove with Common Evidence that Citizens Breached the Covenant
               of Good Faith and Fair Dealing.................................................................... 3

        B.     Plaintiffs Will Prove with Common Evidence that Citizens' Overdraft Practices are
               Substantively and Procedurally Unconscionable ........................................... 6

        C.     Plaintiffs Will Prove With Common Evidence that Citizens Has Been Unjustly
               Enriched .................................................................................................... 8

        D.     Plaintiffs Will Prove with Common Evidence that Citizens Violated the Unfair
               Competition Laws of Massachusetts, New York, Pennsylvania and Vermont................ 9

        E.     Plaintiffs Will Prove with Common Evidence Causation and the Amount
               of Damages............................................................................................... 10

III.    APPLYING MULTISTATE LAW................................................................................ 11

        A.     The Three Breach Of Contract And Implied Covenant Of Good Faith And Fair
               Dealing Subclasses Are Manageable .......................................................... 13

        B.     The Three Unjust Enrichment Subclasses are Manageable ........................... 14

        C.     The Three Unconscionability Subclasses Are Manageable ........................... 16

        D.     The Four Unfair and Deceptive Trade Practices Acts Subclasses are Manageable....... 17

## I.      INTRODUCTION

Plaintiffs submit this trial plan in support of their motion for class certification.  This plan provides a detailed outline to aid the Court in assessing how a single trial can be conducted against RBS Citizens, N.A. and Citizens Bank of Pennsylvania (collectively, "Citizens" or the "Bank") on behalf of multiple classes under multiple state laws in an efficient and manageable manner.[1]   Because discovery is not yet complete, this plan is, by necessity, preliminary. Plaintiffs reserve the right to suggest changes to this plan in advance of trial in light of the completion of discovery, reports from experts, changes in the law, orders arising from summary judgment motions or later addition of class representatives.  Discovery conducted to date, however, demonstrates that trial of this action on a class-wide basis will present no unduly challenging manageability issues.

Unlike certain other class actions involving contractual claims, in this case Citizens used uniform form contracts for all Class members with similar, if not identical, terms.  Class members nationwide were required to accept Citizens' non-negotiable terms.  Citizens' own witnesses and documents will demonstrate that Citizens applied its overdraft policies uniformly to all Class members and that the banks that Citizens acquired became subject to these same terms.  These witnesses and documents will also demonstrate Citizens' uniform, unlawful scheme to impose and collect overdraft fees of hundreds-of-millions of dollars.  Consequently, certification of the Class will not present any insuperable manageability issues and will instead

---

[1] Rule 23 does not require submission of a trial plan, but "[a]n increasing number of courts require a party requesting class certification to present a 'trial plan' that describes the issues likely to be presented at trial and tests whether they are susceptible of class-wide proof." Fed. R. Civ. P. 23, Advisory Committee Note (2003 amendments).  The Eleventh Circuit does not require trial plans but recommends that plaintiffs present feasible trial plans in support of class certification. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1279 n.20 (11th Cir. 2009).

make possible a fair and efficient resolution of claims that are uniform to hundreds-of-thousands of Citizens' customers.

Plaintiffs envision at this time a single trial with the following procedural steps:

(1)    Plaintiffs will present their case-in-chief, submitting common evidence of Citizens' wrongdoing, class-wide injury, and total damages;

(2)    Citizens will present the defenses it wishes to advance, with the burden having shifted to Citizens;

(3)    Plaintiffs will present their rebuttal case; and

(4)    The Court will enter a verdict based on Special Verdict Forms that take into consideration the minor variations, if any, among state laws.

Plaintiffs anticipate that trial of this action will take nine days. In *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080, 1126 (N.D. Cal. 2010), a case involving similar allegations, the plaintiffs put on their case before U.S. District Judge William Alsup in the Northern District of California in five days and defendants in four. The trial of the case at bar should be of similar length and there is no reason to believe that it will take any longer. Plaintiffs here, like the plaintiffs in *Gutierrez*, will present their case through a handful of Citizens' own witnesses and documents, Citizens' third-party consultants, and Plaintiffs' expert, Arthur Olsen, the same expert qualified by Judge Alsup in *Gutierrez*. Citizens' overdraft policies were essentially uniform during the entire Class Period throughout its geographic footprint, so that presentation of evidence demonstrating Citizens' wrongful conduct will not be overly complex.

If a verdict for the Plaintiffs results, judgment in a total, single monetary sum will be entered in favor of the Class. A post-judgment administrative proceeding will follow, in which

Citizens' data will be used to distribute checks (or direct deposits) to each individual Class member based on Mr. Olsen's calculations and the applicable statute of limitations. This will be done systematically and without any requirement that the Class members submit proofs of claim. Plaintiffs will ask the Court to approve the final allocation of damages.[2] If a verdict is returned in favor of Citizens, judgment dismissing the action with prejudice would be entered.

## II.  PRESENTATION OF COMMON PROOF FOR EACH CAUSE OF ACTION

In order to prove their claims, Plaintiffs will rely on common proof for all of their causes of action that is derived from Citizens' own witnesses and documents, Citizens' consultants and documents and Plaintiffs' expert.  Plaintiffs set forth below an evidentiary outline that demonstrates how this case will be tried as a class action.

### A.  Plaintiffs Will Prove with Common Evidence that Citizens Breached the Covenant of Good Faith and Fair Dealing

The Court's omnibus order in the First Tranche denying defendants' motion to dismiss concluded that "all states recognize an implied covenant of good faith and fair dealing in every contract.[3] (The order formed the basis for the Court's denial of Citizens' Motion to Dismiss. **DE # 934**).  In addition, the Court held that "when one party is given discretion to act under a contract, said discretion must be exercised in good faith." **DE # 305** at 19.  Plaintiffs will prove with evidence common to all Class members that Citizens did not act in good faith when it

---

[2] It is common for courts to have follow-on proceedings regarding the allocation of damages, even if they involve individualized damage proceedings (which will not be necessary here). *See, e.g., Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306 (5th Cir. 2003); 3 CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS, §9:53 at 429-30 (4th ed. 2002) (collecting cases); 7B CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY K. KANE, FEDERAL PRACTICE AND PROCEDURE § 1781 (2d ed. 1986).

[3] Certain states recognize a separate and independent claim for breach of the covenant of good faith and fair dealing apart from that of breach of contract.  Other states treat breach of the covenant of good faith and fair dealing as a part of breach of contract.

exercised discretion under its deposit agreements with Class members. Proof of Plaintiffs' claims is found in Citizens' own documents and in the testimony of its witnesses.

For example, Citizens' deposit agreements are standardized form, non-negotiable contracts that are remarkably uniform across the states in which Citizens did retail business during the Class Period. *See, e.g.*, Ex. 56 – Ex. 64 (samples of account agreements or pertinent portions thereof for various years and geographic areas during the Class Period); Ex. 5 at 136:13-22, 547:11-18, 564:22-569:3. In particular, the three provisions of the deposit agreement which are of particular relevance to this action – concerning withdrawal, payment of checks and other transactions, and overdrafts/insufficient funds – were admitted by Joseph Blain, Citizens' 30(b)(6) witness on this point, to be the "same or similar throughout [the Bank's] footprint and throughout the banks that it owned." Ex. 5 at 569:4-7. The deposit agreements, given to customers when they opened an account, failed to advise customers of the invariable high-to-low posting order and contained only vague and misleading disclosures. Ex. 5 at 544:22-25. The agreements averaged over 40 pages in length and were single-spaced and in tiny print. *See, e.g.*, Ex. 56; Ex. 58; Ex. 64.

All of Citizens' deposit agreements provided for the discretionary reordering of transactions. *See, e.g.*, Ex. 57; Ex. 59. None of these uniform agreements permitted Citizens to manipulate the reordering of debit card transactions solely to create overdrafts that would not otherwise exist, to charge overdrafts when there were sufficient funds in the account, or to reorder the posting of debits over a period of days irrespective of when the transaction occurred. In doing so, Citizens violated the implied covenant of good faith and fair dealing.

In addition to the uniform deposit agreements and the testimony of Citizens' witnesses, Plaintiffs will introduce other common and uniform evidence of Citizens' breach predicated

4

upon Citizens' common policies and practices. Among other things, Citizens utilized a formulaic, automated system in order to post transactions from highest to lowest for all Class members;[4] implemented a secret line of credit applicable to all Class members designed to authorize transactions into overdraft and raised limits in order to obtain greater overdraft fees;[5] and provided unclear balance information to all Class members.[6]

Citizens' failure to clearly disclose the circumstances that would give rise to an overdraft fee,[7] and its knowledge of the adverse impact that its overdraft scheme had on Plaintiffs and the

---

[4] Plaintiffs' common proof will include documents produced by Citizens during discovery, answers to interrogatories, and the testimony of Citizens employees including Joseph Blain and A. Sue Milligan that all of the posting order changes were implemented uniformly across the entire footprint of the Bank. Ex. 3 at 60:17-20; Ex. 4 at 20; Ex. 5 at 159:12-14, 443:4-16.

[5] Throughout the Class Period, Citizens employed a secret line of credit with limits as to the amount for which the Bank would authorize a transaction above the customer's available balance. Ex. 3 at 52:7-21, 66:24-67:15; Ex. 5 at 107:7-25, 169:15-170:3, 175:18-177:14, 348:6-11, 473:24-476:2; Ex. 6 at 167:5-13; Ex. 8 at 46:11-47:4, 79:3-16; Ex. 25 at 391219, 391223; Ex. 27 at 365248; Ex. 28 at 12186; Ex. 33 at 358023. Plaintiffs' common proof regarding Citizens' non-disclosure of these limits and its manipulation of the limits to derive greater overdraft fees includes both documentary and testimony from Citizens' witnesses. *See, e.g.*, Ex. 3 at 66:24-67:15; Ex. 5 at 107:7-25, 175:18-177:14, 348:6-11; Ex. 8 at 46:11-47:4, 79:3-16; Ex. 25 at 391219; Ex. 28 at 12186; Ex. 33 at 358023.

[6] There is a host of evidence from Citizens' own witnesses and documents that it knew that customers were confused about the balance information provided to Class members. *See, e.g.*, Ex. 39 at 153611; Ex. 83 at 59853; Ex. 85 at 61334; Ex. 113; Ex. 114 at 60515. As one Citizens Senior Vice President wrote, "[t]here seems to be confusion on Customer's part on how they see if money is available" and "I see this problem in complaints where customers have made sincere efforts to avoid overdrawing by clarifying available balances, are then with an understanding that they have funds, but then find out they overdraw." Ex. 115 at 492333.

REDACTED

deposition testimony from Citizens' witnesses that there was no such disclosure (Ex. 3 at 69:8-70:8; Ex. 5 at 553:19-554:13, 598:14-18; Ex. 8 at 72:20-24), and documents showing customer confusion regarding the posting order (*e.g.*, Ex. 26 at 208956; Ex. 39 at 1536111; Ex. 83 at 59853; Ex. 84; Ex. 85 at 61334; Ex. 108 at 53400; Ex. 110 at 197050; Ex. 113 at 463104; Ex. 114 at 60515).

5

Class,[8] is also established through common proof, including the testimony of Citizens' witnesses and the documents it produced. And common proof will establish that Citizens implemented its posting order to increase overdraft fees, and it did so knowing the adverse effect such changes would have on its customers.[9]

**B.     Plaintiffs Will Prove with Common Evidence that Citizens' Overdraft Practices are Substantively and Procedurally Unconscionable**

In denying the motions by the First Tranche defendants to dismiss the complaints of the First Tranche plaintiffs, this Court found that those similar complaints sufficiently pled the following elements of procedural unconscionability:   (i) a tremendous disparity in the sophistication and bargaining power between Plaintiffs and defendants, (ii) the deposit agreements were contracts of adhesion – there was no option to negotiate their terms and the terms were contained in voluminous boilerplate language, and (iii) Plaintiffs and Class members were denied any meaningful opportunity to opt out of the overdraft programs. **DE # 305** at 28-29.

---

REDACTED

The Bank also was aware that it was deriving huge sums from accounts that were only minimally overdrafted (Ex. 10 at 316506) and that there was a "[d]isconnect between [the] size of the OD fee and the size of overdrawn balance or the transaction that ended up in the OD Queue" resulting from the "increasing use of debit cards for small transactions, coupled with the posting order." Ex. 26 at 208956.

[9] Common proof includes (a) deposition testimony from Citizens' witnesses and its consultants, (b) documents generated by Citizens' consultants showing the analysis of expected revenues from overdraft fees resulting from the new posting order and the determination to permit debit transactions to overdraft the customer's account, and (c) documents from Citizens establishing that they knew that additional overdraft fees would be "assessed because of our posting process" (Ex. 36 at 787868) and that customers would be upset by the overdrafts. *See, e.g.,* Ex. 5 at 134:8-25, 157:14-24, 158:13-160:9, 427:20-24, 344-345; 588:2-23; Ex. 9 at 791569; Ex. 11 at 308565-308569; Ex. 16 at  787726-787730, 787734-787735; Ex. 17; Ex. 24 at 320241; Ex. 36 at 787868.

The Court also ruled on substantive unconscionability in deciding those First Tranche motions to dismiss. The Court found that pleading the following elements sufficed: (i) no reasonable person would have agreed to allow the banks to post debits in a manner designed solely to maximize the number of overdraft fees, and (ii) the amount of overdraft fees imposed was unconscionably excessive because the fees were not reasonably related to the costs or risks associated with providing overdraft protection. **DE # 305** at 30-31.

Plaintiffs will prove these elements of procedural and substantive unconscionability with common evidence. That evidence will include: Citizens' retention of consultants and its financial resources and sophistication in devising its overdraft fee program and its change from a risk-oriented posting order to one that favored revenue over risk to the Bank;[10] the form contracts with boilerplate language provided by Citizens to all of its retail banking customers;[11] the absence of any meaningful opportunity for Plaintiffs and Class members to negotiate or change the terms of the deposit agreements or opt out of the overdraft program;[12] and widespread

---

[10] Citizens' documents establish that, after obtaining the assistance of consultants, it made a deliberate decision to decrease the number of buckets used in posting in order to achieve a truer and more profitable high-to-low posting order, to use high-to-low posting within the buckets, and to discontinue its risk-oriented approach to posting in order to maximize the Bank's overdraft revenues. Ex. 5 at 157:14-24, 158:24-159:1; 426:19-427:24, 592:9-595:1; Ex. 9 at 791568-791569; Ex. 11 at 308564; Ex. 15 at 215373; Ex. 16 at 787726-787730.

[11] *See, e.g.,* Ex. 56 – Ex. 64 (containing deposit agreements or pertinent portions thereof).

[12] *See* Ex. 5 at 136:13-22, 547:11-14 (relating to a customer's inability to negotiate the deposit agreements). The lack of a meaningful ability to opt-out from Citizens' overdraft program is evidenced by Citizens' own internal documents which reveal that the opt-out process was not even understood by Citizens' employees and that it was intentionally not communicated to the customers. Ex. 69 at 53064; Ex. 76 at 52582; Ex. 77 at 373162; Ex. 78 at 110600. In one document, for example, the Citizens' employee acknowledged that certain disclosures had not been made regarding the customers' ability to opt-out because "we did not want to 'advertise" [sic] the ability to opt out." Ex. 78 at 110600.

7

consumer confusion and customer complaints regarding the substantive unfairness of Citizens' overdraft scheme.[13]

**C.      Plaintiffs Will Prove With Common Evidence that Citizens Has Been Unjustly Enriched**

Plaintiffs will use common evidence to prove their unjust enrichment claims.  First, Plaintiffs will demonstrate that they and the Class members conferred a benefit on Citizens that was unjust – the payment of excessive overdraft fees.[14]  This evidence will include the testimony of Plaintiffs' expert, Arthur Olsen, which is based upon a detailed analysis of Citizens' overdraft transaction data for the Class.  *See, e.g.,* Olsen Decl., ¶¶ 43-46; *id.* ¶¶ 10-33 (summarizing his analysis in *Gutierrez v. Wells Fargo Bank, N.A.,* 730 F. Supp.2d 1080, 1104 (N.D. Cal. 2010)).  It will include the testimony of Joseph Blain who, during his deposition, identified for three of the class representatives a transaction that, as a result of Citizens' reordering of a debit transaction, resulted in more overdrafts than would have occurred through either a low-to-high or chronological order posting.[15]  Further, Plaintiffs will introduce evidence that Citizens knew that

---

[13] There were an enormous number of complaints about Citizens' overdraft policies, most of them related to overdraft fees. Ex. 22 at 819879; Ex. 26 at 208957; Ex. 104 at 151394.  Even Citizens' own employees complained that Citizens' overdraft practices were injuring the customers. Ex. 107 at 256042; Ex. 108 at 53400; Ex. 109 at 53135; Ex. 115 at 492333.  As noted by one employee in an e-mail to Joseph Blain, ". . . original fees are creating additional OD fees – based purely on how the bank is processing them.  So, a 39.00 or 78.00 fee can become a 300.00-400.00 fee, because of our procedures.  This is not keeping the heart of our customer with everything we do." Ex. 108 at 53400.  Citizens also knew that it was losing customers as a result of Citizens' failure to make them aware of the overdraft changes, their receiving multiple charges for one overdrawn transaction, and Citizens' unfair overdraft policies. Ex. 110 at 197050; Ex. 45 at 309578.

[14] REDACTED                                                                                                       and during the period 2006-2008 earned over $1.3 million per day from consumers in NSF/OD fees.  REDACTED    Citizens' 2001-2002 posting order changes were estimated by Citizens and its consultants to have provided between $40-$50 million additional revenue per year. Ex. 5 at 194:2-24, 415:2-8, 421:16-25, 680:24-682:24; Ex. 98 at 155147.

[15] *See* Ex. 5 at 523:14-22, 534:2-538:11, 540:19-542:5.

the benefit conferred – greater overdraft fee revenue – would result from its overdraft scheme.[16] Plaintiffs can therefore establish with common evidence that Citizens understood the benefit and took advantage of it to the detriment of Plaintiffs and the Class members.

**D.      Plaintiffs Will Prove with Common Evidence that Citizens Violated the Unfair Competition Laws of Massachusetts, New York, Pennsylvania and Vermont**

Plaintiffs seek to certify four separate subclasses of customers residing in states subject to the following consumer protection statutes:  (i) MASS. GEN. LAWS Chapter 93A §§ 2 and 9; (ii) NEW YORK GEN. BUS. LAW § 349; (iii) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq.*, particularly 73 P.S. § 201-2(4)(v), § 201-2(4)(xiv), and § 201-2(4)(xxi); and  (iv) VT. STAT. ANN. Tit. 9, §§2451 *et seq.*  These statutes prohibit unlawful, unfair or deceptive acts or practices.

Because Plaintiffs and all Class members have been subjected to the same conduct by Citizens, common evidence will be able to establish the violations of each of these statutory provisions.  That evidence will include the following:  Citizens reduced the numbers of posting buckets in order to create a high-to-low posting order that maximized its revenues by increasing the number of transactions that resulted in an overdraft fee;[17] used a concealed line of credit to Class members in order to maximize the amount of overdraft fees it received;[18] provided inaccurate balance information to all Class members;[19] misrepresented and failed to properly disclose the circumstances under which it would charge overdraft fees in its uniform deposit agreements;[20] was completely aware of the adverse impact that its overdraft scheme had on

---

[16] *See supra* n.9.

[17] *See supra* n.4, 9.

[18] *See supra* n.5.

[19] *See supra* n.6.

[20] *See supra* n.7, 11.

Plaintiffs and the Class;[21] and failed to provide Plaintiffs and Class members with any meaningful opportunity to opt out of its overdraft program.[22] Evidence of Citizens' financial resources, sophistication, and use of consultants in devising the overdraft fee program[23] and consumer complaints attesting to the unfairness of Citizens' scheme and documents from Citizens' employees acknowledging the validity of these complaints will constitute additional, common proof.[24]

**E.      Plaintiffs Will Prove with Common Evidence Causation and the Amount of Damages**

Plaintiffs will demonstrate the existence of causation through, *inter alia*, documents and testimony from Citizens' witnesses showing the foreseeability of injury to Class members caused by greater overdraft fees and that this injury was in fact an intended consequence of Citizens' scheme. Common proof will include internal Citizens documents and testimony showing the intended effect of its scheme, the scheme's impact on the Class, and the benefit of the scheme to Citizens.[25]

With the aid of their expert, Arthur Olsen, Plaintiffs will use common proof to demonstrate the injury to Class members and calculate total damages for the Class without any

---

[21] *See supra* n. 8.

[22] *See supra* n.12.

[23] *See supra* n.10.

[24] *See supra* n.8, 13.

[25] For example, a Citizens consultant advised it in 2001 before the adoption of the revised high-to-low posting order that the adoption of its plan was estimated to result in a 10.8% increase in the items that would be paid into overdraft and millions in additional revenues. Ex. 5 at 134:8-25, 588:2-23; Ex. 16 at 787734-35. A further adjustment to the high-to-low posting was implemented by Citizens to produce "marginally more OD fees as a result of this change (which, of course, is why it's being done in the first place)." Ex. 17. The effect of these posting changes in additional annual revenue was estimated by Citizens and its consultants to be between $40 million and $50 million. Ex. 5 at 194:2-24; 415:2-8, 421:16-25, 680:24-682:24; Ex. 98 at 155147.

need to resort to information obtained from individual Class members. Modern information management technology used by large defendants such as Citizens will simplify the calculation of damages and readily permit the adjudication of these mass claims. Citizens' sophisticated systems contemporaneously recorded and then stored the transactions during the Class period. This common evidence will be used to (i) identify the Citizens customers who were assessed additional overdraft fees due to the Bank's high-to-low posting order as compared with an alternative posting order in which, for example, debit card transactions are posted in chronological order based on authorization date and time, and (ii) calculate the amount of the additional overdraft charges that each Class member incurred during the Class Period. *See* Olsen Decl., ¶¶ 39-52.

## II.    APPLYING MULTISTATE LAW

When seeking certification of a class for which the laws of several states potentially apply, the plaintiff bears the burden of demonstrating a suitable and realistic plan for trial of the class claims and must submit an extensive analysis showing that there are no material variations among the law of the states for which certification of a class is sought. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004).[26] "[I]f applicable state laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate." *Id.*[27]

Common issues of law and fact will remain the predominant focus of this litigation, notwithstanding the potential application of multiple states' laws. The extensive analysis

---

[26] In a later decision, the Eleventh Circuit declined to explain precisely what "extensive" specifically means other than to say it must be "more than perfunctory." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010).

[27] In *Klay*, although the court reversed certification of claims for breach of contract and unjust enrichment, the court recognized that state law claims "based on a principle of law that is uniform among the states" can form a "realistic possibility" of certification. *Id.* at 1261.

embodied in this Trial Plan and in the surveys attached hereto demonstrate that applying the laws of the several states to Plaintiffs' claims here does not present any difficult manageability issues. For all of the claims, the applicable state laws can be grouped into a total of 13 subclasses sharing materially identical legal standards. Plaintiffs will present evidence of all of these elements through uniform proof derived from Citizen's documents and witnesses, or Plaintiffs' expert, as described more particularly above. Plaintiffs seeking to represent each subclass reside in one of the states belonging to that subclass or reside in states with legal claims that have elements that overlap those in the subclass; thus, they may represent Class members residing in those other states included in the subclass. *See* MANUAL FOR COMPLEX LITIGATION §§21.23, 22.754 (4th ed. 2004) (describing use of subclasses to take account of differences amongst the various states' laws and representation for each subclass); *Wooden v. Board of Regents of Univ. Sys of Georgia,* 247 F.3d 1262, 1287-88 (11th Cir. 2001) (explaining that one class representative must have standing for each subclass).

Plaintiffs propose that at the conclusion of evidence, the fact finder be provided special verdict forms that take into account these minor variations among state laws. Proposed Special Verdict Forms are attached as Exhibit E. As these proposed forms demonstrate, the differences that do exist among state laws can readily be taken into account through the use of discrete subclasses, thus ensuring careful adherence to legal requirements and mitigating any manageability issues. Indeed, the Court has already endorsed this approach in its previous order certifying subclasses against Union Bank, finding that "[t]he proposed special verdict forms and supporting surveys of law submitted by Plaintiffs with their Trial Plan illustrate that the variations among the potentially applicable state laws are not material and can be managed to permit a fair and efficient adjudication by the fact finder at trial." *Larsen v. Union Bank, N.A.,*

**DE # 1763** at 21.

**A.     The Three Breach Of Contract And Implied Covenant Of Good Faith And Fair Dealing Subclasses Are Manageable**

The common law implies the duty of good faith and fair dealing in every contract in terms of performance and enforcement.  *See* RESTATEMENT (2D) OF CONTRACTS §205 (1981) (the "RESTATEMENT OF CONTRACTS").  In other words, each party to a contract has a duty to refrain from doing anything to unfairly interfere with the rights of any other party to receive the benefits of the contract.  *Id.*  As this Court has already found, good faith and fair dealing includes exercising one's discretion in carrying out the contract in good faith.  **DE # 305** at 19.

The law of good faith and fair dealing is largely uniform.  Forty-nine jurisdictions either directly cite or paraphrase the RESTATEMENT OF CONTRACTS as to the implied covenant of good faith and fair dealing.  *See* Exhibit A at 1.  Some states treat the implied covenant of good faith and fair dealing as a separate cause of action.  *Id.*  For those that do not, the good faith and fair dealing claims are subject to the elements of that state's breach of contract claims.  *Id.*

Plaintiffs have grouped the states together into three subclasses for which materially identical legal standards apply as follows:

**Good Faith and Fair Dealing Breach Subclass No. 1**.  This subclass is comprised of states that treat the breach of the implied covenant of good faith and fair dealing as a separate cause of action; thus, a party may breach the implied covenant without breaching an express provision of the contract.  The states included are Connecticut, Delaware, New Hampshire, New Jersey and Vermont.  The common elements that must be proven to established a breach of the duty of good faith and fair dealing in these states are:  (i) a valid contract; (ii) the defendant acted in bad faith or engaged in unreasonable conduct that had the effect of preventing the plaintiff from receiving the benefits of the contract; and (iii) resulting damages.   The proposed

representatives of this subclass are Jessica Duval (New Hampshire) and Sheryl Wood (Vermont). *See* Exhibit A at 2-4; Exhibit E.

**Good Faith and Fair Dealing Breach Subclass No. 2**. This subclass treats the implied covenant claims as part of the breach of contract claims. The states included are Illinois, Indiana, Massachusetts, Michigan, New York, Ohio and Rhode Island. The common elements that must be proven to establish a breach of the duty of good faith and fair dealing in these states are: (i) a valid contract; (ii) the defendant breached the contract by unfairly interfering with the plaintiff's rights to receive benefits under the contract; and (iii) resulting damages. The proposed representatives of this subclass are Gale Hercula (Michigan), Michael L. Blankenship (Rhode Island), Jill Giordano (Rhode Island), Eric Daniels (Massachusetts), Kathleen Dwyer (Massachusetts), Marcea Taylor (Massachusetts), Richard Winkelman (Massachusetts) and Jaclyn Curtis (New York). *See* Exhibit A at 5-9; Exhibit E.

**Good Faith and Fair Dealing Breach Subclass No. 3**. This subclass treats the implied covenant as part of the breach of contract claim and requires plaintiff to show that the breach was material. Included in this subclass is the state of Pennsylvania. The common elements that must be proven to establish a breach of the duty of good faith and fair dealing in these states are: (i) a valid contract; (ii) defendant breached the contract by unfairly interfering with the plaintiff's and the subclass's rights to receive the benefits of the contract; (iii) defendant's conduct affected a fundamental purpose or essence of the contract; and (iv) resulting damages. The proposed representative of this subclass is Annie Mullen, a resident of Pennsylvania. *See* Exhibit A at 10; Exhibit E.

**B.     The Three Unjust Enrichment Subclasses are Manageable**

The law of unjust enrichment is largely uniform. Most states have simply adopted a variation of the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1,

which provides that a party may be required to make restitution if she is unjustly enriched at the expense of another.

Plaintiffs have grouped the states together into three subclasses for which materially identical legal standards apply as follows:

**Unjust Enrichment Subclass No. 1**.  These states follow the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1.  The states included are Connecticut, Illinois, Michigan, New Hampshire and Vermont.  The common elements that must be proven to establish unjust enrichment in these states are:  (i) the plaintiff conferred a benefit; (ii) the defendant accepted or retained that benefit; (iii) under circumstances that would be unjust for the defendant to retain the benefit.  The proposed representatives of this subclass are Gale Hercula (Michigan), Jessica Duval (New Hampshire), Sheryl Wood (Vermont), Annie Mullen (Pennsylvania), Jill Giordano (Rhode Island), Michael L. Blankenship (Rhode Island), Jaclyn Curtis (New York), Marcea Taylor (Massachusetts), Eric Daniels (Massachusetts), Kathleen Dwyer (Massachusetts) and Richard Winkelman (Massachusetts).  *See* Exhibit B at 1-3; Exhibit E.[28]

**Unjust Enrichment Subclass No. 2**.  The states encompassed by this subclass also follow the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1 but also require the plaintiff to prove a single additional element:  that the defendant appreciated the benefit conferred.  The states included in this subclass are Pennsylvania and Rhode Island.  The proposed representatives of this subclass are Annie Mullen (Pennsylvania), Jill Giordano (Rhode Island) and Michael L. Blankenship (Rhode Island).  *See* Exhibit B at 4; Exhibit E.

---

[28] Plaintiffs who do not reside in states grouped into this subclass may nonetheless serve as representatives of Unjust Enrichment Subclass No. 1 because they reside in states that require these same elements of unjust enrichment to be proven, in addition to other elements.

**Unjust Enrichment Subclass No. 3**. The states encompassed by this subclass follow the definition of unjust enrichment in RESTATEMENT (FIRST) OF RESTITUTION §1 but also require the plaintiff to prove that the plaintiff lacks an adequate remedy at law. The states included in this subclass are Delaware, Massachusetts, New Jersey, New York and Ohio. The proposed representatives of this subclass are Jaclyn Curtis (New York), Marcea Taylor (Massachusetts), Eric Daniels (Massachusetts), Kathleen Dwyer (Massachusetts) and Richard Winkelman (Massachusetts). *See* Exhibit B at 5-6; Exhibit E.

## C.     The Three Unconscionability Subclasses Are Manageable

The law of unconscionability is substantially uniform across all states. All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.
>
> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

U.C.C. §2-302 (2011).

Plaintiffs have grouped the states together into three subclasses for which materially identical legal standards apply as follows:

**Unconscionability Subclass No. 1**. The states in the subclass, which comprise the majority of states, require both substantive and procedural unconscionability. These states are: Connecticut, Delaware, Massachusetts, Michigan, New Hampshire, New Jersey, Pennsylvania,

16

Ohio and Rhode Island. The proposed representatives of this subclass are Annie Mullen (Pennsylvania), Eric Daniels (Massachusetts), Kathleen Dwyer (Massachusetts), Marcea Taylor (Massachusetts), Richard Winkelman (Massachusetts), Gale Hercula (Michigan), Jill Giordano (Rhode Island), Michael L. Blankenship (Rhode Island) and Jessica Duval (New Hampshire). *See* Exhibit C at 2-9; Exhibit E.

**Unconscionability Subclass No. 2**. The states in the subclass require only substantive unconscionability. These states are: New York and Vermont. The proposed representatives of this subclass are Jaclyn Curtis (New York) and Sheryl Wood (Vermont). *See* Exhibit C at 10-12; Exhibit E.

**Unconscionability Subclass No. 3.** The states in this subclass require only substantive *or* procedural unconscionability. *See* Exhibit C at 13-15; Exhibit E. The states included in this subclass are the Illinois and Indiana. The proposed representatives of this subclass are the representatives of Subclass No. 1. If the Subclass No. 1 representatives prove both substantive and procedural unconscionability, they have necessarily proved the claims of Subclass 3. The fact finder will be asked to state on the verdict form whether both procedural and substantive unconscionability are proven. *See* Exhibit E. If the answer to one inquiry or both is "yes," the Subclass 3 claims are proved. Either way, the Subclass No. 1 representatives, who have to prove both elements, are adequate representatives for Subclass No. 3.

**D.      The Four Unfair and Deceptive Trade Practices Acts Subclasses are Manageable**

The Court has ruled that Plaintiffs may only assert a state statutory claim if a named Plaintiff resides in that state. **DE # 305** at 40. Accordingly, Plaintiffs do not propose state unfair and deceptive trade practices act groupings and instead seek to certify single-state subclasses represented by Plaintiffs who reside in their home states as follows: Massachusetts, New York and Vermont. The proposed representatives of these subclasses are Eric Daniels, Kathleen

Dwyer, Marcea Taylor and Richard Winkelman for Massachusetts; Jaclyn Curtis for New York;

Annie Mullen for Pennsylvania; and Sheryl Wood for Vermont.

The applicable statutes are as follows: MASS. GEN. LAWS Ch. 93A, § 2; N.Y. GEN. BUS.

LAW § 349(a); 73 P.S. § 201-1 *et seq*; and VT. STAT. ANN. tit. 9, § 2453(a). The elements

required to prove a violation of each of these state statutes are set forth in Exhibit D; *see also*

Exhibit E.

Dated: December 16, 2011.

Respectfully submitted,

Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No. 516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

18

Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

19

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2011 I filed the foregoing document with the Clerk of the Court. I also certify that the foregoing document is being served this day, via Federal Express, on David F. Adler, Esq., Jones Day, 901 Lakeside Avenue, Cleveland, Ohio 44114 and Gabriel H. Scannapieco, Esq., Jones Day, 77 Wacker Drive, Suite 3500, Chicago, Illinois 60601-1692.

Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

21

# EXHIBIT A

# BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

## I. INTRODUCTION

Every contract imposes a duty of good faith and fair dealing in its performance and in its enforcement. *See Restatement (Second) of Contracts* §205 (1981) ("*Restatement*"). Below are surveys related to the three proposed subclasses for the breach of contract and implied covenant of good faith and fair dealing class claims. The first table sets forth those states in which Citizens Bank does business and where breach of the implied covenant of good faith and fair dealing is a separate cause of action. The second table represents those states in which Citizens Bank does business that apply a three-element test for breach of contract claims, respectively, where the implied covenant does not supply a separate cause of action. The third table lists states in which Citizens Bank does business that require a material breach in order to bring a breach of contract claim where implied covenant claims are not separate causes of action.

1

# BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| GOOD FAITH AND FAIR DEALING SUBCLASS #1 | |
|---|---|
| **IMPLIED COVENANT AS A SEPARATE CAUSE OF ACTION**<br>**(1) Valid Contract; (2) Defendant Unreasonably Interferes with Plaintiff's Rights to Receive Benefits under the Contract; (3) Resulting Damages** | |
| States | Connecticut, Delaware, New Hampshire, New Jersey, Vermont |
| Class Representatives | Jessica Duval, Sheryl Wood |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Connecticut | "[E]very contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) Landmark Investment Group, LLC v. Chung Family Realty Partnership, LLC, 125 Conn.App. 678, 693, 10 A.3d 61, 75 (2010). "A claim of a breach of the duty of good faith and fair dealing is a separate cause of action." *Blumberg Associates Worldwide, Inc. v. Brown & Brown of Connecticut, Inc.*, Superior Court, complex litigation docket at Hartford, Docket No. X04 CV 08 5023532 (May 11, 2010, Shapiro, J.); see *Lund v. Stern & Co., Superior Court*, judicial district of New Britain, Docker No. CV 94 0463413 (November 3, 1994, Stengel, J.) (13 Conn. L. Rptr. 77, 78 n. 1) ("To the extent that the plaintiff may be alleging breach of the implied covenant of good faith and fair dealing as a separate cause of action, rather than in support of his tortious breach of contract claim, courts have allowed plaintiffs to allege breach of contract and breach of the implied covenant of good faith and fair dealing"). *Michel v. Bridgeport Hosp.*, 2011 WL 1176885, *6 (March 7, 2011 Conn. Super. 2011).<br><br>"In short, the plaintiffs pleaded two separate causes of action, and it is not necessarily inconsistent for the jury to find that the breach of the express terms did not cause any injury while finding that the breach of the implied covenant of good faith and fair dealing did cause legal injury." *Froom Dev. Corp. v. Developers Realty, Inc.*, 972 A.2d 239, 247 (Conn. App. Ct. 2009). |
| Delaware | Stated in its most general terms, the implied covenant requires a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain. Thus, parties are liable for breaching the covenant when their conduct frustrates the overarching purpose of the contract by taking advantage of their position to control implementation of the agreement's terms. This Court has recognized the occasional necessity of implying contract terms to ensure the |

## BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | |
|---|---|
| | parties' reasonable expectations are fulfilled. This quasi-reformation, however, should be a rare and fact-intensive exercise, governed solely by issues of compelling fairness. Only when it is clear from the writing that the contracting parties would have agreed to proscribe the act later complained of had they thought to negotiate with respect to that matter may a party invoke the covenant's protections. *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).<br><br>Damages awarded are concurrent with those awarded for breach of the contract's explicit provisions. Typically, damages for breach of contract are limited to the non-breaching parties' expectation interest. *E.I. DuPont de Nemours*, 679 A.2d at 445. |
| New Hampshire | There is an implied covenant that the parties will act in good faith and fairly with one another in every contract. *Livingston v. 18 Mile Point Drive*, 972 A.2d 1001, 1005-06 (2009). Parties are prohibited from behavior inconsistent with: (1) the parties' agreed-upon common purpose and justified expectations; and (2) common standards of decency, fairness and reasonableness. *Id.*<br><br>A breach of contract standing alone does not give rise to a tort action for breach of good faith and fair dealing; however, if the facts constituting the breach of the contract also constitute a breach of duty owed by the defendant to the plaintiff independent of the contract, a separate tort for breach of good faith and fair dealing will lie. *Bennett v. ITT Hartford Group*, 846 A.2d 560, 564 (N.H. 2004). |
| New Jersey | Every contract in New Jersey contains an implied covenant of good faith and fair dealing. *Kalogeras v. 239 Broad Ave., L.L.C.*, 997 A.2d 943, 953 (N.J. 2010). A party shall not do anything that "will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965).<br><br>New Jersey recognizes the breach of the covenant of good faith and fair dealing as an independent cause of action. *Payne v. Fujifilm U.S.A., Inc.*, No. 07-385 (JAG), 2007 U.S. Dist. LEXIS 94765, at *34 (D.N.J. Dec. 28, 2007). The cause of action has been recognized in permitting the inclusion of terms and conditions which have not been expressly set forth in the written contract, redressing bad faith performance of an agreement even where no express term has been breached, and permitting inquiry into a party's exercise of discretion expressly granted by a contract's terms. *Id.* |

3

**BANK OVERDRAFT MDL 2036**
**BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING**

| Vermont | An implied covenant of good faith and fair dealing exists in every contract. *Carmichael v. Adirondack Bottled Gas Corp.*, 635 A.2d 1211, 1217 (Vt. 1993). The covenant of good faith prohibits dealing that is unfair (such as taking advantage of the necessitous circumstances of the other party), "'evasion of the spirit of the bargain,'" and "'abuse of a power to specify terms.'" *Id.* (citation omitted).<br><br>A breach for violation of the implied covenant may form a separate cause of action than for breach of contract, as long as the counts are based on different conduct. *Harsch Props., Inc. v. Nicholas*, 932 A.2d 1045, 1050 (Vt. 2007). |
|---|---|

4

## BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | GOOD FAITH AND FAIR DEALING SUBCLASS #2 |
|---|---|
| | **IMPLIED COVENANT NOT A SEPARATE CAUSE OF ACTION AND BREACH OF CONTRACT HAS THREE ELEMENTS:** (1) A valid contract; (2) Defendant's breach; and (3) Resulting damages |
| States | Illinois, Indiana, Massachusetts, Michigan, New York, Ohio, Rhode Island |
| Class Representative | Gale Hercula, Michael L. Blankenship, Jill Giordano Eric Daniels, Marcea Taylor, Richard Winkelman, Jaclyn Curtis, Kathleen Dwyer |
| | **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** |
| Illinois | The principle of good faith and fair dealing ensures that parties do not try to take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or to do anything that will destroy the other party's right to receive the benefit of the contract. *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131 (Ill. 2001). <br><br> Every contract implies good faith and fair dealing between the parties to it, and where an instrument is susceptible of two conflicting constructions, one which imputes bad faith to one of the parties and the other does not, the latter construction should be adopted. This good faith principle is used only as a construction aid in determining the intent of the contracting parties. Where a contract specifically vests one of the parties with broad discretion in performing a term of the contract, the covenant of good faith and fair dealing requires that the discretion be exercised reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties. A plaintiff must plead existence of contractual discretion. The good faith duty to exercise contractual discretion reasonably does not apply where no contractual discretion exists. *Mid-W. Energy Consultants, Inc. v. Covenant Home, Inc.*, 815 N.E.2d 911, 914-16 (Ill. App. Ct. 2004). <br><br> The implied covenant of good faith and fair dealing is a contractual covenant is not generally recognized as an independent source of duties giving rise to a cause of action in tort. *Voyles*, 751 N.E.2d at 1131. |
| | **Elements of Breach of Contract** |
| Illinois | The elements of a breach of contract claim are: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Henderson-Smith & Assocs. v. Nahamani Family Serv. Ctr.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001); *Sherman v.* |

## BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | |
|---|---|
| | *Ryan*, 911 N.E.2d 378, 397 (Ill. App. Ct. 2009). |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Indiana | "We decline to hold that the relationship between a bank and a checking account holder is always necessarily a fiduciary one. However, we do believe the relationship invokes a duty of good faith and fair dealing to at least the same extent as does a buyer-seller relationship. A bank is inherently in a position superior to its checking account holders, who, in order to conduct their business, must depend on the bank to protect the account holder's funds and to honor checks on the account holder's account when they are properly presented for payment. The bank and account holder relationship, like the buyer and seller relationship, is sufficient to support an inference of fraud, and Wells' pleadings thus allege the first element of constructive fraud." *Wells v. Stone City Bank*, 691 N.E.2d 1246, 1251 (Ind. Ct. App. 1998). |
| **Elements of Breach of Contract** | |
| Indiana | The elements of a breach of contract action are: the existence of a contract; the defendant's breach; and damages. *McKeighen v. Daviess County Fair Bd.*, 918 N.E.2d 717, 721 (Ind. Ct. App. 2009). Generally where one seeks recovery of damages from another whom he alleges has violated the terms of a contract, plaintiff must both allege and prove that he himself performed or offered to perform the terms of he contract up to the time of the alleged breach. *Clark Mut. Life Ins. Co. v. Lewis*, 217 N.E.2d 853, 857 (Ind. Ct. App. 1966). |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Massachusetts | Every contract in Massachusetts is subject, to some extent, to an implied covenant of good faith and fair dealing. This implied covenant may not be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, but rather concerns the manner of performance. It has been explained that the implied covenant exists so that the objectives of the contract may be realized. *Ayash v. Dana-Farber Cancer Inst.*, 822 N.E.2d 667, 683-84 (Mass. 2005). The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance under the contract. *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 964 (Mass. 2004). <br><br> The concept of good faith and fair dealing in any one context is shaped by the nature of the contractual relationship from which the implied covenant derives. The scope of the covenant is only as broad as the contract that governs the particular relationship. *Ayash*, 822 N.E.2d at 684. |
| **Elements of Breach of Contract** | |
| Massachusetts | To succeed in a breach of contract claim, plaintiffs must prove four elements: (1) that there was an agreement supported by valid consideration; (2) that they were ready, willing, and able to perform; (3) that defendant's breach prevented plaintiffs' performance; and (4) that plaintiffs suffered damages. *Singarella v. City of Boston*, 173 N.E.2d |

## BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | |
|---|---|
| | 290, 291 (Mass. 1961); *Penry v. Haese*, 925 N.E.2d 572 (Mass. App. Ct. 2010). "[Plaintiff] must show 1) there is a contract, 2) [plaintiff] performed his duties under the contract, 3) the [defendant] breached the contract, and 4) [plaintiff] suffered damages as a result of the defendants' breach. Restatement (Second) of Contracts, § 1 (1979). *Porcaro v. Chen*, No. 0402896, 2005 WL 3729056 (Mass. Super. Dec. 29, 2005) |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Michigan | Generally there exists an implied covenant of good faith and fair dealing in all contracts "'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contact.'" *Hammond v. United of Oakland, Inc.*, 483 N.W.2d 652, 655 (Mich. Ct. App. 1992). An implied covenant of good faith and fair dealing applied to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms of provides ambiguous terms or leaves the manner of performance to the parties' discretion. *Wedding Belles v. SBC Ameritech Corp., Inc.*, No. 250103, 2005 WL 292270, at *1 (Mich. Ct. App. Feb. 8, 2005). Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith. *Ferrell v. Vic Tanny Int'l, Inc.*, 357 N.W.2d 669, 672 (Mich. Ct. App. 1984).<br><br>Michigan does not recognize an action separate from an action on the underlying contract for breach of an implied covenant of good faith and fair dealing. *Belle Isle Grill Corp. v. Detroit*, 666 N.W.2d 271 (Mich. Ct. App. 2003).<br><br>However, Michigan does recognize breach of implied covenant as part of a claim for breach of contract. According to Michigan courts, there exists an implied covenant of good faith and fair dealing in all contract "that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contact." *Hammond*, 483 N.W.2d at 655. An implied covenant of good faith and fair dealing applied to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms of provides ambiguous terms or leaves the manner of performance to the parties' discretion. *Wedding Belles*, 2005 WL 292270, at *1. Where a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith. *Ferrell*, 357 N.W.2d at 672. |
| **Elements of Breach of Contract** | |
| Michigan | The essential elements of a contract are: parties competent to contract; a proper subject matter; legal consideration; mutuality of agreement and mutuality of obligation. *Detroit Trust Co. v. Struggles*, 286 N.W. 844 (Mich. 1939); *Gore v. Flagstar Bank, FSB*, 711 N.W.2d 330, 332 (Mich. 2006). |

## BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | |
|---|---|
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| New York | In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance. *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002). Implied covenant of good faith and fair dealing embraces pledge that neither party to contract shall do anything that will have effect of destroying or injuring other party's right to receive fruits of contract. *MBIA Ins. Co. v. GMAC Mortg. LLC*, 914 N.Y.S.2d 604, 611 (N.Y. Sup. Ct. 2010). <br><br> There is no separate claim for breach of the implied covenant of good faith and fair dealing; it is a form of breach of contract claim. *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). |
| **Elements of Breach of Contract** | |
| New York | The essential elements of a cause of action to recover damages for breach of contract: the existence of a contract, the plaintiff's performance under the contract, the defendant's breach of that contract, and resulting damages. *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (N.Y. App. Div. 2010) |
| **Elements of Breach of Implied Covenant of Good Faith & Fair Dealing** | |
| Ohio | The duty of good faith and fair dealing is integral to any contract. *Ireton v. JTD Realty Invs., LLC*, 2011 Ohio 670, P51 (Ohio Ct. App. 2011); *cf. Fodor v. First Nat'l Supermarkets, Inc.*, 589 N.E.2d 17, 20 (Ohio 1992) (concurrence, suggesting Ohio Supreme Court refuses to apply the implied covenant of good faith and fair dealing to employment relationships). The duty of good faith applies where one party has discretionary authority to determine certain terms of the contract and requires the parties to deal reasonably with each other. *DavCo. Acquisition Holding, Inc. v. Wendy's Int'l, Inc.*, No. 2:07-cv-1064, 2008 U.S. Dist. LEXIS 27108 (S.D. Ohio Mar. 19, 2008). <br><br> Most Ohio courts hold that there is no claim for breach of the implied covenants of good faith and fair dealing independent of a breach of contract action. *See, e.g., Mortg. Elec. Registration Sys. v. Mosley*, 2010 Ohio 2886, P49 (Ohio Ct. App. 2010). A few courts have recognized a separate cause of action in the insurance context. *Walton v. Residential Fin. Corp.*, 151 Ohio Misc. 2d 28 (Ohio 2009). |
| **Elements of Breach of Contract** | |
| Ohio | The elements of a breach of contract claim are the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff. *State v. Ferreira*, 2006 Ohio 6060 (Ohio Ct. App. 2006). |

8

## BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| | Elements of Breach of Implied Covenant of Good Faith & Fair Dealing |
|---|---|
| Rhode Island | "Virtually every contract contains an implied covenant of good faith and fair dealing between the parties." *Dovenmuehle Mortg., Inc. v. Antonelli*, 790 A.2d 1113 (R.I. 2002).  This implied covenant exists between the parties to a contract so that the contractual objectives may be achieved. *Ide Farm & Stable v. Cardi*, 297 A.2d 643, 645 (R.I. 1972).  While a claim for a breach of the covenant of good faith gives rise to a breach of contract claim, it does not give rise to an independent tort. *A. A. A. Pool Serv. & Supply v. Aetna Casualty & Sur. Co.*, 395 A.2d 724, 725-26 (R.I. 1978); *Gillette of Kingston, Inc. v. Bank R.I.*, No. WC 05-0616, 2006 R.I. Super. LEXIS 51 (R.I. Super. Ct. May 5, 2006). |
| | Elements of Breach of Contract |
| Rhode Island | Breach of contract is validly pled upon a showing of three elements: existence of a contract; breach; and resulting damages. *Rendine v. Catoia*, 52 R.I. 140, 142 (R.I. 1932). |

## BANK OVERDRAFT MDL 2036
## BREACH OF CONTRACT & IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

| GOOD FAITH AND FAIR DEALING SUBCLASS #3 | |
|---|---|
| IMPLIED COVENANT NOT A SEPARATE CAUSE OF ACTION<br>BREACH OF CONTRACT REQUIRES A MATERIAL BREACH:<br>(1) a valid contract; (2) Defendant's material breach; and (3) Resulting damages | |
| States | Pennsylvania |
| Class Representative | Annie Mullen |
| Elements of Breach of Implied Covenant of Good Faith & Fair Dealing | |
| Pennsylvania | A covenant of good faith and fair dealing is implied in every contract. *Kamco Indus. Sales, Inc. v. Lovejoy, Inc.*, No. 09-1407, 2011 WL 891825, at *7 (E.D. Pa. Mar. 10, 2011). Examples of breaches include "evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Philadelphia Plaza -- Phase II v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 2002 Phila. Ct. Com. Pl. LEXIS 14 (Pa. C.P. June 21, 2002).<br><br>A breach of the covenant of good faith is nothing more than a breach of contract claim and that separate causes of action cannot be maintained for each, even in the alternative. *JHE, Inc. v. Se. Pennsylvania Transp. Auth.*, No. 1790 NOV.TERM 2001, 2002 WL 1018941, at *7 (Pa. Com. Pl. May 17, 2002). |
| Elements of Breach of Contract | |
| Pennsylvania | Breach of contract is validly pled upon a showing of three elements: a valid contract (including its essential terms), a material breach of a duty imposed by the contract, and resulting damages. *Principal Life Ins. Co. v. DeRose*, No. 1:08-CV-2294, 2009 U.S. Dist. LEXIS 109130, at *23 (M.D. Pa. Oct. 28, 2009). Material breach is "when there is a breach of contract going directly to the essence of the contract, which is so exceedingly grave as to irreparably damage the trust between the contracting parties, the non-breaching party may terminate the contract without notice, absent explicit contractual provisions to the contrary." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 652 (Pa. 2009). |

I:\XanB\Bank Overdraft\CLASS CERT THIRD AND FOURTH TRANCHE\Citizens Bank Charts\Citizens Bank Good Faith Fair Dealing Survey final.docx

10

# EXHIBIT B

**BANK OVERDRAFT MDL 2036**

**UNJUST ENRICHMENT SUBCLASSES**

### I. OVERVIEW

Below are surveys related to the three proposed subclasses for unjust enrichment[1]. The first table sets forth those states in which Citizens Bank does business and that use the *Restatement's*[2] definition of unjust enrichment. The second table sets forth those states in which Citizens Bank does business and that use the *Restatement's* definition but add an additional element requiring that the defendant have knowledge of the benefit received. The third table lists states in which Citizens Bank does business and that allow an unjust enrichment claim only if there is an inadequate remedy at law.

| UNJUST ENRICHMENT SUBCLASS #1 | |
|---|---|
| **BASIC RESTATEMENT DEFINITION**<br>(1) Plaintiff conferred a benefit on Defendant; (2) Defendant accepts/retains benefit; (3) under circumstances it would be unjust for Defendant to retain the benefit. | |
| States | Connecticut, Illinois, Michigan, New Hampshire, Vermont |
| Class Representative | Gale Hercula, Jessica Duval, Sheryl Wood, Annie Mullen, Jill Giordano, Michael L. Blankenship, Jaclyn Curtis, Marcea Taylor, Eric Daniels, Kathleen Dwyer, Richard Winkelman |
| **Case Law** | |
| Connecticut | Unjust enrichment doctrine is based upon the principle that one should not be permitted unjustly to enrich himself at the expense of another but should be required to make restitution of or for property received, retained or appropriated. The question is: Did the party liable, to the detriment of someone else, obtain something of value to which the party liable was not entitled? Plaintiffs seeking recovery for unjust |

---

[1] Plaintiffs are not currently seeking to certify claims for unjust enrichment based on the laws of the State of Indiana, a state where Citizens Bank does business. There is no named class representative who can currently serve in that position. Plaintiffs hereby reserve the right to amend to add potential class representatives for this state.

[2] *Restatement (1st) Restitution* §1 (1937) ("*Restatement (1st) Restitution*").

# BANK OVERDRAFT MDL 2036
## UNJUST ENRICHMENT SUBCLASSES

| | |
|---|---|
| | enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 970 A.2d 592, 610 (Conn. 2009). |
| Illinois | "The doctrine of unjust enrichment underlies a number of legal and equitable actions and remedies, including the equitable remedy of constructive trust and the legal actions of assumpsit and restitution or quasi-contract. To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiffs detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (Ill. 1989) (internal citation omitted). *See also Fortech, L.L.C. v. R.W. Dunteman Co.*, 366 Ill. App. 3d 804, 818 (Ill. App. Ct. 2006) ("A plaintiff, may recover under the theory of unjust enrichment if the defendant unjustly retained a benefit to plaintiffs detriment, and defendant's retention of the benefit violates the fundamental principles of justice, equity and good conscience.") (internal quotation omitted). |
| Michigan | Under the equitable doctrine of unjust enrichment, "[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other." *Restatement (1st) Restitution* §1. The remedy is one by which "'the law sometimes indulges in the fiction of a quasi or constructive contract, with an implied obligation to pay for benefits received'" to ensure that "'exact justice'" is obtained. *Kammer Asphalt Paving Co., Inc. v. E. China Twp. Sch.*, 504 N.W.2d 635, 640 (Mich. 1993) (citation omitted). Unjust enrichment is defined as the unjust retention of money or benefits which in justice and equity belong to another. "No person is unjustly enriched unless the retention of the benefit would be unjust." *Buell v. Orion State Bank*, 41 N.W.2d 472, 478 (Mich. 1950). |
| New Hampshire | The doctrine of unjust enrichment is that one shall not be allowed to profit or enrich himself at the expense of another contrary to equity. Where there is no express contractual relationship a trial court may require an individual to make restitution for unjust enrichment if he has received a benefit that would be unconscionable to retain. *Pella Windows & Doors, Inc. v. Faraci*, 580 A.2d 732, 732-33 (N.H. 1990). |
| Vermont | The equitable doctrine of unjust enrichment rests upon the principle that a man shall not be allowed to enrich himself unjustly at the expense of another. *Legault v. Legault*, 459 A.2d 980, 984 (Vt. 1983). The elements of unjust enrichment: (1) a benefit was conferred on defendant; (2) defendant accepted the benefit; and (3) defendant retained the benefit under such circumstances that it would be inequitable for |

# BANK OVERDRAFT MDL 2036
## UNJUST ENRICHMENT SUBCLASSES

| | |
|---|---|
| | defendant not to compensate plaintiff for its value. *Reed v. Zurn*, 992 A.2d 1061, 1066 (Vt. 2010). |

**BANK OVERDRAFT MDL 2036**
**UNJUST ENRICHMENT SUBCLASSES**

| UNJUST ENRICHMENT SUBCLASS #2: | |
|---|---|
| RESTATEMENT TEST AND REQUIRES AN APPRECIATION OF THE BENEFIT: (1) Plaintiff conferred a benefit on Defendant; (2) Defendant accepts/retains benefit; (3) Defendant appreciated the benefit conferred; and (4) under circumstances it would be unjust for Defendant to retain the benefit. | |
| States | Pennsylvania, Rhode Island |
| Class Representatives | Annie Mullen, Jill Giordano, Michael L. Blankenship |
| Case Law | |
| Pennsylvania | Where one party has been unjustly enriched at the expense of another, he is required to make restitution to the other. To recover, there must be both (1) an enrichment and (2) an injustice resulting if recovery for the enrichment is denied. *See Restatement (1st) Restitution* §1, cmt. a. *Meehan v. Cheltenham Twp.*, 189 A.2d 593, 595 (Pa. 1963). The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff. *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007). |
| Rhode Island | Recovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them. To recover under a claim for unjust enrichment, a plaintiff is required to prove the following elements: (1) a benefit must be conferred upon the defendant by the plaintiff, (2) there must be appreciation by the defendant of such benefit, and (3) there must be an acceptance of such benefit; (4) in such circumstances that it would be inequitable for a defendant to retain the benefit without paying the value thereof. *Narragansett Elec. Co. v. Carbone*, 898 A.2d 87, 99 (R.I. 2006). |

**BANK OVERDRAFT MDL 2036**
**UNJUST ENRICHMENT SUBCLASSES**

| | |
|---|---|
| **UNJUST ENRICHMENT SUBCLASS #3:** | |
| **REQUIRES AN INADEQUATE REMEDY AT LAW** | |
| **(1) Plaintiff confers a benefit; (2) Defendant accepts/retains benefit; (3) it would be unjust for the Defendant to retain the benefit; and (4) there is an inadequate remedy at law.** | |
| States | Delaware, Massachusetts, New Jersey, New York, Ohio |
| Class Representatives | Jaclyn Curtis, Marcea Taylor, Eric Daniels, Kathleen Dwyer, Richard Winkelman |
| **Case Law** | |
| Delaware | Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience. The elements of unjust enrichment are: an enrichment, an impoverishment, a relation between the enrichment and impoverishment, the absence of justification, and the absence of a remedy provided by law." *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010). |
| Massachusetts | An equitable remedy for unjust enrichment is not available to a party with an adequate remedy at law. *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005). Restitution is an equitable remedy by which a person who has been unjustly enriched at the expense of another is required to repay the injured party. *Salamon v. Terra*, 394 Mass. 857, 859, 477 N.E.2d 1029 (1985) *Restatement (1st) Restitution* §1; *Jones v. Swift*, 15 N.E.2d 274, 279 (1938). The fact that a person has benefitted from another "is not of itself sufficient to require the other to make restitution therefor." *Restatement (1st) Restitution* §1, cmt. c. Restitution is appropriate only, as between the two persons, it is unjust for one party to retain the benefit. *Keller v. O'Brien*, 683 N.E.2d 1026, 1029 (Mass. 1997). |
| New Jersey | Restitution for unjust enrichment is an equitable remedy, available only when there is no adequate remedy at law. *Nat'l Amusements, Inc. v. New Jersey Tpk. Auth.*, 619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992) aff'd, 275 N.J. Super. 134, 645 A.2d 1194 (N.J. Super. Ct. App. Div. 1994); *D.R. Horton Inc. - New Jersey v. Dynastar Dev., L.L.C.*, No. MER-L-1808-00, 2005 WL 1939778, *18 (N.J. Super. Ct. Law Div. Aug. 10, 2005). The doctrine of unjust enrichment is equitable in nature. It is applied where the facts show that one |

5

## BANK OVERDRAFT MDL 2036
### UNJUST ENRICHMENT SUBCLASSES

|  |  |
|---|---|
|  | party has received a benefit at the expense of another, which it is simply unjust to permit him to retain.  The remedy for unjust enrichment is an order of restitution. *Restatement (1st) Restitution* §1. *Jersey Shore Sav. & Loan Ass'n v. Edelstein*, 530 A.2d 1320, 1323 (N.J. Super. Ct. Ch. Div. 1987); *Weichert Co. Realtors v. Ryan*, 608 A.2d 280, 285 (N.J. 1992) (recovery in quasi-contract is generally allowed when one party has conferred a benefit on another and the circumstances are such that to deny recovery would be unjust). |
| New York | The remedy of an equitable lien is unwarranted where damages lie for unjust enrichment. *Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 418 (N.Y. App. Div. 1999); *Bennett v. John*, 151 A.D.2d 711 (N.Y. App. Div. 1989) ("the plaintiff has an adequate remedy at law, to wit, monetary damages for unjust enrichment and that dismissal of the claim for an equitable lien is warranted").  A person shall not be allowed to enrich himself unjustly at the expense of another.  It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it.  *See Restatement (1st) Restitution* §1.  The general rule is that the plaintiff must have suffered a loss and an action not based upon loss is not restitutionary. *State v. Barclays Bank of New York, N.A.*, 563 N.E.2d 11, 15 (N.Y. 1990).  The doctrine of unjust enrichment does not require wrongful conduct by the one enriched only that the enrichment be unjust. *Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.*, 179 A.D. 2d 592, 593 (N.Y. App. Div. 1992). |
| Ohio | In order for an equitable claim, such as unjust enrichment, to lie, "it is requisite that the primary right involved be an equitable right as distinguished from a legal right, or that the remedy at law as to the right involved is not full, adequate and complete." *Jones v. Jones*, 903 N.E.2d 329, 336 (Ohio Ct. App. 2008).  The general rule of unjust enrichment is stated in the *Restatement (1st) Restitution* §1: "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Unjust enrichment occurs when a party retains money or benefits which in justice and equity belong to someone else. *Dixon v. Smith*, 695 N.E.2d 284, 289 (Ohio Ct. App. 1997). |

I:\XanB\Bank Overdraft\CLASS CERT THIRD AND FOURTH TRANCHE\Citizens Bank Charts\Citizens Bank Unjust Enrichment Survey.docx

6

# EXHIBIT C

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

### I. OVERVIEW

All of the states where Citizens Bank does business, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

U.C.C. §2-302 (2011).

Below are three tables representing the two unconscionability subclasses. The first table sets forth those states in which Citizens Bank does business and that require a showing of both procedural and substantive unconscionability. The second table sets forth those states in which Citizens Bank does business and that require a showing of substantive unconscionability. The final table lays out those states in which Citizens Bank does business that are subsumed by Subclass 1 or 2 because those states require either procedural or substantive unconscionability.

1

**BANK OVERDRAFT MDL 2036**
**UNCONSCIONABILITY SUBCLASSES**

| | |
|---|---|
| **UNCONSCIONABILITY SUBCLASS #1** | |
| **ELEMENTS OF AN UNCONSCIONABILITY CLAIM** | |
| **Both Procedurally and Substantively Unconscionable** | |
| (1) Contract clauses are so one-sided as to be unconscionable at the time the contract was made if the clause is oppressive or leads to unfair surprise; and (2) unequal bargaining and contract of adhesion or other elements of procedural unconscionability | |
| States | Connecticut, Delaware, Massachusetts, Michigan, New Hampshire, New Jersey, Pennsylvania, Ohio, Rhode Island |
| Class Representatives | Annie Mullen, Eric Daniels, Kathleen Dwyer, Gale Hercula, Michael L. Blankenship, Jessica Duval, Marcea Taylor, Richard Winkleman, Jill Giordano |
| **Both Elements Required** | |
| Connecticut | **CONN. GEN. STAT. ANN. § 42a-2-302 (2010)** "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination." <br><br> **CASELAW** <br> The doctrine of unconscionability, as a defense to contract enforcement, generally requires a showing that the contract was both procedurally and substantively unconscionable when made, that is, some showing of an absence of meaningful choice on the part of one of the parties together with contract terms |

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| | which are unreasonably favorable to the other party. *Bender v. Bender*, 975 A.2d 636, 658 (Conn. 2009). |
|---|---|
| Delaware | **DEL. CODE ANN. tit. 6, § 2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**CASELAW**<br>Delaware does not use the terms procedural and substantive but recognizes that both elements must be present to succeed in bringing an unconscionability claim.  A mere disparity in the bargaining power of parties to a contract will not support a finding of unconscionability.  Rather, to support such a finding, a court must find that the party with superior bargaining power used it to take unfair advantage of its weaker counterpart.  For a contract clause to be unconscionable, its terms must be "so one-sided as to be oppressive."  Put another way, "[u]nconscionability has generally been recognized to include an absence of meaningful choice [procedurally unconscionable] the part of one of the parties together with contract terms which are unreasonably favorable to the other party [substantively unconscionable]." *Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, No. C.A. 19209, 2002 Del. Ch. LEXIS 91, at *37 (Del. Ch. July 9, 2002). |
| Massachusetts | **MASS. GEN. LAWS ANN. ch. 106, § 2-302 (2010)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." |

3

**BANK OVERDRAFT MDL 2036**
**UNCONSCIONABILITY SUBCLASSES**

| | |
|---|---|
| | **STATUTORY NOTES TO MASS. GEN. LAWS ANN. ch. 106, § 2-302, cmt. 1**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>"'The determination that a contract or term is or is not unconscionable is made in the light of its setting, purpose and effect.'" *Miller v. Cotter*, 863 N.E.2d 537, 545 (Mass. 2007) (quoting *Restatement (Second) of Contracts* §208, comment a (1981)).  Courts look at "whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party." *Id.* (internal quotation marks and citation omitted).  Plaintiffs must show both substantive and procedural unconscionability to prevail. *Zapatha v. Dairy Mart, Inc.*, 408 N.E.2d 1370, 1376-77 & n.13 (Mass. 1980); *accord Storie v. Household Int'l, Inc.*, No. 03-40268-FDS, 2005 U.S. Dist. LEXIS 40292, at *27-*28 (D. Mass. Sept. 22, 2005). |
| Michigan | **MICH. COMP. LAWS ANN. § 440.2302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO MICH. COMP. LAWS ANN. §440.2302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the |

4

**BANK OVERDRAFT MDL 2036**
**UNCONSCIONABILITY SUBCLASSES**

| | |
|---|---|
| | circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)) and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>For a contract or a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. Substantive unconscionability exists where the challenged term is not substantively reasonable. *Liparoto Const., Inc. v. Gen. Shale Brick, Inc.*, 772 N.W.2d 801, 805 (Mich. Ct. App. 2009). |
| New Hampshire | **N.H. REV. STAT. ANN. § 382-A:2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO N.H. REV. STAT. ANN. § 382-A:2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>New Hampshire does not use the terms procedural and substantive but recognizes both must be present |

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

|  |  |
|---|---|
|  | for unconscionability. Unconscionability includes an absence of meaningful choice [procedurally unconscionable] on the part of one of the parties together with contract terms which are unreasonably favorable to the other party [substantively unconscionable]. The existence of gross inequality of bargaining power is also a factor. An imbalance in bargaining power of the parties may render the contract so coercive and one-sided as to prevent the plaintiff from having voluntarily assented to its terms and constitute a contract of adhesion. *Pittsfield Weaving Co., Inc. v. Grove Textiles, Inc.*, 430 A.2d 638, 639-40 (N.H. 1981). |
| New Jersey | **N.J. STAT. ANN. § 12A:2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO N.J. STAT. ANN. §12A:2-302 (West)**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>Courts generally have applied a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability. *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (N.J. 2006). Unconscionability traditionally entails discussion of two factors: procedural unconscionability, which "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular |

6

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

|  |  |
|---|---|
|  | setting existing during the contract formation process," and substantive unconscionability, which generally involves harsh or unfair one-sided terms. *Muhammad v. County Bank of Rehoboth Beach, Delaware*, 912 A.2d 88, 96 (N.J. 2006). |
| Ohio | **OHIO REV. CODE ANN. §1302.15 (2011)**<br>"(A) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(B) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO OHIO REV. CODE ANN. §1302.15**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>The party challenging a contract as unconscionable must prove a quantum of both procedural and substantive unconscionability. However, substantive and procedural unconscionability need not be present in equal measure in the agreement in question: Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves. In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa. *Hayes v. Oakridge Home*, 908 N.E.2d 408, 420-21 (Ohio 2009). |
| Pennsylvania | **13 PA. CONS. STAT. ANN. § 2302 (2010)** |

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | "(a) Finding and authority of court--If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made, the court may:<br>(1) refuse to enforce the contract;<br>(2) enforce the remainder of the contract without the unconscionable clause; or<br>(3) so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(b) Evidence by parties.--When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>CASELAW<br>A contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it.  The aspects entailing lack of meaningful choice and unreasonableness have been termed procedural and substantive unconscionability, respectively.  The burden of proof generally concerning both elements has been allocated to the party challenging the agreement, and the ultimate determination of unconscionability is for the courts. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119-20 (Pa. 2007). |
| Rhode Island | R.I. GEN. LAWS § 6A-2-302 (2011)<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."<br><br>STATUTORY NOTES TO R.I. GEN. LAWS § 6A-2-302<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is |

## BANK OVERDRAFT MDL 2036
### UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. |
| | |
| | **CASELAW** |
| | Reiterates statutory comments for the basic test of unconscionability: "[W]aiver of liability was unconscionable in light of the general commercial background and commercial needs of the particular trade or case. This omission, plaintiffs argue, requires reversal so that plaintiffs may be given an opportunity to present such evidence." *Star-Shadow Prods., Inc. v. Super 8 Sync Sound Sys.*, 730 A.2d 1081, 1083 (R.I. 1999). "To establish unconscionability, a party must prove that (1) there is an absence of 'meaningful choice' on the part of one of the parties; and (2) the challenged contract terms are 'unreasonably favorable' to the other party. *E.H. Ashley & Co. v. Wells Fargo Alarm Servs.*, 907 F.2d 1274, 1278 (1st Cir. R.I. 1990) (citing amongst other authorities, *Grady v. Grady*, 504 A.2d 444, 446-47 (R.I. 1986)). |

9

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| UNCONSCIONABILITY SUBCLASS #2: | |
|---|---|
| ELEMENTS OF AN UNCONSCIONABILITY CLAIM<br>Substantive Unconscionability Alone Is Sufficient | |
| Contract Terms Are So One-Sided as To Be Unconscionable under the Circumstances | |
| States | New York, Vermont |
| Class Representative | Jaclyn Curtis, Sheryl Wood |
| **Substantive Unconscionability** | |
| New York | **N.Y. U.C.C. Law § 2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO N.Y. U.C.C. Law § 2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1. |

10

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

|  |  |
|---|---|
|  | **CASELAW**<br>Under New York law, unconscionability is generally predicated on the presence of both the procedural and substantive elements, the substantive element alone may be sufficient to render the terms of the provision at issue unenforceable  Procedural and substantive unconscionability are shown by an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party. *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 254 (N.Y. App. Div. 1998); *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988). |
| Vermont | **VT. STAT. ANN. tit. 9A, § 2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO VT. STAT. ANN. tit. 9A, § 2-302 (2011)**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>Substantively unfair terms support finding of unconscionability regardless of presence or absence of other enumerated factors of unconscionability at formation of contract. *KPC Corp.* |

11

BANK OVERDRAFT MDL 2036
UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | *v. Book Press, Inc.*, 636 A.2d 325, 329 (Vt. 1993). Unconscionability can be shown by evidence of some overreaching on the part of one of the parties such as that which results from an inequality in bargaining power or under other circumstances in which there is an ***absence of meaningful choice*** on the part of one of the parties, together with contract terms which are unreasonably favorable to that party. *Maglin v. Tschannerl*, 800 A.2d 486, 491 (Vt. 2002). The "superior court was mistaken in assuming that the presence of procedural unconscionability is required to void a contract based on it containing unconscionable terms. See Val Preda Leasing, Inc. v. Rodriguez, 149 Vt. 129, 135, 540 A.2d 648, 652 (1987) (finding contract to be unconscionable based on its substantively unfair terms even though factors relevant to unconscionability in formation of contract were not present)." Glassford v. Brickkicker, 2011 VT 118, P13 (Vt. 2011) |

12

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| STATES ENCOMPASSED BY SUBCLASSES #1 AND 2 | |
| --- | --- |
| STATES THAT ALLOW PROCEDURALLY OR SUBSTANTIVELY UNCONSCIONABILITY | |
| States | Illinois, Indiana |
| Class Representatives | Annie Mullen, Eric Daniels, Kathleen Dwyer, Gale Hercula, Michael L. Blankenship, Jessica Duval, Marcea Taylor, Richard Winkleman, Jill Giordano |
| Illinois | **810 ILL. COMP. STAT. ANN. 5/2-302 (2011)**<br>"(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.<br>(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."<br><br>**STATUTORY NOTES TO 810 ILL. COMP. STAT. ANN. 5/2-302**<br>The basic test is whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. Subsection (2) makes it clear that it is proper for the court to hear evidence upon these questions. The principle is one of the prevention of oppression and unfair surprise (Cf. *Campbell Soup Co. v. Wentz*, 172 F.2d 80 (3d Cir. 1948)), and not of disturbance of allocation of risks because of superior bargaining power. *See also* U.C.C. §2-302, cmt. 1.<br><br>**CASELAW**<br>We rejected the requirement that both procedural and substantive unconscionability must be found before a contract or a contract provision will be found to be unenforceable. A finding of unconscionability may be based on either procedural or substantive unconscionability, or a |

13

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

| | |
|---|---|
| | combination of both. *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006). Procedural unconscionability refers to a situation where a contract term is so difficult to find, read, or understand that the plaintiff can not fairly be said to have been aware he was agreeing to it. Procedural unconscionability always takes into account the disparity of bargaining power between the drafter of the contract and party claiming unconscionability. *Id.* at 264. Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity. *Id.* at 267. |
| Indiana | **Burns Ind. Code Ann. § 24-4.5-5-108 (2011)** <br><br> (1) With respect to a consumer credit sale, consumer lease, or consumer loan, if the court as a matter of law finds the agreement or any clause of the agreement to have been unconscionable at the time it was made the court may refuse to enforce the agreement, or it may enforce the remainder of the agreement without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result. <br><br> (2) If it is claimed or appears to the court that the agreement or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making the determination. <br><br> (3) For the purpose of this section, a charge or practice expressly permitted by this Article is not in itself unconscionable. <br><br> **COMMENT TO OFFICIAL TEXT** <br><br> 1. Subsections (1) and (2) are derived in large part from UCC Section 2-302. The omission of the adjective "commercial" from the provision in subsection (2) concerning the presentation of evidence as to the contract's "setting, purpose, and effect" is deliberate. Unlike the UCC, this section is concerned only with transactions involving consumers, and the relevant standard of |

14

## BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

conduct for purposes of this section is not that which might be acceptable as between knowledgeable merchants but rather that which measures acceptable conduct on the part of a businessman toward a consumer.

2. This section is intended to make it possible for the courts to police contracts or clauses which are found to be unconscionable. The basic test is whether, in the light of the background and setting of the market, the commercial needs of the particular trade or case, and the condition of the particular parties to the contract, the contract or clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of the making of the contract. The particular facts involved in each case are of utmost importance since certain contracts or contractual provisions may be unconscionable in some situations but not in others.

### CASE LAW
"Our unconscionability jurisprudence is sub-divided into two branches: substantive and procedural. *Hahn v. Ford Motor Co.*, 434 N.E.2d 943, 951 (Ind. Ct. App. 1982). Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract, while procedural unconscionability involves the manner and process by which the terms become part of the contract. *Id.*

Our supreme court has described substantive unconscionability as follows:

When the weaker party, in need of goods or services, is not in a position to shop around for better terms, either because the author of the standard contract has a monopoly or the other competitors use the same contract, the parties are not in an equal bargaining position and application of the doctrine of unconscionability is appropriate.

*Terry v. Ind. State Univ.*, 666 N.E.2d 87, 93 (Ind. Ct. App. 1996) (citing *Weaver v. Am. Oil Co.*, 257 Ind. 458, 464, 276 N.E.2d 144, 146 (1971)). *DiMizio v. Romo*, 756 N.E.2d 1018, 1023-1024 (Ind. Ct. App. 2001).

I:\XanB\Bank Overdraft\CLASS CERT THIRD AND FOURTH TRANCHE\Citizens Bank Charts\Citizens Bank Unconscionability Survey.docx

15

# BANK OVERDRAFT MDL 2036
## UNCONSCIONABILITY SUBCLASSES

16

# EXHIBIT D

## REVIEW OF STATE UNFAIR AND DECEPTIVE TRADE PRACTICE ACTS

### I.      MASSACHUSETTS

Note: There is no right to a jury trial under Mass. Gen. Laws ch. 93A, but the Court in its discretion may submit the claim to a jury. *Dalis v. Buyer Adver.,* 418 Mass. 220, 636 N.E.2d 212, 216 n.7 (Mass. 1994).

### A.      Relevant Prohibitions

Massachusetts Gen. Laws Ch. 93A, § 2 prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." "Trade" and "commerce" shall "include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed . . . and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth." MASS. GEN. LAWS Ch. 93A, § 1(b).

Chapter 93A "is a statute of broad impact" passed "to aid consumers and others . . . by making conduct unlawful which was not unlawful under the common law or any prior statute." *Slaney v. Westwood Auto, Inc.,* 366 Mass. 688, 693, 322 N.E.2d 768, 772 (1975) (quoting *Commonwealth v. De Cotis,* 366 Mass. 234, 244 n.8 (1974)). In particular, the definition of an actionable unfair or deceptive act or practice "goes far beyond the scope of the common law action for fraud and deceit." *Id.* at 703. "[T]echnicalities are not to be read into the statute in such a way as to impede the accomplishment of substantial justice." *Leardi v. Brown,* 394 Mass. 151, 159, 474 N.E.2d 1094, 1101 (1985) (quoting *Baldassari v. Public Fin. Trust,* 369 Mass. 33, 41 (1975)).

1

The Court need not find the presence of both unfair and deceptive conduct in order to find that Defendants violated G.L. Ch. 93A. **A *practice can be unfair without being deceptive. See, e.g., Service Publications, Inc. v. Goverman,* 396 Mass. 567, 578, 487 N.E.2d 520, 527 (1986).**

In construing G.L. Ch. 93A, courts are to be guided by interpretations given by the Federal Trade Commission and federal courts to section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1). MASS. GEN. LAWS CH. 93A, § 2(b); *Slaney,* 366 Mass. at 694; *PMP Assocs., Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 595, 321 N.E.2d 915, 917 (1975); *accord,* 940 MA. ADMIN. § 3.16(4) (act or practice is a violation of Ch. 93A if it violates the FTC Act).

An unfair act or practice is not amenable to a bounded definition because, as courts have recognized, "Mt is impossible to frame definitions which embrace all unfair practices. There is no limit to human inventiveness in this field." *Levings v. Forbes & Wallace, Inc.,* 8 Mass. App. Ct. 498, 503, 396 N.E.2d 149, 153 (1979) (quoting H. R. Conf. Rep. No. 1142, 63d Cong., 2d Sess. (1914)). Nonetheless, Massachusetts courts, following federal jurisprudence under the Federal Trade Commission Act, have employed the following factors in evaluating whether conduct is unfair: (i) whether the practice is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (ii) whether it is immoral, unethical, oppressive or unscrupulous; and (iii) whether it causes substantial injury to consumers, competitors or other business people. *PMP Assocs., Inc.,* 366 Mass. at 596 (citing *FTC v. Sperry & Hutchinson Co.,* 405 U.S. 233, 244 (1972)).

"Whether a given practice runs afoul of these touchstones must be determined from the circumstances of each case." *Levings,* 8 Mass. App. Ct. at 504. In doing so, courts evaluate the "equities between the parties," and "[w]hat a defendant knew or should have known may be

relevant" in making that determination. *Swanson v. Bankers Life Co.,* 389 Mass. 345, 349, 450 N.E.2d 577, 580 (1983). The Court is to "focus on the nature of challenged conduct and on the purpose and effect of that conduct as the crucial factors in making a G. L. c. 93A fairness determination." *Massachusetts Employers Ins. Exch. v. Propac-Mass, Inc.,* 420 Mass. 39, 43, 648 N.E.2d 435, 438 (1995).

An act or practice is deceptive if it possesses a tendency to deceive. *Leardi,* 394 Mass. at 156. "In determining whether an act or practice is deceptive, 'regard must be had, not to fine spun distinctions and arguments that may be made in excuse, but to the effect which it might reasonably be expected to have upon the general public.'" *Id.* at 156 (quoting *P. Lorillard Co. v. FTC,* 186 F.2d 52, 58 (4th Cir. 1950)). The plaintiff need not prove that the defendant intended to deceive the plaintiff. *Aspinall v. Philip Morris Cos.,* 442 Mass. 381, 394, 813 N.E.2d 476, 486 (2004). Nor is proof of reliance required as long as there is a causal relationship between the act or practice and injury to the plaintiff. *Fraser Eng'g Co. v. Desmond,* 26 Mass. App. Ct. 99, 104, 524 N.E. 2d 110, 113 (1988).

**B.     Causation/Damages**

The plaintiff is entitled to recover the greater of actual damages or $25. MASS. GEN. LAWS ch. 93A, § 9(3). If the Court finds that defendant's violations were willful or knowing, it must increase the damages "up to three but not less than two times" actual damages. *Id.* The statute provides for pre-suit notice at least 30 days prior to the damages action. *Id.*

**C.     Statute Of Limitations**

The statute of limitations is four years "after the cause of action accrues." MASS. GEN. LAWS CH. 93A, § 5. Ordinarily, a cause of action accrues at the time the plaintiff is injured. *International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.,* 29 Mass. App. Ct. 215, 217, 221, 560 N.E.2d 122 (1990). The unfairness of such a rule, however, has been

3

acknowledged in actions where the wrong is "inherently unknowable." *Mohr v. Commonwealth,* 421 Mass. 147, 155-56, 653 N.E.2d 1104 (1995). A statute of limitations cannot be deemed to have run "even before a plaintiff knew or reasonably should have known that she may have been harmed by the conduct of another." *Bowen v. Eli Lilly & Co.,* 408 Mass. 204, 205, 557 N.E. 2d 739 (1990). For this reason, Massachusetts recognizes a "discovery rule" that tolls the running of the limitations period for claims under Mass. Gen. L. ch. 93A, among other causes of actions. *Wolinetz v. Berkshire Life Ins. Co.,* 361 F.3d 44, 47 (1st Cir. 2004) (citing *Int'l Mobiles Corp. v. Corroon & Black/Faidield & Ellis, Inc.,* 560 N.E.2d at 125-26).

Under the discovery rule, "a cause of action ... does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known of the factual basis for his cause of action." *Id.* at 47-48 (citing *Patsos v. First Albany Corp.,* 741 N.E.2d 841, 846 (2001)). The test is an objective one: "Only if a reasonable person in the plaintiff s position would have been able to discern the harm or the cause of the harm will the cause of action accrue and the limitations period begin to run." *Sawyer v. Indevus Pharms., Inc.,* 2004 Mass. Super. Lexis 274, at *33 (Mass. Super. Ct. July 26, 2004) (quoting *Riley v. Presnell,* 409 Mass. 239, 245, 565 N.E.2d 780 (1991)).

The inquiry under the discovery rule is a fact-intensive one. Courts consider a number of factors in determining whether plaintiff received actual or constructive notice sufficient to trigger the statute of limitations: (i) evidence of actual knowledge; (ii) notoriety of publicly-available information; (iii) reasonable inferences to be drawn from any publicity; and (iv) whether a reasonable inquiry would have put plaintiffs on notice of their claims. *In re Mass. Diet Drug*

4

*Litig.,* 338 F. Supp. 2d 198, 203 (D. Mass. 2004).[1] In evaluating the timing of plaintiff s knowledge, Massachusetts courts have made it clear that they do not "equate suspicion with knowledge"; suspicion alone will not put a plaintiff on notice of his or her claims. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 412 F.3d 215, 240 (1st Cir. 2005), *cert. denied,* U.S. , 126 S. Ct. 2292 (2006).

In the *Diet Drug Litigation,* the court considered each of the above factors in deciding whether the discovery rule tolled the limitations period for claims brought by former users of diet drugs withdrawn from the market seven years before the case was brought. Defendant drug manufacturers argued that the substantial publicity surrounding the drugs' withdrawal and lawsuits and settlements concerning the drugs put plaintiffs on actual notice of their claims or, at a minimum, plaintiffs were on inquiry notice as former diet drug users.[2] Plaintiffs claimed that despite the publicity, they had no actual knowledge of the claims and could not and should not have discovered their injuries any earlier. 338 F. Supp. 2d at 204.

The court articulated two questions that encompassed the relevant factors. First, to what extent should knowledge of publicity be imputed to a plaintiff in the absence of evidence of actual notice to that plaintiff? Second, was the content of the publicity sufficient to put a plaintiff on notice of their claims? *Id.* at 206. The answer to the first question, according to the court, depended on the circumstances pertaining to each plaintiff, such as whether he had actual

---

[1]   The court embraced Ninth Circuit precedent applying the same factors. *See 0 'Connor v. Boeing N. Am., Inc.,* 311 F.3d 1139 (9th Cir. 2002); *Bibeau v Pacific Northwest Research Found., Inc.,* 188 F.3d 1105, 1110 (9th Cir. 1999); *In re Swine Flue Prods. Liab. Litig.,* 764 F.2d 637 (9th Cir. 1985).

[2]   "According to Wyeth, beginning in September 1997 the mass media was flooded with an overwhelming amount of information linking the diet drugs to valvular heart disease, indicating that even users who were experiencing no symptoms may have been injured, and suggesting that all users seek medical attention. For example, Wyeth issued a press release, purchased advertisements in many national and regional newspapers, and sent information to approximately 450,000 doctors and pharmacists. The Food and Drug Administration also issued a press release, and the information was reported on morning and evening television news programs and front pages of newspapers throughout the country." *Id.* at 205.

knowledge, where he lived and what the media coverage was in that location. *Id.* at 206-07. To answer the second question, the fact finder would have to consider the *content* of the publicly-available information to which a similarly-situated reasonable plaintiff would have been exposed. *Id.* at 207. The court ultimately declined to resolve these questions on the record before it during a motion for remand proceedings, leaving resolution to the fact finder. *Id.*

Other Massachusetts courts have applied the same standards to different facts. *See, e.g., Cascone v. United* States, 370 F.3d 95 (1st Cir. 2004); *Sawyer,* 2004 Mass. Super. Lexis 274. *Sawyer* was an earlier case involving wide-spread publicity surrounding the withdrawal of diet drugs from the market and whether the publicity should be imputed to plaintiffs as knowledge sufficient to bar their claims. The plaintiffs brought their action against the drug manufacturer six-to-seven years after they stopped taking the drug and six years after the link between the diet drugs and heart disease became "one of the biggest news stories of 1997." *Id.,* at *8. Publicity of the diet drug epidemic ranged from major, high-profile news outlets, including *The New York Times, USA Today, The Boston Herald, The Boston Globe,* "NBC Nightly News" and the "CBS Evening News," to 18,000 lawsuits and 100 putative class actions filed across the country. *Id.* However, despite the widespread publicity, the *Sawyer* Court could not find a "single public report that would have put [d]iet [d]rug users on notice that an echocardiogram was necessary to diagnose [d]iet [d]rug induced heart disease." *Id.,* at *13. Thus, the Court held, the statute of limitations was tolled by the discovery rule. *Id.,* at *49.

*Thompson v. Metropolitan Life Ins. Co.,* 149 F. Supp. 2d 38, 50-53 (S.D.N.Y. 2001), provides another persuasive example. There, the court reviewed evidence alleged to show the class's knowledge of the overpriced life insurance at issue: 24 news articles over 60 years (including stories in *Time* magazine and *The Wall Street Journal);* an FTC Study; two prior

6

individual lawsuits based on the same claims; and a segment on *60 Minutes*. The court concluded that this publicity was insufficient to find on summary judgment that the plaintiffs should have discovered their claims earlier. *Id.* at 50-53.

Courts have also recognized that in complex cases, there can be danger in construing plaintiffs' notice of one instance of wrongdoing as sufficient to trigger the statue of limitations for all related claims. *Eye & Ear Infirmary*, 412 F.3d at 241. In the First Circuit's words: "[a]lthough we are not prepared to state a general rule . . . a wronged party should not be prejudiced with regards to later torts committed against it, simply because a defendant started the clock running by committing similar acts at an earlier time. . . . [A] plaintiff must be able to decide when the harms it has sustained require bringing a suit, and no defendant should be able to immunize itself from later, potentially graver claims, by openly engaging in prior, similar offenses that the future plaintiff does not believe warrant bringing suit." *Id.*

## II.     NEW YORK

### A.     Relevant Prohibitions

New York prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ." N.Y. GEN. BUS. LAW § 349(a). A plaintiff must prove three elements: (1) that the challenged act or practice was "consumer-oriented;" (2) that the act or practice was misleading in a material way; and (3) that the plaintiff suffered injury as a result of the deceptive act or practice. *Stutman v. Chemical Bank*, 731 N.E.2d 608, 611 (N.Y. 2000).

Starting with the first element, it is not necessary to establish repeated acts. All that is needed is that the acts or practices at issue have "a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). Merely private disputes will not suffice. *Id.*

Turning to the second element, the deceptive act or practice may be a representation or an omission. *Stutman*, 731 N.E.2d at 611. Either way, it is evaluated according to an objective standard: the complained-of act or practice must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers'*, 647 N.E.2d at 744. The plaintiff need not establish defendant's intent to defraud or mislead; nor is justifiable reliance by plaintiff required. *Id.* This objective test complements the definition of unfair and deceptive acts or practices applied by the Federal Trade Commission under 15 U.S.C. § 45, upon which the New York statute is modeled. *Id.*

### B.     Causation/Damages

A person injured by reason of a violation of § 349(a) may recover the greater of actual damages or $50. N.Y. GEN. BUS. LAW § 349(h). If the court finds that the defendant willfully or knowingly violated § 349(a), the court, in its discretion, may increase the award "not to exceed

three times the actual damages up to one thousand dollars." *Id.* In order to recover, the plaintiff must have suffered injury "as a result of the deceptive act." *Stutman*, 731 N.E.2d at 611. A plaintiff must prove "actual" injury to recover under the statute, though not necessarily pecuniary harm. *Id.* at 612. Proving reliance is not necessary. *Id.* at 612-13 (explaining that a deception causing loss is not equivalent to reliance, that is, a showing that plaintiffs otherwise would not have entered the transaction).

In New York, the "true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong" or what is known as the 'out-of-pocket' rule." *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E. 2d 1370, 1373 (N.Y. 1996) (citing *Reno v. Bull*, 226 N.Y. 546, 553, 124 N.E. 144; *Hanlon v MacFadden Publ.*, 302 N.Y. 502, 99 N.E.2d 546 (1951)). [3] Under this rule:

> the loss is computed by ascertaining the "difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain" (*Sager v Friedman*, 270 N.Y. 472, 481, 1 N.E.2d 971). Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained (*see, Cayuga Harvester v Allis-Chalmers Corp.*, 95 A.D.2d 5, 465 N.Y.S.2d 606). Under the out-of-pocket rule, there can be no recovery of profits which would have been realized in the absence of fraud (*Foster v Di Paolo*, 236 N.Y. 132, 140 N.E. 220; *AFA Protective Sys. v American Tel. & Tel. Co.*, 57 N.Y.2d 912, 456 N.Y.S.2d 757, 442 N.E.2d 1268).

*Id.*

## C.    Statute Of Limitations

The statute of limitations is three years. N.Y. C.P.L.R. § 214(2); *Wender v. Gilberg Agency*, 276 A.D.2d 311, 312 (N.Y. 2000). The discovery rule does not apply. *Id.* But New York recognizes the doctrine of equitable tolling, which is applicable if the plaintiff can show

---

[3] A standard for calculating damages under § 349(a) is not enumerated in the statute or related case law.

that the defendant has wrongfully deceived or misled him or her in order to conceal the existence of his or her claim. *Kotlyarsky v. N.Y. Post*, 195 Misc. 2d 150, 757 N.Y.S.2d 703, 707-08 (N.Y. Misc. 2003) (citations omitted).

**D.      Notice Requirements**

No notice is required prior to bringing a claim under the statute.

### III.   PENNSYLVANIA

**A.   Relevant Prohibitions**

The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") declares unlawful any unfair acts or practices in the conduct of any trade or commerce as specially defined by the act. 73 PENN. STAT. § 201-3. "Trade" and "Commerce" mean "the advertising, offering for sale, sale or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situate, and includes any trade or commerce directly or indirectly affecting the people of this Commonwealth." 73 PENN. STAT. § 201-2(3).

> For relevant purposes, "unfair or deceptive acts or practices" means the following:
>
> (v) Representing that goods or services have . . . characteristics . . . that they do not have . . . ;
>
> (xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;
>
> (xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 PENN. STAT. § 201-2(4).

In cases involving false advertising or misrepresentation, plaintiff must demonstrate that he or she relied on the challenged practice to their detriment. *Weinberg v. Sun Co., Inc.,* 777 A.2d 442, 446 (Pa. 2001). Neither the statute nor case law has established any scienter requirement.

In cases under the "catch-all" provision of § 201-2(3)(xxi), the plaintiff must prove all of the elements of common law fraud, which are: (1) misrepresentation of material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage as a proximate result. *Colaizzi v. Beck,*

895 A.2d 36, 40 (Pa. Super. Ct. 2006). "A misrepresentation is material if it is of such character that if it had not been misrepresented, the transaction would not have been consummated." *Id.* at 39-40.

**B.      Causation/Damages**

A person purchasing goods primarily for personal, family or household purposes and who suffers any ascertainable loss of money as a result of the challenged practice may recover the greater of actual damages or $100. 73 PENN. STAT. § 201-9.2(a). The court may, in its discretion, increase the award up to three times the actual damages sustained, but not less than $100. *Id.*

Punitive damages may be awarded if the defendant's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others. *Jahanshahi v. Centura Dev. Co., Inc.,* 816 A.2d 1179, 1188 (Pa. Super. 2003).

**C.      Statute Of Limitations**

The statute of limitations is six years. 73 PENN. STAT. § 5527(b); *Keller v. Volkswagen of Am., Inc.,* 733 A.2d 642, 646 n.9 (Pa. Super. Ct. 1999). The discovery rule applies. *Lesoon v. Metro. Life Ins. Co.,* 898 A.2d 620, 627, 2006 Pa. Super. Lexis 288 (Pa. Super. Ct. 2006) (citation omitted).

12

## IV.   VERMONT

### A.   Relevant Prohibitions

The Vermont Consumer Fraud Act ("VCFA") prohibits "unfair or deceptive acts or practices in commerce . . . ." VT. STAT. ANN. tit. 9, § 2453(a). The VACFA does not define "unfair" or "deceptive," but courts are to be guided by the construction of similar terms found in 15 U.S.C. § 45. VT. STAT. ANN. tit. 9, § 2453(b).

A practice is unfair if it (1) offends public policy as it has been established by statutes, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common-aw, statutory, or other established concept of unfairness; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. *Vermont Mobile Home Owners' Ass'n, Inc. v. LaPierre*, 94 F. Supp. 2d 519, 522 (D. Vt. 2000) (citing *F.T.C. v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)).

"Deceptive" means the capacity or tendency to deceive. *Poulin v. Ford Motor Co.*, 513 A.2d 1168, 1171 (Vt. 1986). There are ordinarily three elements to deception when a misrepresentation is involved:  (1) a representation, practice, or omission likely to mislead consumers; (2) consumers interpret the message reasonably under the circumstances; and (3) the misleading effects must be "material," that is, likely to affect consumers' conduct or decision with regard to a product. *Id.* at 1171-72.

The burden of proof under the VCFA is a preponderance of the evidence. *Id.* at 1172.

### D.   Causation/Damages

Any consumer who sustains damages as a result of any violation of the VCFA may sue to recover damages. VT. STAT. ANN. tit. 9, § 2461(b). "Consumer" includes any person who purchases goods for his or her use or benefit or the use or benefit of a member of this or her household. VT. STAT. ANN. tit. 9, § 2451a(a).

13

"[E]xemplary damages not exceeding three times the value of the consideration given by the consumer" may be recovered. VT. STAT. ANN. tit. 9, § 2461(b). Exemplary damages can be awarded only where malice, ill will, or wanton conduct is demonstrated. *Bruntaeger v. Zeller*, 515 A.2d 123, 127 (Vt. 1986).

Vermont uses the benefit of the bargain standard.[4] Vermont courts, however, "while using the phrase 'benefit of the bargain,' has similarly adopted a flexible, rather than a dogmatic, approach to calculating damages in fraud cases." *Kramer v. Chabot*, 564 A.2d 292, 294-95 (Vt. 1989) ("On remand, the trial court must determine what it will take to give plaintiff the benefit of her bargain, considering all of the surrounding facts and circumstances.") (citing *Cushman,* 148 Vt. at 578, 536 A.2d at 554; see also *Munjal v. Baird & Warner, Inc.,* 138 Ill. App. 3d at 186-87, 485 N.E.2d at 867 ("benefit-of-the-bargain damages may be either the cost of repair to make property conform to the condition as represented, or difference between the value of property at time of sale with defects and the value it would have had if defects did not exist"f).

**E.      Statute Of Limitations**

The statute of limitations is six years "after the cause of action accrues and not thereafter." VT. STAT. ANN. tit. 12, § 511. However, the discovery rule applies and time begins to run from the date of discovery of the injury. *Univ. of Vermont v. W.R. Grace & Co.,* 565 A.2d 1354, 1357 (Vt. 1989).

**F.      Notice Requirements**

No notice is required prior to bringing a claim under the statute.

---

[4] A standard for calculating damages under VCFA is not enumerated in the statute or related case law.

# EXHIBIT E

**PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS**

**BREACH OF CONTRACT AND
THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**BANK DEBIT MDL 2036**

*Set forth below are suggested interrogatories to be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

# I. BREACH OF CONTRACT AND THE IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING

## GOOD FAITH AND FAIR DEALING SUBCLASS # 1
## IMPLIED COVENANT AS A SEPARATE CAUSE OF ACTION

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however the implied promise of good faith and fair dealing cannot create obligations inconsistent with the contract.[1]

In some states (Connecticut, Delaware, New Hampshire, New Jersey and Vermont), a party can breach the implied covenant of good faith and fair dealing without breaching an express provision of the parties' underlying contract.

## A. LIABILITY

Plaintiffs Jessica Duval and Sheryl Wood, claim that the defendant, Citizens Bank, violated the duty to act fairly and in good faith.

Do you find by a preponderance of the evidence the following:[2]

(i)    **Did the plaintiffs and the subclass enter into a contract with the defendant?**

Yes ☐         No ☐

(ii)    **Did the defendant act in bad faith or engage in unreasonable conduct that had the effect of preventing plaintiffs and the subclass from receiving the benefits of the parties' contract?**

Yes ☐         No ☐

(iii)    **As a result, were the plaintiffs and the subclass harmed?**

Yes ☐         No ☐

---

[1]    *See Restatement (Second) of Contracts* §205 (1981).

[2]    7A Am. Jur. *Contracts* § 118.1 (As the practice notes instruct, counsel should delete elements that are not contested. We deleted the elements that required plaintiff's performance and defendant's performance under the contract because those elements are not relevant to this subclass.)

1

If you selected "yes" for all of the elements listed above, please answer the question in part B. If you selected "no" for any of the elements listed above, please skip to ["Subclass #2."]

### B. DAMAGES

**Have the plaintiffs proved by a preponderance of the evidence the amount of damages suffered by plaintiff[s] and the subclass?**

Yes ☐                    No ☐

If yes, complete the following blank: The [Court/Jury] finds actual damages for Plaintiffs and the Good Faith and Fair Dealing Subclass 1 in the amount of $_____. (If you answered "no," do not complete the blank.)

## GOOD FAITH AND FAIR DEALING SUBCLASS #2
## IMPLIED COVENANT IS NOT A SEPARATE CAUSE OF ACTION AND
## BREACH OF CONTRACT HAS THREE ELEMENTS

In every contract, there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

In many states, a party cannot breach the implied covenant of good faith and fair dealing without breaching an express provision of the parties' underlying contract. In Illinois, Indiana, Massachusetts, Michigan, Ohio, New York and Rhode Island, a party bringing a breach of contract claim must satisfy a three-part test.

### A. LIABILITY

Plaintiffs Gale Hercula, Michael L. Blankenship, Jill Giordano, Eric Daniels, Marcea Taylor, Richard Winkelman, Jaclyn Curtis and Kathleen Dwyer claim that the defendant, Citizen Bank, breached its contract and duty of good faith and fair dealing with the plaintiffs and the Class.

Do you find by preponderance of the evidence the following:

(i)     **Did the plaintiffs and the subclass enter into a contract with the defendant?**

Yes ☐          No ☐

(ii)    (a)    **Did the defendant breach the contract by unfairly interfering with the plaintiffs' and the subclass's rights to receive the benefits of the contract?**

Yes ☐          No ☐

(b)    **Did the plaintiffs show either performance or excuse from performance?**

Yes ☐          No ☐

(iii)   **As a result, were the plaintiffs and the subclass harmed?**

Yes ☐          No ☐

If you selected "yes," for all of the elements listed above, please answer the question in part B. If you selected "no" for any of the elements listed above, please skip to "Subclass #3."

3

## B. DAMAGES

**Have plaintiffs proved by a preponderance of the evidence the amount of damages suffered by plaintiffs and the subclass?**

Yes ☐                     No ☐

If yes, complete the following blank: The [Court/Jury] finds actual damages for Plaintiffs and the Breach of Contract and Good Faith and Fair Dealing Subclass 2 in the amount of $_____. (If you answered "no," do not complete the blank.)

## GOOD FAITH AND FAIR DEALING SUBCLASS #3
### IMPLIED COVENANT IS NOT A SEPARATE CAUSE OF ACTION AND BREACH OF CONTRACT REQUIRES A MATERIAL BREACH

In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will refrain from doing anything that unfairly interferes with the rights of any other party to receive the benefits of the contract; however the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

In many states, a party cannot breach the implied covenant of good faith and fair dealing without breaching an express provision of the parties' underlying contract. In Pennsylvania, a party bringing a breach of contract claim must show there is a material breach of contract.

### A. LIABILITY

(1)    Plaintiff Annie Mullen claims that the defendant, Citizens Bank, breached its contract and duty of good faith and fair dealing with the plaintiff and the Class.

Do you find by preponderance of the evidence the following:

(i)    **Did the plaintiffs and the subclass enter into a contract with the defendant?**

Yes ☐        No ☐

(ii)    (a)    **Did the defendant breach the contract by unfairly interfering with the plaintiffs' and the subclass's rights to receive the benefits of the contract?**

Yes ☐        No ☐

(b)    **Did the plaintiffs show either performance or excuse from performance?**

Yes ☐        No ☐

(iii)    **Did the defendant's conduct affect a fundamental purpose or essence of the contract?**

Yes ☐        No ☐

(iv)    **As a result, were the plaintiff and the subclass harmed?**

Yes ☐        No ☐

If you selected "yes," for all of the elements listed above, please answer the question in part B. If you selected "no," for any of the elements listed above please skip to the end of the form.

5

## B. DAMAGES

**Has plaintiff proved by a preponderance of the evidence the amount of damages suffered by plaintiff and the subclass?**

Yes ☐                    No ☐

If yes, complete the following blank: The [Court/Jury] finds actual damages for Plaintiff and the Breach of Contract and Good Faith and Fair Dealing Subclass 3 in the amount of $_____. (If you answered "no," do not complete the blank.)

Yes ☐                    No ☐

**PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS**

**UNJUST ENRICHMENT**

**BANK DEBIT MDL 2036**

*Set forth below are suggested interrogatories that would be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

## II. UNJUST ENRICHMENT

### SUBCLASS # 1

### THE RESTATEMENT'S BASIC TEST

A party is enriched if she receives a benefit. A party is unjustly enriched if the retention of the benefit would be unfair. A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received by the defendant. If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.[1]

Connecticut, Illinois, Michigan, New Hampshire and Vermont use the *Restatement's* definition of unjust enrichment to determine liability.

### A. LIABILITY

Plaintiffs Gale Hercula, Jessica Duval, Sheryl Wood, Annie Mullen, Jill Giordano, Michael L. Blankenship, Jaclyn Curtis, Marcea Taylor, Eric Daniels, Kathleen Dwyer and Richard Winkelman claim that the defendant, Citizen Bank, was unjustly enriched.

Do you find by a preponderance of the evidence the following:[2]

**(i)**    **Did the plaintiffs and the subclass confer a benefit on the defendant?**

Yes ☐            No ☐

**(ii)**   **Did the defendant accept a benefit from the plaintiffs and the subclass?**

Yes ☐            No ☐

**(iii)**  **Under the circumstances, would it be unfair for the defendant to retain the benefit?**

---

[1] *Restatement (First) of Restitution* §1 (1937) ("*Restatement*").

[2] *See,* 21B Am. Jur. *Pleading & Practice Forms: Restitution & Implied Contracts* §12.1.

1

Yes ☐                    No ☐

## B. RESTITUTION

(i)     **Have plaintiff[s] proved by a preponderance of the evidence the amount that should be restituted to plaintiff[s] and the subclass?**

Yes ☐                    No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiffs and the Unjust Enrichment Subclass 1 is $_____. (If you answered "no," do not complete the blank.)

2

**SUBCLASS # 2**

**THE RESTATEMENT'S TEST AND APPRECIATION OF THE BENEFIT**

A party is enriched if she receives a benefit. A party is unjustly enriched if the retention of the benefit would be unfair. A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received by the defendant. If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.

Pennsylvania and Rhode Island use the *Restatement's* definition of unjust enrichment and require that the defendant appreciate the benefit to determine liability.

**A. LIABILITY QUESTIONS**

Plaintiffs Annie Mullen, Jill Giordano and Michael L. Blankenship claim that the defendant, Citizens Bank, was unjustly enriched.

Do you find by a preponderance of the evidence the following:

(i)     **Did the plaintiffs and the subclass confer a benefit on the defendant?**

Yes ☐          No ☐

(ii)    **Did the defendant accept money from the plaintiffs and the subclass?**

Yes ☐          No ☐

(iii)   **Did the defendant appreciate the benefit it was receiving from the plaintiffs and the subclass?**

Yes ☐          No ☐

(iv)    **Under the circumstances, would it be unfair for the defendant to retain the benefit?**

Yes ☐          No ☐

3

## B. RESTITUTION

(i)     **Have plaintiffs proved by a preponderance of the evidence the amount that should be restituted to plaintiffs and the subclass?**

Yes ☐                No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiffs and Unjust Enrichment Subclass 2 is $_____. (If you answered "no," do not complete the blank.)

4

SUBCLASS # 3

### THE RESTATEMENT'S TEST AND REQUIRES AN INADEQUATE REMEDY AT LAW

A party is enriched if she receives a benefit. A party is unjustly enriched if the retention of the benefit would be unfair. A party obtains restitution when she is restored to the position she formerly occupied either by the return of something which she formerly had or by the receipt of its equivalent in money. Ordinarily, the measure of restitution is the amount of enrichment received by the defendant. If the loss suffered differs from the amount of benefit received, the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.

Delaware, Massachusetts, New Jersey, New York and Ohio require that there be an inadequate remedy at law before bringing an unjust enrichment claim.

### A. LIABILITY QUESTIONS

Plaintiffs Jaclyn Curtis, Marcea Taylor, Eric Daniels, Kathleen Dwyer and Richard Winkelman claim that the defendant, Citizens Bank, was unjustly enriched.

**(1)** Do you find by a preponderance of the evidence the following:

    **(i)** **Do the plaintiffs and the subclass have an adequate remedy at law?**

        Yes ☐        No ☐

        If you selected "yes," please skip to the end of the form. If you selected "no," please answer question 2.

**(2)** Do you find by a preponderance of the evidence the following:

    **(i)** **Did the plaintiffs and the subclass confer a benefit on the defendant?**

        Yes ☐        No ☐

    **(ii)** **Did the defendant accept the benefit from the plaintiffs and the subclass?**

        Yes ☐        No ☐

    **(iii)** **Under the circumstances, would it be unfair for the defendant to retain the benefit?**

        Yes ☐        No ☐

5

**B. RESTITUTION**

(i)     **Have plaintiffs proved by a preponderance of the evidence the amount that should be restituted to plaintiffs and the subclass?**

Yes ☐                    No ☐

If "yes," complete the following blank: The [Court/Jury] finds that the appropriate amount of restitution for Plaintiff[s] and Unjust Enrichment Subclass 3 is $_____. (If you answered "no," do not complete the blank.)

**PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS**

**UNCONSCIONABILITY**

**BANK DEBIT MDL 2036**

*Set forth below are suggested interrogatories to be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

# III. UNCONSCIONABILITY

## SUBCLASS # 1

### BOTH PROCEDURAL AND SUBSTANTIVE UNCONCSCIONABILITY

All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.[1]

In Connecticut, Delaware, Massachusetts, Michigan, New Hampshire, New Jersey, Pennsylvania, Ohio and Rhode Island, plaintiff must show both substantive and procedural unconscionability to prevail.

In Illinois and Indiana, plaintiff may prevail if only *either* substantive *or* procedural unconscionability is shown.

## A. LIABILITY

Plaintiffs Annie Mullen, Eric Daniels, Kathleen Dwyer, Gale Hercula, Michael L. Blankenship, Jessica Duval, Marcea Taylor, Jill Giordano and Richard Winkleman claim that defendant Citizens Bank's overdraft provisions and practices are unconscionable.

Do you find by a preponderance of the evidence the following:

(i)      **Were defendant's overdraft provisions procedurally unconscionable due to the parties' unequal bargaining position and the adhesionary nature of the contract?**

---

[1] U.C.C. §2-302 (2011).

1

Yes ☐                No ☐

If yes, skip to "B" for class members in Illinois and Indiana.

(ii)    **Were defendant's overdraft provisions substantively unconscionable because the contractual terms were so one-sided as to be unreasonable and unfair?**

Yes ☐                No ☐

### B. EQUITABLE RELIEF

(i)     **Should the defendant's overdraft provisions be stricken from the account agreement as unconscionable?**

Yes ☐                No ☐

If yes, the Court may declare defendant's contractual provisions to be unconscionable.

(ii)    **Were defendant's overdraft practices unconscionable?**

Yes ☐                No ☐

If yes, the Court may declare defendant's overdraft fee practices to be unconscionable.

(iii)   **Have plaintiffs proved by a preponderance of the evidence the harm suffered by plaintiffs and the subclass as a result of defendant's past practices?**

Yes ☐                No ☐

If yes, complete the following blank: The [Court/Jury] awards monetary relief for Plaintiffs and the Unconscionability Subclass 1 in the amount of $_____. (If you answered "no," do not complete the blank.)

The [Court/Jury] declares that the contractual provisions and overdraft practice are procedurally unconscionable and awards additional monetary relief for class members in Illinois and Indiana in the amount of $_____. (If you answered "no," do not complete the blank.)

2

SUBCLASS # 2

SUBSTANTIVE UNCONSCIONABILITY ALONE IS SUFFICIENT

All of the states, with the exception of Louisiana, have adopted statutes that are the same or substantially identical to Uniform Commercial Code ("U.C.C.") §2-302, which provides:

> (1) If the court as a matter of law finds the contract or any term of the contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable term, or it may so limit the application of any unconscionable term as to avoid any unconscionable result.

> (2) If it is claimed or appears to the court that the contract or any term thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.[2]

In New York and Vermont, plaintiff may show only substantive unconscionability to prevail. Additionally, in Illinois and Indiana, plaintiff may show either procedural or substantive unconscionability.

A. LIABILITY

Plaintiffs Jaclyn Curtis and Sheryl Wood claim that Citizens Bank's overdraft provisions and practices are unconscionable.

Do you find by a preponderance of the evidence the following:

**Were defendant's overdraft provisions substantively unconscionable because the contractual terms were unreasonably and unfairly one-sided in favor of defendant?**

Yes ☐          No ☐

B. EQUITABLE RELIEF

(i)     **Should the defendant's overdraft provisions be stricken from the account agreement as unconscionable?**

Yes ☐          No ☐

If yes, the Court may declare defendant's contractual provisions to be unconscionable.

---

[2] U.C.C. §2-302 (2011).

3

    **(ii)**      **Were defendant's overdraft practices unconscionable?**

         Yes ☐         No ☐

         If yes, the Court may declare defendant's overdraft fee practices to be unconscionable.

    **(iii)**     **Have plaintiffs proved by a preponderance of the evidence the harm suffered by plaintiffs and the subclass as a result of defendant's past practices?**

         Yes ☐         No ☐

If yes, complete the following blank: The [Court/Jury] awards monetary relief for Plaintiffs and the Unconscionability Subclass 2 in the amount of $_____. (If you answered "no," **do not** complete the blank.)

The [Court/Jury] **declares** that the contractual provisions and overdraft practice are substantively unconscionable and awards additional monetary relief for class members in Illinois and Indiana in the amount of $_____. (If you answered "no," do not complete the blank.)

4

# PLAINTIFFS' PROPOSED SPECIAL VERDICT FORMS

## STATE UNFAIR AND DECEPTIVE TRADE PRACTICE ACTS

### BANK DEBIT MDL 2036

*Set forth below are suggested interrogatories that would be presented on Special Verdict Forms at Trial. This form is meant to be illustrative only, and not comprehensive. Plaintiffs may suggest changes to the special interrogatories herein. Moreover, the absence of any claim or state from the subclasses suggested below is not intended to constitute a waiver of any claims currently, or in the future, brought in this action.*

## IV. STATE UNFAIR AND DECEPTIVE TRADE PRACTICES ACTS

### MASSACHUSETTS

### A. LIABILITY

Plaintiffs Eric Daniels, Kathleen Dwyer, Marcea Taylor and Richard Winkelman claim that the defendant, Citizens Bank, violated MASS. GEN. LAWS Ch. 93A, § 2.

Do you find by a preponderance of the evidence the following:

**(i)   Did the defendant engage in an unfair act or practice within its trade or business?**

Yes ☐          No ☐

If yes, skip to "iii." If no, go to "ii."

**(ii)  Did the defendant engage in a deceptive act or practice within its trade or business?**

Yes ☐          No ☐

**(iii) As a result of the defendant's conduct, did plaintiffs suffer damages?**

Yes ☐          No ☐

If the answer to any of the foregoing questions was "no,' please skip to New York.

### B. DAMAGES

**Have plaintiffs proved by a preponderance of the evidence the amount of actual damages suffered by plaintiffs?**

Yes ☐          No ☐

If "yes," complete the following blank: The [Court/Jury] awards actual damages for Plaintiffs and the Massachusetts Class in the amount of $_____. (If you answered "no," do not complete the blank.).

If "no," the [Court/Jury] awards actual damages for Plaintiffs and the Massachusetts Class in the amount of $_____ based on a minimum damage finding of $25 per Plaintiff and each member of the Massachusetts Class.

1

## NEW YORK

### A. LIABILITY

Plaintiff Jaclyn Curtis claims that the defendant, Citizens Bank, violated N.Y. GEN. BUS. LAW § 349(a).

Do you find by a preponderance of the evidence the following:

**(i)     Did the defendant engage in an act that was misleading in a material way?**

Yes ☐          No ☐

**(ii)    Was defendant's act or practice consumer-oriented?**

Yes ☐          No ☐

**(iii)   As a result of the defendant's conduct, did plaintiffs suffer injury?**

Yes ☐          No ☐

If the answer to any of the foregoing questions was "no,' please skip to Vermont.

### B. DAMAGES

**Has plaintiff proved by a preponderance of the evidence the amount of actual damages suffered by plaintiff?**

Yes ☐          No ☐

If "yes," complete the following blank: The [Court/Jury] awards actual damages for Plaintiff and the New York Class in the amount of $_____. (If you answered "no," do not complete the blank.).

If "no," the [Court/Jury] awards actual damages for Plaintiffs and the New York Class in the amount of $_____ based on a minimum damage finding of $50 per Plaintiff and each member of the New York Class.

2

## PENNSYLVANIA

### A. LIABILITY

Plaintiff Annie Mullen claims that the defendant, Citizens Bank, violated 73 P.S. § 201-1 *et seq.*

Do you find by a preponderance of the evidence the following:

(i)     **Did the defendant represent that its goods or services have characteristics that they do not have?**

Yes ☐          No ☐

(ii)    **Did the defendant fail to comply with the terms of its written contracts?**

Yes ☐          No ☐

(iii)   **Did the defendant engage in fraudulent or deceptive conduct which created a likelihood of confusion or of misunderstanding?**

Yes ☐          No ☐

(iv)    **Did defendant's actions occur in trade or commerce?**

Yes ☐          No ☐

(v)     **As a result of the defendant's conduct, did plaintiffs suffer damages?**

Yes ☐          No ☐

If the answer to any of the foregoing was "no,' please stop.

### B. DAMAGES

**Has plaintiff proved by a preponderance of the evidence the amount of actual damages suffered by plaintiff?**

Yes ☐          No ☐

If "yes," complete the following blank: The [Court/Jury] awards actual damages for Plaintiff and the Pennsylvania Class in the amount of $_____. (If you answered "no," do not complete the blank.).

If "no," the [Court/Jury] awards actual damages for Plaintiffs and the Pennsylvania Class in the amount of $_____ based on a minimum damage finding of $100 per Plaintiff and each member of the Pennsylvania Class.

3

**Do you award punitive damages to plaintiff and the Pennsylvania Class?**

Yes ☐                    No ☐

If "yes," complete the following blank: The [Court/Jury] awards exemplary damages for Plaintiff and the Pennsylvania Class in the amount of $_____. (If you answered "no," do not complete the blank.).

4

## VERMONT

### A. LIABILITY

Plaintiff Sheryl Wood claims that the defendant, Citizens Bank, violated VT. STAT. ANN. tit. 9, § 2453(a).

Do you find by a preponderance of the evidence the following:

**(i)**     **Did the defendant engage in an unfair act or practice within its trade or business?**

Yes ☐               No ☐

If yes, skip to "iii." If no, go to "ii."

**(ii)**     **Did the defendant engage in a deceptive act or practice within its trade or business?**

Yes ☐               No ☐

**(iii)**   **As a result of the defendant's conduct, did plaintiffs suffer damages?**

Yes ☐               No ☐

If the answer to any of the foregoing questions was "no,' please skip to the end of the form.

### B. DAMAGES

**Have plaintiffs proved by a preponderance of the evidence the amount of actual damages suffered by plaintiffs?**

Yes ☐               No ☐

If "yes," complete the following blank: The [Court/Jury] awards actual damages for Plaintiffs and the Vermont Class in the amount of $_____. (If you answered "no," do not complete the blank.).

**Do you award exemplary damages to plaintiff and the Vermont Class?**

Yes ☐               No ☐

If "yes," complete the following blank: The [Court/Jury] awards exemplary damages for Plaintiff and the Vermont Class in the amount of $_____. (If you answered "no," do not complete the blank.).