UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL NO. 2036
*Fourth Tranche*

THIS DOCUMENT RELATES TO:

*Simmons v. Comerica Bank*
N.D. Tex. Case No. 10-cv-326
S.D. Fla. Case No. 1:10-cv-22958

COMERICA BANK'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL AND FOR
SANCTIONS AND INCORPORATED MEMORANDUM OF LAW

**Kenneth C. Johnston**
Texas Bar No. 00792608
**James B. Greer**
Texas Bar No. 24014739
**Eliot J. Walker**
Texas Bar No. 24058165

**KANE RUSSELL COLEMAN & LOGAN PC**
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
(214) 777-4200 (telephone)
(214) 777-4299 (facsimile)

**ATTORNEYS FOR COMERICA BANK**

I.
**INTRODUCTION**

Plaintiffs filed an utterly baseless and bad faith Motion to Compel and for Sanctions (Doc. No. 2911) (the "Motion"). Comerica Bank ordinarily would not use such caustic words, but the volume of discovery completed to date—not to mention the complete disregard for negotiated discovery agreements— warrants harsh criticism.

Comerica Bank has provided extensive discovery pursuant to an agreed-upon protocol for electronically stored information and an agreed-upon list of custodians, among other agreements. Despite these agreements, and the over $600,000 in discovery expenses already incurred by Comerica Bank, the Plaintiffs ask the Court to restart discovery at square one.

As this Court knows, the parties' discovery has focused on Comerica Bank's overdraft policies and the transaction records that Plaintiffs believe prove their claims. Now, shortly after this Court granted class certification, Plaintiffs have hastily filed a motion for sanctions that seeks to expand the agreed-upon scope of discovery to over 70 custodians, at a cost of over $300,000, exclusive of attorney's fees. Despite settlements in MDL 2036 nearing $1 billion, the Plaintiffs refuse to spend their own money in their proposed fishing expedition. The Court should deny the Motion; however, if the Court wants to allow the discovery, then the Court should shift the costs to the Plaintiffs.

II.
**SUMMARY OF DISPUTE AND OPPOSITION**

The Motion generally accuses Comerica Bank of (1) collecting from an inadequate number of custodians; and (2) failing to adequately supervise discovery collection. Both accusations defy all logic. Regarding the first accusation, the parties *expressly agreed* to the list of custodians from whom Comerica Bank would collect information. Plaintiffs now feign ignorance of that agreement, cry

"sanctions," and demand production from some "60-75 custodians" that the parties did *not* agree upon.

Regarding the second accusation, Comerica Bank expressly offered to share with Plaintiffs the privileged communications between Comerica Bank's in-house legal counsel and the custodians at issue, documenting the steps taken to identify and produce relevant information.[1]  *Plaintiffs expressly rejected Comerica Bank's offer.*  Consequently, the Court can only conclude that Plaintiffs' contention about inadequate supervision rests on Plaintiffs' willful ignorance.

Plaintiffs have filed the Motion without regard to the communications relevant to their accusations.  Plaintiffs simply ask this Court to subject Comerica Bank to exorbitant discovery sanctions based on their say-so.  Plaintiffs cite no relevant legal authority supporting their request.  Rather than entertain Plaintiffs' demands, the Court should deny the Motion and award Comerica Bank attorneys' fees incurred in its response.  In the alternative, Comerica Bank remains willing to conduct the discovery requested by Plaintiffs, duplicative and unnecessary though it may be, provided Plaintiffs shoulder the cost.

## III.
### BACKGROUND

**A.    The Parties' Agreements Regarding Production of Electronically Stored Information**

Since the outset of this litigation, Comerica Bank has worked in cooperation with Plaintiffs' Executive Committee ("PEC") in coordinating discovery.  The parties have negotiated and entered into numerous agreements regarding the scope, form, and production of electronic discovery.  Notable agreements relevant to the Motion include the following:

> **1.    The Stipulated Discovery Plan for Electronically Stored Information (the "ESI Protocol").**  The parties have conducted electronic discovery in

---

[1] In accordance with and expressly subject to the protection available under FED. R. EVID. 502(e).

this case pursuant to an ESI Protocol proposed by Plaintiffs.[2] The ESI Protocol indicates, among other things, that counsel for both parties will correspond regarding the "custodians and sources of documents from which they are collecting ESI."[3] Notably, the ESI Protocol only requires that each party "make a reasonable and diligent effort to search for and collect reasonably accessible and responsive ESI," but leaves the specific manner of the collection to each party's discretion.[4] The ESI Protocol also indicates that each party will "filter the ESI it collects using search terms and each Defendant will provide a list of its search terms to Plaintiffs[.]"[5]

      **2.**    **Agreement Regarding Comerica Bank's Custodians ("Custodian Agreement").** In August of 2011, counsel for both parties met and conferred regarding the appropriate custodians from whom Comerica Bank would gather materials potentially relevant to this litigation.[6] On August 18, 2011 counsel for Comerica Bank sent to Plaintiffs' counsel a "List of Core and Non-Core ESI Custodians" for Plaintiffs' review before Comerica Bank began collection.[7] The list consists of sixteen "core custodians," eight "non-core/potential custodians," and seven "former employees."[8] On September 2, 2011, Plaintiffs' counsel wrote to Comerica Bank stating that Plaintiffs "consent to the list of custodians you sent[.]"[9]

      **3.**    **Agreement Regarding Comerica's Search Terms ("Search Terms Agreement").** On July 25, 2011, Plaintiffs' counsel submitted to Comerica Bank a Microsoft Excel spreadsheet containing a series of search terms for filtering

---

[2] *See* Declaration of Kenneth C. Johnston ("Johnston Decl.") (attached as Exhibit 1), Exh. A (Email from Robert C. Gilbert, Grossman Roth, P.A., to Kenneth Johnston (July 6, 2011)).

[3] *Id.* at 2.

[4] *Id.*

[5] *Id.* at 3

[6] *See* Johnston Decl. Exh. B (Email from James B. Greer to Mazin Sbaiti, Baron & Budd, P.C. (Aug. 18, 2011)).

[7] *See id.*

[8] *Id.*

[9] *See* Johnston Decl., Exh. C (Email from Mazin Sbaiti to James B. Greer (Sept. 2, 2011)). Mr. Sbaiti also indicated, appropriately, that Plaintiffs reserved the right to modify the list as discovery evolved. *See id.* Comerica Bank remains open to any specific suggestions from Plaintiffs' counsel regarding additional custodians they believe may have responsive data, based upon Plaintiffs' review of the record.

the data collected by Comerica Bank.[10] Comerica Bank accepted Plaintiffs' search terms without objection and provided them to its e-discovery vendor, Xact Data Discovery, for application to the collected data.[11] Outside counsel for Comerica Bank then reviewed and produced relevant materials from this filtered collection of ESI.[12]

**B.     The Deposition of Kathleen Green**

On February 28, 2012, Plaintiffs' counsel, Benjamin F. Johns, served Comerica Bank with a simple notice of 30(b)(6) deposition (the "Original Notice").[13] Neither Mr. Johns nor his firm, Chimicles & Tikellis LLP, are members of the PEC.

The Original Notice identified three topics for examination:

(1)     the "retention and storage of physical and electronic documents, databases, and electronically stored information at Comerica";

(2)     the "processes, criteria and parameters for identifying, searching for, gathering, collecting, assembling and/or producing documents and electronically stored information from custodians and repositories, in response to Plaintiffs' requests for production of documents in this case"; and

(3)     the "use of Lotus Notes at Comerica during the relevant time period."[14]

Comerica Bank identified Ms. Kathleen Green as the appropriate 30(b)(6) designee for these limited topics. Ms. Green, a Senior Security Engineer at Comerica Bank, coordinates the technical process-

---

[10] *See* Johnston Decl. at ¶ 20 & Exh. D (Email from James Greer to Benjamin Johns, Chimicles & Tikellis LLP (Aug. 14, 2012), forwarding Email from Mazin Sbaiti to James B. Greer & Kenneth Johnston (July 25, 2011).

[11] *See* Johnston Decl. at ¶ 20.

[12] *See id.*; *see also* Deposition of Kathleen Green, dated July 25, 2012 ("Green Dep."), at 39:12-19 (filed under seal as Exhibit C to the Motion).

[13] *See* Johnston Decl., Exh. E (Email from Benjamin Johns to Kenneth Johnston and James B. Greer (Feb. 13, 2012)). The Motion wholly omits any mention of this Original Notice, which formed the basis of the parties' negotiations and preparation for the Rule 30(b)(6) deposition. *See* Motion at 3.

[14] Johnston Decl., Exh. E at 3.

es of the Bank's storage and collection of electronic information in litigation, including this case.[15] The parties agreed to conduct Ms. Green's deposition on July 25, 2012, in Troy, Michigan.[16]

On July 16, 2012—just seven business days before the deposition that Plaintiffs had noticed four and a half months earlier—Mr. Johns served Comerica Bank with a new 30(b)(6) deposition notice (the "Second Notice").[17] The Second Notice greatly expanded the topics for examination from three to seven, as follows:

(1) The search for and retrieval of Documents and Electronically Stored Information by Comerica in response to Plaintiffs' Discovery Requests.

(2) The ability to run queries and searches on Comerica's internal databases and Electronically Stored Information.

(3) The manner in which e-mails, Documents, and Electronically Stored Information requested by Plaintiffs in this case are maintained and preserved at Comerica. This includes, without limitation, all systems and software used by Comerica to store and preserve this material.

(4) Steps taken by or on behalf of Comerica to preserve the Documents and Electronically Stored Information requested by Plaintiffs in this case.

(5) The Document retention policies at Comerica.

(6) Any and all litigation hold(s) issued in this case at Comerica.

(7) Steps taken by or on behalf of Comerica to ensure that all Electronically Stored Information and Documents requested by Plaintiffs in this case have either been produced or accounted for.[18]

Notably, the Second Notice did not include the topics listed in the Original Notice, in their original form. Moreover, the Second Notice also included dramatically overbroad definitions, at-

---

[15] *See* Green Dep. at 9:22-10:5.

[16] *See* Johnston Decl., Exh. F (Email from Eliot Walker to Benjamin F. Johns et al. (June 14, 2012)).

[17] *See* Johnston Decl., Exh. G (Email from Benjamin F. Johns to James B. Greer et al. (July 16, 2012)).

[18] *Id.*

tempting to hold Comerica Bank's designee responsible for testifying not only on behalf of the Bank, but also for "all persons acting for, or on behalf of, or in concert with Defendant."[19] Comerica Bank accordingly submitted objections to Plaintiffs' counsel, objecting to, among other things, the dramatically expanded scope of the notice, the overbroad substantive scope of the notice, and the attempt to discover privileged communications or "information regarding the actions of Comerica Bank's counsel, which are more appropriately addressed in the meet and confer process[.]"[20]

At the deposition, Mr. Johns' questioning appeared to be totally divorced from the record in this case, leading to misguided and incomplete strands of questioning that left both Ms. Green and Mr. Johns confused. Exacerbating the problem, Mr. Johns relentlessly questioned Ms. Green regarding *legal* issues that were the subject of *counsel's* meet and confer efforts, and/or were privileged.

The resulting deposition consisted of a confused mish-mash of "gotcha" attempts. For example, Mr. Johns asked Ms. Green to explain any and all of Comerica Bank's responses to Plaintiffs' various interrogatories and requests for production in this entire case. Ticking one by one through legal documents exchanged by the parties' counsel, Mr. Johns directed Ms. Green to explain the "basis" of Comerica Bank's responses and objections to, for example, "Interrogatory Number 14."[21] Comerica Bank's responses to these requests were handled, of course, not internally by the Bank but by Comerica Bank's outside counsel in this litigation, pursuant to meet and confer efforts between the parties' counsel.[22] When Ms. Green explained her unfamiliarity with these legal documents,

---

[19] *Id.* at 2.

[20] *See* Johnston Decl., Exh. H at 1-2 (objections attached to Email from Laura Aaron to Benjamin Johns et al. (July 24, 2012)).

[21] Green Dep. at 115:8-12 ("Interrogatory Number 14"); *see also, e.g., id.* at 110:22-111:25 ("Interrogatory Number 2"), 120:24-121:8 ("Request Number 12 on Page Number 9"), 122:3-14 ("Let's look at Number 14"), 123:4-13 ("Page 20, Request Number 39"), 124:10-20 ("Page 26 . . . Number 56"), 126:1-7 ("Number 58").

[22] *See* Johnston Decl. at ¶ 20.

Mr. Johns nevertheless demanded that Ms. Green confirm that the Bank had fully responded to each specific legal request. To each request, Ms. Green answered, honestly, "I cannot answer that,"[23] or "[n]o, I do not know."[24]

Regarding Comerica Bank's collection processes, Ms. Green explained the process by which Comerica Bank's internal legal counsel directed first a broad litigation hold at the outset of this litigation, and then conducted a more focused collection of the "core" and "non-core" custodians.[25] Apparently unaware of the parties' Custodian Agreement, Mr. Johns asked Ms. Green to explain why Comerica Bank collected only the "core" and "non-core" custodians' files.[26] The Motion characterizes this *agreed-upon* collection process as "inexplicabl[e]."[27]

In an attempt to alleviate the confusion of Mr. Johns' questioning, counsel for Comerica Bank explained at the deposition that "all of this discovery was done in connection and direction of outside counsel and in-house counsel and so the coordination, if you will, was done on the legal side and the directives, if you will, were given [by counsel] to the IT folks[.]"[28] Ms. Green likewise explained to Mr. Johns that any "follow-up" with custodians may "have happened *by legal or Comerica legal counsel*," but that she personally could not vouch for such communications.[29] Mr. Johns, undeterred, plowed on.[30]

---

[23] Green Dep. at 120:7.

[24] *Id.* at 123:13.

[25] *See* Green Dep. at 28:5-29:14; *supra* p. 2 (discussing the Custodian Agreement).

[26] Green Dep. at 28:5-29:14.

[27] Motion at 5.

[28] Green Dep. at 99:6-24; *see also id.* at 113:3-115:6 (objecting to Mr. Johns' questions as both beyond the scope of Ms. Green's knowledge and at odds with the record as Plaintiffs' counsel knows it).

[29] Green Dep. at 27:12-25 (emphasis added).

[30] *See, e.g.*, Green Dep. at 114:24-115:6 (Plaintiffs' counsel suggested falsely to Ms. Green that Comerica Bank had failed to review inaccessible—versus readily accessible—ESI. Mr. Johnston stated: "I can't imagine you'll go in front of the judge and try to twist that up when you have full knowledge

C.   **Plaintiffs' Counsel's Refusal to Review the Documents that Allegedly Form the Basis of the Motion**

Immediately after Ms. Green's deposition, Plaintiffs' counsel served various discovery demands upon Comerica Bank.[31]  Plaintiffs charged, among other things, that Comerica Bank's collections process was unsupervised and lacked "follow up."[32]  Plaintiffs' counsel did not identify any instance of spoliation or even what item or category of information Plaintiffs would seek to "compel."[33]

In response to Plaintiffs' accusations, Comerica Bank offered to produce, with appropriate controls under FED. R. EVID. 503(e), the privileged communications between Comerica Bank's counsel and Comerica Bank's custodians that detail the steps taken by Comerica Bank to ensure proper collection and production.[34]  Plaintiffs' counsel *rejected* Comerica Bank's offer, and instead simply informed the Bank that Plaintiffs "intend to file a motion to compel and for sanctions tomorrow."[35]

In an attempt to settle the dispute without Court intervention, Comerica Bank asked Plaintiffs' counsel, earnestly, "what specific relief do you want?"[36]  To date, Plaintiffs have yet to identify any specific item or category of documents they seek, and have even rejected Comerica Bank's offer of the very documents that supposedly form the basis of Plaintiffs' accusations.  Mr. Johns replied

---

at another deposition that as a courtesy to your side we went through the archival system and got stuff out so you could take the deposition.  I think it's repugnant to the process."  Mr. Johns: "Well, everyone's entitled to their opinion.").

[31] *See* Johnston Decl., Exhs. I (Email from Joseph G. Sauder to James B. Greer (July 27, 2012)), J (Email from Benjamin F. Johns to James B. Greer et al. (Aug. 7, 2012)).

[32] *See generally* Motion at 1-2.

[33] *See* Johnston Decl., Exhs. I, J.

[34] *See* Johnston Decl., Exh. K (Email from Eliot Walker to Benjamin F. Johns et al. (Aug. 15, 2012)).

[35] Johnston Decl., Exh. L (Email from Benjamin F. Johns to Eliot Walker et al. (Aug. 16, 2012)).

[36] Johnston Decl., Exh. M (Email from Kenneth Johnston to Benjamin F. Johns (Aug. 16, 2012)).

that "the motion that we are preparing to file" would seek the relief and sanctions now detailed in the Motion.[37] Specifically, Plaintiffs seek to collect materials from over 70 custodians—regardless of the parties' prior agreements, regardless of the relevance of the custodians, and without specifically identifying even a single custodian. Plaintiffs also seek further discovery and the recovery of the costs associated with the Motion.[38]

In a final attempt to avoid unnecessary motion practice before this Court, Comerica Bank wrote to Plaintiffs' counsel twice, detailing the deficiencies of Plaintiffs' accusations and the exorbitant costs of the duplicative and overbroad electronic discovery they demanded.[39] As set forth in these letters, Comerica Bank would be amenable to Plaintiffs' specially-requested form of forensic e-discovery under a cost-shifting arrangement.[40] According to Xact Data Discovery, the projected cost of the data collection proposed by Plaintiffs may exceed $300,000.[41] This figure does not encompass the attorney hours and subsequent costs that would be entailed by Plaintiffs' claimed right to re-open discovery entirely.[42] Plaintiffs' counsel merely responded "[w]e read your letter, do not agree to pay the costs described in it, and will file our motion tomorrow."[43]

---

[37] *See* Johnston Decl., Exh. N (Email from Benjamin F. Johns to Kenneth Johnston (Aug. 16, 2012)).

[38] *See* Motion at 13-14.

[39] *See* Johnston Decl., Exh. O (Email from Kenneth Johnston to Benjamin F. Johns et al. (Aug. 16, 2012)), and Exh. P (Email from Kenneth Johnston to Benjamin F. Johns et al. (Aug. 23, 2012)).

[40] *See id.*

[41] Declaration of Jill Pace ("Pace Decl.") at ¶ 5 (attached as Exhibit 2).

[42] *See* Motion at 13-14.

[43] Johnston Decl., Exh. Q (Email from Benjamin F. Johns to Kenneth Johnston et al. (Aug. 23, 2012)).

Comerica Bank then asked whether Plaintiffs would accept *any* measure short of the draconian sanctions they demanded.[44] For unknown reasons, Plaintiffs' counsel did not respond, and instead filed the Motion.

## IV.
### ARGUMENT

**A.    The Motion is Factually Baseless, Legally Baseless, and is Brought in Bad Faith**

Rather than review the documents that would explain the ESI collection process, Plaintiffs' counsel elected to file the Motion *willfully ignorant* of the very basis of their accusations.[45] Indeed, the Motion both distorts the record and reflects a complete ignorance of the facts relating to the ESI collection. For example, the Motion focuses on Ms. Green's "testi[mony] that she was not aware of any follow up"—but omits, however, Ms. Green's testimony that the follow-up may "have happened by legal or Comerica legal counsel."[46] The Motion also fails to mention that Plaintiffs' rejected Comerica Bank's offer to share the relevant legal communications.[47] The Motion also appears ignorant of the very agreements that Plaintiffs entered into in this case, including the parties' Custodian Agreement.[48] Given Plaintiffs' explicit refusal to even consult the communications that Plaintiffs claim were deficient, the Motion is baseless on its face.

---

[44] *See* Johnston Decl., Exh. R (Email from Kenneth Johnston to Benjamin F. Johns et al. (Aug. 23, 2012)).

[45] *See supra* pp. 2-3, 8-9.

[46] Motion at 5-9.

[47] *See supra* pp. 7-9. Similarly, the Motion omits Ms. Green's testimony that these five prior "follow-ups" only occurred where specific deficiencies in a particular custodian's production were identified, such as a custodian's failure to produce a file that subsequent review showed should be in the custodian's possession. *See* Green Dep. at 26:23-27:2. Here, Plaintiffs have yet to identify any such deficiency, although Comerica Bank remains receptive to any such communication.

[48] *Compare* Motion at 5 (deriding Comerica Bank's "inexplicabl[e]" collection of "about 20" custodians), *with* Johnston Decl., Exh. C (confirming the parties agreement to collect from these specific custodians).

The deposition of Kathleen Green, which the Motion relies on entirely, was a farce. Rather than delve into the electronic discovery processes of the bank (as set forth in the Original Notice), Plaintiffs' counsel attempted to hold Ms. Green responsible for the communications of both internal and external legal counsel, and demanded that she answer on-the-spot for each and every interrogatory or request for production in this case.[49] Plaintiffs' approach defies both logic and law. It is not humanly possible for a witness to memorize such a catalog of information, nor do the Federal Rules impose such an eidetic requirement.[50] Furthermore, the Federal Rules do not permit litigants to leverage Rule 30(b)(6) as a means to obliterate the attorney-client privilege, ignore the rules of hearsay, or transform a fact witness into a lawyer.[51] Nevertheless, Comerica Bank in good faith *offered* to share with Plaintiffs' counsel the internal legal communications in question, subject to a privilege agreement, to fill the gaps perceived by Plaintiffs' counsel.[52] Plaintiffs' counsel refused this offer, leaving Comerica Bank unaware of how to comply with Plaintiffs' demands.

Plaintiffs' demands, moreover, have no basis in law. As a general matter, "absent an agreement or timely objection, the choice [of a party's means of electronic discovery] is clearly within the

---

[49] *See supra* pp. 6-7.

[50] *See, e.g.*, *Alexander v. FBI*, 186 F.R.D. 137, 143 (D.D.C. 1998) ("Rule 30(b)(6) puts several duties on the designating party and on the deponent, but one of them is not omniscience."); *In re Independent Service Organizations Antitrust Litigation*, 168 F.R.D. 651, 654 (D. Kan. 1996) (finding 30(b)(6) deposition notice regarding party's "defense[s] and counterclaims" to be "overbroad, inefficient, and unreasonable"; such notice "also implicates serious privilege concerns").

[51] *See, e.g.*, *U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Center*, No. 6:09-cv-1002, 2012 WL 3537070, at *4 (N.D. Fla. Aug. 14, 2012) ("[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means."); *Cooley v. Lincoln Elec. Co.*, 693 F. Supp. 2d 767, 791 (N.D. Ohio 2010) ("[T]he fact that a witness is a 30(b)(6) designee does not create a hearsay exception allowing him to simply repeat statements made by corporate officers and employees, if those statements are offered for their truth.").

[52] *See* Johnston Decl., Exh. K.

producing party's sound discretion."[53]  Accordingly, a party's bare allegation "that it suspects it has not received all of the documents to which it is entitled" is insufficient "to grant burdensome discovery requests late in the game."[54]  Here, there is no dispute that Comerica Bank has conducted electronic discovery in accord with the ESI Protocol.[55]  Nor is there any dispute that Plaintiffs' demands—requiring a complete do-over of discovery in this matter, pursuant to an electronic discovery protocol the parties never agreed to—are exorbitantly burdensome.[56]  Unlike the cases cited in the Motion, Plaintiffs have not identified a single instance of spoliation, of failure to produce any specific materials, or of noncompliance with any agreement or order of this Court.[57]  All that exists is a bare allegation that Comerica Bank's collections process was inadequate, based on communications that Plaintiffs remain willfully ignorant of.

B.  **The Court Should Require Plaintiffs to Pay Comerica Bank's Attorney's Fees Incurred in Opposing the Motion**

Upon denial of the Motion, the Court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the

---

[53] *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 427 (D.N.J. 2009) (discussing Sedona Principles).

[54] *Id.* (reviewing authorities).

[55] *See supra* p. 3.

[56] *See supra* p. 9.

[57] *See* Motion at 8-10.  In *Seven Seas Cruises S. DE R.L. v. V. Ships Leisure Sam*, the court considered a party's failure to comply with a prior discovery order, and addressed the movant's submission of "a detailed list of nineteen different employees/custodians and/or email addresses that were not searched by Defendants, and which Plaintiffs claim likely have information relevant to this matter." No. 09-23411-CIV, 2011 WL 772855, at **1-2 (S.D. Fla. Feb. 19, 2011) (cited by Mot. at 8).  In *Kona Spring Water v. World Triathlon*, the court considered a party's failure to timely produce specifically-identified materials (96 telephone recordings) that were relevant to the litigation.  No. 8:05-cv-119, 2007 WL 737624, at *1 (M.D. Fla. Mar. 7, 2007).  In the *John B. v. Goetz* litigation referenced by the Motion at 12, similarly, the Sixth Circuit granted mandamus and *reversed* the district court's order compelling forensic electronic discovery of computer hard drives.  531 F.3d 448, 459-460 (6th Cir. 2008).  As the Sixth Circuit recognized, "mere skepticism that an opposing party has not produced all relevant information is not sufficient to warrant drastic electronic discovery measures."  *Id.*

motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). Accordingly, after offering Plaintiffs' counsel an opportunity to be heard, this Court should award Comerica Bank its attorney's fees incurred in opposing the Motion.

No exception to this Rule applies in this instance. While courts do not award attorney's fees where the "the motion was substantially justified,"[58] here Plaintiffs' counsel expressly declined to even review the communications that form the basis of their allegations.[59] Instead, Plaintiffs blindly fired a barrage of baseless accusations that have no basis in the record and that, in fact, violate the parties' express agreements in this matter.[60] Had Plaintiffs paused to review the communications they complain of, or conferred internally amongst themselves to recall what they had agreed to, Plaintiffs' frivolous filing may have been avoided. In short, there can be no "substantial justification" for the Motion where Plaintiffs willfully refuse to review the documents that allegedly form the basis of their allegations.

### C.    Comerica Bank Is Willing to Produce Electronically Stored Information in Accord With Plaintiffs' Demands, Provided that Plaintiffs Bear the Costs

Comerica Bank stresses that it has no desire to prevent discovery of any relevant matter in this case. Comerica Bank is concerned solely with the burdensome expense entailed by Plaintiffs' non-specific demands regarding the forensic collection of "60-75 custodians . . . emails, documents and ESI," and the attendant costs of Plaintiffs' further demands including the "re-depos[ition] [of] all current or former Comerica witnesses, in Miami."[61] Plaintiffs' demands, notably, are not even premised on any showing of relevance. Comerica Bank has conducted "extensive discovery over the pre-

---

[58] FED. R. CIV. P. 37(a)(5)(B).

[59] *See supra* pp. 7-8.

[60] *See supra* pp. 2-3.

[61] Motion at 13-14.

vious year and a half,"[62] in full compliance with the ESI Protocol and pursuant to the parties' agreements. To date, Comerica Bank has spent in excess of $600,000 in discharging its discovery obligations in this case.[63] Xact Data Discovery projects that complying with Plaintiffs' new demands will cost as high as $313,232 for an initial review, plus data-hosting fees thereafter totaling potentially as high as $28,404 per month.[64] These figures do not include the attorney's fees and related attendant costs of the re-opening of discovery that Plaintiffs seek.

As the Court knows, Comerica Bank is not a national retail bank; it operates in only five states. Comerica Bank's resources are not unlimited. Given the significant cost of Plaintiffs' duplicative and overbroad demands, Comerica Bank respectfully requests the Court consider a cost-shifting arrangement under which Plaintiffs would pay for the discovery they seek. As one District Court recently recognized in a class action proceeding:

> [W]here the cost of producing documents is very significant, the Court has the power to allocate the cost of discovery, and doing so is fair. If Plaintiffs' counsel has confidence in the merits of its case, they should not object to making an investment in the cost of securing documents from Defendant and sharing costs with Defendant.[65]

As the court further stated, "discovery burdens should not force either party to succumb to a settlement that is based on the cost of litigation rather than the merits of the case."[66] Here, the Plaintiffs' hastily-filed Motion follows hot on the heels of the Court's class certification order, and Comerica Bank respectfully submits that the Motion has no purpose other than to pressure the Bank into settlement. As the Court is well aware from the recent class certification hearing, it is Comerica Bank's

---

[62] *Id.* at 3.

[63] *See* Johnston Decl. at ¶ 21.

[64] *See* Pace Decl. at ¶ 5. The fees cannot be precisely determined until Xact Data Discovery filters the data through search commands and de-duplication. Pace Decl. at ¶ 6.

[65] *Boeynaems v. LA Fitness Intern., LLC*, Civil Action Nos., 10-2326, 11-2644, 2012 WL 3536306, at *4 (E.D. Pa. Aug. 16, 2012).

[66] *Id.*

strong desire to try this case on the merits. Accordingly, Comerica Bank respectfully requests the Court to afford it that opportunity by shifting the burdens of electronic discovery in this matter to the Plaintiffs.

## V.
### CONCLUSION

For the foregoing reasons, Comerica Bank respectfully requests the Court deny the Motion and require Plaintiffs to pay Comerica Bank's attorney's fees incurred in responding to the Motion. Should the Court consider Plaintiffs' demands, however, Comerica Bank respectfully requests the Court to order Plaintiffs to pay for the discovery requested by their Motion.

DATED:  August 31, 2012

        Respectfully submitted,

        **KANE RUSSELL COLEMAN & LOGAN PC**

By:   /s/ Kenneth C. Johnston
       Kenneth C. Johnston
       Texas Bar No. 00792608
       James B. Greer
       Texas Bar No. 24014739
       Eliot J. Walker
       Texas Bar No. 24058165

3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas   75201
(214) 777-4200 (telephone)
(214) 777-4299 (facsimile)

ATTORNEYS FOR COMERICA BANK

**CERTIFICATE OF SERVICE**

   I hereby certify that on August 31, 2012, I served the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. Mail on all counsel of record entitled to receive service.

                 /s/ Kenneth C. Johnston
                 Kenneth C. Johnston