# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. **1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Blahut v. Harris Bank, N.A.*
N.D. Ill. Case No. 1:10-2543
S.D. FL Case No. 1:10-cv-21821-JLK

**JOINT DECLARATION OF ROBERT C. GILBERT AND
JEFFREY M. OSTROW IN SUPPORT OF PLAINTIFF'S AND CLASS
COUNSEL'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS**

Robert C. Gilbert and Jeffrey M. Ostrow declare as follows:

1.      We are two of Settlement Class Counsel and Class Counsel, respectively, under

the Settlement Agreement and Release ("Settlement" or "Agreement") with BMO Harris Bank,

N.A., f/k/a Harris Bank, N.A ("Harris Bank" or "Bank").[1]  We submit this declaration in support

of Plaintiff's and Class Counsel's Unopposed Motion for Preliminary Approval of Class

Settlement and for Certification of Settlement Class.  Unless otherwise noted, we have personal

knowledge of the facts set forth in this declaration, and could testify competently to them if

called upon to do so.

_____

[1] All capitalized defined terms have the same meaning as in the Agreement attached as Exhibit A
to Plaintiff's and Class Counsel's Unopposed Motion for Preliminary Approval of Class
Settlement and for Certification of Settlement Class.

2.        After protracted litigation and settlement negotiations, Plaintiff, Class Counsel and Harris Bank entered into the Agreement under which Harris Bank shall: (i) pay $9,400,000 in cash to create a common fund for the benefit of the Settlement Class; (ii) modify its posting order for Debit Card Transactions and the manner in which it assesses Overdraft Fees; and (iii) separately advance and pay the costs of providing Notice to the Settlement Class and the costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator.   Under the Settlement, the vast majority of Settlement Class Members will automatically receive distributions from the Settlement Fund in proportion to the actual harm that each of them sustained.

3.        The Action involved sharply opposed positions on several fundamental legal and factual issues.  Plaintiff and Class Counsel maintain that the claims asserted in the Action are meritorious; that Plaintiff would obtain class certification of a multistate class, establish liability and recover substantial damages if the Action proceeded to trial; and that the final judgment would be affirmed on an appeal.  Plaintiff's ultimate success in the litigation required her to prevail, in whole or in part, at *all* of these junctures.  Conversely, Harris Bank's success at any one of these junctures could or would have spelled defeat for Plaintiff and the Settlement Class. Thus, continued litigation posed significant risks and countless uncertainties, as well as the time, expense and delays associated with trial and appellate proceedings, particularly in the context of complex multidistrict litigation.

4.        In light of the risks, uncertainties and delays associated with continued litigation, the Settlement represents an excellent result for the Settlement Class by providing guaranteed benefits in the form of direct cash compensation and other valuable relief.

A.      **Background of the Litigation.**

5.      On April 23, 2010, Plaintiff Stephanie Blahut sued on behalf of herself and all others similarly situated who incurred Overdraft Fees as a result of Harris Bank's practice of Debit Re-sequencing.  On December 6, 2010, Plaintiff Blahut filed her Amended Class Action Complaint.  Plaintiff alleged that Harris Bank systemically engaged in Debit Re-sequencing to maximize the Bank's Overdraft Fee revenues.  According to the Amended Class Action Complaint, Harris Bank's practices violated the Bank's contractual and good faith duties, were substantively and procedurally unconscionable, violated state unfair trade practices laws, and resulted in conversion and unjust enrichment.

6.      Harris Bank denied all of Plaintiff's allegations of wrongdoing.  Harris Bank consistently argued, *inter alia*, that Plaintiff's claims were preempted by the National Bank Act, that its Account agreements expressly authorize the very practice of Debit Re-sequencing challenged by Plaintiff; that it fully disclosed its practices to its customers; that no unconscionability claim lies for the recovery of damages; that no conversion claim exists; that Plaintiff cannot maintain unjust enrichment claims; and that the statutory consumer protection claim was defective.

B.      **Class Counsel's Investigation.**

7.      Class Counsel devoted substantial resources to investigating the claims of dozens of potential plaintiffs against Harris Bank.  Class Counsel interviewed a number of customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon consumers.  This information was essential to Class Counsel's ability to understand the nature of the Bank's conduct, the language of the Account agreements at issue, and potential claims for relief and remedies.  Class Counsel also expended significant resources researching and developing the legal claims at issue.

8.      Mindful of the Court's emphasis on the development of the factual record in its denial of most points raised in the omnibus motion to dismiss filed by first tranche defendants, Class Counsel crafted document requests and interrogatories with an eye toward class certification, summary judgment and trial.  In response to those discovery requests, Harris Bank produced over five thousand pages of documents.  Class Counsel reviewed and analyzed the Bank's documents.

C.      **The Course of Proceedings.**

9.      On April 23, 2010, Plaintiff Blahut filed the Class Action Complaint, seeking monetary damages, restitution and declaratory relief from Harris Bank's based on its alleged unfair assessment and collection of Overdraft Fees on Debit Card Transactions.  On May 13, 2010, the Judicial Panel on Multi-District Litigation transferred the case to this Court for inclusion in MDL No. 2036.

10.     On December 6, 2010, Plaintiff filed an Amended Class Action Complaint against Harris Bank.  On January 20, 2011, Harris Bank filed a motion to dismiss.  On April 4, 2011, the motion to dismiss was denied.  On April 21, 2011, Harris Bank filed its Answer and Affirmative Defenses, and on July 6, 2011, it filed its Amended Answer and Affirmative Defenses.

11.     On May 23, 2011, Plaintiff served a first request for production of documents, first set of interrogatories and first requests for admissions. On June 21 and 22, 2011, Harris Bank served its responses to Plaintiff's written discovery.  On September 16, 2011, the Parties entered into a Confidentiality Agreement Pertaining to *Fourth Tranche* Actions relating to the production of documents and information.  On October 17, 2011, Plaintiff served her second request for production, and on November 16, 2011, Harris Bank served its responses and objections thereto.  In response to Plaintiff's requests for production, Harris Bank produced over five thousand pages of documents.  On November 8, 2011, the Bank served supplemental

answers to Plaintiff's first set of interrogatories, and on November 16, 2011, the Bank served a response to Plaintiff's second request for production.

12.    Beginning in late 2011, the Parties engaged in preliminary settlement discussions that resulted in the scheduling of mediation.  In advance of mediation, Harris Bank produced certain data and information to Class Counsel concerning, *inter alia*, the amount of Overdraft Fees charged by the Bank during the Class Period.  On November 30, 2011, the Parties participated in a formal full day mediation session under the auspices of Professor Eric Green of Resolutions, LLC.

13.    As a result of the mediation, the Parties signed a Memorandum of Understanding that memorialized, subject to a mutually agreeable written settlement agreement and subject to Preliminary Approval and Final Approval by the Court, as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally, and forever resolve, discharge and release all rights and claims of the Settlement Class Members, based on Harris Bank's agreement to: (i) pay the sum of $9,400,000 to create a common fund for the benefit of the Settlement Class; (ii) modify its posting order for Debit Card Transactions and Overdraft Fee assessment policies; and (iii) separately pay the costs of class notice and settlement administration, in addition to the $9,400,000 Settlement Fund.

14.    After the Parties executed the Memorandum of Understanding, Class Counsel and Harris Bank engaged in protracted discussions and negotiations regarding a number of issues relating to the terms of the Settlement, including the most appropriate method by which to implement the plan for direct allocation of the Settlement Fund to Settlement Class Members who do not opt out of the Settlement.  That investigation required Class Counsel and their experts to analyze the relevant transactional data relating to Overdraft Fees imposed upon

Settlement Class Members, and to determine the fairest and most appropriate distribution formula in light of the data that the Bank possesses.  Once those issues were finally resolved, the Parties finalized and executed the Agreement on September 26, 2012.

>    **D.        Settlement Recovery.**

15.        The Settlement consists of three main components: (a) a $9,400,000 cash fund for the benefit of Settlement Class Members who do not opt out of the Settlement Class; (b) significant practice changes in the way Harris Bank posts Debit Card Transactions and assesses Overdraft Fees; and (c) the separate payment by Harris Bank of the costs of providing Notice to the Settlement Class and the costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator.

16.        The Settlement requires Harris Bank to deposit $9,400,000 into an Escrow Account within fourteen (14) days of this Court's Preliminary Approval of the Settlement.  That deposit will create the Settlement Fund, which will be used to pay: (a) the amount of Court-awarded attorneys' fees, costs and expenses to Class Counsel; and (b) the amount of the Service Award to the Plaintiff; (c) the amount of Excess Costs paid and/or owed to the Notice Administrator and Settlement Administrator; (d) costs, expenses, and fees associated with investing the Settlement Fund; (e) costs, expenses, and fees incurred by the Tax Administrator; (f) the amount of the expenses incurred in connection with establishing and maintaining the Escrow Account; (g) a reservation of a reasonable amount of funds for prospective fees, costs, and expenses to be paid or reimbursed from the Settlement Fund; and (h) additional fees, costs and expenses agreed upon by Settlement Class Counsel and counsel for Harris Bank.   In addition, Harris Bank has agreed to pay the costs of providing Notice to the Settlement Class and all costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator.

17.     All Settlement Class Members who do not opt out of the Settlement will automatically be entitled to *pro rata* distributions from the Settlement Fund.  The analysis and complex distribution formula determines, among other things, which Harris Bank Account holders were assessed Additional Overdraft Fees that would not have been assessed if the Bank had used an alternative posting sequence or method for posting Debit Card Transactions other high to low, and how much in Additional Overdraft Fees those Account holders paid.  The calculation involves a multi-step process described in detail in the Agreement.

18.     Under this Settlement, the vast majority of Settlement Class Members will automatically receive their *pro rata* share of the Net Settlement Fund.  For those identifiable Settlement Class Members, there are no claims forms to fill out, and Settlement Class Members will not be asked to prove that they were damaged as a result of the Bank's Debit Re-sequencing. Instead, Class Counsel and their experts will use available Harris Bank data to determine which Account holders were affected by Debit Re-sequencing, and will apply a formula to calculate each identifiable Settlement Class Member's *pro rata* share of the Settlement Fund.

19.     For a small portion of the Settlement Class, Harris Bank lacks relevant data for a limited portion of the Class Period to identify certain Settlement Class Members and to calculate the amount those Unidentified Settlement Class Members may be entitled to from the Settlement Fund.  For Accounts opened in Illinois between April 23, 2000 and June 30, 2004, and those opened anywhere between April 23, 2004 through June 30, 2004 ("Claims Period"), Harris Bank lacks reasonably accessible data that would permit Class Counsel and their consulting expert to identify those Unidentifiable Settlement Class Members who were affected by Debit Re-sequencing.   To address that limitation, those Unidentified Settlement Class Members who opened Accounts in Illinois between April 23, 2000 and June 30, 2004, and those opened

7

anywhere between April 23, 2004 through June 30, 2004, will be eligible to submit a Claim Form seeking a *pro rata* distribution from the Settlement Fund.

20.     The Claim Form requires claimants to provide the same type of information for Claims that Settlement Class Counsel and their expert will use in determining the amount of automatic distributions from the Net Settlement Fund.  All Unidentifiable Settlement Class Members who timely submit valid Claims will be entitled to a *pro rata* distribution from the Settlement Fund in the same manner as all identifiable Settlement Class Members for which the Bank maintains data, in addition to and not exclusive of any distributions based on existing electronic account records for periods inside the Class Period, but outside the Claims Period.

21.     Settlement Class Members who do not opt out of the Settlement and who are entitled to an automatic distribution (i.e. – those who need not submit Claim Forms) and those Unidentified Settlement Class Members who submit eligible Claim Forms, will receive their Settlement Class Member Payments by check, as soon as practicable, but no sooner than 90 days after the Effective Date. BMO Harris does not currently have the technological capability to provide automatic account credits to the Accounts of its Current Account Holders, as has occurred with other settlements approved and pending approval in MDL 2036, and BMO Harris could not do so for quite some time absent creation and implementation of a system enhancement technology product.

22.     Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Fund Payments.

23.     In addition to the $9,400,000 cash recovery, Class Counsel secured significant non-monetary relief on behalf of the Settlement Class through Harris Bank's agreement to no later than March 31, 2013, the manner in which it assesses Overdraft Fees and the posting order of Debit Card Transactions for a minimum period of three (3) years from the implementation date.

24.     Pursuant to the Settlement, Harris Bank agreed to change from its current posting order to the following: (1) credits; (2) priority debits with ATM withdrawals posted by date and time, or, if date and time information is unavailable, then low to high by amount; (3) all other priority debits (*e.g.* outgoing wires, internal transfers, cash withdrawal/cashed check at teller window, etc.) grouped together and posted low to high by amount; (4) Debit Card Transactions (including PIN and non-PIN transactions) posted by date and time of authorization; (5) ACH transactions posted low to high by amount; (6) checks sorted by check number, with lowest check number posted first, or, if check number information is unavailable, then low to high by amount; and (7) bank initiated transactions (*e.g.* maintenance fees, overdraft fees, ATM fees, etc.) posted low to high by amount.

25.     In addition, Harris Bank agreed to implement a cap of a maximum of four (4) Overdraft Fees assessed to a single Account on any given day, and refrain from assessing an Overdraft Fee unless an Account it has a negative balance of $5.01 or more.

26.     The practice changes described above will provide significant benefits to the Settlement Class.

### E.     Class Release

27.     In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will release Harris Bank from claims related to the subject matter of the Action.

9

## F.      Settlement Notice.

28.      The Notice Program is designed to provide the best notice practicable, and is tailored to take advantage of the information Harris has available about the Settlement Class. The Notice Program is reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Action, class certification, the Settlement terms, the Claims Process, Class Counsel's fee application and request for a Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement.  The Notice and Notice Program constitute sufficient notice to all persons entitled to notice.  The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

29.      The Notice Program is comprised of three parts: (1) direct mail postcard notice ("Mailed Notice") to all Settlement Class Members; (2) publication notice ("Published Notice") designed to reach those Settlement Class Members for whom direct mail notice is not possible; (3) and a "Long Form" notice containing more detail than the direct mail or publication notices, that will be available on the Settlement website (www.HBOverdraftSettlement.com) and via U.S. mail upon request.  The Notice Program is designed to reach a high percentage of the Settlement Class and exceeds the requirements of constitutional due process.

30.      All forms of Notice to the Settlement Class will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from ("opt out") of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date of the Final Approval Hearing; and the address of the Settlement Website at which Settlement Class Members may access the Agreement and other related documents and information.  The Publication Notice, Long Form Notice, and Website will also include information about the Claims Process.

31.     In addition to the information described above, the Long Form notice will describe the procedure that Settlement Class Members must follow to opt out of the Settlement or to object to the Settlement, and/or to Class Counsel's Fee Application.  All opt-outs must be postmarked no later than the Opt-Out Deadline (no later than 28 days prior to Final Approval Hearing), and any objections must be postmarked no later than the last day of the Opt-Out Period.  For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any such cases, and any relevant orders issued in response to such past objections; a statement confirming whether the objector will appear at the Final Approval Hearing and a description of counsel or witnesses who will appear on behalf of the objector at the Final Approval Hearing; and the objector's signature.

### G.     Service Award, Attorneys' Fees And Costs

32.     Class Counsel will seek and Harris Bank will not oppose a Service Award of $5,000 for the named Plaintiff.  If the Court approves it, the Service Award will be paid from the Settlement Fund, and will be in addition to the other relief the named Plaintiff will be entitled to as a Settlement Class Member.  This award will compensate the named Plaintiff for her time and effort and for the risk she undertook in prosecuting the Action against Harris Bank.

33.     Harris Bank will not oppose Class Counsel's request for attorneys' fees of up to thirty-three percent (33%) of the Settlement Fund, plus reimbursement of litigation costs and expenses.  The Parties negotiated and reached this agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

H.      **Considerations Supporting Settlement**

34.     Class Counsel concluded that the benefits of this Settlement outweigh the risks and uncertainties of continued litigation, particularly in the context of this large and complex multidistrict litigation, as well as the attendant time and expenses associated with c possible interlocutory appellate review of a favorable class certification ruling, completing merits discovery, pretrial motion practice, trial, and final appellate review.

1.      **The Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations**

35.     The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  The Parties engaged in a full day formal mediation before an experienced and respected mediator, Professor Eric Green.  These negotiations were arm's-length and extensive.

36.     Furthermore, counsel for both sides are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  Counsel zealously represented their client throughout the Action, which included formal and informal discovery.  In negotiating this Settlement, Class Counsel had the benefit of years of experience and a familiarity with the facts of this Action and other cases involving similar claims.  Class Counsel's involvement in and familiarity with many other cases involving similar claims enabled them to gain an understanding of the evidence related to central questions in the case, and prepared counsel for well-informed settlement negotiations.  Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, and the appropriate basis upon which to settle them, as a result of their familiarity with the outcome of a trial of similar claims in *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010).

### 2.   Risks Associated with Trial Favor Settlement

37.     While Class Counsel are confident in the strength of Plaintiff's case, they are also pragmatic in their awareness of the various defenses available to Harris Bank, and the risks inherent to litigation.  Plaintiff faced the risk of losing at summary judgment, at trial, or on appeal based on various theories advanced by Harris Bank.  The success of Plaintiff's claims in future litigation turns on these and other questions that are certain to arise in the context of motions for summary judgment and at trial, as they did in the *Gutierrez*.  Though the *Gutierrez* plaintiffs were successful at trial, protracted litigation carries inherent risks that would necessarily have delayed and endangered Settlement Class Members' monetary recovery.  Under the circumstances, Plaintiff and Class Counsel appropriately determined that the Settlement reached with Harris outweighs the gamble of continued litigation.  This Settlement provides substantial relief to Settlement Class Members without further delay.

### 3.   The Settlement Amount is Reasonable Given the Range of Possible Recovery.

38.     The $9,400,000 cash recovery is outstanding, given the complexity of the litigation and the significant barriers that would loom in the absence of settlement: contested class certification; motions for summary judgment; trial; and a post-judgment appeal.  Based on Harris Bank's transactional data, Class Counsel estimate that Settlement Class Members' most likely recoverable damages at trial would have been approximately $14,200,000.  Thus, under the Settlement, Class Counsel recovered approximately sixty-five percent (65%) of the Settlement Class' most probable damages, without further risks attendant to litigation.  That is a significant achievement considering the obstacles that Plaintiff faced in the litigation.  The sixty-five percent (65%) recovery is even better when one considers the significant practice changes

that will benefit the Settlement Class and that Harris Bank is paying the costs of Notice and Settlement Administration.

### 4. The Complexity, Expense, and Duration of Ongoing Litigation Favors Settlement.

39.     The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class Members, could be impracticable.   The Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner.

40.     One of the most expensive aspects of ongoing litigation in this case – to which Class Counsel can attest after *Gutierrez* – involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial.  Experts in the fields of marketing and banking may also be necessary.

### 5. Proceedings are at an Appropriate Stage for Settlement.

41.     Class Counsel settled the Action with the benefit of reviewing at least five thousand pages of documents produced by Harris Bank.   As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiff's claims and prospects for success at summary judgment, at trial, and on appeal.

### I. Class Certification For Settlement Purposes

42.     Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.   Under Rule 23(b)(3), certification is

appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

43.     The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of over one hundred thousand Harris Bank customers, and joinder of all such persons is impracticable.

44.     The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on Harris Bank's systematic practice of Debit Re-sequencing for the sole purpose of increasing Overdraft Fee revenue, as alleged in the operative complaint.

45.     Plaintiff is typical of absent Settlement Class Members because she suffered the same injuries, and because she will equally benefit from the relief provided by the Settlement.

46.     Adequacy is established because Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and absent Settlement Class Members have an equally great interest in the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests.  Further, Class Counsel are qualified and competent and have extensive experience prosecuting complex class actions, including consumer actions similar to the instant case.  Class Counsel have devoted substantial time and resources to litigation of this Action.

47.     Plaintiff satisfies the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each member of the Settlement Class.  For example, each Settlement Class

Member's relationship with Harris Bank arises from an Account agreement that is the same in all

relevant respects to other Settlement Class Members' Account agreements.


* * *

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Coral Gables, Florida on October 1, 2012.

/s/ Robert C. Gilbert
Robert C. Gilbert


I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Florida, on October 1, 2012.

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow