UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Eno v. M & I Marshall & Ilsley Bank*
S.D. FL Case No. 1:10-cv-22730-JLK
M.D. FL Case No. 2:10-376

**PLAINTIFFS' AND CLASS COUNSEL'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs and Class Counsel respectfully move for Preliminary Approval of the Settlement Agreement and Release attached as Exhibit A ("Settlement" or "Agreement") that will resolve all claims against BMO M & I Bank, N.A., f/k/a M & I Marshall & Isley Bank ("M & I Bank" or "Bank"), in the Action.[1]  The Court should grant Preliminary Approval because the Settlement – which includes $4,000,000 in cash, plus changes in the Bank's business practices that will provide significant benefits to the Settlement Class – is well within the range of reasonableness, and consistent with applicable case law.  Indeed, in light of the obstacles Plaintiffs faced, including, the Bank's pending appeal of this Court's Order denying its motion to compel arbitration ("Appeal"), the Settlement, which secures approximately twenty-five percent (25%) of the most probable class-wide damages, is an excellent result for the Settlement Class of

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the  Agreement.

M & I Bank Account holders. *See* Joint Declaration of Robert C. Gilbert and Jeffrey M. Ostrow at ¶ 39 attached as Exhibit B. ("Joint Decl. at ¶ __"). The Settlement satisfies all Eleventh Circuit criteria for approval.

Accordingly, Plaintiffs and Class Counsel respectfully request that the Court take the following initial steps in the settlement approval process: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice Program set forth in the Agreement and the form and content of the Notices attached to the Agreement as Exhibits 1, 2 and 3; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint as class representative the Plaintiffs listed in paragraph 33 of the Agreement; (6) appoint as Class Counsel and Settlement Class Counsel the law firms and attorneys listed in paragraphs 17 and 46 of the Agreement, respectively; (7) stay the Action pending Final Approval of the Settlement; and (8) schedule a Final Approval Hearing during the week of April 8-12, 2013, if convenient for the Court. A [Proposed] Order Preliminarily Approving Class Settlement and Certifying Class is attached as Exhibit C.

## I.     INTRODUCTION

Plaintiffs sued on behalf of themselves and all others similarly situated who incurred Overdraft Fees as a result of M & I Bank's practice of Debit Re-sequencing. Plaintiffs allege that M & I Bank systemically engaged in Debit Re-sequencing to maximize the Bank's Overdraft Fee revenue. According to Plaintiffs, M & I Bank's practices violated the Bank's contractual and good faith duties to the Settlement Class, were substantively and procedurally unconscionable, violated state unfair trade practices laws, and resulted in conversion and unjust enrichment.

Under the Settlement, Settlement Class Members who do not opt out of the Settlement will automatically receive their *pro rata* share of the Net Settlement Fund. There are no claims forms to fill out, and Settlement Class Members will not be asked to prove that they were damaged as a result of the Bank's Debit Re-sequencing. Instead, Class Counsel and their experts will use available M & I Bank data to determine which M & I Bank Account holders were harmed by Debit Re-sequencing, and will apply a formula described in paragraph 80 of the Agreement to calculate each Settlement Class Member's damages and their *pro rata* share of the Settlement Fund.

Another testament to the reasonableness and fairness of the Settlement is the magnitude of the Settlement Fund. Class Counsel negotiated a $4,000,000 million cash payment, which represents approximately twenty-five percent (25%) of the most probable recovery the Settlement Class could have achieved at trial. This is an outstanding recovery knowing that Plaintiffs may be compelled to arbitrate their claims on an individual basis. The percentage recovery falls well within a reasonable range of recovery, given the risks.

This Action involves sharply opposed positions on several fundamental legal questions, including whether: (a) M & I Bank's Account agreements require the Plaintiffs to arbitrate their claims; (b) the Bank violated its duty of good faith and fair dealing to its customers when it engaged in Debit Re-sequencing; and (c) the relevant Account agreements expressly authorized the Bank's Debit Re-sequencing practices. Additionally, while this Court denied an omnibus motion to dismiss filed by other banks on the same and other issues, including federal preemption under the National Bank Act, the Court indicated that its view on these defenses was not fixed and could change based on facts developed through discovery.

Plaintiffs and Class Counsel litigated this Action for over two years. The Parties engaged in motion practice before this Court and in the United States Court of Appeal for the Eleventh

Circuit.   Settlement discussions began in late, 2011, and the Parties participated in formal mediation on November 30, 2011, under the supervision of Professor Eric Green, a nationally recognized mediator.

## II.   STATEMENT OF FACTS

### A.   Procedural History.

Plaintiffs brought the Action seeking monetary damages, restitution and declaratory relief, and alleged that M & I Bank's Debit Re-sequencing practices were designed to increase the number of Overdraft Fees incurred by its customers.  Joint Decl. at ¶ 5.  Plaintiffs alleged that as a result of M & I Bank's manipulation of the order in which customers' Debit Card Transactions were posted, customers' funds were depleted more rapidly than they should have been, and Plaintiffs and Settlement Class Members paid more Overdraft Fees than they should have paid.  Id.

M & I Bank maintains that this case must be arbitrated in a private forum, instead of litigated in federal court.  *See generally* Motion to Compel Arbitration.  (DE # 917).  If the case was to be litigated in court, the Bank would have defended its conduct by raising a number of defenses, *inter alia*, highlighting language in the relevant Account agreements that it contended expressly advised customers of and permits the Debit Re-sequencing practices at issue.  Joint Decl. at ¶ 6.

On June 16, 2010, Plaintiffs filed the class action complaint seeking monetary damages, restitution and declaratory relief M & I Bank, arising from the allegedly unfair assessment, collection and disclosure of Overdraft Fees, styled *Eno v. M & I Marshall & Ilsley Bank*, No. 2:10-cv-376-CEH-SPC.  Joint Decl. at ¶ 8.

On July 27, 2010, the Judicial Panel on Multidistrict Litigation transferred the case to this Court for inclusion in MDL No. 2036.  The claims against M & I Bank were initially mart part of MDL 2036's so-called Fourth Tranche of cases.  Joint Decl. at ¶ 8.

On November 15, 2010, M & I Bank filed a motion to compel arbitration and to stay all proceedings in this Court ("Arbitration Motion").  (DE # 916).  On December 2, 2010, Plaintiffs filed their response to the Arbitration Motion (DE # 983) and On December 9, 2010, M & I Bank filed its reply.  (DE # 1006).

On April 18, 2011, the Court entered an Order denying M & I Bank's Arbitration Motion ("Order").  (DE # 1330).  On April 29, 2011, M & I Bank filed a notice of appeal of the Order.  (DE # 1375).  Also on April 29, 2011, M & I Bank filed an unopposed motion to stay pending appeal of the Order.  (DE # 1380).  On May 4, 2011, the Court granted M & I Bank's motion to stay conditioned on the posting of a supersedeas bond in the amount of $50,000.  (DE # 1433).  On May 6, 2011, M & I Bank posted the bond.  (DE # 1443).

On June 15, 2011, M & I Bank filed its opening brief with the Eleventh Circuit.  Joint Decl. at ¶ 11.  On August 22, 2011, Plaintiffs filed their brief in response.  Id.  Also, on August 22, 2011, Plaintiffs filed a motion for remand requesting this Court's consideration of the impact of *Concepcion* on this case, which M & I Bank opposed on August 29, 2011.  Id.  On September 14, 2011, M & I Bank filed its reply brief.  Id.  On October 21, 2011, the Eleventh Circuit ordered the remand motion to be carried with the case.  Id.

Beginning in late 2011, Class Counsel and M & I Bank engaged in preliminary settlement discussions.  Joint Decl. at ¶ 12.  On November 30, 2011, the Parties participated in mediation under the auspices of Professor Eric Green of Resolutions, LLC.  Id. at ¶ 12.  In advance of the mediation, M & I Bank provided Class Counsel with certain aggregate information regarding its Overdraft Fee revenues.  Id.

As a result of the mediation, on December 19, 2011, the Parties signed a Memorandum of Understanding that memorialized, subject to a mutually agreeable written Settlement Agreement and subject to preliminary approval and Final Approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, their good faith intention to fully, finally, and forever resolve, discharge and release all rights and claims of the Settlement Class Members, based on M & I Bank's agreement to: (i) pay $4,000,000 to create a common fund for the benefit of the Settlement Class; (ii) modify its posting order for Debit Card Transactions and its policies for assessing Overdraft Fees; and (iii) separately pay the costs of class Notice and Settlement Administration.  Joint Decl. at ¶ 13.

On December 30, 2011, the Parties filed a joint motion to stay the Appeal until April 10, 2012.  Joint Decl. at ¶ 15.  On January 13, 2012, the Eleventh Circuit granted the motion to stay. Id.  Since that time, the Parties moved to extend the stay and have filed several status reports with the Eleventh Circuit.  Id.  On July 20, 2012, the Parties filed a motion to continue the stay until September 15, 2012, to facilitate their anticipated motion for Preliminary Approval of the Settlement.  Id.  On July 27, 2012, the Eleventh Circuit granted that motion.  Id.  On August 23, 2012, the Parties filed a status report with the Eleventh Circuit.  Id.  On September 14, 2012, the Parties filed another joint motion to continue the stay pending the filing of this motion.  Id.

Class Counsel and the Bank pursued lengthy and detailed discussions regarding the Settlement, including issues pertaining to the Bank's data and the allocation and distribution of the Settlement Fund.  Joint Decl. at ¶ 16.  Once all these issues were successfully resolved, the Parties finalized and executed the Agreement on September 26, 2012.  Id.

**B.**    **Class Counsel's Investigation.**

Class Counsel devoted substantial resources to investigating the claims of several potential plaintiffs against M & I Bank.  Joint Decl. at ¶ 7.  Class Counsel interviewed a number

of customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon its customers. Id. This information was essential to Class Counsel's ability to understand the nature of the Bank's conduct, the language of the Account agreements at issue, and potential relief and remedies. Id. Class Counsel also expended significant resources researching and developing the legal claims at issue. Id.

After the Parties executed the Memorandum of Understanding, Class Counsel engaged in additional settlement-related investigation to determine, among other things, the most appropriate method by which to implement the plan for allocation of the Settlement Fund to Settlement Class Members who do not opt out of the Settlement. Joint Decl. at ¶ 14. That investigation required Class Counsel and their experts to analyze the relevant transactional data relating to Overdraft Fees imposed on Settlement Class Members, and to determine the fairest and most appropriate distribution formula in light of the data that the Bank possesses. Id.

### C. Summary of the Settlement Terms.

The Settlement's terms are detailed in the Agreement attached as Exhibit A. The following is a summary of the material terms of the Settlement.

#### 1. The Settlement Class.

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure. The Settlement Class is defined as:

> All holders of any M & I Bank Account in the United States who, during the Class Period, incurred one or more Overdraft Fees in connection with M & I Bank's Debit Re-sequencing Overdraft Practices.

Agreement at ¶ 42. The Class Period runs from June 16, 2004 through the date of Preliminary Approval of the Settlement. Id. at ¶ 15.

The Settlement consists of three main components: (a) a $4,000,000 Settlement Fund; (b) changes in the way M & I Bank posts Debit Card Transactions and assesses Overdraft Fees; and (c) the separate payment by M & I Bank of the costs of providing Notice to the Settlement Class and administration of the Settlement.  Agreement at ¶¶ 48-50.

### (a)      Monetary Relief.

The Settlement requires M & I Bank to deposit $4,000,000 into an Escrow Account within fourteen (14) calendar days following this Court's Preliminary Approval of the Settlement.  Agreement at ¶ 48.  That deposit will create the Settlement Fund.  Id.

All Settlement Class Members who experienced a Positive Differential Overdraft Fee will receive *pro rata* distributions from the Net Settlement Fund.  Agreement at ¶ 82.  The Positive Differential Overdraft Fee analysis determines, amongst other things, which M & I Bank Account holders were assessed additional Overdraft Fees that would not have been assessed if the Bank had used a posting sequence or method for Debit Card Transactions other than ordering them from highest to lowest dollar amount, and how much in additional Overdraft Fees those Account holders paid.  Id. at ¶ 80.  This calculation involves a complex multi-step process described in detail in the Agreement.  Id.  The Net Settlement Fund – which will be distributed *pro rata* amongst Settlement Class Members who do not opt out of the Settlement – is equal to the Settlement Fund plus any accrued interest, less: (a) the amount of Court-ordered attorneys' fees, costs and expenses to Class Counsel; (b) the amount of Court-ordered Service Awards to the Plaintiffs; (c) the amount of Excess Costs paid and/or owed to the Notice Administrator and Settlement Administrator; (d) all costs, expenses, and fees associated with investing the Settlement Fund; (e) all costs, expenses, and fees incurred by the Tax Administrator; (f) the amount of the expenses incurred in connection with establishing and maintaining the Escrow Account, including all fees and costs of the Escrow Agent; (g) a

reservation of  reasonable amount of funds for prospective fees, costs, and expenses to be paid or reimbursed from the Settlement Fund; and (h) additional fees, costs and expenses agreed upon by Settlement Class Counsel and Counsel for M & I Bank.  Id. at ¶ 81.

Settlement Class Members who do not opt out of the Settlement will receive their Settlement Class Member Payments by check within 30 days of the Effective Date.  Agreement at ¶¶ 82, 86.   All checks will contain an appropriate legend, in a form approved by Settlement Class Counsel and M & I Bank's counsel, indicating that the payment is made in connection with the Settlement.  Id. at ¶ 88.  All checks will be valid for 270 days.  Id.

Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member Payments.  Agreement at ¶ 90.

Within one year plus thirty days after the date the Settlement Administrator mails the first Settlement Class Member Payment, any funds remaining in the Settlement Fund will be distributed as follows: (a) first, to M & I Bank in such amount as to reimburse the Bank for the actual amounts it paid to the Settlement Administrator and Notice Administrator for Class Notice and Settlement Administration; (b) second, any funds remaining may be distributed to Settlement Class Members who received Settlement Class Member Payments on a *pro rata* basis, to the extent feasible and practical in light of the costs of administering such subsequent payments; and (c) third, in the event all funds remaining in the Settlement Fund are not all distributed under (a) and (b) above, the remaining funds will be distributed through a residual *cy pres* program. Agreement at ¶ 91.  The residual *cy pres* recipient(s) will be agreed upon by M & I Bank and Settlement Class Counsel, and approved by the Court.  Id.  The purpose of any residual *cy pres* distribution will be to benefit consumer financial literacy education, and to educate and assist

consumers with financial services issues through advisory and related services (excluding litigation). Id. Any residual *cy pres* distribution will be paid as soon as reasonably possible following the completion of distribution of funds to the Settlement Class Members. Id.

### (b)    Non-monetary Relief.

As additional consideration, M & I Bank has agreed to implement, no later than March 31, 2013, the following practice changes that will remain in effect for a minimum of three (3) years from the implementation date:

### (i)    Posting Order.

M & I Bank will change from its current posting order to the following: (1) credits; (2) priority debits with ATM withdrawals posted by date and time, or, if date and time information is unavailable, then low to high by amount; (3) all other priority debits (*e.g.* outgoing wires, internal transfers, cash withdrawal/cashed check at teller window, etc.) grouped together and posted low to high by amount; (4) debit card transactions (including PIN and non-PIN transactions) posted by date and time of authorization; (5) ACH transactions posted low to high by amount; (6) checks sorted by check number, with lowest check number posted first, or, if check number information is unavailable, then low to high by amount; and (7) bank initiated transactions (*e.g.* maintenance fees, overdraft fees, ATM fees, etc.) posted low to high by amount. Agreement at ¶ 50(a); and

### (ii)    Overdraft Fee Limit.

M & I Bank will: (a) implement a cap of a maximum of four (4) Overdraft Fees assessed to a single Account on any given day; and (b) refrain from assessing an Overdraft Fee unless an Account has a negative balance of $5.01 or more. Agreement at ¶ 50(b).

The practice changes described above will provide a significant benefit to the Settlement Class. Joint Decl. at ¶ 26.

### 2.     <u>Class Release.</u>

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will release M & I Bank from claims relating to the subject matter of the Action.  The detailed release language can be found in Section XVI of the Agreement.

### 3.     <u>The Notice Program.</u>

The Notice Program (Agreement, Section X) is designed to provide the best notice practicable, and is tailored to take advantage of the information M & I has available about the Settlement Class.  Joint Decl. at ¶ 28.  The Notice Program is reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Action, class certification, the terms of the Settlement, Class Counsel's fee application and request for Service Awards for Plaintiffs, and their rights to opt-out of the Settlement Class or object to the Settlement.  Id.  The Notice and Notice Program constitute sufficient notice to all persons entitled to notice.  Id.  The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.  Id.

The Notice Program is comprised of three parts: (1) direct mail postcard notice ("Mailed Notice") to all Settlement Class Members; (2) publication notice ("Published Notice") designed to reach those Settlement Class Members for whom direct mail notice is not possible; (3) and a "Long Form" notice containing more detail than the direct mail or publication notices, that will be available on the Settlement website (www.MIOverdraftSettlement.com) and via U.S. mail upon request.  Agreement at ¶¶ 27, 68.

All forms of Notice to the Settlement Class will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from ("opt-out") of the Settlement Class; a date by which Settlement

Class Members may object to the Settlement; the date of the Final Approval Hearing; and the address of the Settlement Website at which Settlement Class Members may access the Agreement and other related documents and information.  Agreement at ¶ 64-65 & Exs. 1-3.

In addition to the information described above, the Long Form notice will describe the procedure that Settlement Class Members must follow to opt-out of the Settlement or to object to the Settlement, Class Counsel's fee application and/or request for Service Award.  *See* Ex. 3 to Agreement.  All opt-outs and objections must be postmarked no later than the Opt-Out Deadline. Agreement at ¶¶ 29, 65.  The requirements for submitting a valid objection are detailed in the Agreement.  Agreement at ¶ 67.

### (a)  The Mailed Notice Program

The Settlement Administrator will administer the Mailed Notice Program.  Within 28 days from the date that the Settlement Administrator receives from Settlement Class Counsel and M & I Bank the data files that identify the names and last known addresses of the Settlement Class Members, the Settlement Administrator will run such addresses through the National Change of Address Database, and will mail to all such Settlement Class Members postcards that contain the Mailed Notice ("Initial Mailed Notice").  Agreement at ¶ 70.

The Settlement Administrator will perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable.  Agreement at ¶ 71.  No later than 63 days before the Final Approval Hearing, the Settlement Administrator will complete the re-mailing of Mailed Notice postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces ("Notice Re-mailing Process").  Id.  The Mailed Notice Program (which is comprised of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 63 days before the Final Approval Hearing.  Id. at ¶ 72. Within seven days after the Settlement Administrator completes the Notice Re-mailing Process,

the Settlement Administrator will provide Settlement Class Counsel and M & I Bank's counsel an affidavit that confirms that the Mailed Notice Program was completed in a timely manner.  Id. Class Counsel will file such affidavit with the Court in conjunction with the motion for Final Approval.  Id.

### (b)      The Published Notice Program

The Notice Administrator will administer the Published Notice Program, which will consist of one-time advertisement in a number of daily circulation newspapers in the geographic markets where M & I Bank maintained branches during the Class Period.  Agreement at ¶ 74. The Published Notice Program will commence as soon as practicable after the Initial Mailed Notice, and will be completed no later than 63 days before the Final Approval Hearing.  Id. Within seven days after the date the Notice Administrator completes the Published Notice Program, the Notice Administrator will provide Settlement Class Counsel and counsel for M & I Bank with one or more affidavits that confirm that Published Notice was given in accordance with the Published Notice Program.  Class Counsel will file such affidavit(s) with the Court.  Id. at ¶ 76.

### (c)      The Settlement Website and Toll-Free Hotline

The Settlement Administrator will establish a Settlement Website (www.MIOverdraftSettlement.com) as a means for Settlement Class Members to obtain notice of, and information about, the Settlement.  Agreement at ¶¶ 46, 62(c).  The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than the commencement of the Notice Program.  Id. at ¶ 46.  The Settlement Website will include hyperlinks to the Settlement, the Long Form Notice, the Preliminary Approval order, and such other documents as Settlement Class Counsel and counsel for M & I Bank agree to post or that

the Court orders posted on the Settlement Website.  Id.  These documents will remain on the Settlement Website at least until Final Approval.  Id.

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries, and to answer the questions of Settlement Class Members who call with or otherwise communicate such inquiries.  Agreement at ¶ 62(d).

### 4.  <u>Settlement Administration</u>

The Settlement Administrator is Epiq Systems, Inc. ("Epiq"), a leading class action settlement administrator.  Epiq's responsibilities are detailed in the Agreement.  Agreement at ¶ 65.  The fees and costs of the Settlement Administrator will be paid by M & I Bank separately, and will not come out of the $4,000,000 Settlement Fund, so long as they do not exceed the Guaranteed Maximum Price.  Id. at ¶ 55.

### 5.  <u>Settlement Termination</u>

Either Party may terminate the Settlement if both Settlement Class Counsel and M & I Bank's counsel agree or if the Settlement is rejected or materially modified by the Court or an appellate court.  Agreement at ¶ 107.  M & I also has the right to terminate the Settlement if the number of Settlement Class Members who timely opt out of the Settlement Class equals or exceeds the number or percentage specified in the separate letter executed concurrently with the Agreement by M & I's counsel and Class Counsel.  Id. at ¶ 108.  The number or percentage will be confidential except to the Court, which upon request will be provided with a copy of the letter for *in camera* review.  Id.

### 6.  <u>Class Representatives' Service Awards</u>

Class Counsel will seek and M & I Bank will not oppose Service Awards of $2,500 each for the Plaintiffs.  Agreement at ¶ 105.  If the Court approves them, the Service Awards will be

paid from the Settlement Fund, and will be in addition to the Settlement Class Member Payments to which the Plaintiffs are entitled under the Settlement.  Agreement at ¶ 105.  The Service Awards will compensate the Plaintiffs for their time and effort and for the risks they assumed in prosecuting the Action.  Joint Decl. at ¶ 32.

### 7.    Attorneys' Fees and Costs

M & I Bank will not oppose Class Counsel's request for attorneys' fees of up to thirty-three percent (33%) of the Settlement Fund.  Agreement at ¶ 101; Joint Decl. at ¶ 33.  The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement.  Agreement at ¶ 102; Joint Decl. at ¶ 33.

## III.    ARGUMENT

### A.    The Legal Standard for Preliminary Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the compromise of claims brought on a class basis.  "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court."  *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992).  In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement."  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also* 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness."  4 Newberg § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010).   Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.  *See Manual for Complex Litigation,* Third, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved."  *Bennett*, 737 F.2d at 986.  Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether a settlement falls within the range of reason at the preliminary approval stage.  *See*, *e.g.*, *Smith*, 2010 WL 2401149 at *2.[2]

---

[2] Plaintiffs do not address the fifth factor, concerning objections to the Settlement, because at this preliminary stage Notice has not yet been distributed.  Plaintiffs address the remaining factors here, reserving a more thorough discussion of each factor for the motion for Final Approval of the Settlement.

The Court's grant of Preliminary Approval will allow Settlement Class Members to receive notice of the terms of the Settlement, and of the date and time of the Final Approval Hearing at which Settlement Class Members may be heard, and at which further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented by the Parties. *See Manual for Compl. Lit.* at §§ 13.14, 21.632. Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties. Id. at § 13.14.

**B.     This Settlement Satisfies the Criteria for Preliminary Approval.**

Each of the relevant factors weighs in favor of Preliminary Approval of the Settlement. First, the Settlement was reached in the absence of collusion, and is the product of good-faith, informed and arm's length negotiations by competent counsel, in conjunction with an experienced mediator. Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is warranted.

Any settlement requires litigants to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay. Plaintiffs and Class Counsel believe that the claims asserted are meritorious and that Plaintiff and Settlement Class Members would prevail if this matter proceeded to trial. M & I Bank argues that Plaintiffs' claims should be decided by arbitration in a private forum. Further, if the case proceeded, M & I Bank would have likely argued that it has no potential liability. M & I has shown a willingness to litigate vigorously.

Class Counsel concluded that the benefits of the Settlement outweigh the risks and uncertainties of continued litigation, particularly in light of the Eleventh Circuit's recent rulings in connection with bank overdraft fees cases with arbitration provisions. Further, there are too

many risks in the context of this large and complex multidistrict litigation, as well as the attendant time and expenses associated with possible interlocutory appellate review of contested class certification proceedings, completing merits discovery, pretrial motion practice, trial, and final appellate review.  Joint Decl. at ¶ 34.

1.      **The Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations.**

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement here is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  Joint Decl. at ¶ 35.  The Parties engaged in a formal mediation before Professor Eric Green, an experienced and respected mediator.  Id.; *see also Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator").

Furthermore, counsel for both sides are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases.  Joint Decl. at ¶ 36.  Counsel zealously represented their clients throughout the Action.  Id.  In negotiating the Settlement, Class Counsel had the benefit of years of experience and a familiarity with the facts of this Action and other cases involving similar claims.  Id.  Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in informal discovery with M & I

Bank.  Id.  Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action, and prepared them for well-informed settlement negotiations.  Id.; *see also Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery).  Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them, as a result of their familiarity with the trial of similar claims in *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010).  Joint Decl. at ¶ 36.

### 2.    <u>The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable.</u>

As noted, this Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that notice to the Settlement Class and a Final Approval Hearing as to the fairness, adequacy, and reasonableness of the Settlement are warranted.

### (a)    <u>Likelihood of Success at Trial.</u>

While Plaintiffs and Class Counsel are confident in the strengths of their case, they are also pragmatic in their awareness of the risks associated with an adverse ruling from the Eleventh Circuit on the arbitration issue and the various legal defenses available to M & I Bank. Joint Decl. at ¶ 37.   During the pendency of the Appeal and discussions leading up to execution of the Agreement, the Eleventh Circuit has overturned this Court's Orders denying motions to compel arbitration (involving Branch Banking & Trust, SunTrust Bank and Regions Bank),

requiring that those cases be arbitrated in private forums.[3]  Id. at ¶ 37.  Although Class Counsel believe that there are notable distinctions between those cases that would allow the Eleventh Circuit to affirm this Court's Order denying the Bank's motion to compel arbitration, Class Counsel recognize that there is a real risk that the Eleventh Circuit would follow the path of the prior appeals and reverse the Order in favor of arbitration.  Id.  If the Plaintiffs were forced to arbitrate, they faced the prospect of being required to arbitrate on an individual – rather than class-wide – basis because the relevant Account agreement contains a class action waiver provision.  Id.

Even if Plaintiffs and Class Counsel were successful in avoiding mandatory arbitration and were permitted to pursue these claims in this Court on behalf of a proposed class, they would still face significant hurdles involving multistate class certification, federal preemption, and other legal and/or factual issues that were certain to arise in the context of the motions for summary judgment and at trial, as they did in *Gutierrez*.  Joint Decl. at ¶ 38.  Though the *Gutierrez* plaintiffs were successful at trial, protracted litigation carries inherent risks that would necessarily have delayed and endangered Settlement Class Members' monetary recovery.  Id. Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement outweighs the gamble of continued litigation.  Id.

Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal.  Id.; *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could

---

[3] *See In re Checking Account Overdraft Litigation MDL No. 2036*, 459 Fed. Appx. 855 (11th Cir. 2012) (*Buffington, et al. v. Suntrust Banks, Inc.*); *In re Checking Account Overdraft Litigation MDL No. 2036*, 672 F.3d 1224 (11th Cir. 2012) (*Hough, et al. v. Regions Financial Corp, et al.*); *In re Checking Account Overdraft Litigation MDL No. 2036*, 685 F.3d 1269 (11th Cir. 2012) (*Barras v. Branch Banking and Trust Co.*); *In re Checking Account Overdraft Litigation MDL No. 2036*, No. 11-14319, 2012 WL 3100780 (11th Cir. July 31, 2012) (*Powell-Perry v. Branch Banking and Trust Co.*).

delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class Members without further delay.  Joint Decl. at ¶ 38.

**(b)**    **Range of Possible Recovery and the Point on or Below the**
**Range of Recovery at Which a Settlement is Fair.**

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties."  *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel."  Id.

Courts have determined that settlements may be reasonable even where Plaintiffs recovers only part of their actual losses.  *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate").  "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable."  *Lipuma*, 406 F. Supp. 2d at 1323.

The $4,000,000 cash recovery is outstanding, particularly in light of the Appeal, the complexity of the litigation, and the significant barriers that would loom in the absence of the Settlement.  Joint Decl. at ¶ 39.  Based on M & I Bank's transactional data, Class Counsel estimate that Settlement Class Members' most likely recoverable damages at trial would have been approximately $16,000,000.  Joint Decl. at ¶ 39.  Thus, under the Settlement, Class Counsel secured approximately twenty-five percent (25%) of the Plaintiffs' and Settlement Class Members' most probable damages, without further risks attendant to the Appeal and litigation. Id.  That is a significant achievement considering the obstacles that Plaintiffs faced.  Id.  Further, the recovery is even better when one considers the practice changes that will benefit the

Settlement Class and that M & I Bank is paying the costs of Notice and Settlement Administration. Id.

There can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of the pending Appeal, the Bank's defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent a Settlement.

### (c)   Complexity, Expense and Duration of Litigation.

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class Members, could be impracticable. Joint Decl. at ¶ 40. The Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner. Id.

One of the most expensive aspects of ongoing litigation in this case – to which Class Counsel can attest after *Gutierrez* – involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial. Joint Decl. at ¶ 41. Experts in the fields of marketing and banking may also be necessary. Id. These considerations, and the other considerations noted above, militate heavily in favor of the Settlement. *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

### (d)   Stage of the Proceedings.

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation." *Lipuma*, 406 F. Supp. 2d at 1324.

Based on their work with other MDL 2036 cases and settlements, their familiarity with *Gutierrez*, and the facts garnered through discovery in this Action, Class Counsel were extremely

well-positioned to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success on Appeal, at motion to dismiss, summary judgment, at trial, and on appeal.  Joint Decl. at ¶ 42.

### C.  Certification of the Settlement Class is Appropriate.

For settlement purposes, Plaintiffs and Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph 42 of the Agreement.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Certification of the proposed Settlement Class will allow notice of the proposed Settlement to issue to inform the Settlement Class of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the Final Approval Hearing.  *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.  For purposes of this Settlement only, M & I Bank does not oppose class certification.  For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of thousands of M & I customers, and joinder of all such persons is impracticable. Joint Decl. at ¶ 44.  *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

 "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on M & I Bank's systematic practice of Debit Re-sequencing – that is common to the Settlement Class, that is alleged to have injured all Settlement Class Members in the same way, and that would generate common answers central to the viability of the claims were the Action to proceed to trial.  Joint Decl. at ¶ 45.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent Settlement Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").  Plaintiffs are typical of absent Settlement Class Members because they were subjected to the same M & I Bank's practices and claim to have suffered from the same injuries,

and because they will benefit equally from the relief provided by the Settlement.  Joint Decl. at ¶ 46.

Plaintiffs and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation.  *Fabricant*, 202 F.R.D. at 314.  The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class."  *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted).  Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class Members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests.  Joint Decl. at ¶ 47.  Further, Plaintiffs are represented by qualified and competent counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to the instant case.  Id.  Class Counsel have devoted substantial time and resources to vigorous litigation of this Action by engaging in significant motion practice, the Appeal, and settlement negotiations.  Id.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member.

Joint Decl. at ¶ 48.  For example, each Settlement Class Members' relationship with M & I Bank arises from an Account agreement that is the same or substantially similar in all relevant respects to the Account agreements of all other Settlement Class Members.  *See Sacred Heart Health Sys.*, 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").

Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).

### D.   The Court Should Approve the Proposed Notice Program.

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)."  Manual for Compl. Lit. § 21.312 (internal quotation marks omitted).  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).  To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action."  *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also* Manual for Compl. Lit., § 21.312 (listing relevant information).

The Notice Program satisfies all of these criteria.  As recited above, the Notice will inform Settlement Class Members of the substantive terms of the Settlement, their options for opting-out of or objecting to the Settlement, and how to obtain additional information about the

Settlement.  It will also inform Settlement Class Members of the date of the Final Approval Hearing.  The Notice Program is designed to reach a high percentage of the Settlement Class and exceeds the requirements of constitutional due process.  Joint Decl. at ¶ 29.  Therefore, the Court should approve the Notice Program and the form and content of the Notices attached to the Agreement as Exhibits 1-3.

       **E.**       **The Court Should Schedule a Final Approval Hearing.**

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear all evidence and argument necessary to make its final evaluation of the Settlement.  Proponents of the Settlement may explain the terms and conditions of the Settlement, and offer argument in support of Final Approval.  The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter a Final Approval Order and Final Judgment under Rule 23(e); whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses; and whether to approve the request for Service Awards to the Plaintiffs.  Plaintiffs and Class Counsel respectfully request that the Court schedule the Final Approval hearing for the week of April 8-12, 2013, if convenient for the Court.  Plaintiffs and Class Counsel will file their motion for Final Approval, fee application and request for Service Awards no later than 49 days prior to the Final Approval Hearing.

**IV.**    **CONCLUSION**

Based on the foregoing, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Rule 23(b)(3) and (e) of the Federal Rules of Civil Procedure; (3) approve the Notice Program set forth in the Agreement and the form and content of the Notices attached to the Agreement as Exhibits 1-3; (4) appoint as class representatives the

Plaintiffs listed in paragraph 33 of the Agreement; (5) appoint as Class Counsel and Settlement Class Counsel the law firms and attorneys listed in paragraphs 14 and 43 of the Agreement, respectively; and (7) stay the Action against M & I Bank pending Final Approval of the Settlement, and (8) schedule a Final Approval Hearing during the week of April 8-12, 2013.  A [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class is attached as Exhibit C.

Dated: October 1, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No.  516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*


/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
   BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592


/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946


*Plaintiffs' Executive Committee*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

- 31 -