# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

C<small>ASE</small> N<small>O.</small>  1:09-MD-02036-JLK

---

**IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**
**FOURTH TRANCHE ACTION**

*Eno v. M & I Marshall & Ilsley Bank*
S.D. FL Case No. 1:10-cv-22730-JLK
M.D. FL Case No. 2:10-376

---

**JOINT DECLARATION OF ROBERT C. GILBERT AND
JEFFREY M. OSTROW IN SUPPORT OF PLAINTIFFS' AND CLASS
COUNSEL'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
<u>OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS</u>**

Robert C. Gilbert and Jeffrey M. Ostrow declare as follows:

1. We are two of Settlement Class Counsel and Class Counsel, respectively, under the Settlement Agreement and Release ("Settlement" or "Agreement") with BMO M & I Bank, N.A., f/k/a M & I Marshall & Isley Bank, N.A. ("M & I Bank" or "Bank").[1] We submit this declaration in support of Plaintiffs' and Class Counsel's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class. Unless otherwise noted, we have personal knowledge of the facts set forth in this declaration, and could testify competently to them if called upon to do so.

---

[1] All capitalized defined terms have the same meaning as in the Agreement attached as Exhibit A to Plaintiffs' and Class Counsel's Unopposed Motion for Preliminary Approval of Class Settlement and for Certification of Settlement Class.

2. After protracted litigation and settlement negotiations, Plaintiffs, Class Counsel and M & I Bank entered into the Agreement under which M & I Bank shall: (i) pay $4,000,000 in cash to create a common fund for the benefit of the Settlement Class Members; (ii) modify its posting order for Debit Card Transactions and the manner in which it assesses Overdraft Fees; and (iii) separately advance and pay the costs of providing Notice to the Settlement Class and the costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator. Under the Settlement, Settlement Class Members will automatically receive distributions from the Settlement Fund in proportion to the actual harm that each of them sustained.

3. The Action involved sharply opposed positions on several fundamental legal questions. Plaintiffs and Class Counsel maintain that the claims asserted in the Action are meritorious; that Plaintiffs would obtain class certification of a multistate class, establish liability and recover substantial damages if the Action proceeded to trial; and that the final judgment would be affirmed on an appeal. Plaintiffs' ultimate success in the litigation required them to prevail, in whole or in part, at *all* of these junctures. Conversely, M & I Bank's success at any one of these junctures could or would have spelled defeat for Plaintiffs and the Settlement Class. Thus, continued litigation posed significant risks and countless uncertainties, as well as the time, expense and delays associated with trial and appellate proceedings, particularly in the context of complex multidistrict litigation.

4. In light of the risks, uncertainties and delays associated with continued litigation, including the Bank's pending appeal in the Eleventh Circuit of this Court's Order denying its motion to compel arbitration ("Appeal"), the Settlement represents an excellent result for the

Settlement Class by providing guaranteed benefits in the form of direct cash compensation and other valuable relief.

A.  **Background of the Litigation.**

5.  On June 16, 2010, Plaintiffs Jeffrey M. Eno and Suzanne M. Cox sued on behalf of themselves and all others similarly situated who incurred Overdraft Fees as a result of M & I Bank's practice of Debit Re-sequencing. Plaintiffs alleged that M & I Bank systematically engaged in Debit Re-sequencing to maximize the Bank's Overdraft Fee revenues. Plaintiffs alleged that as a result of M & I Bank's manipulation of the order in which customers' Debit Card Transactions were posted, customers' funds were depleted more rapidly than they should have been, and Plaintiffs and Settlement Class Members paid more Overdraft Fees than they should have paid. According to the Class Action Complaint, M & I Bank's practices violated the Bank's contractual and good faith duties, were substantively and procedurally unconscionable, violated state unfair trade practices laws, and resulted in conversion and unjust enrichment.

6.  M & I Bank denies all of Plaintiffs' allegations of wrongdoing and maintains that this case must be arbitrated, on an individual basis, in a private forum. If the case was litigated in this Court, the Bank would have defended its conduct by raising a number of defenses, *inter alia*, that Plaintiffs' claims are preempted by the National Bank Act, that its Account agreements expressly authorize the very practice of Debit Re-sequencing challenged by Plaintiffs; that it fully disclosed its practices to its customers; that no unconscionability claim lies for the recovery of damages; that no conversion claim exists; that Plaintiffs cannot maintain unjust enrichment claims; and that the statutory consumer protection claim is defective.

B.  **Class Counsel's Investigation.**

7.  Class Counsel devoted substantial resources to investigating the claims of dozens of potential plaintiffs against M & I Bank. Class Counsel interviewed a number of customers

3

and potential plaintiffs to gather information about the Bank's conduct and its impact upon its customers. This information was essential to Class Counsel's ability to understand the nature of the Bank's conduct, the language of the Account agreements at issue, and potential claims for relief and remedies. Class Counsel also expended significant resources researching and developing the legal claims at issue.

### C. The Course of Proceedings.

8. On June 16, 2010, Plaintiffs Eno and Cox filed the Class Action Complaint seeking monetary damages, restitution and declaratory relief from M & I Bank's based on its alleged unfair assessment and collection of Overdraft Fees on Debit Card Transactions. On July 27, 2010, the Judicial Panel on Multi-District Litigation transferred the case to this Court for inclusion in MDL No. 2036. The claims against M& I Bank were assigned to the MDL's Fourth Tranche of cases.

9. On November 15, 2010, M & I Bank filed a motion to compel arbitration and to stay all proceedings in this Court ("Arbitration Motion"). On December 2, 2010, Plaintiffs filed their response to the Arbitration Motion and on December 9, 2010, M & I Bank filed its reply.

10. On April 18, 2011, the Court entered an Order denying M & I's Arbitration Motion ("Order"). On April 29, 2011, M & I Bank filed a notice of appeal of the Order. Also on April 29, 2011, M & I Bank filed an unopposed motion to stay pending appeal of the Order. On May 4, 2011, the Court granted M & I Bank's motion conditioned on the posting of a supersedeas bond in the amount of $50,000. On May 6, 2011, M & I Bank posted the bond.

11. On June 15, 2011, M & I Bank filed its opening brief with the United States Court of Appeal for the Eleventh Circuit. On August 22, 2011, Plaintiffs filed their brief in response. Also, on August 22, 2011, Plaintiffs filed a motion for remand requesting this Court's consideration of the impact of *Concepcion* on this case, which M & I Bank opposed on August

29, 2011.  On September 14, 2011, M & I Bank filed its reply brief.  On October 21, 2011, the Eleventh Circuit ordered the remand motion to be carried with the case.

12. Beginning in late 2011, the Parties engaged in preliminary settlement discussions that resulted in the scheduling of mediation.  In advance of mediation, M & I Bank produced certain data and information to Class Counsel concerning, *inter alia*, the amount of Overdraft Fees charged by the Bank during the Class Period.  On November 30, 2011, the Parties participated in mediation under the auspices of Professor Eric Green of Resolutions, LLC.

13. As a result of the mediation, on December 19, 2011, the Parties signed a Memorandum of Understanding that memorialized, subject to a mutually agreeable written Settlement Agreement and subject to Preliminary Approval and Final Approval by the Court as required by Rule 23 of the Federal Rules of Civil Procedure, the Parties' good faith intention to fully, finally, and forever resolve, discharge and release all rights and claims of the Settlement Class Members, based on M & I Bank's agreement to: (i) pay the sum of $4,000,000 to create a common fund for the benefit of the Settlement Class; (ii) modify its posting order for Debit Card Transactions and Overdraft Fee assessment policies; and (iii) separately pay the costs of class notice and settlement administration, in addition to the $4,000,000 Settlement Fund.

14. After the Parties executed the Memorandum of Understanding, Class Counsel and Harris Bank engaged in protracted discussions and negotiations regarding a number of issues relating to the terms of the Settlement, including the most appropriate method by which to implement the plan for direct allocation of the Settlement Fund to Settlement Class Members who do not opt out of the Settlement.  That investigation required Class Counsel and their experts to analyze the relevant transactional data relating to Overdraft Fees imposed upon

5

Settlement Class Members, and to determine the fairest and most appropriate distribution formula in light of the data that the Bank possesses.

15. On December 30, 2011, the Parties filed a joint motion to stay the appeal until April 10, 2012. On January 13, 2012, the Eleventh Circuit granted the motion to stay. Since that time, the Parties moved to extend the stay and have filed several status reports with the Eleventh Circuit. On July 20, 2012, the Parties filed a motion to continue the stay until September 15, 2012, to facilitate their anticipated motion for Preliminary Approval of the Settlement. On July 27, 2012, the Eleventh Circuit granted that motion. On August 23, 2012, the Parties filed a status report with the Eleventh Circuit. On September 14, 2012, the Parties filed another joint motion to continue the stay pending the filing of this motion.

16. Class Counsel and the Bank pursued lengthy and detailed discussions regarding the Settlement, including issues pertaining to the Bank's data and the allocation and distribution of the Settlement Fund. Once those issues were resolved, the Agreement was completed. Once all these issues were successfully resolved, the Parties finalized and executed the Agreement on September 26, 2012.

**D.** **Settlement Recovery.**

17. The Settlement consists of three main components: (a) a $4,000,000 cash fund for the benefit of Settlement Class Members who do not opt out of the Settlement Class; (b) significant practice changes in the way M & I Bank posts Debit Card Transactions and assesses Overdraft Fees; and (c) the separate payment by M & I Bank of the costs of providing Notice to the Settlement Class and the costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator.

18. The Settlement requires M & I Bank to deposit $4,000,000 into an Escrow Account within fourteen (14) days of this Court's Preliminary Approval of the Settlement. That

6

deposit will create the Settlement Fund, which will be used to pay: (a) the amount of Court-ordered attorneys' fees, costs and expenses to Class Counsel; and (b) the amount of Court-ordered Service Awards to the Plaintiffs; (c) the amount of Excess Costs paid and/or owed to the Notice Administrator and Settlement Administrator; (d) costs, expenses, and fees associated with investing the Settlement Fund; (e) costs, expenses, and fees incurred by the Tax Administrator; (f) the amount of the expenses incurred in connection with establishing and maintaining the Escrow Account, including all fees and costs of the Escrow Agent; (g) a reservation of reasonable amount of funds for prospective fees, costs, and expenses to be paid or reimbursed from the Settlement Fund; and (h) additional fees, costs and expenses agreed upon by Settlement Class Counsel and Counsel for M & I Bank. In addition, M & I Bank has agreed to pay the costs of providing Notice to the Settlement Class and all costs of the administration of the Settlement, including the fees and expenses of the Settlement Administrator and the Notice Administrator.

19. All Settlement Class Members who do not opt out of the Settlement will automatically be entitled to *pro rata* distributions from the Settlement Fund. The analysis and complex distribution formula determines, among other things, which M & I Bank Account holders were assessed Additional Overdraft Fees that would not have been assessed if the Bank had used an alternative posting sequence or method for posting Debit Card Transactions other high to low, and how much in Additional Overdraft Fees those Account holders paid. The calculation involves a multi-step process described in detail in the Agreement.

20. Eligible Settlement Class Members do not have to do anything or take any affirmative step to receive relief under the Settlement. The amount of their *pro rata* distributions will be determined by Settlement Class Counsel and their expert through an analysis of M & I Bank's data. Within 30 days after the Effective Date of the Settlement, M & I Bank and the

Settlement Administrator will distribute the Net Settlement Fund to all Settlement Class Members who have not opted out of the Settlement.

21. Settlement Class Members who do not opt out of the Settlement will receive their Settlement Class Member Payments by check within 30 days of the Effective Date. BMO Harris does not currently have the technological capability to provide automatic account credits to the Accounts of its Current Account Holders, as has occurred with other settlements approved and pending approval in MDL 2036, and BMO Harris could not do so for quite some time absent creation and implementation of a system enhancement technology product.

22. Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Class Member Payments.

23. In addition to the $4,000,000 cash recovery, Class Counsel secured significant non-monetary relief on behalf of the Settlement Class through M & I Bank's agreement to change, no later than March 31, 2013, the manner in which it assesses Overdraft Fees and the posting order of Debit Card Transactions for a minimum of three (3) years from the implementation date.

24. Pursuant to the Settlement, M & I Bank agreed to change from its current posting order to the following: (1) credits; (2) priority debits with ATM withdrawals posted by date and time, or, if date and time information is unavailable, then low to high by amount; (3) all other priority debits (*e.g.* outgoing wires, internal transfers, cash withdrawal/cashed check at teller window, etc.) grouped together and posted low to high by amount; (4) Debit Card Transactions (including PIN and non-PIN transactions) posted by date and time of authorization; (5) ACH

transactions posted low to high by amount; (6) checks sorted by check number, with lowest check number posted first, or, if check number information is unavailable, then low to high by amount; and (7) bank-initiated transactions (*e.g.* maintenance fees, overdraft fees, ATM fees, etc.) posted low to high by amount.

25. In addition, M & I Bank agreed to implement a cap of a maximum of four (4) Overdraft Fees assessed to a single Account on any given day, and refrain from assessing an Overdraft Fee unless an Account has a negative balance of $5.01 or more.

26. The practice changes described above will provide significant benefits to the Settlement Class.

**E.     Class Release**

27. In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will release M & I Bank from claims related to the subject matter of the Action.

**F.     Settlement Notice.**

28. The Notice Program is designed to provide the best notice practicable, and is tailored to take advantage of the information M & I has available about the Settlement Class. The Notice Program is reasonably calculated under the circumstances to apprise Settlement Class Members of the pendency of the Action, class certification, the Settlement terms, the Claims Process, Class Counsel's fee application and request for Service Awards for Plaintiffs, and their rights to opt-out of the Settlement Class or object to the Settlement. The Notice and Notice Program constitute sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law, including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

29. The Notice Program is comprised of three parts: (1) direct mail postcard notice ("Mailed Notice") to all Settlement Class Members; (2) publication notice ("Published Notice") designed to reach those Settlement Class Members for whom direct mail notice is not possible; and (3) a "Long Form" notice containing more detail than the direct mail or publication notices, that will be available on the Settlement website (www.MIOverdraftSettlement.com) and via U.S. mail upon request. The Notice Program is designed to reach a high percentage of the Settlement Class and exceeds the requirements of constitutional due process.

30. All forms of Notice to the Settlement Class will include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from ("opt-out") of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date of the Final Approval Hearing; and the address of the Settlement Website at which Settlement Class Members may access the Agreement and other related documents and information.

31. In addition to the information described above, the Long Form notice will describe the procedure that Settlement Class Members must follow to opt-out of the Settlement or to object to the Settlement, and/or to Class Counsel's Fee Application. All opt-outs must be postmarked no later than the Opt-Out Deadline (no later than 28 days prior to Final Approval Hearing), and any objections must be postmarked no later than the last day of the Opt-Out Period. For an objection to be valid, it must include: the name of the Action; the objector's name, address, and telephone number; an explanation of how the objector is a member of the Settlement Class; the basis for the objection; a description of the number of times the objector or the objector's counsel has objected to a class settlement in the last five years, the names of any such cases, and any relevant orders issued in response to such past objections; a statement

confirming whether the objector will appear at the Final Approval Hearing and a description of counsel or witnesses who will appear on behalf of the objector at the Final Approval Hearing; and the objector's signature.

### G. Service Award, Attorneys' Fees And Costs

32. Class Counsel will seek and M & I Bank will not oppose Service Awards of $2,500 each for the Plaintiffs. If the Court approves them, the Service Awards will be paid from the Settlement Fund, and will be in addition to the other relief the Plaintiffs will be entitled to under the terms of the Settlement. These awards will compensate the class representatives for their time and effort and for the risks they assumed in prosecuting the Action against M & I Bank.

33. M & I Bank will not oppose Class Counsel's request for attorneys' fees of up to thirty-three percent (33%) of the Settlement Fund, plus reimbursement of litigation costs and expenses. The Parties negotiated and reached this agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement.

### H. Considerations Supporting Settlement

34. Class Counsel concluded that the benefits of this Settlement outweigh the risks and uncertainties of continued litigation, particularly in light of the Eleventh Circuit's recent rulings in connection with bank overdraft fee cases involving arbitration provisions. Further, there are many risks in the context of this large and complex multidistrict litigation, as well as the attendant time and expenses associated with possible interlocutory appellate review of a favorable class certification ruling, completing merits discovery, pretrial motion practice, trial, and final appellate review.

1. **The Settlement is the Product of Good Faith, Informed and Arm's Length Negotiations**

35. The Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action. The Parties engaged in a full day formal mediation before an experienced and respected mediator, Professor Eric Green. These negotiations were arm's-length and extensive.

36. Furthermore, counsel for both sides are particularly experienced in the litigation, certification, trial, and settlement of nationwide class action cases. Counsel zealously represented their clients throughout the Action. In negotiating this Settlement, Class Counsel had the benefit of years of experience and a familiarity with the facts of this Action and other cases involving similar claims. Class Counsel's involvement in and familiarity with many other cases involving similar claims enabled them to gain an understanding of the evidence related to central questions in the case, and prepared counsel for well-informed settlement negotiations. Class Counsel were also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, and the appropriate basis upon which to settle them, as a result of their familiarity with the outcome of a trial of similar claims in *Gutierrez v. Wells Fargo Bank, N.A.*, 730 F. Supp. 2d 1080 (N.D. Cal. 2010).

2. **Risks Associated with Trial Favor Settlement**

37. While Plaintiffs and Class Counsel are confident in the strength of Plaintiffs' case, they are also pragmatic in their awareness of the risks associated with an adverse ruling from the Eleventh Circuit on the arbitration issue and the various legal defenses available to M & I Bank. During the pendency of the Appeal and the settlement discussions, the Eleventh Circuit has reversed several of this Court's Orders denying motions to compel arbitration involving

other banks (Branch Banking & Trust, SunTrust Bank and Regions Bank), requiring those cases to be arbitrated in private forums. Although Class Counsel believe there are notable distinctions between those cases that would enable the Eleventh Circuit to affirm this Court's Order denying the Bank's motion to compel arbitration, Class Counsel recognize that there is a real risk that the Eleventh Circuit follows the same path compels arbitration in this case as well.  If Plaintiffs were compelled to arbitrate, they would likely be required to do so on an individual basis because the relevant Account agreement contains a class action waiver.

38.     If Plaintiffs and Class Counsel successfully avoided arbitration and proceeded before this Court, the success of Plaintiffs' claims would still turn on many significant legal and/or factual questions, including federal preemption, that are certain to arise in the context of the motions for summary judgment and at trial, as they did in *Gutierrez*.  Though the *Gutierrez* plaintiffs were successful at trial, protracted litigation carries inherent risks that would necessarily have delayed and endangered Settlement Class Members' monetary recovery.  Under the circumstances, Plaintiffs and Class Counsel appropriately determined that the Settlement reached with M & I Bank far outweighs the gamble of continued litigation.  Moreover, even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal.  This Settlement provides substantial relief to Settlement Class Members without further delay.

### 3. The Settlement Amount is Reasonable Given the Range of Possible Recovery.

39.     The $4,000,000 cash recovery is outstanding, particularly given the Appeal, the complexity of the litigation, and the significant barriers that would loom in the absence of settlement: contested class certification; motions for summary judgment; trial, and a post-judgment appeal.  Based on M & I Bank's transactional data, Class Counsel estimate that Settlement Class Members' most likely recoverable damages at trial would have been

13

approximately $16,000,000. Thus, under the Settlement, Class Counsel recovered approximately twenty-five percent (25%) of the Settlement Class' most probable damages, without further risks attendant to the Appeal and litigation. That is a significant achievement considering the obstacles that Plaintiffs faced. The twenty-five percent (25%) recovery is even better when one considers the significant practice changes that will benefit the Settlement Class and that M & I Bank is paying the costs of Notice and Settlement Administration.

### 4. The Complexity, Expense, and Duration of Ongoing Litigation Favors Settlement.

40. The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual Settlement Class Members, could be impracticable. The Settlement is the best vehicle for the Settlement Class to receive the relief to which they are entitled in a prompt and efficient manner.

41. One of the most expensive aspects of ongoing litigation in this case – to which Class Counsel can attest after *Gutierrez* – involves the retention of experts to perform data analyses and to present those analyses in expert reports, at depositions, and at trial. Experts in the fields of marketing and banking may also be necessary.

### 5. Proceedings are at an Appropriate Stage for Settlement.

42. Class Counsel settled the Action with the benefit of reviewing the relevant Account agreements and after production and analysis of a substantial amount of customer transactional data. As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success on Appeal, at motion to dismiss, summary judgment, at trial, and on appeal.

## I.  Class Certification For Settlement Purposes

43. Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

44. The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of thousands of M & I Bank customers, and joinder of all such persons is impracticable.

45. The commonality requirement is satisfied because there are many questions of law and fact common to the Settlement Class that center on M & I Bank's systematic practice of Debit Re-sequencing for the sole purpose of increasing Overdraft Fee revenue, as alleged in the operative complaint.

46. Plaintiffs are typical of absent Settlement Class Members because they suffered from the same injuries, and because they will equally benefit from the relief provided by the Settlement.

47. Adequacy is established because Plaintiffs' interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and absent Settlement Class Members have an equally great interest in the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests.  Further, Class Counsel are qualified and competent and have extensive experience prosecuting complex class actions, including consumer

15

actions similar to the instant case.  Class Counsel have devoted substantial time and resources to litigation of this Action.

48. Plaintiffs readily satisfy the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Settlement Class Member.  For example, each Settlement Class Members' relationship with M & I Bank arises from an Account agreement that is the same or substantially similar in all relevant respects to other Settlement Class Members' Account agreements.

* * *

I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Coral Gables, Florida on October 1, 2012.

/s/ Robert C. Gilbert
Robert C. Gilbert


I declare under penalty of perjury of the laws of Florida and the United States that the foregoing is true and correct, and that this declaration was executed in Fort Lauderdale, Florida, on October 1, 2012.

/s/ Jeffrey M. Ostrow
Jeffrey M. Ostrow