UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Steen v. Capital One, N.A.*
E.D. La. Case No. 2:10-cv-01505-JCZ-KWR
S.D. Fla. Case No. 1:10-cv-22058-JLK

PLAINTIFFS' OPPOSITION TO CAPITAL ONE'S MOTION FOR
RECONSIDERATION OF ORDER GRANTING CLASS CERTIFICATION

I.   INTRODUCTION

On August 8, 2012, this Court issued an Order and Opinion granting class certification in the above action. The Court issued this Order after considering: (1) Plaintiffs' Motion for Class Certification and comprehensive trial plan; (2) Capital One's seventy (70) page Opposition to Class Certification; (3) Plaintiffs' Reply Brief in Further Support of Class Certification; and (4) evidence and argument presented by both parties at a class certification hearing held on June 21, 2012. *See* August 29, 2012 Order and Opinion **[D.E. # 2920-1]** ("Order"). Despite the Court's careful consideration of the class certification issues, Capital One has now filed a Motion for Reconsideration of the Court's Order arguing that the Court: "patently misunderstood a party," "made a decision outside the adversarial issues presented to the Court," or "made an error not of reasoning but of apprehension." *See* Capital One's Motion for Reconsideration **[D.E. # 2947]** ("Motion") at 7. Capital One's Motion does not provide any support for these assertions.

The Motion must be denied because it fails to raise any new issues, nor does it point to any error of apprehension by the Court. Instead, it rehashes the arguments Capital One made in its extensive briefing and during the class certification hearing. Specifically, Capital One's

Motion attempts to re-litigate the following issues, which have already been fully considered and properly decided by this Court: (1) whether the class is properly defined; (2) whether the class is ascertainable; (3) whether there is an intra-class conflict; (4) whether the class is overbroad; (5) whether Plaintiffs' expert witness Arthur Olsen's methodology is flawed; (6) whether individual issues of law predominate over common issues; and (7) whether Capital One's affirmative defenses defeat certification of the class.

Capital One does not point to any new evidence or any intervening change in controlling law. The Motion does nothing more than express its dissatisfaction with the Court's reasoning. As discussed below, such dissatisfaction does not constitute appropriate grounds for granting a motion for reconsideration.

## II.   ARGUMENT

### A.   Legal Standard for Motion for Reconsideration

Capital One's Motion fails to articulate the proper legal standard for a motion for reconsideration. "It is an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through – rightly or wrong." *Z.K. Marine, Inc. v. M/V Archigetic*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (citation omitted). "In reviewing a motion to reconsider, the Court will not alter a prior decision absent a showing of clear and obvious error where the interests of justice demand correction." *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 687 F. Supp. 2d 1322, 1324 (S.D. Fla. 2009) (citations omitted). "Motions to reconsider are not a platform to relitigate arguments previously considered and rejected." *Id.* (citation omitted). There are only three grounds which will justify granting a motion for reconsideration: "(1) there is an intervening change of law; (2) new evidence is available; or (3) there is a need to correct clear error or manifest injustice." *Paxton v. Great American Ins. Co.*, 650 F. Supp. 2d 1208, 1211 (S.D. Fla. 2009). Moreover, "a motion for reconsideration is not the proper forum for the party to vent dissatisfaction with the Court's reasoning." *Ludwig v. Liberty Mut. Fire Ins. Co.*, No. 8:03-cv-2378, 2005 U.S. Dist. LEXIS 37718 at *11 (M.D. Fla. Mar. 30, 2005) (citation omitted). Finally, "in the interests of finality and conservation of scarce judicial resources, reconsideration is an extraordinary remedy to be employed sparingly." *Wingate v. U.S. Dept. of Homeland Security*, No. 8:11-cv-223, 2012 U.S. Dist. LEXIS 100227 at *2 (M.D. Fla. July 19, 2012) (quoting *Lamar Adver. of Mobile, Inc. v. City of Lakeland*, 189 F.R.D. 480, 489 (M.D. Fla. 1999)). Capital One cannot meet this standard.

### B.   The Court's Order and Opinion More than Satisfies Rule 23(c)(1)(B)

Capital One first attacks the Court's Order by arguing that the Order does not meet the requirements of Federal Rule 23(c)(1)(B), which provides: "an order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g)." *See* Fed. R. Civ. P. 23(c)(1)(B). In support of this argument, Capital One points to the Third Circuit's interpretation of Rule 23(c)(1)(B) in *Wachtel v. Guardian Life Ins. Co.*, 453 F.3d 179, 187 (3d Cir. 2006). In *Wachtel*, the court held that under 23(c)(1)(B):

> the text of the [class certification] order or an incorporated opinion must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis.

*Id.* at 187. Capital One argues that the Order does not meet the *Wachtel* standard. However, even a cursory review of the Order shows that this argument is erroneous. First, on page 6 of the Order there is a section entitled "The Class Definition," which sets forth a clear, precise and discernible class definition and then proceeds to address the parameters and challenges to the class definition in a three page discussion of the definition. *See* Order at 6-9. On page 37 of the Order, the Court reiterates the class definition.

> The Court certifies the following class:
>
> All Capital One customers in the United States who, within the applicable statute of limitations preceding the filing of this action to August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of Capital One's practice of re-sequencing debit card transactions from highest to lowest dollar amount (the "National Class").
>
> Excluded from the Class are Capital One; its parents, subsidiaries, affiliates, officers and directors; any entity in which Capital One has a controlling interest; all customers who make a timely election to be excluded; and all judges assigned to this litigation and their immediate family members.

*Id*. at 37.

Capital One attempts to avoid the obvious – that the Court did in fact set forth a clear and precise class definition – by arguing that it did not breach the express terms of its contract. *See* Motion at 3. However, this is a merits argument that is not properly part of class certification. In

fact, merits arguments find their way into Capital One's Motion in a number of places, demonstrating more clearly than anything Plaintiffs could say that the Motion is motivated by a dissatisfaction with the posture of this litigation and not any actual misapprehension on the Court's part.  Further, Capital One is attempting to reframe Plaintiffs' claims to its liking.  It spends several pages arguing that the Court failed to discuss the specific contractual language that Capital One breached, ignoring the fact that Plaintiffs' breach of contract claim is based on a violation of the duty of good faith and fair dealing.

Second, the Court's Order sets forth a readily discernible, clear, and complete list of the claims to be treated on a class basis.  Indeed, on page 38 of the Order, the Court provides a chart that specifically lists each of the claims the Court is certifying.  *Id*. at 38.  The Court discusses each of these claims in detail in Sections III(A) and (B) of its Opinion, the predominance and superiority sections.  *Id*. at 23-27, 34-36.  Finally, on page 11 of the Court's Order, the Court delineates the common issues of law and fact that will treated on a class basis.  *See id*. at 11.

Therefore, it is clear that the Court's Order has more than satisfied the requirements of Federal Rule 23(c)(1)(B), and there is nothing here that needs to be reconsidered.

### C. Capital One's Attempt to Re-Litigate its Ascertainability Argument Must Be Rejected

In its Motion, Capital One argues again, as it did during the lead up to certification, that the class cannot be ascertained because "there is no 'natural' order in which debits can be posted that will be advantageous to everyone."  Motion at 7.  This is an argument that has been thoroughly considered and rejected by the Court, not only in this case, but in four other similar cases which came before this Court.  *See In Re: Checking Account Overdraft Litigation MDL No. 2036 ("Larsen"),* 275 F.R.D. 666, 672-73; Order Granting Class Certification (TD Bank) **[D.E. # 2615]**; Order Granting Class Certification (BancorpSouth Bank) **[D.E. # 2673]**; Order Granting Class Certification (PNC Bank) **[D.E. # 2697]**.

In rejecting Capital One's argument in this case, the Court explained that an ascertainable class exists because:

> customers who were charged additional overdraft fees, as compared to what they would have been charged under a *low-to-high* posting practice, were harmed by Capital One's re-ordering scheme.  Thus, the members of the Class are those persons who suffered one or more additional overdraft fees from the high-to-

>low posting order than they would have incurred had the Bank used a low-to-high posting order.

*See* Order at 7-8.

Capital One does not point to any new evidence or any intervening change in controlling law that would justify reversing the Court's decision on this issue. Significantly, Capital One does not cite to any law or evidence whatsoever to support its argument that the class is not ascertainable. Instead, it supports its argument that this decision and the four others that came before it should be reversed by simply stating: "[t]here is no suggestion, for example, that Capital One had previously posted [from low to high], or that any customer could rationally expect low-to-high posting . . ." Motion at 5. This is another merits-based argument that has no place at the class certification stage.

Capital One asserts that by defining the "outer parameters" of the class, the Court has provided no definition at all. Motion at 5. This argument is specious. The whole point of defining a class is to identify those bound by the decision of the finder of fact. *See* 7A Wright, Miller & Kane, Federal Practice & Procedure Civil 3d § 1760 (3d ed. 2005) ("If the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be deemed to exist."); *see also Hipp v. Liberty Nat. Life Ins. Co.*, 252 F. 3d 1208, 1217 (11th Cir. 2001) ("In a Rule 23 class action, each person who falls within the class definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless he has opted out."); *Hilao v. Estate of Marcos*, 103 F. 3d 767, 774 (9th Cir. 1996) (Rule 23 requires "that a proposed class be made up of people to whom effective notice of the pending action can be given and who will be bound by any judgment entered."). The Court did precisely what the law requires by setting forth the criteria that will be used to identify who is and who is not in the Class – that is, the "outer parameters" of class membership.

Once again Capital One's argument devolves into a merits dispute here. It argues that there is no historical basis for comparing its predatory posting practices to a low-to-high posting regime, but this is for the finder of fact to decide, and in any event is belied by the record.[1] It claims that comparing its posting regime to a low-to-high posting order (which its own documents identify as the most customer friendly) makes the class indistinguishable from "all"

---

[1] As the Court noted, there is evidence in the record that Capital One considered posting in both low-to-high and chronological order. *See* Order at 4.

5

customers who paid an overdraft fee or "even 'all Capital One customers.'". Motion at 4. However, in addition to offering absolutely no evidence to support this claim (despite having the database of transactions that would allow it to do so), the Bank is demonstrably wrong. For example, Capital One customers who had only a single overdraft on a given day would not be members of the class because there needs to be at least two overdrafts on a given day for any re-sequencing to occur. This kind of hyperbolic and even downright false argument from the Bank is an admission that its Motion is nothing more than series of complaints about the result of the Court's careful consideration of these issues.

### D.    The Court Correctly Found that there is No Intra-Class Conflict

Capital One argues that the Court did not conduct a rigorous analysis on the issue of intra-class conflict. However, Capital One's sole support for this assertion is the fact that the Court was not persuaded by Capital One's evidence on this issue, which is plainly contradicted by other evidence from Capital One's own documents. In its Opposition to Plaintiffs' Class Certification Motion, Capital One argued that an intra-class conflict exists because some class members allegedly derived an economic benefit from Capital One's high-to-low posting method, and because the Federal Reserve and the drafters of the U.C.C. have made certain statements about the difficulty in coming up with a perfect posting order. However, Capital One did not offer the Court any evidence whatsoever showing that even one customer derived an economic benefit from the high-to-low posting order it imposed or that some customers would be better off under it. In fact, Capital One's own documents are to the contrary.

- **Low-to-High** – "maximize[s] our customers' funds." Identified as the "Most customer friendly" and "Easiest to explain," but causing the "Largest economic impact" (about 22%); and

- **Chronological** – "post transactions as they happen during the day, then we maximize customers' funds." Process captures ATM and debit transactions' "natural" order, "makes 'sense' to customers regarding Debit/ATM," and "looks like L-H." [2]

---

[2] CO-STN000004039, (Ex. 14 to Class Certification Br.) at 4041, 4042, 4046; Dep. Tr. of T. Stanmeyer (Ex. 1 to Class Certification Br.) at 17:10-20:5, 115:7-118:9. Capital One looked at these and other posting orders, and rejected them. Ex. 1 at 117:17-118:9.

"Largest economic impact," of course, is impact on the Bank's bottom line resulting from customers keeping more of their money and Capital One getting less of it through oppressive fees. The conflict here is between the Bank and its customer, which this lawsuit aims to resolve.

Capital One's sole rebuttal of its own internal analysis is customer surveys, which the Bank claims show that some customers preferred the high-to-low posting method. The Court was not persuaded by these surveys and therefore appropriately held that there was no intra-class conflict. In essence, this too is a merits argument – Capital One is asserting that it was permitted to victimize its customers with a high-to-low posting order that its own internal documents contrast with other alternatives that are "[m]ost customer friendly" or "make sense to customers" because there is no perfect posting order. Whether this argument will carry the day, and whether the method it chose comports with its duty of good faith and fair dealing are questions for the finder of fact.

The Court's holding that class certification is not precluded by an intra-class conflict is correct for an additional reason. As set forth in Plaintiffs' Reply in Support of Motion for Class Certification **[D.E. # 2726]**, even if some conflict relating to alternative posting orders existed, it would not preclude class certification because for a conflict between the representative and the class to defeat class certification, it must be "a fundamental one, going to the specific issues in controversy." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000); *see also Valley Drug Co. v. Geneva Pharmaceuticals, Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003) ("[T]he existence of minor conflicts alone will not defeat a party's claim to class certification …."). Here, the specific issues in controversy are whether Capital One's high-to-low posting practices breached the agreement between the parties, breached the covenant of good faith and fair dealing, were deceptive, were unconscionable, or resulted in unjust enrichment. As all Class members will benefit if Plaintiffs prevail on these issues because high-to-low posting harms all of the Bank's customers affected by re-sequencing, there is no fundamental intra-class conflict. *See James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecom., Inc.*, 275 F.R.D. 638, 643 (M.D. Fla. 2011) (finding that no fundamental intra-class conflict existed when "[t]he specific issues in this controversy concern whether BellSouth's billing practices were deceptive, fraudulent, or resulted in unjust enrichment," and all class members would benefit if plaintiffs prevailed on their claims).

Indeed, the conflict that Capital One claims exists really bears on damages. But conflicts concerning the measurement or calculation of damages are not fundamental and do not preclude class certification. *See Blackie v. Barrack*, 524 F.2d 891, 908-910 (9th Cir. 1975) (finding that certification of a class was proper even where the interests of class members in calculating damages might conflict); *see also In re Cendant Corp. Litigation*, 182 F.R.D. 476, 479 (D.N.J. 1998) (same); *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 532 (D. Me. 1991) (same). Capital One spends pages trying to gin up a conflict among the Class representatives over whether damages should be measured by comparing the Bank's high-to-low posting order to low-to-high or chronological posting, but neither Ms. Steen nor Mr. Menyweather calculated their own damages (nor could they), and thus neither can be properly read to express a preference for a particular alternative posting order. They just do not think that Capital One's fee-extracting high-to-low posting order was fair, and the evidence backs them up.

Once again, Capital One is into the merits, and misstates the Court's holding. *See* Motion at 10 ("the Court has certified a class predicated on the theory that low-to-high posting was legally compelled"). What was legally compelled is a question for the finder of fact, and the Court made no such finding. It simply said that the group of customers whom the finder of fact may, after trial, conclude suffered damages as a result of the Bank's misconduct is no broader than those who would have had fewer overdraft fees if the posting order that Capital One has called "[m]ost customer friendly" is used for comparison. Capital One's willful effort to misapprehend the Court is a shortcoming of the Bank, not the Order.

### E. Capital One's Argument that the Court Certified an Overbroad Class Ignores the Clearly Articulated Class Definition

Capital One argues that the certified class is overbroad because it claims that Capital One branches in Delaware, Maryland, Virginia and Washington, D.C. did not subject customers to high-to-low posting order on their debit transactions, and that Capital One never engaged in consumer banking in Mississippi. Capital One goes on to argue that the Court's Order does not "take account of this evidence." *See* Motion at 11. Even if Capital One is right (and the evidence, Plaintiffs submit, is not definitive on this point), it does not affect the certified class. This is true because the class definition makes clear that it does not include any individual who did not incur an overdraft fee as a result of the re-sequencing of debit card transactions from high-to-low. The class is defined as:

8

> All Capital One customers in the United States who, within the applicable statute of limitations preceding the filing of this action to August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of Capital One's practice of re-sequencing debit card transactions from highest to lowest dollar amount (the "National Class").

Therefore, the Class, as defined, does not include any individuals who did not incur such fees as a result of re-sequencing. If no customers from these states suffered additional overdraft fees from the Bank's practices, then they will not be among those identified by Plaintiffs' expert as members of the Class. Objective evidence from Capital One's own computers, not unsupported claims by its lawyers, will decide the issue of class membership definitively, which is all that Rule 23 requires.

### F. The Court Carefully Considered Capital One's Challenge to Arthur Olsen's Methodology

Capital One complains that the Court did not conduct a rigorous analysis in determining that Plaintiffs' expert witness, Arthur Olsen, could identify class members and calculate damages in this action. However, Capital One's argument is spurious and unsupported. In fact, this Court heard and carefully considered a great deal of evidence concerning Mr. Olsen's damages calculation and Capital One's challenges to his methodology. The Court considered this evidence in connection with class certification, as well as in connection with Capital One's *Daubert* challenge to Mr. Olsen's testimony. On June 15, 2012, the Court issued an Order and Opinion denying Capital One's Motion to Exclude Mr. Olsen's testimony **[D.E. #2768]**. This opinion, which Capital One ignores, addressed Capital One's arguments regarding Mr. Olsen's methodology and explained the Court's reasoning for denying the Bank's *Daubert* Motion.

Once again, Capital One's Motion for Reconsideration does not point to any new evidence or information to support its complaints about Mr. Olsen's testimony. To the contrary, Capital One is merely venting its dissatisfaction that the Court does not agree with its position. Therefore, Capital One falls woefully short of meeting the requirements necessary to prevail on a motion for reconsideration.

### G. The Court Properly Found that Common Issues of Law and Fact Predominate

Yet again, Capital One's predominance argument merely reiterates an argument that the parties fully briefed and argued prior to class certification, and which the Court carefully

considered and addressed in its opinion. Specifically, Capital One argues that individual issues of law predominant over common issues because "under the substantive law of the states at issue, what an individual plaintiff knew and preferred about high-to-low posting order is a dispositive issue in an individual case." Motion at 14. However, in support of this claim Capital One cites a host of cases which are entirely inapposite.

For example, Capital One cites to *National Safe Corp. v. Benedict and Myrick, Inc.*, 371 So.2d 792 (La. 1979) for the proposition that in Louisiana the subjective expectations of a contracting party is a dispositive issue in a breach of good faith and fair dealing claim. Motion at 14. However, this is a mischaracterization of the *National Safe* holding. Indeed, the *National Safe* court simply did not hold that the subjective expectations of a party dictate whether the duty of good faith and fair dealing was breached. To the contrary, the Court recognized a cause of action for the breach of the duty of good faith and fair dealing and in so holding explained that:

> [t]he obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by <u>law, equity or custom</u>, is considered as incidental to the particular contract, or necessary to carry it into effect. The effect of equity on implied obligations is expressed in Article 1964 in these terms: 'Equity, usage and law supply such incidents only as the parties may ***reasonably*** be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources.'

*Id*. at 795 (citing La. Civil Code Art. 1965.) (*emphasis added*). This holding highlights that in these cases the expectations of the parties must be determined by an objective, reasonable standard.

Capital One goes on to cite *Quilio & Assoc. v. Plaquemines Parish Gov't*, 931 So.2d 1129 (La. App. 2006) to support its claim that in Louisiana an unjust enrichment claim will not lie where there is negligence on the part of the plaintiff. Motion at 15. However, as pointed out by the Court in *City of New Orleans v. BellSouth Telcoms., Inc.* 2011 U.S. Dist. LEXIS 60925 at *1 (E.D. La. 2011), the *Quilio* holding was superseded by Louisiana statute, La. C.C. Art. 2298 (2012), which does not include an exception to unjust enrichment where there is negligence on the part of the plaintiff. In *BellSouth*, the defendant, citing *Quilio & Assoc.*, argued that the plaintiff should not be able to recover unjust enrichment damages because the City's "impoverishment" was due to its own negligence or fault. *Id*. at *11. The Court rejected this argument, finding that *Quilio* improperly relies:

>on a law review article written over 25 years before the enactment of Article 2298 and which relied entirely upon French case law . . . regarding actio de in rem verso, the prototype for Louisiana's unjust enrichment. Notably, this definition of impoverishment did not make its way into the Code.  *See* La. Civ. Code art. 2298. While the Revision Comments generally recognize that Article 2298 'accords with civilian doctrine and jurisprudence,' there is no indication in either the language of the article or the comments that the Louisiana Legislature intended to create the exceptions to the impoverishment element of unjust enrichment suggested by BellSouth.  Rather, the Revision Comments simply define impoverishment as 'when [] patrimonial assets diminish or [] liabilities increase.'
>
>Guided by the foregoing, the Court finds BellSouth's argument unavailing, and instead relies upon the clear and unambiguous language of article 2298 to conclude that impoverishment has occurred in the present matter . . . The Louisiana Legislature could have included in Article 2298 the French law on action de in rem verso impoverishment, but did not do so; thus, the Court relies upon the more limited definition of impoverishment that was actually codified.

*Id*. at *12-15.

Capital One's citation to *VRG Corp. v. GKN Reality Corp.*, 135 N.J. 539 (N.J. 1994) is similarly inapposite.  The *VRG Corp*. case holds that "the unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."  This holding in no way defeats the predominance requirement in our case.  Indeed, in our case the class members uniformly expected to receive banking services from Capital One that were fair, rather than unconscionable and oppressive.  The predominant issue in this case is whether the bank provided such services or whether its reordering scheme unjustly enriched the bank at the expense of, and to the detriment of, Plaintiffs and members of the National Class.  This is a common issue that predominates over any individualized inquiry.

In sum, none of the cases cited by Capital One defeat predominance in this case. Moreover, Capital One's claim that the Court "glosses over" the predominance issue is simply false.  Far from glossing over the predominance issue, the Court's Order spends several pages discussing why common issues predominate over individual issues, with regard to each of the plaintiffs' claims, and discusses at length Capital One's claims that individual expectations and

11

preferences destroy commonality and typicality. *See* Order at 14-16, 20-25, 34-37. Ultimately, the Court properly concluded that Capital One's common course of corporate conduct predominated over issues surrounding customer expectations and preferences. *See id*. at 25.

In explaining this holding, the Court specifically addressed each of Plaintiffs' causes of action. First the Court noted:

> the Court is not persuaded by Capital One's objection that individual class members' preferences for posting order and expectations concerning overdraft fees will undermine the common issues in Plaintiffs' claim for breach of contract and breach of the implied covenant of good faith and fair dealing. The reasonable expectations of a party to a standardized form contract are judged objectively, from the perspective of a reasonable person, making the subjective views of class members irrelevant.

*See id*. at 23. Contrary, to Capital One's claim in its Motion, the Court did not ignore the relevant state law in reaching this conclusion. In fact, the Court cited law from Lousiana, Delaware and Maryland to support this conclusion. *See id* at 23 n. 22. Next, with regard to Plaintiffs' unconscionability claim, the Court explained:

> The account agreements are materially similar, and a fact-finder could conclude, based on subclass-wide proof, that Capital One's alleged failures to disclose the operative features of its overdraft policies were so unfair and overreaching as to be unconscionable.

*See id.* at 24. Finally, with regard to Plaintiffs' unjust enrichment claim, the Court reasoned:

> Unjust enrichment claims can be certified for class treatment where there are common circumstances bearing on whether the defendant's retention of a benefit from class members was just or not. That situation exists in this case. Based on the evidence presented, class-wide proof is available to show that Capital One deliberately concealed from all customers important information about its overdraft policy – including the existence and amount of customers' overdraft limits and the impact that the two-buckets sorting order had to increase the incidence of overdrafts – factors which bear on the justness of Capital One's retention of the excess overdraft fees it collected as a result.

*See id.* at 25.

The Court provided a well-reasoned and thorough discussion regarding its decision that common questions of law and fact predominate over individual issues. Capital One has not provided any basis that would justify reversing this decision.

H.     **The Court Correctly Found that Capital One's Affirmative Defenses Do Not Defeat Class Certification**

Capital One's Motion expresses dissatisfaction with the Court's conclusion that its affirmative defenses do not defeat certification of the class. Capital One claims that the Court merely "swept [its affirmative defense] under the rug." Motion at 18. Once again, Capital One's argument adds nothing new and is belied by the Court's comprehensive Order. The Court devoted three and a half pages of its Order to explaining why the asserted affirmative defenses do not defeat class certification. *See* Order at 29-32.

Specifically, the Court explained that the affirmative defenses did not defeat class certification for three reasons. First, the affirmative defenses raise common questions of proof which predominate over individualized issues because:

> many of the affirmative defenses require a party to have had *full knowledge* of the circumstances in order for the defense to prevail, including ratification, waiver, voluntary payment, estoppel, consent, and failure to mitigate. Plaintiffs allege, and offer evidence to prove, that Capital One concealed material aspects of its overdraft scheme from its customers, including its invariable use of high-to-low transaction processing order, the rationale and effect of its two-bucket debit sorting order to maximize revenues, and the existence and amount of overdraft limits. If Plaintiffs can prove these facts, they will undercut Capital One's defenses through the use of common evidence.

*Id.* at pp. 29-31. Capital One claims that it is entitled to inquire into what each Class member knew, *see* Motion at 19, but this is red herring. Because the evidence establishes that it concealed the same body of material facts from all of its customers, such an inquiry would be futile (no customer could know what was not disclosed), and is offered here simply to throw up a groundless roadblock to certification. The Court made this very finding after considering this issue. Capital One simply does not agree. That is not a basis for reconsideration, and in fact Capital One is wrong. Second, "the presence of individualized defenses as to a small number of class members would not destroy the predominance of common liability questions." *Id*. at 31 (citations omitted). Capital One makes a great deal about the few things that Ms. Steen knew, *see* Motion at 19, but pointedly leaves out the many material facts that she and all of the other Class members did not know, such as the secret line of credit. She is typical of the other members of the Class, and vice versa, because the Bank kept the full truth from them all. Third, "many affirmative defenses such as accord and satisfaction, ratification, and setoff pertain to

damages, and can be accounted for in Plaintiffs' expert's calculations." *Id*. (citations omitted).

Capital One points to *Sacred Heart Health Sys. v. Humana Military Healthcare Servs.*, 601 F.3d 1159 (11th Cir 2010) to support its argument that its affirmative defenses of ratification and waiver preclude class certification. Motion at 19.  However, the facts underlying the *Sacred Heart* case are much different than facts of our case.  In *Sacred Heart* the issue was whether some of the hospitals that made up the class knew about and willingly accepted the defendant's insurance reimbursement methodology.  *Id*. at 1168.  In arguing that this was an individualized inquiry that defeated class certification, the defendants presented concrete evidence showing that some of the hospitals accepted the new reimbursement methodology.  *Id*.

In light of the fact that the defendants presented such evidence, the Eleventh Circuit held that common questions did not predominate.  *Id*. at 1178.  In so holding, however, the Court stressed that:

> we have recognized that where the defendant 'proffer[s] individualized and varying evidence to defend against claims of individual class members by showing what they knew or should have known about' an allegedly illegal course of conduct of which they complain, 'significant questions concerning ultimate liability [may] remain for many class members[,] . . . such . . . [that] the common questions [will] not predominate.'

*Id.* (citing *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009)).

Unlike *Sacred Heart*, in our case Capital One did not proffer any evidence showing that the class members knew or should have known the salient aspects of the illegal scheme it perpetrated upon its customers.  Therefore, the *Sacred Heart* holding does not support the Bank's contention that its ratification or waiver defenses should defeat class certification, and nothing about that case, or anything else asserted in the Motion by Capital One, in any way undermines the Court's Order.

### III.   CONCLUSION

In sum, for all of the reasons set forth above, Defendant's Motion must be denied.

Dated:  October 1, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No.  516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

| | |
|---|---|
| /s/ E. Adam Webb | /s/ Michael W. Sobol |
| E. Adam Webb, Esquire | Michael W. Sobol, Esquire |
| Georgia Bar No. 743910 | California Bar No. 194857 |
| Adam@WebbLLC.com | msobol@lchb.com |
| Matthew C. Klase, Esquire | Roger N. Heller, Esquire |
| Georgia Bar No. 141903 | California Bar No. 215348 |
| Matt@WebbLLC.com | rheller@lchb.com |
| G. Franklin Lemond, Jr., Esquire | Jordan Elias, Esquire |
| Georgia Bar No. 141315 | California Bar No. 228731 |
| FLemond@WebbLLC.com | jelias@lchb.com |
| WEBB, KLASE & LEMOND, L.L.C. | LIEFF CABRASER HEIMANN & |
| 1900 The Exchange, S.E. |   BERNSTEIN L.L.P. |
| Suite 480 | Embarcadero Center West |
| Atlanta, GA 30339 | 275 Battery Street, 30th Floor |
| Tel: 770-444-9325 | San Francisco, CA 94111 |
| Fax: 770-444-0271 | Tel: 415-956-1000 |
| | Fax: 415-956-1008 |

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY 10013
Tel: 212-355-9500
Fax: 212-355-9592

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ David M. Buckner
David M. Buckner, Esquire
Florida Bar No. 60550
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Suite 1150
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596