T IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:09-MD-02036-JLK

|  |  |
|---|---|
| **IN RE: CHECKING ACCOUNT OVERDRAFT LITIGATION** <br><br> **MDL NO. 2036** | ) ) ) ) ) ) ) |

|  |  |
|---|---|
| **THIS DOCUMENT RELATES TO:** <br><br> *Steen v. Capital One, N.A.* <br> E.D. La. Case No. 2:10-cv-01505-JCZ-KWR <br> S.D. Fla. Case No. 1:10-cv-22058-JLK | ) ) ) ) ) ) ) ) |

**DEFENDANT CAPITAL ONE'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF ORDER GRANTING CLASS CERTIFICATION**

Plaintiffs' opposition brief ("Opp." or "Opposition") characterizes Capital One's criticisms of the Order granting class certification as "attacks" on "the Court's reasoning." (*See, e.g.*, Opp. at 2, 3, 6 (ECF No. 2982).) But Capital One's Motion for Reconsideration ("Mot.") is not an attack on the Court at all. For one thing, it was Plaintiffs' counsel, not the Court, who drafted the Order. Accordingly, at the end of the class certification hearing, the Court specifically invited Capital One to point out any errors in Plaintiffs' analysis. Furthermore, Capital One may seek review of the Order under Rule 23(f), and the Eleventh Circuit affirmatively prefers that class litigants seek redress through reconsideration before seeking interlocutory appeal. *Shin v. Cobb Cnty. Bd. of Educ.*, 248 F.3d 1061, 1064 (11th Cir. 2001).

Capital One's criticisms of the Order are laid out in full in its opening brief, and thus this brief is limited to identifying the five most prominent ways that Plaintiffs go astray in their Opposition.

**1.   Plaintiffs' misstate the burden on class certification, and invoke the discredited notion that a court must avoid issues related to the merits when ruling on class certification.**

Throughout their brief, Plaintiffs defend the Order they drafted using two misstatements of the governing legal standard. First, they repeatedly complain that Capital One did not "offer" enough "evidence" to establish one point or another. (*See, e.g.*, Opp. at 5, 6, 9, 14.) Second, Plaintiffs argue that various of Capital One's criticisms of the Order should be ignored because those criticisms concern the "merits" of the case. (Opp. at 5; *see also id.* at 3, 4, 7, 8.) In other words, Plaintiffs contend that a class must be certified on plaintiffs' allegations unless the class opponent adduces evidence that it should not be; but, if the class opponent adduces evidence that different class members would get different merits results in separate adjudications, that's a "merits argument" that the Court must disregard. Plaintiffs are wrong.

First, the actual legal standard imposes on Plaintiffs the burden to adduce evidence that the merits of ***all*** of the class members' claims could fairly be determined on common proof. *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir. 1984). Plaintiffs failed to carry that burden. In contrast, by showing that the substantive law of the ten jurisdictions at issue requires consideration of what a given customer expected and preferred with respect to posting order— and by showing, with reference to the survey evidence and Ms. Steen's testimony, that such knowledge and preferences are not monolithic—Capital One has shown that the merits outcomes

1

for different class members would be *different* if individualized proof were considered.  As such, the Court erred in certifying a class here.

Second, Plaintiffs' request that the Court ignore any criticism of the Order that they label—or mislabel, as the case may be—a "merits" argument is a thoroughly discredited approach to class certification.  As summarized by a very recent Fifth Circuit opinion (relying on Eleventh Circuit law):

> When there are disputed facts relevant to Rule 23 requirements, overlap with the merits "should not be talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements."

*Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 2012 U.S. App. LEXIS 19224, at *37 (5th Cir. Sept. 13, 2012) (citing *Castano v. Am. Tobacco Co.*, 84 F.3d 734 , 744 n.17 (5th Cir. 1996) (quoting *Love v. Turlington*, 733 F.2d 1562, 1564 (11th Cir. 1984))); *see also Coastal Neurology, Inc. v. State Farm Mutual Automobile Ins. Co.*, 458 F. App'x 793, 794 (11th Cir. 2012) (a court "sometimes must[] inquire into the merits in order to determine whether the requirements of Rule 23 have been satisfied"); *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009) (same).  Indeed, just last year the Supreme Court described Plaintiffs' belief in a rigid division between the "merits" and Rule 23 as "mistaken."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 n.6 (2011).

The Fifth Circuit—the Circuit in which this case will actually be tried—has long required district courts to delve deeply into the facts of cases proposed to be tried on a classwide basis. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744-45 (5th Cir. 1996) ("Going beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the [class] certification issues . . . . Absent knowledge of how [the individual] cases ***would actually be tried*** . . . it [is] impossible for the court to know whether the common issues would be a 'significant' portion of the individual trials") (emphasis added) (citation omitted).  In fact, the Fifth Circuit has often noted that courts are "require[d]" to "find, not merely assume, the facts favoring class certification" in order to certify a class.  *Unger v. Amedisys Inc.*, 401 F.3d 316, 321 (5th Cir. 2005); *see also Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 469 n.12 (1978)

2

("[D]etermination of class action questions is intimately involved with the merits of the claims" and "generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'") (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558, 83 (1963)); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 317 (3d Cir. 2009) ("[T]he court may consider the substantive elements of the plaintiffs' case in order to envision the form that a trial on those issues would take.") (citation omitted) (internal quotation marks omitted).

Plaintiffs misuse the "merits" label, in any event. They repeatedly apply it to Capital One's showing that there are differences among the members of the putative class that would affect whether or not each class member could prove an individual claim. Capital One has argued that a customer who preferred a high-to-low posting practice, and who incurred overdraft charges "because of" that posting practice, would *lose* an individual suit against Capital One—as between Capital One and that plaintiff, there was no unjust enrichment and no breach of the implied covenant of good faith and fair dealing. Under the Rules Enabling Act, the trial of that customer's claim in a class action must come to the same result, or class certification must be denied. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) (the principle behind the Rules Enabling Act, "that rules of procedure 'shall not abridge, enlarge or modify any substantive right,'" applies without limitation to Rule 23). Capital One and Plaintiffs adduced survey evidence that many class members prefer the peace of mind that comes from high-to-low posting. Plaintiffs now argue that the Court should not consider the survey evidence because "[i]n essence, this too is a merits argument." (Opp. at 7.) Plaintiffs are incorrect.

First, "a district court errs as a matter of law when it fails to resolve a genuine legal or factual dispute relevant to determining the requirements" of Rule 23. *Hydrogen Peroxide*, 552 F.3d at 320. Since Plaintiffs' motion was to certify a class of all Capital One customers who paid a fee because Capital One did not use low-to-high posting order on claims that, when tried individually, can be defeated by the class members' individual knowledge and preference, Plaintiffs' burden was to show that the putative class members uniformly prefer low-to-high posting, and that they were uniformly (and persistently) ignorant of how items were posted to their accounts. Plaintiffs made no effort to do this, and the Court failed to resolve (or even to address) the import of evidence that a substantial segment of the class preferred precisely the

3

posting order Capital One employed.  Calling Plaintiffs to account for their failure to meet an element of their class certification burden is not a "merits" argument.

Second, in light of the record evidence establishing varied posting order preferences among the putative class members, the Court was obliged to analyze the relevance of those differences to the viability of the twenty different common law causes of action it certified for trial in this one case.  The draft Order that Plaintiffs' counsel presented to the Court ignored this requirement, and was thus deficient.  The Court's obligation to consider whether evidence that varies as to individual class members is relevant to an element of liability is not a "merits" determination:  it is a determination of the suitability of the action for trial as a class action.

Another example of how the "merits" are relevant to an assessment of whether the claims can be tried on a class basis concerns the Order's reference to "Plaintiffs' well-pled breach of express contract claim," and its conclusion that "Plaintiffs have adequately alleged a breach of express contract *as well as* a breach of the implied covenant of good faith and fair dealing . . . ."  (Order at 19, 23, 34 (emphasis added).)  As Capital One pointed out in its opening brief, it still does not know which "express" provision, of which contract (there were eleven different contracts governing customers of three different institutions over the certified class period), was supposedly breached.  In response, Plaintiffs declare that Capital One's inquiry is "a merits argument that is not properly part of class certification."  (Opp. at 3.)  This is nonsense.  The Court's obligation was to determine the elements of the claims asserted and any defenses thereto, and to determine whether, in this factual context, those claims could fairly be tried on common proof.  Plaintiffs failed to disclose the contractual basis of their claim(s), and the Court failed to analyze the suitability of the express contract claim for class-wide trial and to complete the specification required by Rule 23(c)(1)(B).  Capital One's argument cannot be ignored by mislabeling it as one about the "merits."

> **2.  Complying with the requirements of Rule 23(c)(1)(B) would show that the case cannot be adjudicated on a class basis.**

Rule 23(c)(1)(B) was adopted in 2003 to help remedy the issues discussed above, by encouraging courts to focus on whether an action can be *tried* on a class basis.  *See Ross v. RBS Citizens, N.A.*, 667 F.3d 900, 905 (7th Cir. 2012) (concluding that the provision was adopted because "there is a critical need to define the class, claims, issues, and defenses so the parties can adequately prepare for trial").

4

As Capital One pointed out, among other ways the Order falls short of the requirements of Rule 23(c)(1)(B), it nowhere even identifies the elements of the certified causes of action for the ten jurisdictions at issue, let alone considers what evidence both parties might offer to prove or disprove those elements. (Mot. at 3-4.) Plaintiffs respond to that argument by emphasizing that the Order includes a class definition, and "sets forth a readily discernible, clear, and complete list of the *claims* to be treated on a class basis." (Opp. at 4 (emphasis added).) That assertion only highlights the Order's failing with respect to envisioning how a trial might proceed. Merely listing the "claims"—even where the Court is "clear" in doing so—says nothing about the feasibility of trying those causes of action on a class basis. At trial the fact-finder will not be called on to decide, for example, "Is Capital One liable for unjust enrichment?" Rather, to render judgment on that cause of action, it will be called on to decide (at least under the law of New Jersey), whether (1) Capital One received a benefit, (2) Capital One's retention of the benefit would be unjust, (3) the plaintiff "*expected* remuneration from the defendant;" and (4) the failure of remuneration "enriched defendant *beyond its contractual rights*." *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994) (emphasis added). Had the Order laid out these elements, it would have become apparent that liability to the New Jersey members of the class cannot be adjudicated on a classwide basis, because liability depends on what each customer "expected." Of course there are different elements for unjust enrichment in each of the nine other jurisdictions at issue, which, if the Order were faithful to Rule 23(c)(1)(B), would also each need to be analyzed to determine whether liability requires the resolution of individual issues.[1]

The Order's conclusion that the class should be certified because "[t]he controlling issue here . . . is simply whether Capital One engaged in a systematic scheme," further illustrates how the Order runs afoul of this aspect of modern Rule 23 jurisprudence. (Order at 32 (citation and internal quotation marks omitted).) As Capital One pointed out, this supposedly "controlling issue" is not "controlling" of anything—it is not even an *element* of any of the certified causes of action, let alone would its resolution establish Capital One's liability to any *individual* member of the class. (Mot. at 1-2, 13.) If the Order were rewritten to comply with Rule 23, it would be

---

[1] Capital One's opening brief laid out many other ways in which necessary elements of the certified causes of action cannot be adjudicated classwide under the substantive law of the jurisdictions at issue. (Mot. at 14-17.)

obvious that a class adjudication is impossible, regardless of the presence of this "controlling issue," which has at most only general relevance to each class member's claim.

Instead of focusing on the specific issues for trial, in both their Opposition and Order, Plaintiffs suggest that the common overarching issues *outweigh*, in some manner, the individual issues that would need to be tried for each class member. But the abstract evaluation of the "significance" of those supposedly common issues is what Rule 23(c)(1)(B) was designed to replace. *See, e.g.*, *Funeral Consumers Alliance*, 2012 U.S. App. LEXIS 19224, at *36 ("Ultimately, the court must consider how a trial on the merits would be conducted if a class were certified.") (citation and internal quotation marks omitted).

Moreover, in *Wal-Mart v. Dukes* the Supreme Court emphatically rejected Plaintiffs' view that classes can be certified to try general issues of liability, divorced from consideration of whether resolution of those general issues would establish the defendant's liability to the *individual* members of the class. 131 S. Ct. at 2555-57. Specifically, the Court rejected the notion that a class could be certified to determine the overarching issue of whether Wal-Mart generally discriminated against women, because adjudication of that issue would not determine whether any *particular* class member had been discriminated against. *Id.* Similarly, adjudication of "whether Capital One engaged in a systematic scheme" will not determine whether it is liable to any given class member. Whether a class trial can adjudicate individual liability can only be determined once the actual elements of liability are laid out, and an assessment is made of whether they can be proven with common proof.

### 3. Plaintiffs ask the Court to ignore the Eleventh Circuit's precedent with respect to intra-class conflict.

In its opening brief, Capital One identified the three ways in which conflicts of interest permeate the certified class: (1) some class members "derive a net economic benefit from the very same conduct alleged to be wrongful," *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1190 (11th Cir. 2003); (2) the class includes members "who willingly entered into [the bank's posting order] as well as those who complain of and claim harm from the practice." *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280-81 (11th Cir. 2000); and (3) the class includes members who would only recover damages under a low-to-high posting order, whereas the named plaintiffs advocate for "chronological" posting as the proper ordering. (*See* Mot. at 7-10.)

6

First, Plaintiffs respond by arguing that the Order "rigorously analy[zes]" the conflict issue, but that after doing so, "the Court was not persuaded" by Capital One's arguments. (Opp. at 6.) Not true. None of these three forms of conflict is even *mentioned* in the Order. Next, Plaintiffs argue that "Capital One did not offer the Court any evidence whatsoever showing that even one customer derived an economic benefit from the high-to-low posting order." (*Id.*) Again, that is not accurate. Capital One submitted, among other evidence, the verbatim statements of Capital One customers declaring that they would prefer to have their largest transactions paid first, rather than face the increased risk of, for example, having their car repossessed, their electricity shut off, or their interest rate on their credit card spike. (Mot. at 7-8, 9 n.1 (citing class briefing where that evidence was proffered).)

Plaintiffs' next tack is to dismiss entirely the evidence contained in the surveys, on the ground that "[t]he Court [was] not persuaded by these surveys." (Opp. at 7.) That argument highlights a completely separate part of Capital One's criticism of the Order—nowhere in the Order or the transcript of the certification hearing is there an argument made for why the surveys are unsound from an evidentiary standpoint. In certifying a class, one cannot simply reject particular pieces of evidence because accepting their validity would thwart class certification. (*See* Mot. at 8-9.)

Finally, with respect to the conflict presented by the fact that the named plaintiffs purport to represent a class based on low-to-high ordering, whereas they themselves believe that charges should be posted chronologically, the Opposition claims that "neither [Ms. Steen's nor Mr. Menyweather's deposition transcript] can be properly read to express a preference for a particular alternative posting order." (Opp. at 8.) But their sworn testimony contradicts their counsels' argument. Ms. Steen testified that she was "'taken advantage of'" *because* her "'money was not coming out in the order [she] was using it,'" and Mr. Menyweather testified that Capital One "'*should have* processed [his] transactions'" in "'the order that I bought things.'" (*See* Mot. at 9-10 (emphasis added) (citations omitted) (providing citations).) The operative complaint likewise asserts that debits should be posted chronologically; it nowhere advocates that low-to-high is the proper ordering. (*See* Mot. at 9.) While Plaintiffs' *counsel* might see an advantage to preserving ambiguity as to what class they would advocate for at trial, Ms. Steen and Mr. Menyweather have not been so coy.

7

### 4. Plaintiffs fail to explain how the Order's reliance on the substantive law of California and Wisconsin was an appropriate substitute for the law of the ten jurisdictions at issue.

In its opening brief, Capital One cited seven cases (from five of the ten jurisdictions covered by the certified class) exemplifying the fact that a plaintiff's knowledge about and/or preference for a high-to-low posting order is dispositive of his ability to maintain a cause of action under the substantive law of those jurisdictions.[2] (Mot. at 14-17.) In opposition, Plaintiffs discuss three of those seven cases (from two jurisdictions), and then simply declare that *all* of Capital One's cases are "entirely inapposite." (Opp. at 10-11.) It is difficult to see how, even if Plaintiffs had successfully distinguished those three cases, one could conclude that the other four cases were "entirely inapposite," but, in any event, the three attempts they make fail.

Plaintiffs try to distinguish *Nat'l Safe Corp. v. Benedict and Myrick, Inc.*, 371 So. 2d 792 (La. 1979), by quoting a paragraph from the opinion that, on its face or otherwise, has nothing to do with whether a plaintiff who *actually expected* a particular outcome can later claim that the defendant violated the implied covenant of good faith when that outcome was realized. (Opp. at 10.) They next attempt to distinguish *Quilio & Assoc. v. Plaquemines Parish Gov't*, 931 So.2d 1129 (La. App. 2006) by pointing out that a federal court in Louisiana has disagreed with *Quilio*. (*Id.*) State courts, of course, not federal courts, are the ultimate arbiters of the meaning of state law. Even if a federal district court could overrule a state appellate court on a matter of state law, the disagreement that Plaintiffs highlight only points up the exact reason why, on class certification, a court must undertake a rigorous analysis of the applicable substantive law to determine whether common proof will suffice to adjudicate a given cause of action. There can be no doubt that the shortcut the Order takes—relying on the substantive law of California and Wisconsin, and the Restatement, rather than the law of the ten jurisdictions covered by the class—falls far short of what Rule 23 requires.

The final case that Plaintiffs try to distinguish is *VRG Corp. v. GKN Reality Corp.*, 641 A.2d 519 (N.J. 1994), which Capital One cited for the fact that, to establish unjust enrichment, New Jersey requires a plaintiff to have "expected remuneration" at the time of his interaction

---

[2] Dozens of additional cases, from all ten jurisdictions, could have likewise been cited if not for page length constraints. Regardless, it is not Capital One's burden to show that the substantive state law is *not conducive* to classwide adjudication; it is Plaintiffs' burden to show the opposite. Capital One's point is that Plaintiffs have failed to do so, because instead of examining the law at issue, they rely on the law of California and Wisconsin, and the Restatement.

with the defendant. Plaintiffs contend that that element is satisfied here, because "the class members uniformly expected to receive banking services" from Capital One. (Opp. at 11.) That distinction is just as ineffective as the others that Plaintiffs offer, because remuneration means money, not "banking services." *See, e.g.*, N.J. Stat. Ann. § 43:21-19(p) ("'Remuneration' means all compensation for personal services, including commission and bonuses and the cash value of all compensation in any medium other than cash.").

      **5.    Ms. Steen's knowledge of Capital One's posting order and the consequences of that ordering exemplifies how the class claims, and Capital One's affirmative defenses, cannot be adjudicated for the class as a whole.**

In its brief, Capital One recounted Ms. Steen's sworn admission that, years before she filed suit, one of Capital One's branch representatives fully explained to her the fact that Capital One ordered its customers' debits high-to-low and the consequences of that ordering. As the Eleventh Circuit held in *Vega v. T-Mobile USA, Inc.*, "individualized facts concerning each [class member's] knowledge of the [challenged] policies and procedures will delineate the equities in a given case," and, where the cause of action is unjust enrichment, class adjudication will be "particularly" thwarted. 564 F.3d 1256, 1277 (11th Cir. 2009). Similarly, as the Eleventh Circuit held in *Sacred Heart Health v. Humana Military Healthcare*, 601 F.3d 1159, 1167 (11th Cir. 2010), individualized factual inquiries concerning the level of each class member's knowledge will preclude the classwide adjudication of Capital One's defenses of ratification and waiver.

In their Opposition, Plaintiffs stick to their argument that an individual issue is only presented where the class member had "*full knowledge* of the circumstances." (Opp. at 13 (citation omitted).) That argument does not save them, for two reasons. First, Plaintiffs have nowhere offered authority showing that "full knowledge" was required under *Vega*, or that "full knowledge" is a requirement for all of Capital One's defenses, for all ten jurisdictions at issue. Even if they were able to produce that authority, Capital One has certainly adduced enough evidence about Ms. Steen's knowledge to put the question of whether her knowledge was "full" to the jury. That fact inescapably compels the conclusion that, at trial, Capital One would be entitled to similarly investigate and present evidence of the degree of knowledge possessed by every other class member.

Second, Plaintiffs protest that Capital One "pointedly leaves out the many material facts that [Ms. Steen] and all of the other Class members did not know." (*Id.*) The only fact that

9

Plaintiffs allude to, however is the vaunted "secret line of credit." Plaintiffs have been repeatedly challenged, by multiple defendants in this litigation, to attempt to explain how a customer's knowledge about "the secret line of credit" might conceivably be material to any aspect of the causes of actions or the banks' affirmative defenses. They have never been able to do so, and they persist in avoiding that challenge here. As a matter of logic, knowing that a bank pays into overdraft *is* knowledge of "the secret line of credit." And, as Capital One explained in its opening brief, if Plaintiffs' only lament is that class members did not know the *amount* by which they could overdraw their accounts on a given day before being shut off, such knowledge is irrelevant to any of the claims or defenses, let alone "material" to them. (Mot. at 12-13.)

## CONCLUSION

For the foregoing reasons, Capital One respectfully requests that the Court reconsider its Order and deny Plaintiffs' motion for class certification.

Dated: October 9, 2012

Respectfully submitted by,

MORRISON & FOERSTER LLP

By: /s/ *James R. McGuire*
JAMES R. McGUIRE

*Attorneys for Defendant*
CAPITAL ONE, N.A.

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1**

Undersigned counsel for Capital One has conferred with Plaintiffs' counsel in a good faith effort to resolve the issues raised in this motion, but the parties were unable to do so.

**CERTIFICATE OF SERVICE**

CASE NO.: 1:09-MD-02036-JLK

I HEREBY CERTIFY that on October 9, 2012, I filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

/s/ *James R. McGuire*
JAMES R. McGUIRE
JMcGuire@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone:    (415) 268-7000
Facsimile:    (415) 268-7522