UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Dasher v. RBC Bank (USA)*
S.D. Fla. Case No. 1:10-CV-22190-JLK

*Avery v. RBC Bank*
E.D.N.C. Case No. 5:10-cv-329

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT RBC BANK'S
SUPPLEMENTAL BRIEF IN SUPPORT OF RENEWED MOTION
TO COMPEL ARBITRATION AND DISMISS OR STAY CASE**

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street
Suite 800
Miami, FL 33130
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
BRUCE S. ROGOW, P.A.
Broward Financial Center
500 E. Broward Boulevard
Suite 1930
Fort Lauderdale, FL 33394
Tel: 954-767-8909
Fax: 954-764-1530

*Counsel for Plaintiffs*

Pursuant to the Court's orders dated October 1, 2012 and October 15, 2012 [**DE # 2976, 3007**], Plaintiffs hereby respond to Defendant RBC Bank's Supplemental Brief in Support of Renewed Motion to Compel Arbitration and Dismiss or Stay Case ("Supp. Brief"). [**DE # 3009**].

## I.  ARGUMENT

### A.  RBC Fails to Explain Why the Court Should Impose Arbitration Even Though RBC Has Voluntarily Removed Arbitration from its Customer Agreement.

The entirety of RBC's supplemental arbitration brief and renewed arbitration motion in general is based on the faulty premise that there is a valid agreement to arbitrate between the bank and Plaintiffs.  *See* **DE # 1929**, pp. 8-10 (arguing that claims raised by Mr. Dasher and Ms. Avery are subject to arbitration agreement contained in RBC account agreement).  However, as Plaintiffs established in their Supplemental Brief, there is no longer an agreement to arbitrate in this matter because, as a result of the acquisition of RBC Bank by PNC Bank, existing customers of the bank like Mr. Dasher and Ms. Avery received a new deposit agreement that does not require arbitration.  *See* **DE # 3008**, pp. 2-5.  Where, as here, the evidence shows that there is no valid agreement to arbitrate, a motion to compel arbitration must be denied.  *See, e.g.*, *Slaughter v. Swicegood*, 591 S.E.2d 577, 580-81 (N.C. Ct. App. 2004) (denying motion to compel arbitration where there evidence showed there was no valid agreement to arbitrate); *Raspet v. Buck*, 554 S.E.2d 676, 678 (N.C. Ct. App. 2001).  Where the Court has not yet finally ruled on a question – such as arbitration here – the Court must apply the law or agreements as they stand at the time of the Court's ruling.  *E.g.*, *United States v. Carolina Transformer Co.*, 978 F.2d 832, 836, n.3 (4th Cir. 1992) ("We apply the law as it exists at the time of our decision"); *Holmes v. Carolina Power & Light Co.*, 1992 WL 82485, at *1 (E.D.N.C. Feb. 13, 1992).

The evidence gathered as a result of the arbitration-specific discovery in this case has established that Plaintiffs and RBC are bound by the terms and conditions contained in the PNC Agreement, which no longer requires that the claims in this lawsuit be arbitrated.  RBC's attempt to ignore this important development should be rejected by this Court.

### B.  RBC Offers No Basis to Ignore the Illusory Nature of the Contract, Which Has Been Shown Through Discovery.

Just as RBC offers nothing in its Supplemental Brief to show that it still has any agreement to arbitrate disputes with Plaintiffs, RBC also provides no basis to believe the prior agreement was not illusory as was shown in discovery.  Mr. Dasher and Ms. Avery

1

demonstrated, under the plain terms of the bank's adhesion contract (prior to the arbitration provision being removed), RBC can avoid its promise to arbitrate by merely amending the contract to remove the obligation altogether (which indeed it did), a right that Mr. Dasher and Ms. Avery do not enjoy.  *See* **DE # 3008**, pp. 12-14.  Therefore, under North Carolina law, RBC's arbitration provision (to any extent one still exists) is unenforceable because it is illusory.  *E.g.*, *Huttenstine v. Mast*, 537 F. Supp. 2d 795, 801 (E.D.N.C. 2008).

> C. **The Eleventh Circuit's Reversals of this Court's Denials of Other Motions to Compel Arbitration Do Not Warrant Any Change to the Court's Prior Finding that the Arbitration Clause is Unenforceable.**

RBC is correct that, if the bank still had an arbitration clause, Plaintiffs would have the burden to demonstrate that it is unconscionable, and thus unenforceable.  As recognized by this Court, Plaintiffs have previously met that burden.  *See* August 23, 2010 Order [**DE # 763**].  Now, with the benefit of discovery and additional legal arguments, the Court's prior ruling has been strongly reinforced.

Notwithstanding, RBC impudently claims that the burden facing Plaintiffs is impossible in light of recent Eleventh Circuit decisions in other overdraft fee cases.  This fatuous assertion is underscored by RBC's flawed reasoning that in order for Plaintiffs to prevail, they must "[c]onvince the Court that RBC's arbitration provision has features distinct from the arbitration provisions of BB&T's, Regions', SunTrust's, and M&T's customer agreements."  *See* Supp. Brief, p. 12.  The unconscionability of RBC's arbitration provision, however, must be independently analyzed.  As discussed further below, the five Eleventh Circuit decisions are of limited or no applicability.

The "features" of RBC's arbitration provision only implicate one part of the two-part analysis – substantive unconscionability.  It is no surprise that RBC has chosen to focus only on substantive unconscionability given the pronounced amount of procedural unconscionability already established, which is unrivaled by the BB&T, Regions, SunTrust, and M&T Bank cases.  As this Court has previously recognized, under North Carolina law, "while the presence of both procedural and substantive problems is necessary for an ultimate finding of unconscionability, such a finding may be appropriate when a contract presents pronounced substantive unfairness and a minimal degree of procedural unfairness, or vice versa."  *In re Checking Account Overdraft Litig.*, 2010 WL 3361127, at *2 (S.D. Fla. Aug. 23, 2010) (citing *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008)).  Plaintiffs' Supplemental

2

Brief has bolstered Plaintiffs' already extensive showing of both procedural and substantive unconscionability such that compelling arbitration in these cases would be improper. [**DE # 3008**]. Thus, Plaintiffs take this opportunity to further address why this Court's prior ruling denying arbitration is not affected by the Eleventh Circuit's reversals.

> 1. <u>The Reversals Do Not Change this Court's Ruling that RBC's Arbitration Provision is Procedurally Unconscionable.</u>

Forced to concede that the Eleventh Circuit's rulings do not impact this Court's prior procedural unconscionability ruling, RBC advances a half-hearted and nonsensical argument that because Mr. Dasher's Complaint does not allege procedural unconscionability, Dasher recognizes that the arbitration provision is procedurally proper. *See* Supp. Brief, p. 12 n. 11. An allegation in the Complaint of procedural unconscionability is not required in order for Plaintiffs to establish the unenforceability of RBC's arbitration provision in response to the Renewed Motion. RBC cites no law to support its position.

The Eleventh Circuit's rulings in *Buffington v. SunTrust Banks, Inc.*, 459 Fed. Appx. 855 (11th Cir. 2012), and *Hough v. Regions Financial Corp.*, 672 F.3d 1252 (11th Cir. 2012), highlight the stark differences between the way SunTrust and Regions presented their arbitration provisions to their customers versus RBC's covert introduction of the arbitration provision to Plaintiffs here. In *Hough*, although Region's arbitration provision was "buried on the twenty-first page of a forty-page, single spaced document" and "in a maze of fine print," the Eleventh Circuit found no procedural unconscionability because "the district court overlooked other aspects of the document that made apparent the agreement to arbitrate." 672 F.3d at 1229. Specifically, the Eleventh Circuit noted:

> The first two pages of the deposit agreement thrice reference that it contains "**BINDING ARBITRATION** provisions," and the second page of the agreement contains a separate paragraph typed in all caps, bold, and underlined states that "<u>**THIS AGREEMENT CONTAINS PROVISIONS FOR BINDING ARBITRATION**</u>" and that "<u>**ACCEPTANCE OF [THE] AGREEMENT INCLUDES YOUR ACCEPTENCE OF AND AGREEMENT TO SUCH PROVISIONS.**</u>"

*Id.* (emphasis in original). In addition, the Eleventh Circuit noted that "reference to the arbitration clause is not difficult: the table of contents state that the paragraph regarding 'Arbitration and Waiver of Jury Trial' is located on pages 21 through 23, and that paragraph explains in bold typeset what kinds of disputes are subject to arbitration." *Id.* Similarly, in

3

holding that SunTrust's arbitration provision was not procedurally unconscionable, the Eleventh Circuit identified in *Buffington* the following "aspects of the document that make apparent the agreement to arbitrate":

> The arbitration clause is "capitalized in the . . . table of contents," and an introductory paragraph to the clause urges account holders to **READ THIS PROVISION CAREFULLY AS IT WILL HAVE A SUBSTANTIAL IMPACT ON HOW LEGAL CLAIMS YOU AND WE HAVE AGAINST EACH OTHER** and explains in bold typeset what kinds of disputes are subject to arbitration.

459 Fed. Appx. at 859 (emphasis in original).

Unlike SunTrust's and Regions' arbitration provisions, RBC's arbitration provision does not contain any "other aspects . . . that made apparent the agreement to arbitrate." Instead, the arbitration provision is merely buried within 29 pages of double column, single-spaced, small print, and boilerplate language of an Agreement that contains no reference, whether via a table of contents or otherwise, to the inclusion of the arbitration provision first added to the Agreement in April 2008.[1] Plaintiff previously alerted the Court to the various formatting changes in the 2008 RBC Agreement that made it highly unlikely that a customer would become aware of, or even notice, the arbitration provision added for RBC's benefit, including: (1) a lack of table of contents; (2) a lack of line spacing between the lines in each section; and (3) a lack of line spacing between the individual sections in the Agreement. [**DE # 3008** at pp. 10-11].

Contrast SunTrust's and Regions' arbitration provisions with that of BB&T, the subject of the Eleventh Circuit's decisions in *Powell-Perry* and *Barras*. The plaintiffs argued that the cost-and-fee-shifting provision was inconspicuous in the same manner that Plaintiffs have already proven RBC's entire arbitration provision to be. *See Powell-Perry v. BB&T*, 2012 WL 3100780, at *3 (11th Cir. July 31, 2012); *Barras v. BB&T*, 685 F.3d 1269, 1279-80 (11th Cir. 2012). Thus, the Eleventh Circuit's opinions in these cases support a finding of procedural unconscionability as to RBC's arbitration provision.

---

[1] Although the Eleventh Circuit did not reach the issue of unconscionability in *Given v. M&T Bank Corp.*, 674 F.3d 1252 (11th Cir. 2012), the plaintiff in that case argued that M&T's arbitration provision contained substantially similar "aspects . . . that make apparent the agreement to arbitrate" that were present in *Buffington* and *Hough*.

4

> 2. The Reversals Do Not Change this Court's Ruling that RBC's Arbitration Provision is Substantively Unconscionable.

RBC also overplays the import of the recent Eleventh Circuit's reversals in the other overdraft cases on this Court's previous finding of substantive unconscionability here. RBC would have this Court believe that the Eleventh Circuit's rulings have eviscerated Plaintiffs' substantive unconscionability argument. However, despite the reversals, all but one of Plaintiffs' arguments survive. Thus, RBC cannot accurately claim that "nothing remains of Plaintiffs' challenges to RBC's arbitration provision after the reversals." *See* Supp. Brief, p. 13.

Plaintiffs remind this Court of the following harsh, one-sided, and oppressive nature of the terms contained in RBC's arbitration provision that led this Court to previously deny RBC's Motion to Compel: (1) the inclusion of a self-help/set-off provision regarding arbitrator and filing fees; (2) RBC's right to obtain an injunction against its customers without having to put forth any bond or other security; (3) the reservation of a security interest in a customer's account for all "present and future indebtedness or other obligations" a customer may owe to the RBC; (4) the limitation of liability that limits RBC's exposure to "the face value of any Item or transaction improperly dishonored or paid or the actual value of any deposits not properly credited or withdrawals not properly debited"; (5) the limitation on discovery afforded to customers; (6) the shortening of the statute of limitations to one year, thereby significantly minimizing the scope of RBC's potential financial liability to customers; and (7) the costs of pursing arbitration compared to litigation, including the costs of discovery, which includes the payment of RBC's attorneys' fees associated therewith, and the payment of arbitrator fees in the event that RBC prevails. [**DE # 751** at pp. 13-19; **DE # 2020** at pp. 9-17]. Contrary to RBC's claims, the Eleventh Circuit's recent decisions result in only one of the above seven factors – RBC's right to set-off – being removed from this Court's prior analysis. Thus, none of the decisions undermine this Court's substantive unconscionability ruling as to the other terms contained in the arbitration provision. [**DE # 3009** at p. 13]. This Court specifically held that RBC's shortening of the statute of limitations and requirement that customers pay all costs associated with discovery "contributes to the overall conclusion that RBC's provision was substantively unconscionable." [**DE # 763** at p. 8]. Neither of these terms was at issue in the other overdraft cases.

RBC's main focus is on the Eleventh Circuit's decisions in *Powell-Perry* and *Barras*, which held that BB&T's specific set-off provision was not unconscionable under state law. However, despite this limited ruling, the Eleventh Circuit explicitly held in both cases that other aspects of BB&T's arbitration provision rendered it substantively unconscionable. Specifically, the Eleventh Circuit held that BB&T's cost-and-fee-shifting provision not tied to the prevailing party was "'so oppressive that no reasonable person would,' on the one hand, include it in a contract, 'and no honest and fair person would accept [it] on the other.'" *Powell-Perry*, 2012 WL 3100780 at *3 (citing *Brenner v. Little Red. Sch. House, Ltd.*, 274 S.E.2d 206, 211 (N.C. 1981)); *Barras*, 685 F.3d at 1282. While it is true that RBC's arbitration provision does not contain a cost-and-fee-shifting provision, it contains many terms that are likewise "harsh, one-sided, oppressive," such that the arbitration provision "contains an element of surprise to as to 'shock the judgment of a person of common sense,'" in the same manner as BB&T's arbitration provision. *Powell-Perry*, 2012 WL 3100780, at *3. These terms include: (1) requiring customers to pay the arbitrator's fees and RBC's cost of discovery, including attorneys' fees associated therewith; (2) RBC's right to obtain an injunction against its customers without having to put forth any bond or other security; (3) the reservation of a security interest in a customer's account for all amounts owed to the RBC; (4) a limitation of financial liability; (5) a limitation on discovery; and (6) the shortening of the statute of limitations. Thus, even if this Court originally erred in finding that RBC's set-off provision was unconscionable, the substantive unconscionability remains even without that term. RBC cannot in good faith argue that the decisions in *Powell-Perry* or *Barras* mandate a different outcome.

Next, while RBC claims that the Eleventh Circuit's decision in *Given* "removes another of the express underpinnings of the Court's prior denial of arbitration to RBC," it fails to state what that underpinning is, thereby leaving both Plaintiffs and the Court to guess. Notably, the Eleventh Circuit did not even reach the issue of unconscionability in its decision. *Given*, 674 F.3d at 1257 ("[A]t this time we will not reach whether the arbitration agreement is unconscionable."). Thus, *Given* provides no basis for this Court to change its prior ruling. Rather, it merely guides this Court to conduct its unconscionability analysis in light of *Concepcion*. As this Court has correctly observed: "*Concepcion* has changed everything, in that class action waivers have historically been a major factor in the unconscionability analysis under state law, and now, they can no longer be considered. And yet, *Concepcion* has changed nothing

6

in that a thorough, case-by-case analysis of the applicable state law doctrine of unconscionability, applied to the specific terms of an arbitration agreement, is still required." *In re Checking Account Overdraft Litig.*, 813 F. Supp. 2d 1365, 1373 (S.D. Fla. 2011).

*Hough* is likewise unavailing for RBC. In that case, the Eleventh Circuit held that Regions' arbitration clause entitling it to recover prevailing party attorneys' fees and costs was not substantively unconscionable under Georgia law. *Hough*, 672 F.3d at 1227. It also found, as it did in *Powell-Perry* and *Barras*, that Regions' set-off provision was not unconscionable. *Id.* However, the ruling is only "directly applicable" to the analysis of RBC's arbitration provision [**DE # 3009 at** p. 16] to the limited extent that Plaintiffs argued and this Court accepted that these terms rendered RBC's arbitration provision substantively unconscionable. RBC's arbitration provision does not contain a prevailing party attorneys' fees provision, but does require the shifting of costs, most notably arbitrator fees, which would not be paid in court for the services of the presiding judge. In addition, as argued above, even without considering the set-off provision, RBC's arbitration provision is wrought with other oppressive terms sufficient to support a substantive unconscionability ruling.

Moreover, *Hough* was decided under Georgia law, which, as evidenced by the different results reached in *Barras* and *Powell-Perry* with respect to unconscionability, is much different than South Carolina, and most importantly, North Carolina law. Thus, RBC's claim that Plaintiffs' arguments here "are largely the same" as the plaintiffs' in *Hough* is false and flatly contradicted by the record. Thus, the Court should follow the guidance of *Given* and reconsider its ruling only without giving weight to RBC's set-off provision, but still concluding that Plaintiffs have proven substantive unconscionability.[2]

As demonstrated above, the Eleventh Circuit's holdings in the other overdraft fee cases do not require this Court to change its overall ruling on the unconscionability of RBC's arbitration provision. Simply put, the reversals in those cases do not require a different result

---

[2] The Eleventh Circuit's decision in *Buffington* is analogous to that in *Hough*, and thus, provides nothing more than what has already been discussed in relation to *Hough*. In *Buffington*, the Eleventh Circuit held that the set-off and prevailing party attorneys' fees and costs provision contained in SunTrust's arbitration agreement were not substantively unconscionable under Georgia law. *Buffington*, 459 Fed. Appx. at 858. Like *Hough*, the Eleventh Circuit did not analyze the other six indicia of substantive unconscionability contained in RBC's arbitration provision. In the absence of any substantively unconscionable terms, the Eleventh Circuit directed this Court to compel arbitration in *Hough*.

7

here because the facts of this case are different. Accordingly, in light of *Concepcion* and the Eleventh Circuit's decisions, this Court should again deny arbitration.

### 3. The Court Cannot Cure the Unconscionability of RBC's Arbitration Provision Through Severance.

RBC argues that in the event this Court deems its arbitration provision to be unconscionable, rather than denying arbitration, the Court should sever any "problematic provision[s]" pursuant to *Powell-Perry*. *See* Supp. Brief, p. 14. However, RBC fails to acknowledge that unlike the arbitration provision in *Powell-Perry*, in which only the cost-and-fee-shifting provision was deemed procedurally unconscionable, RBC's entire arbitration provision is procedurally unconscionable. In *Powell-Perry*, by severing the single offensive provision, the Eleventh Circuit was able to entirely rid BB&T's arbitration provision of unconscionability. However, severing the substantively unconscionable terms of RBC's arbitration provision would not cure the pronounced procedurally unconscionable.

Under North Carolina law, "[i]f the contract is separable . . . and one part is reasonable, the courts will enforce the reasonable provision." *Barras*, 2012 WL 3100780 at *3 (citing *Whittaker Gen. Med. Corp. v. Daniel*, 379 S.E.2d 824, 828 (N.C. 1989)). However, as the North Carolina Supreme Court found in *Tillman*, severance is not possible where "[s]evering the unenforceable provisions of the arbitration clause . . . would require the Court to rewrite the entire clause." 655 S.E.2d at 373. As noted above, RBC's arbitration provision contains multiple deficiencies, including (a) RBC's right to obtain an injunction against its customers without having to put forth any bond or other security; (b) the reservation of a security interest in a customer's account for all "present and future indebtedness or other obligations" a customer may owe to the RBC; (c) the limitation on discovery afforded to customers; (d) the shortening of the statute of limitations to one year, thereby significantly minimizing the scope of RBC's potential financial liability to customers; and (e) and the costs of pursing arbitration compared to litigation, including the costs of discovery, which includes the payment of RBC's attorneys' fees associated therewith, and paying the arbitrator's fees. *See* **DE # 751** at pp. 13-19; **DE # 2020** at pp. 9-17. As removing these numerous problematic provisions would require the Court to rewrite the entire arbitration provision, it is impossible to sever the arbitration provision under North Carolina law. *See, e.g.*, *Hartman v. W.H. Odell & Assocs., Inc.*, 450 S.E.2d 912, 920 (N.C. Ct. App. 1994) (courts will not rewrite a contract with numerous invalid provisions).

8

Thus, contrary to RBC's assertion, this Court did not err by refusing to sever the unconscionable provisions, and *Powell-Perry* does not require that this Court change course.

### D. The Non-MDL Cases Cited by RBC Do Not Establish that RBC is Entitled to Arbitration.

RBC incorrectly claims that post-*Concepcion* decisions outside of the MDL support RBC's Renewed Motion. *See* Supp. Brief, p. 3. However, neither *Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201 (2012), nor *Compucredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012), assist RBC. In fact, the Supreme Court in *Compucredit* did not even conduct an unconscionability analysis, while the Court in *Marmet* limited its discussion of unconscionability to the context of "general public policy," which is not at issue here. *Marmet*, 132 S. Ct. at 1204. Further, the Court in *Marmet* directed the lower court on remand to determine whether the arbitration provision at issue was unenforceable "under state common law principles" – precisely what this Court previously did and is being asked to address now pursuant to Plaintiffs' opposition to the Renewed Motion. Likewise, the Court in *Compucredit* explicitly acknowledged that there are instances in which a state law may invalidate an arbitration agreement when it stated that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, *save upon such grounds as exist at law or in equity for the revocation of any contract*." 132 S. Ct. at 669 (emphasis added). Thus, these two decisions offer no support for RBC. In addition, the Supreme Court's vacatur and remand of the Eleventh Circuit's decision of *Gordon v. BB&T*, 419 Fed. Appx. 920 (11th Cir. 2011), is of little consequence here given that it was premised on the fact that a class action waiver – which is not at issue here – is not substantively unconscionable.

The Eleventh Circuit's decisions in *Estate of Myhra v. Royal Caribbean Cruises, Ltd.*, 2012 WL 4207303 (11th Cir. Sept. 21, 2012), and *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224 (11th Cir. 2012), cited by RBC, concern, to a certain degree, the procedure by which the defendants notified the plaintiffs of certain provisions with a contract. [**DE # 3009** at pp. 18-19]. However, the factual differences between those cases and the one at hand actually demonstrate why this Court should conclude RBC's use of the mailer notice did not sufficiently advise Plaintiffs of the arbitration provision, thereby supporting the previous procedural unconscionability ruling.

9

In *Estate of Myhra*, a case that concerned neither unconscionability nor arbitration, the Eleventh Circuit held that Royal Caribbean's use of mailed notices was sufficient to apprise its passengers of a United Kingdom forum selection clause. However, in that case, the forum selection clause was not added after the fact – it was part of the subject contract from the inception. *Estate of Myhra*, 2012 WL 4207303, at *8. In addition, five separate notices specifically made reference to the fact that Royal Caribbean's U.K. terms and conditions applied to the trip. *Id.* Further, Royal Caribbean provided an actual copy of the contract containing the forum selection clause. *Id.* Perhaps most important is the Eleventh Circuit's ruling that "the physical characteristics of the warning in this case were sufficient to reasonably communicate the forum-selection clause" *Id.* As previously argued by Plaintiffs, that was not the case with RBC's arbitration provision that was not referenced in the mailer notice.

With regard to *Pendergast*, while the Eleventh Circuit compelled arbitration where a monthly billing statement advised the customer of a change of terms and conditions, the case was analyzed under Florida law. *Id.* at 1225. In addition, the court's unconscionability analysis was limited to whether a class action waiver was unconscionable, not whether the arbitration provision as a whole was unconscionable. *Id.* at 1234. Thus, the issue of whether the notice by monthly billing statement was procedurally unconscionable was not argued or addressed. RBC's assertion that footnote 11 of the *Pendergast* opinion stands for the proposition that a billing notification is sufficient to bind a customer to a change in terms and conditions is myopic. The Eleventh Circuit merely held that the "changes-to-agreement clause" was not substantively unconscionable under the facts of that case. *Id.* at 1234 n.11; *see also Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1142 (11th Cir. 2010). Likewise, footnote 2 of the opinion merely states that the billing notification provided notice of a change in terms. *Pendergast*, 691 F.3d at 1228 n. 2. Given that the instant case does not concern a class action waiver, applies North Carolina law, and necessitates both a procedural and substantive unconscionability analysis, *Pendergast* does not support RBC's Renewed Motion.

The fact that RBC had overplayed its hand regarding the impact of *Concepcion* and its progeny can be seen through the Eleventh Circuit's recent decision in *Garcia v. Wells Fargo Bank, N.A.*, No. 11-16029 (11th Cir. Oct. 26, 2012) (Exhibit A hereto). As the Eleventh Circuit noted in *Garcia*, "*Concepcion* established no new law." Slip Op. at 3. Instead, the Supreme Court's decision in *Concepcion* "merely correctly applied existing law." *Id.* at 13. Thus, this

Court's previous conclusion that *Concepcion* did not eliminate a plaintiff's ability to challenge an arbitration clause as being unconscionable remains valid. *E.g.*, *In re Checking Account Overdraft Litig.*, 813 F. Supp. 2d at 1373.

While *Howard v. Oakwood Homes Corp.*, 516 S.E.2d 879 (N.C. App. 1999), applied North Carolina law and concerns the enforcement of an arbitration provision, unconscionability was not an issue. Rather, that case was about whether the arbitration provision was invalid for lack of consideration. Notably, the court observed that the plaintiff was notified of the arbitration provision by: (1) a mailing of a hard copy of the arbitration agreement; (2) a memorandum regarding the arbitration agreement and its effective date; (3) notification of the impending implementation, as well as a schedule of meetings where employees could learn and ask questions about the arbitration agreement; and (4) a second mailing of the arbitration agreement accompanied by a letter informing the plaintiff that her prior employment dispute had been handled pursuant to the terms of the arbitration agreement. *Id.* at 121. None of that occurred here.

Finally, RBC urges this Court to take instruction from the unpublished, non-precedential Alabama state court decision of *Marshall Auto Painting & Collision, Inc. v. RBC Bank (USA)*, No. CV08-1817 (Ala. Cir. Ct. Apr. 28, 2010). The case concerns RBC's updating and superseding of AmSouth Bank's agreement <u>which already contained an arbitration provision</u> that governed plaintiffs' claims before the plaintiffs became an RBC customer via a bank acquisition and whether RBC properly notified plaintiffs of the amendment. The Alabama court did not find that RBC's mere use of "inserts into the customer's bank statement . . . constituted notice sufficient to bind the plaintiffs to their agreement to arbitrate," as RBC suggests. *See* Supp. Brief, p. 20. Rather, the court explicitly held that "[w]hile plaintiffs deny having received notice of the arbitration agreement in the mail, they do not refute that <u>notice was given by the other means authorized by the bank customer account agreements</u>." *See* Exh. I to Supp. Brief, ¶ 8 (emphasis added). Thus, it was only because the account agreements specifically allowed notice in the various means used by RBC, plaintiffs were sufficiently notified of the amendment. *Id.* at ¶¶ 7-8. Here, when RBC replaced the 2007 RBC Agreement, the 2007 RBC Agreement did not authorize RBC to use a mailer notice. Rather, the 2007 RBC Agreement merely states that RBC may amend the 2007 RBC Agreement by providing "written notice." *See* 2007 RBC Agreement [**DE # 3008-1**, Ex. 14 at RBC-ARB-00086 at ¶ 17]. This ambiguous phrase should be construed

against RBC to require RBC to notify customers of the actual changes that were made to the 2007 RBC Agreement. *Atlantic & E. Car. Ry. Co. v. Southern Outdoor Adver., Inc.*, 501 S.E.2d 87, 91 (N.C. Ct. App. 1998) ("the terms of a written contract are to be construed most strongly against the party who drafted the instrument"). Contrast this language with that of the 2008 RBC Agreement, which specifically states:

> Mailed notices of changes may be included on or with other materials, <u>such as your Account Statements</u>. Whenever the Agreement or nay part thereof is revised or replaced, you agree that, except with respect to any changes that we may be required by law to specifically call to your attention, <u>it will be deemed adequate notice to you of the changes if we notify you of the availability of the new or revised version and tell you how you may obtain a copy</u>.

*See* 2008 RBC Agreement [**DE # 3008-8** at RBC-ARB-00101 at "Changes in Terms" (emphasis added)]. Thus, while RBC's use of the mailer notice would be authorized under the 2008 RBC Agreement, it is not authorized the 2007 RBC Agreement. Plaintiffs alerted the Court to this distinction in their Supplemental Brief. [**DE # 3008** at p. 5]. Additionally, unlike the plaintiffs' previous AmSouth agreements in *Marshall Auto*, Plaintiffs' agreements prior to the 2008 RBC Agreement, both at RBC and the banks acquired by RBC, did not contain an arbitration provision. Indeed, RBC has not argued that Plaintiffs' claims were ever subject to arbitration prior to the implementation of the 2008 RBC Agreement. Accordingly, the court's holding in *Marshall Auto* that the mailer insert was sufficient because it was "authorized" is inapposite.

> E. **RBC Distorts the Facts Gleaned from the "Limited Arbitration-Related" Discovery.**

As demonstrated in Plaintiffs' Supplemental Brief, the limited arbitration-related discovery ordered by the Court has uncovered new and different grounds for the Court to deny arbitration. [**DE # 3008**]. Specifically, the discovery has revealed that RBC's arbitration provision is no longer in effect [**DE # 3008** at pp. 1-6], and provided evidence that further supports the conclusion that both procedural and substantive unconscionablity exist under North Carolina law [**DE # 3008** at pp. 6-12]. Thus, the contention on page 5 of RBC's Brief that the discovery "has only served to underscore RBC's entitlement to arbitration" is clearly at odds with the evidence now in the record.

The focus of Plaintiffs' discovery was not whether other RBC customers had sought arbitration as claimed on page 6 of RBC's Brief, but rather whether RBC had sought arbitration with respect to the claims asserted by Plaintiffs. Indeed, as argued in the Supplemental Brief,

discovery has revealed a policy of selective enforcement of its arbitration provision and confirmed the inapplicability of the provision to low dollar value claims. [**DE # 3008** at pp. 6-7]. RBC has not moved to compel arbitration in a small claims matter since the implementation of the 2008 RBC Agreement.[3]  *Id.*  Contrary to RBC's assertion, Plaintiffs have never argued that other customers' choices not to pursue arbitration excuse Plaintiffs' from their purported obligation to do so.  However, the fact that other customers have not sought arbitration does establish that customers have no reason to even know that they need to arbitration their claims, especially given that RBC confirmed it has absolutely no procedure in place to let customers know that arbitration is an option in the event customers' disputes are not handled satisfactorily. The deposition of RBC's 30(b)(6) designee, Sharon Merrill, confirmed employees' utter lack of knowledge of the arbitration provision and RBC's failure to provide any training to employees relating to the arbitration provision.  [**DE # 3008** at p. 11].  Thus, the claim on page 7 of RBC's Brief that Debbie Batchelor's testimony supports the fact that customers had "multiple avenues for customers to raise overdraft fees and refund issues" is a red-herring.  She testified that she never became aware that RBC added the arbitration provision in 2008 and that her department lacked any policy of telling complaining and dissatisfied customers that they would be required to arbitrate their claims.  [**DE # 3008** at p. 12].

Plaintiffs' discovery focused on matters beyond Plaintiffs' receipt of the ineffective mailer notice.  It also concerned whether the mailer was sufficient to notify Plaintiffs of the addition of the arbitration provision.  The evidence presented in Plaintiff's Supplemental Brief establishes that it was not. [**DE # 3008** at pp. 7-8].  The claim on page 8 of RBC's Brief that Plaintiffs have recognized that "RBC's providing its terms of the service agreement had changed binds Dasher and Avery unless they can show they did not receive it" is simply not true. Plaintiffs have never conceded that point.  In fact, receipt of the mailer is irrelevant given that the mailer itself was insufficient from a procedural unconscionability standpoint.  In addition, as argued above, the 2007 RBC Agreement did not even authorize RBC to "notify" Plaintiffs of the 2008 RBC Agreement via the mailer.  Thus, not only was the mailer improper pursuant to the terms of the contract, but it was also insufficient on its face.

---

[3] John Fleming, RBC's general counsel, confirmed in his deposition that *Marshall Auto*, discussed above, was not a small claims matter.

13

The argument in footnote 5 of RBC's Brief that Plaintiffs cannot file suit on the contract and contemporaneously seek to avoid the arbitration provision contained therein is antithetical to the plain text of the FAA, which allows for an unconscionability defense to arbitration. *See* 9 U.S.C. § 2 (2006) ("save upon such grounds as exist at law or in equity for the revocation of any contract"). The case of *Rampersad v. Primeco Personal Commc'ns, L.P.*, No. 01-6640-CIV, 2001 WL 34872572 (S.D. Fla. Oct. 16, 2001), cited by RBC, did not even involve an unconscionability challenge. In addition, the quote from *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995), cited by RBC, merely refers to the FAA's "basic objective as assuring that courts treat arbitration agreements 'like all other contracts.'" *Concepcion*, 131 S.Ct. at 1761 (citing *Allied-Bruce Terminix Cos.*, 513 U.S. 265 at 281). Further, RBC's argument has been clearly rejected by the Eleventh Circuit's decisions in *Powell-Perry* and *Barras* where the court directed this Court to sever the unconscionable cost-and-fee-shifting provision and enforce the remainder of the arbitration provision in cases where the plaintiffs have asserted breach of contract claims. Clearly, parts of a contract can be enforced despite the unconscionability of other parts thereof.

## II.   CONCLUSION

RBC's Supplemental Brief failed to take on the most obvious and important issue: the parties no longer have any agreement to arbitrate. The bank voluntarily withdrew such a requirement pursuant to its change in terms language, a power which also renders arbitration unenforceable because it is wholly illusory. The bank can, and did, dispense with arbitration at its whim thus providing the perfect illustration of its illusory nature under North Carolina law. To any extent that this Court finds that a valid agreement to arbitrate exists, RBC's motion must still be denied because, as the arbitration discovery has emphasized, the arbitration clause is unconscionable under North Carolina law. The Eleventh Circuit's recent decisions in other arbitration cases do not dictate how this Court should rule with respect to RBC's motion. They do, however, emphasize that a non-severable defect relating to arbitration may still render arbitration unenforceable. Therefore, based on these several independent grounds, this Court should deny arbitration to RBC.

Dated: October 29, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
BRUCE S. ROGOW, P.A.
Broward Financial Center
500 E. Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

<table>
<tr><td>

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

</td><td>

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

</td></tr>
</table>

*Plaintiffs' Executive Committee*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

  I hereby certify that on October 29, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                 /s/ Robert C. Gilbert
                 Robert C. Gilbert, Esquire
                 Florida Bar No. 561861
                 GROSSMAN ROTH, P.A.
                 2525 Ponce de Leon Boulevard
                 Eleventh Floor
                 Coral Gables, FL 33134
                 Tel: 305-442-8666
                 Fax: 305-779-9596