# EXHIBIT A

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16029
_____

D.C. Docket Nos. 1:09-md-02036-JLK,
1:08-cv-22463-JLK

MELANIE GARCIA,
MARC MARTINEZ,
on behalf of himself and all others similarly situated,
DOLORES GUTIERREZ,
on behalf of herself and all others similarly situated,
CELIA SPEARS-HAYMOND,
as an individual and on behalf of all others similarly situated,
ALEX ZANKICH,

                                                            Plaintiffs–Appellees,

WILLIAM RUCKER,
individually and on behalf of all others similarly situated,

                                                            Plaintiff,

versus

WACHOVIA CORPORATION, et al.,

                                                            Defendants,

WELLS FARGO BANK, N.A.,
on its own behalf and on behalf of its
predecessor, Wachovia Bank, N.A.,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(October 26, 2012)

Before BARKETT and PRYOR, Circuit Judges, and BATTEN,[*] District Judge.

PRYOR, Circuit Judge:

This appeal presents the question whether Wells Fargo Bank, N.A., for itself and its predecessor, Wachovia Bank, N.A., waived its right to compel arbitration of claims brought by its customers as putative class action plaintiffs. The customer agreements that govern the claims provide that either party may move to compel arbitration and that all arbitrated claims must be arbitrated on an individual instead of a classwide basis. The district court twice invited Wells Fargo to move to compel arbitration, first in November 2009 and again in April 2010, but Wells Fargo declined those invitations. A year later, Wells Fargo reversed course and moved to compel arbitration soon after the Supreme Court held in AT&T Mobility LLC v. Concepcion, __ U.S. __, 131 S. Ct. 1740, 1753 (2011), that the Federal Arbitration Act, 9 U.S.C. § 1 et seq., preempts state laws that condition the enforceability of consumer arbitration agreements on the availability of classwide

---

[*] Honorable Timothy C. Batten, Sr., United States District Judge for the Northern District of Georgia, sitting by designation.

2

procedures. The district court denied the motion based on waiver. Wells Fargo argues that it did not waive its right to compel arbitration because it would have been futile to move to compel arbitration before the Supreme Court decided Concepcion. But we conclude that Concepcion established no new law. Because we conclude that it would not have been futile for Wells Fargo to argue that the Act preempts any state laws that purported to make the classwide arbitration provisions unenforceable, we affirm the denial of its motion to compel arbitration.

## I. BACKGROUND

The plaintiffs in these five separate putative class actions allege that Wells Fargo and Wachovia Bank unlawfully charged them overdraft fees for their checking accounts, which are governed by agreements that provide for arbitration of disputes on an individual basis. The Wells Fargo customer agreement states that "[e]ither [the customer] or the Bank may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced," but that neither a customer nor the bank may consolidate disputes or "include in any arbitration any dispute as a representative or member of a class." The Wachovia customer agreement states that, if either the customer or the bank requests, "any dispute or claim concerning [the customer's] account or [the customer's] relationship to [Wachovia] will be decided by binding

arbitration," and that the arbitration "will be brought individually and not as part of a class action."

Wells Fargo and Wachovia are not the only banks accused of unlawfully charging checking account overdraft fees.  In June 2009, the Judicial Panel on Multidistrict Litigation consolidated in the Southern District of Florida the five putative class actions involved in this appeal with dozens of similar cases filed against approximately thirty banks.  This consolidated litigation has already been the subject of several appeals in this Court.  See, e.g., Barras v. Branch Banking & Trust Co., 685 F.3d 1269 (11th Cir. 2012); Given v. M&T Bank Corp., 674 F.3d 1252 (11th Cir. 2012); Hough v. Regions Fin. Corp., 672 F.3d 1224 (11th Cir. 2012).

Wells Fargo acquired Wachovia in January 2009.  Wachovia has since ceased to exist as a separate bank.  For that reason, we refer to both banks jointly as Wells Fargo.

On November 6, 2009, the district court ordered Wells Fargo to file, by December 8, 2009, all "merits and non-merits motions directed to" the complaints, including any motions to compel arbitration.  Wells Fargo and several other banks filed an omnibus motion to dismiss, but Wells Fargo did not move to compel arbitration of the plaintiffs' claims.  The district court denied the motion to dismiss in most respects.

On April 14, 2010, the district court offered Wells Fargo a second opportunity to move to compel arbitration by April 19, 2010. Wells Fargo did not accept this second invitation. Wells Fargo instead responded that it declined to elect to arbitrate the disputes. Wells Fargo even told the district court that, as to all of the Wachovia customers involved in this appeal but one, it "did not move for an order compelling arbitration . . . nor does it intend to seek arbitration of their claims in the future."

For more than a year, the parties prepared their cases for trial. They engaged in extensive discovery: they served and answered interrogatories, produced approximately 900,000 pages of discovery documents, and took approximately 20 depositions. The parties also litigated several motions before the district court.

On April 27, 2011, the Supreme Court held in <u>Concepcion</u> that the Federal Arbitration Act preempts a California rule of contract law that conditioned the enforceability of consumer arbitration agreements on the availability of classwide arbitration. 131 S. Ct. at 1753. The California Supreme Court had held in <u>Discover Bank v. Superior Court</u>, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005), that most consumer arbitration provisions that waive the right of the consumer to arbitrate on a classwide basis are unconscionable and unenforceable, but the Supreme Court ruled that the Act preempts the <u>Discover Bank</u> rule because

5

the rule "interfere[d] with fundamental attributes of arbitration and thus create[d] a scheme inconsistent with the FAA." Concepcion, 131 S. Ct. at 1748.

Two days later, on April 29, 2011, Wells Fargo filed a motion to dismiss the five putative class actions in favor of arbitration or, in the alternative, to stay the proceedings pending arbitration. Wells Fargo argued that it had not waived its right to compel arbitration because, before the Supreme Court decided Concepcion, the state laws governing the customer agreements foreclosed Wells Fargo from enforcing the agreements to arbitrate on an individual rather than classwide basis. The customer agreements in this case are governed by the laws of California, Florida, Georgia, New Jersey, New Mexico, Oregon, Texas, Virginia, and Washington. Wells Fargo argued that, before the Supreme Court decided Concepcion, those state laws made arbitration provisions that contained class action waivers unenforceable, so moving to compel would have been futile.

After the parties conducted limited arbitration-related discovery, the district court ruled that Wells Fargo had waived its right to compel arbitration, and it denied the motion to dismiss or stay the lawsuits in favor of arbitration. The district court concluded that, before the Supreme Court decided Concepcion, a motion to compel arbitration would not have been futile for several reasons, including that Wells Fargo could have argued that the Act preempted state laws that refused to enforce the arbitration agreements, that Wells Fargo could have

6

argued that at least some of the state laws did not prohibit enforcement of the agreements, and that Wells Fargo could have severed the class action waiver provision and submitted to class arbitration.

## II.  STANDARD OF REVIEW

"We review de novo the denial of a motion to compel arbitration." Hough, 672 F.3d at 1228.

## III.  DISCUSSION

We divide our discussion in two parts.  First, we explain why Wells Fargo waived its right to compel arbitration.  Second, we explain why it would not have been futile for Wells Fargo to move to compel arbitration before the Supreme Court decided Concepcion.

### A. *Wells Fargo Waived Its Right To Compel Arbitration.*

"[D]espite the strong policy in favor of arbitration, a party may, by its conduct, waive its right to arbitration," S & H Contractors, Inc. v. A.J. Taft Coal Co., 906 F.2d 1507, 1514 (11th Cir. 1990) (citation omitted), and we apply a two-part test to determine that issue.  "First, we decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1315–16 (11th Cir. 2002) (internal quotation marks omitted).  A party acts inconsistently with the arbitration right when the party "substantially invokes the litigation machinery prior to demanding

7

arbitration." S & H Contractors, 906 F.2d at 1514 (internal quotation marks and alterations omitted). "[S]econd, we look to see whether, by [acting inconsistently with the arbitration right], that party has in some way prejudiced the other party." Ivax Corp., 286 F.3d at 1316 (internal quotation marks omitted). To determine whether the other party has been prejudiced, "we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." S & H Contractors, 906 F.2d at 1514.

Wells Fargo acted inconsistently with the arbitration right in two ways. First, Wells Fargo failed to move to compel arbitration even though the district court twice invited it to file motions to compel in November 2009 and April 2010. Wells Fargo even went so far as to say that it did not intend to seek arbitration in the future of the claims brought by most of the existing plaintiffs against Wachovia. Second, Wells Fargo "substantially invoke[d] the litigation machinery prior to demanding arbitration." S & H Contractors, 906 F.2d at 1514 (internal quotation marks and alterations omitted). In S & H Contractors, we concluded that a party acted inconsistent with the right to arbitration when it waited eight months to move to compel arbitration, by which time the parties had litigated two motions and the moving party had taken five depositions. Id. But the pretrial litigation in this matter was far more substantial: the parties conducted discovery for more than a year, during which time they conducted more than three times as many

8

depositions, served and answered interrogatories, and produced approximately 900,000 pages of documents.

If we were to compel arbitration, the plaintiffs would suffer substantial prejudice for two reasons. First, "[p]rejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate." Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n (Lux.), 62 F.3d 1356, 1366 (11th Cir. 1995). There is no doubt that these plaintiffs expended substantial sums of money in conducting this litigation. Second, "[t]he use of pre-trial discovery procedures by a party seeking arbitration may sufficiently prejudice the legal position of an opposing party so as to constitute a waiver of the party's right to arbitration." Stone v. E.F. Hutton & Co., 898 F.2d 1542, 1543 (11th Cir. 1990). Wells Fargo benefited from conducting discovery of the plaintiffs, a benefit to which it would not have been entitled during arbitration. See Se. Stud & Components, Inc. v. Am. Eagle Design Build Studios, LLC, 588 F.3d 963, 969 (8th Cir. 2009).

*B. A Motion to Compel Arbitration Before the Supreme Court Decided Concepcion Was Not Futile.*

Wells Fargo argues that it did not waive its right to arbitration because any motion to compel arbitration would have been futile before the Supreme Court

9

decided Concepcion, but we disagree. To be sure, because "[t]his circuit does not require a litigant to engage in futile gestures," a party will not waive its right to arbitrate by failing to act whenever "any motion to compel would almost certainly have been futile." Miller v. Drexel Burnham Lambert, Inc., 791 F.2d 850, 854 (11th Cir. 1986), abrogation on other grounds recognized by Feldspar Trucking Co. v. Greater Atlanta Shippers Ass'n, 849 F.2d 1389, 1391 n.2 (11th Cir. 1988). But absent controlling Supreme Court or circuit precedent foreclosing a right to arbitrate, a motion to compel arbitration will almost never be futile. See id. As the Eighth Circuit has explained, a party must move to compel arbitration whenever "it should have been clear to [the party] that the arbitration agreement was at least arguably enforceable." Se. Stud, 588 F.3d at 967.

Wells Fargo argues that the futility doctrine excuses a failure to move to compel arbitration so long as it appears that the motion would be "unlikely to succeed," but our decisions in Benoay v. Prudential-Bache Sec., Inc., 805 F.2d 1437, 1440 (11th Cir. 1986), and Miller, 791 F.2d at 854, illustrate that the futility exception to waiver is narrower. When those lawsuits were filed, "the law of this circuit prohibited arbitration of otherwise arbitrable state claims when arbitrable and nonarbitrable claims were 'inextricably intertwined.'" Benoay, 805 F.2d at 1440 (quoting Belke v. Merrill Lynch, Pierce, Fenner & Smith, 693 F.2d 1023, 1026 (11th Cir. 1982)). Because the state and federal claims joined in those cases

10

were "based on a common nucleus of operative facts," the claims fell squarely under the intertwining doctrine, so the district court would almost certainly have denied a motion to compel arbitration. Id. (quoting Miller, 791 F.2d at 854). But in Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S. Ct. 1238 (1985), the Supreme Court rejected the intertwining doctrine and abrogated our precedent in Belke. Afterward, the defendants in both Benoay and Miller moved to compel arbitration of their non-arbitrable state law claims, and the plaintiffs argued that the defendants had waived their right to compel arbitration. Benoay, 805 F.2d at 1439; Miller, 791 F.2d at 854. We held that the right to arbitrate had not been waived because, when Belke was the governing law, "any motion to compel arbitration would almost certainly have been futile. . . . Thus, appellees' failure to request arbitration prior to the Byrd decision is irrelevant to the issue of waiver." Miller, 791 F.2d at 854; see also Benoay, 805 F.2d at 1440. Before Byrd, when arbitrable state contract claims and non-arbitrable federal securities claims based on a common set of facts were joined, it was "almost certain[]"—not merely "unlikely," as Wells Fargo suggests—that a motion to compel arbitration would have been denied. See Miller, 791 F.2d at 854. The more lenient "unlikely to succeed" standard that Wells Fargo proposes would only "encourage litigants to delay moving to compel arbitration until they could ascertain how the case was going in federal district court," In re Mirant Corp., 613 F.3d 584, 590 (5th Cir. 2010)

11

(internal quotation marks omitted), and would undermine one "of the basic purposes of arbitration: a fast, inexpensive resolution of claims," O.R. Sec., Inc. v. Prof'l Planning Assocs., 857 F.2d 742, 747 (11th Cir. 1988).

When twice invited to file a motion to compel arbitration, Wells Fargo could have argued exactly what the Supreme Court held in Concepcion: that the Act preempts state contract laws that condition the enforceability of consumer arbitration agreements on the availability of classwide arbitration procedures. Neither Supreme Court nor our precedents foreclosed that argument. To the contrary, under existing precedent, "it should have been clear to [Wells Fargo] that the arbitration agreement was at least arguably enforceable." Se. Stud, 588 F.3d at 967. The Supreme Court had already held that the Act "preempts a state law that withdraws the power to enforce arbitration agreements," Southland Corp. v. Keating, 465 U.S. 1, 16 n.10, 104 S. Ct. 852, 861 n.10 (1984), and "preclude[s] States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed 'upon the same footing as other contracts,'" Doctor's Assocs. v. Casarotto, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656 (1996) (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S. Ct. 2449, 2453 (1974)). The preemption argument was available to Wells Fargo and was not "almost certain[]" to fail. Miller, 971 F.2d at 854. By failing to make this argument, Wells Fargo waived its right to compel arbitration.

12

The decision by the Eighth Circuit in <u>Southeastern Stud</u> is instructive. In that case, the defendant did not initially move to compel arbitration under a contract clause that gave the defendant the exclusive right to compel arbitration because governing Arkansas law required mutuality of obligation within an arbitration agreement. <u>Se. Stud</u>, 588 F.3d at 966. Nearly one year after the lawsuit was filed in a district court, the same district court held in another decision that the Federal Arbitration Act preempted the Arkansas state law, and the defendant in <u>Southeastern Stud</u> moved to compel arbitration. <u>Id.</u> at 966–67. The Eighth Circuit held that the defendant had waived its right to arbitrate because "it should have been clear to [the defendant] that the arbitration agreement was at least arguably enforceable" based on the same preemption argument that prevailed in the other case. <u>Id.</u> at 967.

In this case, as in <u>Southeastern Stud</u>, Wells Fargo could have argued, but did not argue, that the Act preempts state laws that might have made the arbitration provisions unenforceable. Wells Fargo was not foreclosed from arguing preemption the way the defendants in <u>Miller</u> and <u>Benoay</u> were foreclosed before <u>Byrd</u> from arguing against the intertwining doctrine. <u>Concepcion</u> "did not decide new law or reverse previous case law," but "merely correctly applied existing law." <u>Id.</u> at 968.

13

We need not address the other grounds for waiver addressed by the district court. Because Wells Fargo could have argued that the Act preempted contrary state law, we need not consider whether Wells Fargo also could have argued that the relevant state laws did not preclude enforcement of the classwide arbitration provisions. And we need not consider whether Wells Fargo could have severed the class action provision and submitted to class arbitration.

### IV. CONCLUSION

We **AFFIRM** the denial of the motion to dismiss or, in the alternative, to stay in favor of arbitration.