UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036
_____/

THIS DOCUMENT RELATES TO:

*Dasher v. RBC Bank (USA)*,
S.D. Fla. Case No. 1:10-CV-22190-JLK

*Avery v. RBC Bank*,
E.D. N.C. Case No. 5:10-cv-329
_____/

**DEFENDANT RBC BANK (USA)'S RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
RBC BANK'S RENEWED MOTION TO COMPEL ARBITRATION**

Pursuant to the *Stipulation and Order Establishing Schedule for Briefing and Proceedings on Renewed Arbitration Motion* [DE 2976], RBC Bank (USA) ("RBC") submits its Response to *Plaintiffs' Supplemental Brief in Opposition to RBC Bank's Renewed Motion to Compel Arbitration* ["*Plaintiffs' Supplemental Brief*"; DE 3008].

**I.   INTRODUCTION**

Capitulating on the arbitration issue, Plaintiffs now argue that because RBC was merged into PNC Bank ("PNC") almost two years <u>after</u> Plaintiffs filed suit against RBC for contract-based claims arising from <u>RBC's</u> Personal Services Account Agreement with Dasher and Avery, the absence of an arbitration provision in <u>PNC's</u> account agreement excuses Plaintiffs from their obligation to arbitrate their claims against RBC. Plaintiffs' arguments are frivolous, and courts have uniformly rejected them. Plaintiffs sued RBC based on their contract with RBC. No law supports their argument that Plaintiffs may avoid the arbitration provision in their contract with RBC because they entered into a subsequent contract with PNC. Plaintiffs' request that the Court deny arbitration on this basis is yet another example of Plaintiffs' attempting to lead this Court into error.

Plaintiffs' now secondary argument that they may avoid arbitration on unconscionability grounds irrespective of the PNC merger fares no better and merely rehashes prior briefing. Moreover, Plaintiffs have vitiated their previous main argument against arbitration by conceding that use of a bank account binds a customer to the account's terms and conditions. Therefore, whether Plaintiffs received the April 2008 "mailer" or were otherwise alerted to the existence of the arbitration provision is no longer relevant to the Court's adjudication of RBC's *Renewed Motion to Compel Arbitration*.

Accordingly, RBC's *Renewed Motion to Compel Arbitration* should be granted and Plaintiffs ordered to arbitration in accordance with the firmly established law arising out of this MDL proceeding.

## II. RBC's Merger with PNC Did Not Eliminate the RBC Arbitration Provision, Which Continues to Bind Plaintiffs

Plaintiffs argue "there is no longer an arbitration clause in effect between RBC Bank and Plaintiffs" because in March 2012 RBC was merged into PNC Bank and "[a]s part of the transition from RBC to PNC Bank, existing customers of the bank were sent a new deposit agreement" which did not contain an arbitration provision. *Plaintiffs' Supplemental Brief* at 2. According to Plaintiffs, the PNC deposit agreement superseded the RBC deposit agreement[1] and retroactively "mooted," "waived," and "repealed" the arbitration provision in the RBC deposit agreement that is the basis for RBC's pending motion to compel arbitration. *Id.* at 4-5.

Plaintiffs' argument is, in a word, frivolous. Similar arguments have uniformly been rejected by the courts, which hold that (a) an arbitration provision survives the termination of the contract in which it is contained and (b) a subsequent agreement which does not contain an arbitration provision does not supersede a broad arbitration provision in the prior agreement where, as here, the arbitrable claims arose out of the prior agreement and there was no explicit waiver of arbitration in the subsequent agreement. Indeed, in *Goshawk Dedicated Ltd. v. Portsmouth Settlement Co., Inc.*, 466 F. Supp. 2d 1293 (N.D. Ga. 2006), the court surveyed cases in which contracts with arbitration provisions were superseded by contracts without them, and concluded that "all courts which have directly addressed the issue" have enforced the

---

[1] The two agreements are in the record. A copy of the PNC Bank Account Agreement for Personal Checking, Savings and Money Market Accounts ("PNC deposit agreement") is attached as Exhibit B to *Plaintiffs' Supplemental Brief* and a copy of the April 2008 RBC Personal Accounts Service Agreement ("RBC deposit agreement") is attached as Exhibit A to *RBC's Renewed Motion to Compel Arbitration and Dismiss or Stay Cases* [DE 1929].

2

original arbitration provisions "absent a showing that the parties specifically agreed to retroactively rescind or terminate the arbitration agreement itself . . . ." *Id*. at 1299-1300. *See also, e.g., Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977) ("the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship"), cited with approval by this Court in *Integrated Security Services, Inc. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1326 (S.D. Fla. 2009) (King, J.) (concluding that the termination of the contract had no bearing on the right to arbitrate); *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005) (arbitration provision in prior account agreement was enforceable where subsequent agreement, which did not contain an arbitration provision, did not specifically preclude arbitration of claims covered by arbitration provision); *Montgomery Mailers' Union No. 127 v. Advertiser Co.*, 827 F.2d 709, 712 (11th Cir. 1987) (arbitration clause may be enforced after the termination of a contract); *Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987), *abrogated on other grounds*, 485 U.S. 271 (1988) (arbitration provision in prior agreement was enforceable where subsequent agreement, which did not contain an arbitration provision, did not contain an express waiver of the right to arbitrate); *Sher v. Goldman Sachs*, No. CCB-11-2796, 2012 WL 1377066, at *3 (D. Md. Apr. 19, 2012) ("[c]ourts have concluded that a subsequent agreement without reference to arbitration does not overcome the presumption of arbitration created by a broad arbitration provision in an initial agreement"); *GMC v. Fiat S.p.A.*, 678 F. Supp. 2d 141, 148-50 (S.D.N.Y. 2009) (arbitration provision in earlier agreement was not superseded by subsequent contract); *State ex rel. Ranger Fuel Corp. v. Berkley*, 267 S.E.2d 435, 437 (1980) ("[i]t is the general rule that the duty to arbitrate under an arbitration clause in a contract survives the termination of the contract").

In *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 89 N.Y.2d 594, 679 N.E.2d 624 (N.Y. Ct. App. 1997), Wal-Mart and Primex entered into service agreements in 1990 and 1993 which contained an arbitration provision. In 1995, they entered into a service agreement which was the same as the preceding ones, except it did not contain an arbitration provision. Subsequently, Wal-Mart terminated Primex and sued it for breaching the 1990, 1993, and 1995 agreements. Primex demanded arbitration, which Wal-Mart opposed on the ground that the omission of an arbitration provision in the 1995 agreement implicitly superseded the 1990 and 1993 agreements

3

and eliminated any obligation to arbitrate disputes arising under the two prior agreements. Rejecting Wal-Mart's argument – the same argument advanced by Plaintiffs here – the New York Court of Appeals held that Wal-Mart was required to arbitrate the claims arising out of the 1990 and 1993 agreements. The court explained:

> Generally, a broad arbitration clause in an agreement survives and remains enforceable for the resolution of disputes arising out of that agreement subsequent to the termination thereof and the discharge of obligations thereunder . . . . Thus, although both the 1990 and 1993 contracts have expired, the broad arbitration clauses contained in them would be enforceable as to the allegations in the Wal-Mart complaint pertaining to the acts of Primex during the terms of the 1990 and 1993 Agreements – all of which arise out of the procurement of merchandise by Primex as Wal-Mart's agent under those Agreements.

*Id*. at 626-27.

Plaintiffs cite no cases to support their argument that are even remotely on point and completely ignore the above authorities which are. The one case they do briefly discuss, *Enderlin v. XM Satellite Radio Holdings, Inc.*, No. 4:06-CV-0032, 2008 WL 830262 (E.D. Ark. Mar. 25, 2008) (*Plaintiffs' Supplemental Brief* at 4), did not deal at all with the issue of whether an arbitration provision in a prior agreement is superseded by a later agreement without one. Instead, *Enderlin* held that the plaintiff was bound by an amendment to an arbitration provision implemented by the defendant during litigation because the plaintiff continued to use the defendant's services after receiving the amendment. *See id.* at *15-16. While *Enderlin* does not help Plaintiffs, it confirms that Plaintiffs are bound by the 2008 deposit agreement containing the arbitration provision, an issue they had previously contested.[2]

Pursuant to *Primex* and the other decisions discussed above, the fact that PNC's deposit agreement does not contain an arbitration provision is simply <u>irrelevant</u> to the disposition of RBC's motion to compel arbitration. Contrary to Plaintiffs' assertions, the PNC deposit agreement does not "now govern[] the pending motion." *Plaintiffs' Supplemental Brief* at 4. Nor

---

[2] Indeed, Plaintiffs go to great lengths to show that they are bound by the PNC deposit agreement because they continued to use their account after receiving that agreement. That does not bolster their argument here because the PNC deposit agreement has no bearing on their duty to arbitrate, but it does irrefutably establish that they are bound by the 2008 RBC deposit agreement containing the arbitration provision. Plaintiffs acknowledge that the RBC deposit agreement stated that they would be bound by the agreement if they continued to use their account, which they did. *Plaintiffs' Supplemental Brief* at 4. They further admit that under North Carolina law "continued use of a service after a change of terms is evidence of the acceptance of these new terms." *Id.* at 3.

is "[t]he absence of an arbitration clause within the PNC Agreement . . . dispositive . . . ." *Id.* at 6. Plaintiffs are still obligated to arbitrate all claims asserted against RBC in these lawsuits, just as if the merger between RBC and PNC had never occurred. In particular, the following undisputed facts establish that *Primex* and the other cited cases are fully applicable here:

<u>First</u>, as RBC has previously established, the arbitration provision broadly covers "any unresolvable dispute or claim concerning the Agreement or the Account." *See* RBC deposit agreement, Doc. 1929-1, p. 8. Nothing in the arbitration provision indicates that its application would cease if the RBC deposit agreement was terminated or RBC merged with another bank. On the contrary, the RBC deposit agreement clearly contemplated that the arbitration provision would survive the termination of that agreement:

> **Effect of Termination.** Transactions initiated prior to the effective date of termination of the Agreement will not be affected by the termination. <u>Transactions initiated prior to termination will continue to be subject to the terms and conditions of the Agreement</u>. Your indemnification and other payment obligations to us, including your obligation to pay fees and other charges, will survive termination of the Agreement, as will any other provisions in the Agreement that are by their terms or inherent nature intended to survive a termination . . . .

*Id.* at 9 (bold in original; underline emphasis added).

As discussed above, it is widely held that an arbitration provision survives the termination of the contract in which it is contained. That is due to its inherent nature. *See Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991) (an arbitration provision is presumed to survive the termination of a contract because it is a "structural provision" that relates to remedies and dispute resolution, and not an obligation concerning performance). The above-quoted language of RBC's deposit agreement provides in general terms that "provisions in the Agreement that are by their terms or inherent nature intended to survive a termination" will survive termination of the agreement. Likewise, the contract in *Integrated Security Services, Inc. v. Skidata, Inc.*, *supra*, stated generally that it could be terminated "[w]ithout waiving any other rights previously accrued." 609 F. Supp. 2d at 1326. Based upon that language, this Court concluded that "the termination of the Agreement has no bearing on the right to arbitrate" because "the parties expressed – by the terms of the Agreement – that the right to arbitrate would survive termination." *Id.* The language used in RBC's deposit agreement compels the same conclusion: the parties intended that the arbitration provision, a provision that by its inherent

nature is presumed to survive contractual termination, *see Litton Fin. Printing Div. v. NLRB*, would survive termination of the agreement.

The RBC deposit agreement further contemplated that the arbitration provision would continue to be enforceable by any successor of RBC and binding on Plaintiffs in the event that RBC's rights were transferred:

> **Assignment. . . .** We may transfer or assign our rights and obligations under the Agreement in whole or in part without notice to or approval by you . . . . Subject to the foregoing, the terms and conditions of the Agreement will be binding upon and inure to your benefit and our benefit as well as the benefit of your permitted successors and assigns and our successors and assigns.

RBC deposit agreement, Doc. 1929-1, p. 12. North Carolina law, on which Plaintiffs heavily rely (*Plaintiffs' Supplemental Brief* at 2, 5-6), likewise provides that "'[i]n the event of a merger between two corporations, the surviving corporation succeeds by operation of law to all the rights, privileges, immunities, franchises and other property of the constituent corporations, without the necessity of a bill of sale, or other form of assignment.'" *Revolutionary Concepts, Inc. v. Clements Walker PLLC*, No. 08 CVS 4333, 2012 WL 762125, at *4 (N.C. Super. Ct. Mar. 8, 2012) (quoting *Econo-Travel Motor Hotel Corp. v. Taylor,* 271 S.E.2d 54, 58 (N.C. 1980)).

Thus, requiring Plaintiffs to arbitrate their claims against RBC following RBC's merger with PNC is completely consistent with the express terms of their RBC deposit agreement, as well as with North Carolina law. Plaintiffs acknowledge that "'[w]hen the language of a contract is clear and unambiguous, effect must be given to its terms.'" *Plaintiffs' Supplemental Brief* at 5 (citation omitted). Likewise, the "primary purpose" of the Federal Arbitration Act ("FAA") is to ensure that "private agreements to arbitrate are enforced according to their terms." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773 (2010); *accord AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748-49 (2011) (the "overarching purpose" of the FAA is to ensure the enforcement of arbitration agreements according to their terms).

Second, all of Plaintiffs' claims concern RBC's alleged overdraft fee practices under the pre-merger RBC deposit agreement that contains the broad arbitration provision. As Plaintiffs' counsel stated during discovery, "this lawsuit is about . . . banking activities related to RBC Bank." July 25, 2012 Deposition of RBC Bank, Doc. 3008-12, p. 3 (filed Oct. 15, 2012). The putative classes are comprised entirely of RBC customers complaining about the overdraft fees charged by RBC to their RBC accounts. *See* Dasher Complaint, ¶ 15 (putative class defined as "[a]ll RBC customers in the United States who . . . incurred an overdraft fee as a result of RBC's

6

practice of resequencing debit card transactions from highest to lowest"); *Avery* Amended Complaint, ¶ 23 (putative class defined as "[a]ll RBC bank customers in the State of North Carolina who . . . were improperly charged Overdraft Fees or not notified of such fees when . . . RBC re-ordered customer's electronic debit transactions from the highest dollar amount to lowest dollar amount . . . "). Indeed, Plaintiffs initiated these lawsuits, and RBC filed its motion to compel arbitration, in 2010, two years <u>before</u> the merger with PNC.

 <u>Third</u>, PNC's deposit agreement is totally devoid of language indicating that claims against RBC that were subject to arbitration under the RBC deposit agreement would no longer be arbitrable. It does not even mention the word "arbitration," nor does it contain a choice of forum clause requiring all disputes to be resolved in a particular court instead of an arbitral forum. Moreover, the PNC deposit agreement is prospective only. As Plaintiffs acknowledge, "the bank is now known as PNC Bank <u>going forward</u>." *Plaintiffs' Supplemental Brief* at 2 (emphasis added). Accordingly, there is no basis for finding that the implementation of the PNC deposit agreement caused a "waiver" of the arbitration provision in the RBC deposit agreement. *See Patten Sec. Corp. v. Diamond Greyhound & Genetics*, 819 F.2d at 407 ("[a] party signing a waiver must know what rights it is waiving"). While in general there may be "no rule against removing [arbitration] requirements" in the middle of litigation, *Plaintiffs' Supplemental Brief* at 4, that clearly did <u>not</u> occur in this case. The RBC arbitration provision has not been removed, repealed, or waived. It remains fully applicable to the claims asserted by Plaintiffs against RBC.

 In light of all the foregoing, it is indisputable that Plaintiffs' duty to arbitrate their claims against RBC was preserved, not eliminated, after the merger with PNC. Plaintiffs' repetitive argument to the contrary[3] is simply wishful thinking that has <u>no</u> basis in fact or law.

 There is another compelling reason for rejecting Plaintiffs' argument: they are continuing to press their substantive claims against RBC for breach of the RBC deposit agreement. Under the FAA, arbitration provisions cannot be singled out for special treatment. *Doctors' Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Since Plaintiffs, by pursuing their breach of contract claims, are attempting to enforce at least part of the RBC deposit agreement, they cannot contend

---

[3] *See Plaintiffs' Supplemental Brief* at 1 ("RBC has recently done away with the arbitration requirement altogether"); *id.* ([i]n 2012, RBC unilaterally decided to remove arbitration from its customer agreement"); *id.* at 2 ("RBC chose to voluntarily remove arbitration . . . "); *id.* at 4 ("the arbitration requirement was removed by RBC"); *id.* at 5 (RBC Bank . . . repealed [the] arbitration provision").

7

that only the arbitration provision in that agreement was repealed by the PNC agreement solely by virtue of the merger. *See, e.g.*, *Blinco v. Green Tree Servicing LLC*, 400 F.3d 1308, 1312 (11th Cir. 2005) ("Mrs. Blinco may not rely upon the Note to establish her RESPA claims while avoiding her obligation under the Note to arbitrate such claims"); *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) ("[plaintiff's] entire case hinges on its asserted rights under the . . . contract; it cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated"); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838 (7th Cir. 1981) (arbitration required because "[plaintiff's] complaint is . . . fundamentally grounded in [defendant's] alleged breach of the obligations assigned to it in the [arbitration] agreement"); *Rampersad v. Primeco Pers. Commc'ns, L.P.*, No. 01-6640-CIV, 2001 WL 34872572, at *1 (S.D. Fla. Oct. 16, 2001) (a plaintiff cannot claim the contract was not formed to avoid arbitration and concurrently sue for breach of that contract); *Celtic Life Ins. Co. v. Lindsey*, 765 So. 2d 640 (Ala. 2000) (plaintiff who brought suit for breach of contract could not "pick and choose" the contractual provisions he wanted to enforce while avoiding the arbitration clause in the contract that he opposed); *Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d at 627 (Wal-Mart's argument that the 1995 service agreement, which did not contain an arbitration provision, superseded the two earlier agreements that did contain an arbitration provision was undercut by the fact that Wal-Mart had sued for breach of those agreements); *Johnson v. Chase Manhattan Bank USA, N.A.*, No. 603101/02, 2004 N.Y. Misc. LEXIS 133, at *6 (N.Y.S. Feb. 27, 2004) (plaintiff could not claim he never agreed to the contract containing the arbitration provision while suing for its breach), *aff'd*, 786 N.Y.S.2d 302 (1st Dep't, Dec. 28, 2004); *Matter of Terminal Auxiliar Maritima* (*Winkler Credit Corp.*), 160 N.E.2d 526, 529 (1959) ("In point of fact, the appellant does not regard the contract as having been 'cancelled' in any real sense, since it is actually suing for its breach in the action now stayed. If the contract had been so 'cancelled,' then neither party would have a claim under it, and [appellant's] lawsuit would be ripe for dismissal.").

Accordingly, Plaintiffs' duty to arbitrate the claims they have asserted against RBC in these actions was not affected or impaired in any respect by the merger with PNC.

### III. PLAINTIFFS' UNCONSCIONABILITY ARGUMENTS AGAINST ENFORCEABILITY OF RBC'S ARBITRATION PROVISION SIMPLY REHASH PRIOR BRIEFING AND HAVE BEEN REJECTED REPEATEDLY BY THE ELEVENTH CIRCUIT

As their fallback argument, Plaintiffs contend that RBC's arbitration provision cannot be enforced on "unconscionability" grounds. *See Plaintiffs' Supplemental Brief* at § I-B. Plaintiffs are wrong. Shockingly, they cite as authority this Court's vacated decisions. *See id*. at 12 (citing *In re Checking Account Overdraft Litig.*, 734 F. Supp. 2d 1279 (S.D. Fla. 2010), *vacated* 425 F. App'x 826 (11th Cir. Apr. 28, 2011); *In re Checking Account Overdraft Litig.*, No. 09-MD-02036-JLK, 2010 WL 3361127 (S.D. Fla. Aug. 23, 2010)), *vacated*, No. 10-14488 *unpub. slip op.* (11th Cir. June 17, 2011). However, having led the Court into error five times, Plaintiffs should not be allowed to do so a sixth.[4]

#### A. "Selective Enforcement" Is Not Unconscionable

Plaintiffs' first argument is that the arbitration provision is unconscionable because RBC "selectively enforces" its arbitration provision" by "not moving to compel arbitration when a customer has filed in small claims court." *See Plaintiffs' Supplemental Brief* at 6. This argument flies in the face of the American Arbitration Association's consumer arbitration rules (available at http://www.adr.org/sp.asp?id=22014) and its Consumer Due Process Protocol (available at http://www.adr.org/sp.asp?id=22019), which <u>require</u> that consumers be given the option of going to small claims court, as well as the Eleventh Circuit's holding in *Jenkins v. First American Cash Advance of Ga.*, 400 F.3d 868, 878-80 (11th Cir. 2005), that a small claims exception to arbitration benefits consumers and is not unconscionable.

Simply put, under the applicable arbitration rules and binding Eleventh Circuit precedent, permitting consumers to pursue claims in small claims court rather than arbitration is not unconscionable.

---

[4] Plaintiffs attempt to lead the Court into error again when they argue that this Court should follow *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362 (N.C. 2008). *See, e.g., Plaintiffs' Supplemental Brief* at 6, 9. However, *Tillman* has been abrogated by *Concepcion* because it is a pre-*Concepcion* class-action waiver case. *See* 655 S.E.2d at 373 ("Plaintiffs correctly note that an increasing number of courts have found class action waivers in arbitration clauses substantively unconscionable."). Because the U.S. Supreme Court invalidated that argument in *Concepcion*, nothing relevant in *Tillman* survives. *See Reply in Support of Renewed Motion*, Doc. 2092, pp. 6-8. No North Carolina court or federal court could properly rely on *Tillman* to invalidate RBC's arbitration provision.

9

> B. **RBC's Alleged Failure to Highlight or Explain the Arbitration Provision in the April 2008 Service Agreement for Personal Accounts Does Not Make the Provision Procedurally Unconscionable**

Plaintiffs' second argument is that because RBC did not somehow highlight or explain the arbitration provision when it was adopted in April 2008, Plaintiffs are not bound by that provision. *See Plaintiffs' Supplemental Brief* at 7-9. It is stunning that Plaintiffs make this argument after arguing to the Court in the same filing that "[c]ase law from various jurisdictions, including North Carolina, provides that <u>continued use of a service after a change in terms is evidence of acceptance of these new terms</u>." *Id.* at 3 (emphasis added). There is no dispute that Dasher and Avery continued to use their accounts long after the April 2008 and the April 2009 amendments to the RBC deposit agreement, and Plaintiffs' own authority establishes that such use binds Plaintiffs to the terms of that agreement – including the arbitration provision. *See Plaintiffs' Supplemental Brief* at 3-4.

Furthermore, Plaintiffs' contention that the arbitration provision must be highlighted or explained to be enforceable ignores well-established Supreme Court authority. *Doctors' Assoc.*, 517 U.S. at 687 ("[Montana's] law conditions the enforceability of arbitration agreements on compliance with a special notice requirement not applicable to contracts generally. The FAA thus displaces the Montana statute with respect to arbitration agreements covered by the Act."). *See also Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 172 (5th Cir. 2004) ("[T]he FAA prohibits states from passing statutes that require arbitration clauses to be displayed with special prominence . . . . [C]ourts cannot use the unconscionability doctrines to achieve the same result[.]"); *Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F.2d 282, 287 (9th Cir. 1988) (no duty to explain effects of arbitration clause); *Pierson v. Dean Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir. 1984) (no duty to explain or alert party to arbitration clause or its effects); *Lomax v. Woodmen of the World Life Ins. Soc'y*, 228 F. Supp. 2d 1360, 1364 (N.D. Ga. 2002) ("Plaintiffs' argument that the PRP must be set forth in bold-faced type is meritless.").

Plaintiffs' argument fails factually as well as legally. RBC's arbitration provision is not buried in the agreement; it is located on the seventh page of a twenty-two page document written in easily-readable type and its heading – "**Arbitration**" – is bold-faced and underlined. The arbitration provision follows other bold-faced and underlined sections entitled "**Definitions**," "**Agreement**," "**Use of Account**," "**Representations and Warranties**," "**Fees**," "**Changes in Terms**," "**Account Rules**" (which clearly states RBC's overdraft policy), "**Account**

**Statements**," and "**Recoupment and Set-off; Security Interest**." *See* RBC deposit agreement, Doc. 1929-1, pp. 1-7. Plaintiffs do not and – in light of the FAA and *Doctors' Associates* cannot – contend that the arbitration provision is "more important" than any of these other sections and should have been displayed any differently or moved up in the agreement.

      **C.**      **The Arbitration Provision Is Not Illusory**

Plaintiffs next contend that RBC's arbitration clause is "illusory" because RBC had the right to amend the agreement. *See Plaintiffs' Supplemental Brief* at 12. The argument is a red herring because RBC seeks to enforce the arbitration provision, not "suddenly change the terms of the agreement to avoid arbitration," which was the concern in the case chiefly relied on by Plaintiffs, *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202 (5th Cir. 2012). Plaintiffs' "illusory contract" argument is totally speculative and hypothetical and thus is not a permitted ground for denying arbitration. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000).

Plaintiffs cite no North Carolina law supporting their argument; instead, all of their authorities arise out of inapplicable Texas law, which the Fifth Circuit applied in *Carey*. This case, however, is not governed by Texas law, but by North Carolina law. Indeed, as the *Carey* court itself acknowledged, when the Fifth Circuit has applied state law other than Texas law, it has <u>rejected</u> the exact same "illusory contract" argument made by Plaintiffs here. *See* 669 F.3d at 209 n. 2. *See also Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d at 174 (applying Louisiana law and holding: "The change-in-terms provisions in the contracts before us do not render the contracts' obligations illusory. The notice of the change in terms can be understood as an invitation to enter into a relationship governed by the new terms. The customer then accepts the new terms by continuing to use the service . . . . The fact that the company has the right to change the terms upon notice does not mean that the contract never bound them. Nor does the fact that the companies could later attempt to change the arbitration clause to render it oppressive mean that the arbitration clause, as it stands, is unconscionable."); *Hutcherson v. Sears Roebuck & Co.*, 793 N.E. 2d 886, 896 (Ill. App. 2003) (change of terms clause was not an "escape hatch" that would permit company to amend the contract at any time to avoid an unfavorable arbitration decision).

North Carolina law does not support Plaintiffs' argument. *See Senior Mgmt., Inc. v. Capps*, 240 F. App'x 550, 552-53 (4th Cir. Apr. 20, 2007) (reversing a district court's denial of arbitration on the basis the arbitration clause was illusory and unenforceable); *Abdullah v. Duke Univ. Health Sys., Inc.,* No. 09-CV-8-FL, 2009 WL 1971622, at *4 (E.D. N.C. July 8, 2009)

11

(finding that North Carolina law does not support the argument that a provision allowing amendment of the dispute resolution provision makes an arbitration provision illusory).

Plaintiffs also ignore that, in fact, they were given thirty days' notice when they were notified in April 2008 and again in April 2009 that the terms of the RBC deposit agreement were changing. As noted in RBC's *Supplemental Brief*, the April 2008 "mailer" states:

> ***You agree that your continued use or maintenance of any account with us after the 30-day period described above will constitute your acceptance of and your agreement to be bound by all the terms and conditions contained in the new Agreement, regardless of whether you have obtained a copy of the new Agreement or whether you have read it.***

*See id*. at 9 & Ex. D (italics and emphasis in original). Similarly, as shown by Plaintiffs' quotation of the "IMPORTANT NOTICE" in Dasher's and Avery's April 2009 account statements, they were similarly informed in April 2009 that their continued use of their accounts "30 days from the date of th[e] statement" bound them to the changes in terms. *See Plaintiffs' Supplemental Brief* at 8. Such (repeated) notice vitiates Plaintiffs' claim that the arbitration provision is illusory and, therefore, unenforceable.

*Betts v. SGE Management, LLC*, 402 F. App'x 475 (11th Cir. Nov. 9, 2010), is instructive. Even though the arbitration provision in *Betts* could be amended, the fact that the overall contract had a thirty-day notice provision made it enforceable: "Because the underlying contract was supported by adequate consideration, the district court rightly enforced [plaintiff's] promise [to arbitrate]." *Id*. at *2. *See also Vince v. Specialized Servs., Inc.*, No. 8:11-cv-1683-T-24-TBM, 2011 WL 4599824, *3 (M.D. Fla. Oct. 3, 2011) ("The Court furthermore rejects the notion that the agreement was unconscionable or illusory because . . . Defendants could alter the terms of the Employee Handbook. To support a finding of unconscionability, Florida law [like North Carolina law] requires a showing of both procedural and substantive unconscionability. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134 (11th Cir.2010). Plaintiff has not shown that either the manner in which the contract was entered into, or the arbitration provision itself, were unreasonable or unfair.").

*Betts* also establishes that Plaintiffs' reliance on *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008), and *Torres v. S.G.E. Management, L.L.C.*, 397 F. App'x 63 (5th Cir. Oct. 5, 2010), is unfounded. *See Plaintiffs' Supplemental Brief* at 13. In *Betts*, the Eleventh Circuit expressly declined to follow *Morrison* and *Torres* and rejected Plaintiffs' precise argument:

> Betts's reliance on *Morrison v. Amway Corp.*, 517 F.3d 248 (5th Cir. 2008), is misplaced. For one thing, we are not bound by decisions from other circuits. And <u>to the extent *Morrison* stands for the proposition that illusory promises to arbitrate can invalidate contracts otherwise supported by sufficient consideration, we decline to adopt the Fifth Circuit's logic.</u> For similar reasons – and because we respect the Fifth Circuit's pronouncement that its unpublished decisions "are not precedent," 5th Cir. R. 47.5.4 – we are unmoved by the result in *Torres v. S.G.E. Management., L.L.C.*, 397 Fed. Appx. 63 (5th Cir.2010) (unpublished).

402 F. App'x at *2 n.2 (emphasis added).

The only thing before the Court that is illusory is Plaintiffs' authority. Like their other arguments against arbitration, this one must also be rejected.

    **D.    Eleventh Circuit Precedent in This MDL Requires that Any Problematic Provisions Be Severed to Allow Enforcement of the Arbitration Agreement**

Plaintiffs acknowledge, as they must, that the Eleventh Circuit, in appeals arising from this MDL, reversed this Court and enforced BB&T's arbitration provision after severing the unconscionable provisions. *See Plaintiffs' Supplemental Brief* at 15-16 (citing *Barras v. Branch Banking and Trust Co.*, 685 F.3d 1269 (11th Cir. 2012) (precedential); *Powell-Perry v. Branch Banking and Trust Co.*, No. 11-14319, 2012 WL 3100780 (11th Cir. July 31, 2012)). Nevertheless, Plaintiffs, reciting a laundry list of alleged deficiencies in RBC's arbitration provision, assert that a different result should ensue as to RBC, allegedly because "material distinctions are presented with regard to RBC's implementation of its arbitration provision." *Plaintiffs' Supplemental Brief* at 16.

Nowhere, however, do Plaintiffs identify any of the alleged "material distinctions" between RBC's arbitration provision and BB&T's that would distinguish these actions from *Barras* and *Powell-Perry* insofar as severance is concerned. With good reason: There are none. In fact, RBC's arbitration provision is more consumer-friendly than BB&T's.[5] If the Eleventh

---

    [5]    For example, BB&T's arbitration provision forced the consumer to pay BB&T's costs of arbitration regardless of whether BB&T prevailed in the dispute. *Barras*, 685 F.3d at 1281. By contrast, RBC's arbitration provision states that the arbitrator will award filing and arbitrator fees to the "prevailing party" and "may" require the party seeking discovery to pay discovery costs. The Eleventh Circuit expressly found such a prevailing-party provision "conscionable" in another of the appeals arising out of this MDL. *See In re Checking Account Overdraft Litig., Hough v. Regions Fin. Corp.*, 672 F.3d 1224, 1228 (11th Cir. 2012). Moreover, many provisions in the laundry list of alleged "deficiencies" enumerated by Plaintiffs (*e.g.*, the reservation of a security interest in the customer's account and the limitation of liability) are not even included in the arbitration provision itself but rather are in other parts of the deposit

13

Circuit found that BB&T's arbitration clause was enforceable after those more draconian offending provisions were severed, then *a fortiori* RBC's more consumer-friendly arbitration clause must be enforced even if the provisions that Dasher and Avery complain about are unconscionable (which, as previously established, they are not). Moreover, here, as in *Barras* and *Powell-Perry*, RBC's arbitration clause is governed by the AAA Rules and may operate independently of the alleged unconscionable provisions. *See Barras*, 685 F.3d at 1283.

Therefore, Plaintiffs' argument regarding severability should be dismissed out of hand because the issue has already been decided against Plaintiffs by the Eleventh Circuit in appeals arising from this very MDL.[6]

### IV.  CONCLUSION

For all of the foregoing reasons, RBC's *Renewed Motion to Compel Arbitration* should be granted forthwith.

---

agreement. In addition, it has already been determined that the one-year limitations period is not unconscionable under North Carolina law. *See, e.g.*, *In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 288 (4th Cir. 2007) (one year); *Badgett v. Federal Express Corp.*, 378 F. Supp. 2d 613, 625-26 (M.D.N.C. 2005) (six months). And, in *Powell-Perry*, the Eleventh Circuit specifically held, "North Carolina banking law allows banks to set off debts owed by the depositor against funds in the account." 2012 WL 3100780, at *4.

[6]  Plaintiffs apparently intend to offer a more "detailed analysis" of severance in their response. *Plaintiffs' Supplemental Brief* at 16 n. 6. However, there is nothing more that Plaintiffs could say that would change the result because the Eleventh Circuit has already established the governing law in *Barras* and *Powell-Perry*. In any event, the Court should not hear further argument on the severance issue because permitting Plaintiffs to postpone their severance argument for their response leaves RBC with no ability to respond to the arguments – thus defeating the purpose of the supplemental briefing authorized by the Court. The proper remedy is for the Court to find that Plaintiffs have waived any additional severance argument because they failed to include it in their Supplemental Brief.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: October 29, 2012 | **AKERMAN SENTERFITT**<br>One S.E. Third Avenue — 25th Floor<br>Miami, FL 33131-1714<br>Tel.: 305-374-5600<br>Fax: 305-374-5095 |

By: s/ Christopher S. Carver
    CHRISTOPHER S. CARVER, ESQ.
    Florida Bar No. 993580
    E-mail: christopher.carver@akerman.com
    STACY J. HARRISON, ESQ.
    Florida Bar No. 44109
    E-mail: stacy.harrison@akerman.com

**AKERMAN SENTERFITT**
420 South Orange Avenue
Post Office Box 231
Orlando, FL  32802-0231
Tel.:  407-423-4000
Fax:  407-843-6610

By: s/ Virginia B. Townes
    VIRGINIA B. TOWNES, ESQ.
    Florida Bar No.  361879
    E-mail: virginia.townes@akerman.com

*Attorneys for Defendant RBC Bank (USA)*

### CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of *Defendant RBC Bank (USA)'s Response to Plaintiffs' Supplemental Brief in Opposition to RBC Bank's Renewed Motion to Compel Arbitration* were served via transmission of Notices of Electronic Filing generated by CM/ECF on October 29, 2012, on all counsel or parties of record on the Service List below, as well as on all other counsel who have entered appearances in MDL 2036. To the extent counsel listed in the Service List have not entered appearances in MDL 2036, they are being served via U.S. Mail.

s/Christopher S. Carver

## SERVICE LIST

*In re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK
Relating to: *Dasher v. RBC Bank (USA)*, Case No. 1:10-cv-22190-JLK
United States District Court, Southern District of Florida

*Counsel for Plaintiff Michael Dasher*
(service by CM/ECF)

Jeffrey M. Ostrow, Esq.
David L. Ferguson, Esq.
**KOPELOWITZ OSTROW FERGUSON
   WEISELBERG KEECHL**
200 S.W. First Avenue, 12th Floor
Ft. Lauderdale, FL 33301
Tel.: 954-525-4100
Fax: 954-525-4300
E-mail: ostrow@kolawyers.com
E-mail: ferguson@kolawyers.com

Darren T. Kaplan, Esq.
**CHITWOOD HARLEY HARNES, LLP**
1230 Peachtree Street, N.E.
2300 Promenade II
Atlanta, GA 30309
Tel.: 404-873-3900
Fax:  404-876-4476
E-mail: dkaplan@chitwoodlaw.com

*Plaintiffs' Coordinating Counsel*
(service by CM/ECF)

Robert C. Gilbert, Esq.
**GROSSMAN ROTH, P.A.**
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel.: 305-442-8666
Fax: 305-779-9596
E-mail: rcg@grossmanroth.com

*Counsel for Defendant RBC Bank (USA)*
(service by CM/ECF)

Virginia B. Townes, Esq.
Carrie Ann Wozniak, Esq.
**AKERMAN SENTERFITT**
420 South Orange Avenue
Post Office Box 231
Orlando, FL  32802-0231
Tel.:  407-423-4000
Fax:  407-843-6610
E-mail: virginia.townes@akerman.com
E-mail: carrieann.wozniak@akerman.com

Christopher S. Carver, Esq.
Stacy J. Harrison, Esq.
**AKERMAN SENTERFITT**
One S.E. Third Avenue – Suite 2500
Miami, FL 33131-1714
Tel.:  305-374-5600
Fax:  305-374-5095
E-mail: christopher.carver@akerman.com
E-mail: stacy.harrison@akerman.com

*Counsel for Plaintiff Stephanie Avery*

Inez de Ondarza Simmons, Esq.
5 West Hargett Street – Suite 808
Raleigh, NC 27603
E-mail: inezsimmons@inezlaw.com

Richard Croutharmel
303-200 Blake Street – Suite 211
Raleigh, NC 27601
E-mail: rcroutharmel@earthlink.net