UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL NO. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTIONS

*Orallo v. Bank of the West*
C.D. CA Case No. 2:10-cv-2469
S.D. FL Case No. 1:10-cv-22931-JLK

*Dee v. Bank of the West*
N.D. CA Case No. 4:10-cv-02736
S.D. Fla Case No. 1:10-cv-22985-JLK

**OBJECTIONS TO SETTLEMENT AND AWARD OF ATTORNEYS' FEES BY CLASS MEMBERS JEANNIE LADD, ADRIAN M. SNOW & AUTUMN GRACE SNOW AND INCORPORATED MEMORANDUM & NOTICE OF INTENT TO BE HEARD AT FAIRNESS HEARING**

COMES NOW class members, Jeannie Ladd, (303) XXX-XXXX, Adrian M. Snow, (303) XXX-XXXX and Autumn Grace Snow, (303) XXX-XXXX by and through their attorneys[1], and Mr. Steve Miller will appear on behalf of Objectors at the fairness

---

[1] Home addresses redacted pursuant to ECF redaction rules. See postcard attachments. None of the objectors have previously objected to any class action settlements, except Jeannie Ladd who objected in Cellphone Termination Fee Cases, JCCP No. 4332, Alameda Co. Superior Court. The undersigned attorneys represent the objectors. The Objectors object to the information sought in paragraph 65 of the Settlement Agreement and Notice as it is irrelevant and for purposes of harassment only, and that the number of objections filed by counsel of record is irrelevant and prejudicial to Objectors in that it places an improper burden on Objectors' counsel potentially limiting the ability of the objectors to retain the attorney of their choice in violation of the Fifth

1

hearing, and hereby file their OBJECTIONS TO SETTLEMENT AND AWARD OF ATTORNEYS' FEES, objecting to the Stipulated Class Action Settlement and application for attorneys' fees by settlement counsel for the following reasons:

## I. The Release is over broad, permitting Defendant to continue to collect funds from class members that is based upon the improper posting of fees to class members accounts that were the stimulus for such litigation.

Although the class members waive any claims they have during the relevant claim period for the Defendant's improper banking practices (Stlmt Agrmt, p. 25, par. 92), they are still subject to collection actions for debts allegedly incurred that directly relate to the improper posting of amounts to class members' accounts which resulted in the increase of the debt, or the establishment of a debt with the Defendant (Stlmt Agrmt, p. 27, par. 95). Class Counsel, in their eagerness to get ahold of their fees, allowed the Defendants to recover past due amounts from class members – without regard to how such amounts were incurred. Here, Defendant reserves the right to "recover any past, present or future amounts that may be owed by Plaintiffs or by any Settlement Class Member on his/her accounts, loans or any other debts with Bank of the West, pursuant to the terms and conditions of such accounts, loans, or any other debts." (Stlmt Agrmt, p. 25, par. 92; p. 27, par. 95). In essence, those class member who were buried in debt due to the predatory practices relating to the posting of overdrafts may receive a small (quite small) check for a portion of the overdraft amount can still be held responsible for the balance of the amount owed to the

---

Amendment's guaranty of due process to those who may be deprived of a property right. Without waiving such objection, the objectors state that their counsel of record have filed objections previously.

Defendant.

Nothing prevents the Defendant from bringing an action against a class member to collect on a "debt" owed Defendant that is based in whole, or in part on the assessment of bogus bank fees associated with the creative posting methods employed by Defendant that led to this suit being filed in the first place.

In essence, Defendant is released from liability from its predatory posting practices, but class members still have to pay the fees that were assessed. This is a "hot button indicator" for this Court, according to the Pocket Guide, for which this Court should evaluate closely and with scrutiny. The Pocket Guide warns:

At times parties have attempted to release a damages remedy without making any correlative payment to class members . . . (Pocket Guide, p. 22, "Hot Button Indicators: 7. Release of liability without remedy.").

All claims for all class members are released-without regard to whether or not they receive payment, or the amount of payment. And yet the Defendant is permitted to initiate collection actions against these class members. This Court should deny the Settlement or require the parties to fully release each other, particularly as it relates to the overdrawn accounts of the class members.

## II.     The Settlement is unfair as the likelihood of unclaimed funds will result in the establishment of a Cy Pres Fund that is unnecessary and does not benefit the Class.

For reasons that are not disclosed to the Court, class counsel and the Defendant want the option of having funds diverted to cy pres relief. This is not disclosed on the website. Instead, the Settlement Agreement contemplates that any residual funds remaining after disbursements are made can either be made to the class members, to be

3

distributed pro rata, or the parties may choose to create a "residual cy pres program." (Stlmt Agrmt, p. 23, par. 87).

The only reason funds would be left over, is if the parties contemplate that many class members will not recover any payments- particularly those class members who are deemed to have "negative balances." This Court should refuse to entertain any cy pres relief, particularly since Class Counsel and Defendant have failed to provide any hint, or disclosure of what purpose the cy pres would benefit.  Under the Pocket Guide, this payment benefits Defendants only- and no one else. According to the Pocket Guide, "Cy pres relief must come as close as possible to the objective of the case and the interests of the class members. Question whether the class members might feasibly obtain a personal benefit." (Pocket Guide, p. 19, Hot Button Indicators- Cy Pres relief ("fluid recovery").

Class Counsel and Defendant fail to disclose what entity or non-profits such cy pres would benefit, and completely fail to articulate any objective.  Class Counsel seems to have forgotten that "cy pres" means "as near as possible" to the original purpose (Pocket Guide, p. 19).  The purpose of the litigation was never to create a cy pres to dump money into some unknown entity if the Defendant and Class Counsel are no longer feeling generous toward the class members by throwing additional money their way (Stlmt Agrmt, p. 23, par. 87).  Therefore, this Court should reject the proposed settlement because the cy pres component is unnecessary, but is utilized as an mechanism for Defendant to funnel funds to its own pet charities that likely have nothing to do with this litigation, and to disenfranchise the class members and limit their overall monetary recovery.

### III.     The Settlement is unfair as it does not provide a floor or a ceiling on what a class member will receive as payment.

Aside from Class Counsels' firm conviction that it will take 30% of the Settlement Fund as attorneys' fees, the class members have no additional security or any representations as to the actual cash value per class member or claim that the Settlement will provide. The website states that "The amount of such payments or account credits cannot be determined at this time. However, it will be based on the number of people in the Settlement Class and the amount of Additional Overdraft Fees . . ." ("What this Notice Contains-What does the Settlement provide?") Is class counsel certain of any amounts being paid? Of course, they know exactly how to calculate and extract their fee from this case." (Frequently Asked Questions: "How Much will my payment be?").

Given the rigid formula and methodology employed by the parties to get at a number to disburse to the class members, it is suspicious that neither class counsel or Defendant has any idea, or even an estimate of what the class members will receive (Stlmt Agrmt, p. 19-22). With literally millions of class members, it is no secret that the class members will likely get mere pennies on the dollar as compensation. Clearly, Class Counsel is hedging its bets in terms of what will ultimately be paid to the class members, and the amount anticipated is so abysmally low, that Class Counsel is apparently embarrassed to even discuss the subject, despite going to great lengths to agree upon the methodology and mathematical formula to utilize to reach such "magic number. Because the parties cannot even articulate a dollar amount that a class member would receive, the proposed settlement should be denied until such time as the parties can demonstrate what award, if any would be provided to the class members.

## IV. The Settlement is unfair because it allows the Defendant to engage in the overdraft practices that were the basis of this litigation.

What about injunctive relief? How about the Defendant no longer engaging in the overdraft practices that led to the litigation? No. Instead, ". . . effective July 1, 2011, Bank of the West modified some of its debit card policies and practices, including its posting order, so that debit and ATM transactions are processed in chronological order "when date and time information is available" or in low-to-high order (when date and time information is not available." (Stlmt Agrmt, p. 2, par. 7). Not only is Defendant not obligated to do anything, it is free to engage in the same policies and practices that led to this litigation. No Court order means no oversight. No oversight is back to business as usual for the Defendant.

The Pocket Guide warns this Court that it should "Question whether injunctive relief will truly benefit class members in the case at hand."(Pocket Guide, p. 21., 2010 ed.). But Defendant has not agreed to stop the complained of practices. Instead, Class Members receive some unknown sum of money that class counsel cannot even divulge due to the small size that will be awarded to the class members. This is a "small award" that the Pocket Guide would have this Court avoid considering, with instead the affirmative reliance of meaningful injunctive relief:

In many cases, by putting an end to illegal practices, an injunction will benefit more class members than a small award. It will also avoid clogging the judicial system with the administration of small awards to thousand of class members. Pocket Guide, p. 21-22, 2010 ed.

Would it not be more reassuring and satisfying for the class members that are still bank customers to know that the Defendant will no longer engage in the behavior that led to

6

the filing of these class actions? Of course it would be. Most class members would trade the small award of what is likely to be a few dollars for the reassurance that this outrageous banking practice is extinguished. (Mtn for Fees, p. 1, Doc # 3010).

### V. The Settlement is unfair as it provides for an attorney's fee award without providing Objectors' the opportunity to review such fee application, and the fee sought is excessive in relation to the benefit conveyed upon the class members.

Recognizing that some class members get pennies on the Dollar while the rest get nothing, Class Counsel is certain of its fee request- 30% of the 18 Million Dollar "Settlement Fund." (Stlmt Agrmt, p. 27, par. 96). Confident in their demand for compensation that well exceeds the work performed, and the value conferred on the class, Class Counsel has failed to file a fee application with the Court in the MDL case. Failure to provide Objectors the opportunity to review the fee application violates due process. E.g., *In re Mercury Interactive Corporation Securities Litigation*, 618 F.3d 988 (9th Cir. 2010). Objectors reserve the right to supplement their Objection as it pertains to the fee application of Class Counsel that may be filed in the future.

Moreover, Class counsel's fee request is grossly excessive in comparison to the value of the settlement achieved. Given that Class Counsel has failed to disclose how many class members will not receive any compensation should cause this Court to pause and require Class Counsel to produce its claims data to prove just how much of a benefit was provided to the class.

Further, Class Counsel has failed to produce their time records and submit same before this Court, in violation of this Court's Local Rule 7.3, which establishes the standard for fee applications, requiring each application to not only list the hours claimed

for each timekeeper, but " a description of the tasks done during those hours;" and to "describe and document with invoices all incurred and claimed fees and nontaxable expenses." Those items are absent from Class Counsels' application- and with good reason. Because the time invested in this case can never justify the 6 Million Dollars sought by Class Counsel.

## VI.   The Settlement is unfair because the attorneys' fees demanded in this case are excessive when compared to the benefit received by the class members.

The Pocket Guide advises the court that a "hot button indicator" that a settlement is unfair exists when there is "an imbalance between the cash value of the settlement to the class as a whole and the agreed amount of attorneys fees is a prime indicator of collusion by settling attorneys." (Pocket Guide "Reverse Auctions" and the like" 2010 ed. p. 20. Collusion:). This case appears to be nothing more than one of collusion between Class Counsel and Defendant to pay an exorbitant fee in exchange for leaving class members with nothing more than the promise of some remuneration, meager that it will be while protecting the Defendants from suit and damages, permitting the Defendant to collect on its "debt" incurred by the predatory banking practices.

The Pocket Guide warns judges to be vigilant regarding Class Counsel who seek fees for what is nothing more than settlement of the case at hand, evidencing collusion or a "Reverse Auction" among the parties:

> A typical element of a reverse auction is a promise to pay attorneys more than a reasonable value for the time they invested in negotiating the settlement. Generally, the overpayment of the attorneys originates in an underpayment of what the class should receive based on an objective assessment of the merits of the class claims. (Pocket Guide, p. 21).

Conveniently, Class Counsel glosses over the reality that the bulk of the class members

have a "negative balance" and will receive no compensation under the proposed Settlement. The Pocket Guide cautions the judiciary to be wary of settlement where there is an "underpayment" of what the class should receive. Here, the only certain fact is that class counsel is seeking thirty (30) percent of the Settlement Fund. And class counsel cannot articulate just what dollar amount, if any, the class members will receive – at minimum. Why is that? Quite simply, it's because what is paid to the class members is irrelevant and insignificant in the bigger scheme of the realization that the Bank is allowing Class Counsels' repeated trips to the Defendant's bank vault so that they may continue to stack their treasure at the expense of the class members they represent.

**VII.    The Settlement is unfair in that Defendants' have agreed to not oppose the attorneys' fees requested in this settlement.** Without question, Class Counsel has made the payment of attorney's fees the cornerstone of its Settlement that they constructed. Defendant simply agrees not to oppose a request for attorneys fees up to 30% (Stlmt Agrmt, p. 27, par. 96). Furthermore, regardless of the expenses presented, the Defendant agrees to sit idle and permit such reimbursement. This "Clear Sailing Provision" or "Red Carpet Treatment" is further evidence of the unfairness of the proposed settlement, that does nothing more than guarantee that class counsel receives 30% of the 18 Million Dollar "Settlement Fund" while the class gets a convoluted formula designed to decrease the dollar or percentage they each receive, while the bulk of the class members, existing at a negative balance receive nothing. Meanwhile, everyone has released their claims- except the Bank- which has the right to pursue the class members to collect such "debts." This Court should refuse to entertain such attorney's fees request under these circumstances.

## VIII. The Settlement is unfair as the requested attorneys' fees are not based upon any realistic calculation of the value of the settlement provided to the class members.

Class Counsel has no idea what amount of money class members will receive as payment, as discussed above. Therefore, this Court should refrain from entertaining, or considering any application for attorneys' fees until this Court has reviewed the claims data, showing the Court what exactly each claimant is receiving. The Pocket Guide also warns the judiciary to be leery of settlements that are presented without corresponding claims data, and advises that the recovery of class counsel should be based upon a percentage of the claims actually made:

Your appraisal of the settlement should focus on the value actually distributed to the class-based on the number and percentage of class members who have filed a claim. . . Because there is no clear standard for predicting class response rates, consider calculating any attorney fee award as a percentage of the amount of the settlement fund that has already been distributed to claimants-even if that means deferring final determination of all or part of the fee award until the claims process is complete. (Pocket Guide, p. 16, 2010 ed).

In essence, this Court should not rubber stamp a fee application submitted by class counsel, but instead force class counsel to disclose how many class members will actually benefit, and the amount of money those class members will receive- and then determine the appropriateness of the fee application. Further evidence that the value of the settlement is disproportionate to the attorneys' fees sought, is the sweeping, self-serving statement that the parties tout that "Bank of the West has agreed to establish a Settlement Fund of $18 million from which identifiable Settlement Class Members may receive payments or account credits." ("What this Notice Contains-What does the Settlement Provide?"). This sounds like the used car salesman who offers to sell you a car at one

price, but then when you prepare to do the deal the price has changed again, and Class Counsel cannot accurately inform the Class Members as to what they will actually receive.

The reality is the Settlement Fund is nothing more that the funds left over after class counsel takes its 30% fee, and pays its named class representatives $5,000 each, and has their expenses paid. ("How will the lawyers be paid?"). Approximately 6 Million Dollars is deducted, or skimmed off the top to pay the attorneys. The actual value of the settlement fund, much like the value of the used car that was sold on the dealer's lot- is actually worth a lot less than you paid for it. And the attorneys representing the class compromised their legal claims for a "shot" at an unknown amount of payment, from a vastly underfunded settlement fund. But class counsel will definitely get paid. However, the Class Members are drawing from a 12 Million Dollar fund- after expenses and incentive awards are paid.

No injunctive relief. Millions of class members who will receive nothing due to a "negative balance". And a settlement that cannot be boiled down to what amount should be paid to the actual class members. It is proper for courts to review the actual claims made and the amount paid before calculating an attorney's fee award. *Schwartz v. Dallas Cowboys Football Club*, Ltd., 157 F. Supp. 2d 561 (E.D. Pa. 2001); accord, *Sylvester v. CIGNA Corp.*, 369 F.Supp. 2d 34, 50-53 (D. Me. 2005). Not surprisingly, the claims administrator is not under any obligation to provide this Court with any claims data. This is suspect according to the Pocket Guide, as the best manner of determining the appropriateness of the attorneys' fee sought is to review the actual relief provided to the class members. And since at this stage of the proceedings that actual relief provided is

unknown, this Court should withhold its review of the attorneys' fee application until the claims data is provided to this Court.

WHEREFORE, Objectors hereby pray that this Court deny the proposed Settlement stipulated into between the parties and enter the following additional relief:

(1) An Order overruling Class Counsels' application for attorney's fees of 30% of 18 Million Dollars, and imposing an order that Class Counsel will receive a fee that reflects the value of the settlement provided to the class members;

(2) In the alternative, an Order compelling Class Counsel to submit their time records to this Court to determine what hours of work performed are compensable, as time devoted to settlement is not factored into the lodestar or the percentage of the fund method;

(3) An Order withholding the calculation of the attorney's fees until this Court makes a determination of the number of claims actually submitted and paid, and the value of each claim;

(4) An Order denying the Cy pres relief, or in the alternative, Order that such funds be directed to a non- profit that has the purpose of educating and advising consumers on improper banking practices;

(5) An Order requiring that the releases in this case be mutual- in that the Defendant is not permitted to undertake any collection efforts or file suit based upon any delinquent accounts that were the result of its overdraft practices;

(6) Any further relief necessary within the premises based upon the objections set forth above and herein.

**OBJECTOR SIGNATURES ARE ATTACHED**

Dated: November 6, 2012                     Respectfully submitted,

s/Steve A. Miller
Steve A. Miller (FL Bar No. 992224)
Steve A. Miller, PC
1625 Larimer Street, No. 2905
Denver, CO 80202
Ph# 303-892-9933
Fax: 303-892-8925
Email: sampc01@gmail.com
Attorney for Objectors

Jonathan E. Fortman (40319MO)
Law Office of Jonathan E. Fortman, LLC
10 Strecker Rd., Suite 1150
Ellisville, MO 63011
Ph# (314) 522-2312
Fax: (314) 524-1519
Email: jef@fortmanlaw.com
Attorney for Objectors

John C. Kress (53396MO)
The Kress Law Firm, LLC
4247 S. Grand Blvd
St. Louis, MO 63111
Ph.#: (314) 631-3883
Fax: (314) 332-1534
Email: jckress@thekresslawfirm.com
Attorney for Objectors

J. Scott Kessinger (48221MO)
3-2600 Kaumualii Highway
Suite 1300, #325
Lihue, HI 96746
Phone: 808.635.2924
Fax: 314.754.8370
jscottkessinger@gmail.com
Attorney for Objectors

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November, 2012, I have filed and served via ECF Filing using the USDC SD FL ECF Electronic Filing System a true and correct copy of the foregoing OBJECTIONS TO SETTLEMENT AND AWARD OF ATTORNEYS' FEES BY CLASS MEMBERS JEANNIE LADD, ADRIAN M. SNOW & AUTUMN GRACE SNOW AND INCORPORATED MEMORANDUM & NOTICE OF INTENT TO BE HEARD AT FAIRNESS HEARING and in addition have faxed a copy to the following:

Checking Account Overdraft Litigation
P.O. Box 2812
c/o Rust Consulting, Inc.
Fairbault, MN  55021-8617

Fax Nos:
507-333-4330
612-359-2050

                                                                   s/Steve A. Miller
                                                                    Steve A. Miller

Case 1:09-md-02036-JLK   Document 3032   Entered on FLSD Docket 11/06/2012   Page 14 of 20

I, Jeannie Ladd, am a class member of this proposed settlement having received the attached postcard notice in the mail addressed to me. I authorize the filing of this objection for the reasons set forth within the objection.

*Jeannie Ladd*

| | | |
|---|---|---|
| **If You Paid Overdraft Fees to Bank of the West, You May Be Eligible for a Payment from a Class Action Settlement.** | SETTLEMENT ADMINISTRATOR<br>C/O RUST CONSULTING, INC.<br>P.O. BOX 2812<br>FARIBAULT, MN 55021-8617 | PRESORTED<br>FIRST CLASS<br>MAIL<br>U.S. POSTAGE<br>PAID<br>Rust Consulting, Inc.  |
| An $18 million Settlement has been reached in a class action lawsuit about the order in which Bank of the West posted Debit Card Transactions to customer Accounts. Bank of the West maintains there was nothing wrong with the posting process used. | **IMPORTANT LEGAL NOTICE**<br><br>*0 0 0 6 8 3 3 3 5 0*  | |
| For more information: www.BankoftheWestOverdraftSettlement.com or 1-800-383-5319 | T83/P125 AUTO**SCH 5-DIGIT 80001<br>JEANNIE LADD<br><br>ARVADA CO 80004-5446 | |
| *Do not contact Bank of the West or the Court for information.* | | |

**Who's Included?** You are included in the Settlement Class if you had one or more Bank of the West consumer checking accounts that you could access with a Debit Card and, at any time between June 1, 2005 and July 1, 2011, incurred an Overdraft Fee as a result of Bank of the West's practice of posting Debit Card Transactions from highest to lowest dollar amount. In order to have incurred an Overdraft Fee as a result of this practice, you must have had two or more Overdraft Fees assessed on one or more days during that time period. If this happened to you, you may be in the Settlement Class. If it did not happen to you, you are not a member of the Settlement Class. Further, you are not eligible for a payment under the Settlement if your Account was closed with a negative balance and the amount of the benefits that would otherwise be provided for in the Settlement would be insufficient to make the balance in that Account positive. You may contact the Settlement Administrator if you have any questions as to whether you are in the Settlement Class.

**What Are the Settlement Terms?** Bank of the West has agreed to establish a Settlement Fund of $18 million from which identifiable Settlement Class Members will receive payments or account credits. The amount of such individual payments or account credits cannot be determined at this time. However, it will be based on the number of people in the Settlement Class and the amount of Additional Overdraft Fees each Settlement Class Member paid as a result of Bank of the West's posting order practice. Bank of the West will separately pay for settlement administration and related costs; such amounts will not come out of the $18 million Settlement Fund.

**How to Receive a Payment.** If you are included in the Settlement Class and entitled to receive a cash benefit, you do not have to do anything to receive a payment or account credit. If the Court approves the Settlement and it becomes final and effective, you will automatically receive a payment or account credit.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class. To exclude yourself from the Settlement Class, you must send a letter that includes the following: your name, address and telephone number, a statement that you want to be excluded from the Bank of the West Settlement in In Re: Checking Account Overdraft Litigation, 1:09-MD-02036-JLK, and your signature. You must mail your exclusion request, postmarked no later than November 6, 2012, to: Checking Account Overdraft Litigation Exclusions; P.O. Box 2812; Faribault, MN, 55021-8617. If you do not exclude yourself, you will release your overdraft-fee-related claims against Bank of the West and will not be able to sue Bank of the West for any claim relating to the lawsuit. If you stay in the Settlement Class, you may object to the Settlement by November 6, 2012. The Court will hold a hearing on December 6, 2012 to consider whether to approve the Settlement and a request for attorneys' fees of up to 30 percent of the Settlement Fund. You may file an objection to the Settlement and/or fee request, but you must meet certain requirements (see other side for website/phone number to call). You may appear at the hearing, but you are not required to attend. You may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

I, Adrian M. Snow, am a class member of this proposed settlement having received the attached postcard notices in the mail addressed to me. I authorize the filing of this objection for the reasons set forth within the objection.

*[signature]*

**If You Paid Overdraft Fees to Bank of the West, You May Be Eligible for a Payment from a Class Action Settlement.**

An $18 million Settlement has been reached in a class action lawsuit about the order in which Bank of the West posted Debit Card Transactions to customer Accounts. Bank of the West maintains there was nothing wrong with the posting process used.

For more information: www.BankoftheWestOverdraftSettlement.com or 1-800-383-5319

Do not contact Bank of the West or the Court for information.

SETTLEMENT ADMINISTRATOR
C/O RUST CONSULTING, INC.
P.O. BOX 2812
FARIBAULT, MN 55021-8617

**IMPORTANT LEGAL NOTICE**

\* 0 0 0 4 4 6 6 1 6 1 \*


T90/P137 AUTO\*\*SCH 5-DIGIT 80020
ADRIAN M SNOW

BROOMFIELD CO 80020-2317

PRESORTED
FIRST CLASS
MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

---

**If You Paid Overdraft Fees to Bank of the West, You May Be Eligible for a Payment from a Class Action Settlement.**

An $18 million Settlement has been reached in a class action lawsuit about the order in which Bank of the West posted Debit Card Transactions to customer Accounts. Bank of the West maintains there was nothing wrong with the posting process used.

For more information: www.BankoftheWestOverdraftSettlement.com or 1-800-383-5319

Do not contact Bank of the West or the Court for information.

SETTLEMENT ADMINISTRATOR
C/O RUST CONSULTING, INC.
P.O. BOX 2812
FARIBAULT, MN 55021-8617

**IMPORTANT LEGAL NOTICE**

\* 0 0 0 6 9 0 6 5 6 6 \*


T90/P137 AUTO\*\*SCH 5-DIGIT 80020
ADRIAN M SNOW
AUTUMN GRACE SNOW

BROOMFIELD CO 80020-2317

PRESORTED
FIRST CLASS
MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

I, Autumn Grace Snow, am a class member of this proposed settlement having received the attached postcard notice in the mail addressed to me. I authorize the filing of this objection for the reasons set forth within the objection.

*/s/ Autumn Snow*

| | | |
|---|---|---|
| **If You Paid Overdraft Fees to Bank of the West, You May Be Eligible for a Payment from a Class Action Settlement.** | SETTLEMENT ADMINISTRATOR<br>C/O RUST CONSULTING, INC.<br>P.O. BOX 2812<br>FARIBAULT, MN 55021-8617 | PRESORTED<br>FIRST CLASS<br>MAIL<br>U.S. POSTAGE<br>PAID<br>Rust Consulting, Inc. |
| An $18 million Settlement has been reached in a class action lawsuit about the order in which Bank of the West posted Debit Card Transactions to customer Accounts. Bank of the West maintains there was nothing wrong with the posting process used. | **IMPORTANT LEGAL NOTICE**<br><br><br>* 0 0 0 6 9 0 6 5 6 6 * | |
| For more information: www.BankoftheWestOverdraftSettlement.com or 1-800-383-5319 | T90/P137 AUTO**SCH 5-DIGIT 80020<br>ADRIAN M SNOW<br>AUTUMN GRACE SNOW | |
| Do not contact Bank of the West or the Court for information. | BROOMFIELD CO 80020-2317 | |

**Who's Included?** You are included in the Settlement Class if you had one or more Bank of the West consumer checking accounts that you could access with a Debit Card and, at any time between June 1, 2005 and July 1, 2011, incurred an Overdraft Fee as a result of Bank of the West's practice of posting Debit Card Transactions from highest to lowest dollar amount. In order to have incurred an Overdraft Fee as a result of this practice, you must have had two or more Overdraft Fees assessed on one or more days during that time period. If this happened to you, you may be in the Settlement Class. If it did not happen to you, you are not a member of the Settlement Class. Further, you are not eligible for a payment under the Settlement if your Account was closed with a negative balance and the amount of the benefits that would otherwise be provided for in the Settlement would be insufficient to make the balance in that Account positive. You may contact the Settlement Administrator if you have any questions as to whether you are in the Settlement Class.

**What Are the Settlement Terms?** Bank of the West has agreed to establish a Settlement Fund of $18 million from which identifiable Settlement Class Members will receive payments or account credits. The amount of such individual payments or account credits cannot be determined at this time. However, it will be based on the number of people in the Settlement Class and the amount of Additional Overdraft Fees each Settlement Class Member paid as a result of Bank of the West's posting order practice. Bank of the West will separately pay for settlement administration and related costs; such amounts will not come out of the $18 million Settlement Fund.

**How to Receive a Payment.** If you are included in the Settlement Class and entitled to receive a cash benefit, you do not have to do anything to receive a payment or account credit. If the Court approves the Settlement and it becomes final and effective, you will automatically receive a payment or account credit.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class. To exclude yourself from the Settlement Class, you must send a letter that includes the following: your name, address and telephone number, a statement that you want to be excluded from the Bank of the West Settlement in In Re: Checking Account Overdraft Litigation, 1:09-MD-02036-JLK, and your signature. You must mail your exclusion request, postmarked no later than November 6, 2012, to: Checking Account Overdraft Litigation Exclusions; P.O. Box 2812; Faribault, MN, 55021-8617. If you do not exclude yourself, you will release your overdraft-fee-related claims against Bank of the West and will not be able to sue Bank of the West for any claim relating to the lawsuit. If you stay in the Settlement Class, you may object to the Settlement by November 6, 2012. The Court will hold a hearing on December 6, 2012 to consider whether to approve the Settlement and a request for attorneys' fees of up to 30 percent of the Settlement Fund. You may file an objection to the Settlement and/or fee request, but you must meet certain requirements (see other side for website/phone number to call). You may appear at the hearing, but you are not required to attend. You may hire your own attorney, at your own expense, to appear or speak for you at the hearing.