# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT )
OVERDRAFT LITIGATION )
)
MDL No. 2036 )
*Fourth Tranche* )
)
_____)
)
THIS DOCUMENT RELATES TO: )
)
*Shane Swift v. BancorpSouth, Inc.,*[1] )
S.D. Fla. Case No. 1:10-cv-23872-JLK )
_____)

## PROFFER OF TESTIMONY FOR ATTORNEY WILLIAM J. HOLLEY, II

Pursuant to the paragraph 4 of the Joint Stipulation and Proposed Order Regarding Disclosures in Advance of Hearing on Plaintiff's Motion for Sanctions, attorney William J. Holley, II makes the following proffer of testimony that he may present if called as a witness at the hearing:

1.

I am a magna cum laude graduate of Duke University and a graduate of Vanderbilt Law School where I served as Editor-in-Chief of the Vanderbilt Law Review. I have been admitted to practice law by the State of Georgia for more than 27 years. During that time, I have served as a federal prosecutor, a judge advocate in the United States Air Force, a criminal defense attorney, a

---

[1] BancorpSouth, Inc. is not a proper defendant in this matter. Counsel for Swift and BancorpSouth Bank discussed the proper BancorpSouth entity to name in this matter in 2010, and Plaintiff properly identified the defendant herein as BancorpSouth Bank in his Second Amended Complaint (DE # 994). Plaintiff does not appear to seek sanctions against BancorpSouth, Inc.

civil defense attorney, and a civil plaintiff's attorney. I have been admitted to every court in Georgia including the Georgia Supreme Court, numerous federal district and circuit courts throughout the United States, the United States Court of Military Appeals, and the United States Supreme Court. I have an AV rating by Martindale Hubbell and have been recognized for my complex commercial litigation practice by *Chambers USA Leading American Business Lawyers, Best Lawyers in America, SuperLawyers,* and *Georgia Trend.* I have never been denied admission to any court, and have never been the subject of a disciplinary action, complaint, or inquiry of any kind whatsoever. I have lectured and taught on several topics including legal ethics.

2.

In the summer of 2009 I was retained as lead counsel for two banks, Branch Banking and Trust Company ("BB&T") and Regions Bank ("Regions"), who were defendants in putative class actions that eventually were transferred into MDL 2036. At the time the first case against BB&T was transferred to this Court, I reviewed the Court's local rules and Pretrial Order No. 1 (DE # 60).

3.

In May 2010, my partner Eric Taylor was retained as lead counsel to defend BancorpSouth Bank ("BancorpSouth") in this action. Because my role for BB&T and Regions kept me very occupied, I had no participation in discovery in this action and no contact with Plaintiff's counsel pertaining to this action until March 27, 2012 when I participated in a call with Eric Taylor and Jeff Ostrow that is described in my declaration filed in this action on April 2, 2012.

4.

In or about late Fall 2011, Mr. Taylor asked me to become involved in settlement negotiations with counsel for Arkansas residents Melvin L. Thomas, III and Billy D. Lawson. I understood that Mr. Lawson was the plaintiff in a prior state court action that was dismissed prior to BancorpSouth's response, and after the dismissal counsel for Mr. Lawson had settlement discussions with Mr. Taylor that began as discussions limited to settling only Mr. Lawson's claims but progressed in the Fall of 2011 to a potential resolution of class claims. I first spoke with Scott Poynter, who I understood to be Mr. Lawson's primary counsel, in November 2011 and learned that we shared mutual contacts from our service as JAG officers in the United States Air Force. I first met Mr. Poynter at a mediation conducted by mediator Frank Hamlin in Little Rock, Arkansas on November 29, 2011. The initial mediation never progressed to exchange of monetary offers and demands so, when it concluded, I believed that a settlement might be possible but was not likely.

5.

From my work representing BB&T and Regions I was aware that banks who were defendants in MDL 2036 had reached settlements both inside of and outside of MDL 2036. I knew that Fifth Third Bank's settlement was finally approved by Federal District Judge Robert Dow in the Northern District of Illinois despite the objections of the MDL Plaintiffs' Executive Committee ("PEC") and that National City Bank's settlement was finally approved by Federal District Judge John Bates over the objections of the PEC. I also knew that Webster Bank's settlement was approved in the United States District Court for the District of Connecticut. From reviewing filings related to these settlements, I knew that there were several methods for

calculating damages from overdraft charges allegedly caused by "resequencing" of transactions during the posting process.

6.

I participated in a second mediation with counsel for Mr. Lawson and Mr. Thomas on January 16, 2012. Since the time of the first mediation, I understood that counsel for Mr. Thomas and Mr. Lawson had engaged the services of the expert relied upon by Judge Dow in approving the Fifth Third Settlement, that the expert had examined certain data provided by BancorpSouth, and that the expert had concluded that the proper "resequencing" damages figure was in the range of $17 million. I understood that the expert's analysis was relied upon by counsel for Thomas and Lawson as the parties' counsel exchanged settlement offers and demands on January 16.

7.

In anticipation that the parties might exchange monetary settlement offers and demands at the mediation on Monday, January 16, 2012, I tried on Friday January 13, 2012, to gain an understanding of what the costs of notice and settlement administration might be. I knew that Epiq Systems had been the settlement administrator for the Fifth Third case and several other overdraft class action settlements so I contacted representatives of Epiq on January 13, 2012. This was the first contact between counsel for BancorpSouth and Epiq Systems.

8.

The January 16, 2012 mediation was conducted by mediator Chris Gromlicker in Little Rock Arkansas. After several exchanges of demands, offers, counter-demands and counter-

4

offers, the parties reached agreement on settlement compensation that included $1.75 million in cash (approximately 10% of the total damage figure calculated by opposing counsels' expert) and practice changes estimated at a value of $11.25 million. At the time I believed the compensation to be on par with or more customer-favorable than the Fifth Third, National City, and Bank of America settlements. The January 16, 2012 mediation concluded with an agreement in principle on compensation but with numerous other aspects of the proposed settlement remaining to be negotiated. I believed that reaching a final settlement agreement was more likely than not but still subject to significant negotiation hurdles.

9.

For much of the time in the weeks following the January 16, 2012 mediation, I was tied up in preparation for and the jury trial of a dispute for which I represented another bank. My primary connection with the ongoing settlement negotiations during this time was facilitating the retention of Epiq Systems and Hilsoft Notifications to coordinate notice and settlement administration in the event that final settlement was reached.

10.

From my work for Regions and BB&T, I was very aware of the JPML orders entered on October 11, 2011. After reading these orders and discussing them with other counsel representing banks in the MDL, I concluded that, after October 11, 2011, counsel were not to notify the JPML of additional overdraft cases and that such cases would not be transferred to MDL 2036. My conclusion was reinforced by observing the JPML vacate conditional transfer orders on and after October 11, 2011. Thus, when Mr. Thomas and Mr. Lawson filed their

5

complaint on February 28, 2012, I did not believe that it was subject to transfer to MDL 2036 and I knew that a JPML "tag-along" notice was not appropriate.

11.

I was not directly involved in the finalization of the settlement agreement between BancorpSouth and Messrs. Thomas and Lawson but I was aware that BancorpSouth presented to Federal District Judge Dawson briefing and materials that fully disclosed BancorpSouth's participation in MDL 2036, the scheduling orders entered in this case and the class certification briefing in this case.

12.

I was present at the hearing conducted by Judge Dawson on March 26, 2012 to address the unopposed motion to preliminarily approve the *Thomas/Lawson* settlement and certify a settlement class. As the hearing was publicly requested and disclosed on the federal court docket system (PACER), I did not know who would appear at the hearing other than counsel for BancorpSouth and counsel for Messrs. Thomas and Lawson. Based on the PEC's opposition to the Fifth Third and National City settlements, I expected that the PEC would file similar objections and that those objections would be resolved by Judge Dawson in the ordinary course. Just prior to the hearing Judge Dawson welcomed all counsel present in his chambers and, among other things, explained that he had fully reviewed all of the voluminous materials presented to him regarding the proposed settlement. During the hearing I shared with Judge Dawson my conclusion that the JPML had ceased transferring cases to MDL 2036 and my opinion that the case would remain in the Western District of Arkansas. Neither Mr. Taylor nor I withheld any information regarding this case or MDL 2036 when making representations to

Judge Dawson. I believe that every statement made by us to Judge Dawson was true and accurate to the best of my knowledge at the time.

13.

Mr. Taylor and I returned from the March 26, 2012 Arkansas hearing very late. At Mr. Taylor's request, on March 27, 2012 I participated in a conversation with Mr. Ostrow, an attorney I believed to represent Plaintiff Swift but with whom I had never before spoken. My recollection of that call is set forth in the declaration submitted to the Court on April 2, 2012 (DE # 2605-2).

14.

The settlement agreement between BancorpSouth and Messrs. Thomas and Lawson and the preliminary order entered by Judge Dawson charged plaintiffs' counsel with the responsibility for ensuring that timely notice was made. While I reviewed certain notice documents for accuracy, I abided by Judge Dawson's order and deferred to counsel for Mr. Lawson and Mr. Thomas on other matters related to notice, including but not limited to timing of notice.

15.

For those matters in which I participated regarding the *Thomas/Lawson* settlement, I did not take any action with the intention of disrespecting this Court, this Court's jurisdiction or Plaintiffs' counsel. Furthermore, I am unaware of any action taken by any attorney representing BancorpSouth that taken in bad faith or in an attempt to disrespect this Court or this Court's jurisdiction or Plaintiffs' counsel.

This 5th day of October, 2012

Respectfully submitted,

William J. Holley, II
Georgia Bar No. 362310

2521139_1