UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-md-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036



**RENDEE BULLARD, NIKKI HURST GIBSON & CLAIRE BARNETT GIBSONS'
OBJECTION TO THE JP MORGAN CHASE SETTLEMENT**

a.  the name of the Action;

  In Re: Checking Account Overdraft Litigation, Case No. 09-2036-JLK in the Southern District of Florida.

b.  the objector's full name, address and telephone number;

  Rendee Kay Bullard
  3601 Grapevine Mills Pkwy., #737
  Grapevine, TX 76051
  214-649-0455

  Nikki Hurst Gibson
  6322 Desco Drive
  Dallas, Texas 75225
  214-890-7914

  Claire Barnett Gibson
  6322 Desco Drive
  Dallas, Texas 75225
  214-890-7914

c.  an explanation of the basis upon which the objector claims to be a Settlement Class Member;

  During the class period, we had consumer checking accounts with JP Morgan Chase; These accounts could be accessed with a JP Morgan Chase debit card. We had overdraft fees charged to our account.

Page 1

d.     all grounds for the objection, accompanied by any legal support for the objection known to the objector or his counsel:.

    Response: All of the grounds are in the later part of this document.

e.     the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders elated to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case;

    Response: None.

f. the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

    Response: None.

g.     the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the counsel or the firm has made such objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;

    Response: Not applicable.

h.     any and all agreements that relate to the objection or the process of objecting — whether written or verbal — between objector or objector's counsel and any other person or entity;

    Response: None.

i.     the identity of all counsel representing the objector who will appear at the Final Approval Hearing;

    Response: None.

j.     a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection:

    Response: None.

k.     a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

Response: No.

We respectfully contend that Class Counsel's fee request for 30% of the monetary and non-monetary relief in this settlement is excessive. At the fee determination stage, "the district judge must protect the class's interest by acting as a fiduciary for the class." *In re Rite Aid Corp. Securities Litigation,* 396 F.3d 294, 307 (3d Cir. 2005). There is a much greater conflict of interest between the members of the class and the class lawyers than there is between an individual client and his lawyer. The class members are interested in relief for the class but the lawyers are interested in their fees, and the class members' stakes in the litigation are too small to motivate them to supervise the lawyers in an effort to make sure that the lawyers will act in their best interests.

In 2009, Plaintiffs sued on behalf of themselves and all others similarly situated who incurred Overdraft Fees as a result of J.P. Morgan Chase Bank, N.A.'s practice of sequencing all Debit Card Transactions from highest-to-lowest dollar amount. Plaintiffs alleged that Chase systemically sequenced Settlement Class Members' Debit Card transactions in highest-to-lowest order by dollar amount to maximize Chase's Overdraft Fee revenues. According to Plaintiffs, Chase's practices violated the Bank's contractual and good faith duties, were substantively and procedurally unconscionable, violated state unfair trade practices laws, and resulted in conversion and unjust enrichment.

On March 29, 2010 Chase discontinued the High-to-Low Posting practice challenged in the Action. Also by that date, Chase eliminated Overdraft Fees if a customer's account was $5.00

or less overdrawn as of the close of a business days transaction processing (referred to as a balance cushion') and reduced the maximum number of Overdraft Fees per day from six to three.

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure. The Settlement Class is defined as:

> All holders or Chase Account who, from January 1, 2003, through and including March 29, 2010. incurred one or more Overdraft Fees as a result of High-to-Low Posting. Excluded from the Class are all current Chase employees, officers and directors, and the judge presiding over this Action.

The settlement fund is 110 million dollars. Chase also agreed to prospective relief; namely for not less than two (2) years, Chase will not charge Overdraft Fees with respect to any individual Debit Card Transactions whose transaction amount is $5.00 or less for Settlement Class Members who are Chase Account holders as of Preliminary Approval. Chase Counsel claims this new policy will result in the savings of approximately $52 million in Overdraft Fees for Settlement Class Members over the minimum two-year period covered by the Settlement.

Pursuant to the Agreement, Chase will not oppose Class Counsel's request for attorneys fees of up to thirty percent (30%) of the value of the Settlement, plus reimbursement of litigation costs and expenses. Based on the facts here, including the estimate of the $52 million in future savings to the Settlement Class, Class Counsel contends that an award of thirty percent (30%) of the value of the $162 million Settlement is appropriate. Thus, Class Counsel are seeking a fee of 48.6 million dollars which is 44.18% of the common fund.

To justify this fee, Class Counsel point out that Chase ultimately produced over 800,000 pages of internal bank documents in discovery. Class Counsel deposed twelve current and former Chase employees and officers, Class Counsel also prepared responses to Chase's interrogatories

and requests for production of documents directed to the Plaintiffs. Class Counsel also researched and prepared their motion for class certification and analyzed Chase's opposition.

In the Fourth version of the Manual for Complex Litigation, published in 2004, the Federal Judicial Center states that a fixed percentage award may yield a windfall fee in large fund cases:

> Accordingly, in "mega-cases" in which large settlements or awards serve as the basis for calculating a percentage, courts have often found considerably lower percentage of recovery to be appropriate. One court's survey of fee awards in class actions with recoveries exceeding $100 million found fee percentages ranging from 4.1% to 17.92%.[1]

In *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43 (2d Cir. 2000) the Court of Appeals held that the District court did not abuse its discretion in awarding a fee of approximately 4% of the recovery. *Id.* at 45. The Court noted its "nagging suspicion that attorneys in these cases are routinely overcompensated for such things as contingency risk." *Id.* at 57. The Court of Appeals noted that the point is that plaintiffs in common fund cases typically are not fully informed. Nor are they able to negotiate collectively, or at arm's length.

The Court of Appeals provided:

> We appreciate that that fixing a reasonable fee" becomes even more difficult because the adversary system is typically diluted-indeed, suspended-during fee proceedings. Defendants, once the settlement amount has been agreed to, have little interest in how it is distributed and thus no incentive to oppose the fee. See *Continental Illinois*, 962 F.2d at 572. Indeed, the same dynamic creates incentives for collusion-the temptation for the lawyers to agree to a less than optimal settlement "in exchange for red-carpet treatment on fees." *Weinberger v. Great N Nekoosa Corp*, 925 F.2d 518E 524 (1st Cir.1991) (citing John C. Coffee, Jr. *The Unfaithful Champion: The Plaintiff as Monitor in Shareholder Litigation*, 48 Law & Contemp. Probs. 5, 26-33 (1985)). And the

---

[1] FEDERAL JUDICIAL CETNER, MANUAL FOR COMPLEX LITIGATION (FOURTH) § 14.121 at 188-189 (citing *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 339-40 (3d Cir. 1998)).

> class members-the intended beneficiaries of the suit-rarely object. See Federal Judicial Center, Empirical Study of Class Action in Four Federal District Courts 76 (1996). Why should they? They have no real incentive to mount a challenge that would result in only a "minuscule" pro rata gain from a fee reduction. *Continental Illinois,* 962 F.2d at 573. It is not without significance that when Mr. Weiss, lead counsel on this appeal, stood up at oral argument to petition for a bigger slice of his clients' recovery, no one sat adjacent to him at opposing counsel's table.
>
> All these considerations have fed the perception among both commentators and the Congress that plaintiffs in common fund cases are mere "figureheads," and that the real reason for bringing such actions is "the quest for attorney's fees." Ralph K. Winter. *Paying Lawyers, Empowering Prosecutors, and Protecting Managers: Raising the Cost of Capital in America,* 42 Duke L.J. 945,984 (1993); see Private Securities Litigation Reform Act of 199S, H.R.Rep. No 104-31)9 (1995) passim, reprinted in 1995 U.S.C.C.A.N. 730, passim (criticizing abusive lawyer-driven securities class actions).
>
> This is why we continue to approach fee awards "with an eye to moderation." *Grinnell II,* 560 F.2d at 1099 (quoting *Grinnell I,* 495 F.2d at 470). *Goldberger,* 209 F.3d at 52-53.

The Court concluded that a fee award should be assessed based on scrutiny of the unique circumstances of each case, and "a jealous regard to the rights of those who are interested in the fund." *Id.* at 53.

In *Cendant Corporation Prides Litigation,* 243 F.3d 722 (3d Cir. 2001) the Court of Appeals found that the District Court abused its discretion in granting a 5.7 percent attorneys' fee award in a securities fraud class action. Id. at 742-43. The court reviewed similar awards including the below cases:

|  |  | Fee Awarded as Percentage of Recovery |
|---|---|---|
| *Show v. Toshiba America Inf Sys., Inc.*, 91 F.Supp.2d 942 (E.D.Tcx.2000) | $2.1 billion | 7% |
| *In re CopleyPharm., Inc.*, 1 F.Supp.2d 1407 (D.Wyo,1998) | $150 million | 13% |
| *In re Paine Webber Ltd Pships Litig.*, 999 F.Supp. 719 (S.D.N.Y.1998) | $200 million | 13% |
| *In re MUM Grand Hotel Fire Litig.*, 660 F.Supp. 522 (D.Nev.1987) | $205 million | 7% |

The district court in *Copley,* in granting the 13% fee award, observed that, "[d]uring expedited discovery, class counsel reviewed and analyzed more than 125,000 pages of documents and deposed roughly one hundred witnesses," 1 F.Supp.2d at 1408. The case also included 42 days of trial, and class counsel spent 48,794 hours on the case. Finally, the legal questions involved in Copley were both novel and complex. As the court explained: "not only was the certification of this class a complex question, but this was also the first and only mass tort class action to go to trial, and the case presented complex medical and scientific issues of causation." 1 F.Supp.2d at 1413.

In *Paine Webber,* Class counsel conducted "extensive, coordinated discovery," including "coordinating discovery of hundreds of boxes of documents through the use of sophisticated computer databases, and deposing many key witnesses." 999 F.Supp. at 722. In more than two years of litigation, counsel spent "approximately 70,000 hours in heretofore uncompensated legal work in pursuit of factual investigation, drafting of documents, brief writing, document analysis, depositions, trial preparation, settlement negotiation and other

tasks." 999 F.Supp. at 723. Finally, the legal issues in PaineWebber were complex, and class counsel "faced significant substantive and procedural defenses." 999 F.Supp. at 724.

In *Local 56*, the court acknowledged "the complexity of the issues in this case, the significant attendant risks of proceeding with litigation, and the tenacity and vigor with which all counsel represented their clients' interests," in this class action which lasted for four years. 954 F.Supp. at 1005. Even so, class counsel's fees amounted to only 2.8% of the total settlement.

In *In re MGM Grand Hotel*, the court considered "the particular and unique circumstances of this case," including the fact that the attorneys had recovered over 6,000 objects from the fire site and had conducted over 1,400 depositions, in granting the 7% fee award. 660 F.Supp. at 526.

Here are the settlements that have been reached in this case:

### Settlements In This Case

| Bank | Amount |
|---|---|
| Bank of the West | 18 million |
| PNC | 90 million |
| Bank of America | 410 million |
| Citizens Bank | 137.5 million |
| J.P.Morgan | 110 million |
| Great Western Bank | 2.2 million |
| U.S. Bank | 55 million |
| T.D. Bank | 62 million |
| Union Bank | 35 million |

(Total: $919.7 Million In Settlements)

Here is a list of 26 large settlements and the respective fee amount. This table is taken from the 2009 district court decision *Carlson v. Xerox*, 596 F.Supp.2d 400 (D. Conn. 2009)

| Name | Settlement Amount | Fee |
| --- | --- | --- |
| 1. Enron | $7,227,390,000.00 | 9.52% |
| 2. Worldcom | $6,133,000,000.00 | 5.48% |
| 3. Tyco | $3,200,000,000.00 | 14.5% |
| 4. Cendant (2000) | $3,166,000,500.00 | 1.73% |
| 5. AOL/Time Warner | $2,500,000,000.00 | 5.90% |
| 6. Nortel 1 | $1,142,775,308.00 | 3.00% |
| 7. Royal Ahold | $1,100,000,000.00 | 11.8% |
| 8. Nortel II | $1,074,265,298.00 | 7.74% |
| 9. McKesson | $1,042,500,000.00 | 7.64% |
| 10. Cardinal Health | $600,000,000.00 | 18.00% |
| 11. Lucent | $517,000,000.00 | 17.00% |
| 12. BankAmerica | $490,000,000.00 | 18.00% |
| 13. Dynegy, Inc. | $474,050,000.00 | 8.73% |
| 14. Adelphia Comm. | $460,000,000.00 | 21.40% |
| 15. Raytheon | $460,000,000.00 | 9.0% |
| 16. Waste Management II | $457,000,000.00 | 7.93% |
| 17. Global Crossing | $447,800,000.00 | 16.04% |
| 18. HealthSouth | $445,000,000.00 | 15.25% |
| 19. Freddie Mac | $410,000,000.00 | 20.00% |
| 20. Qwest | $400,000,000.00 | 15.00% |
| 21. Cendant | $374,000,000.00 | 7.71% |
| 22. Rite Aid | $319,580,000.00 | 25.00% |
| 23. Williams Co. | $311,000,000.00 | 25.00% |
| 24. Oxford | $300,000,000.00 | 28.00% |
| 25. DaimlerChrysler | $300,000,000.00 | 22.28% |
| 26. Bristol-Myers Squibb | $300,000,000.00 | 3.96% |

In light of these numbers, Class Counsel's requested fee is excessive.

Class Counsel's attempt to collect a 30% fee for prospective relief with Chase's change in business practices is also wrong and shows a conflict of interest with the class. In *Faught v. American Home Shield Corp.*, 668 F.3d 1233. 1243 (11th Cir. 2012), some of the plaintiffs moved for an injunction against the defendant. *Id.* at 1238. While that injunction was pending the parties reached a settlement. *Id.* The attorneys' fee included a $1.5 million lump sum payment plus 25% of class members' cash awards from a defined "Review Board" process. *Id.*

On appeal, the 11th Circuit noted:

> "[A]ttorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. And this court has often stated that the majority of fees in these cases are reasonable where they fall between 20-25% of the claims. *Id*.

Concerning the fee awarded for prospective relief, the Court went on to say:

> First, the $1.5 million did not come from the money set aside for the class; rather, it is a separate lump sum from AHS to class counsel. Second, the district court noted that the $1.5 million was intended to compensate class counsel for additional work performed and value added to the settlement, specifically, the work done in changing AHSs business practices and in establishing a state of the art center to field class member inquiries regarding the settlement. The court calculated the hours and the rates of the attorneys and staff working on the claims and determined that the $1.5 million was a very small amount compared to the amount of money invested in the case.

Here, Chase did not pay in a separate lump sum a fee for the prospective relief. Further contrary to *Faught*, Class Counsel were not seeking injunctive relief nor could they.

This suit was regarding Chase's practice of sequencing all Debit Card transactions from highest to lowest dollar amount. That practice stopped on March 29, 2010. The class period also ends on March 29, 2010.

Article III requires that, in order to obtain forward—looking relief, a plaintiff must face a threat of injury that is both "'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). In this case, there is no continuing presence of the requisite threatened injury. The element of "threatened injury" is a standing requirement. A party may never waive standing. *United States v. Hays*, 515 U.S. 737, 742 (1995); *see also Animal Legal Defense Fund v. Espy*, 29 F.3d 720, 723 n.2 (D.C.

Cir. 1994) ("Standing, whether constitutional or prudential, is a jurisdiction issue which cannot be waived or conceded").

The change in business practices by Chase has nothing to do with the highest to lowest order debit card transactions. It is a thinly veiled attempt to extract an excessive fee from the Class and the Common Fund.

## CONCLUSION

Class Counsel's Requested Fee of 44.18% of the Common Fund is excessive. A reasonable fee, consistent with 11th Circuit precedent is 25% of the common fund. This class does not have standing for prospective relief.

Sincerely,                     Sincerely,                     Sincerely,

*[signature: Nikki N. Gibson]*   *[signature: C Gibson]*

Rendee K. Bullard              Nikki H. Gibson                Claire B. Gibson

Cir. 1994) ("Standing, whether constitutional or prudential, is a jurisdiction issue which cannot be waived or conceded").

The change in business practices by Chase has nothing to do with the highest to lowest order debit card transactions. It is a thinly veiled attempt to extract an excessive fee from the Class and the Common Fund.

## CONCLUSION

Class Counsel's Requested Fee of 44.18% of the Common Fund is excessive. A reasonable fee, consistent with 11th Circuit precedent is 25% of the common fund. This class does not have standing for prospective relief.

Sincerely,

*Rendee Bullard*

Rendee K. Bullard

Sincerely,

Nikki H. Gibson

Sincerely,

Claire B. Gibson

## CERTIFICATE OF SERVICE

This objection has been sent to the following addresses:

Clerk of the Court
U.S. District Court for the
Southern District of Florida
James Lawrence King Federal Justice Bldg.
99 Northeast Fourth Street
Miami, FL. 33132

Robert C. Gilbert
Grossman Roth, P.A.
2525 Ponce De Leon Blvd.
11th Floor
Coral Gables, FL.  33134

David Lesser, Esq.
Wilmer Cutler Pickering
Hale & Dorr, LLP.
399 Park Avenue
New York, New York  10022