

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

---

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL NO. 2036

---

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS

*Lopez v. JP Morgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-CV-23127-JLK

*Luquetta v. JP Morgan Chase Bank, N.A.*
S.D. Fla. Case No. 1:09-CV-23432-JLK
C.D. Cal. Case No. 2:09-CV-06967-GHK

---

### *PRO SE* OBJECTIONS TO THE REASONABLENESS OF CLASS COUNSEL'S ATTORNEYS' FEES

Objector, David L. Treat (hereinafter "Objector"), respectfully submits the following *Pro Se* Objections to the Reasonableness of Class Counsel's Attorneys' Fee Request.

I.
SUMMARY OF PROCEDURAL BACKGROUND

Objector assumes the Court is well aware of the procedural history of the litigation, so Objector highlights just the key milestones in the litigation. According to the Settlement Agreement and Release ("Agreement"), this litigation began on July 24, 2009. Ultimately, a

number of separate pieces of litigation were transferred to the Southern District of Florida pursuant to a June 10, 2009 order for the Judicial Panel for Multi-District Litigation. The Agreement was ultimately entered between Class Counsel and J.P. Morgan Chase Bank, N.A. ("Chase") on May 1, 2012.

## II.
## THE PROPOSED CLASS SETTLEMENT

The Agreement provides for the following:

1. The creation of a Settlement Fund in the amount of $110,000,000 from which to pay claims, subject to payment of attorneys' fees, expenses, taxes, Service Awards and some costs of administration;

2. Certain corporate policy changes to be instituted by Chase (which have already been voluntarily adopted by Chase) valued at approximately $52 million;

3. Defendants will not oppose Class Counsel's application for attorneys' fees and expenses.

From the Notice, Agreement and Declarations of Brian T. Fitzpatrick and Arthur Olson, it appears Class Counsel will seek an attorney fee award of roughly $48,600,000 out of the total common fund of $110,000,000. Objector objects to the requested attorneys' fees of $48,600,000 as unfair and unreasonable.

## III.
## OBJECTOR AND OBJECTOR'S STANDING

David L. Treat is a natural person residing in Texas; he is a Class Member pursuant to the terms of the Agreement and has standing to object. Objector has attached the notice he received regarding the Agreement as Exhibit A and states he is a long-time Chase account holder. The Objector is a lawyer licensed in both Texas and New York but is filing this objection on a *pro se* basis as a member of the settlement class. His address and phone number is listed herein. This Objector has not personally filed any objections within the last five years to any class-action

2

settlements. Attached as Exhibit B is a list of the cases in which Objector's firm has filed objections in the last five years. Objector contends this information is irrelevant since this is *pro se* objection. Objector has no settlement documents or orders as the files listed in Exhibit B are closed. There are no agreements between Objector and any other parties regarding the objection. Objector is not represented by counsel and will represent himself.

## IV.
## OBJECTIONS TO PROPOSED CLASS SETTLEMENT

Objector presents the following objections to the fairness, reasonableness and adequacy of the terms of the Proposed Class Settlement as reflected in the Agreement. The requested $48,600,000 attorneys' fee payment is unreasonable because (a) Class Counsel refuses to even submit a lodestar cross-check to confirm the reasonableness of the fee, (b) the fee is likely many times the applicable lodestar, (c) Class Counsel has to attempted to bootstrap the common fund doctrine to include the value of corporate practices voluntarily (and temporarily) adopted by Chase, and (d) Class Counsel then seeks a percentage fee even on the speculative value of these corporate practices.

### A.     Legal Standard

The universally applied standard governing the trial court's determination is whether the settlement is fundamentally fair, adequate and reasonable. *Joel v. Giuliani, et al.*, 218 F.3d 132, 138-39 (2nd Cir. 2000) (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2nd Cir. 1995); *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 22 (2nd Cir. 1987)). The Agreement which allows nearly 50% of the common fund to be cannibalized for fees falls below this standard.

### B.     The Proposed $48,600,000 Attorney's Fee Payment is Unreasonable

Defendants have agreed not to oppose Class Counsel's request for roughly $48,600,000[1] in attorneys' fees from the common fund. The Agreement specifically sets out in paragraph 68 that $110,000,000 is being set aside as compensation to the class, inclusive of attorneys' fees, costs, some expenses, and Service Awards.

As this Court is aware, under Rule 23, the Court has a duty to protect absent class members and to police class action proceedings. *Evans v. Jeff D.*, 106 S. Ct. 1531 (1986) ("Rule 23(e) wisely requires court approval of the terms of any settlement of a class action . . . ."). The Court's "duty to investigate the provisions of the suggested settlement includes the obligation to explore the manner in which fees of class counsel are to be paid and the dollar amount for such services." *Foster v. Boise-Cascade, Inc.*, 420 F. Supp. 674, 680 (S.D. Tex. 1976), *aff'd*, 577 F.2d 335 (5th Cir. 1978). Thus, the Court is required to evaluate the reasonableness of Class Counsel's attorneys' fees.

Class counsel has cited the appropriate case law in the 11th Circuit regarding calculation of attorneys' fees in common fund cases. Specifically, in *Camden I Condominium Assn. v. Dunkle,* 946 F.2d 768, 771 (11th Cir. 1991), the court held when a common fund is created, the lawyer is entitled to a fee from the fund, subject to court approval. Class Counsel claims a fee of 30% of the "value" of the claim. The 30% figure is above average for the majority of fee cases in this circuit. *Faught v. American Home Shield Corp.*, 668 F.d 3d 1233, 1243 (11th Cir. 2012) (average fee is 20-25% of common fund). The decision in *Faught* holds a higher percentage can be awarded, if the Class Counsel complies with the so called *Johnson* factors. *Id.*

---

[1] *See* Plaintiffs' and Class Counsel's Motion for Final Approval of Settlement, and Application for Service Awards, Attorneys' Fees and Expenses and Incorporated Memorandum of Law which states on page one that the value of the settlement is approximately $162,000,000. The Agreement clearly states in paragraph 125 that Class Counsel requests up to 30% of the "value" of the settlement.

4

Class Counsel attempts to prove compliance with the *Johnson* factors via the Declaration of Brian T. Fitzgerald. Objector agrees many of the *Johnson* factors appear to apply, thus making a 30% fee potentially within the range of reason. However, Class Counsel also seeks to recover a percentage of the "value" of the settlement utilizing Fitzgerald's declaration in conjunction with the Declaration of Arthur Olsen. The basis for the value of the settlement in excess of the common fund is the claimed value of Chase's decision not to charge an Overdraft Fee for any transaction amount of $5 or less for the next two years. *See* Agreement, paragraph 69. Class Counsel relies on both Olson's and Fitzgerald's opinions regarding the value of the settlement in excess of the common fund due to non-cash factors (Chase's change in policy) in order to support the fee request. *See* Fitzgerald Declaration, paragraph 23; Olson Declaration, paragraph 41.

The problem with the Fitzgerald and Olson computations is fairly simple. Both men attest Chase implemented the decision not to charge overdrafts for transactions of $5 or less in July 2012. *See* Fitzgerald Declaration, footnote 3; Olson Declaration, paragraph 38. These declarations appear at odds with the Agreement itself which states Chase made these policy changes in March 2010 (roughly nine months after litigation began). *See* Agreement, paragraph 22. Thus it appears Class Counsel is seeking fees for actions Chase took voluntarily. The disparity between the expert declarations and settlement agreement is nowhere explained. Thus the claimed "value" of corporation policy may simply provide cover to support a fee request that is almost half of the common fund. Even if the fear of this litigation was the root cause of this decision, the Agreement specifically states Chase is only obligated to follow this policy for two years. *See* Agreement, paragraph 69. As such, the value to any class member is temporary and

illusory since Chase can start charging fees in two years to recoup any losses incurred during the pendency of this Agreement.

Class Counsel's reliance on *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) is also a bit overstated. Class Counsel cites *Staton* for the proposition courts can utilize the value of non-cash relief to calculate the percentage of the common fee award. *See* Plaintiffs' and Class Counsel's Motion for Final Approval of Settlement and Application for Service Awards, Attorneys' Fees and Expenses and Incorporated Memorandum of Law, p. 33. The *Staton* court specifically noted the value of non-cash relief (injunctive relief in *Staton*) was difficult to quantify and easy to manipulate in order to increase the value of the common fund. *Id.* at 974. The *Staton* Court went on to conclude that if non-cash relief is important to the value of the claim, the non-cash relief can be considered to determine the percentage to award class counsel. *Id.* Moreover, the *Staton* Court held lodestar could be used to cross check the fee. *Id.* Objector agrees with this reasoning. The court can determine if Chase's apparently voluntary decision should impact the appropriate percentage of the fund and subject the resultant fee to a lodestar cross check.[2]

Objector contends that if the Court approves a 30% fee, then the 30% should be applied to the common fund only and not to the ostensible "value" claimed by Class Counsel. Objector also requests the Court consider the "value" of Chase's policy changes as part of its determination of the fee percentage instead of a contributing to the value of the settlement as a whole. The Court should also obtain some explanation of the disparity between the Fitzgerald and Olson Declarations regarding the Chase change in policy and paragraph 22 of the

---

[2] Despite the 11th Circuit's apparent reliance on a percentage of the common fund to determine a reasonable fee, at least one circuit takes a different view. *See Union Asset Management Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643-644 (5th Cir. 2012)(Fifth Circuit holds it has never explicitly endorsed percentage method in common fund cases and lodestar cross check was appropriate to ensure a percentage of common fund fee was appropriate under the *Johnson* factors).

Agreement. If the Court does include the value of the corporate policy changes, the Objector requests a lower percentage be applied (and subjected to a reasonable lodestar cross check) consistent with precedent in this circuit.

**WHEREFORE**, Objector respectfully requests that the Court consider the foregoing objections and resolve the objections raised by Objector by limiting the request for attorney's fees, and for such further and other relief, both legal and equitable, to which Objector may be entitled.

Respectfully submitted,

David L. Treat, Objector
Bar No. 20205300
LINDOW STEPHENS TREAT LLP
600 Navarro Street, Sixth Floor
San Antonio, Texas 78205
Telephone: (210) 227-2200
Facsimile: (210) 227-4602

### CERTIFICATE OF SERVICE

A copy of these objections was sent by regular mail to the following on November 5, 2012:

Clerk of the Court
U.S. District Court for the Southern District of Florida
James Lawrence King Federal Justice Building
99 Northeast Fourth Street
Miami, Florida 33132

Robert C. Gilbert, Esq.
Grossman Roth, P.A.
2525 Ponce de Leon Boulevard, 11th Floor
Coral Gables, Florida 33134

David Lesser, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Avenue
New York, New York 10022

_____
David L. Treat

# EXHIBIT A

SETTLEMENT ADMINISTRATOR
PO BOX 8042
FARIBAULT, MN 55021-9442

**Includes accounts from Chase, Bank One, Bank of New York, and Washington Mutual Bank.**

<u>Non-Automatic-Payment Time Period:</u>

*Chase or Bank One accounts:*
January 1, 2003 - December 31, 2004

*Bank of New York accounts:*
October 2, 2006 - March 31, 2007

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
Rust Consulting, Inc.

<u>Important Notice About Overdraft Fee Settlement</u>



* 0 0 3 5 0 9 9 5 6 7 *

T320/P2 *******AUTO**5-DIGIT 78208
KEENAN R TREAT
OR LISA TREAT
OR DAVID L TREAT
317 LAMONT AVE
SAN ANTONIO TX 78209-3755

64835-46-0262

## If You Paid Overdraft Fees to JPMorgan Chase Bank, N.A., You May Be Eligible for a Payment from a Class Action Settlement.

A $110 million Settlement has been reached in class action lawsuits claiming that JPMorgan Chase Bank, N.A. ("Chase") improperly posted debit card transactions from highest to lowest dollar amount to increase the number of overdraft fees charged to account holders. Chase maintains there was nothing wrong about the posting process used. The Court has not decided which side is right.

**Who's Included?** Chase's records show you are a member of the Settlement Class. The Settlement Class includes anyone who: (1) had a Chase consumer deposit account accessible with a Chase debit card, at any time between January 1, 2003 and March 29, 2010, and (2) was charged one or more overdraft fees as a result of Chase's practice of posting debit card transactions from highest to lowest dollar amount. To be included in the Class, you must have had two or more overdraft fees caused by debits posted to your account on a single day during the time period listed above.

**What Are the Settlement Terms?** Chase has agreed to establish a Settlement Fund of $110 million that will provide payments or account credits to eligible Settlement Class Members. The amount any individual Settlement Class Member will receive cannot be determined at this time. Payments will be based on the number of people in the Settlement Class and the amount of additional overdraft fees each Settlement Class Member paid as a result of Chase's posting order. Any money left in the Settlement Fund after claims are paid will be made available to nonprofit organizations approved by the Court. Chase has also agreed not to charge overdraft fees on individual debit card transactions of $5.00 or less for two years.

**How to Get a Payment?** You will receive an automatic payment or account credit for any eligible overdraft fees you paid during most of the period coverd by the Settlement. But if you paid an eligible overdraft fee during the non-automatic-payment time period (*see* front of postcard), you need to file a Claim Form to request a payment or account credit for those fees. You can submit a Claim Form online or by mail. The deadline to submit a Claim Form is **February 8, 2013**.

**Your Rights May Be Affected.** If you do not want to be legally bound by the Settlement, you must ask (in writing) to be excluded from the Settlement Class by **November 5, 2012**. If you do not exclude yourself, you will release any claims that were or could have been made against Chase. If you stay in the Settlement Class, you may object to the Settlement by **November 5, 2012**. The Court has scheduled a hearing on **December 10, 2012** to consider whether to approve the Settlement and a request for attorneys' fees, costs, and expenses up to 30 percent of the value of the Settlement. You can appear at the hearing, but you don't have to. You can hire your own attorney, at your own expense, to appear or speak for you at the hearing. You can call the toll-free number or visit the website to learn more about how to exclude yourself from or object to the Settlement.

For more information: **www.ChaseOverdraftSettlement.com** or **1-877-552-1296**

# EXHIBIT B

Civil Action No. 04-2819 (SRC); United States District Court District of New Jersey, *Shawn Sullivan, Arrigotti Fine Jewelry and James Walnum, on behalf of themselves and all others similarly situated v. DB Investments, Inc., De Beers S.A., De Beers Consolidated Mines, LTD., De Beers A.G., Diamond Trading Company, CSO Valuations A.G., Central Selling Organization and De Beers Centenary A.G.*

Civil Action No. 04-L-716; In the Circuit Court Third Judicial Circuit Madison County, Illinois; *Charles Parker, Annemarie Parker, Joyce Sumpter and David Sumpter, Individually, and on Behalf of All Others Similarly Situated v. Sears Roebuck and Co.*

Civil Action No. 22052-01266-03, Division 8; Missouri Circuit Court Twenty Second Judicial District, City of St. Louis; *Eleanor Bachman, Karol B. McClintock and Karol B. McClintock, IRA, Individually and on Behalf of All Others Similarly Situated; A.G. Edwards, Inc., et al.*

Civil Action No. 3:02-CV-2243-K; In the United States District Court, Northern District of Texas, Dallas Division; *Richard Schwartz, Roslyn Feder, White Lion Partners, Michael Connor and Dale Lynn Connor, on behalf of themselves and all others similarly situated vs. TXU Corp., Erle Nye, Michael J. McNally, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, Banc of America Securities LLC, Credit Suisse First Boston Corporation and Salomon Smith Barney Inc.*

JCCP Nos. 4266 and 4270; Superior Court of The State of California, County of Sacramento, Coordination Proceeding Special Title (Rule 1550(b)) Ford Explorer Cases, All Actions Included Actions: *Tompkins v. Ford Motor Company,* Sacramento County Superior Court; Case No. 02AS02919; *Katz v. Ford Motor Company,* Los Angeles county Superior Court; Case No. BC: 279457; *Gray v. Ford Motor Company,* Sacrament County Superior Court; Case No. 03AS04782; *Montoya v. Ford Motor Company,* Sacramento County Superior Court; Case No. 03AS05213.

Civil Action No. 3:02-CV-2243-K; In the United States District Court, Northern District of Texas, Dallas Division; *Richard Schwartz, Roslyn Feder, White Lion Partners, Michael Connor and Dale Lynn Connor, on behalf of themselves and all others similarly situated vs. TXU Corp., Erle Nye, Michael J. McNally, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, Banc of America Securities LLC, Credit Suisse First Boston Corporation and Salomon Smith Barney Inc.*

Case No.'s 07-CV-2249-FSH-PS, 07-CV-2361-FSH-PS (consolidated); United States District Court District of New Jersey; *John M. Dewey, Patrick DeMartino, Patricia Romeo, Ronald B. Marans and Edward O. Griffin, on Behalf of Themselves and All Others Similarly Situated v. Volkswagen AG, Volkswagen Beteiligungs Gesellschaft MBH, Volkswagen Group of America, Inc., (fka Volkswagen of America, Inc.), Audi AG, Volkswagen Group of America, Inc. d/b/a Audi of America, Inc., Audi of America, LLC and Volkswagen De Mexico, S.A. DE C.V.; Jacqueline Delguercio, Lunda Gallo, Francis Nowicki and Kenneth Bayer, Individually and on Behalf of All Others Similarly Situated v. Volkswage Group of America, Inc., Volkswagen of America, Inc. dba Audi of America, Inc., Volkswagen AG, Audi AG, Volkswagen De Mexico, S.A. De C.V. and ABC Entities 1-20.*

JCCP Nos. 4250, 5258, 4259 and 4262; Superior Court of California County of San Francisco; Coordination Proceeding; Special Title (Rule 1550(b)); *Smokeless Tobacco Cases I-IV* Consolidated with *Kelly v. UST, et al.* SFSC Case No. CGC-412861.

Action No. 2:08-md-01999-LA; United States Court of Appeals for the Seventh Circuit, Chicago, Illinois 60604; *Lawnmower Engine Horsepower Marketing Sales Practices Litigation, Kent Stephens, et al.* Nos. 10-2971, 10-3127, 10-3141, 10-3146, 10-3154, 10-3157; *Sears, Roebuck & Company, et al., Appeals of Rosalie Borgards, et al., Carl Olson, Jr., Thomas L. Cox, Jr., et al., Douglas Hilbert, et al., Husqvarna Consumer Outdoor Products, N.A. Inc., aka Husqvana Outdoor Products, Inc., Jeannine Miller, Scott Kimball, III and Clyde F. Padgett.*