UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:09-MD-02036-JLK

| | |
|---|---|
| In re: | ) |
| | ) |
| CHECKING ACCOUNT OVERDRAFT | ) |
| LITIGATION | ) |
| | ) |
| MDL No. 2036 | ) |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| *Orallo v. Bank of the West* | ) |
| C.D. Cal. Case No. 2:10-cv-2469 | ) |
| S.D. Fla. Case No. 1:10-cv-22931-JLK | ) |
| | ) |
| *Dee v. Bank of the West* | ) |
| N.D. Cal. Case No. 4:10-cv-02736 | ) |
| S.D. Fla. Case No. 1:10-cv-22985-JLK | ) |
| | ) |

**RESPONSE OF DEFENDANT BANK OF THE WEST TO
OBJECTIONS TO FINAL APPROVAL OF SETTLEMENT**

**I.   INTRODUCTION**

Defendant Bank of the West (the "Bank") urges the Court to overrule the objections filed in connection with the pending Motion for Final Approval of Settlement, and Application for Service Awards, Attorneys' Fees and Expenses (Dkt. No. 3015).[1] Despite the fact that notice of the Settlement was delivered by mail to approximately 380,000 persons in the Settlement Class, published in four newspapers and also posted on the Settlement Website, only three objections

---

[1] Capitalized terms are defined in the Settlement Agreement and Release of June 26, 2012 ("Settlement" or "Agreement") (Dkt. No. 3015–1), unless otherwise indicated.

LA 51601388

-2-

were filed.[2] Neither of these objections presents any basis for disrupting the Settlement. In fact, some of the objections raised have already been considered—and overruled—by this Court.

Specifically, the Court has already rejected the arguments raised by Objectors that the establishment of a cy pres fund and the failure to provide the amount that Settlement Class Members will receive renders the Settlement unfair. The Court also has rejected the argument that the Settlement is unfair because it does not provide for injunctive relief. Further, the Court has approved in numerous other settlements the same requirements imposed on objectors that are being challenged here. Moreover, and importantly, this Court has acknowledged that the high-to-low posting of Debit Card Transactions "is by no means clearly unlawful," which supports the compromises made in the Settlement and the scope of the Releases.

Put simply, the Settlement is fair, reasonable and adequate, and Objectors present no grounds for denying final approval. Accordingly, the Bank respectfully asks the Court to overrule the objections.

## II.   ARGUMENT[3]

A.   **The Settlement And Releases Appropriately Reflect The Risks Presented On Plaintiffs' Claims.**

Objectors argue that the Releases are "overbroad" because the Bank maintains its right to recover "any past, present or future amounts that may be owed by Plaintiff or by any Settlement

---

[2] Objections were filed by Jeannie Ladd, Adrian M. Snow and Autumn Grace Snow ("Ladd Obj.") (Dkt. No. 3032). Objections were also filed by Ryan Phillips ("Phillips Obj.") (Dkt. No. 3033). Jeannie Ladd, Adrian M. Snow, Autumn Grace Snow and Ryan Phillips will collectively be referred to as "Objectors." Objector Ryan Phillips "adopts and joins all other well pled, bona fide objections." Phillips Obj. at 10. The Bank also received a late objection submitted by Martha Bronson postmarked November 15, 2012.

[3] The Bank will not address the objections to Class Counsel's application for attorneys' fees and service awards. The Bank refers the Court to Plaintiffs' response to such objections.

Class Member on his/her accounts, loans or any other debt with [the Bank]," even though such amounts arise from the challenged overdraft practices. Ladd Obj. at 2. Objectors overlook the fact, however, that "high-to-low posting of debit card transactions is by no means clearly unlawful." Tornes v. Bank of Am. (In re Checking Account), 830 F. Supp. 2d 1330, 1347 (S.D. Fla. 2011). Indeed, the Bank possessed significant defenses to Plaintiffs' claims and, through further litigation, Plaintiffs faced the prospect of recovering nothing.

For instance, the Bank's account agreement expressly provides for the challenged practice. See Dkt. No. 998, Ex. A at 14 ("We may accept, pay, or charge checks and other items presented against your account in any order we select. . . . If you have insufficient funds in your account to pay all of the checks and other items processed on any given day, this method will result in additional fees.") (emphasis added). Further, Article 4 of the Uniform Commercial Code provides that "items may be accepted, paid, certified, or charged to the indicated account of [the bank's] customer in any order." U.C.C. § 4-303(b) (emphasis added). Based on section 4-303(b), several courts have easily disposed of claims directed to the high-to-low posting order. See Smith v. First Union Nat'l Bank, 958 S.W. 2d 113, 114 (Tenn. Ct. App. 1997); Daniels v. PNC Bank, N.A., 738 N.E. 2d 447, 448-49 (Ohio Ct. App. 2000); Hill v. St. Paul Fed. Bank for Sav., 768 N.E. 2d 322, 325-27 (Ill. Ct. App. 2002); Fetter v. Wells Fargo Bank Tex., N.A., 110 S.W. 3d 683, 685 (Tex. Ct. App. 2003).

Moreover, the Federal Deposit Insurance Corporation ("FDIC"), the regulator of the Bank, has evaluated posting order issues over the course of time and did not find until 2010 that any particular posting should be used. Nor has it ever suggested that the use of any particular order, including high-to-low posting, would be unfair or illegal. Indeed, in February 2005, a Joint Guidance on Overdraft Protection Programs (the "Joint Guidance") was issued by the

FDIC, along with the Office of the Comptroller of the Currency (the "OCC"), the Board of Governors of the Federal Reserve System and the National Credit Union Administration (collectively, the "Agencies"). In the Joint Guidance, the Agencies did not state a conclusion on any particular posting order. Then, in November 2008, the FDIC issued its Study of Bank Overdraft Programs, which again did not include any recommendation that banks not use the high-to-low posting order. These various reviews by the FDIC would provide powerful evidence in defense of Plaintiffs' claims.

Further, even if Plaintiffs' claims had merit, which they do not, the Bank would defeat any attempt by Plaintiffs to certify a class. Plaintiffs' claims are not suitable for class treatment because they cannot establish the Rule 23 requirements of typicality, adequacy and commonality.

As an initial matter, Plaintiffs themselves would face a compelling defense based on unclean hands, among other doctrines, such as laches and voluntary payment. Again, the decisions arising under section 4-303(b) are instructive. In each of those decisions, the named plaintiff brought a class action complaint on the premise that the defendant bank would "honor[] checks in such a fashion as to maximize the fees charged by the bank for checks returned for insufficient funds." Smith, 958 S.W. 2d at 114; see Daniels, 738 N.E. 2d at 448; Hill, 768 N.E. 2d at 323. Rejecting the contentions of improper conduct, the courts focused on the provisions of the underlying state commercial codes that allow banks to process checks "in any order." In addition, and importantly, the courts uniformly were critical of plaintiffs and, thus, were disinclined to provide relief. For instance, as stated in Daniels:

> [A] person who chronically writes bad checks does not have clean hands to seek equitable relief from the resulting fees, since such a person is engaged in bad banking practices and is merely experiencing the intended deterrent effect of those fees. The fees will stop when the customer adopts better banking practices. The situation is entirely under the control of the banking customer, who need not

<u>pay any fees if he or she maintains sufficient funds on account or arranges for some sort of overdraft protection.</u>

<u>Daniels</u>, 738 N.E. 2d at 451 (emphasis added).

This criticism plainly applies to Plaintiffs, and it will be dispositive of their own claims. Not only did Plaintiffs overdraft repeatedly, they did so with full knowledge of the Debit Re-sequencing and the fees that would result from the practice. Further, on each of Plaintiffs' overdrafts, the Bank provided Plaintiffs documents reflecting the fact, and the effect, of high-to-low posting on Plaintiffs' Debit Card Transactions. Indeed, like all bank customers, Plaintiffs had a <u>legal duty</u> to review their monthly account statements, which reveal that they repeatedly were incurring overdraft fees through their debit cards and the high-to-low posting order. <u>See</u> Cal. Com. Code §4406(c) ("If a bank sends or makes available a statement of account . . ., the customer must exercise reasonable promptness in examining the statement . . . to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized."). Because their own conduct gives rise to significant defenses, Plaintiffs will not be able to carry their burden of demonstrating typicality and adequacy.

In further opposing class certification, the Bank also would demonstrate that customers' understandings, experience and conduct differed, such that individual issues of fact will permeate Plaintiffs' claims. Some customers of the Bank, but not all, incurred repeated overdraft fees on their debit cards. Those customers who repeatedly overdrafted would be subject to the defenses discussed above. It is fundamental that, where individualized questions will overwhelm the common questions, a case should not be certified. <u>See, e.g.</u>, <u>Castano v. Am. Tobacco Co.</u>, 84 F.3d 734, 745 n.19 (5th Cir. 1996) (stating that "[t]he greater the number of individual issues, the less likely superiority can be established"); <u>Babineau v. Fed. Express Corp.</u>, 576 F.3d 1183, 1191

(11th Cir. 2009) (upholding district court's denial of certification where common issue would be "swamped by individual factual inquiries").

Accordingly, against this background, the Releases fairly and adequately account for the risks Plaintiffs and the Settlement Class would face absent the Settlement. Moreover, if Objectors are unsatisfied with those Releases, they should simply have excluded themselves from the Settlement. As provided on the Settlement Website, if Objectors "do not want benefits from the Settlement, and [] want to keep the right to sue or continue to sue [the Bank]" and do not want to be bound by the "Release of Claims," Settlement Class Members can opt out of the Settlement. This would have been the proper course of action. Objectors then would have been free to seek a better result against the Bank than provided by the Settlement if they actually thought they could obtain it.

**B.    The Possible Establishment Of A Cy Pres Fund Is An Appropriate Alternative To Re-Distributing Any Residual Settlement Fund To Settlement Class Members.**

Objectors' assertion that the Settlement should be rejected based on the potential cy pres program is meritless. See Ladd Obj. at 3-4. Objectors ground this assertion on the false premise that the "only reason funds would be left over, is if the parties contemplate that many class members will not recover any payments- particularly those class members who are deemed to have 'negative balances.'" Id. at 4. As provided in the Agreement, the option of establishing a cy pres program is intended to address the limited circumstance of Settlement Class Members failing to cash their settlement checks for whatever reason (or who somehow cannot be located at the time of distribution). See Agreement ¶ 86, 87; see also Rohn v. Tap Pharm. Prods (In re Lupron Mktg. & Sales Prac. Litig.), 677 F.3d 21, 30 (1st Cir. 2012), cert. denied, 184 L. Ed. 2d 239 (2012) ("When class actions are resolved by settlement, unclaimed money may remain in the

settlement fund after initial distributions to class members because some class members cannot be located, some decline to file a claim, or some have died.").

Indeed, because no part of the Net Settlement Fund will revert to the Bank, the Settlement provides that any remaining portion of the Net Settlement Fund will either be (1) distributed to Settlement Class Members who already received Settlement Class Members Payments on a pro rata basis, or (2) distributed through a residual cy pres program subject to the parties' and the Court's approval. See Agreement ¶ 86, 87. Such an option is entirely appropriate and does not, and could not, render the Settlement unfair. See American Law Institute, Principles of the Law of Aggregate Litigation § 3.07, cmt. b (2010) (recommending cy pres distribution where "distribution would involve such small amounts that, because of the administrative costs involved, such distribution would not be economically viable."); Nelson v. Mead Johnson & Johnson Co., No. 11-15956, 2012 U.S. App. LEXIS 14876, at *14 (11th Cir. 2012) (affirming district court's approval of settlement where cy pres used to distribute unclaimed settlement funds); In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 34 (1st Cir. 2009) ("[C]ourts are not in disagreement that cy pres distributions are proper in connection with a class settlement, subject to court approval of the particular application of the funds.") (internal quotes and citation omitted).

**C.     Rule 23 Does Not Require That The Settlement Notice Provide The "Dollar Amount That A Class Member Would Receive."**

Objectors also contend that the Settlement is unfair because "the parties cannot even articulate a dollar amount that a class member would receive." Ladd Obj. at 5. This objection is unfounded because, as a matter of law, notice to the Settlement Class Members was not required to be so detailed that "an individual Class Member [can] calculate the amount of his or her actual

recovery under the settlement." In re PaineWebber P'ships Litig., 171 F.R.D. 104, 124 (S.D.N.Y. 1997); see also Mangone v. First USA Bank, 206 F.R.D. 222, 233 (S.D. Ill. 2001) (finding that Rule 23 and due process did not require the class notice to provide "the value of damages . . . the maximum potential recovery for the Class, and the methodology for determining and calculating damages"); In re Ins. Brokerage Antitrust Litig., 282 F.R.D. 92, 110 (D.N.J. 2012) (overruling objection that notice was inadequate because it did not provide information regarding settlement benefits; "Rule 23(e) does not require that a notice contain every specific detail related to the settlement").

Further, this Court has previously addressed this very objection in Tornes. This Court squarely held in Tornes that, "[c]ontrary to what [] Objectors suggest, the law does not require that notice be given of the amount an individual class member will recover, either as a lump sum or as a range or percentage of potential recovery." Tornes, 830 F. Supp. 2d at 1343-1344. Instead, just as the settlement agreement in Tornes set forth the formula by which the settlement fund would be allocated, the Agreement here explains exactly how the Settlement Class Member Payments will be calculated. See Agreement ¶¶ 76-81; Tornes, 830 F. Supp. 2d at 1344. Accordingly, the Court should hold to its conclusion from Tornes and again overrule this objection.

**D.     Objector's Demand For Injunctive Relief Is Entirely Misdirected.**

Objectors protest that the Settlement is unfair because it does not include injunctive relief. See Ladd Obj. at 6-7. Specifically, Objectors claim that the Bank is not obligated to change its practices and that Settlement Class Members would be more reassured if the Bank "no longer engage[d] in the behavior that led to the [Action]." Id. In this regard, Objectors apparently have failed to read the Agreement, which states that, "effective July 1, 2011, [the

Bank] modified some of its debit card policies and practices, including its posting order, so that debit and ATM transactions are processed in chronological order (when date and time information is available) or in low-to-high order (when date and time information is not available)." Agreement ¶ 7. Further, "Regulation E, which took effect on August 15, 2010, prohibits banks from assessing overdraft fees on nonrecurring debit transactions unless consumers affirmatively consent to this practice." Tornes, 830 F. Supp. 2d at 1352 (citing 12 C.F.R. § 205.17).

Thus, Objectors have no basis upon which to demand injunctive relief. The Bank has already changed its practices, in accordance with Regulation E.

## E. The Objection Requirements Are Not Impermissible And Have Been Approved By This Court Many Times.

Objector Ryan Phillips contends that the basic information required to assert an objection to the Settlement somehow "far exceeds the procedures drawn out by Rule 23." Phillips Obj. at 8. This is not so. Federal Rule of Civil Procedure 23(e)(5) simply states that "[a]ny class member may object to the proposal if it requires court approval . . . ." Rule 23 does not in any way dictate the form of an objection or preclude the notice of objection process adopted by this Court in its Preliminary Approval Order (Dkt. No. 2832), as well as multiple other preliminary approval orders in this MDL. See, e.g., Sachar v. IberiaBank Corp., Dkt. No. 2060 (Nov. 1, 2011); Case v. Bank of Okla., N.A., Dkt. No. 2644 (Apr. 20, 2012); Larsen v. Union Bank, N.A., Dkt. No. 2659 (Apr. 26, 2012); Lopez v. JPMorgan Chase Bank, N.A., Dkt. No. 2712 (May 24, 2012); Harris v Associated Bank, N.A., Dkt. No. 2856 (July 26, 2012); Wolfgeher v. Commerce Bank, N.A., Dkt. No. 2883 (Aug. 16, 2012); McKinley v. Great W. Bank, Dkt. No. 2925 (Aug.

LA 51601388

30, 2012); <u>Duval v. Citizens Fin. Grp., Inc.</u>, Dkt. No. 2959 (Sept. 19, 2012); <u>Blahut v. Harris</u>, Dkt. No. 2990 (Oct. 4, 2012).

Moreover, the objection requirements are not onerous and provide an important means of identifying "professional objectors," of which "[f]ederal courts are increasingly weary []." <u>O'Keefe v. Mercedes-Benz U.S., LLC</u>, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003); <u>see also</u> <u>Barnes v. FleetBoston Fin. Corp.</u>, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, at *3 (D. Mass. Aug. 22, 2006) (ordering bond imposed on appellee-objector because "[r]epeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved . . . . Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements . . . ."). The straightforward requirements imposed by the Court therefore serve a valid purpose: They assist the Court in confirming that any objections are legitimate. Objectors should have no issue with providing the required information.

///

///

///

### III. CONCLUSION

For the foregoing reasons, the Bank respectfully requests that the Court overrule the Objections in their entirety and enter an order finally approving the Settlement.

Dated:  November 21, 2012                                  Respectfully submitted,

                                                           <u>          /s/ Lisa M. Simonetti          </u>
                                                           JULIA B. STRICKLAND
                                                           (pro hac vice)
                                                           jstrickland@stroock.com
                                                           LISA M. SIMONETTI
                                                           (pro hac vice)
                                                           lsimonetti@strook.com
                                                           STROOCK & STROOCK & LAVAN LLP
                                                           2029 Century Park East, Suite 1600
                                                           Los Angeles, California  90067-3086
                                                           Tel:  (310) 556-5800
                                                           Fax:  (310) 556-5959

                                                           BRIAN C. FRONTINO
                                                           (Fl. State Bar No. 95200)
                                                           bfrontino@stroock.com
                                                           STROOCK & STROOCK & LAVAN LLP
                                                           200 S. Biscayne Blvd., Suite 3100
                                                           Miami, Florida 33131
                                                           Tel:  (305) 358-9900
                                                           Fax:  (305) 789-9302

                                                           Attorneys for Defendant
                                                             BANK OF THE WEST

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.: 1:09-md-02036-JLK

| | |
|---|---|
| In Re: | ) ) ) ) |
| CHECKING ACCOUNT OVERDRAFT LITIGATION | ) ) ) ) |
| MDL No. 2036 | ) ) ) |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 21, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

Dated:  November 21, 2012

*/s/ Lisa M. Simonetti*
LISA M. SIMONETTI
(*pro hac vice*)
lsimonetti@stroock.com
STROOCK & STROOCK & LAVAN LLP
2029 Century Park East, Suite 1600
Los Angeles, California  90067-3086
Tel:  (310) 556-5800
Fax:  (310) 556-5959

LA 51601388