**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 09-MD-02036-JLK**

**IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS**

*Lopez v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. l:09-cv-23127-JLK

*Luquetta v. JPMorgan Chase Bank, N.A.*
S.D. Fla. Case No. l:09-cv-23432-JLK
C.D. Cal. Case No. 2:09-cv-06967-GHK

**PLAINTIFFS' AND CLASS COUNSEL'S RESPONSE TO OBJECTIONS
TO MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CLASS
<u>APPLICATION FOR SERVICE AWARDS AND ATTORNEYS' FEES</u>**

After more than two years of hard-fought litigation, Class Counsel negotiated a Settlement with Defendant JPMorgan Chase Bank, N.A. ("Chase") with a total value of approximately $162 million that will benefit more than five million Settlement Class Members.[1] This Settlement is outstanding: in the face of serious litigation risks, Chase will pay $110 million in cash and will not charge Overdraft Fees with respect to any individual Debit Card Transactions of $5.00 or less for a minimum of two years, resulting in reliably estimated future savings of $52 million for the benefit of Settlement Class Members who were Chase Account

---

[1] All capitalized defined terms have the same meanings ascribed in the Settlement Agreement and Release attached as Exhibit A to Plaintiffs' and Class Counsel's Motion for Final Approval of Settlement, and Application for Service Awards, Attorneys' Fees and Expenses (DE # 3010).

holders as of the date of Preliminary Approval. The overwhelming majority of Settlement Class Members do not have to do anything to receive the benefits of the Settlement; they will receive their settlement consideration through automatic account credits or by checks. A minority of Settlement Class Members, for whom Chase does not have reasonably accessible data to permit Settlement Class Counsel's expert to identify them and/or to calculate their damages pursuant to the allocation formula set forth in the Agreement, have the opportunity to file Claims seeking a distribution from the Settlement under the same allocation formula being used for their fellow Settlement Class Members. Approximately five million Settlement Class Members received direct mail Notice of the Settlement. The Notice approved by the Court used plain language to inform Settlement Class Members about, *inter alia*, the: (1) terms of the Settlement; (2) choices available to them – exclude themselves, object, or participate in the Settlement – including applicable deadlines and how to exercise those options; and (3) Final Approval Hearing.

## I.   OVERVIEW OF THE OBJECTIONS

Out of more than five million Settlement Class Members, only six (6) objections to the Settlement were submitted by or on behalf of individuals purporting to be Settlement Class Members. (DE # 3030,[2] 3031, 3048, 3059, 3063, and objection of Joseph D. Wilkins, Patrick C. Morris, Rena A. Morris, Curt Tweed, Nicholas Kirkpatrick and Christopher Kirkpatrick ("Wilkins' Objection").[3] Three of the objections were filed by lawyers who have made a career out of objecting to class action settlements to extort money from class counsel and settling defendants (DE # 3030, 3031 and the Wilkins' Objection), while a fourth was filed by the wife

---

[2] The objection originally assigned DE # 3030 was filed a second time on CM/ECF and assigned DE # 3057. All references to that objection herein cite the original docket entry number (DE # 3030).

[3] To date, the Wilkins Objection has not been filed on CM/ECF. Therefore, no docket entry number has been assigned and it will be referenced herein as the Wilkins' Objection.

and daughter of a known professional objector (DE # 3048).  Such objectors, known as "serial" or "professional" objectors, have raised the ire of federal courts, including this Court, for playing no positive role in class action litigation, and contributing no benefit to the class.  The other two objections were filed by *pro se* individuals (DE # 3059, 3063), one of whom is an attorney whose firm has objected to a number of class action settlements (DE # 3059).

Six objections out of over five million Settlement Class Members is particularly telling.[4] It evidences overwhelming support for Plaintiffs' and Class Counsel's Motion for Final Approval of the Settlement, and Application for Service Awards, Attorneys' Fees and Expenses.[5] This extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

All six objections lack merit.  They are riddled with misunderstandings of the Settlement and basic class action jurisprudence.  Several are substantially identical to objections previously filed by the same professional objectors to other MDL 2036 settlements.  Not a single objector submitted an expert affidavit or provided any evidence undermining the conclusions reached by Class Counsel and their experts that (i) this Settlement achieves an outstanding result for the Settlement Class, and (ii) Class Counsel's application for fees is reasonable.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (affirming final approval of nationwide

---

[4] The average number of objections to settlements of consumer class actions is 233.  In a settlement of this magnitude, the Court should expect to receive around 760 objections to the Settlement (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery).  *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004).

[5] In addition, the extremely low number of requests for exclusion (164) demonstrates overwhelming support for the Settlement.

class action settlement where "[t]he objectors presented no evidence" to support their arguments).

For the reasons discussed below, Plaintiffs and Class Counsel respectfully request that the Court (1) overrule the objections; (2) grant Final Approval to the Settlement; (3) approve the request for Service Awards to the Class Representatives; (4) approve Class Counsel's application for attorneys' fees and expenses; and (5) enter Final Judgment dismissing the Action with prejudice.

## II.     FOUR OF THE OBJECTIONS LACK CREDIBILITY

Attorney Patrick Sweeney submitted the Wilkins' Objection.  Mr. Sweeney is a serial objector who previously objected to two other MDL 2036 settlements.  (DE # 1936, 3033).  *See also Kardonick v. JPMorgan Chase & Co.*, No. 10-cv-23235, DE # 357 (S.D. Fla. Aug. 19, 2011).  In addition to its lack of substantive merit, the Wilkins' Objection does not comply with the basic requirements for objections set forth in the Preliminary Approval Order.  (DE # 2712). The Wilkins' Objection fails to set forth: (i) the names, addresses and telephone numbers of the objectors; (ii) a statement that the objectors object to the Settlement with Chase; (iii) the reasons for the objection; (iv) information about objections filed by the objectors or their counsel in other class action cases; and (v) the signatures of all objectors.  *See* Wilkins' Objection at p. 11. Attorney Sweeney claims that the requested information is "extremely vague." *Id*.  Attorney Sweeney apparently did not find the identical requirement for such basic information "extremely vague" because he provided it in connection with an objection he recently filed in another MDL 2036 settlement.  (DE # 3033, 3033-1, 3033-2).  The Wilkins' Objection is defective and should be summarily denied and/or stricken based on the failure to comply with the Preliminary Approval Order.

A second objection was submitted by attorney Steve Miller on behalf of Darcy Lindner, Diana Clagg, and Joy Caballero ("Lindner Objection"). (DE # 3031). Mr. Miller is another serial objector who previously filed objections to two other MDL 2036 settlements. (DE # 2133, 3032). *See, e.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, MDL No. 1532, DE # 1175 at n.22 (D. Me. Apr. 13, 2011) (rejecting Mr. Miller's "specious" arguments); *In re Am. Int'l Grp., Inc. Sec. Litig*. No. 04-cv-08141-DAB, DE # 663, 664 (S.D.N.Y. Oct. 1, 2012) (Mr. Miller withdrew his appeal of an order rejecting his objections to a settlement, without having provided any benefit to class). Mr. Miller often files objections in different cases on behalf of the same clients. *See, e.g.*, *Blessing v. Sirius XM Radio Inc*., No. 09-cv-10035, DE # 167 (S.D.N.Y. Sept. 14, 2011); *In re Lawnmower Engine Horsepower Marketing & Sales Practices Litig*., MDL No. 1999, DE # 272 (E.D. Wis. June 22, 2010) (objections filed on behalf of Jeannine Miller); *Nakash v. nVidia Corp*., No. 08-cv-04312-JW, DE # 325 (N.D. Cal. Jan. 14, 2011); *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig*, MDL No. 1897, DE # 194 (C.D. Cal. Feb. 19, 2010); *CLRB Hanson Inds., LLC v. Google, Inc*., No. C 05-03649 JW PVT, DE # 326 (N.D. Cal. July 10, 2009).

A third objection was submitted by attorneys Ernest J. Browne, Jr. and Brian M. Silverio, on behalf of Hugh Ramsey, Robert D. Fontenot, James and Kelly Deloney and Carolyn McLemore ("Ramsey Objection"). (DE # 3030). Messrs. Browne and Silverio are serial objectors who previously filed an objection to the Bank of America settlement in MDL 2036. (DE # 1922).

A fourth objection was submitted by Rendee Kay Bullard, Nikki Hurst Gibson and Claire Barnett Gibson ("Gibson Objection"). (DE # 3048). Although filed as a *pro se* objection, two of the three objectors in the Gibson Objection are the wife and daughter of Dennis Gibson, a known

professional objector who was involved in assisting one of the *pro se* objectors to the MDL 2036 settlement with Bank of America.

As this Court and several others have determined, serial objectors such as Mr. Sweeney, Mr. Miller, and Messrs. Browne and Silverio, who hold up large class action settlements for a payout, perform no constructive role in class action litigation. "[M]ost if not all . . . are motivated by things other than a concern for the welfare of the Settlement Class." *Tornes v. Bank of America, N.A.*, 830 F. Supp. 2d 1330, 1361 at n.30 (S.D. Fla. 2011) (King, J.). Such lawyers make their living "simply by filing frivolous appeals and thereby slowing down the execution of settlements." *Barnes v. FleetBoston Fin. Corp.*, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006). Their "sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch on to" and levying "what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors." *Tornes*, 830 F. Supp. 2d at n.30 (quoting *Barnes*, 2006 U.S. Dist. LEXIS 71072, at *3-4). For this reason, "federal courts are increasingly weary of professional objectors." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266 n.26 (E.D. Pa. 2003).

Given who is behind these four objections, they should be accorded little, if any, weight.

### III. THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED ON THE MERITS

#### A. The Interests of Settlement Class Members are Not Divergent or in Conflict and Do Not Require Subclasses.

Two of the objections contend that the Settlement should not be finally approved because the interests of Settlement Class Members are too divergent to satisfy the adequacy of representation requirement under Fed. R. Civ. P 23(a)(4). *See* Ramsey Objection at pp. 3-5 (DE # 3030); Lindner Objection at pp. 2-6 (DE # 3031). This argument is devoid of merit.

The so-called divergent interests claimed by these objections are between those Settlement Class Members who incurred the Overdraft Fees as a result of High-to-Low Posting during the period January 1, 2003 through December 31, 2004, and those who incurred Overdraft Fees as a result of High-to-Low Posting during the period January 1, 2005 through March 29, 2010. The objectors contend that because the former group (2003-04) must submit documentation supporting their damages, while the latter group (2005-2010) need not do so, the interests of the groups are too divergent for Class Counsel and the Plaintiffs to represent them simultaneously. Instead, these objectors contend that subclasses (presumably with separate counsel and separate representatives) must be created in order to satisfy Rule 23(a)(4).

Although the Supreme Court has held that class members sometimes can have interests that are too divergent to be represented by the same counsel and the same named plaintiffs under Rule 23(a)(4), the Court indicated such is the case *only* when there is a conflict of interest among class members or at least a divergence of interest that was structural in nature. In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), there was a conflict between class members who had already manifested injury and between class members who had not; the former wanted no inflation adjustment for settlement payments whereas the latter did. *Id.* at 626 ("[F]or the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."). Similarly, in *Ortiz v. Fibrebaord Corp.*, 527 U.S. 815 (1999), class members who were injured before the defendants' insurance expired had structurally stronger legal claims than those who were not. *Id*. at 857 ("Pre–1959 claimants accordingly had more valuable claims than post–1959 claimants, the consequence being a[n] instance of disparate interests within the certified class. While at some point there must be an end to reclassification with separate

counsel, [this] instance of conflict [is] well within the requirement of structural protection recognized in *Amchem.*" (citation omitted)).

A material intra-class conflict requiring subclassing does *not* exist "if: (1) the general interests of all class members are amenable to unified representation, and (2) no specific feature of the settlement sacrificed the interests of some class members to those of others." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 237 (5th Cir. Unit B 1982). This is exactly the situation here. There are no conflicts in the representation of Settlement Class Members who were all subject to the exact same High-to-Low Posting practice of Chase. The relief afforded to Settlement Class Members is precisely proportionate to the Overdraft Fees they suffered as a result of the challenged overdraft practices.

The Settlement correctly treats all Settlement Class Members the same, just as Chase subjected all of its consumer account holders to the same High-to-Low Posting practice in the same manner. Moreover, all Settlement Class Members were subject to the same overriding litigation risks of arbitration, federal preemption, and contract-based defenses grounded in Chase's account agreements, each of which could have eliminated the claims of each and every Settlement Class Member in their entirety. Balkanizing the unified Settlement Class into subclasses is not even remotely justified in this case.

As Professor Fitzpatrick explains, there are no competing or disparate interests at play here. *See* Supplemental Declaration of Brian T. Fitzpatrick ¶ 2, attached hereto as Exhibit A. According to Professor Fitzpatrick, the interests of Settlement Class Members who incurred the Overdraft Fees in 2003 and 2004 are aligned with those who incurred them in 2005-2010, and their claims are all of the same legal strength. *Id*. Indeed, the damage allocation formula utilized in this Settlement is *pro rata* based on the number of Overdraft Fees all Settlement Class

Members incurred as a result of High-to-Low Posting; thus, every Settlement Class Member – no matter when the Overdraft Fees were incurred – will receive the same *pro rata* compensation for every Overdraft Fee that qualifies for consideration based on the damage allocation formula set forth in the Settlement.

The only way the Settlement treats the 2003-04 Settlement Class Members differently is by requiring them to submit Claims documenting that they incurred qualifying Overdraft Fees during that limited portion of the Class Period. The only reason the Settlement requires Claims from those Settlement Class Members is because Chase does not have reasonably accessible electronic data to identify affected Settlement Class Members during the 2003-04 portion of the Class Period and/or to calculate their damages using the allocation formula set forth in the Settlement. The fact that some Settlement Class Members will have a greater burden than others with respect to the Claims procedure is neither a conflict of interest nor a structural divergence of interests and does not violate Rule 23(a)(4). *See* Fitzpatrick Supplemental Decl. ¶ 2. Even the cases cited by the objectors do not conclude otherwise. *See Dewey v. Volkswagen AG*, 861 F.3d 170, 187-90 (3d Cir. 2012) (finding conflict of interest because some class members received first dibs on settlement funds and other class members received only what was remaining); *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 251 & n.6 (2d Cir. 2011) (finding divergent interests because some class members had legally stronger claims than others).[6]

---

[6] The Wilkins' Objection argues that there is a debilitating conflict of interest between those Settlement Class Members who still have accounts with Chase and will benefit from the new "item cushion" practice change, and those Settlement Class Members who do not. *See* Wilkins' Objection at pp. 4-5. The gravamen of this complaint is that both groups of Settlement Class Members are being taxed "equally" for Class Counsel's fee award, despite the fact that the former group will benefit from Chase's changed practice whereas the latter group will not. *Id*. at p. 4. According to Professor Fitzpatrick, this is simply not the case. Both groups are asked to
*Footnote continued on next page*

### B.      The Residual *Cy Pres* Program Is Reasonable and Appropriate.

The Ramsey and Lindner Objections also contend that the possibility of *cy pres* awards are inappropriate because: (1) any leftover funds should be redistributed to Settlement Class Members who receive a first distribution (Ramsey Objection at pp. 2, 5-7) (DE # 3030); (2) the specific organizations that will receive any *cy pres* awards have not yet been selected (Ramsey Objection at pp. 3, 7-8) (DE# 3030); and (3) the organizations that will receive *cy pres* awards are not sufficiently tied to the purposes of this litigation (Lindner Objection at pp. 7-9) (DE # 3031). This argument is equally devoid of merit.

Professor Fitzpatrick opines that when there are leftover monies from a class action settlement, it is reasonable for the Court to do any number of things with it, including approving the distribution of the leftover money to organizations that will serve the purposes of the litigation. *See* Fitzpatrick Supplemental Decl. ¶ 3. According to Professor Fitzpatrick, the most important consideration in "small stakes" class actions, like this one, is deterrence, and deterrence is achieved so long as the defendant pays *someone* the appropriate amounts and the money not revert back to the defendant (as it does not here). *Id*. Also, there is nothing untoward about taking time to identify the specific organizations to receive any residual *cy pres* award, especially where – as here – it is highly unlikely that there will even be any significant residual amounts to be distributed. *Id*.    Here, the Parties agreed to distribute any leftover monies to organizations furthering "financial literacy education." *See* Settlement Agreement at ¶ 120.

---

*Footnote continued from previous page*
contribute to the fee award only in proportion to the benefits they will receive from the Settlement: because the former group will receive greater benefits from the Settlement (i.e., the changed practice as well as cash compensation), the requested 30% across-the-board fee means that the former group will contribute more to the fee award as well.  *See* Fitzpatrick Supplemental Decl. ¶ 2, n.1.

Although the specific organizations have not yet been identified, the Court will have the final say in approving or rejecting the proposed *cy pres* recipients. Indeed, the Court has already approved of this procedure in the Bank of America and Union Bank settlements.

Certain of the objectors state, without factual basis, that any residual *cy pres* distribution to "benefit consumer financial literacy education" does not satisfy any of the objectives sought by Class Counsel in this litigation and, further, will benefit Chase by "funneling funds into programs that will aid it in squeezing more money out of consumers." Lindner Objection at p. 9 (DE # 3031). Both assertions are specious. According to Professor Fitzpatrick, there is more than sufficient nexus between "financial literacy education" organizations and the consumer-protection nature of this litigation which, of course, is why the Court previously approved similar provisions for residual *cy pres* distributions in related MDL 2036 settlements. *See* Fitzpatrick Supplemental Decl. ¶ 3. The very case relied upon by these objectors supports this conclusion. *See Dennis v. Kellogg Co.*, --- F.3d ---, 2012 WL 3800230, at *7 (9th Cir. 2012). (suggesting that "appropriate *cy pres* recipients" in a consumer fraud case would be "organizations dedicating to protecting consumers from . . . false advertising").

    **C.**    **Awarding Fees Based on Cash and Changed Practices is Appropriate.**

Some objectors contend that it is inappropriate to award Class Counsel a portion of the value of both the changed practice through future savings and the cash recovered from Chase. *See* Ramsey Objection pp. 9-13 (DE # 3030); Gibson Objection at pp. 9-10 (DE # 3048); Treat Objection at p. 6 (DE # 3059). They are incorrect.

As Professor Fitzpatrick previously noted (DE # 3010-3) and reiterates again, this is one of several means Courts have at their disposal to reward class counsel for recovering non-cash benefits from a settling defendant. *See* Fitzpatrick Supplemental Decl. ¶ 4. This approach has been endorsed by numerous courts and the American Law Institute. *See Spartanburg Regional Health Service District, Inc. v. Hillenbrand Industries, Inc.* (D.S.C., No. 03-2141); *In re Sprint Corp. ERISA Litigation* (D.Kan., No. 03-2202); *Bynum v. Government of District of Columbia* (D.D.C., No. 02-956); *Desantis v. Snap-On Tools Co., LLC* (D.N.J., No. 06-2231); *Humphrey v. Hexion Specialty Chemicals, Inc.* (W.D.Ky, No. 06-276); *Stanton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003); Principles of the Law of Aggregate Litigation, § 3.13(b) (American Law Institute, 2010) ("[A] percentage of the fund approach should be the method utilized in most common-fund cases, with the percentage being based on both the monetary and nonmonetary value of the judgment or settlement.").[7]

Professor Fitzpatrick disagrees with the unsupported claims by some of the objectors that Settlement Class Counsel's and their expert's valuation of Chase's changed practice is too speculative to serve as the basis of a fee award. *See* Lindner Objection at p. 16 (DE # 3031); Treat Objection at p. 6 (DE # 3059). Professor Fitzpatrick opines that the valuation of the changed practice here is reliable because the information used for this valuation came directly from Chase and is based on an analysis of actual Overdraft Fees incurred by Settlement Class Members during the months immediately prior to Chase's implementation of this new practice. *See* Fitzpatrick Supplemental Decl. ¶ 4. Additionally, the valuation was confirmed by an

---

[7] Some of the objectors also cite the anti-coupon provisions of the Class Action Fairness Act of 2005 as a barrier to rewarding Class Counsel for the changed practices they negotiated with Chase. *See* Ramsey Objection at p. 12 (DE # 3030); Wilkins' Objections at p. 7. But this Settlement does *not* pay class members in coupons; it pays them in cash. Hence, these arguments are off the mark.

unrelated cost analysis Chase did in 2009 of the very same practice change; at that time, Chase placed an even larger figure on the potential practice change. *See* Settlement Agreement at ¶ 23. As such, there is no good faith basis for these objectors to claim that the estimated $52 million valuation was manipulated to generate a higher fee award.[8]  *See* Fitzpatrick Supplemental Decl. ¶ 4.

It appears that these objectors have confused the newly adopted and recently implemented changed practice for which Class Counsel are seeking fees (the "item cushion" whereby Chase is no longer charging Settlement Class Members Overdraft Fees on individual Debit Card Transactions of $5.00 or less) with another overdraft-related practice that Chase implemented in early 2010 shortly after this litigation began (the "balance cushion" whereby Chase eliminated Overdraft Fees if a customer's account was $5.00 or less overdrawn as of the close of a business day's transaction processing).  *See* Lindner Objection at pp. 16-17 (DE # 3031); Treat Objection at p. 5 (DE # 3059).

### D. A Fee of Thirty Percent of the $162 Million Common Fund is Reasonable.

Some objectors contend that the requested thirty percent (30%) fee award of the $162 million common fund created through this Settlement is out of line with percentages awarded in other cases. *See* Ramsey Objection at pp. 8-9 (DE # 3030); Gibson Objection at pp. 5-9 (3048); Wilkins' Objection at p. 9; Treat Objection at p. 4 (DE # 3059).  Professor Fitzpatrick strongly disagrees.  *See* Fitzpatrick Supplemental Decl. ¶ 5; *see also* Declaration of Thomas E. Scott ¶¶ 20, 25 (DE # 3010-7).

---

[8] One objection criticized the value of the changed practice because Chase is required to maintain the changed practice for only two years. *See* Treat Objection at pp. 5-6 (DE # 3059). Class Counsel have sought a fee award for the expected benefit to Settlement Class Members over this two-year period, not for any future benefit if Chase voluntarily extends the changed practice beyond the required two year minimum.

According to Professor Fitzpatrick, many of the objectors reach this erroneous conclusion because they do not rely on fair and representative samples of fee awards; they simply cite the awards most favorable to their arguments and ignore the awards that are less favorable. *See* Fitzpatrick Supplemental Decl. ¶ 5. When fee awards are examined scientifically rather than anecdotally – as Professor Fitzpatrick's empirical study did – it becomes clear that a thirty percent fee award on the $162 million value of the Settlement is reasonable here for the reasons noted in Professor Fitzpatrick's original declaration (DE # 3010-3) as well as the declaration of Judge Scott (Ret.) (DE # 3010-7). In fact, Professor Fitzpatrick's empirical study showed that thirty percent is actually the median percentage awarded by district courts in the Eleventh Circuit. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811, 836 (2010). Although some courts outside the Eleventh Circuit reduce fee percentages as settlement sizes increase, Professor Fitzpatrick found no evidence that courts in the Eleventh Circuit do so and, in fact, many district courts in the Eleventh Circuit have explicitly rejected this notion, and there are sound policy reasons not to do so. *See* Fitzpatrick Supplemental Decl. ¶ 5.

In *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion), U.S. District Judge Alan Gold held that decreasing a fee percentage solely in light of a large settlement:

> is *antithetical* to the percentage of the recovery method adopted by the Eleventh Circuit in *Camden*, the whole purpose of which is to align the interests of Class Counsel and the Class by rewarding counsel in proportion to the result obtained. By not rewarding Class Counsel for the additional work necessary to achieve a better outcome for the class, the sliding scale approach creates the perverse incentive for Class Counsel to settle too early for too little.

*Id*. at 1213 (emphasis added); *see also Williams v. General Elec. Capital Auto Lease*, 1995 WL 765266, at *10 (N.D. Ill. Dec. 16, 1995) ("Without significant counsel fees to encourage the pursuit of these claims, the public policy to induce compliance with the law would be disserved.").

Professor Fitzpatrick's original declaration demonstrated that the thirty percent fee sought by Class Counsel is within the range of fees typically awarded in similar cases. *See* Fitzpatrick Decl. ¶¶ 20-32 (DE # 3010-7). Judge Scott (Ret.) also identified multiple cases in this District that fully support the requested thirty percent fee, including three settlements previously approved by this Court as part of MDL 2036 (Bank of America, Union Bank, Bank of Oklahoma). *See* Scott Decl. ¶ 23 (DE # 3010-7).

### E. Under *Camden* I, the Court Should Not Undertake a Lodestar Analysis.

Some objectors contend that it would be unreasonable for the Court to award Class Counsel a fee award without first considering and checking their lodestar. *See* Ramsey Objection at pp. 10-13 (DE # 3030); Wilkins' Objection at pp. 7-8; Treat Objection at p. 7 (DE # 3059). Professor Fitzpatrick disagrees. *See* Fitzpatrick Supplemental Decl. ¶ 6.

The Eleventh Circuit has held that district courts should award fees in class actions using the percentage-of-the-fund method rather than the lodestar method.[9] Although some district

---

[9] Citing a case from a different jurisdiction, one objection contends that Florida law rather than federal law should govern the fee award in this case. *See* Wilkins' Objection at pp. 10-11 (citing *In re Volkswagen and Audi Warranty Extension Litigation*, 692 F.3d 4 (1st Cir. 2012)). This is a so-called "common fund" settlement (where the fee award will be paid from the fund created by the efforts of class counsel for the benefit of the class rather than from the defendant), and that case explicitly noted that its holding did not extend to such settlements. *See id.* at 16 ("[T]his is not a common fund or a common benefit case . . . ."). By contrast, cases in this jurisdiction make it clear that federal law applies. *See Allapattah Services, Inc. v. Exxon Corp.,* 454 F.Supp.2d 1185, 1200 (S.D.Fla. 2006) ("The district court presiding over a diversity-based class action pursuant to Fed. R. Civ. P. 23 has equitable power to apply federal common law in determining fee awards irrespective of state law.").

courts in the Eleventh Circuit "crosscheck" these fee percentages with class counsel's lodestar, many others do not (including this Court in the other MDL 2036 settlements). *See, e.g., David v. American Suzuki Motor Corp.,* 2010 WL 1628362 (S.D.Fla., April 15, 2010); *Noell v. Suncruz Casinos*, 2009 WL 541329 (M.D.Fla., March 04, 2009); *Stahl v. MasTec, Inc.,* 2008 WL 2267469 (M.D.Fla., May 20, 2008); *Allapattah Services, Inc. v. Exxon Corp.,* 454 F.Supp.2d 1185 (S.D.Fla. 2006); *In re: Managed Care Litigation, Class Plaintiffs v. Aetna Inc., and Aetna – US,* 2003 WL 22850070 (S.D.Fla., October 24, 2003); *Fabricant v. Sears Roebuck & Co.,* 2002 WL 34477904 (S.D.Fla., September 18, 2002).

The Eleventh Circuit has never held that district courts abuse their discretion by choosing not to employ a "lodestar crosscheck." Indeed, according to Professor Fitzpatrick, courts that do not use the lodestar crosscheck are on firmer footing than courts that do. *See* Fitzpatrick Supplemental Decl. ¶ 6. As scholars have explained, the lodestar crosscheck can effectively cap the amount of compensation class counsel can receive from a settlement and thereby blunt their incentives to achieve the largest possible award for the class. *See* Myriam Gilles & Gary Friedman, *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*, 155 U. Pa. L. Rev. 103, 140-45 (2006). As such, it can reintroduce the very same undesirable consequences of the lodestar method that the percentage-of-the-fund method was designed to correct in the first place. *See, e.g.*, *Camden I Condominium Ass'n v. Dukle*, 946 F.2d 768, 771-74 (11th Cir. 1991) (citing the lodestar method's difficulty to administer and failure to align class counsel's interests with the class's interests).

## IV.   CONCLUSION

Based on the foregoing, as well as Plaintiffs' and Class Counsel's Motion for Final Settlement Approval, the Court should overrule the objections and grant Final Approval to the

Settlement, approve Service Awards for the Plaintiffs, approve Class Counsel's application for attorneys' fees and expenses, and enter Final Judgment dismissing the Action with prejudice.

Dated: November 26, 2012.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No. 516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*


| | |
|---|---|
| /s/ E. Adam Webb | /s/ Michael W. Sobol |
| E. Adam Webb, Esquire | Michael W. Sobol, Esquire |
| Georgia Bar No. 743910 | California Bar No. 194857 |
| Adam@WebbLLC.com | msobol@lchb.com |
| Matthew C. Klase, Esquire | Roger N. Heller, Esquire |
| Georgia Bar No. 141903 | California Bar No. 215348 |
| Matt@WebbLLC.com | rheller@lchb.com |
| G. Franklin Lemond, Jr., Esquire | Jordan Elias, Esquire |
| Georgia Bar No. 141315 | California Bar No. 228731 |
| FLemond@WebbLLC.com | jelias@lchb.com |
| WEBB, KLASE & LEMOND, L.L.C. | LIEFF CABRASER HEIMANN & |
| 1900 The Exchange, S.E. |   BERNSTEIN L.L.P. |
| Suite 480 | Embarcadero Center West |
| Atlanta, GA 30339 | 275 Battery Street, 30th Floor |
| Tel: 770-444-9325 | San Francisco, CA 94111 |
| Fax: 770-444-0271 | Tel: 415-956-1000 |
| | Fax: 415-956-1008 |

<table>
<tr><td>

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas Bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

</td><td>

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592

</td></tr>
<tr><td>

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

</td><td>

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

</td></tr>
</table>

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties in the manner specified, including all objectors, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596