UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Steen v. Capital One, N.A.*
E.D. La. Case No. 2:10-cv-01505-JCZ-KWR
S.D. Fla. Case No. 1:10-cv-22058-JLK

STIPULATION AND [PROPOSED] ORDER
REGARDING PRODUCTION OF CUSTOMER TRANSACTIONAL DATA

1.     This Stipulation and [Proposed] Order Regarding Production of Customer Transactional Data ("Order") is hereby entered into between Plaintiffs and the Class in the above-referenced matter ("Plaintiffs") and Defendant Capital One, N.A. ("Capital One"), through their respective counsel of record.[1]  The purposes of this Stipulation is to: (a) define and clarify the scope of the customer transactional data that Capital One will make available for inspection by Plaintiffs in this matter, pursuant to Plaintiffs' Third Request for Production of Documents, as further negotiated and agreed upon through the meet and confer process; (b) identify the format, location and timing of making such data available for inspection; and (c) confirm the process of making the data available for inspection so appropriate measures are taken to protect the security of the non-public, personal financial data of Capital One's customers.

---

[1] By entering into this Stipulation, Capital One does not concede that the Court's Order certifying the Class (D.E. # 2920-1) was proper, and does not waive its right to seek review of that Order pursuant to Fed. R. Civ. Pro. 23(f).

2. Plaintiffs have requested from Capital One certain confidential customer financial information and data related to its customers' demand deposit accounts with Capital One and three legacy entities that were acquired by Capital One over the past several years: Hibernia Bank, North Fork Bank, and Chevy Chase Bank. The requested data includes certain non-public customer information. Plaintiffs have requested customer transactional data for all consumer demand deposit accounts that incurred multiple overdraft/NSF charges on a single day at least one time during the relevant time period (hereinafter, the "Multiple Overdraft Accounts"), and Capital One shall make such data available for inspection as set forth below. For purposes of this Order, and without Capital One conceding that these are the appropriate Class Periods in this case, the "relevant time period" for the respective entities is defined as follows:[2] for Capital One and legacy Hibernia Bank customers: May 18, 2000 through September 13, 2010;[3] and for legacy North Fork Bank customers: May 18, 2004 through September 13, 2010.[4] Following a reasonable and diligent investigation, Capital One represents that, as to both the customer transactional data requested by Plaintiffs for Capital One and legacy Hibernia Bank customers and the customer transactional data requested by Plaintiffs for legacy North Fork Bank customers, the requested customer transactional data is not available in Capital One's records and systems for certain portions of the relevant time period. As set forth below, Capital One is making available for inspection customer transactional data for those portions of the relevant time period for which the data is available from Capital One's records and systems.

---

[2] By entering into this Stipulation, Capital One does not concede that the statute of limitations periods used by Plaintiffs for purposes of selecting the relevant time periods for requested data are proper. Moreover, for purposes of this Order, the parties agree that consumer transactional data for legacy Chevy Chase Bank customers will not be subject to this Order, but will instead be the subject of a separate agreement between the parties and/or Order.

[3] Plaintiffs have computed this period as starting ten (10) years before the Complaint was filed (May 18, 2010) and continuing past the end of the Class Period (August 13, 2010) by thirty (30) days.

[4] Plaintiffs have computed this period as starting six (6) years before the Complaint was filed (May 18, 2010) and continuing past the end of the Class Period (August 13, 2010) by thirty (30) days.

3.      Following a reasonable and diligent investigation, Capital One represents that the customer transactional data requested by Plaintiffs and clarified through the meet and confer process is located in three primary repositories: (a) a mainframe report archive named Acquire; (b) a mainframe report archive named ROBOT; and (c) data kept in the company's Bank Data Warehouse, a Teradata enterprise database environment.

## CUSTOMER TRANSACTIONAL DATA

4.      Capital One represents that the requested customer transactional data is contained within the following data, as specified below for Capital One, legacy Hibernia Bank and legacy North Fork customers (collectively the "Transactional Data").

5.      For Capital One and legacy Hibernia Bank data, Capital One will make available for inspection the following Transactional Data for all consumer demand deposit accounts for the time periods specified:[5]

a.  Data from the following Acquire archive reports ("Acquire Reports"), from the start date available in Acquire in the relevant time period (per Capital One's representation), up through the end date specified below:

| Acquire Report | Description | Start date | End date |
| --- | --- | --- | --- |
| TISXC057 | Vector Exception data | 2008-01-14 | 2009-10-31 |
| V5DEC | Vector Five data | 2002-01-01 | 2009-05-07 |
| IM34IMTJ | Daily transaction journal | 2002-07-01 | 2009-10-31 |
| IM61 | Customer statements | 2002-01-02 | 2009-10-31 |
| IM61NF | Customer statements | 2008-03-10 | 2009-10-31 |
| IM61EMP | Customer statements | 2002-01-03 | 2009-10-31 |
| IM61NFEM | Customer statements | 2008-03-10 | 2009-10-31 |
| IM14TA | Transaction Code lookup | 2002-01-02 | 2009-10-31 |
| IM14PA | Posting Sequence lookup | 2002-01-02 | 2009-10-31 |
| IM31TRLS | Daily trial balance | 2002-01-02 | 2009-10-31 |
| MAR001 | ATM / POS transaction details | 2002-08-01 | 2009-10-31 |
| RMSBD111 | RMS data | 2002-12-30 | n/a |

---

[5] Capital One represents that, due to the way the Transactional Data is maintained in the bank's archives, it is not practicable to isolate and produce only data for Multiple Overdraft Accounts.

      b.    Data extracts from the following Bank Data Warehouse tables ("BDW Extracts") for the time period specified below:

| BDW Table | Description | Start date | End date |
|---|---|---|---|
| PBDW.IMPACS_TRXN_DETL | Transactions Posted | 2009-11-01 | 2010-09-13 |
| PBDW.IMPACS_PT | Account details - balance, overdraft limit | 2009-11-01 | 2010-09-13 |
| PBDW.BANK_ACCT_PT | Account details - account product code | 2009-11-01 | 2010-09-13 |
| PBDW.ATM_TRXN_DETL | Provides timestamp data for ATM transactions | 2009-11-01 | 2010-09-13 |
| PBDW.VECTOR_EXCPN_TRXN_DETL | Vector data contains decisions surrounding NSF/OD related transactions. | 2009-11-01 | 2010-09-13 |
| PBDW.RCVRY_ACCT_BC | Data from Recovery Management System | TBD | 2012-09-30 |
| PBDW.ACCT_FIN_BAL_CHRG_OFF_BC | Data from Recovery Management System | TBD | 2012-09-30 |
| PBDW.RCVRY_ACCT_FIN_BAL_BC | Data from Recovery Management System | TBD | 2012-09-30 |
| PBDW.RCVRY_ACCT_FIN_TRXN | Data from Recovery Management System | TBD | 2012-09-30 |
| PBDW.FIN_TRXN_TYPE | Look up table for transaction code descriptions | n/a[6] | n/a |
| PBDW.VECTOR_EXCPN_TYPE | Look up table for Vector Exception Types | n/a | n/a |
| PBDW.DEP_PROD | Look up table for product code information | n/a | n/a |
| UD228.EMD128_posting_priority | Look up table for posting priority of transaction codes | n/a | n/a |
| UD228. obt355_ve_FP_codes | Look up table for Force Pay transaction code coordination | n/a | n/a |

---

[6] Files that do not show a Start Date or End Date represent those for which only a single file would be provided. Unless explained otherwise, the information contained in these files will be applicable to the entire time period for which data is being provided.

4

6. For legacy North Fork Bank data, Capital One will make available for inspection the following Transactional Data for all consumer demand deposit accounts for the time periods specified:[7]

a. Data from the following ROBOT archive reports ("ROBOT Reports") from the start data available in ROBOT in the relevant time period (per Capital One's representation) up through the end date specified below:

| ROBOT Report | Description | Start Date | End Date |
|---|---|---|---|
| EF1000 | ATM OWNER TRANSACTION REPORT CARD OWNER TRANSACTIONS | 2004-10-22 | 2008-03-08 |
| TA0330 | TRIAL BALANCE | 2004-10-22 | 2008-03-04 |
| TA0320 | RESTRICTED ACCOUNT TRIAL BALANCE | 2004-10-22 | 2008-03-08 |
| TA0340 | TRANSACTION JOURNAL | 2004-10-22 | 2008-03-08 |
| TAPMATXL | TRANSACTION SYSTEM POINTS MATRIX | n/a | n/a |
| TAPOINTSL | DDA DAILY MATRIX POINTS | 2004-10-22 | 2008-03-08 |
| DDA840 | OVERDRAFTS AND DRAWING AGAINST UNCOLLECTED FUNDS | 2004-10-22 | 2008-03-08 |
| FT0335 | BTE DETAIL BALANCE REPORT | 2004-10-20 | 2008-03-08 |
| TA0181 | ON-LINE DECISION SUPPORT PAY/RETURN LIST | 2004-10-20 | 2008-03-08 |
| CB0310 | Transaction Product Listing | n/a | n/a |

**LOCATION, TIMING AND FORMAT OF MAKING TRANSACTIONAL DATA AVAILABLE**

7. Capital One shall make the Transactional Data available to Plaintiffs at an Escrow Facility that meets Capital One's Information Security assessment standards for the protection of customer, non-public information, in the Richmond, Virginia area. Plaintiffs agree to provide Capital One with two (2) days notice prior to its first visit at the Escrow Facility. Plaintiffs also agree to provide Capital One with the names of individuals that it plans to send to the Escrow Facility to be added to Authorized Personnel list maintained at the Escrow Facility.

---

[7] Capital One represents that, due the way the Transactional Data is maintained in the bank's archives, it is not practicable to isolate and produce only data for Multiple Overdraft Accounts.

5

8. Capital One will make the data available according to the following schedule:

| Entity | Data Type | Time Period |
|---|---|---|
| Capital One, legacy Hibernia and North Fork | BDW Extracts | Within 45 days after the date this Order is entered |
| Legacy North Fork | ROBOT Reports | Within 45 days after the date this Order is entered |
| Capital One, legacy Hibernia | Acquire Reports for the timeframe 2007-01-01 through 2009-10-31 | Within 75 days after the date this Order is entered |
| Capital One, legacy Hibernia | Acquire Reports for the timeframe 2004-01-01 through 2006-12-31 | Within 105 days after the date this Order is entered |
| Capital One, legacy Hibernia | Acquire Reports for the timeframe 2002-01-01 through 2003-12-31 | Within 120 days after the date this Order is entered (the "Final Production Date") |

9. The parties acknowledge that circumstances beyond the control of Capital One may arise that could impact Capital One's ability to produce the Transactional Data according to the schedule above, particularly efforts being undertaken by vendors to gather data. In the event that any such situations arise, Capital One agrees to promptly notify Plaintiffs of the anticipated delay, and the parties agree to engage in good-faith discussions to resolve the delays in an effort to avoid unnecessary motion practice.

10. All Transactional Data shall be produced by Capital One in text file format (either .txt or .csv files), unless otherwise agreed to by the parties. If any unforeseen technological issues arise with producing any data in either of these formats, Capital One shall promptly notify the Plaintiffs, and the parties agree to engage in good-faith negotiations to agree on a reasonable production format.

## CUSTOMER DATA SECURITY

11. Capital One's production of the Transactional Data pursuant to this Order shall be subject to the Confidentiality Agreement Pertaining to *Fourth Tranche* Actions dated September 15, 2011 (the "Confidentiality Agreement" attached hereto as Exhibit A), and incorporated herein by reference in its entirety. All Transactional Data produced pursuant to this Stipulation

6

shall automatically be designated as "Highly Confidential" pursuant to the terms of the Confidentiality Agreement, and shall be subject to the protections and limitations provided in the Confidentiality Agreement for material designated as "Highly Confidential" with the exception that, except as specifically set forth herein, the provisions for challenging confidentiality obligations in Paragraphs 18 and 19 of the Confidentiality Agreement shall not apply to the Transactional Data.

12. The parties agree that, should proceedings in the District Court in this action be stayed in their entirety for any reason, the obligations under this Stipulation and Order shall also be stayed. In the event of such a stay, all obligations under this Stipulation and Order shall resume immediately upon the end of such stay, and any time that has passed between the date of this Stipulation and Order and the date of entry of such stay shall be counted for purposes of calculating time periods or deadlines pursuant to this Stipulation and Order.

13. The Transactional Data may be used solely for purposes of this matter and may be disclosed by Plaintiffs' counsel only to their retained experts and consultants who have a need for such disclosure for purposes of their work in connection with this matter and who have been made aware of, and have agreed in writing to be bound by the Confidentiality Agreement.

14. No Capital One employees, counsel for Capital One or their staff, or anyone else acting on Capital One's behalf shall be allowed to access the room at the Escrow Facility during the time period that the Transactional Data is being analyzed by Plaintiffs, except with the written permission of Plaintiffs' counsel, in which case such access shall be supervised by Plaintiffs' counsel or their staff, retained experts, and/or consultants. If Capital One believes that a need has arisen for its employees, counsel or staff to access the room during a prohibited time, Capital One shall promptly notify the Plaintiffs, and the parties agree to engage in good-faith negotiations to agree on an approach regarding the requested permission.

15. The room at the Escrow Facility shall be accessible to Plaintiffs' counsel and their employees, retained experts, and consultants who sign an agreement to be bound by the Confidentiality Agreement.

16. Plaintiffs may bring into the room any hardware or software necessary to conduct their analysis, with the exception of modems or other devices with the capacity to broadcast outside the room. Any hard drives that Plaintiffs bring into the room shall be inventoried prior to use, shall be secured in the room by cable locks or such other means as to prevent their removal from the room, shall be subject to reasonable periodic serial number inventory checks by Capital One personnel or agents under the supervision of Plaintiffs' counsel and/or experts, and shall be accounted for and preserved by Plaintiffs' counsel in a secure location after completion. The hard drives will not be destroyed, tampered with or otherwise modified in any way until after the completion of the case upon agreement by both parties. Nothing in this paragraph shall give Capital One authority to view the content of such hard drives without Plaintiffs' consent.

17. Plaintiffs may further encode or encrypt their system so that no Capital One personnel or its agents will have access to Plaintiffs' work product. Capital One shall not "spy" on the work conducted by Plaintiffs in the Escrow Facility.

18. Plaintiffs and their experts shall not remove individual customer financial transaction data of any kind from the Escrow Facility room. However, if Plaintiffs wish to remove the details of a representative sample of exemplary transactions in a format in which the identity of the particular customer(s) cannot be identified, they may do so, provided they first provide Capital One with an opportunity to review the individual transaction data to be removed so as to confirm that the customer is not identifiable. Plaintiffs may remove from the room, without advance review by Capital One, (a) work product reflecting aggregate analyses based on the data so long as no customer-specific information is disclosed in, or can be ascertained from,

the removed material, and (b) encrypted lists of customers as to whom Plaintiffs' experts have made findings, provided that the names, account numbers, and other sensitive identifying information for those customers are not included within such lists.  Any such work product or other information that Plaintiffs remove from the clean room shall be designated "HIGHLY CONFIDENTIAL" under the Confidentiality Agreement, provided that with respect to any items within the scope of subsection (a) of this paragraph (i.e., work product reflecting aggregate analyses), the provisions for challenging confidentiality designations in the Confidentiality Agreement shall apply.

19. For security purposes, Capital One may replace customers' account numbers with other unique account identification numbers, as long as such identification numbers are unique for each account and consistent for all Transactional Data produced with respect to a particular account.

20. Plaintiffs and Capital One shall take reasonable steps to ensure that none of Plaintiffs' analysis of the data will be impacted and/or lost as a result of unforeseen hardware failures with respect to the data made available for inspection.

21. Capital One shall designate one of its outside counsel who shall be reasonably available to resolve technical and logistical problems that Plaintiffs and their experts/consultants may encounter in connection with accessing the Transactional Data in the Escrow Facility.

## COST SHARING

22. Capital One represents that it will incur significant expenses to gather the requested Transactional Data from the identified repositories and make it available for inspection as described above.  Capital One requested that the Plaintiffs share in these costs to make the requested data available.  Plaintiffs do not believe any such cost sharing is appropriate and have declined to share any such costs.  Capital One agrees to execute on the processes described

9

above to make the Transactional Data available, and to incur the costs thereof, but reserves the right to seek recovery of such costs should Capital One prevail in this litigation in whole or in part.  Plaintiffs reserve the right to oppose any such request.

Dated: November 28, 2012.

Respectfully submitted,

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire (Bar # 561861)
**GROSSMAN ROTH, P.A.**
2525 Ponce de Leon Boulevard, 11th Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596
*Coordinating Counsel for Plaintiffs*

/s/ James R. McGuire
James R. McGuire (*pro hac vice*)
**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA  94105
Tel:    415.268.7000
Fax:    415.268.7522
*Attorney for Defendant Capital One, N.A.*

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
**PODHURST ORSECK, P.A**.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
**BRUCE S. ROGOW, P.A.**
Broward Financial Center
500 East Broward Boulevard, Suite 1930
Fort Lauderdale, FL  33394

*Co-Lead Counsel for Plaintiffs*

/s    E. Adam Webb
Georgia Bar No. 743910
E. Adam Webb, Esquire
adam@webbllc.com
Mathew C. Klase, Esquire
Georgia Bar No. 141903
matt@webbllc.com
G. Franklin Lemond, Jr. Esquire
Georgia Bar No. 141315
flemond@webbllc.com
**WEBB, KLASE & LEMOND, L.L.C**.
1900 The Exchange, S.E., Suite 480
Atlanta, GA 30339

/s/   Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Bruce W. Steckler, Esquire
Texas bar No. 00785039
bsteckler@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
**BARON & BUDD, P.C.**
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX 75219

/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
**GOLOMB & HONIK, P.C.**
1515 Market Street, Suite 1100
Philadelphia, PA 19102

 s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
**LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.**
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
**LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.**
250 Hudson Street, 8th Floor
New York, NY  10013

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
**TRIEF & OLK**
150 E. 58th Street, 34th Floor
New York, NY 10155

11

## **ORDER APPROVING STIPULATION**

The foregoing Stipulation is approved and adopted as an Order of the Court at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida this _____ day of _____ 2012.

_____
**JAMES LAWRENCE KING**
**UNITED STATES DISTRICT JUDGE**
**SOUTHERN DISTRICT OF FLORIDA**

Copies furnished to:
Counsel of Record