## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Dasher v. RBC Bank (USA)*
S.D. Fla. Case No. 1:10-CV-22190-JLK

*Avery v. RBC Bank*
E.D.N.C. Case No. 5:10-cv-329

### ORDER DENYING MOTION TO COMPEL ARBITRATION

**THIS CAUSE** comes before the Court on Defendant RBC Bank (USA)'s Renewed

Motion to Compel Arbitration (DE # 1929).  Oral Argument was held on December 13, 2012.

I.     **Background.**[1]

This Court previously denied a motion to compel arbitration filed by RBC Bank (USA)

("RBC").  (DE # 763).  During the pendency of RBC's appeal of that Order, the parties agreed to

vacate the Order and remand the case for this Court to consider the decision in *AT&T Mobility*

*LLC v. Concepcion*, 131 S. Ct. 1740 (2011).  Following remand, RBC filed its Renewed Motion

to Compel Arbitration (DE # 1929) and Plaintiffs filed their Response in Opposition (DE # 2020)

along with a Motion to Defer Ruling, seeking leave to conduct limited, arbitration-specific

---

[1] A full procedural history of both *Dasher* and *Avery* can be found in RBC's Renewed Motion to
Compel Arbitration.  (DE # 1929, pp. 2-6).

discovery (DE # 2021). This Court granted Plaintiffs permission to conduct discovery. (DE # 2191). After the conclusion of discovery, the parties submitted supplemental briefing on the pending motion (DE # 3008, 3009, 3016, 3017).[2]

In their supplemental briefing, Plaintiffs assert that there is no longer an arbitration clause in their account agreement. (DE # 3008, pp. 1-5). Specifically, Plaintiffs contend that as a result of the acquisition of RBC Bank by PNC Financial Services Group, Inc. ("PNC") and the bank's issuance in March 2012 of a comprehensive new deposit agreement – which does not require, or even mention, arbitration – the former RBC deposit agreement became ineffective. *Id.* RBC disputes this argument, contending that the arbitration requirement from the former RBC deposit agreement still governs, notwithstanding the fact that it was superseded in March 2012. (DE # 3017, pp. 2-8). RBC asserts that under applicable law, the subsequent PNC agreement, which does not contain an arbitration provision, did not supersede, repeal, or eliminate the broad arbitration provision in the prior RBC agreement between the parties because (1) the RBC agreement contemplated that the arbitration provision would survive as to transactions conducted thereunder in the event that RBC was acquired by another bank or the RBC agreement was terminated; (2) all of Plaintiffs' arbitrable claims were asserted against RBC (not PNC) and arose out of the RBC agreement (not the PNC agreement); and (3) there is no explicit language in the PNC agreement retroactively waiving arbitration rights that had accrued and vested under the RBC agreement.

The Court agrees with Plaintiffs' argument and, therefore, denies the Renewed Motion to Compel Arbitration for the reasons set forth herein.

---

[2] The parties also submitted notices of supplemental authority and responses thereto. (DE # 3089, 3090, 3091, 3096).

## II.  Discussion.

The Federal Arbitration Act ("FAA") embodies a strong policy in favor of enforcing valid arbitration agreements. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000). Under the FAA and North Carolina law, a court may only compel arbitration if it finds (i) a valid written agreement to arbitrate exists, and (ii) that the dispute falls within the scope of the agreement. *D.P. Solutions, Inc. v. Xplore-Tech Servs. Private Ltd.*, 710 S.E.2d 297, 299-300 (N.C. Ct. App. 2011); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) ("parties will not be required to arbitrate when they have not agreed to do so").  "The question of whether a dispute is subject to arbitration is an issue for judicial determination." *D.P. Solutions*, 710 S.E.2d at 299-300; *Revels v. Miss Am. Org.,* 599 S.E.2d 54, 59 (N.C. Ct. App. 2004).

"[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – but only those disputes – that the parties have agreed to submit to arbitration." *Evangelistic Outreach Ctr. v. Gen. Steel Corp.*, 640 S.E.2d 840, 843 (N.C. Ct. App. 2007); *Levin v. Alms & Assocs., Inc.*, 634 F.3d 260, 266 (4th Cir. 2011).  To determine whether parties have an agreement to arbitrate, courts must review the operative agreement.  *D.P. Solutions*, 710 S.E.2d at 300; *Rodgers Builders, Inc. v. McQueen,* 331 S.E.2d 726, 731 (N.C. Ct. App. 1985).

"Parties to an arbitration must specify clearly the scope and terms of their agreement to arbitrate." *Emmanuel AME Church v. Reynolds Constr. Co., Inc.*, 718 S.E.2d 201, 203 (N.C. Ct. App. 2011); *Sloan Fin. Group, Inc. v. Beckett,* 583 S.E.2d 325, 330 (N.C. Ct. App. 2003). Moreover, under North Carolina law, "[t]he party seeking arbitration bears the burden of proving the parties mutually agreed to the arbitration provision." *Emmanuel*, 718 S.E.2d at 203; *Harbour Point Homeowners' Ass'n, Inc. v. DJF Enters., Inc.*, 688 S.E.2d 47, 50 (N.C. Ct. App. 2010); *see*

*also Seaboard Coast Line R.R. Co. v. Trailer Train Co.*, 690 F.2d 1343, 1348 (11th Cir. 1982); *Int'l Underwriters AG v. Triple I: Int'l Inv.*, 533 F.3d 1342, 1348 (11th Cir. 2008) (same).

Under the FAA, there is a presumption favoring arbitrability which can only be negated expressly or by clear implication. *Integrated Security Servs. v. Skidata*, 609 F. Supp. 2d 1323, 1326 (S.D. Fla. 2009) (citing *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFL-CIO*, 430 U.S. 243, 255 (1977)). Under the FAA, the party opposing enforcement of the arbitration agreement bears the burden of proving that the claims are not subject to arbitration. *Green Tree*, 531 U.S. at 91-92. Given the strong federal policy in favor of arbitration, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983).

## A.    Is There An Agreement To Arbitrate?

RBC does not dispute that in March of 2012 it sent all existing RBC customers, including Plaintiffs, *PNC's Account Agreement for Personal Checking, Savings and Money Market Accounts* (hereinafter "PNC Agreement"). The PNC Agreement does not require arbitration.

According to the language of the PNC Agreement, "by using the account, by requesting or later adding products and/or services connected to the account, you agree to be bound by the terms and conditions of this Agreement." *See* PNC Agreement, p. 1. RBC does not dispute Plaintiffs' showing that they continued to use their accounts. Therefore, according to Plaintiffs, the new terms and conditions, which do not require arbitration, are effective and govern the issue before the Court.

As part of its argument that the arbitration clause in the prior RBC deposit agreement should control, the bank points to the paragraph of the RBC agreement titled "Effect of Termination." This paragraph provides:

4

> Transactions initiated prior to the effective date of termination of the Agreement will not be affected by the termination. Transactions initiated prior to termination will continue to be subject to the terms and conditions of the Agreement. Your indemnification and other payment obligations to us, including your obligation to pay fees and other charges, will survive termination of the Agreement, as will any other provisions in the Agreement that are by their terms or inherent nature intended to survive a termination.

*See* RBC Agreement, p. 8 (DE # 1929-1). According to RBC, this provision requires a finding that the arbitration clause in the RBC Agreement is still effective even though RBC has been acquired by PNC and that Plaintiffs are required to arbitrate.

In support of this premise, RBC relies upon cases including, *inter alia*, *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionary Workers Union, AFLCIO*, 430 U.S. 243, 255 (1977), and *Integrated Security Services, Inc. v. Skidata, Inc.*, 609 F. Supp. 2d 1323, 1326 (S.D. Fla. 2009) (King, J.). The Court finds these cases distinguishable. In *Nolde Brothers*, there was a collective bargaining agreement between the bakery and its union workers that provided that any grievance arising between the parties was subject to arbitration. 430 U.S. at 245. After the agreement was terminated, a dispute over severance pay arose. *Id.* at 247. The Supreme Court held that the dispute over severance pay was arbitrable. *Id.* at 251-55.

Similarly, in *Integrated Security*, this Court addressed whether the termination of an agreement had any bearing on the right to arbitrate a dispute. 609 F. Supp. 2d at 1326 n. 5. This Court, relying on *Nolde Brothers*, found that termination of a contract has no bearing on the right to arbitrate under the agreement. *Id.*

In this case, however, the Court concludes that there has not been a termination of the agreement between RBC and Plaintiffs. Rather, the bank chose to impose a comprehensive new deposit agreement that governs their entire relationship. *See generally* PNC Agreement (the cover page reflects "For: RBC Bank© Converted Customer Accounts" and "the transfer of your

5

deposit accounts to PNC Bank, National Association will take place immediately over the weekend of March 2, 2012"); p. 11, ¶ 3 ("you agree to be bound by the terms and conditions of this Agreement"); p. 11, ¶ 4 ("All PNC Bank checking, savings and money market accounts are subject to this Account Agreement"). The RBC Agreement had previously made clear that "the most current version of the Agreement supersedes all prior versions and will at all times govern your Account(s), and that your continued use of any Account after the effective date of any changes or new/revised version constitutes your agreement to be bound by the terms thereof." *See* RBC Agreement, pp. 1-2. Thus, the facts of this case bear no similarity to the cases finding arbitration enforceable after an agreement is terminated.

RBC contends that silence in the PNC Agreement about the issue of whether the arbitration provision in the RBC Agreement continues means that the arbitration provision in the RBC Agreement continues to be effective with respect to Plaintiffs claims. Though RBC cites cases in support of its arguments, the Court concludes that the facts of the case bear no similarity to the cases cited by RBC. The situation before the Court is more akin to the facts in *Dottore v. Huntington National Bank*, 2010 WL 3861010 (N.D. Ohio Sept. 28, 2010), *aff'd* 480 Fed. Appx. 351 (6th Cir. May 4, 2012). In *Dottore*, from 2003 to 2005 the plaintiff and the bank operated under an account agreement that contained an arbitration clause. 2010 WL 3861010, at *2. In 2005, the bank provided the plaintiff with a new account agreement. *Id.* It was a completely new agreement, titled "YOUR DEPOSIT ACCOUNT TERMS AND CONDITIONS." *Id.* The new version of the account agreement did not contain an arbitration clause. *Id.*

The bank moved to compel arbitration, relying on the prior account agreement. *Id.* In response, the plaintiff argued that there was no agreement to arbitrate the dispute because the operative account agreement no longer contained an arbitration provision. *Id.* at *4. The district

court concluded that the parties did not have an agreement to arbitrate and denied the bank's motion because the operative account agreement "[did] not include any arbitration provision, and [did] not refer to any previously existing agreements." *Id.* Therefore the court found "there is simply no agreement between the parties to arbitrate this dispute." *Id.*

The Sixth Circuit Court of Appeals affirmed this finding in *Dottore v. Huntington National Bank*, 480 Fed. Appx. 351, 353 (6th Cir. May 4, 2012), holding: "No enforceable arbitration agreement exists between the parties because the 2005 [] document governs the account and it does not include an agreement to arbitrate." Other decisions have affirmed that arbitration clauses can be changed or even added during the contractual relationship of the parties. *E.g., Daniel v. Chase Bank USA, N.A.*, 650 F. Supp. 2d 1275, 1288-90 (N.D. Ga. 2009) (enforcing arbitration in credit card agreement where "[t]he original Cardmember Agreement contain[ed] no arbitration clause but state[d] that the agreement [could] be amended at any time," and the bank later "mailed . . . amendments containing arbitration provisions to plaintiff"); *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 576-78 (W.D.N.C. 2000) (ban on class arbitrations retroactively applied based on continued use); *Williams v. MetroPCS Wireless,* 2010 WL 1645099, at *6 (S.D. Fla. Apr. 21, 2010) (plaintiff bound by terms of new arbitration clause because she had access to her service plan and thereafter continued to pay her bills); *Enderlin v. XM Satellite Radio Holdings, Inc.,* 2008 WL 830262, at *6-8 (E.D. Ark. Mar. 25, 2008).

Here, the current agreement governing Plaintiffs' accounts no longer contains an arbitration clause. *See generally* PNC Agreement. The Court finds that this 45-page agreement is comprehensive and, as in *Dottore*, does not incorporate prior versions. *Id.* Therefore, the Court concludes that there has not been a termination of the RBC Agreement, but rather an amendment of that agreement through PNC's issuance of a new account agreement that does not

contain an arbitration requirement.   Such an amendment is permitted under the language contained in the former RBC Agreement, and any such amendment supersedes all prior versions according to the plain language of the bank's form contracts.

RBC also contends that the "Assignment" paragraph within the RBC Agreement supports its argument that the old arbitration clause still governs this dispute.  This paragraph provides:

> We may transfer or assign our rights and obligations under the Agreement in whole or in part without notice to or approval by you . . . . Subject to the foregoing, the terms and conditions of the Agreement will be binding upon and inure to your benefit and our benefit as well as the benefit of your permitted successors and assigns and our successors and assigns.

*See* RBC Agreement, p. 10.  The Court is not persuaded.  Although PNC did assume all of RBC's rights and responsibilities under the deposit agreement, it later chose to voluntarily replace that contract with the new PNC Agreement.  Both the new PNC Agreement and the former RBC Agreement specifically provide that the most recent versions of a deposit agreement "supersede[] all prior versions" and that by using the account "you agree to be bound by the terms and conditions of this Agreement."  *See* RBC Agreement, p. 1; PNC Agreement, p. 11. Therefore, the assignment language relied upon by RBC is inapposite.

The PNC Agreement, which superseded the RBC Agreement does not require the parties to arbitrate their disputes.  Thus, the Court finds that there is no agreement to arbitrate.

**B.**    **Enforceability Of The Former RBC Arbitration Clause.**

The Court has concluded there is not a valid, written agreement to arbitrate.  Therefore, the Court does not need to determine whether the arbitration agreement contained in the superseded RBC Agreement is enforceable under North Carolina law based on the alternative arguments advanced by Plaintiffs in opposition to the Renewed Motion to Compel Arbitration.

### III.     Conclusion.

The Court finds that there is no longer an agreement to arbitrate.  Accordingly, after a careful review of the record, and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** that RBC's Renewed Motion to Compel Arbitration be, and the same is hereby, **DENIED**.

**DONE and ORDERED** in Chambers at the James Lawrence King Federal Courthouse in Miami, Florida, this 11th day of January, 2013.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc:  All Counsel of Record