FILED by _CBR_ D.C.

JAN 29 2013

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S. D. of FLA. – MIAMI

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**ENJOINED PARTIES RICHARD D. McCUNE AND McCUNEWRIGHT, LLP'S
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO
DISSOLVE TEMPORARY RESTRAINING ORDER AND OPPOSITION TO
PRELIMINARY INJUNCTIVE RELIEF**

**I**

**INTRODUCTION**

In the *In Re: Checking Account Overdraft Litigation*, MDL No. 2036, (hereinafter "MDL

2036"), Co-lead Counsel, Aaron Podhurst and  Bruce Rogow, through a filing by Plaintiff

Executive Committee Member Stuart Grossman (hereafter collectively referred to as "Lead

Counsel"), obtained from this Court on an emergency *ex parte* basis, without notice to any of the

affected parties, a temporary restraining order that "Richard McCune, the law firm

McCuneWright LLP (hereinafter the "Enjoined Parties"), and all others are hereby enjoined from

taking any action relating to the allocation of fees in MDL 2036, or the action of Lead Counsel in

connection therewith, in any court or forum other than the United States District Court for the

Southern District of Florida."  The Court issued this twelve page order on the same day as Lead

Counsel filed their motion under seal and, other than a few handwritten changes, adopted the

proposed order submitted by Lead Counsel.

The Court's Temporary Restraining Order was in error.  It contradicted the Court's own prior ruling on this exact same issue in this same proceeding, entered on December 9, 2011.  (Order Denying Petitions for Intervention, D.E. # 2206, Ex. 1.)  It makes conclusions of fact and law that are not supported and are in error.  The Court ordered this TRO on an *ex parte* basis, even though there was no imminent harm and the Court could have fashioned the relief, if any, after notice and an opportunity to be heard.  Finally, even if the Court was inclined to order the TRO, it failed to narrowly tailor a remedy to prevent the alleged harm.

For each of these reasons, the Enjoined Parties request that this Court vacate the Temporary Restraining Order and deny Lead Counsel's motion for preliminary injunction.

## II

## ARGUMENT

**A.     Lead Counsel Improperly Failed to Provide the Court with Its Prior Rulings for Proceeding with Disputes Relating to the Allocation of Fees**

In the fourteen pages of its Order, the Court provides conclusions of law drafted as a proposed order by Lead Counsel that discuss a myriad of cases that are cobbled together to support a finding that all fee allocation disputes arising from fees issued in MDL 2036 must be litigated through this Court.  However, Lead Counsel failed to provide this Court with the most relevant and on point citation – **this Court's own prior ruling on this exact same issue in this exact same case.**  That prior order was not even referenced in the Court's order.  It appears that the Court relied in good-faith that Lead Counsel would provide the Court with the relevant orders and findings when moving on an expedited, *ex parte* basis.  It erred in assuming this fact.

This Court has previously ordered in a clear and unambiguous way, at the request of Lead

Counsel, that fee allocation disputes *were not in the purview of this Court's responsibilities, and*

*should be resolved by a separate and distinct lawsuit in a competent jurisdiction*, to wit:

> The Court's primary responsibility under the mandate from the
> Multi-District Litigation Panel is to supervise the discovery and
> motion practice phases of the Plaintiffs' alleged class as they have
> been pled in the various Complaints and Amended Complaints and
> Answers involving over 30 separate banking institutions to the
> point where they can be resolved at trial.  The issue is whether or
> not these banking institutions have violated any laws pertaining to
> re-sequencing of their customers' debit card transactions.
> **Attorney disputes over the division of fees to which they may**
> **or may not be entitled as a result of this litigation, whether it**
> **be between a defendant bank and its attorneys or individual**
> **attorneys representing Class Members, is not within the**
> **purview of this judge's responsibility.  Those types of disputes**
> **can, and in the opinion of this Court, should be resolved in a**
> **separate lawsuit (assuming it cannot be amicably resolved) in a**
> **competent jurisdiction authorized to resolve this separate and**
> **distinct dispute."**

(Order Denying Petitions for Intervention, D.E. # 2206, Ex. 1, at p. 4 (emphasis added).)

However, in the prior order, Lead Counsel was advocating on behalf of this Court

*denying* the moving parties' request to have the fee allocation issue decided by this Court,

presumably because Lead Counsel believed it was in their personal financial interest not to have

the subject matter of that litigation before this Court at that time.  Here, it appears that Lead

Counsel believe the opposite; that it would be in their best financial interest to have the subject

fee dispute before this Court and advocated the exact opposite position relating to whether this

Court should be involved in fee allocations.

Nevertheless, that did not alleviate them from their duty to cite to the Court its prior

order, especially when Lead Counsel moved in such a way as to avoid this being a contested

hearing.  In taking this action, Lead Counsel did a grave disservice to this Court.  Obviously, in

this very complex MDL involving over thirty banks, dozens of different cases, over three thousand docket entries, and hundreds of orders, it is asking a lot of the Court to remember all the orders it had previously entered.  However, that does not excuse very savvy and experienced Lead Counsel that had over ten days to prepare the emergency *ex parte* motion and obviously were aware of this prior order and their duty to provide it to the Court in connection with the motion at issue.

B.      **Richard McCune, the Law Firm of McCuneWright, LLP, and All Others Cannot Properly be Enjoined from Filing State Court Actions Regarding Disputes Over Fee Allocations**

As previously discussed, the TRO is directly contrary to this Court's prior order.  As a result of that prior order, there is at least one active action proceeding in state court[1] relating to the issue of fee allocation resulting from MDL 2036.  In its prior ruling, the Court specifically ordered the Raponi & Hunter case to proceed in state court rather than before this Court pursuant to this Court finding that these fee allocation disputes were not within this Court's purview or responsibility and should be decided in state court actions.  Further, the actions of this Court and Lead Counsel make clear that this Court expected fee disputes to be litigated in separate litigation.  Included within those actions was the Court not requiring Lead Counsel to provide it with the allocation of fees between counsel; the Court not requiring Lead Counsel to provide the Court with agreements, if any, that were in place that affected the allocation of fees; provide

---

[1] Raponi & Hunter Abogados, a foreign professional association, Osvaldo A. Raponi, an individual, and Jaime E. Hunter, an individual vs. Alters Morelli Ratner, P.A., a Florida professional association f/k/a Alters Law Firm, P.A., a Florida professional association f/k/a Alters, Boldt, Brown, Rash, Culmo, P.A., a Florida professional association, Jeremy W. Alters, an individual, Bruce S. Rogow, P.A., a Florida professional association, and Bruce S. Rogow, an individual, filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, Circuit Civil Division, Case No. 11-43671CA06.

4

lodestar information to the Court or other counsel; or provide a mechanism for disputing fee allocation before the distribution of the fees.

The rationale provided by the Court in its order when Lead Counsel wanted fee allocation disputes decided outside this Court, before they decided they wanted the instant fee allocation dispute before this Court, should prevail.  That was an order crafted by the Court as opposed to the adoption of the proposed order provided by Lead Counsel in the TRO at issue.

Further, even if the Court's TRO was not directly in contradiction of its prior order, the leading case on this issue, buried by Lead Counsel in a footnote, *Burr & Forman v. Blair*, 470 F. 3d 1019 (11th Cir. 2006), is instructive.  In *Burr*, the Court in a complex mass tort class action found that The Anti-Injunction Act serves as a check on the broad authority recognized by the All Writs Act, 28 U.S.C. § 1651, and under the Anti-Injunction Act, an injunction halting a state court proceeding is inappropriate except as narrowly permitted by Congress.  The Court found that:

> The simple fact that the district court in the present case entered a judgment implementing a settlement and retained jurisdiction over the settlement fund did not, standing alone, render the Injunction 'necessary in aid of its jurisdiction.'  For an injunction properly to issue, the matter in controversy in the federal court proceeding must be 'the virtual equivalent' of a controversy over disputed res in an *in rem* proceeding *and* the state court proceeding must constitute a threat to the federal court's resolution of that controversy.

*Burr & Forman v. Blair*, 470 F.3d at 1032.

The Court in *Burr* then found that the contract lawsuit was not an *in rem* proceeding, and accordingly, a state court action could not be enjoined.

In this footnote discussion of the leading case, Lead Counsel informed the Court that the *Burr* case involved damages, and that McCune's complaint is seeking only declaratory and

injunctive relief.  Lead Counsel failed to inform the Court that the McCune complaint is in fact a breach of contract action that does, in fact, seek damages.  That fact is not buried in the complaint.  It is in the heading of the complaint and specifically listed throughout the complaint.

While Lead Counsel cite to other distinguishing factors between the McCune complaint and the *Burr* case, the decision to mislead the Court by failing to inform the Court that the McCune complaint contains breach of contract claims and damages is improper, as this omitted similarity with the *Burr* case results in a conclusion that the Court improperly enjoined McCune's state court action.

Finally, the exception to the "protect and effectuate its judgment" exception (the so called "re-litigation exception") to the Anti-Injunction Act does not apply here.  This Court had not issued any prior orders on the allocation of the attorney fees between counsel, and had in fact specifically ruled that such a ruling was outside of the Court's responsibilities and should be handled in separate state court litigation.  Accordingly, McCune's proposed state court litigation cannot be found to be re-litigating the issue so as to fall within the re-litigation exception.

**C.   Lead Counsel Improperly Obtained Ex Parte Relief from the Court**

Richard McCune provided Lead Counsel with the draft complaint on January 9, 2013, and notified Lead Counsel it would not file the complaint for one week (until January 16, 2013).  Upon the request of Lead Counsel on Friday, January 11, 2013, McCune provided Lead Counsel with a further extension of one week (through January 23, 2013).   On January 18, 2013, nine days after receiving the draft complaint, and *five days before the complaint was to be filed*, Lead Counsel obtained from this Court an *ex parte* TRO without any notice whatsoever to the Enjoined Parties.  The basis for the *ex parte* provided to the Court, and adopted by the Court in

its Order, was that "providing notice and an opportunity to be heard would allow McCune to foil the relief sought and cause the irreparable injury" by filing the draft complaint.

Moving *ex parte* was improper and the Court erred in granting the TRO without notice and an opportunity to be heard.  The failure of Lead Counsel to provide the Court with its prior order is exactly the reason that important contested issues should have each side represented at the hearing.  It is outrageous to contend, and for this Court to find, that if Lead Counsel had set a hearing for a TRO enjoining the filing of the draft complaint in state court, that Richard McCune and McCuneWright, LLP, would have nonetheless filed the complaint in state court before the TRO hearing.  That would not have happened and Lead Counsel knows that it would not have happened.

As lead counsel knew then and knows now, Richard McCune and McCuneWright, LLP, had no intention of circumventing or contravening any orders of this Court by filing the a civil action to resolve a fee dispute in another court, but rather, were fully complying with this Court's express prior order as to the procedures to be followed for resolving such fee disputes.  Indeed, it was Lead Counsel that desired an *ex parte* hearing so they could obtain this TRO without the Court being made aware of its prior ruling on fee allocation or allowing the Enjoined Parties to be heard.  The Court erred in going along with Lead Counsel.  Moreover, the Court erred in allowing Lead Counsel to circumvent the Federal Rules of Civil Procedure.

Rule 65 of the Federal Rules of Civil Procedure is clear on when notice does not have to be given of a temporary restraining order:

> Rule 65(b) Temporary Restraining Order
>
> (1)     Issuing Without Notice.  The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorneys only if:

       (A)    Specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

       (B)    The movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65.  The TRO in this case did not come under either exception.  The requirements set forth in Rule 65 must be strictly complied with to obtain *ex parte* relief, and an application for a temporary restraining order must be denied where there is no certification to the Court in writing of the efforts, if any, to notify the adverse party.

Here, Lead Counsel did not comply with Rule 65 and, had they informed the Court of McCune's agreement to extend the filing of the draft complaint, it is clear that there was absolutely no reason to grant the TRO on an *ex parte* basis without notice to McCune.

**D.**    **The Court Improperly Made Findings of Fact**

The Court erred in adopting Lead Counsel's proposed order regarding certain findings of facts.  Specifically, the Court took no evidence on what responsibilities McCune contends he performed entitling him to fees and, accordingly, could not make a finding that "McCune was assigned certain limited responsibilities by Co-Lead Counsel in this MDL."

The Court also grossly erred in finding that "McCune's intent to file a state court lawsuit in California is in direct contravention" of the Court's prior orders, when, as discussed *infra*, McCune's stated intention to file a state court law suit was in direct compliance with the Court's prior, and only, ruling on fee allocation disputes, where it stated:  "These type of [fee allocation] disputes can, and in the opinion of this Court, **should be resolved in a separate lawsuit (assuming it cannot be amicably resolved) in a competent jurisdiction authorized to resolve this separate and distinct dispute.**"  (Order Denying Petitions For Intervention, D.E. # 2206, at p. 4 (emphasis added).)

8

E.      **Granting the TRO on the Basis of Attorney-Client Privilege Was in Error**

Lead Counsel contend, and the Court has adopted, that settlement discussions about fees are privileged and confidential and cannot be disclosed.  First, because Lead Counsel chose to proceed without notice, they did not inquire as to whether Mr. McCune intended to file the draft complaint under seal.  If they had chosen to respond to Mr. McCune's providing them with the courtesy of a draft complaint through reasonable dialogue, as requested by Mr. McCune, any potential issue of contested privilege could have been resolved through meet and confer or through the filing of the complaint under seal.

But Lead Counsel instead chose to seek a TRO without notice and then proceeded to publish information about Mr. McCune's position regarding fee allocations that they contend are privileged when it relates to Lead Counsel's.  It is difficult to understand how Lead Counsel can, on the one hand, publish the amount in fees the Enjoined Parties are seeking from correspondence seeking resolution of this matter while at the same time contending, on the other hand, that its own statements made in non-mediated fee allocation meetings are privileged.

However, putting aside the consistency and waiver issues, the proposed order, which was adopted by the Court, did not cite any authority that providing counsel's general listing of work performed on a settled case as part of a fee application or dispute could be construed as violating attorney-client communication.  In contrast, many courts require that such information be put before the Court as part of the fee approval process.  Now being given an opportunity to respond, the Enjoined Parties can provide the Court with authority that these discussions are not privileged.

In *BASF Agro B.V. v. Cipla Ltd.*, 2012 WL 3070941 (M.D. Georgia July 25, 2012), the defendant was ordered to pay attorney's fees to the plaintiff for violation of the court's order

concerning an injunction.  The defendant brought an emergency motion to compel unredacted

attorneys' fees invoices from the plaintiff.  The plaintiff had provided the defendant with heavily

redacted invoices so that the defendant and the court could not determine what work was

performed by the plaintiff.  The plaintiff claimed that disclosing the specific tasks it performed

on the case would violate the attorney-client and attorney work product privileges.  *Id.* at *1.

      In granting the motion to compel unredacted copies of the attorney invoices, the court

held that:

> [The plaintiff] argues that the fee invoices are protected by the
> attorney-client privilege and constitute protected work product.
> The general rule, however, is that the receipt of attorneys' fees is
> not a privileged matter.  *In re Grand Jury Matter No. 91-01386*,
> 969 F. 2d 995, 997 (11th Cir. 1992).  Beyond [the plaintiff's]
> blanket assertion that the fee invoices are privileged and protected
> work product, [he] has made no attempt to demonstrate that each
> particular entry is protected by either the attorney-client privilege
> or the work product privilege.  Accordingly, at this point, [the
> plaintiff] has failed to demonstrate that any of the entries are
> protected.  Moreover, it is unlikely that any future attempt by [the
> plaintiff] would be successful.  The Court cannot conceive of any
> justification for seeking fees for particular legal work and yet not
> being required to describe in reasonable detail the nature of the
> work for which compensation is sought.

*Id.* at *3.

      In *Dzwonkowski v. Dzwonkowski*, 2008 WL 2163916 (S.D. Ala. May 16, 2008), the court

found the defendants' fee motion insufficient because they invoked the attorney-client privilege

and/or work product doctrine to shield the court's review of the billing records/invoices.  The

court held that the defendants "may not assert entitlement to a monetary benefit on the one hand,

and then hide behind a claim of privilege on the other."  *Id.* at *17 (citing *O'Neal v. United

States*, 258 F. 3d 1265, 1276 (11th Cir. 2001), which holds that "[i]ndeed it is the law of this

circuit that information involving receipt of attorneys' fees from a client is not generally

privileged.")  The court concluded that "[i]t is doubtful that the substantiation of legal fees in this case would reveal confidential information, and Defendants have not provided this Court evidence to the contrary." *Id.; see also Jin Zhi Lt. LLC v. American Zurich Ins. Co.*, 2009 WL 289913, *6 (S.D. Fla. Sept. 9, 2009) ("The burden is upon the applicant for fees to submit detailed documentation that will assist the court in determining the amount of fees to properly and reasonably award.  The fee applicant must provide the Court with specific and detailed evidence that will allow the Court to accurately determine the amount of fees to be awarded.")

Finally, even if the Court continues to find that this subject matter *is* privileged, it has an obligation to fashion the narrowest remedy practicable when enjoining a party via an *ex parte* TRO from acting.  *Rosenstiel v. Rosenstiel*, 278 F. Supp. 794, 803 (S.D.N.Y. 1967) (a temporary restraining order, having been granted ex parte, must be construed most strictly against the party seeking to punish the adverse party); *see also Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County*, 415 U.S. 423, 444 (1974) ("[O]ne basic principle built into Rule 65 is that those against whom an injunction is issued should receive fair and precisely drawn notice of what the injunction actually prohibits").

In this case, a fair and narrowly tailored TRO would be one that limits Mr. McCune and McCuneWright, LLP, from disclosing what the Court finds to be confidential or privileged information; not a TRO that prohibits filing the draft complaint entirely in a court of competent jurisdiction.

**F.      Granting the TRO on the Basis of Privileged Settlement Discussions Was in Error**

Lead Counsel contend, and the Court has adopted, that settlement discussions about the work done by the Enjoined Parties as it relates to the work performed by Lead Counsel and the allocation of fees are privileged client communications and cannot be disclosed.  First, because

Lead Counsel chose to proceed Ex Parte, they did not inquire as to whether this complaint was going to be filed under seal. If they had chosen to respond to Mr. McCune's courtesy of providing them with advance notice of the complaint he intended to file through reasonable dialogue, any potential issue of contested privilege could have been resolved through a meet and confer process and through the filing of the complaint under seal, if necessary.

However, putting aside that issue, the proposed order submitted to the Court, which was adopted by the Court, did not cite any authority that attorneys' non-mediated discussions of the proper allocation of fees is privileged confidential communication. The Enjoined Parties contend that discussions with Lead Counsel about the allocation of attorney fees is not subject to Federal Rules of Civil Procedure, Rule 408 (Compromise Offers and Negotiations), or Florida Statute 90.408 (Compromise and Offers to Compromise). The discussions between Mr. McCune and Lead Counsel were not settlement discussions. The meetings were informal discussions about the allocation of fees in MDL 2036 generally and were focused on the work that McCune performed that contributed to the class action settlements.

Finally, even if the Court continues to find that these discussions are privileged, it can admit such evidence for another purpose, such as proving bias or prejudice. Fed. R. Civ. P. 408(b). The Enjoined Parties contends that all of the informal discussions it had with Lead Counsel were not privileged settlement discussions and, even if they arguably were privileged, they are admissible to prove Lead Counsel's bias and prejudice in distributing attorney fees from MDL 2036.

At the hearing, Lead Counsel argued to the Court that information in the draft complaint, if revealed to the Defendant Banks would cause irreparable harm to the Class by potentially affecting future settlements. Lead Counsel failed to articulate with any specificity which

allegations in the draft complaint would have this potential effect.  A review of the draft complaint establishes that the complaint, in fact, does not reveal any communications between counsel for Plaintiff Classes and counsel for Defendant Banks.  It did not reveal the content or substance of any settlement discussions between Plaintiff Classes and Defendant Banks nor did it reveal any methodologies or legal theories upon which such settlements were based or may be based in the future.  Finally, to the extent Lead Counsel can articulate how such harm could occur, the solution is for the complaint to be filed under seal in a court of competent jurisdiction, not to enjoin the filing of the complaint in its entirety, in accordance with this Court's prior order.

## III

## CONCLUSION

For the reasons described above, the Enjoined Parties requests that the Court vacate the TRO entered on January 18, 2013.

Dated:  January 29, 2013.

Respectfully submitted,

McCUNEWRIGHT, LLP

By: _____

Richard D. McCune
California Bar No. 132124
rdm@mccunewright.com

McCUNEWRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA  92374
Tel:  (909) 557-1250
Fax:  (909) 557-1275

*Attorney for Enjoined Parties*

# EXHIBIT "1"

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

### ORDER DENYING PETITIONS FOR INTERVENTION

On November 5th and 6th, 2011, two separate law firms, and several individual attorneys filed, as citizens of Argentina licensed to practice law in Argentina, motions to intervene in the above-styled case pending in this court. (*See* D.E. #2083, 2084). The motions and supporting memoranda rely upon Fed. R. Civ. P. 24[1] as the basis for intervention for the purpose of receiving notice and participating in the allocation and distribution of attorneys' fees, costs and expenses of the Settlement Fund established by this Court in its Order of November 22, 2011 approving the settlement between Bank of America, N.A. and Plaintiff Class and creating a 30% award to Class Counsel for attorneys' fees and costs. (D.E. #2150).[2]

Rule 24 requires a showing that (1) the petition is timely, (2) the petitioner has an interest relating to the transaction which is the subject of the action, (3) the petitioner "is so situated that disposition of the action, as a practical matter, may impede or impair his

---

[1] *See* Fed. R. Civ. P. 24(a)(2) ("On timely motion, the court must permit anyone to intervene who ... claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.").

[2] *See* Order of Final Approval of Settlement, ¶ 6 (D.E. #2150, at 58) ("[A]ward[ing] Class Counsel attorneys' fees and costs in the amount of 30% of the Settlement Fund net of the expenses in paragraph 82(a-c),(e-h) of the Agreement.").

EXHIBIT 1

ability to protect that interest," and (4) the petitioner's "interest is represented inadequately by the existing parties to the suit." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). To intervene as a matter of right, the proposed intervenor must demonstrate that it has a "direct, substantial and legally protectable" interest in the subject matter of the action. *Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (quotations marks and citation omitted). This Court has held that "a legally protectable interest is an interest that derives from a legal right;" it must be "something more than an economic interest." *Id.* (quotation marks and citation omitted).

Claimants' petitions for intervention, filed prior to the November 7, 2011 Final Approval Hearing, assert that a contractual dispute has arisen between Claimants and certain counsel of record for Plaintiff Class regarding the distribution of whatever fund the Court ultimately resolved as being just and fair compensation to be paid by Bank of America to Plaintiffs' Executive Committee and those lawyers representing the Plaintiff Class. Claimants appeared through counsel at hearings held on October 5, 2011 for consideration of a special master to assist the Court in resolving the attorneys' fee fund award and on November 7, 2011 to hear from all Plaintiff Class Member objectors opposing the settlement between Bank of America and Plaintiff Class. Several of those objectors to the settlement raised the issue of how the fund, once ultimately determined by the Court, would be distributed among Plaintiff Class lawyers. The transcript reflects that the Court declined to become involved with what it perceived to be a collateral issue unrelated to the Court's responsibility of (a) determining the fairness of the settlement, and (b) fixing a Fund to be utilized for the payment of fees, costs and expenses. *See* Hearing Tr., at 53:15-17 (D.E. #2134).

**EXHIBIT 1**

The Court does not perceive its responsibility to oversee this massive overall litigation to include adjudication and determination of private, contractual disputes between non-parties and non-attorneys of record over the division of fees from the overall Fund created for the benefit of Plaintiff Class. Class Counsel has represented the Plaintiff Class since the actions were initiated in 2008 and 2009[3] and upon reaching the Settlement Agreement and Release Agreement for their benefit. The Settlement Agreement explicitly provides that an award can only be disbursed by the settlement escrow agent if (1) that order is not appealed by an objector, and (2) Settlement Class Counsel have jointly agreed upon a plan of allocation of fees, costs and expenses among all Class Counsel. *See* Settlement Agreement and Release, ¶ 104 (D.E. #1471-1).

Claimants concede that they have never represented any member of Plaintiff Class and do not assert any agreement with any party to this *Bank of America* case.[4] Indeed, the merits of Claimants' asserted fee-sharing agreements are currently being litigated in two pending state court actions. *See Campos* Complaint (D.E. # 2083-1, at 6-7); *see also Alters Law Firm, P.A. v. Raponi & Hunter, Abogados*, No. 2011-32861-CA-30 (Fla. Jud. Cir. Miami-Dade County). Claimants' interests are thus entirely contingent upon the outcome of those lawsuits. Moreover, if Claimants wish to obtain information concerning the eventual fee allocation from the *Bank of America* settlement, assuming it does not otherwise become public in this Court, they can seek it through discovery in the

---

[3] *See Tornes, et al. v. Bank of America, NA.*, S.D. Fla. Case No. 1 ;08-cv-23323-JLK, Y*ourke, et al. v. Bank of America, N.A.*, S.D . Fla. Case No. 1 :09-cv-21963-JLK, *Phillips, et al. v. Bank of America, NA.*,S.D. Fla. Case No. 1 :10-cv-24316-JLK.

[4] *See* Campos Petition at 3 ("Campos' interests ... relate to ... fees recovered through ALF") (D.E. #2083); *see also* R&H Petition, Exhibit 1 at 3 (D.E. # 2084-1).

**EXHIBIT 1**

state court actions. Likewise, if Claimants are successful in state court, they have all the remedies available in state court to enforce that judgment.

In sum, Claimants have no dispute with any with any party to this case (i.e., either any defendant bank or any class or individual plaintiff); their dispute arises out of alleged conduct by attorneys or law firms *who are not parties in this case.* Without a dispute with any Plaintiff or Defendant in this case, Claimants do not have a right to intervene and participate in the allocation of attorneys' fees in this case.

The Court's primary responsibility under the mandate from the Multi-District Litigation Panel is to supervise the discovery and motion practice phases of the Plaintiffs' alleged class as they have been pled in the various Complaints and Amended Complaints and Answers involving over 30 separate banking institutions to the point where they can be resolved at trial.  The issue is whether or not these banking institutions have violated any laws pertaining to re-sequencing of their customers' debit card transactions. Attorney disputes over the division of fees to which they may or may not be entitled as a result of this litigation, whether it be between a defendant bank and its attorneys or individual attorneys representing Class Members, is not within the purview of this judge's responsibility.  Those types of disputes can, and in the opinion of this Court, should be resolved in a separate lawsuit (assuming it cannot be amicably resolved) in a competent jurisdiction authorized to resolve this separate and distinct dispute.  It is therefore,

**ORDERED, ADJUDGED and DECREED** the petitions for intervention filed by Campos Y Asociados a/k/a Adrian Campos, P.A. and Adrian Campos, (**D.E. # 2083**),

EXHIBIT 1

and Raponi & Hunter Abogados, Osvaldo A. Raponi and Jaime E. Hunter, (**D.E. # 2084**), be, and the same are hereby **DENIED**.  It is further,

ORDERED, ADJUDGED and DECREED that the subsequently filed Motion to File Under Seal, dated December 2, 2011, and seeking leave to file various contracts between Claimants and other attorneys allegedly being material to the issues raised by the foregoing denied Motions for Intervention be, and the same is hereby **DENIED AS MOOT**.  The Clerk of the Court be and is hereby directed to return to counsel all documents furnished by the parties submitting them under seal on December 2, 2011. It is further,

ORDERED, ADJUDGED and DECREED that the Motions for Oral Argument submitted by Claimants (**D.E. #2164, 2187**) on November 23, 2011 and December 2, 2011 be, and the same are hereby **DENIED AS MOOT**.

**DONE and ORDERED** in chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 8th day of December, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record

**EXHIBIT 1**

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2013, I sent the original of **Enjoined Parties Richard D. Mccune and McCuneWright, LLP's Memorandum of Points and Authorities in Support of Motion to Dissolve Temporary Restraining Order and Opposition to Preliminary Injunctive Relief** for filing with the Court and served true and correct copies of said documents on the interested parties to this request, through their counsel of record, causing said copies to be delivered via Electronic Mail delivery addressed as follows:

Aaron S. Podhurst, apodhurst@podhurst.com
Peter Prieto, pprieto@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

Bruce S. Rogow, brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL 33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

Robert C. Gilbert, rcg@grossmanroth.com
Stuart Z. Grossman, szg@grossmanroth.com
David Buckner, dbu@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

14

I further certify that, I anticipate the Clerk of Court, using the CM/ECF system, will send notice of the hardcopy filing to all counsel of record, including counsel listed above, by operation of the Court's electronic filing system and all parties may access this filing through that system.

Dated:  January 29, 2013.    McCUNEWRIGHT, LLP

By: _____

Richard D. McCune
California Bar No. 132124
rdm@mccunewright.com
McCUNEWRIGHT, LLP
2068 Orange Tree Lane, Suite 216
Redlands, CA  92374
Tel:  (909) 557-1250
Fax:  (909) 557-1275