UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
THIRD TRANCHE ACTIONS

*Duval v. Citizens Financial Group, Inc.*
N.D. Ill. Case No. 1:10-cv-00533
S.D. Fla. Case No. 1:10-cv-21080-JLK

*Daniels v. Citizens Financial Group, Inc.*
D. Mass. Case No. 1:10-cv-10386
S.D. Fla. Case No. 1:10-cv-22014-JLK

*Blankenship v. RBS Citizens, N.A.*
D.R.I. Case No. 1:10-cv-00163
S.D. Fla. Case No. 1:10-cv-22942-JLK

PLAINTIFFS' AND CLASS COUNSEL'S RESPONSE TO OBJECTIONS
TO MOTION FOR FINAL APPROVAL OF SETTLEMENT AND CLASS
APPLICATION FOR SERVICE AWARDS AND ATTORNEYS' FEES

After more than two years of hard-fought litigation, Class Counsel negotiated the Settlement Agreement and Release ("Settlement" or "Agreement") with Defendants Citizens Financial Group, Inc. (now known as RBS Citizens Financial Group, Inc.), RBS Citizens, N.A. and Citizens Bank of Pennsylvania (collectively, "Citizens" or the "Bank").[1] The Settlement – which consists of a cash Settlement Fund in the amount of $137,500,000, plus Citizens' payment

---

[1] All capitalized defined terms have the same meanings ascribed in the Settlement Agreement and Release attached as Exhibit A to Plaintiffs' and Class Counsel's Motion for Final Approval of Settlement, and Application for Service Awards, Attorneys' Fees and Expenses (DE # 3159).

of all fees and costs associated with the Notice Program and administration of the Settlement (estimated to exceed $1,500,000), and a change of the order in which Citizens' posts Debit Card Transactions from highest-to-lowest dollar amount to chronological order based on date and time stamp information provided to the Bank – is an outstanding achievement that will provide immediate benefits to more than two million Settlement Class Members without further risks, delays and costs. The overwhelming majority of Settlement Class Members do not have to do anything to receive the benefits provided by the Settlement; they will receive their settlement consideration through automatic account credits or by checks. A small minority of Settlement Class Members, for whom Citizens does not have reasonably accessible data to permit Settlement Class Counsel's expert to identify them or to automatically calculate their damages pursuant to the allocation formula set forth in the Agreement, have the opportunity to file Claims seeking a distribution from the Settlement under the same allocation formula being used for their fellow Settlement Class Members. Approximately two million Settlement Class Members received direct mail Notice of the Settlement. The Notice approved by the Court used plain language to inform Settlement Class Members about, *inter alia*: (1) the terms of the Settlement; (2) the choices available to them – exclude themselves, object, or participate in the Settlement – including applicable deadlines and how to exercise those options; and (3) the Final Approval Hearing.

## I.     OVERVIEW OF THE OBJECTIONS

Out of more than two million Settlement Class Members, only ten (10) objections to the Settlement were timely filed by or on behalf of individuals purporting to be Settlement Class Members. (DE # 2745, 3093, 3156, 3196, 3212, 3213, 3221, 3227, 3240, 3241). Two (2) of the objections were filed by lawyers who have made a career out of objecting to class action

settlements.  (DE # 3196, 3227).  Such objectors, known as "serial" or "professional" objectors, have raised the ire of federal courts, including this Court, for playing no positive role in class action litigation and contributing no benefit to the class.  The other eight (8) objections were filed by *pro se* individuals (DE # 2745, 3093, 3156, 3212, 3213, 3221, 3240, 3241).

Ten objections out of over two million Settlement Class Members is particularly telling.[2]  It evidences overwhelming support for Plaintiffs' and Class Counsel's Motion for Final Approval of the Settlement, and Application for Service Awards, Attorneys' Fees and Expenses.[3]  This extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

All of the objections lack merit.  Most are riddled with misunderstandings of the Settlement and basic class action jurisprudence.  Several are substantially identical to objections previously filed by the same professional objectors to other MDL 2036 settlements.  *Not a single objector submitted an expert affidavit or provided any evidence undermining the conclusions reached by Class Counsel and their nationally recognized experts that (i) this Settlement achieves an outstanding result for the Settlement Class, and (ii) Class Counsel's application for fees is reasonable*.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998) (affirming final approval of nationwide class action settlement where "[t]he objectors presented no evidence" to support their arguments).

---

[2] The average number of objections to settlements of consumer class actions is 233.  In a settlement of this magnitude, the Court should expect to receive around 760 objections to the Settlement (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery).  *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529 (2004).

[3] In addition, the extremely low number of requests for exclusion (74 as of January 31, 2013) demonstrates overwhelming support for the Settlement.

For the reasons discussed below, Plaintiffs and Class Counsel respectfully request that the Court (1) overrule the objections; (2) grant Final Approval to the Settlement; (3) approve the request for Service Awards to the Plaintiffs; (4) approve Class Counsel's application for attorneys' fees and expenses; and (5) enter Final Judgment dismissing the Action with prejudice.

## II.   THE PROFESSIONAL OBJECTIONS SHOULD BE STRICKEN OR SUMMARILY DENIED

Attorney Steve Miller and his co-counsel filed an objection on behalf of Kathleen Connors, Marsha F. Appling-Nunez, Sue Wright and Karol Peralta (collectively, the "Connors' Objection"). (DE # 3227). Mr. Miller is a serial objector who makes a living filing objections to class action settlements. *See, e.g.*, *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, MDL No. 1532, DE # 1175 at n.22 (D. Me. Apr. 13, 2011) (rejecting Mr. Miller's "specious" arguments); *In re Am. Int'l Grp., Inc. Sec. Litig*. No. 04-cv-08141-DAB, DE # 663, 664 (S.D.N.Y. Oct. 1, 2012) (Mr. Miller withdrew his appeal of an order rejecting his objections to a settlement, without having provided any benefit to class). Mr. Miller is also known for filing objections in different cases on behalf of the same "clients." *See, e.g.*, *Blessing v. Sirius XM Radio Inc.*, No. 09-cv-10035, DE # 167 (S.D.N.Y. Sept. 14, 2011); *In re Lawnmower Engine Horsepower Marketing & Sales Practices Litig.*, MDL No. 1999, DE # 272 (E.D. Wis. June 22, 2010); *Nakash v. nVidia Corp.*, No. 08-cv-04312-JW, DE # 325 (N.D. Cal. Jan. 14, 2011); *In re Mattel, Inc. Toy Lead Paint Prods. Liab. Litig*, MDL No. 1897, DE # 194 (C.D. Cal. Feb. 19, 2010); *CLRB Hanson Inds., LLC v. Google, Inc.*, No. C 05-03649 JW PVT, DE # 326 (N.D. Cal. July 10, 2009).

Mr. Miller and his co-counsel previously filed virtually identical objections to three other MDL 2036 settlements. (DE # 2133, 3031, 3032). Last week, Mr. Miller and his co-counsel

filed yet another virtually identical objection in connection with the settlement with Commerce Bank that is pending final approval as part of MDL 2036. (DE # 3247).

In addition to its lack of substantive merit, the Connors' Objection does not even comply with the basic requirements set forth in the Preliminary Approval Order. (DE # 2959). Not surprisingly, the Connors' Objection fails to provide the information required by paragraphs 87(f)-(k) of the Agreement, including information regarding objections filed by Mr. Miller and his co-counsel in other class action cases. *See* Connors' Objection at p. 1. (DE # 3227). The Connors' Objection is defective and should be stricken based on the failure to comply with the Preliminary Approval Order.

An objection was filed by attorney Brian M. Silverio, on behalf of Sandra Busser (the "Busser Objection"). (DE # 3196). Mr. Silverio is another serial objector who filed similar objections to the settlements with Bank of America and JPMorgan Chase previously approved in MDL 2036. (DE # 1922, 3030). Like Mr. Miller and his cohorts, Mr. Silverio is attempting to exact a fee in exchange for the withdrawal of his objection.

As this Court and several others have determined, serial objectors such as Messrs. Miller and Silverio, who hold up large class action settlements for a payout, perform no constructive role in class action litigation. "[M]ost if not all . . . are motivated by things other than a concern for the welfare of the Settlement Class." *Tornes v. Bank of America, N.A.*, 830 F. Supp. 2d 1330, 1361 n.30 (S.D. Fla. 2011) (King, J.). Such lawyers make their living "simply by filing frivolous appeals and thereby slowing down the execution of settlements." *Barnes v. FleetBoston Fin. Corp.*, 2006 U.S. Dist. LEXIS 71072, at *3-4 (D. Mass. Aug. 22, 2006). Their "sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch on to" and levying "what is effectively a tax on class action settlements, a tax that has no benefit to anyone

other than to the objectors." *Tornes*, 830 F. Supp. 2d at 1361 n.30 (quoting *Barnes*, 2006 U.S. Dist. LEXIS 71072, at *3-4). For this reason, "federal courts are increasingly weary of professional objectors." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).

Given who is behind these two objections, they should be accorded little, if any, weight by the Court.

### III.   ALL THE OBJECTIONS SHOULD BE OVERRULED ON THE MERITS

#### A.   The Interests of Settlement Class Members Are Not Divergent or in Conflict and Do Not Require Subclasses.

Three objections essentially contend that the interests of Settlement Class Members are too divergent to satisfy the adequacy of representation requirement under Fed. R. Civ. P 23(a)(4). *See* Busser Objection at pp. 2-4 (DE # 3196); Raux Objection (DE # 3212); Mier Objection (DE # 3213). This argument is devoid of merit.

The so-called divergent interests claimed by these objections are between the overwhelming majority of the two million-plus Settlement Class Members who incurred the Overdraft Fees as a result of High-to-Low Posting during the Class Period of January 1, 2002 through August 13, 2010, and a small minority of Settlement Class Members who were former customers of certain banks acquired by Citizens and incurred Overdraft Fees as a result of High-to-Low Posting during the limited Claims Period dates identified in paragraph 32 of the Agreement (the "Paragraph 32 Settlement Class Members"). The Settlement requires the small minority of Paragraph 32 Settlement Class Members to submit Claims documenting that they incurred qualifying Overdraft Fees during that limited portion of the Class Period, because Citizens does not have reasonably accessible electronic data that would enable Settlement Class

Counsel's expert to identify those affected Settlement Class Members or automatically calculate their damages using the allocation formula set forth in the Settlement.

The objectors contend that because the small group of Paragraph 32 Settlement Class Members must submit Claims supporting their damages in order to seek distributions from the Settlement Fund relating to the Claims Period,[4] while the overwhelming majority of Settlement Class Members need not do so because they have been identified and their damages automatically calculated through use of Citizens' electronic data, the interests of the two groups are too divergent for Class Counsel and the Plaintiffs to represent them simultaneously. Instead, these objectors contend that subclasses must be created to satisfy Rule 23(a)(4).

Although the Supreme Court has held that class members sometimes can have interests that are too divergent to be represented by the same counsel and the same named plaintiffs under Rule 23(a)(4), the Court indicated such is the case *only* when there is a conflict of interest among class members or at least a divergence of interest that was structural in nature. In *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997), there was a conflict between class members who had already manifested injury and between class members who had not; the former wanted no inflation adjustment for settlement payments whereas the latter did. *Id.* at 626 ("[F]or the currently injured, the critical goal is generous immediate payments. That goal tugs against the interest of exposure-only plaintiffs in ensuring an ample, inflation-protected fund for the future."). Similarly, in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999), class members who were injured before the defendants' insurance expired had structurally stronger legal claims than those who were not. *Id*. at 857 ("Pre–1959 claimants accordingly had more valuable claims than

---

[4] As with all other Settlement Class Members, the Paragraph 32 Settlement Class Members will also receive Automatic Distributions from the Settlement Fund if they experienced Positive Differential Overdraft Fees during the Class Period outside of the Claims Period dates. *See* Agreement ¶ 106.

post–1959 claimants, the consequence being a[n] instance of disparate interests within the certified class. While at some point there must be an end to reclassification with separate counsel, [this] instance of conflict [is] well within the requirement of structural protection recognized in *Amchem.*" (citation omitted)).

A material intra-class conflict requiring subclassing does *not* exist "if: (1) the general interests of all class members are amenable to unified representation, and (2) no specific feature of the settlement sacrificed the interests of some class members to those of others." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 237 (5th Cir. Unit B 1982). This is exactly the situation here. There are no conflicts in the representation of Settlement Class Members who were all subject to the exact same High-to-Low Posting practice of Citizens. The relief afforded to Settlement Class Members is precisely proportionate to the Overdraft Fees they suffered as a result of the challenged overdraft practices.

The Settlement properly treats all Settlement Class Members the same, just as Citizens subjected all of its consumer account holders to the same High-to-Low Posting practice in the same manner. Moreover, all Settlement Class Members were subject to the same overriding litigation risks of federal preemption and contract-based defenses grounded in Citizens' account agreements, each of which could have eliminated the claims of each and every Settlement Class Member in their entirety. Balkanizing the unified Settlement Class into subclasses is not even remotely justified in this case.

As Professor Geoffrey Miller explained, the Alternative Claims Process "is a reasonable solution available to address the limitations on the Bank's data and ensure the right of settlement class members to share in the settlement proceeds." *See* Declaration of Geoffrey Miller ¶¶ 22, 36. (DE # 3159-3). The interests of the relatively small number of Settlement Class Members

for whom Citizens does not maintain sufficient data in reasonably accessible format to permit their identification or the automatic calculation of their damages are aligned and of the same legal strength with the overwhelming majority of Settlement Class Members for whom Citizens maintains such data to permit their identification and the automatic calculation of their damages. *See* Supplemental Declaration of Professor Brian Fitzpatrick ¶ 2 (DE # 3074-1).[5]  Indeed, the damage allocation formula utilized in this Settlement is *pro rata* based on the number of Overdraft Fees all Settlement Class Members incurred as a result of High-to-Low Posting; thus, every Settlement Class Member – no matter when the Overdraft Fees were incurred – will receive the same *pro rata* compensation for every Overdraft Fee that qualifies for consideration based on the damage allocation formula set forth in the Settlement.

The *only* way the Settlement treats the small minority of Paragraph 32 Settlement Class Members differently is by requiring them to submit Claims documenting that they incurred qualifying Overdraft Fees during that limited portion of the Class Period.  The *only* reason the Settlement requires Claims from those Settlement Class Members is because Citizens does not have reasonably accessible electronic data to enable Settlement Class Counsel's expert to identify affected Settlement Class Members who were former customers of certain banks that Citizens' acquired during the limited Claims Period dates or to automatically calculate their damages.  The fact that some Settlement Class Members will have a greater burden than others with respect to the Claims procedure is neither a conflict of interest nor a structural divergence of interests and does not violate Rule 23(a)(4). *See* Miller Declaration ¶ 36 (DE # 3159-3); *see also* Fitzpatrick Supplemental Decl. ¶ 2 (DE # 3074-1).  The cases cited by one of the objectors do

---

[5] Professor Fitzpatrick's Supplemental Declaration was filed in response to similar objections raised in opposition to the recently-approved settlement with JPMorgan Chase Bank, N.A. (DE # 3134).  The same principle addressed by Professor Fitzpatrick in response to certain Chase objectors applies here.

not conclude otherwise. Busser Objection at p. 2 (DE # 3196). *See Dewey v. Volkswagen AG*, 681 F.3d 170, 187-90 (3d Cir. 2012) (finding conflict of interest because some class members received first dibs on settlement funds and other class members received only what was remaining); *In re Literary Works in Electronic Databases Copyright Litigation*, 654 F.3d 242, 251 & n.6 (2d Cir. 2011) (finding divergent interests because some class members had legally stronger claims than others).

### B. The Residual *Cy Pres* Program Is Reasonable and Appropriate.

Three objections contend that the possibility of residual *cy pres* awards are inappropriate because: (1) any leftover funds should be redistributed to Settlement Class Members who receive a first distribution; *see* Busser Objection at pp. 4-6 (DE # 3196); Kalp Objection at p. 3 (DE # 3241); (2) the specific organizations that will receive any residual *cy pres* awards have not yet been selected or identified; *see* Busser Objection at pp. 4-6 (DE # 3196); Connors' Objection at pp. 4-5 (DE # 3227); and (3) the organizations that will receive residual *cy pres* awards are not sufficiently tied to the purposes of this litigation. *See* Connors' Objection at pp. 4-5 (DE # 3227). These contentions are without merit.

It is important to emphasize that 100% of the Net Settlement Fund (defined in paragraph 120 of the Agreement) will be distributed to Settlement Class Members who had a Positive Differential Overdraft Fee and did not timely opt out, and to Settlement Class Members whose Claims are approved by the Settlement Administrator. *See* Agreement ¶ 119. There are no funds being "held back" or "reserved" for purposes of a *cy pres* distribution.

Distributions to Settlement Class Members who are Current Account Holders will generally be made through automatic credits to their accounts. *See* Agreement ¶ 125. Thus, there should be no residual funds remaining from the portion of the Net Settlement Fund

automatically credited to the accounts of Current Account Holders. The Agreement also provides that checks will be mailed to certain Current Account Holders where it is not feasible to credit their accounts, and to Past Account Holders (who, by definition, no longer have accounts with Citizens). *See* Agreement ¶¶ 127, 128. To address the fact that some checks sent by mail will be returned as undeliverable, the Agreement provides that the Settlement Administrator will make reasonable efforts to locate the proper address for any intended recipients whose checks are returned, and will re-mail the checks to new addresses. *Id.*

Based on the plan for distribution of the entire Net Settlement Fund to Settlement Class Members, it is highly unlikely there will be any significant residual amounts. Whatever amount remains a year and 30 days after the Settlement Fund Payments have been distributed should be limited to: (i) Settlement Class Members who received checks but failed to deposit or cash them within 180 days; and (ii) Past Account Holders for whom the Settlement Administrator was unable to locate updated mailing addresses for purposes of re-mailing their checks after they were initially returned as undeliverable. *See* Agreement ¶¶ 128-30.

Given the reasonably anticipated small residual monies a year after the Settlement Fund Payments have been distributed, it will not be economically viable to make a second round of distributions to over two million Settlement Class Members. For that reason, the Parties agreed to distribute any leftover monies to organizations furthering "consumer financial literacy education, and to educate and assist consumers with financial services issues through advisory and related services (excluding litigation)." *See* Agreement ¶ 130. It is perfectly appropriate to provide for the distribution of any leftover monies through a residual *cy pres* program to third parties to be used for a purpose related to the class' injury. *See In re Baby Products Antitrust Litig.*, 2013 WL 599662, at *4 (3d Cir. Feb. 19, 2013); *Lane v. Facebook, Inc.*, 696 F. 3d 811,

819-20 (9th Cir. 2012); *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F. 3d 24, 33-36 (1st Cir. 2009); *see also* 4 Herbert B. Newberg et al., Newberg on Class Actions § 11:20 (4th ed. 2012). Indeed, this Court approved the same residual *cy pres* provision in the Chase settlement. (DE # 3134).

Professor Miller opined that a "valuable feature of the settlement is that it ensures that none of the settlement fund will revert to the Bank, even if checks are not cashed. Instead, the parties will arrange for the distribution of the excess through a *cy pres* program to be approved by the Court." *See* Miller Decl. ¶ 23 (DE # 3159-3). Moreover, in small stakes class actions like this one, deterrence is the most important or a primary consideration, and deterrence is achieved so long as the defendant pays *someone* the appropriate amounts and the money does not revert back to the defendant. *See* Fitzpatrick Supplemental Decl. ¶ 3 (DE # 3074-1).

There is nothing wrong with not identifying the specific organizations that may receive any residual *cy pres* awards, especially where – as here – it is highly unlikely there will even be significant residual funds to be distributed. *In re Baby Products Antitrust Litig.*, 2013 WL 599662, at *12. Moreover, the Court will have the final say in approving or rejecting the proposed residual *cy pres* recipients. *See* Agreement ¶ 130.

Finally, the Connors' Objection states, without factual basis, that any residual *cy pres* distribution to "benefit consumer financial literacy education" does not satisfy any of the objectives sought by Class Counsel in this litigation and, further, will benefit Citizens by "funneling funds into programs that will aid it in squeezing more money out of consumers." Connors' Objection at p. 5 (DE # 3227). Both assertions are lacking in legal or factual support. The Agreement clearly adheres to the principle that a *cy pres* award be related to the purpose of the litigation. Organizations that "benefit consumer financial literacy education" and "educate

and assist consumers with financial services issues through advisory and related services" are related to the underlying class' injury at issue in the litigation. *See* Fitzpatrick Supplemental Decl. ¶ 3 (DE # 3074-1). In fact, the case relied upon by the objectors supports this conclusion. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012) (suggesting that "appropriate *cy pres* recipients" in a consumer fraud case would be "organizations dedicating to protecting consumers from . . . false advertising").

C.   A Fee of Thirty Percent of the $137.5 Million Common Fund Is Reasonable.

Without support, some objectors argue that the requested thirty percent (30%) fee award of the $137.5 million common fund created through this Settlement is out of line with percentages awarded in other cases. *See* Cherry Objection (DE # 3093); Egan Objection (DE # 3156); Hightower Objection at pp. 2-6 (DE # 3240); Kalp Objection at pp. 2-3 (DE # 3241); Busser Objection at pp. 7-10 (DE # 3196); Connors' Objection at pp. 9-12 (DE # 3227). The objector are incorrect.

Professor Miller and Judge Thomas E. Scott (Ret.) provided detailed factual and legal bases supporting their opinions that a fee award of thirty percent (30%) of the $137.5 million common fund is "well within the range of reason given the characteristics of this case" and is "reasonable and well justified." *See* Miller Decl. ¶ 61 (DE # 3159-3); Declaration of Thomas E. Scott ¶ 9 (DE # 3159-6). The opinions of Professor Miller and Judge Scott are *unrebutted*.

According to Professor Miller, when fee awards are examined scientifically it becomes apparent that a thirty percent (30%) fee award on the $137.5 million common fund in this case is clearly reasonable. *See* Miller Decl. ¶¶ 46-58 (DE # 3159-3). Professor Miller concluded that a thirty percent (30%) fee award in this case is consistent with the results in: (i) other checking account overdraft fee cases (within MDL 2036 and elsewhere); (ii) fee awards in other Federal

District Courts in Florida; and (iii) the results of several studies conducted by scholars and the Federal Judicial Center. *Id*.; *see also* Fitzpatrick Supplemental Decl. ¶ 5 (DE # 3074-1).

Judge Scott reached the same conclusion – a thirty percent (30%) fee award on the $137.5 million common fund in this case is well justified. *See* Scott Declaration ¶¶ 9, 12. (DE # 3159-6). Judge Scott also offered great detail, applying the relevant *Camden I* factors, why the requested thirty percent (30%) fee is warranted in this case. *See* Scott Decl. ¶¶ 13-25 (DE # 3159-6).

In *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion), U.S. District Judge Alan Gold held that decreasing a fee percentage solely in light of a large settlement:

> is *antithetical* to the percentage of the recovery method adopted by the Eleventh Circuit in *Camden*, the whole purpose of which is to align the interests of Class Counsel and the Class by rewarding counsel in proportion to the result obtained. By not rewarding Class Counsel for the additional work necessary to achieve a better outcome for the class, the sliding scale approach creates the perverse incentive for Class Counsel to settle too early for too little.

*Id.* at 1213 (emphasis added) (citation omitted); *see also Williams v. General Elec. Capital Auto Lease*, 1995 WL 765266, at *10 (N.D. Ill. Dec. 16, 1995) ("Without significant counsel fees to encourage the pursuit of these claims, the public policy to induce compliance with the law would be disserved.").

### D. Under *Camden* I, the Court Should Not Undertake a Lodestar Analysis.

Some objectors contend that it would be unreasonable for the Court to award Class Counsel a fee without first considering and checking their lodestar. *See* Hightower Objection at pp. 2-5 (DE # 3240); Busser Objection at pp. 9-10 (DE # 3196). Their position is at odds with the law of this Circuit and this Court's established practice in prior MDL 2036 settlements.

In *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), the Eleventh Circuit held that district courts should award fees in class actions using the percentage-of-the-fund method, rather than the lodestar method. Although some district courts in the Eleventh Circuit "crosscheck" these fee percentages with class counsel's lodestar, many others do not (including this Court in the previously approved MDL 2036 settlements). *See, e.g., David v. Am. Suzuki Motor Corp.,* 2010 WL 1628362 (S.D. Fla., Apr. 15, 2010); *Noell v. Suncruz Casinos*, 2009 WL 541329 (M.D. Fla., Mar. 4, 2009); *Stahl v. MasTec, Inc.,* 2008 WL 2267469 (M.D. Fla., May 20, 2008); *Allapattah Servs., Inc. v. Exxon Corp.,* 454 F. Supp. 2d 1185 (S.D. Fla. 2006); *In re: Managed Care Litig., Class Plaintiffs v. Aetna Inc., and Aetna – US,* 2003 WL 22850070 (S.D. Fla., Oct. 24, 2003); *Fabricant v. Sears Roebuck & Co.,* 2002 WL 34477904 (S.D. Fla., Sept. 18, 2002).

The Eleventh Circuit has never held that district courts abuse their discretion by choosing not to employ a "lodestar crosscheck." As Professor Fitzpatrick and other scholars have explained, the lodestar crosscheck can effectively cap the amount of compensation class counsel can receive from a settlement and thereby blunt their incentives to achieve the largest possible award for the class. *See* Fitzpatrick Supplemental Decl. ¶ 6 (DE # 3074-1); Myriam Gilles & Gary Friedman, *Exploding the Class Action Agency Costs Myth: The Social Utility of Entrepreneurial Lawyers*, 155 U. Pa. L. Rev. 103, 140-45 (2006). As such, employing the "lodestar crosscheck" can reintroduce the very same undesirable consequences of the lodestar method that the percentage-of-the-fund method was designed to correct in the first place. *See Camden I*, 946 F.2d at 771-74 (citing the difficulty of administering the lodestar method and its failure to align class counsel's interests with the class's interests).

### E. The Service Awards Should Be Granted.

Finally, two objectors contend that the named Plaintiffs should not receive any Service Awards. *See* Cherry Objection (DE #3093); Kalp Objection at p. 3 (DE # 3241). As stated in Plaintiffs' and Class Counsel's Motion for Final Approval of Settlement, and Application for Service Awards, Attorneys' Fees and Expenses (DE # 3159 at pp. 29-30), the named Plaintiffs provided invaluable assistance to counsel in this litigation by, among other things, engaging in significant interviews and conferences with counsel and by preparing for and providing sworn testimony during their lengthy depositions. The Service Awards, if approved, represent only 0.08% of the Settlement Fund, and the amount of the Service Awards is fair and reasonable in view of the efforts of the named Plaintiffs that greatly benefited the Settlement Class. *Id*. This objection has no merit.

### IV. CONCLUSION

Based on the foregoing, as well as Plaintiffs' and Class Counsel's Motion for Final Settlement Approval, the Court should overrule the objections and grant Final Approval to the Settlement, approve Service Awards for the Plaintiffs, approve Class Counsel's application for attorneys' fees and expenses, and enter Final Judgment dismissing the Action with prejudice.

Dated: February 21, 2013.

Respectfully submitted,

/s/ Aaron S. Podhurst
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
Robert C. Josefsberg, Esquire
Florida Bar No. 40856
rjosefsberg@podhurst.com
Steven C. Marks, Esquire
Florida Bar No. 516414
smarks@podhurst.com
Peter Prieto, Esquire
Florida Bar No. 501492
pprieto@podhurst.com
Stephen F. Rosenthal, Esquire
Florida Bar No. 0131458
srosenthal@podhurst.com
John Gravante, III, Esquire
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130-1780
Tel: 305-358-2800
Fax: 305-358-2382

/s/ Bruce S. Rogow
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
Broward Financial Center
500 East Broward Boulevard
Suite 1930
Fort Lauderdale, FL  33394
Tel: 954-767-8909
Fax: 954-764-1530

*Co-Lead Counsel for Plaintiffs*

Case 1:09-md-02036-JLK   Document 3267   Entered on FLSD Docket 02/21/2013   Page 18 of 20

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*


/s/ E. Adam Webb
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-444-0271

/s/ Michael W. Sobol
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008

/s/ Russell W. Budd
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
Mazin A. Sbaiti, Esquire
Texas Bar No. 24058096
msbaiti@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181

/s/ David S. Stellings
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
 BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592


/s/ Ruben Honik
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

/s/ Ted E. Trief
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

### CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Robert C. Gilbert
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596