**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

---

**IN RE:  CHECKING ACCOUNT**
**OVERDRAFT LITIGATION**

**MDL No. 2036**

---

**THIS DOCUMENT RELATES TO:**

*Garcia, et al. v. Wachovia Bank, N.A.*
S.D. Fla. Case No. 1:08-cv-22463-JLK

---

**APPENDIX A TO WELLS FARGO'S OPPOSITION TO CLASS CERTIFICATION**
**RESPONSE TO PLAINTIFFS' APPENDIX I "TRIAL PLAN"**

# TABLE OF CONTENTS

I.      Introduction ..................................................................................................................... 1

II.     Plaintiffs Cannot Establish Their Claims With Common Proof ...................................... 2

III.    Plaintiffs' Proposed Verdict Form Is Legally Deficient. ................................................ 3

IV.     None of Plaintiffs' Subclasses Satisfies the Requirements for Class Certification. ........... 4

        A.      Good Faith and Fair Dealing Subclasses ............................................................ 5

                1.      Good Faith and Fair Dealing Subclass 1 ..................................................... 5

                2.      Good Faith and Fair Dealing Subclass 2 .................................................... 11

                3.      Good Faith and Fair Dealing Subclass 3 .................................................... 14

                4.      Good Faith and Fair Dealing Subclass 4 .................................................... 16

        B.      Unjust Enrichment Subclasses .......................................................................... 19

                1.      Unjust Enrichment Subclass 1 ................................................................... 20

                2.      Unjust Enrichment Subclass 2 ................................................................... 24

                3.      Unjust Enrichment Subclass 3 ................................................................... 26

                4.      Unjust Enrichment Subclass 4 ................................................................... 30

        C.      Unconscionability Subclasses ........................................................................... 32

                1.      Unconscionability Subclass 1 .................................................................... 32

                2.      Unconscionability Subclass 2 .................................................................... 38

                3.      Unconscionability Subclass 3 .................................................................... 41

        D.      State Statutory Subclasses ................................................................................. 46

                1.      New Jersey Statutory Claim Subclass ........................................................ 46

                2.      California Statutory Claim Subclass ........................................................... 48

## I.        Introduction

This appendix addresses the "trial plan" set forth in Appendix I to plaintiffs' Amended Motion for Class Certification (DE # 3198-1) ("Mot. App. I").  In that document, plaintiffs propose that the Court hold a single trial to address all of the claims in this case, subdivided into thirteen separate "subclasses."  Confusingly, plaintiffs propose that the claims in two separate cases – this case (*Garcia*) and a completely different case, *Spears-Haymond* – be decided in that same trial, even though both cases must be tried separately and in two different courts.  *See* Opp. at 19-21.[1]

Plaintiffs begin by asserting that Wells Fargo "used uniform contracts for all Class members" and that the bank "applied its overdraft policies uniformly to all class members."  Mot. App. I at 1.  As shown in Wells Fargo's Opposition, these assertions are untrue. The claims in this case implicate multiple overdraft fee and posting policies that varied, both geographically and throughout the class period, as well as differences in the applicable contracts. *See* Opp. at 3-6, 7-8.

Other premises upon which plaintiffs' "plan" is based are equally unsound.  For example, plaintiffs suggest that this entire case, as they propose to organize and subdivide it, could be tried the same amount of time as the *Gutierrez* case in California was tried.  Mot. App. I at 2.  This assertion ignores that *Gutierrez* involved only one single-state unitary class (not a nationwide class and thirteen subclasses), the laws of only one jurisdiction (not twenty-two), and a unitary set of contracts and policies in effect over a period of less than four years (not multiple contracts and policies that varied over a period of at least eight to ten years – or potentially even longer under plaintiffs' indeterminate class definition).  The bank's defenses to be tried in *this* case, which vary by cause of action and by state, are considerably broader.  Moreover, *Gutierrez* was a non-jury trial, whereas plaintiffs here have demanded a trial by jury.  The time required to

---

[1] Citations in this Appendix to Wells Fargo's "Opposition" or "Opp." are to the Memorandum in Opposition to Plaintiffs' Motion for Class Certification, filed in *Garcia v. Wachovia Bank, N.A.*, S.D. Fla. Case No. 1:08-cv-22463-JLK.  Although plaintiffs filed a single motion for class certification purporting to cover this case as well as *Spears-Haymond v. Wachovia Bank, N.A.*, S.D. Fla. No. 09-21680-JLK. Wells Fargo has filed a separate opposition in each case.

try *Gutierrez* thus represents only a small fraction of the time that would be required to try this case on a class basis – if such a trial were even a practical possibility. As the discussion below makes clear, it is not.

Nor does plaintiffs' trial plan even attempt to explain how they expect the Court to craft jury instructions that adequately span five causes of action involving the laws of twenty-two jurisdictions in thirteen different subclasses, each of which is composed of a different combination of states and named plaintiffs. As explained further below, material variations in the laws of the states within each subclass make it impossible to instruct a jury correctly using the subclass structure plaintiffs have proposed.

Notably, plaintiffs' trial plan offers no explanation of what they propose to do about claims of customers from various states that are unaccounted for in their subclass structure or that simply have no possible class representative. No mention is made of the 2 states omitted from their proposed unjust enrichment subclasses. For two of the proposed subclasses – Unjust Enrichment Subclass 1 and the California statutory subclass – the only proposed representative is not even a plaintiff in this case, raising the unanswered question of how plaintiffs intend to handle claims for those subclasses. Plaintiffs candidly admit they have no representative for Unconscionability Subclass 3 and instead propose to have individuals who are not even members of that subclass represent it. As explained below, the law does not allow that kind of shortcut.

For these and other reasons addressed in more detail below, plaintiffs' "trial plan" falls far short of what is required to establish that the class and subclasses they propose each satisfy Rule 23.

## II.    Plaintiffs Cannot Establish Their Claims With Common Proof

Plaintiffs dedicate seven pages of their trial plan to conclusory assertions that they can establish each of their causes of action through common proof. This discussion merely glosses over or simply ignores differences in the bank's practices over time and across locations, differences in the contracts, and numerous critical differences in the facts pertaining to individual class members.

Plaintiffs' trial plan also neglects to address the numerous elements of these causes of action, required under the laws of many of the pertinent states and addressed in detail below, that do not fit conveniently into their simplified classification system – including many that self-evidently cannot be established through common proof. They also ignore Wells Fargo's

statutory and constitutional entitlement to a full trial of its affirmative defenses, offering no basis for concluding that those defenses can be tried through common proof on a class-wide basis.

In short, the seven pages in which plaintiffs assert they can prove their claims through common proof demonstrate nothing of the sort.  This becomes particularly apparent when one considers the practical problems the Court would face (such as trying to make sense of plaintiffs' unworkable verdict form), or when one examines the Rule 23 requirements – as the Court must – for each individual subclass.  Such an examination, which plaintiffs fail to offer at all, is provided below.

### III.   Plaintiffs' Proposed Verdict Form Is Legally Deficient.

Plaintiffs include with their trial plan a Proposed Special Verdict Form that they suggest could be used in the trial in this action.  *See* App. I at 12 & Ex. E.  Far from supporting the viability of their plan, this draft verdict form showcases many of the fundamental deficiencies in the proposed subclass structure.  These deficiencies include, but are not limited to, the following:

- The verdict form commingles plaintiffs and claims from two different cases that are to be tried in two different courts, which is not permissible.  *See* Opp. at 19-21.

- The verdict form fails to account for the substantial differences in state law for plaintiffs' claims, which are discussed in detail below for each subclass.

- The verdict form does not even attempt to incorporate Wells Fargo's affirmative defenses, which Wells Fargo has a constitutional and statutory right to present.  *See* Opp. at 14, 50-55.  These defenses also vary considerably among and within the subclasses, as described below and in Appendix C.[2]

- Despite these shortcomings in the verdict form, it is still more than 30 pages long.  A proper verdict form would be many times longer still and would overwhelm even the most diligent jury.

---

[2] Appendix C to Wells Fargo's Opposition describes in detail affirmative defenses that will be at issue in this case.  To avoid repetition, appropriate cross-references to Appendix C are provided throughout this Appendix A.  This Appendix refers to several model jury instructions, copies of which have been provided for the Court's convenience in Appendix E to Wells Fargo's Opposition.

- Plaintiffs' proposal to include a different set of states in the subclasses for each claim compounds the problem with the verdict form. For example, the jury would need to be instructed to consider Virginia law along with the law of the District of Columbia, Mississippi, South Carolina, and Tennessee for the good faith and fair dealing subclasses; however, for the unjust enrichment subclass, Virginia law would be considered with the law of Florida, Georgia, Kansas, Nevada, Pennsylvania, South Carolina, and Tennessee; and the unconscionability subclass would consider Virginia law only with Texas law. Meanwhile, D.C. and Mississippi would be considered together for both the good faith and fair dealing and unjust enrichment subclasses, but with the laws of sixteen and three other states respectively for the unconscionability subclasses. Florida and Alabama law are considered together for the GFFD and unconscionability claim, but in two different subclasses for the unjust enrichment claim. Illinois and Maryland are together for the GFFD claim, but not for the unconscionability claim, and no claim is asserted for them at all among the unjust enrichment subclasses. Formulating jury instructions or a verdict form that a jury could understand and follow in this situation would be impossible.

- The verdict form does not allow the jury to make determinations on the individualized issues that are present throughout each of the claims, as described in detail below. As but one example, the verdict form fails to distinguish between individuals who benefited from Wachovia's posting order and those who did not, asking simply "were the plaintiffs and the subclass harmed?" Mot. App. I, Ex. E, "Breach of Contract and the Implied Covenant of Good Faith & Fair Dealing," at 2.

- The variance in the composition of the subclasses across causes of action makes it virtually impossible to render a verdict on damages. If, for example, the jury found for plaintiffs on only one of the good faith and fair dealing subclasses and only one of the unjust enrichment subclasses, the Court would have no basis for determining how much of the damages awarded to each subclass should be eliminated as duplicative because, although the states included in the two subclasses might well overlap, they would not be identical.

## IV.     None of Plaintiffs' Subclasses Satisfies the Requirements for Class Certification.

The final section of plaintiffs' trial plan addresses their proposal for "applying multistate law." This section – a mere seven pages of text plus five "exhibits" of jumbled tables – offers the entirety of plaintiffs' discussion of their proposed subclasses. Because this Court must make specific findings as to each of these subclasses to confirm that they satisfy each and every element of Rule 23(a) and 23(b)(3), *see* Opp. at 21-22, this section will address each proposed subclass in detail, setting out the numerous reasons why each fails to satisfy Rule 23.

4

A.        **Good Faith and Fair Dealing Subclasses**

Plaintiffs propose that the Court certify four subclasses to pursue their claim of breach of the covenant of good faith and fair dealing.  *See* Mot. App. I at 13-15.  None of these subclasses satisfies the requirements of Rule 23.

It is undisputed that the governing account agreements, although varying in other respects, at all relevant times expressly granted to Wachovia the discretion to post transactions to checking accounts in any order it chose.  *See* Opp. at 7-8; *see also* Mot. App. I at 3-4.  Moroever, the language addressing posting order in the governing account agreements changed throughout the class period – including in 2001 (when Wachovia merged with First Union), in 2002, in 2004, and again in 2010.  *See* Opp. at 7-8.  At varying times, Wachovia's account agreement stated that the posting order might "result[] in an insufficient balance in your account to pay one or more other items that otherwise could have been paid," and that Wachovia could choose any posting order even if "using a particular order results in . . . the imposition of additional fees." *See id.*  And, in fact, the posting order Wachovia actually used also varied throughout the class period.  *See id.* at 5-6.

As this Court has already recognized, under the laws of virtually all states "there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract."  *In re Checking Account Overdraft Fee Litig.*, 694 F. Supp. 2d 1302, 1314 (S.D. Fla. 2010) (citation and internal quotation marks omitted) (King, J.); *see also Burger King Corp. v. C.R. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) ("[T]he implied obligation of good faith cannot be used to vary the terms of an express contract.") (citation and internal quotation marks omitted).  The fact that the account agreements specifically authorized Wachovia to choose any posting order – even if it resulted in additional overdrafts or additional fees – raises serious doubts as to whether any class member could successfully argue that Wells Fargo has breached the implied covenant.  Leaving that question aside, there are multiple reasons why plaintiffs' proposed subclasses cannot properly be certified for class treatment.

1.        **Good Faith and Fair Dealing Subclass 1**

Good Faith and Fair Dealing ("GFFD") Subclass 1 is proposed to include class members from Arizona, California, Connecticut, Delaware, Kansas, Nevada, New Jersey, and

North Carolina.  Mot. App. I at 13.  Plaintiffs' only stated rationale for a subclass covering these states is a brief statement indicating their (mistaken) belief that the laws of all of these states recognize this as a separate cause of action not requiring breach of an express provision of the contract.  *Id.* at 13-14.  Plaintiffs' motion makes no mention of other elements of this cause of action required under the laws of these states.  This subclass cannot be certified for multiple independent reasons.

1.       Plaintiffs have not demonstrated that this subclass is numerous, after eliminating potential class members who have an obligation to arbitrate their claims on a non-class basis.  To the extent plaintiffs seek to defeat this arbitration obligation by arguing that Wachovia's arbitration clause was unconscionable, any evaluation of that issue will inherently require consideration of individual evidence as to each class member.  *See* Opp. at 22-24.

2.       Plaintiffs propose Murlee Damor and Anthony Poulin as the representatives of this subclass.  Neither of these individuals is a typical or adequate class representative.  *See id.* at 10-11, 32-40.

3.       Plaintiffs also propose Celia Spears-Haymond, the named plaintiff in *Spears-Haymond v. Wachovia Bank, N.A.*, as a representative of this subclass.  However, Spears-Haymond is not a party to *this* suit, so she may not serve as class representative for any subclass in this case.[3]

4.       No subclass in this case may include customers from California because the class definition pled in the complaint explicitly excludes such customers.  *See* Opp. at 21.

5.       The significant differences described below between the laws governing Damor's and Poulin's claims and the laws governing the claims of other members of this subclass prevent any finding of typicality or adequacy.  Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the

---

[3] *See Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000) (class representative for each claim must be a named plaintiff in the case with standing to pursue that claim); *Wooden v. Board of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287-88 (11th Cir. 2001); *Marable v. District Hosp. Partners, L.P.*, 2006 WL 2547992, at *7 (D.D.C. Aug. 31, 2006) (subclass with no representative could not be certified).  Nor is Spears-Haymond a typical or adequate class representative in any suit, as discussed in detail in Wells Fargo's separate Opposition to class certification in *Spears-Haymond*.

claims of other class members, creating a conflict of interest within the class that bars certification.  *See id.* at 33, 35, 37-39.

6.      The same absence of commonality and predominance that pervades all of plaintiffs' claims (*see id.* at 24-32, 41-46) precludes certification of this subclass.  Plaintiffs have not shown that members of this subclass were all subject to the same contracts and the same posting order policies.  For example, the language addressing posting order in the applicable contracts changed in 2001, 2002, 2004, and 2010, and posting order practices varied throughout the class period.  *See id.* at 7-8.

7.      Plaintiffs' grouping of these eight states into this subclass does not take into account the substantial differences in the pertinent laws of those states.  These differences preclude any finding of commonality or predominance and would render this subclass unmanageable.  These include the following:

- Claims for breach of the implied covenant of good faith are sharply limited in Delaware and California.  In Delaware, the implied covenant is a "limited and extraordinary legal remedy" that addresses only events that could not reasonably have been anticipated at the time the parties contracted and that does not extend to "developments that the parties simply failed to consider – particularly where the contract authorizes the Company to act exactly as it did."[4]  In California, numerous courts have held that no implied covenant with respect to the exercise of discretionary authority exists unless an express promise in the contract would otherwise be illusory and unenforceable.[5]

- Under Delaware law, the breach of the implied covenant of good faith requires the plaintiff to identify "provisions of the agreement that support" a finding that the parties would have agreed to the obligation if they had

---

[4] *Nemec v. Shrader*, 991 A.2d 1120, 1126, 1128 (Del. 2010).  To establish this claim under Delaware law, plaintiffs must prove that the implied obligation is one that "the parties would have agreed to … had they negotiated the issue."  *Id.* at 1127 n.20 (quoting *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998).

[5] *See Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 185 Cal. App. 4th 1050, 1062-63 (Ct. App. 2010); *see also Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1122 (Ct. App. 2008).  Plaintiffs incorrectly say that *Storek & Storek, Inc. v. Citicorp Real Estate, Inc.*, 100 Cal. App. 4th 44 (Ct. App. 2002), stands for the proposition that a claim for breach of the implied covenant can be supported by the improper exercise of discretion granted in a contract.  *See* App. I, Ex. A, at 2.  In fact, the *Storek* court *reversed a jury verdict* in favor of the plaintiff and held that "a covenant of good faith and fair dealing cannot be implied so as to prohibit Citicorp from doing what it was expressly permitted to do."  *Storek*, 100 Cal. App. 4th at 64.

negotiated the issue.[6]  Kansas law requires plaintiffs to establish an actual breach of the contract by "point[ing] to a term in the contract which the defendant allegedly violated by failing to abide by the good faith spirit of that term."[7]  Under Connecticut law, the implied covenant "is essentially a rule of construction . . . . [and] is not a separate contractual claim."[8]  These requirements conflict with the laws of other states included in the subclass.[9]

- Several of the states in this subclass require a demonstration of subjective bad faith or intention to sustain a claim for breach of the implied covenant.[10] California law has no such requirement.[11]

- Even on points of law that seem superficially similar, the underlying standards diverge.  For example, although each of the states in this subclass recognizes the defense of "waiver" as the "intentional relinquishment of a known right,"[12] each state's law defines waiver in materially different ways.  Nevada law allows waiver only "with full knowledge of all material facts."[13]  Kansas law, in contrast, recognizes that constructive knowledge can suffice to establish waiver.[14]  Connecticut law recognizes waiver if "from the circumstances it is

---

[6] *See Nemec*, 991 A.2d at 1127 n.20 (citation omitted).

[7] *Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc.*, 265 F. Supp. 2d 1179, 1188 (D. Kan. 2003) (citation and internal quotation marks omitted).

[8] Conn. Civ. Jury Instructions 4.2-11 (instruction revised Jan. 1, 2008).

[9] *See, e.g.*, Nev. Jury Instructions - Civ. 13CN.44 (2011) (implied covenant of good faith is "independent of the express provisions of the contract" and party may breach the covenant even "if the terms of the contract are literally complied with").

[10] *See, e.g.*, *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 864 A.2d 387, 396, 399 (N.J. 2005) (plaintiff must demonstrate that defendant had "improper motive"); *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 849 A.2d 382, 388 (Conn. 2004) (breach of implied covenant requires act "taken in bad faith," which implies "some interested or sinister motive" or a "dishonest purpose") (citation omitted); *Daniels v. Army Nat'l Bank*, 822 P.2d 39, 43 (Kan. 1991) (in creditor-debtor relationship, "the test of good faith is subjective and requires only honesty in fact"); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991); *see also* Conn. Civ. Jury Instructions 4.2-11 (instruction revised Jan. 1, 2008); N.J. Model Civ. Jury Charges 4.10J (instruction approved Sept. 2009; revised Dec. 2011) (Supp. 2008).

[11] *See Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373 (1992).

[12] *See* Appendix C at 2.

[13] Nev. Jury Instructions - Civ. 13CN.38 (2011).

[14] *See Schraft v. Leis*, 686 P.2d 865, 873 (Kan. 1984).

reasonable to do so."[15]  Delaware, however, allows waiver only when there is a "clear, unequivocal, and decisive act" of the party charged with the waiver.[16]

- The laws governing the defense of ratification vary among the states within this subclass.  Under Delaware and North Carolina law, a party is deemed to have ratified an otherwise voidable contract even if he only has constructive knowledge of all material facts.[17]  Other states in this subclass require "full knowledge" of all material facts.[18]  Under Delaware law, an intent to ratify by the ratifying party is not required,[19] but intent is an element under the laws of several other states in this subclass.[20]

- The defense of accord and satisfaction differs among the states in this subclass.  Under Arizona law, performance of an undisputed obligation can serve as consideration for an accord and satisfaction of a disputed obligation as long as the undisputed and disputed portions are not wholly independent.[21]  Under the laws of several other states in this subclass, an accord and satisfaction requires additional consideration beyond what was undisputedly required.[22]

- Under North Carolina law, the burden of proving that the statute of limitations has been met falls on the plaintiff.[23]  Other states in the subclass place that burden on the defendant.[24]

---

[15] *See AFSCME, Council 4, Local 704 v. Dep't of Pub. Health*, 866 A.2d 582, 585 (Conn. 2005).

[16] *Dirienzo v. Steel Partners Holdings, L.P.*, 2009 WL 4652944, at *5 (Del. Ch. Dec. 8, 2009) (citation omitted).

[17] *See Papaioanu v. Comm'rs of Rehoboth*, 186 A.2d 745, 750 (Del. Ch. 1962); *Puckett v. Dyer*, 167 S.E. 43, 47 (N.C. 1932).

[18] *United Bank v. Mesa N. O. Nelson Co.*, 590 P.2d 1384, 1386 (Ariz. 1979); *Fergus v. Songer*, 150 Cal. App. 4th 552, 571 (Cal. Ct. App. 2007); *Prather v. Colo. Oil & Gas Corp.*, 542 P.2d 297, 303 (Kan. 1975).

[19] *Papaioanu*, 186 A.2d at 750.

[20] *See United Bank*, 590 P.2d at 1386 (Arizona); *Esau v. Briggs*, 201 P.2d 25, 32 (Cal. Ct. App. 1948); *Prather*, 542 P.2d at 303.

[21] *See Flagel v. Sw. Clinical Psychiatrists, P.C.*, 755 P.2d 1184, 1189-90 (Ariz. Ct. App. 1988).

[22] *See Walden v. Backus*, 408 P.2d 712, 713 (Nev. 1965); *Wilmington Trust Co. v. Thielemann*, 2002 WL 31814946, at *3 (Del. Super. Ct. Nov. 27, 2002); *People's Exch. Bank of Elmdale v. Miller*, 29 P.2d 1079, 1083-84 (Kan. 1934); *Baillie Lumber Co. v. Kincaid Carolina Corp.*, 167 S.E.2d 85, 92 (N.C. Ct. App. 1969).

[23] 1 N.C. Pattern Jury Instructions for Civ. Cases 515.20 (2012 Supp.) (instruction added May 1976).

Plaintiffs offer no explanation for how these and other significant conflicts in the substantive law in this subclass can be harmonized. They plainly cannot. Nor do plaintiffs explain how a jury could be properly instructed or could make a sensible determination of liability when confronted with divergent law *applicable to the same subclass*.

8. The claims and defenses applicable to this subclass require consideration of individualized issues. *See* Opp. at 40-58. For example:

- Courts in most states – including states in this subclass – have emphasized that the implied covenant of good faith and fair dealing focuses on the reasonable expectations of the parties.[25] Especially where plaintiffs' interpretation of the contract is at odds with the express language of the contract, those expectations must be proved with individualized evidence outside the four corners of the document. *See* Opp at 47.[26] The need for individualized evidence to prove a claim for breach of the implied covenant of good faith has been cited by courts applying the law of the states in this subclass as a reason that class certification was inappropriate.[27]

- The posting order varied across time and across states. Individualized evidence will therefore be necessary to determine which posting order applied to which class members at which times. *See* Opp. at 25-26.

- The existence and nature of each class member's contract with the bank may require individualized evidence. *See id.* at 33.

---

[24] Judicial Council of Cal. Civ. Jury Instructions 338 (2011 ed.) (instruction added Dec. 2007); *St. Paul Travelers Cos. v. Kuehl*, 12 A.3d 852, 862 (Conn. 2011).

[25] *E.g.*, *Stratton v. American Med. Sec., Inc.*, 266 F.R.D. 340, 353 (D. Ariz. 2009) ("As a good faith and fair dealing claim requires consideration of each insured's reasonable expectations, individual issues would outweigh any common ones so that the Court cannot certify a class."); *Carma Developers (Cal.), Inc.*, 2 Cal. 4th at 372; *De La Concha of Hartford, Inc.*, 849 A.2d at 388; *Nemec*, 991 A.2d at 1125-26; *Hilton Hotels Corp.*, 808 P.2d at 923-24; *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 170 (3d Cir. 2001) (New Jersey law); *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 442 (Del. 2005).

[26] *See, e.g.*, *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1077 (N.J. Super. Ct. App. Div. 2002) (determining parties' expectations "would be difficult, if not impossible, . . . without considering evidence outside the written memorialization of the parties' agreement"); *True N. Composites, LLC. v. Trinity Indus., Inc.*, 191 F. Supp. 2d 484, 516-17 (D. Del. 2002), *reversed in part on other grounds*, 65 F. App'x 266 (Fed. Cir. 2003); *Hilton Hotels Corp.*, 808 P.2d at 923-24.

[27] *See Rose v. SLM Fin. Corp.*, 254 F.R.D. 269, 274 (W.D.N.C. 2008); *Stratton*, 266 F.R.D. at 353; *Payne v. FujiFilm U.S.A., Inc.*, 2010 WL 2342388, at *10-11 (D.N.J. May 28, 2010).

- Even for customers who do not dispute that they received the standardized account agreement, the text of that agreement has differed across time and states. *See id.* at 26-27. Individual evidence will be needed to determine which version of the contract applied to each class member.

- The defenses of voluntary payment, ratification, waiver, and accord and satisfaction, which are recognized in each of the states in this subclass, require individual proof. *See* Appendix C at 5-6, 8, 11, 13. Courts applying the law of the states of this subclass have recognized that these defenses present individualized issues that preclude class certification.[28]

9.     For the reasons discussed at pp. 61-66 of Wells Fargo's Opposition, this subclass is not ascertainable. Although no definition has been specified for this or any other subclass, the definition of the proposed national class contains multiple defects that would persist if used as a basis for defining this subclass. First, by defining the proposed subclass to include customers who have been assessed an overdraft fee "as a result of" the bank's high-low posting order, the definition impermissibly hinges membership in the class on a resolution of the merits. A person who received a notice containing that definition would be unable to determine if it included her because the definition lacks information (such as the proposed alternative posting order) that would enable the customer to determine if she were a member of the class. *See id.* at 62-65.

In addition, the implied subclass definition fails to establish a fixed beginning of a class period, but instead refers to "applicable statutes of limitations." Mot. at 1. Identification of subclass members therefore requires application of eight different statutes of limitations and accrual rules. *See* App. C. at 20-22.

## 2.     Good Faith and Fair Dealing Subclass 2

Plaintiffs' proposed GFFD Subclass 2 includes customers from the District of Columbia, Mississippi, South Carolina, Tennessee, and Virginia. Mot. App. I at 14. Plaintiffs identify these states as those in which the required elements are a valid contract, a breach of that

---

[28] *See Endres v. Wells Fargo Bank*, 2008 WL 344204, at *12 (N.D. Cal. Feb. 6, 2008) ("[T]he application of affirmative defenses would require an individualized analysis as to each class member . . .includ[ing] the applicability of the voluntary-payment doctrine, which may bar any claims made by class members who continued to incur and voluntarily pay the overdraft protection fees."); *Midland Pizza, LLC v. Southwestern Bell Tel. Co.*, 277 F.R.D. 637, 642 (D. Kan. 2011) (denying class certification where "[the defendant's] voluntary payment defense . . . would also require analysis of facts unique to each class member.").

contract through the defendant's unfair interference with plaintiffs' right to receive benefits under the contract, and resulting damages. *Id.* Plaintiffs' motion makes no mention of other elements of this cause of action required under the laws of these states. This subclass also suffers from multiple independent deficiencies.

1.     In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity. Nor can they avoid enforcement of the arbitration clause without individualized evidence. *See* Opp. at 22-24.

2.     Plaintiffs propose Robert Thornton as the representative for this subclass. He is not a typical or adequate representative of this or any other subclass. *See id.* at 12-13, 32-40.

3.     The significant differences described below between the laws governing Thornton's claims and the laws governing the claims of other members of this subclass prevent any finding of typicality or adequacy. Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification. *See id.* at 33, 35, 37-39.

4.     There is no commonality or predominance for the same reasons that pervade all of plaintiffs' proposed subclasses. *See id.* at 24-32, 41-46; p. 7 above.

5.     Plaintiffs' grouping of these five states does not account for material differences in the applicable laws, which preclude any finding of commonality and predominance and render the subclass unmanageable. Differences include the following:

- Under the law of the District of Columbia, a plaintiff must demonstrate that the defendant exercised discretion under the contract "arbitrarily or capriciously."[29] Virginia law (which applies to plaintiff Thornton's claims, making him an inadequate class representative for this additional reason) will not find a breach of the implied covenant based simply on arbitrary conduct; instead, the defendant's actions must have been dishonest.[30] Mississippi law requires a showing that the defendant had a "dishonest purpose."[31] Under Tennessee law, the implied covenant of good faith prevents a party from

---

[29] *Adler v. Abramson*, 728 A.2d 86, 90 (D.C. 1999).

[30] *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 466 S.E.2d 382, 386 (Va. 1996).

[31] *University of S. Miss. v. Williams*, 891 So. 2d 160, 170-71 (Miss. 2004).

intentionally or purposely trying to defeat the contract's purpose.[32]  South Carolina, however, will find a breach of the implied covenant if the defendant's actions were "contrary to the contract's intent."[33]

- The states in this subclass apply materially different standards to determine when a waiver has occurred.  Under Mississippi law, a waiver can be found upon proof "*fairly evidencing* an intention permanently to surrender the right alleged to have been waived."[34]  South Carolina law recognizes waiver if it is "reasonably inferable" from the acts and conduct of the waiving party.[35]  Virginia law appears to apply the doctrine more restrictively, allowing a waiver "only upon clear and unmistakable proof of the intention to waive."[36]

- Under South Carolina and Virginia law, waiver can be shown when the waiving party has constructive knowledge of the waived right.[37]

- South Carolina law does not require that a party asserting waiver demonstrate that it was prejudiced by the waiver.[38]  Under Tennessee law, waiver is considered identical to estoppel, which usually does include a prejudice requirement.[39]

---

[32] *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. Ct. App. 1995).  In *Wallace v. National Bank of Commerce*, the Tennessee Supreme Court held that a claim of breach of the implied covenant of good faith and fair dealing could not be maintained where "the contract authorized the banks to charge overdraft fees [and] the customers were advised regarding the amounts of those fees upon the execution of the deposit agreements" because "[t]he language of the agreements clearly states the terms and reflects the intent of the parties."  938 S.W.2d 684, 687 (Tenn. 1996).  Given the similarities between this case and *Wallace*, it is unlikely that any Tennessee class members can maintain a good faith and fair dealing claim.

[33] *See Commercial Credit Corp. v. Nelson Motors, Inc.*, 147 S.E.2d 481, 484 (S.C. 1966).

[34] *Taranto Amusement Co. v. Mitchell Assocs., Inc.*, 820 So. 2d 726, 730 (Miss. Ct. App. 2002) (emphasis added).

[35] *Lyles v. BMI, Inc.*, 355 S.E.2d 282, 285 (S.C. Ct. App. 1987).

[36] *Travis v. Finley*, 548 S.E.2d 906, 911 (Va. Ct. App. 2001).

[37] *See Janasik v. Fairway Oaks Villas Horizontal Prop. Regime*, 415 S.E.2d 384, 387-88 (S.C. 1992); *Stockbridge v. Gemini Air Cargo, Inc.*, 611 S.E.2d 600, 606 (Va. 2005); *see also* Anderson, S.C. Requests to Charge – Civ. § 19-22 (2d ed. 2009) ("[T]he party claiming waiver must show that the party against whom waiver is asserted possessed, at the time, actual or constructive knowledge of his rights or of all the material facts upon which they depended.").

[38] *See Janasik*, 415 S.E.2d at 387-88.

[39] *See ACG, Inc. v. Se. Elevator, Inc.*, 912 S.W.2d 163, 170 (Tenn. Ct. App. 1995).

6.      The claims and defenses applicable to this subclass require consideration of individualized issues. *See* Opp. at 40-58. For example:

- Under the laws of the states in this subclass, the reasonable expectations of the parties must be considered on a claim for breach of the implied covenant of good faith.[40] As explained above, the evaluation of the parties' expectations requires individual evidence. *See* p. 10 above.

- Individual evidence will be needed to determine the posting order applicable at any given time in any given state, whether an individual claims to have a contract with the bank, and the specific version of the contract that each customer received. *See* pp. 10-11 above.

- The defenses of voluntary payment, waiver, ratification, and accord and satisfaction, which are recognized in all of the states in this subclass, require consideration of individual evidence. *See* App. C at 5-6, 8, 11, 13.

7.      The members of this subclass are not ascertainable. *See* Opp. at 61-66.

### 3.     Good Faith and Fair Dealing Subclass 3

Plaintiffs propose that GFFD Subclass 3 consist of customers from Colorado, Georgia, Illinois, Maryland, and New York. Plaintiffs assert that this group also requires a breach of the contract as part of the GFFD claim, but additionally requires that the plaintiff performed under the contract. *See* Mot. App. I at 14. Plaintiffs' motion makes no mention of other elements of this cause of action required under the laws of these states. This subclass also suffers from multiple independent deficiencies.

1.      In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity. Nor can they avoid enforcement of the arbitration clause without individualized evidence. *See* Opp. at 22-24.

2.      Plaintiffs propose Francis Knight Pinckney as the representative for this subclass. She is not a typical or adequate representative of this or any other subclass. *See id.* at 11-12, 32-40.

---

[40] *See ACG, Inc.*, 912 S.W.2d at 168; *Parks Auto. Group, Inc. v. General Motors Corp.*, 237 F.R.D. 567, 571-72 (D.S.C. 2006); *Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006); *Howie v. Atlantic Home Inspection, Inc.*, 2003 WL 23162330, at *5 (Va. Cir. Ct. June 17, 2003); *Martindale v. Hortman Harlow Bassi Robinson & McDaniel PLLC*, __ So.3d __, 2012 WL 4497756, at *5 (Miss. Ct. App. Oct. 2, 2012).

3.      The significant differences described below between the laws governing Pinckney's claims and the laws governing the claims of other members of this subclass prevent any finding of typicality or adequacy.  Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification.  *See id.* at 33, 35, 37-39.

4.      There is no commonality or predominance for the same reasons that pervade all of plaintiffs' proposed subclasses.  *See id.* at 24-32, 41-46; p. 7 above.

5.      Plaintiffs' grouping of these five states does not account for material differences in the applicable laws, which preclude any finding of commonality and predominance and render the subclass unmanageable.  Differences include the following:

- Under Georgia law, the implied covenant of good faith does not reach an agreement that "by its express terms grants the party absolute or uncontrolled discretion in making a decision."[41]  The laws of other states in this subclass allow for an implied covenant claim under some circumstances even if the written contract gives discretionary authority to one party.[42]

- Under the laws of most states in this subclass, protesting at the time of payment does not necessarily defeat the defense of voluntary payment.[43] Under Colorado law, however, the voluntary payment defense does not apply if the payment was made under protest.[44]

6.      The claims and defenses applicable to this subclass require consideration of individualized issues.  *See* Opp. at 40-58.  For example:

- Under the laws of the states in this subclass, the reasonable expectations of the parties must be considered on a claim for breach of the implied covenant of

---

[41] *See ULQ, LLC v. Meder*, 666 S.E.2d 713, 717 (Ga. Ct. App. 2008).

[42] *See Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1996); *Dalton v. Educational Testing Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995); *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 675-76 (Md. 2009).

[43] *See* Ga. Code Ann. § 13-1-13; *Harris v. Chartone*, 841 N.E.2d 1028, 1032 (Ill. App. Ct. 2005); *Magness v. Loyola Fed. Sav. & Loan Ass'n*, 47 A.2d 769, 774 (Md. Ct. App. 1946); *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 740 N.Y.S.2d 396, 398 (N.Y. App. Div. 2002).

[44] *See Skyland Metro. Dist. v. Mountain W. Enter., LLC*, 184 P.3d 106, 127 (Colo. Ct. App. 2007).

good faith.[45]  As explained above, the evaluation of the parties' expectations requires individual evidence.  *See* p. 10 above.

- Individual evidence will be needed to determine the posting order applicable at any given time in any given state, whether an individual claims to have a contract with the bank, and the specific version of the contract that each customer received.  *See* pp. 10-11 above.

- The defenses of voluntary payment, waiver, ratification, and accord and satisfaction, which are recognized in all of the states in this subclass, require consideration of individualized evidence.  *See* App. C at 5-6, 8, 11, 13.

7.       The members of this subclass are not ascertainable.  *See* Opp. at 61-66.

**4.       Good Faith and Fair Dealing Subclass 4**

Plaintiffs propose that GFFD Subclass 4 consist of customers from Alabama, Florida, and Pennsylvania.  Plaintiffs assert that this group also requires a breach of the contract as part of the GFFD claim, but additionally requires that the defendant's breach be a material one which affects a fundamental purpose or essence of the contract.  Mot. App. I at 14-15.  Plaintiffs' trial plan makes no mention of other elements of this cause of action required under the laws of these states.  This subclass cannot be certified because it contains multiple independent defects.

1.       In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity.  Nor can they avoid enforcement of the arbitration clause without individualized evidence.  *See* Opp. at 22-24.

2.       Plaintiffs propose Angela Gonzalez as the representative for this subclass.  She is not a typical or adequate representative of this or any other subclass.  *See id.* at 12, 32-40.

3.       The significant differences described below between the laws governing Gonzalez's claims and the laws governing the claims of other members of this subclass prevent any finding of typicality or adequacy.  Moreover, any alternative posting order that plaintiffs

---

[45] *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 395 (7th Cir. 2003) (Illinois law); *Bayou Land Co. v. Talley*, 924 P.2d 136, 154 (Colo. 1996) (under Colorado law, "the implied covenant of good faith and fair dealing is used to effectuate the intention of the parties or to honor their reasonable expectations in entering into the contract"); *Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 675 (Md. 2009) ("[T]he obligation of good faith and fair dealing requires a party exercising discretion to do so in accordance with the 'reasonable expectations' of the other party."); *Richmond Shop Smart, Inc. v. Kenbar Dev. Ctr., LLC*, 820 N.Y.S.2d 124, 125 (N.Y. App. 2006).

16

select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification.  *See id.* at 33, 35, 37-39.

4.    There is no commonality or predominance for the same reasons that pervade all of plaintiffs' proposed subclasses.  *See id.* at 24-32, 41-46; p. 7 above.

5.    Plaintiffs' grouping of these three states does not account for material differences in the applicable law, which preclude any finding of commonality and predominance and render the subclass unmanageable.[46]  Differences include the following:

- Pennsylvania applies the implied covenant of good faith and fair dealing only in situations in which there is proof of a "special relationship" between the parties.[47]  The other states in this subclass do not have this requirement.

- Unlike other state laws in this subclass, Alabama law requires a plaintiff claiming a breach of contract to prove his or her performance under the contract and the defendant's nonperformance.[48]

- Under Alabama law, if a contract provides "sole discretion" to one party, the implied covenant does not apply.[49]  Under Florida law, when one party has been granted substantial discretion under a contractual provision, a breach of the implied covenant will not be found "[u]nless no reasonable party in the position of [the defendant] would have made the same discretionary decision."[50]  Under Pennsylvania, in contrast, a contractual grant of discretion does not always automatically defeat a claim based on the implied covenant.[51]

- Under Pennsylvania law, the implied covenant "requires parties to a contract to avoid evasion of the spirit of the bargain, lack of diligence and slacking off,

---

[46] *See, e.g.*, *Shelley v. AmSouth Bank*, 2000 WL 1121778, at *8 (S.D. Ala. July 24, 2000) (citing difficulty of applying laws of multiple jurisdictions as reason to deny class certification in case challenging high-to-low posting order of checks).

[47] *See Pennsylvania Dep't of Transp. v. E-Z Parks, Inc.*, 620 A.2d 712, 717 (Pa. Commw. Ct. 1993).

[48] *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala.  2002).  Curiously, plaintiffs' own exhibit table contains a boldface note that acknowledges this difference between Alabama law and the laws of other states in this subclass.  *See* App. I, Ex. A at 15-16.

[49] *See Shoney's LLC v. MAC E., LLC*, 27 So. 3d 1216, 1220 (Ala. 2009).

[50] *Sepe v. City of Safety Harbor*, 761 So.2d 1182, 1185 (Fla. Dist. Ct. App. 2000).

[51] *See Department of Transp. v. Pennsylvania Indus. for Blind & Handicapped*, 886 A.2d 706, 716 (Pa. Commw. Ct. 2005);.

willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."[52]  Alabama law simply requires "that neither party will interfere with the rights of the other to receive the benefits of the agreement."[53]

- Under Pennsylvania law, the voluntary payment defense can defeat the claims of a party who has actual or constructive knowledge of all relevant facts.[54] Under Alabama law, however, the voluntary payment defense may not be available against a party who "paid under a mistake of fact," even if "the party paying had means of ascertaining the real facts."[55]

- Under Florida law, an accord and satisfaction may be reached even as to amounts undisputedly owed, without any additional consideration.[56]  The laws of Alabama and Pennsylvania both require new consideration to support any accord and satisfaction.[57]

6.     The claims and defenses applicable to this subclass require consideration of individualized issues.  *See id.* at 40-58.  For example:

- Under the laws of the states in this subclass, the reasonable expectations of the parties must be considered on a claim for breach of the implied covenant of good faith.[58]  As explained above, the evaluation of the parties' expectations requires individual evidence.  *See* p. 10 above.

- Individual evidence will be needed to determine the posting order applicable at any given time in any given state, whether an individual claims to have a contract with the bank, and the specific version of the contract that each customer received.  *See* pp. 10-11 above.  The Supreme Court of Alabama, in

---

[52] *Onal v. BP Amoco Corp.*, 275 F. Supp. 2d 650, 659 (E.D. Pa. 2003) (citation omitted).

[53] *See State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 317 (Ala. 1999) (citation and emphasis omitted).

[54] *See Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 661 (Pa. 2009) (voluntary payment defense available against party that paid money "with full knowledge, or means of knowledge of all the facts").

[55] *U-Haul Co. of Ala., Inc. v. Johnson,*, 893 So. 2d 307, 311-12 (Ala. 2004).

[56] *See* Florida Statute § 725.05.

[57] *See Madden v. Deere Credit Servs., Inc.*, 598 So. 2d 860, 862 (Ala. 1992); *Law v. Mackie*, 95 A.2d 656, 660 (Pa. 1953).

[58] *See Publix Super Mkts., Inc. v. Wilder Corp. of Del.*, 876 So. 2d 652, 654-55 (Fla. Dist. Ct. App. 2004; *Agrecycle, Inc. v. Pittsburgh*, 783 A.2d 863, 867 (Pa. Commw. Ct. 2001); *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d 725, 738 (Ala. 1987).

*Compass Bank v. Snow*, pointed to similar factors when it concluded common issues did not predominate in a case challenging a bank's practice of posting checks in high-low order.[59]

- The defenses of voluntary payment, waiver, ratification, and accord and satisfaction, which are recognized in all of the states in this subclass, require consideration of individualized evidence. *See* App. C at 5-6, 8, 11, 13.

7.    The members of this subclass are not ascertainable. *See* Opp. at 61-66.

**B.    Unjust Enrichment Subclasses**

Plaintiffs propose dividing their unjust enrichment claim into four subclasses. These subclasses also suffer from multiple, independently fatal defects.

To begin with, plaintiffs must choose between their contractual theory and unjust enrichment theory, which are mutually exclusive.[60]    It would be improper to certify classes advancing incompatible claims, because deferring plaintiffs' election of remedies would result in a *res judicata* bar for class members whose claims are dropped in the later election.[61]    This is a particular problem for this case, because the proposed unjust enrichment subclasses exclude class members from two states that are included in the contract subclasses; the contract subclasses, in turn, exclude class members from one state that is included in the unjust enrichment subclasses.[62] *See* Opp. at 39.    No matter which claim plaintiffs elect to pursue, they will be leaving behind the claims of many class members.[63]

_____

[59] *See* 823, So.2d 667, 676-78 (Ala. 2001).

[60] Plaintiffs have alleged that their relationship with the bank is governed by a contract.    Under the law of virtually every jurisdiction, a claim for unjust enrichment does not lie when a contract governs the underlying relationship. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1321.

[61] *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 339 (4th Cir. 1998) (reversing class certification because "the only relief [a discrete group in the class] could pursue would be foreclosed" due to "plaintiffs' choice of remedy"); *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 493 (S.D. Ill. 1999) ("The election of a remedy that does not benefit the entire class . . . and that is not the remedy that would be chosen by the entire class . . . creates a conflict of interest.    This conflict renders the plaintiffs' representation of the class as a whole inadequate.").

[62] The state excluded from the GFFD subclasses, Texas, apparently was left out because the Court dismissed that claim under Texas law in March 2010. *See* DE # 305 at 24-25.

[63] *See, e.g.*, *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 672-73 (S.D. Fla. 2009) (finding class representative inadequate because, by choosing to pursue one remedy, he "not only (continued…)

Moreover, these four subclasses are arranged in substantially different groupings of states than the proposed subclasses for the good faith and fair dealing claim. The different composition of the classes across the claims only compounds the unmanageability of plaintiffs' proposed trial plan.

### 1. Unjust Enrichment Subclass 1

Plaintiffs' proposed Unjust Enrichment Subclass 1 includes customers from California, Connecticut, the District of Columbia, and Mississippi. According to plaintiffs, these states follow the Restatement (First) of Restitution § 1. Mot. App. I at 15. Plaintiffs assert that the required elements for this subclass are that the plaintiff conferred a benefit on the defendant and the defendant accepted or retained that benefit under circumstances that would be unjust. *Id.* Plaintiffs' motion and trial plan make no mention of other elements of this cause of action required under the laws of these states.

The multiple independent defects in this subclass include the following:

1.      This class has no class representative in this case. None of the named plaintiffs in this case reside in any of the states plaintiffs include in this subclass; nor do plaintiffs propose them as representatives of this subclass. Instead, plaintiffs propose that Celia Spears-Haymond – the plaintiff in the separate *Spears-Haymond* suit – represent the subclass. Because Spears-Haymond is not a party to *this* suit, she may not serve as representative for any subclass in *this* case.[64] Nor is Spears-Haymond a typical or adequate representative in any suit, as discussed in detail in Wells Fargo's separate Opposition to class certification in *Spears-Haymond*.

2.      No subclass in this case may include customers from California because the class definition pled in the complaint explicitly excludes such customers.

---

forecloses his own right to relief for other damage . . ., but forecloses the rights of all other class members"); *see also Cooper v. Southern Co.*, 390 F.3d 695, 721 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457 (2006) ("[T]o the extent the named plaintiffs were willing to forego class certification on damages in order to pursue injunctive relief . . ., it is far from clear that the named plaintiffs would adequately represent the interests of the other putative class members.").

[64] *See Wooden v. Board of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1287-88 (11th Cir. 2001); *Prado-Steiman*, 221 F.3d at 1279-80; *Marable*, 2006 WL 2547992, at *7.

3.      In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity.  Nor can they avoid arbitration without individualized evidence.  *See* Opp. at 22-24.

4.      The significant differences described below among the unjust enrichment laws of states in this subclass prevent any finding of typicality or adequacy.  Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification.  *See id.* at 33, 35, 37-39.

5.      There is no commonality or predominance for the same reasons that pervade all of plaintiffs' proposed subclasses.  *See* p. 7 above.

6.      Plaintiffs' grouping of these states glosses over material differences in their laws. Notwithstanding plaintiffs' conclusory assertion that "[t]he law of unjust enrichment is largely uniform," Mot. App. I at 15, a legion of cases have recognized that the law of unjust enrichment exhibits substantial variation from state to state, which precludes certification of multi-state classes.[65]  A more complete analysis of the laws of the states in this subclass shows that the applicable standards for unjust enrichment and Wells Fargo's likely defenses contain significant differences.  For example:

- California does not recognize "unjust enrichment" as an independent cause of action.[66]

---

[65] *See Spencer v. Hartford Fin. Servs. Group, Inc.*, 256 F.R.D. 284, 304 (D. Conn. 2009) ("Courts considering unjust enrichment claims . . . have frequently found a lack of predominance due to conflicts in legal standards from state to state."); *Thompson v. Jiffy Lube Int'l., Inc.*, 250 F.R.D. 607, 626 (D. Kan. 2008); *Clay*, 188 F.R.D. at 500-01; *Schmidt v. Interstate Fed. Sav. & Loan Ass'n*, 74 F.R.D. 423, 429 (D.D.C. 1977).

[66] *Castillo v. Toll Bros., Inc.*, 130 Cal. Rptr. 3d 150, 179 (Ct. App. 2011) (affirming trial court's grant of summary judgment to defendant because "California does not recognize unjust enrichment as a separate cause of action"); *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010) ("There is no cause of action in California for unjust enrichment.") (citation, internal quotation marks, and alteration omitted); *Jogani v. Super. Ct.*, 81 Cal. Rptr. 3d 503, 511 (Ct. App. 2008) ("[U]njust enrichment is not a cause of action.").  California law recognizes a cause of action for restitution based on an unjust enrichment theory, but only if the parties' contract was procured by fraud or similar conduct or is otherwise unenforceable. *McBride v. Boughton,* 20 Cal. Rptr. 3d 115, 121 (Ct. App. 2004).

- The laws of the states in this subclass treat the existence of a written contract governing the parties' relationship differently. Under Connecticut law, an unjust enrichment claim is available only if the parties' contract "does not fully address a subject."[67]  In the District of Columbia and Mississippi, a party must choose between an unjust enrichment claim and a breach of contract claim, regardless of the circumstances.[68]

- The states in this subclass also vary in the showing required to succeed on an unjust enrichment claim.  Under Mississippi and District of Columbia law, the plaintiff must show that the defendant committed a wrongful act.[69]  Under Connecticut law, a plaintiff must show that the defendant's retention of funds is unjust.[70]

- The standards for waiver under the laws of the states in this subclass differ.  Under Connecticut law, waiver can be "inferred from the circumstances if it is reasonable to do so."[71]  Under California law, however, waiver must be demonstrated "by clear and convincing evidence that does not leave the matter to speculation."[72]  Under Mississippi law, waiver is established by "an act or omission . . . fairly evidencing an intention permanently to surrender the right."[73]

- Under Mississippi and California law, an accord and satisfaction can be accomplished even if there is no dispute as to the amount owed under the previous contract.[74]  Connecticut law is directly contrary, and requires a dispute as to the amount owed.[75]

---

[67] *Town of New Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592, 612 (Conn. 2009) (citation and internal quotation marks omitted).

[68] *See, e.g.*, *Harrington v. Trotman*, 983 A.2d 342, 346 (D.C. 2009); *Schiff v. AARP*, 697 A.2d 1193, 1194 (D.C. 1997); *Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996); *Spansel v. State Farm Fire & Cas. Co.*, 683 F. Supp. 2d 444, 453 (S.D. Miss. 2010); *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005).

[69] *See Langham v. Behnen*, 39 So. 3d 970, 976 (Miss. Ct. App. 2010); *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1223 (D.C. 2005).

[70] *Taylor v. French*, 2009 WL 3366301, at *3 (Conn. Super. Ct. Sept. 16, 2009).

[71] *See AFSCME, Council 4, Local 704*, 866 A.2d at 585.

[72] *See Waller v. Truck Ins. Exch., Inc.*, 900 P.2d 619, 636 (Cal. 1995) (citation omitted).

[73] *Taranto Amusement Co.*, 820 So. 2d at 730.

[74] *See Sherwin-Williams Co. v. Sarrett*, 419 So. 2d 1332, 1334 (Miss. 1982); Cal. Civil Code §§ 1521, 1524.

[75] *See County Fire Door Corp. v. C.F. Wooding Co.*, 520 A.2d 1028, 1031 (Conn. 1987).

7.      Unjust enrichment is an equitable claim, and numerous courts have recognized that it inherently involves consideration of the individualized equities for each class member. *See* Opp. at 47-48.

- The unjust enrichment laws of the states in this subclass require evaluating all of the circumstances to determine if an inequity occurred.[76]  The determination of whether any particular overdraft fee was "unjust" depends on numerous individual factors.  For example, if a customer was a serial overdrafter, had the posting order explained to him or her, or otherwise should have known he or she would be charged the challenged fees, it would not have been unjust for Wells Fargo to charge those fees.[77]  Similarly, at least some class members affirmatively benefitted from the bank's actual posting order. *See* Opp. at 36-39.  Charging an overdraft fee in those circumstances cannot have been unjust.

- Individual evidence will be needed to determine the posting order applicable to each class member at any given time in each state, whether an individual claims to have a contract with the bank, the communications the bank had with each class member, and the specific version of the contract that each customer received. *See* pp. 10-11 above.

- Under the laws of some states, "if a person receives a benefit because of another's mistake, policy may dictate that the person making the mistake assume the risk of the error."[78]  Whether any class member made a mistake that benefited Wells Fargo can only be made through individual evidence of each class member's transactions and reasons for overdrafting.

- The defenses of voluntary payment, waiver, ratification, and unclean hands, which are recognized in the states in this subclass, require consideration of individualized evidence. *See* App. C at 5-6, 8, 11, 17-18.

8.      The members of this subclass are not ascertainable. *See* Opp. at 61-66.

---

[76] *Meaney v. Conn. Hosp. Ass'n*, 735 A.2d 813, 820 (Conn. 1999) (an unjust enrichment claim requires the court "to examine the circumstances and the conduct of the parties"); *Peart v. D.C. Housing Auth.*, 972 A.2d 810, 814 (D.C. 2009) ("We evaluate claims of unjust enrichment on a case-by-case basis, considering the particular circumstances giving rise to the claim.").

[77] *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1275 (11th Cir. 2009) ("Those [individuals] who concede awareness … cannot claim injustice when the company follows its … policies as expected and understood.").

[78] *McBride*, 20 Cal. Rptr. 3d at 123 (citation and internal quotation marks omitted).

### 2.      Unjust Enrichment Subclass 2

Plaintiffs' proposed Unjust Enrichment Subclass 2 includes customers from Florida, Georgia, Kansas, Nevada, Pennsylvania, South Carolina, Tennessee, and Virginia. Plaintiffs identify these states as including the requirement "that the defendant appreciated the benefit conferred" as part of an unjust enrichment claim in addition to the elements described in Subclass 1.  Mot. App. I at 15.  Plaintiffs' motion and trial plan makes no mention of other elements of this cause of action required under the laws of these states.  This subclass cannot be certified in this case for the following reasons:

1.      In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity.  Nor can they avoid enforcement of the arbitration clause without individualized evidence.  *See* Opp. at 22-24.

2.      Plaintiffs propose Angela Gonzalez, Francis Knight Pinckney, and Robert Thornton as the representatives for this subclass.  None of these individuals is a typical or adequate representative of this or any other subclass.  *See id.* at 11-13, 32-40.

3.      The significant differences described below among the laws governing the claims of Gonzalez, Pinckney, and Thornton and those laws governing the claims of other members of this subclass prevent any finding of typicality or adequacy.  Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification.  *See id.* at 33, 35, 37-39.

4.      There is no commonality or predominance for the same reasons that pervade all of plaintiffs' proposed subclasses.  *See* p. 7.

5.      Plaintiffs' grouping of these eight states does not account for material differences in the applicable law, which preclude any finding of commonality and predominance and render the subclass unmanageable.[79]  Differences include the following:

- The law of South Carolina requires, as an additional element in an unjust enrichment claim, that the plaintiff establish the existence of a duty owed by the defendant.[80]

---

[79] *See, e.g.*, *Thompson*, 250 F.R.D. at 626.

[80] *See Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502, 512 (S.C. App. 2002).

- Tennessee law requires that plaintiffs prove they exhausted all other remedies, including making a demand of the bank, or that any such demand would have been futile.[81]

- Virginia law also has unique requirements for an unjust enrichment claim:  the plaintiff must show that the defendant expressly or impliedly requested the benefit conferred, and that the defendant should have reasonably expected to pay for the benefit.[82]

- Under South Carolina law, waiver may be established through actual or constructive knowledge.[83]  The laws of other states in this subclass require actual knowledge.[84]

- South Carolina law does not require that a party asserting waiver demonstrate that it was prejudiced by the waiver.[85]  Under Tennessee law, waiver is considered identical to estoppel, which usually does include a prejudice requirement.[86]

- The laws of the states in this subclass differ as to whether new consideration is required for an accord and satisfaction.  No new consideration is required under the laws of Florida, Tennessee, or Virginia.[87]  The laws of Kansas, Nevada, Pennsylvania, and South Carolina require proof of new consideration to support the accord.[88]

- Under Kansas law, the defense of unclean hands applies to equitable claims even if plaintiffs' inequitable conduct did not cause any harm to the

---

[81] *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525-26 (Tenn. 2005).

[82] *Primrose Dev. Corp. v. Benchmark Acquisition Fund I Ltd. P'ship*, 1998 WL 957312, at *2 (Va. Cir. Ct. Oct. 29, 1998).

[83] Anderson, S.C. Requests to Charge - Civ. § 19-22 (2d ed. 2009).

[84] Tenn. Prac. Series: Tenn. Pattern Jury Instructions Civ. 13.09 (2012 ed.) (party claiming waiver must show "full and complete knowledge of the relevant facts"); Va. Model Jury Instructions: Civ. 45.410 (1998) ("A party cannot waive a right unless he has full knowledge of it.").

[85] *See Janasik*, 415 S.E.2d at 387-88.

[86] *See ACG, Inc.*, 912 S.W.2d at 170.

[87] *See* Fla. Stat. § 725.05; Tenn. Code Ann. § 24-7-107; Va. Code Ann. § 11-12.

[88] *People's Exch. Bank of Elmdale*, 29 P.2d at 1083-84; *Walden*, 408 P.2d at 713; *Law*, 95 A.2d at 660; *Ecclesiastes Prod. Ministries v. Outparcel Assocs., LLC*, 649 S.E.2d 494, 501 (S.C. Ct. App. 2007).

defendant.[89]  Many of the other states in this subclass do require a showing of prejudice for the defendant to assert this defense.[90]

6.    The claims and defenses applicable to this subclass require consideration of individualized issues.  *See* Opp. at 47-48.  For example:

- The unjust enrichment law of each state in this subclass requires evaluating all of the circumstances to determine if an inequity occurred.[91]  As discussed above, *see* p. 23, that evaluation inherently involves multiple individualized determinations of facts that will be unique to each class member.  Courts have routinely rejected unjust enrichment classes for this reason.[92]

- Individual evidence will be needed to determine the posting order applicable to each class member at any given time in each state, whether an individual claims to have a contract with the bank, the communications the bank had with each class member, and the specific version of the contract that each customer received.  *See* pp. 10-11 above.

- The defenses of voluntary payment, waiver, ratification, and unclean hands, which are recognized in the states in this subclass, require consideration of individualized evidence.  *See* App. C at 5-6, 8, 11, 17-18.

7.    The members of this subclass are not ascertainable.  *See* Opp. at 61-66.

### 3.    Unjust Enrichment Subclass 3

Plaintiffs' proposed Unjust Enrichment Subclass 3 includes customers from Arizona, Colorado, Delaware, New Jersey, New York, and North Carolina.  Plaintiffs identify these states as including the requirement that they prove they "lack[] an adequate remedy at law"

---

[89] *See Green v. Higgins*, 535 P.2d 446, 450 (Kan. 1975).

[90] *See Tribeca Lending Corp. v. Real Estate Depot, Inc.*, 42 So. 3d 258, 262 (Fla. Dist. Ct. App. 2010); *Equibank v. Adle, Inc.*, 595 A.2d 1284, 1287 (Pa. Super. Ct. 1991); *Arnold v. City of Spartanburg*, 23 S.E.2d 735, 738 (S.C. 1943); *Nolen v. Witherspoon*, 187 S.W.2d 14, 16 (Tenn. 1945).

[91] *Hillman Const. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. Dist. Ct. App. 1994); *Chem-Nuclear Sys., Inc. v. Arivec Chem., Inc.*, 978 F. Supp 1105, 1110 (N.D. Ga. 1997); *In re Estate of Sauder*, 156 P.3d 1204, 1220 (Kan. 2007); *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011); *Ne. Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.*, 933 A.2d 664, 669 (Pa. Super. Ct. 2007); *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 167 (S.C. 2003); *Freeman Indus., LLC*, 172 S.W.3d at 525; *Nossen v. Hoy*, 750 F. Supp. 740, 744-45 (E.D. Va. 1990).

[92] *See Vega*, 564 F.3d at 1277; *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 698 (N.D. Ga. 2008).

as part of an unjust enrichment claim in addition to the elements described in Subclass 1.  Mot. App. I at 16.  Plaintiffs' motion and trial plan make no mention of other elements of this cause of action required under the laws of these states.  This subclass cannot be certified for the following reasons:

1.      In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity.  Nor can they avoid enforcement of the arbitration clause without individualized evidence.  *See* Opp. at 22-24.

2.      Plaintiffs propose Murlee Damor and Anthony Poulin as the representatives for this subclass.  Neither of these individuals is a typical or adequate representative of this or any other subclass.  *See id.* at 10-11, 32-40.

3.      The significant differences described below among the laws governing the claims of Damor and Poulin and those governing the claims of other members of this subclass prevent any finding of typicality or adequacy.  In particular, New Jersey law expressly recognizes that the practice of high-low posting does not constitute unjust enrichment.  "The Account Agreement clearly reserved to [the bank] the right to post charges to the account each day in descending order of amount.  Because such posting was not 'beyond its contractual rights,'[the bank]'s collection of the overdraft fees did not 'enrich [it] beyond its contractual rights.'"[93] Poulin and Damor cannot properly represent customers from other states that do not have this directly adverse law.  Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification.  *See* Opp. at 33, 35, 37-39.

4.      There is no commonality or predominance for the same reasons that pervade all of plaintiffs' proposed subclasses.  *See* p. 7 above.

5.      Plaintiffs' grouping of these six states does not account for differences in the applicable law, which preclude commonality and predominance and render the subclass unmanageable.  Differences include the following:

---

[93] *Hassler v. Sovereign Bank*, 374 F. App'x 341, 345–46 (3d Cir. 2010) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994) (internal citations omitted)).

- North Carolina law imposes additional requirements on claims for unjust enrichment. In addition to conferring a benefit on the defendant, the plaintiff must not have conferred the benefit gratuitously or by interfering in the defendant's affairs in an unjustified manner.[94]

- North Carolina law also requires that the plaintiff demonstrate some additional wrongdoing or unjust element beyond the mere fact of enrichment to the defendant.[95] New York law permits even completely innocent parties to be found liable for unjust enrichment under certain circumstances.[96]

- New Jersey law requires the plaintiff to demonstrate that she expected something in return for the benefit conferred on the defendant and that she did not receive it.[97] Other states in this subclass require only a showing that the defendant benefitted at plaintiff's expense.[98]

- The laws of most states in this subclass recognize the defense of voluntary payment even if the payment is made under protest.[99] Under the law of Colorado, a payment made under protest may not be voluntary.[100]

- Delaware law does not require a demonstration of intent to ratify for the defense of ratification.[101] Arizona and New Jersey law do.[102]

- Under North Carolina, New York, and Delaware law, the defense of accord and satisfaction cannot apply to undisputed claims absent new

---

[94] *See Britt v. Britt*, 359 S.E.2d 467, 469 (N.C. 1987), *overruled on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 374 S.E.2d 385 (N.C. 1988).

[95] *See Watson Elec. Const. Co. v. Summit Cos. LLC*, 587 S.E.2d 87, 92 (N.C. App. 2003).

[96] *See Cruz v. McAneney*, 816 N.Y.S.2d 486, 491 (N.Y. App. Div. 2006).

[97] *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994).

[98] *See, e.g., Nemec*, 991 A.2d at 1130; *Loiselle v. Cosas Mgmt. Group, LLC*, 228 P.3d 943, 946 (Ariz. App. 2010).

[99] *See, e.g., Dillon*, 740 N.Y.S.2d at 398; *Wilmington v. Wicks*, 43 A. 173, 173 (Del. Super. Ct. 1896).

[100] *See Skyland Metro. Dist.*, 184 P.3d at 127.

[101] *Papaioanu*, 186 A.2d at 750 ("Conscious intent is not an element, nor does ratification require a change of position or prejudice.").

[102] *United Bank*, 590 P.2d at 1386 ("Ratification requires intent to ratify plus full knowledge of all the material facts." (quoting *Thermo Contracting Corp. v. Bank of New Jersey*, 354 A.2d 291, 296 (N.J. 1976))).

consideration.[103]  In some circumstances, Colorado law does not require a disputed claim.[104]  Arizona law permits performance of an undisputed obligation to serve as consideration for an accord and satisfaction of a disputed claim as long as the disputed and undisputed claims are not wholly independent.[105]

- Under the laws of Arizona and Delaware, the equitable defense of unclean hands does not require the defendant to demonstrate injury arising from plaintiffs' actions.[106]  Injury to the defendant is an element of the defense under the laws of New York and North Carolina.[107]

6.      The claims and defenses applicable to this subclass require consideration of individualized issues.  *See* Opp. at 47-48.  For example:

- The unjust enrichment law of each state in this subclass requires evaluating all of the circumstances to determine if an inequity occurred.[108]  As discussed above, *see* p. 23, that evaluation inherently involves multiple individualized determinations of facts that will be unique to each class member.

- Individual evidence will be needed to determine the posting order applicable to each class member at any given time in each state, whether an individual claims to have a contract with the bank, the communications the bank had with each class member, and the specific version of the contract that each customer received.  *See* pp. 10-11 above.

---

[103] *See Baillie Lumber Co.*, 167 S.E.2d at 92; *Patel v. Orma*, 593 N.Y.S.2d 851, 853 (N.Y. App. Div. 1993); *Wilmington Trust Co.*, 2002 WL 31814946, at *3.

[104] *See Stanley-Thompson Liquor Co. v. S. Colo. Mercantile Co.*, 178 P. 577, 578-79 (Colo. 1919).

[105] *See Flagel*, 755 P.2d at 1189-90.

[106] *See Weiner v. Romley*, 381 P.2d 581, 582-83 (Ariz. 1963); *Portnoy v. Cryo-Cell Int'l, Inc.*, 940 A.2d 43, 81 n.206 (Del. Ch. 2008).

[107] *See Wells Fargo Bank v. Hodge*, 939 N.Y.S.2d 98, 100 (N.Y. App. Div. 2012); *Crumley & Assocs. P.C. v. Charles Peed & Assocs., P.A.*, 730 S.E.2d 763, 767 (N.C. Ct. App. 2012).

[108] *See State v. Arizona Pension Planning*, 739 P.2d 1373, 1375 (Ariz. 1987); *Wilson v. Prentiss*, 140 P.3d 288, 292-93 (Colo. App. 2006); *Nemec*, 991 A.2d at 1130; *Cheesequake Realty, LLC v. Finkelstein*, 2010 WL 2991000, at *6 (N.J. Super. Ct. App. Div. July 28, 2010); *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 509 (2d Cir. 2009) (New York law); *Albert v. Cowart*, 727 S.E.2d 564, 572 (N.C. App. 2012).

- The defenses of voluntary payment, waiver, ratification, and unclean hands, which are recognized in the states in this subclass, require consideration of individualized evidence. *See* App. C at 5-6, 8, 11, 17-18.

7.     The members of this subclass are not ascertainable. *See* Opp. at 61-66.

### 4.     Unjust Enrichment Subclass 4

Plaintiffs' proposed Unjust Enrichment Subclass 4 includes customers from Alabama and Texas. Plaintiffs identify these states as including the requirement that they prove the defendant engaged in wrongful conduct. Mot. App. I at 16. Plaintiffs' motion and trial plan make no mention of other elements of this cause of action required under the laws of these states. This subclass cannot be certified for the following reasons:

1.     In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity. Nor can they avoid enforcement of the arbitration clause without individualized evidence. *See* Opp. at 22-24.

2.     Plaintiffs propose Charles Jones as the representative for this subclass. He is not a typical or adequate representative of this or any other subclass. *See id.* at 13, 32-40.

3.     The significant differences described below between the laws governing the claims of Jones and the laws governing the claims of other members of this subclass prevent any finding of typicality or adequacy. Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification. *See id.* at 33, 35, 37-39.

4.     There is no commonality or predominance for the same reasons that pervade all of plaintiffs' proposed subclasses. *See* p. 7 above.

5.     Plaintiffs' grouping of these two states does not account for material differences in the applicable law, which preclude commonality and predominance and render the subclass unmanageable.[109] Differences include the following:

- Alabama law does not permit a claim for unjust enrichment if the parties have a written contract.[110] Texas law permits unjust enrichment claims even if the

---

[109] *See Wyeth, Inc. v. Blue Cross & Blue Shield of Ala.*, 42 So. 3d 1216, 1222 (Ala. 2010) (vacating class certification of unjust enrichment claim because of differences in state unjust enrichment laws).

parties have a valid contract if the claim is for overpayment under the contract.[111]

- Under Alabama law, plaintiffs have the burden of proving that their claims fall within the statute of limitations.[112]  Under Texas law, the defendant bears the initial burden of demonstrating that the claims are untimely.[113]

6.      The claims and defenses applicable to this subclass require consideration of individualized issues.  *See* Opp. at 47-48.  For example:

- The unjust enrichment law of each state in this subclass requires evaluating all of the circumstances to determine if an inequity occurred.[114]  As discussed above, *see* p. 23, that evaluation inherently involves multiple individualized determinations of facts that will be unique to each class member.  Courts from these states have refused to certify unjust enrichment classes for this reason.[115]

- Individual evidence will be needed to determine the posting order applicable to each class member at any given time in each state, whether an individual claims to have a contract with the bank, the communications the bank had with each class member, and the specific version of the contract that each customer received.  *See* pp. 10-11 above.

- The defenses of voluntary payment, waiver, ratification, and unclean hands, which are recognized in the states in this subclass, require consideration of individualized evidence.  *See* App. C at 5-6, 8, 11, 17-18.

7.      The members of this subclass are not ascertainable.  *See* Opp. at 61-66.

---

[110] *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (when "express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails") (citation omitted).

[111] *Southwestern Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469-70 (Tex. 1998) ("[I]n some circumstances, overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment.").

[112] *Ferdon Realty Co. v. Keith*, 487 So. 2d 917, 918 (Ala. Civ. App. 1985) (burden of establishing that action was filed within the statute of limitations is on the plaintiff, which "is an exception to the general rule that the party who pleads an affirmative defense must prove it").

[113] *West v. Proctor*, 353 S.W.3d 558, 568 (Tex. Ct. App. 2011).

[114] *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1122-23 (Ala. 2003); *Foley v. Daniel*, 346 S.W.3d 687, 690-91 (Tex. App. 2009).

[115] *Heilman*, 876 So.2d at 1123 ("Because unjust enrichment claims are fact specific to each case, this Court has repeatedly held that such claims are unsuitable for class action treatment.").

C.        **Unconscionability Subclasses**

Plaintiffs propose three subclasses for their claim of unconscionability. Unconscionability, to the extent such a claim even exists as a recognized affirmative cause of action, is particularly unsuited to class treatment.  "[U]nconscionability is ultimately a determination to be made in light of a variety of factors not unifiable into a formula."  *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008) (citation and internal quotations omitted).  As discussed further below, the factors that courts typically evaluate to make an unconscionability determination can be assessed only on an individual basis, considering the specific facts applicable to each class member.  It is significant that plaintiffs have failed to cite a single case in which a court has certified any "unconscionability" class, much less a class asserting such a claim under the laws of multiple states.

1.        **Unconscionability Subclass 1**

Plaintiffs' Unconscionability Subclass 1 includes customers from fifteen different states and the District of Columbia.[116]  Plaintiffs assert that these jurisdictions require a demonstration of both substantive and procedural unconscionability.  Mot. App. I at 17. Plaintiffs' trial plan does not contain any analysis at all of how these states determine what qualifies as unconscionable or any description of other required elements of unconscionability. This subclass is not properly certified for the following reasons:

1.        In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity.  Nor can they avoid enforcement of the arbitration clause without individualized evidence.  *See* Opp. at 22-24.

2.        Plaintiffs propose Angela Gonzalez, Francis Knight Pinckney, Murlee Damor, Anthony Poulin, and Charles Jones as the representatives of this subclass.  *See id.*  None of these individuals is a typical or adequate representative of this or any other subclass.  *See id.* at 10-12, 13, 32-40.

---

[116] This proposed subclass includes customers from Alabama, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Georgia, Maryland, Nevada, New Jersey, North Carolina, Pennsylvania, South Carolina, Tennessee, and Texas.  *See* Mot. App. I at 17.

3.      Plaintiffs also offer Celia Spears-Haymond, the named plaintiff in the separate *Spears-Haymond* suit, as a representative of this subclass.  For the reasons stated above, *see* p. 6, Spears-Haymond cannot represent a subclass in this case.[117]

4.      No subclass in this case can include customers from California, because the class definition pled in the complaint explicitly excludes such customers.

5.      The significant differences described below between the laws governing the claims of the proposed class representatives and the laws governing the claims of other members of this subclass prevent any finding of typicality or adequacy.  Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification.  *See* Opp. at 33, 35, 37-39.

6.      There is no commonality or predominance of issues in this class for the same reasons that pervade all of plaintiffs' proposed subclasses.  *See* p. 7 above.

7.      Most of the states in this subclass have affirmatively rejected unconscionability as a cause of action for damages.[118]  Colorado allows such a claim for declaratory relief only, which provides no basis for plaintiffs' damages claims.[119]

8.      Although most of the laws of states in this subclass evaluate both procedural and substantive unconscionability, they vary widely on how to weigh the two types of

---

[117] As explained in Wells Fargo's separate Opposition to class certification in the *Spears-Haymond* case, she is not an adequate or typical class representative in any suit.

[118] *See, e.g.*, *Sanders v. Colonial Bank of Ala.*, 551 So. 2d 1045, 1045 (Ala. 1989); *Bennett v. Behring Corp.*, 466 F. Supp. 689, 700 (S.D. Fla. 1979); *Rubio v. Capital One Bank*, 613 F.3d 1195, 1205-06 (9th Cir. 2010) (applying California law); *Johnson v. Long Beach Mortgage Loan Trust 2001-4*, 451 F. Supp. 2d 16, 36 (D.D.C. 2006); *Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315, 1318 (N.D. Ga. 1998); *Donnelly v. Option One Mortgage Corp.*, 2012 WL 4490642, at *7 (D.N.J. Sept. 26, 2012); *Ahmed v. Deutsche Bank, N.A.*, 2011 WL 3425460, at *5 (D. Nev. Aug. 4, 2011); *Witmer v. Exxon Corp.*, 394 A.2d 1276, 1286 (Pa. Super. Ct. 1978); *Barnes v. Univ. Fed. Credit Union & Gov't Employees Ins. Co.*, 2010 WL 2133946, at *7 (Tex. App. May 27, 2010); *see also Cowin Equip. Co. v. General Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir. 1984) ("Our review of the Code provisions and the relevant cases persuades us that U.C.C. § 2-302 was not intended to create a cause of action, and cannot be used as a basis for damages in the instant case.").

[119] *Ricotta v. Finance Am., LLC*, 2007 WL 987854, at *3 (D. Colo. Apr. 2, 2007).

unconscionability.  These differences preclude any finding of commonality or predominance and render the subclass unmanageable.

- The laws of California, New Jersey, Nevada, and North Carolina each use a "sliding scale" approach, under which a stronger showing of one type can excuse a weaker showing on the other.[120]

- Under District of Columbia law, either procedural or substantive unconscionability can suffice, if sufficiently egregious.[121]

- Colorado uses a seven factor test which incorporates both procedural and substantive elements to determine if, on the whole, the clause is unconscionable, with no single factor being determinative.[122]

- Other states judge the two types of unconscionability independently.[123]

- Florida courts have used a variety of approaches.[124]

9.     The factors used to evaluate procedural unconscionability also vary widely across the laws of the states in this subclass and sometimes directly conflict, precluding any finding of commonality or predominance and rendering the subclass unmanageable.

- Alabama, Georgia, and Delaware law consider whether the consumer could obtain the product from another vendor without agreeing to the unconscionable provisions.[125]  District of Columbia law looks to see whether one party "lacked meaningful choice."[126]  Texas law also inquires whether there was an absence of meaningful choice, but finds procedural

---

[120] *Armendariz v. Found. Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000); *Stelluti v. Casapenn Enters., LLC*, 1 A.3d 678, 687 (N.J. 2010); *D.R. Horton, Inc. v. Green*, 96 P.3d 1159, 1162-63 (Nev. 2004); *Tillman*, 655 S.E.2d at 370.

[121] *See Urban Invs., Inc. v. Branham*, 464 A.2d 93, 99 (D.C. 1983).

[122] *See Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986).

[123] *See Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005); *Scott v. Infostaf Consulting, Inc.*, 2010 WL 3884416, at *5 (W.D. Pa. Sept. 28, 2010); *LeBlanc v. Lange*, 365 S.W.3d 70, 88 (Tex. App. 2011).

[124] *See Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1134-35 (11th Cir. 2010).

[125] *See Blue Cross Blue Shield of Ala.*, 923 So.2d at 1087; *NEC Techs., Inc. v. Nelson*, 478 S.E.2d 769, 773 (Ga. 1996); *Graham v. State Farm Mut. Auto. Ins. Co.*, 565 A.2d 908, 913 (Del. 1989).

[126] *Urban Invs., Inc.*, 464 A.2d at 99.

unconscionability only if the circumstances surrounding the contract formation are "shocking."[127]

- Connecticut and New Jersey evaluate factors such as the age, intelligence, business acumen, and experience of the consumer, the consumer's understanding of the legal and financial system, whether the consumer could speak the language used to write the contract or is otherwise illiterate, or whether the party had the ability and opportunity to understand the challenged contractual term.[128] Under Alabama, however, a customer's illiteracy cannot support a finding of unconscionability.[129]

- Under Maryland law, procedural unconscionability must "look[] much like fraud or duress."[130]

- Nevada and California law find procedural unconscionability present simply through a showing that the term is in an adhesion contract.[131] Delaware law, however, does not consider the adhesive nature of a contract as a sign of unconscionability.[132]

- Maryland and Georgia law evaluate whether fine print was used or the terms were otherwise inconspicuous,[133] but Connecticut law refuses to find procedural unconscionability simply because the commercial party proffering a form contract failed to direct the consumer's attention to the challenged term.[134]

- Tennessee law simply considers "all the facts and circumstances" to determine whether a contracting party was "denied any opportunity for meaningful choice."[135]

---

[127] *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. 2005).

[128] *Smith v. Mitsubishi Motors Credit of Am., Inc.*, 721 A.2d 1187, 1191-92 (Conn. 1998); *Estate of Cohen ex rel. Perelman v. Booth Computers*, 22 A.3d 991, 1006 (N.J. Super. Ct. App. Div. 2011).

[129] *Green Tree Fin. Corp. v. Lewis*, 813 So. 2d 820, 825 (Ala. 2001).

[130] *Freedman v. Comcast Corp.*, 988 A.2d 68, 85 (Md. Ct. Spec. App. 2010).

[131] *D.R. Horton, Inc.*, 96 P.3d at 1162; *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532-33 (Ct. App. 1997).

[132] *Graham*, 565 A.2d at 912.

[133] *Freedman*, 988 A.2d at 85; *NEC Techs.*, 478 S.E.2d at 771-72.

[134] *See Smith*, 721 A.2d at 1191-92.

[135] *Taylor v. Butler*, 142 S.W.3d 277, 285 (Tenn. 2004).

35

10.     Similarly, the factors used to evaluate substantive unconscionability vary widely among the states in this subclass, and prevent any finding of commonality or predominance and render the subclass unmanageable.

- The laws of Texas, Tennessee, and New Jersey require a demonstration that the disparity in the contract's benefits shocks the conscience.[136]

- The District of Columbia, Alabama, and Pennsylvania evaluate whether the contract terms are "unreasonably favorable" to one party.[137]

- California, Delaware, New Jersey, Nevada, and North Carolina look at factors such as whether the terms are "one-sided," "harsh," or "oppressive."[138]

11.     Plaintiffs' grouping of these states does not account for other differences in the applicable law, which further preclude any finding of commonality or predominance and render the subclass unmanageable.

- Protest does not defeat the voluntary payment defense under the laws of most states in this subclass.  In contrast, a protest made at the time of payment can defeat the defense of voluntary payment under Colorado law.[139]

- For the defense of ratification, the law of Delaware does not require a demonstration of intent by the ratifying party.[140]  The laws of other states in this subclass do require a demonstration that the ratifying party intended the ratification.[141]

- For the defense of accord and satisfaction, most states in this subclass require that a good faith dispute exist over the amount owed.[142]  California,

---

[136] *Ski River Dev.*, 167 S.W.3d at 136; *Taylor*, 142 S.W.3d at 285; *Estate of Cohen*, 22 A.3d at 1006.

[137] *See, e.g.*, *Ex parte Foster*, 758 So.2d 516, 520 n.4 (Ala. 1999); *Riggs Nat'l Bank of Wash. D.C. v. District of Columbia*, 581 A.2d 1229, 1251 (D.C. 1990); *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa. 1981).

[138] *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) (California law); *Graham*, 565 A.2d at 912 (Delaware); *Estate of Cohen*, 22 A.3d at 1006 (New Jersey); *D.R. Horton*, 96 P.3d at 1162-63 (Nevada); *Tillman*, 655 S.E.2d at 370.

[139] *See Skyland Metro. Dist.*, 184 P.3d at 127.

[140] *See Papaioanu*, 186 A.2d at 750.

[141] *See Esau*, 201 P.2d at 32; *Young v. Data Switch Corp.*, 646 A.2d 852, 856 (Conn. 1994).

[142] *See, e.g.*, *Madden*, 598 So.2d at 862 (Ala. 1992); *So v. 514 10th St. Assocs. LP*, 834 A.2d 910, 912 (D.C. 2003).

36

Tennessee, and Florida law permit an accord and satisfaction to occur even if the debt is not disputed.[143]

- Under Delaware law, the equitable defense of unclean hands does not require demonstrating that the defendant was harmed by the plaintiff's actions.[144] Other states in this subclass do require a demonstration of harm to the defendant.[145]

12.    Unconscionability requires inherently individual determinations that cannot be adjudicated on a classwide basis.  These include the following:

- Procedural unconscionability, which focuses on the process of contract formation, is an inherently individual determination.[146]  Factors such as the age, education, sophistication, and literacy of the customers; whether the challenged contract terms were explained at the time of contract formation; whether an individual had other available alternatives; whether an individual was given an opportunity to review the contract; and whether high pressure tactics were used, *see* pp. 34-35 above, are all factors that cannot be determined on a classwide basis.

- Substantive unconscionability is also an inherently individualized determination.  Whether a contract clause was grossly unfair, shocking to the conscience, oppressive, or otherwise commercially unreasonable, *see* p. 36 above, depends on numerous individual factors that differ from one class member to another.  For example, whether any particular fee was unfair or one-sided depends (among other things) on how often the customer overdrafted, whether she used available alternatives to avoid overdrafting, whether she knew or had reason to know of the bank's posting order and

---

[143] *See* Cal. Civ. Code § 1524; Tenn. Code Ann. § 24-7-107; Fla. Stat. § 725.05.

[144] *See Portnoy*, 940 A.2d at 81 n.206.

[145] *See, e.g., Brown v. Grimes*, 192 Cal. App. 4th 265, 284 (Cal. Ct. App. 2011); *Tribeca Lending Corp.*, 42 So.3d at 262; *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. Ct. App. 2003).

[146] *See, e.g., Cheshire Mortgage Serv., Inc. v. Montes*, 612 A.2d 1130, 1134 n.14 (Conn. 1992) (procedural unconscionability focuses on "process by which allegedly offensive terms found their way into the agreement"); *Pendergast*, 592 F.3d at 1135 (procedural unconscionability includes evaluating manner in which contract was entered into); *Freedman*, 988 A.2d at 85 (procedural unconscionability evaluates the process of making a contract); *Tillman*, 655 S.E.2d at 370 (procedural unconscionability evaluates "bargaining naughtiness"); *LeBlanc*, 365 S.W.3d at 88 (procedural unconscionability looks at "contract formation process") (citation omitted); *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J. Super. Ct. Ch. Div. 2002) (procedural unconscionability includes consideration of "the particular setting existing during the contract formation process").

overdraft fee structure, and whether using a particular alternative posting order would have caused additional overdraft fees or other adverse consequences for the customer.  These determinations can only be made through consideration of individual evidence.

- Plaintiffs' new-found emphasis on alleged "misrepresentations" as supporting this and other claims makes the need for consideration of individualized evidence all the greater.  *See* Opp. at 27-29.  Misrepresentation theories inherently require consideration of individualized evidence as to each customer's actual exposure to any alleged misrepresentations, the nature and content of each misrepresentation to which a given customer was exposed, the customer's understanding of the statement(s)at issue, and any resulting reliance and causation of harm.  Notably, none of the named plaintiffs in this case claims to have even seen, much less relied upon and been injured by, any class-wide misrepresentations concerning posting order.

- For states that weigh procedural and substantive unconscionability on a "sliding scale," individual evidence will be needed to determine if the two, in combination, met the applicable standard for each individual.

- Individual evidence will be needed to determine what contract language was in effect for each class member at what times and whether any part of it was unconscionable.  *See* pp. 10-11.

- The defenses of voluntary payment, waiver, ratification, and unclean hands, which are recognized in each of the states in this subclass, require consideration of individual evidence.  *See* App. C at 5-6, 8, 11, 17-18.

13.    Members of this subclass are not ascertainable.  *See* Opp. at 61-66.

**2.    Unconscionability Subclass 2**

Plaintiffs identify Unconscionability Subclass 2 as consisting of two states (Virginia and New York) whose laws, they say, require only proof of substantive unconscionability.  Mot. App. I at 17.  Plaintiffs' trial plan does not contain any analysis of how these states determine what qualifies as unconscionable or any description of other required elements of unconscionability.  This subclass cannot be certified for the following reasons.

1.    In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity.  Nor can they avoid enforcement of the arbitration clause without individualized evidence.  *See* Opp. at 22-24.

2.    Plaintiffs propose Robert Thornton, Jr., as the representative of this subclass.  He is not a typical or adequate representative of this or any other subclass.  *See id.* at 12-13, 32-40.

3.      The significant differences described below between the laws governing Thornton's claims and the laws governing the claims of other members of this subclass prevent any finding of typicality or adequacy.  Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representative will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification.  *See id.* at 33, 35, 37-39.

4.      There is no commonality or predominance of issues in this class for the same reasons that pervade all of plaintiffs' subclasses.  *See* p. 7 above.

5.      Plaintiffs have failed to demonstrate that any of these states recognizes unconscionability as a cause of action at all.  New York law is clear that it does not.[147]

6.      The laws of the states proposed for this subclass are materially different:

- Plaintiffs are simply incorrect that the laws of these two states require a showing of substantive unconscionability alone.  Under New York law, substantive unconscionability by itself is sufficient only in "exceptional cases" involving an "outrageous" contract provision.[148]  In all other cases, New York law uses a sliding scale between substantive and procedural unconscionability, with at least some showing of both required.[149]  Virginia law, in contrast, does not adopt the formal distinction between procedural and substantive unconscionability, but instead evaluates all the circumstances (including factors that other states would consider "procedural unconscionability") to determine if the contract provision "shocks the conscience."[150]

- New York law and Virginia law look to different procedural factors in the unconscionability analysis.  Under New York law, the question is whether there was a lack of meaningful choice, as evidenced by the presence of deceptive or high pressure tactics, fine print in the contract, or the consumer's lack of experience or education.[151]  Virginia law requires evaluating "all attendant circumstances, including the relationship and duties between the

---

[147] *See Pearson v. National Budgeting Sys., Inc.*, 297 N.Y.S.2d 59 (N.Y. App. Div. 1969).

[148] *See Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 829 (N.Y. 1988).

[149] *See State v. Wolowitz*, 468 N.Y.S.2d 131, 145 (App. Div. 1983); *Dabriel, Inc. v. First Paradise Theaters Corp.*, 952 N.Y.S.2d 506, 510 (App. Div. 2012).

[150] *March v. Tysinger Motor Co.*, 2007 WL 4358339, at *4 n.5 (E.D. Va. Dec. 12, 2007); *Mgmt. Enters., Inc. v. Thorncroft Co.*, 416 S.E.2d 229, 231 (Va. 1992); *Derby v. Derby*, 378 S.E.2d 74, 78-80 (Va. Ct. App. 1989).

[151] *See Dabriel*, 952 N.Y.S. 2d at 510.

parties" to determine if a party is "guilty of overreaching or oppressive conduct in securing an agreement which is so patently unfair."[152]

- The substantive components of unconscionability are also different in these two states.  Under New York law, the analysis requires consideration of the contract provision's commercial context, purpose, and effect "to determine whether the terms were unreasonably favorable" to the stronger party.[153] Virginia law simply asks whether the contract provision "shock[s] the conscience"[154] and looks to see if there is a "gross disparity" in the value exchanged that was the result of "oppressive influences."[155]

- New York has modified the voluntary payment doctrine by statute to allow individuals to avoid the doctrine based on certain mistakes of law.[156]  Virginia law applies the traditional common law rule that mistakes of law do not make a payment involuntary.[157]

- Under Virginia law, parties can effect an accord and satisfaction of an undisputed obligation without providing any new consideration.[158]  Under New York law, an accord and satisfaction requires a good faith dispute about the obligation between the parties.[159]

7.    Unconscionability requires inherently individual determinations that cannot be adjudicated on a classwide basis.  These include the following:

- Procedural unconscionability, which focuses on the process of contract formation, is an inherently individual determination.  Factors such as whether high pressure tactics were used, the experience and education of the consumer, and all other attendant circumstances, *see* pp. 39-40 above, cannot be determined on a classwide basis.

---

[152] *Derby*, 378 S.E.2d at 78.

[153] *Gillman*, 534 N.E.2d at 829.

[154] *Mgmt. Enters.*, 416 S.E.2d at 231.

[155] *Allocca v. Allocca*, 478 S.E.2d 702, 705 (Va. Ct. App. 1996) (quoting *Drewry v. Drewry*, 383 S.E.2d 12, 18 (Va. Ct. App. 1989)).

[156] *See Dillon*, 740 N.Y.S.2d at 397 (recognizing N.Y. C.P.L.R. § 3005 modifies common-law voluntary-payment rule to allow defense based on some mistakes of law).

[157] *Newton v. Newton*, 118 S.E.2d. 656, 659 (Va. 1961) (voluntary-payment defense not available based on mistakes of law).

[158] *See* Va. Code Ann. § 11-12.

[159] *See Patel*, 593 N.Y.S.2d at 853.

- Substantive unconscionability is also an inherently individualized determination. Whether a contract clause was shocking to the conscience, commercially reasonable given the commercial context, purpose, and effect, or contaminated with a gross disparity in the value exchanged, *see* p. 40 above, depends on numerous individual factors that differ from one class member to another. For example, whether any particular fee was unfair or one-sided depends (among other things) on how often the customer overdrafted, whether she used available alternatives to avoid overdrafting, whether she knew or had reason to know of the bank's posting order and overdraft fee structure, and whether using a particular alternative posting order would have caused additional overdraft fees or other adverse consequences for the customer. These determinations can only be made through consideration of individual evidence.

- Under New York law, which uses a sliding scale to weigh procedural and substantive unconscionability, individual evidence will be needed to determine if the two, in combination, satisfy the applicable standard for each potential class member.

- Individualized evidence will be required to evaluate plaintiffs' claims of misrepresentations. *See* p. 38 above.

- Individual evidence will be needed to determine what contract language was in effect for each class member at what times and whether any part of it was unconscionable. *See* pp. 10-11.

- The defenses of voluntary payment, waiver, ratification, and unclean hands, which are recognized in each of the states in this subclass, require consideration of individual evidence. *See* App. C at 5-6, 8, 11, 17-18.

8. Members of this subclass are not ascertainable. *See* Opp. at 61-66.

### 3. Unconscionability Subclass 3

Plaintiffs propose that Unconscionability Subclass 3 include customers from Arizona, Illinois, Kansas, and Mississippi. Plaintiffs assert that these states "require only substantive *or* procedural unconscionability." Mot. App. I at 17. Plaintiffs' trial plan does not contain any analysis at all of how these states determine what qualifies as unconscionable or any description of other required elements of unconscionability. The defects in this subclass include the following:

1. This subclass has no class representative. Indeed, plaintiffs do not even identify a proposed representative for this subclass from a different lawsuit; they identify no class

representative at all.  For the reasons stated above, *see* p. 20, a subclass cannot be certified unless it has a representative who is a member of the subclass.

Plaintiffs suggest that the class representatives of Unconscionability Subclass 1 can also represent Unconscionability Subclass 3 because "[i]f the Subclass No. 1 representatives prove both substantive and procedural unconscionability, they have necessarily proved the claims of Subclass 3."  Mot. App. I at 17.  Plaintiffs cite no authority for the proposition that a named plaintiff can represent a class of which she is not a member.  The law is to the contrary. The Eleventh Circuit has held that *no* claim may be pursued in a class action on behalf of a class or subclass for which there is no named plaintiff with standing as a member of that class.[160] Moreover, plaintiffs' reasoning cannot withstand scrutiny:  As shown above, there are substantial variations in the definition of procedural and substantive unconscionability within the laws of states included in Subclass 1.  There is no guarantee that a successful representative of that class will have proven the required elements for a claim under the laws of the states in this subclass.

2.      Even if the proposed representatives of Subclass 1 (or any other named plaintiff in this case) could represent this subclass, those individuals are not typical or adequate class representatives of this or any other subclass.  *See* p. 32 above.  Nor can Spears-Haymond, who is not a plaintiff in this case, represent any class or subclass in this case.  *See* p. 6 above.

3.      In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity.  Nor can they avoid enforcement of the arbitration clause without individualized evidence.  *See* Opp. at 22-24.

4.      There is no commonality or predominance of issues in this class for the same reasons that pervade all of plaintiffs' proposed subclasses.  *See* p. 7 above.

5.      The significant differences described below between the laws governing the claims of the proposed class representatives and the laws governing the claims of other members of this subclass prevent any finding of typicality or adequacy.  Moreover, any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will

---

[160] *See Prado-Steiman*, 221 F.3d at 1279-80; *see also Abercrombie v. Lum's, Inc.*, 345 F. Supp. 387, 393 (S.D. Fla. 1992); *Marable*, 2006 WL 2547992, at *7; *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987); *Wooden*, 247 F.3d at 1287-88.

extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification.  *See* Opp. at 33, 35, 37-39.

6.      Plaintiffs have not demonstrated that any of these states recognize "unconscionability" as an independent cause of action allowing recovery of damages.  Arizona, Mississippi, and Kansas law clearly do not.[161]

7.      Plaintiffs are incorrect that the laws of these jurisdictions require only one type of unconscionability.  Under Arizona law, substantive unconscionability standing alone *may* sometimes suffice, but procedural unconscionability standing alone is not sufficient.[162]  Under Mississippi law, both types of unconscionability must ordinarily be established.[163]  Kansas law uses a ten factor test that includes both procedural and substantive elements to evaluate whether the contract as a whole is unconscionable.[164]

8.      Plaintiffs ignore substantial differences in the law of unconscionability in these four jurisdictions, which preclude any finding of commonality or predominance and render the subclass unmanageable.  For example, the factors used to evaluate procedural unconscionability vary widely across these states:

- Arizona law looks to the age, education, intelligence, business acumen and experience of the parties, whether there were alternative sources of supply, and whether the terms were explained to the weaker party.[165]

- Mississippi law looks to whether a party lacked voluntariness or knowledge, whether the contract had inconspicuous print or complex legalistic language,

---

[161] *See Brosnahan v. JP Morgan Chase Bank*, 2010 WL 2181490, at *3 (D. Ariz. May 26, 2010); *Frye v. Am. Gen. Fin., Inc.*, 307 F. Supp. 2d 836, 844 (S.D. Miss. 2004); *Gonzales v. Associates Fin. Serv. Co. of Kan., Inc.*, 967 P.2d 312, 324 (Kan. 1998) (holding that the unconscionability provision in the Uniform Consumer Credit Code does not create an affirmative cause of action), *superseded by statute on other grounds as recognized in In re Miner*, 369 B.R. 655, 668 (Bankr. D. Kan. 2007).

[162] *Maxwell v. Fidelity Fin. Servs. Inc.*, 907 P.2d 51, 59 (Ariz. 1995).

[163] *Norwest Fin. Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1193 (Miss. 2005) (noting that unconscionability "has been defined as an absence of meaningful choice on the part of one of the parties, *together with* contract terms which are unreasonably favorable to the other party"(emphasis added)).

[164] *Wille v. Sw. Bell Tel. Co.*, 549 P.2d 903, 906-07 (Kan. 1976).

[165] *Maxwell*, 907 P.2d at 58; *Seekings v. Jimmy GMC of Tucson, Inc.*, 638 P.2d 223, 227 (Ariz. Ct. App.), *approved in part and vacated in part by* 638 P.2d 210 (Ariz. 1981).

and whether there was an opportunity to study the contract and inquire about its terms.[166]

- Kansas law evaluates the "circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect," whether disadvantageous clauses are hidden in a "mass of fine print trivia or in places which are inconspicuous" using "language that is incomprehensible," as well as the existence of exploitation of the underprivileged, unsophisticated, uneducated, and the illiterate.[167]

- Illinois law looks at whether there was an "impropriety during the process of forming the contract."[168]

9.    Similarly, the factors used to evaluate substantive unconscionability vary widely among the states in this subclass and preclude any finding of commonality or predominance and render the subclass unmanageable.

- Under Arizona and Illinois law, substantive unconscionability "examines the relative fairness of the obligations assumed," including factors such as whether the terms are so one-sided as to oppress or unfairly surprise, whether there is an overall imbalance in the obligations and rights of the bargain, and significant cost-price disparity.[169]

- Kansas law questions whether there has been a denial of basic rights and remedies to the consumer and whether penalty clauses have been included.[170]

- Mississippi law asks whether "one party [has been] deprived of all the benefits of the agreement."[171]

10.    Additional differences in the laws of the states in this subclass include the following.

---

[166] *See Citigroup Global Markets, Inc. v. Braswell*, 57 So.3d 638, 645 (Miss. Ct. App. 2011).

[167] *See Wille*, 549 P.2d at 906-07.

[168] *ChampionsWorld, LLC v. U.S. Soccer Fed'n, Inc.*, -- F. Supp. 2d --, 2012 WL 3580536, at *28 (N.D. Ill. Aug. 17, 2012).

[169] *See Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 267 (Ill. 2006); *Maxwell*, 907 P.2d at 58.

[170] *See Wille*, 549 P.2d at 906-07.

[171] *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 699-700 (Miss. 2009).

- Under Mississippi and Arizona law, the unconscionability determination is made based on the circumstances that existed at the time the contract was created.[172]  Illinois and Kansas law under certain circumstances permit consideration of subsequent developments in the unconscionability analysis.[173]

- Under Mississippi law, an accord and satisfaction can be achieved even as to undisputed claims.[174]  Other states in this subclass require a good faith dispute over the amount owed as an element of this defense or proof of new consideration.[175]

11.    Unconscionability requires inherently individual determinations that cannot be adjudicated on a classwide basis.  These include the following:

- Procedural unconscionability, which focuses on the process of contract formation, is an inherently individual determination.  Factors such as the age, education, intelligence, business acumen and experience of the parties, the existence of alternative sources of supply, whether the terms were explained to each class member, whether there was an opportunity to study the contract and ask questions about it, or whether there were other improprieties in the contract formation process, *see* pp. 43-44 above, are all factors that cannot be determined on a class-wide basis.

- Substantive unconscionability is also an inherently individualized determination.  Whether a contract clause was one-sided, oppressive, caused unfair surprise, led to an overall imbalance in the rights and obligations of the parties or a denial of basic rights or the benefit of the bargain, *see* p. 44 above, depends on numerous individual factors that differ from one class member to another.  For example, whether any particular fee was unfair or one-sided depends (among other things) on how often the customer overdrafted, whether she used available alternatives to avoid overdrafting, whether she knew or had reason to know of the bank's posting order and overdraft fee structure, and whether using a particular posting order would have caused additional overdraft fees or other adverse consequences for the customers.  These determinations can only be made through consideration of individual evidence.

---

[172] *See Maxwell*, 907 P.2d at 57; *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 657 (S.D. Miss. 2000).

[173] *See Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 621 (Ill. 2006); *Kansas Baptist Convention v. Mesa Operating Ltd. P'ship*, 864 P.2d 204, 218 (Kan. 1993).

[174] *See Sherwin-Williams Co.*, 419 So. 2d at 1334.

[175] *See People's Exch. Bank of Elmdale*, 29 P.2d at 1083-84; *In re Estate of Castro*, 683 N.E.2d 1255, 1259 (Ill. App. Ct. 1997).

- Individualized evidence will be required to evaluate plaintiffs' claims of misrepresentations. *See* p. 38 above.

- Individual evidence will be needed to determine what contract language was in effect for each class member at what times and whether any part of it was unconscionable. *See* pp. 10-11.

- The defenses of voluntary payment, waiver, ratification, and unclean hands, which are recognized in each of the states in this subclass, require consideration of individualized evidence. *See* App. C at 5-6, 8, 11, 17-18.

12.     Members of this subclass are not ascertainable. *See* Opp. at 61-66.

**D.      State Statutory Subclasses**

Plaintiffs seek certification of two subclasses to pursue statutory claims under New Jersey and California law. These subclasses cannot be certified for the following reasons.

**1.      New Jersey Statutory Claim Subclass**

Plaintiffs seek to certify a subclass of New Jersey consumers to pursue a claim under N.J. Stat. §56:8-2. *See* Mot. App. I at 18.

1.      In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity. Nor can they avoid enforcement of the arbitration clause without individualized evidence. *See* Opp. at 22-24.

2.      Plaintiffs propose Murlee Damor and Anthony Poulin as the representatives of this subclass. They are not typical or adequate representatives of this or any other subclass. *See Id.* at 10-11, 32-40.[176]

3.      There is no commonality or predominance of issues in this subclass for the same reasons that pervade all of plaintiffs' subclasses. *See* p. 7 above.

4.      Any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification. *See* Opp. at 37-39.

---

[176] This Court has previously held that a named plaintiff must reside within a state to have standing under that state's unfair and deceptive practices statute. *See* DE # 305. For that reason, none of the other named plaintiffs in this case have standing to pursue this claim.

5.      To prevail on this claim, plaintiffs would be required to present individual evidence.  Courts applying this New Jersey statute have declined to certify class actions for precisely this reason.[177]  Individual evidence will be needed on at least the following issues:

- New Jersey law defines "unconscionable commercial practice" for purposes of the NJCFA to mean one that lacks "good faith, honesty in fact and observance of fair dealing."[178]  Whether the overdraft fees charged to a particular customer were unconscionable under this standard depends on a variety of individual factors, including how often the customer overdrafted, whether she used available alternatives to avoid overdrafting, whether she knew or had reason to know of the bank's posting order and overdraft fee structure, and whether using a particular alternative posting order would have caused additional overdraft fees or other adverse consequences for the customer.  This can only be demonstrated through individual evidence.

- The New Jersey Supreme Court has held that a class claim under the NJCFA requires a demonstration of causation with respect to each individual class member.[179]  In a case such as this, that demonstration cannot be made on a classwide basis.  To the extent that plaintiffs rely on their allegations that class members were given inaccurate balance information or other misleading statements or advertisements made by the bank, *see Garcia* SAC ¶¶ 56-59, they must prove that those statements were made to each class member.[180]  This proof can only be accomplished on an individual basis.

- The defenses of voluntary payment and mitigation of damages require consideration of individualized evidence.  *See* App. C at 11, 15-16.

6.      The members of this subclass are not ascertainable.  *See* Opp. at 61-66.

---

[177] *See, e.g.*, *McNair v. Synapse Group, Inc.*, 2009 WL 1873582, at *9-10 (D.N.J. June 29, 2009) (certification of NJCFA class requires plaintiffs to demonstrate causal link between allegedly unlawful act and plaintiffs' claimed injury, which required demonstrating that alleged conduct would affect all class members in the same way); *Demmick v. Cellco P'ship*, 2010 WL 3636216, at *16-17 (D.N.J. Sept. 8, 2010) (declining to certify NJCFA class because individual inquiry into information putative class members had at time of decision would be necessary to establish causation).

[178] *See Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994) (citation omitted).

[179] *See International Union of Operating Eng'rs Local # 68 v. Merck & Co.*, 929 A.2d 1076, 1087 (N.J. 2007).

[180] *See, e.g.*, *Mann v. TD Bank, N.A.*, 2010 WL 4226526, at *8 (D.N.J. Oct. 20, 2010); *Demmick*, 2010 WL 3636216, at *16-17.

### 2.        California Statutory Claim Subclass

Plaintiffs seek to certify a subclass of California consumers to pursue a claim under California's Business & Professions Code § 17200.  *See* Mot. App. I at 18.  This subclass fails for the following reasons.

1.        The complaint in this case alleges no cause of action under any California statute, and therefore no class can be certified based on such a claim.  *See Anderson v. U.S. Dep't of Housing & Urban Dev.*, 554 F.3d 525, 529 (5th Cir. 2008) (holding district court abused its discretion by certifying a class based on claims not pleaded in the complaint).  Moreover, the class definition pled in the complaint explicitly excludes California customers.  It is plain, therefore, that no "subclass" to pursue any such claim may be certified in this case.

2.        No plaintiff in this case is from California, and, as this Court has previously recognized, none has standing to assert any claim under this statute.  *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1325 & n.13 ("Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state.").

3.        This subclass has no representative because no plaintiff in *this* case is from California.  Instead, plaintiffs propose that this class be represented by Celia Spears-Haymond, the plaintiff in the separate *Spears-Haymond* suit.[181]  For the reasons stated above, *see* p. 6, a subclass cannot be certified in a case unless it has a representative who is a plaintiff in *this* case.

4.        Even if they were members of this subclass (which they are not), the named plaintiffs in this case could not satisfy the test for typicality and would be inadequate representatives of any subclass.

5.        In light of the arbitration clause in Wachovia's contracts, plaintiffs cannot establish numerosity.  Nor can they avoid enforcement of the arbitration clause without individualized evidence.  *See* Opp. at 22-24.

6.        There is no predominance or commonality in this subclass for the same reasons that pervade all of plaintiffs' subclasses.  *See* p. 7 above.

---

[181] Spears-Haymond would not be an adequate or typical class representative even if she were a plaintiff in this case, as explained in Wells Fargo's separate opposition in the *Spears-Haymond* case.

7.      Any alternative posting order that plaintiffs select to promote the claims of the proposed class representatives will extinguish or reduce the claims of other class members, creating a conflict of interest within the class that bars certification.  *See* Opp. at 37-39.

8.      As explained in Appendix A to Wells Fargo's Opposition in the *Spears-Haymond* case, plaintiffs would be required to present individualized evidence to prove this claim.  *See Spears-Haymond* Opp., App. A at 19-20.  In the unlikely event that plaintiffs actually seek to pursue this claim in this case, Wells Fargo incorporates those arguments here by reference.

9.      The members of this subclass are not ascertainable.  *See* Opp. at 61-66.