# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

---

**IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION**

**MDL No. 2036**

---

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*D. Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685
D. Or. Case No. 3:09-cv-01329-ST

*Zankich v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

---

## MOTION OF DEFENDANT WELLS FARGO BANK, N.A. TO DISMISS ALL CLAIMS OF ABSENT CLASS MEMBERS IN FAVOR OF ARBITRATION

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................... 1

II.     RELEVANT BACKGROUND ................................................................................. 1

     A.    Factual Background ..................................................................................... 1

     B.    Procedural Background ................................................................................ 4

III.    ARGUMENT ......................................................................................................... 4

     A.    The Absent Class Members Have Arbitration Agreements Encompassing Their Claims Against Wells Fargo. ........................................................... 5

          1.    There Is a Presumption of Arbitrability Under the Federal Arbitration Act Requiring the Rigorous Enforcement of Arbitration Agreements. ......................................................... 5

          2.    The Absent Class Members Have Arbitration Agreements with Wells Fargo. ...................................................................... 6

          3.    The "Scope" of the Arbitration Agreement Is For the Arbitrator to Determine, But It Is Clear In Any Event That the Agreement Encompasses the Absent Class Members' Claims. .................................. 7

               a)    The Parties Have Delegated to the Arbitrator the Question of Whether the Absent Class Members' Claims Fall Within the Scope of the Arbitration Agreement. ......................................... 7

               b)    In Any Event, All of the Absent Class Members' Claims Fall Within the Scope of the Arbitration Agreement. ..................... 9

     B.    Wells Fargo Did Not Waive Its Right to Arbitration with the Absent Class Members. ............................................................................................ 9

     C.    The Absent Class Members Have No Other Grounds to Avoid Enforcement of Their Arbitration Agreements. .................................... 13

          1.    Any Questions of Arbitrability Are to Be Determined by the Arbitrator ..................................................................... 13

          2.    The Arbitration Agreements Are Enforceable in Any Event ................... 14

               a)    The Arbitration Agreement Is Not Procedurally Unconscionable. .................................................................. 15

b) Even If Any Provision of the Arbitration Agreement Were Substantively Unconscionable, the Agreement Would Still Be Enforceable...........................................................................17

c) The Arbitration Agreement Is Not Substantively Unconscionable.........................................................................18

D. The Court Should Dismiss All of the Absent Class Members' Claims In Favor of Arbitration or, In the Alternative, Stay These Proceedings Until Those Claims Have Been Arbitrated. ..................................................20

IV. CONCLUSION...............................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*
97 F. Supp. 2d 320 (E.D.N.Y. 2000) ....................................................................11, 12

*AT&T Mobility LLC v. Concepcion*
131 S. Ct. 1740 (2011)...................................................................................5, 15, 20

*AT&T Techs., Inc. v. Communications Workers of Am.*
475 U.S. 643 (1986)............................................................................................6, 9

*Barras v. Branch Banking & Trust Co.*
685 F.3d 1269 (11th Cir. 2012) .........................................................17, 18, 19, 20

*Black v. JP Morgan Chase & Co.*
2011 WL 3940236 (W.D. Pa. Aug. 25, 2011) ......................................................20

*Blocker v. Wells Fargo Bank*
2010 WL 6403721 (D. Or. Nov. 23, 2010)...........................................................15

*Caley v. Gulfstream Aerospace Corp.*
428 F.3d 1359 (11th Cir. 2005) ...........................................................................14

*Chastain v. Robinson-Humphrey Co., Inc.*
957 F.2d 851 (11th Cir. 1992) ...............................................................................7

*Clerk v. ACE Cash Express, Inc.*
2010 WL 364450 (E.D. Pa. Jan. 29, 2010)...........................................................20

*Contec Corp. v. Remote Solution Co., Ltd.*
398 F.3d 205 (2d Cir. 2005)...................................................................................8

*Cruz v. Cingular Wireless, LLC*
648 F.3d 1205 (11th Cir. 2011) .....................................................................15, 18

*Daugherty v. Encanna Oil & Gas (USA), Inc.*
2011 WL 2791338 (D. Colo. July 15, 2011) ........................................................15

*Dean Witter Reynolds, Inc. v. Byrd*
470 U.S. 213 (1985)...............................................................................................6

*Doctor's Assocs., Inc. v. Casarotto*
517 U.S. 681 (1996)..............................................................................................16

iii

*Estep v. World Fin. Corp. of Ill.*
735 F. Supp. 2d 1028 (C.D. Ill. 2010) ...............................................................20

*Fallo v. High-Tech Inst.*
559 F.3d 874 (8th Cir. 2009) ..............................................................................8

*First Options of Chicago, Inc. v. Kaplan*
514 U.S. 938 (1995) ............................................................................................8

*Fisher v. A.G. Becker Paribas Inc.*
791 F.2d 691 (9th Cir. 1986) .............................................................................13

*Garcia v. Wachovia Corp.*
699 F.3d. 1273 (11th Cir. 2012) ..........................................................................4

*Gilmer v. Interstate/Johnson Lane Corp.*
500 U.S. 20 (1991) ...............................................................................................5

*Given v. M&T Bank Corp.*
674 F.3d 1252 (11th Cir. 2012) ..........................................................................8

*Graziani v. Novellus Sys., Inc.*
2003 WL 23977829 (D. Or. Sept. 16, 2003) .....................................................19

*Hafer v. Vanderbilt Mortg. and Fin., Inc.*
793 F. Supp. 2d 987 (S.D. Tex. 2011) ..........................................................11, 12

*Hartford Accident & Indem. Co. v. Beaver*
466 F.3d 1289 (11th Cir. 2006) ..................................................................1, 10, 12

*Harvey v. Joyce*
199 F.3d 790 (5th Cir. 2000) .............................................................................21

*Hough v. Regions Fin. Corp.*
672 F.3d 1224 (11th Cir. 2012) ....................................................................15, 16

*Howsam v. Dean Witter Reynolds, Inc.*
537 U.S. 79 (2002) ......................................................................................7, 8, 13

*Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*
659 F.2d 836 (7th Cir. 1981) ..............................................................................6

*In re Currency Conversion Fee Antitrust Litig.*
224 F.R.D. 555 (S.D.N.Y. 2004) .......................................................................12

*In re Currency Conversion Fee Antitrust Litig.*
361 F. Supp. 2d 237 (S.D.N.Y. 2005) ...............................................................12

iv

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
2011 WL 1753784 (N.D. Cal. May 9, 2011) ................................................................10, 11

*In re Titanium Dioxide Antitrust Litig.*
2012 WL 5947283 (D. Md. Nov. 27, 2012) ......................................................................11

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*
206 F.3d 411 (4th Cir. 2000) ............................................................................................6

*Jackson v. Payday Loan Store of Ill., Inc.*
2010 WL 1031590 (N.D. Ill. Mar. 17, 2010) ...................................................................20

*Jezek v. CareCredit*
LLC, 2011 WL 2837492 (N.D. Ill. July 18, 2011) ...........................................................20

*Kivisto v. National Football League Players Assoc.*
2011 WL 335420 (S.D. Fla. Jan. 31, 2011) .....................................................................20

*Krutchik v. Chase Bank USA, N.A.*
531 F. Supp. 2d 1359 (S.D. Fla. 2008) ............................................................................7

*Laguna v. Coverall N. Am., Inc.*
2011 WL 3176469 (S.D. Cal. July 29, 2011) ...................................................................11

*Lambert v. Austin Ind.*
544 F.3d 1192 (11th Cir. 2008) ........................................................................................6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*
473 U.S. 614 (1985)...........................................................................................................5

*Mora v. Harley-Davidson Credit Corp.*
2012 WL 1189769 (E.D. Cal. Apr. 9, 2012).............................................................10, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
460 U.S. 1 (1983).....................................................................................................5, 9, 20

*Olsher Metals Corp. v. Olsher*
2003 WL 25600635 (S.D. Fla. Mar. 26, 2003)................................................................20

*Pablo v. ServiceMaster Global Holdings Inc.*
2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) ..................................................................11

*Perera v. H&R Block E. Enters., Inc.*
__ F. Supp. 2d __, 2012 WL 5471942 (S.D. Fla. Nov. 9, 2012) (King, J.)...................4, 7, 20

*Powell-Perry v. Branch Banking & Trust Co.*
485 Fed. App'x 403, 2012 WL 3100780 (11th Cir. 2012) .......................................17, 19

*Qualcomm Inc. v. Nokia Corp.*
   466 F.3d 1366 (Fed. Cir. 2006)..............................................................................8

*Rent-A-Center, West, Inc. v. Jackson*
   130 S. Ct. 2772 (2010) ................................................................................6, 7, 8, 13

*Riensche v. Cingular Wireless, LLC*
   2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ...................................................16

*Roque v. Applied Materials, Inc.*
   2004 WL 1212110 (D. Or. Feb. 7, 2004)................................................................19

*S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*
   906 F.2d 1507 (11th Cir. 1990) ...............................................................................9

*Saleh v. Titan Corp.*
   353 F. Supp. 2d 1087 (S.D. Cal. 2004)...................................................................10

*Sam Reisfeld & Son Import Co. v. S.A. Eteco*
   530 F.2d 679 (5th Cir. 1976) ..................................................................................20

*Scott v. Prudential Secs., Inc.*
   141 F.3d 1007 (11th Cir. 1998) ................................................................................8

*Smith v. Bayer Corp.*
   131 S. Ct. 2368 (2011) ............................................................................................10

*Smith v. ComputerTraining.com Inc.*
   772 F. Supp. 2d 850 (E.D. Mich. 2011)..................................................................20

*Stone v. E. F. Hutton & Co., Inc.*
   898 F.2d 1542 (11th Cir. 1990) ................................................................................5

*T&R Enters., Inc. v. Continental Grain Co.*
   613 F.2d 1272 (5th Cir. 1980) ..................................................................................7

*Tepper Realty Co. v. Mosaic Tile Co.*
   259 F. Supp. 688 (S.D.N.Y. 1966)...........................................................................6

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*
   432 F.3d 1327 (11th Cir. 2005) .....................................................................8, 14, 17

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*
   363 U.S. 574 (1960)...................................................................................................5

*Whittington v. Taco Bell of Am., Inc.*
   2011 WL 1772401 (D. Colo. May 10, 2011)..........................................................11

*Zepeda v. United States INS*
    753 F.2d 719 (9th Cir. 1983) ............................................................................10

**OTHER STATE CASES**

*Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*
    671 N.W.2d 213 (Minn. App. 2003).................................................................17

*Baker v. Jones*
    240 P.2d 1165 (Wyo. 1952)..............................................................................18

*Beilfuss v. Huffy Corp.*
    685 N.W.2d 373 (Wis. App. 2004)...................................................................18

*Brucker v. McKinlay Transp., Inc.*
    557 N.W.2d 536 (Mich. 1997)..........................................................................17

*Coppedge v. Leiser*
    229 P.2d 977 (Idaho 1951)................................................................................17

*Corti v. Fleisher*
    417 N.E.2d 764 (Ill. App. 1981) .......................................................................17

*Cronin v. Fitness*
    2005 WL 1515369 (Ohio. App. 2005)..............................................................20

*Edwards v. Edwards*
    744 N.W.2d 243 (Neb. App. 2008)...................................................................17

*Fonte v. AT&T Wireless Servs., Inc.*
    903 So. 2d 1019 (Fla. 4th DCA 2005) .............................................................15

*Gillett v. Williamsville State Bank*
    34 N.E.2d 552 (Ill. App. 1941) .........................................................................19

*In re Green Tree Servicing LLC*
    275 S.W.3d 592 (Tex. App. 2008)....................................................................15

*In re Halliburton Co.*
    80 S.W.3d 566 (Tex. 2002)...............................................................................16

*In re Palm Harbor Homes, Inc.*
    195 S.W.3d 672 (Tex. 2006).............................................................................16

*In re Poly-America, L.P.*
    262 S.W.3d 337 (Tex. 2008).............................................................................17

*Johnson v. Olympic Liquidating Trust*
    953 P.2d 494 (Alaska 1998)..............................................................................17

*Livingston v. Metropolitan Pediatrics, LLC*
    227 P.3d 796 (Or. Ct. App. 2010) ................................................................................. 20

*Matter of Marriage of McInnis*
    110 P.3d 639 (Or. App. 2005) ...................................................................................... 17

*Minnesota Voyageur Houseboats, Inc. v. Las Vegas Marine Supply, Inc.*
    690 N.W.2d 762 (Minn. App. 2005) ............................................................................ 19

*Oakes Farming Ass'n v. Martinson Bros.*
    318 N.W.2d 897 (N.D. 1982) ....................................................................................... 17

*Olliver/Pilcher Ins., Inc. v. Daniels*
    715 P.2d 1218 (Ariz. 1986) .......................................................................................... 17

*Padilla v. State Farm Mut. Auto. Ins. Co.*
    68 P.3d 901 (N.M. 2003) .............................................................................................. 17

*Riehl v. Cambridge Ct. GF, LLC*
    226 P.3d 581 (Mont. 2010) .......................................................................................... 17

*Roussalis v. Wyoming Med. Ctr., Inc.*
    4 P.3d 209 (Wyo. 2000) ............................................................................................... 15

*Sanford v. Sanford*
    694 N.W.2d 283 (S.D. 2005) ....................................................................................... 17

*Satomi Owners Ass'n v. Satomi, LLC*
    225 P.3d 213 (Wash. 2009) ................................................................................... 15, 16

*Sosa v. Paulos*
    924 P.2d 357 (Utah 1996) ............................................................................................ 18

*Spratt v. Security Bank of Buffalo, Wyo.*
    654 P.2d 130 (Wyo. 1982) ........................................................................................... 19

*Strand v. U.S. Bank Nat'l Ass'n ND*
    693 N.W. 2d 918 (N.D. 2005) ...................................................................................... 15

*Sunset Mobile Home Park v. Parsons*
    324 N.W.2d 452 (Iowa 1982) ...................................................................................... 17

*Taylor Bldg. Corp. of Am. v. Benfield*
    884 N.E.2d 12 (Ohio 2008) .......................................................................................... 17

*Univex Int'l, Inc. v. Orix Credit Alliance, Inc.*
    914 P.2d 1355 (Colo. 1996) ......................................................................................... 17

*Victor Werlhof Aviation Ins. v. Garlick*
    771 P.2d 962 (Mont. 1989) ...................................................................................19

*Vincent v. Santa Cruz*
    647 P.2d 379 (Nev. 1982) ....................................................................................17

*Walter v. National City Bank*
    330 N.E.2d 425 (Ohio 1975) ...............................................................................19

*Walters v. A.A.A. Waterproofing, Inc.*
    85 P.3d 389 (Wash. App. 2004) ..........................................................................19

*Wisconsin Auto Title Loans, Inc. v. Jones*
    714 N.W. 2d 155 (Wis. 2006) ............................................................................15

*Zuver v. Airtouch Commc'ns, Inc.*
    103 P.3d 753 (Wash. 2004) .................................................................................18

**FEDERAL STATUTES**

9 U.S.C. § 1 ...............................................................................................................5

9 U.S.C. § 2 ...............................................................................................................5

9 U.S.C. § 3 ...........................................................................................................1, 4

Pursuant to 9 U.S.C. § 3 of the Federal Arbitration Act ("FAA"), defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully moves the Court to dismiss all claims of putative absent class members ("Absent Class Members") in favor of arbitration or, in the alternative, to stay all proceedings in these cases  pending arbitration of those claims on an individual basis as required by each absent class member's contract with the bank.

While the Absent Class Members are not yet part of this litigation, and are therefore not currently subject to this Court's jurisdiction, *see Hartford Accident & Indem. Co. v. Beaver*, 466 F.3d 1289, 1294 (11th Cir. 2006), this will change if this Court certifies one or more classes in response to plaintiffs' pending motion for class certification.  Wells Fargo accordingly makes this arbitration motion at this time so that if the Court does certify one or more classes in these cases, it can address the arbitration obligation of the Absent Class Members at the first possible moment.  If the Court declines to certify any class (as it should), this arbitration motion will be moot.

## I.      INTRODUCTION

As plaintiffs acknowledge in their complaints, each of the Absent Class Members' checking accounts with Wells Fargo is governed by a Consumer Account Agreement.  That contract requires individual, non-class arbitration of any dispute with the bank relating to the account.  *See* Declaration of Karen Moore in Support of Arbitration Motion ("Moore Arbitration Dec.") ¶ 6 & Ex. 11 at 4-5.  Throughout the course of this litigation, Wells Fargo repeatedly stated that it would invoke this contractual arbitration provision with the Absent Class Members when and if that issue became ripe.  If the Court certifies a class in these cases, thereby bringing the Absent Class Members into this litigation for the first time as parties, that time will have arrived.

## II.     RELEVANT BACKGROUND

### A.      Factual Background

Each of the Absent Class Members had a checking account with Wells Fargo, the terms of which were contained in a standardized Consumer Account Agreement.  *See* DE # 437

¶ 37 & Ex. A; DE # 354 ¶ 38 & Ex. A; *Zankich* DE # 1 ¶ 12.[1]  *See also* Moore Arbitration Dec. ¶¶ 2, 6 & Ex. 11.  At all relevant times, it was Wells Fargo's standard practice to provide a copy of the Consumer Account Agreement when a customer opened a new account or was added to an existing account.  Moore Arbitration Dec. ¶ 2.  Wells Fargo trained its bankers on account opening and maintenance procedures, including the requirement to provide the Consumer Account Agreement to customers.  *Id.*  In 1999 to 2001, following a merger with another bank, Wells Fargo mailed each of its existing deposit account customers a new copy of the then-current version of the Consumer Account Agreement.  *Id.* ¶ 4.  Similarly, the bank provided all former Wachovia customers whose accounts were converting onto the Wells Fargo banking system with a then-current Wells Fargo agreement at the time of conversion, which occurred between 2009 and 2012.  *Id.* ¶ 5.

At the time of account opening, Wells Fargo required each customer to sign a Consumer Account Application, which acknowledged that the customer had received a copy of the account agreement and agreed to be bound by its terms.  *Id.* ¶ 3 & Ex. 1.  The application explicitly stated that the customer was agreeing "to the terms of the dispute resolution program described in the account agreement ….  Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge."  *Id.*

Many terms of the Consumer Account Agreement varied over time and from location to location.  However, every version of the agreement during the relevant period required individual, non-class arbitration of any disputes concerning the customer's account.  Moore Arbitration Dec. ¶ 6 & Exs. 2-14.  In each version, the arbitration terms were set off by an appropriate heading ("**Dispute Resolution Program:  Arbitration Agreement**") in large, highlighted or bolded type and were separately listed in the Table of Contents.  *See, e.g., id.* Ex. 11 at ii & 4 (emphasis in original).  The arbitration clause stated:

---

[1]  The complaint in *Zankich* was never filed in this Court and is not included in the central MDL docket.  Therefore, that document is cited as "*Zankich* DE # 1," which refers to its docket number in the Western District of Washington (Case No. C-08-1476-RSM).

## Dispute Resolution Program:  Arbitration Agreement

This section constitutes the Arbitration Agreement between you and the Bank.

**Non-Judicial Resolution of Disputes.**  If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that any dispute between or among you and the Bank, regardless of when it arose, shall be resolved by the following arbitration process.  You understand and agree that you and the Bank are each waiving the right to a jury trial or a trial before a judge in a public court.

**Disputes.**  A dispute is any unresolved disagreement between or among you and the Bank … arising out of or relating in any way to your Account and/or Services.  It includes any dispute relating in any way to your Accounts and Services; to your use of any Bank location or facility; or to any means you may use to access the Bank, such as an Automated Teller Machine (ATM) or Online Banking.  It includes claims based on broken promises or contracts, torts (injuries caused by negligent, or intentional conduct) or other wrongful actions.  It also includes statutory, common law, and equitable claims.  A dispute also includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Agreement.  A dispute does not include a claim that may be filed in small claims court.  If you have a dispute that is within the jurisdiction of the small claims court, you should file your claim there.

**Binding Arbitration.**  Binding arbitration is a means of having an independent third party resolve a dispute without using the court system, judges, or juries.  Either you or the Bank may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced.  If either you or the Bank fails to submit to binding arbitration following a lawful demand, the one who fails to submit bears all costs and expenses (including attorney's fees and expenses) incurred by the other compelling arbitration.

**Neither you nor the Bank shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity.**

Each arbitration, including the selection of the arbitrator shall be administered by the American Arbitration Association (AAA), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes (excluding the Optional Procedures for Large, Complex Commercial Disputes) and the Optional Rules for Emergency Measures of Protection of the AAA ("AAA Rules").  …

*Id.* Ex. 11 at 4-5 (emphasis in original).

3

### B.    Procedural Background

Plaintiffs filed these putative class action suits to challenge Wells Fargo's posting order for debit-card transactions.  *See, e.g.,* DE # 437 ¶¶ 1-12.  In its answers to plaintiffs' complaints, Wells Fargo asserted the existence of the arbitration agreements as an affirmative defense to any claims brought on behalf of the Absent Class Members, stating:  "Absent members of the putative classes have a contractual obligation to arbitrate any claims they have against Wells Fargo."  *See* DE # 548 at 21; DE # 549 at 23; *Zankich* DE # 10 at 10 ¶ 16.

On April 19, 2010, in order to make its position as clear as possible, Wells Fargo filed a statement with the Court explaining that it was not moving to compel arbitration against absent class members at that time because its arbitration rights as to those individuals "are not yet at issue."  DE # 390 at 2.  Later, during the course of briefing its post-*Concepcion* arbitration motion against the named plaintiffs, Wells Fargo repeatedly and explicitly pointed out that the bank's arbitration rights vis-à-vis absent class members were not yet ripe and would not become ripe until the class certification stage.  *See, e.g.*, DE #s 1384 at 10 n.3, 1972 at 2 n.3.  Plaintiffs offered no disagreement with this point in any of their multiple briefs on that motion (*see* DE #s 1514, 1971, 2036) or at oral argument (*see* DE #s 1556, 2189).  While this Court (and the Eleventh Circuit) ultimately held that Wells Fargo had waived its arbitration rights as to the named plaintiffs (*see* DE # 2224; *Garcia v. Wachovia Corp.*, 699 F.3d. 1273, 1275 (11th Cir. 2012)), neither court questioned the bank's arbitration rights against the Absent Class Members.

It has thus been clearly understood by all concerned throughout the entire course of this litigation that Wells Fargo intended to enforce its arbitration rights against the Absent Class Members as soon as jurisdictionally possible.  Should the Court now decide to certify a class in these cases, which would bring the Absent Class Members into this litigation as parties for the first time, this issue will become ripe.

### III.    ARGUMENT

Pursuant to 9 U.S.C. § 3 of the FAA, the claims of the Absent Class Members should be dismissed.  *See Perera v. H&R Block E. Enters., Inc.*, __ F. Supp. 2d __, 2012 WL 5471942, at *4-5 (S.D. Fla. Nov. 9, 2012) (King, J.) (dismissal of a plaintiff's claims is proper under 9 U.S.C. § 3 if all such claims are subject to arbitration).  In the alternative, these cases should be stayed pursuant to 9 U.S.C. § 3 in favor of arbitrating the claims of the Absent Class Members.

A.      **The Absent Class Members Have Arbitration Agreements Encompassing Their Claims Against Wells Fargo.**

1.      **There Is a Presumption of Arbitrability Under the Federal Arbitration Act Requiring the Rigorous Enforcement of Arbitration Agreements.**

The FAA provides that:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  Congress enacted the FAA to ensure the "rapid and unobstructed enforcement of arbitration agreements."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23 (1983).  The FAA establishes a public policy strongly favoring arbitration and requires courts to enforce arbitration agreements according to their terms.  *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1742 (2011); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985).

The Supreme Court has held that, when a contract contains an arbitration clause, there is a presumption of arbitrability to promote the federal policy favoring arbitration, and "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  Any doubts as to the scope of arbitrable issues or the applicability of an arbitration clause must be resolved in favor of arbitration.  *Stone v. E. F. Hutton & Co., Inc.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (citing *Moses H. Cone*, 460 U.S. at 24-25).

The FAA requires the rigorous enforcement of written arbitration agreements.  9 U.S.C. §§ 1, *et seq*.  Section 3 of the FAA states in relevant part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Under this statute, a court faced with an arbitration motion plays a limited role.  It should make no inquiry into the merits of the case.  *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986).  The only issues for the court to decide (to the extent they are not delegated to the arbitrator) are (i) whether there is a valid arbitration agreement between the parties and (ii) whether the dispute falls within the scope of the arbitration agreement.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777-78 & n.1 (2010).  If these conditions are met, the court is required to "either stay or dismiss a lawsuit and to compel arbitration."  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).  The FAA leaves no discretion on this matter.  *Byrd*, 470 U.S. at 218.

## 2.      The Absent Class Members Have Arbitration Agreements with Wells Fargo.

Here, it is beyond reasonable dispute that agreements to arbitrate the claims at issue exist between Wells Fargo and the Absent Class Members.  The primary claim asserted on behalf of the Absent Class Members is for alleged breach of an implied covenant of good faith and fair dealing in the very same contract that contains the arbitration provision at issue. Plaintiffs even attached that contract to their complaints.  *See, e.g.,* DE # 437 ¶¶ 103-112 & Ex. A.

As many courts have held in similar circumstances, a party may not sue to receive the benefits of a contract while at the same time denying the existence of the arbitration agreement it contains.  Chief Judge Moreno observed as much in *Rampersad v. Primeco Personal Communications, L.P.*, holding that a plaintiff "cannot claim [a] contract was not formed to avoid arbitration and concurrently sue for breach of that contract."  2001 WL 34872572, at *1 (S.D. Fla. Oct. 16, 2001).  Numerous other courts have similarly rejected the suggestion that a plaintiff may simultaneously plead a breach of contract and yet deny formation of that same contract when confronted with its arbitration mandate.[2]

---

[2]  *See, e.g.*, *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (party cannot claim benefit of contract and simultaneously avoid its arbitration provisions); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981) (party cannot claim liability for nonperformance under contract and "at the same time" deny the contract to avoid arbitration); *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966) ("In short, the plaintiffs cannot have it both ways.").

In any event, the evidence is clear that Wells Fargo's customers affirmatively accepted the contract – and its arbitration provision – as a condition of opening and using their bank accounts. (*See* pp. 2-4 above.)  A party's signature accepting a contract with an arbitration provision is sufficient to require a court to send any disputes to arbitration. *T&R Enters., Inc. v. Continental Grain Co.*, 613 F.2d 1272, 1278 (5th Cir. 1980).

This *prima facie* showing that Wells Fargo customers routinely enter into arbitration agreements with the bank at account opening creates a presumption that the agreements exist and are enforceable. *Krutchik v. Chase Bank USA, N.A.*, 531 F. Supp. 2d 1359, 1364-65 (S.D. Fla. 2008).  This presumption can be rebutted only through an "unequivocal denial" (*i.e.*, an affirmative statement that a specific customer did not receive the arbitration agreement) and particularized evidence "to substantiate the denial." *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851, 854 (11th Cir. 1992) (quoting *T&R Enters.*, 613 F.2d at 1278). *See also Perera*, 2012 WL 5471942, at *2 (citing *Wheat, First Sec., Inc. v. Green*, 993 F.2d 814, 817 (11th Cir. 1993).  Thus, to establish that any particular Absent Class Member was not subject to an arbitration agreement, that class member would need to deny unequivocally that he or she received and accepted the account agreement and would need to present evidence to substantiate that unequivocal denial.

### 3.    The "Scope" of the Arbitration Agreement Is For the Arbitrator to Determine, But It Is Clear In Any Event That the Agreement Encompasses the Absent Class Members' Claims.

#### a)    The Parties Have Delegated to the Arbitrator the Question of Whether the Absent Class Members' Claims Fall Within the Scope of the Arbitration Agreement.

Upon determining that a written arbitration agreement exists, a court will typically then evaluate whether the parties' dispute falls within the scope of that agreement.  A different procedure applies, however, where (as here) the arbitration agreement provides that any questions of arbitrability – including specifically whether the dispute is within the scope of the agreement – are to be determined by the *arbitrator*, not the Court.

The Supreme Court has held repeatedly that where the parties have "clearly and unmistakably" agreed that issues of arbitrability are delegated to the arbitrator, such issues must be decided by the arbitrator, not a court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002); *see also Rent-A-Center*, 130 S. Ct. at 2777-78 & n.1.  Upon finding that an arbitration agreement delegates these threshold determinations of arbitrability to the arbitrator, a court must

refer to the arbitrator *all* defenses to enforcement of the arbitration provision. *Howsam*, 537 U.S. at 84; *Rent-A-Center*, 130 S. Ct. at 2777. This delegation includes the question of whether the underlying dispute is within the scope of what is arbitrable. *Given v. M&T Bank Corp.*, 674 F.3d 1252, 1256-57 (11th Cir. 2012); *Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1011 (11th Cir. 1998). Even if there is a reasonable basis for disagreement about whether the arbitration clause encompasses plaintiffs' claims, any such disagreement is itself subject to mandatory arbitration. *See Scott v. Prudential Secs., Inc.*, 141 F.3d 1007, 1011 (11th Cir. 1998).

Here, the arbitration agreement explicitly provides that all disputes between the parties are subject to arbitration, and that this "includes any disagreement about the meaning of this Arbitration Agreement, and whether a disagreement is a 'dispute' subject to binding arbitration as provided for in this Arbitration Agreement." Moore Arbitration Dec. Ex. 11 at 4. This shows a "clear and unmistakable" intent to have the arbitrator decide whether a claim is arbitrable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Moreover, all versions of the Wells Fargo arbitration agreement during the pertinent period explicitly incorporate the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which provide: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Commercial Arbitration Rule R-7(a), *available at* http://www.adr.org/aaa/faces/rules. The Eleventh Circuit, like other courts, has held that the incorporation of these AAA Rules in an arbitration agreement serves as a clear and unmistakable expression of the parties' intent to delegate these questions of arbitrability to the arbitrator. *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005).[3]

Given the clear showing that the Absent Class Members are parties to arbitration agreements that delegate arbitrability issues to the arbitrator, there is nothing else for this Court to decide. All issues involving arbitrability – including any arguments relating to scope – must be left for the arbitrator to resolve.

---

[3]  *See also Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371-73 (Fed. Cir. 2006).

          **b)**      **In Any Event, All of the Absent Class Members' Claims Fall Within the Scope of the Arbitration Agreement.**

Even if the parties had not delegated the issue of scope to the arbitrator, it would be clear that all of the claims asserted on behalf on the Absent Class Members fall within the scope of the arbitration provision in the Consumer Account Agreement.  A dispute is encompassed within the scope of an arbitration provision unless it can be said that the provision is not susceptible to an interpretation that covers the asserted dispute.  *Moses H. Cone*, 460 U.S. at 24-25.  Given the presumption in favor of arbitrability, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail" in defeating an arbitration provision. *AT&T Techs.*, 475 U.S. at 654 (internal marks and citation omitted).

Here, the arbitration agreement applies to "any unresolved disagreement" between the parties "relating in any way" to the checking accounts at issue.  Moore Arbitration Dec. Ex. 11 at 4.  When such language is used, the strong presumption in favor of arbitrability applies with even greater force.  *See AT&T Techs.*, 475 U.S. at 650.

All aspects of plaintiffs' claims in these cases arise from a challenge to the practices and procedures through which Wells Fargo calculates overdraft fees charged to plaintiffs' checking accounts.  *See, e.g.,* DE # 437 ¶¶ 1-12.  Therefore, all of the claims brought on behalf of the Absent Class Members fall within the scope of the arbitration provision, which broadly encompasses all disputes that concern or relate "in any way" to the customer's checking account.

**B.**     **Wells Fargo Did Not Waive Its Right to Arbitration with the Absent Class Members.**

Plaintiffs' counsel have previously conceded in this MDL that, before class certification, this Court lacks jurisdiction over absent class members for purposes of enforcing a bank's arbitration rights.  (*See* p. 12 below.)  Wells Fargo anticipates that plaintiffs may nonetheless argue that the bank waived its right to arbitrate the claims of the Absent Class Members by not moving earlier in this litigation to compel arbitration of those claims.  Any such argument would be without merit.

A finding of waiver requires both conduct inconsistent with an *existing* arbitration right and prejudice to the opposing party arising out of that inconsistent conduct.  *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.*, 906 F.2d 1507, 1514 (11th Cir. 1990).  Here, Wells Fargo had no existing right to enforce its arbitration agreements with the non-party Absent Class

Members prior to class certification proceedings.  Moreover, the proceedings to date have all been pursued by the named plaintiffs with full knowledge that Wells Fargo would invoke arbitration as to the Absent Class Members' claims at the proper time.

The Eleventh Circuit has confirmed the "unremarkable proposition that absent class members are not part of a lawsuit until certification." *Hartford*, 466 F.3d at 1294.[4]  Any arbitration motion by Wells Fargo against the Absent Class Members prior to class certification proceedings would have been improper, as the Court would have had no subject matter jurisdiction over such non-parties. *See, e.g., Zepeda v. United States INS*, 753 F.2d 719, 727 (9th Cir. 1983) (court had no jurisdiction over absent putative class members "unless the district judge certifies a class of plaintiffs"); *Saleh*, 353 F. Supp. 2d at 1090-92 (court lacked jurisdiction to entertain motion directed against "putative class members … prior to resolution of the certification issue").

Moreover, any attempt by Wells Fargo at the outset of this litigation to compel arbitration with members of the various classes that plaintiffs are now attempting to certify would have been impossible, as those classes are materially different from the classes originally alleged by plaintiffs in their operative complaints. *Compare* DE # 437 (Martinez 2nd Am. Complaint) ¶ 21 *with* Am. Class Mot. at 1.  Nor was there any way for Wells Fargo to have demanded arbitration from the Absent Class Members before class certification.  Plaintiffs' counsel in this litigation had not yet been appointed by the Court to represent absent members of a certified class and so had no authority to speak for them.  Nor was there any practical way for Wells Fargo to reach out directly to millions of unidentified non-party customers about arbitration of hypothetical claims they knew nothing about.  Thus, until the class certification stage, Wells Fargo lacked any basis or means to enforce its arbitration rights as to the claims of non-party Absent Class Members.

---

[4]  *See also Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011) (confirming that an unnamed class member is not a party to the class-action litigation before the class is certified); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) ("[P]utative class members are not parties to an action prior to class certification."); *Mora v. Harley-Davidson Credit Corp.*, 2012 WL 1189769, at *15 (E.D. Cal. Apr. 9, 2012) (same); *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004) (same).

Courts have routinely found that the proper time for a defendant to invoke arbitration with respect to putative absent class members is at – or even after – the class certification stage. *See, e.g., In re Titanium Dioxide Antitrust Litig.*, 2012 WL 5947283, at *4 n.3 (D. Md. Nov. 27, 2012) ("[T]he Defendant in this case could not have moved to compel arbitration any time before class certification, since putative class members are not parties to the litigation until after the class has been certified."); *In re TFT-LCD (Flat Panel) Litig.*, 2011 WL 1753784, at *3-4 (N.D. Cal. May 9, 2011) (motion to compel arbitration against absent class members properly raised for the first time after class was certified); *Pablo v. ServiceMaster Global Holdings Inc.*, 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011) (rejecting argument that defendants waived arbitration rights against unnamed class members by litigating class claims prior to class certification proceedings); *Mora*, 2012 WL 1189769, at *15 (arbitration not available against unnamed class members prior to class certification); *Laguna v. Coverall N. Am., Inc.*, 2011 WL 3176469, at *8 (S.D. Cal. July 29, 2011) ("Defendants cannot move to compel arbitration against putative class members prior to certification of a class."); *Whittington v. Taco Bell of Am., Inc.*, 2011 WL 1772401, at *5 (D. Colo. May 10, 2011) (same); *Hafer v. Vanderbilt Mortg. and Fin., Inc.*, 793 F. Supp. 2d 987, 1010 n.12 (S.D. Tex. 2011) (same); *Allied Sanitation, Inc. v. Waste Mgmt. Holdings, Inc.*, 97 F. Supp. 2d 320, 328 (E.D.N.Y. 2000) (no waiver where initial arbitration demand made two months after class was certified).

For example, in *In re TFT-LCD (Flat Panel) Litig.*, the court found that "defendants have not waived their right to arbitrate against unnamed members of the … class" by failing to move to compel arbitration until after a class was certified (having in the interim litigated the case vigorously for an extended period), because:

> [i]t does not appear to the Court that defendants could have moved to compel arbitration against [the unnamed class members] prior to the certification of a class in this case because, as defendants point out, putative class members are not parties to an action prior to class certification.

*Id.*, 2011 WL 1753784, at *3-4 (internal quotations omitted). *See also Mora,* 2012 WL 1189769, at *15 (finding that defendant did not waive its right to seek arbitration by waiting until class certification, as a defendant "does not have a right to compel arbitration against unnamed Class members prior to class certification"); *Whittington*, 2011 WL 1772401, at *5 (an arbitration motion against absent class members is premature prior to class certification because the absent

class members "are not currently before the court and, because a class has not yet been certified, have not even received notice of the litigation"); *Hafer*, 793 F. Supp. 2d at 1010 n.12 (same).

Plaintiffs' counsel in this MDL have previously relied on this very principle as support for the reasonableness of a settlement they reached with another bank that also had an arbitration clause in its account agreement. In support of the settlement of the Chase Bank cases in this MDL, plaintiffs' counsel submitted an expert declaration from Brian Fitzpatrick, Professor of Law at Vanderbilt University, who pointed out that any finding of waiver of arbitration rights against the named plaintiffs in those cases would not simply carry over to a waiver of the bank's rights against absent class members. As Professor Fitzpatrick explained:

> [E]ven if the plaintiffs were to win their waiver arguments with regard to the named plaintiffs, it is an entirely different question whether [the bank] waived its rights against absent class members. Prior to class certification, absent class members cannot be bound by what transpires in a piece of litigation. *See Smith v. Bayer Corp.*, 131 S.Ct. 2368, 2380 (2011).

DE # 3010-3 at 10 (also citing *In re TFT-LCD (Flat Panel) Antitrust Litig.* and *Allied Sanitation, Inc.*).[5] Professor Fitzpatrick opined that "[t]his consideration alone … paints a very challenging picture for the plaintiffs" in obtaining a successful result in the litigation against Chase. *Id.* at 11.

Finally, the Absent Class Members cannot possibly establish the surprise or resulting prejudice necessary to establish waiver, as they have suffered no prejudice at all. Given that they were not parties to this case prior to class certification, *see Hartford*, 466 F.3d at 1294, they have no duty to reimburse plaintiffs' counsel for legal work performed to date. Nor have the Absent Class Members incurred any other burdens in connection with this litigation.

_____

[5] Although Professor Fitzpatrick suggested that courts "have split" on this issue (DE # 3010-3 at 10), the only contrary case he could cite was *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005), which actually supports Wells Fargo's position. In that case, the district court rejected a defendant's attempt to add an arbitration clause to its existing agreements with certain putative class members *after* the litigation had already been initiated. *Id.* at 251-52. This holding had no effect on other class members who agreed to arbitration *before* they became putative class members in the litigation. The court held that for any "class members [who] agreed to arbitration *before* they became putative class members in this litigation, the arbitration clauses in their cardholder agreements can be enforced." *Id.* at 258. *See also In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 570 (S.D.N.Y. 2004) (again holding that arbitration clauses added after suit was commenced are unenforceable against putative class members at class certification stage, but "[a]rbitration agreements reached between [putative class members] and Defendants before commencement of this litigation are fully enforceable.").

Moreover, even if legal fees and costs incurred by counsel prior to class certification could be attributed to the Absent Class Members, such expenses would not justify a finding of waiver.  Wells Fargo has repeatedly stated that it intended to invoke its arbitration rights against the Absent Class Members when and if the issue became ripe.  Given Wells Fargo's clear statements to this effect, any expenditures made by plaintiffs' counsel resulted from their deliberate strategy to proceed in an improper forum in contravention of the Absent Class Members' arbitration obligations.  *See Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir. 1986) (finding any such "wound" to be "self-inflicted").  Such self-inflicted expenses do not establish prejudice sufficient to constitute a waiver of arbitration rights.  *Id.*

### C. The Absent Class Members Have No Other Grounds to Avoid Enforcement of Their Arbitration Agreements.

#### 1. Any Questions of Arbitrability Are to Be Determined by the Arbitrator.

It is possible that plaintiffs may argue that the Wells Fargo arbitration agreement is unenforceable against some or all of the Absent Class Members because some aspect of the agreement is unconscionable under the laws of the states in which those customers reside.[6]  As discussed above (at pages 7-8), such gateway issues of "arbitrability" are for the arbitrator, not the court, to decide where the parties have "clearly and unmistakably" agreed to such a delegation.  *Howsam*, 537 U.S. at 84; *Rent-A-Center*, 130 S. Ct. at 2777-78 & n.1.  Issues of unconscionability fall within these threshold determinations that parties may delegate to the arbitrator.  *Rent-A-Center*, 130 S. Ct. at 2777.

The Wells Fargo arbitration agreement explicitly incorporates the Commercial Arbitration Rules of the AAA, which provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope *or validity* of the arbitration agreement."  AAA Commercial Arbitration Rule R-7(a) (emphasis added).  The Eleventh Circuit has held that incorporation of this AAA rule in an arbitration

---

[6] The Court previously denied Wells Fargo's arbitration motion against the named plaintiffs solely on the ground of waiver and explicitly declined to address plaintiffs' unconscionability arguments.  *See* DE # 2224 at 9 n.8.  The Eleventh Circuit similarly did not address unconscionability in connection with Wells Fargo's appeal of that order.

agreement requires unconscionability issues to be resolved by an arbitrator, not a judge.  *See Terminix Int'l Co., LP*, 432 F.3d at 1332-33.

Given the clear showing that the parties have delegated arbitrability issues to the arbitrator, all such issues – including any arguments asserting unconscionability under state law – must be left for the arbitrator to resolve.

**2.**      **The Arbitration Agreements Are Enforceable in Any Event.**

Even if issues of unconscionability were for this Court to decide, Wells Fargo is aware of no argument plaintiffs could make that would undermine the Absent Class Members' contractual obligation to arbitrate, on an individual basis, the claims presented in these cases.[7]

The unconscionability analysis – to the extent it is not preempted by the FAA – is a matter of state law.  *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005); *see also* DE # 1853 at 10.  Here, the Consumer Account Agreement contains a choice of law provision stating that, to the extent state law applies, the pertinent law is that of the state where the account at issue is maintained (which is typically the state where the account is opened).  *See* Moore Arbitration Dec. ¶ 20 & Ex. 11 at 36.  Therefore, the state laws pertinent to any unconscionability challenge on behalf of the Absent Class Members would be those of Alaska, Arizona, Colorado, Idaho, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, South Dakota, Texas, Utah, Washington, Wisconsin, and Wyoming.  *See id.* ¶ 20.  (Although Wells Fargo maintained checking accounts in California, plaintiffs have specifically excluded that state from this litigation.)

Wells Fargo does not currently know what specific arguments on unconscionability plaintiffs might make or what state laws they might seek to invoke in making such arguments.  The bank will necessarily have to present its specific responses to any such arguments after it learns what they are.  However, it offers below some general observations on the subject based on arguments plaintiffs have made previously in these and other cases in this MDL.

---

[7]  Wells Fargo presents the points set forth below for the Court's consideration solely in the event it determines that these issues are not delegated to the arbitrator.  The presentation of these arguments should not be construed as a waiver of the bank's position on delegation.

### a)      The Arbitration Agreement Is Not Procedurally Unconscionable.

As plaintiffs themselves have acknowledged (Am. Class Mot., App. I at Ex. C), the laws of most of the relevant states require both procedural *and* substantive unconscionability to be shown for a contract to be defeated.  If there is no proof of procedural unconscionability, that ends the analysis, and substantive unconscionability need not even be considered.[8]

Plaintiffs have previously argued that Wells Fargo's arbitration agreement is procedurally unconscionable because it is a contract of adhesion, with its text in "tiny font."  *See* DE # 1514 at 29.  Such arguments are both factually inaccurate and legally untenable under all, or virtually all, of the applicable state laws.

An arbitration clause is not procedurally unconscionable merely because it is found in a contract of adhesion.[9]  As the Supreme Court has observed, "the times in which consumer contracts were anything other than adhesive are long past."  *Concepcion*, 131 S. Ct. at 1750; *see also Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1211 (11th Cir. 2011) (noting that consumer contracts are almost universally "adhesive").  "The fact that the contract at issue in *Concepcion* was an adhesion contract did not affect the Supreme Court's analysis and, indeed, the majority in *Concepcion* appeared to be little troubled by that fact."  *Daugherty v. Encanna Oil & Gas (USA), Inc.*, 2011 WL 2791338, at *9 (D. Colo. July 15, 2011).  Given this, a claim of unconscionability is not meaningfully enhanced by characterizing the agreement as an adhesion

---

[8]  *See, e.g., Strand v. U.S. Bank Nat'l Ass'n ND*, 693 N.W. 2d 918, 924 (N.D. 2005) ("[A] party alleging unconscionability [under North Dakota law] must demonstrate some quantum of both procedural and substantive unconscionability."); *Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 246 (Wyo. 2000) (same under Wyoming law); *Wisconsin Auto Title Loans, Inc. v. Jones*, 714 N.W. 2d 155, 165 (Wis. 2006) (same under Wisconsin law).  *See also Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025 (Fla. 4th DCA 2005) (same under Florida law).

[9]  *See Hough v. Regions Fin. Corp.*, 672 F.3d 1224, 1229 (11th Cir. 2012) ("[A]n adhesion contract is not per se unconscionable.").  *See also, e.g., Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 232 (Wash. 2009) ("[T]he fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable.") (citation omitted); *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 604 (Tex. App. 2008) ("Adhesion contracts are not automatically unconscionable.") (citation omitted); *Blocker v. Wells Fargo Bank*, 2010 WL 6403721, at *6 (D. Or. Nov. 23, 2010) ("[T]here is no rule pursuant to which contracts of adhesion are *per se* unenforceable.").

contract.  *See In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002); *Satomi Owners Ass'n*, 225 P.3d at 232.

Plaintiffs' additional argument that the arbitration provisions were not made sufficiently conspicuous is wrong as a factual matter and has in any event been squarely rejected as a permissible basis for refusing to enforce an arbitration agreement under the FAA.  Wells Fargo invites the Court to confirm for itself that the arbitration provision in the Consumer Account Agreement is clearly presented, identified in the table of contents, set off by an appropriate heading, and presented in the same typeface as the rest of the contract, with characteristics (boldface, capitals) designed to draw attention to the main provisions.  *See* Moore Arbitration Dec. Ex. 1 at ii, 4-6.  Nothing more is required.  *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (state law requiring arbitration agreement to be typed in underlined capital letters preempted by FAA where no such requirement applied to contract terms in general).[10]  Moreover, it has been Wells Fargo's practice throughout the entire proposed class period to have each customer sign an account application at account opening that expressly states, directly under the signature line, that disputes about the account "will be decided by one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge."  Moore Arbitration Dec. ¶ 3 & Ex. 1.

These facts are alone enough to defeat any claim of procedural unconscionability. Further undermining any such claim is the fact that Absent Class Members who did not wish to commit to arbitrating their disputes had the option of taking their banking business to any one of the many banks across the United States that did not include arbitration clauses in their deposit agreements.  *See, e.g., Riensche v. Cingular Wireless, LLC*, 2006 WL 3827477, at *6 (W.D. Wash. Dec. 27, 2006) (the existence of reasonable market alternatives cuts against a finding of procedural unconscionability).[11]

---

[10]  *See also, e.g., Hough*, 672 F.3d at 1229 (finding no procedural unconscionability where agreement refers to arbitration in table of contents and includes conspicuous language); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006) (finding no procedural unconscionability where agreement was "clearly labeled" as an arbitration agreement and "highlight[ed] that a jury trial is being waived").

[11]  That many banks did not employ arbitration clauses in their contracts is well known to this Court, as many such banks – Capital One, Union Bank, TD Bank, Citizens Bank, and others – are or have been parties in this MDL.

> **b)**   **Even If Any Provision of the Arbitration Agreement Were Substantively Unconscionable, the Agreement Would Still Be Enforceable.**

Before turning to potential arguments about substantive unconscionability, it should be observed at the threshold that no such arguments could support a refusal to enforce the arbitration agreements.  Plaintiffs' prior arguments about unconscionability (other than those addressing class action waivers) have focused on aspects of these and other banks' arbitration agreements that were not integral to the core agreement to arbitrate.  *See Barras v. Branch Banking & Trust Co.*, 685 F.3d 1269, 1283 (11th Cir. 2012); *Powell-Perry v. Branch Banking & Trust Co.*, 485 Fed. App'x 403, 2012 WL 3100780, at *3 (11th Cir. 2012).  Even if such a subsidiary and nonessential provision were deemed unconscionable therefore, such a finding would not render the arbitration agreement itself unenforceable.  Rather, as the Eleventh Circuit has made clear, the appropriate remedy would be to sever the offending provision.  *See Barras*, 685 F.3d at 1283; *Powell-Perry*, 2012 WL 3100780, at *3.  This conclusion is reinforced by the severability provision of the Consumer Account Agreement, which states:

> Any term of this *Agreement* which a court of competent jurisdiction determines to be unenforceable or invalid will not affect the enforceability or validity of the remaining provisions of this *Agreement*.

Moore Arbitration Dec. Ex. 11 at 37 (emphasis in original).  In the face of such a severability provision, "[i]f the offensive terms are severable, then the court must compel arbitration according to the remaining valid terms of the parties' agreement."  *Terminix Int'l Co.*, 432 F.3d at 1331.[12]  Therefore, even if any particular provision of the arbitration agreement were deemed

---

[12]  All of the state laws at issue recognize the ability of a court to sever an invalid term and enforce the remainder of a contract.  *See Johnson v. Olympic Liquidating Trust*, 953 P.2d 494, 497-98 (Alaska 1998); *Olliver/Pilcher Ins., Inc. v. Daniels*, 715 P.2d 1218, 1221 (Ariz. 1986); *Univex Int'l, Inc. v. Orix Credit Alliance, Inc.*, 914 P.2d 1355, 1357 (Colo. 1996); *Coppedge v. Leiser*, 229 P.2d 977, 979 (Idaho 1951); *Corti v. Fleisher*, 417 N.E.2d 764, 777 (Ill. App. 1981); *Sunset Mobile Home Park v. Parsons*, 324 N.W.2d 452, 457 (Iowa 1982); *Brucker v. McKinlay Transp., Inc.*, 557 N.W.2d 536, 540 (Mich. 1997); *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 671 N.W.2d 213, 221-22 (Minn. App. 2003); *Riehl v. Cambridge Ct. GF, LLC*, 226 P.3d 581, 588 (Mont. 2010); *Edwards v. Edwards*, 744 N.W.2d 243, 256 (Neb. App. 2008); *Vincent v. Santa Cruz*, 647 P.2d 379, 381 (Nev. 1982); *Padilla v. State Farm Mut. Auto. Ins. Co.*, 68 P.3d 901, 908-09 (N.M. 2003); *Oakes Farming Ass'n v. Martinson Bros.*, 318 N.W.2d 897, 904 (N.D. 1982); *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 26 (Ohio 2008); *Matter of Marriage of McInnis*, 110 P.3d 639, 645 (Or. App. 2005); *Sanford v. Sanford*, (continued…)

unconscionable, the underlying agreement to arbitrate would remain fully enforceable, with the offending terms simply severed. *Barras*, 685 F.3d at 1283.

**c)      The Arbitration Agreement Is Not Substantively Unconscionable.**

Plaintiffs have previously argued that the Wells Fargo arbitration agreement is substantively unconscionable for a handful of reasons. While none of these arguments could be applied to invalidate the arbitration agreement as a whole, none has merit in any event.

First, plaintiffs have previously argued that the small-dollar value of the claims at issue, combined with the costs associated with non-class arbitration proceedings, will effectively deny them the ability to pursue their claims outside of a class action setting. DE # 1514 at 34-35. As this Court has already held, this policy argument simply invokes the same concerns that were rejected in *Concepcion*. *See* DE # 1853 at 4 (observing that the Supreme Court "explicitly rejected the argument that 'class proceedings are necessary to prosecute small-dollar claims that might otherwise slip though the legal system.'") (quoting *Concepcion*, 131 S. Ct. at 1753). This is consistent with the Eleventh Circuit's decision in *Cruz*, 648 F.3d at 1214-15, which also considered and rejected this policy argument.

Second, borrowing arguments from cases in this MDL involving other banks, plaintiffs have argued that provisions that shift the fees or costs incurred in arbitration are unconscionable and render an arbitration agreement unenforceable. Wells Fargo's arbitration agreement differs from those of the other banks whose agreements this Court has considered in that it has no such fee-shifting provisions, which should end this argument before it begins.[13]  In any event, the Eleventh Circuit has made clear that such fee-shifting provisions cannot invalidate

---

694 N.W.2d 283, 293 (S.D. 2005); *In re Poly-America, L.P.*, 262 S.W.3d 337, 360 (Tex. 2008); *Sosa v. Paulos*, 924 P.2d 357, 364 (Utah 1996); *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 768-69 (Wash. 2004); *Beilfuss v. Huffy Corp.*, 685 N.W.2d 373, 378 (Wis. App. 2004); *Baker v. Jones*, 240 P.2d 1165, 1171 (Wyo. 1952).

[13]  Although plaintiffs have previously argued that Wells Fargo's arbitration agreement contains a fee-shifting provision, all they could point to was a provision requiring a party who fails to submit to a lawful arbitration demand to bear the expenses incurred by the other party in *compelling* arbitration. As for the fees and expenses actually incurred in the arbitration itself, the agreement provides:  "Unless inconsistent with the laws governing your Account, each party shall bear the expense of their own attorneys', experts', and witness' fees, regardless of which party prevails in the arbitration." Moore Arbitration Dec. Ex. 11 at 6.

18

an arbitration agreement, but rather should, if unconscionable, be simply severed, with the underlying agreement to arbitrate left intact.  *Barras*, 685 F.3d at 1283; *Powell-Perry*, 2012 WL 3100780, at *3.

Third, plaintiffs have argued that arbitration agreements containing set-off clauses – provisions that allow the bank to deduct amounts owed by a customer to the bank directly from its customers' accounts – are unconscionable and render the arbitration agreement unenforceable. The Eleventh Circuit has squarely rejected this argument, pointing out that such set-off rights are explicitly permitted by state law.  *Powell-Perry*, 2012 WL 3100780, at *4.[14]

Fourth, plaintiffs have previously argued that the exclusion in the Wells Fargo Arbitration Agreement of certain provisional and ancillary remedies is unconscionably one-sided, because the bank is more likely to pursue some such remedies than is a customer.  DE # 1514 at 29-31.  Plaintiffs cited no decisions holding that such an exclusion is unconscionable, much less that it would render an entire arbitration agreement unenforceable.  In fact, courts have regularly rejected such arguments.  *See, e.g., Roque v. Applied Materials, Inc.*, 2004 WL 1212110, at *7 (D. Or. Feb. 7, 2004); *Graziani v. Novellus Sys., Inc.*, 2003 WL 23977829, at *7 (D. Or. Sept. 16, 2003); *Walters v. A.A.A. Waterproofing, Inc.*, 85 P.3d 389, 393 (Wash. App. 2004).  As to this provision, moreover, even severance would be unnecessary, as Wells Fargo has sought no provisional or ancillary relief in this litigation and there is no reason to think it would have occasion to do so.

Fifth, plaintiffs have argued that the "confidentiality" provision in the Wells Fargo Arbitration Agreement – despite being admittedly facially neutral – is improperly one-sided in the bank's favor, as the bank will gather more experience with the arbitration process through its standing as a "repeat participant."  DE # 1514 at 31.  Courts have routinely rejected

---

[14]  Setoff by a bank is routinely permitted under the laws of virtually every state, including those at issue here.  *See, e.g., Walter v. National City Bank*, 330 N.E.2d 425, 427 (Ohio 1975); *Victor Werlhof Aviation Ins. v. Garlick*, 771 P.2d 962, 964 (Mont. 1989); *Spratt v. Security Bank of Buffalo, Wyo.*, 654 P.2d 130, 135-36 (Wyo. 1982); *Minnesota Voyageur Houseboats, Inc. v. Las Vegas Marine Supply, Inc.*, 690 N.W.2d 762, 765 (Minn. App. 2005); *Gillett v. Williamsville State Bank*, 34 N.E.2d 552, 558 (Ill. App. 1941).

such arguments as constituting thinly veiled attacks on arbitration itself.[15]  Indeed, the Supreme Court in *Concepcion* lauded confidentiality as ultimately beneficial to all parties.  *See* 131 S. Ct. at 1750.  In any event, the severability of this provision is beyond serious question.

Sixth, plaintiffs have argued that the AAA, which is the arbitration forum mandated in Wells Fargo's arbitration agreement, has instituted a moratorium on arbitrating consumer-related disputes.  The Eleventh Circuit (like many other courts before it) has flatly rejected this argument as well, holding that even if the AAA were unavailable (which it is not),[16] the FAA establishes a procedure for appointing a replacement arbitrator.  *Barras*, 685 F.3d at 1283 n.20.[17]

**D.    The Court Should Dismiss All of the Absent Class Members' Claims In Favor of Arbitration or, In the Alternative, Stay These Proceedings Until Those Claims Have Been Arbitrated.**

A district court may compel arbitration and dismiss parties from a case where all claims of those parties are subject to arbitration.  *Perera*, 2012 WL 5471942, at *5; *Kivisto v. National Football League Players Assoc.*, 2011 WL 335420 (S.D. Fla. Jan. 31, 2011); *Olsher Metals Corp. v. Olsher*, 2003 WL 25600635 (S.D. Fla. Mar. 26, 2003).  Because all of the Absent Class Members' claims are subject to arbitration, this Court should dismiss those claims in favor of arbitration.

In the alternative, a district court may instead stay a proceeding while other issues are arbitrated.  *See Moses*, 460 U.S. at 20, n.22.  Exercising such authority is appropriate when the court proceedings overlap with the claims being compelled into arbitration.  *Sam Reisfeld &*

---

[15]   *See, e.g.*, *Livingston v. Metropolitan Pediatrics, LLC*, 227 P.3d 796, 809 (Or. Ct. App. 2010) (confidentiality clause not unconscionable); *Cronin v. Fitness*, 2005 WL 1515369, at *2-4 (Ohio. App. 2005) (same).

[16]   Wells Fargo has previously submitted evidence to the Court demonstrating that the AAA is in fact available to arbitrate such claims.  *See* DE #1971-10 (AAA reports of Wells Fargo arbitrations involving "consumer disputes").

[17]   *See also, e.g.*, *Smith v. ComputerTraining.com Inc.*, 772 F. Supp. 2d 850, 862 (E.D. Mich. 2011) (rejecting AAA consumer moratorium argument); *Black v. JP Morgan Chase & Co.*, 2011 WL 3940236, at *9 (W.D. Pa. Aug. 25, 2011) (same); *Estep v. World Fin. Corp. of Ill.*, 735 F. Supp. 2d 1028, 1033-34 (C.D. Ill. 2010) (same); *Jezek v. CareCredit, LLC*, 2011 WL 2837492, at *4 (N.D. Ill. July 18, 2011) (same); *Jackson v. Payday Loan Store of Ill., Inc.*, 2010 WL 1031590, at *3 (N.D. Ill. Mar. 17, 2010) (same); *Clerk v. ACE Cash Express, Inc.*, 2010 WL 364450, at *10 (E.D. Pa. Jan. 29, 2010) (same).

*Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976).  In such a situation, proceeding with the litigation could undermine the arbitration and result in "thwarting the federal policy in favor of arbitration."  *Harvey v. Joyce*, 199 F.3d 790, 795 -796 (5th Cir. 2000).  Because all issues in this litigation are intertwined with the arbitrable claims of the Absent Class Members, if the Court does not dismiss those claims, it should stay these proceedings until those arbitrable claims have been resolved.

## IV.  CONCLUSION

For the reasons set forth herein, Wells Fargo respectfully requests that the Court dismiss all claims of the Absent Class Members in favor of arbitration or, in the alternative, stay these proceedings in favor of arbitration of those claims.


## CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION

Pursuant to Local Rule 7.1(a)(3), Wells Fargo certifies that on March 1, 2013, it conferred through counsel with plaintiffs in a good faith effort to resolve the need for filing this motion.  The parties were not able to resolve their differences as to the issues raised in this motion.  Plaintiffs intend to oppose this motion.

DATED:  March 4, 2013                    COVINGTON & BURLING LLP


By:   /s/ David M. Jolley

       Sonya D. Winner (*pro hac vice*)
       (swinner@cov.com)
       David M. Jolley (*pro hac vice*)
       (djolley@cov.com)
       One Front Street, 35th Floor
       San Francisco, CA 94111
       Telephone: (415) 591-6000
       Facsimile: (415) 591-6091

       Emily Johnson Henn (*pro hac vice*)
       (ehenn@cov.com)
       333 Twin Dolphin Drive, Suite 700
       Redwood Shores, CA 94065
       Telephone: (650) 632-4700
       Facsimile: (650) 632-4800
       Barry R. Davidson
       (bdavidson@hunton.com)
       Florida Bar No. 107678
       Jamie Zysk Isani
       (jisani@hunton.com)
       Florida Bar No. 728861
       HUNTON & WILLIAMS LLP
       1111 Brickell Avenue, Suite 2500
       Miami, FL 33131
       Telephone: (305) 810-2500
       Facsimile: (305) 810-2460

       Attorneys for Defendant
       WELLS FARGO BANK, N.A.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:09-MD-02036-JLK

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

### CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2013, I served the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the forgoing document is being served this day either by Notice of Electronic filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

_____/s/ David M. Jolley_____

David M. Jolley (*pro hac vice*)
(djolley@cov.com)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA, 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091