**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

### CASE NO. 1:09-MD-02036-JLK

---

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:
FOURTH TRANCHE ACTION

*Swift v. BancorpSouth, Inc.*
N.D. Fla. Case No. 1:10-00090-SPM-AK
S.D. Fla. Case No. 1:10-cv-23872-JLK

---

### OPINION AND ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO CERTAIN AFFIRMATIVE DEFENSES, AND ON DEFENDANT BANCORPSOUTH BANK'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court upon Plaintiffs' Motion for Summary Judgment as to Certain Affirmative Defenses (DE # 2997), and Defendant BancorpSouth Bank's ("BancorpSouth" or "Bank") Motion for Summary Judgment (DE # 2999).[1] The Court held oral argument on September 18, 2013. Having reviewed the motions, oppositions and replies, and considered the arguments of counsel, the Court now enters this Order.

Plaintiffs seek summary judgment as to a number of the affirmative defenses asserted in BancorpSouth's Amended Answer and Defenses to Plaintiff's Second Amended Complaint. (DE # 1693). BancorpSouth seeks summary judgment as to all claims asserted in Plaintiffs' Second Amended Complaint. (DE # 994). For the reasons discussed below, the Court concludes that numerous disputed issues of fact exist concerning Plaintiffs' claims, precluding summary judgment on BancorpSouth's motion, as well as the affirmative defenses of ratification and waiver that BancorpSouth raises in its motion. In contrast, Plaintiffs have demonstrated that they

---

[1] The parties filed oppositions and replies to both motions. *See* DE # 3035 and 3116 as to Plaintiffs' motion, and DE # 3043 and 3112 as to BancorpSouth's motion.

are entitled to summary judgment as to certain of BancorpSouth's affirmative defenses, including the ratification defense BancorpSouth pursues in its own motion.[2] Therefore, BancorpSouth's motion is denied in its entirety, and Plaintiffs' motion is granted in part, and denied in part, as described below.

## I.   BACKGROUND

Plaintiff Shane Swift, individually and on behalf of all others similarly situated ("Plaintiffs"), commenced this action on May 18, 2010. On October 18, 2010, over BancorpSouth's opposition, the Judicial Panel on Multidistrict Litigation transferred this action to this Court to be made part of MDL 2036, finding that it shared "'factual questions relating to the imposition of overdraft fees by various bank defendants on their customer[s'] checking accounts in an manner to maximize those fees.' *See In re Checking Account Overdraft Litig.*, 626 F. Supp. 2d 1333, 1335 (J.P.M.L. 2009)." (DE # 847). On December 6, 2010, Plaintiffs filed their Second Amended Complaint. (DE # 994). BancorpSouth, like most other bank defendants in MDL 2036, filed a motion to dismiss. (DE # 1068). Following full briefing and oral argument, the Court denied BancorpSouth's motion to dismiss. (DE # 1305). Thereafter, BancorpSouth filed an Amended Answer and Defenses to Plaintiff's Second Amended Complaint. (DE # 1693).

On December 20, 2011, Plaintiffs moved for class certification. (DE # 2271). After thorough briefing of the class certification issues, the Court granted Plaintiffs' motion and certified that following Class:[3]

---

[2]   By stipulation, BancorpSouth has withdrawn the following affirmative defenses that were the subject of Plaintiffs' motion: statutes of repose, res judicata, and judicial estoppel. (DE # 3667). Therefore, the Court does not resolve any issue pertaining to these defenses.

[3]   The following subclasses were also certified: "One good faith and fair dealing subclass (encompassing Alabama, Arkansas, Florida, Mississippi, and Tennessee); one unjust enrichment subclass (encompassing Arkansas and Mississippi); two unconscionability subclasses (one encompassing Alabama, Arkansas, Florida, Louisiana, Tennessee, and Texas, and the other encompassing Mississippi and Missouri); and one subclass for Plaintiff s Arkansas Deceptive Trade Practices Act claim." (DE # 2673 at 23).

> All BancorpSouth customers in the United States who had one or more consumer accounts and who, from applicable statutes of limitation through August 13, 2010 (the "Class Period"), incurred an overdraft fee as a result of BancorpSouth's practice of sequencing debit card transactions from highest to lowest.

(DE # 2673 at 22). BancorpSouth's Fed.R.Civ.P. 23(f) original petition for interlocutory review was denied by the United States Court of Appeals on March 4, 2013. After this Court denied BancorpSouth's motion to decertify (DE # 2540), the Eleventh Circuit denied the Bank's second Rule 23(f) petition on September 13, 2013.

The parties conducted extensive discovery in this case, including seventeen fact and expert depositions and the production of thousands of pages of internal bank documents and data. Following the close of discovery, the parties filed the instant motions for summary judgment. (DE # 2997, 2999). The Court deferred ruling on the summary judgment motions until class notice was disseminated to the certified class and the time for opting-out had passed. Class notice was disseminated pursuant to the Order Approving Class Notice Plan. (DE # 3342, 3589). A total of 238 individuals timely excluded themselves from the certified class. (DE # 3589). Therefore, the Court now resolves the parties' summary judgment motions.

At the heart of this case, Plaintiffs allege that BancorpSouth re-sequenced debit-card and ATM transactions from highest to lowest dollar amount when it posted those transactions to consumer accounts, thereby increasing the number of overdraft transactions and, consequently, the number of overdraft fees incurred by members of the class. Since 2003, BanorpSouth has posted all debits to checking accounts highest to lowest, using computer software to re-sequence its customers' debit card and ATM transactions. According to Plaintiffs, the high to low posting of these transactions caused Plaintiffs' accounts to be depleted more rapidly than if the transactions had been posted in the order in which they were actually initiated and authorized, resulting in more overdrafts and, consequently, more overdraft fees. Plaintiffs also allege that many overdraft fees were levied when, but for BancorpSouth's re-sequencing, Plaintiffs had

sufficient funds in their accounts when they conducted the transactions. BancorpSouth's overdraft policy did not cap the number overdraft fees that could be charged to a consumer, and the overdraft fee would be assessed even if the account balance was negative by a single penny.

Plaintiffs assert claims for breach of the implied covenant of good faith and fair dealing, unjust enrichment, unconscionability, and under the Arkansas' Deceptive Trades Practice Act.[4] Plaintiffs seek a declaration that BancorpSouth's overdraft policies and practices were wrongful, unfair, and unconscionable; restitution of all overdraft fees received by BancorpSouth, as a result of its re-sequencing scheme; disgorgement of the ill-gotten gains derived from BancorpSouth's misconduct; actual damages; prejudgment interest; costs; and attorney's fees pursuant to applicable law. (DE # 994 at 31-32). BancorpSouth denies liability and asserts fifteen affirmative defenses. Plaintiffs' summary judgment motion addresses certain of the affirmative defenses.

## II.   LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex*, 477 U.S. at 323–24.

The moving party bears the burden of pointing to the part of the record that shows the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*,

---

[4]      Plaintiffs are no longer pursuing the claim for conversion. Pursuant to the parties' Stipulation (DE # 3667), the Court is not resolving any issue as to the conversion claim.

931 F.2d 1472, 1477 (11th Cir.1991) (holding that the nonmoving party must "come forward with significant, probative evidence demonstrating the existence of a triable issue of fact.").

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts." *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983). On a motion for summary judgment, the court must view the evidence and resolve all inferences in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citing *Mercantile Bank & Trust v. Fidelity* and *Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

### III.   PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO CERTAIN AFFIRMATIVE DEFENSES.

Plaintiffs seek summary judgment as to BancorpSouth's affirmative defenses of statute of limitations, laches, accord and satisfaction, ratification, acceptance, release, voluntary payment doctrine, and course of dealing. As to the statute of limitations defense, the parties have stipulated that, consistent with the Class notice, Plaintiffs are only pursuing damages that fall within the applicable statute of limitations for each of the states covered in this case. (DE # 3667). The Court addresses the remaining affirmative defenses in turn.

#### A.   Laches

The Court grants Plaintiffs' Motion for Summary Judgment as to Defendant's laches affirmative defense. A laches defense is predicated on the contention that a plaintiff has unreasonably delayed the filing of a claim in a manner making it inequitable or unjust to allow the plaintiff to seek the relief. *See Royal Oaks Vista, L.L.C. v. Maddox*, 271 S.W.3d 479, 483 (Ark. 2008). Accordingly, "[t]he laches defense requires a detrimental change in the position of

the one asserting the doctrine, as well as an unreasonable delay by the one asserting his or her rights against whom laches is invoked." *Id.* Plaintiffs argue, and the Court agrees, that laches is inapplicable to Plaintiffs' claims for breach of contract and breach of the convent of good faith and fair dealing and violations of the Arkansas Deceptive Trades Practice Act ("ADTPA"), because laches does not apply to actions at law. *See Warford v. Union Bank of Benton*, No. CA 09-1301, 2010 WL 3770745, at *5 (Ark. App. Sept. 29, 2010). Additionally, the Court concludes that laches does not apply to Plaintiffs' unjust enrichment claim given that the only legal relief sought is in the form of money damages. *See Rogers Iron & Metal Corp. v. K & M, Inc.*, 738 S.W.2d 110, 111 (Ark. App. 1987) (holding that laches, an equitable defense, has no application in a case where the plaintiff sued to obtain a money judgment – an action at law).

Plaintiff Swift did not unreasonably delay the filing of this action, and in any event, "the passage of time is not the only element necessary to establish the defense of laches." *Gable v. Anthony*, No. CA 10-234, 2010 WL 4525401, at *6 (Ark. App. Nov. 10, 2010). "Laches requires a showing of some sort that the party asserting the doctrine has suffered or changed its position as a result of the lack of diligence or delay in assertion of rights." *Id.* BancorpSouth has not offered any facts demonstrating that it detrimentally relied on any action or inaction of Plaintiff Swift in deciding to continue its practice of debit re-sequencing; nor has BancorpSouth produced any evidence that it changed its position based on any action or inaction of Plaintiffs. Indeed, BancorpSouth continues to engage in debit re-sequencing to this day, despite the filing of this action over three years ago. (DE # 3043-2 at 24). Accordingly, a reasonable finder of fact could not find that BancorpSouth was harmed by any purported action or inaction of Plaintiffs. *Gable*, 2010 WL 4525401 at *6.

**B.    Accord and Satisfaction**

Plaintiffs' Motion for Summary Judgment is also granted as to Defendant's affirmative defense of accord and satisfaction. BancorpSouth has not proffered any evidence that

demonstrates, or even tends to show, an agreement between Plaintiffs, on the one hand, and BancorpSouth, on the other hand, whereby the parties agreed to discharge the claims asserted in the instant action. This defense is defined "as a settlement in which one party agrees to pay and the other to receive a different consideration or a sum less than that amount to which the latter considers himself entitled." *Glover v. Woodhaven Homes, Inc.*, 57 S.W.3d 211, 216 (Ark. 2001). "The essential elements of accord and satisfaction are: (1) proper subject matter; (2) competent parties; (3) an assent or meeting of the minds; and (4) consideration." *Id.*[5] In opposition to Plaintiffs' motion, BancorpSouth failed to present a disputed issue of fact as to these essential elements. *See also Housely v. Hensley*, 265 S.W.3d 136, 142 (Ark. App. 2007) (validity of accord and satisfaction dependent on same principle as ordinary contract formation).

As the Arkansas Supreme Court has stated, "[t]he key element [for accord and satisfaction] is a meeting of the minds, such that there must be an objective indicator that the parties agreed that the payment tendered will discharge the debt." *Glover*, 57 S.W.3d at 216. Here, BancorpSouth has not presented any objective indicator of an agreement between Plaintiffs and BancorpSouth that would operate as an accord and satisfaction to the overdraft fee claims at issue in this lawsuit.

### C. Ratification, Acceptance, and Release

BancorpSouth identifies the defenses of ratification, acceptance, and release in tandem in its eighth affirmative defense, but in its response to Plaintiffs' summary judgment motion only

---

[5]     Courts in Alabama, Florida, Louisiana, Mississippi, Missouri, Tennessee, and Texas require substantially the same elements. *See Austin v. Cox*, 492 So.2d 1021, 1022 (Ala. 1986) (Alabama law); *Rudick v. Rudick*, 403 So.2d 1091, 1093-94 (Fla. 3d DCA 1981) (Florida law); *J.O. Miller v. Lumbermens Mutual Cas. Ins. Co.*, 488 So.2d 273, 279 (La. Ct. App. 1986) (Louisiana law); *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748, 754 (Miss. 2003) (Mississippi law); *Midwest Division-OPRMC, LLC v. Dept. of Social Serv., Div. of Medical Serv.*, 241 S.W.3d 371, 383 (Mo. Ct. App. 2007) (Missouri law); *Key v. Lyle*, No. M2009-01328-COA-R3-CV, 2010 WL 1486908, at *3 (Tenn. Ct. App. Apr. 13, 2010) (Tennessee law); *City of Houston v. First City*, 827 S.W.2d 462, 472 (Tex. Ct. App. 1992) (Texas law).

addresses ratification. (DE # 3035 at p.11–12). Therefore, the Court confines its analysis to ratification. As BancorpSouth did not oppose Plaintiffs argument as to release (DE # 2997 at p. 13), the Court grants Plaintiff's Motion for Summary Judgment as to the release defense.

As Plaintiffs point out, "[r]atification is a doctrine of agency, which is well-established in the common law, and it refers to the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another without authority." *Arnold v. All Am. Assur. Co.*, 499 S.W.2d 861, 865 (Ark. 1973).[6] Although ratification is typically a question of fact for the jury, Arkansas courts have made it clear that "[t]he doctrine of ratification, however, has no application if there was no agency relationship." *Sterne, Agee & Leach, Inc. v. Way*, 270 S.W.3d 369, 376 (Ark. App. 2007) (citing *E.P. Dobson, Inc. v. Richard*, 705 S.W.2d 893, 894 (Ark. App. 1986) ("The doctrine of ratification is inapplicable when no agency relationship is proved."). The "essential elements for a showing of the agency relationship [are] authorization and control." *Taylor v. Gill*, 934 S.W.2d 919, 921 (Ark. 1996). The Court agrees that there is no disputed issue of fact of the required agency relationship between Plaintiffs and BancorpSouth. No agency relationship exists. Therefore, summary judgment is granted as to ratification and acceptance.

### D. Voluntary Payment Doctrine

BancorpSouth asserts the defense of voluntary payment under the premise that Plaintiffs voluntarily paid the overdraft fees at issue in this case. Under Arkansas' voluntary payment rule, "a person cannot recover money that he or she has voluntarily paid." *Curtis Lumber Co., Inc. v.*

---

[6]     Courts in Alabama, Florida, Louisiana, Mississippi, Missouri, Tennessee and Texas follow the same basic principle. *See Austin v. Cox*, 523 So.2d 376, 378 (Ala. 1988) (Alabama law); *Zurstrassen v. Stonier*, 786 So.2d 65, 71 (Fla. 4th DCA 2001) (Florida law); *Cartinez v. Reliable Amusement Co., Inc.*, 746 So.2d 246, 252-53 (La. Ct. App. 1999) (Louisiana law); *Green Acres Farms, Inc. v. Brantley*, 651 So.2d 525, 529 (Miss. 1995) (Mississippi law); *Murphy v. Jackson Nat. Life Ins. Co.*, 83 S.W.3d 663, 668 (Mo. Ct. App. 2002) (Missouri law); *Bells Banking Co. v. Jackson Centre, Inc.*, 938 S.W.2d 421, 427 (Tenn. Ct. App. 1996) (Tennessee law); *Willis v. Donnelly*, 199 S.W.3d 262, 273 (Tex. 2006) (Texas law).

*Louisiana Pacific Corp.*, 618 F.3d 762, 782 (8th Cir. 2010) (citing *Boswell v. Gillett*, 295 S.W.2d 758, 761 (Ark. 1956)). "A payment is deemed voluntary, and thus not recoverable, 'when a person without mistake of fact or fraud, duress, coercion, or extortion pays money on a demand which is not enforceable against him.'" *Id.* (citation omitted). Thus, "one voluntarily paying a claim with knowledge of the facts or under such circumstances that he is affected with such knowledge cannot recover the payment on the ground that the claim was unenforceable." *Hall v. Hawkins Oil & Gas, Inc.*, 715 S.W.2d 462, 463 (Ark. App. 1986).[7]

Plaintiffs argue that they did not voluntarily pay the challenged overdraft fees at issue in this case because BancorpSouth exclusively decided, without any prior notice or opportunity to object or protest, to withdraw money from Plaintiffs' accounts to pay for the overdraft fees that were alleged to have been wrongfully assessed. In other words, the funds were taken from Plaintiffs, not paid by Plaintiffs. BancorpSouth contends that they are payments because money was deposited into the account to bring the account to a positive balance after overdraft fees were assessed. Assuming *arguendo* that the bank-initiated withdrawals are deemed "payments," Plaintiffs claim the "payment" of overdraft fees assessed to their accounts upon demand by BancorpSouth was made under a mistake of fact that BancorpSouth had correctly calculated the amount of overdraft fees assessed to their accounts. It is undisputed that the overdraft notices and the account statements upon which BancorpSouth relies do not disclose BancorpSouth's high-to-low posting order (DE # 2997 at ¶ 2; DE # 3043-1 at ¶¶ 86, 88), nor did the bank disclose the Overdraft Matrix Limit that lead to other debit card authorizations (DE # 3043-1 at ¶ 76). Thus,

---

[7]     Courts in Alabama, Florida, Louisiana, Mississippi, Missouri, Tennessee and Texas apply the doctrine in the same circumstance. *Mount Airy Ins. Co. v. Doe Law Firm*, 668 So.2d 534, 537-38 (Ala. 1995) (Alabama law); *Ruiz v. Brink's Home Sec., Inc.*, 777 So.2d 1062, 1064 (Fla. 2d DCA 2001) (Florida law); *Ken Lawler Builders, Inc. v. Delaney*, 892 So.2d 778, 780 (La. Ct. App. 2005) (Louisiana law); *McDaniel Bros. Const. Co. v. Burk-Hallman Co.*, 175 So.2d 603, 605 (Miss. 1965) (Mississippi law); *Huch v. Charter Communications, Inc.*, 290 S.W.3d 721, 726 (Mo. 2009) (Missouri law); *Pratt v. Smart Corp.*, 968 S.W.2d 868, 871 (Tenn. Ct. App.) (Tennessee law); *Miga v. Jensen*, 299 S.W.3d 98, 103 (Tex. 2009) (Texas law).

Plaintiffs contend that even though they were notified of the overdraft fees, the overdraft notices and account statements did not provide Plaintiffs with the "full knowledge of the facts" as required by Arkansas law. *See Hall*, 715 S.W.2d at 463.

The Court concludes that there are genuine issues of material fact as to whether Plaintiffs were knowingly and voluntarily paying the overdraft fees at issue in this case. Therefore, summary judgment is denied as to this defense.

### E. Course of Dealing

BancorpSouth contends that a course of dealing was established with Plaintiffs, whereby BancorpSouth would pay debit card transactions into overdraft in exchange for Plaintiffs' agreement to pay overdraft fees. Plaintiffs chiefly argue that this affirmative defense fails as a matter of law because it directly contradicts the express terms of the Deposit Agreement. (DE # 2997 at p.18–20). BancorpSouth agrees, but claims that Plaintiffs cannot invoke certain terms of the contract while asking the Court to disregard others in pursuit of their claims. (DE # 3035 at p.7–8). The Court concludes that BancorpSouth may *not* rely on course of dealing in defending itself against the claim for breach of the contract and implied covenant of good faith and fair dealing because it is contrary to the express language in the Deposit Agreement. With respect to Plaintiffs claims for unjust enrichment, unconscionability, and violation of the ADTPA—which claims do not rely on the contract—the Court denies Plaintiffs' Motion for Summary Judgment on the course of dealing affirmative defense; BancorpSouth may rely on evidence of a course of dealing in defense of Plaintiffs' claims for unjust enrichment, unconscionability, and violation of the ADTPA.

### IV.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Court denies BancorpSouth's Motion for Summary Judgment as to all claims being pursued by Plaintiffs. As to each of the claims, the Court finds that BancorpSouth has failed to meet its burden. The basic issue before the Court on a motion for summary judgment is "whether

the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen*, 121 F.3d at 646. As discussed more fully below, the Court finds that there is evidence in the record to support each of Plaintiffs' claims. Given the conflicts in the evidence, BancorpSouth's motion for summary judgment must be denied, and Plaintiffs' claims should proceed to trial.

Resolving the factual issues surrounding (a) Plaintiffs' initiation of debit card transactions, (b) BancorpSouth's assessment and collection of the overdraft fees, (c) whether Plaintiffs' knew BancorpSouth's re-sequencing policy, and (d) the undisputed evidence that BancorpSouth did not disclose its Overdraft Matrix Limit to its customers, would require the Court to weigh the conflicting evidence presented by both sides. The Court is not permitted to weigh the conflicting evidence when ruling on a motion for summary judgment. To do so would impermissibly encroach upon the province of the jury. Therefore, genuine issues of material fact preclude summary judgment. In the following analysis, the Court makes reference to certain material factual disputes, but does not intend these disputed factual issues to be an exhaustive list.

### A. Breach of Contract and Breach of the Implied Duty of Good Faith and Fair Dealing

Plaintiffs' claims for breach of contract and breach of the implied duty of good faith and fair dealing allege that BancorpSouth failed to discharge its discretionary contractual rights in good faith when it *always* utilized the high-to-low posting order for debit card transactions. As with its arguments about each of Plaintiffs' claims, BancorpSouth contends that Plaintiffs acknowledged that the Deposit Agreement allowed for posting debit card transactions in any order. BancorpSouth compartmentalizes breach of contract and breach of the implied duty of good faith and fair dealing to argue that Arkansas does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing. This Court adheres to its previous decision in the Order Ruling on Omnibus Motion to Dismiss (DE # 305): "Plaintiffs do

11

not ask the Court to tell the [bank] how to order transactions, but simply that the ordering must be carried out as contemplated by the covenant of good faith and fair dealing." *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1315 (S.D. Fla. 2010).

Under Arkansas law, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Aon Risk Servs., Inc. v. Meadors*, 267 S.W.3d 603, 613 (Ark. App. 2007); *Cantrell-Waind & Assocs., Inc. v. Guillaume Motorsports, Inc.*, 968 S.W.2d 72 (Ark Ct. App. 1998) (quoting Restatement (Second) of Contracts § 205). Accordingly, "[a]s is the case with the contract's express terms, the implied covenant is part of the contract and creates contractual obligations that are actionable." *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 732 (8th Cir. 2003) (applying Arkansas law). Having adopted the Restatement (Second) of Contracts § 205, Arkansas courts look to see whether the conduct at issue is "consisten[t] with the justified expectations of the other party." Restatement (Second) of Contracts § 205, cmt. a. *See Arkansas Research Medical Testing, LLC v. Osborne*, No. 10-750, 2011 WL 1423993 (Ark. Apr. 14, 2011) (citing Restatement (Second) of Contracts § 205). The Court finds that Arkansas law permits Plaintiff Swift's cause of action.

The Deposit Agreement undisputedly contains discretionary terms in that it provides:

> If more than one item or order is presented for payment against the account on the same day and the available balance of the account is insufficient to pay them all, we *may* pay any of them in any order we choose, even if the order we choose results in greater insufficient funds fees than if we had chosen to pay them in some other order.

(DE # 3043-1 at ¶¶ 77, 78; DE # 3043-16 – 3043-23). The Account Information Statement also contains similar discretionary language to that of the Deposit Agreement, including language that suggests that BancorpSouth will not *always* post transactions from high to low. (DE # 3043-1 at ¶¶ 77, 83; DE # 3043-7 – 3043-12).

Discretion is apparent from the use of the term "may," and the issue of whether or not that language permitted BancorpSouth to *always* manipulate transactions, delay posting

indefinitely, or maximize overdraft fees, as alleged in the Second Amended Complaint, are questions of fact that preclude the grant of a Rule 56 motion. *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1316-1317. Here, the Bank's representatives admitted that the Deposit Agreement, the account statements, and overdraft notices did not warn Plaintiffs that BancorpSouth *always* reordered debit card transactions from high-to-low, while employing the Overdraft Matrix Limit to authorize additional transactions without regard to actual funds in the accounts, resulting in excessive overdraft fees and, in fact, at times causing overdrafts even when the accounts would otherwise not have been overdrawn. (DE # 3043-1 ¶¶ 70, 71, 76, 78, 86–88). At the very least, there is a genuine question of fact as to whether the consequences of BancorpSouth's exercise of discretion were foreseeable to Plaintiffs. *Keck v. American Employment Agency*, 652 S.W.2d 2, 4 (Ark. 1983) (foreseeability is a question of fact for the jury); *Stacks v. Ark. Power & Light, Co.*, 771 S.W.2d 754, 756 (Ark. 1989) ("It will be up to the trier of facts to decide whether the occurrence was foreseeable . . . ."). The mere fact that BancorpSouth's Deposit Agreement reserves discretion to post high-to-low does not resolve whether BancorpSouth exercised that discretion in bad faith. Arkansas law is consistent with other states in providing a claim for breach of the implied duty of good faith and fair dealing premised on an express contractual provision. *Arkansas Research*, 2011 WL 1423993 at *6.

Disputed issues of fact that remain include, but are not limited to: (1) whether BancorpSouth's motive for employing high-to-low re-sequencing was to maximize revenue; (2) whether BancorpSouth put Plaintiffs on notice that their instantaneous debit card transactions would be held, and then reordered at a later time, in order to maximize the number of fees to the Bank; (3) whether customers were advised of the negative impacts that arise from the undisclosed Overdraft Matrix Limit that the Bank used throughout the class period to exacerbate the effects of re-sequencing; (4) whether and when Plaintiffs became aware of BancorpSouth's actions. Other factual issues detailed *infra* with regard to Plaintiffs' unconscionability claim

concerning the timing and sufficiency of the Bank's disclosures should also be decided by the jury. Therefore, summary judgment is denied as to Count I of the Second Amended Complaint.

## B. Unconscionability

As BancorpSouth previously argued in its motion to dismiss at the outset of this case, it argues again in its Motion for Summary Judgment that Arkansas law does not permit an affirmative claim for unconscionability. The Court previously rejected that argument and adheres to its previous ruling. (DE # 1305). *See Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1318 ("Defendants appear to be correct in their assertion that, ordinarily, unconscionability is properly asserted as a defense to a contract rather than an affirmative cause of action. *But this is not the ordinary case* . . . [in this situation] the customer never has the opportunity to raise unconscionability as a defense for nonpayment. The only opportunity to do so is through a lawsuit filed by the customer, after payment has been made. Hence, the facts of the instant case weigh in favor permitting Plaintiffs to pursue unconscionability claim.").

The Bank relies on *Hughes v. Wet Seal Retail, Inc.*, No. 10-CV-05090, 2010 WL 4750216 (W.D. Ark. Nov. 16, 2010), and *Parker v. Frazer's, Inc.*, No. CA98-116, 1998 WL 811425 (Ark. App. Nov. 18, 1998), for the proposition that unconscionability may not be asserted as an affirmative claim.[8] Those cases merely state that, generally speaking, unconscionability is asserted as a defense to a contract—precisely what this Court concluded in its Omnibus Order when it recognized the unique circumstances of this case supporting the unconscionability claim. Further, neither *Hughes* nor *Parker* dealt with a cause of action for unconscionability where the plaintiff sought declaratory relief, as Plaintiffs do here. Damages are sought as supplemental relief in accordance with Arkansas law. *See* Ark. Code Ann. § 16-111-103(a) (creating jurisdiction for Arkansas courts for claims seeking declaratory relief "either

---

[8]     Pursuant to Arkansas Revised Supreme Court Rule 5-2, the *Parker* opinion is not entitled to any precedential value.

affirmative or negative in form and effect"); Ark. Code Ann. § 16-111-110 (authorizing Arkansas courts to grant supplemental relief based on the declaratory judgment). Further, the federal counterpart, 28 U.S.C. §§ 2201-2202, creates the platform for a damages award as "[f]urther necessary or proper relief based on a declaratory judgment or decree." *See BancInsure, Inc. v. BNC Nat. Bank, N.A.*, 263 F.3d 766 (8th Cir. 2001) ("[D]istrict courts have broad power under 28 U.S.C. § 2202 to craft damages awards in declaratory judgment actions to effectuate their judgment."); *Auto-Owners Ins. Co. v. Johnson, Rast & Hays Ins. of South Alabama, Inc.*, 820 F.2d 380, 384 (11th Cir. 1987) (same).

Contrary to BancorpSouth's assertion, numerous courts have sustained claims, like the claims asserted here, seeking affirmative declaratory relief that the terms of a contract are unconscionable. *See e.g.*, *Williams v. First Gov't Mortg. & Inv. Corp.*, 225 F.3d 738, 748-49 (D.C. Cir. 2000); *Ross v. Wells Fargo Bank, N.A.*, No. 3:08-1452, 2009 WL 357921, at *2 (S.D. W. Va. Feb 12, 2009); *Premier Digital Access, Inc. v. Cen. Tel. Co.*, 360 F. Supp. 2d 1161, 1168 (D. Nev. 2005); *Eva v. Midwest Nat'l Mortg. Banc, Inc.*, 143 F. Supp. 2d 862, 895 (N.D. Ohio 2001). In the overdraft fee decision of *Hughes v. TD Bank, N.A.*, 856 F. Supp. 2d 673 (D.N.J. 2012), the United States District Court for the District of New Jersey aligned itself with this Court's Omnibus Order in finding that the plaintiffs' were entitled to assert an affirmative claim of unconscionability regarding TD Bank's overdraft fee policies because the bank would not need to sue for unpaid overdraft fees.

Summary judgment is improper given that "the issue of unconscionability is a mixed question of law and fact and must be resolved at a trial on the merits." *In re Price*, 313 B.R. 805, 812 (E.D. Ark. Bankr. 2004) (citing *Associated Press v. So. Ark. Radio Co.*, 809 S.W.2d 695, 697 (Ark. App. 1991)). There are numerous disputed material facts to support a jury finding of unconscionability here. To determine whether a contractual provision is unconscionable under Arkansas law, "courts should review the totality of the circumstances surrounding the

15

negotiation and execution of the contract." *State ex rel. Bryant v. R&A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999) (citing *Geldermann & Co., Inc. v. Lane Processing, Inc.*, 527 F.2d 571, 575 (8th Cir. 1975)). Arkansas courts also consider "whether there is a gross inequality of bargaining power between the parties to the contract and whether the aggrieved party was made aware of and comprehended the provision in question." *Associated Press*, 809 S.W.2d at 697 (finding unconscionability where "[t]he agreement is a preprinted form; . . . the agreement was neither read nor understood by the appellee; . . . and there appears to be a substantial disparity in the relative bargaining power of the parties").

As in most other states, this analysis is "divided into two categories; (1) procedural and (2) substantive." *Easter v. Compcredit Corp.*, No. 08-CV-1041, 2009 WL 499384, at *4 (W.D. Ark. Feb. 27, 2009). Procedural unconscionability "deals with the manner in which a contract was entered into . . . ." *Gobeyn v. Travelers Indem. Co.*, No. 1:09CV00034JLH, 2009 WL 3148755, at *3 (E.D. Ark. Sept. 24, 2009). Substantive unconscionability, on the other hand, "looks to the terms of the contract and whether they are harsh, one-sided, or oppressive." *Gobeyn*, 2009 WL 3148755 at *3. Using language identical to that used in this Court's Omnibus Order, the Arkansas Court of Appeals held that an unconscionable contract is one "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *T-1 Constr., Inc. v. Tannenbaum Dev. Co.*, 2009 WL 613552 (Ark. App. Mar. 11, 2009) (citing *Hume v. U.S.*, 132 U.S. 406, 415 (1889)). The record evidence here supports reasonable inferences for both elements of unconscionability.

### 1.      Procedural Unconscionability.

As recognized by BancorpSouth, "[c]ourts may look at various factors when determining whether an agreement is procedurally unconscionable, including whether the contract is 'oppressive,' which has been defined as arising from unequal bargaining power that results in an absence of meaningful choice, and the extent to which the person signing the agreement may be

surprised by the terms hidden in a form drafted by the party seeking to enforce its terms."
*Hughes*, 2010 WL 4750216 at *3. Plaintiffs have pointed to record evidence supporting procedural unconscionability.

Plaintiff Shane Swift testified on numerous occasions that he was not aware until shortly before this lawsuit was filed that BancorpSouth engaged in the practice of re-sequencing and posting his debit card transactions from high to low dollar amount, and that he incurred overdraft fees as a result of BancorpSouth's practice. (DE # 3043-1 at ¶ 95). Based on the record evidence, Plaintiffs may convince the jury that the various account documents on which BancorpSouth relies did not clearly and unambiguously disclose BancorpSouth's everyday posting practice.

BancorpSouth's account agreements derive from standardized form adhesion contracts, which were non-negotiable for consumer account holders, including Plaintiff Swift and the Class. (DE # 3043-1 at ¶ 80). BancorpSouth's Deposit Account Terms and Conditions provided the following relevant language for the first time in the October 22, 2008 version:

> ORDER OF PAYMENT – Unless otherwise provided in the Account Information Statement (see OTHER TERMS section below) if more than one item or order is presented for payment against the account on the same day and the available balance of the account is insufficient to pay them all, we ***may*** pay any of them in any order we choose, even if the order we choose results in greater insufficient funds fees than if we had chosen to pay them in some other order. Our payment of any item or order in overdraft does not create any obligation for us to pay any other item or order in overdraft in the future, and you agree that no course of dealing regarding the payment of items or orders in overdraft will be created between us.

(DE # 3043-1 at ¶ 78 (emphasis added)).[9] This provision was buried deep in the account agreement which, throughout the class period, was a single-spaced, small-font form contract of adhesion. (DE # 3043-1 at ¶ 82).

A jury could infer that BancorpSouth's 2004 version of its Account Information

---

[9]     Previous versions excluded the phrase: "Unless otherwise provided in the Account Information Statement (see OTHER TERMS) section below)." (DE # 3043-1 at ¶ 79). Thus, prior to October 2008, customers were not directed by the Deposit Account Terms and Conditions documents to directly refer to the Account Information Statement.

Statement, referenced in the Deposit Account Terms and Conditions, was equally misleading because it failed to: (a) refer to the uniform high-to-low posting order that had been established for all retail accounts; and (b) inform customers that they could opt out of the Bank's so-called discretionary overdraft process, instead choosing to only inform customers that overdraft fees could be avoided if they enrolled in one of the Bank's overdraft protection products. (DE # 3043-1 at ¶ 83). Previous versions of the Account Information Statement included a vague reference to debiting multiple debit transactions presented for payment on a single banking day in descending order of the dollar amount of the transactions, but this process would have been part of BancorpSouth's pre-2003 posting order (outside the class period). (DE # 3043-1 at ¶ 84). Also, some of these prior versions mentioned: "A description of the categories, method, and order of payment/posting is available upon request." *Id.* Notably, the Bank removed this verbiage from the Account Information Statement as of the May 1, 2003 version. *Id.* It considered adding it back in 2007, but decided against it. *Id.* The monthly statements provided to the Bank's customers, as well as the overdraft notices themselves, did not disclose the posting order BancorpSouth used. (DE # 3043-1 at ¶ 86–88).

The evidence summarized above could support a determination that there was a disparity in sophistication and bargaining power between Plaintiffs and the Bank. As such, a jury could reasonably find in favor of Plaintiffs as to procedural unconscionability.

**2.      Substantive Unconscionability.**

As previously stated, "substantive unconscionability . . . looks to the terms of the contract and whether they are harsh, one-sided, or oppressive." *Gobeyn*, 2009 WL 3148755 at *3. Though BancorpSouth disputes that its high-to-low posting is substantively unconscionable, this Court has previously observed that substantive unconscionability is shown by:

> deposit agreements contain[ing] contractual terms regarding overdraft protection that had the purpose and effect of allowing defendants to re-order the posting of debit transactions to maximize the number and amount of overdraft fees to

18

Plaintiffs, and that the fees bear no reasonable commercial relationship to the costs or risks associated with providing the overdraft service.

*Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1320; *see also Hunter v. Texas Instruments, Inc.*, 798 F.2d 299, 303 (8th Cir. 1986); *Gobeyn*, 2009 WL 3148755 at \*3. In addition, this Court rejected BancorpSouth's argument that the UCC and statements of federal bank regulatory agencies accept the authority of banks to post in high-to-low order. Specifically, this Court held: "Defendants are not entirely correct when they state that high-to-low posting is expressly condoned by the UCC. As discussed in the above section, the provision they rely on, section 4-303(b), applies only to paper checks, not the electronic debits that are the subject of this lawsuit." *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1320. BancorpSouth's expert, Paul Carrubba, agreed the UCC does not govern the posting order for debit card transactions. (DE # 3043 at ¶99).

Record evidence supports the claim that BancorpSouth's high-to-low posting order can have a dramatic impact on the number of overdraft fees assessed. If there are insufficient funds to cover all posted transactions, the Bank's high-to-low posting order reduces customers' balances as quickly as possible, thereby maximizing the number of overdraft fees assessed. Beginning in 2002, BancorpSouth engaged EPG, a financial consulting firm for banks that offered fee revenue optimization as one of its services, and adopted its recommendation of a high-to-low posting order which commingled debits.[10] (DE # 3043-1 at ¶ 69). In its recommendation to the Bank, EPG stated: "It is anticipated that the bank will also realize an increase in NSF/OD fee revenue, as more items will be paid into overdraft or returned." *Id.* With

---

[10]     BancorpSouth admits that if it wanted to go *low-to-high* when it implemented its posting priority in 2003, it could have done so, but the Bank followed the recommendation of its third party consultant for the purpose of increasing revenues. (DE # 3043-1 at ¶ 73). The Bank considered the impact of *low-to-high* posting in 2007 and concluded that it would significantly decrease revenues, estimating a 17.5% decrease of more than $12 million. (DE # 3043-1 at ¶74). It did so again in 2010 after the filing of this lawsuit, and noted concern that switching "could provide a different class of customer to claim unfair practice." (DE # 3043 at ¶ 75).

EPG's assistance, combined overdraft and NSF fee revenue, which had been around $35 million in 2002, grew to over $48 million in 2003, a 36% increase. *Id.* Even though high-to-low re-sequencing provided significant fee revenue, one of the Bank's regional presidents questioned posting high-to-low as early as in 2005 in an email to BancorpSouth's top management:

> PLEASE EXPLAIN THE RATIONALE BEHIND OUR POLICY OF POSTING LARGEST ITEMS FIRST. WHAT CAN BE DONE TO PROTECT OUR BANK FROM LOSS AND OUR TELLERS FROM CRITICISM IN SITUATIONS WHERE TRANSIT ITEMS COME THROUGH AND PAY AHEAD OF ITEMS WE HANDLE PROPERLY DURING OPREATION HOURS?

(DE # 3043-1 at ¶ 89).

Beginning in 2002, BancorpSouth utilized a secret Overdraft Matrix Limit to augment its high-to-low posting. BancorpSouth's use of the Overdraft Matrix was integral to its scheme to increase debit card transaction authorizations and, in turn, the number of overdrafts as much as possible. (DE # 3043-1 at ¶ 71). BancorpSouth does not dispute that it intentionally concealed the Overdraft Matrix Limit from the Plaintiffs. (DE # 3043-1 at ¶ 76).

The parties dispute the inferences to be drawn from Plaintiff Swift's deposition testimony concerning the fairness of the high-to-low posting order. Plaintiff Swift described re-sequencing as "unfair" and as a "corrupt practice" especially when done for the Bank's own financial gain. (DE # 3043-1 at ¶ 97). In fact, when asked whether he believed re-sequencing is always harmful to BancorpSouth customers, Plaintiff Swift replied: "It's always harmful. I believe unfair resequencing is always harmful to BancorpSouth customers." (DE # 3043-1 at ¶ 97). His testimony includes repeated statements that BancorpSouth should post debit card transactions in chronological order. (DE # 3043-1 at ¶ 98).

Ultimately, it is up to the jury to decide if the posting order was unfair, and the issues pertaining to procedural and substantive unconscionability as a whole. If this Court were to engage in further analysis of the disputed record evidence, it would be usurping the jury's fact-finding role. Therefore, summary judgment is denied.

## C. Unjust Enrichment

Plaintiffs acknowledge that they cannot recover judgment under both their contract-based claims and unjust enrichment claims, but they are permitted to plead and pursue these alternative claims. *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1321 ("The Court agrees with Plaintiff's position. Fed. R. Civ. P. 8(d) allows pleading in the alternative, even if the theories are inconsistent. Defendants have not conceded that Plaintiff is entitled to recovery under the contract, and if the contractual claim fails, Plaintiff may still be entitled to recovery under an unjust enrichment theory."). Arkansas law expressly permits alternative pleading. *See Crawford v. Lee County Sch. Dist.*, 983 S.W.2d 141, 145 (Ark. App. 1998); *Wachter Elec. Co. v. Elec. Sys., Inc.*, Nos. 3:10CV00083 SWW and 3:10CV00140 DPM, 2010 WL 5137361 (E.D. Ark. Dec. 9, 2010). Therefore, in the event Plaintiffs ultimately recover a verdict under the contract-based claims, judgment would be entered under those claims only. Likewise, should the fact-finder reject the contract claims but award recovery under the unjust enrichment claim, judgment would be entered under that claim only. Because the Court is not granting summary judgment in favor of BancorpSouth, it would also be improper to grant summary judgment on the unjust enrichment claim. BancorpSouth has not met its burden.

Plaintiffs are challenging the material contract terms as unconscionable. As this Court has previously held, "if the terms of the deposit agreement are subsequently declared to be unconscionable, Defendant may be barred from relying on them." *Checking Account Overdraft Litig.*, 694 F. Supp. 2d at 1323. Moreover, this Court previously concluded that even if the deposit agreement gives a bank the discretion to re-order debits ("we *may* pay them in any order we choose"), a bank exercises that discretion in bad faith by intentionally causing the account holder to incur overdrafts that would not have otherwise be incurred. *Id.* Plaintiffs contend that BancorpSouth is being unjustly enriched by the re-sequencing of debit card transactions and using the Overdraft Matrix Limit in the process to exacerbate the frequency of overdrafts. The

existence of genuine disputed issues of fact, and given that the legal issue of the enforceability of any written contract provision governing the posting order still exists, BancorpSouth is not entitled to summary judgment on the alternatively pled unjust enrichment claim. The unjust enrichment claim should proceed until a fact-finder determines whether or not the terms of the Deposit Agreement are unconscionable and unenforceable.

### D. Arkansas Deceptive Trade Practice Act Claims ("ADTPA")

The Court also denies summary judgment as to the Arkansas Deceptive Trade Practices Act ("ADTPA") claim. BancorpSouth's primary argument is that the ADTPA's "safe harbor" provision prohibits this action. Secondary arguments concern whether there is record evidence that BancorpSouth engaged in any deceptive practice and of Plaintiffs' damages from such practices.

The Court rejects BancorpSouth's safe harbor argument, which it previously raised in its motion to dismiss, which is premised on the allegation that state law, in particular the UCC, authorizes high-to-low posting of debit card transactions. BancorpSouth is not a national bank. As such, it does not benefit from the Ninth Circuit's opinion in *Gutierrez v. Wells Fargo Bank, N.A.*, 704 F.3d 712 (9th Cir. 2012), concerning regulation of posting orders, and the Office of the Comptroller of the Currency materials cited therein.[11] Having not been presented with any law permitting BancorpSouth to re-sequence debit card transactions high-to-low, the Court rejects the safe harbor argument.

The Court rejects BancorpSouth's factual arguments as well. The ADTPA prohibits "[d]eceptive and unconscionable trade practices," which include, but are not limited to,

---

[11]     Although not cited in its summary judgment briefing, BancorpSouth relied on the Ninth Circuit's *Gutierrez* decision during the summary judgment hearing. BancorpSouth also referred to *Willsey v. Shelter Mut. Ins. Co.*, Civ. No. 12-2320, 2013 WL 4453122 (W.D. Ark. Aug. 16, 2013), during the hearing, but that case does not support BancorpSouth position. *Willsey* denied application of the safe harbor provision because there was no Arkansas law which authorized the insurance claim settlement practices claimed to be unfair in the lawsuit. *Id.*

"[k]nowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of ignorance," and "[e]ngaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). "An 'unconscionable' act is an act that 'affront[s] the sense of justice, decency, or reasonableness.'" *Baptist Health v. Murphy*, 226 S.W.3d 800, 811 n. 6 (Ark. 2006). Although Arkansas courts have not construed the term "deceptive," the ADTPA is to be liberally construed to protect consumers. *State ex rel. Bryant v. R&A Inv. Co.*, 985 S.W.2d 299, 302 (Ark. 1999).

Having determined that genuine issues of material fact exist as to the unconscionability claim, those same factual issues warrant the denial of summary judgment as to the ADTPA claim. *Baptist Health*, 226 S.W.3d at 811 (defining unconscionability as "an act that 'affront[s] the sense of justice, decency, or reasonableness'"); *State ex rel. Bryant*, 985 S.W.2d at 302 ("[t]he deceptive and unconscionable trade practices listed in this section are in addition to and do not limit the types of unfair trade practices actionable at common law") (citing Ark. Code Ann. § 4-88-107(b)). The same alleged deceptive practices that are in play in the claims for breach of contract and the implied duty of good faith and fair dealing and for unjust enrichment are also germane to the ADTPA claim. If the jury accepts Plaintiffs' premise that BancorpSouth practice of re-sequencing debit card transactions was not adequately disclosed in the contract between the parties, or that it failed to exercise its reserved discretion fairly, the ADTPA would govern that claim.

Record evidence was presented by the Plaintiffs that BancorpSouth concealed its re-sequencing practice; purposely worded its account agreements with vague language; and actively took measures <u>not</u> to communicate to Plaintiffs the Bank's high-to-low re-sequencing or the existence of the Overdraft Matrix Limit throughout the class period. For example, BancorpSouth's Frequently Asked Questions training document given to the Bank's call center employees discussing the Overdraft Matrix specifically stated at the assigned Overdraft Matrix

23

Limit should not be disclosed to customers. (DE # 3043-1 at ¶ 76).

*Whatley v. Reconstrust Co. NA*, No. 3:10CV00242JLH, 2010 WL 4916372 (E.D. Ark. Nov. 23, 2010), references the rule that in order to recover under the ADTPA, one must suffer actual damages. There can be no dispute that additional overdraft fees were assessed due to the re-sequencing of debit card transactions, the amount of which reflects the damages claimed in this lawsuit. There is record evidence that Plaintiff Swift did not understand BancorpSouth's re-sequencing scheme until shortly before this lawsuit was filed. (DE # 3043-1 at ¶ 95). A fact-finder can reasonably infer that BancorpSouth wanted it that way in light of the secret Overdraft Matrix and its ability to be more transparent regarding the posting order if it chose to do so. The Court will not invade the province of the jury at this juncture by weighing in on the issue of whether Plaintiffs would have acted differently had BancorpSouth been transparent. Suffice it to say that if the jury determines that deceptive practices occurred, there is record evidence to support Plaintiffs' ADTPA claim. Therefore, summary judgment is denied as to the ADTPA claim.

### E.  BancorpSouth's Ratification Defense

Incorporating the discussion above concerning BancorpSouth's ratification affirmative defense, in which the Court grants Plaintiffs' summary judgment motion as to this defense, the Court denies summary judgment to BancorpSouth on this defense. The defense does not apply to Plaintiffs' claims.

### F.  BancorpSouth's Waiver Defense

BancorpSouth also seeks summary judgment as to all of Plaintiffs' claims asserting waiver as an affirmative defense. Plaintiffs did not move for summary judgment on this defense. BancorpSouth's premise is that Plaintiff Swift knowingly continued to overdraw his account and incur overdraft fees on his BancorpSouth despite his knowledge of prior overdraft fees being assessed on his account and the Bank's disclosures of its overdraft policies.

24

> Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. *Pearson v. Henrickson,* 336 Ark. 12, 983 S.W.2d 419 (1999). It may occur when one, with full knowledge of material facts, does something which is inconsistent with the right or his intention to rely upon that right. The relinquishment of the right must be intentional. *Id.*

*Bharodia v. Pledger*, 11 S.W.3d 540, 545 (Ark. 2000).

BancorpSouth has not shown undisputed facts that Plaintiff Swift knew of a right and intended to relinquish that right forever. BancorpSouth acknowledges that the account statements and overdraft notices do not reflect or discuss the re-sequencing that caused multiple overdrafts. (DE # 3043-1 at ¶¶ 86–88). Plaintiffs were not told of the assigned Overdraft Matrix Limit that caused the increased frequency of overdrafts. (DE # 3043-1 at ¶76). Plaintiffs are not arguing that an overdraft fee policy is *per se* wrong.  Rather, Plaintiffs' claim is that the intentional re-sequencing of instantaneous transactions in order to charge additional overdraft fees, or to assess an overdraft fee for a debit card transaction that occurred at a time when the account contained sufficient funds, is a wrongful intentional and compensable action.

The parties genuinely dispute the import of the evidence that BancorpSouth claims supports that Plaintiff Swift knowingly and voluntarily relinquished the right to recover for BancorpSouth's wrongful assessment of overdraft fees with the intent to forever abandon that right. As with the other issues addressed above, for which the Court is denying summary judgment, the Court will not invade the province of the jury by deciding the waiver defense. Plaintiffs Swift's knowledge and intent are quintessential fact issues. Summary judgment is denied as to the waiver defense.

## V.   **CONCLUSION**

Accordingly, having considered the Parties' filings, the oral argument offered during the September 18, 2013 hearing, and being otherwise advised, it is hereby **ORDERED, ADJUDGED and DECREED** as follows:

1.      Plaintiffs' Motion for Summary Judgment as to Certain of Defendant BancorpSouth Bank's Affirmative Defenses **(DE # 2997)** be, and the same is hereby, **GRANTED** as to the affirmative defenses of laches, accord and satisfaction, ratification, and release, and **DENIED** as to voluntary payment and course of dealing.

2.      Defendant BancorpSouth Bank's Motion for Summary Judgment **(DE # 2999)** be, and the same is hereby, **DENIED** in its entirety.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida this 24 day of October, 2013.

**JAMES LAWRENCE KING**
**UNITED STATES DISTRICT JUDGE**
**SOUTHERN DISTRICT OF FLORIDA**

cc: All Counsel of Record