# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIFTH TRANCHE ACTION

*Childs, et al. v. Synovus Bank, et al.*
N.D. Ga. Case No. 1:10-CV-03027-ODE
S.D. Fla. Case No. 1:10-CV-23938-JLK

---

### REPLY MEMORANDUM IN SUPPORT OF
### PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

*/s/ Aaron S. Podhurst*
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street
Suite 800
Miami, FL 33130
Tel: 305-358-2800
Fax: 305-358-2382

*/s/ Bruce S. Rogow*
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
BRUCE S. ROGOW, P.A.
Broward Financial Center
500 E. Broward Boulevard
Suite 1930
Fort Lauderdale, FL 33394
Tel: 954-767-8909
Fax: 954-764-1530

**Co-Lead Counsel for Plaintiffs**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...................................................................................................1

II.  ARGUMENT AND CITATION OF AUTHORITY ...........................................1

   A.  This Court's Other Class Certification Decisions Support Certification Here ........1

   B.  Synovus Re-ordered Transactions to Maximize Overdraft Fees ...........................2

   C.  The Class Definition Is Sufficient............................................................3

      1.  There Is No Conflict Between the Class Definition and Mr. Olsen's Methodology ...........................................................................3

      2.  The Class Definition Need Not Identify an Alternative Posting Method....4

   D.  There Are No Problems with Mr. Olsen's Methodologies .....................................5

      1.  Defendants' Claim that a Single, Rigid Damages Model Is Required Is Nonsensical ...........................................................................5

      2.  Synovus' Purported Hypothetical Concerns that Mr. Olsen's Methodology May Find "Harm" Where There Is None Do Not Impact Class Certification..........................................................................5

      3.  Synovus' Complaints About the "Realities and Consequences of Partial Re-sequencing of Transactions" Are Overstated ...........................6

      4.  Credits and Refunds Do Not Preclude Class Certification .........................6

   E.  The Bank's Misrepresentations Concerning the Nature and Scope of its Form Contracts Do Not Undermine Certification ............................................................7

   F.  The Rule 23(a) Requirements Are Satisfied ..........................................................10

      1.  Numerosity.................................................................................................10

      2.  Commonality...............................................................................................10

      3.  Typicality and Adequacy ...........................................................................11

         a.  Plaintiffs' Contracts Are the Same as Those of Class Members ...12

         b.  The Competing Georgia Class Does Not Make Mr. Green or the Childs Inadequate Class Representatives.................................13

          c.     The Purported Conflict Regarding the Alternative Sequence Sought Is Irrelevant ........................................................13

          d.     Mr. Green's Bankruptcy Does Not Preclude His Participation .....14

          e.     Jeramie Childs Has Personally Suffered an Injury Resulting from Synovus' Conduct ..........................................................15

          f.     Mr. Jenkins Is an Adequate Class Representative .........................15

          g.     Plaintiffs Need Not Prove They Are Young and Financially Illiterate in Order to Demonstrate Typicality and Adequacy.........16

    G.     Common Issues Predominate Under Rule 23(b)(3)................................................16

        1.     Common Issues Predominate for Each Claim ...........................................17

          a.     Good Faith and Fair Dealing.........................................................17

          b.     Unjust Enrichment .........................................................................18

          c.     Unconscionability .........................................................................19

        2.     The Bank's Affirmative Defenses Do Not Vitiate Predominance............20

          a.     "Full Knowledge" Defenses .........................................................20

          b.     Damage Defenses..........................................................................21

          c.     Statutes of Limitations ..................................................................22

    H.     The Remaining Rule 23(b)(3) Requirements Are Satisfied...................................22

        1.     Superiority...................................................................................................22

        2.     Manageability .............................................................................................23

    I.     Neither the Non-Final *Griner* Settlement Nor the Bank's Contingent Arbitration Motion Preclude Certification of the Proposed Class .........................23

III.    CONCLUSION....................................................................................................24

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Allapattah Servs., Inc. v. Exxon Corp.*
  333 F.3d 1248 (11th Cir. 2003) .................................................................................21

*Anthony v. Am. Gen. Fin. Servs., Inc.*
  697 S.E.2d 166 (Ga. 2010)........................................................................................20

*Appleyard v. Wallace*
  754 F.2d 955 (11th Cir. 1985) ..................................................................................12

*Arnold v. Locomotive Eng'rs Mut. Life & Acc. Ins. Ass'n*
  204 S.W.2d 191 (Tenn. Ct. App. 1946) ....................................................................20

*Avritt v. Reliastar Life Ins. Co.*
  615 F.3d 1023 (8th Cir. 2010) ..................................................................................17

*Blackie v. Barrack*
  524 F.2d 891 (9th Cir. 1975) ......................................................................................6

*Brown v. SCI Funeral Servs. of Fla., Inc.*
  212 F.R.D. 602 (S.D. Fla. 2003).....................................................................11, 12, 22

*Burnes v. Pemco Aeroplex, Inc.*
  291 F.3d 1282 (11th Cir. 2002) ................................................................................15

*Caudle v. First Fed. Sav. & Loan Ass'n*
  327 So.2d 911 (Ala. 1976)........................................................................................20

*Chipola Valley Realty Co. v. Griffin*
  115 So. 541 (Fla. 1927).............................................................................................20

*CIT Comm'n Fin. Corp. v. McFadden, Lyon & Rouse, LLC*
  37 So.3d 114 (Ala. 2009)..........................................................................................20

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*
  281 F.R.D. 347 (D. Minn. 2012)...............................................................................22

*City of Key W. v. Fla. Keys Cmty. Coll.*
  81 So. 3d 494 (Fla. 3d DCA 2012) ...........................................................................20

*Clancy v. King*
  954 A.2d 1092 (Md. 2008) .........................................................................................2

*Contrast Stratton v. Am. Med. Sec., Inc.*
  266 F.R.D. 340 (D. Ariz. 2009).................................................................................18

*Cnty. of Monroe v. Priceline.com, Inc.*
   265 F.R.D. 659 (S.D. Fla. 2010)........................................................................18

*Davis v. Cash For Payday, Inc.*
   193 F.R.D. 518 (N.D. Ill. 2000)........................................................................20

*Dupler v. Costco Wholesale Corp.*
   249 F.R.D. 29 (E.D.N.Y. 2008) ........................................................................21

*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*
   657 F.2d 890 (7th Cir. 1981) ............................................................................12

*Fireman's Fund Ins. Co. v. Vogel*
   195 So. 2d 20 (Fla. Dist. Ct. App. 1967) .........................................................20

*Hadden v. Thompson*
   42 S.E.2d 125 (Ga. 1947)..................................................................................20

*Ham v. Swift Transp. Co., Inc.*
   275 F.R.D. 475 (W.D. Tenn. 2011) ..................................................................18

*Hardaway v. S. Ry. Co.*
   73 S.E. 1020 (S.C. 1912) ..................................................................................20

*Harrison v. Ballington*
   498 S.E.2d 680 (S.C. Ct. App. 1998)................................................................20

*Hughes v. Mitchell Co., Inc.*
   49 So. 3d 192 (Ala. 2010).................................................................................20

*In re Cendant Corp. Litig.*
   182 F.R.D. 476 (D.N.J. 1998).............................................................................6

*In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*
   274 F.R.D. 286 (N.D. Cal. 2011).........................................................................2

*In re Checking Account Overdraft Litig. ("Union Bank")*
   275 F.R.D. 666 (S.D. Fla. 2011).............................................................. *passim*

*In re Checking Account Overdraft Litig. ("TD Bank")*
   281 F.R.D. 667 (S.D. Fla. 2012).....................................................1, 4, 10, 11, 20

*In re Checking Account Overdraft Litig. ("Comerica")*
   286 F.R.D. 645 (S.D. Fla. 2012).............................................................. *passim*

*In re Checking Account Overdraft Litig.*
   694 F. Supp. 2d 1302 (S.D. Fla. 2010) .............................................................19

*In re Checking Account Overdraft Litig.*
    883 F. Supp. 2d 1251 (S.D. Fla. 2012) ...........................................................................19

*In re Checking Account Overdraft Litig.*
    2013 WL 5774287 (S.D. Fla. Oct. 24, 2013) ..................................................................19

*In re Checking Account Overdraft Litig. ("BancorpSouth")*
    **DE # 2673** (S.D. Fla. May 4, 2012) ...............................................................................1

*In re Checking Account Overdraft Litig. ("PNC Bank")*
    **DE # 2697** (S.D. Fla. May 16, 2012) .......................................................................1, 14

*In re Checking Account Overdraft Litig. ("Capital One")*
    **DE # 2847** (S.D. Fla. July 19, 2012) .............................................................................1

*In re Coastal Plains, Inc.*
    179 F.3d 197 (5th Cir. 1999) ...........................................................................................15

*In re Currency Conversion Fee Antitrust Litig.*
    264 F.R.D. 100 (S.D.N.Y. 2010) .....................................................................................22

*In re One Bancorp Sec. Litig.*
    136 F.R.D. 526 (D. Me. 1991) ...........................................................................................6

*In re Terazosin Hydrochloride Antitrust Litig.*
    220 F.R.D. 672 (S.D. Fla. 2004) ......................................................................................18

*In re United Cos. Fin. Corp.*
    276 B.R. 368 (D. Del. 2002) ............................................................................................20

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*
    206 F.3d 411 (4th Cir. 2000) ...........................................................................................15

*James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomms., Inc.*
    275 F.R.D. 638 (M.D. Fla. 2011).................................................................................14, 18

*Klay v. Humana, Inc.*
    382 F.3d 1241 (11th Cir. 2004) ................................................................................ *passim*

*Kornberg v. Carnival Cruise Lines, Inc.*
    741 F.2d 1332 (11th Cir. 1984) ..............................................................................11, 12, 16

*Lane v. Kitzhaber*
    283 F.R.D. 587 (D. Or. 2012) ..........................................................................................22

*Miller v. Optimum Choice, Inc.*
    2006 WL 2130640 (D. Md. July 28, 2006).......................................................................20

*Newberry v. Newberry*
    184 S.E.2d 704 (S.C. 1971) ............................................................20

*Pickett v. Iowa Beef Processors*
    209 F.3d 1276 (11th Cir. 2000) ....................................................14

*Pratt v. Smart Corp.*
    968 S.W.2d 868 (Tenn. Ct. App. 1997) ......................................20

*Rose v. SLM Fin. Corp.*
    254 F.R.D. 269 (W.D.N.C. 2008) ................................................18

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*
    601 F.3d 1159 (11th Cir. 2010) ......................................16, 17, 21

*Shelley v. AmSouth Bank*
    2000 WL 1121778 (S.D. Ala. July 24, 2000) ............................22

*Shum v. Intel Corp.*
    499 F.3d 1272 (Fed. Cir. 2007) ....................................................19

*Smilow v. Sw. Bell Mobile, Sys., Inc.*
    323 F.3d 32 (1st Cir. 2003) ..........................................................21

*State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*
    739 F.3d 579 (11th Cir. 2013) ....................................................19

*State Mut. Ins. Co. v. Harmon*
    33 S.E.2d 105 (Ga. Ct. App. 1945) ............................................20

*Sterling v. Velsicol Chem. Corp.*
    855 F.2d 1188 (6th Cir. 1988) ....................................................21

*Uffelman v. Boillin*
    82 S.W.2d 545 (Tenn. Ct. App. 1935) ........................................20

*Valley Drug Co. v. Geneva Pharms., Inc.*
    350 F.3d 1181 (11th Cir. 2003) ..............................................12, 14

*Vega v. T-Mobile USA, Inc.*
    564 F.3d 1256 (11th Cir. 2009) ........................16, 17, 18, 24

*Wal-Mart Stores, Inc. v. Dukes*
    131 S. Ct. 2541 (2011) ..................................................................11

*Ward v. Dixie Nat'l Life Ins. Co.*
    595 F.3d 164 (4th Cir. 2010) ........................................................5

## I.      INTRODUCTION

In opposing class certification, Defendants Synovus Bank and Synovus Financial Corp. (collectively, "Synovus" or "the Bank") argue that class certification is not appropriate in "this" case based on "this" record.  *See* **DE # 3810**, pp. 1-4.  Synovus, however, would have the Court ignore the undisputed evidence in this case regarding the uniform, automated scheme perpetuated by the Bank for the specific purpose of increasing overdraft revenue at its customers' expense.  Like many of its fellow bank-defendants, Synovus attempts to take the focus away from its wrongful behavior by asking the Court to consider the irrelevant purchasing behavior and financial circumstances of individual Class members and resorts to *ad hominem* attacks on the Class representatives.  As in previous cases, these efforts fail because the irrelevancies urged by Synovus have no bearing on the unlawfulness of its conduct, or the elements of Plaintiffs' claims.  As Plaintiffs' Trial Plan demonstrates, proof of all claims at trial will rely on common evidence, and any existing variations in the state laws at issue can be successfully managed in a fair and efficient manner.  Accordingly, class certification is warranted.[1]

## II.      ARGUMENT AND CITATION OF AUTHORITY

### A.      This Court's Other Class Certification Decisions Support Certification Here.

Synovus argues that the Court should ignore its *six* prior certification orders as to other banks in this MDL, all of which the Eleventh Circuit declined to review pursuant to Rule 23(f).[2] The similarity of the prior cases is pronounced, and this Court's prior certification decisions stand as models for how to proceed here.

This Court has already found that the sub-classing proposed by Plaintiffs is consistent with Eleventh Circuit guidance and supports certification.  *E.g.*, *Comerica*, 286 F.R.D. at 661; *also Klay v. Humana, Inc.*, 382 F.3d 1241, 1262 (11th Cir. 2004).  As this Court recognized, the

---

[1] Given that Synovus has requested oral argument, Plaintiffs do not submit a proposed order herewith.  Plaintiffs will submit a proposed Order following oral argument if the Court requests it.

[2] *See In re Checking Account Overdraft Litig.*, 286 F.R.D. 645 (S.D. Fla. 2012) ("*Comerica*"); *In re Checking Account Overdraft Litig.*, Order Granting Class Cert., **DE # 2847** (S.D. Fla. July 19, 2012) ("*Capital One*"); *In re Checking Account Overdraft Litig.*, Order Granting Class Cert., **DE # 2697** (S.D. Fla. May 16, 2012) ("*PNC Bank*"); *In re Checking Account Overdraft Litig.*, Order Granting Class Cert., **DE # 2673** (S.D. Fla. May 4, 2012) ("*BancorpSouth*"); *In re Checking Account Overdraft Litig.*, 281 F.R.D. 667 (S.D. Fla. 2012) ("*TD Bank*"); *In re Checking Account Overdraft Litig.*, 275 F.R.D. 666 (S.D. Fla. 2011) ("*Union Bank*").

1

standard for a contract-based good faith and fair dealing claim is an objective one that is independent of the desires of individual class members, and thus may be proven on a class-wide basis. *E.g.*, *Union Bank*, 275 F.R.D. at 680 ("a breach of the duty [of] good faith and fair dealing may be shown by class-wide evidence of a defendant's subjective bad faith or objectively unreasonable conduct"). The Restatement recognizes that "[s]uch a writing is interpreted wherever reasonable as treating alike all those similarly situated, ***without regard to their knowledge or understanding of the standard terms of the writing***." *See* RESTATEMENT (SECOND) OF CONTRACTS § 211 (emphasis added); *see also In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, 274 F.R.D. 286, 290 (N.D. Cal. 2011) ("the reasonable expectations of the class are measured by an objective standard, and, as plaintiffs argue, can be determined here with evidence common to the class"); *Clancy v. King*, 954 A.2d 1092, 1108 (Md. 2008) (where personal taste does not provide the basis for the exercise of discretion under a contract, an objective standard of what constitutes good faith and fair dealing applies). The focus is on the Bank's conduct in relation to the contractual language. Despite Synovus' claims of novelty, its arguments have been raised previously by other banks, and rejected.[3]

### B. Synovus Re-ordered Transactions to Maximize Overdraft Fees.

In a clever sleight of hand, Synovus asserts that it does not re-order transactions to maximize overdraft fees because it posts deposits first rather than in chronological order. *See* **DE # 3810**, pp. 17-18. There are numerous flaws to Synovus' argument, the first being that all major banks post credits (deposits) to a customer's account prior to debits, so Synovus' practice does not differentiate the Bank from the other financial institutions who engaged in the same practices to maximize overdraft fees. *See* Carrubba Depo., pp. 40-41 (Ex. A hereto); Keeley Depo., pp. 37-38 (Ex. B hereto) (conceding that all major banks post credits first). Indeed while the Bank's expert Paul Carrubba claimed that he had heard of banks that posted debits before credits, when asked specifically, he could not identify any such banks. *See* Carrubba Depo., p. 41. Synovus did not post credits first out of its own benevolence. If anything it did so because that was the industry norm. *See* Carrubba Depo., pp. 40-41; Keeley Depo., pp. 37-38.

---

[3] Synovus' deceptive practices are eerily similar to those of many other banks because it ██████████████████████████████████████. *See* **DE # 3547**, pp. 9-11, 16-17 (████████████████████████).

Second, Synovus' claim that it did not re-order transactions to maximize overdraft fees is directly contrary to the evidence described by Plaintiffs in their motion that established that  *See* **DE # 3547**, pp. 8-10. *Id.* Ironically, . *See* Carrubba Depo., pp. 40-43. .

## C.    The Class Definition Is Sufficient.

Plaintiffs' proposed Class definition adequately describes a Class that is ascertainable through objective criteria. *E.g., Comerica*, 286 F.R.D. at 650-51. That definition is clear, definite, and does not depend on subjective standards or resolution of the merits. Manual for Complex Litig. (Fourth) § 21.222, at 393 (2004). Synovus' attempts to divert the analysis into subjective, irrelevant inquiries should be ignored.

### 1.    There Is No Conflict Between the Class Definition and Mr. Olsen's Methodology.

Plaintiffs can identify Class members by programmatically determining, using the Bank's data, which customers incurred additional overdraft charges under the Bank's high-to-low posting practice as compared with the low-to-high sequencing portrayed online (and identified in Plaintiffs' second amended class action complaint), which yields the lowest number of overdraft fees and therefore defines the outer parameters of the membership of the proposed Class. *E.g.*, Second Am. Class Action Comp., ¶¶ 59-74 (**DE # 2941**) (comparing overdraft fees incurred for Plaintiffs Childs and Green under high-to-low and low-to-high methods); **DE # 3547-29** ( ); **DE # 3547-8** at 96:12-15, 96:24 – 97:2, 99:15 – 100:2, 104:18 – 105:6 ( ). This determination can be made by Plaintiffs' expert Mr. Olsen in advance of distributing Class notice. *See* Olsen Decl., ¶¶ 42, 45 (**DE # 3547-59**).

Despite this clarity, Synovus argues that there is a conflict between the Class definition and the methodology used by Mr. Olsen.  *See* **DE # 3810**, pp. 7-8.  Synovus' argument is baseless.  Plaintiffs do not seek to certify a class of "any person who had <u>an</u> (singular) overdraft charge on a given day" as the Bank asserts.  *Id.* at 5.  Such a claim ignores the second half of the Class definition that refers to fees incurred "as a result of Synovus' practice of sequencing debit card transactions from highest to lowest."  This qualifier makes all the difference in the world. As Plaintiffs' expert Mr. Olsen testified, his initial "screen" identifies customers who incurred two or more overdraft charges on any given day, and then, through further analysis, determines whether any of those charges would not have been incurred had the Bank employed an alternative posting order.  *See* Olsen Depo., pp. 120:5 – 125:5 (Ex. C hereto).  Mr. Olsen's methodology sufficiently identifies the Synovus customers who incurred an overdraft fee "***as a result of Synovus' practice of sequencing debit card transactions from highest to lowest***."  *See* **DE # 3547**, p. 1.

Moreover, this Court adopted nearly identical class definitions in other cases in this MDL.[4]  And the proposed definition here is also very similar to the definition adopted by Judge Alsup in *Gutierrez v. Wells Fargo Bank, N.A.*, which was not altered on appeal or remand.  730 F. Supp. 2d 1083, 1087 (N.D. Cal. 2010), *rev'd in part on other grounds*, 704 F.3d 712 (9th Cir. 2012), *verdict reinstated*, 944 F. Supp. 2d 819 (N.D. Cal. 2013) (maintaining $203 million judgment).  Synovus presents no valid reason to depart from these authorities.

2.     <u>The Class Definition Need Not Identify an Alternative Posting Method.</u>

Determining membership in the Class does not pivot on first deciding the appropriate alternative posting "scenario" for purposes of measuring damages.  The fact-finder's determination of the appropriate alternative posting "scenario" will only affect which Class members are entitled to recover and how much, not who is part of the Class that will be bound by the judgment.  *See Union Bank*, 275 F.R.D. at 673 (determining which alternate posting order would be selected was not necessary at class certification, because regardless of which one will be selected, "Mr. Olsen can identify which . . . customers incurred additional overdraft fees as a result of high-to-low . . . [posting] by comparing that re-sequencing ***to each of the alternative posting scenarios***") (emphasis added).  A judgment for Plaintiffs using a different comparator (say, chronological)

---

[4] *See Union Bank*, 275 F.R.D. at 680; *TD Bank*, 281 F.R.D. at 682; *Comerica*, 286 F.R.D. at 661; *Capital One*, p. 37; *PNC Bank*, p. 23; *BancorpSouth*, p. 22.

would still bind all members of the Class and "will, if anything, only vary the amount of damages." *Comerica*, 286 F.R.D. at 651; *see also Klay*, 382 F.3d at 1259-60.

By attempting to place a burden on Plaintiffs to prematurely identify a baseline alternative posting methodology at the class certification stage, Synovus improperly asks the Court to determine in advance which alternative posting methodology would satisfy the Bank's legal obligations. *Compare* **DE # 3810**, p. 68 (claiming Plaintiffs must select an alternative re-sequencing order so Class members can be identified), *with Union Bank*, 275 F.R.D. at 673. Synovus offers no sound reason to depart from the Court's prior rulings on this issue.

**D.      There Are No Problems with Mr. Olsen's Methodologies.**

Synovus' attempts to poke holes in Mr. Olsen's methodologies are unpersuasive. *See* **DE # 3810**, pp. 16-26.

**1.      Defendants' Claim that a Single, Rigid Damages Model Is Required Is Nonsensical.**  Synovus suggests that it is problematic that the alternative posting method that is ultimately employed may differ from case-to-case. *See* **DE # 3810**, pp. 18-19.  As noted above, the selection of which alternative posting method to utilize is something that will be determined by the fact-finder, not Synovus, and thus that determination could be different from bank-to-bank and case-to-case.  Moreover, even Defendants' expert, Mr. Keeley, conceded that he was not advocating that Mr. Olsen be required to rigidly apply his methodology from *Gutierrez* across all cases within this MDL.  *See* Keeley Depo., pp. 47-48.

**2.      Synovus' Purported Hypothetical Concerns that Mr. Olsen's Methodology May Find "Harm" Where There Is None Do Not Impact Class Certification.**  After complaining at length about Plaintiffs' failure to identify an alternative posting scenario, Defendants arbitrarily assign a particular scenario and then complain that said methodology may, hypothetically, result in the finding of harm in instances where there should be none. *See* **DE # 3810**, pp. 20-22.  But without establishing that Plaintiffs have a legal basis for pursuing this alternative over others, there is no real conflict, just an imaginary one, which is insufficient to defeat class certification.  *See Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010) ("a conflict will not defeat the adequacy requirement if it is merely speculative or hypothetical") (internal quotation marks omitted).

However, even if some conflict relating to alternative posting orders existed, it would still not preclude class certification.  Conflicts concerning the measurement or calculation of damages

do not preclude certification.  *See Blackie v. Barrack*, 524 F.2d 891, 908-10 (9th Cir. 1975) (finding that certification of a class was proper even where the interests of class members in calculating damages might conflict); *see also In re Cendant Corp. Litig.*, 182 F.R.D. 476, 479 (D.N.J. 1998) (same); *In re One Bancorp Sec. Litig.*, 136 F.R.D. 526, 532 (D. Me. 1991) (same). Defendants' hypotheticals about harm being found when there may not be any do not preclude certification.

       3.     **Synovus' Complaints About the "Realities and Consequences of Partial Re-sequencing of Transactions" Are Overstated.**  Synovus next takes issue with Mr. Olsen's methodology (which posts debit card transactions before checks) by arguing that it results in the return of checks (for insufficient funds) that would not otherwise have been returned.  *See* **DE # 3810**, pp. 22-24.  The Bank's arguments are overstated for several reasons.  First, Synovus' arguments are based on the erroneous assumption that a customer's overdraft tolerance was always $500.  *Id.* at 22-23.  In reality, Synovus' 30(b)(6) witness, Robert Moody, testified that █████ █████████████████████████████████████████████████████████████████████████████████.  *See* **DE # 3547-56** at 213:18 – 214:4, 217:6-10, 218:5-22.  Second, ███████████████████████████████████████████████████████████████████████ ███████████.  *Id.* at 183:25 – 184:18.  Given the Bank's history of approving ████████████████ ████████████████████████ into overdraft, the Bank's suggestion that it would not have done so under a different posting order is unpersuasive.

       Finally, Mr. Olsen's methodology is entirely consistent with what Synovus did prior to ████████████████████████████████████████████████████████████████████████████████████████ ████████████████████████████████.  *Id.* at 150:4-9, 151:4-8 (███████████████████████████████ ████████████████████████████).  Synovus' arguments regarding the consequences of altering the posting order fail to take into account these realities.

       4.     **Credits and Refunds Do Not Preclude Class Certification.**  Also unpersuasive is Synovus' claim that credits and refunds somehow preclude class certification.  *See* **DE # 3810**, pp. 25-26.  Just as he has done in the numerous other cases, Mr. Olsen can first determine the "raw differential" for each account – that is, the excess overdraft charges caused by the re-sequencing – and then reduce such amounts, on an account-by-account basis, to adjust not only for credits and refunds that were attributable to particular accounts, but also for uncollectables. *See* **DE # 2547-59**, ¶¶ 26-28, 45.  Thus, for a customer who had a negative balance at account closure, Mr. Olsen can apply the "uncollectible" amount to reduce the damages for that customer

if this is deemed appropriate.  *Id.*  Mr. Olsen can use this methodology to calculate each Class member's damages in this case.  *Id.* at ¶ 45.  Consequently, any offset the Bank may be entitled to against damages owed to Plaintiffs (or anyone else) will not reduce the recovery for any other Class members.  Simply put, the conflict Synovus hypothesizes is nonexistent.

**E.**     **The Bank's Misrepresentations Concerning the Nature and Scope of Its Form Contracts Do Not Undermine Certification.**

Synovus claims "<u>this</u>" case is unique because its relationship with its customers is governed by "potentially hundreds" of different contracts rather than the materially uniform contracts the other banks utilized.  *See* **DE # 3810**, pp. 37-41, 48, 63-66.  This is 100% wrong and indeed directly contradicts the documents and testimony Synovus provided during discovery.

Plaintiffs served a document request on Synovus seeking "all versions of the Consumer Deposit Account Agreement provided to your consumer customers, and all documents regarding, referring to or relating to the Consumer Deposit Account Agreement."  *See* Request for Production, p. 5 (Ex. D hereto).  Synovus responded (without objection) that it ███████████ ███████████████████████████████████  *Id.*

Plaintiffs also served a Rule 30(b)(6) deposition notice on the Bank that sought testimony on "any addenda, revisions, or modifications to Synovus' Deposit Account Agreements [relating to posting order and NSF fees]."  *See* Depo. Notice, pp. 6-7 (Ex. E hereto).  Prior to the deposition of the Bank on this issue, Plaintiffs sought verification that they had indeed received *all* applicable contract versions.  *See* July Email Exchange, p. 2 (Ex. F hereto) ("To the extent any account documents have changed since 2000, can you please forward us all applicable versions at least several days prior to the deposition on this Topic").  The Bank responded by identifying *two* versions of the Deposit Account Agreement that it had previously produced.  *Id.* at 1-2.

On the day before the Rule 30(b)(6) deposition on Synovus' contracts, the Bank provided Plaintiffs with additional documents that included a *third* version of the Deposit Account Agreement.  *See* Production Email (Ex. G hereto).  Despite this untimely notice, Plaintiffs proceeded to question Synovus on all three versions of its agreement.[5]  *See* **DE # 3547-57** at 4:6-

---

[5] Contrary to Synovus' assertions (*see* **DE # 3810**, p. 40), all three versions of the Deposit Account Agreement were referenced and submitted in support of Plaintiffs' motion for class certification.  *See* **DE # 3547-27, 3547-28, 3547-50**.

22; *also* Contract Spreadsheets (spreadsheets created by the Bank that break down the three applicable versions and label them the "2004 Agreement," "2005 Agreement," and " 2010 Agreement") (Ex. H hereto).

When such versions were effective, . *See* **DE # 3547-57** at 11:21 – 12:6

. Customers were subject to the same effective version of the Deposit Account Agreement no matter where they opened their account.[6]

Now, remarkably, Synovus disavows all of its prior sworn testimony and clear documentation by claiming that "hundreds" of materially different contracts may be involved. *See* **DE # 3810**, pp. 37-41, 48, 63-66.  No matter how unhelpful the plain facts are to its current litigation position, Synovus cannot change them and it is far too late in this litigation for the Bank to reverse course.[7]

The Bank also now argues for the first time that material differences exist as to whether the three versions of the Deposit Account Agreement disclosed the Bank's order of posting.  *See* **DE # 3810**, pp. 38-40 (arguing that 2005 Agreement expressly discloses the "order of posting" while 2004 and 2010 Agreements do not and, because such language is absent, individualized issues exist as to whether there is a contractual obligation of good faith).  Synovus fails to recognize, however, that the parties' contract consists of much more than the two-page Deposit Account Agreement.  Indeed, all versions of the Agreement expressly incorporate **numerous**

---

[6] Other than noting where the account was opened (                                        – *see* **DE # 3547-57** at 9:22 – 10:12), the three versions of the Deposit Account Agreement did not materially differ from state-to-state.  *See* Contract Spreadsheet (Synovus spreadsheet breaking down the three versions of the contract by state and finding the operative terms the same).

[7] The statement in Robert Moody's declaration that there are numerous *other* versions of the Deposit Account Agreement that are applicable to customer accounts (*see* **DE # 3810-6**, ¶ 8) is directly contrary to the documents produced by Synovus during discovery, its counsel's prior representations, the spreadsheet prepared by Synovus to address this issue, and Mr. Moody's own deposition testimony.  Indeed, Mr. Moody readily testified as Rule 30(b)(6) witness that

.  *See* **DE # 3547-8** at 49:13-15, 50:15-21; **DE # 3547-56** at 123:6-18, 135:6 – 136:11, 152:4-20.

.

other documents, including deposit account disclosures, funds availability policies, truth in savings disclosures, schedules of fees and charges, etc. *E.g.*, **DE # 3547-27, 3547-28, 3547-50** (all noting that the customer "acknowledges receipt of a copy and agree[s] to the terms" of these and/or other documents and specifically that the customer agrees to be bound by "the schedule of charges that may be imposed"). In such other disclosures, the Bank has always made some disclosure as to the "order of posting." *See* **DE # 3547-57** at 12:19 – 14:12 (███████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████); **3547-51** (customer statement containing the "order of posting"); *also* Schedules of Fees (various versions of the schedule of fees from the Class period, all of which disclose a substantively identical "order of posting" that gives the Bank discretion to post charges "in any order we determine") (Ex. I hereto).

The Bank's position that these "other" documents are not part of the contract (*see* **DE # 3810**, p. 39 n.21) contradicts the language of the contracts themselves, and also renders every single overdraft fee charged by the Bank to be unlawful and a direct breach of contract. Indeed, no provision of any of the three versions of the two-page Deposit Account Agreement (in and of itself) authorizes the Bank to charge overdraft fees. *E.g.*, **DE # 3547-27, 3547-28, 3547-50**. Clearly, the Bank relies on other documents to support such a right. The Bank cannot legitimately deny here that such other documents are part of the contract.

The Bank's disclosures concerning its discretionary order of posting are part and parcel to each of the three versions of the Deposit Account Agreement and did not materially change throughout the Class period. *See* **DE # 3547**, pp. 18-20 (detailing the minor, non-substantive changes to the "order of posting" disclosures during the Class period and noting that none of them ever accurately described actual posting practices in any intelligible or honest manner).

Synovus' effort to manufacture differences between its contracts and those used by other banks in MDL 2036 is untenable. Synovus, like other banks, enforced multiple versions of a form contract during the subject class period (which comes as no surprise given that banks routinely reserve for themselves the discretion to change the contract). *E.g.*, **DE # 3547-27**

("From time to time we may amend any term of this agreement . . .").  That three versions of the contract exist is irrelevant, however, because they are all materially the same.[8]

**F.    The Rule 23(a) Requirements Are Satisfied.**

**1.    Numerosity.**  In their motion, Plaintiffs introduced a spreadsheet prepared by the Bank showing that in any given year during the Class period, Synovus charged



.  *See* **DE # 3547-49**.  Given that throughout the Class period Synovus posted transactions high-to-low, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (**DE # 3547-56** at 138:18 – 139:8), it is beyond legitimate dispute that at least *thousands* of accountholders "incurred an overdraft fee as a result of Synovus' practice of sequencing debit card transactions from highest to lowest."  *See* **DE # 3547**, p. 1.  Nonetheless, the Bank absurdly argues that this evidence is insufficient to prove that the numerosity requirement has been satisfied.  *See* **DE # 3810**, pp. 61-62.  The exact same evidence, however, has been sufficient in prior cases.  *E.g.*, *Comerica*, 286 F.R.D. at 651 (finding numerosity requirement met based on similar evidence); *TD Bank*, 281 F.R.D. at 667; *Union Bank*, 275 F.R.D. at 672-73 (rejecting notion that plaintiffs had to identify an alternative posting order before Court could find numerosity).  The Bank has offered no sound reason for the Court to find otherwise.

**2.    Commonality.**  Synovus claims many of the common issues identified by Plaintiffs – namely, issues number 1, 2, 5, and 6 – are irrelevant because none of the claims require proof of fraud or deception.  *See* **DE # 3810**, pp. 62-63 (claiming issues such as whether the Bank provided inaccurate and misleading disclosures, including the failure to disclose Overdraft Courtesy and the Matrix, and/or the customer's ability to opt out of such programs, and/or accurate balance information, have "no field of operation" as to Plaintiffs' claims, which are based on high-to-low posting).  While proof of fraud or deception may not be *required* to establish Plaintiffs' claims, evidence thereof is definitely relevant to (a) proving several elements of such claims, including the Bank's lack of good faith or objectively unreasonable conduct (good faith and fair dealing), that its actions were unjust (unjust enrichment), and/or procedurally

---

[8] The Bank's repeated claim that Plaintiffs failed to identify the provision of the contract that gives rise to their breach of good faith and fair dealing claims is not true.  *See* **DE # 3547**, pp. 18-20 (describing the "order of posting" language that existed throughout the Class period).

and/or substantively unconscionable (unconscionability), and (b) refuting the affirmative defenses asserted by Defendants which require "full knowledge" (*infra*, pp. 20-21). Indeed, the Bank's high-to-low mechanism did not exist in a vacuum and the harm incurred by Plaintiffs and the Class was greatly amplified by other cogs of the Bank's overdraft machine, including secretive opt out abilities and the implementation of the Overdraft Courtesy and the Matrix credit lines. If Plaintiffs can prove the Bank's failure to disclose these aspects of its machine using class-wide proof, it will go a long way to establishing liability on a class-wide basis. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (common issues that "drive the resolution of the litigation" are appropriately considered in the certification inquiry).

The Bank next claims that because the evidence shows it did not re-sequence transactions, Plaintiffs cannot possibly prevail on issues which are dependent on this fact (i.e., issues 3 and 4). *See* **DE # 3810**, pp. 62-63. Even if the Bank's summary of the evidence as to re-sequencing were correct (which it is not), Defendants' point underscores the notion that such issues can be resolved on a class-wide basis.[9]

The common questions presented in Plaintiffs' motion are exactly the types of questions contemplated by the Supreme Court in *Dukes* as satisfying the commonality requirement. Indeed, this Court has already found that substantially similar questions satisfied the commonality standard in several other decisions that were issued after *Dukes*. *E.g.*, *Comerica*, 286 F.R.D. at 652-53; *TD Bank*, 281 F.R.D. at 674; *Union Bank*, 275 F.R.D. at 673-74.

3.      **Typicality and Adequacy.**  Rule 23(a)(3)'s typicality requirement is satisfied where the class representatives' claims and defenses arise out of the same course of conduct and are based on the same legal theory as those of the potential class. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *Brown v. SCI Funeral Servs. of Fla., Inc.*, 212 F.R.D. 602, 605 (S.D. Fla. 2003). Plaintiffs and the Class need not possess identical claims or

---

[9] Transactions indisputably come to the Bank in some order. While this order may be random, as opposed to chronological, there is an order. Notably, such a random order would not be intentionally harmful to customers. Moreover, the Bank has detailed information as to the timing of debit card transactions and so knows precisely when they were made. This information is easily integrated at the time of posting. Indeed, many banks post debit card transactions in the order in which such transactions were authorized. Rather than post transactions in random or chronological order, the Bank used sophisticated software to re-order and post all transactions in a high-to-low order so as to generate more overdraft fees. *See* **DE # 3547**, pp. 6-17. The Bank's claim that it did not "re-order" or "re-sequence" transactions is not well taken.

defenses, nor need they have been "affected in exactly the same way by defendant's conduct . . . ." *Brown*, 212 F.R.D. at 605; *also Union Bank*, 275 F.R.D. at 674.  Only a "marked" difference in the facts pertaining to the class representative and the class will destroy typicality.  *Union Bank*, 275 F.R.D. at 674 (quoting *Kornberg*, 741 F.2d at 1337).  The critical issue in determining typicality is whether the class representative's claims have a strong similarity to those of the class, even where factual differences exist.  *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985).  Meanwhile, Rule 23(a)(4)'s adequacy requirement is fulfilled if the class representatives do not have any "substantial" conflicts of interest with the class and will adequately prosecute the action.  *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Here, Synovus impermissibly seeks to destroy typicality and adequacy by magnifying irrelevant differences among the Plaintiffs and questioning their capacity to represent others.  *See* **DE # 3810**, pp. 26-36.  Not surprisingly, courts have viewed with skepticism the motives of defendants who feign concern for the well-being of class members through such challenges: "[w]hen it comes, for instance, to determining whether 'the representative parties will fairly and adequately protect the interests of the class,' . . . it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house."  *See Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981).  Plaintiffs easily withstand Synovus' attacks.

a.     **Plaintiffs' Contracts Are the Same as Those of Class Members.**  The Bank claims Plaintiffs have not proven their claims are typical because they have not shown that the specific contracts that governed their accounts are the same as those of the putative Class members.  *See* **DE # 3810**, pp. 38-39.  The Bank, however, knows full well that the contracts signed by Plaintiffs are *identical* to the version of the Deposit Account Agreement Defendants have admitted was effective from 2005 to 2010 (i.e., throughout most of the Class period). *Compare* **DE # 3547-27** (2005 Agreement) *with* **DE # 2158-2**, pp. 4-7 (Childs Contract) *and* **DE # 14-2**, pp. 16-17 (in Middle District of Georgia Civil Action File No. 4:12-cv-00027-CDL) (Green Contract) *and* Jenkins Contract (Ex. J hereto).  That the Bank would waste the Court's time with arguments that are easily disproven is unfortunate.

12

**b.      The Competing Georgia Class Does Not Make Mr. Green or the Childs Inadequate Class Representatives.**  The non-final state court settlement in *Griner* does not impact the adequacy of the named Plaintiffs who reside in Georgia.  As Synovus concedes, even assuming the *Griner* settlement ultimately becomes final, Georgia residents Mr. Green and the Childs can continue to pursue their claims against Synovus by opting out of *Griner* and representing a class of other Georgia residents who are not included in the *Griner* settlement.

Moreover, Synovus' claims about the extent of recovery that Mr. Green and the Childs could stand to recoup in *Griner* versus the present case are quite misleading.  Contrary to what Synovus would have the Court believe, Mr. Green is not necessarily entitled to $5,529.00 and Mrs. Childs is not necessarily entitled to $7,278.00 in the *Griner* settlement for two reasons.  First, given that Mr. Green and the Childs received refunds of some of their overdraft fees from the Bank, they are not entitled to the alleged amounts that Synovus claims unless they submit documentation substantiating the amount of fees they incurred and how many of those fees were refunded.  *See generally Griner* Claim Form (Ex. K hereto).  Without such documentation, class members are not entitled to anything.

In addition to the documentation requirements, Mr. Green and the Childs are only entitled to recover the full amount of their overdraft fees if the amount of claims submitted did not exceed the amount of the settlement fund.  *See Griner* Agreement, pp. 7-8 (Ex. L hereto).  Should that happen, members of the Georgia class are only entitled to a percentage of the total overdraft fees for which they can provide documentation.  *Id.* at 8.  The $16 million dollars available to the *Griner* class is plainly only a fraction of the total overdraft fees over the class period.  *Compare* **DE # 3547-35** (██████████████████████████████████████ ██████████).  Synovus' claims regarding the impact of the *Griner* settlement are overstated.[10]

**c.      The Purported Conflict Regarding the Alternative Sequence Sought Is Irrelevant.**  Synovus next claims that Mr. Green and Mrs. Childs are inadequate because they had different opinions as to how debit card transactions should be posted (i.e., chronologically vs. low-to-high).  *See* **DE # 3810**, pp. 30-31.  No conflict exists, and, even if it did, it would not defeat class certification.  The fact is that Synovus' overdraft scheme helped only one party,

---

[10] Also unpersuasive is the Bank's attempt to suggest a conflict between Mr. Green and the Childs, on the one hand, and Mr. Jenkins on the other.  *See* **DE # 3810**, p. 28.  Mr. Jenkins, as an Alabama resident, is not entitled to any recovery under the *Griner* settlement.  Thus, there is no conflict between the named Plaintiffs resulting from *Griner*.

itself, and universally harmed the Class.  The only variation relates to the amount by which individual Class members were harmed.  Nearly every bank as to which the Court has certified classes has made this same disingenuous argument, and the Court has appropriately rejected it each time.  Indeed in the class certification order in *Capital One*, this Court found it was:

> not persuaded that there exists an intra-class conflict over which alternative posting order should be used to calculate damages.  To the extent individual preference with regard to posting order is relevant, there does not appear to be any competent evidence that class members would prefer a high-to-low posting order over any of the possible alternatives such as chronological or low-to-high…. If Plaintiffs establish Capital One's liability, the evidence suggests that most if not all class members stand to benefit, regardless of the alternative posting order ultimately chosen by the fact-finder . . . .

*See* **DE # 2920-1**, p. 18.

Moreover, even if some conflict relating to alternative posting orders existed, it would not preclude class certification.  For a conflict between the representative and the class to defeat class certification, it must be "a fundamental one, going to the specific issues in controversy." *See Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000); *see also Valley Drug*, 350 F.3d at 1189 ("the existence of minor conflicts alone will not defeat a party's claim to class certification").  Here, a specific issue in controversy is whether Synovus' high-to-low posting practices breached the duty of good faith and fair dealing.  As all Class members will benefit if Plaintiffs prevail on these issues, there is no fundamental intra-class conflict.  *See James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecommuns., Inc.*, 275 F.R.D. 638, 643 (M.D. Fla. 2011) (finding that no fundamental intra-class conflict existed when "[t]he specific issues in this controversy concern whether BellSouth's billing practices were deceptive, fraudulent, or resulted in unjust enrichment," and all class members would benefit if plaintiffs prevailed).

### d.    Mr. Green's Bankruptcy Does Not Preclude His Participation.

Synovus attacks Mr. Green, contending that his initial failure to list this claim in a Chapter 13 bankruptcy filing indicates intent to defraud and renders him inadequate and atypical Class representative based on the dishonesty of the omission.  *See* **DE # 3810**, pp. 33-34.  Just as this Court found previously in the PNC Bank case, bankruptcy should not preclude a named Plaintiff from serving as a class representative.  *See* **DE # 2697**, pp. 24-25 (appointing Nicole and Michael Cowen as class representatives even though they had filed bankruptcy).

14

Mr. Green's initial failure to list his claim against Synovus as an asset has absolutely no bearing on any of his creditors or on anyone else.  Consequently, Mr. Green had no motive for concealment.  Moreover, established case law recognizes that the omission must be considered inadvertent and irrelevant.  *See In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002)).   In any event, as Synovus admits, Mr. Green has since gone back and amended his schedules to list this case as a potential asset.  The failure to list this claim as an asset was inadvertent.  Mr. Green's bankruptcy will not become the focus of the litigation, does not create a conflict of interest, and has no effect on his ability to serve.

       **e.**     **<u>Jeramie Childs Has Personally Suffered an Injury Resulting From Synovus' Conduct.</u>**  Synovus attacks the adequacy of Jeramie Childs by arguing that he has suffered no injury as a result of Synovus' conduct because he was never formally added to his wife Natalie's account.  *See* **DE # 3810**, pp. 32-33.  This argument completely ignores the fact that Mr. Childs deposited his paychecks into his wife's account and thus, like his wife, paid overdraft fees that were the result of Synovus' improper conduct.  *See* N. Childs Depo., p. 125:2-6 (indicating that her husband's payroll check was deposited into her account) (Ex. M hereto); J. Childs Depo., pp. 21:25 – 22:2 (testifying his money went into the account); 33:24 – 34:9 (testifying that he made transactions that resulted in overdraft fees) (Ex. N hereto).  Thus, irrespective of whether Mr. Childs was ever formally added to the account, he suffered injury as a result of Synovus' improper overdraft practices because his money was deposited into the account and taken by Synovus in furtherance of its overdraft scheme.  Mr. Childs' status as a non-signatory does not prevent him from pursuing claims against Synovus.  *E.g.*, *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 413 (4th Cir. 2000).

       **f.**     **<u>Mr. Jenkins Is an Adequate Class Representative.</u>**  Defendants' attacks on John Jenkins' adequacy as a Class representative should also be rejected.  Mr. Jenkins was not added as a named Plaintiff until after Plaintiffs filed their class certification motion, and Defendants did not produce documents relating to Mr. Jenkins until much later.[11]  Nevertheless,

---

[11] As previously established by Plaintiffs, Synovus did not even produce the data needed for Mr. Olsen to perform his analysis of Mr. Jenkins' statements until after Mr. Olsen's deposition.  *See* **DE # 3815**, p. 5, n.2; **DE # 3815-3**.  Synovus' attempt to blame Plaintiffs for this fact is disingenuous.

Mr. Jenkins' contract with the Bank is substantially identical to the exemplar versions previously filed by Plaintiffs. *Compare* **DE # 3547-27** *with* Jenkins Contract (Ex. J hereto).

When the Court looks past all of Synovus' rhetoric and hyperbole, it is clear that Mr. Jenkins is an adequate Class representative. Mr. Jenkins is a 69-year old electrician, who works at Fort Benning. *See* Jenkins Depo., pp. 8:24, 13:5-7 (Ex. O hereto). Mr. Jenkins has a firm understanding about what this case is about. *Id.* at 26:7 – 27:5, 35:8-18. He further understands his role as a Class representative in this case. *Id.* at 29:12 – 30:25. Not only did Mr. Jenkins sit for his deposition, but he assisted in the preparation of discovery responses as well. *Id.* at 115:4 – 116:14. The testimony of Mr. Jenkins during his deposition is largely consistent with his signed declaration submitted in support of Plaintiffs' motion for class certification. *See, e.g.*, **DE # 3547-6**. While there is admittedly an inconsistency between his declaration, where he states he has reviewed the Second Amended Complaint, and his deposition testimony on that subject, the failure to remember having reviewed a complaint should not disqualify him from serving. *See* Jenkins Depo., p. 35:7 (noting that he does not "know much lawyer stuff").

> **g.**      **Plaintiffs Need Not Prove They Are Young and Financially Illiterate in Order to Demonstrate Typicality and Adequacy.** Synovus also argues that Plaintiffs cannot prove typicality or adequacy because they are neither young, nor financially illiterate (i.e., the groups Plaintiffs claim were the most vulnerable to Synovus' scheme). *See* **DE # 3810**, pp. 66-67. These attributes, however, are not necessary pre-requisites for Class membership or for proof of any claim. Moreover, the law does not require the named Plaintiffs to be identically situated to all class members. *E.g.*, *Kornberg*, 741 F.2d at 1337 (a "factual variation will not render a class representative's claim atypical unless the factual position of the representative markedly differs from that of other members of the class"). Plaintiffs' claims here arise out of the same course of conduct and are based on the same legal theories as those of the putative Class members. That they might not all be the same age or have the same amount of experience managing funds does not vitiate typicality or adequacy.

**G.**      **Common Issues Predominate Under Rule 23(b)(3).**

Common issues predominate. Synovus' heavy reliance on *Klay*, *Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.*, 601 F.3d 1159 (11th Cir. 2010), and *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256 (11th Cir. 2009), is unavailing (*see* **DE # 3810**, pp. 63-66), as the facts in those cases were very different than those at issue here. In *Klay*, there

were many different defendants with many different contracts with many different provider groups. Moreover, because the defendants breached the contracts through a variety of means and differing computer algorithms that were not subject to generalized proof, each physician would have to prove a variety of individual circumstances leading to the breach. 382 F.3d at 1263-64. The same problem bedeviled the proposed class in *Sacred Heart*, where there were substantial variations in the terms of over 300 hospital contracts that were individually negotiated, leading the court to find that "the diversity of the material terms is overwhelming." 601 F.3d at 1171-72. In *Vega*, different employees possessed markedly different levels of knowledge and understanding of the commission systems based on information they may or may not have received from the defendant. 564 F.3d at 1274-75.

The facts in *Klay*, *Sacred Heart*, and *Vega* stand in sharp contrast to those here, where (1) the agreements at issue are uniform form contracts offered on a take-it-or-leave-it basis and were not the product of any individual negotiation, and (2) there is no evidence that Plaintiffs or any Class members learned the true nature of Synovus' exploitative scheme, which includes the secret Overdraft Courtesy and Matrix lines of credit.

## 1.    **Common Issues Predominate for Each Legal Claim.**

### a.    **Good Faith and Fair Dealing.**    The Bank's attacks on Plaintiffs' good faith and fair dealing claims ***all*** stem from faulty premises, namely that the contracts are not uniform or materially similar (wrong – *supra*, pp. 7-10), membership in the Class is not ascertainable (wrong – *supra*, pp. 3-5), and individual issues associated with Synovus' affirmative defenses defeat predominance (wrong – *infra*, pp. 20-22).

The cases cited by Synovus are equally unpersuasive. *See* **DE # 3810**, pp. 42-43. For example, *Avritt v. Reliastar Life Insurance Company*, 615 F.3d 1023 (8th Cir. 2010), which was decided under Washington law not at issue here, emphasized that "what is objectively reasonable depends on the nature and the context of the parties' bargain." 615 F.3d at 1032. The *Avritt* plaintiffs relied on a dubious reading of the contract, causing the court to observe that "it is not clear that any members of the putative class, let alone a substantial number of them, originally understood the contract language in the manner the Avritts propose." *Id.* at 1030. Moreover, the defendant in *Avritt* marketed its insurance policies through thousands of independent agents who were not required to follow any script and who were free to answer customers' questions about the product. *Id.* at 1027. Given that decentralized and uncontrolled context, it was impossible to

17

hypothesize the objective consumer's expectations.   In contrast, Synovus marketed its own banking services through standardized account agreements, applied to all Class members consistently, and tightly regulated the information released to customers regarding overdraft services.   Given this context, the perspective of the reasonable consumer can readily be ascertained in this case.  *Contrast Stratton v. Am. Med. Sec., Inc.*, 266 F.R.D. 340, 351-52 (D. Ariz. 2009) (no "centrally orchestrated strategy" by the defendant to market the product); *Rose v. SLM Fin. Corp.*, 254 F.R.D. 269, 272 (W.D.N.C. 2008) (disclosures in proposed mortgage refinance class actions were not uniform).

        **b.**      **<u>Unjust Enrichment.</u>**  Synovus argues that unjust enrichment claims are never appropriate for class treatment.  *See* **DE # 3810**, pp. 52-55.  However, where corporate policies constitute the focus of the plaintiffs' claims, courts often find that common issues will predominate because such policies would necessarily have to be re-proven by every plaintiff if each claim were tried separately.  *E.g.*, *Klay*, 382 F.3d at 1257; *Comerica*, 286 F.R.D. 657-58; *Union Bank*, 275 F.R.D. at 680; *James D. Hinson*, 275 F.R.D. at 647; *County of Monroe v. Priceline.com, Inc.*, 265 F.R.D. 659, 671 (S.D. Fla. 2010); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004); *Ham v. Swift Transp. Co., Inc.*, 275 F.R.D. 475, 487 (W.D. Tenn. 2011) (certifying an unjust enrichment claim because the basis of the claim was the same for all class members).

        Here, the focus of Plaintiffs' unjust enrichment claim is Synovus' systematic, uniform scheme to maximize overdraft revenue at the expense of its unsuspecting customers.  Plaintiffs will use common evidence to show that (i) they and the Class members paid excessive overdraft fees to Synovus (i.e., the benefit), (ii) Synovus specifically recognized that its revenue would increase as a result of its scheme, and (iii) Synovus' retention of such excessive fees is unjust. *See* **DE # 3547-1**, pp. 7-8.

        Synovus' invocation of *Vega* is unpersuasive.  *See* **DE # 3810**, p. 53.  There, the court found that "many class members were told about, and fully understood, how the [challenged] procedure worked."  564 F.3d at 1277.  Here, however, there is no evidence that Plaintiffs or any Class members learned the true nature of the Bank's exploitative scheme, which includes the highly secretive Matrix line of credit.  Mere awareness of one aspect of the scheme, such as high-to-low posting, is only part of the equation.  Unlike in *Vega*, Synovus' exploitative practices remained concealed and equally affected all Plaintiffs and the Class.

The Bank further argues that Plaintiffs cannot determine which specific overdraft fees are unjust because they have not proposed an alternative posting order or "damage model." *See* **DE # 3810**, pp. 53-54. That Plaintiffs have not specified an alternative posting order is irrelevant as that determination will be made by the trier of fact. Whatever posting order is determined to be appropriate, Mr. Olsen is capable of evaluating Synovus' data to determine the specific fees (incurred by both Plaintiffs and every Class member) which are unjust. *See* Olsen Decl., ¶¶ 42, 45; *Union Bank*, 275 F.R.D. at 673. Synovus is thus incorrect in claiming that Plaintiffs are not capable of identifying via class-wide proof which fees are unjust.[12]

      **c.**     **Unconscionability.** The Bank previously moved to dismiss Plaintiffs' unconscionability claim and such motion was denied by this Court. *See* **DE # 2858**. Rather than focus on the issue at hand (i.e., the certifiability of an unconscionability claim), Synovus has used its Brief as another vehicle to attack the claim's validity. *See* **DE # 3810**, pp. 49-52 (arguing unconscionability is not a recognized cause of action for affirmative relief and such a claim is inconsistent with a breach of contract claim). These stale arguments have already been rejected on multiple occasions by this Court and should not be readdressed here. *E.g.*, *In re Checking Account Overdraft Litig.*, 883 F. Supp. 2d 1251, 1255 (S.D. Fla. 2012); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1318-19 (S.D. Fla. 2010); *In re Checking Account Overdraft Litig.*, 2013 WL 5774287, *9 (S.D. Fla. Oct. 24, 2013).

Defendants briefly argue that the specific circumstances of each customer must be considered in determining the merits of the unconscionability claims. *See* **DE # 3810**, pp. 50-51. Synovus is wrong again, as the evidentiary presentation will focus on Synovus' conduct and its records. That evidence will include proof of the Bank's financial resources and sophistication in devising the overdraft fee program; the form contracts with boilerplate language that Synovus provided to all of its retail banking customers; the inaccurate balance information that Synovus provided to all Class members; Synovus' common failure to provide Plaintiffs and the Class with any meaningful opportunity to opt out of the overdraft fee program; and consumer and employee complaints received by Synovus regarding the unfair and deceptive nature of the overdraft scheme. *See* **DE # 3547-1**, pp. 5-7. Synovus ignores Plaintiffs' evidence and the fact that this

---

[12] Synovus' argument that Plaintiffs' unjust enrichment claim is not a jury-triable claim is also unavailing. *See* Synovus Brief, p. 54; *also e.g.*, *State Farm Fire & Cas. Co. v. Silver Star Health and Rehab*, 739 F.3d 579, 582, 584 (11th Cir. 2013) (affirming jury verdict on unjust enrichment claim); *Shum v. Intel Corp.*, 499 F.3d 1272, 1279 (Fed. Cir. 2007).

Court certified similar sub-classes against numerous other banks in MDL 2036.  As this Court already recognized, "Plaintiffs' unconscionability claims focus on [the Bank] and its conduct, making them appropriate for certification."  *Union Bank*, 275 F.R.D. at 680; *also Davis v. Cash for Payday, Inc.*, 193 F.R.D. 518, 522-23 (N.D. Ill. 2000) (certifying unconscionability class claim because common issues predominate); *In re United Cos. Fin. Corp.*, 276 B.R. 368, 375-76 (D. Del. 2002) (collecting cases)

       **2.**      **The Bank's Affirmative Defenses Do Not Vitiate Predominance.**  Synovus claims that some of its affirmative defenses require individualized proof and preclude certification.  *See* **DE # 3810**, pp. 44-48, 54-55.  Again, the Bank is wrong.

       **a.**      **"Full Knowledge" Defenses.**  Most of the affirmative defenses referenced by Synovus, including voluntary payment, waiver, and laches stem from the Defendants' allegation that certain Plaintiffs continued to pay overdraft fees after learning about Synovus' policies and practices.  *Id.*  Whether this is even the type of conduct that could, as a matter of law, support such defenses is a question this Court can answer on a class-wide basis.  *See Miller v. Optimum Choice, Inc.*, 2006 WL 2130640, *7 (D. Md. July 28, 2006) (common affirmative defenses "do not operate to destroy the predominance of common questions across the class, but [] instead provide an additional link of commonality between the class members.").  Furthermore, even if the conduct could trigger these defenses, they all require a party to have had *full knowledge* of the circumstances in order for the defense to prevail.[13]  *E.g.*, *Comerica*, 286 F.R.D. at 660; *TD Bank*, 281 F.R.D. at 678-79.

---

[13] **Voluntary Payment Doctrine:** *CIT Comm'n Fin. Corp. v. McFadden, Lyon & Rouse, LLC*, 37 So.3d 114, 127-28 (Ala. 2009); *City of Key W. v. Fla. Keys Cmty. Coll.*, 81 So.3d 494, 500 (Fla. Dist. Ct. App.); *Anthony v. Am. Gen. Fin. Servs., Inc.*, 697 S.E.2d 166, 175 (Ga. 2010); *Hardaway v. S. Ry. Co.*, 73 S.E. 1020, 1025 (S.C. 1912); *Pratt v. Smart Corp.,* 968 S.W.2d 868, 871 (Tenn. Ct. App. 1997).

**Waiver:** *Hughes v. Mitchell Co., Inc.*, 49 So.3d 192, 201 (Ala. 2010); *Fireman's Fund Ins. Co. v. Vogel*, 195 So.2d 20, 24 (Fla. Dist. Ct. App. 1967); *State Mut. Ins. Co. v. Harmon*, 33 S.E.2d 105 (Ga. Ct. App. 1945); *Harrison v. Ballington*, 498 S.E.2d 680, 682-82 (S.C. Ct. App. 1998); *Arnold v. Locomotive Engineers Mut. Life & Acc. Ins. Ass'n*, 204 S.W.2d 191, 195 (Tenn. Ct. App. 1946).

**Laches:** *Caudle v. First Fed. Sav. & Loan Ass'n*, 327 So.2d 911, 912 (Ala. 1976); *Chipola Valley Realty Co. v. Griffin*, 115 So. 541, 542 (Fla. 1927); *Hadden v. Thompson*, 42 S.E.2d 125, 127 (Ga. 1947); *Newberry v. Newberry*, 184 S.E.2d 704, 706-07 (S.C. 1971); *Uffelman v. Boillin*, 82 S.W.2d 545, 569 (Tenn. Ct. App. 1935).

Plaintiffs and the Class members, however, did not have full knowledge of Synovus' overdraft scheme.  The Bank did not disclose that it *always* posted high-to-low or that such order *always* resulted in the maximum number of assessed overdraft fees.  *E.g.*, **DE # 3547-27** (2005 Deposit Agreement), **3547-51** (customer statement vaguely noting that transactions are posted "in any order we determine" and the posting order "may" result in more service charges), **3547-29** (████████████████████████████████████████████████████████████████████), **3547-58** at 93:3-20.  Moreover, even if a customer was aware of the high-to-low order, he or she had no idea of the level of impact such a system could have when implemented in conjunction with ███████████████████████████████████████████████ – **DE # 3547-56** at 194:19 – 196:1, 234:3 – 235:5) ███████████████████ (████████████████ ████████████████████████████████████████████ – **DE # 3547-31** at SNV-MDL00107252, 23).  ███████████████████████████████████ ████████████████████████.  *E.g.*, **DE # 3547-32** at SNV-MDL00047815, **3547-56** at 254:24 – 255:7 (██████████████████████████████████████████).

Because Plaintiffs will use common evidence to show that they were precluded by Synovus from ascertaining full knowledge of the circumstances, affirmative defenses which require full knowledge do not defeat predominance.[14]  *Union Bank*, 275 F.R.D. at 678 (deprivation of knowledge presents a critical common issue which "will undercut [the Bank's] defenses by common evidence.").

> **b.** <u>**Damage Defenses.**</u>     Many of the affirmative defenses referenced by Synovus, including waiver and voluntary payment, pertain to the amount of Plaintiffs' damages. The Eleventh Circuit has repeatedly held that individual issues relating to damages do not defeat certification.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005); *Sacred Heart*, 601 F.3d at 1178; *also Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988).  Similarly, mitigation of damages is not a barrier to

---

[14] As found in *Union Bank*, "[t]o the extent [the bank] could prove that some customers learned of their secret line of credit or of their ability to opt out, yet continued to incur and pay overdraft fees, the presence of individualized defenses as to a small number of class members would not destroy the predominance of common liability questions." 275 F.R.D. at 678 n.9; *also Smilow v. Southwestern Bell Mobile, Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003); *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 45 (E.D.N.Y. 2008).

certification.[15]  *E.g., Lane v. Kitzhaber*, 283 F.R.D. 587, 599 (D. Or. 2012); *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012); *In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 116 (S.D.N.Y. 2010).

       **c.**   **Statutes of Limitations.**  As has been the case with the vast majority of the banks in this MDL, Synovus' accounts are governed by the law of the state where the account was opened.[16]  *See* **DE # 3547-28** (2010 Deposit Account Agreement for Georgia specifying Georgia law); **2547-57** at 16:18 – 17:13 (████████████████████████████ ████████████████████████████████████████████), 20:11-15 (█████████████████ ███████). Because Synovus does business in five states, it is undisputed that multiple statutes of limitations apply to Plaintiffs' claims.

       Where class members may be subject to different statutes of limitations, class certification is not defeated because courts may create sub-classes to remedy the issue.  *E.g.*, *Brown*, 212 F.R.D. at 608 (creating sub-classes where two distinct statutes of limitations governed class members' claims).  Here, Plaintiffs' Trial Plan proposes specific sub-classes for their state law claims, each with its own start date linked to the applicable statute of limitations. This Trial Plan effectively handles the limited statute of limitation variations.

**H.**   **The Remaining Rule 23(b)(3) Requirements Are Satisfied.**

       **1.**    **Superiority.**  Recognizing they are sound, the Bank does not attempt to rebut the majority of Plaintiffs' arguments as to why a class action is superior to the adjudication of thousands of small value cases.  Synovus does, however, claim that this Court's familiarity with the facts and law is irrelevant to the superiority requirement because the case will be returned to the originating court for trial.  *See* **DE # 3810**, p. 67.  While these cases may ultimately be tried

---

[15] As Synovus itself admits, full knowledge of the practices at issue is clearly a pre-requisite of the defense.  *See* **DE # 3810**, p. 47; *also Shelley v. AmSouth Bank*, 2000 WL 1121778, *11 (S.D. Ala. July 24, 2000) (noting that a failure to mitigate defense requires proof of full knowledge).

[16] The Bank's claim that it cannot ascertain where a customer opened his account except by pulling the customer's file and reviewing his individual agreement is nonsensical.  *See* **DE # 3810**, p. 48. ████████████████████████████████  .  *See* **DE # 3547-57** at 35:7:25 (██████ ███████████).  Clearly, Synovus can easily determine where a customer opened his account.  If this were not the case, Synovus could not have ascertained the members of the purported *Griner* settlement class.  *See* **DE # 3810**, p. 56 (articulating *Griner* class definition as "all Georgia accountholders").

elsewhere, there is much pre-trial work left to do, including discovery and dispositive motions. This Court's familiarity with the facts and law makes it ideally suited to address these issues on a class-wide basis. *Klay*, 382 F.3d at 1271 ("it is desirable to concentrate claims in a particular forum when that forum has already handled several preliminary matters").

        **2.**      <u>**Manageability.**</u>  Defendants claim that Plaintiffs' Trial Plan is "replete with inconsistencies," which makes a trial unmanageable. *See* **DE # 3810**, p. 67 (arguing that Plaintiffs' Motion proposes two sub-classes, while their Trial Plan proposes five sub-classes). This is incorrect as the Motion and Trial Plan both clearly identify a total of five sub-classes – two good faith and fair dealing sub-classes, two unjust enrichment sub-classes, and one unconscionability class. *Compare* **DE # 3547** *with* **DE # 3547-1**, pp. 11-13. The Bank's effort to manufacture inconsistencies where none exist to attempt to prove unmanageability is specious.

**I.**      <u>**Neither the Non-Final *Griner* Settlement Nor the Bank's Contingent Arbitration Motion Preclude Certification of the Proposed Class.**</u>

        Synovus claims that two subsets of the proposed Class, specifically (1) all Georgia customers whose claims will be released in proposed *Griner* settlement and (2) all customers whose accounts remain open as of September 24, 2013 (after the Bank unilaterally inserted an arbitration clause into its Deposit Account Agreement), should be excluded from any Class that is certified by this Court. *See* **DE # 3810**, pp. 55-60. However, the Bank cannot dispute that the *Griner* settlement is ***not*** final and/or that its request to compel arbitration has ***not*** been granted.[17] Defendants' request that this Court should exclude large subsets of the proposed Class ***before*** these necessary events have occurred is baseless. Quite the contrary, if these necessary events ever materialize, the Court can modify the Class definition to address them. For example, the Court can exclude all Georgia customers who are class members in *Griner* and who do not

---

[17] The Bank itself asserts that its arbitration argument is contingent upon the Court *first* granting Plaintiffs' class certification request. *See* **DE # 3809** at 1. While Plaintiffs do not agree with Synovus' position, and note that this Court has previously found to the contrary in MDL 2036 (*see* **DE # 3415**), Plaintiffs agree that this Court should defer consideration of Synovus' contingent arbitration motion until after a decision is made on class certification. Plaintiffs also vehemently challenge the viability of Defendant's newfound attempt to compel arbitration of claims that it has been actively litigating for nearly five years based on a clause it unilaterally forced upon its customers long *after* this litigation commenced. *See* **DE # 3826** (summarizing the meritlessness of Synovus' arbitration request).

timely opt out of the settlement.  The Court could also exclude any customer who is found to be subject to an enforceable arbitration clause in this case.[18]

Equally without merit is the Bank's claim that Plaintiffs cannot establish numerosity if the subsets of putative Class members identified above are excluded.  *See* **DE # 3810**, pp. 58, 60. Even assuming *arguendo* the *Griner* settlement is finalized (and very few opt out) and Synovus prevails in full on its five-years-late arbitration motion, a Class consisting of many thousands of Alabama, Florida, South Carolina, and Tennessee customers who closed their accounts prior to September 24, 2013, would still exist.  *E.g.*, **DE # 3810**, pp. 58-60 (acknowledging that some Synovus accounts, including those of all the Plaintiffs, were closed as of September 24, 2013), **DE # 3810-6**, ¶ 24 (admitting that 39% of Synovus accounts during the Class Period were non-Georgia accounts); *also* **DE # 3547-49** (███████████████████████████████ ██████████████████████████████████████████████).  The Bank's insinuation that there would not be enough putative class members to establish numerosity (i.e., at least 40) is frivolous.  *Vega*, 564 F.3d at 1267.

### III.    CONCLUSION

Plaintiffs have demonstrated that they satisfy all of the elements of Rule 23(a) and (b)(3). The class action mechanism is not only the best and most efficient way to adjudicate the Class members' claims in this case, it is also the *only* viable method of doing so.  For all of the foregoing reasons, and for the reasons set forth in Plaintiffs' opening brief, Plaintiffs respectfully request that the Court grant their motion to certify the Class and sub-classes pursuant to Federal Rule 23(b)(3).

---

[18] The Bank claims that if the Court certifies the proposed Class, "it will [] be confronted with a motion to dismiss based on abstention or in the alternative, to stay further proceedings based upon the *Colorado River* doctrine."  *See* **DE # 3810**, pp. 57-58.  The Court should not be dissuaded by this threat.  Plaintiffs deny that either abstention or a stay would be warranted under these facts and will respond to any such *Colorado River* motion if and when it is filed.

Dated:  April 17, 2014.

Respectfully submitted,

*/s/ Aaron S. Podhurst*                                          */s/ Bruce S. Rogow*
Aaron S. Podhurst, Esquire                              Bruce S. Rogow, Esquire
Florida Bar No. 063606                                    Florida Bar No. 067999
apodhurst@podhurst.com                                brogow@rogowlaw.com
Robert C. Josefsberg, Esquire                        BRUCE S. ROGOW, P.A.
Florida Bar No. 40856                                      Broward Financial Center
rjosefsberg@podhurst.com                            500 E. Broward Boulevard
Peter Prieto, Esquire                                        Suite 1930
Florida Bar No. 501492                                    Fort Lauderdale, FL  33394
pprieto@podhurst.com                                    Tel: 954-767-8909
John Gravante, III, Esquire                             Fax: 954-764-1530
Florida Bar No. 617113
jgravante@podhurst.com
PODHURST ORSECK, P.A.
City National Bank Building
25 W. Flagler Street, Suite 800
Miami, FL 33130
Tel: 305-358-2800
Fax: 305-358-2382

*Co-Lead Counsel for Plaintiffs*

*/s/ Robert C. Gilbert*
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
Stuart Z. Grossman, Esquire
Florida Bar No. 156113
szg@grossmanroth.com
David M. Buckner, Esquire
Florida Bar No. 60550
dbu@grossmanroth.com
Seth E. Miles, Esquire
Florida Bar No. 385530
sem@grossmanroth.com
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

*Coordinating Counsel for Plaintiffs*

25

*/s/ E. Adam Webb*
E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
Matthew C. Klase, Esquire
Georgia Bar No. 141903
Matt@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E.
Suite 480
Atlanta, GA 30339
Tel: 770-444-9325
Fax: 770-217-9950


*/s/ Russell W. Budd*
Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605
Fax: 214-520-1181


*/s/ Ruben Honik*
Ruben Honik, Esquire
Pennsylvania Bar No. 33109
rhonik@golombhonik.com
Kenneth J. Grunfeld, Esquire
Pennsylvania Bar No. 84121
kgrunfeld@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177
Fax: 215-985-4169

*/s/ Michael W. Sobol*
Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
Roger N. Heller, Esquire
California Bar No. 215348
rheller@lchb.com
Jordan Elias, Esquire
California Bar No. 228731
jelias@lchb.com
LIEFF CABRASER HEIMANN &
  BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000
Fax: 415-956-1008


*/s/ David S. Stellings*
David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN L.L.P.
250 Hudson Street
8th Floor
New York, NY  10013
Tel: 212-355-9500
Fax: 212-355-9592


*/s/ Ted E. Trief*
Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
Barbara E. Olk, Esquire
New  York Bar No. 1459643
bolk@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060
Fax: 212-317-2946

*Plaintiffs' Executive Committee*

26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2014, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Robert C. Gilbert*
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH, P.A.
2525 Ponce de Leon Boulevard
Eleventh Floor
Coral Gables, FL 33134
Tel: 305-442-8666
Fax: 305-779-9596

27