# EXHIBIT A

Personal Banking

# Service Agreement for Personal Accounts



RBC Bank

RBC-ARB-00148

Effective for all personal (consumer) accounts or services used on or after Nov. 10, 2009.

**PERSONAL DEPOSIT ACCOUNT TERMS AND CONDITIONS**

**Definitions**
The terms "we," "us" and "our" refer to RBC Bank (USA), also known as RBC Bank™, including the Branch and other branches of RBC Bank (USA). The terms "you" and "your" refer to the person(s) identified in the Account Application as the "Depositor" or "Client," whether one or more, and unless the context clearly indicates otherwise, includes each of your Authorized Representatives, if applicable. Unless the context clearly indicates otherwise, the term "party" refers to either you or us and the term "parties" is a collective reference to you and us. Other terms used in the Agreement are defined either in the section of this Personal Accounts Service Agreement entitled "Defined Terms," in other sections hereof, or in the Account Application or other documents constituting part of the Agreement. If a term is not defined in one of the foregoing documents, it will have the meaning given it in FRB Regulation CC (12 C.F.R. 229 et. seq.) or, if not defined therein, in the UCC.

**Agreement**
By executing and returning to us the Account Application, you: (i) acknowledge receipt of the Agreement; (ii) signify that you have read and understand the Agreement; and (iii) agree to be bound by the terms and conditions of the Agreement and agree that your access to and use of the Account will be subject to and on the terms and conditions of the Agreement. The Agreement sets out your rights, responsibilities and obligations and our rights, responsibilities and obligations with respect to the Account.

**Use of Account**
The Account may be used only in accordance with the Agreement, and must be used primarily for personal, family or household purposes, and not primarily for business or other non-personal organizational purposes. Your use of the Account, including all instructions relating to the Account, must comply with all applicable laws. The Account may not be used for any unlawful purpose or otherwise in violation of any laws.

**Representations and Warranties**
Each deposit to and withdrawal from the Account by you will constitute a representation and warranty by you to us as follows: (i) you are not a person whose property or interest in property is blocked or subject to blocking pursuant to any laws of the U.S.; (ii) you are not a person on the list of Specially Designated Nationals and Blocked Persons, and you are not subject to any limitations or prohibitions under any regulations or orders, of the U.S. Department of Treasury's Office of Foreign Assets Control; (iii) you have not been convicted or accused of terrorism, money laundering, or any felonious crime or crime involving moral turpitude including theft, perjury or vice, by a governmental authority, regulator, international organization, financial industry investigative body or any other entity; and (iv) you are in compliance with and do not engage in any dealings or transactions prohibited by any laws of the U.S., including the Bank Secrecy Act, the USA PATRIOT Act, the Trading with the Enemy Act and the U.S. Foreign Corrupt Practices Act of 1977, all as amended.

**Fees**
Unless we agree in writing otherwise, you will be assessed fees and other charges associated with the Account, whether the Account is active, inactive or dormant. Our normal and customary fees and other charges applicable to the Account are described in our

Schedule of Fees. We reserve the right to change our fees and other charges applicable to the Account and to add new fees and charges at any time. We will provide you not less than 30 days' prior notice of any new or increased fees and other charges. In most cases, Account related fees and other charges will be deducted from your balance and reflected on your Account Statements. In any case where we do not deduct a fee or other charge directly from your Account, you will pay us the fees and other charges we assess you for the Account, and any other charges or payment obligations you owe us relating to the Account, when we ask you to make such payments. If the Account is a joint (multiple-party) account, each of you are jointly and severally liable for payment of all fees, charges and other payment obligations (including overdrafts) you owe us from time to time relating to the Account, regardless of which joint account holder created or incurred such fees, charges or other payment obligations. Any past due fees, charges and other payment obligations you now owe us and any you may owe us in the future may be deducted by us from the Account or from other accounts maintained by you (including any joint account holder) with us or any of our Affiliates; or we may recover payment in any other permissible manner, including judicial actions, or from property which secures obligations you now or in the future may owe us. We will not be liable to you or any other person for any consequences of any account having insufficient funds because of the deduction of such fees, charges and other payment obligations from the Account or from other accounts maintained by you (including any joint account holder) with us or any of our Affiliates. All fees, charges and other payment obligations are exclusive of any sales, value-added or use taxes, stamp and other duties, and other governmental charges which may be imposed on the Account and which are not based on our net income. You will pay any such taxes, duties and charges. Third parties may also incur certain types of fees in connection with your use of your Account. For example, if you issue a check to a payee who is not our client and that person wishes to cash it at one of our branches, you agree that we may charge them a service fee as a condition of cashing the check.

**Changes in Terms**
**Changes by Us.** We may from time to time change any part or parts of the Agreement. We will normally set an effective date for each change, but if we do not do so, the effective date will be the date we make the change. We will generally give you advance notice of material changes, though we may not provide such notice for changes that are to your benefit. Also, we may not provide advance notice if we must make an immediate change to comply with applicable laws or for security purposes, such as attempting to prevent an unauthorized use of the Account. If we must make an immediate change for any reason, we will have no liability to you or any other person for failing to provide prior notice. Unless otherwise provided in the Agreement,  notice of any changes will be provided to you in accordance with the "Notices" section of these Terms and Conditions. Mailed notices of changes may be included on or with other materials, such as your Account Statements. Whenever the Agreement or any part thereof is revised or replaced, you agree that, except with respect to any changes that we may be required by law to specifically call to your attention, it will be deemed adequate notice to you of the changes if we notify you of the availability of the new or revised version and tell you how you may obtain a copy. You further agree that the most current version of the Agreement supersedes all prior versions and will at all times govern your Account(s), and that your continued use of any Account after the effective date of any changes or new/revised version constitutes your agreement to be bound by the terms thereof, regardless of whether you have obtained a copy.

1

RBC-ARB-00149

**Changes by You.** Except for a change in your address as provided under "Notices" and, if applicable, changes in your Authorized Representatives, you may not change the Agreement or any aspects of the Account other than by a writing signed by both you and one of our Authorized Representatives.

**Account Rules**

**General.** The Account and your ability to access and use the Account will be subject to our Account Rules, some but not all of which are set forth below, and will also be subject to applicable laws including the UCC and laws relating to money laundering, to clearing house rules, and to general commercial practices in the State in which the Branch is located.

**Account Name.** The Agreement establishes a contractual relationship between you and us, and not any third person. Unless we otherwise agree in a writing signed by one of our Authorized Representatives, the name or title that appears on the Account: (i) will not have any legal significance as to you, us or any third persons, other than that assigned to such name or title by the FDIC for purposes of determining deposit insurance coverage; (ii) will not impose any additional duties or responsibilities on us relating to the Account; and (iii) will not impose any direct, indirect, beneficial or equitable rights in or to the Account in favor of any third person. We may change the name or title on the Account at any time we deem it necessary or appropriate to comply with applicable laws, for security reasons, or to avoid confusion with accounts we maintain for other persons. If we make such a change, we will notify you in accordance with the procedures outlined in the section of these Terms and Conditions entitled "Changes in Terms."

**Joint Accounts.** If there is more than one owner of the Account who is identified in the Account Application as the "Depositor" or "Client," or is otherwise identified in our records as a co-owner, then the Account is a "joint" account. When completing the Account Application or other account documentation, you are solely responsible for properly indicating the type of joint account ownership you desire (such as joint with right of survivorship, joint without right of survivorship or, where permitted, tenants by the entireties) so as to legally establish the desired ownership rights under applicable State law. All co-owners of a joint account have equal rights in the Account, regardless of whose funds are deposited or who makes any deposits, except to the extent that applicable laws may govern the disbursement of funds upon death, divorce, bankruptcy, or in other situations. Likewise, all co-owners have equal obligations with respect to the Account, such as equal, joint and several liability for fees, charges and other payment obligations (including overdrafts), regardless of which co-owner created or incurred the same. Various portions of the Agreement contain references to certain ramifications of joint account ownership. In addition thereto, or in reiteration thereof, the following are some of the terms and conditions which apply to all joint accounts: each co-owner authorizes each other co-owner to use the Account in all respects without the consent of any other co-owner, including (i) adding additional persons as co-owners; (ii) making deposits, withdrawals or transfers from the Account; (iii) endorsing for deposit to the Account items payable to any one or more co-owners; (iv) instructing us to stop payment on any eligible item drawn on the Account by any co-owner; (v) drawing upon any overdraft or other line of credit connected to the Account; (vi) obtaining Account information, including information about transactions conducted by other co-owners; (vii) pledging the Account as security for any debts, if we agree to acknowledge such pledge; and (viii) closing the Account. We may rely on the instructions of any co-owner without any liability to any other co-owner.

**POD/ITF Accounts.** We may in our discretion, to the extent authorized by applicable State law, accept accounts designated on the Account Application and/or in our records as "payable on death" ("POD"), "in trust for" ("ITF") or similar accounts on which you name one or more beneficiaries as owner(s) of the funds upon your death, if they survive you. When completing the Account Application or other account documentation, you are solely responsible for meeting all requirements to properly establish a POD or ITF account under applicable State law. A POD or ITF beneficiary has no ownership rights in, and no authority whatsoever over, the Account during your lifetime, or during the lifetime(s) of any surviving co-owner(s) if the Account is a joint account. You may at any time change beneficiaries, withdraw all or part of the funds, close the Account, or take any other actions that an account owner is permitted to take. Upon your death or the deaths of all co-owners of a joint account, the disposition of funds in the Account will be determined by applicable State laws relating to such accounts.

**UTMA/UGMA Accounts.** We may in our discretion, to the extent authorized by applicable State law, accept accounts designated on the Account Application and/or in our records as custodial accounts established for the benefit of minors under the State's Uniform Transfers to Minors Act ("UTMA") or Uniform Gifts to Minors Act ("UGMA"). When completing the Account Application or other account documentation, you are solely responsible for meeting all requirements to properly establish an UTMA or UGMA account under applicable State law. Generally, until the minor reaches the designated age of majority (or dies, if earlier), you have certain fiduciary responsibilities as custodian of the funds in the Account (which constitute an irrevocable gift to the minor). You agree to comply with all provisions of the UTMA or UGMA governing such accounts both before and after the minor attains the age of majority (or dies, if earlier).

**Account Signatories.** We may act in reliance upon your signature as it appears on the Account Application or on any other document you or others provide to us. If you name one or more Authorized Representatives as additional signatories or otherwise grant them authority to act with respect to the Account, which authority we may recognize or refuse to recognize in our sole discretion, we may act in reliance upon the signatures of your Authorized Representatives as they appear on any document you or others provide to us. We may act upon original signatures, facsimile signatures, mechanical signatures, signature stamps, authenticated and unauthenticated electronic signatures and other commercially recognized forms of signature reproductions. We may act in reliance upon such signatures, or signatures substantially similar to such signatures, in connection with all aspects of the Account, including situations where the signatory is the recipient of the funds withdrawn, transferred or otherwise paid from the Account. If your Account is a joint account or otherwise has more than one authorized signatory, because of current automated processing methods used by us and other financial institutions in connection with processing items, we will not be able to honor any requirement or directive in any agreement with you or others, or in any instruction from you or others, for specific signatures, or a minimum number or certain number of signatures, with respect to any transaction or activity relating to the Agreement or the Account, including for any withdrawal or other transfers from the Account. Accordingly, we will not have any liability to you or any other person if we permit any transaction or activity relating to the Agreement or the Account, including a withdrawal or fund transfer from the Account, which does not have either or both specific signatures or the number of signatures you require, direct or contemplate, as long as the withdrawal or fund transfer bears your signature or that of one of

2

RBC-ARB-00150

your Authorized Representatives.

**Restrictions on Account.** Without being obligated to do so, if we deem it necessary or appropriate for security reasons to prevent or respond to a breach of this Agreement by you or to comply with applicable laws, we may restrict or suspend your right or any of your Authorized Representatives' right to access or use the Account, or we may delete any Authorized Representative as a signatory on the Account. If we so restrict, suspend or delete, we will not have any liability to you or any other person where we have taken such action in good faith for what we deem necessary or appropriate reasons. We will use reasonable efforts to provide you prior notice of any such restriction, suspension or deletion, but our failure to notify you before the effective date thereof will not affect the restriction, suspension or deletion and will not impose any liability on us to you or any other person where we have acted in good faith and for what we deem necessary or appropriate reasons.

**Security Procedures.** The security measures that are a part of our Account Rules are for the purpose of better enabling us to verify that Instructions are your Instructions or those of your Authorized Representatives, and for better ensuring that only authorized persons have access to and use of the Account. Your use of the Account constitutes your acknowledgment that, in light of your particular needs and circumstances, our security measures provide a commercially reasonable method for verifying that Instructions are your Instructions and for providing security against unauthorized transactions. Such security measures are not for the purpose of detecting any errors in the transmission or content of Instructions or in any deposits, withdrawals or fund transfers.

**Minimum Balances.** A minimum initial deposit may be required to open the Account. You also may be required to maintain minimum balances in the Account and, if so, you may be required to pay additional fees and charges if you do not maintain the required minimum balances. Any requirements regarding minimum initial deposits or minimum balances will be set out in our Schedule of Fees or in other account documentation we may publish from time to time.

**Interest.** The funds on deposit in the Account will not earn interest unless the Account is designated in this Personal Accounts Service Agreement as an interest bearing account. As explained further in the "Account Disclosures" section, interest penalties may be assessed for the early withdrawal of funds from a CD.

**Account Status; Inactive or Dormant Accounts.** Your Account will be classified as active in our records unless we deem it to be inactive or dormant. We may deem an Account to be inactive or dormant when you have not made any deposits or withdrawals for a period of time that we, in our sole discretion, consider substantial, and/or when we have lost contact with you, such as when statements or other mail are returned by the U.S. Postal Service as undeliverable. An inactive or dormant Account will continue to be subject to our normal account fees and charges and may, at our election and subject to applicable laws, be assessed a separate monthly dormant account fee. If Account activity resumes and/or you reestablish contact with us, we will not reimburse any fees already collected. After an extended period of inactivity/dormancy as established by applicable State law, we may be required to pay the funds in the Account to the appropriate State as abandoned property.

**Deposits.** All deposits must be made in accordance with the Account Rules, and it is your responsibility to properly identify the Account on the deposit instructions. You may make deposits in any amount through items we approve for deposit into the Account. Deposits may be made at the Branch or any of our other branches or through certain of our ATMs which accept deposits, but may not be made at

our other offices. Unless we agree otherwise, deposits may be made only by: (i) wire transfers of funds; (ii) fund transfers through ACH transactions; (iii) cash; or (iv) check, money order or draft in U.S. Dollars deposited in person or delivered by mail through the U.S. Postal Service or other delivery service such as FedEx. We may credit incoming wire transfers and ACH direct deposits solely by reference to the account number provided by the sender, and we will have no liability to you in the event that an error in the account number provided results in the funds being credited to an incorrect account, though we will make reasonable efforts to recover the funds on your behalf upon receiving notice of the error. We may refuse to accept all or any part of a deposit, without any liability to you or any other person. Without limiting the generality of the foregoing, we may refuse to accept deposits of "convenience checks" drawn on lines of credit or credit cards at other financial institutions, and we do not accept any cash deposits by mail. We are not responsible for any deposit until actually received by one of our employees at the branch where the deposit is made, or removed by one of our employees or agents from one of our ATMs which accepts deposits. We may, but are not required to, provide you a receipt evidencing our receipt of a deposit. Such receipts are not final, however, as all deposits are subject to our verification. Our records will be deemed correct as to our receipt of any deposit and the amount deposited, absent a clear and convincing showing of error. If there is a discrepancy in our records, or between your records and our records, as to the amount of a deposit, then our records of final count, verification and correction will control over any stamped deposit slip or other receipt we may provide to you or any other person when we receive a deposit. Any deposits received by us outside of normal business hours on a Business Day will be deemed made by you on the next Business Day for the branch at which the deposit was made. We may refuse, limit, suspend, freeze or return any deposit that does not comply with our Account Rules or that does not comply with, or is in violation of or may be in violation of, any applicable laws, including any laws described in the "Anti-Money Laundering and Anti-Terrorism" section of this Agreement.

**Endorsements.** All endorsements must comply with standards established by applicable laws and commercial banking practices. You are responsible for the proper endorsement of all items deposited in the Account or presented for collection, and you will bear responsibility for any improper, insufficient, illegible or missing endorsements. You are also responsible for any writing, printing, carbon band or other material on items presented or deposited in the Account. We have the right but not the obligation to accept nonconforming endorsements, to supply any missing endorsements and to collect items without endorsements or with nonconforming endorsements. We may, however, require appropriate endorsements prior to accepting an item for deposit or collection. We may also require that any item be personally endorsed in the presence of one of our employees prior to accepting the item for deposit or collection, including items issued by governmental agencies or insurance companies and items requiring more than one endorser where all of the required endorsers are not you or your employees. You agree to indemnify and hold us harmless against any and all loss, delay, liability, claims, damages, costs and expenses we may incur relating to improper, insufficient, illegible or missing endorsements.

**Collection; Final Payment; Returned Items.** In receiving items for deposit or collection, we act only as a collecting agent for you. All items deposited in the Account or otherwise presented for collection are subject to, among other things, the Account Rules, applicable laws and any other conditions we may impose at the

3

time of presentment. All Items deposited to the Account, including those deemed "on us" under FRB Regulation CC or other applicable law, are accepted for provisional credit only, subject to final payment. Until final payment, we may revoke settlements, charge back the amount of any credits given for Items and obtain refunds from you, without regard to whether the financial institution on which the Item was drawn or any collecting bank returned the Item in accordance with any applicable midnight deadline or other law, rule or regulation. Also, without any liability to you or any other person, we may limit or prohibit withdrawals, fund transfers or other payments against any funds on which there has not been final payment. Even after "final payment," Items may sometimes legally be returned for various reasons. So, for example, if one of your deposited (or cashed) Items has been paid by the financial institution on which it is drawn and is later returned to us with a claim that there has been a breach of warranty (such as that it bears a forged or missing endorsement or has been altered in some way), or that the Item is counterfeit, bears an unauthorized signature, contains an encoding error or should not have been paid for any other valid reason, we may debit your Account for the amount of the Item and pay it to the claiming party. We have no obligation to question the truth of the facts asserted, to assess the timeliness of the claim or to assert any defense. Pursuant to our Schedule of Fees, we may charge you a fee for any deposited or cashed Item that is returned to us, whether returned before or after "final payment" as described above.

**Withdrawals and Processing Order.** You may make withdrawals from and fund transfers or other payment transactions with respect to the Account as provided in this Personal Accounts Service Agreement and as we otherwise permit. Unless one of our Authorized Representatives agrees otherwise, withdrawals and other fund transfers must be drawn on deposits in the U.S. and in U.S. Dollars, and may only be made through Items we approve for use with the Account. We will not be required to comply with any special instructions, limitations or conditions appearing on the face of any Item which would limit or condition an order to pay such Item. Unless applicable law requires a different order, we will normally honor withdrawals, fund transfers and other payments from the Account which are presented on the same Business Day in the following order: wire transfers will be paid first, then all other Items including ACH and other electronic fund transfers, cashed checks and other cashed Items, etc., will be paid in descending order of amount, largest paid first; provided, however, we reserve the right, in our sole discretion, to pay Items in any order we deem appropriate from time to time, without any liability to you or any other person.

**Restrictions on Deposits and Withdrawals.** We may limit, modify, suspend or administratively freeze or place a hold on our obligations to you under the Agreement and on the Account, including any obligations relating to deposits, withdrawals or other transfers or payments to or from the Account, or we may limit, modify, suspend, refuse or administratively freeze or place a hold on your access to or use of the Account, including your right to deposit or withdraw funds, transfer funds or make payments to or from the Account, based on any one or more of the following: (i) any attempted deposit, withdrawal, fund transfer, payment or other transaction, in our opinion, does not comply with the requirements of the Agreement, including our Account Rules, or does not comply with, or is in violation of or may be in violation of, any applicable laws, including any laws described in the "Anti-Money Laundering and Anti-Terrorism" section of this Agreement; (ii) an adverse claim is asserted against the Account or any funds in the Account, or a garnishment, attachment, levy or other legal process is served on

us relating to you or the Account or is levied or filed against the Account or the funds in the Account; (iii) adverse information in Credit Reports; (iv) our adverse experiences with you relating to the Account, other accounts you maintain with us or other relationships you have with us, including your default under any credit relationships with us or the default by any other person under any credit relationship where you are a guarantor or other supporting obligor; (v) we suspect that irregular, unauthorized or illegal activities may be involved with your Account; or (vi) any other commercially reasonable reason, including an extraordinary return of Items deposited in the Account or an extraordinary receipt of notices of nonpayment in lieu of return, or our belief that an extraordinary return of Items or receipt of notices of nonpayment may occur. We will not be required to provide you with prior notice before we exercise any of the foregoing rights. We will notify you of the reason why such action is taken within a reasonable period of time after the action is taken, unless we are prohibited from notifying you by any applicable laws or for security reasons. We will not have any liability to you or any other person if we do any one or more of the foregoing for any of the reasons just stated, and we will not have any liability to you or any other person based on the timeliness of any notification to you regarding any of the foregoing.

**Nonsufficient Funds and Overdrafts.** When you initiate a withdrawal, fund transfer or other payment transaction from or through use of the Account or one is initiated against the Account, you must have an Available Balance in the Account that is sufficient to cover, at the time, in the amount and in the manner required under the Agreement, the Account Rules and/or any other agreements we may have with you, the withdrawal, fund transfer or other payment transaction you are initiating from or through use of the Account or that is being initiated against the Account. Please note that your Available Balance may be reduced by several factors as provided in the definition of "Available Balance" herein, including by debit card transaction holds which are discussed further in the "Pending Transactions and Preauthorization Holds" section. If under the Agreement or the Account Rules, the Available Balance is not sufficient or we otherwise deem in good faith that it is not sufficient, we will not be required to honor or pay, and we may return or reject, the withdrawal, fund transfer or other payment transaction. We may also assess against you and the Account a nonsufficient funds ("NSF") fee for each Item returned or rejected, including for multiple returns or rejections of the same Item. If we pay a withdrawal, fund transfer or other payment transaction when you do not have a sufficient Available Balance, thereby creating or increasing an overdraft in your Account, we may also charge you a separate "overdraft/re-entry fee" in addition to the NSF fee for each Item so paid, and you will pay us, on demand, the amount of the overdraft and all fees associated therewith. Whether we pay a withdrawal, fund transfer or other payment transaction in such circumstances is solely within our discretion, and we reserve the right not to do so. We typically do not pay Items into overdraft if your Account is not in good standing, you are not making regular deposits, or you have had excessive overdrafts, but we may also refuse to pay any Item into overdraft for any other reason or for no particular reason. We may impose NSF fees in connection with the return or rejection of any type of Item, and we may impose NSF and overdraft/re-entry fees in connection with overdrafts related to any type of Item, including checks, in-person withdrawals, ATM withdrawals or withdrawals by other electronic means. Among our other rights, either before or after we make a demand for payment of any overdraft, we may deduct all or any part of the amount of the overdraft and associated fees from the Account or any other accounts you (including any joint Account holder) may have with us

4

RBC-ARB-00152

or any of our Affiliates. If we deduct all or any part of the amount of the overdraft and associated fees from the Account or your other accounts (including those of any Joint Account holder), we will not be liable to you or any other person for dishonoring transactions, including checks and other items, because of insufficient funds resulting from the deduction of such overdraft and associated fees. The fact that we may pay withdrawals, fund transfers or other payment requests that overdraw the Account on one or more occasions does not obligate us to do so on any future occasion and does not prevent us from recovering from you the amount of the overdraft and associated fees. Our NSF fees, overdraft/re-entry fees, and other fees and charges are set out in our Schedule of Fees. Please note also that returned/rejected items or overdrafts may carry additional consequences, including separate fees charged by merchant payees and additional bank fees, such as monthly below-minimum-balance fees where applicable. In our discretion, we may make available to you certain optional methods of "overdraft protection," pursuant to which funds may be automatically transferred from a designated funding source to your Account to avoid overdrafts. A fee may be charged for each transfer.

**Telemarketing and Other Preauthorized Drafts.** If you give information about your Account (such as your Account number and our bank routing number) to someone seeking to sell you goods or services, and you do not physically deliver a check to that person, any debit to your Account initiated by the person to whom you gave the information is deemed authorized.

**Postdated or Staledated Items.** Without any liability to you or any other person, in our sole discretion, we may accept or reject for deposit any postdated or staledated item, or we may pay or refuse to pay any postdated or staledated item. If we accept any postdated or staledated item for deposit, collection or cashing, you agree to indemnify and hold us harmless against any and all loss, liability, claims, damages, costs and expenses we may incur relating to any such item. If we make payment on any postdated or staledated item, the item will be deemed properly payable regardless of the date of such item or the date payment is made on such item. An item is considered staledated if presented more than six months after its date.

**Incomplete or Conditional Items.** Without any liability to you or any other person, in our sole discretion, we may accept or reject for deposit, or we may pay or refuse to pay, any item that is incomplete or that bears a notation of a purported condition which has not been met (for example, a check which says "void after 30 days" and is presented after such time has expired, or a $1,000 check which says "not valid over $500").

**Stop Payments.** You may not stop payment on items we have certified or paid in cash, or on money orders, cashier's checks, teller's checks or other official checks or withdrawal orders. You also may not stop payment on wire transfers, ACH transfers and other electronic entry or fund transfer methods, or on Visa Check Card or other debit card transactions or fund transfers, unless other agreements between you and us relating to those fund transfer methods so permit, and then your right to stop payment will be subject to the terms and conditions of those other agreements. You may, however, unless you or we are limited, restricted or prohibited by applicable law or any other agreement, stop payment on any other items drawn on the Account that we have not certified or paid, provided we receive the stop payment order through such method(s) and in such location(s) as may be approved by us, in time to give us a reasonable opportunity to act on it before the item is presented for payment or is otherwise required to be paid. You must provide us exact instructions for us to execute your stop payment orders, including account number, item number, amount, date, and

payee of the item. We will not have any liability to you or any other person for our failure to execute any stop payment order on which exact instructions are not supplied to us within a reasonably sufficient time for us to execute your order. We will accept a stop payment order from you (including any Joint Account holder) or any of your Authorized Representatives, regardless of who signed the item. We will not be required to observe any oral stop payment order after 14 days, unless it is confirmed in writing within that period. A stop payment order is effective for only six months unless renewed by you in writing, and we may pay the item after such time if the order is not renewed. We may charge you a fee for each stop payment order and each renewal thereof. You agree to indemnify and hold us harmless against any and all loss, liability, claims, damages, costs and expenses we may incur related to our honoring your stop payment order, including for the amount of the item. If we re-credit the Account after paying an item over a valid, timely stop payment order, you agree to transfer to us your rights against the payee or other holder and assist us in any legal proceedings against that person, including providing us such information as we may request regarding the reason for the stop payment and any dispute with the payee or other holder.

**Processing of Transactions and Standard of Care.** You agree that our responsibility with respect to the Account will be limited to the exercise of ordinary care as established by the reasonable commercial standards of the commercial banking business, which reasonable commercial standards include a variety of largely or wholly automated procedures for processing transactions and items in large volumes with little or no manual inspection. We may choose the method of processing transactions relating to the Account, and we may use other banks and correspondents in the process. Unless instructions to the contrary are given to and accepted by one of our Authorized Representatives concerning transactions relating to the Account, we or our correspondents may interact directly with the bank to or from which the transaction is initiated, or indirectly through intermediary banks, and may accept conditional payments in lieu of cash. We are not responsible for the actions or inactions of other banks or correspondents, and such other banks or correspondents will not be liable to you except for their own failure to exercise ordinary care as established by the reasonable commercial standards of the commercial banking business. We are not responsible for any act or failure to act concerning any transactions relating to the Account that is reasonable under the circumstances or that is consistent with the terms, conditions, rules, regulations and general commercial practices referred to in this "Account Rules" section. We will not be deemed to have failed to exercise ordinary care if you are unable to access or use the Account or errors or mistakes occur in the Account due to circumstances beyond our reasonable control, including those resulting from unscheduled maintenance and servicing associated with our computer systems, acts or inactions of third persons, "acts of God" or any matters that are or may be considered events of force majeure.

**Instructions.** Subject to the terms of the Agreement, we are not required to accept any instructions related to the Account, or if accepted, we are not required to honor or comply with any instruction we believe exposes us to potential liability under any applicable laws or otherwise. Further, we may condition our acceptance of any instructions, or our honoring or compliance with any instructions, on you agreeing to indemnify and hold us harmless against any and all loss, liability, claims, damages, costs and expenses we may incur relating to such instructions. Instructions will remain in full force and effect until they expire by their terms or are cancelled or superseded by subsequent

5

RBC-ARB-00153

Instructions; provided, however, that no such subsequent Instructions will be effective if: (i) received by us after the prior Instructions to which they relate have been executed or we have commenced processing of such Instructions for execution; or (ii) we are unable in the ordinary course of our operations to timely process such subsequent Instructions prior to the commencement of our execution of the prior Instructions. If, after transmission to us, you desire to modify, suspend or cancel Instructions, you must notify us immediately and, if we require it, follow up in writing with appropriate Instructions relating to the modification, suspension or cancellation. While we will make all reasonable attempts to modify, suspend or cancel Instructions of which we are notified, we will not be liable for any loss, cost, expense or damage caused by our failure or inability to do so. You agree to indemnify and hold us harmless against any and all loss, liability, claims, damages, costs and expenses we may incur relating to our honoring your orders to modify, suspend or cancel Instructions, including for the amounts of any withdrawals, fund transfers or other payments made by us on the basis thereof.

## Account Statements

**Statements.** For most types of accounts, unless the Account is dormant or inactive, or we agree to deliver Account Statements to you in an alternative form, we will send you statements of the deposits in, withdrawals and fund transfers from, and other activity on the Account ("Account Statements"). Unless we establish or agree with you to provide Account Statements on a different frequency, the cycle covered by Account Statements will typically be monthly for checking or money market accounts and quarterly for savings accounts (except that we will send Account Statements monthly whenever one or more electronic fund transfers, as defined herein, have occurred on a savings account). Except as otherwise provided under "Account Specific Terms" herein, Account Statements are not sent on CDs and IRAs. If the Account is dormant you will not receive Account Statements, and if the Account is inactive you will receive an Account Statement only in December. We will provide Account Statements to you through such methods as we elect to use from time to time, but generally Account Statements will be sent through U.S. mail. We may charge a fee if we agree to provide Account Statements through any alternate means. Any fees and charges you have incurred relating to the Account for the cycle covered by an Account Statement will appear in that Account Statement. If you have payment obligations under the Agreement to us that are in addition to the fees and charges related solely to the Account and your Account activity, these additional payment obligations may not appear in the Account Statements. We may provide you information relating to these payment obligations outside of the Account Statements. You will be deemed to have received each Account Statement on the third Business Day following the date of the Account Statement as shown thereon. If you do not receive any Account Statement within ten calendar days of your regular statement date, you must notify us immediately. Unless otherwise required by law, your failure to receive or delay in receiving any Account Statement, whether due to failure of or delay in delivery by the U.S. Postal Service or otherwise, does not relieve you from any of your responsibilities set forth under "Review of Statements" below, and the time periods described in that section continue to apply.

**Paid or "Cancelled" Checks and Other Posted Items.** At our option, in lieu of returning originals of checks paid on your Account, we may: (i) provide with your Account Statement images of checks (front side only) that are smaller than the originals; (ii) not return either originals or images; or (iii) give you a choice of options, some of which may involve a fee. In any of the above scenarios, you agree

that your paid checks are deemed to be made available to you at the same time your Account Statement is made available. Please see the subsequent "Copies" section for information that applies in the event you wish to request a copy of a paid check from us (including the back of the check, if desired). Also note that copies of some checks may not be available in any form, either at the time you receive your Account Statement or subsequently. This may happen for various reasons, such as a merchant's converting a check you write into an electronic debit, resulting in the check itself not being sent to us. Your Account Statement also includes information about each paid check and other Items that posted to your Account during the statement cycle, including date posted, amount and, as applicable, check number. You agree that when our Account Statements include the foregoing information, this information (coupled with your ability to request from us, where available, copies of paid checks or additional information about other items) is sufficient to enable you to identify and determine the authenticity of any transaction, including whether any are forged, altered or otherwise unauthorized.

**Review of Statements; Notification of Errors and Unauthorized Transactions.** You must promptly check the correctness of each Account Statement and, if provided, any accompanying items or images of items (see "Paid or 'Cancelled' Checks and Other Posted Items" above). Except as provided below with respect to any longer notification periods which may be mandated by law, you must promptly notify us at the Branch, the phone number or address listed on your Account Statement, or such other number or address as may be listed in the Agreement, of any omissions from the Account Statement or any forgeries, alterations, inaccurate entries or other unauthorized transactions or errors in the Account Statement, and in no event may such notification to us be made more than 30 days after the date of the Account Statement. In addition, if there is a series of unauthorized transactions by the same wrongdoer, you must notify us no later than 30 days after the date of the first Account Statement containing such transactions. If you are absent from your Account Statement mailing address, you are responsible for making arrangements to have your Account Statements reviewed and to timely report any problems. Unless a longer notification period is mandated by applicable laws (such as the 60-day period applicable to consumer electronic fund transfers described under "Account Disclosures" herein), if you do not notify us within the 30-day period described above, the Account Statement will be deemed for all purposes to accurately and correctly set forth all of the transactions in the Account during the cycle covered by the Account Statement, and we will have no liability as to any such transactions, regardless of the care or lack of care we may have exercised in handling your Account. If applicable laws mandate a longer notification period, you must give us notice of omissions, errors or unauthorized transactions within the shortest period of time mandated by such laws. We may require you to promptly follow up any oral notice in writing. In addition to the foregoing, you agree that in no event will we have any liability relating to forgeries, alterations, etc. that could not be detected by a reasonable person or by observing reasonable commercial standards. In the event that we or applicable authorities elect to investigate and/or prosecute any alleged wrongdoing, either because unauthorized transactions on your Account result in a loss to us or otherwise, you agree to reasonably cooperate in such investigation and/or prosecution.

**Business Records.** The Account Statement is provided solely for your convenience and is not one of our official records. The internal business records we maintain from time to time of your instructions received and deposits, withdrawals, fund transfers, payments or

6

RBC-ARB-00154

other transactions processed or otherwise executed by us through or in connection with the Account will, in the absence of a clear and convincing showing of a material mistake or other error, be deemed conclusive proof of your instructions, deposits, withdrawals, fund transfers, payments and other transactions, and the times at which they were sent, received, processed or executed.

**Recoupment and Set-off; Security Interest.**

**Recoupment and Set-off.** Unless prohibited by applicable laws or our records show that you hold the Account in a representative capacity, we will have, and may exercise without prior notice to you, for our account and for the account of any one or more of our Affiliates, as to any fees, charges or other indebtedness or obligations you (including any joint account holder) may now or in the future owe to us or any of our Affiliates, a right of recoupment and a right of set-off against the Account and against any other accounts you (including any joint account holder) may have with us or any of our Affiliates, including all cash now or in the future deposited in the Account or any of such other accounts, all items which are now or may in the future be presented or deposited to the Account or any of such other accounts, all present and future proceeds of or related to the Account or any of such other accounts, and all funds or other credits now or in the future in or associated with the Account or any of such other accounts. If any account referred to above is a joint account and is designated as owned in the capacity of "tenants by the entireties" under applicable State law, you agree that our foregoing rights of recoupment and set-off will not be affected by the joint or unity nature of such account, and that we may exercise such rights against the funds, items, proceeds, credits, etc. in or related to any such account regardless of the source of such funds, items, proceeds, credits, etc., and regardless of which joint account holder(s) incurred the fees, charges or other indebtedness or obligations which are owed, and you agree not to raise the joint or unity nature of any such account as a defense to any exercise of our right of recoupment or set-off. If you either die or become incompetent, the aforesaid rights of recoupment and set-off will extend to any estate, guardianship or other accounts that may be established with us or any of our Affiliates as a consequence of your death or incompetency, including accounts established by your executor, executrix or other personal representative in the event of your death, or your guardian or other representative in the event of your incompetency. If our exercise of any of the foregoing rights diminishes the balance in any account, causing transactions or items to be rejected, returned or dishonored, we will have no liability therefor.

**Security Interest.** Unless prohibited by applicable laws or our records show that you hold the Account in a representative capacity, in addition to our rights of recoupment and set-off as provided above, as security for all present and future indebtedness or other obligations you (including any joint account holder) owe to us or any one or more of our Affiliates under the Agreement or otherwise, you grant to us and our Affiliates a present and continuing consensual security interest in the Account and any other accounts you (including any joint account holder) may have with us or any of our Affiliates, including all cash now or in the future deposited in the Account or any of such other accounts, all items which are now or may in the future be presented or deposited to the Account or any of such other accounts, all present and future proceeds of or related to the Account or any of such other accounts, and all funds or other credits now or in the future in or associated with the Account or any of such other accounts. To enforce the foregoing security interest and to realize thereon, we may endorse items presented for deposit or collection and take such other actions as we deem necessary or appropriate with respect to the Account or any of such other

accounts, all without prior notice to you, and you grant us an irrevocable power of attorney to undertake such acts in your name. You agree that our security interest will apply with respect to any joint accounts which may be owned as "tenants by the entireties" as described under "Recoupment and Set-off" above and, with respect to such accounts, you make all of the same agreements regarding our security interest that you make above regarding our rights of recoupment and set-off. If our exercise of any of the foregoing rights diminishes the balance in any account, causing transactions or items to be rejected, returned or dishonored, we will have no liability therefor.

**Arbitration of Disputes**

Unless otherwise provided in the Agreement, if you are dissatisfied with any aspect of the services we are providing to you and wish to complain, you should send your complaint to us in writing at the Branch, and it will then be dealt with in accordance with our complaint procedures. We try to resolve any issues as quickly as possible and, in most cases, can do so by telephone or in some other expeditious manner. If, however, either you or we have any unresolvable dispute or claim concerning the Agreement or the Account, such dispute or claim will be decided by binding arbitration under the expedited procedures of the Commercial Financial Disputes Arbitration Rules of the American Arbitration Association ("AAA") and Title 9 of the U.S. Code. All such disputes or claims must be brought within one year from the date of accrual of the cause of action. Arbitration hearings will be held in the city where the Branch is located or where you and we otherwise mutually agree, and if no agreement can be reached, then in Raleigh, North Carolina. A single arbitrator will be appointed by the AAA and will be a retired judge or attorney with experience or knowledge in banking services. Party and nonparty discovery will be tailored as narrowly as possible to the contested issues of the dispute or claim. The arbitrator will refuse to permit the discovery sought if: (i) it is cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had an opportunity to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely probative value as evidence, taking into account the amount in controversy and the importance of the proposed discovery in resolving contested issues of the dispute or claim. The party seeking discovery will bear the burden of demonstrating that the discovery sought satisfies these standards and is necessary and appropriate. As a condition of permitting discovery, the arbitrator may require the party seeking discovery to pay, on a current basis, all of the costs associated with the discovery sought. The arbitrator will award the filing and arbitrator fees to the prevailing party. A judgment on the award of the arbitrator may be entered by any court having jurisdiction. No provision of, nor the exercise of any rights under, this section will limit our right: (i) to exercise self-help remedies including set-off; or (ii) to request and obtain from any court having jurisdiction before, during or after the pendency of any arbitration, provisional or ancillary remedies or relief including temporary or permanent injunctive relief to enforce the provisions of or to restrain or prevent any breach or default by you under the Agreement. With respect to any injunctive relief we may seek or obtain, we will not be required to post any bond or other security whatsoever. Also, we will not be required to provide prior notice to you of our application for injunctive relief or the entering of injunctive relief, and you hereby waive, to the extent permitted by applicable law, your right to prior notice of any of the foregoing. **To the extent permitted by applicable law, you and we both waive any right to a trial by jury in any action arising from or related to the Agreement or the Account.**

7

RBC-ARB-00155

**Limits on Liability**

Except as provided below, you agree that our liability with respect to any claim you have against us in connection with the Account or any transactions pertaining to the Account will be limited to the face value of an item or transaction improperly dishonored or paid or the actual value of any deposits not properly credited or withdrawals not properly debited. We will not be liable to you under any circumstances for loss of profits, or for any consequential, incidental, special or punitive damages, regardless of whether you informed us of the possibility of such damages. Different liability rules may apply to certain transactions, and if they do, those rules will control to the extent such rules require, but in applying those rules, our liability to you and other persons will be limited to the maximum extent permissible under such rules.

**Closing the Account; Termination of Agreement; Death or Incompetence**

**Termination by You.** Subject to the terms of the Agreement, you may terminate the Agreement and request that we close the Account at any time, and if the Account is a joint account, any of you may terminate the Agreement and request that we close the Account at any time without the consent of the other. Unless we agree otherwise, your instructions to terminate the Agreement and close the Account must be in writing and delivered to one of our Authorized Representatives at the Branch either personally, by email, or through the U.S. Postal Service or other delivery service such as FedEx. We will have a reasonable period of time to act upon instructions received from you relative to terminating the Agreement and closing the Account, and we will not have any liability to you or any other person for transactions we process between the time we receive your instructions to close the Account and the time the Account is actually closed.

**Termination by Us.** We may terminate the Agreement and close the Account immediately and without notice to you or any other person: (i) when the Account has a zero balance; (ii) based upon adverse information in Credit Reports or our adverse experiences with you relating to the Account, other accounts you maintain with us or other relationships you have with us; (iii) upon your default under or breach of any of your obligations to us under the Agreement or your default under or breach of any other present or future obligation you may owe to us; (iv) if you become subject to any proceeding under any bankruptcy, insolvency or receivership law or are liquidated; or (v) if we believe you have used or are using the Account in a fraudulent, dishonest, immoral or illegal manner. We also may terminate the Agreement and close the Account for any other reason by giving you ten Business Days' prior notice.

**Death or Incompetence.** You agree that you or your representative(s) will notify us promptly of the death or legal adjudication of incompetence of any owner, signatory or Authorized Representative on the Account. Your Account and the Agreement will not be immediately closed or terminated by your death or a legal adjudication of your incompetence, but rather, the disposition of funds in the Account, any termination of the Agreement, and the timing thereof will be determined by applicable law, the orders of any authority having jurisdiction, and/or the decisions of your duly qualified legal representative(s). If the Account is a joint account, or if it is a POD, ITF or similar account which names one or more beneficiaries as owner(s) of the funds upon your death, then the applicable State laws governing joint accounts with or without right of survivorship, ownership as tenants by the entireties, or POD/ITF accounts will control the disposition of funds and any termination of the Agreement, subject, however, to our rights to charge the Account for any amounts that may be owed to us by any deceased owner, co-owner or beneficiary. Neither your death nor a legal

adjudication of your incompetence revokes our authority to process instructions or other transactions related to the Account until one of our Authorized Representatives at the Branch receives notice of your death or legal adjudication of incompetence in accordance with the section of these Terms and Conditions entitled "Notices," and even then we will have a reasonable period of time to act on such notice. Once we receive notice we may continue to process instructions or other transactions received on or before the date of your death or the date you are adjudicated incompetent unless we are ordered otherwise by a person having authority to give such orders, or we may place an administrative freeze or hold on the Account and any funds in the Account until we receive legally appropriate instructions on the disposition of the funds in the Account.

**Effect of Termination.** Transactions initiated prior to the effective date of termination of the Agreement will not be affected by the termination. Transactions initiated prior to termination will continue to be subject to the terms and conditions of the Agreement. Your indemnification and other payment obligations to us, including your obligation to pay fees and other charges, will survive termination of the Agreement, as will other provisions in the Agreement that are by their terms or inherent nature intended to survive a termination. Instructions to make deposits, withdrawals, fund transfers or other transactions initiated or received after the Account has been closed may be denied or rejected by us. We may also refuse to execute or reject any other instructions, requests or transactions relating to the Account after the Account has been closed. If we receive any funds after the Account is closed, our receipt of such funds will not constitute a deposit to the Account.

**Authorized Representatives**

**Identity and Authority.** You will provide us with the names of any Authorized Representatives with respect to the Account who are not owners on the Account (such as an attorney-in-fact under a power of attorney), the signatures of each, and any other information about such Authorized Representatives that we may require. We may also recognize other persons as your Authorized Representatives (such as a court-appointed guardian), even if you have not given us notice thereof, if in our opinion, such person(s) have presented to us satisfactory documentation or we have received other evidence of their authority with respect to the Account. For any reason in our sole discretion, we may refuse on one or more or all occasions to recognize the authority of any purported or actual Authorized Representative you have appointed or attempted to appoint, or who has presented evidence of authority to us, or who might otherwise be deemed an Authorized Representative, even if we have recognized such person's authority on previous occasions. If we elect to recognize such authority, we may at any time revoke such decision and/or we may place any limits or restrictions on the exercise of such authority as we deem appropriate, and in doing any of the foregoing, we will have no liability to you, your Authorized Representatives or any other person. Subject to the foregoing sentence, your Authorized Representatives relative to the Account are each authorized to act for you and on your behalf with respect to any and all matters relating to the Agreement and the Account, including: (i) establishing or receiving from us any security procedures or devices, including access cards, codes, passwords, etc. related to the Account; (ii) receiving communications and materials from us and other persons and issuing instructions to us and other persons relating to the Agreement and the Account; and (iii) accessing, using, or authorizing other persons to access or use the Account, including making deposits into the Account and withdrawing, transferring or paying from, or otherwise engaging in transactions with respect to, the Account, whether any of the

8

RBC-ARB-00156

foregoing are with or to any of such Authorized Representatives or with or to other persons. Because of current automated processing methods used by us and other financial institutions in connection with deposit accounts and processing items, we will not be able to honor any limits or restrictions you purport to place on your Authorized Representatives, even if such limits or restrictions are reflected on the Account Application or in our records. Accordingly, we will not have any liability to you or any other person if we permit any transaction or other activity with respect to the Agreement or the Account, including a withdrawal, fund transfer or payment from the Account, which exceeds or does not otherwise conform to any limits or restrictions you have attempted to place on any of your Authorized Representatives.

**Change in Authorized Representatives.** Unless we otherwise require, changes may be made to the Authorized Representatives named in the Account Application or otherwise on file with us without re-execution of the Account Application or any other document executed and delivered by you to us. You will be responsible for keeping current the names of any Authorized Representatives, as well as the signatures of such Authorized Representatives that are on file with us. Unless we otherwise agree in writing at the time, any addition, substitution or other change relating to your Authorized Representatives may be made by you only by giving us ten Business Days' prior written notice thereof in accordance with the section of these Terms and Conditions entitled "Notices." Our records relating to the identity and contact information of your Authorized Representatives, and their respective signatures, will be deemed correct and accurate, absent a clear and convincing showing of error. In the event that you change your Authorized Representatives as shown on our records, such Authorized Representatives must promptly provide to us acceptable identifying information and documentation to verify their identity in accordance with our then applicable internal risk management procedures.

**Reliance.** We will be entitled to rely on any instructions, including any permitted electronic communication as provided herein, believed by us in good faith to be genuine and sent to us or otherwise authorized by any one or more of your Authorized Representatives. At our discretion, we may also rely on oral instructions from any person who identifies himself or herself as one of your Authorized Representatives.

**Electronic Communications**
We do not guarantee the security of data transmitted electronically, and the electronic transmission of your instructions is at your risk. Any electronic communication that we receive from or in the name of you will be considered to be duly authorized and binding upon you, and we are authorized to rely and act upon any such communication. We will be entitled to rely upon any signature appearing on a facsimile transmission that purports to be your signature or a signature of an Authorized Representative, or any electronic signature that purports to be your signature or a signature of an Authorized Representative, as authorized, valid and binding on you, even if any such signature was not, in fact, signed or authenticated by you or an Authorized Representative. Any electronic communication will be deemed to constitute a "writing" for the purposes of any provision of the Agreement or applicable law that requires the terms of such communication to be in writing, and you expressly waive any right to raise any defense or waiver of liability based on the absence of a writing. The term "electronic communication" includes any communication by facsimile, TWX, internet (e.g., email), bank wire or other method of electronic transmission. A copy of a document transmitted by facsimile or printed from an electronic file will be admissible as evidence of the

contents and its execution by the parties in the same manner as an original document, and you and we expressly waive any right to object to its introduction as evidence, including any right to object based on the best evidence rule.

**Sharing and Use of Information**
**Confidential Information.** We acknowledge that certain information we obtain from you in connection with the Account may be confidential. We will maintain the confidentiality of such information in accordance with the terms of the Agreement and our privacy policies and procedures for safeguarding information regarding our consumer clients, which procedures include compliance with any applicable laws.

**Disclosure of Information.** We may disclose information regarding you and your use of the Account to: (i) credit reporting agencies and other similar rating or reporting agencies; and (ii) other persons if (1) the disclosure is necessary for us to enable you to use the Account for its intended purpose, (2) the disclosure is necessary to comply with applicable laws, (3) you give us written permission to make the disclosure, or (4) the disclosure is otherwise permitted by our consumer privacy policies which will be separately communicated to you, as they may be amended from time to time. Unless required by applicable laws, we will not be under any obligation to notify you either prior to or after disclosing information under any of the circumstances described in this subsection. If you believe we have inaccurately reported information about you or any of your Accounts to a credit bureau or similar agency, you may write us at P.O. Box 1220, Rocky Mount, NC 27802, or call us at 1-800-236-8872.

**Notices**
Except as may otherwise be provided in the Agreement, and except for notices we decide to provide to you electronically (e.g., email) or through some other method and notices you may provide to us electronically, by telephone or in person when such method of communication is expressly permitted by us, a notice we are required or permitted to give to you and a notice you are required or permitted to give to us with respect to the Agreement or the Account will be deemed given on the third Business Day following the day such notice is deposited in the U.S. mail, postage prepaid, if: (i) in writing using the English language; (ii) when a notice is sent by us to you, addressed to you or one of your Authorized Representatives at the mailing address for such person as shown in our records; and (iii) when a notice is sent by you to us, addressed to us Attn: our Authorized Representative at the Branch at the mailing address for such person last provided by us to you. For joint accounts, we may send notices to any one account holder, which will be deemed effective for all account holders. Notwithstanding anything in the foregoing, and subject to applicable laws, there may be certain types of notices that we provide from time to time solely by posting them in our branches or on our website. In any instance where we may permit you to provide a particular type of notice by telephone, or you otherwise wish to communicate with us by telephone, please call the applicable phone number listed in the Agreement that relates to the subject of your call, or if none is listed, you may call our Authorized Representative at the Branch or use the phone number appearing on your Account Statement.

**Address Changes**
You must promptly notify us if you change your address. We may change your address information on our records upon your request or upon receipt of notification of an address change from the U.S. Postal Service; and we may, in our sole discretion, also alter our records regarding your address as to any of your other accounts. As to all of the foregoing regarding changes in your address, we will

9

RBC-ARB-00157

not have any liability for our failure to make any changes; we will not have any obligation to notify other persons of any changes in your address; and you ratify any address changes previously made by us pursuant to your request or notification from the U.S. Postal Service.

## General Terms

**Additional Information.** We may obtain from time to time Credit Reports on you and your Authorized Representatives. You agree to provide to us from time to time such additional information about, and documentation in connection with, you and your Authorized Representatives as we may request, including information or documentation we determine is necessary for us or our licensors, vendors or third party service providers to comply with applicable laws, including the Bank Secrecy Act and its implementing regulations, the USA PATRIOT Act and its implementing regulations, and the rules and regulations of the U.S. Treasury's Office of Foreign Assets Control. (See the "Anti-Money Laundering and Anti-Terrorism" section herein.) You also agree to provide us with any transaction information necessary for us to handle inquiries and tracing, including dollar amounts, accounts affected, dates and payees. You further agree to reconfirm any information or documentation previously provided pursuant to this paragraph, when we so request.

**Monitoring Communications.** We may, at our election, monitor or electronically record and retain our telephone conversations with you and your Authorized Representatives or purported Authorized Representatives. We need not remind you of our monitoring or recording at the time of each call, unless required to do so by law. Our understanding of any oral instructions will be controlling in the event of a discrepancy with any written confirmation of such instructions, whether or not we monitor or record a conversation or if any available tape recording is not understandable.

**Copies.** Unless applicable law mandates otherwise, we may not retain either originals or copies of Instructions, Account Statements, items deposited to the Account and other information relating to transactions processed through the Account. If we do retain any such documents, they may be copies made and stored in any format we choose - such as electronic images or microfilm. We generally retain copies of checks paid on your Account for several years and destroy the originals. You may request copies of any of the foregoing, and if we have retained any of the copies you request and they are in our possession and readily retrievable, we will use reasonable efforts to furnish the copies. Your requests must specifically identify the copies you desire, and you agree to pay us, in advance, our normal and customary costs and expenses in furnishing you with copies. We will have no liability to you or any other person if we are unable to or do not furnish you or any other person with any requested copies, or if the copies are of poor quality.

**Costs and Expenses.** Without limiting the provisions under the section of these Terms and Conditions entitled "Fees" and your obligation to pay all fees, charges and other payment obligations as provided therein and in other parts of the Agreement, when we request, you will promptly pay all extraordinary costs and expenses we may incur in connection with the Account, including any costs and expenses we incur in responding to requests for information or summonses, subpoenas, levies, garnishments or other legal processes or in taking other actions with respect to any of such legal processes.

**Application of Government Payments and Other Deposits to Debts.** Unless prohibited by applicable law, we may apply any deposits to or funds in the Account (including deposits of government benefits and payroll) to pay any amounts you owe us, including overdrafts,

fees, and other charges and payment obligations. Some types of federal or state government benefit payments may be protected from attachment, levy or other legal processes under various interpretations of applicable law. To the extent that you may do so by contract, you waive such protections and agree that we may apply such funds to pay any amounts you owe us. Unless prohibited by law, all of the foregoing will apply regardless of whether the application of funds to pay amounts you owe us involves or is deemed to be any of the following: (i) the charging of an Account in the normal course of our business for fees or other charges or payment obligations with respect to the Account; (ii) the recovery or reduction of an overdraft in an Account, and/or associated fees, through the application of subsequent deposits to the same; (iii) the exercise of any right of recoupment or set-off as set forth in the Agreement; or (iv) the realization of any security interest as set forth in the Agreement.

**Waivers.** We may waive enforcement of any of the terms and conditions of the Agreement. Any such waiver will not affect our rights with respect to any other transaction or modify the terms of the Agreement. You waive any notice of non-payment, dishonor or protest regarding any items credited to or charged against the Account.

**Assignment.** All rights and benefits that you may have relating to the Agreement and the Account are personal to you and for your benefit only. You may not transfer or assign the Agreement or the Account (or any aspect of or related to the Account, such as your Visa Check Card) without our prior written consent, which consent we may withhold in our sole discretion. If we consent to an assignment, the assignment will not be binding on us at the time we give our consent; it will only be binding on us once the assignment is actually reflected on our records relating to the Account, and our consent and the assignment will not impose any liability or responsibility on us beyond that contained in the Agreement. We may transfer or assign our rights and obligations under the Agreement in whole or in part without notice to or approval by you, and we may delegate, outsource or subcontract any and all of our responsibilities, duties and obligations relating to the Agreement or the Account without notice to or approval by you. Subject to the foregoing, the terms and conditions of the Agreement will be binding upon and inure to your benefit and our benefit as well as the benefit of your permitted successors and assigns and our successors and assigns. Nothing we do relating to the Account or providing services to you with respect to the Account will be construed as creating a partnership or joint venture between you and us.

**Control or Security Agreements.** We will not be required to enter into control agreements, security agreements or any other agreements that grant to third persons rights in the Account or any of the funds or credits associated with the Account, whether security interests or other types of interests in the Account. If we agree to enter into a control agreement or other similar agreement relating to the Account, you will pay our costs and expenses associated therewith. Any such agreement, to be binding on and enforceable against us, must be signed by one of our Authorized Representatives, will not be binding on us until actually reflected on our records relating to the Account, and notwithstanding our joinder in any such agreement or our consent thereto, our joinder or consent will not impose any liability or responsibility on us beyond that contained in the Agreement.

**Adverse Claims and Legal Process.** If an adverse claim is asserted against the Account or any funds in the Account, or a garnishment, attachment, levy or other legal process is served on us relating to you or the Account, or is levied or filed against the Account or the

10

funds in the Account, whether asserted on us at the Branch, another one of our branches or some other location, in addition to our other rights under the Agreement including our rights of recoupment, set-off and security interest in the Account (which will take priority over any adverse claim or legal process unless otherwise required by law) and our right to place an administrative freeze or hold on the Account until the situation is resolved to our satisfaction, we may, without any liability to you or any other person and in our sole discretion, unless otherwise required by law: (i) continue to rely on current Account documentation and reject any adverse claim; (ii) honor the adverse claim upon receipt of evidence we deem satisfactory to justify such claim; (iii) interplead funds that are the subject of an adverse claim into an appropriate court of law for resolution, or initiate other legal proceedings; (iv) comply with any legal process, or refuse to so comply if we do not believe such process is valid; and/or (v) take any other action we deem necessary or appropriate. You agree to reimburse us on demand for all of our costs and expenses associated with any action we take, including any interpleader or other legal action.

**Severability.** In the event the Agreement or any part thereof, or any service or our manner of providing a service to you relating to the Agreement or the Account, violates any laws, then the service, the Agreement or the Account, as applicable, will be deemed changed to the extent necessary to comply with such laws, and we will not incur any liability to you or any other person as a result of such violation or change. Further, if any provision or portion of the Agreement, or its application to any party or particular circumstance, is determined to be void or unenforceable, the remainder of the Agreement including, if applicable, the remainder of the provision or its application to other parties or circumstances, will be valid and enforceable to the extent permitted by law.

**Course of Dealing.** No course of dealing between you and us will constitute a change to the Agreement or any service we provide to you with respect to the Account or constitute an agreement between you and us, regardless of whatever practices and procedures you and we may use.

**Governing Law.** The Agreement and any services we provide to you with respect to the Account will be governed, construed and enforced in accordance with the laws of the U.S. and the internal laws of the State in which the Branch is located that are applicable to contracts made and to be performed in such State (to the extent state laws apply and are not modified by the Agreement, when permitted, or by the rules and regulations of clearing houses or other payment systems).

**Entire Agreement.** The Agreement, including this Personal Accounts Service Agreement, the Account Application and the Schedule of Fees, supersedes any prior agreements and constitutes the complete and exclusive statement of the agreement between you and us with respect to the Account, except to the extent that the Agreement and certain aspects of your use of the Account may be subject to the terms of other agreements between you and us relating to particular services. In the event of any conflicts or inconsistencies within the Agreement or between the Agreement and any other agreements, we will be solely responsible for reconciling such conflicts or inconsistencies.

**Record of Agreement.** Subject to applicable laws and regulations, the Agreement or any of the separate parts constituting the agreement may be provided to you and retained by you and us entirely or in part in a tangible medium or an electronic medium. If provided in or retained in an electronic medium that can be retrieved in a perceivable form, the whole or the parts, as applicable, that are in an electronic medium will be deemed originals to the same extent they would if in a tangible medium,

even when any signatures are electronic, typed, printed, computer generated, facsimiles or other reproductions, representations or forms. Our records of what constitutes the Agreement will be deemed correct and accurate in the absence of a clear and convincing showing of a material mistake or other error.

**Defined Terms**

In the Agreement:

"Account" means one or more checking, money market, savings, CD or other deposit accounts that are identified on the Account Application and that are maintained at the Branch or, if not identified on an Account Application, designated in our records as the checking, money market, savings, CD or other deposit accounts subject to the Agreement and that are maintained at the Branch;

"Account Application" means the signature card which (i) is a part of the Agreement, (ii) identifies the Account or provides sufficient reference to our records for the identity of the Account, and (iii) is executed by you and delivered to us;

"Account Rules" means our normal and customary policies, procedures, rules, regulations and security measures relating to the Account and your use thereof, as such policies, procedures, rules, regulations and security measures may change from time to time in our sole discretion;

"ACH" means automated clearing house;

"Affiliate" means, with respect to any person, any other person that directly or indirectly owns or controls, is controlled by or is under common control with such person, and each of such persons' senior executive officers, directors, executives, managers, members or partners;

"Agreement" means and includes the Account Application, this Personal Accounts Service Agreement, the Schedule of Fees and any exhibits, schedules, supplemental terms and conditions or disclosures that state they are a part of the Agreement or reference the Agreement, each of which is incorporated into the other;

"Authorized Representative" means a person who is appointed or named by another person (or by a third party having the right to do so, such as a court appointing a guardian) to be authorized to act on behalf of such other person with respect to all matters within the scope of such designee's designated authority, such as an attorney-in-fact under a power of attorney or an additional signatory added to an Account in a non-owner capacity, and an "Authorized Representative" for you includes any person who has apparent, implied or presumed authority to act on behalf of you, whether such person with apparent, implied or presumed authority has been actually appointed or named by you to be authorized to act on behalf of you;

"Available Balance" means the current or ledger balance in your Account, less: (i) any portion of deposited funds not yet available for withdrawal pursuant to our Account Rules and funds availability policies (see the "Funds Availability" section herein) and (ii) any other amounts that we reasonably determine are subject to any other type of hold (including debit card transaction holds as described under "Pending Transactions and Preauthorization Holds" herein) or legal process, dispute, etc., which prevents their withdrawal;

"Branch" means any one of our branch banking offices in the U.S. that we may designate, in our discretion at any time or times, as the branch at which your Account is maintained;

"Business Day" means a day (other than a Saturday, Sunday or official bank holiday) on which we are open for substantially all of our business including receiving deposits from our clients (note that the disclosures required by law in the sections entitled "Funds Availability" and "Electronic Fund Transfers" utilize slightly different definitions of a "business day" for purposes of those disclosures);

11

RBC-ARB-00159

"Collected Balance" means the current or ledger balance in your Account, less any "float," which is any portion of deposited funds we deem to be not yet finally paid (collected) pursuant to our Account Rules, including such collection schedules as we may apply to each item deposited;

"Credit Reports" means credit bureau reports, ChexSystems reports or account information from similar services, and also includes references from other financial institutions with whom you maintain or have maintained accounts or other banking or business relationships;

"Foreign Bank" means a bank organized under foreign law, or any agency, branch or office located outside the United States;

"Foreign Shell Bank" means a foreign bank without a physical presence in any country;

"FRB" means the Board of Governors of the Federal Reserve System;

"Instructions" means and includes oral instructions and written (including electronic) instructions relating to the Account given by you or your Authorized Representatives to one of our Authorized Representatives at the Branch or at any other location where we agree to accept them, including instructions related to opening and closing the Account and instructions regarding deposits to the Account and withdrawals, fund transfers or other payments from the Account;

"Item" refers to any means or method by which funds are presented for deposit or deposited/credited to the Account, or written or issued on the Account or presented for payment or paid/debited from the Account, and includes negotiable and non-negotiable instruments, checks, substitute checks, remotely created checks, image replacement documents, drafts, remittances, withdrawal orders, money orders, wire transfers, ACH transfers and other electronic entry or fund transfer methods, Visa Check Card or other debit card transactions or fund transfers and any receipts associated therewith, and any other payment intangibles presented for deposit or deposited/credited to the Account, or written or issued on the Account or presented for payment or paid/debited from the Account;

"Schedule of Fees" means our schedule of normal and customary fees and charges applicable to the Account and its use, which may change from time to time as we deem necessary or appropriate, and which may not include extraordinary costs and expenses you may be required to pay to us relating to the Account, as provided in the Agreement (e.g., attorneys' fees and other costs of collection);

"State" means a state of the United States, the District of Columbia, Puerto Rico, the U.S. Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States;

"Terms and Conditions" means these Personal Deposit Account Terms and Conditions; and

"UCC" means the Uniform Commercial Code in effect from time to time in the State in which the Branch is located.

**Rules of Construction**
The following rules of construction apply to the Agreement: (i) words in the singular include the plural and vice versa, and words in the neuter gender include the feminine and masculine and vice versa; (ii) section headings are for convenience only and will not affect the interpretation of any provisions hereof; (iii) references herein to the Agreement or any of its parts will be deemed to include the Agreement and each of its parts as amended, supplemented or replaced from time to time; (iv) references to "person" will include individuals and organizations, and such person's permitted successors and assigns; (v) references to "costs," "expenses" or "costs and expenses" include reasonable attorneys' fees and fees of other professionals; (vi) the words "include," "including," "such as," "for example," or terms similar to

any of the foregoing also mean "but not limited to"; (vii) references to "laws," "applicable laws," "laws and regulations" or similar phrases are to be construed broadly and are to include the laws, regulations, rules, directives, orders, opinions, guidelines and operating circulars of the U.S., its constituent states and their local governments, of the courts of the U.S., its constituent states and their local governments, and of applicable clearing houses and other payment systems; (viii) as the context requires, the word "and" may have a joint or several meaning, and "or" may have an inclusive or exclusive meaning; and (ix) the phrase "as shown in our records" or other similar phrase refers to the business records we maintain in the normal course of our business, which records will be deemed correct and accurate in the absence of a clear and convincing showing of a material mistake or other error.

**ACCOUNT DISCLOSURES**
The disclosures below are a part of this Personal Accounts Service Agreement. In many cases, applicable laws require the disclosures.

**Account Specific Terms**
The Truth in Savings Act was implemented by regulations adopted by the FRB as Regulation DD. The Act and Regulation require financial institutions to disclose to consumers all fees imposed in connection with a personal deposit account, the interest rate and annual percentage yield ("APY") paid on an account if interest is paid, and other terms of a personal account. This information must be provided to you before an account is opened or upon your request. A rate sheet will be furnished to you at the time you open your Account, disclosing the interest rate and APY applicable to the Account. Some other terms specific to particular types of accounts are set forth below. Additional terms required to be disclosed by the Truth in Savings Act and Regulation DD may be found elsewhere in the Agreement.

**Interest Bearing Checking Accounts** – Preferred Checking, Senior Checking, and ONE Account
•Your interest rate and APY may change at any time. Rates may change at our discretion and are not tied to any index. Rates paid may vary based on the Collected Balance in the Account.
•Interest is compounded and credited to the Account monthly.
•We use the daily balance method to calculate the interest on the Account. This method applies a daily periodic rate to the Collected Balance in the Account each day.
•Interest begins to accrue no later than the Business Day we receive credit for the deposit of non-cash items (e.g., checks).
•Our Schedule of Fees will be furnished to you at the time you open the Account. This schedule will detail the following:
  •  any minimum balance required to open the Account;
  •  any minimum or average balance required to avoid the imposition of fees or activity charges; and
  •  our related charges for deposit services.
•You will receive accrued-to-date interest when the Account is closed.

**Non-Interest Bearing Checking Accounts** – Free Checking, Select Checking, and Royal Embassy Checking
•Interest is not paid on these Accounts.
•Our Schedule of Fees will be furnished to you at the time you open the Account. This schedule will detail the following:
  •  any minimum balance required to open the Account;
  •  any minimum or average balance required to avoid the imposition of fees or activity charges; and
  •  our related charges for deposit services.

12

RBC-ARB-00160

**Money Market Accounts – Money Market Investment Account, Bonus Plus Money Market Account, Preferred Money Market Account, and Money Market Reserve Account**

•Your interest rate and APY may change at any time. Rates may change at our discretion and are not tied to any index.  Rates paid may vary based on the Collected Balance in the Account. We reserve the right to pay different rates for the accounts of individuals, organizations, governmental units and public funds.

•Interest is compounded and credited to the Account monthly.

•We use the daily balance method to calculate the interest on the Account. This method applies a daily periodic rate to the Collected Balance in the Account each day.

•Interest begins to accrue no later than the Business Day we receive credit for the deposit of non-cash items (e.g., checks).

•Our Schedule of Fees will be furnished to you at the time you open the Account. This schedule will detail the following:

- any minimum balance required to open the Account;
- any minimum or average balance required to avoid the imposition of fees or activity charges; and
- our related charges for deposit services.

•Federal law requires that no more than six preauthorized or automatic transfers (including online and telephone transfers) to other accounts you have with us or to third parties may be made from the Account during any statement cycle. No more than three of such transfers may be by check, draft, Visa Check Card transactions or similar orders. If more than three checks, drafts, Visa Check Card transactions or similar orders, or more than a total of six preauthorized or automatic transfers (including checks, drafts, Visa Check Card transactions or similar orders), are paid by us within any statement cycle, we reserve the right to close the Account, convert it to a different account type, and/or impose such fees or charges as are then in effect. If the Account is closed or converted by us, you lose the right to open another such account.

•Unlimited in-person withdrawals may be made at our branches or ATMs during each statement cycle, provided such withdrawals are in accordance with our policies for withdrawals at that time. Service charges may, however, be imposed in accordance with our current Schedule of Fees.

•You will receive accrued-to-date interest when the Account is closed.

**Savings Accounts**

•Your interest rate and APY may change at any time. Rates may change at our discretion and are not tied to any index.  Rates paid may vary based on the Collected Balance in the Account.

•Interest is compounded and credited to the Account monthly.

•We use the daily balance method to calculate the interest on the Account. This method applies a daily periodic rate to the Collected Balance in the Account each day.

•Interest begins to accrue no later than the Business Day we receive credit for the deposit of non-cash items (e.g., checks).

•Our Schedule of Fees will be furnished to you at the time you open the Account. This schedule will detail the following:

- any minimum balance required to open the Account;
- any minimum or average balance required to avoid the imposition of fees or activity charges; and
- our related charges for deposit services.

•Federal law requires that no more than six preauthorized or automatic transfers (including online and telephone transfers) to other accounts you have with us or to third parties may be made from the Account during any statement cycle. If more than six preauthorized or automatic transfers are paid by us within any statement cycle, we reserve the right to close the Account, convert it to a different account type, and/or impose such fees or charges as

are then in effect. If the Account is closed or converted by us, you lose the right to open another such account.

•Unlimited in-person withdrawals may be made at our branches or ATMs during each statement cycle, provided such withdrawals are in accordance with our policies for withdrawals at that time. Service charges may, however, be imposed in accordance with our current Schedule of Fees.

•You will receive accrued-to-date interest when the Account is closed.

**Certificates of Deposit (CDs)**

•A minimum deposit of $1,000 ($500 for minors) is required to open a CD Account. Except where expressly noted otherwise in these "Account Specific Terms," additional deposits to the Account during the term are not allowed (other than credited interest).

•Interest is compounded daily and credited monthly, quarterly, semi-annually, annually or at maturity, as directed by you. Interest begins to accrue on the Business Day we receive the deposit of non-cash items (e.g., checks).  Interest on all CDs is paid on an actual day, actual month basis.

•We use the daily balance method to calculate the interest on this Account. This method applies a daily periodic rate to the principal in the Account each day.

•Interest which has been credited or accrued to the Account during the current term may be withdrawn without a penalty during the current term. At renewal, interest earned during the previous term and not withdrawn is added to principal and may not then be withdrawn without a penalty. The disclosed APY assumes that interest remains on deposit until maturity. A withdrawal of interest will reduce earnings.

•Except where expressly noted otherwise in these "Account Specific Terms," for Accounts that automatically renew, there is a ten-day grace period after each renewal date during which withdrawals are permitted without penalty, unless the term of your Account is seven to 29 days, in which case the grace period is five days.

•The principal of this Account may not be withdrawn prior to maturity except with our consent, which may be given only at the time such request for withdrawal is made.  If we consent to a withdrawal of principal before maturity, at the time the request is made, the following penalty will be assessed:

–When a CD with an original maturity of less than 90 days, or any portion thereof, is paid before maturity, you will forfeit 30 days' interest on the amount withdrawn at the simple interest rate being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit.

–When a CD with an original maturity of 90 days to one year (365 or 366 days), or any portion thereof, is paid before maturity, you will forfeit 90 days' interest on the amount withdrawn at the simple interest rate being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit.

–When a CD with an original maturity of more than one year (365 or 366 days), or any portion thereof, is paid before maturity, you will forfeit 180 days' interest on the amount withdrawn at the simple interest rate being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit.

–There are certain circumstances, such as the death or incompetence of an owner, where we may waive or reduce any of the above penalties.

•The original maturity date is disclosed on your Certificate Receipt.

•All CDs are automatically renewable unless specified otherwise by you or us. CDs of amounts $100,000 or greater are not automatically renewable without our consent.

•CDs that automatically renew will renew on the maturity date with each renewal term being the same as the original term, beginning

13

RBC-ARB-00161

on the maturity date (unless we notify you in writing at least 30 days before a maturity date of a different term for renewal).
• You must notify us before or within a ten-day grace period after the maturity date if you do not want a CD to automatically renew, unless the term of your Account is seven to 29 days, in which case you must notify us within five days. We reserve the right to stop any automatic renewal by written notice to you at least 30 days before maturity.
• The rate for each renewal term will be determined by us on or just before the renewal date. On Accounts with terms of longer than one month, we will remind you in advance of the renewal and tell you when and where the rate may be obtained for the renewal period.
• For single maturity CDs that do not automatically renew, no interest will accrue after the maturity date.
• Except as otherwise expressly stated herein, all references in the Agreement to CD grace periods refer to calendar days and not Business Days.

**Flex14 Fund CD**
The terms and conditions disclosed in the above section for CDs are applicable to Flex14 Fund CD Accounts, except as indicated below:
• A minimum deposit of $10,000 is required to open this Account. Additional deposits to this Account during the 14-day term are not allowed (other than credited interest).
• The Flex14 Fund interest rate and APY will be fixed for each 14-day term, and for each 14-day term the interest rate will be established to be no lower than the prior Monday's 91-day T-bill discount rate as published in the Tuesday Wall Street Journal, less 1.50%. In the event the prior Monday was a holiday, the renewal rate would be based upon the preceding week's discount rate, and would be no lower than such rate less 1.50%.
• Flex14 Fund Accounts will automatically renew with a one Business Day grace period after each renewal date, during which withdrawals or additional deposits to principal are permitted without penalty.
• The principal of this Account may not be withdrawn prior to maturity except with our consent, which may be given only at the time such request for withdrawal is made. If we consent to a withdrawal of principal before maturity, at the time the request is made, a penalty will be assessed of 30 days' interest on the amount withdrawn at the simple interest rate being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit.

**PrimeLink CD**
The terms and conditions disclosed in the above section for CDs are applicable to PrimeLink CD Accounts, except as indicated below:
• A minimum deposit of $1,000 ($500 for minors) is required to open this one-year CD. Additional deposits to this PrimeLink CD Accounts during the one-year term are allowed in increments of $50 or greater.
• The PrimeLink CD interest rate and APY will be variable and subject to change during the term of the PrimeLink CD. The interest rate will be established to be no lower than RBC Bank's Prime rate (which will be determined on Friday of each week to take effect on the following Tuesday), less 4.00%. Increases and decreases in RBC Bank's Prime rate may result in changes to the APY earned on the PrimeLink CD.
• The principal of this Account may not be withdrawn prior to maturity except with our consent, which may be given only at the time such request for withdrawal is made. The penalty is the same as described earlier for CDs with terms of one year.

**Rising Rate CD**
The terms and conditions disclosed in the above section for CDs are applicable to Rising Rate CD Accounts, except as indicated below:
• The Rising Rate CD is a 24-month term CD that provides

withdrawal privileges of the entire balance without penalty during a three-day interim grace period at each six-month anniversary date from the date of account opening until final maturity at the 24th month of the initial term.
• The interest rates and APYs for the entire 24-month term of the Rising Rate CD will be determined by us and disclosed to you at the time of initial account opening. The schedule of rate changes and dates will be provided on your Certificate Receipt.
• A reminder notice will be sent each time the interest rate changes on the Rising Rate CD, providing you with the next interim six-month term expiration date and the rate.  These interim notices will not be sent in advance.  We will remind you in advance of the final 24-month maturity.
• After the 24th month, the CD will automatically renew into another 24-month Rising Rate CD with a ten-day grace period. After renewal, interim grace period withdrawal privileges will again commence as described above.
• If a Rising Rate CD is redeemed outside of the three-day interim grace period at each six-month interval, you will forfeit 180 days' interest on the amount withdrawn at the simple interest rate currently being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit.

**Preneed Burial Trust Accounts**
The terms and conditions disclosed in the above section for CDs are applicable to Preneed Burial Trust Accounts, except as indicated below:
• No minimum deposit is required to open a Preneed Account, and additional deposits may be made at any time and in any dollar amount.
• Preneed Accounts will automatically renew on the maturity date at the then current rate and for the then current term being offered for Preneed Accounts.
• As the Preneed Licensee, you will receive a notice after the Account has automatically renewed stating the new rate and the new term for which the Account was renewed. Such notice will not be mailed to you prior to maturity.
If you request tax preparation services by us related to Preneed Accounts and we agree to provide such services, a fee may be imposed.

**Individual Retirement Accounts (IRAs)**
• We offer three types of IRAs – a fixed-rate IRA CD (available for various terms), an 18-month variable-rate IRA CD, and a variable-rate Money Market IRA.
• A minimum deposit of $500 for fixed-rate IRA CDs and $50 for variable-rate IRA CDs or Money Market IRAs is required to open this Account.
• With a variable-rate IRA CD or Money Market IRA, your interest rate and APY may change at any time.  Rates may change at our discretion and are not tied to any index.  Rates paid may vary based on the balance in the Account.
• Interest is compounded daily and credited to the Account monthly.
• We use the daily balance method to calculate the interest on the Account. This method applies a daily periodic rate to the balance in the Account each day.
• Interest begins to accrue on the Business Day we receive the deposit of non-cash items (e.g., checks).
• Additional deposits can be made at any time to a variable-rate IRA CD or Money Market IRA, with a minimum deposit amount of $20. Other than credited interest, you cannot make additional deposits during a term to a fixed-rate IRA CD. However, deposits can be made during the 30 days following any maturity date.
• For IRA CDs that automatically renew, there is a ten-day grace period after each renewal date during which withdrawals are permitted without penalty.

14

RBC-ARB-00162

•You may not withdraw all or any part of an IRA CD (either fixed-rate or variable-rate) prior to maturity except with our consent, which may be given only at the time such request for withdrawal is made. If we consent to a withdrawal of principal before maturity of an IRA CD, at the time the request is made, the following penalty will be assessed:

–When a fixed-rate IRA CD with an original maturity of less than 90 days, or any portion thereof, is paid before maturity, you will forfeit 30 days' interest on the amount withdrawn at the simple interest rate being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit.

–When a fixed-rate IRA CD with an original maturity of 90 days to one year (365 or 366 days), or any portion thereof, is paid before maturity, you will forfeit 90 days' interest on the amount withdrawn at the simple interest rate being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit.

–When an 18-month variable-rate IRA CD or a fixed-rate IRA CD with an original maturity of more than one year (365 or 366 days), or any portion thereof, is paid before maturity, you will forfeit 180 days' interest on the amount withdrawn at the simple interest rate being paid on the deposit, regardless of the length of time the funds withdrawn have remained on deposit.

–NOTE: Additional penalties as outlined in the Individual Retirement Disclosure Statement may also apply. There are certain circumstances, such as the death or incompetence of an owner, where we may waive or reduce the interest penalty. The above penalties do not apply to the Money Market IRA.

•The original maturity date for an IRA CD will be stated on the IRA application and Adoption Agreement.

•Unless we agree with you otherwise in advance, or you notify us as provided below, all IRA CDs will automatically renew on the maturity date with each renewal term being the same as the original term, beginning on the maturity date (unless we notify you in writing at least 30 days before a maturity date of a different term for renewal).

•You must notify us before or within a ten-day grace period after the maturity date if you do not want an IRA CD to automatically renew. We reserve the right to stop any automatic renewal by written notice to you at least 30 days before maturity.

•For fixed-rate IRA CDs, the rate for each renewal term will be determined by us on or just before the renewal date. On Accounts with terms of longer than one month, we will remind you in advance of the renewal and tell you when and where the rate may be obtained for the renewal period.

•For single maturity IRA CDs that do not automatically renew, no interest will accrue after the maturity date.

•For Money Market IRAs, federal law requires that no more than six preauthorized transfers may be made from the Account during any month. If more than a total of six preauthorized transfers are paid by us in any month, we reserve the right to close the Account, convert it to a different account type, and/or impose such fees or charges as are then in effect. If the Account is closed or converted by us, you lose the right to open another such account. Unlimited in-person withdrawals from Money Market IRAs may be made at our branches provided such withdrawals are in accordance with our policies for withdrawals at that time. Service charges may, however, be imposed in accordance with our current Schedule of Fees.

•IRA statements will be sent to you at least annually. Money Market IRAs receive statements twice yearly.

•You are required to take a minimum distribution from your IRA by your required beginning date, which is April 1 of the year following the year you attain the age 70 1/2, and by the end of each year thereafter. If such minimum required distributions are not taken, we reserve the right to distribute the balance of the Account, less any applicable fees, to you.

## Notice of Withdrawal

If the Account is an interest bearing checking, money market or savings account, federal law requires us to reserve the right to require seven days prior written notice before we allow any withdrawal from the Account, including your making a withdrawal to close the Account. We do not currently require such notice. Should that policy change you will be notified.

## Account Administration

All our checking accounts (interest and non-interest bearing) are administered to meet certain regulatory reporting requirements. The way we report checking account information from a regulatory perspective does not affect your use of the Account, the amount of interest or APY you earn (if applicable), or your Account Statement. The structure of these accounts is technical in nature and affects only the way we administer checking accounts (interest and non-interest bearing) from a "bookkeeping" standpoint for regulatory reporting purposes.

All our checking accounts (interest and non-interest bearing) are comprised of two subaccounts. An interest bearing checking account consists of an interest bearing checking (negotiable order of withdrawal) subaccount and a money market investment (money market) subaccount, and the funds in both subaccounts earn interest at the same interest rate and APY. A non-interest bearing checking account consists of two non-interest bearing subaccounts: a checking subaccount and a holding subaccount. The Account Application you signed for the Account also applies to the subaccounts. While we maintain separate information on each subaccount for regulatory reporting purposes, all information reported to you is consolidated. Your Account Statement will show the Account as a single, integrated account.

At the beginning of each statement cycle, we allocate the balance in the Account between the two subaccounts based on an allocation formula, which we may change from time to time. All withdrawals from and fund transfers or other payment transactions with respect to the Account are presented against the funds in your checking subaccount. If additional funds are needed to cover your transactions, we automatically transfer without charge available funds in your money market or holding subaccount to your checking subaccount. The combined Available Balances in the two subaccounts are available for withdrawals from and fund transfers or other payment transactions with respect to the Account. Federal regulations limit preauthorized or automatic transfers from a money market or holding subaccount to six transfers during a monthly statement cycle. Upon the sixth transfer from the money market or holding subaccount to the checking subaccount during a monthly statement cycle, the entire balance in the money market or holding subaccount will be transferred to the checking subaccount for the remainder of the statement cycle. At the beginning of the next statement cycle, the funds in your Account will again be allocated between the two subaccounts. While internal transfers between the subaccounts will be made automatically, in accordance with federal regulations, we must reserve the right to require seven days' prior notice of any transfer from the money market or holding subaccount to the checking subaccount. FDIC insurance coverage is not affected in any way by any of the foregoing.

## Funds Availability

The Expedited Funds Availability Act was implemented by regulations adopted by the FRB as Regulation CC. The Act and Regulation require financial institutions to disclose the policies they follow in most cases concerning when deposited funds will be available for withdrawal. Our policies are described below.

15

*Your Ability to Withdraw Funds*

Our general policy is to make funds from your cash and check deposits available to you on the first business day after the day we receive your deposit. Electronic direct deposits will be available on the day we receive the deposit. Incoming wire transfers will be available no later than the first business day after we receive the wire, and may be available on the day we receive it. For purposes of this paragraph, "received" has the meaning described under "Other Rules" below. Except as otherwise expressly noted in this "Funds Availability" section, we do not give partial availability for any type of deposits. Once they are available, you may withdraw the funds in any manner permitted under the Agreement or our Account Rules.

For determining the availability of your deposits, every day is a business day, except Saturdays, Sundays and federal holidays. If you make a deposit at one of our branches or ATMs before 2:00 p.m. local time (or such later time as may be posted at the branch or ATM where the deposit is made) on a business day that we are open, we will consider that day to be the day of your deposit. However, if you make a deposit after 2:00 p.m. local time (or such later time as may be posted) on a day we are not open, we will consider that the deposit was made on the next business day we are open. Please note that not all of our ATMs accept deposits. If at the time of a deposit, only our walk-up or drive-in windows are open, then we are not open for substantially all of our business, and deposits received during such times at such windows will be deemed made on the next business day we are open.

*Longer Delays May Apply*

Funds you deposit by check may be delayed for a longer period under the following circumstances:
• We believe a check you deposit will not be paid.
• You deposit checks totaling more than $5,000 on any one day.
• You redeposit a check that has been returned unpaid.
• You have overdrawn your Account repeatedly in the last six months.
• There is an emergency, such as failure of computer or communications equipment.

We will notify you if we delay your ability to withdraw funds for any of these reasons, and we will tell you when the funds will be available. They will generally be available no later than the eleventh business day after the day of your deposit. These holds may also apply to checks drawn on Federal Reserve Banks or Federal Home Loan Banks, state and local government checks, U.S. Treasury checks, and money orders.

*Special Rules for New Accounts*

If you are a new client, the following special rules will apply during the first 30 days your Account is open:

Electronic direct deposits will be available on the day we receive the deposit. Incoming wire transfers will be available no later than the first business day after we receive the wire, and may be available on the day we receive it. Funds from deposits of cash and the first $5,000 of a day's total deposits of cashier's, certified, teller's, traveler's, and federal, state and local government checks will be available on the first business day after the day of your deposit if the deposit meets certain conditions. For example, the checks must be payable to you and you may have to use a special deposit slip. If your deposit of these checks (other than a U.S. Treasury check) is not made in person to one of our employees, the first $5,000 will not be available until the second business day after the day of your

deposit. The excess over $5,000 generally will be available on the ninth business day after the day of your deposit. However, we may place longer holds on certain deposits for other reasons (see "Longer Delays May Apply" above.)

Funds from all other check deposits generally will be available on the eleventh business day after the day of your deposit.

*Other Rules*

As provided under "Deposits" herein, we may refuse to accept all or any part of any deposit. Please see that section and the sections following it for additional important information about deposits.

Per Regulation CC, we are deemed to have "received" an electronic direct deposit or incoming wire transfer only when we have received both payment in actually and finally collected funds and the appropriate information on the account and amount to be credited. Among other circumstances which may result in funds being considered not "actually and finally collected" and thus not yet received by us, such circumstances include situations where funds are frozen, rejected or delayed for any reason described under "Anti-Money Laundering and Anti-Terrorism" below.

We reserve the right to accept any check or other item for collection only, to be sent to the bank on which it is drawn, and funds from such items will not be available for withdrawal until payment is received by us. A collection fee may apply as listed in our current Schedule of Fees.

Our availability policy or schedule will not affect our rights under applicable law or the Agreement to charge back to your Account or obtain a reimbursement from you for any item that is not finally paid for any reason, whether the item is returned, we receive a notice of nonpayment or we are required to reimburse or repay in the absence of a return or our receipt of a notice of nonpayment.

We may change our policy or schedule at any time by mailing a notice to you at least 30 days prior to the effective date of the change, except that we may send notice of any change which expedites availability within 30 days after the effective date. FRB Regulation CC rules do not apply to money market or savings accounts or CDs. Deposits to these types of accounts may be held longer than on checking accounts. Notification is not required for holds placed on money market or savings accounts or CDs.

**Substitute Checks and Your Rights**

*What is a substitute check?*

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of your check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

From time to time, you may receive from us checks paid on your Account that are substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your Account. However, you have rights under other law with respect to those transactions.

16

RBC-ARB-00164

*What are my rights regarding substitute checks?*
In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your Account (for example, if we withdrew the wrong amount from your Account or that we withdrew money from your Account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your Account and fees that were charged as a result of the withdrawal (for example, NSF or overdraft/re-entry fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your Account is an interest bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your Account earns interest) within 10 Business Days after we received your claim and the remainder of your refund (plus interest if your Account earns interest) not later than 45 calendar days after we received your claim. We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your Account.

*How do I make a claim for a refund?*
If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your Account, you must send written notice of your claim to: RBC Bank Loss Detection, P.O. Box 1220, Rocky Mount, NC 27802. You must contact us within 40 calendar days of the date that we mailed, or otherwise delivered by a means to which you agreed, the substitute check in question or the Account Statement showing that the substitute check was posted to your Account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.
Your claim must include —
•A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
•An estimate of the amount of your loss;
•An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
•A copy of the substitute check and/or sufficient information to help us identify the substitute check, such as the check number, the name of the person to whom you wrote the check, and/or the amount of the check.

Anti-Money Laundering and Anti-Terrorism
To help the U.S. government fight terrorism and money laundering, federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an Account. Accordingly, when you open an Account, we will request certain information from you, including name, street address, taxpayer identification number, date of birth, driver's license and other information and documentation that will allow us to identify you and each of your Authorized Representatives, if any. If you or one of your Authorized Representatives provides documentation that is not in English, we may require a legalized translation of such documentation. Based upon our review of the information provided and our internal risk management procedures and any other risk-based analyses, we may ask for additional information from you before agreeing to open the Account. We may also ask for

additional information at any time after you have opened an Account.

The U.S. Department of Treasury and federal and state banking regulations and rules require you to provide the information described above. If you do not provide the information requested or your identity or that of any Authorized Representative cannot be verified, then we may not be able to open the Account or carry out transactions or provide services for you. If you have already opened the Account, we may have to close it.

Pursuant to U.S. regulations, we are prohibited from opening or maintaining a "correspondent account" for or on behalf of institutions with imposition of special measures. Your Account with us may not be used to provide access to such named institutions. If we become aware that such named institutions are indirectly using the Account you hold with us, we will be required to take appropriate steps to prevent such access, including terminating your Account.

We are prohibited from establishing, maintaining, administering or managing a correspondent account in the U.S. for a Foreign Shell Bank, or for a Foreign Bank that indirectly provides banking services to a Foreign Shell Bank. We are also required to maintain records identifying the owners of Foreign Banks that conduct accounts in the U.S. and the name and address of an agent residing in the U.S. authorized to accept service of legal process for such banks.

We may, in our sole discretion, disclose any information given to us by you or any of your Authorized Representatives that we believe is necessary or desirable to disclose in connection with our obligations under applicable laws, including those pertaining to money laundering or terrorism. We also monitor the Account and activities related to the Account, and we report information we gather from these monitoring activities as and when we are required to do so under applicable laws, or as and when we deem otherwise appropriate to satisfy our obligations under applicable laws.

If, with respect to the Agreement or the Account, you or any other person violates or we believe you or any other person has violated or will violate any applicable laws relating to money laundering or terrorism, including the Bank Secrecy Act, the USA PATRIOT Act and their respective implementing regulations and rules and all other applicable laws, we may retain or block any funds transmitted to us pursuant to the Agreement or with respect to the Account, and we may elect to not fulfill any instructions given by you or any other person pursuant to the Agreement or with respect to the Account or otherwise. If we are or may be required to take or refrain from such action by any court or other legal, regulatory or governmental authority or if we reasonably believe that taking or refraining from such action is prudent under the circumstances. We will not owe you interest on any retained or blocked funds unless required by law. We may pay such funds to the appropriate legal, regulatory or governmental authority if and when required by applicable laws.

Without in any way limiting the general applicability of the four immediately preceding paragraphs, which may apply to all types of transactions on your Accounts or that you otherwise conduct, whether domestic or international, incoming or outgoing, electronic or otherwise, there are specific rules and provisions you should be aware of in the event any of your Accounts receive incoming ACH transactions (either credits or debits) or wire transfers that are

17

RBC-ARB-00165

Initiated outside the territorial jurisdiction of the United States. These rules and provisions are briefly summarized below. (If you initiate *outgoing* ACH credit transactions to foreign countries, you will be subject to a separate agreement with us, which covers all of the information set forth below and more.)

With respect to international ACH transactions (IATs) and international wire transfers, both you and we are subject to all applicable U.S. laws, including the ACH Operating Rules and Guidelines of the National Automated Clearing House Association (NACHA); the rules of any wire transfer system involved; and the laws governing sanctions enforced by the U.S. Treasury Department's Office of Foreign Assets Control (OFAC) against assets and transactions involving the interests of certain target countries, target country nationals, and other specifically identified countries and individuals ("blocked parties").

As the receiving bank of an incoming IAT debit or credit transaction or an incoming international wire transfer, we may from time to time need to temporarily suspend processing of a transaction for greater scrutiny or verification against the OFAC list of blocked parties, and this action may result in delayed settlement, posting and/or availability of funds. In cases where it appears there is or may be a violation of OFAC sanctions policies or other U.S. laws, regulations or orders, the transaction will be reported to OFAC, proceeds from an ACH credit or wire transfer may be frozen, rejected or delayed and therefore unavailable to you, and an attempted ACH debit from your Account may be rejected or subject to such other action as OFAC may mandate (possibly including the proceeds being debited from your Account and then frozen).

Any such violations, or suspected or potential violations, will be determined by us in our sole discretion. If we determine there is a violation, or if we cannot satisfactorily resolve a suspected or potential violation, the subject funds will be blocked as required by law. If you believe you have adequate grounds to seek the return of any blocked funds, it is your sole responsibility to pursue the matter with the appropriate governmental authorities. Upon your request, in our sole discretion or to the extent (if any) required by law, we may provide reasonable assistance in this regard; provided, however, that you agree to reimburse us for, or at our option pay in advance, any costs and expenses we may incur in connection therewith.

We will have no liability to you or any other person relating to our making any determination or taking any action described in this "Anti-Money Laundering and Anti-Terrorism" section.

Equal Credit Opportunity
The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the legal capacity to enter into a binding contract), because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. If you believe you have been discriminated against in connection with any application for credit (such as for an overdraft protection line of credit linked to your Account), you should send your complaint to: Federal Reserve Bank of Richmond, Banking Supervision, 12th Floor, 701 East Byrd Street, Richmond, VA 23219.

Children's Privacy
We respect the privacy of children and we comply with the practices established under the Children's Online Privacy Protection Act, as

amended from time to time. We do not knowingly collect or retain personally identifiable information from individuals under the age of 13.

Electronic Fund Transfers
The Electronic Fund Transfer Act was implemented by regulations adopted by the FRB as Regulation E. The Act and Regulation require financial institutions to disclose certain terms, conditions and consumer rights that apply with respect to electronic fund transfers made to or from personal accounts.

An "electronic fund transfer" generally includes all debit card transactions and any other transfer of funds that is initiated through an electronic terminal, computer, magnetic tape or telephone for the purpose of authorizing us to debit or credit an account. Examples include online bill payments, the use of our Visa Check Card or ATM Card (as referred to collectively herein, a "Card" or "Cards") to conduct ATM transactions or to make purchases or pay for services, and preauthorized recurring deposits and payments to or from your checking or savings accounts, such as insurance payments and direct deposits of paychecks or Social Security checks.

These disclosures do not apply to preauthorized transfers between your accounts with us, such as automatic transfers from checking to savings. They also do not apply to transactions originated by a check or draft, except for those that a merchant elects to convert to an electronic debit using information from your check or draft. And, they do not apply to any accounts that are used primarily for business or other non-personal organizational purposes and not primarily for personal, family or household purposes.

Consumer's Liability for Unauthorized Transfers. Tell us AT ONCE if you believe your Card or Personal Identification Number ("PIN") or other access device or security code has been lost, stolen or learned by an unauthorized person, or if you believe that an electronic fund transfer has been made without your permission using information from one of your checks. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your Account plus your maximum overdraft line of credit, if applicable. However, if you tell us within two business days after you learn of the loss or theft, you can lose no more than $50 should someone use your Card or code without your permission. If you do NOT tell us within two business days and we could have stopped someone from using your Card or code without your permission if you had told us, you could lose as much as $500. Also, if your Account Statement shows transfers that you did not make, tell us at once. If you do not tell us within 60 days after the Account Statement was mailed to you, you may not recover any money you lose after the 60 days if we could have stopped someone from taking the money had you told us in time. If a good reason such as a long trip or hospital stay kept you from telling us, we will extend the time periods.

Notifying Us in the Event of Unauthorized Transfers. If you believe that your Card or code has been lost or stolen, or that someone has transferred or may transfer money from your Account without your permission, or that a transfer has been made using information from one of your checks without your permission, call or write:

Toll Free: 1-800-236-8872
RBC Bank
P.O. Box 2816
Rocky Mount, NC 27802

Business Days. For purposes of these Electronic Fund Transfer disclosures, our business days are Monday through Friday, excluding holidays.

18

RBC-ARB-00166

**Types of Available Transfers and Limits on Transfers.**
*ATM Access.* Your selected checking, money market and savings accounts may be linked to your Card and, when used with your PIN, the Card may allow you to conduct the following types of electronic fund transfers at ATMs:
• Withdraw cash from your checking, money market or savings accounts.
• Make deposits to your checking, money market or savings accounts.
• Transfer funds between some of your accounts.
• Make payments on credit card accounts or loans you have with us. Some of these services may not be available at all ATMs. You may use the Card for available services at RBC Bank ATMs and at participating STAR*, Cirrus* and other affiliated network ATMs or other types of participating machines owned by others.
*Purchases and Services.* You may use your Visa Check Card (with either your PIN or your signature, as may be required) to pay for purchases or services at any merchant or other service provider (referred to herein as a "merchant") that accepts Visa debit cards. If you have an ATM Card that is linked to a checking account, you may also use that Card and your PIN to pay for purchases or services at merchants that accept debit cards through STAR, Cirrus, and other participating networks.
*Bill Payments.* You may use your Visa Check Card to pay bills from merchants that accept Visa debit cards for bill payments, by providing your Card number and other information the merchant may require (such as expiration date and/or security code). You may also pay bills through our Web Banking service, which has its own terms, conditions and disclosures that are available online.
*Preauthorized Recurring Deposits or Payments.* You may establish preauthorized transfers to:
• Make direct deposits to your checking or savings accounts.
• Make payments from your checking or savings accounts.
*Electronic Check Conversion.* You may authorize a merchant or other payee to make a one-time electronic payment from your checking account using information from one of your checks to pay for purchases or pay bills.
*Frequency of Transfers.*
• You may make multiple cash withdrawals from ATMs each day, provided you do not exceed the maximum daily/weekend/holiday withdrawal amount (see below).
• You may use your Card for multiple purchases each day, provided you do not exceed the maximum daily purchase amount (see below).
*Limitations on Dollar Amounts of Withdrawals and Purchases.*
• Using your PIN, you may withdraw funds or make purchases of up to $600 (less the amount of any transactions that are unposted but have already been authorized) or the Available Balance in the Account, whichever is less, each calendar day from RBC Bank ATMs, from participating STAR, Cirrus and other affiliated network ATMs, or at merchants that accept your Card. On weekends, from midnight Friday to midnight Monday, you may withdraw or purchase up to a maximum of $600. If a holiday falls on a Friday or Monday, the $600 limit will be extended by one day. If you qualify for certain account types, the withdrawal or purchase limit may be $1,000.
• When using your Visa Check Card and signing for your purchases, or choosing the "credit" option at a merchant, you may purchase up to $1,000 (less the amount of any transactions that are unposted but have already been authorized) or the Available Balance in the Account, whichever is less, each calendar day at any merchant that accepts Visa debit cards. If you qualify for certain account types, the purchase limit may be $2,500 or higher.

• For security reasons, sometimes there may be other limitations imposed on the amounts you may withdraw from our ATMs or that you may use for purchases. Other limitations may also apply at participating STAR, Cirrus and other affiliated network ATMs, and merchants may establish other limitations on cash-back transactions.
• All of the foregoing limitations established by us are subject to change at any time at our discretion.
**Fees.** Any fees we charge you related to electronic fund transfer services (such as for using other banks' ATMs) are disclosed on the Schedule of Fees you will receive, which supplements these disclosures and is a part of the Agreement. The fees are subject to change at any time, and you will receive advance notice of any new or increased fees. When you use an ATM not owned by us, in addition to our fee which may apply as set forth in the Schedule of Fees, you may be charged a fee by the ATM owner or operator or any network used, and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer.
**Disclosure of Account Information to Third Parties.** We may disclose information to third parties about your Account or the electronic fund transfers you make:
• Where it is necessary for completing transfers, or
• To verify the existence or condition of your Account for a third party, such as a credit bureau or merchant, or
• To comply with government agency or court orders, or
• If you give us your written permission.
Additional circumstances in which we may disclose information may be set forth in the section entitled "Sharing and Use of Information" elsewhere in the Agreement.
**Right to Receive Documentation of Transfers.**
*ATM and Point-of-Sale Transfers.* You may obtain a receipt at the time you make any electronic fund transfer to or from your Account using one of our ATMs, or from any merchant that accepts the Card. Please note, however, that receipts may not be final since all transactions are subject to verification by us. If any receipt and our records conflict, our records will control.
*Preauthorized Credits.* If you have arranged to have direct deposits made to your Account at least once every 60 days from the same person or company, either the person or company making the deposit will tell you every time they send us the funds, or you can call us at 1-800-236-8872 or use our Web Banking service to find out whether the deposit has been made.
*Periodic Statements.* For checking or money market accounts, you will receive a monthly Account Statement. For savings accounts, you will receive a monthly Account Statement whenever there has been at least one electronic fund transfer in a particular month; otherwise, savings Account Statements are sent quarterly. Please see the "Account Statements" section herein for additional information about statements.
**Rights Regarding Preauthorized Payments.**
*Right to Stop Payment and Procedure for Doing So.* If you have given a payee your advance authorization to have us make regular payments out of your Account, you can stop any or all of these payments by contacting the payee, allowing adequate time for the payee to cancel the payment(s) and for us to implement the cancellation request (which may take up to several days). If you choose to utilize this procedure, we are not responsible or liable for any failure by a payee to stop a payment or for your failure to notify the payee in time to stop any given payment. Alternatively, you may ask us to stop the payment(s) by writing to our Authorized Representative at the Branch or calling us at 1-800-236-8872 in time for us to receive your request three or more business days

19

RBC-ARB-00167

prior to the next scheduled payment date. If you call, we may require you to confirm your request in writing within 14 days. You must give us all information we request to adequately identify the payment(s). There will be a charge for each stop payment order you request, as disclosed on our Schedule of Fees.

*Notice of Varying Amounts.* If these regular payments vary in amount, the payee must tell you the date of the payment and the amount at least ten days before each payment. However, you may choose instead to receive this notice only when the payment will differ by more than a certain amount from the previous payment, or when the amount would fall outside certain limits that you set.

*Our Liability for Failure to Stop Payment.* If you order us to stop one of these payments three or more business days before the payment is scheduled, and you have given us all of the information we need to adequately identify the payment, we will be liable for your losses or damages if we fail to stop the payment.

*Our Liability for Failure to Make Transfers.* If we do not complete an electronic fund transfer to or from your Account on time or in the correct amount according to our agreement with you, we will be liable for your losses or damages. However, there are some exceptions. We will not be liable, for instance, if:

• Through no fault of ours, you do not have enough money in your Account to make the transfer, or
• The transfer would exceed the credit limit on your overdraft line of credit, if applicable, or
• The ATM where you are attempting to make a withdrawal does not have sufficient cash, or
• The ATM, terminal or system was not working properly and you knew about the problem when you started the transfer, or
• Circumstances beyond our control (such as a fire or flood) prevent the transfer, despite reasonable precautions that we have taken. There may also be other exceptions stated in our agreements with you or permitted by law.

*Error Resolution Procedures.* If you think your Account Statement or receipt is wrong, or if you need more information about an electronic fund transfer listed on any Account Statement or receipt, call or write us at the Branch or at the phone number, address or email address listed below as soon as you can:

> Toll Free: 1-800-236-8872
> RBC Bank
> P.O. Box 2816
> Rocky Mount, NC 27802

We must hear from you no later than 60 days after we send you the FIRST statement on which the problem or error appears.

• Tell us your name and account number.
• Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
• Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten business days.

We will determine whether an error occurred within ten business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 days to investigate your complaint or question. If we decide to do this, we will credit your account within ten business days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten business days, we may not credit your Account.

For errors involving new accounts, point-of-sale, or foreign-initiated transactions, we may take up to 90 days to investigate your complaint or question. For new accounts, we may take up to 20 business days to credit your Account for the amount you think is in error.

We will tell you the results within three business days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**ATM Safety**

Below are some suggestions for precautions you should take when using ATMs.

• Consider taking someone with you when you visit an ATM, especially at night.
• Be vigilant and aware of your surroundings, especially at night.
• If you see anything suspicious or that you consider unsafe (for example, the lights around the ATM are out), go to another ATM or return later.
• When using a drive-up ATM, ensure that your passenger windows are closed and your doors are locked.
• When you enter or leave an ATM in an enclosed area, close the door completely. Never open a locked ATM door to allow anyone else to enter while you are conducting your transaction.
• Have your Card out and ready to use when approaching the ATM.
• If others are nearby or in line behind you, block their view of the keypad with your hand or body while entering your PIN.
• After completing your transaction, secure your Card, cash and receipt before leaving the ATM area. Count your cash later in a safe place such as your car or home. Do not leave your receipt at the ATM.
• If you require emergency assistance, call 911 immediately.
• Report any crime immediately to the appropriate law enforcement officials and to the Branch.
• If you have a complaint about the security of an RBC Bank ATM, call us at 1-800-236-8872.

**VISA\* CHECK CARD AND ATM CARD AGREEMENT AND DISCLOSURES**

When you open an eligible checking account, unless you tell us not to, we will send you one or more Visa Check Cards which may be used for both ATM transactions and purchases at merchants. All purchases will be deducted from that "primary" checking account. If you have additional checking, savings or money market accounts with us, you may also request that we "link" any of those accounts to your Visa Check Card, allowing you to conduct ATM transactions relating to those accounts. RBC Bank ATM Cards are available upon request, and may be used at ATMs in connection with any one or more checking, savings or money market accounts that you ask us to link to the Card. If linked to at least one checking account, ATM Cards may also be used to make purchases at merchants that accept these Cards, and all purchases will be deducted from the checking account you have designated as primary.

Some of the terms, conditions and disclosures applicable to the Card (as well as to other methods of initiating electronic fund transfers) are set forth in the foregoing "Electronic Fund Transfers" section, and in other applicable portions of the Agreement. Additional terms, conditions and disclosures applicable to the Card are described below. Use of the Card is also subject to all applicable laws and regulations, including (with respect to Visa Check Cards) the rules and regulations of Visa U.S.A. Inc. Any person who requests, signs, activates, uses or authorizes the use of a Card agrees to the following provisions relating to the use of the Card, along with all of the other abovementioned provisions which are set forth elsewhere:

20

RBC-ARB-00168

## Activating Your Card

When we send you a Card, for your protection, the Card is not activated. You must activate it either by calling the number on the sticker affixed to the Card before using it, or by using it at one of our ATMs or with your PIN at a merchant. You must also sign the signature panel on the back of the Card for it to be valid.

## Using Your Card

These Cards are issued for use only with eligible personal accounts that are approved by us for use with such Cards. You may use your Card only for personal, family or household purposes and not for business or other non-personal organizational purposes. Various methods of using your Card to initiate electronic fund transfers are described under "Electronic Fund Transfers" above. Those include allowing you to pay for purchases and services at merchants that accept Visa debit cards or our ATM Cards and, if you desire and the merchant permits, to obtain cash back. You may be asked to enter your PIN, to sign a sales slip or other document, or just to provide your Card number. If you use your Card number without presenting your Card (such as for a mail, phone or internet purchase or payment), the legal effect will be the same as if you used the Card itself. We have no liability or responsibility if, for any reason, your Card or Card number is not honored by any merchant, or if a merchant fails to abide by the applicable network rules and regulations when accepting your Card. Your Card is a debit card and not a credit card, and transactions conducted with the Card are not credit transactions, even in situations where you select the "credit" option. In addition to electronic fund transfers, the Card may be used at selected ATMs to make balance inquiries, obtain "mini-statements" or change your PIN.

## Authorized and Unauthorized Use

You are responsible for all transactions and charges incurred through use of your Card by you or anyone you allow to use your Card, and you may also be liable for uses of your Card by others to the extent allowed by law. You agree to take reasonable precautions to prevent unauthorized use of your Card and the confidential PIN which we will assign to you (and which you may change at any RBC Bank ATM in the U.S.). You agree not to reveal your PIN to any unauthorized persons or to write it on your Card or in any other place which may be accessible to unauthorized persons. You must notify us promptly at the phone number or address listed in the "Electronic Fund Transfer" section of the Agreement if any unauthorized use occurs or is suspected, or if your Card is lost or stolen.

## Restrictions on Use

You agree not to use or attempt to use an expired, revoked or otherwise invalid Card. You agree not to use your Card for any illegal or immoral purpose, or in connection with any illegal or immoral activity. Also, you agree not to use your Card in connection with online gambling or to fund any account that is set up to facilitate online gambling. You may not use your Card for any purpose in any country that is subject to economic sanctions imposed by the U.S. Government, and any attempted use of a Card in such countries will be blocked. For security purposes, we may place other restrictions on your use of the Card from time to time. We may decline any transaction if for any reason it appears to us, in our sole discretion, to be suspicious or potentially in violation of the Agreement or any applicable law.

## Verification and Posting of Transactions

All transactions made using the Card (including deposits, payments and transfers) are subject to verification. Your Account Statement lists each transaction and the date it was posted to the Account. The posting date may be different from the date on your receipt, which shows the date you conducted the transaction. Payments made at ATMs that accept payments will be subject to a reasonable delay in crediting after removal from the ATMs.

## Pending Transactions and Preauthorization Holds

Pending transactions are debits and credits that have not yet posted to your Account, and any preauthorization holds (described further below). We may debit or place a hold on your Account for a debit transaction either on the day it is presented to us for payment by electronic or other means, or on the day we receive notice of the transaction, whichever is earlier. Card transactions may take several business days to post. Even if we provisionally post pending transactions to your Account during the day, we may treat them as if we received all of them at the end of the day and process them in any order we choose. We do not necessarily process transactions based on the order in which they occurred or are received. If a merchant or another financial institution requests an authorization for a transaction you want to conduct (a preauthorization request), we may place a hold on your Account for the amount of that preauthorization request. Some merchants may request preauthorization of an amount either higher or lower than the actual transaction amount that ultimately posts to your Account. Although we place a hold on the preauthorized amount, your Account will be debited only for the actual transaction amount when the transaction is processed. Please note that while the hold remains on your Account, the Available Balance for subsequent debit transactions (including additional Card authorizations) may be reduced by the amount of the requested hold, and if your remaining Available Balance is not sufficient to cover all your checks, Card transactions, and other debit transactions and items, you may incur NSF and/or overdraft/re-entry fees, as described further under "Nonsufficient Funds and Overdrafts" herein. We are not responsible for damages or losses of any type, including alleged wrongful dishonor, if any transaction is not authorized or paid because of such a hold. We will remove a hold from your Account when the actual transaction amount is debited from your Account or up to four Business Days after the preauthorization request, whichever occurs sooner.

## Rejected Transactions and Overdrafts

When you do not have a sufficient Available Balance in the applicable Account linked to your Card to cover a transaction, we may refuse a merchant's request for an authorization and the attempted purchase transaction may not be completed, or you may not be able to complete an attempted withdrawal at an ATM. However, any such transaction may be completed despite the lack of sufficient funds. Please see the "Nonsufficient Funds and Overdrafts" section of the Agreement for important provisions which apply if that occurs.

## Stop Payments, Merchant Disputes and Refunds

With the exception of stopping recurring preauthorized payments as described below, you may not stop payment on any Card purchase or other transaction. Your dispute with any merchant does not relieve you from your liability to us for the amount of the transaction and any fees arising out of or related thereto. You must settle any disputes about goods or services you purchase using your Card directly with the merchant. If a merchant misrepresents any aspect of its goods or services, we are not liable to you for any damages or losses resulting from such misrepresentation. You do not receive cash refunds for returns of merchandise or services purchased using your Card. When a merchant gives you a refund, it is made on a credit receipt which must be presented to us through normal electronic or other processes, and which will be reflected on your Account Statement.

21

RBC-ARB-00169

### Recurring Preauthorized Payments

Recurring preauthorized payments occur when you authorize a merchant to automatically initiate a payment using your Card on a recurring basis. If we issue you a new or replacement Card with a different number and/or expiration date, we may (but are not obligated to) provide your new Card number and expiration date to a merchant with whom you have set up a recurring preauthorized payment. You should ensure that the merchant receives the new information on a timely basis. To stop payment on a single payment in a series of recurring preauthorized payments, discontinue a recurring preauthorized payment entirely, or if your Card or the Account to which it is linked is closed, you should contact the merchant, allowing adequate time for the merchant to cancel the payment(s) and for us to implement the cancellation request (which may take up to several days). If you choose to utilize this procedure, we are not responsible or liable for any failure by a merchant to stop a payment or for your failure to notify the merchant in time to stop any given payment. Instead of contacting the merchant, you may use the alternative procedure of asking us to stop the payment, as described under "Rights Regarding Preauthorized Payments" in the "Electronic Fund Transfers" section. However, we may charge you a stop payment fee for any such request, and please note that we must receive your request at least three business days before the scheduled payment date.

### Foreign Transactions

If you purchase goods or services or obtain cash from an ATM with your Visa Check Card in a currency other than U.S. Dollars, Visa will convert the charge into a U.S. Dollar amount which will be deducted from your Account. The currency conversion rate will be the rate in effect on the processing date, which may differ from the rate on the transaction date, and will be (i) a rate selected by Visa from the range of rates available in wholesale currency markets for the applicable Central Processing Date, which may vary from the rate Visa itself receives; or (ii) the government-mandated rate in effect for the applicable Central Processing Date. For each converted purchase transaction made using your signature or by choosing the "credit" option, an International Transaction Fee (currently 1% of the U.S. Dollar amount of the purchase) also will be charged and reported on your Account Statement as a separate charge. You will receive advance notice should that fee change.

If you purchase goods or services or obtain cash from an ATM with your ATM Card in a currency other than U.S. Dollars, the network handling the transaction will convert the charge into a U.S. Dollar amount which will be deducted from your Account. The currency conversion rate will be determined by the applicable network, based on that network's normal currency conversion procedures.

### Emergency Cash and Card Replacement – Consent to Disclosure of Information

Emergency Cash and Emergency Card Replacement Services are Visa benefits that are available with Visa Check Cards. We may provide personal information on you and any authorized Cardholder or user to Visa U.S.A. Inc., members of Visa U.S.A. Inc., or any of their respective contractors in connection with and for the purpose of providing to you, or any authorized Cardholder or user, Emergency Cash and Emergency Card Replacement Services. You and each authorized Cardholder or user hereby expressly consent to the release of such personal information pursuant to the foregoing.

### Card Cancellation or Suspension

We may decide not to issue or renew any Card, or we may decide to cancel or suspend your Card privileges with or without cause or notice, unless otherwise required by law. All Cards remain our property and we may require their return to us at any time. If your Card privileges are suspended or terminated, you must surrender the Card(s) to us upon demand. The cancellation of Card privileges does not of itself affect other terms and conditions relating to the Account(s) linked to the Card(s). If any Card we send you is returned undelivered or if one of your Cards is reported as lost or stolen, we may restrict the use of the Card and, depending on the circumstances, of other Cards you may have with us on the same or other Accounts. If you have not used any Card to conduct a transaction within the last 12 months, we reserve the right to suspend or cancel the Card without notice.

### Bank Compensation

You acknowledge and agree that we may receive certain compensation relating to your Card use pursuant to our participation in various payment networks or from other third parties involved in the processing of debit card transactions. Such compensation may vary and is established by the networks or agreements among the parties involved.

### Non-Visa Debit Transactions

RBC Bank enables non-Visa debit transactions through our STAR, Cirrus and other network affiliations. These types of transactions include, but are not limited to, bill payments made at a merchant's website or other internet-based transactions. You may be required to enter your PIN to initiate these transactions or authenticate yourself as the cardholder through other measures established at the merchant's website. Certain provisions including, but not limited to, the Visa zero-liability program do not apply to these non-Visa debit transactions.

### Disclaimers

We, Visa U.S.A. Inc. and Visa International specifically disclaim all warranties of any kind, express or implied, arising out of or related to Visa Check Cards (and we specifically disclaim all warranties of any kind, express or implied, arising out of or related to ATM Cards) or any core service or supplemental services provided in connection therewith, including, but not limited to, any warranty of MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE or NONINFRINGEMENT, each of which is expressly excluded.

RBC-ARB-00170

B179 (11/2009)

**For more information, visit your nearest RBC Bank location or contact us at:**

› 1-800-236-8872

› www.rbcbankusa.com





© RBC Bank (USA) 2009. Member FDIC. Equal Opportunity Employer.
® Registered trademark of Royal Bank of Canada.
™ Trademark of Royal Bank of Canada. Used under license.
RBC Bank is a trade name used by RBC Bank (USA) and its branch offices operate under this trade name.
* RBC Bank (USA) is licensee of the trademarks.

The confidence to create your path forward

 **RBC Bank®**

RBC-ARB-00171