# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 1:09-MD-02036-JLK

---

**IN RE:  CHECKING ACCOUNT OVERDRAFT LITIGATION**

**MDL No. 2036**

---

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*D. Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685
D. Or. Case No. 3:09-cv-01329-ST

*Zankich v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

---

## DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS ALL CLAIMS OF UNNAMED CLASS MEMBERS IN FAVOR OF ARBITRATION

## TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND ................................................................................................... 2

        A.      Factual Background ................................................................................... 2

        B.      Procedural Background ............................................................................. 5

III.    ARGUMENT ........................................................................................................ 6

        A.      Each Unnamed Class Member Has an Arbitration Agreement with Wells
                Fargo Covering the Claims at Issue. ......................................................... 7

        B.      The Eleventh Circuit's Decision Precludes Any Argument that Wells
                Fargo Waived Its Arbitration Rights with Respect to Unnamed Class
                Members. ................................................................................................... 8

        C.      This Court Has Previously Held That the Wells Fargo Arbitration
                Agreement Delegates Any Questions of Arbitrability to the Arbitrator. ............. 10

        D.      The Arbitration Agreements Are Enforceable. ........................................ 12

                1.      The Arbitration Agreements Are Not Procedurally
                        Unconscionable. ........................................................................... 13

                2.      The Arbitration Agreements Are Not Substantively
                        Unconscionable. ........................................................................... 16

IV.     CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Express Co. v. Italian Colors Restaurant*,
133 S. Ct. 2304 (2013).........................................................................................................17

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (2011)................................................................................................ *passim*

*AT&T Techs., Inc. v. Communications Workers of Am.*,
475 U.S. 643 (1986)..............................................................................................................7

*Barras v. Branch Banking & Trust Co.*,
685 F.3d 1269 (11th Cir. 2012) .....................................................................................18, 19

*Black v. JP Morgan Chase & Co.*,
2011 WL 3940236 (W.D. Pa. Aug. 25, 2011) .....................................................................19

*Blocker v. Wells Fargo Bank*,
2010 WL 6403721 (D. Or. Nov. 23, 2010).........................................................................14

*Buffington v. SunTrust Banks, Inc.*,
459 Fed. App'x 855 (11th Cir. 2012) ..................................................................................15

*Caley v. Gulfstream Aerospace Corp.*,
428 F.3d 1359 (11th Cir. 2005) ..........................................................................................12

*Clerk v. ACE Cash Express, Inc.*,
2010 WL 364450 (E.D. Pa. Jan. 29, 2010) .........................................................................19

*Contec Corp. v. Remote Solution Co., Ltd.*,
398 F.3d 205 (2d Cir. 2005)................................................................................................11

*Cronin v. Fitness*,
2005 WL 1515369 (Ohio App. 2005)..................................................................................18

*Cruz v. Cingular Wireless, LLC*,
648 F.3d 1205 (11th Cir. 2011) .....................................................................................14, 17

*Daugherty v. Encanna Oil & Gas (USA), Inc.*,
2011 WL 2791338 (D. Colo. July 15, 2011) .......................................................................14

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985)..............................................................................................................7

*Doctor's Assocs., Inc. v. Casarotto*,
    517 U.S. 681 (1996) ................................................................15

*Estep v. World Fin. Corp. of Ill.*,
    735 F. Supp. 2d 1028 (C.D. Ill. 2010) ................................................19

*Fallo v. High-Tech Inst.*,
    559 F.3d 874 (8th Cir. 2009) ........................................................11

*Fonte v. AT&T Wireless Servs., Inc.*,
    903 So. 2d 1019 (Fla. 4th DCA 2005) ................................................13

*Garcia v. Wachovia Corp.*,
    699 F.3d 1273 (11th Cir. 2012) .......................................................5

*Gillett v. Williamsville State Bank*,
    34 N.E.2d 552 (Ill. App. 1941) ......................................................18

*Given v. M&T Bank Corp.*,
    674 F.3d 1252 (11th Cir. 2012) ......................................................11

*In re Green Tree Servicing LLC*,
    275 S.W.3d 592 (Tex. App. 2008) ...................................................14

*In re Halliburton Co.*,
    80 S.W.3d 566 (Tex. 2002) .........................................................14

*Hough v. Regions Fin. Corp.*,
    672 F.3d 1224 (11th Cir. 2012) ..................................................14, 15

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) .............................................................10, 11

*Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*,
    659 F.2d 836 (7th Cir. 1981) .........................................................8

*International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*,
    206 F.3d 411 (4th Cir. 2000) .........................................................8

*Jackson v. Payday Loan Store of Ill., Inc.*,
    2010 WL 1031590 (N.D. Ill. Mar. 17, 2010) .........................................19

*Jezek v. CareCredit, LLC*,
    2011 WL 2837492 (N.D. Ill. July 18, 2011) .........................................19

*Lambert v. Austin Ind.*,
    544 F.3d 1192 (11th Cir. 2008) .......................................................7

iv

*Lifecare Int'l, Inc. v. CD Med., Inc.*,
    68 F.3d 429 (11th Cir. 1995) ....................................................................................19

*Livingston v. Metropolitan Pediatrics, LLC*,
    227 P.3d 796 (Or. Ct. App. 2010) .............................................................................18

*Minnesota Voyageur Houseboats, Inc. v. Las Vegas Marine Supply, Inc.*,
    690 N.W.2d 762 (Minn. App. 2005) ..........................................................................18

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .........................................................................................................6

*In re Palm Harbor Homes, Inc.*,
    195 S.W.3d 672 (Tex. 2006) ......................................................................................15

*Pendergast v. Sprint Nextel Corp.*,
    691 F.3d 1224 (11th Cir. 2012) .................................................................................19

*Perera v. H&R Block Eastern Enter.*,
    914 F. Supp. 2d 1284 (S.D. Fla. 2012) (King, J.) .....................................................20

*Powell-Perry v. Branch Banking & Trust Co.*,
    485 Fed. App'x 403 (11th Cir. 2012) ........................................................................18

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006) .................................................................................11

*Rent-A-Center, West, Inc. v. Jackson*,
    130 S. Ct. 2772 (2010) .....................................................................................7, 10, 11

*Riensche v. Cingular Wireless, LLC*,
    2006 WL 3827477 (W.D. Wash. Dec. 27, 2006) ......................................................15

*Roussalis v. Wyoming Med. Ctr., Inc.*,
    4 P.3d 209 (Wyo. 2000) .............................................................................................13

*Satomi Owners Ass'n v. Satomi, LLC*,
    225 P.3d 213 (Wash. 2009) ........................................................................................14

*Smith v. ComputerTraining.com Inc.*,
    772 F. Supp. 2d 850 (E.D. Mich. 2011) ....................................................................19

*Spears-Haymond v. Wells Fargo Bank, N.A.*,
    780 F.3d 1031 (11th Cir. 2015) ............................................................................1, 6, 9

*Spratt v. Security Bank of Buffalo, Wyo.*,
    654 P.2d 130 (Wyo. 1982) .........................................................................................18

*Stolt Nielson S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)................................................................................19

*Stone v. E. F. Hutton & Co.*,
    898 F.2d 1542 (11th Cir. 1990) ..............................................................7

*Strand v. U.S. Bank Nat'l Ass'n ND*,
    693 N.W. 2d 918 (N.D. 2005) ................................................................13

*Tepper Realty Co. v. Mosaic Tile Co.*,
    259 F. Supp. 688 (S.D.N.Y. 1966) ..........................................................8

*Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*,
    432 F.3d 1327 (11th Cir. 2005) ...............................................11, 18, 19

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960).................................................................................7

*Victor Werlhof Aviation Ins. v. Garlick*,
    771 P.2d 962 (Mont. 1989) ....................................................................18

*Walter v. National City Bank*,
    330 N.E.2d 425 (Ohio 1975)..................................................................18

*Wisconsin Auto Title Loans, Inc. v. Jones*,
    714 N.W. 2d 155 (Wis. 2006)................................................................13

Pursuant to 9 U.S.C. § 3 of the Federal Arbitration Act ("FAA"), defendant Wells Fargo Bank, N.A. ("Wells Fargo") respectfully moves the Court for an order to dismiss all claims of the unnamed class members ("Unnamed Class Members") in favor of arbitration.

## I.    INTRODUCTION

On June 8, 2015, the Court certified a plaintiff class (the "Class") of current and former Wells Fargo customers to pursue claims arising from class members' use of debit cards in connection with their Wells Fargo checking accounts.  Each of these checking accounts is governed by a Consumer Account Agreement requiring the individual, non-class arbitration of any dispute with the bank relating to the account.  And although Wells Fargo has been found to have waived its right to arbitrate against the *named* plaintiffs, the Eleventh Circuit has rejected plaintiffs' argument that Wells Fargo waived its arbitration rights with Unnamed Class Members, holding that Wells Fargo could not have properly sought to enforce its arbitration rights against those persons prior to a class being certified.  *See Spears-Haymond v. Wells Fargo Bank, N.A.*, 780 F.3d 1031, 1037, 1038 n.9 (11th Cir. 2015).  With the recent certification of a plaintiff class in these cases, Unnamed Class Members have now been brought within this Court's jurisdiction for the first time.  *Id.*  Accordingly, Wells Fargo now seeks enforcement of Unnamed Class Members' obligation to arbitrate their claims on an individual basis, as required in their contracts with the bank.

With the question of waiver having been resolved in the bank's favor, the only remaining inquiry relates to whether the arbitration provision in the Wells Fargo Consumer Account Agreement is enforceable.  However, that inquiry has already been resolved as well.  In an earlier case in this MDL, this Court held that the Wells Fargo deposit agreement – the very same agreement that is at issue here – "contains a delegation clause assigning questions of

1

arbitrability (such as an argument asserting the unconscionability of the arbitration provision) to an arbitrator rather than the Court." DE # 3627 at 2 (Aug. 27, 2013 Order Granting Defendant's Motion to Compel Arbitration, *Kennedy v. Wells Fargo Bank, N.A.*, N.D. Cal. Case No. 3:11-cv-01222, S.D. Fla. Case No. 1:11-cv-21313-JLK). This Court further held that "the delegation clause is enforceable" and that any claims subject to the arbitration agreement must be dismissed. *Id.*

Accordingly, Wells Fargo respectfully requests that the delegation provision in its arbitration agreements with Unnamed Class Members be enforced and that all claims of Unnamed Class Members be dismissed in favor of arbitration.

## II.     BACKGROUND

### A.     Factual Background

Each Unnamed Class Member had a Wells Fargo checking account, the terms of which were contained in a standardized Consumer Account Agreement. *See* DE # 437  ¶ 37 & Ex. A; DE # 354 ¶ 38 & Ex. A; *Zankich* DE # 1 ¶ 12.[1]  *See also* Declaration of Karen Moore ("Moore Arbitration Dec.") ¶¶ 2, 6 & Ex. 11 (DE # 3291-1). At all relevant times, it was Wells Fargo's standard practice to provide a copy of the Consumer Account Agreement when a customer opened a new account or was added to an existing account. Moore Arbitration Dec. ¶ 2. Wells Fargo trained its bankers on account opening and maintenance procedures, including the requirement to provide the Consumer Account Agreement to customers. *Id.* In 1999 to 2001, following a merger with another bank, Wells Fargo mailed each of its existing deposit account customers a new copy of the then-current version of the Consumer Account Agreement.

---

[1] The complaint in *Zankich* was never filed in this Court and is not included in the central MDL docket. Therefore, that document is cited as "*Zankich* DE #1," which refers to its docket number in the Western District of Washington (Case No. C-08-1476-RSM).

*Id.* ¶ 4.  Similarly, after Wells Fargo acquired Wachovia Bank, it provided all former Wachovia customers whose accounts were converting onto the Wells Fargo banking system with a then-current Wells Fargo agreement at the time of conversion, which occurred between 2009 and 2012.  *Id.* ¶ 5.

At the time of account opening, Wells Fargo required each customer to sign a Consumer Account Application, which acknowledged that the customer had received a copy of the account agreement and agreed to be bound by its terms.  *Id.* ¶ 3 & Ex. 1.  The application explicitly stated that the customer was agreeing "to the terms of the dispute resolution program described in the account agreement ….  Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge."  *Id.*

Every version of the Consumer Account Agreement used during the relevant period required individual, non-class arbitration of any disputes concerning the customer's account.  *Id.* ¶ 6 & Exs. 2-14.  In each version, the arbitration terms were set off by an appropriate heading ("**Dispute Resolution Program:  Arbitration Agreement**") in large, highlighted or bolded type and were separately listed in the Table of Contents.  *See, e.g.*, *id.* Ex. 11 at ii & 4 (emphasis in original).  The arbitration clause stated:

> **Dispute Resolution Program:  Arbitration Agreement**
>
> This section constitutes the Arbitration Agreement between you and the Bank.
>
> **Non-Judicial Resolution of Disputes.**  If you have a dispute with the Bank, and you are not able to resolve the dispute informally, you and the Bank agree that any dispute between or among you and the Bank, regardless of when it arose, shall be resolved by the following arbitration process.  You understand and agree that you and the Bank are each waiving the right to a jury trial before a judge in a public court.

3

**Disputes.**  A dispute is any unresolved disagreement between or among you and the Bank . . . arising out of or relating in any way to your Account and/or Services.  It includes any dispute relating in any way to your Accounts and Services; to your use of any Bank location or facility; or to any means you may use to access the Bank, such as an Automated Teller Machine (ATM) or Online Banking.  It includes claims based on broken promises or contracts, torts (injuries caused by negligent, or intentional conduct) or other wrongful actions.  It also includes statutory, common law, and equitable claims.  A dispute also includes any disagreement about the meaning of this Arbitration Agreement and whether a disagreement is a "dispute" subject to binding arbitration as provided for in this Arbitration Agreement.  A dispute does not include a claim that may be filed in small claims court.  If you have a dispute that is within the jurisdiction of the small claims court, you should file your claim there.

**Binding Arbitration.**  Binding arbitration is a means of having an independent third party resolve a dispute without using the court system, judges, or juries.  Either you or the Bank may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced.  If either you or the Bank fails to submit to binding arbitration following a lawful demand, the one who fails to submit bears all costs and expenses (including attorney's fees and expenses) incurred by the other compelling arbitration.

**Neither you nor the Bank shall be entitled to join or consolidate disputes by or against others in any arbitration, or to include in any arbitration any dispute as a representative or member of a class, or to act in any arbitration in the interest of the general public or in a private attorney general capacity.**

Each arbitration, including the selection of the arbitrator shall be administered by the American Arbitration Association (AAA), according to the Commercial Arbitration Rules and the Supplemental Procedures for Consumer Related Disputes (excluding the Optional Procedures for large, Complex Commercial Disputes) and the Optional Rules for Emergency Measures of Protection of the AAA ("AAA Rules").

*Id.* Ex. 11 at 4-5 (emphasis in original).

4

B.      **Procedural Background**

Plaintiffs filed these class action suits to challenge Wells Fargo's posting order for debit-card transactions. *See, e.g.*, DE # 437 ¶¶ 1-12. In its Answers to each of plaintiffs' complaints, Wells Fargo asserted the existence of the arbitration agreements as an affirmative defense to any claims brought on behalf of Unnamed Class Members, stating: "Absent members of the putative classes have a contractual obligation to arbitrate any claims they have against Wells Fargo." *See* DE # 548 at 21; DE # 549 at 23; *Zankich* DE # 10 at 10 ¶ 16.

On April 19, 2010, in response to an invitation by the Court for parties to "join in" then-pending motions to compel arbitration filed by certain banks against the plaintiffs who had sued them, DE # 360 at 2-3, Wells Fargo filed a separate statement with the Court observing that it had not filed arbitration motions against the named plaintiffs in these cases and, as a result, would not "seek to join the currently pending motions to compel arbitration…." DE # 390 at 1. However, Wells Fargo explained, it was reserving its rights "to enforce its applicable contractual dispute resolution procedures, including its right to compel arbitration, against other customers … who later join, individually or as putative class members, in this litigation against Wells Fargo." *Id.* at 1-2. The bank stressed that it was not waiving its arbitration rights against such persons. *Id.* at 2.

Following the Supreme Court's landmark decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011), Wells Fargo moved to compel the named plaintiffs to arbitrate. DE # 1384. The Court denied this motion, finding that Wells Fargo had waived its arbitration rights against the named plaintiffs, (DE #2224), and the Eleventh Circuit affirmed. *Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1275 (11th Cir. 2012).

5

Later, at the same time it filed its opposition to plaintiffs' motion for class certification, Wells Fargo filed a conditional motion to compel Unnamed Class Members to arbitrate. DE # 3291. The Court denied that motion, holding that it had possessed jurisdiction over Unnamed Class Members since the outset of this litigation and, accordingly, Wells Fargo had waived its arbitration rights against them as well. DE # 3415. However, the Eleventh Circuit vacated this decision, holding that this Court did not have jurisdiction over Unnamed Class Members prior to class certification and that the bank's waiver of its rights as to the named plaintiffs could have no preclusive effect on its rights as to Unnamed Class Members. *Spears-Haymond*, 780 F.3d at 1037, 1038 n.9.

On June 8, 2015, the Court certified a class of Wells Fargo consumer account customers who incurred overdraft fees as a result of Wells Fargo's practice of sequencing debit card transactions from highest to lowest. *See* DE # 4181. In its class certification ruling, the Court found that all Unnamed Class Members were parties to versions of the Consumer Account Agreement that were substantially the same in all respects pertinent to this litigation. DE # 4181 at 15, 25-26.[2] This motion is filed promptly following the Court's class certification decision.

## III.   ARGUMENT

Congress enacted the FAA to ensure the "rapid and unobstructed enforcement of arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23

---

[2] In opposing class certification, Wells Fargo had argued that the arbitration rights of Unnamed Class Members precluded a finding of numerosity pursuant to Fed. R. Civ. P. 23(a). In its certification order, however, the Court held that any arbitration-based arguments as to Unnamed Class Members were premature prior to the actual point of certification, as the Unnamed Class Members were not yet parties to the litigation. DE # 4181 at 12 (citing *Spears-Haymond*, 780 F.3d at 1037). Accordingly, the Court held, Wells Fargo could not invoke the arbitration obligations of Unnamed Class Members until after certification.

(1983).  The FAA establishes a public policy strongly favoring arbitration and requires courts to enforce arbitration agreements according to their terms.  *See Concepcion*, 131 S. Ct. at 1742.

The Supreme Court has held that, when a contract contains an arbitration clause, there is a presumption of arbitrability to promote the federal policy favoring arbitration, and "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).  Any doubts as to the scope of arbitrable issues or the applicability of an arbitration clause must be resolved in favor of arbitration.  *Stone v. E. F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990) (citing *Moses H. Cone*, 460 U.S. at 24-25).

Under the FAA, a court faced with an arbitration motion plays a limited role.  It should make no inquiry into the merits of the case.  *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986).  The only issues for the court to decide (to the extent they are not delegated to the arbitrator) are (i) whether there is a valid arbitration agreement between the parties and (ii) whether the dispute falls within the scope of the arbitration agreement.  *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2777-78 & n.1 (2010).  If these conditions are met, the court is required to "either stay or dismiss a lawsuit and to compel arbitration."  *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).  The FAA leaves no discretion on this matter.  *Byrd*, 470 U.S. at 218.

### A.    Each Unnamed Class Member Has an Arbitration Agreement with Wells Fargo Covering the Claims at Issue.

Here, the existence of agreements to arbitrate is beyond dispute.  The arbitration provision of the Consumer Account Agreement applies to "any unresolved disagreement"

between the bank and the customer "relating in any way" to the checking account at issue. Moore Arbitration Dec. Ex. 11 at 4.  Adopting language proposed by plaintiffs themselves (DE # 4178-1 at 16, 26-27), this Court has now found that all members of the class are subject to common contracts (the Consumer Account Agreement) and that there are no material differences between the contracts received by different class members.  DE # 4181 at 15, 25-26.  Indeed, the claims of Unnamed Class Members for alleged breach of an implied covenant of good faith and fair dealing rely on that contract, copies of which were attached to plaintiffs' complaints.  *See, e.g.*, DE # 437 ¶¶ 103-112 & Ex. A.

Many courts have held in similar circumstances that a party may not sue to receive the benefits of a contract while at the same time denying the existence of the arbitration agreement it contains.  As Judge Moreno observed in *Rampersad v. Primeco Personal Communications, L.P.*, a plaintiff "cannot claim [a] contract was not formed to avoid arbitration and concurrently sue for breach of that contract."  2001 WL 34872572, at *1 (S.D. Fla. Oct. 16, 2001).[3]

**B.      The Eleventh Circuit's Decision Precludes Any Argument that Wells Fargo Waived Its Arbitration Rights with Respect to Unnamed Class Members.**

When Wells Fargo filed its earlier conditional motion to compel Unnamed Class Members to arbitrate, this Court accepted plaintiffs' argument that Wells Fargo's prior waiver of its arbitration rights against the named plaintiffs extended to its arbitration rights against

---

[3] *See also International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) (party cannot claim benefit of contract and simultaneously avoid its arbitration provisions); *Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981) (party cannot claim liability for nonperformance under contract and "at the same time" deny the contract to avoid arbitration); *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y. 1966) ("In short, the plaintiffs cannot have it both ways.").

Unnamed Class Members, despite the fact that no class had yet been certified.  *See* DE # 3415.

The Eleventh Circuit disagreed.  Writing for a unanimous panel, Judge Tjoflat stated:

> Because a class had not been certified at the time Wells Fargo
> moved conditionally to compel arbitration of the claims of all
> unnamed class members, those unnamed individuals necessarily
> remained *putative* participants in the case.  Certification of a class
> is the critical act which reifies the unnamed class members and,
> critically, renders them subject to the court's power.  …
>
> Absent class certification, there is no justiciable controversy
> between Wells Fargo and the unnamed putative class members.
> Furthermore, because the unnamed putative class members are not
> yet before the court, any claims that they might have against Wells
> Fargo necessarily exist only by hypothesis.  In the absence of both
> live claims and cognizable plaintiffs, the District Court's
> pronouncement purporting to definitively foreclose the arbitration
> of the hypothetical claims that might be raised in the future by
> hypothetical plaintiffs cannot be regarded as anything but an
> impermissible advisory opinion on an abstract proposition of law.

*Spears-Haymond*, 780 F.3d at 1037 (emphasis in original; citations and marks omitted).

The Eleventh Circuit further rejected plaintiffs' suggestion that the bank's waiver

of its arbitration rights vis-à-vis the named plaintiffs carried over to create a waiver as to

Unnamed Class Members as well.  Any such argument, the court explained, "would fail because

the issue to which the named plaintiffs would have us give preclusive effect – whether Wells

Fargo had waived its rights to enforce the arbitration provisions in its contracts with the *named*

*plaintiffs* … – is not the same as the relevant issue here:  whether Wells Fargo has waived its

rights to enforce the arbitration provisions in separate contracts with each of the *unnamed*

*putative class members*."  *Id.* at 1038 n.9.

The Eleventh Circuit's decision precludes any argument that Wells Fargo waived its right to arbitrate against Unnamed Class Members.[4]

### C.   This Court Has Previously Held That the Wells Fargo Arbitration Agreement Delegates Any Questions of Arbitrability to the Arbitrator.

Wells Fargo anticipates that plaintiffs will argue that the Wells Fargo arbitration agreement is unenforceable against some or all Unnamed Class Members because some aspect of the agreement is unconscionable under the laws of the states in which those customers reside. However, in an earlier case in this MDL (*Kennedy v. Wells Fargo Bank, N.A.*, Case No. 1:11-cv-21313-JLK), this Court already determined that this very same arbitration agreement "contains a delegation clause assigning questions of arbitrability (such as an argument asserting the unconscionability of the arbitration provision) to an arbitrator rather than the Court." DE # 3627 at 2. This Court further held that "the delegation clause is enforceable" and that any claims subject to the arbitration agreement must be dismissed accordingly. *Id.*

This earlier holding of this Court followed unambiguous Supreme Court and Eleventh Circuit authority. The Supreme Court has held repeatedly that where the parties have "clearly and unmistakably" agreed that issues of arbitrability are delegated to the arbitrator, such issues must be decided by the arbitrator, not a court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *see also Rent-A-Center*, 130 S. Ct. at 2777-78 & n.1. Upon finding that an arbitration agreement delegates these threshold determinations of arbitrability to the arbitrator,

---

[4] At oral argument on their motion for class certification, plaintiffs argued for the first time that Wells Fargo may be "estopped" from enforcing its arbitration agreements against Unnamed Class Members. DE # 4167 at 4-5; *see also* DE # 4165 at 7. This appears to be nothing more than an attempt to resurrect their rejected "waiver" argument by giving it another name. Whether one speaks in terms of "waiver" or "estoppel," the Eleventh Circuit has made clear that no prior action by Wells Fargo in this litigation can be construed as giving up or otherwise abridging the arbitration rights it would have against Unnamed Class Members if and when a class was certified.

a court must refer to the arbitrator *all* defenses to the enforcement of the arbitration provision, including issues involving scope and validity.  *Howsam*, 537 U.S. at 84; *Rent-A-Center*, 130 S. Ct. at 2777; *Given v. M&T Bank Corp.*, 674 F.3d 1252, 1256-57 (11th Cir. 2012).

Here, the Wells Fargo arbitration agreement explicitly incorporates the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), which provide:   "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement…." AAA Commercial Arbitration Rule R-7(a) (available online at www.adr.org/commercial).  The AAA Rules have contained the same jurisdictional language throughout the relevant period.  *See* Declaration of David M. Jolley ¶ 3.  The Eleventh Circuit, like other courts, has held that the incorporation of these AAA Rules in an arbitration agreement serves as a clear and unmistakable expression of the parties' intent to delegate these questions of arbitrability (including alleged unconscionability) to an arbitrator, not a judge.  *Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005).[5]

In *Kennedy v. Wells Fargo*, the bank moved to compel the named plaintiff to arbitrate claims that were essentially identical to those presented here.  *See* DE # 3390.  The plaintiff opposed the motion on grounds that Wells Fargo's arbitration agreement is procedurally and substantively unconscionable.  *See* DE 3433.  This Court refused to consider those arguments, finding that the parties had delegated all questions of possible unconscionability to the arbitrator.  *See*  DE # 3627 at 2 ("Based on the arguments presented as well as a review of the record, the Court concludes that the delegation clause is enforceable.").  The same reasoning

---

[5] *See also Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371-73 (Fed. Cir. 2006).

applies here, as the arbitration agreements of Unnamed Class Members are the same as the agreement at issue in *Kennedy*, with an identical delegation clause.

Given the clear showing that Unnamed Class Members are parties to agreements that delegate issues of arbitrability to the arbitrator, there is nothing else for this Court to decide and "the delegation issue is dispositive." DE # 3627 at 2. Accordingly, all issues involving arbitrability – including any arguments relating to unconscionability – must be left for the arbitrator to resolve, and the claims of Unnamed Class Members should be dismissed.

**D.      The Arbitration Agreements Are Enforceable.[6]**

Even if issues of unconscionability were for this Court to decide, Wells Fargo is aware of no argument plaintiffs could make that would undermine Unnamed Class Members' contractual obligation to arbitrate, on an individual basis, the claims presented in these cases.

The unconscionability analysis – to the extent it is not preempted by the FAA – is a matter of state law. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367-68 (11th Cir. 2005). Here, the Consumer Account Agreement contains a choice of law provision stating that, to the extent state law applies, the pertinent law is that of the state where the account at issue is maintained (which is typically the state where the account is opened). *See* Moore Arbitration Dec. ¶ 20 & Ex. 11 at 36. Therefore, the state laws pertinent to any unconscionability challenge on behalf of Unnamed Class Members would be those of Alaska, Arizona, Colorado, Idaho, Illinois, Iowa, Kansas, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Ohio, Oregon, South Dakota, Texas, Utah, Washington, Wisconsin, and Wyoming. *See id.* ¶ 20. (Although Wells Fargo maintained

---

[6] Wells Fargo presents the points set forth in this section for the Court's consideration solely in the event it determines that these issues are not delegated to the arbitrator. The presentation of these arguments should not be construed as a waiver of the bank's position on delegation.

checking accounts in California and Indiana, accounts from those states are excluded from the class definition.) [7]

Wells Fargo does not currently know what specific arguments on unconscionability plaintiffs might make or what state-law authorities they might invoke in making such arguments.  The bank will necessarily have to present its specific responses to any such arguments after it learns what they are.  Nevertheless, it offers below some general observations on the subject based on arguments plaintiffs have made previously in these and other cases in this MDL.

### 1. The Arbitration Agreements Are Not Procedurally Unconscionable.

As plaintiffs themselves have previously acknowledged (Am. Class Mot., App. I at Ex. C) (DE # 3262-1), the laws of most of the relevant states require both procedural *and* substantive unconscionability to be shown for a contract to be defeated.  If there is no proof of procedural unconscionability, that ends the analysis, and substantive unconscionability need not even be considered. [8]

Plaintiffs have previously argued that Wells Fargo's arbitration agreement is procedurally unconscionable because it is a contract of adhesion, with its text in "small print."

---

[7] The class is implicitly defined in terms of the states where customers reside rather than in terms of the state laws that govern their accounts.  It appears, however, that plaintiffs actually intended the latter, at least for purposes of classifying class members into subclasses by state.  (Karen Wickman, for example, has been identified as a subclass representative for residents of Oregon, where her account was opened, even though she now lives in California.)

[8]  *See, e.g., Strand v. U.S. Bank Nat'l Ass'n ND*, 693 N.W. 2d 918, 924 (N.D. 2005) ("[A] party alleging unconscionability [under North Dakota law] must demonstrate some quantum of both procedural and substantive unconscionability."); *Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 246 (Wyo. 2000) (same under Wyoming law); *Wisconsin Auto Title Loans, Inc. v. Jones*, 714 N.W. 2d 155, 165 (Wis. 2006) (same under Wisconsin law).  *See also Fonte v. AT&T Wireless Servs., Inc.*, 903 So. 2d 1019, 1025 (Fla. 4th DCA 2005) (same under Florida law).

*See* DE # 3356 at 13-14.  Such arguments are legally untenable under all, or virtually all, of the applicable state laws.

   An arbitration clause is not procedurally unconscionable merely because it is found in a contract of adhesion.[9]  As the Supreme Court has observed, "the times in which consumer contracts were anything other than adhesive are long past."  *Concepcion*, 131 S. Ct. at 1750; *see also Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1211 (11th Cir. 2011) (noting that consumer contracts are almost universally "adhesive").  "The fact that the contract at issue in *Concepcion* was an adhesion contract did not affect the Supreme Court's analysis and, indeed, the majority in *Concepcion* appeared to be little troubled by that fact."  *Daugherty v. Encanna Oil & Gas (USA), Inc.*, 2011 WL 2791338, at *9 (D. Colo. July 15, 2011).  Given this, a claim of unconscionability is not meaningfully enhanced by characterizing the agreement as an adhesion contract.  *See In re Halliburton Co.*, 80 S.W.3d 566, 572 (Tex. 2002); *Satomi Owners Ass'n*, 225 P.3d at 232.

   Nor is there merit to any argument that the arbitration agreement is procedurally unconscionable because it was not presented in a large, bold-faced font or satisfied extra requirements to ensure it received special attention.  In fact, the arbitration provision in Wells Fargo's Consumer Account Agreement is clearly presented, identified in the table of contents, set off by an appropriate heading, and presented in the same typeface as the rest of the contract,

---

[9] *See Hough v. Regions Fin. Corp.*, 672 F.3d 1224, 1229 (11th Cir. 2012) ("[A]n adhesion contract is not per se unconscionable."); *see also Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 232 (Wash. 2009) ("[T]he fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable.") (citation omitted); *In re Green Tree Servicing LLC*, 275 S.W.3d 592, 604 (Tex. App. 2008) ("Adhesion contracts are not automatically unconscionable.") (citation omitted); *Blocker v. Wells Fargo Bank*, 2010 WL 6403721, at *6 (D. Or. Nov. 23, 2010) ("[T]here is no rule pursuant to which contracts of adhesion are *per se* unenforceable.").

with special characteristics (boldface, capitals) designed to draw attention to the main provisions. *See* Moore Arbitration Dec. Ex. 1 at ii, 4-6. Nothing more is required. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 683 (1996) (state law requiring arbitration agreement to be typed in underlined capital letters preempted by FAA where no such requirement applied to contract terms in general).[10] Moreover, it has been Wells Fargo's practice throughout the entire class period to have each customer sign an account application at account opening that expressly states, directly under the signature line, that disputes about the account "will be decided by one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge." Moore Arbitration Dec. ¶ 3 & Ex. 1.

These facts are alone enough to defeat any claim of procedural unconscionability. Further undermining any such claim is the fact that Unnamed Class Members who did not wish to commit to arbitrating their disputes had the option of taking their banking business to one of the many banks across the United States that did not include arbitration clauses in their deposit agreements. *See, e.g., Riensche v. Cingular Wireless, LLC*, 2006 WL 3827477, at *6 (W.D. Wash. Dec. 27, 2006) (the existence of reasonable market alternatives cuts against a finding of procedural unconscionability).[11]

Plaintiffs previously have argued that some Unnamed Class Members might not have received copies of their account agreements, relying on a declaration from a disgruntled

---

[10] *See also, e.g., Hough*, 672 F.3d at 1229 (finding no procedural unconscionability where agreement refers to arbitration in table of contents and includes conspicuous language); *Buffington v. SunTrust Banks, Inc.*, 459 Fed. App'x 855, 859 (11th Cir. 2012); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 679 (Tex. 2006) (finding no procedural unconscionability where agreement was "clearly labeled" as an arbitration agreement and "highlight[ed] that a jury trial is being waived").

[11] That many banks did not employ arbitration clauses in their contracts is well known to this Court, as many such banks – Capital One, Union Bank, TD Bank, Citizens Bank, and others – are or have been parties in this MDL.

former employee who asserted that the bank's policy of routinely providing account agreements to new customers was often disregarded in the branch where she worked.  *See* DE # 1487-19. She did not claim to have any knowledge of what happened in the thousands of other Wells Fargo branches across the country.  Her assertion, moreover, is entirely inconsistent with plaintiffs' affirmative allegation in their pleading, which this Court has now accepted for purposes of class certification, that customers *did* receive the CAA.  Moreover, all customers were on notice of the arbitration provision by virtue of the explicit reference to it, in bold language, in the account application, right above where each customer had to sign in order to open his or her account.  *See* Moore Arbitration Dec. ¶ 3 & Ex. 1 ("I also agree to the terms of the dispute resolution program described in the account agreement and Service Agreement and Product Guide.  Under this program our disputes will be decided before one or more neutral persons in an arbitration proceeding and not by a jury trial or a trial before a judge.").

> ### 2.      The Arbitration Agreements Are Not Substantively Unconscionable.

Plaintiffs have previously argued that the Wells Fargo arbitration agreement is substantively unconscionable for a handful of reasons.  None of these arguments has merit, and most could not be applied to invalidate the arbitration agreement as a whole in any event.

First, plaintiffs have previously argued that the low-value nature of the claims at issue, combined with the costs associated with non-class arbitration proceedings, would effectively deny them the ability to pursue their claims outside of a class action setting.  As this Court has already held in another case in this MDL:

> this reasoning has been rejected by the United States Supreme Court in *Concepcion* (131 S. Ct. at 1753) and then in *American Express Co., et al. v. Italian Colors Restaurant et al.* (133 S. Ct. 2304 (2013)).  Indeed, as succinctly stated in a footnote to American Express, "the FAA's command to enforce arbitration agreements trumps any interest in ensuring the prosecution of low-

> value claims." 133 S. Ct. at 2312 n.5. It would thus appear that
> despite the availability of an unconscionability defense under state
> law, such a defense is no longer available if premised on the idea
> that the offending provisions discourage low-value claims by
> making them prohibitively costly to litigate.

DE # 3582 at 4 (*Given v. M&T Bank*, Case No. 1:10-cv-20478-JLK, Aug. 5, 2013). This was

consistent with the Eleventh Circuit's decision in *Cruz*, 648 F.3d at 1214-15, which also

considered and rejected this policy argument.[12]

      Second, borrowing arguments from cases in this MDL involving other banks,

plaintiffs have argued that provisions that shift the fees or costs incurred in arbitration are

unconscionable and render an arbitration agreement unenforceable. Wells Fargo's arbitration

agreement differs from those of the other banks whose agreements this Court has considered in

that it has no such fee-shifting provisions, which precludes any such argument.[13] In any event,

the Eleventh Circuit has made clear that such fee-shifting provisions cannot invalidate an

arbitration agreement, but rather should, if unconscionable, be simply severed, with the

---

[12] To be sure, as recognized by this Court (DE # 3582 at 4 n.4), the Supreme Court left open the possibility that an exception might apply if the fees of the arbitration forum were so exorbitantly high as to make the forum completely inaccessible. *Italian Colors*, 133 S. Ct. at 2311-12. But as this Court also recognized in *Given*, this dictum cannot be interpreted as creating a significant exception to the general enforceability of arbitration. DE # 3582 at 4 n.4. Moreover, the record here shows that the cost of the selected forum is extremely modest. During arbitration-related discovery in this case, a witness for the AAA confirmed that the AAA charges *no filing fee at all* for customers to arbitrate monetary claims against a company, and that it caps its only other fee (to pay the arbitrator) for customers in low-value cases at $125. *See* DE # 1972 at 18 (citing DE # 1972-3 Ex. Q at 96-97, 107-08). Even this fee can be waived in cases of financial hardship. DE # 1972 at 18 (citing former AAA Commercial Arb. Rule R-49 (now Rule R-53, available online at www.adr.org/commercial)).

[13] Although plaintiffs have previously argued that Wells Fargo's arbitration agreement contains a fee-shifting provision, all they could point to was a provision requiring a party who fails to submit to a lawful arbitration demand to bear the expenses incurred by the other party in *compelling* arbitration. As for the fees and expenses actually incurred in the arbitration itself, the agreement provides: "Unless inconsistent with the laws governing your Account, each party shall bear the expense of their own attorneys', experts', and witness' fees, regardless of which party prevails in the arbitration." Moore Arbitration Dec. Ex. 11 at 6.

underlying agreement to arbitrate left intact.  *Barras v. Branch Banking & Trust Co.*, 685 F.3d 1269, 1283 (11th Cir. 2012); *Powell-Perry v. Branch Banking & Trust Co.*, 485 Fed. App'x 403, 406-07 (11th Cir. 2012); *Terminix*, 432 F.3d at 1331.[14]

Third, plaintiffs have argued that arbitration agreements containing set-off clauses – provisions that allow the bank to deduct amounts owed by a customer to the bank directly from its customers' accounts – are unconscionable and render the arbitration agreement unenforceable. The Eleventh Circuit has squarely rejected this argument in a case arising out of this MDL, pointing out that such set-off rights are explicitly permitted by state law.  *Powell-Perry*, 485 Fed. App'x at 407.[15]  Even if this provision were unconscionable, the remedy would be to sever it and enforce the remaining terms of the arbitration agreement.  *See Terminix*, 432 F.3d at 1331.

Fourth, plaintiffs have argued that the "confidentiality" provision in the Wells Fargo Arbitration Agreement – despite being admittedly facially neutral – is improperly one-sided in the bank's favor.  Courts have routinely rejected such arguments as constituting thinly veiled attacks on arbitration itself.[16]  Indeed, the Supreme Court and the Eleventh Circuit have repeatedly lauded the confidentiality available in an individualized arbitration as ultimately

---

[14] This conclusion is reinforced by the severability provision of the Consumer Account Agreement, which states that any unenforceable or invalid term "will not affect the enforceability or validity of the remaining provisions of this *Agreement*" Moore Arbitration Dec. Ex. 11 at 37 (emphasis in original).  In the face of such a severability provision, "[i]f the offensive terms are severable, then the court must compel arbitration according to the remaining, valid terms of the parties' agreement."  *Terminix*, 432 F.3d at 1331.

[15] Setoff by a bank is routinely permitted under the laws of virtually every state, including those at issue here.  *See, e.g., Walter v. National City Bank*, 330 N.E.2d 425, 427 (Ohio 1975); *Victor Werlhof Aviation Ins. v. Garlick*, 771 P.2d 962, 964 (Mont. 1989); *Spratt v. Security Bank of Buffalo, Wyo.*, 654 P.2d 130, 135-36 (Wyo. 1982); *Minnesota Voyageur Houseboats, Inc. v. Las Vegas Marine Supply, Inc.*, 690 N.W.2d 762, 765 (Minn. App. 2005); *Gillett v. Williamsville State Bank*, 34 N.E.2d 552, 558 (Ill. App. 1941).

[16] *See, e.g.*, *Livingston v. Metropolitan Pediatrics, LLC*, 227 P.3d 796, 809 (Or. Ct. App. 2010) (confidentiality clause not unconscionable); *Cronin v. Fitness*, 2005 WL 1515369, at *2-4 (Ohio App. 2005) (same).

beneficial to all parties.  *See Concepcion*, 131 S. Ct. at 1750; *Stolt Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010); *Pendergast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1232 (11th Cir. 2012).  And again, if the confidentiality provision were found unconscionable, the proper result would be to sever the offending provision and compel arbitration according to the remainder of the agreement.  *See Terminix*, 432 F.3d at 1331.

Fifth, plaintiffs have argued that the AAA, which is the arbitration forum mandated in Wells Fargo's arbitration agreement, has instituted a moratorium on arbitrating consumer-related disputes.  The Eleventh Circuit (like many other courts before it) has flatly rejected this argument as well, holding that even if the AAA were unavailable (which it is not),[17] the FAA establishes a procedure for appointing a replacement arbitrator.  *Barras*, 685 F.3d at 1283 n.20.[18]  In a similar vein, plaintiffs have argued that the AAA is biased against consumers because "corporations" repeatedly use the AAA to administer arbitrations.  Plaintiffs have offered no evidence showing any such bias or that the procedural safeguards of the AAA are inadequate.  *See* Commercial Arbitration Rules R-17 and R-18 (requiring arbitrators to disclose conflicts of interest and providing for disqualification in the event of partiality or lack of independence) (available online at www.adr.org/commercial).  Nor can plaintiffs provide evidence that the judicial review procedures under the FAA are inadequate to ensure a fair, unbiased arbitration.  *See Lifecare Int'l, Inc. v. CD Med., Inc.*, 68 F.3d 429, 435 (11th Cir. 1995).

---

[17]  Wells Fargo has previously established that the AAA is in fact available to arbitrate such claims.  *See* DE # 2035 at 18-20.

[18]  *See also, e.g., Smith v. ComputerTraining.com Inc.*, 772 F. Supp. 2d 850, 862 (E.D. Mich. 2011) (rejecting AAA consumer moratorium argument); *Black v. JP Morgan Chase & Co.*, 2011 WL 3940236, at *9 (W.D. Pa. Aug. 25, 2011) (same); *Estep v. World Fin. Corp. of Ill.*, 735 F. Supp. 2d 1028, 1033-34 (C.D. Ill. 2010) (same); *Jezek v. CareCredit, LLC*, 2011 WL 2837492, at *4 (N.D. Ill. July 18, 2011) (same); *Jackson v. Payday Loan Store of Ill., Inc.*, 2010 WL 1031590, at *3 (N.D. Ill. Mar. 17, 2010) (same); *Clerk v. ACE Cash Express, Inc.*, 2010 WL 364450, at *10 (E.D. Pa. Jan. 29, 2010) (same).

The AAA is a highly respected arbitration administrator, and courts – including this one (*see, e.g.*, DE # 3333 at 4-5) – routinely compel parties to arbitrate before it.

Finally, plaintiffs have previously argued that the AAA's Consumer Rules do not provide for sufficient discovery.  The Supreme Court has rejected this argument.  *Concepcion*, 131 S. Ct. at 1747.

Accordingly, even if issues of unconscionability had not been delegated to the arbitrator, plaintiffs' anticipated unconscionability arguments would not provide a basis for refusing enforcement of the agreement.

## IV.    CONCLUSION

A district court may compel arbitration and dismiss parties from a case where all claims of those parties are subject to arbitration.  *See Perera v. H&R Block Eastern Enter.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) (King, J.); DE # 3627 at 2; DE # 3582 at 5.  Accordingly, for the reasons set forth herein, Wells Fargo respectfully requests that the Court dismiss all claims of Unnamed Class Members in favor of arbitration.

## STATEMENT ON ORAL ARGUMENT PURSUANT TO LOCAL RULE 7.1

Wells Fargo does not request oral argument pursuant to Local Rule 7.1, but if the Court believes that argument would be helpful, the bank will, of course, be pleased to participate.

## CERTIFICATE OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE ISSUES PRESENTED IN THE MOTION

Pursuant to Local Rule 7.1(a)(3), Wells Fargo certifies that on June 9, 2015, it conferred with counsel for plaintiffs in a good faith effort to resolve the need for filing this motion.  Counsel for Wells Fargo requested that Unnamed Class Members agree to arbitrate their claims and agree with this motion.   Plaintiffs' counsel declined these requests  and intends to oppose this motion.

DATED:  June 10, 2015                    COVINGTON & BURLING LLP


By:   /s/David M. Jolley

Sonya D. Winner (*pro hac vice*)
(swinner@cov.com)
David M. Jolley (*pro hac vice*)
(djolley@cov.com)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

Emily Johnson Henn (*pro hac vice*)
(ehenn@cov.com)
COVINGTON & BURLING LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 632-4700
Facsimile: (650) 632-4800

Barry R. Davidson
(bdavidson@hunton.com)
Florida Bar No. 107678
Jamie Zysk Isani
(jisani@hunton.com)
Florida Bar No. 728861
HUNTON & WILLIAMS LLP
1111 Brickell Avenue, Suite 2500
Miami, FL 33131
Telephone: (305) 810-2500
Facsimile: (305) 810-2460

Attorneys for Defendant
WELLS FARGO BANK, N.A.

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:09-MD-02036-JLK**

IN RE:  CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2015, I served the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the forgoing document is being served this day either by Notice of Electronic filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

/s/David M. Jolley

David M. Jolley (*pro hac vice*)
(djolley@cov.com)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, CA, 94111
Telephone: (415) 591-6000
Facsimile: (415) 591-6091

1