UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:
FIRST TRANCHE ACTIONS

*Dolores Gutierrez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23685-JLK
D. Or. Case No. 3:09-cv-01239-ST

*Martinez v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23834
D.N.M. Case No. 6:09-cv-01072-GBW-ACT

*Zankich v. Wells Fargo Bank, N.A.*
S.D. Fla. Case No. 1:09-cv-23186-JLK
W.D. Wash. Case No. C-08-1476-RSM

## ORDER DENYING MOTION TO DISMISS ALL CLAIMS OF UNNAMED CLASS MEMBERS IN FAVOR OF ARBITRATION

**THIS CAUSE** is before the Court upon the Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") Motion to Dismiss All Claims of Unnamed Class Members in Favor of Arbitration (DE 4182), filed June 10, 2015. The Court is fully briefed in the matter and proceeds having had the benefit of oral argument.[1] For the reasons stated below, the Court finds that Wells Fargo waived

---

[1] On August 9, 2016, the Court heard oral argument on Wells Fargo's motion (DE 4182), Plaintiffs' response (DE 4295), Wells Fargo's reply (DE 4300), and Plaintiffs' Notice of Supplemental Authority and Wells Fargo's response thereto (DE 4305, 4306).

any rights it had to demand arbitration as to the unnamed class members, and that Wells Fargo's motion is untimely. The motion is denied.

## I. RELEVANT BACKGROUND

### *Wells Fargo's Arbitration Clause*

Wells Fargo's Consumer Account Agreement ("CAA") included an arbitration clause. *See* DE 4182 at 2-4. While the exact language of the clause varied somewhat over time, it has always been permissive rather than mandatory, allowing either party to request arbitration within a reasonable time. *E.g., id.* ("Either you or the Bank may require the submission of a dispute to binding arbitration at any reasonable time notwithstanding that a lawsuit or other proceeding has been commenced."); *Gutierrez v. Wells Fargo Bank*, 704 F.3d 712, 720 (9th Cir. 2012) (noting that Wells Fargo's permissive "clause stands in contrast to the mandatory arbitration provision found in many consumer contracts, such as the provision in *Concepcion*").

### *Procedural History*

These three class actions were filed in 2008 and 2009. This MDL was created in June 2009, with the support of Wells Fargo. *See* Wells Fargo Response to Motion to Vacate (advocating all Wells Fargo actions should be centralized), JPML DE 40 at 2-3. The initial "tranche" of defendant banks, which included Wells Fargo and Wachovia,[2] argued that having an MDL court handle these matters would "promote judicial efficiency and prevent the possibility of conflicting rulings." *E.g.*, Wachovia Response to Motion to Transfer, JPML DE 7 at 5.

At an October 2009 status conference, counsel for Wells Fargo began expressing concerns about litigating multiple cases in this MDL. *See* Oct. 22, 2009 Status Conf. Transcript,

---

[2] Wells Fargo and Wachovia merged in 2008, and they are represented by the same counsel in this MDL.

DE 124 at 19-20. The parties and the Court agreed to streamline the proceedings by consolidating arbitration motions with all other motions to dismiss. On November 6, 2009, the Court directed Wells Fargo to file, by no later than December 8, 2009, all "merits and non-merits motions directed to" the complaints, including motions to compel arbitration. DE 134 at 7-8). In response, Wells Fargo did not invoke arbitration as to the Plaintiffs, nor did it do anything to notify the parties and Court that it intended to move for arbitration as to the class if and when the class was certified. Instead, Wells Fargo joined several other banks to file an Omnibus Motion to Dismiss, which not only sought adjudication of the claims on their merits, but also specifically noted that these banks were *not* among those seeking arbitration. *See* DE 217 at 6 n.2. The Court mostly denied the banks' motion to dismiss on March 11, 2010. DE 305.

Even though it gave clear direction in its November 6, 2009 Order that any arbitration demands were to be made by December 8, 2009, the Court afforded Wells Fargo a second formal opportunity to demand arbitration after ruling on dismissal. *See* DE 360 at 2-3. In response, Wells Fargo specifically informed the Court that it would *not* pursue arbitration.[3] DE 390; *see also Garcia v. Wachovia Corp.*, 699 F.3d 1273, 1276 (11th Cir. 2012).

On June 4, 2010, Wells Fargo filed its answer and affirmative defenses. DE 548, 549. Soon thereafter, the Court opened discovery and established litigation deadlines. DE 463, 891. Substantial litigation ensued, during which Wells Fargo sought a victory on the merits, and the parties engaged in extensive discovery, the nature and scope of which reflected the parties' understanding that this was a class action. As the Eleventh Circuit summarized in *Garcia*:

---

[3] Wells Fargo included a vague "reservation of rights" as to unnamed class members, but did not state that it would invoke arbitration against the unnamed class members if and when the class was certified. DE 390.

> For more than a year, the parties prepared their cases for trial. They engaged in extensive discovery: they served and answered interrogatories, produced approximately 900,000 pages of discovery documents, and took approximately 20 depositions. The parties also litigated several motions before the district court.

*Garcia*, 699 F.3d at 1276; *see also* Order Denying Arb., DE 2224 at 5 (summarizing the "thousands of hours" spent by the parties litigating, as well as the substantial time spent by the Court reviewing briefing, holding hearings, and issuing orders; and finding that if the bank had filed a timely arbitration motion, "very little of this judicial effort would have been expended").

On April 29, 2011, Wells Fargo changed course and filed a motion to compel arbitration as to the named Plaintiffs. DE 1384.[4] April 2011 was the first time Wells Fargo invoked arbitration as to any Plaintiff in these cases, which was: (a) after both deadlines set by the Court for Wells Fargo to file any arbitration motions; and (b) after the parties and the Court had expended enormous amounts of time and resources on litigation and discovery and preparing the case for trial. Nevertheless, Wells Fargo argued its motion was timely because, prior to *Concepcion*, an arbitration motion would have been futile. This Court (and subsequently the Eleventh Circuit) rejected this argument and found that Wells Fargo, because of its own strategic litigation decisions and conduct, waived any right it may have had to compel arbitration as to the Plaintiffs. DE 2224 at 5-9; *Garcia*, 699 F.3d at 1277-80. Wells Fargo's untimely motion delayed the progress of this case by approximately a year-and-a-half.

Upon return to this Court in 2012, Wells Fargo again invoked the litigation machinery for several additional months. *See, e.g.*, DE 3191, 3193, 3194 (agreeing to entry of revised scheduling order for discovery and class certification deadlines); 3283, 3284, 3285, 3286, 3288,

---

[4] Wells Fargo's motion referenced its arbitration rights as to unnamed class members, but, again, did not state that the Bank would move to compel arbitration as to the unnamed class members if and when the class was certified. DE 1384 at 10 n.3).

3289, 3290 (opposing Plaintiffs' amended motions for class certification and moving to strike certain evidence). In March 2013, Wells Fargo filed an opposition to Plaintiffs' class certification motion along with what the Bank characterized as a "conditional motion" to compel arbitration as to the unnamed class members. DE 3291. Wells Fargo explained its "conditional motion" as follows:

> While the Absent Class Members are not yet part of this litigation, and are therefore not currently subject to this Court's jurisdiction…this will change if this Court certifies one or more classes in response to plaintiffs' pending motion for class certification. Wells Fargo accordingly makes this arbitration motion at this time so that if the Court does certify one or more classes in these cases, it can address the arbitration obligation of the Absent Class Members at the first possible moment.

DE 3291 at 1. On April 5, 2013, the Court denied Wells Fargo's conditional motion to compel arbitration. DE 3415. Adjudication of Plaintiffs' class certification motion was stayed pending Wells Fargo's appeal regarding its conditional motion. DE 3501.

On February 10, 2015, the Eleventh Circuit vacated on limited grounds this Court's ruling on Wells Fargo's conditional motion, without resolving whether Wells Fargo waived its arbitration rights as to the unnamed class members. Specifically, the Eleventh Circuit held that, because a class had not yet been certified, this Court "lacked jurisdiction to rule on the arbitration obligations of the unnamed putative class members," and thus any such ruling constituted an "impermissible advisory opinion." *Spears-Haymond v. Wells Fargo Bank, N.A.*, 780 F.3d 1031, 1037, 1039 (11th Cir. 2015). The Eleventh Circuit further held the named Plaintiffs lacked third-party standing to advance waiver or other arguments against arbitration on the unnamed class members' behalf. *Id.* at 1038-39. Contrary to Wells Fargo's suggestions, *Spears-Haymond* did not settle the issue as to whether Wells Fargo waived its arbitration rights with respect to the unnamed class members. To wit, in *dicta*, the Eleventh Circuit stated, "We can conceive of no reason why the unnamed putative class members could not seek preclusive

effect for Wells Fargo's waiver of its right to compel arbitration of their own accord if and when they become part of the case." *Id.* at 1039. Nor did it hold, as Wells Fargo has implied, that the Bank's conduct prior to class certification (or prior to moving for arbitration as to the named Plaintiffs in 2011), is irrelevant to that inquiry.[5] The Eleventh Circuit remanded for further proceedings. *Id.*

On remand, the Court granted Plaintiffs' pending class certification motion. DE 4181. Wells Fargo then filed the current motion to compel arbitration on June 10, 2015.

## II. DISCUSSION

*Waiver*

Plaintiffs argue, and this Court agrees, that Wells Fargo waived any rights it had to demand arbitration as to the unnamed class members. The Eleventh Circuit has set forth the following test for waiver of arbitration rights:

> "First, [courts] decide if, under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315-16 (11th Cir. 2002) (internal quotation marks omitted). A party acts inconsistently with the arbitration right when the party "substantially invokes the litigation machinery prior to demanding arbitration." *S & H Contractors*, 906 F.2d at 1514 (internal quotation marks and alterations omitted). "[S]econd, we look to see whether, by [acting inconsistently with the arbitration right], that party has in some way prejudiced the other party." *Ivax Corp.*, 286 F.3d at 1316 (internal quotation marks omitted). To determine whether the other

---

[5] *See In re Cox*, 790 F.3d 1112, 1119 (10th Cir. 2015) (noting that "*Spears-Haymond* did not decide whether the defendant may compel arbitration against the absent class members if a class is eventually certified. It held only that such a question was not justiciable until certification"). The panel in *Spears-Haymond* did note that the issue of whether Wells Fargo had waived as to the named Plaintiffs is not necessarily the same as whether it has waived with respect to the class. *Spears-Haymond*, 780 F.3d at 1038 n.9. It did not suggest, however, that any conduct which supported the finding of waiver as to Plaintiffs cannot also weigh in favor of finding waiver as to the class. Consistent with *Spears-Haymond*, this Court does not find that Wells Fargo's waiver as to the named Plaintiffs necessarily constitutes a waiver as to the class; rather, this Court evaluates waiver as to the class members in light of the full circumstances of this litigation and Wells Fargo's conduct.

party has been prejudiced, "we may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process." *S & H Contractors*, 906 F.2d at 1514.

*Garcia*, 699 F.3d at 1277. Applying this test to the facts and circumstances here, the Court finds waiver.

Wells Fargo acted inconsistently with its arbitration rights in multiple respects. A party ordinarily waives the right to arbitrate if it "'substantially invok[es] the litigation machinery' prior to demanding arbitration." *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.* 906 F.2d 1507, 1514 (11th Cir. 1990) (quoting *E.C. Ernst, Inc. v. Manhattan Constr. Co.*, 559 F.2d 268, 269 (5th Cir. 1977)). As summarized above, Wells Fargo extensively and deliberately invoked the litigation machinery prior to making any arbitration demand in these cases, requiring the parties and the Court to expend enormous amounts of time and resources. *See also Garcia*, 699 F.3d at 1277-78 (finding that Wells Fargo's activities here were "far more substantial" than the litigation conduct in *S & H*, where the defendant was found to have waived arbitration). The Bank's conduct reflects a deliberate strategy on its part to try to earn through litigation a complete victory affecting the rights, not only of the few named Plaintiffs, but of the entire class.

Wells Fargo also acted inconsistently with its arbitration rights by twice declining to demand arbitration by clear deadlines set by the Court. DE 134, 360. In ordering those deadlines, the Court did not make any exceptions. *Id.* The defendant banks that sought arbitration in accordance with those deadlines eventually succeeded, thus avoiding thousands of hours of toil for the parties and counsel in those cases as well as the Court and its staff.

Wells Fargo suggests that its pre-certification conduct should be ignored for purposes of the current motion. The Court disagrees. In analyzing the question of waiver here, it is appropriate to consider the context of the entire litigation. *See, e.g., In re Citigroup, Inc.*, 376 F.3d 23, 28 (1st Cir. 2004) (holding that all litigation activities since the filing of the original

complaint were relevant to a class member waiver analysis, and noting that "we must evaluate this argument in the context of the entire litigation, not a part of it"); *In re Cox*, 790 F.3d 1112, 1115 (10th Cir. 2015) (finding defendant waived arbitration rights as to class based, in part, on its pre-certification conduct); *Kingsbury v. U.S. Greenfiber, LLC*, 2012 WL 2775022, *6-7 (C.D. Cal. June 29, 2012) (same).

Since the inception of these cases, Wells Fargo has known they were styled as class actions and that the named Plaintiffs and unnamed class members were subject to permissive arbitration clauses. Wells Fargo nevertheless deliberately chose to pursue a strategy of litigation. Any suggestion that the Bank's extensive invocation of the litigation machinery prior to class certification could only have been concerned with the few named Plaintiffs cannot be squared with the nature and scope of the litigation and discovery conducted, and is rejected. As the Court and parties are well aware, these cases have been litigated throughout their duration as a major class action, not as a claim over a few hundred dollars of Plaintiffs' overdraft fees. Although the unnamed class members obtained official "party" status only when the certification order was entered, the class claims have driven these cases since they were filed, and Wells Fargo's activities have been geared toward defeating both the claims of the named Plaintiffs and those of the unnamed class members. Unquestionably, the vast bulk of litigation activity would not have occurred if only the modest claims of Plaintiffs were at stake.

The defendant in *Kingsbury* advanced a similar argument as Wells Fargo does here. After the court certified a class in *Kingsbury*, defendant moved to compel arbitration against the named plaintiff and the absent class members. 2012 WL 2775022 at *1-2. Although it had voluntarily litigated the case for years, defendant argued that it could not have asserted arbitration earlier because the class members had only recently been made parties. *Id.* at *6. The

court rejected this argument, noting that it "ignores the realities of class-action litigation" and was undermined by the fact that defendant knew since the inception of the case that the rights and interests of both the named plaintiff and the class were at stake. *Id.* As the *Kingsbury* court explained:

> [T]o accept this argument would be to condone gamesmanship in the class certification process. A defendant could wait in the weeds and delay asserting its arbitration rights. It could file motions to dismiss, litigate the named plaintiff's legal theories, and oppose class certification motions. If and when a class is finally certified, the defendant could simply assert its arbitration rights and defeat certification of the previously-certified class. In the interests of the fair and efficient administration of justice, the Court cannot accept [defendant's] position.

*Id.* at *7.[6]

Likewise, here, Wells Fargo has known since 2008 that this is a class litigation, and it chose to invoke the litigation machinery for years before ever asserting its arbitration rights. Among other things, Wells Fargo moved to dismiss the claims in their entirety, conducted discovery to undermine Plaintiffs' legal theories, and moved to exclude the opinions of Plaintiffs' experts. Under the circumstances, it would be unfair, and fundamentally at odds with the principles underlying the Federal Arbitration Act, to permit Wells Fargo to effectively "wait in the weeds" and invoke arbitration, after years of litigation, now that the alternate path the

---

[6] *Accord Elliott v. KB Home North Carolina, Inc.*, 752 S.E.2d 694, 700 (N.C. Ct. App. 2013) (finding waiver as to class members because the defendant "had knowledge that the named Plaintiffs were litigating the Claims as a class action from the outset and were incurring substantial costs while doing so"); *Tennyson v. Santa Fee Dealership Acquisition II, Inc.*, 364 P.3d 1273, 1279 (N.M. Ct. App. 2015) (finding waiver as to class members because the defendant availed itself of "discovery rules that might not otherwise be available in arbitration" and "accessed judicial processes by filing multiple dispositive motions below" despite the fact that its arbitration clause was in effect from the inception of the litigation"); *Morgan v. AT&T Wireless Servs.*, 2013 WL 5034436, at *7 (Cal. Ct. App. Sept. 13, 2013) (holding the "critical focus" in the waiver inquiry to be defendant's litigation conduct and that defendant's pursuit of pre-certification class discovery "was manifestly incompatible with a desire to engage in arbitration as to the named plaintiffs *and* the putative class members") (emphasis in original).

Bank chose did not turn out as it had hoped. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1749 (2011) (one of the FAA's central purposes is to encourage efficient and speedy dispute resolution); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220 (1985) (recognizing that "the costliness and delays of litigation . . . can be largely eliminated by [] arbitration"). This logic applies with equal force to the class, as it did to the named Plaintiffs. *See Garcia*, 699 F.3d at 1277.

Indeed, Wells Fargo's delayed attempt to invoke arbitration, if successful, would render the extensive resources spent to date a complete waste, resulting in gross inefficiency and also conflicting with one of the most fundamental tenets underlying class action practice. *E.g., American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553 (1974) (noting that principal purpose behind Rule 23 is to promote "efficiency and economy of litigation").

Having made its choice, Wells Fargo cannot simply reverse course after failing to achieve through litigation the sweeping victory it had hoped to achieve. Such gamesmanship is improper and contrary to the interests of the fair and efficient administration of justice. *Kingsbury*, 2012 WL 2775022 at *6-7; *Jones Motor Co., Inc. v. Chauffeurs, Teamsters and Helpers Local Union No. 633*, 671 F.2d 38, 43 (1st Cir. 1982) (Breyer, J.) ("to require that parties go to arbitration despite their having advanced so far in court proceedings before seeking arbitration would often be unfair, for it would effectively allow a party sensing an adverse court decision a second chance in another forum"); *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995) (arbitration must not be used as a strategy to manipulate the legal process and play "heads I win, tails you lose").

Wells Fargo's argument that it could not have waived its rights because the Court could not rule as to the unnamed plaintiffs before certification is rejected. First of all, it has already

been established that Wells Fargo could have moved to compel arbitration at the outset as to the named Plaintiffs (*see Garcia*, 699 F.3d at 1279-80), which if successful would have had the practical effect of extinguishing the unnamed class members' claims.[7] Wells Fargo also might have, at the outset, put the parties and the Court on notice—through filing a conditional motion, like the one the Bank ultimately filed years later in 2013, or some other clear statement of its intent—that it intended to request arbitration as to the unnamed class members if and when the class was certified.[8] Had Wells Fargo invoked arbitration, very little of the enormous resources the parties and the Court have expended in this litigation would have been expended. Instead, Wells Fargo made the deliberate choice to pursue litigation instead of arbitration. Its decision and corresponding conduct over the following years were inconsistent with an intent to arbitrate against the class.

Wells Fargo argues it provided notice of its intent in its Answers (DE 548, 549) and in a 2010 court filing (DE 390). However, the loosely worded "reservation of rights" in these filings did not provide unambiguous notice that the Bank intended to invoke its arbitration rights, and does not excuse the Bank's subsequent (and extensive) litigation activities that were inconsistent with such rights. *In re Citigroup*, 376 F.3d at 27 (finding that litigation activities which occur after a defendant's mention of an arbitration defense but before motion to compel are properly

---

[7] Once again, it should not be forgotten that several defendant banks in this MDL successfully moved to compel arbitration as to individual plaintiffs at the outset, resulting in a full dismissal of the claims–including class claims–pending against them. *E.g.*, *Barras v. Branch Banking & Trust Co.*, 685 F.3d 1269 (11th Cir. 2012); *Hough v. Regions Fin. Corp.*, 672 F.3d 1224 (11th Cir. 2012); *Buffington v. SunTrust Banks, Inc.*, 459 Fed. Appx. 855 (11th Cir. 2012).

[8] Wells Fargo's suggestion that it could not possibly have expressed its intent to move as to the unnamed class members until those class members achieved "party status" is directly undercut by Wells Fargo's own conduct in filing its "conditional motion" to compel as to the unnamed plaintiffs before the class was certified. DE 3291.

considered in waiver inquiry). The Court finds that Wells Fargo's delay in seeking to invoke arbitration resulted solely from its tactical decisions regarding how it wanted to litigate this case.

The certification of the class does not undo the Bank's prior strategic decisions and conduct. The procedural device of class certification does not create a blank slate that would allow the Bank to pivot and take a divergent position. And while a defendant's waiver of its arbitration rights can be nullified in certain limited circumstances—*e.g.*, where, post-waiver, the plaintiff materially changes the scope or theory of the plaintiff's claims—no such circumstances exist here.[9]

Moreover, the Court finds that significant prejudice would result if Wells Fargo were permitted to change course and invoke arbitration at this late stage. The Eleventh Circuit has recognized at least two types of prejudice that can support a finding of waiver: (1) "'where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate[;]'"[10] and (2) where "'[t]he use of pre-trial discovery procedures by a party seeking arbitration may sufficiently prejudice the legal position of an

---

[9] *See, e.g., Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1200-03 (11th Cir. 2011) (defendant's waiver nullified where post-waiver amended complaint "greatly broadened the potential scope of this litigation by opening the door to thousands – if not tens of thousands – of new class plaintiffs not contemplated in the original class definition"); *Collado v. J&G Transp., Inc.*, -- F.3d ---, 2016 WL 1594581, at *3-4 (11th Cir. Apr. 21, 2016) (defendant's waiver of the right to arbitrate FLSA claim did not "extend to the state law claims that were pleaded for the first time after J&G had litigated to the point of waiver the FLSA claim."). Here, the class definition and the claims and legal theories asserted in these cases have not materially changed since 2008.

[10] *Garcia*, 699 F.3d at 1278 (quoting *Morewitz v. W. of Eng. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir.1995)); *see also S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990) (in evaluating waiver, courts "may consider the length of delay in demanding arbitration and the expense incurred by that party from participating in the litigation process").

opposing party so as to constitute a waiver of the party's right to arbitration.'"[11] Both are present here.

First, the Plaintiffs and counsel for the class (as well as the Court) expended substantial resources and incurred substantial costs litigating on behalf of both the named Plaintiffs and the unnamed class members before Wells Fargo ever invoked its arbitration rights, expenditures which would not have been incurred had Wells Fargo timely invoked its arbitration rights. Wells Fargo's suggestion that these expenditures are irrelevant because they were ostensibly borne by the named Plaintiffs ignores the realities of class litigation:

> The reality of class-action litigation requires the named Plaintiffs to incur expenses litigating the Claims on behalf of the entire class, which the named Plaintiffs in this case have done for more than three years. Allowing [the defendant] to compel arbitration with respect to the unnamed class members would render the named Plaintiffs' efforts pursuing the class Claims meaningless. [The defendant] had knowledge that the named Plaintiffs were litigating the Claims as a class action from the outset and were incurring substantial costs while doing so.

*Elliott*, 752 S.E.2d at 700; *see also In re Citigroup*, 376 F.3d at 28 ("When a defendant has failed to timely invoke its rights, and during that delay, the litigation has proceeded into discovery, it cannot, particularly in the context of a class action, claim that the class members subject to arbitration will not suffer prejudice."); *In re Cox*, 790 F.3d at 1118 (considering expenses incurred by the named plaintiff in evaluating waiver as to class).

Second, the extensive discovery Wells Fargo obtained (which it could not have obtained through arbitration) would prejudice the legal position of the unnamed class members. Among other things, Wells Fargo conducted extensive discovery of class damages expert Arthur Olsen, including written production requests and a lengthy deposition. *See* DE 3283-10 (excerpts from

---

[11] *Garcia*, 699 F.3d at 1278 (quoting *Stone v. E.F. Hutton & Co.*, 898 F.2d 1542, 1543 (11th Cir. 1990)).

Olsen deposition); DE 3286 at 3 (Wells Fargo admitting Olsen produced work product prior to his deposition). During this discovery, Wells Fargo was informed as to how its own data could be programmatically used to calculate each class member's damages. *See generally* DE 3283-10. This discovery, which would not have been available in arbitration, would obviously be useful in any future arbitration proceedings against the class members. Wells Fargo also sought information and documentation regarding the evidence upon which Plaintiffs will rely to prove their claims. *See, e.g.*, Wells Fargo's Requests for Production No. 24 (requesting "[a]ll Documents that You intend to use or rely on to support Your claims in this action"). The class members would rely on similar proof. Wells Fargo's litigiousness prejudices the interests of the unnamed class members in the same way the Eleventh Circuit declared it prejudiced the named Plaintiffs. *Garcia*, 699 F.3d at 1279; *see also, e.g., In re Cox*, 790 F.3d at 1118 (finding prejudice to the class members because the defendant "'made ample use of every discovery device available'") (quotation omitted); *In re Citigroup*, 376 F.3d at 28 (same).

The Court further notes that if Wells Fargo were permitted to seek arbitration at this late stage, the unnamed class members would be significantly prejudiced by having had the adjudication of their claims delayed for years while Wells Fargo was "waiting in the weeds" in this manner. Under established Supreme Court precedent, the unnamed class members were permitted to rely on the continued existence of these class actions, during that time, in not pursuing their own individual claims. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 552–54 (1974); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

Accordingly, for the foregoing reasons, the Court finds that Defendant waived any rights it had to compel arbitration as to the unnamed class members.

### *Timeliness*

As an additional basis for denying Wells Fargo's current motion, Plaintiffs argue that Wells Fargo's motion is untimely. The Court agrees. Wells Fargo's invocation of its arbitration rights unquestionably came well after the 2009 and 2010 deadlines set by the Court for filing any arbitration motions. Courts have the inherent authority to adopt arbitration-related deadlines. *See Garcia*, 699 F.3d at 1277. Such deadlines further the efficiency-related goals of the FAA. *Concepcion*, 131 S. Ct. at 1748 (Congress intended for the FAA "to facilitate streamlined proceedings" and promote "the efficient and expeditious resolution of claims"). The authority of the Court to set deadlines and otherwise efficiently manage the litigation of cases is particularly critical in MDL proceedings. Here, this Court twice entered orders commanding defendants, including Wells Fargo, to assert any arbitration rights. DE 134, 360. These directives were not restricted solely to the named Plaintiffs. *Id.* Wells Fargo twice declined to move for arbitration. In response to the second order, Wells Fargo even confirmed that it would not seek to join the currently pending motions to compel arbitration. DE 390; *see also* DE 2224 at 5 (holding that Bank "affirmatively decided not to assert arbitration by the deadlines established by the Court").

This Court set the deadlines in question for a reason—to manage these proceedings and facilitate their efficient litigation. The circumstances of Wells Fargo's belated invocation of its arbitration rights underscore why such deadlines were necessary and appropriate. It would make little sense for the parties and the Court to spend years, and expend enormous resources engaging in extensive litigation, discovery, and expert practice, and to litigate class certification, if Wells Fargo was going to render those efforts a nullity by invoking arbitration as to the class following certification. Thus, the Court required the defendant banks, including Wells Fargo, to make their intentions regarding arbitration clear at the early stage of the litigation. That the Court may not

have been able to rule on a motion to compel as to the unnamed class members at that stage of the proceedings, does not mean this Court lacked the authority to effectively manage this litigation or to require the parties to make their intentions regarding the litigation clear. Wells Fargo declined to invoke arbitration, either as to the named Plaintiffs or the class, by the deadlines set, and its current motion is untimely.

Wells Fargo's motion is also untimely under the terms of its own permissive arbitration clause. *E.g., Stolt-Nielsen, S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("we have said on numerous occasions that the central or 'primary' purpose of the FAA Is to ensure that 'private agreements to arbitrate are enforced according to their terms'") (citation omitted). Under the plain language of Wells Fargo's clause, in order for a party to invoke its arbitration rights, it must make a timely request to arbitrate. As discussed above, Wells Fargo's request here came only after the Bank had previously chosen litigation instead of arbitration and after years of litigation and discovery affecting the Plaintiffs and the class.

### III. CONCLUSION

Accordingly, it is **ORDERED, ADJUDGED, and DECREED** that Defendant Wells Fargo's Motion to Dismiss All Claims of Unnamed Class Members in Favor of Arbitration **(DE 4182)** be, and the same is hereby, **DENIED.**

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 17th day of October, 2016.

*[signature]*
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF FLORIDA

cc: All counsel of record