# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

#### CASE NO. 1:09-MD-02036-JLK

---

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

---

THIS DOCUMENT RELATES TO:

*Michael Dasher v. RBC Bank (USA),*
*predecessor in interest to PNC Bank, N.A.*

*S.D. Fla. Case No. 1:10-CV-22190-JLK*

---

## PLAINTIFFS' AND CLASS COUNSEL'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND FOR CERTIFICATION OF SETTLEMENT CLASS, AND INCORPORATED MEMORANDUM OF LAW

Plaintiffs and Class Counsel respectfully move for Preliminary Approval of the Settlement

Agreement and Release attached as Exhibit A ("Settlement" or "Agreement"), which will resolve

all claims against PNC Bank, N.A. ("PNC"), successor in interest to RBC Bank (USA) ("RBC"),

in the Action.[1]  A copy of the Settlement Agreement is attached as Exhibit A.  The Court should

grant Preliminary Approval because the Settlement provides substantial relief for the Settlement

Class and the terms of the Settlement are well within the range of reasonableness and consistent

---

[1] All capitalized defined terms used herein have the same meanings ascribed in the Agreement. References to the party to this Settlement Agreement will be to PNC, as RBC no longer exists as a corporate entity.  References to historical facts alleged in the litigation will be to the particular entity (PNC or RBC) involved.  References to proceedings in the litigation will be to RBC, even after it was merged into PNC, because RBC was the named party throughout the litigation and the litigation involved RBC's overdraft fee policies.

with applicable case law.  Indeed, the Settlement – which secures Seven Million Five Hundred Thousand and 00/100 Dollars ($7,500,000.00), inclusive of all attorneys' fees, costs and expenses awarded to Class Counsel and a Service Award to the Class Representative, plus PNC's payment of all fees, costs, charges and expenses of the Notice Administrator and Settlement Administrator in connection with the Settlement – is an excellent result for the Settlement Class in view of the risks and uncertainties of continued litigation in light of prevailing law.  *See* Joint Declaration of Aaron Podhurst, Bruce S. Rogow and Robert C. Gilbert ¶¶ 2 - 4 attached hereto as Exhibit B ("Joint Decl.").  The Settlement satisfies all Eleventh Circuit criteria for Preliminary Approval and its terms are also consistent with numerous other settlements that received final approval from this Court as part of MDL 2036.

Accordingly, Plaintiffs and Class Counsel respectfully request that the Court take the following initial steps in the settlement approval process: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e); (3) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices attached hereto as Exhibits C - E; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint as Class Representative the individual identified in paragraph 24 of the Agreement; (6) appoint as Class Counsel and Settlement Class Counsel the law firms and attorneys listed in paragraphs 22 and 51 of the Agreement, respectively; (7) stay the Action against RBC pending Final Approval of the Settlement; and (8) schedule a Final Approval Hearing no sooner than the week of April 13, 2020.  A [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class is attached hereto as Exhibit F.

I.     **INTRODUCTION**

In 2010, Plaintiffs sued on behalf of themselves and all others similarly situated who incurred Overdraft Fees as a result of RBC's practice of posting Debit Card Transactions to an Account in order from highest to lowest dollar amount ("High-to-Low Posting"). Plaintiffs alleged that RBC systemically engaged in High-to-Low Posting of Debit Card Transactions to maximize the Bank's Overdraft Fee revenues. According to Plaintiffs, RBC's practices violated the Bank's contractual and good faith duties and the North Carolina consumer protection statute, were substantively and procedurally unconscionable, and resulted in conversion and unjust enrichment. Joint Decl. ¶ 5.

The Action involved sharply opposed positions on several fundamental legal questions, including the enforceability of mandatory individual arbitration provisions contained in the operative RBC and PNC account agreements and whether RBC breached its duty of good faith and fair dealing to its customers when it engaged in High-to-Low Posting. Joint Decl. ¶ 3. RBC consistently argued that the relevant Account agreements expressly authorized it to engage in High-to-Low Posting, that the claims brought against it in the Action were subject to mandatory individual arbitration, and that the state law claims for relief were preempted by federal and/or applicable state law. *Id.* at ¶ 6.

The Action was litigated for more than eight years. Joint Decl. ¶¶ 8 - 23. The Parties engaged in significant motion practice and formal discovery, including eight depositions and the production of more than 145,000 pages of documents and electronically stored information. *Id.* at ¶¶ 9-10, 13 - 23, 54. At the time the Parties reached the Settlement, a contested motion for class certification was pending decision before the Court. *Id.* at ¶¶ 23, 54. Settlement Class Counsel's expert completed an exhaustive analysis of RBC's electronic customer data to identify all members of the Settlement Class who sustained harm and the amount of their damages. *Id.* at ¶ 24.

3

Settlement discussions initially began in 2018.  Joint Decl. ¶ 24.  Settlement Class Counsel and PNC participated in a settlement conference in late January 2019.  *Id*. at ¶ 25.  On that date, they reached an agreement in principle concerning the material provisions of the Settlement.  *Id*.  On February 5, 2019, Settlement Class Counsel and PNC executed a Summary Agreement memorializing the material terms of the Settlement based on PNC's payment of $7,500,000.00, inclusive of all attorneys' fees, costs and expenses awarded to Class Counsel, and a Service Award to the Class Representative, plus PNC's payment of all costs associated with Notice and administration of the Settlement.  *Id*. at ¶ 2, 26.  Soon thereafter, they filed a Joint Notice of Settlement (DE # 4381) that requested a suspension of deadlines pending the drafting and execution of the Agreement; the Court granted the request on February 14, 2019 (DE # 4382).  Further discussions followed to address, *inter alia*, various issues relating to approval and implementation of the Settlement.  *Id*.  Once those issues were resolved, the Agreement was finalized and executed in October 2019.[2]

Under the Settlement, all eligible members of the Settlement Class who do not opt-out will automatically receive their *pro rata* share of the Settlement Fund.  Joint Decl. ¶¶ 28 - 30.  Settlement Class Members will not be asked to prove that they were damaged as a result of the Bank's High-to-Low Posting.  *Id*.  Settlement Class Counsel and their expert have used available RBC data to determine which RBC Account holders were harmed by High-to-Low Posting and will apply a formula detailed in paragraph 85 of the Agreement to calculate each Settlement Class Member's *pro rata* share of the Settlement Fund.  *Id*. at ¶¶ 24, 29.

---

[2] Plaintiff Stephanie Avery, who filed her own action and was named as a Plaintiff in the CAC, declined to participate in the Agreement and, therefore, is not one of the Parties to the Agreement, but is a member of the Settlement Class.  *See* Agreement at ¶ 41 n.2.

A testament to the reasonableness and fairness of the Settlement is the amount of the Settlement Fund in relation to the potential total recoverable damages.  Settlement Class Counsel negotiated a $7,500,000.00 Settlement, which represents approximately twenty-six percent (26%) of the most likely maximum recovery the Settlement Class could have achieved at trial.  Joint Decl. ¶ 52.  In addition to the $7,500,000.00 Settlement Fund, PNC will pay all fees and costs incurred in connection with the Notice Program and administration of the Settlement (Agreement ¶ 59), further increasing the total recovery.  *Id.*

Plaintiffs and Class Counsel now seek Preliminary Approval so they may notify the Settlement Class of the terms of the Settlement and provide them with an opportunity to opt out of or object to the Settlement.  For the reasons set forth herein, Plaintiffs and Class Counsel respectfully request that the Court grant Preliminary Approval.

## II.   STATEMENT OF FACTS

### A.   Factual Background.

Given its extensive role presiding over MDL 2036, the Court is familiar with the facts giving rise to Plaintiffs' claims and RBC's defenses.

#### 1.   Procedural History.

Plaintiffs sought monetary damages, restitution and declaratory relief from RBC, on behalf of themselves and all others similarly situated, who incurred Overdraft Fees as a result of RBC's practice of High-to-Low Posting of Debit Card Transactions.  Plaintiffs alleged that RBC systemically engaged in High-to-Low Posting of Debit Card Transactions to maximize the Bank's Overdraft Fee revenues.  According to Plaintiffs, RBC's practices violated the Bank's contractual and good faith duties and the North Carolina consumer protection statute, were substantively and procedurally unconscionable, and resulted in conversion and unjust enrichment.  Joint Decl. ¶ 5.

RBC denied all of Plaintiffs' allegations of wrongdoing.  RBC consistently argued that the claims brought against it were subject to mandatory individual arbitration, that the language in the relevant Account agreements expressly authorized the challenged High-to-Low Posting practices, and that the state law claims were preempted and/or barred by federal and/or state law.  Joint Decl. ¶ 6.

**B.      Class Counsel's Investigation**

Class Counsel devoted substantial time to investigating the potential claims against RBC. Class Counsel interviewed customers and potential plaintiffs to gather information about the Bank's conduct and its impact upon customers.  This information was essential to Class Counsel's ability to understand the nature of RBC's conduct, the language of the Account agreements, and potential remedies.  Joint Decl. ¶ 7.

**C.      The Course of Proceedings.**

On July 2, 2010, Plaintiff Michael Dasher filed *Dasher v. RBC Bank USA*, Case No. 1:10-CV-22190-JLK (S.D. Fla.) ("*Dasher*"), a class action complaint, in the United States District Court for the South District of Florida, alleging RBC's improper assessment and collection of Overdraft Fees due to High-to-Low Posting and seeking, *inter alia*, monetary damages, restitution and equitable relief.  (*See* Compl., Case No. 10-22190 (S.D. Fla.), ECF No. 1).  Joint Decl. ¶ 8.

On July 22, 2010, RBC moved to compel arbitration in *Dasher*.  (*See* Mot. to Compel Arbitration, Case No. 10-22190, ECF No. 5). On July 28, 2010, *Dasher* was transferred to MDL 2036 and thereafter assigned to the "Second Tranche" of cases. (*See* MDL Transfer Receipt, ECF No. 730; Joint Report re List of Cases in Second Tranche, ECF No. 1494 (May 18, 2011)).  On August 23, 2010, the Court denied RBC's motion to compel arbitration and stay litigation in *Dasher* on the ground that "the arbitration provision has the effect of deterring Plaintiff from bringing his claim and vindicating his rights." (Order Den. Mot. to Compel Arbitration, ECF No.

763, at 7; *In re Checking Account Overdraft Litig.*, 2010 WL 3361127, at *2 (S.D. Fla. Aug. 23, 2010). RBC timely appealed to the Eleventh Circuit. (*See* Def. RBC Bank (USA)'s Notice of Appeal, ECF No. 797).  Joint Decl. ¶ 9.

While the *Dasher* appeal was pending, the U.S. Supreme Court issued *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011). The Parties in *Dasher* jointly moved the Eleventh Circuit to vacate the Court's order denying arbitration and remand the case for reconsideration in light of *Concepcion*. The Eleventh Circuit granted the Parties' joint motion and *Dasher* returned to the Court on June 28, 2011. (*See* Order Granting Joint Mot. to Vacate and Remand, ECF No. 1670). Joint Decl. ¶ 10.

On July 9, 2010, Plaintiff Stephanie Avery filed *Avery v. RBC Bank USA*, Case No. 10-CVS-11527, ("*Avery*"), a class action complaint, in the General Court of Justice, Superior Court Division, Wake County, North Carolina, alleging RBC's improper assessment and collection of Overdraft Fees due to High-to-Low Posting and seeking, *inter alia*, monetary damages, restitution and equitable relief.  On August 12, 2010, *Avery*, the second-filed action, was removed to the Eastern District of North Carolina under Case No. 5:10-cv-329. (*See* Notice of Removal, Case No. 10-24382 (S.D. Fla.), ECF No. 1). Avery amended her complaint on August 26, 2010. (*See* Am. Compl., Case No. 10-24382, ECF No. 8).   Joint Decl. ¶ 11.

On September 16, 2010, RBC filed its motion to compel arbitration in *Avery*. (Mot. to Compel Arbitration & Mem. in Support, Case No. 10-24382, ECF Nos. 16-17).   Further proceedings in *Avery* were stayed pending a ruling by the Judicial Panel on Multidistrict Litigation on whether the action would be become part of MDL 2036. (Order Granting Mot. to Stay, Case No. 10-24382, ECF No. 21 (Oct. 4, 2010)).  On March 3, 2011, *Avery* was transferred to this Court and made part of MDL 2036. (MDL Transfer Receipt, ECF No. 1232).  Joint Decl. ¶ 12.

On June 20, 2011, the Court issued an Omnibus Order that included *Avery* within its ambit. (*See* Omnibus Order Administratively Closing Member Cases, ECF No. 1640, at 4). That order denied as moot all motions filed under the original case numbers (*see id.* at 5), which terminated RBC's motion to compel arbitration in *Avery*. On September 12, 2011, the Court issued its *Interim Scheduling Order Re Fifth Tranche Actions*, which assigned *Avery* to the Fifth Tranche. (*See* Interim Scheduling Order re Fifth Tranche Actions, ECF No. 1861, at 2). The Scheduling Order set a deadline for banks with actions in the Fifth Tranche to file motions to compel arbitration. (*See id.* at 3). Joint Decl. ¶ 13.

RBC's counsel and Plaintiffs' Coordinating Counsel in MDL 2036 agreed that RBC would file a coordinated motion to compel arbitration in *Dasher* and *Avery*. Thus, when the Court issued its *Interim Scheduling Order re Fifth Tranche Actions* and set the deadline for motions to compel arbitration, counsel agreed that RBC would file a motion to compel arbitration encompassing both *Dasher* and *Avery*, thereby putting both actions on the same procedural track. Joint Decl. ¶ 14.

On October 3, 2011, RBC renewed its motion to compel arbitration and stay litigation in *Dasher* and *Avery*. (Renewed Mot. to Compel Arbitration, ECF No. 1929). Following discovery on arbitrability requested by Plaintiffs' counsel and permitted by the Court (*see* Order Deferring Ruling on Mot. to Compel Arbitration, ECF No. 2191 (Dec. 5, 2011)), Plaintiffs opposed RBC's renewed motion to compel arbitration. Joint Decl. ¶ 15.

On January 11, 2013, the Court issued an order denying RBC's renewed motion to compel arbitration in *Dasher* and *Avery*. (Order Den. Mot. to Compel Arbitration, ECF No. 3162); *In re Checking Account Overdraft Litig.,* No. 09-2036, 2013 WL 151179 (S.D. Fla. Jan. 11, 2013). RBC timely appealed that order. (Def. RBC Bank (USA)'s Notice of Appeal, ECF No. 3164).   Joint Decl. ¶ 16.

On February 10, 2014, the Eleventh Circuit affirmed the Court's denial of RBC's renewed motion to compel arbitration pursuant to the RBC Agreement. *See Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014). The Eleventh Circuit denied RBC's motion for rehearing. The Eleventh Circuit granted RBC's motion to stay its mandate, pending the filing of a petition for certiorari. On June 20, 2014, RBC filed a petition for writ of certiorari with the U.S. Supreme Court, arguing that arbitration should have been compelled pursuant to the RBC arbitration clause. The Supreme Court denied certiorari on October 6, 2014. On October 20, 2014, the Eleventh Circuit remanded the case to the Court. Joint Decl. ¶ 17.

On November 10, 2014, the Consolidated Amended Complaint ("CAC") was filed. (Consolidated Am. Class Action Compl., ECF No. 4007). On December 5, 2014, RBC moved to compel arbitration of Plaintiff Dasher's amended claims in the CAC pursuant to the arbitration clause in PNC's 2013 amended account agreement. (Mot. to Compel Arbitration of Pl. Dasher's Individual Claims, ECF No. 4017). The Court denied that motion on August 21, 2015. (Order Den. Def's Mot. to Compel Arbitration, ECF No. 4210). RBC timely appealed that order. (Def. RBC Bank (USA)'s Notice of Appeal, ECF No. 4213). Joint Decl. ¶ 18.

On February 5, 2016, while the appeal was pending, the Court denied RBC's motion to dismiss Plaintiff Avery's individual claims. (Def. Mot. to Dismiss Pl. Avery's Individ. Claims, ECF No. 4018; Order Den. Def's Mot. to Dismiss, ECF No. 4284). RBC was not required to file its answer to Plaintiff Avery's individual claims until the Court resolved RBC's motion to dismiss or strike Plaintiff Avery's national class claims for lack of subject matter jurisdiction. (Order Grant. Jt. Mot. to Mod. Deadline to Ans. Pl. Avery's Claims, ECF No. 4286). Joint Decl. ¶ 19.

On July 5, 2016, while the appeal was pending, the Court denied RBC's motion to dismiss or strike Plaintiff Avery's putative national class claims for lack of subject matter jurisdiction.

(Def. Mot. to Dismiss or Strike Pl.'s Nat'l Class Claims for Lack of Subj. Matter Juris., ECF No. 4019; Order Den. Mot. to Dismiss or Strike Pl.'s Nat'l Class Claims for Lack of Subj. Matter Juris., ECF No. 4302). That order denied RBC's motion without prejudice to it raising the arguments again at the class certification stage. (ECF No. 4302 at 9).  On July 25, 2016, RBC answered Plaintiff Avery's claims and asserted affirmative defenses.  (Ans. and Aff. Def. of Def. to Pl. Avery's Claims in CAC, ECF No. 4307).  Joint Decl. ¶ 20.

On February 13, 2018, the Eleventh Circuit affirmed the Court's denial of arbitration on the ground that Plaintiff Dasher did not agree to arbitrate.  *See Dasher*, 882 F.3d at 1023-24. *Dasher* returned to the Court on March 14, 2018 and thereafter proceeded with *Avery* pursuant to the Court's scheduling orders.  (*See* Am. Scheduling Order, ECF No. 4223 (Sept. 22, 2015); Order Cancelling Pretrial Conf. and Modifying Deadlines, ECF No. 4334 (Mar. 22, 2017)).  On April 3, 2018, RBC answered Plaintiff Dasher's claims and asserted affirmative defenses. (Ans. and Aff. Def. of Def. to Pl. Michael Dasher's Claims in CAC, ECF No. 4348).  Joint Decl. ¶ 21.

On August 31, 2018, Plaintiffs moved for class certification.  (ECF No. 4364).  On October 10, 2018, RBC filed its opposition to class certification.  (ECF No. 4370).  On November 9, 2018, Plaintiffs filed their reply in support of class certification.   (ECF No. 4371).  Joint Decl. ¶ 22.

On December 12, 2018, the Court heard oral argument on the motion for class certification and reserved ruling.  The Court directed both sides to submit proposed orders within 30 days following receipt of the hearing transcript.  Joint Decl. ¶ 23.

D.    **Settlement Negotiations.**

Beginning in 2018, PNC and Settlement Class Counsel initiated preliminary settlement discussions.  The settlement discussions resulted in the production of certain confidential overdraft data by RBC to Settlement Class Counsel.  The overdraft data was analyzed by Settlement Class

Counsel's expert for the purpose of identifying the number of affected Accounts and the amount of damages sustained as a result of High-to-Law Posting.  Joint Decl. ¶ 24.

On January 22, 2019, Settlement Class Counsel and PNC participated in a settlement conference.  On that date, Settlement Class Counsel and PNC reached an agreement in principle concerning the material provisions of the Settlement.  Joint Decl. ¶ 25.

On February 5, 2019, Settlement Class Counsel and PNC executed a Summary Agreement memorializing the material terms of the Settlement.  On February 8, 2019, Settlement Class Counsel and PNC filed a Joint Notice of Settlement with the Court and requested a suspension of deadlines pending the drafting and execution of a final settlement agreement; the Court granted the request on February 14, 2019.  (ECF Nos. 4381, 4382).  Following further negotiations and discussions, the Parties resolved all remaining issues, culminating in the Agreement.  Joint Decl. ¶ 26.

### E.      Summary of the Settlement Terms.

The Settlement's terms are detailed in the Agreement.  The following is a summary of the material terms of the Settlement.

### 1.      The Settlement Class.

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.  The Settlement Class is defined as:

> All holders of a RBC Account who, from October 10, 2007 through and including March 1, 2012, incurred one or more Overdraft Fees as a result of RBC's High-to-Low Posting.

> Excluded from the Class are all former RBC and current PNC employees, officers and directors, and the judge presiding over this Action.

Agreement ¶ 56.

2.       **Monetary Relief for the Benefit of the Class.**

The Settlement requires PNC to deposit $7,500,000.00 into an Escrow Account within 14 days following Preliminary Approval.  Agreement ¶ 58.  That deposit will create the Settlement Fund.

Settlement Class Members do not have to submit claims or take any other affirmative step to receive relief under the Settlement.  As soon as practicable but no later than 150 days from the Effective Date, PNC and the Settlement Administrator will distribute the Net Settlement Fund to all eligible Settlement Class Members who do not opt out of the Settlement.  Agreement ¶¶ 87 - 95.  Payments to eligible Settlement Class Members who are Current Account Holders will be made by either by a credit to those Account Holders' Accounts or by mailed check in those circumstances where it is not feasible or reasonable to make the payment by a credit.  Agreement ¶ 92.  Eligible Settlement Class Members who are Past Account Holders will receive payments from the Settlement Fund by checks mailed by the Settlement Administrator.  Agreement ¶ 94.

Thus, all Settlement Class Members who experienced a Positive Differential Overdraft Fee will receive a *pro rata* distribution from the Net Settlement Fund.  Agreement ¶¶ 85, 87.  The Positive Differential Overdraft Fee analysis determines, among other things, which RBC Account holders were assessed additional Overdraft Fees that would not have been assessed if the Bank had used a chronological posting sequence or method for Debit Card Transactions instead of High-to-Low Posting, and how much in additional Overdraft Fees those Account holders paid.  The calculation involves a complex multi-step process described in detail in the Agreement. Agreement ¶ 85.

The Net Settlement Fund – which will be distributed *pro rata* among eligible Settlement Class Members who do not opt-out of the Settlement – is equal to the Settlement Fund plus any accrued interest and less: (a) the amount of the Court-awarded attorneys' fees, costs and expenses

to Class Counsel; (b) the amount of the Court-awarded Service Award to the Class Representative; (c) a reservation of a reasonable amount for prospective costs of Settlement administration that are not PNC's responsibility; and (d) all other costs and/or expenses incurred in connection with the Settlement that are expressly provided for in the Agreement or are approved by Settlement Class Counsel and PNC.  Agreement ¶ 88.

Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first Settlement Fund Payments are mailed by the Settlement Administrator, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Fund Payments.  Agreement ¶ 95.  Any residual funds remaining after that period will be distributed in accord with Section XIII of the Agreement.  Agreement ¶ 96.

### 3.  Class Release.

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will be deemed to have released the Released Parties from claims relating to the subject matter of the Action.  The detailed release language is found in Section XIV of the Agreement.

### 4.  The Notice Program.

PNC will pay all fees, costs and expenses of the Notice Administrator and the Settlement Administrator incurred in connection with the Notice Program.  Agreement ¶¶ 59, 75.

The Notice Program (Agreement, Section VIII) is designed to provide the best notice practicable, and it is tailored to take advantage of the information PNC has available about the Settlement Class.  The Notice Program is reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, class certification, the terms of the Settlement, Class Counsel's fee application and request for Service Award for the Class Representative, and their rights to opt-out of the Settlement Class or object to the Settlement, Class Counsel's fee

13

application, and/or the request for Service Award for the Class Representative. The Notice and Notice Program constitute sufficient notice to all persons entitled to notice. The Notice and Notice Program satisfy all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process. Joint Decl. ¶ 34.

The Notice Program is comprised of three different components: (1) Mailed Notice to all identifiable members of the Settlement Class; (2) Published Notice designed to reach those members of the Settlement Class for whom direct Mailed Notice is not possible or unsuccessful; and (3) Long Form Notice that will be available on the Settlement Website and via U.S. mail upon request. Agreement ¶¶ 69 - 73.

The Notice Program is designed to provide the Settlement Class with important information regarding the Settlement and their rights thereunder, including a description of the material terms of the Settlement; a date by which members of the Settlement Class may exclude themselves from or "opt out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement, Class Counsel's fee application and/or the request for Service Awards; the date of the Final Approval Hearing; and the address of the Settlement Website at which members of the Settlement Class may access the Agreement and other important documents and information. Agreement ¶¶ 65 - 68.

In addition to the information described above, the Long Form Notice will also describe the procedure members of the Settlement Class must use to opt out of or object to the Settlement, and/or to Class Counsel's fee application and/or to the request for Service Awards. Agreement ¶¶ 65 - 68. All opt-outs and objections must be postmarked by last day of the Opt-Out Period. *Id*.

In accord with Federal Rule of Civil Procedure 23(e)(5), for an objection to be considered it must include: the name of the Action; the objector's full name, address and telephone number;

an explanation of the basis upon which the objector claims to be is a member of the Settlement Class; state with specificity the grounds for the objection, and whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection known to the objector or his counsel; the number of times in which the objector has objected to a class settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed case; the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application; a copy of any orders related to or ruling upon counsel's or the firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five (5) years; any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity; the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection; and the objector's signature (an attorney's signature is not sufficient).  Agreement ¶ 68.

### (a)     <u>The Mailed Notice Program</u>

Within 28 days from the date that the Settlement Administrator receives the data files that identify the names and last known addresses of the identifiable members of the Settlement Class, the Settlement Administrator will run such addresses through the National Change of Address Database, and will mail to all such Settlement Class members postcards substantially in the form attached hereto as Exhibit C that contain the Mailed Notice (the "Initial Mailed Notice").

Agreement ¶ 70.  The Settlement Administrator will perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable.  Agreement ¶ 71.  No later than 70 days before the Final Approval Hearing, the Settlement Administrator will complete the Mailed Notice Program, which is composed on the Initial Mailed Notice and the re-mailing of Mailed Notice postcards to those Settlement Class members whose new addresses were identified as of that time through address traces (the "Notice Re-mailing Process").  Agreement ¶ 72.

### (b)    The Published Notice Program

The Notice Administrator will administer the Published Notice Program in the manner set forth in the Agreement, using the Published Notice substantially in the form attached hereto as Exhibit D.  Agreement ¶ 73.  The Published Notice Program will be completed no later than 70 days before the Final Approval Hearing.  *Id.*

### (c)    The Settlement Website and Toll-Free Hotline

The Settlement Administrator will establish a Settlement Website as a means for members of the Settlement Class to obtain notice of, and information about, the Settlement.  Agreement ¶ 54.  The Settlement Website will be established as soon as practicable following Preliminary Approval, but no later than before commencement of the Notice Program.  *Id.*  The Settlement Website will include hyperlinks to the Settlement; the Long-Form Notice substantially in the form attached hereto as Exhibit E; the Preliminary Approval Order; and such other documents as Settlement Class Counsel and counsel for PNC agree to post or that the Court orders be posted on the Settlement Website.  These documents will remain on the Settlement Website at least until Final Approval.  *Id.*

The Settlement Administrator will also establish and maintain an automated toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries and to

answer the questions of Settlement Class members who call with or otherwise communicate such inquiries.  Agreement ¶ 64(d).

    **5.**   <u>**Settlement Administration**</u>

  The Settlement Administrator's responsibilities include:

    a.    Obtaining name and address information (to the extent it is available) of members of the Settlement Class and verifying and updating the addresses received through the National Change of Address database, for the purpose of mailing the Mailed Notice, and later mailing distribution checks to Past Account Holder Settlement Class Members and Current Account Holder Settlement Class Members where it is not feasible or reasonable for PNC to make the payment by a credit to the Settlement Class Members' Accounts;

    b.    Establishing and maintaining a Post Office box for requests for exclusion from the Settlement Class;

    c.    Establishing and maintaining the Settlement Website;

    d.    Establishing and maintaining an automated and live operator toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries, and answering questions of Settlement Class Members who call communicate such inquiries;

    e.    Responding to any mailed inquiries from members of the Settlement Class;

    f.    Processing all requests for exclusion from members of the Settlement Class;

    g.    Providing weekly reports and, no later than five days after the end of the Opt-Out Period, a final report to Settlement Class Counsel and PNC that summarize the number of requests for exclusion received that week, the total number of exclusion requests received to date, and other pertinent information;

    h.    Interfacing with the Tax Administrator;

i.      At Settlement Class Counsel's request in advance of the Final Approval Hearing, preparing an affidavit to submit to the Court that identifies each member of the Settlement Class who timely and properly requested exclusion from the Settlement Class;

j.      Processing and transmitting distributions to Settlement Class Members from the Settlement Fund, instructing PNC as to the direct payments to be made to Current Account Holder Settlement Class Members (to the extent feasible) and repaying PNC from the Settlement Fund the aggregate amount of account credits that PNC provides to Current Account Holder Settlement Class Members;

k.      Providing at least bi-weekly reports and a final report to Settlement Class Counsel and PNC that summarize the activity since the prior reporting period, including but not limited to the number and dollar amount of all distributions, undeliverable mailed checks, efforts to re-issue and re-mail checks, and other pertinent information;

l.      Paying invoices, expenses and costs upon approval by Settlement Class Counsel and PNC, as provided in the Agreement; and

m.     Performing the duties of Escrow Agent as described in the Agreement, and any other Settlement-administration-related function at the instruction of Settlement Class Counsel and PNC, including but not limited to, verifying that Settlement Funds have been distributed as required by Section XII of the Agreement.  Agreement ¶¶ 63 - 64.

All fees and charges of the Settlement Administrator associated with administration of the Settlement will be paid by PNC and will not come out of the Settlement Fund.  Agreement ¶ 59.

**6.      <u>Settlement Termination</u>**

Either Party may terminate the Settlement by mutual agreement or if the Settlement is rejected or materially modified by the Court or by an appellate court.  Agreement ¶ 106.  PNC also has the right to terminate the Settlement if the number of Settlement Class members who timely

opt out of the Settlement equals or exceeds the number or percentage specified in the separate letter executed concurrently with the Agreement by PNC's counsel and Settlement Class Counsel. Agreement ¶ 107. The number or percentage will be confidential except to the Court which, upon request, will be provided a copy of the letter for *in camera* review. *Id.*

### 7.     <u>Class Representative Service Award</u>

Class Counsel will seek, and PNC will not oppose, a Service Award of Ten Thousand and 00/100 Dollars ($10,000.00) for the Class Representative. Agreement ¶ 104. If the Court approves it, the Service Award will be paid from the Settlement Fund and is in addition to the amount of the Class Representative's Settlement Fund Payment. *Id.* The Service Award is intended to compensate the Class Representative for his time and efforts in the Action, including responding to discovery requests and preparing for and appearing at depositions, and for the risks he assumed in prosecuting the Action against RBC. Joint Decl. ¶ 45.

### 8.     <u>Attorneys' Fees and Costs</u>

PNC will not oppose Class Counsel's request for attorneys' fees of up to thirty-five percent (35%) of the Settlement Fund, plus reimbursement of litigation costs and expenses. Agreement ¶ 101. The Parties negotiated and reached agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of this Settlement. Agreement ¶ 104; Joint Decl. ¶ 46.

## III.     <u>ARGUMENT</u>

### A.     <u>The Legal Standard for Preliminary Approval.</u>

Rule 23(e) requires judicial approval for the compromise of claims brought on a class basis. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement

as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). The policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) ("There is an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex.") (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)); *see also 4 Newberg on Class Actions* § 11.41 (4th ed. 2002) (citing cases).

The purpose of preliminary evaluation of proposed class action settlements is to determine whether the settlement is within the "range of reasonableness." 4 *Newberg on Class Actions* § 11.26. "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-cv-60646, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010). Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness. *See Manual for Complex Litigation, Third*, § 30.42 (West 1995) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal quotation marks omitted).

When determining whether a settlement is ultimately fair, adequate and reasonable, courts in this circuit have looked to six factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which

the settlement was achieved." *Bennett*, 737 F.2d at 986.  Courts have, at times, engaged in a "preliminary evaluation" of these factors to determine whether the settlement falls within the range of reason at the preliminary approval stage.  *See*, *e.g.*, *Smith*, 2010 WL 2401149 at *2.[3]

The Court's granting of Preliminary Approval will allow all members of the Settlement Class to receive notice of the terms of the Settlement, and of the date and time of the Final Approval Hearing at which members of the Settlement Class may be heard, and at which further evidence and argument concerning the fairness, adequacy and reasonableness of the Settlement may be presented by the Parties.  *See Manual for Compl. Lit.*, §§ 13.14, 21.632.  Neither formal notice nor a hearing is required at the preliminary approval stage; the Court may grant such relief upon an informal application by the settling parties and may conduct any necessary hearing in court or in chambers, at the Court's discretion.  *Id.* § 13.14.  This Motion satisfies Plaintiffs' obligations under Rule 23(e)(1), as amended effective December 1, 2018.

## B.  This Settlement Satisfies the Criteria for Preliminary Approval.

Each of the relevant factors weighs heavily in favor of Preliminary Approval of this Settlement.  First, the Settlement is the product of good-faith, informed and arm's length negotiations by competent counsel and was reached in the absence of collusion.  Furthermore, a preliminary review of the factors related to the fairness, adequacy and reasonableness of the Settlement demonstrates that it fits well within the range of reasonableness, such that Preliminary Approval is appropriate.

Any settlement requires the parties to balance the merits of the claims and defenses asserted against the attendant risks of continued litigation and delay.  Plaintiffs and Class Counsel believe

---

[3] The fifth factor related to objections to the Settlement is not addressed here because, at the preliminary approval stage, notice has not yet been distributed.

that the claims asserted are meritorious and that Plaintiffs would prevail if this matter proceeded to trial.  RBC continues to assert that, absent this Settlement, the overwhelming majority of absent class members would be required to individually arbitrate their claims and, even in the absence of arbitration, it has no liability for Plaintiffs' claims and will continue to litigate the disputed issues through trial and post-judgment appeal.

The Parties concluded that the benefits of the Settlement outweigh the risks and uncertainties attendant to continued litigation that include, but are not limited to, the risks, time and expenses associated with class certification, completing merits discovery, pretrial motions, trial and final appellate review, particularly in the context of complex multi-district litigation.  Joint Decl. ¶¶ 50 - 51.

### 1.    This Settlement Is the Product Of Good Faith, Informed and Arm's Length Negotiations.

A class action settlement should be approved so long as a district court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma v. American Express Co.*, 406 F. Supp. 2d 1298, 318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

The Settlement here is the result of arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this Action.  These negotiations were arm's-length and free of collusion.  Joint Decl. ¶¶ 47 - 49; *Bennett*, 737 F.2d 982, 986 (11th Cir. 1984) (noting that settlement must be free of collusion); *see also Cotton*, 559 F.2d at 1330; *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007).

22

Furthermore, Class Counsel are particularly experienced in the litigation, certification, trial and settlement of nationwide class action cases. Joint Decl. ¶ 47. Class Counsel zealously represented their clients throughout the litigation including, *inter alia*, defeating RBC's repeated motions to compel arbitration before this Court and on appeal, defeating motions to dismiss, conducting discovery that included review of over 145,000 pages of documents and electronic data as well as taking and defending eight depositions, and preparing and arguing the motion for class certification. Joint Decl. ¶¶ 8 - 23, 54.

In negotiating the Settlement, Settlement Class Counsel had the benefit of years of experience, a familiarity with the legal and factual issues pertinent to this Action, as well as other cases involving similar claims and defenses. Joint Decl. ¶¶ 47 - 49. As detailed above, Class Counsel conducted a thorough investigation and analysis of Plaintiffs' claims and engaged in extensive discovery with RBC. Joint Decl. ¶ 48. Class Counsel's review of that discovery enabled them to gain an understanding of the evidence related to central questions in the Action and prepared them for well-informed settlement negotiations. *Id.*; *see also Francisco v. Numismatic Guaranty Corp. of America*, 2008 WL 649124, *11 (S.D. Fla. Jan. 31, 2008) (stating that "Class Counsel had sufficient information to adequately evaluate the merits of the case and weigh the benefits against further litigation" where counsel conducted two 30(b)(6) depositions and obtained "thousands" of pages of documentary discovery). Settlement Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of their prosecution of litigation against numerous other banks as part of MDL 2036 that involved virtually identical legal and factual issues and the ensuing settlements reached with those banks. Joint Decl. ¶ 49.

### 2.     The Facts Support a Preliminary Determination that the Settlement is Fair, Adequate and Reasonable.

As noted, this Court may conduct a preliminary review of the *Bennett* factors to determine whether the Settlement falls within the "range of reason" such that notice and a final hearing as to the fairness, adequacy and reasonableness of the Settlement is warranted.

### (a)     Likelihood of Success at Trial.

Plaintiffs and Class Counsel are confident in the strength of their case but are pragmatic in their awareness of the various defenses available to RBC and the risks inherent to continued litigation.  As noted above, Plaintiffs avoided dismissal on various theories advanced at the motion to dismiss stage and, to date, have avoided being forced into individual arbitration.  The success of Plaintiffs' claims, however, turned on these and other questions that would likely arise again in the context of class certification, summary judgment, at trial, and on post-judgment appeal.  Joint Decl. ¶¶ 50 - 51.  Under the circumstances, Settlement Class Counsel appropriately determined that the benefits of the Settlement outweigh the gamble of continued litigation.  *Id.*

Even if Plaintiffs prevailed at trial, any recovery could be delayed for years by an appeal. *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).  This Settlement provides substantial relief to Settlement Class members, without further delays.

### (b)     Range of Possible Recovery and the Point on or Below the Range of Recovery at Which a Settlement Is Fair.

When evaluating "the terms of the compromise in relation to the likely benefits of a successful trial . . . the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330.  "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.*

Courts have determined that settlements may be reasonable even where plaintiffs recover only part of their actual losses. *See Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate"). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The $7,500,000.00 cash recovery in this case is outstanding, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement including, but not limited to, RBC's claim that, despite the Eleventh's Circuit's affirmance of this Court's prior arbitration rulings, absent class members would still be required to individually arbitrate their claims. Based on RBC's transactional data, the $7,500,000.00 Settlement Fund represents approximately 26% of the Settlement Class's most probable damages recovery *if* Plaintiffs and a certified class were successful in all respects through trial and on plenary appeal. Joint Decl. ¶ 52. PNC's payment of all costs associated with the Notice Program and administration of the Settlement further increases the value of the Settlement. *Id.*

There can be no doubt that this Settlement is a fair and reasonable recovery for the Settlement Class in light of the Bank's defenses, and the challenging and unpredictable path of litigation Plaintiffs and the Settlement Class would have faced absent a settlement.

### (c)      Complexity, Expense and Duration of Litigation.

The traditional means for handling claims like those at issue here would tax the court system, require a massive expenditure of public and private resources, and, given the relatively small value of the claims of the individual class members, would be impracticable. Thus, the Settlement is the best vehicle for the Settlement Class to receive the relief to which it is entitled in a prompt and efficient manner. Joint Decl. ¶ 53. These considerations, and the other

considerations noted above, militate heavily in favor of the Settlement.  *See Behrens*, 118 F.R.D. at 542 (noting likely "battle of experts" at trial regarding damages, which would pose "great difficulty" for plaintiffs).

### (d)      Stage of the Proceedings.

Courts consider the stage of proceedings at which settlement is achieved "to ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation."  *Lipuma*, 406 F. Supp. 2d at 1324.

The Settlement was reached after extensive pretrial discovery, including the production and review of more than 145,000 pages of documents produced by RBC, eight depositions, and after a contested motion for class certification was filed and argued.  Joint Decl. ¶ 54.  As a result, Class Counsel were extremely well-positioned to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success on RBC's claim that absent class members must arbitrate their claims, on class certification, at summary judgment, at trial and in a post-judgment appeal.  *Id*.  Class Counsel are also highly familiar with the challenged practices and defenses at issue in the Action through their experience litigating similar cases in MDL 2036 and elsewhere.  Joint Decl. ¶ 55.

### C.      Certification of the Settlement Class Is Appropriate.

For settlement purposes, Plaintiffs and Class Counsel respectfully request that the Court certify the Settlement Class defined in paragraph 56 of the Agreement.  "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  In accord with the 2018 amendments to Rule 23(e)(1), the Court should conclude that it is likely to certify the Settlement Class and approve the Settlement as fair, adequate and reasonable.

Certification of the proposed Settlement Class will allow Notice of the Settlement to issue to inform Settlement Class members of the existence and terms of the Settlement, of their right to object and be heard on its fairness, of their right to opt out, and of the date, time and place of the Final Approval Hearing.  *See Manual for Compl. Lit.*, at §§ 21.632, 21.633.  For the reasons set forth below, certification is appropriate under Rule 23(a) and (b)(3).

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23(b)(3), certification is appropriate if the questions of law or fact common to the members of the class predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

All of the applicable Rule 23(b) requirements are satisfied in connection with this Settlement for the same reasons discussed in the context of Plaintiffs' motion for class certification (DE # 4364).

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of holders of approximately 330,000 RBC Accounts, and joinder of all such persons is impracticable.  Joint Decl. ¶ 59.  *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable

27

of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted).  Here, the commonality requirement is readily satisfied.  There are multiple questions of law and fact – centering on RBC's practice of High-to-Low Posting – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers central to the viability of the claims were the Action to proceed to trial.  Joint Decl. ¶ 60.

For similar reasons, Plaintiffs' claims are reasonably coextensive with those of the absent class members, such that the Rule 23(a)(3) typicality requirement is satisfied.  *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members").  Plaintiffs are typical of absent Settlement Class members because they were subjected to the same RBC practices and claim to have suffered from the same injuries, and because they will all benefit from the relief provided by the Settlement.  Joint Decl. ¶ 61.

Plaintiffs and Class Counsel also satisfy the adequacy of representation requirement.  Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation.  *Fabricant*, 202 F.R.D. at 314.  The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class."  *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted).  Plaintiffs'

interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiffs and the absent Settlement Class members have the same interest in the relief afforded by the Settlement, and the absent Settlement Class members have no diverging interests.  Further, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions, including consumer actions similar to this Action.  Joint Decl. ¶ 62.  Class Counsel have devoted substantial time and resources to vigorous litigation of the Action.  *Id.*

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).  The Rule 23(b)(3) predominance requirement is readily satisfied because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class member.  For example, each Settlement Class member's relationship with RBC arises from Account agreements that are the same or substantially similar in all relevant respects to other Settlement Class members' Account agreements.  Joint Decl. ¶ 63.  *See Sacred Heart Health Sys.*, 601 F.3d at 1171 ("It is the form contract, executed under like conditions by all class members, that best facilitates class treatment.").  Further, resolution of thousands of claims in one action is far superior to individual lawsuits because it promotes consistency and efficiency of adjudication.  *See* Fed. R. Civ. P. 23(b)(3).  For these reasons, the Court should certify the Settlement Class.

### D.    The Court Should Approve the Proposed Notice Program.

Rule 23(e)(1)(B) states: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing

that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *See also Manual for Compl. Lit.* § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted); *see also Manual for Compl. Lit.*, § 21.312 (listing relevant information).

The Notice Program satisfies all of these criteria.  As recited in the Settlement and above, the Notice Program will inform the Settlement Class of the substantive terms of the Settlement.  It will advise members of the Settlement Class of their options for remaining part of the Settlement Class; for objecting to the Settlement, Class Counsel's fee application and/or request for Service Awards; or for opting-out of the Settlement, and how to obtain additional information about the Settlement.  The Notice Program is designed to reach an extremely high percentage of Settlement Class members (including most by direct mail, the best possible form of notice), and exceeds the requirements of constitutional due process.  Joint Decl. ¶ 34.  Therefore, the Court should approve the Notice Program and the form and content of the Notices attached to this motion as Exhibits C - E.

## E.    The Court Should Schedule a Final Approval Hearing.

The last step in the Settlement approval process is a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement. Proponents of the Settlement may explain the terms and conditions of the Settlement and offer

argument in support of Final Approval.  The Court will determine at or after the Final Approval Hearing whether the Settlement should be approved; whether to enter the Final Approval Order under Rule 23(e); and whether to approve Class Counsel's fee application, and request for Service Award for the Class Representative.  Plaintiffs and Class Counsel request that the Court schedule the Final Approval Hearing no sooner than the week of April 13, 2020.  Plaintiffs and Class Counsel will file their motion for Final Approval and fee application and request for Service Award no later than 56 days prior to the Final Approval Hearing.

## IV.    **CONCLUSION**

Based on the foregoing, Plaintiffs and Class Counsel respectfully request that the Court: (1) grant Preliminary Approval to the Settlement; (2) certify for settlement purposes the proposed Settlement Class, pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e); (3) approve the Notice Program set forth in the Agreement and approve the form and content of the Notices, attached to this motion as Exhibits C - E; (4) approve and order the opt-out and objection procedures set forth in the Agreement; (5) appoint as Class Representative the individual identified in paragraph 24 of the Agreement; (6) appoint as Class Counsel and Settlement Class Counsel the law firms and attorneys listed in paragraphs 22 and 51 of the Agreement, respectively; (7) stay the Action pending Final Approval of the Settlement; and (8) schedule a Final Approval Hearing no sooner than the week of April 13, 2020.  A [Proposed] Order Preliminarily Approving Class Settlement and Certifying Settlement Class is attached as Exhibit F.

Dated: November 6, 2019.

Respectfully submitted,

/s/ *Aaron S. Podhurst*
Aaron S. Podhurst, Esquire
Florida Bar No. 063606
apodhurst@podhurst.com
PODHURST ORSECK, P.A.
One Southeast Third Avenue
Suite 2700
Miami, FL 33131
Tel: 305-358-2800

/s/ *Bruce S. Rogow*
Bruce S. Rogow, Esquire
Florida Bar No. 067999
brogow@rogowlaw.com
Bruce S. Rogow, P.A.
100 Northeast Third Avenue
Suite 1000
Fort Lauderdale, FL  33301
Tel: 954-767-8909

/s/ *Robert C. Gilbert*
Robert C. Gilbert, Esquire
Florida Bar No. 561861
rcg@grossmanroth.com
GROSSMAN ROTH YAFFA
    COHEN, P.A.
2525 Ponce de Leon Boulevard
Suite 1150
Coral Gables, FL 33134
Tel: 305-384-7269

*Settlement Class Counsel*

E. Adam Webb, Esquire
Georgia Bar No. 743910
Adam@WebbLLC.com
G. Franklin Lemond, Jr., Esquire
Georgia Bar No. 141315
FLemond@WebbLLC.com
WEBB, KLASE & LEMOND, L.L.C.
1900 The Exchange, S.E., Suite 480
Atlanta, GA 30339
Tel: 770-444-9325

Michael W. Sobol, Esquire
California Bar No. 194857
msobol@lchb.com
LIEFF CABRASER HEIMANN &
    BERNSTEIN L.L.P.
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111
Tel: 415-956-1000

Russell W. Budd, Esquire
Texas Bar No. 03312400
rbudd@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219
Tel: 214-521-3605

Richard Golomb, Esquire
Pennsylvania Bar No. 42845
rgolomb@golombhonik.com
GOLOMB & HONIK, P.C.
1515 Market Street
Suite 1100
Philadelphia, PA 19102
Tel: 215-985-9177

Jeffrey M. Ostrow, Esq.
Florida Bar No. 121452
ostrow@kolawyers.com
Jonathan M. Streisfeld, Esq.
Florida Bar No. 117447
streisfeld@kolawyers.com
KOPELOWITZ OSTROW FERGUSON
    WEISELBERG GILBERT
One West Las Olas Boulevard, Suite 500
Fort Lauderdale, FL 33301
Tel:  954-525-4100

David S. Stellings, Esquire
New York Bar No. 2635282
dstellings@lchb.com
LIEFF CABRASER HEIMANN &
    BERNSTEIN L.L.P.
250 Hudson Street, 8th Floor
New York, NY  10013
Tel: 212-355-9500

Ted E. Trief, Esquire
New York Bar No. 1476662
ttrief@triefandolk.com
TRIEF & OLK
150 E. 58th Street
34th Floor
New York, NY 10155
Tel: 212-486-6060

DARREN KAPLAN LAW FIRM, P.C.
Darren Kaplan, Esq.
New York Bar No. 2447381
dkaplan@darrenkaplanlaw.com
1359 Broadway
Suite 2001
New York, NY 10018
Tel:  212-999-7982

*Class Counsel*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 09-MD-02036-JLK

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2019, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being

served this day on all counsel of record or *pro se* parties in the manner specified, either via

transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized

manner for those counsel or parties who are not authorized to receive electronically Notices of

Electronic Filing.

/s/ *Robert C. Gilbert*
Robert C. Gilbert, Esquire
Florida Bar No. 561861
GROSSMAN ROTH YAFFA
    COHEN, P.A.
2525 Ponce de Leon Boulevard
Suite 1150
Coral Gables, FL 33134
Tel: 305-384-7269