# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into this \_\_\_\_ day of October, 2019, by and among (1) Settlement Class Counsel and Plaintiffs, on behalf of the Settlement Class and (2) PNC Bank, N.A. (" PNC"), successor in interest to RBC Bank (USA) ("RBC"), subject to preliminary and final approval as required by Federal Rule of Civil Procedure 23.[1]  As provided herein, PNC,  Settlement Class Counsel and Plaintiffs hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Settlement Class against RBC in *In Re: Checking Account Overdraft Litigation*, Case No. 1:09-md-02036-JLK, shall be settled and compromised upon the terms and conditions contained herein.

## I.    Recitals

1.       On July 2, 2010, Plaintiff Michael Dasher filed *Dasher v. RBC Bank USA*, Case No. 1:10-CV-22190-JLK (S.D. Fla.) ("*Dasher*"), a class action complaint, in the United States District Court for the South District of Florida, alleging RBC's improper assessment and collection of overdraft fees and seeking, *inter alia*, monetary damages, restitution, and equitable relief. (*See* Compl., Case No. 10-22190 (S.D. Fla.), ECF No. 1).

2.       On July 22, 2010, RBC moved to compel arbitration in *Dasher*. (*See* Mot. to Compel Arbitration, Case No. 10-22190, ECF No. 5). On July 28, 2010, *Dasher* was transferred to MDL 2036 and thereafter assigned to the "Second Tranche" of cases. (*See* MDL Transfer Receipt, ECF

---

[1] References to the party to this Settlement Agreement will be to PNC, as RBC no longer exists as a corporate entity.  References to historical facts alleged in the litigation will be to the particular entity (PNC or RBC) involved.  References to proceedings in the litigation will be to RBC, even after it was merged into PNC, because RBC was the named party throughout the litigation and the litigation involved RBC's overdraft fee policies.

No. 730; Joint Report re List of Cases in Second Tranche, ECF No. 1494 (May 18, 2011)). On August 23, 2010, the Court denied RBC's motion to compel arbitration and stay litigation in *Dasher* on the ground that "the arbitration provision has the effect of deterring Plaintiff from bringing his claim and vindicating his rights." (Order Den. Mot. to Compel Arbitration, ECF No. 763, at 7; *In re Checking Account Overdraft Litig.*, 2010 WL 3361127, at *2 (S.D. Fla. Aug. 23, 2010). RBC timely appealed to the Eleventh Circuit. (*See* Def. RBC Bank (USA)'s Notice of Appeal, ECF No. 797).

3.     While the *Dasher* appeal was pending, the U.S. Supreme Court issued *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011). The Parties in *Dasher* jointly moved the Eleventh Circuit to vacate the Court's order denying arbitration and remand the case for reconsideration in light of *Concepcion*. The Eleventh Circuit granted the Parties' joint motion and *Dasher* returned to the Court on June 28, 2011. (*See* Order Granting Joint Mot. to Vacate and Remand, ECF No. 1670).

4.     On July 9, 2010, Plaintiff Stephanie Avery filed *Avery v. RBC Bank USA*, Case No.10-CVS-11527, ("*Avery*"), a class action complaint, in the General Court of Justice, Superior Court Division, Wake County, North Carolina, alleging RBC's improper assessment and collection of overdraft fees and seeking, *inter alia*, monetary damages, restitution, and equitable relief. On August 12, 2010, *Avery* was removed to the Eastern District of North Carolina under Case No. 5:10-cv-329, and then transferred to the Court. (*See* Notice of Removal, Case No. 10-24382 (S.D. Fla.), ECF No. 1). Avery amended her complaint on August 26, 2010. (*See* Am. Compl., Case No. 10-24382, ECF No. 8). On September 16, 2010, RBC filed its motion to compel arbitration in *Avery*. (Mot. to Compel Arbitration & Mem. in Support, Case No. 10-24382, ECF Nos. 16-17). Further proceedings in *Avery* were stayed pending a ruling by the Judicial Panel on Multidistrict Litigation

on whether the action would be become part of MDL 2036. (Order Granting Mot. to Stay, Case No. 10-24382, ECF No. 21 (Oct. 4, 2010)). On March 3, 2011, *Avery* was transferred to and made part of MDL 2036. (MDL Transfer Receipt, ECF No. 1232).

5.        On June 20, 2011, the Court issued an *Omnibus Order* that included *Avery* within its ambit. (*See* Omnibus Order Administratively Closing Member Cases, ECF No. 1640, at 4). That order denied as moot all motions filed under the original case numbers (*see id.* at 5), which terminated RBC's motion to compel arbitration in *Avery*. On September 12, 2011, the Court issued its *Interim Scheduling Order Re Fifth Tranche Actions*, which assigned *Avery* to the Fifth Tranche. (*See* Interim Scheduling Order re Fifth Tranche Actions, ECF No. 1861, at 2). The Scheduling Order set a deadline for banks with actions in the Fifth Tranche to file motions to compel arbitration. (*See id.* at 3).

6.        RBC's counsel and Plaintiffs' Coordinating Counsel in MDL 2036 agreed that RBC would file a coordinated motion to compel arbitration in *Dasher* and *Avery*. Thus, when the Court issued its *Interim Scheduling Order re Fifth Tranche Actions* and set the deadline for motions to compel arbitration, counsel agreed that RBC would file a motion to compel arbitration encompassing both *Dasher* and *Avery*, thereby putting both actions on the same procedural track.

7.        On October 3, 2011, RBC renewed its motion to compel arbitration and stay litigation in *Dasher* and *Avery*. (Renewed Mot. to Compel Arbitration, ECF No. 1929). Following discovery on arbitrability requested by Plaintiffs' counsel and permitted by the Court (*see* Order Deferring Ruling on Mot. to Compel Arbitration, ECF No. 2191 (Dec. 5, 2011)), Plaintiffs opposed RBC's renewed motion to compel arbitration.

8.        On January 11, 2013, the Court issued an order denying RBC's renewed motion to compel arbitration in *Dasher* and *Avery*. (Order Den. Mot. to Compel Arbitration, ECF No. 3162;

*In re Checking Account Overdraft Litig.,* No. 09-2036, 2013 WL 151179 (S.D. Fla. Jan. 11, 2013)).

RBC timely appealed that order. (Def. RBC Bank (USA)'s Notice of Appeal, ECF No. 3164).

9.     On February 10, 2014, the Eleventh Circuit affirmed the Court's denial of RBC's renewed motion to compel arbitration pursuant to the RBC Agreement. *See Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014). The Eleventh Circuit denied RBC's motion for rehearing. The Eleventh Circuit granted RBC's motion to stay its mandate, pending the filing of a petition for certiorari. On June 20, 2014, RBC filed a petition for writ of certiorari with the U.S. Supreme Court, arguing that arbitration should have been compelled pursuant to the RBC arbitration clause. The Supreme Court denied certiorari on October 6, 2014. On October 20, 2014, the Eleventh Circuit remanded the case to the Court.

10.     On November 10, 2014, Plaintiffs filed a Consolidated Amended Complaint ("CAC"). (Consolidated Am. Class Action Compl., ECF No. 4007). On December 5, 2014, RBC moved to compel arbitration of Plaintiff Dasher's amended claims in the CAC pursuant to the arbitration clause in PNC's 2013 amended account agreement. (Mot. to Compel Arbitration of Pl. Dasher's Individual Claims, ECF No. 4017). The Court denied that motion on August 21, 2015. (Order Den. Def's Mot. to Compel Arbitration, ECF No. 4210). RBC timely appealed that order. (Def. RBC Bank (USA)'s Notice of Appeal, ECF No. 4213).

11.     On February 5, 2016, while the appeal was pending, the Court denied RBC's motion to dismiss Plaintiff Avery's individual claims. (Def. Mot. to Dismiss Pl. Avery's Individ. Claims, ECF No. 4018; Order Den. Def's Mot. to Dismiss, ECF No. 4284). RBC was not required to file its answer to Plaintiff Avery's individual claims until the Court resolved RBC's motion to dismiss or strike Plaintiff Avery's national class claims for lack of subject matter jurisdiction. (Order Grant. Jt. Mot. to Mod. Deadline to Ans. Pl. Avery's Claims, ECF No. 4286).

12.     On July 5, 2016, while the appeal was pending, the Court denied RBC's motion to dismiss or strike Plaintiff Avery's putative national class claims for lack of subject matter jurisdiction. (Def. Mot. to Dismiss or Strike Pl.'s Nat'l Class Claims for Lack of Subj. Matter Juris., ECF No. 4019; Order Den. Mot. to Dismiss or Strike Pl.'s Nat'l Class Claims for Lack of Subj. Matter Juris., ECF No. 4302). That order denied RBC's motion without prejudice to it raising the arguments again at the class certification stage. (ECF No. 4302 at 9). On July 25, 2016, RBC answered Plaintiff Avery's claims and asserted affirmative defenses. (Ans. and Aff. Def. of Def. to Pl. Avery's Claims in CAC, ECF No. 4307).

13.     On February 13, 2018, the Eleventh Circuit affirmed the Court's denial of arbitration on the ground that Dasher did not agree to arbitrate. *See Dasher*, 882 F.3d at 1023-24. *Dasher* returned to the Court on March 14, 2018 and thereafter proceeded with *Avery* pursuant to the Court's scheduling orders. (*See* Am. Scheduling Order, ECF No. 4223 (Sept. 22, 2015); Order Cancelling Pretrial Conf. and Modifying Deadlines, ECF No. 4334 (Mar. 22, 2017)). On April 3, 2018, RBC answered Plaintiff Dasher's claims and asserted affirmative defenses. (Ans. and Aff. Def. of Def. to Pl. Michael Dasher's Claims in CAC, ECF No. 4348).

14.     On August 31, 2018, Plaintiffs moved for class certification. (ECF No. 4364). On October 10, 2018, RBC filed its opposition to class certification. (ECF No. 4370). On November 9, 2018, Plaintiffs filed their reply in support of class certification. (ECF No. 4371).

15.     On December 12, 2018, the Court heard oral argument on the motion for class certification and reserved ruling. The Court directed both sides to submit proposed orders within 30 days following receipt of the hearing transcript.

16.     Beginning in 2018, RBC and Settlement Class Counsel initiated preliminary settlement discussions. The settlement discussions resulted in the production of certain

confidential overdraft data by RBC to Settlement Class Counsel.

17.     On January 22, 2019, Settlement Class Counsel and RBC participated in a settlement conference. On that date, Settlement Class Counsel and RBC reached an agreement in principle concerning the material provisions of a settlement. On February 5, 2019, Settlement Class Counsel and RBC executed a Summary Agreement memorializing the material terms of the Settlement. On February 8, 2019, Settlement Class Counsel and RBC filed a Joint Notice of Settlement with the Court and requested a suspension of deadlines pending the drafting and execution of a final settlement agreement; the Court granted the request on February 14, 2019. (ECF Nos. 4381, 4382). Following further negotiations and discussions, the Parties resolved all remaining issues, culminating in this Agreement.

18.     The Parties now agree to settle the Action in its entirety, without any admission of liability, with respect to all Released Claims of the Settlement Class. The Parties intend this Agreement to bind PNC, Plaintiffs and all members of the Settlement Class who do not timely request to be excluded from the Settlement.

 **NOW, THEREFORE,** based on the foregoing recitals and for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.    <u>Definitions</u>

In addition to the terms defined at various points within this Agreement, the following defined terms apply throughout this Agreement:

19.     "Account" means any consumer checking, demand deposit or savings account maintained by RBC in the United States accessible by a Debit Card, including Accounts which became PNC accounts as a result of RBC's merger with PNC.

6

20.    "Account Holder" means a holder of an Account during the Class Period.

21.    "Action" means *In Re: Checking Account Overdraft Litigation*, MDL Case No. 1:09-md-02036-JLK; *Michael Dasher v. RBC Bank (USA), predecessor in interest to PNC Bank, N.A.*, S.D. Fla. Case No. 1:10-CV-22190-JLK; and any and all other cases pending in MDL 2036 as of the date of Preliminary Approval to the extent they assert claims against RBC or any of its affiliates.

22.    "Class Counsel" means:

BARON & BUDD, P.C.
Russell Budd, Esq.
3102 Oak Lawn Avenue
Suite 1100
Dallas, TX 75219

GOLOMB & HONIK, P.C.
Richard Golomb, Esq.
1515 Market Street
Suite 1100
Philadelphia, PA 19102

GROSSMAN ROTH YAFFA COHEN, P.A.
Robert C. Gilbert, Esq.
2525 Ponce de Leon
Suite 1150
Miami, FL 33134

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Michael W. Sobol, Esq.
Embarcadero Center West
275 Battery Street
29th Floor San Francisco, CA 94111-3339

David S. Stellings, Esq.
250 Hudson Street, 8th Floor
New York, NY 10013

PODHURST ORSECK, P.A.
Aaron S. Podhurst, Esq.
One Southeast Third Avenue
Suite 2700
Miami, FL 33131

BRUCE S. ROGOW, P.A.
Bruce S. Rogow, Esq.
100 Northeast Third Avenue
Suite 1000
Fort Lauderdale, FL 33301

TRIEF & OLK
Ted E. Trief, Esq.
150 East 58th Street
34th Floor
New York, NY 10155

WEBB, KLASE & LEMOND, L.L.C.
Edward Adam Webb, Esq.
Franklin G. Lemond, Esq.
1900 The Exchange SE
Suite 480
Atlanta, GA 30339

KOPELOWITZ OSTROW FERGUSON WEISELBERG
GILBERT
Jeff Ostrow, Esq.
Jonathan M. Streisfeld, Esq.
One West Las Olas Boulevard
Suite 500
Fort Lauderdale, FL 33301

DARREN KAPLAN LAW FIRM, PC
Darren Kaplan, Esq.
1359 Broadway
New York, NY 10018

and such other counsel as are identified in Class Counsel's request for attorneys' fees, costs, and

expenses.

23.     "Class Period" means the period from October 10, 2007 through and including

March 1, 2012.

24.     "Class Representative" means Michael Dasher.

25.     "Court" means the United States District Court for the Southern District of Florida,

Miami Division.

8

26.     "Current Account Holder" means the holder of an Account, individually or jointly, at any time during the Class Period, who continues to hold an Account, individually or jointly, as of the date that the Net Settlement Fund (as defined in paragraph 88 below) is distributed to Settlement Class Members pursuant to this Agreement.

27.     "Debit Card" means a card or similar device issued or provided by RBC, including a debit card, check card, or automated teller machine ("ATM") card, that can be used to debit funds from an Account by Point of Sale and/or ATM transactions.

28.     "Debit Card Transaction" means any debit transaction effectuated with a Debit Card, including Point of Sale transactions (whether by PIN or signature/PIN-less) and ATM transactions. For avoidance of doubt, Debit Card Transaction does not include a debit transaction effectuated by check, by preauthorized transaction, by wire transfer or Automated Clearing House ("ACH") transaction, or a transfer to another account such as a credit card account or line of credit.

29.     "Effective Date" means the fifth business day after which all of the following events have occurred:

a. All Parties, PNC's counsel, and Settlement Class Counsel have executed this Agreement;

b. The Court has entered without material change the Final Approval Order; and

c. The time for seeking rehearing or appellate or other review has expired, and no appeal or petition for rehearing or review has been timely filed; or the Settlement is affirmed on appeal or review without material change, no other appeal or petition for rehearing or review is pending, and the time period during which further petition for hearing, review, appeal, or certiorari could be taken has finally expired and relief from a failure to file same is not available.

30.     "Escrow Account" means the account to be established consistent with the terms

and conditions described in Section X hereof.

31.     "Escrow Agent" means Epiq Class Action & Claims Solutions. Settlement Class Counsel and PNC may, by agreement, substitute a different organization as Escrow Agent, subject to approval by the Court if the Court has previously approved the Settlement, preliminarily or finally. In the absence of agreement, either Settlement Class Counsel or PNC may move the Court to substitute a different organization as Escrow Agent, upon a showing that the responsibilities of Escrow Agent have not been adequately executed by the incumbent. The Escrow Agent shall administer the Escrow Account.

32.     "Final Approval" means the date that the Court enters an order and judgment granting final approval to the Settlement and determines the amount of fees, costs, and expenses awarded to Class Counsel and the amount of the Service Award to the Class Representative. The proposed Final Approval Order shall be in a form agreed upon by Settlement Class Counsel and PNC. In the event that the Court issues separate orders addressing the foregoing matters, then Final Approval means the date of the last of such orders.

33.     "Final Approval Order" means the order and final judgment that the Court enters upon Final Approval. In the event that the Court issues separate orders addressing the matters constituting Final Approval, then Final Approval Order includes all such orders.

34.     "High-to-Low Posting" means RBC's practice of posting an Account's Debit Card Transactions from highest to lowest dollar amount each business day, which is alleged to have resulted in the assessment of Overdraft Fees that would not have been assessed if RBC had used an alternative posting method, *e.g.*, one that posted transactions from lowest to highest.

35.     "Notice" means the notices of proposed class action settlement that the Parties will ask the Court to approve in connection with the motion for preliminary approval of the Settlement.

10

"Notice Program" means the methods provided for in this Agreement for giving the Notice and consists of Mailed Notice, Published Notice and Long-Form Notice. The form of the Mailed Notice, Published Notice and Long-Form Notice shall be agreed upon by Settlement Class Counsel and PNC. Additional description of the contemplated Notice Program is provided in Section VIII hereof.

36.    "Notice Administrator" means Epiq Class Action & Claims Solutions. Settlement Class Counsel and PNC may, by agreement, substitute a different organization as Notice Administrator, subject to approval by the Court if the Court has previously preliminarily or finally approved the Settlement. In the absence of agreement, either Settlement Class Counsel or PNC may move the Court to substitute a different organization as Notice Administrator, upon a showing that the responsibilities of Notice Administrator have not been adequately executed by the incumbent.

37.    "Opt-Out Period" means the period that begins the day after the earliest date on which the Notice is first mailed or published, and that ends no later than 35 days prior to the Final Approval Hearing. The deadline for the Opt-Out Period will be specified in the Notice.

38.    "Overdraft Fee" means any fee assessed to an Account for items paid when the Account has insufficient funds to cover the item. Fees charged to transfer funds from other accounts are excluded.

39.    "Parties" means Plaintiffs and PNC.

40.    "Past Account Holder" means the holder of an Account, individually or jointly, who held that Account at some time during the Class Period but no longer holds that Account as of the date that the Net Settlement Fund (as defined in paragraph 88 below) is distributed to Settlement Class Members pursuant to this Agreement.

41.     "Plaintiffs" mean Michael Dasher and Stephanie Avery.[2]

42.     "Point of Sale" or "POS" transaction means a transaction in which an Account holder uses his or her Debit Card to purchase a product or service.

43.     "Preliminary Approval" means the date that the Court enters, without material change, an order preliminarily approving the Settlement in the form jointly agreed upon by the Parties.

44.     "PNC" means PNC Bank, National Association, successor in interest to RBC Bank (USA), as a result of a merger transaction that occurred during the Class Period through which PNC Bank, N.A. assumed the pre-merger liabilities of RBC in connection with the Action. PNC is party to this agreement solely in its capacity as successor to RBC. All Debit Card Transactions that underlie the subject matter of this Action occurred pre-merger.

45.     "Released Claims" means all claims to be released as specified in Section XIV hereof. The "Releases" means all of the releases contained in Section XIV hereof.

46.     "Released Parties" means those persons released as specified in Section XIV hereof.

47.     "Releasing Parties" means all Plaintiffs and all Settlement Class Members who do not timely and properly opt out of the Settlement, and each of their respective, executors, representatives, heirs, predecessors, assigns, beneficiaries, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, and all those who claim through them or on their behalf.

---

[2] "Plaintiffs" expressly excludes Stephanie Avery who, while named as a Plaintiff in the CAC, declined to participate in this Agreement. Ms. Avery is therefore not one of the "Parties" as defined above, but is a member of the "Settlement Class" as defined below.

48.     "Settlement" means the settlement into which the Parties have entered to resolve the Action. The terms of the Settlement are as set forth in this Agreement.

49.     "Settlement Administrator" means Epiq Class Action & Claims Solutions. Settlement Class Counsel and PNC may, by agreement, substitute a different organization as Settlement Administrator, subject to approval by the Court if the Court has previously preliminarily or finally approved the Settlement. In the absence of agreement, either Settlement Class Counsel or PNC, may move the Court to substitute a different organization as Settlement Administrator, upon a showing that the responsibilities of Settlement Administrator have not been adequately executed by the incumbent.

50.     "Settlement Class" is defined in paragraph 56 hereof.

51.     "Settlement Class Counsel" means Aaron S. Podhurst of Podhurst Orseck, P.A.; Bruce S. Rogow of Bruce S. Rogow, P.A.; and Robert C. Gilbert of Grossman Roth Yaffa Cohen, P.A.   Settlement Class Counsel are a subset of Class Counsel. Settlement Class Counsel are responsible for handling all Settlement-related matters on behalf of Plaintiffs.

52.     "Settlement Class Member" means any person included in the Settlement Class, who does not exclude himself or herself from the Settlement in accordance with the terms of this Agreement and the Preliminary Approval Order.

53.     "Settlement Fund" means the fund established under Section X hereof.

54.     "Settlement Website" means the website that the Settlement Administrator will establish as soon as practicable following Preliminary Approval, but prior to the commencement of the Notice Program, as a means for members of the Settlement Class to obtain notice of and information about the Settlement, through and including hyperlinked access to this Agreement, the Long-Form Notice, the order preliminarily approving this Settlement, and such other documents as

Settlement Class Counsel and PNC agree to post or that the Court orders posted on the website. These documents shall remain on the Settlement Website at least until Final Approval. The URL of the Settlement Website shall be www.RBCBankOverdraftSettlement.com or such other URL as Settlement Class Counsel and PNC agree to in writing. The Settlement Website shall not include any advertising and shall not bear or include the PNC or RBC logo or PNC or RBC trademarks. Ownership of the Settlement Website URL shall be transferred to PNC within 10 days of the date on which operation of the Settlement Website ceases.

55.     "Tax Administrator" means Epiq Class Action & Claims Solutions. Settlement Class Counsel and PNC may, by agreement, substitute a different organization as Tax Administrator, subject to approval by the Court if the Court has previously preliminarily or finally approved the Settlement. In the absence of agreement, either Settlement Class Counsel or PNC may move the Court to substitute a different organization as Tax Administrator, upon a showing that the responsibilities of Tax Administrator have not been adequately executed by the incumbent. The Tax Administrator will perform all tax-related services for the Escrow Account as provided in this Agreement.

**III.     Certification of the Settlement Class**

56.     For settlement purposes only, the Plaintiff agrees to ask the Court to certify the following "Settlement Class" under Rule 23(b)(3) of the Federal Rules of Civil Procedure:

> All holders of a RBC Account who, from October 10, 2007 through and including March 1, 2012, incurred one or more Overdraft Fees as a result of RBC's High-to-Low Posting.
>
> Excluded from the Class are all former RBC and current PNC employees, officers and directors, and the judge presiding over this Action.

57.     This Settlement may be terminated as specified in Section XVI hereof.

## IV.     Settlement Consideration

58.     Subject to approval by the Court, and except as provided in paragraph 59 hereafter, the total cash consideration to be provided by PNC to the Settlement Class pursuant to the Settlement shall be Seven Million Five Hundred Thousand and 00/100 Dollars ($7,500,000.00), inclusive of all attorneys' fees, costs, and expenses awarded to Class Counsel and Service Award to the Class Representative.

59.     In addition to the cash consideration specified in paragraph 58 above, PNC will pay all fees, costs, charges, and expenses of the Settlement Administrator and Notice Administrator reasonably incurred in connection with the administration of the Notice Program as set forth in Section VIII hereof, and the payment of distributions from the Settlement Fund to Settlement Class Members as set forth in Section XII hereof. For avoidance of doubt, PNC shall not bear any other fees, costs, charges, or expenses incurred by Plaintiff or by Settlement Class Counsel including, but not limited to, those of any experts retained by Plaintiff or by Settlement Class Counsel. The monetary payments to be made by PNC shall be strictly limited to those specified in this paragraph and paragraph 58.

## V.     Settlement Approval

60.     Upon execution of this Agreement by all Parties, Settlement Class Counsel shall promptly move the Court for an Order granting Preliminary Approval of this Settlement ("Preliminary Approval Order"). The proposed Preliminary Approval Order that will be attached to the motion shall be in a form agreed to by Settlement Class Counsel and PNC. The motion for Preliminary Approval shall request that the Court: (a) approve the terms of the Settlement as within the range of fair, adequate and reasonable; (b) provisionally certify the Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (c) approve the

Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (d) approve the procedures set forth in Section VIII hereof for members of the Settlement Class to exclude themselves from the Settlement Class or to object to the Settlement; (e) stay the Action pending Final Approval of the Settlement; and (f) schedule a Final Approval hearing for a time and date mutually convenient for the Court, Settlement Class Counsel and counsel for PNC, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsel's application for attorneys' fees, costs, and expenses and for Service Awards to Class Representatives ("Final Approval Hearing").

61.     PNC, at its own expense, shall serve or cause to be served a notice of the proposed Settlement in conformance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

**VI.     Discovery**

62.     Class Counsel and PNC already have engaged in significant formal and informal discovery, including depositions and the production of voluminous paper and electronic discovery. In addition, and consistent with its contractual, statutory and regulatory obligations to protect its customers' private financial information, PNC will continue to cooperate informally with Settlement Class Counsel by making pertinent and reasonably accessible data available for review by Settlement Class Counsel and their experts in connection with the allocation analysis as contemplated by Section XI hereof.

**VII.     Settlement Administrator**

63.     The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph hereafter and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, providing

16

Mailed Notice to members of the Settlement Class; working with the Notice Administrator to effectuate the Published Notice Program; distributing the Settlement Fund as provided herein; repaying PNC from the Settlement Fund the amount of account credits PNC provides to Current Account Holder Settlement Class Members pursuant to paragraph 93 hereof; and repaying the Settlement Fund to PNC in the event of a termination of the Settlement pursuant to Section XVI hereof.

64.     The duties of the Settlement Administrator, in addition to other responsibilities that are described in the preceding paragraph and elsewhere in this Agreement, are as follows:

a.     Obtain from Settlement Class Counsel and PNC name and address information for members of the Settlement Class (to the extent it is available), and verify and update the addresses received through the National Change of Address database, for the purpose of mailing the Mailed Notice, and later mailing distribution checks to Past Account Holder Settlement Class Members, and to Current Account Holder Settlement Class Members where it is not feasible or reasonable for PNC to make the payment by a credit to those Settlement Class Members' Accounts;

b.     Establish and maintain a Post Office box for requests for exclusion from the Settlement Class;

c.     Establish and maintain the Settlement Website;

d.     Establish and maintain an automated and live operator toll-free telephone line for members of the Settlement Class to call with Settlement-related inquiries, and answer the questions of members of the Settlement Class who call with or otherwise communicate such inquiries;

e.     Respond to any mailed inquiries from members of the Settlement Class;

f.     Process all requests for exclusion from the Settlement Class;

g.     Provide weekly reports and, no later than five days after the end of the Opt-Out

17

Period, a final report to Settlement Class Counsel and PNC, that summarize the number of requests for exclusion received that week, the total number of exclusion requests received to date, and other pertinent information;

h.     Interface with the Tax Administrator;

i.     At Settlement Class Counsel's request in advance of the Final Approval Hearing, prepare an affidavit to submit to the Court that identifies each member of the Settlement Class who timely and properly requested exclusion from the Settlement Class;

j.     Process and transmit distributions to Past Account Holder Settlement Class Members from the Settlement Fund; instruct PNC as to the direct payments to be made to Current Account Holder Settlement Class Members (to the extent feasible); and repay PNC from the Settlement Fund the aggregate amount of account credits PNC provides to Current Account Holder Settlement Class Members;

k.     Provide at least bi-weekly reports and a final report to Settlement Class Counsel and PNC that summarize the activity since the prior reporting period, including but not limited to the number and dollar amount of all distributions, undeliverable mailed checks, efforts to re-issue and re-mail checks, and other pertinent information;

l.     Pay invoices, expenses and costs upon approval by Settlement Class Counsel and PNC, as provided in this Agreement; and

m.     Perform the duties of Escrow Agent as described in this Agreement, and any other Settlement-administration-related function at the instruction of Settlement Class Counsel and PNC, including, but not limited to, verifying that Settlement Funds have been distributed as required by Section XII hereof.

## VIII.   Notice to Settlement Class Members

65.    Upon Preliminary Approval of the Settlement, at the direction of Settlement Class Counsel, the Notice Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court in the Preliminary Approval Order. The Notice shall include, among other information: a description of the material terms of the Settlement; a date by which Settlement Class Members may exclude themselves from or "opt-out" of the Settlement Class; a date by which Settlement Class Members may object to the Settlement; the date upon which the Final Approval Hearing is scheduled to occur; and the address of the Settlement Website at which members of the Settlement Class may access this Agreement and other related documents and information. Settlement Class Counsel and PNC shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. Notices and publications provided under or as part of the Notice Program shall not bear or include the PNC or RBC logo or trademarks or the return address of PNC, or otherwise be styled to appear to originate from PNC. Ownership of the Settlement Website URL shall be transferred to PNC within 10 days of the date on which operation of the Settlement Website ceases, which shall be the date on which distribution of the Net Settlement Fund (as defined in paragraph 88 below) has been made to Settlement Class Members as provided in paragraph 87, or such other date as Settlement Class Counsel and PNC may agree upon in writing.

66.    The Notice also shall include a procedure for Settlement Class Members to opt-out of the Settlement Class. A Settlement Class Member may opt-out of the Settlement Class at any time during the Opt-Out Period. Any members of the Settlement Class who does not timely and validly request to opt-out shall be bound by the terms of this Agreement.

67.    The Notice also shall include a procedure for Settlement Class Members to object

19

to the Settlement and/or to Class Counsel's application for attorneys' fees, costs, and expenses and/or Service Award to the Class Representative. Objections to the Settlement, to the application for fees, costs, expenses, and/or to the Service Award must be mailed to the Clerk of the Court, Settlement Class Counsel, and PNC's counsel. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Opt-Out Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (*e.g.*, Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

68. For an objection to be considered by the Court, in accordance with Federal Rule of Civil Procedure 23(e)(5), the objection must also set forth:

a. the name of the Action;

b. the objector's full name, address and telephone number;

c. an explanation of the basis upon which the objector claims to be a Settlement Class Member;

d. state with specificity the grounds for the objection, and whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, accompanied by any legal support for the objection known to the objector or his counsel;

e. the number of times in which the objector has objected to a class action settlement within the five years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior such objections that were issued by the trial and appellate courts in each listed

case;

f.      the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement or fee application;

g.      a copy of any orders related to or ruling upon counsel's or the firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding five (5) years;

h.      any and all agreements that relate to the objection or the process of objecting— whether written or oral—between objector or objector's counsel and any other person or entity;

i.      the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

j.      a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection;

k.      a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and

l.      the objector's signature (an attorney's signature is not sufficient).

69.     Notice shall be provided to members of the Settlement Class in three different ways: Mailed Notice; Published Notice; and Long-Form Notice on the Settlement Website. Not all members of the Settlement Class will receive all three forms of Notice, as detailed herein. Notice shall be provided in a form to be agreed upon by Settlement Class Counsel and PNC.

70.     Within 28 days from the date that the Settlement Administrator receives from Settlement Class Counsel and PNC the data files that identify, subject to the availability of

information in reasonably accessible electronic form, the names and last known addresses of the identifiable Settlement Class Members who held Accounts during the Class Period, the Settlement Administrator shall run the addresses through the National Change of Address Database, and shall mail to all such Settlement Class Members postcards that contain the Mailed Notice (the "Initial Mailed Notice"). To coordinate the Mailed Notice Program with the Published Notice Program, within one business day of the Settlement Administrator's receipt of the data files described herein, the Settlement Administrator shall inform the Notice Administrator by email that it has received the data files.

71.     The Settlement Administrator shall perform reasonable address traces for all Initial Mailed Notice postcards that are returned as undeliverable. By way of example, a "reasonable" tracing procedure would be to run addresses of returned postcards through the Lexis/Nexis database that can be utilized for such purpose. No later than 70 days before the Final Approval Hearing, the Settlement Administrator shall complete the re-mailing of Mailed Notice postcards to those Settlement Class Members whose new addresses were identified as of that time through address traces (the "Notice Re-mailing Process"). Because the United States Postal Service sometimes returns undeliverable items beyond the typical time for returning such items, the Settlement Administrator may, at its discretion, perform the Notice Re-mailing Process up to 14 days before the Opt-Out Deadline. The Settlement Administrator's continued efforts in connection with the Notice Re-mailing Process shall not affect or extend any Settlement Class Member's deadlines for objecting or opting out.

72.     The Mailed Notice Program (which is composed of both the Initial Mailed Notice and the Notice Re-mailing Process) shall be completed no later than 70 days before the Final Approval Hearing. Within seven days after the date the Settlement Administrator completes the

Notice Re-mailing Process, the Settlement Administrator shall provide Settlement Class Counsel and PNC a declaration that confirms that the Mailed Notice Program was completed in a timely manner. Settlement Class Counsel shall file that declaration with the Court as an exhibit to or in conjunction with Plaintiffs' motion for Final Approval of the Settlement.

73.     The Notice Administrator shall administer the Published Notice Program, which shall be composed of: (i) Local Online Banners; (ii) Local Sponsored Search Listings; and (iii) a National Press Release. The Published Notice Program shall be completed no later than 70 days before the Final Approval Hearing.

74.     Within seven days after the date the Notice Administrator completes the Published Notice Program, the Notice Administrator shall provide Settlement Class Counsel and PNC with one or more declarations that confirm that Published Notice was given in accordance with the Published Notice Program. Settlement Class Counsel shall file that declaration with the Court as an exhibit to or in conjunction with Plaintiffs' motion for final approval of the Settlement.

75.     All reasonable costs of the Notice Program shall be borne by PNC.

76.     Within the parameters set forth in this Section VIII, further specific details of the Notice Program shall be subject to the agreement of Settlement Class Counsel and PNC.

IX.     **Final Approval Order and Judgment**

77.     Plaintiffs' and Class Counsel's motion for Preliminary Approval of the Settlement will include a request to the Court for a scheduled date on which the Final Approval Hearing will occur. Plaintiffs and Class Counsel shall file their motion for Final Approval of the Settlement, and their application for attorneys' fees, costs, and expenses and for Service Award for the Class Representative, no later than 56 days prior to the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' and Class Counsel's motion for Final Approval

of the Settlement, and on Class Counsel's application for attorneys' fees, costs and expenses and for Service Award for the Class Representative. In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement or to the fee, cost, expense or Service Award application, provided the objectors submitted timely objections that meet all of the requirements listed in paragraphs 67 and 68 hereof.

78.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order granting Final Approval of the Settlement and entering final judgment thereon, and whether to approve Class Counsel's request for attorneys' fees, costs, expenses and Service Award. The proposed Final Approval Order shall be in a form agreed upon by Settlement Class Counsel and RBC. Such proposed Final Approval Order shall, among other things:

a.     Determine that the Settlement is fair, adequate and reasonable;

b.     Finally certify the Settlement Class for settlement purposes only;

c.     Determine that the Notice provided satisfies Due Process requirements;

d.     Enter judgment dismissing the Action with prejudice and without costs;

e.     Bar and enjoin all Releasing Parties from asserting any of the Released Claims, as set forth in Section XIV hereof, including during any appeal from the Final Approval Order;

f.     Release RBC and the other Released Parties from the Released Claims, as set forth in Section XIV hereof; and

g.     Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including PNC, all Settlement Class Members, and all objectors, to administer, supervise, construe and enforce this Agreement in accordance with its terms.

X.    **Settlement Fund**

79.     In exchange for the mutual promises and covenants in this Agreement, including, without limitation, the Releases as set forth in Section XIV hereof and the dismissal of the Action upon Final Approval, within 14 calendar days of Preliminary Approval, PNC shall deposit the sum of Seven Million Five Hundred Thousand and 00/100 Dollars ($7,500,000.00) into the Escrow Account to create the Settlement Fund as set forth herein.

80.     Upon the establishment of the Escrow Account, the Escrow Agent may, but shall not be required to, cause the funds in the Escrow Account to be invested, in whole or in part, in interest-bearing short-term instruments or accounts—to be agreed upon by Settlement Class Counsel and PNC—that are backed by the full faith and credit of the United States Government or that are fully insured by the United States Government or an agency thereof (the "Instruments"). Settlement Class Counsel and PNC shall agree on the FDIC-insured financial institution at which the Escrow Account shall be established, which shall not be PNC. The Escrow Agent may thereafter re-invest the interest proceeds and the principal as they mature in similar Instruments, bearing in mind the liquidity requirements of the Escrow Account to ensure that it contains sufficient cash available to pay all invoices, taxes, fees, costs and expenses, and other required disbursements, in a timely manner. Notwithstanding the foregoing, that portion of the Settlement Fund that the Settlement Administrator reasonably estimates needs to be available on a liquid basis to pay on-going costs of settlement administration, as provided in this Agreement, may be placed in one or more insured accounts that may be non-interest-bearing. Except as otherwise specified herein, the Instruments at all times will remain in the Escrow Account and under the control of the Escrow Agent. The Escrow Agent shall communicate with Settlement Class Counsel and counsel for PNC on at least a monthly basis to discuss potential cash needs for the following month. All costs or fees

25

incurred in connection with investment of the Settlement Fund in the Instruments shall not constitute a cost of Settlement administration to be paid by PNC but shall instead be payable out of the Settlement Fund.

81.     The Settlement Fund at all times shall be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-l. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon PNC or its counsel, or Plaintiffs or Class Counsel, with respect to income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), shall be paid out of the Settlement Fund. Plaintiffs and Class Counsel, and PNC and its counsel shall have no liability or responsibility for any of the Taxes. The Settlement Fund shall indemnify and hold Plaintiffs and Class Counsel, and PNC and its counsel, harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

82.     The Settlement Fund shall be used for the following purposes:

a.     Distribution of payments to the Settlement Class pursuant to Sections XI and XII hereof, including, without limitation, the repayment to PNC of all amounts automatically distributed by it through credits to Current Account Holder Settlement Class Members;

b.     Payment of the Court-ordered award of Class Counsel's attorneys' fees, costs, and expenses pursuant to paragraphs 101-103 hereof;

c.     Payment of the Court-ordered Service Awards to the Class Representatives pursuant to paragraph 104 hereof;

d.     Payment of any residual distribution as set forth in paragraph 96 hereof, together

with any administrative costs associated therewith;

       e.   Payment of all Taxes pursuant to paragraph 81 hereof, including, without limitation, taxes owed as a result of accrued interest on the Escrow Account, in a timely manner consistent with the recommendation of the Tax Administrator, subject to approval by Settlement Class Counsel and PNC;

       f.   Payment of any costs of Settlement administration other than those to be paid by PNC as set forth in paragraph 59 hereof; and

       g.   Payment of additional fees, costs and expenses not specifically enumerated in subparagraphs (a) through (f) of this paragraph, subject to approval of Settlement Class Counsel and PNC.

## XI.    Calculation of Distributions from Settlement Fund

       83.   PNC, in consultation with Settlement Class Counsel and their expert, shall identify data—to the extent it exists in reasonably accessible electronic form—sufficient to calculate and implement the allocation of Settlement Funds as provided in Sections XI and XII hereof. The calculation and implementation of allocations contemplated by Sections XI and XII shall be undertaken by Settlement Class Counsel and their expert.  The methodology provided for in paragraph 85 hereof will be applied to the data as consistently, sensibly and conscientiously as reasonably possible, recognizing and taking into consideration the nature and completeness of the data and the purpose of the computation. Consistent with its contractual, statutory and regulatory obligations to maintain bank security and protect its customers' private financial information, PNC shall make available to Settlement Class Counsel and its expert data and information (masked as to individuals' identities as PNC may deem appropriate) sufficient to allow Settlement Class Counsel and its expert to determine and confirm the calculations and allocations contemplated by this

Agreement and PNC's implementation of such allocations.

84.     The Parties acknowledge that the information available in reasonably accessible electronic form from PNC's databases may be incomplete for limited portions of the Class Period and, therefore, it may not be possible to identify all members of the Settlement Class and/or to calculate and make automatic distribution of all amounts that Settlement Class members may be due from the Settlement Fund for the entire Class Period. To the extent that the Parties, consistent with the foregoing data constraints and limitations, can reasonably identify Settlement Class Members and calculate the amount such Settlement Class Members are due from the Settlement Fund, an automatic distribution will be provided to them based upon the terms of the allocation set forth in this Section XI.

85.     The amount of the automatic distribution from the Settlement Fund to which each identifiable Settlement Class Member is entitled for the Class Period (subject to the availability of data) shall be determined using the following methodology, or such other methodology as would have an equivalent result:

a.     All Accounts will be identified in which, on one or more calendar days during the Class Period, RBC assessed two or more Overdraft Fees on such day or days during which the account was subject to High-to-Low Posting. If Settlement Class Counsel and its expert and PNC cannot conclusively determine from its records whether the account was subject to High-to-Low Posting on a particular calendar day, it may be assumed for purposes of this paragraph that the account was subject to High-to-Low Posting.

b.     For each such calendar day on which RBC assessed two or more Overdraft Fees, all transactions posted in such Accounts on that day will be ordered in the following posting order:

i.     All credits;

ii.   All bank-initiated debits, fees assessed on previous day transactions, and other high-priority debits, in the order originally posted by the bank;

iii.   All ATM and POS debit card transactions with date and time of authorization ordered chronologically;

iv.   All ATM and POS debit card transactions without date and time of authorization ordered from lowest to highest dollar amount; and

v.   All other customer-initiated debits, including checks, cash withdrawals, and ACH transactions, ordered from highest to lowest dollar amount.

c.   After ordering the transactions as set forth in subparagraph (b) of this paragraph, each Account—on a daily basis for such calendar days—will be identified in which the number of Overdraft Fees RBC actually assessed exceeds the number of Overdraft Fees that would have been assessed if the Account had been ordered as set forth in subparagraph (b) ("Additional Overdrafts").

d.   The dollar amount of the Additional Overdrafts will be calculated ("Additional Overdrafts Amount").

e.   For each Account in which one or more Additional Overdrafts have been identified, it will be determined how many (if any) Overdraft Fees RBC refunded during the 30-day period following each calendar day on which any Additional Overdraft occurred ("Refunded Additional Overdrafts").

f.   The dollar amount of the Refunded Additional Overdrafts will be calculated ("Refunded Additional Overdrafts Amount").

g.   All Accounts will be identified in which on any such calendar day the Additional Overdrafts Amount exceeds the Refunded Additional Overdrafts Amount. The Refunded Additional Overdrafts Amount will be subtracted from the Additional Overdrafts Amount to

29

determine the "Differential Overdraft Fee."

h.    All accounts that experienced a Differential Overdraft Fee will be checked against a list of Accounts that RBC closed with negative balances after writing them off as uncollectible ("Uncollectible Accounts").

i.    For all Uncollectible Accounts that experienced a Differential Overdraft Fee, the Differential Overdraft Fee will be reduced dollar-for-dollar by the dollar amount of the negative closing Account balance. When the dollar amount of the negative closing Account balance equals or exceeds the Differential Overdraft Fee for the Account, the Differential Overdraft Fee shall be reduced to zero for purposes of calculating that Account Holder's distribution, and the Account Holder will not receive a distribution from the Settlement Fund for such Account;

j.    The foregoing allocation formula will yield the identification of all Account Holders whose Accounts experienced a Differential Overdraft Fee greater than zero dollars ("Positive Differential Overdraft Fee") as well as the amounts of their respective Positive Differential Overdraft Fees.

86.    The Parties agree the foregoing allocation formula is exclusively for purposes of computing retrospectively, in a reasonable and efficient fashion, the amount of Positive Differential Overdraft Fees each identifiable Settlement Class Member paid to RBC for the Class Period as a result of High-to-Low Posting and the amount of any automatic distribution each Settlement Class Member should receive from the Settlement Fund. The fact that this allocation formula is used herein is not intended and shall not be used for any other purpose or objective whatsoever.

**XII.    Distribution of Net Settlement Fund**

87.    As soon as practicable but no later than 150 days from the Effective Date, PNC and the Settlement Administrator shall distribute the Net Settlement Fund (as defined in paragraph 88

below) as set forth in this Section.  Each Settlement Class Member who had a Positive Differential Overdraft Fee and has not opted out as provided herein shall receive a distribution in the amount of a pro rata share of the Net Settlement Fund.

88.     The Net Settlement Fund is equal to the Settlement Fund plus any interest earned from the Instruments, and less the following:

a.    the amount of the Court-awarded attorneys' fees, costs, and expenses to Class Counsel;

b.    the amount of the Court-awarded Service Award to the Class Representative;

c.    a reservation of a reasonable amount of funds for prospective costs of Settlement administration (if any) that are not PNC's responsibility pursuant to paragraph 59 hereof, including tax administration as agreed upon by Settlement Class Counsel and PNC; and

d.    all other costs and/or expenses incurred in connection with the Settlement not specifically enumerated in subsections (a) through (c) of this paragraph that are expressly provided for in this Agreement or have been approved by Settlement Class Counsel and PNC.

89.     The Settlement Administrator shall divide the total amount of the Net Settlement Fund by the total amount of all Settlement Class Members' Positive Differential Overdraft Fees calculated pursuant to Section XI hereof. This calculation shall yield the "Pro Rata Percentage."

90.     The Settlement Administrator shall multiply each Settlement Class Member's total Positive Differential Overdraft Fees by the Pro Rata Percentage. This calculation shall yield each Settlement Class Member's "Differential Overdraft Payment Amount." The Settlement Administrator shall communicate to Settlement Class Counsel and PNC's Counsel the Differential Overdraft Payment Amount to be paid to Settlement Class Members pursuant to paragraph 92.

91.     Every Settlement Class Member shall be paid from the Net Settlement Fund the

total Differential Overdraft Payment Amount to which he or she is entitled as set forth herein ("Settlement Fund Payments"). In no event, however, shall PNC ever be required to pay more than a total of Seven Million Five Hundred Thousand and 00/100 Dollars ($7,500,000.00) to the Settlement Class, inclusive of all attorneys' fees, costs, and expenses and Service Award (exclusive of costs of Notice and Administration as provided in this Agreement).

92.     Settlement Fund Payments to Settlement Class Members who are Current Account Holders shall be made either by a credit to those Account Holders' Accounts or by mailed check in those circumstances where it is not feasible or reasonable to make the payment by a credit. PNC shall notify Settlement Class Members who are Current Account Holders of any such credit and provide a brief explanation that the credit has been made as a payment in connection with the Settlement. PNC shall provide the notice of account credit described in this paragraph in or with the account statement on which the credit is reflected. PNC will bear any costs associated with implementing the account credits and notification discussed in this paragraph. Settlement Fund Payments made to those Settlement Class Members who are Current Account Holders by check will be cut and mailed by the Settlement Administrator with an appropriate legend, in a form approved by Settlement Class Counsel and PNC, to indicate that it is from the Settlement, and will be sent to the addresses that the Settlement Administrator identifies as valid. Checks shall be valid for 180 days. For jointly held Accounts, checks will be payable to all Account Holders, and will be mailed to the first Account Holder listed on the Account. The Settlement Administrator will make reasonable efforts to locate the proper address for any intended recipient of Settlement Funds whose check is returned by the Postal Service as undeliverable (such as by running addresses of returned checks through the Lexis/Nexis database that can be utilized for such purpose) and will re-mail it once to the updated address. All costs associated with the process of printing and mailing the checks

and any accompanying communication to Settlement Class Members who are Current Account Holders shall be borne by PNC as provided in paragraph 59 hereof.

93.     PNC shall be entitled to a payment from the Net Settlement Fund equal to the amount of account credits paid pursuant to paragraph 92 hereof. Such payment shall be made within two business days after PNC provides written verification to Settlement Class Counsel and the Escrow Agent of the aggregate amount of account credits that were given and that such Settlement Fund Payments were given to the Settlement Class Members who are Current Account Holder Settlement Class Members.

94.     Settlement Fund Payments to Settlement Class Members who are Past Account Holder will be made by check with an appropriate legend, in a form approved by Settlement Class Counsel and PNC, to indicate that it is from the Settlement Fund. Checks will be cut and mailed by the Settlement Administrator and will be sent to the addresses that the Settlement Administrator identifies as valid. Checks shall be valid for 180 days. For jointly held Accounts, checks will be payable to all Account Holders, and will be mailed to the first Account Holder listed on the Account. The Settlement Administrator will make reasonable efforts to locate the proper address for any intended recipient of Settlement Funds whose check is returned by the Postal Service as undeliverable (such as by running addresses of returned checks through the Lexis/Nexis database that can be utilized for such purpose), and will re-mail it once to the updated address, or, in the case of a jointly held Account, and in the Settlement Administrator's discretion, to an Account Holder other than the one listed first. All costs associated with the process of printing and mailing the checks and any accompanying communication to Settlement Class Members who are Past Account Holders shall be borne by PNC as provided in paragraph 59 hereof.

95.     The amount of the Net Settlement Fund attributable to uncashed or returned checks

sent by the Settlement Administrator shall remain in the Settlement Fund for one year from the date that the first distribution check is mailed by the Settlement Administrator. During this time the Settlement Administrator shall make a reasonable effort to locate intended recipients of Settlement Funds whose checks were returned (such as by running addresses of returned checks through the Lexis/Nexis database that can be utilized for such purpose), to effectuate delivery of such checks. The Settlement Administrator shall make only one such additional attempt to identify updated addresses and re-mail or re-issue a distribution check to those for whom an updated address was obtained.

## XIII.    Disposition of Residual Funds

96.    Within one year plus 30 days after the date the Settlement Administrator mails the first Settlement Fund Payments, any funds remaining in the Settlement Fund shall be distributed as follows:

a.    First, the funds shall be distributed on a pro rata basis to participating Settlement Class Members who received Settlement Fund Payments pursuant to Section XII of the Agreement, to the extent feasible and practical in light of the costs of administering such subsequent payments unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair;

b.    Second, in the event the costs of preparing, transmitting and administering such subsequent payments pursuant to subparagraph (a) above are not feasible and practical to make individual distributions economically viable or other specific reasons exist that would make such further distributions impossible or unfair, Settlement Class Counsel and counsel for PNC shall jointly file a proposed plan for distribution of the residual funds consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c), together with supporting materials, for

34

consideration by the Court. After consultation with the Parties, the Court shall have the discretion to approve, deny, amend or modify, in whole or in part, the proposed plan for distribution of the residual funds in a manner consistent with the American Law Institute, *Principles of Aggregate Litigation* § 3.07(c). The residual funds shall not be used for any litigation purpose or to disparage any Party. The Parties agree that the Court's approval, denial, amendment or modification, in whole or in part, of the proposed plan for distribution of the residual funds pursuant to this paragraph shall not constitute grounds for termination of the Settlement pursuant to Section XVI hereof; and

c.   All costs associated with the disposition of residual funds – whether through additional distributions to Settlement Class Members and/or through an alternative plan approved by the Court – shall be borne solely by the Settlement Fund. Under no circumstances shall PNC have responsibility for any costs associated with the disposition of residual funds whether through additional distributions to Settlement Class Members and/or through an alternative plan approved by the Court.

**XIV.   <u>Releases</u>**

97.   As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully and irrevocably released and forever discharged PNC and each of its present and former parents, subsidiaries, divisions, affiliates, predecessors (including but not limited to RBC), successors and assigns, and the present and former directors, officers, employees, agents, insurers, reinsurers. shareholders, attorneys, advisors, consultants, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns of each of them, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or

equitable, that result from, arise out of, are based upon, or relate to the conduct, omissions, duties or matters up to and including March 1, 2012 that were or could have been alleged in the Action including, without limitation, any claims, actions, causes of action, demands, damages, losses, or remedies relating to, based upon, resulting from, or arising out of (a) RBC's assessment of one or multiple Overdraft Fees on Settlement Class Members' Accounts, (b) the amount of one or more RBC Overdraft Fees assessed on Settlement Class Members' Accounts, or (c) High-to-Low Posting or any other posting order used by RBC on Settlement Class Members' Accounts.[3]  The foregoing release includes, by way of example but not limitation, any and all of the following to the extent they involve, relate to, result in, or seek recovery or relief for Overdraft Fees, High-to-Low Posting, or any posting order: (1) RBC's authorization, approval or handling of any Debit Card Transaction, (2) any failure by RBC to notify or to obtain advance approval when a Debit Card Transaction would or might cause a Settlement Class Member's Accounts to become overdrawn or further overdrawn or an Overdraft Fee to be assessed; (3) any failure by RBC to require Settlement Class Members to opt in, or to allow Settlement Class Members to opt-out, of overdrafts, or to publicize or disclose the ability of the holder of any RBC account to opt-out of overdrafts between October 10, 2007 through March 1, 2012; (4) any failure by RBC to adequately or clearly disclose, in one or more agreements, posting order, High-to-Low Posting, overdrafts, Overdraft Fees, or the manner in which Debit Card Transactions are or would be approved, processed, or posted to Settlement Class Members' Accounts, and any effect that could have on the number of Overdraft Fees; (5) any conduct or statements by RBC encouraging the use of RBC Debit Cards; (6) the use of High-to-

---

[3] PNC acknowledges that the scope of this release is strictly limited to the Releasing Parties' consumer banking relationships with RBC and, if they remained customers following the merger, with PNC.

Low Posting on Settlement Class Members' Accounts and the assessment of Overdraft Fees as a result of High-to-Low Posting; and (7) any RBC advertisements or marketing materials relating to any of the foregoing.

98.     AS OF THE EFFECTIVE DATE, PLAINTIFFS AND EACH SETTLEMENT CLASS MEMBER SHALL FURTHER AUTOMATICALLY BE DEEMED TO HAVE WAIVED AND RELEASED ANY AND ALL PROVISIONS, RIGHTS, AND BENEFITS CONFERRED BY § 1542 OF THE CALIFORNIA CIVIL CODE OR SIMILAR LAWS OF ANY OTHER STATE OR JURISDICTION. SECTION 1542 OF THE CALIFORNIA CIVIL CODE READS: "§1542. CERTAIN CLAIMS NOT AFFECTED BY GENERAL RELEASE. A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

99.     Plaintiffs or any Settlement Class Member may hereafter discover facts other than or different from those that he/she knows or believes to be true with respect to the subject matter of the claims released pursuant to the terms of paragraphs 97 and 98 hereof, or the law applicable to such claims may change. Nonetheless, each of those individuals expressly agrees that, as of the Effective Date, he/she shall have automatically and irrevocably waived and fully, finally, and forever settled and released any known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, contingent or non-contingent claims with respect to all of the matters described in or subsumed by this paragraph and paragraphs 97 and 98 hereof. Further, each of those individuals agrees and acknowledges that he/she shall be bound by this Agreement, including by the releases contained in this paragraph and in paragraphs 97 and 98 hereof, and that all of their claims

in the Action shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden; without regard to subsequent discovery of different or additional facts and subsequent changes in the law; and even if he/she never receives actual notice of the Settlement and/or never receives a distribution of funds or credits from the Settlement.

100.     Nothing in this Agreement shall operate or be construed to release any claims or rights PNC has to recover any past, present or future amounts that may be owed by Plaintiffs or by any Settlement Class Member on his/her accounts, loans or any other debts with RBC, pursuant to the terms and conditions of such accounts, loans, or any other debts other than Overdraft Fees incurred during the Class Period. Nothing in this Agreement shall operate or be construed to release any defenses or rights of set-off that any Plaintiffs or Settlement Class Members may have in the event PNC (or its assigns) seeks to recover any Overdraft Fees incurred during the Class Period.

## XV.    Payment of Attorneys' Fees, Costs, Expenses, and Service Award

101.     PNC agrees not to oppose Class Counsel's request for attorneys' fees of up to thirty-five percent (35%) of the Settlement Fund specified in paragraph 79 and not to oppose Class Counsel's request for reimbursement of costs and expenses. Any award of attorneys' fees, costs, and expenses to Class Counsel shall be payable solely out of the Settlement Fund. The determination of Class Counsel's request for attorneys' fees, costs, and expenses shall be based on controlling Eleventh Circuit precedent involving the award of fees in common fund class actions and not based on state law. The Parties agree that the Court's failure to approve, in whole or in part, any award for attorneys' fees shall not prevent the Settlement Agreement from becoming effective, nor shall it be grounds for termination.

102.     Within three business days of the Effective Date, the Escrow Agent shall pay from the Settlement Fund to Settlement Class Counsel all Court-approved attorneys' fees, costs, and

expenses of Class Counsel, including interest accrued thereon. In the event the award of attorneys' fees, costs, and expenses of Class Counsel is reduced on appeal, the Escrow Agent shall only pay to Settlement Class Counsel from the Settlement Fund the reduced amount of such award, including interest accrued thereon. Settlement Class Counsel shall timely furnish to the Escrow Agent any required tax information or forms before the payment is made.

103.    The payment of attorneys' fees, costs, and expenses of Class Counsel pursuant to paragraph 102 hereof shall be made through a deposit by the Escrow Agent into an Attorney Client Trust Account jointly controlled by Settlement Class Counsel. After the fees, costs and expenses have been deposited into this account, Settlement Class Counsel shall be solely responsible for distributing each Class Counsel firm's allocated share of such fees, costs and expenses to that firm. PNC shall have no responsibility for any allocation, and no liability whatsoever to any person or entity claiming any share of the funds to be distributed.

104.    Settlement Class Counsel will ask the Court to approve a service award of Ten Thousand and 00/100 Dollars ($10,000.00) per Class Representative, or Five Thousand and 00/100 Dollars ($5,000.00) per Class Representative for married couples in which both spouses are Class Representatives ("Service Awards").  All Service Awards are to be paid from the Settlement Fund. The Service Award shall be paid to the Class Representative in addition to such Class Representative's Settlement Fund Payments. PNC agrees not to oppose Settlement Class Counsel's request for the Service Award.

105.    The Parties negotiated and reached agreement regarding attorneys' fees, costs, and expenses and Service Award only after reaching agreement on all other material terms of this Settlement.

## XVI.   Termination of Settlement

106.     This Settlement may be terminated by either Settlement Class Counsel or PNC by serving on counsel for the opposing Party and filing with the Court a written notice of termination within 45 days (or such longer time as may be agreed between Settlement Class Counsel and PNC) after any of the following occurrences:

a.     Settlement Class Counsel and PNC agree to termination;

b.     the Court fails to grant Preliminary Approval of the Settlement within 180 days after filing of the motion for Preliminary Approval, or fails to finally approve the Settlement within 360 days of Preliminary Approval by the Court;

c.     the Court rejects, materially modifies, materially amends or changes, or declines to preliminarily or finally approve the Settlement;

d.     an appellate court vacates or reverses the Final Approval Order, and the Settlement is not reinstated and finally approved without material change by the Court on remand within 270 days of such reversal;

e.     any court incorporates into, or deletes or strikes from, or modifies, amends, or changes, the Preliminary Approval Order, Final Approval Order, or the Settlement in a way that Settlement Class Counsel or PNC seeking to terminate the Settlement reasonably considers material;

f.     the Effective Date does not occur; or

g.     any other ground for termination provided for elsewhere in this Agreement.

107.     PNC also shall have the right to terminate the Settlement by serving on Settlement Class Counsel and filing with the Court a notice of termination within 14 days of its receipt from the Settlement Administrator of the final report specified in paragraph 64(g) hereof, if the number of

Settlement Class Members who timely request exclusion from the Settlement Class equals or exceeds the number or percentage specified in the separate letter executed concurrently with this Settlement by Settlement Class Counsel and PNC. The number or percentage shall be confidential except to the Court, who shall upon request be provided with a copy of the letter for *in camera* review.

108.    In the event of a termination of the Settlement, and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Escrow Account, to the extent any such fees or expenses have been incurred given PNC's obligation in paragraph 59 hereof to pay settlement expenses directly, the balance of the Settlement Fund shall be refunded and remitted to PNC as provided in paragraph 111 hereof. For any funds paid directly by PNC in connection with the Notice in Section VIII hereof or paid directly from the Escrow Account pursuant to this Agreement, PNC shall have no right to seek reimbursement from Plaintiffs, Settlement Class Counsel, or Class Counsel in the event of termination of this Agreement.

109.    In the event of a termination of the Settlement pursuant to this Section XVI the Parties retain all of their pre-Settlement litigation rights and defenses.

**XVII.**  **Effect of a Termination**

110.    The grounds upon which this Agreement may be terminated are set forth in paragraphs 106 and 107 hereof. In the event of a termination as provided therein, this Agreement shall be considered null and void; all of PNC's obligations under the Settlement shall cease to be of any force and effect; the amounts in the Settlement Fund shall be returned to PNC in accordance with paragraph 111 hereof; and the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this Agreement. In addition, in the event of such a termination, all of the Parties' respective pre-Settlement rights, claims and defenses will be retained and preserved. In the

41

event the litigation was to resume, PNC, as successor in interest, would move to substitute its name for RBC's.

111.    In the event of a termination as provided in paragraph 106 and/or 107 and after payment of any invoices or other fees or expenses mentioned in this Agreement that have been incurred and are due to be paid from the Escrow Account, to the extent any such fees or expenses have been incurred given PNC's obligation in paragraph 59 hereof to pay settlement expenses directly, the Escrow Agent shall return the balance of the Settlement Fund to PNC within seven calendar days of termination. For any funds paid directly by PNC in connection with the Notice in Section VIII hereof or paid directly from the Escrow Account pursuant to this Agreement, PNC shall have no right to seek reimbursement from Plaintiffs, Settlement Class Counsel, or Class Counsel in the event of termination of this Agreement.

112.    The Settlement shall become effective on the Effective Date unless earlier terminated in accordance with the provisions of paragraphs 106 and/or 107 hereof.

113.    In the event the Settlement is terminated in accordance with the provisions of paragraphs 106 and/or 107 hereof, any discussions, offers, or negotiations associated with this Settlement shall not be discoverable or offered into evidence or used in the Action or any other action or proceeding for any purpose. Plaintiffs shall be entitled to continue to seek class certification, and PNC shall be entitled to continue to oppose class certification, without reference to the Settlement or the discussions, offers or negotiations leading thereto. In such event, all Parties to the Action shall stand in the same position as if this Agreement had not been negotiated, made or filed with the Court.

## XVIII. <u>No Admission of Liability</u>

114.    PNC disputes the claims alleged in the Action and does not by this Agreement or otherwise admit any liability or wrongdoing of any kind. PNC has agreed to enter into this

Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could have been asserted in the Action.

115.    Class Counsel believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel have fully investigated the facts and law relevant to the merits of the claims, have conducted extensive formal and informal discovery, and have conducted independent investigation of the challenged practices. Class Counsel have concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class Members.

116.    The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties either previously or in connection with the negotiations or proceedings connected with this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever.

117.    Neither the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class Members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

118.     In addition to any other defenses PNC may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to, and may be used as the basis for an injunction against, any action, suit or other proceeding that may be instituted, prosecuted or attempted in breach of this Agreement or the Releases contained herein.

## XIX.   Miscellaneous Provisions

119.     References to RBC in Third-Party Materials. In the course of pursuing claims against defendant banks other than RBC in MDL 2036, Class Counsel have and/or are serving subpoenas and seeking discovery from third-party consultants to the banking industry. PNC has requested and Plaintiffs agree to provide PNC promptly with copies of all materials received by Class Counsel through such subpoenas and discovery that Class Counsel reasonably determine, refer, or pertain to RBC.

120.     Gender and Plurals. As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

121.     Binding Effect. This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

122.     Cooperation of Parties. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, to seek Court approval, defend Court approval, and to do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement. This obligation of the Parties to support and complete the Settlement shall remain in full force and effect regardless of events that may occur, or court decisions that may be issued in MDL 2036 or in any other case in any court.

123.     Obligation To Meet And Confer. Before filing any motion in the Court raising a

dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

124. <u>Integration</u>. This Agreement (along with the letter referenced in paragraph 107 hereof) constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

125. <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

126. <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the State of Florida, without regard to the principles thereof regarding choice of law.

127. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

128. <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice program, the Settlement Administrator, the Notice

Administrator, and the Tax Administrator. As part of their respective agreements to render services in connection with this Settlement, the Settlement Administrator, the Notice Administrator, the Escrow Agent, and the Tax Administrator shall consent to the jurisdiction of the Court for this purpose.

129.    <u>Notices</u>. All notices to Settlement Class Counsel provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

> Aaron S. Podhurst, Esq.
> PODHURST ORSECK, P.A.
> One Southeast Third Avenue, Suite 2700
> Miami, FL 33131
> Email: apodhurst@podhurst.com
>
> Bruce S. Rogow, Esq.
> BRUCE S. ROGOW, P.A.
> 100 Northeast Third Avenue, Suite 1000
> Fort Lauderdale, FL 33301
> Email: brogow@rogowlaw.com
>
> Robert C. Gilbert, Esq.
> GROSSMAN ROTH YAFFA COHEN, P.A.
> 2525 Ponce de Leon Boulevard, 11th Floor
> Coral Gables, FL 33134
> Email: rcg@grossmanroth.com

All notices to RBC, provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

> Mark J. Levin, Esq.
> Philip N. Yannella, Esq.
> BALLARD SPAHR LLP
> 1735 Market St., 51st Floor
> Philadelphia, PA 19103
> Email: levinmj@ballardspahr.com
>
> Darryl May, Esq.
> PNC Bank, N.A.
> 1600 Market Street, 8th Floor
> Mail Stop F2-F070-08-7
> Philadelphia, PA 19103
> Email: Darryl.May@pnc.com

The notice recipients and addresses designated above may be changed by written notice. Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice program.

130.    <u>Modification and Amendment</u>. This Agreement may be amended or modified only by a written instrument signed by counsel for PNC and Settlement Class Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

131.    <u>No Waiver</u>. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

132.    <u>Authority</u>. Settlement Class Counsel (for the Plaintiffs and the Settlement Class Members), and counsel for PNC (for PNC), represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity included within the definitions of Plaintiffs and PNC to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all the terms and provisions of this Agreement.

133.    <u>Agreement Mutually Prepared</u>. Neither PNC nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

134.    <u>Independent Investigation and Decision to Settle</u>. The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts

in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. PNC has provided and is providing information that Plaintiffs reasonably request to identify Settlement Class Members and the alleged damages they incurred. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

135.   <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement and the Releases contained in Section XIV hereof, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

Dated: 10/17/19

Michael Dasher
*Plaintiff*

Dated:_____

Aaron S. Podhurst, Esq.
PODHURST ORSECK, P.A.
*Settlement Class Counsel*

Dated:_____

Bruce S. Rogow, Esq.
BRUCE S. ROGOW, P.A.
*Settlement Class Counsel*

48

in addition to, or different from, those that they now know or believe to be true with respect to the subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. PNC has provided and is providing information that Plaintiffs reasonably request to identify Settlement Class Members and the alleged damages they incurred. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

135. <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she or it has fully read this Agreement and the Releases contained in Section XIV hereof, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

Dated:_____

_____
Michael Dasher
*Plaintiff*

Dated:_____10/21/19_____

_____
Aaron S. Podhurst, Esq.
PODHURST ORSECK, P.A.
*Settlement Class Counsel*

Dated:_____October 17, 2019_____

_____
Bruce S. Rogow, Esq.
BRUCE S. ROGOW, P.A.
*Settlement Class Counsel*

48

Dated: ___10/31/19___

_____
Robert C. Gilbert, Esq.
GROSSMAN ROTH YAFFA COHEN, P.A.
*Settlement Class Counsel*

Dated: ___10/31/19___

_____
REPRESENTATIVE OF PNC Bank, N.A.
*Defendant*

Dated: ___10/31/19___

_____
Philip N. Yannella, Esq.
BALLARD SPAHR LLP
*Counsel for Defendant RBC Bank, N.A.*

49