**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO. 1:09-MD-02036-JLK**

IN RE: CHECKING ACCOUNT
OVERDRAFT LITIGATION

MDL No. 2036

THIS DOCUMENT RELATES TO:

*Michael Dasher v. RBC Bank (USA), predecessor in interest to PNC Bank, N.A.*

*S.D. Fla. Case No. 1:10-CV-22190-JLK*

**ORDER GRANTING FINAL APPROVAL**
**OF SETTLEMENT, AUTHORIZING SERVICE AWARD AND**
**GRANTING APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

On February 25, 2020, Plaintiffs and Class Counsel filed their Motion for Final Approval of Class Settlement, and Application for Service Award, Attorneys' Fees and Expenses, and Incorporated Memorandum of Law (the "Motion"), seeking Final Approval of the Settlement Agreement and Release ("Agreement" or "Settlement") with PNC Bank, N.A. ("PNC"), successor in interest to RBC Bank (USA) ("RBC") ("PNC" or the "Bank").[1] (DE # 4429, 4429-1).  Plaintiff and Class Counsel also filed declarations supplementing the factual record to enable the Court to evaluate the fairness, reasonableness and adequacy of the Settlement and the application for attorneys' fees.  (DE # 4429-2, 4429-3, 4429-4, 4429-5).

On November 6, 2019, Plaintiffs and Class Counsel filed their motion for preliminary approval. (DE # 4423). On November 13, 2019, the Court entered an Order Preliminarily Approving

---

[1] This Order incorporates the definitions of terms used in the Agreement attached to the Motion (DE # 4429-1).

Class Settlement and Certifying Settlement Class. (DE # 4425).  The Court has carefully reviewed all of the filings relating to the Settlement, including: the Motion; two objections; Plaintiffs' and Class Counsel's response to the objections; objecting Settlement Class Member's application for attorneys' fees and reimbursement of costs filed by one of the objectors; Plaintiffs' and Settlement Class Counsel's opposition to the objecting Settlement Class Member's  fee application; and the objecting Settlement Class Member's reply.  (DE # 4429, 4430, 4431, 4440, 4443, 4444, 4445).

After careful consideration of the Motion, the two timely objections to the Settlement, Plaintiffs' and Class Counsel's response to the objections, the application for attorneys' fees and reimbursement of costs filed by one objecting Settlement Class Member and her private counsel, Plaintiffs' and Settlement Class Counsel's opposition to the objecting Settlement Class Member's and her personal counsel's fee application, and the objecting Settlement Class Member's reply, the Court concludes that the $7,500,000.00 Settlement Fund created by the Settlement provides an extremely fair and reasonable recovery for Settlement Class in light of RBC's defenses, as well as the challenging, unpredictable path of litigation that Plaintiffs would have continued to face in the trial and appellate courts.  In addition to the Settlement Fund, PNC agreed to pay all fees and costs incurred in connection with the Notice Program and Settlement administration, further increasing the recovery for the Settlement Class.

In the Court's view, the Settlement represents an excellent result given the obstacles already confronted, as well as those that would be faced in the future, in the absence of this Settlement.  The Court specifically finds that the Settlement is fair, adequate and reasonable, and represents a fair compromise of the Settlement Class Members' claims.  The Court overrules the two objections to the Settlement.  The Settlement fully complies with Fed. R. Civ. P. 23(e) and, thus, the Court grants Final Approval to the Settlement, certifies the Settlement Class, approves Class Counsel's

application for attorneys' fees, reimbursement of expenses and Service Award to the sole Class Representative, and awards Class Counsel attorneys' fees in the amount of $2,625,000.00, equal to 35% of the Settlement Fund, plus reimbursement of expenses in the amount of $92,899.19, as well a Service Award in the amount of $10,000.00 for the sole Class Representative. Finally, the Court denies the objecting Settlement Class Member's and her private counsel's application for attorneys' fees, reimbursement of costs and request for a Service Award for the objecting Settlement Class Member.

## BACKGROUND

The Court is extremely familiar with the history of this consumer class action brought against RBC, having presided over it for approximately a decade as part of MDL 2036. Throughout, the Court has had ample opportunity to observe Class Counsel and RBC and PNC's counsel. These attorneys, several of whom have practiced before this Court for many decades, are extremely skilled advocates who vigorously litigated the Action up to the time of Settlement. The Settlement is quite obviously the result of arm's-length negotiations, and the Court so finds.

The present evidentiary record is more than adequate for the Court to consider the fairness, reasonableness and adequacy of the Settlement. A fundamental question is whether the district judge has sufficient facts before him to evaluate and intelligently and knowledgeably approve or disapprove the settlement. *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 n.6 (6th Cir. 1984) (citing *Detroit v. Grinnell*, 495 F.2d 448, 463-68 (2d Cir. 1974)). In this case, the Court clearly has such facts before it in considering the Motion, including the evidence and opinions of Settlement Class Counsel and their experts, the two objections, Plaintiffs' and Class Counsel's response to the objections, one objecting Settlement Class Member's application for attorneys' fees, reimbursement of costs and request for Service Award, Plaintiffs' and Settlement Class Counsel's

opposition to the objector's fee application, and the objecting Settlement Class Member's reply. (DE # 4429, 4430, 4431, 4440, 4443, 4444, 4445).

## 1.    Factual and Procedural Background of the Action.

On July 2, 2010, Plaintiff Michael Dasher filed *Dasher v. RBC Bank USA*, Case No. 1:10-CV-22190-JLK (S.D. Fla.) ("*Dasher*"), a class action complaint, in this Court, alleging RBC's improper assessment and collection of Overdraft Fees due to High-to-Low Posting and seeking, *inter alia*, monetary damages, restitution, and equitable relief.  (*See* Compl., Case No. 10-22190 (S.D. Fla.), DE # 1).  Joint Declaration of Aaron S. Podhurst, Bruce S. Rogow and Robert C. Gilbert in Support of Plaintiffs' and Class Counsel's Motion for Final Approval of Class Settlement and Application for Service Award, Attorneys' Fees and Expenses ¶ 9 ("Joint Decl.'"). (DE # 4429-2).

On July 22, 2010, RBC moved to compel arbitration in *Dasher*.  (*See* Mot. to Compel Arbitration, Case No. 10-22190, DE # 5).  On July 28, 2010, *Dasher* was transferred to MDL 2036 and assigned to the "Second Tranche" of cases. (*See* MDL Transfer Receipt, DE # 730; Joint Report re List of Cases in Second Tranche, DE # 1494 (May 18, 2011)).  On August 23, 2010, the Court denied RBC's motion to compel arbitration and stay litigation in *Dasher* on the ground that "the arbitration provision has the effect of deterring Plaintiff from bringing his claim and vindicating his rights." (Order Den. Mot. to Compel Arbitration, DE # 763, at 7; *In re Checking Account Overdraft Litig.*, 2010 WL 3361127, at *2 (S.D. Fla. Aug. 23, 2010). RBC timely appealed to the Eleventh Circuit. (*See* Def. RBC Bank (USA)'s Notice of Appeal, DE # 797).  Joint Decl. ¶ 10.

While the *Dasher* appeal was pending, the U.S. Supreme Court issued *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011). The parties in *Dasher* jointly moved the Eleventh Circuit to vacate this Court's order denying arbitration and remand the case for reconsideration in light of *Concepcion*. The Eleventh Circuit granted the joint motion and *Dasher* returned to this Court on

June 28, 2011. (*See* Order Granting Joint Mot. to Vacate and Remand, DE # 1670).  Joint Decl. ¶ 11.

On July 9, 2010, a week after *Dasher* was filed in this Court, Plaintiff Stephanie Avery filed *Avery v. RBC Bank USA*, Case No. 10-CVS-11527, ("*Avery*"), a putative class action complaint, in the General Court of Justice, Superior Court Division, Wake County, North Carolina, alleging RBC's improper assessment and collection of Overdraft Fees due to High-to-Low Posting and seeking, *inter alia*, monetary damages, restitution and equitable relief.  On August 12, 2010, *Avery*, the second-filed action, was removed to the Eastern District of North Carolina under Case No. 5:10-cv-329. (*See* Notice of Removal, Case No. 10-24382 (S.D. Fla.), DE # 1).  Avery amended her complaint on August 26, 2010. (*See* Am. Compl., Case No. 10-24382, DE # 8).   Joint Decl. ¶ 12.

On September 16, 2010, RBC filed its motion to compel arbitration in *Avery*. (Mot. to Compel Arbitration & Mem. in Support, Case No. 10-24382, ECF Nos. 16-17).  Further proceedings in *Avery* were stayed pending a ruling by the Judicial Panel on Multidistrict Litigation on whether the action would be become part of MDL 2036. (Order Granting Mot. to Stay, Case No. 10-24382, DE # 21 (Oct. 4, 2010)).  On March 3, 2011, *Avery* was transferred to this Court and made part of MDL 2036. (MDL Transfer Receipt, DE # 1232).  Joint Decl. ¶ 13.

On June 20, 2011, this Court issued an Omnibus Order that included *Avery* within its ambit. (*See* Omnibus Order Administratively Closing Member Cases, DE # 1640, at 4). That Order denied as moot all motions filed under the original case numbers (*see id.* at 5), which terminated RBC's motion to compel arbitration in *Avery*.  On September 12, 2011, the Court issued its *Interim Scheduling Order re Fifth Tranche Actions*, which assigned *Avery* to the Fifth Tranche. (*See* Interim Scheduling Order re Fifth Tranche Actions, DE # 1861, at 2). The Scheduling Order set a deadline for banks defending actions in the Fifth Tranche to file motions to compel arbitration. (*See id.* at 3).

Joint Decl. ¶ 14.

RBC's counsel and Plaintiffs' Coordinating Counsel agreed that RBC would file a coordinated motion to compel arbitration in *Dasher* and *Avery*. Thus, when the Court issued its *Interim Scheduling Order re Fifth Tranche Actions* and set the deadline for motions to compel arbitration, counsel agreed that RBC would file a motion to compel arbitration encompassing both *Dasher* and *Avery*, thereby putting both actions on the same procedural track. Joint Decl. ¶ 15.

On October 3, 2011, RBC renewed its motion to compel arbitration and stay litigation in *Dasher* and *Avery*. (Renewed Mot. to Compel Arbitration, DE # 1929). Following discovery on arbitrability requested by Plaintiffs' counsel and permitted by the Court (*see* Order Deferring Ruling on Mot. to Compel Arbitration, DE # 2191 (Dec. 5, 2011)), Plaintiffs opposed RBC's renewed motion to compel arbitration. Joint Decl. ¶ 16.

On January 11, 2013, the Court denied RBC's renewed motion to compel arbitration in *Dasher* and *Avery*. (Order Den. Mot. to Compel Arbitration, DE # 3162); *In re Checking Account Overdraft Litig.,* No. 09-2036, 2013 WL 151179 (S.D. Fla. Jan. 11, 2013). RBC appealed that order. (Def. RBC Bank (USA)'s Notice of Appeal, DE # 3164). Joint Decl. ¶ 17.

On February 10, 2014, the Eleventh Circuit affirmed the Court's denial of RBC's renewed motion to compel arbitration pursuant to the RBC Agreement. *See Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014). The Eleventh Circuit denied RBC's motion for rehearing. The Eleventh Circuit granted RBC's motion to stay its mandate pending the filing of a petition for certiorari. On June 20, 2014, RBC filed a petition for writ of certiorari with the U.S. Supreme Court, arguing that arbitration should have been compelled pursuant to the RBC arbitration clause. The Supreme Court denied certiorari on October 6, 2014. On October 20, 2014, the Eleventh Circuit remanded the case to the Court. Joint Decl. ¶ 18.

On November 10, 2014, the Consolidated Amended Complaint ("CAC") was filed. (Consolidated Am. Class Action Compl., DE # 4007). On December 5, 2014, RBC moved to compel arbitration of Plaintiff Dasher's amended claims in the CAC pursuant to the arbitration clause in PNC's 2013 amended account agreement. (Mot. to Compel Arbitration of Pl. Dasher's Individual Claims, DE # 4017). The Court denied that motion on August 21, 2015. (Order Den. Def's Mot. to Compel Arbitration, DE # 4210). RBC appealed that order. (Def. RBC Bank (USA)'s Notice of Appeal, DE # 4213). Joint Decl. ¶ 19.

On February 5, 2016, while the appeal was pending, the Court denied RBC's motion to dismiss Plaintiff Avery's individual claims. (Def. Mot. to Dismiss Pl. Avery's Individ. Claims, DE # 4018; Order Den. Def's Mot. to Dismiss, DE # 4284). RBC was not required to answer Plaintiff Avery's individual claims until the Court resolved RBC's motion to dismiss or strike Plaintiff Avery's national class claims for lack of subject matter jurisdiction. (Order Grant. Jt. Mot. to Mod. Deadline to Ans. Pl. Avery's Claims, DE # 4286). Joint Decl. ¶ 20.

On July 5, 2016, while the appeal was still pending, the Court denied RBC's motion to dismiss or strike Plaintiff Avery's putative national class claims for lack of subject matter jurisdiction. (Def. Mot. to Dismiss or Strike Pl.'s Nat'l Class Claims for Lack of Subj. Matter Juris., DE # 4019; Order Den. Mot. to Dismiss or Strike Pl.'s Nat'l Class Claims for Lack of Subj. Matter Juris., DE # 4302). That Order denied RBC's motion without prejudice to it raising the arguments again at the class certification stage. (DE # 4302 at 9). On July 25, 2016, RBC answered Plaintiff Avery's claims and asserted affirmative defenses. (Ans. and Aff. Def. of Def. to Pl. Avery's Claims in CAC, DE # 4307). Joint Decl. ¶ 21.

On February 13, 2018, the Eleventh Circuit affirmed this Court's denial of arbitration on the ground that Plaintiff Dasher did not agree to arbitrate. *See Dasher v. RBC Bank (USA)*, 882 F.3d,

1017 (11th Cir. 2018).  *Dasher* returned to the Court on March 14, 2018 and, thereafter, proceeded pursuant to the Court's existing Scheduling Orders.  (*See* Am. Scheduling Order, DE # 4223 (Sept. 22, 2015); Order Cancelling Pretrial Conf. and Modifying Deadlines, DE # 4334 (Mar. 22, 2017)). On April 3, 2018, RBC answered Plaintiff Dasher's claims and asserted affirmative defenses. (Ans. and Aff. Def. of Def. to Pl. Michael Dasher's Claims in CAC, DE # 4348).  Joint Decl. ¶ 22.

On August 31, 2018, following substantial discovery, Plaintiffs moved for class certification. (DE # 4364).  On October 10, 2018, RBC filed its opposition to class certification.  (DE # 4370).  On November 9, 2018, Plaintiffs filed their reply in support of class certification.  (DE # 4371).  Joint Decl. ¶ 23.

On December 12, 2018, the Court heard oral argument on the motion for class certification and reserved ruling.  The Court directed both sides to submit proposed orders following receipt of the hearing transcript.  Joint Decl. ¶ 24.

### 2.    Settlement Negotiations and Proceedings.

Beginning in 2018, PNC and Settlement Class Counsel initiated preliminary settlement discussions.  The settlement discussions resulted in PNC's production of certain confidential overdraft data of RBC to Settlement Class Counsel.  The overdraft data was analyzed by Settlement Class Counsel's expert for the purpose of identifying the number of affected Accounts and the amount of damages sustained as a result of High-to-Law Posting.  Joint Decl. ¶ 25.

On January 22, 2019, Settlement Class Counsel and PNC participated in a settlement conference. On that date, Settlement Class Counsel and PNC reached an agreement in principle concerning the material terms of the Settlement.  Joint Decl. ¶ 26.

On February 5, 2019, Settlement Class Counsel and PNC executed a Summary Agreement that memorialized the material terms of the Settlement.  On February 8, 2019, Settlement Class Counsel and

PNC filed a Joint Notice of Settlement and requested suspension of all pretrial deadlines pending the drafting and execution of a final settlement agreement; the Court granted that request on February 14, 2019. (ECF Nos. 4381, 4382). Following further negotiations and discussions, the Parties resolved all remaining issues, culminating in the Agreement. Joint Decl. ¶ 27.

On November 6, 2019, Plaintiffs and Class Counsel filed their motion for preliminary approval. (DE # 4423). On November 13, 2019, the Court entered an Order Preliminarily Approving Class Settlement and Certifying Settlement Class. (DE # 4425). _Pursuant to the Preliminary Approval Order, notice was disseminated to members of the Settlement Class that provided, *inter alia*, a summary of the Settlement and advised them of their rights to object to or opt-out of the Settlement. Joint Decl. ¶ 28.

On March 13, 2020 and March 17, 2020, two objections were filed by Settlement Class Members, one by Erroll T. Boglin, Sr. and the other by Stephanie Avery. (DE# 4430, 4431). Plaintiffs and Class Counsel responded to those objections on April 22, 2020. (DE# 4440).

The Final Approval Hearing originally scheduled for April 22, 2020, was continued as a result of Administrative Order 2020-34. (DE # 4433). On June 29, 2020, the Court reset the Final Approval Hearing for August 4, 2020. (DE # 4441, 4442).

On July 20, 2020, Stephanie Avery, one of the two objectors, and her personal counsel Inez de Ondarza Simmons, filed a motion for an application for award of attorneys' fees and reimbursement of costs, as well as a request for a Service Award for Ms. Avery. (DE # 4443). The motion was filed without leave of Court just two weeks before the rescheduled Final Approval Hearing. On July 27, 2020, Plaintiffs and Settlement Class Counsel filed their response in opposition to Ms. Avery's and her counsel's motion. (DE # 4444). On August 3, 2020, the day before the Final Approval Hearing, Ms. Avery and her counsel filed their reply. (DE # 4445).

On August 4, 2020, the Court convened the Final Approval Hearing through the use of Zoom videoconference technology.  (DE # 4447).  Present before the Court for the hearing were Settlement Class Counsel and several members of Class Counsel, counsel for PNC, counsel for objector Stephanie Avery, and *pro se* objector Erroll Boglin, among others.  The Court heard presentations and argument by counsel on the Motion, the Avery objection, and the Avery motion for application for attorneys' fees and reimbursement of costs.  At the conclusion of the hearing, the Court announced that it finds and concludes that the Settlement is fair, adequate and reasonable and will be granted Final Approval; overruled the two objections; denied objector Avery's application for attorneys' fees and costs; and that while it was inclined to grant Class Counsel's application for an award of attorneys' fees equal to 35% of the $7,500,000.00 and reimbursement of $92,899.19 in expenses, it would take the matter under advisement.

Having fully considered all issues and reviewed the relevant materials and applicable law, the Court now issues this Final Approval Order and the accompanying Final Judgment.

3.      **Summary of the Settlement Terms.**

The terms of the Settlement are set forth in the Agreement.  (DE # 4429-1).  Below, the Court provides a summary of the material terms.

a.      **The Settlement Class.**

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rule of Civil Procedure.  The Settlement Class is defined as:

> All holders of a RBC Account who, from October 10, 2007 through and including March 1, 2012, incurred one or more Overdraft Fees as a result of RBC's High-to-Low Posting.  Excluded from the Class are all former RBC and current PNC employees, officers and directors, and the judge presiding over this Action.

Agreement ¶ 56.

### b.      Monetary Relief for the Benefit of the Class.

The Settlement required PNC to deposit $7,500,000.00 into the Escrow Account following entry of the Preliminary Approval Order.  Agreement ¶ 58.  The Bank deposited that sum, creating the Settlement Fund.  Joint Decl. ¶ 29.

The Settlement Fund will be used to: (i) pay all payments to Settlement Class Members; (ii) pay all Court-ordered awards of attorneys' fees, costs and expenses of Class Counsel; (iii) pay the Court-ordered Service Award to the Class Representative; (iv) distribute any residual funds; (v) pay all Taxes; (vi) pay any costs of Notice Administrator and Settlement administration other than those required to be paid by PNC; and (vii) pay any additional fees, costs and expenses not specifically enumerated in paragraph 82 of the Agreement, subject to approval of Settlement Class Counsel and PNC. Agreement ¶ 82.  In addition to the $7,500,000.00 Settlement Fund, PNC is responsible for paying all costs and fees of the Settlement Administrator and Notice Administrator incurred in connection with the administration of the Notice Program and Settlement administration.  *Id.* at ¶ 59.

All identifiable Settlement Class Members who experienced a Positive Differential Overdraft Fee will receive *pro rata* distributions from the Net Settlement Fund, provided they do not opt-out of the Settlement.[2]   Agreement ¶¶ 85, 87.   The Positive Differential Overdraft Fee analysis determines, among other things, which RBC Account Holders were assessed additional Overdraft Fees that would not have been assessed if the Bank had used a chronological posting sequence or method for posting Debit Card Transactions instead of High-to-Low Posting, and how much in

---

[2] The Net Settlement Fund is equal to the Settlement Fund, plus interest earned (if any), less the amount of Court-awarded attorneys' fees and costs to Class Counsel, the amount of Court-awarded Service Award to the Class Representative, a reservation of a reasonable amount of funds for prospective costs of Settlement administration that are not PNC's responsibility pursuant to paragraph 82 of the Agreement, and any other costs and/or expenses incurred in connection with the Settlement that are not specifically enumerated in paragraph 82 that are provided for in the Agreement and have been approved by Settlement Class Counsel and PNC.  Agreement ¶ 82.

additional Overdraft Fees those Account Holders paid as a result.  The calculation involves a multi-step process that is described in detail in the Agreement.  *Id*. at ¶ 85.

Members of the Settlement Class do not have to submit claims or take any other affirmative step to receive relief under the Settlement.  The amount of their damages has been determined by Settlement Class Counsel's expert through analysis of RBC's electronic data.  Agreement Section XI.  As soon as practicable after Final Approval, but no later than 150 days from the Effective Date (Agreement ¶¶ 87 - 95), the Settlement Administrator will calculate and distribute the Net Settlement Fund, on a pro rata basis, to all Settlement Class Members who had a Positive Differential Overdraft Fee and did not timely opt out of the Settlement.  Agreement Section XII.

Payments to Settlement Class Members who are Current Account Holders will be made by crediting such Settlement Class Members' Accounts and notifying them of the credit.  Agreement ¶ 92.  PNC will then be entitled to a reimbursement for such credits from the Net Settlement Fund.  *Id.* at ¶ 93.  Past Account Holders (and any Current Account Holders whose Accounts cannot feasibly be automatically credited) will receive their payments by checks mailed by the Settlement Administrator.  *Id.* at ¶ 94.

Any uncashed or returned checks will remain in the Settlement Fund for one year from the date the first distribution check is mailed, during which time the Settlement Administrator will make reasonable efforts to effectuate delivery of the Settlement Fund Payments.  Agreement ¶ 95.  Any residual funds remaining in the Settlement Fund one year after the first Settlement Fund Payments are mailed will be distributed pursuant to Section XIII of the Agreement.  *Id*. at ¶ 96.

       c.        **Class Release.**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members who do not opt out will be deemed to have released PNC from claims related to the subject matter of the Action.  The detailed release language is found in Section XIV of the Agreement.  Agreement ¶¶ 97-100.

**DISCUSSION**

Federal courts have long recognized a strong policy and presumption in favor of class action settlements.  The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996).  In evaluating a proposed class action settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 27, 2006) (quoting *Zerkle v. Cleveland-Cliffs Iron Co*., 52 F.R.D. 151, 159 (S.D.N.Y. 1971)).  "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088, 1105 (5th Cir. 1977).

As explained below, the Settlement here is more than sufficient under Rule 23(e).  It includes a Settlement Fund of $7,500,000.00, plus PNC's payment of all fees and costs of the Notice Program and Settlement administration.  Agreement ¶¶ 59, 75, 82.  All identifiable members of the Settlement Class who experienced a Positive Differential Overdraft Fee and did not timely opt-out will

automatically receive their *pro rata* share of the Net Settlement Fund as a matter of course, without needing to take any action, based on an analysis by Settlement Class Counsel's expert of RBC data in PNC's possession.  Agreement Section XI.

> 1.     **The Court's Exercise of Jurisdiction Is Proper.**

In addition to having personal jurisdiction over the Plaintiffs, who are parties to the Action, the Court also has personal jurisdiction over all members of the Settlement Class because they received the requisite notice and due process.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998). The Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332(d)(2) and (6).

> a.     **The Best Notice Practicable Was Provided to the Settlement Class.**

Pursuant to the Agreement (Section VIII) and the Preliminary Approval Order (DE # 4425), Notice of the Settlement was provided to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's application for an award of attorneys' fees and expenses, and request for a Service Award, and their rights to opt-out of or object to the Settlement. Specifically, Notice of the Settlement in the forms approved by the Court was mailed to over 130,000 members of the Settlement Class.  *See* Declaration of Cameron Azari ¶ 18 ("Azari Decl.") (DE # 4429-4); and Supplemental Declaration of Cameron Azari ¶¶ 6-10 ("Azari Supplemental Decl.) (DE # 4432-1).  Notice of the Settlement was also published through Local Online Banners, Local Sponsored Search Listings and a National Press Release that were more likely to be read by members of the Settlement Class in the geographic markets where RBC maintained branches during the Class Period.  Azari Decl. at ¶¶ 21-27; Azari Supplemental Decl. at ¶ 11.  In addition, a special

Settlement Website and toll-free telephone number were established to enable members of the Settlement Class to obtain detailed information about the Action and the Settlement.  Azari Decl. at ¶¶ 28-30; Azari Supplemental Decl. at ¶ 13

> **b.     The Notice Was Reasonably Calculated to Inform Settlement Class Members of Their Rights.**

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contained information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d at 1104-05.  The Notice, among other things, defined the Settlement Class; described the release provided to PNC under the Settlement, as well as the amount and proposed distribution of the Settlement proceeds, and informed members of the Settlement Class of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing.  Azari Decl.  ¶¶ 32-41 and Attachments 2-5; Azari Supplemental Decl. at ¶¶ 15-18.  Further, the Notice stated that Class Counsel intended to apply for attorneys' fees of up to thirty-five percent (35%) of the $7,500,000.00 Settlement Fund, plus expenses, and a Service Award for the Class Representative.  In addition to disclosing these material terms, the Notice informed members of the Settlement Class that a class judgment would bind them unless they opted out, and told them where they could get more information – for example, at the Settlement Website that posts a copy of the Agreement, as well as other important court documents such as the Motion.

The Motion and attachments thereto contain Class Counsel's considered opinion that the $7,500,000.00 Settlement Fund represents approximately twenty-three percent (23%) of $33,153,673.91, the amount according to an analysis of RBC's data by Class Counsel's expert, represents the most favorable damages that Plaintiffs and the Settlement Class could recover at trial.

Joint Decl. ¶ 55.  The disclosure of this percentage was sufficient to put Settlement Class Members on notice of their potential recovery based on their personal history with RBC and to allow them to make an informed decision about whether to accept the Settlement, object to it or opt out of it.

The Court finds that the members of the Settlement Class were provided with the best practicable notice; the notice was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Shutts*, 472 U.S. at 812 (quoting *Mullane*, 339 U.S. at 314-15).  This Settlement was widely publicized, and any member of the Settlement Class who wished to express comments or objections had ample opportunity and means to do so.  Azari Decl. ¶¶ 32-41; Azari Supp. Decl. ¶¶ 5-13.

### 2. The Settlement Is Fair, Adequate and Reasonable, and Therefore Is Finally Approved Under Rule 23.

In determining whether to approve the Settlement, the Court considers whether it is "fair, adequate, reasonable, and not the product of collusion."  *Leverso v. SouthTrust Bank of Al., N.A.,* 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation* (Third) § 30.42 (1995)).  The Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

The Eleventh Circuit has identified six factors to be considered in analyzing the fairness,

reasonableness and adequacy of a class action settlement under Rule 23(e):

> (1) the existence of fraud or collusion behind the settlement;
>
> (2) the complexity, expense, and likely duration of the litigation;
>
> (3) the stage of the proceedings and the amount of discovery completed;
>
> (4) the probability of the plaintiffs' success on the merits;
>
> (5) the range of possible recovery; and
>
> (6) the opinions of the class counsel, class representatives, and the substance
>
>     and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett,* 737 F.2d at 986.  Additionally, effective December

1, 2018, Rule 23(e) was amended to add a mandatory, but not exhaustive, list of similar final

approval factors:

> I.   the class representatives and class counsel have adequately represented the class;
> (B)  the proposal was negotiated at arm's length;
> (C)  the relief provided for the class is adequate, taking into account:
>      (i) the costs, risks, and delay of trial and appeal;
>      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>      (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

### a.   There Was No Fraud or Collusion and the Settlement Was Negotiated at Arm's Length.

The Court has readily concluded there was no fraud or collusion behind this Settlement.  *See,*

*e.g., In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-*

*Cola Co*., 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been

adversarial, featuring a high level of contention between the parties"); *In re Motorsports Merchandise Antitrust Litig.,* 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion."); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd,* 893 F.2d 347 (11th Cir. 1989).

Plaintiffs and the Settlement Class were represented by experienced counsel throughout the negotiations.  Settlement Class Counsel and PNC engaged in arm's-length negotiations. Settlement Class Counsel negotiated the Settlement with the same degree of vigor they brought to the underlying litigation.  Joint Decl. ¶¶ 25-27, 48-51.  *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977) (a class action settlement should be approved so long as the Court finds that it is "fair, adequate and reasonable and is not the product of collusion between the parties.").  *See also Lipuma v. American Express Co*., 406 F. Supp. 2d 1298, 1318-19 (S.D. Fla. 2005) (approving class settlement where the "benefits conferred on the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").  Thus, Rule 23(e)(2)(B) is satisfied.

> **b.**   **The Settlement Will Avert Years of Highly Complex and Expensive Litigation.**

This case involves 148,437 members of the Settlement Class.  Azari Supp. Decl. ¶¶ 6.  The claims and defenses are complex.  Joint Decl. ¶ 58.  Litigating them has been difficult and time consuming.  *Id.*  Although this litigation has been pending for approximately a decade, recovery by any means other than settlement would require additional years of litigation in this Court and others,

including appellate courts. *See United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 317, 325-26 & n.32 (N.D. Ga. 1993) ("adjudication of the claims of two million claimants could last half a millennium").

The Settlement provides immediate and substantial benefits to 148,437 members of the Settlement Class, all of whom were former RBC customers.  Joint Decl. ¶ 58; Azari Supp. Decl. ¶ 6; *see In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993) ("The Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)); *see also In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex litigation "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive").  Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no reasonable doubt as to the adequacy of the present Settlement under Rule 23(e)(2)(C), which provides reasonable benefits to the Settlement Class.

The amount of the recovery is extremely successful in light of the risks Plaintiffs faced. Joint Decl. ¶86; Declaration of Brian T. Fitzpatrick ¶¶ 17, 27 ("Fitzpatrick Decl.") (DE # 4429-3). The Settlement Fund of $7,500,000.00, recovered now without further risks or delays, represents a significant percentage of the maximum aggregate damages that Settlement Class Counsel believe

could have been recovered on behalf of the Settlement Class if they had proceeded through trial and plenary appeal. Joint Decl. ¶ 55. Fitzpatrick Decl. ¶ 11. The Settlement is particularly noteworthy given the combined litigation risks. Fitzpatrick Decl. ¶ 27.

<blockquote>

**c.**     **The Factual Record is Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Concerning the Settlement.**

</blockquote>

The Court considers "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Settlement Class Counsel negotiated the Settlement with the benefit of significant litigation before this Court and the Eleventh Circuit involving RBC (and other banks in MDL 2036), including a damage analysis by Settlement Class Counsel's expert based on customer data produced by PNC. Joint Decl. ¶¶ 25, 31, 59; Olsen Decl. ¶¶ 11-32. Settlement Class Counsel's analysis and understanding of the various legal obstacles, as well as the damage analysis, positioned them to evaluate with confidence the strengths and weaknesses of Plaintiffs' claims and defenses through the conclusion of the litigation, as well as the range and amount of damages that were potentially recoverable if the Action successfully proceeded to judgment on a class-wide basis. Joint Decl. ¶¶ 59-66; Fitzpatrick Decl. ¶¶ 12-15. "Information obtained from other cases may be used to assist in evaluating the merits of a proposed settlement of a different case." *Lipuma*, 406 F. Supp. 2d at 1325.

<blockquote>

**d.**     **Plaintiffs Would Have Faced Significant Obstacles to Obtaining**

</blockquote>

**Relief.**

The Court also considers "the likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Domestic Air Transp.*, 148 F.R.D. at 314; *see also Ressler*, 822 F. Supp. at 1555 ("A Court is to consider the likelihood of the plaintiff's success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). According to Professor Fitzpatrick: "[I]t was not at all clear that the plaintiff would have won its case on the merits." *See* Fitzpatrick Decl. ¶ 12. This Action involved several major litigation risks. Joint Decl. ¶ 60; Fitzpatrick Decl. ¶¶ 12-13.

While Settlement Class Counsel believe that Plaintiffs had a solid case, they were mindful that RBC advanced significant defenses that would have been required to overcome in the absence of the Settlement. Joint Decl. ¶¶ 60-61; Fitzpatrick Decl. ¶¶ 12-15. This Action involved several major litigation risks. *Id.* As this Court recognized in granting final approval to the settlement with Bank of America: "The combined risks here were real and potentially catastrophic . . . . [B]ut for the Settlement, Plaintiffs and the class faced a multitude of potentially serious, substantive defenses, any one of which could have precluded or drastically reduced the prospects of recovery." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1347-48 (S.D. Fla. 2011).

Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Joint Decl. ¶ 61; Fitzpatrick Decl. ¶ 14. The uncertainties and delays from this process would have been significant. *Id.*

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement cannot be seen as anything except a fair

compromise. *See, e.g.*, *Bennett v. Behring Corp.*, 96 F.R.D. 343, 349-50 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984) (plaintiffs faced a "myriad of factual and legal problems" creating "great uncertainty as to the fact and amount of damage," making it "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers . . . to the vagaries of a trial"). All of this evidences that Rule 23(e)(2)(C)(i) is satisfied.

<blockquote>

**e.**  **The Benefits Provided by the Settlement Are Fair, Adequate and Reasonable When Compared to the Range of Possible Recovery.**

</blockquote>

In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id.* This is because a settlement must be evaluated "in light of the attendant risks with litigation." *Thompson v. Metropolitan Life Ins. Co.*, 216 F.R.D. 55, 64 (S.D.N.Y. 2003); *see also Bennett*, 737 F.2d at 986 ("[C]ompromise is the essence of settlement."). Thus, courts regularly find settlements to be fair where "[p]laintiffs have not received the optimal relief." *Warren*, 693 F. Supp. at 1059; *see, e.g.*, *Great Neck Capital Appreciation Investment P'ship, L.P. v. PriceWaterHouseCoopers, L.L.P.*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002) ("The mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement.").

Settlement Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of their litigation and settlement of similar claims reached within and outside of MDL 2036. Joint Decl. ¶

50.  Settlement Class Counsel also gained further insight into the practical and legal issues they would have continued to face litigating these claims against RBC based, in part, on similar claims challenging Wells Fargo's high-to-low posting practices prosecuted in *Gutierrez*.  Joint Decl. ¶ 51.

Settlement Class Counsel's damage expert's analysis of RBC's available electronic transactional data showed that the maximum damages Plaintiffs and the Settlement Class could have recovered at trial was $33,153,673.91, although alternative sort orders could have resulted in a recovery of a much lower amount.  Olsen Decl. ¶¶ 27, 33.  Conversely, Plaintiffs also faced the prospect of not recovering any damages at all if RBC were to prevail at summary judgment, at trial, or in a post-judgment plenary appeal.  Through this Settlement, Plaintiffs and the Settlement Class have achieved a recovery representing approximately one-quarter of their highest possible damage recovery, without any further risks or delays.  Joint Decl. ¶ 55; Fitzpatrick Decl. ¶ 11.  Thus, this Settlement provides an extremely fair and reasonable recovery to the Settlement Class in light of RBC's defenses, as well as the challenging, unpredictable path of litigation that Plaintiffs would otherwise have continued to face in the trial and appellate courts.  Joint Decl. ¶ 63; Fitzpatrick Decl. ¶¶ 12-13.  The automatic *pro rata* distribution process further supports Final Approval; eligible Settlement Class Members will receive their cash benefits automatically, without needing to fill out any claim forms – or indeed to take any affirmative steps whatsoever.  Joint Decl. ¶ 64; Fitzpatrick Decl. ¶ 16.  This satisfies Rule 23(e)(2)(C)(ii) and Rule 23(e)(2)(D).

The $7,500,000.00 cash recovery is fair and reasonable given the obstacles confronted and the complexity of the Action, and the significant barriers that stood between the pre-settlement status

of the Action and final judgment, including rulings on class certification, summary judgment, trial, and post-trial appeals. Joint Decl. ¶ 63; Fitzpatrick Decl. ¶¶ 12-15. Taking these risks into account, the Settlement "is not only fair, adequate and reasonable, but, frankly, very impressive as well." *See* Fitzpatrick Decl. ¶ 17. RBC's agreement to pay the fees, costs and expenses of the Notice Administrator and Settlement Administrator further enhances the recovery. Joint Decl. ¶ 56; Fitzpatrick Decl. ¶ 21 n. 28. Given the extraordinary obstacles that Plaintiffs faced in the litigation, this recovery is an excellent achievement by any objective measure. Thus, Rule 23(e)(2)(C) is met.

### f.   The Opinions of Settlement Class Counsel and Absent Class Members Favor Approval of the Settlement.

The Court gives "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren,* 693 F. Supp. at 1060; *see also Mashburn*, 684 F. Supp. at 669 ("If plaintiffs' counsel did not believe these factors all pointed substantially in favor of this settlement as presently structured, this Court is certain that they would not have signed their names to the settlement agreement."); *In re Domestic Air Transp.*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

Settlement Class Counsel endorse this Settlement and believe it is deserving of Final Approval. Joint Decl. ¶¶ 74-77. This Court agrees. Furthermore, the Court also finds it telling that, of 148,437 members of the Settlement Class, no requests for exclusion were submitted, and only two (2) objections were timely filed. *See* Azari Supp. Decl. ¶ 14. *Lipuma*, 406 F. Supp. 2d 1298 at 1324

(finding that a low percentage of objections "points to the reasonableness of a proposed settlement and supports its approval").

### g.    The Objections are Overruled.

Neither of the two Settlement Class Members' objections persuades the Court that the Settlement should be granted Final Approval.  Mr. Boglin's objection does *not* oppose Final Approval of the Settlement.  (DE # 4430).  He objects to Class Counsel's request for attorneys' fees, without offering any factual or legal justification for denying the requested award.  As addressed later in this Order, the fee request sought by Class Counsel is reasonable under the facts of the Action. Therefore, Mr. Boglin's objection is overruled.

The other objection was filed by Stephanie Avery, who was previously proposed as a class representative.  (DE # 4431).  As previously discussed, Ms. Avery filed the second of two lawsuits against RBC that was included in MDL 2036.  Ms. Avery voluntarily chose not to serve as a Class Representative in the Settlement and chose not to opt-out to preserve her right to litigate her individual claims but, instead, objected to the Settlement.  Her objection offers a faulty premise; that any settlement of this litigation should or would not be negotiated until after this Court granted a motion for class certification. While couched as typicality and adequacy objections under Fed. R. Civ. P. 23(a), in reality, Ms. Avery's objection is that the $7,500,000.00 recovery obtained through this Settlement is insufficient in light of the risks attendant to continued litigation. The Court overrules her objection.

That Ms. Avery was a named plaintiff does not give her special status to object to an otherwise acceptable class action settlement.  *Charron v. Wiener*, 731 F.3d 241, 253 (2d Cir. 2013) ("The assent of class representatives is not essential to the settlement, as long as the Rule 23 requirements are met"); *Elliot v. Sperry Rand Corp.*, 680 F.2d 1225, 1226, 1228 (8th Cir. 1982);

*Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 508 (5th Cir. 1981); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1174 (4th Cir. 1975).

The Court does not discern either a typicality or adequacy problem for Plaintiff Dasher, or an adequacy problem for Class Counsel that prevents Final Approval. With RBC agreeing to waive its arbitration defense for settlement purposes, Plaintiff Dasher's claims are typical under Rule 23(a), and he is an adequate class representative. Ms. Avery chose not to exclude herself from the Settlement, which was her right, and her view that it was a foregone conclusion that 17,412 putative class members could never be bound to arbitrate their individual claims is simply incorrect. There were many potential obstacles to settlement beyond the arbitration issue, including class certification, success at trial, and success on appeals of those ruling.

With RBC waiving its arbitration defense, it was entirely appropriate for the Settlement Class definition to be amended for purposes of the Settlement, provided it was not broadened beyond the definition in the CAC. *See, e.g.*, *Ohio State Troopers Ass'n v. Point Blank Enters.*, 347 F. Supp. 3d 1207, 1232 n.12 (S.D. Fla. 2018); *In re Marine Hose Antitrust Litig.*, 2009 U.S. Dist. LEXIS 145454, at *34-35 (S.D. Fla. 2009). As noted in *Saccoccio v. JP Morgan Chase bank, N.A.*, 297 F.R.D. 683, 691-92 (S.D. Fla. 2014), courts need only certify the class for settlement purposes. Courts "need not inquire whether the case, if tried, would present intractable management problems" like Ms. Avery suggests. *Id.*

Plaintiff Dasher's claims line up equally with all members of the Settlement Class who were allegedly harmed to RBC's High-to-Low Posting. As for typicality, everyone was subjected to the same practice and suffered the same type of injury. Plaintiff Dasher was charged the same Overdraft Fees alleged to be unlawful due to High-to-Low Posting. Typicality does not require identical claims or defenses, and a "factual variation will not render a class representative's claim atypical

unless the factual position of the representative markedly differs from that of other members of the class." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Indeed, any alleged atypicality between the named plaintiffs' claims and those of the class "must be clear and must be such that the interests of the class are placed in significant jeopardy." *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 326 (S.D. Fla. 1996). "[T]ypicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff." *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004) (quoting *In re Playmobile Antitrust Litig.*, 35 F. Supp. 2d 231, 242 (E.D.N.Y. 1998)). It is only when a unique defense "will consume the merits of a case that a class should not be certified." *In re Synthroid Mktg. Litig.*, 188 F.R.D. 287, 291 (N.D. Ill. 1999). Ms. Avery's objection does not make that showing in the context of a settlement in which RBC decided to waive it arbitration defense.

As for adequacy, Plaintiff Dasher's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, and Ms. Avery has not shown otherwise. Minor conflicts of interest between the plaintiff and the class "alone will not defeat a party's claim to class certification: the conflict must be a 'fundamental' one going to the specific issues in controversy." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). A fundamental conflict exists where the economic interests and objectives of the class representatives "differ significantly from the economic interests and objectives of unnamed class members," such as when other members of the class actually benefited from the challenged conduct by the plaintiff. *Id.* at 1189-90. No such fundamental conflict exists here.

An example of a case in which a court granted class settlement approval over the objection of a class member that some class members could be subject to an arbitration defense is *Harvey v. Morgan Stanley Smith Barney LLC*, 2020 U.S. Dist. LEXIS 37580 (N.D. Cal. Mar. 3, 2020). That

court considered and rejected the objection that it was necessary to treat a group of class members differently depending on whether arbitration agreement had or had not been signed. *Id.* at *21-26. Another court recently granted final approval, overruling an objection asserting the existence of an arbitration provision that might be binding on some putative class members who "ascrib[ed] theoretical value to the absence of an enforceable arbitration clause." *Swinton v. Squaretrade, Inc.*, 2020 U.S. Dist. LEXIS 69267, at *37 (S.D. Iowa Apr. 14, 2020). Noting that the arbitration issue was "one procedural hurdle the Settlement Class will need to overcome if it continues litigating the case," the court reasoned:

> And it is not clear how the lack of an enforceable arbitration clause will actually benefit the class. It makes the merits of the Class Members' claim no more or less colorable, and any assessment of how the lack of mandatory arbitration might influence a different settlement in this or any other case is unduly speculative.

*Id.* at *38. *See also Walsh v. Gilbert Enters.*, 2019 U.S. Dist. LEXIS 41225, at *10-11 (D.R.I. Mar. 14, 2019) (finding typicality and adequacy for a class representative who had not signed an arbitration agreement but who was representing a litigation class that included members who had signed one). This Court finds that reasoning persuasive and supportive of settlement class certification here especially given RBC's willingness to waive that defense and settle with the proposed Settlement Class.

The Court rejects Ms. Avery's contention that Class Counsel had conflict of interest requiring their disqualification, or that separate counsel was required to represent the subset of the Settlement Class that arguably is not required to arbitrate their claims against RBC. The record before the Court reflects that Settlement Class Counsel and Class Counsel fully and faithfully discharged their duty to the Settlement Class as a whole. *Medical & Chiropractic Clinic, Inc. v. Oppenheim*, 2018 U.S. Dist. LEXIS 130585 at *21 (M.D. Fla. Aug. 13, 2018) (citations omitted).

In evaluating a proposed class settlement, "the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (quoting *City of Detroit*, 495 F.2d at 468). Indeed, the question "is not whether the final product could be prettier, smarter, or snazzier, but whether it is fair, adequate, and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Settlement Class Counsel's strong endorsement of the Settlement reflects their knowledge that the Settlement terms reflect the limits of what RBC was willing to do to settle the Action. The factors governing this Court's approval of class settlements include giving weight to Settlement Class Counsel's recommendation to approve the Settlement based on their considerable experience in the Action and in the many other cases that were previously litigated and settled as part of this MDL. *Warren,* 693 F. Supp. at 1060; *Mashburn*, 684 F. Supp. at 669; *In re Domestic Air Transp.*, 148 F.R.D. at 312-13. They rightly observe that everyone in the Settlement Class has a common motivation to be compensated for overdraft fees paid as a result of RBC's High-to-Low Posting. There is absolutely no evidence that Settlement Class Counsel failed to maximize the recovery for RBC Account Holders based on what RBC was willing to pay to settle the Action, nor that RBC would have settled with some but not all of the RBC Account Holders. Everyone in the Settlement Class fairly stands to receive a pro rata distribution based on the number of overdraft fees charged to each as a result of RBC's High-to-Low Posting. Ms. Avery's conflict of interest argument reveals the error in equating success on a motion to compel arbitration with securing a settlement at least as favorable as the Settlement here, and overlooks the risk that no class would be certified and defendant might succeed on the merits, leaving the class with nothing. *Swinton*, 2020 U.S. Dist. LEXIS at *58-59.

It is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002); *also Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001) ("In evaluating the fairness of a class action settlement, such overwhelming support by class members is strong circumstantial evidence supporting the fairness of the Settlement."); *Austin v. Pennsylvania Dept. of Corrections*, 876 F. Supp. 1437, 1458 (E.D. Pa. 1995) ("Because class members are presumed to know what is in their best interest, the reaction of the class to the Settlement Agreement is an important factor for the court to consider."). With that in mind, the objections are overruled. [3]

Finally, the Court denies Ms. Avery's and her personal counsel's application for an award of attorneys' fees, reimbursement of costs and for a service award. (DE # 4443, 4444, 4445). The Avery application was untimely, filed without leave of Court, and did not demonstrate any meritorious factual or legal basis for awarding fees, costs and a Service Award to an objecting Settlement Class Member and her private counsel (i) who voluntarily chose not to participate as a Class Representative and as one of the Class Counsel firms, and (2) where their objection was without merit for the reasons discussed above.

### 3.    The Settlement Class.

This Court previously found the requirements of Rule 23(a) and 23(b)(3) satisfied in this Action in granting Preliminary Approval to the Settlement (DE # 4425), and in similar actions in MDL 2036 on contested motions for class certification (*see*, *e.g.*, DE # 1763 (Union Bank, N.A.);

---

[3] Having failed to timely opt out of the Settlement, Ms. Avery is bound by this Final Approval Order and the release in the Settlement. As such, the Court will dismiss *Avery* with prejudice in the Final Judgment.

DE # 2615 (TD Bank, N.A.); DE # 2697 (PNC Bank, N.A.); DE # 2847 (Capital One, N.A.); and DE # 2673 (BancorpSouth Bank)) and in the context of settlement (*see*, *e.g.*, DE # 1520, 2150 (Bank of America, N.A.); DE # 2712, 3134 (JPMorgan Chase Bank, N.A.); DE # 2959, 3331 (Citizens Financial)).  The Court hereby reiterates its findings that: (a) the Settlement Class Members are so numerous that joinder of them is impracticable; (b) there are questions of law and fact common to the Settlement Class that predominate over any individual questions; (c) the claims of the representative Plaintiff is typical of the claims of the Settlement Class; (d) the representative Plaintiff and Class Counsel fairly and adequately represent and protect the interests of the Settlement Class Members; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

There being no individuals who timely elected to opt out of the Settlement, all members of the Settlement Class are bound by the Settlement and the release contained therein.

**.The Application for a Service Award to the Class Representative Is Approved.**

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "[T]here is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Courts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives. *See*, *e.g.*, *Ingram*, 200 F.R.D. at 694 (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chi. Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff). The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See, e.g.*, *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The Court finds that the Class Representative in this Action expended substantial time and effort in representing the Settlement Class, and deserves to be compensated for such time and effort. Joint Decl. ¶ 46. Therefore, the Court approves the requested Service Award of $10,000.00 for the one Class Representative, to be paid from the Settlement Fund.

**5.     Class Counsel's Application for Attorneys' Fees and Expenses Is Granted.**

Class Counsel have requested that this Court award them attorneys' fees equal to thirty-five

percent (35%) of the $7,500,000.00 Settlement Fund created through their efforts in litigating this Action and reaching the Settlement, plus reimbursement of litigation costs and expenses in the amount of $92,899.19.  The Court analyzes Class Counsel's fee request under *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991).  As set forth below, after considering the *Camden I* factors, the Court concludes that Class Counsel's application for fees in the amount of $2,625,000.00, equal to thirty-five percent (35%) of the $7,500,000.00 Settlement Fund, plus reimbursement of $92,899.19 in litigation costs and expenses, is well justified and will be granted.

### a. The Law Awards Class Counsel Fees from the Common Fund Created Through Their Efforts.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained.  *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs.  The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted).  The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant.  *Van Gemert*, 444 U.S. at 478.  As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole."  *Sunbeam*, 176 F. Supp. 2d at 1333 (citing *Van

*Gemert*, 444 U.S. at 478); *see also Camden I*, 946 F.2d at 771 ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval.").

In the Eleventh Circuit, class counsel are awarded a percentage of the fund generated through a class settlement. As the Eleventh Circuit held, "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774.

This Court has substantial discretion in determining the appropriate fee percentage awarded to counsel. "There is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *In re Sunbeam,* 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). However, "[t]he majority of common fund fee awards fall between 20 percent to 30 percent of the fund," although "an upper limit of 50 percent of the fund may be stated as a general rule." *Id.* (quoting *Camden I,* 946 F.2d at 774-75); *see also Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (approving fee award where the district court determined that the benchmark should be 30% and then adjusted the fee award higher based on the circumstances of the case).

Based on the findings below, this Court finds that Class Counsel are entitled to an award of thirty-five percent (35%) of the $7,500,000.00 Settlement Fund secured through their efforts, plus reimbursement of litigation costs and expenses. Class Counsel undertook an incredibly risky and undesirable case and, through their diligence, perseverance, and skill, obtained an outstanding result for the settlement class. Fitzpatrick Decl. ¶ 32. They are to be commended for such an excellent result and should be compensated in accord with their request, which is both warranted and

reasonable given similar fee awards. *Id.* The Court firmly believes this kind of initiative and skill must be adequately compensated to ensure that counsel of this caliber is available to undertake these kinds of risky but important cases in the future. *See Muehler v. Land O'Lakes, Inc.*, 617 F. Supp. 1370, 1375-76 (D. Minn. 1985).

>    **b.    As Applied Here, the *Camden I* Factors Demonstrate the Requested Fee Is Reasonable and Justified.**

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class-action counsel are:

>    (1) the time and labor required;
>
>    (2) the novelty and difficulty of the questions involved;
>
>    (3) the skill requisite to perform the legal service properly;
>
>    (4) the preclusion of other employment by the attorney due to acceptance of the case;
>
>    (5) the customary fee;
>
>    (6) whether the fee is fixed or contingent;
>
>    (7) time limitations imposed by the client or the circumstances;
>
>    (8) the amount involved and the results obtained;
>
>    (9) the experience, reputation, and ability of the attorneys;
>
>    (10) the "undesirability" of the case;
>
>    (11) the nature and the length of the professional relationship with the client; and
>
>    (12) awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These twelve factors are guidelines; they are not exclusive.  "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action."  *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775).  In addition, the Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case."  *Camden I*, 946 F.2d at 775.

### i.      The Claims Against RBC Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable.  Joint Decl. ¶¶ 76-81; Fitzpatrick Decl. ¶ 26.  Throughout the pendency of the Action, the organization of Class Counsel ensured that they were engaged in coordinated, productive work to maximize efficiency and minimize duplication of effort.  Joint Decl. ¶ 76.  Class Counsel devoted substantial time to investigating the claims of potential plaintiffs against RBC.  *Id.* at ¶ 77.  Class Counsel interviewed numerous RBC customers and potential plaintiffs to gather information about the Bank's conduct, both at the time the lawsuit was filed and in the past, to determine the effect that its conduct had on consumers.  *Id.*  This information was essential to Class Counsel's ability to understand the nature of RBC's conduct, the language of the Account agreements at issue, and potential remedies.  *Id.*

Class Counsel expended significant resources researching and drafting the legal theories and arguments presented in pleadings and motions, and in opposition to RBC's motions, before this Court and the Eleventh Circuit.  Joint Decl. ¶ 78.  Substantial time and resources were also dedicated to conducting discovery, that included review of over 145,000 pages of documents and electronic data as well as taking and defending eight depositions and preparing and arguing the motion for

class certification, as well as three appeals before the Eleventh Circuit. *Id.* at ¶ 79.

Settlement negotiations consumed additional time and resources. Joint Decl. ¶ 80. As noted previously, initial settlement discussions began in 2018 and Settlement Class Counsel and PNC participated in a settlement conference in late January 2019. *Id.* On that date, they reached an agreement in principle concerning the material provisions of the Settlement. *Id.* Ultimately, on February 5, 2019, Settlement Class Counsel and PNC reached an agreement in principle and executed a Summary Agreement that memorialized the material terms of the Settlement. Soon thereafter, they filed a joint notice of settlement requesting a suspension of all deadlines pending the drafting and execution of the Agreement. *Id.* Months of detailed discussions and negotiations ensued, ultimately resulting in the drafting and execution of the Agreement. *Id.*

All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. Joint Decl. ¶ 81. The time and resources Class Counsel devoted to prosecuting and settling this Action justify the fee request: "For all these reasons, I believe the fee award requested here is well within the range of reason. Class counsel undertook an incredibly risky and undesirable case, and through their diligence, perseverance, and skill, obtained an outstanding result for the settlement class. Class counsel should be commended for such an excellent result and should be compensated in accord with their request because it is warranted and reasonable given similar fee awards." *See* Fitzpatrick Decl. ¶ 32.

The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions.[4] *Camden I*, 946 F.2d at 774. Even before

---

[4] Eleventh Circuit attorneys' fee law governs this request. *See Allapattah*, 454 F. Supp. 2d at 1200 ("The district court presiding over a diversity-based class action pursuant to Fed. R. Civ. P. 23 has equitable power to apply federal common law in determining fee awards irrespective of state law.");

*Camden I*, courts in this Circuit recognized that "a percentage of the gross recovery is the only sensible method of awarding fees in common fund cases." *Mashburn*, 684 F. Supp. at 690.  More importantly, the Court observed firsthand the effort exerted by Class Counsel in this case and the other bank cases, and, given the outstanding results achieved here, does not find it necessary or useful to review Class Counsel's lodestar records.

In view of the excellent results obtained here, the Court deems it unnecessary to scrutinize Class Counsel's lodestar.  Lodestar "creates an incentive to keep litigation going in order to maximize the number of hours included in the court's lodestar calculation." *In re Quantum Health Resources, Inc.*, 962 F. Supp. 1254, 1256 (C.D. Cal. 1997).  In *Camden I*, the Eleventh Circuit criticized lodestar and the inefficiencies that it creates.  946 F.2d at 773-75.  In so doing, the court "mandate[d] the *exclusive* use of the percentage approach in common fund cases, reasoning that it more closely aligns the interests of client and attorney, and more faithfully adheres to market practice." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (emphasis added); *see also* Alba Conte, *Attorney Fee Awards* § 2.7, at 91 fn. 41 ("The Eleventh . . . Circuit[] repudiated the use of the lodestar method in common-fund cases").  Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all.  *See, e.g.*, *David v. American Suzuki Motor Corp.*, 2010 WL 1628362 (S.D. Fla. Apr. 15, 2010). [5] "[A] common fund is itself the measure of success and represents the benchmark on which a

---

*see also Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 522 n.5 (1st Cir. 1991) (recognizing that district court presiding over diversity-based class action has equitable power to apply federal common law in determining fee award, irrespective of state law); *Clark Equip. Co. v. Armstrong Equip. Co.,* 431 F.2d 54, 57 (5th Cir. 1970) (*Erie* doctrine does not deprive federal court in diversity case of power to employ equitable remedies not available under state law).

[5] *See also Stahl v. MasTec, Inc.*, 2008 WL 2267469 (M.D. Fla. May 20, 2008); *Sands Point Partners, L.P. v. Pediatrix Med. Group, Inc*., 2002 WL 34343944 (S.D. Fla. May 3, 2002); *Fabricant v. Sears Roebuck & Co*., 2002 WL 34477904 (S.D. Fla. Sept. 18, 2002).

reasonable fee will be awarded. . . . In this context, monetary results achieved predominate over all other criteria." *Camden I*, 946 F.2d at 774 (citations and alterations omitted).  This Court will not deviate from that sound approach.

**ii.**      **The Issues Involved Were Novel and Difficult and Required<br>the Exceptional Skill of a Highly Talented Group of Attorneys.**

This talented team of lawyers accomplished outstanding results for the Settlement Class in the face of substantial risks.  Fitzpatrick Decl. ¶ 28; *see Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n.3 (in assessing the quality of representation by class counsel, Court also should consider the quality of their opposing counsel.); *Johnson,* 488 F.2d at 718; *Ressler*, 149 F.R.D. at 654.  Class Counsel's work is emblematic of the effort and outcomes witnessed by this Court on a regular basis in this MDL.  "Class counsel undertook an incredibly risky and undesirable case, and through their diligence, perseverance, and skill, obtained an outstanding result for the settlement class.  Class counsel should be commended for such an excellent result, and should be compensated in accord with their request because it is warranted and reasonable given similar fee awards."  *See* Fitzpatrick Decl. ¶ 32.  The Court knows many of these lawyers from years of presiding over cases in this District and has come to expect this level of performance from them.  That is not to say, however, that such performance should be taken for granted.  Instead, the fact that this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested.  As with most things, you get what you pay for, and the Settlement Class received a truly impressive amount and quality of legal services.  In the private marketplace, counsel of exceptional skill commands a significant premium.  So too

39

should it here.

### iii.    The Claims Against RBC Entailed Considerable Risk.

The Settlement is particularly noteworthy given the combined litigation risks. Joint Decl. ¶¶ 87-88; Fitzpatrick Decl. ¶ 26. RBC raised substantial defenses. Success under these circumstances represents a genuine milestone. *Id.*

"A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk. Such aversion could be due to any number of things, including social opprobrium surrounding the parties, thorny factual circumstances, or the possible financial outcome of a case. All of this and more is enveloped by the term 'undesirable.'" *In re Sunbeam*, 176 F. Supp. 2d at 1336. In addition, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motor Corp.*, 860 F.2d 250, 258 (7th Cir. 1988), *cert. denied*, 493 U.S. 810 (1989). "Undesirability" and relevant risks must be evaluated from the standpoint of plaintiffs' counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight. *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 112 (3d Cir. 1976); *Walco*, 975 F. Supp. at 1473.

Prosecuting the Action was risky from the outset. Joint Decl. ¶ 87; Fitzpatrick Decl. ¶ 27 ("[T]his case was more risky and less desirable than most class actions, including many in this MDL."). The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiffs and the Settlement Class through continued litigation could only have been achieved if: (i) the Court granted Plaintiffs' pending motion for class certification and the Eleventh Circuit did not reverse it; (ii) Plaintiffs and the certified class defeated summary judgment; (iii) Plaintiffs and the certified class established liability and recovered damages at trial; and (iv) the final

judgment was affirmed on appeal.  The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of RBC's merits defenses, and the challenging and unpredictable path of litigation Plaintiffs would have faced absent the Settlement.  Joint Decl. ¶¶ 57, 66; Fitzpatrick Decl. ¶¶ 12-14.  The Court expresses no opinion on the merits of these arguments by this or any other defendant.  The critical point for present purposes is that, heading into this case, Class Counsel confronted these issues without any assurances as to how the Court would rule.  Class Counsel nonetheless accepted the case and the risks that accompanied it.  Given the positive societal benefits to be gained from attorneys' willingness to undertake this kind of difficult and risky, yet important, work, such decisions must be properly incentivized.  The Court believes, and holds, that the proper incentive here is a thirty-five percent (35%) fee based on the $7,500,000.00 Settlement Fund.

### iv.  Class Counsel Assumed Substantial Risk to Pursue the Action on a Pure Contingency Basis, and Were Precluded From Other Employment as a Result.

In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment.  Joint Decl. ¶ 89; Fitzpatrick Decl. ¶ 27.  That risk warrants an appropriate fee.  "A contingency fee arrangement often justifies an increase in the award of attorney's fees."  *In re Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548, *aff'd*, 899 F.2d 21 (11th Cir. 1990)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656; *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama State Bd. of Education*, 631 F. Supp. 78, 86 (M.D. Ala. 1986).

Public policy concerns – in particular, ensuring the continued availability of experienced and

capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. Joint Decl. ¶ 90. As this Court has observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer. . . . A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

The progress of the Action shows the inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Despite Class Counsel's effort in litigating this Action for approximately a decade, they remain completely uncompensated for the time invested in the Action, in addition to the substantial expenses advanced. Joint Decl. ¶ 91. Consequently, this factor supports the requested fee.

<strong>v.   Class Counsel Achieved an Excellent Result.</strong>

The Court finds that this Settlement represents an excellent result. Fitzpatrick Decl. ¶¶ 12-13, 32. The common fund created by this Settlement is $7,500,000.00. Rather than facing more years of costly and uncertain litigation, the overwhelming majority of Settlement Class Members will receive an immediate cash benefit. Joint Decl. ¶ 86. The Settlement Fund will not be reduced by the substantial fees and costs of Notice or Settlement administration; such fees and expenses have been and will continue to be borne separately by PNC. *Id*. Moreover, payments to eligible Settlement Class Members will be forthcoming automatically, through direct deposit for Current Account Holders or checks for Past Account Holders. *Id*.

<strong>vi.   The Requested Fee Comports with Fees Awarded in Similar Cases.</strong>

Attorneys' fee awards have ranged from 30% to 35% of the settlement value in cases that were included in this MDL. *See, e.g. Swift v. BancorpSouth Bank*, No. 1:10-cv-00090-GRJ, 2016 U.S. Dist. LEXIS 196328, at *41 (N.D. Fla. July 15, 2016) (35% fee); DE # 4168 (Capital One – 31% fee); DE # 3580 (PNC Bank – 30% fee); DE # 3339 (TD Bank – 30%);  DE # 3331 (Citizens Financial Bank – 30%); DE # 3134 (JPMorgan Chase Bank – 30%); DE # 2150 ( Bank of America – 30%).  Similarly, numerous decisions within the Eleventh Circuit have found that fee awards in the range of 30% to 35% fee are within the range of reason under the factors listed in *Camden I*.  *See* Fitzpatrick Decl. ¶¶ 21-24.  *See In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million).  *See also Allapattah Servs., Inc.*, 454 F. Supp. 2d at 1189 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over $30 million); *Gutter v. E.I. Dupont De Nemours & Co*., 95-2152-Civ-Gold (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); *Waters*, 190 F.3d at 1292, 1298 (affirming fee award of 33 1/3 % of settlement of $40 million).

The Court finds that a fee of thirty-five percent (35%) of the $7,500,000.00 Settlement Fund is appropriate here and comports with fee awards in similar cases.  Fitzpatrick Decl. ¶¶ 23-25. Professor Fitzpatrick distilled several major empirical studies of attorneys' fees, including his own, awarded in connection with class action settlements.  *See An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical L. Stud. 811 (2010).  He found that the empirical data from other Eleventh Circuit fee awards is consistent with the award requested here.  Fitzpatrick Decl. ¶ 25.  The Court agrees, and finds that the risks of this litigation, considered against the favorable result, easily justify a 35% fee.  *Id.*

       **vii.**     **The Remaining *Camden I* Factors Also Favor Approving Class Counsel's Fee Request.**

The Court finds that the remaining *Camden I* factors further support Class Counsel's fee request, and so holds.  Joint Decl. ¶ 92.  The sharply contested nature of the proceedings in this Action demonstrates the absence of fraud or collusion behind the Settlement.  *In re Sunbeam*, 176 F. Supp. 2d at 1328 n.3.  The Court is convinced by its many years of presiding over significant cases like this one that proper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one.  The factual record in this case, and the Court's own observations, all of which are incorporated herein, strongly support the result in this Order.

      **6.**     **Class Counsel's Application for Reimbursement of Litigation Costs and Expenses Is Approved.**

Finally, the Court finds that Class Counsel's request for reimbursement of $92,899.19, representing certain categories of litigation costs and expenses Class Counsel necessarily incurred during the prosecution and settlement of the Action against RBC, is reasonable and justified.  Joint Decl. ¶ 94.  These costs and expenses consist of: (1) $83,800.00 in fees and expenses incurred for experts, principally Arthur Olsen, whose services were critical in determining the damages for the Settlement Class, in identifying Settlement Class Members, and in allocating the Settlement Fund; (2) $8,229.69 in court reporter fees and transcripts associated with depositions and hearings in the Action; and (3) $869.50 associated with the printing of briefs for the United States Supreme Court.  *Id*. at ¶ 94.  The Court therefore approves Class Counsel's request for reimbursement of these costs and expenses.  *See Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 391-92 (1970).  These costs and expenses, advanced by Class Counsel for the benefit of the Settlement Class, were necessarily incurred in furtherance of the litigation of the Action and the Settlement.

Joint Decl. ¶ 94.  Accordingly, reimbursement of costs and expenses in the amount of $92,899.19 shall be made from the Settlement Fund following disbursement of attorneys' fees.

## CONCLUSION

For the foregoing reasons, the Court: (1) overrules the two objections and denies objecting Settlement Class Member Avery's and her personal counsel's motion for an application for attorneys' fees, expenses and Service Award; (2) grants Final Approval to the Settlement; (3) certifies for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (4) appoints as Class Representative the Plaintiff listed in paragraph 24 of the Agreement; (5) appoints as Class Counsel and Settlement Class Counsel the law firms and attorneys listed in paragraphs 22 and 51 of the Agreement, respectively; (6) approves the requested Service Award for the Class Representative; (7) awards Class Counsel attorneys' fees in the amount of $2,625,000.00, representing thirty-five percent (35%) of the $7,500,000.00 Settlement Fund, plus expenses in the amount of $92,899.19; (8) retains continuing jurisdiction over Plaintiffs, the Settlement Class, and PNC to implement, administer, consummate and enforce the Settlement and this Final Approval Order; and (9) will separately enter Final Judgment dismissing the Action, as well as the related action brought by objecting Settlement Class Member Stephanie Avery, with prejudice.

DONE and ORDERED in chambers at the James Lawrence King Federal Justice

Building and United States Courthouse, Miami, Florida, this 10th day of August, 2020.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Counsel of Record